## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
|  | § |  |
| In re: | § | **Chapter 11** |
|  | § |  |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
|  | § |  |
| Debtors.[1] | § | **(Joint Administration Requested)** |
|  | § | **(Emergency Hearing Requested)** |

### EMERGENCY MOTION OF DEBTORS FOR AN ORDER
### (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION TAXES
### AND ASSESSMENTS, AND (II) GRANTING RELATED RELIEF

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A <u>VIDEO/TELEPHONIC</u> HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 4, 2020 AT 2:00 P.M. (PREVAILING CENTRAL TIME). PARTIES WISHING TO PARTICIPATE TELEPHONICALLY MUST DIAL IN USING THE COURT'S TELECONFERENCE SYSTEM AT 832-917-1510 AND ENTERING CONFERENCE CODE 954554. PARTIES WHO ALSO WISH TO PARTICIPATE BY VIDEOCONFERENCE MAY DO SO BY USE OF AN INTERNET CONNECTION, USING THE WEBSITE HTTPS://WWW.GOTOMEETING.COM/MEETING/JOIN-MEETING AND ENTERING MEETING CODE "JudgeIsgur."**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN AUGUST 4, 2020.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

## Background

1.      Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

2.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are an independent exploration and production ("**E&P**") company in the Gulf of Mexico. The Company is focused on the exploration and development of offshore oil and gas assets in the shallow water and deepwater Gulf of Mexico and the Gulf Coast region in the U.S.

3.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Dane in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "**Dane Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Dane Declaration.

## Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.      By this Motion, pursuant to sections 105(a), 363(b), 507(a)(8), and 541(d) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors request entry of an order (i) authorizing, but not directing, them to satisfy, or use tax credits to offset, all Taxes[3] (as defined below) due and owing to various local, state, and federal taxing authorities (collectively, the "**Taxing Authorities**")[4] that arose prior to the Petition Date, including all Taxes subsequently determined by audit or otherwise to be owed for periods prior to the Petition Date, and (ii) granting related relief.

A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

## The Debtors' Prepetition Taxes

6.      In the ordinary course of business, the Debtors are obligated to pay certain taxes and assessments, which generally fall into the following categories, each of which is defined and discussed in more detail below: (i) Franchise Taxes, (iii) Severance Taxes, (iii) Property Taxes, (iv) Income Taxes, and (v) Regulatory Assessments (collectively, the "**Taxes**").

---

[3] By this Motion, the Debtors are not seeking authority to pay employee withholding taxes, which are addressed separately in the *Emergency Motion of Debtors for an Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation, (B) Maintain Employee Benefit Programs and Pay Related Obligations, and (C) Pay Prepetition Employment and Training Expenses, and (II) Granting Related Relief* filed contemporaneously herewith.

[4] The definition of "Taxing Authorities" includes, but is not limited to, those parties set forth in the Taxing Authority List (as defined below). The inclusion of any entity on, or the omission of any entity from, the Taxing Authority List is not an admission by the Debtors that such entity is, or is not, a Taxing Authority to which the Debtors owe any amount, and the Debtors reserve all rights with respect to any such determination.

7.      The Debtors estimate that approximately $2,710,000 in Taxes relating to the period prior to the Petition Date will become due and owing to the Taxing Authorities in the ordinary course of business after the Petition Date.   The following table provides an overview of the estimated prepetition amounts that the Debtors seek relief to pay (or use tax credits to offset):

| Category | Estimated Prepetition Amount |
|---|---|
| Franchise Taxes | $400,000 |
| Severance Taxes | $100,000 |
| Property Taxes | $1,500,000 |
| Income Taxes | $10,000 |
| Regulatory Assessments | $700,000 |
| **TOTAL** | $2,710,000 |

8.      The amounts of the Taxes listed above are good faith estimates based on the Debtors' books and records and remain subject to potential audits and other adjustments.  As such, the Debtors seek authorization to pay, or use tax credits to offset, any undisputed prepetition Taxes due and owing following audit and review, if any, pursuant to the Proposed Order.

**A.      Franchise Taxes**

9.      The Debtors are required to pay taxes assessed for the privilege of doing business within a particular jurisdiction ("**Franchise Taxes**").  The Debtors pay Franchise Taxes to the applicable Taxing Authorities in several states.  Franchise Taxes come due on various dates annually and are typically paid to the applicable Taxing Authorities.  As of the Petition Date, the Debtors estimate they have accrued approximately $400,000 in prepetition Franchise Taxes that will become due and owing in the ordinary course postpetition. The Debtors request authority to pay all accrued prepetition Franchise Taxes postpetition in the ordinary course.

B.      **Severance Taxes**

10.      Certain of the states in which the Debtors operate, including Texas and Louisiana, assess monthly severance taxes for the Debtors' sale of oil, natural gas and natural gas liquids (collectively, "**Severance Taxes**").  Severance Taxes are, in form and effect, akin to a sales tax and are remitted to the relevant state Taxing Authority.  During the past 12 months, the Debtors' Severance Tax obligations averaged approximately $50,000 per month.  Because payment of Severance Taxes is directly related to the Debtors' ability to continue the extraction and sale of oil, natural gas and natural gas liquids, payment of the Severance Taxes is critical to the Debtors' continued operations.

11.      As of the Petition Date, the Debtors estimate they have accrued approximately $100,000 in prepetition Severance Taxes that will become due and owing and request authority to pay all such amounts in the ordinary course postpetition.

C.      **Property Taxes**

12.      The Debtors own, or owned, property in Texas and Louisiana that subject the Debtors to local ad valorem property taxes (the "**Property Taxes**").  The Property Taxes are assessed in estimated amounts based on the net book value of the Debtors' property, plant, and equipment.  The Debtors remit payments on such estimated amounts to the parish or county Taxing Authority, as applicable, on an annual basis.  In Texas, the amounts come due on December 31 of each year. In Louisiana, the amounts come due on January 31 of each year.

13.      As of the Petition Date, the Debtors estimate they have accrued approximately $1,500,000 in prepetition Property Taxes that will become due and owing in the ordinary course postpetition. This amount reflects an estimated assessment for the calendar year 2020 up to the Petition Date.  The Debtors request authority to pay all accrued prepetition Property Taxes postpetition in the ordinary course.

D.      **Income Taxes**

14.      The Debtors are required to pay federal, state, and local income taxes on their taxable income (the "**Income Taxes**").  The Debtors typically pay Income Taxes on an annual basis on April 15 based on an estimate of taxable income.  As of the Petition Date, the Debtors estimate they have accrued approximately $10,000 in prepetition Income Taxes that will become due and owing and request authority to pay all accrued prepetition Income Taxes postpetition in the ordinary course.

E.      **Regulatory Assessments and Other Miscellaneous Taxes**

15.      In the ordinary course of business, the Debtors incur certain regulatory assessments, drilling and permitting fees, licensing fees, levies, inspection fees and other miscellaneous fees, taxes, assessments, or charges (collectively, "**Regulatory Assessments**").  The continued payment of Regulatory Assessments, including any amounts due and owing on account of Regulatory Assessments incurred prior to the Petition Date, are crucial to the continued operation of the Debtors' business.

16.      Regulatory Assessments are typically paid annually, with certain assessments paid on a semi-annual or quarterly basis, totaling approximately $5 million to $10 million per year.[5] As of the Petition Date, the Debtors estimate they have accrued approximately $700,000 in prepetition Regulatory Assessments and request authority to pay all such amounts postpetition in the ordinary course.

---

[5] The variance in regulatory fees each year is largely driven by, among other things, the amount of plugging and abandonment expenses incurred each year. The Debtors typically pay significant fees for reefing donations throughout the year, but as of the Petition Date, the Debtors are not aware of any outstanding prepetition fees for such reefing donations.

**Relief Requested Should Be Granted**

17.     Ample reasons exist to authorize payment of the prepetition Taxes including, among other things, that (i) failure to pay the prepetition Taxes may interfere with the Debtors' continued operations and the success of these chapter 11 cases; (ii) certain of the prepetition Taxes may not be property of the Debtors' estates; (iii) failure to pay prepetition Taxes may increase the scope of secured and priority claims held by the applicable Taxing Authorities against the Debtors' estates; (iv) payment of prepetition Taxes affects only the timing of payments as most, if not all, of the Taxes are afforded priority status under the Bankruptcy Code; and (v) the Court has authority to grant the requested relief under sections 105(a) and 363(b) of the Bankruptcy Code.

**A.      Failure to Pay the Prepetition Taxes May Interfere with the Debtors' Continued Operations and the Success of these Chapter 11 Cases**

18.     The Debtors seek to pay the prepetition Taxes to, among other things, prevent the Taxing Authorities from taking actions that may interfere with the Debtors' continued business operations.  Nonpayment of these obligations may cause Taxing Authorities to take precipitous action including, but not limited to, asserting liens or seeking to lift the automatic stay, which would disrupt the Debtors' day-to-day operations and could potentially impose significant costs on the Debtors' estates.  Failure to satisfy the prepetition Taxes may jeopardize the Debtors' maintenance of good standing to operate in the jurisdictions in which they do business.

19.     To the extent any prepetition Taxes remain unpaid by the Debtors, the Debtors' officers and directors may be subject to lawsuits or criminal prosecution during the pendency of these chapter 11 cases.  The dedicated and active participation of the Debtors' directors, officers, and other employees is not only integral to the Debtors' continued, uninterrupted operations, but essential to the orderly administration of these chapter 11 cases.  The threat of a lawsuit or criminal prosecution, and any ensuing liability, would distract the Debtors and their personnel from

important tasks, to the detriment of all parties-in-interest.  Accordingly, the proposed relief is in the best interests of the Debtors' estates.

**B.      Certain of the Prepetition Taxes May Not Be Property of the Debtors' Estates**

20.      Additionally, certain of the Taxes may not be property of the estate, as they are collected from third parties and held in trust for payment to various Taxing Authorities.  Some of the prepetition Taxes, may constitute "trust fund" taxes, which the Debtors are required to collect and/or hold in trust for payment to the Taxing Authorities.  Section 541(d) of the Bankruptcy Code provides, in relevant part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

21.      To the extent the Debtors have collected or hold Taxes in trust for payment to the Taxing Authorities, such funds may not constitute property of the Debtors' estates.  *See, e.g.*, *Begier v. IRS*, 496 U.S. 53, 60–62 (1990) (holding that excise and withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994) (finding that withholding taxes were subject to a trust); *Al Copeland Enters., Inc. v. Texas,* 991 F.2d 233, 235 (5th Cir. 1993) (finding that debtors' prepetition collection of sales taxes and interest thereon held subject to trust and not property of estate); *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1067–68 (9th Cir. 1998) (holding that under Texas law, state sales taxes collected created statutory trust fund, if traceable, and were not property of the estate); *In re Equalnet Commc'ns. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (holding that funds held in trust

for federal excise and withholding taxes are not property of the debtor's estate); *Off. Comm. of Unsecured Creditors v. Columbia Gas Sys. Inc.* (*In re Columbia Gas. Inc.*), 997 F.2d 1039, 1059–60 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found). The Debtors, therefore, generally do not have an equitable interest in such funds, and they should be permitted to pay those funds to the applicable Taxing Authorities as the related Taxes become due.

**C.     Failure to Pay Prepetition Taxes May Increase the Scope of Secured and Priority Claims Held by the Taxing Authorities**

22.     Payment of prepetition Taxes is also warranted here because the Debtors' nonpayment may increase the amount of secured claims held by Taxing Authorities against the Debtors' estates. Specifically, Taxing Authorities may assert liens against any personal property for which the Taxes are due and owing. Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code. *See* 11 U.S.C. § 362(b)(3). In fact, the creation and perfection of such a lien may not violate the automatic stay— even if the lien arises under applicable law for taxes due after the Petition Date. *See* 11 U.S.C. § 362(b)(18) (automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition[.]").

23.     To the extent the Taxing Authorities hold oversecured claims, if the prepetition Taxes are not paid, postpetition interest, fees, penalties, and other charges may accrue. *See* 11 U.S.C. § 506(b); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–43 (1989) (holding that nonconsensual lienholders may receive interest on their claims under section 506(b) of the

Bankruptcy Code).  Even if these Taxes are not treated as secured claims, they may still, as discussed below, be entitled to priority treatment—as may any penalties assessed by the applicable Taxing Authorities on delinquent taxes owed by the Debtors.  *See* 11 U.S.C. § 507(a)(8).  The Debtors' failure to pay prepetition Property Taxes thus may increase the amount of priority claims held by the Taxing Authorities against the Debtors' estates.

24.     Paying the prepetition Taxes now will avoid the potential imposition of liens and the accrual of interest charges and unnecessary fees and penalties on such claims, thereby preserving the value of the Debtors' estates and maximizing the distribution available for other creditors.

**D.      Paying the Prepetition Taxes Will Affect Only the Timing of Payments**

25.     Most, if not all, of the Taxes described herein are afforded priority status pursuant to section 507(a)(8) of the Bankruptcy Code.  *See* 11 U.S.C. § 507(a)(8)(A) ("[A] tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition . . . ."); *id.* at (B) ("[A] property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition."); *id.* at (C) ("[A] tax required to be collected or withheld and for which the debtor is liable in whatever capacity."); *id.* at (E) ("[An] excise tax on . . . a transaction occurring before the date of the filing of the petition . . . ."); *id.* at (G) ("[A] penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.").  Thus, payment of such Taxes would give the Taxing Authorities no more than that to which they otherwise would be entitled to under a chapter 11 plan, which will save the Debtors the potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, such Taxes.

26.     Courts frequently authorize early payment of priority claims when such early payment is intended to prevent some harm or to procure some benefit for the estate.  *See, e.g., In*

*re CEI Roofing, Inc.*, 315 B.R. 50, 60-61 (Bankr. N.D. Tex. 2004) (finding that authorization of early payment of priority claims does not trigger concerns of either upsetting priority scheme of Bankruptcy Code or of unfair discrimination); *In re CoServ, L.L.C.*, 273 B.R. 487, 493 (Bankr. N.D. Tex. 2002) (implying that bankruptcy court may authorize early payment of prepetition priority claims in instances where nonpayment could impair debtor's ability to operate); *Equalnet Commc'ns*, 258 B.R. at 370 (stating that court may authorize pre-plan payment of priority claims, including certain tax claims, because "the need to pay these claims in an ordinary course of business time frame is simple common sense").

27.     To the extent the prepetition Taxes are priority claims, they must be paid in full under any plan of reorganization before any general unsecured obligations of the Debtors may be satisfied.  Sufficient assets exist to pay all the prepetition Taxes.  Accordingly, the proposed relief will affect only the timing of payment of prepetition Taxes and will not prejudice the rights of any general unsecured creditor or other party-in-interest.  Therefore, the Court should grant the Debtors authority to pay the prepetition Taxes in the ordinary course.

**E.     The Court Has Authority to Grant the Requested Relief under Sections 363 and 105(a) of the Bankruptcy Code**

28.     The payment of Taxes constitutes an ordinary course transaction.  Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide the debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's

assets.") (citation omitted); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997) (same).

29.     Further, the Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g., In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016); *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

30.     In addition, under section 1107(a) of the Bankruptcy Code, a debtor has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *CEI Roofing*, 315 B.R. at 59 (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497).  Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  *See CoServ*, 273 B.R. at 497 (holding that sections 105 and 1107 of Bankruptcy Code provide authority for a debtor-in-possession to pay prepetition claims); *see also*

*In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first 21 days of a case where doing so is "necessary to avoid immediate and irreparable harm." Accordingly, the Bankruptcy Code authorizes the postpetition payment of prepetition claims where, as here, such payments are critical to preserving the going-concern value of a debtors' estate.

31.     Payment of the prepetition Taxes is an exercise of sound business judgment and is necessary to permit a successful reorganization, as the Debtors' satisfaction of the prepetition Taxes is necessary to avoid obstacles to a smooth transition through these chapter 11 cases. Significant disruptions of the Debtors' operations of the types described above threaten to irreparably impair the Debtors' ability to conduct a successful reorganization process and thereby maximize the value of the Debtors' estates for the benefit of creditors.

32.     For the foregoing reasons, granting Debtors the authority to pay prepetition Taxes in the ordinary course is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties-in-interest in these cases. Courts in this district have approved comparable motions in similar cases. *See, e.g.*, *In re CEC Ent., Inc.*, No. 20-33163 (MI) (Bankr. S.D. Tex. June 29, 2020) (Docket No. 110); *In re SpeedCast Int'l Ltd*, No. 20-32243 (MI) (Bankr. S.D. Tex. Apr. 23, 2020) (Docket No. 54); *EP Energy Corp.,* No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 4, 2019) (Docket No. 57); *In re Fieldwood Energy LLC*, No. 18-30648 (DRJ) (Bankr. S.D. Tex. Mar. 13, 2018) (Docket No. 199). The same relief is also appropriate here. Accordingly, the Court should authorize the Debtors to pay prepetition Taxes in the ordinary course.

**Applicable Financial Institutions
Should Be Authorized to Receive, Process, Honor, and
Pay Checks Issued and Transfers Requested to Pay Prepetition Taxes**

33.     The Debtors further request that the Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the prepetition Taxes, to the extent that sufficient funds are on deposit in the applicable bank accounts to cover such payment.  The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or fund transfer requests on account of prepetition Taxes dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

**Bankruptcy Rule 6003(b) Has Been Satisfied**

34.     Pursuant to Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first 21 days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm.  As described herein and in the Dane Declaration, failure to pay the Taxes may interfere with the Debtors' continued operations and restructuring, and increase the scope of secured claims held by the applicable Taxing Authorities against the Debtors' estates. Moreover, failure to pay certain of the Taxes may expose the Debtors' directors and officers to personal liability, which would cause further distraction and delays and negatively impact the administration of these chapter 11 cases.  Accordingly, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11 and the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

### Compliance with Bankruptcy Rule 6004(a)
### and Waiver of Bankruptcy Rule 6004(h)

35.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

### DIP Order and DIP Documents Control

36.     Contemporaneously herewith, the Debtors are seeking approval of interim and final orders, which provide for, among other things, the Debtors' entry into a postpetition financing facility (the "**DIP Facility**") and the use of cash collateral (any order entered by the Court approving the Debtors' entry into such postpetition financing facility and/or the use of cash collateral, the "**DIP Order**" and, the definitive documentation for such facility, the "**DIP Documents**"). The DIP Order and the DIP Documents contain terms that limit and otherwise apply to the Debtors' ability to utilize certain of the relief requested herein. For the avoidance of doubt, the relief described and requested herein and/or granted by any order issued pursuant hereto is subject in all respects to the terms of the DIP Order and the DIP Documents.

### Reservation of Rights

37.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under

section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## Notice

38.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn:  William L. Wallander, Esq. and Bradley R. Foxman, Esq.) as counsel to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn:  Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham Jr., Esq. and Martha Wyrick, Esq.) as counsel to the Ad Hoc Group of Secured Lenders; (v) Shipman & Goodwin LLP, 400 Park Ave, 5th Floor, New York, NY 10022 (Attn:  Nathan Plotkin, Esq.) as counsel to Cantor Fitzgerald Securities, the FLTL Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606 (Attn:  Joshua Spencer, Esq. and Anastasia Sotiropolous, Esq.) as counsel to Cortland Capital Market Services LLC, the SLTL Administrative Agent; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of Texas; (ix) the Securities and Exchange Commission; (x) the Taxing Authorities; (xi) any other party entitled to notice pursuant to Bankruptcy Rule 2002; and (xii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**<u>No Previous Request</u>**

39.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: August 4, 2020
      Houston, Texas

                           Respectfully submitted,

                           /s/ Alfredo R. Pérez
                           WEIL, GOTSHAL & MANGES LLP
                           Alfredo R. Pérez (15776275)
                           700 Louisiana Street, Suite 1700
                           Houston, Texas 77002
                           Telephone:  (713) 546-5000
                           Facsimile:  (713) 224-9511
                           Email:   Alfredo.Perez@weil.com

                           -and-

                           WEIL, GOTSHAL & MANGES LLP
                           Matthew S. Barr (*pro hac vice* pending)
                           Jessica Liou (*pro hac vice* pending)
                           767 Fifth Avenue
                           New York, New York 10153
                           Telephone:  (212) 310-8000
                           Facsimile:  (212) 310-8007
                           Email:   Matt.Barr@weil.com
                                   Jessica.Liou@weil.com

                           *Proposed Attorneys for Debtors*
                           *and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on August 4, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.

 <u>/s/  Alfredo R. Pérez</u>
Alfredo R. Pérez
