IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |
| | § | (Emergency Hearing Requested) |

EMERGENCY MOTION OF DEBTORS FOR INTERIM AND FINAL ORDERS
ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING
RESTRICTIONS ON (A) CERTAIN TRANSFERS OF INTERESTS IN THE DEBTORS
AND (B) CLAIMS OF CERTAIN WORTHLESS STOCK DEDUCTIONS

EMERGENCY RELIEF HAS BEEN REQUESTED.  A VIDEO/TELEPHONIC
HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 4, 2020
AT 2:00 P.M. (PREVAILING CENTRAL TIME).  PARTIES WISHING TO
PARTICIPATE TELEPHONICALLY MUST DIAL IN USING THE COURT'S
TELECONFERENCE SYSTEM AT 832-917-1510 AND ENTERING
CONFERENCE CODE 954554.  PARTIES WHO ALSO WISH TO
PARTICIPATE BY VIDEOCONFERENCE MAY DO SO BY USE OF AN
INTERNET CONNECTION, USING THE WEBSITE
HTTPS://WWW.GOTOMEETING.COM/MEETING/JOIN-MEETING AND
ENTERING MEETING CODE "JudgeIsgur"

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT
EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST
EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE
PRIOR TO THE HEARING.  OTHERWISE, THE COURT MAY TREAT THE
PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

RELIEF IS REQUESTED NOT LATER THAN AUGUST 4, 2020.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

<u>Background</u>

1.      Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

2.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are an independent exploration and production ("**E&P**") company in the Gulf of Mexico. The Company is focused on the exploration and development of offshore oil and gas assets in the shallow water and deepwater Gulf of Mexico and the Gulf Coast region in the U.S.

3.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Dane in Support of Debtors' Chapter 11 Petitions and First Day*

*Relief* (the "**Dane Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## Jurisdiction

4.        The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5.        By this Motion, pursuant to sections 105(a) and 362 of the Bankruptcy Code, the Debtors request entry of interim and final orders authorizing the Debtors to establish procedures (the "**Procedures**") to protect the potential value of the Debtors' consolidated net operating loss carryforwards ("**NOLs**"), business interest expense carryforwards and other tax benefits (collectively, the "**Tax Attributes**"), for use during the pendency of these chapter 11 cases and in connection with a reorganization of the Debtors.  The Procedures apply to (a) common stock of Fieldwood Energy Inc. (the "**Common Stock**") and any options or similar rights (within the meaning of applicable Treasury Regulations (as defined herein)) ("**Options**") to acquire beneficial ownership (including direct and indirect ownership) of such stock and (b) any claim (for income tax reporting purposes) of a worthless stock deduction under section 165(g) of Title 26 of the United States Code (the "**Tax Code**") by a Majority Stockholder (as defined below) with respect to its beneficial ownership of Common Stock (a "**Worthless Stock Deduction**").  The Debtors request relief that the Court enter interim and final orders granting the relief requested herein effective *nunc pro tunc* to the Petition Date hereof.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Dane Declaration.

6.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**").  A proposed form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## Debtors' Tax Attributes

7.      The Debtors possess certain Tax Attributes, including, as of the Petition Date, estimated federal NOLs in excess of $170 million and estimated consolidated federal business interest expense carryforwards in excess of $465 million, and certain other favorable Tax Attributes.  The Tax Attributes are valuable assets of the Debtors' estates.

8.      The Tax Code generally permits a corporation to carry forward its NOLs and disallowed business interest expense to reduce future taxable income, thereby reducing such corporation's tax liability in future periods.  *See* 26 U.S.C. §§ 172, 163(j).

9.      Accordingly, absent any existing or intervening limitations, the Tax Attributes could substantially reduce the Debtors' U.S. federal income tax liability for current and future periods, including during the pendency of these chapter 11 cases and in connection with the implementation of the Debtors' chapter 11 plan, depending on future operating results and consummation of taxable asset dispositions by the Debtors.  The Tax Attributes are available to reduce the Debtors' federal income tax liability through the taxable year that includes the effective date of a chapter 11 plan and potentially thereafter, depending on the consequences of the restructuring.  The Tax Attributes, therefore, could translate into future tax savings over time, and any such savings could enhance the Debtors' cash position for the benefit of all parties in interest and contribute to the Debtors' efforts toward a successful reorganization.

10.      The Debtors' ability to utilize the Tax Attributes to reduce future tax liability is subject to certain potential statutory limitations.  Sections 382 and 383 of the Tax Code

limit a corporation's ability to utilize its NOLs, tax credits, and certain other tax benefits to offset future income once that corporation has undergone an "ownership change" within the meaning of section 382 of the Tax Code (an "**Ownership Change**").  Pursuant to section 382 of the Tax Code, an Ownership Change generally occurs when the percentage of a corporation's equity held by one or more of its "5-percent shareholders" (each, as that term is used in section 382 of the Tax Code, a "**5-Percent Shareholder**") increases by more than fifty (50) percentage points above the lowest percentage of the corporation's equity owned by such shareholder(s) at any time during the relevant testing period (usually three years).  *See id.* § 382(g).

11.     Further, section 382(g)(4)(D) of the Tax Code generally provides that, if (a) a 50-percent shareholder (which, for this purpose, includes a shareholder who owned at least fifty percent (50%) of the stock at any time during the last three years) in a corporation claims a worthless stock deduction with respect to such stock for any taxable year and (b) the stock with respect to which such worthless stock deduction is taken is held by the shareholder at the end of such taxable year, then the shareholder is treated as having acquired such stock on the first day of the shareholder's next taxable year and is treated as never having owned such stock during any prior year for purposes of testing whether an Ownership Change has occurred.

12.     The Debtors do not believe that Fieldwood Energy Inc. has undergone an Ownership Change prior to the Petition Date.  If an Ownership Change were to occur during the pendency of these chapter 11 cases, the availability and value of such Tax Attributes could be adversely impacted.  Accordingly, it is in the best interests of the Debtors and their stakeholders to institute procedures with respect to the trading of the beneficial ownership of Common Stock, and any claim of a Worthless Stock Deduction by a Majority Stockholder, that could result in an Ownership Change occurring *before* the effective date of a chapter 11 plan or any applicable

bankruptcy court order.  Such procedures would protect the Debtors' ability to use the Tax Attributes during the pendency of these chapter 11 cases and possibly thereafter.  As described below, even though an Ownership Change may occur *pursuant* to a confirmed chapter 11 plan (or any applicable bankruptcy court order), the limitations imposed may be significantly less restrictive.  Moreover, the benefits available under section 382 of the Tax Code in connection with a confirmed chapter 11 plan (or any applicable bankruptcy court order) cannot be applied retroactively to reduce the limitations imposed on a corporation's ability to utilize its tax benefits resulting from a *previous* Ownership Change (such as an Ownership Change occurring during the pendency of a chapter 11 case).  *See, e.g., id.* § 382(*l*)(6).[3]  Accordingly, pursuant to this Motion, the Debtors seek to put in place in interim and final orders procedures to monitor and potentially restrict (i) acquisitions, dispositions and trading with respect to the beneficial ownership (including direct and indirect ownership) of the Common Stock and Options to acquire beneficial ownership of the Common Stock, and (ii) the claiming of a Worthless Stock Deduction by any Majority Holder with respect to its beneficial ownership of the Common Stock.

### **Proposed Procedures Relating to Common Stock**

13.    By establishing the Procedures for monitoring the transfer of, and the claiming of a Worthless Stock Deduction by any Majority Stockholder with respect to, beneficial ownership of Common Stock, the Debtors can preserve their ability to seek the necessary relief if it appears that any such transfer(s) may jeopardize the Debtors' ability to utilize their Tax Attributes.  Therefore, the Debtors propose the following Procedures:[4]

---

[3] Although Section 382(l)(5) of the Tax Code also contains a special bankruptcy rule, the Debtors do not expect that rule to apply.

[4] The Procedures delineated herein summarize the principal portions of Exhibit 1 to the Proposed Interim Order, which sets forth the Procedures.

(a) <u>Definitions</u>.  For purposes of these Procedures, the following terms have the following meanings:

(i) "**Beneficial ownership**" of Common Stock and Options to acquire Common Stock shall be determined in accordance with section 382 of the Tax Code, the regulations promulgated by the U.S. Department of the Treasury under the Tax Code (the "**Treasury Regulations**"), and rulings issued by the Internal Revenue Service (the "**IRS**"), and the rules described herein, and shall include, without limitation, (A) direct and indirect ownership, determined without regard to any rule that treats stock of an entity as to which the constructive ownership rules apply as no longer owned by that entity (*e.g.,* a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (B) ownership by a holder's family members, (C) ownership by any group of persons acting pursuant to a formal or informal understanding among themselves to make a coordinated acquisition of stock, and (D) to the extent set forth in Treasury Regulations section 1.382-4, the ownership of an Option to acquire Common Stock.

(ii) "**Majority Stockholder**" shall mean (A) any person that beneficially owns at least 14,500,000 shares of Common Stock (representing approximately 47.5% of all issued and outstanding shares of Common Stock) or (B) any person that would be a "50-percent shareholder" (within the meaning of section 382(g)(4)(D) of the Tax Code) of Common Stock if such person claimed a Worthless Stock Deduction at any time on or after the Petition Date.

(iii) "**Entity**" shall mean any "entity" as such term is defined in Treasury Regulations section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition of stock.

(iv) "**Substantial Stockholder**" shall mean any person or Entity that beneficially owns at least 1,450,000 shares of Common Stock (representing approximately 4.75% of all issued and outstanding shares of Common Stock).

(b) <u>Notice of Substantial Ownership</u>.  Any person or Entity that beneficially owns, at any time on or after the Petition Date, Common Stock in an amount sufficient to qualify such person or Entity as a Substantial Stockholder shall file with this Court and serve upon (i) the Debtors, 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042 (Attn: Tommy Lamme); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Matthew S. Barr, Esq., Jessica Liou, Esq., Stuart J. Goldring, Esq. and Jonathan J. Macke, Esq.); (iii) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.); and (iv) counsel to any statutory committee of unsecured creditors appointed in these cases (a "**Creditors' Committee**") (collectively, the "**Disclosure Parties**") a notice of such person's or Entity's substantial ownership (a "**Substantial Stock Ownership Notice**"), in substantially the form annexed to the Proposed Orders as **Exhibit 2**, which describes specifically and in detail such person's or Entity's beneficial ownership of Common Stock, on or before the date that is the later of (x) twenty (20) calendar days after the entry of the order granting the requested relief or (y) ten (10) business days after such person or Entity qualifies as a Substantial Stockholder.  At the election of the Substantial Stockholder, the Substantial Stock Ownership Notice to be filed with this Court (but not the Substantial Stock Ownership Notice that is served upon the Disclosure Parties) may be redacted

to exclude the Substantial Stockholder's taxpayer identification number and the amount of Common Stock that the Substantial Stockholder beneficially owns.

(c) <u>Acquisition of Common Stock</u>.  At least twenty (20) business days prior to the proposed date of any transfer of beneficial ownership of Common Stock (including directly or indirectly, and including, to the extent set forth in Treasury Regulations section 1.382-4, the grant or other acquisition of Options to acquire beneficial ownership of Common Stock) or exercise of any Option to acquire beneficial ownership of Common Stock that would result in an increase in the amount of Common Stock beneficially owned by any person or Entity that currently is or, as a result of the proposed transaction, would be a Substantial Stockholder (a "**Proposed Acquisition Transaction**"), such person or Entity (a "**Proposed Transferee**") shall file with this Court and serve upon the Disclosure Parties a notice of such Proposed Transferee's intent to purchase, acquire, or otherwise accumulate beneficial ownership of Common Stock (an "**Acquisition Notice**"), in substantially the form annexed to the Proposed Orders as **Exhibit 3**, which describes specifically and in detail the Proposed Acquisition Transaction.  At the election of the Substantial Stockholder, the Acquisition Notice to be filed with this Court (but not the Acquisition Notice that is served upon the Disclosure Parties) may be redacted to exclude the Substantial Stockholder's taxpayer identification number and the amount of Common Stock that the Substantial Stockholder beneficially owns.

(d) <u>Disposition of Common Stock</u>.  At least twenty (20) business days prior to the proposed date of any transfer or other disposition of the beneficial ownership of Common Stock (including directly and indirectly, and including, to the extent set forth in Treasury Regulations section 1.382-4, Options to acquire beneficial ownership of Common Stock)  that would result in either a decrease in the amount of Common Stock beneficially owned by a Substantial Stockholder or a person or Entity ceasing to be a Substantial Stockholder (a "**Proposed Disposition Transaction**" and, together with a Proposed Acquisition Transaction, a "**Proposed Transaction**"), such person, Entity, or Substantial Stockholder (a "**Proposed Transferor**") shall file with this Court and serve upon the Disclosure Parties a notice of such Proposed Transferor's intent to sell, trade, or otherwise transfer the beneficial ownership of Common Stock (a "**Disposition Notice**" and, together with an Acquisition Notice, a "**Trading Notice**"), in substantially the form annexed to the Proposed Orders as **Exhibit 4**, which describes specifically and in detail the Proposed Disposition Transaction.  At the election of the Substantial Stockholder, the Trading Notice to be filed with this Court (but not the Trading Notice that is served upon the Disclosure Parties) may be redacted to exclude the Substantial Stockholder's taxpayer identification number and the amount of Common Stock that the Substantial Stockholder beneficially owns.

(e) <u>Notice of Status as a Majority Stockholder</u>.  Any person that currently is or becomes a Majority Stockholder shall file with this Court and serve upon the Disclosure Parties a notice of such status (a "**Majority Stockholder Notice**"), in substantially the form annexed to the Proposed Orders as **Exhibit 5**, which describes specifically and in detail such person's beneficial ownership of Common Stock, on or before the date that is the later of (x) twenty (20) calendar days after the entry of the order granting the requested relief or (y) ten (10) business days after such person qualifies as a Majority Stockholder.  At the election of the Majority Stockholder, the Majority Stockholder Notice to be filed with this Court (but not the Majority

Stockholder Notice that is served upon the Disclosure Parties) may be redacted to exclude the Majority Stockholder's taxpayer identification number.

    (f)  <u>Notice of Intent to Claim a Worthless Stock Deduction</u>.  At least twenty (20) business days before a Majority Stockholder files any federal income tax return, or any amendment to such a return, claiming a Worthless Stock Deduction for a tax year of the Majority Stockholder ending before the effective date of a plan of reorganization (the "**Plan**"), such Majority Stockholder shall file with this Court and serve upon the Disclosure Parties advanced written notice of the intended tax deduction (a "**Worthless Stock Deduction Notice**"), in substantially the form annexed to the Proposed Orders as **Exhibit 6**.  At the election of the Majority Stockholder, the Worthless Stock Deduction Notice to be filed with this Court (but not the Worthless Stock Deduction Notice that is served upon the Disclosure Parties) may be redacted to exclude the Majority Stockholder's taxpayer identification number.

    (g)  <u>Objection Procedures</u>.  The Debtors shall have fifteen (15) business days after the filing of a Trading Notice or a Worthless Stock Deduction Notice (the "**Objection Period**") to file with this Court and serve on a Proposed Transferee or a Proposed Transferor, as the case may be, or a Majority Stockholder, as applicable, an objection (each, an "**Objection**") to any Proposed Transaction described in such Trading Notice or any Worthless Stock Deduction described in such Worthless Stock Deduction Notice.  If the Debtors file an Objection by the expiration of the Objection Period (the "**Objection Deadline**"), then the applicable Proposed Transaction or Worthless Stock Deduction shall not be effective unless approved by a final and nonappealable order of this Court.  If the Debtors do not file an Objection by the Objection Deadline or if the Debtors provide written authorization to the Proposed Transferee or the Proposed Transferor, as the case may be, or the Majority Stockholder, as applicable, approving the Proposed Transaction or the Worthless Stock Deduction prior to the Objection Deadline, then such Proposed Transaction or Worthless Stock Deduction may proceed solely as specifically described in the applicable Trading Notice or Worthless Stock Deduction Notice.  To the extent that the Debtors receive a Trading Notice or Worthless Stock Deduction Notice and determine in their business judgment not to object, they shall provide written notice (which may be by electronic mail) of that decision as soon as reasonably practicable to counsel to the Ad Hoc Group of Secured Lenders.  Any further Proposed Transaction or Worthless Stock Deduction must be the subject of an additional Trading Notice or Worthless Stock Deduction Notice and Objection Period.

    (h)  <u>Noncompliance with the Procedures</u>.  Any acquisition, disposition, or trading in the beneficial ownership of Common Stock (including directly and indirectly, and Options to acquire beneficial ownership of Common Stock) in violation of these Procedures shall be null and void *ab initio* as an act in violation of the automatic stay under section 362 of the Bankruptcy Code and pursuant to the Bankruptcy Court's equitable powers under section 105(a) of the Bankruptcy Code.  In the event that a Majority Stockholder claims a Worthless Stock Deduction in violation of these Procedures, such holder shall be required to file an amended federal income tax return revoking such deduction.  Furthermore, any person or Entity that acquires, disposes of, or trades, or claims a worthless stock deduction with respect to, the beneficial ownership of Common Stock (including directly and indirectly, and Options to acquire beneficial ownership of Common Stock) in violation of these Procedures shall be subject to sanctions as provided by law.

(i)    <u>Debtors' Right to Waive</u>. The Debtors may, in their sole discretion, waive, in writing, any and all restrictions, stays, and notification Procedures contained in this notice.

<strong><u>Relief Requested Should Be Granted</u></strong>

**A.    The Automatic Stay Bars Any Equity Transfer that Would Diminish or Limit the Debtors' Interests in the Tax Attributes**

14.    In furtherance of the automatic stay provision of section 362 of the Bankruptcy Code and pursuant to section 105 of the Bankruptcy Code, the Debtors seek authority to monitor and approve (or disapprove) certain changes in, and certain worthless stock deduction claims by a Majority Stockholder with respect to, the beneficial ownership of Common Stock to protect against the occurrence of an Ownership Change during the pendency of these chapter 11 cases, and thereby to preserve the potential value of the Tax Attributes.

15.    Section 362 of the Bankruptcy Code enjoins all entities from, among other things, taking any action to obtain possession of property of or from the estate or to exercise control over property of the estate.  Section 541 of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of a debtor in property as of the commencement date of a chapter 11 case, including tax benefits.

16.    The Tax Attributes are valuable property of the Debtors' estates and thus are protected, by operation of the automatic stay, from actions that would adversely diminish their value, including direct or indirect transfers that would effect an Ownership Change.  It is well established that a debtor's NOLs are property of the debtor's estate protected by the automatic stay.  *See Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) ("[W]here a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."); *Nisselson v. Drew*

*Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them." (citing *Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 571-73 (2d Cir. 1991)); *In re Grossman's Inc.*, No. 97-695 (PJW), 1997 WL 33446314 (Bankr. D. Del. Oct. 9, 1997). The United States Court of Appeals for the Second Circuit, in its seminal decision, *In re Prudential Lines Inc.*, affirmed the application of the automatic stay to a debtor's tax benefits and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction that would have adversely affected the ability of the parent corporation's subsidiary to utilize its NOLs under the special relief provisions of section 382 of the Tax Code. *See* 928 F.2d at 573. As the Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with Congress' intention to "bring anything of value that the debtors have into the estate." Moreover, . . . [i]ncluding the right to a NOL carryforward as property of [a debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].

*Id.* (quoting H.R. Rep. No. 95-595, at 176 (1978)); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'" (quoting *Prudential Lines*, 928 F.2d at 572) (alteration in original)); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding that the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate).

17. In *Prudential* Lines, the Second Circuit determined that if the parent corporation were permitted to take a worthless stock deduction, its subsidiary's ability to carry forward its NOLs would be adversely impacted. The Second Circuit concluded that "despite the

fact that [the parent corporation's] action [was] not directed specifically at [the debtor subsidiary], it [nonetheless was] barred by the automatic stay as an attempt to exercise control over property of the estate." *Prudential Lines*, 928 F.2d at 573–574.

18.     In addition to finding that a debtor's NOLs are protected by the automatic stay, the Second Circuit also held that, pursuant to its equitable powers under Section 105(a) of the Bankruptcy Code, a bankruptcy court may issue a permanent injunction to protect such NOLs. *Id.* at 574.

19.     In *In re Phar-Mor, Inc.*, 152 B.R. 924 (Bankr. N.D. Ohio 1993), the bankruptcy court applied similar reasoning and granted the debtors' motion to prohibit transfers of their stock that could have had an adverse effect on their ability to utilize their NOLs, even though the debtors' stockholders had not stated any intent to sell their stock and the debtors had not shown that a sale that would trigger an Ownership Change was pending. *See id.* at 927.  Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist debtors in their reorganization process.  This asset is entitled to protection while [the debtors] move forward toward reorganization."  *Id.* (emphasis added).

20.     The bankruptcy court in *Phar-Mor* also concluded that, because the debtors were seeking to enforce the automatic stay, they did not have to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits.  The key elements for a stay . . . are the existence of property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.

*Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990))

21.     The imposition of procedures on equity trading and/or worthless stock deduction claims to protect a debtor against the possible loss of valuable tax attributes are regularly approved by this and other courts. *See, e.g.*, *In re Neiman Marcus Grp. Ltd.*, No. 20-32519 (DRJ) (Bankr. S.D. Tex. May 8, 2020) (approving and granting a final order allowing for notification procedures and restrictions on certain transfers of equity interests in the debtors and claims of worthless stock deduction with respect to the debtors' stock); *In re Pioneer Energy Servs. Corp.,* No. 20-31425 (DRJ) (Bankr. S.D. Tex. Mar. 2, 2020) (same); *In re McDermott Int'l, Inc.,* No. 20-30336 (DRJ) (Bankr. S.D. Tex. Jan. 23, 2020) (same); *In re Weatherford Int'l PLC*, No. 19-33694 DRJ (Bankr. S.D. Tex. July 16, 2019) (D. I. 172) (approving notification procedures and restrictions on certain transfers of claims against and equity interests in the debtors); *In re Checkout Holdings Corp.*, No. 18-12794 (D.I. 205) (Bankr. D. Del. Jan. 10, 2019) (approving notification procedures and restrictions on certain transfers of equity interests in and claims against the debtors); *In re HGIM Holdings, LLC*, No. 18-31080 (DRJ) (Bankr. S.D. Tex. Apr. 3, 2018) (approving notification procedures and restrictions on certain transfers of equity interests in the debtors); *In re Linn Energy, LLC*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. July 15, 2016) (approving and granting an interim order allowing for notification procedures and restrictions on certain transfers of equity interests in the debtors and claims of worthless stock deduction with respect to the debtors' stock); *In re Energy XXI LTD*, Case No. 16-31928 (DRJ) (Bankr. S.D. Tex. May 20, 2016) (D. I. 324) (approving notification procedures and restrictions on certain transfers of equity interests in the debtors).

22.     As the foregoing demonstrates, it is well settled that, pursuant to section 362(a)(3) of the Bankruptcy Code the automatic stay enjoins actions that would adversely affect a debtor's ability to utilize its NOLs and other tax benefits.

**B.  The Procedures Are Necessary and in the Best Interests of the Debtors, Their Estates, and Their Creditors**

23.     The Procedures are necessary to preserve the Debtors' ability to utilize their Tax Attributes.  The Debtors' ability to preserve their Tax Attributes may be jeopardized unless certain procedures are established immediately and *nunc pro tunc* to the Petition Date to ensure that trading in the beneficial ownership of Common Stock (including, in certain situations, Options to acquire beneficial ownership of Common Stock), and claiming certain worthless stock deductions with respect to the beneficial ownership of Common Stock, are either precluded or closely monitored and made subject to Court approval.

24.     Depending on the Debtors' tax profile during the pendency of these chapter 11 cases, future earnings and the consequences of a restructuring, the Debtors' ability to utilize the Tax Attributes may enhance the Debtors' prospects for a successful emergence from chapter 11. The relief requested herein is narrowly tailored to permit certain stock trading to continue, subject to Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws.

25.     The Debtors respectfully submit that the Procedures must be implemented as soon as possible.  Even if a transfer or worthless stock deduction claim were to be null and void under section 362 of the Bankruptcy Code or as a result of a final order of the Court that prohibited such a transfer or claim retroactively to the Petition Date, under federal income tax law, such transfer or claim nevertheless may be regarded as having occurred for tax purposes, in which event the Debtors' estates could suffer an irrevocable loss of value.  Accordingly, if a transfer or claim occurs that limits the Debtors' ability to utilize their Tax Attributes under section 382 of the Tax Code, the Debtors' ability to realize the value of their Tax Attributes may be permanently

diminished.  The relief requested, therefore, is crucial to prevent an irrevocable diminution of the value of the Debtors' estates.

26.     It is in the best interests of the Debtors and their stakeholders to impose procedures with respect to stock trading and worthless stock deduction claims that could result in an Ownership Change *before* the effective date of a chapter 11 plan or any applicable bankruptcy court order.  The Procedures would permit the Debtors' to utilize the Tax Attributes, if necessary, during the pendency of these chapter 11 cases and in connection with a reorganization of the Debtors.

27.     With respect to an Ownership Change that occurs *pursuant to* a confirmed chapter 11 plan or any applicable bankruptcy court order, the limitations imposed by section 382 of the Tax Code are significantly less restrictive than those applicable to an Ownership Change that occurs before the effective date of (or otherwise outside of) a chapter 11 plan.  *See, e.g.*, 26 U.S.C. §§ 382($l$)(5), ($l$)(6).

28.     Specifically, section 382($l$)(6) of the Tax Code provides that, if a debtor undergoes an Ownership Change pursuant to a chapter 11 plan (and section 382($l$)(5) of the Tax Code does not apply), then the appropriate value of the Debtors for purposes of calculating the annual limitation under section 382 of the Tax Code shall reflect the increase in value of the Debtors resulting from any surrender or cancellation of creditors' claims.  Generally, under section 382 of the Tax Code, the taxable income of a loss corporation available for offset by pre-Ownership Change Tax Attributes is annually limited to an amount equal to the long-term tax-exempt bond rate times the value of the loss company's stock *immediately before* the Ownership Change.  Thus, assuming the equity value of the Debtors increases as a result of the reorganization, section 382($l$)(6) of the Tax Code will provide for a higher (and therefore less restrictive) annual

limitation than would result under the general rules of section 382 of the Tax Code, thereby preserving the Debtors' ability to utilize a greater portion of its otherwise available Tax Attributes to offset any post-Ownership Change income.  In all circumstances, it is in the best interests of the Debtors and their stakeholders for the Court to grant the requested relief in order to prevent an Ownership Change prior to the effective date of a chapter 11 plan or any applicable bankruptcy court order.   In addition, under certain circumstances, section 382(*l*)(5) of the Tax Code may apply.  Under that provision, a debtor corporation is not subject to the annual limitation ordinarily imposed by section 382 of the Tax Code with respect to an Ownership Change, provided that the Ownership Change resulted from the consummation of a chapter 11 plan or pursuant to any applicable bankruptcy court order and that the debtor's pre-Ownership Change shareholders and/or certain qualified creditors emerge from the reorganization owning at least fifty percent (50%) of the total value and voting power of the reorganized debtor's stock immediately after the Ownership Change.

29.     For the foregoing reasons, relief requested is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should authorize the Debtors to relief requested.

### Bankruptcy Rule 6003(b) Has Been Satisfied

30.     Pursuant to Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first 21 days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm.  As described herein and in the Dane Declaration, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11.  Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

31.     As discussed herein, the Tax Attributes are a valuable asset of the Debtors' estates.  In addition, once a Tax Attribute is limited under section 382 of the Tax Code, its use is limited forever.  Absent granting the relief requested herein on an interim basis, at the outset of these chapter 11 cases, the Debtors may be irreparably harmed by any equity trading of Common Stock or claims of a Worthless Stock Deduction that occurs prior to the Court's entry of an order granting this Motion on a final basis.  By this Motion, the Debtors seek to implement Procedures that would protect against such irreparable harm.  Accordingly, to the extent that Bankruptcy Rule 6003 applies to the relief requested herein, it does not require the Court to wait twenty-one (21) days before entering the Proposed Interim Order.

32.     Contemporaneously herewith, the Debtors are seeking approval of interim and final orders, which provide for, among other things, the Debtors' entry into a postpetition financing facility (the "**DIP Facility**") and the use of cash collateral (any order entered by the Court approving the Debtors' entry into such postpetition financing facility and/or the use of cash collateral, the "**DIP Order**" and, the definitive documentation for such facility, the "**DIP Documents**").  The DIP Order and the DIP Documents contain terms that limit and otherwise apply to the Debtors' ability to utilize certain of the relief requested herein.  For the avoidance of doubt, the relief described and requested herein and/or granted by any order issued pursuant hereto is subject in all respects to the terms of the DIP Order and the DIP Documents.

**Reservation of Rights**

33.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any

claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

### Notice

34.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn: William L. Wallander, Esq. and Bradley R. Foxman, Esq.), as counsel to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham Jr., Esq. and Martha Wyrick, Esq.), as counsel to the Ad Hoc Group of Secured Lenders; (v) Shipman & Goodwin LLP, 400 Park Ave, 5th Floor, New York, NY 10022 (Attn:  Nathan Plotkin, Esq.), as counsel to Cantor Fitzgerald Securities, the FLTL Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606 (Attn:  Joshua Spencer, Esq. and Anastasia Sotiropolous, Esq.), as counsel to Cortland Capital Market Services LLC, the SLTL Administrative Agent; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of Texas; (ix) the Securities and Exchange Commission; (x) any other party entitled to

notice pursuant to Bankruptcy Rule 2002; and (xi) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## **No Previous Request**

35.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  August 4, 2020
       Houston, Texas

                    Respectfully submitted,

                    /s/ Alfredo R. Pérez
                    WEIL, GOTSHAL & MANGES LLP
                    Alfredo R. Pérez (15776275)
                    700 Louisiana Street, Suite 1700
                    Houston, Texas 77002
                    Telephone:  (713) 546-5000
                    Facsimile:  (713) 224-9511
                    Email:   Alfredo.Perez@weil.com

                    -and-

                    WEIL, GOTSHAL & MANGES LLP
                    Matthew S. Barr (*pro hac vice* pending)
                    Jessica Liou (*pro hac vice* pending)
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone:  (212) 310-8000
                    Facsimile:  (212) 310-8007
                    Email:   Matt.Barr@weil.com
                              Jessica.Liou@weil.com

                    *Proposed Attorneys for Debtors*
                    *and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on August 4, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.


  _/s/  Alfredo R. Pérez_____
  Alfredo R. Pérez