IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Joint Administration Requested) (Emergency Hearing Requested) |

**EMERGENCY MOTION OF DEBTORS FOR AN ORDER
(I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE
ASSURANCE OF PAYMENT TO UTILITY COMPANIES; (II) ESTABLISHING
PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES;
(III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING,
OR DISCONTINUING SERVICE; AND (IV) GRANTING RELATED RELIEF**

**EMERGENCY RELIEF HAS BEEN REQUESTED. A VIDEO/TELEPHONIC HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 4, 2020 AT 2:00 P.M. (PREVAILING CENTRAL TIME). PARTIES WISHING TO PARTICIPATE TELEPHONICALLY MUST DIAL IN USING THE COURT'S TELECONFERENCE SYSTEM AT 832-917-1510 AND ENTERING CONFERENCE CODE 954554. PARTIES WHO ALSO WISH TO PARTICIPATE BY VIDEOCONFERENCE MAY DO SO BY USE OF AN INTERNET CONNECTION, USING THE WEBSITE HTTPS://WWW.GOTOMEETING.COM/MEETING/JOIN-MEETING AND ENTERING MEETING CODE "JudgeIsgur."**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN AUGUST 4, 2020.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1. Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  The Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

2. The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are an independent exploration and production ("**E&P**") company in the Gulf of Mexico. The Company is focused on the exploration and development of offshore oil and gas assets in the shallow water and deepwater Gulf of Mexico and the Gulf Coast region in the U.S.

3. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Dane in Support of the Debtors' Chapter 11 Petitions and First Day*

*Relief* (the "**Dane Declaration**"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## Jurisdiction

4. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

5. By this Motion, pursuant to sections 105(a) and 366 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors request entry of an order (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies (as defined below), (ii) establishing procedures for resolving objections by the Utility Companies relating to the adequacy of the Debtors' proposed adequate assurance, (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on account of the commencement of these chapter 11 cases or outstanding prepetition invoices, and (iv) granting related relief.

6. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

## Debtors' Utilities

**A. Utility Companies**

7. In the ordinary course of business, the Debtors incur utility expenses, including electricity, natural gas, water, sewage, telecommunications, waste disposal, and other utility services (collectively, the "**Utility Services**") from a number of utility companies

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Dane Declaration.

3

(collectively, the "**Utility Companies**"), which are generally paid on a monthly basis. A nonexclusive list of Utility Companies that provide Utility Services to the Debtors as of the Petition Date is provided on **Exhibit 1** annexed to the Proposed Order (the "**Utility Services List**").[3]

8. Preserving uninterrupted Utility Services is essential to the Debtors' ongoing operations. Should any Utility Company alter, refuse or discontinue service, even briefly, the Debtors' business operations could be severely disrupted. Such a result could jeopardize the Debtors' reorganization efforts to the detriment of all parties in interest. Accordingly, it is essential that the Utility Services continue uninterrupted during these chapter 11 cases.

9. To the best of the Debtors' knowledge, there are no material defaults or arrearages of significance for the Debtors' undisputed invoices for prepetition Utility Services, other than payment interruptions that may have been caused by the commencement of these chapter 11 cases. Based on their monthly average for the 12 months prior to the Petition Date, the Debtors estimate that their cost of Utility Services for the next 30 days will be approximately $662,500.

**B. Proposed Adequate Assurance**

10. The Debtors intend to pay all postpetition obligations owed to the Utility Companies in a timely manner and have sufficient funds to do so. To provide the Utility Companies with adequate assurance pursuant to section 366 of the Bankruptcy Code, the Debtors propose to deposit cash in an amount equal to approximately two weeks' cost of Utility Services (the "**Adequate Assurance Deposit**"), calculated using the historical average for such payments during the 12 months prior to the Petition Date, into a segregated account for the benefit of the

---

[3] The inclusion of any entity in, or omission of any entity from, the Utility Services List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

4

Utility Companies (the "**Utility Deposit Account**"). The Adequate Assurance Deposit may be adjusted by the Debtors if the Debtors terminate any of the Utility Services provided by a Utility Company, make other arrangements with certain Utility Companies for adequate assurance of payment, determine that an entity listed on the Utility Services List is not a utility company as defined by section 366 of the Bankruptcy Code, or supplement the Utility Services List to include additional Utility Companies. Based on the foregoing, the Debtors estimate that the total amount of the Adequate Assurance Deposit will be approximately $331,250.

11. The Adequate Assurance Deposit will be placed into the Utility Deposit Account within 20 days after the Petition Date and will be held by the Debtors in the Utility Deposit Account for the benefit of the Utility Companies on the Utility Services List during the pendency of these chapter 11 cases. No liens will encumber the Adequate Assurance Deposit or the Utility Deposit Account.

12. Additionally, if the Debtors terminate any of the Utility Services provided by a Utility Company, the Debtors request that they immediately be permitted to reduce the Adequate Assurance Deposit to reflect the termination of such Utility Company.

13. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**"), constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

**C. Proposed Adequate Assurance Procedures**

14. Any Utility Company that is not satisfied with the Proposed Adequate Assurance may request additional or different adequate assurance of future payment (the "**Adequate Assurance Procedures**") pursuant to the procedures set forth below:

5

a. Within three business days after entry of the Proposed Order, the Debtors shall fax, e-mail, serve by mail, or otherwise expeditiously send a copy of the Motion and the Proposed Order to the Utility Companies on the Utility Services List.

b. The funds in the Utility Deposit Account shall constitute adequate assurance for each Utility Company in the amount set forth for such Utility Company in the column labeled "Proposed Adequate Assurance" on the Utility Services List.

c. If an amount relating to Utility Services provided postpetition by a Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Utility Deposit Account by giving notice to (i) proposed counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Jessica Liou, Esq. and Moshe A. Fink, Esq.); (ii) the Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, TX 77002; (iii) counsel to the Prepetition Administrative Agent under the FLFO Credit Agreement, Vinson & Elkins, LLC, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 775201 (Attn: William L. Wallander, Esq. and Bradley R. Foxman, Esq.); (iv) counsel to the Ad Hoc Group of Secured Lenders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.); and (v) counsel for any official committee of unsecured creditors appointed in these chapter 11 cases (collectively, the "**Utility Notice Parties**"). The Debtors shall honor such request within five business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Company receives a disbursement from the Utility Deposit Account, the Debtors shall replenish the Utility Deposit Account in the amount so disbursed.

d. The portion of the Adequate Assurance Deposit attributable to each Utility Company shall be returned to the Debtors automatically, without further order of the Court, on the earlier of (i) reconciliation and payment by the Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company, (ii) the effective date of any chapter 11 plan confirmed in these chapter 11 cases, or (iii) the consummation of a sale, pursuant to section 363 of the Bankruptcy Code, of all or substantially all the assets of the Debtors.

e. Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "**Additional Assurance Request**") on the Utility Notice Parties.

f. The Additional Assurance Request must (i) be made in writing, (ii) set forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), and the outstanding balance for each such account, (iii) explain why the Utility Company believes the Adequate Assurance Deposit is not adequate assurance of payment, (iv) summarize the Debtors' payment history relevant to the affected account(s), (v) certify the amount that is equal to two weeks of the Utility Services provided by the Utility Company to the Debtors, calculated as a historical average over the 12-month period preceding the Petition Date, and (vi) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services provided by such Utility Company.

g. An Additional Assurance Request may be made at any time. If a Utility Company does not file and serve an Additional Assurance Request, the Utility Company will be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with section 366 of the Bankruptcy Code and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

h. The Debtors may, without further order from the Court, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtors may, in connection with any such agreement, provide a Utility Company with additional adequate assurance of payment including cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

i. If the Debtors and the Utility Company are not able to reach a resolution within 30 days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court at the next regularly scheduled omnibus hearing to determine the adequacy of assurances of payment with respect to a particular Utility Company (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code.

j. Pending resolution of the Determination Hearing, the Utility Company filing such Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

k. Notwithstanding anything in these procedures to the contrary, the Court shall conduct a hearing within 30 days following the Petition Date to resolve any objections to these procedures in the event any are timely filed by the Utility Companies.

### D. Subsequent Modifications of Utility Services List

15. Although the Debtors have made an extensive and good faith effort to identify all of the Utility Companies that provide Utility Services as set forth on the Utility Services List, certain Utility Companies may not be listed therein. To the extent the Debtors identify additional Utility Companies, the Debtors shall promptly file amendments to the Utility Services List and serve copies of the order granting this Motion on any newly identified Utility Companies in time for a final hearing on this matter, should one be required, set in accordance with paragraph 41 of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas*. In addition, the Debtors will increase the amount of the Adequate Assurance Deposit to account for any newly identified Utility Companies. The Debtors request that the Proposed Order bind all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List.

### The Proposed Adequate Assurance is Sufficient and the Proposed Adequate Assurance Procedures are Reasonable and Appropriate

16. The relief requested in this Motion will ensure the continuation of the Debtors' business at this critical juncture as the Debtors transition into chapter 11. The relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtors could be forced to address multiple requests by Utility Companies in a disorganized manner when the Debtors' efforts should be more productively focused on restructuring their business for the benefit of all parties in interest.

**A.      Proposed Adequate Assurance Is Sufficient**

17. Section 366 of the Bankruptcy Code is designed to serve the dual purposes of protecting a debtor from being cut off from utility services and providing utility companies with "adequate assurance" that the debtor will be able to pay for postpetition services. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N 5963, 6306. To that end, pursuant to

8

section 366(c) of the Bankruptcy Code, during the first 30 days of a chapter 11 case, a utility company may not alter, refuse, or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of a chapter 11 case or unpaid prepetition amounts, but after the first 30 days, however, a utility company may alter, refuse, or discontinue service if a debtor does not provide adequate assurance of payment for postpetition utility services in satisfactory form.

18. Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse, or discontinue a debtor's utility service if the utility does not receive "adequate assurance of payment" for postpetition utility services from the debtor within 30 days after the commencement of the debtor's chapter 11 case. Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" of postpetition charges as "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A).

19. Section 366(c)(1)(A) of the Bankruptcy Code defines "assurance of payment" to mean several enumerated forms of security (*e.g.*, a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other mutually agreed upon security), while section 366(c)(1)(B) expressly excludes from such definition an administrative expense priority for a utility's claim. In addition, section 366(c)(3)(B) of the Bankruptcy Code provides a list of factors that courts are *not* to consider when evaluating whether a proposed adequate assurance payment is in fact adequate. These factors include (i) the absence of security before the petition date, (ii) the debtor's history of timely payments, and (iii) the availability of an administrative expense priority.

20. Although section 366(c) of the Bankruptcy Code clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting such section, did not divest this Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Company. *See* 11 U.S.C. § 366(c). Specifically, section 366(c)(3)(A) states that "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment." Thus, there is nothing to prevent a court from deciding, on the facts of the case before it, that the amount required of a debtor to provide adequate assurance of payment to a utility company should be nominal or even zero. *See, e.g.*, *In re SQLC Senior Living Ctr. at Corpus Christi, Inc. d/b/a Mirador*, Case No. 19-20063 (DRJ) (Bankr. S.D. Tex. Feb. 12, 2019) (Docket No. 40); *In re Pac-West Telecomm, Inc.*, Case No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) (Docket No. 39) (approving adequate assurance in the form of one-time supplemental prepayment to each utility company equal to prorated amount of one week's charges). Prior to the enactment of section 366(c), courts frequently made such rulings pursuant to section 366(b). *See Va. Elec. & Power Co. v. Caldor, Inc.,* 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

21. Although section 366(c)(2) of the Bankruptcy Code allows a utility to take action if the debtor fails to provide adequate assurance of payment that is "satisfactory" to the utility, it is the bankruptcy court and not the utility provider that is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration the relationship between the debtor and the

utility. *See, e.g.*, *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"); *see, e.g.*, *In re Heard*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (holding that since the utility had not had any difficulty with the debtors during 14 years of service, "the utility need[ed] no adequate assurance"). Indeed, section 366 of the Bankruptcy Code only requires that assurance of payment be "adequate," and courts construing section 366(b) have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g.*, *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'" (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.").

22. Further, courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Caldor*, 117 F.3d at 650. Indeed, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full." *In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338 (CS), 2011 WL 5546954 at *5 (S.D.N.Y. Nov. 14, 2011) (citations omitted).

11

23. Here, the Utility Companies are adequately assured against any risk of nonpayment for future services. To the best of the Debtors' knowledge, there are no material defaults or arrearages for the Debtors' undisputed invoices for prepetition Utility Services, other than payment interruptions that may be caused by the commencement of these chapter 11 cases. Accordingly, the Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provide assurance of the Debtors' payment of their future obligations to the Utility Companies. Moreover, termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.,* No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *In re Monroe Well Serv., Inc.,* 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it.").

24. Courts have consistently found that adequate assurance of 50% of a debtor's estimated monthly cost or two weeks' estimated utilities cost satisfies the requirements of section 366 of the Bankruptcy Code. *See, e.g.*, *In re CEC Ent., Inc.*, Case No. 20-33163 (MI) (Bankr. S.D. Tex. June 29, 2020) (Docket No. 109); *In re Gavilan Res. LLC*, Case No. 20-32656 (DRJ) (Bankr. S.D. Tex. May 15, 2020) (Docket No. 5); *In re SpeedCast Int'l Ltd.*, Case No. 20-32243 (MI) (Bankr. S.D. Tex. Apr. 27, 2020) (Docket No. 116); *In re EP Energy Corp.*, Case No. 19-35654 (MI) (Bankr. S.D. Tex. Oct. 7, 2019) (Docket No. 99); *In re Halcón Res. Corp.*, Case No. 19-34446 (DRJ) (Bankr. S.D. Tex. Aug. 8, 2019) (Docket No. 64); *In re Westmoreland Coal Co.*, Case No. 18-35672 (DRJ) (Bankr. S.D. Tex. Oct. 11, 2018) (Docket No. 176); *In re iHeartMedia,*

*Inc.*, Case No. 18-31274 (MI) (Bankr. S.D. Tex. Mar. 15, 2018) (Docket No. 111); *In re Fieldwood Energy LLC*, Case No. 18-30648 (DRJ) (Bankr. S.D. Tex. Feb. 16, 2018) (Docket No. 69). In light of the foregoing, the Proposed Adequate Assurance is sufficient.

**B.  Adequate Assurance Procedures Are Reasonable and Appropriate**

25.  The Court has the power to approve these Adequate Assurance Procedures pursuant to section 105(a) of the Bankruptcy Code, which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The proposed Adequate Assurance Procedures are reasonable because they will ensure that the Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance. If a Utility Company does not believe the Proposed Adequate Assurance is "satisfactory," such Utility Company may file an objection or an Adequate Assurance Request pursuant to the Adequate Assurance Procedures described above.

26.  Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366, and this Court has regularly approved similar procedures in comparable complex chapter 11 cases. Accordingly, the Proposed Adequate Assurance and the Adequate Assurance Procedures are necessary, appropriate, and in the best interests of the Debtors' estates and all other parties-in-interest in these chapter 11 cases. Accordingly, the Court should grant the relief requested herein in full.

**Bankruptcy Rule 6003(b) Has Been Satisfied**

27.  Pursuant to Bankruptcy Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first 21 days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm. As described herein and in the Dane

13

Declaration, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to transition smoothly into chapter 11. Any lapse in Utility Services could severely disrupt the Debtors' businesses and thus jeopardize the success of the chapter 11 cases. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

28. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

### DIP Order and DIP Documents Control

29. Contemporaneously herewith, the Debtors are seeking approval of interim and final orders, which provide for, among other things, the Debtors' entry into a postpetition financing facility (the "**DIP Facility**") and the use of cash collateral (any order entered by the Court approving the Debtors' entry into such postpetition financing facility and/or the use of cash collateral, the "**DIP Order**" and, the definitive documentation for such facility, the "**DIP Documents**"). The DIP Order and the DIP Documents contain terms that limit and otherwise apply to the Debtors' ability to utilize certain of the relief requested herein. For the avoidance of doubt, the relief described and requested herein and/or granted by any order issued pursuant hereto is subject in all respects to the terms of the DIP Order and the DIP Documents.

### Reservation of Rights

30. Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any

14

claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## Notice

31. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn: William L. Wallander, Esq. and Bradley R. Foxman, Esq.), as counsel to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham Jr., Esq. and Martha Wyrick, Esq.), as counsel to the Ad Hoc Group of Secured Lenders; (v) Shipman & Goodwin LLP, 400 Park Ave, 5th Floor, New York, NY 10022 (Attn: Nathan Plotkin, Esq.), as counsel to Cantor Fitzgerald Securities, the FLTL Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606 (Attn: Joshua Spencer, Esq. and Anastasia Sotiropolous, Esq.), as counsel to Cortland Capital Market Services LLC, the SLTL Administrative Agent; (vii) the Internal Revenue Service; (viii) the United States Attorney's

Office for the Southern District of Texas; (ix) the Securities and Exchange Commission; (x) the Utility Companies; (xi) any other party entitled to notice pursuant to Bankruptcy Rule 2002; and (xii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

32. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: August 4, 2020
       Houston, Texas

Respectfully submitted,

/s/ *Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (*pro hac vice* pending)
Jessica Liou (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
          Jessica.Liou@weil.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on August 4, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.

                                                                                                  */s/ Alfredo R. Pérez*
                                                                                                  Alfredo R. Pérez