**<u>Exhibit A</u>**

**DIP Term Sheet**

**EXHIBIT A**
**FIELDWOOD ENERGY LLC**
**DIP FACILITY TERM SHEET**

This term sheet (the "**DIP Facility Term Sheet**") sets forth the principal terms of a secured debtor-in-possession credit facility (the "**DIP Facility**") and consent to use of the Prepetition Collateral (as defined below). The DIP Credit Agreement (as defined below) evidencing the DIP Facility shall be entered into with the DIP Facility Borrower (as defined below), certain of its subsidiaries, and Fieldwood Energy Inc. in connection with their respective cases under chapter 11 (the "**Chapter 11 Cases**"; the debtors and debtors-in-possession thereunder, the "**Debtors**" and each a "**Debtor**") of title 11 of the United States Code (the "**Bankruptcy Code**"). The DIP Facility and the Debtors' use of Prepetition Collateral will be subject to the approval of the Bankruptcy Court (as defined below) and consummated in the Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") in accordance with (i) the Interim DIP Order (as defined below) of the Bankruptcy Court authorizing the Debtors to enter into the DIP Facility and use the Prepetition Collateral on an interim basis prior to entry of the Final DIP Order, (ii) the Final DIP Order (as defined below) of the Bankruptcy Court authorizing the Debtors to enter into the DIP Facility on a final basis and (ii) the DIP Documents (as defined below) to be executed by the Debtors. Capitalized terms used and not defined in this DIP Facility Term Sheet shall have their respective meanings as defined in the Restructuring Support Agreement to which this DIP Facility Term Sheet is attached (the "**Restructuring Support Agreement**").

| **SUMMARY OF PRINCIPAL TERMS** | |
|---|---|
| **DIP Facility Borrower** | Fieldwood Energy LLC, as a debtor and debtor-in-possession (the "**DIP Facility Borrower**"). |
| **Guarantors** | Fieldwood Energy Inc. and each subsidiary of the DIP Facility Borrower that is a Debtor, each as a debtor and debtor-in-possession (the "**Guarantors**" and, together with the DIP Facility Borrower, the "**Loan Parties**"), it being understood and agreed that each subsidiary of the DIP Facility Borrower that is an obligor under any of the Prepetition Facilities (as defined below) shall be a Guarantor. |
| **DIP Facility Agent** | Cantor Fitzgerald Securities ("**Cantor**"), as administrative agent and collateral agent (in such capacities, the "**DIP Facility Agen**t") |
| **DIP Lenders** | The entities specified on Exhibit D to the Restructuring Support Agreement, each of which is a lender (or manages funds or other entities that are lenders) under the Prepetition FLTL Credit Agreement (as defined below) on the Petition Date (as defined below), or an affiliate or related fund that is a designee of any of the foregoing, as lenders under the DIP Facility (in such capacities, together with their successors and permitted assigns, collectively, the "**DIP Lenders**"). <br><br> On the Closing Date (as defined below), the Initial DIP Loan (as defined below) will be made, and all DIP Commitments (as defined below) will be held, by Cantor or another initial DIP Lender as determined by the Requisite DIP Backstop Parties. The Initial DIP Loan will be assigned among the DIP Lenders in accordance with their allocated commitments after the Closing Date. |
| **Amount & Type** | A multiple-draw senior secured debtor-in-possession US dollar term loan credit facility in an aggregate principal amount not to exceed $100 million (the commitments under the DIP Facility, the "**DIP Commitments**"; the loans under the DIP Facility, the "**DIP Loans**"), subject to the terms and conditions of this DIP Facility Term Sheet and the DIP Documents. The borrowing of DIP Loans shall permanently decrease the DIP |

| | |
|---|---|
| | Commitments, and any DIP Loans repaid may not be reborrowed.<br><br>Upon the Bankruptcy Court's entry of the Interim DIP Order (as defined below) and upon satisfaction of all other applicable conditions precedent described below, the DIP Facility Borrower shall make an initial draw of DIP Loans in an aggregate amount equal to $10,000,000 (the "**Initial DIP Loan**").  Thereafter, upon satisfaction of all other applicable conditions precedent described below, the DIP Facility Borrower may make an additional draw of DIP Loans on or prior to the finalization of the Apache Definitive Documents (such date, the "**APA Milestone Satisfaction Date**") in an aggregate amount equal to $15,000,000 (the "**Incremental DIP Loan**").  For the avoidance of doubt, the amount of DIP Loans that may be made prior to the entry of the Final DIP Order shall not exceed $25,000,000.<br><br>Subject to the Bankruptcy Court's entry of the Final DIP Order (as defined below) and upon satisfaction of all other applicable conditions precedent (excluding, for the avoidance of doubt, the occurrence of the APA Milestone Satisfaction Date solely in respect of the Incremental DIP Loan), the DIP Facility Borrower may make up to 5 additional draws of DIP Loans on any date prior to the DIP Termination Date (as defined below), each in an aggregate amount equal to $20,000,000 (*provided* that such amount may be less than $20,000,000 if such amount represents either the Incremental DIP Loan or all remaining availability under the DIP Facility). The DIP Commitments will automatically terminate on the earlier of the DIP Termination Date and the date on which any Chapter 11 plan for the reorganization of the DIP Facility Borrower or any other Debtor is confirmed. |
| **Use of Proceeds** | Solely to (i) make payments for general corporate or working capital purposes in a manner consistent with the then current Approved Budget (as defined below) (subject to any permitted variance), (ii) pay required debt service on the DIP Loans, (iii) pay the fees, costs and expenses of the DIP Facility Agent and the DIP Lenders, (iv) pay fees and expenses of professionals associated with the Chapter 11 Cases and (v) provide Adequate Protection (as defined below). No part of the proceeds of the DIP Loans may be used by the DIP Facility Borrower or any other Loan Party, whether directly or indirectly, in a manner contrary to the DIP Orders. |
| **DIP Termination Date** | The earliest of (i) the date falling 12 months after the commencement of the Chapter 11 Cases (such commencement date, the "**Petition Date**"), (ii) the effective date of any Chapter 11 plan for the reorganization of the DIP Facility Borrower or any other Debtor, (iii) the consummation of a sale or other disposition of all or substantially all (x) assets or (y) Specified Assets of the Debtors under Bankruptcy Code section 363, (iv) the date of acceleration of the DIP Loans and termination of the DIP Commitments upon and during the continuance of an event of default under the DIP Facility and (v) 45 days after the Petition Date (or such later date as agreed to by the Required DIP Lenders (as defined below)), unless the Final DIP Order has been entered by the Bankruptcy Court on or prior to such date  (such earliest date, the "**DIP Termination Date**"). |

| **Interest Rate** | LIBOR + 8.75% per annum, or ABR + 7.75%, in each case payable monthly in cash.<br><br>During the continuance of an event of default, all overdue amounts under the DIP Facility will bear interest at a rate equal to (i) in the case of principal, 2.00% per annum, plus the otherwise applicable rate or (ii) in the case of any obligations other than principal, the then applicable rate for ABR DIP Loans plus 2.00% per annum, which in each case shall be payable on demand from time to time. |
|---|---|
| **LIBOR Floor** | 1.00% |
| **Amortization** | None. |
| **Mandatory Prepayments** | Subject to the terms of the DIP Orders, mandatory prepayments under the DIP Facility shall be required with 100% of the net cash proceeds from (a) issuance of any indebtedness (with exceptions for permitted indebtedness) and (b) sales or other dispositions (including casualty events) of any assets (excluding sales of inventory in the ordinary course of business and other customary exceptions, minimum liquidity thresholds and other thresholds to be agreed). |
| **Voluntary Prepayments** | Amounts outstanding under the DIP Facility may be voluntarily repaid at any time without premium or penalty. |
| **Interim DIP Order** | The interim order approving the DIP Facility and the Debtor's use of Prepetition Collateral, which shall be in form and substance acceptable to the Required DIP Lenders and the Debtors (the "**Interim DIP Order**"), shall, among other things, authorize and approve (i) the full amount of the DIP Commitments and the borrowing and making of the DIP Loans in an amount up to $100 million, (ii) the DIP Facility Borrower to draw the Initial DIP Loan, (iii) the granting of the super-priority claims and liens against the Debtors and their assets in accordance with this DIP Facility Term Sheet and the DIP Documents, (iv) the payment of all reasonable and documented fees and expenses (including the fees and expenses of outside counsel and financial advisors) required to be paid to the DIP Facility Agent and the DIP Lenders as described in "Fees and Expenses Indemnification" by the Debtors, in the case of expenses incurred on or prior to the Closing Date, to the extent invoiced at least two business days prior to the Closing Date (or any later date reasonably acceptable to the DIP Facility Borrower), (v) the use of cash collateral, *provided* that the Adequate Protection (as defined below) shall be granted in accordance with the terms set forth in this DIP Facility Term Sheet and (vi) the payment of the Upfront Fees and the Backstop Fees (each as defined below), which payment shall not be subject to reduction, setoff or recoupment. |
| **Final DIP Order** | The final order approving the DIP Facility, which shall be substantially in the same form as the Interim DIP Order (with such modifications as are necessary to convert the Interim DIP Order into a final order) and in form and substance acceptable to the Required DIP Lenders and the Debtors (the "**Final DIP Order**" and, together with the Interim DIP Order, the "**DIP Orders**"), shall, among other things, authorize and approve the DIP Facility Borrower to draw the full amount of the DIP Commitments. |
| **Prepetition Facilities** | "**Prepetition FLFO Credit Agreement**" – that certain Second Amended and Restated Credit Agreement- First Out, dated as of June 28, 2019, among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, Goldman Sachs Bank USA, as administrative agent (the "**Prepetition FLFO Agent**"), the Lenders and Issuing Banks (each as defined therein) party thereto and the other agents party thereto from time to time (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the date hereof), and the "Secured Parties" thereunder the "**Prepetition FLFO Secured Parties**." |

| | |
|---|---|
| | "**Prepetition FLTL Credit Agreement**" – that certain Amended and Restated First Lien Term Loan Agreement, dated as of April 11, 2018, among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, Cantor Fitzgerald Securities as administrative agent (the "**Prepetition FLTL Agent**"), the lenders party thereto and the other agents party thereto from time to time (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the date hereof, including by that certain Temporary Limited Forbearance and Amendment, dated as of May 7, 2020 (as amended prior to the date hereof, the "**Prepetition FLTL Forbearance Agreement**")), and the "Secured Parties" thereunder the "**Prepetition FLTL Secured Parties**".<br><br>"**Prepetition SLTL Credit Agreement**" – that certain Amended and Restated Second Lien Term Loan Agreement, dated as of April 11, 2018, among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, Cortland Capital Market Services LLC, as administrative agent and collateral agent, the lenders party thereto and the other agents party thereto from time to time (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the date hereof), and the "Secured Parties" thereunder the "**Prepetition SLTL Secured Parties**" (the Prepetition SLTL Secured Parties, together with the Prepetition FLTL Secured Parties and Prepetition FLFO Secured Parties, the "**Prepetition Secured Parties**").<br><br>Collectively, the agreements described above are referred to herein as the "**Prepetition Credit Agreements**," and the secured obligations thereunder, collectively, the "**Prepetition Secured Obligations**" and all "Collateral" securing such Prepetition Secured Obligations, the "**Prepetition Collateral**". |
| **Apache Decommissioning Agreement** | "**Apache Decommissioning Agreement**" – that certain Decommissioning Agreement, dated as of September 30, 2013, by and among Apache Corporation, a Delaware corporation ("**APA**"), Apache Shelf, Inc., a Delaware corporation ("**APSH**"), Apache Deepwater LLC, a Delaware limited liability company ("**APDW**"), Apache Shelf Exploration LLC, a Delaware limited liability company ("**ASE**"), the DIP Facility Borrower and GOM Shelf LLC (as amended, restated, amended and restated, supplemented, or otherwise modified prior to the date hereof), and ASE together with APA, APSH and APDW, the "**Apache Secured Parties**". |
| **DIP Collateral** | Substantially all present and after acquired property (whether tangible, intangible, real, personal or mixed) of the Loan Parties, wherever located, including, without limitation, all accounts, deposit accounts, inventory, equipment, capital stock in subsidiaries of the Loan Parties, including, for the avoidance of doubt, any equity or other interests owned by the Loan Parties in the Loan Parties' non-Debtor and/or jointly-owned subsidiaries (other than FW Finco, LLC), with limitations on the pledge of equity or other interests in foreign subsidiaries consistent with the Prepetition FLTL Credit Agreement as in effect during the "Restriction Period" (as defined therein), investment property (including securities accounts and commodity accounts), instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof, subject to customary exclusions and excluding (i) any causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, 549, 550 or 553 or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law but, subject to entry of the Final DIP Order, including the proceeds thereof, and (ii) the Trust A NPI, the Trust A-1 NPI, the Trust A Account, any interest in Trust A, the Permitted Surety Bonds or the Letters of Credit (each as defined in the Apache Decommissioning Agreement) (the collateral described in clause (ii), the "**Apache Collateral**") (collectively, the "**DIP Collateral**" and the liens on the DIP Collateral securing the DIP Facility, the "**DIP Liens**"). The Debtors agree that the DIP |

| | |
|---|---|
| | Credit Agreement shall provide for the negative pledges set forth in <u>Section 4(f)</u> the Prepetition FLTL Forbearance Agreement as in effect during the "Restriction Period" (as defined therein) and shall obtain the collateral arrangements and negative pledges set forth in <u>Section 6(a)(iii)</u> of the Prepetition FLTL Forbearance Agreement (subject to any limitations under applicable law). |
| **Priority Under the DIP Facility** | All obligations of the DIP Facility Borrower and the Guarantors to the DIP Lenders and to the DIP Facility Agent (collectively, the "**DIP Obligations**") shall, subject to the Carve-Out (as defined below), at all times:<br><br>(a)  be entitled to superpriority administrative expense claim status in the Chapter 11 Case of such Loan Party;<br><br>(b)  be secured by a perfected first priority security interest and lien on the DIP Collateral of each Loan Party to the extent such DIP Collateral is not subject to valid, perfected and unavoidable liens as of the Petition Date (subject to customary exclusions) *pari passu with* valid and perfected liens in favor of hedge counterparties in connection with secured hedging transactions entered into by the Debtors on a post-petition basis in accordance with the DIP Credit Agreement;<br><br>(c) except as otherwise provided below with respect to the existing liens of the Prepetition Secured Parties and Apache Secured Parties, be secured by a junior perfected security interest and lien on the DIP Collateral of each Loan Party to the extent such DIP Collateral is subject to (i) valid, perfected and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date and permitted under the Prepetition Credit Agreements, (ii) valid and unavoidable permitted liens in favor of third parties that were in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code ((i) and (ii) together, the "**Permitted Prior Liens**"), subject as to priority to such liens in favor of such third parties; and<br><br>(d) pursuant to Section 364(d)(1) of the Bankruptcy Code, be secured by a perfected priming security interest and lien on the DIP Collateral (which DIP Collateral, for the avoidance of doubt, excludes the Apache Collateral) of each Loan Party to the extent such DIP Collateral is subject to existing liens that secure the Prepetition Secured Obligations of the Prepetition Secured Parties and the obligations of the Apache Secured Parties.<br><br>The "**Carve-Out**" shall be usual and customary for similar debtor-in-possession financings and shall be in an amount equal to: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee, (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000, and (iii) to the extent allowed by the Bankruptcy Court at any time, and whether allowed before or after delivery of a Trigger Notice, (A) all allowed and unpaid claims for fees, costs, disbursements and expenses of professionals whose retention by the Debtors is approved by the Bankruptcy Court pursuant to Sections 327, 328, or 363 of the Bankruptcy Code (collectively, the "**Professional Fees**") incurred at any time on or prior to the delivery of a Trigger Notice, plus (B) Professional Fees incurred after the delivery of a Trigger Notice in an amount not to exceed $5,000,000, of professionals retained by the Debtors (the "**Carve-Out Cap**"), in each case subject to the limits imposed by the DIP Orders or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition Secured Party.<br><br>"**Trigger Notice**" shall mean a written notice delivered by the DIP Facility Agent |

| | |
|---|---|
| | describing the event of default that is alleged to continue under the DIP Documents (or, after the payment in full of the DIP Obligations, delivered by the administrative agents under the Prepetition Credit Agreements (the "**Prepetition Agents**") describing the reason for termination of the use of cash collateral); *provided* that under no circumstances shall any success, completion or similar fee be payable from the Carve-Out following delivery of a Trigger Notice.<br><br>For the avoidance of doubt, the DIP Liens shall not be secured by the Apache Collateral nor prime any unavoidable, valid and properly perfected lien existing as of the Petition Date in respect of the Apache Collateral. |
| **Adequate Protection** | Pursuant to Sections 361, 363(c), 363(e) and 364(d)(1) of the Bankruptcy Code, as protection in respect of (x) the incurrence of the DIP Facility, (y) the imposition of the automatic stay, and (z) the Debtors' use of the Prepetition Collateral including cash collateral, the Debtors, the Prepetition Secured Parties, and the DIP Lenders agree, subject to Bankruptcy Court approval of the Interim DIP Order, to the following forms of adequate protection (the "**Adequate Protection**"):<br><br>Prepetition FLTL Secured Parties:<br><br>(a) all accrued and unpaid reasonable and documented fees and expenses incurred prior to the Petition Date owed to Davis Polk & Wardwell LLP, as primary outside legal counsel, Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC, as regulatory legal counsel, Haynes and Boone, LLP, as local legal counsel, and Rothschild & Co US Inc. and Intrepid Partners, LLC as financial advisors for the Prepetition FLTL Secured Parties and Shipman & Goodwin LLP, as primary legal counsel for the Prepetition FLTL Agent (the foregoing, collectively, the "**FLTL Advisors**");<br><br>(b) when due, current payment of all reasonable and documented fees and out-of-pocket expenses payable to the Prepetition FLTL Agent, including all such fees and expenses of the FLTL Advisors;<br><br>(c) to the extent of diminution in value of their Prepetition Collateral, as provided in the Bankruptcy Code, replacement liens on the DIP Collateral to secure FLTL Secured Party Adequate Protection Claims (as defined below) (the "**FLTL Secured Party Adequate Protection Liens**"), senior to all other liens on the DIP Collateral except (x) the Carve-Out, (y) the Permitted Prior Liens and (z) the DIP Liens, and ranking *pari passu* with the FLFO Secured Party Adequate Protection Liens (as defined below);<br><br>(d) to the extent of diminution in value of their Prepetition Collateral, as provided in the Bankruptcy Code, allowed superpriority claims as provided for in sections 503(b) and 507(b) of the Bankruptcy Code (the "**FLTL Secured Party Adequate Protection Claims**");<br><br>(e) financial reporting and other reports and notices initially provided by the Debtors, and, upon incurrence of the DIP Facility, delivered by the DIP Facility Borrower under the DIP Facility;<br><br>(f) the FLTL Secured Parties shall have the benefit of the Milestones, Financial Covenants, Hedging Covenant, and Financial Reporting (each, as set forth below), which shall continue to remain in effect with respect to the FLTL Secured Parties following any termination of the DIP Facility (each of which may be amended, modified, waived or extended, in each case, as to the Prepetition FLTL Secured Parties by (i) order of the Bankruptcy Court or (ii) the prior written consent of the Required DIP Lenders (or, following any termination of the DIP Facility, Prepetition FLTL Secured Parties and |

Prepetition FLFO Secured Parties collectively holding greater than 50% of the sum of the outstanding principal amount of the loans under the Prepetition FLTL Credit Agreement plus the outstanding principal amount of the loans under the Prepetition FLFO Credit Agreement the "Required AP Secured Parties"); and

(g) Any amounts paid after the Petition Date by the Debtors and attributable to Legacy Apache Properties or the Non-APA Remaining Assets shall be deemed to reduce dollar-for-dollar the value of the DIP Collateral that is not Prepetition Collateral until such value is zero and thereafter shall reduce the value of the remaining DIP Collateral.

Prepetition FLFO Secured Parties:

(a) all accrued and unpaid reasonable and documented fees and disbursements incurred prior to the Petition Date owed to Vinson & Elkins LLP, as primary legal counsel, and Opportune LLP, as financial advisor, for the Prepetition FLFO Agent (the foregoing, collectively, the "**FLFO Advisors**");

(b) when due, current payment of all reasonable and documented fees and out-of-pocket expenses payable to the Prepetition FLFO Agent, including all such fees and expenses of the FLFO Advisors;

(c) to the extent of diminution in value of their Prepetition Collateral, as provided in the Bankruptcy Code, current payment in cash of post-petition interest at the non-default interest rate provided in the Prepetition FLFO Credit Agreement (based on the "LIBOR" rate, as provided in the Prepetition FLFO Credit Agreement);

(d) to the extent of diminution in value of their Prepetition Collateral, as provided in the Bankruptcy Code, replacement liens on the DIP Collateral to secure the FLFO Secured Party Adequate Protection Claims (as defined below) (the "**FLFO Secured Party Adequate Protection Liens**"), senior to all other liens on the DIP Collateral except (x) the Carve-Out, (y) the Permitted Prior Liens and (z) the DIP Liens, and ranking *pari passu* with the FLTL Secured Party Adequate Protection Liens;

(e) to the extent of diminution in value of their Prepetition Collateral, as provided in the Bankruptcy Code, allowed superpriority claims as provided for in sections 503(b) and 507(b) of the Bankruptcy Code (the "**FLFO Secured Party Adequate Protection Claims**");

(f) financial reporting and other reports and notices initially provided by the Debtors, and, upon incurrence of the DIP Facility, delivered by the DIP Facility Borrower under the DIP Facility; and

(g) the FLFO Secured Parties shall have the benefit of the Milestones, Financial Covenants, Hedging Covenant, and Financial Reporting (each, as set forth below), which shall continue to remain in effect with respect to the FLFO Secured Parties following any termination of the DIP Facility (each of which may be amended, modified, waived or extended, in each case, as to the Prepetition FLFO Secured Parties by (i) order of the Bankruptcy Court or (ii) the prior written consent of the Required DIP Lenders (or, following any termination of the DIP Facility, the Required AP Secured Parties).

Prepetition SLTL Secured Parties:

(a) financial reporting and other reports and notices initially provided by the Debtors, and, upon incurrence of the DIP Facility, delivered by the DIP Facility Borrower under the DIP

| | |
|---|---|
| | Facility. |
| | In addition, the Interim DIP Order shall provide for customary prepetition secured lender protections, including, but not limited to, (i) the right to seek additional forms of adequate protection, (ii) provision that any payments received as Adequate Protection shall be free and clear of all liens and claims, (iii) effective upon entry of the Interim DIP Order, waivers regarding Sections 506(c) and 552(b) of the Bankruptcy Code, and the equitable doctrine of marshaling (subject to modification under the Final DIP Order with respect to the period following entry of the Final DIP Order), (iv) limitations on the use of collateral and (v) stipulations in respect of the validity of prepetition liens and obligations, in each case, as such may pertain to the claims and liens of the Prepetition Secured Parties. |
| | For the avoidance of doubt, the FLTL Secured Party Adequate Protection Claims, the FLFO Secured Party Adequate Protection Claims and the SLTL Secured Party Adequate Protection Claims shall in all cases have the same relative priority as the FLTL Secured Party Adequate Protection Liens, the FLFO Secured Party Adequate Protection Liens and the SLTL Secured Party Adequate Protection Liens, respectively. |
| **Milestones** | The DIP Documents shall require compliance with milestones consistent with the "Milestones" (as defined in the Restructuring Support Agreement) to be included in the DIP Credit Agreement. |
| **Events of Default** | Usual and customary for financings of this type. |
| **Conditions Precedent to Closing** | Usual and customary for financings of this type, including, without limitation: (i) execution and delivery of the DIP Credit Agreement and the other DIP Documents evidencing the DIP Facility (which shall include customary closing deliverables in a form and manner to be mutually agreed); (ii) the Petition Date shall have occurred, and the DIP Facility Borrower and each Guarantor shall be a debtor and a debtor-in-possession; (iii) entry of the Interim DIP Order; and (iv) delivery of the Initial Budget (as defined below) acceptable to the Required DIP Lenders in their sole and absolute discretion. The date on which the closing conditions are satisfied is referred to herein as the "**Closing Date**". |
| **Conditions Precedent to the Extension of each DIP Loan** | Conditions precedent customarily found in loan documents for similar debtor-in-possession financings and including, without limitation: (i) no default or event of default; (ii) accuracy of representations and warranties in all material respects; (iii) the Interim DIP Order or the Final DIP Order, as applicable, shall be in full force and effect and shall not have been vacated or reversed, shall not be subject to a stay, and shall not have been modified or amended in any respect without the consent of the Required DIP Lenders, (iv) with respect to each DIP Loan (other than the Initial DIP Loan or the Incremental DIP Loan), the APA Milestone Satisfaction Date shall have occurred, (v) with respect to each DIP Loan (other than the Initial DIP Loan), (x) Liquidity of less than $50,000,000, prior to giving effect to such borrowing and (y) the DIP Facility Borrower shall, after giving effect to the amount of such borrowing on a pro forma basis, be in pro forma compliance with the minimum Asset Coverage Ratio, and (vi) delivery of a customary notice of borrowing. |
| **Covenants** | Affirmative and negative covenants usual and customary for financings of this type, including, without limitation, to use commercially reasonable efforts to obtain facility ratings from S&P and Moody's within 45 days of the date of the entry of the Final DIP Order and not to enter into any compensation arrangements (or modify any existing compensation arrangements) with senior management of the Company without the prior consent of the Required DIP Lenders (subject to certain exceptions to be agreed). |

8

| **Financial Covenants** | Minimum Liquidity (as defined below) to be no less than $40,000,000, to be tested twice monthly (the "**Minimum Liquidity Covenant**"). |
|---|---|
| | "**Liquidity**" means, at any time, the sum of (i) unrestricted cash and cash equivalents of the DIP Facility Borrower and its subsidiaries that are Guarantors at such time which are subject to a perfected superpriority DIP Lien (and excluding, for the avoidance of doubt, any cash or cash equivalents that constitute Apache Collateral) and (ii) solely for purposes of determining compliance with the Minimum Liquidity Covenant, the aggregated amount of then unused DIP Commitments. |
| | Minimum Asset Coverage Ratio (as defined below) of 2.00 to 1.00, tested as of the last day of each fiscal quarter beginning with the first fiscal quarter (including any partial fiscal quarter) ended after the Closing Date. |
| | "**Asset Coverage Ratio**" means, as of any date of determination, the ratio of (a) the PV-10 value of 2P developed reserves[1] of the Specified Assets (which for the avoidance of doubt shall be burdened by the PV-10 of all plugging and abandonment obligations) calculated as determined by the Approved Reserve Report (as defined below) for such date of determination, plus (or minus, as the case may be) the present value of hedges thereof, to (b) the outstanding amount of all DIP Loans as of the such date. |
| | "**Approved Reserve Report**" means a reserve report prepared consistent with the requirements for reserve reports under the Prepetition FLTL Credit Agreement and consistent with requirements under the Securities Exchange Act and the rules promulgated thereunder and using strip prices with the final year of the forward curves held constant and adjusted for basis differentials, it being understood that for any determination as of March 31 or September 30 of any year, numbers will be rolled forward and/or updated for production roll-off and pricing. |
| | Variance covenant, tested as of the last day of each two-week calendar period ending on the Friday immediately preceding the required date of delivery of the applicable Variance Report (as defined below), commencing with the two-week calendar period ended August 14, 2020 (each a "**Test Period**"), requiring in each case for the prior two-week period the positive variance (as compared to the estimated Net Disbursements (as defined below) for such Test Period as set forth in the then current Approved Budget) of actual Net Disbursements during such Test Period not to exceed 7.50%. |
| | "**Net Disbursements**" means disbursements of the type set forth in the line item in the then current Approved Budget entitled "Net Operating Disbursements" and, for the avoidance of doubt, shall exclude disbursements for fees and expenses of professionals related to the Cases. |
| | For purposes of testing the variance covenant, an amount equal to 75% of any negative variance of Net Disbursements against the applicable Approved Budget in any Test Period may be carried forward into the succeeding Test Periods. |

---

[1] Developed non-producing reserves limited to those that require no capital to produce and will include Katmai, Genovesa, and Troika TA3.

| | |
|---|---|
| **Hedging Covenant** | Within 30 days of the entry of the Final DIP Order (or such later date as agreed to by the Required DIP Lenders), enter into and thereafter maintain, hedge agreements with counterparties having a rating of BBB- or Baa3 or better or an investment grade-rated participant with respect to at least 50% (on a barrel of oil equivalent basis) of the aggregate oil and natural gas proved developed producing reserves (based on an Approved Reserve Report adjusted for any permanent shut-in of shelf properties) for the next succeeding 6 months, *provided* that such hedge agreements shall be on terms consistent with the Debtors' historical practices. |
| **Representations and Warranties** | Representations and warranties usual and customary for financings of this type. |
| **Voting** | Amendments and waivers of the DIP Facility will require the approval of DIP Lenders (other than Affiliated DIP Lenders (to be defined in a customary manner to be agreed)) holding more than 50% of the outstanding DIP Commitment and DIP Loans (the "**Required DIP Lenders**"), subject to customary exceptions for certain provisions which shall require the consent of each affected DIP Lender or all DIP Lenders and customary protections for the DIP Facility Agent. |
| **Fees and Expenses Indemnification** | Loan Parties obligated under the DIP Facility shall pay all reasonable and documented out-of-pocket fees, costs and expenses incurred or accrued by the DIP Facility Agent and the DIP Lenders, including, without limitation, the actual and documented costs for the seasoning of the DIP Facility (currently estimated to be 0.30% with respect to any funded DIP Loans and 0.10% with respect to any unfunded DIP Commitments), the documented fees and expenses of Davis Polk & Wardwell LLP as primary counsel to the DIP Lenders, Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC, as regulatory legal counsel for the DIP Lenders, Haynes and Boone, LLP, as local legal counsel for the DIP Lenders, Shipman & Goodwin LLP, as primary counsel to the DIP Facility Agent and Rothschild & Co US Inc. and Intrepid Partners, LLC as financial advisors to the DIP Lenders (collectively, the "**Financial Advisor**"), in each case, associated with the syndication of the DIP Facility and the preparation, negotiation, execution, delivery and administration of the DIP Loan Documents, any amendment or waiver with respect thereto or any enforcement with respect thereto.<br><br>The Loan Parties will indemnify the DIP Facility Agent and DIP Lenders, and hold them harmless from and against all reasonable and documented out-of-pocket costs, expenses and liabilities arising out of or relating to the transactions contemplated hereby, except solely for gross negligence, willful misconduct of such indemnified party or willful and material breach by such indemnified party of the DIP Documents to the extent determined by a court of competent jurisdiction in a final and non-appealable judgment. |
| **Upfront Fees** | An upfront fee in an amount equal to 3.00% of the DIP Commitments shall be due and payable to the DIP Lenders in cash on the Closing Date ratably based on their respective DIP Commitments on the Closing Date (the "**Upfront Fee**"). |
| **Backstop Fees** | A backstop fee in an amount equal to 4.00% of the DIP Commitments shall be due and payable to each DIP Lender providing a backstop commitment (a "**DIP Backstop Commitment**") under the Restructuring Support Agreement in respect of the DIP Facility in cash on the Closing Date ratably based on their respective DIP Backstop Commitments on the Petition Date (the "**Backstop Fee**"). |
| **Unused Commitment Fees** | An unused commitment fee equal to 3.00% per annum on the actual daily amount of the unused DIP Commitments shall be paid on a monthly basis to the DIP Lenders in cash ratably based on their respective DIP Commitments. |

| | |
|---|---|
| **Financial Reporting** | (a) Initially, a 13-week cash flow forecast delivered on or prior to the Closing Date, in form and substance acceptable to, and consented to by, the Required DIP Lenders (the "**Initial Budget**") and (b) thereafter, a rolling 13-week cash flow forecast delivered on Wednesday of every two-week anniversary of the Closing Date (commencing with the third Wednesday following the Closing Date), in each case, setting forth the DIP Facility Borrower's projected cash receipts and cash disbursements during such 13-week period[2] (each such 13-week cash flow forecast, a "**Budget**"). <br><br> Monthly operating reports and monthly income statements shall be required, in each case within the time periods and in a form and covering items consistent with Section 7(d) of the Prepetition FLTL Forbearance Agreement, together with the accompanying officer's certificate described therein. <br><br> The DIP Facility Borrower shall provide to the DIP Lenders a summary report of the Initial Budget, each Budget, each monthly operating report and each monthly income statement concurrently with the delivery thereof to the Financial Advisor, which summary reports shall be consistent with Section 7(e) of the Prepetition FLTL Forbearance Agreement. <br><br> Each Budget which is delivered immediately prior to the expiration of the 13-week period covered by the Initial Budget or any subsequent Approved Budget must be acceptable to the Required DIP Lenders and no such Budget shall be effective as the Updated Covenant Testing Budget (as defined below) until so approved (it being understood that if the Required DIP Lenders have not objected to a proposed Updated Covenant Testing Budget within five business days after delivery thereof, the Required DIP Lenders shall be deemed to have approved such updated Budget).  Upon approval or deemed approval of such Budget by the Required DIP Lenders, such Budget shall constitute the "**Updated Covenant Testing Budget**" (and, collectively with the Initial DIP Budget, the "**Approved Budget**"). <br><br> A variance report (the "**Variance Report**") delivered bi-weekly, commencing August 19, 2020 and every second Wednesday thereafter, comparing for each applicable Test Period the actual disbursements against anticipated disbursements under the Approved Budget on a line item basis and in the same level of detail as set forth in the Initial Budget, or in a form otherwise reasonably acceptable to the Financial Advisor. |
| **Documentation** | The DIP Facility (including the terms and conditions applicable thereto) will be documented pursuant to and evidenced by (a) a credit agreement (the "**DIP Credit Agreement**"), negotiated in good faith, giving due regard to the Prepetition FLTL Credit Agreement as in effect during the "Restriction Period" (as defined therein) (with such modifications as are (i) set forth herein, (ii) usual and customary for debtor-in-possession financings of this kind and/or otherwise necessary or desirable to effectuate the financing contemplated hereby and/or to reflect the capital structure and operational requirements of the Debtors and the existence and continuance of the Chapter 11 Cases (including customary representations and warranties, covenants and events of default for debtor-in-possession financings of this kind) and (iii) agreed by the DIP Facility Borrower and the DIP Lenders and/or the DIP Facility Agent) and (b) as applicable, the related notes, |

---

[2] Any weather event and its effects will not be included in the Budget, but the Required DIP Lenders may agree to a modification of the Budget if a weather event occurs.

|  | security agreements, collateral agreements, pledge agreements, guarantees and other legal documentation or instruments as are, in each case, usual and customary for debtor-in-possession financings of this type and/or reasonably necessary or desirable to effectuate the financing contemplated hereby, negotiated in good faith, giving due regard to the credit documentation entered into in connection with the Prepetition FLTL Credit Agreement as in effect during the "Restriction Period" (as defined therein) (all of the foregoing, together with the DIP Credit Agreement, collectively, the "**DIP Documents**").  Notwithstanding the foregoing or any other provision hereof, certain "baskets" (including for investments in Fieldwood Mexico B.V.), thresholds (other than with respect to material indebtedness or monetary judgments), grace periods, exceptions and materiality qualifiers under the DIP Credit Agreement shall be substantially consistent with those set forth in the Prepetition FLTL Credit Agreement as in effect during the "Restriction Period" (as defined therein) or as otherwise agreed by the DIP Lenders. |
|---|---|
| **Assignments and Participations** | Usual and customary for financings of this type. |
| **Governing Law** | The laws of the State of New York (excluding the laws applicable to conflicts or choice of law), except as governed by the Bankruptcy Code. |
| **Miscellaneous** | The DIP Documents will include yield protection provisions usual and customary for financings of this type. |
| **Counsel to DIP Facility Agent** | Shipman & Goodwin LLP. |
| **Primary Counsel to DIP Lenders** | Davis Polk & Wardwell LLP. |