IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | (Emergency Hearing Requested) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS
(A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e)
AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO
11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION
TO PREPETITION SECURED PARTIES PURSUANT TO
11 U.S.C. §§ 361, 362, 363, 364 AND 507(b) AND (III) SCHEDULING FINAL HEARING
PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

Upon the motion (the "**Motion**")[2] of Fieldwood Energy LLC (the "**Borrower**") and its

affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "**Debtors**") in the

above captioned cases (the "**Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2),

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code,

11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules

for the Southern District of Texas (the "**Local Bankruptcy Rules**") and the Procedures for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Holdings LLC (9264); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used herein but not otherwise defined have the meanings given to them in the DIP Documents (as defined below).

Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking, among other things:

A.      authorization for the Borrower to obtain secured postpetition financing (the "**DIP Financing**") and for Fieldwood Energy Inc. ("**Holdings**") and all domestic subsidiaries of the Borrower (subject to certain exceptions for immaterial subsidiaries that are not Debtors) (each a "**Guarantor**" and collectively, the "**Guarantors**"; the Guarantors collectively with the Borrower, the "**Loan Parties**"), to unconditionally guaranty, on a joint and several basis, the Borrower's obligations in connection with the DIP Financing, consisting of a multiple-draw senior secured term loan facility (the "**DIP Facility**"), in an principal amount not to exceed $100,000,000 (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)) on the terms and conditions set forth in this Interim Order and the DIP Documents (each as defined below), pursuant to which DIP Facility the Borrower shall, subject to entry of the Interim Order, borrow from the DIP Lenders an aggregate principal amount equal to $10,000,000 on the Closing Date (as defined in the DIP Credit Agreement), and thereafter, on an interim basis, upon satisfaction of all other applicable conditions precedent in the DIP Documents, be authorized to make an additional draw of DIP Loans on or prior to the finalization of the Apache Definitive Documents (as defined in the DIP Term Sheet) (such date, the "**APA Milestone Satisfaction Date**") in an aggregate principal amount equal to $15,000,000;

B.      authorization for the Loan Parties to execute and enter into the Senior Secured Debtor-in-Possession Term Loan Credit Agreement among Holdings, the Borrower, the lenders from time to time thereto (collectively, the "**DIP Lenders**") and Cantor Fitzgerald Securities as

administrative agent and collateral agent (in such capacities, the "**DIP Agent**"; the DIP Agent together with the DIP Lenders, the "**DIP Secured Parties**"), upon the terms and conditions consistent in all material respects with those set forth in the DIP Term Sheet substantially in the form attached to the Motion as **Exhibit A** (such term sheet, the "**DIP Term Sheet**"; such senior secured debtor-in-possession term loan credit agreement, as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, the Collateral Agreement and the Guarantee Agreement (each as defined in the DIP Credit Agreement), each to be dated as of the Closing Date (as defined in the DIP Credit Agreement), the "**DIP Documents**") and to perform all such other and further acts as may be required in connection with the DIP Documents;

C.      authorization for the Loan Parties to grant adequate protection to the Prepetition Secured Parties (as defined below) under or in connection with certain of the following agreements:

1.      that certain Second Amended and Restated Credit Agreement – First Out, dated as of June 28, 2019 (as amended by that certain Temporary Limited Forbearance and Amendment, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof) and as otherwise amended, supplemented or otherwise modified prior to the date hereof, the "**Prepetition FLFO Credit Agreement**"), among, *inter alia*, Holdings, the Borrower, the lenders party thereto (the "**Prepetition FLFO Lenders**"), Goldman Sachs Bank USA, as administrative agent (in such capacity, the "**Prepetition FLFO Administrative Agent**") and issuing bank, and Cantor Fitzgerald Securities, as collateral agent (in such capacity, the "**Prepetition FLFO Collateral Agent**", together with Prepetition FLFO Administrative Agent and their successors in such capacities, the "**Prepetition FLFO Agents**" and, the "Secured Parties" under such Prepetition FLFO Credit Agreement the "**Prepetition FLFO Secured Parties**");

2.      that certain Amended and Restated First Lien Term Loan Agreement, dated as of April 11, 2018 (as amended by that certain First Amendment to Amended and Restated First Lien Term Loan Agreement, dated as of July 5, 2018, that certain Second Amendment to

Amended and Restated First Lien Term Loan Agreement, dated as of November 11, 2019 and that certain Temporary Limited Forbearance and Amendment, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof), and as otherwise amended, supplemented or otherwise modified prior to the date hereof, the "**Prepetition FLTL Credit Agreement**"), among, *inter alia,* Holdings, the Borrower, the lenders party thereto from time to time (the "**Prepetition FLTL Lenders**") and Cantor Fitzgerald Securities, as administrative agent and collateral agent (in such capacities, together with its successors in such capacities, the "**Prepetition FLTL Agent**" and, the "Secured Parties" under such Prepetition FLTL Credit Agreement the "**Prepetition FLTL Secured Parties**")

3.      that certain Amended and Restated Second Lien Term Loan Agreement dated as of April 11, 2018 (as amended by that certain Temporary Limited Forbearance and Amendment, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof), and as otherwise amended, supplemented or otherwise modified prior to the date hereof, the "**Prepetition SLTL Agreement**"[3]), among, *inter alia,*  Holdings, the Borrower, the lenders party thereto from time to time (the "**Prepetition SLTL Lenders**" [4]) and Cortland Capital Markets Services LLC, as administrative agent and collateral agent (in such capacities, together with its successors in such capacities, the "**Prepetition SLTL Agent**"[5] and, the "Secured Parties" under such Prepetition SLTL Credit Agreement the "**Prepetition SLTL Secured Parties**"[6]); and

4.      that certain Decommissioning Agreement, dated as of September 30, 2013 (as amended, supplemented or otherwise modified prior to the date hereof, and together with the Existing Decommissioning Related Agreements (as defined in the DIP Credit Agreement), the "**Apache Decommissioning Agreement**"), by and among Apache Corporation ("**APA**"), Apache Shelf, Inc. ("**APSH**"), Apache Deepwater LLC ("**APDW**"), Apache Shelf Exploration LLC (together with APA, APSH and APDW, the "**Apache Secured Parties**"), the Borrower and GOM Shelf LLC.

---

[3] The agreements described in the preceding paragraphs C.1-3 above are collectively referred to as the "**Prepetition Credit Agreements**," and all "Collateral" securing the obligations under the Prepetition Credit Agreements described in the preceding paragraphs C.1-3 is collectively referred to as the "**Prepetition Collateral**". The Trust A NPI, Trust A-1 NPI, the Trust A Account, any interest in Trust A, the Permitted Surety Bonds or the Letters of Credit (each as defined in the Apache Decommissioning Agreement) are collectively referred to as the "**Apache Collateral**" and, for the avoidance of doubt, the Prepetition Collateral does not include the Apache Collateral.

[4] The Prepetition FLFO Lenders, the Prepetition FLTL Lenders and the Prepetition SLTL Lenders are collectively referred to as the "**Prepetition Lenders**".

[5] The Prepetition FLFO Agents, the Prepetition FLTL Agent and the Prepetition SLTL Agent are collectively referred to as the "**Prepetition Agents**".

[6] The Prepetition FLFO Secured Parties, the Prepetition FLTL Secured Parties and the Prepetition SLTL Secured Parties are collectively referred to as the "**Prepetition Secured Parties**".

D.      subject to the restrictions set forth in the DIP Documents and this Interim Order, authorization for the Loan Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral in which any of the Prepetition Secured Parties have an interest, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

E.      subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Prepetition Credit Agreements and the liens and security interests arising therefrom;

F.      the grant of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on, all prepetition and postpetition property of the Loan Parties' estates (other than certain excluded property as provided in the DIP Documents) and all proceeds thereof (including subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject only to the Carve-Out;

G.      the waiver of the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and of any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code subject to the provisions set forth below;

H.      the waiver of the equitable doctrine of "marshaling" and other similar doctrines as to the DIP Secured Parties and the Prepetition Secured Parties, subject to the provisions set forth below;

I.      modification of the automatic stay to the extent set forth herein and in the DIP Documents;

J.      pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of an order granting the Motion on an interim basis and authorizing the Borrower to borrow from the DIP Lenders under the DIP Documents forthwith an aggregate principal amount equal to $10,000,000 and, on or prior to the APA Milestone Satisfaction Date, an additional principal amount equal to $15,000,000, of the DIP Financing and the Guarantors to unconditionally guaranty such obligations owing to the DIP Lenders under the DIP Documents on a joint and several basis (this "**Interim Order**"); and

K.      that this Court schedule a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") approving the relief granted herein on a final basis and authorizing the Borrower to forthwith borrow from the DIP Lenders under the DIP Documents up to the full principal amount of the DIP Financing and the Guarantors to unconditionally guaranty all obligations owing to the DIP Lenders under the DIP Documents on a joint and several basis; and due and appropriate notice of the Motion and the Interim Hearing having been served by the Debtors on the parties identified in the Motion; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Interim Hearing having been held by this Court on [●], 2020; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in these Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, in the declaration of [●] of [Houlihan

Lokey Capital, Inc.] in support of the Motion filed contemporaneously therewith, in the *Declaration of [ •]in Support of Chapter 11 Petitions and Related Requests for Relief* (Docket No. [•] (the "**First Day Declaration**")) and at the Interim Hearing and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.  *Disposition.*  The relief requested in the Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.  *Jurisdiction*.  This Court has core jurisdiction over the Cases (as defined below), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  *Committee Formation*.  As of the date hereof, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

4.  *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this

Interim Order shall be required.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

5. *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 23 and 244 below, the Debtors admit, stipulate and agree that:

(a)  (i) as of the date (the "**Petition Date**") of the filing of the Cases, the Borrower and the guarantors under the relevant Prepetition Credit Agreement (such guarantors collectively, the "**Prepetition Guarantors**") were justly and lawfully indebted and liable to (A) the Prepetition FLFO Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $147,601,297 in respect of loans made and undrawn letters of credit issued under, and in accordance with the terms of, the Prepetition FLFO Credit Agreement, plus accrued and unpaid interest thereon and fees (including the prepayment fees payable pursuant to the Prepetition FLFO Credit Agreement), reimbursement obligations in respect of drawn letters of credit, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition FLFO Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition FLFO Credit Agreement (collectively, the "**Prepetition FLFO Debt**"), which Prepetition FLFO Debt has been guaranteed on a joint and several basis by the guarantors under the Prepetition FLFO Credit Agreement; (B) the Prepetition FLTL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $1,142,688,815.28 in respect of loans made under, and in accordance with the terms of, the

Prepetition FLTL Credit Agreement, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition FLTL Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition FLTL Credit Agreement (collectively, the "**Prepetition FLTL Debt**"), which Prepetition FLTL Debt has been guaranteed on a joint and several basis by the guarantors under the Prepetition FLTL Credit Agreement; (C) the Prepetition SLTL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $517,500,000 in respect of loans made under, and in accordance with the terms of, the Prepetition SLTL Credit Agreement, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition SLTL Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition SLTL Credit Agreement (collectively, the "**Prepetition SLTL Debt**" and, together with the Prepetition FLFO Debt and the Prepetition FLTL Debt, the "**Prepetition Debt**"), which Prepetition SLTL Debt has been guaranteed on a joint and several basis by the guarantors under the Prepetition SLTL Credit Agreement, (ii) the Prepetition Debt constitutes the legal, valid and binding obligations of the Borrower and the applicable Prepetition Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of

the obligations owing under the Prepetition Credit Agreements prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b)  the liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**") pursuant to and in connection with the Prepetition Credit Agreements, are: (i) valid, binding, perfected, enforceable liens and security interests in the Prepetition Collateral; (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) as of the Petition Date are subject and subordinate only to valid, non-avoidable liens permitted under the Prepetition Credit Agreements that (A) were perfected as of the Petition Date or (B) were in existence immediately prior to the Petition Date and are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, to the extent that such permitted liens are senior to liens in favor of the Prepetition FLFO Secured Parties and the Prepetition FLTL Secured Parties (the "**Permitted Prior Liens**");

(c)  by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Debt, none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors;

10

(d) the liens granted to the DIP Agent on behalf of the DIP Secured Parties pursuant to this Interim Order are perfected, valid, enforceable and non-avoidable liens against the Debtors;

(e) no claims or causes of action exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date;

(f) effective as of the date of entry of this Interim Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, subsidiaries, heirs and assigns, hereby absolutely and unconditionally release and forever discharge and acquit the DIP Secured Parties and Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened (collectively, the "**Released Claims**") including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Prepetition Credit Agreements, or the transactions contemplated thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their

successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured or unmatured or known or unknown;

(g) (i) that certain *Pari Passu* Intercreditor Agreement dated as of April 11, 2018 (as amended by that certain Joinder No. 4 dated as of June 28, 2019 and as otherwise amended, supplemented or otherwise modified from time to time prior to the date hereof, the "**First Lien Pari Passu Intercreditor Agreement**"), and (ii) that certain Intercreditor Agreement, dated as of April 11, 2018 (as amended, supplemented or otherwise modified from time to time prior to the date hereof, the "**Second Lien Intercreditor Agreement**" and, together with the First Lien Pari Passu Intercreditor Agreement, the "**Intercreditor Agreements**"), are binding and enforceable against the Borrower, Prepetition Guarantors, and the Prepetition Secured Parties party thereto, in accordance with their terms, and the Borrower, Prepetition Guarantors, and Prepetition Secured Parties are not entitled to take any actions that would be contrary to the provisions thereof; and

(h) all cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any Prepetition Secured Party or any branch or agency thereof (the "**Depository Institutions**") were subject to rights of set-off under the Prepetition Credit Agreements and applicable law, for the benefit of the Prepetition Secured Parties.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to

12

control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

6.      *Findings Regarding the DIP Financing and Cash Collateral.*

(a)  Good and sufficient cause has been shown for the entry of this Interim Order.

(b)  The Loan Parties have an immediate need to continue to use the Prepetition Collateral (including the Cash Collateral) to preserve their estates, including (i) to consummate the prenegotiated plan contemplated under the "**Restructuring Support Agreement**" filed as Exhibit [ ] to the First Day Declaration, (ii) for the orderly continuation of the operation of their businesses, (iii) to preserve business relationships with vendors, suppliers, employees, and customers, and (iv) to satisfy other working capital and operational needs.  The Loan Parties have an immediate need to have available the DIP Facility in case the Prepetition Collateral (including Cash Collateral) is insufficient to meet their capital and liquidity needs.  The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

(c)  The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Loan Parties are also unable to obtain secured credit allowable

under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and incurring the Adequate Protection, in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d) Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the Adequate Protection granted to the Prepetition Secured Parties, and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e) Upon the terms and conditions set forth herein, the Prepetition Secured Parties have consented, or pursuant to the Intercreditor Agreements are deemed to have consented, to the use of Cash Collateral and the other Prepetition Collateral, the Debtors' entry into the DIP Documents and, in the case of the Prepetition Secured Parties, the priming of the liens granted to the Prepetition Secured Parties pursuant to Section 364(d)(1) of the Bankruptcy Code.

(f) The DIP Financing, as well as the terms of the Adequate Protection and Adequate Protection Liens (each as defined below), and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the DIP Agent and the DIP Lenders and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the

DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (collectively, the "**DIP Loans**") and (ii) any "**Loan Obligations**" (as defined in the DIP Credit Agreement) of the Loan Parties owing to the DIP Agent, any DIP Lender or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Agent or the DIP Lenders and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under this Interim Order, the Final Order or the DIP Documents (the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof), and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code

in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g) The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in this Interim Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Intercreditor Agreements and upon a change in circumstances, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h) The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. For the reasons set forth in the Motion and declarations filed in connection therewith, absent granting the relief set forth in this Interim Order, the Loan Parties' estates would face (i) significant business disruptions from the loss of access to Cash Collateral, (ii) exposure to

significant liquidity uncertainty in the current commodities market, and (iii) loss of confidence regarding financial wherewithal by stakeholders, all of which would lead to immediate and irreparable harm.  Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

7.      *Authorization of the DIP Financing and the DIP Documents.*

(a)  The Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The Borrower is hereby authorized to forthwith borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized, on an interim basis, to guaranty the Borrower's obligations with respect to such borrowings in an aggregate principal or face amount equal to $10,000,000, and thereafter, on or prior to the APA Milestone Satisfaction Date, in an additional aggregate principal amount equal to $15,000,000, under the DIP Facility (plus interest, fees, expenses (including professional fees and expenses) and other amounts, in each case, as provided for in the DIP Documents), subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and therein), including to (v) make payments for general corporate or working capital purposes in a manner consistent with the then-current Approved Budget (as defined in the DIP Term Sheet) subject to permitted variances, (w) pay required debt service on the DIP Loans, (x) pay the fees, costs and expenses of the DIP Agent and the DIP Lenders, (y) pay fees, costs and expenses of professionals associated with the Cases and (z)

provide adequate protection as provided in paragraphs 14 through 21 of this Interim Order (the "**Adequate Protection**").

(b) In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all agreements, instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees and expenses that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i) the execution and delivery of, and performance under, each of the DIP Documents;

(ii) the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications or supplements to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent and the Required Lenders (as defined in the DIP Credit Agreement) may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications or supplements to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

(iii) the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees including, without limitation, any upfront fee, backstop fee, commitment fee, seasoning fee or agency fee (which fees shall be, and shall be deemed to have

been, approved upon entry of this Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise), and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the one hand, and the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders (including, without limitation, the documented fees and expenses of Shipman & Goodwin LLP, as counsel to the DIP Agent, Davis Polk & Wardwell LLP as primary counsel to certain DIP Lenders, Haynes and Boone LLP as local counsel to certain  DIP Lenders in the State of Texas, Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC as regulatory counsel to certain DIP Lenders and Rothschild & Co US Inc. and Intrepid Partners, LLC as financial advisors to certain DIP Lenders), in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens and the DIP Superpriority Claims as permitted herein and therein.

(c)  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Loan Parties, enforceable

against each Loan Party in accordance with the terms of the DIP Documents and this Interim

Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this

Interim Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable

or recoverable under the Bankruptcy Code or under any applicable law (including, without

limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable

Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent

Conveyance Act or other similar state statute or common law), or subject to any defense,

reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment,

cross-claim, claim or counterclaim.

8.      *DIP Superpriority Claims.*

           (a)  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed superpriority administrative expense claims against the

Loan Parties (without the need to file any proof of claim) with priority over any and all

claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, any and all administrative expenses or other claims arising

under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or

1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured

by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims

(the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the

Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the

Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have

recourse to all pre- and postpetition property of the Loan Parties and all proceeds thereof

(excluding the Loan Parties' claims and causes of action under sections 502(d), 544, 545,

547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the

Bankruptcy Code (collectively, "**Avoidance Actions**"), but subject only to and effective

upon entry of the Final Order, including any proceeds or property recovered, unencumbered

or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise

("**Avoidance Proceeds**")), *provided* that the DIP Superpriority Claims shall be subordinated

and subject only to payment of the Carve-Out.  The DIP Superpriority Claims shall be

entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this

Interim Order or any provision hereof is vacated, reversed or modified, on appeal or

otherwise.

        (b) For purposes hereof, the "**Carve-Out**" is an amount equal to the sum of (i)

all fees required to be paid to the clerk of the Court and to the Office of the United States

Trustee under section 1930(a) of title 28 of the United States Code plus interest at the

statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and

expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an

amount not to exceed $100,000 (without regard to the notice set forth in (iii) below); and (iii)

(A) all unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any

time, whether by interim order, final order, procedural order or otherwise of persons or firms

retained by the Debtors or the Creditors' Committee (if appointed) pursuant to sections 327,

328 or 363 of the Bankruptcy Code (collectively, the "**Professional Fees**") incurred at any

time on or prior to the Trigger Notice, plus (B) Professional Fees incurred after the Trigger

Notice in an amount not to exceed $6,000,000, of professionals retained by the Debtors and

the Creditors' Committee (if appointed); *provided,* that under no circumstances shall any

success, completion, or similar fees be payable from the Carve-Out following delivery of a

Trigger Notice (the "**Carve-Out Cap**"), in each case subject to the limits imposed by this Interim Order, the Final Order (if and when entered) or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition Secured Party; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any other grounds. "**Trigger Notice**" shall mean a written notice delivered by the DIP Agent, at the direction of the Required Lenders under the DIP Documents, describing the event of default that is alleged to continue under the DIP Documents.  Immediately upon delivery of a Trigger Notice, and prior to the payment to any Prepetition Secured Party on account of the Adequate Protection or otherwise, the Debtors shall be required to deposit, in a segregated account not subject to the control of the DIP Agent or the Prepetition Agents (the "**Carve-Out Account**"), an amount equal to the Carve-Out Cap. The funds on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out, and the DIP Agent and the Prepetition Agents, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve-Out Account and (ii) shall have a security interest upon any residual interest in the Carve-Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve-Out.

(c)  Notwithstanding the foregoing, (x) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the DIP

Lenders, the DIP Agent, the Prepetition Lenders or each of the Prepetition Agents, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Prepetition Credit Agreements (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent or the Prepetition Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral or Prepetition Collateral in accordance with the DIP Documents and the Final Order other than to seek a determination that an Event of Default (as defined in the DIP Credit Agreement) has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the commencement of the Cases unless such payments are approved by an order of the Court, and (y) prior to the delivery of the Trigger Notice, the Carve-Out shall not be reduced by the payment or incurrence of Professional Fees allowed at any time by the Court.  Further, notwithstanding anything to the contrary in this Interim Order, the failure of the Carve-Out Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out.  For the avoidance of doubt, nothing herein shall modify or limit the rights of the Loan Parties set forth in the DIP Credit Agreement or limit their use of the Carve-Out in connection with such rights.

9.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the

Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b), (c) and (d) below being collectively referred to as the "**DIP Collateral**"; *provided*, that for the avoidance of doubt, the Apache Collateral shall not constitute DIP Collateral and the DIP Collateral shall be subject to the provisions of paragraphs 14(h) and 15(f) herein), in each case subject to the payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

> (a) <u>First Lien On Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to either (x) valid, perfected and non-avoidable liens as of the Petition Date, or (y) valid and non-avoidable liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code (collectively, "**Unencumbered Property**"), in each case other than: (i) the Excluded Assets and Excluded Equity Interests (each as defined in the DIP Credit Agreement), but including any proceeds of Excluded Assets and Excluded Equity Interests that do not otherwise constitute Excluded Assets or

Excluded Equity Interests and (ii) the Avoidance Actions but subject only to and effective upon entry of the Final Order, including the Avoidance Proceeds;

(b) <u>Liens Priming Certain Prepetition Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priming security interest in and lien upon all pre- and postpetition property of each Loan Party whether now existing or hereafter acquired, of the same nature, scope and type as the collateral securing the Prepetition Debt; *provided*, that such lien shall be (i) junior to the Permitted Prior Liens and (ii) *pari passu* with valid and perfected liens in favor of hedge counterparties in connection with secured hedging transactions entered into by the Debtors on a post-petition basis in accordance with the DIP Documents (the "**Hedging Liens**").  Such security interests and liens shall be senior in all respects to the interests of the Prepetition Secured Parties in such property arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Parties) (collectively, the "**Primed Liens**"); *provided,* however, that the DIP Liens shall not be secured by the Apache Collateral and the rights of the Apache Secured Parties set forth in the Restructuring Support Agreement are not amended or modified by the terms of this Interim Order ;

(c) <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party other than the property described in clauses (a) and (b) of this paragraph 9 that is subject to either (x) valid, perfected and non-avoidable liens in existence at the time of the commencement of the Cases (other than the Primed Liens) or (y) valid and non-avoidable

liens (other than Primed Liens) in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code, in each case other than (x) the Excluded Assets and the Excluded Equity Interests, but including any proceeds of Excluded Assets and Excluded Equity Interests that do not constitute Excluded Assets or Excluded Equity Interests and (y) the Avoidance Actions, but subject only to and effective upon entry of the Final Order, including the Avoidance Proceeds, which shall be (i) junior and subordinate to any valid, perfected and non-avoidable liens (other than the Primed Liens) in existence immediately prior to the Petition Date, and (ii) any such valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, *provided*, that nothing in the foregoing clauses (i) and (ii) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder; and

(d) <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens of the Loan Parties or security interests of the Loan Parties; or (ii) subordinated to or made *pari*

*passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

    10.    *Protection of DIP Lenders' Rights.*

           (a)  So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) (the "**DIP Commitments**") under the DIP Credit Agreement and the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Agreements or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iv), the DIP Agent or the DIP Lenders file financing statements or other documents to evidence the perfection of the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date and (v) deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or

other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such DIP Collateral subject to any sale or disposition.

(b) To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders and shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

(c) If any DIP Loans are outstanding, (i) any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by any Prepetition Secured Party, except as specifically provided in this Interim Order as Adequate Protection, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct and (ii) the DIP Agent is hereby authorized to make any such endorsements as agent for any such Prepetition Secured Party and such authorization is coupled with an interest and is irrevocable.

(d) The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Agent, acting at the direction of the Required Lenders, to enforce all of their rights under the DIP Documents (subject to the

terms of this Interim Order) and (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties and (ii) upon the occurrence of an Event of Default and the giving of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) via email to counsel to the Debtors and the U.S. Trustee to (A) withdraw consent to the Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law (subject to the terms of this Interim Order). Following the delivery of such notice, the DIP Agent may file a motion (the "**Stay Relief Motion**") seeking emergency relief from the automatic stay. In any hearing regarding any exercise of rights or remedies under the DIP Documents, the Debtors may seek relief from the Court seeking to stay the DIP Facility Agent's exercise of any rights and remedies (including seeking to use Cash Collateral on a non-consensual basis). The Debtors shall not object to any motion for such a hearing to be heard on shortened notice. Until such time as the Stay Relief Motion has been adjudicated by the Court, the Debtors may use the proceeds of the DIP Facility (to the extent drawn prior to the occurrence of the Event of Default (as defined in the DIP Credit Agreement)) or Cash Collateral to fund operations in accordance with the DIP Credit Agreement.

(e) In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.

(f)  No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral  (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11.     *Limitation on Charging Expenses Against DIP Collateral*. Except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, acting at the written direction of the Required Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, or the DIP Lenders. For the avoidance of doubt, consent to the Carve Out or the approval of any budget hereunder shall not be deemed a consent under this paragraph.  Nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent or the DIP Secured Parties to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.     *DIP Payments Free and Clear*.  Subject only to the Carve-Out, any and all payments or proceeds remitted to the DIP Agent, on behalf of the DIP Lenders, pursuant to the provisions of this Interim Order or Final Order (if and when entered) or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability, including, without

limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and solely in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects.

13.     *Use of Cash Collateral*.  The Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order, to use Cash Collateral; *provided* that (a) the Prepetition Secured Parties are granted the Adequate Protection and (b) except on the terms and conditions of this Interim Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

14.     *Adequate Protection of Prepetition FLFO Secured Parties.*  The Prepetition FLFO Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, to the extent of diminution in the value of the Prepetition FLFO Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition FLFO Agents' liens on the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition FLFO Secured Parties Adequate Protection Claims**").  In consideration of the foregoing, the Prepetition FLFO Secured Parties are hereby granted the following (collectively, the "**Prepetition FLFO Secured Parties Adequate Protection**"):

31

(a) <u>Prepetition FLFO Secured Parties Adequate Protection Liens</u>.  The Prepetition FLFO Agents (for themselves and for the benefit of the Prepetition FLFO Lenders) are hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition FLFO Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral including, without limitation, Unencumbered Property and, subject to entry of the Final Order, the Avoidance Proceeds, in each case subject and subordinate only to (i) the Carve-Out, (ii) the Permitted Prior Liens, (iii) the DIP Liens, and (iv) the Hedging Liens, and ranking *pari passu* with the Prepetition FLTL Secured Parties Adequate Protection Liens (as defined below) (the "**Prepetition FLFO Secured Parties Adequate Protection Liens**").

(b) <u>Prepetition FLFO Secured Parties 507(b) Claim</u>.  The Prepetition FLFO Agents (for themselves and for the benefit of the Prepetition FLFO Lenders) are hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the aggregate amount of the Prepetition FLFO Secured Parties Adequate Protection Claims with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition FLFO Secured Parties 507(b) Claim**"); which Prepetition FLFO Secured Parties 507(b) Claim shall have recourse to and be payable from all of the DIP Collateral including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds.  The Prepetition FLFO Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve-Out,

the Permitted Prior Liens and the DIP Superpriority Claims, and shall be *pari passu* with the

Prepetition FLTL Secured Parties 507(b) Claim (as defined below).  Except to the extent

expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition FLFO

Secured Parties shall not receive or retain any payments, property or other amounts in respect

of the Prepetition FLFO Secured Parties 507(b) Claim unless and until the DIP Obligations

(other than contingent indemnification obligations as to which no claim has been asserted)

have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

        (c)  <u>Prepetition FLFO Secured Parties Cash Payments</u>.  The Prepetition FLFO

Secured Parties shall receive current payment in cash on the last business day of each month,

or on such other dates as may be provided under the Prepetition FLFO Credit Agreement, in

an amount equal to the non-default interest (or letter of credit fees, as applicable) accrued and

unpaid payable under the Prepetition FLFO Credit Agreement (based, at the option of the

Debtors, on the "LIBOR" rate, as provided in the Prepetition FLFO Credit Agreement);

provided, that the payments made under this paragraph 14(c) shall be without prejudice to the

right of any party as to whether such payments constitute postpetition interest allowable

under section 506(b) of the Bankruptcy Code or are in respect of principal.

        (d)  <u>Prepetition FLFO Secured Parties Fees and Expenses</u>.  Without

duplication of amounts required to be paid pursuant to the DIP Documents, (i) upon entry of

this Interim Order, the Loan Parties shall pay in cash all documented out-of-pocket

professional fees, expenses and disbursements payable to the Prepetition FLFO Secured

Parties, including all fees and expenses of counsel of the Prepetition FLFO Administrative

Agent (Vinson & Elkins, LLP) and [Opportune LLP], and all fees and expenses of counsel of

the Prepetition FLFO Collateral Agent (Shipman & Goodwin LLP) (collectively, the

"**Prepetition FLFO Advisors**"), that accrued prior to the Petition Date and (ii) the Loan

Parties shall pay in cash all documented out-of-pocket professional fees, expenses and

disbursements payable to the Prepetition FLFO Secured Parties (including all fees and

expenses of the Prepetition FLFO Advisors) that have accrued on or after the Petition Date,

in each case of the foregoing clauses (i) and (ii), in accordance with the Prepetition FLFO

Credit Agreement.

(e) <u>Payment of Fees and Expenses</u>.  The payment of the fees, expenses and

disbursements set forth in paragraphs 14(d) and 15(c) herein (to the extent incurred after the

Petition Date) shall be made within ten (10) days (which time period may be extended by the

applicable professional) after the receipt by the Debtors, the Creditors' Committee (if

appointed) and the U.S. Trustee  (the "**Review Period**") of summary invoices therefor (the

"**Invoiced Fees**") and without the necessity of filing formal fee applications, including such

amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall

include the number of hours billed (except for financial advisors compensated on other than

an hourly basis) and a summary of services provided and the expenses incurred by the

applicable professional; *provided*, *however*, that any such invoice: (i) may be redacted to

protect privileged, confidential or proprietary information and (ii) shall not be required to

contain individual time detail (*provided*, that such invoice shall contain (except for financial

advisors compensated on other than an hourly basis), at a minimum, summary data regarding

hours worked by each timekeeper for the applicable professional).  The Debtors, the

Creditors' Committee (if appointed) and the U.S. Trustee may object to any portion of the

Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the

Court a motion or other pleading, on at least ten (10) days' prior written notice to the

applicable Prepetition Agent and the applicable Prepetition Lenders of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

(f)  <u>Milestones and Covenants</u>.  The Prepetition FLFO Secured Parties are hereby entitled to performance of those certain terms set forth in the DIP Term Sheet relating to "Milestones", "Financial Reporting", "Financial Covenants" and "Hedging Covenant", each as will be incorporated into the DIP Credit Agreement, when effective (the "**Additional Adequate Protection Provisions**").  While the DIP Facility remains outstanding, such Additional Adequate Protection Provisions may be waived, amended, modified or extended from time to time, in each case, as provided under the DIP Documents.  The Additional Adequate Protection Provisions shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder, and thereafter, may be waived, amended, modified or extended from time to time only by (i) order of the Bankruptcy Court or (ii) the prior written consent of Prepetition FLFO Secured Parties and Prepetition FLTL Secured Parties holding greater than 50% of the aggregate outstanding principal amount of loans under both the Prepetition FLFO Credit Agreement and Prepetition FLTL Credit Agreement (the "**Required First Lien Secured Parties**").

(g)  <u>Budget</u>.  The Debtors shall promptly provide the Prepetition FLFO Administrative Agent, on behalf of itself and the Prepetition FLFO Lenders, with all required written financial reporting and other periodic reporting that is delivered by the DIP Borrower

under the DIP Credit Agreement, including with respect to the Approved Budget

requirements set forth in the DIP Term Sheet, as will be incorporated into the DIP Credit

Agreement, when effective (the "**Budget Reporting**"). The Budget Reporting requirement

shall survive any termination of the DIP Credit Agreement or the DIP Commitments

thereunder, and thereafter, (i) each Approved Budget shall be delivered to counsel for the

Prepetition FLFO Secured Parties, and shall be acceptable to the Required First Lien Secured

Parties, it being understood that if the Required First Lien Secured Parties have not objected

to an updated Budget within five Business Days after delivery thereof, the Required First

Lien Secured Parties shall be deemed to have approved such updated Budget, (ii) no such

Budget shall be effective until so approved (or deemed approved), and upon approval (or

deemed approval) of such Budget by the Required First Lien Secured Parties, shall constitute

the Approved Budget for purposes of these Adequate Protection Reporting Obligations and

(iii) this Budget Reporting requirement may be waived, amended, modified or extended from

time to time with respect to the FLFO Secured Parties solely by the Required First Lien

Secured Parties (in their sole discretion).

(h) <u>Payments Attributable to Legacy Assets</u>.  In connection with any amounts

paid after the Petition Date by the Debtors and attributable to Legacy Apache Properties or

the Non-APA Remaining Assets (each, as defined in the Restructuring Support Agreement),

the DIP Agent may use commercially reasonable efforts to first apply proceeds from the DIP

Collateral that is not Prepetition Collateral to satisfy such amounts before applying proceeds

of DIP Collateral that is Prepetition Collateral to satisfy such amounts.

15.     *Adequate Protection of Prepetition FLTL Secured Parties.*  The Prepetition FLTL

Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the

Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including

the Cash Collateral, to the extent of diminution in the value of the Prepetition FLTL Secured

Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the

Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without

limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan

Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition

FLTL Agent's liens on the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant

to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant

to section 362 of the Bankruptcy Code (the "**Prepetition FLTL Secured Parties Adequate**

**Protection Claims**").  In consideration of the foregoing, the Prepetition FLTL Secured Parties

are hereby granted the following (collectively, the "**Prepetition FLTL Secured Parties**

**Adequate Protection**"):

(a) Prepetition FLTL Secured Parties Adequate Protection Liens. The

Prepetition FLTL Agent (for itself and for the benefit of the Prepetition FLTL Lenders) is

hereby granted (effective and perfected upon the date of this Interim Order and without the

necessity of the execution of any mortgages, security agreements, pledge agreements,

financing statements or other agreements), in the amount of the Prepetition FLTL Secured

Parties Adequate Protection Claim, a valid, perfected replacement security interest in and lien

upon all of the DIP Collateral including, without limitation, Unencumbered Property and,

subject to entry of the Final Order, the Avoidance Proceeds, in each case subject and

subordinate only to in each case subject and subordinate only to (i) the Carve-Out, (ii) the

Permitted Prior Liens (iii) the DIP Liens, and (iv) the Hedging Liens, and ranking *pari passu*

with the Prepetition FLFO Secured Parties Adequate Protection Liens (the "**Prepetition**

**FLTL Secured Parties Adequate Protection Liens**", and together with the Prepetition FLFO Secured Parties Adequate Protection Liens, the "**Adequate Protection Liens**").

(b) <u>Prepetition FLTL Secured Parties 507(b) Claim</u>.  The Prepetition FLTL Agent (for itself and for the benefit of the Prepetition FLTL Lenders) is hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition FLTL Secured Parties Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition FLTL Secured Parties 507(b) Claim**", and together with the Prepetition FLFO Secured Parties 507(b) Claim, the "**507(b) Claims**")); which Prepetition FLTL Secured Parties 507(b) Claim shall have recourse to and be payable from all of the DIP Collateral including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds.  The Prepetition FLTL Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve-Out, the Permitted Prior Liens and the DIP Superpriority Claims, and shall be *pari passu* with the Prepetition FLFO Secured Parties 507(b) Claim.  Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition FLTL Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition FLTL Secured Parties 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c) <u>Prepetition FLTL Secured Parties Fees and Expenses</u>.  Without duplication of amounts required to be paid pursuant to the DIP Documents, (i) upon entry of

this Interim Order, the Loan Parties shall pay in cash all documented out-of-pocket professional fees, expenses and disbursements payable to the Prepetition FLTL Secured Parties, including all fees and expenses of counsel and other professionals of the Prepetition FLTL Agent (including Shipman & Goodwin LLP) and the ad hoc group of Prepetition FLTL Lenders (including Davis Polk & Wardwell LLP, Haynes and Boone LLP, Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC, Rothschild & Co US Inc. and Intrepid Partners, LLC (collectively with Shipman & Goodwin, LLP and any other advisor retained by the Prepetition FLTL Secured Parties, the "**Prepetition FLTL Secured Parties Advisors**")) that accrued prior to the Petition Date and (ii) the Loan Parties shall pay in cash all documented out-of-pocket professional fees, expenses and disbursements payable to the Prepetition FLTL Secured Parties (including all fees and expenses of the Prepetition FLTL Secured Parties Advisors) that have accrued on or after the Petition Date, in each case of the foregoing clauses (i) and (ii), in accordance with the Prepetition FLTL Credit Agreement.

(d) <u>Milestones and Covenants</u>.  The Prepetition FLTL Secured Parties are hereby entitled to performance of the Additional Adequate Protection Provisions.  While the DIP Facility remains outstanding, such Additional Adequate Protection Provisions may be waived, amended, modified or extended from time to time, in each case, as provided under the DIP Documents.  The Additional Adequate Protection Provisions shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder, and thereafter, may be waived, amended, modified or extended from time to time only by (i) order of the Bankruptcy Court or (ii) the prior written consent of the Required First Lien Secured Parties.

(e)      Budget.  The Debtors shall promptly provide the Prepetition FLTL Administrative Agent, on behalf of itself and the Prepetition FLTL Lenders, with all required written financial reporting and other periodic reporting that is delivered by the DIP Borrower under the DIP Credit Agreement, including the Budget Reporting. This Budget Reporting requirement shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder, and thereafter, (i) each Approved Budget shall be delivered to counsel for the Prepetition FLTL Secured Parties, and shall be reasonably acceptable to the Required First Lien Secured Parties, it being understood that if the Required First Lien Secured Parties have not objected to an updated Budget within five Business Days after delivery thereof, the Required First Lien Secured Parties shall be deemed to have approved such updated Budget, (ii) no such Budget shall be effective until so approved (or deemed approved), and upon approval (or deemed approval) of such Budget by the Required First Lien Secured Parties, shall constitute the Approved Budget for purposes of this Budget Reporting requirement and (iii) this Budget Reporting requirement may be waived, amended, modified or extended from time to time with respect to the FLTL Secured Parties solely by the Required First Lien Secured Parties (in their sole discretion).

(f)  In connection with any amounts paid after the Petition Date by the Debtors and attributable to Legacy Apache Properties or the Non-APA Remaining Assets, the DIP Agent may use commercially reasonable efforts to first apply proceeds from the DIP Collateral that is not Prepetition Collateral to satisfy such amounts before applying proceeds of DIP Collateral that is Prepetition Collateral to satisfy such amounts.

16.      *Limitation on Charging Expenses Against Prepetition Collateral*. In partial consideration for, among other things, the Carve Out and the payments made under the

Approved Budget to administer the Cases with the use of Cash Collateral, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition Agents or the Prepetition Lenders, as the case may be, and in each case acting at the written direction of the requisite percentage of Prepetition FLFO Lenders, Prepetition FLTL Lenders or Prepetition SLTL Lenders, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Agents or the Prepetition Lenders, provided that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order. For the avoidance of doubt, consent to the Carve Out or the approval of any budget hereunder shall not be deemed a consent under this paragraph. Nothing contained in this Interim Order shall be deemed to be a consent by the Prepetition Secured Parties to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

17.     *Adequate Protection Payments Free and Clear.* Subject to entry of the Final Order (except with respect to payments of interest, fees, expenses and disbursements set forth in paragraphs 14(c), 14(d) and 15(c) of this Interim Order made between now and the entry of the Final Order), any and all payments or proceeds remitted to the Prepetition FLFO Administrative Agent on behalf of Prepetition FLFO Secured Parties or to the Prepetition FLTL Agent on behalf of any Prepetition FLTL Secured Parties, pursuant to the provisions of this Interim Order, the Final Order (if and when entered), any subsequent order of the Court or the Prepetition Debt

Documents, shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code (subject to modification under the Final Order with respect to any payments or proceeds remitted following entry of the Final Order), whether asserted or assessed by, through or on behalf of the Debtors, and solely in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects.

18.     *Limitations on "Equities of the Case" Exception*. The Prepetition Secured Parties are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties or the Prepetition Obligations, provided that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order.

19.     *Waiver of Marshaling for Prepetition Secured Parties*. In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Prepetition Collateral, provided that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after entry of the Final Order.

20.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the Adequate Protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the Adequate Protection is reasonable and sufficient to protect the interests of the Prepetition Secured Parties and any other parties' holding interests that are secured by Primed Liens; *provided* that any of the Prepetition Secured Parties, upon a

change in circumstances, may request further or different adequate protection, and the Debtors or any other party may, subject to and consistent with the terms of the Intercreditor Agreements, contest any such request.

       21.    *Perfection of DIP Liens and Adequate Protection Liens.*

       (a) The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, on behalf of, or at the direction of, the DIP Lenders or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens, and such parties shall provide reasonable

cooperation to the DIP Agent with respect to such matters.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b) A certified copy of this Interim Order may, in the discretion of the DIP Agent, at the direction of the Required Lenders under the DIP Documents, or the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent and the Prepetition Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

22.    *Preservation of Rights Granted Under This Interim Order.*

(a) Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection remain outstanding, and, except as otherwise expressly provided in paragraph 9 of this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in

44

favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)     The Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral if any of the Loan Parties, without the prior written consent of the Required Lenders seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

<ol type="i">
<li>a failure of the Debtors to make any payment under this Interim Order to any of the DIP Secured Parties when due;</li>
<li>a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Interim Order or (y) comply with any covenant or agreement in this Interim Order in any material respect;</li>
<li>any modifications, amendments, or reversal of this Interim Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;</li>
<li>an order converting or dismissing any of the Cases;</li>
<li>an order appointing a chapter 11 trustee in the Cases;</li>
<li>an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);</li>
<li>a plan of reorganization that constitutes an Alternative Restructuring (as defined in the Restructuring Support Agreement) being proposed by the Debtors or confirmation thereof;</li>
<li>the sale of all or substantially all of the assets of the Loan Parties or all Specified Assets (as defined in the Restructuring Support Agreement) (in each case, except to the extent permitted under the</li>
</ol>

DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made); or

(ix)    any "Event of Default" as defined in the DIP Credit Agreement.

(c)    The Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral if any of the Loan Parties, without the prior written consent of the Prepetition FLTL Agent seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

(i)    a failure of the Debtors to make any payment under this Interim Order to any of the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties when due;

(ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Interim Order or (y) comply with any covenant or agreement in this Interim Order in any material respect, and such failure is materially adverse to the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties;

(iii)    any modifications, amendments, or reversal of this Interim Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party, and such modification, amendment, or extension is materially adverse to the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties;

(iv)    an order converting or dismissing any of the Cases;

(v)    an order appointing a chapter 11 trustee in the Cases; or

(vi)    an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), and such order is materially adverse to the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties.

Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(d)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection or Adequate Protection Liens incurred by the Loan Parties to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in

section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection.

(e)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection. The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

23.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in

48

paragraph 5 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 5 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (i) such committee or any other party in interest, in each case with requisite standing granted by the Court (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 23) by no later than a date that is the later of (x) if a Creditors' Committee is not appointed, 75 days after entry of this Interim Order and (y) if a Creditors' Committee is appointed, 60 days after entry of the Final Order, (ii) any such later date as has been agreed to, in writing, by the Prepetition Agents (with the consent of the DIP Lenders) as applicable, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i)-(iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or

causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Parties or their respective subsidiaries and each of their former, current or future officers, partners, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Agreements, the Prepetition Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 5 of this Interim Order, shall be binding on all parties in interest; (b) the obligations of the Loan Parties under the Prepetition Credit Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Debt and the Prepetition Liens on the Prepetition

Collateral shall not be subject to any other or further claim or challenge by any statutory or non-statutory committee appointed or formed in the Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any statutory or non-statutory committee appointed or formed in the Cases (including the Creditors' Committee, if any), or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Credit Agreements shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 5 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or non-statutory committee appointed or formed in the Cases, and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committee appointed or formed in these Cases (including the Creditors' Committee, if any), standing or authority to pursue any claim or cause

of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Agreements, the Prepetition Debt or the Prepetition Liens.

24.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Guarantor, any official committee appointed in the Cases, or any trustee appointed in the Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the Adequate Protection, Adequate Protection Liens and superpriority claims granted to the Prepetition Secured Parties under the Interim Order or the Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition Debt, the DIP Obligations and/or the liens, claims, rights, or security interests granted under this Interim Order, the Final Order, the DIP Documents or the Prepetition Credit Agreements including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) to prevent, hinder, or otherwise delay the Prepetition Secured Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization on the Prepetition Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens, claims

and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Prepetition Credit Agreements or this Interim Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties, the DIP Agent or the DIP Lenders under this Interim Order, the Prepetition Credit Agreements or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the Definitive Documentation) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, adequate protection liens and superpriority claims and liens granted to the Prepetition Secured Parties, unless all DIP Obligations, Prepetition Debt, adequate protection, and claims granted to the DIP Agent, DIP Lenders or Prepetition Secured Parties under this Interim Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the DIP Lenders; or (vi) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the DIP Lenders in or are otherwise included in the "**Approved Budget**" (as initially attached to the Motion, and as updated in accordance with the terms of the DIP Documents). For the avoidance of doubt, nothing herein shall modify or limit the Loan Parties' use of the Carve-Out in connection with such rights.

25.     *Loss or Damage to Collateral*. Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Agent and the DIP Lenders comply with their

obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Loan Parties.

26.     *Interim Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents or any other order entered by this Court, the provisions of this Interim Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order and the DIP Documents, including, without limitation, the Approved Budget.

27.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition

Secured Parties and the Debtors and their respective successors and assigns; *provided* that the

DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to

permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any

financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for

the estates of the Debtors.

       *Limitation of Liability*.  In determining to make any loan or other extension of

credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any

rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents,

the DIP Agent and the DIP Lenders shall not (i) be deemed to be in "control" of the operations of

the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or

estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator"

with respect to the operation or management of the Debtors (as such terms or similar terms are

used in the United States Comprehensive Environmental Response, Compensation and Liability

Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).  The

Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of the

Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or

estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator"

with respect to the operation or management of the Debtors (as such terms or similar terms are

used in the United States Comprehensive Environmental Response, Compensation and Liability

Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

       28.   *Master Proof of Claim*.  The Prepetition Agents shall not be required to file proofs

of claim in the Cases or any successor case in order to assert claims on behalf of itself and the

Prepetition Secured Parties for payment of the Prepetition Debt arising under the Prepetition

Credit Agreements.  The statements of claim in respect of the Prepetition Debt set forth in this

Interim Order, together with any evidence accompanying the Motion and presented at the Interim

Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and

such secured status.  However, in order to facilitate the processing of claims, to ease the burden

upon the Court and to reduce an unnecessary expense to the Debtors' estates, each Prepetition

Agent is authorized, but not required, to file in the Debtors' lead chapter 11 case *Fieldwood*

*Energy Inc.,* Case No. 20-_____, a single, master proof of claim on behalf of the relevant

Prepetition Secured Parties on account of any and all of their respective claims arising under the

applicable Prepetition Credit Agreements and hereunder (each, a "**Master Proof of Claim**")

against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the

Debtors, the Prepetition Agents and the Prepetition Secured Parties, and each of their respective

successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth

opposite its name therein in respect of its claims against each of the Debtors of any type or nature

whatsoever with respect to the applicable Prepetition Credit Agreements, and the claim of each

Prepetition Secured Party (and each of its respective successors and assigns), named in a Master

Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of

these Cases.  The Master Proofs of Claim shall not be required to identify whether any

Prepetition Secured Party acquired its claim from another party and the identity of any such party

or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation

among such holders of the claims asserted therein resulting from the transfer of all or any portion

of such claims.  The provisions of this paragraph 28 and each Master Proof of Claim are intended

solely for the purpose of administrative convenience and shall not affect the right of each

Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed

in these Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.

29.     *Insurance*.  To the extent that any of the Prepetition Agents is listed as loss payee under the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee for the Prepetition Secured Parties under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and <u>second</u>, to the payment of the Prepetition Debt owed to the Prepetition Secured Parties.

30.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

31.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

32.     *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any Prepetition Secured Party receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of

DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the DIP Commitments in accordance with the DIP Documents, such Prepetition Secured Party shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

33.     *Credit Bidding.*  (a) The DIP Agent, as directed by the Required Lenders under the DIP Documents, shall have the right to credit bid on behalf of the Senior DIP Secured Parties, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral, and (b) subject to any applicable Intercreditor Agreement, the Prepetition Secured Parties shall have the right to credit bid on behalf of the Prepetition Secured Parties, up to the full amount of their Prepetition Debt  in any sale of the DIP Collateral, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

34.     *Intercreditor Agreements.* Nothing in this Interim Order shall amend or otherwise modify the terms or enforceability of the Intercreditor Agreements, including without limitation, the turnover and bankruptcy-related provisions contained therein, and the Intercreditor Agreements shall each remain in full force and effect. The rights of the Prepetition Secured Parties shall at all times remain subject to the Intercreditor Agreements.

35. *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

36. *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

37. *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

38. Subject to Section 553 of the Bankruptcy Code and applicable law, nothing in this Interim Order is intended to limit, impact or affect, in any way, any rights to set off or recoupment that the United States may have, all of which are expressly reserved.

39. Notwithstanding anything to the contrary in this Order, the liens granted in this Order, if any, against any of the Debtors' interests in the federal leases, grants of pipeline rights of way and rights of use and easement, shall not grant the applicable lender any greater rights or interests in the applicable leases, grants of pipeline rights of way and/or rights of use and easement than those to which the Debtors are entitled.  For the avoidance of any doubt, to the extent that any pre-petition secured parties or post-petition lenders foreclose on any pre-petition liens, adequate protection liens and/or post-petition liens, all regulatory and contractual requirements that apply to such leases, rights of way and rights of use and easement shall be preserved, subject to any defenses that may apply.

40. *Final Hearing*.  The Final Hearing is scheduled for _____, 2020 at _____ ___.m. (CST) before this Court.

41.     *Objections.*  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (i) the U.S. Trustee; (ii) the Debtors' 30 largest unsecured creditors on a consolidated basis; (iii) Shipman & Goodwin LLP, One Constitution Plaza, Hartford, Connecticut 06103 (Attn: Kathleen M. LaManna, Esq. and Nathan Z. Plotkin, Esq.) as counsel to the DIP Agent, the Prepetition FLTL Agent and the FLFO Collateral Agent; (iv) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Damian S. Schaible, Esq., Natasha Tsiouris, Esq. and Joshua Y. Sturm, Esq.) as primary counsel to certain DIP Lenders; (v) Vinson & Elkins, LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn: William L. Wallander, Esq. and Brad Foxman, Esq.)) as primary counsel to the Prepetition FLFO Administrative Agent; (vi) counsel to the Prepetition SLTL Agent; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of Texas, (ix) those persons who have formally appeared in these chapter 11 cases and requested service pursuant to Bankruptcy Rule 2002; and (x) any other party that has filed a request for notices with this Court, in each case to allow actual receipt by the foregoing no later than _____, 2020 at 4:00 p.m. (CST), prevailing Eastern Time.

42.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court.