*Execution Version*

INTERCREDITOR AGREEMENT

dated as of

April 11, 2018

among

CANTOR FITZGERALD SECURITIES,
as First Lien Term Facility Agent and Applicable First Lien Agent,

CORTLAND CAPITAL MARKET SERVICES LLC,
as Second Lien Term Facility Agent and Applicable Second Lien Agent,

FIELDWOOD ENERGY INC,
FIELDWOOD ENERGY LLC

and

THE SUBSIDIARIES OF FIELDWOOD ENERGY LLC NAMED HEREIN

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ................................................................................ 1

    **SECTION 1.01.**    **Construction; Certain Defined Terms.** ...................................... 1

ARTICLE II PRIORITIES AND AGREEMENTS WITH RESPECT TO COLLATERAL ...... 16

    **SECTION 2.01.**    **Priority of Claims** .................................................................. 16
    **SECTION 2.02.**    **Actions With Respect to Collateral; Prohibition on Contesting Liens.** ............................................................... 18
    **SECTION 2.03.**    **No Duties of Senior Representatives; Provision of Notice.** ..................................................................................... 21
    **SECTION 2.04.**    **No Interference; Payment Over; Reinstatement** ................... 22
    **SECTION 2.05.**    **Automatic Release of Junior Liens** ...................................... 24
    **SECTION 2.06.**    **Certain Agreements With Respect to Bankruptcy or Insolvency Proceedings** ..................................................... 25
    **SECTION 2.07.**    **Reinstatement** ...................................................................... 29
    **SECTION 2.08.**    **Insurance** ............................................................................. 30
    **SECTION 2.09.**    **Refinancings** ........................................................................ 30
    **SECTION 2.10.**    **Amendments to Credit Documents; Notices of Default** ......... 30
    **SECTION 2.11.**    **Possessory Collateral Agent as Gratuitous Bailee for Perfection** ............................................................................ 32

ARTICLE III EXISTENCE AND AMOUNTS OF LIENS AND OBLIGATIONS ................. 33

ARTICLE IV CONSENT OF GRANTORS ......................................................... 33

ARTICLE V MISCELLANEOUS ....................................................................... 34

    **SECTION 5.01.**    **Notices** ................................................................................ 34
    **SECTION 5.02.**    **Waivers; Amendment** .......................................................... 35
    **SECTION 5.03.**    **Parties in Interest** ............................................................... 36
    **SECTION 5.04.**    **Survival of Agreement** ........................................................ 36
    **SECTION 5.05.**    **Counterparts** ...................................................................... 36
    **SECTION 5.06.**    **Severability** ........................................................................ 36
    **SECTION 5.07.**    **Governing Law; Jurisdiction; Consent to Service of Process.** ................................................................................ 36
    **SECTION 5.08.**    **WAIVER OF JURY TRIAL** ................................................ 38
    **SECTION 5.09.**    **Headings** ............................................................................. 38
    **SECTION 5.10.**    **Conflicts** ............................................................................. 38
    **SECTION 5.11.**    **Provisions Solely to Define Relative Rights** .......................... 38
    **SECTION 5.12.**    **Agent Capacities** ................................................................. 38
    **SECTION 5.13.**    **Supplements** ........................................................................ 39
    **SECTION 5.14.**    **Requirements For Consent and Acknowledgment** ................. 39
    **SECTION 5.15.**    **Intercreditor Agreements** ................................................... 40
    **SECTION 5.16.**    **Other Junior Intercreditor Agreements** ............................. 40
    **SECTION 5.17.**    **Further Assurances** ............................................................ 41

**<u>EXHIBITS:</u>**

Exhibit A-1 Consent and Acknowledgment (Other First Lien Obligations)

Exhibit A-2 Consent and Acknowledgment (Other Second Lien Obligations)

OMM_US:76199239.5

This INTERCREDITOR AGREEMENT (this "***Agreement***") is dated as of April 11, 2018, among Cantor Fitzgerald Securities ("***Cantor Fitzgerald Securities***"), as the First Lien Term Facility Agent and the Applicable First Lien Agent, CORTLAND CAPITAL MARKET SERVICES LLC ("***Cortland***"), as the Second Lien Term Facility Agent and the Applicable Second Lien Agent, FIELDWOOD ENERGY LLC (the "***Company***"), FIELDWOOD ENERGY INC. ("***Holdings***"), the Subsidiaries of the Company named herein, and each Other First Lien Obligations Agent and each Other Second Lien Obligations Agent from time to time party hereto.  Capitalized terms used but not defined in the preamble and the recitals to this Agreement have the meanings set forth in Section 1.01(b) below.

This Agreement governs the relationship between the First Lien Obligations Secured Parties as a group, on the one hand, and the Second Lien Obligations Secured Parties as a group, on the other hand, with respect to the Common Collateral securing such Obligations. On the date hereof, the LC Facility Agent and the First Lien Term Facility Agent are entering into the Pari Passu First Lien Intercreditor Agreement, which governs the relationship of the First Lien Obligations Secured Parties among themselves with respect to the Collateral securing such Obligations.

In consideration of the mutual agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Applicable First Lien Agent (for itself and on behalf of the LC Facility Secured Parties, the First Lien Term Facility Secured Parties and any Other First Lien Obligations Secured Party), the Applicable Second Lien Agent (for itself and on behalf of the Second Lien Term Facility Secured Parties and any Other Second Lien Obligations Secured Party), the Company and the Subsidiaries of the Company party hereto hereby agree as follows:

## ARTICLE I

## DEFINITIONS

**SECTION 1.01.**     **Construction; Certain Defined Terms**.

(a)     The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "will" shall be construed to have the same meaning and effect as the word "shall".  Unless the context requires otherwise, (i) any definition of or reference to any agreement, instrument, other document, statute or regulation herein shall be construed as referring to such agreement, instrument, other document, statute or regulation as from time to time amended, supplemented or otherwise modified, (ii) any reference herein to any Person shall be construed to include such Person's successors and assigns, but shall not be deemed to include the Subsidiaries of such Person unless express reference is made to such Subsidiaries, (iii) the words "herein", "hereof and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (iv) all references herein to Articles, Sections and Annexes shall be construed to refer to Articles, Sections and Annexes of this Agreement and (v) unless otherwise expressly qualified herein, the words "asset" and "property" shall be

OMM_US:76199239.5

construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

(b)      As used in this Agreement, the following terms have the meanings specified below:

"*Apache*" means, collectively, Apache Corporation, Apache Shelf, Inc. and Apache Deep Water LLC.

"***Applicable First Lien Agent***" means the First Lien Term Facility Agent until it shall have notified in writing the LC Facility Agent (if not acting as the Applicable First Lien Agent), the Applicable Second Lien Agent, the Second Lien Term Facility Agent (if not acting as the Applicable Second Lien Agent), any Other First Lien Obligations Agent and any Other Second Lien Obligations Agent that another Representative has become the Applicable First Lien Agent for the First Lien Obligations Secured Parties, as appointed pursuant to the Pari Passu First Lien Intercreditor Agreement or other First Lien Obligations Documents.

"***Applicable Possessory Collateral Agent***" means the Applicable First Lien Agent.

"***Applicable Second Lien Agent***" means the Second Lien Term Facility Agent until it shall have notified in writing the Applicable First Lien Agent, the LC Facility Agent (if not acting as the Applicable First Lien Agent), the First Lien Term Facility Agent (if not acting as the Applicable First Lien Agent), any Other First Lien Obligations Agent and any Other Second Lien Obligations Agent, that another Representative has become the Applicable Second Lien Agent for the Second Lien Obligations Secured Parties, as appointed pursuant to a Pari Passu Second Lien Intercreditor Agreement or other Second Lien Obligations Documents.

"***Bankruptcy Code***" means Title 11 of the United States Code.

"***Business Day***" means any day excluding Saturday, Sunday and any other day on which banking institutions in New York City or Houston, Texas are authorized by law or other governmental actions to close.

"***Class***" (a) when used with respect to any Obligations, refers to whether such Obligations are LC Facility Obligations, First Lien Term Facility Obligations, Other First Lien Obligations, Second Lien Term Facility Obligations or Other Second Lien Obligations and (b) when used with respect to any Secured Party, refers to whether such Secured Party is a holder of Obligations of any particular Class of Obligations.

"***Collateral***" means all assets and properties subject to Liens in favor of any Secured Party created by any of the LC Facility Security Documents, the First Lien Term Facility Security Documents, the Second Lien Term Facility Security Documents, each Other First Lien Obligations Security Document and each Other Second Lien Obligations Security Document, as applicable, to secure the LC Facility Obligations, the First Lien Term Facility Obligations, the Second Lien Term Facility Obligations, any Series of Other First Lien Obligations or any Series of Other Second Lien Obligations, as applicable.

-2-

"**Collateral Agent**" means any of the First Lien Term Facility Agent, the LC Facility Agent, the Second Lien Term Facility Agent, each Other First Lien Obligations Agent and each Other Second Lien Obligations Agent, or all of the foregoing, as the context may require.

"**Common Collateral**" means, with respect to any two or more Classes or Series of Obligations, the portion of the Collateral granted to secure each of such Classes or Series of Obligations.

"**Company**" has the meaning set forth in the preamble hereto.

"**Comparable Junior Obligations Collateral Documents**" means, in relation to any Common Collateral subject to any Lien created under any Senior Secured Obligations Collateral Document, those Junior Secured Obligations Documents that create a Lien on the same Common Collateral, granted by the same Grantor.

"**Consent and Acknowledgment**" means, as applicable, either (a) an instrument in form and substance substantially similar to Exhibit A-1 hereto, pursuant to which any Other First Lien Obligations Secured Party, through its Representative, acknowledges this Agreement and consents to be bound by the terms hereof in accordance with Section 5.14 or (b) an instrument in form and substance substantially similar to Exhibit A-2 hereto, pursuant to which any Other Second Lien Obligations Secured Party, through its Representative, acknowledges this Agreement and consents to be bound by the terms hereof in accordance with Section 5.14, in case of each of clauses (a) and (b), acknowledged and confirmed by the Applicable First Lien Agent, the Applicable Second Lien Agent, and the Company (on behalf of itself and its Subsidiaries party to this Agreement) for purposes of this Agreement.

"**Decommissioning Agreement**" means the Decommissioning Agreement dated as of September 30, 2013, among Apache Corporation, Apache Shelf, Inc., Apache Deepwater LLC, Apache Shelf Exploration LLC, the Company and GOM Shelf LLC, as such agreement may be amended, restated, amended and restated or otherwise modified from time to time, including by that certain Fifth Amendment to the Decommissioning Agreement dated as of the date hereof.

"**Default**" means a "Default" or any other event or condition that with notice or passage of time, or both, would become an event of default (however defined) under or as defined in the applicable First Lien Obligations Documents and/or the applicable Second Lien Obligations Documents, as the context may require.

"**DIP Financing**" has the meaning set forth in Section 2.06(b)(i).

"**Discharge**" means, with respect to any First Lien Obligations and any Second Lien Obligations, except to the extent otherwise provided herein with respect to the reinstatement or continuation of any such First Lien Obligations and any such Second Lien Obligations, the payment in full in cash or immediately available funds (except for contingent indemnities and cost and reimbursement obligations to the extent no claim has been made) of all such First Lien Obligations and all such Second Lien Obligations then outstanding, if any, and, with respect to

-3-

letters of credit or letter of credit guaranties outstanding under the agreements or instruments (the "***Relevant Instruments***") governing such First Lien Obligations or such Second Lien Obligations, as the case may be, delivery of cash collateral or backstop letters of credit in respect thereof in a manner reasonably satisfactory to the issuing lenders under such Relevant Instruments and the Applicable First Lien Agent or Applicable Second Lien Agent, as the case may be, in each case after or concurrently with the termination of all commitments to extend credit thereunder, and the termination of all commitments of "secured parties" under the Relevant Instruments; *provided* that the Discharge of any First Lien Obligations and any Second Lien Obligations shall not be deemed to have occurred if such payments are made with the proceeds of other First Lien Obligations or other Second Lien Obligations that constitute an exchange or replacement for or a refinancing of such First Lien Obligations or such Second Lien Obligations, as the case may be.  In the event that any Obligations are modified and such Obligations are paid over time or otherwise modified under Section 1129 of the Bankruptcy Code pursuant to a confirmed and consummated Plan of Reorganization, such Obligations shall be deemed to be discharged when the final payment is made, in cash or immediately available funds or in the form of consideration otherwise provided for in such Plan of Reorganization, in respect of such Indebtedness and any obligations pursuant to such new Indebtedness shall have been satisfied.  The term "***Discharged***" shall have a corresponding meaning.

"***Enforcement Action***" means an action under applicable law to:

(a)     foreclose, execute, levy, or collect on, take possession or control of, sell or otherwise realize upon (judicially or non-judicially), or lease, license, or otherwise dispose of (whether publicly or privately), Common Collateral, or otherwise exercise or enforce remedial rights with respect to Common Collateral under any of the First Lien Obligations Documents or the Second Lien Obligations Documents (including by way of set-off, recoupment, notification of a public or private sale or other disposition pursuant to the New York UCC or other applicable law, notification to account debtors, notification to depositary banks under deposit account control agreements, or exercise of rights under landlord consents, if applicable),

(b)     solicit bids from third Persons to conduct the liquidation or disposition of Common Collateral or to engage or retain sales brokers, marketing agents, investment bankers, accountants, appraisers, auctioneers, or other third Persons for the purposes of valuing, marketing, promoting and selling Common Collateral,

(c)     receive a transfer of Common Collateral in satisfaction of Indebtedness or any other obligation secured thereby,

(d)     otherwise enforce a security interest or exercise another right or remedy, as a secured creditor or otherwise, pertaining to the Common Collateral at law, in equity, or pursuant to the First Lien Obligations Documents or the Second Lien Obligations Documents (including the commencement of applicable legal proceedings or other actions with respect to Common Collateral to facilitate the actions described in the preceding clauses, and exercising voting rights in respect of equity interests comprising Common Collateral), or

(e)      effect the disposition of Common Collateral by any Grantor after the occurrence and during the continuation of an Event of Default under the First Lien Obligations Documents or the Second Lien Obligations Documents with the consent of the applicable Collateral Agent.

For the avoidance of doubt, "Enforcement Action" shall not include any forbearance from the exercise of all or any remedies by any First Lien Obligations Secured Party.

"*Event of Default*" means an "Event of Default" under and as defined in, or any condition or event that would give any Secured Party the right to exercise remedies under, the applicable First Lien Obligations Documents and/or Second Lien Obligations Documents, as the context may require.

"*First Lien Obligations*" means (i) the First Lien Term Facility Obligations, (ii) the LC Facility Obligations and (iii) the Other First Lien Obligations.

"*First Lien Obligations Agents*" means the First Lien Term Facility Agent, the LC Facility Agent and each Other First Lien Obligations Agent.

"*First Lien Obligations Documents*" means, collectively, the First Lien Term Facility Documents, the LC Facility Documents and the Other First Lien Obligations Documents.

"*First Lien Obligations Secured Parties*" means each First Lien Term Facility Secured Party, each LC Facility Secured Party and each Other First Lien Obligations Secured Party.

"*First Lien Obligations Security Documents*" means the First Lien Term Facility Security Documents, the LC Facility Security Documents and each Other First Lien Obligations Security Document.

"*First Lien Term Facility*" means (i) the Amended and Restated First Lien Term Loan Agreement of even date herewith, among the Company, the lenders and agents party thereto from time to time and the First Lien Term Facility Agent, as amended, restated, amended and restated, supplemented, waived, replaced (whether or not upon termination, and whether with the original lenders or otherwise), restructured, repaid, refunded, refinanced or otherwise modified from time to time in accordance with its terms and the terms hereof and of the Pari Passu First Lien Intercreditor Agreement, as applicable, including any agreement or indenture extending the maturity thereof, refinancing, replacing or otherwise restructuring all or any portion of the Indebtedness under such agreement or agreements or indenture or indentures or any successor or replacement agreement or agreements or indenture or indentures or increasing the amount loaned or issued thereunder or altering the maturity thereof (except to the extent any such refinancing, replacement or restructuring is designated by the Company to not be included in the definition of "First Lien Term Facility") and (ii) whether or not the facility referred to in clause (i) remains outstanding, if designated by the Company to be included in the definition of "First Lien Term Facility" and subject to the satisfaction of the requirements set forth in Section 5.14, one or more (A) debt facilities providing for revolving credit loans, term loans, receivables

-5-

financing (including through the sale of receivables to lenders or to special purpose entities formed to borrow from lenders against such receivables) or letters of credit, (B) debt securities, indentures or other forms of debt financing (including convertible or exchangeable debt instruments or bank guarantees or bankers' acceptances) or (C) instruments or agreements evidencing any other Indebtedness, in each case, with the same or different borrowers or issuers and, in each case, as amended, supplemented, modified, extended, restructured, renewed, refinanced, restated, amended and restated, replaced or refunded in whole or in part from time to time.

"*First Lien Term Facility Agent*" means the administrative agent and the collateral agent for the First Lien Term Facility Secured Parties, together with its successors or co-agents in substantially the same capacity as may from time to time be appointed.  As of the date hereof, Cantor Fitzgerald Securities shall be the First Lien Term Facility Agent.

"*First Lien Term Facility Documents*" means the documentation in respect of the First Lien Term Facility, the First Lien Term Facility Security Agreements and the other "Loan Documents" or comparable terms as defined in the First Lien Term Facility.

"*First Lien Term Facility Mortgages*" means all "Mortgages" as defined in the First Lien Term Facility.

"*First Lien Term Facility Obligations*" means all "Loan Obligations" (as such term is defined in the First Lien Term Loan Agreement referred to in clause (i) of the definition of the First Lien Term Facility) of the Company and other obligors outstanding under, and all other obligations in respect of, the First Lien Term Facility or any other First Lien Term Facility Documents.

"*First Lien Term Facility Secured Parties*" means, at any time, the Persons holding any First Lien Term Facility Obligations and the successors and permitted assigns thereof, including the First Lien Term Facility Agent and each other "Secured Party" as defined in any applicable First Lien Term Facility Document, including each counterparty to any Hedge Agreement or any provider of cash management services, the obligations of which are First Lien Term Facility Obligations.

"*First Lien Term Facility Security Agreements*" means (a) the Collateral Agreement of even date herewith, among the Company, each grantor party thereto and the First Lien Term Facility Agent and (b) such other security agreements and pledge agreements entered into from time to time in respect of the First Lien Term Facility, in each case, as amended, supplemented, restated, amended and restated or otherwise modified from time to time in accordance with their respective terms and the terms hereof and of the Pari Passu First Lien Intercreditor Agreement.

"*First Lien Term Facility Security Documents*" means the First Lien Term Facility Security Agreements, the First Lien Term Facility Mortgages and any other documents now existing or entered into after the date hereof that create Liens on any assets or properties of any Grantor to secure any First Lien Term Facility Obligations.

-6-

"***Grantor***" means Holdings, the Company and each Subsidiary of the Company that shall have granted any Lien in favor of any Collateral Agent on any of its assets or properties to secure any of the Obligations.

"***Hedge Agreement***" means (a) any and all rate swap transactions, basis swaps, credit derivative transactions, forward rate transactions, commodity swaps, commodity options, forward commodity contracts, equity or equity index swaps or options, bond or bond price or bond index swaps or options or forward bond or forward bond price or forward bond index transactions, interest rate options, forward foreign exchange transactions, cap transactions, floor transactions, collar transactions, currency swap transactions, cross-currency rate swap transactions, currency options, spot contracts, fixed-price physical delivery contracts, whether or not exchange traded, or any other similar transactions or any combination of any of the foregoing (including any options to enter into any of the foregoing), whether or not any such transaction is governed by or subject to any master agreement, and (b) any and all transactions of any kind, and the related confirmations, which are subject to the terms and conditions of, or governed by, any form of master agreement published by the International Swaps and Derivatives Association, Inc., any International Foreign Exchange Master Agreement or any other master agreement (any such master agreement, together with any related schedules, a "***Master Agreement***"), including any such obligations or liabilities under any Master Agreement.  Notwithstanding the foregoing, agreements or obligations to physically sell any commodity at any index-based price shall not be considered Hedge Agreements.

"***Holdings***" has the meaning set forth in the preamble hereto.

"***Indebtedness***" means and includes all obligations that constitute "Indebtedness", "Debt" or other comparable terms as defined in the applicable First Lien Obligations Documents or Second Lien Obligations Documents.

"***Insolvency or Liquidation Proceeding***" shall mean (a) any voluntary or involuntary case or proceeding under the Bankruptcy Code with respect to any Grantor, (b) any other voluntary or involuntary insolvency, reorganization or bankruptcy case or proceeding, or any receivership, liquidation, reorganization or other similar case or proceeding with respect to any Grantor or with respect to any of its assets, (c) any liquidation, dissolution, reorganization or winding up of any Grantor whether voluntary or involuntary and whether or not involving insolvency or bankruptcy or (d) any assignment for the benefit of creditors or any other marshalling of assets and liabilities of any Grantor.

"***Junior Claims***" means, with respect to the Collateral securing the First Lien Obligations, the Second Lien Obligations, to the extent secured by such Collateral.

"***Junior Representative***" means, with respect to the Collateral securing the First Lien Obligations, each Second Lien Obligations Agent.

"***Junior Secured Obligations***" means, with respect to the Collateral securing the First Lien Obligations, the Second Lien Obligations.

-7-

"***Junior Secured Obligations Collateral***" means, with respect to any Obligations, the Common Collateral in respect of which such Obligations constitute Junior Claims.

"***Junior Secured Obligations Documents***" means, with respect to the Collateral securing the First Lien Obligations, the Second Lien Obligations Documents.

"***Junior Secured Obligations Secured Parties***" means, with respect to the Collateral securing the First Lien Obligations, the Second Lien Obligations Secured Parties.

"***LC Facility***" means (i) the Amended and Restated Credit Agreement of even date herewith, among the Company, Holdings, the lenders and agents party thereto from time to time and the LC Facility Agent, as amended, restated, amended and restated, supplemented, waived, replaced (whether or not upon termination, and whether with the original lenders or otherwise), restructured, repaid, refunded, refinanced or otherwise modified from time to time in accordance with its terms and the terms hereof and of the Pari Passu First Lien Intercreditor Agreement, as applicable, including any agreement or indenture extending the maturity thereof, refinancing, replacing or otherwise restructuring all or any portion of the Indebtedness under such agreement or agreements or indenture or indentures or any successor or replacement agreement or agreements or indenture or indentures or increasing the amount loaned or issued thereunder or increasing the amount loaned or issued thereunder or altering the maturity thereof (except to the extent any such refinancing, replacement or restructuring is designated by the Company to not be included in the definition of "LC Facility") and (ii) whether or not the facility referred to in clause (i) remains outstanding, if designated by the Company to be included in the definition of "LC Facility" and subject to the satisfaction of the requirements set forth in Section 5.14, one or more (A) debt facilities providing for revolving credit loans, term loans, receivables financing (including through the sale of receivables to lenders or to special purpose entities formed to borrow from lenders against such receivables) or letters of credit, (B) debt securities, indentures or other forms of debt financing (including convertible or exchangeable debt instruments or bank guarantees or bankers' acceptances) or (C) instruments or agreements evidencing any other Indebtedness, in each case, with the same or different borrowers or issuers and, in each case, as amended, supplemented, modified, extended, restructured, renewed, refinanced, restated, amended and restated, replaced or refunded in whole or in part from time to time.

"***LC Facility Agent***" means the administrative agent and the collateral agent for the LC Facility Secured Parties, together with its successors or co-agents in substantially the same capacity as may from time to time be appointed.  As of the date hereof, Cantor Fitzgerald Securities shall be the LC Facility Agent.

"***LC Facility Documents***" means the documentation in respect of the LC Facility, the LC Facility Security Agreements and the other "Credit Documents" or comparable terms as defined in the LC Facility.

"***LC Facility Mortgages***" means all "Mortgages" as defined in the LC Facility.

"***LC Facility Obligations***" means "Obligations" as defined in the LC Facility.

-8-

"***LC Facility Secured Parties***" means, at any time, the Persons holding any LC Facility Obligations and the successors and permitted assigns thereof, including the LC Facility Agent and each other "Secured Party" as defined in any applicable LC Facility Document, including each counterparty to any Hedge Agreement or any provider of cash management services, the obligations of which are LC Facility Obligations.

"***LC Facility Security Agreements***" means (a) the Collateral Agreement of even date herewith, among the Company, Holdings, each other grantor party thereto and the LC Facility Agent and (b) such other security agreements and pledge agreements entered into from time to time in respect of the LC Facility, in each case, as amended, supplemented, restated, amended and restated or otherwise modified from time to time in accordance with their respective terms and the terms hereof and of the Pari Passu First Lien Intercreditor Agreement.

"***LC Facility Security Documents***" means the LC Facility Security Agreements, the LC Facility Mortgages and any other documents now existing or entered into after the date hereof that create Liens on any assets or properties of any Grantor to secure any LC Facility Obligations.

"***Lien***" has the meaning set forth in the First Lien Obligations Documents, and/or the Second Lien Obligations Documents.

"***Mortgages***" means the LC Facility Mortgages, the First Lien Term Facility Mortgages, the Second Lien Term Facility Mortgages, any Other First Lien Obligations Mortgage and any Other Second Lien Obligations Mortgage.

"***New York UCC***" means the Uniform Commercial Code as from time to time in effect in the State of New York.

"***obligations***" means any principal, interest (including interest accruing during the period of any bankruptcy, insolvency, receivership or other similar proceedings, regardless of whether allowed or allowable in any such proceeding), penalties, fees, indemnifications, reimbursements (including reimbursement obligations with respect to letters of credit and bankers' acceptances), damages and other liabilities payable under the documentation governing any Indebtedness.

"***Obligations***" means the First Lien Obligations and the Second Lien Obligations.

"***Other First Lien Obligations***" means obligations of Holdings, the Company and the other Grantors (other than the LC Facility Obligations and the First Lien Term Facility Obligations) that are equally and ratably secured with the LC Facility Obligations and the First Lien Term Facility Obligations and are designated by the Company as "Other First Lien Obligations"; *provided* that the requirements set forth in Section 5.14 shall have been satisfied.

"***Other First Lien Obligations Agent***" means, with respect to any Series of Other First Lien Obligations or any separate facility within such Series, the Person elected, designated or appointed as the administrative agent and/or collateral agent, trustee or similar representative of such Series or such separate facility within such Series by or on behalf of the holders of such

Series of Other First Lien Obligations or such separate facility within such Series, and its respective successors in substantially the same capacity as may from time to time be appointed.

"**Other First Lien Obligations Credit Document**" means (a) any instruments, agreements or documents evidencing debt facilities, providing for revolving credit loans, term loans, receivables financing (including through the sale of receivables to lenders or to special purpose entities formed to borrow from lenders against such receivables) or letters of credit, (b) debt securities, indentures and/or other forms of debt financing (including convertible or exchangeable debt instruments or bank guarantees or bankers' acceptances) or (c) instruments or agreements evidencing any other Indebtedness, in each case to the extent that (i) the obligations in respect thereof constitute Other First Lien Obligations and (ii) the Representative with respect thereto has duly executed and delivered the applicable Consent and Acknowledgment.

"**Other First Lien Obligations Documents**" means, collectively, the Other First Lien Obligations Credit Documents and the Other First Lien Obligations Security Documents related thereto.

"**Other First Lien Obligations Mortgages**" means all mortgages, trust deeds, deeds of trust, deeds to secure debt, assignments of leases and rents, and other security documents relating to any Real Estate Asset in favor of an Other First Lien Obligations Agent for the benefit of the applicable Other First Lien Obligations Secured Parties.

"**Other First Lien Obligations Secured Parties**" means, collectively, the holders of any Other First Lien Obligations who have directly or indirectly through their respective Other First Lien Obligations Agents, become party to and bound by this Agreement pursuant to a Consent and Acknowledgment in accordance with the provisions of Section 5.14 hereof.

"**Other First Lien Obligations Security Documents**" means, collectively, the security agreements or any other documents now existing or entered into after the date hereof that create Liens on any assets or properties of any Grantor to secure any Other First Lien Obligations.

"**Other Second Lien Obligations**" means obligations of Holdings, the Company and the other Grantors (other than the Second Lien Term Facility Obligations) that are equally and ratably secured with the Second Lien Term Facility Obligations and are designated by the Company as "Other Second Lien Obligations" (including any interest and fees accruing after the commencement of bankruptcy or insolvency proceedings whether or not allowed in such bankruptcy or insolvency proceeding); *provided* that the requirements set forth in Section 5.14 shall have been satisfied.

"**Other Second Lien Obligations Agent**" shall mean, with respect to any Series of Other Second Lien Obligations or any separate facility within such Series, the Person elected, designated or appointed as the administrative agent and/or collateral agent, trustee or similar representative of such Series or such separate facility within such Series by or on behalf of the holders of such Series of Other Second Lien Obligations or such separate facility within such Series, and its respective successors in substantially the same capacity as may from time to time be appointed.

-10-

"**Other Second Lien Obligations Credit Document**" means (a) any instruments, agreements or documents evidencing debt facilities, providing for revolving credit loans, term loans, receivables financing (including through the sale of receivables to lenders or to special purpose entities formed to borrow from lenders against such receivables) or letters of credit, (b) debt securities, indentures and/or other forms of debt financing (including convertible or exchangeable debt instruments or bank guarantees or bankers' acceptances) or (c) instruments or agreements evidencing any other Indebtedness, in each case to the extent that (i) the obligations in respect thereof constitute Other Second Lien Obligations and (ii) the Representative with respect thereto has duly executed and delivered the applicable Consent and Acknowledgment.

"**Other Second Lien Obligations Documents**" means, collectively, the Other Second Lien Obligations Credit Documents and the Other Second Lien Obligations Security Documents related thereto.

"**Other Second Lien Obligations Mortgages**" means all mortgages, trust deeds, deeds of trust, deeds to secure debt, assignments of leases and rents, and other security documents relating to any Real Estate Asset in favor of an Other Second Lien Obligations Agent for the benefit of the Other Second Lien Obligations Secured Parties.

"**Other Second Lien Obligations Secured Parties**" means, collectively, the holders of any Other Second Lien Obligations who have directly or indirectly through their respective Other Second Lien Obligations Agents, become party to and bound by this Agreement pursuant to a Consent and Acknowledgment in accordance with the provisions of Section 5.14 hereof.

"**Other Second Lien Obligations Security Documents**" means, collectively, the security agreements or any other documents now existing or entered into after the date hereof that create Liens on any assets or properties of any Grantor to secure any Other Second Lien Obligations.

"**Pari Passu First Lien Intercreditor Agreement**" means the intercreditor agreement entered into as of the date hereof among the LC Facility Agent, the First Lien Term Facility Agent and each Other First Lien Obligations Agent to govern the relationship among the First Lien Obligations Secured Parties with respect to any of the Collateral (including all or any portion of the Common Collateral), as the case may be, as amended, supplemented, restated, amended and restated, replaced or otherwise modified from time to time in accordance with its terms.

"**Pari Passu Second Lien Intercreditor Agreement**" means any intercreditor agreement entered into among the Second Lien Term Facility Agent and each Other Second Lien Obligations Agent to govern the relationship among the Second Lien Obligations Secured Parties with respect to any of the Collateral (including all or any portion of the Common Collateral), as the case may be, as amended, supplemented, restated, amended and restated, replaced or otherwise modified from time to time in accordance with its terms.

"**Permitted Remedies**" means, with respect to any Junior Secured Obligations:

-11-

(i)      filing a claim or statement of interest with respect to such Obligations; *provided* that an Insolvency or Liquidation Proceeding has been commenced by or against any Grantor;

(ii)      taking any action (not adverse to the Liens on the Common Collateral securing any Senior Secured Obligations, the priority status thereof, or the rights of the Applicable First Lien Agent or any of the Senior Secured Obligations Secured Parties to exercise rights, powers and/or remedies in respect thereof) in order to create, perfect, preserve or protect (but not enforce) its Lien on any of the Collateral;

(iii)      filing any necessary or appropriate responsive or defensive pleadings in opposition to any motion, claim, adversary proceeding or other pleading made by any person objecting to or otherwise seeking the disallowance of the claims or Liens of the Junior Secured Obligations Secured Parties, including any claims secured by the Common Collateral, or otherwise make any agreements or file any motions or objections pertaining to the claims of the Junior Secured Obligations Secured Parties, in each case in a manner not inconsistent with the terms of this Agreement;

(iv)      filing any pleadings, objections, motions or agreements which (x) assert rights or interests available to unsecured creditors of the Grantors or (y) in the case of a sale or other disposition of any Common Collateral free and clear of its Liens or other claims under Section 363 of the Bankruptcy Code, which assert rights or interests available to secured creditors of the Grantors, in each case arising under either any Insolvency or Liquidation Proceeding or applicable non-bankruptcy law, and in each case not inconsistent with the terms of this Agreement or applicable law (including the bankruptcy laws of any applicable jurisdiction);

(v)      voting on any Plan of Reorganization, filing any proof of claim, making other filings and making any arguments, obligations, and motions (including in support of or opposition to, as applicable, the confirmation or approval of any Plan of Reorganization) that are, in each case, not inconsistent with the terms of this Agreement;

(vi)      taking any Enforcement Action after the termination of the Standstill Period; and

(vii)      exercising any other rights and remedies as an unsecured creditor against any Grantor in accordance with applicable law and in a manner not inconsistent with the terms of this Agreement.

"***Person***" means any natural person, corporation, business trust, joint venture, association, company, partnership, limited liability company or government, individual or family trusts, or any agency or political subdivision thereof.

"***Plan of Reorganization***" means any plan of reorganization, plan of liquidation, agreement for composition, or other type of plan of arrangement proposed in or in connection with any Insolvency or Liquidation Proceeding.

"***Possessory Collateral***" means the Common Collateral in the possession or control of any Collateral Agent (or its agents or bailees), to the extent that possession or control thereof perfects a Lien thereon under the Uniform Commercial Code of any jurisdiction.

"***Possessory Collateral Agent***" means, with respect to any Possessory Collateral, the Collateral Agent having possession or control (including through its agents or bailees) thereof.

"***Purchase Agreement***" means the Purchase and Sale Agreement, dated as of July 18, 2013, among Apache, the Company and GOM Shelf LLC.

"***Real Estate Asset***" means, at any time of determination, any interest (fee, leasehold or otherwise) then owned by any Grantor in any real property.

"***Refinance***" means to amend, restate, amend and restate, supplement, waive, replace (whether or not upon termination, and whether with the original parties or otherwise), restructure, repay, refund, refinance or otherwise modify from time to time (including by means of any agreement or indenture extending the maturity thereof, refinancing, replacing or otherwise restructuring all or any portion of the obligations under such agreement or agreements or indenture or indentures or any successor or replacement agreement or agreements or indenture or indentures or increasing the amount loaned or issued thereunder or altering the maturity thereof). "***Refinanced***" and "***Refinancing***" shall have correlative meanings.

"***Representative***" means (a) in the case of the LC Facility Obligations, the LC Facility Agent, (b) in the case of the First Lien Term Facility Obligations, the First Lien Term Facility Agent, (c) in the case of the Second Lien Term Facility Obligations, the Second Lien Term Facility Agent, (d) in the case of any Series of Other First Lien Obligations, each Other First Lien Obligations Agent of such Series, (e) in the case of any Series of Other Second Lien Obligations, each Other Second Lien Obligations Agent of such Series, (f) in the case of the First Lien Obligations, the Applicable First Lien Agent and (g) in the case of the Second Lien Obligations, the Applicable Second Lien Agent.

"***SEC***" means the United States Securities and Exchange Commission or any successor thereto.

"***Second Lien Obligations***" means (i) the Second Lien Term Facility Obligations and (ii) the Other Second Lien Obligations.

"***Second Lien Obligations Agents***" means the Second Lien Term Facility Agent and each Other Second Lien Obligations Agent.

"***Second Lien Obligations Documents***" means, collectively, the Second Lien Term Facility Documents and the Other Second Lien Obligations Documents.

"***Second Lien Obligations Secured Parties***" means each Second Lien Term Facility Secured Party and each Other Second Lien Obligations Secured Party.

-13-

"***Second Lien Obligations Security Documents***" means the Second Lien Term Facility Security Documents and each Other Second Lien Obligations Security Document.

"***Second Lien Term Facility***" means (i) the Amended and Restated Second Lien Term Loan Agreement of even date herewith, among the Company, the lenders and agents party thereto from time to time and the Second Lien Term Facility Agent, as amended, restated, amended and restated, supplemented, waived, replaced (whether or not upon termination, and whether with the original lenders or otherwise), restructured, repaid, refunded, refinanced or otherwise modified from time to time in accordance with its terms and the terms hereof and of any Pari Passu Second Lien Intercreditor Agreement, as applicable, including any agreement or indenture extending the maturity thereof, refinancing, replacing or otherwise restructuring all or any portion of the Indebtedness under such agreement or agreements or indenture or indentures or any successor or replacement agreement or agreements or indenture or indentures or increasing the amount loaned or issued thereunder or altering the maturity thereof (except to the extent any such refinancing, replacement or restructuring is designated by the Company to not be included in the definition of "Second Lien Term Facility") and (ii) whether or not the facility referred to in clause (i) remains outstanding, if designated by the Company to be included in the definition of "Second Lien Term Facility" and subject to the satisfaction of the requirements set forth in Section 5.14, one or more (A) debt facilities providing for revolving credit loans, term loans, receivables financing (including through the sale of receivables to lenders or to special purpose entities formed to borrow from lenders against such receivables) or letters of credit, (B) debt securities, indentures or other forms of debt financing (including convertible or exchangeable debt instruments or bank guarantees or bankers' acceptances) or (C) instruments or agreements evidencing any other Indebtedness, in each case, with the same or different borrowers or issuers and, in each case, as amended, supplemented, modified, extended, restructured, renewed, refinanced, restated, amended and restated, replaced or refunded in whole or in part from time to time.

"***Second Lien Term Facility Agent***" means the administrative agent and the collateral agent for the Second Lien Term Facility Secured Parties, together with its successors or co-agents in substantially the same capacity as may from time to time be appointed.  As of the date hereof, Cortland shall be the Second Lien Term Facility Agent.

"***Second Lien Term Facility Documents***" means the documentation in respect of the Second Lien Term Facility, the Second Lien Term Facility Security Agreements and the other "Loan Documents" or comparable terms as defined in the Second Lien Term Facility.

"***Second Lien Term Facility Mortgages***" means all "Mortgages" as defined in the Second Lien Term Facility.

"***Second Lien Term Facility Obligations***" means all "Loan Obligations" (as such term is defined in the Second Lien Term Loan Agreement referred to in clause (i) of the definition of the Second Lien Term Facility) of the Company and other obligors outstanding under, and all other obligations in respect of, the Second Lien Term Facility or any other Second Lien Term Facility Documents.

-14-

"**Second Lien Term Facility Secured Parties**" means, at any time, the Persons holding any Second Lien Term Facility Obligations and the successors and permitted assigns thereof, including the Second Lien Term Facility Agent and each other "Secured Party" as defined in any applicable Second Lien Term Facility Document, including each counterparty to any Hedge Agreement or any provider of cash management services, the obligations of which are Second Lien Term Facility Obligations.

"**Second Lien Term Facility Security Agreements**" means (a) the Collateral Agreement of even date herewith, among the Company, Holdings, each other grantor party thereto and the Second Lien Term Facility Agent and (b) such other security agreements and pledge agreements entered into from time to time in respect of the Second Lien Term Facility, in each case, as amended, supplemented, restated, amended and restated, or otherwise modified from time to time in accordance with their respective terms and the terms hereof and of any Pari Passu Second Lien Intercreditor Agreement.

"**Second Lien Term Facility Security Documents**" means the Second Lien Term Facility Security Agreements, the Second Lien Term Facility Mortgages and any other documents now existing or entered into after the date hereof that create Liens on any assets or properties of any Grantor to secure any Second Lien Term Facility Obligations.

"**Secured Parties**" means, collectively, the First Lien Obligations Secured Parties and the Second Lien Obligations Secured Parties.

"**Senior Claims**" means, with respect to any Collateral securing the Second Lien Obligations, the First Lien Obligations.

"**Senior Representative**" means, with respect to any Collateral securing the Second Lien Obligations, the Applicable First Lien Agent.

"**Senior Secured Obligations**" means with respect to any Collateral securing the Second Lien Obligations, the First Lien Obligations.

"**Senior Secured Obligations Collateral**" means, with respect to any Obligations, the Common Collateral in respect of which such Obligations constitute Senior Claims.

"**Senior Secured Obligations Collateral Documents**" means each Senior Secured Obligations Document pursuant to which a Lien is now or hereafter granted securing any Senior Secured Obligations or under which rights or remedies with respect to such Liens are at any time governed.

"**Senior Secured Obligations Documents**" means, with respect to any Collateral securing the Second Lien Obligations the First Lien Obligations Documents.

"**Senior Secured Obligations Secured Parties**" means, with respect to any Collateral securing the Second Lien Obligations, the First Lien Obligations Secured Parties.

"**Series**" means, as applicable,

-15-

(a)      each of the LC Facility Obligations, the First Lien Term Facility Obligations and each series of Other First Lien Obligations, each of which shall constitute a separate Series of the Class of Senior Secured Obligations constituting First Lien Obligations except that, in the event any two or more series of such Other First Lien Obligations (i) are secured by identical Collateral held by a common Collateral Agent and (ii) the Company designates such other First Lien Obligations to constitute a single Series, such series of Other First Lien Obligations shall collectively constitute a single Series.  The First Lien Obligations Secured Parties with respect to each Series of First Lien Obligations shall constitute a separate Series of First Lien Obligations Secured Parties; and

(b)      each of the Second Lien Term Facility Obligations and each series of Other Second Lien Obligations, each of which shall constitute a separate Series of the Class of Senior Secured Obligations constituting Second Lien Obligations except that, in the event any two or more series of such Other Second Lien Obligations (i) are secured by identical Collateral held by a common Collateral Agent and (ii) the Company designates such Other Second Lien Obligations to constitute a single Series, such series of Other Second Lien Obligations shall collectively constitute a single Series.  The Second Lien Obligations Secured Parties with respect to each Series of Second Lien Obligations shall constitute a separate Series of Second Lien Obligations Secured Parties.

"***Standstill Period***" has the meaning set forth in Section 2.02 of this Agreement.

"***Subsidiary***" has the meaning set forth in the LC Facility, the First Lien Term Facility and/or the Second Lien Term Facility.

"***Trust A***" has the meaning set forth in the Decommissioning Agreement.

"***Trust A NPI***" has the meaning set forth in the Decommissioning Agreement.

"***Trust A-1 NPI***" has the meaning set forth in the Decommissioning Agreement.

## ARTICLE II

## PRIORITIES AND AGREEMENTS WITH RESPECT TO COLLATERAL

SECTION 2.01.      Priority of Claims

. (a) Anything contained herein or in any of the First Lien Obligations Documents or the Second Lien Obligations Documents to the contrary notwithstanding, if an Event of Default has occurred and is continuing, and any Collateral Agent is taking an Enforcement Action in respect of any Collateral (whether in an Insolvency or Liquidation Proceeding or otherwise), or any distribution is made in respect of any Collateral in any Insolvency or Liquidation Proceeding with respect to any Grantor, the Proceeds (subject, in the case of any such distribution, to Section 2.06 hereof) (all proceeds of any sale, collection or other liquidation of any Collateral and all proceeds of any such distribution being collectively referred to as "**Proceeds**") shall be applied as follows:

        (i)        FIRST, to the Applicable First Lien Agent for distribution in accordance with the Pari Pasu First Lien Intercreditor Agreement and any applicable First Lien Obligations Documents until payment in full of all First Lien Obligations;

        (ii)        SECOND, to the Applicable Second Lien Agent for distribution in accordance with the Second Lien Obligations Documents until payment in full of all Second Lien Obligations; and

        (iii)        THIRD, to the Company or as the Company or a court of competent jurisdiction may direct.

        (b)        Notwithstanding the foregoing paragraph (a), if, in connection with an Insolvency or Liquidation Proceeding, a court of competent jurisdiction in a final non-appealable order determines that the conveyance of the Trust A NPI or the Trust A-1 NPI by a Grantor in respect of any Lease (as defined in the Purchase Agreement) was not an absolute conveyance and instead is property of a Grantor (a "**Recharacterization**"), and any Secured Party receives net cash proceeds from the disposition of any such Lease that are attributable to such Recharacterization, then the Company shall direct such Secured Party to, and such Secured Party shall, pay over to Apache the amount of such proceeds; provided, however, if a Representative shall have distributed proceeds received by it to another Secured Party pursuant to any First Lien Obligations Documents or Second Lien Obligations Documents, as applicable, then such Secured Party, not such Representative, shall pay over to Apache the amount of such proceeds.

        (c)        It is acknowledged that (i) the aggregate amount of any Senior Secured Obligations may, subject to the limitations set forth in the applicable Senior Secured Obligations Documents, be Refinanced from time to time, all without affecting the priorities set forth in Section 2.01(a) or the provisions of this Agreement defining the relative rights of the First Lien Obligations Secured Parties vis-a-vis the Second Lien Obligations Secured Parties and (ii) a portion of the First Lien Obligations and/or the Second Lien Obligations consists or may consist of Indebtedness that is revolving in nature, and the amount thereof that may be outstanding at any time or from time to time may be increased or reduced and subsequently reborrowed. The priorities provided for herein shall not be altered or otherwise affected by any Refinancing of either the Junior Secured Obligations (or any part thereof) or the Senior Secured Obligations (or any part thereof), by the release of any Collateral or of any guarantees for any Senior Secured Obligations or any Junior Secured Obligations or by any action that any Representative or Secured Party may take or fail to take in respect of any Collateral.

(d)     Notwithstanding the date, time, method, manner or order of grant, attachment or perfection of any Liens securing the First Lien Obligations or of any Liens securing the Second Lien Obligations, in each case, granted on the Collateral, and notwithstanding any provision of the Uniform Commercial Code of any jurisdiction, or any other applicable law or the First Lien Term Facility Documents, the LC Facility Documents, the Second Lien Term Facility Documents, any Other First Lien Obligations Document or any Other Second Lien Obligations Document, or any defect or deficiencies in, or failure to perfect, any such Liens or any other circumstance whatsoever:

   (i)  (1) the Liens on the Common Collateral securing any First Lien Obligations  will rank senior to any Liens on the Common Collateral securing the Second Lien Obligations and (2) the Liens on the Common Collateral securing any Second Lien Obligations will rank junior to any Liens on the Common Collateral securing the First Lien Obligations;

   (ii)  the Applicable First Lien Agent, on behalf of itself and the First Lien Obligations Secured Parties, hereby agrees that the Liens securing the First Lien Obligations shall be of equal priority; *provided*, *however*, that the foregoing shall not be construed to alter the relative rights or priorities of the various Series of First Lien Obligations Secured Parties against each other Series of First Lien Obligations Secured Parties, which rights and priorities shall be governed by the Pari Passu First Lien Intercreditor Agreement or other First Lien Obligations Documents, as applicable; and

   (iii)  the Applicable Second Lien Agent, on behalf of itself and the Second Lien Obligations Secured Parties, hereby agree that the Liens securing the Second Lien Obligations shall be of equal priority; *provided*, *however*, that the foregoing shall not be construed to alter the relative rights or priorities of the various Series of Second Lien Obligations Secured Parties against each other Series of Second Lien Obligations, which rights and priorities shall be governed by any Pari Passu Second Lien Intercreditor Agreement or other Second Lien Obligations Documents, as applicable.

   **SECTION 2.02.**  <u>**Actions With Respect to Collateral; Prohibition on Contesting Liens**</u>.

   (a)     Each of the Applicable First Lien Agent and the Applicable Second Lien Agent, on behalf of itself, each relevant Representative and the relevant Secured Parties, acknowledges and agrees that, until the Discharge of all of the Senior Secured Obligations of a particular Class, and subject to the provisions herein with respect to rights of such Junior Secured Obligations Secured Party after the expiration of the Standstill Period (i) only the Applicable First Lien Agent shall act or refrain from acting with respect to the Senior Secured Obligations Collateral of such Class and then only on the instructions of the applicable Senior Representative (given in accordance with the Senior Secured Obligations Documents), (ii) no Collateral Agent shall follow any instructions with respect to such Senior Secured Obligations Collateral from any Junior Representative, any of the Junior Secured Obligations Secured Parties or the Applicable

-18-

Second Lien Agent, (iii) none of the Applicable Second Lien Agent, any Junior Representative or any Junior Secured Obligations Secured Party shall, nor shall any of them instruct any Collateral Agent to, commence any Enforcement Action, in respect of any Senior Secured Obligations Collateral, whether under any LC Facility Security Document, any First Lien Term Facility Security Document, any Second Lien Term Facility Security Document, any Other First Lien Obligations Security Documents or any Other Second Lien Obligations Security Documents, as applicable, applicable law or otherwise, it being agreed that (A) only the Applicable First Lien Agent, acting in accordance with the LC Facility Security Documents, the First Lien Term Facility Security Documents, the Other First Lien Obligations Security Documents, the Second Lien Term Facility Security Documents or the Other Second Lien Obligations Security Documents, as applicable, shall be entitled to take any Enforcement Actions, or to cause any Collateral Agent to do so and (B) notwithstanding the foregoing, the Applicable Second Lien Agent and each Junior Representative may take Permitted Remedies and (iv) the Applicable Second Lien Agent, on behalf of itself, each Junior Representative and the other Junior Secured Obligations Secured Parties, hereby agrees not to exercise any right of subrogation it or any of them may acquire as a result of any payment hereunder until the Discharge of the Senior Secured Obligations has occurred.  The Applicable First Lien Agent and each Senior Representative may deal with the Senior Secured Obligations Collateral as if they had a senior Lien on such Collateral; *provided* that, (A) with respect to the First Lien Obligations Secured Parties, the provisions of the Pari Passu First Lien Intercreditor Agreement and the applicable First Lien Obligations Documents shall also be complied with and (B) with respect to the Second Lien Obligations Secured Parties, the provisions of any Pari Passu Second Lien Intercreditor Agreement and the applicable Second Lien Obligations Documents shall also be complied with; *provided further*, that to the extent of any disposition of any Collateral in connection with such Enforcement Action, the Lien securing the Junior Secured Obligations shall remain on the proceeds of such Collateral disposed of in connection with such Enforcement Action subject to the relative priorities described in Section 2.01.  Furthermore, each of the Applicable First Lien Agent and the Applicable Second Lien Agent, on behalf of itself, each relevant Representative and the relevant Secured Parties, acknowledges and agrees that none of the Applicable Second Lien Agent, any Junior Representative or any other Junior Secured Obligations Secured Party will contest, protest or object to any Enforcement Action brought by any Senior Representative or any other Senior Secured Obligations Secured Party relating to the Senior Secured Obligations Collateral, in each case to the extent brought, made or taken in accordance with applicable law; *provided*, *however*, that the applicable Junior Secured Obligations Secured Party may exercise any of all such rights or remedies after the date which is one hundred eighty (180) days after each Senior Representative has received written notice that an Event of Default has occurred under the Second Lien Obligations Documents and the applicable Secured Parties have demanded the repayment in full of all applicable Obligations (the "***Standstill Period***"); *provided* that if at any time during the continuance of the Standstill Period in respect of any Series of Junior Secured Obligations such demand for repayment (or cash collateralization, as the case may be) has been withdrawn under the Junior Secured Obligations Documents relating to such Series of Junior Secured Obligations, no Junior Secured Obligations Secured Party in respect of such Series of Junior Secured Obligations may take any Enforcement Action in respect of the Common Collateral prior to the expiration of a new Standstill Period in respect of such Series of Junior Secured Obligations commenced by the receipt of written notice by the Senior Representative of the occurrence of a new Event of

-19-

Default under the Junior Secured Obligations Documents relating to such Series of Junior Secured Obligations; *provided*, further, that in no event shall any Junior Secured Obligations Secured Party take any Enforcement Action if, notwithstanding the expiration of the Standstill Period, any Senior Representative or any other Senior Secured Obligations Secured Party shall have commenced during the Standstill Period and be diligently pursuing in good faith an Enforcement Action with respect to all or a substantial portion of the Common Collateral; *provided*, *further*, that prior to taking any Enforcement Action or action to commence or petition for any Insolvency or Liquidation Proceeding after the end of the Standstill Period, the applicable Junior Representative shall give the Senior Representative written notice of the intention of the Junior Representative or any other Junior Secured Obligations Secured Party to exercise such rights and remedies, including specifying the rights and remedies that it intends to exercise, which notice may be sent prior to the end of the Standstill Period.

(b)      (i) Each Junior Secured Obligations Secured Party agrees that it will not (and hereby waives any right to) contest or support any other Person in contesting, in any proceeding (including any Insolvency or Liquidation Proceeding), the perfection, priority, validity or enforceability of a Lien held by or on behalf of any Senior Secured Obligations Secured Party in all or any part of the Collateral, or the provisions of this Agreement; *provided* that nothing in this Agreement shall be construed to prevent or impair the rights of any Junior Secured Obligations Secured Party or Junior Secured Obligations Secured Party to enforce this Agreement.

(i)      Each Senior Secured Obligations Secured Party agrees that it will not (and hereby waives any right to) contest or support any other Person in contesting, in any proceeding (including any Insolvency or Liquidation Proceeding), the perfection, priority, validity or enforceability of a Lien held by or on behalf of any of the Junior Secured Obligations Secured Parties in all or any part of the Collateral, or the provisions of this Agreement; *provided* that nothing in this Agreement shall be construed to prevent or impair the rights of any Senior Secured Obligations Secured Party or Senior Secured Obligations Secured Party to enforce this Agreement.

(c)      The parties hereto agree to execute, acknowledge and deliver a memorandum of Intercreditor Agreement, together with such other documents in furtherance hereof or thereof, in each case, in proper form for recording in connection with any Mortgages and in form and substance reasonably satisfactory to each of the Collateral Agents, in those jurisdictions where such recording is reasonably recommended or requested by local real estate counsel and/or the title insurance company, or as otherwise deemed reasonably necessary or proper by the parties hereto.

(d)      Nothing in this Agreement shall be construed to in any way limit or impair the right of (i) any Secured Party to bid for or purchase the Common Collateral at any private or judicial foreclosure upon such Common Collateral initiated by any of them or (ii) any Junior Secured Obligations Secured Party's right to receive any remaining proceeds of Common Collateral after the Discharge of the Senior Secured Obligations.

-20-

(e)     Nothing in this Agreement shall prohibit the receipt by any Junior Secured Obligations Secured Party of the required payments and other amounts owed in respect of the Junior Secured Obligations as set forth in the applicable Junior Secured Obligations Documents so long as such receipt is not the result of any Enforcement Action with respect to the Common Collateral in contravention of this Agreement.

**SECTION 2.03.     No Duties of Senior Representatives; Provision of Notice**.

(a)     Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties acknowledges and agrees that:  (i) none of the Applicable First Lien Agent, Senior Representatives or any other Senior Secured Obligations Secured Party shall have any duties or other obligations to the Applicable Second Lien Agent, the Junior Representatives or the Junior Secured Obligations Secured Parties with respect to any Common Collateral, other than (x) as gratuitous bailee for perfection with respect to Common Collateral in its possession and (y) to transfer to the Applicable Second Lien Agent any Proceeds of any such Collateral that constitutes Common Collateral remaining in its possession following any sale, transfer or other disposition of such Collateral (in each case, unless the Junior Secured Obligations have been Discharged prior to or concurrently with such sale, transfer, disposition, payment or satisfaction) and the Discharge of the Senior Secured Obligations secured thereby (or as otherwise required hereby), or if any Senior Representative or any other Senior Secured Obligations Secured Party shall be in possession of all or any part of such Collateral after such payment and satisfaction in full and termination, such Collateral or any part thereof remaining, in each case without any representation or warranty on the part of such Senior Representative or any other Senior Secured Obligations Secured Party; (ii) in furtherance of the foregoing, until the Discharge of the Senior Secured Obligations shall have occurred, the Applicable First Lien Agent shall be entitled, for the benefit of the Senior Secured Obligations Secured Parties, to sell, transfer or otherwise dispose of or deal with such Collateral as provided herein and in the applicable Senior Secured Obligations Documents, and without any consultation with, or the consent of, the Junior Secured Obligations Secured Parties; and (iii) without limiting the foregoing, none of the Applicable First Lien Agent, Senior Representatives or any other Senior Secured Obligations Secured Party shall have any duty or obligation first to marshal or realize upon any type of Collateral (or any other collateral securing the Senior Secured Obligations), in any manner that would maximize the return to the Junior Secured Obligations Secured Parties, notwithstanding that the order and timing of any such realization, sale, disposition or liquidation may affect the amount of proceeds actually received by the Junior Secured Obligations Secured Parties from such realization, sale, disposition or liquidation.  Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties waives any claim it or any other Junior Secured Obligations Secured Party may now or hereafter have against the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party (or their representatives) arising out of (i) any actions which the Applicable First Lien Agent, such Senior Representative or any such other Senior Secured Obligations Secured Party takes or omits to take in accordance with the relevant Senior Secured Obligations Documents or any other agreement related thereto and applicable law or to the collection of the Senior Secured Obligations or the valuation, use, protection or release of any security for the Senior Secured Obligations, (ii) any election by the Applicable First Lien Agent,

-21-

any Senior Representative or any other Senior Secured Obligations Secured Party, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b) of the Bankruptcy Code or (iii) subject to Section 2.06, any borrowing by, or grant of a security interest or administrative expense priority under Section 364 of the Bankruptcy Code by, Holdings, the Company or any of its Subsidiaries, as debtor-in-possession.

(b)     The First Lien Term Facility Agent shall, after obtaining actual knowledge that it no longer qualifies as the Applicable First Lien Agent, notify the Company and the other Representatives of the same.

(c)     The Second Lien Term Facility Agent shall, after obtaining actual knowledge that it no longer qualifies as the Applicable Second Lien Agent, notify the Company and the other Representatives of the same.

(d)     The parties hereto agree that, so long as the Discharge of First Lien Obligations has not occurred, none of the Grantors shall, or shall permit any of their respective subsidiaries to, grant or permit any Lien on any asset to secure any Second Lien Obligation unless it has granted, or substantially concurrently therewith grants, a Lien on such asset to secure the First Lien Obligations.  To the extent that the provisions of the immediately preceding sentence are not complied with for any reason, without limiting any other right or remedy available to any applicable Secured Party with respect to the Common Collateral, each First Lien Obligations Secured Party and each Second Lien Obligations Secured Party agrees, that any amounts received by or distributed to any such Person pursuant to or as a result of any Lien granted in contravention of this Section 2.03(d) shall be subject to Section 2.04.

**SECTION 2.04.     <u>No Interference; Payment Over; Reinstatement</u>**

.  (a) Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties agrees that (i) it will not take or cause to be taken any action, the purpose or effect of which is, or could be, to make any Lien securing any Junior Secured Obligations pari passu with, or to give such Junior Secured Obligations Secured Party any preference or priority relative to, any Lien securing any Senior Secured Obligations with respect to the Common Collateral securing the Senior Claims or any part thereof, (ii) it will not challenge or question in any proceeding the validity or enforceability of any Senior Secured Obligations Document or the validity, attachment, perfection or priority of any Lien under the Senior Secured Obligations Documents, or the validity or enforceability of the priorities, rights or duties established by or other provisions of this Agreement, (iii) it will not take or cause to be taken any action the purpose or intent of which is, or could be, to interfere, hinder or delay, in any manner, whether by judicial proceedings or otherwise, any Enforcement Action by the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party, (iv) it shall not have any right to (A) direct the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party to exercise any right, remedy or power with respect to any Common Collateral or (B) consent to the exercise by the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party of any right, remedy or power with respect to any Common Collateral, (v) it will not institute any suit or assert in any suit, bankruptcy, insolvency or other proceeding

-22-

any claim against the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party seeking damages from or other relief by way of specific performance, instructions or otherwise with respect to, and none of the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party shall be liable for, any action taken or omitted to be taken by the Applicable First Lien Agent, any Collateral Agent, any Senior Representative or other Senior Secured Obligations Secured Party with respect to any Enforcement Action taken with respect to the Common Collateral, (vi) it will not seek, and hereby waives any right, to have any Collateral or any part thereof marshaled upon any foreclosure or other disposition of such Collateral and (vii) it will not attempt, directly or indirectly, whether by judicial proceedings or otherwise, to challenge the enforceability of any provision of this Agreement; *provided* that nothing in this Agreement shall be construed to prevent or impair the rights of any Secured Party to enforce this Agreement in accordance with its terms.

(a)     Each of the Applicable First Lien Agent, Senior Representatives and other Senior Secured Obligations Secured Parties agrees that (i) it will not challenge or question in any proceeding the validity or enforceability of any Junior Secured Obligations Document or the validity, attachment, perfection or priority of any Lien under the Junior Secured Obligations Documents, or the validity or enforceability of the priorities, rights or duties established by or other provisions of this Agreement, (ii) it will not take or cause to be taken any action the purpose or intent of which is, or could be, to interfere, hinder or delay, in any manner, whether by judicial proceedings or otherwise, any Enforcement Action by the Applicable Second Lien Agent, any Junior Representative or any other Junior Secured Obligations Secured Party permitted under this Agreement, (iii) it shall not have any right to (A) direct the Applicable Second Lien Agent, any Junior Representative or any other Junior Secured Obligations Secured Party to exercise any right, remedy or power with respect to any Common Collateral or (B) consent to the exercise by the Applicable Second Lien Agent, any Junior Representative or any other Junior Secured Obligations Secured Party of any right, remedy or power with respect to any Common Collateral permitted under this Agreement, (iv) it will not institute any suit or assert in any suit, bankruptcy, insolvency or other proceeding any claim against the Applicable Second Lien Agent, any Junior Representative or any other Junior Secured Obligations Secured Party seeking damages from or other relief by way of specific performance, instructions or otherwise with respect to, and none of the Applicable Second Lien Agent, any Junior Representative or any other Junior Secured Obligations Secured Party shall be liable for, any action taken or omitted to be taken by the Applicable Second Lien Agent, any Collateral Agent, any Junior Representative or other Junior Secured Obligations Secured Party with respect to any Enforcement Action taken with respect to the Common Collateral permitted under this Agreement, (v) it will not seek, and hereby waives any right, to have any Collateral or any part thereof marshaled upon any foreclosure or other disposition of such Collateral and (vi) it will not attempt, directly or indirectly, whether by judicial proceedings or otherwise, to challenge the enforceability of any provision of this Agreement; provided that nothing in this Agreement shall be construed to prevent or impair the rights of any Secured Party to enforce this Agreement in accordance with its terms.

(b)     Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties hereby agrees that if it shall obtain possession

-23-

of any Senior Secured Obligations Collateral or shall realize any proceeds or payment in respect of any such Collateral, pursuant to any LC Facility Security Document, First Lien Term Facility Security Document, Second Lien Term Facility Security Document, Other First Lien Obligations Security Document or Other Second Lien Obligations Security Document, or by the exercise of any rights available to it or any of them under applicable law or in any Insolvency or Liquidating Proceeding or through any other Enforcement Action, at any time prior to the Discharge of the Senior Secured Obligations, then it shall hold such Collateral, proceeds or payment in trust for the Senior Secured Obligations Secured Parties and transfer such Collateral, proceeds or payment, as the case may be, to the Applicable First Lien Agent or other applicable Representative reasonably promptly after obtaining actual knowledge (or notice from the Applicable First Lien Agent or other applicable Representative) that it is in possession of such Collateral, proceeds or payment.   Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties agrees that, if at any time it receives notice or obtains actual knowledge that all or part of any payment with respect to any Senior Secured Obligations previously made shall be rescinded for any reason whatsoever, it shall promptly, to the extent permitted by applicable law, pay over to the Applicable First Lien Agent or other applicable Representative any payment received by it and then in its possession or under its control in respect of any Senior Secured Obligations Collateral and shall promptly turn over any Senior Secured Obligations Collateral then held by it over to the Applicable First Lien Agent or other applicable Representative, and the provisions set forth in this Agreement shall be reinstated as if such payment had not been made, until the Discharge of the Senior Secured Obligations has occurred.

        **SECTION 2.05.**    **Automatic Release of Junior Liens** (a) Each of the Applicable Second Lien Agent, each other Second Lien Obligations Agent and each other Second Lien Obligations Secured Party agrees that in the event of a sale, transfer or other disposition of any Common Collateral, including in connection with an Enforcement Action with respect to such Common Collateral that results in the release by the First Lien Obligations Secured Parties of the Lien held by the First Lien Obligations Secured Parties on such Common Collateral (regardless of whether or not an Event of Default has occurred and is continuing under the Second Lien Obligations Documents at the time of such sale, transfer or other disposition), the Lien held by each Second Lien Obligations Secured Party on such Common Collateral shall be automatically released; *provided* that the proceeds from any such disposition of Common Collateral are applied (x) in connection with any exercise of rights or remedies in respect of the Common Collateral, in accordance with Section 2.01(a) and (y) otherwise, in accordance with the First Lien Obligations Documents and the Second Lien Obligations Documents; *provided*, *further*, that (i) notwithstanding the foregoing, the Second Lien Obligations Secured Parties shall be entitled to any Proceeds of a sale, transfer or other disposition under this clause (a) that remain after Discharge of the First Lien Obligations, and the Liens on such remaining Proceeds securing the Second Lien Obligations shall not be automatically released pursuant to this Section 2.05(a) and (ii) any such sale, transfer or other disposition of Common Collateral, other than in connection with an Enforcement Action, must be permitted under the Second Lien Obligations Documents and be made to a Person that is not a Grantor in order for the Lien held by each Second Lien Obligations Secured Party on such Common Collateral to be released pursuant to this Section 2.05.

-24-

(b)     Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties agrees to execute and deliver (at the sole cost and expense of the Grantors) all such authorizations and other instruments as shall reasonably be requested by the Applicable First Lien Agent or any Senior Representative acting on behalf of the relevant Senior Secured Obligations Secured Parties to evidence and confirm any release of Junior Secured Obligations Collateral provided for in this Section 2.05.

SECTION 2.06.     Certain Agreements With Respect to Bankruptcy or Insolvency Proceedings

.  (a)  Until the Discharge of the First Lien Obligations, this Agreement shall continue in full force and effect notwithstanding the commencement of any proceeding under the Bankruptcy Code or any other Federal, state or foreign bankruptcy, insolvency, receivership or similar law by or against the Company or any of its Subsidiaries.  Without limiting the generality of the foregoing, the provisions of this Agreement are intended to be and shall be enforceable as a "subordination agreement" under Section 510(a) of the Bankruptcy Code.

(a)     If Holdings, the Company or any of its Subsidiaries shall become subject to a case (a "**Bankruptcy Case**") under the Bankruptcy Code:

(i)     if, prior to the Discharge of the First Lien Obligations, a Senior Representative desires to permit the use of cash collateral or to permit Holdings, the Company and/or any of its Subsidiaries to obtain financing under Section 363 or Section 364 of the Bankruptcy Code or under any other similar law ("**DIP Financing**") either secured by a Lien on, or constituting the proceeds of, Common Collateral, then the Junior Secured Obligations Secured Parties hereby agree (x) not to object to such use of cash collateral or DIP Financing so long as:

(A)     the aggregate principal amount of the DIP Financing plus the aggregate principal amount of debt for borrowed money constituting First Lien Obligations that remain outstanding after giving effect to any such DIP Financing, does not exceed 110% of the greater of (x) the aggregate principal amount of (1) debt for borrowed money constituting First Lien Obligations plus (2) debt for borrowed money constituting Second Lien Obligations, in each case outstanding immediately prior to such DIP Financing and (y) the aggregate principal amount of (1) debt for borrowed money constituting First Lien Obligations that could be incurred immediately prior to such DIP Financing pursuant to the First Lien Obligations Documents plus (2) debt for borrowed money constituting Second Lien Obligations that could be incurred immediately prior to such DIP Financing pursuant to the Second Lien Obligations Documents;

-25-

(B)     the Junior Secured Obligations Secured Parties retain the right to object to such cash collateral use or DIP Financing on the grounds that they are not on commercially reasonable terms;

(C)     the Junior Secured Obligations Secured Parties retain the right to object to any ancillary agreements or arrangements regarding the cash collateral use or the DIP Financing that are materially prejudicial to their interests (subject to the provisions of this Agreement);

(D)     the terms of the DIP Financing or cash collateral order do not compel the Grantors to seek confirmation of a specific plan of reorganization for which all or substantially all of the material terms are set forth in the DIP Financing documentation, the cash collateral order or a related document;

(E)     the DIP Financing documentation or cash collateral order does not expressly require the liquidation of the Collateral prior to a default under the DIP Financing documentation or cash collateral order; and

(F)     the Junior Secured Obligations Secured Parties retain the benefit of their Liens on the Common Collateral, including Proceeds thereof arising after the commencement of such Bankruptcy Case (to the extent provided for under applicable law), with the same priority vis-à-vis the Senior Secured Obligations (other than with respect to any DIP Financing Liens granted thereto) as existed prior to the commencement of such Bankruptcy Case; and

(y) to the extent the Liens on the Common Collateral securing the Senior Secured Obligations are subordinated or pari passu with such DIP Financing, to subordinate its Liens on the Common Collateral to the Liens granted to the lenders providing such DIP Financing (and all obligations relating thereto, including any "carve-out" from the Common Collateral granting administrative priority status or Lien priority to secure the payment of fees and expenses of the United States Trustee or professionals retained by any debtor or creditors' committee agreed to by the applicable Senior Representative or the Senior Secured Obligations Secured Parties) and to any adequate protection Liens granted to the Senior Secured Obligations Secured Parties on the same basis as the Liens on such Common Collateral securing the Senior Secured Obligations are subordinated to such DIP Financing (with the same priority vis a vis the Senior Secured Obligations Secured Parties as existed prior to the commencement of such Bankruptcy Case) or to confirm the priorities with respect to such Common Collateral as set forth herein, as applicable.

-26-

(b)     Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties agrees that prior to the Discharge of the Senior Secured Obligations it will not object to and will not otherwise contest:  (i) any motion for relief from the automatic stay or from any injunction against foreclosure or enforcement in respect of the Senior Secured Obligations made by the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party; (ii) any lawful exercise by any holder of Senior Claims of the right to credit bid Senior Claims in any sale in foreclosure of Collateral that is Senior Secured Obligations Collateral with respect to such Senior Claims; (iii) any other request for judicial relief made in any court by the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party relating to the lawful enforcement of any Lien on the Senior Secured Obligations Collateral; or (iv) any lawful sale or other disposition of any Senior Secured Obligations Collateral (or any portion thereof) under Section 363 of the Bankruptcy Code or any other applicable provision of the Bankruptcy Code if the Senior Secured Obligations Secured Parties of any Series or the relevant Senior Representative acting on their behalf shall have consented to such sale or disposition of such Senior Secured Obligations Collateral and the applicable order approving such sale or disposition provides that, to the extent the sale is to be free and clear of Liens, the Liens securing the Senior Secured Obligations and the Junior Secured Obligations will attach to the Proceeds of the sale on the same basis of priority as the Liens securing such Obligations on the assets being sold, in accordance with this Agreement; *provided* that nothing herein shall limit the Permitted Remedies of the Junior Secured Obligations Secured Parties.

(c)     Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties agree that it will not seek relief from the automatic stay or any other stay in any insolvency or liquidation proceeding with respect to Senior Secured Obligations Collateral without the prior consent of the Applicable First Lien Agent.

(d)     Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties hereby agrees that it will not object to and will not otherwise contest (or support any other Person contesting): (i) any request by the Applicable First Lien Agent or any Senior Secured Obligations Secured Party (or any Senior Representative acting on its behalf) for adequate protection with respect to the applicable Senior Secured Obligations Collateral or (ii) any objection by the Applicable First Lien Agent or any Senior Secured Obligations Secured Party (or any Senior Representative acting on its behalf) to any motion, relief, action or proceeding based on the Applicable First Lien Agent or any Senior Secured Obligations Secured Party (or any Senior Representative acting on its behalf) claiming a lack of adequate protection with respect to the applicable Senior Secured Obligations Collateral. Notwithstanding the foregoing, in any Insolvency or Liquidation Proceeding, (I)(x) if the Senior Secured Obligations Secured Parties (or any subset thereof) are granted adequate protection in the form of a Lien on additional or replacement collateral, then the Applicable Second Lien Agent may seek or request adequate protection in the form of a Lien on such additional or replacement collateral, so long as, with respect to the Senior Secured Obligations Collateral, such Lien is subordinated to the adequate protection Lien granted to the holders of the applicable Senior Secured Obligations, on the same basis as the other Liens securing Junior Secured Obligations on the Senior Secured Obligations Collateral are subordinated to the Liens on Senior

-27-

Secured Obligations Collateral securing the Senior Secured Obligations under this Agreement and (y) each of the Applicable Second Lien Agent, Junior Representatives and Junior Secured Obligations Secured Parties hereby agrees that in the event the Applicable Second Lien Agent or Junior Secured Obligations Secured Party seeks or requests adequate protection and such adequate protection is granted in the form of a Lien on additional or replacement collateral, then the Senior Secured Obligations Secured Parties (or the Applicable First Lien Agent or the relevant Senior Representative(s) acting on their behalf) shall also be granted a Lien on such additional or replacement collateral as adequate protection for the Senior Secured Obligations and that any adequate protection Lien on such additional or replacement collateral that constitutes Senior Secured Obligations Collateral securing the Junior Secured Obligations shall be subordinated to the adequate protection Liens on such collateral granted to the holders of the Senior Secured Obligations and any other Liens on Senior Secured Obligations Collateral granted to the holders of Senior Secured Obligations on the same basis as the Liens securing Junior Secured Obligations are so subordinated to the Liens securing the Senior Secured Obligations under this Agreement, and (II)(x) if the Senior Secured Obligations Secured Parties (or any subset thereof) are granted adequate protection in the form of a superpriority administrative claim, then the Applicable Second Lien Agent and the Junior Secured Obligations Secured Parties may seek or request adequate protection in the form of a superpriority administrative claim, so long as such claim is subordinated to the adequate protection superpriority claim granted to the holders of the applicable Senior Secured Obligations on the same basis as the other claims with respect to the Junior Secured Obligations are subordinated to the claims with respect to the Senior Secured Obligations under this Agreement and (y) each of the Applicable Second Lien Agent, Junior Representatives and Junior Secured Obligations Secured Parties hereby agrees that in the event the Applicable Second Lien Agent or Junior Secured Obligations Secured Party seeks or requests adequate protection and such adequate protection is granted in the form of a superpriority administrative claim, then the Senior Secured Obligations Secured Parties (or the Applicable First Lien Agent or the relevant Senior Representative(s) acting on their behalf) shall also be granted a superpriority administrative claim and that any claim granted with respect to the Junior Secured Obligations shall be subordinated to the superpriority administrative claim granted with respect to the Senior Secured Obligations as adequate protection on the same basis as the claims with respect to the Junior Secured Obligations are so subordinated to the claims with respect to the Senior Secured Obligations under this Agreement.

(e)     Each of the Applicable Second Lien Agent, Junior Representatives and other Junior Secured Obligations Secured Parties hereby agrees that (i) it will not oppose or seek to challenge any claim by the Applicable First Lien Agent, any Senior Representative or any other Senior Secured Obligations Secured Party for allowance of Senior Secured Obligations consisting of post-petition interest, fees or expenses to the extent of the value of the applicable Senior Secured Obligations Secured Parties' Lien on the Senior Secured Obligations Collateral, without regard to the existence of the Lien of the Junior Secured Obligations Secured Parties on the Senior Secured Obligations Collateral; and (ii) until the Discharge of Senior Secured Obligations has occurred, each Applicable Second Lien Agent, on behalf of itself, the Junior Representatives and the Junior Secured Obligations Secured Parties, will not assert or enforce any claim under Section 506(c) of the Bankruptcy Code senior to or on a parity with the Liens on

-28-

Senior Secured Obligations Collateral securing the Senior Secured Obligations for costs or expenses of preserving or disposing of any Collateral.

(f)     Each Representative, on behalf of itself and the applicable Secured Parties, acknowledges and intends that:  the grants of Liens pursuant to the Second Lien Obligations Security Documents and the First Lien Obligations Security Documents constitute separate and distinct grants of Liens, and because of, among other things, their differing rights in the Collateral, each of the First Lien Obligations and the Second Lien Obligations are fundamentally different from the other Classes of Obligations and must be separately classified in any Plan of Reorganization proposed or confirmed (or approved) in an Insolvency or Liquidation Proceeding.   To further effectuate the intent of the parties as provided in the immediately preceding sentence, if it is held that the claims of any of the First Lien Obligations Secured Parties and/or the Second Lien Obligations Secured Parties in respect of any Collateral constitute claims in the same class (rather than separate classes of secured claims), then the First Lien Obligations Secured Parties and the Second Lien Obligations Secured Parties hereby acknowledge and agree that all distributions from the Common Collateral shall be made as if there were separate classes of First Lien Obligations, and Second Lien Obligations against the Grantors (with the effect being that, to the extent that the aggregate value of the Common Collateral is sufficient (for this purpose ignoring all claims held by the other Secured Parties for whom such Collateral is Junior Secured Obligations Collateral), the Senior Secured Obligations Secured Parties, shall be entitled to receive, in addition to amounts distributed to them in respect of principal, pre-petition interest and other claims, all amounts owing in respect of post-petition interest, fees or expenses that are available from the Senior Secured Obligations Collateral for each of the Senior Secured Obligations Secured Parties (regardless of whether any such claims may or may not be allowed or allowable in whole or in part as against the Company or any of the Grantors in the applicable Insolvency or Liquidation Proceeding(s) pursuant to Section 506(b) of the Bankruptcy Code or otherwise), respectively, before any distribution is made in respect of the Junior Claims from, or with respect to, such Collateral, with the holder of such Junior Claims hereby acknowledging and agreeing to turn over to the respective other Secured Parties amounts otherwise received or receivable by them from, or with respect to, such Collateral to the extent necessary to effectuate the intent of this sentence, even if such turnover has the effect of reducing their aggregate recoveries).

(g)     If, in any Insolvency or Liquidation Proceeding, debt obligations of the reorganized debtor secured by Liens upon any property of the reorganized debtor are distributed pursuant to a plan of reorganization or similar dispositive restructuring plan, on account of any Obligations, then, to the extent the debt obligations distributed on account of such Obligations are secured by Liens upon the Common Collateral, the provisions of this Agreement will survive the distribution of such debt obligations pursuant to such plan and will apply with like effect to the debt obligations so distributed, to the Liens securing such debt obligations and the distribution of proceeds thereof.

### SECTION 2.07.     <u>Reinstatement</u>

.  In the event that any of the Obligations shall have been paid in full and such payment or any part thereof shall subsequently, for whatever reason (including an order or judgment for

disgorgement of a preference under the Bankruptcy Code, or any similar law, or the settlement of any claim in respect thereof), be required to be returned or repaid, the terms and conditions of this Article II shall be fully applicable thereto until all such Obligations shall again have been paid in full in cash.

### SECTION 2.08.  <u>Insurance</u>

.  As among the Representatives, only the Applicable First Lien Agent will have the right (subject to the rights of the Grantors under the First Lien Term Facility Documents, the LC Facility Documents, the Other First Lien Obligations Documents, the Second Lien Obligations Documents and the Other Second Lien Obligations Documents) to adjust or settle any insurance policy or claim covering or constituting the Common Collateral in the event of any loss thereunder and to approve any award granted in any condemnation or similar proceeding affecting the Common Collateral.

### SECTION 2.09.  <u>Refinancings</u>

.  The LC Facility Obligations, the First Lien Term Facility Obligations, the Second Lien Term Facility Obligations, any Series of Other First Lien Obligations, any Series of Other Second Lien Obligations and the agreements or indentures governing them may be Refinanced, in each case, without notice to, or the consent (except to the extent a consent is otherwise required to permit the refinancing transaction under any LC Facility Document, any First Lien Term Facility Document, any Second Lien Term Facility Document, any applicable Other First Lien Obligations Document or any applicable Other Second Lien Obligations Document) of any First Lien Term Facility Secured Party, any LC Facility Secured Party, any Second Lien Term Facility Secured Party, any Other First Lien Obligations Secured Party or any Other Second Lien Obligations Secured Party, all without affecting the priorities provided for herein or the other provisions hereof; *provided*, *however*, that the requirements set forth in Section 5.14 shall have been satisfied.  In connection with any Refinancing contemplated by this Section 2.09, this Agreement may be amended at the request and sole expense of the Company, and without the consent of any Representative, (a) to add parties (or any authorized agent or trustee therefor) providing any such Refinancing and (b) to confirm that such Refinancing Indebtedness in respect of any Senior Secured Obligations shall have the same rights and priorities in respect of any Common Collateral as the Indebtedness being Refinanced, all on the terms provided for herein immediately prior to such Refinancing.

### SECTION 2.10.  <u>Amendments to Credit Documents; Notices of Default</u>.

(a)      Each of the Applicable Second Lien Agent and Junior Representatives agrees that each applicable Junior Secured Obligations Document executed as of the date hereof shall include the following language (or language to similar effect approved by the Applicable First Lien Agent):

> "Notwithstanding anything herein to the contrary, (i) the liens and security interests granted to [applicable Junior Representative] for the benefit of the [applicable Junior Secured Obligations Secured Parties] pursuant to this Agreement and (ii) the exercise of any

-30-

right or remedy by [applicable Junior Representative] hereunder or the application of proceeds (including insurance proceeds and condemnation proceeds) of any Common Collateral, are subject to the provisions of the Intercreditor Agreement dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, replaced or otherwise modified from time to time, the "***Intercreditor Agreement***"), among Cantor Fitzgerald Securities, as First Lien Term Facility Agent and Applicable First Lien Agent, Cortland Capital Market Services LLC, as Second Lien Term Facility Agent and Applicable Second Lien Agent, Fieldwood Energy LLC, Fieldwood Energy Inc., and the Subsidiaries of Fieldwood Energy LLC party thereto.  In the event of any conflict between the terms of the Intercreditor Agreement and the terms of this Agreement, the terms of the Intercreditor Agreement shall govern."

(b)     In the event that the Applicable First Lien Agent, any Senior Representative or any Senior Secured Obligations Secured Party enters into any amendment, waiver or consent in respect of or replaces any Senior Secured Obligations Collateral Document for the purpose of adding to, or deleting from, or waiving or consenting to any departures from any provisions of, any Senior Secured Obligations Collateral Document or changing in any manner the rights of the Applicable First Lien Agent, the applicable Senior Representative or the applicable Senior Secured Obligations Secured Parties, the Company or any other Grantor thereunder (including the release of any Liens on any Senior Secured Obligations Collateral), then such amendment, waiver or consent shall apply automatically to any comparable provision of each Comparable Junior Obligations Collateral Document without the consent of the Applicable Second Lien Agent, any Junior Representative or any Junior Secured Obligations Secured Party and without any action by any of the Applicable Second Lien Agent, Junior Representative or Junior Secured Obligations Secured Party; *provided*, that such amendment, waiver or consent does not materially adversely affect the rights of the Applicable Second Lien Agent, any Junior Representative or any Junior Secured Obligations Secured Party in the Senior Secured Obligations Collateral unless the Senior Secured Obligations Secured Parties that have a security interest in the affected Collateral are also affected in a substantially similar manner (without regard to the fact that the Liens of such Senior Secured Obligations Collateral Document are senior to the Liens of the Comparable Junior Obligations Collateral Document). The relevant Applicable First Lien Agent or Senior Representative shall give written notice of such amendment, waiver or consent to the Applicable Second Lien Agent (which shall forward such notice upon receipt to each relevant Junior Representative); *provided* that the failure to give such notice shall not affect the effectiveness of such amendment, waiver or consent with respect to the provisions of any Comparable Junior Obligations Collateral Document as set forth in this Section 2.10(b).

(c)     Without the prior written consent of the Applicable First Lien Agent, no Second Lien Obligations Document may be amended, supplemented or otherwise modified or entered into to the extent such amendment, supplement or modification, or the terms of any new

-31-

Second Lien Obligations Document, would be prohibited by, or would require any Grantor to act or refrain from acting in a manner that would violate, any of the terms of this Agreement.

(d)     Without the prior written consent of the Applicable Second Lien Agent, no First Lien Obligations Document may be amended, supplemented or otherwise modified or entered into to the extent such amendment, supplement or modification, or the terms of any new First Lien Obligations Document, would be prohibited by, or would require any Grantor to act or refrain from acting in a manner that would violate, any of the terms of this Agreement.

(e)     In making the determinations required by Section 2.10(c) or (d), the Applicable First Lien Agent or the Applicable Second Lien Agent, as applicable, may rely on an officers' certificate of the Company.

(f)     Each Representative shall promptly notify each other Representative of any notice or declaration of the occurrence of any Default or Event of Default known to it under any First Lien Obligations Document or Second Lien Obligations Document, as the case may be.

**SECTION 2.11.** **Possessory Collateral Agent as Gratuitous Bailee for Perfection**

.  (a)  Each Representative, on behalf of itself and the relevant Secured Parties, hereby agrees that:  (i) each Possessory Collateral Agent shall hold the Possessory Collateral that is in its possession or control (or in the possession or control of its agents or bailees) as gratuitous bailee for the benefit of each Secured Party and any assignee solely for the purpose of perfecting the security interest granted in such Possessory Collateral pursuant to the First Lien Term Facility Security Documents, the LC Facility Security Documents, the Second Lien Term Facility Security Documents, the Other First Lien Obligations Security Documents and the Other Second Lien Obligations Security Documents, subject to the terms and conditions of this Section 2.11; (ii) to the extent any Possessory Collateral is possessed by or is under the control of a Collateral Agent (either directly or through its agents or bailees) other than the Applicable Possessory Collateral Agent, such Collateral Agent shall deliver such Possessory Collateral to (or shall cause such Possessory Collateral to be delivered to) the Applicable Possessory Collateral Agent and shall take all actions reasonably requested in writing by the Applicable Possessory Collateral Agent to cause the Applicable Possessory Collateral Agent to have possession or control of same; and (iii) pending such delivery to the Applicable Possessory Collateral Agent, each other Collateral Agent shall hold any Possessory Collateral as gratuitous bailee for the benefit of each other Secured Party and any assignee, solely for the purpose of perfecting the security interest granted in such Possessory Collateral, if any, pursuant to the applicable LC Facility Security Documents, First Lien Term Facility Security Documents, Second Lien Term Facility Security Documents, Other First Lien Obligations Security Documents or Other Second Lien Obligations Security Documents, in each case, subject to the terms and conditions of this Section 2.11.

(a)     The duties or responsibilities of the Possessory Collateral Agent and each other Collateral Agent under this Section 2.11 shall be limited solely to holding the Possessory Collateral as gratuitous bailee for the benefit of each Secured Party for purposes of perfecting the security interest held by the Secured Parties therein.

-32-

(b)     The Applicable First Lien Agent hereby agrees that, upon the Discharge of all First Lien Obligations, it shall deliver to the Applicable Second Lien Agent, to the extent that it is legally permitted to do so, the remaining Possessory Collateral (if any) held by it, together with any necessary endorsements (or otherwise allow the Applicable Second Lien Agent to obtain control of such Possessory Collateral) or as a court of competent jurisdiction may otherwise direct.  The Company shall take such further action as is required to effectuate the transfer contemplated hereby and shall indemnify the Possessory Collateral Agent for loss or damage suffered by the Possessory Collateral Agent as a result of such transfer except for loss or damage suffered by the Possessory Collateral Agent as a result of its own willful misconduct, gross negligence or bad faith, as determined by the final judgment of a court of competent jurisdiction.  None of the First Lien Obligations Secured Parties shall be obligated to follow instructions from the Applicable Second Lien Agent in contravention of this Agreement.

## ARTICLE III

## EXISTENCE AND AMOUNTS OF LIENS AND OBLIGATIONS

Whenever a Representative shall be required, in connection with the exercise of its rights or the performance of its obligations hereunder, to determine the existence or amount of any Senior Secured Obligations (or the existence of any commitment to extend credit that would constitute Senior Secured Obligations) or Junior Secured Obligations, or the Common Collateral subject to any such Lien, it may request that such information be furnished to it in writing by the other Representatives and shall be entitled to make such determination on the basis of the information so furnished; *provided*, *however*, that if a Representative shall fail or refuse reasonably promptly to provide the requested information, the requesting Representative shall be entitled to make any such determination by such method as it may, in the exercise of its good faith judgment, determine, including by reliance upon a certificate of the Company.  Each Representative may rely conclusively, and shall be fully protected in so relying, on any determination made by it in accordance with the provisions of the preceding sentence (or as otherwise directed by a court of competent jurisdiction) and shall have no liability to the Company or any of its Subsidiaries, any Secured Party or any other Person as a result of such determination.

## ARTICLE IV

## CONSENT OF GRANTORS

Each Grantor hereby consents to the provisions of this Agreement and the intercreditor arrangements provided for herein and agrees that the obligations of the Grantors under the First Lien Term Facility Security Documents, the LC Facility Security Documents, the Second Lien Term Facility Security Documents, the Other First Lien Obligations Security Documents and the Other Second Lien Obligations Security Documents will in no way be diminished or otherwise affected by such provisions or arrangements (except as expressly provided herein or therein).

-33-

# ARTICLE V

## MISCELLANEOUS

### SECTION 5.01.        Notices

.  All notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail, or sent by facsimile and sent to the e-mail address of the applicable recipient specified below (or the email address of a representative of the applicable recipient designated by such recipient from time to time to the parties hereto), as follows:

(a)        if to the Applicable First Lien Agent as of the date hereof, to it at:

Cantor Fitzgerald Securities
1801 N. Military Trail, Suite 202
Boca Raton, Florida  33431
Attention:  N. Horning (Fieldwood Administrative Agency)
Telephone:        (212) 829-4489
Telecopier:        (646) 219-1180
Facsimile:        (646) 219-1180
Email:              NHorning@cantor.com

Cantor Fitzgerald Securities
900 West Trade Street, Suite 725
Charlotte, North Carolina  28202
Attention:  B. Young (Fieldwood Administrative Agency)
Telephone:        (704) 374-0574
Telecopier:        (646) 390-1765
Email:              BYoung@cantor.com

With a copy (which shall not constitute notice) to:

Shipman & Goodwin LLP
One Constitution Plaza
Hartford, Connecticut  06103
Attention:        Nathan Plotkin
Email:              Nplotkin@goodwin.com

(b)        if to the Applicable Second Lien Agent as of the date hereof, to it at:

Cortland Capital Market Services LLC
225 W. Washington Street, 9th Floor
Chicago, Illinois 60606
Attention:        Legal Department and Valerie Opperman
Email:              legal@cortlandglobal.com;
                    Valerie.opperman@cortlandglobal.com; and

-34-

Cortland_successor_agent@cortlandglobal.com

(c)     if to the Company, to it at:

2000 W. Sam Houston Pkwy. S., Suite 1200
Houston, TX 77042
Attn:  Mike Dane (Chief Financial Officer)
Telephone:    (713) 969-1135
Facsimile:     (713) 969-1099
Email:       mdane@fwellc.com; and

(d)     if to any other Grantor, to it in care of the Company as provided in clause (c) above.

Any party hereto may change its address or facsimile number for notices and other communications hereunder by notice to the other parties hereto in accordance with this Section 5.01 (and for this purpose a notice to the Company shall be deemed to be a notice to each Grantor).  All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt (if a Business Day) and on the next Business Day thereafter (in all other cases) (as reflected by the courier's receipt).  Receipt by email shall not be deemed to be receipt.

### SECTION 5.02.    Waivers; Amendment

(a) No failure or delay on the part of any party hereto in exercising any right or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.  The rights and remedies of the parties hereto are cumulative and are not exclusive of any rights or remedies that they would otherwise have.  No waiver of any provision of this Agreement or consent to any departure by any party therefrom shall in any event be effective unless the same shall be permitted by clause (b) of this Section, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.  No notice or demand on any party hereto in any case shall entitle such party to any other or further notice or demand in similar or other circumstances.

(b)    Subject to the last sentence of Section 2.10(b) and Section 5.14 hereof, neither this Agreement nor any provision hereof may be terminated, waived, amended or modified except pursuant to an agreement or agreements in writing entered into by the Applicable First Lien Agent (as directed by the Representative of each Series of the First Lien Obligations (with the consent of the relevant First Lien Obligations Secured Parties of such Series to the extent required by, and in accordance with, the terms of the applicable First Lien Obligations Documents)), the Applicable Second Lien Agent (as directed by the Representative of each Series of Second Lien Obligations (with the consent of the relevant Second Lien Obligations Secured Parties of such Series to the extent required by, and in accordance with, the

-35-

terms of the applicable Second Lien Obligations Documents)) and, to the extent such amendment, waiver or modification adversely affects its rights and obligations, the Company.

### SECTION 5.03.    Parties in Interest

.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, as well as the other LC Facility Secured Parties, the other First Lien Term Facility Secured Parties, the other Second Lien Term Facility Secured Parties, the Other First Lien Obligations Secured Parties and the Other Second Lien Obligations Secured Parties, all of whom are intended to be bound by, and to be third party beneficiaries of, this Agreement.

### SECTION 5.04.    Survival of Agreement

.   All covenants, agreements, representations and warranties made by any party in this Agreement shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of this Agreement.

### SECTION 5.05.    Counterparts

.  This Agreement may be executed in counterparts, each of which shall constitute an original but all of which when taken together shall constitute a single contract.   Delivery of an executed signature page to this Agreement by electronic or facsimile transmission shall be as effective as delivery of a manually signed counterpart of this Agreement.

### SECTION 5.06.    Severability

.  Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.   The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

### SECTION 5.07.    Governing Law; Jurisdiction; Consent to Service of Process

.  (a) This Agreement shall be governed by, and construed in accordance with, the law of the State of New York.

(b)      Each party hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement, or for recognition or enforcement of any judgment, and each of

OMM_US:76199239.5

the parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement shall affect any right that any party hereto may otherwise have to bring any action or proceeding relating to this Agreement in the courts of any jurisdiction.

(c)     Each party hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in clause (b) of this Section 5.07.  Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(d)     Each party to this Agreement irrevocably consents to service of process in the manner provided for notices in Section 5.01.  Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

### SECTION 5.08.    <u>WAIVER OF JURY TRIAL</u>

. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT.   EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

### SECTION 5.09.    <u>Headings</u>

. Article, Section and Annex headings used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

### SECTION 5.10.    <u>Conflicts</u>

. In the event of any conflict or inconsistency between the provisions of this Agreement and the provisions of any of the First Lien Term Facility Documents, the LC Facility Documents, the Second Lien Term Facility Documents, any Other First Lien Obligations Documents and/or any Other Second Lien Obligations Documents, the provisions of this Agreement shall control.

### SECTION 5.11.    <u>Provisions Solely to Define Relative Rights</u>

. The provisions of this Agreement are and are intended solely for the purpose of defining the relative rights of the First Lien Obligations Secured Parties as a group, on the one hand, and the Second Lien Obligations Secured Parties as a group, on the other hand, in relation to one another.   None of Holdings, the Company or any other Grantor shall have any rights or obligations hereunder, except as expressly provided in this Agreement.   Nothing in this Agreement is intended to or shall impair the obligations of Holdings, the Company or any other Grantor, which are absolute and unconditional, to pay the Obligations as and when the same shall become due and payable in accordance with their terms.   Notwithstanding anything to the contrary herein or in any LC Facility Document, any First Lien Term Facility Document, any Second Lien Term Facility Document, any Other First Lien Obligations Document or any Other Second Lien Obligations Document, the Grantors shall not be required to act or refrain from acting pursuant to this Agreement, any LC Facility Document, any First Lien Term Facility Document, any Second Lien Term Facility Document, any Other First Lien Obligations Document or any Other Second Lien Obligations Document, as the case may be, with respect to any Common Collateral in any manner that would cause a default under any LC Facility Document, any First Lien Term Facility Document, any Second Lien Term Facility Document, any Other First Lien Obligations Document or any Other Second Lien Obligations Document.

### SECTION 5.12.    <u>Agent Capacities</u>

-38-

. Except as expressly set forth herein, none of the First Lien Term Facility Agent, the LC Facility Agent, the Second Lien Term Facility Agent, the Other First Lien Obligations Agents or the Other Second Lien Obligations Agents shall have any duties or obligations in respect of any of the Collateral, all of such duties and obligations, if any, being subject to and governed by the LC Facility Documents, the First Lien Term Facility Documents, the Second Lien Term Facility Documents, the applicable Other First Lien Obligations Documents or the applicable Other Second Lien Obligations Documents, as the case may be.  It is understood and agreed that (i) Cantor Fitzgerald Securities is entering into this Agreement in its capacity as administrative agent and collateral agent under the First Lien Term Loan Agreement referred to in clause (i) of the definition of First Lien Term Facility, and the provisions of Article VIII of the First Lien Term Loan Agreement referred to in clause (i) of the definition of the First Lien Term Facility applicable to Cantor Fitzgerald Securities as administrative agent and collateral agent thereunder shall also apply to Cantor Fitzgerald Securities as the First Lien Term Facility Agent hereunder and (ii) Cortland is entering into this Agreement in its capacity as administrative agent and collateral agent under the Second Lien Term Loan Agreement referred to in clause (i) the definition of Second Lien Term Facility, and the provisions of Article VIII of the Second Lien Term Loan Agreement referred to in clause (i) of the definition of the Second Lien Term Facility applicable to Cortland as administrative agent and collateral agent thereunder shall also apply to Cortland as the Second Lien Term Facility Agent hereunder.

### SECTION 5.13.    Supplements

. Upon the execution by any Subsidiary of the Company of a supplement hereto in form and substance satisfactory to the Applicable First Lien Agent and the Applicable Second Lien Agent, such Subsidiary shall be a party to this Agreement and shall be bound by the provisions hereof to the same extent as the Company and each Grantor are so bound.

### SECTION 5.14.    Requirements For Consent and Acknowledgment

. The Company may designate hereunder additional Indebtedness as Other First Lien Obligations, Other Second Lien Obligations or as a Refinancing of the First Lien Obligations of any Series if the incurrence of such obligations is permitted under each of the First Lien Obligations Documents, Second Lien Obligations Documents and this Agreement.  If so permitted, the Company shall (i) notify the Applicable First Lien Agent and the Applicable Second Lien Agent (and the applicable agent shall forward such notice to each Representative then existing) and (ii) cause any Applicable First Lien Agent and the Applicable Second Lien Agent in connection with such Refinancing and the (1) applicable Other First Lien Obligations Agent or (2) applicable Other Second Lien Obligations Agent, as applicable, to execute and deliver to each Representative then existing, a Consent and Acknowledgment substantially in the form of Exhibit A-1 or Exhibit A-2, as applicable, hereto.  It is understood and agreed that no consent of any of the applicable Secured Parties is required to effect any amendment or supplement hereto that is for the purpose of adding the holders (or their representatives) of Other First Lien Obligations, Other Second Lien Obligations or any Obligations in respect of any Refinancing of any First Lien Obligations or Second Lien Obligations, in each case, as expressly contemplated by (and only to the extent the incurrence thereof is permitted by) the terms of this Agreement.  Any such amendment or supplement may make such changes to the terms of this

-39-

Agreement to the extent that, in the good faith determination of the Applicable First Lien Agent and the Applicable Second Lien Agent, such changes are required to effectuate the foregoing.

### SECTION 5.15.    Intercreditor Agreements.

Notwithstanding anything to the contrary contained in this Agreement, each party hereto agrees that the First Lien Obligations Secured Parties (as among themselves) and the Second Lien Obligations Secured Parties (as among themselves) may each enter into intercreditor agreements (or similar arrangements) with the Applicable First Lien Agent or the Applicable Second Lien Agent, respectively, governing the rights, benefits and privileges as among the First Lien Obligations Secured Parties or the Second Lien Obligations Secured Parties, as the case may be, in respect of the Common Collateral, this Agreement, the LC Facility Documents, the First Lien Term Facility Documents, the Second Lien Term Facility Documents, any Other First Lien Obligations Document or any Other Second Lien Obligations Document, as the case may be, including as to the application of Proceeds of the Common Collateral, voting rights, control of the Common Collateral and waivers with respect to the Common Collateral, in each case so long as the terms thereof do not violate or conflict with the provisions of this Agreement or any First Lien Obligations Documents or Second Lien Obligations Documents, as the case may be, including without limitation the Pari Passu First Lien Intercreditor Agreement and any Pari Passu Second Lien Intercreditor Agreement.  In any event, if a respective intercreditor agreement (or similar arrangement) exists, the provisions thereof shall not be (or be construed to be) an amendment, modification or other change to this Agreement, any LC Facility Document, any First Lien Term Facility Document, any Second Lien Term Facility Document, any Other First Lien Obligations Document or any Other Second Lien Obligations Document, and the provisions of this Agreement, the LC Facility Documents, the First Lien Term Facility Documents, the Second Lien Term Facility Documents, any Other First Lien Obligations Documents and any Other Second Lien Obligations Documents shall remain in full force and effect in accordance with the terms hereof and thereof (as such provisions may be amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, including to give effect to any such intercreditor agreement (or similar arrangement)).

### SECTION 5.16.    Other Junior Intercreditor Agreements

.  In addition, in the event that Holdings, the Company or any Subsidiary incurs any obligations secured by a lien on any Common Collateral that is junior to the First Lien Obligations or the Second Lien Obligations, then the Applicable First Lien Agent and/or the Applicable Second Lien Agent, as the case may be, may enter into an intercreditor agreement with the agent or trustee for the lenders with respect to such secured obligation to reflect the relative lien priorities of such parties with respect to such Collateral and governing the relative rights, benefits and privileges as among such parties in respect of the Common Collateral, including as to application of Proceeds of the Common Collateral, voting rights, control of the Common Collateral and waivers with respect to the Common Collateral, in each case so long as such secured obligations are permitted under, and the terms of such intercreditor agreement do not violate or conflict with, the provisions of this Agreement, any First Lien Obligations Documents or any Second Lien Obligations Documents, as the case may be.  If any such intercreditor agreement (or similar arrangement) is entered into, the provisions thereof shall not be (or be construed to be) an

-40-

amendment, modification or other change to this Agreement, any First Lien Obligations Documents or any Second Lien Obligations Documents, and the provisions of this Agreement, the First Lien Obligations Documents and the Second Lien Obligations Documents shall remain in full force and effect in accordance with the terms hereof and thereof (as such provisions may be amended, modified or otherwise supplemented from time to time in accordance with the respective terms thereof, including to give effect to any intercreditor agreement (or similar arrangement)).

SECTION 5.17.    **Further Assurances**.

Each of the Applicable First Lien Agent, on behalf of itself and each First Lien Obligations Secured Party, and the Applicable Second Lien Agent, on behalf of itself and each Second Lien Obligations Secured Party agree that it and each of them shall take such further action and shall execute and deliver to the other Applicable First Lien Agent or the Applicable Second Lien Agent, as the case may be, and the Secured Parties of the other Class such additional documents and instruments (in recordable form, if requested) as the Applicable First Lien Agent or the Applicable Second Lien Agent, as the case may be, or such Secured Parties may reasonably request to effectuate the terms of, and the Lien priorities contemplated by, this Agreement, all at the sole expense of the Grantors.

**[Signature Pages Follow.]**

-41-

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

CANTOR FITZGERALD SECURITIES, as First Lien Term Facility Agent and Applicable First Lien Agent

By:

Name:  James Bond
Title:   Chief Operating Officer

CORTLAND CAPITAL MARKET SERVICES LLC, as Second Lien Term Facility Agent and Applicable Second Lien Agent

By:

Name:
Title:

[SIGNATURE PAGE TO INTERCREDITOR AGREEMENT]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

CANTOR FITZGERALD SECURITIES, as First Lien Term Facility Agent and Applicable First Lien Agent

By: _____

      Name:
      Title:

CORTLAND CAPITAL MARKET SERVICES LLC, as Second Lien Term Facility Agent and Applicable Second Lien Agent

By: _____

      Name:  Emily Ergang Pappas
      Title:   Associate Counsel

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

FIELDWOOD ENERGY INC.


By: _____
    Name: Michael T. Dane
    Title:  Senior Vice President and Chief
            Financial Officer


FIELDWOOD ENERGY LLC


By: _____
    Name: Michael T. Dane
    Title:  Senior Vice President and Chief
            Financial Officer


GOM SHELF LLC
FW GOM PIPELINE, INC.
BANDON OIL AND GAS GP, LLC
BANDON OIL AND GAS, LP
FIELDWOOD OFFSHORE LLC
DYNAMIC OFFSHORE RESOURCES NS,
    LLC
GALVESTON BAY PIPELINE LLC
GALVESTON BAY PROCESSING LLC
FIELDWOOD ENERGY OFFSHORE LLC
FIELDWOOD SD OFFSHORE LLC
FIELDWOOD ONSHORE LLC
FIELDWOOD ENERGY SP LLC,


By: _____
    Name: Michael T. Dane
    Title:  Vice President

**EXHIBIT A-1**

CONSENT AND ACKNOWLEDGMENT[1]
(Other First Lien Obligations)

This CONSENT AND ACKNOWLEDGMENT (this "***Consent***") dated as of [mm] [dd], [yyyy], is executed by [           ], as an Other First Lien Obligations Agent (the "New Agent"), and acknowledged by [           ], as the Applicable First Lien Agent, [           ], as the Applicable Second Lien Agent, Fieldwood Energy Inc., and Fieldwood Energy LLC (on behalf of itself and certain of its Subsidiaries).

This Consent is with respect to that certain Intercreditor Agreement, dated as of April 11, 2018 (as the same may be amended, restated, amended and restated,  supplemented or otherwise modified from time to time, the "***Intercreditor Agreement***"), by and among the parties (other than the New Agent) referred to above. Capitalized terms used but not defined herein shall have the meanings assigned thereto in the Intercreditor Agreement.

Reference is made to [describe new indebtedness] with respect to which [new agents] (the "***New Agent***") is acting as [trustee/collateral agent/authorized representative].

The New Agent hereby (a) agrees to be bound by the terms of the Intercreditor Agreement as an Other First Lien Obligations Agent as if it were an Other First Lien Obligations Agent as of the date of the Intercreditor Agreement and (b) represents that it is acting in the capacity of Other First Lien Obligations Agent solely for the Secured Parties under [        ].

This Consent shall be governed by, and construed in accordance with, the law of the State of New York.

[Signature Page Follows.]

---

[1] To be updated in the event of a Refinancing debt.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

[NEW AGENT]

By: _____
Title:
Name:

<u>Acknowledged and Confirmed by, for purposes of the Intercreditor Agreement:</u>

[          ], as Applicable First Lien Agent

By: _____
Title:
Name:

[          ], as Applicable Second Lien Agent

By: _____
Title:
Name:

FIELDWOOD ENERGY INC.
FIELDWOOD ENERGY LLC, on behalf of itself and its Subsidiaries party to the Intercreditor Agreement

By: _____
Title:
Name:

**EXHIBIT A-2**

CONSENT AND ACKNOWLEDGMENT[2]
(Other Second Lien Obligations)

This CONSENT AND ACKNOWLEDGMENT (this "***Consent***") dated as of [mm] [dd], [yyyy], is executed by [        ], as an Other Second Lien Obligations Agent (the "***New Agent***"), and acknowledged by [        ], as the Applicable First Lien Agent, [        ], as the Applicable Second Lien Agent, Fieldwood Energy Inc., and Fieldwood Energy LLC (on behalf of itself and certain of its Subsidiaries).

This Consent is with respect to that certain Intercreditor Agreement, dated as of April 11, 2018 (as the same may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "***Intercreditor Agreement***"), by and among the parties (other than the New Agent) referred to above. Capitalized terms used but not defined herein shall have the meanings assigned thereto in the Intercreditor Agreement.

Reference is made to [describe new indebtedness] with respect to which [new agents] (the "***New Agent***") is acting as [trustee/collateral agent/authorized representative].

The New Agent hereby (a) agrees to be bound by the terms of the Intercreditor Agreement as an Other Second Lien Obligations Agent as if it were an Other Second Lien Obligations Agent as of the date of the Intercreditor Agreement and (b) represents that it is acting in the capacity of Other Second Lien Obligations Agent solely for the Secured Parties under [        ].

This Consent shall be governed by, and construed in accordance with, the law of the State of New York.

[Signature Page Follows.]

---

[2] To be updated in the event of a Refinancing debt.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

[NEW AGENT]

By: _____
Title:
Name:

Acknowledged and Confirmed by, for purposes of the Intercreditor Agreement:

[        ], as Applicable Second Lien Agent

By: _____
Title:
Name:

[        ], as Applicable First Lien Agent

By: _____
Title:
Name:

FIELDWOOD ENERGY INC.
FIELDWOOD ENERGY LLC, on behalf of itself and its Subsidiaries party to the Intercreditor Agreement

By: _____
Title:
Name: