1            IN THE UNITED STATES BANKRUPTCY COURT

2           FOR THE SOUTHERN DISTRICT OF TEXAS

3                    HOUSTON DIVISION

4

5   IN RE:                      § CASE NO. 20-33948-H1-11
                                § (JOINTLY ADMINISTERED)
6   FIELDWOOD ENERGY LLC and    § HOUSTON, TEXAS
    DYNAMIC OFFSHORE RESOURCES   § WEDNESDAY,
7   RESOURCES NS, LLC,          § AUGUST 5, 2020
            Debtors.            § 8:00 A.M. TO 9:13 A.M.

8

9           TELEPHONIC FIRST DAY HEARINGS (CONT'D)

10          BEFORE THE HONORABLE MARVIN ISGUR
               UNITED STATES BANKRUPTCY JUDGE

11

12

13

14      APPEARANCES:            SEE NEXT PAGE

15      COURTROOM DEPUTY/ERO:   RECORDED THROUGH COURTSPEAK
                                NO LOG NOTES
16
          (Audio distortion and glitches noted.)
17

18

19

20           TRANSCRIPTION SERVICE BY

21       JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 Eldridge Road, #144
22            Sugar Land, TX 77478
                 281-277-5325
23          www.judicialtranscribers.com

24
     Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.

1                    TELEPHONIC APPEARANCES

2

3   For the Debtors:            WEIL GOTSHAL & MANGES, LLP
                                Clifford W. Carlson, Esq.
4                               Alfredo R. Perez, Esq.
                                700 Louisiana, Ste. 1700
5                               Houston, TX 77002
                                713-546-5040
6
                                Jason George, Esq.
7                               767 Fifth Avenue
                                New York, NY
8                               212-310-8021

9
    For The Hanover Insurance   LANGLEY, LLP
10  Company and Liberty Mutual  Brandon K. Bains, Esq.
    Insurance Company           1301 Solana Blvd.
11                              Bldg. 1, Suite 1545
                                Westlake, TX 76262
12                              214-722-7171

13
    For US Specialty            LOCKE LORD, LLP
14  Insurance Company           Philip Eisenberg, Esq.
                                600 Travis, Suite 2800
15                              Houston, TX 77002
                                713-226-1304
16

17  For RLI Insurance Company   KREBS FARLEY & DRY
                                Elliot Scharfenberg, Esq.
18                              400 Poydras St., Ste. 2500
                                New Orleans, LA 70130
19                              504-299-3583

20
    For Apache Corporation      HUNTON ANDREWS KURTH, LLP
21                              Robin Russell, Esq.
                                600 Travis St., Ste. 4200
22                              Houston, TX 77002
                                713-220-3625

23

24

25

1                TELEPHONIC APPEARANCES (CONT'D):

2

3   For the Ad Hoc Group of         DAVIS POLK & WARDWELL, LLP
    Secured Lenders                 Natasha Tsiouris, Esq.
4                                   450 Lexington Ave.
                                    New York, NY
5                                   212-450-4361

6   For Fieldwood Energy LLC        MICHAEL DANE, Sr. VP & CFO
                                    Fieldwood Energy, LLC
7                                   2000 W. Sam Houston Pkwy., S.
                                    Suite 1200
8                                   Houston, Texas 77042

9   (Please see also electronic appearances.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    HOUSTON, TEXAS; WEDNESDAY, AUGUST 5, 2020; 8:00 A.M.

2         THE COURT:  All right, good morning.  We're here

3  on the Fieldwood Energy case for a continuation of first day

4  hearings.  It's case 20-33948.  We've made electronic

5  appearances.

6         Mr. Carlson, I have enabled your phone.  It's my

7  understanding that you're taking the lead this morning, from

8  the way we left things yesterday.  If there's been a change

9  in that, just let me know.  But your line is the one that's

10 authorized right now.

11        MR. CARLSON:  Good morning, Your Honor.  Cliff

12 Carlson of Weil Gotshal & Manges on behalf of the Debtors.

13        THE COURT:  Good morning.

14        MR. CARLSON:  Your Honor, I think we would like to

15 just move forward with the agenda at kind of where we left

16 off when we said -- I think where we left off, we were about

17 to get on file a revised form of interim DIP order --

18        THE COURT:  I've been looking.

19        MR. CARLSON:  -- that we --

20        THE COURT:  I've been looking.

21        MR. CARLSON:  It should be -- it should be on file

22 within the next couple minutes.

23        THE COURT:  All right.

24        MR. CARLSON:  And we can circle back on that

25 motion after --

1        THE COURT:  Yeah, you might want to get a little

2   closer to your phone, Mr. Carlson.

3        MR. CARLSON:  Can you hear me okay now?

4        THE COURT:  That's better.  Thank you.

5        MR. CARLSON:  So, Your Honor, the next item on the

6   agenda is the insurance motion, and that is at Item No. 2 on

7   the agenda filed at Docket No. 4.  And in this motion we're

8   seeking really three types of relief.

9        Debtors want to continue their insurance programs

10  and pay all prepetition amounts in the form of insurance

11  premiums and claims, the workers compensation claims.  The

12  second form of relief is to continue their surety bond

13  program and pay any prepetition amounts that are owed.

14  And then third is to modify the automatic stay to allow

15  employees to proceed with workers compensation claims

16  against the company.

17        And as far as insurance programs, we have

18  approximately $8.4 million in obligations coming due in the

19  interim period, and about -- approximately 1.5 million of

20  that amount is prepetition (glitches in the audio) workers

21  compensation plan, and then the balance post-petition

22  amounts for (glitches in the audio).

23        We don't believe we owe any amounts for -- under

24  the surety bond program, but we do wish to continue to pay

25  amounts owed in connection with that program in the ordinary

1  course of business.  It's a critical part of the operation

2  that approximately $1.2 billion in surety bonds remains

3  outstanding and about 15 million of premiums last year, and

4  I would ask for authority to continue that program as well.

5        We have never received an objection from a

6  surety bond holder, Liberty Mutual and Hanover.  I

7  understand Mr. Perez has been in discussions with the

8  counsel and would turn it over to him to discuss those

9  discussions.

10        THE COURT:  All right, Mr. Perez, go ahead.

11        MR. PEREZ:  Good morning, Your Honor.  Alfredo

12  Perez on behalf of the Debtors.  Your Honor, we have been

13  in discussions with Mr. Bains, who represents Liberty and

14  Hanover.  He suggested some language.  We actually -- I

15  spoke with him before this call and sent him some language.

16        So if we could defer this to the end of the

17  hearing, I would appreciate that.  Maybe we could work

18  through that language.  Otherwise, we would request that the

19  Court approve the order, and then we will submit what I

20  would hope to be a agreed order at some point later today,

21  if we can't get it done during the course of the hearing.

22        THE COURT:  I think Mr. Bains and Mr. Eisenberg

23  both want to address this issue, so let me hear from Mr.

24  Bains and then we'll go to Mr. Eisenberg.

25        MR. BAINS:  Good morning, Your Honor.  Brandon

1   Bains on behalf of Hanover Insurance Company as well as
2   Liberty Mutual Insurance Company.  I had told Mr. Perez just
3   before this, we had spoke this morning.  He suggested that
4   revise language that I'm looking at now.  I feel pretty
5   confident that we can work through any issues.
6        I don't know that I can even characterize it as an
7   objection; I think it's more of just clarifying some of the
8   language to make sure the sureties have some protections in
9   terms of the day-to-day operations on this.  But I -- at
10  least for my clients -- am pretty confident that I can work
11  with counsel and get some revised language in front of the
12  Court hopefully in the very near future.
13       THE COURT:  All right, thank you.  And Mr.
14  Eisenberg, let me get your mike activated there.  Go ahead,
15  please.
16       MR. EISENBERG:  Thank you, Your Honor.  May I be
17  heard?
18       THE COURT:  Yes, sir.
19       MR. EISENBERG:  Thank you.  Yes, I would also like
20  to review the order so I can kind of get mine finalized as
21  well while the hearing is going on.
22       THE COURT:  That's fine.  Mr. Perez, can you have
23  someone forward a copy of what you sent to Mr. Bains, on
24  over to Mr. Eisenberg, and when we circle back he'll have an
25  opportunity to review it.

1          MR. PEREZ:  Yes, Your Honor.  I'll do that right

2    now.  And, Your Honor, I just want to -- once we have some

3    agreement on this language, I need to run through the paces

4    to make sure that I have all consents on our side, so it

5    might take a few more minutes even if we have agreement with

6    Mr. Bains and Mr. Eisenberg.

7          THE COURT:  Yeah.  no, the only issue is whether

8    there's going to be some disputes that I'll need to call on

9    today.  And if we need to do that later today, we can, or

10   circle back even this morning or just call on you all to

11   file an agreed order, you know, and then request a hearing

12   if you can't agree on it.  I'm not too nervous about what

13   you're doing.

14          I do have a question on the function of paragraph

15   1 of the order, which is why I've got the order focused up

16   on the screen on paragraph 1.  I think maybe unintentionally

17   -- and that's what I'm trying to figure out -- this would

18   authorize the Debtors to pay reimbursement and indemnity

19   obligations to the sureties prior to the time that the

20   surety bonds -- prior to the time of the final order.

21          So let's assume that a surety bond gets called on,

22   or some other security gets called on and there's a million

23   dollar draw.  This would, I think, authorize you to

24   reimburse that million dollars.

25          I don't think that's what you're intending to do.

1  I think you're intending to pay premiums, I think you're

2  intending to be sure things are safe.  But I do think it

3  would give that kind of authority and I'm a little nervous

4  about doing that on day one.  And I need to understand

5  better whether that was something you were seeking authority

6  to do or just something that I'm thinking of and you all

7  hadn't thought of in the language.

8           Mr. Carlson or Mr. Perez, whoever wants to deal

9  with that?

10          MR. PEREZ:  This is Alfredo Perez.  That was not

11  our intention.  We're not seeking to be paying those types

12  of payments.  Really, we're seeking just authority to

13  capture what you said, paying surety premiums.

14          I know the Debtors would be comfortable with

15  making that clarification, and with that form of order we

16  could work on that language too.

17          THE COURT:  All right.  And I also don't know that

18  it's -- this is a pretty unusual case, given what you're

19  doing with Ms. Russell's client.  And you know how nervous I

20  am normally about these things, but given where the case is

21  going, I don't want you all to feel uncomfortable.  If in a

22  week you need to pay a reimbursement, come back on an

23  emergency basis and we'll deal with it.

24          I just don't think I should authorize it generally

25  on first days, you know, without knowing what we're biting

1  off here.  But it may be appropriate to pay some sort of a

2  reimbursement or an indemnity obligation under a bond or

3  other credit, something like that.

4          Just if you can include language that says you

5  wont' do that without a further court order or something of

6  that nature towards -- it's not just prohibited but you can

7  come back.  Does that work for you all?

8          MR. PEREZ:  Yes, Your Honor.

9          THE COURT:  Let me ask Mr. Bains and Mr. Eisenberg

10  if you've got any problem with the concerns that I'm

11  raising?

12          MR. BAINS:  This is Brandon Bains.  I don't, Your

13  Honor.

14          THE COURT:  Thank you.

15          MR. EISENBERG:  This is Philip Eisenberg on be

16  half of US Specialty.  No, Your Honor.  I understood it.

17          THE COURT:  And from 817-319-9277, we have someone

18  else that wanted to make a comment on this particular

19  matter?

20          MR. SCHARFENBERG:  Good morning, Your Honor.  This

21  is Elliot Scharfenberg.  I represent RLI Insurance Company.

22  We're another surety.  If you wouldn't mind, can we get the

23  revised order language before it is finalized?  I can shoot

24  you my email address.

25          THE COURT:  Mr. Perez, is that okay with you?  Can

1    you send it up to Mr. Scharfenberg's email?

2         MR. PEREZ:  Yes, sir.  If he can just send me an

3    email, alfredo.perez@weil.com, I can forward it to him right

4    now.

5         MR. SCHARFENBERG:  Thank you, Your Honor.

6         THE COURT:  Thank you.

7         MR. SCHARFENBERG:  Mr. Perez, thank you.

8         THE COURT:  Go ahead.

9         MR. BAINS:  I just want to say, Mr. Perez, This is

10   Brandon Bains again.  I already sent an email over to Mr.

11   Eisenberg and I can add Mr. Scharfenberg on there as well

12   and get all the surety folks on one email for the revised

13   language.  It's easier, as you may have some other things on

14   your plate this morning.

15        MR. PEREZ:  Thank you.  I appreciate that.  I need

16   all the help I can get.

17        MR. BAINS:  I'll get that taken care of right now.

18        THE COURT:  All right.  Ms. Russell, I want to be

19   sure that the addition that I'm talking about doesn't

20   interfere with Apache's expectations in its deal where I

21   leave open the question but just don't authorize it

22   generally on first days.

23        I know you're on -- I see you and I know you're on

24   the phone.  I'm going to find your name and hear from you

25   about that, if that's okay.

1        Ms. Russell, does that cause any heartburn to

2   Apache?

3        MS. RUSSELL:  Your Honor, I don't believe it does.

4        THE COURT:  All right, thank you.

5        Okay, why don't we do this.  You all can circle

6   back to this during the hearing if you choose.  Otherwise,

7   I'm going to approve the surety and the insurance bond order

8   once the one change that I'm suggesting gets incorporated

9   and Mr. Bains, Mr. Eisenberg, and Mr. Scharfenberg sign off

10  on it.

11       You can do that if you want by filing it under a

12  C&O that says that you've conferred with them and they've

13  approved, you can have their signatures at the bottom.  I

14  just want something affirmative that they have in fact

15  signed off on it.

16       If they don't sign off on it or you all can't

17  reach an agreement, you're free to authorize a further

18  hearing -- or excuse me, to request a further hearing and

19  I'll get you one quick.  Everybody okay with that?

20       MR. PEREZ:  Yes, Your Honor.

21       THE COURT:  Thank you.  Mr. Carlson, where do you

22  want to go next?

23       MR. CARLSON:  Your Honor, next on the agenda is

24  our vendor motion filed at Docket No. 7.

25       THE COURT:  I'll get that up.  All right, go

1   ahead, please.

2           MR. CARLSON:  So, Your Honor, the Debtors operate

3   over 300 platforms in the Gulf of Mexico offshore and own

4   an interest in 364 different leases, so there are many

5   creditors that Debtors are obligated to pay in the ordinary

6   course, and there's sort of four buckets of claimants here.

7           There are the Interest Owner Payments that those

8   are holders of royalty interests, things of that nature.

9   The second category are joint interest billings where the

10  company has non-operator parents paying their share to

11  operators of platforms of various expenses.

12          And the third category is more of a catch-all

13  for all the operating expenses.  These are payments to

14  service providers on the offshore, many of which have least

15  rights against the Debtors' property.

16          And then the fourth category is the section titled

17  503(b)(9) claims.  These are just goods that were received

18  by the Debtors within 20 days of the Petition date.  And so

19  if you look at page 3 of the motion that provides a

20  breakdown of what's coming due, it's about 9.6 million in

21  joint interest billings, 59.4 million in E&P operating

22  expenses which is for various service providers, and then

23  4.6 million in 503(b)(9) claims.

24          You'll see in our proposed interim order that it's

25  subject to each of those caps.  In addition, we have the

1   requirement in paragraph 3 that each of the E&P claimants

2   are required to sign a customary trade agreement that's on

3   terms that are as favorable or more favorable than under the

4   terms they were providing services prepetition.

5           So, Your Honor, unless Your Honor has questions,

6   we would request that you enter the order in the amount and

7   form attached to the motion.

8           THE COURT:  Can you just take me through and

9   define for me what an E&P claimant is under this?  Is that

10  everyone on all categories or is it just certain parties in

11  certain categories?

12          MR. CARLSON:  These are third parties that provide

13  gathering, transportation and processing services.  This

14  also includes supplemental workforce obligations, lease

15  operating expenses, other exploration and production costs,

16  capital expenditures and related costs.

17          THE COURT:  Does it include the 503(b)(9)

18  claimants?

19          MR. CARLSON:  It does not.  So 4.6 million of the

20  503(b)(9) claims is exclusive of the estimated 69.4 million.

21  We are --

22          THE COURT:  Yeah, I'm looking at paragraph 3 and I

23  got it that the joint interest shouldn't be included in

24  this, but it seems to me that if you're going to pay

25  somebody on a 503(b)(9) claim, they should enter into trade

1  agreements as well.  Is there anything wrong with that as to

2  the 503(b)(9) payments?

3          MR. CARLSON:  No, Your Honor.  I think that those

4  are -- we're fine with 503(b)(9) claimants signing the

5  customary agreements while -- we'll just defer to Mr. Dane,

6  but I think that we'll get it.

7          THE COURT:  Mr. Dane, let's be sure that you're

8  okay with that.  In general, it will tie your hands from

9  making a 503(b)(9) payment unless the 503(b)(9) vendor

10  agrees to continue to provide you goods and services.  It

11  gives you a hell of a negotiating authority because you

12  can't do it.

13          So the question is whether it's going to hurt you

14  by tying your hands and making you do it.  In general, my

15  experience has been that folks in your position like to be

16  able to go to their vendor and say, "I really want to pay

17  you but the court won't let me unless you do a trade

18  agreement."  So it's up to you.  What do you think?

19          MR. DANE:  I think I agree with Your Honor, with

20  your position.

21          THE COURT:  Thank you.  Will those changes work

22  that I did, to cover that?

23          MR. CARLSON:  Yes, it works the way it is now.

24          THE COURT:  All right.  Is there any party that

25  objects to authorizing -- essentially allowing the Debtors

1   to continue to make payments to these folks in the ordinary

2   course?

3           I think it's justified by the original

4   declarations.  The payment of the joint interest billings

5   are obvious in terms of why that needs to occur in order

6   to keep the projects going.  The payments of operating

7   expenses, the Debtors determined they need to do that.

8   These become critical vendors because of the nature of

9   the trade agreements.

10          I think it is appropriate to do it, and obviously

11   it's to the Debtors' interest to avoid these liens.  When

12   you counterbalance that, I think within the Code, there's

13   some lien -- potential lienholders on the 503(b)(9) rights

14   or people that have the right to assert an admin claim under

15   503(b)(9) should in fact agree to trade terms.

16          So if any party objects, please press five-star.

17          Mr. Carlson, when was your final -- is that August

18   24th at 1:30?

19          MR. CARLSON:  That's right, Your Honor.

20          THE COURT:  All right.  The vendor order has been

21   signed.  Give me just a moment to send it over to Mr. Laws

22   so that he can get it docketed.

23          And it's been sent to docketing.  All right?  What

24   do you want to do now?

25          MR. CARLSON:  Thank you.  Your Honor, the revised

1   interim DIP order has been filed at Docket No. 54.

2           THE COURT:  All right, I've got that -- the

3   redline of that up on the screen and I'm just going to take

4   a look through it.  I assume the parties are going to look

5   at it at the same time I'm looking, so if somebody needs me

6   to slow down, please press five star.

7           I'm only going to -- we've looked at everything

8   other than the redlining, so I'm only going to try and get

9   down to that.

10          MR. CARLSON:  And at page 25 is the first change.

11          THE COURT:  All right.  (Reviewing order.)  Does

12  anybody need more time to review that?  If so, please press

13  five star.

14          MR. EISENBERG:  Your Honor?

15          THE COURT:  Yes, sir.

16          MR. EISENBERG:  This is Philip Eisenberg.  I don't

17  need more time to review it.  I have a comment to it.

18          THE COURT:  Let me do -- let me do one thing.  Let

19  me pull up -- so that I can have now the actual one as well.

20  Give me just a second.

21          Okay, so I've got the clean and the redlined both

22  up on the screen.  Why don't you give me your comment?

23          MR. EISENBERG:  Yes, Your Honor.  Last evening

24  when I spoke with Mr. Carlson prior to seeing this redline,

25  which we saw this morning, I had indicated to him that when

1   we had raised this with Your Honor, that we had raised

2   this in connection with various other rights, including

3   recoupment, setoff, contractual reasons under operating

4   agreements and other real rights that other parties might

5   that are permitting encumbrances ahead of liens that the

6   banks had under their own credit agreements.

7          And then Your Honor mentioned -- and lienholders.

8   And so in speaking with Mr. Carlson yesterday, I indicated

9   that we would want that -- the inclusion of that in here as

10  well.  And so that, I believe -- otherwise that we're trying

11  to keep from being impaired with this interim order, Your

12  Honor.

13         THE COURT:  I'm not sure on your team who is

14  addressing that, Mr. Perez.

15         MR. CARLSON:  Your Honor, I will, Your Honor.  So

16  what we have here is intended to capture-- it's intended to

17  say this interim order is not affecting the rights or is not

18  amending the rights of any parties in those liens.  The way

19  I'm reading it is the rights of any party asserting such

20  statutory liens, if any, are not amended or modified under

21  this interim order with respect to such statutory lien.

22         THE COURT:  So I think his question is what if he

23  has, as an example, a contractual right to certain, let's

24  say, recoupment or setoffs under a contract, and that

25  contract is assigned over to the DIP lender, are you cutting

1  off his setoff or recoupment rights under the contract, by

2  way of example?

3           MR. CARLSON:  No, I don't think we are.  I think

4  this is -- this language is an embodiment to -- is intended

5  to capture and say that this interim order really is not

6  affecting any of those rights.  That's how I read it and I

7  don't think the intent was to cut off any of those rights,

8  but I --

9           THE COURT:  I think I can just -- if that's the

10  intent, I think I can fix that, so let me try and get that

11  done.

12           MR. CARLSON:  Thank you, Your Honor.

13           THE COURT:  (Amending and displaying order.)  Does

14  that solve the issue?

15           MR. EISENBERG:  Again, Your Honor, do you mind

16  putting it on the full screen?  My eyes just can't see this

17  on the split screen.

18           THE COURT:  Sure.  (Displaying order.)

19           MR. EISENBERG:  Okay.  There was language that was

20  there and I guess Your Honor took it out, so -- okay, there

21  it is.  All right.  Okay, so on page 25 after (A), you've

22  got statutory rights but you don't have contractual rights.

23  So --

24           THE COURT:  Yeah, no, the contractual rights I've

25  got under (C) and (D).

1          MR. EISENBERG:  Oh.  Yeah, but -- okay, you've got

2   -- but, you've only got contractual rights to setoff.  There

3   should be contractual liens that were granted.

4          THE COURT:  Well, no, but if there's a contractual

5   lien that was granted that wasn't perfected, you don't have

6   one.

7          MR. EISENBERG:  No, no, that's true.

8          THE COURT:  But you do have a -- you may have a

9   setoff right under common law that we're not going to cut

10  off if it existed.  And a recoupment right may not have

11  existed on the date of the petition.  It could arise later,

12  and that's being preserved.

13         MR. EISENBERG:  Yes, Your Honor, and I --

14         THE COURT:  But I think you have all the rights

15  you should have.

16         MR. EISENBERG:  No, no, I totally appreciate that,

17  and I appreciate the attention Your Honor's making with the

18  recoupment.  But what I'm saying is you don't -- you have

19  contractual rights -- (C) is contractual rights to sell.

20         And in the preface, valid, non-avoidable statutory

21  liens that are contractual rights, which I would assume

22  includes contractual liens.  But then it goes on in the way

23  the sentence is formulated, it goes back to (A).  It says

24  statutory rights but it doesn't have contractual rights that

25  were perfected, only contractual liens that were perfected.

1          So after statutory rights, after the letter (A),

2     I would have --

3          THE COURT:  Got it.

4          MR. EISENBERG:  -- an alter --

5          THE COURT:  I got it.  I got it.

6          MR. PEREZ:  Your Honor, I think that's covered in

7     the part before this, above.  I think if he has -- if he has

8     a valid consensual lien that was -- that is senior to the --

9     is senior to the (a) being other liens, that he keeps that,

10    and that's what the first part of this paragraph does.  It's

11    not -- we're dealing with non-consensual liens here.

12         THE COURT:  Yeah.  So except for -- let me just --

13    I think I can get this.  Give me a shot.  (Amending order.)

14    So if you're junior to the whole stack and you file a lien,

15    you don't jump ahead of the whole stack.  You had to have

16    filed the first lien.

17         MR. EISENBERG:  Well, Your Honor, I will submit to

18    you that under the formulation credit agreement that it only

19    has to be a permitted lien that the first lienholders and

20    their credit agreements and liens that would be a permitted

21    encumbrance of a prime lien, and so --

22         THE COURT:  Oh, I agree with that, but that is

23    covered by the prior language that Mr. Perez points out.  If

24    it's a permitted lien, this doesn't prime it.

25         MR. EISENBERG:  All right, I appreciate that.  If

1  that's what the intention is, then this language will be

2  satisfactory and I appreciate everybody's consideration.

3  And in particular Mr. Carlson for all the communication.

4          THE COURT:  And putting up with you probably.

5          MR. EISENBERG:  Yes.  No doubt about that, Your

6  Honor.  He'll talk about that when I'm long gone.

7          THE COURT:  Mr. Perez or Mr. Carlson, does this

8  language work for your client?

9          MR. CARLSON:  I think it works for the Debtors,

10  Your Honor.  I would want to make sure it works for our DIP

11  lenders, of course, and I'd want to confirm with Ms.

12  Tsiouris first.

13          THE COURT:  Ms. Tsiouris, let me get your line

14  activated here.  I think I mis-clicked.  There we go.

15  Ms. Tsiouris, good morning.

16          MS. TSIOURIS:  Good morning, Your Honor.  For the

17  record, Natasha Tsiouris, Davis Polk & Wardwell.  I think at

18  the bottom line of this is that I believe (C) and (D) should

19  be tied to the statutory lienholders who fit into categories

20  (A) and (B), so the suggestion I would make is instead of

21  making a separate entry, just do a comma that includes the

22  statutory rights and automatically sets out the Petition

23  Date or --

24          THE COURT:  Why don't you dictate more

25  specifically to me what you want because I'm not following

1   exactly what the change is, and I'm happy to be a secretary

2   here for a bit.

3          MS. TSIOURIS:  Thank you, Your Honor.  So instead

4   of separate categories for (C) and (D), I think it should be

5   tied to those lien -- I can't see all the way up, but it

6   should be those lienholders that have statutory rights that

7   were perfected as of the Petition Date or the statutory

8   rights were perfected as of the Petition Date.

9          THE COURT:  Well, those aren't going to arise

10  under statute.  I think I'm missing how the language would

11  work, and maybe you can literally dictate to me what you

12  think would work, so that I can take a shot at it.

13         MS. TSIOURIS:  So provided, further, that, for the

14  avoidance of doubt, nothing herein provides that the DIP

15  liens are deemed to prime any valid, non-avoidable statutory

16  liens (indiscernible) that (A) statutory rights were

17  perfected as of the Petition Date or (B) statutory rights

18  were in existence immediately prior to the Petition date and

19  are perfected subsequent to the Petition Date as permitted

20  by section 546(b) of the Bankruptcy Code and the rights of

21  any party asserting such statutory lien (if any) are not

22  amended or modified under this Interim Order with respect to

23  such statutory lien, including any contractual right to set

24  off such right as of the Petition Date or --

25         THE COURT:  Hold on.  Let me just read it.  I

1  don't think that works because you're now including

2  something that isn't defined there because the setoff

3  rights, for example, aren't perfected subsequent to the

4  Petition Date as permitted by section 546(b).  They simply

5  exist free of the statute.  And that's why I thought we

6  needed a separate listing.

7           MS. TSIOURIS:  And, again, under contractual

8  rights to set off, contractual rights are defined.

9           THE COURT:  I don't think they are defined in the

10  statute.  I think that's the problem that Mr. Eisenberg is

11  raising.  So he has a -- let's say that he has in his surety

12  agreement a contractual right to set off a deposit that he's

13  holding against an indemnity obligation that somebody has to

14  his client -- and I don't know if he has that or not --

15  we're preserving that right for him.  Not because of the

16  statute, but because of the contract.

17           MS. TSIOURIS:  Yeah, but -- and then is it defined

18  in the order, because it's not necessary for those who have

19  a writing.  It wouldn't be a separate writing.  They have,

20  you know, a contractual right to set off.  They would be

21  (indiscernible).

22           THE COURT:  Got it.  Hold on.  Contract rights of

23  any non-RSA party.  I got your point.  And I think that

24  probably fixes it, right?

25           MS. TSIOURIS:  I think that does.

1          MR. EISENBERG:  And then, Your Honor, but I

2  thought that Contractual Rights is capitalized in (B).

3  And I think (indiscernible) is lower case.

4          THE COURT:  Got it.  But I also think she has a

5  legitimate concern that this shouldn't take away her right

6  to prime people that she's specifically got a deal with on

7  priming them.  So it's for the folks who aren't here.  Or

8  who are here and that's really trying to catch up.

9          MR. CARLSON:  And, Your Honor, elsewhere in the

10 order it says that Apache, not being here, it primes the

11 Apache collateral and Apache assets, so Apache is an RSA

12 target and I just don't want any confusion on that.  They're

13 not -- they're dealt with in a different part of the order.

14         THE COURT:  I agree with that.

15         MS. TSIOURIS:  Your Honor, you said we need to

16 prime party -- I don't understand prime party definition but

17 (indiscernible).

18         I think that sort of incorporates the term into

19 the definition.   But I think this protects you, right?

20 Because whatever rights you've got under the RSA you're

21 totally keeping.  We're only dealing with a non-RSA party

22 here, and Apache can only be helped by this provision, so

23 their carveout works.

24         MS. TSIOURIS:  I think that's right.  I think

25 that's right.

1          THE COURT:  Okay.  I'm going to go back for a

2   moment, now, to the redline so that we can continue to go

3   through that.  And just get closer to your screen here for a

4   minute, Mr. Perez.

5          All right, Mr. Carlson, where's the next thing

6   that we need to look at?

7          MR. CARLSON:  Page 58 and 57, paragraph 30.

8          THE COURT:  (Reviewing order.)  That solves the

9   problem I had.  All right, are there any other objections or

10  concerns with the DIP order?

11         MR. EISENBERG:  Yes, Your Honor.  Philip Eisenberg

12  on behalf of US Specialty.  Yesterday, in the cross

13  examination of Mr. Hanson, he had indicated that he was

14  aware of no releases that were being granted, but we

15  (indiscernible) in this interim order the unconditional

16  release of prepetition secured parties.

17         And I didn't think that that was appropriate for

18  the first day.  He had indicated there weren't any, and then

19  I had thought I had saw in the draft, and I just wanted to

20  highlight that for Your Honor that an unconditional release

21  is being given by the Debtors in an interim order on the

22  first day.

23         MR. PEREZ:  Your Honor, it's all subject to

24  challenge, so there is -- it's kind of standard.  They're

25  going to lend this money, we're going to need your release

1   on that.  I believe that the testimony is, yeah, it's all

2   subject to the -- it's all subject to the challenge.

3            I mean, there's -- all of their rights are

4   preserved.  The rights of the Committee are preserved and

5   the rights of everybody else are preserved subject to the

6   challenge.  I can't imagine that anybody's going to lend

7   this money without us saying "we're not going to release

8   them."

9            MR. CARLSON:  Your Honor, if you go to paragraph

10  23, that's the challenge period paragraph, paragraph 5, it's

11  subject to the right to challenge.

12           THE COURT:  Mr. Eisenberg, I had originally read

13  it the way that they are reading it.  Are you reading it

14  somehow differently than that?

15           MR. EISENBERG:  No.  There's two things.

16  Typically, it's a situation as to validity, priority and

17  extent.  This is something that is akin to that, and there

18  is a challenge period upon the validity, priority and

19  extent.

20           This is a release of all claims.  And so -- and

21  even if it's appropriate for the Debtor to do it as part

22  of his deal, I don't think it's appropriate or permissible

23  to put that into the challenge period and force that relief

24  on third parties.  It's one thing with regard to the

25  stipulations; it's another thing with the release of claims

1  themselves in the stipulation.

2          THE COURT:  Yeah, I --

3          MR. EISENBERG:  And I know this isn't final but

4  this says unconditionally and --

5          THE COURT:  It says the Debtors unconditionally

6  release that somebody else can come in and assert it.

7  There's no one in their right mind that lends you

8  $100 million and doesn't get a release.  I'm overruling

9  the objection.  I appreciate it and I'm overruling it.

10          MR. EISENBERG:  Then I understand that, Your

11  Honor, but what about the making of it binding on third

12  parties?  Not the validity, priority and extent but the

13  release of claims?

14          THE COURT:  I understand.  They need to come in

15  and upset that if they want to.  No one's going to lend you

16  $100 million.  I mean, it's -- I just -- this is a lot of

17  money.  They're not -- this isn't 50 bucks.

18          MR. EISENBERG:  I understand that, Your Honor.

19  All right.  I appreciate it.  I wanted to bring it to the

20  Court's attention and --

21          THE COURT:  No, thank you.  I've got no problem

22  with you raising it, but I'm just going to overrule it.

23          MR. EISENBERG:  Thank you, Your Honor.

24          THE COURT:  Thank you.  I'm ruling essentially on

25  the testimony that I have that, you know, taking all things

1 into account, this is the best deal that is available.

2          There are no known claims here that the Debtor is

3 releasing, and this is such standard practice, inside and

4 outside of bankruptcy, that you release the financial

5 institution that lends you substantial amounts of money.

6          It may not apply in a residential home lending

7 context or something like that, but it would always apply in

8 this kind of a situation.  The Debtors' getting a huge

9 benefit out of this, and I'm going to authorize it.

10          All right.  I have listened to the objections.

11 We've made pretty significant changes in the draft of the

12 order.  Having heard the objections, I have sustained some

13 by making changes to the order, overruled others, and for

14 the reasons yesterday and while I was approving the DIP

15 order, I am now approving it in final -- a final interim

16 form and signing the interim order.  And --

17          MS. TSIOURIS:  Your Honor, I don't know if you can

18 hear me, if my line is still active?

19          THE COURT:  I can.  And I was about to send it to

20 docketing.  So I'm glad you spoke up.  Go ahead.

21          MS. TSIOURIS:  Thank you.  Thank you, Your Honor.

22 I apologize.  Just going back to the language, I think it

23 was on the .pdf page 25, that we were looking at, the

24 language that's attached to the RSA Parties

25          THE COURT:  Yes.

1          MS. TSIOURIS:  We have some parties who we are

2    priming who are not parties to the RSA.  For instance, the

3    (indiscernible) lenders and also potentially there's parties

4    who are creditors who have not actually signed the RSA's.

5          THE COURT:  Okay.  So what language do we need

6    here?

7          MS. TSIOURIS:  We need contractual rights of any

8    party that has been permitted to be primed under the

9    existing credit agreements (indiscernible).

10          THE COURT:  I'm going to -- I think I can

11    incorporate that.  Just a minute.

12          MS. TSIOURIS:  Good.  Thank you, Your Honor.

13    I believe it should be the (indiscernible) agreement.

14          THE COURT:  Okay.  Hold on a minute.  I'm just

15    trying to make room on the .pdf to get another edit in.

16    (Amending order.)  All right.  Okay, I'm now editable again.

17    Go ahead and tell me what I need to do.

18          MS. TSIOURIS:  Thank you, Your Honor.  So I

19    believe it should say, would be -- I just want to catch

20    where I was.  Any parties that were not primed by a

21    prepetition credit agreement -- that were permitted to be

22    primed under a prepetition credit agreement.

23          THE COURT: (Amending order.)  Is that the language

24    you want?  And then I would include the same language down

25    here?

1          MS. TSIOURIS:  That's right.  And then could I

2    just have -- instead of (indiscernible) including

3    (indiscernible) if they were not properly perfected, they

4    don't jump ahead.  They must be properly perfected, and then

5    their contractual rights (indiscernible).

6          THE COURT:  But the contractual rights don't have

7    to be perfected.  They exist free of perfection.  That was

8    the issue.

9          MS. TSIOURIS:  Oh, that's right.  I'm sorry, Your

10   Honor.  Okay, that's fine.  That's fine.

11         THE COURT:  Okay.

12         MR. EISENBERG:  Your Honor, I understand they have

13   the prepetition creditors language but any other party that

14   consented to be primed under this prepetition creditors

15   agreement?

16         THE COURT:  I'm not sure there's a difference

17   between those two, but --

18         MS. TSIOURIS:  No, I'm sorry.  It's to be not

19   permitted to be primed under the prepetition creditors

20   agreement.  I agree.

21         THE COURT:  Tell me again.

22         MS. TSIOURIS:  For other parties, that is not

23   permitted to be primed under the prepetition creditors

24   agreement.  It's their right or not permitted to be primed.

25         MR. EISENBERG:  I can live with that language.

1    Thank you, Your Honor.

2           THE COURT:  (Amending order.)  How did I do now?

3    Now that you've put in the "not"?

4           MR. EISENBERG:  Thank you so much, Your Honor.

5           THE COURT:  Ms. Tsiouris, does that work for you?

6           MS. TSIOURIS:  Yes, that's fine.

7           THE COURT:  All right, thank you.  Let me get this

8    saved.  I have now sent the DIP to docketing.

9           All right, Mr. Carlson?

10          MR. CARLSON:  Thank you, Your Honor.  We have four

11   motions left, the taxes, utilities, consolidated creditor

12   agreements and an extension of the schedules and SOFAs.  And

13   my colleague, Jason George.

14          THE COURT:  All right.  Mr. George, if you would

15   press five star on your phone, please.

16          Ms. Tsiouris, I'm going to leave you available to

17   speak at any point.

18          Mr. Schiable, I see that you had an issue and I

19   apologize I didn't call on you before.

20          Go ahead, Mr. Schiable.

21          MR. SCHIABLE:  (Indiscernible.)

22          THE COURT:  Thank you.  All right, from

23          917-536-1154, is that you, Mr. George?

24          MR. GEORGE:  Yes, it is, Your Honor.  Good

25   morning.  Jason George, Weil Gotshal Manges, proposed

1   counsel to the Debtors.  I have four motions to present to

2   the Court today.  They're Agenda Items 5 and 7 through 9.

3   They're the taxes motion, utilities, creditor agreements

4   motion and schedules and SOFA motion.  I'll present the

5   motions in that order unless Your Honor has a preference.

6           THE COURT:  No.  You said you wanted to start with

7   taxes?  Or what did you want to start with?  Just tell me

8   again, which ever one you want to start with is fine.

9           MR. GEORGE:  Taxes, Docket No. 5

10          THE COURT:  All right.  Go ahead, please.

11          MR. GEORGE:  Pursuant to the motion, the Debtors

12  request authority to pay certain prepetition taxes owed to

13  various taxing authorities.  The Debtors owe approximately

14  $2.7 million in prepetition taxes consist of franchise

15  taxes, severance taxes property taxes, income taxes and

16  various regulatory assessments.

17          As explained more fully in the motion, the penalty

18  not to pay the taxes and assessments can have very negative

19  impacts on the Debtors' business and operations.  Therefore,

20  the Debtors submit that paying prepetition taxes and

21  assessments is a valid exercise of their business judgment.

22  Moreover most, if not all of the taxes would be afforded

23  priority treatment under the Bankruptcy Code, and so payment

24  really is a matter of timing.

25          I'm not sure if Your Honor has any questions.  The

1  Debtors respectfully request that the Court grant the

2  motion.

3          THE COURT:  All right.  Let me hear if there are

4  any objections to the taxes motion.  If anyone does

5  objection, would you please press five star on your phone.

6          All right, in a case like this, where the taxes

7  are sought to be paid, it's almost a no-brainer where there

8  are these huge severance taxes that are accruing and you

9  have to deal with your regulators.  And it makes no sense

10 not to pay these, that are always going to get paid under

11 every circumstance that one can imagine.

12         The Debtors seek authority.  No one is opposing

13 it.  I have signed the order, and the taxes are authorized

14 to be paid, and I have sent that to docket.

15         Mr. George, what do you want to do next?

16         MR. GEORGE:  Thank you, Your Honor.  We'll do the

17 utilities motion, which is filed at Docket No. 11.

18         THE COURT:  All right.

19         MR. GEORGE:  With this motion, the Debtors are

20 seeking approval of the proposed form of adequate of future

21 payment to utility providers, procedures for resolving

22 objections by utility companies relating the sufficiency of

23 the adequate assurance, and prohibiting the utility

24 providers from altering, refusing or discontinuing the

25 service.

1          The Debtors estimated that the cost of their

2    utility services for the next 30 days will be approximately

3    $662,500, which is based on the prior twelve months.  The

4    Debtors propose placing half that amount into a segregated

5    account for the benefit of the utility providers in the form

6    of adequate assurance.

7          To the extent that the utility companies do not

8    agree with the adequate assurance deposit under the proposed

9    order, they are permitted to seek additional adequate

10   assurance during the Chapter 11 cases.

11         The Debtors believe that the proposed adequate

12   assurance and objection procedures are reasonable and

13   customary.  We've reviewed them prior to filing with the

14   United States Trustee's Office and received no objections.

15         I'm not sure if Your Honor has any questions, but

16   I would request the Court grant this motion.

17         THE COURT:  So paragraph 8 allows your client to

18   add a utility to the list at any time.  So 366 requires that

19   you provide the adequate assurance not later than 30 days

20   from the petition date.  this would allow you to add

21   somebody on the 60th day, which means you would not have

22   complied with 366.  How can I do that?

23         MR. GEORGE:  Well, I think that the reason for

24   that is we have procedures in place where we'd actually

25   increase the allowed deposit to allow for the additional two

1    weeks, so we'd be, you know, replacing any --

2            THE COURT:  I understanding.  Yeah, no, I

3    understand why it makes sense.  I don't understand why it

4    would comply with the statute.  The statute says you've got

5    to provide them the adequate assurance within 30 days.  And

6    you would not have done that because you didn't even know

7    they were there.

8            MR. GEORGE:  That's correct, Your Honor.  We think

9    this is a practical resolution.  You know, the fact that

10   there's an additional utility provider that should be

11   provided as adequate assurance that this, you know, will

12   give them the ability to do that.

13           THE COURT:  I think it's a very practical

14   solution.  I don't think it's consistent with the law.

15   That's my question to you, is how is consistent with the

16   law?  Congress was really specific here.

17           MR. GEORGE:  I guess, Your Honor --

18           THE COURT:  Do you want to add them but only

19   within the first 30 days?  Would that work for your client?

20           MR. GEORGE:  Yeah.  Yes, Your Honor, I believe

21   that would be a solution.  We'd be agreeable to that.

22           THE COURT:  (Amending order.)  All right.  And do

23   you want your final on August 24th, the same as the others,

24   or did you want a different day for your final?

25           MR. GEORGE:  I believe August 24th should be

1    sufficient, Your Honor.

2           THE COURT:  All right.  Any objection to the

3    utility order by any party?

4           (No response.)

5           THE COURT:  All right.  As Mr. George says, it's

6    pretty standard fare, and I have signed the order.  Mr.

7    George, where do you want to go next?

8           MR. GEORGE:  Thank you, Your Honor.  The creditor

9    matrix motion is filed at Docket No. 9.

10          THE COURT:  All right.  Go ahead, please.

11          MR. GEORGE:  First, the Debtors are requesting

12   authority to file a consolidated list of creditors and

13   separate matrices for each Debtor and to file a consolidated

14   list of the Debtors' 30 largest unsecured claims.

15          Your Honor, there's 14 Debtors in these Chapter 11

16   cases and thousands of creditors and parties-in-interest.

17   many of the creditors overlap.  Therefore, maintaining a

18   single consolidated list of creditors will benefit the

19   Debtors and their estates by allowing Debtors to more

20   efficiently provide the required notices to parties and to

21   (indiscernible).

22          Second, Your Honor, the Debtors also seek

23   authority to redact certain personal information, namely

24   addresses of their employees, from the creditor matrices

25   and the lists of equity security holders, and also redact

1   addresses primarily to protect employees from identify theft

2   and their permission to use (indiscernible).

3           We did discuss this with the United States Trustee

4   prior to filing the motion and language, that we would

5   provide unredacted copies to the Court and upon request to

6   the United States Trustee and counsel for any entities

7   employed in these cases on a confidential, professional

8   eyes only basis.

9           THE COURT:  So I'm okay with you up to the point

10  that you say it's a confidential that you say it's a

11  confidential, professional eyes only basis.  So the Official

12  Committee, let's say, needs to serve people on the list.

13  How are they going to serve them if they can't use it?

14          MR. GEORGE:  That's a good point, Your Honor.  I

15  think to the extent that they need to serve the parties, we

16  would provide the address information that they need.

17          THE COURT:  I think I'm going to trust both the

18  Committees and the U.S. Trustee to comply with their duties

19  and take out that language.  Otherwise, I don't see how they

20  can meet their service obligation to those individuals.

21          Any objection to that change?

22     (No audible response.)

23          THE COURT:  Any party object to the motion?

24     (No audible response.)

25          THE COURT:  All right.  I have signed the order

1     and we'll get that docketed.  Let me get that done.

2              All right, what do you have next?

3              MR. GEORGE:  Thank you, Your Honor.  Last up is

4     the Debtors motion for an extension of time to file their

5     schedules and statement.  That's at Docket No. 10.

6              THE COURT:  All right.

7              MR. GEORGE:  And we're also seeking additional

8     time to file a Rule 2015.3 Reports as well.

9              So for the -- as pertains to the schedules and

10    statements, the Debtors request an extension of the 14-day

11    period to file schedules and statements by an additional 30

12    days through and including September 17, 2020, without

13    prejudice to seek further extensions.  Additionally, the

14    schedules in this case is a substantial undertaking.  You

15    know, the Debtors and their professionals must compile the

16    information from voluminous books and records related to

17    thousands of claims and parties-in-interest.

18             And Your Honor noted yesterday during the hearing,

19    that Debtors were in the middle of negotiating, you know,

20    very complex transactions.  Their resources are currently

21    mainly focused to those goals, therefore given the size and

22    complexity of the case and everything that's currently

23    ongoing, the Debtors believe there's cause -- ample cause to

24    grant the extension.

25             THE COURT:  Does anyone oppose the extension of

1  the filing date for the schedules and the statements?

2          (No audible response.)

3              THE COURT:  All right.  I'm granting your motion.

4              MR. GEORGE:  Thank you, Your Honor.

5              THE COURT:  Thank you, Mr. George.  What else do

6  we have?

7              MR. GEORGE:  That's all for me.  I'll cede the

8  podium to my colleagues.

9              THE COURT:  All right, thank you.

10             MR. GEORGE:  Thank you.

11             THE COURT:  All right.  Mr. Perez, do we have

12 anything further that we're supposed to cover today?

13             MR. PEREZ:  No, Your Honor, nothing further.  I

14 have a couple of comments.  Number one, and I neglected to

15 say this when we were talking about the DIP order.  The

16 budget that was filed is a proposed budget, subject to

17 approval, so I just wanted to confirm that, number one.

18             Number two, we are -- we have been exchanging

19 emails on the insurance order.  I don't -- we're not quite

20 done yet but hopefully we will have a form of order to give

21 to the Court later this morning and we'll submit and I'm

22 hoping that it will be consensual, but we'll see.

23             Third, Your Honor, in connection with the filing,

24 the Court may have noticed that currently the company does

25 not have any hedges -- that it's subject to any current

1 hedges, or maybe one that's just about to roll off.  And

2 having the DIP order entered was one of the prerequisites to

3 restarting the hedging program.

4          So this is just a long way of saying that we may

5 be back to you earlier than the 24th with a hedging motion.

6 And while I know the Court has from time to time indicated

7 that they thought hedging was in the ordinary course of

8 business, unfortunately we have not been able to persuade

9 any counterparties that you're correct.  So I think this is

10 your fault --

11          THE COURT:  But they are wrong, Mr. Perez.

12          MR. PEREZ:  I think this is your fault, Your

13 Honor, not mine, so it's one way of saying we may -- you may

14 see our smiling faces back earlier than the 24th.

15          THE COURT:  All right.  If you need a hedging

16 motion, go ahead and get it filed.  Hopefully, we'll have a

17 Committee up by the time you file your hedging motion, and I

18 do feel pretty strongly that that's ordinary course.

19          If you can get the Committee to agree on such a

20 motion, can you file it as an emergency agreed motion with

21 the Committee?  And I'm not going to hold a hearing on a

22 hedging motion if the Committee and you agree that it's

23 ordinary course.

24          I understand you need a comfort matter but, you

25 know, these hearings cost you $25,000 or more, and I would

1  rather do it without a hearing on something where I disagree

2  with the need for it.  I understand your need for the

3  comfort -- I'm not criticizing your need for that even in

4  the slightest, but if you have the Committee on board, and

5  you and the Committee and I are on the same page, I'm not

6  holding a hearing on it, and we'll get the comfort.

7          MR. PEREZ:  Thank you, Your Honor.  And I just got

8  a note from Mr. Dane that I just want to make sure that what

9  I indicated was what was requested in his note, but I just

10  hadn't seen it before I spoke.

11          THE COURT:  All right.  If there's anyone else

12  that wants to raise any issue in Fieldwood, now's the time.

13  Otherwise we're going to adjourn Fieldwood and move to our

14  9:00 o'clock docket.

15      (No audible response.)

16          THE COURT:  All right, thank you all.  Fieldwood

17  is adjourned.

18      (Proceedings adjourned at 9:13 a.m.)

19

20

21

22

23

24

25                      *  *  *  *  *

1        I certify that the foregoing is a correct

2   transcript to the best of my ability produced from the

3   electronic sound recording of the proceedings in the above-

4   entitled matter.

5   /S/ MARY D. HENRY

6   CERTIFIED BY THE AMERICAN ASSOCIATION OF

7   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337

8   JUDICIAL TRANSCRIBERS OF TEXAS, LLC

9   JTT TRANSCRIPT #62466

10  DATE FILED:  AUGUST 6, 2020

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25