**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | (Emergency Hearing Requested) |

**EMERGENCY MOTION OF DEBTORS FOR
ORDER (I) AUTHORIZING DEBTORS TO (A) ENTER INTO AND
PERFORM UNDER NEW POSTPETITION HEDGING AGREEMENTS,
AND (B) GRANT RELATED LIENS AND SUPERPRIORITY CLAIMS,
(II) MODIFYING AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. A video/telephonic hearing will be conducted on this matter on August 24, 2020 at 1:30 p.m. (CST). You may participate in the hearing either in person or by audio/video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.**
>
> **You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeIsgur" in the GoToMeeting app or click the link on Judge Isgur home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Isgur. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested**.
>
> **Relief is requested not later than August 24, 2020.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1. Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

4. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5. Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

*Declaration of Michael Dane in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 29).

6. In support of the Motion, the Debtors file the *Declaration of Michael Dane in Support of Motion of Debtors for Order (I) Authorizing Debtors to (A) Enter into and perform Under the Postpetition Hedging Agreements and (B) Grant Related Liens and Superpriority Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* (the "**Hedging Declaration**"), attached hereto as **Exhibit A**.

### Entry of Interim DIP Order

7. On August 4, 2020, the Debtors filed, among other first-day motions, *the Emergency Motion of Debtors Seeking Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), and 364(e) and (b) to Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b) and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* (the "**DIP Motion**").

8. On August 5, 2020, the Court entered, among other first-day orders, the *Interim Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), and 364(e) and (b) to Utilize Cash Collateral Pursuant To 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b) and (III) Scheduling Final Hearing*

*Pursuant to Bankruptcy Rules 4001(b) and (c)* (the "**Interim DIP Order**"),[2] which provides, *inter alia*, the following:

> Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priming security interest in and lien upon all pre- and postpetition property of each Loan Party whether now existing or hereafter acquired, of the same nature, scope and type as the collateral securing the Prepetition Debt; provided, that such lien shall be (i) junior to the Permitted Prior Liens and (ii) *pari passu* with valid and perfected liens in favor of hedge counterparties in connection with secured hedging transactions entered into by the Debtors on a post-petition basis in accordance with the DIP Documents.

Interim DIP Order, ¶ 9(b).

9. In addition, the Interim DIP Order provides that the Prepetition FLFO Agents (for themselves and for the benefit of the Prepetition FLFO Lenders) are granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition FLFO Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral including, without limitation, Unencumbered Property and, subject to entry of the Final Order, the Avoidance Proceeds, in each case subject and subordinate only to (i) the Carve-Out, (ii) the Permitted Prior Liens, (iii) the DIP Liens, and (iv) the Hedging Liens, and ranking *pari passu* with the Prepetition FLTL Secured Parties Adequate Protection Liens. Interim DIP Order, ¶ 14(a).

10. In addition, the Interim Order provides that the Prepetition FLTL Agent (for itself and for the benefit of the Prepetition FLTL Lenders) is granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Interim DIP Order.

Prepetition FLTL Secured Parties Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral including, without limitation, Unencumbered Property and, subject to entry of the Final Order, the Avoidance Proceeds, in each case subject and subordinate only to in each case subject and subordinate only to (i) the Carve-Out, (ii) the Permitted Prior Liens (iii) the DIP Liens, and (iv) the Hedging Liens, and ranking *pari passu* with the Prepetition FLFO Secured Parties Adequate Protection Liens.  Interim DIP Order, ¶ 15(a).

11. In addition, the "Hedging Covenant" of the DIP Term Sheet (as defined in the Interim DIP Order) provides that within 30 days of the entry of the Final DIP Order (or such later date as agreed to by the Required DIP Lenders), the Debtors must enter into and thereafter maintain, hedge agreements with counterparties having a rating of BBB- or Baa3 or better or an investment grade-rated participant with respect to at least 50% (on a barrel of oil equivalent basis) of the aggregate oil and natural gas proved developed producing reserves (based on an Approved Reserve Report adjusted for any permanent shut-in of shelf properties) for the next succeeding 6 months, provided that such hedge agreements shall be on terms consistent with the Debtors' historical practices.

12. The Debtors will seek entry of a final order granting the DIP Motion (the "**Final DIP Order**" and, together with the Interim DIP Order, the "**DIP Orders**") at a hearing that is currently scheduled to be heard on August 24, 2020 at 1:30 p.m. (Prevailing Central Time).

## **Jurisdiction**

13. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

14. By this Motion, pursuant to sections 362, 363, 364, 1107, and 105(a) of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, and 6004, and Bankruptcy Local Rules 4001-1 and 9013-1, and consistent with industry practice and the Hedge Practices (as defined below), the Debtors request entry of an order authorizing, but not directing, the Debtors to:

 (a) enter into and perform under new financial derivative transactions pursuant to contracts (the "**Postpetition Hedging Agreements**") in the ordinary course of business;

 (b) honor, pay, or otherwise satisfy all obligations, liabilities, and indebtedness of the Debtors arising under the Postpetition Hedging Agreements as they come due, including any fees and expenses incurred prior to the Petition Date (the "**Hedging Obligations**");

 (c) grant Superpriority Claims and Postpetition Hedging Liens (each as defined below) to secure the Hedging Obligations;

 (d) modify the automatic stay provisions of section 362, solely to the extent necessary to permit the Hedge Counterparties (as defined below) to (i) exercise and enforce their rights and remedies under the Postpetition Hedging Agreements, including upon the occurrence of an event of default or termination event under the Postpetition Hedging Agreements, and (ii) take all actions to validate and perfect the Postpetition Hedging Liens; and

 (e) granting related relief.

15. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

**Overview of Customary Hedging Agreements and Hedging Activities**

**A.**  **Debtors Have Historically Entered into Customary Hedging Agreements to Mitigate Commodity Price Risks Associated with their Oil and Natural Gas Business**

16. As is customary in the Debtors' industry, in the ordinary course of business, the Debtors have historically entered into financial derivative contracts primarily to hedge the Debtors' exposure to commodity price risks to their cash flows (collectively, the "**Customary Hedging Agreements**" and the activities related thereto, the "**Hedging Activities**") with

creditworthy third parties pursuant to the Hedge Practices (as defined below). The Hedging Activities operate to reduce the Debtors' exposure to commodity price fluctuations and provide the Debtors with long-term cash flow predictability to manage their business. Through the Hedging Activities and Customary Hedging Agreements, the Debtors are able to hedge against adverse oil and gas price fluctuations and thereby protect the economic value of their operations by preventing substantial declines in cash flows.

17. Historically, the Debtors' Customary Hedging Agreements consist primarily of swaps, and costless put/call "collars." Swaps are designed so that the Debtors receive or make payments based on a differential between fixed and variable prices for crude oil and natural gas. A costless collar consists of a call, which establishes a maximum price the Debtors will receive for the volumes under contract and a purchased put that establishes a minimum price the Debtors will receive for the volumes under contract. As hedges roll off, the Company's senior management ("**Management**") reassess the type of hedging transactions that will provide the best opportunities for the Company.

18. Historically, the Debtors have entered into transactions under the Customary Hedging Agreements for 30%-50% of projected oil and natural gas production for one to two years into the future. The prepetition Customary Hedging Agreements were typically secured on a first lien basis under that certain *Second Amended and Restated Credit Agreement – First Out*, dated as of June 28, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**FLFO Credit Agreement**") by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, Goldman Sachs Bank USA, as administrative agent, the Lenders (as defined therein) party thereto and Cantor Fitzgerald Securities, as collateral agent, and the "Loan Documents" (as defined in the FLFO Credit

7

Agreement) with a security interest in substantially all of the assets of the Debtors (the "**Collateral**"). The Debtors' Hedging Activities have generated significant value and are particularly important in times of increased volatility in commodity prices.

19. The Debtors enter into an International Swap and Derivatives Association, Inc. Master Agreement ("**ISDA**") with each counterparty prior to engaging in Hedging Activities with such counterparty. The ISDA is a standard contract that governs all derivative contracts entered into between the Debtors and the respective counterparty. The ISDA may allow for offsetting of amounts payable or receivable between the Debtors and the counterparty for transactions that occur on the same date and in the same currency. As of the Petition Date, the Debtors do not currently have any active hedge positions.

20. The Debtors anticipate entering into amended ISDAs (the "**Amended ISDAs**") with one or more of their Hedge Counterparties, which will amend and restate the Debtors' prior ISDAs with existing Hedge Counterparties and provide the Debtors with the ability to enter into Customary Hedging Agreements after the Petition Date as Management deems appropriate and prudent. By this Motion, the Debtors seek authority to enter into and perform under any Postpetition Hedging Agreements in the ordinary course of business.

B.  **Customary Hedging Agreements Are Entered Into Pursuant to Debtors' Customary Hedge Practices**

21. Agreements like the Customary Hedging Agreements are common in the Debtors' industry and are routinely used in the ordinary course of business to mitigate exposure to fluctuating commodity prices. The board of directors for Fieldwood Energy, Inc. (the "**Board**") has delegated authority to Management to engage in Hedging Activities, as Management deems appropriate. As is typical in the Debtors' industry, Management has established certain customary

practices (the "**Hedge Practices**") to ensure that such agreements are in the best interests of all of the company's stakeholders. The Hedge Practices are described below.

22. ***Limited Scope of Hedging Activities***. Historically, Management has limited Customary Hedging Agreements to (a) swaps, (b) swaptions, (c) costless put/call collars, and (d) put options.

23. ***Approval Process***. The Debtors' Customary Hedging Agreements are approved by the Debtors' Senior Vice President and Chief Financial Officer.

24. ***Reporting***. Reports on Hedging Activities are provided quarterly to the Board and the Audit Committee of Fieldwood Energy, Inc. and include disclosures regarding: (a) monthly operating revenue related to hedge settlements; (b) the percent of production hedged; and (c) estimated monthly cash flow forecasts related to hedge settlements. The Debtors also provide semiannual reports on Hedging Activities to the Debtors' secured lenders as part of their reserve report certificates, which include disclosures regarding: (a) a list of all material commodity Customary Hedging Agreements and their material terms and (b) the net mark-to-market value of such Customary Hedging Agreements.

25. The Debtors do not engage in speculative Hedging Activities. Management typically hedges around material acquisitions, during the Company's annual budgeting process, and opportunistically as attractive market terms and prices arise. The Hedging Activities are directly tied to the Debtors' forecasted future oil and gas production levels. Management continually assesses the appropriate level of production to hedge and bases its decisions on a variety of factors, including current and future expected commodity market prices, cost and availability of costless put/call collars and swap contracts, forecasted drilling activity, liquidity, and the level of acquisition activity.

C.  **Proposed Postpetition Hedging Activities**

26. Consistent with their past practices and the terms of the DIP Credit Agreement that the Debtors anticipate closing later this week, the Debtors target hedging approximately 50% of their projected oil and natural gas production over the next six months.

27. Over the past several weeks, the Debtors have engaged in discussions with potential hedge counterparties (collectively, the "**Hedge Counterparties**") regarding the terms of potential Postpetition Hedging Agreements. The Debtors believe it is likely that they will, in the near future, be able to enter into Postpetition Hedging Agreements with one or more Hedge Counterparties. The Debtors expect that the Postpetition Hedging Agreements will be on terms generally consistent with the Customary Hedging Agreements, except to the extent that they contain additional termination events and covenants unique to hedging agreements filed during chapter 11 cases.

28. In accordance with the Interim DIP Order, the Debtors seek authority to secure and otherwise ensure payment of the Hedging Obligations by providing the Postpetition Hedge Counterparties: (a) superpriority administrative claims (the "**Superpriority Claims**") on account of the Hedging Obligations under section 364(c)(1) of the Bankruptcy Code, which shall be *pari passu* with the DIP Obligations (as defined in the DIP Orders) provided under the applicable DIP Order, and (b) first-priority liens in the DIP Collateral which shall be *pari passu* with the DIP Liens (the "**Postpetition Hedging Liens**").

29. The Debtors submit that undertaking Hedging Activities postpetition as described herein are in the best interests of the Debtors' estates and their creditors. The Debtors believe that postpetition Hedging Activities will be a low-risk means of reducing the impact of volatile commodity prices on the Debtors' cash flow during the pendency of these chapter 11 cases.

**Relief Requested Should be Granted**

A.     **Section 363(c) of the Bankruptcy Code Authorizes Debtors to Enter Into Postpetition Hedging Agreements and Perform Postpetition Obligations Under Postpetition Hedging Agreements**

30.     Section 363(c) of the Bankruptcy Code authorizes debtors in possession to "enter into transactions . . . in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession flexibility to engage in ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (alteration in original; internal quotation marks omitted); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 394 (S.D.N.Y. 1983) (holding that where a debtor in possession is merely exercising the privileges of its status, there is no general right to notice and a hearing concerning particular transactions conducted in the ordinary course of business).

31.     The Bankruptcy Code does not define the "ordinary course of business." Courts typically apply two tests to determine what constitutes the ordinary course of business: a "horizontal" test, which "focuses on the way businesses operate within a given industry," and a "vertical" test, which "focuses on the expectations of creditors." *In re Denton Cty. Elec. Coop., Inc.*, 281 B.R. 876, 882 and n.12 (Bankr. N.D. Tex. 2002 ); *see Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne),* 114 F.3d 379, 384 (2d Cir. 1997) (finding that "ordinary course of business" is meant "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business") (quoting

11

*In re Watford,* 159 B.R. 597, 599 (M.D. Ga. 1993)); *see also In re Roth Am., Inc.*, 975 F.2d at 952 (same). Entry into the Postpetition Hedging Agreements and pospetition performance under the Postpetition Hedging Agreements are in the ordinary course of the Debtors' business under both tests.

32. Under the horizontal test, hedging agreements are typical arrangements and ubiquitous among companies in the Debtors' industry to stabilize cash flows and preserve value. Companies in the Debtors' industry routinely enter into hedging and trading transactions similar to those contemplated by the Postpetition Hedging Agreements, and courts in this district routinely authorize chapter 11 debtors in possession to continue honoring their obligations arising under non-speculative hedges, such as the Postpetition Hedging Agreement. *See, e.g., In re Denbury Resources, Inc., et al.*, No. 20-33801 (DRJ) (Bankr. S.D. Tex. July 30, 2020) (Docket No. 69); *In re Rosehill Resources Inc., et al.*, No. 20-33695 (DRJ) (Bankr. S.D. Tex. July, 26 2020) (Docket No. 67); *In re Chesapeake Energy Corp, et al.*, (No. 20-33233) (DRJ) (Bankr. S.D. Tex. June 28, 2020) (Docket. No. 129); *In re Halcón Res. Corp., et al.*, No. 19-34446 (DRJ) (Bankr. S.D. Tex. Aug. 9, 2019) (Docket No. 83); *In re Weatherford Int'l PLC, et al.*, No. 19-33694 (DRJ) (Bankr. S.D. Tex. July 2, 2019) (Docket No. 85). Accordingly, the Debtors believe that entering into and performing under new Postpetition Hedging Agreements is within the ordinary course of business and should be permitted.

33. Under the vertical test, creditors' reasonable expectations of a debtor's "ordinary course of business" are based on the debtor's specific prepetition business practices and norms, and the expectation that the debtor will conform to those practices and norms while operating as a debtor in possession. *See In re Roth Am., Inc.*, 975 F.2d at 953 ("The inquiry deemed vertical (more appropriately characterized as the creditor's expectation test) analyzes the

12

transactions 'from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit.'") (citation omitted).  Thus, a fundamental characteristic of an "ordinary" postpetition business transaction is its similarity to a prepetition business practice. *Marshack v. Orange Commercial Credit (In re Nat'l Lumber & Supply, Inc.),* 184 B.R. 74, 79 (9th Cir. B.A.P. 1995); *In re James A. Phillips, Inc.,* 29 B.R. at 394.  The size, nature and type of business, and the size and nature of the transactions in question are all relevant to determining whether the transactions at issue are ordinary.  *United States ex rel. Harrison v. Estate of Deutscher,* 115 B.R. 592, 598 (M.D. Tenn. 1990); *In re Johns-Manville Corp.,* 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986).  "Accordingly, a post-petition transaction undertaken by the debtor that is similar in size and nature to pre-petition transactions undertaken by the debtor would be within the ordinary course of business."  *In re Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 426 (N.D. Ill. 1995).

34. Here, the Debtors seek to continue engaging in Hedging Activities in the ordinary course, consistent with past practice and the reasonable expectations of their creditors.  As discussed above, the Debtors have historically hedged a substantial portion of their projected oil and natural gas production over a one to two year period.  The Debtors seek to return their Hedging Activities to fall within the range of approximate historic levels with a goal of hedging approximately 50% of their projected oil and natural gas production over the next six months through entry into new commodity Postpetition Hedging Agreements in the ordinary course of business to the extent such Postpetition Hedging Agreements represent beneficial contracts to the Debtors' estates and are consistent with the Debtors' prepetition Hedge Practices.  Accordingly, the Debtors submit that entry into and performance under new Postpetition Hedging Agreements

is consistent with the Debtors' past, ordinary course practice, appropriate, and in the best interest of their estates and all parties-in-interest in these chapter 11 cases.

**B.     Debtors Should Be Authorized to Provide Postpetition Hedging Liens and Grant Superpriority Claims to Hedge Counterparties**

35.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain "credit" on a superpriority or senior secured basis when obtaining such credit on other terms is unavailable. 11 U.S.C. §§ 364(c) and (d). Courts generally afford debtors considerable deference to determine, in their business judgment, the terms under which they obtain postpetition secured credit. *See, e.g., In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011).

36.     To encourage Hedge Counterparties to enter into Postpetition Hedging Agreements with the Debtors and to provide the necessary comfort to the Hedge Counterparties that the Debtors will be able to perform under such Postpetition Hedging Agreements, the Debtors seek to provide Postpetition Hedging Liens and Superpriority Claims to the Hedge Counterparties. The Debtors believe that providing Postpetition Hedging Liens and Superpriority Claims as support for the Postpetition Hedging Agreements is not unduly burdensome, is consistent with their prepetition practice of securing Customary Hedging Agreements with Postpetition Hedging Liens in the collateral under the Debtors' FLFO Credit Agreement, and, more importantly, is necessary to ensure the Debtors' ability to engage in Hedging Activities postpetition. Additionally, the DIP Lenders have consented to the Postpetition Hedging Liens and Superpriority Claims and support the relief requested in this motion. Moreover, if a statutory committee of creditors is appointed in these chapter 11 cases, the Debtors will work in good faith with such committee to agree on a mutually acceptable form of order. Given the importance of Hedging Activities for preserving the value of the Debtors' estates, these protections are appropriate and in the best

14

interests of the Debtors, their estates, and all parties-in-interest in these chapter 11 cases and should be permitted.

C.  **Automatic Stay Should Be Modified on a Limited Basis**

37. Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party-in-interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay - (1) for cause . . . ." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define the term "cause," and "whether cause exists must be determined on a case by case basis." *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). "The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case." (citing *In re Atl. Ambulance Assoc., Inc.*, 166 B.R. 613 (Bankr. E.D. Va. 1994)).

38. The Debtors seek modification of the automatic stay provisions of section 362 of the Bankruptcy Code, solely to the extent necessary (a) for the Hedge Counterparties to exercise and enforce any or all of their rights and remedies under the Postpetition Hedging Agreements, including upon the occurrence of an event of default or termination event under the Postpetition Hedging Agreements and (b) to permit Hedge Counterparties to take all actions to validate and perfect the liens and security interests granted by the Proposed Order. Here, cause exists to modify the automatic stay because, absent such relief, the Hedge Counterparties would not be willing to engage in postpetition Hedging Activities with the Debtors. As discussed above, postpetition Hedging Activities will serve to reduce the effects of commodity price volatility on the Debtors' businesses and will enhance the Debtors' ability to maintain a stable cash flow during the pendency of these chapter 11 cases. Accordingly, the Debtors in their business judgment believe that modification of the automatic stay is reasonable under the circumstances, is necessary

to protect the Debtors' ability to continue engaging in Hedging Activities postpetition, and is in the best interests of their estates and all parties-in-interest in these chapter 11 cases.

### Bankruptcy Rule 6003 Has Been Satisfied

39. Pursuant to Local Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion under Bankruptcy Rule 6003, which provides that the Court may grant relief within the first 21 days after the Petition Date to the extent such relief is necessary to avoid immediate and irreparable harm. As described herein and in the Hedging Declaration, the relief requested is essential to avoid the immediate and irreparable harm that would be caused by the Debtors' inability to hedge against adverse oil and gas price fluctuations and thereby protect the economic value of their operations by preventing substantial declines in cash flows. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

### Compliance with Bankruptcy Rule 6004(a) and Waiver of Bankruptcy Rule 6004(h)

40. To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h).

### DIP Order and DIP Documents Control

41. The DIP Orders provide for, among other things, the Debtors' entry into a postpetition financing facility (the "**DIP Facility**") and the use of cash collateral (the definitive documentation for such facility, the "**DIP Documents**"). The DIP Orders and the DIP Documents contain terms that limit and otherwise apply to the Debtors' ability to utilize certain of the relief requested herein. For the avoidance of doubt, the relief described and requested herein and/or granted by any order issued pursuant hereto is subject in all respects to the terms of the DIP Orders and the DIP Documents; *provided*, however, that notwithstanding anything in the DIP Orders to

the contrary, the Hedging Obligations shall be secured by first-priority liens in all DIP Collateral, which shall be *pari passu* with the DIP Liens.

### Reservation of Rights

42. Nothing contained herein is intended to be or shall be deemed to be (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

### Notice

43. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn:  William L. Wallander, Esq. and Bradley R. Foxman, Esq.), as counsel to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn:  Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham Jr., Esq. and Martha Wyrick, Esq.), as counsel to the Ad Hoc Group of Secured Lenders; (v) Shipman &

Goodwin LLP, 400 Park Ave, 5th Floor, New York, NY 10022 (Attn: Nathan Plotkin, Esq.), as counsel to Cantor Fitzgerald Securities, the FLTL Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606 (Attn: Joshua Spencer, Esq. and Anastasia Sotiropolous, Esq.), as counsel to Cortland Capital Market Services LLC, the SLTL Administrative Agent; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of Texas; (ix) the Securities and Exchange Commission; (x) the Hedge Counterparties; (xi) any other party entitled to notice pursuant to Bankruptcy Rule 2002; and (xii) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**No Previous Request**

44.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: August 18, 2020
      Houston, Texas

       /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   Matt.Barr@weil.com
          Jessica.Liou@weil.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on August 18, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  */s/  Alfredo R. Pérez*
                                                  Alfredo R. Pérez