BOND NO. B008837

## PEFORMANCE BOND

KNOW ALL PERSONS BY THESE PRESENTS:

THAT, **Fieldwood Energy Offshore LLC** ("Principal"), a Delaware limited liability company, with its principal offices at 2000 W. Sam Houston Parkway South, Suite 1200, Houston, TX 77042, and **U.S. Specialty Insurance Company** ("Surety"), with an office at 13403 Northwest Freeway, Houston, Texas 77040, are held and firmly bound unto **JX Nippon Oil Exploration (U.S.A.) Limited** ("Obligee"), with its principal office at One Riverway, Suite 1600, Houston, TX 77056, in the penal sum of One Million Six Hundred Fifty One Thousand Eight Hundred Fifty One and No/100 Dollars ($1,651,851.00) lawful money of the United States of America for the payment of which penal sum Principal and Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS, Principal has entered into a Purchase and Sale Agreement (the "Agreement") with Black Elk Energy Offshore Operations, LLC ("Black Elk") dated as of March 13, 2014, as amended, which provides for the sale and assignment, from Black Elk to the Principal, of the interests of Black Elk in certain oil and gas leases and properties including the oil and gas lease described on Annex 1 to this Bond (whether one or more, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells (whether one or more, the "Well"), platforms, facilities, equipment, pipelines and personal property existing on the Lease as of the date of the Agreement (the Lease, the Well and such platforms, facilities, equipment, pipelines and personal property being collectively referred to as the "Property");

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of the Lease, whether by operation of law or otherwise, this Bond shall remain in full force and effect until the P&A Obligations (as such term is defined below) have been fully performed and discharged;

WHEREAS, as used in this Bond the term "P&A Obligations" means all obligations and liabilities of Principal concerning: (i) properly plugging, re-plugging and abandoning the Well, (ii) the dismantling, decommissioning, abandoning and removing of the Well and Property, and (iii) cleaning up, restoration and/or remediation of the Property in accordance with the Lease, regulations, orders and directives of the U.S. Department of the Interior, Bureau of Ocean Energy Management ("BOEM") and any other state or federal governmental authority; and applicable laws (including environmental laws);

WHEREAS, Principal has promised to deliver to Obligee this Bond in connection with the consummation of the sale and assignment of the Property to Principal pursuant to the Agreement and in connection with that certain Assumption Agreement dated as of June 5th, 2014, by and between Principal, Obligee and Black Elk ("Assumption Agreement");

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

BOND NO. B008837

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW THEREFORE, notwithstanding anything contained herein to the contrary, if said Principal or Surety shall fully perform and discharge the P&A Obligations in respect of the Property (as evidenced by providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations), then this Bond and the obligations hereunder shall be null and void.

ADDITIONALLY, if as to any Property, Obligee is required by the BOEM, or other governmental authority, to perform any of the P&A Obligations (or a demand is made upon Obligee by a co-obligor of Principal to contribute toward the costs of performing any of the P&A Obligations), then prior to any performance by Obligee with respect to the P&A Obligations (or payment by Obligee to Principal's co-obligor of a share of the estimated costs of performing the P&A Obligations if a demand for such payment is made on Obligee), Surety agrees to pay to Obligee an amount reasonably estimated by Obligee as necessary or appropriate to perform the P&A Obligations (or to pay its share of the estimated costs for the P&A Obligations if demand is made by Principal's co-obligor) in an amount up to, but not exceeding, the penal amount of this Bond.

FURTHERMORE, it is agreed that Surety shall have no obligation to Principal, Obligee or any other person or entity for any loss suffered by Principal, Obligee or any other person or entity by reason of acts or omissions which are or could be covered by Obligee's or Principal's general liability insurance, products liability insurance or completed operations insurance. In no event shall Surety be obligated to pay, in the aggregate, for all claims hereunder, an amount exceeding the penal sum of this Bond.

It is further agreed that Surety shall not be liable for any provisions of the Agreement or specifications respecting the procurement of or coverages provided by an insurance, nor shall Surety be liable under any hold harmless and/or indemnification agreements entered into by Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in performing the P&A Obligations.

If Principal fails to perform any of the P&A Obligations in accordance with the terms of the Agreement, then Principal shall have 30 days following receipt of notice of default from Obligee in which to fully cure or remedy such default. Obligee agrees to provide Surety with a copy of each such default notice. If the default covered by such default notice is not cured or remedied within such 30 day period, then upon the expiration of such 30 day period such default shall constitute a "Principal Default" for purposes of this Bond. Any suit under this Bond with

BOND NO. B008837

respect to a Principal Default must be instituted before the expiration of one (1) year from the date of such Principal Default, and subject to such one (1) year time limitation, Surety irrevocably consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said courts.

No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits of Schedules attached thereto shall release Principal and Surety or any of them from their liability under this Bond, notice to Surety of any such amendment or supplement being hereby waived.

No (i) assignment of the Agreement or of the Lease by Principal, its successors and assigns, (ii) delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal, (iii) lack of enforceability or other defense or offset right in respect of any obligation of Principal or right of Obligee under the Agreement or otherwise in respect of the P&A Obligations, or (iv) the insolvency, bankruptcy or receivership of Principal, shall in any degree relieve Principal or Surety (as applicable) of any of its obligations under this Bond.

HOWEVER, if upon assignment of the Agreement or the Lease or any of the Property by Principal, its successors or assigns, Principal shall cause its assignee (i) to post security with Obligee, in the form of a bond or other security, in the amount of and covering the same obligations as stated herein, and otherwise containing terms and issued by parties that are approved by Obligee and (ii) to assume (in a written instrument approved by Obligee) all P&A Obligations in respect of the Property, then Obligee will accept such security in lieu of this Bond and issue an unconditional release of this Bond within 60 days of Obligee's acceptance of such other security (provided, there shall be excluded from such release any obligations required to be performed by Principal or Surety under this Bond prior to the date of such assignment; and provided further, no such release of this Bond shall limit or modify any of the obligations of the Principal under the Agreement).

No right or action shall accrue on this Bond to or for the use of any person or entity other than Principal and Obligee and their respective successors and assigns.

This Bond may not be amended, supplemented or modified except pursuant to a written instrument duly executed by Principal and Surety and consented to in writing by Obligee, whether pursuant to the terms and provisions of the Assumption Agreement or as mutually agreed to by such parties. No course of conduct, dealing or performance shall amend, supplement or modify this Bond unless incorporated into a written instrument referenced in the preceding sentence. This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws, rules and principles.

Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) the full performance of the P&A Obligations by Principal and (ii) the full performance by Surety of its obligations under this Bond, but in no instance later than 30 days following Surety or Principal providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed

BOND NO. B008837

by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations.

    IN WITNESS WHEREOF, the Principal and Surety have executed this instrument under their seals this 5th day of June, 2014, the name and seal of each such party being hereto affixed and those presents duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESS/ATTEST:

_[signature: John J S]_

 

Fieldwood Energy Offshore LLC ("Principal")

By: _[signature]_ (Seal)
Name: Howard M. Tate
Title: Vice President

Date: 7/7/14

WITNESS/ATTEST:

_[signature]_
Myisha S. Jefferson

U.S. Specialty Insurance Company ("Surety")

By: _Michele K. Tyson_ (Seal)
Name: Michele K. Tyson
Title: Attorney-in-Fact

Date: June 5, 2014

OBLIGEE ACCEPTANCE

WITNESS/ATTEST:

_[signature: Frank Davis]_
Frank Davis III
Assistant Secretary

JX Nippon Oil Exploration (U.S.A.) Limited ("Obligee")

By: _[signature]_ (Seal)
Name: Steven R. Fly
Title: Vice President

Date: July 8, 2014

Page 4 of 5

BOND NO. B008837

## Annex I
### to

### Principal: Fieldwood Energy Offshore LLC
### Bond No. B008837

| Field Name | Block | Lease No. | Amount |
|---|---|---|---|
| GI 116 (Hickory) Field | GI 116<br>GI 110 | OCS-G 139443<br>OCS-G 13943 | $1,651,851.00 |
| | | **Total Bond Amount:** | **$1,651,851.00** |

# TEXAS COMPLAINT NOTICE

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|

1. To obtain information or make a complaint:
2. You may contact your agent.

Para obtener informacion o para someter una queja: Puede comunicarse con su agente.

3. You may call the company's toll free telephone number for information or to make a complaint at:

   1-800-486-6695

Usted puede llamar de numerero de telefono gratis de la compania para informacion o para someter una queja al:

   1-800-486-6695

4. You may also write to the company:

   601 S. Figueroa St., Suite 1600
   Los Angeles, CA 90017

Usted tambien puede escribir a la compañía:

   601 S. Figueroa St., Suite 1600
   Los Angeles, CA 90017

5. You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

   (800) 252-3439

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

   (800) 252-3439

6. You may write the Texas Department of Insurance:
   P.O. Box 149104
   Austin, TX 78714-9104
   Fax No.: (512) 475-1771
   Web: http://www.tdi.state.tx.us
   E-mail: ConsumerProtection@tdi.state.tx.us

Puede escribir al Departamento de Seguros de Texas:

   P.O. Box 149104
   Austin, TX 78714-9104
   Fax No.: (512) 475-1771
   Web: http://www.tdi.state.tx.us
   E-mail: ConsumerProtection@tdi.state.tx.us

7. **PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la companie primero. Si no se resuelve la disputa, prede entonces comunicarse con el departamento (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:**

8. This notice is for information only and does not become part or condition of the attached document.

**UNA ESTE AVISO A SU POLIZA:**

Esta aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

# POWER OF ATTORNEY

**AMERICAN CONTRACTORS INDEMNITY COMPANY   TEXAS BONDING COMPANY**
**UNITED STATES SURETY COMPANY   U.S. SPECIALTY INSURANCE COMPANY**

KNOW ALL MEN BY THESE PRESENTS: That American Contractors Indemnity Company, a California corporation, Texas Bonding Company, an assumed name of American Contractors Indemnity Company, United States Surety Company, a Maryland corporation and U.S. Specialty Insurance Company, a Texas corporation (collectively, the "Companies"), do by these presents make, constitute and appoint:

**Edwin H. Frank, III, Michele K. Tyson or W. Russell Brown, Jr. of Houston, Texas**

its true and lawful Attorney(s)-in-fact, each in their separate capacity if more than one is named above, with full power and authority hereby conferred in its name, place and stead, to execute, acknowledge and deliver any and all bonds, recognizances, undertakings or other instruments or contracts of suretyship to include riders, amendments, and consents of surety, providing the bond penalty does not exceed \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Three Million\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Dollars ($ \*\*3,000,000.00\*\* ).
This Power of Attorney shall expire without further action on December 8, 2016. This Power of Attorney is granted under and by authority of the following resolutions adopted by the Boards of Directors of the Companies:

*Be it Resolved*, that the President, any Vice-President, any Assistant Vice-President, any Secretary or any Assistant Secretary shall be and is hereby vested with full power and authority to appoint any one or more suitable persons as Attorney(s)-in-Fact to represent and act for and on behalf of the Company subject to the following provisions:

*Attorney-in-Fact* may be given full power and authority for and in the name of and on behalf of the Company, to execute, acknowledge and deliver, any and all bonds, recognizances, contracts, agreements or indemnity and other conditional or obligatory undertakings, including any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts, and any and all notices and documents canceling or terminating the Company's liability thereunder, and any such instruments so executed by any such Attorney-in-Fact shall be binding upon the Company as if signed by the President and sealed and effected by the Corporate Secretary.

*Be it Resolved*, that the signature of any authorized officer and seal of the Company heretofore or hereafter affixed to any power of attorney or any certificate relating thereto by facsimile, and any power of attorney or certificate bearing facsimile signature or facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is attached.

IN WITNESS WHEREOF, The Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this ____June 5, 2014____.

**AMERICAN CONTRACTORS INDEMNITY COMPANY   TEXAS BONDING COMPANY**
**UNITED STATES SURETY COMPANY   U.S. SPECIALTY INSURANCE COMPANY**

Corporate Seals

By: _____
Daniel P. Aguilar, Vice President

State of California
County of Los Angeles SS:

On ____June 5, 2014____, before me, Vanessa Wright, a notary public, personally appeared Daniel P. Aguilar, Vice President of American Contractors Indemnity Company, Texas Bonding Company, United States Surety Company and U.S. Specialty Insurance Company who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature ____V. W____ (Seal)

V. WRIGHT
Commission # 1996319
Notary Public - California
Los Angeles County
My Comm. Expires Dec 8, 2016

I, Jeannie Lee, Assistant Secretary of American Contractors Indemnity Company, Texas Bonding Company, United States Surety Company and U.S. Specialty Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney, executed by said Companies, which is still in full force and effect; furthermore, the resolutions of the Boards of Directors, set out in the Power of Attorney are in full force and effect.

In Witness Whereof, I have hereunto set my hand and affixed the seals of said Companies at Los Angeles, California this __5th__ day of ____June____, 2014.




Corporate Seals

_____
Jeannie Lee, Assistant Secretary

Bond No. B008837
Agency No. #8353