5

**BOND NO. K08024807**

KNOW ALL PERSONS BY THESE PRESENTS:

THAT, Black Elk Energy Offshore Operations, LLC ("Principal"), a Texas Limited Liability Company, with its principal offices at 11451 Katy Freeway, Suite 500, Houston, TX 77079, and Westchester Fire Insurance Company ("Surety"), with an office at 525 West Monroe, Suite 500, Chicago, IL 60661, are held and firmly bound unto Nippon Oil Exploration U.S.A. Limited ("Obligee"), with its principal office at 5847 San Felipe, Suite 2800, Houston, TX 77057, in the penal sum of Nine Hundred Seventy-Five Thousand and No/100 Dollars ($975,000.00) lawful money of the United States of America for the payment of which penal sum Principal and Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS, Principal has entered into a Purchase and Sale Agreement (the "Agreement") with Obligee dated as of August 5, 2010 which provides for the sale and assignment, from Obligee to the Principal, of the interests of Obligee in certain oil and gas leases and properties including the oil and gas lease(s) described on Annex 1 to this Bond (whether one or more, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells (whether one or more, the "Well"), platforms, facilities, equipment, pipelines and personal property existing on the Lease as of the date of the Agreement (the Lease, the Well and such platforms, facilities, equipment, pipelines and personal property being collectively referred to as the "Property");

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of the Lease, whether by operation of law or otherwise, this Bond shall remain in full force and effect until the P&A Obligations (as such term is defined below) have been fully performed and discharged;

WHEREAS, as used in this Bond the term "P&A Obligations" means all obligations and liabilities of Principal concerning: (i) properly plugging, re-plugging and abandoning the Well, (ii) the dismantling, decommissioning, abandoning and removing of the Well and Property, and (iii) cleaning up, restoration and/or remediation of the Property in accordance with the Lease, regulations, orders and directives of the U.S. Department of the Interior, Bureau of Ocean Energy Management, Regulation, and Enforcement ("BOEMRE") and any other state or federal governmental authority; and applicable laws (including environmental laws).

WHEREAS, Principal has promised to deliver to Obligee this Bond prior to the consummation of the sale and assignment of the Property to Principal pursuant to the Agreement;

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and

represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW THEREFORE, notwithstanding anything contained herein to the contrary, if said Principal or Surety shall fully perform and discharge the P&A Obligations in respect of the Property (as evidenced by providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations), then this Bond and the obligations hereunder shall be null and void.

ADDITIONALLY, if as to any Property, Obligee is required by the BOEMRE, or other governmental authority, to perform any of the P&A Obligations (or a demand is made upon Obligee by a co-obligor of Principal to contribute toward the costs of performing any of the P&A Obligations), then prior to any performance by Obligee with respect to the P&A Obligations (or payment by Obligee to Principal's co-obligor of a share of the estimated costs of performing the P&A Obligations if a demand for such payment is made on Obligee), Surety agrees to pay to Obligee an amount reasonably estimated by Obligee as necessary or appropriate to perform the P&A Obligations (or to pay its share of the estimated costs for the P&A Obligations if demand is made by Principal's co-obligor) in an amount up to, but not exceeding, the penal amount of this Bond.

FURTHERMORE, it is agreed that Surety shall have no obligation to Principal, Obligee or any other person or entity for any loss suffered by Principal, Obligee or any other person or entity by reason of acts or omissions which are or could be covered by Obligee's or Principal's general liability insurance, products liability insurance or completed operations insurance. In no event shall Surety be obligated to pay, in the aggregate, for all claims hereunder, an amount exceeding the penal sum of this Bond.

It is further agreed that Surety shall not be liable for any provisions of the Agreement or specifications respecting the procurement of or coverages provided by any insurance, nor shall Surety be liable under any hold harmless and/or indemnification agreements entered into by Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in performing the P&A Obligations.

If Principal fails to perform any of the P&A Obligations in accordance with the terms of the Agreement, then Principal shall have 30 days following receipt of notice of default from Obligee in which to fully cure or remedy such default. Obligee agrees to provide Surety with a

copy of each such default notice. If the default covered by such default notice is not cured or remedied within such 30 day period, then upon the expiration of such 30 day period such default shall constitute a "Principal Default" for purposes of this Bond. Any suit under this Bond with respect to a Principal Default must be instituted before the expiration of one (1) year from the date of such Principal Default, and subject to such one (1) year time limitation, Surety irrevocably consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said courts.

No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits or Schedules attached thereto shall release Principal and Surety or any of them from their liability under this Bond, notice to Surety of any such amendment or supplement being hereby waived.

No (i) assignment of the Agreement or of the Lease by Principal, its successors and assigns, (ii) delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal, (iii) lack of enforceability or other defense or offset right in respect of any obligation of Principal or right of Obligee under the Agreement or otherwise in respect of the P&A Obligations, or (iv) the insolvency, bankruptcy or receivership of Principal, shall in any degree relieve Principal or Surety (as applicable) of any of its obligations under this Bond.

HOWEVER, if upon assignment of the Agreement or the Lease or any of the Property by Principal, its successors or assigns, Principal shall cause its assignee (i) to post security with Obligee, in the form of a bond or other security, in the amount of and covering the same obligations as stated herein, and otherwise containing terms and issued by parties that are approved by Obligee and (ii) to assume (in a written instrument approved by Obligee) all P&A Obligations in respect of the Property, then Obligee will accept such security in lieu of this Bond and issue an unconditional release of this Bond within 60 days of Obligee's acceptance of such other security (provided, there shall be excluded from such release any obligations required to be performed by Principal or Surety under this Bond prior to the date of such assignment; and provided further, no such release of this Bond shall limit or modify any of the obligations of the Principal under the Agreement).

No right or action shall accrue on this Bond to or for the use of any person or entity other than Principal and Obligee and their respective successors and assigns.

This Bond may not be amended, supplemented or modified except pursuant to a written instrument duly executed by Principal and Surety and consented to in writing by Obligee, whether pursuant to the terms and provisions of Article 6.4 of the Agreement or as mutually agreed to by such parties. No course of conduct, dealing or performance shall amend, supplement or modify this Bond unless incorporated into a written instrument referenced in the preceding sentence. This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws rules and principles.

Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) the full performance of the P&A Obligations by Principal and (ii) the full performance by Surety of its obligations under this Bond, but in no instance later than 30 days

following Surety or Principal providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations.

IN WITNESS WHEREOF, the Principal and Surety have executed this instrument under their seals this 29th day of September, 2010, the name and seal of each such party being hereto affixed and those presents duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESS/ATTEST:

_____

Black Elk Energy Offshore Operations, LLC
(Principal)

By:_____(Seal)
Name: James Hagemeier
Title: CFO & Vice President

Westchester Fire Insurance Company
(Surety)

By_____(Seal)
Teresa D. Kelly, Attorney-In-Fact

OBLIGEE ACCEPTANCE:

Nippon Oil Exploration U.S.A. Limited
(Obligee)

By:_____(Seal)
Name: STEVEN R. FLY
Title: VICE PRESIDENT

Date:  September 30, 2010

4

Attachment

- Annex 1

**Annex 1**
**to**
**Bond No. K08024807**

| Field Name | Block | Lease No. | Bond Amount |
|---|---|---|---|
| GI116 (Hickory) | GI116<br>GI110 | OCS-G 13944<br>OCS-G 13943 | $975,000.00 |

# Power of Attorney

**WESTCHESTER FIRE INSURANCE COMPANY**

273207

1275627

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the State of New York, having its principal office in the City of Atlanta, Georgia, pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into the ordinary course of business (each a "Written Commitment"):

(1)   Each of the Chairman, the President and the Vice-Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2)   Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such persons written appointment as such attorney-in-fact.

(3)   Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4)   Each of the Chairman, the President and Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing to any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5)   The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

FURTHER RESOLVED, that the Resolution of the Board of Directors of the Company adopted at the meeting held on November 8, 1999 relating to the authorization of certain persons to execute, for and on behalf of the Company, Written Commitments and appointments and delegations, is hereby rescinded.

Does hereby nominate, constitute and appoint **TERESA D. KELLY, BENJAMIN D. WILCOX, DAN W. BURTON and CANDACE D. BOSHEERS** all of the City of Houston, State of Texas, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten Million Dollars ($10,000,000) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 25th day of September 2008.

**WESTCHESTER FIRE INSURANCE COMPANY**

Stephen M. Haney, Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA      ss.

On this 25th day of September, A.D. 2008, before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney, Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 26, 2010

Notary Public

I, the undersigned Assistant Secretary of **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 20th day of September 2010.

William L. Kelly, Assistant Secretary

**THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER September 25, 2010**



FORM NO. 88006

THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES         THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.

002892207

**BOND No. 105375541**

KNOW ALL PERSONS BY THESE PRESENTS:

THAT, Black Elk Energy Offshore Operations, LLC ("Principal"), a Texas Limited Liability Company, with its principal offices at 11451 Katy Freeway, Suite 500, Houston, TX 77079, and Travelers Casualty and Surety Company of America ("Surety"), with an office at 4650 Westway Park Blvd., Houston, TX. 77041-2036, are held and firmly bound unto Nippon Oil Exploration U.S.A. Limited ("Obligee"), with its principal office at 5847 San Felipe, Suite 2800, Houston, TX 77057, in the penal sum of One Hundred Twenty-Eight Thousand and No/100 Dollars ($128,000.00) lawful money of the United States of America for the payment of which penal sum Principal and Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS, Principal has entered into a Purchase and Sale Agreement (the "Agreement") with Obligee dated as of August 5, 2010 which provides for the sale and assignment, from Obligee to the Principal, of the interests of Obligee in certain oil and gas leases and properties including the oil and gas lease(s) described on Annex 1 to this Bond (whether one or more, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells (whether one or more, the "Well"), platforms, facilities, equipment, pipelines and personal property existing on the Lease as of the date of the Agreement (the Lease, the Well and such platforms, facilities, equipment, pipelines and personal property being collectively referred to as the "Property");

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of the Lease, whether by operation of law or otherwise, this Bond shall remain in full force and effect until the P&A Obligations (as such term is defined below) have been fully performed and discharged;

WHEREAS, as used in this Bond the term "P&A Obligations" means all obligations and liabilities of Principal concerning: (i) properly plugging, re-plugging and abandoning the Well, (ii) the dismantling, decommissioning, abandoning and removing of the Well and Property, and (iii) cleaning up, restoration and/or remediation of the Property in accordance with the Lease, regulations, orders and directives of the U.S. Department of the Interior, Bureau of Ocean Energy Management, Regulation, and Enforcement ("BOEMRE") and any other state or federal governmental authority; and applicable laws (including environmental laws).

WHEREAS, Principal has promised to deliver to Obligee this Bond prior to the consummation of the sale and assignment of the Property to Principal pursuant to the Agreement;

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and

represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, any notice required under the terms of this Bond may be served by certified mail or overnight courier upon:

Travelers Casualty and Surety Company of America, Attention: Vice President, Commercial Surety Bond Claims, One Tower Square, Hartford, Connecticut 06183 (As to Surety).

Nippon Oil Exploration U.S.A. Limited, 5847 San Felipe, Suite 2800, Houston, TX 77057 (As to Obligee)

Black Elk Energy Offshore Operations, LLC, 11451 Katy Freeway, Suite 500, Houston, TX 77079 (As to Principal)

WHEREAS, Surety represents that:

Corporation Service Company, 211 E. 7th Street, Austin, TX 78701-3218

is Surety's authorized agent for service of process in the State of Texas, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW THEREFORE, notwithstanding anything contained herein to the contrary, if said Principal or Surety shall fully perform and discharge the P&A Obligations in respect of the Property (as evidenced by providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations), then this Bond and the obligations hereunder shall be null and void.

ADDITIONALLY, if as to any Property, Obligee is required by the BOEMRE, or other governmental authority, to perform any of the P&A Obligations (or a demand is made upon Obligee by a co-obligor of Principal to contribute toward the costs of performing any of the P&A Obligations), then prior to any performance by Obligee with respect to the P&A Obligations (or payment by Obligee to Principal's co-obligor of a share of the estimated costs of performing the P&A Obligations if a demand for such payment is made on Obligee), Surety agrees to pay to Obligee an amount reasonably estimated by Obligee as necessary or appropriate to perform the P&A Obligations (or to pay its share of the estimated costs for the P&A Obligations if demand is made by Principal's co-obligor) in an amount up to, but not exceeding, the penal amount of this Bond.

FURTHERMORE, it is agreed that Surety shall have no obligation to Principal, Obligee or any other person or entity for any loss suffered by Principal, Obligee or any other person or

2

entity by reason of acts or omissions which are or could be covered by Obligee's or Principal's general liability insurance, products liability insurance or completed operations insurance. In no event shall Surety be obligated to pay, in the aggregate, for all claims hereunder, an amount exceeding the penal sum of this Bond.

It is further agreed that Surety shall not be liable for any provisions of the Agreement or specifications respecting the procurement of or coverages provided by any insurance, nor shall Surety be liable under any hold harmless and/or indemnification agreements entered into by Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in performing the P&A Obligations.

If Principal fails to perform any of the P&A Obligations in accordance with the terms of the Agreement, then Principal shall have 30 days following receipt of notice of default from Obligee in which to fully cure or remedy such default. Obligee agrees to provide Surety with a copy of each such default notice. If the default covered by such default notice is not cured or remedied within such 30 day period, then upon the expiration of such 30 day period such default shall constitute a "Principal Default" for purposes of this Bond. Any suit under this Bond with respect to a Principal Default must be instituted before the expiration of one (1) year from the date of such Principal Default, and subject to such one (1) year time limitation, Surety irrevocably consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said courts.

No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits or Schedules attached thereto shall release Principal and Surety or any of them from their liability under this Bond, notice to Surety of any such amendment or supplement being hereby waived.

No (i) assignment of the Agreement or of the Lease by Principal, its successors and assigns, (ii) delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal, (iii) lack of enforceability or other defense or offset right in respect of any obligation of Principal or right of Obligee under the Agreement or otherwise in respect of the P&A Obligations, or (iv) the insolvency, bankruptcy or receivership of Principal, shall in any degree relieve Principal or Surety (as applicable) of any of its obligations under this Bond.

HOWEVER, if upon assignment of the Agreement or the Lease or any of the Property by Principal, its successors or assigns, Principal shall cause its assignee (i) to post security with Obligee, in the form of a bond or other security, in the amount of and covering the same obligations as stated herein, and otherwise containing terms and issued by parties that are approved by Obligee and (ii) to assume (in a written instrument approved by Obligee) all P&A Obligations in respect of the Property, then Obligee will accept such security in lieu of this Bond and issue an unconditional release of this Bond within 60 days of Obligee's acceptance of such other security (provided, there shall be excluded from such release any obligations required to be performed by Principal or Surety under this Bond prior to the date of such assignment; and provided further, no such release of this Bond shall limit or modify any of the obligations of the Principal under the Agreement).

No right or action shall accrue on this Bond to or for the use of any person or entity other than Principal and Obligee and their respective successors and assigns.

This Bond may not be amended, supplemented or modified except pursuant to a written instrument duly executed by Principal and Surety and consented to in writing by Obligee, whether pursuant to the terms and provisions of Article 6.4 of the Agreement or as mutually agreed to by such parties.   No course of conduct, dealing or performance shall amend, supplement or modify this Bond unless incorporated into a written instrument referenced in the preceding sentence.   This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws rules and principles.

Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) the full performance of the P&A Obligations by Principal and (ii) the full performance by Surety of its obligations under this Bond, but in no instance later than 30 days following Surety or Principal providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations.

IN WITNESS WHEREOF, the Principal and Surety have executed this instrument under their seals this 29th day of September, 2010, the name and seal of each such party being hereto affixed and those presents duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESS/ATTEST:

Black Elk Energy Offshore Operations, LLC
(Principal)

By: _____ (Seal)
Name: James Hagemeier
Title: CFO & Vice President

Travelers Casualty and Surety Co. of America
(Surety)

By: _____ (Seal)
Teresa D. Kelly, Attorney-In-Fact

OBLIGEE ACCEPTANCE:

Nippon Oil Exploration U.S.A. Limited
(Obligee)

By: _____ (Seal)
Name: STEVEN R. FLY
Title: VICE PRESIDENT

Date: September 30, 2010

4

<u>Attachment</u>

- Annex 1

**Annex 1**
**to**
**Bond No. <u>105375541</u>**

| Field Name | Block | Lease No. | Bond Amount |
|---|---|---|---|
| Specter | VK 824 | OCS-G 15436 | $128,000.00 |

**TRAVELERS**

**POWER OF ATTORNEY**

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.   219916

Certificate No. 003140339

**KNOW ALL MEN BY THESE PRESENTS**: That St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, that Farmington Casualty Company, Travelers Casualty and Surety Company, and Travelers Casualty and Surety Company of America are corporations duly organized under the laws of the State of Connecticut, that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Teresa D. Kelly, Dan W. Burton, Benjamin D. Wilcox, and Candace D. Bosheers

of the City of ___Houston___, State of ___Texas___, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this ___21st___ day of ___July___ ___2009___.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _George W. Thompson_
George W. Thompson, Senior Vice President

On this the ___21st___ day of ___July___, ___2009___, before me personally appeared George W. Thompson, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof**, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2011.

_Marie C. Tetreault_
Marie C. Tetreault, Notary Public

58440-4-09 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, Kori M. Johanson, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Companies this 29th day of September, 20 10.

Kori M. Johanson, Assistant Secretary

       

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER.

**BOND NO. K08024881**

KNOW ALL PERSONS BY THESE PRESENTS:

THAT, Black Elk Energy Offshore Operations, LLC ("Principal"), a Texas Limited Liability Company, with its principal offices at 11451 Katy Freeway, Suite 500, Houston, TX 77079, and Westchester Fire Insurance Company ("Surety"), with an office at 525 West Monroe, Suite 500, Chicago, IL 60661, are held and firmly bound unto Nippon Oil Exploration U.S.A. Limited ("Obligee"), with its principal office at 5847 San Felipe, Suite 2800, Houston, TX 77057, in the penal sum of Seven Hundred Fifty-Six Thousand and No/100 Dollars ($756,000.00) lawful money of the United States of America for the payment of which penal sum Principal and Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS, Principal has entered into a Purchase and Sale Agreement (the "Agreement") with Obligee dated as of August 5, 2010 which provides for the sale and assignment, from Obligee to the Principal, of the interests of Obligee in certain oil and gas leases and properties including the oil and gas lease(s) described on Annex 1 to this Bond (whether one or more, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells (whether one or more, the "Well"), platforms, facilities, equipment, pipelines and personal property existing on the Lease as of the date of the Agreement (the Lease, the Well and such platforms, facilities, equipment, pipelines and personal property being collectively referred to as the "Property");

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of the Lease, whether by operation of law or otherwise, this Bond shall remain in full force and effect until the P&A Obligations (as such term is defined below) have been fully performed and discharged;

WHEREAS, as used in this Bond the term "P&A Obligations" means all obligations and liabilities of Principal concerning: (i) properly plugging, re-plugging and abandoning the Well, (ii) the dismantling, decommissioning, abandoning and removing of the Well and Property, and (iii) cleaning up, restoration and/or remediation of the Property in accordance with the Lease, regulations, orders and directives of the U.S. Department of the Interior, Bureau of Ocean Energy Management, Regulation, and Enforcement ("BOEMRE") and any other state or federal governmental authority; and applicable laws (including environmental laws).

WHEREAS, Principal has promised to deliver to Obligee this Bond prior to the consummation of the sale and assignment of the Property to Principal pursuant to the Agreement;

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW THEREFORE, notwithstanding anything contained herein to the contrary, if said Principal or Surety shall fully perform and discharge the P&A Obligations in respect of the Property (as evidenced by providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations), then this Bond and the obligations hereunder shall be null and void.

ADDITIONALLY, if as to any Property, Obligee is required by the BOEMRE, or other governmental authority, to perform any of the P&A Obligations (or a demand is made upon Obligee by a co-obligor of Principal to contribute toward the costs of performing any of the P&A Obligations), then prior to any performance by Obligee with respect to the P&A Obligations (or payment by Obligee to Principal's co-obligor of a share of the estimated costs of performing the P&A Obligations if a demand for such payment is made on Obligee), Surety agrees to pay to Obligee an amount reasonably estimated by Obligee as necessary or appropriate to perform the P&A Obligations (or to pay its share of the estimated costs for the P&A Obligations if demand is made by Principal's co-obligor) in an amount up to, but not exceeding, the penal amount of this Bond.

FURTHERMORE, it is agreed that Surety shall have no obligation to Principal, Obligee or any other person or entity for any loss suffered by Principal, Obligee or any other person or entity by reason of acts or omissions which are or could be covered by Obligee's or Principal's general liability insurance, products liability insurance or completed operations insurance. In no event shall Surety be obligated to pay, in the aggregate, for all claims hereunder, an amount exceeding the penal sum of this Bond.

It is further agreed that Surety shall not be liable for any provisions of the Agreement or specifications respecting the procurement of or coverages provided by any insurance, nor shall Surety be liable under any hold harmless and/or indemnification agreements entered into by Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in performing the P&A Obligations.

If Principal fails to perform any of the P&A Obligations in accordance with the terms of the Agreement, then Principal shall have 30 days following receipt of notice of default from Obligee in which to fully cure or remedy such default. Obligee agrees to provide Surety with a copy of each such default notice. If the default covered by such default notice is not cured or remedied within such 30 day period, then upon the expiration of such 30 day period such default shall constitute a "Principal Default" for purposes of this Bond. Any suit under this Bond with

2

respect to a Principal Default must be instituted before the expiration of one (1) year from the date of such Principal Default, and subject to such one (1) year time limitation, Surety irrevocably consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said courts.

No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits or Schedules attached thereto shall release Principal and Surety or any of them from their liability under this Bond, notice to Surety of any such amendment or supplement being hereby waived.

No (i) assignment of the Agreement or of the Lease by Principal, its successors and assigns, (ii) delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal, (iii) lack of enforceability or other defense or offset right in respect of any obligation of Principal or right of Obligee under the Agreement or otherwise in respect of the P&A Obligations, or (iv) the insolvency, bankruptcy or receivership of Principal, shall in any degree relieve Principal or Surety (as applicable) of any of its obligations under this Bond.

HOWEVER, if upon assignment of the Agreement or the Lease or any of the Property by Principal, its successors or assigns, Principal shall cause its assignee (i) to post security with Obligee, in the form of a bond or other security, in the amount of and covering the same obligations as stated herein, and otherwise containing terms and issued by parties that are approved by Obligee and (ii) to assume (in a written instrument approved by Obligee) all P&A Obligations in respect of the Property, then Obligee will accept such security in lieu of this Bond and issue an unconditional release of this Bond within 60 days of Obligee's acceptance of such other security (provided, there shall be excluded from such release any obligations required to be performed by Principal or Surety under this Bond prior to the date of such assignment; and provided further, no such release of this Bond shall limit or modify any of the obligations of the Principal under the Agreement).

No right or action shall accrue on this Bond to or for the use of any person or entity other than Principal and Obligee and their respective successors and assigns.

This Bond may not be amended, supplemented or modified except pursuant to a written instrument duly executed by Principal and Surety and consented to in writing by Obligee, whether pursuant to the terms and provisions of Article 6.4 of the Agreement or as mutually agreed to by such parties. No course of conduct, dealing or performance shall amend, supplement or modify this Bond unless incorporated into a written instrument referenced in the preceding sentence. This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws rules and principles.

Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) the full performance of the P&A Obligations by Principal and (ii) the full performance by Surety of its obligations under this Bond, but in no instance later than 30 days following Surety or Principal providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed

3

by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations.

IN WITNESS WHEREOF, the Principal and Surety have executed this instrument under their seals this 29th day of September, 2010, the name and seal of each such party being hereto affixed and those presents duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESS/ATTEST:

Black Elk Energy Offshore Operations, LLC
(Principal)

By: _____ (Seal)
Name: James Hagemeier
Title: CFO & Vice President

Westchester Fire Insurance Company
(Surety)

By _____ (Seal)
Teresa D. Kelly, Attorney-In-Fact

OBLIGEE ACCEPTANCE:

Nippon Oil Exploration U.S.A. Limited
(Obligee)

By: _____ (Seal)
Name: STEVEN R. FLY
Title: VICE PRESIDENT

Date: September 30, 2010

4

<u>Attachment</u>

- Annex 1

**Annex 1**
**to**
**Bond No. <u>K08024881</u>**

| Field Name | Block | Lease No. | Bond Amount |
|---|---|---|---|
| WD133 | WD121<br>WD122 | OCS-G 19843<br>OCS-G 13645 | $756,000.00 |

# Power of Attorney

**WESTCHESTER FIRE INSURANCE COMPANY**

1275635

273207

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the State of New York, having its principal office in the City of Atlanta, Georgia, pursuant to the following Resolution, adopted by the Board of Directors of the said Company on December 11, 2006, to wit:

"RESOLVED, that the following authorizations relate to the execution, for and on behalf of the Company, of bonds, undertakings, recognizances, contracts and other written commitments of the Company entered into in the ordinary course of business (each a "Written Commitment"):

(1) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise.

(2) Each duly appointed attorney-in-fact of the Company is hereby authorized to execute any Written Commitment for and on behalf of the Company, under the seal of the Company or otherwise, to the extent that such action is authorized by the grant of powers provided for in such person's written appointment as such attorney-in-fact.

(3) Each of the Chairman, the President and the Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to appoint in writing any person the attorney-in-fact of the Company with full power and authority to execute, for and on behalf of the Company, under the seal of the Company or otherwise, such Written Commitments of the Company as may be specified in such written appointment, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(4) Each of the Chairman, the President and Vice Presidents of the Company is hereby authorized, for and on behalf of the Company, to delegate in writing to any other officer of the Company the authority to execute, for and on behalf of the Company, under the Company's seal or otherwise, such Written Commitments of the Company as are specified in such written delegation, which specification may be by general type or class of Written Commitments or by specification of one or more particular Written Commitments.

(5) The signature of any officer or other person executing any Written Commitment or appointment or delegation pursuant to this Resolution, and the seal of the Company, may be affixed by facsimile on such Written Commitment or written appointment or delegation.

FURTHER RESOLVED, that the foregoing Resolution shall not be deemed to be an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and such Resolution shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

FURTHER RESOLVED, that the Resolution of the Board of Directors of the Company adopted at the meeting held on November 8, 1999 relating to the authorization of certain persons to execute, for and on behalf of the Company, Written Commitments and appointments and delegations, is hereby rescinded.

Does hereby nominate, constitute and appoint TERESA D. KELLY, BENJAMIN D. WILCOX, DAN W. BURTON and CANDACE D. BOSHEERS all of the City of Houston, State of Texas, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Ten Million Dollars ($10,000,000) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 25th day of September 2008.

**WESTCHESTER FIRE INSURANCE COMPANY**

Stephen M. Haney, Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA  ss.

On this 25th day of September, A.D. 2008, before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney, Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
KAREN E. BRANDT, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 26, 2010

Notary Public

I, the undersigned Assistant Secretary of **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Assistant Secretary, and affixed the corporate seal of the Corporation, this 29th day of September 2010.

William L. Kelly, Assistant Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER September 25, 2010.

FORM NO. 88005



THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES       THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.