IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | Re. Docket No. 185 |

**EMERGENCY ORDER (I) AUTHORIZING DEBTORS TO (A) ENTER INTO AND
PERFORM UNDER NEW POSTPETITION HEDGING AGREEMENTS
AND (B) GRANT RELATED LIENS AND SUPERPRIORITY CLAIMS,
(II) MODIFYING AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated August 18, 2020 (the "**Motion**")[2] of Fieldwood Energy LLC and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for entry of an order pursuant to sections 362, 363, 364, 1107, and 105(a) of the Bankruptcy Code, Bankruptcy Rules 4001, 6003, and 6004, and Bankruptcy Local Rules 4001-1 and 9013-1 (i) authorizing, but not directing, the Debtors to (a) enter into and perform under new Postpetition Hedging Agreements in the ordinary course of business, (b) honor, pay, or otherwise satisfy all obligations, liabilities, and indebtedness of the Debtors arising under the Postpetition Hedging Agreements (the "**Hedging Obligations**") as they come due, including

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

any fees and expenses incurred prior to the Petition Date, and (c) grant Superpriority Claims and Postpetition Hedging Liens to secure the Hedging Obligations, (ii) modifying the automatic stay, and (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the Hedging Declaration, and the Interim DIP Order; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003 and is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Debtors are authorized, but not directed, pursuant to sections 362, 363, 364, 1107, and 105(a) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004, to: (a) enter into and perform under new Postpetition Hedging Agreements, on terms mutually agreed between the Debtors and the Hedge Counterparties, in the ordinary course of business, consistent with the Hedging Practices, the Hedging Covenant in the DIP Term Sheet and Company's past practices;

(b) honor, pay, or otherwise satisfy as they become due all Hedging Obligations, including any fees and expenses incurred prior to the Petition Date, and (c) grant allowed Superpriority Claims and Postpetition Hedging Liens to secure the Hedging Obligations; *provided*, *however*, that the Debtors shall deliver to the Official Committee of Unsecured Creditors (the "**Committee**") each hedge confirmation within 3 (three) business days after execution and the Debtors shall provide monthly reporting to the Committee that shall include a schedule containing (i) the preceding month's outstanding hedge positions and (ii) the Company's current hedge positions.

      2.      As security and assurance of the Debtors' obligations arising under the Postpetition Hedging Agreements and in exchange for the Hedge Counterparties providing benefits to the Debtors in accordance with this Order:

    a.    with respect to the obligations, liabilities and indebtedness arising from the Postpetition Hedging Agreements, the Hedge Counterparties are hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically properly perfected Postpetition Hedging Liens in accordance with the terms of such Postpetition Hedging Agreements, without the necessity of the execution by the Debtors or the filing of security agreements, pledge agreements, mortgages, financing statements, or otherwise;

    b.    the obligations, liabilities and indebtedness arising from the Postpetition Hedging Agreements shall constitute Superpriority Claims against each of the Debtors, jointly and severally, that are *pari passu* with the DIP Obligations provided under the applicable DIP Order; and

    c.    the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit each Hedge Counterparty to immediately and unconditionally (but, for the avoidance of doubt, subject to any grace or cure periods under, and other provisions of, the documents governing the applicable Postpetition Hedging Agreement) exercise and enforce any and all rights and remedies provided for in the applicable Postpetition Hedging Agreement, including but not limited to rights and remedies relating to the suspension of performance thereunder, the termination, liquidation, or acceleration thereof, withholding of performance thereof, and setoff, netting, and application of any payment, settlement payment, termination value, termination payment, and any other amounts that the counterparty would be entitled to receive from or otherwise be obligated to pay to any Debtor under a Postpetition Hedging Agreement

NY 78197340V1
08/23/2020 2:37 PM
WEIL:\97600367\5\45327.0005

in accordance with the terms of such Postpetition Hedging Agreement without the need for any further Court order, and the exercise of any such rights and remedies by the Hedge Counterparties shall not be stayed, avoided, or otherwise limited as result of the pendency of these chapter 11 cases.

3. If any or all of the provisions of this Order are stayed and/or modified in a manner adverse to a Hedge Counterparty or vacated, or this Order otherwise terminates, such stay, modification, vacation or termination will not affect (a) the validity of any indebtedness, obligation or liability incurred by the Debtors to each Hedge Counterparty before the receipt of written notice by such Hedge Counterparty of the effective date of such stay, modification, vacation, or termination, (b) the validity or enforceability of the Postpetition Hedging Liens, Superpriority Claims, or netting, setoff, collection, and termination rights authorized or created by this Order, the Postpetition Hedging Agreements, or any related documents, as the case may be, for the benefit of the Hedge Counterparties, and (c) the rights of each Hedge Counterparty to exercise remedies as set forth in the Postpetition Hedging Agreements. Each Hedge Counterparty shall be entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code.

4. The relief and protections afforded by this Order shall survive any order that may be entered (a) converting any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; or (b) dismissing any of these chapter 11 cases and shall be in addition to any and all rights, powers or privileges provided for by the Postpetition Hedging Agreements.

5. The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to such obligations, to the extent that sufficient funds are on deposit in available funds in the applicable bank accounts to cover such payments. The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or

4

any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

6. Notwithstanding anything to the contrary herein, any payment to be made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court (1) approving the Debtors' entry into any postpetition debtor in possession financing facility, including any budget and the terms of any definitive documentation in connection therewith (the "**DIP Documents**"), and/or (2) authorizing the Debtors' use of cash collateral and/or any budget in connection therewith (in either case, the "**DIP Order**").  To the extent there is any inconsistency between the terms of the DIP Order or any DIP Documents, on the one hand, and this Order, on the other hand, the terms of the DIP Order or such DIP Document, as applicable, shall control.  Notwithstanding anything in the DIP Order to the contrary, the Hedging Obligations shall be secured by liens in all DIP Collateral, which shall be *pari passu* with the DIP Liens and have the same priority as the DIP Liens.

7. Nothing contained in the Motion or this Order or any payment made pursuant to the authority granted by this Order is intended to be or shall be deemed to be (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code.

8. Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

NY 78197340V1
08/23/2020 2:37 PM
WEIL:\97600367\5\45327.0005

9. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2020
       Houston, Texas

                                          _____
                                          THE HONORABLE MARVIN ISGUR
                                          UNITED STATES BANKRUPTCY JUDGE

NY 78197340V1
08/23/2020 2:37 PM
WEIL:\97600367\5\45327.0005