**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN AND**
**EMPLOY ALIXPARTNERS, LLP AS FINANCIAL ADVISOR**
**TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

> **THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this application (the "**Application**"):

### Background

1.     Commencing August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

(the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

3.      On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

4.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are an independent exploration and production ("**E&P**") company in the Gulf of Mexico. The Company is focused on the exploration and development of offshore oil and gas assets in the shallow water and deepwater Gulf of Mexico and the Gulf Coast region in the U.S.

5.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Dane in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 29) (the "**Dane Declaration**"), which was previously filed with the Court and is incorporated by reference herein.

## Jurisdiction

6.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

7.      By this application, pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1, the Debtors request entry of an order (i) authorizing the Debtors to retain and employ AlixPartners, LLP ("**AlixPartners**") as financial advisor to the Debtors, effective as of the Petition Date, pursuant to that certain engagement letter by and among the Debtors and AlixPartners, dated May 15, 2020 (the "**Engagement Letter**"),[2] a copy of which is attached hereto as **Exhibit A** and (ii) granting related relief.

8.      In support of this Application, the Debtors submit the *Declaration of John Castellano* (the "**Castellano Declaration**"), attached hereto as **Exhibit B**.

9.      A proposed form of order granting the relief requested herein (the "**Proposed Order**") is attached hereto as **Exhibit C**.

**AlixPartners' Qualifications**

10.     The Debtors have determined that the services of AlixPartners are necessary to assist the Debtors in their reorganization.  AlixPartners is well qualified to provide financial advisory services in light of its knowledge of the Debtors and the industry in which the Debtors operate, and its experience in providing financial and restructuring advisory services in large, complex chapter 11 cases.  AlixPartners performs an array of restructuring advisory, financial, tax, and consulting services for companies throughout the oil and gas industry and has an intimate understanding of the economic, regulatory, operational, strategic, and financial factors that drive the oil and gas industry and related businesses.  This expertise ideally positions AlixPartners to

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

advise the Debtors' management and other professionals in connection with the Debtors' operations and to assist with the myriad issues that may arise in these chapter 11 cases.

11.     AlixPartners specializes in turnaround consulting, operational due diligence, complex financial reporting, creditor advisory services, tax advisory services, and financial and operational restructuring, among other things.  The Debtors understand that AlixPartners has a particular expertise in the oil and gas industry and geographies in which the Debtors operate.  AlixPartners' prior experience includes a wide range of activities and services targeted at crisis management, restructuring, stabilizing, and improving a company's financial position, including, among others: providing executive leadership to financially distressed companies; developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.  In the past, AlixPartners has provided interim management, restructuring advisory services and/or strategic advice to companies of similar size to the Debtors, as well as creditors, investors and other parties in interest in matters such as, among others: *In re Intelsat S.A.*, No. 20-32299 (KLP) (Bankr. E.D. Va. July 6, 2020); *In re J. C. Penney Co., Inc.*, No. 20-20182 (DRJ) (Bankr. S.D. Tex. July 2, 2020); *In re Aldrich Pump LLC*, No. 20-30608 (JCW) (Bankr. W.D.N.C. June 18, 2020); *In re Chinos Holdings, Inc.*, No. 20-32181 (KLP) (Bankr. E.D. Va. May 28, 2020); *In re LSC Commc'ns, Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. May 12, 2020); *In re Tri-Point Oil & Gas Prod. Sys., Inc.*, No. 20-31777 (DRJ) (Bankr. S.D. Tex. Apr. 25, 2020); *In re Sheridan Holding Co. I, LLC*, No. 20-31884 (MI) (Bankr. S.D. Tex. Apr. 24, 2020); *In re Alta Mesa Res., Inc.*, No. 19-35133 (MI) (Bankr. S.D. Tex. Apr. 21, 2020); *In re Sheridan Holding Co. II, LLC*, No. 19-35198 (MI) (Bankr. S.D. Tex. Oct. 21, 2019); *In re Hexion Holdings*

*LLC*, No. 19-10684 (KG) (Bankr. D. Del. May 1, 2019); *In re Ditech Holding Corp.*, No. 19-10412 (JLG) (Bankr. S.D.N.Y. Mar. 25, 2019); *In re David's Bridal, Inc.*, No. 18-12635 (LSS) (Bankr. D. Del. Dec. 18, 2018); *In re The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Mar. 6, 2018); *In re Mem'l Prod. Partners*, No. 17-30262 (MI) (Bankr. S.D. Tex. Feb. 27, 2017); *In re Linn Energy*, No. 16-60040 (DRJ) (Bankr. S.D. Tex. Jun. 27, 2016); *In re C&J Energy Servs.*, No. 16-33590 (DRJ) (Bankr. S.D. Tex. Sept. 2, 2016); *In re Aspect Software Parent, Inc.*, No. 16-10597 (MFW) (Bank D. Del. Apr. 22, 2016); *In re SH130 Concession Co., LLC*, No. 16-10262 (TMD) (Bank. W.D. Tex. Apr. 14, 2016); *In re Paragon Offshore PLC*, No. 16-10386 (CSS) (Bank. D. Del. Apr. 5, 2016); *In re Ryckman Creek Res., LLC*, No. 16-10292 (KJC) (Bankr. D. Del. Feb. 9, 2016); *In re Walter Energy, Inc.*, No. 15-02741 (TOM) (Bankr. N.D. Ala. Sept. 8, 2015); *In re Molycorp Inc.*, No. 15-11362 (CJS) (Bankr. D. Del. Jul. 17, 2015); *In re ERG Intermediate Holdings, LLC*, No. 15-31858 (HDH) (Bankr. N.D. Tex. Jun. 11, 2015); and *In re Altegrity, Inc.*, No. 15-10226 (LSS) (Bankr. D. Del. Mar. 16, 2015).

12.     Since approximately May 15, 2020, AlixPartners has provided services to the Debtors in connection with their restructuring efforts. In providing such prepetition professional services to the Debtors, AlixPartners has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, debt structure, operations and related matters. Having worked closely with the Debtors' management and their other advisors, AlixPartners has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. Accordingly, AlixPartners is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

13.     For these reasons, the Debtors believe that AlixPartners is well qualified and uniquely suited to act as financial advisor to the Debtors.

### Scope of Services

14.     Prior to the Petition Date, the Debtors, Weil, Gotshal & Manges LLP, and AlixPartners entered into the Engagement Letter, which governs the relationship among them.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and AlixPartners and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Subject to further order of the Court, AlixPartners may provide the services described in the Engagement Letter as AlixPartners and the Debtors shall deem appropriate and feasible to advise the Debtors in the course of these chapter 11 cases, including, but not limited to, the following (the "**Services**"):

- Assist the Debtors with development of contingency plans and financial alternatives in the event an out-of-court restructuring cannot be achieved.

- Assist the Debtors with their communications and/or negotiations with outside parties including the Debtors' vendors, stakeholders, banks and potential acquirers of Debtors' assets.

- Review the Debtors' rolling 13-week cash receipts and disbursements forecasting tool designed to provide on-time information related to the Debtors' liquidity.

- Assist the Debtors in the design and implementation of a restructuring strategy designed to maximize enterprise value, taking into account the unique interests of all constituencies.

- Assist the Debtors with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

15.     When necessary, the individuals working on this matter (the "**AlixPartners Personnel**") will be assisted by or replaced by professionals at various levels.

16.     To the extent that AlixPartners uses the services of independent contractors (the "**Independent Contractors**") in these chapter 11 cases, AlixPartners will (i) pass-through the

cost of such Independent Contractors to the Debtors at the same rate that AlixPartners pays the Independent Contractors; (ii) ensure that the Independent Contractors review the list of interested parties; and (iii) coordinate with the Independent Contractors to file with the Court any such disclosures required by Bankruptcy Rule 2014.

### No Duplication of Services

17.     The services provided by AlixPartners will complement, and not duplicate, the services to be rendered by any other professionals retained in these chapter 11 cases.

### Professional Compensation

18.     AlixPartners will be paid by the Debtors for its Services in accordance with the terms and conditions set forth in the Engagement Letter (the "**Fee and Expense Structure**"). Subject to approval by the Court, the Debtors propose to (i) compensate AlixPartners for the services set forth in the Engagement Letter on an hourly basis in accordance with AlixPartners' ordinary and customary rates in effect on the date such services are rendered and (ii) reimburse actual and necessary costs and expenses incurred by AlixPartners in connection with all services performed on behalf of the Debtors.

19.     In accordance with the terms of the Engagement Letter, the current hourly rates for the AlixPartners Personnel are within the following ranges:

| Title | Hourly Rate |
|---|---|
| Managing Director | $1,000 - $1,195 |
| Director | $800 - $950 |
| Senior Vice President | $645 - $735 |
| Vice President | $470 - $630 |
| Consultant | $175 - $465 |
| Paraprofessional | $295 - $315 |

20.     In the normal course of business, AlixPartners may periodically adjust its billing rates.  Changes in applicable hourly rates will be noted on the invoices for the first time period in which the revised rates became effective.

21.     In addition to compensation for professional services rendered by AlixPartners Personnel, AlixPartners will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including but not limited to transportation costs, lodging, and meals.

22.     To the extent AlixPartners requires services of its international divisions or personnel from specialized practices, the standard hourly rates for that international division or specialized practice will apply.

23.     To the best of the Debtors' knowledge, there is no agreement or understanding between AlixPartners and any nonaffiliated person or entity for sharing compensation received, or to be received, for services rendered in connection with the Debtors' chapter 11 cases.  The Fee and Expense Structure is consistent with and typical of compensation arrangements entered into by AlixPartners and other comparable firms that render similar services under similar circumstances. The Debtors believe that the Fee and Expense Structure is reasonable, market-based, and designed to compensate AlixPartners fairly for its work and to cover fixed and routine overhead expenses. The Debtors therefore submit that the Fee and Expense Structure is fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

24.     The Debtors propose that the U.S. Trustee will retain the right to object to the compensation to be paid to AlixPartners pursuant to the Engagement Letter based on the reasonableness standard provided for in section 330 of the Bankruptcy Code.

25.     AlixPartners intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the United States Trustee Fee Guidelines effective November 1, 2013 (the "**UST Guidelines**"), and any other applicable procedures and orders of the Court, including any order approving this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

26.     AlixPartners will maintain records, in 1/10th of an hour increments, in support of any fees incurred in connection with services rendered in these chapter 11 cases. Records will be arranged by category and nature of the services rendered and will include reasonably detailed descriptions of those services provided on behalf of the Debtors.

27.     AlixPartners will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. AlixPartners' applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with any procedures established by the Court; provided that, in connection with AlixPartners' request for reimbursement for fees, disbursement, and other charges of its external legal counsel in respect of its retention and its fee applications, the invoices and supporting time records from such attorneys shall be included in AlixPartners' own interim and final applications, and they shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

28.     AlixPartners received a retainer in the amount of $125,000 from the Debtors (the "**Retainer**").  According to AlixPartners' books and records, during the 90-day period prior to the Petition Date, the Debtors paid AlixPartners $1,333,284.00 in aggregate for professional services performed and expenses incurred, including advanced payments of $167,000 and the Retainer.

29.     Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately prior to, and subsequent to, the Petition Date, AlixPartners may have incurred fees and reimbursable expenses that relate to the prepetition period which remain unpaid.  Approval is sought from this Court for AlixPartners to apply the Retainer to these amounts.  Upon the entry of the Proposed Order approving the relief requested herein, the Debtors will not owe AlixPartners any sums for prepetition services.

30.     Any balance of the Retainer will constitute an evergreen retainer as security for postpetition services and expenses.

### Indemnification

31.     The Engagement Letter contains standard indemnification language with respect to AlixPartners' services, including, without limitation, an agreement by the Debtors to indemnify AlixPartners and its affiliates, partners, directors, officers, employees and agents (each, an "**AlixPartners Party**" and collectively, the "**AlixPartners Parties**") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Engagement Letter (the "**Indemnification Provisions**").  The foregoing indemnification obligation shall not apply in the event that a court of competent jurisdiction finally determines that such claims, losses, expenses and damages resulted from the willful misconduct, bad faith, gross negligence or actual fraud of an AlixPartners Party.

32.     The Debtors and AlixPartners believe that the Indemnification Provisions contained in the Engagement Letter, as modified by the Proposed Order, are customary and reasonable. The terms and conditions of the Indemnification Provisions were negotiated by the Debtors and AlixPartners at arm's length and in good faith. The provisions contained in the Engagement Letter, as modified by the Proposed Order and viewed in conjunction with the other terms of AlixPartners' proposed retention, are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require AlixPartners' services to successfully reorganize. The Debtors request that this Court approve the indemnification provisions as set forth in the Engagement Letter and as modified by the Proposed Order.

### AlixPartners' Disinterestedness

33.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Castellano Declaration, AlixPartners (a) is a "disinterested person" (within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and supplemented by section 1107(b) of the Bankruptcy Code) and does not hold or represent an interest materially adverse to the Debtors' estates; (b) has no connection to the Debtors, their creditors or other parties-in-interest in these chapter 11 cases, or the attorneys or accountants of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee; and (c) does not hold any interest adverse to the Debtors' estates.

34.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of AlixPartners' retention are discovered or arise, AlixPartners will use reasonable efforts to promptly file a supplemental declaration.

## Relief Requested Should Be Granted

**A.      The Debtors' Retention of AlixPartners on the Terms in the Engagement Letter is Authorized under Sections 327 and 328 of the Bankruptcy Code**

35.      The Debtors submit that the retention of AlixPartners under the terms described herein is appropriate under sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code empowers debtors, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under" the Bankruptcy Code. 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). Further, Bankruptcy Rule 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). For the reasons set forth in the Castellano Declaration, the exhibits thereto and as otherwise addressed herein, the Debtors believe that AlixPartners is a disinterested person within the meaning of section 101(14) of the Bankruptcy Code.

36.     Furthermore, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). AlixPartners' prepetition relationship with the Debtors therefore does not preclude AlixPartners' retention as the Debtors' postpetition financial advisor.

37.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person under section 327 "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a). The Debtors submit that the terms and conditions of AlixPartners' retention as described herein are reasonable. The terms are substantially similar to those that AlixPartners applies to its other bankruptcy and nonbankruptcy clients for engagements of this size and character.

**B.     The Indemnification Terms of the Engagement Letter are Appropriate**

38.     The indemnification provisions in the Engagement Letters were fully negotiated between the Debtors and AlixPartners. The Debtors and AlixPartners believe that the indemnification provisions in the Engagement Letter are customary and reasonable. Such terms of indemnification reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that have been approved by this Court in other recent cases. *See, e.g.*, *J.C. Penney Co., Inc.*, No. 20-20182 (DRJ) (Bankr. S.D. Tex. July 20, 2020); *In re Tri-Point Oil & Gas Prod. Sys., Inc.*, No. 20-31777 (DRJ) (Bankr. S.D. Tex. Apr. 25, 2020); *In re Sheridan Holding Co. I, LLC*, No. 20-31884 (MI) (Bankr. S.D. Tex. Apr. 24, 2020); *In re Alta Mesa Res., Inc.*, No. 19-35133 (MI) (Bankr. S.D. Tex. Apr. 21, 2020); *In re Memorial Prods. Partners LP*, No. 17-30262 (MI) (Bankr. S.D. Tex. Feb. 27, 2017).

**C.     It is Appropriate for the Debtors to Retain AlixPartners as of the Petition Date**

39.     The Debtors also believe that employment of AlixPartners effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases.  AlixPartners has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated restructuring transactions. *See, e.g.*, *In re Triangle Chems., Inc.*, 697 F.2d 1280 (5th Cir. 1983); *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.") (collecting cases). Furthermore, Bankruptcy Local Rule 2014-1(b)(1) provides that an application for approval of employment made within 30 days of the commencement of the provision of services is deemed contemporaneous.  Nonetheless, the Debtors are requesting *nunc pro tunc* approval out of an abundance of caution.

### Notice

40.     Notice of this Application will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

### No Previous Request

41.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: September 2, 2020
        Houston, Texas

Respectfully submitted,

Fieldwood Energy LLC
(and each of its affiliated debtors as Debtors and Debtors in Possession)

*/s/ Michael T. Dane*
Name: Michael T. Dane
Title: Senior Vice President and CFO

**<u>Certificate of Service</u>**

I hereby certify that on September 2, 2020 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


*/s/ Alfredo R. Pérez*
Alfredo R. Pérez