**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| **FIELDWOOD ENERGY LLC, *et al.*,** [1] | Case No. 20-33948 (MI) |
| **Debtors.** | (Jointly Administered) |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' EMERGENCY MOTION FOR A FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY (A) PREPETITION INTEREST OWNER OBLIGATIONS, JOINT INTEREST BILLINGS, AND E&P OPERATING EXPENSES AND (B) 503(b)(9) CLAIMS, AND (II) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Company" or collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby submits this limited objection (the "Limited Objection") with respect to the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Pay (A) Prepetition Interest Owner Obligations, Joint Interest Billings, and E&P Operating Expenses and (B) 503(b)(9) Claims, and (II) Granting Related Relief* [Docket No. 7] (the "Motion") and, in support hereof, respectfully states as follows:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

## LIMITED OBJECTION

1.       By their Motion, the Debtors seek broad authority to pay significant prepetition claim amounts associated with interest owner payments, including joint interest billings in the amount of $32.5 million ("JIB") and expenses related to exploration and production (the "E&P Operating Expenses") in the amount of approximately $152.2 million.[3]   To demonstrate the importance of the payment of the full amount of the JIB and E&P Operating Expenses, the Debtors requested authority to enter into the DIP Facility largely to pay such amounts, as reflected by the 13 week DIP budget forecast that shows no need to draw on the DIP Facility absent payment of the JIB and E&P Operating Expenses.  In that vein, the Debtors state the very real need to pay the vendors and other holders of the claims associated with the E&P Operating Expenses (the "Critical Vendor Claims") in order to maintain ongoing operations:

> Payment of E&P Operating Expenses will…ensure that the Debtors maintain strong relationships with the E&P Claimants that will inure to the benefit of all parties in interest.  The Debtors' ongoing operations depend, to a significant degree, on their relationships with the parties to which E&P Operating Expenses are owed.  If these relationships are harmed, either through non-payment of E&P Operating Expenses as they become due or through the perceived difficulties of dealing with chapter 11 debtors, the Debtors may encounter particularized controversies with each counterparty, unnecessary costs and distractions, and corresponding harm to their business with the possible loss of the Debtors' going-concern value.[4]

2.       Accordingly, in addition to its employees, the E&P Operating Expense counterparties are the lifeblood of the Debtors' operations.  As such, the Committee fully supports the relief sought in the Motion—but only if the Debtors quickly and fairly administer the requested $152.2 million before the filing of an onslaught of mechanics and materialmen lien filings and a

---

[3] The Committee notes that while the Debtors request authority to pay a combined total of $184.7 million in Joint Interest Billings and E&P Operating Expenses, the DIP Facility prohibits payment of pre-petition cash expenses in excess of $160 million. The Debtors and their proposed DIP Lenders need to reconcile this inconsistency.

[4] Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Pay (A) Prepetition Interest Owner Obligations, Joint Interest Billings, and E&P Operating Expenses and (B) 503(b)(9) Claims, and (II) Granting Related Relief [Docket No. 7] at p. 14, ¶ 36.

refusal by essential Debtor counterparties to continue to do business with the Debtors. Unfortunately, to date, painfully little progress has been made by the Debtors in paying Critical Vendor Claims since the Court entered an emergency order authorizing the Debtors to do so a month ago.  In fact, the Committee has heard from a number of creditors that the Debtors are demanding massive discounts in full satisfaction of the pre-petition claims from so-called critical relationships, while others have heard literally nothing with the result being a dramatic slow-down of a process that is designed to be an expedient way for the Debtors to maintain vendor relationships and buoy the value of their estates.

3.      To say that trade creditors are frustrated is an understatement.  The bulk of creditors that the Committee represents in these cases weathered Fieldwood's prior chapter 11 filings and continue to experience first-hand the fallout across the oil and gas exploration and production industry.  When the Debtors' request for relief to pay a large portion of the E&P Operating Expenses *on the first day of their chapter 11 cases* is combined with the fact that the need for their fairly expensive DIP Financing is primarily based on paying the E&P Operating Expenses, it easy to understand the frustration of trade creditors who have felt mistreated or ignored over the last month.

4.      To highlight the dichotomy of what was represented to the Court, but what is actually playing out in practice, the 13-week DIP budget forecast filed as Exhibit C to the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 AND 507(b) and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules*

3

*4001(b) and (c)* [Docket No. 22] contemplated ***$84.8 million*** in E&P Operating Expenses to be paid during the first four weeks of the budget period (through the week of August 28, 2020).  To date, the Debtors have disbursed only a small fraction of the budgeted amount and vendors have consistently indicated that the Debtors are not making meaningful proposals to pay their claims in whole or in part, but rather at substantial discounts in satisfaction of the entirety of their claims.

5.     In the Committee's experience, a motion to pay critical vendor claims contemplates that a creditor will enter into a trade agreement consistent with historical practice between the parties with the *quid pro quo* of payment of all or a material portion of its pre-petition claim.  The Debtors' Motion adopts this standard approach on its face (and supports the approach with expensive financing), but, as noted, the Debtors have not followed this practice to date.  As a result of the lack of progress and the perceived distortion of the critical vendor process, the Committee requests that any approval of the relief requested be conditioned upon receipt by the Committee professionals of the following:

- a weekly schedule of balances and payments for the E&P Operating Expenses, JIBs and royalty interests requested to be paid under the Motion and mapping to pre-and post-petition cash expenses, including the vendor, type of vendor (*e.g.*, good or service provided), the pre-petition claim amount, settlement amount, and summary of changes between pre- and post-petition trade agreements;

- a reconciliation of all items tied to the 13-week cash flow budget;

- a weekly status schedule of current vendor negotiations; and

- advance notice and information rights (i) as to any claims that the Debtors propose to pay that relate to assets that the Debtors do not intend to include in their ongoing

operations; and (ii) for any proposed payment of an invoice for a vendor with claims greater than $500,000.

6.      Only through the enhanced reporting requested herein can the Committee ensure that the Debtors are implementing the type of far-reaching and value-enhancing critical vendor program that they requested the Court to approve and are not simply paying lip service to the concept.

## **RESERVATION OF RIGHTS**

7.      The Committee reserves all rights to further supplement and amend this Limited Objection and to seek such additional information as may be necessary for the Committee to properly exercise its duties.

## **CONCLUSION**

8.      As set forth above, the Committee seeks to ensure that Critical Vendor Claims are paid pursuant to a fair and appropriate program and consistent with the authority granted by the Court, and that the Committee's access to information is expanded to include advance notice as to payment of pre-petition claims related to ongoing and future operations and payment of significant pre-petition claims.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Committee respectfully requests that the Court grant the Committee relief consistent with the foregoing, and grant the Committee such other relief as the Court may deem just and proper.

Dated:   September 8, 2020                 Respectfully submitted,

*/s/ Michael D. Warner*
Michael D. Warner, Esq. (TX Bar No. 00792304)
Benjamin L. Wallen, Esq. (TX Bar No. 24102623)
**COLE SCHOTZ P.C.**
301 Commerce Street , Suite 1700
Fort Worth, TX 76102
Telephone: (817) 810-5250
Facsimile:  (817) 810-5255
Email:  mwarner@coleschotz.com
            bwallen@coleschotz.com

- and -

**STROOCK & STROOCK & LAVAN LLP**
Kristopher M. Hansen, Esq. (admitted *pro hac vice*)
Frank A. Merola, Esq. (admitted *pro hac vice*)
Jonathan D. Canfield, Esq. (admitted *pro hac vice*)
Sherry J. Millman, Esq. (admitted *pro hac vice*)
180 Maiden Lane
New York, NY 10038
Telephone: (212) 806-5400
Facsimile:  (212) 806-6006
Email: khansen@stroock.com
            fmerola@stroock.com
            jcanfield@stroock.com
            smillman@stroock.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2020, a true and correct copy of the above and foregoing has been served by electronic transmission to all registered CM/ECF users appearing in these cases.

*/s/ Michael D. Warner*
Michael D. Warner
