

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
09/15/2020

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

**FINAL ORDER (I) AUTHORIZING DEBTORS
(A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO
11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e)
AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO
11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION
TO PREPETITION SECURED PARTIES PURSUANT TO
11 U.S.C. §§ 361, 362, 363, 364 AND 507(b)**

Upon the motion (the "**Motion**")[2] of Fieldwood Energy LLC (the "**Borrower**") and its

affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "**Debtors**") in the

above captioned cases (the "**Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2),

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code,

11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules

for the Southern District of Texas (the "**Local Bankruptcy Rules**") and the Procedures for

Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**") promulgated by the United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Holdings LLC (9264); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used herein but not otherwise defined have the meanings given to them in the DIP Documents (as defined below).

States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking, among other things:

A.      authorization for the Borrower to obtain secured postpetition financing (the "**DIP Financing**") and for Fieldwood Energy Inc. ("**Holdings**") and all domestic subsidiaries of the Borrower (subject to certain exceptions set forth in the DIP Credit Agreement (as defined below) for immaterial subsidiaries that are not Debtors) (each a "**Guarantor**" and collectively, the "**Guarantors**"; the Guarantors collectively with the Borrower, the "**Loan Parties**"), to unconditionally guaranty, on a joint and several basis, the Borrower's obligations in connection with the DIP Financing, consisting of a multiple-draw senior secured term loan facility (the "**DIP Facility**"), in a principal amount not to exceed $100,000,000 (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)) on the terms and conditions set forth in that certain Senior Secured Debtor-in-Possession Term Loan Credit Agreement dated August 24, 2020, among Holdings, the Borrower, the lenders from time to time thereto (collectively, the "**DIP Lenders**") and Cantor Fitzgerald Securities as administrative agent and collateral agent (in such capacities, the "**DIP Agent**"; the DIP Agent together with the DIP Lenders, the "**DIP Secured Parties**"), such senior secured debtor-in-possession term loan credit agreement, as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, the Collateral Agreement and the Guarantee Agreement (each as defined in the DIP Credit Agreement and dated August 24, 2020, the "**DIP Documents**") and to perform all such other and further acts as may be required in connection with the DIP

2

Documents, and pursuant to which DIP Facility the Borrower has borrowed from the DIP

Lenders a principal amount equal to $100,000,000 on the Closing Date (as defined in the DIP

Credit Agreement);

   B.  authorization for the Loan Parties to grant adequate protection to the Prepetition

Secured Parties (as defined below) under or in connection with certain of the following

agreements:

1.  that certain Second Amended and Restated Credit Agreement – First Out, dated as of June 28, 2019 (as amended by that certain Temporary Limited Forbearance and Amendment, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof) and as otherwise amended, supplemented or otherwise modified prior to the date hereof, and the Loan Documents thereunder as defined therein, the "**Prepetition FLFO Credit Agreement**"), among, *inter alia*, Holdings, the Borrower, the lenders party thereto (the "**Prepetition FLFO Lenders**"), Goldman Sachs Bank USA, as administrative agent (in such capacity, the "**Prepetition FLFO Administrative Agent**") and issuing bank, and Cantor Fitzgerald Securities, as collateral agent (in such capacity, the "**Prepetition FLFO Collateral Agent**", together with Prepetition FLFO Administrative Agent and their successors in such capacities, the "**Prepetition FLFO Agents**" and, the "Secured Parties" under such Prepetition FLFO Credit Agreement the "**Prepetition FLFO Secured Parties**");

2.  that certain Amended and Restated First Lien Term Loan Agreement, dated as of April 11, 2018 (as amended by that certain First Amendment to Amended and Restated First Lien Term Loan Agreement, dated as of July 5, 2018, that certain Second Amendment to Amended and Restated First Lien Term Loan Agreement, dated as of November 11, 2019 and that certain Temporary Limited Forbearance and Amendment, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof), and as otherwise amended, supplemented or otherwise modified prior to the date hereof, and the Loan Documents thereunder as defined therein, the "**Prepetition FLTL Credit Agreement**"), among, *inter alia*, Holdings, the Borrower, the lenders party thereto from time to time (the "**Prepetition FLTL Lenders**") and Cantor Fitzgerald Securities, as administrative agent and collateral agent (in such capacities, together with its successors in such capacities, the "**Prepetition FLTL Agent**" and, the "Secured Parties" under such Prepetition FLTL Credit Agreement the "**Prepetition FLTL Secured Parties**")

3.  that certain Amended and Restated Second Lien Term Loan Agreement dated as of April 11, 2018 (as amended by that certain Temporary Limited Forbearance and Amendment, dated as of May 7, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof), and as otherwise amended, supplemented or otherwise modified prior to the date hereof, and the Loan Documents thereunder as

defined therein, the "**Prepetition SLTL Agreement**"[3]), among, *inter alia*, Holdings, the Borrower, the lenders party thereto from time to time (the "**Prepetition SLTL Lenders**"[4]) and Cortland Capital Markets Services LLC, as administrative agent and collateral agent (in such capacities, together with its successors in such capacities, the "**Prepetition SLTL Agent**"[5] and, the "Secured Parties" under such Prepetition SLTL Credit Agreement the "**Prepetition SLTL Secured Parties**"[6]); and

4.      that certain Decommissioning Agreement, dated as of September 30, 2013 (as amended, supplemented or otherwise modified prior to the date hereof, and together with the Existing Decommissioning Related Agreements (as defined in the DIP Credit Agreement), the "**Apache Decommissioning Agreement**"), by and among Apache Corporation ("**APA**"), Apache Shelf, Inc. ("**APSH**"), Apache Deepwater LLC ("**APDW**"), Apache Shelf Exploration LLC (together with APA, APSH and APDW, the "**Apache Secured Parties**"), the Borrower and GOM Shelf LLC.

C.      subject to the restrictions set forth in the DIP Documents and this Final Order, authorization for the Loan Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral in which any of the Prepetition Secured Parties have an interest, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

D.      subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Prepetition Credit Agreements and the liens and security interests arising therefrom;

---

[3] The agreements described in the preceding paragraphs B.1-3 above are collectively referred to as the "**Prepetition Credit Agreements**," and all "Collateral" (as defined in each of the Prepetition Credit Agreements, respectively) securing the obligations under the Prepetition Credit Agreements described in the preceding paragraphs B.1-3 is collectively referred to as the "**Prepetition Collateral**". The Trust A NPI, Trust A-1 NPI, the Trust A Account, any interest in Trust A, the Permitted Surety Bonds or the Letters of Credit (each as defined in the Apache Decommissioning Agreement) are collectively referred to as the "**Apache Collateral**" and, for the avoidance of doubt, the Prepetition Collateral does not include the Apache Collateral.

[4] The Prepetition FLFO Lenders, the Prepetition FLTL Lenders and the Prepetition SLTL Lenders are collectively referred to as the "**Prepetition Lenders**".

[5] The Prepetition FLFO Agents, the Prepetition FLTL Agent and the Prepetition SLTL Agent are collectively referred to as the "**Prepetition Agents**".

[6] The Prepetition FLFO Secured Parties, the Prepetition FLTL Secured Parties and the Prepetition SLTL Secured Parties are collectively referred to as the "**Prepetition Secured Parties**".

E.      the grant of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on, all prepetition and postpetition property of the Loan Parties' estates (other than certain excluded property as provided in the DIP Documents, Avoidance Actions (as defined below) and D&O Tort Claims (as defined below), but including Avoidance Proceeds (as defined below) and D&O Tort Proceeds (as defined below), subject only to the Carve-Out, the Permitted Prior Liens (as defined below), and the Unaltered Senior Prepetition Liens and Rights (as defined below);

F.      the waiver of the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and of any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

G.      the waiver of the equitable doctrine of "marshaling" and other similar doctrines as to the DIP Secured Parties and the Prepetition Secured Parties;

H.      modification of the automatic stay to the extent set forth herein and in the DIP Documents;

I.      pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") on the Motion to be held before this Court (and this Court having entered an interim order on August 5, 2020 [Docket No. 58] (the "**Interim Order**") to consider entry of a final order (the "**Final Order**") granting the Motion and approving the relief granted herein on a final basis and authorizing the Borrower to forthwith borrow from the DIP Lenders under the DIP Documents up to the full principal amount of the DIP Financing and the Guarantors to unconditionally guaranty all obligations owing to the DIP Lenders under the DIP Documents on a joint and

several basis; and due and appropriate notice of the Motion and the Final Hearing having been served by the Debtors on the parties identified in the Motion; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Final Hearing having been held by this Court on September 14, 2020; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in these Cases; and the Court having determined that the relief requested in the Motion is necessary to avoid irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, in the declaration of John-Paul Hanson of Houlihan Lokey Capital, Inc. in support of the Motion filed contemporaneously therewith (Docket No. 23), in the *Declaration of Mike Dane in Support of Chapter 11 Petitions and Related Requests for Relief* (Docket No. 29 (the "**First Day Declaration**")) and at the Final Hearing and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Disposition.*  The relief requested in the Motion is granted in accordance with the terms of this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Final Order shall become effective immediately upon its entry.

2.     *Jurisdiction*.  This Court has core jurisdiction over the Cases (as defined below), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012)

(Hinojosa, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. *Committee Formation*. On August 18, 2020, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "**Creditors' Committee**").

4. *Notice*. Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required. The relief granted herein is necessary to avoid irreparable harm to the Debtors and their estates.

5. *Debtors' Stipulations*. Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 23 and **24** below, the Debtors admit, stipulate and agree that:

(a) (i) as of the date (the "**Petition Date**") of the filing of the Cases, the Borrower and the guarantors under the relevant Prepetition Credit Agreement (such guarantors collectively, the "**Prepetition Guarantors**") were justly and lawfully indebted and liable to (A) the Prepetition FLFO Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $147,601,297 in respect of loans made and undrawn letters of credit issued under, and in accordance with the terms of, the Prepetition FLFO Credit Agreement, plus accrued and unpaid interest thereon and fees (including the prepayment fees payable pursuant to the Prepetition FLFO Credit Agreement), reimbursement obligations in respect of drawn letters of credit, expenses

7

(including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition FLFO Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition FLFO Credit Agreement (collectively, the "**Prepetition FLFO Debt**"), which Prepetition FLFO Debt has been guaranteed on a joint and several basis by the guarantors under the Prepetition FLFO Credit Agreement; (B) the Prepetition FLTL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $1,142,688,815.28 in respect of loans made under, and in accordance with the terms of, the Prepetition FLTL Credit Agreement, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition FLTL Credit Agreement), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition FLTL Credit Agreement (collectively, the "**Prepetition FLTL Debt**"), which Prepetition FLTL Debt has been guaranteed on a joint and several basis by the guarantors under the Prepetition FLTL Credit Agreement; (C) the Prepetition SLTL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $517,500,000 in respect of loans made under, and in accordance with the terms of, the Prepetition SLTL Credit Agreement, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, solely to the extent that they are chargeable or reimbursable under the Prepetition SLTL Credit Agreement), charges, indemnities and other obligations incurred in connection

8

therewith (whether arising before or after the Petition Date) as provided in the Prepetition SLTL Credit Agreement (collectively, the "**Prepetition SLTL Debt**" and, together with the Prepetition FLFO Debt and the Prepetition FLTL Debt, the "**Prepetition Debt**"), which Prepetition SLTL Debt has been guaranteed on a joint and several basis by the guarantors under the Prepetition SLTL Credit Agreement, (ii) the Prepetition Debt constitutes the legal, valid and binding obligations of the Borrower and the applicable Prepetition Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Credit Agreements prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b) the liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**") pursuant to and in connection with the Prepetition Credit Agreements, are: (i) valid, binding, perfected, enforceable liens and security interests in the Prepetition Collateral; (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) as of the Petition Date are subject and subordinate only to valid, non-avoidable liens that are entitled to priority senior to the Prepetition Liens under applicable law and (A) were perfected as of the Petition Date or (B) were in existence immediately prior to the Petition Date and are perfected subsequent to the Petition Date as

9

permitted by section 546(b) of the Bankruptcy Code, to the extent that such permitted liens are senior to liens in favor of the Prepetition FLFO Secured Parties and the Prepetition FLTL Secured Parties (the "**Permitted Prior Liens**");

(c)  by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Debt, none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors;

(d)  the liens granted to the DIP Agent on behalf of the DIP Secured Parties pursuant to this Final Order are perfected, valid, enforceable and non-avoidable liens against the Debtors;

(e)  no claims or causes of action exist against, or with respect to, the Prepetition Secured Parties under the Prepetition Credit Agreements;

(f)  effective as of the date of entry of this Final Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, subsidiaries, heirs and assigns, hereby absolutely and unconditionally release and forever discharge and acquit the DIP Secured Parties and Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown,

asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened (collectively, the "**Released Claims**") including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Prepetition Credit Agreements, or the transactions contemplated thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order, whether such Released Claims are matured or unmatured or known or unknown;

(g) (i) that certain *Pari Passu* Intercreditor Agreement dated as of April 11, 2018 (as amended by that certain Joinder No. 4 dated as of June 28, 2019 and as otherwise amended, supplemented or otherwise modified from time to time prior to the date hereof, the "**First Lien Pari Passu Intercreditor Agreement**"), and (ii) that certain Intercreditor Agreement, dated as of April 11, 2018 (as amended, supplemented or otherwise modified from time to time prior to the date hereof, the "**Second Lien Intercreditor Agreement**" and, together with the First Lien Pari Passu Intercreditor Agreement, the "**Intercreditor Agreements**"), are binding and enforceable against the Borrower, Prepetition Guarantors, and the Prepetition Secured Parties party thereto, in accordance with their terms, and the Borrower, Prepetition Guarantors, and Prepetition Secured Parties are not entitled to take any actions that would be contrary to the provisions thereof; and

11

(h) all cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any Prepetition Secured Party or any branch or agency thereof (the "**Depository Institutions**") were subject to rights of set-off under the Prepetition Credit Agreements and applicable law, for the benefit of the Prepetition Secured Parties.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

6.     *Findings Regarding the DIP Financing and Cash Collateral.*

(a)  Good and sufficient cause has been shown for the entry of this Final Order.

(b)  The Loan Parties need to continue to use the Prepetition Collateral (including the Cash Collateral) to preserve their estates, including (i) to consummate the prenegotiated plan contemplated under the "**Restructuring Support Agreement**" filed as Exhibit B to the First Day Declaration, (ii) for the orderly continuation of the operation of their businesses, (iii) to preserve business relationships with vendors, suppliers, employees, and customers, and (iv) to satisfy other working capital and operational needs.  The Loan Parties need to have available the DIP Facility in case the Prepetition Collateral (including Cash Collateral) is insufficient to meet their capital and liquidity needs.  The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral

and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

(c) The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and incurring the Adequate Protection, in each case, under the terms and conditions set forth in this Final Order and in the DIP Documents.

(d) Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Final Hearing, the terms of the DIP Financing, the terms of the Adequate Protection granted to the Prepetition Secured Parties, and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Final Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e) Upon the terms and conditions set forth herein, the Prepetition Secured Parties have consented, or pursuant to the Intercreditor Agreements are deemed to have consented, to the use of Cash Collateral and the other Prepetition Collateral, the Debtors'

entry into the DIP Documents and, in the case of the Prepetition Secured Parties, the priming of the liens granted to the Prepetition Secured Parties pursuant to Section 364(d)(1) of the Bankruptcy Code.

(f)   The DIP Financing, as well as the terms of the Adequate Protection and Adequate Protection Liens (each as defined below), and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the DIP Agent and the DIP Lenders and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (collectively, the "**DIP Loans**") and (ii) any "**Loan Obligations**" (as defined in the DIP Credit Agreement) of the Loan Parties owing to the DIP Agent, any DIP Lender or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Agent or the DIP Lenders and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under this Final Order or the DIP Documents (the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in

14

the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof), and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g) The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any diminution in value of the Prepetition Collateral. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in this Final Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of

any of the Prepetition Secured Parties, subject to any applicable provisions of the

Intercreditor Agreements and upon a change in circumstances, to seek new, different or

additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h) The Debtors have requested entry of this Final Order pursuant to

Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules.  For the

reasons set forth in the Motion and declarations filed in connection therewith, absent granting

the relief set forth in this Final Order, the Loan Parties' estates would face (i) significant

business disruptions from the loss of access to Cash Collateral, (ii) exposure to significant

liquidity uncertainty in the current commodities market, and (iii) loss of confidence regarding

financial wherewithal by stakeholders, all of which would lead to irreparable harm.

Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash

Collateral, in accordance with this Final Order and the DIP Documents are therefore in the

best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of

their fiduciary duties.

7.     *Authorization of the DIP Financing and the DIP Documents.*

(a) The DIP Financing is approved on a final basis.  The Borrower is hereby

authorized to forthwith borrow up to the full principal amount of money pursuant to the DIP

Credit Agreement, and the Guarantors are hereby authorized to guaranty the Borrower's

obligations with respect to such borrowings (plus interest, fees, expenses (including

professional fees and expenses) and other amounts, in each case, as provided for in the DIP

Documents), subject to any limitations on borrowing under the DIP Documents, which shall

be used for all purposes permitted under the DIP Documents (and subject to the terms and

conditions set forth herein and therein), including to (v) make payments for general corporate

or working capital purposes in a manner consistent with the then-current Approved Budget (as defined in the DIP Credit Agreement) subject to permitted variances, (w) pay required debt service on the DIP Loans, (x) pay the fees, costs and expenses of the DIP Agent and the DIP Lenders, (y) pay fees, costs and expenses of professionals associated with the Cases and (z) provide adequate protection as provided in paragraphs 14 through 21 of this Final Order (the "**Adequate Protection**").

(b) In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all agreements, instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees and expenses and to undertake all actions that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Documents;

(ii)      the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications or supplements to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent and the Required Lenders (as defined in the DIP Credit Agreement) may agree, it being understood that no further approval of the Court shall be required for amendments, waivers, consents or other modifications or supplements to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity

17

of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder; <u>provided</u> that the Creditors' Committee shall be provided with any such amendments, waivers, consents or other modifications or supplements to and under the DIP Documents at least five (5) days (or such later date as the Creditors' Committee may agree) prior to the execution or delivery thereof (unless exigent circumstances prevent the Debtors from providing 5 days prior notice, in which case the Debtors shall provide as much notice as possible) and the Creditors' Committee's right to object to any of the foregoing shall be expressly preserved;

(iii)   the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees including, without limitation, any upfront fee, backstop fee, commitment fee, seasoning fee or agency fee (which fees shall be, and shall be deemed to have been, approved upon entry of this Final Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise), and any amounts due (or that may become due) in respect of the indemnification obligations, in each case provided for in the DIP Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the one hand, and the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders (including, without limitation, the documented fees and expenses of Shipman & Goodwin LLP, as counsel to the DIP Agent, Davis Polk & Wardwell LLP as primary counsel to certain DIP Lenders, Haynes and Boone LLP as local counsel to certain  DIP Lenders

in the State of Texas, Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC as regulatory counsel to certain DIP Lenders and Rothschild & Co US Inc. and Intrepid Partners, LLC as financial advisors to certain DIP Lenders), in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party, subject to paragraph 14(e) hereof; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens and the DIP Superpriority Claims as permitted herein and therein.

(c)  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the DIP Documents and this Final Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Final Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim, subject to paragraph 14(e) hereof, as applicable.

8.     *DIP Superpriority Claims.*

(a)  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the

Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Loan Parties and all proceeds thereof (excluding (i) commercial tort claims against the Debtors' officers and directors ("**D&O Tort Claims**") and (ii) the Loan Parties' avoidance claims and causes of action under sections 105, 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under any other state or federal law or the Bankruptcy Code (collectively, "**Avoidance Actions**"), but including (x) any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**") and (y) any proceeds or property recovered, unencumbered or otherwise from D&O Tort Claims, whether by judgment, settlement or otherwise ("**D&O Tort Proceeds**"), *provided* that the DIP Superpriority Claims shall be subordinated and subject only to payment of the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b) For purposes hereof, the "**Carve-Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000 (without regard to the notice set forth in (iii) below); and (iii) (A) all unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise of persons or firms retained by the Debtors or the Creditors' Committee pursuant to sections 105, 327, 328, 363, 503 or 1129 of the Bankruptcy Code (collectively, the "**Professional Fees**") incurred at any time on or prior to the Trigger Notice, plus (B) Professional Fees incurred after the Trigger Notice in an amount not to exceed $6,000,000, of professionals retained by the Debtors and the Creditors' Committee; *provided,* that under no circumstances shall any success, completion, or similar fees be payable from the Carve-Out following delivery of a Trigger Notice (the "**Carve-Out Cap**"), in each case subject to the limits imposed by this Final Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition Secured Party; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any other grounds.  "**Trigger Notice**" shall mean a written notice delivered by the DIP Agent, at the direction of the Required Lenders under the DIP Documents, to the Debtors, counsel to the Creditors' Committee and the U.S. Trustee, describing the event of default that is alleged to continue under the DIP Documents.  Immediately upon delivery of a

Trigger Notice, and prior to the payment to any Prepetition Secured Party on account of the Adequate Protection or otherwise, the Debtors shall be required to deposit, in a segregated interest-bearing account not subject to the control of the DIP Agent or the Prepetition Agents (the "**Carve-Out Account**"), an amount equal to the Carve-Out Cap. The funds on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out, and the DIP Agent and the Prepetition Agents, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve-Out Account and (ii) shall have a security interest upon any residual interest in the Carve-Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve-Out.

(c)  Notwithstanding the foregoing, (x) the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the DIP Lenders, the DIP Agent, and after the expiration of the Challenge Period, the Prepetition Lenders or each of the Prepetition Agents, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Prepetition Credit Agreements (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent or the

Prepetition Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP

Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral or

Prepetition Collateral in accordance with the DIP Documents and the Final Order other than

to seek a determination that an Event of Default (as defined in the DIP Credit Agreement)

has not occurred or is not continuing; or (d) paying any amount on account of any claims

arising before the commencement of the Cases unless such payments are approved by an

order of the Court, including the Final Order, and (y) prior to the delivery of the Trigger

Notice, the Carve-Out shall not be reduced by the payment or incurrence of Professional Fees

allowed at any time by the Court.  Further, notwithstanding anything to the contrary in this

Final Order, nothing contained in this Final Order, any Approved Budget or any other DIP

Documents shall in any way constitute a cap or limitation on the amount of fees and expenses

that the Creditors' Committee may incur and seek payment of as an administrative expense

claim, and all such rights are expressly preserved.  Further, notwithstanding anything to the

contrary in this Final Order, the failure of the Carve-Out Account to satisfy in full the

Professional Fees shall not affect the priority of the Carve-Out.  For the avoidance of doubt,

nothing herein shall modify or limit the rights of the Loan Parties set forth in the DIP Credit

Agreement or limit their use of the Carve-Out in connection with such rights.

9.      *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the

Closing Date and without the necessity of the execution, recordation of filings by the Loan

Parties of mortgages, security agreements, control agreements, pledge agreements, financing

statements or other similar documents, any notation of certificates of title for a titled good, or the

possession or control by the DIP Agent of, or over, any DIP Collateral, the following security

interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the

DIP Lenders (all property identified in clauses (a), (b), (c) and (d) below being collectively referred to as the "**DIP Collateral**"; *provided*, that for the avoidance of doubt, the Apache Collateral shall not constitute DIP Collateral and the DIP Collateral shall be subject to the provisions of paragraphs 14(h) and 15(f) herein), in each case subject to the payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Documents, the "**DIP Liens**"); *provided, further*, that notwithstanding anything in this Order to the contrary, the Hedging Obligations (as defined in the *Emergency Order (I) Authorizing Debtors to (A) Enter into and Perform Under New Postpetition Hedging Agreements and (B) Grant Related Liens And Superpriority Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* (ECF No. 242)) shall be secured by liens in all DIP Collateral, which shall be *pari passu* with the DIP Liens and have the same priority as the DIP Liens:

(a) <u>First Lien On Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to either (x) valid, perfected and non-avoidable liens as of the Petition Date, or (y) valid and non-avoidable liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code (collectively, "**Unencumbered Property**"), in each case other than: (i) the Excluded Assets and Excluded Equity Interests (each as defined in the DIP Credit Agreement), but including any proceeds of Excluded Assets and Excluded Equity Interests that do not otherwise constitute Excluded Assets or

Excluded Equity Interests, (ii) D&O Tort Claims, and (iii) Avoidance Actions, but including the Avoidance Proceeds and D&O Tort Proceeds;

(b) <u>Liens Priming Certain Prepetition Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior priming security interest in and lien upon all pre- and postpetition property of each Loan Party whether now existing or hereafter acquired, of the same nature, scope and type as the collateral securing the Prepetition Debt; *provided*, that such lien shall be (i) junior to the Permitted Prior Liens and the Unaltered Senior Prepetition Liens and Rights and (ii) *pari passu* with valid and perfected liens in favor of hedge counterparties in connection with secured hedging transactions entered into by the Debtors on a post-petition basis in accordance with the DIP Documents (the "**Hedging Liens**").  Such security interests and liens shall be senior in all respects to the interests of the Prepetition Secured Parties in such property arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Parties) (collectively, the "**Primed Liens**"); *provided,* however, that the DIP Liens shall not be secured by the Apache Collateral and the rights of the Apache Secured Parties set forth in the Restructuring Support Agreement are not amended or modified by the terms of this Final Order; *provided*, further, that, for the avoidance of doubt, nothing herein provides that the DIP Liens are deemed to prime any valid, non-avoidable (j) liens, including statutory liens, contractual liens, or otherwise (but excluding Primed Liens), or rights that were perfected and entitled to priority senior to the Prepetition Liens as of the Petition Date; (k) liens, including statutory liens, contractual liens, or otherwise (but excluding Primed Liens), or contractual rights entitled to priority senior to the Prepetition Liens that were in existence

immediately prior to the Petition Date and are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code; (l) privileges under Louisiana state law that are entitled to priority senior to the Prepetition Liens for which valid statements of privilege either were filed prior to the Petition Date or may be filed subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code; (m) valid, contractual setoff rights (A) that were in existence at the Petition Date, (B) of any person other than Prepetition Secured Parties, and (C) not contractually or legally subject or subordinate to the Prepetition Liens; or (n) valid recoupment rights (A) of any person other than Prepetition Secured Parties and (B) that are not contractually or legally subject or subordinate to the Prepetition Liens. The liens and rights in the forgoing subsections (j) - (n), collectively, shall herein be referred to as the "**Unaltered Senior Prepetition Liens and Rights**."

(c) Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party other than the property described in clauses (a) and (b) of this paragraph 9 that is subject to either (i) valid, perfected and non-avoidable liens in existence at the time of the commencement of the Cases (other than the Primed Liens) or (ii) valid and non-avoidable liens (other than Primed Liens) in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code, in each case other than (x) the Excluded Assets and the Excluded Equity Interests, but including any proceeds of Excluded Assets and Excluded Equity Interests that do not constitute Excluded Assets or Excluded Equity Interests, (y) D&O Tort Claims, and (z) Avoidance Actions, but including Avoidance Proceeds and D&O Tort Proceeds, which

26

shall be junior and subordinate to any valid, perfected and non-avoidable Unaltered Senior Prepetition Liens and Rights; and

(d) <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens of the Loan Parties or security interests of the Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

10. *Protection of DIP Lenders' Rights.*

(a)  So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) (the "**DIP Commitments**") under the DIP Credit Agreement and the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Agreements or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP

Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iv), the DIP Agent or the DIP Lenders file financing statements or other documents to evidence the perfection of the liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date and (v) deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such DIP Collateral subject to any sale or disposition.

(b)  To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders and shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

(c)  If any DIP Loans are outstanding, (i) any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the

28

Prepetition Collateral or otherwise received by any Prepetition Secured Party, except as specifically provided in this Final Order as Adequate Protection, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct and (ii) the DIP Agent is hereby authorized to make any such endorsements as agent for any such Prepetition Secured Party and such authorization is coupled with an interest and is irrevocable.

(d) The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Agent, acting at the direction of the Required Lenders, to enforce all of their rights under the DIP Documents (subject to the terms of this Final Order) and (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties and (ii) upon the occurrence of an Event of Default and the giving of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (such period, the "**Remedies Notice Period**") via email to counsel to the Debtors, counsel to the Creditors' Committee and the U.S. Trustee to (A) withdraw consent to the Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law (subject to the terms of this Final Order).  Following the delivery of such notice, the DIP Agent may file a motion (the "**Stay Relief Motion**") seeking emergency relief from the automatic stay.  In any hearing regarding any exercise of rights or remedies

under the DIP Documents, the Debtors and/or the Creditors' Committee may seek relief from the Court seeking to stay the DIP Facility Agent's exercise of any rights and remedies (including seeking to use Cash Collateral on a non-consensual basis). The Debtors shall not object to any motion for such a hearing to be heard on shortened notice. Until such time as the Stay Relief Motion has been adjudicated by the Court, the Debtors may use the proceeds of the DIP Facility (to the extent drawn prior to the occurrence of the Event of Default (as defined in the DIP Credit Agreement)) or Cash Collateral to fund operations in accordance with the DIP Credit Agreement.

(e) In no event shall the DIP Agent or the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral; *provided*, that the DIP Agent and DIP Lenders shall use commercially reasonable efforts to first apply proceeds from DIP Collateral other than Avoidance Proceeds and/or D&O Tort Proceeds to satisfy outstanding DIP Obligations before applying Avoidance Proceeds and/or D&O Tort Proceeds to satisfy the DIP Obligations.

(f) No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Final Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral  (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11. *Limitation on Charging Expenses Against DIP Collateral*. Except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that

may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, acting at the written direction of the Required Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, or the DIP Lenders. For the avoidance of doubt, consent to the Carve Out or the approval of any budget hereunder shall not be deemed a consent under this paragraph.  Nothing contained in this Final Order shall be deemed to be a consent by the DIP Agent or the DIP Secured Parties to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.    *DIP Payments Free and Clear*. Subject only to the Carve-Out, any and all payments or proceeds remitted to the DIP Agent, on behalf of the DIP Lenders, pursuant to the provisions of the Interim Order, this Final Order or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors, and solely in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects.

13.    *Use of Cash Collateral*.  The Loan Parties are hereby authorized, subject to the terms and conditions of this Final Order, to use Cash Collateral; *provided* that (a) the Prepetition Secured Parties are granted the Adequate Protection as and to the extent set forth below and (b) except on the terms and conditions of this Final Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

31

14.     *Adequate Protection of Prepetition FLFO Secured Parties.*   The Prepetition

FLFO Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of

the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral,

including the Cash Collateral, to the extent of diminution in the value of the Prepetition FLFO

Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after

the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including,

without limitation, any such diminution resulting from the depreciation, sale, lease or use by the

Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the

Prepetition FLFO Agents' liens on the Prepetition Collateral by the DIP Agent and the DIP

Lenders pursuant to the DIP Documents and this Final Order, and the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition FLFO**

**Secured Parties Adequate Protection Claims**").   In consideration of the foregoing, the

Prepetition FLFO Secured Parties are hereby granted the following (collectively, the

"**Prepetition FLFO Secured Parties Adequate Protection**"):

(a)  Prepetition FLFO Secured Parties Adequate Protection Liens.   The

Prepetition FLFO Agents (for themselves and for the benefit of the Prepetition FLFO

Lenders) are hereby granted (effective and perfected upon the date of the Interim Order and

without the necessity of the execution of any mortgages, security agreements, pledge

agreements, financing statements or other agreements), in the amount of the Prepetition

FLFO Secured Parties Adequate Protection Claims, a valid, perfected replacement security

interest in and lien upon all of the DIP Collateral including, without limitation,

Unencumbered Property (except D&O Tort Claims and Avoidance Actions) and the

Avoidance Proceeds and D&O Tort Proceeds, in each case subject and subordinate only to (i)

32

the Carve-Out, (ii) the Permitted Prior Liens, (iii) the Unaltered Senior Prepetition Liens and Rights, (iv) the DIP Liens, and (v) the Hedging Liens, and ranking *pari passu* with the Prepetition FLTL Secured Parties Adequate Protection Liens (as defined below) (the "**Prepetition FLFO Secured Parties Adequate Protection Liens**"); *provided*, that the Prepetition FLFO Agents shall use commercially reasonable efforts to first apply proceeds from DIP Collateral other than Avoidance Proceeds and/or D&O Tort Proceeds to satisfy any outstanding Prepetition FLFO Secured Parties Adequate Protection Claims.

(b) <u>Prepetition FLFO Secured Parties 507(b) Claim</u>.  The Prepetition FLFO Agents (for themselves and for the benefit of the Prepetition FLFO Lenders) are hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the aggregate amount of the Prepetition FLFO Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition FLFO Secured Parties 507(b) Claim**"); which Prepetition FLFO Secured Parties 507(b) Claim shall have recourse to and be payable from all of the DIP Collateral, including, without limitation, Avoidance Proceeds and D&O Tort Proceeds.  The Prepetition FLFO Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the Unaltered Senior Prepetition Liens and Rights, and the DIP Superpriority Claims, and shall be *pari passu* with the Prepetition FLTL Secured Parties 507(b) Claim (as defined below).  Except to the extent expressly set forth in this Final Order or the DIP Credit Agreement, the Prepetition FLFO Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition FLFO Secured

Parties 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c) <u>Prepetition FLFO Secured Parties Cash Payments</u>.  The Prepetition FLFO Secured Parties shall receive current payment in cash on the last business day of each month, or on such other dates as may be provided under the Prepetition FLFO Credit Agreement, in an amount equal to the non-default interest (or letter of credit fees, as applicable) accrued and unpaid payable under the Prepetition FLFO Credit Agreement (based, at the option of the Debtors, on the "LIBOR" rate, as provided in the Prepetition FLFO Credit Agreement); *provided*, that the payments made under this paragraph 14(c) shall be without prejudice to the right of the Debtors and/or the Creditors' Committee to seek a determination as to whether such payments constitute postpetition interest allowable under section 506(b) of the Bankruptcy Code or are in respect of principal.

(d) <u>Prepetition FLFO Secured Parties Fees and Expenses</u>.  Without duplication of amounts required to be paid pursuant to the DIP Documents, (i) the Loan Parties shall pay in cash all documented out-of-pocket professional fees, expenses and disbursements payable to the Prepetition FLFO Secured Parties, including all fees and expenses of counsel of the Prepetition FLFO Administrative Agent (Vinson & Elkins, LLP) and Opportune LLP, and all fees and expenses of counsel of the Prepetition FLFO Collateral Agent (Shipman & Goodwin LLP) (collectively, the "**Prepetition FLFO Advisors**"), that accrued prior to the Petition Date and (ii) the Loan Parties shall pay in cash all documented out-of-pocket professional fees, expenses and disbursements payable to the Prepetition FLFO Secured Parties (including all fees and expenses of the Prepetition FLFO Advisors) that have

accrued on or after the Petition Date, in each case of the foregoing clauses (i) and (ii), in accordance with the Prepetition FLFO Credit Agreement; *provided*, that the payments made under this paragraph 14(d) shall be without prejudice to the right of the Debtors and/or the Creditors' Committee to seek a determination as to whether such payments are allowable under section 506(b) of the Bankruptcy Code or are in respect of principal.

(e) <u>Payment of Fees and Expenses</u>  The payment of the fees, expenses and disbursements set forth in paragraphs 14(d) and 15(c) herein (to the extent incurred after the Petition Date) shall be made no sooner than ten business (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Creditors' Committee and the U.S. Trustee (the "**Review Period**") of summary invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a summary describing services provided and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (provided, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional).  The Debtors, the Creditors' Committee and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the applicable Prepetition Agent and the applicable Prepetition Lenders of any hearing on such motion or other

pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

(f)  Milestones and Covenants.  The Prepetition FLFO Secured Parties are hereby entitled to performance of those certain terms set forth in sections 6.25 (*Milestones*), 6.01 (*Information Covenants*), 6.20 (*Financial Covenants*) and 6.28 (*Hedge Agreements*) of the DIP Credit Agreement (the "**Additional Adequate Protection Provisions**").  While the DIP Facility remains outstanding, such Additional Adequate Protection Provisions may be waived, amended, modified or extended from time to time, in each case, as provided under the DIP Documents.  The Additional Adequate Protection Provisions shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder, and thereafter, may be waived, amended, modified or extended from time to time only by (i) order of the Court or (ii) the prior written consent of Prepetition FLFO Secured Parties and Prepetition FLTL Secured Parties holding greater than 50% of the aggregate outstanding principal amount of loans under both the Prepetition FLFO Credit Agreement and Prepetition FLTL Credit Agreement (the "**Required First Lien Secured Parties**").

(g)  Budget.  The Debtors shall promptly provide the Prepetition FLFO Administrative Agent, on behalf of itself and the Prepetition FLFO Lenders (and shall concurrently provide to counsel to the Creditors' Committee on a professional eyes only basis, provided that counsel to the Creditors' Committee reserves the right to challenge any "professional eyes only" designation in accordance with the terms of the applicable

36

confidentiality agreement), with all required written financial reporting and other periodic reporting that is delivered by the DIP Borrower under the DIP Credit Agreement, including with respect to the Approved Budget requirements set forth in the DIP Credit Agreement (the "**Budget Reporting**"). The Budget Reporting requirement shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder, and thereafter, (i) each Approved Budget shall be delivered to counsel for the Prepetition FLFO Secured Parties (and shall concurrently provide to counsel to the Creditors' Committee on a professional eyes only basis, provided that counsel to the Creditors' Committee reserves the right to challenge any "professional eyes only" designation in accordance with the terms of the applicable confidentiality agreement), and shall be acceptable to the Required First Lien Secured Parties, it being understood that if the Required First Lien Secured Parties have not objected to an updated Budget within five Business Days after delivery thereof, the Required First Lien Secured Parties shall be deemed to have approved such updated Budget, (ii) no such Budget shall be effective until so approved (or deemed approved), and upon approval (or deemed approval) of such Budget by the Required First Lien Secured Parties, shall constitute the Approved Budget for purposes of these Adequate Protection Reporting Obligations and (iii) this Budget Reporting requirement may be waived, amended, modified or extended from time to time with respect to the FLFO Secured Parties solely by the Required First Lien Secured Parties (in their sole discretion) (or the Creditors' Committee, as applicable).

(h) <u>Payments Attributable to Legacy Assets</u>.  In connection with any amounts paid after the Petition Date by the Debtors and attributable to Legacy Apache Properties or the Non-APA Remaining Assets (each, as defined in the Restructuring Support Agreement), the DIP Agent may use commercially reasonable efforts to first apply proceeds from the DIP

Collateral that is not Prepetition Collateral to satisfy such amounts before applying proceeds of DIP Collateral that is Prepetition Collateral to satisfy such amounts.

15.     *Adequate Protection of Prepetition FLTL Secured Parties.*  The Prepetition FLTL Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, to the extent of diminution in the value of the Prepetition FLTL Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition FLTL Agent's liens on the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition FLTL Secured Parties Adequate Protection Claims**").  In consideration of the foregoing, the Prepetition FLTL Secured Parties are hereby granted the following (collectively, the "**Prepetition FLTL Secured Parties Adequate Protection**"):

(a)  Prepetition FLTL Secured Parties Adequate Protection Liens. The Prepetition FLTL Agent (for itself and for the benefit of the Prepetition FLTL Lenders) is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition FLTL Secured Parties Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral including, without limitation, Unencumbered Property (except

38

the D&O Tort Claims and Avoidance Actions) and the Avoidance Proceeds and D&O Tort Proceeds, in each case subject and subordinate only to in each case subject and subordinate only to (i) the Carve-Out, (ii) the Permitted Prior Liens, (iii) the Unaltered Senior Prepetition Liens and Rights, (iv) the DIP Liens, and (v) the Hedging Liens, and ranking *pari passu* with the Prepetition FLFO Secured Parties Adequate Protection Liens (the "**Prepetition FLTL Secured Parties Adequate Protection Liens**", and together with the Prepetition FLFO Secured Parties Adequate Protection Liens, the "**Adequate Protection Liens**"); *provided*, that the Prepetition FLFO Agents shall use commercially reasonable efforts to first apply proceeds from DIP Collateral other than Avoidance Proceeds and/or D&O Tort Proceeds to satisfy any outstanding Prepetition FLTL Secured Parties Adequate Protection Claims.

(b) Prepetition FLTL Secured Parties 507(b) Claim.  The Prepetition FLTL Agent (for itself and for the benefit of the Prepetition FLTL Lenders) is hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition FLTL Secured Parties Adequate Protection Claim with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition FLTL Secured Parties 507(b) Claim**", and together with the Prepetition FLFO Secured Parties 507(b) Claim, the "**507(b) Claims**")); which Prepetition FLTL Secured Parties 507(b) Claim shall have recourse to and be payable from all of the DIP Collateral, including, without limitation, Avoidance Proceeds and D&O Tort Proceeds.  The Prepetition FLTL Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve-Out, the Permitted Prior Liens, the Unaltered Senior Prepetition Liens and Rights, and the DIP Superpriority Claims, and shall be *pari*

39

*passu* with the Prepetition FLFO Secured Parties 507(b) Claim.  Except to the extent

expressly set forth in this Final Order or the DIP Credit Agreement, the Prepetition FLTL

Secured Parties shall not receive or retain any payments, property or other amounts in respect

of the Prepetition FLTL Secured Parties 507(b) Claim unless and until the DIP Obligations

(other than contingent indemnification obligations as to which no claim has been asserted)

have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c) <u>Prepetition FLTL Secured Parties Fees and Expenses</u>.  Without

duplication of amounts required to be paid pursuant to the DIP Documents, (i) the Loan

Parties shall pay in cash all documented out-of-pocket professional fees, expenses and

disbursements payable to the Prepetition FLTL Secured Parties, including all fees and

expenses of counsel and other professionals of the Prepetition FLTL Agent (including

Shipman & Goodwin LLP) and the ad hoc group of Prepetition FLTL Lenders (including

Davis Polk & Wardwell LLP, Haynes and Boone LLP, Gordon, Arata, Montgomery, Barnett,

McCollam, Duplantis & Eagan, LLC, Rothschild & Co US Inc. and Intrepid Partners, LLC

(collectively with Shipman & Goodwin, LLP and any other advisor retained by the

Prepetition FLTL Secured Parties, the "**Prepetition FLTL Secured Parties Advisors**")) that

accrued prior to the Petition Date and (ii) the Loan Parties shall pay in cash all documented

out-of-pocket professional fees, expenses and disbursements payable to the Prepetition FLTL

Secured Parties (including all fees and expenses of the Prepetition FLTL Secured Parties

Advisors) that have accrued on or after the Petition Date, in each case of the foregoing

clauses (i) and (ii), in accordance with the Prepetition FLTL Credit Agreement; *provided*,

that the payments made under this paragraph 15(c) shall be without prejudice to the right of

the Debtors and/or the Creditors' Committee to seek a determination as to whether such

payments are allowable under section 506(b) of the Bankruptcy Code or are in respect of principal.

(d) <u>Milestones and Covenants</u>.  The Prepetition FLTL Secured Parties are hereby entitled to performance of the Additional Adequate Protection Provisions.  While the DIP Facility remains outstanding, such Additional Adequate Protection Provisions may be waived, amended, modified or extended from time to time, in each case, as provided under the DIP Documents.  The Additional Adequate Protection Provisions shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder, and thereafter, may be waived, amended, modified or extended from time to time only by (i) order of the Court or (ii) the prior written consent of the Required First Lien Secured Parties.

(e) <u>Budget</u>.  The Debtors shall promptly provide the Prepetition FLTL Administrative Agent, on behalf of itself and the Prepetition FLTL Lenders, with all required written financial reporting and other periodic reporting that is delivered by the DIP Borrower under the DIP Credit Agreement, including the Budget Reporting. This Budget Reporting requirement shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder, and thereafter, (i) each Approved Budget shall be delivered to counsel for the Prepetition FLTL Secured Parties, and shall be reasonably acceptable to the Required First Lien Secured Parties, it being understood that if the Required First Lien Secured Parties have not objected to an updated Budget within five Business Days after delivery thereof, the Required First Lien Secured Parties shall be deemed to have approved such updated Budget, (ii) no such Budget shall be effective until so approved (or deemed approved), and upon approval (or deemed approval) of such Budget by the Required First Lien Secured Parties, shall constitute the Approved Budget for purposes of this Budget Reporting requirement and (iii) this

Budget Reporting requirement may be waived, amended, modified or extended from time to time with respect to the FLTL Secured Parties solely by the Required First Lien Secured Parties (in their sole discretion).

(f)   In connection with any amounts paid after the Petition Date by the Debtors and attributable to Legacy Apache Properties or the Non-APA Remaining Assets, the DIP Agent may use commercially reasonable efforts to first apply proceeds from the DIP Collateral that is not Prepetition Collateral to satisfy such amounts before applying proceeds of DIP Collateral that is Prepetition Collateral to satisfy such amounts.

16.   *Limitation on Charging Expenses Against Prepetition Collateral*. In partial consideration for, among other things, the Carve Out and the payments made under the Approved Budget to administer the Cases with the use of Cash Collateral, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition Agents or the Prepetition Lenders, as the case may be, and in each case acting at the written direction of the requisite percentage of Prepetition FLFO Lenders, Prepetition FLTL Lenders or Prepetition SLTL Lenders, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Agents or the Prepetition Lenders. For the avoidance of doubt, consent to the Carve Out or the approval of any budget hereunder shall not be deemed a consent under this paragraph.  Nothing contained in this Final Order shall be deemed to be a consent by

the Prepetition Secured Parties to any charge, lien, assessment or claim against the DIP

Collateral under section 506(c) of the Bankruptcy Code or otherwise.

17.     *Adequate Protection Payments Free and Clear.*  Any and all payments or

proceeds remitted to the Prepetition FLFO Administrative Agent on behalf of Prepetition FLFO

Secured Parties or to the Prepetition FLTL Agent on behalf of any Prepetition FLTL Secured

Parties, pursuant to the provisions of the Interim Order and this Final Order, any subsequent

order of the Court or the Prepetition Debt Documents, shall be irrevocable, received free and

clear of any claim, charge, assessment or other liability, including, without limitation, any such

claim or charge arising out of or based on, directly or indirectly, section 506(c) of the

Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by,

through or on behalf of the Debtors, and solely in the case of payments made or proceeds

remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects.

18.     *Limitations on "Equities of the Case" Exception*. The Prepetition Secured Parties

are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy

Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall

not apply to the Prepetition Secured Parties or the Prepetition Obligations.

19.     *Waiver of Marshaling for Prepetition Secured Parties*. In no event shall the

Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar

doctrine with respect to any of the Prepetition Collateral.

20.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances

and given that the Adequate Protection is consistent with the Bankruptcy Code, including section

506(b) thereof, the Court finds that the Adequate Protection is reasonable and sufficient to

protect the interests of the Prepetition Secured Parties and any other parties' holding interests

that are secured by Primed Liens; *provided* that any of the Prepetition Secured Parties, upon a change in circumstances, may request further or different adequate protection, and the Debtors or any other party may, subject to and consistent with the terms of the Intercreditor Agreements, contest any such request.

      21.    *Perfection of DIP Liens and Adequate Protection Liens.*

      (a) The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, on behalf of, or at the direction of, the DIP Lenders or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the Closing Date.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens, and such parties shall provide reasonable cooperation to the DIP

Agent with respect to such matters.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b) A certified copy of this Final Order may, in the discretion of the DIP Agent, at the direction of the Required Lenders under the DIP Documents, or the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent and the Prepetition Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

22.     *Preservation of Rights Granted Under This Final Order.*

(a) Other than the Carve-Out and other claims and liens expressly granted by this Final Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the DIP Agent and the DIP Lenders or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection remain outstanding, and, except as otherwise expressly provided in paragraph 9 of this Final Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any

45

federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)     It shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral, subject to the Remedies Notice Period, if any of the Loan Parties, without the prior written consent of the Required Lenders, file any motion or other pleading, execute any other writing, or make any oral argument or statement in support of (or support any other party in the filing of a motion or other pleading or making of any oral argument in support of), if there is entered or confirmed, or if there occurs (in each case, as applicable):

(i)     a failure of the Debtors to make any payment under the Interim Order or this Final Order to any of the DIP Secured Parties when due;

(ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Final Order or (y) comply with any covenant or agreement in this Final Order in any material respect, in each case, which failure is not cured within three (3) days after receipt of written notice thereof;

(iii)   any modifications, amendments, or reversal of this Final Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

(iv)    an order converting or dismissing any of the Cases;

(v)     an order appointing a chapter 11 trustee in the Cases;

(vi)    an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

(vii)   a plan of reorganization that does not provide for the payment in full in cash of the DIP Facility being proposed by the Debtors, or, solely as to the right to terminate use of Cash Collateral, any other plan of reorganization that constitutes an Alternative Restructuring

46

(as defined in the Restructuring Support Agreement) being proposed by the Debtors or confirmation thereof;

(viii)    the sale of all or substantially all of the assets of the Loan Parties or all Specified Assets (as defined in the Restructuring Support Agreement) (in each case, except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made); or

(ix)    any "Event of Default" as defined in the DIP Credit Agreement.

(c)    It shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral, subject to the Remedies Notice Period, if any of the Loan Parties, without the prior written consent of the Prepetition FLTL Agent, file any motion or other pleading, execute any other writing, or make any oral argument or statement in support of (or support any other party in the filing of a motion or other pleading or making of any oral argument in support of, if there is entered or confirmed, or if there occurs (in each case, as applicable):

(i)    a failure of the Debtors to make any payment under the Interim Order or this Final Order to any of the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties when due;

(ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Final Order or (y) comply with any covenant or agreement in this Final Order in any material respect, and such failure is materially adverse to the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties. in each case, which failure is not cured within three (3) Business Days after receipt of written notice thereof;

(iii)    any modifications, amendments, or reversal of this Final Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party, and such modification, amendment, or extension is materially adverse to the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties;

(iv)    an order converting or dismissing any of the Cases;

(v)    an order appointing a chapter 11 trustee in the Cases; or

47

      (vi)    an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), and such order is materially adverse to the Prepetition FLFO Secured Parties or the Prepetition FLTL Secured Parties.

Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

      (d)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection or Adequate Protection Liens incurred by the Loan Parties to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the

original provisions of this Final Order, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection.

(e)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection. The terms and provisions of this Final Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

(f)     Nothing in this Order shall be deemed an adjudication of the validity, priority, or extent of any property interests, liens, and/or security interests (if any) held by Ecopetrol America LLC ("**Ecopetrol**") and arising under that certain Unit Operating Agreement dated January 1, 2013 (as amended and modified, the "**Gunflint Agreement**") by and between, among other parties, Debtor Fieldwood Energy LLC and Ecopetrol, and the oil and gas leases associated with the Gunflint Agreement**,** including without limitation with respect to any interests in the joint account funds maintained by Debtor Fieldwood Energy LLC.

23.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph 5 of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph 5 of this Final Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Cases (including the Creditors' Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless (a) such committee (including the Creditors' Committee) or any other party in interest, in each case with requisite standing granted by the Court (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, without limitation, in this paragraph 23) by no later than (i) 75 days after enter of this Final Order, (ii)

any such later date as has been agreed to, in writing, by the Prepetition Agents (with the consent of the DIP Lenders) as applicable, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph; *provided,* that the filing of a motion for standing by the Creditors' Committee for any proposed Challenge shall automatically extend the Challenge Period with respect to such Challenge described in such motion, until five (5) Business Days after such motion for standing is determined by this Court (the time period established by the foregoing clauses (i)-(iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Parties or their respective subsidiaries and each of their former, current or future officers, partners, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Agreements, the Prepetition Debt, the Prepetition Liens in the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such Challenge or claim and any Challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and

barred.  If no such Challenge is timely and properly filed during the Challenge Period or the

Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors'

stipulations, admissions, agreements and releases contained in this Final Order, including,

without limitation, those contained in paragraph 5 of this Final Order, shall be binding on all

parties in interest; (b) the obligations of the Loan Parties under the Prepetition Credit

Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to

defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all

purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the

Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding,

perfected, security interests and liens, not subject to recharacterization, subordination, avoidance

or other defense; and (d) the Prepetition Debt and the Prepetition Liens on the Prepetition

Collateral shall not be subject to any other or further claim or challenge by any statutory or non-

statutory committee appointed or formed in the Cases or any other party in interest acting or

seeking to act on behalf of the Debtors' estates, including, without limitation, any successor

thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner

appointed or elected for any of the Debtors) and any defenses, claims, causes of action,

counterclaims and offsets by any statutory or non-statutory committee appointed or formed in the

Cases (including the Creditors' Committee), or any other party acting or seeking to act on behalf

of the Debtors' estates, including, without limitation, any successor thereto (including, without

limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of

the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the

Prepetition Secured Parties and their Representatives arising out of or relating to any of the

Prepetition Credit Agreements shall be deemed forever waived, released and barred.  If any such

Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, those contained in paragraph 5 of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any statutory or non-statutory committee appointed or formed in the Cases, and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committee appointed or formed in these Cases (including the Creditors' Committee), standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Agreements, the Prepetition Debt or the Prepetition Liens.

24.     *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding any other provision of this Final Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Guarantor, any official committee appointed in the Cases, or any trustee appointed in the Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superiority Claims and/or the Adequate Protection, Adequate

Protection Liens and superpriority claims granted to the Prepetition Secured Parties under the Interim Order or this Final Order or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition Debt, the DIP Obligations and/or the liens, claims, rights, or security interests granted under the Interim Order, this Final Order, the DIP Documents or the Prepetition Credit Agreements including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided* that notwithstanding anything to the contrary set forth herein, no more than an aggregate of $250,000 of the Collateral or any proceeds of the DIP Facility, the DIP Collateral or the Prepetition Collateral may be used to pay any allowed fees of the Creditors' Committee, if any, or their respective professionals to the extent incurred in connection with investigating the validity, enforceability, priority, obligations, claims and liens of the Prepetition Secured Parties and their respective agents, attorneys, advisors or representatives, or investigating any Challenges against any of the foregoing; (ii) to prevent, hinder, or otherwise delay the Prepetition Secured Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization on the Prepetition Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Prepetition Credit Agreements or this Final Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties, the DIP Agent or the DIP Lenders under this Final Order, the Prepetition Credit Agreements or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the Definitive Documentation) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP

Superpriority Claims, adequate protection liens and superpriority claims and liens granted to the Prepetition Secured Parties, unless all DIP Obligations, Prepetition Debt, adequate protection, and claims granted to the DIP Agent, DIP Lenders or Prepetition Secured Parties under this Final Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the DIP Lenders; or (vi) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the DIP Lenders in or are otherwise included in the "**Approved Budget**" (as initially attached to the Motion, and as updated in accordance with the terms of the DIP Documents). For the avoidance of doubt, nothing herein shall modify or limit the Loan Parties' use of the Carve-Out in connection with such rights.

25.     *Loss or Damage to Collateral*.  Nothing in this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Loan Parties.

26.     *Final Order Governs*.  In the event of any inconsistency between the provisions of this Final Order and the DIP Documents or any other order entered by this Court, the provisions of this Final Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents, including, without limitation, the Approved Budget.

27.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

28.     *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the

DIP Agent and the DIP Lenders shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute). The Prepetition Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

29.     *Master Proof of Claim*.  The Prepetition Agents shall not be required to file proofs of claim in the Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Debt arising under the Prepetition Credit Agreements.  The statements of claim in respect of the Prepetition Debt set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each Prepetition Agent is authorized, but not required, to file in the Debtors' lead chapter 11 case *Fieldwood Energy Inc.,* Case No. 20-33948, a single, master proof of claim on behalf of the relevant Prepetition Secured Parties on account of any and all of their respective claims arising under the

applicable Prepetition Credit Agreements and hereunder (each, a "**Master Proof of Claim**")
against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the
Debtors, the Prepetition Agents and the Prepetition Secured Parties, and each of their respective
successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth
opposite its name therein in respect of its claims against each of the Debtors of any type or nature
whatsoever with respect to the applicable Prepetition Credit Agreements, and the claim of each
Prepetition Secured Party (and each of its respective successors and assigns), named in a Master
Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of
these Cases.  The Master Proofs of Claim shall not be required to identify whether any
Prepetition Secured Party acquired its claim from another party and the identity of any such party
or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation
among such holders of the claims asserted therein resulting from the transfer of all or any portion
of such claims.  The provisions of this paragraph 29 and each Master Proof of Claim are intended
solely for the purpose of administrative convenience and shall not affect the right of each
Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed
in these Cases.  The Master Proofs of Claim shall not be required to attach any instruments,
agreements or other documents evidencing the obligations owing by each of the Debtors to the
applicable Prepetition Secured Parties, which instruments, agreements or other documents will
be provided upon written request to counsel to the applicable Prepetition Agent.

30.     *Insurance*.  To the extent that any of the Prepetition Agents is listed as loss payee
under the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the
loss payee for the Prepetition Secured Parties under such insurance policies and shall act in that
capacity and distribute any proceeds recovered or received in respect of any such insurance

policies, <u>first</u>, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and <u>second</u>, to the payment of the Prepetition Debt owed to the Prepetition Secured Parties.

31.     *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

32.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

33.     *Payments Held in Trust*.   Except as expressly permitted in this Final Order or the DIP Documents, in the event that any Prepetition Secured Party receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the DIP Commitments in accordance with the DIP Documents, such Prepetition Secured Party shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order.

34.     *Credit Bidding*.  (a) The DIP Agent, as directed by the Required Lenders under the DIP Documents, shall have the right to credit bid on behalf of the Senior DIP Secured Parties, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral, and (b) subject to any applicable Intercreditor Agreement, the Prepetition Secured Parties shall have the right to credit bid on behalf of the Prepetition Secured Parties, up to the full amount of their Prepetition Debt in any sale of the Prepetition Collateral, in each case, as provided for in and subject to section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

35.     *Dutch Distributions*. Nothing in this Final Order or in any DIP Document shall prejudice, impair, limit or otherwise be deemed a waiver of the right of any party in interest (including the Creditors' Committee) to seek determination by the Court (made after a hearing on notice to affected parties) that the distributions described in section 6.27 of the DIP Credit Agreement are not encumbered by the Prepetition Liens of the Prepetition Lenders or otherwise constitute Collateral (as defined in the applicable Prepetition Credit Agreement) and all such rights are fully and expressly preserved and shall be subject to the Challenge Period.

36.     *Intercreditor Agreements*. Nothing in this Final Order shall amend or otherwise modify the terms or enforceability of the Intercreditor Agreements, including without limitation, the turnover and bankruptcy-related provisions contained therein, and the Intercreditor Agreements shall each remain in full force and effect. The rights of the Prepetition Secured Parties shall at all times remain subject to the Intercreditor Agreements.

37.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

38.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

39.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

40.     Subject to Section 553 of the Bankruptcy Code and applicable law, nothing in this Final Order is intended to limit, impact or affect, in any way, any rights to set off or recoupment that the United States may have, all of which are expressly reserved.

41.     Notwithstanding anything to the contrary in this Final Order, the liens granted in this Final Order, if any, against any of the Debtors' interests in the federal leases, grants of pipeline rights of way and rights of use and easement, shall not grant the applicable lender any greater rights or interests in the applicable leases, grants of pipeline rights of way and/or rights of use and easement than those to which the Debtors are entitled.  For the avoidance of any doubt, to the extent that any pre-petition secured parties or post-petition lenders foreclose on any pre-petition liens, adequate protection liens and/or post-petition liens, all regulatory and contractual requirements that apply to such leases, rights of way and rights of use and easement shall be preserved, subject to any defenses that may apply.

42.     The Debtors shall promptly serve copies of this Final Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Final Hearing, to any party that has filed a request for notices with this Court.

Signed: September 15, 2020

_____
Marvin Isgur
United States Bankruptcy Judge

United States Bankruptcy Court
Southern District of Texas

In re:                                                                    Case No. 20-33948-mi
Fieldwood Energy LLC                                                      Chapter 11
Dynamic Offshore Resources NS, LLC
        Debtors

## CERTIFICATE OF NOTICE

District/off: 0541-4        User: TylerLaws        Page 1 of 3              Date Rcvd: Sep 15, 2020
                           Form ID: pdf002         Total Noticed: 67

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Sep 17, 2020.
```
db        +Bandon Oil and Gas GP, LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +Bandon Oil and Gas, LP,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +Dynamic Offshore Resources NS, LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,
           Houston, TX 77042-3623
db        +FW GOM Pipeline, Inc.,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +Fieldwood Energy Inc.,    2000 W Sam Houston Pkwy S,    s,    Houston, TX 77042-3623
db        +Fieldwood Energy LLC,    2000 W. Sam Houston Pkwy. S.,    Suite 1200,    Houston, TX 77042-3623
db        +Fieldwood Energy Offshore LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,
           Houston, TX 77042-3623
db        +Fieldwood Energy SP LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +Fieldwood Offshore LLC,    2000 W Sam Houston Pkwy. S.,    Suite 1200,    Houston, TX 77042-3623
db        +Fieldwood Onshore LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +Fieldwood SD Offshore LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +GOM Shelf LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +Galveston Bay Pipeline LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,    Houston, TX 77042-3623
db        +Galveston Bay Processing LLC,    2000 W Sam Houston Pkwy S,    Suite 1200,
           Houston, TX 77042-3623
aty       +Clark Hill Strasburger,    Attn: Duane J. Brescia,    720 Brazos, Suite 700,
           Austin, TX 78701-2531
aty       +Donna T Parkinson,    Parkinson Phinney,    3600 American River Dr,    Suite 145,
           Sacramento, CA 95864-5960
aty       +Emile Joseph, Jr.,    Allen & Gooch,    P O Box 81129,    Lafayette, LA 70598-1129
aty       +Petro Amigos Supply, Inc.,    c/o Wayne Kitchens,    Total Plaza,    1201 Louisiana, 28th Floor,
           Houston, TX 77002-5607
aty       +Ronald Savoie,    Jackson & Jackson, P.L.L.C.,    111 Founders Drive, Suite 400,
           Baton Rouge, LA 70810-8959
cr        +A2D TECHNOLOGIES, INC. D/B/A TGS GEOLOGICAL PRODUC,    c/o Andrew A Braun,
           Gieger Laborde & Laperouse, LLC,    Suite 4800, 701 Poydras Street,    New Orleans, LA 70139,
           US 70139-7756
cr        +Aker Solutions Inc.,    Bruce J. Ruzinsky,    1401 McKinney Street,    Suite 1900,
           Houston, TX 77010-4037
intp      +Apache Corporation,    Hunton Andrews Kurth LLP,    Attn: Robin Russell,    600 Travis Street,
           Suite 4200,    Houston, TX 77002-2929
cr        +Archrock Services, LP,    16666 North Chase Dr.,    Houston, TX 77060-6014
cr        +Aspen American Insurance Company,    c/o Randall A. Rios,    Husch Blackwell LLP,
           600 Travis Street, Suite 2350,    Houston, TX 77002-2929
cr        +Bedrock Petroleum Consultants, LLC,    c/o Bradley,    Attn: James B. Bailey,
           1819 Fifth Avenue North,    Birmingham, AL 35203-2120
cr        +Broussard Brothers, Inc.,    501 S. Main St.,    Abbeville, LA 70510,    US 70510-6508
cr        +C-Dive, L.L.C.,    c/o Leann O. Moses,    1100 Poydras Street,    Suite 3100,
           New Orleans, LA 70163-1102
cr        +CETCO Energy Services Company, LLC,    c/o The Derbes Law Firm, LLC,    3027 Ridgelake Dr.,
           Metairie, LA 70002-4924
cr        +DLS, LLC,    P.O. Box 309,    Lydia, LA 70569-0309
cr        +Discovery Gas Transmission LLC,    c/o Steven W. Soule,    Hall, Estill, et al.,
           320 South Boston Avenue,    Suite 200,    Tulsa, OK 74103-3705
cr        +Diversified Well Logging, LLC,    C/O Dore Rothberg McKay, PC,    17171 Park Row, Suite 160,
           Houston, TX 77084-4927
cr        +Everest Reinsurance Company,    c/o Randall A. Rios,    Husch Blackwell LLP,
           600 Travis Street, Suite 2350,    Houston, TX 77002-2929
cr         Gibson Applied Technology & Enginnering,    1630 Park Ten Place,    Suite 206,
           Houston, TX  77084
cr        +Gulfstar One LLC,    c/o Steven W. Soule,    Hall, Estill, et al.,    320 South Boston Avenue,
           Suite 200,    Tulsa, OK 74103-3705
intp      +Helis Oil & Gas Company, LLC,    c/o J. David Forsyth,    400 Poydras Street, Suite 2550,
           New Orleans, LA 70130-3292
cr        +JX Nippon Oil Exploration (U.S.A.) Limited,    c/o GIEGER, LABORDE & LAPEROUSE, L.L.C.,
           5151 SAN FELIPE, SUITE 750,    Houston, TX 77056-3646
cr        +Lexon Insurance Company and Endurance American Ins,    Harris Beach PLLC,
           c/o Lee E. Woodard, Esq.,    333 West Washing St., Ste. 200,    Syracuse, NY 13202-5202
cr        +Martin Energy Services LLC,    c/o Robert P. Franke,    Clark Hill Strasburger,
           901 Main St., Suite 6000,    Dallas, TX 75202-3748
cr        +Milorad Raicevic,    3701 Kirby Drive, Suite 1000,    Houston, TX 77098-3928
op        +Prime Clerk LLC,    One Grand Central Place,    60 East 42nd Street,    Suite 1440,
           New York, NY 10165-1446
intp       Railroad Commission of Texas,    c/o Office of the Attorney General,
           Bankruptcy & Collections Division,    P. O. Box 12548,    Austin, TX  78711-2548
cr        +Red Willow Offshore, LLC,    c/o Barnet B. Skelton, Jr.,    815 Walker, Suite 1502,
           Houston, TX 77002-5832
cr        +Regis Southern,    c/o Reese Baker,    950 Echo Lane Ste 300,    Houston, TX 77024-2824
cr        +SBM Gulf Production LLC,    c/o Ken Green,    Snow Spence Green LLP,    P O Box 549,
           Hockley, TX 77447-0549
```

District/off: 0541-4          User: TylerLaws          Page 2 of 3          Date Rcvd: Sep 15, 2020
                             Form ID: pdf002                      Total Noticed: 67

```
cr            +Seitel Data, Ltd.,   c/o Duane J. Brescia,    Clark Hill Strasburger,   720 Brazos, Suite 700,
               Austin, TX 78701-2531
cr            +Sheldon Independent School District,   c/o Owen M. Sonk,   PBFCM, LLP,
               1235 N. Loop W., Suite 600,   Houston, TX 77008-1772
cr            +Sheldon Independent School District, et al,   c/o Owen M. Sonik,   PBFCM, LLP,
               1235 N. Loop W., Ste 600,   Houston, TX 77008-1772
intp          +TC Oil Louisiana, LLC,   c/o Wick Phillips Attn: Jason Rudd,   3131 McKinney Ave., Suite 100,
               Dallas, TX 75204-2430
cr            +TGS AP Investments AS,   c/o Andrew A Braun,   Geiger Laborde & Laperouse, LLC,
               Suite 4800, 701 Poydras Street,   New Orleans, LA 70139-7756
cr            +TGS-NOPEC Geophysical Company,   c/o Andrew A Braun,   Gieger, Laborde & Laperouse, LLC,
               Suite 4800, 701 Poydras St.,   New Orleans, LA 70139,   US 70139-7756
cr            +TGS-NOPEC Geophysical Company ASA,   c/o Andrew A Braun,   Gieger Laborde & Laperouse, LLC,
               Suite 4800, 701 Poydras Street,   New Orleans, LA 70139,   US 70139-7756
intp          +Tana Exploration Company, LLC,   c/o Wick Phillips Attn: Jason Rudd,
               3131 McKinney Ave., Suite 100,   Dallas, TX 75204-2430
cr            +Tetra Applied Technologies, Inc.,   c/o Zachary S. McKay,   Dore Rothberg McKay, P.C.,
               17171 Park Row, Suite 160,   Houston, TX 77084-4927
cr            +Transcontinental Gas Pipe Line Company, LLC,   c/o Steven W. Soule,   Hall, Estill, et al.,
               320 South Boston Avenue,   Suite 200,   Tulsa, OK 74103-3705
cr            +U.S. Specialty Insurance Company,   c/o Locke Lord LLP,   ATTN: Philip Eisenberg,
               600 Travis Street, Suite 2800,   Houston, TX 77002-2914
cr            +WFS Liquids LLC,   c/o Steven W. Soule',   Hall, Estill, et al.,   320 South Boston Avenue,
               Suite 200,   Tulsa, OK 74103-3705
cr            +Westerngeco LLC,   c/o Andrew A Braun,   Gieger Laborde & Laperouse, LLC,
               Suite 4800, 701 Poydras Street,   New Orleans, LA 70139,   US 70139-7756
cr            +Williams Field Services-Gulf Coast Company LLC,   c/o Steven W. Soule,   Hall, Estill, et al.,
               320 South Boston Avenue,   Suite 200,   Tulsa, OK 74103-3705
cr            +Zurich American Insurance Company,   c/o Duane Brescia,   720 Brazos Street,   Suite 700,
               Austin, TX 78701-2531

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
cr            +E-mail/Text: bnkatty@aldineisd.org Sep 15 2020 23:38:00    Aldine ISD,   Legal Department,
               2520 WWThorne Dr.,   Houston, TX 77073-3406
cr             E-mail/Text: houston_bankruptcy@LGBS.com Sep 15 2020 23:36:53    Cypress-Fairbanks ISD,
               Linebarger Goggan Blair & Sampson LLP,   C/O John P. Dillman,   P.O. Box 3064,
               Houston, Tx  77253-3064
cr             E-mail/Text: houston_bankruptcy@LGBS.com Sep 15 2020 23:36:53    Galveston County,
               Linebarger Goggan Blair & Sampson LLP,   C/O John P. Dillman,   P.O. Box 3064,
               Houston, TX  77253-3064
cr             E-mail/Text: houston_bankruptcy@LGBS.com Sep 15 2020 23:36:53    Harris County,
               Linebarger Goggan Blair & Sampson LLP,   C/O John P. Dillman,   PO Box 3064,
               Houston, TX  77253-3064
cr            +E-mail/Text: bankruptcy@islandoperating.com Sep 15 2020 23:37:42
               Island Operating Company Inc,   770 S Post Oak Lane,   Suite 400,   Houston, TX 77056-6666
cr             E-mail/Text: houston_bankruptcy@LGBS.com Sep 15 2020 23:36:53    Jefferson County,
               Linebarger Goggan Blair & Sampson LLP,   C/O John P. Dillman,   P.O. Box 3064,
               Houston, TX  77253-3064
cr             E-mail/Text: houston_bankruptcy@LGBS.com Sep 15 2020 23:36:53    Matagorda County,
               Linebarger Goggan Blair & Sampson LLP,   C/O John P. Dillman,   Post Office Box 3064,
               Houston, TX  77253-3064
cr            +E-mail/Text: pwp@pattiprewittlaw.com Sep 15 2020 23:36:36    Plains Gas Solutions,
               c/o Law Ofc Patricia Williams Prewitt,   10953 Vista Lake Ct.,   Navasota, TX  77868,
               UNITED STATES 77868-6981
                                                                                           TOTAL: 8

             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr             A-Port LLC
cr             Acadian Contractors, Inc
cr             Ad Hoc Group of Secured Lenders
cr             Archrock Partners Operating, LLC and Archrock Serv
cr             CCG Services (U.S.) Inc.
cr             CNOOC Petroleum Offshore U.S.A. Inc.
cr             CTD Legacy LLC
intp           Cantor Fitzgerald Securities, as DIP Agent
cr             Chevron U.S.A. Inc.
cr             Diverse Safety & Scaffolding, LLC
cr             Ecopetrol America LLC
intp           Eni Petroleum US LLC
intp           Eni US Operating Co. Inc.
cr             ExxonMobil Corporation
intp           Facilities Consulting Group, LLC
intp           Florida Gas Transmission Company, LLC
cr             Goldman Sachs Bank USA
cr             Halliburton Energy Services, Inc.
cr             Intracoastal Liquid Mud, Inc.,   UNITED STATES
intp           Kilgore Marine
cr             Lavaca County
cr             Liberty Mutual Insurance Company
cr             Linear Controls, Inc.
```

```
District/off: 0541-4          User: TylerLaws        Page 3 of 3              Date Rcvd: Sep 15, 2020
                              Form ID: pdf002         Total Noticed: 67

              ***** BYPASSED RECIPIENTS (continued) *****
cr              Live Oak CAD
cr              Louisiana Safety Systems, Inc.
intp            Manta Ray Offshore Gathering Company, L.L.C.
intp            Nautilus Pipeline Company, L.L.C.
cr              Oceaneering International Inc.
cr              Oil States Energy Services, LLC
cr              Partco, LLC
cr              Philadelphia Indemnity Insurance Company
cr              R360 Environmental Solutions, LLC
intp            RLI Insurance Company
cr              Renaissance Offshore, LLC
cr              Republic Helicopters, Inc.
cr              Ridgewood Energy Corporation
cr              Rio Grande City CISD
cr              Samson Contour Energy E & P, LLC
cr              Samson Offshore Mapleleaf, LLC
cr              Sea Robin Pipeline Company, LLC
cr              Starr County
cr              State of Louisiana, Department of Natural Resource
cr              Stingray Pipeline Company, LLC
intp            Subsea 7 LLC
cr              The Hanover Insurance Company
crcm            The Official Committee of Unsecured Creditors
cr              Travelers Casualty and Surety Company of America
cr              Trunkline Gas Company, LLC
cr              U.S. Department of the Interior
cr              W&T Offshore, Inc.
cr              XL Specialty  Insurance Co
cr              XTO Energy, Inc.
                                                              TOTALS: 52, * 0, ## 0
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Sep 17, 2020                          Signature:  /s/Joseph Speetjens

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on September 15, 2020 at the address(es) listed below:
NONE.                                                         TOTAL: 0