## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |
| | § | |

**APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN AND EMPLOY
HOULIHAN LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND
INVESTMENT BANKER TO DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

---

**THIS APPLICATION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases,

as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as

follows in support of this application (the "**Application**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

**Background**

1.      Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

3.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are an independent exploration and production ("**E&P**") company in the Gulf of Mexico.  With operations in both the United States and Mexico, the Company is focused on the exploration and development of offshore oil and gas assets in the shallow and deepwater Gulf of Mexico and the Gulf Coast region.

4.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Dane in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 29) (the "**Dane Declaration**").

**Relief Requested**

5.        By this Application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and Bankruptcy Rules 2014(a) and 2016(b), and Bankruptcy Local Rules 2014-1 and 2016-1, the Debtors request entry of an order (i) authorizing the Debtors to employ and retain Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") as their financial advisor and investment banker in accordance with the terms and conditions set forth in that certain engagement agreement, dated as of March 30, 2020 (the "**Engagement Letter**"), a copy of which is attached hereto as **Exhibit A**, (ii) approving the terms of Houlihan Lokey's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Letter, (iii) waiving certain informational requirements, and (iv) granting related relief.

6.        In support of this Application, the Debtors submit the Declaration of John-Paul Hanson, a Managing Director of Houlihan Lokey (the "**Hanson Declaration**"), which is attached hereto as **Exhibit B**.

7.        A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit C** (the "**Proposed Order**").

**Jurisdiction**

8.        The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Houlihan Lokey's Qualifications**

9.        The Debtors seek to retain Houlihan Lokey as their financial advisor and investment banker because, among other things, Houlihan Lokey has both extensive experience and an excellent reputation in providing high quality investment banking services to debtors and

creditors in financial restructurings and bankruptcy proceedings and a dedicated global oil & gas industry investment banking team.  The Debtors have determined, in the exercise of their business judgment, that the size of their business operations and the complexity of these chapter 11 cases require them to employ an investment banker and financial advisor with knowledge of the Debtors' industry and businesses, experience with the chapter 11 process, and the ability to advise them with respect to their global restructuring.  The Debtors have selected Houlihan Lokey as their investment banker and financial advisor based upon, among other things, (a) the Debtors' need to retain an investment banking and financial advisory firm with Houlihan Lokey's depth of expertise in the oil & gas industry to provide advice with respect to the sale and restructuring processes and (b) Houlihan Lokey's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.  The Debtors further believe that Houlihan Lokey is well-qualified to provide its services to the Debtors in a cost-effective and efficient manner.  Retaining such an advisor will enable the Debtors to carry out their duties in the chapter 11 cases and to assist in the reorganization of the estate.

10.     Houlihan Lokey, together with the other subsidiaries of its direct parent company, Houlihan Lokey, Inc., is an internationally recognized investment banking and financial advisory firm, with 23 locations worldwide and more than 1,000 professionals.  Houlihan Lokey is a leader in providing such services to debtors, unsecured and secured creditors, and other parties-in-interest involved with financially troubled companies both in and outside of bankruptcy.  Houlihan Lokey has been, and is, involved in some of the largest restructurings in the United States, both out of court and in chapter 11 cases.  In 2019, Houlihan Lokey was ranked the No. 1 Global Distressed Debt and Bankruptcy Restructuring Advisor, according to Refinitiv (formerly known as Thomson Reuters).  Houlihan Lokey has been retained to provide investment banking and financial advisory

4

services in, among other cases, *In re Bristow Group Inc.,* Case No. 19-32713 (Bankr. S.D. Tex. May 11, 2019); *In re PHI, Inc.,* Case No. 19-30923 (Bankr. N.D. Tex. Mar 14, 2019); *In re Walter Investment Management Corporation*, Case No. 17-13446 (Bankr. S.D.N.Y. Nov. 30, 2017); *In re Seadrill Limited*, Case No. 17-60079 (Bankr. S.D. Tex. Sep. 12, 2017); *In re Westinghouse Electric Company LLC*, Case No. 17-10751 (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Roust Corporation*, Case No. 16-23786 (Bankr. S.D.N.Y. Dec. 30, 2016); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (Bankr. D. Del. Mar. 2, 2016); *In re Relativity Fashion, LLC* (a.k.a. Relativity Media), Case No. 15-11989 (Bankr. S.D.N.Y. Jul. 30, 2015); *In re RadioShack Corporation*, Case No. 15-10197 (Bankr. D. Del. Feb. 5, 2015); *In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-01145 (Bankr. N.D. Ill. Jan. 15, 2015); *In re Entegra Power Group LLC*, Case No. 14-11859 (Bankr. D. Del. Aug. 4, 2014); *In re Premier International Holdings Inc.* (a.k.a. Six Flags Theme Parks), Case No. 09-12019 (Bankr. D. Del. June 13, 2009); *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (Bankr. D. Del. Jan. 22, 2008); *In re Conseco Inc*, Case No. 02-49672 (Bankr. N.D. Ill. Dec. 17, 2002); *In re WorldCom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. July 21, 2002); and *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 2, 2001).

11.     Houlihan Lokey has a dedicated Oil & Gas Group, which includes over 50 specialized bankers and technical professionals focused solely on advising companies, boards of directors, and lenders and investors in the oil and gas industry.  Houlihan Lokey's Oil & Gas Group provides a broad range of investment banking services, including traditional mergers and acquisitions ("**M&A**"), asset-level acquisitions and divestitures ("**A&D**"), capital markets and financing transactions, financial restructuring and recapitalization transactions, and various board advisory, valuation and other transaction support services.  Houlihan Lokey's Oil & Gas Group

has been among the most active advisors to distressed oil and gas companies, advising on more than 55 restructuring and recapitalization transactions since 2015 relating to companies in the upstream, midstream, and downstream industries, including the following selected and publicly-announced examples:  *In re Chesapeake Energy Corporation*, No. 20-33233 (Bankr. S.D. Tex. Jun 28, 2020); *In re Sheridan Holding Company I, LLC*, No. 20-31887 (Bankr. S.D. Tex.  Mar 23, 2020); *In re Sheridan Holding Company II, LLC*, No. 19-35198 (Bankr. S.D. Tex.  Sep 15, 2019); *In re Jones Energy, Inc.*, No. 19-32112 (Bankr. S.D. Tex.  Apr 15, 2019); *In re Fieldwood Energy LLC*, No. 18-30648 (Bankr. S.D. Tex.  Feb 15, 2018); *In re All American Oil and Gas Inc.*, No. 18-52693-rbk (Bankr. W.D. Tex. Nov 12, 2018); *In re Cobalt International Energy Inc.*, No. 17-36709 (MI) (Bankr. S.D. Tex.  Dec 14, 2017); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex.  Jul 1, 2016); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex.  May 6, 2016); *In re Energy XXI, Ltd.*, No. 16-31928 (Bankr. S.D. Tex.  May 20, 2016); *In re Halcon Res. Corp.*, No. 16-11724 (Bankr. D. Del. Jul 27, 2016); *In re Midstates Petrol., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex.  May 1, 2016); *In re Berry Petroleum Company, LLC*, No. 16-60040 (Bankr. S.D. Tex.  May 11, 2016); *In re Breitburn Energy Partners*, No. 16-11390 (Bankr. S.D.N.Y.  May 15, 2016); *In re BPZ Resources Inc.*, No. 15-60016 (Bankr. S.D. Tex.  Mar 9, 2015); *In re Endeavour Operating Corp.*, No. 14-12308 (KJC) (Bankr. D. Del. Oct 10, 2014); *In re ATP Oil & Gas Corp.*, No. 12-36187 (Bankr. S.D. Tex.  Aug 17, 2012).

12.    The resources, capabilities and experience of Houlihan Lokey in advising the Debtors are crucial to enabling the Debtors to implement a successful restructuring.  A financial advisor and investment banker with a deep bench of experience, such as Houlihan Lokey, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

13.     Since its retention on March 30, 2020 and up to the Petition Date, Houlihan Lokey provided extensive pre-petition services to the Debtors in preparation for the Debtors' restructuring efforts, including but not limited to the following:

- Assisting with forbearance negotiations with the Debtors' creditors;

- Assisting management in evaluating strategic alternatives;

- Facilitating extensive diligence for the various parties in interest;

- Conducting extensive meetings and negotiations with the various parties in interest;

- Assisting in analyzing and negotiating a transaction with Apache Corp.;

- Analysis relating to discussions with regulatory entities;

- Facilitating a sale process related to Debtors' deepwater assets, including the preparation of evaluation materials and the identification and ultimately launching the outreach to potential buyers;

- Analyzing potential restructuring scenarios, as well as asset and enterprise valuation on a standalone basis in the event of sale process termination, including the cost / benefit of such standalone reorganization and appropriate post-reorganization capital structure;

- Assisting in raising and negotiating DIP financing; and

- Providing additional financial advice and investment banking services in preparation for the filing of these chapter 11 cases.

14.     As a result of the pre-petition work performed on behalf of the Debtors, Houlihan Lokey has acquired significant knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, operations, and related matters.  In providing pre-petition services to the Debtors, Houlihan Lokey worked closely with the Debtors' senior management and their other advisors and developed familiarity with the other major

stakeholders that will be involved in these chapter 11 cases.  Accordingly, Houlihan Lokey has

developed relevant experience and expertise regarding the Debtors that (i) makes Houlihan Lokey

a natural selection as the Debtors' financial advisor and investment banker and (ii) will assist

Houlihan Lokey in providing effective and efficient services in these chapter 11 cases.  Indeed, if

the Debtors were required to retain an investment banker and financial advisor other than Houlihan

Lokey in connection with these chapter 11 cases, the Debtors, their estates, and all parties in

interest would be prejudiced by the time and expense necessary to familiarize another firm with

the intricacies of the Debtors and their business operations.

## Services to Be Provided by Houlihan Lokey

15.     The parties have entered into the Engagement Letter, which governs the

relationship between the Debtors and Houlihan Lokey.  The terms and conditions of the

Engagement Letter were negotiated at arm's length and in good faith between the Debtors and

Houlihan Lokey and reflect the parties' mutual agreement as to the substantial efforts that will be

required in this engagement.  Under the Engagement Letter, in consideration for the compensation

contemplated thereby, Houlihan Lokey has provided and has agreed to provide the following

services:[2]

> a) assisting the Company in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Company in the preparation of an offering memorandum (it being expressly understood that the Company will remain solely responsible for such materials and all of the information contained therein);
>
> b) assisting the Company in evaluating indications of interest and proposals regarding any Transaction(s) (as defined in the Engagement Letter) from

---

[2] The summaries provided in this Application are provided for convenience only.  In the event of any inconsistency between any summary and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used but not otherwise defined in the summaries of the Engagement Letter contained herein shall have the meanings ascribed to such terms in the Engagement Letter.  In the event of any inconsistency between any summary and the terms and provisions of the Proposed Order, the terms of the Proposed Order shall control.

current and/or potential lenders, equity investors, acquirers and/or strategic partners;

c)  assisting the Company with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s);

d)  providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

e)  attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Houlihan Lokey mutually agree; and

f)  providing such other financial advisory and investment banking services as may be required by additional issues and developments not anticipated on the effective date of the Engagement Letter.

16.     The Debtors believe that Houlihan Lokey's services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Houlihan Lokey will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

## Houlihan Lokey's Compensation

17.     In consideration of the services to be provided by Houlihan Lokey, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay Houlihan Lokey the following proposed compensation, which is set forth in the Engagement Letter (the "**Fee and Expense Structure**"):

a.  *Monthly Fees*.  In addition to the other fees provided for in the Engagement Letter, upon the Effective Date of the Engagement Letter, and on every monthly anniversary of the effective date of the agreement during the term of the Engagement Letter, the Debtors shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $175,000 ("**Monthly Fee**"); provided that, beginning with the fourth (4th) Monthly Fee, the Monthly Fee shall be $150,000. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting the Engagement Letter and performing services as described therein.  50% of the Monthly Fees following the sixth (6th) Monthly Fee paid on a timely basis to Houlihan Lokey shall be credited against the next Transaction Fee (as defined in the Engagement Letter) (other than a

9

Financing Transaction Fee or Amendment Fee and) to which Houlihan Lokey becomes entitled pursuant to the Engagement Letter (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall any Transaction Fee be reduced below zero;

b.  *Amendment Fees*.  Upon the closing of each Amendment, Houlihan Lokey shall earn, and the Debtors shall promptly pay to Houlihan Lokey, a cash fee (the "**Amendment Fee**") equal to $250,000. The Amendment Fee shall be fully credited against the next Transaction Fee (other than a Financing Transaction Fee or Amendment Fee) to which Houlihan Lokey becomes entitled pursuant to the Engagement Letter (it being understood and agreed that no Amendment Fee shall be credited more than once), except that, in no event, shall any Transaction Fee be reduced below zero; and

c.  *Transaction Fee(s)*.  In addition to the other fees provided for in the Engagement Letter, the Debtors shall pay Houlihan Lokey the following transaction fees:

    i.  *Restructuring Transaction Fee*.  Upon an in-court Restructuring Transaction (as defined in the Engagement Letter), the effective date of a confirmed plan of reorganization or liquidation under Chapter 11 of the Bankruptcy Code, Houlihan Lokey shall earn, and the Debtors shall promptly pay to Houlihan Lokey, a cash fee ("**Restructuring Transaction Fee**") of $8,250,000.

    ii.  *Sale Transaction Fee.*  Upon the closing of each Sale Transaction (as defined in the Engagement Letter), Houlihan Lokey shall earn, and the Debtors shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("**Sale Transaction Fee**") of 1.0% of Aggregate Gross Consideration.

    iii.  *Financing Transaction Fees*.  Upon the closing of each Financing Transaction (as defined in the Engagement Letter), Houlihan Lokey shall earn, and the Debtors shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("**Financing Transaction Fee**") equal to the sum of 0.50% of the gross proceeds of any: (I) indebtedness raised or committed that is senior to other indebtedness of the Debtors, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Debtors (other than with respect to debtor-in-possession financing); (II) indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (III) equity or equity-linked securities (including, without limitation, convertible securities and

10

preferred stock) placed or committed; provided that, to the extent any of I, II, and III above are raised from the Debtors' existing lenders and/or equity holders, the Financing Transaction Fee with respect to such gross proceeds shall be calculated as 0.25% of such gross proceeds.  Houlihan Lokey shall earn, and the Debtors shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, a Financing Transaction Fee for any debtor-in-possession financing that is raised of 0.50% of the gross proceeds of such financing; provided that, to the extent such financing is raised from the Debtors' existing lenders and/or equity holders, the Financing Transaction Fee with respect to such portion of the financing shall be calculated as 0.25% of such gross proceeds. The Financing Transaction Fee payable under the Engagement Letter shall be subject to a $1,000,000 minimum Financing Transaction Fee payable upon the first closing of a Financing Transaction.  For the avoidance of doubt, Houlihan Lokey may earn only one Financing Transaction Fee for the placement, raising, or issuance of each of "debtor-in-possession financing" and "exit financing," even if any such financing is executed with one or more parties and/or in one or more transactions.

d.     In the event both a Restructuring Transaction Fee and a Sale Transaction Fee are earned, 50% of the lower such fee shall be creditable against the larger such fee, except that, in no event, shall any Transaction Fee be reduced below zero.  In the event a Financing Transaction Fee is earned, it shall be incremental to any Restructuring Transaction Fee and any Sale Transaction Fee and shall not be creditable against any such fee, nor shall any Restructuring Transaction Fee or any Sale Transaction Fee be creditable against any Financing Transaction Fee.

**The Fee and Expense Structure is Appropriate and Reasonable**
**and Should be Approved under Section 328(a) of the Bankruptcy Code**

18.     The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Houlihan Lokey for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Debtors and Houlihan Lokey in the Engagement Letter.

19.     The Fee and Expense Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided in connection with these chapter 11 cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Houlihan Lokey and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.

20.     Houlihan Lokey's restructuring expertise, as well as its financing skills and mergers and acquisitions expertise, particularly in the oil & gas industry, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were important factors in determining the Fee and Expense Structure.  The ultimate benefit to the Debtors derived from the services provided by Houlihan Lokey pursuant to the Engagement Letter cannot be measured by a reference to the number of hours expended by Houlihan Lokey's professionals.

21.     The Debtors and Houlihan Lokey negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to Houlihan Lokey's overall services.  It would be contrary to the intention of Houlihan Lokey and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Houlihan Lokey's services.  Instead, the Debtors and Houlihan Lokey intend that Houlihan Lokey's services be considered as a whole for which Houlihan Lokey is to be compensated by the Fee and Expense Structure in its entirety.

22.     In light of the foregoing and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services pursuant to the Engagement Letter, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for both in court

and out of court engagements of this nature, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

### Record Keeping and Applications for Compensation

23.     It is not the general practice of financial advisory and investment banking firms, including Houlihan Lokey, to keep detailed time records similar to those customarily kept by attorneys and required by the *Procedures for Complex Cases in the Southern District of Texas*. Because Houlihan Lokey does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for professional services, the Debtors request that Houlihan Lokey be excused from compliance with such requirements and instead should only be required to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

24.     Houlihan Lokey will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

25.     Houlihan Lokey's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Letter and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court.

### Houlihan Lokey's Disinterestedness

26.     To the best of the Debtors' knowledge and belief and except to the extent disclosed herein and in the Hanson Declaration, Houlihan Lokey: (i)  is a "disinterested person" within the

meaning of section 101(14) of the Bankruptcy Code; and (ii) does not hold or represent any interest materially adverse to the Debtors or their estates.

27.     As set forth in further detail in the Hanson Declaration, Houlihan Lokey has certain connections with creditors and other parties in interest in these chapter 11 cases.  The Debtors and Houlihan Lokey do not believe that any of these connections constitute an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in these chapter 11 cases.

28.     To the extent Houlihan Lokey discovers any material facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and the Hanson Declaration to disclose such facts.

29.     During the 90 days immediately preceding the Petition Date, the Debtors paid Houlihan Lokey $625,000.00 in fees and $13,101.96 in expense reimbursements, which includes $10,000.00 paid on account of anticipated expenses.  Other than as set forth herein, Houlihan Lokey did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

30.     Within one year prior to the Petition Date, the Debtors paid Houlihan Lokey $975,000.00 in fees and $13,101.96 in expense reimbursements, which includes the expense reimbursement reserve described in the immediately preceding paragraph.

31.     As of the Petition Date, the Debtors did not owe Houlihan Lokey for any fees or expenses incurred prior to the Petition Date.  It is possible that certain expenses that were incurred by Houlihan Lokey that are reimbursable under the terms of the Engagement Letter were not yet reflected on Houlihan Lokey's books and records as of the Petition Date.  Upon entry of an order

approving the Application, Houlihan Lokey will waive any claim for such unreimbursed expenses in excess of amounts paid to Houlihan Lokey pre-petition.

32.     As set forth in the Hanson Declaration, Houlihan Lokey has not shared or agreed to share any of its compensation from the Debtors with any other person.  If any such agreement is entered into, Houlihan Lokey has undertaken to amend and supplement the information contained in this Application and the Hanson Declaration to disclose the terms of any such agreement.

33.     No promises have been received by Houlihan Lokey, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

### Indemnification Provisions

34.     Among other things, the Engagement Letter provides that the Debtors shall indemnify Houlihan Lokey and the other HL Parties (as defined in the Engagement Letter) against any and all losses, claims, damages, or liabilities to which the HL Parties may become subject in connection with the Engagement Letter, except to the extent such loses are finally judicially determined to have resulted primarily from such HL Party's gross negligence or willful misconduct.

35.     The Debtors and Houlihan Lokey believe that the indemnification, contribution, reimbursement, and other related provisions contained in the Engagement Letter are customary and reasonable for financial advisory and investment banking engagements, both in and out of court, and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

36.     The terms and conditions of the Engagement Letter, including these provisions, were negotiated by the Debtors and Houlihan Lokey at arm's length and in good faith.  The Debtors

respectfully submit that such provisions, viewed in conjunction with the other terms of Houlihan Lokey's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Houlihan Lokey's services in these chapter 11 cases.

## Basis for Relief

37.     The Debtors seek authority to employ and retain Houlihan Lokey as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out the [Debtors'] duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

38.     In addition, the Debtors seek approval of the Engagement Letter (including the Fee and Expense Structure and the indemnification, contribution, reimbursement and other related provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals

16

for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).

39.     The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by Houlihan Lokey, (ii) Houlihan Lokey's substantial experience with respect to financial advisory and investment banking services, and (iii) the Fee and Expense Structures typically utilized by Houlihan Lokey and other leading financial advisors and investment bankers.

40.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Sheridan Holding Company I, LLC*, No. 21-31884 (Bankr. S.D. Tex. Mar 23, 2020); *In re McDermott Int'l, Inc.*, Case No. 20-30336 (DRJ) (Bankr. S.D. Tex. Mar 9, 2020); *In re Alta Mesa Resources, Inc.*, 19-35133 (Bankr. S.D. Tex. Mar 2, 2020); *In re Arcapita Bank B.S.C.*, Case No. 14-01849 (Bankr. S.D.N.Y. March 17, 2014); *In re Buffets Holdings, Inc.*, Case No. 12-10238 (Bankr. D. Del. Jan. 18, 2012); and *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008). Accordingly, the Debtors believe that Houlihan Lokey's retention on the terms and conditions proposed herein is appropriate.

### *Nunc Pro Tunc* **Relief is Warranted**

41.     The Debtors also believe that employment of Houlihan Lokey *nunc pro tunc* to the Petition Date is warranted under the circumstances of these chapter 11 cases.  Houlihan Lokey has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated restructuring transactions.  *See, e.g.*, *In re Triangle Chems., Inc.*, 697 F.2d 1280 (5th Cir. 1983); *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.") (collecting cases).   Accordingly, the Debtors submit that approving Houlihan's employment and retention *nunc pro tunc* to the Petition Date is warranted under the circumstances.

### **Notice**

42.     Notice of this Application will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  October 5, 2020
       Houston, Texas

                                    **FIELDWOOD ENERGY LLC**
                                    (and each of its affiliated debtors as Debtors and Debtors in Possession)

                                    */s/ Michael T. Dane*
                                    Name: Michael T. Dane
                                    Title:  Senior Vice President & CFO

**<u>Certificate of Service</u>**

I hereby certify that on October 5, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


    */s/  Alfredo R. Perez*
Alfredo R. Pérez