## <u>EXHIBIT B TO THE APPLICATION</u>

**Hanson Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.,* | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

### DECLARATION OF JOHN-PAUL HANSON IN SUPPORT OF APPLICATION OF DEBTORS FOR AUTHORITY TO RETAIN AND EMPLOY HOULIHAN LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

Pursuant to 28 U.S.C. § 1746, I, John-Paul Hanson, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief:

1.     I am a Managing Director and Head of the Oil & Gas Group at Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), and am a senior banker in the firm's Financial Restructuring Group with respect to the oil and gas industry and sub-sectors, and am duly authorized to execute this declaration (the "Declaration") on behalf of Houlihan Lokey. I am familiar with the matters set forth herein and, if called as a witness, I could and would testify thereto.[2]

2.     I make this Declaration in support of the *Application of the Debtors for Authority to Retain and Employ Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at Houlihan Lokey and are based on information provided by them. Unless otherwise stated, all matters set forth in this Declaration are based on my personal knowledge, my review of the relevant documents, information supplied to me by others, or my views, which are based on, among other things, my experience and knowledge of the Debtors' business and financial condition.

*to the Debtors Nunc Pro Tunc to the Petition Date* (the "Application").[3]  This Declaration is also submitted to comply with the applicable provisions of sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Bankruptcy Local Rule 2014-1.

## Houlihan Lokey's Qualifications and Services

3.      The Houlihan Lokey Group (as defined below) is an internationally recognized investment banking and financial advisory firm, with offices worldwide and more than 1,000 professionals.  Houlihan Lokey is a leader in providing investment banking and financial advisory services to debtors, unsecured and secured creditors, acquirers, and other parties in interest involved with financially troubled companies both in and outside of bankruptcy.  Houlihan Lokey has been, and is, involved in some of the largest restructurings in the United States.  In 2019, Houlihan Lokey was ranked the No. 1 Global Distressed Debt and Bankruptcy Restructuring Advisor, according to Refinitiv (formerly known as Thomson Reuters).  Houlihan Lokey has been retained to provide investment banking and financial advisory services in, among other cases, *In re Bristow Group Inc.,* Case No. 19-32713 (Bankr. S.D. Tex. May 11, 2019); *In re PHI, Inc.,* Case No. 19-30923 (Bankr. N.D. Tex. Mar 14, 2019); *In re Walter Investment Management Corporation*, Case No. 17-13446 (Bankr. S.D.N.Y. Nov. 30, 2017); *In re Seadrill Limited*, Case No. 17-60079 (Bankr. S.D. Tex. Sep. 12, 2017); *In re Westinghouse Electric Company LLC*, Case No. 17-10751 (Bankr. S.D.N.Y. Mar. 29, 2017); *In re Roust Corporation*, Case No. 16-23786 (Bankr. S.D.N.Y. Dec. 30, 2016); *In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (Bankr. D. Del. Mar. 2, 2016); *In re Relativity Fashion, LLC* (a.k.a. Relativity Media), Case No. 15-11989 (Bankr. S.D.N.Y. Jul. 30, 2015); *In re RadioShack Corporation*, Case No. 15-10197 (Bankr. D. Del. Feb. 5, 2015); *In re Caesars Entertainment Operating Company, Inc.*, Case No.

---

[3] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Application.

15-01145 (Bankr. N.D. Ill. Jan. 15, 2015); *In re Entegra Power Group LLC*, Case No. 14-11859 (Bankr. D. Del. Aug. 4, 2014); *In re Premier International Holdings Inc.* (a.k.a. Six Flags Theme Parks), Case No. 09-12019 (Bankr. D. Del. June 13, 2009); *In re Lehman Brothers Holdings Inc.*, Case No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (Bankr. D. Del. Jan. 22, 2008); *In re Conseco Inc*, Case No. 02-49672 (Bankr. N.D. Ill. Dec. 17, 2002); *In re WorldCom, Inc.*, Case No. 02-13533 (Bankr. S.D.N.Y. July 21, 2002); and *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 2, 2001).

4.     Houlihan Lokey has a dedicated Oil and Gas Group, which includes over 50 specialized bankers and technical professionals dedicated to advising companies, boards of directors, and lenders and investors in the oil and gas industry.  Houlihan Lokey's Oil & Gas Group provides a broad range of investment banking services, including traditional mergers and acquisitions ("M&A"), asset-level acquisitions and divestitures ("A&D"), capital markets and financing transactions, financial restructuring and recapitalization transactions, and various board advisory, valuation and other transaction support services.  Houlihan Lokey's Oil & Gas Group has been among the most active advisors to distressed oil and gas companies, advising on more than 55 restructuring and recapitalization transactions since 2015 relating to companies in the upstream, midstream, and downstream industries, including the following selected and publicly-announced examples:  *In re Chesapeake Energy Corporation*, No. 20-33233 (Bankr. S.D. Tex. Jun 28, 2020); *In re Sheridan Holding Company I, LLC*, No. 20-31887 (Bankr. S.D. Tex.  Mar 23, 2020); *In re Sheridan Holding Company II, LLC*, No. 19-35198 (Bankr. S.D. Tex.  Sep 15, 2019); *In re Jones Energy, Inc.*, No. 19-32112 (Bankr. S.D. Tex.  Apr 15, 2019); *In re Fieldwood Energy LLC*, No. 18-30648 (Bankr. S.D. Tex.  Feb 15, 2018); *In re All American Oil and Gas Inc.*, No. 18-52693-rbk (Bankr. W.D. Tex. Nov 12, 2018); *In re Cobalt International Energy Inc.*, No. 17-

36709 (MI) (Bankr. S.D. Tex. Dec 14, 2017); *In re SandRidge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. Jul 1, 2016); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. May 6, 2016); *In re Energy XXI, Ltd.*, No. 16-31928 (Bankr. S.D. Tex. May 20, 2016); *In re Halcon Res. Corp.*, No. 16-11724 (Bankr. D. Del. Jul 27, 2016); *In re Midstates Petrol., Inc.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 1, 2016); *In re Berry Petroleum Company, LLC*, No. 16-60040 (Bankr. S.D. Tex. May 11, 2016); *In re Breitburn Energy Partners*, No. 16-11390 (Bankr. S.D.N.Y. May 15, 2016); *In re BPZ Resources Inc.*, No. 15-60016 (Bankr. S.D. Tex. Mar 9, 2015); *In re Endeavour Operating Corp.*, No. 14-12308 (KJC) (Bankr. D. Del. Oct 10, 2014); *In re ATP Oil & Gas Corp.*, No. 12-36187 (Bankr. S.D. Tex. Aug 17, 2012).

5.      Houlihan Lokey has agreed to provide investment banking and financial advisory services to the above-captioned debtors and debtors in possession (the "Debtors") pursuant to the terms and conditions of the engagement agreement between the Debtors and Houlihan Lokey (the "Engagement Letter"), a copy of which is attached to the Application as **Exhibit A**.

6.      In addition to me, the principal professionals who are expected to render services to the Debtors are set forth on **Exhibit A** attached hereto and incorporated herein by reference (the "Principal Professionals").

7.      Since its retention on March 30, 2020 and up to the Petition Date, Houlihan Lokey provided extensive pre-petition services to the Debtors in preparation for the Debtors' restructuring efforts, including but not limited to the following:

- Assisting with forbearance negotiations with the Debtors' creditors;

- Assisting management in evaluating strategic alternatives;

- Facilitating extensive diligence for the various parties in interest;

- Conducting extensive meetings and negotiations with the various parties in interest;

- Assisting in analyzing and negotiating a transaction with Apache Corp.;

- Analysis relating to discussions with regulatory entities;

- Facilitating a sale process related to Debtors' deepwater assets, including the preparation of evaluation materials and the identification and ultimately launching the outreach to potential buyers;

- Analyzing potential restructuring scenarios, as well as asset and enterprise valuation on a standalone basis in the event of sale process termination, including the cost / benefit of such standalone reorganization and appropriate post-reorganization capital structure;

- Assisting in raising and negotiating DIP financing; and

- Providing additional financial advice and investment banking services in preparation for the filing of these chapter 11 cases.

8.      As a result of the pre-petition work performed on behalf of the Debtors, Houlihan Lokey has acquired significant knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, operations, and related matters.  In providing pre-petition services to the Debtors, Houlihan Lokey worked closely with the Debtors' senior management and their other advisors and developed familiarity with the other major stakeholders that will be involved in these chapter 11 cases.  Accordingly, Houlihan Lokey has developed relevant experience and expertise regarding the Debtors that (i) makes Houlihan Lokey a natural selection as the Debtors' financial advisor and investment banker and (ii) will assist Houlihan Lokey in providing effective and efficient services in these chapter 11 cases.  Indeed, if the Debtors were required to retain an investment banker and financial advisor other than Houlihan Lokey in connection with these chapter 11 cases, the Debtors, their estates, and all parties in

interest would be prejudiced by the time and expense necessary to familiarize another firm with the intricacies of the Debtors and their business operations.

9.      Houlihan Lokey believes that its services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Houlihan Lokey will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

### Houlihan Lokey's Compensation

10.     Houlihan Lokey believes that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Houlihan Lokey for comparable engagements, in both in and out of bankruptcy proceedings, and reflects a balance between a fixed fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Debtors and Houlihan Lokey in the Engagement Letter.

11.     The Fee and Expense Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases and transactions, in both in and out of bankruptcy proceedings, involving the services to be provided in connection with these chapter 11 cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Houlihan Lokey and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.

12.     Houlihan Lokey's restructuring expertise, as well as its dedicated oil & gas industry investment banking group, capital markets knowledge, and M&A and A&D expertise, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were important factors in determining the Fee and Expense Structure.  The ultimate benefit to the Debtors derived from the services provided by Houlihan Lokey pursuant to the Engagement Letter

cannot be measured by a reference to the number of hours expended by Houlihan Lokey's professionals.

13.     The Debtors and Houlihan Lokey negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to Houlihan Lokey's overall services.  It would be contrary to the intention of Houlihan Lokey and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Houlihan Lokey's services.  Instead, the Debtors and Houlihan Lokey intend that Houlihan Lokey's services be considered as a whole for which Houlihan Lokey is to be compensated by the Fee and Expense Structure in its entirety.

14.     In light of the foregoing and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services pursuant to the Engagement Letter, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for both in court and out of court engagements of this nature, Houlihan Lokey believes that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

**Record Keeping and Applications for Compensation**

15.     It is not the general practice of financial advisory and investment banking firms, including Houlihan Lokey, to keep detailed time records similar to those customarily kept by attorneys and required by the *Procedures for Complex Cases in the Southern District of Texas*. Because Houlihan Lokey does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for professional services, Houlihan Lokey requests that it be excused from compliance with such requirements and instead should only be required to maintain time records in half-hour (0.50) increments setting

forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

16.     Houlihan Lokey will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

17.     Houlihan Lokey's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Letter and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court.

### Houlihan Lokey's Disinterestedness

18.     To determine its connections with parties in interest in these chapter 11 cases, Houlihan Lokey relied upon a list of entities that were identified to Houlihan Lokey by the Debtors and their representatives (each individually, an "Interested Party", and collectively, the "Interested Parties"). The categories of Interested Parties are set forth on **Exhibit B** attached hereto and incorporated herein by reference. I understand that the Debtors intend to file a list containing all or nearly all of the Interested Parties.

19.     I, or one or more of my designees, reviewed a report that was based on a comparison of this list of Interested Parties against certain internal databases of Houlihan Lokey, including Houlihan Lokey's client management information system. To the extent that this report revealed that certain Interested Parties (or their apparent affiliates or entities that Houlihan Lokey believes to be affiliates, as the case may be) were current or former Houlihan Lokey Group clients that engaged a member of the Houlihan Lokey Group in the past three years (as of the date such report was generated) pursuant to a written engagement letter to provide services for which the Houlihan Lokey Group has received, or is expected to receive, fees, such parties are identified on **Exhibit C**

attached hereto and incorporated herein by reference.  To the extent that the aforementioned report revealed certain other connections with Interested Parties (or their apparent affiliates or entities that Houlihan Lokey believes to be affiliates, as the case may be), such parties may also be identified on **Exhibit C** or otherwise described or referenced (whether generally or specifically by name) elsewhere in this Declaration.  **Exhibit C** is based upon the information contained in the aforementioned report and may not include information to the extent not included in, or not reflected in the results of Houlihan Lokey's review of, such report, or not otherwise identified by Houlihan Lokey.

20.     Neither the term "connection," as used in Bankruptcy Rule 2014, nor the proper scope of a professional's search for a "connection", has been defined.  I am therefore uncertain what this Court may consider a "connection" requiring disclosure.

21.     Given the large number of Interested Parties, despite the efforts described herein, I am unable to state with certainty that every connection has been disclosed in this Declaration.  In particular, among other things, members or certain employees of the Houlihan Lokey Group may have connections with Interested Parties or persons who are beneficial owners, affiliates, equity holders and/or sponsors of certain Interested Parties; persons whose beneficial owners, affiliates, equity holders and/or sponsors are Interested Parties; and persons who otherwise have connections with certain Interested Parties.  Furthermore, the Debtors may have had, or currently have, customers, creditors, lenders, equity owners, competitors, and other parties with whom they maintain business relationships that are parties in interest (but are not listed as Interested Parties), and with whom the Houlihan Lokey Group may have had, or may currently or in the future have, connections.  In addition, new parties may become parties in interest and the Houlihan Lokey

Group may have had, or may currently or in the future have, connections with such new parties in interest.

22.     In addition:

a) From time to time, Houlihan Lokey's Financial Restructuring Group, which is providing the services in this case, may have represented, may currently be representing, or may in the future represent, certain parties in interest in matters unrelated to these chapter 11 cases, either individually or as part of a representation of a committee or group of creditors, lenders, equity owners or other interest holders.

b) In addition to its Financial Restructuring Group, Houlihan Lokey and the other subsidiaries of its direct parent company, Houlihan Lokey, Inc., that are engaged in providing investment banking and financial advisory services globally (collectively, and together with Houlihan Lokey, Inc., the "Houlihan Lokey Group") provide services to a wide range of institutions and individuals and may have had, or may currently or in the future have, investment banking or financial advisory relationships with certain parties in interest.

c) In the ordinary course of business, members or certain employees (or relatives of such employees) of the Houlihan Lokey Group, as well as investment funds in which any of them may have financial interests or with which they may co-invest, but over whose investment decisions such members or employees have no input or control, may (i) acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtors or certain other parties in interest or have other relationships with such parties, and/or (ii) have mortgages, consumer loans, investment, brokerage accounts, or other banking, brokerage, or other customer relationships with institutions that are parties in interest or with funds sponsored by or affiliated with such parties. With respect to any such securities, financial instruments, investments, and/or customer relationships, all rights in respect of such securities, financial instruments, investments, and/or customer relationships, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. Moreover, the Principal Professionals are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

d) HL Finance, LLC, a direct subsidiary of Houlihan Lokey, Inc., acts as an arranger of syndicated loans for corporate entities and, in connection with such activities, may contract with third-party investors that may provide commitments with respect to certain syndicated loans arranged by HL Finance, LLC. The third-party investors are unrelated to and are not affiliates of the Houlihan Lokey Group; the Houlihan Lokey Group does not engage in asset management activities. HL Finance and certain employees of the Houlihan Lokey Group may have arranged, may currently

be arranging or may in the future arrange, syndicated loans for entities that may be or become parties in interest in matters unrelated to these chapter 11 cases, and third-party investors that provided commitments with respect to such syndicated loans may be or become parties in interest.

e)  Houlihan Lokey Financial Advisors, Inc., a direct subsidiary of Houlihan Lokey, Inc., among other things, provides valuation opinions on the securities, derivatives, and other financial instruments (which may have included, or may currently or in the future include, securities, derivatives, or other financial instruments of the Debtors) held by various business development companies, private equity funds, hedge funds, and other investment funds, primarily for financial reporting purposes, through its Portfolio Valuation and Fund Advisory Group.  This work is unrelated to the financial advisory and investment banking services that Houlihan Lokey intends to provide in these chapter 11 cases.  Moreover, there is an "Information Wall" between Houlihan Lokey Financial Advisors, Inc.'s Portfolio Valuation and Fund Advisory Group and Houlihan Lokey's Financial Restructuring Group, including the Principal Professionals.  This "Information Wall" includes technological barriers and policies and procedures designed to prevent confidential, non-public information and work product from being improperly shared.

f)  In the ordinary course of their business, members of the Houlihan Lokey Group from time to time discuss issues concerning stressed and distressed companies with such companies, their creditors and their prospective creditors that are clients of the firm, that are referred to the firm in light of Houlihan Lokey's reputation for covering such companies and/or relevant industry expertise, or with which the firm may otherwise be in contact.  At the time of those contacts, typically it is not known whether any of these companies will actually file for bankruptcy, or if any of these creditors and/or prospective creditors will serve on any future official committee appointed in any such future bankruptcy case, or even be a creditor of the relevant estate in the event of a future bankruptcy.  It is also Houlihan Lokey's customary practice to communicate with and, when appropriate or requested, send materials to one or more of the 50 largest unsecured creditors identified by a debtor and who are, therefore, potential members of a creditors' committee.

g)  Members or certain employees of the Houlihan Lokey Group may have business associations with certain parties in interest, including attorneys, accountants, investment bankers, financial advisors, financial consultants and other professional advisors, some of whom may represent certain of the parties in interest or be parties in interest.  Members of the Houlihan Lokey Group may have appeared, or may currently or in the future appear, in numerous cases, proceedings or transactions involving, had or have mutual clients with, or had or have referral relationships with, these professionals.  Furthermore, members of the Houlihan Lokey Group have been, and may currently or in the future be, represented or advised by accountants, auditors, attorneys, law firms and other professionals, some of whom may be involved in these chapter 11 cases.  In addition, members of the Houlihan Lokey Group may have worked, or may currently or in the future work, with, for

or opposite other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.

h) Certain employees of the Houlihan Lokey Group may have been formerly employed by other investment banking, financial services or other professional services firms that are among, or represent other parties that are among, certain of the parties in interest.  While employed by other firms, certain professionals presently employed by the Houlihan Lokey Group may have represented certain parties in interest.

i) Members of the Houlihan Lokey Group may be involved in litigation from time to time that may have involved, or may currently or in the future involve, entities that may be parties in interest.  Also, certain of the parties in interest may have been, or may currently or in the future be, vendors or insurers of members of the Houlihan Lokey Group and/or have corporate or other business relationships with members of the Houlihan Lokey Group.

23.     To the best of my knowledge and belief, other than as disclosed in this Declaration, neither Houlihan Lokey, nor I, nor any other Principal Professionals, holds or represents any interest materially adverse to the Debtors or their estates.

24.     To the best of my knowledge and belief, other than as disclosed in this Declaration, Houlihan Lokey has not been retained to assist any Interested Party other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases.

25.     In addition, other than as disclosed in this Declaration, I do not believe that any connection that the Houlihan Lokey Group may have with any Interested Party in connection with any unrelated matters, including those involving the parties identified on **Exhibit C**, or any of the matters set forth in paragraph 22 of this Declaration, constitutes an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in these chapter 11 cases.

26.     Other than as disclosed in this Declaration, I am not related to and, to the best of my knowledge and belief, no other Principal Professional is related to, any United States Bankruptcy Judge for this District or known employee in the United States Trustee's Office for this District.

27.     Based on all of the foregoing, I believe that Houlihan Lokey is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

28.     To the extent Houlihan Lokey discovers any material facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey undertakes to amend and supplement the information contained in the Application and this Declaration to disclose such facts.

29.     During the 90 days immediately preceding the Petition Date, the Debtors paid Houlihan Lokey $625,000.00 in fees and $13,101.96 in expense reimbursements, which includes $10,000 paid on account of anticipated expenses.  Other than as set forth herein, Houlihan Lokey did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

30.     Within one year prior to the Petition Date, the Debtors paid Houlihan Lokey $975,000.00 in fees and $13,101.96 in expense reimbursements, which includes the fees and expenses described in the immediately preceding paragraph.

31.     As of the Petition Date, the Debtors did not owe Houlihan Lokey for any fees or expenses incurred prior to the Petition Date.  It is possible that certain expenses that were incurred by Houlihan Lokey that are reimbursable under the terms of the Engagement Letter were not yet reflected on Houlihan Lokey's books and records as of the Petition Date.  Upon entry of an order approving the Application, Houlihan Lokey will waive any claim for such unreimbursed expenses in excess of amounts paid to Houlihan Lokey pre-petition.

32.     Houlihan Lokey has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.  If any such agreement is entered into, Houlihan Lokey has undertaken to amend and supplement the

information contained in this Application and this Declaration to disclose the terms of any such agreement.

33.     No promises have been received by Houlihan Lokey, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: October 5, 2020
New Canaan, CT

*/s/ John-Paul Hanson*
John-Paul Hanson
Managing Director
Houlihan Lokey Capital, Inc.

# **EXHIBIT A**

# **PRINCIPAL PROFESSIONALS**

John-Paul Hanson
Daniel F. Crowley III
Michael Haney
Jerry Eumont
Manuel Amaro
Richard Villanueva
Eduardo Trevino
Ahmed Moussa
Nicholas Self
John Kinsella

## EXHIBIT B

## CATEGORIES OF INTERESTED PARTIES
## AS PROVIDED BY DEBTORS[4]

Debtors
Debtors' Trade Names and Aliases
Bankruptcy Judges and Staff (for the Southern
District of Texas)
Clerk of the Court
U.S. Attorney's Office (for the Southern District
of Texas)
Banks
Bondholders/Noteholders/ Indenture Trustees
Bonding and Permitting Authorities
Contract & Joint Venture Counterparties
Current Directors
Current Officers
Known Affiliations of Board Members
Debtors Professionals (law firms, accountants
and other professionals)
Former Officers and Directors (include senior
management) and Affiliations
Insurance/Insurance Provider
Surety Bonds
Landlords and parties to leases
Lenders (Term/Revolver/Administrative and
Collateral Agents)
Administrative and Collateral Agents
Litigation Counterparties/Litigation Pending
Lawsuits – includes threatened litigation
Material Royalties in Suspense
Material Suppliers and Vendors
Members of Any Ad Hoc Committee
Non- Debtor Affiliates/Parent/Subsidiaries

Non-Debtors Professionals (law firms,
accountants, and other professionals)
Ordinary Course Professionals
Other Secured Parties (Letters of Credit/ Issuers
of Letters of Credit)
Other Potential Parties in Interest
Parties to Material Contracts with the Debtors
Parties to Material Unexpired Leases with the
Debtors (Landlords)
Partnerships (if debtors is a partnership, its
general and limited partners)
Material Royalty and Other Interest Owners
Regulatory and Government (Federal, State, and
Local)
Significant Competitors
Significant Customers
Significant Shareholders
Shareholders/Equity Holders
Sponsors
Taxing Authorities (Federal, State, and Local;
trust fund, use property, franchise, sales)
Third Party Benefits Provider
Top 50 Unsecured Creditors
UCC (Lien Search Results)
Unions
United States Trustee and Staff (Southern
District of Texas)
Utility Providers/Utility Brokers
Vendors/Suppliers

Notice of Appearance Party/Interested Party

---

[4]     Houlihan Lokey has limited its search to the Interested Parties provided by the Debtors which we understand
will be filed separately by the Debtors.  Parent companies, subsidiaries or other affiliates of Interested Parties
have not been searched unless specifically noted.

**EXHIBIT C**

**MATCH LIST**

ABN AMRO Bank N.V.
ABSG Consulting Inc.
Aegon Asset Management
AGF Floating Rate Income Fund c/o Eaton
    Vance Management
Alston & Bird LLP
American Bureau of Shipping
American International Group UK Ltd.
Andrews Kurth Kenyon LLP
Antares
aPriori Capital Partners L.P.
Argo
AXIS
Bank of America, N.A.
Barclays Capital Inc.
Bardin Hill
Barings Corporate Investors
Baywater Drilling LLC
Bluebay Asset Management
BlueCross BlueShield of Texas
BNP Paribas Trading
Bridge
Bristow Us LLC
Bryan Cave Leighton Paisner LLP
Cabot Corporation, et al.
Cadwalader, Wickersham & Taft LLP
Canaras Capital
Capital One, N.A.
CENT CLO 19 Limited c/o
Columbia Mgmt. Invest. Advise LLC
Chaparral Energy Inc.
Chubb
CIFC Asset Management
Citibank, N.A
Cobalt International Energy
Cole Schotz P.C.
Credit Suisse
Davis Polk & Wardwell LLP
Deloitte Tax LLP
Department of Justice
Deutsche Bank AG
Dresser
Ecoserv, LLC
Ellington Management Group LLC
Energy XXI
EP Energy

EQT
Federated Investment
Fidelity Investments
Fieldwood Energy LLC
Fitch Ratings, Inc.
Flow Control Equipment LLC
FMC Technologies Inc.
Foley & Lardner LLP
Franklin
Gibson Applied Technology & Engineering,
LLC
Government of Guam Retirement Fund
    c/o Hotchkis &Wiley Capital Management
Great American Insurance Group
Grosvenor Capital Management
Gulfport Energy Corporation
Halcyon Asset Management LP
Halliburton Energy Services, Inc.
Highland Capital
Highland CLO Funding, Ltd
Hilcorp Energy Company
Hoover Offshore, LLC
Houlihan Lokey Capital Inc.
Invesco BL Fund, Ltd
Ironshore
J.P. Morgan Chase Bank, N.A.
Jefferies Holdings
Katten Muchin Rosenman LLP
KPMG LLP
Kronos
Latham & Watkins LLP
Liberty
Lone Star NGL LLC
Long View Systems Corp
LQ Management LLC
LVIP Blackrock Global Allocation Fund
    c/o Blackrock Advisors LLC
Macquarie Corporate & Asset Funding, Inc.
Magellan GP, LLC
Marathon Oil Company, et al.
Martin Holdings, LLC
McDermott Inc.
MJX Asset Management LLC
Monroe Capital Management LLC
National Oilwell Varco, LP
National Response Corporation

National Union Fire Ins. Co. of PA
  (through AIG Oil Rig)
Nexpoint Credit Strategies Fund
Northstar GOM, LLC
Nuveen Credit Strategies Income Fund
Oaktree Capital
P.Schoenfeld Asset Management
Petroquest Energy LLC
PHI, Inc.
Premiere, Inc.
PricewaterhouseC oopers LLP
Pro Unlimited Inc.
Riverstone/Carlyle Global Energy and
  Power Fund IV, L.P.
Rothschild & Co US Inc.
Ryan, LLC
S&P Global Inc.
Seacor Marine LLC
Simpson Thacher & Bartlett LLP
Sonoco
Subsea Solutions, LLC

Superior Energy Services LLC
Symphony Floating Rate Senior Loan Fund
TDC Energy LLC
Tenneco Oil Company
The BNY Mellon Tr. Co., NA as Cust for
  HLAF 2012-1 Blocker Subsidiary IV Ltd.
The Carlyle Group L.P.
The Goldman Sachs Group, Inc.
The Guardian Life Insurance Company
THL Credit Advisors LLC
U.S. Department of Energy (DOE)
U.S. Securities and Exchange Commission
US Bank N.A.
UTEX
Weil, Gotshal & Manges LLP
Wellington Management
Wells Fargo Financial Leasing Inc.
Willkie Farr and Gallagher LLP
Wilmington Trust, N.A.
Zais Group LLC

amounts in escrow and any deposits or other amounts forfeited by any investor; cash, notes, securities, and other property; payments made in installments; Contingent Payments (as defined below); and/or insurance proceeds upon the occurrence of an insurable event that diminishes the value of the Company. Upon the closing of a Sale Transaction in which less than 100% of the ownership of the equity interests are sold, the AGC shall be calculated as if 100% of the ownership of the equity interests of the Company on a fully diluted basis had been sold by dividing (i) the total consideration, whether in cash, securities, notes or other forms of consideration, received or receivable by the Company and/or its Constituents by (ii) the percentage of ownership which is sold. If, in the Sale Transaction, no consideration is being paid in respect of the existing equity, AGC of the retained equity shall be determined by the good faith agreement of Houlihan Lokey and the Company as to the value of such retained equity implied by the Sale Transaction. In addition, if any of the liabilities of any entity comprising the Company are assumed, decreased, reinstated, satisfied or otherwise paid off in conjunction with a Sale Transaction (by any entity comprising the Company or any investor, in the form of "cure" payments or otherwise), or any of the assets of any entity comprising the Company are sold or otherwise transferred outside of the Company's ordinary course of business to another party prior to the closing of a Sale Transaction (including, without limitation, any dividends or distributions paid to security holders or amounts paid to repurchase any securities) or are retained by any entity comprising the Company after the closing of the Sale Transaction, the AGC will be increased to reflect the face value of any such liabilities and the fair market value of any such assets. For purposes of calculating the Sale Transaction Fee, the term "Contingent Payments" shall mean the consideration received or receivable by the Company, or any of its Constituents and/or any other parties in the form of deferred performance-based payments, "earn-outs", or other contingent payments based upon the future performance of any entity comprising the Company, or any of its businesses or assets.

7.      **Value of Consideration.**  For the purpose of calculating the AGC received in a Sale Transaction, any securities, other than a promissory note, will be valued at the time of the announcement of the Sale Transaction, without regard to any restrictions on transferability, as follows: (i) if such securities are traded on a stock exchange, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the announcement of the Sale Transaction; (ii) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the announcement of the Sale Transaction; and (iii) if such securities have not been traded prior to the announcement of the Sale Transaction, Houlihan Lokey and the Company shall negotiate in good faith to agree on a fair valuation thereof, without regard to any restrictions on transferability, for the purposes of calculating the AGC. For any lease payments and other consideration that is not freely tradable or has no established public market, if the consideration utilized consists of property other than securities, then the value of such property shall be the fair market value thereof as determined in good faith by Houlihan Lokey and the Company. If any consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. The value of any purchase money or other promissory notes shall be deemed to be the face amount thereof. In the event the AGC includes any Contingent Payments, Houlihan Lokey's Sale Transaction Fee shall be calculated based on the value of such Contingent Payments as of closing, as mutually agreed upon by the Company and Houlihan Lokey acting in good faith. If the Company and Houlihan Lokey cannot reach such an agreement, an additional Sale Transaction Fee shall be paid to Houlihan Lokey from, and on account of, such Contingent Payments at the same time that each of such Contingent Payments are received regardless of any prior termination or expiration of this Agreement. Each such additional Sale Transaction Fee shall be calculated pursuant to the provisions of this Agreement based upon the amount of each such Contingent Payment.

8.      **Characterization of Multiple and/or Complex Transactions.**  In the event the Company and Houlihan Lokey are unable to agree in good faith upon the classification of any single Transaction as a Restructuring Transaction, Sale Transaction or Financing Transaction, or if a single Transaction with only one third party shall consist of two, or more, of the foregoing types of Transactions, or elements thereof, Houlihan Lokey shall receive only one Transaction Fee in respect of such Transaction, which shall be equal to the greater of the Restructuring Transaction Fee, Sale Transaction Fee or Financing Transaction Fee, as applicable, as calculated in accordance with the terms of this Agreement. For the avoidance of doubt, if

two or more single Transactions occur simultaneously or at different times, whether or not they are connected with or related to one another, the Company shall pay Houlihan Lokey the Transaction Fee for each such Transaction in addition to, and not in lieu of, each other.

9.      **Reasonableness of Fees.**  The parties acknowledge that this engagement will require a substantial professional commitment of time and effort by Houlihan Lokey.  Moreover, the amount of time and effort may vary substantially during different periods of the engagement. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Houlihan Lokey may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given:  (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and (iv) the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Group. The parties further agree and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by Houlihan Lokey hereunder, and may result in substantially more work and/or services being performed by Houlihan Lokey than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of Houlihan Lokey's services under this Agreement may also be substantially more beneficial than anticipated at this time. Accordingly, in the event of the occurrence of (a) and/or (b), in the prior sentence, Houlihan Lokey and the Company to this Agreement may, at the conclusion of the services rendered by Houlihan Lokey pursuant hereto, agree to a modification of the Transaction Fees described herein to more appropriately reflect the actual work performed, services rendered and/or any extraordinary results achieved by Houlihan Lokey pursuant to its engagement hereunder.

10.     **Expenses.**  In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable and reasonably documented out-of-pocket expenses incurred from time to time.  Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses at the cost initially incurred by Houlihan Lokey, but without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and reprographics expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Company for the reasonable and documented fees and out-of-pocket expenses of a single, primary legal counsel for Houlihan Lokey incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby.

11.     **Invoicing and Payment.**  All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey.  All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes").  All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

12.     **Information.**  The Company will provide Houlihan Lokey with access to management and other representatives of the Company and other participants in any Transaction, as reasonably requested by Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. In addition, with respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the

Company or any other entity, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Company's or such other entity's management, as the case may be, as to the matters covered thereby. The Company will promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to, or discussed with, Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by, or discussed with, Houlihan Lokey. The Group understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Group acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Company or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Board of Directors of Fieldwood (solely in its capacity as such) and Weil in evaluating a Transaction, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey, with such consent not to be unreasonably withheld or delayed. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent, such consent not to be unreasonably withheld or delayed. Notwithstanding the two immediately preceding sentences, the Company or Weil may furnish the information described therein in response to any subpoena, court order, or similar legal demand, provided that prompt prior written notice thereof shall be given to Houlihan Lokey so that Houlihan Lokey may seek a protective order or other appropriate remedy, and, if Houlihan Lokey fails to obtain such remedy, the Company may disclose only that information which its counsel advises it is legally compelled to disclose. At the direction of Weil, communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Company in connection with this matter, will be considered attorney-client communications made in preparation for litigation relating to the restructuring of the Company and, accordingly, will be subject to the attorney-client privilege and attorney work-product doctrine.

13. **Confidential Information.** Houlihan Lokey acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and the Transaction ("Confidential Information") has been or may be disclosed by the Company to Houlihan Lokey, any of its affiliates, or any of their respective agents, advisors, accountants, attorneys, employees, subcontractors, officers, directors and other representatives (collectively, "Representatives"). Houlihan Lokey agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other party (other than to any potential party to a Transaction under appropriate assurances of confidentiality, to those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of Houlihan Lokey or any of its Representatives, or that was available to Houlihan Lokey or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Houlihan Lokey or such Representatives; (b) obtained by Houlihan Lokey or any of its Representatives from a third party which, insofar as is known to Houlihan Lokey or such Representatives, is not subject to any prohibition against disclosure; (c) which was or is independently developed by Houlihan Lokey or any of its Representatives without violating any confidentiality obligations under this paragraph; or (d) which was or becomes generally available to the public through no fault of Houlihan Lokey. If Houlihan Lokey becomes required by legal process or requested by regulatory authority to disclose any Confidential Information, prompt notice thereof (to the extent legally permissible) shall be given to the Company (provided that no notification shall be required in respect of any disclosure to

regulatory authorities having jurisdiction over Houlihan Lokey), and Houlihan Lokey may disclose only that information which its counsel advises it is compelled to disclose. The obligations set forth in this paragraph shall remain in effect for a period of one year after the Effective Date.

14. **Additional Provisions Regarding Financing Transaction.**  The Company authorizes Houlihan Lokey to provide an information memorandum (or similar document) (as such document may be amended or supplemented and including any information incorporated therein by reference, the "Information Memorandum") and other pertinent information to prospective investors and other purchasers and agrees not to transmit the Information Memorandum to prospective investors or other purchasers without Houlihan Lokey's prior approval.  The Company will be solely responsible for the contents of the Information Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any actual or prospective investor or other purchaser.  The Company represents and warrants that the Information Memorandum and such other communications approved by the Company will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading.  If an event occurs as a result of which the Information Memorandum (as then supplemented or amended) would include any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, the Company will promptly notify Houlihan Lokey of such event and Houlihan Lokey will suspend solicitations of prospective investors and other purchasers until such time as the Company prepares (and the Company agrees that, if the solicitation of prospective investors and other purchasers has been so suspended after the Company has accepted orders from prospective investors or other purchasers, the Company will promptly prepare) a supplement or amendment to the Information Memorandum which corrects such statement(s) or omission(s). The Company will (i) make available to each bona fide offeree of the Securities such information (in addition to that contained in the Information Memorandum) concerning the offering of the Securities, the Company and any other relevant matters, and (ii) provide each bona fide offeree the opportunity to ask questions of, and receive answers from, the officers and employees of the Company concerning the terms and conditions of the offering of the Securities.

The Group acknowledges that closing of a Financing Transaction is subject, among other factors, to acceptable documentation, market conditions, and satisfaction of the conditions set forth in one or more agreements to be entered into with any financier, lender, investor or other purchaser of Securities.  It is expressly understood that this engagement does not constitute any commitment, express or implied, on the part of Houlihan Lokey to (a) acquire, and does not ensure the successful placement of, any portion of the Securities, (b) secure any other financing on behalf of any person or entity, or (c) ensure that any agreements are executed by any financier, lender, investor or other prospective purchaser of Securities or guarantee the obligations of any such party. The Group further acknowledges and agrees that Houlihan Lokey is not acting as an underwriter of the Securities and shall have no responsibility or obligation to underwrite the Securities, and that Houlihan Lokey's undertaking is subject to our continued satisfaction with the results of our ongoing review of the Company's business and affairs.

In connection with all offers and sales of the Securities, the Company will cause to be addressed and delivered to Houlihan Lokey any opinions of counsel that have been provided to investors or other purchasers of the Securities.  The Company also will cause to be furnished to Houlihan Lokey at or after each closing of a sale of Securities copies (addressed to Houlihan Lokey, if requested and as appropriate) of such agreements, opinions, certificates and other documents (including, without limitation, accountant's letters) as Houlihan Lokey may reasonably request.  The Company hereby acknowledges and agrees that Houlihan Lokey shall be entitled to rely upon the representations and warranties made (whether pursuant to a subscription agreement or in any other format) to investors or other purchasers of Securities and the Company shall be deemed to have made such representations and warranties to and for the benefit of Houlihan Lokey.

It is understood that the offer and sale of the Securities in a Financing Transaction will be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Act"), pursuant to Section 4(a)(2) thereof.  The Company has not taken, and will not take, any action, directly or indirectly,

so as to cause the transactions contemplated by this Agreement to fail to be entitled to exemption under Section 4(a)(2) of the Act. The Company will promptly from time to time take such reasonable action as necessary to qualify the Securities as a private placement under the securities laws of such States and foreign jurisdictions as any prospective investor or other purchaser may reasonably request and will comply with applicable laws. The Company shall cause the issuer of the Securities to offer and sell the Securities only to investors and other purchasers of the Securities that they reasonably believe to be "accredited investors", as defined in Rule 501 of Regulation D under the Act. The Company will cause the issuer of the Securities to file in a timely manner with the Securities and Exchange Commission (the "SEC") and/or each other regulatory authority any notices or other filings with respect to the Securities required by Rule 503 of Regulation D under the Act and/or other applicable law or regulation and will upon request furnish to Houlihan Lokey a signed copy of each such notice or filing promptly after its submission.

15.    **Limitations on Services as Advisor.**  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing by Houlihan Lokey and the Company. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Group, and that Houlihan Lokey is not acting as an agent or fiduciary of Weil, the Company, its security holders or creditors or any other person or entity in connection with this engagement, and the Group agrees that it shall not make, and hereby waives, any claim based on an assertion of such an agency or fiduciary relationship. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion. Any duties of Houlihan Lokey arising by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder will be owed solely to the Group.

16.    **Bankruptcy Court Approval.**  In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder. The Company shall submit Houlihan Lokey's employment application as soon as reasonably practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its commercially reasonable efforts to cause such application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and reasonable out-of-pocket expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this

Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects.  If the order authorizing the employment of Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and documented out-of-pocket expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Rules, Bankruptcy Rules and applicable local rules and orders.  Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash.  The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

17.  **Additional Services.**  To the extent Houlihan Lokey is requested by the Group to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by the Company and Houlihan Lokey in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

18.  **Required Services.**  If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related and documented out-of-pocket costs and expenses, including, among other things, the reasonable and documented legal fees and expenses of Houlihan Lokey's outside counsel in connection therewith.

19.  **Credit.**  After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith.  Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to the Company with respect to such Transaction.

20.  **Choice of Law; Jury Trial Waiver; Jurisdiction.  THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK.  THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.  EACH OF HOULIHAN LOKEY, WEIL AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND AGREES TO VENUE IN SUCH COURTS; PROVIDED THAT SUCH**

**CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE EXCLUSIVELY TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURTS, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN ANY OF THE COURTS REFERRED TO ABOVE SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT 2000 WEST SAM HOUSTON PARKWAY SOUTH, SUITE 1200, HOUSTON TX 77042.**

21.     **Indemnification and Exculpation.**  As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees (i) to indemnify and hold harmless the HL Parties (as defined below), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, and (ii) to reimburse each HL Party for all reasonable and documented expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement.  However, the Company shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability to the extent it both (a) arises out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of Weil or the Company) and (b) is finally judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct, bad faith, gross negligence or actual fraud of such HL Party, and in such case, the Company shall be entitled to recover from the applicable HL Party any and all amounts paid by the Company or on its behalf pursuant to the reimbursement obligation set forth in this paragraph to the extent attributable to such loss, claim, damage or liability, subject to such HL Party's rights of contribution.

        If for any reason the foregoing indemnification or reimbursement is unavailable to any HL Party or insufficient to fully indemnify any HL Party or hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions in the immediately preceding paragraph, then the Company shall contribute to the amount paid or payable by such HL Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by such HL Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company (and its affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such HL Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the HL Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement. Relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders, creditors, and other affiliates,

as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement.

The Company may not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an HL Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the HL Parties reasonably satisfactory in form and substance to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other HL Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by Fieldwood which arise out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of Weil or the Company) and are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party, and no HL Party shall have any liability under this agreement whatsoever to Weil or any other person or entity other than Fieldwood.

The Company shall cause any new company or entity that may be formed by the Company, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions.  Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall, for the avoidance of doubt, apply to any activities or actions arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, prior to the Effective Date, and to any modifications of this Agreement, and (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any HL Party. The Company agrees that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

For purposes of this Agreement, the term "HL Parties" shall mean Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons.

22.    **Miscellaneous.**    This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed on behalf of the Company.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than Weil, Fieldwood, the HL Parties and each of their respective successors, heirs and

assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Company's equity interests as well as the Company's executive officers and other control persons, and (ii) certain identifying information necessary to verify the Company's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument. By executing this Agreement, the Company confirms that all such information provided to Houlihan Lokey is accurate and complete.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Group represents and warrants that (a) it has all requisite power and authority to enter into this Agreement (and ,with respect to Fieldwood, on behalf of itself and each of its direct and indirect subsidiaries), and (b) this Agreement has been duly and validly authorized by all necessary action on the part of each party comprising the Group and has been duly executed and delivered by or on behalf of each such party and constitutes a legal, valid and binding agreement of each such party, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. The Group understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Group confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

The Group understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other

obligations) of, or investments in, the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about the Company, a Transaction or such other parties, or that otherwise may be of interest to the Group, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Group or to use such information on the Group's behalf.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Group agrees that Houlihan Lokey may, solely in connection with the performance of its services provided hereunder, share information obtained from the Company and other parties hereunder with other members of the Houlihan Lokey Group, and may perform the services contemplated hereby in conjunction with such other members, subject to the confidentiality provisions set forth in Section 13 above.

The Company acknowledges that Houlihan Lokey has in the past provided certain investment banking and financial advisory services to lenders to the Company and/or its predecessor entities (the "November 2017 Engagement"), and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders) knowingly and voluntarily (a) waives and releases, to the fullest extent permitted by law, any claims it may have against the Houlihan Lokey or its affiliates arising out of, resulting from or based upon such engagement, and (b) waives any actual or potential conflicts of interest which may result from Houlihan Lokey's multiple roles as an advisor pursuant to the November 2017 Engagement and an advisor to the Company pursuant to this Agreement.

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement along with a check (or wire transfer confirmation) for $350,000 on account of the first and second Monthly Fees.

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

HOULIHAN LOKEY CAPITAL, INC.

By: _____
     John-Paul Hanson
     Managing Director

Accepted and agreed to as of the Effective Date:

Weil, Gotshal & Manges LLP, solely in its capacity as counsel to, and with the consent and authorization of, Fieldwood Energy Inc.

By: _____
     Matthew S. Barr, Esq.

Acknowledged and agreed to as of the Effective Date:

Fieldwood Energy Inc. on its own behalf, and on behalf of its direct and indirect subsidiaries

By: _____
     G. M. McCarroll
     President and Chief Executive Officer

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement along with a check (or wire transfer confirmation) for $350,000 on account of the first and second Monthly Fees.

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

HOULIHAN LOKEY CAPITAL, INC.

By: _____
      John-Paul Hanson
      Managing Director

Accepted and agreed to as of the Effective Date:

Weil, Gotshal & Manges LLP, solely in its capacity as counsel to, and with the consent and authorization of, Fieldwood Energy Inc.

By: _____
      Matthew S. Barr, Esq.

Acknowledged and agreed to as of the Effective Date:

Fieldwood Energy Inc. on its own behalf, and on behalf of its direct and indirect subsidiaries

By: _____
      G. M. McCarroll
      President and Chief Executive Officer

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement with a counter transfer confirming your co the first and second Monthly Fees.

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

HOULIHAN LOKEY CAPITAL, INC.

By: _____
    John-Paul Hanson
    Managing Director

Accepted and agreed to as of the Effective Date:

Weil, Gotshal & Manges LLP, solely in its capacity as counsel to, and with the consent and authorization of, Fieldwood Energy Inc.

By: _____
    Matthew S. Barr, Esq.

Acknowledged and agreed to as of the Effective Date:

Fieldwood Energy Inc. on its own behalf, and on behalf of its direct and indirect subsidiaries

By:
    G. M. McCarroll
    President and Chief Executive Officer

Exhibit A

Exceptions to Sale Transaction

**Affected joint venture entities:** :

       Paloma Pipeline Co.

       Whitecap Pipeline Co. L.C.C.

       Ship Shoal Pipeline Company

       SP 49 Pipeline LLC

       White Shoal Pipeline Corp.

       Whitecap Pipeline Company LLC

       Fieldwood Coöperatief U.A.

       Mexico Management LLC

       All JV entities comprising the Mexico project, including, without limitation:

              Fieldwood Mexico B.V.

              Fieldwood Energy de Mexico S. de R.L. de C.V.

              Fieldwood Energy E&P Mexico S. de R.L. de C.V.

              Fieldwood Energy Services de Mexico S. de R.L. de C.V.

**In process sale transactions:**

       South Timbailier 311 Field