IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY CAPITAL, INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "**Application**")[2] of Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Bankruptcy Local Rules 2014-1 and 2016-1, for entry of an order (this "**Order**"), (a) authorizing the Debtors to employ and retain Houlihan Lokey Capital, Inc. ("**Houlihan Lokey**") as their financial advisor and investment banker in accordance with the terms and conditions set forth in that certain engagement agreement, dated as of March 30, 2020 (the "**Engagement Letter**"), a copy of which is attached hereto as **Exhibit 1**, (ii) approving the terms of Houlihan Lokey's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Application.

1

Engagement Letter, (iii) waiving certain informational requirements, and (iv) granting related relief. The Court having considered the Application and the Hanson Declaration; and the Court finding that (A) the terms and conditions of Houlihan Lokey's employment set forth in the Engagement Letter (including the Fee and Expense Structure) as modified by this Order, are reasonable as required by section 328(a) of the Bankruptcy Code; (B) Houlihan Lokey (i) does not hold or represent an interest adverse to the interest of the estate; and (ii) is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code; (C) the Application and the Hanson Declaration are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules; (D) the relief requested in the Application is necessary to the Debtors' reorganization and in the best interests of the Debtors, their estates and creditors; and (E) notice of the Application was due and proper under the circumstances; and after due deliberation, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT**

1. In accordance with sections 327(a), 328(a), and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Bankruptcy Local Rules 2014-1 and 2016-1, the Debtors are authorized to retain and employ Houlihan Lokey as their financial advisor and investment banker, *nunc pro* tunc to the Petition Date, on the terms and conditions set forth in the Engagement Letter and the Application, as modified by this Order.

2. None of the fees payable to Houlihan Lokey shall constitute a "bonus" or fee enhancement under applicable law.

3. The terms of the Engagement Letter, including without limitation, the compensation, fees, and expenses payable to Houlihan Lokey pursuant to the Engagement Letter, together with the indemnification, reimbursement of expenses, and contribution obligations owed

to Houlihan Lokey and any other HL Party under the Engagement Letter shall be subject to review only pursuant to the standard of review set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard review set forth in section 300 of the Bankruptcy Code or any other standard or review.

4. Notwithstanding the preceding paragraph, the U.S. Trustee shall retain the right to object to the compensation, fees, and expenses to be paid to Houlihan Lokey pursuant to the Application and the Engagement Letter, including the Monthly Fees, Amendment Fees, and Transaction Fee(s), based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court shall consider any such objection by the U.S. Trustee under section 330 of the Bankruptcy Code.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Houlihan Lokey's compensation, fees, and expenses under the standard set forth in the preceding sentence.  Accordingly, nothing in this Order or such record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Houlihan Lokey's fees.

5. The Debtors are authorized to compensate and reimburse Houlihan Lokey pursuant to the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court.

6. Houlihan Lokey shall file monthly, interim and final fee applications for allowance of compensation for services rendered and reimbursement of expenses incurred pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the U.S. Trustee Guidelines and any applicable order of this Court.

7. In light of the services to be provided by Houlihan Lokey and the compensation structure in the Engagement Letter, Houlihan Lokey and its professionals shall be excused from: (i) any requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), the *Procedures for Complex Cases in the Southern District of Texas* (the "**Complex Case Procedures**"), and the United States Trustee Fee Guidelines; and (ii) conforming with a schedule of hourly rates for its professionals. Instead, notwithstanding that Houlihan Lokey does not charge for its services on an hourly basis, Houlihan Lokey will nonetheless maintain reasonably detailed time records in 0.5 hour increments containing descriptions of those services rendered for the Debtors, and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

8. To the extent requested in the Application, Houlihan Lokey is granted a waiver with respect to the information requirements contained in the Bankruptcy Local Rules and Complex Case Procedures.

9. The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

10. The Debtors shall be bound by the indemnification, contribution, reimbursement and exculpation provisions set forth in the Engagement Letter, subject during the pendency of these cases to the following:

    a. Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, the HL Parties for any claims arising from, related to, or in connection with the services to be provided by Houlihan Lokey as specified in the Application, but not for any claim arising from, related to, or in connection with Houlihan Lokey's post-petition performance of any other services (other than those in connection with the engagement), unless such post-petition services and indemnification therefor are approved by this Court;

4

      b.      The Debtors shall have no obligation to indemnify any HL Party, or provide contribution or reimbursement to any HL Party, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from such HL Party's bad faith, gross negligence or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of such HL Party's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which such HL Party is not entitled to receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

      c.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, any HL Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, such HL Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such HL Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request for fees and expenses by HL Parties for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify the HL Parties.

11. Notwithstanding any provision in the Engagement Letter to the contrary, the contribution obligations of the HL Parties shall not be limited to the aggregate amount of fees actually received by Houlihan Lokey from the Debtors pursuant to the Engagement Letter.

12. Notice of this Application as provided therein constitutes good and sufficient notice of the Application.

13. To the extent the Application or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

14. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

15. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2020
   Houston, Texas

_____
THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

**Engagement Letter**

**Execution Version**

*Personal and Confidential*

As of March 30, 2020

Weil, Gotshal & Manges LLP
767 5th Avenue
New York, NY 10153
Attn: Matthew Barr

Dear Mr. Barr:

     This letter agreement (this "Agreement") confirms the terms under which Weil, Gotshal & Manges LLP (in its capacity as counsel to the Company (as defined below), "Weil"), as counsel to Fieldwood Energy Inc. ("Fieldwood" and collectively with its direct and indirect subsidiaries, the "Company" and, the Company, together with Weil, the "Group"), has engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as the Company's exclusive financial advisor to provide financial advisory and investment banking services in connection with, in a first phase, a waiver or amendment transaction, plus, in a second or subsequent phase, one or more transaction(s) including a financial restructuring or reorganization of, one or more financing transactions for, or one or more merger and/or acquisition transactions involving, the Company and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement. Notwithstanding anything to the contrary in this Agreement, Houlihan Lokey and the Company each acknowledge and agree that Weil shall not be liable for the fees, expenses, indemnification or reimbursement obligations or other amounts that may be owed by the Company to Houlihan Lokey hereunder.

     1.    **Services**.  In connection with each potential Transaction (as defined below), Houlihan Lokey will assist and advise Weil, as counsel to and on behalf of the Company, with the analysis, evaluation, pursuit and effectuation of any such Transaction.  Houlihan Lokey's services will consist of, if appropriate and if requested by Weil, as counsel to and on behalf of the Company, and the Company, (i) assisting the Group in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Group in the preparation of an offering memorandum (it being expressly understood that the Company will remain solely responsible for such materials and all of the information contained therein); (ii) assisting the Group in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners; (iii) assisting the Group with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s); (iv) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary; (v) attending with

Weil, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Houlihan Lokey mutually agree; and (vi) providing such other financial advisory and investment banking services as may be required by additional issues and developments not anticipated on the Effective Date, as described in Section 9 of this Agreement.

2. **Exclusive Agency.**  The Company agrees that neither it nor its management will initiate any discussions regarding a Transaction during the term of this Agreement, except with prior consultation with Houlihan Lokey.  In the event the Company or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

3. **Fees.**  In consideration of Houlihan Lokey's acceptance of this engagement, the Company shall pay the following:

   (i) *Monthly Fees*:  In addition to the other fees provided for herein, upon the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $175,000 ("Monthly Fee"); provided that, beginning with the fourth (4th) Monthly Fee, the Monthly Fee shall be $150,000.  Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. 50% of the Monthly Fees following the sixth (6th) Monthly Fee paid on a timely basis to Houlihan Lokey shall be credited against the next Transaction Fee (as defined below) (other than a Financing Transaction Fee (as defined below) or Amendment Fee (as defined below)) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall any Transaction Fee be reduced below zero;

   (ii) *Amendment Fee(s).* Upon the closing of each Amendment (as defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee (the "Amendment Fee") equal to $250,000. The Amendment Fee shall be fully credited against the next Transaction Fee (other than a Financing Transaction Fee or Amendment Fee) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Amendment Fee shall be credited more than once), except that, in no event, shall any Transaction Fee be reduced below zero; and

   (iii) *Transaction Fee(s)*:  In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

   a. *Restructuring Transaction Fee.* Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined below), the closing of such Restructuring Transaction; and (II) in the case of an in-court Restructuring Transaction, the effective date of a confirmed plan of reorganization or liquidation under Chapter 11 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code"), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $8,250,000; provided that, in connection with a "pre-packaged" plan of reorganization under Chapter 11 of the Bankruptcy Code, Houlihan Lokey shall earn and the Company shall promptly pay to Houlihan Lokey (i) 50% of the Restructuring Transaction Fee on the date that the requisite consents to such "pre-packaged" plan are obtained, and (ii) the remaining portion of the Restructuring Transaction Fee on the date such "pre-packaged" plan becomes effective.

   b. *Discretionary Fee.* If a Restructuring Transaction is consummated "out-of-court" and prior to October 31, 2020, the Company shall pay to Houlihan Lokey a fee of $750,000 (the "Discretionary Fee") upon consummation of such Restructuring Transaction, in addition

to any Restructuring Transaction Fee.  For the avoidance of doubt, only one Discretionary Fee of $750,000 may be payable pursuant to the terms of this Agreement.

c. *Sale Transaction Fee.* Upon the closing of each Sale Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") of 1.0% of Aggregate Gross Consideration ("AGC").

d. *Financing Transaction Fee.* Upon the closing of each Financing Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of 0.50% of the gross proceeds of any: (I) indebtedness raised or committed that is senior to other indebtedness of the Company, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Company (other than with respect to debtor-in-possession financing); (II) indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (III) equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed; provided that, to the extent any of I, II, and III above are raised from the Company's existing lenders and/or equity holders, the Financing Transaction Fee with respect to such gross proceeds shall be calculated as 0.25% of such gross proceeds.  Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and such portion of the Financing Transaction Fee shall be paid upon such exercise and from the gross proceeds thereof, regardless of any prior termination or expiration of this Agreement.  It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage.  The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent or directly by the Company or any of its affiliates.  Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Fee as equaling the number of Securities (as defined below) issued in exchange for such consideration multiplied by (in the case of debt securities) the face value of each such Security or (in the case of equity securities) the price per Security paid in the then current round of financing.  The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any investor or other purchaser of Securities to secure its financing commitment.  Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, a Financing Transaction Fee for any debtor-in-possession financing that is raised of 0.50% of the gross proceeds of such financing; provided that, to the extent such financing is raised from the Company's existing lenders and/or equity holders, the Financing Transaction Fee with respect to such portion of the financing shall be calculated as 0.25% of such gross proceeds. The Financing Transaction Fee payable hereunder shall be subject to a $1,000,000 minimum Financing Transaction Fee payable upon the first closing of a Financing Transaction. For the avoidance of doubt, Houlihan Lokey may earn only one Financing Transaction Fee for the placement, raising, or issuance of each of "debtor-in-possession financing" and "exit financing," even if any such financing is executed with one or more parties and/or in one or more transactions.

Any Restructuring Transaction Fee, Discretionary Fee, Sale Transaction Fee, Amendment Fee, and Financing Transaction Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees."

In the event both a Restructuring Transaction Fee and a Sale Transaction Fee are earned, 50% of the lower such fee shall be creditable against the larger such fee, except that, in no event, shall any Transaction Fee be reduced below zero. In the event a Financing Transaction Fee is earned, it shall be incremental to any Restructuring Transaction Fee, any Discretionary Fee, any Sale Transaction Fee and any Amendment Fee and shall not be creditable against any such fee, nor shall any Restructuring Transaction Fee, any Discretionary Fee, any Sale Transaction Fee or any Amendment Fee be creditable against any Financing Transaction Fee.

All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. Except with the prior written consent of Houlihan Lokey, no payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4. **Term and Termination.** This Agreement will commence as of the Effective Date and will continue thereafter (and not terminate or expire) until terminated by Houlihan Lokey or the Company upon thirty days' prior written notice of termination to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Company of the Transaction Fees described in this Agreement: (i) so long as a Transaction is consummated during the term of this Agreement, or within 12 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Transaction is executed by any entity comprising the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated at any time following such execution with the counterparty named in such agreement, or with any affiliate or employee of, or investor in, such counterparty, or any affiliate of any of the foregoing.

5. **Transaction.** As used in this Agreement, the term "Transaction" shall mean any of the following:

(i) *Restructuring Transaction.* Any transaction or series of transactions that constitute a recapitalization or restructuring of the equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, collective bargaining agreements and other contract or tort obligations), including accrued and/or accreted interest thereon, of any entity comprising the Company, in each case, that is material to the Company as a whole, which are outstanding as of the Effective Date, including, without limitation, interest bearing trade debt and the Company's (i) Second Amended and Restated Credit Agreement (First Out), (ii) Amended and Restated First Lien Term Loan Credit Agreement, and (iii) Second Lien Term Loan Agreement (together, the "Credit Facilities"), which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization or liquidation under Chapter 11 of the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the equity and/or debt securities and/or other indebtedness of any entity comprising the Company (such modification or amendment shall include, without limitation, any forbearance for at least 12 months with respect to any payment obligation) or any combination of the foregoing transactions (each a "Restructuring Transaction");

(ii) *Sale Transaction*.  Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company and/or the affiliates of each) in one or a series of related transactions of (a) all or a material portion of the equity securities of any entity comprising the Company or any interest held by any entity comprising the Company and/or (b) any significant portion of the assets (including the assignment of any executory contracts) or operations of any entity comprising the Company, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of the Bankruptcy Code (each a "Sale Transaction"); provided that the term Sale Transaction shall not include any such transaction or series of transactions (x) in progress prior to the Effective Date which are specifically identified on Exhibit A hereto or (y) relating to the Company's joint ventures specifically identified on Exhibit A hereto;

(iii) *Financing Transaction*.  (a) Any transaction or series of related transactions that constitutes any refinancing of all or any portion of the existing obligations of any entity comprising the Company and/or (b) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code by any entity comprising the Company (any or all of which being "Securities"), from any source including, without limitation, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction"); provided that, a "Financing Transaction" shall not include the Company's existing credit facilities that may be exchanged for new securities in connection with a debtor-in-possession financing (a "Roll-up"); or

(iv) *Amendment*. Any waiver of default pursuant to and/or any amendment effecting a change in the terms of the Company's indebtedness that does not otherwise constitute a Restructuring Transaction (each, an "Amendment"); provided that, none of (a) an initial forbearance with respect to interest payments due on April 30, 2020 pursuant to the Credit Facilities (the "Initial Forbearance"), (b) the initial waivers relating to the Company's inability to deliver an audit opinion without a "going concern" or like qualification or exception for the fiscal year ending December 31, 2019 (the "Initial Going Concern Waiver"), or (c) any related amendment(s) or waiver(s) negotiated and agreed to in connection with the Initial Going Concern Waiver, shall be considered an Amendment; provided further that, the preceding exception will not apply to any subsequent waiver or amendment following the Initial Forbearance and the Initial Going Concern Waiver, including those of the same or similar subject matter. An "Amendment" shall not include amendments that (x) are immaterial, technical, or non-substantive in nature or (y) for which Houlihan Lokey is not involved in the negotiation, structuring, or rendering of advice with respect to such Amendment.

6.      **Aggregate Gross Consideration ("AGC").**  For the purpose of calculating the Sale Transaction Fee, the AGC shall be the gross proceeds and other consideration paid to, or received by, or to be paid to or received by, any entity comprising the Company, or any of its equity or debt holders, or other parties in interest, including, without limitation, holders of warrants and convertible securities, and holders of options or stock appreciation rights, whether or not vested (collectively "Constituents"), in connection with the relevant Sale Transaction. Such proceeds and consideration shall be deemed to include, without limitation: