

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
11/04/2020

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.,* | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | Re: Docket No. 405 |

**ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN
LOKEY CAPITAL, INC.  AS FINANCIAL ADVISOR AND INVESTMENT BANKER
TO DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Upon the application (the "**Application**")[2] of Fieldwood Energy LLC and its debtor

affiliates in the above-captioned chapter 11 cases as debtors and debtors in possession

(collectively, the "**Debtors**"), pursuant to sections 327(a) and 328 of the Bankruptcy Code,

Bankruptcy Rules 2014 and 5002, and Bankruptcy Local Rules 2014-1 and 2016-1, for entry of an

order (this "**Order**"), (a) authorizing the Debtors to employ and retain Houlihan Lokey Capital,

Inc. ("**Houlihan Lokey**") as their financial advisor and investment banker in accordance with the

terms and conditions set forth in that certain engagement agreement, dated as of March 30, 2020

(the "**Engagement Letter**"), a copy of which is attached hereto as **Exhibit 1**, (ii) approving the

terms of Houlihan Lokey's employment and retention, including the fee and expense structure and

the indemnification, contribution, reimbursement, and related provisions set forth in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Application.

1

Engagement Letter, (iii) waiving certain informational requirements, and (iv) granting related relief.  The Court having considered the Application and the Hanson Declaration; and the Court finding that (A) the terms and conditions of Houlihan Lokey's employment set forth in the Engagement Letter (including the Fee and Expense Structure) as modified by this Order, are reasonable as required by section 328(a) of the Bankruptcy Code; (B) Houlihan Lokey (i) does not hold or represent an interest adverse to the interest of the estate; and (ii) is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code; (C) the Application and the Hanson Declaration are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules; (D) the relief requested in the Application is necessary to the Debtors' reorganization and in the best interests of the Debtors, their estates and creditors; and (E) notice of the Application was due and proper under the circumstances; and after due deliberation, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED THAT**

1.     In accordance with sections 327(a), 328(a), and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Bankruptcy Local Rules 2014-1 and 2016-1, the Debtors are authorized to retain and employ Houlihan Lokey as their financial advisor and investment banker,effective as of the Petition Date, on the terms and conditions set forth in the Engagement Letter and the Application, as modified by this Order, including, without limitation, pursuant to paragraph 5.

2.     None of the fees payable to Houlihan Lokey shall constitute a "bonus" or fee enhancement under applicable law.

3.     The terms of the Engagement Letter, including without limitation, the compensation, fees, and expenses payable to Houlihan Lokey pursuant to the Engagement Letter,

together with the indemnification, reimbursement of expenses, and contribution obligations owed to Houlihan Lokey and any other HL Party under the Engagement Letter shall be subject to review only pursuant to the standard of review set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard review set forth in section 330 of the Bankruptcy Code or any other standard or review.

4.      Notwithstanding the preceding paragraph, the U.S. Trustee shall retain the right to object to the compensation, fees, and expenses to be paid to Houlihan Lokey pursuant to the Application and the Engagement Letter, including the Monthly Fees, and Transaction Fee(s), based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, and the Court shall consider any such objection by the U.S. Trustee under section 330 of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Houlihan Lokey's compensation, fees, and expenses under the standard set forth in the preceding sentence.  Accordingly, nothing in this Order or such record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Houlihan Lokey's fees.

5.      The Debtors are authorized to compensate and reimburse Houlihan Lokey pursuant to the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the applicable U.S. Trustee Guidelines and any other applicable orders of this Court; *provided, however*, that, notwithstanding anything in the Engagement Letter, the Application or this Order to the contrary, (i) any global restructuring of all or substantially all of the Debtors' assets (any such restructuring, a "Global Restructuring"), including, without limitation, any Global Restructuring that (x) is effectuated through multiple

transactions with existing stakeholders and/or, (y) which is based on a Sale Transaction that is a disposition to existing lenders, shall be considered a single "Transaction" as such term is used in the Engagement Letter, which Transaction shall entitle Houlihan Lokey to a single Restructuring Transaction Fee, and not the Sale Transaction Fee, and (ii) no Amendment Fee shall be payable under the terms of the Engagement Letter.  However, for the avoidance of doubt, as outlined in the Engagement Letter, (i) in the event of a sale of any or all assets to a third party, whether in a single transaction or multiple transactions, Houlihan Lokey shall be entitled to the Sale Transaction Fee, and (ii) in the event of a financing raised from a third party(ies), Houlihan Lokey shall be entitled to the Financing Transaction Fee, which fees may be in addition to the payment of the Restructuring Transaction Fee in as much as such transactions involve third party(ies).

6.      Houlihan Lokey shall file monthly, interim and final fee applications for allowance of compensation for services rendered and reimbursement of expenses incurred pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the U.S. Trustee Guidelines and any applicable order of this Court.

7.      Houlihan Lokey shall include in its monthly, interim and final fee applications, among other things, reasonably detailed time records setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in half-hour increments, but Houlihan Lokey shall be excused from keeping time in tenth-hour increments.

8.      Houlihan Lokey also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures in connection with the Application and the interim and final fee applications to be filed by Houlihan Lokey in these chapter 11 cases.

9.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

10.     The Debtors shall be bound by the indemnification, contribution, reimbursement and exculpation provisions set forth in the Engagement Letter, subject during the pendency of these cases to the following:

a.     Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, the HL Parties for any claims arising from, related to, or in connection with the services to be provided by Houlihan Lokey as specified in the Application, but not for any claim arising from, related to, or in connection with Houlihan Lokey's post-petition performance of any other services (other than those in connection with the engagement), unless such post-petition services and indemnification therefor are approved by this Court;

b.     The Debtors shall have no obligation to indemnify any HL Party, or provide contribution or reimbursement to any HL Party, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from such HL Party's bad faith, gross negligence, breach of fiduciary duty (if any), self-dealing or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of such HL Party's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which such HL Party is not entitled to receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order; and

c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, any HL Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, such HL Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such HL Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period during which the Court shall have

5

jurisdiction over any request for fees and expenses by HL Parties for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify the HL Parties.

11.     Notwithstanding any provision in the Engagement Letter to the contrary, the contribution obligations of the HL Parties shall not be limited to the aggregate amount of fees actually received by Houlihan Lokey from the Debtors pursuant to the Engagement Letter.

12.     Notwithstanding anything to the contrary, to the extent the Debtors wish to expand the scope of Houlihan Lokey's services beyond those services set forth in the Engagement Letter or this Order, the Debtors shall be required to seek further approval from this Court.  The Debtors shall file notice of any proposed Additional Services (as defined in the Engagement Letter) and any underlying engagement agreement with the Court and serve such notice on the U.S. Trustee, the Committee, and any party requesting notice under Bankruptcy Rule 2002. If no such party files an objection within 10 days of the Debtors filing such notice, the Additional Services and any underlying engagement agreement may be approved by the Court by further order without further notice or hearing.

13.     Notwithstanding anything in the Application or the Engagement Letter to the contrary, Houlihan Lokey shall (i) to the extent that Houlihan Lokey uses the services of independent contractors, subcontractors or employees of foreign affiliates or subsidiaries (collectively, the "Contractors") in these cases, Houlihan Lokey shall pass-through the cost of such Contractors to the Debtors at the same rate that Houlihan Lokey pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Houlihan Lokey, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

14.     In the event that, during the pendency of these cases, Houlihan Lokey seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records

from such attorneys, appropriately redacted to preserve applicable privileges, shall be included in Houlihan Lokey's fee applications and such invoices and time records shall be in compliance with the Bankruptcy Local Rules, and shall be subject to the U.S. Trustee Guidelines and approval of the Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; provided, however, that Houlihan Lokey shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any of Houlihan Lokey's fee applications in these bankruptcy cases.

15.     Houlihan Lokey's Monthly Fee shall be prorated for any month in which Houlihan Lokey is not employed for each day of the month.

16.     Houlihan Lokey shall use reasonable efforts and will coordinate with the Debtors and its other retained professionals, not to duplicate any of the services provided to the Debtors by any of its other retained professionals.

17.     Houlihan Lokey shall have a continuing obligation to disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest.

18.     Notice of this Application as provided therein constitutes good and sufficient notice of the Application.

19.     To the extent that there may be any inconsistency between the terms of the Application, the Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

20.     The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

21.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed: November 04, 2020

_____
Marvin Isgur
United States Bankruptcy Judge

## Exhibit 1

**Engagement Letter**

**Execution Version**

*Personal and Confidential*

As of March 30, 2020

Weil, Gotshal & Manges LLP
767 5th Avenue
New York, NY 10153
Attn: Matthew Barr

Dear Mr. Barr:

  This letter agreement (this "Agreement") confirms the terms under which Weil, Gotshal & Manges LLP (in its capacity as counsel to the Company (as defined below), "Weil"), as counsel to Fieldwood Energy Inc. ("Fieldwood" and collectively with its direct and indirect subsidiaries, the "Company" and, the Company, together with Weil, the "Group"), has engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as the Company's exclusive financial advisor to provide financial advisory and investment banking services in connection with, in a first phase, a waiver or amendment transaction, plus, in a second or subsequent phase, one or more transaction(s) including a financial restructuring or reorganization of, one or more financing transactions for, or one or more merger and/or acquisition transactions involving, the Company and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement. Notwithstanding anything to the contrary in this Agreement, Houlihan Lokey and the Company each acknowledge and agree that Weil shall not be liable for the fees, expenses, indemnification or reimbursement obligations or other amounts that may be owed by the Company to Houlihan Lokey hereunder.

  1. **Services**.  In connection with each potential Transaction (as defined below), Houlihan Lokey will assist and advise Weil, as counsel to and on behalf of the Company, with the analysis, evaluation, pursuit and effectuation of any such Transaction.  Houlihan Lokey's services will consist of, if appropriate and if requested by Weil, as counsel to and on behalf of the Company, and the Company, (i) assisting the Group in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Group in the preparation of an offering memorandum (it being expressly understood that the Company will remain solely responsible for such materials and all of the information contained therein); (ii) assisting the Group in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners; (iii) assisting the Group with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s); (iv) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary; (v) attending with

Weil, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Houlihan Lokey mutually agree; and (vi) providing such other financial advisory and investment banking services as may be required by additional issues and developments not anticipated on the Effective Date, as described in Section 9 of this Agreement.

2.     **Exclusive Agency.**  The Company agrees that neither it nor its management will initiate any discussions regarding a Transaction during the term of this Agreement, except with prior consultation with Houlihan Lokey.   In the event the Company or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

3.     **Fees.**  In consideration of Houlihan Lokey's acceptance of this engagement, the Company shall pay the following:

(i)  *Monthly Fees*:  In addition to the other fees provided for herein, upon the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $175,000 ("Monthly Fee"); provided that, beginning with the fourth (4th) Monthly Fee, the Monthly Fee shall be $150,000.  Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. 50% of the Monthly Fees following the sixth (6th) Monthly Fee paid on a timely basis to Houlihan Lokey shall be credited against the next Transaction Fee (as defined below) (other than a Financing Transaction Fee (as defined below) or Amendment Fee (as defined below)) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall any Transaction Fee be reduced below zero;

(ii)  *Amendment Fee(s).* Upon the closing of each Amendment (as defined below), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee (the "Amendment Fee") equal to $250,000. The Amendment Fee shall be fully credited against the next Transaction Fee (other than a Financing Transaction Fee or Amendment Fee) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Amendment Fee shall be credited more than once), except that, in no event, shall any Transaction Fee be reduced below zero; and

(iii) *Transaction Fee(s)*:  In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

a.  *Restructuring Transaction Fee.* Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined below), the closing of such Restructuring Transaction; and (II) in the case of an in-court Restructuring Transaction, the effective date of a confirmed plan of reorganization or liquidation under Chapter 11 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code"), Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $8,250,000; provided that, in connection with a "pre-packaged" plan of reorganization under Chapter 11 of the Bankruptcy Code, Houlihan Lokey shall earn and the Company shall promptly pay to Houlihan Lokey (i) 50% of the Restructuring Transaction Fee on the date that the requisite consents to such "pre-packaged" plan are obtained, and (ii) the remaining portion of the Restructuring Transaction Fee on the date such "pre-packaged" plan becomes effective.

b.  *Discretionary Fee.* If a Restructuring Transaction is consummated "out-of-court" and prior to October 31, 2020, the Company shall pay to Houlihan Lokey a fee of $750,000 (the "Discretionary Fee") upon consummation of such Restructuring Transaction, in addition

to any Restructuring Transaction Fee.  For the avoidance of doubt, only one Discretionary Fee of $750,000 may be payable pursuant to the terms of this Agreement.

c.   *Sale Transaction Fee.* Upon the closing of each Sale Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") of 1.0% of Aggregate Gross Consideration ("AGC").

d.   *Financing Transaction Fee.* Upon the closing of each Financing Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of 0.50% of the gross proceeds of any: (I) indebtedness raised or committed that is senior to other indebtedness of the Company, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Company (other than with respect to debtor-in-possession financing); (II) indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (III) equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed; provided that, to the extent any of I, II, and III above are raised from the Company's existing lenders and/or equity holders, the Financing Transaction Fee with respect to such gross proceeds shall be calculated as 0.25% of such gross proceeds.  Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and such portion of the Financing Transaction Fee shall be paid upon such exercise and from the gross proceeds thereof, regardless of any prior termination or expiration of this Agreement.  It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage.  The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent or directly by the Company or any of its affiliates.  Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Fee as equaling the number of Securities (as defined below) issued in exchange for such consideration multiplied by (in the case of debt securities) the face value of each such Security or (in the case of equity securities) the price per Security paid in the then current round of financing.  The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any investor or other purchaser of Securities to secure its financing commitment.  Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, a Financing Transaction Fee for any debtor-in-possession financing that is raised of 0.50% of the gross proceeds of such financing; provided that, to the extent such financing is raised from the Company's existing lenders and/or equity holders, the Financing Transaction Fee with respect to such portion of the financing shall be calculated as 0.25% of such gross proceeds. The Financing Transaction Fee payable hereunder shall be subject to a $1,000,000 minimum Financing Transaction Fee payable upon the first closing of a Financing Transaction. For the avoidance of doubt, Houlihan Lokey may earn only one Financing Transaction Fee for the placement, raising, or issuance of each of "debtor-in-possession financing" and "exit financing," even if any such financing is executed with one or more parties and/or in one or more transactions.

Any Restructuring Transaction Fee, Discretionary Fee, Sale Transaction Fee, Amendment Fee, and Financing Transaction Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees."

In the event both a Restructuring Transaction Fee and a Sale Transaction Fee are earned, 50% of the lower such fee shall be creditable against the larger such fee, except that, in no event, shall any Transaction Fee be reduced below zero.  In the event a Financing Transaction Fee is earned, it shall be incremental to any Restructuring Transaction Fee, any Discretionary Fee, any Sale Transaction Fee and any Amendment Fee and shall not be creditable against any such fee, nor shall any Restructuring Transaction Fee, any Discretionary Fee, any Sale Transaction Fee or any Amendment Fee be creditable against any Financing Transaction Fee.

All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. Except with the prior written consent of Houlihan Lokey, no payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4.    **Term and Termination.**  This Agreement will commence as of the Effective Date and will continue thereafter (and not terminate or expire) until terminated by Houlihan Lokey or the Company upon thirty days' prior written notice of termination to the other party.  The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Company of the Transaction Fees described in this Agreement: (i) so long as a Transaction is consummated during the term of this Agreement, or within 12 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Transaction is executed by any entity comprising the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated at any time following such execution with the counterparty named in such agreement, or with any affiliate or employee of, or investor in, such counterparty, or any affiliate of any of the foregoing.

5.    **Transaction.**  As used in this Agreement, the term "Transaction" shall mean any of the following:

(i)  *Restructuring Transaction.*   Any transaction or series of transactions that constitute a recapitalization or restructuring of the equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, collective bargaining agreements and other contract or tort obligations), including accrued and/or accreted interest thereon, of any entity comprising the Company, in each case, that is material to the Company as a whole, which are outstanding as of the Effective Date, including, without limitation, interest bearing trade debt and the Company's (i) Second Amended and Restated Credit Agreement (First Out), (ii) Amended and Restated First Lien Term Loan Credit Agreement, and (iii) Second Lien Term Loan Agreement (together, the "Credit Facilities"), which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization or liquidation under Chapter 11 of the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the equity and/or debt securities and/or other indebtedness of any entity comprising the Company (such modification or amendment shall include, without limitation, any forbearance for at least 12 months with respect to any payment obligation) or any combination of the foregoing transactions (each a "Restructuring Transaction");

(ii) *Sale Transaction*.   Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company and/or the affiliates of each) in one or a series of related transactions of (a) all or a material portion of the equity securities of any entity comprising the Company or any interest held by any entity comprising the Company and/or (b) any significant portion of the assets (including the assignment of any executory contracts) or operations of any entity comprising the Company, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of the Bankruptcy Code (each a "Sale Transaction"); provided that the term Sale Transaction shall not include any such transaction or series of transactions (x) in progress prior to the Effective Date which are specifically identified on Exhibit A hereto or (y) relating to the Company's joint ventures specifically identified on Exhibit A hereto;

(iii) *Financing Transaction.* (a) Any transaction or series of related transactions that constitutes any refinancing of all or any portion of the existing obligations of any entity comprising the Company and/or (b) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code by any entity comprising the Company (any or all of which being "Securities"), from any source including, without limitation, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction"); provided that, a "Financing Transaction" shall not include the Company's existing credit facilities that may be exchanged for new securities in connection with a debtor-in-possession financing (a "Roll-up"); or

(iv) *Amendment*. Any waiver of default pursuant to and/or any amendment effecting a change in the terms of the Company's indebtedness that does not otherwise constitute a Restructuring Transaction (each, an "Amendment"); provided that, none of (a) an initial forbearance with respect to interest payments due on April 30, 2020 pursuant to the Credit Facilities (the "Initial Forbearance"), (b) the initial waivers relating to the Company's inability to deliver an audit opinion without a "going concern" or like qualification or exception for the fiscal year ending December 31, 2019 (the "Initial Going Concern Waiver"), or (c) any related amendment(s) or waiver(s) negotiated and agreed to in connection with the Initial Going Concern Waiver, shall be considered an Amendment; provided further that, the preceding exception will not apply to any subsequent waiver or amendment following the Initial Forbearance and the Initial Going Concern Waiver, including those of the same or similar subject matter. An "Amendment" shall not include amendments that (x) are immaterial, technical, or non-substantive in nature or (y) for which Houlihan Lokey is not involved in the negotiation, structuring, or rendering of advice with respect to such Amendment.

6.    **Aggregate Gross Consideration ("AGC").**  For the purpose of calculating the Sale Transaction Fee, the AGC shall be the gross proceeds and other consideration paid to, or received by, or to be paid to or received by, any entity comprising the Company, or any of its equity or debt holders, or other parties in interest, including, without limitation, holders of warrants and convertible securities, and holders of options or stock appreciation rights, whether or not vested (collectively "Constituents"), in connection with the relevant Sale Transaction. Such proceeds and consideration shall be deemed to include, without limitation:

amounts in escrow and any deposits or other amounts forfeited by any investor; cash, notes, securities, and other property; payments made in installments; Contingent Payments (as defined below); and/or insurance proceeds upon the occurrence of an insurable event that diminishes the value of the Company. Upon the closing of a Sale Transaction in which less than 100% of the ownership of the equity interests are sold, the AGC shall be calculated as if 100% of the ownership of the equity interests of the Company on a fully diluted basis had been sold by dividing (i) the total consideration, whether in cash, securities, notes or other forms of consideration, received or receivable by the Company and/or its Constituents by (ii) the percentage of ownership which is sold. If, in the Sale Transaction, no consideration is being paid in respect of the existing equity, AGC of the retained equity shall be determined by the good faith agreement of Houlihan Lokey and the Company as to the value of such retained equity implied by the Sale Transaction. In addition, if any of the liabilities of any entity comprising the Company are assumed, decreased, reinstated, satisfied or otherwise paid off in conjunction with a Sale Transaction (by any entity comprising the Company or any investor, in the form of "cure" payments or otherwise), or any of the assets of any entity comprising the Company are sold or otherwise transferred outside of the Company's ordinary course of business to another party prior to the closing of a Sale Transaction (including, without limitation, any dividends or distributions paid to security holders or amounts paid to repurchase any securities) or are retained by any entity comprising the Company after the closing of the Sale Transaction, the AGC will be increased to reflect the face value of any such liabilities and the fair market value of any such assets. For purposes of calculating the Sale Transaction Fee, the term "Contingent Payments" shall mean the consideration received or receivable by the Company, or any of its Constituents and/or any other parties in the form of deferred performance-based payments, "earn-outs", or other contingent payments based upon the future performance of any entity comprising the Company, or any of its businesses or assets.

7.      **Value of Consideration.** For the purpose of calculating the AGC received in a Sale Transaction, any securities, other than a promissory note, will be valued at the time of the announcement of the Sale Transaction, without regard to any restrictions on transferability, as follows: (i) if such securities are traded on a stock exchange, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the announcement of the Sale Transaction; (ii) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the announcement of the Sale Transaction; and (iii) if such securities have not been traded prior to the announcement of the Sale Transaction, Houlihan Lokey and the Company shall negotiate in good faith to agree on a fair valuation thereof, without regard to any restrictions on transferability, for the purposes of calculating the AGC. For any lease payments and other consideration that is not freely tradable or has no established public market, if the consideration utilized consists of property other than securities, then the value of such property shall be the fair market value thereof as determined in good faith by Houlihan Lokey and the Company. If any consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. The value of any purchase money or other promissory notes shall be deemed to be the face amount thereof. In the event the AGC includes any Contingent Payments, Houlihan Lokey's Sale Transaction Fee shall be calculated based on the value of such Contingent Payments as of closing, as mutually agreed upon by the Company and Houlihan Lokey acting in good faith. If the Company and Houlihan Lokey cannot reach such an agreement, an additional Sale Transaction Fee shall be paid to Houlihan Lokey from, and on account of, such Contingent Payments at the same time that each of such Contingent Payments are received regardless of any prior termination or expiration of this Agreement. Each such additional Sale Transaction Fee shall be calculated pursuant to the provisions of this Agreement based upon the amount of each such Contingent Payment.

8.      **Characterization of Multiple and/or Complex Transactions.** In the event the Company and Houlihan Lokey are unable to agree in good faith upon the classification of any single Transaction as a Restructuring Transaction, Sale Transaction or Financing Transaction, or if a single Transaction with only one third party shall consist of two, or more, of the foregoing types of Transactions, or elements thereof, Houlihan Lokey shall receive only one Transaction Fee in respect of such Transaction, which shall be equal to the greater of the Restructuring Transaction Fee, Sale Transaction Fee or Financing Transaction Fee, as applicable, as calculated in accordance with the terms of this Agreement. For the avoidance of doubt, if

two or more single Transactions occur simultaneously or at different times, whether or not they are connected with or related to one another, the Company shall pay Houlihan Lokey the Transaction Fee for each such Transaction in addition to, and not in lieu of, each other.

9. **Reasonableness of Fees.**  The parties acknowledge that this engagement will require a substantial professional commitment of time and effort by Houlihan Lokey.  Moreover, the amount of time and effort may vary substantially during different periods of the engagement. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Houlihan Lokey may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given:  (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and (iv) the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Group. The parties further agree and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by Houlihan Lokey hereunder, and may result in substantially more work and/or services being performed by Houlihan Lokey than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of Houlihan Lokey's services under this Agreement may also be substantially more beneficial than anticipated at this time. Accordingly, in the event of the occurrence of (a) and/or (b), in the prior sentence, Houlihan Lokey and the Company to this Agreement may, at the conclusion of the services rendered by Houlihan Lokey pursuant hereto, agree to a modification of the Transaction Fees described herein to more appropriately reflect the actual work performed, services rendered and/or any extraordinary results achieved by Houlihan Lokey pursuant to its engagement hereunder.

10. **Expenses.**  In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable and reasonably documented out-of-pocket expenses incurred from time to time.  Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses at the cost initially incurred by Houlihan Lokey, but without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and reprographics expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Company for the reasonable and documented fees and out-of-pocket expenses of a single, primary legal counsel for Houlihan Lokey incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby.

11. **Invoicing and Payment.**  All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey.  All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes").  All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

12. **Information.**  The Company will provide Houlihan Lokey with access to management and other representatives of the Company and other participants in any Transaction, as reasonably requested by Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. In addition, with respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the

Company or any other entity, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Company's or such other entity's management, as the case may be, as to the matters covered thereby. The Company will promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to, or discussed with, Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by, or discussed with, Houlihan Lokey. The Group understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Group acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Company or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Board of Directors of Fieldwood (solely in its capacity as such) and Weil in evaluating a Transaction, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey, with such consent not to be unreasonably withheld or delayed. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent, such consent not to be unreasonably withheld or delayed. Notwithstanding the two immediately preceding sentences, the Company or Weil may furnish the information described therein in response to any subpoena, court order, or similar legal demand, provided that prompt prior written notice thereof shall be given to Houlihan Lokey so that Houlihan Lokey may seek a protective order or other appropriate remedy, and, if Houlihan Lokey fails to obtain such remedy, the Company may disclose only that information which its counsel advises it is legally compelled to disclose. At the direction of Weil, communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Company in connection with this matter, will be considered attorney-client communications made in preparation for litigation relating to the restructuring of the Company and, accordingly, will be subject to the attorney-client privilege and attorney work-product doctrine.

13.     **Confidential Information.** Houlihan Lokey acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and the Transaction ("Confidential Information") has been or may be disclosed by the Company to Houlihan Lokey, any of its affiliates, or any of their respective agents, advisors, accountants, attorneys, employees, subcontractors, officers, directors and other representatives (collectively, "Representatives"). Houlihan Lokey agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other party (other than to any potential party to a Transaction under appropriate assurances of confidentiality, to those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of Houlihan Lokey or any of its Representatives, or that was available to Houlihan Lokey or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Houlihan Lokey or such Representatives; (b) obtained by Houlihan Lokey or any of its Representatives from a third party which, insofar as is known to Houlihan Lokey or such Representatives, is not subject to any prohibition against disclosure; (c) which was or is independently developed by Houlihan Lokey or any of its Representatives without violating any confidentiality obligations under this paragraph; or (d) which was or becomes generally available to the public through no fault of Houlihan Lokey. If Houlihan Lokey becomes required by legal process or requested by regulatory authority to disclose any Confidential Information, prompt notice thereof (to the extent legally permissible) shall be given to the Company (provided that no notification shall be required in respect of any disclosure to

regulatory authorities having jurisdiction over Houlihan Lokey), and Houlihan Lokey may disclose only that information which its counsel advises it is compelled to disclose. The obligations set forth in this paragraph shall remain in effect for a period of one year after the Effective Date.

14.     **Additional Provisions Regarding Financing Transaction.**  The Company authorizes Houlihan Lokey to provide an information memorandum (or similar document) (as such document may be amended or supplemented and including any information incorporated therein by reference, the "Information Memorandum") and other pertinent information to prospective investors and other purchasers and agrees not to transmit the Information Memorandum to prospective investors or other purchasers without Houlihan Lokey's prior approval.  The Company will be solely responsible for the contents of the Information Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any actual or prospective investor or other purchaser.  The Company represents and warrants that the Information Memorandum and such other communications approved by the Company will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading.  If an event occurs as a result of which the Information Memorandum (as then supplemented or amended) would include any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, the Company will promptly notify Houlihan Lokey of such event and Houlihan Lokey will suspend solicitations of prospective investors and other purchasers until such time as the Company prepares (and the Company agrees that, if the solicitation of prospective investors and other purchasers has been so suspended after the Company has accepted orders from prospective investors or other purchasers, the Company will promptly prepare) a supplement or amendment to the Information Memorandum which corrects such statement(s) or omission(s). The Company will (i) make available to each bona fide offeree of the Securities such information (in addition to that contained in the Information Memorandum) concerning the offering of the Securities, the Company and any other relevant matters, and (ii) provide each bona fide offeree the opportunity to ask questions of, and receive answers from, the officers and employees of the Company concerning the terms and conditions of the offering of the Securities.

The Group acknowledges that closing of a Financing Transaction is subject, among other factors, to acceptable documentation, market conditions, and satisfaction of the conditions set forth in one or more agreements to be entered into with any financier, lender, investor or other purchaser of Securities.  It is expressly understood that this engagement does not constitute any commitment, express or implied, on the part of Houlihan Lokey to (a) acquire, and does not ensure the successful placement of, any portion of the Securities, (b) secure any other financing on behalf of any person or entity, or (c) ensure that any agreements are executed by any financier, lender, investor or other prospective purchaser of Securities or guarantee the obligations of any such party. The Group further acknowledges and agrees that Houlihan Lokey is not acting as an underwriter of the Securities and shall have no responsibility or obligation to underwrite the Securities, and that Houlihan Lokey's undertaking is subject to our continued satisfaction with the results of our ongoing review of the Company's business and affairs.

In connection with all offers and sales of the Securities, the Company will cause to be addressed and delivered to Houlihan Lokey any opinions of counsel that have been provided to investors or other purchasers of the Securities.  The Company also will cause to be furnished to Houlihan Lokey at or after each closing of a sale of Securities copies (addressed to Houlihan Lokey, if requested and as appropriate) of such agreements, opinions, certificates and other documents (including, without limitation, accountant's letters) as Houlihan Lokey may reasonably request.  The Company hereby acknowledges and agrees that Houlihan Lokey shall be entitled to rely upon the representations and warranties made (whether pursuant to a subscription agreement or in any other format) to investors or other purchasers of Securities and the Company shall be deemed to have made such representations and warranties to and for the benefit of Houlihan Lokey.

It is understood that the offer and sale of the Securities in a Financing Transaction will be exempt from the registration requirements of the Securities Act of 1933, as amended (the "Act"), pursuant to Section 4(a)(2) thereof.  The Company has not taken, and will not take, any action, directly or indirectly,

so as to cause the transactions contemplated by this Agreement to fail to be entitled to exemption under Section 4(a)(2) of the Act. The Company will promptly from time to time take such reasonable action as necessary to qualify the Securities as a private placement under the securities laws of such States and foreign jurisdictions as any prospective investor or other purchaser may reasonably request and will comply with applicable laws. The Company shall cause the issuer of the Securities to offer and sell the Securities only to investors and other purchasers of the Securities that they reasonably believe to be "accredited investors", as defined in Rule 501 of Regulation D under the Act. The Company will cause the issuer of the Securities to file in a timely manner with the Securities and Exchange Commission (the "SEC") and/or each other regulatory authority any notices or other filings with respect to the Securities required by Rule 503 of Regulation D under the Act and/or other applicable law or regulation and will upon request furnish to Houlihan Lokey a signed copy of each such notice or filing promptly after its submission.

15.     **Limitations on Services as Advisor.**  Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing by Houlihan Lokey and the Company. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Group, and that Houlihan Lokey is not acting as an agent or fiduciary of Weil, the Company, its security holders or creditors or any other person or entity in connection with this engagement, and the Group agrees that it shall not make, and hereby waives, any claim based on an assertion of such an agency or fiduciary relationship. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion. Any duties of Houlihan Lokey arising by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder will be owed solely to the Group.

16.     **Bankruptcy Court Approval.**  In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.  The Company shall submit Houlihan Lokey's employment application as soon as reasonably practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its commercially reasonable efforts to cause such application to be considered on the most expedited basis.  The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion.  Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and reasonable out-of-pocket expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this

Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects.  If the order authorizing the employment of Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and documented out-of-pocket expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders.  Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash.  The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

17.     **Additional Services.**  To the extent Houlihan Lokey is requested by the Group to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by the Company and Houlihan Lokey in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

18.     **Required Services.**  If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related and documented out-of-pocket costs and expenses, including, among other things, the reasonable and documented legal fees and expenses of Houlihan Lokey's outside counsel in connection therewith.

19.     **Credit.**  After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith.  Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to the Company with respect to such Transaction.

20.     **Choice of Law; Jury Trial Waiver; Jurisdiction.**  **THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK.  THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.  EACH OF HOULIHAN LOKEY, WEIL AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS, AND AGREES TO VENUE IN SUCH COURTS; PROVIDED THAT SUCH**

**CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE EXCLUSIVELY TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURTS, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN ANY OF THE COURTS REFERRED TO ABOVE SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT 2000 WEST SAM HOUSTON PARKWAY SOUTH, SUITE 1200, HOUSTON TX 77042.**

21.     **Indemnification and Exculpation.**  As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees (i) to indemnify and hold harmless the HL Parties (as defined below), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, and (ii) to reimburse each HL Party for all reasonable and documented expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement. However, the Company shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability to the extent it both (a) arises out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of Weil or the Company) and (b) is finally judicially determined by a court of competent jurisdiction to have resulted from the willful misconduct, bad faith, gross negligence or actual fraud of such HL Party, and in such case, the Company shall be entitled to recover from the applicable HL Party any and all amounts paid by the Company or on its behalf pursuant to the reimbursement obligation set forth in this paragraph to the extent attributable to such loss, claim, damage or liability, subject to such HL Party's rights of contribution.

If for any reason the foregoing indemnification or reimbursement is unavailable to any HL Party or insufficient to fully indemnify any HL Party or hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions in the immediately preceding paragraph, then the Company shall contribute to the amount paid or payable by such HL Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement.  If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by such HL Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company (and its affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such HL Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the HL Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement. Relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders, creditors, and other affiliates,

as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement.

The Company may not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an HL Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the HL Parties reasonably satisfactory in form and substance to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other HL Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by Fieldwood which arise out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of Weil or the Company) and are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party, and no HL Party shall have any liability under this agreement whatsoever to Weil or any other person or entity other than Fieldwood.

The Company shall cause any new company or entity that may be formed by the Company, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions.  Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall, for the avoidance of doubt, apply to any activities or actions arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, prior to the Effective Date, and to any modifications of this Agreement, and (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any HL Party. The Company agrees that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

For purposes of this Agreement, the term "HL Parties" shall mean Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons.

22.   **Miscellaneous.**   This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed on behalf of the Company.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than Weil, Fieldwood, the HL Parties and each of their respective successors, heirs and

assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.  This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Company's equity interests as well as the Company's executive officers and other control persons, and (ii) certain identifying information necessary to verify the Company's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument.  By executing this Agreement, the Company confirms that all such information provided to Houlihan Lokey is accurate and complete.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Group represents and warrants that (a) it has all requisite power and authority to enter into this Agreement (and ,with respect to Fieldwood, on behalf of itself and each of its direct and indirect subsidiaries), and (b) this Agreement has been duly and validly authorized by all necessary action on the part of each party comprising the Group and has been duly executed and delivered by or on behalf of each such party and constitutes a legal, valid and binding agreement of each such party, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law.  The Group understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Group confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

The Group understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other

obligations) of, or investments in, the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about the Company, a Transaction or such other parties, or that otherwise may be of interest to the Group, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Group or to use such information on the Group's behalf.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Group agrees that Houlihan Lokey may, solely in connection with the performance of its services provided hereunder, share information obtained from the Company and other parties hereunder with other members of the Houlihan Lokey Group, and may perform the services contemplated hereby in conjunction with such other members, subject to the confidentiality provisions set forth in Section 13 above.

The Company acknowledges that Houlihan Lokey has in the past provided certain investment banking and financial advisory services to lenders to the Company and/or its predecessor entities (the "November 2017 Engagement"), and the Company (on its own behalf and, to the extent permitted by applicable law, on behalf of its security holders) knowingly and voluntarily (a) waives and releases, to the fullest extent permitted by law, any claims it may have against the Houlihan Lokey or its affiliates arising out of, resulting from or based upon such engagement, and (b) waives any actual or potential conflicts of interest which may result from Houlihan Lokey's multiple roles as an advisor pursuant to the November 2017 Engagement and an advisor to the Company pursuant to this Agreement.

   If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement along with a check (or wire transfer confirmation) for $350,000 on account of the first and second Monthly Fees.

   If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

        Very truly yours,

        HOULIHAN LOKEY CAPITAL, INC.

By: _____

        John-Paul Hanson
        Managing Director

Accepted and agreed to as of the Effective Date:

Weil, Gotshal & Manges LLP, solely in its capacity as counsel to, and with the consent and authorization of, Fieldwood Energy Inc.

By: _____

  Matthew S. Barr, Esq.

Acknowledged and agreed to as of the Effective Date:

Fieldwood Energy Inc. on its own behalf, and on behalf of its direct and indirect subsidiaries

By: _____

  G. M. McCarroll
  President and Chief Executive Officer

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement along with a check (or wire transfer confirmation) for $350,000 on account of the first and second Monthly Fees.

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

HOULIHAN LOKEY CAPITAL, INC.

By: _____
      John-Paul Hanson
      Managing Director

Accepted and agreed to as of the Effective Date:

Weil, Gotshal & Manges LLP, solely in its capacity as counsel to, and with the consent and authorization of, Fieldwood Energy Inc.



By: _____
      Matthew S. Barr, Esq.

Acknowledged and agreed to as of the Effective Date:

Fieldwood Energy Inc. on its own behalf, and on behalf of its direct and indirect subsidiaries

By: _____
      G. M. McCarroll
      President and Chief Executive Officer

the first and second Monthly Fees.

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

HOULIHAN LOKEY CAPITAL, INC.

By: _____
John-Paul Hanson
Managing Director

Accepted and agreed to as of the Effective Date:

Weil, Gotshal & Manges LLP, solely in its capacity as counsel to, and with the consent and authorization of, Fieldwood Energy Inc.

By: _____
Matthew S. Barr, Esq.

Acknowledged and agreed to as of the Effective Date:

Fieldwood Energy Inc. on its own behalf, and on behalf of its direct and indirect subsidiaries

By: _____
G. M. McCarroll
President and Chief Executive Officer

Exhibit A

Exceptions to Sale Transaction

**Affected joint venture entities:** :

Paloma Pipeline Co.

Whitecap Pipeline Co. L.C.C.

Ship Shoal Pipeline Company

SP 49 Pipeline LLC

White Shoal Pipeline Corp.

Whitecap Pipeline Company LLC

Fieldwood Coöperatief U.A.

Mexico Management LLC

All JV entities comprising the Mexico project, including, without limitation:

    Fieldwood Mexico B.V.

    Fieldwood Energy de Mexico S. de R.L. de C.V.

    Fieldwood Energy E&P Mexico S. de R.L. de C.V.

    Fieldwood Energy Services de Mexico S. de R.L. de C.V.

**In process sale transactions:**

South Timbailier 311 Field