# EXHIBIT "A"

| Ledger | Unit | NOV Entity | Customer | Inv. No. | Inv. Date | Inv. Amt. | Balance | Property |
|---|---|---|---|---|---|---|---|---|
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5375195-002 | 10/30/2020 | $ 7,084.90 | $ 7,084.90 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5374945-130 | 10/30/2020 | $ 2,520.00 | $ 2,520.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5371445-130 | 10/27/2020 | $ 5,908.00 | $ 5,908.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5370826-130 | 10/26/2020 | $ 4,144.00 | $ 4,144.00 | Vermilion (VR) Block 371 (OCS-G 09524) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5361364-130 | 10/12/2020 | $ 8,092.00 | $ 8,092.00 | Viosca Knoll (VK) Block 826 (OCS-G 06888) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5363301-002 | 10/6/2020 | $ 583.07 | $ 583.07 | N/A |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5354530-002 | 9/29/2020 | $ 6,920.25 | $ 6,920.25 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5354076-130 | 9/29/2020 | $ 4,144.00 | $ 4,144.00 | Vermilion (VR) Block 371 (OCS-G 09524) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5353739-130 | 9/29/2020 | $ 2,520.00 | $ 2,520.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5353045-130 | 9/28/2020 | $ 5,908.00 | $ 5,908.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 432 | CAPS | XL Systems, L.P. | Fieldwood Energy LLC | 432200462-432 | 9/15/2020 | $ 800.00 | $ 800.00 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5343194-130 | 9/10/2020 | $ 8,092.00 | $ 8,092.00 | Viosca Knoll (VK) Block 826 (OCS-G 06888) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5343450-002 | 9/10/2020 | $ 583.07 | $ 56.43 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5339902-130 | 9/2/2020 | $ 5,908.00 | $ 5,908.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5339903-130 | 9/2/2020 | $ 2,520.00 | $ 2,520.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5338603-130 | 8/31/2020 | $ 2,072.00 | $ 2,072.00 | Vermilion (VR) Block 371 (OCS-G 09524) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5337473-002 | 8/28/2020 | $ 6,920.25 | $ 669.70 | N/A |
| 432 | CAPS | XL Systems, L.P. | Fieldwood Energy LLC | 432200435-432 | 8/27/2020 | $ 800.00 | $ 800.00 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5328220-130 | 8/13/2020 | $ 1,050.00 | $ 1,050.00 | Eugene Island (EI) Block 307 (OCS-G 02110) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5325255-130 | 8/7/2020 | $ 4,009.00 | $ 4,009.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5324048-130 | 8/6/2020 | $ 540.00 | $ 540.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5323864-130 | 8/6/2020 | $ 6,069.00 | $ 6,069.00 | Viosca Knoll (VK) Block 826 (OCS-G 06888) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5323637-130 | 8/5/2020 | $ 1,406.00 | $ 1,406.00 | Vermilion (VR) Block 371 (OCS-G 09524) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5323635-130 | 8/5/2020 | $ 7,776.00 | $ 7,776.00 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5323626-002 | 8/5/2020 | $ 583.07 | $ 583.07 | N/A |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5322020-002 | 8/3/2020 | $ 17,733.06 | $ 17,733.06 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5320026-002 | 7/30/2020 | $ 6,938.31 | $ 6,938.31 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5317746-130 | 7/28/2020 | $ 2,520.00 | $ 2,520.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5315058-130 | 7/23/2020 | $ 8,092.00 | $ 8,092.00 | Viosca Knoll (VK) Block 826 (OCS-G 06888) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5313653-002 | 7/21/2020 | $ 16,957.92 | $ 16,957.92 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5313603-130 | 7/21/2020 | $ 3,982.18 | $ 3,982.18 | South Pass (SP) Block 62 (OCS-G 01294) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5314002-002 | 7/21/2020 | $ 583.07 | $ 583.07 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5310930-130 | 7/15/2020 | $ 5,908.00 | $ 5,908.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5310879-130 | 7/15/2020 | $ 2,072.00 | $ 2,072.00 | Vermilion (VR) Block 371 (OCS-G 09524) |
| 432 | CAPS | XL Systems, L.P. | Fieldwood Energy LLC | 432200364-432 | 7/11/2020 | $ 800.00 | $ 800.00 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5306819-130 | 7/7/2020 | $ 9,216.61 | $ 9,216.61 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5304324-130 | 6/30/2020 | $ 2,520.00 | $ 2,520.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5302800-002 | 6/29/2020 | $ 183.75 | $ 183.75 | Green Canyon (GC) Block 200 (OCS-G 12209) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5302447-130 | 6/29/2020 | $ 21,600.00 | $ 21,600.00 | Mississippi Canyon (MC) Block 948 (OCS-G 28030) |

| Ledger | Unit | NOV Entity | Customer | Inv. No. | Inv. Date | Inv. Amt. | Balance | Property |
|---|---|---|---|---|---|---|---|---|
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 53013164-002 | 6/26/2020 | $ 6,928.75 | $ 6,928.75 | N/A |
| 432 | CAPS | XL Systems, L.P. | Fieldwood Energy LLC | 432200328-432 | 6/26/2020 | $ 800.00 | $ 800.00 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5299099-130 | 6/23/2020 | $ 2,334.79 | $ 2,334.79 | South Marsh Island (SM) Block 106 (OCS-G 02279) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5298027-130 | 6/22/2020 | $ 754.00 | $ 754.00 | High Island A (HIA) Block 376 (OCS-G 02754) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5298026-130 | 6/22/2020 | $ 2,996.21 | $ 2,996.21 | High Island A (HIA) Block 376 (OCS-G 02754) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5298353-130 | 6/22/2020 | $ 4,032.00 | $ 4,032.00 | South Pass (SP) Block 62 (OCS-G 01294) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5297385-130 | 6/19/2020 | $ 4,228.00 | $ 4,228.00 | South Marsh Island (SM) Block 106 (OCS-G 02279) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5296130-130 | 6/17/2020 | $ 5,908.00 | $ 5,908.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5295840-130 | 6/17/2020 | $ 2,072.00 | $ 2,072.00 | Vermilion (VR) Block 371 (OCS-G 09524) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5295862-130 | 6/17/2020 | $ 8,092.00 | $ 8,092.00 | Viosca Knoll (VK) Block 826 (OCS-G 06888) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5294749-002 | 6/15/2020 | $ 183.75 | $ 183.75 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5292248-002 | 6/10/2020 | $ 183.75 | $ 183.75 | Mississippi Canyon (MC) Block 519 (OCS-G 27278) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5292047-002 | 6/10/2020 | $ 2,004.37 | $ 2,004.37 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5291656-002 | 6/9/2020 | $ 183.75 | $ 183.75 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5291439-002 | 6/9/2020 | $ 183.75 | $ 183.75 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5291269-130 | 6/9/2020 | $ 8,064.00 | $ 8,064.00 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5290393-130 | 6/8/2020 | $ 3,669.52 | $ 3,669.52 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5289070-130 | 6/4/2020 | $ 2,520.00 | $ 2,520.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5287945-130 | 6/2/2020 | $ 2,120.00 | $ 2,120.00 | Vermilion (VR) Block 371 (OCS-G 09524) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5287299-130 | 5/31/2020 | $ 27,900.00 | $ 27,900.00 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 5286681-002 | 5/29/2020 | $ 211,930.31 | $ 211,930.31 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5286329-130 | 5/29/2020 | $ 2,768.00 | $ 2,768.00 | High Island A (HIA) Block 376 (OCS-G 02754) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5282350-130 | 5/26/2020 | $ 4,104.00 | $ 4,104.00 | South Pass (SP) Block 62 (OCS-G 01294) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5281653-130 | 5/26/2020 | $ 4,319.00 | $ 4,319.00 | South Marsh Island (SM) Block 106 (OCS-G 02279) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5279803-130 | 5/21/2020 | $ 6,140.00 | $ 6,140.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 432 | CAPS | XL Systems, L.P. | Fieldwood Energy LLC | 432200273-432 | 5/21/2020 | $ 800.00 | $ 800.00 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5278192-130 | 5/19/2020 | $ 8,352.00 | $ 8,352.00 | Viosca Knoll (VK) Block 826 (OCS-G 06888) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5273105-130 | 5/12/2020 | $ 8,496.00 | $ 8,496.00 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5273142-130 | 5/12/2020 | $ 39,075.00 | $ 39,075.00 | Green Canyon (GC) Block 40 (OCS-G 34536) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5270685-130 | 5/7/2020 | $ 3,714.38 | $ 3,714.38 | Ship Shoal (SS) Block 259 (OCS-G 05044) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5269217-130 | 5/5/2020 | $ 2,632.00 | $ 2,632.00 | Vermilion (VR) Block 313 (OCS-G 01172) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5268250-130 | 5/4/2020 | $ 2,968.00 | $ 2,968.00 | High Island A (HIA) Block 376 (OCS-G 02754) |

| Ledger | Unit | NOV Entity | Customer | Inv. No. | Inv. Date | Inv. Amt. | Balance | Property |
|---|---|---|---|---|---|---|---|---|
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5266422-130 | 4/30/2020 | $ 1,382.55 | $ 1,382.55 | Mississippi Canyon (MC) Block 519 (OCS-G 27278) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5266221-130 | 4/30/2020 | $ 4,592.00 | $ 4,592.00 | South Marsh Island (SM) Block 106 (OCS-G 02279) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5264574-130 | 4/29/2020 | $ 4,536.00 | $ 4,536.00 | South Pass (SP) Block 62 (OCS-G 01294) |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 5262358-130 | 4/27/2020 | $ 6,720.00 | $ 6,720.00 | Main Pass (MP) Block 289 (OCG-G 01666) |
| 432 | CAPS | XL Systems, L.P. | Fieldwood Energy LLC | 432200207-432 | 4/22/2020 | $ 800.00 | $ 800.00 | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 288987RU-130 | 12/23/2019 | $ (84,616.00) | $ (84,616.00) | N/A |
| 869 | CAPS | NOV Process & Flow Technologies US, Inc. | Fieldwood Energy LLC | 303207-191211P-869 | 12/11/2019 | $ (135,277.94) | $ (135,277.94) | N/A |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 242936RU-002 | 4/9/2019 | $ (58,610.78) | $ (3,469.48) | N/A |
| 940 | CAPS | NOV Process & Flow Technologies US, Inc. | Fieldwood Energy LLC | 4142613-940 | 9/29/2017 | $ 2,580.00 | $ 2,580.00 | N/A |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 33074RM-002 | 8/16/2015 | $ (8,671.33) | $ (6,973.15) | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 199721RU-130 | 7/20/2015 | $ (363.24) | $ (363.24) | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 199695RU-130 | 4/21/2015 | $ (54.88) | $ (54.88) | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 199693RU-130 | 4/7/2015 | $ (54.88) | $ (54.88) | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 199678RU-130 | 3/16/2015 | $ (164.64) | $ (164.64) | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 199658RU-130 | 1/23/2015 | $ (2,066.09) | $ (2,066.09) | N/A |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 33073RM-002 | 11/16/2014 | $ (250.22) | $ (250.22) | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 199643RU-130 | 11/12/2014 | $ (84.18) | $ (84.18) | N/A |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 33072RM-002 | 7/22/2014 | $ (2,617.44) | $ (2,617.44) | N/A |
| 130 | WBT | National Oilwell Varco, L.P. d/b/a NOV Well Site Services | Fieldwood Energy LLC | 199611RU-130 | 7/22/2014 | $ (38.40) | $ (38.40) | N/A |
| 002 | WBT | National Oilwell Varco, L.P. d/b/a NOV Tuboscope | Fieldwood Energy LLC | 33071RM-002 | 5/3/2014 | $ (23,066.29) | $ (23,066.29) | N/A |

# Tuboscope | NOV Wellbore Technologies

ORIGINAL

**Invoice: 5286681**

National Oilwell Varco, LP dba Tuboscope
LEDGER NO. 002

1844 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone:
Fax:

| AFE NUMBER | | SALES ORDER # | | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|---|
| FW192007 | | 4298471      SR | | 05/29/20 | 2000713 | 1 of 7 |
| CUSTOMER NUMBER | | CUSTOMER REF | | FREIGHT TERMS | | |
| 945319 | | 17713 | | Carriage and Insurance Paid To | | |
| FINAL DESTINATION | | GOLD WO NUMBER | | KEY REF   PA # | | |
| UNITED STATES | | 7788474 | | | | |
| TERMS:   Net 30 Days | | | | REF 2   ROUTING #580002 | | |
| WELL DESCRIPTION: GC 40 #2 S/T OCSG 34536 (KATMA | | | | REF 3   ROWAN RESOLUTE | | |

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

## Invoice

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: TUBING NEW BARE 4 1/2 18.90# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS TRACKING #: 7788474 TOTAL LENGTH: 5975.15 TOTAL JOINTS: 143 | | | | |
| 1.000 | 002A-TB UT FULL BODY INSP | 143.00 | JT | 49.6800 | 7,104.24 |
| 1.001 | 201B-TB SEA THREADED WET MAG INSP | 143.00 | JT | | |
| 1.002 | 610A-TB HAZARDOUS WASTE DISPOSAL CHARG | 143.00 | JT | | |
| 1.003 | 98AA-TB CLEANING SOLVENT | 143.00 | JT | | |
| 1.004 | 300P-TB FULL LENGTH DRIFT INSP | 143.00 | JT | | |
| 1.005 | 536C-TB BOLSTER | 15.00 | EA | 257.2500 | 3,858.75 |
| 1.006 | 99ZC-TB THREAD COMP REDOPE KENDEX | 143.00 | JT | | |

CONTINUED NEXT PAGE

**Tuboscope** **NOV** Wellbore Technologies

Invoice: 5286681

ORIGINAL

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 1.007 | 380G-TB<br>INSPECTION RECORD HEAT NUMBERS | 143.00 | JT | 5.2500 | 750.75 |
| 1.008 | 536D-TB<br>UNBOLSTER | 16.00 | EA | 257.2500 | 4,116.00 |
| 1.009 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM UNBOLSTER | 1,129.30 | CW | .4000 | 451.72 |
| 1.010 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM BOLSTER | 1,129.30 | CW | .4000 | 451.72 |
| 1.011 | 500G-TB<br>BUCK ON<br>OES TO BUCK ON COUPLINGS 30 JTS 2 BOLSTERS | 30.00 | EA | | |
| 1.012 | 720G-TB<br>LASER TALLY<br>SUPERIOR TO LASER TALLY 30 JOINTS | 30.00 | JT | | |
| 1.013 | 536C-TB<br>BOLSTER<br>BOLSTER 3 BOLSTERS FOR SHIPMENT (30 JTS) | 3.00 | EA | 257.2500 | 771.75 |
| 1.014 | 536D-TB<br>UNBOLSTER<br>UNBOLSTERED 3 BOLSTERS TO BUCK ON COUPLINGS | 3.00 | EA | 257.2500 | 771.75 |
| 1.015 | 730P-TB<br>INNER YARD MOVEMENT<br>TO/FROM UNBOLSTER FOR BUCK ON (30 JTS) | 236.94 | CW | .4000 | 94.78 |
| 1.016 | 730P-TB<br>INNER YARD MOVEMENT<br>TO/FROM BOLSTER FOR BUCK ON (30 JTS) | 236.94 | CW | .4000 | 94.78 |
| | SUBTOTAL | | | | 18,466.24 |
| | ITEM# 02: TUBING NEW BARE 5 1/2 26.00# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS<br>TRACKING #: 7788474 TOTAL LENGTH: 39097.3 TOTAL JOINTS: 924 | | | | |
| 2.000 | 002A-TB<br>UT FULL BODY INSP | 924.00 | JT | 49.6800 | 45,904.32 |
| 2.001 | 201B-TB<br>SEA THREADED WET MAG INSP | 924.00 | JT | | |

CONTINUED NEXT PAGE

**Tuboscope** **TIOY** Wellbore
Technologies Invoice: 5286681

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 2.002 | **610A-TB**<br>HAZARDOUS WASTE DISPOSAL CHARG | 924.00 | JT | | |
| 2.003 | **98AA-TB**<br>CLEANING SOLVENT | 924.00 | JT | | |
| 2.004 | **300P-TB**<br>FULL LENGTH DRIFT INSP | 924.00 | JT | | |
| 2.005 | **536C-TB**<br>BOLSTER | 109.00 | EA | 257.2500 | 28,040.25 |
| 2.006 | **99ZC-TB**<br>THREAD COMP<br>REDOPE KENDEX | 924.00 | JT | | |
| 2.007 | **380G-TB**<br>INSPECTION RECORD HEAT NUMBERS<br>384 JTS ONLY | 384.00 | JT | 5.2500 | 2,016.00 |
| 2.008 | **536D-TB**<br>UNBOLSTER | 120.00 | EA | 257.2500 | 30,870.00 |
| 2.009 | **730P-TB**<br>INNER YARD MOVEMENT<br>TO AND FROM BOLSTER | 10,165.30 | CW | .4000 | 4,066.12 |
| 2.010 | **730P-TB**<br>INNER YARD MOVEMENT<br>TO AND FROM UNBOLSTER | 10,165.30 | CW | .4000 | 4,066.12 |
| 2.011 | **500G-TB**<br>BUCK ON<br>OES TO BUCK ON COUPLINGS 48 JTS. 4 BOLSTERS | 924.00 | EA | | |
| 2.012 | **720G-TB**<br>LASER TALLY<br>SUPERIOR TO LASER TALLY 48 JOINTS | 924.00 | JT | | |
| 2.013 | **536C-TB**<br>BOLSTER<br>BOLSTER 4 BOLSTERS FOR SHIPMENT (48 JTS) | 4.00 | EA | 257.2500 | 1,029.00 |
| 2.014 | **536D-TB**<br>UNBOLSTER<br>UNBOLSTERED 4 BOLSTERS TO BUCK ON COUPLINGS | 4.00 | EA | 257.2500 | 1,029.00 |
| 2.015 | **730P-TB**<br>INNER YARD MOVEMENT<br>TO/FROM UNBOLSTER FOR BUCK ON (48 JTS) | 522.12 | CW | .4000 | 208.85 |

CONTINUED NEXT PAGE

# Tuboscope

**Wellbore Technologies**

Invoice: 5286681

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 2.016 | 730P-TB<br>INNER YARD MOVEMENT<br>TO/FROM BOLSTER FOR BUCK ON (48 JTS) | 522.12 | CW | .4000 | 208.85 |
| | SUBTOTAL | | | | 117,438.51 |
| | ITEM# 03: TUBING NEW BARE 5 1/2 29.70# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS TO BE INSPECTED<br>TRACKING #: 7788474 TOTAL LENGTH: 11762.5 TOTAL JOINTS: 279 | | | | |
| 3.000 | 002A-TB<br>UT FULL BODY INSP | 279.00 | JT | 49.6800 | 13,860.72 |
| 3.001 | 201B-TB<br>SEA THREADED WET MAG INSP | 279.00 | JT | | |
| 3.002 | 610A-TB<br>HAZARDOUS WASTE DISPOSAL CHARG | 279.00 | JT | | |
| 3.003 | 98AA-TB<br>CLEANING SOLVENT | 279.00 | JT | | |
| 3.004 | 300P-TB<br>FULL LENGTH DRIFT INSP | 279.00 | JT | | |
| 3.005 | 536C-TB<br>BOLSTER | 31.00 | EA | 257.2500 | 7,974.75 |
| 3.006 | 99ZC-TB<br>THREAD COMP<br>REDOPE KENDEX | 279.00 | JT | | |
| 3.007 | 536D-TB<br>UNBOLSTER | 36.00 | EA | 257.2500 | 9,261.00 |
| 3.008 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM BOLSTER | 3,493.46 | CW | .4000 | 1,397.38 |
| 3.009 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM UNBOLSTER | 3,493.46 | CW | .4000 | 1,397.38 |
| 3.010 | 725E-TB<br>STORAGE / COVERED INVENTORY | 279.00 | EA | | |

CONTINUED NEXT PAGE

# Tuboscope

**Wellbore Technologies**

ORIGINAL

Invoice: 5286681

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3.011 | **500G-TB**<br>BUCK ON<br>OES TO BUCK ON COUPLINGS 36 JTS  3 BOLSTERS | 279.00 | EA | | |
| 3.012 | **720G-TB**<br>LASER TALLY<br>SUPERIOR TO LASER TALLY 36 JTS  3 BOLSTERS | 279.00 | JT | | |
| 3.013 | **536C-TB**<br>BOLSTER<br>BOLSTERED 3 BOLSTERS FOR SHIPMENT (36 JTS) | 3.00 | EA | 257.2500 | 771.75 |
| 3.014 | **536D-TB**<br>UNBOLSTER<br>PIPE MOVED FROM INSPECTION BUILDING TO WORK RACK | 279.00 | EA | | |
| | | | | SUBTOTAL | 34,662.98 |
| | ITEM# 04: COUPLINGS NEW BARE 4 1/2 HP2-13CR110 JFE LION CR JFE<br>TRACKING #: 7788474  TOTAL JOINTS: 143<br>18.90# | | | | |
| 4.000 | **234G-TB**<br>WET MAG PARTICLE INSPECTION | 143.00 | JT | 30.7300 | 4,394.39 |
| 4.001 | **99ZC-TB**<br>THREAD COMP<br>REDOPE KENDEX | 143.00 | JT | | |
| 4.002 | **98AA-TB**<br>CLEANING SOLVENT | 143.00 | JT | | |
| 4.003 | **610A-TB**<br>HAZARDOUS WASTE DISPOSAL CHARG | 143.00 | JT | | |
| 4.004 | **801A-TB**<br>COUPLING<br>CRATE / UNCRATE | 143.00 | EA | | |
| 4.005 | **725E-TB**<br>STORAGE / COVERED INVENTORY | 143.00 | EA | | |
| | | | | SUBTOTAL | 4,394.39 |

CONTINUED NEXT PAGE

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 05: COUPLINGS NEW BARE 5 1/2 HP2-13CR110 JFE LION CR JFE TRACKING #: 7788474  TOTAL JOINTS: 924 | | | | |
| 5.000 | 234G-TB WET MAG PARTICLE INSPECTION | 924.00 | JT | 30.7300 | 28,394.52 |
| 5.001 | 99ZC-TB THREAD COMP REDOPE KENDEX | 924.00 | JT | | |
| 5.002 | 98AA-TB CLEANING SOLVENT | 924.00 | JT | | |
| 5.003 | 610A-TB HAZARDOUS WASTE DISPOSAL CHARG | 924.00 | JT | | |
| 5.004 | 801A-TB COUPLING CRATE / UNCRATE | 924.00 | EA | | |
| 5.005 | 725E-TB STORAGE / COVERED INVENTORY | 924.00 | EA | | |
| | | | | SUBTOTAL | 28,394.52 |
| | ITEM# 06: COUPLINGS NEW BARE 5 1/2 HP2-13CR110 JFE LION CR JFE TO BE INSPECTED TRACKING #: 7788474  TOTAL JOINTS: 279 | | | | |
| 6.000 | 234G-TB WET MAG PARTICLE INSPECTION | 279.00 | JT | 30.7300 | 8,573.67 |
| 6.001 | 99ZC-TB THREAD COMP | 279.00 | JT | | |
| 6.002 | 98AA-TB CLEANING SOLVENT | 279.00 | JT | | |
| 6.003 | 610A-TB HAZARDOUS WASTE DISPOSAL CHARG | 279.00 | JT | | |
| 6.004 | 801A-TB COUPLING | 279.00 | EA | | |

CONTINUED NEXT PAGE

# Tuboscope | NOV

**Wellbore Technologies**

Invoice: 5286681

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|----------|---------------------------|----------|-----|------------|----------------|
| 6.005 | 725E-TB<br>STORAGE / COVERED INVENTORY | 279.00 | EA | | |

| | SUBTOTAL | 8,573.67 |
|---|---|---|

DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.

This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative.

| | Subtotal | 211,930.31 |
|---|---|---|

To share your experience with us **please visit us** at http://connect.nov.com/Tuboscope-Feedback

| | Currency: **USD**   Total | **211,930.31** |
|---|---|---|

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | **Wire Instructions (Wires Only)** |
|---|---|
| National Oilwell Varco. LP dba<br>Tuboscope<br>PO Box 201177<br>Dallas TX 75320-1177 | Wells Fargo Bank<br>Acct: 4496880188<br>ABA: 121000248<br>SWIFT: WFBIUS6S |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

# WORK ORDER #  7788474

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | | | |
|---|---|---|---|
| | | DATE | 5/29/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW192007 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | 10993/PA # |
| ORDER # | | REFERENCE 2 | ROUTING #580002 |
| TRACKING # | 7788474 | REFERENCE 3 | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --

| | | | | | |
|---|---|---|---|---|---|
| ITEM # 1 | NEW TUBING BARE 4 1/2" 18.90# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS | | | | |
| QTY | 143 | INSPECTION COMPLETED DATE | 5/29/2020 | | |
| HEAT # | | RELEASE # | | SUPPLIER | PETRO AMIGOS SUPPLY INC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 002A-I | UT FULL BODY INSP | 201B-I | SEA THREADED WET MAG INSP |
| 300P-I | FULL LENGTH DRIFT INSP | 380G-I | INSPECTION RECORD HEAT NUMBERS |
| 500G-I | BUCK ON<br>OES TO BUCK ON COUPLINGS 30 JTS 2 BOLSTERS | 536C-I | BOLSTER |
| | | 610A-I | HAZARDOUS WASTE DISPOSAL CHARG |
| 536D-I | UNBOLSTER | 725E-I | STORAGE / COVERED INVENTORY |
| 720G-I | LASER TALLY<br>SUPERIOR TO LASER TALLY 30 JOINTS | 730P-I | INNER YARD MOVEMENT<br>TO AND FROM BOLSTER |
| 730P-I | INNER YARD MOVEMENT<br>TO AND FROM UNBOLSTER | 99ZC-I | THREAD COMP<br>REDOPE KENDEX |
| 98AA-I | CLEANING SOLVENT | | |

## SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | PER CUSTOMER SPECS | 141 | 5,892.15 |
| MATERIAL PROCESSED AND REJECTED | RED | PER CUSTOMER SPECS | 1 | 41.50 |
| MATERIAL PROCESSED AND FOUND TO BE | NONE | PER CUSTOMER SPECS | 1 | 41.50 |
| | | TOTAL MATERIAL | 143 | 5,975.15 |

**COMMENTS**  SERVICED BY DONALD MELANCON III
4/30/2020

#140 ID REFLECTOR 100/100 36.3' ME HT# 2-36155

---

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

Printed on Friday  May 29  2020 1:50:51 PM

Page 1 of 6

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

# WORK ORDER #  7788474

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | | |
|---|---|---|
| | **DATE** | 5/29/2020 |
| | **ACCOUNT #** | TUB-28843-B000-SH |
| | **WELL CHARGE** | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| **ATTN** | ACCOUNTS PAYABLE | |
| **ORDERED BY** | ACCOUNTS PAYABLE | **AFE #** | FW192007 |
| **ORDER #** | | **PO/KEY REFERENCE** | 10993/PA # |
| **TRACKING #** | 7788474 | **REFERENCE 2** | ROUTING #580002 |
| | | **REFERENCE 3** | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --

| ITEM # 2 | NEW TUBING BARE 5 1/2" 26.00# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS | | |
|---|---|---|---|
| QTY | 924 | **INSPECTION COMPLETED DATE** | 5/29/2020 |
| HEAT # | | RELEASE # | | **SUPPLIER** | PETRO AMIGOS SUPPLY INC |
| LOT # | | RELEASE CO | | **LOCATION** | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 002A-I | UT FULL BODY INSP | 201B-I | SEA THREADED WET MAG INSP |
| 300P-I | FULL LENGTH DRIFT INSP | 380G-I | INSPECTION RECORD HEAT NUMBERS |
| 500G-I | BUCK ON | | 384 JTS ONLY |
| | OES TO BUCK ON COUPLINGS 48 JTS. 4 BOLSTERS | 536C-I | BOLSTER |
| 536D-I | UNBOLSTER | 610A-I | HAZARDOUS WASTE DISPOSAL CHARG |
| 720G-I | LASER TALLY | 725E-I | STORAGE / COVERED INVENTORY |
| | SUPERIOR TO LASER TALLY 48 JOINTS | 730P-I | INNER YARD MOVEMENT |
| 730P-I | INNER YARD MOVEMENT | | TO AND FROM UNBOLSTER |
| | TO AND FROM BOLSTER | 99ZC-I | THREAD COMP |
| 98AA-I | CLEANING SOLVENT | | REDOPE KENDEX |

## SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | PER CUSTOMER SPECS | 920 | 38,927.92 |
| MATERIAL PROCESSED AND REJECTED | RED | PER CUSTOMER SPECS | 3 | 127.50 |
| MATERIAL PROCESSED AND FOUND TO BE | NONE | OVERAGE | 1 | 42.20 |
| | | **TOTAL MATERIAL** | **924** | **39,097.62** |

**COMMENTS**  SERVICED BY MIKE SIMMONS
5/15/2020

BROCK VERDIN TPI - TQSI

# 202 ID REFLECTOR HT# 1-76068
# 530 ID REFLECTOR HT# 1-76114
# 756 ID REFLECTOR HT# 2-36154

---

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7788474**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | |
|---|---|
| DATE | 5/29/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #2 S/T OCSG 34536 (KATMAI) |

| ATTN | ACCOUNTS PAYABLE |
|---|---|
| ORDERED BY | ACCOUNTS PAYABLE |
| ORDER # | |
| TRACKING # | 7788474 |

| | |
|---|---|
| AFE # | FW192007 |
| PO/KEY REFERENCE | 10993/PA # |
| REFERENCE 2 | ROUTING #580002 |
| REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- **SUMMARY REPORT** -- -- -- -- -- -- -- -- -- --

**ITEM # 3**   NEW TUBING BARE 5 1/2" 29.70# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS TO BE INSPECTED

| QTY | 279 | INSPECTION COMPLETED DATE | 5/29/2020 | | |
|---|---|---|---|---|---|
| HEAT # | | RELEASE # | | SUPPLIER | PETRO AMIGOS SUPPLY INC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 002A-I | UT FULL BODY INSP | 201B-I | SEA THREADED WET MAG INSP |
| 300P-I | FULL LENGTH DRIFT INSP | 500G-I | BUCK ON |
| 536C-I | BOLSTER | | OES TO BUCK ON COUPLINGS 36 JTS. 3 BOLSTERS |
| 610A-I | HAZARDOUS WASTE DISPOSAL CHARG | 536D-I | UNBOLSTER |
| 725E-I | STORAGE / COVERED INVENTORY | 720G-I | LASER TALLY |
| 730P-I | INNER YARD MOVEMENT | | SUPERIOR TO LASER TALLY 36 JTS. 3 BOLSTERS |
| | TO AND FROM UNBOLSTER | 730P-I | INNER YARD MOVEMENT |
| 99ZC-I | THREAD COMP | | TO AND FROM BOLSTER |
| | REDOPE KENDEX | 98AA-I | CLEANING SOLVENT |

## SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | PER CUSTOMER SPECS | 278 | 11,732.39 |
| MATERIAL PROCESSED AND FOUND TO BE | NONE | PER CUSTOMER SPECS | 1 | 41.80 |
| | | TOTAL MATERIAL | 279 | 11,774.19 |

COMMENTS  SERVICED BY JERRY CLULEE
5/15/2020

278 - PRIME
1 - PRIME TEST JT - NOTCHES NOT REMOVED

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7788474**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | |
|---|---|
| **DATE** | 5/29/2020 |
| **ACCOUNT #** | TUB-28843-B000-SH |
| **WELL CHARGE** | GC 40 #2 S/T OCSG 34536 (KATMAI) |

| | | | | |
|---|---|---|---|---|
| **ATTN** | ACCOUNTS PAYABLE | **AFE #** | FW192007 |
| **ORDERED BY** | ACCOUNTS PAYABLE | **PO/KEY REFERENCE** | 10993/PA # |
| **ORDER #** | | **REFERENCE 2** | ROUTING #580002 |
| **TRACKING #** | 7788474 | **REFERENCE 3** | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- **SUMMARY REPORT** -- -- -- -- -- -- -- -- -- --

| **ITEM # 4** | NEW COUPLINGS BARE 4 1/2"  HP2-13CR110  JFE LION CR  JFE | | | |
|---|---|---|---|---|
| **QTY** | 143 | **INSPECTION COMPLETED DATE** | 5/29/2020 | |
| **HEAT #** | | **RELEASE #** | | **SUPPLIER**  PETRO AMIGOS SUPPLY INC |
| **LOT #** | | **RELEASE CO**  18.90# | | **LOCATION** |

### SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 610A-I | HAZARDOUS WASTE DISPOSAL CHARG | 234G-I | WET MAG PARTICLE INSPECTION |
| 730P-I | INNER YARD MOVEMENT | 725E-I | STORAGE / COVERED INVENTORY |
| 98AA-I | CLEANING SOLVENT | 801A-C | COUPLING CRATE / UNCRATE |
| | | 99ZC-I | THREAD COMP REDOPE KENDEX |

### SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | STENCIL | PER CUSTOMER SPECS | 58 | 0.00 |
| MATERIAL PROCESSED AND FOUND TO BE | STENCIL* | PER CUSTOMER SPECS | 85 | 0.00 |
| | | **TOTAL MATERIAL** | 143 | 0.00 |

**COMMENTS**  SERVICED BY JERRY FRUGE
4/30/20

TQSI - BROCK VERDIN

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7788474**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | | | |
|---|---|---|---|
| | | **DATE** | 5/29/2020 |
| | | **ACCOUNT #** | TUB-28843-B000-SH |
| | | **WELL CHARGE** | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| **ATTN** | ACCOUNTS PAYABLE | **AFE #** | FW192007 |
| **ORDERED BY** | ACCOUNTS PAYABLE | **PO/KEY REFERENCE** | 10993/PA # |
| **ORDER #** | | **REFERENCE 2** | ROUTING #580002 |
| **TRACKING #** | 7788474 | **REFERENCE 3** | ROWAN RESOLUTE |

**-- -- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- -- --**

| | | | | | |
|---|---|---|---|---|---|
| **ITEM # 5** | NEW COUPLINGS BARE 5 1/2" HP2-13CR110 JFE LION CR JFE | | | | |
| **QTY** | 924 | **INSPECTION COMPLETED DATE** | 5/29/2020 | | |
| **HEAT #** | | **RELEASE #** | | **SUPPLIER** | PETRO AMIGOS SUPPLY INC |
| **LOT #** | | **RELEASE CO** | | **LOCATION** | |

**SERVICES**

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 234G-I | WET MAG PARTICLE INSPECTION | 610A-I | HAZARDOUS WASTE DISPOSAL CHARG |
| 725E-I | STORAGE / COVERED INVENTORY | 730P-I | INNER YARD MOVEMENT |
| 801A-C | COUPLING<br>CRATE / UNCRATE | 98AA-I | CLEANING SOLVENT |
| 99ZC-I | THREAD COMP<br>REDOPE KENDEX | | |

**SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.**

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | NONE | PER CUSTOMER SPECS | 250 | 0.00 |
| MATERIAL PROCESSED AND FOUND TO BE | STENCIL | PER CUSTOMER SPECS | 581 | 0.00 |
| MATERIAL PROCESSED AND FOUND TO BE | STENCIL* | PER CUSTOMER SPECS | 93 | 0.00 |
| | | **TOTAL MATERIAL** | 924 | 0.00 |

**COMMENTS**  SERVICED BY ROBERT HEMPHILL
5/29/2020

TQSI - TPI BROCK VERDIN

---

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7788474**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | | | |
|---|---|---|---|
| | | DATE | 5/29/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW192007 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | 10993/PA # |
| ORDER # | | REFERENCE 2 | ROUTING #580002 |
| TRACKING # | 7788474 | REFERENCE 3 | ROWAN RESOLUTE |

**-- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --**

| | | | | | |
|---|---|---|---|---|---|
| ITEM # 6 | NEW COUPLINGS BARE 5 1/2"  HP2-13CR110  JFE LION CR  JFE  TO BE INSPECTED | | | | |
| QTY | 279 | INSPECTION COMPLETED DATE | 5/29/2020 | | |
| HEAT # | | RELEASE # | | SUPPLIER | PETRO AMIGOS SUPPLY INC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 610A-I | HAZARDOUS WASTE DISPOSAL CHARG | 234G-I | WET MAG PARTICLE INSPECTION |
| 730P-I | INNER YARD MOVEMENT | 725E-I | STORAGE / COVERED INVENTORY |
| 98AA-I | CLEANING SOLVENT | 801A-C | COUPLING |
| | | 99ZC-I | THREAD COMP |

### SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | STENCIL | PER CUSTOMER SPECS | 212 | 0.00 |
| MATERIAL PROCESSED AND FOUND TO BE | STENCIL* | PER CUSTOMER SPECS | 67 | 0.00 |
| | | TOTAL MATERIAL | 279 | 0.00 |

**COMMENTS** SERVICED BY JERRY FRUGE
5/19/20

BROCK VERDIN - TQSI

---

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

**NOV TUBOSCOPE**
**AMELIA FACILITY**
**P.O. BOX 1349**
**AMELIA, LA  70340**
**UNITED STATES**

**WORK ORDER #  7788474**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | | | |
|---|---|---|---|
| | | **DATE** | 5/29/2020 |
| | | **ACCOUNT #** | TUB-28843-B000-SH |
| | | **WELL CHARGE** | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| **ATTN** | ACCOUNTS PAYABLE | **AFE #** | FW192007 |
| **ORDERED BY** | ACCOUNTS PAYABLE | **PO/KEY REFERENCE** | 10993/PA # |
| **ORDER #** | | **REFERENCE 2** | ROUTING #580002 |
| **TRACKING #** | 7788474 | **REFERENCE 3** | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- -- **DEFECT REPORT** -- -- -- -- -- -- -- -- -- -- --

| | | | | |
|---|---|---|---|---|
| **ITEM # 1** | NEW TUBING BARE 4 1/2" 18.90# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS | | | |
| **QTY** | 143 | **INSPECTION COMPLETED DATE** | 5/29/2020 | |
| **HEAT #** | | **RELEASE #** | | **SUPPLIED BY** PETRO AMIGOS SUPPLY INC |
| **LOT #** | | **RELEASE CO** | | **LOCATION** |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 002A-I | UT FULL BODY INSP | 201B-I | SEA THREADED WET MAG INSP |
| 300P-I | FULL LENGTH DRIFT INSP | 380G-I | INSPECTION RECORD HEAT NUMBERS |
| 500G-I | BUCK ON | 536C-I | BOLSTER |
| | OES TO BUCK ON COUPLINGS 30 JTS 2 BOLSTERS | 610A-I | HAZARDOUS WASTE DISPOSAL CHARG |
| 536D-I | UNBOLSTER | 725E-I | STORAGE / COVERED INVENTORY |
| 720G-I | LASER TALLY | 730P-I | INNER YARD MOVEMENT |
| | SUPERIOR TO LASER TALLY 30 JOINTS | | TO AND FROM BOLSTER |
| 730P-I | INNER YARD MOVEMENT | 99ZC-I | THREAD COMP |
| | TO AND FROM UNBOLSTER | | REDOPE KENDEX |
| 98AA-I | CLEANING SOLVENT | | |

### SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 1 | RED | 41.50 | ID REFLECTOR (#140 ID REFLECTOR 100/100 36.3' ME HT# 2-36155) | NO |

**TOTAL REJECTS ON THIS PAGE**

1     JTS     41.50

Repairable Joints: 0 jts -> Approximately     0.00

---

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER # 7788474**

| | | | |
|---|---|---|---|
| FIELDWOOD ENERGY LLC | | DATE | 5/29/2020 |
| 2000 W SAM HOUSTON PKWY S STE 1200 | | ACCOUNT # | TUB-28843-B000-SH |
| HOUSTON, TX 77042-3623 US | | WELL CHARGE | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| | | AFE # | FW192007 |
| ATTN | ACCOUNTS PAYABLE | PO/KEY REFERENCE | 10993/PA # |
| ORDERED BY | ACCOUNTS PAYABLE | REFERENCE 2 | ROUTING #580002 |
| ORDER # | | REFERENCE 3 | ROWAN RESOLUTE |
| TRACKING # | 7788474 | | |

## -- -- -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --

| | | | |
|---|---|---|---|
| ITEM # 2 | NEW TUBING BARE 5 1/2" 26.00# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS | | |
| QTY | 924 | INSPECTION COMPLETED DATE | 5/29/2020 |
| HEAT # | | RELEASE # | |
| LOT # | | RELEASE CO | SUPPLIED BY  PETRO AMIGOS SUPPLY INC |
| | | | LOCATION |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 002A-I | UT FULL BODY INSP | 201B-I | SEA THREADED WET MAG INSP |
| 300P-I | FULL LENGTH DRIFT INSP | 380G-I | INSPECTION RECORD HEAT NUMBERS 384 JTS ONLY |
| 500G-I | BUCK ON OES TO BUCK ON COUPLINGS 48 JTS. 4 BOLSTERS | 536C-I | BOLSTER |
| 536D-I | UNBOLSTER | 610A-I | HAZARDOUS WASTE DISPOSAL CHARG |
| 720G-I | LASER TALLY SUPERIOR TO LASER TALLY 48 JOINTS | 725E-I | STORAGE / COVERED INVENTORY |
| 730P-I | INNER YARD MOVEMENT TO AND FROM BOLSTER | 730P-I | INNER YARD MOVEMENT TO AND FROM UNBOLSTER |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE KENDEX |

## SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 3 | RED | 127.50 | ID REFLECTOR (ID REFLECTORS - SEE FIELD REJECT REPORT) | NO |

**TOTAL REJECTS ON THIS PAGE**

3      JTS      127.50

Repairable Joints: 0 jts -> Approximately      0.00

---

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER # 7788474**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| DATE | 5/29/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #2 S/T OCSG 34536 (KATMAI) |

| | |
|---|---|
| ATTN | ACCOUNTS PAYABLE |
| ORDERED BY | ACCOUNTS PAYABLE |
| ORDER # | |
| TRACKING # | 7788474 |

| | |
|---|---|
| AFE # | FW192007 |
| PO/KEY REFERENCE | 10993/PA # |
| REFERENCE 2 | ROUTING #580002 |
| REFERENCE 3 | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 3    NEW TUBING BARE 5 1/2" 29.70# HP2-13CR110 JFE LION CR PIN X PIN R-3 JFE SEAMLESS TO BE INSPECTED

| | | | | | |
|---|---|---|---|---|---|
| QTY | 279 | INSPECTION COMPLETED DATE | 5/29/2020 | | |
| HEAT # | | RELEASE # | | SUPPLIED BY | PETRO AMIGOS SUPPLY INC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 002A-I | UT FULL BODY INSP | 201B-I | SEA THREADED WET MAG INSP |
| 300P-I | FULL LENGTH DRIFT INSP | 500G-I | BUCK ON<br>OES TO BUCK ON COUPLINGS 36 JTS. 3 BOLSTERS |
| 536C-I | BOLSTER | 536D-I | UNBOLSTER |
| 610A-I | HAZARDOUS WASTE DISPOSAL CHARG | 720G-I | LASER TALLY<br>SUPERIOR TO LASER TALLY 36 JTS. 3 BOLSTERS |
| 725E-I | STORAGE / COVERED INVENTORY | | |
| 730P-I | INNER YARD MOVEMENT<br>TO AND FROM UNBOLSTER | 730P-I | INNER YARD MOVEMENT<br>TO AND FROM BOLSTER |
| 99ZC-I | THREAD COMP<br>REDOPE KENDEX | 98AA-I | CLEANING SOLVENT |

## SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

---

**NOV TUBOSCOPE**
**AMELIA FACILITY**
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7788474**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | |
|---|---|
| DATE | 5/29/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #2 S/T OCSG 34536 (KATMAI) |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW192007 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | 10993/PA # |
| ORDER # | | REFERENCE 2 | ROUTING #580002 |
| TRACKING # | 7788474 | REFERENCE 3 | ROWAN RESOLUTE |

**-- -- -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --**

| | | | | |
|---|---|---|---|---|
| ITEM # 4 | NEW COUPLINGS BARE 4 1/2" HP2-13CR110 JFE LION CR JFE | | | |
| QTY | 143 | INSPECTION COMPLETED DATE | 5/29/2020 | |
| HEAT # | | RELEASE # | | SUPPLIED BY PETRO AMIGOS SUPPLY INC |
| LOT # | | RELEASE CO | 18.90# | LOCATION |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 610A-I | HAZARDOUS WASTE DISPOSAL CHARG | 234G-I | WET MAG PARTICLE INSPECTION |
| 730P-I | INNER YARD MOVEMENT | 725E-I | STORAGE / COVERED INVENTORY |
| 98AA-I | CLEANING SOLVENT | 801A-C | COUPLING CRATE / UNCRATE |
| | | 99ZC-I | THREAD COMP REDOPE KENDEX |

**SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.**

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7788474**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | | |
|---|---|---|---|
| | | DATE | 5/29/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW192007 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | 10993/PA # |
| ORDER # | | REFERENCE 2 | ROUTING #580002 |
| TRACKING # | 7788474 | REFERENCE 3 | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --

| | | | |
|---|---|---|---|
| ITEM # 5 | NEW COUPLINGS BARE 5 1/2" HP2-13CR110 JFE LION CR JFE | | |
| QTY | 924 | INSPECTION COMPLETED DATE | 5/29/2020 |
| HEAT # | | RELEASE # | SUPPLIED BY  PETRO AMIGOS SUPPLY INC |
| LOT # | | RELEASE CO | LOCATION |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 234G-I | WET MAG PARTICLE INSPECTION | 610A-I | HAZARDOUS WASTE DISPOSAL CHARG |
| 725E-I | STORAGE / COVERED INVENTORY | 730P-I | INNER YARD MOVEMENT |
| 801A-C | COUPLING CRATE / UNCRATE | 98AA-I | CLEANING SOLVENT |
| 99ZC-I | THREAD COMP REDOPE KENDEX | | |

## SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

**NOV TUBOSCOPE**
**AMELIA FACILITY**
**P.O. BOX 1349**
**AMELIA, LA  70340**
**UNITED STATES**

**WORK ORDER #  7788474**

| | | | | |
|---|---|---|---|---|
| **FIELDWOOD ENERGY LLC** | | | **DATE** | 5/29/2020 |
| **2000 W SAM HOUSTON PKWY S STE 1200** | | | **ACCOUNT #** | TUB-28843-B000-SH |
| **HOUSTON, TX 77042-3623 US** | | | **WELL CHARGE** | GC 40 #2 S/T OCSG 34536 (KATMAI) |
| | | | **AFE #** | FW192007 |
| **ATTN** | ACCOUNTS PAYABLE | | **PO/KEY REFERENCE** | 10993/PA # |
| **ORDERED BY** | ACCOUNTS PAYABLE | | **REFERENCE 2** | ROUTING #580002 |
| **ORDER #** | | | **REFERENCE 3** | ROWAN RESOLUTE |
| **TRACKING #** | 7788474 | | | |

## -- -- -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --

| | | | |
|---|---|---|---|
| **ITEM # 6** | NEW COUPLINGS BARE 5 1/2"  HP2-13CR110  JFE LION CR  JFE  TO BE INSPECTED | | |
| **QTY** | 279 | **INSPECTION COMPLETED DATE** | 5/29/2020 |
| **HEAT #** | **RELEASE #** | | **SUPPLIED BY**  PETRO AMIGOS SUPPLY INC |
| **LOT #** | **RELEASE CO** | | **LOCATION** |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 610A-I | HAZARDOUS WASTE DISPOSAL CHARG | 234G-I | WET MAG PARTICLE INSPECTION |
| 730P-I | INNER YARD MOVEMENT | 725E-I | STORAGE / COVERED INVENTORY |
| 98AA-I | CLEANING SOLVENT | 801A-C | COUPLING |
| | | 99ZC-I | THREAD COMP |

## SPECIFICATIONS USED  - FWE QS-3 AND TS-1 SPECS.

---

# Tuboscope | NOV Wellbore Technologies

## YARD SERVICE REPORT
### DEPARTMENT 706

| | | | |
|---|---|---|---|
| WORK ORDER NUMBER: | **7788474-01** | DATE: | **May 1, 2020** |

Customer Name: **FIELDWOOD ENERGY LLC**

Well Identification: **G.C.40 #2 S/T \ OCSG 34536 KATMAI**

| | | | |
|---|---|---|---|
| AFE # | **FW192007** | Purchase Order No: | **10993** |
| 3rd Party Monitor: | **TQSI** | Owner Of Material | **K-PACK** |

| Work Order | O.D. | WT/FT. | GRADE | SMLS/ERW | RANGE | END FINISH | MFG | THREAD COMP | FOOTAGE | JTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 7788474 | 4 1/2" | 18.90 | HP2-13CR110 | SMLS | 3 | JFELION CR PXP | JFE | KENDEX | | 143 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | 0.00 | |

| | | | | |
|---|---|---|---|---|
| XXXXXXXX | Bolster | FOUR Frames | | Unbolster |
| | Bundle | | | Unbundle |
| | Presling | | | Unsling |
| | Palletize | | | Install Bumper Rings |

| | | | OTHER NOTES | THREAD COMP | | |
|---|---|---|---|---|---|---|
| | Bolsters | @ | Jts Per Bolster | | = | 0 |
| | Bolsters | @ | Jts Per Bolster | | = | 0 |
| | Bolsters | @ | Jts Per Bolster | | = | 0 |
| | Bolsters | @ | Jts Per Bolster | | = | 0 |
| | Bundle | @ | Jts Per Bundle | | = | 0 |
| | Bundle | @ | Jts Per Bundle | | = | 0 |
| | Bundle | @ | Jts Per Bundle | | = | 0 |
| | Bundle | @ | Jts Per Bundle | | = | 0 |

| | | | |
|---|---|---|---|
| 0 | Total Bolsters | Total Lengths | 0 |
| 0 | Total Bundles | Total Lengths | 0 |
| | Bumper Rings / Jt. | Total Lengths | |
| | Total Pallets | Hrs. Slinging/Unslinging | |

| MOVED FROM | MOVED TO | | TOTAL |
|---|---|---|---|
| 00-C6 | R020 / SH0 | Lengths | 0 |
| | | Footage | 0.00 |
| | | Total bolsters/bundles | 0 |

Operator's Signature: **DARREN**

| | | | |
|---|---|---|---|
| Supervisor: | **KAREEM HARDING** | Date: | **May 1, 2020** |
| | MAR | | AMELIA - 0031  Rev. 2 |

# Tuboscope | NOV Wellbore Technologies

## YARD SERVICE REPORT
### DEPARTMENT 706

| | | |
|---|---|---|
| WORK ORDER NUMBER: | **7788474-03** | DATE: **May 13, 2020** |
| | | 5/14/2020 |

Customer Name: **FIELDWOOD ENERGY LLC**

Well Identification: **G.C.40 #2 S/T \ OCSG 34536 KATMAI**

| AFE # | **FW192007** | Purchase Order No: | **10993** |
|---|---|---|---|
| 3rd Party Monitor: | **TQSI** | Owner Of Material | **K-PACK** |

| Work Order | O.D. | WT/FT. | GRADE | SMLS/ERW | RANGE | END FINISH | MFG | THREAD COMP | FOOTAGE | JTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 7788474-03 | 5 1/2" | 29.70 | HP2-13CR110 | SMLS | 3 | JFELION CR PXP | JFE | KENDEX | PENDING | 242 |
| 7788474-03 | 5 1/2" | 29.70 | HP2-13CR110 | SMLS | 3 | JFELION CR T&C | JFE | CLEAR GLIDE | 1,500.50 | 36 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | 278 |

| | | | | |
|---|---|---|---|---|
| XXXXXXXX | Bolster | FOUR | Frames | Unbolster |
| | Bundle | | | Unbundle |
| | Presling | | | Unsling |
| | Palletize | | | Install Bumper Rings |

| | | | | OTHER NOTES | THREAD COMP | | |
|---|---|---|---|---|---|---|---|
| 30 | Bolsters | @ | 8 | Jts Per Bolster | KENDEX PXP | = | 240 |
| 1 | Bolsters | @ | 2 | Jts Per Bolster | KENDEX PXP | = | 2 |
| 3 | Bolsters | @ | 12 | Jts Per Bolster | T&C CLEAR GLIDE | = | 36 |
| | Bolsters | @ | | Jts Per Bolster | | = | 0 |
| | Bundle | @ | | Jts Per Bundle | | = | 0 |
| | Bundle | @ | | Jts Per Bundle | | = | 0 |
| | Bundle | @ | | Jts Per Bundle | | = | 0 |
| | Bundle | @ | | Jts Per Bundle | | = | 0 |

| | | | | |
|---|---|---|---|---|
| 34 | Total Bolsters | | Total Lengths | 278 |
| 0 | Total Bundles | | Total Lengths | 0 |
| | Bumper Rings / Jt. | | Total Lengths | |
| | Total Pallets | | Hrs. Slinging/Unslinging | |

| MOVED FROM | MOVED TO | | TOTAL |
|---|---|---|---|
| AI1 | AI4 / I3-188 | Lengths | 278 |
| | | Footage | |
| | | Total bolsters/bundles | 34 |

**Operator's Signature:** CLARENCE KEYS

| | | | |
|---|---|---|---|
| Supervisor: | KAREEM HARDING | Date: | May 15, 2020 |
| | MAR | | AMELIA - 0031  Rev. 2 |

# Tuboscope NOV
### Wellbore Technologies

## YARD SERVICE REPORT
### DEPARTMENT 706

| | |
|---|---|
| WORK ORDER NUMBER: | **7788474-01** |
| | DATE: **April 29, 2020** |

Customer Name: **FIELDWOOD ENERGY LLC**

Well Identification: **G.C.40 #2 S/T \ OCSG 34536 KATMAI**

AFE # **FW192007**       Purchase Order No: **10993**

3rd Party Monitor: **TQSI**       Owner Of Material: **K-PACK**

| Work Order | O.D. | WT/FT. | GRADE | SMLS/ERW | RANGE | END FINISH | MFG | THREAD COMP | FOOTAGE | JTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 7788474-01 | 4 1/2" | 18.90 | HP2-13CR110 | SMLS | 3 | JFELION CR PXP | JFE | CR | | 142 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | 0.00 | 142 |

| | | | | |
|---|---|---|---|---|
| | Bolster | FOUR Frames | XXXXX | Unbolster |
| | Bundle | | | Unbundle |
| | Presling | | | Unsling |
| | Palletize | | | Install Bumper Rings |

| Bolsters | @ | Jts Per Bolster | OTHER NOTES | THREAD COMP | = | |
|---|---|---|---|---|---|---|
| 8 | @ | 10 | Jts Per Bolster | | | = | 80 |
| 4 | @ | 8 | Jts Per Bolster | | | = | 32 |
| 2 | @ | 7 | Jts Per Bolster | | | = | 14 |
| 1 | @ | 12 | Jts Per Bolster | | | = | 12 |
| 1 | @ | 4 | Jts Per Bolster | | | = | 4 |
| | @ | | Jts Per Bundle | | | = | 0 |
| | @ | | Jts Per Bundle | | | = | 0 |
| | @ | | Jts Per Bundle | | | = | 0 |

| | | | |
|---|---|---|---|
| 16 | Total Bolsters | Total Lengths | 142 |
| | Total Bundles | Total Lengths | |
| | Bumper Rings / Jt. | Total Lengths | |
| | Total Pallets | Hrs. Slinging/Unslinging | |

NOTE: 1 jt. Was loose totaling 143 jts.

| MOVED FROM | MOVED TO | | TOTAL |
|---|---|---|---|
| MIT03,SMALTR,LONGTR, WKRK02 | 00-C3 | Lengths | 142 |
| | | Footage | 0.00 |
| | | Total bolsters/bundles | 16 |

Operator's Signature: **DARREN**

Supervisor: **KAREEM HARDING**       Date: **April 29, 2020**
MAR

AMELIA - 0031  Rev. 2

# Tuboscope | NOV Wellbore Technologies

## YARD SERVICE REPORT
### DEPARTMENT 706

WORK ORDER NUMBER: **7788474-02**          DATE: **May 1, 2020**

Customer Name:          **FIELDWOOD ENERGY LLC**

Well Identification:          **G.C.40 #2 S/T \ OCSG 34536 KATMAI**

AFE #     **FW192007**          Purchase Order No:          **10993**

3rd Party Monitor:     **TQSI**          Owner Of Material          **K-PACK**

| Work Order | O.D. | WT./FT. | GRADE | SMLS/ERW | RANGE | END FINISH | MFG | THREAD COMP | FOOTAGE | JTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 7788474-02 | 5 1/2" | 26.00 | HP2-13CR110 | SMLS | 3 | JFELION CR PXP | JFE | | | 923 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | 0.00 | |

| | Bolster | FOUR | Frames | XXXXX | Unbolster |
|---|---|---|---|---|---|
| | Bundle | | | | Unbundle |
| | Presling | | | | Unsling |
| | Palletize | | | | Install Bumper Rings |

|  | Bolsters | @ | 8 | Jts Per Bolster | OTHER NOTES | THREAD COMP | = | 0 |
|---|---|---|---|---|---|---|---|---|
|  | Bolsters | @ | 7 | Jts Per Bolster | | | = | 0 |
|  | Bolsters | @ | 1 | Jts Per Bolster | | | = | 0 |
|  | Bolsters | @ | | Jts Per Bolster | | | = | 0 |
|  | Bundle | @ | | Jts Per Bundle | | | = | 0 |
|  | Bundle | @ | | Jts Per Bundle | | | = | 0 |
|  | Bundle | @ | | Jts Per Bundle | | | = | 0 |
|  | Bundle | @ | | Jts Per Bundle | | | = | 0 |

| 0 | Total Bolsters | Total Lengths | 0 |
|---|---|---|---|
| 0 | Total Bundles | Total Lengths | 0 |
| | Bumper Rings / Jt. | Total Lengths | |
| | Total Pallets | Hrs. Slinging/Unslinging | |

| MOVED FROM | MOVED TO | | TOTAL |
|---|---|---|---|
| B024,B022,B011,MIT04,C055 | 00-C3 | Lengths | 0 |
| | | Footage | 0.00 |
| | | Total bolsters/bundles | 0 |

Operator's Signature:          DARREN,

Supervisor:     **KAREEM HARDING**          Date:
          MAR

AMELIA - 0031 Rev. 2

# Tuboscope | NOV Wellbore Technologies

## YARD SERVICE REPORT
### DEPARTMENT 706

WORK ORDER NUMBER: **7788474-03**          DATE: **May 12, 2020**

Customer Name: **FIELDWOOD ENERGY LLC**

Well Identification: **G.C.40 #2 S/T \ OCSG 34536 KATMAI**

AFE # **FW192007**          Purchase Order No: **10993**

3rd Party Monitor: **TQSI**          Owner Of Material **FWE / K-PACK**

| Work Order | O.D. | WT/FT. | GRADE | SMLS/ERW | RANGE | END FINISH | MFG | THREAD COMP | FOOTAGE | JTS |
|---|---|---|---|---|---|---|---|---|---|---|
| 7788474-03 | 5 1/2" | 29.70 | HP2-13CR110 | SMLS | 3 | JFELION CR PXP | JFE | | | 274 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | 0.00 | |

| | Bolster | **FOUR** Frames | **XXXXX** Unbolster |
|---|---|---|---|
| | Bundle | | Unbundle |
| | Presling | | Unsling |
| | Palletize | | Install Bumper Rings |

| | Bolsters | @ | | Jts Per Bolster | OTHER NOTES | THREAD COMP | = | |
|---|---|---|---|---|---|---|---|---|
| 30 | Bolsters | @ | 8 | Jts Per Bolster | | | = | 240 |
| 3 | Bolsters | @ | 5 | Jts Per Bolster | | | = | 15 |
| 2 | Bolsters | @ | 6 | Jts Per Bolster | | | = | 12 |
| 1 | Bolsters | @ | 7 | Jts Per Bolster | | | = | 7 |
| | Bundle | @ | | Jts Per Bundle | | | = | 0 |
| | Bundle | @ | | Jts Per Bundle | | | = | 0 |
| | Bundle | @ | | Jts Per Bundle | | | = | 0 |
| | Bundle | @ | | Jts Per Bundle | | | = | 0 |

| 36 | Total Bolsters | Total Lengths | 274 |
|---|---|---|---|
| 0 | Total Bundles | Total Lengths | 0 |
| | Bumper Rings / Jt. | Total Lengths | |
| | Total Pallets | Hrs. Slinging/Unslinging | |

| MOVED FROM | MOVED TO | | TOTAL | |
|---|---|---|---|---|
| C055,B023,B010 | AI1 | Lengths | 0 | |
| | | Footage | 0.00 | |
| | | Total bolsters/bundles | 36 | |

Operator's Signature:          **CLARENCE KEYS**

Supervisor: **KAREEM HARDING**          Date: **May 13, 2020**
**MAR**

AMELIA - 0031  Rev. 2

# Tuboscope | ROV Wellbore Technologies

**National Oilwell Varco, LP dba Tuboscope**

**LEDGER NO. 002**

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (986) 631-9505

**Invoice: 5291439**

| AFE NUMBER | SALES ORDER # | | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|
| #FW202002 | 4304013 | SR | 06/09/20 | 2000706 | 1 of 2 |

| CUSTOMER NUMBER | CUSTOMER REF | FREIGHT TERMS |
|---|---|---|
| 945319 | PO# 18200 | Carriage and Insurance Paid To |

| FINAL DESTINATION | GOLD WO NUMBER | KEY REF   REL: 1567943 |
|---|---|---|
| UNITED STATES | 7801303 | |

| TERMS:   Net 30 Days | REF 2   ROUTING# 580002 |
|---|---|

| WELL DESCRIPTION: GREEN CANYON 40 #1 OSCG 34536 | REF 3 |
|---|---|

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

## Invoice

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: PUP JOINTS NEW BARE 5 1/2 26.00# VM-110 13CRSS VAM TOP HC T&C 8' SEAMLESS KORRGUARD STORAGE TRACKING #: 7426924 TOTAL LENGTH: 16 TOTAL JOINTS: 2 | | | | |
| 1.000 | 705G-TB LOAD OUT (MINIMUM CHARGE) | 1.00 | EA | 183.7500 | 183.75 |
| | | | SUBTOTAL | | 183.75 |

CONTINUED NEXT PAGE

# Tuboscope | NOV Wellbore Technologies

**ORIGINAL**

Invoice: 5291439

Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative. | | | | |

| | | | |
|---|---|---|---|
| | | Subtotal | 183.75 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD** Total | | **183.75** |

## REMITTANCE INSTRUCTIONS

| Bank Deposit / Lockbox Payment | Wire Instructions (Wires Only) |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**CONSOLIDATED SHIPPING REPORT**

| MATERIAL OWNER | FIELDWOOD ENERGY LLC | RELEASE # | 1567943 |
|---|---|---|---|
| CARRIER | HALLIBURTON TRUCK | RELEASED BY | CHRIS JOUBAN / CB |
| DESTINATION | HALLIBURTON | WITH | FIELDWOOD ENERGY LLC |
| | NEW IBERIA LA | RELEASE # 1 | EMAIL |
| | | RELEASE # 2 | KERBY DUFRENE |
| | | REFERENCE # | |

| WELL | MC 948 #2 | SUPPLIER | N/A-FIELDWOOD ENERGY LLC | REPORT # | 5360390 |
|---|---|---|---|---|---|
| AFE # | 203302 | PO/REF KEY | | WORKORDER | 7426924-07 |
| TRACKING # | 7426924 | | | | |

| RACK | SH05-C | | NEW PUP JOINTS KORRGUARD STORAGE  BARE 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C 8'  SEAMLESS WHITE  SVCD 00503 | | |
|---|---|---|---|---|---|
| 5/20/2020 9:24 AM | | LOG  6835951 -1 ( 6835951) | DRIVER  ACME TRUCKLINE, DERRICK | TRUCK #  29690 | 2 PCS | 16.00 |

|  |  |  | TOTAL FOR  7426924-07 | 2 PCS | 16.00 |
|---|---|---|---|---|---|

COMMENTS   TAGGED: FIELDWOOD
WELL: GREEN CANYON 40 #1 OCSG 34536 KATAMI #1
AFE #FW202002
ROUTING #580002

***RLEEASE 2-8' PUPS***

***STRIP / STRAP / COLLARS TO CAB***

NOTE: HALLIBURTON  REP WILL PICKUP!

|  | CONSOLIDATED  TOTAL | 2 PCS | 16.00 |
|---|---|---|---|

DRIVERS AND EMPLOYEES SIGNATURES ARE ON  FILE

# Tuboscope | NOV Wellbore Technologies

**Invoice: 5291656**

National Oilwell Varco, LP dba Tuboscope

LEDGER NO. 002

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax:

## Invoice

| AFE NUMBER | SALES ORDER # | | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|
| FW202002 | 4304152 | SR | 06/09/20 | 2000706 | 1 of 2 |
| **CUSTOMER NUMBER**<br>945319 | **CUSTOMER REF**<br>PO# 18200 | | **FREIGHT TERMS**<br>Carriage and Insurance Paid To | | |
| **FINAL DESTINATION**<br>UNITED STATES | **GOLD WO NUMBER**<br>7801324 | | **KEY REF** REL: 1568892 | | |
| **TERMS:** Net 30 Days | | | **REF 2** | | |
| **WELL DESCRIPTION:** GC 40 #1 KATMAI | | | **REF 3** | | |

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:** FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:** TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: TUBING NEW BARE 4 1/2 17.00# VM-110 13CRSS VAM TOP HC T&C R-3 VALLOUREC SEAMLESS<br>TRACKING #: 7358841 TOTAL LENGTH: 344 TOTAL JOINTS: 8 | | | | |
| 1.000 | 705G-TB<br>LOAD OUT<br>(MINIMUM CHARGE) | 1.00 | EA | 183.7500 | 183.75 |
| | | | **SUBTOTAL** | | 183.75 |

CONTINUED NEXT PAGE

# Tuboscope | NOV Wellbore Technologies

**Invoice: 5291656**

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | **DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.** | | | | |
| | **This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative.** | | | | |

| | | |
|---|---|---|
| | Subtotal | 183.75 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD**   Total | **183.75** |

## REMITTANCE INSTRUCTIONS

| Bank Deposit / Lockbox Payment | Wire Instructions (Wires Only) |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

**NOV TUBOSCOPE**
**AMELIA FACILITY**
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# CONSOLIDATED SHIPPING REPORT

| MATERIAL OWNER | FIELDWOOD ENERGY LLC | | RELEASE # | 1568892 |
|---|---|---|---|---|
| CARRIER | | | RELEASED BY | KERBY DUFRENE |
| DESTINATION | HALLLIBURTON | | WITH | FIELDWOOD ENERGY LLC |
| | NEW IBERIA LA | | RELEASE # 1 | EMAIL |
| | | | RELEASE # 2 | |
| | | | REFERENCE # | |

| WELL | GC 40 #1 KATMAI | SUPPLIER | N/A-FIELDWOOD ENERGY LLC | REPORT # | 5362601 |
|---|---|---|---|---|---|
| AFE # | FW202002 | PO/REF KEY | 580002 | WORKORDER | 7796246-01 |
| TRACKING # | 7358841 | | | | |

RACK   RIG PREP-C        NEW TUBING BOLSTERED BARE 4 1/2" 17.00# VM-110 13CRSS VAM TOP HC T&C R-3 VALLOUREC SEAMLESS WHITE   SVCD 00007

| 5/22/2020 8:14 AM | LOG | 6836613 -1 ( 6836613) | DRIVER ACME TRUCKLINE, CHUCK | TRUCK # 36419 | 8 PCS | 344.00 |
|---|---|---|---|---|---|---|
| | | | | TOTAL FOR 7796246-01 | 8 PCS | 344.00 |

COMMENTS   TAGGED: FIELDWOOD
WELL: GC 40 #1 KATMAI
AFE: FW202002

SHIPPING 8 JTS

| | | CONSOLIDATED TOTAL | 8 PCS | 344.00 |
|---|---|---|---|---|

DRIVERS AND EMPLOYEES SIGNATURES ARE ON FILE

# Tuboscope | NOV Wellbore Technologies

**Invoice: 5292047**

National Oilwell Varco, LP dba Tuboscope

**LEDGER NO. 002**

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (986) 631-9505

| AFE NUMBER<br>FW202002 | SALES ORDER #<br>4304627     SR | DATE<br>06/10/20 | BRANCH PLANT<br>2000706 | PAGE<br>1 of 2 |
|---|---|---|---|---|
| CUSTOMER NUMBER<br>945319 | CUSTOMER REF<br>PO# 18200 | FREIGHT TERMS<br>Carriage and Insurance Paid To | | |
| FINAL DESTINATION<br>UNITED STATES | GOLD WO NUMBER<br>7801333 | KEY REF   REL: 1569402 | | |
| TERMS:   Net 30 Days | | REF 2  PETRO AMIGOS REF: PA152-35575 | | |
| WELL DESCRIPTION: GC 40 #1 KATMAI #1 | | REF 3  OCSG 34536 | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM<br>NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED<br>PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: TUBING NEW BARE 5 1/2 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS<br>TRACKING #: 7795907 TOTAL LENGTH: 10735 TOTAL JOINTS: 250 | | | | |
| 1.000 | 705G-TB<br>LOAD OUT<br>(EMI) | 2,791.10 | CW | .2400 | 669.86 |
| 1.001 | 730A-TB<br>MATERIAL HANDLING<br>(CREW CALL OUT) | 1.00 | EA | 390.0000 | 390.00 |
| 1.002 | 730A-TB<br>MATERIAL HANDLING<br>(CREW CALL OUT) | 1,574.18 | CW | .6000 | 944.51 |
| | | | SUBTOTAL | | 2,004.37 |

CONTINUED NEXT PAGE

**Tuboscope | NOV** Wellbore Technologies    Invoice: 5292047

ORIGINAL

Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative. | | | | |

| | | Subtotal | 2,004.37 |
|---|---|---|---|
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency:  **USD**    Total | | **2,004.37** |

### REMITTANCE INSTRUCTIONS

| Bank Deposit / Lockbox Payment | Wire Instructions (Wires Only) |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# SHIPPING REPORT

| | | | |
|---|---|---|---|
| | | DATE | 5/23/2020 |
| | | LOCATION NAME | AMELIA FACILITY |
| OWNER | PETRO AMIGOS SUPPLY INC | REPORT # | 5363110 |
| | 777 N ELDRIDGE PKWY STE 400 | RELEASED BY | CHRIS JOUBAN |
| | HOUSTON, TX US 77079-4463 | WITH | FIELDWOOD ENERGY LLC |
| | | DESTINATION | OSS DOCK - CPORT 2 |
| ATTN | ACCOUNTS PAYABLE | | FOURCHON, LA USA |
| SUPPLIER | PETRO AMIGOS SUPPLY INC | RELEASE # 1 | PA152-35575 |
| | 777 N ELDRIDGE PKWY STE 400 | RELEASE # 2 | |
| | HOUSTON, TX US 77079-4463 | REFERENCE # | |

- - - - - - - - - - ORIGINATING FROM - - - - - - - - - - -

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | WORK ORDER | 7795907-1 |
| | | WELL CHARGE | GC 40 #1 KATMAI |
| | | AFE # | FW202002 |
| | | PO/KEY REF | 580002/PA152-35575 |

---

TRACKING # 3540

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC | TUBING | BOLSTERED  BARE  5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | |
|---|---|---|---|---|---|---|
| 5/23/2020 9:52 AM | LOG NO 6837004-1 | AMERICAN EAGLE | MALCOLM | TRUCK NO 51522 | 36 PCS | 1507.82 |

TRACKING # 3540

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC | TUBING | BOLSTERED  BARE  5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | |
|---|---|---|---|---|---|---|
| 5/23/2020 11:17 AM | LOG NO 6837006-1 | AMERICAN EAGLE | LEONCE | TRUCK NO 50763 | 33 PCS | 1449.14 |

TRACKING # 3540

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC | TUBING | BOLSTERED  BARE  5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | |
|---|---|---|---|---|---|---|
| 5/22/2020 4:21 PM | LOG NO 6836804-1 | AEL | BRYANT | TRUCK NO 52234 | 36 PCS | 1568.34 |

TRACKING # 3540

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC | TUBING | BOLSTERED  BARE  5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | |
|---|---|---|---|---|---|---|
| 5/23/2020 9:51 AM | LOG NO 6837003-1 | AMERICAN EAGLE | THOMAS | TRUCK NO 51936 | 36 PCS | 1507.82 |

TRACKING # 3540

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC | TUBING | BOLSTERED  BARE  5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | |
|---|---|---|---|---|---|---|
| 5/23/2020 7:47 AM | LOG NO 6836909-1 | AMERICAN EAGLE | SAMANTHA | TRUCK NO 52143 | 36 PCS | 1568.34 |

TRACKING # 3540

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC | TUBING | BOLSTERED  BARE  5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | |
|---|---|---|---|---|---|---|
| 5/23/2020 11:17 AM | LOG NO 6837006-2 | AMERICAN EAGLE | LEONCE | TRUCK NO 50763 | 1 PCS | 41.88 |

| | | |
|---|---|---|
| TOTAL FOR RACK I3-188 | 178 | 7643.34 |
| TOTAL ALL RACKS | 178 | 7643.34 |

---

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

Printed on Tuesday June 9  2020 3:41:44 PM

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**SHIPPING REPORT**

COMMENTS   RELEASE 1569402:TAGGED: FIELDWOOD
WELL: GC 40 #1 KATMAI #1
OCSG: 34536
AFE: FW202002
PETRO AMIGOS REF: PA152-35575

SHIPPING 250 JTS

SHIPPED IN CONJ. W/ 1569097
TRUCK 6836909: ****CREW CALLL OUT & OT CHARGES WILL APPLY****
TRUCK 6837003: ****CREW CALL OUT & OT CHARGES WILL APPLY****
TRUCK 6837004: ****CREW CALL OUT & OT CHARGES WILL APPLY****
TRUCK 6837006: ****CREW CALL OUT & OT LOADING CHARGES WILL APPLY****

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# SHIPPING REPORT

| | | | |
|---|---|---|---|
| | | DATE | 5/22/2020 |
| | | LOCATION NAME | AMELIA FACILITY |
| OWNER | PETRO AMIGOS SUPPLY INC | REPORT # | 5362816 |
| | 777 N ELDRIDGE PKWY STE 400 | RELEASED BY | CHRIS JOUBAN |
| | HOUSTON, TX US 77079-4463 | WITH | FIELDWOOD ENERGY LLC [JDE#: 949109] |
| | | DESTINATION | OSS DOCK - CPORT 2 |
| ATTN | ACCOUNTS PAYABLE | | FOURCHON, LA USA |
| SUPPLIER | PETRO AMIGOS SUPPLY INC | RELEASE # 1 | PA152-35575 |
| | 777 N ELDRIDGE PKWY STE 400 | RELEASE # 2 | |
| | HOUSTON, TX US 77079-4463 | REFERENCE # | |

-----------ORIGINATING FROM-----------

| | |
|---|---|
| WORK ORDER | 7795907-1 |
| WELL CHARGE | GC 40 #1 KATMAI |
| AFE # | FW202002 |
| PO/KEY REF | 580002/PA152-35575 |

---

**TRACKING #  3540**

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC [JDE#: 949109] | TUBING | BOLSTERED  BARE  5 1/2"  26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | | |
|---|---|---|---|---|---|---|---|
| 5/22/2020 10:36 AM | LOG NO 6836683-1 | | AEL | JIMMIE | TRUCK NO 52006 | 36 PCS | 1545.83 |

**TRACKING #  3540**

| RACK  I3-188 - C | NEW | FIELDWOOD ENERGY LLC [JDE#: 949109] | TUBING | BOLSTERED  BARE  5 1/2"  26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS WHITE SVC CD | | | |
|---|---|---|---|---|---|---|---|
| 5/22/2020 10:37 AM | LOG NO 6836684-1 | | AEL | JOSEPH | TRUCK NO 51423 | 36 PCS | 1545.83 |

| | | |
|---|---|---|
| **TOTAL FOR RACK I3-188** | 72 | 3091.66 |
| **TOTAL ALL RACKS** | 72 | 3091.66 |

COMMENTS   RELEASE 1569097:TAGGED: FIELDWOOD
WELL: GC 40 #1 KATMAI #1
OCSG: 34536
AFE: FW202002
PETRO AMIGOS REF: PA152-35575

SHIPPING 250 JTS

---

# Tuboscope | NOV Technologies

**Invoice: 5292248**

**National Oilwell Varco, LP dba Tuboscope**

**LEDGER NO. 002**

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax:

| AFE NUMBER FW202001 | SALES ORDER # 4304782 SR | DATE 06/10/20 | BRANCH PLANT 2000706 | PAGE 1 of 2 |
|---|---|---|---|---|
| CUSTOMER NUMBER 945319 | CUSTOMER REF PO# 24367 | FREIGHT TERMS Carriage and Insurance Paid To | | |
| FINAL DESTINATION UNITED STATES | GOLD WO NUMBER 7801632 | KEY REF REL: 1572610 | | |
| TERMS: Net 30 Days | | REF 2 OCSG 27278 | | |
| WELL DESCRIPTION: MC 519 #3 | | REF 3 | | |

## *Invoice*

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:** FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:** TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 1.000 | ITEM# 01: OTHER 6 X 6 SST BOX ST-059 W/BOLSTERS SVCD TRACKING #: 7801632 TOTAL LENGTH: 1584 TOTAL JOINTS: 1 <br><br> **705G-TB** <br> LOAD OUT <br> (MINIMUM CHARGE) | 1.00 | EA | 183.7500 | 183.75 |
| | | | SUBTOTAL | | 183.75 |

CONTINUED NEXT PAGE

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
Terms and Conditions of Sale

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODUCTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer; or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 et seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

**Tuboscope | NOV** Wellbore Technologies

Invoice: 5292248

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative. | | | | |

| | | |
|---|---|---|
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Subtotal | 183.75 |
| | Currency: **USD**   Total | **183.75** |

**REMITTANCE INSTRUCTIONS**

| Bank Deposit / Lockbox Payment | Wire Instructions (Wires Only) |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

# TUBOSCOPE

a division of

## NATIONAL OILWELL VARCO, L.P.

### Terms and Conditions of Sale

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any failure or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODUCTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective; provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)    such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer; or

(2)    subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 et seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**CONSOLIDATED SHIPPING REPORT**

| MATERIAL OWNER | FIELDWOOD ENERGY LLC | | RELEASE # | 1572610 |
|---|---|---|---|---|
| CARRIER | | | RELEASED BY | . |
| DESTINATION | OSS YARD (C-PORT 2) | | WITH | FIELDWOOD ENERGY LLC |
| | FOURCHON LA | | RELEASE # 1 | VERBAL |
| | | | RELEASE # 2 | |
| | | | REFERENCE # | |

| WELL | MC 519 #3 OCSG 27278 | SUPPLIER | N/A-FIELDWOOD ENERGY LLC | REPORT # | 5367441 |
|---|---|---|---|---|---|
| AFE # | FW202001 | PO/REF KEY | NEED/580002 | WORKORDER | 7785930-03 |
| TRACKING # | 7785930 | | | | |

| RACK | D001-C | NONE OTHER 6 X 6 SST BOX ST-059 W/ BOLSTERS SVCD | | | | |
|---|---|---|---|---|---|---|
| 6/2/2020 11:32 AM | LOG | 6839289 -1 ( 6839289) | DRIVER AMERICAN EAGLE, COREY | TRUCK # 20401 | 1 PCS | 1,584.00 |
| | | | | TOTAL FOR 7785930-03 | 1 PCS | 1,584.00 |

| COMMENTS | TAGGED: FIELDWOOD |
|---|---|
| | WELL: MC 519 #3 |
| | OCSG 27278 |
| | AFE: FW202001 |
| | |
| | SHIPPING 1 BASKET |

| | | CONSOLIDATED TOTAL | 1 PCS | 1,584.00 |
|---|---|---|---|---|

**DRIVERS AND EMPLOYEES SIGNATURES ARE ON FILE**

# Tuboscope NOV Technologies

**Invoice: 5294749**

National Oilwell Varco, LP dba Tuboscope

**LEDGER NO. 002**

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (986) 631-9505

| AFE NUMBER<br>FW202002 | SALES ORDER #<br>4307847    SR | DATE<br>06/15/20 | BRANCH PLANT<br>2000706 | PAGE<br>1 of 2 |
|---|---|---|---|---|
| CUSTOMER NUMBER<br>945319 | CUSTOMER REF<br>PO# 24385 | FREIGHT TERMS<br>Carriage and Insurance Paid To | | |
| FINAL DESTINATION<br>UNITED STATES | GOLD WO NUMBER<br>7803003 | KEY REF    REL: 1577195 | | |
| TERMS:    Net 30 Days | | REF 2    ROUTING# 580002 | | |
| WELL DESCRIPTION: GC 40 #1 | | REF 3 | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM<br>NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED<br>PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER 5 X 5 BASKETS - ST-081, ST-004, ST-051<br>TRACKING #: 7803003  TOTAL JOINTS: 3 | | | | |
| 1.000 | **705G-TB**<br>LOAD OUT<br>(MINIMUM CHARGE) | 1.00 | EA | 183.7500 | 183.75 |
| | | | SUBTOTAL | | 183.75 |

CONTINUED NEXT PAGE

**TUBOSCOPE**
a division of
NATIONAL OILWELL VARCO, L.P.
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODUCTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective; provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)    such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)    subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

**Tuboscope | NOV** Technologies

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative. | | | | |

| | | | Subtotal | 183.75 |
|---|---|---|---|---|
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD** | Total | | **183.75** |

**REMITTANCE INSTRUCTIONS**

| Bank Deposit / Lockbox Payment | Wire Instructions (Wires Only) |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

# TUBOSCOPE

### a division of
## NATIONAL OILWELL VARCO, L.P.
### Terms and Conditions of Sale

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession,   on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such   equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING EITHER SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.

6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.

7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD,  OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.

B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION  OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location  and in  such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied   in Company's products and services (hereafter referred to as "Confidential   Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)   such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)   subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or  to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**CONSOLIDATED SHIPPING REPORT**

| MATERIAL OWNER | FIELDWOOD ENERGY LLC | | RELEASE # | 1577195 |
| CARRIER | | | RELEASED BY | REID LOMBES |
| DESTINATION | OSS DDOCK | | WITH | FIELDWOOD ENERGY LLC |
| | FOURCHON LA | | RELEASE # 1 | EMAIL |
| | | | RELEASE # 2 | |
| | | | REFERENCE # | |

| WELL | GC 40 #1 | | SUPPLIER | N/A-FIELDWOOD ENERGY LLC | | REPORT # | 5373085 |
| AFE # | FW202002 | | PO/REF KEY | ROUTING# 580002 | | WORKORDER | 7800124-04 |
| TRACKING # | 7800124 | | | | | | |

NONE OTHER 5 X 5 BASKETS - ST-081, ST-004, ST-051

| RACK | MURPHY-C | | 3 PALLETS W/ BOLSTER SVCD | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6/12/2020 11:46 AM | | LOG | 6842302 -1 ( 6842302) | | DRIVER AMERICAN EAGLE, JOSHUA | TRUCK # 31144 | | 3 PCS | 0.00 |
| | | | | | | TOTAL FOR 7800124-04 | | 3 PCS | 0.00 |

| COMMENTS | TAGGED: FIELDWOOD |
| | WELL: GC 40 #1 |
| | AFE: FW202002 |
| | ROUTING# 580002 |
| | |
| | SHIPPING 3 BASKETS |

| | | CONSOLIDATED TOTAL | 3 PCS | 0.00 |

DRIVERS AND EMPLOYEES SIGNATURES ARE ON FILE

# Tuboscope Technologies

**Invoice: 5301364**

National Oilwell Varco, LP dba Tuboscope

LEDGER NO. 002

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax:

| AFE NUMBER ROUTING# 580002 | | SALES ORDER # 4315099   SR | | DATE 06/26/20 | BRANCH PLANT 2000706 | PAGE 1 of 2 |
|---|---|---|---|---|---|---|
| CUSTOMER NUMBER 945319 | | CUSTOMER REF PO# 24470 | | FREIGHT TERMS Carriage and Insurance Paid To | | |
| FINAL DESTINATION UNITED STATES | | GOLD WO NUMBER 7803104 | | KEY REF   STORAGE CHARGE | | |
| TERMS:   Net 30 Days | | | | REF 2 | | |
| WELL DESCRIPTION: | | | | REF 3 | | |

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

## Invoice

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER OTHER STORAGE CHARGE FOR JUNE 2020. VARIOUS SIZES, GRADES, WEIGHTS AND CONNECTIONS TRACKING# 7690780, 7716450, 7723624, 7727576, 7748635. TOTAL JOINTS: 8,201 TRACKING #: 7803104   TOTAL JOINTS: 8201 | | | | |
| 1.000 | **725E-TB** STORAGE / COVERED INVENTORY (201 JTS.) | 1.00 | EA | 750.0000 | 750.00 |
| 1.001 | **725I-TB** STORAGE CHARGE (OUTSIDE COVERED STORAGE) | 8,826.78 | TN | .7000 | 6,178.75 |
| | | | | SUBTOTAL | 6,928.75 |

CONTINUED NEXT PAGE

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
Terms and Conditions of Sale

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered). Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret. proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosure is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

# Tuboscope NOV   Wellbore Technologies

Invoice: 5301364

ORIGINAL

Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative. | | | | |

| | | |
|---|---|---|
| | Subtotal | 6,928.75 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency:  **USD**   Total | **6,928.75** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

National Oilwell Varco. LP dba
Tuboscope
PO Box 201177
Dallas TX 75320-1177

**Wire Instructions (Wires Only)**

Wells Fargo Bank
Acct: 4496880188
ABA: 121000248
SWIFT: WFBIUS6S

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
Terms and Conditions of Sale

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)   such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)   subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

NOV TUBOSCOPE LLC
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# INVENTORY SUMMARY CURRENT BALANCE

## FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| COUPLINGS | 5 1/2" 26.00# VM-110 13CR55 VAM TOP HC NEW BARE RED | C | INSP REJECT | 2 | 0.00 | 0.00 | 0.00 |
| COUPLINGS | 5 1/2" 26.00# VM-110 13CR55 VAM TOP HC NEW BARE NONE | C | KORRGUARD STORAGE | 30 | 0.00 | 0.00 | 0.00 |
| PUP JOINTS | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 2 | 16.00 | 104.00 | 0.05 |
| PUP JOINTS | 4 1/2" 15.10# HP2-13CR110 JFE LION CR T&C UNKNOWN BARE NONE | I | TO BE INSPECTED | 1 | 4.00 | 60.40 | 0.03 |
| PUP JOINTS | 4 1/2" 17.00# VM-110 13CR55 VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 2 | 14.00 | 238.00 | 0.12 |
| PUP JOINTS | 5" 18.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 21.00 | 378.00 | 0.19 |
| PUP JOINTS | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD PIN | 1 | 19.65 | 393.00 | 0.20 |
| PUP JOINTS | 5 1/2" 26.00# 13CRS110 VAM TOP HC INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KORRGUARD STORAGE | 1 | 20.00 | 520.00 | 0.26 |
| PUP JOINTS | 5 1/2" 26.00# HP213CR110 JFE LION T&C UNKNOWN BARE NONE | I | TO BE INSPECTED | 7 | 41.00 | 1,066.00 | 0.53 |
| PUP JOINTS | 5 1/2" 26.00# VM-110 13CR55 VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 21 | 76.00 | 1,976.00 | 0.99 |
| PUP JOINTS | 5 1/2" 29.70# 13CR115 VAM TOP HC INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KORRGUARD STORAGE | 2 | 35.00 | 1,039.50 | 0.52 |
| PUP JOINTS | 5 1/2" 29.70# HP2-13CR110 DUTCHMAN CUT OFF BOTH ENDS USED BARE NONE | A | CENTRALIZER - SLIP ON (1 | 1 | 27.00 | 801.90 | 0.40 |
| PUP JOINTS | 5 1/2" 29.70# HP2-13CR110 JFE LION CR  USED BARE NONE | I | CUT OFF BOX | 1 | 18.00 | 534.60 | 0.27 |
| PUP JOINTS | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 1 | 23.00 | 598.00 | 0.30 |
| PUP JOINTS | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 21.80 | 632.20 | 0.32 |
| PUP JOINTS | 7" 29.00# P-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 4 | 88.07 | 2,554.03 | 1.28 |
| PUP JOINTS | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | REPAIRED | 1 | 22.36 | 664.09 | 0.33 |
| PUP JOINTS | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 22.30 | 662.31 | 0.33 |
| PUP JOINTS | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 1 | 10.30 | 305.91 | 0.15 |
| PUP JOINTS | 7 3/4" 46.10# Q-125 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | STORAGE ONLY | 1 | 10.12 | 466.53 | 0.23 |
| PUP JOINTS | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 23.00 | 1,215.55 | 0.61 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 22.15 | 1,185.03 | 0.59 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 1 | 23.15 | 1,238.53 | 0.62 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 23.15 | 1,238.53 | 0.62 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | OCR127 | 2 | 45.95 | 2,458.33 | 1.23 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 1 | 23.10 | 1,235.85 | 0.62 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 22.95 | 1,227.83 | 0.61 |

## INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| PUP JOINTS | 9 7/8" 62.80# HCQ-125 HYD 513 PIN X PIN NEW BARE NONE | C | STORAGE ONLY | 1 | 3.00 | 188.40 | 0.09 |
| PUP JOINTS | 9 7/8" 62.80# HCQ-125 HYD 523 PIN X PIN NEW BARE NONE | C | STORAGE ONLY | 1 | 3.00 | 188.40 | 0.09 |
| PUP JOINTS | 9 7/8" 62.80# HCQ-125 HYD 513 INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 1 | 10.00 | 628.00 | 0.31 |
| PUP JOINTS | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 6 | 129.15 | 5,876.33 | 2.94 |
| PUP JOINTS | 10 3/4" 45.50# P-110 IC BUTTRESS T&C USED BARE NONE | C | NOT TVI INSP | 1 | 20.00 | 910.00 | 0.46 |
| PUP JOINTS | 10 3/4" 45.50# P-110 IC BUTTRESS T&C NEW BARE WHITE | C | KENDEX | 1 | 19.60 | 891.80 | 0.45 |
| PUP JOINTS | 10 3/4" 65.70# Q-125 HC SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 4 | 39.75 | 2,611.58 | 1.31 |
| PUP JOINTS | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS PIN NEW BARE WHITE | C | OCR127 | 1 | 10.20 | 746.64 | 0.37 |
| PUP JOINTS | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS BOX NEW BARE WHITE | C | OCR127 | 1 | 9.80 | 717.36 | 0.36 |
| PUP JOINTS | 10 3/4" 73.20# TN-125-HC-MAC II DOPELESS NEW BARE WHITE | C | DOPELESS CONNS | 2 | 30.00 | 2,196.00 | 1.10 |
| PUP JOINTS | 10 3/4" 85.30# Q125 ICY MAC II INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 3 | 21.10 | 1,799.83 | 0.90 |
| PUP JOINTS | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 2 | 15.60 | 1,014.00 | 0.51 |
| PUP JOINTS | 11 3/4" 65.00# Q-125 IC HYD 523 INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 1 | 3.00 | 195.00 | 0.10 |
| PUP JOINTS | 13 3/8" 68.00# HCQ-125 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 23.85 | 1,621.80 | 0.81 |
| PUP JOINTS | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 1 | 21.65 | 1,471.86 | 0.74 |
| PUP JOINTS | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 5 | 106.80 | 7,262.40 | 3.63 |
| PUP JOINTS | 13 3/8" 68.00# NT-80HE BUTTRESS T&C NEW BARE WHITE | C | NO COMMENTS | 1 | 20.25 | 1,377.00 | 0.69 |
| PUP JOINTS | 13 3/8" 68.00# NT-80HE BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 20.30 | 1,380.40 | 0.69 |
| PUP JOINTS | 13 3/8" 68.00# NT-80HE BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 2 | 47.60 | 3,236.80 | 1.62 |
| PUP JOINTS | 16" 65.00# H-40 BUTTRESS T&C USED BARE NONE | C | NOT TVI INSP | 2 | 44.50 | 2,892.50 | 1.45 |
| PUP JOINTS | 18 5/8" 87.50# J-55 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 2 | 47.10 | 4,121.25 | 2.06 |
| PUP JOINTS | 18 5/8" 99.50# J-55 BUTTRESS SPECIAL CLEAR. BBE NEW BARE WHITE | C | READY TO RUN BOL 2000 | 1 | 21.00 | 2,089.50 | 1.04 |
| PUP JOINTS | 18 5/8" 99.50# J-55 BUTTRESS SPECIAL CLEAR. BBE NEW BARE WH-GRN | C | NO HEAT # | 1 | 21.40 | 2,129.30 | 1.06 |
| PUP JOINTS | 20" 94.00# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 2 | 39.85 | 3,745.90 | 1.87 |
| PUP JOINTS | 20" 94.00# K-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 2 | 42.25 | 3,971.50 | 1.99 |
| CPLG STOCK | 6.504" 1.0" VM-110 13CR55 PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 8 | 144.00 | 0.00 | 0.00 |
| CPLG STOCK | 6.626" 57.39# HP2-13CR115 PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 1 | 5.00 | 286.95 | 0.14 |
| NONE - OTHER | USED 2 7/8" 6.50# 13CR85 NIPPLE ASSY | C | | 1 | 30.00 | 0.00 | 0.00 |
| NONE - OTHER | NEW 5 1/2" 20# P-110 STL BOX X 4 1/2" 15.10# 8RD SHORT PIN CROSSOVER @ 18' LONG (STORAGE ONLY) | C | | 1 | 0.00 | 0.00 | 0.00 |
| NONE - OTHER | USED BARE 2 7/8" @ 6.50# 13CR95 BTS-8 PUP JT. ASSY. (8', 6', 4', 2' 2") | C | | 1 | 22.25 | 0.00 | 0.00 |
| NONE - OTHER | USED BARE 2 7/8" @ 6.50# 13CR95 BTS-8 PUP JT. ASSY. (8', 6' 4') | C | | 1 | 18.05 | 0.00 | 0.00 |

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

## INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| NONE - OTHER | USED BARE X-OVER 10 3/4" 73.2O# TN-125-HC TSH WEDGE 563 T&C BBE BOX X MAC II TENARIS DOPELESS PIN | C | | 2 | 80.85 | 0.00 | 0.00 |
| NONE - OTHER | NEW BARE 7 5/8" 33.70# HCP-110 API 8RD BOX X TSH 523 BOX @ 11' (STORAGE ONLY) | C | | 1 | 0.00 | 0.00 | 0.00 |
| NONE - OTHER | NEW X-OVER 10 3/4" 65.70# SLIII BOX X 9 7/8" 65.30# PLAIN END @ 4' EACH | C | | 2 | 0.00 | 0.00 | 0.00 |
| WH-GRN - OTHER | X-OVER 9 5/8" 53.50# HCP-110  SLX  BOX X 8RD LONG T&C PIN @46.10, BOL PTC ON PIN & BOL 2000 ON BOX END | C | | 1 | 0.00 | 0.00 | 0.00 |
| WH-GRN - OTHER | NEW BARE X-OVER 10 3/4" 73.20# 4130M 125 KSI TSH MAC II BOX X 9 7/8" 65.30# SLIII PIN @ 5.15' | C | | 1 | 5.15 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BARE X-OVER 10 3/4" 65.70# VAM SLIII BOX X 9 7/8" 62.80# TSH WEDGE 523 PIN SMLS @ 4.20' | C | | 1 | 4.20 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BAE X-OVER 10 3/4" @ 85.30# Q125 TSH MAC II DPLS BOX X 10 1/8" 79.29# TSH WS23 DPLS PIN 5.15' (OCR 127) | C | | 1 | 5.15 | 0.00 | 0.00 |
| WHITE - OTHER | 7" 41# Q-125 STL BOX X 7" 42.70# VAM SLU-II PIN X-OVER @5'(READY TO RUN) | C | | 1 | 0.00 | 0.00 | 0.00 |
| WHITE - OTHER | 7" 41# Q-125 STL BOX X 7" 42.70# VAM SLI-II PIN X-OVER @10' (READY TO RUN) | C | | 1 | 0.00 | 0.00 | 0.00 |
| WHITE - OTHER | 7 5/8" 39# Q-125 SLSF BOX X 7" 41# STL PIN X-OVER @ 3'EACH (READY TO RUN) | C | | 2 | 0.00 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BARE X-OVER 9 7/8" 62.80# TN-125-HC TSH WEDGE 523 BOX X SLIII PIN INTEGRAL JOINT (IJ) R-3 TENARIS SEAMLESS WEARSOX CENT 87.60' | C | | 2 | 87.60 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BARE VIT TUBING 7" 32# HYP-TP1 13CR110 OUTER X 5 1/2" 23# 13CR95 BTS-6 BOX X PIN INNER R-3 SMLS SUMITOMO FOOTAGE 395.75 (JET LUBE KORR GUARD) | C | | 10 | 0.00 | 0.00 | 0.00 |
| WH-RD - OTHER | NEW BARE X-OVER 7 5/8" 38.08# Q-125 SLF BOX X SLIII PIN R3 USS @ 42.65' (WH-RD) (BAD BOX) | C | | 1 | 0.00 | 0.00 | 0.00 |
| WH-RD - OTHER | NEW BARE VIT TUBING 7" 32# HYP-TP1 13CR110 OUTER X 5 1/2" 23# 13CR95 BTS-6 BOX X PIN INNER R-3 SMLS SUMITOMO FOOTAGE 39.50(BAD PIN) | C | | 1 | 0.00 | 0.00 | 0.00 |
| NONE - OTHER | 3 1/16" 15K MANUMATIC WING VALVE ASSY. @ 4' | C | | 1 | | 0.00 | 0.00 |
| NONE - OTHER | 3 1/16" 15M X-MAS TREE ASSY. W/ 7 1/16" WELLHEAD ADAPTER @ 8' | C | | 1 | | 0.00 | 0.00 |
| CASING | 4 1/2" 13.50# HCP-110 ULTRA SF FLUSH JOINT NEW BARE WHITE | C | READY TO RUN BOL PTC | 16 | 676.75 | 9,136.13 | 4.57 |
| CASING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD BOX | 2 | 88.00 | 1,663.20 | 0.83 |
| CASING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD PIN | 2 | 88.00 | 1,663.20 | 0.83 |
| CASING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD PIN AND BOX | 3 | 132.00 | 2,494.80 | 1.25 |
| CASING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WHITE | I | | 41 | 1,804.00 | 34,095.60 | 17.05 |
| CASING | 4 1/2" 18.97# Q-125 HCE SLIII INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 8 | 324.30 | 6,151.97 | 3.08 |
| CASING | 5" 18.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 41.45 | 746.10 | 0.37 |
| CASING | 5" 18.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN | 4 | 167.40 | 3,013.20 | 1.51 |
| CASING | 5" 18.00# P-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 16 | 698.00 | 12,564.00 | 6.28 |
| CASING | 5" 18.00# P-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 3 | 141.30 | 2,543.40 | 1.27 |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# INVENTORY SUMMARY CURRENT BALANCE

## FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 5" 18.00# P-110 EC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN BOL PTC | 5 | 226.10 | 4,069.80 | 2.03 |
| CASING | 5" 18.00# P-110-ICY TSH WEDGE 625 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 20 | 918.55 | 16,533.90 | 8.27 |
| CASING | 5 1/2" 17# P-110 TSH 511 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 97 | 4,578.35 | 77,831.95 | 38.92 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 45.60 | 912.00 | 0.46 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 8 | 361.80 | 7,236.00 | 3.62 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | CENTRALIZER - MOLD ON (2) | 1 | 45.40 | 908.00 | 0.45 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 3 | 134.25 | 2,685.00 | 1.34 |
| CASING | 5 1/2" 20.00# P-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD BOX | 1 | 46.10 | 922.00 | 0.46 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 4 | 156.15 | 3,123.00 | 1.56 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 2 | 76.40 | 1,528.00 | 0.76 |
| CASING | 5 1/2" 20.00# P-110 EC VAM TOP HT T&C NEW BARE WHITE | C | OCR127 | 1 | 46.10 | 922.00 | 0.46 |
| CASING | 5 1/2" 20.00# P-110 EC VAM TOP HT T&C NEW BARE WHITE | C | BAD PIN | 6 | 276.10 | 5,522.00 | 2.76 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 11 | 429.55 | 8,591.00 | 4.30 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 4 | 163.45 | 3,269.00 | 1.63 |
| CASING | 5 1/2" 20.00# P-110 IC TSH 625 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 11 | 511.35 | 10,227.00 | 5.11 |
| CASING | 5 1/2" 23.00# 13 CR-95 BTS-6 INTEGRAL JOINT (IJ) USED BARE YELLOW | C | KORRGUARD STORAGE | 1 | 39.75 | 914.25 | 0.46 |
| CASING | 5 1/2" 23.00# 13 CR-95 BTS-6 INTEGRAL JOINT (IJ) USED BARE YEL-RD | C | BAD BOX | 1 | 39.80 | 915.40 | 0.46 |
| CASING | 5 1/2" 23.00# 13 CR-95 BTS-6 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KORRGUARD STORAGE | 8 | 316.45 | 7,278.35 | 3.64 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE NONE | C | BAD PIN | 1 | 44.00 | 1,012.00 | 0.51 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | KENDEX | 1 | 43.16 | 992.68 | 0.50 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 43.55 | 1,001.65 | 0.50 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | BOLSTERED - KENDEX | 164 | 7,100.34 | 163,307.74 | 81.65 |
| CASING | 5 1/2" 23.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 47.30 | 1,087.90 | 0.54 |
| CASING | 5 1/2" 23.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD PIN AND BOX | 4 | 171.85 | 3,952.55 | 1.98 |
| CASING | 5 1/2" 23.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD BOX | 9 | 408.80 | 9,402.40 | 4.70 |
| CASING | 5 1/2" 26.00# Q-125 SLJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 18 | 820.90 | 21,343.40 | 10.67 |
| CASING | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C NEW BARE NONE | C | NO HEAT # | 1 | 43.00 | 1,118.00 | 0.56 |
| CASING | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C UNKNOWN BARE NONE | C | TO BE INSPECTED | 2 | 90.45 | 2,351.70 | 1.18 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 5 1/2" 26.00# VM-110 13CR55 VAM TOP HC T&C USED BARE YEL-RD | C | BAD PIN | 4 | 181.50 | 4,719.00 | 2.36 |
| CASING | 5 1/2" 26.00# VM-110 13CR55 VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 40 | 1,806.30 | 46,963.80 | 23.48 |
| CASING | 5 1/2" 26.00# VM-110 13CR55 VAM TOP HC T&C NEW BARE WHITE | C | BOLSTERED - BOL 72733 | 46 | 1,984.82 | 51,605.32 | 25.80 |
| CASING | 5 1/2" 29.70# HP213CR115 PLAIN END UPSET PLAIN END NEW BARE NONE | C | STORAGE ONLY | 6 | 264.00 | 7,840.80 | 3.92 |
| CASING | 5 1/2" 29.70# HP2-13CR115 PLAIN END UPSET PLAIN END UPSET NEW BARE WHITE | C | BOLSTERED | 12 | 430.75 | 12,793.19 | 6.40 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 2 | 83.70 | 2,176.20 | 1.09 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD BOX | 7 | 327.85 | 8,524.10 | 4.26 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 18 | 817.11 | 21,244.96 | 10.62 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN-RD | C | BAD PIN | 1 | 47.40 | 1,232.40 | 0.62 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 3 | 124.55 | 3,238.30 | 1.62 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | OVERAGE | 6 | 280.02 | 7,280.52 | 3.64 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | OVERAGE | 3 | 139.95 | 3,638.70 | 1.82 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 25 | 1,112.05 | 28,913.30 | 14.46 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 2 | 83.60 | 2,173.60 | 1.09 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-GRN-RD | C | BAD PIN | 2 | 89.70 | 2,332.20 | 1.17 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 44.15 | 1,147.90 | 0.57 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 29 | 1,302.50 | 33,865.00 | 16.93 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 28 | 1,255.92 | 32,653.99 | 16.33 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 2 | 89.10 | 2,316.60 | 1.16 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 2 | 89.10 | 2,316.60 | 1.16 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-RD | C | BAD BOX | 5 | 221.25 | 5,752.50 | 2.88 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 26 | 1,085.65 | 31,483.85 | 15.74 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 42.60 | 1,235.40 | 0.62 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 47.00 | 1,363.00 | 0.68 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD BOX | 4 | 170.91 | 4,956.25 | 2.48 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 10 | 451.50 | 13,093.50 | 6.55 |
| CASING | 7" 29.00# P-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 7 | 314.20 | 9,111.80 | 4.56 |
| CASING | 7" 29.00# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 32 | 1,379.95 | 40,018.55 | 20.01 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

## INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 30 | 1,255.32 | 40,170.24 | 20.09 |
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 21 | 991.60 | 31,731.20 | 15.87 |
| CASING | 7" 32.00# HCP-110 TSH 513 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | C | CENTRALIZER - MOLD ON (2) | 2 | 88.00 | 2,816.00 | 1.41 |
| CASING | 7" 32.00# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | CENTRALIZER - MOLD ON (2) | 8 | 371.00 | 11,872.00 | 5.94 |
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 18 | 748.65 | 23,956.80 | 11.98 |
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | B, R, & SPRAY | 26 | 1,225.15 | 39,204.80 | 19.60 |
| CASING | 7" 32.00# P-110 HC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 24 | 1,106.20 | 35,398.40 | 17.70 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 2 | 85.25 | 2,728.00 | 1.36 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 30 | 1,283.75 | 41,079.92 | 20.54 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 2 | 85.40 | 2,732.80 | 1.37 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 1 | 44.00 | 1,408.00 | 0.70 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 3 | 128.75 | 4,120.00 | 2.06 |
| CASING | 7" 32.00# P-110 IC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 3 | 138.25 | 4,424.00 | 2.21 |
| CASING | 7" 32.00# P-110 IC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 15 | 692.30 | 22,153.60 | 11.08 |
| CASING | 7" 32.00# Q-125 TC-II T&C BBE NEW BARE WHITE | C | READY TO RUN | 6 | 259.25 | 8,296.00 | 4.15 |
| CASING | 7" 37.29# Q-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 50 | 2,176.30 | 81,154.23 | 40.58 |
| CASING | 7" 38.00# HCQ-125 VAM TOP T&C NEW BARE WHITE | C | READY TO RUN | 4 | 161.95 | 6,154.10 | 3.08 |
| CASING | 7" 38.00# HCQ-125-1 STL INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 43 | 1,881.70 | 71,504.60 | 35.75 |
| CASING | 7" 38.00# P-110 VAM TOP T&C NEW BARE WHITE | C | READY TO RUN | 8 | 360.90 | 13,714.20 | 6.86 |
| CASING | 7" 41.00# V-150 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | CENTRALIZER - MOLD ON (2) | 1 | 47.35 | 1,941.35 | 0.97 |
| CASING | 7" 41.00# V-150 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 56 | 2,620.90 | 107,456.90 | 53.73 |
| CASING | 7" 42.59# Q-125-1 SLIII INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 43.75 | 1,863.31 | 0.93 |
| CASING | 7" 42.59# Q-125-1 SLIII FLOAT SHOE NEW BARE WHITE | C | READY TO RUN BOL PTC | 1 | 45.10 | 1,920.81 | 0.96 |
| CASING | 7" 42.59# Q-125-1 SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 350 | 15,428.65 | 657,106.40 | 328.55 |

Copyright 2005. National Oilwell Varco, L.P.

## INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7" 42.59# Q-125-1 SLIJII INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 11 | 484.85 | 20,649.76 | 10.32 |
| CASING | 7" 42.70# Q-125-1 SLIJII CUT OFF NEW BARE WHITE | C | STORAGE ONLY | 1 | 38.90 | 1,661.03 | 0.83 |
| CASING | 7 1/16" 40.40# HP2-13CR115 PLAIN END PLAIN END NEW BARE WHITE | C | NOT BOLSTERED | 3 | 107.72 | 4,351.78 | 2.18 |
| CASING | 7 1/16" 40.40# HP2-13CR115 PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 12 | 528.00 | 21,331.20 | 10.67 |
| CASING | 7 5/8" 29.06# P-110 EC SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 29 | 1,338.00 | 38,882.22 | 19.44 |
| CASING | 7 5/8" 29.06# P-110 EC SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 47 | 2,165.43 | 62,927.40 | 31.46 |
| CASING | 7 5/8" 29.06# P-110 EC SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 47 | 2,179.15 | 63,326.09 | 31.66 |
| CASING | 7 5/8" 29.06# P-110 EC SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 88 | 4,051.36 | 117,732.52 | 58.87 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 21 | 958.15 | 28,457.06 | 14.23 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 2 | 89.65 | 2,662.61 | 1.33 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | REPAIRED | 4 | 184.15 | 5,469.26 | 2.73 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WH-GR | C | REPAIRED | 1 | 46.78 | 1,389.37 | 0.69 |
| CASING | 7 5/8" 29.70# HCP-110 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 25 | 1,134.70 | 33,700.59 | 16.85 |
| CASING | 7 5/8" 29.70# HCP-110 IC TSH 513 CENTRALIZER NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 47.75 | 1,418.18 | 0.71 |
| CASING | 7 5/8" 29.70# HCP-110 IC TSH 513 CENTRALIZER NEW BARE WH-RD | C | BAD PIN | 2 | 87.85 | 2,609.15 | 1.30 |
| CASING | 7 5/8" 29.70# HCP-110 IC TSH 513 CENTRALIZER NEW BARE WH-RD | C | BAD BOX | 2 | 95.05 | 2,822.99 | 1.41 |
| CASING | 7 5/8" 29.70# P-110 EC SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 5 | 230.70 | 6,851.79 | 3.43 |
| CASING | 7 5/8" 29.70# P-110 EC SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 11 | 506.77 | 15,051.07 | 7.53 |
| CASING | 7 5/8" 29.70# P-110 EC SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 46 | 2,114.10 | 62,788.79 | 31.39 |
| CASING | 7 5/8" 29.70# P-110 IC  USED BARE NONE | C | CUT OFF EA. END | 1 | 19.10 | 567.27 | 0.28 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 30 | 1,397.90 | 41,517.63 | 20.76 |
| CASING | 7 5/8" 29.70# P-110 IC DUTCHMAN/CUT-OFF PIN INTEGRAL JOINT (IJ) USED BARE NONE | C | TO BE INSPECTED | 1 | 27.40 | 813.78 | 0.41 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | CUT OFF BOX | 1 | 39.80 | 1,182.06 | 0.59 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | CUT OFF PIN | 1 | 26.20 | 778.14 | 0.39 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 3 | 138.50 | 4,113.45 | 2.06 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | REPAIRED | 18 | 836.22 | 24,835.73 | 12.42 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHT-GR | C | REPAIRED | 1 | 45.82 | 1,360.85 | 0.68 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 2 | 91.80 | 2,726.46 | 1.36 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 2 | 88.00 | 2,613.60 | 1.31 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 31 | 1,430.89 | 42,497.43 | 21.25 |

TUBOSCOPE GOLD™
Copyright 2005. National Oilwell Varco, L.P.

**INVENTORY SUMMARY CURRENT BALANCE**

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 36 | 1,687.50 | 50,118.75 | 25.06 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 48 | 2,089.05 | 62,044.79 | 31.02 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 43 | 1,987.13 | 59,017.72 | 29.51 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | NO COMMENTS | 5 | 230.70 | 6,851.79 | 3.43 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | KENDEX | 193 | 9,010.25 | 267,604.43 | 133.80 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 22 | 1,020.65 | 30,313.31 | 15.16 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE NONE-RED | C | BAD PIN | 14 | 646.00 | 21,770.20 | 10.89 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 45.25 | 1,524.93 | 0.76 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 141 | 6,370.75 | 214,694.28 | 107.35 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 101 | 4,499.93 | 151,647.75 | 75.82 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN | 18 | 797.60 | 26,879.12 | 13.44 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE NONE | C | STORAGE ONLY | 109 | 5,033.95 | 169,644.26 | 84.82 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | REPAIRED | 55 | 2,407.12 | 81,120.03 | 40.56 |
| CASING | 7 5/8" 33.70# RY TSH 523 PLAIN END BOX UNKNOWN BARE NONE | C | STORAGE ONLY | 1 | 34.10 | 1,149.17 | 0.57 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIII INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 43.70 | 1,664.10 | 0.83 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIII INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 1 | 43.55 | 1,658.38 | 0.83 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 2 | 84.65 | 3,223.47 | 1.61 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 2 | 81.65 | 3,109.23 | 1.55 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 13 | 559.25 | 21,296.24 | 10.65 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT USED BARE NONE | C | CUT OFF PIN | 2 | 67.00 | 2,551.36 | 1.28 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT NEW BARE WH-RD | C | BAD BOX | 1 | 43.60 | 1,660.29 | 0.83 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT USED BARE NONE | C | NOT TVI INSP | 2 | 88.50 | 3,370.08 | 1.69 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT NEW BARE WHITE | C | OCR127 | 10 | 438.55 | 16,699.98 | 8.35 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS GUIDE SHOE – BH NEW BARE WHITE | C | WEARSOX CENT | 1 | 43.29 | 1,995.67 | 1.00 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS FLOAT COLLAR – BH NEW BARE WHITE | C | WEARSOX CENT | 1 | 43.30 | 1,996.13 | 1.00 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | DOPELESS CONNS | 3 | 123.26 | 5,682.29 | 2.84 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | WEARSOX CENT | 17 | 696.84 | 32,124.32 | 16.06 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS CENT SUB - BH NEW BARE WHITE | C | WEARSOX CENT | 28 | 1,269.16 | 58,508.28 | 29.25 |
| CASING | 7 3/4" 46.10# Q-125 TSH WEDGE 523 DOPELESS NEW BARE WHITE | C | DOPELESS CONNS | 2 | 82.05 | 3,782.51 | 1.89 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 14 | 582.15 | 26,836.92 | 13.42 |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

## INVENTORY SUMMARY CURRENT BALANCE

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 9 | 375.60 | 17,315.16 | 8.66 |
| CASING | 7 3/4" 46.10# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL 72733 | 5 | 224.50 | 10,349.45 | 5.17 |
| CASING | 7 3/4" 46.10# TN-125-HCY TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 18 | 830.99 | 38,308.64 | 19.15 |
| CASING | 7 3/4" 46.10# TN-125-HCY TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 11 | 491.80 | 22,671.98 | 11.34 |
| CASING | 9 5/8" 47.00# P-110 EC API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 13 | 564.10 | 26,512.70 | 13.26 |
| CASING | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 17 | 766.30 | 40,498.96 | 20.25 |
| CASING | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 11 | 488.70 | 25,827.80 | 12.91 |
| CASING | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 15 | 664.00 | 35,092.40 | 17.55 |
| CASING | 9 5/8" 52.90# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 20 | 881.96 | 46,655.50 | 23.33 |
| CASING | 9 5/8" 53.30# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 3 | 137.25 | 7,315.43 | 3.66 |
| CASING | 9 5/8" 53.30# HCP-110 API 8RD LONG T&C NEW BARE WH-RD* | C | BAD PIN | 1 | 46.10 | 2,457.13 | 1.23 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 46.00 | 2,461.00 | 1.23 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WH-RD* | C | BAD PIN | 2 | 92.95 | 4,972.83 | 2.49 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN-RD | C | BAD PIN AND BOX | 1 | 45.65 | 2,442.28 | 1.22 |
| CASING | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 44.75 | 2,394.13 | 1.20 |
| CASING | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 2 | 87.25 | 4,667.88 | 2.33 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 FLOAT SHOE NEW BARE WH-GRN | C | CENTRALIZER SUB | 1 | 51.00 | 2,728.50 | 1.36 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 FLOAT COLLAR NEW BARE WH-GRN | C | CENTRALIZER SUB | 1 | 48.60 | 2,600.10 | 1.30 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 44.35 | 2,372.73 | 1.19 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 3 | 140.70 | 7,527.45 | 3.76 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 1 | 46.65 | 2,495.78 | 1.25 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN | 1 | 47.15 | 2,522.53 | 1.26 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN | 2 | 87.95 | 4,705.33 | 2.35 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 9 | 421.63 | 22,557.38 | 11.28 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 2 | 92.80 | 4,964.80 | 2.48 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 CENT SUB NEW BARE WH-GRN | C | NO HEAT # | 8 | 389.05 | 20,814.18 | 10.41 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 3 | 133.55 | 7,144.93 | 3.57 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 4 | 187.70 | 10,041.95 | 5.02 |

TUBOSCOPE GOLD™
Copyright 2005. National Oilwell Varco, L.P.

## INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 6 | 262.75 | 14,057.13 | 7.03 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 16 | 741.08 | 39,647.91 | 19.82 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | OCR127 | 21 | 975.55 | 52,191.93 | 26.10 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE RED | C | NO DRIFT | 1 | 46.70 | 2,498.45 | 1.25 |
| CASING | 9 5/8" 53.50# HCQ-125 BUTTRESS T&C NEW BARE WH-RD | C | BAD BOX | 1 | 47.25 | 2,527.88 | 1.26 |
| CASING | 9 5/8" 53.50# HCQ-125 STL FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 48.34 | 2,586.19 | 1.29 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN | 1 | 38.80 | 2,075.80 | 1.04 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 2 | 89.25 | 4,774.88 | 2.39 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 1 | 46.20 | 2,471.70 | 1.24 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN | 43 | 1,907.75 | 102,064.63 | 51.03 |
| CASING | 9 5/8" 53.50# HCQ-125 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 14 | 642.90 | 34,395.15 | 17.20 |
| CASING | 9 5/8" 53.50# HCQ-125 SLJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 6 | 281.40 | 15,054.90 | 7.53 |
| CASING | 9 5/8" 53.50# HCQ-125 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN | 16 | 726.90 | 38,889.15 | 19.44 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN AND BOX | 4 | 181.95 | 9,734.33 | 4.87 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 6 | 275.45 | 14,736.58 | 7.37 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 5 | 228.00 | 12,198.00 | 6.10 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 28 | 1,255.40 | 67,163.90 | 33.58 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 6 | 272.00 | 14,552.00 | 7.28 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 5 | 222.20 | 11,887.70 | 5.94 |
| CASING | 9 5/8" 53.50# P110 EC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 259 | 11,294.50 | 604,255.75 | 302.13 |
| CASING | 9 5/8" 53.50# P-110 EC CUT OFF PIN CUT OFF USED BARE NONE | C | DUTCHMAN | 1 | 49.60 | 2,653.60 | 1.33 |
| CASING | 9 5/8" 53.50# P-110 EC CUT OFF PIN INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TV'I INSP | 1 | 46.05 | 2,463.68 | 1.23 |
| CASING | 9 5/8" 53.50# P-110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 1 | 44.70 | 2,391.45 | 1.20 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 8 | 362.50 | 19,393.75 | 9.70 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 9 | 411.75 | 22,028.63 | 11.01 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 86 | 3,869.76 | 207,032.07 | 103.52 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 31 | 1,376.90 | 73,664.15 | 36.83 |
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 9 | 419.00 | 22,416.50 | 11.21 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

## INVENTORY SUMMARY CURRENT BALANCE

### FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 9 | 410.85 | 21,980.48 | 10.99 |
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 DOPELESS NEW BARE WHITE | C | DOPELESS CONNS | 65 | 3,046.44 | 162,984.54 | 81.49 |
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 DOPELESS NEW BARE WHITE | C | KENDEX | 20 | 946.20 | 50,621.70 | 25.31 |
| CASING | 9 7/8" 61.80# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 9 | 423.30 | 26,159.94 | 13.08 |
| CASING | 9 7/8" 61.80# Q125-iC TSH 513 FLOAT SHOE UNKNOWN BARE NONE | C | CENTRALIZER - MOLD ON (1) | 1 | 44.00 | 2,719.20 | 1.36 |
| CASING | 9 7/8" 61.80# Q125-iC TSH 513 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | C | NOT TVI INSP | 16 | 704.00 | 43,507.20 | 21.75 |
| CASING | 9 7/8" 62.80# P-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 1 | 46.45 | 2,917.06 | 1.46 |
| CASING | 9 7/8" 62.80# Q-125 TSH W523 DPLS WEARSOX CENT NEW BARE WHITE | C | DOPELESS CONNS | 1 | 37.45 | 2,351.86 | 1.18 |
| CASING | 9 7/8" 62.80# Q-125 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 3 | 136.00 | 8,541.01 | 4.27 |
| CASING | 9 7/8" 62.80# Q-125 HC SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | WEARSOX CENT (2) | 3 | 135.45 | 8,506.26 | 4.25 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) USED BARE YELLOW | C | READY TO RUN | 2 | 81.81 | 5,137.67 | 2.57 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 39.80 | 2,499.44 | 1.25 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | WEARSOX CENT | 4 | 155.62 | 9,772.94 | 4.89 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL 72733 | 13 | 587.95 | 36,923.26 | 18.46 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 27 | 1,063.34 | 66,777.75 | 33.39 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | DOPELESS CONNS | 40 | 1,598.64 | 100,394.87 | 50.20 |
| CASING | 9 7/8" 64.10# Q-125 VAM SLII II INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 1 | 36.70 | 2,352.47 | 1.18 |
| CASING | 9 7/8" 64.10# Q-125 SLIIII INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 15 | 659.70 | 42,286.77 | 21.14 |
| CASING | 9 7/8" 64.10# Q-125 SLIIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 27 | 1,180.90 | 75,695.69 | 37.85 |
| CASING | 9 7/8" 64.10# Q-125 SLIIII WEARSOX CENT USED BARE NONE | C | NOT TVI INSP | 2 | 88.05 | 5,644.01 | 2.82 |
| CASING | 9 7/8" 64.10# Q-125 SLIIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER - MOLD ON (1) | 4 | 175.20 | 11,230.32 | 5.62 |
| CASING | 9 7/8" 64.10# Q-125 SLIIII WEARSOX CENT NEW BARE WHITE | C | OCR127 | 10 | 441.30 | 28,287.33 | 14.14 |
| CASING | 9 7/8" 64.10# Q-125 SLIIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 544 | 23,402.00 | 1,500,068.20 | 750.03 |
| CASING | 10 1/8" 79.22# JFE-125T SLIIII GUIDE SHOE NEW BARE WHITE | C | READY TO RUN | 2 | 91.20 | 7,224.86 | 3.61 |
| CASING | 10 1/8" 79.22# JFE-125T SLIIII CENT SUB NEW BARE WHITE | C | READY TO RUN | 84 | 3,799.25 | 300,976.59 | 150.49 |
| CASING | 10 1/8" 79.29# Q125 ICY TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 16 | 712.00 | 56,454.48 | 28.23 |
| CASING | 10 3/4" 45.50# HCN-80 BUTTRESS T&C NEW BARE WH-G-R | C | BAD PIN | 1 | 46.50 | 2,115.75 | 1.06 |
| CASING | 10 3/4" 45.50# HCN-80 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 4 | 179.30 | 8,158.15 | 4.08 |
| CASING | 10 3/4" 45.50# HCN-80 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 9 | 402.55 | 18,316.03 | 9.16 |

INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 5 | 207.60 | 9,445.80 | 4.72 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS FLOAT COLLAR NEW BARE WHITE | C | READY TO RUN | 1 | 45.50 | 2,070.25 | 1.04 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 45.00 | 2,047.50 | 1.02 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS HANGER NEW BARE WHITE* | C | READY TO RUN | 1 | 42.10 | 1,915.55 | 0.96 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-R-G | C | BAD BOX | 2 | 89.45 | 4,069.98 | 2.03 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 1 | 40.10 | 1,824.55 | 0.91 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 2 | 81.75 | 3,719.63 | 1.86 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C USED BARE NONE | C | CUT OFF PIN | 1 | 44.00 | 2,002.00 | 1.00 |
| CASING | 10 3/4" 45.50# L-80 DUTCHMAN T&C USED BARE NONE | C | CUT OFF PIN | 1 | 44.00 | 2,002.00 | 1.00 |
| CASING | 10 3/4" 45.50# L-80 BUTTRESS T&C NEW BARE WHITE | C | OCR127 | 1 | 43.70 | 1,988.35 | 0.99 |
| CASING | 10 3/4" 45.50# L-80 DUTCHMAN T&C USED BARE NONE | C | CUT OFF EA. END | 2 | 88.00 | 4,004.00 | 2.00 |
| CASING | 10 3/4" 45.50# L-80 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 5 | 217.15 | 9,880.33 | 4.94 |
| CASING | 10 3/4" 45.50# P-110 IC BUTTRESS T&C USED BARE NONE | C | NOT TVI INSP | 1 | 44.00 | 2,002.00 | 1.00 |
| CASING | 10 3/4" 45.50# P-110 IC BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 3 | 118.20 | 5,378.10 | 2.69 |
| CASING | 10 3/4" 45.50# P-110 IC BUTTRESS T&C NEW BARE WHITE | C | KENDEX | 11 | 441.05 | 20,067.78 | 10.03 |
| CASING | 10 3/4" 59.45# HCQ-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 492 | 22,643.90 | 1,346,179.81 | 673.09 |
| CASING | 10 3/4" 60.70# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 41.85 | 2,540.30 | 1.27 |
| CASING | 10 3/4" 60.70# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 4 | 168.60 | 10,234.02 | 5.12 |
| CASING | 10 3/4" 65.70# Q-125 HC SLIIII INTEGRAL JOINT (IJ) USED BARE YEL-RD | C | BAD BOX | 1 | 44.95 | 2,953.22 | 1.48 |
| CASING | 10 3/4" 65.70# Q-125 HC SLIIII INTEGRAL JOINT (IJ) USED BARE YEL-RD | C | BAD PIN | 2 | 87.10 | 5,722.47 | 2.86 |
| CASING | 10 3/4" 65.70# Q-125 HC SLIIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 11 | 480.93 | 31,597.10 | 15.80 |
| CASING | 10 3/4" 72.40# Q-125 PLAIN END PLAIN NEW BARE NONE | C | NO COMMENTS | 153 | 6,048.10 | 437,882.44 | 218.94 |
| CASING | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS NEW BARE WH-RD | C | BAD PIN | 9 | 383.20 | 28,050.24 | 14.03 |
| CASING | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS CONNS | C | DOPELESS CONNS | 13 | 510.05 | 37,335.66 | 18.67 |
| CASING | 11 3/4" 65.30# Q125 ICY MAC II INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 18 | 793.90 | 67,720.05 | 33.86 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN AND BOX | 2 | 82.30 | 5,349.50 | 2.67 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN AND BOX | 15 | 620.45 | 40,329.25 | 20.16 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 42.90 | 2,788.50 | 1.39 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 40.45 | 2,629.25 | 1.31 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 FLOAT COLLAR NEW BARE WHITE | C | READY TO RUN | 1 | 43.00 | 2,795.00 | 1.40 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 42.50 | 2,762.50 | 1.38 |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 2 | 81.65 | 5,307.25 | 2.65 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER - MOLD ON (2) | 3 | 122.85 | 7,985.25 | 3.99 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN AND BOX | 1 | 44.65 | 2,902.25 | 1.45 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 42.75 | 2,778.75 | 1.39 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 13 | 558.55 | 36,305.75 | 18.15 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 1 | 42.80 | 2,782.00 | 1.39 |
| CASING | 11 3/4" 65.00# Q-125 HC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 9 | 352.75 | 22,928.75 | 11.46 |
| CASING | 11 3/4" 65.00# Q-125 IC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 18 | 732.25 | 47,596.07 | 23.80 |
| CASING | 11 3/4" 69.48# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 12 | 505.90 | 35,149.93 | 17.57 |
| CASING | 11 3/4" 69.48# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN | 13 | 549.50 | 38,179.26 | 19.09 |
| CASING | 11 7/8" 70.26# Q125 XHP TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 85 | 3,633.50 | 255,289.91 | 127.64 |
| CASING | 11 7/8" 70.26# VM-125-HC PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 121 | 5,396.20 | 379,137.01 | 189.57 |
| CASING | 11 7/8" 71.80# HCQ-125 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 142 | 6,238.45 | 447,920.71 | 223.96 |
| CASING | 11 7/8" 71.80# HCQ-125 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 26 | 1,124.57 | 80,744.34 | 40.37 |
| CASING | 11 7/8" 71.80# HCQ-125 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 1 | 42.95 | 3,083.81 | 1.54 |
| CASING | 11 7/8" 71.80# HCQ-125 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 20 | 853.31 | 61,267.30 | 30.63 |
| CASING | 11 7/8" 71.80# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 10 | 427.95 | 30,726.81 | 15.36 |
| CASING | 11 7/8" 71.80# IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 11 | 504.00 | 36,187.20 | 18.09 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 19 | 869.20 | 62,408.56 | 31.20 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN AND BOX | 3 | 137.30 | 9,858.14 | 4.93 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 21 | 954.85 | 68,558.23 | 34.28 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN BOL PTC | 18 | 822.38 | 59,046.84 | 29.52 |
| CASING | 11 7/8" 71.80# TN-125-HC TSH 523 DPLS CENT SUB NEW BARE WH-GRN | C | NO HEAT # | 1 | 48.80 | 3,503.84 | 1.75 |
| CASING | 11 7/8" 71.80# TN-125-HC TSH 523 DPLS CENT SUB NEW BARE WH-RD | C | BAD BOX | 5 | 223.75 | 16,065.25 | 8.03 |
| CASING | 11 7/8" 71.80# TN-125-HC TSH 523 DPLS CENT SUB NEW BARE WHITE | C | READY TO RUN | 42 | 1,918.95 | 137,780.61 | 68.89 |
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS FLOAT SHOE NEW BARE WHITE | C | OCR127 | 1 | 42.65 | 2,900.20 | 1.45 |
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS FLOAT COLLAR NEW BARE WHITE | C | OCR127 | 1 | 42.75 | 2,907.00 | 1.45 |
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 3 | 120.65 | 8,204.20 | 4.10 |

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**INVENTORY SUMMARY CURRENT BALANCE**

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS T&C NEW BARE WH-RD | C | BAD COUPLING | 3 | 122.55 | 8,333.40 | 4.17 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 42.12 | 2,864.16 | 1.43 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS FLOAT COLLAR NEW BARE WHITE | C | READY TO RUN | 1 | 43.00 | 2,924.00 | 1.46 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WHITE | C | REPAIRED | 2 | 90.38 | 6,145.84 | 3.07 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN | 1 | 43.00 | 2,924.00 | 1.46 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-RD* | C | BAD BOX | 1 | 45.50 | 3,094.00 | 1.55 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 2 | 88.90 | 6,045.20 | 3.02 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 9 | 404.19 | 27,484.92 | 13.74 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 9 | 407.65 | 27,720.20 | 13.86 |
| CASING | 13 3/8" 68.00# NT-80 GB BUTTRESS T&C SCC NEW BARE WH-G-R | C | BAD PIN AND BOX | 1 | 42.50 | 2,890.00 | 1.45 |
| CASING | 13 3/8" 68.00# NT80LHE DUTCHMAN/CUT-OFF PIN T&C USED BARE NONE | C | NOT TVI INSP | 2 | 89.00 | 6,052.00 | 3.03 |
| CASING | 13 3/8" 68.00# NT80LHE CUT OFF PIN CUT OFF USED BARE NONE | C | NOT TVI INSP | 1 | 18.00 | 1,224.00 | 0.61 |
| CASING | 13 3/8" 68.00# NT80LHE BUTTRESS T&C NEW BARE WHITE | C | NO COMMENTS | 2 | 87.30 | 5,936.40 | 2.97 |
| CASING | 13 3/8" 70.67# P-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 3 | 119.75 | 8,462.73 | 4.23 |
| CASING | 13 3/8" 70.67# P-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 2 | 83.00 | 5,865.61 | 2.93 |
| CASING | 13 3/8" 72.00# HCP-110 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 1 | 45.90 | 3,304.80 | 1.65 |
| CASING | 13 3/8" 72.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 1 | 44.50 | 3,204.00 | 1.60 |
| CASING | 13 3/8" 72.00# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 1 | 40.80 | 2,937.60 | 1.47 |
| CASING | 13 3/8" 72.00# HCP-110 BUTTRESS T&C NEW BARE WHT-GR | C | READY TO RUN | 2 | 80.75 | 5,814.00 | 2.91 |
| CASING | 13 3/8" 72.00# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN BOL PTC | 12 | 489.30 | 35,229.60 | 17.61 |
| CASING | 13 3/8" HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 8 | 334.85 | 24,109.20 | 12.05 |
| CASING | 13 3/8" 72.00# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 6 | 255.10 | 18,367.20 | 9.18 |
| CASING | 13 3/8" 72.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | READY TO RUN | 6 | 252.10 | 18,151.20 | 9.08 |
| CASING | 13 3/8" 72.00# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | BAD BOX | 1 | 43.35 | 3,121.20 | 1.56 |
| CASING | 13 3/8" 72.00# HCQ-125 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 2 | 85.35 | 6,145.20 | 3.07 |
| CASING | 13 3/8" 72.00# HCQ-125 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 6 | 246.25 | 17,730.00 | 8.87 |
| CASING | 13 3/8" 72.00# P-110 IC BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 7 | 329.15 | 23,699.11 | 11.85 |
| CASING | 13 5/8" 88.20# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN AND BOX | 1 | 45.30 | 3,995.46 | 2.00 |
| CASING | 13 5/8" 88.20# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 2 | 87.40 | 7,708.68 | 3.85 |

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 13 5/8" 88.20# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 4 | 178.85 | 15,774.57 | 7.89 |
| CASING | 13 5/8" 88.20# JFE-125T GB CDE BUTTRESS T&C NEW BARE WH-RD | C | BAD BOX | 1 | 42.50 | 3,748.50 | 1.87 |
| CASING | 13 5/8" 88.20# JFE-125T GB CDE BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 1 | 43.15 | 3,805.83 | 1.90 |
| CASING | 13 5/8" 88.20# Q-125 SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 42 | 1,789.70 | 157,851.54 | 78.93 |
| CASING | 13 5/8" 88.20# Q-125 HC SLIII INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 1 | 44.00 | 3,880.80 | 1.94 |
| CASING | 13 5/8" 88.20# Q-125 HC SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER - SLIP ON (1) | 4 | 172.90 | 15,249.78 | 7.62 |
| CASING | 13 5/8" 88.20# Q-125 HC SLIII INTEGRAL JOINT (IJ) NEW BARE WH-GR2 | C | OCR127 | 4 | 162.95 | 14,372.19 | 7.19 |
| CASING | 13 5/8" 88.20# SM-125SS SLIII INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 2 | 88.00 | 7,761.60 | 3.88 |
| CASING | 13 5/8" 88.20# SM-125SS SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 9 | 361.35 | 31,871.07 | 15.94 |
| CASING | 13 5/8" 88.20# SM-125TT SLIII INTEGRAL JOINT (IJ) NEW BARE WH-GR2 | C | OCR127 | 10 | 399.25 | 35,213.85 | 17.61 |
| CASING | 14" 112.89# Q125-IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 29 | 1,218.40 | 137,545.18 | 68.77 |
| CASING | 14" 115.53# Q125 ICY TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-PUR | C | OCR127 INSP | 35 | 1,395.20 | 161,187.46 | 80.59 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 42.25 | 2,746.25 | 1.37 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C USED BARE NONE | C | NOT TVI INSP | 2 | 77.20 | 5,018.00 | 2.51 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WH-RD | C | BAD COUPLING | 1 | 35.00 | 2,275.00 | 1.14 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WHITE | C | OCR127 | 10 | 418.25 | 27,186.25 | 13.59 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WHITE | C | BAD PIN | 2 | 70.55 | 4,585.75 | 2.29 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WH-R-G | C | BAD PIN | 5 | 212.90 | 13,838.50 | 6.92 |
| CASING | 16" 94.81# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 1 | 36.35 | 3,446.34 | 1.72 |
| CASING | 16" 94.81# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 3 | 123.60 | 11,718.52 | 5.86 |
| CASING | 16" 94.81# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 4 | 164.10 | 15,558.32 | 7.78 |
| CASING | 16" 94.81# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 1 | 43.50 | 4,124.24 | 2.06 |
| CASING | 16" 94.81# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 5 | 216.60 | 20,535.85 | 10.27 |
| CASING | 16" 94.81# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 6 | 254.65 | 24,143.37 | 12.07 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-RD* | C | BAD BOX | 1 | 44.50 | 4,316.50 | 2.16 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-GRN-RD | C | BAD PIN AND BOX | 1 | 38.75 | 3,758.75 | 1.88 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN AND BOX | 1 | 41.95 | 4,069.15 | 2.03 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 2 | 90.85 | 8,812.45 | 4.41 |
| CASING | 16" 97.00# Q125 HP SLSF FLUSH JOINT NEW BARE WHITE | C | OCR127 INSP | 605 | 25,227.55 | 2,447,072.35 | 1,223.54 |
| CASING | 16" 97.00# Q125 HP BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 22 | 908.50 | 88,124.50 | 44.06 |
| CASING | 18" 116.09# Q125 HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | OCR127 | 1 | 39.15 | 4,544.92 | 2.27 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE LLC
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**INVENTORY SUMMARY CURRENT BALANCE**

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 18" 116.09# Q125 HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 230 | 8,974.52 | 1,041,852.03 | 520.93 |
| CASING | 18" 117.00# Q-125-HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER SUB | 4 | 170.20 | 19,913.40 | 9.96 |
| CASING | 18" 117.00# Q-125-HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 10 | 406.55 | 47,566.35 | 23.78 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS FLOAT COLLAR NEW BARE WH-GRN | C | NO HEAT # | 1 | 40.80 | 3,570.00 | 1.79 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 43.60 | 3,815.00 | 1.91 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS FLOAT SHOE NEW BARE WH-GRN | C | NO HEAT # | 1 | 45.80 | 4,007.50 | 2.00 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS HANGER NEW BARE WH-GRN | C | NO HEAT # | 1 | 44.35 | 3,880.63 | 1.94 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS T&C USED BARE NONE | C | CUT OFF PIN | 1 | 24.00 | 2,100.00 | 1.05 |
| CASING | 18 5/8" 87.50# J-55 DUTCHMAN T&C USED BARE NONE | C | CUT OFF EA. END | 2 | 75.00 | 6,562.50 | 3.28 |
| CASING | 18 5/8" 99.50# J-55 BUTTRESS SPECIAL CLEAR. BBE NEW BARE WH-GRN | C | NO HEAT # | 8 | 337.15 | 33,546.43 | 16.77 |
| CASING | 20" 94.00# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 19 | 865.54 | 81,360.76 | 40.68 |
| CASING | 20" 106.50# J-55 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 4 | 173.50 | 18,477.75 | 9.24 |
| CASING | 20" 133.00# X-56 GB BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 2 | 87.50 | 11,637.50 | 5.82 |
| CASING | 20" 133.00# X-56 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 11 | 478.85 | 63,687.05 | 31.84 |
| CASING | 20" 169.00# X-56 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 10 | 444.85 | 75,179.65 | 37.59 |
| TUBING | 2 3/8" 4.70# BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 5 | 158.50 | 744.95 | 0.37 |
| TUBING | 2 3/8" 4.70# 13CR85 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 6 | 190.95 | 897.47 | 0.45 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE* | C | BENT TUBE | 1 | 31.70 | 206.05 | 0.10 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 31.70 | 206.05 | 0.10 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE NONE | C | NOT TVI INSP | 2 | 62.80 | 408.20 | 0.20 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 15 | 474.65 | 3,085.23 | 1.54 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 54 | 1,714.15 | 11,141.98 | 5.57 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 68 | 2,158.45 | 14,029.93 | 7.01 |
| TUBING | 2 7/8" 6.50# 13CR95 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | KENDEX | 1 | 31.75 | 206.38 | 0.10 |
| TUBING | 2 7/8" 6.50# 13CR95 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 54 | 1,701.80 | 11,061.70 | 5.53 |
| TUBING | 2 7/8" 6.50# 13CR95 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 1 | 31.80 | 206.70 | 0.10 |
| TUBING | 2 7/8" 6.50# 13CR95 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 22 | 694.80 | 4,516.20 | 2.26 |
| TUBING | 2 7/8" 6.50# JFE-13CR-95 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 3 | 95.05 | 617.83 | 0.31 |
| TUBING | 2 7/8" 6.50# L-80 BTS-8PR INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 1 | 31.25 | 203.13 | 0.10 |
| TUBING | 2 7/8" 7.90# 13CR110 BTS-6 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 10 | 315.05 | 2,488.90 | 1.24 |
| TUBING | 3 1/2" 9.30# L-80 1% CR API 8RD EUE MODIFIED T&C NEW TK-70 WHITE | C | OCR127 | 11 | 352.25 | 3,275.93 | 1.64 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

# INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| TUBING | 3 1/2" 12.95# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 44 | 1,394.95 | 18,064.60 | 9.03 |
| TUBING | 4 1/2" 15.00# HCP-110 ULTRA SF FLUSH JOINT NEW BARE WHITE | C | READY TO RUN | 17 | 710.00 | 10,650.00 | 5.33 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C USED BARE YEL-RD | C | BAD PIN AND BOX | 1 | 43.30 | 653.83 | 0.33 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C NEW BARE WH-RD | C | BAD PIN | 2 | 79.95 | 1,207.25 | 0.60 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | BOLSTERED - KENDEX | 21 | 902.65 | 13,630.02 | 6.82 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | BOLSTERED | 12 | 519.30 | 7,841.43 | 3.92 |
| TUBING | 4 1/2" 15.20# 13CR95 JFE LION CR T&C UNKNOWN BARE NONE | C | BENT TUBE | 1 | 44.00 | 668.80 | 0.33 |
| TUBING | 4 1/2" 15.50# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) USED BARE RED | C | INSP REJECT | 2 | 78.05 | 1,209.78 | 0.60 |
| TUBING | 4 1/2" 15.50# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | A | STORAGE ONLY | 15 | 593.35 | 9,196.93 | 4.60 |
| TUBING | 4 1/2" 15.50# L80 BTS-6PR INTEGRAL JOINT (IJ) NEW TK-34 XT WHITE* | C | READY TO RUN | 12 | 379.40 | 5,880.70 | 2.94 |
| TUBING | 4 1/2" 17.00# VM-110 13CR55 VAM TOP HC T&C NEW BARE WHITE | C | BOLSTERED - KENDEX | 4 | 171.00 | 2,907.00 | 1.45 |
| TUBING | 5 1/2" 23.00# 13CR95 BTS-6 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | A | STORAGE ONLY | 23 | 910.04 | 20,930.92 | 10.47 |
| TUBING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C UNKNOWN BARE NONE | A | TO BE INSPECTED | 40 | 1,760.00 | 40,480.00 | 20.24 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD PIN AND BOX | 1 | 44.00 | 1,144.00 | 0.57 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD BOX | 2 | 88.00 | 2,288.00 | 1.14 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD PIN | 3 | 132.00 | 3,432.00 | 1.72 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WHITE | I | BAD PIN | 45 | 1,980.00 | 51,480.00 | 25.74 |
| TUBING | 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C USED BARE NONE | A | STORAGE ONLY | 281 | 12,364.00 | 321,464.00 | 160.73 |
| TUBING | 5 1/2" 29.70# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD PIN AND BOX | 3 | 132.00 | 3,920.40 | 1.96 |
| TUBING | 5 1/2" 29.70# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD PIN | 5 | 220.00 | 6,534.00 | 3.27 |
| TUBING | 5 1/2" 29.70# HP213CR110 JFE LION T&C NEW BARE WHITE | I | BAD PIN | 40 | 1,760.00 | 52,272.00 | 26.14 |
| TUBING | 5 1/2" 29.70# HP2-13CR110 JFE LION CR T&C USED BARE NONE | A | STORAGE ONLY | 6 | 264.00 | 7,840.80 | 3.92 |
| VIT | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) VAM DRS NA T&C USED BARE WH-RD* | C | BAD PIN | 1 | 39.60 | 1,816.85 | 0.91 |
| VIT | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) VAM DRS NA T&C USED BARE WHITE | C | BOLSTERED - KENDEX | 58 | 2,300.30 | 105,537.76 | 52.77 |
| VIT | 7 1/16" X 5 1/2" 40.40# 29.70# (70.10#) HP213CR115(O) HP213CR115(I) VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 8 | 291.12 | 20,407.51 | 10.20 |
| | **CUSTOMER TOTALS:** | | | 8,201 | 349,446.14 | 18,171,060.34 | 9,085.53 |

**TUBOSCOPE GOLD™**

Copyright 2005. National Oilwell Varco, L.P.

# Tuboscope | NOV Wellbore Technologies

ORIGINAL

**Invoice: 5302800**

National Oilwell Varco, LP dba Tuboscope
LEDGER NO. 002

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax:

| AFE NUMBER | SALES ORDER # | | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|
| FW192008 | 4316710 | SR | 06/29/20 | 2000706 | 1 of 2 |
| **CUSTOMER NUMBER** | **CUSTOMER REF** | | **FREIGHT TERMS** | | |
| 945319 | 20373 | | Carriage and Insurance Paid To | | |
| **FINAL DESTINATION** | **GOLD WO NUMBER** | | **KEY REF** 580002 | | |
| UNITED STATES | 7805505 | | | | |
| **TERMS:** Net 30 Days | | | **REF 2** | | |
| **WELL DESCRIPTION:** GC 200 TA-2 S/T | | | **REF 3** | | |

## *Invoice*

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: TUBING UNKNOWN BARE 4 1/2 15.50# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) R-3 JFE SEAMLESS STORAGE ONLY TRACKING #: 7805505 TOTAL LENGTH: 593.35 TOTAL JOINTS: 15 | | | | |
| 1.000 | **706F-TB** LOADING/UNLOADING MINIMUM CHARGE - UNLOADING | 1.00 | JT | 183.7500 | 183.75 |
| | | | **SUBTOTAL** | | 183.75 |
| | ITEM# 02: TUBING UNKNOWN BARE 5 1/2 23.00# 13CR95 BTS-6 INTEGRAL JOINT (IJ) R-3 JFE SEAMLESS STORAGE ONLY TRACKING #: 7805505 TOTAL LENGTH: 910.04 TOTAL JOINTS: 23 | | | | |
| 2.000 | **706F-TB** LOADING/UNLOADING MINIMUM CHARGE - UNLOADING | 23.00 | JT | | |

CONTINUED NEXT PAGE

# Tuboscope | NOV Wellbore Technologies

Invoice: 5302800

**ORIGINAL**
Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative. | | | | |

| | | | |
|---|---|---|---|
| | | Subtotal | 183.75 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD** Total | | **183.75** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

National Oilwell Varco, LP dba
Tuboscope
PO Box 201177
Dallas TX 75320-1177

**Wire Instructions (Wires Only)**

Wells Fargo Bank
Acct: 4496880188
ABA: 121000248
SWIFT: WFBIUS6S

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**RECEIVING REPORT**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX US 77042-3623
ATTN  ACCOUNTS PAYABLE

| | | | |
|---|---|---|---|
| **END USER** ACCOUNTS PAYABLE | | **DATE** | 6/24/2020 |
| **WITH** FIELDWOOD ENERGY LLC | | **LOCATION NAME** | AMELIA FACILITY |
| | | **REPORT #** | 5378923 |
| | | **WORK ORDER #** | 7805505 - 01 |
| | | **WELL CHARGE** | GC 200 TA-2 S/T |
| | | **AFE #** | FW192008 |
| | | **PO/KEY REF** | 580002 |
| | | **REFERENCE 2** | |
| | | **REFERENCE 3** | |
| | | **SUPPLIED BY** | FIELDWOOD ENERGY LLC |

---

**RACK: AR30 - A**      **TRACKING NO 7805505**

UNKNOWN TUBING  STORAGE ONLY BARE  4 1/2" 15.50# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) R-3 JFE SEAMLESS NONE

| | | | | | | |
|---|---|---|---|---|---|---|
| 6/24/2020 9:50:51 AM | LOG NO 6845740-1 | AEL | HENRY | TRUCK NO 52030 | 15 PCS | 593.35 |

| | | |
|---|---|---|
| **Total For Rack AR30** | **15 PCS** | **593.35** |
| **TOTAL FOR ALL RACKS 15 PCS** | | **593.35** |

**COMMENTS**

**RELEASE COMMENTS**

**RELEASE NOTES**

MATERIAL IS RECEIVED BY JOINT COUNT ONLY. ACUTUAL LENGTH MAY VARY
DRIVER: SIGNATURE ON FILE          EMPLOYEE: SIGNATURE ON FILE

TUBOSCOPE GOLD™

Printed on Thursday  June 25  2020 8:22:20 AM

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**RECEIVING REPORT**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX US 77042-3623
ATTN ACCOUNTS PAYABLE

**END USER** ACCOUNTS PAYABLE
**WITH**      FIELDWOOD ENERGY LLC

| | |
|---|---|
| DATE | 6/24/2020 |
| LOCATION NAME | AMELIA FACILITY |
| REPORT # | 5378924 |
| WORK ORDER # | 7805505 - 02 |
| WELL CHARGE | GC 200 TA-2 S/T |
| AFE # | FW192008 |
| PO/KEY REF | 580002 |
| REFERENCE 2 | |
| REFERENCE 3 | |
| SUPPLIED BY | FIELDWOOD ENERGY LLC |

---

**RACK: AR30 - A**     **TRACKING NO 7805505**

UNKNOWN TUBING  STORAGE ONLY BARE  5 1/2" 23.00# 13CR95 BTS-6 INTEGRAL JOINT (IJ) R-3 JFE SEAMLESS NONE

| 6/24/2020 9:50:51 AM | LOG NO 6845740-2 | AEL | HENRY | TRUCK NO 52030 | 23 PCS | 910.04 |
|---|---|---|---|---|---|---|
| | **Total For Rack AR30** | | | | **23 PCS** | **910.04** |
| | | | | **TOTAL FOR ALL RACKS** | **23 PCS** | **910.04** |

**COMMENTS**
**RELEASE COMMENTS**
**RELEASE NOTES**

MATERIAL IS RECEIVED BY JOINT COUNT ONLY. ACUTUAL LENGTH MAY VARY
DRIVER: SIGNATURE ON FILE          EMPLOYEE: SIGNATURE ON FILE

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

Printed on Thursday June 25 2020 8:22:42 AM

Page 1 of 1

**Robison, Wendy P**

| | |
|---|---|
| **From:** | Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com> |
| **Sent:** | Monday, June 29, 2020 7:17 AM |
| **To:** | Robison, Wendy P |
| **Subject:** | [EXTERNAL] Fieldwood Energy LLC Purchase Order #20373 |
| **Attachments:** | purchase_order.html |



## Fieldwood Energy LLC Purchase Order #20373

Powered by 

| **Create Invoice** | **Acknowledge PO** | **Add Shipment Tracking** | **Add Comment** |
|---|---|---|---|

View PO

| Login |
|---|

**Note:** This PO has additional file attachments. To view them online, please click here.



# Fieldwood Energy LLC
# PURCHASE ORDER

**TUBOSCOPE**
7909 PARKWOOD CIRCLE DRIVE
HOUSTON, TX 77036
Attn: Krystal Suarez
Krystal.Suarez@nov.com
Phone: +1 (346) 223-6319

Ship To
Fieldwood Energy LLC
108 Galbert Road
Lafayette, LA 70506
Attn: Darren Broussard

| | |
|---|---|
| PO NUMBER | **20373** |
| DATE | **06/29/20** |
| SHIPPING TERMS | **CPT** |
| CONTRACT | |
| CONTACT | **Darren Broussard** |
| | **darren.broussard@fwellc.com** |

Bill To
Fieldwood Energy LLC
2000 W Sam Houston Pkwy S
Suite 1200
Houston, Texas 77042
Attn:

| Line | Description | Need By Date | AFE # | Platform | Qty | Unit | Price | Total |
|---|---|---|---|---|---|---|---|---|
| 1 | UNLOADING MINIMUM CHARGE | 06/25/20 | | | 1 | Each | 183.75 | 183.75 |

**183.75** USD

**FIELDWOOD ENERGY LLC PURCHASE ORDER TERMS AND CONDITIONS**

# Tuboscope | NOV Wellbore Technologies

ORIGINAL

**Invoice: 5313653**

National Oilwell Varco, LP dba Tuboscope

LEDGER NO. 002

1844 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (985) 631-9596

| AFE NUMBER | SALES ORDER # | | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|
| FW202002 | 4330770 | SR | 07/21/20 | 2006533 | 1 of 7 |
| **CUSTOMER NUMBER** 945319 | **CUSTOMER REF** PO # 24173 | | **FREIGHT TERMS** Carriage and Insurance Paid To | | |
| **FINAL DESTINATION** UNITED STATES | **GOLD WO NUMBER** 7800124 | | **KEY REF** ROUTING# 580002 | | |
| **TERMS:** Net 30 Days | | | **REF 2** RETURN | | |
| **WELL DESCRIPTION:** GC 40 #1 | | | **REF 3** ROWAN RESOLUTE | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:** FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:** TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: TUBING NEW BARE 5 1/2 29.70# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127 TRACKING #: 7800124 TOTAL LENGTH: 2048.45 TOTAL JOINTS: 48 | | | | |
| 1.000 | 203B-TB VISUAL THREAD INSPECTION | 48.00 | JT | 18.1300 | 870.24 |
| 1.001 | 700L-TB UNLOADING (RETURN FROM WELL) | 608.39 | CW | .4000 | 243.36 |
| 1.002 | 99ZC-TB THREAD COMP REDOPE OCR127 | 48.00 | JT | 2.0500 | 98.40 |
| 1.003 | 536D-TB UNBOLSTER 147 JOINTS | 13.00 | EA | 257.2500 | 3,344.25 |
| 1.004 | 730P-TB INNER YARD MOVEMENT TO AND FROM INSPECTION | 608.39 | CW | .4000 | 243.36 |
| 1.005 | 730P-TB INNER YARD MOVEMENT TO AND FROM UN-BOLSTER | 608.39 | CW | .4000 | 243.36 |

CONTINUED NEXT PAGE

**Tuboscope** | **NOV** Wellbore Technologies

Invoice: 5313653

ORIGINAL

Page 2 of 7

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 1.006 | 300P-TB<br>FULL LENGTH DRIFT INSP | 48.00 | JT | 5.9000 | 283.20 |
| 1.007 | 380J-TB<br>INSPECTION SALTWATER CONTAMINATION TEST<br>10% SALWATER TEST - 5 JOINTS | 5.00 | JT | 8.0000 | 40.00 |
| 1.008 | 98AA-TB<br>CLEANING SOLVENT | 48.00 | JT | 1.4200 | 68.16 |
| 1.009 | 450C-TB<br>BRUSH & SPRAY  (OD) | 48.00 | JT | 24.4000 | 1,171.20 |
| 1.010 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM REBOLSTER - 40 JOINTS | 506.99 | CW | .4000 | 202.80 |
| 1.011 | 536G-TB<br>REBOLSTER<br>126 JOINTS | 13.00 | EA | 257.2500 | 3,344.25 |
| | | | **SUBTOTAL** | | 10,152.58 |
| | ITEM# 02: CASING NEW BARE 4 1/2 18.90# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127<br>TRACKING #: 7800124 TOTAL LENGTH: 2023.3 TOTAL JOINTS: 48 | | | | |
| 2.000 | 203B-TB<br>VISUAL THREAD INSPECTION | 48.00 | JT | 18.1300 | 870.24 |
| 2.001 | 700L-TB<br>UNLOADING (RETURN FROM WELL) | 382.40 | CW | .4000 | 152.96 |
| 2.002 | 99ZC-TB<br>THREAD COMP<br>REDOPE OCR127 | 48.00 | JT | 2.0500 | 98.40 |
| 2.003 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM INSPECTION | 382.40 | CW | .4000 | 152.96 |

CONTINUED NEXT PAGE

**Tuboscope | NOV** Wellbore Technologies   Invoice: 5313653

ORIGINAL
Page 3 of 7

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 2.004 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM UNBOLSTER | 382.40 | CW | .4000 | 152.96 |
| 2.005 | 300P-TB<br>FULL LENGTH DRIFT INSP | 48.00 | JT | 5.9000 | 283.20 |
| 2.006 | 380J-TB<br>INSPECTION SALTWATER CONTAMINATION TEST<br>10% SALT WATER TEST - 5 JOINTS | 5.00 | JT | 8.0000 | 40.00 |
| 2.007 | 98AA-TB<br>CLEANING SOLVENT | 48.00 | JT | 1.4200 | 68.16 |
| 2.008 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM REBOLSTER - 41 JOINTS | 326.64 | CW | .4000 | 130.66 |
| 2.009 | 450C-TB<br>BRUSH & SPRAY  (OD) | 48.00 | JT | 17.1600 | 823.68 |
| | SUBTOTAL | | | | 2,773.22 |

ITEM# 03: TUBING NEW BARE 5 1/2 26.00# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127
TRACKING #: 7800124 TOTAL LENGTH: 2183.45 TOTAL JOINTS: 51

| | | | | | |
|---|---|---|---|---|---|
| 3.000 | 203B-TB<br>VISUAL THREAD INSPECTION | 51.00 | JT | 18.1300 | 924.63 |
| 3.001 | 700L-TB<br>UNLOADING (RETURN FROM WELL) | 567.70 | CW | .4000 | 227.08 |
| 3.002 | 99ZC-TB<br>THREAD COMP<br>REDOPE OCR127 | 51.00 | JT | 2.0500 | 104.55 |
| 3.003 | 730P-TB<br>INNER YARD MOVEMENT<br>TO AND FROM INSPECTION | 567.70 | CW | .4000 | 227.08 |

CONTINUED NEXT PAGE

# Tuboscope | NOV Wellbore Technologies

Invoice: 5313653

**ORIGINAL**

Page 4 of 7

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3.004 | **730P-TB** INNER YARD MOVEMENT TO AND FROM UNBOLSTER | 567.70 | CW | .4000 | 227.08 |
| 3.005 | **300P-TB** FULL LENGTH DRIFT INSP | 51.00 | JT | 5.9000 | 300.90 |
| 3.006 | **380J-TB** INSPECTION SALTWATER CONTAMINATION TEST 10% SALT WATER TEST - 5 JOINTS | 5.00 | JT | 8.0000 | 40.00 |
| 3.007 | **98AA-TB** CLEANING SOLVENT | 51.00 | JT | 1.4200 | 72.42 |
| 3.008 | **730P-TB** INNER YARD MOVEMENT TO AND FROM REBOLSTER - 45 JOINTS | 500.91 | CW | .4000 | 200.36 |
| 3.009 | **450C-TB** BRUSH & SPRAY  (OD) | 51.00 | JT | 24.4000 | 1,244.40 |
| | | | | SUBTOTAL | 3,568.50 |
| | ITEM# 04: OTHER 5 X 5 BASKETS - ST-081, ST-004, ST-051 3 PALLETS W/ BOLSTER TRACKING #: 7800124  TOTAL JOINTS: 3 | | | | |
| 4.000 | **700L-TB** UNLOADING (RETURN FROM WELL) | 60.00 | CW | .4000 | 24.00 |
| | | | | SUBTOTAL | 24.00 |
| | ITEM# 05: PUP JOINTS USED BARE 5 1/2 29.70# HP2-13CR110 DUTCHMAN CUT OFF BOTH ENDS R-1 JFE STEEL SEAMLESS CENTRALIZER - SLIP ON (1) TRACKING #: 7800124 TOTAL LENGTH: 27 TOTAL JOINTS: 1 | | | | |
| 5.000 | **700L-TB** UNLOADING (RETURN FROM WELL) | 8.02 | CW | .4000 | 3.21 |
| | | | | SUBTOTAL | 3.21 |

CONTINUED NEXT PAGE

**Tuboscope | NOV** Wellbore Technologies

Invoice: 5313653

ORIGINAL

Page 5 of 7

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 06: PUP JOINTS USED BARE 5 1/2 29.70# HP2-13CR110 JFE LION CR R-1 JFE STEEL SEAMLESS CUT OFF BOX TRACKING #: 7800124 TOTAL LENGTH: 18.1 TOTAL JOINTS: 1 | | | | |
| 6.000 | 700L-TB UNLOADING (RETURN FROM WELL) | 5.38 | CW | .4000 | 2.15 |
| | | | | SUBTOTAL | 2.15 |
| | ITEM# 07: PUP JOINTS NEW BARE 5 1/2 26.00# HP213CR110 JFE LION T&C Any JFE SEAMLESS OCR127 TRACKING #: 7800124 TOTAL LENGTH: 47.05 TOTAL JOINTS: 7 | | | | |
| 7.000 | 203B-TB VISUAL THREAD INSPECTION | 7.00 | JT | 18.1300 | 126.91 |
| 7.001 | 700L-TB UNLOADING (RETURN FROM WELL) | 12.23 | CW | .4000 | 4.89 |
| 7.002 | 99ZC-TB THREAD COMP REDOPE OCR127 | 7.00 | JT | 2.0500 | 14.35 |
| 7.003 | 730P-TB INNER YARD MOVEMENT TO AND FROM INSPECTION | 12.23 | CW | .4000 | 4.89 |
| 7.004 | 300P-TB FULL LENGTH DRIFT INSP | 7.00 | JT | 5.9000 | 41.30 |
| 7.005 | 380J-TB INSPECTION SALTWATER CONTAMINATION TEST 10% SALWATER TEST - 1 JOINT | 1.00 | JT | 8.0000 | 8.00 |
| 7.006 | 98AA-TB CLEANING SOLVENT | 7.00 | JT | 1.4200 | 9.94 |
| 7.007 | 450C-TB BRUSH & SPRAY  (OD) | 7.00 | JT | 24.4000 | 170.80 |

CONTINUED NEXT PAGE

# Tuboscope | NOV Wellbore Technologies

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | | | | SUBTOTAL | 381.08 |
| | ITEM# 08: PUP JOINTS NEW BARE 4 1/2 15.10# HP2-13CR110 JFE LION CR T&C 4' JFE SEAMLESS OCR127 TRACKING #: 7800124 TOTAL LENGTH: 4.3 TOTAL JOINTS: 1 | | | | |
| 8.000 | 203B-TB VISUAL THREAD INSPECTION | 1.00 | JT | 18.1300 | 18.13 |
| 8.001 | 700L-TB UNLOADING (RETURN FROM WELL) | 0.65 | CW | .4000 | .26 |
| 8.002 | 99ZC-TB THREAD COMP REDOPE OCR127 | 1.00 | JT | 2.0500 | 2.05 |
| 8.003 | 730P-TB INNER YARD MOVEMENT TO AND FROM INSPECTION | 0.65 | CW | .4000 | .26 |
| 8.004 | 300P-TB FULL LENGTH DRIFT INSP | 1.00 | JT | 5.9000 | 5.90 |
| 8.005 | 380J-TB INSPECTION SALTWATER CONTAMINATION TEST 10% SALT WATER TEST | 1.00 | JT | 8.0000 | 8.00 |
| 8.006 | 98AA-TB CLEANING SOLVENT | 1.00 | JT | 1.4200 | 1.42 |
| 8.007 | 450C-TB BRUSH & SPRAY (OD) | 1.00 | JT | 17.1600 | 17.16 |
| | | | | SUBTOTAL | 53.18 |

CONTINUED NEXT PAGE

# Tuboscope | NOV Wellbore Technologies

Invoice: 5313653

ORIGINAL
Page 7 of 7

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative. | | | | |

| | | | |
|---|---|---|---|
| | | Subtotal | 16,957.92 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency:  **USD**  Total | | **16,957.92** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | **Wire Instructions (Wires Only)** |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

**Robison, Wendy P**

| | |
|---|---|
| **From:** | Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com> |
| **Sent:** | Monday, July 20, 2020 4:15 PM |
| **To:** | Robison, Wendy P |
| **Subject:** | [EXTERNAL] New PO |



# Fieldwood Energy LLC Purchase Order #24173

Powered by 

Hi Wendy ,

You have received a new purchase order #24173 from Fieldwood Energy LLC Company.

| | |
|---|---|
| Submitted By | Kerby Dufrene |
| On Behalf Of | Kerby Dufrene |
| Supplier | TUBOSCOPE |
| Total | **16,957.92** |
| Items | **Production Tubing Handling** |

**16,957.92** USD

**View Order**

## More Detail

| | | | |
|---|---|---|---|
| **PO ID** 24173 | | **Department** None |
| **Status** Issued - Scheduled for email | | **Last Opened** None |
| **Order Date** 07/20/20 | | **Acknowledged At** None |
| **Revision Date** 07/20/20 | | **Payment Term** Net 60 |
| **Req #** 24374 | | **Shipping** CPT |

**Supplier**

TUBOSCOPE 7909 PARKWOOD CIRCLE DRIVE
HOUSTON, TX 77036
United States Krystal.Suarez@nov.com +1 (346) 223-6319

**Shipping**

2000 W Sam Houston Pkwy S
Suite 1200
Houston, TX 77042
United States
Attn: Kerby Dufrene

## Lines

**Production Tubing Handling for 16,957.92**
Supplier **TUBOSCOPE** • Need By **07/15/20** • Account **AFE-FW202002-DEEPWATER-GC3940-_NA_-KATMAI-GC04001-3060-165** • Period **2020 - 07 - July**

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| DATE | 6/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 1     NEW TUBING BARE 5 1/2" 29.70# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127

| QTY | 48 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
|---|---|---|---|---|---|
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALWATER TEST - 5 JOINTS | 450C-I | BRUSH & SPRAY  (OD) |
| | | 536G-I | REBOLSTER 126 JOINTS |
| 536D-I | UNBOLSTER 147 JOINTS | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 700L-I | UNLOADING (RETURN FROM WELL) | | |
| 730P-I | INNER YARD MOVEMENT TO AND FROM UN-BOLSTER | 730P-I | INNER YARD MOVEMENT TO AND FROM REBOLSTER - 40 JOINTS |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

## SPECIFICATIONS USED – CUSTOMER  - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | VISUAL THREAD & FLD | 40 | 1,709.40 |
| MATERIAL PROCESSED AND REJECTED | WH-RD | INSPECTION REJECTS | 8 | 339.05 |
| | | TOTAL MATERIAL | 48 | 2,048.45 |

COMMENTS  SERVICED BY: LEONARD DUGAS
6/22/2020

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER #  7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | | |
|---|---|---|---|
| | | DATE | 6/30/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- **SUMMARY REPORT** -- -- -- -- -- -- -- -- -- --

ITEM # 2    NEW CASING BARE 4 1/2" 18.90# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127

| QTY | 48 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
|---|---|---|---|---|---|
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALT WATER TEST - 5 JOINTS | 450C-I | BRUSH & SPRAY  (OD) |
| 700L-I | UNLOADING (RETURN FROM WELL) | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 730P-I | INNER YARD MOVEMENT TO AND FROM UNBOLSTER | 730P-I | INNER YARD MOVEMENT TO AND FROM REBOLSTER - 41 JOINTS |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

## SPECIFICATIONS USED  - CUSTOMER  - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | VISUAL THREAD & FLD | 41 | 1,724.85 |
| MATERIAL PROCESSED AND REJECTED | WH-RD | INSPECTION REJECTS | 7 | 298.45 |
| | | TOTAL MATERIAL | 48 | 2,023.30 |

COMMENTS   SERVICED BY: LEONARD DUGAS
           6/22/2020

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER # 7800124**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | | | |
|---|---|---|---|
| | | DATE | 6/30/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 3     NEW TUBING BARE 5 1/2" 26.00# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127

| QTY | 51 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
|---|---|---|---|---|---|
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALT WATER TEST - 5 JOINTS | 450C-I | BRUSH & SPRAY (OD) |
| 700L-I | UNLOADING (RETURN FROM WELL) | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 730P-I | INNER YARD MOVEMENT TO AND FROM UNBOLSTER | 730P-I | INNER YARD MOVEMENT TO AND FROM REBOLSTER - 45 JOINTS |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

## SPECIFICATIONS USED - CUSTOMER - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | VISUAL THREAD & FLD | 45 | 1,926.05 |
| MATERIAL PROCESSED AND REJECTED | WH-RD | INSPECTION REJECTS | 6 | 257.40 |
| | | TOTAL MATERIAL | 51 | 2,183.45 |

**COMMENTS** SERVICED BY: LEONARD DUGAS
6/22/2020

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| DATE | 6/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# S80002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --

| ITEM # 4 | OTHER | 5 X 5 BASKETS - ST-081, ST-004, ST-051 | |
|---|---|---|---|

3 PALLETS W/ BOLSTER

| | | | | | |
|---|---|---|---|---|---|
| QTY | 3 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

### SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 700L-I | UNLOADING (RETURN FROM WELL) | | |

### SPECIFICATIONS USED  - CUSTOMER  - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | NONE | PER CUSTOMER SPECS | 3 | 0.00 |
| | | TOTAL MATERIAL | 3 | 0.00 |

COMMENTS

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER # 7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | | |
|---|---|---|---|
| | | DATE | 6/30/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- --

ITEM # 5     USED PUP JOINTS BARE 5 1/2" 29.70# HP2-13CR110 DUTCHMAN CUT OFF BOTH ENDS R-1 JFE STEEL SEAMLESS CENTRALIZER - SLIP ON (1)

| | | | | | |
|---|---|---|---|---|---|
| QTY | 1 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

### SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| | | 700L-I | UNLOADING (RETURN FROM WELL) |

### SPECIFICATIONS USED - CUSTOMER - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | NONE | NOT TVI INSPECTED | 1 | 27.00 |
| | | TOTAL MATERIAL | 1 | 27.00 |

COMMENTS

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7800124**

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | |
|---|---|
| DATE | 6/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# S80002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- **SUMMARY REPORT** -- -- -- -- -- -- -- -- -- --

ITEM # 6     USED PUP JOINTS BARE 5 1/2" 29.70# HP2-13CR110 JFE LION CR  R-1 JFE STEEL SEAMLESS CUT OFF BOX

| | | | | | | |
|---|---|---|---|---|---|---|
| QTY | 1 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | | |
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC | |
| LOT # | | RELEASE CO | | LOCATION | | |

### SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 700L-I | UNLOADING (RETURN FROM WELL) | | |

### SPECIFICATIONS USED  - CUSTOMER  - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | NONE | NOT TVI INSPECTED | 1 | 18.10 |
| | | TOTAL MATERIAL | 1 | 18.10 |

COMMENTS

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | | |
|---|---|---|---|
| | | DATE | 6/30/2020 |
| | | ACCOUNT # | TUB-28843-8000-SH |
| | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 7    NEW PUP JOINTS BARE 5 1/2" 26.00# HP213CR110 JFE LION T&C Any JFE SEAMLESS OCR127

| | | | | | |
|---|---|---|---|---|---|
| QTY | 7 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 300P-I | FULL LENGTH DRIFT INSP | 203B-I | VISUAL THREAD INSPECTION |
| 450C-I | BRUSH & SPRAY  (OD) | 380J-I | INSPECTION SALTWATER CONTAMINA |
| 730P-I | INNER YARD MOVEMENT | | 10% SALWATER TEST - 1 JOINT |
| | TO AND FROM INSPECTION | 700L-I | UNLOADING (RETURN FROM WELL) |
| 99ZC-I | THREAD COMP | 98AA-I | CLEANING SOLVENT |
| | REDOPE OCR127 | | |

## SPECIFICATIONS USED  - CUSTOMER  - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | VISUAL THREAD & FLD | 5 | 27.00 |
| MATERIAL PROCESSED AND REJECTED | WH-RD | INSPECTION REJECT | 2 | 20.05 |
| | | TOTAL MATERIAL | 7 | 47.05 |

COMMENTS   SERVICED BY:  LEONARD DUGAS
6/22/2020

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER #  7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

|  |  |
|---|---|
| DATE | 6/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 |

| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
|---|---|---|---|
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- --

ITEM # 8     NEW PUP JOINTS BARE 4 1/2" 15.10# HP2-13CR110 JFE LION CR T&C 4' JFE SEAMLESS OCR127

| QTY | 1 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
|---|---|---|---|---|---|
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 300P-I | FULL LENGTH DRIFT INSP | 203B-I | VISUAL THREAD INSPECTION |
| 450C-I | BRUSH & SPRAY  (OD) | 380J-I | INSPECTION SALTWATER CONTAMINA |
| 730P-I | INNER YARD MOVEMENT | | 10% SALT WATER TEST |
| | TO AND FROM INSPECTION | 700L-I | UNLOADING (RETURN FROM WELL) |
| 99ZC-I | THREAD COMP | 98AA-I | CLEANING SOLVENT |
| | REDOPE OCR127 | | |

## SPECIFICATIONS USED  - CUSTOMER - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | WHITE | VISUAL THREAD & FLD | 1 | 4.30 |
| | | TOTAL MATERIAL | 1 | 4.30 |

**COMMENTS**  SERVICED BY: LEONARD DUGAS
6/29/2020

---

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER # 7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | | |
|---|---|---|---|
| | | DATE | 6/30/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- **DEFECT REPORT** -- -- -- -- -- -- -- -- -- --

ITEM # 1    NEW TUBING BARE 5 1/2" 29.70# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127

| QTY | 48 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIED BY | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALWATER TEST - 5 JOINTS | 450C-I | BRUSH & SPRAY (OD) |
| 536D-I | UNBOLSTER 147 JOINTS | 536G-I | REBOLSTER 126 JOINTS |
| 700L-I | UNLOADING (RETURN FROM WELL) | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 730P-I | INNER YARD MOVEMENT TO AND FROM UN-BOLSTER | 730P-I | INNER YARD MOVEMENT TO AND FROM REBOLSTER - 40 JOINTS |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

### SPECIFICATIONS USED  - CUSTOMER  - API

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 2 | WH-RD | 83.95 | BAD PIN (DAMAGED SEAL) | YES |
| 2 | WH-RD | 85.65 | BAD PIN (DAMAGED SEAL ) | YES |
| 1 | WH-RD | 43.45 | BAD PIN (DAMAGED SEAL & THREADS) | YES |
| 2 | WH-RD | 84.00 | BAD BOX & BAD PIN (DAMAGED SEAL-BOX/DAMAGED SEAL PIN) | YES |
| 1 | WH-RD | 42.00 | BAD BOX & BAD PIN (PITTED SEAL-BOX/DAMAGED SEAL-PIN) | YES |

TOTAL REJECTS ON THIS PAGE

8   JTS   339.05

Repairable Joints: 8 jts -> Approximately   339.05

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER # 7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| DATE | 6/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- **DEFECT REPORT** -- -- -- -- -- -- -- -- -- --

ITEM # 2     NEW CASING BARE 4 1/2" 18.90# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127

| | | | | | |
|---|---|---|---|---|---|
| QTY | 48 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIED BY | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALT WATER TEST - 5 JOINTS | 450C-I | BRUSH & SPRAY (OD) |
| 700L-I | UNLOADING (RETURN FROM WELL) | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 730P-I | INNER YARD MOVEMENT TO AND FROM UNBOLSTER | 730P-I | INNER YARD MOVEMENT TO AND FROM REBOLSTER - 41 JOINTS |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

## SPECIFICATIONS USED  - CUSTOMER  - API

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 1 | WH-RD | 42.30 | BAD BOX & BAD PIN (GALLED THREADS-BOX/DAMAGED SEAL-PIN) | YES |
| 1 | WH-RD | 43.15 | BAD BOX & BAD PIN (GALLED THREADS) | YES |
| 1 | WH-RD | 43.15 | BAD BOX & BAD PIN (REJECTED FROM PREVIOUS INSP.) | YES |
| 2 | WH-RD | 84.70 | BAD PIN (GALLED THREADS) | YES |
| 1 | WH-RD | 43.20 | BAD BOX (GALLED THREADS) | YES |
| 1 | WH-RD | 41.95 | BAD BOX (REJECTED FROM PREVIOUS INSP.) | YES |

TOTAL REJECTS ON THIS PAGE

7    JTS    298.45

Repairable Joints: 7 jts -> Approximately   298.45

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# WORK ORDER # 7800124

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| DATE | 6/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# S80002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- --

ITEM # 3    NEW TUBING BARE 5 1/2" 26.00# HP213CR110 JFE LION T&C R-3 JFE SEAMLESS OCR127

| | | | |
|---|---|---|---|
| QTY | 51 | INSPECTION COMPLETED DATE    6/30/2020 | Inventory Ref |
| HEAT # | | RELEASE # | SUPPLIED BY   FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | LOCATION |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALT WATER TEST - 5 JOINTS | 450C-I | BRUSH & SPRAY  (OD) |
| 700L-I | UNLOADING (RETURN FROM WELL) | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 730P-I | INNER YARD MOVEMENT TO AND FROM UNBOLSTER | 730P-I | INNER YARD MOVEMENT TO AND FROM REBOLSTER - 45 JOINTS |
| 98AA-I | CLEANING SOLVENT | 992C-I | THREAD COMP REDOPE OCR127 |

## SPECIFICATIONS USED  - CUSTOMER  - API

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 1 | WH-RD | 43.30 | BAD PIN (GALLED THREADS) | YES |
| 1 | WH-RD | 43.25 | BAD PIN (DAMAGED SEAL) | YES |
| 1 | WH-RD | 42.75 | BAD BOX & BAD PIN (DAMAGED CPLG-BOX/PITTED SEAL-PIN) | YES |
| 1 | WH-RD | 42.15 | BAD BOX (DAMAGED CPLG.) | YES |
| 1 | WH-RD | 43.25 | BAD PIN (PITTED SEAL) | YES |
| 1 | WH-RD | 42.70 | BAD BOX (GALLED THREADS) | YES |

TOTAL REJECTS ON THIS PAGE

6    JTS   257.40

Repairable Joints: 6 jts -> Approximately   257.40

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER # 7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | |
|---|---|---|
| | **DATE** | 6/30/2020 |
| | **ACCOUNT #** | TUB-28843-B000-SH |
| | **WELL CHARGE** | GC 40 #1 |
| **ATTN** | ACCOUNTS PAYABLE | **AFE #** | FW202002 |
| **ORDERED BY** | ACCOUNTS PAYABLE | **PO/KEY REFERENCE** | ROUTING# 580002 |
| **ORDER #** | | **REFERENCE 2** | RETURN |
| **TRACKING #** | 7800124 | **REFERENCE 3** | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- -- **DEFECT REPORT** -- -- -- -- -- -- -- -- -- -- --

| ITEM # 4 | OTHER | 5 X 5 BASKETS - ST-081, ST-004, ST-051 |
|---|---|---|
| | | 3 PALLETS W/ BOLSTER |

| | | | | | |
|---|---|---|---|---|---|
| QTY | 3 | INSPECTION COMPLETED DATE | 6/30/2020 | **Inventory Ref** | |
| HEAT # | | RELEASE # | | **SUPPLIED BY** | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | **LOCATION** | |

**SERVICES**

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 700L-I | UNLOADING (RETURN FROM WELL) | | |

**SPECIFICATIONS USED  - CUSTOMER  - API**

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

# WORK ORDER # 7800124

| | | | |
|---|---|---|---|
| FIELDWOOD ENERGY LLC | | DATE | 6/30/2020 |
| 2000 W SAM HOUSTON PKWY S STE 1200 | | ACCOUNT # | TUB-28843-B000-SH |
| HOUSTON, TX 77042-3623 US | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# S80002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 5     USED PUP JOINTS BARE 5 1/2" 29.70# HP2-13CR110 DUTCHMAN CUT OFF BOTH ENDS R-1 JFE STEEL SEAMLESS CENTRALIZER - SLIP ON (1)

| | | | | | |
|---|---|---|---|---|---|
| QTY | 1 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIED BY | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| | | 700L-I | UNLOADING (RETURN FROM WELL) |

## SPECIFICATIONS USED  - CUSTOMER  - API

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7800124**

| | | | |
|---|---|---|---|
| FIELDWOOD ENERGY LLC | | | |
| 2000 W SAM HOUSTON PKWY S STE 1200 | | DATE | 6/30/2020 |
| HOUSTON, TX 77042-3623 US | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- -- **DEFECT REPORT** -- -- -- -- -- -- -- -- -- --

ITEM # 6     USED PUP JOINTS BARE 5 1/2" 29.70# HP2-13CR110 JFE LION CR

| | | | | | |
|---|---|---|---|---|---|
| QTY | 1 | INSPECTION COMPLETED DATE | 6/30/2020 | **Inventory Ref** | |
| HEAT # | | RELEASE # | | **SUPPLIED BY** | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | **LOCATION** | |

**SERVICES**

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 700L-I | UNLOADING (RETURN FROM WELL) | | |

**SPECIFICATIONS USED  - CUSTOMER  - API**

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER # 7800124**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| ATTN | ACCOUNTS PAYABLE |
| ORDERED BY | ACCOUNTS PAYABLE |
| ORDER # | |
| TRACKING # | 7800124 |

| | |
|---|---|
| DATE | 6/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 |
| AFE # | FW202002 |
| PO/KEY REFERENCE | ROUTING# S80002 |
| REFERENCE 2 | RETURN |
| REFERENCE 3 | ROWAN RESOLUTE |

— — — — — — — — — — DEFECT REPORT — — — — — — — — — — —

ITEM # 7     NEW PUP JOINTS BARE 5 1/2" 26.00# HP213CR110 JFE LION T&C Any JFE SEAMLESS OCR127

| | | | | | |
|---|---|---|---|---|---|
| QTY | 7 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIED BY | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 300P-I | FULL LENGTH DRIFT INSP | 203B-I | VISUAL THREAD INSPECTION |
| 450C-I | BRUSH & SPRAY  (OD) | 380J-I | INSPECTION SALTWATER CONTAMINA |
| 730P-I | INNER YARD MOVEMENT | | 10% SALWATER TEST - 1 JOINT |
| | TO AND FROM INSPECTION | 700L-I | UNLOADING (RETURN FROM WELL) |
| 99ZC-I | THREAD COMP | 98AA-I | CLEANING SOLVENT |
| | REDOPE OCR127 | | |

## SPECIFICATIONS USED  - CUSTOMER  - API

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 1 | WH-RD | 15.55 | BAD BOX (GALLED THREADS) | YES |
| 1 | WH-RD | 4.50 | BAD PIN (DAMAGED THREADS/SEAL) | YES |

TOTAL REJECTS ON THIS PAGE

2    JTS    20.05

Repairable Joints: 2 jts -> Approximately    20.05

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA  70340
UNITED STATES

# WORK ORDER #  7800124

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | | |
|---|---|---|---|
| | | DATE | 6/30/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #1 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | RETURN |
| TRACKING # | 7800124 | REFERENCE 3 | ROWAN RESOLUTE |

## -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 8    NEW PUP JOINTS BARE 4 1/2" 15.10# HP2-13CR110 JFE LION CR T&C  4' JFE SEAMLESS OCR127

| QTY | 1 | INSPECTION COMPLETED DATE | 6/30/2020 | Inventory Ref | |
|---|---|---|---|---|---|
| HEAT # | | RELEASE # | | SUPPLIED BY | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 300P-I | FULL LENGTH DRIFT INSP | 203B-I | VISUAL THREAD INSPECTION |
| 450C-I | BRUSH & SPRAY  (OD) | 380J-I | INSPECTION SALTWATER CONTAMINA |
| 730P-I | INNER YARD MOVEMENT | | 10% SALT WATER TEST |
| | TO AND FROM INSPECTION | 700L-I | UNLOADING (RETURN FROM WELL) |
| 99ZC-I | THREAD COMP | 98AA-I | CLEANING SOLVENT |
| | REDOPE OCR127 | | |

## SPECIFICATIONS USED  - CUSTOMER - API

ORIGINAL

**Tuboscope | NOV** Wellbore Technologies

**Invoice: 5314002**

National Oilwell Varco, LP dba Tuboscope

LEDGER NO. 002

10222 SHELDON RD
HOUSTON, TX 77049-1250
UNITED STATES
Phone: (281) 456-8881
Fax:

| AFE NUMBER | | SALES ORDER # 4331230    SR | | DATE 07/21/20 | BRANCH PLANT 2000707 | PAGE 1 of 2 |
|---|---|---|---|---|---|---|
| CUSTOMER NUMBER 945319 | | CUSTOMER REF N/A | | FREIGHT TERMS Carriage and Insurance Paid To | | |
| FINAL DESTINATION UNITED STATES | | GOLD WO NUMBER 7810679 | | KEY REF | | |
| TERMS:   Net 30 Days | | | | REF 2   SEE ATTACHED INVENTORY | | |
| WELL DESCRIPTION: TUBO SHELDON NORTH | | | | REF 3   JUNE 2020 STORAGE | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US SHELDON NORTH STORAGE
10222 SHELDON RD
HOUSTON TX 77049-1250

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER MONTHLY STORAGE/ INVENTORY CHARGES JUNE 2020 TRACKING #: 7810679  TOTAL JOINTS: 398 | | | | |
| 1.000 | 725A-TB STORAGE / INVENTORY CHARGE | 832.96 | TN | .7000 | 583.07 |
| | | | SUBTOTAL | | 583.07 |

CONTINUED NEXT PAGE

**Tuboscope | NOV** Wellbore Technologies

**ORIGINAL**

Invoice: 5314002

Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative. | | | | |

| | | |
|---|---|---|
| | Subtotal | 583.07 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD**   Total | **583.07** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

National Oilwell Varco, LP dba
Tuboscope
PO Box 201177
Dallas TX 75320-1177

**Wire Instructions (Wires Only)**

Wells Fargo Bank
Acct: 4496880188
ABA: 121000248
SWIFT: WFBIUS6S

NOV TUBOSCOPE
SHELDON NORTH FACILITY
10222 SHELDON ROAD
HOUSTON, TX 77049
UNITED STATES

**INVENTORY SUMMARY CURRENT BALANCE**
**INVENTORY STATUS AS OF 6/30/2020**

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 13 5/8" 88.20# Q-125 SLI11 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | NO COMMENTS | 48 | 2,085.33 | 183,926.11 | 91.96 |
| CASING | 13 5/8" 88.20# Q-125 HC SLU11 INTEGRAL JOINT (IJ) NEW BARE WH-2ORANGE | C | NO COMMENTS | 23 | 960.21 | 84,690.52 | 42.35 |
| CASING | 13 5/8" 88.20# Q-125 HC SLU11 INTEGRAL JOINT (IJ) NEW BARE WH-GRN-OR | C | NO COMMENTS | 18 | 743.48 | 65,574.94 | 32.79 |
| CASING | 13 5/8" 88.20# Q-125 HC SLUIII INTEGRAL JOINT (IJ) NEW BARE NONE | C | NO COMMENTS | 44 | 1,936.00 | 170,755.20 | 85.38 |
| CASING | 13 5/8" 88.20# Q125 HP SLUIII INTEGRAL JOINT (IJ) NEW BARE NONE | C | NO COMMENTS | 10 | 440.00 | 38,808.00 | 19.40 |
| CASING | 13 5/8" 88.20# Q-125-HP SLU11 INTEGRAL JOINT (IJ) NEW BARE WH-GRN-OR | C | NO COMMENTS | 7 | 306.76 | 27,056.23 | 13.53 |
| CASING | 13 5/8" 88.20# SM-125S SLUII INTEGRAL JOINT (IIJ) NEW BARE NONE | C | NO COMMENTS | 37 | 1,467.15 | 129,402.40 | 64.70 |
| CASING | 13 5/8" 88.20# SM-125TT SLU11 INTEGRAL JOINT (IJ) NEW BARE WH-GR-GR | C | NO COMMENTS | 21 | 819.19 | 72,252.56 | 36.13 |
| CASING | 13 5/8" 88.20# VM-125-HC SLU11 INTEGRAL JOINT (IJ) NEW BARE WH-2GR-2OR | C | NO COMMENTS | 7 | 280.92 | 24,777.14 | 12.39 |
| CASING | 13 5/8" 88.20# VM-125-HC SLUII INTEGRAL JOINT (IJ) NEW BARE NONE | C | NO COMMENTS | 3 | 132.00 | 11,642.40 | 5.82 |
| CASING | 14" 116# Q-125/CY TSH S23 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | NO COMMENTS | 148 | 6,101.15 | 707,733.72 | 353.87 |
| CASING | 14" 116# Q-125/CY TSH S23 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | NO COMMENTS | 5 | 206.48 | 23,952.06 | 11.98 |
| CASING | 18" 117.00# Q125 HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | NO COMMENTS | 27 | 1,071.44 | 125,358.29 | 62.68 |
| | | | CUSTOMER TOTALS: | 398 | 16,550.11 | 1,665,929.58 | 832.96 |

ORIGINAL



**Invoice: 5320026**

National Oilwell Varco, LP dba Tuboscope
LEDGER NO. 002

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (986) 631-9505

| AFE NUMBER | SALES ORDER #<br>4338152   SR | DATE<br>07/30/20 | BRANCH PLANT<br>2000706 | PAGE<br>1 of 2 |
|---|---|---|---|---|
| CUSTOMER NUMBER<br>945319 | CUSTOMER REF<br>26203 | FREIGHT TERMS<br>Carriage and Insurance Paid To | | |
| FINAL DESTINATION<br>UNITED STATES | GOLD WO NUMBER<br>7812200 | KEY REF   STORAGE CHARGE | | |
| TERMS:  Net 30 Days | | REF 2   ROUTING# 580002 | | |
| WELL DESCRIPTION: | | REF 3 | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

BILL TO:   FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

SHIP TO:   TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM<br>NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED<br>PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER OTHER STORAGE CHARGE FOR JULY 2020, VARIOUS SIZES, GRADES, WEIGHTS AND CONNECTIONS<br>TRACKING# 7690780, 7716450, 7723624, 7727576, 7748635, 7803104, TOTAL JOINTS: 8,201<br>TRACKING #: 7812200  TOTAL JOINTS: 8201 | | | | |
| 1.000 | **725E-TB**<br>STORAGE / COVERED INVENTORY<br>(201 JTS.) | 1.00 | EA | 750.0000 | 750.00 |
| 1.001 | **725I-TB**<br>STORAGE CHARGE<br>(OUTSIDE COVERED STORAGE) | 8,840.44 | TN | .7000 | 6,188.31 |
| | | | | SUBTOTAL | 6,938.31 |

CONTINUED NEXT PAGE

## TUBOSCOPE
a division of
### NATIONAL OILWELL VARCO, L.P.
Terms and Conditions of Sale

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY, THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

**Tuboscope** | **NOV** Wellbore Technologies

ORIGINAL

Invoice: 5320026

Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative. | | | | |

| | Subtotal | 6,938.31 |
|---|---|---|

To share your experience with us please visit us at http://conr___nov.com/Tuboscope-Feedback

| Currency: **USD** Total | **6,938.31** |
|---|---|

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

National Oilwell Varco, LP dba
Tuboscope
PO Box 201177
Dallas TX 75320-1177

**Wire Instructions (Wires Only)**

Wells Fargo Bank
Acct: 4496880188
ABA: 121000248
SWIFT: WFBIUS6S

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)   such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)   subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

**INVENTORY SUMMARY CURRENT BALANCE**

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| COUPLINGS | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC NEW BARE NONE | C | KORRGUARD STORAGE | 30 | 0.00 | 0.00 | 0.00 |
| COUPLINGS | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC NEW BARE RED | C | INSP REJECT | 2 | 0.00 | 0.00 | 0.00 |
| PUP JOINTS | 2 7/8" 6.50# 13CRR5 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 2 | 16.00 | 104.00 | 0.05 |
| PUP JOINTS | 4 1/2" 15.10# HP2-13CR110 JFE LION CR T&C NEW BARE WHITE | C | OCR127 | 2 | 4.30 | 64.93 | 0.03 |
| PUP JOINTS | 4 1/2" 17.00# VM-110 13CRSS VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 2 | 14.00 | 238.00 | 0.12 |
| PUP JOINTS | 5" 18.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 21.00 | 378.00 | 0.19 |
| PUP JOINTS | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD PIN | 1 | 19.65 | 393.00 | 0.20 |
| PUP JOINTS | 5 1/2" 26.00# 13CRS110 VAM TOP HC INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KORRGUARD STORAGE | 1 | 20.00 | 520.00 | 0.26 |
| PUP JOINTS | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD BOX | 1 | 15.55 | 404.30 | 0.20 |
| PUP JOINTS | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD PIN | 1 | 4.50 | 117.00 | 0.06 |
| PUP JOINTS | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WHITE | C | OCR127 | 5 | 27.00 | 702.00 | 0.35 |
| PUP JOINTS | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 21 | 76.00 | 1,976.00 | 0.99 |
| PUP JOINTS | 5 1/2" 29.70# 13CR115 VAM TOP HC INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KORRGUARD STORAGE | 2 | 35.00 | 1,039.50 | 0.52 |
| PUP JOINTS | 5 1/2" 29.70# HP2-13CR110 DUTCHMAN CUT OFF BOTH ENDS USED BARE NONE | C | CENTRALIZER - SLIP ON (1) | 1 | 27.00 | 801.90 | 0.40 |
| PUP JOINTS | 5 1/2" 29.70# HP2-13CR110 JFE LION CR  USED BARE NONE | C | CUT OFF BOX | 1 | 18.10 | 537.57 | 0.27 |
| PUP JOINTS | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 1 | 23.00 | 598.00 | 0.30 |
| PUP JOINTS | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 21.80 | 632.20 | 0.32 |
| PUP JOINTS | 7" 29.00# P-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 4 | 88.07 | 2,554.03 | 1.28 |
| PUP JOINTS | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 22.30 | 662.31 | 0.33 |
| PUP JOINTS | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | REPAIRED | 1 | 22.36 | 664.09 | 0.33 |
| PUP JOINTS | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 1 | 10.30 | 305.91 | 0.15 |
| PUP JOINTS | 7 3/4" 46.10# Q-125 TSH 523 INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 1 | 10.12 | 466.53 | 0.23 |
| PUP JOINTS | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 23.00 | 1,215.55 | 0.61 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE | C | BAD JOINT | 1 | 22.15 | 1,185.03 | 0.59 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 22.95 | 1,227.83 | 0.61 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 1 | 23.10 | 1,235.85 | 0.62 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 1 | 23.15 | 1,238.53 | 0.62 |

**TUBOSCOPE GOLD™**

Copyright 2005. National Oilwell Varco, L.P.

# INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| PUP JOINTS | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 23.15 | 1,238.53 | 0.62 |
| PUP JOINTS | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | OCR127 | 2 | 45.95 | 2,458.33 | 1.23 |
| PUP JOINTS | 9 7/8" 62.80# HCQ-125 HYD 513 PIN X PIN NEW BARE NONE | C | STORAGE ONLY | 1 | 3.00 | 188.40 | 0.09 |
| PUP JOINTS | 9 7/8" 62.80# HCQ-125 HYD 523 PIN X PIN NEW BARE NONE | C | STORAGE ONLY | 1 | 3.00 | 188.40 | 0.09 |
| PUP JOINTS | 9 7/8" 62.80# HCQ-125 HYD 513 INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 1 | 10.00 | 628.00 | 0.31 |
| PUP JOINTS | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 6 | 129.15 | 5,876.33 | 2.94 |
| PUP JOINTS | 10 3/4" 45.50# P-110 IC BUTTRESS T&C NEW BARE WHITE | C | KENDEX | 1 | 19.60 | 891.80 | 0.45 |
| PUP JOINTS | 10 3/4" 45.50# P-110 IC BUTTRESS T&C USED BARE NONE | C | NOT TVI INSP | 1 | 20.00 | 910.00 | 0.46 |
| PUP JOINTS | 10 3/4" 65.70# Q-125 HC SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 4 | 39.75 | 2,611.58 | 1.31 |
| PUP JOINTS | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS NEW BARE WHITE | C | DOPELESS CONNS | 2 | 30.00 | 2,196.00 | 1.10 |
| PUP JOINTS | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS BOX NEW BARE WHITE | C | OCR127 | 2 | 9.80 | 717.36 | 0.36 |
| PUP JOINTS | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS PIN NEW BARE WHITE | C | OCR127 | 1 | 10.20 | 746.64 | 0.37 |
| PUP JOINTS | 10 3/4" 85.30# Q125 ICY MAC II INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 3 | 21.10 | 1,799.83 | 0.90 |
| PUP JOINTS | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | BAD BOX | 1 | 15.60 | 1,014.00 | 0.51 |
| PUP JOINTS | 11 3/4" 65.00# Q-125 IC HYD 523 INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 1 | 3.00 | 195.00 | 0.10 |
| PUP JOINTS | 13 3/8" 68.00# HCQ-125 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 23.85 | 1,621.80 | 0.81 |
| PUP JOINTS | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 5 | 106.80 | 7,262.40 | 3.63 |
| PUP JOINTS | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 1 | 21.65 | 1,471.86 | 0.74 |
| PUP JOINTS | 13 3/8" 68.00# NT-80HE BUTTRESS T&C NEW BARE WHITE | C | NO COMMENTS | 1 | 20.25 | 1,377.00 | 0.69 |
| PUP JOINTS | 13 3/8" 68.00# NT-80HE BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 20.30 | 1,380.40 | 0.69 |
| PUP JOINTS | 13 3/8" 68.00# NT-80HE BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 2 | 47.60 | 3,236.80 | 1.62 |
| PUP JOINTS | 16" 65.00# H-40 BUTTRESS T&C USED BARE NONE | C | NOT TVI INSP | 2 | 44.50 | 2,892.50 | 1.45 |
| PUP JOINTS | 18 5/8" 87.50# J-55 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 2 | 47.10 | 4,121.25 | 2.06 |
| PUP JOINTS | 18 5/8" 99.50# J-55 BUTTRESS SPECIAL CLEAR. BBE NEW BARE WHITE | C | READY TO RUN BOL 2000 | 1 | 21.00 | 2,089.50 | 1.04 |
| PUP JOINTS | 18 5/8" 99.50# J-55 BUTTRESS SPECIAL CLEAR. BBE NEW BARE WH-GRN | C | NO HEAT # | 1 | 21.40 | 2,129.30 | 1.06 |
| PUP JOINTS | 20" 94.00# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 1 | 39.85 | 3,745.90 | 1.87 |
| PUP JOINTS | 20" 94.00# K-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 2 | 42.25 | 3,971.50 | 1.99 |
| CPLG STOCK | 6.504" 1.0'' VM-110 13CR55 PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 8 | 144.00 | 0.00 | 0.00 |
| CPLG STOCK | 6.626" 57.39# HP2-13CR115 PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 1 | 5.00 | 286.95 | 0.14 |
| NONE - OTHER | 3 1/16" 15K MANUMATIC WING VALVE ASSY. @ 4' | C | | 1 | | 0.00 | 0.00 |
| NONE - OTHER | 3 1/16" 15M X-MAS TREE ASSY. W/ 7 1/16" WELLHEAD ADAPTER @ 8' | C | | 1 | | 0.00 | 0.00 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

## INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA  70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| NONE - OTHER | NEW 5 1/2" 20# P-110 STL BOX X 4 1/2" 15.10# 8RD SHORT PIN CROSSOVER @ 18" LONG (STORAGE ONLY) | C | | 1 | 0.00 | 0.00 | 0.00 |
| NONE - OTHER | USED BARE 2 7/8" @ 6.50# 13CR95 BTS-8 PUP JT. ASSY. (8', 6' 4') | C | | 1 | 18.05 | 0.00 | 0.00 |
| NONE - OTHER | NEW BARE 7 5/8" 33.70# HCP-110 API 8RD BOX X TSH S23 BOX @ 11' (STORAGE ONLY) | C | | 1 | 0.00 | 0.00 | 0.00 |
| NONE - OTHER | USED 2 7/8" 6.50# 13CR85 NIPPLE ASSY | C | | 1 | 30.00 | 0.00 | 0.00 |
| NONE - OTHER | NEW X-OVER 10 3/4" 65.70# SLIII BOX X 9 7/8" 65.30# PLAIN END @ 4' EACH | C | | 2 | 0.00 | 0.00 | 0.00 |
| NONE - OTHER | USED BARE X-OVER 10 3/4" 73.20# TN-125-HC TSH WEDGE 563 T&C BBE BOX X MAC II TENARIS DOPELESS PIN | C | | 2 | 80.85 | 0.00 | 0.00 |
| NONE - OTHER | USED BARE 2 7/8" @ 6.50# 13CR95 BTS-8 PUP JT. ASSY. (8', 6', 2' 2') | C | | 1 | 22.25 | 0.00 | 0.00 |
| WH-GRN - OTHER | X-OVER 9 5/8" 53.50# HCP-110  SLX  BOX X 8RD LONG T&C PIN @46.10, BOL PTC ON PIN & BOL 2000 ON BOX END | C | | 1 | 0.00 | 0.00 | 0.00 |
| WH-GRN - OTHER | NEW BARE X-OVER 10 3/4" 73.20# 4130M 125 KSI TSH MAC II BOX X  9 7/8" 65.30# SLIII PIN @ 5.15' | C | | 1 | 5.15 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BARE VIT TUBING 7" 32# HYP-TP1 13CR110 OUTER X 5 1/2" 23# 13CR95 BTS-6 BOX X PIN INNER R-3 SMLS SUMITOMO FOOTAGE 395.75 (JET LUBE KORR GUARD) | C | | 10 | 0.00 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BAE X-OVER 10 3/4" @ 85.30# Q125 TSH MAC II DPLS BOX X 10 1/8" 79.29# TSH WS23 DPLS PIN 5.15' (OCR 127) | C | | 1 | 5.15 | 0.00 | 0.00 |
| WHITE - OTHER | 7" 41# Q-125 STL BOX X 7" 42.70# VAM SLII-II PIN X-OVER @5'(READY TO RUN) | C | | 1 | 0.00 | 0.00 | 0.00 |
| WHITE - OTHER | 7" 41# Q-125 STL BOX X 7" 42.70# VAM SLII-II PIN X-OVER @10' (READY TO RUN) | C | | 1 | 0.00 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BARE X-OVER 10 3/4" 65.70# VAM SLIII BOX X 9 7/8" 62.80# TSH WEDGE 523 PIN SMLS @ 4.20' | C | | 1 | 4.20 | 0.00 | 0.00 |
| WHITE - OTHER | NEW BARE X-OVER 9 7/8" 62.80# TN-125-HC TSH WEDGE 523 BOX X SLIII PIN INTEGRAL JOINT (IJ) R-3 TENARIS SEAMLESS WEARSOX CENT 87.60' | C | | 2 | 87.60 | 0.00 | 0.00 |
| WHITE - OTHER | 7 5/8" 39# Q-125 SLSF BOX X 7" 41# STL PIN X-OVER @ 3'EACH (READY TO RUN) | C | | 2 | 0.00 | 0.00 | 0.00 |
| WH-RD - OTHER | NEW BARE X-OVER 7 5/8" 38.08# Q-125 SLF BOX X SLIII PIN R3 USS @ 42.65" (WH-RD) (BAD BOX) | C | | 1 | 0.00 | 0.00 | 0.00 |
| WH-RD - OTHER | NEW BARE VIT TUBING 7" 32# HYP-TP1 13CR110 OUTER X 5 1/2" 23# 13CR95 BTS-6 BOX X PIN INNER R-3 SMLS SUMITOMO FOOTAGE 39.50(BAD PIN) | C | | 1 | 0.00 | 0.00 | 0.00 |
| CASING | 4 1/2" 13.50# HCP-110 ULTRA SF FLUSH JOINT NEW BARE WHITE | C | READY TO RUN BOL PTC | 16 | 676.75 | 9,136.13 | 4.57 |
| CASING | 4 1/2" 18.97# Q-125 HCE SLIII INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 8 | 324.30 | 6,151.97 | 3.08 |
| CASING | 5" 18.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 41.45 | 746.10 | 0.37 |
| CASING | 5" 18.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN | 4 | 167.40 | 3,013.20 | 1.51 |
| CASING | 5" 18.00# P-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 16 | 698.00 | 12,564.00 | 6.28 |
| CASING | 5" 18.00# P-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 3 | 141.30 | 2,543.40 | 1.27 |
| CASING | 5" 18.00# P-110 EC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN BOL PTC | 5 | 226.10 | 4,069.80 | 2.03 |
| CASING | 5" 18.00# P-110-ICY TSH WEDGE 625 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 20 | 918.55 | 16,533.90 | 8.27 |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

# INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 5 1/2" 17# P-110 TSH 511 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 97 | 4,578.35 | 77,831.95 | 38.92 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | CENTRALIZER - MOLD ON (2) | 1 | 45.40 | 908.00 | 0.45 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 45.60 | 912.00 | 0.46 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 8 | 361.80 | 7,236.00 | 3.62 |
| CASING | 5 1/2" 20.00# HCP-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 3 | 134.25 | 2,685.00 | 1.34 |
| CASING | 5 1/2" 20.00# P-110 STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD BOX | 1 | 46.10 | 922.00 | 0.46 |
| CASING | 5 1/2" 20.00# P-110 EC VAM TOP HT T&C NEW BARE WHITE | C | OCR127 | 1 | 46.10 | 922.00 | 0.46 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 4 | 163.45 | 3,269.00 | 1.63 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 4 | 156.15 | 3,123.00 | 1.56 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 2 | 76.40 | 1,528.00 | 0.76 |
| CASING | 5 1/2" 20.00# P-110 EC VAM TOP HT T&C NEW BARE WH-RD | C | BAD PIN | 6 | 276.10 | 5,522.00 | 2.76 |
| CASING | 5 1/2" 20.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 11 | 429.55 | 8,591.00 | 4.30 |
| CASING | 5 1/2" 20.00# P-110 C TSH 625 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 11 | 511.35 | 10,227.00 | 5.11 |
| CASING | 5 1/2" 23.00# 13 CR-95 BTS-6 INTEGRAL JOINT (IJ) USED BARE YELLOW | C | KORRGUARD STORAGE | 1 | 39.75 | 914.25 | 0.46 |
| CASING | 5 1/2" 23.00# 13 CR-95 BTS-6 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KORRGUARD STORAGE | 8 | 316.45 | 7,278.35 | 3.64 |
| CASING | 5 1/2" 23.00# 13 CR-95 BTS-6 INTEGRAL JOINT (IJ) USED BARE YEL-RD | C | BAD BOX | 1 | 39.80 | 915.40 | 0.46 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 43.55 | 1,001.65 | 0.50 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE NONE | C | BAD PIN | 1 | 44.00 | 1,012.00 | 0.51 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | KENDEX | 1 | 43.16 | 992.68 | 0.50 |
| CASING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | BOLSTERED - KENDEX | 164 | 7,100.34 | 163,307.74 | 81.65 |
| CASING | 5 1/2" 23.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 47.30 | 1,087.90 | 0.54 |
| CASING | 5 1/2" 23.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD PIN AND BOX | 4 | 171.85 | 3,952.55 | 1.98 |
| CASING | 5 1/2" 23.00# P-110 EC STL INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | BAD BOX | 9 | 408.80 | 9,402.40 | 4.70 |
| CASING | 5 1/2" 26.00# Q-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 18 | 820.90 | 21,343.40 | 10.67 |
| CASING | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 40 | 1,806.30 | 46,963.80 | 23.48 |
| CASING | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C USED BARE YEL-RD | C | BAD PIN | 4 | 181.50 | 4,719.00 | 2.36 |
| CASING | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C NEW BARE WHITE 72733 | C | BOLSTERED - BOL 72733 | 46 | 1,984.82 | 51,605.32 | 25.80 |
| CASING | 5 1/2" 26.00# VM-110 13CRSS VAM TOP HC T&C NEW BARE NONE | C | NO HEAT # | 1 | 43.00 | 1,118.00 | 0.56 |

TUBOSCOPE GOLD™
Copyright 2005. National Oilwell Varco, L.P.

# INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 5 1/2" 26.00# VM-110 13CR5S VAM TOP HC T&C UNKNOWN BARE NONE | C | TO BE INSPECTED | 2 | 90.45 | 2,351.70 | 1.18 |
| CASING | 5 1/2" 29.70# HP213CR115 PLAIN END UPSET PLAIN END NEW BARE NONE | C | STORAGE ONLY | 6 | 264.00 | 7,840.80 | 3.92 |
| CASING | 5 1/2" 29.70# HP2 13CR115 PLAIN END UPSET PLAIN END UPSET NEW BARE WHITE | C | BOLSTERED | 12 | 430.75 | 12,793.19 | 6.40 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 25 | 1,112.05 | 28,913.30 | 14.46 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 18 | 817.11 | 21,244.96 | 10.62 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 2 | 83.60 | 2,173.60 | 1.09 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD BOX | 7 | 327.85 | 8,524.10 | 4.26 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 2 | 83.70 | 2,176.20 | 1.09 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 47.40 | 1,232.40 | 0.62 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN-RD | C | BAD PIN | 3 | 124.55 | 3,238.30 | 1.62 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | OVERAGE | 6 | 280.02 | 7,280.52 | 3.64 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | OVERAGE | 3 | 139.95 | 3,638.70 | 1.82 |
| CASING | 7" 26.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 29 | 1,302.50 | 33,865.00 | 16.93 |
| CASING | 7" 26.00# HCP-110 EC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 2 | 89.10 | 2,316.60 | 1.16 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 28 | 1,255.92 | 32,653.99 | 16.33 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-GRN-RD | C | BAD PIN | 2 | 89.70 | 2,332.20 | 1.17 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 44.15 | 1,147.90 | 0.57 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 2 | 89.10 | 2,316.60 | 1.16 |
| CASING | 7" 26.00# P-110 EC API 8RD LONG T&C NEW BARE WH-RD | C | BAD BOX | 5 | 221.25 | 5,752.50 | 2.88 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 26 | 1,085.65 | 31,483.85 | 15.74 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 10 | 451.50 | 13,093.50 | 6.55 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 42.60 | 1,235.40 | 0.62 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 47.00 | 1,363.00 | 0.68 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD BOX | 4 | 170.91 | 4,956.25 | 2.48 |
| CASING | 7" 29.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 7 | 314.20 | 9,111.80 | 4.56 |
| CASING | 7" 29.00# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 32 | 1,379.95 | 40,018.55 | 20.01 |
| CASING | 7" 32.00# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-R-G | C | CENTRALIZER - MOLD ON (2) | 8 | 371.00 | 11,872.00 | 5.94 |
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | B,R, & SPRAY | 26 | 1,225.15 | 39,204.80 | 19.60 |

INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 30 | 1,255.32 | 40,170.24 | 20.09 |
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 21 | 991.60 | 31,731.20 | 15.87 |
| CASING | 7" 32.00# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 18 | 748.65 | 23,956.80 | 11.98 |
| CASING | 7" 32.00# HCP-110 TSH 513 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | C | CENTRALIZER - MOLD ON (2) | 2 | 88.00 | 2,816.00 | 1.41 |
| CASING | 7" 32.00# P-110 HC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 24 | 1,106.20 | 35,398.40 | 17.70 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 2 | 85.25 | 2,728.00 | 1.36 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 30 | 1,283.75 | 41,079.92 | 20.54 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 2 | 85.40 | 2,732.80 | 1.37 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 3 | 128.75 | 4,120.00 | 2.06 |
| CASING | 7" 32.00# P-110 IC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 3 | 138.25 | 4,424.00 | 2.21 |
| CASING | 7" 32.00# P-110 IC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN | 15 | 692.30 | 22,153.60 | 11.08 |
| CASING | 7" 32.00# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 1 | 44.00 | 1,408.00 | 0.70 |
| CASING | 7" 32.00# Q-125 TC-II T&C BBE NEW BARE WHITE | C | READY TO RUN | 6 | 259.25 | 8,296.00 | 4.15 |
| CASING | 7" 37.29# Q-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 50 | 2,176.30 | 81,154.23 | 40.58 |
| CASING | 7" 38.00# HCQ-125 VAM TOP T&C NEW BARE WHITE | C | READY TO RUN | 4 | 161.95 | 6,154.10 | 3.08 |
| CASING | 7" 38.00# HCQ-125-1 STL INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 43 | 1,881.70 | 71,504.60 | 35.75 |
| CASING | 7" 38.00# P-110 VAM TOP T&C NEW BARE WHITE | C | READY TO RUN | 8 | 360.90 | 13,714.20 | 6.86 |
| CASING | 7" 41.00# V-150 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | CENTRALIZER - MOLD ON (2) | 1 | 47.35 | 1,941.35 | 0.97 |
| CASING | 7" 41.00# V-150 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 56 | 2,620.90 | 107,456.90 | 53.73 |
| CASING | 7" 42.59# Q-125-1 SLJII INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 43.75 | 1,863.31 | 0.93 |
| CASING | 7" 42.59# Q-125-1 SLJII FLOAT SHOE NEW BARE WHITE | C | READY TO RUN BOL PTC | 1 | 45.10 | 1,920.81 | 0.96 |
| CASING | 7" 42.59# Q-125-1 SLJIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 350 | 15,428.65 | 657,106.40 | 328.55 |
| CASING | 7" 42.59# Q-125-1 SLJIII INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 11 | 484.85 | 20,649.76 | 10.32 |
| CASING | 7" 42.70# Q-125-1 SLJIII CUT OFF NEW BARE WHITE | C | STORAGE ONLY | 1 | 38.90 | 1,661.03 | 0.83 |

**TUBOSCOPE GOLD™**

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

## INVENTORY SUMMARY CURRENT BALANCE

### FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7 1/16" 40.40# HP2-13CR115 PLAIN END PLAIN END NEW BARE WHITE | C | NOT BOLSTERED | 3 | 107.72 | 4,351.78 | 2.18 |
| CASING | 7 1/16" 40.40# HP2-13CR115 PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 12 | 528.00 | 21,331.20 | 10.67 |
| CASING | 7 5/8" 29.06# P-110 EC SLIII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 29 | 1,338.00 | 38,882.22 | 19.44 |
| CASING | 7 5/8" 29.06# P-110 EC SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 47 | 2,179.15 | 63,326.09 | 31.66 |
| CASING | 7 5/8" 29.06# P-110 EC SLIII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 47 | 2,165.43 | 62,927.40 | 31.46 |
| CASING | 7 5/8" 29.06# P-110 EC SLIII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 88 | 4,051.36 | 117,732.52 | 58.87 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 21 | 958.15 | 28,457.06 | 14.23 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 2 | 89.65 | 2,662.61 | 1.33 |
| CASING | 7 5/8" 29.70# HCP-110 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 25 | 1,134.70 | 33,700.59 | 16.85 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | REPAIRED | 4 | 184.15 | 5,469.26 | 2.73 |
| CASING | 7 5/8" 29.70# HCP-110 API 8RD LONG T&C NEW BARE WHT-GR | C | REPAIRED | 1 | 46.78 | 1,389.37 | 0.69 |
| CASING | 7 5/8" 29.70# HCP-110 IC TSH 513 CENTRALIZER NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 47.75 | 1,418.18 | 0.71 |
| CASING | 7 5/8" 29.70# HCP-110 IC TSH 513 CENTRALIZER NEW BARE WH-RD | C | BAD PIN | 2 | 87.85 | 2,609.15 | 1.30 |
| CASING | 7 5/8" 29.70# HCP-110 IC TSH 513 CENTRALIZER NEW BARE WH-RD | C | BAD BOX | 2 | 95.05 | 2,822.99 | 1.41 |
| CASING | 7 5/8" 29.70# P-110 EC SLIII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 5 | 230.70 | 6,851.79 | 3.43 |
| CASING | 7 5/8" 29.70# P-110 EC SLIII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 11 | 506.77 | 15,051.07 | 7.53 |
| CASING | 7 5/8" 29.70# P-110 EC SLIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 46 | 2,114.10 | 62,788.79 | 31.39 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | NO COMMENTS | 5 | 230.70 | 6,851.79 | 3.43 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WH-GRN | C | NO HEAT # | 2 | 91.80 | 2,726.46 | 1.36 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 43 | 1,987.13 | 59,017.72 | 29.51 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 31 | 1,430.89 | 42,497.43 | 21.25 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 36 | 1,687.50 | 50,118.75 | 25.06 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 48 | 2,089.05 | 62,044.79 | 31.02 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | KENDEX | 193 | 9,010.25 | 267,604.43 | 133.80 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | CUT OFF BOX | 1 | 39.80 | 1,182.06 | 0.59 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | CUT OFF PIN | 1 | 26.20 | 778.14 | 0.39 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 2 | 88.00 | 2,613.60 | 1.31 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 30 | 1,397.90 | 41,517.63 | 20.76 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA  70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 3 | 138.50 | 4,113.45 | 2.06 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 22 | 1,020.65 | 30,313.31 | 15.16 |
| CASING | 7 5/8" 29.70# P-110 IC TSH 513 INTEGRAL JOINT (IJ) USED BARE NONE | C | TO BE INSPECTED | 1 | 27.40 | 813.78 | 0.41 |
| CASING | 7 5/8" 29.70# P-110 IC DUTCHMAN/CUT-OFF PIN INTEGRAL JOINT (IJ) USED BARE NONE | C | CUT OFF EA. END | 1 | 19.10 | 567.27 | 0.28 |
| CASING | 7 5/8" 29.70# P-110 IC  USED BARE NONE | C | REPAIRED | 18 | 836.22 | 24,835.73 | 12.42 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHITE | C | REPAIRED | 1 | 45.82 | 1,360.85 | 0.68 |
| CASING | 7 5/8" 29.70# P-110 IC API 8RD LONG T&C NEW BARE WHT-GR | C | NO HEAT # | 101 | 4,499.93 | 151,647.75 | 75.82 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WH-GRN | C | READY TO RUN BOL 2000 | 141 | 6,370.75 | 214,694.28 | 107.35 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | | | | | |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN | 18 | 797.60 | 26,879.12 | 13.44 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE NONE-RED | C | BAD PIN | 14 | 646.00 | 21,770.20 | 10.89 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 45.25 | 1,524.93 | 0.76 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE NONE | C | STORAGE ONLY | 109 | 5,033.95 | 169,644.26 | 84.82 |
| CASING | 7 5/8" 33.70# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | REPAIRED | 55 | 2,407.12 | 81,120.03 | 40.56 |
| CASING | 7 5/8" 33.70# HCP-110 RY TSH 523 PLAIN END BOX UNKNOWN BARE NONE | C | STORAGE ONLY | 1 | 34.10 | 1,149.17 | 0.57 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 1 | 43.70 | 1,664.10 | 0.83 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 13 | 559.25 | 21,296.24 | 10.65 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIJII INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 1 | 43.55 | 1,658.38 | 0.83 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 2 | 84.65 | 3,223.47 | 1.61 |
| CASING | 7 5/8" 38.08# HCQ-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 2 | 81.65 | 3,109.23 | 1.55 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT NEW BARE WHITE | C | OCR127 | 10 | 438.55 | 16,699.98 | 8.35 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT USED BARE NONE | C | NOT TVI INSP | 2 | 88.50 | 3,370.08 | 1.69 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT NEW BARE WH-RD | C | BAD BOX | 1 | 43.60 | 1,660.29 | 0.83 |
| CASING | 7 5/8" 38.08# Q-125 SLF FLUSH JOINT USED BARE NONE | C | CUT OFF PIN | 2 | 67.00 | 2,551.36 | 1.28 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS GUIDE SHOE – BH NEW BARE WHITE | C | WEARSOX CENT | 1 | 43.29 | 1,995.67 | 1.00 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS FLOAT COLLAR– BH NEW BARE WHITE | C | WEARSOX CENT | 1 | 43.30 | 1,996.13 | 1.00 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 14 | 582.15 | 26,836.92 | 13.42 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 WEDGE 523 DOPELESS NEW BARE WHITE | C | DOPELESS CONNS | 2 | 82.05 | 3,782.51 | 1.89 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 9 | 375.60 | 17,315.16 | 8.66 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | DOPELESS CONNS | 3 | 123.26 | 5,682.29 | 2.84 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | WEARSOX CENT | 17 | 696.84 | 32,124.32 | 16.06 |
| CASING | 7 3/4" 46.10# Q-125 TSH 523 DPLS CENT SUB - BH NEW BARE WHITE | C | WEARSOX CENT | 28 | 1,269.16 | 58,508.28 | 29.25 |

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**INVENTORY SUMMARY CURRENT BALANCE**

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 7 3/4" 46.10# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL 72733 | 5 | 224.50 | 10,349.45 | 5.17 |
| CASING | 7 3/4" 46.10# TN-125-HCY TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 11 | 491.80 | 22,671.98 | 11.34 |
| CASING | 7 3/4" 46.10# TN-125-HCY TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 18 | 830.99 | 38,308.64 | 19.15 |
| CASING | 9 5/8" 47.00# P-110 EC API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 13 | 564.10 | 26,512.70 | 13.26 |
| CASING | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 17 | 766.30 | 40,498.96 | 20.25 |
| CASING | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 11 | 488.70 | 25,827.80 | 12.91 |
| CASING | 9 5/8" 52.85# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 15 | 664.00 | 35,092.40 | 17.55 |
| CASING | 9 5/8" 52.90# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 20 | 881.96 | 46,655.50 | 23.33 |
| CASING | 9 5/8" 53.30# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 3 | 137.25 | 7,315.43 | 3.66 |
| CASING | 9 5/8" 53.30# HCP-110 API 8RD LONG T&C NEW BARE WH-RD* | C | BAD PIN | 1 | 46.10 | 2,457.13 | 1.23 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 1 | 46.65 | 2,495.78 | 1.25 |
| CASING | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-GRN-RD | C | BAD PIN AND BOX | 1 | 45.65 | 2,442.28 | 1.22 |
| CASING | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 44.75 | 2,394.13 | 1.20 |
| CASING | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 6 | 262.75 | 14,057.13 | 7.03 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 FLOAT SHOE NEW BARE WH-GRN | C | CENTRALIZER SUB | 1 | 51.00 | 2,728.50 | 1.36 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 FLOAT COLLAR NEW BARE WH-GRN | C | CENTRALIZER SUB | 1 | 48.60 | 2,600.10 | 1.30 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 CENT SUB NEW BARE WH-GRN | C | NO HEAT # | 8 | 389.05 | 20,814.18 | 10.41 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 2 | 92.80 | 4,964.80 | 2.48 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN-RD | C | NO HEAT # | 4 | 187.70 | 10,041.95 | 5.02 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 16 | 741.08 | 39,647.91 | 19.82 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WH-RD | C | BAD PIN | 1 | 46.00 | 2,461.00 | 1.23 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WH-RD* | C | BAD PIN | 2 | 92.95 | 4,972.83 | 2.49 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 44.35 | 2,372.73 | 1.19 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 3 | 140.70 | 7,527.45 | 3.76 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN | 1 | 47.15 | 2,522.53 | 1.26 |
| CASING | 9 5/8" 53.50# HCP-110 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 9 | 421.63 | 22,557.38 | 11.28 |
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 2 | 87.95 | 4,705.33 | 2.35 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE RED | C | NO DRIFT | 1 | 46.70 | 2,498.45 | 1.25 |

# INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA  70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 9 5/8" 53.50# HCP-110 TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 3 | 133.55 | 7,144.93 | 3.57 |
| CASING | 9 5/8" 53.50# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 2 | 87.25 | 4,667.88 | 2.33 |
| CASING | 9 5/8" 53.50# HCP-110 API 8RD LONG T&C NEW BARE WHITE | C | OCR127 | 21 | 975.55 | 52,191.93 | 26.10 |
| CASING | 9 5/8" 53.50# HCQ-125 BUTTRESS T&C NEW BARE WH-RD | C | BAD BOX | 1 | 47.25 | 2,527.88 | 1.26 |
| CASING | 9 5/8" 53.50# HCQ-125 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 14 | 642.90 | 34,395.15 | 17.20 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN | 43 | 1,907.75 | 102,064.63 | 51.03 |
| CASING | 9 5/8" 53.50# HCQ-125 SLJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 6 | 281.40 | 15,054.90 | 7.53 |
| CASING | 9 5/8" 53.50# HCQ-125 API 8RD LONG T&C NEW BARE WHITE | C | READY TO RUN | 16 | 726.90 | 38,889.15 | 19.44 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 1 | 46.20 | 2,471.70 | 1.24 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN | 1 | 38.80 | 2,075.80 | 1.04 |
| CASING | 9 5/8" 53.50# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 2 | 89.25 | 4,774.88 | 2.39 |
| CASING | 9 5/8" 53.50# HCQ-125 STL FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 48.34 | 2,586.19 | 1.29 |
| CASING | 9 5/8" 53.50# P110 EC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 259 | 11,294.50 | 604,255.75 | 302.13 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 5 | 228.00 | 12,198.00 | 6.10 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 28 | 1,255.40 | 67,163.90 | 33.58 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN AND BOX | 4 | 181.95 | 9,734.33 | 4.87 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 6 | 275.45 | 14,736.58 | 7.37 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN | 6 | 272.00 | 14,552.00 | 7.28 |
| CASING | 9 5/8" 53.50# P110 EC SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 5 | 222.20 | 11,887.70 | 5.94 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 31 | 1,376.90 | 73,664.15 | 36.83 |
| CASING | 9 5/8" 53.50# P-110 EC CUT OFF PIN CUT OFF USED BARE NONE | C | DUTCHMAN | 1 | 49.60 | 2,653.60 | 1.33 |
| CASING | 9 5/8" 53.50# P-110 EC CUT OFF PIN INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 1 | 46.05 | 2,463.68 | 1.23 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 8 | 362.50 | 19,393.75 | 9.70 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 9 | 411.75 | 22,028.63 | 11.01 |
| CASING | 9 5/8" 53.50# P-110 EC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 86 | 3,869.76 | 207,032.07 | 103.52 |
| CASING | 9 5/8" 53.50# P-110 EC ICX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 1 | 44.70 | 2,391.45 | 1.20 |
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 9 | 419.00 | 22,416.50 | 11.21 |
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | NO HEAT # | 9 | 410.85 | 21,980.48 | 10.99 |

**TUBOSCOPE GOLD™**

Copyright 2005. National Oilwell Varco, L.P.

# INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX 1349
AMELIA, LA 70340
UNITED STATES

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 DOPELESS NEW BARE WHITE | C | DOPELESS CONNS | 65 | 3,046.44 | 162,984.54 | 81.49 |
| CASING | 9 5/8" 53.50# P-110 IC TSH 513 DOPELESS NEW BARE WHITE | C | KENDEX | 20 | 946.20 | 50,621.70 | 25.31 |
| CASING | 9 7/8" 61.80# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 9 | 423.30 | 26,159.94 | 13.08 |
| CASING | 9 7/8" 61.80# Q125-IC TSH 513 FLOAT SHOE UNKNOWN BARE WHITE | C | CENTRALIZER - MOLD ON (1) | 1 | 44.00 | 2,719.20 | 1.36 |
| CASING | 9 7/8" 61.80# Q125-IC TSH 513 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | C | NOT TVI INSP | 16 | 704.00 | 43,507.20 | 21.75 |
| CASING | 9 7/8" 62.80# P-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 1 | 46.45 | 2,917.06 | 1.46 |
| CASING | 9 7/8" 62.80# Q-125 HYD 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 3 | 136.00 | 8,541.01 | 4.27 |
| CASING | 9 7/8" 62.80# Q-125 TSH W523 DPLS WEARSOX CENT NEW BARE WHITE | C | DOPELESS CONNS | 1 | 37.45 | 2,351.86 | 1.18 |
| CASING | 9 7/8" 62.80# Q-125 HC SLIIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | WEARSOX CENT (2) | 3 | 135.45 | 8,506.26 | 4.25 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 39.80 | 2,499.44 | 1.25 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) USED BARE YELLOW | C | READY TO RUN | 1 | 81.81 | 5,137.67 | 2.57 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | WEARSOX CENT | 4 | 155.62 | 9,772.94 | 4.89 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL 72733 | 13 | 587.95 | 36,923.26 | 18.46 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 27 | 1,063.34 | 66,777.75 | 33.39 |
| CASING | 9 7/8" 62.80# TN-125-HC TSH 523 DPLS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | DOPELESS CONNS | 40 | 1,598.64 | 100,394.87 | 50.20 |
| CASING | 9 7/8" 64.10# Q-125 VAM SLIJ II INTEGRAL JOINT (IJ) NEW BARE NONE | C | STORAGE ONLY | 1 | 36.70 | 2,352.47 | 1.18 |
| CASING | 9 7/8" 64.10# Q-125 SLIJII WEARSOX CENT USED BARE NONE | C | NOT TVI INSP | 2 | 88.05 | 5,644.01 | 2.82 |
| CASING | 9 7/8" 64.10# Q-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 27 | 1,180.90 | 75,695.69 | 37.85 |
| CASING | 9 7/8" 64.10# Q-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER - MOLD ON (1) | 4 | 175.20 | 11,230.32 | 5.62 |
| CASING | 9 7/8" 64.10# Q-125 SLIJII WEARSOX CENT NEW BARE WHITE | C | OCR127 | 10 | 441.30 | 28,287.33 | 14.14 |
| CASING | 9 7/8" 64.10# Q-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE NONE | C | NOT TVI INSP | 15 | 659.70 | 42,286.77 | 21.14 |
| CASING | 9 7/8" 64.10# Q-125 SLIJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 544 | 23,402.00 | 1,500,068.20 | 750.03 |
| CASING | 10 1/8" 79.22# JFE-125T SLIJII GUIDE SHOE NEW BARE WHITE | C | READY TO RUN | 2 | 91.20 | 7,224.86 | 3.61 |
| CASING | 10 1/8" 79.22# JFE-125T SLIJII CENT SUB NEW BARE WHITE | C | READY TO RUN | 84 | 3,799.25 | 300,976.59 | 150.49 |
| CASING | 10 1/8" 79.29# Q125 ICY TSH WEDGE 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 16 | 712.00 | 56,454.48 | 28.23 |
| CASING | 10 3/4" 45.50# HCN-80 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 4 | 179.30 | 8,158.15 | 4.08 |
| CASING | 10 3/4" 45.50# HCN-80 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 9 | 402.55 | 18,316.03 | 9.16 |
| CASING | 10 3/4" 45.50# HCN-80 BUTTRESS T&C NEW BARE WH-G-R | C | BAD PIN | 1 | 46.50 | 2,115.75 | 1.06 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

## INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

### FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 1 | 40.10 | 1,824.55 | 0.91 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-R-G | C | BAD BOX | 2 | 89.45 | 4,069.98 | 2.03 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 5 | 207.60 | 9,445.80 | 4.72 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS HANGER NEW BARE WHITE* | C | READY TO RUN | 1 | 42.10 | 1,915.55 | 0.96 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 2 | 81.75 | 3,719.63 | 1.86 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS FLOAT COLLAR NEW BARE WHITE | C | READY TO RUN | 1 | 45.50 | 2,070.25 | 1.04 |
| CASING | 10 3/4" 45.50# J-55 BUTTRESS FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 45.00 | 2,047.50 | 1.02 |
| CASING | 10 3/4" 45.50# L-80 BUTTRESS T&C NEW BARE WHITE | C | OCR127 | 1 | 43.70 | 1,988.35 | 0.99 |
| CASING | 10 3/4" 45.50# L-80 BUTTRESS T&C USED BARE NONE | C | CUT OFF PIN | 1 | 44.00 | 2,002.00 | 1.00 |
| CASING | 10 3/4" 45.50# L-80 DUTCHMAN T&C USED BARE NONE | C | CUT OFF PIN | 1 | 44.00 | 2,002.00 | 1.00 |
| CASING | 10 3/4" 45.50# L-80 DUTCHMAN T&C USED BARE NONE | C | CUT OFF EA. END | 2 | 88.00 | 4,004.00 | 2.00 |
| CASING | 10 3/4" 45.50# L-80 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 5 | 217.15 | 9,880.33 | 4.94 |
| CASING | 10 3/4" 45.50# P-110 IC BUTTRESS T&C NEW BARE WHITE | C | KENDEX | 11 | 441.05 | 20,067.78 | 10.03 |
| CASING | 10 3/4" 45.50# P-110 IC BUTTRESS T&C USED BARE NONE | C | NOT TV/ INSP | 1 | 44.00 | 2,002.00 | 1.00 |
| CASING | 10 3/4" 45.50# P-110 IC BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 3 | 118.20 | 5,378.10 | 2.69 |
| CASING | 10 3/4" 59.45# HCQ-125 SLIIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 492 | 22,643.90 | 1,346,179.81 | 673.09 |
| CASING | 10 3/4" 60.70# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 41.85 | 2,540.30 | 1.27 |
| CASING | 10 3/4" 60.70# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 4 | 168.60 | 10,234.02 | 5.12 |
| CASING | 10 3/4" 65.70# Q-125 HC SLIIII INTEGRAL JOINT (IJ) USED BARE YEL-RD | C | BAD BOX | 1 | 44.95 | 2,953.22 | 1.48 |
| CASING | 10 3/4" 65.70# Q-125 HC SLIIII INTEGRAL JOINT (IJ) USED BARE YEL-RD | C | BAD PIN | 2 | 87.10 | 5,722.47 | 2.86 |
| CASING | 10 3/4" 65.70# Q-125 HC SLIIII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 11 | 480.93 | 31,597.10 | 15.80 |
| CASING | 10 3/4" 72.40# Q-125 PLAIN END PLAIN END NEW BARE NONE | C | NO COMMENTS | 153 | 6,048.10 | 437,882.44 | 218.94 |
| CASING | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS NEW BARE WH-RD | C | BAD PIN | 9 | 383.20 | 28,050.24 | 14.03 |
| CASING | 10 3/4" 73.20# TN-125-HC MAC II DOPELESS NEW BARE WHITE | C | DOPELESS CONNS | 13 | 510.05 | 37,335.66 | 18.67 |
| CASING | 10 3/4" 85.30# Q125 ICY MAC II INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 18 | 793.90 | 67,720.05 | 33.86 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 42.90 | 2,788.50 | 1.39 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 40.45 | 2,629.25 | 1.31 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 FLOAT COLLAR NEW BARE WHITE | C | READY TO RUN | 1 | 43.00 | 2,795.00 | 1.40 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 42.50 | 2,762.50 | 1.38 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER - MOLD ON (2) | 3 | 122.85 | 7,985.25 | 3.99 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN AND BOX | 2 | 82.30 | 5,349.50 | 2.67 |

**TUBOSCOPE GOLD™**

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

# INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN AND BOX | 15 | 620.45 | 40,329.25 | 20.16 |
| CASING | 11 3/4" 65.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 2 | 81.65 | 5,307.25 | 2.65 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD PIN AND BOX | 1 | 44.65 | 2,902.25 | 1.45 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 1 | 42.75 | 2,778.75 | 1.39 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 13 | 558.55 | 36,305.75 | 18.15 |
| CASING | 11 3/4" 65.00# JFE-110T HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 1 | 42.80 | 2,782.00 | 1.39 |
| CASING | 11 3/4" 65.00# Q-125 HC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 9 | 352.75 | 22,928.75 | 11.46 |
| CASING | 11 3/4" 65.00# Q-125 IC HYD 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 18 | 732.25 | 47,596.07 | 23.80 |
| CASING | 11 3/4" 69.48# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 12 | 505.90 | 35,149.93 | 17.57 |
| CASING | 11 3/4" 69.48# HCQ-125 STL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN | 13 | 549.50 | 38,179.26 | 19.09 |
| CASING | 11 7/8" 70.26# Q125 XHP TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 85 | 3,633.50 | 255,289.91 | 127.64 |
| CASING | 11 7/8" 70.26# VM-125-HC PLAIN END PLAIN END NEW BARE NONE | C | STORAGE ONLY | 121 | 5,396.20 | 379,137.01 | 189.57 |
| CASING | 11 7/8" 71.80# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 26 | 1,124.57 | 80,744.34 | 40.37 |
| CASING | 11 7/8" 71.80# HCQ-125 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 1 | 42.95 | 3,083.81 | 1.54 |
| CASING | 11 7/8" 71.80# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN | 10 | 427.95 | 30,726.81 | 15.36 |
| CASING | 11 7/8" 71.80# HCQ-125 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 20 | 853.31 | 61,267.30 | 30.63 |
| CASING | 11 7/8" 71.80# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 142 | 6,238.45 | 447,920.71 | 223.96 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | READY TO RUN BOL PTC | 21 | 954.85 | 68,558.23 | 34.28 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN BOL PTC | 18 | 822.38 | 59,046.84 | 29.52 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 11 | 504.00 | 36,187.20 | 18.09 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 19 | 869.20 | 62,408.56 | 31.20 |
| CASING | 11 7/8" 71.80# Q-125 IC TSH 523 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN AND BOX | 3 | 137.30 | 9,858.14 | 4.93 |
| CASING | 11 7/8" 71.80# TN-125-HC TSH 523 DPLS CENT SUB NEW BARE WH-GRN | C | NO HEAT # | 1 | 48.80 | 3,503.84 | 1.75 |
| CASING | 11 7/8" 71.80# TN-125-HC TSH 523 DPLS CENT SUB NEW BARE WHITE | C | READY TO RUN | 42 | 1,918.95 | 137,780.61 | 68.89 |
| CASING | 11 7/8" 71.80# TN-125-HC TSH 523 DPLS CENT SUB NEW BARE WH-RD | C | BAD BOX | 5 | 223.75 | 16,065.25 | 8.03 |
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS FLOAT SHOE NEW BARE WHITE | C | OCR127 | 1 | 42.65 | 2,900.20 | 1.45 |
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS FLOAT COLLAR NEW BARE WHITE | C | OCR127 | 1 | 42.75 | 2,907.00 | 1.45 |
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS T&C NEW BARE WH-RD | C | BAD COUPLING | 3 | 122.55 | 8,333.40 | 4.17 |
| CASING | 13 3/8" 68.00# HCL80 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 3 | 120.65 | 8,204.20 | 4.10 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

# INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN | 1 | 43.00 | 2,924.00 | 1.46 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 9 | 404.19 | 27,484.92 | 13.74 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 9 | 407.65 | 27,720.20 | 13.86 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-RD* | C | BAD BOX | 1 | 45.50 | 3,094.00 | 1.55 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 2 | 88.90 | 6,045.20 | 3.02 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS FLOAT SHOE NEW BARE WHITE | C | READY TO RUN | 1 | 42.12 | 2,864.16 | 1.43 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS FLOAT COLLAR NEW BARE WHITE | C | READY TO RUN | 1 | 43.00 | 2,924.00 | 1.46 |
| CASING | 13 3/8" 68.00# J-55 BUTTRESS T&C NEW BARE | C | REPAIRED | 2 | 90.38 | 6,145.84 | 3.07 |
| CASING | 13 3/8" 68.00# NT-80 GB BUTTRESS T&C SCC NEW BARE WH-G-R | C | BAD PIN AND BOX | 1 | 42.50 | 2,890.00 | 1.45 |
| CASING | 13 3/8" 68.00# NT80LHE BUTTRESS T&C NEW BARE WHITE | C | NO COMMENTS | 2 | 87.30 | 5,936.40 | 2.97 |
| CASING | 13 3/8" 68.00# NT80LHE DUTCHMAN/CUT-OFF PIN T&C USED BARE NONE | C | NOT TVI INSP | 1 | 89.00 | 6,052.00 | 3.03 |
| CASING | 13 3/8" 68.00# NT80LHE CUT OFF PIN CUT OFF USED BARE NONE | C | NOT TVI INSP | 1 | 18.00 | 1,224.00 | 0.61 |
| CASING | 13 3/8" 70.67# P-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-G-R | C | BAD BOX | 3 | 119.75 | 8,462.73 | 4.23 |
| CASING | 13 3/8" 70.67# P-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 2 | 83.00 | 5,865.61 | 2.93 |
| CASING | 13 3/8" 72.00# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN BOL PTC | 12 | 489.30 | 35,229.60 | 17.61 |
| CASING | 13 3/8" 72.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | READY TO RUN | 6 | 252.10 | 18,151.20 | 9.08 |
| CASING | 13 3/8" 72.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 1 | 44.50 | 3,204.00 | 1.60 |
| CASING | 13 3/8" 72.00# HCP-110 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 1 | 45.90 | 3,304.80 | 1.65 |
| CASING | 13 3/8" 72.00# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 1 | 40.80 | 2,937.60 | 1.47 |
| CASING | 13 3/8" 72.00# HCP-110 HYD 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 8 | 334.85 | 24,109.20 | 12.05 |
| CASING | 13 3/8" 72.00# HCP-110 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 6 | 255.10 | 18,367.20 | 9.18 |
| CASING | 13 3/8" 72.00# HCP-110 BUTTRESS T&C NEW BARE WHT-GR | C | READY TO RUN | 2 | 80.75 | 5,814.00 | 2.91 |
| CASING | 13 3/8" 72.00# HCQ-125 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 6 | 246.25 | 17,730.00 | 8.87 |
| CASING | 13 3/8" 72.00# HCQ-125 BUTTRESS T&C NEW BARE WH-RD | C | BAD BOX | 1 | 43.35 | 3,121.20 | 1.56 |
| CASING | 13 3/8" 72.00# HCQ-125 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 2 | 85.35 | 6,145.20 | 3.07 |
| CASING | 13 3/8" 72.00# P-110 IC BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN BOL 2000 | 7 | 329.15 | 23,699.11 | 11.85 |
| CASING | 13 5/8" 88.20# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN AND BOX | 1 | 45.30 | 3,995.46 | 2.00 |
| CASING | 13 5/8" 88.20# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 2 | 87.40 | 7,708.68 | 3.85 |
| CASING | 13 5/8" 88.20# HCQ-125 SLX INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 4 | 178.85 | 15,774.57 | 7.89 |

Copyright 2005. National Oilwell Varco, L.P.

## INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 13 5/8" 88.20# JFE-125T G8 CDE BUTTRESS T&C NEW BARE WH-RD | C | BAD BOX | 1 | 42.50 | 3,748.50 | 1.87 |
| CASING | 13 5/8" 88.20# JFE-125T G8 CDE BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 1 | 43.15 | 3,805.83 | 1.90 |
| CASING | 13 5/8" 88.20# Q-125 SLJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 42 | 1,789.70 | 157,851.54 | 78.93 |
| CASING | 13 5/8" 88.20# Q-125 HC SLJII INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER - SLIP ON (1) | 4 | 172.90 | 15,249.78 | 7.62 |
| CASING | 13 5/8" 88.20# Q-125 HC SLJII INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 1 | 44.00 | 3,880.80 | 1.94 |
| CASING | 13 5/8" 88.20# Q-125 HC SLJII INTEGRAL JOINT (IJ) NEW BARE WH-GR2 | C | OCR127 | 4 | 162.95 | 14,372.19 | 7.19 |
| CASING | 13 5/8" 88.20# SM-125SS SLJII INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 2 | 88.00 | 7,761.60 | 3.88 |
| CASING | 13 5/8" 88.20# SM-125SS INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 9 | 361.35 | 31,871.07 | 15.94 |
| CASING | 13 5/8" 88.20# SM-125TT SLJII INTEGRAL JOINT (IJ) NEW BARE WH-GR2 | C | OCR127 | 10 | 399.25 | 35,213.85 | 17.61 |
| CASING | 14" 112.89# Q125-IC TCSH 523 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 29 | 1,218.40 | 137,545.18 | 68.77 |
| CASING | 14" 115.53# Q125 ICY TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-PUR | C | OCR127 INSP | 35 | 1,395.20 | 161,187.46 | 80.59 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WH-RD | C | BAD PIN | 2 | 70.55 | 4,585.75 | 2.29 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WH-R-G | C | BAD PIN | 5 | 212.90 | 13,838.50 | 6.92 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C USED BARE NONE | C | NOT TVI INSP | 2 | 77.20 | 5,018.00 | 2.51 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WH-RD | C | BAD COUPLING | 1 | 35.00 | 2,275.00 | 1.14 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WHITE | C | OCR127 | 10 | 418.25 | 27,186.25 | 13.59 |
| CASING | 16" 65.00# H-40 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 42.25 | 2,746.25 | 1.37 |
| CASING | 16" 94.81# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD PIN | 1 | 36.35 | 3,446.34 | 1.72 |
| CASING | 16" 94.81# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 3 | 123.60 | 11,718.52 | 5.86 |
| CASING | 16" 94.81# HCQ-125 TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 4 | 164.10 | 15,558.32 | 7.78 |
| CASING | 16" 94.81# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | BAD PIN | 1 | 43.50 | 4,124.24 | 2.06 |
| CASING | 16" 94.81# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | BAD BOX | 5 | 216.60 | 20,535.85 | 10.27 |
| CASING | 16" 94.81# Q-125 IC TSH 513 INTEGRAL JOINT (IJ) NEW BARE WH-RD* | C | BAD BOX | 6 | 254.65 | 24,143.37 | 12.07 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-RD* | C | BAD BOX | 1 | 44.50 | 4,316.50 | 2.16 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-GRN-RD | C | BAD PIN AND BOX | 1 | 38.75 | 3,758.75 | 1.88 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN AND BOX | 1 | 41.95 | 4,069.15 | 2.03 |
| CASING | 16" 97.00# HCN-80 BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 2 | 90.85 | 8,812.45 | 4.41 |
| CASING | 16" 97.00# Q125 HP BUTTRESS T&C NEW BARE WH-RD* | C | BAD PIN | 22 | 908.50 | 88,124.50 | 44.06 |
| CASING | 16" 97.00# Q125 HP SLSF FLUSH JOINT NEW BARE WHITE | C | OCR127 INSP | 605 | 25,227.55 | 2,447,072.35 | 1,223.54 |
| CASING | 18" 116.09# Q125 HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE* | C | OCR127 | 1 | 39.15 | 4,544.92 | 2.27 |
| CASING | 18" 116.09# Q125 HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 INSP | 230 | 8,974.52 | 1,041,852.03 | 520.93 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

## INVENTORY SUMMARY CURRENT BALANCE

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 18" 117.00# Q-125-HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | CENTRALIZER SUB | 4 | 170.20 | 19,913.40 | 9.96 |
| CASING | 18" 117.00# Q-125-HP HDL INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 10 | 406.55 | 47,566.35 | 23.78 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS T&C USED BARE NONE | C | CUT OFF PIN | 1 | 24.00 | 2,100.00 | 1.05 |
| CASING | 18 5/8" 87.50# J-55 DUTCHMAN T&C USED BARE NONE | C | CUT OFF EA. END | 2 | 75.00 | 6,562.50 | 3.28 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS HANGER NEW BARE WH-GRN | C | NO HEAT # | 1 | 44.35 | 3,880.63 | 1.94 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS FLOAT COLLAR NEW BARE WH-GRN | C | NO HEAT # | 1 | 40.80 | 3,570.00 | 1.79 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS T&C NEW BARE WH-GRN | C | NO HEAT # | 1 | 43.60 | 3,815.00 | 1.91 |
| CASING | 18 5/8" 87.50# J-55 BUTTRESS FLOAT SHOE NEW BARE WH-GRN | C | NO HEAT # | 1 | 45.80 | 4,007.50 | 2.00 |
| CASING | 18 5/8" 99.50# J-55 BUTTRESS SPECIAL CLEAR, BBE NEW BARE WH-GRN | C | NO HEAT # | 8 | 337.15 | 33,546.43 | 16.77 |
| CASING | 20" 94.00# J-55 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 19 | 865.54 | 81,360.76 | 40.68 |
| CASING | 20" 106.50# J-55 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 4 | 173.50 | 18,477.75 | 9.24 |
| CASING | 20" 133.00# X-56 GB BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 2 | 87.50 | 11,637.50 | 5.82 |
| CASING | 20" 133.00# X-56 BUTTRESS T&C NEW BARE WHITE | C | READY TO RUN | 11 | 478.85 | 63,687.05 | 31.84 |
| CASING | 20" 169.00# X-56 BUTTRESS T&C NEW BARE WHITE* | C | READY TO RUN BOL 2000 | 10 | 444.85 | 75,179.65 | 37.59 |
| TUBING | 2 3/8" 4.70# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 5 | 158.50 | 744.95 | 0.37 |
| TUBING | 2 3/8" 4.70# 13CR85 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 6 | 190.95 | 897.47 | 0.45 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 54 | 1,714.15 | 11,141.98 | 5.57 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) USED BARE WHITE | C | NOT TVI INSP | 15 | 474.65 | 3,085.23 | 1.54 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE* | C | BENT TUBE | 1 | 31.70 | 206.05 | 0.10 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD BOX | 1 | 31.70 | 206.05 | 0.10 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE NONE | C | NOT TVI INSP | 2 | 62.80 | 408.20 | 0.20 |
| TUBING | 2 7/8" 6.50# 13CR85 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 68 | 2,158.45 | 14,029.93 | 7.01 |
| TUBING | 2 7/8" 6.50# 13CR95 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 22 | 694.80 | 4,516.20 | 2.26 |
| TUBING | 2 7/8" 6.50# 13CR95 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-GRN | C | KENDEX | 1 | 31.75 | 206.38 | 0.10 |
| TUBING | 2 7/8" 6.50# 13CR95 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | KENDEX | 54 | 1,701.80 | 11,061.70 | 5.53 |
| TUBING | 2 7/8" 6.50# JFE-13CR-95 BTS-8 INTEGRAL JOINT (IJ) NEW BARE WH-RD | C | BAD PIN | 1 | 31.80 | 206.70 | 0.10 |
| TUBING | 2 7/8" 6.50# JFE-13CR-95 BTS-8 INTEGRAL JOINT (IJ) USED BARE NONE | C | NOT TVI INSP | 3 | 95.05 | 617.83 | 0.31 |
| TUBING | 2 7/8" 6.50# L-80 BTS-8PR INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 1 | 31.25 | 203.13 | 0.10 |
| TUBING | 2 7/8" 7.90# 13CR110 BTS-6 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 10 | 315.05 | 2,488.90 | 1.24 |
| TUBING | 3 1/2" 9.30# L-80 1% CR API 8RD EUE MODIFIED T&C NEW TK-70 WHITE | C | OCR127 | 11 | 352.25 | 3,275.93 | 1.64 |
| TUBING | 3 1/2" 12.95# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) NEW BARE WHITE | C | OCR127 | 44 | 1,394.95 | 18,064.60 | 9.03 |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

## INVENTORY SUMMARY CURRENT BALANCE

**FIELDWOOD ENERGY LLC, HOUSTON**

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| TUBING | 4 1/2" 15.00# HCP-110 ULTRA SF FLUSH JOINT NEW BARE WHITE | C | READY TO RUN | 17 | 710.00 | 10,650.00 | 5.33 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C NEW BARE WH-RD | C | BAD PIN | 2 | 79.95 | 1,207.25 | 0.60 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C USED BARE YEL-RD | C | BAD PIN AND BOX | 1 | 43.30 | 653.83 | 0.33 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | BOLSTERED - KENDEX | 21 | 902.65 | 13,630.02 | 6.82 |
| TUBING | 4 1/2" 15.10# 13CR95 JFE LION CR T&C NEW BARE WHITE | C | BOLSTERED | 12 | 519.30 | 7,841.43 | 3.92 |
| TUBING | 4 1/2" 15.20# 13CR95 JFE LION CR T&C UNKNOWN BARE NONE | C | BENT TUBE | 1 | 44.00 | 668.80 | 0.33 |
| TUBING | 4 1/2" 15.50# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) USED BARE RED | C | INSP REJECT | 2 | 78.05 | 1,209.78 | 0.60 |
| TUBING | 4 1/2" 15.50# HP1-13CR110 BTS-6 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | C | STORAGE ONLY | 15 | 593.35 | 9,196.93 | 4.60 |
| TUBING | 4 1/2" 15.50# :80 BTS-6PR INTEGRAL JOINT (IJ) NEW TK-34 XT WHITE* | C | READY TO RUN | 12 | 379.40 | 5,880.70 | 2.94 |
| TUBING | 4 1/2" 17.00# VM-110 13CR55 VAM TOP HC T&C NEW BARE WHITE | C | BOLSTERED - KENDEX | 4 | 171.00 | 2,907.00 | 1.45 |
| TUBING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD BOX | 2 | 85.15 | 1,609.34 | 0.80 |
| TUBING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD PIN | 2 | 84.70 | 1,600.83 | 0.80 |
| TUBING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 3 | 128.60 | 2,430.54 | 1.22 |
| TUBING | 4 1/2" 18.90# HP213CR110 JFE LION T&C NEW BARE WHITE | C | BOLSTERED - OCR127 | 41 | 1,724.85 | 32,599.67 | 16.30 |
| TUBING | 5 1/2" 23.00# 13CR95 BTS-6 INTEGRAL JOINT (IJ) UNKNOWN BARE NONE | C | STORAGE ONLY | 23 | 910.04 | 20,930.92 | 10.47 |
| TUBING | 5 1/2" 23.00# 13CR95 JFE LION CR T&C UNKNOWN BARE NONE | A | TO BE INSPECTED | 40 | 1,760.00 | 40,480.00 | 20.24 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 1 | 42.75 | 1,111.50 | 0.56 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD BOX | 2 | 84.85 | 2,206.10 | 1.10 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WHITE | C | BOLSTERED - OCR127 | 45 | 1,926.05 | 50,077.30 | 25.04 |
| TUBING | 5 1/2" 26.00# HP213CR110 JFE LION T&C NEW BARE WH-RD | I | BAD PIN | 3 | 129.80 | 3,374.80 | 1.69 |
| TUBING | 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C USED BARE RED | I | BAD PIN | 1 | 44.00 | 1,144.00 | 0.57 |
| TUBING | 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C USED BARE YELLOW | I | OCR127 | 21 | 924.00 | 24,024.00 | 12.01 |
| TUBING | 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C USED BARE YEL-RD | I | BAD BOX | 27 | 1,188.00 | 30,888.00 | 15.44 |
| TUBING | 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C USED BARE YEL-RD | I | BAD PIN | 90 | 3,960.00 | 102,960.00 | 51.48 |
| TUBING | 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C USED BARE YEL-RD | I | BAD PIN AND BOX | 142 | 6,248.00 | 162,448.00 | 81.22 |
| TUBING | 5 1/2" 29.70# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD PIN AND BOX | 3 | 126.00 | 3,742.20 | 1.87 |
| TUBING | 5 1/2" 29.70# HP213CR110 JFE LION T&C NEW BARE WHITE | C | BOLSTERED - OCR127 | 40 | 1,709.40 | 50,769.18 | 25.38 |
| TUBING | 5 1/2" 29.70# HP213CR110 JFE LION T&C NEW BARE WH-RD | C | BAD PIN | 5 | 213.05 | 6,327.59 | 3.16 |

# INVENTORY SUMMARY CURRENT BALANCE

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

## FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| TUBING | 5 1/2" 29.70# HP2-13CR110 JFE LION CR T&C USED BARE YEL-RD | I | BAD PIN AND BOX | 2 | 88.00 | 2,613.60 | 1.31 |
| TUBING | 5 1/2" 29.70# HP2-13CR110 JFE LION CR T&C USED BARE YEL-RD | I | BAD PIN | 4 | 176.00 | 5,227.20 | 2.61 |
| VIT | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) VAM DRS NA T&C USED BARE WHITE | C | BOLSTERED - KENDEX | 58 | 2,300.30 | 105,537.76 | 52.77 |
| VIT | 6" X 4 1/2" 30.38# 15.50# (45.88#) HP113CR115(O) HP113CR115(I) VAM DRS NA T&C USED BARE WH-RD* | C | BAD PIN | 1 | 39.60 | 1,816.85 | 0.91 |
| VIT | 7 1/16" X 5 1/2" 40.40# 29.70# (70.10#) HP213CR115(O) HP213CR115(I) VAM TOP HC T&C NEW BARE WHITE | C | KORRGUARD STORAGE | 8 | 291.12 | 20,407.51 | 10.20 |
| | CUSTOMER TOTALS: | | | 8,201 | 349,239.79 | 18,166,086.97 | 9,083.04 |

TUBOSCOPE GOLD™

Copyright 2005. National Oilwell Varco, L.P.

ORIGINAL

# Tuboscope | NOV Wellbore Technologies

National Oilwell Varco, LP dba Tuboscope

**LEDGER NO. 002**

1844 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (985) 631-9596

## Invoice: 5322020

| AFE NUMBER | SALES ORDER # | | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|
| FW202002 | 4340311 | SR | 08/03/20 | 2006533 | 1 of 3 |
| **CUSTOMER NUMBER** | **CUSTOMER REF** | | **FREIGHT TERMS** | | |
| 945319 | PO# 26641 | | Carriage and Insurance Paid To | | |
| **FINAL DESTINATION** | **GOLD WO NUMBER** | | **KEY REF** ROUTING# 580002 | | |
| UNITED STATES | 7800101 | | | | |
| **TERMS:** Net 30 Days | | | **REF 2** PULLED | | |
| **WELL DESCRIPTION:** GC 40 #1 OCSG 34536 | | | **REF 3** ROWAN RESOLUTE | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:** FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:** TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: TUBING USED BARE 5 1/2 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS OCR127 TRACKING #: 7800101 TOTAL LENGTH: 11980.05 TOTAL JOINTS: 281 | | | | |
| 1.000 | 203B-TB VISUAL THREAD INSPECTION | 281.00 | JT | 18.1300 | 5,094.53 |
| 1.001 | 700L-TB UNLOADING (RETURN FROM WELL) | 3,114.81 | CW | .4000 | 1,245.92 |
| 1.002 | 99ZC-TB THREAD COMP REDOPE OCR127 | 281.00 | JT | 2.0500 | 576.05 |
| 1.003 | 730P-TB INNER YARD MOVEMENT TO AND FROM INSPECTION | 3,114.81 | CW | .4000 | 1,245.92 |
| 1.004 | 300P-TB FULL LENGTH DRIFT INSP | 281.00 | JT | 5.9000 | 1,657.90 |
| 1.005 | 380J-TB INSPECTION SALTWATER CONTAMINATION TEST 10% SALWATER TEST- 28 JOINTS | 28.00 | JT | 8.4000 | 235.20 |
| 1.006 | 98AA-TB CLEANING SOLVENT | 281.00 | JT | 1.4200 | 399.02 |

CONTINUED NEXT PAGE

**Tuboscope | NOV** Wellbore Technologies

**ORIGINAL**

**Invoice: 5322020**

Page 2 of 3

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 1.007 | **450C-TB**<br>BRUSH & SPRAY  (OD) | 281.00 | JT | 24.4000 | 6,856.40 |
| | | | | SUBTOTAL | 17,310.94 |
| | ITEM# 02: TUBING USED BARE 5 1/2 29.70# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS OCR127<br>TRACKING #: 7800101 TOTAL LENGTH: 253.85 TOTAL JOINTS: 6 | | | | |
| 2.000 | **203B-TB**<br>VISUAL THREAD INSPECTION | 6.00 | JT | 18.1300 | 108.78 |
| 2.001 | **700L-TB**<br>UNLOADING (RETURN FROM WELL) | 75.39 | CW | .4000 | 30.16 |
| 2.002 | **99ZC-TB**<br>THREAD COMP<br>REDOPE OCR127 | 6.00 | JT | 2.0500 | 12.30 |
| 2.003 | **730P-TB**<br>INNER YARD MOVEMENT<br>TO AND FROM INSPECTION | 75.39 | CW | .4000 | 30.16 |
| 2.004 | **300P-TB**<br>FULL LENGTH DRIFT INSP | 6.00 | JT | 5.9000 | 35.40 |
| 2.005 | **380J-TB**<br>INSPECTION SALTWATER CONTAMINATION TEST<br>10% SALWATER TEST- 1 JOINT | 6.00 | JT | 8.4000 | 50.40 |
| 2.006 | **98AA-TB**<br>CLEANING SOLVENT | 6.00 | JT | 1.4200 | 8.52 |
| 2.007 | **450C-TB**<br>BRUSH & SPRAY  (OD) | 6.00 | JT | 24.4000 | 146.40 |
| | | | | SUBTOTAL | 422.12 |

CONTINUED NEXT PAGE

**Tuboscope | NOV** Wellbore Technologies

**ORIGINAL**

Invoice: 5322020

Page 3 of 3

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative. | | | | |

| | | | | |
|---|---|---|---|---|
| | | **Subtotal** | | 17,733.06 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD** | Total | | **17,733.06** |

**REMITTANCE INSTRUCTIONS**

| Bank Deposit / Lockbox Payment | Wire Instructions (Wires Only) |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER # 7800101**

FIELDWOOD ENERGY LLC
**2000 W SAM HOUSTON PKWY S STE 1200**
**HOUSTON, TX 77042-3623 US**

| | | | |
|---|---|---|---|
| | | DATE | 7/30/2020 |
| | | ACCOUNT # | TUB-28843-B000-SH |
| | | WELL CHARGE | GC 40 #1  OCSG 34536 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | PO# 26641/ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | PULLED |
| TRACKING # | 7800101 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 1    USED TUBING BARE 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS OCR127

| | | | | | | |
|---|---|---|---|---|---|---|
| QTY | 281 | INSPECTION COMPLETED DATE | 7/29/2020 | Inventory Ref | | |
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC | |
| LOT # | | RELEASE CO | | LOCATION | | |

### SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALWATER TEST-28 JOINTS | 450C-I | BRUSH & SPRAY  (OD) |
| | | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 700L-I | UNLOADING (RETURN FROM WELL) | | |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

### SPECIFICATIONS USED  - CUSTOMER - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND FOUND TO BE | YELLOW | VISUAL THREAD & FLD | 21 | 899.55 |
| MATERIAL PROCESSED AND REJECTED | YEL-RD | INSPECTION REJECTS | 259 | 11,038.10 |
| MATERIAL PROCESSED AND REJECTED | RED | INSPECTION REJECT | 1 | 42.40 |
| | | TOTAL MATERIAL | 281 | 11,980.05 |

COMMENTS  SERVICED BY: LEONARD DUGAS
7/24/2020

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER # 7800101**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | |
|---|---|---|
| | DATE | 7/30/2020 |
| | ACCOUNT # | TUB-28843-B000-SH |
| | WELL CHARGE | GC 40 #1 OCSG 34536 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | PO# 26641/ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | PULLED |
| TRACKING # | 7800101 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- SUMMARY REPORT -- -- -- -- -- -- -- -- --

ITEM # 2    USED TUBING BARE 5 1/2" 29.70# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS OCR127

| QTY | 6 | INSPECTION COMPLETED DATE | 7/29/2020 | Inventory Ref | |
|---|---|---|---|---|---|
| HEAT # | | RELEASE # | | SUPPLIER | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALWATER TEST-1 JOINT | 450C-I | BRUSH & SPRAY (OD) |
| | | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 700L-I | UNLOADING (RETURN FROM WELL) | | |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

## SPECIFICATIONS USED - CUSTOMER - API

| CONDITION | COLOR | SPECIFICATION | QUANTITY | LENGTH |
|---|---|---|---|---|
| MATERIAL PROCESSED AND REJECTED | YEL-RD | INSPECTION REJECTS | 6 | 253.85 |
| | | TOTAL MATERIAL | 6 | 253.85 |

COMMENTS  SERVICED BY: LEONARD DUGAS
7/24/2020

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA 70340
UNITED STATES

**WORK ORDER # 7800101**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | | |
|---|---|---|
| | DATE | 7/30/2020 |
| | ACCOUNT # | TUB-28843-B000-SH |
| | WELL CHARGE | GC 40 #1 OCSG 34536 |
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | PO# 26641/ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | PULLED |
| TRACKING # | 7800101 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- DEFECT REPORT -- -- -- -- -- -- -- -- -- --

ITEM # 1    USED TUBING BARE 5 1/2" 26.00# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS OCR127

| | | | | | |
|---|---|---|---|---|---|
| QTY | 281 | INSPECTION COMPLETED DATE | 7/29/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIED BY | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

### SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALWATER TEST-28 JOINTS | 450C-I | BRUSH & SPRAY (OD) |
| 700L-I | UNLOADING (RETURN FROM WELL) | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

### SPECIFICATIONS USED - CUSTOMER - API

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 77 | YEL-RD | 3,281.74 | BAD PIN (SCORED SEAL) | YES |
| 2 | YEL-RD | 85.24 | BAD PIN (GALLED THREADS) | YES |
| 1 | YEL-RD | 42.82 | BAD PIN (GALLED SEAL) | YES |
| 5 | YEL-RD | 213.10 | BAD PIN (DAMAGED SEAL) | YES |
| 5 | YEL-RD | 213.80 | BAD PIN (PITTED SEAL) | YES |
| 14 | YEL-RD | 595.70 | BAD BOX (SCORED SEAL) | YES |
| 1 | YEL-RD | 42.55 | BAD BOX (GALLED THREADS) | YES |
| 9 | YEL-RD | 382.95 | BAD BOX (PITTED SEAL) | YES |
| 3 | YEL-RD | 127.60 | BAD BOX (PITTED THREADS) | YES |
| 55 | YEL-RD | 2,344.66 | BAD BOX & BAD PIN (SCORED SEAL) | YES |
| 18 | YEL-RD | 767.16 | BAD BOX & BAD PIN (PITTED SEAL) | YES |
| 2 | YEL-RD | 85.24 | BAD BOX & BAD PIN (GALLED SEAL-BOX/SCORED SEAL-PIN) | YES |
| 2 | YEL-RD | 85.24 | BAD BOX & BAD PIN (SCORED SEAL-BOX/GALLED SEAL-PIN) | YES |
| 2 | YEL-RD | 85.24 | BAD BOX & BAD PIN (DAMAGED SEAL-BOX/SCORED SEAL-PIN) | YES |
| 3 | YEL-RD | 127.86 | BAD BOX & BAD PIN (SCORED SEAL-BOX/DAMAGED SEAL-PIN) | YES |
| 1 | YEL-RD | 42.62 | BAD BOX & BAD PIN (SCORED SEAL-BOX/DAMAGED THREADS-PIN) | YES |
| 41 | YEL-RD | 1,747.42 | BAD BOX & BAD PIN (PITTED SEAL-BOX/SCORED SEAL-PIN) | YES |
| 2 | YEL-RD | 85.24 | BAD BOX & BAD PIN (PITTED THREADS-BOX/SCORED SEAL-PIN) | YES |

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER #  7800101**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| DATE | 7/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1  OCSG 34536 |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | PO# 26641/ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | PULLED |
| TRACKING # | | REFERENCE 3 | ROWAN RESOLUTE |

| | | | | |
|---|---|---|---|---|
| 2 | YEL-RD | 85.24 | BAD BOX & BAD PIN (DAMAGE COUPLING-BOX/SCORED SEAL-PIN) | YES |
| 3 | YEL-RD | 127.86 | BAD BOX & BAD PIN (SCORED SEA-BOX/PITTED SEAL-PIN) | YES |
| 2 | YEL-RD | 85.24 | BAD BOX & BAD PIN (PITTED ROOTS-BOX/PITTED SEAL-PIN) | YES |
| 2 | YEL-RD | 85.24 | BAD BOX & BAD PIN (PITTED SEAL-BOX/GALLED SEAL-PIN) | YES |
| 3 | YEL-RD | 127.86 | BAD BOX & BAD PIN (GALLED THREADS-BOX/SCORED SEAL-PIN) | YES |
| 1 | YEL-RD | 42.62 | BAD BOX & BAD PIN (GALLED THREADS-BOX/PITTED SEAL-PIN) | YES |
| 1 | YEL-RD | 42.62 | BAD BOX & BAD PIN (SCORED SEAL-BOX/GALLED SEAL-PIN) | YES |
| 1 | YEL-RD | 42.62 | BAD BOX & BAD PIN (DAMAGED COUPLING-BOX/PITTED SEAL-PIN) | YES |
| 1 | YEL-RD | 42.62 | BAD BOX & BAD PIN (PITTED SEAL-BOX/GALLED THREADS-PIN) | YES |
| 1 | RED | 42.40 | INSP REJECT (PITTED SEAL-BOX/SCORED SEAL-PIN (TUBE)) | NO |

TOTAL REJECTS ON THIS PAGE

260     JTS     11,080.50

Repairable Joints: 259 jts -> Approximately   11,038.10

NOV TUBOSCOPE
AMELIA FACILITY
P.O. BOX1349
AMELIA, LA  70340
UNITED STATES

**WORK ORDER # 7800101**

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON, TX 77042-3623 US

| | |
|---|---|
| DATE | 7/30/2020 |
| ACCOUNT # | TUB-28843-B000-SH |
| WELL CHARGE | GC 40 #1 OCSG 34536 |

| | | | |
|---|---|---|---|
| ATTN | ACCOUNTS PAYABLE | AFE # | FW202002 |
| ORDERED BY | ACCOUNTS PAYABLE | PO/KEY REFERENCE | PO# 26641/ROUTING# 580002 |
| ORDER # | | REFERENCE 2 | PULLED |
| TRACKING # | 7800101 | REFERENCE 3 | ROWAN RESOLUTE |

-- -- -- -- -- -- -- -- -- -- **DEFECT REPORT** -- -- -- -- -- -- -- -- -- --

ITEM # 2   USED TUBING BARE 5 1/2" 29.70# HP2-13CR110 JFE LION CR T&C R-3 JFE SEAMLESS OCR127

| | | | | | |
|---|---|---|---|---|---|
| QTY | 6 | INSPECTION COMPLETED DATE | 7/29/2020 | Inventory Ref | |
| HEAT # | | RELEASE # | | SUPPLIED BY | FIELDWOOD ENERGY LLC |
| LOT # | | RELEASE CO | | LOCATION | |

## SERVICES

| CODE | SERVICE | CODE | SERVICE |
|---|---|---|---|
| 203B-I | VISUAL THREAD INSPECTION | 300P-I | FULL LENGTH DRIFT INSP |
| 380J-I | INSPECTION SALTWATER CONTAMINA 10% SALWATER TEST-1 JOINT | 450C-I | BRUSH & SPRAY  (OD) |
| 700L-I | UNLOADING (RETURN FROM WELL) | 730P-I | INNER YARD MOVEMENT TO AND FROM INSPECTION |
| 98AA-I | CLEANING SOLVENT | 99ZC-I | THREAD COMP REDOPE OCR127 |

### SPECIFICATIONS USED – CUSTOMER – API

| JOINTS # | COLOR | TOTAL LENGTH | DEFECT | REPAIRABLE? |
|---|---|---|---|---|
| 2 | YEL-RD | 84.70 | BAD PIN (DAMAGED SEAL ) | YES |
| 1 | YEL-RD | 41.85 | BAD PIN (SCORED SEAL) | YES |
| 1 | YEL-RD | 42.70 | BAD PIN (PITTED SEAL) | YES |
| 1 | YEL-RD | 42.30 | BAD BOX & BAD PIN (DAMAGED SEAL) | YES |
| 1 | YEL-RD | 42.30 | BAD BOX & BAD PIN (SCORED SEAL-BOX/DAMAGED SEAL-PIN) | YES |

TOTAL REJECTS ON THIS PAGE

6   JTS   253.85

Repairable Joints: 6 jts -> Approximately   253.85

**Robison, Wendy P**

| | |
|---|---|
| **From:** | Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com> |
| **Sent:** | Monday, August 3, 2020 7:36 AM |
| **To:** | Robison, Wendy P |
| **Subject:** | [EXTERNAL] New PO |



## Fieldwood Energy LLC Purchase Order #26641

Powered by 

Hi Wendy ,

You have received a new purchase order #26641 from Fieldwood Energy LLC Company.

| | |
|---|---|
| Submitted By | Kerby Dufrene |
| On Behalf Of | Kerby Dufrene |
| Supplier | TUBOSCOPE |
| Total | **17,733.06** |
| Items | **Handling, Preparation, and Storage of Production Tubing** |

**17,733.06**
USD

**View Order**

## More Detail

| | | | |
|---|---|---|---|
| **PO ID** | 26641 | **Department** | None |
| **Status** | Issued - Scheduled for email | **Last Opened** | None |
| **Order Date** | 08/03/20 | **Acknowledged At** | None |
| **Revision Date** | 08/03/20 | **Payment Term** | Net 60 |
| **Req #** | 24600 | **Shipping** | CPT |

**Supplier**

TUBOSCOPE 7909 PARKWOOD CIRCLE DRIVE
HOUSTON, TX 77036
United States Krystal.Suarez@nov.com +1 (346) 223-6319

**Shipping**

2000 W Sam Houston Pkwy S
Suite 1200
Houston, TX 77042
United States
Attn: Kerby Dufrene

## Lines

**Handling, Preparation, and Storage of Production Tubing** for **17,733.06**
Supplier **TUBOSCOPE** • Need By **07/30/20** • Account **AFE-FW202002-DEEPWATER-GC3940-_NA_-KATMAI-GC04001-3060-165** • Period **2020 - 07 - July**

Total **17,733.06** USD



Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

**Robison, Wendy P**

| | |
|---|---|
| **From:** | Kerby Dufrene <Kerby.Dufrene@Fwellc.com> |
| **Sent:** | Thursday, July 30, 2020 3:21 PM |
| **To:** | Darren Broussard |
| **Cc:** | Robison, Wendy P; Duval, Tina F |
| **Subject:** | [EXTERNAL] RE: FIELDWOOD DRAFT INVOICE 7800101 |

Darren,
Requisition 24600 was submitted for this invoice.
Regards,

*Kerby J. Dufrene*
*Sr. Deepwater Completions Engineer*
Completions Engineering Consultant
FIELDWOOD ENERGY
**2000 W. Sam Houston Pkwy S.**
**Houston, TX 77042**
281-677-5436 (Rowan Resolute Office)
713-969-1217 (Fieldwood Energy Office 15113)
979-481-9180 (Personal Mobile)
kerby.dufrene@fwellc.com (Company business)
kerbydufrene@hotmail.com (Personal business)

**From:** Darren Broussard <Darren.Broussard@Fwellc.com>
**Sent:** Thursday, July 30, 2020 2:47 PM
**To:** Kerby Dufrene <Kerby.Dufrene@Fwellc.com>
**Cc:** Robison, Wendy P <Wendy.Robison@nov.com>; Duval, Tina F <Tina.Duval@nov.com>
**Subject:** FW: FIELDWOOD DRAFT INVOICE 7800101
**Importance:** High

Kerby,

This draft invoice needs a PO.

Regards,

*Darren Broussard*

*Inventory Supervisor*

FIELDWOOD ENERGY

Deepwater Warehouse
108 Galbert Road
Lafayette, LA 70506
Office: (337) 210-8611
Cell: (337) 257-7208
**darren.broussard@fwellc.com**
**www.fieldwoodenergy.com**

**One Team. One Purpose.**
**Excellence-Respect-Integrity**

1





**From:** Robison, Wendy P <Wendy.Robison@nov.com>
**Sent:** Thursday, July 30, 2020 2:15 PM
**To:** Darren Broussard <Darren.Broussard@Fwellc.com>; Chris Jouban <Chris.Jouban@Fwellc.com>
**Subject:** FIELDWOOD DRAFT INVOICE 7800101
**Importance:** High

**External:** This Email is from an external sender. Be alert for Phishing. Do not click links if you do not know the sender.

Good Afternoon,

Please see attached Draft Invoice, submitting for PO. Please advise as soon as possible.

Thanks,


Wendy "MeMe" Robison
Administrative Assistant
PHONE:  985-631-1826
EMAIL:  wendy.robison@nov.com
**Tuboscope | NOV** Wellbore Technologies

ORIGINAL

# Tuboscope | NOV Wellbore Technologies

**Invoice: 5323626**

National Oilwell Varco, LP dba Tuboscope
**LEDGER NO. 002**

10222 SHELDON RD
HOUSTON, TX 77049-1250
UNITED STATES
Phone: (281) 456-8881
Fax:

| AFE NUMBER | SALES ORDER #<br>4341821   SR | DATE<br>08/05/20 | BRANCH PLANT<br>2000707 | PAGE<br>1 of 2 |
|---|---|---|---|---|
| CUSTOMER NUMBER<br>945319 | CUSTOMER REF<br>N/A | FREIGHT TERMS<br>Carriage and Insurance Paid To | | |
| FINAL DESTINATION<br>UNITED STATES | GOLD WO NUMBER<br>7815368 | KEY REF | | |
| TERMS:  Net 30 Days | | REF 2  SEE ATTACHED INVENTORY | | |
| WELL DESCRIPTION: TUBO SHELDON NORTH | | REF 3  JULY 2020 STORAGE | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

BILL TO:  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

SHIP TO:  TB US SHELDON NORTH STORAGE
10222 SHELDON RD
HOUSTON TX 77049-1250

| ITEM<br>NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED<br>PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER MONTHLY STORAGE/ INVENTORY CHARGES JULY 2020<br>TRACKING #: 7815368  TOTAL JOINTS: 398 | | | | |
| 1.000 | 725I-TB<br>STORAGE CHARGE | 832.96 | TN | .7000 | 583.07 |
| | | | SUBTOTAL | | 583.07 |

CONTINUED NEXT PAGE

Tuboscope | **NOV** Wellbore Technologies

ORIGINAL

Invoice: 5323626

Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | This document is subject to the current Terms and Conditions. If you would like a copy for your records, please contact your sales representative. | | | | |

| | | | |
|---|---|---|---|
| | | Subtotal | 583.07 |
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD**   Total | | **583.07** |

## REMITTANCE INSTRUCTIONS

| Bank Deposit / Lockbox Payment | Wire Instructions (Wires Only) |
|---|---|
| National Oilwell Varco, LP dba Tuboscope PO Box 201177 Dallas TX 75320-1177 | Wells Fargo Bank Acct: 4496880188 ABA: 121000248 SWIFT: WFBIUS6S |

NOV TUBOSCOPE
SHELDON NORTH FACILITY
10222 SHELDON ROAD
HOUSTON, TX 77049
UNITED STATES

**INVENTORY SUMMARY CURRENT BALANCE**
**INVENTORY STATUS AS OF 7/31/2020**

FIELDWOOD ENERGY LLC, HOUSTON

| MATERIAL TYPE | DESCRIPTION | STATUS | ENDS CONDITION | JOINTS | LENGTH | WEIGHT | TONS |
|---|---|---|---|---|---|---|---|
| CASING | 13 5/8" 88.20# Q-125 SLJ11 INTEGRAL JOINT (U) NEW BARE WHITE | C | NO COMMENTS | 48 | 2,085.33 | 183,926.11 | 91.96 |
| CASING | 13 5/8" 88.20# Q-125 HC SLJ11 INTEGRAL JOINT (U) NEW BARE WH-2ORANGE | C | NO COMMENTS | 23 | 960.21 | 84,690.52 | 42.35 |
| CASING | 13 5/8" 88.20# Q-125 HC SLJ11 INTEGRAL JOINT (U) NEW BARE WH-GRN-OR | C | NO COMMENTS | 18 | 743.48 | 65,574.94 | 32.79 |
| CASING | 13 5/8" 88.20# Q-125 HC SLJII INTEGRAL JOINT (U) NEW BARE NONE | C | NO COMMENTS | 44 | 1,936.00 | 170,755.20 | 85.38 |
| CASING | 13 5/8" 88.20# Q125# SLJIII INTEGRAL JOINT (U) NEW BARE NONE | C | NO COMMENTS | 10 | 440.00 | 38,808.00 | 19.40 |
| CASING | 13 5/8" 88.20# Q-125-HP SLJIII INTEGRAL JOINT (U) NEW BARE WH-GRN-OR | C | NO COMMENTS | 7 | 306.76 | 27,056.23 | 13.53 |
| CASING | 13 5/8" 88.20# SM-125SS SLJIII INTEGRAL JOINT (U) NEW BARE NONE | C | NO COMMENTS | 37 | 1,467.15 | 129,402.40 | 64.70 |
| CASING | 13 5/8" 88.20# SM-125TT SLJ11 INTEGRAL JOINT (U) NEW BARE WH-GR-GR | C | NO COMMENTS | 21 | 819.19 | 72,252.56 | 36.13 |
| CASING | 13 5/8" 88.20# VM-125-HC SLJ11 INTEGRAL JOINT (U) NEW BARE WH-2GR-2OR | C | NO COMMENTS | 7 | 280.92 | 24,777.14 | 12.39 |
| CASING | 13 5/8" 88.20# VM-125-HC SLJIII INTEGRAL JOINT (U) NEW BARE NONE | C | NO COMMENTS | 3 | 132.00 | 11,642.40 | 5.82 |
| CASING | 14" 116# Q-125/CY TSH 523 INTEGRAL JOINT (U) NEW BARE WHITE | C | NO COMMENTS | 148 | 6,101.15 | 707,733.72 | 353.87 |
| CASING | 14" 116# Q-125/CY TSH 523 INTEGRAL JOINT (U) NEW BARE WH-RD | C | NO COMMENTS | 5 | 206.48 | 23,952.06 | 11.98 |
| CASING | 18" 117.00# Q125 HP HDL INTEGRAL JOINT (U) NEW BARE WHITE | C | NO COMMENTS | 27 | 1,071.44 | 125,358.29 | 62.68 |
| | | | **CUSTOMER TOTALS:** | 398 | 16,550.11 | 1,665,929.58 | 832.96 |

Copyright 2005, National Oilwell Varco, L.P.

**Tuboscope | NOV** Wellbore Technologies

**Invoice: 5337473**

**National Oilwell Varco, LP dba Tuboscope**

**LEDGER NO. 002**

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (986) 631-9505

| AFE NUMBER | | SALES ORDER # | | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|---|
| ROUTING# 580002 | | 4357286     SR | | 08/28/20 | 2000706 | 1 of 2 |
| **CUSTOMER NUMBER** | | **CUSTOMER REF** | | **FREIGHT TERMS** | | |
| 945319 | | N/A | | Carriage and Insurance Paid To | | |
| **FINAL DESTINATION** | | **GOLD WO NUMBER** | | **KEY REF**   STORAGE CHARGE | | |
| UNITED STATES | | 7816481 | | | | |
| **TERMS:**   Net 30 Days | | | | **REF 2** | | |
| **WELL DESCRIPTION:** | | | | **REF 3** | | |

## Invoice

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER OTHER STORAGE CHARGE FOR AUGUST 2020, VARIOUS SIZES, GRADES, WEIGHTS AND CONNECTIONS TRACKING# 7690780, 7716450, 7723624, 7727576, 7748635, 7803104, TOTAL JOINTS: 8,201 TRACKING #: 7816481   TOTAL JOINTS: 8201 | | | | |
| 1.000 | **725E-TB** STORAGE / COVERED INVENTORY (201 JTS.) | 1.00 | EA | 750.0000 | 750.00 |
| 1.001 | **725I-TB** STORAGE CHARGE (OUTSIDE COVERED STORAGE) | 8,814.64 | TN | .7000 | 6,170.25 |
| | | | | **SUBTOTAL** | **6,920.25** |

CONTINUED NEXT PAGE

**TUBOSCOPE**
a division of
NATIONAL OILWELL VARCO, L.P.
Terms and Conditions of Sale

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession,  on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such  equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD,  OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location  and in  such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied  in Company's products and services (hereafter referred to as "Confidential  Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)   such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)   subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or  to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.



**Invoice: 5337473**

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | **DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.** | | | | |
| | **This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative.** | | | | |

| | | Subtotal | 6,920.25 |
|---|---|---|---|
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency:  **USD**  Total | | **6,920.25** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | **Wire Instructions (Wires Only)** |
|---|---|
| National Oilwell Varco, LP dba Tuboscope<br>PO Box 201177<br>Dallas TX 75320-1177 | Wells Fargo Bank<br>Acct: 4496880188<br>ABA: 121000248<br>SWIFT: WFBIUS6S |

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

ORIGINAL

**Invoice: 5343450**

**Tuboscope | NOV** Wellbore Technologies

**National Oilwell Varco, LP dba Tuboscope**
**LEDGER NO. 002**

10222 SHELDON RD
HOUSTON, TX 77049-1250
UNITED STATES
Phone: (281) 456-8881
Fax: (281) 456-6295

| AFE NUMBER | SALES ORDER #<br>4364732      SR | DATE<br>09/10/20 | BRANCH PLANT<br>2000707 | PAGE<br>1 of 2 |
|---|---|---|---|---|
| CUSTOMER NUMBER<br>945319 | CUSTOMER REF<br>N/A | FREIGHT TERMS<br>Carriage and Insurance Paid To | | |
| FINAL DESTINATION<br>UNITED STATES | GOLD WO NUMBER<br>7819248 | KEY REF | | |
| TERMS:   Net 30 Days | | REF 2  SEE ATTACHED INVENTORY | | |
| WELL DESCRIPTION: TUBO SHELDON NORTH | | REF 3  AUGUST 2020 STORAGE | | |

*Invoice*

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US SHELDON NORTH STORAGE
10222 SHELDON RD
HOUSTON TX 77049-1250

| ITEM<br>NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED<br>PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER MONTHLY STORAGE/ INVENTORY CHARGES AUG. 2020<br>TRACKING #: 7819248   TOTAL JOINTS: 398 | | | | |
| 1.000 | **725I-TB**<br>STORAGE CHARGE | **832.96** | **TN** | **.7000** | **583.07** |
| | | | | **SUBTOTAL** | **583.07** |

CONTINUED NEXT PAGE

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with resnect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession,   on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such  equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.

6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.

7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD,  OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.

B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location  and in  such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied  in Company's products and services (hereafter referred to as "Confidential  Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or  to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.



**ORIGINAL**

**Invoice: 5343450**                                                                    Page 2 of 2

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | **DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.**<br><br>**This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative.** | | | | |

| | Subtotal | 583.07 |
|---|---|---|
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency:  **USD**   Total | **583.07** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | **Wire Instructions (Wires Only)** |
|---|---|
| National Oilwell Varco, LP dba Tuboscope<br>PO Box 201177<br>Dallas TX 75320-1177 | Wells Fargo Bank<br>Acct: 4496880188<br>ABA: 121000248<br>SWIFT: WFBIUS6S |

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

# Tuboscope | NOV Wellbore Technologies

**Invoice: 5354530**

**National Oilwell Varco, LP dba Tuboscope**

**LEDGER NO. 002**

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax:

## *Invoice*

| AFE NUMBER | SALES ORDER # | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|
| ROUTING# 580002 | 4378391    SR | 09/29/20 | 2000706 | 1 of 2 |

| CUSTOMER NUMBER | CUSTOMER REF | FREIGHT TERMS |
|---|---|---|
| 945319 | N/A | Carriage and Insurance Paid To |

| FINAL DESTINATION | GOLD WO NUMBER | KEY REF  STORAGE CHARGE |
|---|---|---|
| UNITED STATES | 7819942 | |

| TERMS:  Net 30 Days | REF 2 |
|---|---|

| WELL DESCRIPTION: | REF 3 |
|---|---|

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER OTHER STORAGE CHARGE FOR SEPTEMBER 2020, VARIOUS SIZES, GRADES, WEIGHTS AND CONNECTIONS TRACKING# 7690780, 7716450, 7723624, 7727576, 7748635, 7803104, TOTAL JOINTS: 8,201 TRACKING #: 7819942  TOTAL JOINTS: 8201 | | | | |
| 1.000 | **725E-TB** STORAGE / COVERED INVENTORY (201 JTS.) | **1.00** | **EA** | **750.0000** | **750.00** |
| 1.001 | **725I-TB** STORAGE CHARGE (OUTSIDE COVERED STORAGE) | **8,814.64** | **TN** | **.7000** | **6,170.25** |
| | | | | **SUBTOTAL** | **6,920.25** |

CONTINUED NEXT PAGE

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with resnect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)  such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)  subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.



| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|

**DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.**

**This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative.**

| | Subtotal | 6,920.25 |
|---|---|---|
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency: **USD**   Total | **6,920.25** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

National Oilwell Varco, LP dba
Tuboscope
PO Box 201177
Dallas TX 75320-1177

**Wire Instructions (Wires Only)**

Wells Fargo Bank
Acct: 4496880188
ABA: 121000248
SWIFT: WFBIUS6S

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession,    on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such    equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD,  OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location   and in   such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied   in Company's products and services (hereafter referred to as "Confidential   Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)    such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)    subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or  to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

**Tuboscope | NOV** Wellbore Technologies

ORIGINAL

**Invoice: 5358301**

**National Oilwell Varco, LP dba Tuboscope**

**LEDGER NO. 002**

10222 SHELDON RD
HOUSTON, TX 77049-1250
UNITED STATES
Phone: (281) 456-8881
Fax: (281) 456-6295

| AFE NUMBER | SALES ORDER #<br>4383139    SR | DATE<br>10/06/20 | BRANCH PLANT<br>2000707 | PAGE<br>1 of 2 |
|---|---|---|---|---|
| CUSTOMER NUMBER<br>945319 | CUSTOMER REF<br>N/A | FREIGHT TERMS<br>Carriage and Insurance Paid To | | |
| FINAL DESTINATION<br>UNITED STATES | GOLD WO NUMBER<br>7822473 | KEY REF | | |
| TERMS:   Net 30 Days | | REF 2   SEE ATTACHED INVENTORY | | |
| WELL DESCRIPTION: TUBO SHELDON NORTH | | REF 3   SEPT. 2020 STORAGE | | |

*Invoice*

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**  FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**  TB US SHELDON NORTH STORAGE
10222 SHELDON RD
HOUSTON TX 77049-1250

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER MONTHLY STORAGE/ INVENTORY CHARGES SEPT. 2020<br>TRACKING #: 7822473   TOTAL JOINTS: 398 | | | | |
| 1.000 | **725I-TB**<br>STORAGE CHARGE | **832.96** | **TN** | **.7000** | **583.07** |
| | | | **SUBTOTAL** | | **583.07** |

CONTINUED NEXT PAGE

**TUBOSCOPE**

a division of

NATIONAL OILWELL VARCO, L.P.

**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.



| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|

**DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.**

**This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative.**

| | Subtotal | 583.07 |
|---|---|---|

To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback

| Currency: **USD**  Total | **583.07** |
|---|---|

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

National Oilwell Varco, LP dba
Tuboscope
PO Box 201177
Dallas TX 75320-1177

**Wire Instructions (Wires Only)**

Wells Fargo Bank
Acct: 4496880188
ABA: 121000248
SWIFT: WFBIUS6S

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with respect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1) such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2) subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.

# Tuboscope | NOV Wellbore Technologies

**Invoice: 5375195**

ORIGINAL

**National Oilwell Varco, LP dba Tuboscope**
**LEDGER NO. 002**

2084 HWY 662 N
AMELIA, LA 70340
UNITED STATES
Phone: (985) 631-1900
Fax: (986) 631-9505

| AFE NUMBER | SALES ORDER # | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|
| ROUTING # 580002 | 4401632    SR | 10/30/20 | 2000706 | 1 of 2 |

| CUSTOMER NUMBER | CUSTOMER REF | FREIGHT TERMS |
|---|---|---|
| 945319 | 41555 | Carriage and Insurance Paid To |

| FINAL DESTINATION | GOLD WO NUMBER | KEY REF    STORAGE CHARGE |
|---|---|---|
| UNITED STATES | 7823566 | |

| TERMS:   Net 30 Days | REF 2 |
|---|---|

| WELL DESCRIPTION: | REF 3 |
|---|---|

## *Invoice*

These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-AMALTO
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623
ATTN : ACCOUNTS PAYABLE

**SHIP TO:**   TB US AMELIA FACILITY STORAGE
1844 HWY 662 NORTH
AMELIA LA 70340

| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | ITEM# 01: OTHER OTHER STORAGE CHARGE FOR OCTOBER 2020, VARIOUS SIZES, GRADES, WEIGHTS AND CONNECTIONS TRACKING# 7690780, 7716450, 7723624, 7727576, 7748635, 7803104, TOTAL JOINTS: 8,201 TRACKING #: 7823566   TOTAL JOINTS: 8201 | | | | |
| 1.000 | **725E-TB** STORAGE / COVERED INVENTORY (201 JTS) | **1.00** | **EA** | **750.0000** | **750.00** |
| 1.001 | **725I-TB** STORAGE CHARGE (18,099,726.34 LBS. - OUTSIDE COVERED STORAGE) | **9,049.86** | **TN** | **.7000** | **6,334.90** |
| | | | **SUBTOTAL** | | **7,084.90** |

CONTINUED NEXT PAGE

**TUBOSCOPE**
a division of
**NATIONAL OILWELL VARCO, L.P.**
**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with resnect to the nroducts and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.

6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.

7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.

B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)   such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)   subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.



| ITEM NO. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | **DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.**<br><br>**This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative.** | | | | |

| | Subtotal | 7,084.90 |
|---|---|---|
| To share your experience with us please visit us at http://connect.nov.com/Tuboscope-Feedback | Currency:  **USD**  Total | **7,084.90** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | **Wire Instructions (Wires Only)** |
|---|---|
| National Oilwell Varco, LP dba Tuboscope<br>PO Box 201177<br>Dallas TX 75320-1177 | Wells Fargo Bank<br>Acct: 4496880188<br>ABA: 121000248<br>SWIFT: WFBIUS6S |

**TUBOSCOPE**

a division of

**NATIONAL OILWELL VARCO, L.P.**

**Terms and Conditions of Sale**

The terms and conditions herein stated are a part of the consideration hereof and it is expressly understood that if such terms and conditions were not accepted and agreed to by Customer a greater cash consideration would be charged by Company for its products and services. No amendment or modification hereof shall be effective unless in writing and executed by an officer of each party. Products are furnished and Services are rendered upon the following terms and conditions and these terms and conditions (regardless of any terms and conditions in Customer's purchase order, invoice, work order or any other document) shall supersede all prior or subsequent oral or written agreements or understandings with resnect to the products and services.

1. Each product and service shall be invoiced at (and Customer shall pay) the respective current price list of the Company. In addition, Customer shall pay any and all additional charges for mileage, transportation, freight, packing and other related charges, as well as any federal, state, or local tax or charge applicable on the sale, transportation or use of products and services.

2. Customer agrees to pay Company any and all amounts due on or before thirty (30) days from the invoice date at the designated address of Company. Amounts unpaid after such thirty (30) day period shall bear interest at the lesser of (i) one and one-half percent (1 ½%) per month or (ii) the maximum rate allowed by the law. Customer shall also pay any and all of the Company's attorney's fees and court costs if any amounts hereunder are collected by an attorney of through legal proceedings.

3. A. Customer shall procure at Customer's expense, insurance against physical loss of any of Customer's equipment and other material while same is in the Company's possession, on the Company's premises or under the Company's control. All responsibility and liability of the Company with respect to such equipment and material shall cease when such equipment when such equipment and material are delivered Customer, any common carrier (whether or not designated by Customer) or any party designated by Customer.

B. Company shall not be liable for loss or deterioration of any equipment and material under Company's control or stored on Company's premises after Company has completed its work if such loss or deterioration results from an atmospheric condition, act of God or other occurrence not within the reasonable control of the Company.

C. Company shall not be liable for (and Customer acknowledges that it hereby abandons any rights it may have with respect to) any equipment and material left on or about the Company's premises or under Company's control without Company's prior written approval for more than one hundred twenty (120) days after Company has completed work.

4. Company shall endeavor to make timely delivery of any orders placed by Customer and otherwise perform its obligations hereunder but shall not in any case be liable for any facture or delay in delivery or in performance of its obligations hereunder if such failure or delay is a result of differences with workmen, local labor shortage, any government regulation or order fire, flood, act of God or other casualty or cause beyond the reasonable control of the Company, whether similar or dissimilar to those enumerated.

**5. COMPANY MAKES NO WARRANTY, EXPRESSED OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PURPOSE, DESCRIPTION, QUALITY, PRODUCTIVENESS, ACCURACY OR ANY OTHER MATTER WITH RESPECT TO PRODUCTS OR SERVICES, ALL SUCH WARRANTIES BEING HEREBY SPECIFICALLY AND EXPRESSLY DISCLAIMED BY THE COMPANY. THE COMPANY MAY OFFER TECHNICAL ADVICE OR ASSISTANCE WITH REGARD TO PRODCUTS BASED ON LABORATORY AND/OR FIELD EXPERIENCE AND CUSTOMER UNDERSTANDS AND AGREES THAT SUCH ADVICE REPRESENTS ONLY GOOD FAITH OPINIONS AND DOES NOT CONSTITUTE A WARRANTY OR GUARANTEE.**

**6. THE RESULT OF ANY INSPECTION OR TESTING REPORTED BY THE COMPANY TO CUSTOMER REPRESENTS ONLY GOOD FAITH OPINIONS AND ARE NOT TO BE CONSTRUED AS WARRANTIES OR GUARANTEES OF THE QUALITY, CLASSIFICATION, MERCHANTABILITY, FITNESS FOR PURPOSE, CONDITION OR USABILITY OR ANY PIPE, EQUIPMENT OR MATERIAL THAT HAS BEEN INSPECTED OR TESTED BY THE COMPANY.**

**7. A. COMPANY'S LIABILITY IN CONNECTION WITH PRODUCTS AND SERVICES SHALL EXTEND ONLY TO CUSTOMER. CUSTOMER HEREBY INDEMNIFIES AND HOLDS COMPANY (AND ITS AGENTS, REPRESENTATIVES, OFFICERS, DIRECTORS AND EMPLOYEES) HARMLESS FOR ANY LOSS, EXPENSE OR DAMAGE (WHETHER OF CUSTOMER OR ANY THIRD PARTY) ARISING FROM OR IN CONNECTION WITH PRODUCTS AND SERVICES, INCLUDING WITHOUT LIMITATION ANY FAILURE OF SUCH PRODUCTS AND SERVICES TO CONFORM TO CUSTOMER'S ORDER OR SPECIFICATION OR ANY OTHER STANDARD, OR ANY NEGLIGENCE OR BREACH OF WARRANTY BY COMPANYWITH RESPECT TO ANYTHING DONE OR FAILED TO HAVE BEEN DONE BY COMPANY, IF AND TO THE EXTENT THAT SUCH LOSS, EXPENSE OR DAMAGE EXCEEDS THE AMOUNT CUSTOMER HAS ACTUALLY PAID COMPANY PURSUANT HERETO FOR SUCH PRODUCT OR SERVICE.**

**B. COMPANY SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL OR OTHER DAMAGES OF ANY NATURE, INCLUDING (BUT NOT LIMITED TO) DAMAGES TO ANY RESERVOIR OR PIPELINE AND INCLUDING (BUT NOT LIMITED TO) LOSSES AND EXPENSES FOR PIPE FAILURE, BLOWOUT, EXPLOSION, LEAKAGE, POLLUTION OR OTHER SURFACE OR SUBSURFACE DAMAGE, WHETHER CAUSED, OCCASIONED OR CONTRIBUTED TO BY COMPANY.**

C. Unless otherwise directed in writing, Customer hereby authorizes Company to perform grinding and high pressure tests to Customer's equipment and materials. CUSTOMER ACKNOWLEDGES THAT SUCH ACTIVITY IS INHERENTLY HAZARDOUS AND ASSUMES ALL RISK INVOLVED IN ANY SUCH ACTIVITY. Customer shall indemnify and hold Company harmless from any and all liability resulting directly or indirectly from any such activity.

D. Customer shall instruct Company as to what areas (if any) of Customer's equipment and material should or should not be coated or subject to high pressure testing or grinding.

E. Customer agrees and acknowledges that Company shall bear no liability for work performed by any subcontractor secured at Customer's request or for Customer's benefit and further agrees to indemnify and hold Company harmless from any liability for any damage, loss or expense (whether of Customer or any third party) caused directly or indirectly by subcontractor.

8. Customer's remedy for damage shall be limited to the replacement, recoating, re- inspection or reworking of its equipment or material if and to the extent that the applicable product or service is determined by Company to be defective: provided, however, Company may, in its sole discretion, decide to instead give Customer credit memorandum for the amounts already paid by Customer to Company for such product or service. In the event Customer is to receive a replacement product or service, delivery of said replacement product or service shall be at Company's convenience in the same manner and at the same location as the delivery of the original product or service. If Company requests that Customer return the original product to Company (whether before or after any replacement product is delivered), Customer shall deliver such original product to Company at such location and in such manner as the Company may request. In any event and notwithstanding any language to the contrary herein, Customer acknowledges that any claim it may have arising out of or in connection with any original products and services, and replacement products or services and these terms and conditions shall be limited to and not exceed the amount Customer has actually paid to Company pursuant hereto. If Customer fails to make any such claim within thirty (30) days after completion of service or delivery of product, Customer hereby waives (to the extent permitted by applicable law) any and all claims it may or does have with respect to such products and services.

9. Customer grants to Company a security interest in all of Customer's equipment and material inspected, coated, or delivered pursuant to these terms and conditions. Customer agrees to sign all documents and do all things which in the opinion of the Company may be necessary or desirable for Company to perfect such security interest and in connection therewith authorizes (to the extent permitted by applicable law) Company to sign and publicly file any financing statement on Customer's behalf as Customer's attorney-in-fact.

10. Customer acknowledges the secret, proprietary, confidential and valuable nature of all inventions, methods, processes, designs, know-how and trade secrets embodied in Company's products and services (hereafter referred to as "Confidential Data"). Accordingly, Customer agrees not to disclose or use any Confidential Data, nor allow any third party to disclose or use such Confidential Data, unless:

(1)   such Confidential Data was in the public domain at the time of the disclosure thereof by Company to Customer: or

(2)   subsequent to the disclosure by the Company, such Confidential Data entered the public domain through no fault, action or failure to act on the part of the Customer. Customer further agrees to take any and all necessary precautions to prevent disclosure of Confidential Data to persons other than those employees of Customer for whom such disclosures is necessary for the use of such products and services and who have executed written agreements obligating such employee(s) not to make any unauthorized use or disclosure thereof.

11. Customer acknowledges the application of Section 17.45(4) of the Texas Deceptive Trade Practice Act (Texas Business Commission Code 17.41 of seq.) (the "Act") to any transaction contemplated hereby and represents that it is not a "consumer" for purposes of the Act.

12. A. Failure to enforce any or all of the provisions of these terms and conditions in any particular instance shall not constitute or be deemed to constitute a waiver, or to preclude subsequent enforcement, of the same provision or any other provision of these terms and conditions. Should any provision of these terms and conditions be declared invalid or unenforceable, all other provisions of these terms and conditions shall remain in full force and effect.

B. These terms and conditions shall be governed by and interpreted in accordance with the laws of the State of Texas. Venue for all actions under these terms and conditions shall be in a court of competent jurisdiction located within Houston Harris County, Texas.



ORIGINAL

**Invoice Number: 5262358**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 4/27/2020 | 1 of 1 |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GL CODE 7200-85 RTG #57303 | | 11844 | |

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | GREG MONTE | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| MAIN PASS 289-C | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 3/26/2020 to 4/22/2020 | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184<br>FABCON DOCK VENICE LA<br>2743022 | | | | | | |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 3/26/2020 to 4/22/2020<br>400FT  LEAD - 646 MCM-1 TYPE P | 28.000 | DY | 40.00 | 1,120.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW<br>GENERATOR - 350KW SKID MOUNTED<br>Bill From 3/26/2020 to 4/22/2020 | 28.000 | DY | 192.00 | 5,376.00 |

| | | | | | Subtotal | 6,720.00 |
|---|---|---|---|---|---|---|
| | | | | | Grand Sub Total | 6,720.00 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | **6,720.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



**ORIGINAL**

**Invoice Number: 5264574**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400903 | 964856 | 4/29/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| RTG ID# 573036 GL 7200-85 | | 11901 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | GREG MONTE | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| S.P. 62 CONSTRUCTION | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
EPS DOCKVENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| Ship To: 1039181 EPS DOCKVENICE LA LA | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 3/30/2020 to 4/26/2020 200 FT LEAD - 444MCM-1 TYPE P | 28.000 | DY | 18.00 | 504.00 |
| 2894200 | 6146 | RNT DY GEN DSL SKD 250 KW GENERATOR-250KW SKID MOUNTED - Bill From 3/30/2020 to 4/26/2020 | 28.000 | DY | 144.00 | 4,032.00 |
| | | | | | **Subtotal** | **4,536.00** |
| | | | | | **Grand Sub Total** | 4,536.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **4,536.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 . | ABA:        121000248 Account:   4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |



ORIGINAL

**Invoice Number: 5266221**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 412078 | 964856 | 4/30/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| SMI 106A LOE | | 12457 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | TIM SMITH | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #573026 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3028428 | 6149 | RNT DY GEN DSL SKD 200 KW GENERATOR-200KW SKID MOUNTED - Bill From 3/27/2020 to 4/23/2020 | 28.000 | DY | 117.00 | 3,276.00 |
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | | | | | |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 3/27/2020 to 4/23/2020 4 - 100FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 32.00 | 896.00 |
| 3028488 | 2158 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 3/27/2020 to 4/23/2020 SENT FULL | 28.000 | DY | 15.00 | 420.00 |
| | | | | **Subtotal** | | 4,592.00 |
| | | | | **Grand Sub Total** | | 4,592.00 |
| | | | | **Tax** | | |
| | | | Currency: | **USD** | **Invoice Total** | **4,592.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:      121000248
Account:  4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



ORIGINAL

**Invoice Number: 5266422**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

1202 JANE ST
NEW IBERIA LA 70563-1538
Phone:
Fax:

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409317 | 964856 | 4/30/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| FIELDWOOD ENERGY | | AFE# FW191517 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID 580048 | | PO# 13215 | |
| RIG NAME | | WELL NAME | |
| ROWAN (ROWAN RESOLUTE) | | | |

# Invoice

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   FIELDWOOD ENERGY LLC
C-PORT II
180 1ST STREET
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| PO DWALLWLL-021419-A | | | | | | |
| ROUTING # 580047 | | | | | | |
| CHARGE OU SCREEN USAGE 04-29-20 | | | | | | |
| AFE# FW202001 | | | | | | |
| LEASE MC-519#3 | | | | | | |
| PROJECT GENEVESA | | | | | | |
| | | API 270 | | | | |
| | | 62735FXTD325 | 3.000 | EA | 460.85 | 1,382.55 |
| | | SCREEN VSM300 PRIMARY DB XF 32 | | | | |
| | | | | | Subtotal | 1,382.55 |
| | | | | | Grand Sub Total | 1,382.55 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | 1,382.55 |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:    4121898753
Beneficiary: NOV Wellsite Services, A Div. of NOV, L P
Swift code: WFBIUS6S

 NATIONAL OILWELL VARCO

National Oilwell Varco, LP
Well Site Services Division
LEDGER NO. 130

1202 JANE ST
NEW IBERIA, LA 70563-1538,
UNITED STATES
Phone:
Fax:

| ORDER BY | SALES ORDER NUMBER | | ORDER DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|---|
| | S1      4275424 | | 4/29/2020 | 1305105 | 1 of 2 |
| CUSTOMER NUMBER | CUSTOMER PO/AFE NUMBER | | | FREIGHT TERMS | |
| 964856 | DWALLWLL 021419-A | | | Free Carrier | |
| PAYMENT TERMS | SALESPERSON | JOB NUMBER | | FINAL DESTINATION | |
| Net 30 Days | BERTRAND, Larry P | 409317 | | UNITED STATES | |

## Sales Order Acknowledgement

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
C-PORT II
180 1ST STREET
GOLDEN MEADOW LA 70357

Rig: ROWAN (ROWAN RESOLUTE)

| SHIPPING INSTRUCTIONS | | RIG NAME | | | SHIP TO NUMBER : | |
|---|---|---|---|---|---|---|
| | | ROWAN (ROWAN RESOLUTE) | | | 1127617 | |
| Line No. | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE | |
| 1.000 | PO DWALLWLL-021419-A<br>ROUTING # 580048<br>CHARGE OU SCREEN USAGE 04-29-20<br><br>62735FXTD325<br>Net Weight/UOM:        LB<br><br>Promised Delivery Date:    5/8/2020<br>SCREEN VSM300 PRIMARY DB XF 325<br>API 270<br><br>Export HTS (US):8421990080    ECCN: US-EAR99<br><br>AFE# FW202001<br>LEASE MC-519#3<br>PROJECT GENEVESA<br>ROUTING # 580047 | 3 | EA | 460.8500 | 1,382.55 | |

CONTINUED NEXT PAGE



NATIONAL OILWELL VARCO   SALES ORDER NUMBER: 4275424 S1 DATE: 4/29/2020   Page 2 of 2

| Line No. | ITEM NUMBER / DESCRIPTION | QUANTITY UOM / GROSS WT. | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations. | | | | |
| | The following terms and conditions are an integral part of this document and should be retained. | | | | |
| | COVID-19 NOTICE: Due to the on-going COVID-19 pandemic and various Governmental directives, company measures and uncertainties arising therefrom (collectively "COVID-19 Effects"), all quoted delivery dates for products and services and completion dates for the work are NOV's best estimates made at the time of the quote and are not binding on NOV. Accordingly, NOV assumes no risk for COVID-19 Effects on NOV's ability to deliver the products or perform services or work by the dates quoted. If the delivery of products or services or performance of work is affected by COVID-19 Effects, NOV shall be entitled to take reasonable measures with respect to COVID-19 Effects and have an extension of time, as needed, to deliver the products or services or complete the work. For purposes of this COVID-19 Notice, NOV shall mean the NOV affiliate named above and Customer shall mean the customer to which NOV issued to quote, order acknowledgement or other documents. We are monitoring this situation extremely closely and formulating plans on a case by case basis to try to ensure seamless support for our customers. We would ask that you contact your NOV Sales representative if you have any specific challenges or concerns. | | | | |

AFE:      FW202001
Lease:   MC 519 #3
Project:  Genovesa
Engineer: E. Flanagan
Routing #:   580047

ACCT CODE : 3060-28
L. Butler 4-29-2020

| Total Weight: | 0 LB | | Subtotal | | 1,382.55 |
|---|---|---|---|---|---|
| Tax Summary : | | | Tax Rate | 0 % | |
| | | | Tax | | |
| | | Currency: USD | Total | | 1,382.55 |



**ORIGINAL**

**Invoice Number: 5268250**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410108 | 964856 | 5/4/2020 | 1 of 1 |

**LEDGER NO. 130**

| JOB DESCRIPTION | CUSTOMER PO/AFE |
|---|---|
| HI 376A LOE/GL #7200-48 | 12616 |

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| PAYMENT TERMS | CONTACT | EMAIL |
|---|---|---|
| Net 30 Days | TIM SMITH | |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| ROUTING ID #573025 | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| Ship To: 1113508<br>25817 LA HWY 333<br>INTRACOASTAL CITY | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 3/31/2020 to 4/27/2020<br>4 - 50FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 16.00 | 448.00 |
| 2972005 | 5696 | RNT DY GEN DSL SKD 100 KW<br>Generator - Diesel Skid Mount<br>Bill From 3/31/2020 to 4/27/2020 | 28.000 | DY | 86.00 | 2,408.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 3/31/2020 to 4/27/2020<br>50FT OF 1/0-4 LEAD | 28.000 | DY | 4.00 | 112.00 |
| | | | | | **Subtotal** | **2,968.00** |
| | | | | | **Grand Sub Total** | 2,968.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **2,968.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:       121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

COPY



**Invoice Number: 5268250**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410108 | 964856 | 5/4/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| HI 376A LOE/GL #7200-48 | | 12616 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | TIM SMITH | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #573025 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 3/31/2020 to 4/27/2020 4 - 50FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 16.00 | 448.00 |
| 2972005 | 5696 | RNT DY GEN DSL SKD 100 KW Generator - Diesel Skid Mount Bill From 3/31/2020 to 4/27/2020 | 28.000 | DY | 86.00 | 2,408.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 3/31/2020 to 4/27/2020 50FT OF 1/0-4 LEAD | 28.000 | DY | 4.00 | 112.00 |
| | | | | **Subtotal** | | 2,968.00 |
| | | | | **Grand Sub Total** | | 2,968.00 |
| | | | | **Tax** | | |
| | | Currency: | **USD** | **Invoice Total** | | **2,968.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 . | ABA:         121000248 Account:   4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"); (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any; (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any; and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)   50% of the Agreement value if canceled thereafter: or

c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9. LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Buyer is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-conformance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9  shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a) Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b) Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c) Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d) Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e) NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f) Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g) THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE (OF OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h) Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT**.

### 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102  *et seg*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5269217**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 5/5/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VR 313B LOE | | 13162 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | TIM SMITH | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID 573002 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 4/8/2020 to 5/5/2020 | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 14.00 | 392.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 4/8/2020 to 5/5/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 28.000 | DY | 72.00 | 2,016.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 4/8/2020 to 5/5/2020 | | | | |
| | | | | | **Subtotal** | **2,632.00** |
| | | | | | **Grand Sub Total** | 2,632.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **2,632.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

ORIGINAL

**Invoice Number: 5270685**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 412055 | 964856 | 5/7/2020 | 1 of 2 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| SS 259JA AFE #FW207307 | | 3170 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | STACY GUTHRIE | 832-462-6160 | |
| CUSTOMER REFERENCES | | REFERENCE | |
| RTG ID# 573025 | | | |
| RIG NAME | | WELL NAME | |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| Ship To: 1070453 4529 LA HWY 1 GRAND ISLE, US | | 15W40 OIL ENGINE 15W40 | 15.000 | GA | 18.22 | 273.25 |
| | | 2020TMOR FILTER FUEL RACOR#2020N-10/PF7 | 4.000 | EA | 13.08 | 52.30 |
| | | 2968F DIESEL FUEL - 1 GAL BULK | 292.000 | EA | 3.60 | 1,051.20 |
| | | FF5421 FILTER FUEL FLG/BALDWIN# BF796 | 3.000 | EA | 17.34 | 52.03 |
| | | FS19732 FILTER FUEL FLG/BF1385-SPS BAL | 3.000 | EA | 27.52 | 82.56 |
| | | LF3970 LF3970 FILTER | 3.000 | EA | 11.31 | 33.92 |
| | | PF1217 FILTER OIL AC/BD103 BALDWIN/WI | 1.000 | EA | 28.62 | 28.62 |
| | | RA-PNL500 LUG MECHANICAL 4/0-500MCM | 8.000 | EA | 19.20 | 153.60 |
| | | TP1067 FILTER FUEL AC/BF788 BALDWIN | 1.000 | EA | 6.90 | 6.90 |
| | | | | | **Subtotal** | **1,734.38** |
| 3027209 | 5692 | RNT DY GEN DSL SKD 100 KW Generator - Diesel Skid Mount Bill From 3/25/2020 to 4/2/2020 | 9.000 | DY | 86.00 | 774.00 |

Continued ...



| | Invoice Number | Invoice Date | Page |
|---|---|---|---|
| | 5270685 | 5/7/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3027208 | 6167 | RNT DY TANK - DIESEL<br>TANK - 792 GALLON DIESEL FUEL<br>Bill From 3/25/2020 to 4/2/2020 | 9.000 | DY | 90.00 | 810.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 3/25/2020 to 4/2/2020<br>8-50' 444MCM LEADS | 9.000 | DY | 44.00 | 396.00 |
| | | FREIGHT (3RD PARTY)<br>WSS FREIGHT 3RD PARTY<br>Bill From 4/2/2020 to 4/2/2020<br>PICKUP AMERICAN EAGLE WB# 01158013<br>04.02.20 | 1.000 | EA | 0.00 | |
| | | FREIGHT (NOV TRUCK)<br>Bill From 4/8/2020 to 4/8/2020<br>PICKUP NOV TRUCK LEADS 04.08.20 N/C | 1.000 | EA | 0.00 | |

| | | |
|---|---|---|
| | **Subtotal** | **1,980.00** |
| | **Grand Sub Total** | 3,714.38 |
| | **Tax** | |
| Currency: **USD** | **Invoice Total** | **3,714.38** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

ORIGINAL

**Invoice Number: 5273105**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410214 | 964856 | 5/12/2020 | 1 of 2 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GC 40 KATMAI PROJECT | | FW183040-051519-L | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | CHRIS JOUBAN | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID 580045 AFE FW183040 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2975103 | 5966 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 4/15/2020 to 4/30/2020 | 16.000 | DY | 106.00 | 1,696.00 |
| Ship To: 1070453 4529 LA HWY 1 2975103 | | | | | | |
| 2975105 | 3945 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 4/15/2020 to 4/30/2020 SHIPPED EMPTY | 16.000 | DY | 15.00 | 240.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 4/15/2020 to 4/30/2020 8 - 100FT SECTIONS OF 444MCM LEAD | 16.000 | DY | 88.00 | 1,408.00 |
| 3072279 | 010342 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 4/15/2020 to 4/30/2020 | 16.000 | DY | 106.00 | 1,696.00 |
| 2975103 | 5966 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 5/1/2020 to 5/12/2020 | 12.000 | DY | 97.00 | 1,164.00 |
| 2975105 | 3945 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 5/1/2020 to 5/12/2020 | 12.000 | DY | 14.00 | 168.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/1/2020 to 5/12/2020 8-100FT SECTIONS OF 444MCM LEAD | 12.000 | DY | 80.00 | 960.00 |
| 3072279 | 010342 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 5/1/2020 to 5/12/2020 | 12.000 | DY | 97.00 | 1,164.00 |
| | | | | | **Subtotal** | **8,496.00** |

Continued ...



| | Invoice Number | Invoice Date | Page |
|---|---|---|---|
| | 5273105 | 5/12/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 8,496.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **8,496.00** |

---

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

# JOB ORDER TO MASTER SERVICES CONTRACT

This Job Order to Master Services Contract (the "Job Order") is entered into and made effective as of May 17, 2019 (the "Effective Date") by and between Fieldwood Energy LLC ("Company") and National Oilwell Varco WellSite Services - Portable Power ("Contractor").  Company and Contractor may be referred to herein as a "Party" or together as the "Parties".  All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below).

WHEREAS, Company and Contractor are parties to that certain Master Services Contract dated as of January 1, 2013 (the "Agreement"); and

WHEREAS, Contractor submitted a proposal dated May 15, 2019 ("Contractor's Proposal") for ST 308 Rental Equipment in support of the Katmai Project (the "Work");

NOW, THERFORE, for and in consideration of the mutual covenants and agreements as set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. The Work, if any, which may be requested by Company at its sole discretion, shall be performed pursuant to the terms and conditions of the Agreement, this Job Order, and Contractor's Proposal.

2. In the event of any conflict between the Agreement, this Job Order and Contractor's Proposal, then the documents shall control and govern in the following order:  (a) the Master Agreement, (b) this Job Order, (c) Contractor's Proposal.

3. Contractor's rates for the Work shall be as set forth in Contractor's Proposal.  The Contractor shall perform the Work set forth herein in accordance with the specifications set forth in this Job Order and Contractor's Proposal, but subject to the terms and conditions for Services as set forth in the Agreement ("Services").  Any additional work, including third party items, requested by Company in addition to the Services described in this Job Order, must be quoted separately by Contractor and subject to Company acceptance.

4. This Job Order does not obligate Company to order Work from Contractor, nor does it obligate Contractor to accept any requests for Work, but it and the applicable terms of the Agreement shall control and govern all Work agreed to be provided by or on behalf of Contractor and shall define the Parties' respective rights and obligations during the term hereof.

5. This Job Order may be executed in counterparts with the same effect as if the signatures were on a single document, and will be effective when each Party has executed one counterpart. An executed and transmitted electronic version will be considered for all purposes an original signed document constituting a legally binding agreement.

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

IN WITNESS WHEREOF, the Parties do hereby execute and agree to this Job Order effective as of the Effective Date.

FIELDWOOD ENERGY LLC

By: _____
Name: Chris Jouban
Title: Purchasing Buyer III

NOV WELLSITE SERVICES –
PORTABLE POWER

By: _____
Name: Tim Aupied
Title: Broussard District Manager

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

APPENDIX A

- Rental Equipment Quote dated May 15, 2019
- 2019 Fieldwood Rate Sheet



**Portable Power**

1223 Evangeline Thruway
Broussard, LA 70518

PO:
Reference:    ST 308

Date:    5/15/2019

Customer:    FIELDWOOD
Contact:    CHRIS JOUBAN
Office Phone:
Cell:    337-354-3286
Email:    CHRIS.JOUBAN@FWELLC.COM
Fax

NOV Portable Power would like to thank you for the opportunity you have given us to supply generators and associated equipment for your upcoming project.

As per your request, NOV is submitting the following equipment selection and prices for your review and approval.

| ITEM | QTY | DESCRIPTION | DAILY PRICE EACH | DAILY PRICE TOTAL | 28-DAY BILLING CYCLE | TOTAL 28 DAY BILLING CYCLE |
|------|-----|-------------|------------------|-------------------|----------------------|----------------------------|
| 1 | 2 | 150KW GENERATORS AT 480V | $ 106.00 | $ 212.00 | $ 2,968.00 | $ 5,936.00 |
| 2 | 1 | 560 GALLON DIESEL TANK | $ 15.00 | $ 15.00 | $ 420.00 | $ 420.00 |
| 3 | 1 | 8 - 100FT SECTIONS OF 444MCM LEAD | $ 88.00 | $ 88.00 | $ 2,464.00 | $ 2,464.00 |
| 4 | 0 | | | $ - | $ - | $ - |
| 5 | 0 | | $ - | $ - | $ - | $ - |
| 6 | 0 | | $ - | $ - | $ - | $ - |
| 7 | 0 | | $ - | $ - | $ - | $ - |

Equipment Transportation

● Customer is responsible for transportation cost to and from the nearest NOV Portable Power depot where equipment is available. All transportation provided by NOV Portable Power will be billed at actual cost plus 25%. Customer has the option to arrange for shipment to and from the nearest NOV Portable Power location and to have trucking direct billed to the customer.

● Trucker Standby time rate of $105.00 per hour shall apply during delays at the jobsite.

Rental Charges

● ALL RENTAL CHARGES will be charged on above equipment from the day it ships from a NOV Portable Power facility thru the day it is returned back to a NOV Portable Power facility (regardless of the time the equipment was actually used.) The rental period shall not be subject to pro-ration.

● CHARGES FOR RENTAL DAYS WILL INCLUDE SATURDAYS, SUNDAYS, AND HOLIDAYS.

● A three (3) day minimum rental charge will apply for all rental equipment.

● In the event of a weather related or storm event (hurricane, tornado, flood, earthquake, fire or other natural emergency) a seven day (7) minimum rental charge will apply.

Normal Service

● Equipment is normally rented without normal service and oil changes included. Equipment can be rented with normal service and oil changes for an additional charge. The customer has the option to provide normal service and oil changes for equipment they have rented at their cost using their people. If the customer elects to provide normal service and oil changes and fails to perform the service, the customer will be liable for any damage to the rented equipment and will be billed for the service required upon return of the rental equipment to NOV.

Optional Service/ Spare Parts

● The customer is responsible for installation, operation, monitoring and demobilization of the NOV Portable Power rental equipment. NOV Portable Power can provide the required technician labor to assist customer in the installation, monitoring, and demobilization of the NOV Portable Power rental equipment for an additional charge.

● NOV Portable Power can also provide labor and consumables (filters, oil, etc) to service our rental equipment at the customer's request for an additional charge. Generators and light towers will require servicing as follows: light towers every 250 running hours, 15-300kw generators every 250 running hours, 350-1500kw generators every 500 running hours. HVAC filter replacement depends on the environment it is working in.

● These services can be provided by NOV Portable Power on a time and material basis.

Labor Rates:

Note: This rate schedule supersedes all previous rate schedules. **Labor rates are subject to change without notice.**

| 1. OFFSHORE | STANDARD TIME | OVERTIME | DOUBLE TIME |
|---|---|---|---|
| A. Electrician & Mechanic | $90.00 | $135.00 | $180.00 |
| B. Helper | $81.00 | $121.50 | $162.00 |
| | | | |
| 2. ONSHORE | STANDARD TIME | OVERTIME | DOUBLE TIME |
| A. Electrician & Mechanic | $80.00 | $120.00 | $160.00 |
| B. Helper | $69.00 | $103.50 | $138.00 |
| | | | |
| 3. SHOP | STANDARD TIME | OVERTIME | DOUBLE TIME |
| A. Electrician & Mechanic | $80.00 | $120.00 | $160.00 |
| B. Helper | $69.00 | $103.50 | $138.00 |

● Standard Time Rates- standard rates apply during office hours of 8am to 5pm with a lunch hour. A two (2) hour minimum charge will apply for all work performed on standard time.

● Overtime Time Rates- overtime rates, which are one and a half, times the standard rates. Overtime rates will apply between 5pm and 8am on weekdays, all day Saturday and Sunday. A four (4) hour minimum charge will apply for all work performed on overtime hours.

● Double Time Rates – Are double (2x) the standard time rates and will apply on all US government holidays and will include Easter Sunday.

● Offshore Service Labor – A twelve (12) hour minimum charge will apply for all days worked offshore including travel days.

Mileage Rate Charges:
● Mileage Rates – Mileage will be charged at $ 2.25 per mile. Mileage will include distance from nearest NOV Portable Power location to the customer work site and back to NOV location.

Travel and Lodging Charges:
●    All actual expenses incurred by NOV Portable Power for travel such as airfare, meals, lodging etc. will be charged to the customer at actual cost plus 15 %, and backup documentation provided to the customer.

Fuel Charges
● Diesel is not included in above rental rates. NOV Portable Power can provide #2 Diesel fuel for the equipment at a cost of $4.00 / gallon if requested by rental customer.
● Units are shipped with fuel in the fuel tanks and the number of gallons recorded on the delivery ticket.
● The customer will be charged for the difference in gallons of fuel found at the time equipment is returned to NOV. If the equipment is shipped full the customer must return it with a full tank or be charged for the difference.
● Diesel fuel quality will be tested to insure it is not laced with water and other particulate contamination. If fuel is returned contaminated by the customer they will be invoiced for the cost of replacement fuel and for disposal of contaminated fuel.

Notes:
● NOV Portable Power generators are rated prime power not standby
● NOV Portable Power rental rates are for unlimited run time per day
● NOV Portable Power does not charge an environmental fee for clean-up of returned rental equipment

- Rental Protection Plan available upon request
- Quoted prices are firm for 30 days from the date of this quotation
- Quoted prices do not include applicable state and federal taxes
- Customer is responsible for all required operating and regulatory permits
- Customer is required to provide safe working environment
- Customer is required to call before making any repairs
- Customer is to provide insurance on all equipment
- Sales tax is applicable on all of the above rental, labor, travel, mileage and service charges unless we have a tax exemption certificate in our files
- Quoted prices do not include consumables (diesel fuel, filters, oil, etc.)  Unreturned items will be invoiced to customer

### CUSTOMER RESPONSIBILITIES FOR SERVICE OF EQUIPMENT

1.   Customer is responsible for all normal service for the equipment rented to include but not limited to:

a.  Oil changes for equipment every:

- 250 run hours for light towers
- 250 run hours for generators 300KW and smaller
- 500 run hours for generators 350KW and larger

b.  Changing of all oil, fuel and air filters

- Customer must use NOV PP approved oil, fuel and air filters

c.  Customer must provide, at their expense, all technicians to perform normal service to the rental equipment. Technicians must follow NOV recommended procedures.

d.  Customer must provide all required oil, fuel and anti-freeze for normal operations.

- High quality 15W-40W multi-grade API approved motor oil must be used.
- Only high quality #2 diesel fuel should be used.
- A high quality 50 / 50 mix ration of antifreeze must be used.

e.  The replacement schedule for air filters and fuel filters will vary based on the type of equipment rented and the operating conditions where the equipment will be used. Please consult your local NOV Portable Power location for recommended change frequency.

2.   If the customer elects to provide normal service and oil/fluid changes, they will assume responsibility for damage incurred due to neglect or failure to perform required preventive maintenance.  Customer will be liable for any and all damage to the rental equipment and will be invoiced for the service required and a set charge, per hour, for negligence upon return of the equipment to NOV.

a.  There will be a charge of $5 per hour for all equipment exceeding 100 hours past due service (this charge will be for the original 100 hours plus any additional time).

- Due to recent GPS upgrades NOV Portable Power will have the option to monitor all units.

3.  For any questions related to the proper operation and how to perform the required normal service please contact your local NOV Portable Power location for assistance. Calls will be answered and returned 24 hours a day, 7 days a week.

4.  NOV Portable Power will inspect all rental equipment immediately upon return from the customer. This inspection will include:

a.  Test for run operation of returned equipment. All equipment must be returned in operational condition.

b.  Visual inspection of the unit for any internal or external damage to the unit while in the customer's operational control of the rental equipment. Customer will be invoiced for repairs of all damage to the rental equipment.

c.  Visual inspection of the rental equipment to insure it has been returned clean and uncontaminated from the customer's work location. If the equipment is excessively dirty or contaminated with oil or fuel the customer will be invoiced for equipment decontamination cost.

<u>Confidentiality</u>

- The contents, solutions, descriptions, and pricing information described here are considered the confidential property of NOV Portable Power. Customer therefore acknowledges and agrees to keep any ideas, information, and contents of this proposal confidential.

- NOV Portable Power requires that any and all correspondence including, but not limited to: price quotes, solution description, process details, and any other information directly or indirectly pertaining to this quotation are kept in the strictest confidence by the customer.

<u>Proposal Acceptance</u>

- Should you wish to proceed with the rental outlined in this proposal and agree to the attached terms and conditions, please provide your purchase order number and sign and date below indicating your acceptance of this quotation. All NOV Portable Power normal terms and conditions shall apply.

Accepted By:

Company Name_____

Purchase order number_____

Trucking Provided by NOV Portable Power Option?  YES ☐  NO ☐  (Please Check One)

Signature_____

Print Name_____

Title_____

Date Accepted_____

Regards,

**Shawn Mccauley**



Rental Representative

Portable Power

1223 Evangeline Thruway

Broussard, LA 70518

shawn.mccauley@nov.com

Office:  337-365-5050

Fax:  337-365-1902



*Price Sheet*

FIELDWOOD ENERGY

### GENERATORS

| | | |
|---|---|---|
| 15KW | $ | 47 |
| 30KW | $ | 56 |
| 50KW | $ | 64 |
| 75KWNG | $ | 137 |
| 80KW | $ | 78 |
| 100KW | $ | 86 |
| 125KW | $ | 95 |
| 150KW | $ | 106 |
| 150KWNG | $ | 196 |
| 200KW | $ | 117 |
| 250KW | $ | 137 |
| 250KWNG | $ | 248 |
| 300KW | $ | 158 |
| 350KW | $ | 180 |
| 500KW | $ | 300 |
| 800KW | $ | 383 |
| 1000KW | $ | 468 |
| 1250KW | $ | 555 |
| 1400KW | $ | 597 |

### DISTRIBUTION RACK CIRCUITS RAINTIGHT

| | | |
|---|---|---|
| | $ | - |
| 30-100AMP | $ | 8 |
| 125-200AMP | $ | 10 |
| 225-300AMP | $ | 11 |
| 350-450AMP | $ | 13 |
| 600AMP | $ | 23 |

### DISTRIBUTION RACK CIRCUITS CLASS 1 DIV II

| | | |
|---|---|---|
| 30-100AMP | $ | 13 |
| 125-200AMP | $ | 19 |
| 225-300AMP | $ | 20 |
| 350-450AMP | $ | 26 |
| 600AMP | $ | 32 |

### PLUGS AND RECEPTACLES – NEMA 4

| | | |
|---|---|---|
| 30-100AMP | $ | 13 |
| 150-200AMP | $ | 19 |

### TRANSFORMERS

| | | |
|---|---|---|
| 12.5KVA | $ | 10 |
| 15KVA | $ | 14 |
| 37.5KVA | $ | 26 |
| 45KVA | $ | 28 |
| 75KVA | $ | 29 |
| 112KVA | $ | 33 |
| 150KVA | $ | 39 |
| 225KVA | $ | 48 |
| 300KVA | $ | 57 |
| 500KVA | $ | 94 |



*Price Sheet*

## FIELDWOOD ENERGY

| | | |
|---|---|---|
| 750KVA | $ | 119 |
| 1000KVA | $ | 145 |
| 1500KVA | $ | 176 |
| | | |
| **FUEL TANKS DUAL WALL** | | |
| 528 GALLON | $ | 30 |
| 792 GALLON LAND | $ | 42 |
| 792 GALLON OFFSHORE | $ | 54 |
| 1000 GALLON | $ | 77 |
| 2350 GALLON | $ | 110 |
| | | |
| **FUEL TANKS SINGLE WALL** | | |
| 560 GALLON | $ | 15 |
| 1000 GALLON | $ | 26 |
| 4200 GALLON | $ | 113 |
| | | |
| **FUEL CONTAINMENT TANKS** | | |
| 560 GALLON | $ | 9 |
| 1000 GALLON | $ | 10 |
| 4200 GALLON | $ | 18 |
| | | |
| **FUELING PUMPS** | | |
| 120V STANDARD (TOP MOUNT) | $ | 9 |
| 120V EXP (SKID MOUNT) | $ | 30 |
| FUELING NOZZLE | $ | 4 |
| | | |
| **ELECTRICAL LEADS** | | |
| 4/0-1C (PER FT) | $ | 0.08 |
| 444MCM-1C (PER FT) | $ | 0.11 |
| 646MCM-1C (PER FT) | $ | 0.13 |
| 6/4C (PER FT) | $ | 0.07 |
| 10/4C (PER FT) | $ | 0.07 |
| 12/4C (PER FT) | $ | 0.07 |
| 4/4C (PER FT) | $ | 0.07 |
| 2/4C (PER FT) | $ | 0.07 |
| 1/0-4C (PER FT) | $ | 0.08 |
| 2/0-4C (PER FT) | $ | 0.12 |
| 4/0-4C (PER FT) | $ | 0.16 |
| | | |
| **LIGHTING RAINTIGHT & CLASS 1 DIV II** | | |
| 400W DUAL POLE | $ | 17 |
| 400W SINGLE | $ | 14 |
| | | |
| **LIGHTING CLASS 1 DIV 1** | | |
| 400W DUAL POLE | $ | 35 |
| 400W SINGLE | $ | 19 |
| | | |
| **LOW VOLTAGE DROP LIGHTS CLASS 1 DIV 1** | | |
| EXP DROP LIGHT | $ | 14 |
| EXP TRANSFORMER BOX | $ | 13 |



*Price Sheet*

**FIELDWOOD ENERGY**

**LIGHT TOWERS**

| | | |
|---|---|---|
| 8KW | $ | 39 |
| 20KW | $ | 72 |
| 30KW | $ | 90 |

**RECEPTACLE RACKS**

| | | |
|---|---|---|
| RAINTIGHT | $ | 14 |
| CLASS 1 DIV II | $ | 28 |
| CLASS 1 DIV II GFCI | $ | 37 |

**LIGHTING PANELS**

| | | |
|---|---|---|
| RAINTIGHT | $ | 14 |
| CLASS 1 DIV II | $ | 28 |

**MISCELLANEOUS RAINTIGHT 120VAC**

| | | |
|---|---|---|
| QUAD BOX | $ | 5 |
| EXTENSION CORD 100' | $ | 5 |

**TRANSFER SWITCHES RAINTIGHT**

| | | |
|---|---|---|
| 400AMP | $ | 31 |
| 600AMP | $ | 42 |
| 800AMP | $ | 56 |
| 1000AMP | $ | 75 |
| 1200AMP | $ | 82 |
| 2000AMP | $ | 134 |

**TRANSFER SWITCHES CLASS 1 DIV II**

| | | |
|---|---|---|
| 400AMP | $ | 50 |
| 800AMP | $ | 141 |
| 1200AMP | $ | 195 |

**MOTOR STARTERS RAINTIGHT**

| | | |
|---|---|---|
| SIZE 1 | $ | 10 |
| SIZE 2 | $ | 11 |
| SIZE 3 | $ | 13 |
| SIZE 4 | $ | 20 |
| SIZE 5 (DUAL STARTER) | $ | 41 |

**MOTOR STARTERS CLASS 1 DIV II**

| | | |
|---|---|---|
| SIZE 1 | $ | 17 |
| SIZE 2 | $ | 23 |
| SIZE 3 | $ | 24 |
| SIZE 4 | $ | 26 |

**ASSOCIATED EQUIPMENT**

| | | |
|---|---|---|
| MCC BUILDING | $ | 367 |
| WATER MANIFOLD | $ | 48 |
| 15HP SEAWATER PUMP | $ | 139 |
| 25HP SEAWATER PUMP | $ | 153 |



*Price Sheet*

## FIELDWOOD ENERGY

| | | |
|---|---|---|
| 2" X 25' DISCHARGE HOSE | $ | 5 |
| 2" X 50' DISCHARGE HOSE | $ | 8 |
| 2" X 100' DISCHARGE HOSE | $ | 16 |
| FIRE HOSE REEL | $ | 37 |
| 1200AMP PARALLELING PANEL | $ | 67 |
| 2500AMP JUNCTION BOX | $ | 14 |
| 5000AMP JUNCTION BOX | $ | 14 |
| 6000AMP JUNCTION BOX | $ | 14 |



**ORIGINAL**

**Invoice Number: 5273142**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8026
Phone:
Fax:
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 964856 | 5/12/2020 | 1 of 2 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| ROWAN RESOLUTE | | FW202002/PO 5919 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| | | | |
| RIG NAME | | WELL NAME | |
| ROWAN (ROWAN RESOLUTE) | | OCS G34536 KATMAI #1 | |

# Invoice

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | EQUIPMENT PACKAGE | 22.000 | | 755.00 | 16,610.00 |
| | | Bill From 4/6/2020 to 4/27/2020 | | | | |
| | 009991 | Dryers | | | | |
| | 009883 | VFD Panel | | | | |
| | 010643 | Equipment Stand | | | | |
| | 009003 | Centrifuge | | | | |
| | 009006 | VFD Panel | | | | |
| | 009963 | Vacuum Units | | | | |
| | 009962 | Tank - WSS | | | | |
| | | WSS OPERATOR ONLY | 25.000 | DY | 700.00 | 17,500.00 |
| | | Bill From 4/6/2020 to 4/30/2020 | | | | |
| | | WSS RENTAL - DAY | 11.000 | DY | 15.00 | 165.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 4/6/2020 to 4/16/2020 | | | | |
| | | WSS OPERATOR ONLY | 6.000 | DY | 700.00 | 4,200.00 |
| | | Bill From 4/6/2020 to 4/11/2020 | | | | |
| 2951409 | 009963 | RNT DY VAC UNIT | 3.000 | DY | 200.00 | 600.00 |
| | | VAC UNIT | | | | |
| | | Bill From 4/28/2020 to 4/30/2020 | | | | |
| | | | | | Subtotal | 39,075.00 |

Continued ...



| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | Grand Sub Total | 39,075.00 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | **39,075.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:      121000248
Account:  4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8028
Phone:
Fax:
.

**ORIGINAL**

Invoice Number: 154763

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 984856 | 5/1/2020 | 1 of 2 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| ROWAN RESOLUTE | | FW202002/PO 5919 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| | | | |
| **RIG NAME** | | **WELL NAME** | |
| ROWAN (ROWAN RESOLUTE) | | OCS G34536 KATMAI #1 | |

## Preliminary Invoice

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3923

**Ship To:**   FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | EQUIPMENT PACKAGE<br>Bill From 4/6/2020 to 4/27/2020 | 22.000 | | 755.00 | 16,810.00 |
| | 009991 | Dryers | | | | |
| | 009883 | VFD Panel | | | | |
| | 010843 | Equipment Stand | | | | |
| | 009003 | Centrifuge | | | | |
| | 009006 | VFD Panel | | | | |
| | 009963 | Vacuum Units | | | | |
| | 009962 | Tank - WSS | | | | |
| | | WSS OPERATOR ONLY<br>Bill From 4/6/2020 to 4/30/2020 | 25.000 | DY | 700.00 | 17,500.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 4/6/2020 to 4/18/2020 | 11.000 | DY | 15.00 | 165.00 |
| | | WSS OPERATOR ONLY<br>Bill From 4/6/2020 to 4/11/2020 | 6.000 | DY | 700.00 | 4,200.00 |
| 2951409 | 009963 | RNT DY VAC UNIT<br>VAC UNIT<br>Bill From 4/28/2020 to 4/30/2020 | 3.000 | DY | 200.00 | 600.00 |
| | | | | | Subtotal | 39,075.00 |

Continued ...



| Invoice Number | Invoice Date | Page |
|---|---|---|
| 154763 | 5/1/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|

Grand Sub Total 39,075.00

Tax

Currency:  USD  Invoice Total  **39,075.00**

AFE:     FW202002
Lease:   GC 40 #1
Project: Katmai
Engineer: K.Dufrene
Routing #:   580047

*AccT Code# 3060-28*

*RTRF 5/11/20*

*Brent Primeaux*

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to
Wells Fargo Bank, N A
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:       121000248
Account:  4121898753
Beneficiary: NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

ORIGINAL

**Invoice Number: 5278192**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 5/19/2020 | 1 of 2 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VK 826 | | 15042 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | JIM CHURCHES | 713-422-5928 | |
| CUSTOMER REFERENCES | | REFERENCE | |
| VK 826 LOE | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154437 | 6009 | RNT DY GEN DSL SKD 500 KW GENERATOR - 500KW SKID MOUNTED Bill From 4/21/2020 to 4/30/2020 | 10.000 | DY | 300.00 | 3,000.00 |
| Ship To: 1070453 4529 LA HWY 1 3154437 | | | | | | |
| 3154438 | 5328 | RNT DY TANK - DIESEL TANK - 528 GALLON DUAL WALL DI Bill From 4/21/2020 to 4/30/2020 | 10.000 | DY | 15.00 | 150.00 |
| | | FREIGHT (3RD PARTY) WSS FREIGHT 3RD PARTY Bill From 4/21/2020 to 4/21/2020 DEL: AMERICAN EAGLE W/B #01162975 BILLED DIRECT | 1.000 | EA | 0.00 | |
| | | FREIGHT (3RD PARTY) WSS FREIGHT 3RD PARTY Bill From 4/22/2020 to 4/22/2020 DEL: AMERICAN EAGLE W/B #01083326 BILLED DIRECT (FILTERS | 1.000 | EA | 0.00 | |
| 3154437 | 6009 | RNT DY GEN DSL SKD 500 KW GENERATOR - 500KW SKID MOUNTED Bill From 5/1/2020 to 5/18/2020 | 18.000 | DY | 275.00 | 4,950.00 |
| 3154438 | 5328 | RNT DY TANK - DIESEL TANK - 528 GALLON DUAL WALL DI Bill From 5/1/2020 to 5/18/2020 | 18.000 | DY | 14.00 | 252.00 |
| | | | | | **Subtotal** | **8,352.00** |

Continued ...

| | Invoice Number | Invoice Date | Page |
|---|---|---|---|
| | 5278192 | 5/19/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 8,352.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **8,352.00** |

## REMITTANCE INSTRUCTIONS

<table>
<tr><td><b>Bank Deposit / Lockbox Payment</b></td><td></td><td><b>Wire Instructions (Wires Only)</b></td></tr>
<tr>
<td>NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX  75320-2631</td>
<td>Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104<br>.</td>
<td>ABA:        121000248<br>Account:   4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S</td>
</tr>
</table>

**ORIGINAL**

**Invoice Number: 5279803**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 5/21/2020 | 1 of 2 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| GL CODE 7200-85 RTG #57303 | | 15373 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | GREG MONTE | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| MAIN PASS 289-C | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL | 8.000 | DY | 8.00 | 64.00 |
| Ship To: 1039184 | | TANK-560 GALLON DIESEL | | | | |
| FABCON DOCK VENICE LA | | Bill From 4/23/2020 to 4/30/2020 | | | | |
| 2743022 | | | | | | |
| | | WSS RENTAL - DAY | 8.000 | DY | 40.00 | 320.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 4/23/2020 to 4/30/2020 | | | | |
| | | 400FT LEAD - 646 MCM-1 TYPE P | | | | |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW | 8.000 | DY | 192.00 | 1,536.00 |
| | | GENERATOR - 350KW SKID MOUNTED | | | | |
| | | Bill From 4/23/2020 to 4/30/2020 | | | | |
| 2743022 | 1296 | RNT DY TANK - DIESEL | 20.000 | DY | 8.00 | 160.00 |
| | | TANK-560 GALLON DIESEL | | | | |
| | | Bill From 5/1/2020 to 5/20/2020 | | | | |
| | | WSS RENTAL - DAY | 20.000 | DY | 38.00 | 760.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 5/1/2020 to 5/20/2020 | | | | |
| | | 400FT LEAD - 646 MCM-1 TYPE P | | | | |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW | 20.000 | DY | 165.00 | 3,300.00 |
| | | GENERATOR - 350KW SKID MOUNTED | | | | |
| | | Bill From 5/1/2020 to 5/20/2020 | | | | |
| | | | | | **Subtotal** | **6,140.00** |

Continued ...



| Invoice Number | Invoice Date | Page |
|---|---|---|
| 5279803 | 5/21/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 6,140.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **6,140.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**ORIGINAL**

**Invoice Number: 5281653**

**NOV**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337)  365-5050
Fax:     (337)  365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 412078 | 964856 | 5/26/2020 | 1 of 2 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| SMI 106A LOE | | 15633 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | TIM SMITH | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #573026 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3028428 | 6149 | RNT DY GEN DSL SKD 200 KW GENERATOR-200KW SKID MOUNTED - Bill From 4/24/2020 to 4/30/2020 | 7.000 | DY | 117.00 | 819.00 |
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | | | | | |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 4/24/2020 to 4/30/2020 4 - 100FT SECTIONS OF 4/0-1 LEAD | 7.000 | DY | 32.00 | 224.00 |
| 3028488 | 2158 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 4/24/2020 to 4/30/2020 SENT FULL | 7.000 | DY | 15.00 | 105.00 |
| 3028428 | 6149 | RNT DY GEN DSL SKD 200 KW GENERATOR-200KW SKID MOUNTED - Bill From 5/1/2020 to 5/21/2020 | 21.000 | DY | 107.00 | 2,247.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/1/2020 to 5/21/2020 4 - 100FT SECTIONS OF 4/0-1 LEAD | 21.000 | DY | 30.00 | 630.00 |
| 3028488 | 2158 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 5/1/2020 to 5/21/2020 | 21.000 | DY | 14.00 | 294.00 |
| | | | | | **Subtotal** | **4,319.00** |

Continued ...



| | | | Invoice Number | | Invoice Date | | Page |
|---|---|---|---|---|---|---|---|
| | | | 5281653 | | 5/26/2020 | | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 4,319.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **4,319.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



**ORIGINAL**

**Invoice Number: 5282150**

National Oilwell Varco, LP
Well Site Services Division

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400903 | 964856 | 5/26/2020 | 1 of 1 |

| JOB DESCRIPTION | CUSTOMER PO/AFE |
|---|---|
| RTG ID# 573036 GL 7200-85 | 15953 |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:     (985) 693-4829
.

| PAYMENT TERMS | CONTACT | EMAIL |
|---|---|---|
| Net 30 Days | GREG MONTE | |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| S.P. 62 CONSTRUCTION | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
EPS DOCKVENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| Ship To: 1039181 EPS DOCKVENICE LA LA | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 4/27/2020 to 4/30/2020 200 FT LEAD - 444MCM-1 TYPE P | 4.000 | DY | 18.00 | 72.00 |
| 2894200 | 6146 | RNT DY GEN DSL SKD 250 KW GENERATOR-250KW SKID MOUNTED - Bill From 4/27/2020 to 4/30/2020 | 4.000 | DY | 144.00 | 576.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/1/2020 to 5/24/2020 200 FT LEAD - 444MCM-1 TYPE P | 24.000 | DY | 18.00 | 432.00 |
| 2894200 | 6146 | RNT DY GEN DSL SKD 250 KW GENERATOR-250KW SKID MOUNTED - Bill From 5/1/2020 to 5/24/2020 | 24.000 | DY | 126.00 | 3,024.00 |

|  |  |
|---|---|
| **Subtotal** | **4,104.00** |
| Grand Sub Total | 4,104.00 |
| Tax | |
| Currency: **USD** **Invoice Total** | **4,104.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**
NOV Wellsite Services A Division of NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**
ABA:         121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**NOV**

ORIGINAL

**Invoice Number: 5286329**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410108 | 964856 | 5/29/2020 | 1 of 2 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| HI 376A LOE/GL #7200-48 | | 16557 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | TIM SMITH | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #573025 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 4/28/2020 to 4/30/2020 4 - 50FT SECTIONS OF 4/0-1 LEAD | 3.000 | DY | 16.00 | 48.00 |
| 2972005 | 5696 | RNT DY GEN DSL SKD 100 KW Generator - Diesel Skid Mount Bill From 4/28/2020 to 4/30/2020 | 3.000 | DY | 86.00 | 258.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 4/28/2020 to 4/30/2020 50FT OF 1/0-4 LEAD | 3.000 | DY | 4.00 | 12.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/1/2020 to 5/25/2020 4 - 50FT SECTIONS OF 4/0-1 LEAD | 25.000 | DY | 15.00 | 375.00 |
| 2972005 | 5696 | RNT DY GEN DSL SKD 100 KW Generator - Diesel Skid Mount Bill From 5/1/2020 to 5/25/2020 | 25.000 | DY | 79.00 | 1,975.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/1/2020 to 5/25/2020 50FT OF 1/0-4 LEAD | 25.000 | DY | 4.00 | 100.00 |
| | | | | | **Subtotal** | **2,768.00** |

Continued ...



| | | | |
|---|---|---|---|
| Invoice Number | | Invoice Date | Page |
| 5286329 | | 5/29/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 2,768.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **2,768.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**ORIGINAL**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8026
Phone:
Fax:

Invoice Number: 5287299

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 964856 | 5/31/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| ROWAN RESOLUTE | | FW202002/PO 5919 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| | | | |
| RIG NAME | | WELL NAME | |
| ROWAN (ROWAN RESOLUTE) | | OCS G34536 KATMAI #1 | |

# Invoice

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | WSS OPERATOR ONLY Bill From 5/1/2020 to 5/31/2020 | 31.000 | DY | 700.00 | 21,700.00 |
| 2951409 | 009963 | RNT DY VAC UNIT VAC UNIT Bill From 5/1/2020 to 5/31/2020 | 31.000 | DY | 200.00 | 6,200.00 |
| | | | | | Subtotal | 27,900.00 |
| | | | | | Grand Sub Total | 27,900.00 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | 27,900.00 |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA: 121000248
Account: 4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**NOV**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8026
Phone:
Fax:

**Invoice Number: 155684**     **ORIGINAL**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 964856 | 5/31/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| ROWAN RESOLUTE | | FW202002/PO 5919 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| RIG NAME | | WELL NAME | |
| ROWAN (ROWAN RESOLUTE) | | OCS G34536 KATMAI #1 | |

**Preliminary Invoice**

Bill To:    FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

Ship To:    FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| | | | | 700.00 | 21,700.00 |
| 2951409 | 009963 | R | | 200.00 | 6,200.00 |
| | | V | | | |
| | | B | | | |
| | | | | Subtotal | 27,900.00 |
| | | *1327235* | | nd Sub Total | 27,900.00 |
| | | | | Tax | |
| | | | | voice Total | 27,900.00 |

**INTEGRICERT**
*Where Integrity Is Standard*

AFE:     FW20200
Lease:   GC 40 #1
Project: Katmai
Engineer: K.Dufrene
Routing #:   580047

ACCT CODE 30
S. Butler 5-31

TOLL FREE: 877-246-3905

---

**REMITTANCE INSTRUCTIONS**

| Bank Deposit / Lockbox Payment | | Wire Instructions (Wires Only) |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 | ABA:        121000248 Account:  4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |

**ORIGINAL**

**Invoice Number: 5287945**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 6/2/2020 | 1 of 2 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| VR 371A LOE | | 16236 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | PATRICK BROWN | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #580025 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW | 8.000 | DY | 32.00 | 256.00 |
| Ship To: 1113508 | | GENERATOR - 50 KW | | | | |
| 25817 LA HWY 333 | | Bill From 4/23/2020 to 4/30/2020 | | | | |
| INTRACOASTAL CITY | | | | | | |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW | 8.000 | DY | 32.00 | 256.00 |
| | | GENERATOR - 50 KW | | | | |
| | | Bill From 4/23/2020 to 4/30/2020 | | | | |
| | | WSS RENTAL - DAY | 8.000 | DY | 16.00 | 128.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 4/23/2020 to 4/30/2020 | | | | |
| | | 8 - 50FT SECTIONS OF 4/0-1 LEAD | | | | |
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW | 20.000 | DY | 29.50 | 590.00 |
| | | GENERATOR - 50 KW | | | | |
| | | Bill From 5/1/2020 to 5/20/2020 | | | | |
| | | 1/2 RATES | | | | |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW | 20.000 | DY | 29.50 | 590.00 |
| | | GENERATOR - 50 KW | | | | |
| | | Bill From 5/1/2020 to 5/20/2020 | | | | |
| | | 1/2 RATES | | | | |
| | | WSS RENTAL - DAY | 20.000 | DY | 15.00 | 300.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 5/1/2020 to 5/20/2020 | | | | |
| | | 8 - 50FT SECTIONS OF 4/0-1 LEAD 1/2 RATES | | | | |
| | | | | | **Subtotal** | **2,120.00** |

Continued ...



| | | Invoice Number | Invoice Date | Page |
|---|---|---|---|---|
| | | 5287945 | 6/2/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 2,120.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **2,120.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



ORIGINAL

**Invoice Number: 5289070**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 6/4/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| VR 313B LOE | | 17372 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | TIM SMITH | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID 573002 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 5/6/2020 to 6/2/2020 | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 13.00 | 364.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 5/6/2020 to 6/2/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 28.000 | DY | 69.00 | 1,932.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 5/6/2020 to 6/2/2020 | | | | |
| | | | | | **Subtotal** | **2,520.00** |
| | | | | | **Grand Sub Total** | 2,520.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **2,520.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**ORIGINAL**

**Invoice Number: 5290393**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8026
Phone:
Fax:

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 964856 | 6/8/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| ROWAN RESOLUTE | | FW202002/PO 5919 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| | | | |
| RIG NAME | | WELL NAME | |
| ROWAN (ROWAN RESOLUTE) | | OCS G34536 KATMAI #1 | |

# Invoice

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | WSS OPERATOR ONLY<br>Bill From 6/1/2020 to 6/4/2020 | 4.000 | DY | 700.00 | 2,800.00 |
| 2951409 | 009963 | RNT DY VAC UNIT<br>VAC UNIT<br>Bill From 6/1/2020 to 6/4/2020 | 4.000 | DY | 200.00 | 800.00 |
| | | WSS MATERIAL REBILL<br>Bill From 6/2/2020 to 6/2/2020 | 1.000 | EA | 69.52 | 69.52 |
| | | | | | **Subtotal** | 3,669.52 |
| | | | | | **Grand Sub Total** | 3,669.52 |
| | | | | | **Tax** | |
| | | | Currency: | USD | **Invoice Total** | **3,669.52** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX 75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104 | ABA:         121000248<br>Account:   4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |



**ORIGINAL**

Invoice Number: 155835

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8026
Phone:
Fax:

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 964856 | 6/5/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| ROWAN RESOLUTE | | FW202002/PO 5919 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| | | | |
| **RIG NAME** | | **WELL NAME** | |
| ROWAN (ROWAN RESOLUTE) | | OCS G34536 KATMAI #1 | |

## *Preliminary Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | WSS OPERATOR ONLY<br>Bill From 6/1/2020 to 6/4/2020 | 4.000 | DY | 700.00 | 2,800.00 |
| 2951409 | 009963 | RNT DY VAC UNIT<br>VAC UNIT<br>Bill From 6/1/2020 to 6/4/2020 | 4.000 | DY | 200.00 | 800.00 |
| | | WSS MATERIAL REBILL<br>Bill From 6/2/2020 to 6/2/2020 | 1.000 | EA | 69.52 | 69.52 |
| | | | | | Subtotal | 3,669.52 |
| | | | | | Grand Sub Total | 3,669.52 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | 3,669.52 |

AFE:      FW202002
Lease:   GC 40 #1
Project: Katmai
Engineer: K.Dufrene
Routing #:   580047

*Acct Code # 3060-28*
*Clayton Shansi 6-5-20*

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



**ORIGINAL**

**Invoice Number: 5291269**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337)  365-5050
Fax:     (337)  365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410214 | 964856 | 6/9/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GC 40 KATMAI PROJECT | | FW183040-051519-L | |

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | CHRIS JOUBAN | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| ROUTING ID 580045 AFE FW183040 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|
| | | | |

# *Invoice*

**Bill To:**
FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**
FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2975103 | 5966 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 5/13/2020 to 6/9/2020 | 28.000 | DY | 97.00 | 2,716.00 |
| Ship To: 1070453 4529 LA HWY 1 2975103 | | | | | | |
| 2975105 | 3945 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 5/13/2020 to 6/9/2020 | 28.000 | DY | 14.00 | 392.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/13/2020 to 6/9/2020 8-100FT SECTIONS OF 444MCM LEAD | 28.000 | DY | 80.00 | 2,240.00 |
| 3072279 | 010342 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 5/13/2020 to 6/9/2020 | 28.000 | DY | 97.00 | 2,716.00 |
| | | | | | **Subtotal** | **8,064.00** |
| | | | | | **Grand Sub Total** | 8,064.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **8,064.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 . | ABA:          121000248 Account:    4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

# JOB ORDER TO MASTER SERVICES CONTRACT

This Job Order to Master Services Contract (the "Job Order") is entered into and made effective as of May 17, 2019 (the "Effective Date") by and between Fieldwood Energy LLC ("Company") and National Oilwell Varco WellSite Services - Portable Power ("Contractor"). Company and Contractor may be referred to herein as a "Party" or together as the "Parties". All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below).

WHEREAS, Company and Contractor are parties to that certain Master Services Contract dated as of January 1, 2013 (the "Agreement"); and

WHEREAS, Contractor submitted a proposal dated May 15, 2019 ("Contractor's Proposal") for ST 308 Rental Equipment in support of the Katmai Project (the "Work");

NOW, THERFORE, for and in consideration of the mutual covenants and agreements as set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    The Work, if any, which may be requested by Company at its sole discretion, shall be performed pursuant to the terms and conditions of the Agreement, this Job Order, and Contractor's Proposal.

2.    In the event of any conflict between the Agreement, this Job Order and Contractor's Proposal, then the documents shall control and govern in the following order: (a) the Master Agreement, (b) this Job Order, (c) Contractor's Proposal.

3.    Contractor's rates for the Work shall be as set forth in Contractor's Proposal. The Contractor shall perform the Work set forth herein in accordance with the specifications set forth in this Job Order and Contractor's Proposal, but subject to the terms and conditions for Services as set forth in the Agreement ("Services"). Any additional work, including third party items, requested by Company in addition to the Services described in this Job Order, must be quoted separately by Contractor and subject to Company acceptance.

4.    This Job Order does not obligate Company to order Work from Contractor, nor does it obligate Contractor to accept any requests for Work, but it and the applicable terms of the Agreement shall control and govern all Work agreed to be provided by or on behalf of Contractor and shall define the Parties' respective rights and obligations during the term hereof.

5.    This Job Order may be executed in counterparts with the same effect as if the signatures were on a single document, and will be effective when each Party has executed one counterpart. An executed and transmitted electronic version will be considered for all purposes an original signed document constituting a legally binding agreement.

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

IN WITNESS WHEREOF, the Parties do hereby execute and agree to this Job Order effective as of the Effective Date.

FIELDWOOD ENERGY LLC

By: _____
Name: Chris Jouban
Title: Purchasing Buyer III

NOV WELLSITE SERVICES –
PORTABLE POWER

By: _____
Name: Tim Aupied
Title: Broussard District Manager

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

APPENDIX A

- Rental Equipment Quote dated May 15, 2019
- 2019 Fieldwood Rate Sheet



**Portable Power**

1223 Evangeline Thruway
Broussard, LA 70518

PO:
Reference:     ST 308

Date:          5/15/2019

Customer:      FIELDWOOD
Contact:       CHRIS JOUBAN
Office Phone:
Cell:          337-354-3286
Email:         CHRIS.JOUBAN@FWELLC.COM
Fax

NOV Portable Power would like to thank you for the opportunity you have given us to supply generators and associated equipment for your upcoming project.

As per your request, NOV is submitting the following equipment selection and prices for your review and approval.

| ITEM | QTY | DESCRIPTION | DAILY PRICE EACH | DAILY PRICE TOTAL | 28-DAY BILLING CYCLE | TOTAL 28 DAY BILLING CYCLE |
|------|-----|-------------|------------------|-------------------|----------------------|----------------------------|
| 1 | 2 | 150KW GENERATORS AT 480V | $ 106.00 | $ 212.00 | $ 2,968.00 | $ 5,936.00 |
| 2 | 1 | 560 GALLON DIESEL TANK | $ 15.00 | $ 15.00 | $ 420.00 | $ 420.00 |
| 3 | 1 | 8 - 100FT SECTIONS OF 444MCM LEAD | $ 88.00 | $ 88.00 | $ 2,464.00 | $ 2,464.00 |
| 4 | 0 | | | $ - | $ - | $ - |
| 5 | 0 | | $ - | $ - | $ - | $ - |
| 6 | 0 | | $ - | $ - | $ - | $ - |
| 7 | 0 | | $ - | $ - | $ - | $ - |

Equipment Transportation

● Customer is responsible for transportation cost to and from the nearest NOV Portable Power depot where equipment is available. All transportation provided by NOV Portable Power will be billed at actual cost plus 25%. Customer has the option to arrange for shipment to and from the nearest NOV Portable Power location and to have trucking direct billed to the customer.
● Trucker Standby time rate of $105.00 per hour shall apply during delays at the jobsite.

Rental Charges

● ALL RENTAL CHARGES will be charged on above equipment from the day it ships from a NOV Portable Power facility thru the day it is returned back to a NOV Portable Power facility (regardless of the time the equipment was actually used.) The rental period shall not be subject to pro-ration.

● CHARGES FOR RENTAL DAYS WILL INCLUDE SATURDAYS, SUNDAYS, AND HOLIDAYS.

● A three (3) day minimum rental charge will apply for all rental equipment.

● In the event of a weather related or storm event (hurricane, tornado, flood, earthquake, fire or other natural emergency) a seven day (7) minimum rental charge will apply.

Normal Service

● Equipment is normally rented without normal service and oil changes included. Equipment can be rented with normal service and oil changes for an additional charge. The customer has the option to provide normal service and oil changes for equipment they have rented at their cost using their people. If the customer elects to provide normal service and oil changes and fails to perform the service, the customer will be liable for any damage to the rented equipment and will be billed for the service required upon return of the rental equipment to NOV.

Optional Service/ Spare Parts

● The customer is responsible for installation, operation, monitoring and demobilization of the NOV Portable Power rental equipment. NOV Portable Power can provide the required technician labor to assist customer in the installation, monitoring, and demobilization of the NOV Portable Power rental equipment for an additional charge.

● NOV Portable Power can also provide labor and consumables (filters, oil, etc) to service our rental equipment at the customer's request for an additional charge. Generators and light towers will require servicing as follows: light towers every 250 running hours, 15-300kw generators every 250 running hours, 350-1500kw generators every 500 running hours. HVAC filter replacement depends on the environment it is working in.

● These services can be provided by NOV Portable Power on a time and material basis.

Labor Rates:

Note: This rate schedule supersedes all previous rate schedules. **Labor rates are subject to change without notice.**

| 1. OFFSHORE | STANDARD TIME | OVERTIME | DOUBLE TIME |
|---|---|---|---|
| A. Electrician & Mechanic | $90.00 | $135.00 | $180.00 |
| B. Helper | $81.00 | $121.50 | $162.00 |
| 2. ONSHORE | STANDARD TIME | OVERTIME | DOUBLE TIME |
| A. Electrician & Mechanic | $80.00 | $120.00 | $160.00 |
| B. Helper | $69.00 | $103.50 | $138.00 |
| 3. SHOP | STANDARD TIME | OVERTIME | DOUBLE TIME |
| A. Electrician & Mechanic | $80.00 | $120.00 | $160.00 |
| B. Helper | $69.00 | $103.50 | $138.00 |

● Standard Time Rates- standard rates apply during office hours of 8am to 5pm with a lunch hour. A two (2) hour minimum charge will apply for all work performed on standard time.

● Overtime Time Rates- overtime rates, which are one and a half, times the standard rates. Overtime rates will apply between 5pm and 8am on weekdays, all day Saturday and Sunday. A four (4) hour minimum charge will apply for all work performed on overtime hours.

● Double Time Rates – Are double (2x) the standard time rates and will apply on all US government holidays and will include Easter Sunday.

● Offshore Service Labor – A twelve (12) hour minimum charge will apply for all days worked offshore including travel days.

Mileage Rate Charges:
● Mileage Rates – Mileage will be charged at $ 2.25 per mile. Mileage will include distance from nearest NOV Portable Power location to the customer work site and back to NOV location.

Travel and Lodging Charges:
● All actual expenses incurred by NOV Portable Power for travel such as airfare, meals, lodging etc. will be charged to the customer at actual cost plus 15 %, and backup documentation provided to the customer.

Fuel Charges
● Diesel is not included in above rental rates. NOV Portable Power can provide #2 Diesel fuel for the equipment at a cost of $4.00 / gallon if requested by rental customer.
● Units are shipped with fuel in the fuel tanks and the number of gallons recorded on the delivery ticket.
● The customer will be charged for the difference in gallons of fuel found at the time equipment is returned to NOV. If the equipment is shipped full the customer must return it with a full tank or be charged for the difference.
● Diesel fuel quality will be tested to insure it is not laced with water and other particulate contamination. If fuel is returned contaminated by the customer they will be invoiced for the cost of replacement fuel and for disposal of contaminated fuel.

Notes:
● NOV Portable Power generators are rated prime power not standby
● NOV Portable Power rental rates are for unlimited run time per day
● NOV Portable Power does not charge an environmental fee for clean-up of returned rental equipment

- Rental Protection Plan available upon request
- Quoted prices are firm for 30 days from the date of this quotation
- Quoted prices do not include applicable state and federal taxes
- Customer is responsible for all required operating and regulatory permits
- Customer is required to provide safe working environment
- Customer is required to call before making any repairs
- Customer is to provide insurance on all equipment
- Sales tax is applicable on all of the above rental, labor, travel, mileage and service charges unless we have a tax exemption certificate in our files
- Quoted prices do not include consumables (diesel fuel, filters, oil, etc.)  Unreturned items will be invoiced to customer

CUSTOMER RESPONSIBILITIES FOR SERVICE OF EQUIPMENT

1.   Customer is responsible for all normal service for the equipment rented to include but not limited to:

a.  Oil changes for equipment every:

- 250 run hours for light towers
- 250 run hours for generators 300KW and smaller
- 500 run hours for generators 350KW and larger

b.  Changing of all oil, fuel and air filters

- Customer must use NOV PP approved oil, fuel and air filters

c.  Customer must provide, at their expense, all technicians to perform normal service to the rental equipment. Technicians must follow NOV recommended procedures.

d.  Customer must provide all required oil, fuel and anti-freeze for normal operations.

- High quality 15W-40W multi-grade API approved motor oil must be used.
- Only high quality #2 diesel fuel should be used.
- A high quality 50 / 50 mix ration of antifreeze must be used.

e.  The replacement schedule for air filters and fuel filters will vary based on the type of equipment rented and the operating conditions where the equipment will be used. Please consult your local NOV Portable Power location for recommended change frequency.

2.   If the customer elects to provide normal service and oil/fluid changes, they will assume responsibility for damage incurred due to neglect or failure to perform required preventive maintenance.  Customer will be liable for any and all damage to the rental equipment and will be invoiced for the service required and a set charge, per hour, for negligence upon return of the equipment to NOV.

a.  There will be a charge of $5 per hour for all equipment exceeding 100 hours past due service (this charge will be for the original 100 hours plus any additional time).

- Due to recent GPS upgrades NOV Portable Power will have the option to monitor all units.

3.  For any questions related to the proper operation and how to perform the required normal service please contact your local NOV Portable Power location for assistance. Calls will be answered and returned 24 hours a day, 7 days a week.

4. NOV Portable Power will inspect all rental equipment immediately upon return from the customer. This inspection will include:

a.  Test for run operation of returned equipment. All equipment must be returned in operational condition.

b.  Visual inspection of the unit for any internal or external damage to the unit while in the customer's operational control of the rental equipment. Customer will be invoiced for repairs of all damage to the rental equipment.

c.  Visual inspection of the rental equipment to insure it has been returned clean and uncontaminated from the customer's work location. If the equipment is excessively dirty or contaminated with oil or fuel the customer will be invoiced for equipment decontamination cost.

Confidentiality

- The contents, solutions, descriptions, and pricing information described here are considered the confidential property of NOV Portable Power. Customer therefore acknowledges and agrees to keep any ideas, information, and contents of this proposal confidential.

- NOV Portable Power requires that any and all correspondence including, but not limited to: price quotes, solution description, process details, and any other information directly or indirectly pertaining to this quotation are kept in the strictest confidence by the customer.

Proposal Acceptance

- Should you wish to proceed with the rental outlined in this proposal and agree to the attached terms and conditions, please provide your purchase order number and sign and date below indicating your acceptance of this quotation. All NOV Portable Power normal terms and conditions shall apply.

Accepted By:

Company Name_____

Purchase order number_____

Trucking Provided by NOV Portable Power Option?  YES ☐     NO ☐     (Please Check One)

Signature_____

Print Name_____

Title_____

Date Accepted_____

Regards,

**Shawn Mccauley**



Rental Representative

Portable Power

1223 Evangeline Thruway

Broussard, LA 70518

shawn.mccauley@nov.com

Office:  337-365-5050

Fax:  337-365-1902

 **NATIONAL OILWELL VARCO**

*Price Sheet*

**FIELDWOOD ENERGY**

**GENERATORS**

| | | |
|---|---|---|
| 15KW | $ | 47 |
| 30KW | $ | 56 |
| 50KW | $ | 64 |
| 75KWNG | $ | 137 |
| 80KW | $ | 78 |
| 100KW | $ | 86 |
| 125KW | $ | 95 |
| 150KW | $ | 106 |
| 150KWNG | $ | 196 |
| 200KW | $ | 117 |
| 250KW | $ | 137 |
| 250KWNG | $ | 248 |
| 300KW | $ | 158 |
| 350KW | $ | 180 |
| 500KW | $ | 300 |
| 800KW | $ | 383 |
| 1000KW | $ | 468 |
| 1250KW | $ | 555 |
| 1400KW | $ | 597 |

**DISTRIBUTION RACK CIRCUITS RAINTIGHT**

| | | |
|---|---|---|
| | $ | - |
| 30-100AMP | $ | 8 |
| 125-200AMP | $ | 10 |
| 225-300AMP | $ | 11 |
| 350-450AMP | $ | 13 |
| 600AMP | $ | 23 |

**DISTRIBUTION RACK CIRCUITS CLASS 1 DIV II**

| | | |
|---|---|---|
| 30-100AMP | $ | 13 |
| 125-200AMP | $ | 19 |
| 225-300AMP | $ | 20 |
| 350-450AMP | $ | 26 |
| 600AMP | $ | 32 |

**PLUGS AND RECEPTACLES – NEMA 4**

| | | |
|---|---|---|
| 30-100AMP | $ | 13 |
| 150-200AMP | $ | 19 |

**TRANSFORMERS**

| | | |
|---|---|---|
| 12.5KVA | $ | 10 |
| 15KVA | $ | 14 |
| 37.5KVA | $ | 26 |
| 45KVA | $ | 28 |
| 75KVA | $ | 29 |
| 112KVA | $ | 33 |
| 150KVA | $ | 39 |
| 225KVA | $ | 48 |
| 300KVA | $ | 57 |
| 500KVA | $ | 94 |



*Price Sheet*

FIELDWOOD ENERGY

| | | |
|---|---|---|
| 750KVA | $ | 119 |
| 1000KVA | $ | 145 |
| 1500KVA | $ | 176 |
| | | |
| **FUEL TANKS DUAL WALL** | | |
| 528 GALLON | $ | 30 |
| 792 GALLON LAND | $ | 42 |
| 792 GALLON OFFSHORE | $ | 54 |
| 1000 GALLON | $ | 77 |
| 2350 GALLON | $ | 110 |
| | | |
| **FUEL TANKS SINGLE WALL** | | |
| 560 GALLON | $ | 15 |
| 1000 GALLON | $ | 26 |
| 4200 GALLON | $ | 113 |
| | | |
| **FUEL CONTAINMENT TANKS** | | |
| 560 GALLON | $ | 9 |
| 1000 GALLON | $ | 10 |
| 4200 GALLON | $ | 18 |
| | | |
| **FUELING PUMPS** | | |
| 120V STANDARD (TOP MOUNT) | $ | 9 |
| 120V EXP (SKID MOUNT) | $ | 30 |
| FUELING NOZZLE | $ | 4 |
| | | |
| **ELECTRICAL LEADS** | | |
| 4/0-1C (PER FT) | $ | 0.08 |
| 444MCM-1C (PER FT) | $ | 0.11 |
| 646MCM-1C (PER FT) | $ | 0.13 |
| 6/4C (PER FT) | $ | 0.07 |
| 10/4C (PER FT) | $ | 0.07 |
| 12/4C (PER FT) | $ | 0.07 |
| 4/4C (PER FT) | $ | 0.07 |
| 2/4C (PER FT) | $ | 0.07 |
| 1/0-4C (PER FT) | $ | 0.08 |
| 2/0-4C (PER FT) | $ | 0.12 |
| 4/0-4C (PER FT) | $ | 0.16 |
| | | |
| **LIGHTING RAINTIGHT & CLASS 1 DIV II** | | |
| 400W DUAL POLE | $ | 17 |
| 400W SINGLE | $ | 14 |
| | | |
| **LIGHTING CLASS 1 DIV 1** | | |
| 400W DUAL POLE | $ | 35 |
| 400W SINGLE | $ | 19 |
| | | |
| **LOW VOLTAGE DROP LIGHTS CLASS 1 DIV 1** | | |
| EXP DROP LIGHT | $ | 14 |
| EXP TRANSFORMER BOX | $ | 13 |



*Price Sheet*

FIELDWOOD ENERGY

### LIGHT TOWERS

| | | |
|---|---|---|
| 8KW | $ | 39 |
| 20KW | $ | 72 |
| 30KW | $ | 90 |

### RECEPTACLE RACKS

| | | |
|---|---|---|
| RAINTIGHT | $ | 14 |
| CLASS 1 DIV II | $ | 28 |
| CLASS 1 DIV II GFCI | $ | 37 |

### LIGHTING PANELS

| | | |
|---|---|---|
| RAINTIGHT | $ | 14 |
| CLASS 1 DIV II | $ | 28 |

### MISCELLANEOUS RAINTIGHT 120VAC

| | | |
|---|---|---|
| QUAD BOX | $ | 5 |
| EXTENSION CORD 100' | $ | 5 |

### TRANSFER SWITCHES RAINTIGHT

| | | |
|---|---|---|
| 400AMP | $ | 31 |
| 600AMP | $ | 42 |
| 800AMP | $ | 56 |
| 1000AMP | $ | 75 |
| 1200AMP | $ | 82 |
| 2000AMP | $ | 134 |

### TRANSFER SWITCHES CLASS 1 DIV II

| | | |
|---|---|---|
| 400AMP | $ | 50 |
| 800AMP | $ | 141 |
| 1200AMP | $ | 195 |

### MOTOR STARTERS RAINTIGHT

| | | |
|---|---|---|
| SIZE 1 | $ | 10 |
| SIZE 2 | $ | 11 |
| SIZE 3 | $ | 13 |
| SIZE 4 | $ | 20 |
| SIZE 5 (DUAL STARTER) | $ | 41 |

### MOTOR STARTERS CLASS 1 DIV II

| | | |
|---|---|---|
| SIZE 1 | $ | 17 |
| SIZE 2 | $ | 23 |
| SIZE 3 | $ | 24 |
| SIZE 4 | $ | 26 |

### ASSOCIATED EQUIPMENT

| | | |
|---|---|---|
| MCC BUILDING | $ | 367 |
| WATER MANIFOLD | $ | 48 |
| 15HP SEAWATER PUMP | $ | 139 |
| 25HP SEAWATER PUMP | $ | 153 |



*Price Sheet*

### FIELDWOOD ENERGY

| | | |
|---|---|---|
| 2" X 25' DISCHARGE HOSE | $ | 5 |
| 2" X 50' DISCHARGE HOSE | $ | 8 |
| 2" X 100' DISCHARGE HOSE | $ | 16 |
| FIRE HOSE REEL | $ | 37 |
| 1200AMP PARALLELING PANEL | $ | 67 |
| 2500AMP JUNCTION BOX | $ | 14 |
| 5000AMP JUNCTION BOX | $ | 14 |
| 6000AMP JUNCTION BOX | $ | 14 |



**Invoice Number: 5295840**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 6/17/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 371A LOE | | 16236 | |

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | PATRICK BROWN | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| ROUTING ID #580025 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 5/21/2020 to 6/17/2020 1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 5/21/2020 to 6/17/2020 1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/21/2020 to 6/17/2020 8 - 50FT SECTIONS OF 4/0-1 LEAD 1/2 RATES | 28.000 | DY | 15.00 | 420.00 |
| | | | | | Subtotal | **2,072.00** |
| | | | | | Grand Sub Total | 2,072.00 |
| | | | | | Tax | |
| | | | Currency: | USD | **Invoice Total** | **2,072.00** |

---

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



ORIGINAL

**Invoice Number: 5295862**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 6/17/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VK 826 | | 18731 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | JIM CHURCHES | 713-422-5928 | |
| CUSTOMER REFERENCES | | REFERENCE | |
| VK 826 LOE | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154437 | 6009 | RNT DY GEN DSL SKD 500 KW GENERATOR - 500KW SKID MOUNTED Bill From 5/19/2020 to 6/15/2020 | 28.000 | DY | 275.00 | 7,700.00 |
| 3154438 | 5328 | RNT DY TANK - DIESEL TANK - 528 GALLON DUAL WALL DI Bill From 5/19/2020 to 6/15/2020 | 28.000 | DY | 14.00 | 392.00 |
| | | | | | Subtotal | 8,092.00 |
| | | | | | Grand Sub Total | 8,092.00 |
| | | | | | Tax | |
| | | Currency: | | USD | Invoice Total | 8,092.00 |

---

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 . | ABA:         121000248 Account:   4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |

**Crochet, Crystal**

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Wednesday, June 17, 2020 8:20 AM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*
**N⬤V Wellbore Technologies**
WellSite Services
7909 Parkwood Cir Dr | Houston TX 77036
O 713.482.0611
M 985.258.9836
E Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices
Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the ntended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Wednesday, June 17, 2020 8:18 AM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

## Fieldwood Energy LLC Purchase Order #18731

Powered by

Hi Alizabeth,

You have received a new purchase order #18731 from Fieldwood Energy LLC Company.

Submitted By  VK826NeptuneTeamlead Fieldwood

1

On Behalf Of  VK826NeptuneTeamlead Fieldwood

    Supplier  NATIONAL OILWELL VARCO, LP

       Total  **8,092.00**

      Items  **rental generator - 156000**                                    **8,092.00** USD

**View Order**

## More Detail

          **PO ID** 18731  **Department** None

         **Status** Issued - Scheduled for email  **Last Opened** None

    **Order Date** 06/17/20  **Acknowledged At** None

  **Revision Date** 06/17/20  **Payment Term** Net 60

       **Req #** 20000  **Shipping** CPT

### Supplier

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE
DR
HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

### Shipping

4529 Highway 1
Grand Isle, LA 70358
United States
Attn: VK826NeptuneTeamlead
Fieldwood

## Lines

**rental generator - 156000** for **8,092.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Contract **556324_Master Services Agreement dated effective 11/01/2013** •
Account **LOE-_NA_-DEEPWATER-VK0826-_NA_-VK826NEP-VK826NEP-7200-85** • Period **2020 - 06 - June**

Total **8,092.00** USD



Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

2



ORIGINAL

**Invoice Number: 5296130**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 6/17/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| GL CODE 7200-85 RTG #57303 | | 18822 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | GREG MONTE | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| MAIN PASS 289-C | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 5/21/2020 to 6/17/2020 | 28.000 | DY | 8.00 | 224.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 5/21/2020 to 6/17/2020<br>400FT  LEAD - 646 MCM-1 TYPE P | 28.000 | DY | 38.00 | 1,064.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW<br>GENERATOR - 350KW SKID MOUNTED<br>Bill From 5/21/2020 to 6/17/2020 | 28.000 | DY | 165.00 | 4,620.00 |
| | | | | | **Subtotal** | **5,908.00** |
| | | | | | Grand Sub Total | 5,908.00 |
| | | | | | Tax | |
| | | Currency: | | USD | **Invoice Total** | **5,908.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX  75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104 | ABA:            121000248<br>Account:     4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |

**Crochet, Crystal**

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Wednesday, June 17, 2020 2:35 PM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*
**NOV Wellbore Technologies**
WellSite Services
7909 Parkwood Cir Dr | Houston TX 77036
O 713.482.0611
M 985.258.9836
E Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices
Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the ntended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Wednesday, June 17, 2020 2:34 PM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

## Fieldwood Energy LLC Purchase Order #18822

Powered by

Hi Alizabeth,

You have received a new purchase order #18822 from Fieldwood Energy LLC Company.

Submitted By  Gregory Monte

On Behalf Of Gregory Monte

Supplier NATIONAL OILWELL VARCO, LP

Total **6,356.00**

| Items | | | |
|---|---|---|---|
| **RENTAL, GENERATOR 350KW** | 28.0 Day @ 180.00 | **5,040.00** USD | |
| **RENTAL,ELECTRICAL LEAD, 646MCM-1C (PER FT)** | 8184.62 Day @ 0.13 | **1,064.00** USD | |
| **RENTAL, FUEL CONTAINMENT TANK, 560 GALLON** | 28.0 Day @ 9.00 | 252.00 USD | |

[ View Order ]

## More Detail

| | | | |
|---|---|---|---|
| **PO ID** 18822 | | **Department** MAIN PASS 275/289/290 |
| **Status** Issued - Scheduled for email | | **Last Opened** None |
| **Order Date** 06/17/20 | | **Acknowledged At** None |
| **Revision Date** 06/17/20 | | **Payment Term** Net 60 |
| **Req #** 20489 | | **Shipping** CPT |

**Supplier**

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE DR HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

**Shipping**

4529 Highway 1
Grand Isle, LA 70358
United States
Attn: Gregory Monte

## Lines

28.0 DAY **RENTAL, GENERATOR 350KW** for **5,040.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Contract **556324_Master Services Agreement dated effective 11/01/2013** •
Account **LOE-_NA_-AREA6-MP0290-MP289C-MP289C-MP289C-7200-85** • Period **2020 - 06 - June**

8184.62 DAY **RENTAL,ELECTRICAL LEAD, 646MCM-1C (PER FT)** for **1,064.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Contract **556324_Master Services Agreement dated effective 11/01/2013** •
Account **LOE-_NA_-AREA6-MP0290-MP289C-MP289C-MP289C-7200-85** • Period **2020 - 06 - June**

28.0 DAY **RENTAL, FUEL CONTAINMENT TANK, 560 GALLON** for **252.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Contract **556324_Master Services Agreement dated effective 11/01/2013** •
Account **LOE-_NA_-AREA6-MP0290-MP289C-MP289C-MP289C-7200-85** • Period **2020 - 06 - June**

Total **6,356.00** USD

2



ORIGINAL

**Invoice Number: 5297385**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 412078 | 964856 | 6/19/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| SMI 106A LOE | | 19049 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | JARED BERGERON | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #573026 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3028428 | 6149 | RNT DY GEN DSL SKD 200 KW GENERATOR-200KW SKID MOUNTED - Bill From 5/22/2020 to 6/18/2020 | 28.000 | DY | 107.00 | 2,996.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 5/22/2020 to 6/18/2020 4 - 100FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 30.00 | 840.00 |
| 3028488 | 2158 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 5/22/2020 to 6/18/2020 | 28.000 | DY | 14.00 | 392.00 |
| | | | | | Subtotal | 4,228.00 |
| | | | | | Grand Sub Total | 4,228.00 |
| | | | | | Tax | |
| | | Currency: | | USD | Invoice Total | 4,228.00 |

## REMITTANCE INSTRUCTIONS

| Bank Deposit / Lockbox Payment | | Wire Instructions (Wires Only) |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 | ABA:        121000248 Account:   4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |

**Crochet, Crystal**

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Friday, June 19, 2020 8:00 AM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*
**NOV Wellbore Technologies**
WellSite Services
7909 Parkwood Cir Dr | Houston TX 77036
O 713.482.0611
M  985.258.9836
E  Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices
Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the ntended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Thursday, June 18, 2020 7:23 PM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

# Fieldwood Energy LLC Purchase Order #19049

Powered by

Hi Alizabeth,

You have received a new purchase order #19049 from Fieldwood Energy LLC Company.

Submitted By  Jared Bergeron

1

On Behalf Of Jared Bergeron

    Supplier NATIONAL OILWELL VARCO, LP

        Total **4,228.00**

        Items **SMI106A, NOV rental equipment, 412078**        **4,228.00** USD

[View Order]

## More Detail

| | |
|---|---|
| **PO ID** 19049 | **Department** None |
| **Status** Issued - Sent via Email | **Last Opened** None |
| **Order Date** 06/18/20 | **Acknowledged At** None |
| **Revision Date** 06/18/20 | **Payment Term** Net 60 |
| **Req #** 20567 | **Shipping** CPT |

**Supplier**

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE DR
HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

**Shipping**

12354 Offshore Rd
Abbeville, LA 70510
United States
Attn: Jared Bergeron

## Lines

**SMI106A, NOV rental equipment, 412078** for **4,228.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Part Number **"964856,412078"** • Contract **556324_Master Services Agreement dated effective 11/01/2013** • Account **LOE-_NA_-AREA2-SM0105-SM106FLD-SM106FLD-SM106FLD-7200-85** • Period **2020 - 06 - June**

Total **4,228.00** USD

Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

2

ORIGINAL

**Invoice Number: 5298026**

National Oilwell Varco, LP
Well Site Services Division

LEDGER NO. 130

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410108 | 964856 | 6/22/2020 | 1 of 2 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| HI 376A LOE/GL #7200-48 | | 19116 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | TIM SMITH | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #573025 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | LF3970<br>LF3970 FILTER | 4.000 | EA | 11.31 | 45.22 |
| | | P527682<br>FILTER AIR DONALDSON/RS3518 BA | 1.000 | EA | 71.65 | 71.65 |
| | | RA-PNL250<br>LUG MECHANICAL 2/0-250MCM | 4.000 | EA | 8.71 | 34.84 |
| | | LF9009<br>LF9009 FILTER | 6.000 | EA | 38.34 | 230.06 |
| | | 2968F<br>DIESEL FUEL - 1 GAL BULK | 295.000 | EA | 4.00 | 1,180.00 |
| | | 15W40<br>OIL ENGINE 15W40 | 9.000 | GA | 18.22 | 163.95 |
| | | FF5580<br>FILTER FUEL FLG/BF7917 BALDWIN | 5.000 | EA | 14.41 | 72.07 |
| | | 2020TMOR<br>FILTER FUEL RACOR#2020N-10/PF7 | 10.000 | EA | 13.08 | 130.76 |
| | | A475C<br>FILTER AIR AC/PA1902FN BALDWIN | 1.000 | EA | 37.08 | 37.08 |
| | | FF5421<br>FILTER FUEL FLG/BALDWIN# BF796 | 4.000 | EA | 17.34 | 69.38 |

Continued ...



| | | | Invoice Number | Invoice Date | Page |
|---|---|---|---|---|---|
| | | | 5298026 | 6/22/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | FS19732<br>FILTER FUEL FLG/BF1385-SPS BAL | 10.000 | EA | 27.52 | 275.20 |
| | | | | | **Subtotal** | **2,310.21** |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 5/26/2020 to 6/1/2020<br>4 - 50FT SECTIONS OF 4/0-1 LEAD | 7.000 | DY | 15.00 | 105.00 |
| 2972005 | 5696 | RNT DY GEN DSL SKD 100 KW<br>Generator - Diesel Skid Mount<br>Bill From 5/26/2020 to 6/1/2020 | 7.000 | DY | 79.00 | 553.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 5/26/2020 to 6/1/2020<br>50FT OF 1/0-4 LEAD | 7.000 | DY | 4.00 | 28.00 |
| | | FREIGHT (3RD PARTY)<br>WSS FREIGHT 3RD PARTY<br>Bill From 6/1/2020 to 6/1/2020<br>DEL: AMERICAN EAGLE W/B #01169769 BILLED<br>DIRECT (5696) | 1.000 | EA | 0.00 | |
| | | | | | **Subtotal** | **686.00** |
| | | | | | Grand Sub Total | 2,996.21 |
| | | | | | Tax | |
| | | | Currency: | USD | **Invoice Total** | **2,996.21** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:            121000248
Account:     4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

## Crochet, Crystal

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Friday, June 19, 2020 2:05 PM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*

**NOV Wellbore Technologies**

WellSite Services

7909 Parkwood Cir Dr | Houston TX 77036

O 713.482.0611

M  985.258.9836

E  Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices

Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the ntended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Friday, June 19, 2020 2:04 PM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

## Fieldwood Energy LLC Purchase Order #19116

Powered by

Hi Alizabeth,

You have received a new purchase order #19116 from Fieldwood Energy LLC Company.

Submitted By  Carlos Cerna

On Behalf Of Carlos Cerna

Supplier NATIONAL OILWELL VARCO, LP

Total **2,996.21**

Items **HI-376A NOV Rental Generator Charges Up to 06/01**     **2,996.21** USD

View Order

## More Detail

**PO ID** 19116

**Status** Issued - Scheduled for email

**Order Date** 06/19/20

**Revision Date** 06/19/20

**Req #** 20670

**Department** None

**Last Opened** None

**Acknowledged At** None

**Payment Term** Net 60

**Shipping** CPT

**Supplier**

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE DR
HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

**Shipping**

12354 Offshore Rd
Abbeville, LA 70510
United States
Attn: Carlos Cerna

## Lines

**HI-376A NOV Rental Generator Charges Up to 06/01 for 2,996.21**
Supplier **NATIONAL OILWELL VARCO, LP** • Need By **06/18/20** • Contract **556324_Master Services Agreement dated
effective 11/01/2013** • Account **LOE-_NA_-AREA1-HIA376-HIA376-HIA376-7200-85** • Period **2020 - 06 - June**

Total **2,996.21** USD

Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

2

**NOV**

ORIGINAL

**Invoice Number: 5298027**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410108 | 964856 | 6/22/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| HI 376A LOE/GL #7200-48 | | 19119 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | TIM SMITH | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #573025 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | RA-LEAD1/0-4<br>LEAD - 1/0-4 TYPE W | 52.000 | FT | 14.50 | 754.00 |
| | | | | | **Subtotal** | **754.00** |
| | | | | | Grand Sub Total | 754.00 |
| | | | | | Tax | |
| | | Currency: | | USD | Invoice Total | **754.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX  75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104 | ABA:       121000248<br>Account:  4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |

**Crochet, Crystal**

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Friday, June 19, 2020 2:08 PM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*
**NOV Wellbore Technologies**
WellSite Services
7909 Parkwood Cir Dr | Houston TX 77036
O 713.482.0611
M 985.258.9836
E Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices
Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the ntended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Friday, June 19, 2020 2:07 PM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

## Fieldwood Energy LLC Purchase Order #19119

Powered by

Hi Alizabeth,

You have received a new purchase order #19119 from Fieldwood Energy LLC Company.

Submitted By  Carlos Cerna

On Behalf Of Carlos Cerna

Supplier NATIONAL OILWELL VARCO, LP

Total **754.00**

Items **HI-376B NOV - "PURCHASE" of 1/0 4C Power Leads Left On PF. RENT is going to STOP**    1 Each @ 754.00    **754.00** USD

View Order

## More Detail

| | |
|---|---|
| **PO ID** 19119 | **Department** None |
| **Status** Issued - Sent via Email | **Last Opened** None |
| **Order Date** 06/19/20 | **Acknowledged At** None |
| **Revision Date** 06/19/20 | **Payment Term** Net 60 |
| **Req #** 20619 | **Shipping** CPT |

### Supplier

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE DR HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

### Shipping

12354 Offshore Rd
Abbeville, LA 70510
United States
Attn: Carlos Cerna

## Lines

1 EA **HI-376B NOV - "PURCHASE" of 1/0 4C Power Leads Left On PF. RENT is going to STOP** for **754.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Need By **06/18/20** • Contract **556324_Master Services Agreement dated effective 11/01/2013** • Account **LOE-_NA_-AREA1-HIA376-_NA_-HIA376BPLT-HIA376BPLT-7200-2** • Period **2020 - 06 - June**

Total **754.00** USD

Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

2


ORIGINAL

**Invoice Number: 5298353**

| | | | |
|---|---|---|---|
| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
| 400903 | 964856 | 6/22/2020 | 1 of 1 |

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| RTG ID# 573036 GL 7200-85 | | 19341 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | GREG MONTE | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| S.P. 62 CONSTRUCTION | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
EPS DOCKVENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 5/25/2020 to 6/21/2020<br>200 FT LEAD - 444MCM-1 TYPE P | 28.000 | DY | 18.00 | 504.00 |
| 2894200 | 6146 | RNT DY GEN DSL SKD 250 KW<br>GENERATOR-250KW SKID MOUNTED -<br>Bill From 5/25/2020 to 6/21/2020 | 28.000 | DY | 126.00 | 3,528.00 |
| | | | | | Subtotal | 4,032.00 |
| | | | | | Grand Sub Total | 4,032.00 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | 4,032.00 |

## REMITTANCE INSTRUCTIONS

| Bank Deposit / Lockbox Payment | | Wire Instructions (Wires Only) |
|---|---|---|
| NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX  75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104 | ABA:        121000248<br>Account:   4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |

**Crochet, Crystal**

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Monday, June 22, 2020 2:59 PM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*
**NOV Wellbore Technologies**
WellSite Services
7909 Parkwood Cir Dr | Houston TX 77036
O 713.482.0611
M  985.258.9836
E  Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices
Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the ntended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Monday, June 22, 2020 2:59 PM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

## Fieldwood Energy LLC Purchase Order #19341

Powered by

Hi Alizabeth,

You have received a new purchase order #19341 from Fieldwood Energy LLC Company.

Submitted By  Gregory Monte

1

On Behalf Of Gregory Monte

Supplier NATIONAL OILWELL VARCO, LP

Total **4,032.00**

Items **Rental, Generator 250KW**  28.0 Day @ 126.00  **3,528.00** USD

**Rental, 200' Lead - 444MCM**  28.0 Day @ 18.00  **504.00** USD

[ View Order ]

## More Detail

**PO ID** 19341                         **Department** SOUTH PASS 62

**Status** Issued - Scheduled for email     **Last Opened** None

**Order Date** 06/22/20                   **Acknowledged At** None

**Revision Date** 06/22/20                 **Payment Term** Net 60

**Req #** 21108                          **Shipping** CPT

### Supplier

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE DR
HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

### Shipping

4529 Highway 1
Grand Isle, LA 70358
United States
Attn: SP62C/D

## Lines

28.0 DAY **Rental, Generator 250KW** for **3,528.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Contract **556324_Master Services Agreement dated effective 11/01/2013** •
Account **LOE-_NA_-AREA6-SP0062-SP62FLD-SP62FLD-SP62FLD-7200-85** • Period **2020 - 06 - June**

28.0 DAY **Rental, 200' Lead - 444MCM** for **504.00**
Supplier **NATIONAL OILWELL VARCO, LP** • Contract **556324_Master Services Agreement dated effective 11/01/2013** •
Account **LOE-_NA_-AREA6-SP0062-SP62FLD-SP62FLD-SP62FLD-7200-85** • Period **2020 - 06 - June**

Total **4,032.00** USD

Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

2



ORIGINAL

**Invoice Number: 5299099**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 412078 | 964856 | 6/23/2020 | 1 of 2 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| SMI 106A LOE | | 19585 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | JARED BERGERON | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #573026 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | 2020TMOR<br>FILTER FUEL RACOR#2020N-10/PF7 | 1.000 | EA | 13.08 | 13.08 |
| | | 2968F<br>DIESEL FUEL - 1 GAL BULK | 375.000 | EA | 4.00 | 1,500.00 |
| | | 3289930<br>FAN BELT CUMMINS QSL9/3700 & 5 | 2.000 | EA | 68.72 | 137.44 |
| | | FF5580<br>FILTER FUEL FLG/BF7917 BALDWIN | 1.000 | EA | 14.41 | 14.41 |
| | | FS19732<br>FILTER FUEL FLG/BF1385-SPS BAL | 1.000 | EA | 27.52 | 27.52 |
| | | LF9009<br>LF9009 FILTER | 1.000 | EA | 38.34 | 38.34 |
| | | | | | **Subtotal** | **1,730.79** |
| 3028428 | 6149 | RNT DY GEN DSL SKD 200 KW<br>GENERATOR-200KW SKID MOUNTED -<br>Bill From 6/19/2020 to 6/22/2020 | 4.000 | DY | 107.00 | 428.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 6/19/2020 to 6/22/2020<br>4 - 100FT SECTIONS OF 4/0-1 LEAD | 4.000 | DY | 30.00 | 120.00 |
| 3028488 | 2158 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 6/19/2020 to 6/22/2020 | 4.000 | DY | 14.00 | 56.00 |

Continued ...


| | Invoice Number | Invoice Date | Page |
|---|---|---|---|
| | 5299099 | 6/23/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | FREIGHT (3RD PARTY) WSS FREIGHT 3RD PARTY Bill From 6/22/2020 to 6/22/2020 P/U: AMERICAN EAGLE W/B #01197602 BILLED DIRECT | 1.000 | EA | 0.00 | |

| | | |
|---|---|---|
| Subtotal | | 604.00 |
| Grand Sub Total | | 2,334.79 |
| Tax | | |
| Currency: USD | Invoice Total | 2,334.79 |

---

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**Crochet, Crystal**

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Tuesday, June 23, 2020 2:48 PM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*
**NOV Wellbore Technologies**
WellSite Services
7909 Parkwood Cir Dr | Houston TX 77036
O 713.482.0611
M  985.258.9836
E  Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices
Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the intended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Tuesday, June 23, 2020 1:40 PM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

# Fieldwood Energy LLC Purchase Order #19585

Powered by

Hi Alizabeth,

You have received a new purchase order #19585 from Fieldwood Energy LLC Company.

Submitted By  Jared Bergeron

1

On Behalf Of Jared Bergeron
    Supplier NATIONAL OILWELL VARCO, LP
        Total **2,334.79**
        Items **SMI106A, NOV rental equipment, 412078**        **2,334.79** USD

`View Order`

## More Detail

| | | | |
|---|---|---|---|
| **PO ID** 19585 | | **Department** None | |
| **Status** Issued - Scheduled for email | | **Last Opened** None | |
| **Order Date** 06/23/20 | | **Acknowledged At** None | |
| **Revision Date** 06/23/20 | | **Payment Term** Net 60 | |
| **Req #** 20990 | | **Shipping** CPT | |

**Supplier**

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE DR
HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

**Shipping**

12354 Offshore Rd
Abbeville, LA 70510
United States
Attn: Jared Bergeron

## Lines

**SMI106A, NOV rental equipment, 412078** for **2,334.79**
Supplier **NATIONAL OILWELL VARCO, LP** • Part Number **"412078"** • Contract **556324_Master Services Agreement dated effective 11/01/2013** • Account **LOE-_NA_-AREA2-SM0105-SM106FLD-SM106FLD-SM106FLD-7200-85** • Period **2020 - 06 - June**

Total **2,334.79** USD

Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

2



**ORIGINAL**

**Invoice Number: 5302447**

National Oilwell Varco, LP
Well Site Services Division

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8026
Phone:
Fax:

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 964856 | 6/29/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| ROWAN RESOLUTE | | FW205014/PO 5919 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| | | | |
| RIG NAME | | WELL NAME | |
| ROWAN (ROWAN RESOLUTE) | | OCS-G 28030 ST00BP00 #004S0B0 | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | WSS OPERATOR ONLY<br>Bill From 6/5/2020 to 6/28/2020 | 24.000 | DY | 700.00 | 16,800.00 |
| 2951409 | 009963 | RNT DY VAC UNIT<br>VAC UNIT<br>Bill From 6/5/2020 to 6/28/2020 | 24.000 | DY | 200.00 | 4,800.00 |
| | | | | | Subtotal | 21,600.00 |
| | | | | | Grand Sub Total | 21,600.00 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | 21,600.00 |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:       121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

4178 TRAILER TOWN RD
JENNINGS LA 70546-8026
Phone:
Fax:
.

**ORIGINAL**

**Invoice Number: 156299**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 409369 | 964856 | 6/29/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| ROWAN RESOLUTE | | FW205014/PO 5919 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| RIG NAME | | WELL NAME | |
| ROWAN (ROWAN RESOLUTE) | | OCS-G 28030 ST00BP00 #004S0B0 | |

*Preliminary Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
RIG SITE (LAFOURCHE PARISH LA)
GOLDEN MEADOW LA 70357

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | WSS OPERATOR ONLY<br>Bill From 6/5/2020 to 6/28/2020 | 24.000 | DY | 700.00 | 16,800.00 |
| 2951409 | 009963 | RNT DY VAC UNIT<br>VAC UNIT<br>Bill From 6/5/2020 to 6/28/2020 | 24.000 | DY | 200.00 | 4,800.00 |
| | | | | | Subtotal | 21,600.00 |
| | | | | | Grand Sub Total | 21,600.00 |
| | | | | | Tax | |
| | | | Currency: | USD | Invoice Total | 21,600.00 |

AFE:      FW205014
Lease:   MC-948 #4
Project: Gunflint (STIM)
Engineer: J. Perroux
Routing #:   580047

ACC CODE   7300 -28
L. Butler 6-29-2020

**REMITTANCE INSTRUCTIONS**

**Bank Deposit / Lockbox Payment**
NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:  4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



ORIGINAL

Invoice Number: 5304324

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 6/30/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VR 313B LOE | | 20720 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | JARED BERGERON | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID 573002 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 6/3/2020 to 6/30/2020 | 28.000 | DY | 8.00 | 224.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 6/3/2020 to 6/30/2020 200 FT LEAD - 4/0-1 DLO | 28.000 | DY | 13.00 | 364.00 |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW GENERATOR-100KW SKID MOUNTED - Bill From 6/3/2020 to 6/30/2020 | 28.000 | DY | 69.00 | 1,932.00 |
| | | | | | Subtotal | 2,520.00 |
| | | | | | Grand Sub Total | 2,520.00 |
| | | | | | Tax | |
| | | Currency: | | USD | Invoice Total | 2,520.00 |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**Crochet, Crystal**

---

| | |
|---|---|
| **From:** | Vasquez, Alizabeth D |
| **Sent:** | Tuesday, June 30, 2020 11:55 AM |
| **To:** | Crochet, Crystal |
| **Subject:** | FW: [EXTERNAL] New PO |

Regards,

Alizabeth Vasquez| *Electronic Billing & AR Supervisor*
**NOV Wellbore Technologies**
WellSite Services
7909 Parkwood Cir Dr | Houston TX 77036
O 713.482.0611
M  985.258.9836
E  Alizabeth.Vasquez@nov.com

nov.com/WellSiteServices
Connect with us on Facebook | LinkedIn | Twitter

The information contained in this transmission is for the personal and confidential use of the individual or entity to which it is addressed. If the reader is not the ntended recipient, you are hereby notified that any review, dissemination, or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**From:** Fieldwood Energy LLC <do_not_reply@fieldwoodenergy.coupahost.com>
**Sent:** Tuesday, June 30, 2020 11:55 AM
**To:** Vasquez, Alizabeth D <Alizabeth.Vasquez@nov.com>
**Subject:** [EXTERNAL] New PO

## Fieldwood Energy LLC Purchase Order #20720

Powered by

Hi Alizabeth,

You have received a new purchase order #20720 from Fieldwood Energy LLC Company.

Submitted By  Jared Bergeron

1

On Behalf Of Jared Bergeron

    Supplier NATIONAL OILWELL VARCO, LP

       Total **2,520.00**

      Items **VR313B, NOV 100KW Rental w/Tnk and Cable**      **2,520.00** USD

View Order

## More Detail

| | | | |
|---|---|---|---|
| **PO ID** 20720 | | **Department** None | |
| **Status** Issued - Scheduled for email | | **Last Opened** None | |
| **Order Date** 06/30/20 | | **Acknowledged At** None | |
| **Revision Date** 06/30/20 | | **Payment Term** Net 60 | |
| **Req #** 22286 | | **Shipping** CPT | |

**Supplier**

NATIONAL OILWELL VARCO, LP 7909 PARKWOOD CIRCLE DR
HOUSTON, TX 77036
United States Alizabeth.Vasquez@nov.com

**Shipping**

12354 Offshore Rd
Abbeville, LA 70510
United States
Attn: Jared Bergeron

## Lines

**VR313B, NOV 100KW Rental w/Tnk and Cable** for 2,520.00
Supplier **NATIONAL OILWELL VARCO, LP** • Part Number **"400905"** • Contract **556324_Master Services Agreement dated effective 11/01/2013** • Account **LOE-_NA_-AREA2-VR0313-_NA_-VR313PFB-VR313PFB-7200-85** • Period **2020 - 06 - June**

Total **2,520.00** USD

Business Spend Management
To get immediate updates via SMS or change notification preferences, go here and adjust your settings

ORIGINAL

**Invoice Number: 5306819**

National Oilwell Varco, LP
Well Site Services Division

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410214 | 964856 | 7/7/2020 | 1 of 2 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GC 40 KATMAI PROJECT | | FW183040-051519-L | |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | CHRIS JOUBAN | | |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| ROUTING ID 580045 AFE FW183040 | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

Bill To:   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

Ship To:   FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | FS19732<br>FILTER FUEL FLG/BF1385-SPS BAL | 24.000 | EA | 27.52 | 660.48 |
| | | FF5421<br>FILTER FUEL FLG/BALDWIN# BF796 | 12.000 | EA | 17.34 | 208.14 |
| | | LF3970<br>LF3970 FILTER | 12.000 | EA | 11.31 | 135.67 |
| | | A475C<br>FILTER AIR AC/PA1902FN BALDWIN | 4.000 | EA | 37.08 | 148.32 |
| | | | | | **Subtotal** | **1,152.61** |
| | 5966 | RNT DY GEN DSL SKD 150 KW<br>Generator - Diesel Skid Mount<br>Bill From 6/10/2020 to 7/7/2020 | 28.000 | DY | 97.00 | 2,716.00 |
| 2975105 | 3945 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 6/10/2020 to 7/7/2020 | 28.000 | DY | 14.00 | 392.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 6/10/2020 to 7/7/2020<br>8-100FT SECTIONS OF 444MCM LEAD | 28.000 | DY | 80.00 | 2,240.00 |
| 3072279 | 010342 | RNT DY GEN DSL SKD 150 KW<br>Generator - Diesel Skid Mount<br>Bill From 6/10/2020 to 7/7/2020 | 28.000 | DY | 97.00 | 2,716.00 |
| | | FREIGHT (3RD PARTY)<br>WSS FREIGHT 3RD PARTY<br>Bill From 6/15/2020 to 6/15/2020<br>DEL: AMERICAN EAGLE W/B #01191012 BILLED<br>DIRECT (FILTERS | 1.000 | EA | 0.00 | |
| | | | | | **Subtotal** | **8,064.00** |

Continued ...



| Invoice Number | Invoice Date | Page |
|---|---|---|
| 5306819 | 7/7/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 9,216.61 |
| | | | | | **Tax** | |
| | | | Currency: | USD | **Invoice Total** | **9,216.61** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

## JOB ORDER TO MASTER SERVICES CONTRACT

This Job Order to Master Services Contract (the "Job Order") is entered into and made effective as of May 17, 2019 (the "Effective Date") by and between Fieldwood Energy LLC ("Company") and National Oilwell Varco WellSite Services - Portable Power ("Contractor"). Company and Contractor may be referred to herein as a "Party" or together as the "Parties". All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement (as defined below).

WHEREAS, Company and Contractor are parties to that certain Master Services Contract dated as of January 1, 2013 (the "Agreement"); and

WHEREAS, Contractor submitted a proposal dated May 15, 2019 ("Contractor's Proposal") for ST 308 Rental Equipment in support of the Katmai Project (the "Work");

NOW, THERFORE, for and in consideration of the mutual covenants and agreements as set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. The Work, if any, which may be requested by Company at its sole discretion, shall be performed pursuant to the terms and conditions of the Agreement, this Job Order, and Contractor's Proposal.

2. In the event of any conflict between the Agreement, this Job Order and Contractor's Proposal, then the documents shall control and govern in the following order: (a) the Master Agreement, (b) this Job Order, (c) Contractor's Proposal.

3. Contractor's rates for the Work shall be as set forth in Contractor's Proposal. The Contractor shall perform the Work set forth herein in accordance with the specifications set forth in this Job Order and Contractor's Proposal, but subject to the terms and conditions for Services as set forth in the Agreement ("Services"). Any additional work, including third party items, requested by Company in addition to the Services described in this Job Order, must be quoted separately by Contractor and subject to Company acceptance.

4. This Job Order does not obligate Company to order Work from Contractor, nor does it obligate Contractor to accept any requests for Work, but it and the applicable terms of the Agreement shall control and govern all Work agreed to be provided by or on behalf of Contractor and shall define the Parties' respective rights and obligations during the term hereof.

5. This Job Order may be executed in counterparts with the same effect as if the signatures were on a single document, and will be effective when each Party has executed one counterpart. An executed and transmitted electronic version will be considered for all purposes an original signed document constituting a legally binding agreement.

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

IN WITNESS WHEREOF, the Parties do hereby execute and agree to this Job Order effective as of the Effective Date.

FIELDWOOD ENERGY LLC

By: _____
Name: Chris Jouban
Title: Purchasing Buyer III

NOV WELLSITE SERVICES –
PORTABLE POWER

By: _____
Name: *Tim Aupied*
Title: *Broussard District Manager*

Job Order: FW183040-051519-L
AFE: FW183040 / Routing ID: 580045

APPENDIX A

- Rental Equipment Quote dated May 15, 2019
- 2019 Fieldwood Rate Sheet



**Portable Power**

1223 Evangeline Thruway
Broussard, LA 70518

PO:
Reference:   ST 308

Date:          5/15/2019

Customer:      FIELDWOOD
Contact:       CHRIS JOUBAN
Office Phone:
Cell:          337-354-3286
Email:         CHRIS.JOUBAN@FWELLC.COM
Fax

NOV Portable Power would like to thank you for the opportunity you have given us to supply generators and associated equipment for your upcoming project.

As per your request, NOV is submitting the following equipment selection and prices for your review and approval.

| ITEM | QTY | DESCRIPTION | DAILY PRICE EACH | DAILY PRICE TOTAL | 28-DAY BILLING CYCLE | TOTAL 28 DAY BILLING CYCLE |
|------|-----|-------------|------------------|-------------------|----------------------|----------------------------|
| 1 | 2 | 150KW GENERATORS AT 480V | $      106.00 | $      212.00 | $      2,968.00 | $      5,936.00 |
| 2 | 1 | 560 GALLON DIESEL TANK | $       15.00 | $       15.00 | $        420.00 | $        420.00 |
| 3 | 1 | 8 - 100FT SECTIONS OF 444MCM LEAD | $       88.00 | $       88.00 | $      2,464.00 | $      2,464.00 |
| 4 | 0 | | | $         - | $           - | $            - |
| 5 | 0 | | $        - | $         - | $           - | $            - |
| 6 | 0 | | $        - | $         - | $           - | $            - |
| 7 | 0 | | $        - | $         - | $           - | $            - |

Equipment Transportation

- Customer is responsible for transportation cost to and from the nearest NOV Portable Power depot where equipment is available. All transportation provided by NOV Portable Power will be billed at actual cost plus 25%. Customer has the option to arrange for shipment to and from the nearest NOV Portable Power location and to have trucking direct billed to the customer.
- Trucker Standby time rate of $105.00 per hour shall apply during delays at the jobsite.

Rental Charges

- ALL RENTAL CHARGES will be charged on above equipment from the day it ships from a NOV Portable Power facility thru the day it is returned back to a NOV Portable Power facility (regardless of the time the equipment was actually used.) The rental period shall not be subject to pro-ration.
- CHARGES FOR RENTAL DAYS WILL INCLUDE SATURDAYS, SUNDAYS, AND HOLIDAYS.
- A three (3) day minimum rental charge will apply for all rental equipment.
- In the event of a weather related or storm event (hurricane, tornado, flood, earthquake, fire or other natural emergency) a seven day (7) minimum rental charge will apply.

Normal Service

- Equipment is normally rented without normal service and oil changes included. Equipment can be rented with normal service and oil changes for an additional charge. The customer has the option to provide normal service and oil changes for equipment they have rented at their cost using their people. If the customer elects to provide normal service and oil changes and fails to perform the service, the customer will be liable for any damage to the rented equipment and will be billed for the service required upon return of the rental equipment to NOV.

## Optional Service/ Spare Parts

- The customer is responsible for installation, operation, monitoring and demobilization of the NOV Portable Power rental equipment. NOV Portable Power can provide the required technician labor to assist customer in the installation, monitoring, and demobilization of the NOV Portable Power rental equipment for an additional charge.

- NOV Portable Power can also provide labor and consumables (filters, oil, etc) to service our rental equipment at the customer's request for an additional charge. Generators and light towers will require servicing as follows: light towers every 250 running hours, 15-300kw generators every 250 running hours, 350-1500kw generators every 500 running hours. HVAC filter replacement depends on the environment it is working in.

- These services can be provided by NOV Portable Power on a time and material basis.

## Labor Rates:
Note: This rate schedule supersedes all previous rate schedules. Labor rates are subject to change without notice.

| 1. OFFSHORE | STANDARD TIME | OVERTIME | DOUBLE TIME |
|---|---|---|---|
| A. Electrician & Mechanic | $90.00 | $135.00 | $180.00 |
| B. Helper | $81.00 | $121.50 | $162.00 |
| 2. ONSHORE | STANDARD TIME | OVERTIME | DOUBLE TIME |
| A. Electrician & Mechanic | $80.00 | $120.00 | $160.00 |
| B. Helper | $69.00 | $103.50 | $138.00 |
| 3. SHOP | STANDARD TIME | OVERTIME | DOUBLE TIME |
| A. Electrician & Mechanic | $80.00 | $120.00 | $160.00 |
| B. Helper | $69.00 | $103.50 | $138.00 |

- Standard Time Rates- standard rates apply during office hours of 8am to 5pm with a lunch hour. A two (2) hour minimum charge will apply for all work performed on standard time.

- Overtime Time Rates- overtime rates, which are one and a half, times the standard rates. Overtime rates will apply between 5pm and 8am on weekdays, all day Saturday and Sunday. A four (4) hour minimum charge will apply for all work performed on overtime hours.

- Double Time Rates – Are double (2x) the standard time rates and will apply on all US government holidays and will include Easter Sunday.

- Offshore Service Labor – A twelve (12) hour minimum charge will apply for all days worked offshore including travel days.

## Mileage Rate Charges:
- Mileage Rates – Mileage will be charged at $ 2.25 per mile. Mileage will include distance from nearest NOV Portable Power location to the customer work site and back to NOV location.

## Travel and Lodging Charges:
- All actual expenses incurred by NOV Portable Power for travel such as airfare, meals, lodging etc. will be charged to the customer at actual cost plus 15 %, and backup documentation provided to the customer.

## Fuel Charges
- Diesel is not included in above rental rates. NOV Portable Power can provide #2 Diesel fuel for the equipment at a cost of $4.00 / gallon if requested by rental customer.
- Units are shipped with fuel in the fuel tanks and the number of gallons recorded on the delivery ticket.
- The customer will be charged for the difference in gallons of fuel found at the time equipment is returned to NOV. If the equipment is shipped full the customer must return it with a full tank or be charged for the difference.
- Diesel fuel quality will be tested to insure it is not laced with water and other particulate contamination. If fuel is returned contaminated by the customer they will be invoiced for the cost of replacement fuel and for disposal of contaminated fuel.

## Notes:
- NOV Portable Power generators are rated prime power not standby
- NOV Portable Power rental rates are for unlimited run time per day
- NOV Portable Power does not charge an environmental fee for clean-up of returned rental equipment

- Rental Protection Plan available upon request
- Quoted prices are firm for 30 days from the date of this quotation
- Quoted prices do not include applicable state and federal taxes
- Customer is responsible for all required operating and regulatory permits
- Customer is required to provide safe working environment
- Customer is required to call before making any repairs
- Customer is to provide insurance on all equipment
- Sales tax is applicable on all of the above rental, labor, travel, mileage and service charges unless we have a tax exemption certificate in our files
- Quoted prices do not include consumables (diesel fuel, filters, oil, etc.)  Unreturned items will be invoiced to customer

### CUSTOMER RESPONSIBILITIES FOR SERVICE OF EQUIPMENT

1.  *Customer is responsible for all normal service for the equipment rented to include but not limited to:*

a. *Oil changes for equipment every:*
  - *250 run hours for light towers*
  - *250 run hours for generators 300KW and smaller*
  - *500 run hours for generators 350KW and larger*

b. *Changing of all oil, fuel and air filters*
  - *Customer must use NOV PP approved oil, fuel and air filters*

c. *Customer must provide, at their expense, all technicians to perform normal service to the rental equipment. Technicians must follow NOV recommended procedures.*

d. *Customer must provide all required oil, fuel and anti-freeze for normal operations.*
  - *High quality 15W-40W multi-grade API approved motor oil must be used.*
  - *Only high quality #2 diesel fuel should be used.*
  - *A high quality 50 / 50 mix ration of antifreeze must be used.*

e. *The replacement schedule for air filters and fuel filters will vary based on the type of equipment rented and the operating conditions where the equipment will be used. Please consult your local NOV Portable Power location for recommended change frequency.*

2.  *If the customer elects to provide normal service and oil/fluid changes, they will assume responsibility for damage incurred due to neglect or failure to perform required preventive maintenance.  Customer will be liable for any and all damage to the rental equipment and will be invoiced for the service required and a set charge, per hour, for negligence upon return of the equipment to NOV.*

a. *There will be a charge of $5 per hour for all equipment exceeding 100 hours past due service (this charge will be for the original 100 hours plus any additional time).*
  - *Due to recent GPS upgrades NOV Portable Power will have the option to monitor all units.*

3. *For any questions related to the proper operation and how to perform the required normal service please contact your local NOV Portable Power location for assistance. Calls will be answered and returned 24 hours a day, 7 days a week.*

4. *NOV Portable Power will inspect all rental equipment immediately upon return from the customer. This inspection will include:*

a. *Test for run operation of returned equipment. All equipment must be returned in operational condition.*

b. *Visual inspection of the unit for any internal or external damage to the unit while in the customer's operational control of the rental equipment. Customer will be invoiced for repairs of all damage to the rental equipment.*

c. *Visual inspection of the rental equipment to insure it has been returned clean and uncontaminated from the customer's work location. If the equipment is excessively dirty or contaminated with oil or fuel the customer will be invoiced for equipment decontamination cost.*

Confidentiality

- The contents, solutions, descriptions, and pricing information described here are considered the confidential property of NOV Portable Power. Customer therefore acknowledges and agrees to keep any ideas, information, and contents of this proposal confidential.

- NOV Portable Power requires that any and all correspondence including, but not limited to: price quotes, solution description, process details, and any other information directly or indirectly pertaining to this quotation are kept in the strictest confidence by the customer.

Proposal Acceptance

- Should you wish to proceed with the rental outlined in this proposal and agree to the attached terms and conditions, please provide your purchase order number and sign and date below indicating your acceptance of this quotation. All NOV Portable Power normal terms and conditions shall apply.

<u>Accepted By:</u>

**Company Name**_____

**Purchase order number**_____

**Trucking Provided by NOV Portable Power Option?  YES** ☐    **NO** ☐   (Please Check One)

**Signature**_____

**Print Name**_____

**Title**_____

**Date Accepted**_____

**Regards,**

**Shawn Mccauley**

Rental Representative
**Portable Power**
**1223 Evangeline Thruway**
**Broussard, LA 70518**
shawn.mccauley@nov.com
Office:  337-365-5050

Fax:  337-365-1902

NATIONAL OILWELL VARCO

*Price Sheet*

# FIELDWOOD ENERGY

## GENERATORS

| | | |
|---|---|---|
| 15KW | $ | 47 |
| 30KW | $ | 56 |
| 50KW | $ | 64 |
| 75KWNG | $ | 137 |
| 80KW | $ | 78 |
| 100KW | $ | 86 |
| 125KW | $ | 95 |
| 150KW | $ | 106 |
| 150KWNG | $ | 196 |
| 200KW | $ | 117 |
| 250KW | $ | 137 |
| 250KWNG | $ | 248 |
| 300KW | $ | 158 |
| 350KW | $ | 180 |
| 500KW | $ | 300 |
| 800KW | $ | 383 |
| 1000KW | $ | 468 |
| 1250KW | $ | 555 |
| 1400KW | $ | 597 |

## DISTRIBUTION RACK CIRCUITS RAINTIGHT

| | | |
|---|---|---|
| | $ | - |
| 30-100AMP | $ | 8 |
| 125-200AMP | $ | 10 |
| 225-300AMP | $ | 11 |
| 350-450AMP | $ | 13 |
| 600AMP | $ | 23 |

## DISTRIBUTION RACK CIRCUITS CLASS 1 DIV II

| | | |
|---|---|---|
| 30-100AMP | $ | 13 |
| 125-200AMP | $ | 19 |
| 225-300AMP | $ | 20 |
| 350-450AMP | $ | 26 |
| 600AMP | $ | 32 |

## PLUGS AND RECEPTACLES – NEMA 4

| | | |
|---|---|---|
| 30-100AMP | $ | 13 |
| 150-200AMP | $ | 19 |

## TRANSFORMERS

| | | |
|---|---|---|
| 12.5KVA | $ | 10 |
| 15KVA | $ | 14 |
| 37.5KVA | $ | 26 |
| 45KVA | $ | 28 |
| 75KVA | $ | 29 |
| 112KVA | $ | 33 |
| 150KVA | $ | 39 |
| 225KVA | $ | 48 |
| 300KVA | $ | 57 |
| 500KVA | $ | 94 |

 **NATIONAL OILWELL VARCO**

*Price Sheet*

# FIELDWOOD ENERGY

| | | |
|---|---|---:|
| 750KVA | $ | 119 |
| 1000KVA | $ | 145 |
| 1500KVA | $ | 176 |

**FUEL TANKS DUAL WALL**
| | | |
|---|---|---:|
| 528 GALLON | $ | 30 |
| 792 GALLON LAND | $ | 42 |
| 792 GALLON OFFSHORE | $ | 54 |
| 1000 GALLON | $ | 77 |
| 2350 GALLON | $ | 110 |

**FUEL TANKS SINGLE WALL**
| | | |
|---|---|---:|
| 560 GALLON | $ | 15 |
| 1000 GALLON | $ | 26 |
| 4200 GALLON | $ | 113 |

**FUEL CONTAINMENT TANKS**
| | | |
|---|---|---:|
| 560 GALLON | $ | 9 |
| 1000 GALLON | $ | 10 |
| 4200 GALLON | $ | 18 |

**FUELING PUMPS**
| | | |
|---|---|---:|
| 120V STANDARD (TOP MOUNT) | $ | 9 |
| 120V EXP (SKID MOUNT) | $ | 30 |
| FUELING NOZZLE | $ | 4 |

**ELECTRICAL LEADS**
| | | |
|---|---|---:|
| 4/0-1C (PER FT) | $ | 0.08 |
| 444MCM-1C (PER FT) | $ | 0.11 |
| 646MCM-1C (PER FT) | $ | 0.13 |
| 6/4C (PER FT) | $ | 0.07 |
| 10/4C (PER FT) | $ | 0.07 |
| 12/4C (PER FT) | $ | 0.07 |
| 4/4C (PER FT) | $ | 0.07 |
| 2/4C (PER FT) | $ | 0.07 |
| 1/0-4C (PER FT) | $ | 0.08 |
| 2/0-4C (PER FT) | $ | 0.12 |
| 4/0-4C (PER FT) | $ | 0.16 |

**LIGHTING RAINTIGHT & CLASS 1 DIV II**
| | | |
|---|---|---:|
| 400W DUAL POLE | $ | 17 |
| 400W SINGLE | $ | 14 |

**LIGHTING CLASS 1 DIV 1**
| | | |
|---|---|---:|
| 400W DUAL POLE | $ | 35 |
| 400W SINGLE | $ | 19 |

**LOW VOLTAGE DROP LIGHTS CLASS 1 DIV 1**
| | | |
|---|---|---:|
| EXP DROP LIGHT | $ | 14 |
| EXP TRANSFORMER BOX | $ | 13 |

 **NATIONAL OILWELL VARCO**

*Price Sheet*

**IE FIELDWOOD ENERGY**

**LIGHT TOWERS**
| | | |
|---|---|---|
| 8KW | $ | 39 |
| 20KW | $ | 72 |
| 30KW | $ | 90 |

**RECEPTACLE RACKS**
| | | |
|---|---|---|
| RAINTIGHT | $ | 14 |
| CLASS 1 DIV II | $ | 28 |
| CLASS 1 DIV II GFCI | $ | 37 |

**LIGHTING PANELS**
| | | |
|---|---|---|
| RAINTIGHT | $ | 14 |
| CLASS 1 DIV II | $ | 28 |

**MISCELLANEOUS RAINTIGHT 120VAC**
| | | |
|---|---|---|
| QUAD BOX | $ | 5 |
| EXTENSION CORD 100' | $ | 5 |

**TRANSFER SWITCHES RAINTIGHT**
| | | |
|---|---|---|
| 400AMP | $ | 31 |
| 600AMP | $ | 42 |
| 800AMP | $ | 56 |
| 1000AMP | $ | 75 |
| 1200AMP | $ | 82 |
| 2000AMP | $ | 134 |

**TRANSFER SWITCHES CLASS 1 DIV II**
| | | |
|---|---|---|
| 400AMP | $ | 50 |
| 800AMP | $ | 141 |
| 1200AMP | $ | 195 |

**MOTOR STARTERS RAINTIGHT**
| | | |
|---|---|---|
| SIZE 1 | $ | 10 |
| SIZE 2 | $ | 11 |
| SIZE 3 | $ | 13 |
| SIZE 4 | $ | 20 |
| SIZE 5 (DUAL STARTER) | $ | 41 |

**MOTOR STARTERS CLASS 1 DIV II**
| | | |
|---|---|---|
| SIZE 1 | $ | 17 |
| SIZE 2 | $ | 23 |
| SIZE 3 | $ | 24 |
| SIZE 4 | $ | 26 |

**ASSOCIATED EQUIPMENT**
| | | |
|---|---|---|
| MCC BUILDING | $ | 367 |
| WATER MANIFOLD | $ | 48 |
| 15HP SEAWATER PUMP | $ | 139 |
| 25HP SEAWATER PUMP | $ | 153 |



NATIONAL OILWELL VARCO

*Price Sheet*

FIELDWOOD ENERGY

| | | |
|---|---|---|
| 2" X 25' DISCHARGE HOSE | $ | 5 |
| 2" X 50' DISCHARGE HOSE | $ | 8 |
| 2" X 100' DISCHARGE HOSE | $ | 16 |
| FIRE HOSE REEL | $ | 37 |
| 1200AMP PARALLELING PANEL | $ | 67 |
| 2500AMP JUNCTION BOX | $ | 14 |
| 5000AMP JUNCTION BOX | $ | 14 |
| 6000AMP JUNCTION BOX | $ | 14 |



**ORIGINAL**

**Invoice Number: 5310879**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 7/15/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VR 371A LOE | | 16236 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | PATRICK BROWN | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #580025 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE #  SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3092350   4354 Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 6/18/2020 to 7/15/2020 1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| 3092351   4359 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 6/18/2020 to 7/15/2020 1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 6/18/2020 to 7/15/2020 8 - 50FT SECTIONS OF 4/0-1 LEAD 1/2 RATES | 28.000 | DY | 15.00 | 420.00 |

|  |  |  |
|---|---|---|
| **Subtotal** | | **2,072.00** |
| **Grand Sub Total** | | 2,072.00 |
| **Tax** | | |
| Currency: **USD** | **Invoice Total** | **2,072.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



ORIGINAL

**Invoice Number: 5310930**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 7/15/2020 | 1 of 1 |

**LEDGER NO. 130**

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GL CODE 7200-85 RTG #57303 | | 23235 | |

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | GREG MONTE | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| MAIN PASS 289-C | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184 | | TANK-560 GALLON DIESEL | | | | |
| FABCON DOCK VENICE LA | | Bill From 6/18/2020 to 7/15/2020 | | | | |
| 2743022 | | | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 38.00 | 1,064.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 6/18/2020 to 7/15/2020 | | | | |
| | | 400FT  LEAD - 646 MCM-1 TYPE P | | | | |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW | 28.000 | DY | 165.00 | 4,620.00 |
| | | GENERATOR - 350KW SKID MOUNTED | | | | |
| | | Bill From 6/18/2020 to 7/15/2020 | | | | |
| | | | | | **Subtotal** | **5,908.00** |
| | | | | | **Grand Sub Total** | 5,908.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **5,908.00** |

| REMITTANCE INSTRUCTIONS | | |
|---|---|---|
| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
| NOV Wellsite Services A Division of NOV LP | Remit Fund Electronically to: | ABA:          121000248 |
| P O Box 202631 | Wells Fargo Bank, N.A. | Account:   4121898753 |
| Dallas, TX  75320-2631 | 420 Montgomery | Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. |
| | San Francisco, CA 94104 | Swift code: WFBIUS6S |
| | . | |

ORIGINAL

**Invoice Number: 5313603**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400903 | 964856 | 7/21/2020 | 1 of 2 |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB DESCRIPTION | CUSTOMER PO/AFE |
|---|---|
| RTG ID# 573036 GL 7200-85 | 24078 |

| PAYMENT TERMS | CONTACT | EMAIL |
|---|---|---|
| Net 30 Days | GREG MONTE | |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| S.P. 62 CONSTRUCTION | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
EPS DOCKVENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| Ship To: 1039181 EPS DOCKVENICE LA VENICE, US | | 15W40 OIL ENGINE 15W40 | 8.000 | GA | 18.22 | 145.73 |
| | | 2020TMOR FILTER FUEL RACOR#2020N-10/PF7 | 2.000 | EA | 13.08 | 26.15 |
| | | FS1003 FILTER, FUEL - BF1293-SPS - F/ | 1.000 | EA | 29.34 | 29.34 |
| | | LF9080 FILTER OIL FLG/BD7154 BALDWIN/ | 1.000 | EA | 36.96 | 36.96 |
| | | | | | **Subtotal** | **238.18** |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 6/22/2020 to 7/17/2020 200 FT LEAD - 444MCM-1 TYPE P | 26.000 | DY | 18.00 | 468.00 |
| 2894200 | 6146 | RNT DY GEN DSL SKD 250 KW GENERATOR-250KW SKID MOUNTED - Bill From 6/22/2020 to 7/17/2020 | 26.000 | DY | 126.00 | 3,276.00 |
| | | FREIGHT (3RD PARTY) WSS FREIGHT 3RD PARTY Bill From 7/17/2020 to 7/17/2020 P/U: AMERICAN EAGLE W/B #01208137 BILLED DIRECT | 1.000 | EA | 0.00 | |
| | | | | | **Subtotal** | **3,744.00** |

Continued ...



| | Invoice Number | Invoice Date | Page |
|---|---|---|---|
| | 5313603 | 7/21/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 3,982.18 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **3,982.18** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP<br>P O Box 202631<br>Dallas, TX 75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104<br>. | ABA:          121000248<br>Account:   4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |



ORIGINAL

**Invoice Number: 5315058**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 7/23/2020 | 1 of 1 |

| JOB DESCRIPTION | CUSTOMER PO/AFE |
|---|---|
| VK 826 | 24895 |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| PAYMENT TERMS | CONTACT | EMAIL |
|---|---|---|
| Net 30 Days | JIM CHURCHES | 713-422-5928 |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| VK 826 LOE | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154437 | 6009 | RNT DY GEN DSL SKD 500 KW GENERATOR - 500KW SKID MOUNTED Bill From 6/16/2020 to 7/13/2020 | 28.000 | DY | 275.00 | 7,700.00 |
| Ship To: 1070453 4529 LA HWY 1 3154437 | | | | | | |
| 3154438 | 5328 | RNT DY TANK - DIESEL TANK - 528 GALLON DUAL WALL DI Bill From 6/16/2020 to 7/13/2020 | 28.000 | DY | 14.00 | 392.00 |

| | | |
|---|---|---|
| **Subtotal** | | **8,092.00** |
| **Grand Sub Total** | | 8,092.00 |
| **Tax** | | |
| Currency: **USD** | **Invoice Total** | **8,092.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



**ORIGINAL**

**Invoice Number: 5317746**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 7/28/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VR 313B LOE | | 25642 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | JARED BERGERON | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID 573002 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 7/1/2020 to 7/28/2020 | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 13.00 | 364.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 7/1/2020 to 7/28/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 28.000 | DY | 69.00 | 1,932.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 7/1/2020 to 7/28/2020 | | | | |

|  |  |
|---|---|
| **Subtotal** | **2,520.00** |
| **Grand Sub Total** | 2,520.00 |
| **Tax** | |
| Currency: **USD** **Invoice Total** | **2,520.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



ORIGINAL

**Invoice Number: 5323635**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410214 | 964856 | 8/5/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GC 40 KATMAI PROJECT | | FW183040-051519-L | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | CHRIS JOUBAN | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID 580045 AFE FW183040 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2975103<br>Ship To: 1070453<br>4529 LA HWY 1<br>2975103 | 5966 | RNT DY GEN DSL SKD 150 KW<br>Generator - Diesel Skid Mount<br>Bill From 7/8/2020 to 8/3/2020 | 27.000 | DY | 97.00 | 2,619.00 |
| 2975105 | 3945 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 7/8/2020 to 8/3/2020 | 27.000 | DY | 14.00 | 378.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 7/8/2020 to 8/3/2020<br>8-100FT SECTIONS OF 444MCM LEAD | 27.000 | DY | 80.00 | 2,160.00 |
| 3072279 | 010342 | RNT DY GEN DSL SKD 150 KW<br>Generator - Diesel Skid Mount<br>Bill From 7/8/2020 to 8/3/2020 | 27.000 | DY | 97.00 | 2,619.00 |
| | | | | | **Subtotal** | **7,776.00** |
| | | | | | **Grand Sub Total** | 7,776.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **7,776.00** |

---

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX  75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104<br>. | ABA:        121000248<br>Account:    4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |



**COPY**

**Invoice Number: 5323635**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 410214 | 964856 | 8/5/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GC 40 KATMAI PROJECT | | FW183040-051519-L | |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | CHRIS JOUBAN | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| ROUTING ID 580045 AFE FW183040 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|
| | | | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2975103 | 5966 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 7/8/2020 to 8/3/2020 | 27.000 | DY | 97.00 | 2,619.00 |
| Ship To: 1070453 4529 LA HWY 1 2975103 | | | | | | |
| 2975105 | 3945 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 7/8/2020 to 8/3/2020 | 27.000 | DY | 14.00 | 378.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 7/8/2020 to 8/3/2020 8-100FT SECTIONS OF 444MCM LEAD | 27.000 | DY | 80.00 | 2,160.00 |
| 3072279 | 010342 | RNT DY GEN DSL SKD 150 KW Generator - Diesel Skid Mount Bill From 7/8/2020 to 8/3/2020 | 27.000 | DY | 97.00 | 2,619.00 |
| | | | | | **Subtotal** | **7,776.00** |
| | | | | | **Grand Sub Total** | 7,776.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **7,776.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any: and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

   a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

   b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

   c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

   d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

   a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

   b)   50% of the Agreement value if canceled thereafter: or

   c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

months from date of purchase.

## 8. TITLE AND RISK OF LOSS
For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date. Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest. Seller accepts no responsibility for any damage, shortage or loss in transit. Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage. Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

## 9. LIMITED WARRANTY
New Equipment/Parts. In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer. Secondhand goods are sold "as is". If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts. Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts. Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship. If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul. If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service. Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental. Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment. In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts; (b) the unauthorized modification, repair or service of the equipment or parts by Buyer; (c) utilization of replacement parts not manufactured by Seller; or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations. Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller. Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 10. CHANGES
Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

## 11. RETURN OF MAKE TO STOCK GOODS
With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date. Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller. Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods. The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price. A charge will be assessed to clean-up, refinish and restock the goods, if applicable. No rubber or electronic products or components may be returned for credit after six (6)

## 12. LIABILITIES, RELEASES AND INDEMNIFICATION
For purpose of this Article12, the following definitions shall apply:
"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a) Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b) Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c) Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d) Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group, including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e) NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f) Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g) THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h) Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 13. INSURANCE
Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured. To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall, (a) be primary to the other party's insurance; (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured: and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 14. GOVERNING LAW
Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.
**THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto. **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.** All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public;  (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5323637**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax: (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 8/5/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VR 371A LOE | | 16236 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | PATRICK BROWN | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #580025 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 7/16/2020 to 8/3/2020 1/2 RATES | 19.000 | DY | 29.50 | 560.50 |
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | | | | | |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 7/16/2020 to 8/3/2020 1/2 RATES | 19.000 | DY | 29.50 | 560.50 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 7/16/2020 to 8/3/2020 8 - 50FT SECTIONS OF 4/0-1 LEAD 1/2 RATES | 19.000 | DY | 15.00 | 285.00 |

| | | |
|---|---|---|
| **Subtotal** | | **1,406.00** |
| **Grand Sub Total** | | 1,406.00 |
| **Tax** | | |
| Currency: | **USD** **Invoice Total** | **1,406.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA: 121000248
Account: 4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5323637**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 8/5/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VR 371A LOE | | 16236 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | PATRICK BROWN | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #580025 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 7/16/2020 to 8/3/2020 1/2 RATES | 19.000 | DY | 29.50 | 560.50 |
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | | | | | |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 7/16/2020 to 8/3/2020 1/2 RATES | 19.000 | DY | 29.50 | 560.50 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 7/16/2020 to 8/3/2020 8 - 50FT SECTIONS OF 4/0-1 LEAD 1/2 RATES | 19.000 | DY | 15.00 | 285.00 |

|  |  |  |
|---|---|---|
| **Subtotal** | | **1,406.00** |
| **Grand Sub Total** | | 1,406.00 |
| **Tax** | | |
| Currency: **USD** | **Invoice Total** | **1,406.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice.  Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold.  Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding.  Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions.  At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation.  The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice.  Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due.  If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer.  Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended.  "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected.  Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)   50% of the Agreement value if canceled thereafter: or

c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

months from date of purchase.

## 8. TITLE AND RISK OF LOSS

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times.  Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

## 9.  LIMITED WARRANTY

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 10. CHANGES

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

## 11. RETURN OF MAKE TO STOCK GOODS

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

## 12. LIABILITIES, RELEASES AND INDEMNIFICATION

For purpose of this Article12, the following definitions shall apply:
 "Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a) Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b) Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c) Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d) Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e) NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f) Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g) THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h) Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 13. INSURANCE

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 14. GOVERNING LAW

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.  **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.

**NOV**

ORIGINAL

**Invoice Number: 5323864**

National Oilwell Varco, LP
Well Site Services Division

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 8/6/2020 | 1 of 2 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VK 826 | | 27578 | |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| PAYMENT TERMS | CONTACT | EMAIL |
|---|---|---|
| Net 30 Days | JIM CHURCHES | 713-422-5928 |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| VK 826 LOE | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154437<br>Ship To: 1070453<br>4529 LA HWY 1<br>3154437 | 6009 | RNT DY GEN DSL SKD 500 KW<br>GENERATOR - 500KW SKID MOUNTED<br>Bill From 7/14/2020 to 7/28/2020 | 15.000 | DY | 275.00 | 4,125.00 |
| 3154438 | 5328 | RNT DY TANK - DIESEL<br>TANK - 528 GALLON DUAL WALL DI<br>Bill From 7/14/2020 to 8/3/2020 | 21.000 | DY | 14.00 | 294.00 |
| 3178075 | 010435 | RNT DY GEN DSL SKD 500 KW<br>GENERATOR - 500KW SKID MOUNTED<br>Bill From 7/29/2020 to 8/3/2020 | 6.000 | DY | 275.00 | 1,650.00 |
| | | FREIGHT (3RD PARTY)<br>WSS FREIGHT 3RD PARTY<br>Bill From 7/28/2020 to 7/28/2020<br>DEL: AMIERCAN EAGLE W/B #01089689<br>(SWAPOUT) BILLED DIREC | 1.000 | EA | 0.00 | |
| | | FREIGHT (3RD PARTY)<br>WSS FREIGHT 3RD PARTY<br>Bill From 7/29/2020 to 7/29/2020<br>P/U: AMERICAN EAGLE W/B #01211655 BILLED<br>DIRECT (SWAPOUT | 1.000 | EA | 0.00 | |
| | | | | | **Subtotal** | **6,069.00** |

Continued ...

| | Invoice Number | Invoice Date | Page |
|---|---|---|---|
| | 5323864 | 8/6/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 6,069.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **6,069.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:  4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

COPY

**Invoice Number: 5323864**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 8/6/2020 | 1 of 2 |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VK 826 | | 27578 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | JIM CHURCHES | 713-422-5928 | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| VK 826 LOE | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154437 | 6009 | RNT DY GEN DSL SKD 500 KW | 15.000 | DY | 275.00 | 4,125.00 |
| Ship To: 1070453 | | GENERATOR - 500KW SKID MOUNTED | | | | |
| 4529 LA HWY 1 | | Bill From 7/14/2020 to 7/28/2020 | | | | |
| 3154437 | | | | | | |
| 3154438 | 5328 | RNT DY TANK - DIESEL | 21.000 | DY | 14.00 | 294.00 |
| | | TANK - 528 GALLON DUAL WALL DI | | | | |
| | | Bill From 7/14/2020 to 8/3/2020 | | | | |
| 3178075 | 010435 | RNT DY GEN DSL SKD 500 KW | 6.000 | DY | 275.00 | 1,650.00 |
| | | GENERATOR - 500KW SKID MOUNTED | | | | |
| | | Bill From 7/29/2020 to 8/3/2020 | | | | |
| | | FREIGHT (3RD PARTY) | 1.000 | EA | 0.00 | |
| | | WSS FREIGHT 3RD PARTY | | | | |
| | | Bill From 7/28/2020 to 7/28/2020 | | | | |
| | | DEL: AMIERCAN EAGLE W/B #01089689 | | | | |
| | | (SWAPOUT) BILLED DIREC | | | | |
| | | FREIGHT (3RD PARTY) | 1.000 | EA | 0.00 | |
| | | WSS FREIGHT 3RD PARTY | | | | |
| | | Bill From 7/29/2020 to 7/29/2020 | | | | |
| | | P/U: AMERICAN EAGLE W/B #01211655 BILLED | | | | |
| | | DIRECT (SWAPOUT | | | | |
| | | | | | **Subtotal** | **6,069.00** |

Continued ...

| | | Invoice Number | Invoice Date | Page |
|---|---|---|---|---|
| | | 5323864 | 8/6/2020 | 2 of 2 |

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 6,069.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **6,069.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP<br>P O Box 202631<br>Dallas, TX 75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104<br>. | ABA:         121000248<br>Account:   4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"):  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice.  Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold.  Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding.  Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions.  At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation.  The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

  a)  To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

  b)  To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

  c)  To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

  d)  To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer.  Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

  a)  20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

  b)  50% of the Agreement value if canceled thereafter: or

  c)  100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

## 8. TITLE AND RISK OF LOSS

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

## 9. LIMITED WARRANTY

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Buyer is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-conformance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts; (b) the unauthorized modification, repair or service of the equipment or parts by Buyer; (c) utilization of replacement parts not manufactured by Seller; or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 10. CHANGES

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

## 11. RETURN OF MAKE TO STOCK GOODS

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6) months from date of purchase.

## 12. LIABILITIES, RELEASES AND INDEMNIFICATION

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)  Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)  Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)  Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)  Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)  NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)  Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)  THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)  Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 13. INSURANCE

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 14. GOVERNING LAW

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto. **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq.*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5324048**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337)  365-5050
Fax:      (337)  365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 8/6/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| VR 313B LOE | | 27688 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | JARED BERGERON | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID 573002 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 6.000 | DY | 8.00 | 48.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 7/29/2020 to 8/3/2020 | | | | |
| | | WSS RENTAL - DAY | 6.000 | DY | 13.00 | 78.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 7/29/2020 to 8/3/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 6.000 | DY | 69.00 | 414.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 7/29/2020 to 8/3/2020 | | | | |
| | | | | | **Subtotal** | **540.00** |
| | | | | | **Grand Sub Total** | 540.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **540.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

Invoice Number: 5324048

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 8/6/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| VR 313B LOE | | 27688 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | JARED BERGERON | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID 573002 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 6.000 | DY | 8.00 | 48.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 7/29/2020 to 8/3/2020 | | | | |
| | | WSS RENTAL - DAY | 6.000 | DY | 13.00 | 78.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 7/29/2020 to 8/3/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 6.000 | DY | 69.00 | 414.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 7/29/2020 to 8/3/2020 | | | | |
| | | | | | **Subtotal** | **540.00** |
| | | | | | **Grand Sub Total** | 540.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **540.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"):  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)  To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)  To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)  To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)  To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected.  Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)  20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)  50% of the Agreement value if canceled thereafter: or

c)  100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

## 8. TITLE AND RISK OF LOSS

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.   Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.   Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

## 9.  LIMITED WARRANTY

New Equipment/Parts.   In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.   Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.   Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.   Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 10. CHANGES

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

## 11. RETURN OF MAKE TO STOCK GOODS

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.   No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

## 12. LIABILITIES, RELEASES AND INDEMNIFICATION

For purpose of this Article12, the following definitions shall apply:
 "Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)   Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)   Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)   Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)   Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)   NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)   Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)   THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)   Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 13. INSURANCE

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 14. GOVERNING LAW

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.  **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts. NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it had not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5325255**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 8/7/2020 | 1 of 1 |

| JOB DESCRIPTION | CUSTOMER PO/AFE |
|---|---|
| GL CODE 7200-85 RTG #57303 | 27809 |

| PAYMENT TERMS | CONTACT | EMAIL |
|---|---|---|
| Net 30 Days | GREG MONTE | |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| MAIN PASS 289-C | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 7/16/2020 to 8/3/2020 | 19.000 | DY | 8.00 | 152.00 |
| Ship To: 1039184<br>FABCON DOCK VENICE LA<br>2743022 | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 7/16/2020 to 8/3/2020<br>400FT  LEAD - 646 MCM-1 TYPE P | 19.000 | DY | 38.00 | 722.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW<br>GENERATOR - 350KW SKID MOUNTED<br>Bill From 7/16/2020 to 8/3/2020 | 19.000 | DY | 165.00 | 3,135.00 |
| | | | | | **Subtotal** | **4,009.00** |
| | | | | | **Grand Sub Total** | 4,009.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **4,009.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX  75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104<br>. | ABA:        121000248<br>Account:   4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |



COPY

**Invoice Number: 5325255**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 8/7/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| GL CODE 7200-85 RTG #57303 | | 27809 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | GREG MONTE | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| MAIN PASS 289-C | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 Ship To: 1039184 FABCON DOCK VENICE LA 2743022 | 1296 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 7/16/2020 to 8/3/2020 | 19.000 | DY | 8.00 | 152.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 7/16/2020 to 8/3/2020 400FT LEAD - 646 MCM-1 TYPE P | 19.000 | DY | 38.00 | 722.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW GENERATOR - 350KW SKID MOUNTED Bill From 7/16/2020 to 8/3/2020 | 19.000 | DY | 165.00 | 3,135.00 |
| | | | | | **Subtotal** | **4,009.00** |
| | | | | | **Grand Sub Total** | 4,009.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **4,009.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:       121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice.  Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a) To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b) To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c) To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d) To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice.  Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected.  Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a) 20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b) 50% of the Agreement value if canceled thereafter: or

c) 100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

## 8. TITLE AND RISK OF LOSS

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment.  Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times.  Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

## 9. LIMITED WARRANTY

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement.  Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Buyer is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 10. CHANGES

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

## 11. RETURN OF MAKE TO STOCK GOODS

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

## 12. LIABILITIES, RELEASES AND INDEMNIFICATION

For purpose of this Article12, the following definitions shall apply:
"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a) Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b) Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c) Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d) Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e) NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f) Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g) THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OF ANY LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h) Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 13. INSURANCE

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 14. GOVERNING LAW

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.

16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seg*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5328220**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 417340 | 964856 | 8/13/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| EI 307A | | 29137 | |

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | SCOTTY GODCHAUX | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| FW207336 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|
| | | | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE #   SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3173381   2826<br>Ship To: 1113508<br>25817 LA HWY 333<br>INTRACOASTAL CITY | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 7/14/2020 to 8/3/2020<br>PRICE INCLUDES TANK IN CONTAINMENT<br>WITH PUMP AND HOSE AN | 21.000 | DY | 50.00 | 1,050.00 |
| 3173382   2912 | RNT DY TANK - DIESEL<br>TANK 1000 GALLON CONTAINMENT<br>Bill From 7/14/2020 to 8/3/2020 | 21.000 | DY | 0.00 | |
| | FREIGHT (3RD PARTY)<br>WSS FREIGHT 3RD PARTY<br>Bill From 7/14/2020 to 7/14/2020<br>DEL: AMERICAN EAGLE W/B #01209580 BILLED<br>DIRECT | 1.000 | EA | 0.00 | |
| | | | | **Subtotal** | **1,050.00** |
| | | | | **Grand Sub Total** | 1,050.00 |
| | | | | **Tax** | |
| | | Currency: | **USD** | **Invoice Total** | **1,050.00** |

| REMITTANCE INSTRUCTIONS | | |
|---|---|---|
| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
| NOV Wellsite Services A Division of<br>NOV LP<br>P O Box 202631<br>Dallas, TX  75320-2631 | Remit Fund Electronically to:<br>Wells Fargo Bank, N.A.<br>420 Montgomery<br>San Francisco, CA 94104<br>. | ABA:         121000248<br>Account:   4121898753<br>Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.<br>Swift code: WFBIUS6S |



COPY

**Invoice Number: 5328220**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 417340 | 964856 | 8/13/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| EI 307A | | 29137 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | SCOTTY GODCHAUX | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| FW207336 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3173381 | 2826 | RNT DY TANK - DIESEL | 21.000 | DY | 50.00 | 1,050.00 |
| Ship To: 1113508 | | TANK-560 GALLON DIESEL | | | | |
| 25817 LA HWY 333 | | Bill From 7/14/2020 to 8/3/2020 | | | | |
| INTRACOASTAL CITY | | PRICE INCLUDES TANK IN CONTAINMENT | | | | |
| | | WITH PUMP AND HOSE AN | | | | |
| 3173382 | 2912 | RNT DY TANK - DIESEL | 21.000 | DY | 0.00 | |
| | | TANK 1000 GALLON CONTAINMENT | | | | |
| | | Bill From 7/14/2020 to 8/3/2020 | | | | |
| | | FREIGHT (3RD PARTY) | 1.000 | EA | 0.00 | |
| | | WSS FREIGHT 3RD PARTY | | | | |
| | | Bill From 7/14/2020 to 7/14/2020 | | | | |
| | | DEL: AMERICAN EAGLE W/B #01209580 BILLED | | | | |
| | | DIRECT | | | | |
| | | | | | **Subtotal** | **1,050.00** |
| | | | | | **Grand Sub Total** | 1,050.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **1,050.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP | Remit Fund Electronically to: | ABA:        121000248 |
| P O Box 202631 | Wells Fargo Bank, N.A. | Account:   4121898753 |
| Dallas, TX  75320-2631 | 420 Montgomery | Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. |
| | San Francisco, CA 94104 | Swift code: WFBIUS6S |
| | . | |

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for the provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any: and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

 a) To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

 b) To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

 c) To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

 d) To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

 a) 20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

 b) 50% of the Agreement value if canceled thereafter: or

 c) 100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9.  LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

   a)   Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

   b)   Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

   c)   Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

   d)   Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

   e)   NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

   f)   Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

   g)   THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

   h)   Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules. Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

## 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer. Seller warrants that the use or sale of Equipment or Parts hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit. Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

## 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required. Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any. Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto. **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.** All Orders shall be conditional upon granting of export licenses or import permits which may be required. Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

## 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information, disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other party in strict confidence. However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information: (a) which is, at the time of disclosure, known to the trade or public; (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date: (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information; (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information: or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order. In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

## 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer. In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seg*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1). Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

## 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented. Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures. In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts. Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts. The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts. NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted). Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment. In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer. Such charges may include service, inspection, and spare parts.

## 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach. Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations. Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement. This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



ORIGINAL

**Invoice Number: 5338603**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 8/31/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax: (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 371A LOE | | 16236 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | PATRICK BROWN | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #580025 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE #   SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3092350   4354<br>Ship To: 1113508<br>25817 LA HWY 333<br>INTRACOASTAL CITY | RNT DY GEN DSL SKD 50 KW<br>GENERATOR - 50 KW<br>Bill From 8/4/2020 to 8/31/2020<br>1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| 3092351   4359 | RNT DY GEN DSL SKD 50 KW<br>GENERATOR - 50 KW<br>Bill From 8/4/2020 to 8/31/2020<br>1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 8/4/2020 to 8/31/2020<br>8 - 50FT SECTIONS OF 4/0-1 LEAD 1/2 RATES | 28.000 | DY | 15.00 | 420.00 |
| | | | | **Subtotal** | **2,072.00** |
| | | | | **Grand Sub Total** | 2,072.00 |
| | | | | **Tax** | |
| | | Currency: | **USD** | **Invoice Total** | **2,072.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number:** 5338603

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 8/31/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 371A LOE | | 16236 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | PATRICK BROWN | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #580025 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 8/4/2020 to 8/31/2020 1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | | | | | |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 8/4/2020 to 8/31/2020 1/2 RATES | 28.000 | DY | 29.50 | 826.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 8/4/2020 to 8/31/2020 8 - 50FT SECTIONS OF 4/0-1 LEAD 1/2 RATES | 28.000 | DY | 15.00 | 420.00 |

| | | |
|---|---|---|
| **Subtotal** | | **2,072.00** |
| **Grand Sub Total** | | 2,072.00 |
| **Tax** | | |
| Currency: **USD** **Invoice Total** | | **2,072.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"):  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.   In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding.  Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice.  Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer.  Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended.  "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)   50% of the Agreement value if canceled thereafter: or

c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**
For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9.  LIMITED WARRANTY**
New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**
Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**
With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**
For purpose of this Article12, the following definitions shall apply:
"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)   Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)   Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)   Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)   Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)   NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)   Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)   THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)   Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**
Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**
Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public; (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it had not relied on any representations other than those contained in this Agreement.   This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5339902**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 9/2/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| GL CODE 7200-85 RTG #57303 | | 31792 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | GREG MONTE | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| MAIN PASS 289-C | | | |
| **RIG NAME** | | **WELL NAME** | |
| | | | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE #  SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 2743022  1296 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184 | TANK-560 GALLON DIESEL | | | | |
| FABCON DOCK VENICE LA | Bill From 8/4/2020 to 8/31/2020 | | | | |
| 2743022 | | | | | |
| | WSS RENTAL - DAY | 28.000 | DY | 38.00 | 1,064.00 |
| | WSS RENTAL - DAY | | | | |
| | Bill From 8/4/2020 to 8/31/2020 | | | | |
| | 400FT  LEAD - 646 MCM-1 TYPE P | | | | |
| 3105602  4070 | RNT DY GEN DSL SKD 350 KW | 28.000 | DY | 165.00 | 4,620.00 |
| | GENERATOR - 350KW SKID MOUNTED | | | | |
| | Bill From 8/4/2020 to 8/31/2020 | | | | |
| | | | | **Subtotal** | **5,908.00** |
| | | | | **Grand Sub Total** | 5,908.00 |
| | | | | **Tax** | |
| | | Currency: | **USD** | **Invoice Total** | **5,908.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5339902**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 9/2/2020 | 1 of 1 |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| GL CODE 7200-85 RTG #57303 | | 31792 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | GREG MONTE | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| MAIN PASS 289-C | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 8/4/2020 to 8/31/2020 | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184<br>FABCON DOCK VENICE LA<br>2743022 | | | | | | |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 8/4/2020 to 8/31/2020<br>400FT  LEAD - 646 MCM-1 TYPE P | 28.000 | DY | 38.00 | 1,064.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW<br>GENERATOR - 350KW SKID MOUNTED<br>Bill From 8/4/2020 to 8/31/2020 | 28.000 | DY | 165.00 | 4,620.00 |

|  |  |  |
|---|---|---|
| | **Subtotal** | **5,908.00** |
| | **Grand Sub Total** | 5,908.00 |
| | **Tax** | |
| Currency:  **USD** | **Invoice Total** | **5,908.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for the provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"):  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a) To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b) To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c) To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d) To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer.  Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a) 20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b) 50% of the Agreement value if canceled thereafter: or

c) 100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

## 8. TITLE AND RISK OF LOSS

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times.  Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

## 9.  LIMITED WARRANTY

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts; (b) the unauthorized modification, repair or service of the equipment or parts by Buyer; (c) utilization of replacement parts not manufactured by Seller; or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 10. CHANGES

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

## 11. RETURN OF MAKE TO STOCK GOODS

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6) months from date of purchase.

## 12. LIABILITIES, RELEASES AND INDEMNIFICATION

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)  Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)  Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)  Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)  Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)  NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)  Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)  THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)  Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 13. INSURANCE

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall, (a) be primary to the other party's insurance;  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 14. GOVERNING LAW

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



ORIGINAL

**Invoice Number: 5339903**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 9/2/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 313B LOE | | 31866 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | JARED BERGERON | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID 573002 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 Ship To: 1029749 RIG SITE (CAMERON PARISH | 2732 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 8/4/2020 to 8/31/2020 | 28.000 | DY | 8.00 | 224.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 8/4/2020 to 8/31/2020 200 FT LEAD - 4/0-1 DLO | 28.000 | DY | 13.00 | 364.00 |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW GENERATOR-100KW SKID MOUNTED - Bill From 8/4/2020 to 8/31/2020 | 28.000 | DY | 69.00 | 1,932.00 |
| | | | | | **Subtotal** | **2,520.00** |
| | | | | | **Grand Sub Total** | 2,520.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **2,520.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 . | ABA:        121000248 Account:  4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |



COPY

**Invoice Number: 5339903**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 9/2/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 313B LOE | | 31866 | |

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | JARED BERGERON | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| ROUTING ID 573002 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 8/4/2020 to 8/31/2020 | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 13.00 | 364.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 8/4/2020 to 8/31/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 28.000 | DY | 69.00 | 1,932.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 8/4/2020 to 8/31/2020 | | | | |

|  |  |
|---|---|
| **Subtotal** | **2,520.00** |
| **Grand Sub Total** | 2,520.00 |
| **Tax** | |
| Currency:  **USD**  **Invoice Total** | **2,520.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP | Remit Fund Electronically to: | ABA:         121000248 |
| P O Box 202631 | Wells Fargo Bank, N.A. | Account:   4121898753 |
| Dallas, TX  75320-2631 | 420 Montgomery | Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. |
| | San Francisco, CA 94104 | Swift code: WFBIUS6S |
| | . | |

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions");  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding.  Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a) To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b) To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c) To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d) To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer.  Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a) 20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b) 50% of the Agreement value if canceled thereafter: or

c) 100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date. Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest. Seller accepts no responsibility for any damage, shortage or loss in transit. Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage. Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9. LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer. Secondhand goods are sold "as is". If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship. If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul. If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment. In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations. Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller. Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date. Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller. Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods. The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price. A charge will be assessed to clean-up, refinish and restock the goods, if applicable. No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)  Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)  Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)  Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)  Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)  NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)  Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)  THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)  Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured. To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.  **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102  *et seq.,* Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it had not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5343194**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 9/10/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VK 826 | | 33224 | |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | JIM CHURCHES | 713-422-5928 | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| VK 826 LOE | | | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154438 | 5328 | RNT DY TANK - DIESEL TANK - 528 GALLON DUAL WALL DI Bill From 8/4/2020 to 8/31/2020 | 28.000 | DY | 14.00 | 392.00 |
| Ship To: 1070453 4529 LA HWY 1 3154438 | | | | | | |
| 3178075 | 010435 | RNT DY GEN DSL SKD 500 KW GENERATOR - 500KW SKID MOUNTED Bill From 8/4/2020 to 8/31/2020 | 28.000 | DY | 275.00 | 7,700.00 |
| | | | | | **Subtotal** | **8,092.00** |
| | | | | | **Grand Sub Total** | 8,092.00 |
| | | | | | **Tax** | |
| | | | | Currency: | **USD Invoice Total** | **8,092.00** |

## REMITTANCE INSTRUCTIONS

| **Bank Deposit / Lockbox Payment** | | **Wire Instructions (Wires Only)** |
|---|---|---|
| NOV Wellsite Services A Division of NOV LP P O Box 202631 Dallas, TX  75320-2631 | Remit Fund Electronically to: Wells Fargo Bank, N.A. 420 Montgomery San Francisco, CA 94104 . | ABA:        121000248 Account:   4121898753 Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P. Swift code: WFBIUS6S |



COPY

**Invoice Number: 5343194**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 9/10/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VK 826 | | 33224 | |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | JIM CHURCHES | 713-422-5928 | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| VK 826 LOE | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|
| | | | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154438 | 5328 | RNT DY TANK - DIESEL | 28.000 | DY | 14.00 | 392.00 |
| Ship To: 1070453 | | TANK - 528 GALLON DUAL WALL DI | | | | |
| 4529 LA HWY 1 | | Bill From 8/4/2020 to 8/31/2020 | | | | |
| 3154438 | | | | | | |
| 3178075 | 010435 | RNT DY GEN DSL SKD 500 KW | 28.000 | DY | 275.00 | 7,700.00 |
| | | GENERATOR - 500KW SKID MOUNTED | | | | |
| | | Bill From 8/4/2020 to 8/31/2020 | | | | |
| | | | | | **Subtotal** | **8,092.00** |
| | | | | | Grand Sub Total | 8,092.00 |
| | | | | | Tax | |
| | | | Currency: | **USD** | **Invoice Total** | **8,092.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:  4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for the provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"); (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any: and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgment and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a) To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b) To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c) To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d) To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a) 20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b) 50% of the Agreement value if canceled thereafter: or

c) 100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

## 8. TITLE AND RISK OF LOSS

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times.  Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

## 9.  LIMITED WARRANTY

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9  shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND,  EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 10. CHANGES

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

## 11. RETURN OF MAKE TO STOCK GOODS

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

## 12. LIABILITIES, RELEASES AND INDEMNIFICATION

For purpose of this Article12, the following definitions shall apply:
 "Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

   a)   Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

   b)   Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

   c)   Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

   d)   Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

   e)   NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

   f)   Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

   g)   THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

   h)   Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 13. INSURANCE

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 14. GOVERNING LAW

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules. Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer. Seller warrants that the use or sale of Equipment or Parts hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit. Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required. Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any. Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto. **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.** All Orders shall be conditional upon granting of export licenses or import permits which may be required. Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information, disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other party in strict confidence. However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information: (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date: (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information: (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information: or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order. In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer. In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1). Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented. Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures. In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts. Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts. The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts. NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted). Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment. In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer. Such charges may include service, inspection, and spare parts.

### 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach. Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations. Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement. This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.

 **ORIGINAL**

**Invoice Number: 5353045**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 9/28/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| GL CODE 7200-85 RTG #57303 | | 35885 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | GREG MONTE | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| MAIN PASS 289-C | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184 FABCON DOCK VENICE LA 2743022 | | | | | | |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 9/1/2020 to 9/28/2020 400FT LEAD - 646 MCM-1 TYPE P | 28.000 | DY | 38.00 | 1,064.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW GENERATOR - 350KW SKID MOUNTED Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 165.00 | 4,620.00 |
| | | | | | **Subtotal** | **5,908.00** |
| | | | | | **Grand Sub Total** | 5,908.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **5,908.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5353045**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:     (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 9/28/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| GL CODE 7200-85 RTG #57303 | | 35885 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | GREG MONTE | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| MAIN PASS 289-C | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184<br>FABCON DOCK VENICE LA<br>2743022 | | | | | | |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 9/1/2020 to 9/28/2020<br>400FT LEAD - 646 MCM-1 TYPE P | 28.000 | DY | 38.00 | 1,064.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW<br>GENERATOR - 350KW SKID MOUNTED<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 165.00 | 4,620.00 |

|  |  |  |
|---|---|---|
| | **Subtotal** | **5,908.00** |
| | **Grand Sub Total** | 5,908.00 |
| | **Tax** | |
| Currency: **USD** | **Invoice Total** | **5,908.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any: and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

    a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

    b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

    c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

    d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

    a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

    b)   50% of the Agreement value if canceled thereafter: or

    c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment.  Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times.  Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9.  LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-conformance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)   Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)   Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)   Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)   Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)   NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)   Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)   THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)   Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall, (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it had not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5353739**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 9/29/2020 | 1 of 1 |

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 313B LOE | | 35925 | |

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | JARED BERGERON | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| ROUTING ID 573002 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|
| | | | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061<br>Ship To: 1029749<br>RIG SITE (CAMERON PARISH | 2732 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 8.00 | 224.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 9/1/2020 to 9/28/2020<br>200 FT LEAD - 4/0-1 DLO | 28.000 | DY | 13.00 | 364.00 |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW<br>GENERATOR-100KW SKID MOUNTED -<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 69.00 | 1,932.00 |
| | | | | | **Subtotal** | **2,520.00** |
| | | | | | **Grand Sub Total** | 2,520.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **2,520.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5353739**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 9/29/2020 | 1 of 1 |
| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
| VR 313B LOE | | 35925 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | JARED BERGERON | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID 573002 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 9/1/2020 to 9/28/2020 | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 13.00 | 364.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 9/1/2020 to 9/28/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 28.000 | DY | 69.00 | 1,932.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 9/1/2020 to 9/28/2020 | | | | |

|  |  |  |  |  | **Subtotal** | **2,520.00** |
|---|---|---|---|---|---|---|
| | | | | | **Grand Sub Total** | 2,520.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **2,520.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"):  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice.  Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold.  Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding.  Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions.  At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation.  The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)  To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)  To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)  To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)  To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice.  Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer.  Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected.  Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)  20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)  50% of the Agreement value if canceled thereafter: or

c)  100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date. Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest. Seller accepts no responsibility for any damage, shortage or loss in transit. Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage. Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9. LIMITED WARRANTY**

New Equipment/Parts. In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer. Secondhand goods are sold "as is". If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts. Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts. Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship. If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul. If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service. Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental. Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment. In the event of failure or other non-conformance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations. Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller. Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date. Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller. Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods. The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price. A charge will be assessed to clean-up, refinish and restock the goods, if applicable. No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a) Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b) Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c) Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d) Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group, including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e) NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f) Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g) THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h) Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured. To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall, (a) be primary to the other party's insurance: (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured: and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.  **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT**.

### 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



ORIGINAL

**Invoice Number: 5354076**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 9/29/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone:  (337)  365-5050
Fax:      (337)  365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 371A LOE | | 16236 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | PATRICK BROWN | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #580025 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**   FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**   BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE #   SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3092350    4354<br>Ship To: 1113508<br>25817 LA HWY 333<br>INTRACOASTAL CITY | RNT DY GEN DSL SKD 50 KW<br>GENERATOR - 50 KW<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| 3092351    4359 | RNT DY GEN DSL SKD 50 KW<br>GENERATOR - 50 KW<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 9/1/2020 to 9/28/2020<br>8 - 50FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 30.00 | 840.00 |
| | | | | **Subtotal** | **4,144.00** |
| | | | | **Grand Sub Total** | 4,144.00 |
| | | | | **Tax** | |
| | Currency: | | **USD** | **Invoice Total** | **4,144.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5354076**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 9/29/2020 | 1 of 1 |

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 371A LOE | | 16236 | |
| PAYMENT TERMS | CONTACT | EMAIL | |
| Net 30 Days | PATRICK BROWN | | |
| CUSTOMER REFERENCES | | REFERENCE | |
| ROUTING ID #580025 | | | |
| RIG NAME | | WELL NAME | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE #    SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3092350   4354<br>Ship To: 1113508<br>25817 LA HWY 333<br>INTRACOASTAL CITY | RNT DY GEN DSL SKD 50 KW<br>GENERATOR - 50 KW<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| 3092351   4359 | RNT DY GEN DSL SKD 50 KW<br>GENERATOR - 50 KW<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 9/1/2020 to 9/28/2020<br>8 - 50FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 30.00 | 840.00 |
| | | | | **Subtotal** | **4,144.00** |
| | | | | **Grand Sub Total** | 4,144.00 |
| | | | | **Tax** | |
| | | Currency: | **USD** | **Invoice Total** | **4,144.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for the provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any: and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)   50% of the Agreement value if canceled thereafter: or

c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9.  LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-conformance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:
 "Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)   Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)   Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)   Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)   Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)   NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)   Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)   THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)   Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance;  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

## 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.  **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT**.

## 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

## 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

## 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seg*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

## 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts. NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

## 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it hast not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5361364**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 10/12/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| VK 826 | | 38092 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | JIM CHURCHES | 713-422-5928 | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| VK 826 LOE | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3154438 | 5328 | RNT DY TANK - DIESEL TANK - 528 GALLON DUAL WALL DI Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 14.00 | 392.00 |
| Ship To: 1070453 4529 LA HWY 1 3154438 | | | | | | |
| 3178075 | 010435 | RNT DY GEN DSL SKD 500 KW GENERATOR - 500KW SKID MOUNTED Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 275.00 | 7,700.00 |
| | | | | | **Subtotal** | **8,092.00** |
| | | | | | **Grand Sub Total** | 8,092.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **8,092.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**
NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**
ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5361364**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 416471 | 964856 | 10/12/2020 | 1 of 1 |

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:    (985) 693-4829
.

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VK 826 | | 38092 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | JIM CHURCHES | 713-422-5928 | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| VK 826 LOE | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY
4529 LA HWY 1
GRAND ISLE LA 70358

| USAGE #   SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 3154438   5328<br>Ship To: 1070453<br>4529 LA HWY 1<br>3154438 | RNT DY TANK - DIESEL<br>TANK - 528 GALLON DUAL WALL DI<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 14.00 | 392.00 |
| 3178075   010435 | RNT DY GEN DSL SKD 500 KW<br>GENERATOR - 500KW SKID MOUNTED<br>Bill From 9/1/2020 to 9/28/2020 | 28.000 | DY | 275.00 | 7,700.00 |
| | | | | **Subtotal** | **8,092.00** |
| | | | | **Grand Sub Total** | 8,092.00 |
| | | | | **Tax** | |
| | | Currency: | **USD** | **Invoice Total** | **8,092.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any: and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgement, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

   a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

   b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

   c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

   d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

   a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

   b)   50% of the Agreement value if canceled thereafter: or

   c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date. Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest. Seller accepts no responsibility for any damage, shortage or loss in transit. Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage. Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9. LIMITED WARRANTY**

New Equipment/Parts. In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer. Secondhand goods are sold "as is". If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts. Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts. Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship. If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul. If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service. Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental. Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment. In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations. Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller. Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date. Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller. Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods. The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price. A charge will be assessed to clean-up, refinish and restock the goods, if applicable. No rubber or electronic products or components may be returned for credit after six (6) months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a) Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b) Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c) Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d) Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group, including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e) NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f) Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g) THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h) Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured. To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall. (a) be primary to the other party's insurance: (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured: and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

## 15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.  **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT**.

## 16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

## 17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public:  (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

## 18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

## 19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

## 20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it had not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5370826**

National Oilwell Varco, LP
Well Site Services Division

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 10/26/2020 | 1 of 1 |

**LEDGER NO. 130**

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 371A LOE | | 16236 | |

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | PATRICK BROWN | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| ROUTING ID #580025 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | | | | | |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 9/29/2020 to 10/26/2020 8 - 50FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 30.00 | 840.00 |

|  |  |  |
|---|---|---|
| **Subtotal** | **4,144.00** |
| **Grand Sub Total** | 4,144.00 |
| **Tax** | |
| Currency: **USD** **Invoice Total** | **4,144.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**
NOV Wellsite Services A Division of NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**
ABA:        121000248
Account:   4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5370826**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:     (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 414189 | 964856 | 10/26/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| VR 371A LOE | | 16236 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | PATRICK BROWN | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID #580025 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  BROUSSARD BROTHERS DOCK
25817 LA HWY 333
INTRACOASTAL CITY
ABBEVILLE LA 70510

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 3092350 | 4354 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| Ship To: 1113508 25817 LA HWY 333 INTRACOASTAL CITY | | | | | | |
| 3092351 | 4359 | RNT DY GEN DSL SKD 50 KW GENERATOR - 50 KW Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 59.00 | 1,652.00 |
| | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 9/29/2020 to 10/26/2020 8 - 50FT SECTIONS OF 4/0-1 LEAD | 28.000 | DY | 30.00 | 840.00 |
| | | | | | **Subtotal** | **4,144.00** |
| | | | | | **Grand Sub Total** | 4,144.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **4,144.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:           121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"):  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice.  Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold.  Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding.  Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions.  At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation.  The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)  To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)  To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)  To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)  To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice.  Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer.  Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected.  Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)  20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)  50% of the Agreement value if canceled thereafter: or

c)  100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9.  LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-conformance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND  SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:
 "Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

 "Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)  Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)  Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)  Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)  Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)  NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)  Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)  THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)  Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall:  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications: or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.**

### 16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto. **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102  et seq, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



ORIGINAL

**Invoice Number: 5371445**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:     (985) 693-4829
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 10/27/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| GL CODE 7200-85 RTG #57303 | | 40867 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | GREG MONTE | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| MAIN PASS 289-C | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184 | | TANK-560 GALLON DIESEL | | | | |
| FABCON DOCK VENICE LA | | Bill From 9/29/2020 to 10/26/2020 | | | | |
| 2743022 | | | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 38.00 | 1,064.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 9/29/2020 to 10/26/2020 | | | | |
| | | 400FT LEAD - 646 MCM-1 TYPE P | | | | |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW | 28.000 | DY | 165.00 | 4,620.00 |
| | | GENERATOR - 350KW SKID MOUNTED | | | | |
| | | Bill From 9/29/2020 to 10/26/2020 | | | | |
| | | | | | **Subtotal** | **5,908.00** |
| | | | | | **Grand Sub Total** | 5,908.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **5,908.00** |

---

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:          121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5371445**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400902 | 964856 | 10/27/2020 | 1 of 1 |

**LEDGER NO. 130**

| JOB DESCRIPTION | CUSTOMER PO/AFE |
|---|---|
| GL CODE 7200-85 RTG #57303 | 40867 |

11905 HWY 308
LAROSE LA 70373-6701
Phone: (985) 693-3351
Fax:     (985) 693-4829
.

| PAYMENT TERMS | CONTACT | EMAIL |
|---|---|---|
| Net 30 Days | GREG MONTE | |

| CUSTOMER REFERENCES | REFERENCE |
|---|---|
| MAIN PASS 289-C | |

| RIG NAME | WELL NAME |
|---|---|
| | |

# *Invoice*

**Bill To:** FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:** FIELDWOOD ENERGY LLC
FABCON DOCK VENICE LA
VENICE LA 70091

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743022 | 1296 | RNT DY TANK - DIESEL TANK-560 GALLON DIESEL Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1039184 FABCON DOCK VENICE LA 2743022 | | WSS RENTAL - DAY WSS RENTAL - DAY Bill From 9/29/2020 to 10/26/2020 400FT LEAD - 646 MCM-1 TYPE P | 28.000 | DY | 38.00 | 1,064.00 |
| 3105602 | 4070 | RNT DY GEN DSL SKD 350 KW GENERATOR - 350KW SKID MOUNTED Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 165.00 | 4,620.00 |
| | | | | | **Subtotal** | **5,908.00** |
| | | | | | **Grand Sub Total** | 5,908.00 |
| | | | | | **Tax** | |
| | | Currency: | | **USD** | **Invoice Total** | **5,908.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:         121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"):  (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any:  and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement").  Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected.  Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment.  In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller.  Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal.  All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations.  Charges will be added for factory preparation and packaging for shipment.  Minimum freight and invoice charges in effect at the time of the Order shall apply.  If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes.  In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith.  Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties.  If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller.  It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes.  If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold.  Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes.  Buyer agrees that it shall not unreasonably withhold such acceptance.  Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller.  Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights.  If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request.  "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue.  To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions.  At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation.  The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request.  If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer.  Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation.  Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a)   To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b)   To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c)   To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d)   To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice.  Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice.  Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law.  When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly.  Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment.  Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts.  Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability, and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided.  Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension.  In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of:  (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions.  Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery.  Partial shipments may be made as agreed to by Buyer and Seller.  Stated delivery dates are approximate only and cannot be guaranteed.  Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay.  In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage.  This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods.  Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer.  All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges.  All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation.  No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier.  As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a)   20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b)   50% of the Agreement value if canceled thereafter: or

c)   100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment.  Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times.  Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9. LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-conformance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:

"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

   a)    Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

   b)    Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

   c)    Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

   d)    Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

   e)    NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

   f)    Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

   g)    THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

   h)    Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

## 15. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. **THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT**.

## 16. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

## 17. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public; (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information:  (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

## 18. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*, Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

## 19. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

## 20. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



**ORIGINAL**

**Invoice Number: 5374945**

**National Oilwell Varco, LP**
**Well Site Services Division**

**LEDGER NO. 130**

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:    (337) 365-1902
.

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 10/30/2020 | 1 of 1 |
| **JOB DESCRIPTION** | | **CUSTOMER PO/AFE** | |
| VR 313B LOE | | 41402 | |
| **PAYMENT TERMS** | **CONTACT** | **EMAIL** | |
| Net 30 Days | JARED BERGERON | | |
| **CUSTOMER REFERENCES** | | **REFERENCE** | |
| ROUTING ID 573002 | | | |
| **RIG NAME** | | **WELL NAME** | |

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061<br>Ship To: 1029749<br>RIG SITE (CAMERON PARISH | 2732 | RNT DY TANK - DIESEL<br>TANK-560 GALLON DIESEL<br>Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 8.00 | 224.00 |
| | | WSS RENTAL - DAY<br>WSS RENTAL - DAY<br>Bill From 9/29/2020 to 10/26/2020<br>200 FT LEAD - 4/0-1 DLO | 28.000 | DY | 13.00 | 364.00 |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW<br>GENERATOR-100KW SKID MOUNTED -<br>Bill From 9/29/2020 to 10/26/2020 | 28.000 | DY | 69.00 | 1,932.00 |
| | | | | | **Subtotal** | **2,520.00** |
| | | | | | **Grand Sub Total** | 2,520.00 |
| | | | | | **Tax** | |
| | | | Currency: | **USD** | **Invoice Total** | **2,520.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX 75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S



COPY

**Invoice Number: 5374945**

**National Oilwell Varco, LP**
**Well Site Services Division**

| JOB NUMBER | CUSTOMER NUMBER | INVOICE DATE | PAGE |
|---|---|---|---|
| 400905 | 964856 | 10/30/2020 | 1 of 1 |

**LEDGER NO. 130**

| JOB DESCRIPTION | | CUSTOMER PO/AFE | |
|---|---|---|---|
| VR 313B LOE | | 41402 | |

1223 EVANGELINE THRUWAY
BROUSSARD LA 70518-8047
Phone: (337) 365-5050
Fax:   (337) 365-1902
.

| PAYMENT TERMS | CONTACT | EMAIL | |
|---|---|---|---|
| Net 30 Days | JARED BERGERON | | |

| CUSTOMER REFERENCES | | REFERENCE | |
|---|---|---|---|
| ROUTING ID 573002 | | | |

| RIG NAME | | WELL NAME | |
|---|---|---|---|

# *Invoice*

**Bill To:**  FIELDWOOD ENERGY LLC
DO NOT MAIL-EDI COUPA
2000 W SAM HOUSTON PKWY S STE 1200
HOUSTON TX 77042-3623

**Ship To:**  FIELDWOOD ENERGY LLC
RIG SITE (CAMERON PARISH LA)
CAMERON LA 70631

| USAGE # | SERIAL NUMBER | ITEM NUMBER / DESCRIPTION | QUANTITY | UOM | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|---|
| 2743061 | 2732 | RNT DY TANK - DIESEL | 28.000 | DY | 8.00 | 224.00 |
| Ship To: 1029749 | | TANK-560 GALLON DIESEL | | | | |
| RIG SITE (CAMERON PARISH | | Bill From 9/29/2020 to 10/26/2020 | | | | |
| | | WSS RENTAL - DAY | 28.000 | DY | 13.00 | 364.00 |
| | | WSS RENTAL - DAY | | | | |
| | | Bill From 9/29/2020 to 10/26/2020 | | | | |
| | | 200 FT LEAD - 4/0-1 DLO | | | | |
| 2916474 | 4765 | RNT DY GEN DSL SKD 100 KW | 28.000 | DY | 69.00 | 1,932.00 |
| | | GENERATOR-100KW SKID MOUNTED - | | | | |
| | | Bill From 9/29/2020 to 10/26/2020 | | | | |
| | | | | **Subtotal** | | **2,520.00** |
| | | | | **Grand Sub Total** | | 2,520.00 |
| | | | | **Tax** | | |
| | | Currency: | **USD** | **Invoice Total** | | **2,520.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**

NOV Wellsite Services A Division of
NOV LP
P O Box 202631
Dallas, TX  75320-2631

Remit Fund Electronically to:
Wells Fargo Bank, N.A.
420 Montgomery
San Francisco, CA 94104
.

**Wire Instructions (Wires Only)**

ABA:        121000248
Account:    4121898753
Beneficiary:NOV Wellsite Services, A Div. of NOV, L.P.
Swift code: WFBIUS6S

NATIONAL OILWELL VARCO, L.P. AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

## 1. ACCEPTANCE

Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of machinery or equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"): (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any: (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgment"), if any: and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgment, the Acknowledgment shall prevail.

## 2. PRICES

Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for thirty (30) days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines, penalties or interest imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

## 3. TAXES

Transaction Taxes. In addition to the charges due under this Agreement, the Buyer shall be responsible for, and shall protect, indemnify, defend and save harmless Seller from and against the reporting, filing and payment of any taxes, duties, charges, licenses, or fees (and any related fines, penalties or interest and the like) imposed directly on Buyer as a result of this Agreement and all liabilities, costs, and associated expenses (including lawyers' and experts' fees) which may be incurred in connection therewith. Such taxes, duties, charges, licenses, or fees include but are not limited to any local, state, federal, foreign, or international sales, use, value added tax ("VAT"), goods and services tax ("GST"), rental, import, export, personal property, stamp, excise and like taxes and duties. If Seller pays any such tax, Buyer shall, within thirty (30) days of Seller's demand, reimburse Seller for the tax including interest, fines, and penalties, paid by the Seller. It shall be Buyer's sole obligation after payment to Seller to challenge the applicability of any tax.

Notwithstanding the foregoing, the Buyer shall provide Seller with a copy of all exporting documents and any other documents reasonably requested by Seller to prove or substantiate to the appropriate tax authorities the goods were timely exported.

Withholding Taxes. If Buyer is required by any appropriate government department or agency to withhold compensation due Seller to satisfy any obligation of Seller for taxes due, Buyer shall give at least 30 days' notice to Seller that Buyer will withhold. Buyer agrees to pay on a timely basis the amounts so withheld over to the appropriate government department or agency, on behalf of Seller, and to provide Seller with any tax receipts (originals, if possible) or other reliable evidence of payment issued by such government department or agency within 30 days of the date required for withholding. Buyer shall not withhold compensation due Seller if Seller produces evidence, acceptable to Buyer, that Seller is not subject to the withholding of such taxes. Buyer agrees that it shall not unreasonably withhold such acceptance. Buyer shall reimburse Seller for any taxes withheld for which receipts or other reliable evidence substantiating the remittance of taxes to the appropriate government department or agency are not provided to Seller. Buyer's obligation to deliver to Seller tax receipts or other reliable evidence issued by the taxing authority shall not apply if Buyer establishes to the reasonable satisfaction of Seller that the appropriate government department or agency does not provide such documentation. Notwithstanding the above, if Buyer is required to pay any such taxes or amounts that Buyer believes is directly attributable to Seller, Buyer shall first provide notice to Seller and give Seller an opportunity to intervene to protect its interest before Buyer makes any payment.

Protest Rights. If Buyer receives any demand or request for payment of any levies, charges, taxes or contributions for which it would seek indemnity or reimbursement from Seller, Buyer shall promptly and timely notify the Seller in writing of such demand or request. "Promptly and timely" as used in this sub clause means that Buyer must notify Seller so that Seller has enough time and a reasonable opportunity to appeal, protest or litigate the levies, charges, taxes or contributions in an appropriate venue. To the extent that Buyer fails to give prompt and timely notice, Seller has no obligation to, and will not, reimburse Buyer for these levies, charges, taxes or contributions. At Seller's request and cost, Buyer shall initiate an appeal, protest or litigation in Buyer's own name if Buyer is the only party that can legally initiate this appeal, protest or litigation. The Buyer shall allow the Seller to control the response to such demand or request and the Buyer shall use its best efforts to appeal against such demand or request. If Buyer is required to pay any levies, charges, taxes or contributions in order to pursue an appeal, protest or litigation, Seller shall reimburse Buyer for that amount promptly upon receipt of a written request from Buyer. Seller shall not be responsible for any compromise made by Buyer without Seller's prior written consent.

Cooperation. Buyer shall cooperate with Seller, and at the request of Seller, Buyer shall use its best efforts to supply to Seller such information (including documentary information) in connection with its activities as may be required by Seller for any of the following purposes:

a) To enable Seller to comply with the lawful demand or requirement for such information by any appropriate government authority or to ensure that all requirements of the applicable law are being complied with:

b) To enable Seller to conduct, defend, negotiate or settle any claim arising out of, or in connection with, such activities, whether or not such claim shall have become the subject of arbitration or judicial proceedings:

c) To enable Seller to make any application (including, but without limitation, any claim for any allowances or relief) or representation in connection with, or to contest any assessment on, or liability of Seller to any taxes, duties, levies, charges and contributions (and any interest or penalties thereon): or

d) To secure for Seller any beneficial tax treatment and legally minimize any tax obligations in connection with this Agreement.

Seller's request for such information and documents shall allow Buyer a reasonable time to prepare, provide and submit that information requested. The obligations set forth above shall exist for a period of six (6) years commencing with the date of agreement by Buyer of Seller's final statement of account under the Agreement, and the Buyer shall retain and shall procure any subcontractor hereunder to retain, all information and documents in connection with its activities under or pursuant to the Agreement as shall enable the Buyer to comply with the above obligations.

## 4. PAYMENT TERMS

Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller until Buyer cures the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period: or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

## 5. DELIVERY

Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

## 6. FORCE MAJEURE

If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

## 7. CANCELLATION

Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

a) 20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date:

b) 50% of the Agreement value if canceled thereafter: or

c) 100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

**8. TITLE AND RISK OF LOSS**

For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date.  Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest.  Seller accepts no responsibility for any damage, shortage or loss in transit.  Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage.  Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment.  Risk and liability passes to Buyer upon delivery by Seller.  Title to Rental machinery or equipment shall remain with Seller at all times.  Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

**9. LIMITED WARRANTY**

New Equipment/Parts.  In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer.  Secondhand goods are sold "as is".  If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts.  Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship.  If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts.  Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship.  If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.  This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul.  If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service.  Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental.  Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement.  Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment.  In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during re-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts: (b) the unauthorized modification, repair or service of the equipment or parts by Buyer: (c) utilization of replacement parts not manufactured by Seller: or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations.  Further, Seller's warranty obligations under this Article 9 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller.  Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 9 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 9, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**10. CHANGES**

Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

**11. RETURN OF MAKE TO STOCK GOODS**

With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date.  Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller.  Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase.  Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods.  The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods.  The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price.  A charge will be assessed to clean-up, refinish and restock the goods, if applicable.  No rubber or electronic products or components may be returned for credit after six (6)

months from date of purchase.

**12. LIABILITIES, RELEASES AND INDEMNIFICATION**

For purpose of this Article12, the following definitions shall apply:
"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a)  Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b)  Buyer shall release, indemnify, defend and hold Seller Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c)  Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d)  Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a well site, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group  or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group,  including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e)  NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f)  Seller's total liability for all claims, damages, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g)  THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 12 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h)  Redress under the indemnity provisions set forth in this Article 12 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

**13. INSURANCE**

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured.  To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall,  (a) be primary to the other party's insurance:  (b) include the other party, its parent, subsidiary and affiliated of related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured:  and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

**14. GOVERNING LAW**

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South

America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles. All disputes arising out of or in connection with this Agreement shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said rules.  Arbitration shall be held in London, England and shall be conducted in the English language.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles. Any dispute, action or proceeding arising out of or relating to this Agreement must be brought in a state or federal court sitting in Harris County, Texas, and each of the parties hereby agrees to irrevocably submit itself to the exclusive jurisdiction of each such court in any such action or proceeding and waives any objection it may now or hereafter have to venue or convenience of forum.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

### 15. OWNERSHIP AND PATENT INDEMNITY
All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer.  Seller warrants that the use or sale of Equipment or  Parts  hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit.  Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above.  THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.

### 16. REGULATORY COMPLIANCE
By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required.  Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders in effect at the time of Agreement execution, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any.  Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto.  **No provision in this Agreement shall be interpreted or applied which would require any party to do or refrain from doing any act which would constitute a violation of, or result in a loss of economic benefit under, any anti-boycott including but not limited to any such law of the United States.**  All Orders shall be conditional upon granting of export licenses or import permits which may be required.  Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

### 17. CONFIDENTIAL INFORMATION
Each party recognizes and acknowledges that it shall maintain all data, information,  disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other  party in strict confidence.  However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information:  (a) which is, at the time of disclosure, known to the trade or public; (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date:  (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information:  (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to

such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information:  or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order.  In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

### 18. INDEPENDENT CONTRACTOR
It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer.  In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq.,* Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1).  Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

### 19. ADDITIONAL RENTAL TERMS AND CONDITIONS
Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented.  Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement.  Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures.  In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts.  Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts.  The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts.  NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted).  Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment.  In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Buyer.  Such charges may include service, inspection, and spare parts.

### 20. GENERAL
Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach.  Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations.  Buyer acknowledges that it has not relied on any representations other than those contained in this Agreement.  This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.



XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

**Invoice Number:** 432200207
**Page:** 1 of 2
**Date:** 4/22/2020
**Salesperson:** MOOM
**Currency:** US Dollars

## Regular Invoice

**Tax ID:**52-2269528

| Bill To:C902854 | Ship To: |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |

**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000610 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |
| | STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT. | | | |

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|



MARCH STORAGE

| 1 | 1.00 | 1.00 | 0.00 EA | CP-STORAGE | | 800.00 | 800.00 |
|---|---|---|---|---|---|---|---|
| | | | | STORAGE FEE | | | |
| | | | | STORED AT XL SYSTEMS BEAUMONT, TX | | | |

**Date Shipped:** 4/15/2020

| | |
|---|---|
| **Sales Amount** | 800.00 |
| **Misc Charges** | 0.00 |
| **Freight** | 0.00 |
| **Surcharge** | N/A |
| **Sales Tax** | 0.00 |
| **Prepaid Amount** | 0.00 |
| **Total** | 800.00 |

**Please remit check to:**
XL SYSTEMS, L.P.
P.O. BOX 202630
DALLAS, TX 75320-2630

**Wire The Amount Due:**
WELLS FARGO BANK N.A.
SWIFT CODE: WFBIUS6S
ABA NO.: 121000248
ACCOUNT NO.: 4121877005

**Sales Office**



**Invoice Number:** 432200207
**Page:** 2 of 2
**Date:** 4/22/2020
**Salesperson:** MOOM
**Currency:** US Dollars

XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

# Regular Invoice

**Tax ID:** 52-2269528

| Bill To: C902854 | Ship To: |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |

**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000610 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |
| | STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT. | | | |

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|

HOUSTON SALES OFFICE
140 CYPRESS STATION STE 225
HOUSTON, TX  77090
UNITED STATES
Phone (346) 223-8800

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES  TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL APPLY TO THIS ORDER.

*Thank you for your Order*                                    XLUS01

# Fieldwood Inventory - C902854

**March 31, 2020**

| ITEM NUMBER | DESCRIPTION | LOT NUMBER | QTY | TALLY | WELL | REMARK | LOC |
|---|---|---|---|---|---|---|---|
| 2081256F0003 | 20X.812 X56 XLF BOX/PIN  40 | 0018377A | 93 | 3722.9 | MOBILE BAY 914 #1 | 1000103917 | CP27 |
| | | | **93** | **3722.90** | | | |
| 3010065DY52635 | 30X1.000 X65 XLCS PIN/BLANK   35 | 0034542A | 1 | 36.55 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51130 | 30X1.000 X65 XLCS BOX/BLANK   40 | 0034550A | 1 | 29.85 | High Island 31-L | Return 1-115365  (8-13) | K8 |
| 3010065DY51140 | 30X1.000 X65 XLCS BOX/BLANK   40 | 0034604A | 1 | 41.75 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51140 | 30X1.000 X65 XLCS BOX/BLANK   40 | 0034605A | 1 | 40.6 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY52140 | 30X1.000 X65 XLCS PIN/BLANK   40 | 0034615A | 1 | 38.9 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51140 | 30X1.000 X65 XLCS BOX/BLK (2.47 FT DUTCHMAN) | 0034616A | 1 | 39.65 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | CJ7 |
| 3010065DY51145 | 30X1.000 X65 XLCS BOX/BLANK   45 | 0034514A | 1 | 46.92 | South Marsh IS 41 #16 | Return 1-114743  (10-13) QUICK JON BLANK END | K8 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51686A | 1 | 40.11 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51687A | 1 | 40.13 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X BLK 10' | 51683A | 1 | 9.55 | SMI 127 B17 | RETURN 06-26-18 | TAR |
| | | | **10** | **364.01** | | | |
| 3615056M0003 | 36X1.50 X56 XLCSM BOX/PIN  40 | 0024753A | 16 | 631.43 | MOBILE BAY 914 #1 | 1000103917 | CP13 |
| | | | **16** | **631.43** | | | |



**Invoice Number:** 432200273
**Page:** 1 of 2
**Date:** 5/21/2020
**Salesperson:** MOOM
**Currency:** US Dollars

XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

# Regular Invoice

**Tax ID:** 52-2269528

| **Bill To:** C902854 | **Ship To:** |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |

**Tax ID:**
**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000630 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |

STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT.

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|



APRIL STORAGE

| 1 | 1.00 | 1.00 | 0.00 | EA | CP-STORAGE | 800.00 | 800.00 |

STORAGE FEE
STORED AT XL SYSTEMS BEAUMONT, TX
**Date Shipped:** 5/19/2020

| | |
|---|---|
| **Sales Amount** | 800.00 |
| **Misc Charges** | 0.00 |
| **Freight** | 0.00 |
| **Surcharge** | N/A |
| **Sales Tax** | 0.00 |
| **Prepaid Amount** | 0.00 |
| **Total** | 800.00 |

**Please remit check to:**
XL SYSTEMS, L.P.
P.O. BOX 202630
DALLAS, TX 75320-2630

**Wire The Amount Due:**
WELLS FARGO BANK N.A.
SWIFT CODE: WFBIUS6S
ABA NO.: 121000248
ACCOUNT NO.: 4121877005

**Sales Office**

Case 20-33948   Document 546-1   Filed in TXSB on 11/12/20   Page 358 of 373



XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

**Invoice Number:** 432200273
**Page:** 2 of 2
**Date:** 5/21/2020
**Salesperson:** MOOM
**Currency:** US Dollars

# Regular Invoice

**Tax ID:** 52-2269528

| Bill To: C902854 | Ship To: |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |

**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000630 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |
| | STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT. | | | |

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|

HOUSTON SALES OFFICE
140 CYPRESS STATION STE 225
HOUSTON, TX 77090
UNITED STATES
Phone (346) 223-8800

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES  TERMS AND CONDITIONS FOR THE PROVISION
OF EQUIPMENT, PARTS, SERVICES OR RENTAL APPLY TO THIS ORDER.

*Thank you for your Order*

XLUS01

# Fieldwood Inventory - C902854

April 30, 2020

| ITEM NUMBER | DESCRIPTION | LOT NUMBER | QTY | TALLY | WELL | REMARK | LOC |
|---|---|---|---|---|---|---|---|
| 20812S6F0003 | 20X.812 X56 XLF BOX/PIN  40 | 0018377A | 93 | 3722.9 | MOBILE BAY 914 #1 | 1000103917 | CP27 |
| | | | **93** | **3722.90** | | | |
| 3010065DY52I35 | 30X1.000 X65 XLCS PIN/BLANK  35 | 0034542A | 1 | 36.55 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51I30 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034550A | 1 | 29.85 | High Island 31-L | Return 1-115365  (8-13) | K8 |
| 3010065DY51I40 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034604A | 1 | 41.75 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51I40 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034605A | 1 | 40.6 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51I40 | 30X1.000 X65 XLCS PIN/BLANK  40 | 0034615A | 1 | 38.9 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY52I40 | 30X1.000 X65 XLCS BOX/BLK (2.47 FT DUTCHMAN) | 0034616A | 1 | 39.65 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | CJ7 |
| 3010065DY51I40 | 30X1.000 X65 XLCS BOX/BLANK  45 | 0034514A | 1 | 46.92 | South Marsh IS 41 #16 | Return 1-114743  (10-13) QUICK J ON BLANK END | K8 |
| 3010065DY51I45 | 30X1.00 X65 XLCS BOX X PIN 40' | 51686A | 1 | 40.11 | SMI 127 B17 | RETURN 06-22-18 | C.I2 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51687A | 1 | 40.13 | SMI 127 B17 | RETURN 06-22-18 | C.I2 |
| | 30X1.00 X65 XLCS BOX X BLK 10' | 51683A | 1 | 9.55 | SMI 127 B17 | RETURN 06-26-18 | TAR |
| | | | **10** | **364.01** | | | |
| 3615056M0003 | 36X1.50 X56 XLCSM BOX/PIN  40 | 0024753A | 16 | 631.43 | MOBILE BAY 914 #1 | 1000103917 | CP13 |
| | | | **16** | **631.43** | | | |

1 of 1



XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

**Invoice Number:**432200328
**Page:**1 of 2
**Date:** 6/26/2020
**Salesperson:** MOOM
**Currency:** US Dollars

## Regular Invoice

**Tax ID:**52-2269528

| **Bill To:**C902854 | **Ship To:** |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| | |
| **Tax ID:** | |
| **Fax:** 713-630-8901 | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000646 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |

STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT.

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|



|  | MAY STORAGE | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | 1.00 | 1.00 | 0.00 | EA | CP-STORAGE | 800.00 | 800.00 |
| | | | | | STORAGE FEE | | |
| | | | | | STORED AT XL SYSTEMS BEAUMONT, TX | | |

**Date Shipped:** 6/26/2020

| **Sales Amount** | 800.00 |
|---|---|
| **Misc Charges** | 0.00 |
| **Freight** | 0.00 |
| **Surcharge** | N/A |
| **Sales Tax** | 0.00 |
| **Prepaid Amount** | 0.00 |
| **Total** | 800.00 |

**Please remit check to:**
XL SYSTEMS, L.P.
P.O. BOX 202630
DALLAS, TX 75320-2630

**Wire The Amount Due:**
WELLS FARGO BANK N.A.
SWIFT CODE: WFBIUS6S
ABA NO.: 121000248
ACCOUNT NO.: 4121877005

**Sales Office**



Case 20-33948   Document 546-1   Filed in TXSB on 11/12/20   Page 361 of 373

**Invoice Number:** 432200328
**Page:** 2 of 2
**Date:** 6/26/2020
**Salesperson:** MOOM
**Currency:** US Dollars

XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

# Regular Invoice

**Tax ID:** 52-2269528

| **Bill To:** C902854 | **Ship To:** |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |

**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000646 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |
| | STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT. | | | |

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|

HOUSTON SALES OFFICE
140 CYPRESS STATION STE 225
HOUSTON, TX 77090
UNITED STATES
Phone (346) 223-8800

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES  TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL APPLY TO THIS ORDER.

*Thank you for your Order*                    XLUS01

# Fieldwood Inventory - C902854

May 31, 2020

| ITEM NUMBER | DESCRIPTION | LOT NUMBER | QTY | TALLY | WELL | REMARK | LOC |
|---|---|---|---|---|---|---|---|
| 20812S6F0003 | 20X.812 X56 XLF BOX/PIN  40 | 0018377A | 93 | 3722.9 | MOBILE BAY 914 #1 | 1000103917 | CP27 |
| | | | **93** | **3722.90** | | | |
| 3010065DY52I35 | 30X1.000 X65 XLCS PIN/BLANK  35 | 0034542A | 1 | 36.55 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51I30 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034550A | 1 | 29.85 | High Island 31-L | Return 1-115365  (8-13) | K8 |
| 3010065DY51I40 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034604A | 1 | 41.75 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51I40 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034605A | 1 | 40.6 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY52I40 | 30X1.000 X65 XLCS PIN/BLANK  40 | 0034615A | 1 | 38.9 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51I40 | 30X1.000 X65 XLCS BOX/BLK (2.47 FT DUTCHMAN) | 0034616A | 1 | 39.65 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | CJ7 |
| 3010065DY51I45 | 30X1.000 X65 XLCS BOX/BLANK  45 | 0034514A | 1 | 46.92 | South Marsh IS 41 #16 | Return 1-114743  (10-13) QUICK JON BLANK END | K8 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51686A | 1 | 40.11 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51687A | 1 | 40.13 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X BLK 10' | 51683A | 1 | 9.55 | SMI 127 B17 | RETURN 06-26-18 | TAR |
| | | | **10** | **364.01** | | | |
| 3615056M0003 | 36X1.50 X56 XLCSM BOX/PIN  40 | 0024753A | 16 | 631.43 | MOBILE BAY 914 #1 | 1000103917 | CP13 |
| | | | **16** | **631.43** | | | |

1 of 1



XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

**Invoice Number:** 432200365
**Page:** 1 of 2
**Date:** 7/11/2020
**Salesperson:** MOOM
**Currency:** US Dollars

## Regular Invoice

**Tax ID:** 52-2269528

| **Bill To:** C902854 | **Ship To:** |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |
| **Fax:** 713-630-8901 | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000665 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |

STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT.

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|



JUNE STORAGE

| 1 | 1.00 | 1.00 | 0.00 | EA | CP-STORAGE STORAGE FEE STORED AT XL SYSTEMS BEAUMONT, TX | 800.00 | 800.00 |

**Date Shipped:** 7/10/2020

| | |
|---|---|
| **Sales Amount** | 800.00 |
| **Misc Charges** | 0.00 |
| **Freight** | 0.00 |
| **Surcharge** | N/A |
| **Sales Tax** | 0.00 |
| **Prepaid Amount** | 0.00 |
| **Total** | 800.00 |

| Please remit check to: | Wire The Amount Due: |
|---|---|
| XL SYSTEMS, L.P. | WELLS FARGO BANK N.A. |
| P.O. BOX 202630 | SWIFT CODE: WFBIUS6S |
| DALLAS, TX 75320-2630 | ABA NO.: 121000248 |
| | ACCOUNT NO.: 4121877005 |

**Sales Office**



XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

**Invoice Number:** 432200365
**Page:** 2 of 2
**Date:** 7/11/2020
**Salesperson:** MOOM
**Currency:** US Dollars

## Regular Invoice

**Tax ID:**52-2269528

| **Bill To:**C902854 | **Ship To:** |
|---|---|
| FIELDWOOD ENERGY LLC<br>ONE BRIAR LAKE PLAZA,<br>SUITE 1200<br>2000 W. SAM HOUSTON PARKWAY SOUTH<br>HOUSTON TX 77042<br>USA | FIELDWOOD ENERGY LLC<br>ONE BRIAR LAKE PLAZA,<br>SUITE 1200<br>2000 W. SAM HOUSTON PARKWAY SOUTH<br>HOUSTON TX 77042<br>USA |
| **Tax ID:** | |

**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000665 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |

STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT.

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|

HOUSTON SALES OFFICE
140 CYPRESS STATION STE 225
HOUSTON, TX  77090
UNITED STATES
Phone (346) 223-8800

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES  TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL APPLY TO THIS ORDER.

*Thank you for your Order*                    XLUS01

# Fieldwood Inventory - C902854

June 30, 2020

| ITEM NUMBER | DESCRIPTION | LOT NUMBER | QTY | TALLY | WELL | REMARK | LOC |
|---|---|---|---|---|---|---|---|
| 20B1256F0003 | 20X.812 X56 XLF BOX/PIN  40 | 0018377A | 93 | 3722.9 | MOBILE BAY 914 #1 | 1000103917 | CP27 |
| | | | **93** | **3722.90** | | | |
| 3010065DY52135 | 30X1.000 X65 XLCS PIN/BLANK  35 | 0034542A | 1 | 36.55 | South Marsh IS 41 #16 | Return 1-1-114743  (10-13) | K8 |
| 3010065DY51130 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034550A | 1 | 29.85 | High Island 31-L | Return 1-115365  (8-13) | K8 |
| 3010065DY51140 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034604A | 1 | 41.75 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51140 | 30X1.000 X65 XLCS BOX/BLANK  40 | 0034605A | 1 | 40.6 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY52140 | 30X1.000 X65 XLCS PIN/BLANK  40 | 0034615A | 1 | 38.9 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | K8 |
| 3010065DY51140 | 30X1.000 X65 XLCS BOX/BLK (2.47 FT DUTCHMAN) | 0034616A | 1 | 39.65 | South Marsh IS 41 #16 | Return 1-114743  (10-13) | CJ7 |
| 3010065DY51145 | 30X1.000 X65 XLCS BOX/BLANK  45 | 0034514A | 1 | 46.92 | South Marsh IS 41 #16 | Return 1-114743  (10-13) QUICK JON BLANK END | K8 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51686A | 1 | 40.11 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51687A | 1 | 40.13 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X BLK 10' | 51683A | 1 | 9.55 | SMI 127 B17 | RETURN 06-26-18 | TAR |
| | | | **10** | **364.01** | | | |
| 3615056M0003 | 36X1.50 X56 XLCSM BOX/PIN  40 | 0024753A | 16 | 631.43 | MOBILE BAY 914 #1 | 1000103917 | CP13 |
| | | | **16** | **631.43** | | | |

1 of 1



XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

**Invoice Number:** 432200435
**Page:** 1 of 2
**Date:** 8/27/2020
**Salesperson:** MOOM
**Currency:** US Dollars

## Regular Invoice

**Tax ID:** 52-2269528

| Bill To: C902854 | Ship To: |
|---|---|
| FIELDWOOD ENERGY LLC<br>ONE BRIAR LAKE PLAZA,<br>SUITE 1200<br>2000 W. SAM HOUSTON PARKWAY SOUTH<br>HOUSTON TX 77042<br>USA | FIELDWOOD ENERGY LLC<br>ONE BRIAR LAKE PLAZA,<br>SUITE 1200<br>2000 W. SAM HOUSTON PARKWAY SOUTH<br>HOUSTON TX 77042<br>USA |
| **Tax ID:** | |
| **Fax:** 713-630-8901 | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000680 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |
| | STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT. | | | |

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|



JULY STORAGE

| 1 | 1.00 | 1.00 | 0.00 | EA | CP-STORAGE | | 800.00 | 800.00 |

JULY 2020 STORAGE FEE
STORED AT XL SYSTEMS BEAUMONT, TX

**Date Shipped:** 8/24/2020

| | |
|---|---|
| **Sales Amount** | 800.00 |
| **Misc Charges** | 0.00 |
| **Freight** | 0.00 |
| **Surcharge** | N/A |
| **Sales Tax** | 0.00 |
| **Prepaid Amount** | 0.00 |
| **Total** | 800.00 |

**Please remit check to:**
XL SYSTEMS, L.P.
P.O. BOX 202630
DALLAS, TX 75320-2630

**Wire The Amount Due:**
WELLS FARGO BANK N.A.
SWIFT CODE: WFBIUS6S
ABA NO.: 121000248
ACCOUNT NO.: 4121877005

**Sales Office**



**Invoice Number: 432200435**
**Page:** 2 of 2
**Date:** 8/27/2020
**Salesperson:** MOOM
**Currency:** US Dollars

XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

## Regular Invoice

**Tax ID:** 52-2269528

| **Bill To:** C902854 | **Ship To:** |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |

**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000680 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |
| | STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT. | | | |

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|

HOUSTON SALES OFFICE
140 CYPRESS STATION STE 225
HOUSTON, TX 77090
UNITED STATES
Phone (346) 223-8800

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES  TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL APPLY TO THIS ORDER.

*Thank you for your Order*

XLUS01



XL Systems L.P.
5780 Hagner Road
Beaumont TX 77705
UNITED STATES

**Invoice Number:** 432200462
**Page:** 1 of 2
**Date:** 9/15/2020
**Salesperson:** MOOM
**Currency:** US Dollars

## Regular Invoice

**Tax ID:** 52-2269528

| Bill To: C902854 | Ship To: |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |
| **Fax:** 713-630-8901 | |

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000695 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |
| | STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT. | | | |

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|



AUGUST STORAGE

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | 1.00 | 1.00 | 0.00 | EA | CP-STORAGE | | 800.00 | 800.00 |
| | | | | | AUGUST 2020 STORAGE FEE | | | |
| | | | | | STORED AT XL SYSTEMS BEAUMONT, TX | | | |

**Date Shipped:** 9/14/2020

| | |
|---|---|
| **Sales Amount** | 800.00 |
| **Misc Charges** | 0.00 |
| **Freight** | 0.00 |
| **Surcharge** | N/A |
| **Sales Tax** | 0.00 |
| **Prepaid Amount** | 0.00 |
| **Total** | 800.00 |

| Please remit check to: | Wire The Amount Due: |
|---|---|
| XL SYSTEMS, L.P. | WELLS FARGO BANK N.A. |
| P.O. BOX 202630 | SWIFT CODE: WFBIUS6S |
| DALLAS, TX 75320-2630 | ABA NO.: 121000248 |
| | ACCOUNT NO.: 4121877005 |

**Sales Office**
HOUSTON SALES OFFICE
140 CYPRESS STATION STE 225
HOUSTON, TX 77090
UNITED STATES
Phone (346) 223-8800

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES  TERMS AND CONDITIONS FOR THE PROVISION



**Invoice Number: 432200462**
**Page:** 2 of 2
**Date:** #Error
**Salesperson:**
**Currency:**

## Regular Invoice

**Tax ID:** 52-2269528

| **Bill To:** C902854 | **Ship To:** |
|---|---|
| FIELDWOOD ENERGY LLC | FIELDWOOD ENERGY LLC |
| ONE BRIAR LAKE PLAZA, | ONE BRIAR LAKE PLAZA, |
| SUITE 1200 | SUITE 1200 |
| 2000 W. SAM HOUSTON PARKWAY SOUTH | 2000 W. SAM HOUSTON PARKWAY SOUTH |
| HOUSTON TX 77042 | HOUSTON TX 77042 |
| USA | USA |
| **Tax ID:** | |

**Fax:** 713-630-8901

| Order | Purchase Order | Packages | Prepaid | Weight | Ship Via | Terms |
|---|---|---|---|---|---|---|
| STOR000695 | 580002 | | | | BEST WAY | Net 30 Days |

| Inco Terms | Description | Rig Name | Oilfield Name | Well Name |
|---|---|---|---|---|
| EXW | Ex-Works | | | |

STORAGE ORDER. THIS ORDER IS CONSIDERED COMPLETE UPON STORAGE INVOICE RECEIPT.

| Line | Qty Ordered | Qty Shipped | Back Order | UM | Item | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|

OF EQUIPMENT, PARTS, SERVICES OR RENTAL APPLY TO THIS ORDER.

*Thank you for your Order*                    XLUS01

# Fieldwood Inventory - C902854

August 31, 2020

| ITEM NUMBER | DESCRIPTION | LOT NUMBER | QTY | TALLY | WELL | REMARK | LOC |
|---|---|---|---|---|---|---|---|
| 208125 6FF0003 | 20X.812 X56 XLF BOX/PIN  40 | 0018377A | 93 | 3722.9 | MOBILE BAY 914 #1 | 1000103917 | CP27 |
| | | | **93** | **3722.90** | | | |
| 301006 5DY52I35 | 30X1.000 X65 XLCS PIN/BLANK    35 | 0034542A | 1 | 36.55 | South Marsh IS 41 #16 | Return 1-1-14743  (10-13) | K8 |
| 301006 5DY5I130 | 30X1.000 X65 XLCS BOX/BLANK    40 | 0034550A | 1 | 29.85 | High Island 31-L | Return 1-115365  (8-13) | K8 |
| 301006 5DY5I140 | 30X1.000 X65 XLCS BOX/BLANK    40 | 0034604A | 1 | 41.75 | South Marsh IS 41 #16 | Return 1-1-14743  (10-13) | K8 |
| 301006 5DY5I140 | 30X1.000 X65 XLCS BOX/BLANK    40 | 0034605A | 1 | 40.6 | South Marsh IS 41 #16 | Return 1-1-14743  (10-13) | K8 |
| 301006 5DY5I140 | 30X1.000 X65 XLCS PIN/BLANK    40 | 0034615A | 1 | 38.9 | South Marsh IS 41 #16 | Return 1-1-14743  (10-13) | K8 |
| 301006 5DY5I140 | 30X1.000 X65 XLCS BOX/BLK (2.4 FT DUTCHMAN) | 0034616A | 1 | 39.65 | South Marsh IS 41 #16 | Return 1-1-14743  (10-13) | CJ7 |
| 301006 5DY5I140 | 30X1.00 X65 XLCS BOX/BLANK   45 | 0034514A | 1 | 46.92 | South Marsh IS 41 #16 | Return 1-1-14743  (10-13) QUICK J ON BLANK END | K8 |
| 301006 5DY5I145 | 30X1.00 X65 XLCS BOX X PIN 40' | 51686A | 1 | 40.11 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X PIN 40' | 51687A | 1 | 40.13 | SMI 127 B17 | RETURN 06-22-18 | CJ2 |
| | 30X1.00 X65 XLCS BOX X BLK 10' | 51683A | 1 | 9.55 | SMI 127 B17 | RETURN 06-26-18 | TAR |
| | | | **10** | **364.01** | | | |
| 361505 6M0003 | 36X1.50 X56 XLCSM BOX/PIN  40 | 0024753A | 16 | 631.43 | MOBILE BAY 914 #1 | 1000103917 | CP13 |
| | | | **16** | **631.43** | | | |

1 of 1

**NOV Process & Flow Technologies US**

**LEDGER NO. 940**

NOV PROCESS & FLOW TECHNOLOGIES
US INC
5870 POE AVE
DAYTON OH 45414-3442

| INVOICE NUMBER | WORK ORDER NUMBER | DATE | BRANCH PLANT | PAGE |
|---|---|---|---|---|
| 4142613    RI | 02671752 SV | 09/29/17 | 9407301 | 1 of 1 |
| **ORDERED BY** | **CUSTOMER NUMBER** | **CUSTOMER PO.** | | **ENTERED BY** |
| JASON HORA | 675027 | FW175075-082414-A | | RUDYAL |
| **PAYMENT TERMS** | | | **EMP/JOB NUMBER** | |
| Net 30 Days | | | 889592 | |

# Invoice

**Warranty is subject to review by NOV Process & Flow Technologies US to determine validity**
These commodities, technology, or software are subject to the laws of their country of export and may also be subject to the laws of their country of origin. Re-export or diversion contrary to applicable law may be prohibited, especially with respect to commodities, technology, or software exported from the U.S.

**BILL TO:** FIELDWOOD ENERGY, LLC
2000 W. SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON TX 77042

**SHIP TO:** FIELDWOOD ENERGY LAFAYETTE
2014 W. PINHOOK RD.
SUITE 800
LAFAYETTE LA 70508

| SHIPPING INSTRUCTIONS | | SERVICE LOCATION: | | | |
|---|---|---|---|---|---|
| **ITEM NUMBER / DESCRIPTION** | **SERIAL NUMBER** | | **QUANTITY** | **UNIT PRICE** | **EXTENDED PRICE** |
| QTY: 2 MMLA-A-002 CERAMIC LINERS | | | | | |
| QTY: 2 229-VITON-O-RING FKM O-RING | | | | | |
| QTY: 2 224-VITON-O-RING FKM O-RING | | | | | |
| PARTS ORDER | | | | | |
| MMLA-A-002 CERAMIC LINERS | | | 1.00 | 2400.00 | 2,400.00 |
| QTY 2 | | | | | |
| 229-VITON-O-RING FKM O-RING | | | 1.00 | 90.00 | 90.00 |
| QTY 2 | | | | | |
| 224-VITON-O-RING FKM O-RING | | | 1.00 | 90.00 | 90.00 |
| QTY 2 | | | | | |

**DISCLAIMER: All ECCN and HTS classification information received from National Oilwell Varco (NOV) is for informational purposes only and shall not be construed as NOV's representation, certification or warranty regarding the proper classification. Use of such classification information is at the Buyer's sole risk and without recourse to NOV. The Buyer is responsible for determining the correct classifications of all items prior to export and Buyer shall make its own export licensing determinations.**

**This document is subject to the current Terms and Conditions.  If you would like a copy for your records, please contact your sales representative.**

| | Subtotal | 2,580.00 |
|---|---|---|
| | Tax Rate | |
| | Tax | .00 |
| Currency:   USD | Total | **2,580.00** |

## REMITTANCE INSTRUCTIONS

**Bank Deposit / Lockbox Payment**
NOV Process & Flow Technologies US Inc.
PO box 205776
Dallas, TX 75320-5776

**Wire Instructions (Wires Only)**
Wells Fargo Bank
Wells Fargo Bank N.A.
Account #4338546112
ABA #121000248

**NATIONAL OILWELL VARCO, L.P.** AND ITS AFFILIATES
TERMS AND CONDITIONS FOR THE PROVISION OF EQUIPMENT, PARTS, SERVICES OR RENTAL

1. ACCEPTANCE
Orders or other requests, whether oral or written, for the supply or sale of machinery or equipment ("Equipment"), or for the supply or sale of spare or replacement parts ("Parts"), or for the provision of services ("Services"), or for the rental of equipment ("Rental") to be provided by **National Oilwell Varco, L.P.**, on behalf of itself and its divisions and subsidiaries, or by its affiliates ("Seller") to its customers (each a "Buyer") (the "Order(s)") are subject to Seller's written acceptance by an authorized representative of Seller and any Orders so accepted will be governed by (a) the terms and conditions stated in these Terms and Conditions for provision of Equipment, Parts, Services or Rental (the "Terms and Conditions"); (b) the written proposal submitted by Seller to Buyer ("Proposal"), if any; (c) the written order acknowledgment issued by Seller to Buyer ("Acknowledgement"), if any; and, (d) any change orders identified as such and agreed to in writing by Seller (the Order, Terms and Conditions, Proposal, Acknowledgment, and any such change order, and any such additional terms as agreed to in writing by an authorized representative of Seller collectively referred to herein as the "Agreement"). Buyer's submission of a purchase order (or other similar document) shall be deemed to be an express acceptance of these Terms and Conditions notwithstanding language in Buyer's purchase order (or other similar document) inconsistent herewith, and any inconsistent language in Buyer's purchase order (or other similar document) is hereby rejected. Buyer's purchase order (or other similar document) is incorporated in this Agreement, only to the extent of specifying the nature and description of the Equipment, Parts, Services or Rental and then only to the extent consistent with the Proposal or Acknowledgment. In the event of any conflict between a Proposal and an Acknowledgement, the Acknowledgment shall prevail.

2. PRICES
Prices of Equipment, Parts, Services or Rental shall be as stated in the Proposal or Acknowledgment, or if there is no Proposal or Acknowledgment, as otherwise agreed to in writing by Seller. Unless otherwise specified, all prices contained in a Proposal are valid for 60 days from date of issue of the Proposal. All price quotations are EXW Seller's premises (INCOTERMS 2010), or as agreed per the Proposal or Acknowledgement and are subject to change without notice. All sales, use, rental, import, excise and like taxes, whether foreign or domestic, shall be charged to and borne by Buyer. Seller bears no responsibility for any consular fees, fees for legalizing invoices, certificates of origin, stamping bills of lading, or other charges required by the laws of any country of destination, or any fines imposed due to incorrect declarations. Charges will be added for factory preparation and packaging for shipment. Minimum freight and invoice charges in effect at the time of the Order shall apply. If by reason of any act of government, the cost to Seller of performing its obligations hereunder is increased, such increase shall be added to the quoted price.

3. PAYMENT TERMS
Unless alternate payment terms are specified and agreed to by Seller in writing, all charges, including applicable packing and transportation costs, billed by Seller are payable within net 30 days of the date of invoice. Seller reserves the right to modify or withdraw credit terms at any time without notice. Unless otherwise specified, all payments are due in the currency specified in Seller's Proposal, Acknowledgment and/or invoice. Interest shall be due from Buyer to Seller on overdue accounts at the maximum rate allowed by law. When partial shipments are made, the goods will be invoiced as shipped and each invoice will be treated as a separate account and be payable accordingly. Payment for goods is due whether or not technical documentation and/or any third party certifications are complete at the time of shipment. Seller shall be entitled to recover all reasonable attorneys' fees and other costs incurred in the collection of overdue accounts. Seller reserves the right, where a genuine doubt exists as to Buyer's financial position or if Buyer is in default of any payment obligation, to suspend delivery or performance of any Agreement or any part thereof without liability and without prejudice to, and without limitation of, any other remedy available to Seller and/or Buyer carries the default or satisfactory security for payment has been provided. Seller shall have the option to extend the delivery date by a time at least equal to the period of such suspension. In the event of Rental, should Buyer default in meeting any of the terms hereunder for any reason, Seller has the right to retrieve all Rentals as detailed in the Proposal and also to collect rental payments due. If Buyer elects to exercise a purchase option for Rental equipment, rental charges will be incurred and will be invoiced until the later of: (i) the end of the agreed rental period; or (ii) 30 days prior to the receipt of total purchase price and all other rental amounts due.

4. DELIVERY
Unless otherwise agreed to by Seller in writing, delivery terms shall be EXW Seller's premises (INCOTERMS 2010), except to the extent modified by these Terms and Conditions. Where goods are to be supplied from stock, such supply is subject to availability of stocks at the date of delivery. Partial shipments may be made as agreed to by Buyer and Seller. Stated delivery dates are approximate only and cannot be guaranteed. Seller shall have no liability for damages arising out of the failure to keep a projected delivery date, irrespective of the length of the delay. In the event Buyer is unable to accept delivery of goods when tendered, Seller may, at its option, arrange for storage of the goods at Buyer's sole risk and Buyer shall be liable to Seller for the reasonable cost of such storage. This provision is without prejudice to any other rights which Seller may have with respect to Buyer's failure to take delivery of goods, which includes the right to invoice Buyer for the goods. Buyer agrees that title to the stored goods will transfer to Buyer upon invoicing notwithstanding Buyer's inability to accept delivery and that Buyer assumes all risk of loss or damage to the goods from the date title passes to Buyer. Buyer is responsible for all shipping costs from Seller's premises to the location as designated by the Buyer. All shipping costs for the return of goods from the location specified by Buyer to Seller's premises shall also be for Buyer's account.

5. FORCE MAJEURE
If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than the obligations to pay money when due and indemnification obligations assumed hereunder, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include acts of God, laws and regulations, government action, war, civil disturbances, strikes and labor problems, delays of vendors, carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, shortage of raw materials, and any other causes that are not reasonably within the control of the party so affected. Seller shall be paid its applicable standby rate, if any, during any such Force Majeure event.

6. CANCELLATION
Orders placed by Buyer and accepted by Seller may be canceled only with the consent of Seller and will subject Buyer to cancellation charges. All of Seller's documents, drawings and like information shall be returned to Seller upon Buyer's request for cancellation. No Orders may be canceled subsequent to delivery or shipment, whichever occurs earlier. As estimated actual damages, Buyer agrees to pay Seller the greater of Seller's actual costs incurred prior to cancellation plus a reasonable profit, or the following minimum cancellation charges:

    a)    20% of Agreement value if canceled 30 or more days prior to the original delivery/shipment date;

    b)    50% of the Agreement value if canceled thereafter; or

    c)    100% of the value of any non-standard items (which are items not built for stock or built to customer specifications).

In the event of Rental, minimum rental charges as stated in the Proposal will apply. Buyer shall verify the amount of the cancellation charges prior to canceling an order.

7. TITLE AND RISK OF LOSS
For purchased goods, ownership and risk of loss pass to Buyer upon the earlier of (a) Seller's delivery of the goods, or (b) invoicing by Seller for the goods where Buyer is unable to accept delivery on the scheduled date. Seller retains a security interest in the goods until the purchase price has been paid, and Buyer agrees to perform upon request all acts required to secure Seller's interest. Seller accepts no responsibility for any damage, shortage or loss in transit. Seller will attempt to pack or prepare all shipments so that they will not break, rust or deteriorate in shipment, but Seller does not guarantee against such damage. Claims for any damage, shortage or loss in transit must be made by Buyer on the carrier.

In the event of Rental, Buyer assumes all risk and liability whether or not covered by insurance, for loss or damage to the Rental machinery or equipment. Risk and liability passes to Buyer upon delivery by Seller. Title to Rental machinery or equipment shall remain with Seller at all times. Buyer acquires no ownership, title or property rights to the Rental machinery or equipment except the right to use the Rental machinery or equipment subject to the terms of this Agreement.

8. LIMITED WARRANTY
New Equipment/Parts. In the case of the purchase of new Equipment/Parts, and solely for the benefit of the original user, Seller warrants, for a period of eighteen (18) months from delivery or twelve (12) months from installation, whichever is earlier, that new Equipment/Parts of its own manufacture shall conform to the material and technical specifications set forth in the Agreement. Goods manufactured by others are sold "as is" except to the extent the manufacturer honors any applicable warranty made by the manufacturer. Secondhand goods are sold "as is". If the new Equipment/Parts fail to conform with such specifications upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Remanufactured to "As New" Equipment/Parts. Seller warrants to Buyer, that for a period of six (6) months from the date of delivery by Seller or installation of the Equipment/Parts, whichever is earlier, that reconditioned to "as new" Equipment/Parts will be free from defects in material and workmanship. If the reconditioned to "as new" Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished.

Overhauled Equipment/Parts. Seller warrants that for a period of four (4) months from the date of delivery by Seller or three (3) months from installation, whichever is earlier, that overhauled Equipment/Parts will be free from defects in workmanship. If the overhauled Equipment/Parts fail to conform with such warranty upon inspection by Seller, Seller will, at its option and as Buyer's sole remedy, either repair or replace such defective Equipment/Parts with the type originally furnished. This warranty expressly assumes that parts normally considered consumables (including, but not limited to rubber goods, seals (rubber, polymer and/or metallic) and/or bearings, are replaced during overhaul. If Buyer requests that such parts not be replaced, Seller hereby disclaims any warranty for said overhauled Equipment/Parts.

Service. Seller warrants that the Services to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Seller shall re-perform that part of the non-conforming Services, provided Seller is notified by Buyer prior to Seller's departure from the worksite.

Rental. Seller warrants that the Rental equipment to be provided pursuant to this Agreement shall conform to the material aspects of the specifications set forth in the Agreement. Provided Seller is notified by Buyer prior to Seller's departure from the worksite, Seller shall repair or replace non-conforming Rental equipment. In the event of failure or other non-performance of Seller's Rental equipment's contributing to loss of hole, rental rates will apply during no-drill to equivalent TD.

Seller's warranty obligations hereunder shall not apply if non-conformity or failure was caused by (a) Buyer's failure to properly store or maintain the equipment or parts; (b) the unauthorized modification, repair or service of the equipment or parts by Buyer; (c) utilization of replacement parts not manufactured by Seller; or (d) use or handling of the equipment by Buyer in a manner inconsistent with Seller's recommendations. Further, Seller's warranty obligations under this Article 8 shall terminate if (a) Buyer fails to perform its obligations under this or any other Agreement between the parties, or (b) if Buyer fails to pay any charges due Seller. Any third party warranties provided on equipment or parts not manufactured by Seller are assigned to Buyer, without recourse, at the time of delivery, provided such warranties are assignable.

THIS ARTICLE 8 SETS FORTH BUYER'S SOLE REMEDY AND SELLER'S EXCLUSIVE OBLIGATION WITH REGARD TO NON-CONFORMING EQUIPMENT, PARTS, SERVICES OR RENTAL. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 8, SELLER MAKES NO OTHER WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, AND SELLER DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.

9. CHANGES
Seller expressly reserves the right to change, discontinue or modify the design and manufacture of its products without obligation to furnish, retrofit or install products previously or subsequently sold.

10. RETURN OF MAKE TO STOCK GOODS
With Seller's written approval, unused, incorrectly shipped or "Made to Stock" goods ordered incorrectly, in new condition and of current manufacture and catalog specifications may be returned by Buyer for credit (subject to a restocking fee), provided written request is received within one (1) year after the purchase date. Non-standard goods are not returnable for credit and such goods shall only be accepted for return with the prior written agreement of Seller. Requests for return of goods must show the original purchase order number, invoice number, description of material, and date of purchase. Return of goods does not relieve Buyer of the obligation to make payment against Seller's invoice, and any credit or refund allowed will be issued following Seller's receipt of the goods. The credit allowed on returned goods, if any, is a merchandise credit and is applicable only against future purchases of Seller goods. The credit given will be solely in Seller's discretion and may be based on the original or a subsequently adjusted price. A charge will be assessed to clean-up, refinish and restock the goods, if applicable. No rubber or electronic products or components may be returned for credit after six (6) months from date of purchase.

11. LIABILITIES, RELEASES AND INDEMNIFICATION
For purpose of this Article11, the following definitions shall apply:
"Seller Group" shall mean (i) Seller, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents

and invitees of all of the foregoing.

"Buyer Group" shall mean (i) Buyer, its parent, subsidiary or related companies, (ii) its and their working interest owners, co-lessees, co-owners, partners, joint venturers, if any, and their respective parents, subsidiary or related companies and (iii) the officers, directors, employees, consultants, agents and invitees of all of the foregoing.

"Claims" shall mean all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including, without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement (including, without limitation, property loss or damage, personal or bodily injury, sickness, disease or death, loss of services and/or wages, or loss of consortium or society).

a) Seller shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Seller Group or Seller Group's subcontractors or their employees, agents or invitees.

b) Buyer shall release, indemnify, defend and hold Buyer Group harmless from and against any and all Claims in respect of personal or bodily injury to, sickness, disease or death of any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees, and all Claims in respect of damage to or loss or destruction of property owned, leased, rented or hired by any member of Buyer Group or Buyer Group's other contractors or their employees, agents or invitees.

c) Each party covenants and agrees to support the mutual indemnity obligations contained in Paragraphs (a) and (b) above, by carrying equal amounts of insurance (or qualified self insurance) in an amount not less than U.S. $5,000,000.00.

d) Notwithstanding anything contained in this Agreement to the contrary, in all instances where Seller is providing Services at a wellsite, Buyer, to the maximum extent permitted under applicable law, shall release, indemnify, defend and hold Seller Group and Seller Group subcontractors harmless from and against any and all Claims asserted by or in favor of any person or party, including Seller Group, Buyer Group or any other person or party, resulting from: (i) loss of or damage to any well or hole (including but not limited to the costs of re-drill), (ii) blowout, fire, explosion, cratering or any uncontrolled well condition (including but not limited to the costs to control a wild well and the removal of debris), (iii) damage to any reservoir, geological formation or underground strata or the loss of oil, water or gas therefrom, (iv) pollution or contamination of any kind (other than surface spillage of fuels, lubricants, rig sewage or garbage, to the extent attributable to the negligence of Seller Group, including but not limited to the cost of control, removal and clean-up, or (v) damage to, or escape of any substance from, any pipeline, vessel or storage facility.

e) NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, NEITHER PARTY SHALL BE LIABLE TO THE OTHER AND EACH PARTY RELEASES THE OTHER FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES OR LOSSES (WHETHER FORESEEABLE AT THE DATE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PRODUCTION, LOST REVENUE, LOST PRODUCT, LOST PROFIT, LOST BUSINESS OR BUSINESS OPPORTUNITIES.

f) Seller's total liability for all claims, demands, causes of action, demands, judgments, fines, penalties, awards, losses, costs and expenses (including attorney's fees and cost of litigation) shall be limited to and shall not exceed the value of the Equipment, Parts, Services or Rental purchased under the Agreement.

g) THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS A. THROUGH F. OF THIS ARTICLE 11 SHALL APPLY TO ANY CLAIM(S), LOSSES OR DAMAGES WITHOUT REGARD TO THE CAUSE(S) THEREOF, INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE OR OTHER LEGAL FAULT OR RESPONSIBILITY OF ANY PERSON (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

h) Redress under the indemnity provisions set forth in this Article 11 shall be the exclusive remedy(ies) available to the parties hereto for the matters, claims, damages and losses covered by such provisions.

## 12. INSURANCE

Upon written request, each party shall furnish to the other party certificates of insurance evidencing the fact that the adequate insurance to support each party's obligations hereunder has been secured. To the extent of each party's release and indemnity obligations expressly assumed by each party hereunder, each party agrees that all such insurance policies shall, (a) be primary to the other party's insurance: (b) include the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents as additional insured: and, (c) be endorsed to waive subrogation against the other party, its parent, subsidiary and affiliated or related companies, and its and their respective officers, directors, employees, consultants and agents.

## 13. GOVERNING LAW

Except for Equipment, Parts, Services or Rental provided, or to be provided, by Seller in North or South America (the "America's"), this Agreement shall be governed by and interpreted in accordance with the laws of England and Wales, excluding conflicts and choice of law principles.

For Equipment, Parts, Services or Rental provided, or to be provided, by Seller in the America's, this Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of Texas, excluding conflicts and choice of law principles.

Seller retains the right to arbitrate any all disputes that may arise in connection with the provision of the Equipment, Parts, Services or Rental.

## 14. OWNERSHIP AND PATENT INDEMNITY

All software used in connection with the Equipment, Parts, Services or Rental, either purchased or rented from Seller, is copyrighted and owned by Seller and licensed to Buyer. Seller warrants that the use or sale of Equipment or Parts hereunder will not infringe patents of others by reason of the use or sale of such Equipment or Parts per se, and hereby agrees to hold Buyer harmless against judgment for damages for infringement of any such patent, provided that Buyer shall promptly notify Seller in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement,

whichever first occurs, and shall afford Seller full opportunity, at Seller's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way Seller sees fit. Seller does not warrant that such Equipment or Parts: (a) will not infringe any such patent when not of Seller's manufacture, or specially made, in whole or in part, to the Buyer's design specifications; or (b) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and Seller shall not be liable and does not indemnify Buyer for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (a) and (b) above. THIS ARTICLE STATES THE ENTIRE RESPONSIBILITY OF SELLER CONCERNING PATENT INFRINGEMENT.

## 15. REGULATORY COMPLIANCE

By acceptance of delivery under this Agreement, Buyer warrants it has complied with all applicable governmental, statutory and regulatory requirements and will furnish Seller with such documents as may be required. Seller warrants and certifies that in the performance of this Agreement, it will comply with all applicable statutes, rules, regulations and orders, including laws and regulations pertaining to labor, wages, hours and other conditions of employment, and applicable price ceilings if any. Seller will not provide any certification or other documentation nor agree to any contract provision or otherwise act in any manner which may cause Seller to be in violation of applicable United States law, including but not limited to the Export Administration Act of 1979 and regulations issued pursuant thereto. All Orders shall be conditional upon granting of export licenses or import permits which may be required. Buyer shall obtain at its own risk any required export license and import permits and Buyer shall remain liable to accept and pay for material if licenses are not granted or are revoked.

## 16. CONFIDENTIAL INFORMATION

Each party recognizes and acknowledges that it shall maintain all data, information, disclosures, documents, drawings, specifications, patterns, calculations, technical information and other documents (collectively, "Confidential Information") obtained from the other party in strict confidence. However, nothing hereinabove contained shall deprive the party receiving the Confidential Information of the right to use or disclose any information: (a) which is, at the time of disclosure, known to the trade or public: (b) which becomes at a later date known to the trade or the public through no fault of the party receiving the Confidential Information and then only after said later date: (c) which is possessed by the party receiving the Confidential Information, as evidenced by such party's written records, before receipt thereof from the party disclosing the Confidential Information: (d) which is disclosed to the party receiving the Confidential Information in good faith by a third party who has an independent right to such information: (e) which is developed by the party receiving the Confidential Information as evidenced by documentation, independently of the Confidential Information: or, (f) which is required to be disclosed by the party receiving the Confidential Information pursuant to an order of a court of competent jurisdiction or other governmental agency having the power to order such disclosure, provided that the party receiving the Confidential Information uses its best efforts to provide timely notice to the party disclosing the Confidential Information of such order to permit such party an opportunity to contest such order. In the event that Seller owns copyrights to, patents to or has filed patent applications on, any technology related to the Equipment, Parts, Services or Rental furnished by Seller hereunder, and if Seller makes any improvements on such technology, then Seller shall own all such improvements, including drawings, specifications, patterns, calculations, technical information and other documents.

## 17. INDEPENDENT CONTRACTOR

It is expressly understood that Seller is an independent contractor, and that neither Seller nor its principle, partners, employees or subcontractors are servants, agents or employees of Buyer. In all cases where Seller's employees (defined to include Seller's and its subcontractors, direct, borrowed, special, or statutory employees) are covered by the Louisiana Worker's Compensation Act. La. R.S. 23:102 *et seq*., Seller and Buyer agreed that all Equipment, Parts, Services or Rental provided by Seller and Seller's employees pursuant to this Agreement are an integral part of and are essential to the ability of Buyer to generate Buyer's goods, products, and services for the purpose of La. R.S. 23:106(A) (1). Furthermore, Seller and Buyer agree that Buyer is the statutory employer of all of Seller's employees for the purpose of La. R.S. 23:1061(A) (3).

## 18. ADDITIONAL RENTAL TERMS AND CONDITIONS

Unless otherwise indicated, the rental rates contained in Seller's Proposal are on a per day basis and such rates shall apply to each piece of equipment or part rented. Seller represents that it has fully inspected the Rental equipment and parts as detailed in the Agreement and that said equipment and parts are in good condition and repair, and are fully acceptable for use as specified in the Agreement. Furthermore, Seller represents that the Rental equipment and parts are not subject to any encumbrances or liens, and that Seller has full title to the equipment and parts, and thus, Seller is authorized to enter into and execute this Agreement.

Buyer represents that it shall use the Rental equipment and parts in a careful and proper manner and shall comply with all laws, ordinances and regulations relating to the possession, use and maintenance of the equipment and parts in accordance with Seller's approved procedures. In the event the parties agree that the Buyer shall operate the Rental equipment and parts, Buyer further represents that the Rental equipment and parts will be operated by skilled employees trained in the use of the Rental equipment and parts. Buyer shall keep the Rental equipment and parts free and clear of all liens and encumbrances arising in connection with Buyer's operations and/or use of the Rental equipment and parts. Buyer, at its sole cost, shall provide and maintain insurance against the loss, theft, damage or destruction of the Rental equipment and parts. The coverage shall be in an amount not less than the new replacement price of the Rental equipment and parts. NOV shall provide equipment and parts prices at execution of this Agreement.

At the expiration of the applicable rental term, Buyer will at its sole cost return the Rental equipment to the facility designated by Seller, in working condition (reasonable wear and tear excepted). Upon receipt of the returned Rental equipment, Seller will service and inspect the Rental equipment. In the event Seller determines that the Rental equipment is materially damaged or not in working condition (reasonable wear and tear excepted), any service work required to bring the Rental equipment to good working condition will be charged back to the Seller. Such charges may include service, inspection, and spare parts.

## 18. GENERAL

Failure of Buyer or Seller to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach. Should any provisions of this Agreement, or portion thereof, be unenforceable or in conflict with applicable governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provision supersedes all prior oral or written agreements or representations. Buyer acknowledges that it had not relied on any representations other than those contained in this Agreement. This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by an authorized representative of each party.

AAR 4/4/2011