## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | |
| | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | |
| | § | |
| | § | (Jointly Administered) |

### EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER EXTENDING THE AUTOMATIC STAY TO CERTAIN OF DEBTORS' CO-WORKING INTEREST OWNERS

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER. YOU MAY PARTICIPATE IN THE HEARING BY AUDIO/VIDEO CONNECTION.**
>
> **PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS (GENERAL ORDER 2020-4). IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE MARVIN ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE". SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN NOVEMBER 24, 2020.**

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Preliminary Statement

1.      This Motion seeks to extend the automatic stay (the "**Automatic Stay**") under section 362(a) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") to Debtors' co-working interest owners Ecopetrol America, LLC, Ridgewood Katmai, LLC, and ILX Prospect Katmai, LLC (collectively, the "**WIOs**") in connection with *in rem* lawsuits filed on November 13, 2020 against the WIOs in the United States District Court for the Eastern District

of Louisiana by Atlantic Maritime Services LLC ("**Atlantic**").[2]  Atlantic's actions are, at best, an attempt to circumvent the Debtor's Automatic Stay and, at worst, a violation of the Automatic Stay.  This is precisely the situation where the Automatic Stay should be extended.

2.      The Lawsuits arise out of alleged payments that the Debtors owe Atlantic and seek to enforce Atlantic's alleged liens on certain offshore wells in the Gulf of Mexico and collect millions of dollars from the WIOs by sequestering and selling certain assets under the Louisiana Oil Well Lien Act (La. R.S. 9:4861 *et seq.*)  Each of Atlantic's liens were filed weeks before payment was due and without accounting for offsets and credits to which the Debtors are entitled. However, in light of Atlantic's pending Chapter 11 proceedings,[3] the Debtors cannot sue Atlantic to dispute the amounts owed.

3.      Importantly, the Debtors must indemnify the WIOs under joint operating agreements that Debtors have with the WIOs.  Thus, for all practical purposes, the claims in the Lawsuits are claims against the Debtors.

4.      Allowing the Lawsuits to be litigated will eviscerate the benefits of the Debtors' Automatic Stay because the Debtors will be forced to defend the Lawsuits.  Extending the Automatic Stay to the WIOs would relieve the Debtors' estates of the cost and expense of the indemnification of the WIOs at this very critical juncture in these chapter 11 cases, and alleviate the administrative burdens and costs associated with the Lawsuits while the Debtors' focus their efforts on administering their chapter 11 cases. In short, extension of the Automatic Stay here would afford the Debtors the necessary "breathing spell" intended by the Automatic Stay. The continuation of the

---

[2] The two lawsuits are as follows: Cause No. 2:20-cv-03097; *Atlantic Maritime Services, LLC v. Ecopetrol America, LLC* and Cause No. 2:20-cv-03099; *Atlantic Maritime Services, LLC v. Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC* (collectively, the "**Lawsuits**").

[3] Atlantic and its parent, Valaris PLC, filed for Chapter 11 bankruptcy protection in this Court on or about August 19, 2020.  *See* Cause No. 20-34114 (MI).

Lawsuits will not only distract the Debtors' senior management team during this critical time in the Debtors' reorganization efforts, it will require Debtors to pay the direct costs of discovery and potentially expose the Debtors to indemnification obligations owed to the WIOs. See Declaration of Mike Dane attached as **Exhibit 1**.

5.       The Lawsuits seek to bring an *in rem* action with respect to operating assets jointly owned by the Debtors and the WIO's.  Without the relief requested, the Debtors will be forced to participate in the Lawsuits or, worse, lose certain assets of the Debtors' estate, depriving the Debtors of one of the fundamental debtor protections provided by the Bankruptcy Code.

## Background

6.       On August 3 and 4, 2020, the Debtors each commenced in this Court a voluntary case under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.       The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

## Jurisdiction

8.       The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

9.      By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, to extend the Automatic Stay to the WIOs who have been sued in the Lawsuits.

10.     A proposed form of order granting the relief requested in this Motion is attached hereto as **Exhibit 2** (the "**Proposed Order**").

11.     In addition, the Proposed Order authorizes the Debtors to file a notice (the "**Stay Notice**") in the Lawsuits, advising the Eastern District of Louisiana that the Automatic Stay has been extended to cover the WIOs pursuant to an order of this Court. A proposed form of the Stay Notice is annexed to the Proposed Order as **Exhibit 3**.

## Relevant Facts

12.     Debtors are one of the largest producers of oil and gas in the Gulf of Mexico and hold interests in hundreds of offshore blocks covering some two million gross acres, including over 1,000 wells and nearly 500 operated platforms in the United States Gulf of Mexico.  As part of its operations, Debtors, as operator and on behalf of the WIOs, contracted with Atlantic in October 2018 to provide a drillship, the *Rowan Reliance*[4], to conduct operations on deepwater wells in the United States Gulf of Mexico.

13.     Debtors and Atlantic are parties to an October 26, 2018 Master Domestic Offshore Daywork Drilling Contract (the "**Contract**").  The Contract requires Atlantic to conduct its drilling operations in a safe, workmanlike manner and in accordance with Debtors' safety program and any and all applicable governmental regulations and laws:

---

[4] Debtors and Atlantic amended their October 2018 contract in November 2018 to substitute the drillship *Rowan Resolute* for the *Rowan Reliance*.

- Paragraph 305: [Atlantic] agrees to provide as [Atlantic's] Personnel only persons who are properly qualified, trained, and skilled to perform all material aspects of the jobs for which they are employed by [Atlantic].

- Paragraph 404: The Drilling Unit [i.e. the *Rowan Resolute*] and [Atlantic's] Items shall be provided by [Atlantic] in good and proper operating condition, as necessary to perform the work under this Contract and the applicable Drilling Order and in accordance with all applicable rules, regulations, and requirements of the Contract.

- Paragraph 501: [Atlantic] shall carry out all operations hereunder in a diligent manner and as a prudent drilling contractor on a daywork basis for a specified sum per day as set forth in Article VII and the applicable Drilling Order.

- Paragraph 503(b): [Atlantic] and [Atlantic's] Personnel shall comply with all applicable federal, state, and local laws, ordinances, rules, regulations and lease or contract provisions regarding pollution, safety and the environment.

- Paragraph 509: [Atlantic] shall maintain its blowout and well control equipment listed in Schedules A-1 and A-3 to each Drilling Order in good operating condition at all times and in compliance with all applicable rules and regulations, including, but not limited to API standards and recommendations, the rules and regulations of the BOE and shall use all reasonable means to control and prevent fires and blowouts and to protect the hole.

- Paragraph 1305(d):[Atlantic] shall institute and implement at all times a good, comprehensive safety and training program which complies with all federal, state and local laws, rules and regulations applicable to the work, services and operations contemplated in this Contract, and which further complies with reasonable and current industry recommendations on accident prevention, safe operating practices, and environmental protection.

- Section D.2.4 of Appendix "C[5]": [Atlantic] must comply with all applicable safety and environmental regulations, laws, rules and standards of agencies having jurisdiction at locations where work is conducted for [Fieldwood].

---

[5] Appendix C sets forth Debtors' "Safety and Environment Requirements."  Paragraph 503(d) of the Contract requires Atlantic to comply with Debtors' "Safety Program as set forth in Appendix 'C.'"

14.     Atlantic's failure to adhere to these provisions caused at least six separate incidents from February to June of 2020, which cost the Debtors and the WIOs approximately ten million dollars in addition to clear and undisputed offsets which are not reflected in Atlantic's invoices.

15.     To ensure Atlantic (and not Debtors or the WIOs) bears financial responsibility for its failure to meet contractual obligations regarding workmanship, safety, and compliance with applicable governmental regulations and laws, the Contract allows Debtors to "withhold, from payments due [Atlantic] under this Contract and any applicable Drilling Order, any amounts owing to [Debtors] by [Atlantic] hereunder and/or any applicable Drilling Order." (Contract, ⁋ 802.) But even if Debtors pay an invoice in full, it can still dispute its amount at a later time.  (*Id.* at ⁋ 916) ("Payment of any invoice provided to [Debtors] by [Atlantic] . . . shall not prejudice the right of [Debtors] to question the correctness of any charges herein.").

16.     As part of this process, the Contract, in numerous provisions, authorizes Debtors to audit Atlantic's charges:

- Paragraph 507: [Atlantic] shall each day keep and furnish to [Debtors'] Representative two (2) signed copies of daily drilling reports in detail on standard IADC-API Daily Drilling Report Forms, or other equivalent form acceptable to [Debtors].  This report shall specifically include details of time breakdown on all operations and a clear description of all operations.

- Paragraph 1304: For a period of two (2) years from the end of [Debtors'] accounting year in which the work, services, or operations under any applicable Drilling Order are terminated or completed, [Atlantic] shall keep proper books, records, and accounts of work, services or operations under each Drilling Order and shall permit [Debtors] to inspect such records at all reasonable times at [Atlantic's] premises where such records are normally kept for the purpose of determining rates hereunder or charges for reimbursable items.

17.     Atlantic failed to adhere to this framework and filed its liens weeks before payment was due, before Debtors could conduct a contractually authorized audit of Atlantic's charges, and less than three weeks before the Debtors filed for bankruptcy protection.   Furthermore, Atlantic

filed the Lawsuits on November 13, 2020 in an attempt to circumvent the Debtors' Automatic Stay and recover monies to which it is not entitled.

18.     Section 5.4 of the Debtors' joint operating agreements with the WIOs requires Debtors to "endeavor to keep the Lease, wells, Platforms, Development Facilities, and other equipment free from all liens and other encumbrances occasioned by operations hereunder[.]" To that end, Section 22.1 obligates Debtors to hold the WIOs "harmless from liens and encumbrances on the Leases or in the Contract Area arising as a result of [Debtors] acts or omissions."

19.     By filing the Lawsuits, Atlantic has already affected the Debtors' ability to conduct their bankruptcy.  The Debtors have been forced to divert their focus from the bankruptcy proceedings and negotiations to the defense of the WIOs under the terms of the joint operating agreements.  Negotiations with parties-in-interest have been disrupted and cash flow to the bankruptcy estate may be impaired as parties have been forced to react to the specter of similar suits.  Indeed, some working interest owners have already decided it best to limit operational expenditures as the threat of lawsuits and sequestration evolves.  Notably, the Lawsuits may have been brought under inapplicable Louisiana statute, because the Bureau of Ocean Energy Management classifies certain of the blocks in question as "Alabama [Coastal Zone Management] Blocks," notwithstanding their proximity to Louisiana.[6]

## The Relief Requested Should Be Granted

**A.    The Court Should Extend The Automatic Stay To The WIOs.**

20.     The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Halo Wireless, Inc. v. Alenco Commc'ns, Inc. (In re Halo Wireless, Inc.)*, 684

---

[6]     Bureau of Ocean Energy Management's Coastal Zone Management (CZM) – OCS Plans map, https://www.arcgis.com/apps/webappviewer/index.html?id=d076142fda2d46b69f2d6727705fcbb2.

F.3d 581, 586 (5th Cir. 2012) (internal quotations omitted); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). Its purpose is to "give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." *Commonwealth Oil Refin. Co. v. U.S. Envtl. Prot. Agency* (*In re Commonwealth Oil Refin. Co., Inc.*), 805 F.2d 1175, 1182 (5th Cir. 1986) (citations omitted).

21.    The legislative history of section 362 indicates that Congress intended for the scope of the Automatic Stay to be sweeping, in order to effect its protective purpose on behalf of debtors:

> The automatic stay is one of the most important protections provided by the Bankruptcy laws. Nevertheless, the Bankruptcy Courts must have the power to enjoin actions not covered by the automatic stay, in order that the bankruptcy case may proceed unembarrassed by multiple litigation
>
> …
>
> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*See* H.R. Rep. No. 95-595, at 12, 340 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 5973, 629697; S. Rep. No. 95-989, at 49, 55-56 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41.

22.    The Court may stay proceedings against the WIOs when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs., Inc. v Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (internal quotation marks omitted); *see Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001) (adopting exception from *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), to general rule that automatic stay does not shield non-debtor parties); *Feld v. Zale Corp.*

*(In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995) (holding that a court may enjoin a pending suit where "the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor . . . ."); *see also In re HSM Kennewick, L.P.*, 347 B.R. 569, 571 (Bankr. N.D. Tex. 2006) ("Section 362(a)(3) implements a stay of any action, whether against the debtor or third parties, that seeks to obtain or exercise control over the property of the debtor."); *Trimec, Inc. v. Zale Corp.,* 150 B.R. 685, 687 (N.D. Ill. 1993) (automatic stay extended to include non-debtor members of a joint venture).

23.     The Fifth Circuit has recognized that the Automatic Stay should be extended "when there is a formal or contractual relationship between the debtor and nondebtors such that a judgment against one would in effect be a judgment against the other." *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010); *Nat'l Oilwell Varco, L.P. v. Mud King Prods., Inc.*, No. 4:12-3120, 2013 U.S. Dist. LEXIS 66152, at *18 (S.D. Tex. May 9, 2013) (extending the automatic stay to debtors' officers because "the Amended Bylaws may create potential corporate indemnity obligations to one or more of the [debtors' officers] by virtue of a formal indemnity relationship."); *see also Am. Honda Fin. Corp. v. Salyer*, No. 3:03-cv-651, 2007 U.S. Dist. LEXIS 29035, at *8 (S.D. Miss. Apr. 18, 2007) ("Fifth Circuit precedent . . . allows a court to extend the automatic stay provision of 11 U.S.C. § 362 by applying the 'identity of interest' exception in cases in which a contractual indemnification agreement exists between a debtor and non-debtor defendant.").

24.     Here, the WIOs have the right of indemnification against the Debtors.  Specifically, Section 22.1 of Debtors' operating agreements with the WIOs requires Debtors to hold WIOs "harmless from liens and encumbrances on the Leases or in the Contract Area arising as a result of [Debtors[ acts or omissions."

25.      The WIOs thus are indemnified for payments that they make for costs, expenses, fees, and liabilities to which they may be subjected in the Lawsuits.  This indemnification renders any judgment paid by the WIOs as a payment by the Debtors. Under these circumstances, declining to apply the Automatic Stay to the WIOs, who are indemnified by the Debtors, "would defeat the very purpose and intent of the statute" intended to provide the Debtors with repose from litigation and its associated costs and distractions. *See A.H. Robins Co.*, 788 F.2d at 999.[7]

26.      Indeed, unless the stay is extended, the Debtors would immediately lose repose and need to turn to immediate litigation to dispute the claim amount.  Moreover, if the WIOs respond to Atlantic's threats by paying the claim, that would effectively give Atlantic priority in the bankruptcy that it would otherwise lack in the bankruptcy itself, where it would be subject to Title 11's priority scheme and payment would not occur until after the plan is confirmed.  Atlantic is thus seeking to circumvent the orderly bankruptcy process and recover a disputed claim against the Debtors in full, right now, simply by demanding the money from a third party that the Debtors themselves must fully indemnify and which have the ability to withhold payment to the Debtors to secure their claim.  This Court should not countenance that effort.

---

[7] Many other courts also recognize the existence of indemnification as a proper basis to extend an automatic stay. *See Lomas Fin. Corp. v. N. Tr. Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (affirming bankruptcy court decision and extending stay to non-debtor defendant, where "corporate charter contain[ed] an indemnification clause, obligating [debtor] to indemnify its officers for all legal claims arising out of acts performed in their capacity as [ ] officers"); *Dunnam v. Sportsstuff, Inc.*, No. 3:07-cv-322, 2008 U.S. Dist. LEXIS 4821, at *8 (E.D. Va. Jan. 23, 2008) (staying action against non-debtor codefendant where "any judgment against [non-debtor] . . . would inevitably fall within the parameters of the indemnity agreement" with debtor); *Midkiff v. Lowe's Home Ctrs., Inc.*, No. 4:07-cv-00017, 2007 U.S. Dist. LEXIS 54717, at *6 (W.D. Va. July 30, 2007) ("The automatic stay applies to [plaintiff] because her claim is directed at a third party [defendant] which will ultimately be indemnified by the debtor."); *N. Star Contracting Corp. v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370-71 (S.D.N.Y. 1991) ("[C]ourts have recognized that an identity of interest exists between a debtor and a third party non-debtor when a right to indemnification exists. These courts reason that a special circumstance exists because a judgement against the non-debtor will affect directly the debtor's assets."); *In re Jefferson County*, 491 B.R. 277, 289–90 (Bankr. N.D. Ala. 2013) (finding "identify of interests" and extending stay, where, *inter alia*, non-debtor had contract-based indemnification claims against debtor); *Maxicare Health Plans, Inc. v. Centinela Mammoth Hosp. (In re Family Health Servs., Inc.)*, 105 B.R. 937, 942 (Bankr. C.D. Cal. 1989) ("A judgment against a non-debtor defendant will trigger a claim against the debtor for indemnification, thus, the debtor is the 'real party defendant.'").

27.     Separate from the Debtors' indemnity obligations to the WIOs, the relief Atlantic seeks in the Lawsuits – to enforce liens and collect proceeds from the sale of hydrocarbons produced from wells in which the Debtors and WIOs hold ownership interests – is exactly the type of conduct that violates the Automatic Stay.  *See* 11 U.S.C. § 362(a)(3)-(5).  Put simply, the Debtors and WIOs hold an undivided interest in the hydrocarbons that are produced from the wells in which Atlantic seeks to enforce its liens.[8]   As such, the Court could sanction Atlantic for its actions.  Debtors, however, do not seek that relief.  Rather, Debtors merely request that the Court extend the Automatic Stay to the WIOs.

**B.     The Court Should Exercise Its Broad Powers To Stay The Lawsuits.**

28.     The Debtors further submit that the relief requested herein is necessary and appropriate and is authorized under section 105(a) of the Bankruptcy Code pursuant to broad equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the Debtors' assets.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 496-97 (Bankr. N.D. Tex. 2002) (recognizing the "doctrine of necessity"); *see also Ferrante v. Young (In re Young)*, 416 F. App'x 392, 398 (5th Cir. 2011) (recognizing that "[s]ection 105(a) of Title 11 permits the bankruptcy court to exercise broad authority"); *Trevino v. Select Portfolio Servicing, Inc. (In re Trevino)*, 599 B.R. 526, 542-43 (Bankr. S.D. Tex. 2019) (noting that the bankruptcy court has "broad authority" under section 105(a) of the Bankruptcy Code); *Padilla v. Wells Fargo Home Mortg. (In re Padilla)*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007) (citations omitted) ("Section 105(a) gives bankruptcy courts broad authority to take actions necessary and appropriate for

---

[8] Atlantic appears to acknowledge this point in the Lawsuits, but attempts to justify its actions by stating, "it does not seek to seize any of the Subject Interests to the extent such Subject Interests are commingled with property of the Operator [i.e. Debtors] and the seizure thereof would potentially violate the automatic stay in the Operator's Bankruptcy Case."  Whether such a statement exonerates Atlantic, however, is up to the Court.

administering and enforcing the Bankruptcy Code and . . . 'authorizes a bankruptcy court to fashion

such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy

Code.'").

29.     Section 105(a) provides bankruptcy courts with broad authority to stay actions that

are not directly subject to the Automatic Stay:

> *The court has ample . . . powers to stay actions not covered by the automatic stay*.
> Section 105 . . . grants the power to issue orders necessary or appropriate to carry
> out the provisions of title 11. The district court and the bankruptcy court as its
> adjunct have all the traditional injunctive powers of a court of equity.

S. Rep. No. 95-989, at 51; H. Rep. No. 95-595, at 341-42 (emphasis added); *see also* H. Rep. No.

95-595, at 342-43; S. Rep. No. 95-989, at 51-52 (the effect of an exception to the Automatic Stay

under section 362(b) is not to make the action immune from injunction, and the court has power,

under section 105, to stay actions not covered by the Automatic Stay).

30.     Granting the relief requested herein is justified under section 105(a) of the

Bankruptcy Code and fully consistent with the terms of the relevant Bankruptcy Code provisions.

Indeed, the Fifth Circuit has stated that "beyond the automatic stay provisions of section 362(a)(1)

and (3), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary

powers embodied in 11 U.S.C. § 105." *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I.

Acquisition, Inc.)*, 817 F.2d 1142, 1146 n.3 (5th Cir. 1987). The Fifth Circuit went on to state that

"[s]ection 105 does empower the bankruptcy court to stay proceedings against nonbankrupt entities."

*Id*.

### Basis For Emergency Relief

31.     The Debtors respectfully request emergency consideration of this Motion in

accordance with Bankruptcy Local Rule 9013-1(i). The Debtors believe that the relief requested

in this Motion is critical to avoid the Debtors having to expend unnecessary costs and expenses related to the Lawsuits, preserve the resources of the Debtors' estates, and maintain the viability of the Debtors' operations and negotiations during this critical stage of these chapter 11 cases. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this motion on an emergency basis.

**Reservation Of Rights**

32.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable non-bankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (vi) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

33.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d), including Atlantic's counsel.

**No Previous Request**

34.     Debtors have not made a previous request for the relief sought in this Motion in any court.

14

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 20, 2020
      Houston, Texas

                                 */s/  Alfredo R. Pérez*
                                 WEIL, GOTSHAL & MANGES LLP
                                 Alfredo R. Pérez (15776275)
                                 700 Louisiana Street, Suite 1700
                                 Houston, Texas 77002
                                 Telephone:  (713) 546-5000
                                 Facsimile:  (713) 224-9511
                                 Email:   Alfredo.Perez@weil.com

                                 -and-

                                 WEIL, GOTSHAL & MANGES LLP
                                 Matthew S. Barr (admitted *pro hac vice*)
                                 Jessica Liou (admitted *pro hac vice*)
                                 767 Fifth Avenue
                                 New York, New York 10153
                                 Telephone:  (212) 310-8000
                                 Facsimile:  (212) 310-8007
                                 Email:   Matt.Barr@weil.com
                                            Jessica.Liou@weil.com

                                 -and-

                                 JONES WALKER, LLP
                                 Joseph E. Bain (24085187)
                                 Email: jbain@joneswalker.com
                                 Joshua A. Norris (24027577)
                                 Email: jnorris@joneswalker.com
                                 James W. Noe (24040178)
                                 Email: jnoe@joneswalker.com
                                 Daniel J. Baldwin (24078184)
                                 Email: dbaldwin@joneswalker.com
                                 811 Main St., Suite 2900
                                 Houston, TX 77002
                                 Telephone: 713.437.1800
                                 Facsimile:  713.437.1810

                                 *Attorneys for Debtors*
                                 *and Debtors in Possession*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>/s/ Alfredo R. Pérez</u>
Alfredo R. Pérez