# Exhibit 1

## Michael T. Dane Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | |
| | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | |
| | § | |
| | § | (Jointly Administered) |

## DECLARATION OF MICHAEL T. DANE IN SUPPORT OF EMERGENCY MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER EXTENDING THE AUTOMATIC STAY TO CERTAIN OF DEBTORS' CO-WORKING INTEREST OWNERS

I, Michael T. Dane, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am Senior Vice President and Chief Financial Officer of Fieldwood Energy LLC. I submit this declaration (this "**Declaration**") on behalf of the above captioned debtors and debtors in possession (the "**Debtors**") in support of *Emergency Motion Of The Debtors For Entry Of An Order Extending the Automatic Stay To Certain Of Debtors' Co-Working Interest Owners* (the "**Motion**").[2]

2. Unless otherwise indicated, all facts set forth in this Declaration are based upon: (a) my personal knowledge of the Debtors' operations; (b) information learned from my

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Motion.

1

review of relevant documents and information concerning the Debtors' operations; and/or (c) my opinions based upon my experience and knowledge.

3. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify as to the facts set forth herein.

4. Debtors are one of the largest producers of oil and gas in the Gulf of Mexico and hold interests in hundreds of offshore blocks covering some two million gross acres, including over 1,000 wells and nearly 500 operated platforms in the United States Gulf of Mexico. To share the cost of developing these interests, Debtors entered into operating agreements with several co-working interest owners, including, as relevant here, Ecopetrol America, LLC, Ridgewood Katmai, LLC, and ILX Prospect Katmai, LLC (collectively, the "**WIOs**"). True and correct copies of excerpts of Debtors' operating agreements with the WIOs are attached as **Exhibit A**.

5. Section 5.4 of the Debtors' operating agreements with the WIOs requires Debtors to, among other things, "endeavor to keep the Lease, wells, Platforms, Development Facilities, and other equipment free from all liens and other encumbrances occasioned by operations hereunder[.]" To that end, Section 22.1 of those same operating agreements obligates Debtors to hold the WIOs "harmless from liens and encumbrances on the Leases or in the Contract Area arising as a result of [Debtors'] acts or omissions."

6. Each operating agreement also names Debtors as operator. In that capacity, Debtors, on behalf of the WIOs, contracted with Atlantic Maritime Services LLC ("**Atlantic**") in October 2018 to provide a drillship, the *Rowan Reliance*[3], to conduct operations on deepwater wells in the United States Gulf of Mexico. A true and correct copy of the Debtors' October 26,

---

[3] Debtors and Atlantic amended their October 2018 contract in November 2018 to substitute the drillship *Rowan Resolute* for the *Rowan Reliance*.

2

2018 Master Domestic Offshore Daywork Drilling Contract with Atlantic (the "**Contract**") is attached as **Exhibit B**.

7. Between February and June of 2020, Atlantic caused at least six separate incidents, which cost the Debtors and WIOs approximately ten million dollars. Those incidents violated numerous provisions of the Contract, which requires Atlantic to conduct its drilling operations in a safe, workmanlike manner and in accordance with Debtors' safety program and any and all applicable governmental regulations and laws:

- Paragraph 305: [Atlantic] agrees to provide as [Atlantic's] Personnel only persons who are properly qualified, trained, and skilled to perform all material aspects of the jobs for which they are employed by [Atlantic].

- Paragraph 404: The Drilling Unit [i.e. the *Rowan Resolute*] and [Atlantic's] Items shall be provided by [Atlantic] in good and proper operating condition, as necessary to perform the work under this Contract and the applicable Drilling Order and in accordance with all applicable rules, regulations, and requirements of the Contract.

- Paragraph 501: [Atlantic] shall carry out all operations hereunder in a diligent manner and as a prudent drilling contractor on a daywork basis for a specified sum per day as set forth in Article VII and the applicable Drilling Order.

- Paragraph 503(b): [Atlantic] and [Atlantic's] Personnel shall comply with all applicable federal, state, and local laws, ordinances, rules, regulations and lease or contract provisions regarding pollution, safety and the environment.

- Paragraph 509: [Atlantic] shall maintain its blowout and well control equipment listed in Schedules A-1 and A-3 to each Drilling Order in good operating condition at all times and in compliance with all applicable rules and regulations, including, but not limited to API standards and recommendations, the rules and regulations of the BOE and shall use all reasonable means to control and prevent fires and blowouts and to protect the hole.

- Paragraph 1305(d):[Atlantic] shall institute and implement at all times a good, comprehensive safety and training program which complies with all federal, state and local laws, rules and regulations applicable to the work, services and operations contemplated in this Contract, and which further

3

complies with reasonable and current industry recommendations on accident prevention, safe operating practices, and environmental protection.

- Section D.2.4 of Appendix "C[4]": [Atlantic] must comply with all applicable safety and environmental regulations, laws, rules and standards of agencies having jurisdiction at locations where work is conducted for [Fieldwood].

8. To ensure Atlantic (and not Debtors or the WIOs) bears financial responsibility for its failure to meet contractual obligations regarding workmanship, safety, and compliance with applicable governmental regulations and laws, the Contract allows Debtors to "withhold, from payments due [Atlantic] under this Contract and any applicable Drilling Order, any amounts owing to [Debtors] by [Atlantic] hereunder and/or any applicable Drilling Order." But even if Debtors pay an invoice in full, it can still dispute its amount at a later time. Paragraph 916 of the Contract provides that "[p]ayment of any invoice provided to [Debtors] by [Atlantic] . . . shall not prejudice the right of [Debtors] to question the correctness of any charges herein."

9. As part of this process, the Contract, in numerous provisions, authorizes Debtors to audit Atlantic's charges:

- Paragraph 507: [Atlantic] shall each day keep and furnish to [Debtors'] Representative two (2) signed copies of daily drilling reports in detail on standard IADC-API Daily Drilling Report Forms, or other equivalent form acceptable to [Debtors]. This report shall specifically include details of time breakdown on all operations and a clear description of all operations.

- Paragraph 1304: For a period of two (2) years from the end of [Debtors'] accounting year in which the work, services, or operations under any applicable Drilling Order are terminated or completed, [Atlantic] shall keep proper books, records, and accounts of work, services or operations under each Drilling Order and shall permit [Debtors] to inspect such records at all reasonable times at [Atlantic's] premises where such records are normally kept for the purpose of determining rates hereunder or charges for reimbursable items.

---

[4] Appendix C sets forth Debtors' "Safety and Environment Requirements." Paragraph 503(d) of the Contract requires Atlantic to comply with Debtors' "Safety Program as set forth in Appendix 'C.'"

10. Atlantic failed to adhere to this framework and filed liens on certain wells in which Debtors and the WIOs have an interest, weeks before payment was due, before Debtors could conduct a contractually authorized audit of Atlantic's charges, and less than three weeks before the Debtors filed for bankruptcy protection. Then, on November 13, 2020, Atlantic filed two *in rem* lawsuits in the United States District for the Eastern District of Louisiana against the WIOs[5] to enforce Atlantic's liens collect millions of dollars from the WIOs under the Louisiana Oil Well Lien Act (La. R.S. 9:4861 *et seq.*) arising out of alleged payments that the Debtors owe Atlantic. True and correct copies of the publicly available complaints in these lawsuits are attached as **Exhibit C**. Because of the Debtors' obligations in its operating agreements to hold the WIOs harmless from such liens and lawsuits, I anticipate that the WIOs will look to the Debtors' for indemnity from Atlantic's claims.

11. The amount of Atlantic's liens, however, do not account for offsets and credits to which the Debtors are entitled.

12. By filing the Lawsuits, Atlantic has already affected the Debtors' ability to conduct their bankruptcy. The Debtors have been forced to divert their focus from the bankruptcy proceedings and negotiations to the defense of the WIOs under the terms of the joint operating agreements. Negotiations with parties-in-interest have been disrupted and cash flow to the bankruptcy estate will slow as parties have been forced to react to the specter of similar suits. Indeed, some working interest owners have already decided it is in their best interest to limit operational expenditures as the threat of lawsuits and sequestration evolves.

---

[5] Cause No. 2:20-cv-03097; *Atlantic Maritime Services, LLC v. Ecopetrol America, LLC* and Cause No. 2:20-cv-03099; *Atlantic Maritime Services, LLC v. Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC.*

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 20th, 2020
         Houston, Texas

*/s/ Michael T. Dane*_____
Michael T. Dane
Senior Vice President and Chief Financial Officer
Fieldwood Energy, LLC