## **Exhibit 9**

# St. Bernard Parish Certified Copy

**Randy S. Nunez**
**Clerk of Court**
St. Bernard Parish Courthouse
Chalmette, LA 70044
(504) 271-3434

**Received From :**
SHER GARNER
909 POYDRAS STREET
SUITE 2800
NEW ORLEANS, LA 70112

### First MORTGAGOR

| FIELDWOOD ENERGY LLC |
|---|

### First MORTGAGEE

| ATLANTIC MARITIME SERVICES LLC |
|---|

**Index Type :**  MORTGAGES

**Type of Document :** LIEN

**File Number :** 633559

**Book :** 1946    **Page :** 297

**Recording Pages :**   14

**Description :**  PROPERTY: MISSISSIPPI CANYON BLOCK 519 LEASE NO OCS-G-27278 AND WELL #3

### Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for St. Bernard Parish, Louisiana.

On (Recorded Date) : 07/23/2020

At (Recorded Time) : 1:56:11PM

Doc ID - 008078340014

CLERK OF COURT
RANDY S. NUNEZ
Parish of St. Bernard
I certify that this is a true copy of the attached document that was filed for registry and
Recorded 07/23/2020 at 1:56:11
Recorded in Book 1946  Page 297
File Number  633559

Deputy Clerk
/S/Cheyenne Robin

**Return To :**
SHER GARNER
909 POYDRAS STREET
SUITE 2800
NEW ORLEANS, LA 70112

(Mississippi Canyon 519 #3)

## STATEMENT OF PRIVILEGE

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified for the County of Harris, State of Texas, personally came and appeared:

**ATLANTIC MARITIME SERVICES LLC**, a Delaware limited liability company ("Claimant")

who states that it has a claim, lien and privilege pursuant to La. R.S. 9:4861 et seq., as follows:

1) Name and Address of Claimant:

   Atlantic Maritime Services LLC
   5847 San Felipe, Suite 3300
   Houston, TX 77057

2) Nature and amount of the obligation for which Claimant's privilege is claimed:

   Labor, materials, services and related supplies and expenses, in connection with offshore drilling services under a contract between Claimant and the Operator for the Well (as defined in Section 5 below) in the amount of **$5,528.25** plus contractually owed interest at the rate of 10 percent per annum, and contractually owed attorneys' fees and expenses (collectively, the "Obligations"). The Obligations include, but are not limited to obligations owed to Claimant (a) as a contractor for the price of its contract with Operator for operations with respect to the Well; and (b) as a seller for the price of movables sold to Operator that are incorporated in the Well or in a facility located on the well site; consumed in operations; and/or consumed at the site of the Well by a person performing labor or services on the site of the Well located in the waters of the State of Louisiana. Invoices evidencing the Obligations are attached hereto. The date of the last activity giving rise to Claimant's privilege set forth in this Statement of Privilege is April 5, 2020.

3) Name and address of the person owing the amount for which Claimant's privilege is claimed:

   Fieldwood Energy LLC
   2000 W. Sam Houston Parkway South, Suite 1200
   Houston, TX 77042

4) Name and address of the operator of the well as shown by the records of the Commission of Conservation:

1

Not applicable as this well is located on the Outer Continental Shelf; however, the Operator of the Well is as follows:

Fieldwood Energy LLC
2000 W. Sam Houston Parkway South, Suite 1200
Houston, TX 77042

5) Description of the Operating Interest Upon Which the Privilege is Claimed, or of the Well with Respect to Which the Operations Giving Rise to Claimant's Privilege were Performed:

The privilege is claimed upon the operating interest of Fieldwood Energy LLC in **Mississippi Canyon Block 519, Lease No. OCS-G-27278** (the "Lease"), and **Well #3 (OCS-G-27278)** drilled by Claimant on behalf of Fieldwood Energy LLC during the time from January 29, 2020, until April 5, 2020 (the "Well"), including the operating interest under which the operations giving rise to the Claimant's privilege are conducted together with the interest of the lessee and/or operator of such interest in any (a) well, building, tank, leasehold pipeline, and other construction or facility on the well site; (b) movable on the well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use; (c) tract of land, servitude, and lease described in La. R.S. 9:4861(12)(c) covering the well site of the operating interest; (d) drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the Claimant's privilege emanate; (e) the interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege; and (f) the proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

This Statement of Privilege is made by Claimant for the purpose of preserving its claim, lien and privilege as a provider of materials, labor and services for and to the Operator and Well described above, including, without limitation, all claims, liens and privileges under La. R.S. 9:4861 et seq., and all claims for interest due on the obligations, along with the cost of preparing and filing this Statement of Privilege, and attorneys' fees and costs, to the fullest extent permitted by applicable law.

[ remainder of page intentionally blank - signature follows on next page ]

Date: July 23, 2020

NEAL J. KLING, (#22489)
**SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.**
909 Poydras Street, 27th Floor
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**MANDATARY AND ATTORNEYS FOR ATLANTIC MARITIME SERVICES LLC**, a Delaware limited liability company

Sworn to and subscribed before me, Notary Public, this 23rd day of July 2020.

Chad P. Morrow, Notary Public
Notary/Bar Roll No. 28695
My Commission Expires: at death

CHAD P. MORROW
NOTARY PUBLIC
BAR NO. 28695
PARISH OF JEFFERSON, STATE OF LOU
MY COMMISSION IS FOR LIFE

3



**VALARIS**

Atlantic Maritime Service LLC
5847 San Felipe, Suite 3500
Houston, TX 77057
Phone: (281) 809-0377

# INVOICE

TO: FIELDWOOD ENERGY LLC
2000 W.SAM HOUSTON PARKWAY SOUTH
SUITE 1200
HOUSTON, TX 77042
ATTN: ACCOUNTS PAYABLE

INVOICE NO: FWD2007276
INVOICE DATE: 07/20/20
CUSTOMER NUMBER: 1348
PAYMENT TERM **45 DAYS**
RIG: Resolute

WELL NUMBER MC-519 #3

AFE #: FW191019

TO INVOICE FOR EXPENSES PAID ON YOUR BEHALF FOR THE RIG LISTED ABOVE AS PER ATTACHED INVOICES

| | | |
|---|---|---|
| ███████████████████████████ | $ | 5,265.00 |
| Handling Charges @ 5%(601) | $ | 263.25 |
| **AMOUNT DUE:** | **$** | **5,528.25** |

Rig Manager's Approval: _____

REMIT ACH PAYMENTS TO:
eneficiary: Atlantic Maritime Service LLC
/ells Fargo Bank, N.A.
an Fransisco, CA
WIFT Code: ███████
BA ███████
ccount ███████

| | | |
|---|---|---|
| $ | (5,265.00) | 024000.10417.4202.110 |
| $ | (263.25) | 810510.10417.4202.110 |
| $ | (5,265.00) | 810650.10417.4202.110 |
| $ | 5,265.00 | 919250-10417.4202.110 |

ED

**VALARIS**

Favorites   Main Menu   Purchasing   Purchase Orders   Review PO Information   Purchase Orders   Activity Summary

Home   Worklist   Add to Favorites   Sign out

## Activity Summary

| | |
|---|---|
| Business Unit: | 10013 |
| Purchase Order: | 0000439741 |
| Merchandise Amount: | 40,610.00 USD |
| Merchandise Receipt: | 40,510.00 USD |
| Merchandise Returned: | 0.00 USD |
| Merchandise Invoice: | 35,245.00 USD |
| Merchandise Matched: | 35,246.00 USD |
| PO Status: | Dispatched |
| Vendor: | SMITH INTERNATIONAL |

### Lines

Details | Receipt | Invoice | Matched | RTV

Personalize | Find | View All | First 1-4 of 4 Last

| Line▲ | Item | Item Description | UOM | Quantity Invoiced | Amount Only | Amt Invoiced | Currency Code | Un-Invoiced Quantity | Un-Invoiced Amount | Currency |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 66250PR3OLPS | SERVICE-ONSHORE DRILL PIPE RAN | EA | 5.0000 | ☐ | 1,075.000 | USD | 0.0000 | 0.000 | USD |
| 2 | 66250PR3CRVL | SERVICE-ONSHORE DRILL PIPE RAN | EA | 84.0000 | ☐ | 5,460.000 | USD | 81.0000 | 5,265.000 | USD |
| 3 | 66250PR3DFCL | SERVICE-ONSHORE DRILL PIPE RAN | EA | 165.0000 | ☐ | 5,775.000 | USD | 0.0000 | 0.000 | USD |
| 4 | 66250PR3C5F1 | INSPECTION-ONSHORE DRILL PIPE, | EA | 165.0000 | ☐ | 22,935.000 | USD | 0.0000 | 0.000 | USD |

Return to Search   Notify

VALARIS

Purchase Order Inquiry

## Distributions for Schedule 1

| PO ID: | C02D433741 | Line: | 2 | Sched: | 1 | Item: | 6625DPR3CRVL   SERVICE-ONSHORE,DRILL PIPE,RANGE 3,6-5/8 IN OD,SCALE REMOVAL |

Status: Active  
Distribute By: Quantity

Sched Qty: 165.0000  
Merchandise Amount: 10,725.00 USD  
Doc. Base Amount: 10,725.00 USD

### Distributions

**Chartfields | Details/Tax | Asset Information | Req Detail**

| Dist | Status | Percent | PO Qty | Merchandise Amt |
|---|---|---|---|---|
| 1 | Open | 100.0000 | 165.0000 | 10,725.00 USD |

| GL Unit | Account | Oper Unit | Fund | Dept | Program | Class | Bud Ref | Product | PC Bus Unit | Project | Activity | Source Type | Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10417 | 1024000 | 110 | | 4202 | | | | | | | | | |

# EnscoRowan

**Ship To:** EnscoRowan 202 RESOLUTE C/O FIELDWOOD ENERGY LLC
C-PORT 2
180 1ST STREET
GOLDEN MEADOW LA 70357
USA

**EnscoRowan Field Requisition**

Business Unit: 10013    OPEN
Req ID: 0000223066
Date: 07/09/2019
Page: 1

**Attention:**

REQ Type: ONSHORE REPAIR

PURCHASING USE ONLY

| ITEM | QTY | GL ACCT Item ID | UOM | DESCRIPTION | COST | AFE CATEGORY | CRIT RATING | PRICE | VENDOR, LOCATION, CONFIRM TO | PO NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 024000 | EA | REPAIR-ONSHORE,DRILL PIPE,RANGE 3,6-5/8 IN OD,DS-1 CAT V | 40,510.00 40,510.00 | 21 - 21-DRILLS | C | | | |

Line Item Exempt: N

Available Sustitutes:    Item Desc:

ECCN NO:    HTS NO:    UNSPSC NO:

<< **User Comments: FIELDWOOD RE-BILL FOR REPAIR OF 165-JTS OF 6-5/8 IN 56.95#/9334.703 WALL V-150 R3 SUPER SLIP DP WITH 6-5/8" FH CONNECTIONS >>

**Total Requisition Amount:** 40,510.00

AFE: FW191019
Lease: MC 519 #3
Project Type: Drlg, Genovesa
Engineer: B. Bullock
Routing #:

NOTE: Operator hereby authorizes ENSCO reimbursement of all items ordered above.

List all Field ETRR No. by Item

_____    _____
Operator (Print)

_____    _____
Rep Signature

_____    _____
Rep Name (Print)

ROWAN RESOLUTE
MASTER/OIM    07/09/2019
R4202 [signature]
OIM    DATE

RIG MGR / OPERATIONS MGR    DATE

NOTE: Any additions or deletions must be initialed.

HAS FIELD REQUISITION BEEN FAXED TO RIG MANAGER / OPERATIONS MANAGER YES:

PURCHASING ONLY FR NO: 0000223066

_____
BUYER    DATE

DATE FAXED:

Customer Quote Register - 4831

Page 1 of 6



# DRILCO                 CUSTOMER QUOTE

Quote #
15543

To: Rowan DrilEng - Resolute
Rig: Resolute
Rep: Brian Rodgers 713-968-6868

License #: 7-1-0887
From: Raymond Bradberry
Name: DRILCO-Port Fourchon
Address: 180 1st Street, C-Port 2, Slip 2
City: Port Fourchon
State, ZIP: LA, 70357
Phone: 1-985-396-4100
Fax: 1-985-396-4163

Date: 7/8/2019
Reference Number:
Rev:
Work Order: J1008429
Manifest Number:

| Item | QTY | UOM | Description | Locator | Unit List Price | Insp. / Rep. | Total Cost |
|---|---|---|---|---|---|---|---|
| 1 | | | | Select... | | Select... | |
| 2 | 5 | hrs | | PF-DRILCC | $215.00 | Handling | $1,075 |
| 3 | 165 | ea | | PF-DRILCC | $65.00 | Inspection | $10,725 |
| 4 | 165 | ea | | PF-DRILCC | $35.00 | Inspection | $5,775 |
| 5 | 165 | ea | | PF-DRILCC | $95.00 | Inspection | $16,335 |
| 6 | 165 | ea | | PF-DRILCC | $20.00 | Inspection | $3,300 |
| 7 | 165 | ea | | PF-DRILCC | $20.00 | Inspection | $3,300 |

Insert Item

Notes:
**Prices may increase if hardband overlay is rejected for any reason and complete repair is needed. Customer will be notified before process begins.
**If any damages are not taken out by Reface then a Recut will apply. Any Repairs / Inspections above and beyond this quote will be additional.

Thank you for the opportunity to quote this service and we look forward to being of service to you in the future.

J1008429 - Inspection on 165 Jts of 6.625in 56.95# SSDP

Repair Total: $0
Inspection Total: $39,435
Grand Total: $40,510.00

Submit    Cancel

Customer Quote Register - 4831

**THE FOLLOWING GENERAL TERMS AND CONDITIONS CONTAIN INDEMNITY AND CHOICE OF LAW PROVISIONS - PLEASE READ CAREFULLY.**

1. **Acceptance.** By requesting services, equipment, products or rentals thereof from Smith International, Inc., Customer voluntarily elects to enter into and be bound by these General Terms and Conditions for any Order accepted by Smith International, Inc.
2. **Definitions.**
   a. "Smith", "Smith Bits" and/or "Smith Services" refers to Smith International, Inc.
   b. "Customer" refers to the person, firm or other entity to which services, equipment products or rentals are supplied or provided.
   c. "Group" refers to either Smith or Customer and its respective co-interest owners, joint venturers, and its and their parents, affiliates, subsidiaries, and each of their respective officers, directors, contractors, subcontractors, consultants, agents, employees and invitees.
   d. "Claims" means all claims, losses, damages (including, but not limited to special, punitive, exemplary, general, compensatory, direct, indirect, incidental, or consequential damages), demands, causes of action, suits, proceeding, fines, penalties, taxes, judgments, liens, encumbrances, costs, obligations (including indemnities) and liabilities of every kind and character, under common law, equity, statute or otherwise, whether based on tort, contract or statute that may or could be asserted including, without limitation, actions in rem or in personam, civil or criminal actions, claims and/or causes of actions based on negligence, gross negligence, malice, intentional acts or omission, intentional infliction of emotional distress, equitable relief, joint and several liability, vicarious liability and/or respondeat superior, personal injury, property damage, mental anguish, death, past or future loss of wages or earning capacity, strict liability, wrongful death, and all reasonable expenses investigation, settlement, defense and litigation, court costs, attorneys' and experts' fees, arising out of, related to or in any way connected with these General Terms and Conditions or any Order.
   e. "Force Majeure" includes acts of God, fire, floods, lightning, blizzards, earthquakes, ice storms, named tropical storms and hurricanes; terrorism, insurrection, revolution, piracy, and war; strikes, lockouts, and labor disputes (other than those strikes, lockouts and labor disputes of the party claiming Force Majeure which are within such party's reasonable control and may be resolved through reasonable efforts); federal or state laws, rules and regulations of any governmental or public authorities having or asserting jurisdiction over the premises of either or both parties; inability to procure material, equipment, or necessary labor, despite reasonable efforts; or similar causes (except financial) beyond the control of the affected party and which, through the exercise of diligent effort, such party cannot overcome.
   f. "Order" means an oral or written work, service or purchase order or a service contract.
   g. "Products" mean oilfield goods, products, equipment, materials, supplies and manufactured articles sold by Smith Bits Group to Customer Group under these General Terms and Conditions.
   h. "Services" – mean all services provided by Smith Services Group to Customer Group under these General Terms and Conditions including all services and equipment required to carry out the Work.
   i. "Third Party" means a party not a member of Smith or Customer Groups.
   j. "Work" means Products, Services and/or rentals.
1. **Terms**
   . Cash in advance unless Smith has approved Customer's credit prior to the sale. Terms of sale for credit approved accounts are total invoice amount due on or before the 30th day from the date of invoice. Smith' invoice shall be deemed correct and shall evidence Customer's acceptance of products and/or services delivered, unless Smith receives written notice of any disputed items prior to the due date. However, Customer agrees to pay Smith any undisputed portion of an invoice as set forth above. Customer shall pay interest on past due balances at the lesser of 1.5% per month or the maximum allowed by applicable state or federal law. If Customer's account becomes delinquent, Smith shall have the right to revoke any and all previously applied discounts. Upon such revocation, the full invoice price without discount will become immediately due and owing and subject to collection. Customer hereby agrees to pay all fees directly or indirectly incurred in the collection of past due or delinquent accounts, including agency and attorney's fees.
2. **Taxes.** Customer shall pay any and all taxes or other levies (other than income taxes) imposable or imposed by any government, governmental unit or similar authority with respect to the charges made or payments received in connection with Smith' Work. Prices quoted by Smith do not include sales, value added tax, use or similar taxes and such taxes, where applicable, shall be added to the quoted prices and invoiced accordingly. If, subsequent to the effective date of an Order, tax legislation is enacted or reinterpreted in a particular jurisdiction requiring Smith to increase or adjust the taxes, duties or levies it collects on its Work, the Customer and Smith agree to meet in good faith to adjust Smith compensation until Smith can adjust its invoices accordingly.
3. **Independent Contractor.** Smith is an independent contractor with respect to the performance of the Work, and neither Smith nor anyone employed by Smith shall be the agent, representative, employee or servant of Customer in the performance of such Work or any part hereof. When Smith' employees (defined to include Smith' direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act, La R.S. 23:1021 et seq., Customer and Smith agree that all Work performed by Smith and its employees pursuant to these General Terms and Conditions are an integral part of and are essential to the ability of Customer to generate Customer's goods, products and services for purposes of La R.S. 23:1061 (A)(1). Furthermore, Customer and Smith agree that Customer is the statutory employer of Smith' employees for purposes of La R.S. 23:1061 (A)(3). Irrespective of Customer's status as the statutory employer or special employer (as defined in La R.S. 23:1031 (C)) of Smith' employees, Smith shall remain primarily responsible for the payment of Louisiana workers' compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Customer.
4. **Obligations of Customer.**

(a) Well Conditions; Notification of Hazardous Conditions. Customer, having custody and control of the well and superior knowledge of the conditions in and surrounding it, shall provide Smith with all necessary information to enable Smith to perform the Work safely and efficiently. Smith' Products, Services and/or rentals are designed to operate under conditions normally encountered in the well bore or the work site; however, if hazardous or unusual conditions exist, Customer shall notify Smith in advance and make special arrangements for servicing such wells. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, CUSTOMER SHALL WAIVE, RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SMITH GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF, RELATED TO, OR IN CONNECTION WITH CUSTOMER'S OBLIGATIONS AS SET FORTH IN THIS CLAUSE 5 (a).

(b) Fishing Operations. Customer shall assume the entire responsibility for operations in which Customer or its contractors fish, attempt to fish or perform any operation that may jeopardize the retrievability or the integrity of Products or rentals. Smith will, without assuming liability and if so requested by Customer, render assistance for the recovery of such Products or rentals.

1. Warranties and Disclaimers.

(a) Oilfield Services

Smith Services warrants that all Services performed hereunder shall be performed in a good and workmanlike manner in accordance with good oilfield practices and Smith Services will give Customer the benefit of its best judgment based upon its experience interpreting information and making recommendations, either written or oral, as to the type or amount of material or service required or to be furnished, or manner of performance or in prediction of results; and, all such recommendations or predictions are opinions only, and, in view of the impracticability of obtaining first-hand knowledge of the many variable conditions, the reliance on inferences, measurements and assumptions which are not infallible, and/or the necessity of relying on

a. facts and supporting oilfield services furnished by others.

(i) Smith Services' sole liability and Customer's exclusive remedy in any cause of action for breach of the foregoing warranties for services arising out of Services provided hereunder are expressly limited to, at Smith's sole option, (i) replacement or re-performance of the defective Services if practical or (ii) refund to Customer the invoiced portion of the defective portion of the Services.

(ii) Smith warrants to Customer that the inspection services to be performed hereunder shall meet current industry standards and , subject to standard conformity with Customer's written specifications. Customer acknowledges and agrees that Smith makes no representation as to results. THERE ARE NO OTHER GUARANTEES OR WARRANTIES (NOR REPRESENTATIONS) HEREUNDER, EXPRESS OR IMPLIED, AND ALL OTHER WARRANTIES, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, SUITABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE DISCLAIMED BY SMITH AND EXCLUDED FROM THIS AGREEMENT. NO AFFIRMATION, WHETHER BY WORDS OR ACTIONS BY SMITH, ITS AGENTS, EMPLOYEES OR REPRESENTATAIVES SHALL CONSTITUTE A WARRANTY.

(b) Oilfield Products

(i) Smith Bits warrants that Products furnished hereunder shall conform to the quality and specifications represented and relevant scope of work document. Smith Bits reserves the right, at its sole discretion, to use new, used or refurbished parts in the assembly of its Products. Smith Bits warrants all its Products to be free of defects in material and workmanship for a period of twelve (12) months from the date of delivery to the location designated in the applicable Order.

(ii) The above warranty does not apply to: (i) rapidly wearing Products; (ii) ordinary wear and tear; (iii) Products that have been modified by anyone at Customer's request; (iv) Products supplied by Customer or purchased by Smith at Customer's request; (v) abnormal well conditions; (vi) incorrect specifications provided by Customer; (vii) aggressive fluids; (viii) consumables; (ix) improper storage; (x) handling of Products inconsistent with Smith Bits' recommendations; or (xi) due to causes outside of Smith Bits' control including, Force Majeure events, vandalism or improper voltage supply.

(iii) Smith Bits' sole liability and Customer's exclusive remedy under the foregoing warranty are expressly limited to the repair, replacement or refund of an equitable portion of the purchase price, at Smith Bits' sole option, of Products which prove to be defective within the warranty period as stated in (i) above. Any claim by Customer pursuant to Smith Bits' warranty shall be made immediately upon discovery and confirmed in writing within thirty (30) days after discovery of the defect with respect to which the claim is made. Defective items must be held for inspection or returned upon request to Smith Bits' Houston, Texas facility (or other facility designated by Smith Bits), transportation prepaid and return shipments at Customer's expense. Smith Bits shall have the right to inspect the Products claimed to be defective and shall have the right to determine the cause of such defect. Products returned to Smith Bits for which Smith Bits provides replacement under this warranty shall become the property of Smith.

a. Rentals

Rentals hereunder are warranted to be free from defects in materials and workmanship. In the event that defects in materials or workmanship appear, Customer's remedy shall be exclusively limited, in the sole discretion of Smith, to either (i) the replacement of affected rentals; or (ii) proportionate rebate of the rental price of the defective rentals.

a. Third Party Warranties

For Work supplied by Smith' subcontractors, vendors, or suppliers, Smith shall assign third party warranties, if any, to Customer, to the extent such warranties are assignable.

a. Customer Substitutions

In no event shall Smith be liable for the cost of substituted products, services or rentals obtained by Customer from others to cover any Work which is defective or otherwise not in compliance with the applicable Order.

a. Express Warranties Only

I.  NO WARRANTY IS GIVEN CONCERNING THE ACCURACY OR COMPLETENESS OF ANY TEST OR DATA, THE DESIGN, ENGINEERING, PERFORMANCE, OR EFFECTIVENESS OF PRODUCTS, MATERIALS OR SUPPLIES USED, RECOMMENDATIONS GIVEN, OR RESULTS OF THE SERVICES RENDERED AND SMITH IS NOT RESPONSIBLE FOR ANY LOSS OR DAMAGE ARISING FROM THE RESULTS AND/OR RECOMMENDATIONS SUGGESTED BY SUCH WORK NOR ARE THEY INTENDED TO PROVIDE THE BASIS FOR ANY DECISIONS SUBSEQUENTLY MADE BY CUSTOMER, WHICH ARE AND SHALL REMAIN CUSTOMER'S SOLE RESPONSIBILITY. SMITH WILL NOT BE RESPONSIBLE FOR ACCIDENTAL OR INTENTIONAL INTERCEPTION OF OR TAMPERING WITH DATA, NOR DOES SMITH GUARANTEE THE SAFE STORAGE, THE LENGTH OF TIME OF STORAGE OR LOSS OF PRODUCTS OR MATERIALS.

II. THE FOREGOING WARRANTIES IN THIS CLAUSE 7 FOR WORK ARE IN LIEU OF ALL OTHER WARRANTIES, WHETHER ORAL, WRITTEN, EXPRESS, IMPLIED OR STATUTORY. WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY (INCLUDING BUT NOT LIMITED TO COMPLIANCE WITH ANY GOVERNMENT REQUEST OR REGULATORY REQUIREMENT) SHALL NOT APPLY. SMITH' WARRANTY OBLIGATIONS AND CUSTOMER'S REMEDIES THEREUNDER (EXCEPT AS TO TITLE) ARE SOLELY AND EXCLUSIVELY AS STATED HEREIN. FURTHER, CUSTOMER SHALL BE RESPONSIBLE FOR AND AGREES TO RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SMITH GROUP FROM AND AGAINST ANY AND ALL WARRANTY CLAIMS (DIRECT OR INDIRECT) THAT ARE NOT BASED ON, OR EXCEED THE LIMITATIONS OF, THE EXPRESS WARRANTIES SET FORTH IN THIS CLAUSE 7.

8. Title and Risk of Loss.

(a) Unless otherwise agreed between the parties, title to and risk of loss for Products sold will pass to Customer upon delivery to a common carrier at Smith' Houston, Texas facility (or other facility designated by Smith). Customer will pay or reimburse Smith for all freight, preparation, and in-transit insurance costs from the time of delivery. Customer agrees that title to and risk of loss for Products will pass to and remain with Customer, even if Smith agrees to store the Products at a Smith' location until Customer requests delivery.

(b) The time, method, place or medium of payment will not in any way limit Smith rights in and to the Products until payment has been received in full. On all Orders, Smith shall retain a security interest in the Products to the extent of any unpaid balance of the purchase price therefor, and Smith may use all reasonable efforts to retain and/or obtain possession of such Products until such unpaid balance has been received and accepted by Smith.

9. Delivery, Storage, Shipment, Insurance and Freight.

All prices are Ex-Works Smith's facility. Delivery dates are estimated and are not guaranteed. If Customer is not able to accept the Products and/or rentals on the scheduled delivery date, Smith reserves the right to either cancel the Order in full or store the Products and/or rentals at Customer's expense. Method and route of shipment are at Smith' discretion, unless Customer supplies explicit written instructions. Customer shall pay all costs for insurance and freight. Smith may fill an Order by separate shipments of various portions of the Products and/or rentals and an Order is severable as to all such shipments. Packing, carting, shipment to port or to dock side, customs charges and all other costs relating to shipment exportation and importation shall be at Customer's expense.

10. Rental Equipment and Services.

Rentals shall remain the property of Smith and shall be returned upon demand. Customer shall be liable for any loss of or damage caused to Smith' rentals while such items are within Customer's custody and control or below the rotary table, save and except ordinary wear and tear. Customer shall be liable for the cost of or replacement of such rentals, such cost to be determined according to Smith' then current price list, price book, proposal and/or quotation. Accrued rental charges to the date of loss or damage must also be paid, and such rental charges shall not be applied to the sales price or repair cost of the lost or damaged rentals. Smith shall retain title to all damaged or lost rentals and no title or other interest in damaged or lost rentals shall accrue to Customer in such instance.

11. Stocking of Customer's New or Used Equipment.

In the event that Customer goods or equipment are stored at Smith' facility for any reason, CUSTOMER SHALL WAIVE, RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SMITH FROM ANY CLAIM, LIABILITY OR OBLIGATION ARISING DIRECTLY OR INDIRECTLY, FROM THE STORAGE, REMOVAL, RETURN, SALE, TRANSFER, OR DISPOSAL OF SUCH GOODS OR EQUIPMENT NOTWITHSTANDING THE SOLE OR CONCURRENT NEGLIGENCE OR GROSS NEGLIGENCE, FAULT OR STRICT LIABILITY OF SMITH.

12. Cancellation, Returns and Claims.

(a) Orders for Products or rentals of special design, size or materials are not subject to cancellation. No Products may be returned, credited or replaced, unless approved in writing by Smith and may be subject up to a twenty percent (20%) restocking charge, plus all freight, fees and other costs relating to such return. Claims for shortages or damage, or deductions for erroneous charges must have Smith' prior written approval and must be presented within thirty (30) days of receipt of Products by Customer or its representatives.

(b) Should Customer violate any of these General Terms and Conditions, become bankrupt, insolvent, go into receivership, or should any creditor or other person attach or levy Customer's property, Smith shall immediately have the right, without notice, liability, or the institution of legal proceedings, to take and remove its rentals, tools, equipment or materials wherever they may be found. CUSTOMER SHALL WAIVE, RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS SMITH FROM ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES AGAINST THE TOOLS, EQUIPMENT, OR MATERIALS RENTED HEREUNDER AND SHALL RETURN THE SAME TO SMITH FREE AND CLEAR OF ANY LIENS, CLAIMS, OR ENCUMBRANCES.

13. Modification of Tools.

(a) Smith' rentals may not be dressed, changed, altered, or in any way modified by Customer, by anyone designated by Customer, or by an employee of Smith without the express and specific approval of a manager or officer of Smith. In the event Smith' rentals are so dressed, changed, altered, or in any way modified by Customer, Customer agrees to purchase such rentals at the current Smith' sales price.

(b) Standard rental tools, materials, or equipment altered for a specific job will be sold to the Customer at the current Smith' sales price, and an additional charge equal to the cost of the alterations, plus twenty-five percent (25%).

(c) Special tools, materials, or equipment built for a specific job shall be furnished at a minimum rental equal to the manufacturing cost, plus fifty percent (50%) of such cost. Additional modifications requested will be charged in the same manner.

**14. Compliance with Laws.**

Smith and Customer respectively agree to comply with all laws, statutes, codes, rules, and regulations, which are now or may become applicable to operations arising from or in connection with an Order subject to these General Terms and Conditions or arising out of the performance of such operations.

**15. INDEMNITIES.**

a. Personnel and Property.

1. Except as set forth in Subclause (b) (vi) BELOW, SMITH SHALL BE RESPONSIBLE FOR AND HEREBY AGREES TO WAIVE, RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS CUSTOMER GROUP AND ITS INSURERS FROM AND AGAINST ALL CLAIMS ARISING OUT OF OR IN CONNECTION WITH damage to or loss or destruction of property of or the personal and/or bodily injury, illness or death of any member of Smith Group arising out of or in connection with these general terms and conditions or the work provided hereunder.

2. CUSTOMER SHALL BE RESPONSIBLE FOR AND HEREBY AGREES TO WAIVE, RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SMITH GROUP AND ITS INSURERS FROM AND AGAINST ALL CLAIMS ARISING OUT OF OR IN CONNECTION WITH DAMAGE TO OR LOSS OR DESTRUCTION OF PROPERTY OF OR THE PERSONAL AND/OR BODILY INJURY, ILLNESS OR DEATH OF ANY MEMBER OF CUSTOMER GROUP ARISING OUT OF OR IN CONNECTION WITH THESE GENERAL TERMS AND CONDITIONS OR THE WORK PROVIDED HEREUNDER.

(b) Special Indemnity. NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, CUSTOMER SHALL BE RESPONSIBLE FOR AND AGREES TO WAIVE, RELEASE, PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS SMITH GROUP AND ITS INSURERS FROM AND AGAINST ALL CLAIMS brought by or on behalf of any member of Customer Group, Smith Group or any Third Party arising out of or in connection with: (i) property damage, personal and/or bodily injury or death or loss that results from fire, explosion, blow-out, cratering, wild well or work performed to control a wild well, including but not limited to, damage to or loss or destruction or replacement of any equipment, drilling rig/unit/vessel, platform or other fixed or floating structure (in the case of services provided offshore), including oil/gas production facilities or pipelines, at or around a site (including any downtime, remediation or recovery time); (ii) property damage or loss that results from pollution, contamination, or radiation damage (including environmental pollution, contamination or damage), including containment, clean-up and remediation of the pollutant and contamination, whether or not required by an applicable federal, state or local law or regulation; (iii) property damage or loss that results from reservoir or underground damage, including loss of oil, gas, other mineral substances, or water or the well bore itself, and surface damage arising from subsurface or subsea damage; (iv) cost to control a wild well, underground or above the surface, including any redrilling or reworking and related clean up costs; (v) subsurface trespass; or (vi) loss of or damage to Smith Group's property, equipment, materials, products or rentals, including but not limited to, recovery, repair and replacement expenses, when such loss or damage occurs: (a) IN THE HOLE OR BELOW THE ROTARY TABLE, (b) WHILE IN TRANSIT OR BEING MOVED ON ANY FORM OF TRANSPORTATION OWNED OR FURNISHED BY CUSTOMER GROUP, (c) WHILE LOCATED AT THE WELL SITE WHEN SMITH PERSONNEL ARE NOT PRESENT, (d) AS A RESULT OF IMPROPERLY MAINTAINED PRIVATE ACCESS ROADS TO THE WELL SITE OR AS A RESULT OF THE INFERIOR CONDITION OF LEASE ROADS OR THE SITE, OR (e) WHILE BEING USED BY OR WHILE UNDER THE CUSTODY OR CONTROL OF ANY PERSON OTHER THAN A SMITH EMPLOYEE, WHETHER IN AN EMERGENCY OR OTHERWISE. WITH RESPECT TO (a) ABOVE, THE PROPERTY, EQUIPMENT, MATERIALS AND PRODUCTS WILL BE VALUED AT THEIR RESPECTIVE LANDED REPLACEMENT COST AND RENTAL CHARGES ON THE EQUIPMENT LOST OR DAMAGED IN THE HOLE SHALL CONTINUE TO BE PAID UP TO AND INCLUDING THE DATE ON WHICH SMITH RECEIVES NOTICE IN WRITING OF THE LOSS OR DAMAGE.

(c) APPLICATION OF INDEMNITIES. THE ASSUMPTION OF LIABILITY AND INDEMNITIES EACH PARTY ASSUMES HEREIN SHALL APPLY TO ANY SUCH CLAIMS WITHOUT REGARD TO THE CAUSE(S) THEREOF INCLUDING, WITHOUT LIMITATION, UNSEAWORTHINESS, STRICT LIABILITY, ULTRAHAZARDOUS ACTIVITY, BREACH OF EXPRESS OR IMPLIED WARRANTY, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF EQUIPMENT, DEFECT OR "RUIN" OR OTHER CONDITION OF PREMISES, INCLUDING ANY CONDITIONS THAT PRE-EXIST THE EXECUTION OF THIS AGREEMENT, ON THE SOLE, JOINT, CONCURRENT, GROSS, ACTIVE OR PASSIVE NEGLIGENCE OR BREACH OF DUTY (STATUTORY OR OTHERWISE) OR OTHER FAULT OF ANY MEMBER OF THE THOMAS TOOL GROUP OR CUSTOMER GROUP, AS APPLICABLE.

(d) Anti-Indemnity and Insurance Savings Clause. If any defense, indemnity or insurance provision contained in these General Terms and Conditions conflicts with, is prohibited by or violates public policy under any federal, state or other law determined to be applicable to a particular situation arising from or involving any services, equipment and/or products hereunder, it is understood and agreed that the conflicting, prohibited, or violating provision shall be deemed automatically amended in that situation to the extent, but only to the extent, necessary to conform with, not be prohibited by and avoid violating public policy under such applicable law.

**16. Incidental or Consequential Damages.**

Notwithstanding anything to the contrary herein, Customer Group shall be responsible for and agrees to release, protect, defend, indemnify and hold harmless Smith Group from and against any and all Claims made by any member of Customer Group or any Third Party for punitive, incidental, consequential, indirect or special damages, including, without limitation, loss of use, loss of data, loss of assets, loss of or delay in production, loss of profit, loss of business, or business interruption or downtime and without regard to the sole, joint, concurrent, gross, active or passive negligence or breach of duty (statutory or otherwise) of Smith Group.

**17. Insurance.**

Each party, as indemnitor, agrees to support the indemnity obligations it assumes hereunder, by obtaining at its own cost, adequate insurance for the benefit of the other party as indemnitee, with contractual indemnity endorsements. To the extent each party assumes liability hereunder, such insurance shall waive subrogation against the indemnified Group and its insurers and name the indemnified Group as additional insured(s) and loss payee, and to the same extent such coverage shall be primary to that carried by the indemnified Group. Customer shall not self-insure without the written consent of Smith.

**18. Limitation of Liability.**

Notwithstanding anything to the contrary herein, except as provided under Clause 15. (a) 1, Smith' liability arising from or in connection with an Order subject to these General Terms and Conditions (whether for indemnity, breach of contract, negligence, misrepresentation, or otherwise) shall not in any circumstances exceed the full value of the consideration owed to Smith under such Order.

**19. Employee Solicitation.**

Except with the prior written consent of Smith, Customer shall not directly, indirectly or through third parties solicit, recruit or induce any Smith' employee, consultant or representative to leave, terminate or otherwise end his/her association with Smith in order to become an employee, consultant or representative of Customer until at least one (1) year has elapsed from Customer's receipt of the final invoice for the Work.

**20. Intellectual Property.**

While performing Work for Customer, Smith may utilize Smith' intellectual property and/or develop additional expertise, know-how, inventions, ideas, designs, methods, or processes which are Smith' exclusive property and which Smith may freely utilize in providing services for its other customers. Except where expressly and specifically indicated in writing in a separate development agreement, and in exchange for appropriate payment, Smith does not develop any intellectual property (including copyrights, patents, expertise, know-how, inventions, ideas, designs, methods and/or processes) for ownership by Customer under any Order subject to these General Terms and Conditions, and Smith retains sole ownership of any such intellectual property created during the course of Work hereunder. Notwithstanding the foregoing, Customer shall own any inventions, ideas or designs (whether patentable or not) solely suggested by Customer, its personnel or contractors. Customer shall also own any well or reservoir data acquired by Smith arising out of the Work and any reports or interpretations or characterizations thereof provided to Customer by Smith. Subject to any confidentiality obligations, Smith may use such data internally to improve its products and services and to refine its computer models.

21. **Publicity.**

Unless required by applicable laws, rules or regulations, neither party shall issue, publish or permit any member of its respective Group to issue any press releases or otherwise publicize or cause any member of its respective Group to make any public statements, or otherwise publicize any information with respect to i) the content of any Order, ii) the Work contemplated to be performed subject to these General Terms and Conditions, and/or iii) any transactions or occurrences arising as a result of such performance, without the prior written approval of the other party.

22. **Severability.**

If any part of these General Terms and Conditions contravene any applicable statutes, regulations, rules, or common law requirements, then, to the extent and only to the extent of such contravention, such part shall be severed from these General Terms and Conditions and deemed non-binding while all other parts of these General Terms and Conditions shall remain binding.

23. **Amendment; Entire Agreement; No Waiver.**

No modification of these General Terms and Conditions shall be of any force or effect unless in writing and signed by an authorized signatory of both parties. These General Terms and Conditions constitutes the entire understanding between the parties with respect to its subject matter and supersedes and cancels all prior agreements, negotiations, understandings (written or oral) and discussions of the parties in relation to its contents. Failure to enforce any or all of the terms and conditions of these General Terms and Conditions in a particular instance or instances shall not constitute a waiver thereof or preclude subsequent enforcement thereof.

24. **Force Majeure.**

Either party will be excused from complying with the terms and conditions of these General Terms and Conditions and the applicable Order if, to the extent, and for as long as, such party's compliance is delayed or prevented by a Force Majeure event. A Force Majeure event will not excuse making payments pursuant to an applicable Order or other commercial writing, performing indemnity obligations, or other duties not directly limited by the Force Majeure event. If a party is rendered unable, wholly or in part, by a Force Majeure event to perform, that party will give written notice detailing such Force Majeure event to the other party as soon as reasonably possible. If a Force Majeure event continues without interruption for ten (10) days, either party may cancel the applicable Order by giving written cancellation notice to the other party.

25. **Governing Law.**

Where any Work is to be provided in a geographic location covered by the General Maritime law, General Maritime law shall apply and shall govern the validity, interpretation, and performance of any Order subject to these General Terms and Conditions. In those instances where the General Maritime law does not apply, the law of the State of Texas shall apply and govern the validity, interpretation, and performance. The parties agree that the law of the selected jurisdiction shall apply exclusive of any principles of conflicts of laws that would require application of the substantive laws of another jurisdiction. Any suit or proceeding hereunder shall be brought exclusively in state or federal courts located in Harris County, Texas. Each party consents to the personal jurisdiction of the state and federal courts of said county and waives any objection that such courts are an inconvenient forum. References to any act, law, statute, rule, or regulation shall be deemed to include references to such as the same may be amended, replaced or reenacted from time to time.

Customer hereby acknowledges and agrees that all work, products and services provided by Smith International, Inc. shall be subject to the terms and conditions set forth in this Contract.

Customer:

By: _____

Name: _____

Title: _____

Company: _____

Date: _____