IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | |
| | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | |
| | § | |
| | § | (Jointly Administered) |
| ------------------------------------------------------- | § | |
| | § | Adversary Proc. No. 20-____ |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | **(Emergency Hearing Requested)** |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **ATLANTIC MARITIME SERVICES, LLC**, | § | |
| | § | |
| Defendant. | § | |
| ------------------------------------------------------- | § | |

## DECLARATION OF MICHAEL T. DANE IN SUPPORT
## OF DEBTORS' ADVERSARY COMPLAINT

I, Michael T. Dane, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am Senior Vice President and Chief Financial Officer of Fieldwood Energy LLC ("**Plaintiff**"). I submit this declaration (this "**Declaration**") on behalf of the above captioned debtors and debtors in possession (the "**Debtors**") in support of the Adversary Complaint (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

"**Adversary Complaint**")[2] commenced against Atlantic Maritime Services, LLC ("**Atlantic**" or "**Defendant**").

2.  Unless otherwise indicated, all facts set forth in this Declaration are based upon: (a) my personal knowledge of the Debtors' operations; (b) information learned from my review of relevant documents and information concerning the Debtors' operations; and/or (c) my opinions based upon my experience and knowledge.

3.  I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify as to the facts set forth herein.

4.  Debtors are one of the largest producers of oil and gas in the Gulf of Mexico and hold interests in hundreds of offshore blocks covering some two million gross acres, including over 1,000 wells and nearly 500 operated platforms in the United States Gulf of Mexico. Debtors entered into operating agreements with several co-working interest owners, including, as relevant here, Ecopetrol America, LLC, Ridgewood Katmai, LLC, and ILX Prospect Katmai, LLC (collectively, the "**WIOs**"). True and correct copies of excerpts of Gunflint JOA and GC 40 JOA (collectively, the "**Joint Operating Agreements**") are attached to the Adversary Complaint as **Exhibit 2** and **Exhibit 3**, respectively.

5.  Plaintiff is required to indemnify each of the WIOs under the Joint Operating Agreements.

6.  Each Joint Operating Agreement also names Debtors as operator. In that capacity, Debtors, on behalf of the WIOs, contracted with Atlantic in October 2018 to provide a drillship,

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Adversary Complaint.

the *Rowan Reliance*[3], to conduct operations on deepwater wells in the United States Gulf of Mexico. A true and correct copy of the Debtors' October 26, 2018 Master Domestic Offshore Daywork Drilling Contract with Atlantic (the "**Contract**") is attached to the Adversary Complaint as **Exhibit 4**.

7. The Contract requires Atlantic to conduct its drilling operations in a safe, workmanlike manner and in accordance with Debtors' safety program and any and all applicable governmental regulations and laws.

8. Atlantic's failure to adhere to multiple provisions in the Contract caused at least six separate incidents from February to June of 2020, which cost the Debtors and the WIOs approximately ten million dollars. In addition, the Debtors are entitled to certain offsets which are not reflected in Atlantic's invoices. To ensure Atlantic (and not Debtors or the WIOs) bears financial responsibility for its failure to meet contractual obligations regarding workmanship, safety, and compliance with applicable governmental regulations and laws, the Contract allows Debtors to "withhold, from payments due [Atlantic] under this Contract and any applicable Drilling Order, any amounts owing to [Debtors] by [Atlantic] hereunder and/or any applicable Drilling Order." But even if Debtors pay an invoice in full, it can still dispute its amount at a later time. Paragraph 916 of the Contract provides that "[p]ayment of any invoice provided to [Debtors] by [Atlantic] . . . shall not prejudice the right of [Debtors] to question the correctness of any charges herein."

9. As part of this process, the Contract, in numerous provisions, authorizes Debtors to audit Atlantic's charges. Atlantic failed to adhere to such audit provisions and filed liens on certain

---

[3] Debtors and Atlantic amended their October 2018 contract in November 2018 to substitute the drillship *Rowan Resolute* for the *Rowan Reliance*.

wells in which Debtors and the WIOs have an interest, weeks before payment was due, before Debtors could conduct a contractually authorized audit of Atlantic's charges, and less than three weeks before the Debtors filed for bankruptcy protection. Then, on November 13, 2020, Atlantic filed two *in rem* lawsuits in the United States District for the Eastern District of Louisiana against the WIOs[4] to enforce Atlantic's liens collect millions of dollars from the WIOs under the Louisiana Oil Well Lien Act (La. R.S. 9:4861 *et seq.*) arising out of alleged amounts that the Debtors owe Atlantic. True and correct copies of the publicly available complaints in these lawsuits are attached to the Adversary Complaint as **Exhibit 5** and **Exhibit 6**. Because of the Debtors' obligations in its Joint Operating Agreements to hold the WIOs harmless from such liens and lawsuits, I anticipate that the WIOs will look to the Debtors' for indemnity from Atlantic's claims. So, for all practical purposes, the claims in the Lawsuits are claims against the Debtors.

11. Pursuant to the *Final Order (I) Authorizing Debtors to Pay (A) Prepetition Interest Owner Obligations, Joint Interest Billings, and E&P Operating Expenses and (B) 503(b)(9) Claims; and (II) Granting Related Relief* (Docket No. 342) (the "**Final Vendor Order**"), the Debtors are authorized, but not directed, to pay prepetition amounts owed to any E&P Claimant (as defined in the Critical Vendor Motion) or § 503(b)(9) claimant; provided, that, as a condition to making such pre-petition payments, the Debtors are required to enter into Trade Agreements (as defined in the Critical Vendor Motion) with such claimants on terms consistent with the historical practice between the parties. As of the date hereof, the Debtors have completed 97 Trade Agreements resolving approximately $100 million of prepetition claims. The Debtors are working to complete an additional 48 Trade Agreements representing an additional $41 million of

---

[4] The two lawsuits are as follows: Cause No. 2:20-cv-03097; *Atlantic Maritime Services, LLC v. Ecopetrol America, LLC* and Cause No. 2:20-cv-03099; *Atlantic Maritime Services, LLC v. Ridgewood Katmai, LLC and ILX Prospect Katmai, LLC* (collectively, the "**Lawsuits**").

prepetition claims. Moreover, a total of approximately 144 statutory liens were filed by certain of the Debtors' vendors and counterparties on account of their prepetition claims, many of which are either party to completed Trade Agreements or are in the process of negotiating a Trade Agreement with the Debtors. The Debtors are current on all of their post-petition obligations.

12. By filing the Lawsuits, Atlantic has already affected the Debtors' ability to conduct their bankruptcy. Indeed, if Atlantic is successful in its strategy, it will have effectively nullified the ability of the Debtors to treat Atlantic's claims under the plan. The Debtors have also been forced to divert their focus from the bankruptcy proceedings and negotiations to the defense of the WIOs under the terms of the joint operating agreements. Allowing the Lawsuits to advance at this stage will, among other things, disrupt the Debtors' vendor program and interfere with the Debtors' chapter 11 plan process by permitting Atlantic to seek remedies against the WIOs in satisfaction of claims against the Debtors where the Debtors dispute both the amount and alleged secured status of such claims. Moreover, negotiations with parties-in-interest have been disrupted and cash flow to the bankruptcy estate may be impaired as parties have been forced to react to the specter of similar suits. Indeed, some working interest owners have already decided it best to limit operational expenditures as the threat of lawsuits and sequestration evolves. I believe that the continuation of the Lawsuits will not only distract the Debtors' senior management team during this time in the Debtors' reorganization efforts, but it may, if unabated, also jeopardize the Debtors' liquidity.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 24th, 2020
        Houston, Texas

>                             */s/ Michael T. Dane*
>                             Michael T. Dane
>                             Senior Vice President and Chief Financial Officer
>                             Fieldwood Energy, LLC