## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,**[1] | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

## NOTICE OF PERFECTION OF STATUTORY LIEN AND STATEMENT OF PRIVILEGE BY PETRO AMIGOS SUPPLY, INC. PURSUANT TO 11 U.S.C. § 546(b)(2)

Petro Amigos Supply, Inc. ("Petro Amigos"), a creditor in the above-styled and numbered case, by and through undersigned counsel, hereby gives notice of its valid, timely filed, and properly perfected statutory mineral lien and statement of privilege against Fieldwood Energy LLC (the "Debtor") and certain of its non-Debtor affiliates under 11 U.S.C. § 546(b)(2) (the "Notice"):

1.      Section 546(b)(2) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") provides that when applicable law requires seizure of property or commencement of an action to accomplish perfection, or maintenance or continuation of perfection of an interest in property, the claimant may file a notice with the Bankruptcy Court, in lieu of such seizure or commencement.

2.      Petro Amigos provided the Debtor with services, labor, equipment, machinery, materials, and supplies vital to the Debtor's operations in the Gulf of Mexico. The Debtor's

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Holdings LLC (9264); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore hLLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

operations on the projects where Petro Amigos performed work would be severely compromised if not entirely curtailed without Petro Amigos' efforts.

3.      Petro Amigos sent numerous invoices to the Debtor during the period detailed below. The unpaid balance for these invoices is $494,725.02 for materials and services provided to the Debtor's oil and gas properties in the offshore regions of Louisiana and Alabama in the Gulf of Mexico between approximately February 29, 2020 and May 24, 2020. Copies of the invoices are attached as exhibits to the Lien Affidavits discussed below.

4.      The Debtor has yet to pay Petro Amigos for the products and services it provided to the wells described in this paragraph. As a result, on November 9, 2020, and thereafter, Petro Amigos filed its *Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege* (the "Louisiana Lien Affidavit") in the Real Property Records of Jefferson, Lafourche, and Plaquemines Parishes, Louisiana, which were duly recorded as Document Number 12056864 in Jefferson Parish, Document Number 2020-00004699 in Plaquemines Parish, and Document Number 1305777 in Lafourche Parish. Mr. Miguel Alvarez, the Chief Financial Officer of Petro Amigos, executed the Louisiana Lien Affidavit. The Louisiana Lien Affidavit was also recorded with the Bureau of Ocean Energy Management. In accordance with La. R.S. 9:4861, et seq., the recordation of the Louisiana Lien Affidavit perfected Petro Amigos' lien for the $488,282.28 that the Debtor owes for labor and furnished or hauled materials, machinery, equipment or supplies that Petro Amigos provided. The Louisiana Lien Affidavit also provides a detailed description of the offshore leases that are subject to Petro Amigos' lien. A copy of the Louisiana Lien Affidavit is attached hereto as **Exhibit A**.

5.      Further, the Debtor has yet to pay Petro Amigos for the products and services it provided to the wells described in this paragraph.  As a result, on November 9, 2020, Petro Amigos

filed its *Statement of Lien* (the "Alabama Lien Affidavit") in the Real Property Records of Mobile County, Alabama, which was duly recorded as Document Number 20200068821. Mr. Miguel Alvarez, the Chief Financial Officer of Petro Amigos, executed the Alabama Lien Affidavit. The Alabama Lien Affidavit was also recorded with the Bureau of Ocean Energy Management. In accordance with Ala. Code § 35-11-213 *et seq*, the recordation of the Lien Affidavit perfected Petro Amigos' lien for the $6,442.74 that the Debtor owes for labor and furnished or hauled materials, machinery, equipment or supplies that Petro Amigos provided. The Alabama Lien Affidavit also provides a detailed description of the offshore leases that are subject to Petro Amigos' lien. A copy of the Alabama Lien Affidavit is attached hereto as **Exhibit B**.

6.       Pursuant to § 546(b)(2) of the Bankruptcy Code, Petro Amigos hereby provides notice to the Debtor, the Debtor's counsel, the Office of the United States Trustee, and all parties requesting notice of Petro Amigos' rights as a perfected lienholder in materials and services provided pursuant to La. R.S. 9:4861, *et seq* and Ala. Code § 35-11-213 *et seq*. Petro Amigos is filing this Notice to preserve, perfect, maintain, and continue its lien rights for services and materials provided to the Debtor under Louisiana and Alabama state law in order to comply with the requirements of Louisiana a n d  A l a b a m a  law and § 546(b)(2) of the Bankruptcy Code. Petro Amigos intends to enforce its statutory lien rights to the fullest extent permitted by applicable law.

7.       The filing of this Notice shall not waive Petro Amigos' rights to seek relief from the automatic stay to foreclose its lien and/or other rights or defenses, to demand adequate assurance of future performance, or to compel the Debtor's assumption of its executory contracts with Petro Amigos and the cure amounts owed thereunder.

8.        The filing of this Notice shall further not be construed as an admission that such

filing is required under the Bankruptcy Code, Louisiana or Alabama state law, or any other applicable law. Additionally, Petro Amigos makes no admission of fact or law and asserts that its liens are senior to and effective against entities that may have acquired lien rights in the above styled bankruptcy cases. Petro Amigos reserves all rights to amend and/or supplement this Notice.

Dated:  December 2, 2020.

By:   */s/ Wayne Kitchens*_____
      Wayne Kitchens        TBN: 11541110
      wkitchens@hwa.com
      Alexander Perez        TBN: 24074879
      aperez@hwa.com
      Hughes, Watters & Askanase, LLP
      Total Plaza
      1201 Louisiana Street, 28th Floor
      Houston, Texas 77002
      Telephone:    (713) 759-0818
      Facsimile:     (713) 759-6834

      **COUNSEL FOR PETRO AMIGOS
      SUPPLY, INC.**

## <u>CERTIFICATE OF SERVICE</u>

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on December 2, 2020.

*/s/ Wayne Kitchens*
Wayne Kitchens

**EXHIBIT A**

12056864

## OIL WELL LIEN AFFIDAVIT, NOTICE OF
## CLAIM OF LIEN AND STATEMENT OF PRIVILEGE
*La. R.S. 9:4861, et seq,*

STATE OF LOUISIANA

PARISH OF LAFOURCHE/JEFFERSON/PLAQUEMINES

      BEFORE ME, the undersigned authority, personally came and appeared:

### MR. MIGUEL A ALVAREZ

who, after being duly sworn, did depose and say:

    1.    He is the PetroAmigos Supply, Inc. ("PetroAmigos"), 777North Eldridge Parkway, Suite 400, Houston, Texas 77079, and he is duly authorized to make and is making this affidavit for and on behalf of PetroAmigos.

    2.    PetroAmigos is in the business of furnishing labor, equipment, machinery, and materials, and related services in support of development, exploration, maintenance, operation, and abandonment of oil and gas well(s).

    3.    In connection with its business, PetroAmigos contracted to supply services, labor, equipment, materials and supplies and related services used in well operation, production to Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042 ("Fieldwood").

    4.    Between approximately February 29, 2020, through May 24, 2020 (the "Applicable Period"), PetroAmigos supplied goods, equipment, supplies, services, materials and related services to Fieldwood in connection with the operation, including drilling, completing, testing, production, reworking of certain wells located as follows:

    All that certain tract or parcel of land situated in OFFSHORE JEFFERSON, PLAQUEMINES, AND/OR LAFOURCHE PARISHES, STATE OF LOUISIANA, OUTER CONTINENTAL SHELF, GULF OF MEXICO, containing approximately 5760 acres of land, more or less, being all of BLOCK 40, GREEN CANYON AREA, FIELD GC039, EIA FIELD CODE 846039, and being the same land described by that certain Oil & Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act, Serial Number OCS-G34536, dated effective 10/2012 (the "Lease").

11/12/2020 11:41:51 AM JEFF PAR 6516980 aam $205.
INST. 12056864 MORTGAGE BOOK 4904 PAGE 630

14

12056864

5. As of the present date, a remaining principle amount of $488,282.28 is due and owing on Invoice Nos. PA152-35553-1 and PA152-35575-1 (the "Invoices") for those certain goods, equipment, supplies and services provided by PetroAmigos to the Lease during the Applicable Period, together with accruing contractual interest, plus attorneys' fees and costs. True and correct copies of the Invoices are attached hereto and incorporated herein, *in globo*, as Exhibit A.

6. At all relevant times hereto, the labor, equipment, supplies and services provided by PetroAmigos were used for or in connection with the drilling, exploration, development, operation, and/or abandonment of the Lease.

7. As evidenced by the records of the United States Department of Interior, Bureau of Ocean Energy Management (the "BOEM"), Fieldwood was at all relevant times and remains the operator of the above-referenced Lease.

`8. This Oil Well Lien Affidavit is made for the purpose of securing payment of the debt owed by Fieldwood to PetroAmigos as described herein and is made in accordance with La. R.S. 9:4861, et seq., and all other applicable laws for the purposes of preserving the liens and privileges granted by law to PetroAmigos on the following: (1) the Lease described above, and any wells located on the Lease; (2) the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein, together with such parties' interest in any (a) well(s), building, tank, leasehold pipeline, platforms, machinery, flowlines, gathering lines, and other related equipment and other construction of facility located thereon, (b) all movables used in the operation of the well attached thereto or located on the Lease and/or well site, including, but not limited to, monitoring, measuring, metering, and control equipment, appurtenances, appliances, equipment and other structures, and (c) tract of land, servitude or other lease described in La. R.S. 9:4861 (12)(c) covering the lease; (3) a drilling or other rig located at the Lease, if the rig is owned by the operator of the Lease, Fieldwood, BOEM Operator No. 03295; (4) all hydrocarbons produced from the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein without limitation and (5) the proceeds received by, and the obligations owed to, any lessee or operating interest from the disposition of hydrocarbons subject

12056864

to the privilege for the amount due for the labor, supplies, and services, in principle and interest, and for the cost of preparing and recording the privilege, or any notice of *lis pendens* and contractual or statutory attorneys' fees.

9.     That this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being filed in the Mortgage Records of Jefferson, Lafourche, and Plaquemines Parishes, State of Louisiana and with the BOEM.

10.     That a copy of this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being delivered to the lessee(s) and Operator(s) of the Lease at the following: (a) Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, TX 77042; and (b) Fieldwood Energy, LLC, through its registered agent, Capital Corporate Services, Inc., 8550 United Plaza Building II, Ste. 305, Baton Rouge, LA 70809.

Thus done and signed in Houston, Texas on this 3 0 day of October , 2020

{Signatures on Next Page}

12056864

PetroAmigos Supply, Inc.

By: 
Name: Miguel A Alvarez
Its: Vice President Of Finance

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Miguel A Alvarez, Vice President Of Finance for Petro Amigos Supply, Inc., known to me to be the person whose name is subscribed to the foregoing instrument and who upon oath swore that the foregoing statements were true and within her personal knowledge and who acknowledged to me that he executed the same for the purpose and consideration therein expressed.

SWORN TO AND SUBSCRIBED before me, under my hand and seal of office, this the 30 day of October , 2020.

TERESA CHERRY
Notary ID #129508834
My Commission Expires
July 31, 2021

By: Teresa Cherry
Notary Public in and for the State of Texas

*A.*

# Invoice



**12056864**

Petro Amigos Supply Inc.
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079  USA
Ph:  281-497-0858
Fax: 281-497-1575

| Invoice Number: PA152-35064-1 | Invoice Date: 2/29/2020 | Order Number: FW-D18136 REV-1 | Terms: NET 30 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Sold To:** | FIELDWOOD ENERGY<br>2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200<br>HOUSTON, TEXAS 77042 USA | **Ship To:** | FIELDWOOD ENERGY<br>C/O TUBOSCOPE - AMELIA<br>2104 HWY 662<br>AMELIA, LOUISIANA 70340 USA |
| **Attention:**<br>Fax:<br>Phone:<br>E-Mail: | KRIS KIMBLE<br><br>713-969-1329<br>kris.kimble@fwellc.com | **Attention:**<br>Fax:<br>Phone:<br>E-Mail:<br>Charge: | CHARLENE BLANCHARD<br>985-631-1855<br>985-631-1846<br>CHARLENE.BLANCHARD@NOV.COM<br>Routing# 580002 |

| Ship Date: 02/27/2020 | Shipped Via: WILL CALL | FOB: TRUCKS - AMELIA, LOUISIANA |
|---|---|---|
| Well: Mississippi Canyon 948 #4 | AFE: FW205014 | OCSG: 28030 |

## Invoice Details

| Quantity | Units | Description | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|
| 42.1300 | FT | Pipe: 4-1/2" OD 18.90# HP2-13CR110 LION CLEAR RUN  JFE SMLS R3 | $72.87 | $3,070.01 | | |
| 1.0000 | JT | | | | | |

| State: | City: | County/Parish: | | |
|---|---|---|---|---|
| LOUISIANA (0.0000%) | AMELIA (0.0000%) | (0.0000%) | **Subtotal:** | $3,070.01 |
| $0.00 | $0.00 | $0.00 | **Sales Tax:** | $0.00 |
| **Tax Status:** Offshore | | | **Grand Total:** | $3,070.01 |
| | | | **Total Amount Due:** | $3,070.01 |

| Notes: |
|---|
| |

**ADDITIONAL REMITTANCE OPTIONS**

Wire Instructions:

| | |
|---|---|
| Beneficiary: | Petro Amigos Supply, Inc. |
| Bank Address: | US Bank<br>One US Bank Plaza<br>7th and Washington<br>St. Louis, MO 631001 |
| Bank Phone: | 1(800)872-2657 |
| ABA Number: | 081000210 |
| Account Number: | 152310858062 |
| Overnight Payments: | Petro Amigos Supply, Inc.<br>SL-MO-C1WS<br>1005 Convention Plaza<br>St.Louis, MO 63101 |

12056864

12056864

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice. Interest at not less than ten percent (10%) charged after the due date. Receipt of funds will constitute payment date.

## CONDITIONS OF SALE AND TRADE CUSTOMS

1. Quotations are subject to change without notice. All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2. When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer. Lighterage or transfer charges at foreign port are also for account of the Buyer. Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller. In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller. Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3. All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller. Should the Buyer fail to fulfill their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped. The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof. Orders for special goods may not be cancelled. Buyer shall become liable for and pay Seller's cancellations charges.

4. It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale. Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

12056864

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.    Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service. Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO. Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller. The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller.  No material may be returned for credit or replacement except by written arrangement.

6.    The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras.  Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold.  All goods made to special specifications are deemed to be inspected and accepted before shipment is made.  Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.    Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights.  It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.    IN NO EVENT SHALL SELLER OR ITS AFFILIATES BE LIABLE FOR (I) POLLUTION, CONTAMINATION OR RADIATION  DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.    The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.    Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.    Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12056864

12.  No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13.  Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14.  These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material.  There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15.  Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16.  In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17.  The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18.  If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue.  In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing.  Such arbitration shall be conducted in the English language.  If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules.  If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules.  The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.

# Invoice

12056864



Petro Amigos Supply Inc.
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079  USA
Ph:  281-497-0858
Fax: 281-497-1575

| Invoice Number: PA152-35185-1 | Invoice Date: 4/20/2020 | Order Number: 2908-2 | Terms: NET 60 |
|---|---|---|---|

| Sold To: | FIELDWOOD ENERGY<br>2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200<br>HOUSTON, TEXAS 77042 USA | Ship To: | FIELDWOOD ENERGY<br>C/O TUBOSCOPE - AMELIA<br>WILL CALL<br>2084 HWY 662<br>AMELIA, LOUISIANA 70340 USA |
|---|---|---|---|
| Attention:<br>Fax:<br>Phone:<br>E-Mail: | KRIS KIMBLE<br><br>713-969-1329<br>kris.kimble@fwellc.com | Attention:<br>Fax:<br>Phone:<br>E-Mail:<br>Charge: | CHARLENE BLANCHARD<br>985-631-1855<br>985-631-1846<br>CHARLENE.BLANCHARD@NOV.COM<br>Platform: MC724APLT |

| Ship Date: 03/16/2020 | Shipped Via: SUMMIT TRANSIT LLC | FOB: TRUCKS - AMELIA, LOUISIANA |
|---|---|---|
| Well: | AFE: FW191024 | OCSG: |

### Invoice Details

| Quantity | Units | Description | | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|---|
| 1.0000 | EA | Trucking to Yard | | $3,372.73 | $3,372.73 | | |
| | | Costs for moving 7 3/4" to Tuboscope Amelia from Tuboscope North | | | | | |

| State:<br>LOUISIANA (0.0000%)<br>$0.00 | City:<br>AMELIA (0.0000%)<br>$0.00 | County/Parish:<br>(0.0000%)<br>$0.00 | Subtotal: | $3,372.73 |
|---|---|---|---|---|
| | | | Sales Tax: | $0.00 |
| Tax Status:  Offshore | | | Grand Total: | $3,372.73 |

| Notes: |
|---|

**ADDITIONAL REMITTANCE OPTIONS**

Wire Instructions:

| | |
|---|---|
| Beneficiary: | Petro Amigos Supply, Inc. |
| Bank Address: | US Bank<br>One US Bank Plaza<br>7th and Washington<br>St. Louis, MO 631001 |
| Bank Phone: | 1(800)872-2657 |
| ABA Number: | 081000210 |
| Account Number: | 152310858062 |

Overnight Payments:

Petro Amigos Supply, Inc.
SL-MO-C1WS
1005 Convention Plaza
St.Louis, MO 63101

12056864

12056864

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice. Interest at not less than ten percent (10%) charged after the due date. Receipt of funds will constitute payment date.

### CONDITIONS OF SALE AND TRADE CUSTOMS

1.      Quotations are subject to change without notice. All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2.      When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer. Lighterage or transfer charges at foreign port are also for account of the Buyer. Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller. In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller. Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3.      All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller. Should the Buyer fail to fulfil their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped. The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof. Orders for special goods may not be cancelled. Buyer shall become liable for and pay Seller's cancellations charges.

4.      It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale. Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

12056864

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.    Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service. Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO. Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller. The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller. No material may be returned for credit or replacement except by written arrangement.

6.    The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras. Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold. All goods made to special specifications are deemed to be inspected and accepted before shipment is made. Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.    Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights. It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.    IN NO EVENT SHALL SELLER OR ITS AFFIALATES BE LIABLE FOR (i) POLLUTION, CONTAMINATION OR RADIATION  DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.    The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.    Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.    Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12056864

12. No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13. Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14. These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material. There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15. Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16. In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17. The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18. If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue. In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing. Such arbitration shall be conducted in the English language. If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules. If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules. The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.

# Plaquemines Parish Recording Page

**Kim Turlich-Vaughan**
**Clerk of Court**
PO Box 40
Belle Chasse, LA 70037
(504) 934-6610

**Received From :**
HUGHES WATTERS & ARKANASE LLP
1201 LOUISIANA ST 28TH FL
HOUSTON, TX 77002

**First MORTGAGOR**

FIELDWOOD ENERGY LLC

**First MORTGAGEE**

PETROAMIGOS SUPPLY INC

| | | |
|---|---|---|

**Index Type :** MORTGAGE

**File # :** 2020-00004699

**Type of Document :** MATERIALMANS LIEN

**Book :** 781      **Page :** 468

**Recording Pages :** 15

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Plaquemines Parish, Louisiana.

This instrument was eRecorded.

On (Recorded Date) : 11/09/2020

At (Recorded Time) : 2:29:36PM

CLERK OF COURT
KIM TURLICH-VAUGHAN
Parish of Plaquemines
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 11/09/2020 at 2:29:36
Recorded in Book 781 Page 468
File Number 2020-00004699

*Kim Turlich-Vaughan*

Clerk of Court

**Return To :**   HUGHES WATTERS & ARKANASE LLP
1201 LOUISIANA ST 28TH FL
HOUSTON, TX 77002

Do not Detach this Recording Page from Original Document

# Plaquemines Parish Recording Page

**Kim Turlich-Vaughan**
**Clerk of Court**
PO Box 40
Belle Chasse, LA  70037
(504) 934-6610

**Received From :**
HUGHES WATTERS & ARKANASE LLP
1201 LOUISIANA ST 28TH FL
HOUSTON, TX 77002

**First MORTGAGOR**

FIELDWOOD ENERGY LLC

**First MORTGAGEE**

PETROAMIGOS SUPPLY INC

| | | | |
|---|---|---|---|
| **Index Type :** | MORTGAGE | **File # :** | 2020-00004699 |
| **Type of Document :** | MATERIALMANS LIEN | | |
| | | **Book :** 781 | **Page :** 468 |
| **Recording Pages :** | 15 | | |

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Plaquemines Parish, Louisiana.

This instrument was eRecorded.

On (Recorded Date) : 11/09/2020

At (Recorded Time) : 2:29:36PM

_Kim Turlich-Vaughan_
Clerk of Court

**Return To :**   HUGHES WATTERS & ARKANASE LLP
1201 LOUISIANA ST 28TH FL
HOUSTON, TX  77002

Do not Detach this Recording Page from Original Document

<u>**OIL WELL LIEN AFFIDAVIT, NOTICE OF**</u>
<u>**CLAIM OF LIEN AND STATEMENT OF PRIVILEGE**</u>
*La. R.S. 9:4861, et seq,*

**STATE OF LOUISIANA**

**PARISH OF LAFOURCHE/JEFFERSON/PLAQUEMINES**

 **BEFORE ME,** the undersigned authority, personally came and appeared:

**MR. MIGUEL ALVAREZ**

who, after being duly sworn, did depose and say:

 1. He is the Chief Financial Officer of PetroAmigos Supply, Inc. ("PetroAmigos"), 777 North Eldridge Parkway, Suite 400, Houston, Texas 77079, and he is duly authorized to make and is making this affidavit for and on behalf of PetroAmigos.

 2. PetroAmigos is in the business of furnishing labor, equipment, machinery, and materials, and related services in support of development, exploration, maintenance, operation, and abandonment of oil and gas well(s).

 3. In connection with its business, PetroAmigos contracted to supply services, labor, equipment, materials and supplies and related services used in well operation, production to Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042 ("Fieldwood").

 4. Between approximately February 29, 2020, through May 24, 2020 (the "Applicable Period"), PetroAmigos supplied goods, equipment, supplies, services, materials and related services to Fieldwood in connection with the operation, including drilling, completing, testing, production, reworking of certain wells located as follows:

> All that certain tract or parcel of land situated in OFFSHORE JEFFERSON, PLAQUEMINES, AND/OR LAFOURCHE PARISHES, STATE OF LOUISIANA, OUTER CONTINENTAL SHELF, GULF OF MEXICO, containing approximately 5760 acres of land, more or less, being all of BLOCK 40, GREEN CANYON AREA, FIELD GC039, EIA FIELD CODE 846039, and being the same land described by that certain Oil & Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act, OCS Official Protraction Diagram NG15-03, **Serial Number OCS-G34536, dated effective 10/2012** (the "Lease").

5.      As of the present date, a remaining principle amount of $488,282.28 is due and owing on Invoice Nos. PA152-35553-1 and PA152-35575-1 (the "Invoices") for those certain goods, equipment, supplies and services provided by PetroAmigos to the Lease during the Applicable Period, together with accruing contractual interest, plus attorneys' fees and costs. True and correct copies of the Invoices are attached hereto and incorporated herein, *in globo*, as Exhibit A.

6.      At all relevant times hereto, the labor, equipment, supplies and services provided by PetroAmigos were used for or in connection with the drilling, exploration, development, operation, and/or abandonment of the Lease.

7.      As evidenced by the records of the United States Department of Interior, Bureau of Ocean Energy Management (the "BOEM"), Fieldwood was at all relevant times and remains the operator of the above-referenced Lease.

8.      This Oil Well Lien Affidavit is made for the purpose of securing payment of the debt owed by Fieldwood to PetroAmigos as described herein and is made in accordance with La. R.S. 9:4861, et seq., and all other applicable laws for the purposes of preserving the liens and privileges granted by law to PetroAmigos on the following: (1) the Lease described above, and any wells located on the Lease; (2) the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein, together with such parties' interest in any (a) well(s), building, tank, leasehold pipeline, platforms, machinery, flowlines, gathering lines, and other related equipment and other construction of facility located thereon, (b) all movables used in the operation of the well attached thereto or located on the Lease and/or well site, including, but not limited to, monitoring, measuring, metering, and control equipment, appurtenances, appliances, equipment and other structures, and (c) tract of land, servitude or other lease described in La. R.S. 9:4861 (12)(c) covering the lease; (3) a drilling or other rig located at the Lease, if the rig is owned by the operator of the Lease, Fieldwood, BOEM Operator No. 03295; (4) all hydrocarbons produced from the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein without limitation and (5) the proceeds received by, and the obligations owed to, any lessee or operating interest from the disposition of hydrocarbons subject

to the privilege for the amount due for the labor, supplies, and services, in principle and interest, and for the cost of preparing and recording the privilege, or any notice of *lis pendens* and contractual or statutory attorneys' fees.

9.      That this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being filed in the Mortgage Records of Jefferson, Lafourche, and Plaquemines Parishes, State of Louisiana and with the BOEM.

10.      That a copy of this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being delivered to the lessee(s) and Operator(s) of the Lease at the following: (a) Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, TX 77042; and (b) Fieldwood Energy, LLC, through its registered agent, Capital Corporate Services, Inc., 8550 United Plaza Building II, Ste. 305, Baton Rouge, LA 70809.

Thus done and signed in Houston, Texas on this __30__ day of __October__, 2020

**{Signatures on Next Page}**

PetroAmigos Supply, Inc.

By: 

Name: Miguel A Alvarez
Its: Vice President Of Finance


THE STATE OF TEXAS          §
                            §
COUNTY OF HARRIS            §

BEFORE ME, the undersigned authority, on this day personally appeared Miguel A Alvarez, Vice President Of Finance for Petro Amigos Supply, Inc., known to me to be the person whose name is subscribed to the foregoing instrument and who upon oath swore that the foregoing statements were true and within her personal knowledge and who acknowledged to me that he executed the same for the purpose and consideration therein expressed.

SWORN TO AND SUBSCRIBED before me, under my hand and seal of office, this the **30** day of **October** , 2020.


TERESA CHERRY
Notary ID #129508834
My Commission Expires
July 31, 2021

By: _____

Notary Public in and for the State of Texas

# Invoice



**Petro Amigos Supply Inc.**
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079  USA
Ph:  281-497-0858
Fax: 281-497-1575

| Invoice Number: PA152-35553-1 | Invoice Date: 5/15/2020 | Order Number: FW-D18136 REV-1 | Terms: NET 60 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Sold To:** | FIELDWOOD ENERGY<br>2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200<br>HOUSTON, TEXAS 77042 USA | **Ship To:** | FIELDWOOD ENERGY<br>C/O TUBOSCOPE - AMELIA<br>2104 HWY 662<br>AMELIA, LOUISIANA 70340 USA |
| **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:** | CHRIS JOUBAN<br><br>337-354-8141<br>chris.jouban@fwellc.com | **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:**<br>**Charge:** | CHARLENE BLANCHARD<br>985-631-1855<br>985-631-1846<br>CHARLENE.BLANCHARD@NOV.COM<br>Routing# 580002 |

| Ship Date: 05/13/2020 | Shipped Via: WILL CALL | FOB: TRUCKS - AMELIA, LOUISIANA |
|---|---|---|
| Well: GC 40 #2 S/T (KATMAI) | AFE: FW192007 | OCSG: 34536 |

## Invoice Details

| Quantity | Units | Description | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|
| 1,253.6500 | FT | Pipe: 4-1/2" OD 18.90# HP2-13CR110 LION CLEAR RUN  JFE SMLS R3 | $72.87 | $91,353.48 | | |
| 30.0000 | JT | | | | | |
| 2,008.1600 | FT | Pipe: 5-1/2" OD 26.00# HP2-13CR110 LION CLEAR RUN  JFE SMLS R3 | $102.60 | $206,037.22 | | |
| 48.0000 | JT | | | | | |
| 1,500.5000 | FT | Pipe: 5-1/2" OD 29.70# HP2-13CR110 LION CLEAR RUN  JFE SMLS R3 | $111.15 | $166,780.58 | | |
| 36.0000 | JT | | | | | |

| State:<br>LOUISIANA (0.0000%)<br>$0.00 | City:<br>AMELIA (0.0000%)<br>$0.00 | County/Parish:<br>(0.0000%)<br>$0.00 | | |
|---|---|---|---|---|
| **Tax Status: Offshore** | | | Subtotal:<br>Sales Tax:<br>**Grand Total:** | $464,171.28<br>$0.00<br>**$464,171.28** |

| Notes: |
|---|

**EXHIBIT "A"**

## ADDITIONAL REMITTANCE OPTIONS

**Wire Instructions:**

| | |
|---|---|
| Beneficiary: | Petro Amigos Supply, Inc. |
| Bank Address: | US Bank<br>One US Bank Plaza<br>7th and Washington<br>St. Louis, MO 631001 |
| Bank Phone: | 1(800)872-2657 |
| ABA Number: | 081000210 |
| Account Number: | 152310858062 |

**Overnight Payments:**

Petro Amigos Supply, Inc.
SL-MO-C1WS
1005 Convention Plaza
St.Louis, MO 63101

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice. Interest at not less than ten percent (10%) charged after the due date. Receipt of funds will constitute payment date.

## CONDITIONS OF SALE AND TRADE CUSTOMS

1. Quotations are subject to change without notice. All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2. When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer. Lighterage or transfer charges at foreign port are also for account of the Buyer. Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller. In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller. Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3. All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller. Should the Buyer fail to fulfill their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped. The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof. Orders for special goods may not be cancelled. Buyer shall become liable for and pay Seller's cancellations charges.

4. It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale. Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.      Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service.  Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO. Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller.  The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller.  No material may be returned for credit or replacement except by written arrangement.

6.      The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras.  Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold.  All goods made to special specifications are deemed to be inspected and accepted before shipment is made.  Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.      Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights.  It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.      IN NO EVENT SHALL SELLER OR ITS AFFIALATES BE LIABLE FOR (I) POLLUTION, CONTAMINATION OR RADIATION  DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.      The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.     Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.     Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12.   No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13.   Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14.   These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material. There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15.   Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16.   In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17.   The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18.   If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue. In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing. Such arbitration shall be conducted in the English language. If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules. If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules. The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.

# Invoice



**Petro Amigos Supply Inc.**
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079  USA
Ph:  281-497-0858
Fax:  281-497-1575

| Invoice Number: PA152-35575-1 | Invoice Date: 5/24/2020 | Order Number: FW-D18136 REV-1 | Terms: NET 60 |
|---|---|---|---|

| Sold To: | FIELDWOOD ENERGY<br>2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200<br>HOUSTON, TEXAS 77042 USA | Ship To: | FIELDWOOD ENERGY<br>C/O TUBOSCOPE - AMELIA<br>2104 HWY 662<br>AMELIA, LOUISIANA 70340 USA |
|---|---|---|---|
| Attention:<br>Fax:<br>Phone:<br>E-Mail: | CHRIS JOUBAN<br><br>337-354-8141<br>chris.jouban@fwellc.com | Attention:<br>Fax:<br>Phone:<br>E-Mail:<br>Charge: | CHARLENE BLANCHARD<br>985-631-1855<br>985-631-1846<br>CHARLENE.BLANCHARD@NOV.COM<br>Routing# 580002 |

| Ship Date: 05/23/2020 | Shipped Via: WILL CALL | FOB: TRUCKS - AMELIA, LOUISIANA |
|---|---|---|
| Well: GC 40 #2 S/T (KATMAI) | AFE: FW192007 | OCSG: 34536 |

### Invoice Details

| Quantity | Units | Description | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|
| 10,735.0000 | FT | Pipe: 5-1/2" OD 26.00# HP2-13CR110 LION CLEAR RUN  JFE SMLS R3 | $102.60 | $1,101,411.00 | | |
| 250.0000 | JT | | | | | |

| State:<br>LOUISIANA (0.0000%)<br>$0.00 | City:<br>AMELIA (0.0000%)<br>$0.00 | County/Parish:<br>(0.0000%)<br>$0.00 | | |
|---|---|---|---|---|

**Tax Status:  Offshore**

| | |
|---|---|
| Subtotal: | $1,101,411.00 |
| Sales Tax: | $0.00 |
| Grand Total: | $1,101,411.00 |

Notes:

ADDITIONAL REMITTANCE OPTIONS

Wire Instructions:

Beneficiary:          Petro Amigos Supply, Inc.

Bank Address:         US Bank
                      One US Bank Plaza
                      7th and Washington
                      St. Louis, MO 631001

Bank Phone:           1(800)872-2657
ABA Number:           081000210
Account Number:       152310858062
Overnight Payments:

                      Petro Amigos Supply, Inc.
                      SL-MO-C1WS
                      1005 Convention Plaza
                      St.Louis, MO 63101

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice. Interest at not less than ten percent (10%) charged after the due date. Receipt of funds will constitute payment date.

## CONDITIONS OF SALE AND TRADE CUSTOMS

1.    Quotations are subject to change without notice. All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2.    When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer. Lighterage or transfer charges at foreign port are also for account of the Buyer. Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller. In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller. Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3.    All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller. Should the Buyer fail to fulfill their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped. The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof. Orders for special goods may not be cancelled. Buyer shall become liable for and pay Seller's cancellations charges.

4.    It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale. Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.    Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service.  Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO. Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller.  The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller.  No material may be returned for credit or replacement except by written arrangement.

6.    The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras.  Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold.  All goods made to special specifications are deemed to be inspected and accepted before shipment is made.  Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.    Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights.  It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.    IN NO EVENT SHALL SELLER OR ITS AFFIALATES BE LIABLE FOR (I) POLLUTION, CONTAMINATION OR RADIATION  DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.    The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.    Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.    Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12.  No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13.  Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14.  These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material. There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15.  Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16.  In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17.  The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18.  If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue.  In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing.  Such arbitration shall be conducted in the English language.  If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules.  If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules.  The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.

# Lafourche Parish Recording Page

**Annette M. Fontana**
**CLERK OF COURT**
PO BOX 818
303 W 3rd St
Thibodaux, LA 70302
(985) 447-4841

**First MORTGAGOR**

FIELDWOOD ENERGY LLC

**First MORTGAGEE**

PETROAMIGOS SUPPLY INC

**Index Type :**   MORTGAGE

**Type of Document :** STATEMENT CLAIM

**Recording Pages :**          15

**Inst Number :** 1305777

**Book :** 2087          **Page :** 810

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Lafourche Parish, Louisiana.

On (Recorded Date) : 11/12/2020

At (Recorded Time) : 12:36:54PM

Certified On : 11/12/2020

Doc ID - 033606800015

CLERK OF COURT
ANNETTE M. FONTANA
Parish of Lafourche
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 11/12/2020 at 12:36:54
Recorded in Book  2087   Page   810
File Number     1305777

Deputy Clerk

Do not Detach this Recording Page from Original Document

# Lafourche Parish Recording Page

**Annette M. Fontana**
**CLERK OF COURT**
PO BOX 818
303 W 3rd St
Thibodaux, LA  70302
(985) 447-4841

**First MORTGAGOR**

FIELDWOOD ENERGY LLC

**First MORTGAGEE**

PETROAMIGOS SUPPLY INC

**Index Type :**   MORTGAGE

**Type of Document :** STATEMENT CLAIM

**Recording Pages :**          15

**Inst Number :** 1305777

**Book :** 2087      **Page :** 810

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Lafourche Parish, Louisiana.

On (Recorded Date) : 11/12/2020
At (Recorded Time) : 12:36:54PM

Deputy Clerk

Doc ID - 033606800015

Do not Detach this Recording Page from Original Document

**OIL WELL LIEN AFFIDAVIT, NOTICE OF
CLAIM OF LIEN AND STATEMENT OF PRIVILEGE**
*La. R.S. 9:4861, et seq,*

**STATE OF LOUISIANA**

**PARISH OF LAFOURCHE/JEFFERSON/PLAQUEMINES**

**BEFORE ME,** the undersigned authority, personally came and appeared:

**MR. MIGUEL A ALVAREZ**

who, after being duly sworn, did depose and say:

1. He is the PetroAmigos Supply, Inc. ("PetroAmigos"), 777North Eldridge Parkway, Suite 400, Houston, Texas 77079, and he is duly authorized to make and is making this affidavit for and on behalf of PetroAmigos.

2. PetroAmigos is in the business of furnishing labor, equipment, machinery, and materials, and related services in support of development, exploration, maintenance, operation, and abandonment of oil and gas well(s).

3. In connection with its business, PetroAmigos contracted to supply services, labor, equipment, materials and supplies and related services used in well operation, production to Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042 ("Fieldwood").

4. Between approximately February 29, 2020, through May 24, 2020 (the "Applicable Period"), PetroAmigos supplied goods, equipment, supplies, services, materials and related services to Fieldwood in connection with the operation, including drilling, completing, testing, production, reworking of certain wells located as follows:

> All that certain tract or parcel of land situated in OFFSHORE JEFFERSON, PLAQUEMINES, AND/OR LAFOURCHE PARISHES, STATE OF LOUISIANA, OUTER CONTINENTAL SHELF, GULF OF MEXICO, containing approximately 5760 acres of land, more or less, being all of BLOCK 40, GREEN CANYON AREA, FIELD GC039, EIA FIELD CODE 846039, and being the same land described by that certain Oil & Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act, **Serial Number OCS-G34536, dated effective 10/2012** (the "Lease").

5.      As of the present date, a remaining principle amount of $488,282.28 is due and owing on Invoice Nos. PA152-35553-1 and PA152-35575-1 (the "Invoices") for those certain goods, equipment, supplies and services provided by PetroAmigos to the Lease during the Applicable Period, together with accruing contractual interest, plus attorneys' fees and costs. True and correct copies of the Invoices are attached hereto and incorporated herein, *in globo*, as Exhibit A.

6.      At all relevant times hereto, the labor, equipment, supplies and services provided by PetroAmigos were used for or in connection with the drilling, exploration, development, operation, and/or abandonment of the Lease.

7.      As evidenced by the records of the United States Department of Interior, Bureau of Ocean Energy Management (the "BOEM"), Fieldwood was at all relevant times and remains the operator of the above-referenced Lease.

8.      This Oil Well Lien Affidavit is made for the purpose of securing payment of the debt owed by Fieldwood to PetroAmigos as described herein and is made in accordance with La. R.S. 9:4861, et seq., and all other applicable laws for the purposes of preserving the liens and privileges granted by law to PetroAmigos on the following: (1) the Lease described above, and any wells located on the Lease; (2) the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein, together with such parties' interest in any (a) well(s), building, tank, leasehold pipeline, platforms, machinery, flowlines, gathering lines, and other related equipment and other construction of facility located thereon, (b) all movables used in the operation of the well attached thereto or located on the Lease and/or well site, including, but not limited to, monitoring, measuring, metering, and control equipment, appurtenances, appliances, equipment and other structures, and (c) tract of land, servitude or other lease described in La. R.S. 9:4861 (12)(c) covering the lease; (3) a drilling or other rig located at the Lease, if the rig is owned by the operator of the Lease, Fieldwood, BOEM Operator No. 03295; (4) all hydrocarbons produced from the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein without limitation and (5) the proceeds received by, and the obligations owed to, any lessee or operating interest from the disposition of hydrocarbons subject

to the privilege for the amount due for the labor, supplies, and services, in principle and interest, and for the cost of preparing and recording the privilege, or any notice of *lis pendens* and contractual or statutory attorneys' fees.

9.     That this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being filed in the Mortgage Records of Jefferson, Lafourche, and Plaquemines Parishes, State of Louisiana and with the BOEM.

10.     That a copy of this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being delivered to the lessee(s) and Operator(s) of the Lease at the following: (a) Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, TX 77042; and (b) Fieldwood Energy, LLC, through its registered agent, Capital Corporate Services, Inc., 8550 United Plaza Building II, Ste. 305, Baton Rouge, LA 70809.

Thus done and signed in Houston, Texas on this _30_ day of _October_ , 2020

**{Signatures on Next Page}**

PetroAmigos Supply, Inc.

By: 

Name: Miguel A Alvarez
Its: Vice President Of Finance

THE STATE OF TEXAS            §
                             §
COUNTY OF HARRIS             §

BEFORE ME, the undersigned authority, on this day personally appeared Miguel A Alvarez, Vice President Of Finance for Petro Amigos Supply, Inc., known to me to be the person whose name is subscribed to the foregoing instrument and who upon oath swore that the foregoing statements were true and within her personal knowledge and who acknowledged to me that he executed the same for the purpose and consideration therein expressed.

SWORN TO AND SUBSCRIBED before me, under my hand and seal of office, this the **30** day of **October**                    , 2020.

TERESA CHERRY
Notary ID #129508834
My Commission Expires
July 31, 2021

By: _____

Notary Public in and for the State of Texas

*H.*

# Invoice



**Petro Amigos Supply Inc.**
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079 USA
Ph: 281-497-0858
Fax: 281-497-1575

| Invoice Number: PA152-35064-1 | Invoice Date: 2/29/2020 | Order Number: FW-D18136 REV-1 | Terms: NET 30 |
|---|---|---|---|

**Sold To:**
FIELDWOOD ENERGY
2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200
HOUSTON, TEXAS 77042 USA

**Attention:** KRIS KIMBLE
**Fax:**
**Phone:** 713-969-1329
**E-Mail:** kris.kimble@fwellc.com

**Ship To:**
FIELDWOOD ENERGY
C/O TUBOSCOPE - AMELIA
2104 HWY 662
AMELIA, LOUISIANA 70340 USA

**Attention:** CHARLENE BLANCHARD
**Fax:** 985-631-1855
**Phone:** 985-631-1846
**E-Mail:** CHARLENE.BLANCHARD@NOV.COM
**Charge:** Routing# 580002

| Ship Date: 02/27/2020 | Shipped Via: WILL CALL | FOB: TRUCKS – AMELIA, LOUISIANA |
|---|---|---|
| Well: Mississippi Canyon 948 #4 | AFE: FW205014 | OCSG: 28030 |

## Invoice Details

| Quantity | Units | Description | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|
| 42.1300 | FT | Pipe: 4-1/2" OD 18.90# HP2-13CR110 LION CLEAR RUN  JFE SMLS R3 | $72.87 | $3,070.01 | | |
| 1.0000 | JT | | | | | |

| State: | City: | County/Parish: |
|---|---|---|
| LOUISIANA (0.0000%) | AMELIA (0.0000%) | (0.0000%) |
| $0.00 | $0.00 | $0.00 |

**Tax Status:** Offshore

| | |
|---|---|
| Subtotal: | $3,070.01 |
| Sales Tax: | $0.00 |
| Grand Total: | $3,070.01 |
| Total Amount Due: | $3,070.01 |

Notes:

EXHIBIT "A"

## ADDITIONAL REMITTANCE OPTIONS

### Wire Instructions:

| | |
|---|---|
| Beneficiary: | Petro Amigos Supply, Inc. |
| Bank Address: | US Bank<br> One US Bank Plaza<br> 7th and Washington<br> St. Louis, MO 631001 |
| Bank Phone: | 1(800)872-2657 |
| ABA Number: | 081000210 |
| Account Number: | 152310858062 |

### Overnight Payments:

Petro Amigos Supply, Inc.
SL-MO-C1WS
1005 Convention Plaza
St.Louis, MO 63101

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice. Interest at not less than ten percent (10%) charged after the due date. Receipt of funds will constitute payment date.

## CONDITIONS OF SALE AND TRADE CUSTOMS

1.     Quotations are subject to change without notice. All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2.     When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer. Lighterage or transfer charges at foreign port are also for account of the Buyer. Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller. In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller. Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3.     All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller. Should the Buyer fail to fulfill their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped. The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof. Orders for special goods may not be cancelled. Buyer shall become liable for and pay Seller's cancellations charges.

4.     It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale. Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.      Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service.  Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO.  Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller.  The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller.  No material may be returned for credit or replacement except by written arrangement.

6.      The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras.  Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold.  All goods made to special specifications are deemed to be inspected and accepted before shipment is made.  Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.      Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights.  It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.      IN NO EVENT SHALL SELLER OR ITS AFFIALATES BE LIABLE FOR (I) POLLUTION, CONTAMINATION OR RADIATION  DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.      The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.     Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.     Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12.  No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13.  Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14.  These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material.  There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15.  Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16.  In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17.  The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18.  If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue.  In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing.  Such arbitration shall be conducted in the English language.  If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules. If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules.  The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.



# Invoice



**Petro Amigos Supply Inc.**
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079 USA
Ph: 281-497-0858
Fax: 281-497-1575

| Invoice Number: PA152-35185-1 | Invoice Date: 4/20/2020 | Order Number: 2908-2 | Terms: NET 60 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Sold To:** | FIELDWOOD ENERGY<br>2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200<br>HOUSTON, TEXAS 77042 USA | **Ship To:** | FIELDWOOD ENERGY<br>C/O TUBOSCOPE - AMELIA<br>WILL CALL<br>2084 HWY 662<br>AMELIA, LOUISIANA 70340 USA |
| **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:** | KRIS KIMBLE<br><br>713-969-1329<br>kris.kimble@fwellc.com | **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:**<br>**Charge:** | CHARLENE BLANCHARD<br>985-631-1855<br>985-631-1846<br>CHARLENE.BLANCHARD@NOV.COM<br>Platform: MC724APLT |

| Ship Date: 03/16/2020 | Shipped Via: SUMMIT TRANSIT LLC | FOB: TRUCKS - AMELIA, LOUISIANA |
|---|---|---|
| Well: | AFE: FW191024 | OCSG: |

## Invoice Details

| Quantity | Units | Description | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|
| 1.0000 | EA | Trucking to Yard | $3,372.73 | $3,372.73 | | |

Costs for moving 7 3/4" to Tuboscope Amelia from Tuboscope North

| State:<br>LOUISIANA (0.0000%)<br>$0.00 | City:<br>AMELIA (0.0000%)<br>$0.00 | County/Parish:<br>(0.0000%)<br>$0.00 | | |
|---|---|---|---|---|
| | | | Subtotal: | $3,372.73 |
| | | | Sales Tax: | $0.00 |
| | | | Grand Total: | $3,372.73 |

**Tax Status:** Offshore

| Notes: |
|---|

## ADDITIONAL REMITTANCE OPTIONS

### Wire Instructions:

| | |
|---|---|
| Beneficiary: | Petro Amigos Supply, Inc. |
| Bank Address: | US Bank<br>One US Bank Plaza<br>7th and Washington<br>St. Louis, MO 631001 |
| Bank Phone: | 1(800)872-2657 |
| ABA Number: | 081000210 |
| Account Number: | 152310858062 |

### Overnight Payments:

Petro Amigos Supply, Inc.
SL-MO-C1WS
1005 Convention Plaza
St.Louis, MO 63101

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice. Interest at not less than ten percent (10%) charged after the due date. Receipt of funds will constitute payment date.

## CONDITIONS OF SALE AND TRADE CUSTOMS

1.      Quotations are subject to change without notice. All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2.      When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer. Lighterage or transfer charges at foreign port are also for account of the Buyer. Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller. In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller. Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3.      All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller. Should the Buyer fail to fulfill their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped. The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof. Orders for special goods may not be cancelled. Buyer shall become liable for and pay Seller's cancellations charges.

4.      It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale. Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.     Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service.  Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO.  Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller.  The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller.  No material may be returned for credit or replacement except by written arrangement.

6.     The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras.  Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold.  All goods made to special specifications are deemed to be inspected and accepted before shipment is made.  Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.     Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights.  It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.     IN NO EVENT SHALL SELLER OR ITS AFFIALATES BE LIABLE FOR (I) POLLUTION, CONTAMINATION OR RADIATION DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.     The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.     Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.     Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12.  No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13.  Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14.  These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material.  There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15.  Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16.  In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17.  The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18.  If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue.  In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing.  Such arbitration shall be conducted in the English language.  If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules.  If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules.  The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.

**EXHIBIT B**

Inst. # 2020068821 Pages: 1 of 14  I certify this instrument filed on:  11/9/2020 4:37 PM
Doc: LIEN Don Davis, Judge of Probate Mobile County, AL Rec: $38.00
Clerk: JHANCOCK ERecorded

## STATEMENT OF LIEN
## ALA CODE § 35-11-213, *et seq.*

**STATE OF ALABAMA**

**COUNTY OF MOBILE**

**BEFORE ME,** the undersigned authority, personally came and appeared:

### MR. MIGUEL ALVAREZ

who, after being duly sworn, did depose and say:

1.      He is the Chief Financial Officer of PetroAmigos Supply, Inc. ("PetroAmigos"), 777 North Eldridge Parkway, Suite 400, Houston, Texas 77079, and he is duly authorized to make and is making this affidavit for and on behalf of PetroAmigos.

2.      PetroAmigos is in the business of furnishing labor, equipment, machinery, and materials, and related services in support of development, exploration, maintenance, operation, and abandonment of oil and gas well(s).

3.      In connection with its business, PetroAmigos contracted to supply services, labor, equipment, materials and supplies and related services used in well operation, production to Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042 ("Fieldwood").

4.      Between approximately February 29, 2020, through May 24, 2020 (the "Applicable Period"), PetroAmigos supplied goods, equipment, supplies, services, materials and related services to Fieldwood in connection with the operation, including drilling, completing, testing, production, reworking of certain wells located as follows:

> All that certain tract or parcel of land situated in OFFSHORE MOBILE COUNTY, ALABAMA, OUTER CONTINENTAL SHELF, GULF OF MEXICO, containing approximately 4,320 acres of land, more or less, being all of BLOCK 948 (S/2 and S/2N/2) MISSISSIPPI CANYON AREA, FIELD MC948, EIA FIELD CODE 874948, and being the same land described by that certain Oil & Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act, **Serial Number OCS-G28030, OCS Official Protraction Diagram NH16-10, dated effective 07/01/2006** (the "Lease")

5.      As of the present date, a remaining principle amount of $6,442.74 is due and owing on Invoice Nos. PA152-35064-1 and PA152-35185-1 (the "Invoices") for those certain goods, equipment,

supplies and services provided by PetroAmigos to the Lease during the Applicable Period, together with accruing contractual interest, plus attorneys' fees and costs. True and correct copies of the Invoices are attached hereto and incorporated herein, for all purposes, as <u>Exhibit A</u>.

      6.     At all relevant times hereto, the labor, equipment, supplies and services provided by PetroAmigos were used for or in connection with the drilling, exploration, development, operation, and/or abandonment of the Lease.

      7.     As evidenced by the records of the United States Department of Interior, Bureau of Ocean Energy Management (the "BOEM"), Fieldwood was at all relevant times and remains the operator of the above-referenced Lease.

      8.     This Statement of Lien is made for the purpose of securing payment of the debt owed by Fieldwood to PetroAmigos as described herein and is made in accordance with ALA CODE § 35-11-213, *et seq.*, and all other applicable laws for the purposes of preserving the liens and privileges granted by law to PetroAmigos on the following: (1) the Lease described above, and any wells located on the Lease; (2) the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein, together with such parties' interest in any (a) well(s), building, tank, leasehold pipeline, platforms, machinery, flowlines, gathering lines, and other related equipment and other construction of facility located thereon, (b) all movables used in the operation of the well attached thereto or located on the Lease and/or well site, including, but not limited to, monitoring, measuring, metering, and control equipment, appurtenances, appliances, equipment and other structures, and (c) tract of land, servitude or other lease described in ALA CODE § 35-11-213 *et seq* (12)(c) covering the lease; (3) a drilling or other rig located at the Lease, if the rig is owned by the operator of the Lease, Fieldwood, BOEM Operator No. 03295; (4) all hydrocarbons produced from the operating interest of the operator of the Lease, Fieldwood, and the operating interest of any participating lessee(s) therein without limitation and (5) the proceeds received by, and the obligations owed to, any lessee or operating interest from the disposition of hydrocarbons subject to the privilege for the amount due for the labor, supplies, and services, in principle

and interest, and for the cost of preparing and recording the privilege, or any notice of *lis pendens* and contractual or statutory attorneys` fees.

      9.     That this Statement of Lien is being filed in the Mortgage and Lien Records of Mobile County, State of Alabama, and with the BOEM.

      10.     That a copy of this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being delivered to the lessee(s) and Operator(s) of the Lease at the following: (a) Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, TX 77042; and (b) Fieldwood Energy, LLC, through its registered agent, Capital Corporate Services, Inc., 8550 United Plaza Building II, Ste. 305, Baton Rouge, LA 70809.

      Thus done and signed in Houston, Texas on this __30__ day of __October__ , 2020

**{Signatures on Next Page}**

PetroAmigos Supply, Inc.

By: 

Name: Miguel A. Alvarez
Its: Vice President Of Finance

THE STATE OF TEXAS     §
                       §
COUNTY OF HARRIS       §

BEFORE ME, the undersigned authority, on this day personally appeared Miguel Alvarez, Vice President Of Finance for Petro Amigos Supply, Inc., known to me to be the person whose name is subscribed to the foregoing instrument and who upon oath swore that the foregoing statements were true and within her personal knowledge and who acknowledged to me that he executed the same for the purpose and consideration therein expressed.

SWORN TO AND SUBSCRIBED before me, under my hand and seal of office, this the 30 day of ___October___, 2020.

TERESA CHERRY
Notary ID # 129508834
My Commission Expires
July 31, 2021

By: _____
Notary Public in and for the State of Texas

A.

# Invoice



**Petro Amigos Supply Inc.**
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079 USA
Ph: 281-497-0858
Fax: 281-497-1575

| Invoice Number: PA152-35064-1 | Invoice Date: 2/29/2020 | Order Number: FW-D18136 REV-1 | Terms: NET 30 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Sold To:** | FIELDWOOD ENERGY<br>2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200<br>HOUSTON, TEXAS 77042 USA | **Ship To:** | FIELDWOOD ENERGY<br>C/O TUBOSCOPE - AMELIA<br>2104 HWY 662<br>AMELIA, LOUISIANA 70340 USA |
| **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:** | KRIS KIMBLE<br><br>713-969-1329<br>kris.kimble@fwellc.com | **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:**<br>**Charge:** | CHARLENE BLANCHARD<br>985-631-1855<br>985-631-1846<br>CHARLENE.BLANCHARD@NOV.COM<br>Routing# 580002 |

| | | |
|---|---|---|
| Ship Date: 02/27/2020 | Shipped Via: WILL CALL | FOB: TRUCKS - AMELIA, LOUISIANA |
| Well: Mississippi Canyon 948 #4 | AFE: FW205014 | OCSG: 28030 |

## Invoice Details

| Quantity | Units | Description | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|
| 42.1300 | FT | Pipe: 4-1/2" OD 18.90# HP2-13CR110 LION CLEAR RUN JFE SMLS R3 | $72.87 | $3,070.01 | | |
| 1.0000 | JT | | | | | |

| State: | City: | County/Parish: | | |
|---|---|---|---|---|
| LOUISIANA (0.0000%) | AMELIA (0.0000%) | (0.0000%) | Subtotal: | $3,070.01 |
| $0.00 | $0.00 | $0.00 | Sales Tax: | $0.00 |
| Tax Status: Offshore | | | Grand Total: | $3,070.01 |
| | | | Total Amount Due: | $3,070.01 |

| Notes: |
|---|
| |

EXHIBIT "A"

## ADDITIONAL REMITTANCE OPTIONS

**Wire Instructions:**

| | |
|---|---|
| **Beneficiary:** | Petro Amigos Supply, Inc. |
| **Bank Address:** | US Bank<br>One US Bank Plaza<br>7th and Washington<br>St. Louis, MO 631001 |
| **Bank Phone:** | 1(800)872-2657 |
| **ABA Number:** | 081000210 |
| **Account Number:** | 152310858062 |
| **Overnight Payments:** | |
| | Petro Amigos Supply, Inc.<br>SL-MO-C1WS<br>1005 Convention Plaza<br>St.Louis, MO 63101 |

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice. Interest at not less than ten percent (10%) charged after the due date. Receipt of funds will constitute payment date.

## CONDITIONS OF SALE AND TRADE CUSTOMS

1. Quotations are subject to change without notice. All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2. When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer. Lighterage or transfer charges at foreign port are also for account of the Buyer. Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller. In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller. Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3. All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller. Should the Buyer fail to fulfill their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped. The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof. Orders for special goods may not be cancelled. Buyer shall become liable for and pay Seller's cancellations charges.

4. It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale. Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.   Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service.  Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO.  Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller.  The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller.  No material may be returned for credit or replacement except by written arrangement.

6.   The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras.  Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold.  All goods made to special specifications are deemed to be inspected and accepted before shipment is made.  Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.   Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights.  It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.   IN NO EVENT SHALL SELLER OR ITS AFFIALATES BE LIABLE FOR (I) POLLUTION, CONTAMINATION OR RADIATION  DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.   The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.   Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.   Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12. No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13. Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14. These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material. There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15. Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16. In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17. The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18. If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue. In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing. Such arbitration shall be conducted in the English language. If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules. If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules. The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.



# Invoice



**Petro Amigos Supply Inc.**
777 N. Eldridge Pkwy, Suite 400
Houston, TX 77079 USA
Ph: 281-497-0858
Fax: 281-497-1575

| Invoice Number: PA152-35185-1 | Invoice Date: 4/20/2020 | Order Number: 2908-2 | Terms: NET 60 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Sold To:** | FIELDWOOD ENERGY<br>2000 W. SAM HOUSTON PARKWAY SOUTH, SUITE 1200<br>HOUSTON, TEXAS 77042 USA | **Ship To:** | FIELDWOOD ENERGY<br>C/O TUBOSCOPE - AMELIA<br>WILL CALL<br>2084 HWY 662<br>AMELIA, LOUISIANA 70340 USA |
| **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:** | KRIS KIMBLE<br><br>713-969-1329<br>kris.kimble@fwellc.com | **Attention:**<br>**Fax:**<br>**Phone:**<br>**E-Mail:**<br>**Charge:** | CHARLENE BLANCHARD<br>985-631-1855<br>985-631-1846<br>CHARLENE.BLANCHARD@NOV.COM<br>Platform: MC724APLT |

| Ship Date: 03/16/2020 | Shipped Via: SUMMIT TRANSIT LLC | FOB: TRUCKS - AMELIA, LOUISIANA |
|---|---|---|
| Well: | AFE: FW191024 | OCSG: |

### Invoice Details

| Quantity | Units | Description | | Unit Price | Amount | T | D |
|---|---|---|---|---|---|---|---|
| 1.0000 | EA | Trucking to Yard | | $3,372.73 | $3,372.73 | | |
| | | Costs for moving 7 3/4" to Tuboscope Amelia from Tuboscope North | | | | | |

| State:<br>**LOUISIANA (0.0000%)**<br>$0.00 | City:<br>**AMELIA (0.0000%)**<br>$0.00 | County/Parish:<br>**(0.0000%)**<br>$0.00 | | **Subtotal:**<br>**Sales Tax:**<br>**Grand Total:** | $3,372.73<br>$0.00<br>$3,372.73 |
|---|---|---|---|---|---|

Tax Status: Offshore

| Notes: |
|---|

## ADDITIONAL REMITTANCE OPTIONS

**Wire Instructions:**

| | |
|---|---|
| Beneficiary: | Petro Amigos Supply, Inc. |
| Bank Address: | US Bank<br>One US Bank Plaza<br>7th and Washington<br>St. Louis, MO 631001 |
| Bank Phone: | 1(800)872-2657 |
| ABA Number: | 081000210 |
| Account Number: | 152310858062 |

**Overnight Payments:**

Petro Amigos Supply, Inc.
SL-MO-C1WS
1005 Convention Plaza
St.Louis, MO 63101

## TERMS OF SALE

These Terms of Sale relate to the sale from time to time to Buyer by Petro Amigos Supply, Inc. ("Seller") of any products and/or services (collectively, the "Material"), which shall be described in price quotations and invoices from Seller to Buyer. All price quotations and sales to Buyer shall be under these Terms of Sale and shall be expressly limited to the following terms and conditions and the terms and conditions set forth herein.

Unless otherwise specified, terms are net cash; all invoices become net due and payable thirty days from date of invoice.  Interest at not less than ten percent (10%) charged after the due date.  Receipt of funds will constitute payment date.

## CONDITIONS OF SALE AND TRADE CUSTOMS

1.      Quotations are subject to change without notice.  All shipments will be billed at the Seller's prices in effect at time of shipment but shall not exceed the maximum prices lawfully established under any applicable law or governmental regulation in effect at time of shipment.

2.      When sales contracts are f.o.b., Works or Warehouse, our responsibility ceases upon delivery of goods to carrier; when f.a.s. Port of Export we agree to deliver goods along side of carrying steamer or on the Dock or Pier receiving cargo for steamer provided Buyer supplies specific delivery instructions within the free time limits, and in the event necessary delivery instructions are not available for delivery within the free time limits, any and all demurrage or storage charges will be for the account of the Buyer; when C.I.F. Destination Port, we agree to pay ocean steamship freight and insurance charges, the insurance covering goods from land to land; however, all consular fees and other miscellaneous charges at point of export or Port of Entry are for the account of the Buyer.  Lighterage or transfer charges at foreign port are also for account of the Buyer.  Delivery is subject to federal and state laws and regulations, fires, strikes, disputes with workmen, floods, accidents, embargoes, delays in transportation, shortage of cars, shortage of fuel or other material, shortage of labor, and to any other causes beyond reasonable control of the Manufacturer or Seller.  In the event of damage or loss in transit, consignee must give immediate written notice to the carrier's agent at destination and to the Seller.  Within thirty days after receipt of goods, the Seller must be notified of any claims for shortage, errors, in shipment or errors in charges.

3.      All orders, shipments, and settlements are subject to approval by the Treasurer of the Seller.  Should the Buyer fail to fulfill their terms of payment of any order between the Buyer and the Seller, the Seller may defer further shipments until such payments are made or may cancel any or all orders unshipped.  The Seller reserves the right to require from the Buyer at any time satisfactory security for performance of the Buyer's obligations under any order placed with the Seller, and refusal or failure to furnish such security will entitle the Seller to suspend shipment until such security is furnished or to cancel the order, or orders, or the unshipped portion thereof.  Orders for special goods may not be cancelled.  Buyer shall become liable for and pay Seller's cancellations charges.

4.      It is a condition of this sale that all preprinted terms and conditions on purchase orders are superseded entirely by the terms and conditions of these Terms of Sale. These Terms of Sale shall become controlling if the Buyer accepts delivery of all or any part of the Material. Buyer's acceptance of delivery of all or any part of the Material shall be construed as an explicit waiver of (i) any terms contained in any other communication proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale, and (ii) any obligation on the part of Seller, whether express or implied, to notify Buyer of its objections to any such additional or different terms. Any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall have no force or effects and shall not constitute any part of these Terms of Sale between Seller and Buyer unless expressly accepted by Seller in writing by a duly authorized signatory of Seller. Buyer hereby agrees that Seller's failure to object to any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms of Sale shall not be interpreted as or assumed to be Seller's assent to their inclusion as part of these Terms of Sale.  Buyer understands and acknowledges that the terms and conditions of these Terms of Sale are specific to this transaction; therefore, any terms proposed by Buyer in other forms, purchase orders or change orders that are additional to or different from those agreed upon in these Terms

of Sale shall be considered as materially altering the terms of these Terms of Sale, and these Terms of Sale constitute a notification by Seller of its objection to any such additional or different terms.

5.   Seller warrants goods of its own manufacture against defects in material and workmanship only, for a period of one year from the date of purchase, to the extent that it will repair or replace such goods f.o.b. point of manufacture, or allow credit therefore, at its election, when such goods are in the hands of the original purchaser and used in normal use and service. Other goods are warranted only to the extent of the express warranty of the manufacturer thereof and to the extent such are enforceable by Seller. THERE ARE NO STANDARDS OF PERFORMANCE, GUARANTEES OR WARRANTIES WHICH EXTEND BEYOND THOSE EXPRESSED IN THIS AGREEMENT. EXCEPT FOR THE STANDARDS, GUARANTEES AND WARRANTIES EXPRESSED IN THIS AGREEMENT, SELLER DISCLAIMS, AND BUYER WAIVES, ANY IMPLIED STANDARDS, GUARANTEES OR WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, COURSE OF DEALING, CUSTOM, TRADE OR USAGE OR OTHERWISE, AS TO ANY SERVICES WHICH ARE THE SUBJECT OF THIS TRANSACTION BETWEEN THE PARTIES HERETO. Manila cordage, wire rope, or secondhand goods are not warranted or guaranteed by Seller. The Seller shall be notified promptly of any material claimed to be defective and such material shall be subject to inspection by the Seller. No material may be returned for credit or replacement except by written arrangement.

6.   The Materials shall be subject to Seller's standard manufacturing variations, classifications and extras. Seller reserves the right to change specifications at any time without incurring obligation for equipment previously or subsequently sold. All goods made to special specifications are deemed to be inspected and accepted before shipment is made. Packaging and loading will comply with current Simplified Practice Recommendations, Steel Products, published by U. S. Department of Commerce and loading rules of Association of American Railroads.

7.   Buyer hereby releases Seller from liability for damage to the Material or other property of the Buyer and its liability should be limited to the proceeds of insurance maintained by the Buyer, with waiver of subrogation rights. It is the intent of the parties that Buyer will take out and maintain all appropriate insurance to protect all of its property.

8.   IN NO EVENT SHALL SELLER OR ITS AFFIALATES BE LIABLE FOR (I) POLLUTION, CONTAMINATION OR RADIATION  DAMAGE (INCLUDING THE COST OF CONTAINMENT, CLEAN UP AND DISPOSAL), AND/OR (II) SUBSURFACE LOSS OR DAMAGE, INCLUDING LOSS OF OR DAMAGE TO ANY RESERVOIR, FORMATION, STRATA, WELL OR BOREHOLE OR IN-HOLE EQUIPMENT, OR IMPAIRMENT OF ANY PROPERTY RIGHT TO WATER, OIL, GAS OR OTHER MINERAL SUBSTANCES, AND /OR (III) DAMAGE, LOSS OR DESTRUCTION, OR PERSONAL INJURY OR DEATH ARISING ON THE SURFACE AS A RESULT OF SUBSURFACE OCCURRENCE (INCLUDING DAMAGE TO OR LOSS OR DESTRUCTION OF ANY EQUIPMENT, DRILLING RIG, PLATFORM OR OTHER FIXED OR FLOATING STRUCTURE AT OR AROUND THE WELL SITE), AND/OR (IV) KILLING OR REGAINING CONTROL OF A WILD WELL, OR REDRILLING, REWORKING OR FISHING (INCLUDING THE COST THEREOF), AND BUYER HEREBY RELEASES SELLER FOR ANY LIABILITY THEREOF.

9.   The aggregate liability of Seller with respect to claims arising out of the performance or non-performance of obligations in connection with the performance or non-performance of any Material, whether based on contract, tort (including negligence), strict liability, or otherwise, shall be limited to the amount of compensation (principal revenue) paid to the Seller for the Material under a purchase order (excluding the value of materials, equipment and supplies procured by Seller for Buyer) and shall end after six (6) months of delivery of each Service. Under no circumstances shall Seller or any of its vendors of any tier providing equipment, materials or services be liable to Buyer for consequential loss or damage, including but not limited to loss or damage resulting from loss of use, loss of profits or revenues, cost of capital, loss of goodwill, claims of Buyer's customers or like items of loss or damage, and Buyer hereby releases Seller and its vendors therefrom.

10.   Any taxes, excises, levies, value added taxes, duties or similar charges which the Seller may be required to pay or collect under any existing or future law, upon or with respect to services and/or the sale, purchase, delivery, storage processing, use, consumption or transportation of any of the material covered hereby shall be for the account of the Buyer, and the quoted or otherwise applicable prices shall be increased thereby.

11.   Failure of the Seller to enforce any of these conditions or to exercise any right accruing through the default of the Buyer shall not affect or impact the Seller's rights in case such default continues or in case of any subsequent default of the Buyer and such failure shall not constitute a waiver of other or future defaults of the Buyer.

12.    No statement or recommendation made or assistance given by the Seller or its representatives to the Buyer or its representatives, in connection with the use of any products by the Buyer, shall constitute a waiver by the Seller of any of the provisions hereof or affect the Seller's liability, as herein defined.

13.    Seller certifies that goods of its manufacture covered hereby were produced in compliance with all applicable requirements of Sections 6, 7, and 12 of the Fair Labor Standards Act, as amended and of the regulations and orders of the U. S. Department of Labor issued under Section 14 thereof.

14.    These Terms of Sale represent the entire agreement of the parties in relation to the sale of the Material.  There are no understandings or agreements between the Buyer and the Seller relative hereto which are not fully expressed herein, and no change made herein shall be valid unless it is made in writing and signed by both parties. Buyer may not assign or in any way dispose of its rights or obligations under these Terms of Sale without the prior written consent of Seller.

15.    Buyer's remedies specified in these Terms of Sale are the sole and exclusive remedies of Buyer for liabilities of Seller to Buyer arising out of or in connection with the Material. The waivers and disclaimers of liability, releases from liability, limitations of liability and exclusive remedy provisions and indemnity and hold harmless obligations expressed throughout these Terms of Sale (i) shall apply even in the event of the fault, negligence (in whole or in part), strict liability, breach of contract, or otherwise of the party released or whose liability is waived, disclaimed, limited or fixed up by such exclusive remedy provision, indemnified or held harmless, (ii) shall extend to such party's related or affiliated entities and its and their directors, officers, employees and agents, and (iii) shall control over any change order or other communication between the Buyer and Seller.

16.    In the event that any of the provisions, or portions, or applications thereof, of these Terms of Sale is held to be unenforceable or invalid by any court of competent jurisdiction, the validity and enforceability of the remaining provisions, or portions, or applications thereof, shall not be affected thereby. These Terms of Sale shall be interpreted under and governed by the laws of the State of Texas, USA.

17.    The parties will comply with all applicable laws, ordinances and regulations relating to these Terms of Sale and its performance. Any sale hereunder shall at all times be in strict conformity with all relevant export control laws and regulations of the United States of America. Buyer shall not make any disposition by way of trans-shipment, re-export, diversion or otherwise, of the goods, except as said laws and regulations may expressly permit, and no such disposition or transfer will be made other than to the ultimate country of destination specified in the order or as declared as the country of ultimate destination on Seller's invoice.

18.    If, at any time, any question, dispute or difference shall arise between the parties, arising out of these Terms of Sale or the transactions contemplated hereto or related thereto or to its validity, either party may as soon as reasonably practicable, give to the other party notice in writing of the existence of such question, dispute or difference, specifying its nature and the point at issue.  In the absence of any agreement between the Parties hereto within a reasonable time (not to exceed thirty (30) days after the date of such notice), the question, dispute or difference shall be finally settled by arbitration in Houston, Texas, USA, or such other place as the parties may agree, in writing.  Such arbitration shall be conducted in the English language.  If the Materials are delivered to a place within the United States of America, or its territories, the arbitration shall be conducted in accordance with the Commercial Rules ("AAA Rules") of the American Arbitration Association then in force, by a panel of one or more arbitrators appointed in accordance with the AAA Rules.  If the Materials are delivered to a place outside the United States of America, or its territories, the arbitration shall be conducted in accordance with the Rules of Conciliation and Arbitration ("ICC Rules") of the International Chamber of Commerce then in force, by a panel of one or more arbitrators appointed in accordance with the ICC Rules.  The arbitration decision shall be final and irrevocable, and the parties expressly and unreservedly waive any and all rights to attack same through any ordinary judicial means or through recourse to any other procedure.