# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| **In re** | **Chapter 11** |
| **FIELDWOOD ENERGY LLC**, *et al.*[1] | **Case No. 20-33948 (MI)** |
| **Debtors.** | **(Jointly Administered)** |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) CLARIFYING ITS DISCLOSURE OBLIGATIONS, (II) APPROVING PROTOCOL FOR PROVIDING ACCESS TO INFORMATION TO UNSECURED CREDITORS AND (III) RETAINING PRIME CLERK LLC AS INFORMATION AGENT, EFFECTIVE AS OF SEPTEMBER 1, 2020

**THIS APPLICATION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE APPLICATION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE APPLICATION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE APPLICATION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE APPLICATION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The Debtors in these chapter 11 cases, along with the last four dgits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resourses NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors-in-possession (the "Debtors") submits this motion (the "Motion"), pursuant to sections 105(a), 107(b)(1), 1102(b)(3), and 1103(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 9018 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") for entry of an order, substantially in the form of **Exhibit A** attached hereto, (i) clarifying the Committee's disclosure obligations to the Debtors' unsecured creditors; (ii) approving the Creditor Information Protocol (as defined below); and authorizing the Committee to employ and retain Prime Clerk LLC ("Prime Clerk") as information agent (the "Information Agent") in connection therewith. In support of the Motion, the Committee respectfully represents as follows:

## BACKGROUND

1. The Debtors commenced these cases on August 3, 2020 (the "Petition Date"). The Debtors continue to operate their businesses and manage their assets and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

2. On August 4, 2020, the Court entered an *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* [Docket No. 19].

3. On August 18, 2020, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee, which currently is comprised of the following entities: (i) Oceaneering International, Inc., (ii) Subsea 7 US LLC, (iii) Halliburton Energy Services, Inc., (iv) TETRA Technologies, Inc., and (v) Workstrings International, L.L.C.

4.     On August 19, 2020, the Committee selected Stroock & Stroock & Lavan LLP ("<u>Stroock</u>") to serve as counsel, subject to this Court's approval.  On August 20, 2020, the Committee selected Cole Schotz P.C. ("<u>Cole Schotz</u>") to serve as co-counsel and Conway MacKenzie, LLC ("<u>Conway MacKenzie</u>", and together, with Stroock and Cole Schotz, the "<u>Committee Professionals</u>") to serve as financial advisor, in each case subject to this Court's approval.

5.     On September 1, 2020, the Committee selected Prime Clerk to serve as the Committee's information agent in connection with these Chapter 11 Cases, subject to this Court's approval.

<strong><u>JURISDICTION</u></strong>

6.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.     The statutory predicates for the relief sought herein are Bankruptcy Code sections 105(a), 107(b)(1), 1102(b)(3), and 1103(c) and Bankruptcy Rule 9018.

<strong><u>RELIEF REQUESTED</u></strong>

8.     Pursuant to section 1102(b)(3) of the Bankruptcy Code, an official committee must "provide access to information for creditors who (i) hold claims of the kind represented by that committee; and (ii) are not appointed to the committee." 11 U.S.C. § 1102 (b)(3)(A).  However, the statute specifies neither how an official committee should comply with this obligation nor the nature and scope of the information it must provide to creditors.

9.     Moreover, section 1102(b)(3) provides no guidance regarding whether, or to what extent, an official committee is obligated to disseminate confidential, proprietary or

-3-

otherwise non-public information to which it necessarily becomes privy in pursuing its statutory duty to investigate "the acts, conduct, assets, liabilities, and financial information of the debtors, the operation of the debtors' business and desirability of the continuance of such business." 11 U.S.C. § 1103(c)(2). Thus, the lack of clarity in section 1102(b)(3) of the Bankruptcy Code raises significant issues regarding the interplay between an official committee's disclosure obligations and its confidentiality commitments.

10.     The Committee Professionals have each entered into confidentiality agreements with the Debtors, effective as of August 26, 2020, and the Committee members have entered into separate confidentiality agreements with the Debtors, effective as of September 14, 2020, pursuant to which the parties agree that non-public information concerning the Debtors that is provided by the Debtors or its professionals to the Committee and its representatives, including the Committee Professionals as well as any representatives retained by a Committee member in its individual capacity, will be kept confidential (the "Confidentiality Agreements").  Under the Confidentiality Agreements, the Committee and its representatives are prohibited from sharing certain information obtained from the Debtors or its professionals with third parties.  Moreover, certain of the Committee's bylaws prohibit the Committee and its professionals from sharing non-public, confidential or privileged information with third parties.

11.     Accordingly, by this Motion, the Committee seeks entry of an order: (i) approving the Creditor Information Protocol; (ii) finding that, by complying with the Creditor Information Protocol, the Committee, its members and, in each case, their respective agents, representatives, affiliates, partners, employees, officers, directors, managers, members, counsel, and financial and other advisors (collectively, the "Committee Parties") will be in compliance with section 1102(b)(3) of the Bankruptcy Code; and (iii) confirming that section 1102(b)(3)(A) of the

Bankruptcy Code does not authorize or require the Committee (except as set forth in the Creditor Information Protocol) to provide access for any creditor to (a) any confidential, proprietary, and/or other non-public information (whether oral, written or in any electronic or physical medium) received or held by the Committee Parties concerning the Debtors or these Chapter 11 Cases, the Committee, any other matter related or relevant to these Chapter 11 Cases, the formulation of one or more chapter 11 plans, or any adversary proceeding, contested matter or other litigation in these Chapter 11 Cases, whether provided (voluntarily or involuntarily) by or on behalf of the Debtors or by any third party or prepared by or for the Committee, (b) any confidential information covered by the Confidentiality Agreements, (c) any information the disclosure of which would otherwise violate the Committee's bylaws, (d) any other information if the effect of disclosure would constitute a general or subject matter waiver of the attorney-client, work-product, or any other privilege possessed by the Committee (collectively, the "Confidential Information").

12.     In addition, the Committee respectfully requests that the Court enter an order authorizing the Committee to (a) retain Prime Clerk as Information Agent pursuant to the terms of the agreement for services, a copy of which is annexed as **Exhibit B** hereto (the "Engagement Agreement"), effective as of September 1, 2020, and (b) compensate and reimburse Prime Clerk for its services in accordance with the terms of the Engagement Agreement (as defined below).

A.     **Creditor Information Protocol**

13.     To balance the need to maintain the confidentiality of the Confidential Information with the right of the Debtors' unsecured creditors to receive information regarding these Chapter 11 Cases, the Committee proposes to establish the following protocol (the "Creditor Information Protocol"):

A.   The Committee will establish and, until the earliest to occur of dissolution of the Committee, dismissal or conversion of these Chapter 11 Cases, and a further order of the Court, maintain a website (the "Committee Website") that will provide, without limitation:

    i.    general information concerning the Debtors and significant parties in interest in these cases, the case docket, and access to filings;

    ii.   contact information for the Debtors, the Debtors' counsel, the Committee's counsel, and any information hotlines that may be established;

    iii.  the date, if set by the Court, by which unsecured creditors must file proofs of claim;

    iv.   the voting deadline with respect to any chapter 11 plan filed in these cases;

    v.    a calendar of upcoming significant events in these cases;

    vi.   access to the claims docket established by the Debtors' claims and noticing agent;

    vii.  the Debtors' monthly operating reports;

    viii. press releases (if any) issued by the Committee or the Debtors;

    ix.   a forum to submit questions, comments and requests for access to additional information;

    x.    responses to questions, comments and requests for access to information (to the extent provided by the Committee, in the exercise of its reasonable discretion); and

    xi.   links to other relevant websites (e.g., the Debtors' corporate website and the website of the U.S. Trustee's Office).

B.   E-Mail Address. The Committee will also establish and maintain an electronic mail address for creditors to submit questions and comments.

C.   Privileged and Confidential Information. The Committee shall not be required to disseminate to any entity (all references to "entity" herein shall be as defined in section 101(15) of the Bankruptcy Code, "Entity") without further order of the Court, Confidential Information. In addition, the Committee shall not be required to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

D.     Information Obtained Through Discovery. Any information received (formally or informally) by the Committee Parties from any Entity in connection with an examination pursuant to Bankruptcy Rule 2004 or in connection with any formal or informal discovery in any contested matter, adversary proceeding, or other litigation shall not be governed by any order entered with respect to this Motion but, rather, by any order governing such discovery.  Nothing herein shall obligate the Committee to provide any information the Committee obtains from third parties.

E.     Creditor Information Requests. If a creditor (the "Requesting Creditor") submits a written request to the Committee (the "Information Request") for the Committee to disclose information pursuant to section 1102(b)(3)(A) of the Bankruptcy Code, the Committee shall as soon as practicable, but no more than thirty (30) days after receipt of the Information Request, provide a response to the Information Request (the "Response"), including providing access to the information requested or the reasons the Information Request cannot be complied with.  If the Response is to deny the Information Request because the Committee believes the Information Request implicates Confidential Information that need not be disclosed (i) pursuant to the terms of this Order or otherwise under section 1102(b)(3)(A) of the Bankruptcy Code, (ii) because such disclosure is prohibited under applicable law, (iii) because such information was obtained by the Committee pursuant to an agreement to maintain it as confidential, or (iv) that the Information Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion.  Such motion shall be served and a hearing on such motion shall be noticed and scheduled.

F.     Release of Confidential Information of Third Parties. If the Information Request implicates Confidential Information of the Debtors (or any other Entity) and the Committee agrees that such request should be satisfied, or if the Committee on its own wishes to disclose such Confidential Information to creditors, the Committee may demand (the "Demand") for the benefit of the Debtors' creditors: (i) if the Confidential Information is information of the Debtors, by submitting a written request, each captioned as a "Committee Information Demand," to counsel for the Debtors, stating that such information will be disclosed in the manner described in the Demand unless the Debtors object to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, and the Debtors may schedule a hearing with the Court seeking a ruling with respect to the Demand and (ii) if the Confidential Information is information of another Entity, by submitting a written request to such Entity and its counsel of record, with a copy to Debtors' counsel, stating that such information will be disclosed in the manner described in the Demand unless such Entity objects to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, such Entity, and the Debtors, may schedule a hearing with the Court seeking a ruling with respect to the Demand.  To the extent, however, the

Committee has agreed to receive certain information pursuant to a written confidentiality agreement, and the terms of such confidentiality agreement are more restrictive than this paragraph, the terms of the confidentiality agreement shall govern.

14.     The foregoing procedures are necessary, narrowly-tailored rules designed to protect the interests of the Debtors, the Committee, and affected creditors.

## B.     Retention of Information Agent

15.     Prime Clerk's retention as Information Agent is appropriate and necessary to assist the Committee in complying with its obligations under the Bankruptcy Code and to assist in the effective administration of the Chapter 11 Cases while minimizing the expense of such functions. Specifically, Prime Clerk will, among other things:

(a)     Establish and maintain the Committee Website and provide associated technology and communications services to facilitate the Committee's communications with the Debtors' unsecured creditors; and

(b)     Prepare and serve required notices and pleadings on behalf of the Committee in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any case management order entered in these Chapter 11 Cases in the form and manner directed by the Committee and/or the Court, including, if applicable, all notices, orders, pleadings, publications and other documents as the Committee and/or the Court may deem necessary or appropriate.

16.     The Committee proposes that Prime Clerk will be compensated by the Debtors' estates for its information and noticing services rendered on behalf of the Committee in these Chapter 11 Cases in accordance with the provisions of the Engagement Agreement. The Committee conducted a competitive bidding process, and ultimately determined that Prime Clerk's proposed pricing schedule was fair and reasonable and the best option available to the Committee in light of the Committee's needs.  Moreover, the Committee believes that by retaining the same noticing agent as the Debtors, there will be economies of scale in connection with the services provided.

17.     Prime Clerk's rate structure in connection with these Chapter 11 Cases is set forth in the Engagement Agreement annexed hereto as **Exhibit B**, and the Committee understands that such rates are the same as those agreed between Prime Clerk and the Debtors. [Docket No. 12].  The Committee respectfully requests that the fees and expenses incurred by Prime Clerk pursuant to the Engagement Agreement be included among the invoices submitted by Prime Clerk to the Debtors pursuant to the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* [Docket No. 19] and be paid according to the procedures therein

18.     In further support of Prime Clerk's retention, the *Declaration* and *Supplemental Declaration of Benjamin J. Steele in Support of Emergency Application of Debtors for Entry of an Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* [Docket Nos. 12 Ex. B, 377] are incorporated by reference herein. The Committee has been advised by Prime Clerk that, as of the date of this Motion and to the best of Prime Clerk's knowledge, such declarations remain true and correct.

## BASIS FOR RELIEF REQUESTED

19.     As discussed above, section 1102(b)(3) of the Bankruptcy Code, while imposing certain disclosure obligations on the Committee, neither specifies how the Committee should comply with such obligations, nor clarifies the nature and extent of the information the Committee must disclose to the Debtors' unsecured creditors.  The Committee respectfully submits that section 1102(b)(3) of the Bankruptcy Code is unclear and ambiguous.  *See In re Refco Inc.*, 336 B.R. 187, 190 (Bankr. S.D.N.Y. 2006).  The legislative history of section 1102 does not provide any further guidance and merely reiterates the statutory text.  *See* H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005) ("[Section 1102(b)(3),] requires the committee to give creditors

having claims of the kind represented by the committee access to information.  In addition, the committee must solicit and receive comments from these creditors and, pursuant to court order, make additional reports and disclosures available to them.").

20.     This lack of clarity raises significant issues for the Committee regarding compliance with its statutory duties, while also honoring its commitment to protect the Confidential Information.  Indeed, section 1102(b)(3) of the Bankruptcy Code could be read as (i) requiring the Committee to disclose all information requested by the Committee's constituency, irrespective of applicable state and federal securities laws, as well as its non-disclosure obligations (*see In re Refco Inc.*, 336 B.R. at 190 (stating that a broad reading arguably "impose[s] an obligation contrary to other applicable laws and the Committee's fiduciary duties and hamper[s] the Committee's performance under section 1103 of the Bankruptcy Code."), and (ii) impacting the attorney-client and work-product privileges between the Committee and its counsel and other agents.  *See Refco*, 336 B.R. at 197 (noting that "one should proceed cautiously concerning the disclosure of information that could reasonably have the effect of waiving the attorney-client or other privilege . . . notwithstanding Bankruptcy Code section 1102(b)(3).") (citing *Marcus v. Parker* (*In re Subpoena Duces Tecum*), 978 F.2d 1159, 1161 (9th Cir. 1992)).

21.     Without the requested clarification, the Committee may be hampered in its statutory duties if the Debtors are hesitant to share Confidential Information—precisely the information the Committee requires to carry out its fiduciary obligations—for fear that the shared information may be disseminated to the members of the public.  Moreover, without the requested relief, the Committee may be deterred from conducting its own independent investigations out of concern that its findings may have to be disseminated to inappropriate parties.  These concerns

could impede the Committee's efforts to maximize value ultimately available to unsecured creditors.

22.     The Bankruptcy Code also requires a creditors' committee to "solicit and receive comments" from unsecured creditors (11 U.S.C. § 1102(b)(3)(B)), but does not establish a method for fulfilling such obligation.  The Committee submits that its proposal to invite unsecured creditors to comment on matters related to these Chapter 11 Cases on the Committee Website and make an electronic mail address available to them provides a cost-effective and efficient method for the Committee to satisfy its obligation under section 1102(b)(3)(B) of the Bankruptcy Code.

23.     The Court is empowered, under sections 105 and 107(b)(1) of the Bankruptcy Code to clarify the Committee's obligations. Under section 105(a), the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Committee believes that the relief requested herein is necessary for the Committee to fulfill its statutory duties as contemplated by section 1103(c) of the Bankruptcy Code.

24.     Further, section 107(b)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to trade secret or confidential research, development, or commercial information."  11 U.S.C. 107(b)(1).[1] The language of section 107(b)(1) is mandatory, not permissive.  *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) ("[I]f the information fits any of the specified categories, the court is required to protect a requesting interested party and has no discretion to

---

[1]     Section 107(b)(1) of the Bankruptcy Code is further supported by Bankruptcy Rule 9018, which states, in relevant part that "on motion or on its own initiative, with or without notice, the court may make any order which justice requires to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . ." Fed. R. Bankr. P. 9018.

deny the application."). As a result, the Committee respectfully submits that section 107(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9018 empower the Court to protect the Committee by restricting the dissemination of the Confidential Information.

25.     The relief sought by the Committee is not only for the benefit of the Debtors and the Committee, but for the benefit of all constituents in that it ensures the proper functioning of the chapter 11 process. Further, the Committee needs the benefit of the relief sought in this Motion to ensure that it does not breach the confidentiality provisions in its bylaws or the Confidentiality Agreements. A creditors' committee cannot be put in a position of either violating the statute or breaching a confidentiality agreement and thereby subjecting itself to suit by the Debtors and potentially other parties.

26.     Finally, the risk to the Committee of having to provide its constituency with access to Confidential Information creates obvious and serious problems. If the Committee believes that there could be a risk that privileged information would need to be turned over to such creditors, the entire purpose of such privilege would be eviscerated. Both the Debtors and the Committee would likely be unable to obtain the independent and unfettered advice and consultation that such privileges are designed to foster. Indeed, unless it is made clear that the risk of dissemination of the Confidential Information, does not exist, the estate representation structure envisioned by the Bankruptcy Code would become dysfunctional.

27.     Indeed, various courts in this and other circuits have granted relief similar to that requested herein. *See, e.g., In re Sanchez Energy Corp., et al,* Case No. 19-34508 (Bankr. S.D. Tex. Nov. 11, 2019) [Docket No. 590]; *In re iHeartMedia, Inc.*, Case No. 18-31274 (Bankr. S.D. Tex. May 15, 2018) [Docket No. 728]; *Cobalt International Energy, et al.*, Case No. 17-36709 (Bankr. S.D. Tex. Jan 11, 2018) [Docket No. 372]; *In re Aegean Marine Petroleum Network*

*Inc.*, No. 18-13374 (Bankr. S.D.N.Y. Jan. 17, 2019) [Docket No. 309]; *In re Sears Holdings Corp.*, No. 18- 23538 (Bankr. S.D.N.Y. Dec. 10, 2018) [Docket No. 1108]; *In re Nine West Holdings, Inc.*, No. 18-10947 (Bankr. S.D.N.Y. June 5, 2018) [Docket No. 353]; *In re Aceto Corp., et al.*, Case No. 19-13448 (Bankr. D. N.J. May 20, 2019) [Docket No. 559]; *In re FirstEnergy Solutions Corp.*, Case No. 18-50757 (Bankr. N.D. Ohio June 12, 2018); [Docket No. 728].

28.     The Committee also requests authorization to utilize Prime Clerk as its information agent. It is typical for a committee to engage the services of an information agent to facilitate creditor access to information. *See e.g., In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Jun. 8, 2016) [Docket No. 507]; *In re Molycorp, Inc.*, Case No. 15-11357-css (Bankr. D. Del. Sept 11, 2015) [Docket No. 537]. It is common in large chapter 11 cases for a creditors committee to utilize the debtors' claims and noticing agent as its information agent. *See e.g., In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. Jun. 8, 2016) [Docket No. 507]; *In re Magnum Hunter Res. Corp.,* Case No. 15-12533-kg (Bankr. D. Del. Jan. 27, 2016), [Docket No. 404]. Such practice increases efficiency and limits any duplication of work. Accordingly, the Committee respectfully requests that the Court authorize the Committee to utilize the Debtors' claims and noticing agent, Prime Clerk, as its information agent.

## <u>NOTICE</u>

29.     Notice of this Motion will be provided to (i) any party entitled to notice pursuant to Bankruptcy Rule 2002; (ii) any party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d); (iii) any party listed on the Debtors' revised Creditor Matrix provided to the Committee and Prime Clerk on September 24, 2020; and (iv) all known unsecured creditors in these Chapter 11 Cases.  The Motion will also be made available by publication on the Debtors' case website at the following address: https://cases.primeclerk.com/FieldwoodEnergy.

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:   September 30, 2020

Respectfully submitted,

*/s/ Michael D. Warner*
Michael D. Warner, Esq. (TX Bar No. 00792304)
Benjamin L. Wallen, Esq. (TX Bar No. 24102623)
**COLE SCHOTZ P.C.**
301 Commerce Street , Suite 1700
Fort Worth, TX 76102
Telephone: (817) 810-5250
Facsimile:   (817) 810-5255
Email:    mwarner@coleschotz.com
              bwallen@coleschotz.com

- and -

**STROOCK & STROOCK & LAVAN
LLP**
Kristopher M. Hansen, Esq.
Frank A. Merola, Esq.
Jonathan D. Canfield, Esq.
Sherry J. Millman, Esq.
180 Maiden Lane
New York, NY 10038
Telephone: (212) 806-5400
Facsimile:   (212) 806-6006
Email: khansen@stroock.com
          fmerola@stroock.com
          jcanfield@stroock.com
          smillman@stroock.com

*Proposed Counsel for the Official
Committee of Unsecured Creditors*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **FIELDWOOD ENERGY LLC, *et al.*** [1] | **Case No. 20-33948 (MI)** |
| **Debtors.** | **(Jointly Administered)** |

**ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS (I) CLARIFYING DISCLOSURE OBLIGATIONS, (II) APPROVING
PROTOCOL FOR PROVIDING ACCESS TO INFORMATION TO UNSECURED
CREDITORS AND (III) RETAINING PRIME CLERK LLC AS INFORMATION
AGENT EFFECTIVE AS OF SEPTEMBER 1, 2020**

Upon the *Motion of The Official Committee of Unsecured Creditors for Entry of an Order
(I) Clarifying its Disclosure Obligations, (II) Approving Protocol for Providing Access to
Information to Unsecured Creditors, and (III) Retaining Prime Clerk LLC as Information Agent,
Effective as of September 1, 2020* (the "Motion")[2]; and this Court having jurisdiction to consider
the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and consideration of the
Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue
being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having
found that notice of the Motion was reasonable and sufficient under the circumstances, and it
appearing that no other or further notice need be provided; and this Court having reviewed the

---

[1] The Debtors in these chapter 11 cases, along with the last four dgits of each Debtor's federal tax identification
number, as applicable, are: Dynamic Offshore Resourses NS, LLC (0158); Fieldwood Energy LLC (6778);
Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489);
Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM
Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy
SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors'
primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Motion; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

      1.    Subject to paragraphs 3 through 9 hereof, in full satisfaction of the Committee's obligations to provide access to information for the Debtors' unsecured creditors in accordance with section 1102(b)(3)(A) and (B) of the Bankruptcy Code, the Committee shall establish the following protocol (the "<u>Creditor Information Protocol</u>"):

      A.    The Committee will establish and, until the earliest to occur of dissolution of the Committee, dismissal or conversion of these Chapter 11 Cases, and a further order of the Court, maintain a website (the "<u>Committee Website</u>") that will provide, without limitation:

      i.    general information concerning the Debtors and significant parties in interest in these cases, the case docket, and access to filings;

      ii.    contact information for the Debtors, the Debtors' counsel, the Committee's counsel, and any information hotlines that may be established;

      iii.    the date, if set by the Court, by which unsecured creditors must file proofs of claim;

      iv.    the voting deadline with respect to any chapter 11 plan filed in these cases;

      v.    a calendar of upcoming significant events in these cases;

      vi.    access to the claims docket established by the Debtors' claims and noticing agent;

      vii.    the Debtors' monthly operating reports;

      viii.    press releases (if any) issued by the Committee or the Debtors;

      ix.    a forum to submit questions, comments and requests for access to additional information;

        x.     responses to questions, comments and requests for access to information (to the extent provided by the Committee, in the exercise of its reasonable discretion); and

        xi.    links to other relevant websites (e.g., the Debtors' corporate website and the website of the U.S. Trustee's Office).

B.    <u>E-Mail Address</u>. The Committee will also establish and maintain an electronic mail address for creditors to submit questions and comments.

C.    <u>Privileged and Confidential Information</u>. The Committee shall not be required to disseminate to any entity (all references to "entity" herein shall be as defined in section 101(15) of the Bankruptcy Code, "<u>Entity</u>") without further order of the Court, Confidential Information. In addition, the Committee shall not be required to provide access to information or solicit comments from any Entity that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

D.    <u>Information Obtained Through Discovery</u>. Any information received (formally or informally) by the Committee Parties from any Entity in connection with an examination pursuant to Bankruptcy Rule 2004 or in connection with any formal or informal discovery in any contested matter, adversary proceeding, or other litigation shall not be governed by this Order but, rather, by any order governing such discovery. Nothing herein shall obligate the Committee to provide any information the Committee obtains from third parties.

E.    <u>Creditor Information Requests</u>. If a creditor (the "<u>Requesting Creditor</u>") submits a written request to the Committee (the "<u>Information Request</u>") for the Committee to disclose information pursuant to section 1102(b)(3)(A) of the Bankruptcy Code, the Committee shall as soon as practicable, but no more than thirty (30) days after receipt of the Information Request, provide a response to the Information Request (the "<u>Response</u>"), including providing access to the information requested or the reasons the Information Request cannot be complied with. If the Response is to deny the Information Request because the Committee believes the Information Request implicates Confidential Information that need not be disclosed (i) pursuant to the terms of this Order or otherwise under section 1102(b)(3)(A) of the Bankruptcy Code, (ii) because such disclosure is prohibited under applicable law, (iii) because such information was obtained by the Committee pursuant to an agreement to maintain it as confidential, or (iv) that the Information

-18-

Request is unduly burdensome, the Requesting Creditor may, after a good faith effort to meet and confer with an authorized representative of the Committee regarding the Information Request and the Response, seek to compel such disclosure for cause pursuant to a motion. Such motion shall be served and a hearing on such motion shall be noticed and scheduled.

F.  Release of Confidential Information of Third Parties. If the Information Request implicates Confidential Information of the Debtors (or any other Entity) and the Committee agrees that such request should be satisfied, or if the Committee on its own wishes to disclose such Confidential Information to creditors, the Committee may demand (the "Demand") for the benefit of the Debtors' creditors: (i) if the Confidential Information is information of the Debtors, by submitting a written request, each captioned as a "Committee Information Demand," to counsel for the Debtors, stating that such information will be disclosed in the manner described in the Demand unless the Debtors object to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, and the Debtors may schedule a hearing with the Court seeking a ruling with respect to the Demand and (ii) if the Confidential Information is information of another Entity, by submitting a written request to such Entity and its counsel of record, with a copy to Debtors' counsel, stating that such information will be disclosed in the manner described in the Demand unless such Entity objects to such Demand on or before ten (10) days after the service of such Demand; and, after the lodging of such an objection, the Committee, the Requesting Creditor, such Entity, and the Debtors, may schedule a hearing with the Court seeking a ruling with respect to the Demand. To the extent, however, the Committee has agreed to receive certain information pursuant to a written confidentiality agreement, and the terms of such confidentiality agreement are more restrictive than this paragraph, the terms of the confidentiality agreement shall govern.

2.      The Committee Parties shall be deemed to be in compliance with sections 1102(b)(3) and 1103(c) of the Bankruptcy Code by implementing the Creditor Information Protocol.

3.      The Committee Parties shall not be required to disseminate to any creditor or any creditor's representative: (a) without further order of the Court, any Confidential Information; or (b) any other information if the effect of such disclosure would constitute a general

-19-

or subject matter waiver of the attorney-client, work-product, or other applicable privilege possessed by the Committee.

4.    Any documents, information or other materials designated by the Debtors as confidential shall be treated as "Confidential Information" for purposes of this Order; provided, however, that nothing in this Order affects or shall be deemed to affect the Committee's ability to dispute any designation of information as "Confidential Information."

5.    The Committee's counsel is hereby authorized, in its reasonable discretion, to communicate with the Debtors' general unsecured creditors and/or respond to their information requests, submitted by email or otherwise, on behalf of the Committee. Notwithstanding any possible construction of section 1102(b)(3) of the Bankruptcy Code to the contrary, the Committee, its individual members, and its counsel and other advisors shall not be required or obligated to disseminate any Confidential Information.

6.    The Committee shall not have or incur any liability to any entity for acts taken or omitted to be taken with respect to its obligations under section 1102(b)(3) of the Bankruptcy Code as along as the Committee and its professionals have acted in compliance with the procedures set forth herein and any confidentiality agreement; <u>provided</u>, <u>however</u>, that the foregoing shall not preclude the right of any creditor to move the Court for an order requiring production of other or additional information, to the extent available.

7.    Nothing in this Order requires the Committee to provide access to information or solicit comments from any entity or person that has not demonstrated to the satisfaction of the Committee, in its sole discretion, or to the Court, that it holds claims of the kind described in section 1102(b)(3) of the Bankruptcy Code.

8.       For the avoidance of doubt, nothing in this Order shall affect the obligations of the Committee Parties under any agreements with the Debtors or other parties addressing the confidentiality or handling of any information, including the confidentiality section of the Committee's bylaws, whether such agreements are entered into before or after the entry of this Order.

9.       The Committee is authorized to employ and retain Prime Clerk LLC ("Prime Clerk") as its Information Agent, subject to the terms of the Engagement Agreement and the terms and conditions set forth herein, effective as of September 1, 2020.  Any costs, expenses, or fees charged by Prime Clerk on account of its services as Information Agent will be included among the invoices submitted by Prime Clerk to the Debtors pursuant to the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* [Docket No. 19] and shall be paid according to the procedures therein.

10.      Prime Clerk is authorized to establish and maintain the Committee Website and provide technology and communications-related services, as set forth in the Engagement Agreement.

11.      The Committee is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

12.      Any inconsistency between the Motion, the Engagement Agreement and the Order shall be controlled by the Order.

13.      This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation and/or interpretation of this Order.

Date: October ___, 2020

 

                                              _____

                                              THE HONORABLE MARVIN ISGUR
                                              UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Prime Clerk Engagement Agreement**



**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of August 27, 2020 between Prime Clerk LLC ("***Prime Clerk***") and the Official Committee of Unsecured Creditors (the "***Committee***") appointed in the chapter 11 cases (the "***Cases***") of Fieldwood Energy LLC and its affiliated debtors (collectively, the "***Debtors***") pending before the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***") [Case No. 20-33948].

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. <u>**Services**</u>

   (a) Prime Clerk agrees to provide the Committee with technology and consulting services regarding the Committee's involvement in the Cases, and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

   (b) The Committee acknowledges and agrees that Prime Clerk will often take direction from the Committee's representatives, employees, agents and/or professionals (collectively, the "***Committee Parties***") with respect to providing Services hereunder. The parties agree that Prime Clerk may rely upon, and the Committee agrees to be bound by, any requests, advice or information provided by the Committee Parties to the same extent as if such requests, advice or information were provided by the Committee.

   (c) The Committee agrees and understands that Prime Clerk shall not provide the Committee or any other party with legal advice.

2. <u>**Rates, Expenses and Payment**</u>

   (a) Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Committee, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"). The Committee agrees to pay for reasonable out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Committee may request separate Services or all of the Services.

   (c) Prime Clerk will bill the Debtors and the Committee no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense to be incurred is expected to exceed $5,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Debtors before the performance of Services hereunder.

   (d) In case of a good faith dispute with respect to an invoice amount, the objecting party shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice. The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

   (e) The Debtors shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Committee or the Committee Parties.



(f) The Debtors shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Committee and the Debtors of such increases.

**3.   Confidentiality**

(a) The Committee and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

**4.   Property Rights**

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Committee hereunder.  Fees and expenses paid by the Debtors do not vest in the Debtors or the Committee any rights in such Property.  Such Property is only being made available for the Committee's use during and in connection with the Services provided by Prime Clerk hereunder.

**5.   Term and Termination**

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk that causes material harm to the Committee's efforts in the Cases, (ii) the failure of the Debtors to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of any retainer held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Committee promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Debtors and their estates shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.



(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Committee and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer. The Debtors and their estates shall pay for such Services pursuant to the Rate Structure.

## 6. No Representations or Warranties

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 7. Limitations of Liability

Except as expressly provided herein, Prime Clerk's liability to the Committee for any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses (collectively, "***Losses***"), unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Committee for the portion of the particular work that gave rise to the alleged Loss. In no event shall Prime Clerk's liability to the Committee for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder. In no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 8. Committee Data

(a) The Committee is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Committee Party submits for processing to Prime Clerk and for the output of such information.

(b) The Committee agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Committee has full authority to deliver such information to Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Committee may be retained by Prime Clerk until the Services provided hereunder are paid in full. The Debtors and their estates shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk. Any such disposal shall be in a manner requested by or acceptable to the Committee; provided that if the Committee has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Debtors for the expense of such disposition, after giving the Debtors and the Committee 30 days' notice. The Committee agrees to initiate and maintain backup files that would allow the Committee to regenerate or duplicate all programs, data or information provided by the Committee to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Committee data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.



**9.  No Agency Relationship**

The Committee and Prime Clerk are and shall be independent contractors of each other, and no agency, partnership, joint venture or employment relationship shall arise as a result of this Agreement.

**10.  Force Majeure**

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, hurricane, epidemic, pandemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**11.  Choice of Law**

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

**12.  Arbitration**

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

**13.  Integration; Severability; Modifications; Assignment**

    (a)  Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

    (b)  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c)  This Agreement may be modified only by a writing duly executed by an authorized representative of the Committee and an officer of Prime Clerk.

    (d)  This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Committee's consent.



14. **Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

15. **Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

| | |
|---|---|
| If to Prime Clerk: | Prime Clerk LLC<br>One Grand Central Place<br>60 East 42nd Street, Suite 1440<br>New York, NY 10165<br>Attn:   Shai Waisman<br>Tel:   (212) 257-5450<br>Email:   swaisman@primeclerk.com |
| If to the Committee: | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, NY 10038<br>Attn:   Kristopher M. Hansen<br>Tel:   (212) 806-6056<br>Email:   khansen@stroock.com |
| If to the Debtors: | Fieldwood Energy LLC<br>2000 W. Sam Houston Pkwy. South, Suite 1200<br>Houston, TX 77042<br>Attn:   Michael T. Dane, Senior Vice President & CFO<br>Tel:   (713) 969-1000<br>Email:   mdane@fwellc.com |
| With a copy to: | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attn:   Jessica Liou, Esq.<br>Tel:   (212) 310-8817<br>Email:   jessica.liou@weil.com |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Shira Weiner
Title: General Counsel

**The Committee**

By: Kristy Woolsey
Title: Director of Credit
 TETRA Technologies, Inc.
 Committee Co-Chair



# R A T E S

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

| Claim and Noticing Rates | |
|---|---|
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | **$25 - $45** |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | **$35 - $70** |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports.  Prime Clerk's Senior Consultants average over five years of experience. | **$75 - $175** |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | **$175 - $195** |
| **Chief Operating Officer and Executive Vice President**<br>Michael Frishberg, Prime Clerk's COO, and Ben Schrag, Prime Clerk's Executive Vice President, both former restructuring attorneys with collectively over twenty five years of experience, will add an additional supervisory layer to this matter at no charge. | **No charge** |

Prime Clerk | A Division of DUFF&PHELPS

# RATES

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
| --- | --- |
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | **$180** |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | **$200** |

## Printing and Noticing Services

| | |
| --- | --- |
| **Printing** | **$0.09 per page** |
| **Customization/Envelope Printing** | **$0.05 each** |
| **Document folding and inserting** | **No charge** |
| **Postage/Overnight Delivery** | **Preferred Rates** |
| **Public Securities Events** | **Varies by Event** |
| **E-mail Noticing** | **No charge** |
| **Fax Noticing** | **$0.05 per page** |
| **Proof of Claim Acknowledgment Card** | **No charge** |
| **Envelopes** | **Varies by Size** |

## Newspaper and Legal Notice Publishing

| | |
| --- | --- |
| **Coordinate and publish legal notices** | **Available on request** |

Prime Clerk | A Division of DUFF&PHELPS

# R A T E S

**Quality.**
**Partnership.**
**Expertise.**
**Innovation.**

| **Case Website** | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |

| **Client Access** | |
|---|---|
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |

| **Data Administration and Management** | |
|---|---|
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |

| **On-line Claim Filing Services** | |
|---|---|
| On-line claim filing | No charge |

| **Call Center Services** | |
|---|---|
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |

| **Disbursement Services** | |
|---|---|
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Standard hourly rates |