IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et. al*, | § | Case No. 20-33948(MI) |
| | § | |
| Debtors.[1] | § | |
| | § | (Jointly Administered) |
| FIELDWOOD ENERGY, LLC | § | |
| | § | |
| Plaintiff, | § | |
| V. | § | Adversary No: _____ |
| | § | |
| VALERO MARKETING AND SUPPLY COMPANY | § | |
| | § | |
| Defendant. | § | |

## ADVERSARY COMPLAINT

Fieldwood Energy, LLC ("Fieldwood" or "Plaintiff") as debtor and debtor in possession in the above-captioned chapter 11 cases (the "Debtor"), and as Plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding") hereby file this complaint against Valero Marketing and Supply Company ("Valero" or "Defendant") and allege as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**I.     Introduction**

1.     In April 2020, Fieldwood delivered 195,000 barrels of oil to Valero under a month to month Purchase Contract.[2] Valero took delivery of the oil without objection. The Purchase Contract's payment terms are crystal clear:

> **PAYMENT TERMS:**
> PAYMENT SHALL BE MADE ON THE 20TH OF THE MONTH FOLLOWING DELIVERY BY WIRE TRANSFER OF IMMEDIATELY AVAILABLE FUNDS WITHOUT DISCOUNT, DEDUCTION, WITHHOLDING, OFFSET OR COUNTERCLAIM IN U.S. DOLLARS ON OR BEFORE THE PAYMENT DUE DATE TO THE BANK AND ACCOUNT DESIGNATED BY SELLER, AGAINST PRESENTATION TO BUYER BY SELLER OF ORIGINAL HARD COPY, TELECOPY, OR TELEX INVOICE TOGETHER WITH SUPPORTING DOCUMENTATION EVIDENCING BOOK, STOCK, INVENTORY TRANSFER OR PIPELINE METER TICKETS.

*See* Exhibit 1. On May 15, 2020, Fieldwood invoiced Valero $3,090,564.29 for the 195,000 barrels of oil. Willfully ignoring the Purchase Contract's clear language, Valero only paid $988,020.29, leaving an underpayment of $2,102,544.00.

2.     Valero attempted to justify the underpayment by claiming damages associated with Fieldwood's failure to deliver oil to Valero in May 2020. While Fieldwood did not deliver oil in May 2020 because it shut in its wells, that did not cause Valero damages. First, Valero waived its offset rights through the Purchase Contract; second Valero failed to mitigate its alleged damages and third, Valero contractually waived all rights to recover consequential and incidental damages. Valero had ample opportunity to purchase replacement oil for delivery in May 2020, but it chose not to do

---

[2] Exhibits 1, 2 & 3 are the "Purchase Contract." Exhibit 1, the Base Contract, contains a provision which states: "When not in conflict with the foregoing, then Conoco's General Terms and Condition for Domestic Crude Oil Agreements, dated January 1, 1993, with Shell Amendments, shall apply and are hereby incorporated by reference." As of this filing, Fieldwood believes that Exhibits 2 & 3 are the Conoco General Terms and Shell Amendments, but reserves the right to amend should other evidence arise which suggests otherwise.

so. In fact, had Valero purchased oil on the spot market for delivery in May 2020, the spot market price would have been *less* than the Purchase Contract price.

3. Fieldwood files this adversary proceeding to recover $2,102,544.00, plus interest, attorney fees and costs.

## II. Parties

4. Fieldwood Energy LLC is a Delaware limited liability company with its principal place of business located at 2000 W. Sam Houston Parkway, Suite 1200, Houston, Texas 77042.

5. Defendant Valero Marketing Supply Company is a Delaware corporation with its principal place of business located at One Valero Way, San Antonio, Texas 78249-1616. Valero can be served through its registered agent CT Corporation System at 1999 Bryan Street, Suite 900 Dallas, Texas 75201-3136.

## III. Jurisdiction and Venue

6. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334 and Federal Rule of Bankruptcy Procedure 7001(1) & (2). This is a core proceeding pursuant to 28 U.S.C. §157(b). Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule 7008-1 of the Bankruptcy Local rules for the Southern District of Texas, the Debtor consents to the entry of final orders or judgment by this Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7. Venue is proper before the Court pursuant to 28 U.S.C. §1409. Pursuant to the *United States District Court for the Southern District of Texas' General Order of Reference* dated May 24, 2012, the case is automatically referred from the District Court to the Bankruptcy Court.

IV. **Background Facts**

   A. **The Purchase Contract requires Valero to pay for oil delivered by Fieldwood.**

8. The Purchase Contract is not a guaranteed supply contract, but merely an agreement by Fieldwood to deliver oil from a designated offshore field to a designated pipeline operated by Valero. While the Purchase Contract provides for delivery of 10,000 barrels per day, in practice Fieldwood would inform Valero in advance of each month the volume of oil it planned to deliver and then deliver that volume, adjusted during the delivery month for any material changes in actual lease production. The Purchase Contract is "evergreen" meaning that the contract remains in effect until either party terminates with 30 days advance written notice.

9. Pursuant to the parties' practice, in March 2020, Fieldwood informed Valero that it would be delivering 195,000 barrels of oil to Valero in the month of April. And, in fact, Fieldwood delivered 195,000 barrels of oil to Valero in April 2020. Accordingly, Fieldwood sent Invoice No. FW-70-042020 to Valero on May 15, 2020 in the amount of $3,090,564.29 (the "May 2020 Invoice"). *See* Exhibit 4. Payment was due on or before May 20, 2020. Valero refused to pay the amounts due in the May 20, 2020

4

Invoice. Instead, in breach of the Purchase Contract, Valero only paid $988,020.29, leaving $2,102,544.00 unpaid.

### B. Fieldwood exercises its right to terminate the Purchase Contract.

10. In April 2020, the world was amid a global pandemic caused by the COVID-19 virus which resulted in a collapse of demand for petroleum products. This collapse in demand forced Fieldwood to shut-in the wells associated with oil production delivered to Valero under the Purchase Contract.

11. On April 16, 2020, Fieldwood informed Valero that it may be shutting in these wells, which meant that Fieldwood would not be able to deliver any oil to Valero in May 2020. On April 22, 2020, Fieldwood notified Valero that it would not be delivering any oil to Valero under the Purchase Contract for May 2020 because it had shut in its associated wells. At this point, Valero knew that if it needed oil supply in May 2020 then it would need to acquire it on the spot market. In fact, legally, Valero was obligated to cover any shortage of oil by obtaining it on the spot market to mitigate its losses. Upon information and belief, Valero did nothing to try to acquire oil on the spot market in April 2020.

12. On April 29, 2020, in accordance with the terms of the Purchase Contract, Fieldwood sent notice to Valero that it was terminating the Purchase Contract effective May 30, 2020.

### C. Valero begins inventing excuses for its knowing breach of the Purchase Contract.

13. Valero knew it owed Fieldwood over three million dollars for April 2020 oil delivery and knew that its payment would be due on May 20, 2020. Valero also knew that it would have to secure a new contract to purchase oil for June because of Fieldwood's termination of the Purchase Contract. Rather than meeting its obligations, Valero decided to manufacture a default by Fieldwood to avoid payment.

14. On May 14, 2020, Valero sent a "Demand for Adequate Assurance of Performance" to Fieldwood (the "Demand Letter"). *See* Exhibit 5. Valero first acknowledges Fieldwood's termination notice and then asserts damages of $2,102,544 for Fieldwood's failure to deliver oil in May 2020. Yet Valero provides no explanation for that figure. And, as noted above, Valero took no steps to acquire oil on the spot market in April when it knew that Fieldwood was not going to deliver any oil in May. In fact, had Valero acquired oil on the spot market back in April, the spot market price was actually less than the price under the Purchase Contract. Thus, Valero could have saved money by buying oil on the spot market.

15. The Demand Letter goes on to invoke Section G of the Purchase Contract and asks Fieldwood to deposit funds or a standby letter of credit to ensure Fieldwood's performance under the Purchase Contract –which had already been terminated. Section G of the Purchase Contract provides:

6

> G. **Financial Responsibility:** Delete in its entirety and replace with the following:
> "(1) Adequate Assurance. Seller may, within Seller's full discretion, at any time request and Buyer shall, not later than two (2) Banking Days after request by Seller, provide Adequate Assurance of Performance. After such request, and in the event that title has not already been transferred, Seller may withhold performance until such Adequate Assurance of Performance shall have been received by it. Any cost, expense, or charges associated with any letter of credit procured pursuant to this Section shall be for the account of Buyer."
>
> (2) Financial Responsibility. Notwithstanding anything to the contrary in this Agreement, if in the reasonable opinion of a party (the "Secured Party") at any time the reliability or the financial responsibility of the other party ("Posting Party") (or of any guarantor or other person furnishing security in support of Posting Party) is or becomes impaired or unsatisfactory, Adequate Assurance of Performance shall be given by Posting Party to Secured Party on demand by Secured Party in respect of each or any cargo or any portion thereof. Any amounts specified in such demand shall thereby become due and payable no later than two (2) Banking Days from the date of the demand. After such demand, and in the event that title has not already been transferred, Secured Party may withhold performance until such Adequate Assurance of Performance shall have been received by it. Any cost, expense, or charges associated with any letter of credit procured pursuant to this Section shall be for the account of the party providing the letter of credit. If Buyer exceeds the credit line Seller established for Buyer, which Seller may establish and modify in its sole discretion from time to time, Seller may deem the financial responsibility of Buyer to be unsatisfactory and demand Adequate Assurance of Performance pursuant to the Financial Responsibility provision set forth in the contract."

*See* Exhibit 3.

16. Valero incorrectly interprets Section G. to require Fieldwood to provide adequate assurance to pay for Valero's alleged damages on a contract that had been terminated. The very nature of an adequate assurance provision is to protect a party for future performance, it is not a mechanism to demand damages after termination.

17. The day after sending the Demand Letter, Valero received the May 2020 Invoice and, on May 20, 2020, paid $988,020.29 which is the amount of the invoice minus its alleged damages without any further explanation for its damages claim. In a June 1, 2020 letter, Valero's in-house counsel recognized its duty to mitigate its damages for non-delivery in May 2020:

> Finally, you address mitigation and have numerous requests regarding Valero's efforts to mitigate its damages. ==The very definition of mitigation is that a party who suffers loss as a result of a breach of contract has a duty to mitigate those losses. While a duty to mitigate losses exists, unless you would agree that Fieldwood has breached the contract, this is a topic best addressed in litigation.== Valero prefers not to go to litigation, and hopes that a commercial resolution can be reached. However, should you choose to pursue litigation, we feel confident in our position and remain willing and eager to defend it.

*See* Exhibit 6. Despite this admission, Valero has provided no evidence that it sought to mitigate its losses.

### V. Causes of Action

#### A. Breach of contract

18.  The Purchase Contract is a valid and enforceable agreement. In April 2020, Fieldwood performed under the Purchase Contract by delivering 195,000 barrels of oil to Valero. As reflected in the May 2020 Invoice, Valero owed Fieldwood $3,090,564.29 on or before May 20, 2020. Valero knowingly and willfully breached the Purchase Contract by only paying $988,020.29 on the May 2020 Invoice. Consequently, Fieldwood has suffered damages in an amount not less than $2,102,544.00. In addition to its actual damages, Valero is liable for interest on the unpaid amount.

#### B. Declaratory Judgment No. 1– Adequate Assurance provision of Purchase Contract.

19.  On May 14, 2020, Valero sent a "Demand for Adequate Assurance of Performance" to Fieldwood (the "Demand Letter"). *See* Exhibit 5. Through the Demand Letter, Valero attempted to invoke Section G of the Purchase Contract and require Fieldwood to deposit funds or a standby letter of credit to ensure Fieldwood's performance under the Purchase Contract, which had been terminated. Section G of the Purchase Contract provides:

8

> G. **Financial Responsibility:** Delete in its entirety and replace with the following:
>
> "(1) Adequate Assurance. Seller may, within Seller's full discretion, at any time request and Buyer shall, not later than two (2) Banking Days after request by Seller, provide Adequate Assurance of Performance. After such request, and in the event that title has not already been transferred, Seller may withhold performance until such Adequate Assurance of Performance shall have been received by it. Any cost, expense, or charges associated with any letter of credit procured pursuant to this Section shall be for the account of Buyer."
>
> (2) Financial Responsibility. Notwithstanding anything to the contrary in this Agreement, if in the reasonable opinion of a party (the "Secured Party") at any time the reliability or the financial responsibility of the other party ("Posting Party") (or of any guarantor or other person furnishing security in support of Posting Party) is or becomes impaired or unsatisfactory, Adequate Assurance of Performance shall be given by Posting Party to Secured Party on demand by Secured Party in respect of each or any cargo or any portion thereof. Any amounts specified in such demand shall thereby become due and payable no later than two (2) Banking Days from the date of the demand. After such demand, and in the event that title has not already been transferred, Secured Party may withhold performance until such Adequate Assurance of Performance shall have been received by it. Any cost, expense, or charges associated with any letter of credit procured pursuant to this Section shall be for the account of the party providing the letter of credit. If Buyer exceeds the credit line Seller established for Buyer, which Seller may establish and modify in its sole discretion from time to time, Seller may deem the financial responsibility of Buyer to be unsatisfactory and demand Adequate Assurance of Performance pursuant to the Financial Responsibility provision set forth in the contract."

*See* Exhibit 3.

20. Fieldwood rejected Valero's claim for adequate assurance because Fieldwood never had any obligation to pay amounts to Valero under the Purchase Contract. Valero subsequently claimed Fieldwood was in breach of Purchase Contract because of its alleged failure to provide adequate assurance.

21. Pursuant to Texas Civil Practices and Remedies Code §37.001, *et. seq.* and/or 28 U.S.C. §2201 Fieldwood seeks a declaration that the adequate assurance provision of the Purchase Contract did not require Fieldwood to post any security or other funds as was requested by Valero in its Demand Letter.

C. **Declaratory Judgment No. 2 – Waiver of damages provision of Purchase Agreement.**

22. In its Demand Letter, Valero claims damages of $2,102,544 for Fieldwood's failure to deliver oil during the month of May 2020. While Valero did not provide any

9

evidence of these alleged damages, based upon the price of oil on the spot market for May 2020, Valero would not have paid $2,102,544 for delivery of oil in May. In fact, had it actually exercised its cover rights and attempted to mitigate its damages, Valero would have paid less than the contract price to purchase oil for delivery in May 2020. Thus, the only basis for its damage claim would be some form of lost profits, consequential damages or other indirect damages. Such damages are specifically excluded under the Purchase Contract. Section S of the Conoco General Terms and Conditions (as amended) specifically exclude recovery of any such damages:

> "**S.     LIABILITIES:** IN NO EVENT SHALL SELLER OR BUYER BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, SPECIAL, EXEMPLARY OR INDIRECT DAMAGES, OR LOST PROFITS."

*See* Exhibit 3.

23.    Pursuant to Texas Civil Practices and Remedies Code §37.001, *et. seq.* and/or 28 U.S.C. §2201, Fieldwood seeks a declaration that Valero is not entitled to recover any consequential, incidental, punitive, special, exemplary or indirect damages, or lost profits for its failure to deliver oil in May 2020.

### D.     Objection to Valero's Proof of Claim

24.    On November 25, 2020, Valero filed proof of claim No. 709. In its proof of claim, Valero seeks to set off the amounts due Fieldwood in the amount of $2,102,544.00 and seeks additional damages of $1,016,056.00 for Fieldwood's failure to deliver oil in May 2020. Pursuant to 11 U.S.C. §3007, and for the reasons set forth herein, Fieldwood objects to Claim No. 709 and seeks an order disallowing the claim.

### E. Valero has no valid or perfected lien

25. On November 25, 2020, Valero filed a proof of claim in the Bankruptcy Case. (*See* Claim No. 709). In its proof of claim, Valero claims that it has a secured claim against Fieldwood's property. *Id.* Specifically, Valero alleges that the value of the property secured and the amount of the secured claim is $2,102,544.00—the amount of the April 2020 unpaid invoice. However, Valero did not attach any documents to its proof of claim nor did it explain the basis for its secured claim. Fieldwood contests the validity, extent and priority of any lien claim made by Valero through its proof of claim.

26 As a result of the foregoing, an actual controversy has arisen and now exists between Fieldwood and Valero as to the validity, priority and extent of Valero's purported prepetition liens on Fieldwood's assets.

27. Pursuant to 11 U.S.C. §506, Texas Civil Practices and Remedies Code §37.001, *et. seq.* and/or 28 U.S.C. §2201 Fieldwood seeks a determination by the Bankruptcy Court of the validity, priority, and extent of the prepetition security interests in Fieldwood's assets claimed by Valero in its proof of claim. Such a determination is necessary to the proper administration of the estate.

## VI. Request for attorney fees and costs

28. The Purchase Contract provides that Texas law shall govern any disputes arising thereunder. In accordance with Texas Civil Practices and Remedies Code §§37.009, 38.001, and any other contract provision or applicable law, Fieldwood seeks recovery of its attorney fees and costs associated with this proceeding. Fieldwood has

made demand on Valero for amounts due under the Purchase Contract and Valero has failed to tender the amounts due.

## Conclusion and Prayer

For the reasons set forth herein, Fieldwood asks that the Court enter judgment against Valero for all of its actual damages, attorney fees, declaratory judgments as requested herein, interest, disallowance of Valero's proof of claim No. 709, and all other relief, in law or equity, that it shows itself entitled.

Date: December 11, 2020

*/s/Robert L. Paddock*
BUCK KEENAN LLP
Robert L. Paddock (Tx. Bar No. 24002723)
E.F. Mano DeAyala (Tx. Bar No.00785946)
2229 San Felipe, Suite 1000
Houston, Texas 77019
(713) 225-4500 (main)
(713) 225-3719 – Facsimile
rpaddock@buckkeenan.com
deayala@buckkeenan.com

-and-

/s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted pro hac vice)
Jessica Liou (admitted pro hac vice)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
Jessica.Liou@weil.com

ATTORNEYS FOR PLAINTIFF
FIELDWOOD ENERGY, LLC,