

**Nathan L. Mechler**
Senior Counsel

June 1, 2020

*VIA FACSIMILE and ELECTRONIC MAIL*

Fieldwood Energy LLC
2000 W Sam Houston Parkway S, Suite 12
Houston, Texas 77042
Attn: Troy Allen
Assistant General Counsel
Email: Troy.Allen@fwellc.com
Fax: (713) 969-1099

      Re:    **Fieldwood Energy LLC ("*Fieldwood*") Breach of Purchase Contract No. 4200144305 (the "*Contract*")**

Dear Mr. Allen:

      Valero Marketing and Supply Company ("*Valero*") is in receipt of your May 28, 2020 correspondence. My apologies on the last letter, as I should have sent to your attention and will do so in the future. Regarding your most recent letter, Valero disagrees with the legal rights and obligations of the parties. Valero reserves all rights and defenses under the contract and the law, but will attempt to address some of the issues here.

      First, Valero disagrees that COVID-19 is a force majeure event under the Contract. The Contract does not expressly state that a pandemic qualifies as a force majeure event, and Fieldwood has failed to demonstrate that COVID-19 is a cause reasonably beyond its control that actually prevented it from performing under the Contract. Moreover, Fieldwood's business, like Valero's business, qualified as an essential business to the country, thereby allowing Fieldwood to continue its business and ability to perform its contractual obligations. Rather, the email from Fieldwood prior to its claim of force majeure clearly demonstrates why it ceased operation – economics. Specifically, on April 16, 2020, Johnny Doebecka stated:

> *Fieldwood's Management continues to monitor the various crude oil pricing components and our ability to economically produce and sell the production. If the current pricing environment does not improve or continues to deteriorate, one of the options being considered is to curtail or shut in certain platforms. Fieldwood will inform you as to any decisions affecting May deliveries.*

Thus, COVID-19 did not prevent Fieldwood from performing under the Contract. Fieldwood chose not to perform purely based on the economics of having to perform.

      In addition, you state that Fieldwood did not breach the Contract, as the Contract required only the output from the two fields mentioned. Essentially, Fieldwood's position is that with the fields shut-in and thus no production, there could be no breach under a production contract. Even assuming that this is a production contract, Valero also disagrees with this position. The Quality

One Valero Way • San Antonio, Texas 78249-1616
Post Office Box 696000 • San Antonio, Texas 78269-6000 • Telephone (210) 345-4122 • Facsimile (210) 370-5137
Nathan.Mechler@valero.com

Exhibit 6

Fieldwood Energy LLC
2000 W Sam Houston Parkway S, Suite 12
Houston, Texas 77042
Attn: Troy Allen
June 1, 2020
Page 2

Provision of the Contract states: "620,000.00 Barrel…Approximately 10,000 Barrels Per Day. Tolerance: Per Actual Production about 49.5% of Noble's Share (Big Bend/Dantzler)."

As this Contract is governed by the laws of Texas, Chapter 2 of the Texas Business and Commerce Code applies. Section 2-306(1) states:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

There is no doubt that the Contract provided a stated estimate, and thus Fieldwood was under an obligation to provide a quantity that was not unreasonably disproportionate to the stated amount. Going from the stated amount of 10,000 barrels per day to zero barrels per day is unreasonably disproportionate.

Next, you mention Fieldwood being relieved from performing due to Valero not providing the adequate assurance demanded. Again, we disagree with Fieldwood's ability to use this provision as retaliation to Valero's prior demand under this provision. But even assuming that this provision were validly used by Fieldwood, it certainly would not excuse Fieldwood's daily performance failures that resulted prior to this demand. And it certainly would not cure Fieldwood's breach of Contract as provided above.

Regarding the withholding of performance, this has already been addressed by Valero. Section G of the amendments to the Conoco General Provisions specifically allows for this right. In fact, withholding performance is the only option permitted for Valero following Fieldwood's refusal to provide adequate assurance of performance.

Finally, you address mitigation and have numerous requests regarding Valero's efforts to mitigate its damages. The very definition of mitigation is that a party who suffers loss as a result of a breach of contract has a duty to mitigate those losses. While a duty to mitigate losses exists, unless you would agree that Fieldwood has breached the contract, this is a topic best addressed in litigation. Valero prefers not to go to litigation, and hopes that a commercial resolution can be reached. However, should you choose to pursue litigation, we feel confident in our position and remain willing and eager to defend it.

Regards,

*Nathan Mechler*
Nathan Mechler
Senior Counsel - Litigation