**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**SUMMARY OF FIRST INTERIM FEE APPLICATION OF WEIL, GOTSHAL &
MANGES LLP, ATTORNEYS FOR DEBTORS, FOR INTERIM ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND
REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR
THE PERIOD FROM AUGUST 3, 2020 THROUGH OCTOBER 31, 2020**

| | | |
|---|---|---|
| **Name of Applicant:** | Weil, Gotshal & Manges LLP | |
| **Applicant's Role in Case:** | Attorneys for the Debtors | |
| **Date of Retention, Nunc Pro Tunc:** | September 16, 2020, *nunc pro tunc* to August 3, 2020 | |
| | **Beginning of Period** | **End of Period** |
| **Time Period Covered by this Application:** | August 3, 2020 | October 31, 2020 |
| **Time Period(s) Covered by Prior Applications:** | N/A | N/A |
| **Total Amounts Awarded in all Prior Applications:** | | N/A |
| **Total Fees Requested in this Application:** | | $4,108,204.00 |
| **Total Attorney Fees Requested in this Application:** | | $4,003,084.00 |
| **Total Actual Attorney Hours Covered by this Application:** | | 4,044.70 |
| **Average Hourly Rate for All Attorneys:** | | $989.71 |
| **Total Paraprofessional and Other Non-Legal Staff Fees Requested in this Application:** | | $105,120.00 |
| **Total Actual Paraprofessional and Other Non-Legal Staff Hours Covered by this Application:** | | 295.90 |
| **Average Hourly Rate for Paraprofessionals and Other Non-Legal Staff:** | | $355.26 |
| **Reimbursable Expenses Sought in This Application:** | | $44,958.80 |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

| | |
|---|---|
| **Total to be Paid to Priority Unsecured Creditors:** | TBD |
| **Anticipated % Dividend to Priority Unsecured Creditors:** | TBD |
| **Total to be Paid to General Unsecured Creditors:** | TBD |
| **Anticipated % Dividend to General Unsecured Creditors:** | TBD |
| **Date of Confirmation Hearing:** | N/A |
| **Indicate whether plan has been confirmed:** | No |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**FIRST INTERIM FEE APPLICATION OF
WEIL, GOTSHAL & MANGES LLP, AS ATTORNEYS FOR THE DEBTORS,
FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY
EXPENSES INCURRED FROM AUGUST 3, 2020 THROUGH OCTOBER 31, 2020**

---

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN FOURTEEN DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

Weil, Gotshal & Manges LLP ("**Weil**"), attorneys for Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**") hereby files its first application (the "**Application**") for interim allowance of compensation for professional services performed by Weil during the period commencing August 3, 2020 through and including October 31, 2020 (the "**Compensation Period**") in the amount of $4,108,204.00, and for reimbursement of its actual and necessary

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

expenses in the amount of $44,958.80 incurred during the Compensation Period, and respectfully represents as follows:

**Preliminary Statement**[2]

1.      During the Compensation Period, Weil's professionals helped guide the Debtors through the chapter 11 process, including, among other things, (i) securing critical first- and second-day relief, including authority to pay certain prepetition claims and access to up to $100 million in DIP financing (the "**DIP Facility**"), (ii) advancing negotiations with the Ad Hoc Group of Secured Lenders on the terms of a draft chapter 11 plan, (iii) advancing negotiations with the Consenting Creditors and Apache on the terms of the Apache Definitive Documents, (iv) continuing the Debtors' sales and marketing process commenced prepetition for the Debtors' deepwater assets, assisting the Debtors' financial advisors in contacting potential third-party buyers, and evaluating the non-binding bids and letters of intent received, (v) completing a comprehensive analysis of the mortgages and liens securing the prepetition secured creditors' claims and sharing the findings with the Creditors' Committee and Consenting Creditors, (vi) establishing a constructive relationship with the Creditors' Committee, the U.S. Trustee, and other key economic stakeholders, including their respective professionals, and implementing an extensive and continuing due diligence program with such constituents, participating in regular conference calls, and establishing and managed a secure data site addressing information requests of these parties so that the administration of the these chapter 11 cases can proceed on an appropriate schedule, (vii) producing numerous documents in response to diligence requests from BOEM and BSEE, the Debtors' surety providers, and certain predecessors in interest of the

---

[2] Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to such terms in the body of the Application.

Debtors' assets, (viii) preparing and filing schedules of assets and liabilities and statements of financial affairs for each of the fourteen (14) Debtors (Docket Nos. 429-456), (ix) obtaining entry of an order setting November 25, 2020, as the general bar date for all creditors and parties in interest to file proofs of claim and a governmental bar date of February 1, 2021, for governmental units to file proofs of claim, and continued review and analysis of over 800 proofs of claim filed against the Debtors, (x) conducting diligence and analysis and advising the Debtors regarding the potential assumption, assumption and assignment, or rejection of the Debtors' executory contracts and unexpired leases, and (xi) obtaining a temporary preliminary injunction from this Court enjoining one of the Debtors' vendors from prosecuting certain lawsuits against the Debtors' co-working interest owners.

2.        The professional services performed and expenses incurred by Weil during the Compensation Period were actual and necessary to preserve and protect the value of the Debtors' estates and minimize any negative impact of the restructuring.  Given the circumstances of these chapter 11 cases, Weil's charges for professional services performed and expenses incurred are reasonable and appropriate under applicable standards.  Weil respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses incurred.

## Relief Requested

3.        This Application has been prepared in accordance with sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), *Court Procedures for Marvin Isgur United States Bankruptcy Judge* (the "**Court Procedures**"), the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed*

under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**" and, collectively, with the Court Procedures, the "**Fee Guidelines**"), the *Order Authorizing Retention and Employment of Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* [Docket No. 355] (the "**Retention Order**"), and the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 367] (the "**Interim Compensation Order**") the Debtors request approval of this Application.

4.      A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A** (the "**Proposed Order**").

### Background

1.      Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.      The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

4

4.      The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are an independent exploration and production company in the Gulf of Mexico. With operations in both the United States and Mexico, the Company is focused on the exploration and development of offshore oil and gas assets in the shallow and deepwater Gulf of Mexico and the Gulf Coast region.

5.      As detailed in the *Declaration of Michael Dane in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "**Dane Declaration**"),[3] the Debtors entered these chapter 11 cases shortly after executing a term sheet with Apache (the "**Apache Term Sheet**"), which sets forth the framework for a restructuring of the Legacy Apache Properties. Shortly after the Petition Date, the Debtors entered into a restructuring support agreement (the "**RSA**") and restructuring term sheet (the "**Restructuring Term Sheet**") with lenders holding approximately 67.63% of the Debtors' secured debt under the FLTL Credit Agreement, lenders holding approximately 25.73% of the Debtors' secured debt under the SLTL Credit Agreement, and Apache.

6.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the Dane Declaration, which was previously filed with the Court and is incorporated by reference herein.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Dane Declaration.

## Jurisdiction

7.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Debtors' Retention of Weil

5.     On August 24, 2020, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for Debtors Effective as of Petition Date* [Docket No. 246] (the "**Retention Application**").  On September 16, 2020, the Court entered the Retention Order.  The Retention Order authorizes Weil to provide the following services to the Debtors:

a)  take all necessary action to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, the defense of any actions commenced against the Debtors are involved and the preparation of objections to claims filed against the Debtors' estates;

b)  prepare on behalf of the Debtors, as debtors in possession, all necessary motions, applications, answers, orders, reports, and other papers in connection with the administration of the Debtors' estates;

c)  take all necessary actions in connection with any chapter 11 plan and related disclosure statement and all related documents, and such further actions as may be required in connection with the administration of the Debtors' estates;

d)  if necessary, take all appropriate actions in connection with the sale of the Debtors' assets pursuant to section 363 of the Bankruptcy Code;

e)  take all necessary actions to protect and preserve the value of the Debtors' estates; and

f)  perform all other necessary legal services in connection with the prosecution of these chapter 11 cases; *provided, however*, that to the extent Weil determines that such services fall outside of the scope of services historically or generally performed by Weil as lead debtors' counsel in a bankruptcy case, Weil will file a supplemental declaration.

(Retention Order ¶ 2.)

6

**Summary of Professional Compensation**
**and Reimbursement of Expenses Requested**

6.      Weil seeks interim allowance of compensation for professional services performed during the Compensation Period in the amount of $4,108,204.00 and for reimbursement of expenses incurred in connection with the rendition of such services in the amount of $44,958.80. During the Compensation Period, Weil attorneys, paraprofessionals, and other non-legal staff expended a total of 4,340.60 hours in connection with the necessary services performed.  During the Compensation Period, Weil voluntarily reduced the amount of fees requested by $75,399.00.

7.      There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these chapter 11 cases.  During the Compensation Period, Weil received no payment or promises of payment from any source for services rendered, or to be rendered, in any capacity whatsoever in connection with the matters covered by this Application.

8.      Prior to the Petition Date, the Debtors paid fee advances to Weil for professional services to be performed and expenses to be incurred in connection with its representation of the Debtors and in preparation of the Debtors seeking relief under chapter 11 (the "**Fee Advance**").  Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the Fee Advance as of the date of this Application is $0.00.

9.      The fees charged by Weil in these cases are billed in accordance with Weil's existing billing rates and procedures in effect during the Compensation Period.  The rates Weil charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are no greater than the rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable

7

based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy matters in a competitive national legal market.

**Supporting Documents**

10.     Attached hereto as **Exhibit B** is the Certification of Matthew S. Barr (the "**Barr Certification**") regarding Weil's compliance with the Fee Guidelines.

11.     Attached hereto as **Exhibit C** is a schedule of all Weil attorneys and paraprofessionals who have performed services for the Debtors during the Compensation Period, the capacities in which each individual is employed by Weil, the department in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed in connection therewith (the "**Schedule of Professional Fees**").

12.     Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of these chapter 11 cases.  Attached hereto as **Exhibit D** is a schedule of Weil's computerized time records billed during the Compensation Period using project categories hereinafter described in the format specified by the Fee Guidelines (the "**Time Records**").

13.     Attached hereto as **Exhibit E** is an itemized schedule of the expenses for which Weil is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category (the "**Expenses**")

14.     Attached hereto as **Exhibit F** is a summary and comparison of the aggregate blended hourly rates billed by Weil's New York and Texas timekeepers to non-bankruptcy matters during the prior twelve-month period ending November 30, 2020, and the blended hourly rates billed to the Debtors during the Compensation Period (the "**Blended Rate Comparison Chart**").

15.     Attached hereto as **Exhibit G** is a budget prepared in connection with Weil's representation of the Debtors during the Compensation Period (the "**Budget**").

16.     Attached hereto as **Exhibit H** is a summary of Weil's staffing plan for the Compensation Period (the "**Staffing Plan**").

17.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application to the Court.

**Summary of Services Performed by**
**Weil During Compensation Period**

18.     During the Compensation Period, Weil devoted substantial resources and rendered significant professional services to ensure that the Debtors would be able to transition seamlessly into chapter 11, operate their business without interruption, continue receiving services from certain key critical vendors, obtain the DIP Facility, and advance negotiations with the Consenting Creditors regarding the terms of a chapter 11 plan and disclosure statement.  The following is a summary of the significant professional services rendered by Weil during the Compensation Period, organized in accordance with Weil's internal time-tracking system, and broken down by project or task codes:

    a.     Asset Acquisitions/Dispositions/363 Matters (Task Code 003)
        Fees:  $41,195.00; Total Hours:  43.00

- Negotiated non-disclosure agreements with sale participants and their advisors.

- Communicated with the Debtors to coordinate strategy and information flow for sale processes.

- Communicated internally amongst the various Weil practice groups and the Debtors' other advisors regarding sale process related issues.

9

b.      Automatic Stay (Task Code 004)
        Fees: $63,848.00; Total Hours: 70.20

- Preserved the value of the Debtors' assets, including contract rights, by enforcing the automatic stay.

- Conducted research on various issues related to the automatic stay, including issues related to executory contracts.

- Negotiated, filed, and obtained approval of stipulations for lifting the automatic stay consensually with certain claimants (Docket Nos. 347, 516, and 518).

c.      Bar Date and Claims Matters (Task Code 005)
        Fees: $63,014.50; Total Hours: 70.30

- Drafted, filed, and obtained Court approval of *Emergency Motion of Debtors for Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 404) (the "**Bar Date Motion**") to set bar date and procedures for asserting prepetition claims against the Debtors.

- Coordinated with the claims and noticing agent in these cases, Prime Clerk, LLC ("**Prime Clerk**"),  regarding the bar date and related notices.

- Advised the Debtors and their other professionals regarding specific claims.

d.      Case Administration (WIP and Calendar) (Task Code 006)
        Fees: $91,946.50; Total Hours: 120.10

- Prepared and continually updated case calendars, comprehensive work in process and schedule updates, and other chapter 11 resources and guidelines for the Debtors and Weil teams.

- Drafted and filed notices of commencement of the chapter 11 cases, hearing dates, adjournment, and notices of various filings on behalf of the Debtors.

- Responded to a large volume of emails, calls, and correspondence related to these chapter 11 cases, including with respect to the workstreams, issues, and matters described in this Application.

e.      Chapter 11 Plan/Confirmation/Implementation/Plan Supplement (Task Code 007)
        Fees: $247,121.50; Total Hours: 249.10

- Drafted and negotiated a chapter 11 plan term sheet and draft chapter 11 plan with the Ad Hoc Group of Secured Lenders.

- Coordinated and communicated with the Debtors, other professionals, and the Ad Hoc Group of Secured Lenders regarding a chapter 11 plan term sheet and draft chapter 11 plan, including its structure and means of implementation.

- Conducted research regarding certain issues relating to a chapter 11 plan.

f.   Corporate Governance/Securities/Equity Matters (Task Code 008)
     Fees: $431,546.50; Total Hours: 447.70

- Prepared materials for and participated in numerous meetings of the Debtors' board of directors (the "**Board**").

- Reviewed and commented on minutes and board resolutions.

- Analyzed certain issues related to the Debtors' outstanding securities and governance.

g.   Customer/Vendor Matters and Reclamation/ 503(b)(9) Claims (Task Code 009)
     Fees: $336,386.00; Total Hours: 374.20

- Drafted, filed and obtained interim and final Court approval of *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Pay (A) Prepetition Interest Owner Obligations, Joint Interest Billings, and E&P Operating Expenses and (B) 503(b)(9) Claims, and (II) Granting Related Relief* (Docket No. 11) (the "**JIB/Critical Vendor Motion**").

- Advised the Debtors and coordinated with the Debtors' other advisors regarding various vendor questions, requests, demands, reclamation letters and notices.

- Ensured the continued performance of critical services for the Debtors in the ordinary course of business following the commencement of the chapter 11 cases, including by ensuring compliance with the first-day orders.

h.   DIP Financing/Cash Collateral/Cash Management (Task Code 010)
     Fees: $319,787.50; Total Hours: 320.50

- Drafted, filed and obtained interim and final Court approval of: *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Obtain Senior Secured, Superpriority,*

11

*Postpetition Financing; (II) Granting Liens and Super-Priority Claims: (III) Granting Adequate Protection to Prepetition Secured Parties; and (IV) Granting Related Relief* (Docket No. 22) (the "**DIP Motion**").

- Secured approval of the DIP Facility and consensual use of cash collateral over multiple objections, following a contested hearing.

- Negotiated the terms of the Debtors' DIP Facility and drafted numerous documents, including the credit agreement, together with all schedules and ancillary agreement.

- Negotiated with the Creditors' Committee and certain other stakeholders to resolve certain informal objections to the DIP Motion.

- Assisted the Debtors with compliance with the DIP Facility documents and orders, including various reporting obligations.

- Communicated internally amongst the various Weil practice groups and the Debtors' other advisors regarding DIP Facility related issues.

- Conducted research regarding certain DIP Facility related issues.

i.   Disclosure Statement/Solicitation/Voting (Task Code 011)
     Fees: $80,691.50; Total Hours: 91.60

- Conducted research and analyzed issues regarding and prepared drafts of the disclosure statement to the chapter 11 plan and a related motion to approve the solicitation procedures and the disclosure statement and a proposed order, including exhibits thereto.

- Communicated with the Debtors, their other advisors, counsel to certain stakeholders and parties in interest regarding the disclosure statement.

j.   Employee Matters Claims (Task Code 012
     Fees: $34,261.00; Total Hours: 40.70

- Obtained Court approval of *Emergency Motion of Debtors for an Order (I) Authorizing Debtors to (A) Pay Prepetition Wages, Salaries, Employee Benefits, and Other Compensation, (B) Maintain Employee Benefits Programs and Pay Related Obligations, and (C) Pay Prepetition Employment and Training Expenses, and (II) Granting Related Relief* (Docket No. 13) for authorization to satisfy certain employee-related obligations, and advised the Debtors regarding compliance therewith.

> - Conducted research and advised the Debtors regarding various employment-related topics, including employee bonus payments and contributions.

k.   <u>General Case Strategy (Including Team and Client Calls) (Task Code 015)</u>
     Fees: $347,705.00; Total Hours: 335.00

> - Prepared for and participated in weekly meetings and on teleconferences with the Debtors' management team and the Debtors' other advisors to discuss case strategy and coordination, Court filings and hearings, transaction negotiations, the chapter 11 plan, and numerous other case issues and pending matters.
>
> - Conducted numerous internal team meetings, conferences and teleconferences regarding the status and administration of the Debtors' chapter 11 case, various business-related issues and general case strategy, and various work streams regarding the matters described in this Application.
>
> - Responded to a large volume of emails, calls, and correspondence related to the chapter 11 cases.

l.   <u>Hearings and Court Matters (Task Code 016)</u>
     Fees: $204,878.50; Total Hours: 254.90

> - Prepared for and represented the Debtors at hearings, including the first-day hearing, second-day hearing, the 9019 Motion (as defined below) hearing, and the Bar Date Motion hearing.
>
> - Prepared witnesses, affidavits, and evidence to present in support of relief requested at various hearings.
>
> - Prepared, filed, and arranged service of various motions, notices, and other documents, including hearing agendas, proposed orders, and certificates of no objections.
>
> - Negotiated terms of proposed orders and related documents with various parties in interest.
>
> - Consulted with the Court's chambers regarding case matters and prepared materials for the Court.

m.   <u>Hedges and Related Matters (Task Code 017)</u>
     Fees: $241,797.50; Total Hours: 240.90

> - Drafted, filed, and obtained Court approval of *Emergency Motion of Debtors for Order (I) Authorizing Debtors to (A) Enter into and perform*

13

*Under the Postpetition Hedging Agreements and (B) Grant Related Liens and Superpriority Claims, (II) Modifying Automatic Stay, and (III) Granting Related Relief* (Docket No. 185) (the "**Hedging Motion**").

- Drafted, negotiated, and assisted the Debtors in entering into hedging agreements and related ancillary documents with multiple counterparties.

n.   Insurance, Surety Bond, & Letters of Credit Matters (Task Code 018)
     Fees: $125,529.00; Total Hours: 146.30

- Obtained interim and final Court approval of *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Programs and the Surety Bond Program, and (B) Pay Certain Obligations with Respect Thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* (Docket N0. 4) (the "**Insurance Motion**").

- Conducted research and advised the Debtors regarding various surety-related issues.

- Communicated regularly with Debtors' surety providers in connection with the surety providers' diligence and discovery requests and produced numerous documents in response.

o.   Retention / Fee Applications:  OCPs (Task Code 022)
     Fees: $39,332.50; Total Hours:  59.00

- Drafted, filed, and obtained Court approval of *Motion of Debtors for Order Authorizing Debtors to Employ Professionals Used in Ordinary Course of Business Effective as of the Petition Date* (Docket No. 293), establishing procedures to retain professionals used in the ordinary course of business.

- Facilitated the Debtors' retention of numerous professionals pursuant to the established procedures and assisted the Debtors and their professionals in soliciting and preparing the necessary declaration for compliance.

p.   Retention/Fee Applications: Non-Weil Professionals (Task Code 023)
     Fees: $82,609.50; Total Hours: 104.10

- Drafted, reviewed, and filed applications and related declarations and other documents in connection with the retention of the Debtors' other

14

professionals, including AlixPartners LLP, Houlihan Lokey Capital, Inc., and Prime Clerk LLC.

- Drafted, filed, and obtained Court approval of *Motion of Debtors to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (Docket No. 332);

- Negotiated and participated on numerous calls with the U.S. Trustee and other advisors regarding retention applications.

q.   Retention/Fee Applications: Weil (Task Code 024)
     Fees: $105,207.50; Total Hours: 141.30

- Drafted, filed and obtained Court approval of *Application of Debtors for Authority to Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for the Debtors Effective As of Petition Date* (Docket No. 246) for the retention of Weil as attorneys for the Debtors; supporting affidavit, notice, and proposed order.

- Reviewed time records and disbursements for compliance with U.S. Trustee Guidelines and drafted and reviewed Weil's monthly fee statements.

r.   Royalty/ JIB Matters (Task Code 025)
     Fees: $114,797.50; Total Hours: 140.50

- Reviewed and provided matrices to certain parties of payments made pursuant to the JIB/Vendor Motion.

- Drafted and filed proofs of claim against Arena Energy, LP for certain expenses under operating agreements.

- Drafted and filed *Objection of Fieldwood to Confirmation of the Joint Prepackaged Chapter 11 Plan of Arena Energy, LP and Its Debtor Affiliates* (*In re Arena Energy, LP*, Case No. 20-34215 (MI) (Bankr. S.D. Tex. Sept. 18, 2020) (Docket No. 189)) (the "**Arena Objection**") and negotiated consensual language in Arena's confirmation order to address timing and process for resolving the Arena Objection.

- Conducted research and analysis regarding joint operating agreements and other issues related to the Arena Objection.

- Prepared for and represented the Debtors at the hearing to confirm the chapter 11 plan of Arena Energy, LP.

15

s.  Secured Creditor Issues / Meetings / Communications (Task Code 026)
    Fees: $55,283.50; Total Hours: 48.50

    - Attended regular meetings and calls with the Consenting Creditors and the Debtors' other advisors regarding case strategy, diligence, and various other aspects of the chapter 11 cases.

    - Completed a comprehensive analysis of the mortgages and liens securing the prepetition secured creditors' claims and shared those findings with the Consenting Creditors.

t.  Tax Matters (Task Code 027)
    Fees: $200,598.50; Total Hours: 192.70

    - Conducted research and analysis regarding various potential tax issues and advised the Debtors regarding potential tax implications of the chapter 11 plan and DIP Facility.

    - Drafted tax-related sections of chapter 11 plan and related disclosure statement.

    - Researched, analyzed, and advised the Debtors on various other tax-related issues, including the treatment of tax obligations in chapter 11 and under the chapter 11 plan.

u.  Unsecured Creditors/ Meetings / Communications (Task Code 028)
    Fees: $66,759.00; Total Hours: 61.20

    - Attended regular meetings and calls with the Creditors' Committee and the Debtors' other advisors regarding case strategy, diligence, and various other aspects of the chapter 11 cases.

    - Communicated with counsel to Creditors' Committee in connection with the Creditors' Committee's diligence and discovery requests, produced documents.

    - Conducted extensive document review and document production in response to the Creditors' Committee diligence and discovery requests.

v.  U.S. Trustee Matter/MORs/ Schedules & SOFAs/ 2015.3 Reports  (Task Code 029)
    Fees: $139,147.00; Total Hours: 164.30

    - Prepared, filed, and sought approval of motion to extend time to file schedules of assets and liabilities ("**SOALs**") and statements of financial affairs ("**SOFAs"**);

    - Prepared, revised, and filed SOALs and SOFAs.

- Participated on teleconferences with the U.S. Trustee regarding monthly operating reports, section 341 meeting, and other issues.

- Prepared and reviewed responses to various U.S. Trustee information requests and comments.

- Reviewed and filed monthly operating reports.

w. <u>Apache Definitive Documentation (Task Code 031)</u>
Fees: $549,257.50; Total Hours: 489.60

- Drafted and negotiated the definitive documents implementing the transactions contemplated by or relating to the Apache Term Sheet (the "**Apache Definitive Documents**").

x. <u>Plugging & Abandonment Liabilities (Task Code 032)</u>
Fees: $60,151.00; Total Hours: 63.30

- Drafted, filed, and obtained Court approval of *Debtors' Motion Pursuant to Section 636 of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order (I) Authorizing and Approving Settlement by and Among Fieldwood Energy LLC, Hoactzin Partners, L.P., The Hoazctzin Trustee, and Other Parties and (II) Granting Related Relief* (Docket No. 113) ("**9019 Motion**") and related declaration.

- Conducted research and analysis related to the plugging and abandonment obligations.

19.     In addition to the foregoing, Weil prepared, on behalf of the Debtors, all necessary motions, applications, orders, notices, responses, and other papers in support of positions taken by the Debtors and in compliance with applicable law.

20.     The foregoing professional services were necessary and appropriate to the administration of the Debtors' chapter 11 cases.  The professional services performed by Weil were in the best interests of the Debtors and their stakeholders.  Compensation for such services is commensurate with the complexity, importance, and nature of the issues and tasks that were involved in these cases.  All of Weil's professional services were performed skillfully and efficiently.

17

21.     The professional services performed by Weil's partners, counsel, associates, and paraprofessionals were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits & Executive Compensation Departments predominantly in the New York, Houston, and Dallas offices.  Weil has a preeminent Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of distressed entities.

22.     The professional services performed by Weil on behalf of the Debtors during the Compensation Period required an aggregate expenditure of approximately 4,340.60 hours by Weil's partners, counsel, associates, paraprofessionals, and other non-legal staff.  Of the aggregate time expended, approximately 1,247.30 recorded hours were expended by partners and counsel of Weil, approximately 2,797.40 recorded hours were expended by associates, and approximately 295.90 recorded hours were expended by paraprofessionals and other non-legal staff of Weil.  Of the fifty Weil attorneys who billed time, fourteen billed fewer than fifteen hours to this matter.  Of the eighteen Weil paraprofessionals and non-legal staff who billed time, twelve billed fewer than fifteen hours to this matter.

23.     During the Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $595.00 to $1,650.00 per hour for attorneys. Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $989.71 (based on 4,044.70 recorded hours for attorneys at Weil's billing rates in effect at the time of the performance of services).[4]

---

[4] For the Compensation Period, Weil utilized the services of 18 paraprofessionals, slightly more than the number projected in the Staffing Plan. The additional paraprofessionals' services were required to assist with responding to numerous diligence and document production requests in a cost-effective and efficient manner.

**Actual and Necessary Disbursements of Weil**

24.     As set forth in **Exhibit E** attached hereto, Weil has disbursed $44,958.80 as expenses incurred in providing professional services during the Compensation Period.  These expenses are reasonable and necessary and were essential to the overall administration of these cases.

25.     Although Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation home from Weil's offices.  Weil's regular practice is not to include components of those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Fee Guidelines or the Local Rules.

26.     With respect to photocopying expenses, in compliance with the Fee Guidelines and Local Rule 2016-1, Weil charges all of its clients $0.10 per black-and-white page; Weil charges $0.50 per color page.  With respect to legal research, Weil does not charge more than the actual cost.  Each of these categories of expenses does not exceed the maximum rate set by the Fee Guidelines or the Local Rules.  These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into Weil's hourly billing rates.  Only clients who actually use services of the types set forth in **Exhibit E** are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service.  A determination of the actual expenses per page for photocopying,

however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

27.     On certain occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Weil's overhead for the purpose of setting billing rates. Weil has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were those that were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates and creditors.

<u>**Requested Compensation Should Be Allowed**</u>

28.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330(a)(1) of the Bankruptcy Code provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

29.     The Court of Appeals has held that the six factors found in section 330(a)(3) of the Bankruptcy Code are to be considered when awarding compensation to professionals. *See In re Crager*, 691 F.3d 671, 676 (5th Cir. 2012). Specifically, under section 330 of the Bankruptcy Code, courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including—

    (A)     the time spent on such services;

    (B)     the rates charged for such services;

    (C)     whether the services were necessary to the administration of, or beneficial at the time at which

20

the service was rendered toward the completion of, a case under this title;

(D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

30.    In the instant case, Weil submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders and to the orderly administration of the Debtors' estates.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

31.    Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  Not only were Weil's professional services performed skillfully and efficiently, but whenever possible, Weil sought to minimize the cost of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of case administration.  In addition, groups of the same Weil attorneys were utilized for similar tasks in these cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances.  As described above, the complexity of these cases required the use of specialists in tax, banking and finance, mergers

and acquisitions, litigation, and other areas to achieve the progress the Debtors have reached thus far in these chapter 11 cases.

32.     In sum, the services rendered by Weil were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the types of issues involved in these chapter 11 cases.  Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

### Notice

33.     Notice of this Application will be provided in accordance with the procedures set forth in the Interim Compensation Order.  The Debtors respectfully submit that no further notice is required.

34.     No previous request for the relief sought herein has been made by Weil or the Debtors to this or any other Court.

### Conclusion

35.     Weil respectfully requests that the Court award interim allowance of Weil's compensation for professional services rendered during the Compensation Period in the amount of $4,108,204.00, representing 100% of fees incurred during the Compensation Period, and reimbursement in the amount of $44,958.80, representing 100% of actual and necessary expenses incurred during the Compensation Period, and that such allowance be without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Compensation Period in the event such fees and expenses were not processed at the time of this Application and grant such other and further relief as is proper and just.

Dated:     December 15, 2020
             Houston, Texas

           */s/ Alfredo R. Pérez*

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
          Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on December 15, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez
