UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS (HOUSTON)

```
                                    .   Case No. 20-33948
IN RE:                              .   Chapter 11
                                    .   (Jointly Administered)
FIELDWOOD ENERGY, LLC and the       .
OFFICIAL COMMITTEE OF UNSECURED     .   515 Rusk Street
CREDITORS,                          .   Houston, TX 77002
                Debtors.            .
                                    .   Monday, December 14, 2020
. . . . . . . . . . . . . . . . .   .   2:14 p.m.
```

TRANSCRIPT OF MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) CLARIFYING
ITS DISCLOSURE OBLIGATIONS, (II) APPROVING PROTOCOL FOR
PROVIDING ACCESS TO INFORMATION TO UNSECURED CREDITORS
AND (III) RETAINING PRIME CLERK LLC AS INFORMATION AGENT,
EFFECTIVE AS OF SEPTEMBER 1, 2020 [401]
**BEFORE THE HONORABLE MARVIN ISGUR VIA VIDEOCONFERENCE
UNITED STATES BANKRUPTCY COURT JUDGE**

TELEPHONIC APPEARANCES:

```
Official Committee of      Stroock & Stroock & Lavan, LL
Unsecured Creditors:       BY:  KENNETH PASQUALE, ESQ.
                                JACK IAFFALDANO, ESQ.
                           180 Maiden Lane
                           New York, NY 10038
                           (212) 806-5400
```

```
Audio Operator:            Claudia Gutierrez, ECR

Transcription Company:     Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          (Proceedings commenced at 2:14 p.m.)

2               THE COURT:  It is 20-33948.

3          (Pause)

4               THE COURT:  Mr. Pasquale, I've got you and I've got a

5     couple of other people.  So let's start with you, Mr. Pasquale.

6               MR. PASQUALE:  Good afternoon, Your Honor,  Kenneth

7     Pasquale, Stroock & Stroock on behalf of the creditors'

8     committee.  I'd like to introduce to Your Honor my colleague,

9     Jack Iaffaldano, who will be presenting the motion this

10    afternoon.

11              THE COURT:  All right.  I can see him yet.

12              MR. PASQUALE:  He should be on camera.  I see he's

13    not.

14              THE COURT:  We'll give him a minute.

15              MR. PASQUALE:  Thank you, Your Honor.

16              THE COURT:  I have someone else on the phone that --

17    here's one more person.  Yes.  Who else do we have on the phone

18    in the Fieldwood case?  Yes?

19              UNIDENTIFIED:  Your Honor, can you hear me?

20              THE COURT:  Sorry.  Go ahead again.

21              MR. IAFFALDANO:  Good afternoon, Your Honor.  This is

22    Jack Iaffaldano of Stroock & Stroock & Lavan for the creditors'

23    committee.  And I'm having some trouble connecting my camera.

24              THE COURT:  Okay.  Do you want me to let you take a

25    moment?  I can probably tell you the most common problem that

1 we have or do you want to work through it on your own?

2 　　　　　MR. IAFFALDANO: Sure. That would be great.

3 　　　　　THE COURT: The most common problem we have is you

4 were on Zoom earlier today. And Zoom still has your camera

5 captured. So if you'll do an Alt -- are you on a Windows-based

6 computer?

7 　　　　　MR. IAFFALDANO: I am. Nothing on Zoom, so I don't

8 think that's the issue for sure.

9 　　　　　THE COURT: Or on any sort of account-sharing app?

10 Anything that used your camera?

11 　　　　　MR. IAFFALDANO: I don't believe so.

12 　　　　　THE COURT: Interesting.

13 　　　　　MR. IAFFALDANO: I think --

14 　　　　　THE COURT: We'll work through it. Did you get here

15 through an app or how did you get here?

16 　　　　　MR. IAFFALDANO: I'm in the browser version of

17 GoToMeeting. And now it's saying my camera's blocked.

18 　　　　　THE COURT: So let me get you to --

19 　　　　　MR. IAFFALDANO: I'm trying to handle that.

20 　　　　　THE COURT: I can see that you're sitting there, just

21 without a camera usage. I have not blocked your camera. Why

22 don't you go ahead and do this? Download the app and get out

23 of the browser and then come in through the app. And that will

24 usually fix the problem that you're describing. So I'm going

25 to go ahead and remove you from the app for now -- I'm sorry --

4

1  from the connection.  And then if you will download the app

2  onto your computer and then we'll just wait for you to get back

3  in.  Does that work?

4          MR. IAFFALDANO:  Sure, Your Honor.  I actually had

5  already downloaded it, and it -- I tried to connect earlier and

6  it said that it was unable to connect.  So that's why I

7  actually went over to the browser version.

8          THE COURT:  That's interesting it's not letting me

9  disconnect you.  Weird.  I don't know what's going on.  This

10 could be my problem.  I'm going to come back in.  For those of

11 you that are here on the GoToMeeting, I'm going to -- oh, wait.

12 No, there it is.  I'm sorry.  Okay, so I've got you removed.

13 Why don't you try coming in now through the app and tell me

14 what happens on the app.

15     (Pause)

16         THE COURT:  This is one of the few virtues I've tried

17 to learn through COVID is to be patient with technology

18 problems.  So you're not going to have me having a hard time

19 with you.  We'll just take our time and work through it.

20         MR. IAFFALDANO:  Thank you, Your Honor.  I appreciate

21 that.

22     (Pause)

23         THE COURT:  So what's the app doing with this?

24         MR. IAFFALDANO:  It say starting the GoTo.  I just

25 have a full loading bar kind of like --

1          THE COURT:  Okay.  Good.

2          MR. IAFFALDANO:  But --

3      (Pause)

4          THE COURT:  If this doesn't work, I'm going to order

5  Mr. Pasquale to buy you a new computer.

6      (Laughter)

7          MR. PASQUALE:  Yes, sir.

8          MR. IAFFALDANO:  I'm not exactly sure what's going

9  on.  It just says -- it has the full loading bar, and it says

10 starting GoTo, but nothing's happening.

11         THE COURT:  Do an Alt, Control, Delete, and get out

12 of GoTo all together, if you would.  And then start over.

13         MR. IAFFALDANO:  Oh, sure.

14         THE COURT:  I'm somehow wondering if your camera

15 hasn't given permissions, but I assume that's not it.

16         MR. IAFFALDANO:  Okay.  There's no -- it does get me

17 back in the meeting or (indiscernible) the ID number.  That's

18 just Judge Isgur, correct?

19         THE COURT:  Correct.  All one word, no spaces.

20     (Pause)

21         MR. IAFFALDANO:  Yeah.  So it's doing the same thing

22 it had previously done which is it does verifying meeting for

23 quite some time and then it says "unable to join session."

24         THE COURT:  And what did you put in as the meeting

25 name?

1          MR. IAFFALDANO:  Judge Isgur one word.

2          THE COURT:  Huh.  Okay, one more try at this and then

3  we'll figure out an alternative.  Go ahead and do Alt, Control,

4  Delete and get out of it and do not get back in it.

5     (Pause)

6          THE COURT:  And once you're out of it, I want you to

7  go to www.txs.uscourts.gov.

8          MR. IAFFALDANO:  Sorry, you said gas.uscourts.gov?

9          THE COURT:  Txs -- Texas Southern -- .uscourts.gov.

10          MR. IAFFALDANO:  Sorry.

11          THE COURT:  That's okay.

12          MR. IAFFALDANO:  Okay.

13          THE COURT:  Go to bankruptcy court, and then go to my

14  homepage.  And there should be a link to GoToMeeting.

15          MR. IAFFALDANO:  Sure.

16          THE COURT:  Yeah.  And just click on that GoToMeeting

17  link.  Let's see if that works.

18          MR. IAFFALDANO:  And the Judge Isgur's proceeding --

19  Procedures?

20          THE COURT:  Yeah.

21          MR. IAFFALDANO:  Sorry.

22          THE COURT:  No, not in my Procedures.  On my

23  homepage.  It should be right next to the Procedures page in

24  that little table.

25          Did you find it?

1          MR. IAFFALDANO:  I'm not seeing anything on the

2  homepage for your name.

3          THE COURT:  Hold on.  Bankruptcy court.  Sorry,

4  Bankruptcy Court, Judge's Procedures, and then go to View

5  homepage next to Judge Isgur.

6          MR. IAFFALDANO:  Oh, I see it.

7          THE COURT:  Sorry, my fault.  And then on that page,

8  about a quarter of the way down, it says "click here to connect

9  to GoToMeeting video link."  Do you see that or --

10          MR. IAFFALDANO:  Yeah, it's nothing after the verify

11  the meeting ID.  I'm also going to try it on a different web

12  browser.

13          THE COURT:  Okay.  Yeah, if this doesn't work, I'm

14  either going to, you know, continue the hearing for a couple of

15  hours and come back or let you start without the video link,

16  whichever one you want to do.  And there's no hurry either way.

17  I've got time this afternoon to hear you later.

18          Ah, you just came in.

19          MR. PASQUALE:  Thank you, Your Honor.

20          THE COURT:  You're on the system.

21          MR. IAFFALDANO:  Can you see me now?

22          THE COURT:  I can't see you.  It says "no camera."

23  But I can see you with a little camera link.  And I see your

24  initials.  But it's still not grabbing your camera, huh?

25          MR. IAFFALDANO:  (Indiscernible).

1      THE COURT:  So I'm going to give you your choice.

2  You can either proceed without a camera or we'll come back at

3  4:30 and by then, you know, if you restart your computer,

4  assumingly, presumably, you'll have this working or get your

5  tech people there.  But I sort of used up all of my marbles in

6  terms of how I know to talk you through it.

7      MR. IAFFALDANO:  Whatever you'd prefer, Your Honor.

8  I see a lot of people have joined.  So I'm more than happy to

9  proceed with just audio to not waste any more or that much

10  time.

11      THE COURT:  You're not wasting time.  I will tell you

12  I have concerns with what you're doing, and I'm going to want

13  to spend some time talking through it because I think we need

14  to really narrowly tailor anything that deals with a statute

15  like this.  And I'm not sure that it's as narrow as what I'm

16  comfortable with.  So you might prefer to be looking at me.

17      MR. IAFFALDANO:  Certainly.

18      THE COURT:  But I'm going to leave that up to you.

19  But I'm perfectly happy to come back in a couple of hours and

20  deal with it two hours from now.

21      MR. IAFFALDANO:  Well, I can see you.  I can see you,

22  Your Honor.  It's whether or not I'm visible.

23      THE COURT:  That's fine.

24      MR. PASQUALE:  Why don't we do that, Your Honor.

25  It's Ken Pasquale.  Why don't we come back at I think you said

1 4:30, your time?

2          THE COURT:  If that works for y'all.  And I'm sorry

3 to do that, but since I don't -- I can't figure out the

4 problem, I --

5          MR. PASQUALE:  No, no.

6          THE COURT:  I've got them authorized.  I think this

7 is -- this is your problem, Ken.

8          MR. PASQUALE:  I think it's on our end.  We'll just

9 (indiscernible) come back.

10          THE COURT:  No, I don't think it's on your end.  I

11 think it's on the partner's, so I'm going to blame you for it

12 personally.

13          MR. PASQUALE:  Okay.  Understood, Your Honor.  I'll

14 accept that responsibility.

15          THE COURT:  All right.  We'll see y'all at 4:30.

16 Thank you.

17          MR. PASQUALE:  Thank you, Your Honor.

18          MR. IAFFALDANO:  Thank you, Your Honor.

19      (Recess taken at 2:28 p.m.)

20      (Proceedings resumed at 4:29 p.m)

21          THE COURT:  All right.  Let's go back on the record

22 on the Fieldwood Energy case.  It's 20-33948.

23          Mr. Iaffaldano, why don't you go ahead, please, sir.

24          MR. IAFFALDANO:  Good afternoon, Your Honor.  Jack

25 Iaffaldano of Stroock & Stroock & Lavan for the Fieldwood

1   creditors' committee.  My apologies for the technology issues

2   earlier.  I believe we managed to get it sorted out without the

3   need for Mr. Pasquale to buy me a new laptop.  Are you able to

4   see and hear me?

5           THE COURT:  I tried anyway, Mr. Iaffaldano.

6           MR. IAFFALDANO:  I appreciate that.  Thank you.

7           Your Honor --

8           THE COURT:  Before we get into the substance of

9   this --

10          MR. IAFFALDANO:  Sure.

11          THE COURT:  -- would you take just a minute and

12  educate me in case that's something I can talk somebody else

13  through next time?  How'd you solve the problem?

14          MR. IAFFALDANO:  It was actually an internal IT

15  security issue.  I had to authorize my webcam to be usable

16  through the web browser.

17          THE COURT:  Oh, so it was Mr. Pasquale's fault.  I

18  was right.

19          MR. IAFFALDANO:  Technically, yes.

20          THE COURT:  All right.  Then I don't think I can talk

21  people through that if it was something he's doing.  Why don't

22  you move ahead.

23          MR. IAFFALDANO:  Your Honor, the Committee filed this

24  motion pursuant to Section 1102 of the Bankruptcy Code to

25  clarify information-sharing obligations to unsecured creditors

1  who are not on the Committee.  As you know, Section 1102 is

2  unclear about the specifics in the disclosure requirements both

3  with respect to the nature of the information that should be

4  shared as well as the means by which the Committee should

5  provide those information.  So the relief we are requesting

6  here is just meant to define the scope of the Committee's legal

7  responsibility in that regard.

8       I know when we mentioned this earlier today, Your

9  Honor mentioned concerns regarding the scope of the motion.

10  We're also aware that this Court has previously expressed

11  concerns regarding the due process implications of improper

12  service of this type of motion.  I'd be happy to try to assuage

13  those concerns and answer any questions Your Honor may have

14  regarding you hear the motion itself.  (Indiscernible) serve it

15  on as many unsecured creditors as possible.

16       THE COURT:  So it looks to me like that you've

17  overcome the service problem.  So let me -- first of all, let

18  me tell you I think that in 2005 when Congress made this change

19  that we need to do our best to recognize the change which

20  wasn't very unpopular I think with folks but to be sure we

21  implement it.  That doesn't mean that we should expose people

22  to undue risk for foot faults in it.  But I want to be careful

23  to the largest extent possible we accomplish both what it was

24  clear that Congress wanted to do which is to be sure that your

25  constituents got information and, you know, not putting people

1 through undue risks.

2          So really what I want to talk you through are just

3 what may sound like minor issues to you but they're significant

4 to me because they tend to move us away from what I think

5 Congress intended, even if they sound a bit picky.  And so I

6 really intend to have more of a discussion with you.  I don't

7 think anyone has objected to this.  Just kind of go through

8 some of the provisions that I thought maybe we should pare it

9 back some of the stuff.

10          So the first one is the way that I think this works

11 is a beneficiary who wants information has to negotiate with

12 you for 30 days before they can come to me and complain about

13 not getting the information.  I didn't know at all why we would

14 do that.  I don't know why they -- you know, it's a good idea

15 for them to confer with you, but I don't even know why it needs

16 to be in the order.  Let's say somebody is so angry at you that

17 they want to go to the emergency hearing the next day so they

18 could get the data.  Why would I ever restrict them in terms of

19 where Congress is trying to go?

20          And I'm going to put you a bit on the spot on a

21 number of things like this.  So just why are we going this far

22 and why do we -- why do y'all need it and why is it

23 appropriate?  And there's probably no case law about this, so

24 I'm going to put you out on your own on this.

25          MR. IAFFALDANO:  Absolutely, Your Honor.  I think

1  practically speaking, we probably would respond much sooner

2  than 30 days.  I think that's just we placed a maximum there

3  really to place the onus on us to respond in a timely manner.

4  But if you feel that it should be -- enough time should be

5  required for a response, we're happy to adjust that or --

6            THE COURT:  It's not that I think 30 days is an

7  unreasonable response time for you.  I'm not sure why it

8  prohibits somebody from -- you're not prohibited from coming to

9  court ever for 30 days.  Why am I prohibiting some poor

10 shareholder in Missouri, you know, from coming in and

11 complaining to me about what you're doing to make them go

12 through a negotiation with you if they just want to come

13 directly here?

14            It doesn't seem to me I'm providing the types of 1103

15 concerns that you're worried about in terms of your liability.

16 It looks to me like that's more of a roadblock.  And that's why

17 I'm asking that question.

18            MR. IAFFALDANO:  I don't think it's --

19            THE COURT:  Why do we have that at all?

20            MR. IAFFALDANO:  I'm sorry.

21            THE COURT:  No, no.

22            MR. IAFFALDANO:  I don't think it's meant to be a

23 roadblock, Your Honor.  I think it's -- I don't think anything

24 in this motion or in an order would prevent an interested party

25 from coming directly to you if that's the route that they

1  wanted to go.  We just wanted to have a procedure set up by

2  which they could request information through us directly.

3        THE COURT:  So let's look at that because if that's

4  what it's doing, then I'm misreading it.  And I want to open up

5  the proposed order, and I'll put it up on the screen and show

6  you where my concern is.

7      (Pause)

8        THE COURT:  So I think it's in paragraph E.

9      (Pause)

10        THE COURT:  It talks about you have to respond within

11  30 days.  And then it says the requesting creditor may after I

12  good-faith effort to meet and confer seek to compel disclosure.

13  So they have to wait the 30 days.  You know, they have to

14  confer, all that stuff.  Why are we doing that to them?

15        MR. IAFFALDANO:  Your Honor, I think we are -- this

16  is mostly protecting information that would be deemed as

17  professionals eyes only.  So in that regard, I think it makes

18  more sense to -- for the creditor seeking that information to

19  go through the party who is in possession of that information.

20        THE COURT:  I think it does make some sense, but this

21  doesn't let them come around it.  And it's not that I don't

22  want to encourage people to do it.  I think you've gone a step

23  too far.  And we'll go through other things, but on this one,

24  what I would suggest you do is -- and I really do want to hear

25  if I'm overstepping.  These are hard lines to draw.

1        I think telling people that you will respond within

2   30 days and that I'm encouraging them to go through you is all

3   just find.  It's a good process you've got.  It's the part that

4   says they can't come to court until after they do that that I

5   think doesn't serve the purpose of your motion.  It serves to

6   restrict people, and that's where my concern is.  So that's the

7   first point.  And I think you can fix that and preserve what

8   you're trying to preserve without maybe stepping on people a

9   little bit.

10       Second I have is --

11       MR. IAFFALDANO:  Understood, Your Honor.

12       THE COURT:  -- this binds creditors to your

13  confidentiality agreements throughout.  There's a whole bunch

14  of provisions that say if you enter into a confidentiality

15  agreement, the beneficiaries of your Committee are stuck with

16  your decision.  And I can point you to lots of places where it

17  does that.  Why?

18       I mean you entered in a confidentiality agreement and

19  let's say I think you -- just assume for a minute.  And, first

20  of all, I doubt this will happen.  But assume I think that you

21  shouldn't have.  Why am I vesting the Committee with the right

22  to take away the rights that Congress gave to beneficiaries?

23       I don't have a problem that if you've entered into a

24  confidentiality agreement that I have to rule on it before you

25  have to breach the confidentiality agreement.  But I think

1   you've thrown up roadblocks here that give some presumption

2   about that, you know, that -- why are we doing that?  Again,

3   this is not -- what's awkward about this is the situations

4   you're describing are very sensible policies that I wish people

5   and hoped people will follow.  But I'm trying to be consistent

6   with this provision of the Code.

7            MR. IAFFALDANO:  Absolutely, Your Honor.  You know,

8   to the extent that we may be imposing our own confidentiality

9   agreements on other unsecured creditors, I don't think that

10  that's really the intention.  I think that we are -- we

11  wouldn't be receiving certain information from the debtors

12  absent of entering into confidentiality agreements with them.

13  So I think that that's really just meant to protect the

14  Committee from inadvertently violating those agreements which

15  were negotiated between the Committee members and the debtors.

16            THE COURT:  Right.  So take a look for a minute at

17  1102(b)(3)(C).  That implies to me -- and I don't think it's

18  perfect language -- that even if you enter into a

19  confidentiality agreement, the Court can still order you to

20  turn over the information.

21            MR. IAFFALDANO:  That's also how read that

22  subsection, Your Honor.

23            THE COURT:  Yeah.  And I think that there are just

24  too many places throughout here where you limit that.  And I

25  got it that you need to get the confidential information.  But

1  the people who are providing it to you are simply going to need
2  to trust the process of you and they enter into a
3  confidentiality agreement.  Somebody else can come in and upset
4  it.  I got no problem that, you know, I'm not the final arbiter
5  of that.  You know, there are people in Washington D.C. that
6  sit on Third Street or whatever it is that are the final
7  arbitration of that.
8          But, you know, they don't need to be bound by my
9  order.  They can appeal it.  They can go to the Fifth Circuit.
10  They can go to the Supreme Court.  I'm not looking to be god on
11  this.  But I think that we have to be careful to preserve
12  people's rights without bias to enforce 1102(b)(3).  And I
13  would ask you to think of how to -- if you look through this,
14  this implicates like five or six different paragraphs.
15          And I just want to be careful on all of that to where
16  confidentiality in a bankruptcy case is supposed to be open
17  with a committee that's supposed to be representing
18  beneficiaries.  It's difficult, and we need to be sure we keep
19  openness and that we respect this provision.  But I'm not --
20          MR. IAFFALDANO:  Understood, Your Honor.
21          THE COURT:  But I'm not suggesting that the Committee
22  shouldn't enter into confidentiality agreements and keep its
23  word.  You know, and I'm not looking to have the Committee
24  break its word.  The Committee is welcome to come in.  But
25  there are certain provisions -- let me ask what happens if the

1  Committee enters into a confidentiality agreement and then

2  decides somebody really should have the information.  In other

3  words, y'all look at what you did and you say we shouldn't have

4  done that.  I think this then still gives people -- they don't

5  get the data because you entered into the confidentiality

6  agreement.

7         And I think right here -- let's see.  Let me bring it

8  back in for a minute.

9     (Pause)

10        THE COURT:  This says what happens if you think that

11 you have a duty to disclose it under the statute.  And really

12 it sets up this long and arduous process, burdensome on the

13 beneficiary, to get material that you think they're entitled to

14 receive under 1102.  That just can't be.  I mean this isn't one

15 where you're siding with the party you entered in the

16 confidentiality agreement with.  You're saying, look, we did

17 enter into it, but we still think the creditor ought to get the

18 information.

19        I just want to -- I want you to think through that,

20 and I want a more nuanced way to deal with it.  And I -- again,

21 I don't want this --

22        MR. IAFFALDANO:  Understood.

23        THE COURT:  I don't want this misinterpreted that I

24 don't think committees ought to do confidentiality agreements.

25 I think they have to.  I think you're never going to get your

1  job done if you don't do that.  Not what I'm going for.  But if

2  you look at this language, it's a very difficult question on

3  how to resolve it.  And, you know, it may be that if you think

4  somebody needs the information and they think they need the

5  information and realistically, they need it right away, but

6  you've put up some roadblocks here that you shouldn't impose on

7  yourself because of your responsibilities.  So I need you to

8  think through this very hard.

9       MR. IAFFALDANO:  Understood, Your Honor.  We

10 absolutely consider how to best modify that with that in mind

11 and revise the motion accordingly.

12      THE COURT:  Paragraph 2 says, "The Committee and the

13 parties shall be deemed being in compliance with Sections

14 1102(b)(3) and 1103(c) of the Bankruptcy Code by implementing

15 the creditor information protocol."  I didn't understand the

16 reference to 1103(c).  This is a much easier question.  I just

17 didn't understand this.

18      MR. IAFFALDANO:  I believe it's just to ensure that

19 the Committee has a need to satisfy its duties as a statutory

20 committee.

21      THE COURT:  And I get it how you're trying to get

22 that on 1102(b)(3), but nothing that you've done in here seems

23 to me to implicate 1103(c).  I have a feeling that somebody

24 wrote this in an earlier order and nobody has reviewed it

25 again.  But you can tell me I'm wrong about that.

1          MR. IAFFALDANO:  That's possible, Your Honor.  I do

2   believe that most of the language in this order and in the

3   information protocol is based on the order that you entered in

4   EP Energy.  But I'd have to double check that.  It's

5   specifically with respect to that reference to 1103(c).

6          THE COURT:  That's fair.  Let me let you do that, and

7   I'm trying to improve even if I made a mistake in EP Energy.

8   So I'm not suggesting I haven't made a mistake before in a

9   similar situation.  But you see me on a bunch of these, I

10  suspect, really resist doing them.  And you really want this

11  enough that you sent out the notice, and I'm going to get you

12  an order but I'm going to now -- I'm going to --

13         MR. IAFFALDANO:  Thank you, Your Honor.

14         THE COURT:  -- I'm going to be more careful about my

15  own mistakes.  So let's see if it's the right thing to do.

16         Paragraph 5, the last sentence, this can't be.  I

17  mean this says to me if there's confidential information to

18  which 1102(b)(3) requires you to provide that to one of your

19  beneficiaries, then I'm excusing you of -- not excusing you, I

20  am overriding the statute and saying you don't have to.  That

21  just can't be.

22         Do you see my concern that I have there?

23         MR. IAFFALDANO:  I do.  I think it's really just to

24  protect Committee members from inadvertent violations of their

25  confidentiality agreements.

1          THE COURT:  Yeah, but read that sentence.

2          MR. IAFFALDANO:  But --

3          THE COURT:  I got what you're trying to get to, but

4  read that sentence.  And I don't think that's what you need.

5  It just can't be that notwithstanding the proper construction

6  of 1102(b)(3) to the contrary, the Committee and its members

7  and its counsel aren't required to disseminate confidential

8  information.  I mean if 1102(b)(3) says you have to disseminate

9  confidential information, then you do.  And this says if it

10 says you have to distribute it, then you don't.  And that can't

11 be what you mean here.

12         By the way, you know Mr. Pasquale knew you were going

13 through this hearing and he was making you do this anyway?  But

14 I'm just going to -- I'm going to try and get this to where

15 maybe we can end up with an order that other people can use

16 too.  So that's why I'm giving you a hard time.

17         MR. IAFFALDANO:  No, I definitely understand, Your

18 Honor.  If that sentence is an issue, we can certainly remove

19 it.  I'm not entirely sure how else we could capture that idea

20 in a better way.

21         THE COURT:  Well, I mean, look, I'm willing to say

22 that so long as you are in compliance with the order, you're

23 not violating 1102(b)(3).  But this says that you don't have to

24 produce under 1102(b)(3) confidential information, period, end

25 of sentence.  That's not what you mean.  I think what you mean

1  is more what I'm saying, which is if you do what this order

2  requires and what future orders require, then you're not in

3  violation of 1102(b)(3).  This is essentially an implantations

4  of 1102(b)(3), but this sentence is I think written as an

5  override to 1102(b)(3).  And that's where my concern is.

6          MR. IAFFALDANO:  I see.

7          THE COURT:  But, again, not only do I think that

8  Committees need to deal in confidential information and people

9  need to have confidence when the Committee says they're going

10 to keep stuff confidential, we need good people serving on

11 Committees who aren't going to be subjected to liability for

12 their good-faith compliance with court orders.  And so the last

13 thing I want this discussion you and I are having is to be

14 interpreted that says Isgur doesn't think we ought to keep

15 stuff confidential, Isgur thinks people ought to be subject to

16 liability.  I'm not saying that.

17         But I think if we issue orders that are contrary to

18 the Code, the whole order could get upset and we can end up

19 with a bigger mess than no order at all.  And so that's why I'm

20 trying to be careful and maybe use this as a bit of modeling

21 for me.

22         So I'd said before that there were provisions in here

23 that I thought you just needed to review the whole thing for

24 confidentiality.  Look at paragraph 6.

25     (Pause)

1          THE COURT:  This doesn't say -- it's one thing to say

2    that you have no liability so long as you act in compliance

3    with the procedures set forth herein, but it then says "and any

4    confidentiality agreement."  So if you act in accordance with a

5    confidentiality agreement but not in compliance with this

6    order, what have you got?  I don't know, but I don't like the

7    sentence.  It seems to elevate confidentiality over duty and

8    order.

9          And I had similar concerns in paragraph 8.  Yeah,

10   that says if you have any doubt which controls, the

11   confidentiality agreement or the order, confidentiality

12   agreements control over the order.  I don't think you want to

13   say that.  I don't think you meant to say that.  But I think

14   that's a fair reading of it that nothing in this order affects

15   the obligations under confidentiality agreements.

16         So what I would suggest is that you can try and edit

17   this order if you want, but I -- first of all, I think you

18   understand where I'm coming from.  Let me just ask if you

19   don't, that's fair and tell me.  And I want to have a colloquy

20   with you about it.  But if you do --

21         MR. IAFFALDANO:  No.

22         THE COURT:  I wonder if you want to start with just a

23   clean slate.  And, you know, we'll get your proper

24   interpretation of how to do this.  You're welcome to edit this

25   and, you know, send me up a redline order.  You're also welcome

24

1 to start from scratch if starting over will give us a cleaner

2 thing.  Don't worry too much about what I've done before.

3 Let's just get this done right and, you know, it can be the

4 Iaffaldano order.

5         MR. IAFFALDANO:  Absolutely, Your Honor.  We'll think

6 about whether we want to just edit this or start completely

7 from scratch.  We'll get you a revised order soon.

8         THE COURT:  Okay.  Would you do me a favor because

9 this is, I think you can tell, pretty important to me to get

10 this done right?  When you get that revised order filed, would

11 you contact Ms. Do so that she can put it in my emergency box

12 so I can try and deal with it within a day of when you file it?

13         MR. IAFFALDANO:  Will do, Your Honor.

14         THE COURT:  Do you have any questions for me about

15 where my concerns are?

16         MR. IAFFALDANO:  No.  I think I definitely understand

17 your concerns.  Yeah, I think it's clear.

18         THE COURT:  And I'm going to just give you sort of an

19 open right to take a shot at me.  Am I getting this wrong?

20         MR. IAFFALDANO:  No.  I don't think so, Your Honor.

21 I think, you know, we are just concerned about the legal

22 exposure that Committee members might face absent this type of

23 release.  We just don't want them to be put in a situation

24 where they may be faced with a decision between potentially

25 violating their statutory obligations under Section 1102 versus

ACCESS TRANSCRIPTS, LLC    ⚖    1-855-USE-ACCESS (873-2223)

1  violating the confidentiality agreements that they've entered
2  into with the debtors.

3          So I think what we're trying to do here is just find
4  a happy medium there.  So I don't think anything that you've --
5  any of your suggestions changes (indiscernible)  -- and I don't
6  think that it affects that tremendously.  So --

7          THE COURT:  Do you think --

8          MR. IAFFALDANO:  -- I don't think it would be an
9  issue.

10         THE COURT:  And I know you haven't written it yet,
11 but do you think there is a good way to both protect the
12 Committee's ability to obtain confidential information and
13 protect your constituents' rights to your review things?  Can
14 we strike that in a written order?  We going to be able to get
15 there?

16         MR. IAFFALDANO:  I think we can certainly try.  We'll
17 have to think about that some more and decide how we want to
18 precisely word it.

19         THE COURT:  Okay.  Look, I appreciate your putting up
20 with this today.  It's an unusual hearing because there's no
21 objection.  You're having to deal with me, and I'm not being
22 terribly cooperative with you.  But it isn't because you don't
23 deserve the cooperation.  I just need to get this done right.
24 So thank you for doing that.

25         MR. IAFFALDANO:  No.

1          THE COURT:  Okay.  Unless there's something else --

2          MR. IAFFALDANO:  Much appreciated, Your Honor.  Thank

3   you very much.

4          THE COURT:  Thank you.  Unless there's something

5   else, I'm going to move ahead to my 5 o'clock hearing in just a

6   moment.  But if there's anything else you want to take up, we

7   can take up something else.

8          MR. IAFFALDANO:  No.  I believe that's all.

9          THE COURT:  All right.  Mr. Pasquale, anything else

10  from you?  I think you've got your line muted, Mr. Pasquale.

11         Anything else from you?  You're still muted.  You're

12  still muted.  Oh, wait.  There we go.  Somehow it got remuted

13  during the middle of the hearing.  I don't know what happened.

14  I had you open.  Try it now.  Get it?  No.

15         Hold on.  I'll get it.  This is my -- there.  Okay,

16  you're unmuted now.  I'm sorry.

17         MR. PASQUALE:  And all I was trying to say, Your

18  Honor, is thank you for the time.  We appreciate your input,

19  and we will work on the order.  So thank you.

20         THE COURT:  Does he get a new laptop?

21         MR. PASQUALE:  We will have to talk about that after

22  the hearing, Your Honor.

23         THE COURT:  All right.  Thank you.

24         MR. PASQUALE:  Thank you.

25         MR. IAFFALDANO:  Thank you very much, Your Honor.

1          THE COURT:  Thank you, sir.

2      (Proceedings concluded at 4:58 p.m.)

3                  *  *  *  *  *

4

5

6

7

8

9              **C E R T I F I C A T I O N**

10

11          We, Dipti Patel and Alicia Jarrett, court-approved

12   transcribers, hereby certify that the foregoing is a correct

13   transcript from the official electronic sound recording of the

14   proceedings in the above-entitled matter, to the best of our

15   abilities.

16

17   _Dipti Patel_

18   _____

19   DIPTI PATEL, AAERT NO. 997    DATE:  December 17, 2020

20   ACCESS TRANSCRIPTS, LLC

21

22   _Alicia F. Jarrett_

23   _____

24   ALICIA JARRETT, AAERT NO. 428    DATE:  December 18, 2020

25   ACCESS TRANSCRIPTS, LLC