

**SUSAN RACCA, CLERK OF COURT**
www.cameronparishcoc.com
P.O. Box 549    119 Smith Circle
CAMERON LA 70631
PHONE: 337-775-5316 FAX: 337-775-2838

Page    1

Filed By:   #21
LUGENBUHL WHEATON PECK RANKIN ETC
BP EXPLORATION & PROD
601 POYDRAS ST
27TH FL   PAN AM LIFE
NEW ORLEANS, LA 70130

N/A

Invoice:    2020902    Date: 12 / 2 / 2020

| Item | Description | Total |
|---|---|---|
| 1 | 348455-MO, RECORDINGS | 200.00 |
|   | ACT 826 PORTAL FEE | 5.00 |
|   | Invoice Total | 205.00 |
| 2 | RECEIPT#117369, CHECK# 100326 | -205.00 |
|   | Receipts Total | -205.00 |
|   | Total Due | 0.00 |

**\*\*DUE UPON RECEIPT\*\***
REFERENCE INVOICE NUMBER WHEN REMITTING PAYMENT
ID NUMBER 72-6000249


EXHIBIT 1

|  |  |
|---|---|
| FILED: | Cameron Parish, Bureau of Ocean Energy Management |
| LEASE NO.: | OCS-G-01860 |
| AREA/BLOCK: | WC 66 |
| OPERATOR: | BP Exploration & Production Inc.; Fieldwood Energy LLC |
| LESSEE: | Fieldwood Energy, LLC |
| AMOUNT: | $21,750.00 |

## OIL WELL LIEN AFFIDAVIT, NOTICE OF CLAIM OF LIEN AND STATEMENT OF PRIVILEGE

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

BEFORE ME, the undersigned authority, personally came and appeared:

### JASON MAURIN

who, after being duly sworn, did depose and say:

1. He is the Chief Financial Officer of Heartland Compression Services, L.L.C. ("Heartland"), 3799 W. Airline Highway, Reserve, LA 70084-0536, and he is duly authorized to make and is making this affidavit for and on behalf of Heartland.

2. Heartland is in the business of furnishing labor, equipment, machinery, and materials, and related services in support of the development, exploration, maintenance, operation, and abandonment of oil and gas well(s).

3. In connection with its business, Heartland contracted to supply services, labor, equipment, materials and supplies and related services used in well operation, production, drilling and abandonment to Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, TX 77042 ("Fieldwood").

4. Between approximately April 1, 2020 through June 30, 2020 (the "Applicable Period"), Heartland supplied goods, equipment, supplies, services, materials and related services to Fieldwood in connection with the operation, including drilling, completing, testing, production, reworking or abandoning of certain wells located in Lease No. OCS-G-01860, West Cameron, Block 66, off the coast of Cameron Parish, State of Louisiana (the "Lease").

5. As of the present date, a remaining principal amount of $21,750.00 is due and owing on Invoice Nos Y0062519, Y0062520 and Y0062521 (collectively, the "Invoices") for those certain goods, equipment, supplies and services provided by Heartland to the Lease during the

- 1 -

Applicable Period, together with accruing contractual interest, plus attorneys' fees and costs. True and correct copies of the Invoices are attached hereto and incorporated herein, *in globo*, as <u>Exhibit A</u>.

6. At all relevant times hereto, the labor, equipment, supplies and services provided by Heartland were used for or in connection with the drilling, exploration, development, operation, and/or abandonment of the Lease.

7. As evidenced by the records of the United States Department of Interior, Bureau of Ocean Energy Management (the "BOEM"), Fieldwood, BOEM Company Number 03295, and BP Exploration & Production Inc. ("BP"), BOEM Company Number 02481, were at all relevant times and remain the operators of the above-referenced Lease.

8. This Oil Well Lien Affidavit is made for the purpose of securing payment of the debt owed by Fieldwood to Heartland as described herein and is made in accordance with La. R.S. 9:4861, *et seq.*, and all other applicable laws for the purposes of preserving the liens and privileges granted by law to Heartland on the following: (1) the Lease described above, and any wells located on the Lease; (2) the operating interest of the operator of the Lease, Fieldwood and BP, and the operating interest of any participating lessee(s) therein, together with such parties' interest in any (a) well(s), building, tank, leasehold pipeline, platforms, machinery, flowlines, gathering lines, and other related equipment and other construction or facility located thereon, (b) all movables used in the operation of the well attached thereto or located on the Lease and/or well site, including, but not limited to, monitoring, measuring, metering and control equipment, appurtenances, appliances, equipment and other structures, and (c) tract of land, servitude or other lease described in La. R.S. 9:4861(12)(c) covering the Lease; (3) a drilling or other rig located at the Lease, if the rig is owned by the operator of the Lease, Fieldwood and BP; (4) all hydrocarbons produced from the operating interest of the operator of the Lease, Fieldwood and BP, and the operating interest of any participating lessee(s) therein without limitation, Fieldwood; and (5) the proceeds received by, and the obligations owed to, any lessee or operating interest from the disposition of hydrocarbons subject to the privilege for the amount due for the labor, supplies, and services, in principal and interest, and for the cost of preparing and recording the privilege, or any notice of *lis pendens* and contractual or statutory attorneys' fees.

9. That this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being filed in the Mortgage Records of Cameron Parish, State of Louisiana and with the BOEM.

10. That a copy of this Oil Well Lien Affidavit, Notice of Claim of Lien, and Statement of Privilege is being delivered to the lessee(s) and Operator(s) of the Lease at the following: (a) Fieldwood Energy, LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, TX 77042; (b) Fieldwood Energy, LLC, through its registered agent, Capital Corporate Services, Inc., 8550 United Plaza Building II, Ste. 305, Baton Rouge, LA 70809; (c) BP Exploration & Production Inc. 17220 Katy Freeway, Suite 100 Houston, TX 77094; and (d) BP Exploration & Production Inc., through its registered agent C T Corporation Systems, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

Thus done and signed in New Orleans, Louisiana on this 20TH day of November, 2020.

Heartland Compression Services, L.L.C.

By: _____
Name: Jason Maurin
Its: Chief Financial Officer _____

SWORN TO AND SUBSCRIBED BEFORE ME THIS 20th DAY OF NOVEMBER 2020.

_____
NOTARY PUBLIC
James E. Miller
Notary Public (#88142)
Parish of St. John the Baptist, State of Louisiana
My commission is issued for life.

- 3 -


**HEARTLAND**
Compression Services

26894 STATE HWY 50 SOUTH
MOORELAND, OK 73852
PHONE:  FAX:

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY SOUTH STE 1200
HOUSTON, TX 77042

# RENTAL INVOICE
### INVOICE Y0062519

| | |
|---|---|
| ACCT#: | H205385 |
| INVOICE DATE: | 04/08/2020 |
| INVOICE AMOUNT: | $7,250.00 |
| PO #: | |
| ORDERED BY: | PAUL GLUTH |
| | (713) 969-1000 |
| SIGNED BY: | |
| JOBSITE INFO: | L18025 |
| | WC 66 E |
| | 2000 W. SAM HOUSTON PKWY SOUTH |
| | HOUSTON, TX 77042 |
| CONTACT NAME: | PAUL GLUTH |
| CONTACT PHONE: | |
| DATE OUT: | 10/29/2018 MON 12:00 AM |
| BILLED FROM: | 04/01/2020 WED 12:00 AM |
| BILLED THRU: | 04/30/2020 THU 11:59 PM |
| SALES REP: | COUNTER - HEARTLAND COMPRESS |
| WRITTEN BY: | KENDRA REDFEARN |

| QTY | DESCRIPTION | DAY | WEEK | MONTH | TOTALS |
|---|---|---|---|---|---|
| | **Rental Items** | | | | |
| 1. | EQUIPMENT RENTAL    FROM 04/01/20 THRU 04/30/20<br>ID NO: HC18025   SERIAL NO: 0WWF00558<br>- CG1378 PG | $0 | $0 | $7,250 | 7,250.00 |
| | | | **Rental Subtotal:** | | 7,250.00 |

**Miscellaneous Items**

Billed for 1 month from 4/1/2020 12:00 AM thru 4/30/2020 11:59 PM

Please Remit Payment To:
P.O. Box 54942
New Orleans, LA 70154

**Invoice Total:**       7,250.00

Wiring Instructions:   Receiving Bank: Capital One, N.A. New Orleans
ABA Routing NO.: 065000090
Account Title: Heartland Compression Services
Account Number: 542014474
SWIFT Address: HIBKUS44

Lessee agrees to lease from Heartland Compression Services the machine, vehicle (including but not limited to licensed and unlicensed trailers and motor vehicles), equipment and accessories described above (collectively, "the equipment") for the period, pursuant to the terms, and at the rates set forth above and on the reverse side. PAYMENT IS DUE UPON RECEIPT OF INVOICE, AND IS PAST DUE AFTER 30 DAYS. A service charge of 1 1/2% per month will be added to any past-due balance until paid in full. Lessee is also obligated to pay for freight, taxes and fuel and to provide and maintain commercial general liability and physical damage insurance. OPERATOR TRAINING IS LESSEE'S RESPONSIBILITY. Instruction in safe operation and maintenance is available upon request.

Printed on Wednesday, April 8, 2020  11:54:13 AM by FROM RELEASE

Y0062519       Page 1 of 2

## Terms and Conditions of Lease

Louisiana Machinery L.L.C. ("LESSOR") hereby leases to the LESSEE named on the reverse side, and LESSEE hereby leases from lessor, the equipment or other personal property ("equipment") described on the reverse side according to the following terms and conditions:

1. **Rental and Term:** All rental rates are based on eight (8) hours daily, forty (40) hours weekly, and one hundred sixty (160) hours monthly. Overtime charges will be assessed at the rate shown on the face of this Lease. All monthly billings are calculated and invoiced on a twenty-eight (28) day cycle. Rental and term begins on date and time specified as "out" and terminates on the date and time specified as "due" unless amended in writing on the reverse of this contract. LESSEE's right to use the equipment terminates on the termination of this Lease or the due date, whichever occurs first.

2. **Taxes:** LESSEE agrees that during the term of this Lease, in addition to the rent provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the LESSEE in the leased equipment or upon the use of operation thereof. LESSEE agrees to pay said taxes whether said taxes appear as part of the face of this contract or whether said taxes are otherwise claimed by a governmental authority.

3. **Possession, Place of Use:** So long as LESSEE shall not be in default under this lease it shall be entitled to the possession and use of the leased equipment in accordance with the terms of this Lease. The leased equipment shall only be used in the conduct of the lawful business of the LESSEE and shall remain in the location shown in the "Ship To" block on the face of this Lease, unless the LESSOR consents in writing to the removal of the equipment from the designated location. The LESSEE shall not without LESSOR's prior written consent, part with possession or control of the leased equipment or attempt to sell, pledge, mortgage or otherwise dispose of or encumber any interest under this Lease.

4. **Damages and Losses:** LESSEE agrees to pay for any and all damages or loss to rented items, except as provided under a Limited Damage and Theft Waiver (DAMG & THFT WAVR) if such Limited Damage and Theft Waiver (DAMG & THFT WAVR) is properly elected by LESSEE.

If the LESSEE has declined the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE will be liable for the full cost of repairing and/or replacing any loss or damage to the leased equipment from any cause whatsoever. Additionally, LESSEE will remain responsible for all obligations under the terms of this Lease while the leased equipment is under repair. In the event the leased equipment is a total loss, or must be replaced, LESSEE remains responsible for all obligations under the terms of this Lease until LESSOR is reimbursed in full for the total loss of the leased equipment, or the leased equipment is replaced.

Notwithstanding any provision contained herein, and regardless of whether or not LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees that LESSOR shall not be liable to LESSEE, nor shall this contract be voided or voidable, for LESSOR's failure to repair equipment if such equipment becomes disabled, or to furnish substitute equipment for any reason whatsoever.

**Limited Damage and Theft Waiver**

As a condition precedent to the LESSOR's waiver of any claims of damage or theft under the Limited Damage and Theft Waiver (DAVG & THFT WAVR), LESSEE agrees to keep leased equipment locked and properly secured when not in use. Any failure to do so which causes or contributes to any damage or theft voids LESSOR's obligations and agreements under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), and LESSEE shall not be entitled to a refund of the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee.

LESSEE agrees to furnish to LESSOR a complete report of any accident involving leased items, including the names and addresses of all persons involved and all witnesses.

If the LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR) and has paid the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee, and takes reasonable precautions to safeguard leased items and use them in a responsible manner, LESSOR agrees to share the cost of direct physical damage and loss to the leased items as defined and limited below:

Pursuant to the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSOR will waive claims against the LESSEE for: A.

50% of the replacement cost of items stolen while on rental, excluding:

1. Accessories or tools, including air hoses, blades, electric cables and cords, fuel tanks, hand tools, tool steel and tires. The costs and/or losses of any such items are not covered by this Waiver under any circumstances.

2. Losses occurring while the equipment is in the direct care, custody or control of the LESSEE's employees or persons to whom the equipment is entrusted by the LESSEE.

Losses are not covered by this Waiver unless the leased items were locked and secured. Whenever LESSEE is claiming benefit of the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE shall furnish a written police report to LESSOR within 10 days on losses by theft.

B. 100% of property damage to the leased items/equipment, even those caused by third parties, excluding:

1. Loss, damage or failure of tires and tubes under any circumstances.

2. Losses resulting in whole or in part from the equipment being overloaded, operated above the rated capacity, rolled over, striking overhead objects, or if operating and safety instructions are not followed.

3. Losses resulting in whole or in part from LESSEE's failure to provide sufficient and proper maintenance and servicing of leased equipment, including but not without limited to lubrication, change of filters when required, and maintenance of adequate air, oil, water, or fuel pressures or levels.

4. If damage results from improper or unsafe operation or care, whether caused by negligence, lack of training, incompetence of the LESSEE's employee or other person to whom leased items are entrusted. Notwithstanding the above, LESSOR may in its sole discretion waive the provisions of this paragraph.

5. If damage results from the gross negligence or intentional actions of LESSEE's employee or other person to whom the leased items are entrusted

6. Loss or damage resulting directly or indirectly from any terms or provisions of the Lease covering the leased equipment.

It is further agreed that, irrespective of the provisions stated above, if LESSEE has insurance covering such loss or damage, than LESSEE shall exercise all necessary action to process said claim, and shall assign said claim and pay any and all proceeds received from said insurance to LESSOR.

5. **No Liability for Punitive, Special or Consequential Damages:** Notwithstanding anything to the contrary in this Lease, LESSOR in no event is or shall be liable for any punitive, special or consequential damages of any nature whatsoever and however caused.

6. **Indemnity:** Subject to the damages to and/or thefts of property covered under the Limited Damage and Theft Waiver (DAMG & THFT WAVR) above, LESSEE shall defend, indemnify and save LESSOR harmless from any and all liability, loss, damage, expense, cause of action, suits, claims or judgments arising from injury or death to any person or loss of or damage to any property resulting from or based upon the actual or alleged use, operation, delivery or transportation of any or all of the leased equipment or its location or condition; and shall, at its own expense, defend any and all suits which may be brought against LESSOR, either alone or in conjunction with others upon any such liability or claims and shall satisfy, pay and discharge any and all judgments and fines that may be imposed or recovered against LESSOR in any such action or actions upon written notice by LESSOR to LESSEE of any such claim or demand.

7. **Security:** Louisiana Machinery L.L.C. reserves the right to require a security deposit at it's sole discretion. Security deposit shall not be construed as a prepayment of amounts due under this agreement.

8. **Insurance:** LESSEE agrees, at its own cost and expense, to maintain at all times commercial general liability, auto liability (as appropriate), property, fire, theft and comprehensive insurance with limits and coverage terms satisfactory to LESSOR. Such policies shall name LESSOR as a loss payee and additional insured, will be primary and non-contributing, and will grant a waiver of subrogation in favor of the LESSOR. Any deductibles applicable to said policies will be paid by LESSEE. LESSEE further agrees to promptly furnish LESSOR with evidence of coverage thereof in a manner satisfactory to LESSOR upon request. The limits of liability in the aforementioned policies shall not be less than $1,000,000 per occurrence for commercial general liability and $1,000,000 combined single limit for auto liability, unless LESSOR gives permission to the LESSEE to carry lower limits.

9. **Maintenance and Use:** LESSEE agrees to use proper care of the equipment in its use, maintenance and storage, to operate the same within its rated capacity and to cause the equipment to be operated only by properly trained employees of the LESSEE. LESSEE agrees to notify LESSOR immediately of any accidents, disabilities, failures or like occurrences involving the equipment or those individuals operating the equipment. LESSEE shall take care of the normal maintenance of the equipment including supplying fuel, oil and water, daily checking of general condition, including oil levels, cooling system and water in batteries. At LESSOR's option LESSOR may service and maintain the equipment in proper working condition and LESSEE agrees to make it available for servicing by LESSOR at reasonable times during LESSOR's business hours: provided, however, that any service or maintenance performed by the LESSOR in no way relieves the LESSEE of any of its obligations under this Section or otherwise under the terms of this Lease.

10. **Title of the LESSOR:** Title to the leased equipment shall at all times remain with the LESSOR, and LESSEE will at all times protect and defend, at its own cost and expense, the title of the LESSOR from and against all claims, liens and legal processes of creditors of the LESSEE and keep all leased equipment free and clear from all such claims, liens and processes. The leased equipment is and shall remain movable property. Upon the expiration or termination of this lease, the LESSEE, at LESSEE's sole expense, shall return the leased equipment unencumbered to LESSOR at its place of business where Lease originated (or to other such place as LESSOR may agree upon) and in the same condition as when received by LESSEE, reasonable wear and tear resulting from use thereof alone excepted.

11. **Acceleration:** In the event of default or breach of this Lease by LESSEE, LESSOR may, at its option, accelerate and declare all remaining unpaid rentals for the term of this Lease due and owing by the LESSEE.

12. **Bankruptcy:** In the event the LESSEE files for bankruptcy, receivership or respite or the LESSEE is adjudged bankrupt, or a receiver is appointed for the LESSEE, or in the case of the LESSEE's suspension, failure or insolvency, the LESSEE shall be considered to have defaulted under the terms of this lease, and the LESSOR shall have the right to exercise the options spelled out in Section 11 of this agreement.

13. **Options of LESSOR on LESSEE's Default:** In the event of a default or breach of this Lease by LESSEE, LESSOR expressly reserves all of its rights and remedies pursuant to the Louisiana Lease of Movables Act, La.R.S.9:3301, et seq., or any other applicable law, specifically and without limitation, reserving its rights to judicially enforce its rights specified herein, including its right to accelerate rentals, or to cancel the Lease. Cancellation of the Lease shall be made through a written notice of cancellation delivered to the LESSEE or mailed to LESSEE by registered or certified mail. If the property has been subleased or the Lease assigned with the consent of the LESSOR, then notice of cancellation shall also be sent to each known, authorized sub-lessee or assignee. Within 5 days after receipt of the notice of cancellation or within 5 days after its mailing, whichever is earlier, the LESSEE, sub-lessee or assignee, as the case may be, shall surrender possessions of the leased movable to the LESSOR in the manner and at the place provided upon the termination of the Lease.

14. **Attorney's Fee:** Should any legal proceedings be instituted by LESSOR to recover any sums due hereunder and/or to recover damages resulting from the breach hereof, LESSEE is hereby bound and obligated to pay a reasonable attorney's fee which sum is fixed at 25% of any amount recovered (not to exceed, however, 25% of the total amount payable under the lease). Should any other legal proceeding be instituted by LESSOR to enforce any covenants of this lease and/or to recover possession of all or part of the equipment leased hereunder, LESSEE agrees to pay LESSOR's reasonable attorney's fees.

15. **No Warranties by LESSOR:** LESSOR, not being the manufacturer of the leased equipment, nor manufacturer's agent, makes no warranty or representation, either expressed or implied, as to the fitness, design or condition of or as to the quality or capacity of the material, equipment, or workmanship in the leased equipment, nor any warranty that the leased equipment will satisfy the requirements of any law, rule specification or contract which provides for specified machinery or operations, or special methods. It being agreed that all such risks, as between the LESSOR and the LESSEE are to be borne by the LESSEE at its sole risk and expense. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding against LESSOR: all prior conversations, agreements, or representations related hereto and/or to the leased equipment are integrated herein, and no modification thereof shall be binding unless in writing by LESSOR.

16. **Remedies, Waivers:** No remedy of LESSOR hereunder shall be exclusive of any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy, to the full extent allowed by law. A waiver of a default shall not be a waiver of any other or a subsequent default.



**HEARTLAND Compression Services**

26894 STATE HWY 50 SOUTH
MOORELAND, OK 73852
PHONE:  FAX:

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY SOUTH STE 1200
HOUSTON, TX 77042

# RENTAL INVOICE
## INVOICE Y0062520

| | |
|---|---|
| ACCT#: | H205385 |
| INVOICE DATE: | 05/05/2020 |
| INVOICE AMOUNT: | $7,250.00 |
| PO #: | |
| ORDERED BY: | PAUL GLUTH |
| | (713) 969-1000 |
| SIGNED BY: | |
| JOBSITE INFO: | L18025 |
| | WC 66 E |
| | 2000 W. SAM HOUSTON PKWY SOUTH |
| | HOUSTON, TX 77042 |
| CONTACT NAME: | PAUL GLUTH |
| CONTACT PHONE: | |
| DATE OUT: | 10/29/2018 MON 12:00 AM |
| BILLED FROM: | 05/01/2020 FRI 12:00 AM |
| BILLED THRU: | 05/31/2020 SUN 11:59 PM |
| SALES REP: | COUNTER - HEARTLAND COMPRESS |
| WRITTEN BY: | IRS CYCLE PGM |

| QTY | DESCRIPTION | DAY | WEEK | MONTH | TOTALS |
|---|---|---|---|---|---|
| **Rental Items** | | | | | |
| 1. | EQUIPMENT RENTAL   FROM 05/01/20 THRU 05/31/20<br>ID NO: HC18025   SERIAL NO: 0WWF00558<br>- CG1378 PG | $0 | $0 | $7,250 | 7,250.00 |
| | **Rental Subtotal:** | | | | 7,250.00 |

**Miscellaneous Items**

Billed for 1 month from 5/1/2020 12:00 AM thru 5/31/2020 11:59 PM

Please Remit Payment To:
P.O. Box 54942
New Orleans, LA 70154

**Invoice Total:**                7,250.00

Wiring Instructions:  Receiving Bank: Capital One, N.A. New Orleans
ABA Routing NO.: 065000090
Account Title: Heartland Compression Services
Account Number: 542014474
SWIFT Address: HIBKUS44

Lessee agrees to lease from Heartland Compression Services the machine, vehicle (including but not limited to licensed and unlicensed trailers and motor vehicles), equipment and accessories described above (collectively, "the equipment") for the period, pursuant to the terms, and at the rates set forth above and on the reverse side. PAYMENT IS DUE UPON RECEIPT OF INVOICE, AND IS PAST DUE AFTER 30 DAYS. A service charge of 1 1/2% per month will be added to any past-due balance until paid in full. Lessee is also obligated to pay for freight, taxes and fuel and to provide and maintain commercial general liability and physical damage insurance. OPERATOR TRAINING IS LESSEE'S RESPONSIBILITY. Instruction in safe operation and maintenance is available upon request.

Printed on Tuesday, May 5, 2020  11:45:38 AM by FROM RELEASE                Y0062520        Page 1 of 2

## Terms and Conditions of Lease

Louisiana Machinery L.L.C. ("LESSOR") hereby leases to the LESSEE named on the reverse side, and LESSEE hereby leases from lessor, the equipment or other personal property ("equipment") described on the reverse side according to the following terms and conditions:

1. **Rental and Term:** All rental rates are based on eight (8) hours daily, forty (40) hours weekly, and one hundred sixty (160) hours monthly. Overtime charges will be assessed at the rate shown on the face of this Lease. All monthly billings are calculated and invoiced on a twenty-eight (28) day cycle. Rental and term begins on date and time specified as "out" and terminates on the date and time specified as "due" unless amended in writing on the reverse of this contract. LESSEE's right to use the equipment terminates on the termination of this Lease or the due date, whichever occurs first.

2. **Taxes:** LESSEE agrees that during the term of this Lease, in addition to the rent provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the LESSEE in the leased equipment or upon the use of operation thereof. LESSEE agrees to pay said taxes whether said taxes appear as part of the face of this contract or whether said taxes are otherwise claimed by a governmental authority.

3. **Possession, Place of Use:** So long as LESSEE shall not be in default under this lease it shall be entitled to the possession and use of the leased equipment in accordance with the terms of this Lease. The leased equipment shall only be used in the conduct of the lawful business of the LESSEE and shall remain in the location shown in the "Ship To" block on the face of this Lease, unless the LESSOR consents in writing to the removal of the equipment from the designated location. The LESSEE shall not without LESSOR's prior written consent, part with possession or control of the leased equipment or attempt to sell, pledge, mortgage or otherwise dispose of or encumber any interest under this Lease.

4. **Damages and Losses:** LESSEE agrees to pay for any and all damages or loss to rented items, except as provided under a Limited Damage and Theft Waiver (DAMG & THFT WAVR) if such Limited Damage and Theft Waiver (DAMG & THFT WAVR) is properly elected by LESSEE.

If the LESSEE has declined the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE will be liable for the full cost of repairing and/or replacing any loss or damage to the leased equipment from any cause whatsoever. Additionally, LESSEE will remain responsible for all obligations under the terms of this Lease while the leased equipment is under repair. In the event the leased equipment is a total loss, or must be replaced, LESSEE remains responsible for all obligations under the terms of this Lease until LESSOR is reimbursed in full for the total loss of the leased equipment, or the leased equipment is replaced.

Notwithstanding any provision contained herein, and regardless of whether or not LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees that LESSOR shall not be liable to LESSEE, nor shall this contract be voided or voidable, for LESSOR's failure to repair equipment if such equipment becomes disabled, or to furnish substitute equipment for any reason whatsoever.

**Limited Damage and Theft Waiver**

As a condition precedent to the LESSOR's waiver of any claims of damage or theft under the Limited Damage and Theft Waiver (DAVG & THFT WAVR), LESSEE agrees to keep leased equipment locked and properly secured when not in use. Any failure to do so which causes or contributes to any damage or theft voids LESSOR's obligations and agreements under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), and LESSEE shall not be entitled to a refund of the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee.

LESSEE agrees to furnish to LESSOR a complete report of any accident involving leased items, including the names and addresses of all persons involved and all witnesses.

If the LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR) and has paid the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee, and takes reasonable precautions to safeguard leased items and use them in a responsible manner, LESSOR agrees to share the cost of direct physical damage and loss to the leased items as defined and limited below:

Pursuant to the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSOR will waive claims against the LESSEE for: A.

50% of the replacement cost of items stolen while on rental, excluding:

1. Accessories or tools, including air hoses, blades, electric cables and cords, fuel tanks, hand tools, tool steel and tires. The costs and/or losses of any such items are not covered by this Waiver under any circumstances.

2. Losses occurring while the equipment is in the direct care, custody or control of the LESSEE's employees or persons to whom the equipment is entrusted by the LESSEE.

Losses are not covered by this Waiver unless the leased items were locked and secured. Whenever LESSEE is claiming benefit of the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE shall furnish a written police report to LESSOR within 10 days on losses by theft.

B. 100% of property damage to the leased items/equipment, even those caused by third parties, excluding:

1. Loss, damage or failure of tires and tubes under any circumstances.
2. Losses resulting in whole or in part from the equipment being overloaded, operated above the rated capacity, rolled over, striking overhead objects, or if operating and safety instructions are not followed.
3. Losses resulting in whole or in part from LESSEE's failure to provide sufficient and proper maintenance and servicing of leased equipment, including but not without limited to lubrication, change of filters when required, and maintenance of adequate air, oil, water, or fuel pressures or levels.
4. If damage results from improper or unsafe operation or care, whether caused by negligence, lack of training, incompetence of the LESSEE's employee or other person to whom leased items are entrusted. Notwithstanding the above, LESSOR may in its sole discretion waive the provisions of this paragraph.
5. If damage results from the gross negligence or intentional actions of LESSEE's employee or other person to whom the leased items are entrusted
6. Loss or damage resulting directly or indirectly from any terms or provisions of the Lease covering the leased equipment.

It is further agreed that, irrespective of the provisions stated above, if LESSEE has insurance covering such loss or damage, than LESSEE shall exercise all necessary action to process said claim, and shall assign said claim and pay any and all proceeds received from said insurance to LESSOR.

5. **No Liability for Punitive, Special or Consequential Damages:** Notwithstanding anything to the contrary in this Lease, LESSOR in no event is or shall be liable for any punitive, special or consequential damages of any nature whatsoever and however caused.

6. **Indemnity:** Subject to the damages to and/or thefts of property covered under the Limited Damage and Theft Waiver (DAMG & THFT WAVR) above, LESSEE shall defend, indemnify and save LESSOR harmless from any and all liability, loss, damage, expense, cause of action, suits, claims or judgments arising from injury or death to any person or loss of or damage to any property resulting from or based upon the actual or alleged use, operation, delivery or transportation of any or all of the leased equipment or its location or condition; and shall, at its own expense, defend any and all suits which may be brought against LESSOR, either alone or in conjunction with others upon any such liability or claims and shall satisfy, pay and discharge any and all judgments and fines that may be imposed or recovered against LESSOR in any such action or actions upon written notice by LESSOR to LESSEE of any such claim or demand.

7. **Security:** Louisiana Machinery L.L.C. reserves the right to require a security deposit at it's sole discretion. Security deposit shall not be construed as a prepayment of amounts due under this agreement.

8. **Insurance:** LESSEE agrees, at its own cost and expense, to maintain at all times commercial general liability, auto liability (as appropriate), property, fire, theft and comprehensive insurance with limits and coverage terms satisfactory to LESSOR. Such policies shall name LESSOR as a loss payee and additional insured, will be primary and non-contributing, and will grant a waiver of subrogation in favor of the LESSOR. Any deductibles applicable to said policies will be paid by LESSEE. LESSEE further agrees to promptly furnish LESSOR with evidence of coverage thereof in a manner satisfactory to LESSOR upon request. The limits of liability in the aforementioned policies shall not be less than $1,000,000 per occurrence for commercial general liability and $1,000,000 combined single limit for auto liability, unless LESSOR gives permission to the LESSEE to carry lower limits.

9. **Maintenance and Use:** LESSEE agrees to use proper care of the equipment in its use, maintenance and storage, to operate the same within its rated capacity and to cause the equipment to be operated only by properly trained employees of the LESSEE. LESSEE agrees to notify LESSOR immediately of accidents, disabilities, failures or like occurrences involving the equipment or those individuals operating the equipment. LESSEE shall take care of the normal maintenance of the equipment including supplying fuel, oil and water, daily checking of general condition, including oil levels, cooling system and water in batteries. At LESSOR's option LESSOR may service and maintain the equipment in proper working condition and LESSEE agrees to make it available for servicing by LESSOR at reasonable times during LESSOR's business hours: provided, however, that any service or maintenance performed by the LESSOR in no way relieves the LESSEE of any of its obligations under this Section or otherwise under the terms of this Lease.

10. **Title of the LESSOR:** Title to the leased equipment shall at all times remain with the LESSOR, and LESSEE will at all times protect and defend, at its own cost and expense, the title of the LESSOR from and against all claims, liens and legal processes of creditors of the LESSEE and keep all leased equipment free and clear from all such claims, liens and processes. The leased equipment is and shall remain movable property. Upon the expiration or termination of this lease, the LESSEE, at LESSEE's sole expense, shall return the leased equipment unencumbered to LESSOR at its place of business where Lease originated (or to other such place as LESSOR may agree upon) and in the same condition as when received by LESSEE, reasonable wear and tear resulting from use thereof alone excepted.

11. **Acceleration:** In the event of default or breach of this Lease by LESSEE, LESSOR may, at its option, accelerate and declare all remaining unpaid rentals for the term of this Lease due and owing by the LESSEE.

12. **Bankruptcy:** In the event the LESSEE files for bankruptcy, receivership or respite or the LESSEE is adjudged bankrupt, or a receiver is appointed for the LESSEE, or in the case of the LESSEE's suspension, failure or insolvency, the LESSEE shall be considered to have defaulted under the terms of this lease, and the LESSOR shall have the right to exercise the options spelled out in Section 11 of this agreement.

13. **Options of LESSOR on LESSEE's Default:** In the event of a default or breach of this Lease by LESSEE, LESSOR expressly reserves all of its rights and remedies pursuant to the Louisiana Lease of Movables Act, La.R.S.9:3301, et seq., or any other applicable law, specifically and without limitation, reserving its rights to judicially enforce its rights specified herein, including its right to accelerate rentals, or to cancel the Lease. Cancellation of the Lease shall be made through a written notice of cancellation delivered to the LESSEE or mailed to LESSEE by registered or certified mail. If the property has been subleased or the Lease assigned with the consent of the LESSOR, then notice of cancellation shall also be sent to each known, authorized sub-lessee or assignee. Within 5 days after receipt of the notice of cancellation or within 5 days after its mailing, whichever is earlier, the LESSEE, sub-lessee or assignee, as the case may be, shall surrender possessions of the leased movable to the LESSOR in the manner and at the place provided upon the termination of the Lease.

14. **Attorney's Fee:** Should any legal proceedings be instituted by LESSOR to recover any sums due hereunder and/or to recover damages resulting from the breach hereof, LESSEE is hereby bound and obligated to pay a reasonable attorney's fee which sum is fixed at 25% of any amount recovered (not to exceed, however, 25% of the total amount payable under the lease). Should any other legal proceeding be instituted by LESSOR to enforce any covenants of this lease and/or to recover possession of all or part of the equipment leased hereunder, LESSEE agrees to pay LESSOR's reasonable attorney's fees.

15. **No Warranties by LESSOR:** LESSOR, not being the manufacturer of the leased equipment, nor manufacturer's agent, makes no warranty or representation, either expressed or implied, as to the fitness, design or condition of or as to the quality or capacity of the material, equipment, or workmanship in the leased equipment, nor any warranty that the leased equipment will satisfy the requirements of any law, rule specification or contract which provides for specified machinery or operations, or special methods. It being agreed that all such risks, as between the LESSOR and the LESSEE are to be borne by the LESSEE at its sole risk and expense. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding against LESSOR: all prior conversations, agreements, or representations related hereto and/or to the leased equipment are integrated herein, and no modification thereof shall be binding unless in writing by LESSOR.

16. **Remedies, Waivers:** No remedy of LESSOR hereunder shall be exclusive of any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy, to the full extent allowed by law. A waiver of a default shall not be a waiver of any other or a subsequent default.



**HEARTLAND**
**Compression Services**

26894 STATE HWY 50 SOUTH
MOORELAND, OK 73852
PHONE:  FAX:

# RENTAL INVOICE
## INVOICE Y0062521

| | |
|---|---|
| ACCT#: | H205385 |
| INVOICE DATE: | 06/08/2020 |
| INVOICE AMOUNT: | $7,250.00 |
| PO #: | |
| ORDERED BY: | PAUL GLUTH |
| | (713) 969-1000 |
| SIGNED BY: | |
| JOBSITE INFO: | L18025 |
| | WC 66 E |
| | 2000 W. SAM HOUSTON PKWY SOUTH |
| | HOUSTON, TX 77042 |
| CONTACT NAME: | PAUL GLUTH |
| CONTACT PHONE: | |

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY SOUTH STE 1200
HOUSTON, TX 77042

| | |
|---|---|
| DATE OUT: | 10/29/2018 MON 12:00 AM |
| BILLED FROM: | 06/01/2020 MON 12:00 AM |
| BILLED THRU: | 06/30/2020 TUE 11:59 PM |
| SALES REP: | COUNTER - HEARTLAND COMPRESS |
| WRITTEN BY: | IRS CYCLE PGM |

| QTY | DESCRIPTION | DAY | WEEK | MONTH | TOTALS |
|---|---|---|---|---|---|
| **Rental Items** | | | | | |
| 1. | EQUIPMENT RENTAL   FROM 06/01/20 THRU 06/30/20<br>ID NO: HC18025   SERIAL NO: 0WWF00558<br>- CG1378 PG | $0 | $0 | $7,250 | 7,250.00 |

**Rental Subtotal:** 7,250.00

**Miscellaneous Items**

Billed for 1 month from 6/1/2020 12:00 AM thru 6/30/2020 11:59 PM

Please Remit Payment To:
P.O. Box 54942
New Orleans, LA 70154

**Invoice Total:**   7,250.00

Wiring Instructions: Receiving Bank: Capital One, N.A. New Orleans
ABA Routing NO.: 065000090
Account Title: Heartland Compression Services
Account Number: 542014474
SWIFT Address: HIBKUS44

Lessee agrees to lease from Heartland Compression Services the machine, vehicle (including but not limited to licensed and unlicensed trailers and motor vehicles), equipment and accessories described above (collectively, "the equipment") for the period, pursuant to the terms, and at the rates set forth above and on the reverse side. PAYMENT IS DUE UPON RECEIPT OF INVOICE, AND IS PAST DUE AFTER 30 DAYS. A service charge of 1 1/2% per month will be added to any past-due balance until paid in full. Lessee is also obligated to pay for freight, taxes and fuel and to provide and maintain commercial general liability and physical damage insurance. OPERATOR TRAINING IS LESSEE'S RESPONSIBILITY. Instruction in safe operation and maintenance is available upon request.

Printed on Monday, June 8, 2020  4:02:55 PM by FROM RELEASE

Y0062521    Page 1 of 2

## Terms and Conditions of Lease

Louisiana Machinery L.L.C. ("LESSOR") hereby leases to the LESSEE named on the reverse side, and LESSEE hereby leases from lessor, the equipment or other personal property ("equipment") described on the reverse side according to the following terms and conditions:

1. **Rental and Term:** All rental rates are based on eight (8) hours daily, forty (40) hours weekly, and one hundred sixty (160) hours monthly. Overtime charges will be assessed at the rate shown on the face of this Lease. All monthly billings are calculated and invoiced on a twenty-eight (28) day cycle. Rental and term begins on date and time specified as "out" and terminates on the date and time specified as "due" unless amended in writing on the reverse of this contract. LESSEE's right to use the equipment terminates on the termination of this Lease or the due date, whichever occurs first.

2. **Taxes:** LESSEE agrees that during the term of this Lease, in addition to the rent provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the LESSEE in the leased equipment or upon the use of operation thereof. LESSEE agrees to pay said taxes whether said taxes appear as part of the face of this contract or whether said taxes are otherwise claimed by a governmental authority.

3. **Possession, Place of Use:** So long as LESSEE shall not be in default under this lease it shall be entitled to the possession and use of the leased equipment in accordance with the terms of this Lease. The leased equipment shall only be used in the conduct of the lawful business of the LESSEE and shall remain in the location shown in the "Ship To" block on the face of this Lease, unless the LESSOR consents in writing to the removal of the equipment from the designated location. The LESSEE shall not without LESSOR's prior written consent, part with possession or control of the leased equipment or attempt to sell, pledge, mortgage or otherwise dispose of or encumber any interest under this Lease.

4. **Damages and Losses:** LESSEE agrees to pay for any and all damages or loss to rented items, except as provided under a Limited Damage and Theft Waiver (DAMG & THFT WAVR) if such Limited Damage and Theft Waiver (DAMG & THFT WAVR) is properly elected by LESSEE.

If the LESSEE has declined the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE will be liable for the full cost of repairing and/or replacing any loss or damage to the leased equipment from any cause whatsoever. Additionally, LESSEE will remain responsible for all obligations under the terms of this Lease while the leased equipment is under repair. In the event the leased equipment is a total loss, or must be replaced, LESSEE remains responsible for all obligations under the terms of this Lease until LESSOR is reimbursed in full for the total loss of the leased equipment, or the leased equipment is replaced.

Notwithstanding any provision contained herein, and regardless of whether or not LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees that LESSOR shall not be liable to LESSEE, nor shall this contract be voided or voidable, for LESSOR's failure to repair equipment if such equipment becomes disabled, or to furnish substitute equipment for any reason whatsoever.

**Limited Damage and Theft Waiver**

As a condition precedent to the LESSOR's waiver of any claims of damage or theft under the Limited Damage and Theft Waiver (DAVG & THFT WAVR), LESSEE agrees to keep leased equipment locked and properly secured when not in use. Any failure to do so which causes or contributes to any damage or theft voids LESSOR's obligations and agreements under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), and LESSEE shall not be entitled to a refund of the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee.

LESSEE agrees to furnish to LESSOR a complete report of any accident involving leased items, including the names and addresses of all persons involved and all witnesses.

If the LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR) and has paid the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee, and takes reasonable precautions to safeguard leased items and use them in a responsible manner, LESSOR agrees to share the cost of direct physical damage and loss to the leased items as defined and limited below:

Pursuant to the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSOR will waive claims against the LESSEE for: A.

50% of the replacement cost of items stolen while on rental, excluding:

1. Accessories or tools, including air hoses, blades, electric cables and cords, fuel tanks, hand tools, tool steel and tires. The costs and/or losses of any such items are not covered by this Waiver under any circumstances.

2. Losses occurring while the equipment is in the direct care, custody or control of the LESSEE's employees or persons to whom the equipment is entrusted by the LESSEE.

Losses are not covered by this Waiver unless the leased items were locked and secured. Whenever LESSEE is claiming benefit of the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE shall furnish a written police report to LESSOR within 10 days on losses by theft.

B. 100% of property damage to the leased items/equipment, even those caused by third parties, excluding:

1. Loss, damage or failure of tires and tubes under any circumstances.
2. Losses resulting in whole or in part from the equipment being overloaded, operated above the rated capacity, rolled over, striking overhead objects, or if operating and safety instructions are not followed.
3. Losses resulting in whole or in part from LESSEE's failure to provide sufficient and proper maintenance and servicing of leased equipment, including but not without limited to lubrication, change of filters when required, and maintenance of adequate air, oil, water, or fuel pressures or levels.
4. If damage results from improper or unsafe operation or care, whether caused by negligence, lack of training, incompetence of the LESSEE's employee or other person to whom leased items are entrusted. Notwithstanding the above, LESSOR may in its sole discretion waive the provisions of this paragraph.
5. If damage results from the gross negligence or intentional actions of LESSEE's employee or other person to whom the leased items are entrusted
6. Loss or damage resulting directly or indirectly from any terms or provisions of the Lease covering the leased equipment.

It is further agreed that, irrespective of the provisions stated above, if LESSEE has insurance covering such loss or damage, than LESSEE shall exercise all necessary action to process said claim, and shall assign said claim and pay any and all proceeds received from said insurance to LESSOR.

5. **No Liability for Punitive, Special or Consequential Damages:** Notwithstanding anything to the contrary in this Lease, LESSOR in no event is or shall be liable for any punitive, special or consequential damages of any nature whatsoever and however caused.

6. **Indemnity:** Subject to the damages to and/or thefts of property covered under the Limited Damage and Theft Waiver (DAMG & THFT WAVR) above, LESSEE shall defend, indemnify and save LESSOR harmless from any and all liability, loss, damage, expense, cause of action, suits, claims or judgments arising from injury or death to any person or loss of or damage to any property resulting from or based upon the actual or alleged use, operation, delivery or transportation of any or all of the leased equipment or its location or condition; and shall, at its own expense, defend any and all suits which may be brought against LESSOR, either alone or in conjunction with others upon any such liability or claims and shall satisfy, pay and discharge any and all judgments and fines that may be imposed or recovered against LESSOR in any such action or actions upon written notice by LESSOR to LESSEE of any such claim or demand.

7. **Security:** Louisiana Machinery L.L.C. reserves the right to require a security deposit at it's sole discretion. Security deposit shall not be construed as a prepayment of amounts due under this agreement.

8. **Insurance:** LESSEE agrees, at its own cost and expense, to maintain at all times commercial general liability, auto liability (as appropriate), property, fire, theft and comprehensive insurance with limits and coverage terms satisfactory to LESSOR. Such policies shall name LESSOR as a loss payee and additional insured, will be primary and non-contributing, and will grant a waiver of subrogation in favor of the LESSOR. Any deductibles applicable to said policies will be paid by LESSEE. LESSEE further agrees to promptly furnish LESSOR with evidence of coverage thereof in a manner satisfactory to LESSOR upon request. The limits of liability in the aforementioned policies shall not be less than $1,000,000 per occurrence for commercial general liability and $1,000,000 combined single limit for auto liability, unless LESSOR gives permission to the LESSEE to carry lower limits.

9. **Maintenance and Use:** LESSEE agrees to use proper care of the equipment in its use, maintenance and storage, to operate the same within its rated capacity and to cause the equipment to be operated only by properly trained employees of the LESSEE. LESSEE agrees to notify LESSOR immediately of accidents, disabilities, failures or like occurrences involving the equipment or those individuals operating the equipment. LESSEE shall take care of the normal maintenance of the equipment including supplying fuel, oil and water, daily checking of general condition, including oil levels, cooling system and water in batteries. At LESSOR's option LESSOR may service and maintain the equipment in proper working condition and LESSEE agrees to make it available for servicing by LESSOR at reasonable times during LESSOR's business hours: provided, however, that any service or maintenance performed by the LESSOR in no way relieves the LESSEE of any of its obligations under this Section or otherwise under the terms of this Lease.

10. **Title of the LESSOR:** Title to the leased equipment shall at all times remain with the LESSOR, and LESSEE will at all times protect and defend, at its own cost and expense, the title of the LESSOR from and against all claims, liens and legal processes of creditors of the LESSEE and keep all leased equipment free and clear from all such claims, liens and processes. The leased equipment is and shall remain movable property. Upon the expiration or termination of this lease, the LESSEE, at LESSEE's sole expense, shall return the leased equipment unencumbered to LESSOR at its place of business where Lease originated (or to other such place as LESSOR may agree upon) and in the same condition as when received by LESSEE, reasonable wear and tear resulting from use thereof alone excepted.

11. **Acceleration:** In the event of default or breach of this Lease by LESSEE, LESSOR may, at its option, accelerate and declare all remaining unpaid rentals for the term of this Lease due and owing by the LESSEE.

12. **Bankruptcy:** In the event the LESSEE files for bankruptcy, receivership or respite or the LESSEE is adjudged bankrupt, or a receiver is appointed for the LESSEE, or in the case of the LESSEE's suspension, failure or insolvency, the LESSEE shall be considered to have defaulted under the terms of this lease, and the LESSOR shall have the right to exercise the options spelled out in Section 11 of this agreement.

13. **Options of LESSOR on LESSEE's Default:** In the event of a default or breach of this Lease by LESSEE, LESSOR expressly reserves all of its rights and remedies pursuant to the Louisiana Lease of Movables Act, La.R.S.9:3301, et seq., or any other applicable law, specifically and without limitation, reserving its rights to judicially enforce its rights specified herein, including its right to accelerate rentals, or to cancel the Lease. Cancellation of the Lease shall be made through a written notice of cancellation delivered to the LESSEE or mailed to LESSEE by registered or certified mail. If the property has been subleased or the Lease assigned with the consent of the LESSOR, then notice of cancellation shall also be sent to each known, authorized sub-lessee or assignee. Within 5 days after receipt of the notice of cancellation or within 5 days after its mailing, whichever is earlier, the LESSEE, sub-lessee or assignee, as the case may be, shall surrender possessions of the leased movable to the LESSOR in the manner and at the place provided upon the termination of the Lease.

14. **Attorney's Fee:** Should any legal proceedings be instituted by LESSOR to recover any sums due hereunder and/or to recover damages resulting from the breach hereof, LESSEE is hereby bound and obligated to pay a reasonable attorney's fee which sum is fixed at 25% of any amount recovered (not to exceed, however, 25% of the total amount payable under the lease). Should any other legal proceeding be instituted by LESSOR to enforce any covenants of this lease and/or to recover possession of all or part of the equipment leased hereunder, LESSEE agrees to pay LESSOR's reasonable attorney's fees.

15. **No Warranties by LESSOR:** LESSOR, not being the manufacturer of the leased equipment, nor manufacturer's agent, makes no warranty or representation, either expressed or implied, as to the fitness, design or condition of or as to the quality or capacity of the material, equipment, or workmanship in the leased equipment, nor any warranty that the leased equipment will satisfy the requirements of any law, rule specification or contract which provides for specified machinery or operations, or special methods. It being agreed that all such risks, as between the LESSOR and the LESSEE are to be borne by the LESSEE at its sole risk and expense. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding against LESSOR: all prior conversations, agreements, or representations related hereto and/or to the leased equipment are integrated herein, and no modification thereof shall be binding unless in writing by LESSOR.

16. **Remedies, Waivers:** No remedy of LESSOR hereunder shall be exclusive of any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy, to the full extent allowed by law. A waiver of a default shall not be a waiver of any other or a subsequent default.

State of Louisiana $ | Office of Cameron Parish
$ | Clerk of Court
Parish of Cameron $ | 38th Judicial Dist. Court

I hereby certify that the attached document is a true and correct copy the **Original** file for record **12-1-2020** bearing File No. **348455** recorded in;
Conveyance Book _____ , page _____ .
Mortgage Book ✓ ,page **N/A** .
_____ Bk. _____ ,page _____ .

in testimony whereof, witness my official seal
on **12-2-2020**
By: _Jenica Lafanda_
Deputy Clerk of Court