## STATEMENT SECURING LIEN AGAINST
## OIL AND MINERAL PROPERTY BY
## HEARTLAND COMPRESSIONS SERVICES, L.L.C.

**NOTICE OF CONFIDENTIALTY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF GALVESTON** | § |

1.      **HEARTLAND COMPRESSIONS SERVICES, L.L.C, a Louisiana limited liability company**, a division of Louisiana Machinery Company, LLC, duly authorized to conduct business in the State of Texas, hereinafter called "Claimant", acting herein, by and through **Jason Maurin, Chief Financial Officer** of **HEARTLAND COMPRESSION SERVICES, L.L.C.**, and Claimant's duly authorized agent, claims a lien, pursuant to Chapter 56 of the Texas Property Code, for providing services, material, machinery, and/or supplies for digging, drilling, torpedoing, operating, completing, maintaining or repairing oil and/or gas wells.

2.      The amount claimed by Claimant is **TWENTY-FIVE THOUSAND NINE HUNDRED FIFTY AND NO/100 DOLLARS ($25,950.00)**.  The material, machinery, supplies, and services were furnished on or about **April 1, 2020 through June 30, 2020**, for the herein described leasehold estate and land at the special instance and request of **Fieldwood Energy, LLC**, and on behalf of the owners of the leasehold estate and land against which this lien is claimed, which owners are identified in item 3 of this statement.  The aforementioned services, material, machinery and/or supplies include, but are not necessarily limited to, those items specified in the **invoices, field service orders, sales and service tickets, and related document(s)**, true and correct copies of which are attached as Exhibit "A" to that letter attached hereto as **Attachment "1"**.  The attached documents of Claimant represent systematic records kept by Claimant in the normal course of its business.  This claim is just and true, it is due, and all just and lawful offsets, payments, and credits have been allowed.

3.      The names of the owners of the leasehold estate and land against which the lien is claimed are: (i) **Fieldwood Energy LLC, 2000 West Sam Houston Parkway**



EXHIBIT
2

South, Suite 1200, Houston, TX 77042; and, c/o **Capitol Corporate Services, Inc.** **206 E. 9th Street, Suite 1300, Austin, TX 78701-4411;** (ii) **Fieldwood Energy Offshore LLC, 2000 West Sam Houston Parkway South Suite 1200, Houston, TX 77042; and, c/o Capitol Corporate Services, Inc. 206 E. 9th Street, Suite 1300, Austin, TX 78701-4411 USA;** and (iii) possibly agents, joint venturers, partners and co-owners thereof who are unknown to Claimant.

4.      The name of the Claimant is **HEARTLAND COMPRESSION SERVICES, L.L.C.,** which provided the services, material, machinery, and/or supplies for which this lien is claimed.  The Claimant is a Louisiana limited liability company, a division of Louisiana Machinery Company, LLC, duly authorized to conduct business in the State of Texas.

5.      The leasehold estate and land for which the aforementioned material, machinery, supplies and/or services were provided, and against which the lien is hereby established, is described in the letter attached hereto as **Attachment "1"**, including Exhibit "A" to said letter.

6.      Claimant has given to the owners of the leasehold estate and land against which the lien is hereby claimed, or their respective agents, representatives, or receivers, notice in writing of the lien claimed hereby.  A copy of such notice is attached hereto as **Attachment "1"**.

7.      The undersigned affiant swears that the above and foregoing statements and every part thereof are true and correct, that he personally knows that they are true and correct, and that he is authorized to make this statement on behalf of Claimant.

<div style="margin-left:40%;">

**HEARTLAND COMPRESSION SERVICES, L.L.C., a Louisiana limited liability company**

By: _____
Name: Jason Maurin
Its: Chief Financial Officer

</div>

SUBSCRIBED AND SWORN TO BEFORE ME by _Jason Maurin_ on this the _30th_ day of November 2020.

_____
Notary Public, State of Louisiana
James E. Miller
Notary Public (#89142)
Parish of St. John the Baptist, State of Louisiana
My commission is issued for life.

## Acknowledgment

STATE OF LOUISIANA                    §
    *ST. John the Baptist*    §
PARISH OF *RESERVE*                   §

    This instrument was acknowledged before me on this the _30TH_ day of November, 2020 by *Jason Mancuso* __CFO__ of HEARTLAND COMPRESSION SERVICES, L.L.C., a Louisiana limited liability company, Authorized Agent of HEARTLAND COMPRESSION SERVICES, L.L.C., a Louisiana limited liability company, on behalf of said company.

                                  _____
                         Notary Public, State of Louisiana

                                  James E. Miller
                               Notary Public (#89142)
                 Parish of St. John the Baptist, State of Louisiana
                        My commission is issued for life.

**AFTER RECORDING, RETURN TO:**
Armand E. Samuels
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
60 Poydras Street, Suite 2775
New Orleans, Louisiana 70130

# Lugenbuhl

**LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD**
A LAW CORPORATION

601 POYDRAS STREET | SUITE 2275 | NEW ORLEANS, LA 70130
TEL:  504.568.1990 |  FAX: 504.310.9195

Armand E. Samuels
asamuels@lawla.com

November 18, 2020

Certified Mail Return Receipt
**9489 0090 0027 6178 8953 90**
Fieldwood Energy, LLC
2000 West Same Houston Parkway South,
Suite 1200
Houston, TX  77042

Certified Mail Return Receipt
**9489 0090 0027 6178 8954 06**
Fieldwood Energy, LLC
Through its registered agent
Capital Corporate Services, Inc.
88550 United Plaza Building II, Ste. 305
Baton Rouge, LA 70809

Certified Mail Return Receipt
**9489 0090 0027 6178 8954 13**
Fieldwood Energy Offshore LLC
2000 West Sam Houston Parkway South
Suite 1200
Houston, TX 77042

Certified Mail Return Receipt
**9489 0090 0027 6178 8954 20**
Fieldwood Energy Offshore, LLC
Through its registered agent,
Capitol Corporate Services, Inc.
8550 United Plaza Building II, Suite 305,
Baton Rouge, LA 70809

Re:     Oilfield services, materials, and/or equipment provided by Heartland Compression Services, L.L.C. a division of Louisiana Machinery Company, LLC.

Ladies and Gentlemen:

This letter is to advise you that between approximately April 1, 2020 through June 30, 2020, *Heartland Compression Services, L.L.C.*, a division of Louisiana Machinery Company, LLC ("*Heartland*"), provided certain material at the request of *Fieldwood Energy, LLC*, a Delaware Limited Liability Company authorized to do business in Texas ("*Fieldwood*"), in connection with certain mineral activities on tracts of land in *Galveston County, Texas*, of which you appear to be the owner of all or a portion of the mineral leasehold estate (the "Leasehold Estate").[1]

The Leasehold Estate is generally described as the well (the "*Well*") commonly known as the *Galveston 210*; (ii) that lease (the "*Lease*") (including the land (the "Land") over, under, and/or through which the Lease runs), commonly known as *GA 210*, and, (iii) all properties operated with the *Well* as part of a joint operation, regardless of whether part of a formal unit. The material

---

1 The addressees of this letter either appear to have been the working interest owners of record of the Leasehold Estate at the time the lien described herein had its inception; appear to currently be working interest owners of record of the Leasehold Estate; or, hold of record an equitable or future interest in the Leasehold Estate.



EXHIBIT

1

Interest Owners, Galveston 210
November 18, 2020
Page 2

furnished by *Heartland* which materials were used in developing the Leasehold Estate, including drilling and/or maintaining the *Well*, are described in the attached **Exhibit "A"**.

      This letter is forwarded to you pursuant to §§ 56.021 and 56.023 of the Texas Property Code, and is to formally give notice that *Heartland* claims a lien (the "Lien") on: the foregoing Leasehold Estate; the Land;[2] any oil or gas pipelines, rights-of-ways, leases, buildings and appurtenances, materials, machinery and all other facilities situated upon or under the foregoing Leasehold Estate or Land; all other properties operated as part of a joint operation with any of the foregoing; and, all other property as provided by Chapter 56 of the Texas Property Code.

      The claim asserted by *Heartland* herein is as a mineral contractor and/or a mineral subcontractor, all in accordance with the provisions of Chapter 56 of the Texas Property Code and applicable case law. Without limiting the foregoing, *Heartland*, as a mineral subcontractor lien claimant, asserts a fund trapping claim. In this regard, *Heartland* has a claim against the non-operating working interest owners in the Leasehold Estate described herein to the extent of amounts owing, or hereafter coming to be owed, by the non-operating working interest owners to *Fieldwood* in connection with the development of the foregoing Leasehold Estate, up to the amount claimed herein.

      The amount of the Lien claimed by *Heartland*, and the amount of the *Heartland* trapping claim, is *$25,950.00*, which is the sum due and owing to *Heartland* by *Fieldwood* in connection with the aforementioned material provided by *Heartland*, all as indicated by the foregoing summary. *Heartland* acknowledges that *Fieldwood* is a debtor in a bankruptcy proceeding. As such, this letter is not a demand for payment. Rather, by this letter *Heartland* gives notice of its intent to assert its right to perfect an oil and gas lien. *Heartland* claims a lien against the subject lease in the amount of *$25,950.00* plus interest and attorney's fees and will file a claim for lien against the subject lease and your interest therein for the amount due. By virtue of this notice and applicable law *Heartland* asserts a lien against any sum which you as a property owner owe *Fieldwood* in connection with operations on the subject lease. In order for you as a property owner to minimize your potential liability in connection with the claim of *Heartland* you are authorized to withhold payment to *Fieldwood* in the amount claimed until the debt on which the lien is based is settled or determined to be not owed. Withholding payment pursuant to this notice is authorized by Tex. Prop. Code §56.043.

                         Very truly yours,

                         Armand Samuels, *Attorney for*
                         *Heartland Compressions Services, L.L.C.*

AES
Enclosures

cc:  Client, *via email*

---

2 The Lien is asserted against the Land to the extent provided by Chapter 56 of the Texas Property Code.

**HEARTLAND**
**Compression Services**

26894 STATE HWY 50 SOUTH
MOORELAND, OK  73852
PHONE:  FAX:

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY SOUTH STE 1200
HOUSTON, TX 77042

# RENTAL INVOICE
## INVOICE Y0019244

| | |
|---|---|
| ACCT#: | H205385 |
| INVOICE DATE: | 04/08/2020 |
| INVOICE AMOUNT: | $8,650.00 |
| PO #: | N/A |
| ORDERED BY: | GARY SMITH |
| SIGNED BY: | |
| JOBSITE INFO: | L13068 |
| | GALVESTON GA 210 |
| | 2000 W. SAM HOUSTON PKWY SOUTH |
| | HOUSTON, TX 77042 |
| CONTACT NAME: | GARY SMITH |
| CONTACT PHONE: | |
| DATE OUT: | 11/01/2016 TUE 12:00 AM |
| BILLED FROM: | 04/01/2020 WED 12:00 AM |
| BILLED THRU: | 04/30/2020 THU 11:59 PM |
| SALES REP: | COUNTER - HEARTLAND COMPRESS |
| WRITTEN BY: | KENDRA REDFEARN |

| QTY DESCRIPTION | DAY | WEEK | MONTH | TOTALS |
|---|---|---|---|---|
| **Rental Items** | | | | |
| EQUIPMENT RENTAL    FROM 04/01/20 THRU 04/30/20 | | | | |
| 1. ID NO: HC13068   SERIAL NO: 0WRX00136 | $0 | $0 | $8,650 | 8,650.00 |
| - CG137-12 | | | | |
| | | Rental Subtotal: | | 8,650.00 |

**Miscellaneous Items**

Billed for 1 month from 4/1/2020 12:00 AM thru 4/30/2020 11:59 PM

Please Remit Payment To:

**P.O. Box 54942**
**New Orleans, LA  70154**

EXHIBIT

A

**Invoice Total:**                    **8,650.00**

Wiring Instructions:  Receiving Bank: Capital One, N.A. New Orleans
ABA Routing NO.: 065000090
Account Title: Heartland Compression Services
Account Number: 542014474
SWIFT Address: HIBKUS44

Lessee agrees to lease from Heartland Compression Services the machine, vehicle (including but not limited to licensed and unlicensed trailers and motor vehicles), equipment and accessories described above (collectively, "the equipment") for the period, pursuant to the terms, and at the rates set forth above and on the reverse side. PAYMENT IS DUE UPON RECEIPT OF INVOICE, AND IS PAST DUE AFTER 30 DAYS. A service charge of 1 1/2% per month will be added to any past-due balance until paid in full. Lessee is also obligated to pay for freight, taxes and fuel and to provide and maintain commercial general liability and physical damage insurance, OPERATOR TRAINING IS LESSEE'S RESPONSIBILITY. Instruction in safe operation and maintenance is available upon request.

## Terms and Conditions of Lease

Louisiana Machinery L.L.C. ("LESSOR") hereby leases to the LESSEE named on the reverse side, and LESSEE hereby leases from lessor, the equipment or other personal property ("equipment") described on the reverse side according to the following terms and conditions:

1. **Rental and Term:** All rental rates are based on eight (8) hours daily, forty (40) hours weekly, and one hundred sixty (160) hours monthly. Overtime charges will be assessed at the rate shown on the face of this Lease. All monthly billings are calculated and invoiced on a twenty-eight (28) day cycle. Rental and term begins on date and time specified as "out" and terminates on the date and time specified as "due" unless amended in writing on the reverse of this contract. LESSEE's right to use the equipment terminates on the termination of this Lease or the due date, whichever occurs first.

2. **Taxes:** LESSEE agrees that during the term of this Lease, in addition to the rent provided herein to be paid, it will promptly pay all sales, assessments and other governmental charges levied or assessed upon the interest of the LESSOR in the leased equipment or upon the use of operation thereof. LESSEE agrees to pay said taxes whether said taxes appear as part of the face of this contract or whether said taxes are otherwise claimed by a governmental authority.

3. **Possession, Place of Use:** So long as LESSEE shall not be in default under this Lease it shall be entitled to the possession and use of the leased equipment in accordance with the terms of this Lease. The leased equipment shall only be used in the conduct of the lawful business of the LESSEE and shall remain in the location shown in the "Ship To" block on the face of this Lease, unless the LESSOR consents in writing to the removal of the equipment from the designated location. The LESSEE shall not without LESSOR's prior written consent, part with possession or control of the leased equipment or attempt to sell, pledge, mortgage or otherwise dispose of or encumber any interest under this Lease.

4. **Damages and Losses:** LESSEE agrees to pay for any and all damages or loss to rented items, except as provided under a Limited Damage and Theft Waiver (DAMG & THFT WAVR) if such Limited Damage and Theft Waiver (DAMG & THFT WAVR) is properly elected by LESSEE.

   If the LESSEE has declined the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE will be liable for the full cost of repairing and/or replacing any loss or damage to the leased equipment from any cause whatsoever. Additionally, LESSEE will remain responsible for all obligations under the terms of this Lease while the leased equipment is under repair. In the event the leased equipment is a total loss, or must be replaced, LESSEE remains responsible for all obligations under the terms of this Lease until LESSOR is reimbursed in full for the total loss of the leased equipment, or the leased equipment is replaced.

   Notwithstanding any provision contained herein, and regardless of whether or not LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees that LESSOR shall not be liable to LESSEE, nor shall this contract be voided or voidable, for LESSOR's failure to repair equipment if such equipment becomes disabled, or to furnish substitute equipment for any reason whatsoever.

### Limited Damage and Theft Waiver

As a condition precedent to the LESSOR's waiver of any claims of damage or theft under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees to keep leased equipment locked and properly secured when not in use. Any failure to do so which causes or contributes to any damage or theft voids LESSOR's obligations and agreements under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), and LESSEE shall not be entitled to a refund of the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee.

LESSEE agrees to furnish to LESSOR a complete report of any accident involving leased items, including the names and addresses of all persons involved and all witnesses.

If the LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR) and has paid the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee, and takes reasonable precautions to safeguard leased items and use them in a responsible manner, LESSOR agrees to share the cost of direct physical damage and loss to the leased items as defined and limited below:

Pursuant to the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSOR will waive claims against the LESSEE for:  A.

50% of the replacement cost of items stolen while on rental, excluding:

   1. Accessories or tools, including air hoses, blades, electric cables and cords, fuel tanks, hand tools, tool steel and tires. The costs and/or losses of any such items are not covered by this Waiver under any circumstances.

   2. Losses occurring while the equipment is in the direct care, custody or control of the LESSEE's employees or persons to whom the equipment is entrusted by the LESSEE.

Losses are not covered by this Waiver unless the leased items were locked and secured.  Whenever LESSEE is claiming benefit of the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE shall furnish a written police report to LESSOR within 10 days on losses by theft.

   B. 100% of property damage to the leased items/equipment, even those caused by third parties, excluding:

   1. Loss, damage or failure of tires and tubes under any circumstances.

   2. Losses resulting in whole or in part from the equipment being overloaded, operated above the rated capacity, rolled over, striking overhead objects, or if operating and safety instructions are not followed.

   3. Losses resulting in whole or in part from LESSEE's failure to provide sufficient and proper maintenance and servicing of leased equipment, including but not without limited to lubrication, change of filters when required, and maintenance of adequate air, oil, water, or fuel pressures or levels.

   4. If damage results from improper or unsafe operation or care, whether caused by negligence, lack of training, incompetence of the LESSEE's employee or other person to whom leased items are entrusted. Notwithstanding the above, LESSOR may in its sole discretion waive the provisions of this paragraph.

   5. If damage results from the gross negligence or intentional actions of LESSEE's employee or other person to whom the leased items are entrusted

   6. Loss or damage resulting directly or indirectly from any terms or provisions of the Lease covering the leased equipment.

It is further agreed that, irrespective of the provisions stated above, if LESSEE has insurance covering such loss or damage, then LESSEE shall exercise all necessary action to process said claim, and shall assign said claim and pay any and all proceeds received from said insurance to LESSOR.

5. **No Liability for Punitive, Special or Consequential Damages:** Notwithstanding anything to the contrary in this Lease, LESSOR in no event is or shall be liable for any punitive, special or consequential damages of any nature whatsoever and however caused.

6. **Indemnity:** Subject to the damages or to theft of property covered under the Limited Damage and Theft Waiver (DAMG & THFT WAVR) above, LESSEE shall defend, indemnify and save LESSOR harmless from any and all liability, loss, damage, expense, cause of action, suits, claims or judgments arising from injury or death to any person or loss of or damage to any property resulting from or based upon the actual or alleged use, operation, delivery or transportation of any or all of the leased equipment or its location or condition; and shall, at its own expense, defend any and all suits which may be brought against LESSOR, either alone or in conjunction with others upon any such liability or claims and shall satisfy, pay and discharge any and all judgments and fines that may be imposed or recovered against LESSOR in any such action or actions upon written notice by LESSOR to LESSEE of any such claim or demand.

7. **Security:** Louisiana Machinery L.L.C. reserves the right to require a security deposit at it's sole discretion. Security deposit shall not be construed as a prepayment of amounts due under this agreement.

8. **Insurance:** LESSEE agrees, at its own cost and expense, to maintain at all times commercial general liability, auto liability (as appropriate), property, fire, theft and comprehensive insurance with limits and coverage terms satisfactory to LESSOR. Such policies shall name LESSOR as a loss payee and additional insured, will be primary and non-contributing, and will insure a waiver of subrogation in favor of the LESSOR. Any deductibles applicable to said policies will be paid by LESSEE. Further agrees to promptly furnish LESSOR with evidence of coverage thereof in a manner satisfactory to LESSOR upon request. The limits of liability in the aforementioned policies shall not be less than $1,000,000 per occurrence for commercial general liability and $1,000,000 combined single limit for auto liability, unless LESSOR gives permission to the LESSEE to carry lower limits.

9. **Maintenance and Use:** LESSEE agrees to use proper care of the equipment in its use, maintenance and storage, to operate the same within its rated capacity and to cause the equipment to be operated only by properly trained employees of the LESSEE. LESSEE agrees to notify LESSOR immediately of accidents, disabilities, failures or like occurrences involving the equipment or those individuals operating the equipment. LESSEE shall take care of the normal maintenance of the equipment including supplying fuel, oil and water, daily checking of general condition, including oil levels, cooling system and water in batteries. At LESSOR's option LESSOR may service and maintain the equipment in proper working condition and LESSEE agrees to make it available for servicing by LESSOR at reasonable times during LESSOR's business hours: provided, however, that any service or maintenance performed by the LESSOR in no way relieves the LESSEE of any of its obligations under this Lease or otherwise under the terms of this Lease.

10. **Title of the LESSOR:** Title to the leased equipment shall at all times remain with the LESSOR, and LESSEE will at all times protect and defend, at its own cost and expense, the title of the LESSOR from and against all claims, liens and legal processes of creditors of the LESSEE and keep all leased equipment free and clear from all such claims, liens and processes. The leased equipment is and shall remain movable property. Upon the expiration or termination of this lease, the LESSEE, in LESSEE's sole expense, shall return the leased equipment unencumbered to LESSOR at its place of business where Lease originated (or to other such place as LESSOR may agree upon) and in the same condition as when received by LESSEE, reasonable wear and tear resulting from use thereof alone excepted.

11. **Acceleration:** In the event of default or breach of this Lease by LESSEE, LESSOR may, at its option, accelerate and declare all remaining unpaid rentals for the term of this Lease due and owing by the LESSEE.

12. **Bankruptcy:** In the event the LESSEE files for bankruptcy, receivership or respite or the LESSEE is adjudged bankrupt, or a receiver is appointed for the LESSEE, or in the case of the LESSEE's suspension, failure or insolvency, the LESSEE shall be considered to have defaulted under the terms of this lease, and the LESSOR shall have the right to exercise the options spelled out in Section 13 of this agreement.

13. **Options of LESSOR on LESSEE's Default:** In the event of a default or breach of this Lease by LESSEE, LESSOR expressly reserves all of its rights and remedies pursuant to the Louisiana Lease of Movables Act, La.R.S.9:3301, et seq., or any other applicable law, specifically and without limitation, reserving its rights to judicially enforce its rights specified herein, including its right to accelerate rentals, or to cancel the Lease. Cancellation of the Lease shall be made through a written notice of cancellation delivered to the LESSEE by personal or certified mail. If the property has been addressed or the Lease assigned with the consent of the LESSOR, then notice of cancellation shall also be sent to each known, authorized sub-lessee or assignee. Within 5 days after receipt of the same notice of cancellation or within 5 days after its mailing, whichever is earlier, the LESSEE, sub-lessee or assignee, as the case may be, shall surrender possessions of the leased movable to the LESSOR in the manner and at the place provided upon the termination of the Lease.

14. **Attorney's Fee:** Should any legal proceedings be instituted by LESSOR to recover any sums due hereunder and/or to recover damages resulting from the breach hereof, LESSEE is hereby bound and obligated to pay a reasonable attorney's fee which sum is fixed at 25% of any amount recovered (not to exceed, however, 25% of the total amount payable under the lease). Should any other legal proceeding be instituted by LESSOR to enforce any covenants of this lease and/or to recover possession of all or part of the equipment leased hereunder, LESSEE shall pay LESSOR's reasonable attorney's fees.

15. **No Warranties by LESSOR:** LESSOR, not being the manufacturer of the leased equipment, nor manufacturer's agent, makes no warranty or representation, either expressed or implied, as to the fitness, design or condition of or as to the quality or capacity of the material, equipment, or workmanship in the leased equipment. No warranty that the leased equipment will satisfy the requirements of any law, rule specification or contract which provides for specified machinery or operations, or special methods. It being agreed that all such risks, as between the LESSOR and the LESSEE are to be borne by the LESSEE at its sole risk and expense. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding against LESSOR; all prior conversations, agreements, or representations related hereto and/or to the leased equipment are integrated herein, and no modification thereof shall be binding unless in writing by LESSOR.

16. **Remedies, Waivers:** No remedy of LESSOR hereunder shall be exclusive of any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy, to the full extent allowed by law. A waiver of a default shall not be a waiver of any other or a subsequent default.



**HEARTLAND**
**Compression Services**

26894 STATE HWY 50 SOUTH
MOORELAND, OK. 73852
PHONE:  FAX:

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY SOUTH STE 1200
HOUSTON, TX 77042

# RENTAL INVOICE
## INVOICE Y0019245

| | |
|---|---|
| ACCT#: | H205385 |
| INVOICE DATE: | 05/05/2020 |
| INVOICE AMOUNT: | $8,650.00 |
| PO #: | N/A |
| ORDERED BY: | GARY SMITH |
| SIGNED BY: | |
| JOBSITE INFO: | L13068 |
| | GALVESTON GA 210 |
| | 2000 W. SAM HOUSTON PKWY SOUTH |
| | HOUSTON, TX 77042 |
| CONTACT NAME: | GARY SMITH |
| CONTACT PHONE: | |
| DATE OUT: | 11/01/2016 TUE 12:00 AM |
| BILLED FROM: | 05/01/2020 FRI 12:00 AM |
| BILLED THRU: | 05/31/2020 SUN 11:59 PM |
| SALES REP: | COUNTER - HEARTLAND COMPRESS |
| WRITTEN BY: | IRS CYCLE PGM |

| QTY DESCRIPTION | DAY | WEEK | MONTH | TOTALS |
|---|---|---|---|---|
| **Rental Items** | | | | |
| 1. EQUIPMENT RENTAL  FROM 05/01/20 THRU 05/31/20 ID NO: HC13068   SERIAL NO: 0WRX00136  - CG137-12 | $0 | $0 | $8,650 | 8,650.00 |
| | | | **Rental Subtotal:** | 8,650.00 |

**Miscellaneous Items**

**Billed for 1 month from 5/1/2020 12:00 AM thru 5/31/2020 11:59 PM**

Please Remit Payment To:                                          **Invoice Total:**        8,650.00
**P.O. Box 54942**
**New Orleans, LA  70154**

Wiring Instructions:  Receiving Bank: Capital One, N.A. New Orleans
                     ABA Routing NO.: 065000090
                     Account Title: Heartland Compression Services
                     Account Number: 542014474
                     SWIFT Address: HIBKUS44

Lessee agrees to lease from Heartland Compression Services the machine, vehicle (including but not limited to licensed and unlicensed trailers and motor vehicles), equipment and accessories described above (collectively, "the equipment") for the period, pursuant to the terms, and at the rates set forth above and on the reverse side. PAYMENT IS DUE UPON RECEIPT OF INVOICE, AND IS PAST DUE AFTER 30 DAYS. A service charge of 1 1/2% per month will be added to any past-due balance until paid in full. Lessee is also obligated to pay for freight, taxes and fuel and to provide and maintain commercial general liability and physical damage insurance. OPERATOR TRAINING IS LESSEE'S RESPONSIBILITY. Instruction in safe operation and maintenance is available upon request.

## Terms and Conditions of Lease

Louisiana Machinery L.L.C. ("LESSOR") hereby leases to the LESSEE named on the reverse side, and LESSEE hereby leases from Lessor, the equipment or other personal property ("equipment") described on the reverse side according to the following terms and conditions:

1. **Rental and Term:** All rental rates are based on eight (8) hours daily, forty (40) hours weekly, and one hundred sixty (160) hours monthly. Overtime charges will be assessed at the rate shown on the face of this Lease, and monthly billings are calculated and invoiced on a twenty-eight (28) day cycle. Rental and term begins on date and time specified as "out" and terminates on the date and time specified as "due" unless amended in writing on the reverse of this contract. LESSEE's right to use the equipment terminates on the termination of this Lease or the due date, whichever occurs first.

2. **Taxes:** LESSEE agrees that during the term of this Lease, in addition to the rent provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the LESSEE in the leased equipment or upon the use of operation thereof. LESSEE agrees to pay said taxes whether said taxes appear as part of the this contract or whether said taxes are otherwise claimed by a governmental authority.

3. **Possession, Place of Use:** So long as LESSEE shall not be in default under this lease it shall be entitled to the possession and use of the leased equipment in accordance with the terms of this Lease. The leased equipment shall only be used in the conduct of the lawful business of the LESSEE and shall remain in the location shown in the "Ship To" block on the face of this Lease, unless the LESSOR consents in writing to the removal of the equipment from the designated location. The LESSEE shall not without LESSOR's prior written consent, part with possession or control of the leased equipment or attempt to sell, pledge, mortgage or otherwise dispose of or encumber any interest under this Lease.

4. **Damages and Losses:** LESSEE agrees to pay for any and all damages or loss to rented items, except as provided under a Limited Damage and Theft Waiver (DAMG & THFT WAVR) if such Limited Damage and Theft Waiver (DAMG & THFT WAVR) is properly elected by LESSEE.

If the LESSEE has declined the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE will be liable for the full cost of repairing and/or replacing any loss or damage to the leased equipment from any cause whatsoever. Additionally, LESSEE will remain responsible for all obligations under the terms of this Lease while the leased equipment is under repair. In the event the leased equipment is a total loss, or must be replaced, LESSEE remains responsible for all obligations under the terms of this Lease until LESSOR is reimbursed in full for the total loss of the leased equipment, or the leased equipment is replaced.

Notwithstanding any provision contained herein, and regardless of whether or not LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees that LESSOR shall not be liable to LESSEE, nor shall this contract be voided or voidable, for LESSOR's failure to repair equipment if such equipment becomes disabled, or to furnish substitute equipment for any reason whatsoever.

**Limited Damage and Theft Waiver**

As a condition precedent to the LESSOR's waiver of any claims of damage or theft under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees to keep leased equipment locked and properly secured when not in use. Any failure to do so which causes or contributes to any damage or theft voids LESSOR's obligations and agreements under the Limited Damage and Theft Waiver (DAMG & THFT WAVR) and the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee.

LESSEE agrees to furnish LESSOR a complete report of any accident involving leased items, including the names and addresses of all persons involved and all witnesses.

If the LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR) and has paid the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee, and takes reasonable precautions to safeguard leased items and use them in a responsible manner, LESSOR agrees to share the cost of direct physical damage and loss to the leased items as defined and limited below:

Pursuant to the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSOR will waive claims against the LESSEE for: A.

50% of the replacement cost of Items stolen while on rental, excluding:

1. Accessories or tools, including air hoses, blades, electric cables and cords, fuel tanks, hand tools, tool steel and tires. The costs and/or losses of any such items are not covered by this Waiver under any circumstances.

2. Losses occurring while the equipment is in the direct care, custody or control of the LESSEE's employees or persons to whom the equipment is entrusted by the LESSEE.

Losses are not covered by this Waiver unless the leased items were locked and secured. Whenever LESSEE is claiming benefit of the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE shall furnish a written police report to LESSOR within 10 days on losses by theft.

B. 100% of property damage to the leased items/equipment, even those caused by third parties, excluding:

1. Loss, damage or failure of tires and tubes under any circumstances.

2. Losses resulting in whole or in part from the equipment being overloaded, operated above the rated capacity, rolled over, striking overhead objects, or if operating and safety instructions are not followed.

3. Losses resulting in whole or in part from LESSEE's failure to provide sufficient and proper maintenance and servicing of leased equipment, including but not without limited to lubrication, change of filters when required, and maintenance of adequate air, oil, water, or fuel pressures or levels.

4. If damage results from improper or unsafe operation or care, whether caused by negligence, lack of training, incompetence of the LESSEE's employee or other person to whom leased items are entrusted. Notwithstanding the above, LESSOR may in its sole discretion waive the provisions of this paragraph.

5. If damage results from the gross negligence or intentional actions of LESSEE's employee or other person to whom the leased items are entrusted

6. Loss or damage resulting directly or indirectly from any terms or provisions of the Lease covering the leased equipment.

It is further agreed that, irrespective of the provisions stated above, if LESSEE has insurance covering such loss or damage, than LESSEE shall exercise all necessary action to process said claim, and shall assign said claim and pay any and all proceeds received from said insurance to LESSOR.

5. **No Liability for Punitive, Special or Consequential Damage:** Notwithstanding anything to the contrary in this Lease, LESSOR in no event is or shall be liable for any punitive, special or consequential damages of any nature whatsoever and however caused.

6. **Indemnity:** Subject to the damages to and/or thefts of property covered under the Limited Damage and Theft Waiver (DAMG & THFT WAVR) above, LESSEE shall defend, indemnify and save LESSOR harmless from any and all liability, loss, damage, expense, cause of action, suits, claims or judgments arising from injury or death to any person or loss of or damage to any property resulting from or based upon the actual or alleged use, operation, delivery or transportation of any or all of the leased equipment or its location or condition; and shall, at its own expense, defend any and all suits which may be brought against LESSOR, either alone or in conjunction with others under any such liability or claims and shall satisfy, pay and discharge any and all judgments and fines that may be imposed or recovered against LESSOR in any such action or actions upon written notice by LESSOR to LESSEE of any such claim or demand.

7. **Security:** Louisiana Machinery L.L.C. reserves the right to require a security deposit at it's sole discretion. Security deposit shall not be construed as a prepayment of amounts due under this agreement.

8. **Insurance:** LESSEE agrees, at its own cost and expense, to maintain at all times commercial general liability, auto liability (as appropriate), property, fire, theft and comprehensive insurance with limits and coverage terms satisfactory to LESSOR. Such policies shall name LESSOR as a loss payee and additional insured, will be primary and non-contributing, and will grant a waiver of subrogation in favor of the LESSOR. Any deductibles applicable to said policies will be paid by LESSEE. LESSEE further agrees to promptly furnish LESSOR with evidence of coverage thereof in a manner satisfactory to LESSOR upon request. The limits of liability in the aforementioned policies shall not be less than $1,000,000 per occurrence for commercial general liability and $1,000,000 combined single limit for auto liability, unless LESSOR gives permission to the LESSEE to carry lower limits.

9. **Maintenance and Use:** LESSEE agrees to use proper care of the equipment in its use, maintenance and storage, to operate the same within its rated capacity and to cause the equipment to be operated only by properly trained employees of the LESSEE. LESSEE agrees to notify LESSOR immediately of accidents, disabilities, failures or like occurrences involving the equipment or those individuals operating the equipment. LESSEE shall take care of the normal maintenance of the equipment including supplying fuel, oil and water, daily checking of general condition, including oil levels, cooling system and water in batteries. At LESSOR's option LESSOR may service and maintain the equipment in proper working condition and LESSEE agrees to make it available for servicing by LESSOR at reasonable times during LESSOR's business hours; provided, however, that any service or maintenance performed by the LESSOR in no way relieves the LESSEE of any of its obligations under this Section or otherwise under the terms of this Lease.

10. **Title of the LESSOR:** Title to the leased equipment shall at all times remain with the LESSOR, and LESSEE will at all times protect and defend, at its own cost and expense, the title of the LESSOR from and against all claims, liens and legal processes of creditors of the LESSEE and keep all leased equipment free and clear from all such claims, liens and processes. The leased equipment is and shall remain movable property. Upon the expiration or termination of this lease, the LESSEE, at LESSEE's sole expense, shall return the leased equipment unencumbered to LESSOR at its place of business where Lease originated (or to other such place as LESSOR may agree upon) and in the same condition as when received by LESSEE, reasonable wear and tear resulting from use thereof alone excepted.

11. **Acceleration:** In the event of default or breach of this Lease by LESSEE, LESSOR may, at its option, accelerate and declare all remaining unpaid rentals for the term of this Lease due and owing by the LESSEE.

12. **Bankruptcy:** In the event the LESSEE files for bankruptcy, receivership or respite or the LESSEE is adjudged bankrupt, or a receiver is appointed for the LESSEE, or in the case of the LESSEE's suspension, failure or insolvency, the LESSEE shall be considered to have defaulted under the terms of this lease, and the LESSOR shall have the right to exercise the options spelled out in Section 13 of this agreement.

13. **Options of LESSOR on LESSEE's Default:** In the event of a default or breach of this Lease by LESSEE, LESSOR expressly reserves all of its rights and remedies pursuant to the Louisiana Lease of Movables Act, La.R.S.9:3301, et seq., or any other applicable law, specifically and without limitation, reserving its rights to judicially enforce its rights specified herein, including its right to accelerate rentals, or to cancel the Lease. Cancellation of the Lease shall be made through a written notice of cancellation delivered to the LESSEE or mailed to LESSEE by registered or certified mail. If the property has been subleased or the Lease assigned with the consent of the LESSOR, then notice of cancellation shall also be sent to each known, authorized sub-lessee or assignee. Within 5 days after receipt of the notice of cancellation or within 5 days after its mailing, whichever is earlier, the LESSEE, sub-lessee or assignee, as the case may be, shall surrender possessions of the leased movable to the LESSOR in the manner and at the place provided upon the termination of the lease.

14. **Attorney's Fee:** Should any legal proceedings be instituted by LESSOR to recover any sums due hereunder or by LESSOR to recover damages resulting from the breach hereof, LESSEE is hereby bound and obligated to pay a reasonable attorney's fee which sum is fixed at 25% of any amount recovered (not to exceed, however, 25% of the total amount payable under the lease). Should any other legal proceeding be instituted by LESSOR to enforce any covenants of this lease and/or to recover possession of all or part of the equipment leased hereunder, LESSEE agrees to pay LESSOR's reasonable attorney's fees.

15. **No Warranties by LESSOR:** LESSOR, not being the manufacturer of the leased equipment, nor manufacturer's agent, makes no warranty or representation, either expressed or implied, as to the fitness, design or condition of or as to the quality or capacity of the material, equipment, or workmanship in the leased equipment, nor any warranty that the leased equipment will satisfy the requirements of any law, rule specification or contract which provides for specified machinery or operations, or special methods. It being agreed that all such risks, as between the LESSOR and the LESSEE are to be borne by the LESSEE. LESSEE in its sole risk and expense. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding against LESSOR; all prior conversations, agreements, or representations related hereto and/or to the leased equipment are integrated herein, and no modification thereof shall be binding unless in writing by LESSOR.

16. **Remedies, Waivers:** No remedy of LESSOR hereunder shall be exclusive of any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy, to the full extent allowed by law. A waiver of a default shall not be a waiver of any other or a subsequent default.



**HEARTLAND**
Compression Services

26894 STATE HWY 50 SOUTH
MOORELAND, OK 73852
PHONE:  FAX:

FIELDWOOD ENERGY LLC
2000 W SAM HOUSTON PKWY SOUTH STE 1200
HOUSTON, TX 77042

# RENTAL INVOICE
**INVOICE Y0019246**

| | |
|---|---|
| ACCT#: | H205385 |
| INVOICE DATE: | 06/08/2020 |
| INVOICE AMOUNT: | $8,650.00 |
| PO #: | N/A |
| ORDERED BY: | GARY SMITH |
| SIGNED BY: | |
| JOBSITE INFO: | L13068 |
| | GALVESTON GA 210 |
| | 2000 W. SAM HOUSTON PKWY SOUTH |
| | HOUSTON, TX 77042 |
| CONTACT NAME: | GARY SMITH |
| CONTACT PHONE: | |
| DATE OUT: | 11/01/2016 TUE 12:00 AM |
| BILLED FROM: | 06/01/2020 MON 12:00 AM |
| BILLED THRU: | 06/30/2020 TUE 11:59 PM |
| SALES REP: | COUNTER - HEARTLAND COMPRESS |
| WRITTEN BY: | IRS CYCLE PGM |

| QTY DESCRIPTION | DAY | WEEK | MONTH | TOTALS |
|---|---|---|---|---|
| **Rental Items** | | | | |
| EQUIPMENT RENTAL    FROM 06/01/20 THRU 06/30/20 | | | | |
| 1. ID NO: HC13068   SERIAL NO: 0WRX00136 | $0 | $0 | $8,650 | 8,650.00 |
| - CG137-12 | | | | |
| | | Rental Subtotal: | | 8,650.00 |

**Miscellaneous Items**

**Billed for 1 month from 6/1/2020 12:00 AM thru 6/30/2020 11:59 PM**

Please Remit Payment To:
**P.O. Box 54942**
**New Orleans, LA  70154**

Invoice Total:      **8,650.00**

Wiring Instructions:  Receiving Bank: Capital One, N.A. New Orleans
ABA Routing NO.: 065000090
Account Title: Heartland Compression Services
Account Number: 542014474
SWIFT Address: HIBKUS44

Lessee agrees to lease from Heartland Compression Services the machine, vehicle (including but not limited to licensed and unlicensed trailers and motor vehicles), equipment and accessories described above (collectively, "the equipment") for the period, pursuant to the terms, and at the rates set forth above and on the reverse side. PAYMENT IS DUE UPON RECEIPT OF INVOICE, AND IS PAST DUE AFTER 30 DAYS. A service charge of 1 1/2% per month will be added to any past-due balance until paid in full. Lessee is also obligated to pay for freight, taxes and fuel and to provide and maintain commercial general liability and physical damage insurance. OPERATOR TRAINING IS LESSEE'S RESPONSIBILITY. Instruction in safe operation and maintenance is available upon request.

Printed on Monday, June 8, 2020  3:40:14 PM by FROM RELEASE      Y0019246      Page 1 of 2

## Terms and Conditions of Lease

Louisiana Machinery L.L.C. ("LESSOR") hereby leases to the LESSEE named on the reverse side, and LESSEE hereby leases from lessor, the equipment or other personal property ("equipment") described on the reverse side according to the following terms and conditions:

1. **Rental and Term:** All rental rates are based on eight (8) hours daily, forty (40) hours weekly, and one hundred sixty (160) hours monthly. Overtime charges will be assessed at the rate shown on the face of this Lease. All monthly billings are calculated and invoiced on a twenty-eight (28) day cycle. Rental and term begins on date and time specified as "out" and terminates on the date and time specified as "due" unless amended in writing on the reverse of this contract. LESSEE's right to use the equipment terminates on the termination of this Lease or the due date, whichever occurs first.

2. **Taxes:** LESSEE agrees that during the term of this Lease, in addition to the rent provided herein to be paid, it will promptly pay all taxes, assessments and other governmental charges levied or assessed upon the interest of the LESSEE in the leased equipment or upon the use of operation thereof. LESSEE agrees to pay said taxes whether said taxes appear as part of the face of this contract or whether said taxes are otherwise claimed by a governmental authority.

3. **Possession, Place of Use:** So long as LESSEE shall not be in default under this lease it shall be entitled to the possession and use of the leased equipment in accordance with the terms of this Lease. The leased equipment shall only be used in the conduct of the lawful business of the LESSEE and shall remain in the location shown in the "Ship To" block on the face of this Lease, unless the LESSEE consents in writing to the removal of the equipment from the designated location. The LESSEE shall not without LESSOR's prior written consent, part with possession or control of the leased equipment or attempt to sell, pledge, mortgage or otherwise dispose of or encumber any interest under this Lease.

4. **Damages and Losses:** LESSEE agrees to pay for any and all damages or loss to rented items, except as provided under a Limited Damage and Theft Waiver (DAMG & THFT WAVR) if such Limited Damage and Theft Waiver (DAMG & THFT WAVR) is properly elected by LESSEE.

   If the LESSEE has declined the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE will be liable for the full cost of repairing and/or replacing any loss or damage to the leased equipment from any cause whatsoever. Additionally, LESSEE will remain responsible for all obligations under the terms of this Lease while the leased equipment is under repair. In the event the leased equipment is a total loss, or must be replaced, LESSEE remains responsible for all obligations under the terms of this Lease until LESSOR is reimbursed in full for the total loss of the leased equipment, or the leased equipment is replaced.

   Notwithstanding any provision contained herein, and regardless of whether or not LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees that LESSOR shall not be liable to LESSEE, nor shall this contract be voided or voidable, for LESSOR's failure to repair equipment if such equipment becomes disabled, or to furnish substitute equipment for any reason whatsoever.

### Limited Damage and Theft Waiver

As a condition precedent to the LESSOR's waiver of any claims of damage or theft under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE agrees to keep leased equipment locked and properly secured when not in use. Any failure to do so which causes or contributes to any damage or theft voids LESSOR's obligations and agreements under the Limited Damage and Theft Waiver (DAMG & THFT WAVR), and LESSEE shall not be entitled to a refund of the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee.

LESSEE agrees to furnish to LESSOR a complete report of any accident involving leased items, including the names and addresses of all persons involved and all witnesses.

If the LESSEE has accepted the Limited Damage and Theft Waiver (DAMG & THFT WAVR) and has paid the Limited Damage and Theft Waiver (DAMG & THFT WAVR) fee, and takes reasonable precautions to safeguard leased items and use them in a responsible manner, LESSOR agrees to share the cost of direct physical damage and loss to the leased items as defined and limited below:

Pursuant to the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSOR will waive claims against the LESSEE for A.

50% of the replacement cost of items stolen while on rental, excluding:

   1. Accessories or tools, including air hoses, blades, electric cables and cords, fuel tanks, hand tools, tool steel and tires. The costs and/or losses of any such items are not covered by this Waiver under any circumstances.

   2. Losses occurring while the equipment is in the direct care, custody or control of the LESSEE's employees or persons to whom the equipment is entrusted by the LESSEE.

Losses are not covered by this Waiver unless the leased items were locked and secured. Whenever LESSEE is claiming benefit of the Limited Damage and Theft Waiver (DAMG & THFT WAVR), LESSEE shall furnish a written police report to LESSOR within 10 days on losses by theft.

B. 100% of property damage to the leased items/equipment, even those caused by third parties, excluding:

   1. Loss, damage or failure of tires and tubes under any circumstances.

   2. Losses resulting in whole or in part from the equipment being overloaded, operated above the rated capacity, rolled over, striking overhead objects, or if operating and safety instructions are not followed.

   3. Losses resulting in whole or in part from LESSEE's failure to provide sufficient and proper maintenance and servicing of leased equipment, including but not without limited to lubrication, change of filters when required, and maintenance of adequate air, oil, water, or fuel pressures or levels.

   4. If damage results from improper or unsafe operation or care, whether caused by negligence, lack of training, incompetence of the LESSEE's employee or other person to whom leased items are entrusted. Notwithstanding the above, LESSOR may in its sole discretion waive the provisions of this paragraph.

   5. If damage results from the gross negligence or intentional actions of LESSEE's employee or other person to whom the leased items are entrusted.

   6. Loss or damage resulting directly or indirectly from any terms or provisions of the Lease covering the leased equipment.

It is further agreed that, irrespective of the provisions stated above, if LESSEE has insurance covering such loss or damage, then LESSEE shall exercise all necessary action to process said claim, and shall assign said claim and pay any and all proceeds received from said insurance to LESSOR.

5. **No Liability for Punitive, Special or Consequential Damages:** Notwithstanding anything to the contrary in this Lease, LESSOR in no event is or shall be liable for any punitive, special or consequential damages of any nature whatsoever and however caused.

6. **Indemnity:** Subject to the damages to and/or thefts of property covered under the Limited Damage and Theft Waiver (DAMG & THFT WAVR) above, LESSEE shall defend, indemnify and save LESSOR harmless from any and all liability, loss, damage, expense, cause of action, suits, claims or judgments arising from injury or death to any person or loss of or damage to any property resulting from or based upon the actual or alleged use, operation, delivery or transportation of any or all of the leased equipment or its location or condition, and shall, at its own expense, defend any and all suits which may be brought against LESSOR, either alone or in conjunction with others upon any such liability or claims and shall satisfy, pay and discharge any and all judgments and fines that may be imposed or recovered against LESSOR in any such action or actions upon written notice by LESSOR to LESSEE of any such claim or demand.

7. **Security:** Louisiana Machinery L.L.C. reserves the right to require a security deposit at it's sole discretion. Security deposit shall not be construed as a prepayment of amounts due under this agreement.

8. **Insurance:** LESSEE agrees, at its own cost and expense, to maintain at all times commercial general liability, auto liability (as appropriate), property, fire, theft and comprehensive insurance with limits and coverage terms satisfactory to LESSOR. Such policies shall name LESSOR as a loss payee and additional insured, will be primary and non-contributing, and will grant a waiver of subrogation in favor of the LESSOR. Any deductibles applicable to said policies will be paid by LESSEE. LESSEE further agrees to promptly furnish LESSOR with evidence of coverage thereof in a manner satisfactory to LESSOR upon request. The limits of liability in the aforementioned policies shall not be less than $1,000,000 per occurrence for commercial general liability and $1,000,000 combined single limit for auto liability, unless LESSOR gives permission to the LESSEE to carry lower limits.

9. **Maintenance and Use:** LESSEE agrees to use proper care of the equipment in its use, maintenance and storage, to operate the same within its rated capacity and to cause the equipment to be operated only by properly trained employees of the LESSEE. LESSEE agrees to notify LESSOR immediately of accidents, disabilities, failures or like occurrences involving the equipment or those individuals operating the equipment. LESSEE shall take care of the normal maintenance of the equipment including supplying fuel, oil and water, daily checking of general condition, including oil levels, cooling system and water in batteries. At LESSOR's option LESSOR may service and maintain the equipment in proper working condition and LESSEE agrees to make it available for servicing by LESSOR at reasonable times during LESSOR's business hours: provided, however, that any service or maintenance performed by the LESSOR in no way relieves the LESSEE of any of its obligations under this Lease or otherwise under the terms of this Lease.

10. **Title of the LESSEE:** Title to the leased equipment shall at all times remain with the LESSOR, and LESSEE will at all times protect and defend, at its own cost and expense, the title of the LESSOR from and against all claims, liens and legal processes of creditors of the LESSEE, and keep all leased equipment free and clear from all such claims, liens and processes. The leased equipment is and shall remain movable property. Upon the expiration or termination of this lease, the LESSEE, at LESSEE's sole expense, shall return the leased equipment unencumbered to LESSOR at its place of business where Lease originated (or to other such place as LESSOR may agree upon) and in the same condition as when received by LESSEE, reasonable wear and tear resulting from use thereof alone excepted.

11. **Acceleration:** In the event of default or breach of this Lease by LESSEE, LESSOR may, at its option, accelerate and declare all remaining unpaid rentals for the term of this Lease due and owing by the LESSEE.

12. **Bankruptcy:** In the event the LESSEE files for bankruptcy, receivership or respite or the LESSEE is adjudged bankrupt, or a receiver is appointed for the LESSEE, or in the case of the LESSEE's suspension, failure or insolvency, the LESSEE shall be considered to have defaulted under the terms of this lease, and the LESSOR shall have the right to exercise the options spelled out in Section 13 of this agreement.

13. **Options of LESSOR on LESSEE's Default:** In the event of a default or breach of this Lease by LESSEE, LESSOR expressly reserves all of its rights and remedies pursuant to the Louisiana Lease of Movables Act, La.R.S.9:3301, et seq., or any other applicable law, specifically and without limitation, reserving its rights to judicially enforce its rights specified herein, including its right to accelerate rentals, or to cancel the Lease. Cancellation of the Lease shall be made through a written notice of cancellation delivered to the LESSEE or mailed to LESSEE by registered or certified mail. If the property has been subleased or the Lease assigned with the consent of the LESSOR, then notice of cancellation shall also be sent to each known, authorized sub-lessee or assignee. Within 5 days after receipt of the notice of cancellation or within 5 days after its mailing, whichever is earlier, the LESSEE, sub-lessee or assignee, as the case may be, shall surrender possession of the leased movable to the LESSOR in the manner and at the place provided upon the termination of the Lease.

14. **Attorney's Fees:** Should any legal proceedings be instituted by LESSOR to recover any sums due hereunder and/or to recover damages resulting from the breach hereof, LESSEE is hereby bound and obligated to pay a reasonable attorney's fee which sum is fixed at 25% of any amount recovered but not to exceed, however, 25% of the total amount payable under the lease). Should any other legal proceeding be instituted by LESSOR to enforce any covenants of this Lease and/or to recover possession of all or part of the equipment leased hereunder, LESSEE agrees to pay LESSOR's reasonable attorney's fees.

15. **No Warranties by LESSOR:** LESSOR not being the manufacturer of the leased equipment, nor manufacturer's agent, makes no warranty or representation, either expressed or implied, as to the fitness, design or condition of or as to the quality or capacity of the material, equipment, or workmanship in the leased equipment, nor any warranty that the leased equipment will satisfy the requirements of any law, rule specification or contract which provides for specified machinery or operations, or special methods. It being agreed that all such risks, as between the LESSOR and the LESSEE are to be borne by the LESSEE at its sole risk and expense. No oral agreements, guaranty, promise, condition, representation or warranty shall be binding unless in writing by LESSOR; all prior conversations, agreements, or representations heretofore and/or to the leased equipment are integrated herein, and no modification thereof shall be binding unless in writing by LESSOR.

16. **Remedies, Waivers:** No remedy of LESSOR hereunder shall be exclusive of any other remedy herein or by law provided, but each shall be cumulative and in addition to every other remedy, to the full extent allowed by law. A waiver of a default shall not be a waiver of any other or a subsequent default.

9489 0090 0027 6178 8954 06

UNITED STATES
POSTAL SERVICE.

CERTIFIED MAIL ®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

Label 890-PB, Oct. 2015
Pitney Bowes

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fieldwood Energy Offshore, LLC
Through its registered agent,
Capital Corporate Services, Inc.
8550 United Plaza Building II, Ste.305,
Baton Rouge, LA 70809

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number    9489 0090 0027 6178 8954 06

PS Form 3811, July 2013    Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

LUGENBUHL WHEATON PECK RANKIN & HUBBARD
A LAW CORPORATION
601 Poydras Street, Suite 2775
New Orleans, LA 70130

A. SAMUEL CA 210 Tappiry

9489 0090 0027 6178 8953 90

**UNITED STATES POSTAL SERVICE**

**CERTIFIED MAIL** ℗

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

Label 890-PB, Oct. 2015
Pitney Bowes

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fieldwood Energy Offshore, LLC
2000 W Sam Houston Parkway South
Suite 1200
Houston, TX  77042

2.  7489 0090 0027 6178 8953 90

PS Form 3811, July 2013

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☐ Certified Mail®      ☐ Priority Mail Express™
   ☐ Registered           ☐ Return Receipt for Merchandise
   ☐ Insured Mail         ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)              ☐ Yes

Domestic Return Receipt



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Sender: Please print your name, address, and ZIP+4® in this box●

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
A LAW CORPORATION
601 Poydras Street, Suite 2775
New Orleans, LA 70130

Samuels GA 210 Topping

9489 0090 0027 6178 8954 13

UNITED STATES
POSTAL SERVICE

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

Label 890-PB, Oct. 2015
Pitney Bowes

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fieldwood Energy Offshore, LLC
2000 W Sam Houston Parkway South
Suite 1200
Houston, TX 77042

2. 9489 0090 0027 6178 8954 13

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail®        ☐ Priority Mail Express™
☐ Registered            ☐ Return Receipt for Merchandise
☐ Insured Mail          ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

PS Form 3811, July 2013                     Domestic Return Receipt



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

LUGENBUHL WHEATON PECK RANKIN & HUBBARD
A LAW CORPORATION
601 Poydras Street, Suite 2775
New Orleans, LA 70130

A. SAMUELS - CA 2.0 Trapping

9489 0090 0027 6178 8954 20

**UNITED STATES POSTAL SERVICE**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL**®

Label 890-PB, Oct. 2015
Pitney Bowes

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fieldwood Energy Offshore, LLC
Through its registered agent,
Capital Corporate Services, Inc.
8550 United Plaza Building II, Ste.305,
Baton Rouge, LA 70809

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
   ☐ Certified Mail®   ☐ Priority Mail Express™
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)      ☐ Yes

2.
9489 0090 0027 6178 8954 20

PS Form 3811, July 2013                Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
A LAW CORPORATION
601 Poydras Street, Suite 2775
New Orleans, LA 70130

A. Samuels - GA 210 Topping

## FILED AND RECORDED

Instrument Number:   *2020081842*

Recording Fee: 114.00

Number Of Pages:24

Filing and Recording Date: 12/17/2020 2:56PM

I hereby certify that this instrument was FILED on the date and time stamped hereon and RECORDED in the OFFICIAL PUBLIC RECORDS of Galveston County, Texas.

**Dwight D. Sullivan**, County Clerk
Galveston County, Texas

**DO NOT DESTROY** - *Warning, this document is part of the Official Public Record.*