UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |
| | § | |

### LLOG EXPLORATION OFFSHORE, L.L.C.'S
### MOTION FOR RELIEF FROM AUTOMATIC STAY

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MATTER ON FRIDAY, JANUARY 15, 2021 AT 9:00 AM IN COURTROOM 404, 515 RUSK, HOUSTON, TX 77002.**

**NOW COMES** LLOG Exploration Offshore, L.L.C. ("LLOG"), which respectfully files this Motion for Relief from Automatic Stay (the "Motion") pursuant to the provisions of 11 U.S.C. §§ 361 and 362, and Rules 4001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

277162v1

Accordingly, LLOG states as follows:

## I.   JURISDICTION

On August 3, 2020 and August 4, 2020 (referred to herein as the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   FACTUAL BACKGROUND

LLOG and Fieldwood Energy Offshore LLC ("Fieldwood"), as successor to Davis Offshore L.P. ("Davis"), are the current parties to that certain Offshore Operating Agreement dated December 12, 2002 (as ratified and amended, the "OOA") covering Green Canyon Block 157, Lease No. OCS-G 24154 ("GC 157"), and Green Canyon Block 201, Lease No. OCS-G 12210 (but limited to the northeast quarter of such block from the surface down to 17,000 feet true vertical depth subsea) ("GC 201," and collectively with GC 157, the "Contract Area").[2] Under the OOA, Fieldwood holds a 15% working interest in the Contract Area while LLOG holds the remaining 85% working interest.[3] LLOG is the recognized operator under the OOA and is the designated operator with the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement.

As part of a Farmout Agreement covering GC 201, Shell Offshore Inc. reserved an

---

[2] A copy of the OOA is attached hereto as **Exhibit A**.
[3] *See* Ratification and First Amendment to Operating Agreement attached as **Exhibit B** at p. 1. Note that an affiliate of LLOG, namely LLOG Energy, LLC, actually holds a 1% working interest in GB 157, with LLOG owning 84%.

overriding royalty interest. Such overriding royalty interest was created by an Assignment and Conveyance of Overriding Royalty Interest dated effective October 1, 2008, by and between LLOG Exploration Offshore, Inc. and Davis, as Assignors, and Shell Offshore Inc. and Marathon Oil Company, as Assignees, covering GC 201 (as depth and aliquot restricted) (the "GC 201 ORRI"). Effective January 1, 2015, Shell Offshore Inc. sold and conveyed its portion of the GC 201 ORRI to Fieldwood in conjunction with other transactions. However, the OOA, dated and effective as of December 12, 2002, expressly provides that, "if subsequent to the execution of this Agreement, any Party should create an Overriding Royalty Interest, such subsequently created Overriding Royalty shall be made specifically subject to all the terms and provisions of this Agreement and shall be subordinate to the rights of the other Parties to this Agreement."[4]

Pursuant to the express terms of the OOA, LLOG, as Operator, is afforded certain security rights, not only in connection with both leases comprising the Contract Area, but also in the oil and gas produced therefrom. These security rights have been perfected as a matter of public record.[5]

Specifically, the OOA states that "[e]ach Non-Operating Party [i.e., Fieldwood] hereby grants to the Operator [i.e., LLOG] a mortgage, hypothec, and pledge of and over all of its rights, titles, and interest in and to (a) the Lease[s], (b) the oil and gas in, on, under, and that may be

---

[4] *See* OOA Section 19.1.1, **Exhibit A**.

[5] These mortgage, lien, and security rights were perfected by the parties with an interest in the Contract Area by filing a Memorandum of Operating Agreement in the mortgage records of Terrebonne Parish on July 27, 2009 at File Number 1328132, Book 2201, Page 579; with a correction thereto being filed in the mortgage records of Terrebonne Parish on September 16, 2009 at File Number 1331665, Book 2215, Page 126; with a notice of re-inscription being filed in the mortgage records of Terrebonne Parish on April 8, 2014 at File Number 1450879, Book 2645, Page 470; and with an amendment and ratification thereto being filed in the mortgage records of Terrebonne Parish on February 3, 2015 at File Number 1473360, Book 2716, Page 268 (adding Fieldwood as a debtor). More importantly, companion filings were made in the Louisiana Uniform Commercial Code records of Terrebonne Parish on August 16, 2013 at UCC File Number 55-1434772, with an amendments and a continuation thereto filed on February 3, 2015 at UCC File Number 55-1473361, February 3, 2015 at UCC File Number 55-1473362, February 3, 2017 at UCC File Number 55-1473363 (adding Fieldwood as a debtor), February 3, 2015 at UCC File Number 5-1473364, and on February 20, 2018 at UCC File Number 55-1552263 (continuation).

produced from the Lease[s] or included in the Contact Area, and (c) all other immovable property susceptible of mortgage situated with the Contact Area."[6] As set forth in the OOA, "this mortgage is given to secure the complete and timely performance of and payment by [Fieldwood] of all obligations and indebtedness of every kind and nature, whether now owed by [Fieldwood] or hereafter arising pursuant to this Agreement," and "shall secure the payment of all Costs and other charges properly charged to such Party."[7]

In addition, and more importantly, Fieldwood, as non-operator under the OOA, granted LLOG, as operator, "a continuing security interest in and to all of its rights, titles, interests, claims, general intangibles, proceeds, and the products thereof, whether now existing or hereinafter acquired," including "in and to (a) all oil and gas produced from the lands or offshore blocks covered by the Lease[s] or the Contract Area or attributable to the lease or the Contract Area when produced, . . . and (c) **all cash and other proceeds from the sale of such oil and gas once produced** . . . ."[8] Consequently, the proceeds of the GC 201 ORRI (the "GC 201 ORRI Proceeds") are cash collateral in which LLOG has a valid and perfected security interest.[9]

The Parties expressly agreed in the OOA that, "[i]f [Fieldwood] does not pay such Costs and other expenses, or perform its obligations under this Agreement when due, the Operator shall have the additional right to notify the purchaser or purchasers of the defaulting Non-Operating Party's share of Hydrocarbon production and collect such costs and other expenses out of the proceeds from the sale of the defaulting Non-Operating Party's share of Hydrocarbon production until the amount owed has been paid."[10] The OOA provides that "[a]ny purchaser of such

---

[6] Section A(i) to Exhibit I to the OOA, **Exhibit A**.
[7] Section A(i) to Exhibit I to the OOA, **Exhibit A**.
[8] Section A(ii) of Exhibit I to the OOA (emphasis added), **Exhibit A**.
[9] *See* **Exhibit C**, demonstrating the Louisiana Secretary of State filing schedule for the security interest in question.
[10] Section A(i) of Exhibit I to the OOA, **Exhibit A**.

4

production shall be entitled to rely on the Operator's statement concerning the amount of Costs and other expense owed by the defaulting Non-Operating Party and payment made to the Operator by any purchaser shall be binding and conclusive as between such purchaser and such defaulting Non-Operating Party."[11]

On or about November 13, 2019, LLOG as Operator proposed a plugging and abandonment operation on several wells on the Contract Area. The work was completed on or about February 28, 2020. Under the OOA, Fieldwood is required to reimburse LLOG as Operator for the costs of joint operations "in proportion to its Participating Interest."[12] Specifically in the case of an abandonment operation, the OOA provides that Fieldwood is required to bear its proportionate share of "the joint Cost, risk, and expense of" the abandonment well work.[13] Accordingly, Fieldwood, as the non-operator and a 15% working interest owner in the Contract Area, is responsible for its proportionate share of joint interest billings ("JIBs") for the plugging and abandonment operation, in an amount totaling $902,490.92 (the "Outstanding P&A JIBs").

Prior to the Petition Date, and on a monthly basis from February 2020 through August 2020, LLOG invoiced Fieldwood for the Outstanding P&A JIBs.[14] To date, Fieldwood's proportionate share remains unpaid, despite LLOG's repeated pre-petition requests for reimbursement pursuant to the express terms of the OOA. In fact, LLOG formally placed Fieldwood in default under the OOA by letter dated May 18, 2020, and Fieldwood took no meaningful steps to rectify such default.[15] However, Fieldwood continues to receive the cash receipts from the sale of production attributable to the GC 201 ORRI.

---

[11] Section A(i) of Exhibit I to the OOA, **Exhibit A**.
[12] *See* Article 6.1 of the OOA, **Exhibit A**.
[13] *See* Article 18.1 of the OOA, **Exhibit A**.
[14] See statement of the Outstanding P&A JIBs, attached hereto as **Exhibit D**. All expenses identified on **Exhibit D** accrued prior to the Petition Date.
[15] See May 18, 2020 notice of default attached hereto as **Exhibit E**.

277162v1

### III. RELIEF REQUESTED

LLOG seeks an order from the Court lifting the automatic stay so that LLOG may exercise its rights under the OOA to provide notice of Fieldwood's default to the first purchaser of production at GC 201 and to work with such first purchaser of production to escrow the GC 201 ORRI Proceeds, so that proceeds to pay LLOG for the Outstanding P&A JIBs are available at confirmation of a plan of reorganization or some other distribution event.[16]

### IV. ARGUMENT AND AUTHORITY

**A. LLOG is entitled to stay relief pursuant to 11 U.S.C. § 362(d).**

Section 362(d)(1) of the United States Bankruptcy Code (the "Bankruptcy Code") provides that the Court may grant relief from stay "for cause."[17] Here, LLOG can show cause to lift the automatic stay so that it may exercise its rights under the OOA to provide notice of Fieldwood's default to the first purchaser of production at GC 201, and to undertake any additional efforts necessary to collect the GC 201 ORRI Proceeds, as set forth more fully below.

The term "cause" is not specifically defined in the Bankruptcy Code, but rather is "an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity to inherently fact-sensitive situations."[18] "Even among bankruptcy courts in the Fifth Circuit, no single approach prevails."[19] Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the

---

[16] In addition, as an alternative form of relief, LLOG is by separate filing seeking adequate protection in the form of an order from this Court ordering Fieldwood to authorize the first purchaser of GC 201 ORRI production to withhold/escrow such proceeds during the pendency of these jointly administered bankruptcy cases to protect LLOG as to diminution in value associated with the depleting overriding royalty interest.
[17] 11 U.S.C.A. § 362.
[18] *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988); *see also In re Ong*, No. 10-36102-H3-7, 2010 WL 4722041, at *1 (Bankr. S.D. Tex. Nov. 15, 2010) ("Whether cause exists must be determined on a case by case basis based on an examination of the totality of circumstances."); *In re Mullin*, 433 B.R. 1, 15 (Bankr. S.D. Tex. 2010) ("Cause under § 362(d)(1) is defined on a case-by-case basis.").
[19] *In re White,* No. 18-50385-KMS, 2018 WL 4677440, at *6 (Bankr. S.D. Miss. Sept. 27, 2018) (internal citations omitted).

debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay.[20] No one factor is determinative and "the court [has] broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case."[21]

Here, LLOG has rights to collateral securing Fieldwood's non-payment of the Outstanding P&A JIBs under the OOA, which includes rights to the GC 201 ORRI Proceeds.[22] But for the automatic stay, LLOG would be entitled to exercise these collateral rights against Fieldwood, including, but not limited to, notifying the first purchaser of production burdened by the GC 201 ORRI of Fieldwood's default and thereafter commencing appropriate collection efforts. At the very least, the first purchaser of production may suspend payment to Fieldwood upon receipt of an appropriate communication from LLOG pursuant to the OOA. Under the clear terms of the OOA, this first purchaser would be entitled to rely upon LLOG's representations and would thereafter be relieved of its payment obligations to Fieldwood.[23]

In the absence of such relief, LLOG's collateral rights are in jeopardy given the nature of its collateral – here, the GC 201 ORRI Proceeds.[24] LLOG's collateral rights are reliant upon hydrocarbon production, which is an inherently speculative undertaking even in the best of times. The risk of diminishment in value is particularly relevant here given the current challenges impacting the oil and gas industry, including a steep decline in oil prices and an unprecedented

---

[20] *In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017).
[21] *In re Mosher*, 578 B.R. at 765; *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).
[22] *See* Section A(ii) of Exhibit I to the OOA, **Exhibit A** (affording LLOG a continuing security interest in "all cash and other proceeds from the sale of such oil and gas once produced" from the Contract Area).
[23] *See* Section A(i) of Exhibit I to the OOA, **Exhibit A** (providing that the first purchaser "is entitled to rely upon the Operator's statement regarding Costs and other expenses owed," and that payment from first purchaser to Operator "shall be binding and conclusive as between such purchaser and such defaulting Non-Operating Party").
[24] While the focus of this Motion is the GC 201 ORRI Proceeds, LLOG's security interest is not limited to rights in the GC 201 ORRI, and nothing set forth herein should be construed as limiting LLOG's rights as a secured creditor affecting all of Fieldwood's rights in and to the Contract Area.

277162v1

global pandemic. Further, due to the finite nature of oil and gas resources, the value of LLOG's collateral is diminishing with every passing day that further production occurs.

"In determining whether cause exists, the Court must balance the inherent hardships on all parties and base its decision upon the degree of hardship and the overall goals of the Bankruptcy Code."[25] "The twin purposes of the Bankruptcy Code are to give breathing room to a debtor attempting a fresh start and to equally distribute assets among similarly situated creditors."[26] Here, neither purpose is impeded by lifting the stay to allow LLOG to enforce its OOA collateral rights to the GC 201 ORRI Proceeds in partial satisfaction of the Outstanding P&A JIBs. Under the terms of the OOA, LLOG is a secured creditor with interests in both leases comprising the Contract Area as well as in the proceeds derived from the Contract Area, and recognition of these rights should not impact Fieldwood's (or any of the named debtors') "fresh start" or otherwise interfere with reorganization. Further, granting the requested relief should not affect the equal distribution of assets since, to LLOG's knowledge, there are no "similarly situated creditors" to be impacted, at least not as relates to the collateral at issue here.

LLOG, however, will be harmed to the extent stay relief is denied because, absent such relief, the value of its bargained-for security interest is in jeopardy.[27] Accordingly, "cause" exists to lift the stay to allow LLOG to exercise its collateral rights in the GC 201 ORRI Proceeds, including, but not limited to, allowing LLOG to commence collection efforts with the first purchaser of oil production at GC 201.

Next, though the Bankruptcy Code does not expressly define cause, it does include as a

---

[25] *In re 1776 Am. Properties IV, LLC*, No. 17-30422, 2017 WL 1956851, at *2 (Bankr. S.D. Tex. May 10, 2017).
[26] *In re White*, No. 18-50385-KMS, 2018 WL 4677440, at *6 (Bankr. S.D. Miss. Sept. 27, 2018).
[27] *See generally, In re Trammell*, 584 B.R. 824, 829 (Bankr. E.D. Tenn. 2018) (citing *Price v. Del. State Police Fed. Credit Union (In re Price)*, 370 F.3d 362, 373 (3d Cir. 2004) ("A secured creditor . . . is entitled to have the value of its collateral maintained at all times, and it can obtain relief from the automatic stay . . . any time if that interest is not adequately protected or for other 'cause.'")).

277162v1

basis for cause a lack of adequate protection.[28] While the term "adequate protection" is not defined in the Bankruptcy Code, section 361 provides several nonexclusive examples of what may constitute adequate protection.[29] In addition to periodic cash payments and replacement liens, section 361 provides that adequate protection "may be provided by granting such other relief . . . as will result in the realization of such entity of the indubitable equivalent of such entity's interest in such property."[30] "The latter method opens the door to a boundless array of protective measures, the sufficiency of which must be determined on a case-by-case basis."[31]

"The determination of whether a creditor's interest is adequately protected is not an exact science nor does it involve a precise arithmetic computation."[32] The adequate protection requirement provides a secured creditor the ability to reconcile "the competing interests of the debtor's need to reorganize and the secured creditor's entitlement to constitutional protection of its bargained-for property interests."[33] To establish a prima facie case for cause due to a lack of adequate protection, the movant must show that it holds a claim, secured by a valid, perfected lien upon estate property and that a decline in the value of its collateral is either occurring or is threatened, against which the creditor is precluded from protecting its interests due to the existence of the automatic stay.[34]

Here, LLOG can establish a prima facie case for cause due to a lack of adequate protection. Pursuant to the terms of the OOA, LLOG has a valid, perfected lien and security interest against

---

[28] *See* 11 U.S.C.A. § 362(d)(1)(" . . . the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in proper of such party in interest[.]").
[29] *Matter of Royal d'Iberville Corp.*, 10 B.R. 37, 39 (Bankr. S.D. Miss.), aff'd sub nom. *Matter of Royal D'Iberville Corp.*, 12 B.R. 149 (S.D. Miss. 1981); *see also In re Colrud*, 45 B.R. 169, 174 (Bankr. D. Alaska 1984) ("The three methods of providing adequate protection are non-exclusive; that is, they are illustrative and not mandatory, and other methods may be used with the relief being suited to the facts of the case in question.").
[30] 11 U.S.C.A. § 361.
[31] *In re Panther Mountain Land Dev.*, LLC, 438 B.R. 169, 190 (Bankr. E.D. Ark. 2010).
[32] *In re Kowalsky*, 235 B.R. 590, 595–96 (Bankr. E.D. Tex. 1999).
[33] *In re Briggs Transp. Co*., 780 F.2d 1339, 1342 (8th Cir. 1985).
[34] *In re Kowalsky*, 235 B.R. at 595.

9

the Leases and oil proceeds derived thereof, including in the GC 201 ORRI Proceeds. Given the finite nature of the oil and gas resources as well as other issues currently impacting the oil and gas industry, there is continuous (daily) decline in the value of LLOG's secured interests. If not for the existence of the automatic stay, LLOG could, at a minimum, protect its interests in its collateral by pursuing relief through the first purchaser of the GB 201 ORRI production.

Further, LLOG is likewise entitled to stay relief under section 362(d)(2) given that the collateral in question derives from an overriding royalty interest, which itself is inherently speculative in nature. "A debtor's insufficient equity in a property provides another circumstance that permits a bankruptcy judge to lift an automatic stay."[35] In addition and as noted previously, a diminution in a creditor's rights to collateral need only be threatened, it need not be actually occurring.[36] Here, the jurisprudence considering the nature of the property in question – the overriding royalty interest – has reasoned that its value is unique and often "speculative and uncertain."[37] Therefore, Fieldwood cannot have any realistic "equity" in the collateral and the stay must be lifted unless adequate protection is provided pursuant to 11 U.S.C. § 362(d)(2).

**WHEREFORE**, for the reasons set forth above, LLOG respectfully requests that this Court grant it relief from stay so that it may exercise its security rights against Fieldwood for the Outstanding P&A JIBs, including, but not limited to, commencing collection efforts with the first purchaser of production at GC 201.

---

[35] *In re McCullough*, 495 B.R. 692, 696 (W.D.N.C. 2013).

[36] *See In re Kowalsky*, 235 B.R. at 595 (requiring a movant asserting a lack of adequate protection to show "a decline in the value of its collateral is either occurring or is threatened").

[37] *Weaver v. Florida Expl. Co.*, 608 So. 2d 1034, 1040 (La. App. 3 Cir. 1992) (reasoning that the value of an overriding royalty interest is "speculative and uncertain"); *see also Tidelands Royalty B Corp. v. Gulf Oil Corp.*, 804 F.2d 1344, 1352 (5th Cir. 1986) ("The royalty owner's interest is speculative: a hope that the grantor's own interest in securing production will, in fact, result in production from the tract burdened by the royalty."); *Norsul Oil & Min. Co. v. Texaco, Inc.,* 703 F. Supp. 1520, 1547 (S.D. Fla. 1988) ("[B]y its very nature, a royalty is dependent on the operator's decision that producing serves its own economic interest.").

Dated: December 21, 2020.

        Respectfully Submitted,

        **LOOPER GOODWINE P.C.**

        */s/ Paul J. Goodwine*
        Paul J. Goodwine (La. Bar No. 23757)
        SDTX Federal ID No. 437800
        Lindsey M. Johnson (La. Bar No. 34610)
        SDTX Federal ID No. 2127344
        650 Poydras Street, Suite 2400
        New Orleans, Louisiana 70130
        Telephone: (504) 503-1500
        Facsimile:  (504) 503-1501
        Email: pgoodwine@loopergoodwine.com
        Email: ljohnson@loopergoodwine.com

        **Attorneys for LLOG Exploration Offshore, L.L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December 2020, a true and correct copy of the foregoing document was served via this Court's CM/ECF system on all parties having consented to such electronic service in this case.

        */s/ Paul J. Goodwine*
        Paul J. Goodwine

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 4001-1, the undersigned counsel conferred with counsel for Fieldwood on multiple occasions by telephone regarding the relief requested herein, including on November 17 and 18, 2020, as well as on December 10, 2020. Undersigned counsel again conferred with counsel for Fieldwood on December 15, 2020.  Movant and opposing counsel have been unbale to reach an agreement on the requested relief.

        */s/ Paul J. Goodwine*
        Paul J. Goodwine

277162v1