## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  | § |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | Case No. 20-33948 (MI) |
|  | § |  |
| Debtors.[1] | § | (Jointly Administered) |
|  | § |  |

**MOTION OF DEBTORS FOR ENTRY OF ORDER (I) APPROVING DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF DISCLOSURE STATEMENT HEARING; (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (III) SCHEDULING CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN; (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING PROCEDURES FOR OBJECTIONS TO THE ASSIGNMENT AND TRANSFER OF PROPERTY OF THE ESTATE; (VII) APPROVING BID SUBMISSION DEADLINE AND PROCEDURES FOR SUBMISSION OF HIGHER OR BETTER BIDS; AND (VIII) GRANTING RELATED RELIEF**

---

**A hearing will be conducted on this matter on February 3, 2021 at 2:30 p.m. (prevailing Central Time). You may participate in the hearing by audio/video connection.**

**Please note that through the entry of General Order 2020-10 on March 24, 2020, General Order 2020-11 on April 27, 2020, General Order 2020-17 on June 12, 2020, General Order 2020-18 on June 29, 2020, General Order 2020-19 on August 7, 2020, and General Order 2020-20 on October 19, 2020, the Court invoked and then extended and modified the protocol for emergency public health or safety conditions.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeIsgur" in the GoToMeeting app or click the link on Judge Isgur's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

> **Hearing appearances must be made electronically in advance of the hearing.  To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu.  Select "Judges' Procedures," then "View Home Page" for Judge Isgur.  Under "Electronic Appearance" select "Click here to submit Electronic Appearance".  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

## Background

1.      Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

4.      On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

5.      Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of Michael Dane in Support of Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 29) (the "**Dane Declaration**").

### Relief Requested

6. Pursuant to sections 105, 365, 1125, 1126, 1128, and 1145 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 3001, 3003, 3016, 3017, 3018, 3020, 6004, and 9006, and Local Rules 2002-1, 3016-1 and 3016-2 of the Bankruptcy Local Rules, the Debtors request approval of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"):

i. approving the form and manner of notice and hearing to consider the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (as it may be amended, modified, or supplemented, the "**Disclosure Statement**") (Docket No. 723);

ii. approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

iii. scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, attached as **Exhibit A** to the Disclosure Statement (the "**Plan**")[2];

iv. establishing February 3, 2021 as the record date for the purpose of determining which holders of Claims and Interests are entitled to vote on the Plan and/or receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

v. approving Solicitation Procedures (as defined below) with respect to the Plan, including the forms of Ballots and Notice of Non-Voting Status (each as defined below) and tabulation procedures;

vi. establishing the deadline (the "**Plan Objection Deadline**") to object to confirmation of the Plan;

vii. approving the procedures for assumption of executory contracts and unexpired leases;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan or Disclosure Statement, as applicable.

viii.    approving procedures for objections to the assignment and transfer of property of the estate;

ix.    approving the Bid Deadline (as defined below) and procedures for submission of higher or better bids; and

x.    granting related relief.

7.    For the convenience of the Court and parties-in-interest, the below chart provides a summary of the key dates sought pursuant to the Proposed Order:

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Disclosure Statement Hearing | **February 3, 2021 at 2:30 p.m. (prevailing Central Time)** |
| Voting Record Date | **February 3, 2021** |
| Solicitation Date | **Four (4) Business Days after entry of Proposed Order** |
| Rule 3018(a) Motion Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Request for Estimation Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Bid Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Plan Supplement Filing Deadline | **March 2, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Voting Deadline | **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Plan Objection Deadline | **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Ballot Certification Deadline | **March 11, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | **March 15, 2021** |
| Confirmation Hearing | **March 17, 2021, subject to the Court's availability** |

8.     For further reference of the Court and parties-in-interest, the Debtors provide below a list of the various exhibits and documents cited throughout this Motion:

| DOCUMENT | EXHIBIT |
|---|---|
| Proposed Order | Exhibit A |
| Confirmation Hearing Notice | Exhibit 1 to the Proposed Order |
| Form of Ballot for Class 4 (FLTL Secured Claims) | Exhibit 2 to the Proposed Order |
| Form of Ballot for Class 5 (SLTL Claims) | Exhibit 3 to the Proposed Order |
| Form of Ballot for Class 6 (General Unsecured Claims) | Exhibit 4 to the Proposed Order |
| Notice of Non-Voting Status | Exhibit 5 to the Proposed Order |
| Notice of Disclosure Statement Hearing | Exhibit B |
| Notice of Procedures to Submit Bids | Exhibit C |
| Disclosure Statement | Filed contemporaneously herewith |
| Plan | Exhibit A to the Disclosure Statement filed contemporaneously herewith |
| Release Provisions | Exhibit B to the Disclosure Statement |

## Jurisdiction

9.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary of Plan

10.     As described in more detail in the Disclosure Statement, the Plan is the result of extensive good faith negotiations among the Debtors and a number of their key economic stakeholders, including the DIP Lenders and the Ad Hoc Group of Secured Lenders who have agreed to support the Plan pursuant to that certain Restructuring Support Agreement dated as of August 4, 2020 (the "**RSA**").  The parties to the RSA include Consenting FLTL Lenders holding

approximately 76.75% of the Company's secured debt under the FLTL Credit Agreement and Consenting SLTL Lenders holding approximately 28.91% of the Company's secured debt under the SLTL Credit Agreement.

11.     As further described in the Disclosure Statement, the Plan provides for a comprehensive restructuring to be accomplished through the consummation of a credit bid sale pursuant to the Plan of the Debtors' select Deepwater and Shelf Assets to their Prepetition FLTL Lenders and the Apache Transactions, which are collectively designed to (i) recapitalize and preserve the going concern value of the Debtors' business and the jobs of over 1,000 employees and contractors, (ii) maximize recoveries to the Debtors' creditors, and (iii) ensure that all plugging and abandonment and decommissioning obligations are allocated to the appropriate parties for performance in a responsible and safe manner.

12.     As further described in the Disclosure Statement, the Plan provides for the following treatment of claims and interests:

- All holders of Allowed FLTL Claims will have the secured part of their claims (i.e., the Allowed FLTL Secured Claims) satisfied in full pursuant to the Credit Bid Transaction and, in exchange for such Allowed FLTL Secured Claims, receive their Pro Rata Share of 100% of the New Equity Interests (subject to dilution as set forth in section 4.4 of the Plan). The unsecured deficiency part of the Allowed FLTL Claims (i.e., the Allowed FLTL Deficiency Claims, if any) will be classified with other Allowed General Unsecured Claims (Class 6), including prepetition trade claims, rejection damages claims, and surety claims.

- All holders of Allowed SLTL Claims will receive their Pro Rata Share of a $5 million cash pool, which will also be shared with the holders of Allowed General Unsecured Claims, including the Allowed FLTL Deficiency Claims, if any.

- The holders of Allowed General Unsecured Claims will also receive their Pro Rata Share of any distributable value of the Post-Effective Date Debtors and FWE I after satisfaction of (i) Allowed Administrative Expense Claims, Allowed DIP Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, Allowed FLFO Claims, all Cure Amounts and (ii) all fees, expenses, costs and other amounts pursuant

to the Plan and incurred by the Post-Effective Date Debtors in connection with post-Effective Date operations and wind-down

- All holders of other claims against the Debtors or existing equity interests in FWE Parent will not receive a recovery under the Plan.

**The Disclosure Statement**

13.     Pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b), the Debtors prepared and filed the Disclosure Statement to provide parties with adequate information and disclosure regarding the terms of the Plan.  The Debtors intend to provide parties with copies of the Disclosure Statement, once approved, in connection with the Debtors' solicitation of votes to accept or reject the Plan.

**Approval of the Disclosure Statement**

14.     Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding a proposed chapter 11 plan of reorganization.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

15.     Accordingly, a debtor's disclosure statement must provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan. *See, e.g.*, *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015) ("The proponent of a reorganization plan . . . must provide a court-approved disclosure statement that contains 'adequate information'

about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan."); *In re Tex. Rangers Baseball Partners*, 521 B.R. 134, 176 (Bankr. N.D. Tex. 2014) ("Section 1125 of the Bankruptcy Code entitles creditors to 'adequate information' so they can make an informed decision on whether to accept or reject a chapter 11 plan.").  The essential requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991)).

16.     Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation." 11 U.S.C. § 1125(d).  Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement. *See, e.g.*, *Texas Extrusion Corp. v. Lockheed Corp.* (*In re Texas Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988) (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court"); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.") (citing *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995)).  Congress granted bankruptcy courts wide discretion in determining the adequacy of a disclosure statement to facilitate effective reorganizations of debtors in a broad range of businesses, taking into account the various facts and circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977); *see also In re Cajun Elec. Power Coop.*, 150 F.3d 503, 518 (5th Cir. 1998) ("[W]ith respect to a particular disclosure statement, 'both the kind and form of

information are left essentially to the judicial discretion of the court.'") (quoting S. Rep. No. 95-989, at 121 (1978)).  Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See In re Texas Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis.").

17.     To determine whether a disclosure statement contains adequate information, courts generally examine whether the disclosure statement contains the following types of information, as applicable:

(a)     the circumstances that gave rise to the filing of the bankruptcy petition;

(b)     an explanation of the available assets and their value;

(c)     the anticipated future of the debtor(s);

(d)     the source of the information provided in the disclosure statement;

(e)     a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

(f)     the condition and performance of the debtor while in chapter 11;

(g)     information regarding claims against the estate;

(h)     a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

(i)     the accounting and valuation methods used to produce the financial information in the disclosure statement;

(j)     information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

(k)     a summary of the plan of reorganization or liquidation;

(l)     an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

(m)     the collectability of any accounts receivable;

(n)    any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

(o)    information relevant to the risks being taken by the creditors and interest holders;

(p)    the actual or projected value that can be obtained from avoidable transfers;

(q)    the existence, likelihood, and possible success of nonbankruptcy litigation;

(r)    the tax consequences of the plan; and

(s)    the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re ReoStar Energy*, 2012 Bankr. LEXIS 2418, at *4–5 (Bankr. N.D. Tex. May 30, 2012) (noting that "courts have developed checklists for determining whether a disclosure statement meets the requirements of section 1125").  Such a list is not meant to be comprehensive and a debtor is not required to provide all the information on the list.  Rather, the bankruptcy court must decide what is appropriate in each case in light of the particular facts and circumstances present.  *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (adopting a similar list); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of a similar list but cautioning that "no one list of categories will apply in every case").

18.    The Disclosure Statement provides many of the types of information identified in the applicable categories above, including, but not limited to:

(a)    an overview of the Plan (§ I);

(b)    key events leading to the commencement of the Debtors' chapter 11 cases (§ IV);

(c)    a description of the Debtors' capital structure (§ III.B);

(d)    the anticipated future of the Debtors (§ VI);

(e)    the operation of the Debtors' businesses (§ III.A);

(f)     the indebtedness of the Debtors and information regarding pending claims (§ III.D);

(g)     a disclaimer, which indicates that no statements or information concerning the debtors or their assets or securities are authorized, other than those set forth in the Disclosure Statement (§ IX.F);

(h)     events during the chapter 11 cases (§ V);

(i)     an overview of a liquidation analysis under chapter 7 (Exhibit C);

(j)     risk factors affecting the Debtors (§ IX);

(k)     requirements for confirmation of the Plan (§ XI); and

(l)     tax consequences of the Plan (§ VIII).

19.     In addition to the type of information that courts typically look for in a disclosure statement, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan (§ XII), and concludes with the Debtors' recommendation that holders of Claims and Interests eligible to vote should vote to accept the Plan because it provides the highest and best recoveries to holders of Claims and Interests. *See* § XIII.

20.     Based on the foregoing, the Debtors submit that the Disclosure Statement contains adequate information for a voting creditor to make an informed judgment regarding whether to vote to accept or reject the Plan, and therefore satisfies the requirements of section 1125 of the Bankruptcy Code. Thus, the Debtors respectfully request that the Court approve the Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

**The Disclosure Statement Provides Adequate Notice of Release, Exculpation, and Injunction Provisions in the Plan**

21.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be

enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

22.     The Plan includes injunctions, releases, and exculpations in sections 10.6, 10.7, and 10.8. The Disclosure Statement in Exhibit B describes in detail the releases provided under the plan, the entities to be providing such releases, the entities to be released, and the Claims and Interests and causes of action to be released. Additionally, Exhibit B to the Disclosure Statement sets forth the terms of the proposed exculpation provision under the Plan, and Exhibit B to the Disclosure Statement sets forth the proposed injunction related to the release and exculpation provisions in the Plan. Each of the foregoing sections are set forth in the Disclosure Statement in conspicuous, bold print. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

**Approval of the Notice of Disclosure Statement Hearing**

23.     In accordance with Bankruptcy Rules 2002(a) and 3017 and Local Rule 2002-1, contemporaneously with the filing of this Motion, the Debtors filed and served a notice of the hearing on this Motion (the "**Disclosure Statement Notice**"), substantially in the form annexed hereto as **Exhibit B**, by email and/or by first class mail to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) (A) Cole Schotz P.C., 301 Commerce Street, Suite 1700, Fort Worth, Texas 76102 (Attn: Michael D. Warner and Benjamin L. Wallen), and (B) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Frank A. Merola, Jonathan D. Canfield, and Sherry J. Millman), Counsel to the Creditors' Committee; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn:  William L. Wallander, Esq. and Bradley R. Foxman, Esq.), as counsel to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell

LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham Jr., Esq. and Martha Wyrick, Esq.), as counsel to the Ad Hoc Group of Secured Lenders; (v) Shipman & Goodwin LLP, 400 Park Ave, 5th Floor, New York, NY 10022 (Attn: Nathan Plotkin, Esq.), as counsel to Cantor Fitzgerald Securities, the FLTL Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606 (Attn: Joshua Spencer, Esq. and Anastasia Sotiropolous, Esq.), as counsel to Cortland Capital Market Services LLC, the SLTL Administrative Agent; (vii) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002 (Attn: Robin Russell and Catherine Diktaban), as counsel to Apache Corporation; (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Securities and Exchange Commission; (xi) the registered and beneficial holders of Interests (as defined in the Plan) in the Debtors; (xii) any other known holders of Claims and Interests against the Debtors, including but not limited to, the Debtors' predecessors-in-interest, co-working interest owners, and surety providers, (xiii) the Bureau of Ocean Energy Management, the Bureau of Safety and Environmental Enforcement, the Department of the Interior, and the Department of Justice; and (xiv) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Disclosure Statement Notice provides at least twenty-eight (28) days' notice of the hearing to approve the Disclosure Statement (the "**Disclosure Statement Hearing**") and of the deadline by which objections must be filed to approval of the Disclosure Statement (the "**Disclosure Statement Objection Deadline**"). The Debtors respectfully submit that such notice is sufficient under the circumstances. The Debtors request that the Court find that such notice is due and proper and that no further notice is necessary.

24. The Debtors submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline for all purposes and, accordingly, request that the Court approve such procedures.

### The Solicitation Procedures

25. In connection with the Disclosure Statement and Plan, the Debtors propose to implement the solicitation and balloting described below. The Debtors have retained Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**") as their claims, noticing, and solicitation agent through the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 19).

**Parties Entitled to Vote**

26. Pursuant to the Plan, the Debtors have created ten (10) classes of Claims and Interests. Of those classes, the Debtors submit that the following classes are Impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (the "**Voting Classes**"):

| Class | Description |
|---|---|
| Class 4 | FLTL Secured Claims |
| Class 5 | SLTL Claims |
| Class 6 | General Unsecured Claims |

27. A creditor or interest holder that holds a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a) as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b)     as of the Voting Record Date, such creditor's Claim or interest holder's Interest has been disallowed, expunged, disqualified or suspended;

(c)     such creditor has not filed a proof of claim in accordance with the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 466) (the "**Bar Date Order**")[3] as of the Voting Record Date and the Debtors have not scheduled such creditor's Claim or scheduled such creditor's Claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(d)     such creditor's Claim or interest holder's Interest is subject to an objection or request for estimation as of the Voting Record Date, subject to the procedures set forth below.

28.     Section 1126(f) of the Bankruptcy Code provides that, for purposes of soliciting votes on confirmation of a plan of reorganization, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).  Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (FLFO Claims) receive full recovery of their priority or secured Claims under the Plan.  Holders of Claims in Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) will have their Claims and Interests adjusted, reinstated, cancelled, or discharged in the Debtors' or Post-Effective Debtors' discretion. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of such Claims and Interests are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan (collectively, the "**Unimpaired Classes**").

29.     Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not

---

[3] Pursuant to the Bar Date Order, the deadline for creditors or other parties-in-interest to file a proof of claim was November 25, 2020 at 5:00 p.m. (prevailing Central Time).  The deadline for governmental units to file a proof of claim is February 1, 2021 at 5:00 p.m. (prevailing Central Time).

entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g). Holders of Claims and Interests in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) will receive no recovery under the Plan. Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, such holders are deemed to reject the Plan and are not entitled to vote on the Plan (the "**Deemed Rejecting Classes**" and, together with the Unimpaired Classes, the "**Non-Voting Classes**").

        30.    Holders of Claims and Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| Class 3 | FLFO Claims | Unimpaired | No (Presumed to accept) |
| Class 7 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| Class 8 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| Class 9 | Intercompany Interests | Unimpaired | No (Presumed to accept) |
| Class 10 | Existing Equity Interests | Impaired | No (Deemed to reject) |

**Voting Record Date**

        31.    Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purposes of soliciting votes in connection with confirmation of a plan of reorganization, and except to the extent the Court orders otherwise, the debtor must mail the relevant solicitation materials to all creditors and equity security holders, including "holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).

32.     To identify and establish the universe of creditors and equity holders entitled to vote on the Plan, the Debtors request that the Court set February 3, 2021, as the date for determining (i) which creditors and equity holders in Voting Classes are entitled to vote on the Plan and (ii) which creditors and equity holders in Non-Voting Classes are entitled to receive a Notice of Non-Voting Status (as defined below) (the "**Voting Record Date**").

33.     With respect to transfers of Claims and Interests filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (defined below) and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot (defined below) on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

34.     The Debtors believe that the Voting Record Date is appropriate, as it facilitates the determination of which creditors and equity holders are entitled to vote on the Plan or, in the case of non-voting creditors and equity holders in Non-Voting Classes, to receive the Notice of Non-Voting Status.  Accordingly, the Debtors request the Court approve such date.

**Temporary Allowance/Disallowance of Claims and Interests**

35.     Pursuant to section 1126(a) of the Bankruptcy Code, the holder of an "allowed" claim or interest may accept or reject a chapter 11 plan.  A class of claims accepts a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors that voted.  11 U.S.C.

§ 1126(c).  A class of interests accepts a plan if such plan has been accepted by holders that hold at least two-thirds in amount of the allowed interests of such class held by holders that voted. 11 U.S.C. § 1126(d).  Bankruptcy Rule 3018(a) provides that the Court may temporarily allow a claim or interest in an amount that the Court deems appropriate for the purpose of such claim or interest holder accepting or rejecting a plan.

**Establishing Claims or Interest Amounts for Voting Purposes**

36.      **Class 4 (FLTL Secured Claims)**.  The amount of each FLTL Secured Claim, for voting purposes only, will be established by reference to the list of participant lenders to the FLTL Credit Agreement and those participant lenders' corresponding FLTL Secured Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the FLTL Administrative Agent, which shall be provided by the FLTL Administrative Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

37.      **Class 5 (SLTL Claims)**.  The amount of each SLTL Claim, for voting purposes only, will be established by reference to the list of participant lenders to the SLTL Credit Agreement and those participant lenders' corresponding SLTL Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the SLTL Administrative Agent, which shall be provided by the SLTL Administrative Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

38.      **Class 6 (General Unsecured Claims)**.  The amount of each General Unsecured Claim, for voting purposes only, shall be established pursuant to the following hierarchy:

(a)      If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Bankruptcy Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Bankruptcy Court;

(b)     If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c)     If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date, *provided* that, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed, then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00; and

(d)     If neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules, *provided* that, if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

39.     The Debtors further request that, if the Debtors have filed an objection to, or a request for estimation of, a Claim on or before February 26, 2021, such Claim shall be temporarily disallowed for voting purposes, except as ordered by the Bankruptcy Court before the Voting Deadline; *provided*, *however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by this Bankruptcy Court before, or concurrent with, entry of an order confirming the Plan.

40.     The Debtors believe that the foregoing proposed procedures provide for a fair and equitable voting process.  If any creditor seeks to challenge the Allowed amount of its Claim for voting purposes, the Debtors propose that such creditor must file with the Bankruptcy Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount.  The Debtors request that the Court, pursuant to section 105(a) of the Bankruptcy Code, (i) fix February 26, 2021 (the "**Rule 3018(a) Motion Deadline**"), as the deadline for the filing and serving of motions pursuant to Bankruptcy Rule 3018(a)

requesting temporary allowance of a movant's Claim for purposes of voting (the "**Rule 3018(a)**

**Motion(s)**") and (ii) require that such Rule 3018(a) Motions be filed with the Court so as to be

**actually received** not later than 4:00 p.m. (prevailing Central Time) on the Rule 3018(a) Motion

Deadline.  The Debtors propose that the Court consider only those Rule 3018(a) Motions that have

been timely filed in accordance with the provisions of this paragraph.  The Debtors further propose

that upon entry of an order of the Court granting a Rule 3018(a) Motion, such creditor's Ballot (as

defined below) be counted in accordance with the above designated guidelines, unless temporarily

Allowed in a different amount by an order of the Bankruptcy Court entered before, or concurrent

with, entry of an order confirming the Plan.  Absent an order of the Court granting a Rule 3018(a)

Motion, the Debtors propose that such creditor's Ballot be counted in accordance with the

hierarchy set forth in paragraph 38.

**Approval of Solicitation Packages and Procedures for Distribution Thereof**

> 41.  Bankruptcy Rule 3017(d) lists the materials that must be provided to holders

of claims or interests for the purpose of soliciting votes on a chapter 11 plan and providing

adequate notice of the hearing to consider confirmation thereof.  Specifically, Bankruptcy Rule

3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement—except to the extent that
> the court orders otherwise with respect to one or more unimpaired
> classes of creditors or equity security holders—the debtor in
> possession, trustee, proponent of the plan, or clerk as the court
> orders shall mail to all creditors and equity security holders, and in
> a chapter 11 reorganization case shall transmit to the United States
> trustee:
>
> (a)  the plan or a court-approved summary of the plan;
>
> (b)  the disclosure statement approved by the court;
>
> (c)  notice of the time within which acceptances and rejections of the plan may
> be filed; and

(d)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

42.     In accordance with the foregoing, the Debtors propose to mail, or cause to be mailed, solicitation packages (the "**Solicitation Packages**") containing the information described below as soon as practicable after entry of the Proposed Order approving the Disclosure Statement, but not later than four (4) Business Days after the date of entry of such order (the "**Solicitation Date**"), to the U.S. Trustee and holders of Claims and Interests in the Voting Classes, as required by Bankruptcy Rule 3017(d).

43.     In accordance with Bankruptcy Rule 3017(d), the Solicitation Packages shall contain copies of:

(a)     the Proposed Order, as entered by the Court and without attachments;

(b)     the Notice of (I) Approval of Disclosure Statement; (II) Establishment of Voting Record Date, (III) Hearing on Confirmation of the Plan, (IV) Procedures for Objecting to the Confirmation of the Plan, and (V) Procedures and Deadline for Voting on the Plan (the "**Confirmation Hearing Notice**");

(c)     a USB flash drive containing the Disclosure Statement, which shall include the Plan as an attachment (except as provided below); and

(d)     a Ballot customized for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below, and a postage-prepaid return envelope.[4]

44.     If the recipient is holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Plan, then they will be served the Confirmation Hearing Notice and the Notice of Non-Voting Status (as defined and described below) only.

---

[4] Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

45.     To reduce costs and the impact on the environment, the Debtors propose to send the Disclosure Statement and Plan in electronic format (on a USB flash drive) instead of printed hard copies.  Moreover, the Plan and Disclosure Statement will be available at no charge via the internet at https://cases.primeclerk.com/FieldwoodEnergy/.  However, if service by USB flash drive imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (e.g., the party does not own or have access to a computer or the Internet), the Debtors propose that such creditor may request a paper copy of the Plan and the Disclosure Statement by contacting Prime Clerk through (i) email at fieldwoodballots@primeclerk.com or (ii) via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international).  Upon receipt of such request, the Debtors will provide such party with a paper copy of the Plan and the Disclosure Statement at no cost to the party within five (5) business days thereafter.

46.     The Debtors will not mail Solicitation Packages to creditors who have Claims or Interests that have already been paid in full; *provided, however*, that if a creditor is entitled to receive a Solicitation Package for any other reason than stated above, then the Debtors will send such creditor a Solicitation Package in accordance with the procedures set forth herein.

47.     The Debtors anticipate that the United States Postal Service may return some Solicitation Packages as undeliverable.  The Debtors submit that it is costly and wasteful to mail Solicitation Packages to the same addresses from which mail previously was returned as undeliverable.  Therefore, to the extent printed hard copies are requested, the Debtors request the Court waive the strict notice rule and excuse the Debtors from mailing Solicitation Packages to addresses from which the Debtors received mailings returned as undeliverable.  Furthermore, for purposes of serving the Solicitation packages, the Debtors are authorized to rely on the address information for Voting and Non-Voting Classes as compiled, updated, and maintained by the

Voting Agent as of the Voting Record Date.  The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable solicitations materials (including ballots).

48.     Although the Debtors have made, and will make, every effort to ensure that the Solicitation Packages as described herein and as approved by the Court are in final form, the Debtors nonetheless request authority to make non-substantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before mailing.

49.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures and that the proposed Solicitation Packages comply with Bankruptcy Rule 3017(d).  Accordingly, the Debtors request the Court's approval thereof.

**Approval of Notice of Non-Voting Status**

50.     Bankruptcy Rule 3017(d) permits a court to order that the Plan and Disclosure Statement need not be mailed to unimpaired classes.  In lieu thereof, a court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense . . . [and] notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to the members of such classes. Fed. R. Bankr. P. 3017(d).

51.     As discussed above, Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (FLFO Claims) are Unimpaired and presumed to accept the Plan and,

therefore, holders in these classes are not entitled to vote on the Plan.  Accordingly, the Debtors propose to mail to holders of Claims in Class 1, Class 2, and Class 3 in lieu of a Solicitation Package, the Confirmation Hearing Notice and a notice of non-voting status and opt out form attached thereto, substantially in the form attached to the Proposed Order as **Exhibit 5** (the "**Notice of Non-Voting Status**").

52.     Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) are Impaired and holders in such classes are expected to receive no recovery under the Plan and, therefore, holders of Claims and Interests in such Classes are deemed to have rejected the Plan and not entitled to vote on the Plan.  Accordingly, the Debtors propose to mail to holders of Claims and Interests in Class 8 and Class 10 in lieu of a Solicitation Package, the Confirmation Hearing Notice and the Notice of Non-Voting Status.

53.     With respect to Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests), the Debtors request a waiver of any requirement to serve a Confirmation Hearing Notice, Notice of Non-Voting Status or any other type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates and are Unimpaired by the Plan.

54.     The Notice of Non-Voting Status provides (i) notice of the Court's approval of the Disclosure Statement, (ii) notice of the filing of the Plan and Disclosure Statement, (iii) notice of the holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Plan.  In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Section 10 of the Plan and advises such holders in Non-Voting Classes that they will be bound by the release provision in Section 10.7 of the Plan unless they timely and properly opt out.  The Notice of Non-Voting Status also

includes a form to complete and return if the party elects to opt out of such release provision.  The Debtors submit that the Notice of Non-Voting Status satisfies the requirements of paragraph 36 of the Complex Case Procedures regarding consensual releases against non-debtor parties with respect to the holders of Claims or Interests in the Non-Voting Classes.

55.     The Debtors submit the above-described notices and procedures with respect to Non-Voting Classes satisfy the requirements of Bankruptcy Rule 3017(d) and the Complex Case Procedures and, therefore, respectfully request the Court approve them.

**Approval of Forms of Ballots**

56.     Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Bankruptcy Form No. B 314, to "creditors and equity security holders entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  The Debtors propose to distribute to holders of Claims and Interests in the Voting Classes that are otherwise eligible to vote (as set forth herein), ballots substantially in the forms attached to the Proposed Order as **Exhibit 2, 3, and 4** (the "**Ballots**"), as applicable, which are incorporated herein by reference.  Although the Ballots are based on Official Bankruptcy Form No. B 314, they have been modified to address the specific circumstances of these chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate for the Voting Classes.

57.     All holders of Claims and Interests in the Voting Classes will receive a Ballot that includes an election regarding certain non-debtor release provisions in the Plan (the "**Non-Debtor Release Provisions**").  Only those holders of Claims and Interests in Voting Classes who vote to reject the Plan may elect to opt out of certain release provisions in Section 10.7 of the Plan.

58.     The Debtors propose to distribute Ballots to each of the holders of FLTL Secured Claims in Class 4, SLTL Claims in Class 5, and each of the holders of General Unsecured Claims in Class 6.

59.     In addition to accepting a hard copy Ballot via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots from holders in Class 4 (FLTL Secured Claims), Class 5 (SLTL Claims), and Class 6 (General Unsecured Claims) via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website maintained by Prime Clerk ("**E-Ballot**").  Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing E-Ballot (which allows a holder to submit an electronic signature).  If applicable, instructions for electronic, online transmission of Ballots will be set forth on the forms of Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted through E-Ballot in this manner and the voting party's electronic signature will be deemed to be immediately legally valid and effective.  Ballots submitted by electronic mail, facsimile, or electronic means other than the online balloting portal will not be accepted.

**The Voting Deadline**

60.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan . . . ."  Fed. R. Bankr. P. 3017(c).  The Debtors anticipate mailing substantially all of the Solicitation Packages by **no later than four (4) Business Days** after entry of the Proposed Order (the "**Solicitation Deadline**").  Based on such schedule, the Debtors propose that, to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent:  (i) by first-class mail in the return envelope

provided with each Ballot; (ii) by overnight courier; (iii) by hand delivery, or (iv) via E-Ballot so

that (in each instance) it is **actually received** by the Voting Agent no later than **March 9, 2021 at**

**4:00 p.m. (prevailing Central Time)** (the "**Voting Deadline**").  Holders of Claims that choose to

mail their ballots shall mail them to the Voting Agent at the following address, as applicable:

| Prime Clerk Addresses for Receipt of Ballots |
|:---:|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

61.     The Debtors submit that the proposed **twenty-eight (28) day** solicitation

period is a sufficient period within which creditors can make an informed decision whether to

accept or reject the Plan.

**Tabulation Procedures**

62.     The Debtors request that the following procedures apply to tabulating

Ballots cast by Holders in the Voting Classes:

(a)     Whenever a holder of Claims casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent and thus, supersede any prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked absent further order of the Court.

(b)     Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c)     Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)     A holder of Claims shall be deemed to have voted the full amount of its Claim or Interest in each class and shall not be entitled to split its vote within a particular class or between more than one Debtor.  Any such holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e)     A holder of Claims against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(f)     Whenever a holder of Claims casts multiple Ballots received by the Voting Agent on the same day but which are voted inconsistently, such Ballots will not be counted.

(g)     A holder of claims in more than one Class must use separate Ballots for each class of claims.

(h)     The following Ballots shall not be counted:

      i.      Any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

      ii.     Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

      iii.    Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

      iv.     Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim in a Voting Class;

      v.      Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

      vi.     Any Ballot which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

      vii.    Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

(i)     The Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular ballot at any time, either before or after the close of voting.

63.     To assist in the solicitation process, the Debtors request that the Court grant the Voting Agent the authority to contact parties who submit incomplete or otherwise deficient

Ballots to make a reasonable effort to cure such deficiencies.  The Debtors request that the Court give authorization to the Debtors and/or their Voting Agent, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, which determination will be final and binding.

64.     The Debtors request that the Court grant authority to the Debtors to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

65.     The Debtors further request from the Court authorization to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their holders of Claims.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

<u>**Confirmation**</u>

**The Confirmation Hearing**

66.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation" of a chapter 11 plan.  Fed. R. Bankr. P. 3017(c).  Pursuant to Bankruptcy Rule 2002(b), creditors must receive at least twenty-eight (28) days' notice of a confirmation hearing.  In accordance with these rules, and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that a hearing on confirmation of the Plan (the "**Confirmation Hearing**") be scheduled for March 17, 2021, or on such date and time as is convenient to the Court.  The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.  The Debtors request that the Court find that the

proposed date for the Confirmation Hearing is in compliance with the Bankruptcy Rules and the Local Rules, and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

**Objection Procedures**

67.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1). Bankruptcy Rule 2002(b) provides that parties must receive at least twenty-eight (28) days' notice of the deadline for filing objections to confirmation.  The Debtors request that the Court set March 9, 2021, at 4:00 p.m. (prevailing Central Time), as the deadline to file objections to confirmation of the Plan (the "**Plan Objection Deadline**").  The Plan Objection Deadline will provide holders of Claims or Interests with sufficient notice of the deadline for filing objections to confirmation of the Plan, while still affording the Debtors and other parties time to file a responsive brief and, if possible, resolve consensually any objections received.

68.     The Debtors request that objections and responses, if any, to confirmation of the Plan:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection and the specific grounds thereof.

69.     The Debtors further request that registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline.  All other parties in interest must file their objections and responses in writing, together with proof of service thereof, with the United States Bankruptcy Court Clerk's Office, Bob Casey United States Courthouse, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, on or before the Plan Objection Deadline.

70.     Pursuant to Bankruptcy Rule 3020(b), "if no objection is timely filed, the [C]ourt may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."  Fed. R. Bankr. P. 3020(b).

71.     The Debtors further request that they be authorized to file a brief in support of confirmation of the Plan and in reply to any objections to the Plan on or before March 15, 2021.

72.     The Debtors respectfully request that the Court approve the procedures for filing objections to the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002 and 3020.

**Plan Supplement**

73.     Pursuant to the Plan, the Debtors intend to file a "Plan Supplement" consisting of a supplemental appendix to the Plan which shall contain, but not be limited to, (a) the Amended Organizational Documents (if any), (b) information regarding the sole manager and independent director to be appointed at FWE I to the extent known and determined and other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (c) a schedule of retained Causes of Action, (d) the Schedule of Assumed Contracts, (e) the Plan Administrator Agreement; (f) the Credit Bid Purchase Agreement; (g) the NewCo Organizational Documents; (h) the Apache Definitive Documents; (i) the First Lien Exit Facility Agreement; (j) the Second Lien Exit Facility Agreement; (k) the New Intercreditor Agreement, (l) the New Money Warrant Agreements; (m) the Management Incentive Plan; and (n) the Restructuring Steps Memorandum; *provided*, *however*, that the Debtors shall have the right to amend documents contained in, and exhibits thereto, the Plan Supplement in accordance with the terms of this Plan and the Restructuring Support Agreement (including the consent rights set forth therein).

74.     The Debtors request that the Court authorize Debtors to file the Plan Supplement with the Bankruptcy Court no later than seven (7) calendar days before the Voting Deadline (the "**Plan Supplement Filing Deadline**").

75.     The Debtors submit that the Plan Supplement Filing Deadline is prudent and attainable under the circumstances of these chapter 11 cases.  Thus, the Debtors respectfully request that the Court approve the Plan Supplement Filing Deadline.

**Confirmation Hearing Notice**

76.     Pursuant to Bankruptcy Rule 3017(d), notice of a plan confirmation objection deadline and hearing must be provided to all creditors and equity security holders in accordance with Bankruptcy Rule 2002.  Bankruptcy Rules 2002 requires notice to, among others, all creditors, indenture trustees, and equity security holders of the time set for filing objections to, and the hearing to consider confirmation of a plan.  In addition, Bankruptcy Rule 2002(c)(3) provides that if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan confirmation notice must include, in conspicuous language, a statement that the plan proposes an injunction, a brief description of the nature of the injunction, and identification of the entities that would be subject to such injunction.  Fed. R. Bankr. P. 3020(b).

77.     In accordance with the foregoing, in addition to including the notice in the Solicitation Packages, by **no later than four (4) business days** after entry of the Proposed Order, the Debtors propose to provide a copy of the Confirmation Hearing Notice setting forth (i) the Voting Deadline, (ii) the Plan Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Confirmation Hearing, and (iv) information about the Plan injunctions in compliance with Bankruptcy Rule 2002(c)(3) with service provided by electronic and/or first class mail on the Notice Parties.

78.     The Debtors further request that this Court authorize the Debtors, in their discretion, to give supplemental publication notice of the Confirmation Hearing in one or more local or foreign newspapers, trade journals, or similar publications, as soon as reasonably practicable following entry of the Proposed Order.

79.     The Debtors submit that the foregoing notice procedures comply with all notice requirements under Bankruptcy Rules 3017(d) and 2002.  Accordingly, the Debtors request that the Court find that such notice is due and proper and no further notice is necessary.

**Procedures with Respect to the Assumption of Executory Contracts and Unexpired Leases**

80.     Section 8.1 of the Plan provides that each of the Debtors' executory contracts and unexpired leases will be deemed rejected as of the Effective Date, unless such agreement: (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, (iv) is identified in Sections 8.4 or 8.5 of the Plan; (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement which Schedule of Assumed Contracts will identify executory contracts and unexpired leases for assumption and assignment to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement.  Section 8.1 of the Plan further provides that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Assumed Contracts, to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall

be extended to 5:00 p.m. (prevailing Central Time) seven (7) days immediately before the rescheduled or continued Confirmation Hearing; *provided*, *further* that subject to the terms of the Credit Bid Purchase Agreement, the Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, the Credit Bid Purchase Agreement, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

81.     Pursuant to Section 8.2 of the Plan, the Debtors shall serve a Cure Notice on parties to executory contracts and unexpired leases no later than ten (10) days before the Confirmation Hearing.  Any counterparty to an executory contract or unexpired lease shall have until the Plan Objection Deadline to object to the proposed assumption, assumption and assignment, or related Cure Amount listed on the Cure Notice.  Further, the Debtors intend to serve the Confirmation Hearing Notice on all parties to executory contracts and unexpired leases, reflecting the Debtors' intention to assume (or assume and assign to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement) the executory contracts or unexpired leases in connection with the Plan or the Credit Bid Purchase Agreement.

82.     Section 8.2 of the Plan also provides that an Assumption Dispute (as defined in the Plan) pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount) shall be heard by the Court before such assumption being effective; *provided* that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors

or the Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any other party or any action, order, or approval of the Court. To the extent an Assumption Dispute relates solely to the applicable Cure Amount, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease before the resolution of such Assumption Dispute; *provided*, that the Post-Effective Date Debtors or Credit Bid Purchaser, as applicable, shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party. The Debtors or Post-Effective Date Debtors, as applicable, subject to the terms of the Credit Bid Purchase Agreement, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

83.     The Debtors respectfully submit that the notice of the Debtors' assumption of executory contracts and unexpired leases is appropriate under the circumstances.

### Credit Bid Transaction

84.     As detailed in the Disclosure Statement, pursuant to the Plan, the Debtors will consummate the sale of certain of their assets, including select Deepwater Assets and Shelf Assets, to the Credit Bid Purchaser for aggregate consideration consisting of (i) a credit bid of the Allowed FLTL Secured Claims in the amount of $426 million, which amount may be increased up to the FLTL Claims Allowed Amount, (ii) cash in the amount of approximately $224 million, and (iii) the assumption of certain liabilities set forth in the Credit Bid Purchase Agreement (the "**Credit Bid Transaction**").

85.     The parties are currently working to finalize that certain Purchase and Sale Agreement, by and between FWE, the other seller parties, and the Credit Bid Purchaser, together with any and all related agreements, exhibits, and schedules in connection therewith, as amended,

supplemented or otherwise modified from time to time (the "**Credit Bid Purchase Agreement**"), a copy of which will be filed in a supplement to the Disclosure Statement and included in the Plan Supplement.

86.     On the Effective Date of the Plan, pursuant to sections 105, 363, 365, 1123, 1129, 1141(b) and 1141(c) of the Bankruptcy Code, in accordance with the Credit Bid Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Credit Bid Purchase Agreement, (i) all Credit Bid Acquired Interests will be transferred to, and the Credit Bid Acquired Interests owned by the Debtors will vest free and clear of all Liens[5] (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), Claims, charges, Interests, or other encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights, and (ii) all Credit Bid Assumed Liabilities, will be assumed by the Credit Bid Purchaser or such other entity designated by the Credit Bid Purchaser solely in accordance with the terms of the Credit Bid Purchase Agreement.  Moreover, the vast majority of the Debtors' employees and management team are expected to be employed by Credit Bid Purchaser.

**Procedures for Objections to the Assignment and Transfer of Property of the Estate**

87.     The Debtors intend to assign or transfer to the Credit Bid Purchaser, pursuant to the Credit Bid Purchase Agreement and the Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests,

---

[5] Provided that the Retained Properties (as defined in the Apache Implementation Agreement) shall be transferred in accordance with the Decommissioning Agreement.

and encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights (in each case, as defined below) (other than the Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)).  If any party objects to such assignment or transfer, including any objection based on (a) any alleged right of consent, notice, and any similar interests, if any, that are applicable to the sale of the Credit Bid Acquired Interests, or the assumption of the Credit Bid Assumed Liabilities, in connection with the Credit Bid Purchase Agreement ("**Credit Bid Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the consummation of the transactions contemplated by the Credit Bid Purchase Agreement, or any other Preferential Right (as defined in the Credit Bid Purchase Agreement) ("**Credit Bid Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Credit Bid Consent Rights, a "**Credit Bid Consent Rights Objection**", and if in respect of Credit Bid Preferential Purchase Rights, a "**Credit Bid Preferential Rights Objection**"), no later than the Plan Objection Deadline or any objection deadline set forth in a sale motion following a Toggle Date.

88.     Any person failing to timely file a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement or the related provisions of the

Plan, free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), and from asserting any Credit Bid Consent Right and/or Credit Bid Preferential Purchase Right with respect to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), regardless of whether such consent must be in writing in connection with the assignment of any of the Credit Bid Acquired Interests or assumption of any of the Credit Bid Assumed Liabilities.

89.     If any person files a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief or by any reply deadline set forth in a sale motion.  For the avoidance of doubt, the Debtors may include any responses to any Credit Bid Consent Rights Objections or Credit Bid Preferential Rights Objections in the Confirmation Brief. Upon the filing of such response to such Credit Bid Consent Rights Objection or Credit Bid

Preferential Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Credit Bid Consent Rights Objections and Credit Bid Preferential Rights Objections, and all such rights of the Debtors are expressly preserved.

90. The Debtors will cause to be vested in FWE I and FWE III pursuant to the Plan of Merger and Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights (in each case, as defined below). Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on (a) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the vesting of the assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Plan of Merger Consent Rights, a "**Merger Vesting Objection**", and if in respect of

Plan of Merger Preferential Purchase Rights, a "**Merger Rights Objection**"), no later than the Plan Objection Deadline.

91.     Any person failing to timely file a Merger Vesting Objection or Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the Plan of Merger or the related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights and from asserting any Plan of Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the Plan of Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the Plan of Merger.

92.     If any person files a Merger Vesting Objection or Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any rights asserted by such person by filing a response to the Merger Vesting Objection or Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief.  For the avoidance of doubt, the Debtors may include any responses to any Merger Vesting Objections or Merger Rights Objections in the Confirmation Brief.  Upon the filing of such response to such Merger Vesting Objections or Merger Rights Objections, any rights asserted will be deemed to be

disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Merger Rights Objections and Merger Vesting Objections, and all such rights of the Debtors are expressly preserved.

93.     The Debtors respectfully submit that the notice of the Debtors' assumption of executory contracts and unexpired leases is appropriate under the circumstances.

## Approval of Bid Deadline and
## Procedures for Submission of Higher or Better Bids

94.     The Debtors believe that the Credit Bid Transaction is the best and highest available bid for the Debtors' assets. Before the Petition Date, the Debtors commenced a robust sale and marketing process (the "**M&A Process**") for the Company's deepwater assets through its investment banker, Houlihan Lokey Capital, Inc. ("**Houlihan**"). Houlihan, which specializes in advising companies in the oil & gas industry with respect to traditional mergers and acquisitions, asset level acquisitions and divestitures, financial restructuring and recapitalization transactions, conducted the M&A Process from June 30, 2020 through September 3, 2020. Houlihan marketed the deepwater assets to 47 parties identified as potential third party buyers. The outreach covered a broad spectrum of national and international strategic buyers and financial sponsors who were believed to support the proposed transaction. Following the Petition Date, the Debtors continued the marketing process, which ultimately resulted in 18 parties executing confidentiality agreements and obtaining access to a virtual data room ("**VDR**"), 15 management presentations, and receipt of approximately 12 written bid letters and other indications of interest. In addition, the Debtors' advisors provided the Creditors' Committee's advisors with access to all of the information provided to potential buyers, including access to the VDR. To date, no actionable bids have been received.

95.     Concurrently with the M&A Process, the Debtors continued to engage with the Consenting Creditors regarding the terms of a comprehensive restructuring, which ultimately resulted in the Plan and each of the restructuring transactions contemplated therein.  The Credit Bid Transaction provides significant benefits to the Debtors and their estates by, among others, (i) maximizing recoveries to the Debtors' stakeholders, (ii) preserving the going concern value of the Debtors' select Deepwater Assets and Shelf Assets and the jobs of over 1,000 employees and contractors, and (iii) ensuring that all P&A Obligations are allocated to appropriate parties for performance in a responsible and safe manner.  Accordingly, the Debtors believe that the Credit Bid Transaction is value maximizing and represents the highest and best available bid for the Debtors' assets.

96.     The Credit Bid Transaction, however, currently remains subject to higher or better offers from any qualified third parties.  To help facilitate a smooth path towards consummation of the Plan and the Credit Bid Transaction, the Debtors and the Ad Hoc Group of Secured Lenders seek approval of a proposed outside date by which any third party must submit a qualified bid to acquire either (i) the Credit Bid Acquired Interests (as defined in the Credit Bid Purchase Agreement) or (ii) substantially all of the Debtors' assets in accordance with the requirements set forth below (each, a "**Qualified Bid**" and such bidder a "**Qualified Bidder**") by February 26, 2021 (the "**Bid Deadline**").  Any third party that seeks to submit a Qualified Bid by the Qualified Bid Deadline and has demonstrated that it has the ability to submit a Qualified Bid may obtain access to the VDR after executing a confidentiality agreement on customary terms that are reasonable to the Debtors.  The failure to submit any Qualified Bids by the Bid Deadline confirms that the Debtors are currently pursuing the best and highest offer available for the Debtors, their estates, and their creditors.

97.     For a bid to constitute a Qualified Bid, it must be delivered to (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Matt Barr (matt.barr@weil.com) and Jessica Liou (jessica.liou@weil.com), and (ii) financial advisors to the Debtors, Houlihan Lokey, 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: J.P. Hanson (jhanson@hl.com) and Daniel Crowley (dcrowley@hl.com) no later than the Bid Deadline and must, at a minimum:

(a)     include a purchase price that exceeds the value of the Credit Bid Amount (as defined in the Plan) plus any cash consideration to be provided by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement (the "**Reserve Price**"), and a detailed analysis of the value of any non-cash component of such bid, if any, and documentation supporting such value; specify the form of consideration in (A) (i) all cash or (ii) non-cash components, and (B) cash consideration in excess of the Reserve Price;

(b)     specify (i) the equity interests or assets, in whole or in part, as applicable, sought to be acquired as well as (ii) which assets, if any, are not sought to be acquired;

(c)     include an unconditional commitment that such bid is binding, not subject to further financing and diligence, and irrevocable until such bid is not deemed the successful bid or back-up bid;

(d)     proof of financial ability and other information demonstrating the bidder's ability to consummate the applicable sale transaction and the ability to provide adequate assurance of future performance under any proposed assumed contracts and leases, each as determined by the Debtors in their sole judgment;

(e)     identify any proposed contracts to be assumed and assigned;

(f)     include evidence reflecting the bidder's (i) compliance with certain antitrust laws, (ii) ability to obtain regulatory and governmental approvals, and (iii) ability to consummate the sale transaction within a reasonable timeframe, each as determined by the Debtors in their sole judgment;

(g)     (A) disclose the identity of the bidder and each participant in its bid, and (B) (i) demonstrate corporate (or comparable organizational) authorization to submit the bid and (ii) close the proposed sale transaction;

(h)     specify (i) whether the bidder seeks to hire some or all of the Debtors' employees and (ii) indicate the intended treatment of various employee obligations;

(i)     expressly state that the bid does not entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment;

(j)     disclose any connections to (i) the Debtors, (ii) any other known bidders submitting bids pursuant to this process, and/or (iii) any officer or director of the Debtors;

(k)     represent and warrant that the bidder (i) relied solely upon its own independent review, investigation, and/or inspection in making its bid, (ii) has not engaged in collusion with respect to its bid, and (iii) provided correct and truthful proof of financial ability to consummate any applicable sale transaction in a timely manner;

(l)     include (i) a deposit, unless otherwise agreed by the Debtors and bidder, to be deposited with an escrow agent pursuant to an escrow agreement, (ii) the contact information of the bidder contact person and any other specified persons, (iii) a covenant to cooperate with the Debtors and provide information for antitrust legal analysis; and

(m)     a statement as to whether the bid is consistent with the terms of restructuring contemplated in the Restructuring Term Sheet and the Apache Term Sheet, and, if not, a detailed explanation of any inconsistency and the reason(s) therefor.

98.     Upon entry of the Proposed Order, the Debtors will serve on all parties that were previously solicited by the Debtors in connection with their sale process and all other parties that have expressed any interest in submitting a bid to acquire all or some of the Debtors' assets (the "**Sale Notice Parties**") a notice describing the process to submit bids for either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets (the "**Notice of Procedures to Submit Bids**"), substantially in the form attached hereto as **Exhibit C**.  Additionally, as soon as practicable after entry of the Proposed Order, the Debtors will publish a notice, substantially in the form of the Notice of Procedures to Submit Bids, in one or more local or foreign newspapers, trade journals, or similar publications.  The publication notice will provide notice to any interested

parties that seek to bid for either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets whose identities are unknown to the Debtors.

99.     If the Debtors do not receive any Qualified Bids before the Bid Deadline, the Debtors will continue to prosecute the Plan and seek approval of the Credit Bid Transaction in connection therewith and the Debtors will file a notice thereof with the Court no later than one (1) Business Day after the Bid Deadline.

100.    If the Debtors receive Qualified Bid before the Bid Deadline, the Debtors shall inform the Ad Hoc Group of Secured Lenders within one (1) Business Day of receipt of such Qualified Bid.  The Debtors shall also, no later than three (3) Business Days after the Bid Deadline, file with the Court a notice of receipt of such Qualified Bid(s) and the Debtors' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Debtors determine holding an auction will maximize value to the Debtors' estates.  For the avoidance of doubt, the Credit Bid Purchaser (i) shall be deemed a Qualified Bidder that is allowed to participate in any bidding and auction process held by the Debtors and (ii) may increase the Credit Bid Amount up to the FLTL Allowed Claims Amount.

101.    Based on the foregoing, and in light of the robust sale and marketing process conducted by the Debtors, the Debtors submit that the foregoing bidding procedures are fair and reasonable under the circumstances.

## **Notice**

102.    Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

**<u>No Previous Request</u>**

103.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 1, 2021
       Houston, Texas

Respectfully submitted,

*/s/ Alfredo R. Pérez*

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: Matt.Barr@weil.com
            Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## **Certificate of Service**

I hereby certify that, on January 1, 2021, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez
