IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |
|  | § | Re: Docket No. 625 |

### DEBTORS' REPLY IN SUPPORT OF
### MOTION FOR ENTRY OF AN ORDER EXTENDING
### EXCLUSIVE PERIODS PURSUANT TO SECTION 1121(d) OF BANKRUPTCY CODE

Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby file this reply (the "**Reply**") in support of the *Debtors' Motion for Entry of an Order Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (the "**Exclusivity Motion**") [Docket No. 625] and in response to the limited objection (the "**Limited Objection**") filed by Aspen American Insurance Company, Berkeley Insurance Company, Everest Insurance Company and Sirius America Insurance Company [Docket No. 686] and joinders filed by other surety providers[2] and respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] The following sureties filed joinders (the "**Joinders**") to the Limited Objection, which raise substantially similar arguments and seek identical relief: (i) Hanover Insurance Company, Liberty Mutual Insurance Company, Travelers Casualty & Surety Company of America, and XL Specialty Insurance Company [Docket No. 687]; (ii) Lexon Insurance Company and Endurance American Insurance Company [Docket No. 688]; (iii) U.S. Specialty Insurance Company and HCC International Insurance Company [Docket No. 690]; (iv) Zurich American Insurance Company [Docket No. 693]; (v) Philadelphia Indemnity Insurance Company [Docket No. 694]; and (vi) RLI Insurance Company [Docket No. 695] (the entities listed in (i) through (vi), together with Aspen American Insurance

**Preliminary Statement**[3]

1. The Sureties—the only parties that filed objections to the Exclusivity Motion—do not oppose this Court's granting of an extension of the Debtors' Exclusive Periods. Indeed, the Limited Objection contains no meaningful analysis relevant to the issue of exclusivity. Rather, the Sureties' objections are an attempt to advance their own interests in these chapter 11 cases by requesting that this Court condition the extension of exclusivity on an order (i) compelling the Debtors to produce documents that are "fully responsive" to the Sureties' information requests, (ii) requiring the Debtors to pay all outstanding surety bond premiums as administrative expenses, and (iii) that includes declaratory relief designed to elevate the status of the Sureties' claims in these chapter 11 cases. Not only does the Limited Objection request relief that is procedurally improper and unrelated to the subject of the Exclusivity Motion, it also contains incorrect statements of the law, mischaracterizes the Surety Bond Motion and Surety Bond Order (each defined below), and provides an incomplete (if not inaccurate) description of the documents that have been produced to the Sureties and the current status of outstanding document requests. As discussed below, the Debtors have voluntarily produced on an informal basis to the Sureties over 550 documents totaling approximately twenty thousand pages.

2. The Sureties' specific "line item" requests for language to be added to any order granting an extension of the Exclusive Periods and the Debtors' corresponding replies are as follows:

---

Company, Berkeley Insurance Company, Everest Insurance Company and Sirius America Insurance Company, the "**Sureties**"). The arguments raised in this Reply shall apply collectively and individually to each Joinder.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Exclusivity Motion.

- **Surety Request 1**: The Sureties request that the Court require the Debtors to provide documents that are "fully responsive" to the Sureties' document requests.

- **Debtors' Reply**: The Debtors have been diligent in responding to the Sureties' document requests and are continuing to work with counsel to the Sureties to complete any outstanding requests. In any event, objecting to the Debtors' request for an extension of the Exclusive Periods is neither the proper procedure for resolving a dispute regarding the production of documents, nor is it a productive use of the Court's and the parties' time and resources to resolve any discovery disputes.

- **Surety Request 2**: The Sureties request that the Court require the Debtors to pay outstanding surety bond premiums as administrative expense claims.

- **Debtors' Reply**: The Sureties' bond premiums are prepetition claims that are not entitled to administrative expense treatment and, in any event, it is procedurally improper to seek payment of an alleged administrative expense claim in an objection to the Debtors' request to extend exclusivity.

- **Surety Request 3**: The Sureties request that the Court "note" that the acceptance of premiums shall not constitute a waiver of any argument by the Sureties that the Debtors are not entitled to rely on the Sureties' credit, at least without providing adequate protection in addition to payment of the premiums.

- **Debtors' Reply**: The Sureties' request for this relief is unrelated to the Exclusivity Motion and it is procedurally improper to request such declaratory relief in an objection to the Debtors' request to extend exclusivity.

3. The Court should reject the Sureties' requests outright. As described more fully below, the Debtors continue to make significant progress towards confirming a chapter 11 plan that seeks to maximize value for the Debtors' creditors and other stakeholders. Earlier today, the Debtors filed a chapter 11 plan and disclosure statement that is supported by the Consenting Creditors and Apache, and the Debtors intend to use the requested extensions to obtain approval of the disclosure statement (which is scheduled to be heard on February 3, 2021) and solicit votes on and seek confirmation of the chapter 11 plan. Since the Exclusivity Motion

was filed, the Debtors have also advanced discussions with other key stakeholders, including BOEM and BSEE, the FLFO Lender, the Creditors' Committee, and various predecessors in interest.

4. For the reasons discussed herein and in the Exclusivity Motion, the Court should overrule the Sureties' objections and grant the Debtors' requested extension of the Exclusive Periods without any of the conditions requested by the Sureties.

### A. The Debtors Continue to Make Good Faith Progress Toward a Value-Maximizing Restructuring

5. For the reasons set forth in the Exclusivity Motion, the Debtors have made significant progress towards confirming a value-maximizing chapter 11 plan. Since the filing of the Exclusivity Motion, the Debtors reached a significant milestone in these cases and filed a chapter 11 plan [Docket No. 722] (the "**Plan**") and related disclosure statement [Docket No. 723] (the "**Disclosure Statement**") that is supported by the Prepetition FLTL Lenders holding approximately 76.75% of the FLTL Claims, the Prepetition SLTL Lenders holding approximately 28.91% of the SLTL Claims, and Apache.

6. At this time, the Debtors are only requesting the Court extend the Exclusive Filing Period and the Exclusive Solicitation Period by an initial 90 days through and including March 1, 2021, and April 20, 2021, respectively. The complex issues present in these cases evidence the need for additional time for the Debtors to, among other things, (i) continue to work with the Creditors' Committee and other key parties-in-interest to build additional support for the Plan, (ii) obtain approval of the Disclosure Statement and solicit votes on the Plan, and (iii) seek confirmation of the Plan.

4

**B.       The Limited Objection Improperly Seeks Affirmative
          Relief with Regard to the Sureties' Document Requests**

7.       The Sureties assert that they have served certain document requests on the Debtors that "have not been responded to and/or the response received was not sufficient for the Sureties to determine whether such documents exist and whether they should be produced." Limited Objection at ¶ 3–4. The Sureties also assert that the Debtors' responses to requests for specific documents are "not sufficient" in some fashion. *Id.* at ¶ 5–7. In support of these assertions, the Sureties rely on a limited subset of correspondence with the Debtors. *See* Limited Objection, Exhibit B.[4] This "objection" to exclusivity is misplaced for several reasons.

8.       First, the Sureties' alleged grievances regarding document production simply have no relevance to the Debtors' request of an extension of the Exclusive Periods. If the Sureties wish to raise an issue with respect to the production of documents, they should work with the Debtors to resolve any such issues and, to the extent necessary, request relief from this Court in accordance with the rules and procedures applicable to discovery requests and discovery disputes. *See* Fed. R. Civ. P. 37(a)(1); Fed. R. Bankr. P. 7037; Bankr. S.D. Tex. Court Procedures, Judge Marvin Isgur, at ¶ 10 (Feb. 12, 2020).

9.       The Debtors have been diligent in responding to the Sureties' document requests. Early in these chapter 11 cases, the Debtors negotiated a protective order [Docket No. 354] (the "**Protective Order**") with the Sureties to allow the Debtors to produce information to the Sureties on a confidential basis. Once the Sureties and their advisors signed Protective Orders, the Debtors began responding to the Sureties' informal requests for documents and

---

[4] The Debtors believe that the public disclosure of these emails likely violates the Protective Order (defined in ¶ 9 herein). *See, e.g.*, Limited Objection, Exhibit B at p.1, C. Carlson email dated October 29, 2020 (Subject: Fieldwood – Protective Order).

5

information. Indeed, to date, the Debtors have already produced to the Sureties over 550 documents totaling approximately twenty thousand pages. Ironically, in support of their complaints regarding the Debtors' lack of responsiveness, the Sureties attach (Exhibit B), communications that confirm the Debtors responded to the Sureties' requests for information.

10. The document production complaints the Sureties raise in their Limited Objection have no merit. Many of the Sureties' complaints relate to information that does not exist or the Debtors do not have in their possession. Some of the Sureties' complaints relate to information the Debtors have already produced to the Sureties. Moreover, the Debtors have engaged with the various counsel for the Sureties—over the holidays and otherwise—in good faith to resolve these discovery inquiries, including the Sureties' most recent document requests served on December 21, 2020. The Debtors have already produced documents in response to the Sureties' recent requests, and will continue to work with the Sureties in good faith to produce responsive, non-privileged documents in accordance with the applicable rules and the Protective Order. For these reasons, the Sureties' document production complaints are unfounded.

11. Given that the Sureties' complaints regarding document production are (i) procedurally improper, (ii) irrelevant to the standard for extending the Debtors' Exclusive Periods, and (iii) without merit, the Court should decline the Sureties' request to condition the extension of exclusivity on compelling the Debtors to "fully respond" to the Sureties' diligence requests.

C. **The Sureties' Prepetition Claims are not Administrative Expense Claims**

12. The Sureties' attempt to obtain a ruling from this Court compelling the Debtors to pay all outstanding surety bond premiums as administrative expenses is procedurally improper, premised on an incorrect statement of the law, and demonstrates a lack of

information. Indeed, to date, the Debtors have already produced to the Sureties over 550 documents totaling approximately twenty thousand pages. Ironically, in support of their complaints regarding the Debtors' lack of responsiveness, the Sureties attach (Exhibit B), communications that confirm the Debtors responded to the Sureties' requests for information.

10. The document production complaints the Sureties raise in their Limited Objection have no merit. Many of the Sureties' complaints relate to information that does not exist or the Debtors do not have in their possession. Some of the Sureties' complaints relate to information the Debtors have already produced to the Sureties. Moreover, the Debtors have engaged with the various counsel for the Sureties—over the holidays and otherwise—in good faith to resolve these discovery inquiries, including the Sureties' most recent document requests served on December 21, 2020. The Debtors have already produced documents in response to the Sureties' recent requests, and will continue to work with the Sureties in good faith to produce responsive, non-privileged documents in accordance with the applicable rules and the Protective Order. For these reasons, the Sureties' document production complaints are unfounded.

11. Given that the Sureties' complaints regarding document production are (i) procedurally improper, (ii) irrelevant to the standard for extending the Debtors' Exclusive Periods, and (iii) without merit, the Court should decline the Sureties' request to condition the extension of exclusivity on compelling the Debtors to "fully respond" to the Sureties' diligence requests.

C. **The Sureties' Prepetition Claims are not Administrative Expense Claims**

12. The Sureties' attempt to obtain a ruling from this Court compelling the Debtors to pay all outstanding surety bond premiums as administrative expenses is procedurally improper, premised on an incorrect statement of the law, and demonstrates a lack of

understanding of this Court's Surety Bond Order (defined below).  The Sureties ask this Court to condition the extension of the Exclusivity Periods on the payment of outstanding surety bond premiums (*i.e.* prepetition claims), and request that the Proposed Order note "that the acceptance of such premiums by the Sureties shall not constitute a waiver of any argument that the [S]ureties might make at a later time in this bankruptcy that Debtors are not entitled to continue relying upon the Sureties' surety credit, at least not without adequate protection in addition to payment of the premiums." *See* Limited Objection at Preamble.

13. As an initial matter, an objection to the treatment or classification of claims is not a *bona fide* objection to an extension of the Exclusive Periods.  The Sureties' request for payment of the bond premiums is also procedurally improper and contrary to the requirements of the Bankruptcy Code.  *See Matter of DP Partners Ltd. P'ship*, 106 F.3d 667, 671 (5th Cir. 1997) (section 503 requires a timely request for administrative expenses and, following notice and a hearing, the creditor must prove that its claimed expenses and fees are compensable under one or more subsections in 503(b)).

14. Importantly (and all procedural defects aside), applicable case law provides that claims for outstanding premiums are not administrative expenses.  *See In re James River Co.*, No. 3:06-0411, 2006 WL 2548456, at *5 (M.D. Tenn. Aug. 31, 2006) (holding that post-petition renewal premium was not an administrative expense because "the bond remained in effect . . . regardless if the debtor pays the premium"); *see also In re Coal Stripping*, 215 B.R. 500, 502 (Bankr. W.D. Pa. 1997) ("That Debtor is statutorily required to perform reclamation does not make the payment of the premium to [surety] an actual and necessary expense of preserving this Debtor's chapter 11 estate. The bond . . . remains in effect by operation of law until reclamation is performed, whether or not Debtor pays the premium to [surety].").

15. The cases cited by the Sureties, all from outside of the Fifth Circuit, are either inapplicable or distinguishable from the facts at hand. *See* Limited Objection at ¶ 14. Several of the cases Sureties cite to provide that insurance premiums—not surety bond premiums—are administrative expenses. *See id.* (citing *In re MEI Diversified, Inc.*, 106 F.3d 829, 832 (8th Cir. 1997); *In re Sharon Steel Corp.*, 161 B.R. 934, 937–38 (Bankr. W.D. Pa. 1994); *In re Gamma Fishing Co.*, 70 B.R. 949, 955 (Bankr. S.D. Cal. 1987)). These cases are distinguishable because payment of insurance premiums are required to keep the insurance policies in place, whereas surety bonds typically remain in place for the benefit of a third party regardless of whether the debtor pays the premiums. *See In re James River Co.*, 2006 WL 2548456, at *6 (distinguishing *In re Gamma Fishing Co.*, 70 B.R. 949 (Bankr. S.D. Cal. 1987)) (which the Sureties cite to) ("the debtor received post-petition liability insurance coverage which could have been cancelled for non-payment; whereas in this case, the Bonds which constitute and obligation to [the obligee] are irrevocable and became so prior to the filing of [debtor's] petition."). The Sureties also cite to *In re N.P. Mining Co.*, 124 B.R. 846, 848, 852 (Bankr. N.D. Ala. 1990), for the proposition that case law supports the payment of surety bond premiums as administrative expenses. This holding is distinguishable. In *In re N.P. Mining Co.*, the debtor actually forfeited the reclamation bonds to the environmental commission as a result of the civil penalties for environmental violations it amassed, arguably providing a post-petition benefit to the debtor-in-possession. *Id.* at 848; *see also In re N.P. Mining Co., Inc.*, 963 F.2d 1449, 1450 (11th Cir. 1992) ("After N.P. became insolvent, its insurer, American Resources, honored the bonds, paying the State of Alabama more than two million dollars to repair the actual damage done to the land.").

16. The Sureties also rely on excerpts from the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Programs and the Surety Bond Program, and (B) Pay Certain Obligations with Respect Thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* [Docket No. 4] (the "**Surety Bond Motion**") to support their assertion that "…the Debtors argued that the pre-petition and post-petition premiums were payable as administrative expenses pursuant to 11 U.S.C. § 503(b)." *See* Limited Objection at 13 citing Surety Bond Motion at ¶ 38 ("To the extent [payments made to maintain the surety bond program] do not constitute ordinary course transactions, however, the Debtors request that the Court authorize the Debtors to continue payments for the Insurance Programs and the Surety Bond Program, as well as to pay necessary prepetition amounts owed with respect thereto if any come to light postpetition, pursuant to sections 105(a), 363(b), and 503(b) of the Bankruptcy Code."). A simple reading of the Surety Bond Motion demonstrates that the Sureties are wrong. Rather, the Surety Bond Motion requests authority, ***but not direction***, to make payments under the surety bond program to the extent such payments are necessary to preserve the Debtors' estates.

17. Nor does the *Final Order (I) Authorizing Debtors to (A) Continue Insurance Programs and the Surety Bond Program, and (B) Pay Certain Obligations with Respect Thereto; (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* [Docket No. 340] (the "**Surety Bond Order**") compel the Debtors to pay premiums under the surety bond program or otherwise constitute a finding that any surety claims are entitled to administrative expense status. As the Court is aware, the Surety Bond Order provides, in each instance, that the Debtors are authorized but not directed to, among other things, continue their surety bond program and honor certain

obligations and expressly states that "nothing in [the] Final Order renders any claim by any third party based on a prepetition actual, potential, or asserted liability of the Debtors, which claim may or does result in a loss to a surety under the Surety Bond Program, into a postpetition claim or expense of administration." *See* Surety Bond Order at ¶ 2–4.

18. Nothing in the Surety Bond Order or the Surety Bond Motion entitles the Sureties to jump ahead of other creditors by demanding payment of their claims as administrative expenses. Moreover, the applicable case law provides that surety bond premiums are ***not*** administrative expenses.

D. **The Sureties Cannot Impose "Conditional Exclusivity" on the Debtors**

19. Finally, the Sureties assert that case law supports imposition of conditions on the extension of the Exclusive Periods. *See* Limited Objection at ¶ 14 (citing *In re Grossinger's Associates*, 116 B.R. 34, 35 (Bankr. S.D.N.Y. 1990)). However, this case too, is distinguishable. In *Grossinger's*, the bankruptcy court conditioned exclusivity on the debtor's ability to continue paying its administrative expenses on an ongoing basis, and ultimately terminated the exclusivity period for failure to meet this requirement. *See Grossinger's*, 116 B.R. at 35. In that case, the court found that the debtor had no "serious reorganizational possibilities" and had made no progress after months of delay. *Id*. at 36. The court was reluctant to preserve exclusivity for a debtor with an "uncomplicated financial structure[]" who had failed to adequately fund its administrative expenses without proof of its ability to successfully reorganize. *Id*.; s*ee also* Associated Press, *Bankruptcy Action is Taken by Grossinger's*, N.Y. Times, Aug. 1, 1990, at B2 (reporting that debtor was a Resort and Country Club in upstate New York that had most recently been purchased by a group of investors for $9 million in 1986). By contrast and as detailed in the Exclusivity Motion, the Debtors in this case have made significant

progress towards a plan of reorganization, having filed a plan and disclosure statement earlier today, have generally paid administrative expenses as they become due, and have a complex financial structure requiring additional time to negotiate with key stakeholders. *See* Exclusivity Motion at ¶ 24–27.

## **Conclusion**

20. For the reasons provided for herein and in the Exclusivity Motion, the Debtors' good faith progress toward a value-maximizing reorganization, the absence of any evidence to suggest that the Debtors seek to use exclusivity for an improper purpose, the size and complexity of the cases, and the Debtors' continued payment of post-petition obligations all favor the requested extension.

WHEREFORE the Debtors respectfully request that the Court overrule the Sureties' Objections and grant the relief requested in the Exclusivity Motion and such other and further relief as it deems just and proper.

Dated: January 1, 2021
       Houston, Texas

                           Respectfully submitted,

                           /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   Matt.Barr@weil.com
          Jessica.Liou@weil.com

*Attorneys for Debtors
and Debtors in Possession*

## Certificate of Service

I hereby certify that, on January 1, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                          */s/ Alfredo R. Pérez*  
                                                                          Alfredo R. Pérez