IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING
EXCLUSIVE PERIODS PURSUANT TO SECTION 1121(d) OF BANKRUPTCY CODE**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), file this motion (the "**Motion**") for entry of an order extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**") and to solicit acceptances thereof (the "**Exclusive Solicitation Period**" and together with the Exclusive Filing period, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

WEIL:\97720478\8\45327.0007

"**Exclusive Periods**") by 90 days through and including March 1, 2021, and April 30, 2021, respectively. In support of the Motion, the Debtors respectfully represent as follows:

### Preliminary Statement[2]

1. As announced on the first day of these chapter 11 cases, prepetition the Debtors reached agreements in principle with certain of their significant stakeholders (*e.g.*, Apache Corporation and the Consenting Creditors) regarding the disposition of certain of the Debtors' assets and funding to allow the Debtors time to reorganize their business. The Debtors have continued these efforts to maximize value for all stakeholders throughout the early stages of these chapter 11 cases. Since the Petition Date, the Debtors have executed a seamless transition into chapter 11, obtained Court approval of important "first day" and "second day" operational relief, filed schedules and statements of financial affairs for all Debtors, and obtained up to $100 million in debtor-in-possession financing.

2. Most importantly, the Debtors have continued to press forward in discussions with the Consenting Creditors, Apache, their regulators and other key parties in interest regarding the terms of a comprehensive restructuring. The Debtors have significantly advanced negotiations with the Consenting Creditors regarding the terms of a chapter 11 plan and disclosure statement, are close to finalizing the Apache Definitive Documents with Apache and the Consenting Creditors, and remain in active discussions with several other key stakeholders regarding the restructuring.

3. In addition, the Debtors have made significant progress on several key workstreams essential to a successful restructuring:

---

[2]  Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to such terms in the body of the Motion.

- *Deepwater Sale Process*. The Debtors continued their sales and marketing process commenced prepetition for their deepwater assets, contacted 47 parties identified as potential third-party buyers, and evaluated the non-binding bids and letters of intent received. To date, the Debtors have not received any actionable bids from third parties.

- *Claims Process*. The Debtors obtained Court approval of the Debtors' motion to establish a general bar date of November 25, 2020, for all creditors and parties in interest to file proofs of claim and a governmental bar date of February 1, 2021, for governmental units to file proofs of claim. As of the date hereof, over 800 proofs of claim have been filed against the Debtors. The Debtors continue to review and analyze the filed claims.

- *Mortgage and Lien Analysis*. The Debtors completed a comprehensive analysis of the mortgages and liens securing the prepetition secured creditors' claims and shared those findings with the Creditors' Committee and the Consenting Creditors.

- *Diligence and Document Production*. The Debtors have also collected, reviewed, and produced numerous documents in response to diligence requests from multiple other parties in interest, including the Creditors' Committee, Consenting Creditors, the Bureau of Ocean Energy Management ("**BOEM**") and the Bureau of Safety and Environmental Enforcement ("**BSEE**"), the Debtors' surety providers, and certain predecessors in interest of the Debtors' assets.

- *Analysis of Contracts and Leases*. The Debtors and their advisors are undertaking a review of approximately 4,000 contracts and leases to determine the appropriate treatment of each such agreement.

- *Managing Vendor Relations.* The Debtors and their advisors have been managing relations with the Debtors' vendors through the Debtors' vendor program by completing 97 trade agreements resolving approximately $100 million of prepetition claims and continuing to work towards completing an additional 48 trade agreements representing an additional $41 million of prepetition claims.

- *Order Extending Automatic Stay to Certain Co-Interest Owners*. After two lawsuits were filed on November 13, 2020 against certain of the Debtors' co-working interest owners in the United States District Court for the Eastern District of Louisiana, the Debtors commenced an adversary proceeding seeking entry of an order extending the automatic stay to enjoin Atlantic Maritime Services, LLC from prosecuting the lawsuits and obtained a preliminary injunction temporarily enjoining Atlantic from prosecuting such lawsuits against the Debtors' co-working interest owners.

4. In the near future, the Debtors anticipate filing a chapter 11 plan and disclosure statement that is supported by the Consenting Creditors and Apache and intend to use the requested extension of the Exclusive Periods to finalize, solicit, and seek confirmation of such chapter 11 plan. At this time, the Debtors are only requesting a 90-day extension of the Exclusive Periods so that they may complete their ongoing negotiations with the Consenting Creditors and Apache regarding the terms of a value-maximizing chapter 11 plan, and continue to work with the Creditors' Committee and other key parties in interest to build additional support for the plan. For all these reasons and those further discussed below, cause exists to grant the Debtors the initial extension of the Exclusive Periods.

### Background

5. Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

6. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

8. On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

9. Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Michael Dane in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 29) (the "**Dane Declaration**").[3]

## Jurisdiction

10. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

11. By this Motion, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors request entry of an order extending the Exclusive Periods by 90 days through and including March 1, 2021, and April 30, 2021, respectively, respectively, without prejudice to the Debtors' right to request further extensions of such periods in accordance with section 1121(d) of the Bankruptcy Code. The Debtors' Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on December 1, 2020, and January 30, 2021, respectively.[4]

12. A proposed form of order approving the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Dane Declaration or the RSA, as applicable.

[4] Rule 17 of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* provides that "if a motion is filed that complies with Bankr. Loc. R. 9013-1 to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Local Bankruptcy Rules, the time for taking the action is automatically extended until the Court rules on the motion." By the filing of this Motion prior to the expiration of the Exclusive Filing Period, the Exclusive Filing Period will not expire until the Court resolves the Motion.

**Basis for Relief**

13.     Under section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).

14.     The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest); *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) ("Any bankruptcy court involved in an assessment of whether 'cause' exists should be mindful of the legislative goal behind § 1121."); *In re Mirant Corp.*, Ch. 11 Case No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization").

15.     The broad discretion conferred on the Court in these circumstances enables the Court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity); *In re Washington-St. Tammany Elec. Co-op., Inc.*, 97 B.R. 852, 854 (E.D. La. 1989) (noting that the decision to extend exclusivity "rests

with the discretion of the Court"); *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (identifying the *Adelphia* factors as factors to consider in determining whether cause exists to extend exclusivity); *In re Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (identifying the same factors); *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (same); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (same).

These non-exclusive factors include:

(i) the size and complexity of the debtor's case;

(ii) the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(iii) the existence of good faith progress towards reorganization;

(iv) the fact that the debtor is paying its bills as they become due;

(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(vi) whether the debtor has made progress in negotiations with its creditors;

(vii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

(viii) whether an unresolved contingency exists.

*See, e.g.*, *Millennium Mgmt.*, 2014 WL 792115, at *6; *see also Adelphia*, 352 B.R. at 587 (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character"); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity).

16. Not all factors are relevant to every case, and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension

in a particular chapter 11 case. *See, e.g.*, *Hoffinger Indus.*, 292 B.R. at 644 ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re Serv. Merch. Co.*, 256 B.R. 744, 751-54 (Bankr. M.D. Tenn. 2000) (finding cause to extend where the debtors established six of the aforementioned factors); *Express One Int'l*, 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

17. Moreover, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *see also In re Borders Grp., Inc.*, 460 B.R. at 825 (same).

18. Ample precedent in this district supports the Debtors' request for an initial extension of exclusivity of at least 90 days. *See, e.g.*, *In re CEC Entm't, Inc.*, No. 20-33163 (Bankr. S.D. Tex. Nov. 20, 2020) (granting 90-day extension of exclusive periods); *In re EP Energy Corp.*, No. 19-35654 (Bankr. S.D. Tex. Mar. 31, 2020) (same); *In re EXCO Res., Inc.*, No. 18-30155 (Bankr. S.D. Tex. Feb. 15, 2019) (same); *In re NPC Int'l, Inc.*, No. 20-33353 (Bankr. S.D. Tex. Nov. 17, 2020) Docket No. 1065 (granting 120-day extension); *In re Ultra Petroleum Corp.*, No. 16-32202 (Bankr. S.D. Tex. Feb. 17, 2017) (same); *In re CJ Holding Co.*, No. 16-33590 (Bankr.

S.D. Tex. Nov. 3, 2016) (same); *In re SandRidge Energy Inc.*, No. 16-32488 (Bankr. S.D. Tex. Aug. 30, 2016) (same); *In re Sheridan Holding Co. II, LLC*, No. 19-35198 (Bankr. S.D. Tex. Jan. 17, 2020) (granting 180-day extension); *In re Seadrill Ltd.*, No. 17-60079 (Bankr. S.D. Tex. Jan. 8, 2018) (same); *In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. Oct. 3, 2017) (same).

<u>**Cause Exists to Extend Exclusive Periods**</u>

19. As set forth below, an extension of the Exclusive Periods by 90 days is appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11 of the Bankruptcy Code. The requested extension of the Exclusive Periods will enable the Debtors to pursue confirmation and implementation of a chapter 11 plan without the risk of competing plans and the attendant disruption, expense, and delay. Accordingly, application of the relevant factors listed above to the facts of these chapter 11 cases demonstrates that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

**A.     These Chapter 11 Cases are Large and Complex**

20. The scale and complexity of the Debtors' businesses and corporate structure requires the Debtors to navigate complex issues in their restructuring efforts and further substantiates the need for an extension of the Exclusive Periods. This factor weighs heavily in favor of extending exclusivity. *See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

21. The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5963. Moreover, "[t]he large size of a debtor and the consequent

difficulty in formulating a plan . . . for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods." *Texaco*, 76 B.R. at 326.

22. These chapter 11 cases consist of fourteen separate Debtor entities. Moreover, the Debtors operate one of the largest oil and gas exploration and production companies in the Gulf of Mexico, employ approximately 1,000 employees across their offices in Houston, Lafayette, and offshore, and have approximately $1.8 billion in funded debt. Their portfolio of properties includes both deepwater and shallow water assets in the Gulf of Mexico including over 300 operated platforms spread across over 1.5 million gross acres.

23. Further, multiple parties have an interest in the outcome of these chapter 11 cases, including the Consenting Creditors, the FLFO Lender, the Creditors' Committee, BOEM and BSEE, surety providers, co-working interest owners, vendors, and predecessors in interest. In addition to advancing plan negotiations with the Consenting Creditors and Apache, the Debtors have devoted substantial time and energy engaging with these parties regarding key issues implicated by the restructuring of the Debtors' business and look forward to continued discussions with these parties regarding a possible resolution of those issues.

**B.    Debtors Have Made Good Faith Progress Towards Reorganization and Substantial Progress in Negotiations with their Creditors**

24. Since the Petition Date, the Debtors have made significant progress towards a value-maximizing exit from chapter 11. As detailed in the Dane Declaration, the Debtors entered these chapter 11 cases shortly after executing a term sheet with Apache (the "**Apache Term Sheet**"), which sets forth the framework for a restructuring of the Legacy Apache Properties. Shortly after the Petition Date, the Debtors entered into a restructuring support agreement (the "**RSA**") and restructuring term sheet (the "**Restructuring Term Sheet**") with lenders holding

approximately 67.63% of the Debtors' secured debt under the FLTL Credit Agreement, lenders holding approximately 25.73% of the Debtors' secured debt under the SLTL Credit Agreement, and Apache.[5]  Since then, the Debtors have built on the momentum gained early on in these chapter cases by advancing a number of critical workstreams necessary to maximize value for the Debtors' stakeholders.  To date, the Debtors have, among other things:

- secured critical first- and second-day relief, including authority to pay certain prepetition claims and access to up to $100 million in DIP financing;

- worked diligently on a number of essential time-sensitive operational matters, including the stabilization and transition of their operations into chapter 11 following the Petition Date and the continued safe operation of their offshore business;

- continued their sales and marketing process commenced prepetition for their deepwater assets, contacted 47 parties identified as potential third-party buyers, and evaluated the non-binding bids and letters of intent received;

- completed a comprehensive analysis of the mortgages and liens securing the prepetition secured creditors' claims and sharing the findings with the Creditors' Committee and Consenting Creditors;

- established a constructive relationship with the Creditors' Committee, the U.S. Trustee, and other key economic stakeholders, including their respective professionals, and implemented an extensive and continuing due diligence program with such constituents, participated in regular conference calls, and established and managed a secure data site addressing information requests of these parties so that the administration of the these chapter 11 cases can proceed on an appropriate schedule;

- produced numerous documents in response to diligence requests from BOEM and BSEE, the Debtors' surety providers, and certain predecessors in interest of the Debtors' assets;

- prepared and filed schedules of assets and liabilities and statements of financial affairs for each of the fourteen (14) Debtors (Docket Nos. 429-456);

- managed relations with the Debtors' vendors through the Debtors' vendor program by completing 97 trade agreements resolving approximately $100

---

[5]  Since the RSA was executed, additional lenders holding FLTL Claims and/or SLTL Claims have executed joinders to the RSA.

- million of prepetition claims and continuing to work towards completing an additional 48 trade agreements representing an additional $41 million of prepetition claims;

- obtained entry of an order setting November 25, 2020, as the general bar date for all creditors and parties in interest to file proofs of claim and a governmental bar date of February 1, 2021, for governmental units to file proofs of claim, and continued review and analysis of over 800 proofs of claim filed against the Debtors;

- continued review of approximately 4,000 contracts and leases to determine the appropriate treatment for each such agreement; and

- obtained a temporary preliminary injunction from this Court enjoining one of the Debtors' vendors from prosecuting certain lawsuits against the Debtors' co-working interest owners.

25. Concurrently, the Debtors continue to progress negotiations with the Consenting Creditors regarding the terms of a chapter 11 plan of reorganization and disclosure statement and have made significant headway with Apache and the Consenting Creditors towards finalizing the terms of the Apache Definitive Documents (as defined in the Apache Term Sheet). In the near future, the Debtors anticipate finalizing the Apache Definitive Documents and filing a chapter 11 plan and disclosure statement supported by the Consenting Creditors and Apache. The Debtors also intend to work with the Creditors' Committee and other key constituents to build further consensus around their chapter 11 plan.

26. It is appropriate for the Court to extend the Exclusive Periods to ensure that the Debtors' continued progress is not impeded due to a loss of exclusivity and to provide the Debtors a full and fair opportunity to advance a value-maximizing chapter 11 plan without the distraction of competing plan proposals. On this basis alone, the requested exclusivity extension is warranted. *See Adelphia*, 352 B.R. at 588 (viewing the good faith factor "as one of the more important factors" in the analysis). Accordingly, in light of the substantial process made to date and the complexity of the transactions contemplated by the RSA and Apache Term Sheet, the

Exclusive Periods should be extended by 90 days to provide the Debtors with adequate time to file and prosecute their chapter 11 plan.

**C.  Debtors Are Making Administrative Expense Payments and Will Continue to Do So**

27.  Courts considering an extension of exclusivity also assess a debtor's liquidity.  *See Millennium Mgmt.*, 2014 WL 792115, at *6.  Here, the Debtors are paying administrative expenses as they come due and will continue to do so.  In addition, as set forth in the monthly operating reports filed to date, the Debtors have made approximately $130 million in disbursements since the Petition Date and have a total cash balance of approximately $170 million as of October 31, 2020 (excluding cash held in trust or escrow accounts).  *See Debtor-in-Possession Monthly Operating Report for Reporting Period of October 1, 2020 through October 31, 2020* (Docket No. 621).  Moreover, the Debtors have access to approximately $90 million in DIP Financing pursuant to the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105,. 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(d)(1), and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364, and 507(b)* (Docket No. 346).  The Debtors continue to monitor their liquidity closely and are confident that sufficient funding will be available to satisfy their postpetition payment obligations during the requested extension of the Exclusive Periods.

**D.  An Extension of the Exclusive Periods Will Not Prejudice Creditors and Relatively Little Time Has Elapsed in the Chapter 11 Cases**

28.  This is the Debtors' first request to extend the Exclusive Periods and comes just four months after the Petition Date.  As detailed above, the Debtors are negotiating and working to finalize a chapter 11 plan designed to maximize value for the Debtors' stakeholders.  The complex issues present in these cases evidence the need for additional time for the Debtors to

consult and negotiate with their stakeholders. The Debtors believe that no party in interest is prejudiced by the requested extension of the Exclusive Periods because all stakeholders will benefit from the continued stability and predictability that comes with the Debtors being the sole plan proponents. The early stage of these cases further supports the requested extensions. Courts regularly grant a debtor's request for an initial exclusivity extension.

E.   **Requested Extension Is in Best Interest of Debtors' Estates**

29.   The Debtors are progressing these cases forward by confronting the business challenges imposed by an active hurricane season and global pandemic and advancing a chapter 11 plan that is designed to maximize value for Debtors' stakeholders. The Debtors require the requested extension of the Exclusive Periods to file and seek confirmation of a chapter 11 plan. In addition to advancing discussions with the Consenting Creditors and Apache, the Debtors have made significant progress with several other key stakeholders, including BOEM and BSEE, the FLFO Lender, and the Creditors' Committee, and the Debtors intend to use the additional time to continue to advance those discussions with the aim of reaching a consensual global deal.

30.   The facts in these cases are more than sufficient to support a finding of "cause" to extend the Exclusive Periods. Therefore, it is appropriate for the Court to extend the Exclusive Periods to allow the Debtors to build on the considerable momentum achieved to date and file and seek confirmation of a chapter 11 plan without the risk of distraction, delay, and cost attendant to competing plan proposals.

## Notice

31.   Notice of this Motion will be provided to (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and (ii) any other party entitled to notice pursuant to Local Rule 9013-1(d).

**No Prior Request**

32. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: December 1, 2020
      Houston, Texas

Respectfully submitted,

  /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
       Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**Certificate of Service**

I hereby certify that, on December 1, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                                                                        */s/ Alfredo R. Pérez*
                                                                                                        Alfredo R. Pérez

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

ORDER PURSUANT TO SECTION 1121(d)
OF THE BANKRUPTCY CODE EXTENDING EXCLUSIVE PERIODS

Upon the motion, dated December 1, 2020 (the "**Motion**"),[2] of Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), for an order extending the Debtors' exclusive periods in which to file a chapter 11 plan (the "**Exclusive Filing Period**") and solicit acceptances thereof (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"), pursuant to section 1121(d) of title of title 11 of the United States Code (the "**Bankruptcy Code**"), as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and a

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

hearing, if any, having been held to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Filing Period in which to file a chapter 11 plan is extended from December 1, 2020, through and including March 1, 2021.

2. Pursuant to section 1121(d) of the Bankruptcy Code, the Debtors' Exclusive Solicitation Period in which to solicit acceptances of its chapter 11 plan is extended from January 30, 2021, through and including April 30, 2021.

3. The extensions of the Exclusive Periods granted herein are without prejudice the Debtors' rights to seek from this Court further extensions of time pursuant to 1121(d) of the Bankruptcy Code.

4. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

5. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2020
      Houston, Texas

                                      THE HONORABLE MARVIN ISGUR
                                      UNITED STATES BANKRUPTCY JUDGE