1          IN THE UNITED STATES BANKRUPTCY COURT

2          FOR THE SOUTHERN DISTRICT OF TEXAS

3                    HOUSTON DIVISION

4  IN RE:                    §      CASE NO. 20-33948-11
                             §
5  FIELDWOOD ENERGY, LLC AND §      HOUSTON, TEXAS
   OFFICIAL COMMITTEE OF     §
6  UNSECURED CREDITORS,      §      MONDAY,
                             §      JANUARY 4, 2021
7            DEBTORS.        §      9:00 A.M. TO 10:02 A.M.

8          MOTION TO EXTEND EXCLUSIVITY (VIA ZOOM)

9          BEFORE THE HONORABLE MARVIN ISGUR
                UNITED STATES BANKRUPTCY JUDGE

10

11

12

           APPEARANCES:              (SEE NEXT PAGE)
13

14

15      (Recorded via CourtSpeak; No log notes)

16

17

18

19

20          TRANSCRIPTION SERVICE BY:

21       JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 Eldridge Road, #144
22             Sugar Land, TX 77478
                  281-277-5325
23          www.judicialtranscribers.com

24
     Proceedings recorded by electronic sound recording;
25       transcript produced by transcription service.

1                       APPEARANCES (VIA ZOOM):

2

 FOR THE DEBTORS:              WEIL GOTSHAL AND MANGES, LLP
3                              Alfredo R. Perez, Esq.
                               700 Louisiana
4                              Suite 1700
                               Houston, Texas   77002
5                              713-546-5040

6

 FOR ASPEN, BERKLEY
7 EVERENT AND SIRIUS:          CHIESA SHAHINIAN & GIANTOMASI,
                               PC
8                              Darren Grzyb, Esq.
                               One Boland Drive
9                              West Orange, New Jersey  07052
                               973-530-2077
10

 FOR HCCI/USSIC:               LOCKE LORD, LLP
11                             Philip G. Eisenberg, Esq.
                               600 Travis
12                             Suite 3400
                               Houston, Texas   77002
13                             713-226-1304

14 FOR LIBERTY, HANOVER,
 TRAVELERS AND XL:             LANGLEY, LLP
15                             Brandon K. Bains, Esq.
                               1301 Solana Boulevard
16                             Building 1
                               Suite 1545
17                             Westlake, Texas   76262
                               214-722-7171
18

 FOR UNSECURED
19 CREDITORS COMMITTEE:        STROOCK & STROOCK & LAVAN, LLP
                               Kristopher M. Hansen, Esq.
20                             180 Maiden Lane
                               New York, New York   10038
21                             212-806-6056

22 FOR ZURICH AMERICAN
 INSURANCE COMPANY:            CLARK HILL STRASBURGER
23                             Duane J. Brescia, Esq.
                               720 Brazos Street
24                             Suite 700
                               Austin, Texas   78701
25                             512-499-3647

1                 APPEARANCES (VIA ZOOM) (CONT'D):

2

3  FOR AD HOC GROUP OF
   SECURED LENDERS:                   DAVIS POLK & WARDWELL, LLP
4                                     Damian S. Schaible, Esq.
                                      450 Lexington Avenue
5                                     New York, New York  10017
                                      212-450-4580
6

7

8  (Please also see Electronic Appearances.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                              INDEX

2

3   WITNESS:                 Direct   Cross   Redirect   Recross

4   (NONE)

5

6
    EXHIBITS:                           Offered    Received
7
    DEBTORS' EXHIBITS
8     Nos. 734-1 through 734-9:            35          44

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          HOUSTON, TEXAS; MONDAY, JANUARY 4, 2021; 9:00 A.M.

2          THE COURT:  All right.  Good morning.  We're here

3   in the Fieldwood Energy case.  It is 20-33948.

4          We've taken electronic appearances.  If you

5   haven't already made your electronic appearance, please do

6   so by going to our website.

7          Before we actually start the hearing, I want to

8   confront the elephant in the room, which is how are we going

9   to procedurally decide whether the claims of the sureties

10  are, in fact, administrative claims?  I don't know whether

11  that ought to be decided in the context of a contested

12  matter where we could go ahead, for example, and extend

13  exclusivity, but subject to the outcome of that whether that

14  should be decided in an adversary proceeding and form the

15  declaratory judgment or just how to go about deciding that.

16         So as you all address it, if you would please

17  address for me the appropriate procedure.

18         I start the hearing skeptical because, as I'm sure

19  you all know, I have on repeated occasions said that it

20  seems to me that the payment of premiums or indemnity

21  obligations with respect to a prepetition risk by a surety

22  is prepetition and it is not administrative.  I may be wrong

23  about that and I need to understand the argument well and I

24  need to be able to rule on it I think in a format where

25  people can have a nice clean appeal of what I'm doing to

1  either side.

2          So I'm going to go ahead and start with the

3  Debtors and hear where they are with respect to the Motion

4  to extend exclusivity, but then I want to move immediately

5  into the sureties about how they want this issue addressed.

6  It's a really important issue.  It needs to be addressed in

7  the proper way.

8          So if I could start by asking whoever's going to

9  take lead for the Debtors to press five star one time on

10 your phone?  And then whoever wants to take the initial lead

11 for the insurance companies to go next.

12         Mr. Perez?

13         MR. PEREZ:  Good morning, Your Honor.

14         Alfredo Perez, on behalf of the Debtors.  I'm

15 joined by Mr. Barr and Ms. Liou and Mr. Carlson.

16         Your Honor, we're here for the hearing on the

17 Motion for Exclusivity.  We only received kind of a group of

18 objections not really to the exclusivity, but requesting

19 relief and related to the surety contracts.

20         As the Court may be aware, on New Year's Eve, we

21 filed a proposed plan.  That Plan is -- and Disclosure

22 Statement -- that Plan and Disclosure Statement.  The

23 Disclosure Statement Hearing is set for hearing on

24 February 3rd and we are requesting -- and we will be

25 requesting at that time, if the Court approves the

1    Disclosure Statement, that the Confirmation Hearing be set

2    around March 17th.

3           And, Your Honor, I do believe that now that we

4    have the Plan on file that -- and we're executing on the

5    Plan, that some of the issues relating to the sureties may

6    fall away.  Having said that, Your Honor, I don't believe

7    that there is any scenario where there won't be issues

8    relating to the sureties.  And it was our understanding and

9    belief that these issues would be teed up in the context of

10   confirmation of the Plan and that's what we had anticipated.

11          To the extent that we want to begin that -- begin

12   those issues more quickly, we're certainly happy to do so.

13   We too share the Court's skepticism as to whether these

14   premiums are administrative expenses considering the fact

15   that nothing that we do today will in any way impact the

16   sureties' obligations to the people who hold the bonds.  But

17   again we're certainly happy to brief the issue in the form

18   of a contested matter, if that's what the Court thinks is

19   the most appropriate way to handle it.

20          We have -- I mean, this has been a reoccurring

21   issue.  It came up at the Second Day Hearing.  There was a

22   long colloquy with the Court and with some of the same

23   people who are on the phone today and it's now come up in

24   this context really not having anything to do with

25   exclusivity but having more to do with the treatment of

1   their -- of what they claim are administrative expenses.  We

2   just don't believe that's the case.

3           So, Your Honor, I think we're happy to be guided

4   by what the Court believes is the most efficient way to do

5   it.  We were thinking of doing it in the context of

6   confirmation.  We thought that would be the most efficient

7   way, but if the Court wants to separate that and deal with

8   it differently, we're certainly happy to do that as well.

9           THE COURT:  But in any event, you're waiving the

10  need for an adversary proceeding to declare the question,

11  right?  You're willing to do it in a contested matter

12  whether it's contested with this, contested as a separate

13  contested matter, contested at confirmation.  You're not

14  going to insist on an adversary proceeding.

15          MR. PEREZ:  Correct, Your Honor.

16          THE COURT:  All right.  From 973-530-2077, who do

17  I have on the phone?

18          MR. GRZYB:  Good morning, Your Honor.

19          Darren Grzyb with Chiesa Shahinian and Giantomasi.

20  I represent four of the sureties at issue, Your Honor:

21  Aspen, Berkley, Everest and Sirius.  We filed the -- I think

22  the first limited objection to the Motion to extend the

23  exclusivity period.  And it is a limited objection because,

24  as Counsel correctly noted, we -- the concept of extending

25  the exclusivity period in and of itself is not something

1   that my four clients object to.  It's just that some of the

2   underpinnings and the factors upon which the Debtors relied

3   in making this Motion are just not accurate, at least is our

4   mind, Judge.

5          The sureties group, as a group, has extended

6   surety credit in the amount of $1.165 billion, that

7   $498 million of that is tied to a decommissioning agreement

8   with Apache, which is a critical part of -- at least in

9   terms -- as far as I can tell -- I'm just very new to the

10  Disclosure Statement -- it's a critical part to their Plan

11  of Reorganization.

12         Now the surety product in itself is a credit

13  arrangement.  We, the sureties, issue surety credit in

14  exchange for premiums and the obligation by the Debtors in

15  this case to indemnify the surety for any losses under the

16  bonds.  This allows them to continue to do their business.

17  It allows them to support the Agreements that they entered

18  into like with Apache, a third party, as part of the deal.

19  It also allows them to fulfill their legal requirement to

20  the Government with respect to their operations.

21         Now in their surety bond program Motion, which

22  they filed on the 2nd day after their Petition, they said

23  that the surety bond program is essential to their business

24  operations.  They obtained relief to continue that surety

25  bond program pursuant to 503(d) as an admin expense.

1          And so I was definitely surprised to receive on

2    New Year's Day an objection to calling the premium an admin

3    expense.

4          Now premium -- I think Your Honor's correct to

5    look at this obligation from a different perspective.

6    Premiums, as in ordinary course of business, are an admin

7    expense.  They acknowledge in a surety bond program order,

8    become due every year.

9          One of my clients, Everest, had renewal premiums

10   in the amount of $400,000 that all came due in October post-

11   petition.  That is an obligation that allows them to

12   continue their work, their operations and it's an obligation

13   that arose post-petition as an admin expense per the surety

14   bond program Order that they requested Your Honor to enter.

15          THE COURT:  Wait, wait, wait.  It arose post-

16   petition or it became due post-petition?  Those are

17   different statements.  I want to be sure I understand it.

18          MR. GRZYB:  Well, they could have -- I would say

19   it arose post-petition because they could have replaced the

20   surety market with Everest post-petition.  That's what the

21   surety bond program allowed them to do so --

22          THE COURT:  How did it arise -- I understand how

23   it became due post-petition.  How did it arise post-

24   petition?  Isn't it a -- because I may misunderstand the

25   facts.

1          I thought it was a prepetition credit arrangement

2    like you described and amounts due under a prepetition

3    credit arrangement ordinarily don't arise post-petition.

4    They ordinarily have arisen prepetition and that's a big

5    distinction to me.

6          MR. GRZYB:  Well, Your Honor, this is renewal.  We

7    didn't issue bonds -- well, we did issue bonds prepetition,

8    but the renewal arose --

9          THE COURT:  Did they ask you to renew?

10          MR. GRZYB:  Well, the bonds themselves self-renew

11   so --

12          THE COURT:  They self-renew because of a

13   prepetition arrangement.  That's why I'm having trouble

14   understanding how they arise post-petition.  It's all --

15   that's like saying that you write into a promissory note,

16   "This note is due on January the 4th of 2021 and if you

17   don't pay it, we're going to automatically renew the note

18   for six months," and therefore we suddenly have a 364 debt.

19   I mean, I want to be real about what we're doing here.

20          I understand the importance of the bonds, I think.

21   That may make them administrative, I don't know, but I don't

22   think it has to do with when the premiums are due.

23          MR. GRZYB:  Well, Your Honor, we are -- I think

24   you're astute to say we are coming towards some sort of

25   dispute with the Debtors about how the sureties are going to

1  be dealt with as a group and individually because our

2  various risks are spread out through the various buckets

3  that they're trying to -- or they are separating all these

4  assets.  Now --

5          THE COURT:  How do you want to resolve that?  Do

6  you want to resolve it in a contested matter?  Do you want

7  to resolve it in an adversary proceeding?  How do you want

8  to actually resolve this dispute?  I understand it's a live

9  dispute and one on which you need a resolution.

10          MR. GRZYB:  I think that the first instance,

11  Your Honor, would be to get a clear answer from the Debtors

12  about how they intend to handle things like premiums for the

13  continued extension of surety credit, how -- we don't -- my

14  clients don't have claims.  So other than attorney's fees,

15  which are recoverable under the Indemnity Agreements, we

16  don't have loss indemnification claims.

17          How does the resulting Debtor entities intend to

18  deal with the indemnification obligations that will be owed

19  to the sureties post-plan confirmation?  I'm not --

20          THE COURT:  So do you want to resolve it as a

21  contested matter as part of confirmation, which is what

22  Mr. Perez has proposed because that's where that will be

23  determined how they intend to do that and how we approve

24  doing it and how you object to doing it or do you want to

25  resolve it in an adversary proceeding in advance of that or

1    a contested matter in advance of that?

2              MR. GRZYB:  I think it may make sense for the

3    surety group to speak with the Debtors to see if we can

4    clarity on those issues and agree as a group how the

5    resolution -- how that problem should be resolved.  I don't

6    think I have an objection one way or the other to do it as a

7    contested matter or an adversary proceeding, Your Honor, as

8    long as our ability to object to the Plan of Reorganization,

9    which I'm not even sure we're in a position as a group or

10   individually to make that objection because we just received

11   this Disclosure Statement where collectively --

12             THE COURT:  Well, confirmation objections aren't

13   due and I haven't read what they wrote, but let me just take

14   a couple of hypotheticals.  Let's assume that they treated,

15   as you do with the -- as a prepetition credit agreement

16   only.  At that point, the Plan is required to provide the

17   resolution of the prepetition credit obligations so it would

18   have to be resolved in there and it would have to be

19   resolved with clarity and you would have an opportunity to

20   object at confirmation unless they leave unimpaired.

21             The second possibility is: they treat it as an

22   executory contract.  If it's an executory contract, again it

23   has to be dealt with with clarity and whether they assume or

24   reject, you'll have to opportunity to deal with it at

25   confirmation.  If they reject, presumably you're going to

1  have this large maybe prepetition unsecured claim and maybe

2  you're telling me part or all of it is post-petition

3  administrative and that will depend on whether it's treated

4  as an executory contract.  If you're right it's a credit

5  agreement, then it probably is not an executory contract.

6        I don't know what the third option is so that it

7  wouldn't get resolved at confirmation.  And if you're happy

8  resolving at confirmation, that works.  It's just your

9  raising it now.  And if you want it resolved by an adversary

10 proceeding, I'm prepared to allow you to deal with it that

11 way.  So I just -- I need to know what your client wants,

12 not what -- I heard what the Debtor wants.  They want to

13 wait, they want to do deal with at confirmation.  I want you

14 know what you want.

15        MR. GRZYB:  Well, I'm not sure, Your Honor, I was

16 prepared to answer that question because our objection was

17 limited to -- and I would need to discuss it with my various

18 clients and likely the surety group as a group.  I can see

19 some benefits to doing it as an adversary proceeding and

20 then having it resolved that way.

21        THE COURT:  Do you want me to give you two weeks,

22 is that long enough to decide?

23        MR. GRZYB:  Judge, I would appreciate that.  Thank

24 you very much.

25        THE COURT:  Is that enough time though?

1          MR. GRZYB:  And the two weeks would entail, Judge,

2    that I would -- we, as a group, would come to Your Honor and

3    say we want to do this either through plan confirmation

4    objection or by way of adversary proceeding or --

5          THE COURT:  I'll make it easier than that.  I'll

6    give you two weeks to file an adversary proceeding.  If you

7    don't, we'll resolve it at confirmation if you want.  I

8    don't want make you come back and just spend money.  It's

9    your choice.  If you want an adversary proceeding -- unless

10   I hear something pretty strenuous from somebody that's not

11   the right thing to do, I'm just going to give that to you.

12   And if you don't, it really sounds like it gets resolved as

13   a contested matter at confirmation.

14          I mean, maybe there's some other alternative.  I'm

15   not going to preclude you from doing something, but I think

16   giving you two weeks to commence an adversary proceeding --

17   if you need more time, just tell me.  I'm trying to

18   accommodate what your client wants.  I do want to get it

19   resolved in the right way.

20          MR. GRZYB:  That makes sense to me, Your Honor.  I

21   appreciate that.

22          THE COURT:  All right.  Mr. Eisenberg I know

23   wanted to address this question.  Mr. Eisenberg, go ahead

24   please.

25          MR. EISENBERG:  Thank you.  Good morning,

1    Your Honor.  Happy New Year.

2              THE COURT:  Good morning.  Happy New Year to you.

3              MR. EISENBERG:  And I hope everybody's doing very

4    well and will continue to do so.  We join into the limited

5    objection as well to exclusivity again because of the

6    factual underpinnings that were the basis for it.  Some of

7    those have been removed by the filing of the Disclosure

8    Statement and Plan.  There are still significant holes in

9    the information that's been provided.  There's a whole list

10   of schedules to be provided.

11             We also on information and belief and have looked

12   at the Monthly Operating Reports and see that there has been

13   a large accumulation of cash by the Debtors and have

14   significant concerns with regard to current and accruing

15   decommissioning obligations and not having very much

16   transparency on that right now and how that all fits in to

17   the picture obviously, what is an administrative expense to

18   the Estate from the standpoint from decommissioning, what

19   rights does that give to the sureties themselves when the

20   Estate has an administrative expense that's currently due

21   and doesn't perform.  And those are things that obviously we

22   joined in to get more transparency on and to gather more

23   information.

24             So when Your Honor said that we can file this

25   adversary in two weeks, I'm not sure that that's enough

1   time.  Certainly we could try to get together and figure

2   that out whether that's the appropriate way.  Obviously we

3   could come back and tell Your Honor, "This is what we've

4   tried.  We need to figure out some further information and

5   we need to get back together to decide what to do."  I'm not

6   sure that all of the sureties themselves will take the same

7   position, Your Honor, and so that is obviously a question,

8   so that's why we joined in to be heard.

9        We have been making progress with the Debtors and

10  I do want to congratulate the Debtors on the efforts that

11  they've made so far to move this forward.  They had an

12  original deadline for putting a revision to the Apache term

13  sheet together, that I think they've taken twice as long to

14  do that.  It's almost five months.  So this is not an easy

15  question to tackle, Your Honor.

16       And so seeing the Disclosure Statement, the

17  revised Apache term sheet, these extensive Schedules that

18  they have of the properties, the breakdowns that they have,

19  this is going to require significant analysis and each of

20  the sureties may or may not have the same position on that

21  depending upon which of the silos they end up in,

22  Your Honor, so we are going to try to endeavor to do that.

23  So we do applaud the Debtors on getting that together

24  because obviously it has proved to be a significant task for

25  them.

1          We also are engaged in voluntarily sharing
2    information, getting information from them.  We gave them a
3    draft 2004.  We've got a written agreement with them and
4    they are producing information to us right now.  It is
5    rolling out to us and so we did not have that information
6    and that agreement at the time that we joined in on the
7    limited objection to the exclusivity, so just filing that
8    joinder has helped us to continue to move the ball forward
9    here, but I think that we're going to need a lot more
10   information here and a lot more financial analysis and
11   breakdown before we're going to be able to kind of really
12   come together on that.
13          And just the fact that it took the folks that have
14   all that information five months to try to put something
15   together that has these -- still is wanting on the financial
16   analysis tells you that this is not an easy task,
17   Your Honor.  And your past experience in other cases will
18   also inform Your Honor that this takes quite some time to
19   kind of put all these pieces together because when you do --
20   you put assets in one company and you move them out of
21   another, you expose certain people to certain expenses but
22   not others.  It does change the way things work.
23          Some of the properties and some of the companies
24   are producing revenues.  We need to figure out how they're
25   deconstructing their various subsidiaries into the new silos

1   so we can trace the funding to see what that means with

2   regard to the transactions that are going on and so there is

3   a lot of effort that has to go on.

4          And so I think the answer to Your Honor's question

5   is there has to be some process to decide this, but what the

6   right one yet is, I don't know just coming back to work on

7   the 4th of January having had the files over the weekend.

8          THE COURT:  Mr. Eisenberg, most of what you have

9   described deals with whether the functioning of the Plan is

10  rational and appropriate and not does impair people.  It

11  does not deal with the more fundamental issue of whether

12  these claims are administrative or not from a declaratory

13  point of view.

14         Do you think there are factual issues that we need

15  to resolve or is this going to be decided -- that narrow

16  question, is it administrative/non-administrative with

17  respect to a bond -- a surety bond for P&A work.  I don't

18  think that's going to be a factual-based issue.  I think

19  it's a law question.  And I want to know if your -- if the

20  facts that you have described that you need to know will

21  affect the outcome of the it is admin, it is not admin

22  question.

23         MR. EISENBERG:  Well, to the extent that there is

24  post-petition credit being extended to the Debtors, that is

25  not a prepetition extension of credit and so premiums for a

1  post-petition extension of credit I would believe would

2  clearly fall under an administrative claim.

3         THE COURT:  And if you're telling me that your

4  client is issuing a new bond, then I don't know what the

5  defense to that argument you're making would be.  But if

6  it's leaving a credit extended for a prepetition bond, that

7  is a different question and one for which declaratory relief

8  may be appropriate.

9         MR. EISENBERG:  And whether the bond extends to a

10 new period of liability that didn't exist prepetition is

11 going to be a fact question.  What the Debtors are doing

12 with the properties that are covered by the bonds is going

13 to be a factual question.

14        THE COURT:  But let's take that example.  What the

15 Debtors are doing with -- let's assume that they are doing

16 some P&A work or not doing some P&A work, either one.

17        How does that affect the question of whether your

18 client's claim is an administrative claim or not?  It may

19 affect the magnitude of the claim by reducing it if they're

20 doing P&A work, but how does it affect whether it is admin

21 or not admin?

22        MR. EISENBERG:  How does it affect whether my

23 claim is admin or not admin?

24        THE COURT:  Right.

25        MR. EISENBERG:  Because on a post-petition basis,

1  we're entitled to additional collateral, we're entitled to

2  additional protections going forward under our Agreements

3  with regard to --

4          THE COURT:  And why does that affect the question

5  of whether it is an admin or a non-admin claim?

6          MR. EISENBERG:  Because we don't know whether

7  they're going to take these properties and put them into a

8  new company and the new company's going to want to assume --

9  try to work out a financial --

10          THE COURT:  That's a confirmation --

11          MR. EISENBERG:  -- accommodation with us.

12          THE COURT:  No, that's a confirmation question.

13  We already dealt with that.  I want to know whether the

14  claim itself is admin or non-admin.  Seems to me a pure

15  question of law.

16          MR. EISENBERG:  I don't think so because we have

17  rights of subrogation against the Debtors, against other

18  people.  We have rights that -- other rights.  We have to

19  analyze that on a property-by-property basis, Your Honor,

20  and that's going to take a long time because it's not one

21  surety and it's not one bond and it's not one property

22  and --

23          THE COURT:  So let me take -- you're telling me

24  you have rights to subrogation.  Again let me assume that's

25  accurate.

1          How would -- what facts would determine whether

2     those subrogation rights are prepetition or administrative?

3     Because subrogation doesn't elevate you from -- it only

4     elevates you into whatever subrogation rights exist right?

5     You don't get a different status other than maybe the status

6     of the person whom you subrogated.

7          MR. EISENBERG:  But if the Debtor had an

8     administrative obligation to do P&A and our --

9          THE COURT:  Okay.

10         MR. EISENBERG:  -- bonds are exposed to that --

11         THE COURT:  Correct.

12         MR. EISENBERG:  -- then why wouldn't we have a

13    claim -- an administrative claim for doing that?

14         THE COURT:  Maybe you do, but isn't that a law

15    question?

16         MR. EISENBERG:  Well, I'm not sure.  I have to

17    look, Your Honor.  I don't know what the Debtors are

18    planning on doing here.  I don't know enough yet.

19         THE COURT:  Okay.

20         MR. EISENBERG:  I got a list of all these

21    properties they want to abandon.  I don't have any

22    transparency into their current and not-done plug and

23    abandonment.  I don't know how this whole thing's getting

24    divided up yet.

25         THE COURT:  Okay.

1         MR. EISENBERG:  And to answer the question on how

2  to proceed procedurally without understanding that, getting

3  a full opportunity to understand that, I don't think we're

4  getting a fair opportunity here.  They've had two and a half

5  months beyond the two and a half months they gave

6  themselves.

7         THE COURT:  Fair enough.  Let me hear from

8  Mr. Bains.  Mr. Bains?

9         MR. BAINS:  Good morning, Your Honor.

10        Brandon Bains on behalf of Liberty, Travelers,

11  Hanover and XL.  Happy New Year to you.  I guess I would

12  (indiscernible) a lot of what was already said so I'm not

13  going to belabor those points.  Obviously when we filed

14  these objections there had not yet been a plan and

15  disclosure statement.  Like everyone else, I'm trying to get

16  done with my black-eyed peas, New Year's Day and understand

17  what is going on in the Plan.

18        I guess suppose agree with Mr. Perez to some

19  extent that if there needs some answers, then maybe all of

20  this is academic and we never get to the ultimate question,

21  but I would also say there does need to be transparency to

22  also with Mr. Eisenberg.  When we started these process, the

23  Debtors said, "Hey, we want to ask the Court for authority

24  or pay premiums."  Well, now it appears there was an

25  intention to pay premiums and if that's the case, just tells

1  us that.  We can go fight about it.  You'll give us an

2  answer.

3          And I think it's the same thing here whether with

4  respect to premiums or indemnity or what's going to happen

5  to all of these bonded assets, but there's a lot of talk in

6  the Plan and Disclosure Statement about sureties and bonds,

7  but there's no actual information about what's going to

8  happen to them.

9          To be fair, we just got (indiscernible) to have

10  emails prepared to Mr. Perez that will go out today asking

11  these questions.  I'm hopeful I'll get answers and I'm

12  hopeful I don't have to come back and say anything else, but

13  we need that stuff.  And if they're going to tell some of

14  these entities are going to take care of premiums and

15  reaffirm indemnity and all of that, then it won't matter.

16  We just don't know.

17          Mr. Eisenberg's point if we can get answers within

18  the next two weeks, that's wonderful and maybe it'll take

19  care of it.  I'm not sure that we can and we feel just a bit

20  behind the eight ball given the timing of all of this and

21  when these things have been dropped and otherwise.  I think

22  some of these --

23          THE COURT:  What factual issues will assist us in

24  determining whether it is administrative or non-

25  administrative in nature?

1          MR. BAINS:  Some of the factual issues go to what
2    those intentions for some of these debts.  I understand
3    certainly, Your Honor, where you're coming from on the
4    prepetition and post-petition.  I've heard it in other cases
5    and you've been very clear about it, but certainly the
6    Debtors needs these to operate and if their intention is not
7    to honor their obligations whether they're premium
8    obligations or they're underlying obligations under the
9    Plan, the bond could be culled (indiscernible), the bond
10   could be cancelled, the bond could not be renewed depending
11   on all the different specific bonds out there.  I certainly
12   don't speak for every surety, but there are sureties that
13   have rights (indiscernible) here and now or not renew or
14   whatever the terms of the bonds allow.

15          Now in the ordinary course, the Debtors don't want
16   that.  They want to bonds to not renew.  They need these to
17   go forward, but of course they can't get credit for free.
18   Wouldn't allow that with any other lender and it shouldn't
19   be the surety either.

20          THE COURT:  All right.  And I didn't ask the
21   others.  Let me ask you.

22          Do you actually oppose the extension of
23   exclusivity or you just want to be sure I'm getting focused
24   on this question?  It looks like you want to be sure we get
25   focused on this question.

1          MR. BAINS:  Are you asking me, Mr. Bains,

2   Your Honor?

3          THE COURT:  Yes, sir.

4          MR. BAINS:  My sureties do not oppose exclusivity.

5   They join all of the other issues surrounding premium, flow

6   of information and just the extent to which the Debtors are

7   saying that's a basis for exclusivity.  We disagree since

8   payments are not being made in the normal course.

9          THE COURT:  All right.  Who else wants to address

10  this question?

11         MR. BAINS:  Can you please repeat that?

12         THE COURT:  Does anyone else have anything you

13  want to talk to me about on the exclusivity issue or the

14  surety bond issue?

15         MR. BAINS:  Your Honor, I do not.

16         THE COURT:  Thank you.  Anyone else?  From

17  646-468-7792, who do we have on the line?

18         MR. HANSEN:  Good morning, Your Honor.  This is

19  Kris Hansen with Stroock and Stroock and Lavan, on behalf of

20  the Official Committee of Unsecured Creditors.

21         THE COURT:  Mr. Hansen, good morning.

22         MR. HANSEN:  Good morning.  Your Honor, I just

23  wanted to make brief comments with respect to the Plan and

24  Disclosure Statement and the plan process and the

25  exclusivity request.  The Committee does not have an

1   objection to the relatively short exclusivity extension

2   sought by the Debtors.  We recognize that the case needs to

3   move forward and we appreciate that the Debtors haven't

4   asked for an extraordinary length of time here.

5           However we wanted to make the Court aware that the

6   Committee really hasn't been involved in the formulation and

7   the negotiation of the Plan.  The Debtors have obviously

8   invited us along with the first lien lenders to negotiate

9   from this point forward.  And we did get a little bit of a

10  preview on the document before it was filed.  But for lack

11  of a better way to describe it, the Committee feels a bit

12  like the Plan was negotiated and dropped on them with an

13  invitation to participate going forward.  We're having --

14  that's not uncommon in cases, but from the Committee's

15  perspective, we would have appreciated having a better

16  opportunity to work with the Debtors and the lenders to get

17  to the point where we are now.

18          And our perspective is that is a $5 million

19  recovery of the class of claims that they've identified in

20  the Plan that it significantly undervalues the unencumbered

21  assets, which we've discovered that there are more than a

22  nominal amount of those.  And we also view the Plan as

23  antagonistic towards essentially every case constituent

24  other than the first lien lenders and it uses, in our view,

25  an artificially low plan value, it balloons the general

1   unsecured claim class and it gives them an initial recovery.

2          It also sets up, at least from our perspective, a

3   potential dispute with the governmental lessors and

4   regulators regarding abandoned property liabilities and the

5   assumption of existing P&A liabilities.  And from our

6   perspective, it also doesn't deal adequately with the M&M

7   liens that have been filed on the Court's Docket.

8          So while we plan to negotiate as best we can going

9   forward to carry out our fiduciary duties, we did want to

10  make the Court aware that if something doesn't change in a

11  material way, this is going to be a contested process on the

12  way to confirmation on behalf of the Committee.

13          THE COURT:  Mr. Hansen, thank you.  Look, I --

14  some of the lawyers that have been arguing this on behalf of

15  the lenders have worked extensively in other cases before me

16  to productively resolve P&A obligations in a very hard-

17  fought well way.  These are really difficult issues.  And as

18  I listened -- and it sounded like I was arguing with

19  Mr. Eisenberg -- he's setting himself up to do that again.

20  And I am more than happy if there's a way to get these

21  matters resolved by working through really hard facts.

22          I think that is a separate question from whether

23  the rights under the surety bond are administrative or not

24  administrative.  Those rights can be vindicated in a number

25  of ways.  One is they can be vindicated at confirmation

1  because if they are, in fact, administrative claims and the

2  Debtor is unable to pay the administrative claims, then

3  confirmation would simply be defeated.  We would end up

4  making a fact finding.  That fact finding or law finding

5  whatever it is would end up being appealable.  Another way

6  is it could occur through an adversary proceeding and that

7  adversary proceeding could drag out forever and could delay

8  confirmation.

9          Here's what I think I'm going to do and then I'm

10  going to announce this and then I want to hear objections to

11  it.  First, I'm going to extend exclusivity as requested by

12  the Debtor.  I don't think that the objections really go to

13  whether we ought to extend exclusivity.  They go to whether

14  we ought to get the case moving and we're going to get the

15  case moving.

16          Second, I want to set a deadline subject to

17  objections I'm going to hear of January 20th for the filing

18  of an adversary proceeding where we would make summary

19  judgment rulings prior to or at the Confirmation Hearing so

20  an expedited adversary proceeding.  If an adversary

21  proceeding is commenced by January 20th, cross-motions for

22  summary judgment would be due not later than February the

23  10th and then we would have arguments on the cross-motions

24  for summary judgment on solely the question on whether the

25  obligations are administrative or not administrative and

1  those would be -- I'm going to get you a date right now --

2  on February 24th, at 9:00 o'clock in the morning.

3          That will not preclude the filing of an adversary

4  proceeding at a later date.  You're just not going to get a

5  ruling on your adversary proceeding prior to confirmation.

6  It's going to have to be a part of confirmation ruling.  I

7  don't see a reason why we can't rule on this as a contested

8  matter, if that's the way that the parties want to tee it

9  up, because it's a matter that will arise in a contested

10 proceeding and that is is the Plan confirmable or not

11 confirmable?

12         But I also see some benefit to people having the

13 discrete issue and if they want that out there, they -- I'm

14 going to give them the right to file this expedited

15 administrative -- excuse me -- expedited adversary

16 proceeding so that we can get things resolved quickly.

17         Let me hear objections to that sort of

18 comprehensive ruling.  In other words, it is not a deadline

19 by which you have to file an adversary proceeding.  It's

20 only a deadline by which you have to file an adversary

21 proceeding if you want your really quick answer.  Otherwise

22 take your time and we'll do it that way, but it may get

23 resolved after confirmation.

24         And obviously some things will get resolved at

25 confirmation.  I could foresee, for example, a provision in

1  a confirmation order that says they'll be paid as admin

2  claims if they are admin claims and we have enough money to

3  pay them with, but they'll be paid as non-admin claims if we

4  win the adversary proceeding.  So you can have a toggle at

5  confirmation.  Let me see who objects to that as the way

6  that we will proceed.

7          Mr. Grzyb, go ahead please.

8          MR. GRZYB:  Your Honor, I don't have an objection

9  to the concept that you've laid out.  And I know I

10 previously indicated I'd be okay with two weeks, which is

11 essentially what Your Honor is ordering.  And this goes to

12 Mr. Eisenberg's point previously, which is we could get to

13 January 20th, not have the additional information that we

14 need from the Debtors, be in a position where we file the

15 SJ Motions and it ends up that we get the information after

16 the fact and it was all for naught.

17         So because some of us don't have an objection to

18 the Plan or some of us are going to be told that we're being

19 treated in a way that makes it not necessary for us to go

20 forward with this battle, the -- so I would ask -- request

21 if the Court had more time after January 20th.

22         THE COURT:  You can have as much time as you want.

23 I just don't know how I finish if you don't get it filed by

24 the 20th.  And you can argue it at confirmation is fine with

25 me.  But in terms of having an adversary proceeding

1   resolved, that's -- I'm trying to give you an opportunity

2   for expedited, not a normal adversary proceeding.

3           And does that inflict any injury on your client?

4           MR. GRZYB:  I don't think so, Your Honor.

5           THE COURT:  All right.  Mr. Eisenberg?

6           MR. EISENBERG:  (No audible response).

7           THE COURT:  I can't hear you, Mr. Eisenberg.  You

8   may have your own line muted.  Let me see.  It looks like

9   you -- all right.  Mr. Eisenberg, go ahead.

10          MR. EISENBERG:  Thank you, Your Honor.  I

11  accidentally hung up earlier and had to redial in and so I

12  apologize to Your Honor.

13          THE COURT:  You missed some interesting stuff,

14  Mr. Eisenberg, but your line didn't get poured out yet so it

15  was --

16          MR. EISENBERG:  No, I gotcha.  I appreciate that.

17  I dialed back in pretty quickly so I can hear everything

18  else.  So listening to Your Honor's suggestion, to the

19  extent that we believe that there are discrete legal issues

20  that would entitle a surety to administrative expense

21  treatment for a premium Your Honor has provided --

22  suggesting a procedure for us to file that.  To the extent

23  that someone contests that and says, "No, you're not

24  entitled to that," that doesn't preclude us from raising

25  factual issues in response to a cross-motion and I just

1   wanted to confirm that with Your Honor.

2         THE COURT:  That's right.  I think that -- I do

3   think that the legal issue is a really interesting one.  You

4   know I have a predisposition about it, but you've also seen

5   me change my predispositions with good argument frequently.

6   So I'm just -- I don't want to hide that from people.  But

7   you have the right to litigate it and I need to make a more

8   formal decision than my predisposition.  And even I rule

9   again you, you need the ability to appeal it and that's all

10   I'm trying to set up there.

11         MR. EISENBERG:  It's just a lot to do in a short

12   period now that we've got the Plan, Your Honor, now that

13   we're finally getting an information flow from these folks

14   and we appreciate that very much.  Again we think that there

15   has been progress made since we filed the limited objection

16   and so we're not really vehemently objecting to the

17   extension of exclusivity.  That obviously is not the reason

18   we were heard today.

19         We will -- I will talk to my clients, I'll talk

20   with the other sureties.  I'm not sure that 16 days is

21   enough time for us to tee up an issue of this importance,

22   but I do understand Your Honor's providing us with an

23   opportunity to try to get clarification for it prior to what

24   is currently being suggested as the confirmation date.

25         THE COURT:  I don't think it -- I guess the main

1   thing I want to be sure of, Mr. Eisenberg, is I don't think

2   it hurts your client.  It's not going to take away any

3   confirmation objection that you would have and it won't take

4   away your right to file an adversary proceeding.  I'm just

5   trying to give you the ability to file an adversary

6   proceeding with a quick answer on the law question.

7           Am I hurting you all in any way?

8           MR. EISENBERG:  Only that I think I would like a

9   little bit more time to even get a law summary judgment teed

10  up than 16 days because we've got a whole varied group of

11  sureties that we have to deal with and it's not as easy as

12  just one person putting it together.  And there are

13  different positions for the bonds.  The bonds are not all

14  the same, Your Honor.

15          THE COURT:  Right.  Okay.  Thank you.  Mr. Bains?

16          MR. BAINS:  No objection, Your Honor.  And I can

17  echo what Mr. Eisenberg and Mr. Grzyb have said.  I would

18  note we do have different positions here.  Certainly if we

19  could get this to fit nicely into one adversary, I think

20  that makes sense, but we can talk amongst the surety group

21  and perhaps circle back with you if we think there are

22  multiple questions or multiple adversaries, but that's more

23  of a minor issue that I think we can handle down the road if

24  the group elects to move forward with this procedure.

25          THE COURT:  Mr. Perez?

1        MR. PEREZ:  Your Honor, only a couple of items.
2   Number one, obviously the Court has ruled and we thank you
3   for the ruling.  We did file a witness and exhibit list.
4   Mr. Dane is present and would be --
5        THE COURT:  I haven't ruled.  It was a suggested
6   ruling to which I'm taking objections before I rule.
7        MR. PEREZ:  All right.  Well, in that case,
8   Your Honor --
9        THE COURT:  I'm not going to stop you from putting
10  on evidence and stuff like that.
11       MR. PEREZ:  I just -- we did have Exhibits 1
12  through 9 including Mr. Dane's Declaration.  Mr. Dane is
13  present.  We would move those as document -- as support for
14  the ruling.  It's Docket No. 734-1 through Docket No. 734-9.
15       THE COURT:  Before I get there, do you have any
16  objection to the procedure of allowing but not mandating an
17  expedited targeted adversary proceeding?
18       MR. PEREZ:  Your Honor, we have no objection to
19  any procedural mechanism that allows us to be able to meet
20  our burden at a scheduled confirmation hearing with respect
21  to our ability to confirm a plan let's say two and a half
22  months from now on March 17th.  So I think this is a good
23  way of doing it, but what I don't want is then for somebody
24  to say, "Well, you can't then confirm a plan because we
25  haven't gone through all of this."  We haven't gone through

1   the -- they raised the factual issue and we're still

2   litigating that.  I just don't want that to be an impediment

3   to us being able to put on our case March 17th and be able

4   to try to persuade the Court to confirm the Plan.  That's my

5   only concern.

6           And, Your Honor, obviously at the appropriate

7   time, we'll talk about our liquidity, we'll talk about all

8   of those other items that were raised on information and

9   belief.  This company -- as the Court is aware, there have

10  been multiple, multiple storms in the Gulf this summer which

11  have obviously impacted our operations.  There's been issues

12  related to the COVID-19.  So we do -- it did take us a while

13  to reach agreement to get this on file working very, very

14  hard with Mr. Schaible and Mr. Suris (phonetic) and we're

15  definitely committed to continuing that work, but we don't

16  -- this is going to be difficult.  I mean, the whole

17  situation is difficult just because of the nature of the

18  situation, Your Honor.

19          THE COURT:  Yeah, I don't think I'm going to blame

20  you much for building cash up in a bankruptcy case.

21          From 512-779-3367, who do I have?

22          MR. BRESCIA:  Good morning, Your Honor.  This is

23  Duane Brescia.  I'm dialed in on video as well as the

24  telephone.

25          Can you hear me okay?

1          THE COURT:  Mr. Brescia, good morning.

2          MR. BRESCIA:  Yes.  Thank you, Your Honor.  I

3   represent Zurich American Insurance Company.  We're another

4   one of the sureties.  I'm not going to repeat what's been

5   said, but along the lines of Mr. Perez trying to make sure

6   he's not going to be sandbagged somewhere in this process

7   with the outline that you suggested, I just wanted to get

8   clarification as well that the sureties will have those same

9   benefits meaning if there is an adversary proceeding, to

10  rule on a legal issue prior to confirmation, that we're not

11  precluded from raising similar issues at confirmation

12  because I don't want to have a situation where several

13  parties including the Debtor are saying, "That's not a

14  confirmation issue.  We're dealing with it in an adversary

15  over here and it's going to be dealt with that way."

16          In addition, I do see an issue where -- even if

17  it's an administrative claim issue does not necessarily have

18  to be resolved prior to confirmation.  I mean, there still

19  can be a determination that there are administrative claims,

20  I guess, post-confirmation based upon what the Confirmation

21  Order says.  So all the --

22          THE COURT:  Mr. Brescia, let me be sure I answer

23  that because I think I know what you're asking and if not, I

24  want to re-ask it because I want to be sure everybody knows

25  where they will sit.  If you file a motion for summary

1  judgment and they file a cross-motion for summary judgment

2  and I rule that it is an administrative claim, I'm not going

3  to allow them at confirmation to argue I got it wrong in the

4  adversary proceeding.  They're going to be bound by that.

5        If it rule it is not an administrative claim, you

6  can raise the objection, which will then get overruled so

7  you can have it on appeal.  But if you've lost on the

8  adversary proceeding, you don't get to relitigate it over in

9  the main case.  You simply get to take it up that I was

10 wrong over on Point A and therefore I'm repeating the error

11 on Point B.

12       If there are factual issues that haven't been

13 resolved, they may or may not need to get resolved in the --

14 as part of confirmation.  The fact that they are also part

15 of the adversary proceeding isn't going to stop.  But if

16 there's a ruling in the adversary proceeding, I'm not going

17 to revisit it after I've ruled again in the main case no

18 matter who wins or loses.  That just needs to get appealed.

19 I want to be sure I can give you a complete answer to your

20 question so that everybody knows where they'll stand.

21       MR. BRESCIA:  Yeah, thank you, Your Honor.

22 Certainly, I mean, you're not going to rule twice on the

23 same issue.  I just want to make sure -- there's going to be

24 a lot of issues for the sureties surrounding something as

25 minute as your past-due premiums are administrative claims.

1  There are other issues that we may want to raise at

2  confirmation that don't make sense in the adversary, but

3  like I said with this large group of sureties --

4          THE COURT:  That's right.

5          MR. BRESCIA:  -- we may have different views on

6  that, yeah.

7          THE COURT:  But let me give you an example of that

8  kind of an issue, at least in my mind, is let's assume that

9  over in the adversary proceeding, we rule that the claims

10 are not administrative, but then the Debtor and you treat

11 this as an executory contract that the Debtors want to

12 assume.  Well, then it's not going to matter whether it was

13 administrative or not.  If they assume an executory

14 contract, they've got to perform under it, sure within a

15 reasonable period of time.  So if that's the kind of issue

16 that you want to be sure you got preserved, it would be

17 preserved.

18         I'm not saying by the way in this colloquy -- I

19 just want it clear -- that these are or are not executory

20 contracts.  I'm not crossing that bridge today.

21         Is that what you're asking to preserve, that kind

22 of issue?

23         MR. BRESCIA:  Yeah, Your Honor, that might be one

24 of the issues.  I can't on this hearing today think of

25 everything that the sureties may want to raise at

1  confirmation, but as long as --

2          THE COURT:  Right.

3          MR. BRESCIA:  -- you know, if there's a minute

4  issue being treated in any adversary, whether it's ruled on

5  before confirmation or it's the long version that happens

6  later that we just need some resolution on, that we're not

7  precluded from raising anything else related to some of

8  these issues.  So you probably have cleared that up with

9  your most recent statement.

10         THE COURT:  All right.  Thank you, sir.

11         Mr. Schaible I know wanted to address matters.

12 Let me see what he has to say.  Mr. Schaible, I got you up

13 early this morning, right?  Good morning.

14         MR. SCHAIBLE:  Your Honor, I was up very early.

15 We've got a COVID dog so I'm up even earlier these days in

16 this case.  So, Your Honor, Damian Schaible of Davis Polk

17 for the Record.

18         Can you hear me okay?

19         THE COURT:  You're actually a little muffled.  I

20 don't know if we can do anything to get your end a little

21 better or not.

22         MR. SCHAIBLE:  Yeah, one second, Your Honor,

23 please.  Your Honor, is that better?

24         THE COURT:  No, you remain a little bit muffled.

25         MR. SCHAIBLE:  Hold on.  Is that better?

1          THE COURT:  That is better.  Thank you.

2          MR. SCHAIBLE:  Okay.  Thank you.  Sorry,

3    Your Honor.  For the Record, Damian Schaible, of Davis Polk,

4    on behalf of the Ad Hoc Group of Secured Lenders.

5    Your Honor, as you know from the outset of the case,

6    the secured lender group that we represent has about

7    75 percent now of the prepetition first lien -- first out

8    facility, which is what people are calling the "first lien

9    facility" -- I'm sorry -- the first lien term loan facility

10   which is what people are calling the "first lien facility,"

11   which is distinct from the FLFO, the first out facility,

12   which is a separate group that we're working with -- and

13   28 percent of the second lien term loans and about

14   97 percent of the DIP.

15          Your Honor, I rise only to agree with Mr. Perez on

16   a couple of points and just make sure that Your Honor -- it

17   sounds like Your Honor has completely gotten it, but just to

18   reiterate.  We've been working very hard over the past

19   number of months.  It has taken longer than the initial

20   milestones would have suggested, but we've been working very

21   hard on a rather complex situation in order to figure out

22   what to do with the liabilities and how to save the business

23   as best we can and we've been working with the Debtors

24   extensively and with other parties including Apache and the

25   first -- the FLFO lenders and a number of others as quickly

1   as we can.

2          In order to keep the ball rolling, Your Honor, we

3   got this Plan on file.  Literally we were negotiating

4   throughout the New Year's Eve and into New Year's Day in

5   order to get a version of the Plan that we could get on

6   file, but we recognize, Your Honor, that we still have work

7   to do.  There's work to do with the sureties and there's

8   work to do with the Creditors' Committee.

9          I cannot promise this Court that we're going to

10  reach final resolution with everyone or even anyone, but we

11  can obviously represent to this Court -- and Your Honor

12  knows that this is the way that we do business -- that we

13  are going to do our best to find common ground wherever we

14  can.  And we do believe that unfortunately this is a

15  situation where that common ground may be tough in some

16  circumstances, but we are going to do our best, Your Honor.

17  And we're going to bring to you a confirmation -- a

18  requested confirmation of a plan that's going to have as

19  much consensus as we can build between now and then.

20         And so I appreciate Your Honor being willing to

21  move forward.  Obviously the Debtors seeking exclusivity is

22  kind of I would hope an obvious, but with respect to keeping

23  the Confirmation Hearing that Mr. Perez mentioned, whatever

24  procedure is used to address the administrative claim

25  arguments by the sureties we just need to make sure that it

1   doesn't stop us from being able to get this Plan confirmed

2   because this is not an situation that's going to be well

3   sitting for a long period of time.  We're really working as

4   fast as we can to reach resolution and then bring it to

5   Your Honor and we hope to bring you as consensual as

6   possible and ask you to make whatever calls we need to ask

7   you to make.

8           And so with that, Your Honor, I would pause to see

9   if you have any questions but just wanted to reiterate that

10   we are going to continue to work hard.  We have worked hard

11   so far.  As Your Honor knows, we were able to reach

12   resolution with the Creditors' Committee on the final DIP

13   Order.  We were able to reach resolution with the Creditors'

14   Committee on two stipulations with respect to the challenge

15   period and we're going to continue to work hard both with

16   the Creditors' Committee and the sureties, Your Honor.

17           THE COURT:  Mr. Schaible, thank you for your

18   comments.  Let's try and not make Mr. Hansen feel quite so

19   left out though as we move forward, okay?

20           MR. SCHAIBLE:  Will do.  Thank you, Your Honor.

21           THE COURT:  All right.  Thank you.  Mr. Perez

22   moves for the admission of 734-1 through 9.

23           Are there any objections to that?

24           MR. EISENBERG:  Your Honor, Philip Eisenberg for

25   HCCI.  I have no objection to the extent that they're only

1   being introduce for the purposes of today's hearing in

2   connection with the exclusivity Motion extension.

3           THE COURT:  Granted.  Does anyone object then to

4   the admission of 734-1 through 9 solely for purpose of

5   today's hearing?

6       (No audible response.)

7           THE COURT:  All right.  734-1 through 9 are

8   admitted solely for the purpose of today's hearing.

9       (Debtors' Exhibit Nos. 734-1 the 734-9 received in

10  evidence.)

11          THE COURT:  Mr. Perez?

12          MR. PEREZ:  Yes, Your Honor.  We had Mr. Dane

13  available.  There was a declaration from Mr. Dane that would

14  be his direct testimony.  And, Your Honor, to the extent

15  the Court has any questions, he's available, but otherwise

16  we would rest.

17          THE COURT:  Does anyone have any questions for

18  Mr. Dane?

19      (No audible response.)

20          THE COURT:  All right.  His Declaration has been

21  admitted.  It is probably hearsay, but no one objected so it

22  is in.  I don't see any reason to swear him in.  All right.

23          I'm going to -- based on the -- I'm sorry, go

24  ahead, Mr. Perez.

25          MR. PEREZ:  Yeah.  And I do want to say that we

1  haven't focused on Apache, but I do really want to say that

2  they have worked tirelessly to get this across the line so I

3  know Ms. Russell's here but I do definitely want to commend

4  them for their significant efforts and I didn't want that to

5  go without being said.

6          THE COURT:  I've learned that over the years

7  Ms. Russell doesn't get ignored.  If she has something she

8  needs to add, she'll let me know so if she does, I'll let

9  her press five star.  Otherwise I'll let her watch what's

10  happening, which she may have decided is in her best

11  interest so.  All right.  I'm going to extend exclusivity.

12          MR. HANSEN:  Your Honor?

13          THE COURT:  I'm sorry, go ahead.

14          MR. HANSEN:  Yes, Your Honor.  It's Kris Hansen

15  again with Stroock, on behalf of the Creditors' Committee.

16  Just a quick question for Your Honor.  From the Committee's

17  perspective, we obviously haven't decided yet where we land

18  on the issue with respect to the sureties, but we would like

19  to be a part of the adversary process to the extent that

20  actually gets filed by the sureties from a cross-movant

21  perspective and since it's expedited, I just wanted to

22  address now rather than try to file a motion to intervene on

23  a double-expedited process basis.

24          THE COURT:  Mr. Hansen, I actually don't know if

25  you have standing or not.  You may very well.  Let me go

1  ahead and get you, if you don't mind -- first of all, I'm

2  guessing that we're not going to have the adversary

3  proceeding.  We might.  If we do, can I invite you to

4  immediately file an emergency motion to intervene unless

5  you're named as a defendant?  I can certainly see an

6  argument that because this is going to move a claim from

7  being a member of your class to being senior to your class,

8  that you may very well have standing on that.  I can also

9  see arguments that you don't.  And I don't think I should

10  rule on something as important as standing just sitting

11  here.  So can I just invite you to immediately -- maybe

12  within a week, could you file a motion to intervene, if

13  that's what they choose to do?

14          MR. HANSEN:  Yeah, that would be fine, Your Honor,

15  no problem at all.

16          THE COURT:  All right.  Thank you.  I'm going to

17  extend exclusivity.  I'm going to ask Mr. Perez to upload a

18  form of order that extends exclusivity but that also

19  includes the provisions that we have announced as our

20  preliminary decision setting the deadlines for the

21  commencement of an adversary proceeding with a law-only

22  motion for summary judgment to be filed as well as law-only

23  responses and the date for argument of that so that we can

24  get any law-only issues resolved well in advance of the

25  Confirmation Hearing.

1          Go ahead and include in there that if the

2    Committee is not named as a party -- and I will just tell

3    the parties that might file the adversary proceeding life's

4    probably easier if you name the Committee as a party and I

5    don't have to worry about this, but if the Committee is not

6    named as a party, it could move to intervene within a week.

7          Can you upload that Order for me, Mr. Perez?

8          MR. PEREZ:  Absolutely, Your Honor.

9          THE COURT:  All right.

10         MR. PEREZ:  I probably can't but Mr. Carlson

11   probably can, but we will.

12         THE COURT:  Yeah, but he'll file it in the wrong

13   court.

14         MR. PEREZ:  That's the problem.  I think it was

15   his training, Your Honor.

16         THE COURT:  Could have been, could have been.

17         All right.  Is there anything else we ought to do

18   this morning?

19         MR. EISENBERG:  Your Honor, Philip Eisenberg.  I

20   apologize.  I am kind of still a little bit trying to work

21   my way through the procedural elements here, Your Honor,

22   with regard to an adversary for seeking an --

23         THE COURT:  Right.

24         MR. EISENBERG:  -- administrative expense because

25   typically during a case, if I was going to seek an

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

1  administrative expense, I would file an application.  And I

2  think the adversary rules would apply through contested

3  process, but an adversary would require specific plaintiffs

4  and specific defendants that the Committee's lawyer has

5  suggested and specific claims to be brought independent of

6  just the one on the administrative expense.

7            THE COURT:  Yeah.

8            MR. EISENBERG:  And so when Your Honor says we

9  have to do this through an adversary, I --

10           THE COURT:  No, no, no, no, no.  Look I really

11  didn't mean say that so I may have misspoken.  I'm giving

12  you the right to do it through an adversary proceeding.  I'm

13  not insisting on it.  In fact, as I said, I think you're

14  better off just waiting and dealing with it as a contested

15  matter.  But a bunch of important sureties in this case,

16  important in the sense of not only important in their own

17  right, but important as to the case, really were concerned

18  to try to get it resolved.  I'm simply trying to give you an

19  avenue for doing it.

20           If you choose to deal with this solely as a

21  contested matter whether it's an application for an admin

22  expense or simply an objection to confirmation, all that's

23  fine with me.  This is an option, not a requirement.

24           MR. EISENBERG:  Okay.  Because I was wrestling

25  with the questions that Mr. Brescia had said about, well,

1  there's still a lot left, there's still other things and I

2  think Your Honor is trying to figure out a procedural

3  mechanism for addressing on an expedited basis a discrete

4  question.  But I just didn't want to have to do more than

5  I -- we needed to do to address Your Honor's at least

6  initial concerns here.

7          THE COURT:  You do not need to.  I'll take it all

8  up at confirmation, but I know that there are times when

9  things at confirmation seem like a steamroller.

10         MR. EISENBERG:  Right.

11         THE COURT:  And if your client wanted it resolved

12 in advance, I'm just trying to give people that opportunity.

13 But as I said, there is no requirement to commence an

14 adversary proceeding.  Only if you want an expedited

15 adversary proceeding, it's an avenue that I'm leaving open

16 as an option.

17         MR. EISENBERG:  All right.  Thank you, Your Honor.

18         THE COURT:  All right.  Anyone else?

19    (No audible response.)

20         THE COURT:  Okay.  Thank you all for dialing in.

21 We will go ahead and adjourn until our 11:00 o'clock

22 hearing.   Thank you.

23         MR. PEREZ:  Thank you, Your Honor.  Happy New

24 Year.

25         THE COURT:  Happy New Year to you, Mr. Perez.

1          MALE SPEAKER:  Thank you, Your Honor.

2       (Hearing adjourned at 10:02 a.m.)

3                    * * * * *

4          *I certify that the foregoing is a correct*

5    *transcript to the best of my ability due to the condition of*

6    *the electronic sound recording of the ZOOM/telephonic*

7    *proceedings in the above-entitled matter.*

8    */S/ MARY D. HENRY*

9    *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

10   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

11   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

12   *JTT TRANSCRIPT #63260*

13   *DATE FILED:  JANUARY 10, 2021*

14

15

16

17

18

19

20

21

22

23

24

25