## ASSIGNMENT AND CONVEYANCE OF OVERRIDING ROYALTY INTEREST

THIS ASSIGNMENT AND CONVEYANCE OF OVERRIDING ROYALTY INTEREST (this "Conveyance") is effective as of the 1st day of October, 2008 (the "Effective Date"), by and between LLOG Exploration Offshore, Inc., a Louisiana corporation ("LLOG"), and Davis Offshore, L.P. a Texas Limited Partnership ("Davis") (LLOG and Davis are hereinafter called collectively "Assignors"), Shell Offshore Inc., a Delaware corporation ("Shell"), and Marathon Oil Company, an Ohio corporation ("Marathon") (Shell and Marathon are herein called collectively "Assignees"). Assignors' and Assignees' addresses are set forth hereinbelow.

WHEREAS, Assignors are the working interest owners of the oil and gas lease as described on Exhibit "A" attached hereto and made a part hereof (hereinafter, the "Contract Area");

WHEREAS, Assignors desire to assign to Assignees certain overriding royalty interests in and to the oil and gas derived from or attributable to the Contract Area in accordance with the terms and conditions hereof;

WHEREAS, immediately prior hereto, Assignees have assigned to Assignors all of their operating rights in the Contract Area pursuant to that certain Farmout Agreement (the "Farmout Agreement") for the NE/4 Green Canyon Block 201 dated effective October 1, 2008, by and between Shell Offshore Inc., Marathon Oil Company, LLOG Exploration Offshore, Inc. ("LLOG"), and Davis Offshore, L.P. ("Davis");

NOW, THEREFORE, in consideration of $10.00 and other good and valuable consideration and the mutual promises made between Assignors and Assignees and delivery of the assignment of the Contract Area, the parties agree as follows:

Assignors do hereby GRANT, ASSIGN, BARGAIN, SELL, TRANSFER, SET OVER and CONVEY unto Assignees an overriding royalty interest (herein referred to as "ORRIs") in, to and under the Contract Area on all oil, gas and associated liquid hydrocarbons produced on the Contract Area, all as calculated and set forth below. TO HAVE AND TO HOLD the ORRIs unto Assignees, their permitted successors and assigns forever, subject to the terms, conditions, exceptions, reservations, covenants, and agreements herein set forth.

**Six and one-half percent of eight-eighths (6.5% of 8/8ths) ORRI in and to all production from said Contract Area for the first one million barrels of oil equivalent produced therein, that escalates to nine and three-quarter percent of eight eighths (9.75% of 8/8ths) ORRI for all production above one million barrels of oil equivalent produced from said Contract Area. Assignors and Assignees hereby agree that for purposes of clarification and satisfaction of Assignees' assigned ORRI after proportionate reduction (i.e. 6.5% of 8/8ths x 49.99999% and 6.5% of 8/8ths x 50.00001%), Assignors shall tender three and one-quarter percent of eight-eighths (3.25% of 8/8ths) of total production from the Contract Area to each Assignee for the**

first one million barrels of oil equivalent produced therein. For all production above one million barrels of oil equivalent produced from said Contract Area, Assignors shall tender four and eighty-seven percent of eight eighths (9.75% x 8/8ths x 49.99999% = 4.87%) to Shell, and four and eighty- eight percent of eight eighths (9.75% x 8/8ths x 50.00001% = 4.88%) to Marathon.

For purposes of this paragraph, one barrel of oil equivalent ("BOE") is defined to mean one barrel of oil.  For gas, 5.8 thousand standard cubic feet of gas with a pressure base of 14.73 psi absolute at a base temperature of sixty degrees Fahrenheit is defined to mean one BOE as provided in 30 CFR 250.1203(b)(7) and as it may be amended.

The ORRIs created herein shall be subject to the following terms and conditions:

(i)     The ORRIs shall be free and clear of all costs of exploring, operating, developing, producing, and maintaining the Contract Area in force and effect, abandoning the Contract Area and all costs of compressing, dehydrating, treating or otherwise rendering the production therefrom marketable, except the proportionate share of transportation charges downstream of the sales meter, severance and excise and other like taxes applicable to such interests. Such ORRIs shall be delivered in kind at the outlet of the sales meter located on the Green Canyon 158 Brutus Platform (the "Host"), and

(ii)     The ORRIs shall be free of all royalty burden but shall be due and payable and administered in accordance with statutes, regulations, lease terms or other guidelines applicable to the federal lessor's royalty except that the ORRIs shall not be applicable to production lost or utilized in the operations for the Contract Area, no subsea transportation charges from the well-head to the sales meter or other transportation charges upstream of the sales meter shall apply, and no royalty suspension will apply such that the MMS provisions granting royalty relief on production shall not apply to the calculation or payment of the ORRIs.

(iii)     Either Assignee may, from time to time, withdraw its election to take such ORRIs in-kind by furnishing Assignors a sixty (60) days advance written notification.  In the event either Assignee elects to receive the gross proceeds attributable to its ORRI under the terms of this provision, the value of said gross proceeds shall be based on the price received by Assignors for production from the Contract Area based on an arms-length transaction. Additionally, ORRIs shall be due and payable and administered in accordance with the regulations applicable to the federal lessor's royalty, except that, as to the ORRI, no subsea transportation allowance or royalty suspension will apply such that the MMS statutory and regulatory provisions granting royalty relief on production, if applicable, shall not apply to the calculation of the ORRIs payments. Assignors and Assignees shall mutually agree on where and how such payments are to be tendered.

(iv)    Assignees shall have the same rights as Assignors to participate in the audit of volume allocations, revenue calculations (for cash settlements), quality bank adjustment calculations and field imbalance settlements for the Contract Area. Assignees shall be provided copies upon written request to the designated operator of the Contract Area all pertinent agreements describing the audit rights and shall be afforded the opportunity to participate in any joint audit of the Contract Area that may be conducted by the non-operators.

(v)    The designated operator of the Contract Area shall provide to Assignees (i) copies of the production data as and when supplied to the MMS (monthly production reports) (ii) an estimate of expected daily production for a production month no later than five (5) days prior to the beginning of each production month, and daily production estimates, if necessary for Assignees to schedule oil and gas transportation, (iii) information contained in the annual operations plans for the Contract Area as related to actual and forecast production, fuel and flare not later than fifteen (15) days after presentation to the Assignors, (iv) a copy of reports generated related to the oil and gas quality banks, if any, field or working interest gas imbalance statements, as applicable, and fuel and use adjustments at the same time as provided to the other parties to the Measurement and Allocation Agreement for the Host, (v) copies of any additional documents to which Assignees in the future may become subject to hereunder, including, but not limited to, the Measurement and Allocation Agreement for the Host, the MMS commingling approval and/or the upstream Host quality bank agreement and (vi) and other similar instruments required to comply with applicable laws or stock exchange regulations.

(vi)    **THE CONSTRUCTION, VALIDITY AND PERFORMANCE OF THIS CONVEYANCE SHALL BE GOVERNED BY LOUISIANA LAW.** Any dispute, difference, controversy or claim (whether over enforceability or in contract, tort or otherwise) between the Assignors and the Assignees arising from or in connection with this Conveyance shall be referred to and determined by arbitration.

(vii)    There are no further understandings, representations, warranties or obligations pertaining to the ORRIs and this Conveyance supersedes and replaces any and all prior agreements, whether written or oral, between the parties.

(viii)    In case of a conflict between the provisions hereof and the provisions of any applicable laws or regulations, the provisions of the laws or regulations shall govern over the provisions of this Conveyance. If, for any reason and for so long as any clause or provision of this Conveyance is held by a court of competent jurisdiction to be illegal, invalid, unenforceable or unconscionable under any present or future law (or interpretation thereof), the remainder of this Conveyance shall not be affected by such illegality or invalidity. Any such invalid provision shall be deemed severed from this Conveyance as if this Conveyance had been executed with the invalid provision eliminated. If the severance of such provision causes a material adverse effect on the economic positions of either party to this

Conveyance, then the parties shall enter into good faith negotiations to endeavor to revise this Conveyance to the extent necessary to preserve the respective economic positions of both parties.

(ix)    Each party has had the benefit of independent representation with respect to the subject matter of this Conveyance. Therefore, this Conveyance shall be considered for all purposes as prepared through the joint efforts of the parties, and shall not be construed against one party or another as a result of the preparation, submittal or other events of negotiation, drafting or execution hereof. However, it is expressly agreed that the duties, obligations and liabilities of the parties are several and not joint, and nothing contained herein shall be construed to create or impose a partnership duty, obligation or liability on any of the parties.

(x)    All notice, communications and payments required or permitted to be given hereunder shall be made in writing and delivered to the designated representative listed below in person or by facsimile transmission (followed by a phone call confirming receipt), U.S. mail, overnight express or courier.  Any notices, communications and payments shall be effective only when received by the party to whom such notice, communication or payment is directed.  Any notice or communication by facsimile shall be deemed given and received only after the receiving party has confirmed receipt of such facsimile.  Any notice, communication or payment transmitted by overnight express or courier shall be deemed given and received twenty-four (24) hours (exclusive of Saturdays, Sundays and federal holidays) after such notice, communication or payment is deposited or transmitted.  Any notice, communication or payment transmitted by U.S. mail (other than overnight express) shall be deemed given and received five (5) days (exclusive of Saturdays, Sundays or federal holidays) after the notice, communication or payment is deposited in the mail.

(a)    <u>If to Assignees:</u>

Shell Offshore Inc.
ATTN:  Kent Abadie
Manager, Development and Production, GOM
701 Poydras Street
New Orleans, Louisiana  70139
Telephone:  (504) 728-4325
Facsimile:  (504) 728-0399

Marathon Oil Company
ATTN: Brad L. Dowdell
5555 San Felipe Road
Houston, TX  77056
Telephone:  (713) 296-3215
Facsimile:  (713) 296-4209

     (b)   <u>If to Assignors:</u>

LLOG Exploration Offshore, Inc.
ATTN:  Land Manager
11700 Katy Freeway
Houston, TX  77079
Telephone:  (281) 752-1100
Facsimile:  (281) 596-0219

Davis Offshore, L.P.
ATTN:  Land Manager
1360 Post Oak Blvd.
Houston, TX  77056
Telephone:  (713) 439-6774
Facsimile:  (713) 961-4573

Any party may specify as a different address for notice purposes any other post office address by giving the other party at least fifteen (15) days written notice thereof.

This Conveyance may be executed in several original counterparts.  Each counterpart shall be deemed to be an original for all purposes, and all counterparts shall together constitute but one and the same instrument.  No individual counterpart shall be binding until all parties have executed a counterpart original.

**WITNESS** the execution hereof before the undersigned competent witnesses, this 19th day of _February_ , 2009.

**WITNESSES:**

_Kay Bonura_

Kay Bonura

_Mail Villarrubia_

MARILYN VILLARRUBIA

_J. a. Dubuc_

_Michael H. Clark_

**ASSIGNORS:**

**LLOG Exploration Offshore, Inc.**

By: _____
Name:  Kemberlia Ducote
Its:  Secretary

**Davis Offshore, L.P.**

By: _____
Name: _George Camior_
Its:  Chief Operating Officer

**WITNESSES:**

_Jes Kennedy Jr_

_Michelle P. Martin_

_Matthew D. Ryan_

James D. Hamrick

**ASSIGNEES:**

**Shell Offshore Inc.**

By: _R. W. Robison, Jr._
Name:  R. W. Robison, Jr.
Its:  Attorney-in-fact

**Marathon Oil Company**

By: _Brad L. Powdell_
Name:  Brad L. Powdell
Its:  Attorney-in-Fact

STATE OF LOUISIANA

PARISH OF JEFFERSON

This instrument was acknowledged before me on the 19th day of February, 2009, by Kemberlia Ducote, Secretary of LLOG Exploration Offshore, Inc., a Louisiana corporation, on behalf of said corporation.

[SEAL]

_Judy Reimel_
NOTARY PUBLIC

Printed Name: Judy Reimel
Notary Public-Jefferson Parish
My Commission Issued for Life
My commission expires: Notary No. 79975

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on the 2nd day of April, 2009, by George F Canjar COO of Davis Offshore, L.P., a Texas Limited Partnership, on behalf of said Limited Partnership.

[SEAL]

THERESA MCCAULEY
MY COMMISSION EXPIRES
February 2, 2010

_Theresa M Canley_
NOTARY PUBLIC

Printed Name: Theresa McCanley

My commission expires: 2-2-2010

STATE OF LOUISIANA

ORLEANS PARISH

This instrument was acknowledged before me on the 12th day of February, 2009, by RW Robism Jr, Attorney in Fact of Shell Offshore Inc., a Delaware corporation, on behalf of said corporation.

[SEAL]

_J. Patrk Morris, J._
NOTARY PUBLIC

Printed Name: J Patrick Morris

My commission expires: at death

J. PATRICK MORRIS, JR.
NOTARY PUBLIC
State of Louisiana
Louisiana State Bar # 25187
My Commission is issued for Life.

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on the 31st day of March, 2009, by Brad L. Dowdell, Attorney-in-fact of Marathon Oil Company, a Texas corporation, on behalf of said corporation.

[SEAL]

_Ofelia M. Cuellar_
NOTARY PUBLIC

Printed Name: Ofelia M. Cuellar

My commission expires: 10-17-2010

OFELIA M. CUELLAR
Notary Public, State of Texas
Commission Expires 10-17-2010

OFELIA M. CUELLAR
Notary Public, State of Texas
Commission Expires 10-17-2010

**Exhibit "A"**

Attached to and made a part of that certain Assignment and Conveyance of Overriding Royalty Interest by and
between Shell Offshore Inc., Marathon Oil Company, LLOG Exploration Offshore, Inc., and Davis Offshore, L.P.
effective October 1, 2008

**II.** **Description of the Contract Area:**

Federal Lease No. OCS-G 12210 dated effective May 1, 1990, between the United States
of America and BP Exploration Inc., as original Lessee, covering all of Block 201, Green
Canyon, as shown on OCS Official Protraction Diagram, NG 15-3, containing
approximately 5,760 acres, insofar and only insofar as to the northeast quarter (NE/4) of
said Lease, covering depths from surface down to 17,000 feet subsea true vertical depth.

**IV.** **Interests of the Parties in the Contract Area:**

Assignors:

| | |
|---|---|
| LLOG Exploration Offshore, Inc. | 85% Working Interest |
| Davis Offshore, L.P. | 15% Working Interest |

Assignees:

| | |
|---|---|
| Shell Offshore Inc. | 3.25% of 8/8ths ORRI for the first one million barrels of oil equivalent produced in the Contract Area, and 4.87% ORRI for all production above one million barrels of oil equivalent produced from said Contract Area. |
| Marathon Oil Company | 3.25% of 8/8ths ORRI for the first one million barrels of oil equivalent produced in the Contract Area, and 4.88% ORRI for all production above one million barrels of oil equivalent produced from said Contract Area. |