UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |
| | § | |

## LLOG EXPLORATION OFFSHORE, L.L.C.'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM AUTOMATIC STAY AND MOTION FOR ADEQUATE PROTECTION
[Related to Docket Nos. 683, 684, 757 & 758]

**NOW COMES** LLOG Exploration Offshore, L.L.C. ("**LLOG**" or "**LEO LLC**"), which respectfully files this reply brief ("**Reply**") in support of LLOG's Motion for Relief from Automatic Stay (Docket No. 683) and Motion for Adequate Protection (Docket No. 684) (collectively, the "**Motions**").[2] LLOG files this Reply to address certain arguments made by Debtors related to LLOG's secured interests and the need for adequate protection.[3] Accordingly, LLOG avers as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motions.
[3] *See* Debtors' Objections at Docket Nos. 757, 758.

280087v1

**I.     LLOG has established that it holds a valid and perfected security interest in all of Fieldwood's rights, titles and interests in GC 201 As-Extracted Collateral, including GC 201 As-Extracted Collateral produced from or attributable to Fieldwood's right, title and interest in the GC 201 ORRI.**

LLOG has indeed met its burden and has established that LLOG holds a valid, perfected security interest in all right, title and interest of Fieldwood Energy Offshore LLC ("**Fieldwood**") in and to all oil and gas produced from, or attributable to, Oil and Gas Lease dated effective May 1, 1990, bearing Serial No. OCS-G 12210, covering and affecting the lands described as Green Canyon, Block 201, OCS Official Protraction Diagram NG 15-3, insofar and only insofar as the lease covers the northeast quarter (NE/4) from the surface down to 17,000 feet true vertical depth subsea (such lease insofar and only insofar as to the quadrant and depths described, the "**GC 201 Lease**"), together with all accounts receivable accruing or arising as a result of the sale of such oil and gas and the cash and other proceeds from the sale of such oil and gas once produced (oil and gas produced from or attributable to the GC 201 Lease, the accounts receivable related to or arising from the sale of such oil and gas and the cash or other proceeds from the sale of such oil and gas produced, herein sometimes collectively referred to as "**GC 201 As-Extracted Collateral**").[4]

A. Pursuant to that certain Memorandum of Operating Agreement and Financing Statement (Louisiana), dated effective December 12, 2002, and signed by LLOG Exploration Offshore, Inc. ("**LEO Inc.**"), as operator, on July 15, 2009, and by Davis Offshore, L.P. ("Davis"), as non-operating party, on July 21, 2009, (the "**MOA**"), as corrected by Correction to Memorandum of Operating Agreement and Financing Statement (Louisiana),

---

[4] LLOG also maintains, and does not in any manner waive its claim, that LLOG holds a valid and effective mortgage lien in Fieldwood's rights, titles and interests in the GC 201 Operating Rights Interest and in the GC 201 ORRI, which mortgage lien is prior in right to any other creditor, as evidenced of public record through the legally sufficient recordation and reinscription, in the mortgage records of Terrebonne Parish, Louisiana, of the instruments creating such mortgage lien. LLOG's Motion to Lift Stay and Motion for Adequate Protection are relative to LLOG's valid and perfected security interest in Fieldwood's interests in the GC 201 As-Extracted Collateral.

signed by LEO Inc., as operator, on September 9, 2009, and by Davis, as non-operating party, on September 1, 2009, (the "**Correction to MOA**," and the MOA as corrected by the Correction to MOA, herein the "**Corrected MOA**"), Davis granted to LEO Inc. a security interest in all of Davis' "rights, titles, interests, claims, general intangibles, proceeds, and products thereof, whether now existing or hereafter acquired, in and to (a) all oil and gas produced from the offshore blocks covered by the Lease or the Contract Area or attributable to the Lease or the Contract Area when produced, (b) all accounts receivable accruing or arising as a result of the sale of such oil and gas …, (c) all cash or other proceeds from the sale of such oil and gas once produced…."[5]

B. Both of the terms "Contract Area" and "Lease," as defined in the Corrected MOA, expressly include the GC 201 Lease, without further limitation to the nature or character of an interest held therein, and the description of the GC 201 Lease included in the Corrected MOA in Attachment "1" is legally sufficient under applicable Louisiana law.[6] Davis and LEO Inc. also expressly acknowledge in writing, in Section 2.0 of the Corrected MOA, that they are parties to the OOA (as hereinafter defined in subpart D), and recite that the OOA provides "for the development and production of crude oil, natural gas and associated substances from the lands and oil and gas leases described in Exhibit 'A' to the [OOA] and in Attachment '1' to this [Corrected MOA]….", which Attachment "1" to the Corrected MOA includes a description of the GC 201 Lease as well as a second lease not here in issue.[7] As a result, the OOA was modified in writing by the parties thereto so as to expressly include the GC 201 Lease, which inclusion was also reflected in the parties'

---

[5] *See* Corrected MOA, Section 5.2 at Docket No. 774-38 at p. 2.
[6] See Docket Nos. 774-38, 774-39; *see also* La. R. S. § 10:9-203 and La. Civ Code Arts. 3286 and 3288 and La R.S. § 31:20.
[7] See Corrected MOA, Section 2.0 and Attachment "1." Docket No. 774-38 at p. 11.

280087v1

conduct whereby operations on the GC 201 Lease were conducted by the parties in accordance with and pursuant to the OOA. This is consistent with the terms of that certain Farmout Agreement dated effective October 1, 2008, entered into by and among LEO Inc., Davis, Shell Offshore Inc. and Marathon Oil Company, covering the GC 201 Lease, (the "**Farmout Agreement**") pursuant to which LEO Inc. and Davis earned an assignment of operating rights in the GC 201 Lease.[8] The Farmout Agreement expressly states, in Section 1.10, that operations on the GC 201 Lease "shall be governed pursuant to the terms of the [OOA]," yet another writing that evidences the agreement of the parties to the OOA that the Contract Area under the OOA includes the GC 201 Lease.[9]

C. Pursuant to the Farmout Agreement, Davis and LEO Inc. acquired their respective operating rights interests in the GC 201 Lease from Shell Offshore Inc. ("**SOI**") and Marathon Oil Company ("**Marathon**") by Assignment of Operating Rights Interest in Federal OCS Oil and Gas Lease, dated effective October 1, 2008, and signed by SOI on July 16, 2009, and Marathon on July 8, 2009 (the "**GC 201 Lease Operating Rights Assignment**"). This assignment was filed of record on November 17, 2009, in the records of Terrebonne Parish, Louisiana, under Conveyance Book 2174, Page 43, File No. 1335638. As a result of the GC 201 Lease Operating Rights Assignment, Davis acquired not only an operating rights interest in the GC 201 Lease (the "**GC 201 Operating Rights Interest**"), but also rights and interests in the GC 201 As-Extracted Collateral associated with the GC 201 Operating Rights Interest. Accordingly, the security interest granted by Davis in the Corrected MOA attached within the meaning of the Louisiana Uniform Commercial Code, Chapter 9, and became enforceable against Davis and its successors,

---

[8] Docket No. 775-6.
[9] Docket No. 775-6 at p. 7.

with respect to such GC 201 As-Extracted Collateral as well as any GC 201 As-Extracted Collateral thereafter acquired by Davis or its successors.[10]

D. By separate Assignment and Conveyance of Overriding Royalty Interest dated effective October 1, 2008, signed by both of the assignors, LEO Inc. and Davis, on February 19, 2009, (and also signed by the assignees, SOI and Marathon on February 19, 2009), (the "**GC 201 ORRI Assignment**"), LEO Inc. and Davis assigned to each of SOI and Marathon an overriding royalty interest in the GC 201 Lease.[11] The overriding royalty interest assigned to SOI pursuant to the GC 201 ORRI Assignment is herein referred to as the "**GC 201 ORRI**."

E. The GC 201 Lease Operating Rights Assignment provides, on Exhibit "A" thereto, that it is subject to the GC 201 ORRI Assignment.[12] Of note is that the GC 201 ORRI Assignment was not filed of record until January 19, 2021, when it was placed of record in the records of Terrebonne Parish, Louisiana, under Conveyance Book 2625, Page 272, File No. 1618623. This filing of record was subsequent to Fieldwood's initial acquisition of an interest in the GC 201 Lease, and other public filings relevant to LLOG's position as a secured party with a perfected security interest in Fieldwood's interest in the GC 201 As-Extracted Collateral associated with the GC 201 ORRI.

F. The security interest granted by Davis in its right, title and interest in GC 201 As-Extracted Collateral, as set forth in the Corrected MOA, was given by Davis, a non-operating party to that certain Offshore Operating Agreement dated effective December 12, 2002 (as thereafter supplemented or amended from time to time, including pursuant to the Corrected

---

[10] La R.S. § 10:9-203; *see also* La. R. S. 10: 9-204(a) and the Corrected MOA, Section 5.2. Docket No. 774-38 at p. 2.
[11] Docket No. 775-8.
[12] Docket No. 775-8 at p. 9.

5

280087v1

MOA, the "**OOA**"), to secure the complete and timely performance of and payment by the non-operating party of all of the non-operating party's obligations and indebtedness of every kind and nature, whether then owed by the non-operating party to the operator or thereafter arising, pursuant to the OOA and the Corrected MOA, and the payment of all expenses incurred by the operator and a participating party for or on account of any and all operations conducted pursuant to the OOA (collectively, the "**Non-Operating Party's Secured Obligations**").[13]

G. LEO, Inc. converted to a Louisiana limited liability company, effective December 31, 2009, evidence of which was filed of record in Terrebonne Parish, Louisiana, on January 29, 2010, in Conveyance Book 2182, Page 505, File No. 1340226, and Mortgage Book 2247, Page 715, File No. 1340226.  As a result, by operation of law, LEO, LLC (also defined as "LLOG") succeeded to the rights and interests of LEO Inc. including, without limitation, those arising under the OOA and the Corrected MOA, and became a secured party thereunder with rights to enforce the liens and security interests granted by Davis to secure the Non-Operating Party's Secured Obligations.

H. The security interest granted by Davis under and pursuant to the Corrected MOA in the GC 201 As-Extracted Collateral was properly perfected by filing of a form UCC-1, with the Corrected MOA attached thereto, in the Uniform Commercial Code ("UCC") Records of Terrebonne Parish, Louisiana, on August 16, 2013, under UCC File No. 1434772 (and indexed in the State of Louisiana UCC Records under File No. 55-1434772) (the "**Initial Financing Statement**").[14] The Initial Financing Statement, in relevant part, named LLOG as a secured party and Davis as a debtor.  The Initial Financing Statement was thereafter

---

[13] Corrected MOA, Section 5.3, Docket No 774-38 at pp. 3-4.
[14] Docket No. 774-11.  La. R.S. § 10:9-310(a); *see also* La. R.S. § 10:9-301(4).

amended in 2015 (as discussed more fully below), and then timely and properly continued by the filing of a form UCC-3 Continuation on February 20, 2018, in the UCC Records of Terrebonne Parish, Louisiana, under UCC File No. 1552263 (and indexed in the State of Louisiana UCC Records under File No. 55-1552263) ("**Continuation Statement**").[15] The Initial Financing Statement continues today as an effective financing statement, perfecting the security interest held by LLOG, as a secured party, in and to all rights, titles and interests formerly owned by Davis, and now owned by Fieldwood, in GC 201 As-Extracted Collateral.

I. Fieldwood acquired all of Davis's interests in the GC 201 Operating Rights by Assignment, Bill of Sale and Conveyance, by and among Davis, another Davis affiliate and Fieldwood, dated effective June 1, 2014, signed by Davis and Fieldwood on October 22, and recorded November 12, 2014, in the records of Terrebonne Parish, Louisiana, under Conveyance Book 2401, Page 255, File No. 1467599.[16] At the time that Fieldwood acquired Davis's interests in the GC 201 Lease, including in GC 201 As-Extracted Collateral, the same were already encumbered in favor of LLOG, having been given as security for the Non-Operating Party's Secured Obligations, and such encumbrances did not lapse with the transfer of title to interests in the GC 201 Lease from Davis to Fieldwood.

J. Upon acquiring Davis's rights and interests in the GC 201 Lease, Fieldwood ratified, adopted and confirmed the terms of the OOA pursuant to that certain Ratification and First Amendment to Operating Agreement dated effective December 12, 2002, (the "**OOA Ratification**"), signed by Fieldwood on December 2, 2014, and by LLOG on December 16, 2014 (and also by another non-operating interest owner not here, on December 16,

---

[15] Docket No. 774-18.
[16] Docket No. 774-37.

2014).[17]  The OOA Ratification expressly provides that Fieldwood replaces Davis as a party to the OOA and becomes bound by the OOA terms "to the same extent as if [Fieldwood] were [an] original signator[y] to the [OOA]."[18]  The OOA Ratification also amends Exhibit "A" to the OOA to reflect Fieldwood as a working interest owner in the Contract Area, replacing Davis, and further states that Exhibit "A" is amended to include the GC 201 Lease in the description of the Contract Area.  However, Davis and LLOG Inc, predecessor in interest to LLOG, had already provided for the inclusion of the GC 201 Lease in the Contract Area through their written acknowledgement in the Corrected MOA, stating that the OOA Contract Area includes the GC 201 Lease; this revision was further evidenced by their subsequent actions, with all operations on the GC 201 Lease undertaken under and pursuant to the terms of the OOA.[19]

K.  Fieldwood also entered into that certain Amendment and Ratification of Memorandum of Operating Agreement and Financing Statement (Louisiana) dated effective June 1, 2014, signed by LLOG on December 16, 2014, and by Fieldwood on December 2, 2014 (and by a second non-operating party not relevant hereto, on December 16, 2014), (the "**Ratification of Corrected MOA**").[20]  The Ratification of Corrected MOA accomplishes the following:

  i. Fieldwood acknowledges receipt of the agreements comprising the Corrected MOA, which are recited to be filed in various records of Terrebonne Parish, Louisiana,

  ii. Fieldwood acknowledges the Corrected MOA provides for liens and security interests in the Contract Area (which includes the GC 201 Lease)

---

[17] Docket No. 774-2.
[18] OOA Ratification, para. 1, Docket No. 774-2 at p. 2.
[19] Docket No. 774-2 at p. 4.
[20] Docket No. 774-13.

280087v1

and in "tangible and intangible personal property related to the development of such Contract Area,"

    iii. Fieldwood and LLOG acknowledge Fieldwood's acquisition of the interest of Davis in the GC 201 Lease effective June 1, 2014,

    iv. Fieldwood and LLOG amend Attachment "1" of the Corrected MOA to include Fieldwood as a working interest party,

    v. Fieldwood fully ratifies the Corrected MOA as amended by the Corrected MOA Ratification (hereinafter, the Corrected MOA, as so amended, the "**Ratified Corrected MOA**"), and

    vi. Fieldwood and LLOG agree and acknowledge that the Ratification of Corrected MOA "is to be recorded in the Conveyance Records and in the Mortgage Records of Terrebonne Parish, Louisiana, and in the Uniform Commercial Code Records of the Louisiana Secretary of State, through the Terrebonne Parish Clerk of Court, <u>thereby providing notice of the mutual liens and security interest now held by the parties</u> to the [Ratified Corrected MOA]."[21]

L. As recited therein, the Ratification of Corrected MOA was indeed placed of record in the records of Terrebonne Parish, Louisiana, under Conveyance Book 2412, Page 270, File No. 1473360, and Mortgage Book 2716, Page 268, File No. 1473360. In addition, the Initial Financing Statement was amended, in relevant part, (i) to reflect the assignment from Davis to Fieldwood of interests in the GC 201 Lease[22]; (ii) to reflect the addition of Fieldwood as a debtor[23]; and (iii) to delete Davis as a debtor[24]. Accordingly, by virtue of the foregoing amendments and the Continuation Statement, the Initial Financing Statement remains an effective financing statement perfecting LLOG's valid security interest (given

---

[21] Ratification of Corrected MOA, at Docket No. 774-13 at p. 3 (emphasis added).
[22] See UCC-3 referencing the Initial Financing Statement, with attached Ratification of Corrected MOA, filed in the UCC Records of Terrebonne Parish, Louisiana, on February 3, 2015, under UCC File No. 1473361 (and indexed in the State of Louisiana UCC Records under File No. 55-1473361) at Docket No. 774-14.
[23] See UCC-3 referencing the Initial Financing Statement, with attached Ratification of Corrected MOA, filed in the UCC Records of Terrebonne Parish, Louisiana, on February 3, 2015, under UCC File No. 1473363 (and indexed in the State of Louisiana UCC Records under File No. 55-1473363 at Docket No. 774-16.
[24] See UCC-3 referencing the Initial Financing Statement, filed in the UCC Records of Terrebonne Parish, Louisiana, on February 3, 2015, under UCC File No. 1473361 (and indexed in the State of Louisiana UCC Records under File No. 55-1473361) at Docket No. 774-14.

280087v1

as collateral to secure the performance, first by Davis, then by Fieldwood, Davis's successor in interest, of the Non-Operating Party's Secured Obligations) in all rights, titles and interests of Fieldwood in all GC 201 As-Extracted Collateral associated with interests held by Fieldwood in the GC 201 Lease. And, as a result of the SOI Assignment of GC 201 ORRI (defined below), LLOG's valid and perfected security interest was extended to the GC 201 As-Extracted Collateral associated with Fieldwood's rights and interests in the GC 201 ORRI.

M. By Overriding Royalty Assignment dated effective January 1, 2015, and signed by SOI on July 23, 2015, and by Fieldwood on July 20, 2015, (the "**SOI Assignment of the GC 201 ORRI**")[25], and recorded on August 6, 2015, in the records of Terrebonne Parish, Louisiana, under Conveyance Book 2433, Page 298, File No. 1486846, SOI assigned and conveyed to Fieldwood all of SOI's right, title and interest in the GC 201 ORRI, described in Attachment A to the SOI Assignment of the GC 201 ORRI as an overriding royalty interest equal to 4.87999%, reserved by SOI in that certain Assignment and Conveyance of Overriding Royalty Interest dated effective October 1, 2008, by and between LLOG's predecessor in interest, Davis, SOI and Marathon, "covering the NE/4 Green Canyon Block 201 from the surface to 17,000' subsea TVD."[26] The SOI Assignment of the GC 201 ORRI did not in any manner limit Fieldwood's right or ability use its interest in the GC 201 ORRI, or the associated GC 201 As-Extracted Collateral, as collateral to secure any Fieldwood obligations, including without limitation Fieldwood's obligations under the OOA, including its Non-Operating Party Secured Obligations.

---

[25] See copy of SOI Assignment of the GC 201 ORRI at Docket No. 775-12.
[26] See SOI Assignment of the GC 201 ORRI, Attachment A, Docket No. 775-12 at p. 6.

280087v1

**II.    Fieldwood's arguments are in error that the SOI Assignment of the GC 201 ORRI precludes the finding and conclusion that LLOG holds a valid and perfected security interest in Fieldwood's GC 201 As-Extracted Collateral attributable to Fieldwood's interests in the GC 201 ORRI.**

Fieldwood correctly notes that the GC 201 ORRI is, by the very terms of the GC 201 ORRI Assignment, "free and clear of all costs of exploring, operating, developing, producing, and maintain the Contract Area in force and effect, abandoning the Contract Area…." (herein collectively "**Costs to Operate**").[27]  This is also in keeping with the generally accepted understanding of an overriding royalty interest as an interest in an oil and gas lease that does not bear such Costs to Operate, in the same manner that the royalty interest of the lessor does not bear such Costs to Operate.[28]  However, LLOG's security interest in the GC 201 As-Extracted Collateral associated with the GC 201 ORRI does not, in fact, have the effect of causing the GC 201 ORRI to bear Costs to Operate.

If the owner of the GC 201 ORRI takes its GC 201 ORRI in kind (as contemplated in the GC 201 ORRI Assignment), then the GC 201 ORRI owner (in this instance, Fieldwood) is delivered its full share of the oil and gas produced from the GC 201 Lease, calculated without volume deduction for any Costs to Operate, and may then sell that full share of produced oil and gas to its purchaser of production.  Alternatively, if the GC 201 ORRI owner does not take in kind, then the owner(s) of the operating rights interests burdened by the GC 201 ORRI will sell the full share of production otherwise attributable to the GC 201 ORRI, along with its own operating rights interest share of production, and pay to the GC 201 ORRI owner an amount equal to the sales

---

[27] GC 201 ORRI Assignment, para. (i), Docket No. 775-8 at p. 2.
[28] *See Encana Oil & Gas (USA) Inc. v. Brammer Eng'g, Inc.*, 51,045 (La. App. 2 Cir. 11/16/16), 209 So. 3d 995, 1000, writ denied, 2017-00242 (La. 3/31/17), 217 So. 3d 361 ("An overriding royalty is an interest . . . free of the expenses of development, operation and production. ").

11

proceeds arising from the sale of the full share of production attributable to the GC 201 ORRI without deduction for Costs to Operate.

When the GC 201 ORRI owner has used the GC 201 As-Extracted Collateral associated with its GC 201 ORRI as collateral to secure its performance of obligations, then when the GC 201 ORRI owner fails to perform those obligations, the secured party may enforce its secured rights in the manner allowed by law and the parties' agreement. Enforcement of those secured rights does not change the determination of the GC 201 ORRI – the full share of the GC 201 ORRI, without any deduction for Costs to Operate, is still delivered – but instead of being delivered to the GC 201 ORRI owner, it is delivered to the secured party to satisfy the unperformed obligations that were so secured.

**III.     Fieldwood's arguments are in error that the OOA Ratification precludes the finding and conclusion that LLOG holds a valid and perfected security interest in Fieldwood's GC 201 As-Extracted Collateral attributable to Fieldwood's interests in the GC 201 ORRI.**

Fieldwood also contends that because the OOA Ratification states that the "Farmors' ORI [being the GC 201 ORRI] is not to be considered a Subsequently Created Interest as described in Article 19.1 of [the OOA]," LLOG never acquired a valid security interest in the GC 201 As-Extracted Collateral associated with Fieldwood's rights in the GC 201 ORRI.[29] As Fieldwood notes, the term "Subsequently Created Interest" is not defined anywhere in the OOA, and the term is used only in Article 19.1.

However, Article 19.1 does not exclude any interest, whether subsequently created or not, from the grants of mortgage liens and security interests set forth in the OOA or the Corrected MOA or the Ratified Corrected MOA. Nor does any other provision found in any of these agreements, including Article 19.1.1 of the OOA, provide for such an exclusion.

---

[29] Docket No. 757 at p. 10, para 23.

The Corrected MOA, and the Ratified Corrected MOA, as well as the OOA Ratification, define and describe both "Lease" and "Contract Area" (being the immovable property in which mortgage liens are granted and as to which security interests are given in property which by law is susceptible of a security interest grant) to include the GC 201 Lease. Neither the descriptions of "Lease" or "Contract Area" as a whole nor the specific description of the GC 201 Lease is qualified by the type of interest held therein, whether that interest is an operating rights interest or an overriding royalty interest or any other type of interest. As a consequence, when Fieldwood acquired the GC 201 ORRI, the security interests under the Corrected MOA/Ratified Corrected MOA in GC 201 As-Extracted Collateral attached to any and all such collateral associated with the GC 201 ORRI.

Fieldwood had the means to achieve the result it now wishes the court to do for it – that is to exclude from the reach of the perfected security interests under the Corrected MOA, and thus the Ratified Corrected MOA, all GC 201 As-Extracted Collateral associated with the GC 101 ORRI. Fieldwood could have expressly done so in the OOA Ratification it signed in December 2014, or it could have included a clarifying amendment in the Ratification of Corrected MOA it signed in December 2014 and placed of record in February 2015, or it could have asked LLOG to sign a written release of mortgage liens and security interests when Fieldwood acquired the GC 201 ORRI from SOI in July 2015 which was placed of record in August 2015, or Fieldwood could have made such a request of LLOG at any time thereafter. Fieldwood never did.

**IV.   Finally, LLOG can demonstrate its secured interest has declined, or is threatened with decline, such that it is entitled to the relief requested.**

Finally, the value of LLOG's perfected security interest in the GC 201 As-Extracted Collateral is diminishing during the reorganization process because of the uncertainties of a continued, steady rate of production from the GC 201 Lease and thus, also, of cash proceeds

deriving from the ongoing sale of the produced oil and gas attributable to the GC 201 ORRI, and further due to such cash proceeds not being segregate, but being used or being made available for use by Fieldwood for purposes other than satisfaction of Fieldwood's secured obligations.

Contrary to Fieldwood's contention, LLOG's request for adequate protection does not rest solely upon "generalized statement[s] regarding the oil and gas industry." Fieldwood continues not to pay proper joint interest billings for work that was performed on the GC 201 Lease, as LLOG has shown. Yet, Fieldwood continues to receive the benefits of the very collateral it gave to secure these, and other obligations, without using such collateral to satisfy its secured obligations. The value of LLOG's valid and perfected security interest in the GC 201 As-Extracted Collateral attributable to the GC 201 ORRI is directly threatened for the reasons that (among others):

(i) continued and steady production of oil and gas from the GC 201 Lease cannot be assured with any certainty, even if expected for some period of time, given many factors including mechanical difficulties associated with producing hydrocarbons as has already been experienced on the GC 201 Lease as reflected in Daily Production Reports; and

(ii) Fieldwood continues to take in kind and to sell such production with the cash proceeds received therefrom not being applied to the secured obligations, but rather being retained and/or used for other purposes.

As a result, LLOG, the holder of a valid, perfected security interest, is placed in the position of being dependent on the cash resources that Fieldwood maintains rather than being assured of receiving the full value of the cash proceeds arising from the actual sales of such produced oil and gas (also part of LLOG's collateral). Even though all such cash sales proceeds are identifiable cash

proceeds, as contemplated by La R.S. § 10:9-315, and thus continue to be subject to LLOG's perfected security interest even in Fieldwood's hands, a concern is with the possibility of an ever reducing cash position. Use by Fieldwood of cash proceeds that are part of LLOG's collateral for purposes other than satisfying the secure obligations leaves LLOG at risk that the value of its collateral (in the case of cash proceeds, the collateral itself) will diminish.

In other circumstances, LLOG would assure that the value of its collateral is not jeopardized by using the remedies afforded it under the Corrected MOA, as has been ratified by Fieldwood, and under applicable law (La R.S. § 10:9-607(a)(1)), by notifying the first purchaser of production and taking the cash proceeds directly. LLOG here asks the Court to provide it adequate protection similar to that which it otherwise would have at law and by agreement – that is to require the first purchaser to withhold or escrow cash proceeds arising from the sale of produced oil and gas attributable to the GC 201 ORRI.

**WHEREFORE**, for the reasons set forth above, and in the Motions, LLOG respectfully requests that this Court grant it its requested relief.

Dated: January 22, 2021.

        Respectfully Submitted,

        **LOOPER GOODWINE P.C.**

        */s/ Paul J. Goodwine*
        Paul J. Goodwine (La. Bar No. 23757)
        SDTX Federal ID No. 437800
        Lindsey M. Johnson (La. Bar No. 34610)
        SDTX Federal ID No. 2127344
        650 Poydras Street, Suite 2400
        New Orleans, Louisiana 70130
        Telephone: (504) 503-1500
        Facsimile:  (504) 503-1501
        Email: pgoodwine@loopergoodwine.com
        Email: ljohnson@loopergoodwine.com

        **Attorneys for LLOG Exploration Offshore, L.L.C.**

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 22nd day of January 2021, a true and correct copy of the foregoing document was served via this Court's CM/ECF system on all parties having consented to such electronic service in this case.

*/s/ Paul J. Goodwine*
Paul J. Goodwine
