**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| | § | **(Jointly Administered)** |
| **Debtors.**[1] | § | |
| | § | |

**EMERGENCY MOTION TO COMPEL BP EXPLORATION & PRODUCTION INC.
TO PERFORM PRE-PETITION CONTRACTS**

---

Emergency relief has been requested. A hearing on this matter is scheduled for Friday, January 29, 2021 at 1:30 pm Central Prevailing Time.

Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.

You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeIsgur" in the GoToMeeting app or click the link on Judge Isgur's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Isgur. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.

If you object to the relief requested or you believe that emergency consideration is not warranted, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.

Relief is requested not later than January 29, 2021.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully submit this Emergency Motion to Compel BP Exploration & Production Inc. ("**BP**") to Perform Pre-Petition Contracts ("**Motion**").  For the reasons detailed herein, the Debtors respectfully request that this Court grant the Motion.

## PRELIMINARY STATEMENT

1.      The Debtors bring this Motion on an emergency basis to prevent irreparable harm to their estates.  Despite the Debtors' diligent efforts to get their Genovesa well ("**Genovesa**") in the Gulf of Mexico online for over a year, they are now faced with the real threat of a lease termination unless BP either (a) acts as contractually required as a "reasonably prudent operator" to bring Genovesa online or (b) steps aside and allows the Debtors to perform the actions required to bring Genovesa online, thereby preserving a valuable estate asset.  The urgency is heightened by a January 20, 2021 Order from the Department of Interior ("**DOI**") that calls into question whether the operative lease will remain in effect past April 5, 2021 unless Genovesa comes online by that time.

2.      The actions (or inactions) of BP have caused the current circumstances.  BP owns the host platform where Genovesa's production will occur, Na Kika, and operates the loop system that connects Genovesa to Na Kika, the LSPS.  Over the course of many months, the Debtors have consistently and repeatedly implored BP to perform its obligations under the parties' Galapagos Area Loop Subsea Production System Construction and Operating Agreement ("**LSPS OA**")[2] and Production Handling Agreement ("**PHA**")[3] (collectively, the "**Agreements**") to get Genovesa online.

---

[2] *See* Declaration of Erin M. Choi ("**Choi Decl**.") Ex. A, which is being filed contemporaneously herewith.
[3] *See* Choi Decl. Ex. B.

3.      The Debtors promptly reached out to BP when the situation became even more of an emergency following the DOI's January 20, 2021 Order No. 3395 (the "**Order**").[4]  The Debtors fear that the Order threatens the entire OCS-G 27278 Lease (the "**Lease**") on which Genovesa sits, which will expire unless BP acts now to cause it to come online prior to April 5, 2021.  The Debtors immediately reached out to BP on January 21[5]—the day after entry of the Order—and then again by letter on January 24, 2021.[6]  The January 24 letter asks BP to take the necessary steps to bring Genovesa online or to let the Debtors do so.  BP's response to the letter[7] was noncommittal, necessitating this Motion.[8]

4.      This Motion presents a straightforward application of section 365 of title 11 of the United States Code (the "**Bankruptcy Code**").[9]  BP has refused, without basis, to perform its obligations under the Agreements, effectively depriving the Debtors of their ability to decide whether to assume or reject the Agreements.  Under well-settled authority, BP must continue to perform under the Agreements and the Debtors ask this Court to compel such performance.  In contravention of the specific provisions of the Bankruptcy Code, BP is improperly avoiding its obligations.  Further, if the Lease expires due to Genovesa not coming online by April 5th, BP

---

[4] *See* Choi Decl. Ex. C.

[5] *See* Choi Decl. Ex. D.

[6] *See* Choi Decl. Ex. E.

[7] *See* Choi Decl. Ex. F.

[8] To be clear, the Debtors believe the Order suspends authority of anyone below the Assistant Secretary level to issue any offshore fossil fuel authorizations, including Suspensions of Production ("**SOPs**"). Although prior to January 20, 2021, SOPs were generally granted as a matter of course, in light of the Order issued under the new administration, there is now a real risk that an SOP will not be granted, meaning the Lease will expire if Genovesa is not online by April 5, 2021.  Further, BP still has not provided Fieldwood with all the information Fieldwood needs in order to even apply for an SOP.

[9] In addition, to the extent BP continues to refuse to perform under the terms of the PHA and the LSPS OA (and BP has given no indication that it intends to change its behavior), such course of conduct arguably constitutes a violation of the automatic stay under section 362. *See, e.g.*, *In re Mirant Corp.*, 440 F.3d 238, 254–55 (5th Cir. 2006) (finding that the non-debtor's unilateral termination of an executory contract before the contract had been assumed or rejected violated the automatic stay); *In re Broadstripe, LLC*, 402 B.R. 646, 657 (D. Del. 2009) (finding that, by refusing to perform its obligations under an executory contract, counterparty interfered with debtor's property rights in such contract and violated the automatic stay).

would have deprived the Debtors of their property rights in the Genovesa well and the significant proceeds expected therefrom.

5.      The Debtors thus move on an emergency basis for an order compelling BP to perform its obligations under the Agreements, under which BP is required to act as a reasonably prudent operator (*see* PHA § 15.6), and to maximize production on a BOE basis (*see* LSPS OA § 9.01(b)) or, alternatively, to let the Debtors do what is necessary to do the same.  The Motion seeks relief to avoid serious and irreparable harm that will occur to the Debtors' estates, and to mitigate the hundreds of millions of dollars of damages that will result from BP's breaches of the Agreements if the Lease were to expire if Genovesa does not come online by April 5, 2021.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

7.      Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors respectfully request that this Court compel BP to (a) perform under and comply with the terms of the Agreements, including, without limitation, BP's obligations under the Agreements, to take the necessary steps to cause the Genovesa well to come online by April 5, 2021, and (b) allow the Debtors to perform all necessary steps to cause the Genovesa well to come online by April 5, 2021.

8.      A proposed form of order granting the relief requested is attached hereto (the "**Proposed Order**").

## BACKGROUND

### A.      General Background

9.      Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

10.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

12.      On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (and as may be reconstituted from time to time, the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

### B.      Overview of the LSPS OA and the PHA

13.      Fieldwood's Genovesa well is one of several wells and prospects that currently flow or eventually will flow production on a nearby undersea loop pipeline called the Galapagos Area Loop Subsea Production System ("**LSPS**").  The LSPS transports hydrocarbons from wells to the Na Kika platform that BP partially owns (Fieldwood is not a co-owner of this platform) and operates.

14.      Fieldwood and BP, among others, are parties to the LSPS OA, effective December 1, 2011 and last amended effective May 1, 2019.[10]  The same parties are signatories to

---

[10] Choi Decl. Ex. A (agreement and all amendments).

the PHA, effective September 21, 2010 and last amended effective May 1, 2019.[11]  In effect, the LSPS OA governs the relationship of the parties as joint owners of the LSPS.  The PHA, on the other hand, governs the relationship of the parties as producers on the LSPS.  The amendments were entered into in connection with the closing of the acquisition by Fieldwood from BP of BP's interest in the Genovesa prospect, also effective May 1, 2019.  The Genovesa well was drilled in June-July 2019 and, despite repeated commitments by BP and absent delays, has been ready to be completed and commissioned to flow onto Na Kika since late 2019.

15.     Under the LSPS OA, all parties part-own the LSPS and BP operates it.  As operator, BP must "endeavor to operate the LSPS so as to maximize production on a [Barrel Oil Equivalent] basis."  LSPS OA § 9.01(b).  The PHA determines the parameters of Fieldwood's access to Na Kika and BP's obligations to facilitate Fieldwood's production of hydrocarbons.  Among other requirements, BP must "conduct all operations in a proper and workmanlike manner in accordance with methods and practices customarily used in sound oil and gas field practice and with that degree of diligence reasonable and ordinarily exercised by an experienced prudent operator engaged in a similar activity under the same or similar circumstances."  PHA § 15.6.

## C.     Investigation and Attempted Remediation of LSPS Anomaly

16.     While Fieldwood has serious concerns about the propriety of BP's actions since the original Genovesa transaction with respect to delays in getting the Genovesa well online, rather than fully air the dealings and back and forth between the parties in this Motion, Fieldwood will instead focus on the narrow issues set forth herein.  The urgency of this Motion stems from recent government action creating an emergency on a go forward basis.  Fieldwood, therefore, raises only the limited facts necessary for understanding and remedying the emergency and reserves all rights with respect to past (and continuing) damages.

---

[11] Choi Decl. Ex. B (agreement and all amendments).

17.     On April 14, 2020, while Fieldwood was working to tie Genovesa into the LSPS, an anomaly in the LSPS was observed.  BP then began to investigate the cause of the anomaly and realized it would require remediation to permit hydrocarbons to flow again.  To remediate the anomaly, BP—as LSPS operator—has two basic options: 1) restore the LSPS to full functionality, which would require significant down time; or 2) implement a single flowline plan in the interim ("**Single Flowline Plan**") and restore LSPS to full functionality at a later time.  In the three months leading up to the filing of this Motion the following has occurred

- **October 22, 2020** – BP provided Fieldwood with an update on the investigation, which included an estimated startup for Genovesa of first quarter 2021.  Among other remediation options, BP proposed executing a second Single Flowline Plan for the Genovesa side of the LSPS.

- **November 3, 2020** – Fieldwood sent BP a letter proposing in detail how the Single Flowline Plan would work.[12]  Fieldwood asked for BP's agreement to the proposal and a schedule for the purposes of applying for an SOP, among other intermediate steps, by November 30, 2020.

- **November 14, 2020** – BP's investigation revealed that the anomaly Fieldwood had identified back in April 2020 was a leak in the LSPS.

- **December 2020** –

  o  BP completed a Single Flowline Plan for its own well, Isabella, on the side of the LSPS opposite to Genovesa and two of Fieldwood's other wells.

  o  BP updated Fieldwood on the leak and proposed tightening a bolt near the leak site, a fix that would have been much simpler, cheaper, and faster than the Single Flowline Plan.  Fieldwood agreed to this plan but, because the bolt tightening project was highly unlikely to be successful, Fieldwood asked BP to prepare for the Single Flowline Plan in parallel.  BP did not do so, even though Fieldwood agreed to bear the cost of this parallel-path planning.

  o  BP informed Fieldwood it required a formal proposal and a commitment to return the LSPS to a loop configuration in the future, and for Fieldwood to agree to bring an additional, unrelated well onto the LSPS, before agreeing to the Single Flowline Plan for Genovesa.  Fieldwood provided this formal proposal to BP.

- **January 2021** – As expected, BP's bolt tightening project did not fix the leak.  BP continued to make additional demands of Fieldwood unrelated to the leak issue to execute

---

[12] Choi Decl. Ex. G.

the Single Flowline Plan.  As of the date of this Motion, despite additional assurances, BP still has not agreed to move forward with the Single Flowline Plan.

**D.    The DOI's January 20, 2021 Order Creates an Emergency**

18.    Because of BP's lengthy delay in allowing Genovesa to come online, if Genovesa does not begin producing on or before April 5, 2021, the Lease on which Genovesa is drilled will expire unless the DOI authorizes an SOP.

19.    On January 20, 2021, the new administration issued the Order, which suspends authority of anyone below the Assistant Secretary level to issue any offshore fossil fuel authorizations, including SOPs.[13]  Thus, only political appointees may authorize SOPs.  This is a sea change relative to the SOP approval procedure that has existed for years.  Thus, while prior to January 20, 2021, SOPs may have been granted as a matter of course, in light of the DOI Order and the new administration, there is a significant risk that an SOP will not be granted in this case, meaning the Lease will expire if Genovesa is not online by April 5, 2021.

20.    Fieldwood forwarded BP the Order on January 21, 2021.  Three days later, on January 24, 2021, Fieldwood sent BP a letter demanding progress on the Single Flowline Plan because the risk that the DOI would not approve an SOP had increased so dramatically.  Fieldwood demanded a response by January 26, 2021.[14]  BP did not substantively respond by January 26, 2021[15] and said it would not respond until several days later.  Because Fieldwood does not have additional time to wait, it filed this Motion.

**BASIS FOR RELIEF REQUESTED**

21.    By this Motion, the Debtors request this Court to compel BP to comply with the terms of the PHA and the LSPS OA, including, specifically, its obligations to act as a

---

[13] *See* Choi Decl. Ex. C.
[14] Choi Decl. Ex. E.
[15] Choi Decl. Ex. F.

reasonably prudent operator and to maximize production on the LSPS by taking the actions necessary to cause the Genovesa well to come online by April 5, 2021, and to allow the Debtors to perform all necessary steps to cause the Genovesa well to come online by April 5, 2021.

**A.      The PHA and the LSPS OA Are Executory Contracts Under Which BP Must Continue To Perform**

**1.      The PHA and the LSPS OA Are Enforceable Executory Contracts**

22.      The PHA and the LSPS OA are prepetition, executory contracts under which BP is obligated to continue performing.  An executory contract is a contract on which "performance remains due to some extent on both sides."  *Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522, n.6 (1984)).

23.      The PHA and the LSPS OA are executory contracts because material performance still remains due on both sides.  With respect to the PHA, BP must operate the LSPS as a reasonably prudent operator, and the Debtors must contribute their share of the ordinary costs of the maintenance of the LSPS, among other material terms.  With respect to the LSPS OA, BP must maintain the LSPS and maximize production, and the Debtors must contribute to capital expenditures necessary for the maintenance of the LSPS, among other material terms.  *See, e.g.*, *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62–63 (5th Cir. 1994); *In re Goodrich Petro. Corp.*, 554 B.R. 817, 821 (Bankr. S.D. Tex. 2016) (citations omitted).

**2.      A Non-Debtor Counterparty Must Continue To Perform Under An Executory Contract Until the Debtor Decides Whether To Assume or Reject**

24.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984).  "[T]he purpose behind allowing the assumption or rejection of executory

contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993) (citation omitted); 2 *Collier on Bankruptcy* P. 365.01[1] (15th ed. 1993).  A counterparty to an executory contract must perform its obligations under the contract until the debtor moves to assume or reject such agreement.  *See NLRB v. Bildisco & Bildisco*, 465 U.S. at 531.  Until the executory contract is assumed by the debtor, it is not enforceable against the debtor, but it is still enforceable *by* the debtor against the counterparty.  *See, e.g.*, *id.*

25.     As such, BP must continue to perform under the PHA and the LSPS OA while the Debtors ascertain whether to assume or reject the contract.  *See, e.g.*, *Mirant Corp.*, 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) (citations omitted); *see also In re Penn Traffic Co.*, 524 F.3d 373, 382 (2d Cir. 2008).  Of course, the Debtors intend to comply with their obligations to BP under the Agreements.  Consequently, BP's position will be no worse if the Court grants the relief requested.  To the contrary, BP will be better off because they will retain their own prospects in the Lease if the Lease does not expire.

26.     Even if the Debtors were in default under the PHA or LSPS OA, BP would still be required to perform.  *See, e.g.*, *In re El Paso Refinery, L.P.*, 220 B.R. 37, 43–44 (Bankr W.D. Tex. 1998) (citations omitted); *see also, U.S. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 625 (8th Cir. 1994) (holding that an unassumed executory contract is not enforceable against the debtor, notwithstanding debtor's default thereunder); *In re Monarch Capital Corp.*, 163 B.R. 899, 906 (Bankr. D. Mass. 1994) (same); *In re Whitcomb & Keller Mortg. Co.*, 715 F.2d 375, 378–79 (7th Cir. 1983) (affirming bankruptcy court's entry of a restraining order that prohibited non-debtor counterparty from ceasing to provide essential services to debtor pending debtor's determination to assume or reject agreement and notwithstanding debtor's pre-petition arrearage).

**B.**     **Section 105(a) Provides Additional Support For The Relief Requested**

27.     Additionally, the Court's general equitable power, codified in section 105(a) of the Bankruptcy Code, provides additional support for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a); *see also United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990); *In re Carroll*, 850 F.3d 811, 815 (5th Cir. 2017); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code").

28.     Here, section 105(a) supports entry of the Proposed Order, which will ensure BP's compliance with section 365 of the Bankruptcy Code and provide the Debtors with a meaningful opportunity to decide whether to assume or reject the PHA and the LSPS OA. By their terms, the PHA obligates BP to operate the LSPS as a reasonably prudent operator, and the LSPS OA obligates BP to maintain the LSPS and maximize production. BP has refused to honor its obligations by not acting as a reasonably prudent operator to get the Genovesa well online before April 5, 2021 and not maximizing production. This effectively is depriving the Debtors' of the breathing spell afforded to a debtor in possession to evaluate its operations and make prudent business judgments regarding assumption or rejection of executory contracts. If the relief requested herein is not granted, the Debtors will suffer severe adverse consequences, including potentially irreparable damage to their business. Under these circumstances, the Court should enter an order under section 105(a) compelling BP to perform.

**<u>CONCLUSION</u>**

29.     For the foregoing reasons, the Court should grant this Motion in its entirety, and compel BP to perform under the Agreements by taking the necessary steps to cause the

11

Genovesa well to come online by April 5, 2021 and/or to allow the Debtors to perform all necessary steps to cause the Genovesa well to come online by April 5, 2021.

## BASIS FOR EMERGENCY RELIEF

30.     The Debtors respectfully request emergency consideration of this Motion in accordance with Bankruptcy Local Rule 9013-1(i).  The Debtors believe that the relief requested in this Motion is critical because if BP does not act quickly to take the necessary steps to get the Genovesa well online by April 5, 2021, there is a significant risk that the Lease will expire, causing serious harm to the Debtors' estates.  To avoid the consequences of this emergency, Fieldwood needs immediate relief.  Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## COMPLIANCE WITH BANKRUPTCY RULE 6004(A)
## AND WAIVER OF BANKRUPTCY RULE 6004(H)

31.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion satisfies Bankruptcy Rule 6004(a) and that the Court waive the 14-day period under Bankruptcy Rule 6004(h) and enter an order that is immediately effective and enforceable upon its entry.

## NOTICE

32.     Notice of this Motion will be served on any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d), including BP's counsel.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief, at law or in equity, as the Court may deem just and appropriate.

Dated: January 27, 2021
　　　　Houston, Texas

　　　　　　　　　　　　　　　　　　**/s/ Alfredo R. Pérez**
　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　Alfredo R. Pérez (15776275)
　　　　　　　　　　　　　　　　　700 Louisiana Street, Suite 1700
　　　　　　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　　　　　　Telephone:  (713) 546-5000
　　　　　　　　　　　　　　　　　Facsimile:  (713) 224-9511
　　　　　　　　　　　　　　　　　Email:   Alfredo.Perez@weil.com

　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　Matthew S. Barr (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　Jessica Liou (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　　　　　　Telephone:  (212) 310-8000
　　　　　　　　　　　　　　　　　Facsimile:  (212) 310-8007
　　　　　　　　　　　　　　　　　Email:   Matt.Barr@weil.com
　　　　　　　　　　　　　　　　　　　　　 Jessica.Liou@weil.com

　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　Paul R. Genender (00790758)
　　　　　　　　　　　　　　　　　Erin Choi (24079436)
　　　　　　　　　　　　　　　　　200 Crescent Court, Suite 300
　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　Telephone: (214) 746-7700
　　　　　　　　　　　　　　　　　Facsimile: (214) 746-7777
　　　　　　　　　　　　　　　　　Email: Paul.Genender@weil.com
　　　　　　　　　　　　　　　　　　　　 Erin.Choi@weil.com

　　　　　　　　　　　　　　　　　*Attorneys for Debtors and Debtors in Possession*

13

**Certificate of Accuracy**

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief.

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez

**Certificate of Service**

I hereby certify that, on January 27, 2021, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez

14