1

1           IN THE UNITED STATES BANKRUPTCY COURT

2           FOR THE SOUTHERN DISTRICT OF TEXAS

3                   HOUSTON DIVISION

4   IN RE:                    §      CASE NO. 20-33948-11
                              §      HOUSTON, TEXAS
5   FIELDWOOD ENERGY, LLC,    §      THURSDAY,
    ET AL,                    §      JANUARY 28, 2021
6           DEBTORS.          §      2:27 P.M. TO 3:40 P.M.

7

        STATUS CONFERENCE AND EMERGENCY MOTION (VIA ZOOM)

8

          BEFORE THE HONORABLE MARVIN ISGUR
9            UNITED STATES BANKRUPTCY JUDGE

10

11

12      APPEARANCES:                  SEE NEXT PAGE

13      RECORDED VIA COURTSPEAK; NO LOG NOTES

14

15

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21      JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 Eldridge Road, #144
22            Sugar Land, TX 77478
                 281-277-5325
23          www.judicialtranscribers.com

24

    Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.

2

```
 1                        APPEARANCES (VIA ZOOM):

 2

 3   FOR THE DEBTORS:              WEIL GOTSHAL & MANGES, LLP
                                   Paul R. Genender, Esq.
 4                                 200 Crescent Court, Ste. 300
                                   Dallas, TX  75201-6950
 5                                 214-748-7700

 6   FIELDWOOD ENERGY, LLC:        Robert Sergesketter, Esq.
                                   Deputy General Counsel
 7

 8   FOR BP EXPLORATION &
     PRODUCTION, INC.:             GREENBERG TRAURIG, LLP
 9                                 Karl D. Burrer, Esq.
                                   Shari L. Heyen, Esq.
10                                 1000 Louisiana St., Ste. 1700
                                   Houston, TX  77002
11                                 713-374-3500

12   FOR THE US TRUSTEE:           OFFICE OF THE US TRUSTEE
                                   Stephen D. Statham, Esq.
13                                 515 Rusk, Ste. 3516
                                   Houston, TX  77002
14                                 713-718-4650

15   FOR RED WILLOW OFFSHORE,
     LLC AND HOUSTON ENERGY
16   DEEPWATER VENTURES I, LLC:    BARNET B. SKELTON, JR., PC
                                   Barnet B. Skelton, Esq.
17                                 712 Main Street, Ste. 1610
                                   Houston, TX  77002
18                                 713-659-8761

19

20

21

22   (Please also see Electronic Appearances.)

23

24

25
```

1     HOUSTON, TEXAS; THURSDAY, JANUARY 28, 2021; 2:27 P.M.

2       (Conference muted.)

3         THE COURT:  All right.  In a moment, we're going

4    to call the Fieldwood Energy case.  If you intend to speak

5    at the hearing, let me ask you to press five star on your

6    phone, so that I can get the different lines opened up.

7         (Pause in the proceedings.)

8         (Conference recording started.)

9         THE COURT:  All right.  We're going to start with

10   a status report from Debtors' counsel and then see where we

11   go from there.

12         Who is going to speak for the Debtor?

13         MR. GENENDER:  Your Honor, Paul Genender for the

14   Debtors.  Can you hear me okay?

15         THE COURT:  I can, Mr. Genender.  Go ahead,

16   please.

17         MR. GENENDER:  Good afternoon, Your Honor.  Thank

18   you very much for making time for us this afternoon on short

19   notice for the status conference.  We appreciate it.

20         The emergency motion that we're here on for the

21   status was filed late yesterday at docket entry 792, and it

22   is truly a time-sensitive matter.

23         The Debtors' estates stand to suffer significant

24   damage unless BP is compelled to perform under its

25   pre-petition contracts with Fieldwood.  BP should have the

1    same interest in preserving this lease as Fieldwood does.

2    The parties should be aligned under this motion.  A recent

3    executive order from the Department of Interior makes this

4    an emergent issue that caused us to file the emergency

5    motion and, of course, we apologize to the US Trustee for

6    the insufficient notice regarding the motion and the request

7    to seal certain documents.

8          We're having discussions with business people to

9    try to resolve the issue, but unfortunately the timing, as I

10   mentioned, forced us to file the motion now.  BP owns a

11   platform, Na Kika, where a base production will occur and

12   operates a root system connecting Genovesa well to Na Kika.

13   The flow line plan mentioned in our motion is a short-term

14   fix needed to make this connection and allow Genovesa to

15   come online.

16         That repair will make the six-to-eight weeks --

17   that is the report will take six-to-eight weeks to complete

18   and in light of the recent Department of Interior to meet

19   the deadline to come online and avoid the termination by

20   2021.  If the lease is terminated due to inactivity between

21   now and April 5th, there's no guarantee we can get it back.

22   And there's no assurance that an SOP will be available

23   either.  In any event, we would not know for some time an

24   answer to whether suspension of production order would be

25   available.

1           Eight weeks from today, Your Honor, just as a

2   matter of calendaring, is March 25th, just ten days prior to

3   April 5th.  With weather delays and other variables there's

4   next to no time to spare.

5           So what we're asking the Court to do is to compel

6   BP in the motion to perform under and comply with the

7   operative agreements, including repair the lines so the

8   Genovesa well would come online by April 5th and will pay

9   for this leaving no cost to BP.  And to let Fieldwood do

10  what's necessary to effectuate those repairs.

11          There are larger repairs that are needed to repair

12  the overall root system, Your Honor, but this motion is not

13  about those larger long-term repairs.  The parties have been

14  discussing the single flow-line plan that is at issue in the

15  motion for months, but BP has yet to commit to a schedule

16  despite Fieldwood's urging.

17          Importantly, just last month, BP completed a

18  similar single-flow line plan for its own well, Isabella, on

19  the other side of the root system opposite Genovesa and two

20  other Fieldwood wells.  So this can be done.

21          We've had productive discussions with counsel for

22  BP this week and appreciate that they were just retained

23  earlier this week, even though these issues are not new to

24  BP.  We shared documents with BP's counsel and conferred at

25  length before we filed the motion late yesterday.  We're

1   hopeful the parties can reach agreement, but do not, Your

2   Honor, have the luxury of time to wait in the event they

3   cannot.

4          We plan to have the motion fully heard tomorrow

5   afternoon at 1:30.  Mr. Stark, one of the lawyers for BP,

6   advised me last night of a family conflict, which, of

7   course, Your Honor, we want to respect and therefore, we

8   wanted to get before you this afternoon for a status, given

9   the time sensitivities.  We'll also work with the US Trustee

10  regarding sealing of the documents.

11         In any event, Your Honor, we will need and we will

12  want to ask the Court to set aside time for the full hearing

13  at the Court's earliest convenience, understanding not this

14  day, but tomorrow morning as an alternative to tomorrow

15  afternoon is unavailable but that there is time on Monday,

16  although Your Honor, given the timeline that we're dealing

17  with, the difference between tomorrow and Monday is not

18  insignificant.

19         And perhaps I'll stop there, and of course, happy

20  to answer any questions, Your Honor.  Thank you so much.

21         THE COURT:  Thank you.

22         Ms. Heyen, Mr. Burrer, tell me what's going on.

23         MS. HEYEN:  Thank you, Your Honor.  Shari Heyen

24  and Karl Burrer for BP Exploration & Production.

25         Your Honor, we did receive the motion last night

1  and we've been working with our client to gather documents

2  and witnesses, et cetera, and obviously we disagree with the

3  recitation of the facts as set forth in the motion.

4          From the motion on file with the Bankruptcy Court,

5  we understand that Fieldwood believes that the emergency was

6  caused by the order issued on January 20th by the Department

7  of Interior, and given the extreme lack of notice, we have

8  about 12 business hours to prepare for an important

9  evidentiary, contested hearing.  We may have a potential

10 interim solution that we would like to explore with the

11 Court and Fieldwood.  And it's basically a two-prong

12 suggestion.

13         First, as a gaiting issue, a permit must first be

14 obtained before any work can commence.  So the permit --

15 like I said, the permit is a gaiting issue and BP will

16 commit to move the permitting process forward as quickly as

17 possible.  We understand it will take a few days to obtain a

18 permit, but we would like to start that process right now.

19         The construction of the temporary fix must be done

20 in a safe and responsible manner.  This is a deepwater

21 platform.  It involves a (indiscernible) loop owned by BP.

22 The timeline and construction plan must be memorialized and

23 documented and counsel for Fieldwood and BP will continue to

24 work on those draft documents.  There is risk, cost, safety

25 factors that must be taken into consideration here, but Your

1  Honor, I think the parties are working on that documentation

2  and they have been working on that documentation.

3      Fieldwood would not be prejudiced if we're

4  permitted to obtain the permit and start working on that

5  process.  It's not losing any time.

6      The second prong would be that Fieldwood must take

7  the initiative to request and use good faith efforts to

8  obtain a Suspension of Production, or SOP.  Fieldwood's

9  statement that it doesn't think it can be an SOP shouldn't

10 count by the Court.  We think Fieldwood should be compelled

11 to start that process now.  And if Fieldwood is successful

12 in obtaining the SOP, it would moot the relief requested by

13 Fieldwood in the motion.  I think that relieves pressure on

14 the back end, so we're not rushing for -- to do something

15 that's a pretty complex fix.

16     Your Honor, by allowing the permitting process to

17 move forward, which is a gaiting issue that must be handled

18 in any event and compelling Fieldwood to move forward with

19 the SOP, that alleviates the emergency nature requested by

20 Fieldwood.  It might be a better use of the Court's and the

21 parties' time and resources to move the hearing to sometime

22 next week.  I think I heard Mr. Genender mention Monday.  We

23 can either come back for a status conference on Monday, but

24 Your Honor, if we do come back for a hearing on Monday, that

25 would give BP a little bit more time to prepare and get

1   ready for an evidentiary hearing.  As I mentioned, we were

2   just retained this week and were given the motion last

3   night.

4            THE COURT:  Mr. Genender, I don't know if you need

5   time to confer.  Do you know whether your client agrees from

6   a factual point of view that getting the permit is a gaiting

7   issue to commencing the work and therefore, there's no

8   difference between a hearing on Friday and a hearing on

9   Monday?

10           MR. GENENDER:  I would need to confer with the

11   client on that issue, Your Honor, but I can say state to the

12   SOP issue right now and that's a little bit of a chicken and

13   the egg issue in the sense that in order to apply for and

14   get an SOP, we need a schedule.  We need the very schedule

15   that BP is yet to give us for the completion of the work.

16           So I don't see an issue necessarily in that dual

17   path, but we have to have a schedule to get the work done to

18   do it.  And what we've also -- and Your Honor, we're

19   certainly prepared to put evidence on, the world has changed

20   in many respects or appears to have changed in many respects

21   and thus (indiscernible) different orders that have come out

22   and the risks here and the processes to get an SOP look to

23   be different than they might have been just two weeks ago.

24           So I can certainly confer about the permitting.

25   If that's something they could do, they could have done

1   yesterday or the parties have been discussing this issue for

2   months and every time we've frankly heard the same thing,

3   which is, okay, next month; okay, next month.

4           We were told this was going to be done Q1.  Now

5   we're sitting here with a six-day week schedule --

6           THE COURT:  Okay.  Let's get the answer.  I hear

7   you.  Let's get the answer to the question though.

8           Mr. Sergesketter, if you want to press five star,

9   I know you wanted to speak, but I need to figure out what

10  phone line you're one.

11          MR. SERGESKETTER:  That's exactly what I was going

12  to pitch to Your Honor, so thank you very much.

13          THE COURT:  Oh, this is your client?

14          MR. SERGESKETTER:  Your Honor, are you able --

15          THE COURT:  Yes, sir.  Go ahead.

16          MR. SERGESKETTER:  Your Honor, Robert

17  Sergesketter.  I am in-house counsel with Fieldwood Energy.

18          Mr. Genender did speak what I was trying to state

19  and I don't want to belabor the point, but the search by

20  Fieldwood submitting an SOP application for suspension of

21  production could negate the emergency status of this hearing

22  could not be further from the truth.  We have no idea how

23  long an SOP if submitted would take to be granted in the new

24  arena between now we're playing.

25          As Mr. Genender clarified, we are prohibited from

1   submitting an SOP until we have a hard schedule from BP,

2   which we've been asking for for quite some time.  Once we

3   have that, we have no qualms with submitting for an SOP, but

4   we cannot sit around and wait for that SOP to be granted.

5   That could take weeks or months.  We have no idea.

6              Even in an ordinary course before this new

7   Department of Interior order, an SOP could take some time to

8   be approved.  Now, they're really --

9              THE COURT:  Is it correct that the permitting is a

10  gaiting issue?

11             MR. SERGESKETTER:  The initial permit that she's

12  suggesting, they absolutely do need to get that permit, Your

13  Honor.  I completely agree, but that could have been put in

14  process quite some time ago.  We encouraged them to apply

15  for it.

16             THE COURT:  I can't deal with what should have

17  happened yesterday.

18             MR. SERGESKETTER:  I understand.

19             THE COURT:  What I want to find out is, can you

20  start construction or can they start construction without

21  getting a permit?

22             MR. SERGESKETTER:  I don't know the answer to that

23  specific question, but they certainly can get vessels moving

24  to be onsite and everything can be put in place while that

25  permit is being granted, Your Honor.

1          THE COURT:  Right.  So --

2          MR. SERGESKETTER:  In other words, there's a lot

3     of parallel path work that can be done while the permit is

4     pending.

5          THE COURT:  And that's -- Ms. Heyen, what I was

6     about to ask was whether your client was amenable to

7     immediately commencing the permitting processes you have

8     outlined and simultaneously taking all actions that your

9     client is allowed by law to take to prepare to do the work

10    so that when the permit is issued, you can immediately move.

11          As to whether I'll order you to move is a

12    different question, but what I'm trying to do is to avoid

13    having to have a hearing, you know, today or tomorrow to

14    give you a reasonable opportunity to prepare, but I really

15    don't think it's reasonable -- and it may be.  I want to

16    give you a chance to talk to your client, just like I want

17    Mr. Genender to have a chance to talk to his client.

18          I don't think I should put the hearing off, if

19    that's going to actually result in delay.  But if your

20    client is going to follow a permitting path and follow the

21    scheduling path and follow a commencement path --

22    pre-commencement path, then I don't see why there's a reason

23    to make you come in with witnesses, you know, without more

24    notice and I'm inclined to live with a much different

25    schedule.

1          Do you need time to -- and I don't at all mind

2     saying that the Debtor has to, you know, work on the

3     Suspension of Production application, as well, but they can

4     only do that with the information that they may be required

5     to have.  I'm not finding they are required to have the

6     schedule, though that makes a lot of sense to me.  And so

7     but I don't mind ordering them to proceed with Suspension of

8     Production as fast as they can get that done and to the

9     extent that's dependent on information from you as fast as

10    they can get it done, is dependent on you.

11         Do you have a problem with requiring you to take

12    those three steps and then we'll have a more orderly way to

13    hear this?  Do you want to try to talk to your client?

14         MS. HEYEN:  Your Honor, Shari Heyen.

15         THE COURT:  I'm sorry.  Do you want time to talk

16    to your client?

17         MS. HEYEN:  Your Honor, can you hear me?

18         THE COURT:  I can.  I didn't mean to interrupt

19    you.

20         MS. HEYEN:  No problem.  Thank you, Your Honor.

21         Yes, I would like some time to confer with my

22    client.  I do not anticipate that that will be an issue, but

23    I would like to speak with them offline, if it pleases the

24    court?

25         THE COURT:  Sure.  How long do you need?

1          MS. HEYEN:  Maybe 30 minutes?

2          THE COURT:  Okay.  Why don't we -- let me --

3    Mr. Statham, I know you had something you wanted to talk

4    about, but I'm inclined to think we'll come back at 3:30 and

5    if you want to address issues now, that's great.  Otherwise,

6    we'll adjourn until 3:30.

7          And if somebody else wants to address something

8    now, that's fine, as well.

9          MR. STATHAM:  Your Honor, if I could, I only have

10   about two minutes.  It'll be a quick comment.

11         Obviously my client is taking a hard look at the

12   proposed sealing motion, which currently is supported by

13   evidence.  We weren't aware of the sealing issue and didn't

14   receive the sealed documents until late this morning after

15   the (indiscernible) holding.

16         We appreciate Mr. Genender's comments and

17   obviously we'll work with him and Mr. Perez after we review

18   the material and see if any kind of resolution can be

19   reached on the sealing matter.

20         Obviously a more surgical approach is preferred

21   rather than a wholesale sealing of the documents in their

22   entirety.  That said, if we can't resolve that, we will at

23   some point expect the Debtors to carry the burden to meet

24   the evidentiary requirements to keep the sealing.

25         THE COURT:  Let me make this pretty easy.  I think

1  we tend to over-seal because it's convenient and the

2  ordinary course should be documents get filed redacting

3  stuff that ought to be redacted and then the redacted stuff

4  ought to be sealed.

5          If it's an emergency, you probably don't have time

6  to get that done in an orderly way.  So I would encourage

7  the parties as they talk through how to handle this, to find

8  a way to have an orderly filing of an unsealed, but redacted

9  set of exhibits and the same with the motion, and then to

10 have sealing apply only to those parts that are proprietary

11 and confidential.

12         I don't know if that works for you or not, but I

13 also need to respect the fact that in an emergency, you

14 know, the packet I got was like that -- about that thick

15 (indicating), I think.  You know, going through and figuring

16 out exactly what to redact, if you're worried that the world

17 is going to end, is probably something that can wait a day

18 or two.

19         On the other hand, your client I suspect now has

20 everything un-redacted, right?

21         MR. STATHAM:  Yes, sir.

22         THE COURT:  I hope that you-all can live with that

23 kind of guidance, but if not, I'll hear whatever dispute

24 there is, but in general I don't want to be over-redacting

25 things that don't need to be -- over-sealing things that

1  shouldn't be.

2          MR. GENENDER:  Your Honor, it's Paul Genender.

3  We, of course, will work to get that resolved so that does

4  not have to come back to your attention.

5          THE COURT:  It's actually a -- I don't mean to

6  belittle it at all.  It's pretty important to me that I

7  comply with Section 107 of the Bankruptcy Code, so if it

8  needs to come to my attention, it comes to my attention.

9  Don't worry about it.

10          MR. GENENDER:  Understood, understood, understood.

11          THE COURT:  I'm also not in the least upset that

12  when you have an emergency, there have to be priorities.  I

13  now though want to get it done the right way when we can

14  assign -- maybe not Paul Genender -- to work on how to get

15  those redacted.

16          MR. GENENDER:  Well, if you want it done right,

17  Your Honor, it's not going to be assigned to me.

18          THE COURT:  Well, that was my point.

19      (Laughter.)

20          THE COURT:  All right.  We'll come back at 3:30.

21          Ms. Heyen, that works for your client; is that

22  right?

23          MS. HEYEN:  Yes, Your Honor.  That works fine.

24  Thank you.

25          THE COURT:  And anyone else have anything you want

1  to say before we adjourn till 3:30?

2       (No audible response.)

3            THE COURT:  All right.  I'm going to disconnect

4  all the lines.  And we'll connect back up around 3:25.

5            Thank you.

6       (The parties thank the Court.)

7       (Recess taken from 2:48 p.m. to 3:28 p.m.)

8                        AFTER RECESS

9       (Conference recording started.)

10           THE COURT:  So if I could, let me start with the

11  report from Ms. Heyen, and then we'll go back to

12  Mr. Genender and then anyone else that wishes to make a

13  comment at that point.

14           Ms. Heyen, what did we learn?

15           MS. HEYEN:  Can you hear me, Your Honor?

16           THE COURT:  I can.

17           MS. HEYEN:  Thank you, Your Honor.  Shari Heyen

18  for BP Exploration.

19           We've had a chance to talk to our client.  Thank

20  you for the recess.  And we will commit to do the following:

21           Number one, we will commit to get these permits

22  and take all action allowed by law to prepare to do the

23  work.  And Your Honor, that comes with some obligations

24  under the parties' contracts.  We need Fieldwood and the

25  other owners to sign the AFEs because we need their

1    commitment to pay for the work.  That should not be an issue

2    because it's my understanding the parties have acknowledged

3    their obligations under the LSPS agreement with respect to a

4    sole benefit AFE.

5             Also, we think it's responsible action for the

6    parties to continue to work together to try to document the

7    construction and the mobilization of how exactly this

8    construction work is going to be carried out because it

9    needs to be carried out in a safe and prudent manner and

10   according to proper protocols.

11            And then also the parties -- there's a commitment

12   -- I think Fieldwood needs to commit under the LSPS to

13   continue its restructuring obligations and again, Your

14   Honor, I think the parties are in active negotiations and

15   discussions around that documentation.  So I don't

16   anticipate that would be a problem.

17            Number two, BP will commit to send the schedule to

18   Fieldwood that it's requesting so that it can continue -- or

19   can begin the SOP or SOO process, whatever is applicable

20   here.

21            And then the third thing, I think is a response

22   from Fieldwood with respect to committing to obtain and

23   start the SOP or SOO process.

24            THE COURT:  And if that occurs -- and I'm just

25   here trying to think of, let's assume that all that works

1   for Fieldwood.  It may or may not.  Are we going to have a

2   dispute at the end of the day as to whether BP is going to

3   use its best efforts to complete by the deadline in the new

4   order, or is that a matter that I need to schedule a hearing

5   on because you have reasons why you don't think you should

6   be obliged to do that?

7           And I'm not asking this in anything other than

8   just an objective way so that we can plan what we need for

9   the next hearing.  And you may not know the answer to that

10  yet, either, which I got, too.  And that's a fair answer.

11          MS. HEYEN:  Thank you.  You know, I appreciate

12  that.  But in working with BP, I don't know that there will

13  be a dispute over whether it's using its best efforts.  I

14  think that there are ongoing negotiations and conversations,

15  I mean, like BP wants to act in a reasonable, responsible

16  manner and believes that it has been.  It just wants to make

17  sure that this construction is done in the safest and most

18  responsible way, so.

19          THE COURT:  Okay.  Mr. Genender, given that

20  announcement by Ms. Heyen, does it make some sense to come

21  back -- and I haven't even looked at my own calendar, you

22  know, Tuesday or Wednesday, for just a very short status

23  conference.  And if it turns out we then need an evidentiary

24  hearing, I'll schedule it within a day of that, if that's

25  the right thing to do.  I mean, it isn't going to be my

1  calendar that will stop you from then getting a hearing

2  quickly.  Obviously I may need to listen to arguments that

3  we can't do it within a day for some other reason, but my

4  calendar won't stop it.

5          MR. GENENDER:  Could I ask, Your Honor, that we

6  come back for a status on Monday?

7          THE COURT:  Yeah.

8          MR. GENENDER:  Well, I just did ask, I should say

9  correctly.  I think we'd prefer to come back on Monday, Your

10  Honor, and if we're in a great spot -- we're moving to a

11  great spot, fantastic.  I think we'd all like to know that

12  sooner than later, if that's okay.

13          THE COURT:  Yeah, but Monday will only be a status

14  conference.  I'm not going to make everybody get all their

15  witnesses ready for Monday because it sounds like everyone

16  is getting ready to head in the same direction and I don't

17  want to spend a million dollars getting ready for a hearing

18  if that's where we are.

19          MR. GENENDER:  Understood, understood.  I think

20  we'd rather do that, have that status check in on Monday

21  than Tuesday, if that's okay with the Court.

22          THE COURT:  And is there anything -- we're moving

23  fast.  Ms. Heyen made a bunch of comments there that I found

24  to be productive.

25          Is there anything she said that read in a

1    favorable light because it's hard to put everything in

2    contractual terms when you're in Ms. Heyen's shoes?  So read

3    in a favorable and good faith light, does that all work?

4    And that doesn't mean you can't come back on Monday and

5    complain about it.  I'm just trying to be sure that assuming

6    her client interprets that in a way most favorable to you,

7    in terms of her comments, that we are, in fact, moving the

8    right direction?

9              MR. GENENDER:  Your Honor, directional, yes.

10    Sometimes the devil is in the details.  The direction is

11    yes.

12              THE COURT:  I know.

13              MR. GENENDER:  But the answer to your question is

14    certainly I do think that you hit on a key issue, which is:

15    Are we going to have a dispute as to whether this project

16    can be done or be able to do this in six to eight weeks, but

17    I'm hoping that we're not going to have a dispute.  I'll

18    share Ms. Heyen's hope that that can be the key issue and

19    that we have the assurance now that the preparatory actions

20    are taking place between now and Monday certainly.  We

21    appreciate that and then I know the Debtors appreciate that

22    very much, Your Honor.

23              THE COURT:  Thank you.

24              Mr. Skelton, you had wanted to speak.

25              MR. SKELTON:  Yes, Judge.  I represent Red Willow

1  Offshore, LLC and Houston Energy Development [sic] Ventures,

2  LLC I.  And we own basically 35 percent collectively of the

3  prospect in question.

4           We have been actively involved, even though we're

5  non-operators.  Obviously we've been keenly following these

6  events and it is in my view essential that the Court be

7  prepared to take an active role if needed here.  And we

8  don't intend to get into a swearing contest with BP right

9  now.  I don't think that's productive, but shall we say that

10  BP may have motives and reasons for not being in a

11  (indiscernible).  And all you have to do is look at their

12  own press release.

13           THE COURT:  Yeah, I'm not going there and I'm not

14  letting you go there.

15           MR. SKELTON:  All right.  Well, shall we say that

16  we believe the evidence will show that they --

17           THE COURT:  I'm not going there and I'm not

18  letting you go there.

19           MR. SKELTON:  Okay.

20           THE COURT:  I want to know -- all I want to know

21  is whether this course of action of having a commitment from

22  BP made to me and a status conference on Monday is the

23  appropriate course of action?  If we need to get into a

24  fight, that'll be later.  But for the same reason I didn't

25  want Mr. Sergesketter to go into and Mr. Genender to go into

1  what had happened before, that's a damages fight that you

2  guys can have in five years.  You know, I'm worried about

3  what I can do in the next week so that this project can get

4  finished or not.  And I want to be forward looking only.

5       So it isn't helpful, I don't think, for me to

6  focus -- or for you to try to focus me on the past.  I want

7  to focus on the future.

8       So that does concept work, Mr. Skelton?

9       MR. SKELTON:  Yes.  I believe this is a salutary

10 development and hopefully will bring us to a resolution of

11 this very important issue.

12      THE COURT:  Thank you.

13      And I assume you know that Ms. Heyen and I have

14 worked many years and I think she knows I'm not shy, so

15 we'll get there.

16      MR. SKELTON:  Understood, Your Honor.

17      THE COURT:  So we're talking February 1st.  What

18 time did you-all want to come in?  I could do it anytime at

19 3:30, 4:00, 4:30, 5:00, anything like that that works for

20 the parties and will give us the most information possible

21 by that point.

22      Mr. Barr raises the request for 4:00, I think.  I

23 don't think he's raising his hand.  I think that was a

24 4:00 o'clock request.

25      MR. GENENDER:  Your Honor, are we at the point

1  where we're taking hand signals from Matt Barr?  Is that

2  what we've devolved into, Your Honor?

3         THE COURT:  I'm afraid so because he didn't press

4  five star on his phone.

5         Ms. Heyen, you can either give me a hand signal,

6  or you can tell me 4:00 o'clock is okay with you.

7         MS. HEYEN:  Your Honor, 4:00 is okay with BP.

8         THE COURT:  All right.

9         MR. GENENDER:  Your Honor, of course, 4:00 o'clock

10 is good for the Debtors, Your Honor, and thank you for

11 giving me a reason to give Mr. Barr a hard time this

12 afternoon.

13        THE COURT:  Thank you.

14        Mr. Skelton, are you okay with 4:00 o'clock.  I

15 don't -- my comments aren't mean to exclude your client from

16 the discussion.  I just want to be forward-looking.

17        You okay with 4:00?

18        MR. SKELTON:  (No audible response.)

19        THE COURT:  Okay.  Anyone have any problem or any

20 other comments that you wish to make about what we're doing?

21        Ms. Heyen, go ahead.

22        MS. HEYEN:  Thank you, Your Honor.

23        Just one brief comment with respect to something

24 that someone said -- I can't remember who it was.  But we

25 are endeavoring to use, you know, best efforts, good faith.

1  I don't want somebody to interpret this as there's some kind

2  of a guarantee out there, but that, you know, we're in the

3  middle of a pandemic.  There could be weather, et cetera.

4           But I just -- for the Record I just didn't want

5  somebody to think --

6           THE COURT:  I think that was my comment, which was

7  I'm going to interpret your comments in the light most

8  favorable to working hard and in good faith to get things

9  done.  I did not take it as a guarantee.

10          MS. HEYEN:  Okay.

11          THE COURT:  I took it as you're going to try hard

12 and you know, I'll hold you-all to trying hard. I don't know

13 what outcome that means, but I'll hold you to trying hard.

14          MS. HEYEN:  Very good.  Thank you, Your Honor.

15          THE COURT:  This sounds important to me for many

16 reasons to get it done and to get it done right.  And I

17 really hope the parties can work together.

18          Is there anything else I need to do to facilitate

19 discussions or are these discussions going to go over the

20 next 72 to 96 hours and we'll come back on Monday hopefully

21 all knowing where we are.

22          MR. GENENDER:  I think it's the latter, Your

23 Honor.  This is Paul Genender for the Debtors.

24          I think it's the latter and we appreciate you

25 making time for us on short notice.

1          THE COURT:  All right.  We'll see you-all on

2    Monday.  Bye-bye.  Thank you.

3        (The parties thank the Court.)

4        (Proceeding adjourned at 3:40 p.m.)

5                        *  *  *  *  *

6          I certify that the foregoing is a correct

7    transcript to the best of my ability produced from the

8    electronic sound recording of the ZOOM/telephonic

9    proceedings in the above-entitled matter.

10   /S/ MARY D. HENRY

11   CERTIFIED BY THE AMERICAN ASSOCIATION OF

12   ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337

13   JUDICIAL TRANSCRIBERS OF TEXAS, LLC

14   JTT TRANSCRIPT #63416

15   DATE FILED:  JANUARY 31, 2021

16

17

18

19

20

21

22

23

24

25