

**Jourdan Janik**
Offshore Land Negotiator
Telephone: 832.772-5325
Email: Jourdan.Janik@bp.com

**BP Exploration & Production Inc.**
Gulf of Mexico Region
501 Westlake Park Boulevard
Houston, Texas 77079
17th Floor WL1

June 12, 2020                                                      *via Facsimile E-mail*

Fieldwood Energy LLC
2000 W. Sam Houston Pkwy. South
Suite 1200
Houston, TX 77042
Attn: Mr. Nathan Vaughn

RE: Fieldwood Energy LLC ("Fieldwood") response to BP Exploration and Production, Inc. ("BP") Information Only AFE (NKO393019) for Galapagos LSPS Santiago & Santa Cruz PLEM Inspections

Mr. Vaughn:

Reference is made to the Galapagos Area Loop Subsea Production System Construction and Operating Agreement dated effective December 1, 2011 by and between Fieldwood Energy LLC ("Fieldwood"), BP Exploration & Production Inc. ("BP"), Red Willow Offshore, LLC ("Red Willow") and Houston Energy Deepwater Ventures I, LLC ("HEDV"), as amended (the "LSPS COA") and the Letter Agreement for the Connection of a Satellite Well System to the LSPS dated January 28, 2020 by and between BP and Fieldwood, (the "Letter Agreement"). Capitalized terms not defined herein shall have the meaning set forth in the LSPS COA or Letter Agreement, as applicable.

BP is in receipt of Fieldwood's letter dated May 26, 2020, (the "FW Letter") wherein Fieldwood disclaims its responsibility for the abnormality observed during the execution of the LSPS Work (as defined in the Letter Agreement). Fieldwood claims that it did "not directly create or cause the abnormality," the abnormality "was mostly due to a pre-existing vulnerability to failure inherent in a grease plug on the Loop," the "grease plug failure could have been avoided…if BP had provided true and accurate piping and instrumentation diagrams ("P&ID") showing the correct configuration of hydraulic valves that were to be connected during the LSPS Work," and that "BP was at least negligent in failing to maintain true and accurate P&IDs of the Loop", including "failing to provide the same to Fieldwood during the extensive planning of or approval by BP of the LSPS Work." As explained in detail below, the Letter Agreement governs the LSPS Work performed by Fieldwood, so Fieldwood is responsible for all analysis, diagnosis and remediation costs as described in the Remediation AFE (as defined in the FW Letter).

Fieldwood's assertion that it did not directly create or cause the abnormality is without merit and runs afoul of the facts. In general, Article 4(b) in the Letter Agreement requires Fieldwood to be responsible for and shall defend, indemnify and hold harmless BP from and against any claims arising out of damage to or loss of the LSPS (not to be limited by Fieldwood's LSPS Equity Interest), even if BP were negligent. In this case, the LSPS was in a stable operating state prior to the execution of the Genovesa steel flying lead installation scope of the LSPS Work. When Fieldwood commenced the LSPS Work by disconnecting the Santiago steel flying lead that attaches to the SCAM (a component of the Satellite Well System), hydraulic pressure was released from the PLEM valves, which then opened. Subsequently, a pressure increase was observed in the LSPS section adjacent to the PLEMs, of which BP believes was attributable to seawater entering the LSPS (based on pressures observed). Fieldwood's actions caused the water intrusion, so Fieldwood is responsible for such



damages to the LSPS. Fieldwood's responsibility for LSPS damages is not limited by its Equity Interest Ownership in the LSPS; rather Fieldwood is responsible for all damages to the LSPS, which includes those costs detailed in the subject AFE that Fieldwood is refusing to pay.

Fieldwood's assertion the abnormality "was mostly due to a pre-existing vulnerability to failure inherent in a grease plug on the Loop" misrepresents the facts in this case. A total of six PLEMs are installed on the LSPS and they each contain grease plugs. During commissioning and testing of the LSPS prior to startup, a grease plug on Santiago PLEM 2 did show signs of leaking. As Fieldwood is aware, this was remediated by the project team before start-up and the LSPS has not shown signs of leaking since this repair. The mere fact that one of the six PLEMs' grease plugs exhibited a leak years ago does not demonstrate the grease plugs have an inherent risk of failure, especially when the remaining five PLEMs grease plugs have operated without leaks since startup.

BP did not provide the P&IDs to Fieldwood. Fieldwood's assertion that the grease plug failure could have been avoided if BP had provided true and accurate P&IDs showing the correct configuration of hydraulic valves that were to be connected during the LSPS Work is baseless given Fieldwood's predecessor (in its capacity as Satellite Field Operator) designed, constructed, and installed the Satellite Field System and provided the P&IDs to both BP and Fieldwood (upon acquisition of its predecessors interest). Throughout the planning process, Fieldwood was confident in its understanding of the LSPS and the necessary connections of the modified Satellite Well System that would be executed as part of the LSPS Work. Fieldwood claimed it had all the information it needed and further expressed its confidence and understanding of its Satellite Well System as well as the LSPS because Fieldwood had acquired such information from its predecessor, including technical personnel that were directly involved in the construction of the Satellite Well System. BP relied on Fieldwood's representations regarding its familiarity with the LSPS when it entered the Letter Agreement allowing Fieldwood to do the work. Fieldwood should have acquired true and accurate P&IDs from its predecessor, making its negligence assertion against BP is completely without merit.

If Fieldwood had been a prudent Satellite Lease Operator and maintained accurate P&IDs of its Satellite Well System (and its associated connections to the LSPS), this event should have been avoided, especially given the fact that Fieldwood utilized personnel from its predecessors project team that was directly involved in the construction of the Satellite Well System. For the reasons above and Fieldwood's lack of due diligence and understanding of the specific components of its Satellite Well System, BP maintains that it has been a reasonable and prudent operator of the LSPS and strongly disagrees that it has acted in a negligent manner in any way. Notwithstanding the above, including that BP was in no way negligent as operator of the LSPS, BP again notes that under Article 4(b) in the Letter Agreement, Fieldwood agreed to be responsible for, and shall defend, indemnify and hold harmless BP against any damage or loss to the LSPS (not to be limited by Fieldwood's LSPS Equity Interest), even if BP were negligent.

BP notes that Fieldwood has requested permission from BP to complete the remaining work scope for the Genovesa subsea tie in to the LSPS on or about 15th June. As Fieldwood is refusing to comply with its obligations under the Letter Agreement to be responsible for all damages to the LSPS, BP cannot permit any further work to proceed until this matter is resolved. In any event, work may only commence once BP is satisfied that no further risk to the LSPS will arise if said work is executed. Consequently, Fieldwood's request is hereby denied until these matters are resolved.

In order to avoid this matter being escalated, BP expects Fieldwood to render full payment for any and all diagnostic work and/or repair to the LSPS resulting from its damage to the LSPS as described in the subject AFE.

Regards,

Jourdan Janik