**<u>Exhibit O</u>**

*BP Draft – 1.31.21*

<span style="color:red">**DRAFT – Pending Final Legal Review**</span>

### Sole Benefit Operation and LSPS Loop Reinstatement Agreement

Pursuant to Article 7.08 of the Galapagos Area Loop Subsea Production System Construction and Operating Agreement, dated effective December 1, 2011, by and between BP Exploration & Production Inc. ("BP"), Fieldwood Energy LLC ("Fieldwood"), Red Willow Offshore, LLC ("Red Willow"), and Houston Energy Deepwater Ventures I, LLC ("HEDV"), as amended, ("LSPS OA") and as a follow up to (i) the Galapagos LSPS In-Situ Repair Proposal Letter and AFE dated December 10, 2020 AFE No. NKO393390, and (ii) the Request for Sole Benefit Operation and AFE Operation letter submitted by Fieldwood to BP on December 24, 2020, Fieldwood, Red Willow, HEDV and BP, execute this Sole Benefit Operation and LSPS Loop Reinstatement Agreement, including all attachments hereto ("Letter Agreement") effective as of February ___ , 2021, to provide clarification and outline certain changes, modifications, or additions to certain operations to be performed by the LSPS Operator pursuant to the LSPS OA.  Unless provided otherwise, capitalized terms used and not otherwise defined herein shall have the meaning set forth in the LSPS OA.

**Recitals**

WHEREAS, an abnormality was observed on the LSPS, as referenced in BP's Galapagos LSPS In-Situ Repair Proposal Letter and AFE dated December 10, 2020 AFE No. NKO393390; and

WHEREAS, the LSPS Operator has determined that such abnormality was not caused by or related to the execution of certain tie-in work related to the installation of a Satellite Well System on  the MC519 Satellite Lease ("Genovesa Well"), which the LSPS Operator acknowledged during a meeting of the LSPS Owners on January 14, 2021; and

WHEREAS, the LSPS Operator conducted a bolt tightening operation per AFE No. NKO393390 that did not remediate the LSPS abnormality, has completed the LSPS Single Flowline Feasibility Study work under AFE No. NKO3923392, entitled Genovesa Tieback: Hydrate Management Philosophy Modified Loop Arrangement, , and determined it created an Adverse Impact to the Host and LSPS; and

WHEREAS, Fieldwood, Red Willow, and HEDV shall be collectively referred to as the ("Sole Benefit Operation Parties") that desires a Sole Benefit Operation be proposed and carried out by the LSPS Operator that would accelerate operations to allow production from the Genovesa Well to flow via a temporary flowline while the LSPS Operator prepares and commences pursuant to Article 4.08 in the LSPS OA a Major Non-Routine Expense and Operation to conduct remedial operations on the LSPS.  The Major Non-Routine Expense and Operation will authorize the LSPS Operator to repair the LSPS and to bring the LSPS back to its operable state as described in the LSPS OA and as determined by the LSPS Operator in its sole and absolute discretion, (hereinafter referred to as "LSPS' Functional Capability"); and

WHEREAS, on _____, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an Order [ECF No. [●]] in *In re Fieldwood Energy LLC*, et al., Case No. 20-33948 (MI) (the "Bankruptcy Case"), approving Fieldwood's entry into this Letter Agreement; and

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ___, 2021
BP Contract No. _____
Page **2** of **9**

NOW THEREFORE, in consideration of the promises, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the LSPS Owners do hereby agree to the following terms, each of which shall constitute clarification, changes, modifications, or additions to the LSPS OA and except as provided herein will be subject to and performed in accordance with the terms and conditions set forth in the LSPS OA.

**Agreement**

1. **Major Non-Routine Expenses and Operations**

Given the LSPS Operator's determination that the single flowline proposal by the Sole Benefit Operation Parties causes an Adverse Impact to the LSPS or Host, the single flowline plan must include a plan to achieve LSPS' Functional Capability that is binding and enforceable against the LSPS Owners to mitigate the condition in accordance with Article 7.08 in the LSPS OA.  In order to restore the LSPS to the LSPS' Functional Capability, the LSPS Operator shall issue one or more informational AFEs (herein called "LSPS Loop Reinstatement AFE") to the LSPS Owners as to the LSPS Equity Interest at the time the abnormality was identified.  Upon issuance of any such LSPS Loop Reinstatement AFE containing the information required in this provision, no additional information or approval is required by the LSPS Owners to authorize the LSPS Operator to commence the work scope described therein.  The LSPS Loop Reinstatement Execution AFE shall include a project execution plan containing engineering, procurement, and installation activities with reviewed cost and schedule estimate to support work breakdown structure.

The aggregate amount of all the LSPS Loop Reinstatement AFEs shall not exceed a gross total of forty million dollars ($40,000,000.00).  The scope of any LSPS Loop Reinstatement AFE is for activities that will mitigate the LSPS leak on the impaired PLEM at Santa Cruz ("SC") and replace the flowline segment to return LSPS to its configuration prior to "Temporary Genovesa Single Flowline" operation, as defined below, and to LSPS' Functional Capability.

The LSPS Loop Reinstatement AFEs, shall include but is not limited to the following scope:

   a. Replace the flowline segment including PLEM at Santiago ("SA"), PLEM at SC and ~5,000 feet of flowline connecting the two, as per current configuration; and
   b. Removal and decommissioning of SC flowline and SC well jumper, and PLEMs connected to flowline segment mentioned above.  Decommissioning of flowline segment assuming BSEE approval to abandon in place; and
   c. Fabrication of replacement flowline jumpers at SA and SC and tie-in Genovesa jumper and SC well jumper; and
   d. Reinstallation of permanent jumpers at SC, flowline jumper and well jumper.

In furtherance of any LSPS Loop Reinstatement AFE, the LSPS Operator shall have the sole right, with one hundred and eighty (180) day prior notice as it relates to the Genovesa Well and thirty (30) day prior notice as it relates to any other well to the LSPS Owners, to remove and tie-in jumpers including those deemed to be part of any Satellite Well System to enable safe construction operations in the field, determine the timing and scheduling of all activities and operations, including the temporary shut-in of

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ____, 2021
BP Contract No. _____
Page **3** of **9**

any well, the LSPS, or both.  Notwithstanding the foregoing, the LSPS Operator agrees to endeavor to conduct such shut-in during a planned Na Kika production curtailment event.  The LSPS Operator further agrees that all operations related to the LSPS Loop Reinstatement AFE shall minimize the duration of production shut in, to the extent possible, and that the commissioning of the LSPS will include concurrent commissioning of the MC 519 Satellite Well Systems.  The LSPS Operator further agrees to keep the Parties reasonably informed as to the workscope for this project and will invite the Parties to participate and provide input during technical meetings hosted by the LSPS Operator.

By executing this Letter Agreement, and pursuant to Article 4.08 in the LSPS OA, the LSPS Owners hereby approve the Major Non-Routine Expense and Operation to restore the LSPS to the LSPS' Functional Capability as described in this provision above.  The LSPS Operator shall restore the LSPS to the LSPS' Functional Capability as it is determined within the schedule provided within the LSPS Loop Reinstatement AFE described above.

2.  **Sole Benefit Operation**

**Phase 1 – SA Jumper Removal AFE**

Commitment of the Sole Benefit Operation Parties described under Section 1. *Major Non-Routine Expenses and Operations* of this Letter Agreement, the LSPS Operator, on behalf of the Sole Benefit Operation Parties, shall conduct operations to secure production from the Genovesa Well prior to the LSPS Loop Reinstatement AFE operation in line with the schedule in Attachment 1 ("Sole Benefit Implementation Schedule").

The LSPS Operator proposes operations that include, but are not limited to the following scope ("SA Jumper Removal AFE"):

a.  Flush existing jumper between Santiago PLEM1 and Santiago PLEM2 with methanol from the Santiago tree; and
b.  Removal of existing jumper between Santiago PLEM1 and Santiago PLEM2 and installation of pressure caps; and
c.  Installation of a permanent jumper between Santiago PLEM1 and Santiago PLEM2 (as required for LSPS' Functional Capability).

The SA Jumper Removal AFE scope and operation shall be carried out by the LSPS Operator in line with the Sole Benefit Implementation Schedule and it shall be billed by the LSPS Operator to the Sole Benefit Operation Parties, based on the "Sole Benefit Operation Parties ", as defined below in Section 3. *LSPS Sole Benefit Operation Parties Equity Interest*, of this Letter Agreement.  To the extent these operations are required for the LSPS Loop Reinstatement, the actual costs will be reimbursed by BP to the Sole Benefit Parties proportionately as to the LSPS Equity Interest at the time the abnormality was identified via a joint interest billing credit at the time the LSPS Loop reinstallation execute operations commence.  The SA Jumper Removal AFE is attached hereto as Attachment 1 to this Letter Agreement.  The Sole Benefit Operation Parties shall, simultaneously with execution of this Letter Agreement, execute the SA Jumper Removal AFE attached hereto as Attachment 2.  For the avoidance of doubt, any payment obligation of

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ___, 2021
BP Contract No. _____
Page **4** of **9**

Fieldwood arising during the pendency of its Bankruptcy Case shall constitute and be deemed an allowed administrative priority claim in favor of BP against Fieldwood to be payable in full in accordance with the priority provisions of the United States Bankruptcy Code (the "Bankruptcy Code").

**Phase 2 – Temporary Genovesa Single Flowline**

A Sole Benefit Operation has been proposed by the Sole Benefit Operation Parties that operation being the implementation and installation of a temporary configuration, as described below, to enable production from the Genovesa Well during the restoration of the LSPS' Functional Capability and in line with the Sole Benefit Implementation Schedule ("Temporary Single Flowline").

For the purposes of this Letter Agreement, the LSPS Operator has provided a cost estimate for the Temporary Single Flowline ("Temporary Genovesa Single Flowline AFE").  The Temporary Genovesa Single Flowline AFE shall include, but is not limited to the following scope:

   a.   Removal of existing jumper between Genovesa PLIS and Santiago PLEM1
   b.   Installation of temporary jumper between Genovesa PLIS and Santiago PLEM2
   c.   Removal of temporary jumper between Genovesa PLIS and Santiago PLEM2
   d.   Installation of a permanent jumper between Genovesa PLIS and Santiago PLEM1 (as required for LSPS' Functional Capability)

The Temporary Genovesa Single Flowline AFE scope and operation shall be carried out by the LSPS Operator in line with the Sole Benefit Implementation Schedule.  Notwithstanding the terms of the LSPS OA to the contrary, such costs for the Temporary Genovesa Single Flowline AFE shall be billed by LSPS Operator to the Sole Benefit Operation Parties, based on the "Sole Benefit Operation Parties Equity Interest", as defined below in Section 3. *LSPS Sole Benefit Operation Parties Equity Interest*, of this Letter Agreement.

The Temporary Genovesa Single Flowline AFE is attached hereto as Attachment 2 to this Letter Agreement.  The Sole Benefit Operation Parties shall, simultaneously with execution of this Letter Agreement, execute the Temporary Genovesa Single Flowline AFE attached hereto as Attachment 2.

3.   **LSPS Sole Benefit Operation Parties Equity Interest**

Notwithstanding anything to the contrary in the LSPS OA, as it pertains to this Letter Agreement only, the LSPS Sole Benefit Operation Parties Equity Interest shall be as follows:

Fieldwood:          65.00%

Red Willow:         30.00%

HEDV:               5.00%

4.   **LSPS Temporary Single Flowline Operations**

Notwithstanding anything to the contrary in the LSPS OA, and the Production Handling and Operating Services Agreement effective September 21, 2010, by and between Fieldwood, BP, Red Willow, and HEDV,

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ___, 2021
BP Contract No. _____
Page **5** of **9**

as amended, (the "PHA"), the LSPS Operator and Host Operator, as defined in the PHA, will operate the Temporary Single Flowline in accordance with BP's Operating Management  System  that will include the constraints previously agreed by BP and Fieldwood, in their respective operatorship roles.

5.   **Term**

This Letter Agreement shall terminate once the LSPS is returned to the LSPS' Functional Capability and all operations and costs associated with the LSPS Reinstatement AFE, SA Jumper Removal AFE, and the Temporary Genovesa Single Flowline AFE have been completed and fully satisfied as determined by the LSPS Operator in its sole and absolute discretion.

**MISCELLANEOUS PROVISIONS**

6.   Except as expressly set forth in this Letter Agreement, the LSPS OA shall remain in full force and effect. To the extent an inconsistency exists between the terms of the LSPS OA and this Letter Agreement, the provisions of this Letter Agreement shall govern and control. Except as expressly set forth in this Letter Agreement, none of the rights, interests and obligations existing and to exist under the LSPS OA are hereby released, diminished or impaired, and Parties each, hereby reaffirm all covenants and representations in the LSPS OA.

7.   Except as expressly set forth in this Letter Agreement, the PHA shall remain in full force and effect. To the extent an inconsistency exists between the terms of the PHA and this Letter Agreement, the provisions of this Letter Agreement shall govern and control.  Except as expressly set forth in this Letter Agreement, none of the rights, interests and obligations existing and to exist under the PHA are hereby released, diminished or impaired, and Parties each, hereby reaffirm all covenants and representations in the PHA.

8.   This Letter Agreement shall be binding upon and inure to the benefit of each Party's heirs, devisees, agents, representatives, successors and assigns, trustees, attorneys, members, legal representatives, controlled or controlling persons, and/or any corporation, partnership, or other entity into or with which such Party has merged, consolidated, or reorganized.

9.   The liability of the Sole Benefit Operation Parties described under Section 1 shall be joint and several. Each Sole Benefit Operation Party shall be responsible for the costs and obligations of the other Sole Benefit Operation Parties arising under this Letter Agreement.

10.  Fieldwood covenants and agrees that, in connection with any plan of reorganization or sale under section 363 of the Bankruptcy Code, as applicable, and subject to Bankruptcy Court approval thereof, it shall either assume or assume and assign to a well-capitalized third party demonstrating adequate protection of future performance, the LSPS OA (including this Letter Agreement) and the PHA.

**DEBTORS' EX. NO. 15**
**Page 6 of 25**

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ____, 2021
BP Contract No. _____
Page **6** of **9**

11. This Letter Agreement may only be modified or amended by the mutual agreement of the LSPS Owners in writing signed by the duly authorized representatives of the LSPS Owners; provided, however, the attachments, and only the attachments, to this Letter Agreement may be modified or amended for the sole purpose to efficiently execute the work, by written approval of both the LSPS Operator and Fieldwood, as the Satellite Lease Operator.

This Letter Agreement is executed in duplicate original counterparts, each of which when executed by each Party taken together shall be treated as an original and is to be effective as of the Effective Date; provided, however, a Party will not be bound by this Letter Agreement unless and until each signatory below has executed and transmitted to the other Parties a counterpart of both the Letter Agreement and the Attachments.  An electronically transmitted copy of an executed original shall have the same force and effect as the original.

IN WITNESS WHEREOF authorized signatories of the Parties have executed this Letter Agreement in duplicate, as follows:

**BP Exploration & Production Inc.**

By: _____

Name: Aimee DiTommaso_____

Title: Attorney in Fact_____

Date: _____

**Fieldwood Energy, Inc.**

By: _____

Name: _____

Title: _____

Date: _____

**Red Willow Offshore LLC**

By: _____

Name: _____

Title: _____

Date: _____

**Houston Energy Deepwater Ventures I, LLC**

By: _____

Name: _____

Title: _____

Date: _____

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ____, 2021
BP Contract No. _____
Page **7** of **9**

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ____, 2021
BP Contract No. _____
Page **8** of **9**

Attachment 1

Attached to that certain Sole Benefit Operation and LSPS Loop Reinstatement Agreement made effective February ____, 2021, by and between BP Exploration & Production Inc., Fieldwood Energy LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures I, LLC

| Activity | Deadline | Description |
|---|---|---|
| Genovesa jumper recovery | 2/28/21 | Complete the recovery of the Genovesa tie-in jumper |
| Host Facility updates and commissioning | 2/28/21 | Topside control systems and subsea tree commissioning |
| Jumper recovery Santiago flowline | 3/15/21 | Santiago flowline jumper de-oil recovery |
| Genovesa jumper re-installation | 4/15/21 | Complete the Genovesa jumper installation |
| Host Facility readiness and well start-up | 5/15/21 | Complete operational procedures and hazard assessments, and operator training in preparation for production from MC 519 #3 ("Genovesa") Well |
| Commence production from Genovesa Well (Lease OCS-G 27278 MC 519) | 5/31/21 | Start-up of production from the Genovesa Well in May 2021 |

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ____, 2021
BP Contract No. _____
Page **9** of **9**

Attachment 2
Attached to that certain Sole Benefit Operation and LSPS Loop Reinstatement Agreement made
effective February____, 2021, by and between BP Exploration & Production Inc., Fieldwood Energy LLC,
Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures I, LLC

SA Jumper Removal AFE Placeholder

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ___, 2021
BP Contract No. _____
Page **10** of **9**

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated February ____, 2021
BP Contract No. _____
Page **11** of **9**

Attachment 3

Attached to that certain Sole Benefit Operation and LSPS Loop Reinstatement Agreement made effective February ____, 2021, by and between BP Exploration & Production Inc., Fieldwood Energy LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures I, LLC

Temporary Genovesa Single Flowline AFE Placeholder

*BP Draft – 1.31.21*

**DRAFT – Pending Final Legal Review**

~~FW/RWO/HE Comments (Jan 20)~~

## Sole Benefit Operation and LSPS Loop Reinstatement Agreement

~~This agreement ("Letter~~Pursuant to Article 7.08 of the Galapagos Area Loop Subsea Production System Construction and Operating Agreement~~") is entered this ___ day of January, 2021 (the "Effective Date")~~, dated effective December 1, 2011, by and between BP Exploration & Production Inc. ("BP"), Fieldwood Energy LLC ("Fieldwood"),  Red Willow Offshore, LLC ("Red Willow"), and Houston Energy Deepwater Ventures I, LLC ("HEDV")~~; BP, Fieldwood, Red Willow, and HEDV are sometimes referred to herein individually as ("Party") and collectively as (the "Parties").  Capitalized~~, as amended, ("LSPS OA") and as a follow up to (i) the Galapagos LSPS In-Situ Repair Proposal Letter and AFE dated December 10, 2020 AFE No. NKO393390, and (ii) the Request for Sole Benefit Operation and AFE Operation letter submitted by Fieldwood to BP on December 24, 2020, Fieldwood, Red Willow, HEDV and BP, execute this Sole Benefit Operation and LSPS Loop Reinstatement Agreement, including all attachments hereto ("Letter Agreement") effective as of February ___ , 2021, to provide clarification and outline certain changes, modifications, or additions to certain operations to be performed by the LSPS Operator pursuant to the LSPS OA.  Unless provided otherwise, capitalized terms used and not otherwise defined herein shall have the meaning set forth in the ~~PHA, as defined below and the~~ LSPS OA~~, as defined below~~.

**Recitals**

~~WHEREAS, the LSPS Owners entered into that certain Loop Subsea Production System Construction and Operating Agreement effective December 1, 2011 by and between Fieldwood, BP, Red Willow, and HEDV, as amended, ("LSPS OA"); and~~

~~WHEREAS, the LSPS Owners entered into that certain Production Handling and Operating Services Agreement effective September 21, 2010 by and between Fieldwood Energy LLC ("Fieldwood"), BP Exploration & Production Inc. ("BP"), Red Willow Offshore, LLC ("Red Willow") and Houston Energy Deepwater Ventures I, LLC ("HEDV"), as amended, (the "PHA").~~

WHEREAS, an abnormality was observed on the LSPS, as referenced in BP's Galapagos LSPS In-Situ Repair Proposal Letter and AFE dated December 10, 2020 AFE No. NKO393390; and

WHEREAS, the LSPS Operator has determined that such abnormality was not caused by or related to the execution of certain tie-in work related to the installation of a Satellite Well System on  the MC519 Satellite Lease ("Genovesa Well"), which the LSPS Operator acknowledged during a meeting of the LSPS Owners on January 14, 2021; and

~~WHEREAS, Fieldwood, on behalf of itself, Red Willow, and HEDV sent a letter to the LSPS Operator dated December 24, 2020 proposing a Sole Benefit Operation (hereinafter referred to as the "Fieldwood Letter").  For the purposes of this Letter Agreement, Fieldwood, Red Willow, and HEDV shall be collectively referred to as "Sole Benefit Operation Parties"; and~~

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ___, 2021
BP Contract No. _____
Page **2** of **14**

WHEREAS, the LSPS Operator conducted a bolt tightening operation per AFE No. NKO393390 that did not remediate the LSPS abnormality, has completed the LSPS Single Flowline Feasibility Study work~~, (the "Feasibility Study")~~ under AFE No. NKO3923392, entitled Genovesa Tieback: Hydrate Management Philosophy Modified Loop Arrangement, , and determined it created an Adverse Impact to the Host and LSPS; and

WHEREAS, ~~the~~ Fieldwood, Red Willow, and HEDV shall be collectively referred to as the ("Sole Benefit Operation Parties ~~desire a sole~~") that desires a Sole Benefit Operation be proposed and carried out by the LSPS Operator that would accelerate operations to allow production from the Genovesa Well to flow via a temporary flowline while the LSPS Operator prepares and commences pursuant to Article 4.08 in the LSPS OA a Major Non-Routine Expense and Operation to conduct remedial operations on the LSPS.  The Major Non-Routine Expense and Operation will authorize the LSPS Operator to repair the LSPS and to bring the LSPS back to its operable state as described in the LSPS OA and as determined by the LSPS Operator in its sole and absolute discretion, (hereinafter referred to as "LSPS' Functional Capability")~~.~~; and

WHEREAS, on _____, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an Order [ECF No. [●]] in *In re Fieldwood Energy LLC*, et. al., Case No. 20-33948 (MI) (the "Bankruptcy Case"), approving Fieldwood's entry into this Letter Agreement; and

NOW THEREFORE, in consideration of the promises, the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the LSPS Owners do hereby agree ~~as follows:~~to the following terms, each of which shall constitute clarification, changes, modifications, or additions to the LSPS OA and except as provided herein will be subject to and performed in accordance with the terms and conditions set forth in the LSPS OA.

**Agreement**

1. **Major Non-Routine Expenses and Operations**

Given the LSPS Operator's determination that the single flowline proposal by the Sole Benefit Operation Parties causes an Adverse Impact to the LSPS or Host, the single flowline plan must include a plan to achieve LSPS' Functional Capability that is binding and enforceable against the LSPS Owners to mitigate the condition in accordance with Article 7.08 in the LSPS OA.  In order to restore the LSPS to the LSPS' Functional Capability, the LSPS Operator shall issue one or more informational AFEs (herein called "LSPS Loop Reinstatement AFE") to the LSPS Owners as to the LSPS Equity Interest at the time the abnormality was identified.  Upon issuance of any such LSPS Loop Reinstatement AFE containing the information required in this provision, no additional information or approval is required by the LSPS Owners to authorize the LSPS Operator to commence the work scope described therein.  The LSPS Loop Reinstatement Execution AFE shall include a project execution plan containing engineering, procurement, and installation activities with reviewed cost and schedule estimate to support work

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February _____, 2021
BP Contract No. _____
Page **3** of **14**

breakdown structure.  ~~For avoidance of doubt, the LSPS Owners reserve all rights under Exhibit C (Accounting Procedure) of the LSPS OA.~~

The aggregate amount of all the LSPS Loop Reinstatement AFEs shall not exceed a gross total of forty million dollars ($40,000,000.00).  The scope of any LSPS Loop Reinstatement AFE is for activities that will mitigate the LSPS leak on the impaired PLEM at Santa Cruz ("SC") and replace the flowline segment ~~(which consists of PLEM at SA, PLEM at SC and, as per current configuration, ~5,000 feet of flowline connecting the two), and reinstallation of permanent jumpers, including, without limitation, the removal, fabrication and installation of the Santa Cruz Jumper and the jumper from the Genovesa Well PLIS to Santiago PLEM1,~~ to return LSPS to its configuration prior to "Temporary Genovesa Single Flowline" operation, as defined below, and to LSPS' Functional Capability~~, as defined below~~.

The LSPS Loop Reinstatement AFEs, shall include but is not limited to the following scope:

   a.   Replace the flowline segment including PLEM at Santiago ("SA"), PLEM at SC and ~5,000 feet of flowline connecting the two, as per current configuration; and

   b.   Removal and decommissioning of SC flowline and SC well jumper, and PLEMs connected to flowline segment mentioned above.  Decommissioning of flowline segment assuming BSEE approval to abandon in place; and

   c.   Fabrication of replacement flowline jumpers at SA and SC and tie-in Genovesa jumper and SC well jumper; and

   d.   Reinstallation of permanent jumpers at SC, flowline jumper and well jumper.

In furtherance of any LSPS Loop Reinstatement AFE, the LSPS Operator shall have the sole right, with one hundred and eighty (180) day prior notice as it relates to the Genovesa Well and thirty (30) day prior notice as it relates to any other well to the LSPS Owners, to remove and tie-in jumpers including those deemed to be part of any Satellite Well System to enable safe construction operations in the field, determine the timing and scheduling of all activities and operations, including the temporary shut-in of any well, the LSPS, or both.  Notwithstanding the foregoing, the LSPS Operator agrees to endeavor to conduct such shut-in during a ~~Na Kika TAR and that such shut in will not exceed ninety (90) days~~planned Na Kika production curtailment event.  The LSPS Operator further agrees that all operations related to the LSPS Loop Reinstatement AFE shall minimize the duration of ~~shut in of MC 519 Satellite Well Systems, prioritize the restoration of production of MC519 Satellite Well Systems shut in under this provision~~production shut in, to the extent possible, and that the commissioning of the LSPS will include concurrent commissioning of the MC 519 Satellite Well Systems.  The LSPS Operator further agrees to ~~form a Project Team, as provided for under Article 8.5 of Exhibit K of the LSPS OA, where the workscope is to pool the talents of the Parties to assist in development, evaluation and implementation of a plan to restore the LSPS to the LSPS' Functional Capability.³ All risks, costs, expenses and liabilities associated with the operations and Project Team described in this provision is based on LSPS Equity Interest.~~keep the Parties reasonably informed as to the workscope

~~³ The Project Team will function in a manner similar to that Project Team utilized to LSPS was originally developed.~~

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ____, 2021
BP Contract No. _____
Page **4** of **14**

for this project and will invite the Parties to participate and provide input during technical meetings hosted by the LSPS Operator.

By executing this Letter Agreement, and pursuant to Article 4.08 in the LSPS OA, the LSPS Owners hereby approve the Major Non-Routine Expense and Operation to restore the LSPS to the LSPS' Functional Capability as described in this provision above.  The LSPS Operator shall restore the LSPS to the LSPS' Functional Capability ~~not later than two (2) years from the Effective Date.~~ as it is determined within the schedule provided within the LSPS Loop Reinstatement AFE described above.

2.  **Sole Benefit Operation**

**Phase 1 – SA Jumper Removal AFE**

~~In exchange for the commitment~~Commitment of the Sole Benefit Operation Parties described under Section 1. *Major Non-Routine Expenses and Operations* of this Letter Agreement, the LSPS Operator, on behalf of the Sole Benefit Operation Parties, shall conduct operations to secure production from the Genovesa Well prior to the LSPS Loop Reinstatement AFE operation in line with the schedule in Attachment ~~3~~1 ("Sole Benefit Implementation Schedule").

The LSPS Operator proposes ~~activities operation~~operations that ~~includes~~include, but ~~is~~are not limited to the following scope ("SA Jumper Removal AFE"):

a.  Flush existing jumper between Santiago PLEM1 and Santiago PLEM2 with methanol from the Santiago tree; and
b.  Removal of existing jumper between Santiago PLEM1 and Santiago PLEM2 and installation of pressure caps; and
c.  Installation of a permanent jumper between Santiago PLEM1 and Santiago PLEM2 (as required for LSPS' Functional Capability).

The SA Jumper Removal AFE scope and operation shall be carried out by the LSPS Operator in line with the Sole Benefit Implementation Schedule and it shall be billed by the LSPS Operator to the ~~LSPS Owners, based on~~Sole Benefit Operation Parties, based on the "Sole Benefit Operation Parties ", as defined below in Section 3. *LSPS Sole Benefit Operation Parties Equity Interest*, of this Letter Agreement. To the extent these operations are required for the LSPS Loop Reinstatement, the actual costs will be reimbursed by BP to the Sole Benefit Parties proportionately as to the LSPS Equity Interest at the time the abnormality was identified via a joint interest billing credit at the time the LSPS Loop reinstallation execute operations commence. The SA Jumper Removal AFE is attached hereto as Attachment 1 to this Letter Agreement.  The ~~LSPS Owners~~Sole Benefit Operation Parties shall, simultaneously with execution of this Letter Agreement, execute the SA Jumper Removal AFE attached hereto as Attachment ~~1~~2. For the avoidance of doubt, any payment obligation of Fieldwood arising during the pendency of its Bankruptcy Case shall constitute and be deemed an allowed administrative priority claim in favor of BP against Fieldwood to be payable in full in accordance with the priority provisions of the United States Bankruptcy Code (the "Bankruptcy Code").

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ___, 2021
BP Contract No. _____
Page **5** of **14**

### Phase 2 – Temporary Genovesa Single Flowline

~~As referred to within the Fieldwood Letter, a~~A Sole Benefit Operation has been proposed by the Sole Benefit Operation Parties~~;~~ that operation being  the implementation and installation of a temporary configuration, as described below,  to enable production from the Genovesa Well during the restoration of the LSPS' Functional Capability and in line with the Sole Benefit Implementation Schedule ("Temporary Single Flowline").

For the purposes of this Letter Agreement, the ~~temporary single flowline referred to within the Fieldwood Letter (shall be referred to herein as the~~ LSPS Operator has provided a cost estimate for the Temporary Single Flowline ("Temporary Genovesa Single Flowline AFE").   The Temporary Genovesa Single Flowline AFE shall include, but is not limited to the following scope:

   a.   Removal of existing jumper between Genovesa PLIS and Santiago PLEM1
   b.   Installation of temporary jumper between Genovesa PLIS and Santiago PLEM2
   c.   Removal of temporary jumper between Genovesa PLIS and Santiago PLEM2
   d.   Installation of a permanent jumper between Genovesa PLIS and Santiago PLEM1 (as required for LSPS' Functional Capability)

The Temporary Genovesa Single Flowline AFE scope and operation shall be carried out by the LSPS Operator in line with the Sole Benefit Implementation Schedule.  Notwithstanding the terms of the LSPS OA to the contrary, such costs for the Temporary Genovesa Single Flowline AFE shall be billed by LSPS Operator to the Sole Benefit Operation Parties, based on the "Sole Benefit Operation Parties Equity Interest", as defined below in Section 3. *LSPS Sole Benefit Operation Parties Equity Interest*, of this Letter Agreement.

The Temporary Genovesa Single Flowline AFE is attached hereto as Attachment 2 to this Letter Agreement.  The Sole Benefit Operation Parties shall, simultaneously with execution of this Letter Agreement, execute the Temporary Genovesa Single Flowline AFE attached hereto as Attachment 2.

3.   **LSPS Sole Benefit Operation Parties Equity Interest**

Notwithstanding anything to the contrary in the LSPS OA, as it pertains to this Letter Agreement only, the LSPS Sole Benefit Operation Parties Equity Interest shall be as follows:

Fieldwood:       65.00%

Red Willow:      30.00%

HEDV:             5.00%

4.   ~~SA Jumper Removal AFE and~~LSPS Temporary ~~Genovesa~~ Single Flowline ~~AFE~~ Operations

~~The LSPS Operator shall carry out the SA Jumper Removal AFE and~~Notwithstanding anything to the contrary in the LSPS OA, and the Production Handling and Operating Services Agreement effective September 21, 2010, by and between Fieldwood, BP, Red Willow, and HEDV, as amended, (the "PHA"),

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ____, 2021
BP Contract No. _____
Page **6** of **14**

the LSPS Operator and Host Operator, as defined in the PHA, will operate the Temporary ~~Genovesa~~ Single Flowline ~~AFE work scope in line with the Sole Benefit Implementation Schedule and subject to the terms and conditions of the LSPS OA and the operational requirements for producing and handling Genovesa Well production at the Host are subject to the terms and conditions in the PHA.~~in accordance with BP's Operating Management System that will include the constraints previously agreed by BP and Fieldwood, in their respective operatorship roles.

5.   **Term**

This Letter Agreement shall terminate once the LSPS is returned to the LSPS' Functional Capability and all operations and costs associated with the LSPS Reinstatement AFE, SA Jumper Removal AFE, and the Temporary Genovesa Single Flowline AFE have been completed and fully satisfied as determined by the LSPS Operator in its sole and absolute discretion.

**MISCELLANEOUS PROVISIONS**

6.   ~~Na Kika Host~~Except as expressly set forth in this Letter Agreement, the LSPS OA shall remain in full force and effect.  To the extent an inconsistency exists between the terms of the LSPS OA and this Letter Agreement, the provisions of this Letter Agreement shall govern and control. Except as expressly set forth in this Letter Agreement, none of the rights, interests and obligations existing and to exist under the LSPS OA are hereby released, diminished or impaired, and Parties each, hereby reaffirm all covenants and representations in the LSPS OA.
~~BP, in its capacity as Owner and Host Operator under the PHA, agrees to support the activities described in this Letter Agreement and further agrees not to hinder or otherwise delay any such activities.~~

7.   ~~Conflict~~Except as expressly set forth in this Letter Agreement, the PHA shall remain in full force and effect.  To the extent an inconsistency exists between the terms of the PHA and this Letter Agreement, the provisions of this Letter Agreement shall govern and control.  Except as expressly set forth in this Letter Agreement, none of the rights, interests and obligations existing and to exist under the PHA are hereby released, diminished or impaired, and Parties each, hereby reaffirm all covenants and representations in the PHA.

~~Should there be a conflict between this Letter Agreement and/or the LSPS OA, and/or the PHA, the terms of this Letter Agreement shall prevail.~~

~~8.   Successors and Assigns~~

8.   This Letter Agreement shall be binding upon and inure to the benefit of each Party's heirs, devisees, agents, representatives, successors and assigns, trustees, attorneys, members, legal

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ____, 2021
BP Contract No. _____
Page **7** of **14**

representatives, controlled or controlling persons, and/or any corporation, partnership, or other entity into or with which such Party has merged, consolidated, or reorganized.

9. ~~Title and Headings~~The liability of the Sole Benefit Operation Parties described under Section 1 shall be joint and several. Each Sole Benefit Operation Party shall be responsible for the costs and obligations of the other Sole Benefit Operation Parties arising under this Letter Agreement. ~~Titles and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of the Letter Agreement.~~

10. ~~No Amendment to the LSPS OA or PHA~~Fieldwood covenants and agrees that, in connection with any plan of reorganization or sale under section 363 of the Bankruptcy Code, as applicable, and subject to Bankruptcy Court approval thereof, it shall either assume or assume and assign to a well-capitalized third party demonstrating adequate protection of future performance, the LSPS OA (including this Letter Agreement) and the PHA.

11. This Letter Agreement ~~does not alter or amend the terms of the LSPS OA or PHA~~may only be modified or amended by the mutual agreement of the LSPS Owners in writing signed by the duly authorized representatives of the LSPS Owners; provided, however, the attachments, and only the attachments, to this Letter Agreement may be modified or amended for the sole purpose to efficiently execute the work, by written approval of both the LSPS Operator and Fieldwood, as the Satellite Lease Operator.

~~11. Entire Agreement and Merger~~
~~The Parties agree that this Letter Agreement and its attachments constitute the full, final, and complete agreement and other matters addressed herein, and supersedes all other written or oral exchanges, arrangements, or negotiations between them concerning this Letter Agreement.  The Parties further agree that there are no representations, agreements, arrangements, or understandings, oral or written, concerning the subject matter of this Letter Agreement that are not fully expressed, merged into, and incorporated herein.~~

~~12. Duplicate Counterparts~~
This Letter Agreement is executed in duplicate original counterparts, each of which when executed by each Party taken together shall be treated as an original and is to be effective as of the Effective Date; provided, however, a Party will not be bound by this Letter Agreement unless and until each signatory below has executed and transmitted to the other Parties a counterpart of both the Letter Agreement and the Attachments.  An electronically transmitted copy of an executed original shall have the same force and effect as the original.

IN WITNESS WHEREOF authorized signatories of the Parties have executed this Letter Agreement in duplicate, as follows:

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ____, 2021
BP Contract No. _____
Page **8** of **14**

**BP Exploration & Production Inc.**                    **Red Willow Offshore LLC**

By: _____          By: _____

Name: Aimee DiTommaso_____          Name: _____

Title: Attorney in Fact_____          Title: _____

Date: _____          Date: _____

**Fieldwood Energy, Inc.**                              **Houston Energy Deepwater Ventures I, LLC**

By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February _____, 2021
BP Contract No. _____
Page **9** of **14**

Attachment 1

Attached to that certain Sole Benefit Operation and LSPS Loop Reinstatement Agreement made effective ~~January~~ February _____, 2021, by and between BP Exploration & Production Inc., Fieldwood Energy LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures I, LLC

| Activity | Deadline | Description |
|---|---|---|
| Genovesa jumper recovery | 2/28/21 | Complete the recovery of the Genovesa tie-in jumper |
| Host Facility updates and commissioning | 2/28/21 | Topside control systems and subsea tree commissioning |
| Jumper recovery Santiago flowline | 3/15/21 | Santiago flowline jumper de-oil recovery |
| Genovesa jumper re-installation | 4/15/21 | Complete the Genovesa jumper installation |
| Host Facility readiness and well start-up | 5/15/21 | Complete operational procedures and hazard assessments, and operator training in preparation for production from MC 519 #3 ("Genovesa") Well |
| Commence production from Genovesa Well (Lease OCS-G 27278 MC 519) | 5/31/21 | Start-up of production from the Genovesa Well in May 2021 |

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ____, 2021
BP Contract No. _____
Page **10** of **14**

Attachment 2
Attached to that certain Sole Benefit Operation and LSPS Loop Reinstatement Agreement made
effective February ____, 2021, by and between BP Exploration & Production Inc., Fieldwood Energy LLC,
Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures I, LLC

SA Jumper Removal AFE Placeholder

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ____, 2021
BP Contract No. _____
Page **11** of **14**

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ____, 2021
BP Contract No. _____
Page **12** of **14**

Attachment ~~2~~3

Attached to that certain Sole Benefit Operation and LSPS Loop Reinstatement Agreement made effective ~~January~~February ____, 2021, by and between BP Exploration & Production Inc., Fieldwood Energy LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures I, LLC

Temporary Genovesa Single Flowline AFE Placeholder

~~Attachment 3~~

~~Attached to that certain Sole Benefit Operation and LSPS Loop Reinstatement Agreement made effective January ____, 2021, by and between BP Exploration & Production Inc., Fieldwood Energy LLC, Red Willow Offshore, LLC, and Houston Energy Deepwater Ventures I, LLC~~

DRAFT – PENDING FINAL LEGAL REVIEW

Sole Benefit Operation and LSPS Loop Reinstatement Agreement
Dated ~~January~~February ___, 2021
BP Contract No. _____
Page **13** of **14**

