## EXHIBIT A

**Sublease Amendment**

*Execution Version*

# FOURTH AMENDMENT
# TO SUBLEASE AGREEMENT

THIS FOURTH AMENDMENT TO SUBLEASE AGREEMENT (this "Amendment") is made and entered into as of the __ day of _____, 202_, by and between APACHE CORPORATION, a Delaware corporation ("Sublessor"), and FIELDWOOD ENERGY LLC, a Delaware limited liability company ("Sublessee").

WHEREAS, Sublessor and Sublessee entered into that certain Sublease Agreement, dated as of September 30, 2013, pertaining to certain space in the building known as One BriarLake Plaza located at 2000 West Sam Houston Parkway South, Houston, Texas (the "Original Sublease"), as amended by that certain First Amendment to Sublease Agreement, dated as of January 2, 2014, between Sublessor and Sublessee (the "First Amendment"), as further amended by that certain Second Amendment to Sublease Agreement, dated as of September 7, 2017, between Sublessor and Sublessee (the "Second Amendment"), and as further amended by that certain Third Amendment to Sublease Agreement, dated as of May 21, 2018, between Sublessor and Sublessee (the "Third Amendment", and the Original Sublease, the First Amendment, the Second Amendment, and the Third Amendment collectively, the "Sublease");

WHEREAS, commencing August 3, 2020, Sublessee and certain affiliates of Sublessee filed voluntary petitions with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") initiating their respective cases pending under chapter 11 of title 11 of the United States Code styled *In re Fieldwood Energy LLC, et al.*, jointly administered under Case No. 20-33948 (MI) (the "Chapter 11 Case"); and

WHEREAS, Sublessor and Sublessee desire to further amend the Sublease pursuant to this Amendment.

NOW, THEREFORE, for and in consideration of the foregoing and for other good and valuable consideration and of the mutual agreements hereinafter set forth, Sublessor and Sublessee stipulate, covenant, and agree as follows:

1.      All undefined capitalized terms used in this Amendment shall have the meaning given to them in the Sublease.  The term "Effective Date" means the first day of the month after occurrence of each of (i) Sublessee's express assumption of the Sublease, as amended by this Amendment, with approval of such assumption by order of the Bankruptcy Court in form and substance reasonably acceptable to Sublessor, (ii) Sublessee's payment in full to Sublessor of all amounts owed by Sublessee to Sublessor pursuant to the Sublease, which, as of the date hereof, are indicated on Schedule 1 attached hereto, and (iii) Prime Lessor's execution and delivery to Sublessor of its written consent to this Amendment.

2.      On and as of the Effective Date, expiration of the Sublease Term pursuant to Section 3.01 of the Original Sublease is hereby amended as follows:

(a)    The Sublease Term shall expire on October 31, 2024, unless terminated earlier pursuant to the terms of the Sublease, as amended by this Amendment.

(b)    Sublessee shall have the right and option to terminate the Sublease Term as to any of (i) all of floor 12 of the Subleased Premises, (ii) all of floor 15 of the Subleased Premises, or (iii) Suite B0300 in the basement level of the Subleased Premises, with any such termination in the case of (i), (ii), and (iii) being effective no earlier than after occurrence of each of (1) effectiveness of Sublessee's Plan of Reorganization (defined below), (2) consummation of the Credit Bid Transaction, (3) consummation of the transactions contemplated by the Divisive Merger Documents (defined below), (4) the second anniversary of the Effective Date, and (5) timely delivery of Requisite Notice (defined below).

(c)    Sublessee shall have the right and option to terminate the Sublease Term as to any of (i) all of floor 16 of the Subleased Premises, (ii) all of floor 17 of the Subleased Premises, (iii) all of floor 18 of the Subleased Premises, (iv) Suite B0150 in the basement level of the Subleased Premises, or (v) Suite B0200 in the basement level of the Subleased Premises, with any such termination in the case of (i), (ii), (iii), and (iv) being effective no earlier than after occurrence of each of (1) effectiveness of Sublessee's Plan of Reorganization, (2) consummation of the Credit Bid Transaction, (3) consummation of the transactions contemplated by the Divisive Merger Documents, (4) termination of the Transition Services Agreement (defined below), (5) termination of the Service Provider Agreement (defined below), if any, and (6) timely delivery of Requisite Notice.

(d)    To exercise any option under Section 2(b) or 2(c) of this Amendment, Sublessee must deliver to Sublessor no later than six months before the date on which the termination is to be effective a written notice of such exercise, specifying the eligible whole floor or whole floors or basement Suite or Suites in respect of which such early termination of the Sublease Term is to apply, certifying that such exercise complies with the requirements of Section 2(b) or 2(c) hereof, as applicable, and specifying the effective date of such termination, which can be no earlier than six months after the date on which such notice is delivered to Sublessor ("Requisite Notice").

As used in this Amendment, the following terms have the indicated meaning:

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

"Confirmation Order" means the confirmation order entered in the Bankruptcy Case which, if and to the extent such confirmation order directly affects Sublessor in its capacity as such or pertains to the Sublease, as amended by this Amendment, or other Apache Definitive Documents (as defined in that certain Apache Term Sheet Implementation Agreement, dated as of the date hereof, by and among Sublessee, GOM Shelf LLC, Sublessor, Apache Shelf, Inc., and Apache Deep Water LLC), shall be in form and substance reasonably acceptable to Sublessor.

"Credit Bid Transaction" means the sale of certain of the Sublessee's deepwater assets and other assets to FWII, which sale may be effectuated through the Plan of Reorganization or as a standalone sale outside of the Plan of Reorganization pursuant to section 363 of the Bankruptcy Code with approval by order of the Bankruptcy Court in form and substance reasonably acceptable to Sublessor with respect to provisions affecting the Sublease or this Amendment.

2

"Divisive Merger Documents" means the certificate of division, the plan of division, the certificate of merger, and other documents included in, and confirmed by, the Confirmation Order and filed by or on behalf of Sublessee with the Texas Secretary of State.

"Fieldwood Energy I LLC" or "FWI" means a Texas limited liability company resulting from implementation of the Divisive Merger Documents, with the composition and structure of the ownership, management, assets, and liabilities of such company being satisfactory to Sublessor.

"FWII" means an entity to be formed and organized under the laws of a state of the United States of America at the direction of the Prepetition FLTL Lenders (as defined in the RSA) for the purposes of the Credit Bid Transaction, with the composition and structure of the ownership, assets, and liabilities of such entity being reasonably satisfactory to Sublessor, it being agreed that the ownership, assets and liabilities of such entity shall be deemed to be reasonably satisfactory to Sublessor so long as it is consistent with the description of such entity referred to as "Fieldwood II" in the RSA.

"Plan of Reorganization" means the plan of reorganization of Sublessee included in, and confirmed by, the Confirmation Order, including, without limitation, the Assignment (defined in Section 7 below) and FWII Assumption (defined in Section 7 below).

"RSA" means that certain Restructuring Support Agreement, dated as of August 4, 2020, by and among Sublessee and certain affiliates of Sublessee, certain of its affiliates specified therein, Sublessor, and the Consenting Creditors (as defined in the RSA), as the same may be amended, restated, or otherwise modified in accordance with its terms.

"Service Provider Agreement" means a service provider agreement if entered into by FWI or Sublessor and FWII pursuant to which FWII is service provider to perform all operations and/or plugging and abandonment and decommissioning activities with respect to the properties or assets of FWI and GOM Shelf LLC, a Delaware limited liability company, and its successors and assigns.

"Transition Services Agreement" means a transition services agreement between FWI and FWII in form and substance attached as Exhibit A to FWI's Limited Liability Company Agreement and to be entered into upon the effectiveness of the Plan of Reorganization.

3.      On and as of the Effective Date, each of (i) Section 3.05 of the Original Sublease, relating to a mutual option to extend the Sublease Term, (ii) Section 17.02 of the Original Sublease, relating to Vacated Space, and (iii) Section 5 of the Third Amendment, relating to a right of first refusal, is terminated.

4.      On and as of the Effective Date, (i) Base Rent for purposes of the first sentence in Section 4.01 of the Original Sublease, Section 3 of the Second Amendment, and Section 3 of the Third Amendment, and (ii) Storage Space Rental for purposes of Section 16.01 of the Original Sublease are hereby amended such that Sublessee shall pay Sublessor, without setoff or deduction whatsoever, except as expressly set forth in the Sublease, the following amounts for the indicated Subleased Premises commencing on the Effective Date through expiration of the Sublease Term, which amounts shall be in addition to Sublessee's Proportionate Share of Operating Expenses of the Building and all other amounts payable by Sublessee under the Sublease, as amended hereby:

3

| Subleased Premises | Square Footage | Annual Base Rent/ Sq. Ft. | Amount/Month | Amount/Year |
|---|---|---|---|---|
| Floor 12 | 24,632 | $10.00 | $20,526.67 | $246,320.00 |
| Floor 15 | 25,865 | $10.00 | $21,554.17 | $258,650.00 |
| Floor 16 | 25,865 | $10.00 | $21,554.17 | $258,650.00 |
| Floor 17 | 25,865 | $10.00 | $21,554.17 | $258,650.00 |
| Floor 18 | 25,865 | $10.00 | $21,554.17 | $258,650.00 |
| Suite B0300 | 3,704 | $10.00 | $3,086.67 | $37,040.00 |
| Suite B0200 | 1,149 | $10.00 | $957.50 | $11,490.00 |
| Suite B0150 | 740 | $10.00 | $616.67 | $7,400.00 |
| *Total* | 133,685 | | $111,404.17 | $1,336,850.00 |

5.      On and as of the Effective Date, Sublessee shall have no right under Article X of the Original Sublease to request Sublessor to exercise Sublessor's right to lease additional parking spaces attributable to the Subleased Premises or to substitute unreserved parking spaces attributable to the Subleased Premises for reserved parking spaces.

6.      The Sublease remains in full force and effect in accordance with its terms and as of the Effective Date, as amended by Sections 2, 3, 4 and 5 of this Amendment.  As of the Effective Date, all references in the Sublease to "Sublease" shall mean the Sublease, as amended by this Amendment.

7.      After the Effective Date and upon effectiveness of Sublessee's Plan of Reorganization, consummation of the Credit Bid Transaction and the transactions contemplated by the Divisive Merger Documents, full performance by Sublessee of Sublessee's obligations under the Sublease to the date of effectiveness of the Assignment, and the FWII Assumption, Sublessee hereby assigns to FWII the rights and delegates to FWII the duties of Sublessee under the Sublease, as amended by this Amendment (the "Assignment").  Upon effectiveness of the Assignment, FWII's execution and delivery to Sublessor of the below counterpart of this Amendment shall constitute FWII's assumption of, and FWII's agreement to fully and timely perform the obligations of Sublessee arising from and after the date of effectiveness of the Assignment under, the Sublease, as amended to the date thereof (the "FWII Assumption"), whereupon FWII shall be bound as Sublessee under the Sublease, as so amended, and all references in the Sublease, as so amended, to "Sublessee" shall mean FWII.

8.      Each party warrants to the other that it has had no dealing with any broker or agent except Cushman & Wakefield of Texas, Inc. in connection with the negotiation or execution of this Amendment.  Each party agrees to indemnify the other party and hold the other party harmless from and against any and all costs, expenses, or liability for commissions, fees, or other compensations or charges which are based on any agreement or understanding such party may have had with any broker or agent with respect to this Amendment.

9.      For purposes of Section 1.04 of the Sublease, Sublessee's address for notice is updated to be as set forth beneath its signature below.

10.      The parties may execute this Amendment in multiple original counterparts, each of which shall have the full force and effect of an original but constituting only one instrument.

4

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, duly authorized representatives of the parties hereto have executed this Amendment as of the day and year first above written.

**SUBLESSOR:**

**APACHE CORPORATION,**
a Delaware corporation


By: _____
Name:  Timothy R. Custer
Title:    Senior Vice President, Commercial

**SUBLESSEE:**

**FIELDWOOD ENERGY LLC,**
a Delaware limited liability company


By: _____
Name: _____
Title: _____

Fieldwood Energy LLC
2000 W. Sam Houston Pkwy. South, Suite 1200
Houston, TX 77042
Fax:  713.969.1099
Attention:_____

5

## FWII COUNTERPART

Upon existence of FWII, effectiveness of Sublessee's Plan of Reorganization, and consummation of the Credit Bid Transaction and transactions contemplated by the Divisive Merger Documents, an authorized representative of FWII executes this Amendment pursuant to Section 7 hereof on the date written below to evidence FWII's assumption of, and agreement to be bound by, and fully and timely perform the obligations of Sublessee arising from and after the date written below under, the Sublease, as amended to the date written below.

**FWII:**

_____,
a _____

By: _____
Name: _____
Title: _____

Date Signed:_____

Address:

_____
_____
_____
Fax:_____
Attention: _____

6

**Fieldwood AS OF 2.8.2021**

### RENT

|  | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | TOTAL 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Billed | $435,297.63 | $435,297.63 | $435,297.63 | $435,220.68 | $435,220.68 | $435,220.68 | $435,220.68 | $435,220.68 | $435,220.68 | $435,220.68 | 451,236.95 | 451,236.95 | 452,187.00 | 452,187.00 | $6,159,285.55 |
| Rec'd | $ 450,178.00 | $ 450,140.00 | $ 405,383.00 | $ 435,221.00 | $ 435,221.75 | 435,221.29 | $ 435,221.00 | $ 435,221.00 | $ 435,221.00 | $ 435,221.00 | 451,756.00 | 451,756.00 | 452,162.00 | 452,187.00 | $ 6,160,110.04 |
| Difference | ($14,880.37) | ($14,842.37) | $29,914.63 | ($0.32) | ($1.07) | ($0.61) | ($0.32) | ($0.32) | ($0.32) | ($0.32) | (519.05) | (519.05) | 25.00 | 0.00 | ($824.49) |

Rent - Total Pre- Pettions    $189.57
Rent - Total Post-Petition    ($1,014.06)

### RESERVED/VIP PARKING

|  | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | TOTAL 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Billed | $530.43 | $530.43 | $530.43 | $530.43 | $530.43 | $530.43 | $530.43 | $530.43 | $530.43 | $151.55 | $1,017.55 | $1,017.55 | $1,017.55 | $0.00 | $7,978.07 |
| Rec'd | $ 530.43 | $ 530.43 | $ 530.43 | $ - | $ 530.43 | $ - | $ - | $ - | $ 530.43 | $ - | $ 1,017.55 | $ - |  |  | $ 3,669.70 |
| Difference | $0.00 | $0.00 | $0.00 | $530.43 | $0.00 | $530.43 | $530.43 | $530.43 | $0.00 | $151.55 | $0.00 | $1,017.55 | $1,017.55 | $0.00 | $4,308.37 |
| Inv# |  |  |  | 1487126A |  | 15156580 | 15249516 | 15328301 |  | POS15512426 | POS15569914 | POS15662466 | POS15746698 |  |  |
| Voucher# |  |  |  | 1173890 |  | 1176976 | 1176075 | 1181778 |  | 1208720 | 1229386 | 1226474 | 1232530 |  |  |

Parking - Total Pre-Petition    $1,591.29
Parking - Total Post-Petition    $2,717.08

### ANCILLARY

|  | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | TOTAL 2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Billed | $ 5,670.00 | $ 4,282.36 | $ 5,924.37 | $ 12,282.77 | May-June | $ 7,305.30 | $ 4,002.69 | $ 5,140.25 | $ 6,657.35 | $ 3,505.70 | $ 3,532.09 | $ 3,499.98 | $ 2,598.27 |  | $ 64,401.13 |
| Rec'd | $ 5,670.00 | $ 4,282.36 | $ 5,924.37 | $ - |  | $ - | $ - | $ 69.49 | $ - | $ - | $ - | $ - | $ - |  | $ 15,946.22 |
| Difference | $ - | $ - | $ - | $ 12,282.77 | $0.00 | $ 7,305.30 | $ 4,002.69 | $ 5,070.76 | $ 6,657.35 | $ 3,505.70 | $ 3,532.09 | $ 3,499.98 | $ 2,598.27 |  | $ 48,454.91 |
| Inv# |  |  |  | 4302020 |  | 6292020 | 7222020 | PRE8312020 | POS9292020 | POS10282020 | POS12032020 | POS12212020 | POS1222021 |  |  |
| Voucher# |  |  |  | 1154058 |  | 1178211 | 1181763 | 1192769 | 1208722 | 1208721 | 1226475 | 1230433 | 1236673 |  |  |

Ancillary - Total Pre-Petition    $ 23,590.76
Ancillary - Total Post-Petition    $ 24,864.15

   $ 51,938.79

| SUMMARY | PRE-PETITION | POST-PETITION | TOTAL |
|---|---|---|---|
| RENT | 189.57 | (1,014.06) | (824.49) |
| PARKING | 1,591.29 | 2,717.08 | 4,308.37 |
| ANCILLARY | 23,590.76 | 24,864.15 | 48,454.91 |
| TOTAL | $25,371.62 | $26,567.17 | $51,938.79 |

| TOTAL 2020 BILLED BY APA | 6,231,664.75 |
|---|---|
| TOTAL 2020 PAID BY FW | 6,179,725.96 |
| TOTAL DIFF BILLED VS PAID | 51,938.79 |

DEBTORS' EX. NO. 2