## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | |

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER
## (I) APPROVING NON-PROSECUTION AGREEMENT WITH
## THE UNITED STATES ATTORNEY'S OFFICE FOR THE EASTERN
## DISTRICT OF LOUISIANA AND (II) GRANTING RELATED RELIEF

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**Preliminary Statement**

1.      After extensive discussions spanning over six months, Fieldwood and the United States of America, through its attorneys, the United States Attorney's Office for the Eastern District of Louisiana ("**USAO**"), have executed a non-prosecution agreement (the "**NPA**") to resolve alleged violations of criminal law for incidents that occurred during Fieldwood's operation of certain offshore oil and gas properties in the Gulf of Mexico in 2015 and 2018.   As further detailed below, pursuant to the NPA, the USAO has agreed not to prosecute Fieldwood or any of its officers or directors for the alleged criminal violations related to the conduct described in the NPA in exchange for Fieldwood undertaking certain obligations, including (but not limited to) accepting responsibility for such criminal violations and paying a $2 million fine, payable in equal semiannual installments over the next two years.

2.      For the reasons discussed herein, approval of the NPA is in the best interests of the Debtors, their creditors, the U.S. Government, and all other parties in interest, as it (i) resolves a significant liability for substantially less than the amount in criminal penalties that the USAO would have otherwise sought absent execution of the NPA, (ii) avoids the challenges that may result from a criminal indictment or conviction, (iii) concludes a criminal investigation against Fieldwood, and (iv) avoids the costs of defending criminal charges, where the Debtors estimate that they would likely have spent approximately $2 million in defense costs alone.   With the USAO's investigation behind them, the Debtors can continue to focus their attention and resources on their restructuring, seeking approval of their proposed disclosure statement and confirmation of their chapter 11 plan.

## Background

3.     Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

4.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

## Jurisdiction

6.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.     By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtors request entry of an order (i) approving the Debtors' entry into the NPA and performance of the obligations thereunder and (ii) granting related relief.

8.     A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

9.      In support of this Motion, the Debtors submit the *Declaration of Michael T. Dane in Support of Motion of Debtors for Entry of an Order (I) Approving Non-Prosecution Agreement with the United States Attorney's Office for the Eastern District of Louisiana and (II) Granting Related Relief*, attached hereto as **Exhibit B** (the "**Declaration**").

### Non-Prosecution Agreement

10.     The NPA, a copy of which is attached hereto as **Exhibit C**, is the culmination of months of negotiations between Fieldwood and the USAO.  It favorably resolves certain criminal violations alleged by the USAO—for which Fieldwood has been under investigation—without any criminal plea or indictment against Fieldwood or its officers or directors.  The NPA provides that should Fieldwood remain in compliance with its obligations under the NPA, then the USAO will not prosecute Fieldwood or any of its officers or directors during the term of the NPA or thereafter for any alleged violations of federal criminal laws related to conduct described therein or any other conduct for which Fieldwood has been under investigation by the USAO as of the effective date of the NPA.[2]  Additionally, the NPA resolves all civil responsibility for the conduct subject to the investigation.  The NPA is to remain in effect until the later of (i) two years from the date this Court approves the $2 million fine payments (as described further below) and (ii) until Fieldwood completes payment of the fine.

11.     Under the terms of the NPA, Fieldwood has agreed to undertake the following obligations (among others):

- Cooperation Requirement:
  - Fieldwood will truthfully and completely disclose all information with respect to the activities of Fieldwood, its present and former

---

[2] For the avoidance of doubt, the agreement not to prosecute applies only to the United States Attorney's Office for the Eastern District of Louisiana and does not bind any other federal, state, or local prosecuting, administrative, or regulatory agencies.  Fieldwood is also currently being investigated by the United States Attorney's Office for the Western District of Louisiana.

officers and employees, and others concerning all matters about which the USAO inquires of it; such information can be used for any purpose.

- o Fieldwood will cooperate fully with the USAO, the Environmental Protection Agency, the Department of Interior, and any other law enforcement agency designated by the USAO.

- o Fieldwood will, at the USAO's request, use its best efforts to promptly secure the attendance and truthful statements or testimony of any officer, agent, or employee at any meeting or interview or before the grand jury or at any trial or any court proceedings.

- o Fieldwood will use its best efforts promptly to provide the USAO, upon request, any document, record, or other tangible evidence relating to matters or conduct about which the USAO or any designated law enforcement agency inquires.

- o Fieldwood will bring to the USAO's attention all criminal conduct by or criminal investigations of Fieldwood or its employees that comes to the attention of Fieldwood's board of directors or senior management, as well as any administrative proceeding or civil action brought by any governmental authority that alleges environmental violations by Fieldwood.

- **Statement of Admissions of Acceptance of Responsibility for Violations**: Fieldwood will admit that its employees and third-party contractors committed certain criminal violations, including violations related to a sheening event, the falsification of inspection records, and the overriding of safety systems resulting in a discharge of oil into the Gulf of Mexico, all as further described in the NPA.  In the event the USAO determines that Fieldwood has breached the NPA and the USAO decides to proceed with a criminal prosecution of Fieldwood, the Statements of Admissions and Acceptance of Responsibility for Violations (as defined in the NPA) (collectively, the "**Statements of Admission**") will be admissible against Fieldwood at any subsequent trial or district court proceeding.  In the event the USAO determines that there has been a breach of the NPA, the USAO will give Fieldwood notice and thirty (30) days to cure.

- In addition, Fieldwood will not publicly deny any admission or statement of fact contained in the Statements of Admission.  The decision of whether any statement by any agent or employee of Fieldwood contradicting a fact contained in the Statements of Admissions will be imputed to Fieldwood for the purpose of determining whether Fieldwood has breached the NPA will be in the sole and reasonable discretion of the USAO.  Upon the

USAO's notification to Fieldwood's counsel of a public statement by any agent or employee of Fieldwood that in whole or in part publicly denies a statement of fact contained in the Statements of Admissions, Fieldwood may avoid breach of the NPA by publicly repudiating such statement within five (5) business days after notification by the USAO.

- Corrective and Remedial Action:

    o Fieldwood will conduct all leaseholding and grantholding activities in a safe and workmanlike manner and will maintain equipment in a manner which assures the protection of the lease and its improvements, the health and safety of all persons, and the conservation of property, and the environment in accordance with all applicable federal statutes and regulations.

    o Fieldwood will, at the USAO's request, use its best efforts to promptly secure the attendance of any employee at any meeting or proceeding, and provide documents and other evidence as outlined in the NPA.

    o Fieldwood will not violate the terms of the NPA.

    o Fieldwood will ensure that the vice president of its Health, Safety, Environmental, and Regulatory Department ("**HSER**") reports directly to its executive leadership team, chief executive officer, or similar body or person who represents the highest-level executive governance within the company.

    o Fieldwood will maintain a company-wide comprehensive safety program.

    o Fieldwood will maintain HSER staffing levels commensurate with the size of the company's asset base.

    o Fieldwood will maintain an internal HSER audit team of offshore compliance coordinators to perform inspections of offshore facilities, similar to inspections conducted by BSEE.

    o Fieldwood will maintain a "contractor risk profile," which includes audits of contractors performing high-risk operations.

    o Fieldwood will implement Environmental Protection Agency National Pollutant Discharge Elimination System ("**NPDES**") software to track discharges and schedule and communicate compliance requirements under Fieldwood's NPDES permit.

o   Fieldwood will implement compliance and reporting software to communicate to platform operators compliance dates and to track incidents and test deviations.

o   Fieldwood will regularly re-train its own personnel and operators on stop work authority and system bypass policies.

o   Fieldwood will retain a team of experienced area superintendents commensurate with its asset base.

o   Fieldwood will maintain adequate levels of daytime and nighttime Grand Isle 43 shift operators.

o   Fieldwood will maintain a policy that contractors do not have systems bypass authority without Fieldwood authorization.

o   Fieldwood will track and document bypasses electronically to ensure accountability of personnel placing systems in bypass.

o   Fieldwood will maintain adequate communications equipment and handheld radios at the Grand Isle complex.

o   During the effective period of the NPA, Fieldwood will prepare and submit to the USAO, on or before January 15th and July 15th of each year, a biannual report that summarizes its efforts to comply with this NPA.  The USAO reserves the right to release and disseminate the annual report to other law enforcement, administrative, and regulatory agencies.

12.     In addition, Fieldwood has agreed to pay a $2 million fine in four equal installments, with the first installment due no later than five days after this Court approves the NPA and subsequent installments due within 180 days of the prior installment.  Payment of the fine will settle and fully resolve all civil and criminal penalties related to the facts outlined in the Statements of Admissions.

13.     Moreover, Fieldwood has agreed to extend a January 14, 2021 tolling agreement (a copy of which is attached to the NPA) regarding all criminal violations outlined in the Statements of Admissions within the Eastern District of Louisiana during the time period that the NPA is in effect.  The NPA, however, will not revive any criminal charges for which the

applicable statute of limitations ran prior to June 1, 2020, the date of an initial tolling agreement. Should the NPA become null and void for reasons specified in the NPA, then Fieldwood and the USAO agree that all applicable statutes of limitations in the Eastern District of Louisiana shall be tolled for a period of 90 days after dissolution of the NPA.

14.     The NPA will apply to and be binding upon Fieldwood and its successor and assigns; provided that any successor liability will be limited to a single entity to be named by the parties at a later time.

## Relief Requested Should Be Granted

**A. Entry into the NPA is a Sound Exercise of the Debtors' Business Judgment and should be Approved pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code**

15.     The Court may approve and authorize the Debtors to enter into, and perform under, the NPA pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Section 105(a) provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  Taken together, these sections of the Bankruptcy Code provide the Court with ample authority and discretion to grant the relief requested herein.  *See, e.g.*, *In re PG&E Corp.*, Case No. 19-3088 (DM) [Docket No. 6785] (Bankr. N.D. Cal. April 16, 2020) (approving settlement agreement with the State of California in respect of certain criminal charges against the debtors); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) [Docket No. 707] (Bankr. D. Del. Oct. 17, 2019) (approving settlement agreements with the United States resolving certain criminal and civil claims against the debtors); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) [Docket No. 2409] (Bankr. D. Del. March 14, 2018) (approving settlement agreement with multiple state attorney generals to

resolve state consumer protection claims and conclude civil investigation of the debtors); *In re Adelphia Communications Corp.*, 327 B.R. 143, 161 (Bankr. S.D.N.Y. 2005) (approving settlement agreement among various parties, including the debtor and DOJ, to resolve a criminal prosecution).

16.     Under section 363(b), a debtor may use property of the estate outside the ordinary course of business if there is a good business reason for doing so.  *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)).  "Great judicial deference is given to the [debtor's] exercise of business judgment."  *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (N.D. Tex. 2005).

17.     Once a debtor articulates a valid business justification under section 363 of the Bankruptcy Code, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief, that the action was in the best interests of the company. *In re Integrated Resources, Inc*., 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

18.     The Debtors submit that entry into the NPA reflects a sound exercise of the Debtors' business judgment.  Without entry into the NPA, Fieldwood was likely to be indicted by the USAO.  The potential charges that Fieldwood could have faced are significant and, if ultimately adjudicated guilty of such criminal violations, it could have also faced substantial penalties, including fines in the tens of millions of dollars.  In addition to higher fines,

if Fieldwood was indicted or convicted, Fieldwood could have faced other adverse consequences from the Department of Interior and other federal agencies.  Moreover, absent entry in the NPA, Fieldwood would have been forced to spend additional funds and estate resources defending criminal charges.  Indeed, Fieldwood estimates that the trial defense costs alone could have approximated the $2 million fine it has agreed to pay (in four equal installments over a two-year period) under the NPA.  And, a criminal indictment against Fieldwood would have distracted key Fieldwood personnel at a crucial point in the Debtors' restructuring when their focus and efforts are otherwise needed to confirm the Debtors' chapter 11 plan.

19.      After fully evaluating all aspects of the NPA with the assistance of counsel, including the risks, expenses, and uncertainty of not resolving the USAO's investigation, the Debtors determined that entry into the NPA is in the best interests of the Debtors, their estates and all other stakeholders in these chapter 11 cases.

## B. Entry into the NPA is in the Best Interests of the Debtors' Estates and Should be Approved Pursuant to Bankruptcy Rule 9019

20.      Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.  *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).  Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).  Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Jackson Brewing*, 624 F.2d at 602–03.

21.     The Fifth Circuit sets forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements.  *Id.*  The factors the Court considers are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise."  *See Age Ref. Inc.*, 801 F.3d at 540 (internal citations omitted).

22.     Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views."  *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  Second, the court should consider the "extent to which the settlement is truly the product of arm's-length bargaining, and not of fraud or collusion."  *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

23.     Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement.  *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

24.     The settlement embodied in the NPA meets these standards.  As stated above, absent entry into the NPA, Fieldwood would likely be indicted for multiple criminal violations that carry the potential for substantial fines and penalties that significantly exceed the $2 million fee that Fieldwood has agreed to pay under the NPA.  Even if Fieldwood were to

successfully defend itself against such criminal charges, the $2 million fine is approximately what the Debtors estimate they would have otherwise spent in trial defense costs alone.  Further, the NPA eliminates the costs associated with using estate personnel and other resources in defending such criminal charges and reduces certain risks associated with the ongoing criminal investigation of the Debtors by the USAO.  Accordingly, the Debtors respectfully request that the Court approve the Debtors' entry into the NPA.

### **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

25.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and the Debtors have established cause to waive the 14-day stay period under Bankruptcy Rule 6004(h) in light of the requirement in the NPA that Fieldwood make its first installment of the $2 million fine owed to the USAO within five days after this Court's approval of the NPA.

### **Notice**

26.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

### **No Previous Request**

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  February 18, 2021
       Houston, Texas

Respectfully submitted,

*/s/ Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
       Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on February 18, 2021 a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


 */s/ Alfredo R. Pérez*                    
Alfredo R. Pérez