**Exhibit B**

**Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| In re: § | § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, § | § | Case No. 20-33948 (MI) |
| Debtors.[1] § | § | (Jointly Administered) |

**DECLARATION OF MICHAEL T. DANE IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING NON-PROSECUTION AGREEMENT WITH THE UNITED STATES ATTORNEY'S OFFICE FOR THE EASTERN DISTRICT OF LOUISIANA AND (II) GRANTING RELATED RELIEF**

I, Michael T. Dane, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Senior Vice President and Chief Financial Officer of Fieldwood Energy LLC ("**Fieldwood**" and, collectively with its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession, the "**Debtors**"). I submit this declaration ("**Declaration**")[2] on behalf of the Debtors in support of the *Motion of Debtors for Entry of an Order (I) Approving Non-Prosecution Agreement with the United States Attorney's Office for the Eastern District of Louisiana and (II) Granting Related Relief* (the "**Motion**").[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Additional information regarding my background and qualifications can be found in my prior declaration, filed with the Court on August 4, 2020 [Docket No. 29].

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

2. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me by other employees of the Debtors, my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial condition, or from my discussions with the Debtors' advisors.

3. I am knowledgeable about and familiar with the Debtors' business and financial affairs. I am authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

## The Motion

4. Pursuant to the Motion, the Debtors request entry of an order approving their entry into a non-prosecution agreement with the United States Attorney's Office for the Eastern District of Louisiana.

5. For the reasons set forth in this Declaration and in the Motion, I believe that entry into the NPA is a sound exercise of the Debtors business judgment, and that relief requested in the Motion is in the best interests of the Debtors, their estates, and all other parties in interest, and should be granted.

## Non-Prosecution Agreement

6. The NPA is the culmination of months of negotiations between Fieldwood and the USAO. It favorably resolves certain criminal violations alleged by the USAO—for which Fieldwood has been under investigation—without any criminal plea or indictment against Fieldwood or its officers or directors. The NPA provides that should Fieldwood remain in compliance with its obligations under the NPA, then the USAO will not prosecute Fieldwood or any of its officers or directors during the term of the NPA or thereafter for any alleged violations of federal criminal laws related to conduct described therein or any other conduct for which

Fieldwood has been under investigation by the USAO as of the effective date of the NPA.[4] Additionally, the NPA resolves all civil responsibility for the conduct subject to the investigation. The NPA is to remain in effect until the later of (i) two years from the date this Court approves the $2 million fine payments (as described further below) and (ii) until Fieldwood completes payment of the fine.

7. Under the terms of the NPA, Fieldwood has agreed to undertake the following obligations:

- <u>Cooperation Requirement</u>:

    o Fieldwood will truthfully and completely disclose all information with respect to the activities of Fieldwood, its present and former officers and employees, and others concerning all matters about which the USAO inquires of it; such information can be used for any purpose.

    o Fieldwood will cooperate fully with the USAO, the Environmental Protection Agency, the Department of Interior, and any other law enforcement agency designated by the USAO.

    o Fieldwood will, at the USAO's request, use its best efforts to promptly secure the attendance and truthful statements or testimony of any officer, agent, or employee at any meeting or interview or before the grand jury or at any trial or any court proceedings.

    o Fieldwood will use its best efforts promptly to provide the USAO, upon request, any document, record, or other tangible evidence relating to matters or conduct about which the USAO or any designated law enforcement agency inquires.

    o Fieldwood will bring to the USAO's attention all criminal conduct by or criminal investigations of Fieldwood or its employees that comes to the attention of Fieldwood's board of directors or senior management, as well as any administrative proceeding or civil

---

[4] For the avoidance of doubt, the agreement not to prosecute applies only to the United States Attorney's Office for the Eastern District of Louisiana and does not bind any other federal, state, or local prosecuting, administrative, or regulatory agencies.

action brought by any governmental authority that alleges environmental violations by Fieldwood.

- Statement of Admissions of Acceptance of Responsibility for Violations: Fieldwood will admit that its employees and third-party contractors committed certain criminal violations, including violations related to a sheening event, the falsification of inspection records, and the overriding of safety systems resulting in a discharge of oil into the Gulf of Mexico, all as further described in the NPA.  In the event the USAO determines that Fieldwood has breached the NPA and the USAO decides to proceed with a criminal prosecution of Fieldwood, the Statements of Admissions and Acceptance of Responsibility for Violations (as defined in the NPA) (collectively, the "**Statements of Admission**") will be admissible against Fieldwood at any subsequent trial or district court proceeding.  In the event the USAO determines that there has been a breach of the NPA, the USAO will give Fieldwood notice and thirty (30) days to cure.

  In addition, Fieldwood will not publicly deny any admission or statement of fact contained in the Statements of Admission.  The decision of whether any statement by any agent or employee of Fieldwood contradicting a fact contained in the Statements of Admissions will be imputed to Fieldwood for the purpose of determining whether Fieldwood has breached the NPA will be in the sole and reasonable discretion of the USAO. Upon the USAO's notification to Fieldwood's counsel of a public statement by any agent or employee of Fieldwood that in whole or in part publicly denies a statement of fact contained in the Statements of Admissions, Fieldwood may avoid breach of the NPA by publicly repudiating such statement within five (5) business days after notification by the USAO.

- Corrective and Remedial Action:

  o Fieldwood will conduct all leaseholding and grantholding activities in a safe and workmanlike manner and will maintain equipment in a manner which assures the protection of the lease and its improvements, the health and safety of all persons, and the conservation of property, and the environment in accordance with all applicable federal statutes and regulations.

  o Fieldwood will, at the USAO's request, use its best efforts to promptly secure the attendance of any employee at any meeting or proceeding, and provide documents and other evidence as outlined in the NPA.

  o Fieldwood will not violate the terms of the NPA.

4

- Fieldwood will ensure that the vice president of its Health, Safety, Environmental, and Regulatory Department ("**HSER**") reports directly to its executive leadership team, chief executive officer, or similar body or person who represents the highest-level executive governance within the company.

- Fieldwood will maintain a company-wide comprehensive safety program.

- Fieldwood will maintain HSER staffing levels commensurate with the size of the company's asset base.

- Fieldwood will maintain an internal HSER audit team of offshore compliance coordinators to perform inspections of offshore facilities, similar to inspections conducted by BSEE.

- Fieldwood will maintain a "contractor risk profile," which includes audits of contractors performing high-risk operations.

- Fieldwood will implement Environmental Protection Agency National Pollutant Discharge Elimination System ("**NPDES**") software to track discharges and schedule and communicate compliance requirements under Fieldwood's NPDES permit.

- Fieldwood will implement compliance and reporting software to communicate to platform operators compliance dates and to track incidents and test deviations.
- Fieldwood will regularly re-train its own personnel and operators on stop work authority and system bypass policies.

- Fieldwood will retain a team of experienced area superintendents commensurate with its asset base.

- Fieldwood will maintain adequate levels of daytime and nighttime Grand Isle 43 shift operators.

- Fieldwood will maintain a policy that contractors do not have systems bypass authority without Fieldwood authorization.

- Fieldwood will track and document bypasses electronically to ensure accountability of personnel placing systems in bypass.

- Fieldwood will maintain adequate communications equipment and handheld radios at the Grand Isle complex.

- During the effective period of this NPA, Fieldwood will prepare and submit to the USAO, on or before January 15th and July 15th of each year, a biannual report that summarizes its efforts to comply with the NPA. The USAO reserves the right to release and disseminate the annual report to other law enforcement, administrative, and regulatory agencies.

8. In addition, Fieldwood has agreed to pay a $2 million fine in four equal installments with the first installment due no later than five days after this Court approves the NPA and subsequent installments due within 180 days of the prior installment. The payment will settle and fully resolve all civil and criminal penalties related to the facts outlined in the Statements of Admissions.

9. Moreover, Fieldwood has agreed to extend a January 14, 2021 tolling agreement (a copy of which is attached to the NPA) regarding all criminal violations outlined in the Statements of Admissions within the Eastern District of Louisiana during the time period that the NPA is in effect. The NPA, however, will not revive any criminal charges for which the applicable statute of limitations ran prior to June 1, 2020, the date of an initial tolling agreement. Should the NPA become null and void for reasons specified in the NPA, then Fieldwood and the USAO agree that all applicable statutes of limitations in the Eastern District of Louisiana shall be tolled for a period of 90 days after dissolution of the NPA.

10. The NPA will apply to and be binding upon Fieldwood and its successor and assigns; provided that any successor liability will be limited to a single entity to be named by the parties at a later time.

## **Approval of the NPA**

11. I believe that entry into the NPA reflects a sound exercise of the Debtors' business judgment. Without entry into the NPA, Fieldwood was likely to be indicted by the USAO. The potential charges that Fieldwood could have faced are significant and, if ultimately

adjudicated guilty of such criminal violations, it could have also faced substantial penalties, including fines in the tens of millions of dollars. In addition to higher fines, if Fieldwood was indicted or convicted, Fieldwood could have faced other adverse consequences from the Department of Interior and other federal agencies. Moreover, absent entry in the NPA, Fieldwood would have been forced to spend additional funds and estate resources defending criminal charges. Indeed, Fieldwood estimates that the trial defense costs alone could have approximated the $2 million fine it has agreed to pay (in four equal installments over a two year period) under the NPA. And, a criminal indictment against Fieldwood would have distracted key Fieldwood personnel at a crucial point in the Debtors' restructuring when their focus and efforts are otherwise needed to confirm the Debtors' chapter 11 plan.

12. After fully evaluating all aspects of the NPA with the assistance of counsel, including the risks, expenses, and uncertainty of not resolving the USAO's investigation, I believe that entry into the NPA is in the best interests of the Debtors, their estates and all other stakeholders in these chapter 11 cases.

13. Moreover, I believe that the NPA is a fair and reasonable resolution of the USAO's criminal investigation of Fieldwood, and is in the best interest of the Debtors' estates. As stated above, absent entry into the NPA, Fieldwood would likely be indicted for multiple criminal violations that carry the potential for substantial fines and penalties that significantly exceed the $2 million fee that Fieldwood has agreed to pay under the NPA. Even if Fieldwood were to successfully defend itself against such criminal charges, the $2 million fine is approximately what the Debtors' estimate they would have otherwise spent in trial defense costs alone. Further, the NPA eliminates the costs associated with using estate personnel and other resources in defending such criminal charges and reduces certain risks associated with the

8

ongoing criminal investigation of the Debtors by the USAO. Accordingly, the Debtors respectfully request that the Court approve the Debtors' entry into the NPA.

14. For the reasons set forth above, I believe the relief requested in the Motion is appropriate and should be approved.

Dated: February 18, 2021
      Houston, Texas

/s/ *Michael T. Dane*
Michael T. Dane
Senior Vice President and
Chief Financial Officer
Fieldwood Energy LLC