**Exhibit C**

**Non-Prosecution Agreement**



**U.S. Department of Justice**
United States Attorney
Eastern District of Louisiana

---

*Spiro Latsis*
*Assistant United States Attorney*

*The Poydras Center*
*650 Poydras Street, Suite 1600*
*New Orleans, Louisiana 70130*

*Telephone:  504-680-3046*
*Facsimile:  504-589-4396*

February 9, 2021

## NON-PROSECUTION AGREEMENT

### Introduction

1.      Fieldwood Energy, LLC ("Fieldwood"), through its undersigned officer, and the United States of America, through its attorneys, the United States Attorney's Office for the Eastern District of Louisiana ("USAO"), hereby enter into this Non-Prosecution Agreement ("NPA"). The NPA shall be in effect for two years from the date the bankruptcy court approves the $2 million dollar fine payments as described in paragraph 17, or until Fieldwood completes payment of the fine, whichever is later.

2.      This NPA is limited to the USAO and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory agencies.

### Non-Prosecution

3.      The USAO agrees that if Fieldwood is in compliance with the obligations under this NPA, then the USAO will not prosecute Fieldwood or any of its officers or directors during the term of the NPA or thereafter for any alleged violations of federal criminal laws related to the conduct in the below section entitled "Statement of Admissions and Acceptance of Responsibility for Violations" or any other conduct for which Fieldwood was or has been under investigation by the USAO as of the effective date of the NPA. This NPA is intended to resolve the USAO's grand jury investigation of Fieldwood. This NPA does not apply to Fieldwood employees. The NPA also does not apply to any future actions of Fieldwood.

4.      It is understood that, should this Office determine that Fieldwood has committed any crimes during the term of this agreement, or that Fieldwood has given false, incomplete, or misleading testimony or information, or should Fieldwood otherwise violate any provision of this Agreement, Fieldwood shall thereafter be subject to prosecution for any federal violation of which this Office has knowledge, including perjury and obstruction of justice; and any such prosecution

that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against Fieldwood, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution.

5.     It is understood that if it is determined that Fieldwood has committed any crime after signing this Agreement or that Fieldwood or any of its representatives have given false, incomplete, or misleading testimony or information, or has otherwise violated any provision of this Agreement, (a) all statements made by Fieldwood's representatives to this Office, Environmental Protection agency, Department of Interior, or other designated law enforcement agents, and any testimony given by Fieldwood's representatives before a grand jury or other tribunal, whether prior to or subsequent to the signing of this Agreement, and any leads from such statement or testimony shall be admissible in evidence in any criminal proceeding brought against Fieldwood; and (b) Fieldwood shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is the intent of this Agreement to waive all rights in the foregoing respects.

6.     Nothing in this Agreement shall be construed as a waiver of any attorney-client, work-product, or other privilege recognized under the Federal Rules of Evidence. The parties acknowledge that statements of their respective counsel shall not be used against or imputed to their respective clients.

Cooperation Requirement

7.     It is understood that Fieldwood: (a) shall truthfully and completely disclose all information with respect to the activities of Fieldwood, its present and former officers and employees, and others concerning all matters about which this Office inquires of it; such information can be used for any purpose; (b) shall cooperate fully with this Office, Environment Protection Agency and Department of Interior, and any other law enforcement agency designated by this Office; (c) shall, at this Office=s request, use its best efforts promptly to secure the attendance and truthful statements or testimony of any officer, agent, or employee at any meeting or interview or before the grand jury or at any trial or any court proceedings; (d) shall use its best efforts promptly to provide this Office, upon request, any document, record, or other tangible evidence relating to matters or conduct about which this Office or any designated law enforcement agency inquires; and (e) shall bring to this Office=s attention all criminal conduct by or criminal investigations of Fieldwood or its employees that comes to the attention of Fieldwood=s board of directors or senior management, as well as any administrative proceeding or civil action brought by any governmental authority that alleges environmental violations by Fieldwood.

Statement of Admissions and Acceptance of Responsibility for Violations

8.     Fieldwood admits that its employees and third-party contractors committed the criminal violations set forth in the following paragraphs. In the event the USAO determines that Fieldwood has breached this NPA and a decision is made by the USAO to proceed with a criminal prosecution of Fieldwood, Fieldwood agrees that this section entitled "Statement of Admissions and Acceptance of Responsibility for Violations" is admissible against Fieldwood at any subsequent trial or district court proceeding. In the event the USAO determines that there has been a breach of this NPA, the USAO will give Fieldwood notice and 30 days to cure.

9.     Fieldwood agrees that it shall not publicly deny any admission or statement of fact contained in this section entitled "Statement of Admissions and Acceptance of Responsibility for Violations." The decision of whether any statement by any agent or employee of Fieldwood contradicting a fact contained in this section will be imputed to Fieldwood for the purpose of determining whether Fieldwood has breached this NPA shall be in the sole and reasonable discretion of the USAO. Upon the USAO's notification to Fieldwood's counsel of a public statement by any agent or employee of Fieldwood that in whole or in part publicly denies a statement of fact contained in this section, Fieldwood may avoid breach of this NPA by publicly repudiating such statement within five business days after notification by the USAO.

*Sheening Event*

10.     Fieldwood is an oil and gas company whose headquarters are in Houston, Texas. Fieldwood leased two offshore oil platforms, MP-310A and unmanned MP-310JA. Fieldwood hired third-party operators to operate its platforms. Various Fieldwood employees supervised the operators, including Employee A, a Person-In-Charge ("PIC") on MP-310A.

11.     On or about July 20, 2015, operators on MP-310A noticed that the platform was "sheening," meaning that oil was being cast overboard. The sheening was the result of sand buildup in the platform's WEMCO, a mechanism used to separate oil and solids from produced water. On or about July 22, 2015, the operators alerted Employee A of MP-310A that the sheening was occurring. Rather than shutting the platform in so the WEMCO could be repaired or replaced, Employee A allowed the platform to run overnight, causing further sheening.

12.     On or about the morning of July 23, 2015, an operator activated an emergency shutdown device, which stopped all production operations. The operator ordered the shutdown because an inspector from the Bureau of Safety and Environmental Enforcement ("BSEE") was scheduled to arrive on the platform to perform an inspection later that morning. The operator hoped that shutting the platform down would allow the sheen to dissipate before the inspector arrived. When the inspector arrived, he did not see a sheen.

13.     Employee A instructed operators to lie to the BSEE inspector about the reason for the shutdown. Employee A told operators to say that the platform was shutdown so the WEMCO could be replaced. In reality, the operator shut down the platform in response to sheening. Employee A and the operators falsely stated to the inspector that the platform had been shutdown to replace the WEMCO.

### Falsification of Inspection Records

14.     Operators and Fieldwood employees, including Employee A, falsely represented in company records that they were inspecting MP-310JA, the unmanned platform in the same area as MP-310A. Federal regulations required that Fieldwood visually inspect MP-310JA every day and that a Fieldwood employee board MP-310JA at least once a week for inspection. Employee A instructed operators to falsely state in a log kept on MP-310A that they had visited the unmanned platform. Fieldwood's inspection records for MP-310JA contain dozens of entries that falsely state that an inspection occurred.

### Overriding Safety Systems

15.     On January 26, 2018, at approximately 12:30 a.m., Fieldwood's Grand Isle 43 ("GI43") platform illegally discharged between fifty-five and seventy-five barrels of oil into the Gulf of Mexico. This platform was also experiencing sanding problems in its vessels, which is a series of mechanisms that are used to separate oil and solids from produced water. The sanding problem was so severe that operators had to put the platforms' safety systems in bypass in order to prevent them from shutting-in the platform. A review of the data from the platform's Supervisory Control and Data Acquisitions ("SCADA") system revealed that the platform had one system in bypass on every day from at least 2017 to 2018. Employee B and other company supervisors were aware that various safety systems on GI43 were routinely placed in bypass in violation of the law.

16.     Employee B was informed of the discharge on the morning after the spill. Knowing that the spill had occurred the night before, employee B instructed several operators to lie and tell the BSEE inspectors that the spill occurred closer to the morning hour to conceal the fact that the platform was flowing for such a long time after the discharge.

### Corrective and Remedial Action

17.     Fieldwood shall pay a fine of $2 million, paid in equal semi-annual payments, the first of which is due within five days of the approval of Fieldwood's bankruptcy judge to make such payments, and the subsequent payments shall be paid within 180 days of the prior payment, until the sum of $2 million is paid in full. Fieldwood shall file a motion in its bankruptcy

proceeding seeking the approval of the payments within five business days of the execution by all parties to this NPA. This payment settles and fully resolves all civil and criminal penalties related to the facts outlined in the "Statement of Admissions" above.

18.     Fieldwood shall conduct all leaseholding and grantholding activities in a safe and workmanlike manner and shall maintain equipment in a manner which assures the protection of the lease and its improvements, the health and safety of all persons, and the conservation of property, and the environment in accordance with all applicable federal statutes and regulations.

19.     Fieldwood shall, at the USAO's request, use its best efforts to promptly secure the attendance of any employee at any meeting or proceeding, and provide documents and other evidence as outlined in this NPA.

20.     Fieldwood shall not violate the terms of this NPA.

21.     Fieldwood shall ensure that the vice president of its Health, Safety, Environmental, and Regulatory Department ("HSER") reports directly to its executive leadership team, chief executive officer, or similar body or person who represents the highest-level executive governance within the company.

22.     Fieldwood shall maintain a company-wide comprehensive safety program.

23.     Fieldwood shall maintain HSER staffing levels commensurate with the size of the company's asset base.

24.     Fieldwood shall maintain an internal HSER audit team of offshore compliance coordinators to perform inspections of offshore facilities, similar to inspections conducted by BSEE.

25.     Fieldwood shall maintain a "contractor risk profile," which includes audits of contractors performing high-risk operations.

26.     Fieldwood shall implement Environmental Protection Agency National Pollutant Discharge Elimination System ("NPDES") software to track discharges and schedule and communicate compliance requirements under Fieldwood's NPDES permit.

27.     Fieldwood shall implement compliance and reporting software to communicate to platform operators compliance dates and to track incidents and test deviations.

28.     Fieldwood shall regularly re-train its own personnel and operators on stop work authority and system bypass policies.

29.     Fieldwood shall retain a team of experienced area superintendents commensurate with the company's asset base.

30.     Fieldwood shall maintain adequate levels of daytime and nighttime Grand Isle 43 shift operators.

31.     Fieldwood shall maintain a policy that contractors do not have systems bypass authority without Fieldwood authorization.

32.     Fieldwood shall track and document bypasses electronically to ensure accountability of personnel placing systems in bypass.

33.     Fieldwood shall maintain adequate communications equipment and handheld radios at the Grand Isle complex.

34.     During the effective period of this NPA, Fieldwood shall prepare and submit to the USAO, on or before January 15th and July 15th of each year, a biannual report that summarizes its efforts to comply with this NPA. The USAO reserves the right to release and disseminate the annual report to other law enforcement, administrative, and regulatory agencies.

<u>Tolling of the Statute of Limitations</u>

35.     Fieldwood agrees to extend the January 14, 2021 tolling agreement (attached) regarding all criminal violations outlined in the "Statement of Admissions" above within the Eastern District of Louisiana during the time period that this NPA is in effect. Nothing in the agreement revives any criminal charges for which the applicable statute of limitations has run prior to June 1, 2020, the date of the original tolling agreement. Should the NPA become null and void for any of the reasons outlined herein, the parties agree that the applicable statutes of limitations in the Eastern District of Louisiana shall be tolled for a period of 90 days after dissolution of the NPA.

<u>Successor Liability</u>

36.     This NPA shall apply to and be binding upon Fieldwood and its successors and assigns. Fieldwood shall disclose the terms and conditions of the NPA to all employees, consultants or independent contractors who are assigned or engaged to assist Fieldwood in complying with its obligations and duties hereunder.

<u>Public Dissemination of Agreement</u>

37.     This NPA is a public document and can be disclosed as needed by the parties.

<u>No Additional Agreements</u>

38.     Except as expressly set forth herein, there are no additional promises, understandings, or agreements between the USAO and Fieldwood concerning any other criminal prosecution, civil litigation, or administrative proceeding relating to any other federal, state, or local charges that may now be pending or hereafter be brought against Fieldwood. Nor may any additional agreement, understanding, or condition relating to the conduct described in the section entitled "Statement of Admissions and Acceptance of Responsibility for Violations" be entered into unless in writing and signed by all parties.

AGREED AND ACCEPTED:

FIELDWOOD ENERGY, LLC


THOMAS R. LAMME         Date
Senior Vice President &      2-9-2021
General Counsel


SPIRO G. LATSIS              Date
Assistant U.S. Attorney
Eastern District of Louisiana

2-10-2021


PAULINE HARDIN          Date
Jones Walker, LLP
Attorneys for Fieldwood Energy, LLC

2/9/2021



**U.S. Department of Justice**
United States Attorney
Eastern District of Louisiana

*Spiro Latsis*
*Assistant United States Attorney*

*The Poydras Center*
*650 Poydras Street, Suite 1600*
*New Orleans, Louisiana 70130*

*Telephone: 504-680-3046*
*Facsimile: 504-589-4390*

January 14, 2021

Re: Fieldwood Energy, LLC

Dear Mrs. Hardin:

This letter contains the terms of statute of limitations tolling agreement for your client, Fieldwood Energy, LLC. If you and your client find the terms agreeable please sign where indicated below and return the original to my office for execution by the government.

## STATUTE OF LIMITATIONS TOLLING AGREEMENT

This Statute of Limitations Tolling Agreement ("Agreement") is entered into effective January 14, 2021 between Fieldwood Energy, LLC (hereinafter "Fieldwood") and the United States of America, by and through its attorneys, the United States Attorney's Office for the Eastern District of Louisiana (the "USAO").

A. This Agreement has been entered into to provide Fieldwood and its counsel and the USAO an opportunity to reach an agreement as to the appropriate disposition of the USAO and federal grand jury investigation into criminal violations allegedly committed by Fieldwood that occurred in connection with the operation of two offshore platforms, MP 310 and unmanned MP310-JA, which are punishable under the Outer Continental Shelf Lands Act, the Clean Water Act, and Title 18 of the United States Code. Fieldwood and its counsel, and the USAO acknowledge that it is their mutual interest for this Agreement to effect a waiver and tolling of the statute of limitations under federal law for any criminal violation of federal law, including but not limited to, the violations described in paragraph B below.

B. This Agreement applies to any and all alleged federal criminal offenses or civil violations relating to any of the following activities:

1. Knowingly tampering with a Monitoring Device or Method under Clean Water Act;
2. Illegal Discharge of Pollutants Into Jurisdictional Waters;
3. Failure to Report a Discharge;
4. Conspiracy to Violate the Clean Water Act;
5. Knowingly Make False Material Statements in Records Required Under the Outer Continental Shelf Lands Act; and
6. False Statements

Page 2

C.  Such alleged violations of federal law include, but are not limited to, violations of 33 U.S.C. § 1319(c)(4) (Clean Water Act-Water Sample Manipulation), 33 U.S.C. § 1311(a) (Clean Water Act-Illegal Discharge), 33 U.S.C. § 1319 (c)(2)(A) (Clean Water Act-felony discharge), 33 U.S.C. § 1319 (c)(1)(A) (Clean Water Act-misdemeanor discharge), 33 U.S.C. § 1321(b)(5) (Failure to Report Discharge), 18 U.S.C. § 371 (Conspiracy), 43 U.S.C. § 1350(c)(2) (OCSLA-false statement),  and 18 U.S.C. §1001 (False Statements).

D.  The parties to this Agreement hereby agree and stipulate that the period beginning on or about June 1, 2020, and continuing until midnight on March 7, 2021, shall be excluded from any calculation of time for purposes of the application of any federal statute of limitations to any violation of federal law described in paragraphs B and C above.

E.  The parties to this Agreement further agree and stipulate that the running of any federal statute of limitations for any violation of federal law described in paragraphs B and C above, shall be tolled for the period beginning on June 1, 2020, and continuing until midnight on March 7, 2021.

F.  The parties to this Agreement further agree and stipulate that the period beginning on June 1, 2020, and continuing until midnight on March 7, 2021, shall not be considered or assessed against the United States for purposes of any constitutional, statutory, or other challenge involving a claim of pre-indictment delay relating to any violation of federal law describe in paragraphs B and C above.

G.  Fieldwood, having been advised by its counsel of the potential consequences of this Agreement to its rights under the Fifth and Sixth Amendments of the United States Constitution, the federal statute of limitations, and Rule 48(b) of the Federal Rules of Criminal Procedure, expressly waives any right to raise any defense based on the failure of a federal grand jury or the United States to charge any violation of federal law described in paragraphs B and C above, during the period beginning on June 1, 2020, and continuing until midnight on March 7, 2021.

H.  It is understood by the parties to this Agreement that nothing in this Agreement revives any criminal charges for which the applicable statute of limitations has run prior to June 1, 2020.

I.  The act of entering into this Agreement does not constitute an admission by Fieldwood of any wrongdoing; it has been entered into for the sole purpose of furthering discussions and the exchange of information with the USAO. This Agreement or its contents are inadmissible as evidence for any purpose in any proceeding, including impeachment.

J.  Except as otherwise stated herein, this Agreement does not limit or affect the right or discretion of the USAO to bring criminal charges against Fieldwood for violation of any federal law described in paragraphs B and C above, or any other violation of any federal law.

Page 3

READ AND AGREED TO BY:

FIELDWOOD ENERGY, LLC


ROBERT J. SERGESKETTER
Deputy General Counsel – Litigation
Fieldwood, Energy LLC

Dated: 1/19/2021

PAULINE F. HARDIN
Jones Walker, LLP
*Attorneys for Fieldwood Energy, LLC*

Dated:
January 19, 2021


SPIRO G. LATSIS
Assistant United States Attorney
*United States Attorney's Office*
*Eastern District Of Louisiana*

Dated: 1-20-21