Bond No. 2196705

# PERFORMANCE BOND

**KNOW ALL MEN BY THESE PRESENTS:**

    **THAT** we, Fieldwood Energy Offshore LLC, with its principal office at One Briar Lake Plaza, Suite 1200, 2000 West Sam Houston Parkway South, Houston, Texas 77042, (hereinafter called the "Principal") and North American Specialty Insurance Company, with an office at 650 Elm Street, Manchester, New Hampshire 03101 (hereinafter called the "Surety"), are held and firmly bound unto Eni Petroleum US LLC and Eni US Operating Co. Inc. (collectively hereinafter called the "Obligee"), each with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, in the penal sum of Twenty Four Million Two Hundred and Fifteen Thousand and No/100 Dollars ($24,215,000.00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

    **WHEREAS**, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated effective December 1, 2015 (hereinafter called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, equipment, pipelines and personal property defined therein as the "Assets", together with, among other rights and obligations, all Plugging, Abandonment and Decommissioning Obligations of the Principal associated therewith; and

    **WHEREAS**, the Principal and the Surety agree that, notwithstanding the termination of the WC 130 Lease prior to the date hereof or the subsequent termination of any or all of the other oil and gas leases described on Exhibit A-1 to the Purchase Agreement, whether by operation of law or otherwise, this Performance Bond (the "Bond") shall remain in full force and effect until all Plugging, Abandonment and Decommissioning Obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

    **WHEREAS,** the Principal has promised to deliver to the Obligee at Closing a performance bond in the form hereof executed by Principal and Surety; and

    **WHEREAS,** the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

    **WHEREAS,** the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.



Bond No. 2196705

**NOW, THEREFORE,** the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the Plugging, Abandonment and Decommissioning Obligations associated with the Assets identified on Exhibit A to this Bond.

**PROVIDED, HOWEVER,** the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation by the Principal to the Surety of a bond reduction rider (in substantially the same form attached as Exhibit H to the Purchase Agreement) executed and acknowledged by the Principal and the Obligee; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider in accordance with the terms and conditions of the Purchase Agreement, the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following:

(1) presentation by the Principal to the Surety of a letter from an officer of Principal certifying (a) that, on or before the sixty-first (61st) day prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a site clearance verification for the applicable Lease(s) indicating that all Plugging, Abandonment and Decommissioning Obligations with respect to such Lease(s) had been completed, (b) that, at no time prior to the presentation of such letter to the Surety, has Fieldwood or any Affiliate of Fieldwood received notice (whether written, verbal or otherwise) from any Governmental Authority indicating that further action(s) are required to complete all such Plugging, Abandonment and Decommissioning Obligations, (c) that the Principal notified the Obligee of the Principal's entitlement to the reduction in the amount of the Performance Bond in accordance with Section 7.18(d) of the Purchase Agreement and (d) that the Obligee failed to execute and deliver to Principal a bond reduction rider in accordance with Section 7.18(d) of the Purchase Agreement;

(2) presentation by the Principal to the Surety of a letter from an officer of Principal certifying (a) that, on or before the thirty-first (31st) day prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all Plugging, Abandonment and Decommissioning Obligations for the applicable Lease(s) were completed, (b) that the Principal notified the Obligee of the Principal's entitlement to the reduction in the amount of the Performance Bond in accordance with Section 7.18(d) of the Purchase Agreement and (c) that the Obligee failed to execute and deliver to Principal a bond reduction rider in accordance with Section 7.18(d) of the Purchase Agreement; or

(3) presentation by the Principal to the Surety of a letter from an officer of Principal (a) certifying (i) that, on or before the thirty-first (31st) day prior to the presentation of such letter to the Surety, the Principal posted a supplemental bond(s) to the BOEM for the applicable Lease(s) and/or Rights of Way, (ii) that the Principal notified the Obligee of the Principal's entitlement to the reduction in the amount of the Performance Bond in accordance with Section 7.18(c)(ii)(A) of the Purchase Agreement and (iii) that the Obligee failed to execute and deliver to Principal a bond reduction rider in accordance with Section 7.18(c)(ii)(A) of the Purchase Agreement, and (b) enclosing a copy of such supplemental bond(s) posted by Purchaser to the BOEM (or any successor regulatory authorities) pursuant to Section 7.18(c)(ii)(A) of the Purchase Agreement.

IndemCo

Bond No. 2196705

Principal and the Surety agree that, notwithstanding the termination of the WC 130 Lease prior to the date hereof or the subsequent termination of any or all of the other Leases described on Exhibit A-1 to the Purchase Agreement, whether by operation of law or otherwise, this Bond shall remain in full force and effect until all Plugging, Abandonment and Decommissioning Obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

**PROVIDED, FURTHER THAT,** including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the Plugging, Abandonment and Decommissioning Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety for claims under this Bond, whether one or more, concurrent or otherwise, shall be the Penal Sum reduced, as applicable, as provided for herein.

**FURTHERMORE,** it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Upon any failure by the Principal to carry out any or all of the Plugging, Abandonment and Decommissioning Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such Plugging, Abandonment and Decommissioning Obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety separately at their last known respective addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted Plugging, Abandonment and Decommissioning Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

IndemCo

Bond No. 2196705

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted Plugging, Abandonment and Decommissioning Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Plugging, Abandonment and Decommissioning Obligations, the Obligee shall deliver to Surety a statement (the "Final Cost Statement") of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance of such Defaulted Plugging, Abandonment and Decommissioning Obligations). If such costs and expenses, in the aggregate (the "Aggregate Cost Amount"), exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the "Surety Payment Amount"), the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND ITS AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR**

IndemCo

Bond No. 2196705

**OBLIGEE'S CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in the form of a bond substantially similar to the form hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-,XIII" in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

IndemCo

Bond No. 2196705

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Fieldwood Energy Offshore LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: John H. Smith

Eni Petroleum US LLC
Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700
Houston, Texas 77002
Attention: Gary F. Clifford

North American Specialty Insurance Company
650 Elm Street
Manchester, New Hampshire 03101
Attention: Erik Janssens

(Remainder of page intentionally left blank)

IndemCo

Bond No. 2196705

**IN WITNESS WHEREOF**, the above bound parties have executed this instrument to be effective on December 1, 2015, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

| WITNESSES: | *Fieldwood Energy Offshore LLC* |
|---|---|
| *[signature] Mark T. Morell* | Principal |
| *[signature] Paula Vera* | By: *[signature]* (Name/Title) John H. Smith Vice President |

| WITNESSES: | *North American Specialty Insurance Company* |
|---|---|
| *[signature] Wendy E. Pierson* | Surety |
| *[signature]* | By: *[signature]* Michele K. Tyson, Attorney-in-Fact |

| WITNESSES: | *Eni Petroleum US LLC* |
|---|---|
| | *Eni US Operating Co. Inc.* |
| | Obligee |
| | By: _____ (Name/Title) |

IndemCo

Bond No. 2196705

## Exhibit A

Attached to and made a part of Bond No. 2196705 issued by North American Specialty Insurance Company on behalf of Fieldwood Energy Offshore LLC

| Area/Block | Lease Number |
|---|---|
| Galveston 151 | OCS-G 15740 |
| Ship Shoal 246 | OCS-G 1027 |
| Ship Shoal 247 | OCS-G 1028 |
| Ship Shoal 248 | OCS-G 1029 |
| Ship Shoal 249 | OCS-G 1030 |
| Vermilion 78 | OCS-G 4421 |
| Vermilion 313 | OCS-G 1172 |
| West Cameron 72 | OCS-G 23735 |
| West Cameron 100 | OCS-G 22510 |
| West Cameron 130 | OCS-G 12761 |

IndemCo

**NAS SURETY GROUP**

NORTH AMERICAN SPECIALTY INSURANCE COMPANY
WASHINGTON INTERNATIONAL INSURANCE COMPANY
WESTPORT INSURANCE CORPORATION

**GENERAL POWER OF ATTORNEY**

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire and Washington International Insurance Company a corporation organized and existing under the laws of the State of New Hampshire and having its principal office in the City of Schaumburg, Illinois, and Westport Insurance Corporation, organized under the laws of the State of Missouri, and having its principal office in the City of Overland Park, Kansas each does hereby make, constitute and appoint:

EDWIN H. FRANK, III, W. RUSSELL BROWN, JR., and MICHELE K. TYSON

JOINTLY OR SEVERALLY

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of:
ONE HUNDRED TWENTY FIVE MILLION ($125,000,000.00) DOLLARS

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolutions adopted by the Boards of Directors of North American Specialty Insurance Company and Washington International Insurance Company at meetings duly called and held on March 24, 2000 and Westport Insurance Corporation by written consent of its Executive Committee dated July 18, 2011.

"RESOLVED, that any two of the President, any Senior Vice President, any Vice President, any Assistant Vice President, the Secretary or any Assistant Secretary be, and each or any of them hereby is authorized to execute a Power of Attorney qualifying the attorney named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of surety, and that each or any of them hereby is authorized to attest to the execution of any such Power of Attorney and to attach therein the seal of the Company; and it is

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be binding upon the Company when so affixed and in the future with regard to any bond, undertaking or contract of surety to which it is attached."

By _____
Steven P. Anderson, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

By _____
Mike A. Ito, Senior Vice President of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company
& Senior Vice President of Westport Insurance Corporation

IN WITNESS WHEREOF, North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation have caused their official seals to be hereunto affixed, and these presents to be signed by their authorized officers this this __28th__ day of ___January___, 20_15_.

**North American Specialty Insurance Company**
**Washington International Insurance Company**
**Westport Insurance Corporation**

State of Illinois
County of Cook   ss:

On this 28th day of ___January___, 20_15_, before me, a Notary Public personally appeared ___Steven P. Anderson___, Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation and _Michael A. Ito_ Senior Vice President of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and Senior Vice President of Westport Insurance Corporation, personally known to me, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as officers of and acknowledged said instrument to be the voluntary act and deed of their respective companies.

OFFICIAL SEAL
M KENNY
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/04/2017

M. Kenny, Notary Public

I, _Jeffrey Goldberg_, the duly elected _Vice President and Assistant Secretary_ of North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney given by said North American Specialty Insurance Company, Washington International Insurance Company and Westport Insurance Corporation which is still in full force and effect.

IN WITNESS WHEREOF, I have set my hand and affixed the seals of the Companies this _1st_ day of ___December___, 20_15_.

Jeffrey Goldberg, Vice President & Assistant Secretary of Washington International Insurance Company & North American Specialty Insurance Company & Vice President & Assistant Secretary of Westport Insurance Corporation