IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHER DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | Re: Docket No. 723 |

## ENERGY TRANSFER'S OBJECTION TO DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

Sea Robin Pipeline Company, LLC, West Cameron Dehydration Company, L.L.C., Florida Gas Transmission, LLC, Stingray Pipeline Company, L.L.C., Trunkline Gas Company, LLC, and Trunkline Field Services LLC (collectively, "Energy Transfer") hereby file this objection (this "Objection") to the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* [ECF No. 723] (the "Disclosure Statement")[2] filed in support of the Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors [ECF No. 722] (the "Plan"). In supports of its Objection, Energy Transfer states as follows:

### I. BACKGROUND

1. On August 3 and 4, 2020 (the "Petition Dates"), Fieldwood Energy LLC and certain of its affiliates (collectively, the "Debtors" or the "Company") each filed a voluntary petition for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not defined in this Objection shall have the meanings given them in the Plan or Disclosure Statement, as applicable.

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"), initiating the above-styled jointly-administered bankruptcy cases (these "Bankruptcy Cases").

2. On August 18, 2020, the United States Trustee gave notice of its appointment of the Official Committee of Unsecured Creditors [ECF No. 183]. No trustee or examiner has been appointed. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors filed their Plan and Disclosure Statement on January 1, 2021. A hearing to consider the Disclosure Statement is scheduled for March 15, 2021.

4. According to the Plan, the Debtors will consummate a reorganization through a series of transactions (the "Reorganization Transactions") that will result in a three-way split of the Company. First, there will be a sale of certain of the Debtors' assets, including the Debtors' oil and gas leases, to the Credit Bid Purchaser, who will also assume certain of the Debtors' liabilities. Second, the Debtors will effectuate a divisive merger whereby the Company will be split into two new entities – FWE I and FWE III. Following the divisive merger, the Legacy Apache Properties and related liabilities and obligations will be allocated to and vest in FWE I. The Plan states that FWE I will "own, operate, plug and abandon, and decommission the Legacy Apache Properties." (Disclosure Statement, § A). FWE III will be allocated and vested with all of the Company's assets that are not (i) sold to the Credit Bid Purchaser or (ii) allocated to FWE I. FWE III will "own, operate, plug and abandon, and decommission the FWE III Properties and related assets and liabilities." (*Id.*). The remainder of the Debtors' assets will be abandoned.

5. Together with their Plan and Disclosure Statement, the Debtors filed a tome of documents, including the Apache Definitive Documents. The Apache Definitive Documents are comprised of, among other documents, the Plan of Merger (Exhibit 5). Attached to the Plan of Merger as Schedule I is the FWE I Assets and FWE I Obligations, which itself has attached to it as Exhibit I-F a list of all contracts related to the FWE I Assets that will be allocated to FWE I as part of the Debtors' divisive merger.

6. Exhibit I-F lists a number of contracts with Energy Transfer that will vest in FWE I. Although after some effort Energy Transfer was able to reconcile most of the contracts included in Exhibit I-F, many questions remain with respect to those contracts and other active contracts that are not listed on Exhibit I-F.

## II. OBJECTION[3]

7. Energy Transfer is a party to approximately forty (40) contracts with the Debtors. As such, it is entitled to know how the Debtors plan to treat these contracts in these Bankruptcy Cases. Neither the Plan nor the Disclosure Statement provides this information. Among numerous other deficiencies of the Disclosure Statement, which are thoroughly addressed in objections filed by other parties, the Disclosure Statement raises questions with respect to the Plan's feasibility. Lastly, the Plan includes broad releases for third parties in violation of Section 524(e) of the Bankruptcy Code.

---

[3] Energy Transfer expressly reserves its rights to object to the Plan on all grounds, including those raised in this Objection.

A. **The Disclosure Statement Lacks Adequate Information as Required by Section 1125 of the Bankruptcy Code to Enable a Creditor to Make an Informed Judgment Regarding the Plan.**

8. Section 1125(b) of the Bankruptcy Code mandates that a disclosure statement contain "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 400-02 (Bankr. S.D. Tex. 2016). This requires that a debtor "adequately, not selectively, disclose fully and precisely all information a creditor would reasonably want before voting on the plan." *Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. (In re Westland Oil)*, 157 B.R. 100, 104 (S.D. Tex. 1993).

9. Courts consider numerous factors when determining the sufficiency of a disclosure statement, including, but not limited to, risks posed to creditors under the plan. *Divine Ripe*, 554 B.R. at 401-02 (listing the non-exclusive factors set forth in *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)).[4] Ultimately, whether information contained in a disclosure statement is adequate is governed by the circumstances of a case and left to the judicial discretion of the bankruptcy court. *Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Co-*

---

[4] These factors include: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates. *Divine Ripe*, 554 B.R. at 401-02.

*op., Inc.*), 150 F.3d 503, 518 (5th Cir. 1998); *Texas Extrusion*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.").

10. Broadly speaking, the Disclosure Statement lacks information pertaining to the allocation of the Debtors' executory contracts among the various entities to be created under the Plan, and whether those will be assumed and assigned or rejected. This information is necessary for Energy Transfer to make an informed decision when voting on the Plan and to evaluate whether it has any substantive objections to confirmation of the Plan. In its current form, the Disclosure Statement is both facially and substantively deficient with respect to the ultimate destiny of Energy Transfer's contracts.

11. As noted above, after a two-tier reconciliation process, Energy Transfer was able to reconcile most of its contracts listed on Exhibit I-F with its own records, but it is unclear what the ultimate fate of those contracts is. Neither is it clear what will happen to Energy Transfer's other contracts that are not listed on Exhibit I-F.

12. The Plan and Disclosure Statement describe at a very high level that the Reorganization Transactions entail the transfer of all of the Company's assets and liabilities to three entities – the Credit Bid Purchaser, FWE I, and FWE III. The Disclosure Statement further explains that FWE I and FWE III are being formed to decommission the Apache Legacy Properties and FWE III Properties and related assets and liabilities, respectively. However, many questions about these entities remain unanswered. To illustrate, does it follow that once FWE I and FWE III complete their decommissioning functions they will dissolve? If so, what will become of the assets and contracts that are being allocated to them via the Reorganization Transactions? How long will the decommissioning and abandonment efforts take? Numerous of Energy Transfer's contracts are

being allocated to FWE I, and if FWE I ceases to exist once the Legacy Apache Properties are decommissioned, what will become of those contracts?

13. Similarly, a number of active contracts between Energy Transfer and the Debtors are not listed on Exhibit I-F as being allocated to and vesting in FWE I. Neither the Plan nor the Disclosure Statement provides any information as to what will happen to those contracts. Will they be allocated to FWE III, assigned to the Credit Bid Purchaser, abandoned, or rejected in these Bankruptcy Cases? If the first, what will become of those contracts once FWE III completes its plugging, abandoning, and decommissioning activities? Energy Transfer is entitled to know how the Debtors intend to treat its contracts and in which of the three new entities, if any, they will ultimately reside.

14. The Disclosure Statement does not explain what will happen to those contracts that will not be allocated to FWE I or FWE III or assigned to the Credit Bid Purchaser. This should be explained in detail in the Disclosure Statement.

15. As to those contracts that are being allocated to one of the three new entities, Energy Transfer cannot discern from the contents of the Disclosure Statement whether, and if so, how, cure notices will be provided. Indeed, the Disclosure Statement does not contain information regarding the cost to cure pre-petition defaults relating to contracts that would be assumed and assigned to FWE I and FWE III.

16. Because the Disclosure Statement fails to fully address the ultimate effect of the transfer of the Debtors' assets to any one of the new entities, and more importantly, which contracts will vest in which entity and which, if any, will be abandoned, the Debtors should be required to amend the Disclosure Statement to reflect their intentions as to their executory contracts with Energy Transfer. Until they do, Energy Transfer cannot make an informed decision whether to

accept or reject the Plan or whether or not it has any substantive objections to confirmation of the Plan.

B.   **The Disclosure Statement Fails to Adequately Disclose Potential Feasibility Concerns with the Plan.**

17.   In proposing a plan, the debtor bears the burden of showing that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan." 11 U.S.C. 1129(a)(11). *See also In re American Capital Equipment, LLC*, 688 F.3d 145, 155 (3d Cir. 2012).

18.   While establishing that a plan is feasible is not a requirement for the debtor to guarantee a plan's success, the plan must be realistic and must be "reasonably likely [to] succeed[] on its own terms without a need for further reorganization on the debtor's part." *In re Applied Safety, Inc.*, 200 B.R. 579, 584 (Bankr. E.D. Pa. 1996). The purpose of the feasibility requirement is to prevent confirmation of a visionary scheme that promises more than a debtor can achieve. *In re Gulph Woods Corp.*, 84 B.R. 961, 973 (Bankr. E.D. Pa. 1988). Feasibility has been expressed in a variety of ways. *See, e.g.*, *Fin. Sec. Assurance, Inc. v. T–H New Orleans, L.P. (In re T–H New Orleans, L.P.)*, 116 F.3d 790, 801 (5th Cir.1997) (feasibility requires "a reasonable assurance of commercial viability"); *In re Jartan, Inc.*, 44 B.R. 331, 393 (Bankr. N.D. Ill. 1984) ("The touchstone of feasibility is whether or not the Debtor emerges with reasonable prospects of financial stability and successor . . . ."). A reorganization plan under chapter 11 "must be more than a nebulous speculative venture and must have a realistic chance of success which would lead to rehabilitation." *In re Great American Pyramid Joint Venture*, 144 B.R. 780, 792 (Bankr. W.D. Tenn. 1992).

19.   These Bankruptcy Cases are the Debtors' second attempt at restructuring their enterprise, and as proposed, the restructuring raises serious concerns about the Post-Effective Date

Debtors' ability to keep the enterprise out of liquidation or a further financial reorganization following confirmation. Separate and apart from the Debtors' failure to disclose how they intend to (i) pay allowed administrative expense claims as required by Section 1129(11) of the Bankruptcy Code, and (ii) impose environmental liabilities on their predecessors without the predecessors' consent to take on those obligations, both of which issues are exhaustively briefed by other parties in interest, the Debtors have not met their burden of showing the financial viability of FWE I and FWE III following confirmation.[5] The Debtors have also failed to provide a liquidation analysis, a valuation analysis, or other financial projections that may offer creditors insight into how the Post-Effective Date Debtors propose to avoid a third restructuring or an immediate liquidation of the enterprise.

20. Though the Credit Bid Purchaser is expected to pay $224 million in cash for the Debtors' desirable assets, it is unknown how those funds will be used, and whether any portion of those funds will be infused into FWE I or FWE III so that these new entities are financially able to satisfy their obligations under the contracts being allocated to them. An assumption of contracts under Section 365 requires the debtor to cure any defaults and provide adequate assurance of future performance under each assumed contract. 11 U.S.C. § 365(b)(1). Indeed, courts have required a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In re C.M. Systems, Inc.*, 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986); *In re Gold Standard at Penn, Inc.*, 75 B.R. 669, 674 (Bankr. E.D. Penn. 1987) (explaining that adequate assurance requires "sufficient financial backing, escrow deposits or other forms of

---

[5] Under the Plan, neither FWE I nor the Credit Bid Purchaser is considered a Post-Effective Date Debtor. (Plan § 1.1).

security or guaranty"). The Debtors have disclosed virtually no information regarding how FWE I and FWE III will be funded, let alone provided any assurances to Energy Transfer regarding whether those entities will be financially able to perform under the Energy Transfer contracts following confirmation.

**C.     There is Inadequate Disclosure about the Broad Releases Contemplated by the Plan.**

21.     As proposed, the Plan seeks to provide releases for the Debtors and numerous third parties from liabilities in violation of Section 524(e) of the Bankruptcy Code. Released Parties include, among others, the Debtors, the Post-Effective Date Debtors, the Credit Bid Purchaser, the Apache PSA Parties, the DIP Agent and DIP Lenders, and the Consenting Creditors. The Debtors offer no explanation as to the grounds for providing releases to such parties, some of whom may have environmental liability in connection with the decommissioning of the Debtors' assets, nor do they explain what, if any, investigation, was conducted in connection with the releases, and what consideration, if any, was paid for such releases.

22.     Section 524(e) provides that a "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Further, non-consensual releases such as those proposed under the Debtors' Plan are regularly struck by courts. *See, e,g.*, *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009). The Disclosure Statement cannot be approved until the Debtors disclose information sufficient for Energy Transfer to understand the full scope of the releases.

### III.     CONCLUSION

23.     WHEREFORE, for the reasons discussed herein, Energy Transfer respectfully requests that the Court deny approval of the Disclosure Statement and grant such other and further relief as the Court may deem just, proper, and equitable.

Dated: March 8, 2021                                    Respectfully submitted,

                                                  */s/ Yelena Archiyan*
John E. Mitchell, SBN: 00797095
Michaela C. Crocker, SBN: 24031985
Yelena Archiyan, SBN: 24119035
KATTEN MUCHIN ROSENMAN LLP
2121 N. Pearl St., Suite 1100
Dallas, TX 75201
Telephone: (214) 765-3600
Email: john.mitchell@katten.com
Email: michaela.crocker@katten.com
Email: yelena.archiyan@katten.com

**COUNSEL FOR ENERGY TRANSFER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing objection was served electronically via the Court's Electronic Case Filing (ECF) System on March 8, 2021.

                                                  */s/ Yelena Archiyan*

                                                  Yelena Archiyan