IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FIELDWOOD ENERGY LLC, et al., | Chapter 11 |
| Debtors, | Case No. 20-33948 (MI) |
| _____ | (Jointly Administered) |
| FIELDWOOD ENERGY LLC, | |
| Plaintiff, | Adversary No. 20-03497 |
| V. | |
| VALERO MARKETING AND SUPPLY COMPANY, | |
| Defendant and Counter-Plaintiff. | |

**VALERO MARKETING AND SUPPLY COMPANY'S ("VALERO")
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Notice under Local Rule 9013-1(b):** This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.

### A. Summary of Argument

The Court should grant Valero a partial summary judgment on its breach of contract claim. The key facts are undisputed: (a) Valero and Fieldwood were parties to a Purchase Contract that required Fieldwood to deliver approximately 10,000 barrels of crude oil a day to Valero; (b) the Purchase Contract was in effect throughout May 2020; and (c) during May 2020, Fieldwood failed to deliver any crude oil to Valero.

Fieldwood argues that Valero's breach of contract claim should fail because Valero did not attempt to cover by securing another supply of crude oil after Fieldwood failed to deliver. The UCC governs the Purchase Contract because it involves the sale of goods. Under section 2.713 of the UCC, when a seller fails to deliver goods, the buyer is not required to cover. Rather, the buyer (here Valero) may instead elect to collect the difference between the contract price of the goods and the prevailing market price (plus incidental damages). In this way, a buyer is protected when the seller breaches in a rising market, as Fieldwood did here.

Accordingly, the Court should find as a matter of law that Fieldwood breached the Purchase Contract by failing to deliver any crude oil in May 2020, and further allow the parties to proceed to fact discovery to determine the amount of Valero's damages.

### B. Factual Background

**1. Under the Purchase Contract, Fieldwood was to deliver 10,000 barrels of crude oil a day to Valero.**

In June 2018, Valero and Fieldwood entered into the Purchase Contract.[1] Under this agreement, Fieldwood agreed to provide crude oil on a month-to-month basis to Valero. The production came from Fieldwood's wells located in the Gulf of Mexico's Thunder Horse field. The delivery point was a cavern system in Clovelly, Louisiana, from which point Valero took delivery by pipeline.[2] Under the Purchase Contract, Fieldwood was required to deliver approximately 10,000 barrels a day to Valero.[3]

---

[1] Purchase Contract, Exhibit 1.

[2] Id. at page 2.

[3] Id.

To determine the price owed for the crude oil, the Purchase Contract utilized a formula that consisted of several pricing components.[4] Because of the formula, and given the nature of crude oil as a commodity, the value of the delivered crude oil changed from day-to-day.

Critically, the Purchase Contract required 30 days' prior written notice of cancellation by either party.[5]

## 2. April 2020: Fieldwood makes delivery for April, but cancels the contract effective on May 30, 2020.

In April of 2020, Fieldwood delivered 195,000 barrels of crude oil to Valero under the Purchase Contract.[6] Towards the end of April, Fieldwood informed Valero that it might not deliver crude oil the following month because of Covid, which Fieldwood asserted was a force majeure event.[7] Fieldwood failed to explain how Covid prevented it from producing and delivering crude oil.[8]

On April 29, Fieldwood sent Valero a notice that it was terminating the Purchase Contract, effective as of May 30, 2020.[9] Thus, while the Purchase Contract gave Fieldwood the right to terminate with 30 days' notice, Fieldwood recognized that it still owed Valero crude oil deliveries for the month of May.

---

[4] Id.

[5] Id. at page 1.

[6] Fieldwood's invoice for April crude oil, Exhibit 2.

[7] Fieldwood's April 27, 2020 letter, Exhibit 3.

[8] Valero's April 29, 2020 letter, Exhibit 4.

[9] Fieldwood's termination letter, Exhibit 5.

### 3. Valero pays for a portion of the April crude oil.

Under the Purchase Contract, the price for the April 195,000 barrels of crude oil was $3,090,564.[10] Payment by Valero was not due until May 20, 2020.[11] All parties agree that Valero has paid $988,020 of this invoice, leaving a balance of $2,102,544.[12]

### 4. May 2020: Fieldwood fails to deliver any oil in the month of May.

By the middle of May, Fieldwood had not delivered any of its May obligation. Accordingly, on May 14, 2020, Valero exercised its Purchase Contract rights and demanded that Fieldwood provide adequate assurance of performance by issuing a stand-by letter of credit or depositing adequate funds into a designated bank account.[13] Fieldwood did neither. When the Purchase Contract terminated on May 30, Fieldwood had failed to deliver any crude oil to Valero for the entire month of May 2020.

## C. Procedural History

### 1. Proof of Claim.

On November 25, 2020, Valero filed Proof of Claim No. 709 in Cause No. 20-33948, United States Bankruptcy Court, Southern District of Texas, for $3,118,600.[14] As set forth in the proof of claim, this amount was calculated as follows:

- Valero acknowledged that it still owes Fieldwood $2,102,544 for the delivered April crude oil.

---

[10] Fieldwood's invoice for April crude oil, Exhibit 2.

[11] Purchase Contract, Exhibit 1, page 2 ("Payment shall be made on the 20th of the month following delivery . . . ").

[12] Fieldwood's Adversary Complaint, Docket Entry No. 1, page 8 .

[13] Valero May 14, 2020 letter, Exhibit 6.

[14] Proof of Claim No. 709, Exhibit 7.

4

- Applying the Purchase Contract formula, the invoice price Fieldwood would have remitted to Valero for payment of 310,000 barrels in May 2020, if Fieldwood had honored the Purchase Contract and delivered 10,000 barrels per day, would be $6,801,400.[15]

- Because Fieldwood failed to deliver, under the UCC, Valero is entitled to recover the difference between the market price of the 310,000 barrels and the contract price of $6.8 million. The market price of crude oil in May of 2020 was considerably higher than the contract price because of a generally rising oil market, and the fact that buying oil on the market on an immediate-need basis is more expensive than buying under a long-term contract. The market price of oil at the delivery point in May of 2020 was approximately $32 per barrel. Thus, the market price for the oil that Fieldwood failed to deliver was approximately $9,920,000 ($32 x 310,000 barrels). Therefore, Valero's damages for the failed delivery are approximately $3,118,600 (the difference between the market price and the contract price).[16]

Valero acknowledges in its proof of claim that its damages must be offset by $2,102,544 for the crude oil that Fieldwood did deliver in April of 2020, for which Valero has not yet paid. Thus, after setoff, Fieldwood still owes Valero approximately $1,016,056.[17]

**2. This lawsuit.**

On December 11, 2020, Fieldwood filed this lawsuit, claiming that Valero breached the Purchase Contract by underpaying for the 195,000 barrels that Fieldwood delivered in April 2020.[18] Further, Fieldwood argued that Valero could not be entitled to any damages for Fieldwood's non-delivery of crude oil in May, because Valero failed to mitigate its damages by acquiring crude oil on the open market. Had Valero done so, Fieldwood contends, Valero would have actually saved money because the market for crude oil was cheaper than the Purchase Contract price.[19]

---

[15] Id., attachment A.

[16] Id., attachment A.

[17] Id.

[18] Adversary Complaint, Docket Entry No. 1.

[19] Id. at page 6.

On January 15, 2021, Valero answered the suit and asserted a counterclaim—as allowed by Rule 7013 of the Federal Rules of Bankruptcy Procedure—because of Fieldwood's failure to deliver any crude oil in May of 2020.[20] As set out in its Proof of Claim No. 709—and contrary to Fieldwood's contention—the market price for crude oil in May was significantly higher than the Purchase Contract price. In particular, buying 310,000 barrels of crude oil on the open market in May 2020 would have cost Valero approximately $3.1 million more than the Purchase Contract price.[21]

Valero does not dispute that its damages for Fieldwood's failure to deliver in May must be offset by the approximately $2.1 million still owed for the April delivery. Nonetheless, after this setoff, Fieldwood still owes Valero approximately $1 million in damages.

### 3. The parties agree to file cross-motions for summary judgment on Valero's entitlement to damages.

After conferring, counsel for the parties agreed that, "Valero's entitlement to damages is a legal issue as there is not a dispute as to the amount of oil that Fieldwood delivered in April and May, and the amount of money paid by Valero for the April oil."[22] Thus, the parties sought permission to decide the fundamental legal issue—Valero's entitlement to damages—before conducting discovery on the amount of damages. The Court entered a case management order reflecting this agreed approach.[23]

---

[20] Docket Entry No. 4.

[21] Id., page 9.

[22] Case Management Plan, Docket Entry No. 6, pages 2-3.

[23] Docket Entry Nos. 8 and 12.

### D. Analysis

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As set forth below, there is no dispute that Fieldwood failed to deliver any crude oil in May of 2020, when the Purchase Contract was still operative. Further, as a matter of law, Valero is entitled to damages under the UCC, regardless of whether Valero attempted to cover for Fieldwood's failed delivery.

**1. The UCC governs this dispute.**

The Purchase Contract provides that it is governed by Texas Law.[24] Under Texas law, a contract for the sale of crude oil is a contract for the sale of goods governed by the UCC. *Aquila Southwest Pipeline v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 234 (Tex. App.—San Antonio 2001, pet. denied). "Where the UCC applies, it displaces all common law rules of law regarding breach of contract and substitutes instead those rules of law and procedure set forth in the UCC." *Glenn Thurman, Inc. v. Moore Constr., Inc.*, 942 S.W.3d 768, 771 (Tex. App.—Tyler 1997, no writ). Thus, any common law duty that Valero may have had to cover, is instead governed by the UCC's provisions on cover.

**2. Under the UCC, Valero was not obligated to cover or attempt to cover for the failed May delivery.**

Fieldwood concedes that it delivered no crude oil in May of 2020 while the Purchase Contract was still operative. When a seller fails to deliver, the UCC gives the aggrieved buyer two options. One option is to cover, by buying substitute goods. Tex. Bus. & Com. Code § 2.712. If the buyer elects this option, it may then seek the difference between the cost of cover and the contract price. Id.

---

[24] Purchase Contract, Exhibit 1, page 4.

7

The other option is to do nothing. Id. at § 2.713. If the buyer elects this option, then its damages "are the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages . . . less expenses saved . . . ." Id. Thus, section 2-713 protects a buyer in a rising market, which is exactly the position Valero found itself in May of 2020. As set out in its Proof of Claim, and as Valero will demonstrate in the damages phase, the cost to replace the crude oil on the spot market in May 2020 was significantly higher than the price that Valero would have paid Fieldwood under the Purchase Contract.

Whether a buyer elects to cover or not cover is wholly up to the buyer. "***Cover is not a mandatory remedy for the buyer.*** That is, an aggrieved buyer need not minimize its damages by covering and not doing so does not bar it from pursuing a market price damages theory." *TXU Portfolio Mgmt. Co., L.P. v. FPL Energy, LLC*, 529 S.W.3d 472, 483 (Tex. App.—Dallas 2016, no pet.) (punctuation omitted and emphasis added); *see also, Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 523 (Tex. App.—Eastland 2015, pet. denied) (buyer "chose to recover damages for non-delivery under Section 2.713, not section 2.712. That was its choice to make"); *Jon–T Farms, Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743, 749 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.), *disapproved of on other grounds by McKinley v. Drozd,* 685 S.W.2d 7, 10–11 (Tex. 1985) (a buyer is always free to choose between cover under Section 2.712 and damages for non-delivery under Section 2.713).

Thus, Valero was well within its UCC rights not to cover. Of course, that does not leave Fieldwood without a defense. It can still argue that the market price was below the contract price in May 2020 and, therefore, Valero has no damages. But as will be demonstrated in damages discovery, that is not the case.

**Conclusion and Prayer**

For the reasons set forth above, Valero asks that the Court enter a partial summary judgment that Fieldwood breached the contract by failing to deliver the May crude oil and order the parties to conduct discovery and present evidence as to damages.

Respectfully Submitted,

FERNELIUS SIMON MACE
ROBERTSON PERDUE PLLC

*/s/ C. Brannon Robertson*
C. Robert Mace
State Bar No. 12771300
Southern District No. 1415
BMace@trialattorneytx.com
C. Brannon Robertson
State Bar No. 24002852
Southern District No. 22131
brannon.robertson@trialattorneytx.com
4119 Montrose Blvd., Suite 500
Houston, Texas 77006
Telephone: 713-654-1200/ Fax: 713-654-4039

DYKEMA GOSSETT PLLC

*/s/ Deborah D. Williamson*
Deborah D. Williamson
State Bar No. 21617500
dwilliamson@dykema.com
Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: 210.554.5500/ Facsimile: 210.226.8395

ATTORNEYS FOR VALERO MARKETING
AND SUPPLY COMPANY

9

## **CERTIFICATE OF SERVICE**

    I certify that on March 9, 2021, I served a true and correct copy of this document on all parties by electronic means.

                                          <u>/s/ C. Brannon Robertson</u>
                                          C. Brannon Robertson