IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
|  | § |  |
| Debtors.[1] | § | (Jointly Administered) |
|  | § |  |

**MOTION OF DEBTORS FOR ENTRY OF ORDER (I) APPROVING DISCLOSURE
STATEMENT AND FORM AND MANNER OF NOTICE OF DISCLOSURE
STATEMENT HEARING; (II) ESTABLISHING SOLICITATION AND VOTING
PROCEDURES; (III) SCHEDULING CONFIRMATION HEARING; (IV)
ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION
OF THE PROPOSED PLAN; (V) APPROVING NOTICE AND OBJECTION
PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; (VI) APPROVING PROCEDURES FOR OBJECTIONS TO THE
ASSIGNMENT AND TRANSFER OF PROPERTY OF THE ESTATE; (VII)
APPROVING BID SUBMISSION DEADLINE AND PROCEDURES FOR SUBMISSION
OF HIGHER OR BETTER BIDS; AND (VIII) GRANTING RELATED RELIEF**

---

A hearing will be conducted on this matter on February 3, 2021 at 2:30 p.m. (prevailing Central Time). You may participate in the hearing by audio/video connection.

Please note that through the entry of General Order 2020-10 on March 24, 2020, General Order 2020-11 on April 27, 2020, General Order 2020-17 on June 12, 2020, General Order 2020-18 on June 29, 2020, General Order 2020-19 on August 7, 2020, and General Order 2020-20 on October 19, 2020, the Court invoked and then extended and modified the protocol for emergency public health or safety conditions.

Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.

You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeIsgur" in the GoToMeeting app or click the link on Judge Isgur's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

> Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Isgur. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.

Fieldwood Energy LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

## Background

1.     Commencing on August 3, 2020 (the "**Petition Date**"), the Debtors each filed with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**").

4.     On August 18, 2020, the United States Trustee for Region 7 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

5.     Additional information regarding the Debtors' business, capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

*Declaration of Michael Dane in Support of Debtors' Chapter 11 Petitions and First Day Relief* (Docket No. 29) (the "**Dane Declaration**").

<u>**Relief Requested**</u>

6.      Pursuant to sections 105, 365, 1125, 1126, 1128, and 1145 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 3001, 3003, 3016, 3017, 3018, 3020, 6004, and 9006, and Local Rules 2002-1, 3016-1 and 3016-2 of the Bankruptcy Local Rules, the Debtors request approval of an order substantially in the form attached hereto as <u>**Exhibit A**</u> (the "**Proposed Order**"):

i.      approving the form and manner of notice and hearing to consider the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (as it may be amended, modified, or supplemented, the "**Disclosure Statement**") (Docket No. 723);

ii.      approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

iii.      scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, attached as <u>**Exhibit A**</u> to the Disclosure Statement (the "**Plan**")[2];

iv.      establishing February 3, 2021 as the record date for the purpose of determining which holders of Claims and Interests are entitled to vote on the Plan and/or receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

v.      approving Solicitation Procedures (as defined below) with respect to the Plan, including the forms of Ballots and Notice of Non-Voting Status (each as defined below) and tabulation procedures;

vi.      establishing the deadline (the "**Plan Objection Deadline**") to object to confirmation of the Plan;

vii.      approving the procedures for assumption of executory contracts and unexpired leases;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan or Disclosure Statement, as applicable.

viii.    approving procedures for objections to the assignment and transfer of property of the estate;

ix.    approving the Bid Deadline (as defined below) and procedures for submission of higher or better bids; and

x.    granting related relief.

7.    For the convenience of the Court and parties-in-interest, the below chart provides a summary of the key dates sought pursuant to the Proposed Order:

| PROPOSED SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Disclosure Statement Hearing | **February 3, 2021 at 2:30 p.m. (prevailing Central Time)** |
| Voting Record Date | **February 3, 2021** |
| Solicitation Date | **Four (4) Business Days after entry of Proposed Order** |
| Rule 3018(a) Motion Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Request for Estimation Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Bid Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Plan Supplement Filing Deadline | **March 2, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Voting Deadline | **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Plan Objection Deadline | **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Ballot Certification Deadline | **March 11, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | **March 15, 2021** |
| Confirmation Hearing | **March 17, 2021, subject to the Court's availability** |

8.      For further reference of the Court and parties-in-interest, the Debtors provide below a list of the various exhibits and documents cited throughout this Motion:

| DOCUMENT | EXHIBIT |
|---|---|
| Proposed Order | Exhibit A |
| Confirmation Hearing Notice | Exhibit 1 to the Proposed Order |
| Form of Ballot for Class 4 (FLTL Secured Claims) | Exhibit 2 to the Proposed Order |
| Form of Ballot for Class 5 (SLTL Claims) | Exhibit 3 to the Proposed Order |
| Form of Ballot for Class 6 (General Unsecured Claims) | Exhibit 4 to the Proposed Order |
| Notice of Non-Voting Status | Exhibit 5 to the Proposed Order |
| Notice of Disclosure Statement Hearing | Exhibit B |
| Notice of Procedures to Submit Bids | Exhibit C |
| Disclosure Statement | Filed contemporaneously herewith |
| Plan | Exhibit A to the Disclosure Statement filed contemporaneously herewith |
| Release Provisions | Exhibit B to the Disclosure Statement |

## Jurisdiction

9.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Summary of Plan

10.      As described in more detail in the Disclosure Statement, the Plan is the result of extensive good faith negotiations among the Debtors and a number of their key economic stakeholders, including the DIP Lenders and the Ad Hoc Group of Secured Lenders who have agreed to support the Plan pursuant to that certain Restructuring Support Agreement dated as of August 4, 2020 (the "**RSA**").  The parties to the RSA include Consenting FLTL Lenders holding

approximately 76.75% of the Company's secured debt under the FLTL Credit Agreement and Consenting SLTL Lenders holding approximately 28.91% of the Company's secured debt under the SLTL Credit Agreement.

11.     As further described in the Disclosure Statement, the Plan provides for a comprehensive restructuring to be accomplished through the consummation of a credit bid sale pursuant to the Plan of the Debtors' select Deepwater and Shelf Assets to their Prepetition FLTL Lenders and the Apache Transactions, which are collectively designed to (i) recapitalize and preserve the going concern value of the Debtors' business and the jobs of over 1,000 employees and contractors, (ii) maximize recoveries to the Debtors' creditors, and (iii) ensure that all plugging and abandonment and decommissioning obligations are allocated to the appropriate parties for performance in a responsible and safe manner.

12.     As further described in the Disclosure Statement, the Plan provides for the following treatment of claims and interests:

- All holders of Allowed FLTL Claims will have the secured part of their claims (i.e., the Allowed FLTL Secured Claims) satisfied in full pursuant to the Credit Bid Transaction and, in exchange for such Allowed FLTL Secured Claims, receive their Pro Rata Share of 100% of the New Equity Interests (subject to dilution as set forth in section 4.4 of the Plan). The unsecured deficiency part of the Allowed FLTL Claims (i.e., the Allowed FLTL Deficiency Claims, if any) will be classified with other Allowed General Unsecured Claims (Class 6), including prepetition trade claims, rejection damages claims, and surety claims.

- All holders of Allowed SLTL Claims will receive their Pro Rata Share of a $5 million cash pool, which will also be shared with the holders of Allowed General Unsecured Claims, including the Allowed FLTL Deficiency Claims, if any.

- The holders of Allowed General Unsecured Claims will also receive their Pro Rata Share of any distributable value of the Post-Effective Date Debtors and FWE I after satisfaction of (i) Allowed Administrative Expense Claims, Allowed DIP Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Other Secured Claims, Allowed FLFO Claims, all Cure Amounts and (ii) all fees, expenses, costs and other amounts pursuant

to the Plan and incurred by the Post-Effective Date Debtors in connection with post-Effective Date operations and wind-down

- All holders of other claims against the Debtors or existing equity interests in FWE Parent will not receive a recovery under the Plan.

### The Disclosure Statement

13.     Pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016(b), the Debtors prepared and filed the Disclosure Statement to provide parties with adequate information and disclosure regarding the terms of the Plan.  The Debtors intend to provide parties with copies of the Disclosure Statement, once approved, in connection with the Debtors' solicitation of votes to accept or reject the Plan.

**Approval of the Disclosure Statement**

14.     Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and equity interests with "adequate information" regarding a proposed chapter 11 plan of reorganization.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

15.     Accordingly, a debtor's disclosure statement must provide sufficient information to permit an informed judgment by impaired creditors entitled to vote on the plan. *See, e.g.*, *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015) ("The proponent of a reorganization plan . . . must provide a court-approved disclosure statement that contains 'adequate information'

about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan."); *In re Tex. Rangers Baseball Partners*, 521 B.R. 134, 176 (Bankr. N.D. Tex. 2014) ("Section 1125 of the Bankruptcy Code entitles creditors to 'adequate information' so they can make an informed decision on whether to accept or reject a chapter 11 plan.").  The essential requirement of a disclosure statement is that it "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Keisler*, No. 08-34321, 2009 WL 1851413, at *4 (Bankr. E.D. Tenn. June 29, 2009) (quoting *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991)).

16.     Whether a disclosure statement contains adequate information "is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation."  11 U.S.C. § 1125(d).  Instead, bankruptcy courts have broad discretion to determine the adequacy of the information contained in a disclosure statement.  *See, e.g.*, *Texas Extrusion Corp. v. Lockheed Corp.* (*In re Texas Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988) (noting that the determination of what is adequate information is "largely within the discretion of the bankruptcy court"); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement.") (citing *In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995)).  Congress granted bankruptcy courts wide discretion in determining the adequacy of a disclosure statement to facilitate effective reorganizations of debtors in a broad range of businesses, taking into account the various facts and circumstances that accompany chapter 11 cases.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977); *see also In re Cajun Elec. Power Coop.*, 150 F.3d 503, 518 (5th Cir. 1998) ("[W]ith respect to a particular disclosure statement, 'both the kind and form of

8

information are left essentially to the judicial discretion of the court.'") (quoting S. Rep. No. 95-989, at 121 (1978)).  Accordingly, the determination of whether a disclosure statement contains adequate information is made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See In re Texas Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis.").

17.     To determine whether a disclosure statement contains adequate information, courts generally examine whether the disclosure statement contains the following types of information, as applicable:

(a)     the circumstances that gave rise to the filing of the bankruptcy petition;

(b)     an explanation of the available assets and their value;

(c)     the anticipated future of the debtor(s);

(d)     the source of the information provided in the disclosure statement;

(e)     a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

(f)     the condition and performance of the debtor while in chapter 11;

(g)     information regarding claims against the estate;

(h)     a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

(i)     the accounting and valuation methods used to produce the financial information in the disclosure statement;

(j)     information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

(k)     a summary of the plan of reorganization or liquidation;

(l)     an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

(m)     the collectability of any accounts receivable;

(n)     any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

(o)     information relevant to the risks being taken by the creditors and interest holders;

(p)     the actual or projected value that can be obtained from avoidable transfers;

(q)     the existence, likelihood, and possible success of nonbankruptcy litigation;

(r)     the tax consequences of the plan; and

(s)     the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *In re ReoStar Energy*, 2012 Bankr. LEXIS 2418, at *4–5 (Bankr. N.D. Tex. May 30, 2012) (noting that "courts have developed checklists for determining whether a disclosure statement meets the requirements of section 1125").  Such a list is not meant to be comprehensive and a debtor is not required to provide all the information on the list.  Rather, the bankruptcy court must decide what is appropriate in each case in light of the particular facts and circumstances present.  *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (adopting a similar list); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of a similar list but cautioning that "no one list of categories will apply in every case").

18.     The Disclosure Statement provides many of the types of information identified in the applicable categories above, including, but not limited to:

(a)     an overview of the Plan (§ I);

(b)     key events leading to the commencement of the Debtors' chapter 11 cases (§ IV);

(c)     a description of the Debtors' capital structure (§ III.B);

(d)     the anticipated future of the Debtors (§ VI);

(e)     the operation of the Debtors' businesses (§ III.A);

10

(f)     the indebtedness of the Debtors and information regarding pending claims (§ III.D);

(g)     a disclaimer, which indicates that no statements or information concerning the debtors or their assets or securities are authorized, other than those set forth in the Disclosure Statement (§ IX.F);

(h)     events during the chapter 11 cases (§ V);

(i)     an overview of a liquidation analysis under chapter 7 (Exhibit C);

(j)     risk factors affecting the Debtors (§ IX);

(k)     requirements for confirmation of the Plan (§ XI); and

(l)     tax consequences of the Plan (§ VIII).

19.     In addition to the type of information that courts typically look for in a disclosure statement, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan (§ XII), and concludes with the Debtors' recommendation that holders of Claims and Interests eligible to vote should vote to accept the Plan because it provides the highest and best recoveries to holders of Claims and Interests.  *See* § XIII.

20.     Based on the foregoing, the Debtors submit that the Disclosure Statement contains adequate information for a voting creditor to make an informed judgment regarding whether to vote to accept or reject the Plan, and therefore satisfies the requirements of section 1125 of the Bankruptcy Code.  Thus, the Debtors respectfully request that the Court approve the Disclosure Statement as containing adequate information in satisfaction of the requirements of section 1125 of the Bankruptcy Code.

**The Disclosure Statement Provides Adequate Notice of Release, Exculpation, and Injunction Provisions in the Plan**

21.     Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be

enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c).

22.     The Plan includes injunctions, releases, and exculpations in sections 10.6, 10.7, and 10.8. The Disclosure Statement in Exhibit B describes in detail the releases provided under the plan, the entities to be providing such releases, the entities to be released, and the Claims and Interests and causes of action to be released. Additionally, Exhibit B to the Disclosure Statement sets forth the terms of the proposed exculpation provision under the Plan, and Exhibit B to the Disclosure Statement sets forth the proposed injunction related to the release and exculpation provisions in the Plan. Each of the foregoing sections are set forth in the Disclosure Statement in conspicuous, bold print. Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

**Approval of the Notice of Disclosure Statement Hearing**

23.     In accordance with Bankruptcy Rules 2002(a) and 3017 and Local Rule 2002-1, contemporaneously with the filing of this Motion, the Debtors filed and served a notice of the hearing on this Motion (the "**Disclosure Statement Notice**"), substantially in the form annexed hereto as **Exhibit B**, by email and/or by first class mail to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) (A) Cole Schotz P.C., 301 Commerce Street, Suite 1700, Fort Worth, Texas 76102 (Attn: Michael D. Warner and Benjamin L. Wallen), and (B) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Frank A. Merola, Jonathan D. Canfield, and Sherry J. Millman), Counsel to the Creditors' Committee; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn:  William L. Wallander, Esq. and Bradley R. Foxman, Esq.), as counsel to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell

LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham Jr., Esq. and Martha Wyrick, Esq.), as counsel to the Ad Hoc Group of Secured Lenders; (v) Shipman & Goodwin LLP, 400 Park Ave, 5th Floor, New York, NY 10022 (Attn: Nathan Plotkin, Esq.), as counsel to Cantor Fitzgerald Securities, the FLTL Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606 (Attn: Joshua Spencer, Esq. and Anastasia Sotiropolous, Esq.), as counsel to Cortland Capital Market Services LLC, the SLTL Administrative Agent; (vii) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002 (Attn: Robin Russell and Catherine Diktaban), as counsel to Apache Corporation; (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Securities and Exchange Commission; (xi) the registered and beneficial holders of Interests (as defined in the Plan) in the Debtors; (xii) any other known holders of Claims and Interests against the Debtors, including but not limited to, the Debtors' predecessors-in-interest, co-working interest owners, and surety providers, (xiii) the Bureau of Ocean Energy Management, the Bureau of Safety and Environmental Enforcement, the Department of the Interior, and the Department of Justice; and (xiv) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Disclosure Statement Notice provides at least twenty-eight (28) days' notice of the hearing to approve the Disclosure Statement (the "**Disclosure Statement Hearing**") and of the deadline by which objections must be filed to approval of the Disclosure Statement (the "**Disclosure Statement Objection Deadline**"). The Debtors respectfully submit that such notice is sufficient under the circumstances. The Debtors request that the Court find that such notice is due and proper and that no further notice is necessary.

24.     The Debtors submit that the foregoing procedures provide adequate notice of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline for all purposes and, accordingly, request that the Court approve such procedures.

### The Solicitation Procedures

25.     In connection with the Disclosure Statement and Plan, the Debtors propose to implement the solicitation and balloting described below. The Debtors have retained Prime Clerk LLC ("**Prime Clerk**" or the "**Solicitation Agent**") as their claims, noticing, and solicitation agent through the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent* (Docket No. 19).

**Parties Entitled to Vote**

26.     Pursuant to the Plan, the Debtors have created ten (10) classes of Claims and Interests. Of those classes, the Debtors submit that the following classes are Impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (the "**Voting Classes**"):

| Class | Description |
|-------|-------------|
| Class 4 | FLTL Secured Claims |
| Class 5 | SLTL Claims |
| Class 6 | General Unsecured Claims |

27.     A creditor or interest holder that holds a Claim or Interest in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)     as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b)      as of the Voting Record Date, such creditor's Claim or interest holder's Interest has been disallowed, expunged, disqualified or suspended;

(c)      such creditor has not filed a proof of claim in accordance with the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* (Docket No. 466) (the "**Bar Date Order**")[3] as of the Voting Record Date and the Debtors have not scheduled such creditor's Claim or scheduled such creditor's Claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(d)      such creditor's Claim or interest holder's Interest is subject to an objection or request for estimation as of the Voting Record Date, subject to the procedures set forth below.

28.      Section 1126(f) of the Bankruptcy Code provides that, for purposes of soliciting votes on confirmation of a plan of reorganization, "a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).  Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (FLFO Claims) receive full recovery of their priority or secured Claims under the Plan.  Holders of Claims in Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) will have their Claims and Interests adjusted, reinstated, cancelled, or discharged in the Debtors' or Post-Effective Debtors' discretion. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of such Claims and Interests are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan (collectively, the "**Unimpaired Classes**").

29.      Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not

---

[3] Pursuant to the Bar Date Order, the deadline for creditors or other parties-in-interest to file a proof of claim was November 25, 2020 at 5:00 p.m. (prevailing Central Time).  The deadline for governmental units to file a proof of claim is February 1, 2021 at 5:00 p.m. (prevailing Central Time).

entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g). Holders of Claims and Interests in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) will receive no recovery under the Plan. Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, such holders are deemed to reject the Plan and are not entitled to vote on the Plan (the "**Deemed Rejecting Classes**" and, together with the Unimpaired Classes, the "**Non-Voting Classes**").

30. Holders of Claims and Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| Class 1 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| Class 3 | FLFO Claims | Unimpaired | No (Presumed to accept) |
| Class 7 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| Class 8 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| Class 9 | Intercompany Interests | Unimpaired | No (Presumed to accept) |
| Class 10 | Existing Equity Interests | Impaired | No (Deemed to reject) |

**Voting Record Date**

31. Bankruptcy Rule 3017(d) provides, in relevant part, that, for the purposes of soliciting votes in connection with confirmation of a plan of reorganization, and except to the extent the Court orders otherwise, the debtor must mail the relevant solicitation materials to all creditors and equity security holders, including "holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d).

32.     To identify and establish the universe of creditors and equity holders entitled to vote on the Plan, the Debtors request that the Court set February 3, 2021, as the date for determining (i) which creditors and equity holders in Voting Classes are entitled to vote on the Plan and (ii) which creditors and equity holders in Non-Voting Classes are entitled to receive a Notice of Non-Voting Status (as defined below) (the "**Voting Record Date**").

33.     With respect to transfers of Claims and Interests filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package (defined below) and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot (defined below) on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

34.     The Debtors believe that the Voting Record Date is appropriate, as it facilitates the determination of which creditors and equity holders are entitled to vote on the Plan or, in the case of non-voting creditors and equity holders in Non-Voting Classes, to receive the Notice of Non-Voting Status.  Accordingly, the Debtors request the Court approve such date.

**Temporary Allowance/Disallowance of Claims and Interests**

35.     Pursuant to section 1126(a) of the Bankruptcy Code, the holder of an "allowed" claim or interest may accept or reject a chapter 11 plan.  A class of claims accepts a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors that voted.  11 U.S.C.

§ 1126(c). A class of interests accepts a plan if such plan has been accepted by holders that hold at least two-thirds in amount of the allowed interests of such class held by holders that voted. 11 U.S.C. § 1126(d). Bankruptcy Rule 3018(a) provides that the Court may temporarily allow a claim or interest in an amount that the Court deems appropriate for the purpose of such claim or interest holder accepting or rejecting a plan.

**Establishing Claims or Interest Amounts for Voting Purposes**

36. **Class 4 (FLTL Secured Claims)**. The amount of each FLTL Secured Claim, for voting purposes only, will be established by reference to the list of participant lenders to the FLTL Credit Agreement and those participant lenders' corresponding FLTL Secured Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the FLTL Administrative Agent, which shall be provided by the FLTL Administrative Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

37. **Class 5 (SLTL Claims)**. The amount of each SLTL Claim, for voting purposes only, will be established by reference to the list of participant lenders to the SLTL Credit Agreement and those participant lenders' corresponding SLTL Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the SLTL Administrative Agent, which shall be provided by the SLTL Administrative Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

38. **Class 6 (General Unsecured Claims)**. The amount of each General Unsecured Claim, for voting purposes only, shall be established pursuant to the following hierarchy:

> (a) If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Bankruptcy Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Bankruptcy Court;

(b)     If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c)     If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date, *provided* that, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed, then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00; and

(d)     If neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules, *provided* that, if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

39.     The Debtors further request that, if the Debtors have filed an objection to, or a request for estimation of, a Claim on or before February 26, 2021, such Claim shall be temporarily disallowed for voting purposes, except as ordered by the Bankruptcy Court before the Voting Deadline; *provided*, *however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim, then such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by this Bankruptcy Court before, or concurrent with, entry of an order confirming the Plan.

40.     The Debtors believe that the foregoing proposed procedures provide for a fair and equitable voting process. If any creditor seeks to challenge the Allowed amount of its Claim for voting purposes, the Debtors propose that such creditor must file with the Bankruptcy Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount. The Debtors request that the Court, pursuant to section 105(a) of the Bankruptcy Code, (i) fix February 26, 2021 (the "**Rule 3018(a) Motion Deadline**"), as the deadline for the filing and serving of motions pursuant to Bankruptcy Rule 3018(a)

requesting temporary allowance of a movant's Claim for purposes of voting (the "**Rule 3018(a)**

**Motion(s)**") and (ii) require that such Rule 3018(a) Motions be filed with the Court so as to be

**actually received** not later than 4:00 p.m. (prevailing Central Time) on the Rule 3018(a) Motion

Deadline. The Debtors propose that the Court consider only those Rule 3018(a) Motions that have

been timely filed in accordance with the provisions of this paragraph. The Debtors further propose

that upon entry of an order of the Court granting a Rule 3018(a) Motion, such creditor's Ballot (as

defined below) be counted in accordance with the above designated guidelines, unless temporarily

Allowed in a different amount by an order of the Bankruptcy Court entered before, or concurrent

with, entry of an order confirming the Plan. Absent an order of the Court granting a Rule 3018(a)

Motion, the Debtors propose that such creditor's Ballot be counted in accordance with the

hierarchy set forth in paragraph 38.

**Approval of Solicitation Packages and Procedures for Distribution Thereof**

41.     Bankruptcy Rule 3017(d) lists the materials that must be provided to holders

of claims or interests for the purpose of soliciting votes on a chapter 11 plan and providing

adequate notice of the hearing to consider confirmation thereof. Specifically, Bankruptcy Rule

3017(d) provides, in relevant part, that:

> [u]pon approval of a disclosure statement—except to the extent that
> the court orders otherwise with respect to one or more unimpaired
> classes of creditors or equity security holders—the debtor in
> possession, trustee, proponent of the plan, or clerk as the court
> orders shall mail to all creditors and equity security holders, and in
> a chapter 11 reorganization case shall transmit to the United States
> trustee:
>
> (a)     the plan or a court-approved summary of the plan;
>
> (b)     the disclosure statement approved by the court;
>
> (c)     notice of the time within which acceptances and rejections of the plan may
> be filed; and

(d)     any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

42.     In accordance with the foregoing, the Debtors propose to mail, or cause to be mailed, solicitation packages (the "**Solicitation Packages**") containing the information described below as soon as practicable after entry of the Proposed Order approving the Disclosure Statement, but not later than four (4) Business Days after the date of entry of such order (the "**Solicitation Date**"), to the U.S. Trustee and holders of Claims and Interests in the Voting Classes, as required by Bankruptcy Rule 3017(d).

43.     In accordance with Bankruptcy Rule 3017(d), the Solicitation Packages shall contain copies of:

(a)     the Proposed Order, as entered by the Court and without attachments;

(b)     the Notice of (I) Approval of Disclosure Statement; (II) Establishment of Voting Record Date, (III) Hearing on Confirmation of the Plan, (IV) Procedures for Objecting to the Confirmation of the Plan, and (V) Procedures and Deadline for Voting on the Plan (the "**Confirmation Hearing Notice**");

(c)     a USB flash drive containing the Disclosure Statement, which shall include the Plan as an attachment (except as provided below); and

(d)     a Ballot customized for such holder and conforming to Official Bankruptcy Form No. B 314, in the form described below, and a postage-prepaid return envelope.[4]

44.     If the recipient is holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Plan, then they will be served the Confirmation Hearing Notice and the Notice of Non-Voting Status (as defined and described below) only.

---

[4] Official Bankruptcy Form No. B 314 can be found at http://www.uscourts.gov/forms/bankruptcy-forms, the official website for the United States Bankruptcy Courts.

45.     To reduce costs and the impact on the environment, the Debtors propose to send the Disclosure Statement and Plan in electronic format (on a USB flash drive) instead of printed hard copies.  Moreover, the Plan and Disclosure Statement will be available at no charge via the internet at https://cases.primeclerk.com/FieldwoodEnergy/.  However, if service by USB flash drive imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (e.g., the party does not own or have access to a computer or the Internet), the Debtors propose that such creditor may request a paper copy of the Plan and the Disclosure Statement by contacting Prime Clerk through (i) email at fieldwoodballots@primeclerk.com or (ii) via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international). Upon receipt of such request, the Debtors will provide such party with a paper copy of the Plan and the Disclosure Statement at no cost to the party within five (5) business days thereafter.

46.     The Debtors will not mail Solicitation Packages to creditors who have Claims or Interests that have already been paid in full; *provided, however*, that if a creditor is entitled to receive a Solicitation Package for any other reason than stated above, then the Debtors will send such creditor a Solicitation Package in accordance with the procedures set forth herein.

47.     The Debtors anticipate that the United States Postal Service may return some Solicitation Packages as undeliverable.  The Debtors submit that it is costly and wasteful to mail Solicitation Packages to the same addresses from which mail previously was returned as undeliverable.  Therefore, to the extent printed hard copies are requested, the Debtors request the Court waive the strict notice rule and excuse the Debtors from mailing Solicitation Packages to addresses from which the Debtors received mailings returned as undeliverable.  Furthermore, for purposes of serving the Solicitation packages, the Debtors are authorized to rely on the address information for Voting and Non-Voting Classes as compiled, updated, and maintained by the

Voting Agent as of the Voting Record Date. The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable solicitations materials (including ballots).

48.     Although the Debtors have made, and will make, every effort to ensure that the Solicitation Packages as described herein and as approved by the Court are in final form, the Debtors nonetheless request authority to make non-substantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Court, including ministerial changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before mailing.

49.     The Debtors submit that they have shown good cause for implementing the proposed notice and service procedures and that the proposed Solicitation Packages comply with Bankruptcy Rule 3017(d). Accordingly, the Debtors request the Court's approval thereof.

**Approval of Notice of Non-Voting Status**

50.     Bankruptcy Rule 3017(d) permits a court to order that the Plan and Disclosure Statement need not be mailed to unimpaired classes. In lieu thereof, a court may order that "notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense . . . [and] notice of the time fixed for filing objections to and the hearing on confirmation" be mailed to the members of such classes. Fed. R. Bankr. P. 3017(d).

51.     As discussed above, Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (FLFO Claims) are Unimpaired and presumed to accept the Plan and,

therefore, holders in these classes are not entitled to vote on the Plan. Accordingly, the Debtors propose to mail to holders of Claims in Class 1, Class 2, and Class 3 in lieu of a Solicitation Package, the Confirmation Hearing Notice and a notice of non-voting status and opt out form attached thereto, substantially in the form attached to the Proposed Order as **Exhibit 5** (the "**Notice of Non-Voting Status**").

52.     Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) are Impaired and holders in such classes are expected to receive no recovery under the Plan and, therefore, holders of Claims and Interests in such Classes are deemed to have rejected the Plan and not entitled to vote on the Plan. Accordingly, the Debtors propose to mail to holders of Claims and Interests in Class 8 and Class 10 in lieu of a Solicitation Package, the Confirmation Hearing Notice and the Notice of Non-Voting Status.

53.     With respect to Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests), the Debtors request a waiver of any requirement to serve a Confirmation Hearing Notice, Notice of Non-Voting Status or any other type of notice in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates and are Unimpaired by the Plan.

54.     The Notice of Non-Voting Status provides (i) notice of the Court's approval of the Disclosure Statement, (ii) notice of the filing of the Plan and Disclosure Statement, (iii) notice of the holders' non-voting status, and (iv) information about how to obtain copies of the Disclosure Statement and Plan. In addition, the Notice of Non-Voting Status contains the full text of the release, exculpation, and injunction provisions set forth in Section 10 of the Plan and advises such holders in Non-Voting Classes that they will be bound by the release provision in Section 10.7 of the Plan unless they timely and properly opt out. The Notice of Non-Voting Status also

includes a form to complete and return if the party elects to opt out of such release provision. The Debtors submit that the Notice of Non-Voting Status satisfies the requirements of paragraph 36 of the Complex Case Procedures regarding consensual releases against non-debtor parties with respect to the holders of Claims or Interests in the Non-Voting Classes.

55. The Debtors submit the above-described notices and procedures with respect to Non-Voting Classes satisfy the requirements of Bankruptcy Rule 3017(d) and the Complex Case Procedures and, therefore, respectfully request the Court approve them.

**Approval of Forms of Ballots**

56. Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot, which substantially conforms to Official Bankruptcy Form No. B 314, to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d). The Debtors propose to distribute to holders of Claims and Interests in the Voting Classes that are otherwise eligible to vote (as set forth herein), ballots substantially in the forms attached to the Proposed Order as **Exhibit 2, 3, and 4** (the "**Ballots**"), as applicable, which are incorporated herein by reference. Although the Ballots are based on Official Bankruptcy Form No. B 314, they have been modified to address the specific circumstances of these chapter 11 cases and to include certain additional information that the Debtors believe is relevant and appropriate for the Voting Classes.

57. All holders of Claims and Interests in the Voting Classes will receive a Ballot that includes an election regarding certain non-debtor release provisions in the Plan (the "**Non-Debtor Release Provisions**"). Only those holders of Claims and Interests in Voting Classes who vote to reject the Plan may elect to opt out of certain release provisions in Section 10.7 of the Plan.

58. The Debtors propose to distribute Ballots to each of the holders of FLTL Secured Claims in Class 4, SLTL Claims in Class 5, and each of the holders of General Unsecured Claims in Class 6.

59. In addition to accepting a hard copy Ballot via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Ballots from holders in Class 4 (FLTL Secured Claims), Class 5 (SLTL Claims), and Class 6 (General Unsecured Claims) via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website maintained by Prime Clerk ("**E-Ballot**"). Parties entitled to vote may cast an electronic Ballot and electronically sign and submit the Ballot instantly by utilizing E-Ballot (which allows a holder to submit an electronic signature). If applicable, instructions for electronic, online transmission of Ballots will be set forth on the forms of Ballots. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted through E-Ballot in this manner and the voting party's electronic signature will be deemed to be immediately legally valid and effective. Ballots submitted by electronic mail, facsimile, or electronic means other than the online balloting portal will not be accepted.

**The Voting Deadline**

60. Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of [a] disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject [a] plan . . . ." Fed. R. Bankr. P. 3017(c). The Debtors anticipate mailing substantially all of the Solicitation Packages by **no later than four (4) Business Days** after entry of the Proposed Order (the "**Solicitation Deadline**"). Based on such schedule, the Debtors propose that, to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Voting Agent: (i) by first-class mail in the return envelope

provided with each Ballot; (ii) by overnight courier; (iii) by hand delivery, or (iv) via E-Ballot so that (in each instance) it is **actually received** by the Voting Agent no later than **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** (the "**Voting Deadline**"). Holders of Claims that choose to mail their ballots shall mail them to the Voting Agent at the following address, as applicable:

| Prime Clerk Addresses for Receipt of Ballots |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

      61. The Debtors submit that the proposed **twenty-eight (28) day** solicitation period is a sufficient period within which creditors can make an informed decision whether to accept or reject the Plan.

**Tabulation Procedures**

      62. The Debtors request that the following procedures apply to tabulating Ballots cast by Holders in the Voting Classes:

    (a)     Whenever a holder of Claims casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent and thus, supersede any prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked absent further order of the Court.

    (b)     Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

    (c)     Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)     A holder of Claims shall be deemed to have voted the full amount of its Claim or Interest in each class and shall not be entitled to split its vote within a particular class or between more than one Debtor.  Any such holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e)     A holder of Claims against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(f)     Whenever a holder of Claims casts multiple Ballots received by the Voting Agent on the same day but which are voted inconsistently, such Ballots will not be counted.

(g)     A holder of claims in more than one Class must use separate Ballots for each class of claims.

(h)     The following Ballots shall not be counted:

    i.     Any Ballot received after the Voting Deadline, unless the Debtors shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

    ii.     Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

    iii.     Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

    iv.     Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim in a Voting Class;

    v.     Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

    vi.     Any Ballot which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

    vii.     Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

(i)     The Debtors, unless subject to contrary order of the Court, may waive any defects or irregularities as to any particular irregular ballot at any time, either before or after the close of voting.

63.     To assist in the solicitation process, the Debtors request that the Court grant

the Voting Agent the authority to contact parties who submit incomplete or otherwise deficient

Ballots to make a reasonable effort to cure such deficiencies. The Debtors request that the Court give authorization to the Debtors and/or their Voting Agent, as applicable, to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots, which determination will be final and binding.

64.     The Debtors request that the Court grant authority to the Debtors to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

65.     The Debtors further request from the Court authorization to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their holders of Claims. The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

### Confirmation

**The Confirmation Hearing**

66.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation" of a chapter 11 plan. Fed. R. Bankr. P. 3017(c). Pursuant to Bankruptcy Rule 2002(b), creditors must receive at least twenty-eight (28) days' notice of a confirmation hearing. In accordance with these rules, and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that a hearing on confirmation of the Plan (the "**Confirmation Hearing**") be scheduled for March 17, 2021, or on such date and time as is convenient to the Court. The Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court. The Debtors request that the Court find that the

proposed date for the Confirmation Hearing is in compliance with the Bankruptcy Rules and the Local Rules, and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

**Objection Procedures**

67.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1). Bankruptcy Rule 2002(b) provides that parties must receive at least twenty-eight (28) days' notice of the deadline for filing objections to confirmation.  The Debtors request that the Court set March 9, 2021, at 4:00 p.m. (prevailing Central Time), as the deadline to file objections to confirmation of the Plan (the "**Plan Objection Deadline**").  The Plan Objection Deadline will provide holders of Claims or Interests with sufficient notice of the deadline for filing objections to confirmation of the Plan, while still affording the Debtors and other parties time to file a responsive brief and, if possible, resolve consensually any objections received.

68.     The Debtors request that objections and responses, if any, to confirmation of the Plan:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; and (iv) provide the basis for the objection and the specific grounds thereof.

69.     The Debtors further request that registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline.  All other parties in interest must file their objections and responses in writing, together with proof of service thereof, with the United States Bankruptcy Court Clerk's Office, Bob Casey United States Courthouse, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, on or before the Plan Objection Deadline.

70. Pursuant to Bankruptcy Rule 3020(b), "if no objection is timely filed, the [C]ourt may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." Fed. R. Bankr. P. 3020(b).

71. The Debtors further request that they be authorized to file a brief in support of confirmation of the Plan and in reply to any objections to the Plan on or before March 15, 2021.

72. The Debtors respectfully request that the Court approve the procedures for filing objections to the Plan and replies thereto and find that such procedures comply with Bankruptcy Rules 2002 and 3020.

**Plan Supplement**

73. Pursuant to the Plan, the Debtors intend to file a "Plan Supplement" consisting of a supplemental appendix to the Plan which shall contain, but not be limited to, (a) the Amended Organizational Documents (if any), (b) information regarding the sole manager and independent director to be appointed at FWE I to the extent known and determined and other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code, (c) a schedule of retained Causes of Action, (d) the Schedule of Assumed Contracts, (e) the Plan Administrator Agreement; (f) the Credit Bid Purchase Agreement; (g) the NewCo Organizational Documents; (h) the Apache Definitive Documents; (i) the First Lien Exit Facility Agreement; (j) the Second Lien Exit Facility Agreement; (k) the New Intercreditor Agreement, (l) the New Money Warrant Agreements; (m) the Management Incentive Plan; and (n) the Restructuring Steps Memorandum; *provided*, *however*, that the Debtors shall have the right to amend documents contained in, and exhibits thereto, the Plan Supplement in accordance with the terms of this Plan and the Restructuring Support Agreement (including the consent rights set forth therein).

74. The Debtors request that the Court authorize Debtors to file the Plan Supplement with the Bankruptcy Court no later than seven (7) calendar days before the Voting Deadline (the "**Plan Supplement Filing Deadline**").

75. The Debtors submit that the Plan Supplement Filing Deadline is prudent and attainable under the circumstances of these chapter 11 cases. Thus, the Debtors respectfully request that the Court approve the Plan Supplement Filing Deadline.

**Confirmation Hearing Notice**

76. Pursuant to Bankruptcy Rule 3017(d), notice of a plan confirmation objection deadline and hearing must be provided to all creditors and equity security holders in accordance with Bankruptcy Rule 2002. Bankruptcy Rules 2002 requires notice to, among others, all creditors, indenture trustees, and equity security holders of the time set for filing objections to, and the hearing to consider confirmation of a plan. In addition, Bankruptcy Rule 2002(c)(3) provides that if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan confirmation notice must include, in conspicuous language, a statement that the plan proposes an injunction, a brief description of the nature of the injunction, and identification of the entities that would be subject to such injunction. Fed. R. Bankr. P. 3020(b).

77. In accordance with the foregoing, in addition to including the notice in the Solicitation Packages, by **no later than four (4) business days** after entry of the Proposed Order, the Debtors propose to provide a copy of the Confirmation Hearing Notice setting forth (i) the Voting Deadline, (ii) the Plan Objection Deadline and procedures for filing objections and responses to confirmation of the Plan, (iii) the time, date, and place for the Confirmation Hearing, and (iv) information about the Plan injunctions in compliance with Bankruptcy Rule 2002(c)(3) with service provided by electronic and/or first class mail on the Notice Parties.

78.     The Debtors further request that this Court authorize the Debtors, in their discretion, to give supplemental publication notice of the Confirmation Hearing in one or more local or foreign newspapers, trade journals, or similar publications, as soon as reasonably practicable following entry of the Proposed Order.

79.     The Debtors submit that the foregoing notice procedures comply with all notice requirements under Bankruptcy Rules 3017(d) and 2002.  Accordingly, the Debtors request that the Court find that such notice is due and proper and no further notice is necessary.

**Procedures with Respect to the Assumption of Executory Contracts and Unexpired Leases**

80.     Section 8.1 of the Plan provides that each of the Debtors' executory contracts and unexpired leases will be deemed rejected as of the Effective Date, unless such agreement: (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, (iv) is identified in Sections 8.4 or 8.5 of the Plan; (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement which Schedule of Assumed Contracts will identify executory contracts and unexpired leases for assumption and assignment to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement.  Section 8.1 of the Plan further provides that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Assumed Contracts, to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall

be extended to 5:00 p.m. (prevailing Central Time) seven (7) days immediately before the rescheduled or continued Confirmation Hearing; *provided*, *further* that subject to the terms of the Credit Bid Purchase Agreement, the Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, the Credit Bid Purchase Agreement, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

81.     Pursuant to Section 8.2 of the Plan, the Debtors shall serve a Cure Notice on parties to executory contracts and unexpired leases no later than ten (10) days before the Confirmation Hearing. Any counterparty to an executory contract or unexpired lease shall have until the Plan Objection Deadline to object to the proposed assumption, assumption and assignment, or related Cure Amount listed on the Cure Notice. Further, the Debtors intend to serve the Confirmation Hearing Notice on all parties to executory contracts and unexpired leases, reflecting the Debtors' intention to assume (or assume and assign to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement) the executory contracts or unexpired leases in connection with the Plan or the Credit Bid Purchase Agreement.

82.     Section 8.2 of the Plan also provides that an Assumption Dispute (as defined in the Plan) pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount) shall be heard by the Court before such assumption being effective; *provided* that, subject to the terms of the Credit Bid Purchase Agreement, the Debtors

or the Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any other party or any action, order, or approval of the Court. To the extent an Assumption Dispute relates solely to the applicable Cure Amount, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease before the resolution of such Assumption Dispute; *provided*, that the Post-Effective Date Debtors or Credit Bid Purchaser, as applicable, shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party. The Debtors or Post-Effective Date Debtors, as applicable, subject to the terms of the Credit Bid Purchase Agreement, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

83.     The Debtors respectfully submit that the notice of the Debtors' assumption of executory contracts and unexpired leases is appropriate under the circumstances.

### Credit Bid Transaction

84.     As detailed in the Disclosure Statement, pursuant to the Plan, the Debtors will consummate the sale of certain of their assets, including select Deepwater Assets and Shelf Assets, to the Credit Bid Purchaser for aggregate consideration consisting of (i) a credit bid of the Allowed FLTL Secured Claims in the amount of $426 million, which amount may be increased up to the FLTL Claims Allowed Amount, (ii) cash in the amount of approximately $224 million, and (iii) the assumption of certain liabilities set forth in the Credit Bid Purchase Agreement (the "**Credit Bid Transaction**").

85.     The parties are currently working to finalize that certain Purchase and Sale Agreement, by and between FWE, the other seller parties, and the Credit Bid Purchaser, together with any and all related agreements, exhibits, and schedules in connection therewith, as amended,

supplemented or otherwise modified from time to time (the "**Credit Bid Purchase Agreement**"), a copy of which will be filed in a supplement to the Disclosure Statement and included in the Plan Supplement.

86.     On the Effective Date of the Plan, pursuant to sections 105, 363, 365, 1123, 1129, 1141(b) and 1141(c) of the Bankruptcy Code, in accordance with the Credit Bid Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Credit Bid Purchase Agreement, (i) all Credit Bid Acquired Interests will be transferred to, and the Credit Bid Acquired Interests owned by the Debtors will vest free and clear of all Liens[5] (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), Claims, charges, Interests, or other encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights, and (ii) all Credit Bid Assumed Liabilities, will be assumed by the Credit Bid Purchaser or such other entity designated by the Credit Bid Purchaser solely in accordance with the terms of the Credit Bid Purchase Agreement.  Moreover, the vast majority of the Debtors' employees and management team are expected to be employed by Credit Bid Purchaser.

**Procedures for Objections to the Assignment and Transfer of Property of the Estate**

87.     The Debtors intend to assign or transfer to the Credit Bid Purchaser, pursuant to the Credit Bid Purchase Agreement and the Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests,

---

[5] Provided that the Retained Properties (as defined in the Apache Implementation Agreement) shall be transferred in accordance with the Decommissioning Agreement.

and encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights (in each case, as defined below) (other than the Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)).  If any party objects to such assignment or transfer, including any objection based on (a) any alleged right of consent, notice, and any similar interests, if any, that are applicable to the sale of the Credit Bid Acquired Interests, or the assumption of the Credit Bid Assumed Liabilities, in connection with the Credit Bid Purchase Agreement ("**Credit Bid Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the consummation of the transactions contemplated by the Credit Bid Purchase Agreement, or any other Preferential Right (as defined in the Credit Bid Purchase Agreement) ("**Credit Bid Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Credit Bid Consent Rights, a "**Credit Bid Consent Rights Objection**", and if in respect of Credit Bid Preferential Purchase Rights, a "**Credit Bid Preferential Rights Objection**"), no later than the Plan Objection Deadline or any objection deadline set forth in a sale motion following a Toggle Date.

88.    Any person failing to timely file a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement or the related provisions of the

Plan, free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), and from asserting any Credit Bid Consent Right and/or Credit Bid Preferential Purchase Right with respect to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), regardless of whether such consent must be in writing in connection with the assignment of any of the Credit Bid Acquired Interests or assumption of any of the Credit Bid Assumed Liabilities.

89.     If any person files a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief or by any reply deadline set forth in a sale motion.  For the avoidance of doubt, the Debtors may include any responses to any Credit Bid Consent Rights Objections or Credit Bid Preferential Rights Objections in the Confirmation Brief. Upon the filing of such response to such Credit Bid Consent Rights Objection or Credit Bid

Preferential Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Credit Bid Consent Rights Objections and Credit Bid Preferential Rights Objections, and all such rights of the Debtors are expressly preserved.

90. The Debtors will cause to be vested in FWE I and FWE III pursuant to the Plan of Merger and Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights (in each case, as defined below). Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on (a) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the vesting of the assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Plan of Merger Consent Rights, a "**Merger Vesting Objection**", and if in respect of

Plan of Merger Preferential Purchase Rights, a "**Merger Rights Objection**"), no later than the Plan Objection Deadline.

91.     Any person failing to timely file a Merger Vesting Objection or Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the Plan of Merger or the related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights and from asserting any Plan of Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the Plan of Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the Plan of Merger.

92.     If any person files a Merger Vesting Objection or Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any rights asserted by such person by filing a response to the Merger Vesting Objection or Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief.  For the avoidance of doubt, the Debtors may include any responses to any Merger Vesting Objections or Merger Rights Objections in the Confirmation Brief.  Upon the filing of such response to such Merger Vesting Objections or Merger Rights Objections, any rights asserted will be deemed to be

disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Merger Rights Objections and Merger Vesting Objections, and all such rights of the Debtors are expressly preserved.

93.      The Debtors respectfully submit that the notice of the Debtors' assumption of executory contracts and unexpired leases is appropriate under the circumstances.

### Approval of Bid Deadline and
### Procedures for Submission of Higher or Better Bids

94.      The Debtors believe that the Credit Bid Transaction is the best and highest available bid for the Debtors' assets. Before the Petition Date, the Debtors commenced a robust sale and marketing process (the "**M&A Process**") for the Company's deepwater assets through its investment banker, Houlihan Lokey Capital, Inc. ("**Houlihan**"). Houlihan, which specializes in advising companies in the oil & gas industry with respect to traditional mergers and acquisitions, asset level acquisitions and divestitures, financial restructuring and recapitalization transactions, conducted the M&A Process from June 30, 2020 through September 3, 2020. Houlihan marketed the deepwater assets to 47 parties identified as potential third party buyers. The outreach covered a broad spectrum of national and international strategic buyers and financial sponsors who were believed to support the proposed transaction. Following the Petition Date, the Debtors continued the marketing process, which ultimately resulted in 18 parties executing confidentiality agreements and obtaining access to a virtual data room ("**VDR**"), 15 management presentations, and receipt of approximately 12 written bid letters and other indications of interest. In addition, the Debtors' advisors provided the Creditors' Committee's advisors with access to all of the information provided to potential buyers, including access to the VDR. To date, no actionable bids have been received.

95.     Concurrently with the M&A Process, the Debtors continued to engage with the Consenting Creditors regarding the terms of a comprehensive restructuring, which ultimately resulted in the Plan and each of the restructuring transactions contemplated therein. The Credit Bid Transaction provides significant benefits to the Debtors and their estates by, among others, (i) maximizing recoveries to the Debtors' stakeholders, (ii) preserving the going concern value of the Debtors' select Deepwater Assets and Shelf Assets and the jobs of over 1,000 employees and contractors, and (iii) ensuring that all P&A Obligations are allocated to appropriate parties for performance in a responsible and safe manner. Accordingly, the Debtors believe that the Credit Bid Transaction is value maximizing and represents the highest and best available bid for the Debtors' assets.

96.     The Credit Bid Transaction, however, currently remains subject to higher or better offers from any qualified third parties. To help facilitate a smooth path towards consummation of the Plan and the Credit Bid Transaction, the Debtors and the Ad Hoc Group of Secured Lenders seek approval of a proposed outside date by which any third party must submit a qualified bid to acquire either (i) the Credit Bid Acquired Interests (as defined in the Credit Bid Purchase Agreement) or (ii) substantially all of the Debtors' assets in accordance with the requirements set forth below (each, a "**Qualified Bid**" and such bidder a "**Qualified Bidder**") by February 26, 2021 (the "**Bid Deadline**"). Any third party that seeks to submit a Qualified Bid by the Qualified Bid Deadline and has demonstrated that it has the ability to submit a Qualified Bid may obtain access to the VDR after executing a confidentiality agreement on customary terms that are reasonable to the Debtors. The failure to submit any Qualified Bids by the Bid Deadline confirms that the Debtors are currently pursuing the best and highest offer available for the Debtors, their estates, and their creditors.

97.     For a bid to constitute a Qualified Bid, it must be delivered to (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Matt Barr (matt.barr@weil.com) and Jessica Liou (jessica.liou@weil.com), and (ii) financial advisors to the Debtors, Houlihan Lokey, 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: J.P. Hanson (jhanson@hl.com) and Daniel Crowley (dcrowley@hl.com) no later than the Bid Deadline and must, at a minimum:

(a)     include a purchase price that exceeds the value of the Credit Bid Amount (as defined in the Plan) plus any cash consideration to be provided by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement (the "**Reserve Price**"), and a detailed analysis of the value of any non-cash component of such bid, if any, and documentation supporting such value; specify the form of consideration in (A) (i) all cash or (ii) non-cash components, and (B) cash consideration in excess of the Reserve Price;

(b)     specify (i) the equity interests or assets, in whole or in part, as applicable, sought to be acquired as well as (ii) which assets, if any, are not sought to be acquired;

(c)     include an unconditional commitment that such bid is binding, not subject to further financing and diligence, and irrevocable until such bid is not deemed the successful bid or back-up bid;

(d)     proof of financial ability and other information demonstrating the bidder's ability to consummate the applicable sale transaction and the ability to provide adequate assurance of future performance under any proposed assumed contracts and leases, each as determined by the Debtors in their sole judgment;

(e)     identify any proposed contracts to be assumed and assigned;

(f)     include evidence reflecting the bidder's (i) compliance with certain antitrust laws, (ii) ability to obtain regulatory and governmental approvals, and (iii) ability to consummate the sale transaction within a reasonable timeframe, each as determined by the Debtors in their sole judgment;

(g)     (A) disclose the identity of the bidder and each participant in its bid, and (B) (i) demonstrate corporate (or comparable organizational) authorization to submit the bid and (ii) close the proposed sale transaction;

(h)     specify (i) whether the bidder seeks to hire some or all of the Debtors' employees and (ii) indicate the intended treatment of various employee obligations;

(i)     expressly state that the bid does not entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment;

(j)     disclose any connections to (i) the Debtors, (ii) any other known bidders submitting bids pursuant to this process, and/or (iii) any officer or director of the Debtors;

(k)     represent and warrant that the bidder (i) relied solely upon its own independent review, investigation, and/or inspection in making its bid, (ii) has not engaged in collusion with respect to its bid, and (iii) provided correct and truthful proof of financial ability to consummate any applicable sale transaction in a timely manner;

(l)     include (i) a deposit, unless otherwise agreed by the Debtors and bidder, to be deposited with an escrow agent pursuant to an escrow agreement, (ii) the contact information of the bidder contact person and any other specified persons, (iii) a covenant to cooperate with the Debtors and provide information for antitrust legal analysis; and

(m)    a statement as to whether the bid is consistent with the terms of restructuring contemplated in the Restructuring Term Sheet and the Apache Term Sheet, and, if not, a detailed explanation of any inconsistency and the reason(s) therefor.

98.    Upon entry of the Proposed Order, the Debtors will serve on all parties that were previously solicited by the Debtors in connection with their sale process and all other parties that have expressed any interest in submitting a bid to acquire all or some of the Debtors' assets (the "**Sale Notice Parties**") a notice describing the process to submit bids for either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets (the "**Notice of Procedures to Submit Bids**"), substantially in the form attached hereto as **Exhibit C**.  Additionally, as soon as practicable after entry of the Proposed Order, the Debtors will publish a notice, substantially in the form of the Notice of Procedures to Submit Bids, in one or more local or foreign newspapers, trade journals, or similar publications.  The publication notice will provide notice to any interested

parties that seek to bid for either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets whose identities are unknown to the Debtors.

99.    If the Debtors do not receive any Qualified Bids before the Bid Deadline, the Debtors will continue to prosecute the Plan and seek approval of the Credit Bid Transaction in connection therewith and the Debtors will file a notice thereof with the Court no later than one (1) Business Day after the Bid Deadline.

100.    If the Debtors receive Qualified Bid before the Bid Deadline, the Debtors shall inform the Ad Hoc Group of Secured Lenders within one (1) Business Day of receipt of such Qualified Bid.  The Debtors shall also, no later than three (3) Business Days after the Bid Deadline, file with the Court a notice of receipt of such Qualified Bid(s) and the Debtors' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Debtors determine holding an auction will maximize value to the Debtors' estates.  For the avoidance of doubt, the Credit Bid Purchaser (i) shall be deemed a Qualified Bidder that is allowed to participate in any bidding and auction process held by the Debtors and (ii) may increase the Credit Bid Amount up to the FLTL Allowed Claims Amount.

101.    Based on the foregoing, and in light of the robust sale and marketing process conducted by the Debtors, the Debtors submit that the foregoing bidding procedures are fair and reasonable under the circumstances.

## Notice

102.    Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

103.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the

relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: January 1, 2021
       Houston, Texas

                                Respectfully submitted,

                                */s/ Alfredo R. Pérez*
                                WEIL, GOTSHAL & MANGES LLP
                                Alfredo R. Pérez (15776275)
                                700 Louisiana Street, Suite 1700
                                Houston, Texas 77002
                                Telephone: (713) 546-5000
                                Facsimile: (713) 224-9511
                                Email: Alfredo.Perez@weil.com

                                -and-

                                WEIL, GOTSHAL & MANGES LLP
                                Matthew S. Barr (admitted *pro hac vice*)
                                Jessica Liou (admitted *pro hac vice*)
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007
                                Email: Matt.Barr@weil.com
                                           Jessica.Liou@weil.com

                                *Attorneys for Debtors*
                                *and Debtors in Possession*

**Certificate of Service**

    I hereby certify that, on January 1, 2021, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|                              |   |                          |
|------------------------------|---|--------------------------|
| In re:                       | § | Chapter 11               |
|                              | § |                          |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | Case No. 20-33948 (MI)   |
|                              | § |                          |
| Debtors.[1]                  | § | (Jointly Administered)   |
|                              | § |                          |

**ORDER (I) APPROVING DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF DISCLOSURE STATEMENT HEARING; (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (III) SCHEDULING CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN; (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING PROCEDURES FOR OBJECTIONS TO THE ASSIGNMENT AND TRANSFER OF PROPERTY OF THE ESTATE; (VII) APPROVING BID SUBMISSION DEADLINE AND PROCEDURES FOR SUBMISSION OF HIGHER OR BETTER BIDS; AND (VIII) GRANTING RELATED RELIEF**

Upon the motion, dated January 1, 2021 (the "**Motion**")[2] of Fieldwood Energy LLC and

its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**Debtors**"), for an order pursuant to sections 105, 365, 1125, 1126, 1128, and

1145 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3001, 3003,

3016, 3017, 3018, 3020, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), Rules 2002-1 and 3016-1 of the Local Bankruptcy Rules of the United

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of August 7, 2020, the "**Complex Chapter 11 Procedures**"), the Debtors request entry of an order:

i.     approving the form and manner of notice and hearing to consider the Disclosure Statement;

ii.    approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

iii.   scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan;

iv.   establishing February 3, 2021 as the record date for the purpose of determining which holders of Claims and Interests are entitled to vote on the Plan and/or receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

v.    approving Solicitation Procedures with respect to the Plan, including the forms of Ballots and Notice of Non-Voting Status and tabulation procedures;

vi.   establishing the deadline (the "**Plan Objection Deadline**") to object to confirmation of the Plan;

vii.  approving the procedures for assumption of executory contracts and unexpired leases;

viii. approving procedures for objections to the assignment and transfer of property of the estate;

ix.   approving the Bid Deadline and procedures for submission of higher or better bids; and

x.    granting related relief.

all as more fully set forth in the motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) (A) Cole Schotz P.C., 301 Commerce Street, Suite 1700, Fort

Worth, Texas 76102 (Attn: Michael D. Warner and Benjamin L. Wallen), and (B) Stroock &
Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M.
Hansen, Frank A. Merola, Jonathan D. Canfield, and Sherry J. Millman), Counsel to the Creditors'
Committee; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900,
Dallas, TX 75201 (Attn:  William L. Wallander, Esq. and Bradley R. Foxman, Esq.), as counsel
to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell
LLP, 450 Lexington Avenue, New York, NY 10017 (Attn:  Damian S. Schaible, Esq. and Natasha
Tsiouris, Esq.) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX
77010 (Attn: Charles A. Beckham Jr., Esq. and Martha Wyrick, Esq.), as counsel to the Ad Hoc
Group of Secured Lenders; (v) Shipman & Goodwin LLP, 400 Park Ave, 5th Floor, New York,
NY 10022 (Attn:  Nathan Plotkin, Esq.), as counsel to Cantor Fitzgerald Securities, the FLTL
Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606
(Attn:  Joshua Spencer, Esq. and Anastasia Sotiropolous, Esq.), as counsel to Cortland Capital
Market Services LLC, the SLTL Administrative Agent; (vii) Hunton Andrews Kurth LLP, 600
Travis Street, Suite 4200, Houston, Texas 77002 (Attn:  Robin Russell and Catherine Diktaban),
as counsel to Apache Corporation; (viii) the Internal Revenue Service; (ix) the United States
Attorney's Office for the Southern District of Texas; (x) the Securities and Exchange Commission;
(xi) the registered and beneficial holders of Interests (as defined in the Plan) in the Debtors; (xii)
any other known holders of Claims and Interests against the Debtors, including but not limited to,
the Debtors' predecessors-in-interest, co-working interest owners, and surety providers, (xiii) the
Bureau of Ocean Energy Management, the Bureau of Safety and Environmental Enforcement, the
Department of the Interior, and the Department of Justice; and (xiv) any other party entitled to
notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"); and it appearing that

no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "**Disclosure Statement Hearing**"); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

      **IT IS FOUND AND DETERMINED THAT:**

**Notice of the Disclosure Statement Hearing and Disclosure Statement Objection Deadline**

      1.    The procedures described in the Motion pursuant to which the Debtors provided notice to parties of the time, date, and place of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline, including the form and content of the Disclosure Statement Notice, provided due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002 and 3017 and Local Rules 2002-1. No further notice is required.

      2.    The following dates and deadlines are hereby established (subject to modification as necessary) with respect to the Disclosure Statement, solicitation of the Plan, voting on the Plan, Bid Deadline, and confirmation of the Plan:

| SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Voting Record Date | **February 3, 2021** |
| Solicitation Date | **Four (4) Business Days after entry of Proposed Order** |
| Rule 3018(a) Motion Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |

| SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Request for Estimation Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Bid Deadline | **February 26, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Plan Supplement Filing Deadline | **March 2, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Voting Deadline | **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Plan Objection Deadline | **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Ballot Certification Deadline | **March 11, 2021 at 4:00 p.m. (prevailing Central Time)** |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | **March 15, 2021** |
| Confirmation Hearing | **March 17, 2021, subject to the Court's availability** |

**The Disclosure Statement**

3.     The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and complies with Bankruptcy Rule 3016(c). No further information is necessary.

**Balloting and Voting Procedures**

4.     The procedures set forth in the Motion for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

*Ballots*

5.     The ballots, substantially in the form annexed hereto as **Exhibits 2, 3, and 4** (the "**Ballots**"), including all voting instructions provided therein, are consistent with Official Bankruptcy Form No. B 314, address the particular needs of these chapter 11 cases, and provide adequate information and instructions for each party entitled to vote to accept or reject the Plan. No further information or instructions are necessary.

*Parties Entitled to Vote*

6.     Pursuant to the Plan, holders of Claims and Interests in Class 4 (FLTL Secured Claims), Class 5 (SLTL Claims), and Class 6 (General Unsecured Claims) are Impaired and are entitled to receive distributions under the Plan.  Accordingly, holders of Allowed Claims and Interests in such Classes are entitled to vote on account of such Claims and Interests (to the extent set forth herein).

*Parties Not Entitled to Vote*

7.     Pursuant to the Plan, holders of Claims and Interests in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), Class 3 (FLFO Claims), Class 7 (Intercompany Claims), and Class 9 (Intercompany Interests) are Unimpaired and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan and are not entitled to vote on account of such Claims and Interests.

8.     Pursuant to the Plan, holders of Claims in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) are impaired and will receive no recovery and, accordingly, pursuant to section 1126(g) of the Bankruptcy Code, are conclusively deemed to reject the Plan and are not entitled to vote on account of such Claims and Interests.

*Notice of Non-Voting Status*

9.      The Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 5**, complies with the Bankruptcy Code, applicable Bankruptcy Rules, and applicable Local Rules and Complex Chapter 11 Procedures and, together with the Confirmation Hearing Notice, provide adequate notice to holders of Claims in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (FLFO Claims) which will receive full recovery under the Plan, and to holders of Claims in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests), which are expected to receive no recovery under the Plan, of their non-voting status.  No further notice is necessary.

10.      With respect to Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests), no notice is required in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates and are Unimpaired by the Plan.

**Solicitation and Solicitation Procedures**

11.      The proposed distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, Voting Deadline, Plan Objection Deadline, Confirmation Hearing, and other related matters.

12.      The period proposed by the Debtors in the Motion during which the Debtors will solicit votes to accept the Plan is a reasonable and sufficient period of time for holders of Claims in the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

13.      The procedures set forth in the Motion for tabulating Ballots are fair and appropriate.

**Notice of Confirmation Hearing and Plan Objection Deadline**

14.     The procedures set forth in the Motion regarding notice to all parties of the Confirmation Hearing and the Plan Objection Deadline, including the form and content of the Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017, and 3020.  No further notice is required.

**Approval of the Bid Deadline and Procedures for Submissions of Higher or Better Bids**

15.     The procedures set forth in the Motion to submit a bid to acquire either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets, including the establishment of the Bid Deadline and the service and publication of the Notice of Procedures to Submit Bids provide due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002, 3017, and 3020.  No further notice is required.

16.     The procedures for the submission of bids are reasonable under the Bankruptcy Code and considering the circumstances of the case are based on the business judgment of the Debtors and in the best interest of the Debtors', their estates, and their creditors.

17.     The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED THAT:**

18.     The Motion is granted as set forth herein.

19.     The Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is **APPROVED**.

20.     The Disclosure Statement (including all applicable exhibits thereto) provides sufficient notice of the proposed injunction, exculpation, and release provisions contained

8

in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan, in accordance with Bankruptcy Rule 3016(c).

21.     The form and manner of service of the Disclosure Statement Notice complies with all applicable Bankruptcy Rules and Local Rules and no further notice is necessary.

22.     All objections, if any, to the Disclosure Statement, the Motion, or any of the procedures or exhibits referenced therein that have not been withdrawn or resolved as provided for in the record of the Disclosure Statement Hearing are overruled.

## Solicitation Procedures

### *Parties Entitled to Vote*

23.     Pursuant to the Plan, the following classes are Impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (the "**Voting Classes**"):

| Class | Description |
|-------|-------------|
| Class 4 | FLTL Secured Claims |
| Class 5 | SLTL Claims |
| Class 6 | General Unsecured Claims |

24.     A creditor or interest holder who holds a Claim in a Voting Class is nonetheless not entitled to vote to the extent that:

    (a)     as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

    (b)     as of the Voting Record Date, such creditor's Claim or interest holder's Interest has been disallowed, expunged, disqualified or suspended;

    (c)     such creditor has not timely filed a proof of claim in accordance with the Bar Date Order as of the Voting Record Date and the Debtors have not

scheduled such creditor's Claim or otherwise scheduled such creditor's Claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(d)     such creditor's Claim is subject to an objection or request for estimation as of the Voting Record Date, subject to the procedures set forth below.

### *Parties Not Entitled to Vote*

25.     Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (FLFO Claims) receive full recovery of their priority or secured Claims under the Plan.  Holders of Claims and Interests in Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) will have their Claims and Interests adjusted, reinstated, cancelled, or discharged in the Debtors' or Post-Effective Debtors' discretion (together with Classes 1, 2, 3, 7, and 9, the "**Unimpaired Classes**").  Pursuant to the Plan, the Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

26.     Holders of Claims and Interests in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) will receive no recovery under the Plan.  Such holders are deemed to reject the Plan and are not entitled to vote on the Plan.

27.     Holders of Claims or Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| Class 1 | Other Secured Claims | Unimpaired | No (Presumed to accept) |
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| Class 3 | FLFO Claims | Unimpaired | No (Presumed to accept) |
| Class 7 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| Class 8 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| Class 9 | Intercompany Interests | Unimpaired | No (Presumed to accept) |

10

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| Class 10 | Existing Equity Interests | Impaired | No (Deemed to reject) |

### *The Voting Record Date*

28.     The Voting Record Date shall be set as February 3, 2021.  Only holders of Claims and Interests in the Voting Classes as of the Voting Record Date, who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan.

29.     With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if:  (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

### *Temporary Allowance/Disallowance of Claims*

30.     **Class 4 (FLTL Secured Claims)**.  The amount of each FLTL Secured Claim for voting purposes only is established by reference to the list of participant lenders to the FLTL Credit Agreement and those participant lenders' corresponding FLTL Secured Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the FLTL Administrative Agent, which shall be provided by the FLTL Administrative Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

31.   **Class 5 (SLTL Claims)**.   The amount of each SLTL Claim for voting purposes only is established by reference to the list of participant lenders to the SLTL Credit Agreement and those participant lenders' corresponding SLTL Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the SLTL Administrative Agent, which shall be provided by the SLTL Administrative Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

32.   **Class 6 (General Unsecured Claims)**.   The amount of each General Unsecured Claim, for voting purposes only, shall be established pursuant to the following hierarchy:

(a)   If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Bankruptcy Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Bankruptcy Court;

(b)   If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c)   If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date, *provided* that, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed, then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00; and

(d)   If neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules, *provided* that, if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

33.   The procedures set forth in the Motion regarding notice to all parties of the Confirmation Hearing and the Plan Objection Deadline, including the form and content of the

Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020.  No further notice is required.

34.     If any creditor seeks to challenge the allowance of its Claim for voting purposes, such creditor shall file with this Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court and served on the Notice Parties so as to be actually received not later than 4:00 p.m. (prevailing Central Time) February 26, 2021.

35.     Upon the filing of any such motion, such creditor's Ballot shall be counted in accordance with the above-designated guidelines, unless temporarily Allowed in a different amount by an order of this Court entered before, or concurrent with, entry of an order confirming the Plan.

### *Solicitation Packages*

36.     The Solicitation Packages are APPROVED.

37.     The Debtors shall mail the Solicitation Packages no later than four (4) business days following the date of entry of the this Order (the "**Solicitation Date**") to (i) the U.S. Trustee and (ii) holders of Claims in Voting Classes entitled to vote on the Plan as of the Voting Record Date as required by Bankruptcy Rule 3017(d).

38.     Solicitation Packages shall contain copies of:

(a)     the Confirmation Hearing Notice;

(b)     a USB flash drive containing the (i) Disclosure Statement, which shall include the Plan as an attachment (except as provided below) and (ii) the Proposed Order, as entered by the Court and without attachments; and

(c)     if the recipient is entitled to vote on the Plan, a Ballot customized for such holder in the form described below, and a postage-prepaid return envelope.

39.     If the recipient is a holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Plan (as set forth herein), then they will be served the Confirmation Hearing Notice and the Notice of Non-Voting Status as defined and described more fully in the Motion only.

40.     Any creditor for which service by USB poses a hardship may request an additional copy of the Disclosure Statement (and attachments) in paper format by contacting Prime Clerk by email to fieldwoodballots@primeclerk.com, or by telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international).  Upon receipt of a telephonic or written request, the Debtors will provide such creditor with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor within five (5) business days thereafter.  Alternatively, holders in Class 3, Class 4, Class 5, and Class 6 may submit their Ballots via Prime Clerk's online E-Balloting Portal by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" section of the website, and following the instructions set forth on the E-Ballot.

41.     The Debtors shall not be required to send Solicitation Packages to creditors who have Claims that have already been paid in full; *provided*, *however*, that if any such creditor would be entitled to receive a Solicitation Package for any other reason, then the Debtors shall send such creditor a Solicitation Package in accordance with the procedures set forth herein.

42.     With respect to addresses from which Solicitation Packages are returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Plan to those entities listed at such addresses, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of

Bankruptcy Rule 3017.  Furthermore, for purposes of serving the Solicitation Packages, the Debtors are authorized to rely on the address information for Voting and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date.  The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable solicitation materials (including ballots).

### *Notice of Non-Voting Status*

43.    The Notice of Non-Voting Status is APPROVED.

44.    To the holders of Claims in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 3 (FLFO Claims), the Debtors shall mail a Confirmation Hearing Notice and a Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 5**, in lieu of a Solicitation Package.

45.    The Debtors shall also mail the Confirmation Hearing Notice and Notice of Non-Voting Status to the holders of Claims and Interests in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) in lieu of the Solicitation Package.

46.    The requirement to serve a Confirmation Hearing Notice, Notice of Non-Voting Status, or any other type of notice in connection with solicitation of the Plan on holders of Claims or Interests of Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) is waived.

### *Ballots*

47.    The Ballots are **APPROVED**.

48.    The Voting Deadline shall be March 8, 2021 at 4:00 p.m. (prevailing Central Time).

49.    All Ballots must be properly executed, completed, and delivered to the Voting Agent (i) by first-class mail in the return envelope provided with each Ballot; (ii) by

overnight courier; (iii) by hand delivery, or (iv) via Prime Clerk's online balloting portal, so that they are actually received by the Voting Agent no later than the Voting Deadline.

### *Tabulation Procedures*

50.    The following tabulation procedures are **APPROVED**.

(a)    Whenever a holder of Claims casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent and thus, supersede any prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked absent further order of the Court.

(b)    Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c)    Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)    A holder of Claims shall be deemed to have voted the full amount of its Claim in each class and shall not be entitled to split its vote within a particular class or between more than one Debtor. Any such holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e)    A holder of Claims against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(f)    Whenever a holder of Claims casts multiple Ballots received by the Voting Agent on the same day but which are voted inconsistently, such Ballots will not be counted.

(g)    A holder of claims in more than one Class must use separate Ballots for each class of claims.

(h)    The following Ballots shall not be counted:

i.    Any Ballot received after the Voting Deadline, unless the Debtors, shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

ii.    Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

16

iii.    Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

iv.    Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim or Interest in a Voting Class;

v.    Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

vi.    Any Ballot for which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.    Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

(i)    The Debtors, unless subject to a contrary order of the Court, may waive any defects or irregularities as to any particular irregular ballot at any time, either before or after the close of voting.

51.    Each holder of Claims that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim therefor.

52.    The Voting Agent is authorized, but not required, to contact parties who submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines. Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

53.     The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots.

54.     The Debtors are authorized to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

55.     The Debtors are further authorized to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Claim holders.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

56.     The Debtors or their Voting Agent shall file the Ballot Certification on or before March 11, 2021.

**Approval of Notices to Contract and Lease Counterparties**

57.     The procedures set forth in the Motion regarding notice to all parties of the assumption of the applicable Debtors' executory contracts and unexpired leases, including the form and content of the Confirmation Hearing Notice, are **APPROVED**.

**Plan Supplement**

58.     The Debtors are authorized to file the Plan Supplement with the Bankruptcy Court no later than March 2, 2021 at 4:00 p.m. (prevailing Central Time) (the "**Plan Supplement Filing Deadline**").

**The Confirmation Hearing**

59.     The Confirmation Hearing shall be held on March 17, 2021, subject to the Court's availability; *provided, however*, that the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open court or as indicated in any notice of agenda or matters scheduled for hearing filed by the Debtors with the Court.

**Objection Procedures**

60.     The deadline to object or respond to confirmation of the Plan shall be March 9, 2021 at 4:00 p.m. (prevailing Central Time) (the "**Plan Objection Deadline**") and the right of parties to object before the Plan Objection Deadline is hereby reserved.

61.     Objections and responses, if any, to confirmation of the Plan, must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth in the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; the basis for the objection, and the specific grounds therefor; and (iv) be filed with the Court.

62.     Registered users of this Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline.  All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas, 77002, on or before the Plan Objection Deadline.

63.     Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

64.     Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

65.     The Debtors and any parties in interest are authorized to file and serve replies or an omnibus reply to any such objections along with a brief in support of confirmation of the Plan (the "**Confirmation Brief**") either separately or in a single, consolidated document on or before March 15, 2021.

**Confirmation Hearing Notice**

66.     The Confirmation Hearing Notice substantially in the form attached hereto as **Exhibit 1** is APPROVED.

67.     The form and proposed manner of service of the Confirmation Hearing Notice comply with all applicable Bankruptcy Rules and Local Rules, and no further notice is necessary.

68.     The Debtors are authorized, in their discretion, to give supplemental publication notice of the Confirmation Hearing in one or more local or foreign newspapers, trade journals, or similar publications, as soon as reasonably practicable following entry of the Proposed Order.

**Procedures for Objections to the Assignment and Transfer of Property of the Estate**

69.     The procedures for asserting a Credit Bid Consent Rights Objection, a Credit Bid Preferential Rights Objection, a Merger Vesting Objection, or a Merger Rights Objection, as detailed in the Motion and incorporated herein by reference as if fully set forth in this Order, are **APPROVED**.

70.     The Debtors intend to assign or transfer to the Credit Bid Purchaser, pursuant to the Credit Bid Purchase Agreement and the Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Credit Bid Consent Rights and Credit Bid Preferential Purchase Rights (other than the Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)).  If any party objects to such assignment or transfer, including any objection based on (a) any Credit Bid Consent Rights; or (b) any Credit Bid Preferential Purchase Rights; then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Credit Bid Consent Rights, an "**Credit Bid Consent Rights Objection**", and if in respect of Credit Bid Preferential Purchase Rights, a "**Credit Bid Preferential Rights Objection**") , no later than the Plan Objection Deadline or an objection deadline set forth in a sale motion following a Toggle Date.

71.     Any person failing to timely file a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement or the related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted

21

Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), and from asserting any Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Right with respect to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), regardless of whether such consent must be in writing in connection with the assignment of any of the Credit Bid Acquired Interests or assumption of any of the Credit Bid Assumed Liabilities.

72.     If any person files a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief or any reply deadline set forth in a sale motion. For the avoidance of doubt, the Debtors may include any responses to any Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objections in the Confirmation Brief.  Upon the filing of such response to such Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing in this Order or

the Motion shall be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Credit Bid Consent Rights Objections or Credit Bid Preferential Rights Objections, and all such rights of the Debtors are expressly preserved.

73.     The Debtors will cause to be vested in FWE I and FWE III pursuant to the Plan of Merger and Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights (in each case, as defined below).  Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on (a) any Plan of Merger Consent Rights; or (b) any Plan of Merger Preferential Purchase Rights; then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Plan of Merger Consent Rights, a "**Merger Vesting Objection**", and if in respect of Plan of Merger Preferential Purchase Rights, a "**Merger Rights Objection**"), no later than the Plan Objection Deadline.

74.     Any person failing to timely file a Merger Vesting Objection or Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the Plan of Merger or the related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent

Rights and/or Plan of Merger Preferential Purchase Rights and from asserting any Plan of Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the Plan of Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the Plan of Merger.

75.     If any person files a Merger Vesting Objection or Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Merger Vesting Objection or Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief.  For the avoidance of doubt, the Debtors may include any responses to any Merger Vesting Objections or Merger Rights Objections in the Confirmation Brief.  Upon the filing of such response to such Merger Vesting Objections or Merger Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing in this Order or the Motion shall be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Merger Vesting Objections and Merger Rights Objections, and all such rights of the Debtors are expressly preserved.

**Approval of Bid Deadline and Procedures for Submission of Higher or Better Bids**

76.     The procedures set forth in the Motion for parties to submit a bid to acquire either (i) the Credit Bid Acquired Interests (as defined in the Credit Bid Purchase Agreement) or (ii) substantially all of the Debtors' assets are **APPROVED**.

77.     The Bid Deadline shall be February 26, 2021.

78.     For a bid to constitute a Qualified Bid, it must be delivered to (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Matt Barr (mattt.barr@weil.com) and Jessica Liou (jessica.liou@weil.com), and (ii) financial advisors to the Debtors, Houlihan Lokey, 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: J.P. Hanson (jhanson@hl.com) and Daniel Crowley (dcrowley@hl.com) no later than the Bid Deadline and must, at a minimum:

(a)     include a purchase price that exceeds the value of the Credit Bid Amount (as defined in the Plan) plus any cash consideration to be provided by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement (the "**Reserve Price**"), and a detailed analysis of the value of any non-cash component of such bid, if any, and documentation supporting such value; specify the form of consideration in (A) (i) all cash or (ii) non-cash components, and (B) cash consideration in excess of the Reserve Price;

(b)     specify (i) the equity interests or assets, in whole or in part, as applicable, sought to be acquired as well as (ii) which assets, if any, are not sought to be acquired;

(c)     include an unconditional commitment that such bid is binding, not subject to further financing and diligence, and irrevocable until such bid is not deemed the successful bid or back-up bid;

(d)     proof of financial ability and other information demonstrating the bidder's ability to consummate the applicable sale transaction and the ability to provide adequate assurance of future performance under any proposed assumed contracts and leases, each as determined by the Debtors in their sole judgment;

(e)     identify any proposed contracts to be assumed and assigned;

(f)     evidence reflecting the bidder's (i) compliance with certain antitrust laws, (ii) ability to obtain regulatory and governmental approvals, and (iii) ability to consummate the sale transaction within a reasonable timeframe, each as determined by the Debtors in their sole judgment;

(g)     (A) disclose the identity of the bidder and each participant in its bid, and (B) (i) demonstrate corporate (or comparable organizational) authorization to submit the bid and (ii) close the proposed sale transaction;

(h)     specify (i) whether the bidder seeks to hire some or all of the Debtors' employees and (ii) indicate the intended treatment of various employee obligations;

(i)     expressly state that the bid does not entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment;

(j)     disclose any connections to (i) the Debtors, (ii) any other known bidders submitting bids pursuant to this process, and/or (iii) any officer or director of the Debtors;

(k)     represent and warrant that the bidder (i) had the opportunity to conduct any and all due diligence before submitting its bid, (ii) relied solely upon its own independent review, investigation, and/or inspection in making its bid, (iii) has not engaged in collusion with respect to its bid, and (iv) provided correct and truthful proof of financial ability to consummate any applicable sale transaction in a timely manner;

(l)     include (i) a deposit, unless otherwise agreed by the Debtors and bidder, to be deposited with an escrow agent pursuant to an escrow agreement, (ii) the contact information of the bidder contact person and any other specified persons, (iii) a covenant to cooperate with the Debtors and provide information for antitrust legal analysis; and

(m)     a statement as to whether the bid is consistent with the terms of restructuring contemplated in the Restructuring Term Sheet and the Apache Term Sheet, and, if not, a detailed explanation of any inconsistency and the reason(s) therefor.

79.     The Debtors will serve on all Sale Notice Parties a notice describing the process to submit bids for either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets (the "**Notice of Procedures to Submit Bids**").  Additionally, as soon as reasonably practicable after entry of the Proposed Order, the Debtors will publish a notice, substantially in the

form of the Notice of Procedures to Submit Bids in one or more local or foreign newspapers, trade journals, or similar publications.

80.    If the Debtors do not receive any Qualified Bids by the Bid Deadline, no later than one Business Day after the Bid Deadline, the Debtors shall file a notice with the Court stating that no such Qualified Bid(s) have been received.

81.    If the Debtors receive Qualified Bid before the Bid Deadline, the Debtors shall inform the Ad Hoc Group of Secured Lenders within one (1) Business Day of receipt of such Qualified Bid.  The Debtors shall also, no later than three (3) Business Days after the Bid Deadline, file with the Court a notice of receipt of such Qualified Bid(s) and the Debtors' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Debtors determine holding an auction will maximize value to the Debtors' estates.  For the avoidance of doubt, the Credit Bid Purchaser (i) shall be deemed a Qualified Bidder that is allowed to participate in any bidding and auction process held by the Debtors and (ii) may increase the Credit Bid Amount up to the FLTL Allowed Claims Amount.

**General**

82.    The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, and related documents without further order of the Court including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before mailing.

83.    Nothing in this Order is intended to, or shall be deemed to, modify, waive, or impair and of the provisions of the *Final Order (I) Authorizing the Debtors to (A) Obtain*

*Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. § 361, 362, 363, 364, and 507(d)* [Docket No. 346] (the "**DIP Order**") and the DIP Documents (as defined in the DIP Order), or the rights of the DIP Secured Parties (as defined in the DIP Order) or the Prepetition Secured Parties (as defined in the DIP Order) thereunder.

84.     The Debtors are authorized to take or refrain from taking any actions necessary or appropriate to implement the terms of, and the relief granted in, this Order without seeking further order of the Court.

85.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from, or related to, the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2021
        Houston, Texas

                                          _____
                                          MARVIN ISGUR
                                          UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1 to the Proposed Order</u>**

**Confirmation Hearing Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § § | Case No. 20-33948 (MI) |
| Debtors.[1] | § § § | (Jointly Administered) |

**NOTICE OF ENTRY OF ORDER (I) APPROVING DISCLOSURE STATEMENT AND
FORM AND MANNER OF NOTICE OF DISCLOSURE STATEMENT HEARING; (II)
ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (III) SCHEDULING
CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION
PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN; (V) APPROVING
NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING
PROCEDURES FOR OBJECTIONS TO THE ASSIGNMENT AND TRANSFER OF
PROPERTY OF THE ESTATE; (VII) APPROVING BID SUBMISSION DEADLINE
AND PROCEDURES FOR SUBMISSION OF HIGHER OR BETTER BIDS; AND
<u>(VIII) GRANTING RELATED RELIEF</u>**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| | |
|---|---|
| Dynamic Offshore Resources NS, LLC | Case No. 20-33947 |
| Fieldwood Energy LLC | Case No. 20-33948 |
| Fieldwood Energy Inc. | Case No. 20-33949 |
| Fieldwood Energy Offshore LLC | Case No. 20-33950 |
| Fieldwood Onshore LLC | Case No. 20-33951 |
| Fieldwood SD Offshore LLC | Case No. 20-33952 |
| Fieldwood Offshore LLC | Case No. 20-33961 |
| FW GOM Pipeline, Inc. | Case No. 20-33953 |
| GOM Shelf LLC | Case No. 20-33954 |
| Bandon Oil and Gas GP, LLC | Case No. 20-33955 |
| Bandon Oil and Gas, LP | Case No. 20-33956 |
| Fieldwood Energy SP LLC | Case No. 20-33958 |
| Galveston Bay Pipeline LLC | Case No. 20-33959 |
| Galveston Bay Processing LLC | Case No. 20-33960 |

**PLEASE TAKE NOTICE THAT:**

1.    *Approval of Disclosure Statement*.  On February 3, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, dated [●] (Docket No. [●]) (as may be amended, modified, or supplemented, the "**Disclosure Statement**") and granted related relief, and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto. The Disclosure Statement Order, among other things, authorized the Debtors to solicit votes to accept the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on [●] (Docket No. [●]) (as may be amended, modified, or supplemented, the "**Plan**").[1]

2.    *Confirmation Hearing*.  A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled for [●], 2021 at [●] (prevailing Central Time),

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

before the Honorable Marvin Isgur, United States Bankruptcy Judge, in the Bankruptcy Court. The Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court without further notice other than by a Court announcement providing for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3.      ***Voting Record Date***.  Holders of Claims in Class 4 (FLTL Secured Claims), Class 5 (SLTL Claims), and Class 6 (General Unsecured Claims) who are otherwise eligible to vote as of February 3, 2021 (the "**Voting Record Date**") shall be entitled to vote to accept or reject the Plan.

4.      ***Voting Deadline***.  All votes to accept or reject the Plan must be **<u>actually received</u>** by the Debtors' voting and tabulation agent, Prime Clerk LLC, at Fieldwood Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165 by no later than **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** (the "**Voting Deadline**").  **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE**.

5.      ***Parties in Interest Not Entitled to Vote***.  Holders of Claims or Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (FLFO Claims), Class 7 (Intercompany Claims), Class 8 (Subordinated Securities Claims), Class 9 (Intercompany Interests), and Class 10 (Existing Equity Interests) are not entitled to vote on the Plan and will not receive a Ballot.  If you disagree with the amount set forth by the Debtors for your Claim or Interest in the Debtors' schedules of assets and liabilities and statements of financial affairs [Docket Nos. 429-456] of if you have filed a proof of claim and disagree with either (a) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan or (b) the Debtors' classification or request for estimation of your Claim or Interest and believe that you should be entitled to vote on the Plan in a different amount or class, then you must serve on the parties identified in paragraph 8 below and file with the Bankruptcy Court a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount or in a different class for purposes of voting to accept or reject the Plan.  All Rule 3018(a) Motions must be filed on or before **March 9, 2021 at 4:00 p.m. (prevailing Central Time)**.  Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.  As to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Bankruptcy Court.  Creditors may contact Prime Clerk in writing at Fieldwood Energy Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by email at fieldwoodballots@primeclerk.com, or (via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international) to receive an appropriate Ballot for any Claim for which a Proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted.

6.      ***Objections to Confirmation***.  The deadline to object or respond to confirmation of the Plan is **March 9, 2021 at 4:00 p.m. (prevailing Central Time)** (the "**Plan Objection Deadline**").

7. ***Form and Manner of Objections to Confirmation***.   Objections and responses, if any, to confirmation of the Plan, must:   (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds thereof; and be filed with the Bankruptcy Court via the Electronic Case Filing System or by mailing to the Bankruptcy Court at the United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, no later than the Plan Objection Deadline.

8. **IF AN OBJECTION TO THE CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE CONFIRMATION OF THE PLAN OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.**

9. ***Additional Information***.   Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other Solicitation Materials should contact the Debtors' voting and tabulation agent, Prime Clerk LLC by (i) email at fieldwoodballots@primeclerk.com or (ii) via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international).   Interested parties may also review the Disclosure Statement and Plan free of charge at https://cases.primeclerk.com/FieldwoodEnergy/. In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website at https://www.txs.uscourts.gov/page/bankruptcy-court.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at https://pacer.psc.uscourts.gov.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)   <u>RELEASES BY THE DEBTORS</u>.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY,**

UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR

**RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

      **10.7(b)**  <u>**RELEASES BY HOLDERS OF CLAIMS AND INTERESTS**</u>.

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11**

CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT.  FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

       **10.7(c)**   <u>Release of Liens</u>.

**Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.**

       **10.8**   <u>Exculpation</u>.

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE APACHE DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT**

CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

       10.6   **Plan Injunction**.

       (a)    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

**(b)**     **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.**

**10.9**     **Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Consenting Creditors, (f) the Prepetition Agents, (g) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (h) the Exit Facility Agents, (i) the Exit Facility Lenders, (j) the Backstop Parties and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case

10

in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures

10.     Please take notice that, in accordance with Section 8.1 and 8.2 of the Plan and sections 365 and 1123 of the Bankruptcy Code, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease:  (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, (iv) is identified in Sections 8.4 or 8.5 of the Plan; (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement which Schedule of Assumed Contracts will identify executory contracts and unexpired leases for assumption and assignment to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement.

11.     Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases.  Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

12.     Subject to the Credit Bid Purchase Agreement, the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Assumed Contracts, to add or remove any executory contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) seven (7) days

immediately before the rescheduled or continued Confirmation Hearing; *provided*, *further* that the Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court

13.     Pursuant to Section 8.2 of the Plan, any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date in accordance with the terms of the Credit Bid Purchase Agreement or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

14.     Further, the Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts.  At least ten (10) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any).  **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.**  Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Post-Effective Date Debtor, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Post-Effective Date Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in Section 8.2(b) of the Plan shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

15.     Please take notice that, pursuant to Section 8.2 of the Plan, the Bankruptcy Court will determine any Assumption Dispute (as defined in the Plan) pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount) by entry of an order; *provided* that the Debtors or the Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any other party or any action, order, or approval of the Court.  To the extent an Assumption Dispute relates solely to the Cure Amount, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease before the resolution of the

Assumption Dispute; *provided*, that the Post-Effective Date Debtors or Credit Bid Purchaser, as applicable shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party.  The Debtors or Post-Effective Date Debtors, as applicable, subject to the terms of the Credit Bid Purchase Agreement, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

16.     If you are a counterparty to an executory contract or unexpired lease (unless one of the exceptions set forth in Section 8.1 of the Plan applies), if no Objection is timely received with respect to your assumed executory contract or unexpired lease (an "**Assumed Contract**"), (a) you shall be deemed to have assented to (i) the assumption of such Assumed Contract, (ii) the date of such assumption, and (iii) the satisfaction of section 365(b)(1)(C) of the Bankruptcy Code requiring the Debtors to provide adequate assurance of future performance under such Assumed Contract, and (b) you shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or the adequate assurance of future performance contemplated herein.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

17.     *Plan Supplement*.  The Debtors will file and serve any supplement to the Plan on or before March 2, 2021.

### Notice of Abandonment of Property of the Estate Upon Plan Effective Date

18.     Pursuant to section 5.12 of the Plan, immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements identified on Exhibit F attached to the Disclosure Statement (as may be amended, modified, or supplemented from time to time, the "**Schedule of Abandoned Properties**") will be abandoned pursuant to the Plan without further notice to or order of the Bankruptcy Court pursuant to sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to section 365 of the Bankruptcy Code, as applicable.  As further detailed in the Disclosure Statement, the Abandoned Properties will be returned to various entities who are predecessor owners in the chain of title or co-working interest owners (collectively, the "**Predecessors**").

**IF YOU ARE A PREDECESSOR, YOU ARE ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN AND DISCLOSURE STATEMENT, INCLUDING SECTION 5.12 OF THE PLAN AND THE SCHEDULE OF ABANDONED PROPERTIES, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**IF AN OBJECTION TO THE CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE CONFIRMATION OF THE PLAN OR ANY TERMS INCLUDED IN THE PLAN, INCLUDING THE ABANDONMENT OF THE ABANDONED PROPERTIES, AND ANY SUCH OBJECTIONS MAY NOT BE HEARD AT THE HEARING.**

## Sale of Certain of the Debtors' Assets Pursuant to the Plan

19.     On the Effective Date of the Plan, pursuant to sections 105, 363, 365, 1123, 1129, 1141(b) and 1141(c) of the Bankruptcy Code, in accordance with the Credit Bid Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Credit Bid Purchase Agreement, certain of the Debtors' assets (collectively, the "**Credit Bid Acquired Interests**") will be transferred to, and the Credit Bid Acquired Interests owned by the Debtors will vest free and clear of all Liens[2] (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens)), Claims, charges, Interests, or other encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights, and all Credit Bid Assumed Liabilities will be assumed by the Credit Bid Purchaser or such other entity designated by the Credit Bid Purchaser solely in accordance with the terms of the Credit Bid Purchase Agreement.

20.     A schedule of the Debtors' interests in the oil and gas leases that will be acquired by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement is annexed to the Disclosure Statement as **Exhibit C** (as may be amended, modified, or supplemented from time to time, the "**Purchased Oil & Gas Lease Interests**").

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE A PLAN OBJECTION ON OR BEFORE THE PLAN OBJECTION DEADLINE IN ACCORDANCE WITH THIS NOTICE WILL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE PLAN, INCLUDING WITH RESPECT TO THE TRANSFER OF THE CREDIT BID ACQUIRED INTERESTS FREE AND CLEAR OF ALL LIENS (OTHER THAN CREDIT BID PERMITTED ENCUMBRANCES (EXCEPT THAT THE FIELDWOOD U.A. INTERESTS, WHICH SHALL VEST FREE AND CLEAR OF ALL LIENS)), CLAIMS, CHARGES, INTERESTS, OR OTHER ENCUMBRANCES, INCLUDING THE CREDIT BID CONSENT RIGHTS AND THE CREDIT BID PREFERENTIAL PURCHASE RIGHTS.**

### Notice to Holders of Consent Rights, Preferential Purchase Rights, and Similar Rights of Objection Deadline

21.     The Debtors intend to assign or transfer to the Credit Bid Purchaser, pursuant to the Credit Bid Purchase Agreement and the Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights (in each case, as defined below) (other than the Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)).  If any party objects to such assignment or transfer, including any objection based on (a) any alleged right of consent, notice, and any similar interests, if any, that are applicable to the sale of the Credit Bid Acquired Interests, or the assumption of the Credit Bid Assumed Liabilities,

---

[2] Provided that the Retained Properties (as defined in the Apache Implementation Agreement) shall be transferred in accordance with the Decommissioning Agreement.

in connection with the Credit Bid Purchase Agreement ("**Credit Bid Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the consummation of the transactions contemplated by the Credit Bid Purchase Agreement, or any other Preferential Right (as defined in the Credit Bid Purchase Agreement) ("**Credit Bid Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Credit Bid Consent Rights, a "**Credit Bid Consent Rights Objection**", and if in respect of Credit Bid Preferential Purchase Rights, a "**Credit Bid Preferential Rights Objection**"), no later than the Plan Objection Deadline or any objection deadline set forth in a sale motion following a Toggle Date.

**IF YOU WISH TO ASSERT A CREDIT BID CONSENT RIGHTS OBJECTION OR CREDIT BID PREFERENTIAL RIGHTS OBJECTION, YOU ARE ADVISED TO CAREFULLY REVIEW THE CREDIT BID PURCHASE AGREEMENT ALONG WITH THE PLAN.**

**IF A PARTY FILES A CREDIT BID CONSENT RIGHTS OBJECTION OR CREDIT BID PREFERENTIAL RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE CONFIRMATION HEARING, SUCH OBJECTION WILL BE HEARD BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

**Any person failing to timely file a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement or the related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), and from asserting any alleged Credit Bid Preferential Purchase Right with respect to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), regardless of whether such consent must be in writing in connection with the assignment of any of the Credit Bid Acquired Interests or assumption of any of the Credit Bid Assumed Liabilities.**

15

If any person files a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief or any reply deadline set forth in a sale motion.  For the avoidance of doubt, the Debtors may include any responses to any Credit Bid Consent Rights Objections or Credit Bid Preferential Rights Objections in the Confirmation Brief.  Upon the filing of such response to such Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Credit Bid Consent Rights Objections and Credit Bid Preferential Rights Objections, and all such rights of the Debtors are expressly preserved.

22.    The Debtors will cause to be vested in FWE I and FWE III pursuant to the Plan of Merger and Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights (in each case, as defined below).  Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on (a) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the vesting of the assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Plan of Merger Consent Rights, a "**Merger Vesting Objection**", and if in respect of Plan of Merger Preferential Purchase Rights, a "**Merger Rights Objection**"), no later than the Plan Objection Deadline.

**IF YOU WISH TO ASSERT A MERGER VESTING OBJECTION OR MERGER RIGHTS OBJECTION, YOU ARE ADVISED TO CAREFULLY REVIEW THE PLAN OF MERGER DOCUMENTS ALONG WITH THE PLAN.**

**IF A PARTY FILES A MERGER VESTING OBJECTION OR MERGER RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE CONFIRMATION HEARING, SUCH OBJECTION WILL BE HEARD BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

**Any person failing to timely file a Merger Vesting Objection or Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the Plan of Merger or the related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights and from asserting any Plan of Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the Plan of Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the Plan of Merger.**

If any person files a Merger Vesting Objection or Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any rights asserted by such person by filing a response to the Merger Vesting Objection or Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief. For the avoidance of doubt, the Debtors may include any responses to any Merger Vesting Objections or Merger Rights Objections in the Confirmation Brief or any reply deadline in a sale motion. Upon the filing of such response to such Merger Vesting Objections or Merger Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Merger Rights Objections and Merger Vesting Objections, and all such rights of the Debtors are expressly preserved.

## QUESTIONS:

If you have any questions, please contact the Voting Agent at 1-855-631-5346 (domestic) or 1-917-460-0913 (international). You may also submit your question online at https://cases.primeclerk.com/FieldwoodEnergy/. Please be advised that the Voting Agent cannot provide legal advice.

Dated: [●], 2021
      Houston, Texas

/s/ DRAFT
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:  Matt.Barr@weil.com
         Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**Exhibit 2**

**Form of Ballot – Class 4 (FLTL Secured Claims)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | Case No. 20-33948 (MI) |
|  | § |  |
| Debtors.[2] | § | (Jointly Administered) |
|  | § |  |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
## PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES

### CLASS 4: FLTL SECURED CLAIMS

> IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE VOTING AGENT ON OR BEFORE MARCH 9, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on [●], 2021 (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **<u>Exhibit A</u>** to the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on [●], 2021 (Docket No. [●]) (as may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **<u>Exhibit A</u>** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of February 3, 2021 (the "Voting Record Date"), a holder (a "**Holder**") of a claim against the Debtors arising under that certain *Amended and Restated First Lien Credit Agreement*, dated as of April 11, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition FLTL Credit Agreement**"), among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the lenders from time to time party thereto, and Cantor Fitzgerald Securities, as administrative agent and collateral agent.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-855-631-5346 (domestic) 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com. Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 4 FLTL Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 4**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, each holder of an FLTL Claim will receive its Pro Rata Share of 100% of the New Equity Interests, subject to dilution by the New Equity Interests of the New Money Warrants and, thereafter, subject to dilution by the New Equity Interests issued upon the implementation of the Management Incentive Plan.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS**.

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 FLTL Secured Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

2

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:

10.7(a)  **RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO,**

3

ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

       10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR

ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED

PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS
RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF
THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE,
(VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING,
AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM
OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B)
OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE
WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA
PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY
RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE
APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE
DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY
SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE
DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL
CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO
THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND
THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

       **10.7(c)**   <u>**Release of Liens**</u>.

Except as otherwise specifically provided in the Plan or in any contract, instrument, release,
or other agreement or document contemplated under or executed in connection with the
Plan, on the Effective Date and concurrently with the applicable distributions made
pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of
the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds
of trust, Liens, pledges, or other security interests against any property of the estates shall
be fully released and discharged, and all of the right, title, and interest of any holder of such
mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-
Effective Date Debtors and their successors and assigns, in each case, without any further
approval or order of the Bankruptcy Court and without any action or filing being required
to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on,
interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term
Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger)
held by the Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL
Lenders shall be released, discharged, and of no further force or effect as of the Effective
Date.

       **10.8**   <u>**Exculpation**</u>.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR
THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE
DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE
OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN
SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID
PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT

**FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE APACHE DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

       **10.6**   <u>**Plan Injunction**</u>**.**

       **(a)**      **Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect**

transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

**(b)** By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**10.9** **Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Consenting Creditors, (f) the Prepetition Agents, (g) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (h) the Exit Facility Agents, (i) the Exit Facility Lenders, (j) the Backstop Parties and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds,

management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1. Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of an FLTL Claim in the amount set forth below.

$

**Item 2. Votes on the Plan.** Please vote either to accept or to reject the Plan with respect to your Claims below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned holder of a Class 4 FLTL Claim votes to (check one box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Opt Out Release Election.** Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan. If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan. Election to withhold consent is at your option. If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective. If you submit a rejecting Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law. The Holder of a Class 4 FLTL Claim set forth in Item 1 elects to:

☐ **OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

10

**Item 4. Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the FLTL Secured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____

Name of Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

E-Mail Address

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11.  IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.  THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**E-Ballot Voting Instructions**

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on March 9, 2021, the Voting Deadline, unless such time is extended by the Debtors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.</u>  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  _____**

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS MARCH 9, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL**

**DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW. IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| Prime Clerk Addresses for Receipt of Ballots |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

<u>**Exhibit 3**</u>

**Form of Ballot – Class 5 (SLTL Claims)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.,* | § § | Case No. 20-33948 (MI) |
| Debtors.[2] | § § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
## PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES

### CLASS 5: SLTL CLAIMS

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE MARCH 9, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on [●], 2021 (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on [●], 2021 (Docket No. [●]) (as may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of February 3, 2021 (the "Voting Record **Date**"), a holder (a "**Holder**") of a claim against the Debtors arising from that certain *Amended and Restated Second Term Loan Agreement*, dated as of April 11, 2018 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition SLTL Credit Agreement**"), by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the lenders from time to time party thereto, and Cortland Capital Market Services LLC, as administrative agent and collateral agent.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by calling 1-855-631-5346 (domestic) or 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com. Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 5 SLTL Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 5**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, each holder of an SLTL Claim will receive its Pro Rata Share of the General Unsecured Claims Cash Pool (along with Class 6).

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of Class 5 SLTL Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan. The releases as presented in the Plan are provided below:**

**10.7(a)** **RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO,**

3

ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

      10.7(b)  <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR

4

ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED

PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

10.7(c)  **Release of Liens.**

Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

10.8  **Exculpation.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT

FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE APACHE DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

10.6    <u>Plan Injunction</u>.

(a)    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect

transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

**(b)** By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**10.9** <u>Injunction Related to Releases and Exculpation.</u>

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

<u>**Relevant Definitions Related to Release and Exculpation Provisions:**</u>

***Exculpated Parties*** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Consenting Creditors, (f) the Prepetition Agents, (g) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (h) the Exit Facility Agents, (i) the Exit Facility Lenders, (j) the Backstop Parties and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds,

management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1. Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of an SLTL Claim in the amount set forth below.

$ _____

**Item 2. Votes on the Plan**. Please vote either to accept or to reject the Plan with respect to your Claims below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned holder of a Class 5 SLTL Claim votes to (check one box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Item 3. Optional Opt Out Release Election**. Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan. If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan. Election to withhold consent is at your option. If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective. If you submit a rejecting Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law. The Holder of a Class 5 SLTL Claim set forth in Item 1 elects to:

☐ **OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

**Item 4. Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of an SLTL Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____

Name of Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

E-Mail Address

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

<u>**E-Ballot Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on March 9, 2021, the Voting Deadline, unless such time is extended by the Debtors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.</u>  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS MARCH 9, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL**

**DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW. IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTTIFY THE VOTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| Prime Clerk Addresses for Receipt of Ballots |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

**<u>Exhibit 4</u>**

**Form of Ballot – Class 6 (General Unsecured Claims)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.,* | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES

### CLASS 6: GENERAL UNSECURED CLAIMS

IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE MARCH 9, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "**Debtors**") are soliciting votes with respect to the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on [●], 2021 (as may be amended, modified or supplemented from time to time, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on [●], 2021 (Docket No. [●]) (as may be amended, modified, or supplemented from time to time, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of February 3, 2021 (the "Voting Record **Date**"), a holder (a "**Holder**") of any Claim (including any FLTL

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

Deficiency Claim) against a Debtor, other than a DIP Claim, Administrative Expense Claim (including a Fee Claim), FLFO Claim, FLTL Secured Claim, Other Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, SLTL Claim, Subordinated Securities Claim, or Intercompany Claim that is not entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court (a "**General Unsecured Claim**").

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-855-631-5346 (domestic) or 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com. Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6 General Unsecured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, each holder of a General Unsecured Claim will receive its Pro Rata Share of the General Unsecured Claims Cash Pool (along with Class 5) and its Pro Rata Share of the Residual Distributable Value.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 6 General Unsecured Claims. You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

## NOTICE REGARDING CERTAIN RELEASE,
## EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan. The releases as presented in the Plan are provided below:**

**10.7(a)  RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO,**

3

ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

      10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR

ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED

PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

### 10.7(c)  Release of Liens.

Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

### 10.8  Exculpation.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT

FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE APACHE DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

       **10.6**    <u>**Plan Injunction**</u>.

       **(a)**    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect

transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

### 10.9     Injunction Related to Releases and Exculpation.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

## Relevant Definitions Related to Release and Exculpation Provisions:

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Consenting Creditors, (f) the Prepetition Agents, (g) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (h) the Exit Facility Agents, (i) the Exit Facility Lenders, (j) the Backstop Parties and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds,

management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ITEMS 1, 2, 3, AND 4. IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1. Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of a General Unsecured Claim in the amount and against the Debtor set forth below.

> $

**Item 2. Votes on the Plan.** Please vote either to accept or to reject the Plan with respect to your Claims below. Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

> **Prior to voting on the Plan, please note the following:**
>
> **If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**
>
> **The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned holder of a Class 6 General Unsecured Claim votes to (check one box):

☐   **Accept** the Plan          ☐   **Reject** the Plan

**Item 3. Optional Opt Out Release Election.** Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan. If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan. Election to withhold consent is at your option. If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective. If you submit a rejecting Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law. The Holder of a Class 6 General Unsecured Claim set forth in Item 1 elects to:

☐   **OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

10

**Item 4. Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of a General Unsecured Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

 

_____

Name of Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

E-Mail Address

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10. PLEASE RETURN YOUR BALLOT PROMPTLY.

11.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL); EMAILING FIELDWOODBALLOTS@PRIMECLERK.COM; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.   THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

### E-Ballot Voting Instructions

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on March 9, 2021, the Voting Deadline, unless such time is extended by the Debtors.  <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.</u>  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**  _____

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS MARCH 9, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW.  IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEASTT 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| Prime Clerk Addresses for Receipt of Ballots |
| :---: |
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

## **Exhibit 5**

**Notice of Non-Voting Status**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, et al., | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

### NOTICE OF NON-VOTING STATUS

On August 3, 2020 (the "**Petition Date**"), Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

On February 3, 2021 the Bankruptcy Court held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on [●], 2021 (Docket No. [●]) (as may be amended, "**Disclosure Statement**")[2] and thereafter entered an order (the "**Order**") with respect thereto. The Order, among other things, authorizes the Debtors to solicit votes to accept the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on [●], 2021, as **Exhibit A** to the Disclosure Statement. If you have any questions about the status of your Interest or if you wish to obtain paper copies of the Plan and Disclosure Statement, you may contact the Debtors' Voting Agent, Prime Clerk LLC ("**Prime Clerk**") online at https://cases.primeclerk.com/FieldwoodEnergy/, or by telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international), or via email at fieldwoodballots@primeclerk.com. Copies of the Plan and Disclosure Statement can also be accessed online at https://cases.primeclerk.com/FieldwoodEnergy/. Please be advised that Prime Clerk cannot provide legal advice.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

You are receiving this notice (this "Notice of Non-Voting Status") because, according to the Debtors' books and records, you are a holder of:

(i) **Class 1 (Other Secured Claims) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan;**

(ii) **Class 2 (Other Priority Claims) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan;**

(iii) **Class 3 (FLFO Claims) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan;**

(iv) **Class 8 (Subordinated Securities Claims) under the Plan, which provides that your Interest in the Debtors is not entitled to a recovery and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and not entitled to vote on the Plan; and/or**

(v) **Class 10 (Existing Equity Interests) under the Plan, which provides that your Interest in the Debtors is not entitled to a recovery and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and not entitled to vote on the Plan.**

The deadline for filing objections to confirmation of the Plan is **March 9, 2021 at 4:00 p.m. (prevailing Central Time) (the "Plan Objection Deadline")**.  Any objections to the Plan must be:  (i) in writing; (ii) filed with the Clerk of the Bankruptcy Court together with proof of service thereof; (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection; and (iv) conform to the applicable Bankruptcy Rules and the Local Rules.

---

If you have questions about this Notice, please contact Prime Clerk LLC

**Online Inquiry**:  Visit https://cases.primeclerk.com/FieldwoodEnergy/ and click "Submit Inquiry"
**Telephone**: 1-855-631-5346 (domestic) or 1-917-460-0913 (international)

**Email**: fieldwoodballots@primeclerk.com

**Website**:  https://cases.primeclerk.com/FieldwoodEnergy/

---

## NOTICE REGARDING CERTAIN RELEASE,
## EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan. The releases as presented in the Plan are provided below:**

**10.7(a)   RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO,**

ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

> 10.7(b) RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR

ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED

PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

10.7(c) **Release of Liens.**

Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

10.8 **Exculpation.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT

FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE APACHE DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

     10.6   <u>Plan Injunction</u>.

     (a)    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect

transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

10.9     <u>Injunction Related to Releases and Exculpation</u>.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

<u>Relevant Definitions Related to Release and Exculpation Provisions</u>:

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Consenting Creditors, (f) the Prepetition Agents, (g) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (h) the Exit Facility Agents, (i) the Exit Facility Lenders, (j) the Backstop Parties and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds,

management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

      *Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

      *Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated:   [●], 2021
          Houston, Texas

                                        */s/  DRAFT*
                                        _____

                                        WEIL, GOTSHAL & MANGES LLP
                                        Alfredo R. Pérez (15776275)
                                        700 Louisiana Street, Suite 1700
                                        Houston, Texas 77002
                                        Telephone:  (713) 546-5000
                                        Facsimile:  (713) 224-9511
                                        Email:  Alfredo.Perez@weil.com

                                        -and-

                                        WEIL, GOTSHAL & MANGES LLP
                                        Matthew S. Barr (admitted *pro hac vice*)
                                        Jessica Liou (admitted *pro hac vice*)
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Email:   Matt.Barr@weil.com
                                               Jessica.Liou@weil.com

                                        *Attorneys for Debtors*
                                        *and Debtors in Possession*

---

If you have questions about this Notice, please contact Prime Clerk LLC

**Online Inquiry**:  Visit https://cases.primeclerk.com/FieldwoodEnergy/ and click "Submit Inquiry"

**Telephone**:  1-855-631-5346 (domestic) or 1-917-460-0913 (international)

**Email**: fieldwoodballots@primeclerk.com

**Website**:  https://cases.primeclerk.com/FieldwoodEnergy/

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "**Release Opt Out Form**") because you are, or may be, a holder of a Claim or Interest that is not entitled to vote on the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "**Plan**").[3]  A holder of Claims and/or Interests is deemed to grant the releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

If you believe you are a holder of a Claim or Interest with respect to the Debtors and choose to opt out of the releases set forth in Section 10.7(b) of the Plan, please complete, sign, and date this Release Opt Out Form and return it promptly via first class mail or in the enclosed pre-addressed, pre-paid envelope provided, overnight courier, or hand delivery to the Voting Agent at the applicable address set forth below:

| Prime Clerk Addresses for Receipt of Ballots |
| :---: |
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

**Alternatively, you may submit your Opt Out Form via Prime Clerk's online portal by visiting https://cases.primeclerk.com/FieldwoodEnergy/.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt Out Form.**

**Holders of Claims or Interests who fill out an Opt Out Form using the Claims Agent's online portal should NOT also submit a paper Opt Out Form.**

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY MARCH 9, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").  IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement.

**Item 1.  Amount of Claim.**  The undersigned certifies that, as of February 3, 2021, the undersigned was the holder of Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (FLFO Claims), Class 8 (Subordinated Securities Claims), and/or Class 10 (Existing Equity Interests).

**Item 2.  Releases.**

The Plan contains the following release provisions:

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)  <u>RELEASES BY THE DEBTORS</u>.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN**

THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (the "<u>DEBTOR RELEASES</u>"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

       **10.7(b)**   <u>RELEASES BY HOLDERS OF CLAIMS AND INTERESTS</u>.

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE

RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO

BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT.  FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

      **10.7(c)**  **Release of Liens.**

Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Lenders, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

      **10.8**    **Exculpation.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE BACKSTOP COMMITMENT LETTER, THE APACHE DEFINITIVE DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

      **10.6**    <u>**Plan Injunction**</u>.

      **(a)**    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents,

officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)      By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

10.9      Injunction Related to Releases and Exculpation.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

Relevant Definitions Related to Release and Exculpation Provisions:

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Consenting Creditors, (f) the Prepetition Agents, (g) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (h) the Exit Facility Agents, (i) the Exit Facility Lenders, (j) the Backstop Parties and (k) with respect to each

17

of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTERESTS WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.7(b) OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.7(b) OF THE PLAN.**

**By checking the box below, the undersigned holder of the Claims and/or Interests identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.7(b) of the Plan:**

| ☐ | **Elects to <u>opt out</u> of the releases contained in Section 10.7(b) of the Plan.** |
|---|---|

**Item 3.  Certifications**.  By signing this Release Opt Out Form, the undersigned certifies that:

(a)  as of the Voting Record Date, either:  (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)  the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)  the undersigned has submitted the same election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d)  no other Release Opt Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Release Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Release Opt Out Forms are hereby revoked.

Name of Holder: _____

Signature: _____

Name and Title of Signatory
(if different than Holder): _____

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY MAIL, OVERNIGHT, OR HAND DELIVERY TO:**

| **Prime Clerk Addresses for Receipt of Ballots** |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

19

**THE OPT OUT DEADLINE IS MARCH 9, 2021 AT 4:00 p.m. (PREVAILING CENTRAL TIME).**

**Alternatively, to submit your Opt Out Form via the Prime Clerk's online portal, please visit https://cases.primeclerk.com/FieldwoodEnergy/.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt Out Form.**

**Prime Clerk's online platform is the sole manner in which opt out forms will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Holders of Claims or Interests who fill out an Opt Out Form using the Claims Agent's online portal should NOT also submit a paper Opt Out Form.**

**<u>IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Opt-Out Form:</u>**

Unique Opt Out ID#:  _____

**Exhibit B**

**Notice of Disclosure Statement Hearing**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| FIELDWOOD ENERGY LLC, *et al.,* | § | Case No. 20-33948 (MI) |
|  | § |  |
| Debtors.[1] | § | (Jointly Administered) |
|  | § |  |

## NOTICE OF HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:

| | |
|---|---|
| Dynamic Offshore Resources NS, LLC | Case No. 20-33947 |
| Fieldwood Energy LLC | Case No. 20-33948 |
| Fieldwood Energy Inc. | Case No. 20-33949 |
| Fieldwood Energy Offshore LLC | Case No. 20-33950 |
| Fieldwood Onshore LLC | Case No. 20-33951 |
| Fieldwood SD Offshore LLC | Case No. 20-33952 |
| Fieldwood Offshore LLC | Case No. 20-33961 |
| FW GOM Pipeline, Inc. | Case No. 20-33953 |
| GOM Shelf LLC | Case No. 20-33954 |
| Bandon Oil and Gas GP, LLC | Case No. 20-33955 |
| Bandon Oil and Gas, LP | Case No. 20-33956 |
| Fieldwood Energy SP LLC | Case No. 20-33958 |
| Galveston Bay Pipeline LLC | Case No. 20-33959 |
| Galveston Bay Processing LLC | Case No. 20-33960 |

**PLEASE TAKE NOTICE THAT**, on January 1, 2021, Fieldwood Energy LLC and its affiliated debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, dated January

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

1, 2021 (Docket No. 722) (as may be amended, modified, or supplemented, the "**Plan**") and the proposed *Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, dated January 1, 2021 (Docket No. 723) (as may be amended, modified, or supplemented, the "**Disclosure Statement**"), pursuant to section 1125 of Title 11 of the United States Code (the "**Bankruptcy Code**").

**PLEASE TAKE FURTHER NOTICE THAT:**

       1.    A hearing (the "**Disclosure Statement Hearing**") will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, on February 3, 2021 at 2:30 p.m. (prevailing Central Time) to consider entry of an order finding, among other things, that the Disclosure Statement contains "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and approving the Disclosure Statement.

       2.    It is anticipated that all persons will appear telephonically and also may appear via video at the Disclosure Statement Hearing. Audio communication will be by use of the court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. You may view video via gotomeeting.com. To use gotomeeting, the Bankruptcy Court recommends that you download the free gotomeeting application. To connect, you should enter the meeting code "judgeisgur" in the gotomeeting app or click the link on Judge Isgur's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.

       3.    Any party in interest wishing to obtain a copy of the Disclosure Statement and the Plan should contact Prime Clerk LLC by email at fieldwoodballots@primeclerk.com or via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international). Interested parties may also review the Disclosure Statement and the Plan free of charge at https://cases.primeclerk.com/FieldwoodEnergy/.

       4.    Objections, if any, to approval of the Disclosure Statement must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by such party against the Debtors' estates or property; (iv) provide the basis for objection and specific grounds thereof; and (v) be filed with the Bankruptcy Court via the Electronic Case Filing System or by mailing to the Bankruptcy Court at United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, so as to be actually received by February 1, 2021 at 4:00 p.m. (prevailing Central Time).

       5.    **IF AN OBJECTION TO THE DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE DISCLOSURE STATEMENT HEARING.**

6.    Upon approval of the Disclosure Statement by the Bankruptcy Court, any party in interest that is entitled to vote on the Plan, will receive a copy of the Disclosure Statement, the Plan, one or more Ballots, and various documents related thereto, unless otherwise ordered by the Bankruptcy Court.

7.    The Disclosure Statement Hearing may be adjourned from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment on the date scheduled for the Disclosure Statement Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court.

Dated: January 1, 2021
       Houston, Texas

                                        Respectfully submitted,

                                        */s/ DRAFT*
                                        WEIL, GOTSHAL & MANGES LLP
                                        Alfredo R. Pérez (15776275)
                                        700 Louisiana Street, Suite 1700
                                        Houston, Texas 77002
                                        Telephone:  (713) 546-5000
                                        Facsimile:  (713) 224-9511
                                        Email:  Alfredo.Perez@weil.com

                                        -and-

                                        WEIL, GOTSHAL & MANGES LLP
                                        Matthew S. Barr (admitted *pro hac vice*)
                                        Jessica Liou (admitted *pro hac vice*)
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Email: Matt.Barr@weil.com
                                               Jessica.Liou@weil.com

                                        *Attorneys for Debtors*
                                        *and Debtors in Possession*

## **Exhibit C**

### **Notice of Procedures to Submit Bids**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | Case No. 20-33948 (MI) |
|  | § |  |
| Debtors.[1] | § | (Jointly Administered) |
|  | § |  |

## NOTICE OF PROCEDURES TO SUBMIT BIDS[2]

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**") on August 3, 2020 and August 4, 2020, as applicable.

**PLEASE TAKE FURTHER NOTICE** that on January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, dated January 1, 2021 (Docket No. 722) (as may be amended, modified, or supplemented, the "**Plan**") and the proposed *Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, dated January 1, 2021 (Docket No. 723) (as may be amended, modified, or supplemented, the "**Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE** that on February 3, 2021, the Court entered the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Procedures for Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (VIII) Granting Related Relief* [Docket No. [●]] (the "**Solicitation Order**"), which, among other things, approved the below procedures to submit bids to acquire

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Plan (as defined herein).

either (i) the Credit Bid Acquired Interests (as defined in the Credit Bid Purchase Agreement), or (ii) substantially all of the Debtors' assets.

1. **Bid Deadline**: All interested parties must submit their bids by **February 26, 2021.**

2. Any third party that seeks to submit a Qualified Bid (as defined in the Solicitation Order and in this notice below) and has demonstrated that it has the ability to submit a Qualified Bid may obtain access to the virtual data room containing due diligence materials and access to certain non-public information about the Debtors' assets after executing a confidentiality agreement on customary terms that are reasonable to the Debtors.

3. For a bid to constitute a Qualified Bid, it must be delivered to (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matt Barr (matt.barr@weil.com) and Jessica Liou (jessica.liou@weil.com), and (ii) financial advisors to the Debtors, Houlihan Lokey, 245 Park Avenue, 20th Floor, New York, NY, 10167, Attn: J.P. Hanson (jhanson@hl.com) and Daniel Crowley (dcrowley@hl.com) no later than the Bid Deadline and must, at a minimum:

(a) include a purchase price that exceeds the value of the Credit Bid Amount (as defined in the Plan) plus any cash consideration to be provided by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement (the "**Reserve Price**"), and a detailed analysis of the value of any non-cash component of such bid, if any, and documentation supporting such value; specify the form of consideration in (A) (i) all cash or (ii) non-cash components, and (B) cash consideration in excess of the Reserve Price;

(b) specify (i) the equity interests or assets, in whole or in part, as applicable, sought to be acquired as well as (ii) which assets, if any, are not sought to be acquired;

(c) include an unconditional commitment that such bid is binding, not subject to further financing and diligence, and irrevocable until such bid is not deemed the successful bid or back-up bid;

(d) proof of financial ability and other information demonstrating the bidder's ability to consummate the applicable sale transaction and the ability to

provide adequate assurance of future performance under any proposed assumed contracts and leases, each as determined by the Debtors in their sole judgment;

(e)     identify any proposed contracts to be assumed and assigned;

(f)     include evidence reflecting the bidder's (i) compliance with certain antitrust laws, (ii) ability to obtain regulatory and governmental approvals, and (iii) ability to consummate the sale transaction within a reasonable timeframe, each as determined by the Debtors in their sole judgment;

(g)     (A) disclose the identity of the bidder and each participant in its bid, and (B) (i) demonstrate corporate (or comparable organizational) authorization to submit the bid and (ii) close the proposed sale transaction;

(h)     specify (i) whether the bidder seeks to hire some or all of the Debtors' employees and (ii) indicate the intended treatment of various employee obligations;

(i)     expressly state that the bid does not entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment;

(j)     disclose any connections to (i) the Debtors, (ii) any other known bidders submitting bids pursuant to this process, and/or (iii) any officer or director of the Debtors;

(k)     represent and warrant that the bidder (i) relied solely upon its own independent review, investigation, and/or inspection in making its bid, (ii) has not engaged in collusion with respect to its bid, and (iii) provided correct and truthful proof of financial ability to consummate any applicable sale transaction in a timely manner;

(l)     include (i) a deposit, unless otherwise agreed by the Debtors and bidder, to be deposited with an escrow agent pursuant to an escrow agreement, (ii) the contact information of the bidder contact person and any other specified persons, (iii) a covenant to cooperate with the Debtors and provide information for antitrust legal analysis; and

(m)    a statement as to whether the bid is consistent with the terms of restructuring contemplated in the Restructuring Term Sheet and the Apache Term Sheet, and, if not, a detailed explanation of any inconsistency and the reason(s) therefor.

## Obtaining Information

Copies of the Plan, the Disclosure Statement, and any other related documents are available upon request to Prime Clerk, LLC, the Debtors' notice and claims agent, by email at

fieldwoodballots@primeclerk.com or via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international).  Interested parties may also review the Disclosure Statement and the Plan free of charge at https://cases.primeclerk.com/FieldwoodEnergy/.