

**Amanda Thilman**
Planning and Commercial
Advisor Telephone: 832-801-8725 Email:
Amanda.Thilman@bp.com

**BP Exploration & Production Inc.**
Gulf of Mexico Region
501 Westlake Park Boulevard
Houston, Texas 77079
16th Floor WL1

January 28, 2020

*via Facsimile E-mail*

Fieldwood Energy LLC
2000 W. Sam Houston Pkwy. St.
Suite 1200
Houston, TX 77042
Attn: Mr. Nathan Vaughn

RE: Letter Agreement for the Connection of a Satellite Well System to the LSPS
   Galapagos MC 519 Genovesa Tieback Project
   Galapagos Development
   Mississippi Canyon Area
   Gulf of Mexico

Dear Mr. Vaughn:

Pursuant to the Production Handling and Operating Services Agreement effective September 21, 2010, by and between Fieldwood Energy LLC ("Fieldwood") (as successor in interest to Noble Energy Inc., "Noble"), BP Exploration & Production Inc. ("BP"), Red Willow Offshore, LLC ("Red Willow") and Houston Energy Deepwater Ventures I, LLC ("HEDV"), as amended, (the "PHA"), and the Loop Subsea Production System Construction and Operating Agreement effective December 1, 2011, by and between Fieldwood (as successor in interest to Noble), BP, Red Willow and HEDV ("LSPS OA"), and as a follow up to the (i) Genovesa tieback request/notification submitted by Fieldwood to BP on March 27, 2019, and (ii) Galapagos Genovesa Tieback Project Letter Agreement dated October 31, 2019, ("Letter Agreement"), BP (hereinafter in its capacity as Owner and Host Operator under the PHA and as LSPS Operator under the LSPS OA), and Fieldwood execute this agreement, the ("Agreement") to authorize Fieldwood to perform operations on the Loop Subsea Production System (as defined in the LSPS OA, the LSPS) for the connection of the MC 519 Genovesa Satellite Well System to the LSPS to allow Genovesa production access to the Na Kika Host via the LSPS for the purpose of processing and handling such production at the Na Kika Host ("LSPS Work"). Capitalized terms not defined herein will have the meaning ascribed to them in the PHA or LSPS OA.

BP and Fieldwood hereby agree to the following terms, each of which will be subject to and performed in accordance with the terms and conditions in the PHA and LSPS OA:

1. Fieldwood shall provide, or cause any subsea contractor performing any LSPS Work to provide, to BP any written procedures, drawings, specifications, written scopes or description of activities connected with the LSPS Work (e.g. a "Go-No-Go Checklist"). BP shall be afforded a reasonable opportunity to review and comment on all provided documents in advance of the Go-No-Go Checklist.

2. At all times, BP shall have the right to remove the LSPS Work from Fieldwood, and/or terminate this Agreement, for any cause related to operational, safety or environmental concerns, including Fieldwood's failure to comply with any obligation in this Agreement.

3. This Agreement will be effective as of the date executed by BP and Fieldwood below.

4. The Parties agree to the following provisions with respect to liability, damages, and indemnity:

   a. BP SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS FIELDWOOD AND ITS AFFILIATES, AND ITS AND THEIR AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, INSURERS, SUCCESSORS AND PERMITTED ASSIGNS (THE "FIELDWOOD GROUP") FROM AND AGAINST ANY LOSS, DAMAGE, CLAIM, SUIT, LIABILITY, JUDGMENT AND EXPENSE (INCLUDING ATTORNEY'S FEES AND THE COSTS OF LITIGATION), AND ANY FINES, PENALTIES AND ASSESSMENTS ("CLAIMS") ARISING OUT OF (I) PERSONAL INJURY TO OR DEATH OF ANY PERSON WHO IS A MEMBER OF THE BP GROUP (AS DEFINED BELOW), AND/OR (II) DAMAGE TO OR LOSS OF ANY PROPERTY OF THE BP GROUP EXCLUDING BP'S EQUITY INTEREST IN THE LSPS, IRRESPECTIVE OF CAUSE AND NOTWITHSTANDING THE NEGLIGENCE OR BREACH OF DUTY (WHETHER STATUTORY OR OTHERWISE), STRICT LIABILITY, OR THE UNSEAWORTHINESS OF ANY VESSEL USED IN CARRYING OUT THIS AGREEMENT, OF THE FIELDWOOD GROUP AND IRRESPECTIVE OF ANY CLAIM IN TORT, UNDER CONTRACT OR OTHERWISE AT LAW, BUT STRICTLY EXCLUDING ANY CLAIMS TO THE EXTENT ATTRIBUTABLE TO THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY OF THE FIELDWOOD GROUP.

   b. FIELDWOOD SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS BP AND ITS AFFILIATES, AND ITS AND THEIR AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, INSURERS, SUCCESSORS AND PERMITTED ASSIGNS (THE "BP GROUP") FROM AND AGAINST ANY CLAIMS ARISING OUT OF (I) PERSONAL INJURY TO OR DEATH OF ANY PERSON WHO IS A MEMBER OF THE FIELDWOOD GROUP, (II) DAMAGE TO OR LOSS OF ANY PROPERTY OF THE FIELDWOOD GROUP, (III) DAMAGE TO OR LOSS OF THE LSPS NOT TO BE LIMITED BY FIELDWOOD'S EQUITY INTEREST IN THE LSPS, AND OR (IV) POLLUTION EMANATING FROM THE PROPERTY OF THE FIELDWOOD GROUP, AND/OR LSPS NOT TO BE LIMITED BY FIELDWOOD'S EQUITY INTEREST IN THE LSPS IRRESPECTIVE OF CAUSE AND NOTWITHSTANDING THE NEGLIGENCE OR BREACH OF DUTY (WHETHER STATUTORY OR OTHERWISE), STRICT LIABILITY, OR THE UNSEAWORTHINESS OF ANY VESSEL USED IN CARRYING OUT THIS AGREEMENT, OF THE BP GROUP AND IRRESPECTIVE OF ANY CLAIM IN TORT, UNDER CONTRACT OR OTHERWISE AT LAW, BUT STRICTLY EXCLUDING ANY CLAIMS TO THE EXTENT ATTRIBUTABLE TO THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY OF THE BP GROUP.

   c. EXCEPT TO THE EXTENT OTHER INDEMNITY PROVISIONS IN THIS AGREEMENT APPLY: (I) FIELDWOOD SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS THE BP GROUP FROM AND AGAINST ANY CLAIMS ARISING OUT OF PERSONAL INJURY, DEATH, AND PROPERTY DAMAGE TO THIRD PARTIES ARISING IN CONNECTION WITH THE ACTIVITIES CONTEMPLATED UNDER THIS AGREEMENT, TO THE EXTENT OF AND IN PROPORTION TO THE NEGLIGENCE, BREACH OF DUTY (WHETHER STATUTORY OR OTHERWISE), STRICT LIABILITY, OR OTHER FAULT OF THE FIELDWOOD GROUP; AND (II) BP SHALL BE RESPONSIBLE FOR AND SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS THE FIELDWOOD GROUP FROM AND AGAINST ANY CLAIMS ARISING OUT OF PERSONAL INJURY, DEATH, AND PROPERTY DAMAGE TO THIRD PARTIES ARISING IN CONNECTION WITH THE ACTIVITIES CONTEMPLATED UNDER THIS AGREEMENT, TO THE EXTENT OF AND IN PROPORTION TO THE NEGLIGENCE, BREACH OF DUTY (WHETHER STATUTORY OR OTHERWISE), STRICT LIABILITY, OR OTHER FAULT OF THE BP GROUP.

   d. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, THE DAMAGES FOR WHICH A PARTY IS ENTITLED TO RECOVER UNDER THIS AGREEMENT SHALL NOT INCLUDE ANY INDIRECT, SPECIAL, CONSEQUENTIAL (INCLUDING LOST PROFITS, LOSS OF PRODUCTION OR OTHER DAMAGES ATTRIBUTABLE TO BUSINESS INTERRUPTION), INCIDENTAL, EXEMPLARY OR PUNITIVE DAMAGES, FINES, OR PENALTIES (COLLECTIVELY, "CONSEQUENTIAL DAMAGES"), AND EACH PARTY EXPRESSLY RELEASES THE OTHER FROM ALL CLAIMS FOR SUCH CONSEQUENTIAL DAMAGES.

   e. Solely for purposes of this Section 4 of this Agreement, capitalized terms used in this Section 4 shall have the

following meanings set forth below:

    i.    Gross Negligence or Willful Misconduct

Shall mean, with respect to a Party, any act or failure to act (whether sole, joint or concurrent) by such Party's Senior Supervisory Personnel which was intended to cause, or which was in reckless disregard of or wanton indifference to, harmful consequences that such person or entity knew, or should have known, such act or failure would have on the safety or property of another person or entity, or on the environment, or any property purchased for the Joint Account.

    ii.    Senior Supervisory Personnel

Senior Supervisory Personnel means, with respect to a Party, either (a) any director or officer of such Party, or (b) any individual who functions for such Party or one of its affiliates at a management level equivalent or superior to any individual functioning as such Party's senior manager(s) who has authority over such Party's seismic acquisition, drilling, construction or production and related operations and activities in the deepwater OCS in the Gulf of Mexico sufficient to direct the manner in which such operations and activities are conducted. Senior Supervisory Personnel excludes all individuals functioning at a level below any individual described in (b) above, as well as any operational and field staff or third-party contractors.

5. In the event of a conflict between the provisions of this Agreement and the PHA, LSPS OA, or both, this Agreement prevails.

6. This Agreement authorizing Fieldwood to perform operations on the LSPS is a good will gesture by BP, and by agreeing to the terms set forth in this Agreement, BP and Fieldwood are neither setting precedent for future tie-in operations nor waiving any rights they may have or positions they may take under the applicable agreements.

7. This Agreement will be governed by Texas law without regard to principles of conflicts of laws that would refer the matter to the laws of another jurisdiction. Any dispute will be governed by the Dispute Resolution Procedure set forth in the PHA. This Agreement and all operations conducted by BP and Fieldwood pursuant to this Agreement, are expressly subject to and shall comply with all applicable laws, orders, rules, and regulations of any federal, state or local governmental authority having jurisdiction hereof.

8. Fieldwood has consulted with its co-owners and is authorized to comply with the terms and conditions set forth in this Agreement.

If the terms and conditions are acceptable to BP and Fieldwood, please sign in the space indicated below.

Regards,

*[signature]*

Amanda Thilman

AGREED TO AND ACCEPTED THIS __31st__ DAY OF __January__, 2020

**BP EXPLORATION & PRODUCTION INC.**

By: *Danielle Scott*
Name: Danielle Scott
Title: Land Manager

**Fieldwood Energy LLC**

By: *[signature]*
Name: John Seeger
Title: SVP - Operations