IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY LLC | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | Adversary No. 20-03497 |
| | § | |
| VALERO MARKETING AND | § | |
| SUPPLY COMPANY | § | |
|     Defendant. | § | |
| | § | Related to bankruptcy case no 20-33948 |
| | § | pending before the US Bankruptcy Court, |
| | § | Southern District of Texas. |

## PLAINTIFF FIELDWOOD ENERGY LLC'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT AND
## BRIEF IN SUPPORT THEREOF

Plaintiff/Counter-Defendant Fieldwood Energy LLC ("Fieldwood") files its

Motion for Partial Summary Judgment in opposition to Valero Marketing and Supply

Company's ("Valero") breach of contract counterclaim. As authorized by Federal Rule

of Bankruptcy 7056 and Federal Rule of Civil Procedure 56, Fieldwood would show the

Court as follows:

## I.    INTRODUCTION

1.    The Parties agreed that, prior to any discovery being conducted, they

would file cross-motions for summary judgment on the issue of whether Valero can

prevail on its breach of contract counterclaim as a result of Fieldwood's not delivering

crude oil in May 2020.[1]  This Court entered a Case Management Order setting March 9, 2021 as the briefing deadline for such summary judgment motions. (Dkt. No. 12).

## II.    SUMMARY OF ARGUMENT

2.    This case arises from Valero's refusal to pay Fieldwood $2,102,544.00 out of a $3,090,564.29 invoice for Fieldwood's delivery of crude oil to Valero in April 2020. Fieldwood and Valero were parties to an evergreen crude oil purchase contract (the "Purchase Contract") wherein Fieldwood was the seller and Valero was the Buyer. Valero short-paid the April invoice because of damages Valero allegedly suffered because of Fieldwood's nondelivery of the May 2020 crude oil. In short, Valero effectuated a set off claim even though the Purchase Contract's Payment Terms expressly prohibit any deduction, withholding, offset or counterclaim.

3.    The Purchase Contract is not a guaranteed supply contract. It only requires Fieldwood to deliver "actual production" from specific fields.  In May 2020, in response to the collapse of oil demand, Fieldwood shut in its wells associated with the designated fields.  Thus, Fieldwood had no production to deliver in May 2020.  Consequently, Fieldwood did not breach the Purchase Contract and Valero has no damages. Additionally, in April 2020, Fieldwood provided Valero with advance notice that it would not deliver oil in May 2020.

4.    Valero relies on U.C.C. § 2-713 as its legal basis for its $2,102,544.00 self-help set off, noting that this provision allows a buyer the right to sue for damages if the seller

---

[1] The resolution of this issue will determine the direction of the remainder of this Adversary Proceeding.

fails to deliver. However, § 2-713 also says that the buyer's damages must be reduced by "expenses saved." Here, Valero did not go out into the market and purchase crude after it learned Fieldwood would not deliver. In fact, Valero did nothing – likely because it did not want or need any more crude oil in May 2020, as domestic and global demand had collapsed. Regardless, Valero seeks a market-damages remedy for Fieldwood's nondelivery (contract price v. spot market price) under UCC § 2-713. However, Valero fails to take into account that it saved money by not having to buy any replacement crude oil. Thus, even if there was a breach of contract, which there was not, Valero's damages were $0. In essence, by not buying replacement/cover oil but still seeking cover like damages, Valero seeks to gain a windfall. This is not allowed.

5. Additionally, Fieldwood's contractual obligation to produce—and therefore deliver—oil was made impracticable and not required under the Purchase Contract because of the drop in demand and oil prices associated with the unforeseeable global pandemic.

## III.   SUMMARY JUDGMENT EVIDENCE

6. In support of this Motion for Partial Summary Judgment, Fieldwood incorporates the following summary judgment evidence:

Exhibit A: Declaration of Jim Brysch

Exhibit A-1: Purchase Contract entered dated June 7, 2018

Exhibit A-2: Invoice No. FW-70-042020

## IV.    STATEMENT OF UNDISPUTED FACTS

7.    Fieldwood, an upstream oil and gas operator and producer, and Valero, a refiner and marketer of petroleum products, entered into a Purchase Contract dated June 7, 2018, for the sale of crude oil. Fieldwood agreed to sell and deliver oil from designated offshore fields to a designated pipeline operated by Valero. *See* Exhibit A-1 at p. 2. The Purchase Contract is an "evergreen" contract, meaning that the contract remains in effect until either party terminates with 30 days written notice. Ex. A-1 at p. 1.

8.    In practice, each month Fieldwood would inform Valero of the estimated crude oil volume it planned to deliver the following month. *See* Ex. A, ¶6. The actual amount of crude oil delivered could differ from the estimate depending on production issues. *Id.*

9.    The Quantity section in the Purchase Contract provides:

```
QUANTITY
    620,000.000 Barrel 60°F
APPROXIMATELY 10,000 BARRELS PER DAY.

TOLERANCE:  PER ACTUAL PRODUCTION ABOUT 49.5 PERCENT OF NOBLE'S SHARE (BIG
BEND/DANTZLER).
```

Exhibit A-1 at p. 2.[2]

10.    For example, in April 2020, Fieldwood delivered 195,000 barrels of oil to Valero: an average of 6,500 barrels per day. *Exhibit A ¶9; Exhibit A-2.* Valero accepted these daily volumes and made no complaint that Fieldwood did not deliver 10,000 barrels per day for April 2020. Exhibit A, ¶9.

---

[2] As set forth in Exhibit A,¶3, Noble was Fieldwood's predecessor in interest; thus, Noble's 49.5% share is now Fieldwood's 49.5% share.

11.     In April 2020, amid the global pandemic caused by the SARS-CoV-2 virus, global demand for crude oil was plummeting as did the price of crude.[3] Because it did not make economic sense to continue production, Fieldwood decided to shut in the well associated with the Big Bend/Dantzler fields.  Exhibit A ¶12. In April 2020, Fieldwood notified Valero that it would not deliver any oil in May 2020.

12.     After notifying Valero that it would not deliver oil to Valero in May 2020, Fieldwood later, on April 29, 2020, sent Valero an official notice terminating the Purchase Contract effective May 30, 2020, pursuant to the "Term" section of the Purchase Contract. *See* Exhibit A-1 at p. 1.

13.     On May 15, 2020, Fieldwood sent Valero Invoice No. FW-70-042020 in the amount of $3,090564.29 for the April 2020 deliveries. *See* Exhibit A-2. Payment was due from Valero on or before May 20, 2020. *Id*.

14.     Valero does not contest that it owed $3,090,564.29 for the April 2020 delivery of 195,000 barrels crude oil. (Dkt. No. 4 ¶9).

15.     Rather than pay $3,090,564.20 for the April 2020 oil, Valero paid only $988.020.29, leaving $2,102,544.00 unpaid. *Id*.

16.     Valero admits that it did not pay this amount and did not exercise its cover rights by purchasing oil from alternative sources for May 2020. *Id.*

---

[3] *See* Kevin M. Camp, David Mead, Stephen B. Reed, Christopher Sitter, and Derek Wasilewski, *From the barrel to the pump: the impact of the COVID-19 pandemic on prices for petroleum products,* Monthly Labor Review, U.S. Bureau of Labor Statistics, October 2020, https://doi.org/10.21916/mlr.2020.24.

## V.     LEGAL STANDARD

17.     Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp,* 37 F.3d 1069, 1075 (5th Cir. 1994).

## VI.    ARGUMENT

### A. Because Fieldwood had no production from the Big Bend/Dantzler fields to deliver in May 2020, Fieldwood did not breach the Purchase Contract.

18.     Valero must prove the following essential elements to support a claim for breach of contract against Fieldwood: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.,* 884 F.3d 239, 244 (5th Cir. 2018) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

19.     The primary concern when courts construe a written contract is to ascertain the parties' true intent as expressed in the contract. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005) (citing *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003); *Gulf Ins. Co. v. Burns Motors, Inc.,* 22 S.W.3d 417, 423 (Tex. 2000). When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex.2006). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to

6

the whole instrument." *Tawes v. Barnes,* 340 S.W.3d 419, 425 (Tex. 2011) (citing, *Coker,* 650 S.W.2d at 393).

20.     Terms are given their plain, ordinary, and generally accepted meanings unless the agreement itself shows the terms to be used in a technical or different sense. *Heritage Res., Inc., v. NationsBank*, 939 S.W.2d 118, 121–22 (Tex. 1996).

### i. Texas Business and Commerce Code section 2.306 does not apply to the Purchase Contract.

21.     Valero claims that the Purchase Contract is an output contract governed by Texas Business & Commerce Code section 2.306.  Section 2.306 provides:

**Sec. 2.306.  OUTPUT, REQUIREMENTS AND EXCLUSIVE DEALINGS.**

(a)  A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

(b)   A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

Section 2.306 is a "gap-filler" provision under the U.C.C.  *See Lenape Resources Corporation v. Tennessee Gas Pipeline Company,* 925 S.W.2d 565, 570 (Tex. 1996). Its purpose is to render "output and requirements contracts sufficiently definite as to quantity and enforceable by reading into such contracts a quantity that is actual good faith output or requirements of the particular party." *Id.; Tex. Bus. Com. Code § 2.306 cmt. 2.*

22.     In *Lenape Resources Corporation v. Tennessee Gas Pipeline Company,* the Texas Supreme Court evaluated whether § 2.306 applied to a take-or-pay gas contract. In its analysis, the court first noted that gap filler provisions such as § 2.306 may be varied by the parties, such that even if the U.C.C. applies to a transaction, the parties may contract around various parts of the U.C.C. *Id.* at 570, *citing, Tex. Bus. & Co. Code § 1.102(c).* The court went on to note that:

> § 2.306 fills in the quantity term only when a contract does not unambiguously specify the quantity of the output of the seller . . . . It does not apply when the contract either specifies a numeric quantity or provides a standard for determining a specific quantity. *See Riegel Fiber Corp. v. Anderson Gin Co.,* 512 F.2d 784, 790 (5th Cir.1975) (contract for sale of cotton sufficiently definite when quantity may be determined from acreage covered by contract and estimated yield of acreage); *Fort Hill Lumber Co. v. Georgia–Pacific Corp.,* 261 Or. 431, 493 P.2d 1366, 1368 (1972) (contract not indefinite when contract for purchase of all timber logged provided method for determining quantity).

*Id at 570.* Because the quantity provision in the Purchase Contract is sufficiently definite, § 2.306 does not apply.

23.     The Quantity section of the Purchase Contract provides:

QUANTITY
  620,000.000 Barrel 60°F
APPROXIMATELY 10,000 BARRELS PER DAY.

TOLERANCE:  PER ACTUAL PRODUCTION ABOUT 49.5 PERCENT OF NOBLE'S SHARE (BIG BEND/DANTZLER).

Exhibit A-1 at p. 2

The Purchase Contract required Fieldwood to deliver approximately 10,000 barrels of oil a day each month. *Id.* However, that amount is limited by a Tolerance of "per actual production" from the Big Bend/Dantzler fields. *See* Exhibit A; Exhibit A-1. Thus, the

Purchase Contract required Fieldwood to deliver its actual production from the Big Bend/Dantzler fields, whether that was more or less than 10,000 barrels per day. Exhibit A-1 at p. 2. Although the monthly output may vary, the Purchase Contract specifically identifies how to determine quantity: Fieldwood's share of production from the Big Bend/Dantzler fields. Consequently, § 2306 is inapplicable.

### ii. Fieldwood had no obligation to deliver oil in May 2020 because it had no actual production from the Big Bend/Dantzler fields.

24.     The only reasonable construction of the Quantity section of the Purchase Contract is that the crude oil quantity required to be delivered is limited by the actual production of Fieldwood's 49.5% share of production from the Big Bend and Dantzler fields. In April 2020, Fieldwood delivered 195,000 barrels of oil to Valero – an average of 6,500 barrels per day. *See* Exhibit A ¶ 9. Valero accepted and did not object to that delivery volume. Exhibit A ¶ 9. In May 2020, Fieldwood had no actual production from the Big Bend/Dantzler fields. Exhibit A ¶ 12. Consequently, it had no obligation to deliver oil under the Purchase Contract in May 2020. Thus, for this simple yet dispositive reason Fieldwood did not breach the Purchase Contract.

### iii. Even if UCC § 2.306 applies, Fieldwood acted in good faith and did not breach the Purchase Contract

25.     Comment 1 to section 2.306 places a duty of good faith on parties operating under an output contract:

1. Subsection (1) of this section, in regard to output and requirements, applies to this specific problem the general approach of this Act which requires the reading of commercial background and intent into the language of any agreement and demands good faith in the performance of

that agreement. It applies to such contracts of nonproducing establishments
such as dealers or distributors as well as to manufacturing concerns.

*See* Tex. Bus. & Com. Code § 2.306 cmt. 1.  Even if the Court determines that § 2.306

applies to the Purchase Contract, which Fieldwood argues it does not, Fieldwood acted

in good faith in deciding to shut in wells in May 2020.  Fieldwood did not make a one-off

company specific decision to shut in wells; it was responding to a historic--and

theretofore never seen—combination of drastic production *increases* in the face of historic

demand and storage *decreases*.  Although this Court no doubt recalls this period well, the

United States Bureau of Labor Statistics produced an October 2020 report entitled "From

the barrel to the pump: the impact of the COVID-19 pandemic on the prices for petroleum

products" that provides a vivid reminder of how dire the oil market was in the lead up

to May 2020:

> By the beginning of April, OPEC had raised output by 1.7 million barrels
> per day, up to a level of 30.4 million barrels per day, the largest production
> jump since September 1990. According to Bloomberg, Saudi Arabia alone
> reached a record production of 12.3 million barrels per day on April 1, an
> output exceeding the pre-pandemic consumption levels of Japan, Germany,
> France, the United Kingdom, Italy, and Spain combined. The production
> boom coincided with an International Energy Agency (IEA) estimate that
> global demand for oil was down by almost 30 million barrels per day
> because of the shutdowns in response to the COVID-19 pandemic. With
> demand down, the addition of petroleum to an already saturated market
> led to a near-record level of 535.2 million barrels of crude petroleum
> stockpiles in the United States on May 1.
>
> Prices dropped precipitously in March and April 2020. The combination of
> falling demand, rising supply, and diminishing storage space caused such
> a pronounced crude petroleum price plunge that, on April 20, crude
> petroleum traded at a negative price in the intraday futures market.
> Producer prices for crude petroleum declined 34.0 percent in March and
> 48.8 percent in April. In all, the PPI for crude petroleum fell 71.0 percent
> from January to April. The March and April decreases were the two largest

monthly declines since the index was first published in July 1991. The trend was similar for U.S. import prices. The Import Price Index for crude petroleum declined 34.1 percent in March and 36.6 percent in April. In all, prices for crude petroleum imports fell 62.8 percent from January to April. As was the case with producer prices, the March and April declines in the Import Price Index were the largest 1-month decreases since the index was first published on a monthly basis in September 1992.[4]

Fieldwood reacted to these unprecedented market conditions the same reasonable way that other US producers did--curtailing production.  In this instance, Fieldwood shut-in wells associated with the Big Bend/Dantzler fields along with wells in numerous other fields.

26.     While Fieldwood does not believe that § 2.306 applies, even if it does, Fieldwood did not breach the Purchase Contract.

**B.  Valero was not damaged as a result of Fieldwood not delivering oil in May 2020.**

27.     Even if the Court were to find that Fieldwood did breach the Purchase Contract, which we believe clearly did not occur, Valero did not suffer any damages.  To prove an action for breach of contract, the plaintiff must establish the defendant's breach caused an injury. *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 355 (Tex. App.—San Antonio 1998, pet. denied). Furthermore, to recover damages for breach of contract a plaintiff must establish that it suffered a pecuniary loss as a result of the breach. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex.App.-El Paso 2000, no pet.); *see also Eckland Consultants, Inc. v. Ryder, Stilwell, Inc.*, 176 S.W.3d 80, 89 (Tex. App.—Houston [1st

---

[4] Kevin M. Camp, David Mead, Stephen B. Reed, Christopher Sitter, and Derek Wasilewski, *From the barrel to the pump: the impact of the COVID-19 pandemic on prices for petroleum products*, Monthly Labor Review, U.S. Bureau of Labor Statistics (October 2020), https://doi.org/10.21916/mlr.2020.24.

Dist.] 2004, no pet.) ("A breach of contract claim cannot survive if the plaintiff was not damaged by the breach.").

28.     It is unquestionable that (i) Fieldwood did not deliver oil in May 2020 because of shut-in wells, (ii) Valero never paid for oil in May 2020, and (iii) Valero did not suffer any loss as a consequence of Fieldwood's nondelivery. Despite having the opportunity to purchase replacement oil from other sources for delivery in May 2020, Valero chose not to do so. (Dkt. No. 4). Valero took no steps to acquire oil on the spot market in April when it knew that Fieldwood was not going to deliver any oil in May. (Dkt. No. 4). And Valero paid no money to Fieldwood for May oil deliveries. Exhibit A ¶15. Thus, Valero suffered no loss as a result of Fieldwood's nondelivery of oil in May 2020.

29.     Despite suffering no economic loss, Valero seeks a windfall by claiming damages under section 2.713 of the Texas Business and Commerce Code. Section 2.713 provides that, upon a finding of liability by a seller, an aggrieved buyer is entitled to damages measuring "the difference between the market price at the time when the buyer learned of the breach and the contract price … **but less expenses saved in consequence of the seller's breach**." Tex. Bus. & Com. Code Ann. § 2.713.

30.     Valero admits that it did not exercise its cover rights and so is seeking damages based upon a "market price" theory of recovery. What Valero does not acknowledge are the expenses it saved by not taking delivery of crude oil in May 2020. Valero undisputedly saved the cost of acquiring approximately 10,000 barrels a day for

the month of May 2020.[5]  Further, there is no evidence that Valero had the storage capacity to hold that much crude oil at a time when, nationwide, crude oil demand and storage capacity was at an all-time low.[6]  Accordingly, Valero did not suffer any injury and has no demonstrable damages for Fieldwood's nondelivery of oil in May 2020.

### C. Fieldwood was excused from delivering May 2020 crude oil due to the doctrine of impracticability.

31.     In the unlikely event that the Court finds Fieldwood breached the Purchase Contract, in addition to the reasons explained above that, by themselves, render a breach nonactionable, any breach was excused due to impracticality because Fieldwood's performance under the Purchase Agreement was made impracticable by the unforeseeable COVID-19 global pandemic.

32.     Under Texas law, when a party's performance is made impracticable by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992) (*citing* Restatement (Second) of Contracts § 261 (1981)).

33.     The Texas Uniform Commercial Code provides the statutory defense of impracticability applicable to the sale of goods:

---

[5] While not the subject of this brief, Fieldwood denies that it was obligated to deliver 10,000 barrels of oil per day under the Purchase Contract.

[6] Kevin M. Camp, David Mead, Stephen B. Reed, Christopher Sitter, and Derek Wasilewski, *From the barrel to the pump: the impact of the COVID-19 pandemic on prices for petroleum products,* Monthly Labor Review, U.S. Bureau of Labor Statistics (October 2020), *https://doi.org/10.21916/mlr.2020.24.*

> [N]on-delivery in whole or in part by a seller … is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made …

Tex. Bus. & Com. Code Ann. § 2.615.

34.     It is undisputed that the COVID-19 global pandemic brought about unprecedented conditions and economic devastation, causing a collapse of the oil and gas market.[7] The COVID-19 pandemic combined with an increase in production from certain foreign producers was an unforeseeable event, the non-occurrence of which was a basic assumption when Fieldwood and Valero entered into the Purchase Contract in 2018. Ex. A, ¶_.

35.     It is undisputed that **both parties** held a basic assumption that a global pandemic that would crush economies around the world would not occur, contributing to a price crash of oil, when they entered into the Purchase Contract. *See Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 65 (Tex. App.—Houston [14th Dist.] 2003), opinion supplemented on overruling of reh'g, 118 S.W.3d 929 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that because courts cannot simply rewrite the parties' contract, the excuse is limited to circumstances in which both parties held a basic (though unstated) assumption about the contract that proves untrue.). Any contention otherwise (*i.e.*, that Valero could have anticipated the pandemic and its effects on the oil industry when it entered into the contract in 2018) would be misleading.

---

[7] *Id.*

36.     In April 2020, the price for May 2020 delivery of crude oil plummeted by more than $48 per barrel and actually went negative.[8] This collapse in demand made producing oil commercially impracticable, so Fieldwood shut in the offshore fields associated with the Purchase Contract as well as many others. Exhibit A, ¶_. Because the performance of delivering crude oil in May was legally impracticable due to supervening highly unanticipated events, Fieldwood's obligation to deliver the oil was excused.

37.     Accordingly, as a matter of law, Fieldwood was excused from delivering crude oil to Valero's designated pipeline for May 2020.

### PRAYER

For the foregoing reasons, Plaintiff Fieldwood Energy LLC prays that the Court grant its Motion for Partial Summary Judgment and dismiss Defendant Valero Marketing and Supply Company's claim for breach of contract, and grant it all other relief to which it shows itself entitled.

Respectfully submitted,

BUCK KEENAN LLP

By:  /s/Robert L. Paddock
ROBERT L. PADDOCK
State Bar No. 24002723
E. F. MANO DEAYALA
State Bar No. 00783946
HELEN H. MCLAUGHLIN
State Bar No. 24087706
2229 San Felipe, Suite 1000
Houston, Texas 77019
(713) 225-4500
(713) 225-3719 - Telecopier

---

[8] *Id.*

rpaddock@buckkeenan.com
deayala@buckkeenan.com
hmclaughlin@buckkeenan.com

ATTORNEYS FOR PLAINTIFF
FIELDWOOD ENERGY LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record via CM/ECF filing and in compliance with the Federal Rules of Civil Procedure, on the 9th day of March 2021.

*/s/Robert L. Paddock*
ROBERT L. PADDOCK

# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY LLC | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | Adversary No. 20-03497 |
| | § | |
| VALERO MARKETING AND | § | |
| SUPPLY COMPANY | § | |
|     Defendant. | § | |
| | § | Related to bankruptcy case no 20-33948 |
| | § | pending before the US Bankruptcy Court, |
| | § | Southern District of Texas. |

### DECLARATION OF JAMES P. BRYSCH

My name is James P. Brysch, my title is Vice President – Marketing for Fieldwood Energy LLC. I am over 18 years old and qualified to make this Declaration. I am making this declaration in accordance with 28 U.S.C. §1746. I have personal knowledge of the statements made herein and they are true and correct:

1.    Attached as Exhibit A-1 to this Affidavit is the Purchase Contract between Fieldwood Energy LLC ("Fieldwood") and Valero Marketing and Supply Company ("Valero"). Valero drafted the Purchase Contract. The Purchase Contract involved the sale of crude oil from Fieldwood to Valero.

2.    The Purchase Contract's "Quantity", located on page 2, provides:

QUANTITY
   620,000.000 Barrel 60°F
APPROXIMATELY 10,000 BARRELS PER DAY.

TOLERANCE: PER ACTUAL PRODUCTION ABOUT 49.5 PERCENT OF NOBLE'S SHARE (BIG BEND/DANTZLER).

3.    The reference to "Noble's Share" is a misnomer inserted by Valero from a previous, and almost identical, purchase contract between Valero and Noble Energy, Inc ("Noble"). In or around early 2018, Fieldwood acquired an interest in the Big Bend and Dantzler offshore oil fields from Noble, and Fieldwood began selling oil to Valero in July 2018. While Fieldwood did not correct this statement, it was clear to Fieldwood that this statement referred to the interest it acquired from Noble, Fieldwood's predecessor-in-

interest. Furthermore, the quantity of "620,000" Barrel is most likely a typographical error that should have read "310,000 Barrel" to reflect the approximate 10,000 barrels per day and per month quantity.

4.      "Big Bend/Dantzler" is a reference to two fields located offshore in the Gulf of Mexico that are produced from a single production facility. Fieldwood, as assignee from Noble, owns an interest in the Big Bend/Dantzler fields. Thus, under the Purchase Contract, Fieldwood was delivering oil produced from the Big Bend and Dantzler fields.

5.      The Purchase Contract is not a guaranteed supply contract, but merely an agreement by Fieldwood to deliver oil from the designated offshore fields.

6.      Despite the Purchase Contract's Quantity specification, in practice Fieldwood would inform Valero in advance each month the volume of oil it planned to deliver and then deliver that volume, adjusted during the delivery month for any material changes in the actual production.

7.      The Purchase Contract is an evergreen contract, and remains in effect until either party terminates with 30 days advance written notice.

8.      In the four months prior to July 2018 (the first month of sales to Valero under the Purchase Contract), the daily average of Fieldwood's owned and controlled share of production from the Big Bend and Dantzler fields equated to approximately 9,987 barrels per day. Thus, upon entering into the Purchase Contract, Fieldwood was committing to deliver all of its share of the daily barrels available for sale from the Big Bend and Dantzler fields. From the date of entry of the Purchase Contract, Fieldwood delivered all of its share of production sold from the Big Bend/Dantzler fields to Valero.

9.      In April 2020, Fieldwood delivered 195,000 barrels of oil to Valero under the Purchase Contract. This was approximately 6,500 barrels of oil a day. Valero took delivery of the oil without objection. The "Payment Terms" located on page 2 of the Purchase Contract provides:

PAYMENT TERMS:
PAYMENT SHALL BE MADE ON THE 20TH OF THE MONTH FOLLOWING DELIVERY BY WIRE TRANSFER OF IMMEDIATELY AVAILABLE FUNDS WITHOUT DISCOUNT, DEDUCTION, WITHHOLDING, OFFSET OR COUNTERCLAIM IN U.S. DOLLARS ON OR BEFORE THE PAYMENT DUE DATE TO THE BANK AND ACCOUNT DESIGNATED BY SELLER, AGAINST PRESENTATION TO BUYER BY SELLER OF ORIGINAL HARD COPY, TELECOPY, OR TELEX INVOICE TOGETHER WITH SUPPORTING DOCUMENTATION EVIDENCING BOOK, STOCK, INVENTORY TRANSFER OR PIPELINE METER TICKETS.

10.      On May 15, 2020, Fieldwood invoiced Valero $3,090,564.29 for the 195,000 barrels of oil. A true and correct copy of Invoice No. FW-70-042020 that was sent to Valero

is attached to this affidavit as Exhibit A-2. Payment was due to Fieldwood on May 20, 2020.

11.     In April 2020, as the COVID-19 pandemic was surging, foreign oil producers were increasing production, storage capacity was dwindling and lock down orders were put into effect across the world, the demand for crude oil, along with the oil price, plummeted.

12.     Considering those market conditions existing at the time, rather than being exposed to the likelihood of producing and selling its May 2020 oil at a loss, Fieldwood made the rational economic decision to suspend the vast majority of its company-wide production, including production from the Big Bend/Dantzler fields. Accordingly, Fieldwood informed Valero in late April 2020 that it would not have any volumes to deliver under the Purchase Contract. Fieldwood's Big Bend/Dantzler fields did not produce any volumes of crude oil in the month of May 2020.

13.     On April 27, 2020, Fieldwood sent Valero written notice that Fieldwood was shutting in production from the Big Bend/Dantzler fields due to COVID-19 and would not be delivering oil for May 2020.

14.     On April 29, 2020 Fieldwood sent notice to Valero that it was terminating the Purchase Contract, effective May 30, 2020.

15.     On May 15, 2020, Fieldwood sent Valero Invoice No. FW-70-042020 in the amount of $3,090,564.29 for the April 2020 deliveries. See Exhibit A-2. Payment was due on or before May 20, 2020. Valero only paid Fieldwood $988,020.29 leaving $2,102,544.00 unpaid. Valero has failed to pay Fieldwood the outstanding $2,102,544.00 to present day.

16.     The Purchase Contract was entered into based on the basic assumption that a worldwide coronavirus pandemic would not occur.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 9, 2021.

James P. Brysch

# Exhibit A-1



# VALERO
## MARKETING AND SUPPLY COMPANY

One Valero Way, San Antonio, TX 78249-1616
P.O. Box 696000, San Antonio, TX 78269-6000

Purchase From:                                    (Printed on 06/13/2018)

**FIELDWOOD ENERGY LLC**
**2000 W SAM HOUSTON PKWY S, SUITE 12**
**HOUSTON TX 77042**

Contact: JOHNNY DOBECKA
Fax:    713-969-1099

**Purchase Contract**

Contract number/date
**4200144305 / 06/07/2018**

Contract Type
**Evergreen**

Vendor No
**525116**

Validity Period
**07/01/2018 to 12/31/9999**

Valero Trader
**JORGE PARRA**

Telephone
**210-345-2273**

Contract Administration
**KRISTIN KIOLBASSA**

PLEASE NOTE THAT VALERO MARKETING AND SUPPLY COMPANY'S ("VALERO") CONTRACT
ADMINISTRATION FAX NUMBER IS 001-210-345-2585. ALL CONTRACTUAL CORRESPONDENCE FOR
THIS DEAL MUST BE DIRECTED TO THIS FAX NUMBER. VALERO MARKETING AND SUPPLY COMPANY
WILL NOT BE DEEMED TO HAVE NOTICE OF CORRESPONDENCE SENT TO ANY OTHER NUMBER, AND
WILL NOT BE RESPONSIBLE FOR ANY LOSSES, COSTS, LIABILITIES OR DELAYS RESULTING FROM
CORRESPONDENCE SENT TO ANY OTHER NUMBER.

IN ACCORDANCE WITH THE AGREEMENT ON 06/07/2018 BETWEEN JORGE PARRA OF VALERO
MARKETING AND SUPPLY COMPANY AND JOHNNY DOBECKA OF FIELDWOOD ENERGY LLC, VALERO IS
PLEASED TO CONFIRM THE FOLLOWING SALES CONTRACT.

TERM:   JULY 1, 2018 AND FORWARD, CONTINUING ON A MONTH TO MONTH BASIS UNTIL CANCELLED
BY EITHER PARTY PROVIDING THIRTY (30) DAYS PRIOR WRITTEN NOTICE OF CANCELLATION.

PLEASE REFER TO VALERO'S CONTRACT NUMBER ON ALL CORRESPONDENCE.

To: 713-969-1099     From: VALERO     Fax: 210-444-8500     Powered by KOFAX     at: JUN-13-2018-11:51   Doc: 729 Page: 002

**FIELDWOOD ENERGY LLC**
**HOUSTON TX 77042**

| Contract number/date | Page |
|---|---|
| 4200144305 / 06/07/2018 | 2 of 5 |

***** ITEM 00010 *****
PRODUCT
THUNDERHORSE

SPECIFICATIONS
MEETING CURRENT QUALITY SPECIFICATIONS FOR THUNDERHORSE CRUDE OIL

QUANTITY
  620,000.000 Barrel 60°F
APPROXIMATELY 10,000 BARRELS PER DAY.

TOLERANCE:  PER ACTUAL PRODUCTION ABOUT 49.5 PERCENT OF NOBLE'S SHARE (BIG
BEND/DANTZLER).

DELIVERY
INTO BUYER'S NOMINATED PIPELINE EX-CLOVELLY CAVERN AT CLOVELLY, LOUISIANA, VIA
MUTUALLY AGREEABLE SCHEDULING OR VIA ACCEPTABLE BOOK, STOCK, OR INVENTORY TRANSFER.

PRICE
THE ARITHMETIC AVERAGE OF THE NYMEX DAILY SETTLEMENT PRICES REPORTED PER BARREL FOR
WTI (TRADING DAYS ONLY) FUTURES CONTRACTS FOR THE MONTH DURING WHICH THE PRODUCT IS
DELIVERED, PLUS

THE ARGUS WTI DIFF TO CMA NYMEX (WEIGHTED AVERAGE) PER BARREL FOR THE TRADE MONTH,
PLUS

THE ARGUS THUNDERHORSE QUOTE DIFF TO WTI (WEIGHTED AVERAGE) PER BARREL FOR THE TRADE
MONTH

---

**PAYMENT TERMS:**
PAYMENT SHALL BE MADE ON THE 20TH OF THE MONTH FOLLOWING DELIVERY BY WIRE TRANSFER OF
IMMEDIATELY AVAILABLE FUNDS WITHOUT DISCOUNT, DEDUCTION, WITHHOLDING, OFFSET OR
COUNTERCLAIM IN U.S. DOLLARS ON OR BEFORE THE PAYMENT DUE DATE TO THE BANK AND
ACCOUNT DESIGNATED BY SELLER, AGAINST PRESENTATION TO BUYER BY SELLER OF ORIGINAL
HARD COPY, TELECOPY, OR TELEX INVOICE TOGETHER WITH SUPPORTING DOCUMENTATION
EVIDENCING BOOK, STOCK, INVENTORY TRANSFER OR PIPELINE METER TICKETS.

IF ANY PAYMENT UNDER THIS AGREEMENT FALLS DUE ON A SATURDAY OR A NON- MONDAY U.S.
BANK HOLIDAY IN NEW YORK, PAYMENT SHALL BE MADE ON THE FIRST BANKING DAY PRIOR
THERETO.  PAYMENTS FALLING DUE ON A SUNDAY OR A MONDAY U.S. BANK HOLIDAY IN NEW YORK
SHOULD BE MADE ON THE NEXT SUCCEEDING BANKING DAY.

IN THE EVENT OF A BOOK TRANSFER, FOR PARTIAL OR FOR FULL CONTRACTUAL VOLUME, OIL
COMBINATIONS INC. OR OIL DISTRIBUTION SERVICES'S DETERMINATION STATEMENT AND INVOICE

To: 713-969-1099    From: VALERO    Fax: 210-444-8500    KOFAX    at: JUN-13-2018-11:51  Doc: 729 Page: 003

**FIELDWOOD ENERGY LLC**
**HOUSTON TX 77042**

| Contract number/date | Page |
|---|---|
| 4200144305 / 06/07/2018 | 3 of 5 |

SHALL SERVE AS EVIDENCE OF THE BOOK TRANSFER.

IF APPLICABLE, NET-OUT INVOICES SHALL BE ACCORDING TO THE ESTABLISHED NET-OUT
AGREEMENT BETWEEN BUYER AND SELLER.

**CREDIT:**
OPEN CREDIT.

**TITLE AND RISK OF LOSS:**
EXCEPT AS OTHERWISE SPECIFIED IN THIS AGREEMENT, TITLE AND RISK OF LOSS SHALL PASS
FROM SELLER TO BUYER AT CLOVELLY, LA., AS FOLLOWS:
A.  WHEN DELIVERING ONTO OR RECEIVING OFF A VESSEL OR BARGE, AS THE
    PRODUCT PASSES THE PERMANENT INLET OR OUTLET FLANGE ON THE OUTBOARD
    END OF THE LAST VESSEL/BARGE-SUPPLIED REDUCER, FITTING, OR HOSE;
B.  WHEN DELIVERING INTO OR OUT OF A PIPELINE, AS THE PRODUCT
    RESPECTIVELY ENTERS OR LEAVES SUCH PIPELINE;
C.  WHEN DELIVERING INTO OR OUT OF A TRUCK, AS THE PRODUCT
    RESPECTIVELY ENTERS OR LEAVES SUCH TRUCK;
D.  WHEN DELIVERING INTO OR OUT OF A STORAGE TANK FACILITY, AS THE
    PRODUCT RESPECTIVELY ENTERS OR LEAVES THE INLET OR OUTLET FLANGE
    OF SUCH STORAGE TANK FACILITY;
E.  IN THE CASE OF A BOOK, IN-LINE, IN-TANK, INVENTORY OR STOCK
    TRANSFER, ON THE EFFECTIVE DATE OF THE RESPECTIVE TRANSFER.

**TAXES:**
SALES-RELATED TAXES ARE REIMBURSED BY BUYER IN ADDITION TO THE PURCHASE PRICE.  IF
ANY SALE OF PRODUCT PURSUANT TO THIS AGREEMENT SHALL BE SUBJECT TO SALES OR USE TAX,
EXCISE, GROSS RECEIPTS, OR OTHER TRANSACTION TAXES, FEES, LEVYS, LICENSE OR ANY
CHARGE IMPOSED BY A GOVERNMENTAL AUTHORITY WHICH SELLER IS OBLIGATED BY SUCH
GOVERNMENTAL AUTHORITY TO PAY, OR COLLECT AND REMIT, SUCH TAX SHALL BE BORNE BY THE
BUYER.  IT IS EXPRESSLY UNDERSTOOD THAT THE PRICE MUTUALLY AGREED TO BETWEEN SELLER
AND BUYER AS PROVIDED FOR HEREIN SHALL BE EXCLUSIVE OF SALES OR USE, EXCISE, GROSS
RECEIPTS OR OTHER TRANSACTION TAXES, FEES, LEVYS, LICENSE OR ANY CHARGE IMPOSED BY A
GOVERNMENTAL AUTHORITY INCLUDING APPLICABLE PENALTIES AND/OR INTEREST (REGARDLESS OF
WHEN, HOW, OR AGAINST WHICH PARTY SUCH TAX, PENALTY AND INTEREST IS IMPOSED) BY ANY
FEDERAL, STATE, OR LOCAL OR FOREIGN GOVERNMENT OR INSTRUMENTALITY THEREOF, UPON THE
SALE, TRANSFER OR DELIVERY OF ALL PRODUCT SOLD, TRANSFERRED OR DELIVERED BY SELLER
PURSUANT TO THIS AGREEMENT, OR UPON THE BUYER'S PURCHASE, POSSESSION, STORAGE, USE OR
CONSUMPTION THEREOF. IF PROPER EXEMPTION CERTIFICATES ARE NOT PROVIDED BY BUYER,
SELLER WILL BILL THE BUYER FOR APPLICABLE SALES, USE, EXCISE, GROSS RECEIPTS OR OTHER
TRANSACTION TAXES.  THIS PROVISION SHALL SURVIVE TERMINATION OF THIS AGREEMENT.

**NO SETOFF/NETTING:**
NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE TERMS AND CONDITIONS GOVERNING THIS
TRANSACTION, NEITHER PARTY HERETO SHALL HAVE THE RIGHT TO NET OR SET OFF ANY PAYMENTS
DUE FROM IT HEREUNDER AGAINST ANY PAYMENTS DUE OR ALLEGEDLY DUE TO IT OR ANY OF ITS
AFFILIATES FROM THE OTHER PARTY OR ITS AFFILIATES IN CONNECTION WITH ANY SEPARATE
TRANSACTION, UNLESS AND ONLY TO THE EXTENT THE PARTIES HAVE ENTERED INTO A SEPARATE

To:713-969-1099    From: VALERO    Fax:210-444-8500    Powered by KOFAX    at:JUN-13-2018-11:51    Doc:729 Page:004

**FIELDWOOD ENERGY LLC**
**HOUSTON TX 77042**

Contract number/date
**4200144305 / 06/07/2018**

Page
**4 of 5**

MASTER NETTING AGREEMENT OR SIMILAR AGREEMENT THAT EXPRESSLY PROVIDES FOR SUCH NETTING OF PAYMENTS.

**PAYMENT NETTING:**
PAYMENT NETTING SHALL APPLY ONLY TO AMOUNTS DUE WITH RESPECT TO U.S. DOMESTIC CRUDE OIL PRODUCTS AND SHALL NOT APPLY TO OTHER PRODUCT TRANSACTIONS.

**MEASUREMENT:**
QUANTITY DELIVERED HEREUNDER SHALL BE DETERMINED BY PIPELINE METER TICKET(S) ADJUSTED TO 60 DEGREES FAHRENHEIT OR DOCUMENTATION EVIDENCING BOOK, STOCK, OR INVENTORY TRANSFER.

**ASSIGNMENT:**
NEITHER PARTY SHALL ASSIGN THIS AGREEMENT OR ANY RIGHTS HEREUNDER WITHOUT THE WRITTEN CONSENT OF THE OTHER PARTY, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD.

**OTHER TERMS AND CONDITIONS:**
WHEN NOT IN CONFLICT WITH THE FOREGOING, THEN CONOCO INC.'S GENERAL TERMS AND CONDITIONS FOR DOMESTIC CRUDE OIL AGREEMENTS, DATED JANUARY 1,1993, WITH SHELL AMENDMENTS, SHALL APPLY AND ARE HEREBY INCORPORATED BY REFERENCE.

**TEXAS LAW AND JURISDICTION SHALL GOVERN THIS AGREEMENT.**

THESE SPECIFIC TERMS WILL GOVERN AND CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE PARTIES.  IT SUPERCEDES ANY PRIOR ORAL OR WRITTEN CORRESPONDENCE BETWEEN THE PARTIES INCLUDING ANY PREPARED AGREEMENT BY A BROKER.

**CONTACTS:**
```
  CONTRACTS:      KRISTIN KIOLBASSA   TEL: (210) 345-3465
                                      FAX: (210) 345-2585
                    E-MAIL: KRISTIN.KIOLBASSA@VALERO.COM

  CREDIT:     ROSA RAMIREZ    TEL: (210) 345-2743
                              FAX: (210) 345-2716

  INVOICE:        LARRY SMITH     TEL: (210) 345-2275
                                  FAX: (210) 444-8513
```

WE ARE PLEASED TO HAVE CONCLUDED THIS CONTRACT WITH YOUR COMPANY.

IF YOU ARE NOT IN AGREEMENT WITH ANY OF THE ABOVE PROVISIONS, PLEASE ADVISE BY RETURN TELEX OR TELECOPY TO THE ATTENTION OF KRISTIN KIOLBASSA, CONTRACT ADMINISTRATION DEPT. (FAX # 210/345-2585).  IF NO RESPONSE IS RECEIVED WITHIN TWO BUSINESS DAYS OF RECEIPT, THE TERMS AND CONDITIONS HEREIN SHALL BE CONSIDERED BINDING ON BOTH PARTIES.

REGARDS,
VALERO MARKETING AND SUPPLY COMPANY

Exhibit A-2

# Fieldwood Energy

**BILL TO:**          **Valero Marketing & Supply Company**
                     **Attn:** Jill Trowbridge

|  | | |
|---|---|---|
| **Email** | Jill.Trowbridge@valero.com | **INVOICE:** FW-70-042020 |
| **Phone** | **(210) 345-5812** | **INVOICE DATE:** 5/15/2020 |
| | | **Purchaser Code:** Valero |

| LEASE | Production<br>Month | Shelf<br>BARRELS | PRICE | AMOUNT |
|---|---|---|---|---|
| **Thunderhawk**<br>**MC 698/MC782** | 04/20 | 195,000 | $15.8490 | $    3,090,564.29 |
| | | **Total Due Fieldwood Energy, LLC** | | $    **3,090,564.29** |

**TERMS:**
  PAY BY WIRE TRANSFER ON OR BEFORE THE 20TH OF THE MONTH
  PLEASE INDICATE THE INVOICE REFERENCE ON THE PAYMENT

**NEW BANKING INSTRUCTIONS**
 SEND PAYMENT TO:
Account Name: Fieldwood Engy/FWFinco-DBNYSTEFFS
ABA: ███████
SWIFT: ███████
Account #: ███████
Financial Institution Name: Deutsche Bank Trust Company Americas
Reference: Finco Invoice No.
Attention: Commercial Loans Division

**REVENUE ACCOUNTING CONTACT:**
Linda Cobb
Phone: (713) 969-1273
linda.cobb@fwellc.com

| | | | Cal Nym/TR Nym/ | AR | | Grade | | | | Contract | Purchaser | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Field | Purchas | Posting Description | Crude Posting | P plus | Roll | Diff | PLA | Grav. | Quality | Trans./Adj | Price | Seller |
| April 2020 Nymex (Excludes weekends & holidays) | $16.6990 | | | | | | | | | | | |
| April 2020 Nymex (includes weekends & holidays) | $18.2020 | | | | | | | | | | | |
| Nymex Roll (excludes weekends & holidays) | ($0.4175) | | | | | | | | | | | |
| Pplus | ($0.0711) | | **APRIL 2020** | | | | | | | | | |
| MISSISSIPPI CANYON 698 (BIG BEND) | VALERO | CAL NYM, NYM ROLL, AR THD/WTI | $16.6990 | $0.0000 | ($1.0690) | $0.2190 | $0.0000 | $0.0000 | $0.0000 | $0.0000 | $15.8490 | Fieldwood |
| MISSISSIPPI CANYON 782 (DANTZLER) | VALERO | CAL NYM, NYM ROLL, AR THD/WTI | $16.6990 | $0.0000 | ($1.0690) | $0.2190 | $0.0000 | $0.0000 | $0.0000 | $0.0000 | $15.8490 | Fieldwood |

**Endymion Pipeline**
Endymion Oil Pipeline Company, LLC

## Pipeline Carrier - Shipper Report for Apr 2020

TO: Fieldwood Energy

Run Date: 5/14/2020
Run Time: 4:31:41PM
Page 1 of 1

| Product | Location | Credit | Book Month | Net Volume | Weighted Average Gravity | Ticket Number | From/To Space |
|---|---|---|---|---|---|---|---|
| **Received From: Loop Inc** | | | | | | | |
| TH | Clovelly Storage | Fieldwood Energy | 04-20 | 201,508.62 | 34.0 | 218218198857D0 | |
| **Received From: Proteus Oil Pipeline Company, LLC** | | | | | | | |
| TH | South Pass 89E | Fieldwood Energy | 04-20 | 202,020.21 | 34.3 | 218218198855D0 | |
| Total Receipts Into: | Endymion Pipeline | | | 403,528.83 | | | |
| **Delivered Into: Loop Inc** | | | | | | | |
| TH | Clovelly Storage | Fieldwood Energy | 04-20 | 201,508.62 | 34.0 | 218218198856D0 | |
| **Delivered Into: Plains Pipeline, L.P.** | | | | | | | |
| TH | Clovelly to Cam P/L | Valero M&S | 04-20 | 195,000.00 | 34.3 | 218364198861D0 | |
| Total Deliveries From: | Endymion Pipeline | | | 396,508.62 | | | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIELDWOOD ENERGY LLC | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | Adversary No. 20-03497 |
| | § | |
| VALERO MARKETING AND | § | |
| SUPPLY COMPANY | § | |
|     Defendant. | § | |
| | § | Related to bankruptcy case no 20-33948 |
| | § | pending before the US Bankruptcy Court, |
| | § | Southern District of Texas. |

## <u>ORDER GRANTING FIELDWOOD ENERGY LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

UPON CONSIDERATION of Fieldwood Energy LLC's Motion for Summary Judgment, the response, all other evidence on file, and after a hearing, the Court finds there is no genuine dispute on material fact, and Fieldwood Energy LLC is entitled to dismissal of Valero's counterclaim as a matter of law. Therefore, it is hereby ORDERED:

(1) Fieldwood Energy LLC's Motion for Partial Summary Judgment is GRANTED.

Signed: April ____, 2021

_____
The Honorable Marvin Isgur
United States Bankruptcy Judge