IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| FIELDWOOD ENERGY LLC., *et al*., | Case No. 20-33948 (MI) |
| Debtors.[1] | (Jointly Administered) |

OBJECTION OF NORTH AMERICAN SPECIALTY INSURANCE
COMPANY TO DEBTOR'S MOTION TO APPROVE THE
DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11
PLAN OF FIELDWOOD ENERGY LLC AND AFFILIATED DEBTORS

North American Specialty Insurance ("NAS") submits the following as its objection to *Motion of Debtors for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (VIII) Granting Related Relief* (the "Disclosure Statement Motion") [Docket No. 724]:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**The NAS Surety Bonds**

1. NAS is a surety on three bonds securing the plugging and abandonment decommissioning obligations of Fieldwood Offshore Energy LLC. The largest bond is bond no. 2196705 naming Eni Petroleum US LLC and Eni US Operating Co., Inc., as obligee, in the amount of $19,950,000. A second bond names Chevron U.S.A. Inc. & Union Oil as obligee in the amount of $18,600,000, bond no. 2196702. The third bond names Bureau of Ocean Energy Management as obligee in the amount of $450,000, bond no. 2196703.

**NAS Joins in the Grounds Asserted in the Objections of it Obligees and Fellow Sureties**

2. Stakeholders and other sureties filed a number of objections regarding the sufficiency of the Disclosure Statement and the non-confirmability of the proposed plan. NAS does not want to create additional reading materials in repeating those arguments but adopts the arguments and incorporates them as part of its own objections and joins in the following objections.

3. With regard to the adequacy of disclosure and the issues relating to the confirmability of the plan, NAS joins in and incorporates as its own objections the arguments set forth in the objections filed by its obligees: *Objection of Eni US Operating Co. Inc. and Eni Petroleum US LLC to Approval of Debtors' Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 937] (the "Eni Objection") and *Chevron U.S.A. and Noble Energy, Inc's Objection to Debtors' Motion for Entry of an Order (I) Approving Adequacy of the Disclosure Statement, (II) Proposed Voting and Tabulation Procedure, (III) Procedures for Executory Contract Assumption and Assignment, and (IV) Procedures for Assignment and Transfer of Property of the Estate* [Docket No. 880] (the "Chevron Objection").

4. And, with respect to issues of the adequacy of the Disclosure Statement and confirmability of the plan, and the issues relating to the assignability of surety bonds, the substitution of principal discharging the sureties, the material change in the sureties' risk, the inability of the sureties to assess their risk and exposure and the disenfranchising of the sureties' voting rights in the voting procedures, NAS joins and incorporates as its own objections the objections filed by its fellow sureties: *Objection By Lexon Insurance Company, Ironshore Indemnity Inc. And Ironshore Specialty Insurance Company To The Motion Of Debtors For Entry Of Order (I) Approving Disclosure Statement And Form And Manner Of Notice Of Disclosure Statement Hearing; (II) Establishing Solicitation And Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice And Objection Procedures For Confirmation Of The Proposed Plan; (V) Approving Notice And Objection Procedures For The Assumption Of Executory Contracts And Unexpired Leases; (VI) Approving Procedures For Objections To The Assignment And Transfer Of Property Of The Estate; (VII) Approving Bid Submission Deadline And Procedures For Submission Of Higher Or Better Bids; And (VIII) Granting Related Relief* [Docket No. 932] (the "Lexon Objection") and *Objection of Aspen American Insurance Company, Berkley Insurance Company, Everest Insurance Company, and Sirius America Insurance Company to the Motion of the Debtors for Entry of Order (I) Approving Disclosure Statement And Form And Manner Of Notice Of Disclosure Statement Hearing; (II) Establishing Solicitation And Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice And Objection Procedures For Confirmation Of The Proposed Plan; (V) Approving Notice And Objection Procedures For The Assumption Of Executory Contracts And Unexpired Leases; (VI) Approving Procedures For Objections To The Assignment And Transfer Of Property Of The Estate; (VII) Approving Bid Submission Deadline*

*And Procedures For Submission Of Higher Or Better Bids; And (VIII) Granting Related Relief* [Docket No. 996] (the "Aspen Objection").

**The Disclosure Statement Does not Directly Address the Legal Basis for the Plan's Treatment of Surety Bonds; What Can be Inferred Suggests there is no Legal Support**

5.  Relying on the suretyship principles set forth in the other surety objections, NAS will offer its own observations about the Disclosure Statement and Plan. What appears to be the implications of the language of the disclosure statement are that the Debtors seek to compel the sureties on surety bonds issued on their behalf as principals, bonds which are not property of the estate, to address the cost of abandoned P&A obligations, which bond obligations can only arise because of a default of those obligations by the principal (i.e., the Debtors) while assuming and assigning the assets related to the underlying the leases and properties for the benefit of a credit bidder and Apache and providing releases for those parties. Moreover, the voting procedures value at $1 dollar the voting rights of the parties the plan aims to have swallow the substantial liabilities effectively disenfranchising their votes, notwithstanding that the liabilities are by the Debtors' reckoning so substantial that the avowed purpose of the plan is to shed them.

6.  As noted in the Lexon Objection, surety bonds are not property of the estate of the principal. *See In re Lockard*, 884 F.2d 1171, 1177 (9th Cir. 1989) (a contractor does not have a property interest in surety bond issued by third-party to guarantee its performance)(citing cases); *In re Petroleum Piping Contractors*, 211 BR 290, 311-12 (Bankr. N.D. Ind. 1997) (a payment bond given by a surety for the bankruptcy debtor to a project owner is not property of the estate); *In re McLean Trucking Co.*, 74 B.R. 820, 827 (Bankr. W.D. N.C. 1987) (surety bond for workers' compensation claims not asset of the estate). *But see In re War Eagle Construction Co.*, 283 B.R. 193, 196 (S.D. W.Va. 2002) (noting that bankruptcy court held: "Upon review of the various cash deposits and instruments constituting the Bond, the Court determines that the Bond

4

is an asset of the bankruptcy estate …," but holding that letter of credit part of the performance bond was not an asset of the estate).

7. As set forth in the Aspen Objection, substitution of the principal of a bond discharges the surety. Additional authority supporting this proposition include the following cases: *Leila Hosp. & Health Ctr. V. Xonics Medical Sys., Inc.,* 948 F.2d 271 (6th Cir. 1991); *Becker v. Faber,* 19 NE. 2d 997 (N.Y. 1939). An objection of all of the sureties is that surety bonds are financial accommodations that cannot be assumed. § 365(c)(2).

8. As noted in the Eni Objection the Debtors want to assign parts of leases while abandoning other portions of the leases carrying significant P& **A** obligations. There is no approach to the assumption of leases by the Debtors that is recognized in §365 of the Code. The Debtors violate the principle that contracts cannot be partially assumed and have created a scheme in which the term "abandoned" is a synonym for "Debtors' default." There is no cure for pre-existing defaults. The sureties and predecessors will apparently be left to cure the pre-existing defaults of the Debtors, while the Debtors assign the plum assets to its lenders and procure releases.

9. The Debtors are using the surety bonds, which are not their property, to arrange to shed liabilities they cannot abandon. All or nearly all of the objectors cite *Midlantic Nat. Bank v. New JerseyDep't of Envtl. Prot.,* 474 U.S. 494 (1986) to say the plan impermissibly attempts to abandon P&A obligations. NAS now cites this case for that proposition. The plan appears to pursue an impermissible end through impermissible means—one could argue this is the quintessence of bad faith.

### The Obligees of the Bonds Must Not Impair Suretyship Status

10. Almost the full amount of the NAS bonds are private bonds, naming non-government obligees. These obligees should not agree to arrangements that would allow assets available to cure the Debtors' defaults of their P&A obligations to be used for other purposes. Should they do so, NAS, and whatever other surety, may be discharged by reason of their impairment of suretyship status. That impairment can be the result of conduct increasing the loss or decreasing the sureties' recourse by impairing subrogation and other rights. Restatement of the Law Third, Suretyship & Guaranty § 37. The Disclosure Statement fails to apprise parties of their potential subrogation and contribution rights. NAS gives notice to its obligees that actions taken that impair its rights as a surety may discharge it.

### The Disclosure Statement Appears Deliberately Vague

11. The Disclosure Statement does not meet the requirements of § 1125 in terms of the adequacy of disclosure and so is inadequate. It is so vague in some respects that it seems deliberately vague. A liquidation analysis would be nice to see. But as stated in the Chevron Objection it the Disclosure Statement is disguising the liquidation of the Debtors. It is a thin disguise. In fact, the Disclosure Statement, as now drafted, suggests that many of the creditors would be better off with a Chapter 7 liquidation than a plan that spirits away assets that might be applied to obligations the Debtor cannot legally abandon.

12. In a presentation to NAS, the Debtors suggested they are exploring consensual outcomes with the sureties. Those consensual arrangements might include ongoing payment of premiums, assumption of existing or modified bond arrangements to keep bonds in place, risk sharing and retention of future bonding capacity. The side talks cannot cure the defects in the Disclosure Statement and Plan. These are all issues that should have been addressed before

drafting a plan and disclosure statement because what the Plan now proposes requires the consent of the sureties.

    For the foregoing reasons, North American Specialty Insurance Company requests the Court deny Debtors Motion for Approval of the Disclosure Statement and other procedures related to the confirmation of a plan, and for such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ T. Scott Leo*
T. Scott Leo
The Law Offices of T. Scott Leo, P.C.
100 N. LaSalle Street, Suite 514
Chicago, Illinois 60602
Phone:  (312) 857-0910
sleo@leolawpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March, 2021, a true and correct copy of the foregoing Joinder was served via the Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned case.

/s/ T. Scott Leo