# EXHIBIT B



# Executed Bond Report

## Aspen American Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** SU46474 |
|---|---|---|

**Date:** 4/5/2018

**Principal:** Fieldwood Energy LLC

**Obligee Name and Address:**
Noble Energy, Inc.
Filed with: Noble Energy, Inc.
1001 Noble Energy Way
Houston,  TX  77070-

**Power of Attorney No.**

| **Effective Date:**<br>From    4/5/2018  To    4/5/2019 | **Bond Amount:**<br>$10,000,000.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$125,000.00 |
|---|---|---|---|
| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$37,500.00 | **State Surchg-Fee:**<br>$0.00 |

**Description:**
Private Performance Bond

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of bond

**Comments:**
Approved as per Lucas Lomax

Alliant Insurance Services, Inc. □ 5444 Westheimer □ Suite 900 □ Houston, TX 77056
PHONE (832) 485-4000 □ FAX (832) 485-4001 □ www.alliantinsurance.com

Exhibit B_00001

BOND NO. SU46474

**EXHIBIT H-2**

**FORM OF NOBLE PERFORMANCE BOND**

**PERFORMANCE BOND**

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the "***Principal***") and Aspen American Insurance Company, with its principal office at 175 Capital Boulevard, Suite 300, Rocky Hill, CT 06067, (the "***Surety***"), are held and firmly bound unto Noble Energy, Inc., with its principal office at 1001 Noble Energy Way, Houston, Texas 77070, (the "***Obligee***"), in the penal sum of Ten Million and No/100 Dollars (**$10,000,000**) lawful money of the United States of America (the "***Penal Sum***") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated February 14, 2018, (the "***Purchase Agreement***"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "***Bond***"), together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or

entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the "***Defaulted P&A Obligations***"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the "***Final Cost Statement***") of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the "***Aggregate Cost Amount***"), exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the "***Surety Payment Amount***"), the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS,**

**BOND NO. SU46474**

ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, **"INDEMNIFIED PARTIES"**) FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to

Exhibit B_00005

cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Noble Energy, Inc.
1001 Noble Energy Way
Houston, Texas 77070
Attention: VP of Business Development

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: John H. Smith, Vice President

Aspen American Insurance Company
840 W. Sam Houston Parkway North
Suite 420
Houston, TX 77024
Attention: Lucas Lomas

*[signature pages follow]*

Exhibit B_00006

**BOND NO. SU46474**

      **IN WITNESS WHEREOF**, the above bound parties have executed this instrument to be effective on <u>April 5, 2018</u>, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESSES:**

_____

_____
      **PRINT NAME**

_____

_____
      **PRINT NAME**

**PRINCIPAL:**

FIELDWOOD ENERGY LLC

By:_____

Name: _____

Title: _____

**WITNESSES:**

_____

_____
      **PRINT NAME**

_____

_____
      **PRINT NAME**

**OBLIGEE:**

NOBLE ENERGY, INC.

By:_____

Name: _____

Title: _____

**WITNESSES:**

_____

<u>Laura L. Kneitz</u>
      **PRINT NAME**

_____

<u>Melissa Haddick</u>
      **PRINT NAME**

**PRINCIPAL:**

ASPEN AMERICAN INSURANCE COMPANY

By:_____

Name: <u>Teresa D. Kelly</u>

Title: <u>Attorney-in-Fact</u>

Exhibit B_00007



## Executed Bond Report

### Aspen American Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,   TX  77042 | **Bond No:** SU46455 |
|---|---|---|
| | | **Date:** 6/29/2017 |

**Principal:** Fieldwood Energy LLC

**Obligee Name and Address:**
United States of America
Filed with: U.S. Department of the Interior, Bureau of Ocean Energy Management - Gulf of Mexico OCS Region
1201 Elmwood Park Blvd.
New Orleans,   LA  70123-2394

**Power of Attorney No.**

| **Effective Date:**<br>From      6/29/2017  To      6/29/2018 | **Bond Amount:**<br>$9,197,079.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$80,474.00 |
|---|---|---|---|
| **Rate:**<br>1.25% | **Commission %**<br>0.000% | **Commission Amount**<br>$0.00 | **State Surchg-Fee:**<br>$0.00 |

**Description:**
OCS Mineral Lessee's and Operator's Supplemental Bond iro covering OCS-G 02115 Eugene Island Area Block 330 (All of Block 330m, Eugene Island Area, South Addition, OCS Leasing Map, Louisiana Map No. LA4A)

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
copy of bond

**Comments:**
Approved as per Lucas Lomax's 6/27/2017 email.

Thursday, June 29, 2017

Exhibit B_00008

**U.S. Department of the Interior**
**Bureau of Ocean Energy Management**

OMB Control No.: 1010-0006
Expiration Date: 3/31/17

Cover Page

# OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

## Form BOEM-2028A

**This form dated March 2014 supersedes all previous versions of form BOEM-2028A**

**Paperwork Reduction Act of 1995 (PRA) Statement:** The PRA (44 U.S.C. 3501 *et seq.*) requires us to inform you that BOEM collects this information to hold the surety liable for the obligations and liability of the Principal (lessee or operator). Responses are mandatory. No proprietary information is collected. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Comments regarding the burden estimate or any other aspect of this form should be directed to the Information Collection Clearance Officer, Bureau of Ocean Energy Management, 381 Elden Street, Herndon, VA 20170.

**U.S. DEPARTMENT OF THE INTERIOR**
**Bureau of Ocean Energy Management**

Bond No. SU46455                                              OCS Lease/RUE/ROW No. OCS-G02115

Bond Type Supplemental                                        Amount $9,197,079.00

## OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

The **Surety** is the entity Guaranteeing Performance.

Name of Surety: Aspen American Insurance Company

Mailing Address: 175 Capital Blvd, Suite 300

Rocky Hill, CT 06067

If a Corporation, Incorporated in the State of: Texas        ; County or Parish of: Hartford

☑ Check here if Surety is certified by U.S. Treasury as an acceptable surety on Federal Bonds and listed in the current U.S. Treasury Circular No. 570.

The **Principal** is the Lessee or Designated Operator for Whom the Bond is Issued.

Name of Principal: Fieldwood Energy LLC

Mailing Address: 2000 W Sam Houston Pkwy S, Suite 1200

Houston, TX 77042

Schedule A, the lease/RUE/ROW covered by this bond, is composed of: (add legal description)

☑ The following lease/RUE/ROW: All of Block 330, Eugene Island Area, South Addition, OCS Leasing Map, Louisiana Map No. LA4A

In addition to the Obligations of the Principal during the period of liability of this bond, the Surety also accepts the following Obligations: (Check one)

☐ No Obligations other than the Obligations of the Principal during the period of liability of this bond.

☑ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond with the following exceptions or limitations (use an attached rider).

| **Definitions** | A **Principal** includes an entity holding an interest in the oil & gas lease in one or more of the following ways: (1) as an approved record title owner of all or a portion of the lease, (2) as an approved operating rights owner of all or a portion of the lease, or (3) as a designated operator or designated agent in all or a portion of the lease. |
|---|---|
| For the purposes of this document: | A **Lessee** includes an approved record title owner of all or a portion of the lease or an approved operating rights owner of all or a portion of the lease. |
| | An **Obligation** includes any obligation arising from any regulations of the Department of the Interior or any Instrument issued, maintained, or approved under the OCS Lands Act (43 U.S.C. 1331 et seq.). |
| | An **Instrument** includes individually or collectively any lease, operating agreement, designation of operator or agent, storage agreement, compensatory royalty agreement, transfer of operating rights, permit, license, or easement, whereunder the Principal has the right, privilege, or license to conduct operations on the OCS. |
| | A **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency. |

**By signing below, the Principal verifies that the information above is correct and agrees to the following:**
The Principal as agent on behalf of all lessees, operating rights owners, and operators will fulfill all Obligations for the entire leasehold and to the same extent as though the Principal were the sole lessee for the lease/RUE/ROW in Schedule A.

**By signing below, the Surety verifies that the information above is correct and agrees to the following:**

1. The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Bureau of Ocean Energy Management (BOEM), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations.

2. The Surety will be responsible for all Obligations of the Principal in existence at the time this document becomes effective and all Obligations that accrue after that date and until all Obligations are met or until the Regional Director terminates the period of liability of this bond.

3. If the Regional Director terminates the period of liability of this bond, the Surety will remain responsible for Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the bond in favor of the Surety.

4. If this bond is cancelled, the Regional Director may reinstate this bond as if no cancellation had occurred if any payment of any Obligation of the Principal(s) is rescinded or must be restored pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has paid its financial Obligations or performed the other

Obligations of the lease in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the instrument.

5.  The Surety waives any right of notice of this bond taking effect and agrees that this bond will take effect upon delivery to BOEM.

6.  The Surety's Obligations will remain in full force and effect, even if:

    (a)  Any person assigns all or part of any interest in an Instrument covered by this document.

    (b)  Any person modifies an Instrument or Obligation under an Instrument in any manner including modifications that result from a commitment to a unit, cooperative, communitization, or storage agreement; suspension of operations or production; suspension or changes in rental, minimum royalty, or royalties; modification of regulations or interpretations of regulations; creation or modification of compensatory royalty agreements or payments; or creation of any mortgage, pledge, or other grant of security interest in the Instruments.

    (c)  Any person, event, or condition terminates any Instrument covered by this bond, whether the termination is by operation of law or otherwise.

    (d)  BOEM takes or fails to take any action in enforcing, as against any party to the Instrument, the payment of rentals or royalties or the performance of any other covenant, condition or agreement of the lease, or giving notice of or making demand with respect to such nonperformance.

    (e)  The Surety suffers any loss by reason of any law limiting, qualifying, or discharging the Principal's Obligation.

7.  The Surety agrees to be bound under this bond as to the interests in any Instrument retained by the Principal when BOEM approves the transfer of any or all of the Instruments or interests in the Instruments.

8.  In the event of any default under a lease, the Surety must provide payment of all of the cost of the Obligations of the Principal upon demand by BOEM.

9.  If BOEM decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not BOEM joins the lessees or any other party.

10. In the event there is more than one Surety for the Principal's performance of the Obligations, as to any Instrument, the Surety's Obligation and liability under this bond is on a "solidary" or "joint and several" basis along with other guarantors or sureties.

11. The Surety agrees to give prompt notice to BOEM and the Principal of any action filed alleging the insolvency or bankruptcy of the Surety or the Principal, or alleging any violation that would result in suspension or revocation of the Surety's charter or license to do business.

12. The Surety's Obligation and liabilities under this Bond are binding upon the Surety's successors and assigns.  Nothing in this document permits assignment of the Surety's Obligation without the written consent of BOEM.

13. The Surety hereby waives any defenses to liability on this bond based on an unauthorized Principal signature.

---

Aspen American Insurance Company  
Name of Surety

Signature of Person Executing for Surety

Teresa D. Kelly Attorney-in-Fact  
Name and Title (typed or printed)

5444 Westheimer, Suite 900  
Business Address

Houston, TX 77056  
Business Address

Fieldwood Energy LLC  
Name of Principal

Signature of Person Executing for Principal

John H. Smith, Senior Vice President-Land & Business Development  
Name and Title (typed or printed)

2000 W Sam Houston Pkwy S, Suite 1200  
Business Address

Houston, TX  77042  
Business Address

---

Signed on this _29th_ day of _June_, 20_17_, in the State of _Texas_, in the presence of:

---

Signature of Witness

Laura L. Kneitz  
Name (typed or printed)

5444 Westheimer, Suite 900  
Address

Houston, TX 77056  
Address

Signature of Witness

Name (typed or printed)

2000 W Sam Houston Pkwy S, Suite 1200  
Address

Houston, TX  77042  
Address

---

*Note:*  The person executing for the Surety must attach a corporate resolution and power of attorney stating his or her authority to undertake this Obligation, pursuant to the acts of the corporate board of directors and the laws of the State of incorporation.  The corporation executing this bond as Surety and the Principal, if a corporation, must affix their corporate seals.

**BOEM-2028A  (March 2014)**  
Previous Editions are Obsolete.

**Page 3 of 3**

Exhibit B_000011

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## FORM OF MARATHON PERFORMANCE BOND

**PERFORMANCE BOND**                **Number 7000000301**

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the *"Principal"*) and Sirius America Insurance Company with an office at 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033 (the *"Surety")*, are held and firmly bound unto Marathon Oil company with its principal office at 5555 San Felipe, Houston, Texas 77056, (the *"Obligee")*, in the penal sum of Fifteen Million and No/100 Dollars **($15,000,000)** lawful money of the United States of America (the *"Penal Sum")* for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated June 20, 2018, (the *"Purchase Agreement")*, which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond")*, together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided forherein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement. FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"),* and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement")* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount"),* exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount"),* the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE**

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE ORCONTRIBUTORY    NEGLIGENCE,  AND/OR  OBLIGEE  CONTRIBUTORY   NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Marathon Oil Company
5555 San Felipe
Houston, Texas 77056
Attention:_____

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: _____

Sirius America Insurance Company
180 Glastonbury Blvd, Suite 403
Glastonbury, CT 06033
Attention: Surety Claims Department

*(signature pages follow)*

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be Effective on July 2, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.

By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

MARATHON OIL COMPANY

By:_____
Name:_____
Title:_____
Date:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY

By:
Name: ___Gina A. Rodriquez___
Title: ___Attorney-In-Fact___
Date: ___July 2, 2018___

Attached to and made part of that Purchase and Sale Agreement by and among Marathon
Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## Exhibit "A"

**Assets**

| Field | Asset Name | Asset | Acquired Interest | Bond Allocation |
|---|---|---|---|---|
| *Troika Assets* | | | | |
| Troika | TA-1 | Well | 50% | 8,100,000 |
| Troika | TA-2 | Well | 50% | 8,100,000 |
| Troika | TA-3 | Well | 50% | 8,100,000 |
| Troika | TA-4 | Well | 50% | 8,100,000 |
| Troika | TA-5 | Well | 50% | 8,100,000 |
| Troika | TA-6 | Well | 50% | 12,000,000 |
| Troika | Subsea Facilities | Subsea Infrastructure | 50% | 1,000,000 |
| Troika | 11393 | Pipeline | 50% | 750,000 |
| Troika | 11396 | Pipeline | 50% | 750,000 |
| **Total Troika** | | | | **55,000,000** |
| | | | | |
| *Gunflint Assets* | | | | |
| Gunflint | 2 | Well | 18% | 5,500,000 |
| Gunflint | 4 | Well | 18% | 5,500,000 |
| Gunflint | Subsea Facilities | Subsea Infrastructure | 18% | 1,000,000 |
| Gunflint | 19362 | Pipeline | 18% | 250,000 |
| Gunflint | 19374 | Pipeline | 18% | 250,000 |
| Gunflint | 19478 | Pipeline | 18% | 250,000 |
| Gunflint | 19479 | Pipeline | 18% | 250,000 |
| Gunflint | 19154/19365 | Pipeline | 18% | 1,000,000 |
| Gunflint | 19155/19432 | Pipeline | 18% | 1,000,000 |
| **Total Gunflint** | | | | **15,000,000** |
| | | | | |
| **Total** | | | | **70,000,000** |

Exhibit B_000020

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## Exhibit "B"

To be attached and form part of Bond No. _____ issued by . _____ , (as

**Surety), effective _____, 2018**

In the amount of          $(_____)

On behalf of:       Fieldwood Energy LLC (as Principal)
In favor of          Marathon Oil Company,(as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**
_____and NO/100 Dollars($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the _____day of _____ 20_____

Signed, sealed and dated the _____day of _____ 20_____

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____

 **SURETY:**

SIRIUS AMERICA INSURANCE COMPANY
By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil
Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Acknowledged By: Marathon Oil Company**

By:_____

Name:_____

Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit I — Form of Assignment of Record Title Interest (BOEM Form 0150)**

Exhibit B_000023



To obtain information or make a complaint:

You may call the Surety's toll free telephone number for information or to make a complaint at 1-844-312-4357.

You may contact the Texas Department of Insurance to obtain information on companies, coverage, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://wvvw.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES**: Should you have a dispute concerning your premium or about a claim you should contact the Surety first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY**: This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANCE**

Para obtener información o presentar una queja:

Usted puede llamar al número de teléfono gratis de para información o para someter una queja al 1-844-312-4357

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas en:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS**: Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Surety primero. Si la disputa no se resuelve, puede comunicarse con el Departamento de Seguros de Tex **(TDI)**.

**UNA ESTEAVISOA SU POLIZA**: Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

TX Rider

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800001-403001

Certificate No. **000244**

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

**Terri L. Morrison, Gina A. Rodriguez, Mary Ann Garcia, Gloria P. Mouton, Marissa Shepherd, Tannis Mattson, Laura E. Sudduth**

of the City of  Houston                    , State of Texas           , its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

IN WITNESS WHEREOF, the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 2 day of July , 2018

By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 2nd day of July , 2018 before me personally appeared  D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022

Patricia A. McAndrew
Patricia McAndrew       , Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

Exhibit B_000025

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

RESOLVED, that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

FURTHER RESOLVED, that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

FURTHER RESOLVED, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

FURTHER RESOLVED, that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

FURTHER RESOLVED, that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this ___7th___ day of ___December___, 2017

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## FORM OF MARATHON PERFORMANCE BOND

### PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the *"Principal"*) and Sirius America Insurance Company with an office at 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033 and Liberty Mutual Insurance Company with an office at 175 Berkeley Street, Boston, MA 02116 (collectively, the *"Surety"),* are held and firmly bound unto Marathon Oil company with its principal office at 5555 San Felipe, Houston, Texas 77056, (the *"Obligee"),* in the penal sum of Fifty Five Million and No/100 Dollars **($55,000,000)** lawful money of the United States of America (the *"Penal Sum")* for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Sirius America Insurance Company | $27,500,000.00 | Bond No.7000000302 |
| Liberty Mutual Insurance Company | $27,500,000.00 | Bond No. 022220669 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale  Agreement dated June 20, 2018, (the *"Purchase Agreement"),* which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond"),* together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"),* and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement")* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount"),* exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount"),* the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR *ASSERTED* BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' ORSUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.**

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Marathon Oil Company
5555 San Felipe
Houston, Texas 77056
Attention:_____

Fieldwood Energy LLC
2000 W. Sam Houston Parkway Suite 1200
Houston, Texas 77042
Attention: _____

Sirius America Insurance Company
180 Glastonbury Blvd, Suite 403
Glastonbury, CT 06033
Attention: Surety Claims Department

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

*(signature pages follow)*

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be Effective on July 2, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

MARATHON OIL COMPANY

By:_____
Name:_____
Title:_____
Date:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H – Form of Surety Bond

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY

By
Name:  Gina A. Rodriguez
Title:  Attorney-In-Fact
Date:  July 2, 2018


**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY

By
Name:  Gina A. Rodriguez
Title:  Attorney-In-Fact
Date:  July 2, 2018

Attached to and made part of that Purchase and Sale Agreement by and among Marathon
Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit "A"**

**Assets**

| Field | Asset Name | Asset | Acquired Interest | Bond Allocation |
|-------|-----------|-------|-------------------|-----------------|
| *Troika Assets* | | | | |
| Troika | TA-1 | Well | 50% | 8,100,000 |
| Troika | TA-2 | Well | 50% | 8,100,000 |
| Troika | TA-3 | Well | 50% | 8,100,000 |
| Troika | TA-4 | Well | 50% | 8,100,000 |
| Troika | TA-5 | Well | 50% | 8,100,000 |
| Troika | TA-6 | Well | 50% | 12,000,000 |
| Troika | Subsea Facilities | Subsea Infrastructure | 50% | 1,000,000 |
| Troika | 11393 | Pipeline | 50% | 750,000 |
| Troika | 11396 | Pipeline | 50% | 750,000 |
| **Total Troika** | | | | **55,000,000** |
| | | | | |
| *Gunflint Assets* | | | | |
| Gunflint | 2 | Well | 18% | 5,500,000 |
| Gunflint | 4 | Well | 18% | 5,500,000 |
| Gunflint | Subsea Facilities | Subsea Infrastructure | 18% | 1,000,000 |
| Gunflint | 19362 | Pipeline | 18% | 250,000 |
| Gunflint | 19374 | Pipeline | 18% | 250,000 |
| Gunflint | 19478 | Pipeline | 18% | 250,000 |
| Gunflint | 19479 | Pipeline | 18% | 250,000 |
| Gunflint | 19154/19365 | Pipeline | 18% | 1,000,000 |
| Gunflint | 19155/19432 | Pipeline | 18% | 1,000,000 |
| **Total Gunflint** | | | | **15,000,000** |
| | | | | |
| Total | | | | **70,000,000** |

Exhibit B_000035

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

### Exhibit "B"

To be attached and form part of Bond No._____ issued by ._____ , (as

Surety), effective _____, 2018

In the amount of          $(_____)

On behalf of:          Fieldwood Energy LLC (as Principal)
In favor of           Marathon Oil Company,(as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**
_____and NO/100 Dollars($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the _____day of _____20_____

Signed, sealed and dated the _____day of _____20_____

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY
By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Acknowledged By: Marathon Oil Company**

By:_____

Name:_____

Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit I — Form of Assignment of Record Title Interest (BOEM Form 0150)**

J

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800001-403001                     Certificate No. ___000243___

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Terri L. Morrison,  Gina A. Rodriguez,  Mary Ann Garcia,  Gloria P. Mouton,  Marissa Shepherd,  Tannis Mattson,
Laura E. Sudduth

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

IN WITNESS WHEREOF, the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 2nd day of July, 2018

By: _____
    D. Matthew Olsen
    Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 2nd day of July, 2018 before me personally appeared  D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022

_____, Notary Public
Patricia McAndrew

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers:  President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this 7th day of December, 2017

By: _____
Robert P. Kuehn
Secretary

To verify the validity of the Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8117804

Liberty Mutual Insurance Company

The Ohio Casualty Insurance Company        West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Orlando Aguirre; Mario Arzamendi; Mary Ann Garcia; Tannis Mattson; Terri L. Morrison; Gloria Mouton; Sandra Parker; Gina A. Rodriguez; Marissa Shepherd; Laura E. Sudduth

all of the city of __Houston__, state of __TX__   each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this __4th__ day of __June__, __2018__.



The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA       ss
COUNTY OF MONTGOMERY

On this __4th__ day of __June__, __2018__, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member: Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __2nd__ day of __July__, __20 18__.

By: _____
Renee C. Llewellyn, Assistant Secretary

*Sidebar left margin:* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Sidebar right margin:* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

Exhibit B_000041   22 of 150



To obtain information or make a complaint:

You may call the Surety's toll free telephone number for information or to make a complaint at 1-844-312-4357.

You may contact the Texas Department of Insurance to obtain information on companies, coverage, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://wvvw.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the Surety first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANCE**

Para obtener información o presentar una queja:

Usted puede llamar al número de teléfono gratis de para información o para someter una queja al 1-844-312-4357

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas en:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Surety primero. Si la disputa no se resuelve, puede comunicarse con el Departamento de Seguros de Tex (TDI).

**UNA ESTEAVISOA SU POLIZA:** Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

TX Rider



# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Premium or Claim Disputes**

Should you have a dispute concerning a premium, you should contact the agent first. If you have a dispute concerning a claim, you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**Attach This Notice To Your Policy:**

This notice is for information only and does not become a part or condition of the attached document.

Exhibit B_000043



# NOTIFICACION IMPORTANTE

PARA OBTENER INFORMACION O REALIZAR UNA QUEJA:

Usted puede escribir la notificación y dirigirla a Liberty Mutual Surety  en la siguiente dirección:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

Usted puede contactar al Departamento de Seguros de Texas para obtener informacion acerca de las compañías, coberturas, derechos o quejas:

> 1-800-252-3439

Usted puede  escribir al Departamento de Seguros de Texas a la siguiente dirección:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Disputas acerca de primas o reclamos**

En caso de que usted quiera elevar una disputa concerniente al tema de primas, por favor contacte en primer lugar a su agente.  Si el tema de la disputa es relativo a un reclamo, por favor contacte a la compañía de seguros en primer término.  Si usted considera que la disputa no es apropiadamente resuelta en estas instancias, entonces usted puede contactar al Departamento de Seguros de Texas..

**Adjunte esta notificacion a su póliza:**

Esta notificación es a los solos fines de su información y la misma no forma parte o condiciona de manera alguna el documento adjunto.

Exhibit B_000044



# Executed Bond Report

## Sirius America Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** 7000000407<br>**Date:** 12/13/2018 |
|---|---|---|

**Principal:**  Fieldwood Energy LLC

**Obligee Name and Address:**  United States of America
Filed with: U.S. Department of the Interior, Bureau of Ocean Energy Management - Gulf of Mexico OCS Region
1201 Elmwood Park Blvd.
New Orleans,  LA  70123-2394

**Power of Attorney No.**
000354

| **Effective Date:**<br>From      12/13/2018  To      12/13/2019 | **Bond Amount:**<br>$503,684.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$6,296.00 |
|---|---|---|---|

| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$1,888.80 | **State Surchg-Fee:**<br>$0.00 |
|---|---|---|---|

**Description:**

OCS Mineral  Lessee's Operator's Supplemental Bond iro ROW G28788 - Ship Shoal Block 168 (PSN 20050) a 6 5/8 inch gas right-of-way pipeline

**Renewal Type:**

Continuous Until Cancelled/Released

**Cancellation Provision:**

Obligee Written Release to be obtained by Principal

**Additional Attachments:**

Copy of bond and underlying BOEM application and bond request

**Comments:**

Approved as per Sarah Stanfield's 12/12/2018 email.

Alliant Insurance Services, Inc. ☐ 5444 Westheimer ☐ Suite 900 ☐ Houston, TX 77056
PHONE (832) 485-4000 ☐ FAX (832) 485-4001 ☐ www.alliantinsurance.com

Exhibit B_000045

**U.S. Department of the Interior**
**Bureau of Ocean Energy Management**

OMB Control No.:  1010-0006
Expiration Date:  6/30/2019

Cover Page

# OUTER CONTINENTAL SHELF (OCS)
# MINERAL LESSEE'S OR OPERATOR'S
# SUPPLEMENTAL BOND

# Form BOEM-2028A

**This form dated June 2016 supersedes all previous versions of form BOEM-2028A**

**Paperwork Reduction Act of 1995 (PRA) Statement:**  The PRA (44 U.S.C. 3501 *et seq*.) requires us to inform you that BOEM collects this information to hold the surety liable for the obligations and liability of the Principal (lessee or operator).  Responses are mandatory.  No proprietary information is collected.  An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number.  Public reporting burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form.  Comments regarding the burden estimate or any other aspect of this form should be directed to the Information Collection Clearance Officer, Bureau of Ocean Energy Management, 45600 Woodland Road, Sterling, VA 20166.

Exhibit B_000046

## U.S. DEPARTMENT OF THE INTERIOR
### Bureau of Ocean Energy Management

Bond No. 7000000407

OCS Lease/RUE/ROW No. ROW G28788

Bond Type Supplemental

Amount $503,684.00

## OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

The **Surety** is the entity Guaranteeing Performance.

Name of Surety: Sirius America Insurance Company

Mailing Address: 140 Broadway - 32nd Floor

New York, NY 10005-1108

If a Corporation, Incorporated in the State of: New York ; County or Parish of: Kings County

☐ Check here if Surety is certified by U.S. Treasury as an acceptable surety on Federal Bonds and listed in the current U.S. Treasury Circular No. 570.

The **Principal** is the Lessee or Designated Operator for Whom the Bond is Issued.

Name of Principal: Fieldwood Energy LLC

Mailing Address: 200 W. Sam Houston Pkwy S., Suite 1200

Houston, TX 77042

Schedule A, the lease/RUE/ROW covered by this bond, is composed of: (add legal description)

The following lease/RUE/ROW: ROW G28788 - Ship Shoal Block 168 (PSN 20050) a 6 5/8 inch gas Right-of-Way Pipeline

In addition to the Obligations of the Principal during the period of liability of this bond, the Surety also accepts the following Obligations: (Check one)

☑ No Obligations other than the Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond with the following exceptions or limitations (use an attached rider).

| **Definitions** | A **Principal** includes an entity holding an interest in the oil & gas lease in one or more of the following ways: (1) as an approved record title owner of all or a portion of the lease, (2) as an approved operating rights owner of all or a portion of the lease, or (3) as a designated operator or designated agent in all or a portion of the lease. |
|---|---|
| For the purposes of this document: | A **Lessee** includes an approved record title owner of all or a portion of the lease or an approved operating rights owner of all or a portion of the lease. |
| | An **Obligation** includes any obligation arising from any regulations of the Department of the Interior or any Instrument issued, maintained, or approved under the OCS Lands Act (43 U.S.C. 1331 et seq.). |
| | An **Instrument** includes individually or collectively any lease, operating agreement, designation of operator or agent, storage agreement, compensatory royalty agreement, transfer of operating rights, permit, license, or easement, whereunder the Principal has the right, privilege, or license to conduct operations on the OCS. |
| | A **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency. |

**By signing below, the Principal verifies that the information above is correct and agrees to the following:**
The Principal as agent on behalf of all lessees, operating rights owners, and operators will fulfill all Obligations for the entire leasehold and to the same extent as though the Principal were the sole lessee for the lease/RUE/ROW in Schedule A.

**By signing below, the Surety verifies that the information above is correct and agrees to the following:**
1. The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Bureau of Ocean Energy Management (BOEM), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations.
2. The Surety will be responsible for all Obligations of the Principal in existence at the time this document becomes effective and all Obligations that accrue after that date and until all Obligations are met or until the Regional Director terminates the period of liability of this bond.
3. If the Regional Director terminates the period of liability of this bond, the Surety will remain responsible for Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the bond in favor of the Surety.
4. If this bond is cancelled, the Regional Director may reinstate this bond as if no cancellation had occurred if any payment of any Obligation of the Principal(s) is rescinded or must be restored pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has paid its financial Obligations or performed the other

Obligations of the lease in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the instrument.

5. The Surety waives any right of notice of this bond taking effect and agrees that this bond will take effect upon delivery to BOEM.

6. The Surety's Obligations will remain in full force and effect, even if:

    (a) Any person assigns all or part of any interest in an Instrument covered by this document.

    (b) Any person modifies an Instrument or Obligation under an Instrument in any manner including modifications that result from a commitment to a unit, cooperative, communitization, or storage agreement; suspension of operations or production; suspension or changes in rental, minimum royalty, or royalties; modification of regulations or interpretations of regulations; creation or modification of compensatory royalty agreements or payments; or creation of any mortgage, pledge, or other grant of security interest in the Instruments.

    (c) Any person, event, or condition terminates any Instrument covered by this bond, whether the termination is by operation of law or otherwise.

    (d) BOEM takes or fails to take any action in enforcing, as against any party to the Instrument, the payment of rentals or royalties or the performance of any other covenant, condition or agreement of the lease, or giving notice of or making demand with respect to such nonperformance.

    (e) The Surety suffers any loss by reason of any law limiting, qualifying, or discharging the Principal's Obligation.

7. The Surety agrees to be bound under this bond as to the interests in any Instrument retained by the Principal when BOEM approves the transfer of any or all of the Instruments or interests in the Instruments.

8. In the event of any default under a lease, the Surety must provide payment of all of the cost of the Obligations of the Principal upon demand by BOEM.

9. If BOEM decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not BOEM joins the lessees or any other party.

10. In the event there is more than one Surety for the Principal's performance of the Obligations, as to any Instrument, the Surety's Obligation and liability under this bond is on a "solidary" or "joint and several" basis along with other guarantors or sureties.

11. The Surety agrees to give prompt notice to BOEM and the Principal of any action filed alleging the insolvency or bankruptcy of the Surety or the Principal, or alleging any violation that would result in suspension or revocation of the Surety's charter or license to do business.

12. The Surety's Obligation and liabilities under this Bond are binding upon the Surety's successors and assigns.  Nothing in this document permits assignment of the Surety's Obligation without the written consent of BOEM.

13. The Surety hereby waives any defenses to liability on this bond based on an unauthorized Principal signature.

| | |
|---|---|
| Sirius America Insurance Company | Fieldwood Energy LLC |
| Name of Surety | Name of Principal |
| | |
| Signature of Person Executing for Surety | Signature of Person Executing for Principal |
| Teresa D. Kelly, Attorney-in-Fact | John H. Smith, Senior Vice President-Land & Business Development |
| Name and Title (typed or printed) | Name and Title (typed or printed) |
| 140 Broadway - 32nd Floor | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Business Address | Business Address |
| New York, NY 10005-1108 | Houston, TX 77042 |
| Business Address | Business Address |

Signed on this __13th__ day of __December__ , 20 __18__ , in the State of __Texas__ , in the presence of:

| | |
|---|---|
| Signature of Witness | Signature of Witness |
| Laura L. Kneitz | Mark R. Mozell |
| Name (typed or printed) | Name (typed or printed) |
| 5444 Westheimer, Suite 900 | 2000 W Sam Houston Pkwy S., Suite 1200 |
| Address | Address |
| Houston, TX 77056 | Houston, TX 77042 |
| Address | Address |

*Note:*  The person executing for the Surety must attach a corporate resolution and power of attorney stating his or her authority to undertake this Obligation, pursuant to the acts of the corporate board of directors and the laws of the State of incorporation.  The corporation executing this bond as Surety and the Principal, if a corporation, must affix their corporate seals.

**BOEM-2028A  (June 2016)**
Previous Editions are Obsolete.