# EXHIBIT C

**GENERAL INDEMNITY AGREEMENT**

**THIS AGREEMENT** is made by the undersigned Indemnitors for the benefit of Surety in connection with any Bond that may have been or may hereafter be provided for the benefit of or at the request of any one or more Indemnitors or Principals.

### A. DEFINITIONS

1. Bond: Any surety bond, undertaking, or other obligation in the nature of a guaranty or suretyship, as well as alterations, amendments, extensions, substitutions, and renewals issued or procured by the Surety on, before, or after the date of this Agreement for (i) any Indemnitor or any of their respective parent companies, or any present or future affiliate and/or subsidiary of Indemnitors subsidiaries, and affiliates; (ii) any joint venture, partnership, association, limited liability company, or other legal entity in which one or more of the persons and entities identified in subparagraph (i) have a direct or indirect interest; or (iii) at the request of any Indemnitor, its subsidiaries and/or affiliates.

   Bond also includes (i) Bond(s) and undertakings for which Surety has obligations as a result of an asset purchase, acquisition, merger or like transaction; (ii) Bond(s) for which Surety procures the execution of Bond(s) by other sureties; (iii) Bond(s) executed with co-sureties; and (iv) Bond(s) for which Surety obtains reinsurance.

2. Obligation: Any legal duty or contractual undertaking or otherwise, the performance of which is covered or guaranteed under a Bond.

3. Principal: The person(s) and entity(ies) whose Obligation(s) Surety is requested to guarantee by issuing or procuring a Bond. Principal includes any person or entity identified on a Bond as "Principal" or "Contractor."

4. Surety: Any one or more of Sirius America Insurance Company, any of its present or future direct or indirect parent companies, affiliates or subsidiaries and any of the aforementioned entities' successors or assigns. The term Surety shall also include any other person or entity which, at the request of any one or more Indemnitors or Principals, may act as surety, co-surety or reinsurer on any Bond(s).

5. Indemnitors:   the undersigned persons or entities, individually and collectively

6. Loss: Any (i) claim, demand, liability, charge, suit, fee, or expense, including but not limited to attorney and consultant fees, incurred by the Surety as a result of issuing or procuring a Bond; (ii) any cost incurred by Surety (a) in investigation or adjustment of any claim or potential claim under a Bond; (b) in procuring or attempting to procure a release from liability under a Bond; (c) in enforcing the Indemnitors' obligations under this Agreement, including but not limited to attorneys' fees; and (d) any other cost incurred by Surety arising from the issuance or procurement of a Bond. For the avoidance of doubt, the term Loss includes all attorneys' fees, costs or other expenses incurred by Surety in connection with a bankruptcy proceeding (whether voluntary or involuntary), an assignment for the benefit of creditors, a receivership (whether state, federal or otherwise) or any other similar insolvency proceeding (whether state, federal or otherwise) of am Indemnitor or Principal.

7. Event of Default: Any one or more of the following: (i) any breach of the terms and conditions of this Agreement; (ii) Principal's breach, abandonment, forfeiture, or declaration of default by an Obligee, of an Obligation; (iii) Indemnitors become the subject of any assignment for the benefit of creditors or proceeding of liquidation, receivership, bankruptcy, insolvency whether voluntarily or involuntarily; (iv) Indemnitor, if an individual, dies, is convicted of a felony, becomes a fugitive from justice, or disappears for any reason and cannot immediately be found by Surety by use of usual methods; (v) the sustaining of Loss by Surety under Bond(s); and/or (vi) the establishment by Surety of reserves against Loss.

### B. PROMISES AND AGREEMENTS

In consideration of, and as an inducement to, Surety's execution and/or delivery of one or more Bonds, refraining from canceling one or more Bonds, and/or assumption of obligations by Surety of one or more Bonds, and for other good and valuable consideration, Indemnitors jointly and severally undertake and agree:

8. To pay all premiums for each Bond, as they fall due. Indemnitors specifically acknowledge and agree that Surety's right to charge and collect premiums continues until Surety is provided written evidence, satisfactory to the Surety that its liability on such Bond has been discharged or Surety's liability has been terminated as a matter of law.

9. To defend, indemnify, save harmless, and exonerate Surety from and against any and all Loss which the Surety may incur or pay.

10. To promptly reimburse Surety for all sums paid on account of Loss and it is agreed that (i) originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss, (ii) Surety shall be entitled to reimbursement for any and all disbursements made by it, under the belief that it was liable, or that such disbursement was necessary or expedient.

11. Immediately upon becoming aware of any demand, notice, or proceeding preliminary to determine any liability, with which the Surety may be subsequently charged under any such bond, to notify the Surety thereof in writing.

12. In the event of a claim or notice of a potential claim, Surety shall have the right: (i), at all times, to free access to the books, records, and accounts of the Indemnitors for the purpose of examining and copying the same; and (ii) in its sole discretion, to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond(s). Surety shall have the exclusive right to determine for itself and Indemnitors whether any claim or suit brought against Surety or any Indemnitor or any Principal, or by any Indemnitor or Principal against a third party, upon or relating to any Bond shall be settled, compromised, prosecuted or defended and Surety's decision shall be binding upon the Indemnitors.

13. To deposit with Surety, on demand, the amount Surety deems necessary at the time of said demand to protect Surety from actual or anticipated Loss or the amount of any reserve against Loss which Surety is required, or deems it prudent, to establish whether on account of an actual liability or one which is, or may be, asserted against it and whether or not any payment for such Loss has been made. Indemnitors stipulate and agree that Surety will suffer immediate irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore Surety shall be entitled to specific performance of this obligation.

14. If Surety has or obtains collateral or letters of credit, Surety shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Surety with respect to each and every Bond. Any collateral or letters of credit provided to Surety by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

15. Under certain Bond(s), the obligee or beneficiary may make a demand for payment ("Demand") against the Bond(s). When such Demand is made, Surety must pay the amount of the Demand, not to exceed the penal sum of the Bond(s), and all necessary fees, within the time period required by the Demand. Surety, with the knowledge and consent of Indemnitors, has expressly waived all defenses to making such payment. If Indemnitors receive notice from Surety that a Demand has been made against the Bond(s) by the obligee or beneficiary, Indemnitors will, at least three (3) business days before payment of such Demand is due the obligee, pay Surety the full amount of the Demand, which amount shall not exceed the penal sum of the Bond, and all necessary fees. Such payment will be made by wire transfer or otherwise in immediately available funds to the bank account specified in the notice provided to the Indemnitors by Surety. Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make payment to Surety as herein provided shall cause the Indemnitors to be additionally liable for any and all costs and expenses, including but not limited to attorney's fees, incurred by Surety in enforcing this Agreement, together with interest on unpaid amounts due Surety. Interest shall accrue, commencing the date Surety pays the amount of the Demand, at 130% of the prime rate of interest in effect on December 31 of the previous calendar year as published in the Wall Street Journal. Indemnitors stipulate and agree that Surety will suffer immediate irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore Surety shall be entitled to specific performance of this obligation.

16. (i) Indemnitors shall, within thirty (30) days of receipt of Surety's written demand ("Discharge Demand"), procure the full and complete discharge of the Surety from any and all Bond(s) by providing competent written evidence of discharge satisfactory to Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned discharge Indemnitors shall, within an additional seven (7) days, provide Surety with an irrevocable letter of credit in form, content and by a bank acceptable to Surety. The letter of credit shall be in an amount equal to the total of all undischarged liability under said Bond(s), which liability shall be determined at the time of Surety's Discharge Demand. Collateral or letters of credit previously provided to Surety may be utilized to establish compliance with this provision. If the undischarged liability subsequently increases, then it

is Indemnitors' responsibility to ensure continued compliance with this provision at all times. All collateral or letters of credit held by Surety may be used, in Surety's sole discretion, to reimburse itself or to pay any and all Loss sustained or incurred by reason of or in connection with the furnishing of any or all Bond(s) and/or the enforcement of this Agreement.

(ii) Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement. Indemnitors stipulate and agree that Surety will not have an adequate remedy at law should Indemnitors fail to post said letter of credit and further agree as a result that Surety is entitled to specific performance of this provision. Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion.

(iii) Indemnitors further agree that this requirement for a letter of credit shall not limit or be deemed a waiver of the Surety's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral or letters of credit, or to take any other actions Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Loss under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon Surety's enforcement of this provision.

17. As security for their obligations hereunder, the Indemnitors grant Surety a security interest in all property, rights, and assets of the Indemnitors, including, but not limited to, all inventory, equipment, any general intangibles (including proprietary software) instruments, investments, contracts rights and sums which are or may become payable, insurance, accounts, and deposits needed to, secure itself or complete any Bonded Obligation ("Collateral").

This Agreement shall for all purposes constitute a Security Agreement for the benefit of Surety in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. In the event there is an Event of Default, Indemnitors hereby irrevocably authorize Surety, without notice to any Indemnitor, to perfect the security interest granted herein by filing either (i) this Agreement or a copy or other reproduction of this Agreement, and/or (ii) any initial financing statements or amendments thereto that describe the Collateral, and that contain any other information relating to any Indemnitor required by Part 5 of Article 9 of the UCC (or corollary statute) for the jurisdiction where such financing statement or amendment is filed. Surety may add schedules or other documents to this agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.

## C. GENERAL PROVISIONS

18. The validity and effect of this Agreement shall not be impaired by, and Surety shall incur no liability on account of, and Indemnitors need not be notified of: (i) Surety's failure or refusal to furnish Bond(s), including final Bond(s) where Surety has furnished a bid Bond; (ii) Surety's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond; (iii) the taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond; (iv) the release by Surety, on terms satisfactory to it, of any Indemnitors; or (v) information which may come to the attention of Surety which affects or might affect its rights and liabilities or those of any of the Indemnitors.

19. The validity and effect of this Agreement shall not be impaired by, and Surety shall incur no liability on account of, the cancellation or termination of any Bond(s).

20. Joint and Several Liability. The obligations of the Indemnitors hereunder are joint and several. Surety is authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and any such settlements shall not bar or prejudice actions by Surety against or affect the liability of the other Indemnitors. Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Surety under this Agreement have been satisfied in full.

21. Indemnitors also understand and agree that their obligations remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

22. Indemnitors waive any defense related to the date of this Agreement's execution and acknowledge that any and all Bonds executed pursuant to any Indemnitor's request before the date of this Agreement were executed by the Surety in reliance on this Agreement. Indemnitors understand and agree that this Agreement is a continuing agreement to indemnify over an indefinite period.

23. This Agreement shall remain in full force and effect until terminated. An Indemnitor may terminate liability to Surety under this Agreement by sending written notice by registered mail of intent to terminate to Sirius America Insurance Company, Senior Vice President, Surety, 180 Glastonbury Blvd, Glastonbury, CT 06033 Termination will be effective thirty (30) days after actual receipt of such notice by Surety, only for Bond(s) signed or committed to by Surety after the effective date of termination.

24. Upon demand and reasonable notice, the Surety shall be provided access to the books and record of the Indemnitors which includes but is not limited to papers, books, records, contracts, reports financial information and electronically stored information for the purpose of review and copying. Indemnitors acknowledge and agree that the notice requirement is waived in the event there is a claim or a potential claim. The Surety is authorized to obtain a credit report on any Indemnitor at any time while Surety may be liable under any Bond.

25. A duplicate or facsimile copy or electronic reproduction of the original document shall have the same force and effect as the original.

26. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

27. If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted. If the execution of this Agreement by any Indemnitor is defective or invalid for any reason, such defect or invalidity shall not affect the validity hereof as to any other Indemnitor.

28. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Surety, whether now existing or entered into hereafter.

29. Surety's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

30. This Agreement may not be altered or amended except by a writing executed by Indemnitors and Surety. This Agreement and the Indemnitors' obligations hereunder may not be assigned without the prior written consent of Surety.

31. The Indemnitors represent to the Surety that they have a substantial, material, and/or beneficial interest in the obtaining of Bonds by any of the Indemnitors and in the transaction(s) for which any of the other Indemnitors has applied or will apply to the Surety for Bonds pursuant to this Agreement. The Indemnitors represent that they have the full power and authority to execute, deliver, and perform this Agreement and to carry out the obligations stated herein. The Indemnitors further represent and warrant that their execution, delivery, and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of their respective organizational documents, any law, governmental rule, regulation, order, writ, injunction, judgment, or decree of any court or governmental authority, or any other agreement applicable to or binding upon the Indemnitors.

32. The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

**THIS SPACE INTENTIONALLY LEFT BLANK**

**Corporations, Limited Liability Corporations and Partnerships**

Instructions: An Authorized Officer and the Corporate Secretary must sign on behalf of the Corporation. The Manager or Member(s) should sign on behalf of the LLC Two signatures are required for all companies. Except for Limited Partnerships (LP) of Limited Liability Partnerships (LLP), all partner(s) must sign on behalf of the partnership, and for themselves. The General Partner or Managing Partner must sign on behalf of an LP or LLP.

Each of the undersigned represents: I am a secretary or a duly authorized officer/member/partner of each of the business entities which entered into this Agreement as an Indemnitor. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity. Having reviewed all such applicable documents, I represent and warrant that FIELDWOOD ENERGY LLC has the power and authority to enter into this Agreement and that the individuals executing this Agreement is/are duly authorized to do so.

**FIELDWOOD ENERGY LLC**

By: _/s/ M. Dane_   July 2, 2018 (Date)

By: _/s/ Thomas R. Lamme_   July 2, 2018 (Date)

\_\_\_\_\_-6779
(Federal Tax ID)

State of Texas )
                ) ss.:
County of Harris )

On this 2nd day of July, 20 18, before me personally appeared Mike Dane and Thomas Lamme known or proven to me to be the Officers _____ of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation for the uses and purposes therein mentioned, and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that he/she executed said instrument by authority of the Board of Directors of said corporation.

_/s/ Mindy A. Gregory_
Notary Public

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370

State of _____ )
                       ) ss.:
County of _____ )

On this \_\_\_\_ day of _____, 20\_\_\_\_, before me personally appeared _____, known or proven to me to be the _____ of the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said corporation for the uses and purposes therein mentioned, and on oath stated that the seal affixed is the seal of said corporation and that it was affixed and that he/she executed said instrument by authority of the Board of Directors of said corporation.

Notary Public

**AGREEMENT OF INDEMNITY**

*EVEREST*

This Agreement is entered into effective as of the 20th day of August, 2018 by each of the undersigned indemnitors, **for itself and for and on behalf of all of its subsidiary and affiliated companies, entities, divisions, and/or operating units, wherever located and however structured or named, whether or not named herein or signing below, and whether created before or after the date of this Agreement, all as if they were named herein and had signed below, and their successors and assigns, whether the succession or assignment occurs voluntarily or by operation of law** (individually "Indemnitor" or "Bond Principal" and collectively "Indemnitors" or "Bond Principals") in favor of Everest Reinsurance Company and Everest National Insurance Company, their successors and or assigns, and any co-surety, reinsurer, and/or any other company which may execute any Bond on behalf of on or more Indemnitors at the request of the Everest sureties named herein (individually or collectively "Surety").

**WHEREAS** an Indemnitor, in fulfillment of requirements imposed upon it or to further its business interests, may desire or be required to execute, give, or procure surety bonds, undertakings, guarantees, and other obligations, including any bond(s) predating this Agreement ("Bond" or "Bonds"), and has requested or may request Surety to write such Bonds, or to renew, continue, and/or refrain from canceling Bonds, whether in its own name or one of its subsidiary or affiliated companies, entities, divisions or operating units, alone or in concert with others.

**NOW THEREFORE**, in consideration of Surety executing, renewing, continuing, and/or refraining from canceling Bonds for the benefit of any Indemnitor, including all of its present and/or future owned and or controlled subsidiaries and affiliates, entities, divisions and/or operating units, whether alone or in joint venture with others, and whether or not named herein, and their successors and assigns, Indemnitors agree as follows:

1. **Payment and Cooperation.** Indemnitors shall pay or cause to be paid to Surety promptly when due all agreed premium amounts. Indemnitors shall cooperate with Surety and provide Surety copies of requested documents as well as access to Indemnitors' books, records, personnel, and properties to allow Surety to: a) analyze, assess, and/or underwrite proposed bonds; b) investigate any claims against any Bonds; and/or to c) investigate at any time and as often as Surety deems appropriate, the Indemnitors' compliance with and/or status of performance of Indemnitors' obligations under this Agreement and the Bonds.

2. **Indemnity.** Indemnitors shall indemnify the Surety and save it harmless from and against any and all liabilities, claims, demands, payments, losses, damages, expenses, and costs to investigate and/or resolve claims which Surety may at any time incur or pay by reason of or arising out of its execution or non-execution of any Bonds. Indemnitors shall place the Surety in funds to meet all of its liability under any Bond, promptly upon written request and before the Surety may be required to make any payment thereunder. The duty to indemnify and hold harmless also includes, without limitation, payment of Surety's losses, attorney's fees and expenses, and consultant's fees and disbursements incurred and/or paid with respect to any Bond: a) to investigate and/or resolve claims against the Bonds; b) in any action or proceeding between Indemnitors and Surety; and or c) in any action or proceeding between Surety and any third party. The duty to indemnify and hold harmless exists whether or not the claim is made against Surety as a joint and or several obligor and whether or not Indemnitors or any of them is then liable to or demanded to make a payment. A copy of the claim, demand, voucher, invoice, and/or other evidence of the potential liability of and/or payment by the Surety shall be prima facie evidence of the fact and amount of Indemnitors' liability to Surety under this Agreement.

3. **Additional Indemnity Terms.** The Indemnitors shall remain bound under the terms of this Agreement even if Surety, with or without notice to or knowledge of Indemnitors, may have accepted or released other agreements of indemnity or collateral from one or more Indemnitors or others. The rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to any and all other rights, powers and remedies which Surety may have or acquire against Indemnitors or others by operation of law or otherwise. Unless expressly stated to the contrary, this Agreement is not intended to and shall not be deemed to supersede any other indemnity agreement between one or more Indemnitors and Surety. Upon Surety's written demand, Indemnitors shall promptly deposit with Surety a clean, irrevocable letter of credit ("ILOC") on a form and from a bank acceptable to Surety, or shall provide another form of collateral acceptable to Surety (individually and collectively, the "Collateral") in the amount of any reserve Surety establishes for any existing liability or claim, and or any expenses associated therewith, whether or not any assertion or payment of such liability, claim, or expense has been made at the time of the Surety's demand. Further, Indemnitors expressly and specifically agree that Surety in its sole discretion and for any reason may by written demand require Indemnitors to secure within thirty (30) days the full and complete discharge of any and all Bonds ("Discharge Demand"). Within thirty-seven (37) days of Surety's Discharge Demand, Indemnitors shall provide to Surety Collateral as defined herein in the amount representing the total of any undischarged liability under the Bonds as determined by the Surety in its sole discretion. In the event of any increases in Surety's undischarged liability, Indemnitors shall supplement the Collateral to match the increase.

Surety shall have no obligation to release any Collateral provided to Surety, or remit to Indemnitors any interest or proceeds therefrom until Surety has received written releases or other documentation in form and substance satisfactory to Surety with respect to the discharge of Surety's obligations on all Bonds. Surety may apply the Collateral to any premium due, loss, cost and/or expense provided for in this Agreement. To the fullest extent allowed by law, Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement. Indemnitors further expressly stipulate and agree that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein, and agree that Surety is entitled to specific performance of the obligation to post collateral.

4. **Defects.** If any intended indemnitor fails to execute this Agreement, or if the execution hereof by any Indemnitor shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any Indemnitor executing this Agreement.

5. **Claim Resolution.** Surety, in its sole discretion, shall have the right to resolve any claim, demand, and or assertion of liability arising out of a

Exhibit C_00006

Bond, including claims in litigation or in another dispute resolution forum. Surety's resolution of any such claim shall be final and binding upon the Indemnitors. Indemnitors shall promptly reimburse Surety upon written demand for any payment by Surety arising from any Bond.

6. **Attorney-In-Fact.** Indemnitors irrevocably appoint and designate Surety as their attorney-in-fact to execute and to deliver any assignments, documents, agreements, instruments, and/or other documents Surety deems necessary and/or prudent to enforce Surety's rights under this Agreement.

7. **Declined Bonds.** Surety may decline at any time to execute any bond and Indemnitors shall make no claim to the contrary, regardless of any indication Surety may have expressed to Indemnitors or anyone else about Surety's intention to write any declined bond.

8. **Changes, Waiver of Notice.** Surety is authorized and empowered, without notice to or knowledge of Indemnitors, to assent to any change whatsoever in Bonds and/or the contracts or obligations underlying any Bonds, including but not limited to changes in the time for performance and any continuations, extensions or renewals of Bonds, the execution of any substitute or substitutes therefor with the same or different conditions, provisions and obligees, and with the same or larger or smaller penalties. Indemnitors specifically and expressly agree that they shall remain bound under the terms of this Agreement even though any such assent by Surety does or might substantially increase the liability of the Indemnitors. Indemnitors expressly waive any claim of entitlement to notice of: a) the execution of Bonds; b) acceptance of this Agreement; c) default under the Bonds or this Agreement; and/or d) any acts giving rise to or constituting a bond claim or liability of Surety under the Bonds.

9. **Prospective Termination.** This Agreement may be terminated with respect to an Indemnitor only to a limited extent, as follows: a) by a written notice from such Indemnitor; b) effective thirty (30) days after receipt by Surety of such notice from Indemnitor sent by registered mail to Surety's offices at: Everest National Insurance Company, 451 5th Avenue, New York, NY 10017, ATTN: Surety, or such other address Surety may in writing provide for this purpose; and c) subject to the conditions that: i) a notice of termination shall not operate to release, terminate, modify, bar, or otherwise discharge or reduce such Indemnitor's obligations to Surety for Bonds Surety executes or approves prior to the effective date of termination under this provision; ii) termination is effective only as to such Indemnitor providing written notice of termination in accordance with this paragraph; and iii) termination has no effect upon the obligations of the other Indemnitors under this Agreement.

10. **Severability.** If any provision(s) of this Agreement shall be declared void or unenforceable for any reason, this Agreement shall not be rendered void thereby, but to the fullest extent allowed by law shall be construed and enforced with the same effect as though such provision(s) were omitted.

11. **Choice of Law and Forum.** It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed, and shall be interpreted, and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York. Indemnitors agree that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consent to the personal jurisdiction and venue of any local, state or federal court located therein.

12. **Security Interest:** As security for their obligations hereunder, Indemnitors hereby grant to Company a Security interest in the following properties, assets and rights of Indemnitors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property supporting obligations, any Contract or contract rights or frights to the payment of money, insurance claims and proceeds, and all general intangibles (the "Collateral"). This Agreement shall for all purposes constitute a Security Agreement for the benefit of Company in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. Indemnitors hereby irrevocably authorize Company, without notice to any Indemnitor, in order to perfect the security interest granted herein, to file either: (a) this Agreement or a copy or other reproduction of this Agreement; or )b) any initial financing statements or amendments thereto that indicate the Collateral as all assets of Indemnitors or words of similar effect, as being of any equal or lesser scope or with greater detail and that contain any other information relating to any Indemnitor required by Part 5 of Article 9 of the UCC for the jurisdiction where such financing statement or amendment is filed. Company may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.

13. **Effect Of Change In Status/Transfer Of Assets** - Each Principal and Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to the extent such change has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Principal or Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Principal or Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. The Principal and Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status. Principal and Indemnitors acknowledge that the Surety relies upon the assets reflected in their financial statements in the issuance of Bonds, and agree not to dispose of or transfer said assets, except in the ordinary course of business, without the prior, express, written consent of Surety.

14. **Joint and Several Obligations.** Each Indemnitor is jointly and severally bound by the terms and conditions herein, whether or not each has executed this Agreement separately or has signed in a representative capacity.

15. **Electronic Transmission, Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all Indemnitors. This Agreement bearing the signature of the Indemnitors shall be valid, effective, and enforceable whether received by the Surety as an original or as an electronic or facsimile transmission.

Exhibit C_00007

IN WITNESS WHEREOF, Indemnitors have signed this Agreement effective as of the date stated above in the first paragraph of this Agreement. Signing Instructions: **Corporate Indemnitors** must sign by both the corporate secretary and another corporate officer; **Limited Liability Companies** must sign by the managing member(s) or official(s); **Partnerships** must sign by a managing partner; **Individuals** must sign individually.

Each of the undersigned hereby expressly represents and affirms to Surety with respect to any business entity in whose behalf he or she is executing this Agreement as an Indemnitor that he or she: 1) is a corporate secretary or duly authorized officer, manager, official, or partner of the business entity; 2) is familiar with the documents setting forth and establishing the rights governing the affairs, powers, and authority of such business entity including, as applicable, the certificate or articles of incorporation or organization, bylaws, corporate resolutions, partnership, and/or limited liability agreements of the business entity; 3) has reviewed all such applicable documents and instruments and such other facts deemed appropriate; 4) has established for himself or herself that the business entity has the power and authority to enter into this Agreement for its intended purposes, and 5) is duly authorized by the business entity to execute this Agreement on its behalf. **Complete Below Where Applicable**

**CORPORATE INDEMNITOR:** Fieldwood Energy, LLC - Indemnitor #1

**Fieldwood Energy, LLC** for itself and for and on behalf of all of its subsidiary and affiliated companies, entities, divisions, and or operating units, wherever located and however structured or named, whether or not named herein, and whether created before or after the date of this Agreement, as if they were named herein and had signed below, and their successors and assigns, whether the succession or assignment occurs voluntarily or by operation of law.

Tax ID #: ████ 6778
Address: 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas, 77042

By: _____ (Seal)    First of two required signatures
Name: Michael T. Dane
Title: Senior Vice President and Chief Financial Officer

By: _____    Second of two required signatures
Name: John H. Smith
Title: Senior Vice President Land and Business Development

ACKNOWLEDGMENT

State of Texas
County of Harris

On this 20th day of August, 2018, before me personally appeared Michael T. Dane, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the Senior Vice President and Chief Financial Officer of Corporate Indemnitor; b) executed the above Agreement on behalf of the Corporate Indemnitor as the free and voluntary act and deed of said Corporate Indemnitor for the uses and purposes stated therein; c) knows the seal of said Corporate Indemnitor; d) on oath stated that the seal affixed thereto is such seal and that it was so affixed by the order of the Board of Directors or controlling authority of said Corporate Indemnitor; and e) that he or she signed his or her name thereto by like order.

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370

(Signature of Notary Public)
My Commission expires:

ACKNOWLEDGMENT

State of Texas
County of Harris

On this 20th day of August, 2018, before me personally appeared John H. Smith, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the Senior Vice President Land and Business Development of Corporate Indemnitor ; b) executed the above Agreement on behalf of the Corporate Indemnitor as the free and voluntary act and deed of said Corporate Indemnitor for the uses and purposes stated therein; c) knows the seal of said Corporate Indemnitor; d) on oath stated that the seal affixed thereto is such seal and that it was so affixed by the order of the Board of Directors or controlling authority of said Corporate Indemnitor; and e) that he or she signed his or her name thereto by like order.

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370

(Signature of Notary Public)
My Commission expires:

Exhibit C_00008

General Agreement
Of Indemnity (GAI D)
("Agreement")

ASPEN AMERICAN INSURANCE COMPANY
Aspen Specialty Insurance Company
Rocky Hill, Connecticut 06067

ASPEN

This Agreement is entered into effective as of the 30th day of March, 2015 by each of the undersigned indemnitors, for itself and for and on behalf of all of its subsidiary and affiliated companies, entities, divisions, and/or operating units, related limited liability companies, partnerships, and other business ventures or entities, however denominated, whether alone or in joint venture with others, wherever located and however structured or named, whether or not named herein or signing below, and whether created before or after the date of this Agreement, all as if they were named herein and had signed below, and their successors and assigns, whether the succession or assignment occurs voluntarily or by operation of law (individually "Indemnitor" or "Bond Principal" and collectively "Indemnitors" or "Bond Principals") in favor of Aspen American Insurance Company, Aspen Specialty Insurance Company, their successors and or assigns, and any co-surety, reinsurer, and/or any other company which may execute any Bond on behalf of one or more Indemnitors at the request of the Aspen sureties named herein (individually or collectively "Surety").

**WHEREAS** an Indemnitor, in fulfillment of requirements imposed upon it or to further its business interests, may desire or be required to execute, give, or procure surety bonds, undertakings, guarantees, and other obligations, including any bond(s) predating this Agreement ("Bond" or "Bonds"), and has requested or may request Surety to write such Bonds, or to renew, continue, and/or refrain from canceling Bonds, whether in its own name or one of its subsidiary or affiliated companies, entities, divisions or operating units, alone or in concert with others.

**NOW THEREFORE**, in consideration of Surety executing, renewing, continuing, and/or refraining from canceling Bonds for the benefit of any Indemnitor, including all of its present and/or future owned and or controlled subsidiaries and affiliates, entities, divisions and/or operating units, whether alone or in joint venture with others, and whether or not named herein, and their successors and assigns, Indemnitors agree as follows:

1. **Payment and Cooperation.** Indemnitors shall pay or cause to be paid to Surety promptly when due all agreed premium amounts. Indemnitors shall cooperate with Surety and provide Surety copies of requested documents as well as access to Indemnitors' books, records, personnel, and properties to allow Surety to: a) analyze, assess, and/or underwrite proposed bonds; b) investigate any claims against any Bonds; and/or to c) investigate at any time and as often as Surety deems appropriate, the Indemnitors' compliance with and/or status of performance of Indemnitors' obligations under this Agreement and the Bonds.

2. **Indemnity.** Indemnitors shall indemnify the Surety and save it harmless from and against any and all liabilities, claims, demands, payments, losses, damages, expenses, and costs to investigate and/or resolve claims which Surety may at any time incur or pay by reason of or arising out of its execution or non-execution of any Bonds. Indemnitors shall place the Surety in funds to meet all of its liability under any Bond, promptly upon written request and before the Surety may be required to make any payment thereunder. The duty to indemnify and hold harmless also includes, without limitation, payment of Surety's losses, attorney's fees and expenses, and consultant's fees and disbursements incurred and/or paid with respect to any Bond: a) to investigate and/or resolve claims against the Bonds; b) in any action or proceeding between Indemnitors and Surety; and or c) in any action or proceeding between Surety and any third party. The duty to indemnify and hold harmless exists whether or not the claim is made against Surety as a joint and or several obligor and whether or not Indemnitors or any of them is then liable to or demanded to make a payment. A copy of the claim, demand, voucher, invoice, and/or other evidence of the potential liability of and/or payment by the Surety shall be prima facie evidence of the fact and amount of Indemnitors' liability to Surety under this Agreement.

3. **Additional Indemnity Terms.** The Indemnitors shall remain bound under the terms of this Agreement even if Surety, with or without notice to or knowledge of Indemnitors, may have accepted or released other agreements of indemnity or collateral from one or more Indemnitors or others. The rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to any and all other rights, powers and remedies which Surety may have or acquire against Indemnitors or others by operation of law or otherwise. Unless expressly stated to the contrary, this Agreement is not intended to and shall not be deemed to supersede any other indemnity agreement between one or more Indemnitors and Surety. Upon Surety's written demand, Indemnitors shall promptly deposit with Surety a clean, irrevocable letter of credit ("ILOC") on a form and from a bank acceptable to Surety, or shall provide another form of collateral acceptable to Surety (individually and collectively, the "Collateral") in the amount of any reserve Surety establishes for any existing liability or claim, and or any expenses associated therewith, whether or not any assertion or payment of such liability, claim, or expense has been made at the time of the Surety's demand. Further, Indemnitors expressly and specifically agree that Surety in its sole discretion and for any reason may by written demand require Indemnitors to secure within thirty (30) days the full and complete discharge of any and all Bonds ("Discharge Demand"). Within thirty-seven (37) days of Surety's Discharge Demand, Indemnitors shall provide to Surety Collateral as defined herein in the amount representing the total of any undischarged liability under the Bonds as determined by the Surety in its sole discretion. In the event of any increases in Surety's undischarged liability, Indemnitors shall supplement the Collateral to match the increase.

    Surety shall have no obligation to release any Collateral provided to Surety, or remit to Indemnitors any interest or proceeds therefrom until Surety has received written releases or other documentation in form and substance satisfactory to Surety with respect to the discharge of Surety's obligations on all Bonds. Surety may apply the Collateral to any premium due, loss, cost and/or expense provided for in this Agreement. To the fullest extent allowed by law, Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement. Indemnitors further expressly stipulate and agree that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein, and agree that Surety is entitled to specific performance of the obligation to post collateral.

4. **Defects.** If any intended indemnitor fails to execute this Agreement, or if the execution hereof by any Indemnitor shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any Indemnitor executing this Agreement.

5. **Claim Resolution.** Surety, in its sole discretion, shall have the right to resolve any claim, demand, and or assertion of liability arising out of a Bond, including claims in litigation or in another dispute resolution forum. Surety's resolution of any such claim shall be final and binding upon the Indemnitors. Indemnitors shall promptly reimburse Surety upon written demand for any payment by Surety arising from any Bond.

6. **Attorney-In-Fact.** Indemnitors irrevocably appoint and designate Surety as their attorney-in-fact to execute and to deliver any assignments, documents, agreements, instruments, and/or other documents Surety deems necessary and/or prudent to enforce Surety's rights under this Agreement.

7. **Declined Bonds.** Surety may decline at any time to execute any bond and Indemnitors shall make no claim to the contrary, regardless of any indication Surety may have expressed to Indemnitors or anyone else about Surety's intention to write any declined bond.

Exhibit C_00009

8. **Changes, Waiver of Notice.** Surety is authorized and empowered, without notice to or knowledge of Indemnitors, to assent to any change whatsoever in Bonds and/or the contracts or obligations underlying any Bonds, including but not limited to changes in the time for performance and any continuations, extensions or renewals of Bonds, the execution of any substitute or substitutes therefor with the same or different conditions, provisions and obligees, and with the same or larger or smaller penalties. Indemnitors specifically and expressly agree that they shall remain bound under the terms of this Agreement even though any such assent by Surety does or might substantially increase the liability of the Indemnitors. Indemnitors expressly waive any claim of entitlement to notice of: a) the execution of Bonds; b) acceptance of this Agreement; c) default under the Bonds or this Agreement; and/or d) any acts giving rise to or constituting a bond claim or liability of Surety under the Bonds.

9. **Prospective Termination.** This Agreement may be terminated with respect to an Indemnitor only to a limited extent, as follows: a) by a written notice from such Indemnitor; b) effective thirty (30) days after receipt by Surety of such notice from Indemnitor sent by registered mail to Surety's offices at: Aspen American Insurance Company, 175 Capital Boulevard, Rocky Hill, Connecticut 06067, ATTN: Surety, or such other address Surety may in writing provide for this purpose; and c) subject to the conditions that: i) a notice of termination shall not operate to release, terminate, modify, bar, or otherwise discharge or reduce such Indemnitor's obligations to Surety for Bonds Surety executes or approves prior to the effective date of termination under this provision; ii) termination is effective only as to such Indemnitor providing written notice of termination in accordance with this paragraph; and iii) termination has no effect upon the obligations of the other Indemnitors under this Agreement.

10. **Severability.** If any provision(s) of this Agreement shall be declared void or unenforceable for any reason, this Agreement shall not be rendered void thereby, but to the fullest extent allowed by law shall be construed and enforced with the same effect as though such provision(s) were omitted.

11. **Choice of Law and Forum.** It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed, and shall be interpreted, and the rights and liabilities of the parties determined, in accordance with the laws of the State of New York. Indemnitors agree that all actions or proceedings arising directly or indirectly from this Agreement shall be litigated only in courts having status within the State of New York, and consent to the personal jurisdiction and venue of any local, state or federal court located therein.

12. **Joint and Several Obligations.** Each Indemnitor is jointly and severally bound by the terms and conditions herein, whether or not each has executed this Agreement separately or has signed in a representative capacity.

13. **Electronic Transmission, Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all Indemnitors. This Agreement bearing the signature of the Indemnitors shall be valid, effective, and enforceable whether received by the Surety as an original or as an electronic or facsimile transmission.

**IN WITNESS WHEREOF**, Indemnitors have signed this Agreement effective as of the date stated above in the first paragraph of this Agreement.

<u>Signing Instructions</u>: **Corporate Indemnitors** must sign by both the corporate secretary and another corporate officer; **Limited Liability Companies** must sign by the managing member(s) or official(s); **Partnerships** must sign by a managing partner; **Individuals** must sign individually.

Each of the undersigned hereby expressly represents and affirms to Surety with respect to any business entity in whose behalf he or she is executing this Agreement as an Indemnitor that he or she: 1) is a corporate secretary or duly authorized officer, manager, official, or partner of the business entity; 2) is familiar with the documents setting forth and establishing the rights governing the affairs, powers, and authority of such business entity including, as applicable, the certificate or articles of incorporation or organization, bylaws, corporate resolutions, partnership, and/or limited liability agreements of the business entity; 3) has reviewed all such applicable documents and instruments and such other facts deemed appropriate; 4) has established for himself or herself that the business entity has the power and authority to enter into this Agreement for its intended purposes, and 5) is duly authorized by the business entity to execute this Agreement on its behalf. **Complete Below Where Applicable**

Exhibit C_000010

Page 2 of 3

LIMITED LIABILITY COMPANY INDEMNITOR: Fieldwood Energy LLC     Indemnitor # 1

Tax ID #: ▓▓▓▓6778
Address: 2000 West Sam Houston Parkway South Suite 1200
Houston, TX 77042

By: _____

Name: James P. Ulm II
Title: Senior Vice President & Chief Financial Officer

## ACKNOWLEDGMENT

State of Texas

County of Harris

On this 30th day of March, 2015, before me personally appeared James P. Ulm II, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the Senior Vice President & Chief Financial Officer of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

_____
(Signature of Notary Public)
My Commission expires:

Exhibit C_000011

Page 3 of 3



## COMMERCIAL SURETY GENERAL INDEMNITY AGREEMENT

**Whereas** the undersigned (hereinafter individually and collectively called "UNDERSIGNED") desires Berkley Insurance Company and/or Berkley Regional Insurance Company, and their successors, assigns, co-sureties, fronting companies, and/or reinsurers, whether in existence now or formed hereafter, as the case may be,(hereinafter called "SURETY") to execute bonds including undertakings and other obligations, including any bond or bonds predating this Agreement, (hereinafter referred to as "Bonds") on its behalf and on behalf of any of its present or future, directly or indirectly owned or controlled subsidiaries or affiliates, whether alone or in joint venture with others whether or not named herein, and any corporation, partnership or person upon the written request of any of the undersigned (collectively hereinafter referred to as "Principals") or to renew or continue and to refrain from canceling the Bonds, as the case may be.

**Now, therefore,** in consideration of the SURETY executing the Bonds, the UNDERSIGNED agree that:

1. The UNDERSIGNED shall indemnify and save harmless the SURETY from and against any and all liability, claim, demand, loss, damages, expense, cost, attorney's fees and expenses, including without limitation, fees and disbursements of counsel incurred by the SURETY in any action or proceeding between the UNDERSIGNED and the SURETY, or between the SURETY and any third party, which SURETY shall at any time incur by reason of its execution of any Bond or its payment of or its liability to pay any claim, irrespective of whether the claim is made against the SURETY as a joint or several obligor and whether the UNDERSIGNED is then liable to make such payment.

2. At the request of the SURETY The UNDERSIGNED shall provide the SURETY with collateral security, in the form of cash or letter of credit, from an acceptable bank in the sole discretion of the SURETY, on the form specified by the SURETY, for its suretyship to hold until the UNDERSIGNED shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bond. The UNDERSIGNED expressly waives any right to interest which may be earned on the collateral security and further consents that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The Surety's election not to demand collateral at the inception of the suretyship obligation shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bond. The Surety may at its option require collateral in the form of current cash funds in such amount, in the sole discretion of the SURETY, as may be required to discharge its liability under the Bond, and the UNDERSIGNED agree to place such funds with the SURETY immediately on demand.

3. A copy of any claim, demand, voucher or other evidence of the payment by the SURETY of any liability, claim, demand, loss, damage, expense, cost and attorney's fees, shall be prima facie evidence of the fact and amount of UNDERSIGNED'S liability to the SURETY under this Agreement. Any demand upon the SURETY by the Obligee shall be sufficient to conclude that a liability exists and the UNDERSIGNED shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

4. The UNDERSIGNED shall pay when due the premium for all Bonds.

5. The UNDERSIGNED shall continue to remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the Principals and the UNDERSIGNED, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the principals or UNDERSIGNED or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the Principals and UNDERSIGNED or others, whether by the terms of any agreement or by operation of law or otherwise.

6. All of the terms, provisions and conditions of this Agreement shall be extended to and for the benefit not only of the SURETY, either as a direct writing company or as a co-surety or reinsurer, but also for the benefit of any surety or insurance company or companies with which the SURETY may participate as a co-surety or reinsurer and also for the benefit of any other company which may execute any Bond or Bonds at the request of the SURETY on behalf of any of the Principals.

7. The SURETY has no obligation to execute, renew, continue, extend, amend, or replace any Bonds, including final bonds (regardless of whether the SURETY has issued a bid or proposal bond) and may at its sole discretion decline to do so. The SURETY may cancel any Bonds in accordance with the Bonds' terms and conditions, and the UNDERSIGNED shall make no claim to the contrary. The UNDERSIGNED shall make no claim relating to the failure or refusal of any person or entity to accept any of the SURETY's Bonds or to award any contract to any UNDERSIGNED.

8. The SURETY is authorized and empowered, without notice to or knowledge of the UNDERSIGNED, to assent to any change whatsoever in Bonds and/or the contracts or obligations covered by any said Bonds including but not limited to the time for performance and any continuations, extensions or renewals of the Bonds, the execution of any substitute or substitutes therefore, with the same or different conditions, provisions and obligees with the same or larger or smaller penalties; it being expressly understood and agreed that the UNDERSIGNED shall remain bound under the terms of this Agreement even though any such assent by the SURETY does or might substantially increase the liability of the UNDERSIGNED. The UNDERSIGNED waives notice of the execution of Bonds, acceptance of this Agreement, default or other acts giving rise to a Bond claim or liability of the SURETY under Bonds.

9. This Agreement may be terminated by the UNDERSIGNED upon twenty days' written notice sent by certified or registered mail to the SURETY at its administrative offices at 412 Mt. Kemble Ave., Suite 310N, Morristown, NJ 07960, but any such notice of termination shall not operate to modify, bar or discharge the UNDERSIGNED as to any Bonds executed prior to the effective date of such notice of termination.

Exhibit C_000012

10. In case any of the UNDERSIGNED fails to execute this Agreement, or in case the execution hereof by any of the UNDERSIGNED be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the UNDERSIGNEDS executing the same, but each and every UNDERSIGNED so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

11. It is mutually agreed that this Agreement is deemed made in the State of New York, regardless of the order in which the signatures of the parties shall have been affixed and shall be interpreted, and the rights and liabilities of the parties determined in accordance with the laws of the State of New York. UNDERSIGNED agrees that all actions or proceedings arising directly or indirectly from this Agreement may, at the sole option and discretion of the Surety, be litigated in courts within the State of New York, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein.

12. Each UNDERSIGNED, its successors and assigns, are jointly and severally bound by the foregoing conditions of this Agreement.

13. This Agreement bearing the signature of the UNDERSIGNED shall be valid, effective and enforceable whether received by the Surety as an original or as a facsimile transmission or in electronic form executed by e-signature. The faithful reproduction of this Agreement in any form shall be admissible as evidence of the terms thereof.

BY SIGNING BELOW, EACH INDIVIDUAL EXECUTING THIS AGREEMENT ON BEHALF OF A BUSINESS ENTITY, AND EACH BUSINESS ENTITY EXECUTING THIS AGREEMENT ON BEHALF OF ANOTHER BUSINESS ENTITY, REPRESENTS AND WARRANTS THAT HE, SHE OR IT IS DULY AUTHORIZED BY UNDERSIGNED (S) TO BIND UNDERSIGNED(S) TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT:

In Witness Whereof, the UNDERSIGNED (has) (have) signed this Agreement this _11th_ day of _May_, 20_15_.

Attest or Witness

By: _Thomas R. Lamme_
Thomas R. Lamme, Secretary
*Type or Print Name and Title*

Fieldwood Energy LLC
(Name of Company)
_____6778
(Company I.R.S. E.I.N.)

By: _[signature]_
James P. Ulm II, Senior Vice President & Chief Financial Officer
*Type or Print Name and Title*

## CORPORATE ACKNOWLEDGEMENT

State of _Texas_
                   ss.
County of _Harris_

On this _11th_ day of _May_, 20_15_, before me personally appeared _James P. Ulm II_ and _Thomas R. Lamme_, known by me to be the _Sr. Vice President & CFO_ and the _Secretary_ of the corporation described in and which executed the foregoing General Agreement of Indemnity; and who being by me sworn, depose and says that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was affixed by the order of the Board of Directors of said corporation, and that they signed their names thereto by like order.

IN WITNESS WHEROF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_[signature]_
(Signature of Notary Public)

My commission expires _September 14, 2017_

> MINDY A. GREGORY
> Notary Public, State of Texas
> My Commission Expires
> September 14, 2017

Attest or Witness
BSG GIA COMM 130328                *A Berkley Company*                Exhibit C_000013
                                                                     Page 2 of 3

(Name of Company)

_____
(Company I.R.S. E.I.N.)

By: _____   By: _____

*Type or Print Name and Title*            *Type or Print Name and Title*

## CORPORATE ACKNOWLEDGEMENT

State of _____
                          ss.
County of _____

On this _____ day of _____, 20___, before me personally appeared _____ and _____, known by me to be the _____ and the _____ of the corporation described in and which executed the foregoing General Agreement of Indemnity; and who being by me sworn, depose and says that (s)he knows the seal of said corporation; that the seal affixed to said Agreement is such corporate seal; that it was affixed by the order of the Board of Directors of said corporation, and that they signed their names thereto by like order.

IN WITNESS WHEROF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
(Signature of Notary Public)

My commission expires _____

Exhibit C_000014
BSG GIA COMM 130328    *A Berkley Company*    Page 3 of 3