IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, et al. | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**W&T OFFSHORE, INC. AND W&T ENERGY VI, LLC'S OBJECTION TO DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS**

W&T Offshore, Inc. and W&T Energy VI, LLC (collectively, "W&T") file this objection to the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Doc. No. 723) (the "Disclosure Statement")[1] and state as follows:

## I.   INTRODUCTION

W&T is a predecessor in title, operator, or working interest owner in a significant number of leases in which Fieldwood also has interests. These leases are included in every category of assets created by Fieldwood's proposed plan structure. W&T files this objection to the Disclosure Statement because the Disclosure Statement fails to provide adequate information in a few key respects:

- Fieldwood does not provide disclosure of decommissioning liabilities and identities of other predecessors and working interest owners. Moreover, Fieldwood's financial disclosures are insufficient for parties to identify asset values, liquidation values, and potential cash flows in order to assess whether

---

[1] Just prior to the filing of this objection, the Debtors filed an Amended Disclosure Statement [Docket No. 1022]. W&T has not had an opportunity to review the Amended Disclosure Statement in detail, but an initial review suggests that the majority of W&T's objection have not been addressed. W&T reserves the right to file any additional objections to the Amended Disclosure Statement.

PAGE 1

- Fieldwood's proposed decommissioning entities can accomplish the decommissioning work. Fieldwood has not provided any of the financial analysis a debtor would typically provide to allow parties to assess feasibility of the plan and to compare the plan to a liquidation.

- Fieldwood tries to create the impression that it can avoid decommissioning obligations through abandonment and in many instances proposes abandoning fractional shares of its interests while transferring other fractional interests in the same lease to FWE I. Fieldwood cannot avoid the administrative burden of its decommissioning obligations through abandonment, and Fieldwood's regulatory obligations will survive that effort. W&T reserves all rights related to Fieldwood's on-going decommissioning obligations.

In addition to these disclosure issues, Fieldwood's voting procedures improperly disenfranchise unsecured creditors and the plan is not confirmable. Fieldwood's improper attempt to abandon its environmental liabilities and provide broad third party releases preclude confirmation. For these reasons the Court should deny approval of the Disclosure Statement and require Fieldwood to provide additional information before proceeding with confirmation.

## II.  FACTUAL BACKGROUND

Fieldwood's Disclosure Statement broadly describes a division of its assets into three categories: assets to be purchased by a credit bid, legacy Apache assets to be placed in FWE I, additional assets to be placed in FWE III, and certain assets to be abandoned. *See* Doc. 723 at 2-3. Both FWE I and FWE III are described as primarily existing to complete decommissioning work. *Id.*

Fieldwood provides certain exhibits of leases purportedly to identify which category each lease will go in following the proposed restructuring transactions. *See* Doc. 723, Ex. D-F. A significant number of leases appear on multiple exhibits. Fieldwood attempts to explain why leases might appear on multiple schedules in footnote 5 of the Disclosure Statement:

> [5] For any lease that is listed on **Exhibit C** (Purchased Oil & Gas Lease Interests) and also on any of **Exhibits D-F**, (i) FWE I is to obtain solely the right, title and interest of FWE obtained from Apache in such lease and (ii) the interests to be obtained by the Credit Bid Purchaser or FWE III or to be abandoned, as applicable, shall be all right, title and interest of FWE in such lease (less such right, title and interest obtained from Apache).

Fieldwood provides no breakdown as to which component of any title interest may be abandoned as opposed to purchased, placed in FWE I, or placed into FWE III. Fieldwood also does not identify the working interest owners or predecessors associated with its lease interests, and Fieldwood provides no disclosure of the treatment of rights of way, facilities, or other pipeline systems. Fieldwood provides only ranges of decommissioning liabilities with no disclosure of these liabilities on a lease-by-lease basis. While Fieldwood mentions being in discussions with the applicable regulatory authorities, Fieldwood does not explain whether its contemplated transfer of leases is feasible from a regulatory perspective or likely to obtain regulatory approval.[2]

W&T has a significant number of leases for which it is either a predecessor in title or joint working interest owner with various Debtor entities. Leases with a W&T interest appear on Fieldwood's lists of purchased assets, FWE I assets, FWE III assets, and abandoned assets and involve millions in decommissioning liabilities.

### III.     ARGUMENTS AND AUTHORITIES

---

[2] Fieldwood has indicated it plans to file an amended disclosure statement for weeks now. W&T anticipates the amendment may provide some, but not all, of this additional information. W&T reserves all rights regarding objections to any amended disclosure statement.

A disclosure statement must contain "adequate information" before a bankruptcy court may approve it. 11 U.S.C. § 1125. Bankruptcy Code § 1125(a)(1) defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information….

*Id*. § 1125(a)(1).

In practice, courts have characterized the phrase "adequate information" as information sufficient to permit the holders of claims against a debtor to make an informed choice regarding the approval or rejection of a plan. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988), *cert. den*. 488 U.S. 926 (1988). A disclosure statement should provide creditors with enough information about the proposed plan for them to decide whether to approve its treatment of their claims. *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd In re Duratech Indus., Inc.*, 241 B.R. 283 (E.D.N.Y. 1999). Determining whether a plan provides "adequate information" lies largely within the bankruptcy court's discretion. *In re Village Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) (noting that what constitutes "adequate information" lies within the bankruptcy court's "substantial discretion").

**A.      Fieldwood's Disclosure Statement Lacks Adequate Information.**

The Disclosure Statement contains gaps in information that make it impossible for parties in interest to evaluate the full effects of the plan. The gaps in information are compounded by duplication in the exhibits explaining which assets will be sorted into which post-emergence entity. These gaps include at least the following:

- For the dozens of leases listed on multiple exhibits, Fieldwood provides no breakdown as to what specific interest it purports to abandon within any given lease interest as opposed to the interests being purchased, transferred to FWE I, or transferred to FWE III. Fieldwood should disclose what leases are going into which category, and if Fieldwood is attempting to abandon fractional interests in certain leases, it should set out those interests clearly to allow parties in interest to understand the effect such an approach will have on revenues and decommissioning liabilities.

- Fieldwood provides no disclosure of the many pipeline rights of way it owns as well as its interest and obligations related to significant pipeline systems such as the High Island Pipeline System (HIPS).

- Fieldwood does not identify the predecessors or working interest owners to which it purports to "abandon" its lease interests and further fails to identify interest that may be orphaned to the taxpayer. That information is critical to provide notice and due process to parties potentially affected by the Plan, allow parties to evaluate the potential environmental implications of abandonment, effect on going-forward joint interest billings, and effect on revenues under a significant set of operating agreements. Moreover, Fieldwood's apparent plan to abandon certain components of its lease interests while transferring others further obscures what interests may be left behind for predecessors and working interest owners to address.

- The Disclosure Statement does not discuss substantive consolidation. It is unclear what happens with existing entities and how the reverse merger concept will work from a regulatory perspective. Moreover, to the extent leases are transferred from a debtor entity to a new entity, those transfers must be approved by the applicable regulatory authorities.

Fieldwood has not explained how it can transfer terminated or relinquished lease interests to new entities or what happens under the plan if transfers are disallowed by the regulators.

- Fieldwood proposes creating two entities to perform decommissioning work—FWE I and FWE III. Fieldwood fails to provide financial projections or other information sufficient to determine whether those entities are adequately capitalized to complete significant plugging and abandonment. Fieldwood further fails to disclose the extent of plugging and abandonment liabilities on a lease-by-lease basis. The significant overlap between the FWE I, FWE III, and abandonment schedules makes this analysis vastly more difficult. Fieldwood should provide adequate information to allow parties to determine whether these entities can accomplish the proposed decommissioning without need for further reorganization in the future.

- Fieldwood has yet to provide liquidation analysis, financial expenses, or any discussion of the magnitude of administrative expenses. Fieldwood also fails to explain how the significant cash on hand will be utilized.

- Fieldwood does not disclose that it cannot eliminate its environmental obligations through an abandonment process. Fieldwood's administrative burden to plug and abandon its assets remains, and abandonment does not eliminate those liabilities.

- Fieldwood does not disclose any type of marketing process for shelf assets or other alternatives to abandonment. For the purchased assets, Fieldwood identifies a credit bid but has presented no bid procedures, sale procedures, or details regarding the terms of the sale. Fieldwood should explain all marketing efforts for remaining assets and create a structure that allows for the potential rescue of assets.

- Fieldwood identifies a transition services agreement for FWE I but fails to identify the terms associated with that agreement. (Doc. 723 at 8). Fieldwood further states FWE III will "leverage" the plugging and abandonment experience of the Credit Bid Purchaser entity but fails to identify terms associated with that process either. (Doc. 723 at 64).

B.  **Fieldwood's Voting Procedures Are Improper.**

Fieldwood proposes allowing a $1.00 vote for claims that are "unliquidated, contingent, and / or disputed." (Doc. No. 724 at 18-19). McMoRan anticipates Fieldwood will apply this treatment to claims arising from Fieldwood's proposed abandonment of in excess of $1 billion in plugging and abandonment liabilities. Instead, creditors should be allowed to vote the amount of the liabilities Fieldwood seeks to foist upon them through the plan process. A $1.00 vote is no vote at all, particularly given the treatment of unsecured creditors.

C.  **Fieldwood's "Abandonment" Structure is Unconfirmable.**

Fieldwood purports to abandon its interest in a huge set of leases. However, Fieldwood does not address the fact that it cannot avoid the related environmental liabilities through abandonment. *See* 30 CFR § 250.1702; *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986); *In re Anglo-Suisse Offshore Partners, LLC*, Case No. 15-36566 (Bankr. S.D. Tex. Apr. 6, 2016) (Dkt. No. 63); *In re Amer. Coastal Energy, Inc.*, 339 B.R. 805, 812 (Bankr. S.D. Tex. 2009). The Court should not approve any plan that allows Fieldwood to walk from a vast public health and safety crisis of its own making.

Moreover, while attempting to abandon its own liabilities is problematic enough, Fieldwood goes further by providing impermissible third party releases to "the Apache PSA Parties." (*See* Doc. 723 at 34). Apache is a working interest owner or predecessor in title for a significant set of lease interests including some on the "abandoned" property list. Nothing in the

plan should purport to release Apache from any of its environmental obligations or obligations to third parties, joint working interest owners, and others in the chains of title for any of the Debtors' assets.

## IV. RESERVATION OF RIGHTS

W&T reserves all rights regarding any amended Disclosure Statement, plan confirmation, contract assumption and rejection, and its claims in this case, including, but not limited to, administrative priority claims related to decommissioning work, adequate protection for such expenditures, and all other rights in this case.

WHEREFORE, W&T Offshore, Inc. and W&T Energy VI, LLC pray the Court sustain this objection and grant such other relief as may be just and proper.

Dated:  March 16, 2021

Respectfully submitted,

*/s/ Philip G. Eisenberg*
**Philip G. Eisenberg**
  Texas Bar No. 24033923
**Elizabeth Guffy**
  Texas Bar No. 8592525
**Simon Mayer**
  Texas Bar No. 24060243
**Eric Boylan**
  Texas Bar No. 24105519
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone:  (713) 226-1200
Fax:  (713) 223-3717
peisenberg@lockelord.com
eguffy@lockelord.com
simon.mayer@lockelord.com
eric.boylan@lockelord.com

-and-

        **Omer F. Kuebel, III**
         Federal Bar No. 32595
        **Bradley C. Knapp**
         Texas Bar No. 24060101
        **LOCKE LORD LLP**
        601 Poydras St., Suite 2660
        New Orleans, Louisiana 70130
        Telephone: (504) 558-5210
        Fax: (504) 558-5200
        rkuebel@lockelord.com
        bknapp@lockelord.com

        **ATTORNEYS FOR W&T OFFSHORE, INC.
        AND W&T ENERGY VI, LLC**

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing was served via the Court's ECF system on those parties consenting to service through same on March 16, 2021.

        */s/ Philip G. Eisenberg*
        Philip G. Eisenberg