IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § § | Case No. 20-33948 (MI) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING
AND APPROVING SETTLEMENT AGREEMENT BETWEEN DEBTORS AND
SANARE ENERGY PARTNERS LLC AND (II) GRANTING RELATED RELIEF

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**Preliminary Statement**

1. After extensive negotiations, Fieldwood SD Offshore LLC, and Fieldwood Energy Offshore LLC (collectively, "**Fieldwood**") and Sanare Energy Partners LLC ("**Sanare**" and, together with Fieldwood, the "**Parties**") executed the settlement agreement attached hereto as **Exhibit 1** to the Proposed Order (the "**Settlement Agreement**"),[2] which settles claims and controversies between the Parties in the state court action styled *Fieldwood Energy LLC, Fieldwood SD Offshore LLC & Fieldwood Energy Offshore LLC v. Sanare Energy Partners LLC*, No. 2020-39647 pending in the 270th Judicial District of Harris County, Texas (the "**State Court Lawsuit**") and the adversary proceeding styled *Fieldwood Energy LLC v. Sanare Energy Partners LLC*, Adversary Proceeding No. 20-03460 (MI) (the "**Adversary Proceeding**"), pursuant to which the Debtors removed the State Court Lawsuit to this Court. As further detailed below, the Settlement Agreement resolves a commercial dispute arising from Sanare's failure to pay outstanding joint interest billings and other charges due to Fieldwood under seven operating agreements, and provides, among other things, that Sanare will pay Fieldwood approximately $532,100.35 (the "**Settlement Payment**") by applying revenue from Sanare's production share under one of the joint operating agreements until the date on which the Settlement Payment is paid in full. As detailed below, the Settlement Payment represents the full amount owed by Sanare to Fieldwood in joint interest billings, less amounts owed by Fieldwood to Sanare in joint interest billings, and less revenue amounts already withheld by Fieldwood.

2. The Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates and their creditors.

---

[2] Any capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Settlement Agreement.

The proposed Settlement Agreement is well within the range of reasonableness, particularly when factoring in the time, expense, and risk in continuing to pursue any litigation. Entry into the Settlement Agreement is a sound exercise of the Debtors' business judgment. Accordingly, the Debtors request that the Court approve the Settlement Agreement and authorize the Debtors to consummate the terms therein.

### Relief Requested

3. By this Motion, the Debtors respectfully request entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 (i) approving the Debtors entry into the Settlement Agreement and (ii) granting related relief.

4. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

5. In support of this Motion, the Debtors submit the *Declaration of Michael T. Dane in Support of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order (I) Authorizing and Approving Settlement Agreement between Debtors and Sanare Energy Partners LLC and (II) Granting Related Relief*, attached hereto as **Exhibit B** (the "**Declaration**").

### Jurisdiction

6. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

7. Commencing on August 3, 2020, the Debtors each filed with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

8. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On August 18, 2020, the United States Trustee for Region 7 appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

10. On January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 722) (as may be further amended, modified or supplemented and together with all exhibits and schedules thereto, the "**Plan**") and *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 723) (as may be further amended, modified or supplemented and together with all exhibits and schedules thereto, the "**Disclosure Statement**").

### A. Operating Agreements

11. Fieldwood and Sanare are parties to several agreements concerning the operation of and production from certain fields located in the Gulf of Mexico. In particular, they are parties to that certain Production Handling Agreement dated effective September 1, 2004 (the "**SM 40 PHA**") governing South Marsh Island 40 (OCS-G 13607) ("**SM 40**"); that certain Lease of Platform Space on South Pass 89 (OCS-G 01618) ("**SP 89**") "B" Platform agreement dated effective November 1, 2012 (the "**SP 89 LOPS**"); that certain Offshore Operating Agreement dated March 30, 2009 (the "**SS 252 OA**") governing Ship Shoal 252 (OCS-G 01529) ("**SS 252**"); that certain Operating and Administrative Management Agreement governing certain segments of the High Island Pipeline System ("**HIPS**") dated June 1, 2009 (the "**HIPS OA**"); that certain Operation and Maintenance Agreement effective September 26, 1982 governing the Venice Dehydration Station ("**Venice Dehy**") located in Plaquemines Parish, Louisiana (the "**Venice**

4

OA"); and that certain Conveyance and Operating Agreement governing Grand Chenier Separation Facilities ("**Grand Chenier**") in Cameron Parish, Louisiana (the "**Chenier OA**" and together with the SM 40 PHA, SP 89 LOPS, SS 252 OA, HIPS OA, Venice OA, the "**AR OAS**").

12. Pursuant to the AR OAs, Sanare agreed to pay Fieldwood for its proportional share of certain operating expenses and other costs arising under the agreements. Fieldwood and Sanare have outstanding joint interest billings and other charges associated with SM 40, SP 89, SS 252, HIPS, Venice Dehy, Grand Chenier and VR 229 (as defined below) through January 31, 2021, all owed to Fieldwood from Sanare, in an amount of approximately $1,598,380.36 (collectively, the "**Fieldwood Joint Interest Billings**"). Fieldwood and Sanare will have future joint interest billings owed to Fieldwood from Sanare which may be associated with any or all of the same properties as the Fieldwood Joint Interest Billings (the "**Future Fieldwood Joint Interest Billings**").

13. As set forth in **Exhibit B** to the Settlement Agreement, Fieldwood and Sanare have outstanding joint interest billings and other charges from January through December 2020, all owed to Sanare from Fieldwood, in an amount totaling $106,941.98 (the "**Sanare Joint Interest Billings**").

14. Fieldwood and Sanare are also parties to that certain Joint Operating Agreement dated effective August 15, 2008 (the "**VR 229 JOA**") governing Vermillion 229 (OCS-G 27070) ("**VR 229**"). To date, Fieldwood has been applying Sanare's proportionate share of VR 229 related revenue (the "**VR 229 Revenue**") against Fieldwood's VR 229 accounts receivables owed by Sanare. Fieldwood currently holds $959,338.03 in VR 229 Revenue that it has not applied to Sanare's joint interest billings.

15. Additionally, Fieldwood is the owner of certain overriding royalty interests ("**ORRIs**") with respect to four offshore leases operated by Sanare. Specifically, Fieldwood owns ORRIs with respect to Mississippi Canyon 21 (OCS-G 15459), Eugene Island Area 246 (OCS 0810), Main Pass 64 (OCS-G 4909), and Mississippi Canyon 65 (OCS-G 21742), each as described more fully in the Fieldwood's Original Petition in the State Court Lawsuit.

16. On July 3, 2020 Fieldwood filed the State Court Lawsuit against Sanare, seeking to recover the unpaid joint interest billings, overriding royalty interests, and other charges. On November 10, 2020, Fieldwood filed a notice of removal (Docket No. 537; Adversary Case No. 20-03460, Docket No. 1) with this Court, removing the State Court Lawsuit to the Bankruptcy Court and commencing the Adversary Proceeding.

**B.     Settlement Agreement**

17. The Debtors negotiated the terms of a consensual settlement with Sanare. The terms of the Settlement Agreement[3] provides for, among others, the following key terms[4]:

    i. Pursuant to the terms of the Settlement Agreement, Sanare shall pay to Fieldwood the Settlement Payment of $532,100.35.[5] Sanare shall pay the Settlement Payment as follows:

        1. February 2021 Production Month: Fieldwood will pay one hundred percent (100%) of the Office of Natural Resources and Revenue ("**ONRR**") royalty burden. After deducting the ONRR royalty burden associated with Sanare's approximately forty-nine (~49%) working interest share under the VR 229 JOA ("**Sanare's VR 229 Working Interest**"), one hundred percent of the remaining February 2021 production month revenue associated with Sanare's

---

[3] The following summary is provided for illustrative purposes only and is qualified in its entirety by reference to the Settlement Agreement attached to the Proposed Order as **Exhibit 1**. In the event of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls in all respects.

[4] The parties needed additional time to file the Motion beyond the seven days provided by the terms of the Settlement Agreement and agreed to a two day extension.

[5] This amount is subject to further reconciliation between the parties per the Settlement Agreement.

6

VR 229 Working Interest shall be applied to the Settlement Payment; and

2. Effective March 1, 2021 and until the Settlement Payment is paid in full: Fieldwood grants Sanare the right to take-in-kind twenty percent (20%) of the gross production volume associated with the VR 229 JOA (defined herein as "**Sanare Settlement Production Share**"). For the sake of clarity, the Sanare Production Share represents approximately forty-one percent (~41%) of Sanare's VR 229 Working Interest. Sanare grants Fieldwood the right and authority to take, and Fieldwood shall take, production volume above and beyond the Sanare Settlement Production Share to satisfy the Settlement Payment, which equates to approximately twenty-nine (~29%) of the gross working interest (the "**Fieldwood Settlement Production Share**"). After deducting the ONRR royalty burden associated with the Fieldwood Settlement Production Share, one hundred percent of the remaining revenue from the Fieldwood Settlement Production Share shall be applied to the Settlement Payment until it is paid in full. Should Sanare not comply with the terms and conditions of the Settlement Agreement, Fieldwood reserves the right, at its sole option, to revoke and terminate Sanare's ability to take-in-kind Sanare's Settlement Production Share and shall have the option and authority to notify any purchasers and/or transporters of the same. Nothing herein modifies or amends Sanare's obligation to pay 100% of all expenses associated with Sanare's VR 229 Working Interest when due under the VR 229 JOA. Additionally, Sanare shall be solely responsible for its share of the ONRR royalty burdening the Sanare Settlement Production Share; and

3. Fieldwood will make commercially reasonable efforts to provide Sanare a full reconciliation of both JIB and revenue accounts by the 25th of each month beginning March 25th and continuing each month until all requirements under the Settlement Agreement have been met; and

4. For the purposes of monthly reconciliation of volumes produced under the VR 229 JOA through February 2021, Fieldwood shall provide Sanare volume statements and product pricing for volumes withheld from July 2020 through February 2021. Until Sanare satisfies its obligation to pay the Settlement Payment, Fieldwood will provide Sanare monthly volume statements and product pricing for

7

    VR 229 related volumes withheld pursuant to the Settlement Agreement; and

   5. Sanare shall be responsible and shall pay one hundred percent (100%) of all pre- and post-Effective Date ORRIs burdening Sanare's VR 229 Working Interest.

ii. At such time as the Settlement Payment has been satisfied in full and Sanare is not otherwise in default under the VR 229 JOA, where such default arose between the date of the Settlement Agreement and receipt by Fieldwood of the full Settlement Payment, Sanare shall be allowed to take-in-kind its full working interest share of VR 229 production volume as provided for in the VR 229 JOA.

iii. Fieldwood acknowledges that as of the Effective Date of the Settlement Agreement, Sanare does not owe Fieldwood any ORRIs associated with the four leases identified in Fieldwood's Original Petition section IV.A. filed in the State Court Lawsuit.

iv. At such time that (i) Fieldwood received the Settlement Payment and (ii) no defaults have arisen between the Effective Date of the Settlement Agreement and receipt by Fieldwood of the full Settlement Payment with respect to any Future Fieldwood Joint Interest Billings related to the AR OAs, the VR 229 JOA and/or any ORRIs associated with the four leases referenced in Section 3 of the Settlement Agreement, each Party on behalf of itself and its predecessors, successors, assigns, affiliates, subsidiaries, parent company, owners, investors and their respective officers, directors, employees, representatives, insurers, principals, and owners hereby releases and forever discharges the other Party, its predecessors, successors, assigns, subsidiaries, partners, and their respective affiliates, officers, directors, employees, representatives, insurers, principals, and owners for and from any and all claims, demands, causes of action, costs, expenses, payments, charges, interest and/or liabilities in connection with or arising out of the Fieldwood Joint Interest Billings, the Sanare Joint Interest Billings and the VR 229 Revenue (together, the "**Claims**").

v. Notwithstanding the foregoing, the Parties agree that this release is not releasing Sanare from its obligations to pay the ORRIs associated with the four leases identified in Fieldwood's Original Petition section IV.A. filed in the State Court Lawsuit.

8

**Basis for Relief**

A.   **Consummating the Settlement Agreement Is a Sound Exercise of Debtors' Business Judgment.**

18. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. The Fifth Circuit recognizes that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

19. The Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise that is in the best interest of the Debtors' estates and its creditors. *First*, the Settlement Agreement resolves significant commercial disputes between the Parties by providing that Sanare will pay Fieldwood approximately $532,100.35, representing the full amount owed by Sanare to Fieldwood as of the Effective Date of the Settlement Agreement (less certain amounts owed by Fieldwood to Sanare). *Second*, the Settlement Agreement avoids the costs, risks, and uncertainties of litigation by fully settling all claims and controversies between the Parties in the State Court Lawsuit and Adversary Proceeding.

20. Accordingly, the Debtors respectfully request that the Court enter the Proposed Order and authorize the Debtors to enter into and perform under the Settlement Agreement, as

such action is a sound exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and all other stakeholders in these chapter 11 cases.

### B. The Settlement Agreement Satisfies Bankruptcy Rule 9019 and Should Be Approved.

21. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Jackson Brewing*, 624 F.2d at 602–03.

22. The Fifth Circuit sets forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. *Id.* The factors the Court considers are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise." *See Age Ref. Inc.*, 801 F.3d at 540 (internal citations omitted).

23. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which

10

the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

24. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

25. The Settlement Agreement clearly meets these standards. After fully evaluating all aspects of the Settlement Agreement with the assistance of counsel, including the risks, expenses, and uncertainty of litigating the Adversary Proceeding, the Debtors determined that entry into the Settlement Agreement is fair, reasonable, and in the best interest of the Debtors' estates. Pursuant to the Settlement Agreement, the Debtors are receiving payment in full of all joint interest billings and other charges owed by Sanare to Fieldwood of approximately $532,100.35, after offsetting amounts owed by Fieldwood and VR 229 Revenue amounts already withheld by Fieldwood and resolving all claims and controversies between the Parties in the State Court Lawsuit and Adversary Proceeding.

## Notice

26. Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

27. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

11

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as it deems just and appropriate.

Dated: March 17, 2021
     Houston, Texas

Respectfully submitted,

*/s/ Alfredo R. Pérez*
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
         Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**Certificate of Service**

I hereby certify that, on March 17, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

           */s/ Alfredo R. Pérez*
           Alfredo R. Pérez