IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| FIELDWOOD ENERGY LLC, *et al.*, | § § § | Case No. 20-33948 (MI) |
|  | § § | (Jointly Administered) |
| Debtors.[1] | § § | |

DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 9019 FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING
SETTLEMENT AGREEMENT BETWEEN DEBTORS AND
<u>RENAISSANCE OFFSHORE LLC AND (II) GRANTING RELATED RELIEF</u>

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**
>
> **Represented parties should act through their attorney.**

Fieldwood Energy LLC ("**Fieldwood**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

**Preliminary Statement**

1. After extensive negotiations, Fieldwood and Renaissance Offshore LLC ("**ROS**" and, together with Fieldwood, the "**Parties**") executed the settlement agreement attached hereto as **Exhibit 1** to the Proposed Order (the "**Settlement Agreement**"),[2] which fully and finally settles all claims and controversies between the Parties in the state court action styled *Fieldwood Energy LLC v. Renaissance Offshore LLC*, No. 2020-39648 pending in the 55th Judicial District of Harris County, Texas (the "**State Court Lawsuit**") and the adversary proceeding styled *Fieldwood Energy LLC v. Renaissance Offshore LLC*, Adversary Proceeding No. 20-03461 (MI) (the "**Adversary Proceeding**"), pursuant to which the Debtors removed the State Court Lawsuit to this Court. As further detailed below, the Settlement Agreement resolves a commercial dispute arising from ROS's failure to pay (i) outstanding joint interest billings and other charges due to Fieldwood under two joint operating agreements and (ii) overriding royalty interests owed to Fieldwood, and provides, among other things, that ROS will pay Fieldwood approximately $4 million (the "**Settlement Amount**") in five equal monthly installments each due on the fifteenth of each month beginning on or before March 15, 2021 and ending on the earlier of July 15, 2021 and the date on which the Settlement Amount is paid in full. As detailed below, the Settlement Amount represents the full amount owed by ROS to Fieldwood in joint interest billings and suspended royalties, less amounts owed by Fieldwood to ROS.

2. For the reasons set forth below, the Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates and their creditors. The proposed Settlement Agreement is well within the

---

[2] Any capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Settlement Agreement.

range of reasonableness, particularly when factoring in the time, expense, and risk in continuing to pursue any litigation. Entry into the Settlement Agreement is a sound exercise of the Debtors' business judgment. Accordingly, the Debtors request that the Court approve the Settlement Agreement and authorize the Debtors to consummate the terms therein.

### Relief Requested

3. By this Motion, the Debtors respectfully request entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 (i) approving the Debtors entry into the Settlement Agreement and (ii) granting related relief.

4. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

5. In support of this Motion, the Debtors submit the *Declaration of Michael T. Dane in Support of Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order (I) Authorizing and Approving Settlement Agreement between Debtors and Renaissance Offshore LLC and (II) Granting Related Relief*, attached hereto as **Exhibit B** (the "**Declaration**").

### Jurisdiction

6. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

7. Commencing on August 3, 2020, the Debtors each filed with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

8. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On August 18, 2020, the United States Trustee for Region 7 appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

10. On January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 722) (as may be further amended, modified or supplemented and together with all exhibits and schedules thereto, the "**Plan**") and *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 723) (as may be further amended, modified or supplemented and together with all exhibits and schedules thereto, the "**Disclosure Statement**").

    **A.**    **Joint Operating Agreements and Overriding Royalty Interest**

11. Fieldwood and ROS are parties to several agreements concerning the operation of and production from certain fields located in the Gulf of Mexico. In particular, they are parties to that certain Offshore Operating Agreement dated effective October 1, 1997 (the "**SP JOA**") governing South Pass 64 (OCS-G 01901) ("**SP 64**"), South Pass 65 (OCS-G 01610) ("**SP 65**"), MP 152 (OCS-G 01966) ("**MP 152**"), and MP 153 (OCS-G 01967) ("**MP 153**") and that certain Unit Operating Agreement dated effective April, 1, 1977 (the "**EI 330 JOA**" and together with the SP JOA and EI 330 JOAs, the "**JOAs**") governing the JD RA Sand Unit located in portions of Eugene Island 330 (OCS-G 2115) ("**EI 330**").

12. Pursuant to the JOAs, Fieldwood is operator and ROS is a non-operator working interest owner. As the operator, Fieldwood incurs operating costs that are then billed to the working interest owners, such as ROS. ROS is obligated to pay its proportional share

4

of operating and drilling expenses relating to all wells in which it holds an ownership interest as a non-operator. However, ROS has failed to pay on its joint interest billing invoices since January 2020. Fieldwood and ROS have outstanding joint interest billings and other charges associated with SP 64, SP 65, MP 152, MP 153, and EI 330 from January 2020 to January 31, 2021, all owed to Fieldwood from ROS, in an amount totaling $4,213,325.58 (collectively, the "**Fieldwood Joint Interest Billings**").

13. Fieldwood is the owner of an overriding royalty interest ("**ORRI**") in the proceeds produced from portions of lease West Delta 133 (OCS-G 1106) ("**WD 133**"), granted under that certain Assignment of Operating Rights Interest effective June 23, 2004 (the "**WD 133 Assignment**") that Fieldwood and ROS are now parties to as successors and/or assignees of the signatories. Under the terms of the WD 133 Assignment, ROS is obligated to pay Fieldwood on account of its ORRI. ROS has suspended $345,196.00 of Fieldwood's share of the ORRI payments for the production months of December 2019 through April 2020 (the "**Suspended Royalty**").

14. On July 6, 2020 Fieldwood filed the State Court Lawsuit against ROS, seeking to recover the unpaid joint interest billings and overriding royalty interest. On November 10, 2020, Fieldwood filed a notice of removal (Docket No. 538; Adversary Case No. 20-03461, Docket No. 1) with this Court, removing the State Court Lawsuit to the Bankruptcy Court and commencing the Adversary Proceeding.

15. Fieldwood, its subsidiary GOM Shelf, and ROS are also parties to that certain Offshore Operating Agreement dated effective April 4, 2006 governing Ship Shoal 198 (OCS-G 12355) ("**SS 198**"). Fieldwood and ROS have outstanding joint interest billings and other charges associated with SS 198 from February 2020 to January 31, 2021, owed to ROS

from Fieldwood, in an amount of $281,039.27 (the "**ROS Joint Interest Billings**"). In addition, Fieldwood has withheld estimated unapplied ROS revenue for the month of January 2021 in the amount of $253,070 (the "**Unapplied Revenue**").

  **B.**  **Settlement Agreement**

  16. The Debtors negotiated the terms of a consensual settlement with ROS. The terms of the Settlement Agreement[3] provides for, among others, the following key terms[4]:

> i. Pursuant to the terms of the Settlement Agreement, ROS shall pay to Fieldwood the Settlement Amount of $4,024,412.31, representing the Fieldwood Joint Interest Billings plus the Suspended Royalty less the ROS Joint Interest Billings and less the Unapplied Revenue. To pay off this amount, ROS will make five equal monthly installments of $167,667.00 each due on the fifteenth of each month beginning on or before March 15, 2021 and ending on the earlier of July 15, 2021 or the date on which the full Settlement Amount is paid (to the extent such amount is paid in full prior to July 15, 2021). Furthermore, Fieldwood and ROS hereby agree that Fieldwood will take any and all ROS revenues and/or proceeds from SP 64, SP 65, MP 152, MP 153 and EI 330 (the "**Fields**") and apply them first against any and all of the expenses thereto and then against the Settlement Amount until the earlier of July 31, 2021 or when the Settlement Amount is extinguished. Additionally, the Settlement Amount will be reduced each month by future ROS joint interest billings to Fieldwood under the SS 198 Offshore Operating Agreement beginning with the January 2021 joint interest billing and until such time the Settlement Amount is extinguished. Should these amounts not extinguish the Settlement Amount liability by August 15, 2021, ROS will make a final payment to Fieldwood on that date to extinguish any remaining balance under the Settlement Amount. On the 25th of each month, Fieldwood will notify ROS of the prior month's production totals, net revenues and net expenses from the Fields and accordingly Fieldwood will notify ROS of any necessary adjustments to be made to the final monthly Installment Payment(s) herein in advance of said final monthly Installment Payment's due date.

---

[3] The following summary is provided for illustrative purposes only and is qualified in its entirety by reference to the Settlement Agreement attached to the Proposed Order as **Exhibit 1**. In the event of any inconsistency between this summary and the Settlement Agreement, the Settlement Agreement controls in all respects.

[4] The parties needed additional time to file the Motion beyond the seven days provided by the terms of the Settlement Agreement and agreed to a two day extension.

ii. Each Party shall bear its own fees and expenses with respect to this dispute, and Fieldwood hereby agrees not to charge interest on the Settlement Amount and shall not charge ROS for Fieldwood's attorney's fees incurred as part of this dispute.

iii. In exchange for, and upon full and final payment of, the Settlement Amount, each Party, on behalf of itself and its predecessors, successors, assigns, affiliates, subsidiaries, parent company, owners, investors and their respective officers, directors, employees, representatives, insurers, principals, and owners hereby releases and forever discharges the other Party, its predecessors, successors, assigns, subsidiaries, partners, and their respective affiliates, officers, directors, employees, representatives, insurers, principals, and owners for and from any and all claims, demands, causes of action, costs, expenses, payments, charges, interest, and/or liabilities in connection with or arising out of the Fieldwood Joint Interest Billings, the ROS Joint Interest Billings and the Suspended Royalty (together, the "**Claims**").

iv. The Parties further agree that the Settlement Amount includes all Fieldwood Joint Interest Billings, ROS Joint Interest Billings and Suspended Royalty but the Parties shall retain all audit rights for each. Furthermore, the Parties do not waive any rights or remedies they may have under the JOAs or the ORRI, including but not limited to any and all security rights.

v. Fieldwood agrees to use its reasonable efforts to either (i) seek confirmation of a chapter 11 plan that discharges or otherwise treats all claims against Fieldwood that are secured by liens against properties owned by ROS and Fieldwood (the "**ROS Lien Claims**") or (ii) otherwise satisfy the ROS Lien Claims pursuant to and in accordance with the terms of the trade vendor order (Docket No. 342).

vi. The Claims released in Section (iii) do not include any imbalance amounts which may be due from Fieldwood as an overproduced party, and Fieldwood does not make any representations and/or warranties with respect thereto and does not waive any rights either Party may have pursuant to the agreement(s) creating such imbalance(s). Notwithstanding the above, Fieldwood will undertake its best efforts to accelerate the makeup of underproduced volumes to ROS.

vii. ROS hereby voids any default notices sent to Fieldwood and/or its subsidiaries arising out of or related to SS 198 and, upon Fieldwood's receipt of the full Settlement Amount, Fieldwood hereby agrees to void the Default Letters.

    viii.    The Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and to their respective predecessors, parents, owners, affiliates, subsidiaries, principals, successors, and assigns.

## Basis for Relief

### A. Consummating the Settlement Agreement Is a Sound Exercise of Debtors' Business Judgment.

17. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. The Fifth Circuit recognizes that a debtor may use property of the estate outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.3d 1223, 1226 (5th Cir. 1986)); 441 B.R. 813, 830 (Bankr. S.D. Tex. 2010); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

18. The Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates and its creditors. *First*, the Settlement Agreement resolves significant commercial disputes between the Parties by providing that ROS will pay Fieldwood approximately $4 million, representing the full amount owed by ROS to Fieldwood (less certain amounts owed by Fieldwood to ROS). *Second*, the Settlement Agreement avoids the costs, risks and uncertainties of litigation by fully settling all claims and controversies between the Parties in the State Court Lawsuit and Adversary Proceeding.

8

19. Accordingly, the Debtors respectfully request that the Court enter the Proposed Order and authorize the Debtors to enter into and perform under the Settlement Agreement, as such action is a sound exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and all other stakeholders in these chapter 11 cases.

### B. The Settlement Agreement Satisfies Bankruptcy Rule 9019 and Should Be Approved.

20. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, "approval of a compromise is within the sound discretion of the bankruptcy court." *See United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Jackson Brewing*, 624 F.2d at 602–03.

21. The Fifth Circuit sets forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. *Id.* The factors the Court considers are: "(1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise." *See Age Ref. Inc.*, 801 F.3d at 540 (internal citations omitted).

22. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their

9

reasonable views." *Id.; Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).

23. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

24. The Settlement Agreement clearly meets these standards. After fully evaluating all aspects of the Settlement Agreement with the assistance of counsel, including the risks, expenses, and uncertainty of litigating the Adversary Proceeding, the Debtors determined that entry into the Settlement Agreement is fair, reasonable, and in the best interest of the Debtors' estates. Pursuant to the Settlement Agreement, the Debtors are receiving payment in full of all amounts owed by ROS to Fieldwood (approximately $4 million after netting amounts owed by Fieldwood) and resolving all claims and controversies between the Parties in the State Court Lawsuit and Adversary Proceeding.

## Notice

25. Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## No Previous Request

26. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as it deems just and appropriate.

Dated: March 17, 2021
    Houston, Texas

Respectfully submitted,

/s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Matt.Barr@weil.com
         Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

11

## **Certificate of Service**

I hereby certify that, on March 17, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                           */s/ Alfredo R. Pérez*
                                           Alfredo R. Pérez