IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| | § | |

### ORDER (I) AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT BETWEEN DEBTORS AND RENAISSANCE OFFSHORE LLC AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] filed March 17, 2021, of the above-captioned Debtors for entry of an order pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 (i) authorizing Fieldwood's entry into and approving the Settlement Agreement by and among Fieldwood and Renaissance Offshore LLC ("**ROS**" and collectively with Fieldwood, the "**Parties**"), attached hereto as **Exhibit 1**, and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the *Declaration of Michael T. Dane in Support of Debtors' Motion Pursuant to Section 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 for Entry of an Order (I) Authorizing and Approving Settlement Agreement Between Debtors and Renaissance Offshore LLC and (II) Granting Related Relief*; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and a hearing, if any, having been held to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is fair, reasonable, and in the best interests of the Debtors and their respective estates and creditors and that entry into the Settlement Agreement represents a sound exercise of the Debtors' business judgment; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1. The Settlement Agreement is hereby approved pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, and Fieldwood is authorized to enter into the Settlement Agreement.

2. Fieldwood is authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary to immediately continue and fully implement the Settlement Agreement in accordance with the terms, conditions, and agreements set forth therein, all of which are hereby approved.

3. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

3

4. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2021
   Houston, Texas

                                                THE HONORABLE MARVIN ISGUR
                                                UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Settlement Agreement**

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is entered into as of March 8th, 2021 by and between Fieldwood Energy LLC ("Fieldwood") and Renaissance Offshore LLC ("ROS"). Fieldwood and ROS may sometimes be referred to herein individually as a "Party" and together as the "Parties".

**WHEREAS,** Fieldwood and ROS are working interest owners in South Pass 64 (OCS-G 01901) ("SP 64"), South Pass 65 (OCS-G 01610) ("SP 65"), Ship Shoal 198 (OCS-G 12355) ("SS 198"), MP 152 (OCS-G 01966) ("MP 152"), MP 153 (OCS-G 01967) ("MP 153"), and Eugene Island 330 (OCS-G 2115) ("EI 330"); AND

**WHEREAS,** Fieldwood and ROS are parties to that certain Offshore Operating Agreement dated effective October 1, 1997 governing SP 64, SP 65, MP 152, and MP 153 (the "SP JOA"), and that certain Unit Operating Agreement dated effective April, 1, 1977 governing the JD RA Sand Unit located in portions of EI 330 (the "EI 330 JOA"), together the SP JOA and EI 330 the "JOAs"; AND

**WHEREAS,** Fieldwood, its subsidiary GOM Shelf and ROS are parties to that certain Offshore Operating Agreement dated effective April 4, 2006 governing SS 198; AND

**WHEREAS,** pursuant to the JOAs, Fieldwood sent two separate notices of default letters to ROS on June 4, 2020 (the "Default Letters"); AND

**WHEREAS,** despite the Default Letters, Fieldwood and ROS have outstanding joint interest billings and other charges associated with SP 64, SP 65, MP 152, MP 153, and EI 330 from January 2020 to January 31, 2021 in the following amounts, all owed to Fieldwood from ROS (collectively the "Fieldwood Joint Interest Billings"):

- SP 64    $317,600.66
- SP 65    $1,530,210.59
- MP 152   $762,777.17
- MP 153   $1,546,380.91
- EI 330   $56,356.25
- TOTAL:   $4,213,325.58

AND

**WHEREAS,** Fieldwood and ROS have outstanding joint interest billings and other charges associated with SS 198 from February 2020 to January 31, 2020 in the following amounts, owed to ROS from Fieldwood (the "ROS Joint Interest Billings"):

- SS 198 $281,039.27; AND

AND

**WHEREAS,** Fieldwood owns an overriding royalty interest owed and payable by ROS associated with West Delta 133 (OCS-G 01106) (the "ORRI") and ROS has suspended $345,196.00

1

of Fieldwood's share of the ORRI payments for the production months of December 2019 through April 2020 (the "Suspended Royalty"); AND

**WHEREAS**, Fieldwood has withheld estimated unapplied ROS revenue for the month of January 2021 in the amount of $253,070 (the "Unapplied Revenue"); AND

**WHEREAS**, ROS proposes to offset the ROS Joint Interest Billings and Unapplied Revenue against the Fieldwood Joint Interest Billings and Suspended Royalty; AND

**WHEREAS**, On July 6, 2020, Fieldwood filed a lawsuit against ROS in a case styled *Fieldwood Energy LLC v. Renaissance Offshore LLC*, No. 2020-39648 pending in the 55th Judicial District of Harris County, Texas (the "State Court Lawsuit"); AND

**WHEREAS**, commencing on August 3, 2021, Fieldwood and certain of its affiliates filed with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); AND

**WHEREAS**, on November 10, 2021, Fieldwood filed a notice of removal with the Bankruptcy Court, removing the State Court Lawsuit to the Bankruptcy Court in a case styled *Fieldwood Energy LLC v. Renaissance Offshore LLC*, Adversary Proceeding No. 20-33948 (MI) (the "Adversary Proceeding"); AND

**WHEREAS**, the Parties desire to fully and finally settle all claims and controversies between them in the State Court Lawsuit and Adversary Proceeding, including the Fieldwood Joint Interest Billings, the ROS Joint Interest Billings and the Suspended Royalty pursuant to the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and agreements as set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Fieldwood and ROS hereby agree as follows:

1. Pursuant to the terms of this Agreement, ROS shall pay to Fieldwood $4,024,412.31, representing the Fieldwood Joint Interest Billings plus the Suspended Royalty less the ROS Joint Interest Billings and less the Unapplied Revenue ("Settlement Amount"). To pay off this amount, ROS will make five equal monthly installments of $167,667.00 each due on the fifteenth of each month beginning on or before March 15, 2021 and ending on the earlier of July 15, 2021 or the date on which the full Settlement Amount is paid (to the extent such amount is paid in full prior to July 15, 2021). Furthermore, Fieldwood and ROS hereby agree that Fieldwood will take any and all ROS revenues and/or proceeds from SP 64, SP 65, MP 152, MP 153 and EI 330 ("the Fields") and apply them first against any and all of the expenses thereto and then against the Settlement Amount until the earlier of July 31, 2021 or when the Settlement Amount is extinguished. Additionally, the Settlement Amount will be reduced each month by future ROS joint interest billings to Fieldwood under the SS 198 Offshore Operating Agreement beginning with the January 2021 joint interest billing and until such time the Settlement Amount is extinguished. Should these amounts not extinguish the Settlement Amount liability by August 15, 2021, ROS will make a final payment to Fieldwood on that date to extinguish any remaining balance under the Settlement Amount. On the 25th of each

month Fieldwood will notify ROS of the prior month's production totals, net revenues and net expenses from the Fields and accordingly Fieldwood will notify ROS of any necessary adjustments to be made to the final monthly Installment Payment(s) herein in advance of said final monthly Installment Payment's due date.

2.  Each Party shall bear its own fees and expenses with respect to this dispute, and Fieldwood hereby agrees not to charge interest on the Settlement Amount and shall not charge ROS for Fieldwood's attorney's fees incurred as part of this dispute.

3.  In exchange for, and upon full and final payment of, the Settlement Amount, each Party, on behalf of itself and its predecessors, successors, assigns, affiliates, subsidiaries, parent company, owners, investors and their respective officers, directors, employees, representatives, insurers, principals, and owners hereby releases and forever discharges the other Party, its predecessors, successors, assigns, subsidiaries, partners, and their respective affiliates, officers, directors, employees, representatives, insurers, principals, and owners for and from any and all claims, demands, causes of action, costs, expenses, payments, charges, interest, and/or liabilities in connection with or arising out of the Fieldwood Joint Interest Billings, the ROS Joint Interest Billings and the Suspended Royalty (together, the "Claims").

4.  The Parties further agree that the Settlement Amount includes all Fieldwood Joint Interest Billings, ROS Joint Interest Billings and Suspended Royalty but the Parties shall retain all audit rights for each. Furthermore, the Parties do not waive any rights or remedies they may have under the JOAs or the ORRI, including but not limited to any and all security rights.

5.  Fieldwood agrees to use its reasonable efforts to either (i) seek confirmation of a chapter 11 plan that discharges or otherwise treats all claims against Fieldwood that are secured by liens against properties owned by ROS and Fieldwood (the "**ROS Lien Claims**") or (ii) otherwise satisfy the ROS Lien Claims pursuant to and in accordance with the terms of the trade vendor order (Docket No. 342).

6.  The Claims released in Section 3 do not include any imbalance amounts which may be due from Fieldwood as an overproduced party, and Fieldwood does not make any representations and/or warranties with respect thereto and does not waive any rights either Party may have pursuant to the agreement(s) creating such imbalance(s). Notwithstanding the above, Fieldwood will undertake its best efforts to accelerate the makeup of underproduced volumes to ROS.

7.  ROS hereby voids any default notices sent to Fieldwood and/or its subsidiaries arising out of or related to SS 198 and, upon Fieldwood's receipt of the full Settlement Amount, Fieldwood hereby agrees to void the Default Letters.

8.  This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and to their respective predecessors, parents, owners, affiliates, subsidiaries, principals, successors, and assigns.

9.  The Parties agree to cooperate and execute any additional documents as are reasonably requested or required to carry out the terms of this Agreement.

10. No later than seven days after execution of this Agreement, the Parties will file: (a) a motion to approve the terms of this Agreement under Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion") and (b) a proposed order related to the 9019 Motion (as entered by the Bankruptcy Court, the "9019 Order"). The Parties will endeavor to stay or otherwise extend deadlines in the Adversary Proceeding pending approval of the 9019 Motion.

11. No later than seven days after payment of the full Settlement Amount, the Parties shall file (a) with the Bankruptcy Court a joint stipulation dismissing the Adversary Proceeding with prejudice and (b) with the 55th Judicial District of Harris County, Texas, a joint stipulation dismissing the State Court Lawsuit with prejudice.

12. For the avoidance of doubt, the Settlement Amount shall not be subject to any contest, attack, rejection, recovery, claw-back, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law. To the extent all or any portion of the Settlement Amount becomes subject to any proceeding related to any such contest, attack, rejection, recovery, claw-back, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law, the Parties represents and warrants that they will take all reasonable efforts to contest such efforts.

13. The Parties acknowledge and agree that this Agreement is not an admission of liability or responsibility on the part of either Party.

14. Except where expressly reserved in this Agreement, this Agreement contains the entire agreement of the Parties with respect to the subject matter set forth herein. This Agreement supersedes any prior written or oral communications with respect to this matter and may not be modified except by writing signed by all of the Parties. The Parties agree this Agreement supersedes and replaces the Release and Settlement Agreement dated March 4, 2021 between the Parties (the "Prior Settlement Agreement"), and the Prior Settlement Agreement is of no force or effect.

15. The Parties hereby warrant that they have the right and authority to enter into this Agreement pursuant to the terms set forth herein.

16. The Parties admit, stipulate, and agree that the promises, covenants, releases, and recitals in this Agreement provide good and sufficient consideration for every promise, duty, release, obligation, and right contained in this Agreement. ROS admits, stipulates, and agrees that any payment made pursuant to this Agreement: (1) does not constitute payment of an antecedent debt; (2) does not render any Party to this Agreement insolvent; and (3) constitutes a contemporaneous exchange for new value given, and is in fact a substantially contemporaneous exchange.

17. This Agreement has been duly authorized and constitutes a legal, valid and binding obligation of each Party hereto, and is enforceable against each of them in accordance with its terms. To the extent that any part of this Agreement is

subsequently declared by any court of competent jurisdiction, or by any other body having authority to do so, to be void or otherwise unenforceable, the remaining provisions of this Agreement shall continue in full force and effect.

18. Fieldwood acknowledges the imbalances related to SP 64, SP 65, MP 152, MP 153, and EI 330 as of January 31, 2021 are as shown on Exhibit A attached hereto.

19. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO ITS CONFLICTS OF LAW WHICH MAY APPLY THE LAWS OF ANOTHER JURISDICTION. THE PARTIES HEREBY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE UNTED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION WITH RESPECT TO ANY MATTER RELATING TO OR ARISING OUT OF THIS AGREEMENT.

[SIGNATURES TO FOLLOW]

IN WITNESS WHEREOF, Fieldwood and ROS do hereby execute and agree to this Agreement as of the date first set forth above. This Agreement may be executed, originally or by electronic reproduction, in multiple counterparts, each of which shall constitute an original and all of which shall constitute one and the same document.

**FIELDWOOD ENERGY LLC**

By: *[signature]*
Name: JOHN H. SMITH
Title: SVP, Business Development
Date: 3/8/21

**RENAISSANCE OFFSHORE LLC**

By: *[signature]*
Name: Brian P. Romere
Title: C.F.O.
Date: 3/8/21

5

# Exhibit A

### Renaissance Imbalance Summary as of January 31, 2021

| Property | Imbalance Type | (Over) / Under Delivered | BTU | (Over) / Under Delivered Volume | Booked On | Royalty Rate | |
|---|---|---|---|---|---|---|---|
| EI 330 | Producer Imbalance | 86,712 MCF | 1.185 | 102,754 MMBTU | Sales | 1/6 | |
| EI 330 | Platform Imbalance | | | (42,463) MMBTU | | 1/6 | *(See Note) |
| SP 65 / MP 152 | Producer Imbalance | (1,525) MCF | 1.16 | (1,769) MMBTU | Entitlements | 1/6 | |

*Note: Subject to historical reconciliation.*