IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY, LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**BP EXPLORATION & PRODUCTION INC.'S OBJECTION, AND JOINDER TO OBJECTIONS, TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) PROPOSED VOTING AND TABULATION PROCEDURES, (III) PROCEDURES FOR EXECUTORY CONTRACT ASSUMPTION AND ASSIGNMENT, AND (IV) PROCEDURES FOR ASSIGNMENT AND TRANSFER OF PROPERTY OF THE ESTATE**
[Relating to Docket Nos. 723, 724, 880, 900, 924, 937, 954, 978, 993, and 1034]

BP Exploration & Production Inc. ("BP"), by and through its undersigned counsel, hereby objects (the "Objection") to the *Motion of Debtors for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (VIII) Granting Related Relief Filed by Debtor Fieldwood Energy LLC* [Docket No. 724] (the "Disclosure Statement Motion"), which seeks, among other things, approval of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Fieldwood Energy LLC (6778), Fieldwood Energy Inc. (4991), Fieldwood Onshore LLC (3489), Fieldwood SD Offshore LLC (8786), Fieldwood Energy Offshore LLC (4494), Fieldwood Offshore LLC (2930), GOM Shelf LLC (8107), FW GOM Pipeline, Inc. (8440), Galveston Bay Procession LLC (5703), Galveston Bay Procession LLC (0422), Fieldwood Energy SP LLC (1971), Dynamic Offshore Resources NS, LLC (0158), Bandon Oil and Gas, LP (9266), and Bandon Oil and Gas GP, LLC (9172). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

*Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 723] (as subsequently revised at Docket No. 1022, the "<u>Disclosure Statement</u>")[2] filed by the above-captioned debtors (collectively, the "<u>Debtors</u>").[3] In further support of this Objection, BP states as follows:

## RELEVANT BACKGROUND

1.  BP is one of the largest oil producers in the deepwater Gulf of Mexico, one of the Gulf of Mexico's largest leaseholders, and a predecessor in interest in approximately 16 leases proposed to be abandoned (collectively, the "<u>BP Abandoned Leases</u>") as well as having other contractual relationships related to numerous leases in the Gulf of Mexico. From approximately 1996 through 2008, pursuant to several purchase and sale agreements, BP or its affiliates sold most of the right, title, and interest in and to the BP Abandoned Leases to the Debtors or a predecessor

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Disclosure Statement.

[3] BP further joins in, adopts, and incorporates by reference (the "<u>Joinder</u>"), the arguments and objections set forth by similarly situated parties in: (i) *Chevron U.S.A. Inc. and Noble Energy, Inc.'s Objection to Debtors' Motion for Entry of an Order Approving (I) The Adequacy of the Disclosure Statement, (II) Proposed Voting and Tabulation Procedures, (III) Procedures for Executory Contract Assumption and Assignment, and (IV) Procedures for Assignment and Transfer of Property of the Estate* [Docket No. 880]; (ii) *Objection of XTO Offshore, Inc., HHE Energy Company, and XH LLC to the Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* [Docket No. 900]; (iii) *Marathon Oil Company's Objection to Debtors' Disclosure Statement, Procedures for Assumption of Executory Contracts and Transfer of Property of the Estate* [Docket No. 924]; (iv) *Objection of ENI Operating Co. Inc. and ENI Petroleum US LLC to Approval of Debtors' Disclosure Statement for Debtors Joint Chapter 11 Plan of Reorganization* [Docket No. 937]; (v) *Energy Transfer's Objection to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood LLC and its Affiliated Debtors* [Docket No. 954]; (vi) *Freeport-McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC's Objection to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 978]; (vii) *Objection of JX Nippon Oil Exploration (U.S.A.) Limited to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors and Joinder in the Objection of XTO Offshore, Inc., HHE Energy Company and XH LLC, of Chevron U.S.A., Inc. and Noble Energy, Inc., and of Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company* [Docket No. 983]; (viii) *Objection by Samson Contour Energy E & P, LLC to the Adequacy of the Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 990]; (ix) *Joinder in Objections to the Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 993]; and (x) *W&T Offshore, Inc. and W&T Energy VI, LLC's Objection to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 1034] (collectively, the "<u>Predecessor Objections</u>").

of the Debtors. Upon information and belief, as of the Petition Date, the Debtors were the record holder of title to each of the BP Abandoned Leases.

2. Based upon publicly available information derived from the Bureau of Ocean Management/Bureau of Safety and Environmental Enforcement Data Center, BP estimates that plugging and abandonment obligations associated with the BP Abandoned Leases, including the wells, platforms, structures, and pipelines associated therewith, could exceed $422 million.[4]

3. As described in the Disclosure Statement, the Debtors propose a "restructuring" through two primary transactions: (i) a "Credit Bid Transaction" and (ii) a divisive merger.

- Pursuant to the Credit Bid Transaction, the Debtors propose to sell certain deep water and shelf assets to a new entity formed by the FLTL Lenders for aggregate consideration with a purported value of $1.03 billion comprised of (a) a credit bid of the Allowed FLTL Claims (up to the allowed amount of such claims) (b) cash in an amount up to approximately $105 million,[5] (c) GUC Warrants for 3.5% of new equity interests, and (d) the assumption of certain liabilities under the Credit Bid Purchase Agreement.

- After consummation of the Credit Bid Transaction, the Plan contemplates that the Debtors will implement a divisive merger pursuant to which Fieldwood Energy LLC will be divided into Fieldwood Energy I LLC ("FWE I") and Fieldwood Energy III LLC ("FWE III"), and the Debtors will (i) transfer to FWE I certain assets the Debtors acquired from Apache, which FWE I will own, operate, plug and abandon, and decommission, and (ii) transfer to FWE III certain other oil and gas leases, which FWE III will own, operate, plug and abandon, and decommission.

4. The Debtors will abandon all remaining leasehold interests (the "Abandoned Properties") with the related plugging and abandonment and decommissioning obligations to be addressed by the respective predecessor owners or co-working interest owners, including BP.

---

[4] This figure represents the total estimated P90 joint and several liability across all assets associated with the BP Abandoned Leases. BP does not admit this estimate is accurate and reserves all rights, claims, and defenses with respect thereto.

[5] The Disclosure Statement further notes that the Credit Bid Purchase Agreement caps the total cash consideration to be paid by the Credit Bid Purchaser at (i) the proceeds of the $185 million Second Lien Exit Facility, plus (ii) the proceeds of the approximately $20 million Equity Rights Offering, minus (iii) $100 million.

5. Following the initial filing of the Plan and Disclosure Statement, in February 2021, the Debtors provided BP with an overview of their proposed restructuring, including identifying approximately 16 of the BP Abandoned Leases that the Debtors intend to abandon to BP along with the related plugging and abandonment obligations appurtenant thereto.[6]

## OBJECTION

6. Given the unprecedented and complex nature of the transactions associated with abandonment and decommissioning of hundreds of oil and gas leases as proposed under the Plan, as well as the substantial regulatory issues and liabilities implicated, extensive disclosure is required to ensure that the Debtors have adequately accounted for all such obligations and are not simply passing billions of dollars of their own obligations to Predecessors. As discussed at length in the Predecessor Objections,[7] the Disclosure Statement lacks meaningful disclosure with respect to the Credit Bid Transaction, the divisive merger and transfer of assets and liabilities to FWE I and FWE III, and the Abandoned Properties. These are material issues that must be addressed before the Debtors can proceed to solicit votes on the Plan.

7. Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain adequate information "of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)-(b). The Bankruptcy Code requires that a debtor "adequately, not selectively, disclose fully and precisely all information a creditor would

---

[6] In addition to the 16 BP Abandoned Leases that the Debtors have identified, BP has identified an additional related lease that may have been excluded from the information provided to BP.

[7] Although BP does not restate and discuss every objection already raised in the Predecessor Objections, BP adopts and incorporates the issues and arguments raised by the other parties in the Predecessor Objections and reserves the right to be heard on such issues at the hearing on approval of the Disclosure Statement and the Confirmation Hearing.

reasonably want before voting on the plan." *Westland Oil Dev. Corp. v. MCorp. Mgmt. Solutions, Inc. v. Fed. Deposit Ins. Corp. (In re Westland Oil)*, 157 B.R. 100, 104 (S.D. Tex. 1993).

8.  The determination of what constitutes adequate information is made on a case by case basis. *See In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). Courts will consider numerous factors when determining the sufficiency of the information in a disclosure statement, including:

(1) the events which led to the filing of a bankruptcy petition;

(2) a description of the available assets and their value;

(3) the anticipated future of the company;

(4) the source of information stated in the disclosure statement;

(5) a disclaimer;

(6) the present condition of the debtor while in chapter 11;

(7) the scheduled claims;

(8) the estimated return to creditors under a chapter 7 liquidation;

(9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;

(10) the future management of the debtor;

(11) the chapter 11 plan or a summary thereof;

(12) the estimated administrative expenses, including attorneys' and accountants' fees;

(13) the collectability of accounts receivable;

(14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

(15) information relevant to the risks posed to creditors under the plan;

(16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;

(17) litigation likely to arise in a non-bankruptcy context;

(18)    tax attributes of the debtor; and

(19)    the relationship of the debtor with the affiliates.

*In re Divine Ripe, LLC*, 554 B.R. 395, 401-02 (Bankr. S.D. Tex. 2016) (*citing In re Metrocraft Pub. Servs.*, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)).

9.    The Disclosure Statement in its current form is deficient and fails to satisfy some of the basic disclosure requirements of section 1125(a) of the Bankruptcy Code, particularly in light of the nature of the Debtor's business and the transactions contemplated by the Plan. The Plan is uniquely complex and presents substantial regulatory, operational, and safety challenges that warrant more extensive disclosure to adequately inform parties of the implications of the transactions proposed under the Plan and the potential effect and exposure, particularly for Predecessors to whom the Debtors propose to abandon leasehold interests.

10.   By way of example, the Disclosure Statement fails to make adequate disclosure regarding the following:

- Credit Bid Transaction with NewCo:
    - The Debtors filed the Credit Bid Purchase Agreement on March 16, 2021, only days before the hearing to consider approval of the Disclosure Statement, leaving parties in interest with little time to review. BP expressly reserves the right to raise additional objections with respect to the Credit Bid Purchase Agreement at the hearing to consider approval of the Disclosure Statement.
    - The Debtors have not disclosed information necessary to ascertain NewCo's ability to (a) maintain, operate, or decommission (as applicable) the assets to be transferred to NewCo or (b) obtain and maintain required regulatory approvals and qualifications, including disclosure of all policies and procedures for the inspection of unmanned platforms and the Debtors' efforts to ensure compliance with all applicable regulations.
    - The Debtors have not disclosed the cure costs associated with all contracts to be transferred or assigned to NewCo.

- Divisive Merger and Allocation of Assets and Liabilities Between FWE I and FWE III:
    - The Debtors have not disclosed information necessary to ascertain FWE I's and FWE III's ability to (a) maintain, operate, or decommission (as applicable) the assets to be

      transferred to FWE I and FWE III or (b) obtain and maintain required regulatory approvals and qualifications.

- o   The Debtors have not disclosed the cure costs associated with all contracts to be transferred or assigned to FWE I and FWE III.

- o   To the extent the Debtors intend to only transfer partial leasehold interests, the Debtors have not disclosed how they will make such determination or the legal basis for assigning less than the entire leasehold interest.

- o   The Debtors have not disclosed the nature of the interests described as "Incremental Interests" to be allocated to FWE I.

- Abandoned Properties:

- o   Although the Debtors state that they have dedicated $6 million on safety related repairs and improvement to the Abandoned Properties, the Debtors have not disclosed adequate information regarding the current state of the Abandoned Properties, which Abandoned Properties are not currently in compliance with applicable regulations, or other information to sufficiently demonstrate that the funds set aside for repairs and improvements are adequate to meet applicable regulatory standards.

- o   The "transition services" that the Debtors propose to forcibly return Abandoned Properties to Predecessors does not include a process by which the Debtors will resolve objections to such return of Abandoned Properties or if a Predecessor does not accept the return of such Abandoned Properties.

- o   The Debtors have not disclosed the regulatory requirements applicable to the abandonment of the Abandoned Properties or how the Debtors will satisfy such requirements in seeking to return the Abandoned Properties.

11.    Because the Debtors are proposing a process to foist potentially billions of dollars of plugging and abandonment liabilities on other parties, it is critical that the Debtors thoroughly disclose all material details surrounding the process, adequately demonstrate that doing so satisfies all applicable regulatory requirements and that the applicable entities have the means and wherewithal to meet their obligations. The Disclosure Statement as currently presented falls short.

12.    Due to these material deficiencies in the Disclosure Statement, as well as those identified in the Predecessor Objections, BP respectfully requests that the Court deny approval of the Disclosure Statement until the Debtors have provided additional disclosure sufficient to

provide creditors and parties in interest with information necessary to make an informed decision on the Plan.

## RESERVATION OF RIGHTS

13.     Nothing in this Objection and Joinder is intended to be, or should be construed as, a waiver by BP of any of its rights, at equity, under the Bankruptcy Code, or under applicable law. BP expressly reserves all such rights, including, without limitation, the right to (i) supplement and/or amend this Objection and Joinder and (ii) assert any further objections as it deems necessary or appropriate.

**WHEREFORE**, BP respectfully requests that this Court deny the Disclosure Statement Motion and deny approval of the Disclosure Statement.

Date:   March 19, 2021                                          Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: /s/ Shari L. Heyen
Shari L. Heyen (SBN 09564750)
HeyenS@gtlaw.com
Karl D. Burrer (SBN 24043584)
BurrerK@gtlaw.com
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

– and –

David B. Kurzweil (*admitted pro hac vice*)
KurzweilD@gtlaw.com
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212

**Counsel for BP Exploration & Production Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 19, 2021, I caused a copy of the foregoing to be served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas by electronic mail.

By: */s/ Shari L. Heyen*
Shari L. Heyen