**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, et al. | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**FREEPORT-MCMORAN OIL & GAS LLC AND MCMORAN OIL & GAS LLC'S
OBJECTION TO DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF
FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS**

Freeport-McMoRan Oil & Gas LLC ("FMOG") and McMoRan Oil & Gas LLC ("MMR") (collectively, "McMoRan") file this objection to the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (Doc. No. 723) (the "Disclosure Statement") and state as follows:

## I.     INTRODUCTION

We know from Fieldwood's Disclosure Statement that Fieldwood intends to abandon assets with total decommissioning liabilities in excess of $1 billion, ostensibly leaving massive environmental obligations to be addressed by unidentified predecessors in title, fellow working interest owners, and the Department of Interior. However, there is an astonishing amount of information we cannot know from the current Disclosure Statement. In part, these disclosure failures include:

- Failure to disclose the working interest owners and predecessors in title affected by the proposed abandonment as well as estimated decommissioning and plugging and abandonment liabilities for its leases.

**PAGE 1**

- Failure to provide meaningful disclosure of the treatments of pipeline rights of way throughout the gulf.

- Failure to disclose conditions of leases and pending incidents of non-compliance, a disclosure made more significant by the fact that some leases may not even have a point of egress currently.

- Failure to provide the financial information and proposed idle iron plans needed to evaluate whether the FWE I and FWE III entities will be able to timely accomplish their purported decommissioning objectives.

- Failure to disclose and identify orphan liabilities that may ultimately be charged to taxpayers.

Simply put, aside from clearly disclosing an intent at significant chaos through abandonment of assets, Fieldwood's Disclosure Statement seems preliminary at best and not nearly ready for a plan confirmation process. Beyond these disclosure issues, Fieldwood's attempts to abandon its environmental liabilities, transfer its environmental liabilities to undercapitalized affiliates, and provide broad third party releases preclude confirmation.

## II.     FACTUAL BACKGROUND

Fieldwood's Disclosure Statement broadly describes a division of its assets into three categories: assets to be purchased by a credit bid, legacy Apache assets to be placed in FWE I, the creation of FWE III, and certain assets to be abandoned. *See* Doc. 723 at 2-3. Both FWE I and FWE III are described as primarily existing to complete decommissioning work. *Id.*

Fieldwood provides certain exhibits of leases purportedly to identify which category each lease will go in following the proposed restructuring transactions. *See* Doc. 723, Ex. D-F. A significant number of leases appear on multiple exhibits. Fieldwood leaves a cryptic clue

regarding why leases might appear on multiple schedules in footnote 5 of the Disclosure Statement:

[5] For any lease that is listed on **Exhibit C** (Purchased Oil & Gas Lease Interests) and also on any of **Exhibits D-F**, (i) FWE I is to obtain solely the right, title and interest of FWE obtained from Apache in such lease and (ii) the interests to be obtained by the Credit Bid Purchaser or FWE III or to be abandoned, as applicable, shall be all right, title and interest of FWE in such lease (less such right, title and interest obtained from Apache).

Fieldwood provides no breakdown as to which component of any title interest may be abandoned as opposed to purchased, placed in FWE I, or placed into FWE III. Fieldwood also does not identify the working interest owners or predecessors associated with its lease interests, and Fieldwood provides no disclosure of the treatment of rights of way, facilities, or other pipeline systems. Fieldwood provides only nebulous ranges of decommissioning liabilities with no disclosure of these liabilities on a lease-by-lease basis or condition of leases on a lease-by-lease basis. While Fieldwood mentions being in discussions with the applicable regulatory authorities, Fieldwood does not explain whether its contemplated transfer of leases is feasible from a regulatory perspective or likely to obtain regulatory approval. Instead, Fieldwood leaves a labyrinthine title work project for this Court and its creditor constituency to achieve any understanding of who will be forced to clean up Fieldwood's mess and at what cost. Fieldwood has indicated it plans to amend for many weeks now, but at this time, Fieldwood's disclosure statement omits significant information regarding its liabilities.[1]

Additionally Fieldwood has not provided financial disclosures. These disclosures are essential to evaluate whether FWE I and FWE III will be able to accomplish decommissioning objectives. Fieldwood should further disclose idle iron plans for these set of leases with scheduling for work to be performed and identify contractors engaged to perform the work. Parties in interest must be able to evaluate whether FWE I and FWE III can accomplish the

---

[1] To be clear, McMoRan reserves objections to any amended disclosure statement filed by Fieldwood.

promised decommissioning work or whether those entities are destined to face further restructuring.

McMoRan is a predecessor in title and joint working interest owner with various Debtor entities in a number of offshore oil and gas lease interests. Fieldwood has placed McMoRan's lease interests in both the FWE I, FWE III, and the abandonment category of leases.

### III.    ARGUMENTS AND AUTHORITIES

A disclosure statement must contain "adequate information" before a bankruptcy court may approve it. 11 U.S.C. § 1125. Bankruptcy Code § 1125(a)(1) defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information….

*Id*. § 1125(a)(1).

In practice, courts have characterized the phrase "adequate information" as information sufficient to permit the holders of claims against a debtor to make an informed choice regarding the approval or rejection of a plan. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988), *cert. den*. 488 U.S. 926 (1988). A disclosure statement should provide creditors with enough information about the proposed plan for them to decide whether to approve its treatment of their claims. *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd In re Duratech Indus., Inc.*, 241 B.R. 283 (E.D.N.Y. 1999). Determining whether a plan provides "adequate information" lies largely within the bankruptcy court's discretion. *In re Village*

*Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) (noting that what constitutes "adequate information" lies within the bankruptcy court's "substantial discretion").

A.     **Fieldwood's Disclosure Statement Lacks Adequate Information.**

The Disclosure Statement contains massive gaps in information that make it impossible for parties in interest to evaluate the full effects of the plan.   The gaps in information are compounded by duplication in the exhibits explaining which assets will be sorted into which post-emergence entity.   These gaps include at least the following:

- For the dozens of leases listed on multiple exhibits, Fieldwood provides no breakdown as to what specific interest it purports to abandon within any given lease interest as opposed to the interests being purchased, transferred to FWE I, or transferred to FWE III. Fieldwood should clearly disclose what leases are going into which category, and if Fieldwood is attempting to abandon factional interests in certain leases, it should set out those interests clearly to allow parties in interest to understand the effect such an approach will have on revenues and decommissioning liabilities.

- Fieldwood should identify anticipated timing in which plugging and abandonment and decommissioning will need to occur and when such work is scheduled to occur.   This information will help parties understand what work is due immediately and what will come due in the very near future.

- Fieldwood provides no disclosure of the many pipeline rights of way it owns as well as any predecessor liability or orphan risk for those rights of way.

- Fieldwood does not identify the predecessors or working interest owners to which it purports to "abandon" its lease interests.   That information is critical to provide notice and due process to parties potentially affected by the Plan, allow parties to evaluate the

potential environmental implications of abandonment, effect on going-forward joint interest billings, and effect on revenues under a significant set of operating agreements. Moreover, Fieldwood's apparent plan to abandon certain components of its lease interests while transferring others further obscures what interests may be left behind for predecessors and working interest owners to address.

- The Disclosure Statement does not discuss substantive consolidation. It is unclear what happens with existing entities and how the reverse merger concept will work from a regulatory perspective. Moreover, to the extent leases are transferred from a debtor entity to a new entity, those transfers must be approved by the applicable regulatory authorities. Fieldwood has not explained how it can transfer terminated or relinquished lease interests to new entities or what happens under the plan if transfers are disallowed by the regulators.

- Fieldwood proposes creating two entities to perform decommissioning work—FWE I and FWE III. Fieldwood fails to provide financial projections or other information sufficient to determine whether those entities are adequately capitalized to complete significant plugging and abandonment and further fails to disclose any plan for restoring production or increasing production as may be needed to fund the entities. Fieldwood further fails to disclose the extent of plugging and abandonment liabilities on a lease-by-lease basis. The significant overlap between the FWE I, FWE III, and abandonment schedules makes this analysis vastly more difficult. Fieldwood should provide adequate information to allow parties to determine whether these entities can accomplish the proposed decommissioning without need for further reorganization in the future.

- Fieldwood has yet to provide liquidation analysis, financial expenses, or any discussion of the magnitude of administrative expenses. Fieldwood also fails to explain how the significant cash on hand will be utilized.

- Fieldwood does not disclose any type of marketing process for shelf assets or other alternatives to abandonment. For the purchased assets, Fieldwood identifies a credit bid but has presented no bid procedures, sale procedures, or details regarding the terms of the sale. Fieldwood should explain all marketing efforts for remaining assets and create a structure that allows for the potential rescue of assets.

- Fieldwood intends to disclose contract treatments in a plan supplement to-be-filed ten days before confirmation. This timing is inadequate to address the vast set of joint operating agreements, purchase and sale agreements, and other contracts between Fieldwood and many other parties.

- Fieldwood identifies a transition services agreement for FWE I but fails to identify the terms associated with that agreement. (Doc. 723 at 8). Fieldwood further states FWE III will "leverage" the plugging and abandonment experience of the Credit Bid Purchaser entity but fails to identify terms associated with that process either. (Doc. 723 at 64).

- Fieldwood does not disclose orphan liabilities that may become a taxpayer burden. McMoRan is aware of multiple leases with obligations that accrued entirely after McMoRan's period of liability ended. McMoRan anticipates this likely has occurred across the abandoned lease asset list, and Fieldwood should clarify the scope of these obligations and proposed handling.

Bottom line: Fieldwood's current Disclosure Statement contains vast information gaps that prevent parties in interest from understanding the implications of this plan process, much

less to inform parties as confirmation approaches. Fieldwood should provide more complete disclosure of how it is treating its assets, remove the significant duplication, and start again.

**B.      Fieldwood's Voting Procedures Are Improper.**

Fieldwood proposes allowing a $1.00 vote for claims that are "unliquidated, contingent, and / or disputed." (Doc. No. 724 at 18-19). McMoRan anticipates Fieldwood will apply this treatment to claims arising from Fieldwood's proposed abandonment of in excess of $1 billion in plugging and abandonment liabilities. Instead, creditors should be allowed to vote the amount of the liabilities Fieldwood seeks to foist upon them through the plan process. A $1.00 vote is no vote at all, particularly considering the treatment of unsecured claims under the Plan.

**C.      Fieldwood's "Abandonment" and Third Party Release Structure is Unconfirmable.**

Fieldwood purports to abandon its interest in a huge set of leases. However, Fieldwood does not address the fact that it cannot avoid the related environmental liabilities through abandonment. *See* 30 CFR § 250.1702; *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986); *In re Anglo-Suisse Offshore Partners, LLC*, Case No. 15-36566 (Bankr. S.D. Tex. Apr. 6, 2016) (Dkt. No. 63); *In re Amer. Coastal Energy, Inc.*, 339 B.R. 805, 812 (Bankr. S.D. Tex. 2009). The Court should not approve any plan that allows Fieldwood to walk from a vast public health and safety crisis of its own making.

Moreover, while attempting to abandon its own liabilities is problematic enough, Fieldwood goes further by providing impermissible third party releases to "the Apache PSA Parties." (See Doc. 723 at 34). Apache is a working interest owner or predecessor in title for a significant set of lease interests including some on the "abandoned" property list. Nothing in the plan should purport to release Apache from any of its environmental obligations or obligations to third parties, joint working interest owners, and others in the chains of title for any of the

Debtors' assets. It is entirely unclear how the third party releases dovetail with obligations under joint operating agreements, purchase and sale agreements, and other contracts.

## IV.   RESERVATION OF RIGHTS

McMoRan reserves all rights regarding any amended Disclosure Statement, plan confirmation, contract assumption and rejection, and its claims in this case, including, but not limited to, administrative priority claims related to decommissioning work, adequate protection for such expenditures, and all other rights in this case.

WHEREFORE, McMoRan prays the Court sustain this objection and grant such other relief as may be just and proper.

Dated:  March 11, 2021            Respectfully submitted,

*/s/ Omer F. Kuebel, III* _____

**Omer F. Kuebel, III**
  Federal Bar No. 32595
**Bradley C. Knapp**
  Texas Bar No. 24060101

**LOCKE LORD LLP**
601 Poydras St., Suite 2660
New Orleans, Louisiana 70130
Telephone: (504) 558-5210
Fax: (504) 558-5200
rkuebel@lockelord.com
bknapp@lockelord.com


**Philip G. Eisenberg**
  Texas Bar No. 24033923
**Simon Mayer**
  Texas Bar No. 24060243

**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002
Telephone:  (713) 226-1200
Fax:  (713) 223-3717
peisenberg@lockelord.com
eguffy@lockelord.com
simon.mayer@lockelord.com

**PAGE 9**

eric.boylan@lockelord.com

**ATTORNEYS FOR FREEPORT-MCMORAN OIL & GAS LLC AND MCMORAN OIL & GAS LLC**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true copy of the foregoing was served via the Court's ECF system on those parties consenting to service through same on March 11, 2021.

*/s/ Omer F. Kuebel, III*
Omer F. Kuebel, III