Execution Version

| | |
|---|---|
| EUGENE ISLAND 107, 108, 117, 118 | OFFSHORE DEVELOPMENT AREA OPERATING AGREEMENT DATED FEBRUARY 23, 1996, BY AND BETWEEN NORCEN EXPLORER, INC, AS OPERATOR, AND GLOBAL NATURAL RESOURCES OF NEVADA ET AL, AS NON-OPERATOR, COVERING PORTIONS OF BLOCKS 107, 108, 118 AND 117, EUGENE ISLAND. |
| EUGENE ISLAND 107, 108, 117, 118 | PRODUCTION HANDLING AGREEMENT DATED NOVEMBER 1, 2000, BY AND BETWEEN RME PETROLEUM COMPANY ET AL, PROCESSOR, AND RME PETROLEUM COMPANY ET AL, PRODUCER. |
| EUGENE ISLAND 175 | OFFSHORE OPERATING AGREEMENT EFFECTIVE NOVEMBER 1, 1995, BY AND BETWEEN VASTAR RESOURCES, INC, AND MERIDIAN OIL OFFSHORE INC, AS AMENDED. |
| EUGENE ISLAND 175 | AGREEMENT AND AMENDMENT TO JOA DATED JUNE 7, 2004, BY AND BETWEEN APACHE CORPORATION AND OFFSHORE ENERGY I LLC. |
| GALVESTON 210 | GAS PURCHASE LETTER AGREEMENT DATED MARCH 3, 2009, BY AND BETWEEN MARINER AND MERIT ENERGY. |
| GALVESTON 210 | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | OFFSHORE OPERATING AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | PRODUCTION HANDLING AGREEMENT DATED MAY 1, 2005, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| GALVESTON 210 | OFFSHORE OPERATING AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
| GRAND ISLE 110,116 | LETTER AGREEMENT DATED MARCH 2, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, ET AL., AND AMOCO PRODUCTION COMPANY, ET AL.. |
| GRAND ISLE 110,116 | UNIT OPERATING AGREEMENT DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. |
| GRAND ISLE 110,116 | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF EXPLORATION, DEVELOPMENT, AND PRODUCTION OPERATIONS ON THE GRAND ISLE BLOCK 116 UNIT, DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AND SHELL OFFSHORE INC. |
| GRAND ISLE 110,116 | PIPELINE TIE-IN AND GAS MEASUREMENT, CONSTRUCTION, INSTALLATION, MEASUREMENT AND MAINTENANCE AGREEMENT DATED OCTOBER 1, 1999, BY AND BETWEEN MANTA RAY OFFSHORE GATHERING COMPANY, LLC AND ANADARKO PETROLEUM CORPORATION, ET AL.. |

Execution Version

| | |
|---|---|
| GRAND ISLE 110,116 | PRODUCTION HANDLING AGREEMENT DATED JUNE 1, 2005, BY AND BETWEEN APACHE CORPORATION AND W&T OFFSHORE, INC. |
| GRAND ISLE 116 | BAYOU BLACK TERMINALLING AGREEMENT DATED JUNE 26, 2006 BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND WFS LIQUID COMPANY. |
| GRAND ISLE 116 | LIQUID HYDROCARBONS STABILIZATION AGREEMENT DATED FEBRUARY 1, 2009 BY AND BETWEEN ENTERPRISE FIELD SERVICES AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| GRAND ISLE 116 | KOCH SUPPLY & TRADING OIL PURCHASE AGREEMENT DATED SEPTEMBER 1, 2005 BY AND BETWEEN KOCH AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| GRAND ISLE 116 | ENTERPRISE GAS PROCESSING, GAS PROCESSING FRACTIONATION & PRODUCTION PURCHASE AGREEMENT NORTH TERREBONNE GAS PROCESSING PLANT DATED APRIL 1, 2008 BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND ENTERPRISE GAS PROCESSING. |
| GRAND ISLE 116 | MANTA RAY OFFSHORE GATHERING DATED JANUARY 17, 1997, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND MANTA RAY OFFSHORE GATHERING. |
| GRAND ISLE 116 | PATTERSON GAS PROCESSING AGREEMENT DATED JULY 1, 2007 BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND ANR PIPELINE. |
| GRAND ISLE 116 | MANTA RAY OFFSHORE INTERACTIVE INTERNET WEBSITE AGREEMENT DATED AUGUST 1, 2005, BY AND BETWEEN MANTA RAY PIPELINE AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| GRAND ISLE 116 | CALUMET GAS PROCESSING DATED FEBRUARY 1, 2009, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND ENTERPRISE GAS PROCESSING, LLC. |
| GRAND ISLE 110,116 | NAUTILUS PIPELINE LIQUIDS TRANSPORTATION AGREEMENT DATED AUGUST 1, 2005, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND NAUTILUS PIPELINE. |
| GRAND ISLE 110,116 | NAUTILUS PIPELINE TRANSPORTATION SERVICE AGREEMENT DATED AUGUST 1, 2005, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND NAUTILUS PIPELINE. |
| GRAND ISLE 110,116 | NAUTILUS PIPELINE INTERACTIVE INTERNET WEBSITE AGREEMENT DATED JULY 31, 2006, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND NAUTILUS PIPELINE. |
| GRAND ISLE 110,116 | BASE CONTRACT FOR SALE & PURCHASE OF NATURAL GAS DATED JULY 31, 2006, BY AND BETWEEN SHELL ENERGY AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| HIGH ISLAND 365A | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| HIGH ISLAND 365A | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| HIGH ISLAND 365A | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |

Execution Version

| | |
|---|---|
| HIGH ISLAND 376A | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, COVERING BLOCK A-365 AND A-376, HIGH ISLAND AREA, AS AMENDED AND RATIFIED BY ELF AQUITAINE, INC. |
| HIGH ISLAND 376A | HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AGREEMENT DATED MARCH 21, 2002 BETWEEN OWNERS OF THE HIGH ISLAND PIPELINE SYSTEM PER EXHIBIT G OF THE OPERATING AGREEMENT. WILL BE REPLACED BY NEW OPERATING AND ADMINISTRATIVE AGREEMENT AND OWNERS AGREEMENT ONCE EXECUTED BY THE OWNERS. A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 376A | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AND ADMINISTRATIVE MANAGEMENT AGREEMENT DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 376A | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OWNERS AGREEMENT BETWEEN OWNERS OF HIGH ISLAND PIPELINE SYSTEM (COLLECTIVELY THE "HIPS OWNERS") DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 376A | QUESTOR LEASE SPACE AGREEMENT DATED JUNE 1, 1998 BETWEEN QUESTOR PIPELINE COMPANY, MCALISTER ENTERPRISES, INC., APACHE CORPORATION, HUNT PETROLEUM (AEC), INC, W&T OFFSHORE, INC, AND NOBLE ENERGY, INC. |
| HIGH ISLAND 376A | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |
| HIGH ISLAND 382A | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL PRODUCING TEXAS AND NEW MEXICO INC. ET AL, AS AMENDED JANUARY 1, 1989. |
| HIGH ISLAND 382A | GAS BALANCING AGREEMENT DATED JANUARY 4, 1979, BY AND BETWEEN MOBIL PRODUCING TEXAS AND NEW MEXICO INC. ET AL, AS AMENDED JULY 1, 1995. |
| HIGH ISLAND 382A | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |

Execution Version

| | |
|---|---|
| HIGH ISLAND 573 | HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AGREEMENT DATED MARCH 21, 2002 BETWEEN OWNERS OF THE HIGH ISLAND PIPELINE SYSTEM PER EXHIBIT G OF THE OPERATING AGREEMENT. WILL BE REPLACED BY NEW OPERATING AND ADMINISTRATIVE AGREEMENT AND OWNERS AGREEMENT ONCE EXECUTED BY THE OWNERS. A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 573 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AND ADMINISTRATIVE MANAGEMENT AGREEMENT DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 573 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OWNERS AGREEMENT BETWEEN OWNERS OF HIGH ISLAND PIPELINE SYSTEM (COLLECTIVELY THE "HIPS OWNERS") DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND A573, A595, A596, | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |
| HIGH ISLAND A595 | HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AGREEMENT DATED MARCH 21, 2002 BETWEEN OWNERS OF THE HIGH ISLAND PIPELINE SYSTEM PER EXHIBIT G OF THE OPERATING AGREEMENT. WILL BE REPLACED BY NEW OPERATING AND ADMINISTRATIVE AGREEMENT AND OWNERS AGREEMENT ONCE EXECUTED BY THE OWNERS. A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND A595 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AND ADMINISTRATIVE MANAGEMENT AGREEMENT DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND A595 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OWNERS AGREEMENT BETWEEN OWNERS OF HIGH ISLAND PIPELINE SYSTEM (COLLECTIVELY THE "HIPS OWNERS") DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |

| HIGH ISLAND A595, A596 | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
|---|---|
| MISSISSIPPI CANYON 110 | OPERATING AGREEMENT EFFECTIVE FEBRUARY 1, 1998, BY AND BETWEEN SHELL OFFSHORE, INC, OPERATOR, AND WESTPORT OIL & GAS COMPANY, INC, NON-OPERATOR. |
| MISSISSIPPI CANYON 110 | PARTICIPATION AGREEMENT EFFECTIVE MARCH 3, 1988, BY AND BETWEEN WESTPORT OIL AND GAS COMPANY, INC, AND BASIN EXPLORATION, INC. |
| MISSISSIPPI CANYON 110 | PLATFORM ACCESS, OPERATING SERVICES AND PRODUCTION HANDLING AGREEMENT EFFECTIVE JUNE 30, 1999, BY AND BETWEEN BP EXPLORATION AND OIL INC ET AL, AMBERJACK PLATFORM OWNERS, AND SHELL OFFSHORE, INC, PRODUCERS. |
| NORTH PADRE ISLAND 883 | EXPLORATION AGREEMENT DATED AUGUST 5, 1999 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| NORTH PADRE ISLAND 883 | JOINT OPERATING AGREEMENT DATED JULY 12, 1998 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| NORTH PADRE ISLAND 883 | POOLING AGREEMENT DATED DECEMBER 18, 2002, BY AND BETWEEN THE STATE OF TEXAS AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| SOUTH MARSH ISLAND 280 | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| SOUTH MARSH ISLAND 280 | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| SOUTH MARSH ISLAND 280 | SPACE LEASE AND PRODUCTION HANDLING OPERATIONS AGREEMENT DATED AUGUST 14, 1995, BY AND BETWEEN NORCEN EXPLORER, INC ET AL (PLATFORM OWNERS) AND DALEN RESOURCES OIL & GAS CO. |
| SOUTH MARSH ISLAND 280, 281 | JOINT DEVELOPMENT AGREEMENT  EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| SOUTH MARSH ISLAND 280, 281 | ASSIGNMENT OF THE PROPORTIONAL OWNERSHIP OF THE CALUMET GAS PROCESSING PLANT PURSUANT TO THE C & O AGREEMENT DATED JANUARY 1, 1970 BETWEEN THE CALUMET PLANT OWNERS |

Execution Version

| | |
|---|---|
| SOUTH TIMBALIER 53 | OPERATING AGREEMENT DATED MARCH 1, 1979, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC. |
| SOUTH TIMBALIER 53 | AMENDMENT NO 2 TO PRODUCTION & HANDLING AGREEMENT DATED JUNE 1, 2008, BY AND BETWEEN APACHE CORPORATION AND MERIT ENERGY, ET AL. |
| SOUTH TIMBALIER 53 | PLATFORM RENTAL AND MAINTENANCE AGREEMENT DATED JANUARY 21, 1981, BY AND BETWEEN CHEVRON U.S.A. INC. AND UNION OIL COMPANY OF CALIFORNIA. |
| SOUTH TIMBALIER 53 | LEASE OF PLATFORM SPACE FOR COMMUNICATIONS EQUIPMENT DATED AUGUST 1, 2000, BY AND BETWEEN LINDER AND LOUISIANA GENERAL AND CDMS. |
| SOUTH TIMBALIER 53 | PRODUCTION HANDLING AND OPERATIONS AGREEMENT DATED AUGUST 1, 1992, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA, MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC., ARCO OIL AND GAS COMPANY AND SAMEDAN OIL CORPORATION. |
| SOUTH TIMBALIER 53 | FACILITIES AGREEMENT MODIFICATION OF FACILITIES DATED DECEMBER 9, 1999, BY AND BETWEEN TENNESSEE GAS PIPELINE COMPANY AND UNION OIL COMPANY OF CALIFORNIA. |
| SOUTH TIMBALIER 53 | FACILITIES AGREEMENT OFFSHORE CONNECTION AND INSTALLATION OF FACILITIES DATED DECEMBER 9, 1999, BY AND BETWEEN TENNESSEE GAS PIPELINE COMPANY AND UNION OIL COMPANY OF CALIFORNIA. |
| SOUTH TIMBALIER 53 | NATURAL GAS PROCESSING AGREEMENT DATED APRIL 1, 2002, BY AND BETWEEN DUNHIL RESOURCES AND DYNEGY. |
| SOUTH TIMBALIER 53 | PIPELINE CROSSINGS AGREEMENT DATED MAY 28, 1993, BY AND BETWEEN ATP AND THE HOUSTON EXPLORATION COMPANY. |
| VERMILION 78 | JOINT OPERATING AGREEMENT DATED NOVEMBER 11, 1980, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AS OPERATOR, AND CNG PRODUCING COMPANY AND HUNT OIL COMPANY, AS NON-OPERATORS, COVERING VERMILION AREA, BLOCK 78, OCS-G 4421, OFFSHORE LOUISIANA. |
| VERMILION 78 | ASSIGNMENT OF 100% OF W&T OWNERSHIP OF THE VERMILION 76 SEPARATION FACILITIES; NEW JOINDER AGREEMENT MAY BE REQUIRED FROM EPL, OPERATOR |
| VIOSCA KNOLL 779, 780, 824 | DESTIN PIPELINE, TRANSPORTATION SERVICE |
| VIOSCA KNOLL 779, 780, 824 | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL. |
| VIOSCA KNOLL 779, 780, 824 | PRODUCTION HANDLING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE, INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| VIOSCA KNOLL 779, 780, 824 | COASTAL FARMOUT OFFER DATED APRIL 3, 1998, BY AND BETWEEN COASTAL O&G CORPORATION AND ELF EXPLORATION INC., ET AL. |
| VIOSCA KNOLL 779, 780, 824 | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COASTAL POSISTION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COASTAL O&G CORPORATION. |
| VIOSCA KNOLL 779, 780, 824 | LETTER (ELF OFFERS NIPPON PART OF THE COASTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |

Execution Version

| | |
|---|---|
| VIOSCA KNOLL 779, 780, 824 | LETTER- ELF OFFERS ITS SHARE OF COASTAL F/O TO NIPPON DATED APRIL 9, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| VIOSCA KNOLL 779, 780, 824 | LETTER- NIPPON TAKES ITS SHARE OF COASTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COASTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| VIOSCA KNOLL 779, 780, 824 | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFSSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| VIOSCA KNOLL 779, 780, 824 | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| VIOSCA KNOLL 779, 780, 824 | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COASTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| VIOSCA KNOLL 779, 780, 824 | GAS GATHERING AGREEMENT DATED AUGUST 20, 1998, BY AND BETWEEN DAUPHIN ISLAND GATHERING PARTNERS AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| VIOSCA KNOLL 779, 780, 824 | NIPPON WAIVER OF ADDITIONAL CAPACITY IN HANDLING FACILITY DATED AUGUST 14, 2008. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | CONVEYANCE AND OPERATING AGREEMENT FOR THE GRAND CHENIER SEPARATION FACILITIES DATED JANUARY 17, 1963, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | OWNERSHIP AND OPERATING AGREEMENT DATED OCTOBER 18, 1976, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | OWNERSHIP AND OPERATING AGREEMENT DATED OCTOBER 26, 1978, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | LETTER AGREEMENT DATED OCTOBER 26, 1978, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO THE OWNERSHIP AND OPERATING AGREEMENT DATED JUNE 29, 1984, BY AND BETWEEN CONOCO INC. AND GETTY OIL COMPANY, ET AL. |

Execution Version

| | |
|---|---|
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | UPDATED UNITIZED RESERVOIR OWNERSHIPS DATED JUNE 18, 1986. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | CORRECTION - PRODUCTION SHARING PROPOSAL DATED SEPTEMBER 19, 1986. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO THE OWNERSHIP AND OPERATING AGREEMENT DATED SEPTEMBER 17, 1975, BY AND BETWEEN CONOCO INC. AND TEXACO PRODUCING INC. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO THE OWNERSHIP AND OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | OPERATING AGREEMENT DATED JANUARY 1, 1989, BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |

Execution Version

| | |
|---|---|
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | LETTER AGREEMENT DATED MARCH 28, 1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | WAIVER DATED AUGUST 24, 2004, BY CHEVRON USA INC. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 67 | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | LIMITED JOINDER DATED MARCH 28, 1979, BY CITIES SERVICE COMPANY. |
| WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | GAS PROCESSING AGREEMENT DATED JANUARY 25, 2001, BY AND BETWEEN VASTAR RESOURCES, INC. AND STONE ENERGY CORPORATION. |

Execution Version

| | |
|---|---|
| WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO PROCESSING AGREEMENT DATED MARCH 17, 2005, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION CO. |
| WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO PROCESSING AGREEMENT DATED APRIL 21, 2005, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION CO. |
| WEST CAMERON 65, WEST CAMERON 66 | COMPRESSION AGREEMENT DATED APRIL 1, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 65, WEST CAMERON 66 | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 66 | CLARIFICATION OF WORKING INTEREST BY BP AMERICA PRODUCTION COMPANY |
| WEST CAMERON 66 | PRODUCTION HANDLING AGREEMENT DATED JANUARY 1, 2000, BY AND BETWEEN VASTAR RESOURCES, INC. AND TEXACO EXPLORATION & PRODUCTION INC. |
| WEST CAMERON 66 | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| WEST CAMERON 66 | EMAIL CORRESPONDENCE DATED SEPTEMBER 20, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| WEST DELTA 121, 122 | PRODUCTION HANDLING AGREEMENT DATED MAY 1, 2007, BY AND BETWEEN APACHE CORPORATION AND APACHE CORPORATION, W&T OFFSHORE, INC., STONE ENERGY, ET AL, AS PRODUCER. |
| WEST DELTA 121, 122 | SHELL TRADING OIL PURCHASE AGREEMENT DATED SEPTEMBER 1, 2007, BY AND BETWEEN SHELL OIL AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |

## Exhibit B

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

Form of Assignment, Conveyance and Bill of Sale

Form of Assignment, Conveyance and Bill of Sale

**THIS ASSIGNMENT, CONVEYANCE AND BILL OF SALE** (this "**Assignment**"), is made and entered this 13th day of March 2014, but is effective as of March 1, 2014, at 7:00 a.m. Central Daylight Time (the "**Effective Time**"), from Black Elk Energy Offshore Operations, LLC, a Texas limited liability company (the "**Assignor**"), whose address is 11451 Katy Freeway, Suite 500, Houston, Texas 77079 in favor of SandRidge Energy Offshore, LLC, a Delaware limited liability company (the "**Assignee**"), whose address is 2000 W. Sam Houston Parkway South, Suite 1200, Houston, Texas 77042.

## <u>WITNESSETH:</u>

This Assignment is made pursuant to the terms of that certain Purchase and Sale Agreement dated as of March 13, 2014, by and among Assignor and Assignee (the "**Purchase and Sale Agreement**"). All capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Purchase and Sale Agreement.

That Assignor, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby sell, transfer, assign, and convey to Assignees, all of Assignor's right, title, interest and estate, real or personal, recorded or unrecorded, movable or immovable, tangible or intangible, in and to the following (less and except the Excluded Assets, as such term is defined below) (collectively, the "**Assets**"):

(a)     All of (i) the oil and gas leases; subleases and other leaseholds; net profits interests; carried interests; farmout rights; options; contractual rights and other properties and interests described on **Exhibit A** (collectively, the "**Leases**"), and all other mineral rights or interests in or affecting the Leases, even if not described or referenced on Exhibit A, together with each and every kind and character of right, title, claim, and interest that Assignor has in and to the lands covered by the Leases or the lands currently pooled, unitized, communitized or consolidated therewith (the "**Lands**");

(b)     All oil, gas, water, disposal or injection wells shown on **Exhibit A-1** whether producing, shut-in, temporarily abandoned, or permanently abandoned, and any other oil, gas, water, disposal or injections wells located on or associated with the Lands, even if not shown on **Exhibit A-1**, whether producing, shut-in, temporarily abandoned, or permanently abandoned (collectively, the "**Wells**");

(c)     All pools and units shown on **Exhibit A-1** (even to the extent not located on the Lands or including any of Wells), and all pools and units which include any Lands or all or a part

of any Leases or include any Wells, even if not shown on **Exhibit A-1** (the "**Units**"; the Units, together with the Leases, Lands and Wells, being hereinafter referred to as the "**Properties**"), and including all interest of Assignor derived from the Leases in production of Hydrocarbons from any such Unit, whether such Unit production of Hydrocarbons comes from Wells located on or off of a Lease, and all tenements, hereditaments and appurtenances belonging to the Leases and Units;

(d)     All contracts, agreements and instruments by which the Properties, Equipment, Pipelines, Records, and Included Geologic Data (collectively the "**Subject Properties**") are bound, or that relate to or are otherwise applicable to the Subject Properties, only to the extent such contracts are valid and existing and applicable to the Subject Properties rather than Assignor's other properties, including but not limited to, operating agreements, unitization, pooling and communitization agreements, declarations and orders, joint venture agreements, farmin and farmout agreements, exploration agreements, participation agreements, exchange agreements, transportation or gathering agreements, agreements for the sale and purchase of oil, gas, casinghead gas or processing agreements to the extent applicable to the Properties or the Hydrocarbons produced from the Properties, including but not limited to those identified on **Schedule 1.2(d)** (hereinafter collectively referred to as "**Contracts**"), but excluding any contracts, agreements and instruments to the extent transfer is restricted by third-party agreement or applicable Law and the necessary consents to transfer are not obtained pursuant to **Section 7.7** and provided that "**Contracts**" shall not include the instruments constituting the Leases or Easements;

(e)     All easements, permits, licenses, servitudes, rights-of-way, surface leases and other surface rights and all contracts, agreements, and instruments by which they are bound (collectively the "**Easements**") appurtenant to, and used or held for use in connection with the Properties (including those identified on **Schedule 1.2(e)**), but excluding any permits and other rights to the extent transfer is restricted by third-party agreement or applicable Law and the necessary consents to transfer are not obtained pursuant to **Section 7.7**;

(f)     All platforms, equipment, machinery, fixtures and other tangible personal property and improvements set forth on **Schedule 1.2(f)** and all other platforms, equipment, machinery, fixtures and other tangible personal property and improvements located on the Properties or used, or held for use, primarily in connection with the operation of the Properties (collectively, "**Equipment**");

(g)     All flow lines, pipelines, gathering systems and appurtenances thereto set forth on **Schedule 1.2(g)** and all flow lines, pipelines, gathering systems and appurtenances thereto located on the Properties or used, or held for use, in connection with the operation of the Properties (collectively "**Pipelines**" and, together with the Equipment and Wells, "**Personal Property**");

(h)     All Hydrocarbons produced from or attributable to the Leases, Lands, and Wells from and after the Effective Time;

(i)     All Imbalances;

(j)     All lease files; land files; well files; gas and oil sales contract files; gas processing files; division order files; abstracts; title opinions; land surveys; environmental surveys, inspections, assessments, and reports; logs; maps; engineering data and reports; interpretive data, technical evaluations and technical outputs; and other books, records, data, files, and accounting records, in each case to the extent related to the Assets, or used or held for use in connection with the maintenance or operation thereof, but excluding (i) any books, records, data, files, logs, maps, evaluations, outputs, and accounting records to the extent disclosure or transfer would result in a violation of applicable Law or is restricted by any Transfer Requirement that is not satisfied pursuant to **Section 7.7**, (ii) computer or communications software or intellectual property (including tapes, codes, data and program documentation and all tangible manifestations and technical information relating thereto), (iii) attorney-client privileged communications and work product of Assignor's or any of its Affiliates' legal counsel (other than title opinions), (iv) reserve studies and evaluations, and (v) records relating to the negotiation and consummation of the sale of the Assets (subject to such exclusions, the "**Records**"); provided, however, that Assignor may retain the originals of such Records as Assignor has reasonably determined may be required for existing litigation, tax, accounting, and auditing purposes;

(k)     All Geological Data specifically listed on **Schedule 1.2(k)** (collectively, "**Included Geological Data**"); and

(l)     All computers, software (provided it is transferable), specialty tools, SCADA systems, peripherals, radio and telephone equipment to the extent the same are necessary to operate the property or Equipment

provided, however, that notwithstanding the foregoing, the Assets shall not include, and Assignor hereby reserves and retains, all of the Excluded Assets.

**TO HAVE AND TO HOLD** to Assignee, its successors and assigns, forever, subject to the Permitted Encumbrances, as such term is defined in the Purchase and Sale Agreement, and the other terms and provisions hereof and of the Purchase and Sale Agreement referred to below.

This Assignment is made by Assignor and accepted by Assignee subject to the following terms and conditions:

1.     **Effective Time**.  This Assignment shall be effective as of the Effective Time.

2.     **Purchase and Sale Agreement**.  This Assignment is expressly made subject to the Purchase and Sale Agreement.  In the event of a conflict between this Assignment and the Purchase and Sale Agreement, the Purchase and Sale Agreement shall control.  Capitalized terms used and not otherwise defined herein are used with the meanings given thereto in the Purchase and Sale Agreement.

3.     **Disclaimers**.

EXCEPT AS AND TO THE EXTENT EXPRESSLY SET FORTH IN SECTION 4 HEREOF OR IN THE PURCHASE AND SALE AGREEMENT, (i) ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, AND (ii) ASSIGNOR EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR

ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO ASSIGNEE OR ANY OF ASSIGNEE'S AFFILIATES, EMPLOYEES, AGENTS, CONSULTANTS OR REPRESENTATIVES (INCLUDING, WITHOUT LIMITATION, ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO ASSIGNEE BY ANY OFFICER, DIRECTOR, EMPLOYEE, AGENT, CONSULTANT, REPRESENTATIVE OR ADVISOR OF ASSIGNOR OR ANY OF ITS AFFILIATES). EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE 5 OF THE PURCHASE AND SALE AGREEMENT, AND WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSIGNOR EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (i) TITLE TO ANY OF THE ASSETS, (ii) THE CONTENTS, CHARACTER OR NATURE OF ANY DESCRIPTIVE MEMO OR ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE ASSETS, (iii) THE QUANTITY, QUALITY OR RECOVERABILITY OF PETROLEUM SUBSTANCES IN OR FROM THE ASSETS, (iv) ANY ESTIMATES OF THE VALUE OF THE ASSETS OR FUTURE REVENUES GENERATED BY THE ASSETS, (v) THE PRODUCTION OF HYDROCARBONS FROM THE ASSETS, (vi) THE MAINTENANCE, REPAIR, CONDITION, QUALITY, SUITABILITY, DESIGN OR MARKETABILITY OF THE ASSETS, (vii) THE CONTENT, CHARACTER OR NATURE OF ANY DESCRIPTIVE MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY ASSIGNOR OR THIRD PARTIES WITH RESPECT TO THE ASSETS, (viii) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO ASSIGNEE OR ITS AFFILIATES, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THE PURCHASE AND SALE AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO AND (ix) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT. EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4 HEREOF ASSIGNOR FURTHER DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, OF MERCHANTABILITY, FREEDOM FROM LATENT VICES OR DEFECTS (INCLUDING THOSE CONTEMPLATED IN THE LOUISIANA CIVIL CODE ARTICLES 2475, AND 2520 THROUGH 2548), FITNESS FOR A PARTICULAR PURPOSE OR CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OF ANY ASSETS, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES HERETO THAT ASSIGNEE SHALL BE DEEMED TO BE OBTAINING THE ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS" WITH ALL FAULTS, AND THAT ASSIGNEE HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS ASSIGNEE DEEMS APPROPRIATE.

EXCEPT AS REPRESENTED IN ARTICLE 5 OF THE PURCHASE AND SALE AGREEMENT, ASSIGNOR HAS NOT AND WILL NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAWS, ENVIRONMENTAL LIABILITIES, THE RELEASE OF MATERIALS INTO THE ENVIRONMENT OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE ASSETS, AND NOTHING IN THIS

ASSIGNMENT OR OTHERWISE SHALL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY, AND ASSIGNEE SHALL BE DEEMED TO BE TAKING THE ASSETS "AS IS" AND "WHERE IS" FOR PURPOSES OF THEIR ENVIRONMENTAL CONDITION.

Assignor and Assignee agree that, to the extent required by applicable Law to be effective, the disclaimers of certain representations and warranties contained in this Section 3 are "conspicuous" disclaimers for the purpose of any applicable Law.

**4.**     **Special Warranty of Title**.  This Assignment is made, executed, and delivered without warranty of title, either express or implied, even as to a return of the purchase price, except that Assignor specially warrants and agrees to defend Defensible Title, as such term is defined in the Purchase and Sale Agreement, subject to the applicable provisions of the Purchase and Sale Agreement, to the  Leases, Units, and Wells shown on **Exhibits A** and **A-1** against the claims and demand of all Persons claiming by, through, or under Assignor or its Affiliates, but not otherwise, up to the Allocated Value thereof, but with full right of substitution and subrogation of Assignee in and to all claims Assignor has or may have against all preceding owners.

**5.**     **Assumption by Assignee**.  In addition to its other obligations under this Assignment, Assignee shall comply with all Laws, Leases, Applicable Contracts (including all joint and unit operating agreements) and prevailing industry standards relating to (i) the plugging, abandonment and/or replugging of all Wells, including inactive Wells or temporarily abandoned Wells, included in the Assets or otherwise drilled on the Lands, (ii) the dismantling or decommissioning and removal of any Personal Property and other property of whatever kind related to or associated with operations and activities conducted by whomever on the Properties, or otherwise, pursuant to the Leases or Applicable Contracts and (iii) the clean up, restoration and/or remediation of the Lands covered by the Leases or related to the Assets (collectively, the "**P&A Obligations**").   Subject to the indemnification by certain members of Assignor under Section 11.3 of the Purchase and Sale Agreement, on the Closing Date, Assignee shall assume and hereby agrees to fulfill, perform, pay and discharge (or cause to be fulfilled, performed, paid or discharged) all of the obligations and liabilities of Assignor, known or unknown, with respect to the Assets, regardless of whether such obligations or liabilities arose prior to, on or after the Effective Time, including but not limited to obligations to (a) furnish makeup gas according to the terms of applicable gas sales, gathering or transportation contracts, and to satisfy all other gas balancing obligations, if any, (b) pay working interests, royalties, overriding royalties and other interests held in suspense, (c) properly plug and abandon any and all wells (including, without limitation, the Wells), including inactive wells or temporarily abandoned wells, drilled on the Properties, as required by Law, (d) replug any well, wellbore, or previously plugged well on the Properties to the extent required by Governmental Body, (e) dismantle, salvage and remove any equipment, structures, materials, platforms, flowlines, and property of whatever kind related to or associated with operations and activities conducted on the Properties, (f) clean up, restore and/or remediate the premises covered by or related to the Assets in accordance with applicable agreements and Laws, (g) pay all Property Costs (as defined in the Purchase and Sale Agreement), (h) perform all obligations applicable to or imposed on the lessee, owner, or operator under the Leases or Contracts, or as required by applicable Laws, and (i) otherwise perform and pay, including payment of any contribution obligations of Assignor, relating to any other P&A Obligations with respect to the Assets (all of said obligations and liabilities, subject to

the exclusions below, herein being referred to as the "**Assumed Assignor Obligations**"); provided, however, that the Assumed Assignor Obligations shall not include, and Assignee shall have no obligation to assume, any obligations or liabilities of Assignor or its Affiliates set forth in the following clauses (i) through (vii) (such excluded obligations and liabilities, the "**Excluded Assignor Obligations**").  The Excluded Assignor Obligations are those obligations and liabilities of Assignor or any of its Affiliates that are:

(i)      attributable to or arise out of the Excluded Assets and do not include any obligations or liabilities owed by Purchaser prior to the execution of this Assignment with respect to any of the oil and gas properties comprising the Assets;

(ii)      attributable to or arising out of the actions, suits or proceedings, if any, applicable to periods prior to the Closing Date including those set forth on Schedule 5.7 of the Purchase and Sale Agreement.

(iii)      attributable to any and all liabilities, responsibilities and obligations relating to the matters described in Section 11.3(b) of the Purchase and Sale Agreement.

(iv)      attributable to the failure to pay or the improper payment of any production proceeds attributable to the Assets prior to the Closing Date   (including, without limitation, lessor's royalties, overriding royalties and payments to working interest owners);

(v)      **attributable to damage to property owned by a third Person or for personal injury, illness or death of any Person, arising out of operations or activities pertaining to the Assets and attributable to the period prior to the Closing Date, to the extent and only to the extent that a Claim is asserted with respect to such matters within two (2) years from the Closing Date;**

(vi)      **attributable to fines and penalties (and any interest thereon) with respect to the Assets and applicable to periods prior to the (i) Effective Time with respect to applicable Properties (excluding Properties operated by Assignor or its Affiliates) and (ii) Closing Date with respect to Properties operated by Assignor or its Affiliates; or**

(vii)      **attributable to Property Costs associated with the ownership, use or operation of the Assets prior to the Effective Time.**

**6.**      **Further Assignments**   Certain of the Assets conveyed by this Assignment may require approval to transfer by a government entity, and as such may require separate assignment instruments made on officially approved forms, or forms acceptable to such government entity, (including any assignments of record title, operating rights and/or rights of ways filed with the Bureau of Ocean Energy Management and/or Bureau of Safety and Environmental Enforcement) and in sufficient multiple originals to satisfy applicable statutory and regulatory requirements. Assignor's interest conveyed by such separate assignments are the same, and not in addition to, Assignor's interest conveyed in this Assignment. In addition, it is contemplated that this Assignment will be recorded in more than one parish within the State of Louisiana and/or in more than one county within the state of Texas and the interests conveyed pursuant hereto are the

same, and not in addition to, and this Assignment shall not constitute multiple transfers of such interests by virtue of the recordation of this Assignment in more than one parish or county**.**

7.  **Covenants Running with the Land**.  The terms and provisions hereof shall be deemed to be covenants running with the Lands, Leases, and other interests covered hereby and shall extend to, bind and inure to the benefit of the parties hereto, their heirs, successors and assigns.

8.  GOVERNING LAW AND VENUE. THIS ASSIGNMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS OTHERWISE APPLICABLE TO SUCH DETERMINATIONS. JURISDICTION AND VENUE WITH RESPECT TO ANY DISPUTES ARISING HEREUNDER SHALL BE PROPER ONLY IN HARRIS COUNTY, TEXAS, AND THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY DISPUTE ARISING OUT OF OR RELATING TO THIS ASSIGNMENT BROUGHT IN SUCH COURTS OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, this Assignment is executed by the duly authorized officers or representatives of the parties as of the date first hereinabove written.

WITNESSES:         ASSIGNOR:

**BLACK ELK ENERGY OFFSHORE OPERATIONS LLC**

_____

[Type In Witness Name]    By: _____

_____  Name: _____

[Type In Witness Name]    Title: _____

**WITNESSES:**        **ASSIGNEE:**

**SANDRIDGE ENERGY OFFSHORE, LLC**

_____

[Type In Witness Name]    **By:** _____

_____  **Name:** _____

[Type In Witness Name]    **Title:** _____

## <u>ACKNOWLEDGMENTS</u>

STATE OF TEXAS      §
                                    §
COUNTY OF _____    §

       This instrument was acknowledged before me on the ___ day of March, 2014, by _____, the _____ of Black Elk Energy Offshore Operations LLC, a Texas limited liability company, on behalf of said limited liability company.

                                                _____
                                                Notary Public in and for
                                                The State of Texas

STATE OF TEXAS      §
                                      §
COUNTY OF _____    §

       This instrument was acknowledged before me on the ___ day of March, 2014, by _____, the _____ of SandRidge Energy Offshore, LLC, a Delaware limited liability company, on behalf of said limited liability company.

                                                _____
                                                Notary Public in and for
                                                  The State of Texas

## Exhibit B-1

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

### Form of Assignment of Record Title to Oil and Gas Leases

At Closing Parties will Execute Form BOEM - 0150

Execution Version

## Exhibit B-2

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## Form of Assignment of Operating Rights Interest to Oil and Gas Leases

At Closing Parties will Execute Form BOEM - 0151

## Exhibit B-3

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## Form of Assignment of Rights of Way

At Closing Parties will Execute Form BSEE - 0149

Execution Version

# Exhibit C

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## Form of Title Indemnity Agreement

This Indemnity Agreement is executed on March 13, 2014 (the "**Effective Date**"), by and among Black Elk Energy Offshore Operations, LLC, "**Indemnifying Party**"), and SandRidge Energy Offshore, LLC ("**Indemnified Party**").

WHEREAS, Indemnifying Party, as seller, and Indemnified Party, as purchaser, entered into that certain Purchase and Sale Agreement, dated March __, 2014, (the "**PSA**"); and

WHEREAS, pursuant to Section 3.4(d)(ii) of the PSA, Indemnifying Party desires to indemnify and hold Indemnified Party harmless with respect to certain losses associated with certain Title Defects (as defined in the PSA), as more fully set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises, covenants and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **Indemnification by Indemnifying Party**.      Indemnifying Party hereby indemnifies and holds harmless the Indemnified Party from and against loss of property value, including loss of production from property, as well as reasonable outside counsel attorney fees and other actual and reasonable third-party costs and expenses of investigation and litigation ("**Losses**") arising out of or attributable to Third Party Claims (as defined below) relating to the Title Defects identified on Exhibit A attached hereto and incorporated herein by reference (individually, a "**Subject Title Defect**", collectively, the "**Subject Title Defects**"), up to the amount attributed to each Subject Title Defect, which amount is also identified on Exhibit A (with respect to each Subject Title Defect, the "**Individual Defect Amount**", with respect to the aggregate amount for all Subject Title Defects identified on Exhibit A, the "**Aggregate Defect Amount**").

2.      **Limits on Indemnification, Dispute Regarding Losses**.

(a)      **Notwithstanding anything in the PSA or this Agreement to the contrary, the Indemnified Party and the Indemnifying Parties hereby agree and acknowledge that the Indemnified Party's sole and exclusive remedy with relation to Losses suffered by the Indemnified Party relating to all Subject Title Defects shall be limited to the Aggregate Defect Amount and with relation to Losses suffered by the Indemnified Party regarding any individual Subject Title Defect shall be limited to the corresponding Individual Defect Amount.  Additionally, notwithstanding anything in the PSA or this Agreement to the contrary, the Indemnified Party's sole and exclusive remedy with respect to any and all claims, liabilities, suits, controversies, losses, costs and expenses relating to the Subject Title Defects shall be limited to a claim for reimbursement of Losses pursuant to this Agreement.**

Each of the parties to this Agreement expressly waives and agrees not to seek, and to cause its affiliates not to seek, indirect, consequential, punitive or exemplary damages or damages for lost profits of any kind (other than loss of production from the Subject Title Defects) with respect to any dispute arising under, related to, or in connection with this Agreement or the Subject Title Defects.

(b)      For purposes of calculating the amount of any Losses payable by the Indemnifying Parties, the amount of such Losses shall be determined as agreed upon by the Indemnifying Parties and the Indemnified Party with reference to the applicable Individual Defect Amount in accordance with the terms of, and subject to the limitations contained in, this Agreement and with regard to the portion of the Individual Defect Amount that is affected by a Third Party Claim.  In the event the parties to this Agreement are unable to agree upon the amount of any Losses, the dispute shall be exclusively and finally resolved by binding arbitration pursuant to this Section 2(b). There shall be a single arbitrator, who shall be a title attorney with at least ten (10) years experience in oil and gas titles involving properties in the regional area in which the properties constituting the Subject Title Defect are located, as selected by mutual agreement of the parties hereto (the "Title Expert"). The Title Expert's determination shall be made within twenty (20) days after submission of the matters in dispute and shall be final and binding upon all parties to this Agreement, without right of appeal. In making his determination, the Title Expert shall be bound by the rules and limitations set forth in this Agreement and may consider such other matters as in the opinion of the Title Expert are necessary or helpful to make a proper determination. The Title Expert may allow the parties to make written submissions of their positions in the manner and to the extent the Title Expert deems appropriate, and the Title Expert may call on the parties to submit such other materials as the Title Expert deems helpful and appropriate to resolution of the dispute. Additionally, the Title Expert may consult with and engage disinterested third parties to advise the Title Expert, including without limitation petroleum engineers. Each party hereto shall bear its own legal fees and other costs of presenting its case. Each party shall bear one-half of the costs and expenses of the Title Expert, including any costs incurred by the Title Expert that are attributable to such third party consultation. Within ten (10) days after the Title Expert delivers written notice to the parties to this Agreement of his award with respect to the disputed Losses, the Indemnifying Parties shall pay to the Indemnified Party the amount, if any, so awarded by the Title Expert to the Indemnified Party.

3.      **Indemnification Proceedings**.

(a)      At any time, the Indemnified Party will have the right to notify the Indemnifying Parties in writing that the Indemnified Party is making an indemnification claim for reimbursement for any Losses incurred or reasonably anticipated to be incurred with respect to any third party claim regarding title to or ownership of an interest in a property which is identified as a Subject Title Defect.  In the event that any third party makes a claim regarding title to or ownership of an interest in a property which is identified as a Subject Title Defect for which the Indemnifying Parties may be liable to the Indemnified Party pursuant to Section 1 above (a "Third Party Claim"), the Indemnified Party shall with reasonable promptness notify the Indemnifying Parties of such Third Party Claim by delivery of a written notice to the Indemnifying Parties (a "Claim Notice"),

provided that the failure or delay to so notify the Indemnifying Parties shall not relieve the Indemnifying Parties of their obligations under this Agreement, except to the extent that the Indemnifying Parties demonstrate that their defense of such Third Party Claim is materially prejudiced thereby. The Indemnifying Parties shall have thirty (30) days from receipt of the Claim Notice from the Indemnified Party (the "Notice Period") to notify the Indemnified Party whether or not the Indemnifying Parties desire, at the Indemnifying Parties' sole cost and expense, to defend the Indemnified Party against such claim or demand; provided, that the Indemnified Party is hereby authorized prior to and during the Notice Period, and at the cost and expense of the Indemnifying Parties, to file any motion, answer or other pleading that it shall reasonably deem necessary to protect its interests or those of the Indemnifying Parties. The Indemnifying Parties shall have the right to assume the defense of such Third Party Claim only if and for so long as the Indemnifying Parties (i) notify the Indemnified Party during the Notice Period that the Indemnifying Parties are assuming the defense of such Third Party Claim, (ii) use counsel of its own choosing that is reasonably satisfactory to the Indemnified Party, and (iii) conduct the defense of such Third Party Claim in an active and diligent manner. If the Indemnifying Parties are entitled to, and do, assume the defense of any such Third Party Claim, the Indemnified Party shall have the right to employ separate counsel at its own expense and to participate in the defense thereof; provided, however, that notwithstanding the foregoing, the Indemnifying Party shall pay the reasonable attorneys' fees of the Indemnified Party if the Indemnified Party's counsel shall have advised the Indemnified Party that there is a conflict of interest that could make it inappropriate under applicable standards of professional conduct to have common counsel for the Indemnifying Party and the Indemnified Party (provided that the Indemnifying Party shall not be responsible for paying for more than one separate firm of attorneys and one local counsel to represent all of the Indemnified Parties subject to such Third Party Claim. If the Indemnifying Parties elect (and are entitled) to assume the defense of such Third Party Claim, (i) no compromise or settlement thereof or consent to any admission or the entry of any judgment with respect to such Third Party Claim may be effected by the Indemnifying Parties without the Indemnified Party's written consent (which shall not be unreasonably withheld, conditioned or delayed) unless the sole relief provided is monetary damages that are paid in full by the Indemnifying Parties (and no injunctive or other equitable relief is imposed upon the Indemnified Party) and there is an unconditional provision whereby each plaintiff or claimant in such Third Party Claim releases the Indemnified Party from all liability with respect thereto and (ii) the Indemnified Party shall have no liability with respect to any compromise or settlement thereof effected without its written consent (which shall not be unreasonably withheld). If the Indemnifying Parties elect not to assume the defense of such Third Party Claim (or fails to give notice to the Indemnified Party during the Notice Period), the Indemnified Party shall be entitled to assume the defense of such Third Party Claim with counsel of its own choice, at the expense and for the account of the Indemnifying Parties; provided, however, that the Indemnified Party shall make no settlement, compromise, admission, or acknowledgment that would give rise to liability on the part of any of the Indemnifying Parties without the prior written consent of such Indemnifying Parties, which consent shall not be unreasonably withheld, conditioned or delayed.

(b)     **Notwithstanding the foregoing, the Indemnifying Parties shall not be entitled to control (but shall be entitled to participate at its own expense in the defense of), and the Indemnified Party shall be entitled to have sole control over, the defense or settlement, compromise, admission, or acknowledgment of any Third Party Claim (i) at the reasonable expense of the Indemnifying Parties, as to which the Indemnifying Parties fail to assume the defense during the Notice Period after the Indemnified Party gives notice thereof to the Indemnifying Parties or (ii) at the reasonable expense of the Indemnifying Parties, to the extent the Third Party Claim seeks an order, injunction, or other equitable relief against the Indemnified Party which, if successful, could materially adversely affect the business, condition (financial or other), capitalization, assets, liabilities, results of operations or prospects of the Indemnified Party. The Indemnified Party shall make no settlement, compromise, admission, or acknowledgment that would give rise to liability on the part of the Indemnifying Parties without the prior written consent of the Indemnifying Parties (which consent shall not be unreasonably withheld, conditioned or delayed).**

4.     **Tax Treatment of Indemnification Payments**.  All indemnification payments pursuant to this <u>Agreement</u> shall be treated as adjustments to the Purchase Price (as defined in the PSA).

5.     **Counterparts**.  This Agreement may be executed and delivered (including by facsimile transmission) in counterparts, each of which shall be deemed an original instrument, but all such counterparts together shall constitute but one agreement.

6.     **Notice**.   All notices which are required or may be given pursuant to this Agreement shall be sufficient in all respects if given in accordance with the provisions, and at the addresses, set forth in the PSA, as such addresses may be changed from time to time in accordance with the provisions of the PSA.

7.     **Governing Law and Venue**.   THIS AGREEMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS OTHERWISE APPLICABLE TO SUCH DETERMINATIONS. JURISDICTION AND VENUE WITH RESPECT TO ANY DISPUTES ARISING HEREUNDER SHALL BE PROPER ONLY IN HARRIS COUNTY, TEXAS.

8.     **Captions**.  The captions in this Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Agreement.

9.     **Waivers**.  Any failure by any party or parties to comply with any of its or their obligations, agreements or conditions herein contained may be waived in writing, but not in any other manner, by the party or parties to whom such compliance is owed. No waiver of, or consent to a change in, any of the provisions of this Agreement shall be deemed or shall constitute a waiver of, or consent to a change in, other provisions hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

10.    **Assignment**.  No party to this Agreement shall assign all or any part of this Agreement, nor shall any party assign or delegate any of its rights or duties hereunder, without

the prior written consent of the other parties. Notwithstanding the preceding, however, either of the Indemnifying Party may, without the Indemnified Party's consent, assign its rights and duties hereunder to a successor to all or substantially all of such Indemnifying Party's business or assets and the Indemnified Party may assign all or part of its rights and duties hereunder to one or more purchasers or transferees of the Title Defect Property and to one or more lenders or credit providers to the Indemnified Party. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

11. **Amendment**. This Agreement may be amended or modified only by an agreement in writing executed by the parties hereto.

**No waiver of any right under this Agreement shall be binding unless executed in writing by the party to be bound thereby.**

12. **No Third-Party Beneficiaries**. Nothing in this Agreement shall entitle any Person (as defined in the PSA) other than the parties to this Agreement and any lender or credit provider to the Indemnified Party to any benefit, claims, remedy or right of any kind.

13. **Construction**. Each of the parties to this Agreement has had substantial input into the drafting and preparation of this Agreement and has had the opportunity to exercise business discretion in relation to the negotiation of the details of the transactions contemplated hereby. This Agreement is the result of arm's-length negotiations from equal bargaining positions. In the event of a dispute over the meaning or application of this Agreement, it shall be construed fairly and reasonably and neither more strongly for nor against any party.

14. **Severability**. If any term or other provisions of this Agreement is held invalid, illegal or incapable of being enforced under any rule of law, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in a materially adverse manner with respect to any party; provided, however, that if any such term or provision may be made enforceable by limitation thereof, then such term or provision shall be deemed to be so limited and shall be enforceable to the maximum extent permitted by applicable Law (as defined in the PSA).

IN WITNESS WHEREOF, this Agreement has been signed by each of the parties hereto on the date first above written.

**"INDEMNIFYING PARTY"**
**BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC**

By: _____
Name: _____
Title: _____

**"INDEMNIFIED PARTY"**
**SANDRIDGE ENERGY OFFSHORE LLC**

Execution Version

By: _____

Name: _____

Title: _____

**Exhibit D**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

**Form of Escrow Agreement**

**ESCROW AGREEMENT**

THIS ESCROW AGREEMENT (the "*Agreement*") is made and entered into as of March 13, 2014, by and among Black Elk Energy Offshore Operations, LLC, a limited liability company organized under the laws of Texas ("*BEEOO*"), SandRidge Energy Offshore, LLC, a limited liability company organized under the laws of Delaware ("*SandRidge*"), (each a "*Party*" and together the "*Parties*") and Bank of America, National Association, a national banking association duly organized and existing under the laws of the United States of America, having an office in Chicago, Illinois (the "*Escrow Agent*").

WHEREAS, the Parties have entered into that certain Purchase and Sale Agreement by and between Black Elk Energy Offshore Operations, LLC, as Seller, and SandRidge Energy Offshore, LLC, as Purchaser, for certain oil and gas properties located offshore in the Gulf of Mexico, dated as of March 13, 2014 (the "*PSA*");

WHEREAS, the Parties desire to provide for the escrow of certain funds to provide for the possible payment of up to $229,290 asserted due by Grand Isle Shipyards, Inc. ("*GIS*") for work performed on South Timbalier Block 53 and Eugene Island Block 118 once the amount due, if any, has been resolved (i) by the agreement of BEEOO and GIS or (ii) by a final decision of a court or arbitrator, as the case may be; and

WHEREAS, the Parties desire to provide for the escrow of certain funds to provide for the possible payment of up to $44,195 asserted due by Wood Group PSN, Inc. ("*Wood Group*") for work performed on South Timbalier Blocks 52 and 53 once the amount due, if any, has been resolved (i) by the agreement of BEEOO and Wood Group or (ii) by a final decision of a court or arbitrator, as the case may be.

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**ARTICLE I**
**ESTABLISHMENT OF ESCROW**

(a)     Subsequent to the execution of this Agreement, SandRidge will deposit $276,985 (the "*Initial Deposit*") with the Escrow Agent.  It is acknowledged that additional deposits may be made following the Initial Deposit.  The Initial Deposit as well as any additional deposits,

together with any investment earnings thereon, shall hereinafter collectively be referred to as the "*Escrow Fund*."

(b)      The Parties hereby appoint the Escrow Agent, and the Escrow Agent hereby agrees to serve, as the escrow agent and depositary subject to the terms and conditions set forth herein.   The Escrow Agent shall receive the Initial Deposit and any additional deposits and agrees to hold the Escrow Fund in a separate and distinct account (the "*Escrow Account*") which is hereby established and which will be held and disbursed by the Escrow Agent only in accordance with the express terms and conditions of this Agreement.

## ARTICLE II
## INVESTMENT OF ESCROW FUND

The Escrow Fund shall remain uninvested.   The Parties hereby acknowledge and agree that they will not have any claim or cause of action against the Escrow Agent for its failure to invest the Escrow Fund in an interest bearing or otherwise accreting account and they shall indemnify and hold the Escrow Agent harmless from any such claim (and any expenses incurred defending such claim) asserted, as applicable, by any of their respective shareholders, creditors, trustee(s) in bankruptcy or other persons not a party to this Agreement.

## ARTICLE III
## DISBURSEMENTS FROM THE ESCROW ACCOUNT

The Escrow Agent shall only disburse amounts held in the Escrow Account upon receipt of a written notice ("*Disbursement Request*") from the Parties two (2) Business Days prior to the requested disbursement date specifying (i) the amount to be disbursed, (ii) the date of disbursement, (iii) the recipient of the disbursement, and (iv) the manner of disbursement and delivery instructions.   A form of Disbursement Request is attached hereto as Annex I.   For the avoidance of doubt, if any Disbursement Request authorizes the disbursement of all of the then-remaining Escrow Funds, such Disbursement Request shall constitute a Termination Notice (as defined below) and shall be treated as such in accordance with the provisions of Article VI**.** Further, the Escrow Agent is authorized to obtain confirmation of such Disbursement Request by telephone call-back to the person or persons designated for verifying such requests on Exhibit B (such person verifying the request shall be different than the person initiating the request).   The Escrow Agent is authorized to disinvest the requisite amount of Escrow Funds one (1) Business Day prior to the requested disbursement date, or may do so earlier if the Escrow Agent determines in its sole good faith discretion that disinvesting more than one (1) Business Day prior to the disbursement date is necessary in order to assure the availability of funds on the requested disbursement date.

## ARTICLE IV
## COMPENSATION; EXPENSES

As compensation for its services to be rendered under this Agreement, for each year or any portion thereof, the Escrow Agent shall receive a fee in the amount specified in Exhibit A to this Agreement and shall be reimbursed upon request for all expenses, disbursements and

advances, including reasonable fees of outside counsel, if any, incurred or made by it in connection with the carrying out of its duties under this Agreement. BEEOO shall be invoiced for and shall pay such fees and expenses. The Escrow Agent is hereby authorized and directed to withdraw from the Escrow Funds any fees or expenses that have been invoiced to BEEOO but that have remained unpaid for sixty (60) days or more. Further, and in addition to the right given to it in the preceding sentence, the Escrow Agent is hereby authorized to withhold any disbursement it would otherwise make from the Escrow Account if at the time of such disbursement any fees or expenses invoiced to BEEOO remain unpaid. Amounts due for fees and expenses at the time this Agreement is executed shall be deemed to have been invoiced at such time and for purposes of this <u>Article IV</u> shall be deemed an invoice. It is understood that the foregoing provisions may affect the disbursement of funds to parties not responsible for the payment of fees and expenses.

**ARTICLE V**
**EXCULPATION AND INDEMNIFICATION**

5.1    (a) The obligations and duties of the Escrow Agent are confined to those specifically set forth in this Agreement which obligations and duties shall be deemed purely ministerial in nature. No additional obligations and duties of the Escrow Agent shall be inferred or implied from the terms of any other documents or agreements, notwithstanding references herein to other documents or agreements. In the event that any of the terms and provisions of any other agreement between any of the parties hereto conflict or are inconsistent with any of the terms and provisions of this Agreement, the terms and provisions of this Agreement shall govern and control the duties of the Escrow Agent in all respects. The Escrow Agent shall not be subject to, or be under any obligation to ascertain or construe the terms and conditions of any other instrument, or to interpret this Agreement in light of any other agreement whether or not now or hereafter deposited with or delivered to the Escrow Agent or referred to in this Agreement. The Escrow Agent shall not be obligated to inquire as to the form, execution, sufficiency, or validity of any such instrument nor to inquire as to the identity, authority, or rights of the person or persons executing or delivering same. The Escrow Agent shall have no duty to know or inquire as to the performance or nonperformance of any provision of any other agreement, instrument, or document. The Parties shall provide the Escrow Agent with a list of authorized representatives, initially authorized hereunder as set forth on <u>Exhibit B</u>; as such <u>Exhibit B</u> may be amended or supplemented from time to time by delivery of a revised and re-executed <u>Exhibit B</u> to the Escrow Agent. Notwithstanding the foregoing sentence, the Escrow Agent is authorized to comply with and rely upon any notices, instructions or other communications believed by it to have been sent or given by the Parties or by a person or persons authorized by the Parties. The Escrow Agent specifically allows for receiving direction by written or electronic transmission from an authorized representative with the following caveat, the Parties agree to indemnify and hold harmless the Escrow Agent against any and all claims, losses, damages, liabilities, judgments, costs and expenses (including reasonable attorneys' fees) (collectively, "*Losses*") incurred or sustained by the Escrow Agent as a result of or in connection with the Escrow Agent's reliance upon and compliance with instructions or directions given by written or electronic transmission, provided, however, that such Losses have not arisen from the gross negligence or willful misconduct of the Escrow Agent, it being understood that forbearance on the part of the Escrow

Agent to verify or confirm that the person giving the instructions or directions, is, in fact, an authorized person shall not be deemed to constitute gross negligence or willful misconduct.

(b)      In the event funds transfer instructions are given to the Escrow Agent pursuant to the terms of this Agreement (other than with respect to fund transfers to be made contemporaneously with the execution of this agreement), regardless of the method used to transmit such instructions, such instructions must be given by an individual designated on Exhibit B.  Further, the Escrow Agent is authorized to obtain and rely upon confirmation of such instructions by telephone call-back to the person or persons designated for verifying such instructions on Exhibit B (such person verifying the instruction may be different than the person initiating the instruction).  The Escrow Agent may require any party hereto which is entitled to direct the delivery of fund transfers to designate a phone number or numbers for purposes of confirming the requested transfer.  The Parties agree that the Escrow Agent may delay the initiation of any fund transfer until all security measures it deems to be necessary and appropriate have been completed and shall incur no liability for such delay.

5.2      The Escrow Account shall be maintained in accordance with applicable laws, rules and regulations and policies and procedures of general applicability to escrow accounts established by the Escrow Agent.  The Escrow Agent shall not be liable for any act that it may do or omit to do hereunder in good faith and in the exercise of its own best judgment or for any damages not directly resulting from its gross negligence or willful misconduct.  Without limiting the generality of the foregoing sentence, it is hereby agreed that in no event will the Escrow Agent be liable for any lost profits or other indirect, special, incidental or consequential damages which the parties may incur or experience by reason of having entered into or relied on this Agreement or arising out of or in connection with the Escrow Agent's duties hereunder, notwithstanding that the Escrow Agent was advised or otherwise made aware of the possibility of such damages.  The Escrow Agent shall not be liable for acts of God, acts of war, breakdowns or malfunctions of machines or computers, interruptions or malfunctions of communications or power supplies, labor difficulties, actions of public authorities, or any other similar cause or catastrophe beyond the Escrow Agent's reasonable control.  Any act done or omitted to be done by the Escrow Agent pursuant to the advice of its attorneys shall be conclusively presumed to have been performed or omitted in good faith by the Escrow Agent.

5.3      In the event the Escrow Agent is notified of any dispute, disagreement or legal action relating to or arising in connection with the escrow, the Escrow Fund, or the performance of the Escrow Agent's duties under this Agreement, the Escrow Agent will not be required to determine the controversy or to take any action regarding it.  The Escrow Agent may hold all documents and funds and may wait for settlement of any such controversy by final appropriate legal proceedings, arbitration, or other means as, in the Escrow Agent's discretion, it may require.  Furthermore, if confronted with conflicting demands such that it determines in good faith that it risks incurring expense or liability regardless of any action it may take or refrain from taking, the Escrow Agent may, at its option, file an action of interpleader requiring the parties to answer and litigate any claims and rights among themselves.  The Escrow Agent is authorized, at its option, to deposit with the court in which such action is filed, all documents and funds held in escrow, except all costs, expenses, charges, and reasonable attorneys' fees incurred by the Escrow Agent due to the interpleader action and which the Parties agree on a joint and several basis to pay.

Upon initiating such action, the Escrow Agent shall be fully released and discharged of and from all subsequent obligations and liability otherwise imposed by the terms of this Agreement.

5.4    The Parties hereby agree on a joint and several basis to indemnify and hold the Escrow Agent, and its directors, officers, employees, and agents, harmless from and against all costs, damages, judgments, attorneys' fees (whether such attorneys shall be regularly retained or specifically employed), expenses, obligations and liabilities of every kind and nature which the Escrow Agent, and its directors, officers, employees, and agents, may incur, sustain, or be required to pay in connection with or arising out of this Agreement, unless the aforementioned results from the Escrow Agent's gross negligence or willful misconduct, and to pay the Escrow Agent on demand the amount of all such costs, damages, judgments, attorneys' fees, expenses, obligations, and liabilities.  Without limitation, the foregoing indemnities shall extend to any breach of the representations, warranties or covenants in <u>Section 9.4</u> of this Agreement.  The costs and expenses of enforcing this right of indemnification also shall be paid by the Party against whom enforcement is sought.  The foregoing indemnities in this paragraph shall survive the resignation or substitution of the Escrow Agent and the termination of this Agreement. Notwithstanding the foregoing, as between each other the Parties agree to make contribution payments to each other such that the indemnification and reimbursement obligations to Escrow Agent as set forth in this Section 5.4 are discharged on a 50%/50% basis.

**ARTICLE VI**
**<u>TERMINATION OF AGREEMENT</u>**

This Agreement shall terminate:

(a)    on the termination date set forth in a properly executed and delivered Termination Notice (as defined below).  The Parties may, at any time, terminate this Agreement by delivering to the Escrow Agent written notice (the "*Termination Notice*") signed by the Parties setting forth (i) the requested termination date and (ii) instructions for the return or delivery of the parties' then-escrowed property.  The Termination Notice shall be received by the Escrow Agent not fewer than two (2) Business Days prior to the requested termination date.  If the Termination Notice does not set forth instructions for the return or delivery of the then-escrowed property, the Escrow Agent shall presume that such property is to be returned to the Party from which it was received and the Escrow Agent shall incur no liability for so presuming.  A form of Termination Notice is attached hereto as <u>Exhibit C</u>.

(b)    Should the Parties terminate the Agreement pursuant to this <u>Article VI</u>, it is understood and agreed by each of them that the Escrow Agent shall be entitled (i) to keep any monies paid to it in respect of fees or expenses previously due and owing and (ii) to offset from the amount of Escrow Funds on deposit as of the date of the Termination Notice, any amounts due from BEEOO for fees and expenses that, as of such date, have been previously invoiced and remain unpaid or which are then due and payable on a *pro rata* basis.  The Escrow Agent is authorized to disinvest the remaining Escrow Funds one (1) Business Day prior to the requested date of termination set forth in the Termination Notice, or may do so earlier if the Escrow Agent determines in its sole good faith discretion that disinvesting more than one (1) Business Day prior to the requested date is necessary in order to assure the availability of funds on the

requested termination date. Notwithstanding any other provision hereof, this Agreement shall not terminate before all amounts in the Escrow Account (including interest which has accrued but cannot be distributed prior to being posted) shall have been distributed by the Escrow Agent in accordance with the terms of this Agreement.

**ARTICLE VII**
**RESIGNATION OF ESCROW AGENT**

The Escrow Agent may resign at any time upon giving at least thirty (30) days prior written notice to the Parties; underlined provided that no such resignation shall become effective until the appointment of a successor escrow agent which shall be accomplished as follows: The Parties shall use their best efforts to select a successor escrow agent within thirty (30) days after receiving such notice. If the Parties fail to appoint a successor escrow agent within such time, the Escrow Agent shall have the right at the expense of the Parties to petition any court of general jurisdiction sitting in Cook County, Illinois for the appointment of a successor escrow agent. The successor escrow agent shall execute and deliver an instrument accepting such appointment and it shall, without further acts, be vested with all the estates, properties, rights, powers, and duties of the predecessor escrow agent as if originally named as escrow agent. Upon delivery of such instrument, the Escrow Agent shall be discharged from any further duties and liability under this Agreement. The Escrow Agent shall be paid any outstanding fees and expenses prior to transferring assets to a successor escrow agent.

**ARTICLE VIII**
**NOTICES**

All notices required by this Agreement shall be in writing and shall be deemed to have been received (a) immediately if sent by facsimile transmission (with a confirming copy sent the same Business Day by registered or certified mail), or by hand delivery (with signed return receipt), (b) the next Business Day if sent by nationally recognized overnight courier or (c) the second following Business Day if sent by registered or certified mail, in any case to the respective addresses as follows:

**Notices and other communications including Disbursement Requests hereunder may be delivered or furnished by electronic mail provided that any Disbursement Request or other formal notice be attached to an email message in PDF format and provided further that any notice or other communication sent to an e-mail address shall be deemed received upon and only upon the sender's receipt of affirmative acknowledgement or receipt from the intended recipient. For purposes hereof no acknowledgement of receipt generated on an automated basis shall be deemed sufficient for any purpose hereunder or admissible as evidence of receipt.**

If to BEEOO:

Black Elk Energy Offshore Operations, LLC
11451 Katy Freeway, Suite 500
Houston, Texas 77079
Attention: J. D. "Joe" Matthews
Telephone: 281-598-8628
Telecopy: 281-598-8601
Email: jmatthews@black elkenergy.com

With a copy to:

Black Elk Energy Offshore Operations, LLC
11451 Katy Freeway, Suite 500
Houston, Texas 77079
Attention: Marizza Piche
Telephone: 281-598-8613
Telecopy: 281-598-8601
Email: mpiche@blackelkenergy.com

If to SandRidge:

SandRidge Energy Offshore, LLC
*2000 West Sam Houston Parkway South*
*Suite 1200*
Houston, Texas 77042
Attention: Mr. John Smith
Telephone: 713-969-1000
Telecopy: 713-969-1099
Email: jsmith@fwellc.com

With a copy to:
SandRidge Energy Offshore, LLC
*2000 West Sam Houston Parkway South*
*Suite 1200*
Houston, Texas 77042
Attention: Richard D. Black
Telephone: 713-969-1000
Telecopy: 713-969-1099
Email: rblack@fwellc.com

If to the Escrow Agent:

Bank of America, National Association
Global Custody and Agency Services
135 S. LaSalle Street
IL4-135-05-07
Chicago, Illinois  60603
Attention: Marili Saporito
Telephone:  (312) 992-2306
Fax:  (312) 992-9833
Email: marili.saporito@baml.com]

# ARTICLE IX
## TAX REPORTING

9.1     The Escrow Agent shall, for each calendar year (or portion thereof) that the Escrow Account is in existence, report the income of the Escrow as required by law.  The Parties agree that they will not take any position in connection with the preparation, filing or audit of any tax return that is in any way inconsistent with the foregoing determination or the information returns or reports provided by the Escrow Agent.

9.2     The Parties understand and agree that they are required to provide the Escrow Agent with a properly completed and signed Tax Certification (as defined below) and that the Escrow Agent may not perform its duties hereunder without having been provided with such Tax Certification.  Accordingly, the Parties understand and agree that unless and until all Parties have provided Tax Certifications to the Escrow Agent, the Escrow Account shall not be invested as otherwise provided herein nor shall disbursements be made from the Escrow Account as otherwise provided at Article III. In the case of a person that is a "United States person" within the meaning of Section 7701(a)(30) of the Internal Revenue Code of 1986, as amended (the "*Code*"), an original IRS Form W-9 (or applicable successor form) will be provided.  In the case of a person that is not a "United States person" within the meaning of Section 7701(a)(30) of the Code (hereinafter a "*foreign person*"), an original applicable IRS Form W-8ECI, W-8IMY, W-8EXP or W-8BEN (or applicable successor form), along with any required attachments, will be provided to the Escrow Agent.  As used herein "*Tax Certification*" shall mean an IRS form W-9 or W-8 as described above.  Under current law, the applicable IRS Form W-8ECI, W-8IMY, W-8EXP or W-8BEN generally will expire every three (3) years and must be replaced with another properly completed and signed original sent to the Escrow Agent.  A new original IRS Form W-8, indicating the relevant Escrow Account number, (or such other information or forms as required by law) must be delivered by each foreign person to, and received by, the Escrow Agent either prior to December 31st of the calendar year inclusive of the third (3rd) anniversary date of the date listed on the previously submitted form or as otherwise required by law.

9.3     The Escrow Agent will comply with any U.S. tax withholding or backup withholding and reporting requirements that are required by law.  With respect to earnings allocable to a foreign person, the Escrow Agent will withhold U.S. tax as required by law and report such earnings and

taxes withheld, if any, for the benefit of such foreign person on IRS Form 1042-S (or any other required form), unless such earnings and withheld taxes are exempt from reporting under Treasury Regulation Section 1.1461-1(c)(2)(ii) or under other applicable law. With respect to earnings allocable to a United States person, the Escrow Agent will report such income, if required, on IRS Form 1099 or any other form required by law. The IRS Forms 1099 and/or 1042-S shall show the Escrow Agent as payor and BEEOO as payee.

9.4     The Parties hereby (i) represent and warrant each for themselves that, as of the date this Agreement is made and entered into, the Escrow Account is not a Qualified Settlement Fund, Designated Settlement Fund, or Disputed Ownership Fund within the meaning of Section 468B of the Code (and the regulations thereunder) and (ii) covenant that they shall not take, fail to take or permit to occur any action or inaction, on or after the date this Agreement is made and entered into, that causes the Escrow Account to become such a Qualified Settlement Fund, Designated Settlement Fund, or Disputed Ownership Fund at any time.

9.5     The Parties to this Agreement agree that they are not relieved of their respective obligations, if any, to prepare and file information reports under Section 6041 of the Code, and the Treasury regulations thereunder, with respect to amounts of imputed interest income, as determined pursuant to Sections 483 or 1272 of the Code. The Escrow Agent shall not be responsible for determining or reporting such imputed interest.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1     Each party represents and warrants that such party has all necessary power and authority to execute and deliver this Agreement and to perform all of such party's obligations hereunder. This Agreement constitutes the legal, valid, and binding obligation of each party hereto, enforceable against such party in accordance with its respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such enforceability shall be considered in a proceeding in equity or at law.

10.2     This Agreement shall be governed by and construed in accordance with the laws of the State of Texas and the parties hereto consent to jurisdiction in the State of Texas and venue in any state or Federal court located in the City of Houston, Texas.

10.3     Any bank or corporation into which the Escrow Agent may be merged or with which it may be consolidated, or any bank or corporation to whom the Escrow Agent may transfer a substantial amount of its escrow business, shall be the successor to the Escrow Agent without the execution or filing of any paper or any further act on the part of any of the parties, anything herein to the contrary notwithstanding.

10.4     This Agreement may be amended, modified, and/or supplemented only by an instrument in writing executed by all parties hereto.

10.5     This Agreement may be executed by the parties hereto individually or in one or more counterparts, each of which shall be an original and all of which shall together constitute one

and the same agreement. This Agreement, signed and transmitted by facsimile machine or pdf file, is to be treated as an original document and the signature of any party hereon, if so transmitted, is to be considered as an original signature, and the document so transmitted is to be considered to have the same binding effect as a manually executed original.

10.6 The headings used in this Agreement are for convenience only and shall not constitute a part of this Agreement. Any references in this Agreement to any other agreement, instrument, or document are for the convenience of the parties and shall not constitute a part of this Agreement.

10.7 As used in this Agreement, "*Business Day*" means a day other than a Saturday, Sunday, or other day when banking institutions in Chicago, Illinois are authorized or required by law or executive order to be closed.

10.8 This Agreement constitutes a contract solely among the parties by which it has been executed and is enforceable solely by the parties by which it has been executed and no other persons. It is the intention of the parties hereto that this Agreement may not be enforced on a third party beneficiary or any similar basis.

10.9 The parties agree that if any provision of this Agreement shall under any circumstances be deemed invalid or inoperative this Agreement shall be construed with the invalid or inoperative provisions deleted and the rights and obligations of the parties shall be construed and enforced accordingly.

10.10 No Party hereto shall assign its rights hereunder until its assignee has submitted to the Escrow Agent (i) Patriot Act disclosure materials and the Escrow Agent has determined that on the basis of such materials it may accept such assignee as a customer and (ii) assignee has delivered an IRS Form W-8 or W-9, as appropriate, to the Escrow Agent which the Escrow Agent has determined to have been properly signed and completed. In addition, the foregoing rights to assign shall be subject, in the case of any party having an obligation to indemnify the Escrow Agent, to the Escrow Agent's approval based upon the financial ability of assignee to indemnify it being reasonably comparable to the financial ability of assignor, which approval shall not be unreasonably withheld.

10.11 Any claim against the Escrow Agent arising out of or relating to this Agreement shall be settled by arbitration in accordance with commercial rules of the American Arbitration Association. Arbitration proceedings conducted pursuant to this <u>Article X</u> shall be held in Chicago, Illinois.

10.12 Escrow Agent will treat information related to this Agreement as confidential but, unless prohibited by law, the Parties authorize the transfer or disclosure of any information relating to the Agreement to and between the subsidiaries, officers, affiliates and other representatives and advisors of Escrow Agent and third parties selected by any of them, wherever situated, for confidential use in the ordinary course of business, and further acknowledge that Escrow Agent and any such subsidiary, officer, Affiliate or third party may transfer or disclose any such information as required by any law, court, regulator or legal process.

The Parties will treat the terms of this Agreement, including any Fee Schedule, as confidential except on a "need to know" basis to persons within or outside such Party's organization (including affiliates of such Party), such as attorneys, accountants, bankers, financial advisors, auditors and other consultants of such party and its affiliates, except as required by any law, court, regulator or legal process and except pursuant to the express prior written consent of the other parties, which consent shall not be unreasonably withheld;

[*signatures appear on the following page*]

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Escrow Agreement as of the day and year first above written.

Black Elk Energy Offshore Operations, LLC

By:_____

Name:_____

Title:_____

SandRidge Energy Offshore, LLC

By:_____

Name:  Howard M. Tate

Title:  Vice President

Escrow Agent:

BANK    OF    AMERICA,    NATIONAL ASSOCIATION

By:_____

Name:_____

Title:_____

Execution Version

# EXHIBIT A

## ESCROW AGENT FEE SCHEDULE

| | |
|---|---|
| Non-Interest Bearing Escrow Deposit Set-Up Fee: | $ 500.00 |
| Tax Reporting Set-up Fee: | Not Applicable |
| Annual Administration Fee: | $ 3,000.00 |
| Wire or Check Disbursement Fee | $ 20.00 per |
| Outside Counsel Pre-Closing: | Not Applicable |

**THE SET-UP FEES AND FIRST YEAR'S ANNUAL ADMINISTRATION FEES ARE DUE UPON EXECUTION OF THE ESCROW AGREEMENT.**

\* After the initial twelve (12) month period, the Annual Administration will be invoiced in advance on a six-month basis. Wire and check disbursement fees will be invoiced on a quarterly basis.

All out-of-pocket expenses will be billed at the Escrow Agent's cost. Out-of-pocket expenses include, but are not limited to, professional services (e.g. legal or accounting), travel expenses, telephone and facsimile transmission costs, postage (including express mail and overnight delivery charges), and copying charges.

[AN "EXHIBIT B" MUST BE COMPLETED AND EXECUTED FOR EACH PARTY TO THE AGREEMENT]

# EXHIBIT B

## Escrow Agreement Dated as of March 13, 2014 by and among Black Elk Energy Offshore Operations, LLC, SandRidgeEnergy Offshore, LLC, and Bank of America, National Association

### Certificate of Authorized Representatives – Black Elk Energy Offshore Operations, LLC

| | |
|---|---|
| **Name:** Joe Matthews | **Name:** Jeffrey M. Shulse |
| **Title:** Vice President – Land | **Title:** CFO |
| **Phone:** (281) 598-8628 | **Phone:** 281-598-8615 |
| **Facsimile:** (281) 598-8601 | **Facsimile:** 281-598-8601 |
| **E-mail:** jmatthews@blackelkenergy.com | **E-mail:** jeffs@blackelkenergy.com |
| **Signature:** | **Signature:** |

Fund Transfer / Disbursement Authority Level:

☐  X  Initiate
☐  X  Verify transactions initiated by others  ☐

Fund Transfer / Disbursement Authority Level:

☐  X  Initiate
   X  Verify transactions initiated by others

| | |
|---|---|
| **Name:** | **Name:** |
| **Title:** | **Title:** |
| **Phone:** | **Phone:** |
| **Facsimile:** | **Facsimile:** |
| **E-mail:** | **E-mail:** |
| **Signature:** | **Signature:** |

Fund Transfer / Disbursement Authority Level:

☐  Initiate
☐  Verify transactions initiated by others

Fund Transfer / Disbursement Authority Level:

☐  Initiate
   ☐  Verify transactions initiated by others

The Escrow Agent is authorized to comply with and rely upon any notices, instructions or other communications believed by it to have been sent or given by the person or persons identified above including without limitation, to initiate and verify funds transfers as indicated.

Black Elk Energy Offshore Operations, LLC:

By: _____
Name: Joe Matthews
Title: Vice President - Land
Date: March 13, 2014

Execution Version

[AN "EXHIBIT B" MUST BE COMPLETED AND EXECUTED FOR EACH PARTY TO THE AGREEMENT]

## EXHIBIT B
### Escrow Agreement Dated as of March 13, 2014 by and among Black Elk Energy Offshore Operations, LLC, SandRidge Energy Offshore, LLC, and Bank of America, National Association
#### Certificate of Authorized Representatives – SandRidge Energy Offshore, LLC

**Name:** Don Nguyen

**Title:** Chief Accounting Officer

**Phone:** (713) 969-1137

**Facsimile:** (713) 969-1099

**E-mail:** Don.Nguyen@Fwellc.com

**Signature:** _____

Fund Transfer / Disbursement Authority Level:
- ☐  X Initiate
- ☐  X Verify transactions initiated by others  ☐

**Name:** Howard M. Tate

**Title:** Vice President

**Phone:** (713) 969-1017

**Facsimile:** (713) 969-1099

**E-mail:** htate@fwellc.com

**Signature:** _____

Fund Transfer / Disbursement Authority Level:
- ☐  X Initiate
- X Verify transactions initiated by others

**Name:** _____

**Title:** _____

**Phone:** _____

**Facsimile:** _____

**E-mail:** _____

**Signature:** _____

Fund Transfer / Disbursement Authority Level:
- ☐  Initiate
- ☐  Verify transactions initiated by others

**Name:** _____

**Title:** _____

**Phone:** _____

**Facsimile:** _____

**E-mail:** _____

**Signature:** _____

Fund Transfer / Disbursement Authority Level:
- ☐  Initiate
- ☐  Verify transactions initiated by others

The Escrow Agent is authorized to comply with and rely upon any notices, instructions or other communications believed by it to have been sent or given by the person or persons identified above including without limitation, to initiate and verify funds transfers as indicated.

SandRidge Energy Offshore, LLC:

By: _____
Name: Howard M. Tate
Title: Vice President
Date: March 13, 2014

Execution Version

**EXHIBIT C**
**FORM OF TERMINATION NOTICE**
[*Date*]

Bank of America, National Association
Global Custody and Agency Services
135 South LaSalle Street
IL4-135-05-07
Chicago, Illinois  60603
Attention:  [•]
Fax:  (312) 992-9833

**NOTICE OF TERMINATION**

Ladies and Gentlemen:

We refer you to that certain Escrow Agreement (the "*Agreement*"), dated as of [•], among Black Elk Energy Offshore Operations, LLC, SandRidge Energy Offshore, LLC, and Bank of America, National Association, a photocopy of which is attached hereto.  Capitalized terms used but not defined in this letter shall have the meanings given them in the Agreement.

We hereby notify you, in accordance with the terms and provisions of <u>Article VI(a)</u> of the Agreement, that we are terminating the Agreement.  Accordingly, we request that you terminate the Agreement as of [•][1].  Those undertakings that, under the provisions of the Agreement, shall survive termination of the Agreement shall continue as provided therein.  All Escrow Funds or items of property thereafter on deposit or held in the Escrow Account or by the Escrow Agent pursuant to the Agreement shall, concurrently with the termination of the Agreement, be delivered by, as applicable, federal wire transfer or nationally recognized overnight courier service as follows:

[*Describe escrowed property or funds amount to be delivered*]:

To [*Designate Party*], at:  [*insert fed wire instructions or physical address for overnight courier delivery*].

Very truly yours,

Black Elk Energy              SandRidge Energy Offshore, LLC
Offshore Operations, LLC

By:                           By:
Name:_____         Name:_____
Title:_____        Title:_____

---

[1] Date should be not fewer than 2 Business Days after the date of this Notice.

Execution Version

# ANNEX I
# FORM OF DISBURSEMENT REQUEST

[*Date*]

Bank of America, National Association
Global Custody and Agency Services
135 South LaSalle Street
IL4-135-05-07
Chicago, Illinois  60603
Attention:  [•]
Fax:  (312) 992-9833

## DISBURSEMENT REQUEST

Ladies and Gentlemen:

    We refer you to that certain Escrow Agreement (the "*Agreement*"), dated as of [•], among [*Designate Parties*] and Bank of America, National Association, as Escrow Agent.  Capitalized terms used but not defined in this letter shall have the meanings given them in the Agreement.

    Pursuant to the provisions of the Agreement, you are hereby directed to disburse funds held in the Escrow Account as follows:

    *(i) [the amount to be disbursed],*

    *(ii) [the date of disbursement],*

    *(iii) [the recipient of the disbursement, and]*

    *(iv) [the manner of disbursement and delivery instructions (including wiring instructions if applicable.]*

Very truly yours,

Black Elk Energy               SandRidge Energy Offshore, LLC
Offshore Operations, LLC

By:                             By:
Name:_____ Name:_____
Title:_____ Title:_____

Execution Version

**Schedule 1.2(k)**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Geological Data</u>

**None.**

Execution Version

## Schedule 1.3(h)

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 By and between Black Elk Energy Offshore Operations, LLC, as
Seller and SandRidge Energy Offshore, LLC, as Purchaser

_____

### SELLER'S EXCLUDED CONTRACTS

1.  Asset Sale Agreement from Stone Energy Corporation to Black Elk Energy Offshore Operations, LLC dated December 21, 2007, but effective October 1, 2007, as amended.

2.  Purchase and Sale Agreement by and between W&T Offshore, Inc. and Black Elk Energy Offshore Operations, LLC executed September 14, 2009 with an effective date of August 1, 2009, as amended.

3.  Purchase and Sale Agreement between Nippon Oil Exploration U.S.A., Limited and Black Elk Energy Offshore Operations, LLC executed August 5, 2010 with an effective time of January 1, 2010, as amended.

4.  Purchase and Sale Agreement by and among Merit Management Partners I, L.P., Merit Management Partners II, L.P., Merit Management Partners III, L.P., Merit Energy Partners III, L.P., MEP III GOM, LLC, Merit Energy Partners D-III, L.P., Merit Energy Partners E-III, L.P., and Merit Energy Partners F-III, L.P. and Black Elk Energy Offshore Operations, LLC executed March 17, 2011 with an effective time of January 1, 2011, as amended.

5.  Non-Operated Escrow Agreement with Capital One, N.A. by and between W&T Offshore, Inc. and Black Elk Energy Offshore Operations, LLC dated October 29, 2009, as amended.

6.  Escrow Agreement executed by and between Capital One, N.A., Black Elk Energy Offshore Operations, LLC and Merit Management Partners I, L.P., et al., dated May 31, 2011.

**Schedule 2.2**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

**Allocated Values**

| Area/Block | Lease No. | Allocated Dollar Value |
|---|---|---|
| EUGENE ISLAND  53 | OCS- 00479 | -$3,714,083 |
| EUGENE ISLAND 107 | OCS-G 15241 | $0 |
| EUGENE ISLAND 108 | OCS-G03811 | $371,200 |
| EUGENE ISLAND 118 | OCS-G15242 | $261,102 |
| EUGENE ISLAND 175 | OCS- 00438 | $1,097,220 |
| GALVESTON 210 | OCS-G 25524 | -$1,808,439 |
| GRAND ISLE 110 | OCS-G 13943 | $16,046,100 |
| GRAND ISLE 116 | OCS-G 13944 | $31,864,800 |
| HIGH ISLAND A-365 | OCS-G 02750 | $1,203,671 |
| HIGH ISLAND A-376 | OCS-G 02754 | $3,665,777 |
| HIGH ISLAND A-382 | OCS-G 02757 | $467,000 |
| HIGH ISLAND A-573 | OCS-G 02393 | $1,029,000 |
| HIGH ISLAND A-595 | OCS-G 02721 | $1,333,000 |
| HIGH ISLAND A-596 | OCS-G 02722 | $1,510,000 |
| MISSISSIPPI CANYON 110 | OCS-G 18192 | $1,402,339 |
| NORTH PADRE ISLAND 883 | M-96146 | -$760,356 |
| NORTH PADRE ISLAND 883 | M-96147 | $0 |
| NORTH PADRE ISLAND 883 | M-100410 | $0 |
| NORTH PADRE ISLAND 883 | M-100411 | $0 |
| NORTH PADRE ISLAND 883 | M-101898 | $0 |
| SOUTH MARSH ISLAND 280 | OCS-G 14456 | $1,164,497 |
| SOUTH MARSH ISLAND 281 | OCS-G 02600 | -$4,003,831 |
| SOUTH TIMBALIER 53 | OCS-G 04000 | -$4,637,440 |
| VERMILION 78 | OCS-G 04421 | $8,392,369 |
| VIOSCA KNOLL 779 | OCS-G13673 | -$14,917 |
| VIOSCA KNOLL 780 | OCS-G 06884 | - $14,917 |
| VIOSCA KNOLL 824 | OCS-G 15436 | -$14,917 |
| WEST CAMERON 34 | OCS-G0325 | -$500,000 |
| WEST CAMERON 35 | OCS-G01860 | $563,376 |
| WEST CAMERON  65 | OCS-G 02825 | -$500,000 |
| WEST CAMERON  66 | OCS-G 02826 | -$5,450,463 |
| WEST CAMERON 67 | OCS-G03256 | -$500,000 |
| WEST DELTA 121 | OCS-G 19843 | $1,614,742 |
| WEST DELTA 122 | OCS-G 13645 | -$66,830 |

Execution Version

**Schedule 3.3(n)**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## **Permitted Encumbrances**

**None.**

**Schedule 5.7**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Litigation</u>

AAA File No. 70-158-Y-00594-13, Black Elk Energy v Grand Isle Shipyards: 2013-9-6 Black Elk's initial demand for arbitration against GIS. Black Elk seeks recovery of the property damages and commercial losses following the explosion caused by GIS on the West Delta 32 platform. Following the filing of the arbitration, the parties attended mediation. The parties have not followed the arbitration procedure in the MSA, but instead have been following the AAA procedures for selection of an arbitrator / arbitration panel. The parties have selected 10 potential arbitrators who made their initial disclosures. Two arbitrators recused themselves based upon actual or perceived conflicts with the parties. The parties are due to provide their rankings of the remaining arbitrators on December 26. Based upon these rankings an arbitration panel will be selected. This panel will decide whether GIS separately filed arbitration demand seeking to recover damages for its unpaid invoices should be consolidated with this arbitration. Additionally, Black Elk plans to amend its arbitration demand prior to the seating of an arbitration panel, as allowed by the AAA rules. The amended arbitration demand has been sent to Black Elk and is undergoing review and approval.

AAA File No. 70-158-Y-00626-13, Grand Isle Shipyards v Black Elk Energy: 2013-9-23 GIS filed a separate demand for arbitration against Black Elk, that Black Elk answered on 2013-10-11. Following GIS' refusal to pay for or compensate Black Elk for the damages to the West Delta 32 platform, Black Elk withheld payment to GIS on all work regardless of location. Black Elk has attempted to consolidate this arbitration demand with its own arbitration demand, arguing that the amounts should be set off from one another. GIS has adamantly opposed the consolidation of the two proceedings. Like the platform damage arbitration, the parties have not followed the arbitration procedure in the MSA, but instead have been following the AAA procedures for selection of an arbitrator / arbitration panel. The parties have selected 10 potential arbitrators who made their initial disclosures. One arbitrator recused himself based upon actual or perceived conflicts with the parties. The parties are due to provide their rankings of the remaining arbitrators on December 26. Based upon these rankings an arbitration panel will be selected. Black Elk plans to amend its answer and counterclaim prior to the seating of an arbitration panel, as allowed by the AAA rules. The amended answer and counterclaim has been sent to Black Elk and is undergoing review and approval.

AAA File No. 70-158-Y-00594-13 Black Elk Energy v Compass Engineering (currently the same file number as the Black Elk v GIS platform damage case): 2013-11-15 On the one year Louisiana statute of limitations for the accident, Black Elk filed an arbitration claim against Compass Engineering for its role in causing the damages to the platform and Black Elk's subsequent commercial losses. Compass has advised that the MSA with Black Elk was not signed until December 5, 2013, after the explosion and that the MSA does not retroactively apply to the date of the incident, despite its wording. Compass is due to answer the demand for arbitration in January. We expect Compass to object to the jurisdiction of the AAA based upon

the lack of an effective arbitration agreement at the time of the incident and damages, and to claim that any case against it must proceed in court. If the case remains before the AAA, we plan to attempt to consolidate it with the proceedings involving GIS. The selection process for an arbitration panel has not started.

Edna Tajonera, et al v. Black Elk Energy Offshore Operations, LLC, Shamrock Management, Grand Isle Shipyards, Inc., Compass Engineering and Consultants, LLC, Wood Group PSN, Inc., and Enviro-Tech Systems, LLC, Civil Action No. 2-13-CV-00366 c/w 13-0550 in the United States District Court for the Eastern District of Louisiana.

Jordan Major v. Grand Isle Shipyard, Inc., Gray Insurance Company, Black Elk Energy Offshore Operations, LLC, Berkley Insurance, Wood Group PSN, Inc., Compass Engineering and Consutants, LLC, DNR Offshore & Crewing Services, Inc., Case 2:13-CV-06099-SSV-KWR in the United States District Court for the Eastern District of Louisiana.

Antonio Tamayo, et al v. Black Elk Energy, LLC, Black Elk Energy Offshore Operations, LLC, Wood Group, USA, Inc., Enviro-Tech Systems, LLC, and Compass Engineering and Consultants, LLC, Case 2:13-CV-05508-NJB-ALC in the United States District Court for the Eastern District of Louisiana.

Michael Jude Voclain v. Black Elk Energy, LLC, Black Elk Energy Offshore Operations, Wood Group USA, Inc., Wood Group PSN, Inc., formerly known as Wood Group Production Services, Inc., Grand Isle Shipyard, Inc., and Compass Engineering and Consultants, L.L.C., Case 3:13-CV-00226 in the United States District Court for the Southern District of Texas, Galveston Division.

Mary Jean Corporal, et al v. Black Elk Energy Offshore Operations, LLC, Shamrock Management, Grand Isle Shipyards, Inc., Compass Engineering and Consultants, LLC, Wood Group PSN, Inc., and Enviro-Tech Systems, LLC, Case 2:13-CV-00550 in the United States District Court for the Eastern District of Louisiana.

Grand Isle Shipyards, Inc. v. Black Elk Energy, LLC., Enviro Tech Systems, LLC, Wood Group USA, Inc., Compass Engineering and Consultants, LLC, Case 2:13-CV-02496 in the United States District Court for the Eastern District of Louisiana.

Renato Dominguez v. Black Elk Energy, LLC, Black Elk Management, LLC, Black Elk Oil & Gas, LLC, Black Elk Energy Offshore Operations, LLC, Wood Group PSN, Inc., Wood Group USA, Inc., Compass Engineering & Consultants, LLC, Compass Engineering & Consultants of Texas, LLC; Shamrock Management d/b/a Shamrock Energy Solutions, and Enviro-Tech Systems, LLC, Case 3:13-CV-00420 in the United States District Court for the Southern District of Texas, Galveston Division.

Renato Dominguez v. Black Elk Energy, LLC, Black Elk Management, LLC, Black Elk Oil & Gas, LLC, Black Elk Energy Offshore Operations, LLC, Wood Group PSN, Inc., Wood Group USA, Inc., Compass Engineering & Consultants, LLC, Compass Engineering & Consultants of Texas, LLC; Shamrock Management d/b/a Shamrock Energy Solutions, and Enviro-Tech Systems, LLC, Cause No. CV70916 in the County Court at Law No. 2 of Galveston County, Texas (County Clerk, Galveston County).

Wood Group PSN, Inc.'s Cross-Claim (against Edna Tajonera, et al), Case 2:13-CV-00366-NJB-ALC in the United States District Court for the Eastern District of Louisiana.

Wood Group PSN, Inc.'s Cross-Claim (against Mary Jean Corporal, et al), Case 2:13-CV-00366-NJB-ALC in the United States District Court for the Eastern District of Louisiana.

Wood Group USA, Inc.'s Cross-Claim, Case 2:13-CV-02496-NJB-ALC in the United States District Court for the Eastern District of Louisiana.

Jovito L. Canencia, et al v. Black Elk Energy Offshore Operations, LLC, and Wood Group USA, Inc.'s Cross Claim, Case No. 2:13-CV-05137-NJB-ALC in the United States District Court for the Eastern District of Louisiana.

Jovito L. Canencia, et al v. Black Elk Energy, LLC, Black Elk Energy Offshore Operations, LLC, Wood Group USA, Inc., Compass Engineering and Consultants, L.L.C., Enviro-Tech Specialities, Inc., Case 3:13-CV-00028 in the United States District Court for the Southern District of Texas, Galveston Division.

Chris Srubar, et al v. Compass Engineering and Consultants, L.L.C., and Grand Isle Shipyard, Inc., Case 2:13-CV-06413-NJB-ALC in the United States District Court for the Eastern District of Louisiana.

Execution Version

**Schedule 5.8**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Taxes and Assessments</u>

**None.**

Execution Version

**Schedule 5.10**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## **Contracts**

**None.**

Execution Version

**Schedule 5.11**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## **Hydrocarbon Production Payments**

**None.**

Execution Version

**Schedule 5.12**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Governmental Authorizations</u>

**None.**

Execution Version

**Schedule 5.13**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Outstanding Capital Commitments</u>

**None.**

Execution Version

## Schedule 5.14

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

### Imbalances

| Lease | Ending Balance | Date of last stmt | Basis | Statement Prepared by | Btu Factor @ 9/30/13 | MCF |
|---|---|---|---|---|---|---|
| Eugene Island 53 #G 1ST1 | 56,255 | 12/31/2013 | mcf | Apache | 0 | 56,255 |
| Eugene Island 53 #G 1ST1 (D02) (flash gas) | -1,615 | 12/31/2013 | mcf | Apache | 0 | -1,615 |
| Eugene Island53 #G 1ST;CHRIS K-2 | 30,026 | 12/31/2013 | mcf | Apache | 0 | 30,026 |
| Eugene Island53 #G 1ST;CHRIS K-2 (flash gas) | -879 | 12/31/2013 | mcf | Apache | 0 | -879 |
| Eugene Island53 #9;CRIS K-1 (S07) | -17,411 | 12/31/2013 | mcf | Apache | 0 | -17,411 |
| Eugene Island53 #9;CRIS K-1 (S07) (flash gas) | -2,369 | 12/31/2013 | mcf | Apache | 0 | -2,369 |
| Eugene Island53 #C2;TEX L (S02) | 68,992 | 12/31/2013 | mcf | Apache | 0 | 68,992 |
| Eugene Island53 #C2;TEX L (S02) (flash) | -227 | 12/31/2013 | mcf | Apache | 0 | -227 |
| Eugene Island53 #9D;CRIS K-1L (S06) | 3,351 | 12/31/2013 | mcf | Apache | 0 | 3,351 |
| Eugene Island53 #9D;CRIS K-1L (S06) (flash gas) | -426 | 12/31/2013 | mcf | Apache | 0 | -426 |
| Eugene Island 107 | 120,429 | 5/31/2012 | mmbtu | Apache | 1.043 | 125,608 |
| Eugene Island 107 A-3 | -27,074 | 5/31/2012 | mmbtu | Apache | 1.043 | -28,238 |
| Eugene Island 107 (flash gas) | 37 | 12/31/2013 | mmbtu | Apache | 1.214 | 45 |
| Eugene Island 108 | -244 | 12/31/2013 | mmbtu | Apache | 1.043 | -254 |
| Eugene Island 118 | 9,464 | 10/31/2009 | mcf | Black Elk | 0 | 9,464 |
| Eugene Island 175 | 19,012 | 12/31/2013 | mcf | Apache | 0 | 19,012 |
| Eugene Island 175 (flash gas) | -8 | 12/31/2013 | mcf | Apache | 0 | -8 |
| Galveston 210 | - | | mcf | Apache | 0 | 0 |
| Grand Isle 116 | 3,159 | 41639 | mmbtu | Apache | 1.1075 | 3,499 |
| High Island A-365 | 388,616 | 12/31/2013 | mcf | Apache | 0 | 388,616 |
| High Island A-376 A-15 | -383,693 | 12/31/2013 | mcf | Apache | 0 | 383,693 |

Case 20-33948    Document 983-1    Filed in TXSB on 03/11/21    Page 165 of 208

Execution Version

| Lease | Ending Balance | Date of last stmt | Basis | Statement Prepared by | Btu Factor @ 9/30/13 | MCF |
|---|---|---|---|---|---|---|
| | | | | | | - |
| High Island A-382 | -373,506 | 12/31/2013 | mmbtu | Apache | 1.18672 | 443,247 |
| | | | | | | - |
| High Island A-573 | -132,851 | 12/31/2013 | mmbtu | Apache | 1.18672 | 157,657 |
| High Island A-573 F23&E12 | -1,944 | 12/31/2013 | mmbtu | Apache | 1.18672 | -2,307 |
| High Island A-595 | 156,850 | 12/31/2013 | mmbtu | Apache | 1.18672 | 186,137 |
| High Island A-596 | 464,092 | 12/31/2013 | mmbtu | Apache | 1.18672 | 550,747 |
| Mississippi Canyon 110 | -1,836 | 12/31/2013 | mcf | Apache | | -1,836 |
| North Padre Island 883-L/889-L | -800 | 12/31/2013 | mcf | Apache | | -800 |
| South Marsh Island 280 H | 4,533 | 12/31/2013 | mmbtu | Apache | 1.08397 | 4,914 |
| South Marsh Island 281 #I | 25,507 | 12/31/2013 | mmbtu | Apache | 1.08399 | 27,649 |
| South Timbalier 53 | -6,905 | 8/31/2013 | mmbtu | Black Elk | 1.072 | -7,402 |
| Viosca Knoll 779 #A 5 | -2,483 | 2/28/2011 | mcf | Apache | | -2,483 |
| Viosca Knoll 780 | no stmt | | | | | |
| Viosca Knoll 824 (11848) | 18,326 | 12/31/2013 | mcf | Apache | | 18,326 |
| Vermillion 78 (12812) | -5,375 | 12/31/2013 | mmbtu | Apache | 1.08899 | -5,853 |
| Vermillion 78 (flash gas) | -14,271 | 12/31/2013 | mmbtu | Apache | 1.08899 | -15,541 |
| West Cameron 34 IT #1 (66FLD) | -6,802 | 12/31/2013 | mmbtu | Apache | 1.09886 | -7,474 |
| West Cameron 35 | no stmt | | | | | |
| West Cameron 65 IT #1 (66FLD) | -19,237 | 12/31/2013 | mmbtu | Apache | 1.09886 | -21,139 |
| West Cameron 66 JE #1 (66FLD) | 48,917 | 12/31/2013 | mmbtu | Apache | 1.09886 | 53,753 |
| West Cameron 66 E-1 (66FLD) | -5,679 | 12/31/2013 | mmbtu | Apache | 1.09886 | -6,240 |
| West Cameron 66 E-1 (66FLD) (flash gas) | -2 | 12/31/2013 | mmbtu | Apache | 1.09886 | -2 |
| West Cameron 66 LR B 1Z (66FLD) | -57 | 12/31/2013 | mmbtu | Apache | 1.09886 | -63 |
| West Cameron 66 IT #4 (66FLD) | -7,758 | 12/31/2013 | mmbtu | Apache | 1.09886 | -8,525 |
| West Cameron 66 JE #1 (66FLD) | 90,142 | 12/31/2013 | mmbtu | Apache | 1.09886 | 99,053 |
| West Cameron 66 LD (66FLD) | 18,070 | 11/30/2013 | mmbtu | Apache | 1.09886 | 19,856 |
| West Cameron 66 IT #1 (66FLD) | 89,728 | 12/31/2013 | mmbtu | Apache | 1.09886 | 98,599 |
| West Cameron 66 JA #1 (66FLD) | 14,092 | 12/31/2013 | mmbtu | Apache | 1.09886 | 15,485 |
| West Cameron 66 JA 1# GAS CAP (66FLD) | 97036 | 41639 | mmbtu | Apache | 1.09886 | 106629 |
| West Cameron 66 IT #1 (66FLD) | -13419 | 41639 | mcf | Apache | | -13419 |
| West Cameron 66 IR (66FLD) | -16013 | 41639 | mmbtu | Apache | 1.09886 | -17596 |
| West Cameron 67 | no stmt | | | | | |

88

Case 20-33948   Document 983-1   Filed in TXSB on 03/11/21   Page 166 of 208

Execution Version

| Lease | Ending Balance | Date of last stmt | Basis | Statement Prepared by | Btu Factor @ 9/30/13 | MCF |
|---|---|---|---|---|---|---|
| West Delta 121 #A 7 | 4275 | 41639 | mcf | Apache | | 4275 |
| West Delta 122 | 32349 | 41639 | mcf | Apache | | 32349 |
| West Delta 122 #A3 ST2 BPO | 4352 | 41639 | mcf | Apache | | 4352 |
| | | | | **Total Mcf** | | **780288** |

* Please note:  On these properties Apache is no longer providing a gas balancing statement.  These volumes are the most current that we have documentation for.

89

**Schedule 5.20**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## **Violation of Laws**

**None.**

Execution Version

**Schedule 5.21**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Environmental</u>

**None.**

Case 20-33948  Document 983-1  Filed in TXSB on 03/11/21  Page 169 of 208

## Schedule 5.22

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

### Suspended Funds

| Owner_Code | Owner_Name | Well_Name | Net_Volume | Net_Value | Total_Tax | Total_Deductions | Amount_Suspended |
|---|---|---|---|---|---|---|---|
| 1086 | DEVON ENERGY PROD CO LP | EI 118 | 11.55 | $46.36 | $0.00 | $0.00 | $46.36 |
| 1086 | DEVON ENERGY PROD CO LP | MC 110 ALL WELLS | 14.58 | $2,304.31 | ($87.89) | $0.00 | $2,392.20 |
| 6780 | BSNR RAPTOR LP | NPI 883 001 883-L 899-L UNIT | 13.36 | $23.33 | $2.13 | $0.00 | $21.20 |
| 6780 | BSNR RAPTOR LP | NPI 883 002 883-L 899-L UNIT | 8.93 | 24.03 | 3.19 | 0 | 20.84 |
| 6780 | BSNR RAPTOR LP | NPI 883 003 883-L 899-L UNIT | 85.63 | $270.18 | $19.96 | $0.00 | $250.22 |
| 6775 | B VICTOR HANSEN | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $2.82 | $0.00 | ($2.82) |
| 6807 | DALE V BAYSINGER | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $2.82 | $0.00 | ($2.82) |
| 6808 | DANIEL A WILSON | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $2.82 | $0.00 | ($2.82) |
| 6867 | JAMES F WESTMORELAND | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $0.81 | $0.00 | ($0.81) |
| 6877 | JERRY A EVERS (EXPR) | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $2.82 | $0.00 | ($2.82) |
| 6935 | MINERAL INVESTMENT CORP | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $0.02 | $0.00 | ($0.02) |
| 6965 | RAMONA  HUDECK LOWRY | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $2.82 | $0.00 | ($2.82) |
| 7055 | GEORGE A KELLY JR | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $2.82 | $0.00 | ($2.82) |
| 7036 | THOMAS E SCHWARTZ | NPI 883 002 883-L 899-L UNIT | 0 | $0.00 | $2.97 | $0.00 | ($2.97) |
| 7133 | EP ENERGY E&P COMPANY, L.P. | VK 824 A-7 | ($12.16) | ($33.73) | $1.77 | $0.00 | ($35.50) |
| 3000 | A FRANK KLAM | WD 122 A-1 | 0 | $0.01 | $0.00 | $0.00 | $0.01 |
| 3000 | A FRANK KLAM | WD 122 A-9 | 0.38 | $0.90 | $0.05 | $0.00 | $0.85 |
| 3000 | A FRANK KLAM | WD 122 A-12 | 0.13 | $0.40 | $0.02 | $0.00 | $0.38 |
| 3000 | A FRANK KLAM | WD 122 A-4ST | 0.09 | $0.91 | $0.02 | $0.00 | $0.89 |
| 3012 | DAUBE RANCH & MINERALS LTD | WD 122 A-1 | 0.06 | $0.12 | $0.01 | $0.00 | $0.11 |
| 3012 | DAUBE RANCH & MINERALS LTD | WD 122 A-9 | 5.82 | $13.56 | $0.86 | $0.00 | $12.70 |
| 3012 | DAUBE RANCH & MINERALS LTD | WD 122 A-12 | 1.8 | $5.89 | $0.40 | $0.00 | $5.49 |
| 3012 | DAUBE RANCH & MINERALS LTD | WD 122 A-4ST | 1.41 | $13.43 | $0.32 | $0.00 | $13.11 |
| 3017 | FRANK T. WEBSTER | WD 122 A-1 | 0.02 | $0.04 | $0.00 | $0.00 | $0.04 |
| 3017 | FRANK T. WEBSTER | WD 122 A-9 | 1.86 | $4.35 | $0.27 | $0.00 | $4.08 |
| 3017 | FRANK T. WEBSTER | WD 122 A-12 | 0.58 | $1.87 | $0.13 | $0.00 | $1.74 |

Execution Version

| Owner_Code | Owner_Name | Well_Name | Net_Volume | Net_Value | Total_Tax | Total_Deductions | Amount_Suspended |
|---|---|---|---|---|---|---|---|
| 3017 | FRANK T. WEBSTER | WD 122 A-4ST | 0.45 | $4.33 | $0.11 | $0.00 | $4.22 |
| 3020 | GOPHER INVESTMENTS LP | WD 122 A-1 | 0.06 | $0.11 | $0.01 | $0.00 | $0.10 |
| 3020 | GOPHER INVESTMENTS LP | WD 122 A-9 | 5.61 | $13.05 | $0.81 | $0.00 | $12.24 |
| 3020 | GOPHER INVESTMENTS LP | WD 122 A-12 | 1.72 | $5.65 | $0.39 | $0.00 | $5.26 |
| 3020 | GOPHER INVESTMENTS LP | WD 122 A-4ST | 1.35 | $12.93 | $0.31 | $0.00 | $12.62 |
| 3023 | ISLER OIL LP | WD 122 A-1 | 0.01 | $0.03 | $0.00 | $0.00 | $0.03 |
| 3023 | ISLER OIL LP | WD 122 A-9 | 1.4 | $3.23 | $0.21 | $0.00 | $3.02 |
| 3023 | ISLER OIL LP | WD 122 A-12 | 0.43 | $1.40 | $0.10 | $0.00 | $1.30 |
| 3023 | ISLER OIL LP | WD 122 A-4ST | 0.32 | $3.20 | $0.06 | $0.00 | $3.14 |
| 3025 | JASPER MARINO | WD 122 A-1 | 0.01 | $0.03 | $0.00 | $0.00 | $0.03 |
| 3025 | JASPER MARINO | WD 122 A-9 | 1.4 | $3.23 | $0.21 | $0.00 | $3.02 |
| 3025 | JASPER MARINO | WD 122 A-12 | 0.43 | $1.40 | $0.10 | $0.00 | $1.30 |
| 3025 | JASPER MARINO | WD 122 A-4ST | 0.32 | $3.20 | $0.06 | $0.00 | $3.14 |
| 3030 | LIGHT CAHILL ROYALTIES | WD 122 A-9 | 0.8 | $0.78 | $0.00 | $0.00 | $0.78 |
| 3030 | LIGHT CAHILL ROYALTIES | WD 122 A-12 | 1.54 | $5.36 | $0.35 | $0.00 | $5.01 |
| 3030 | LIGHT CAHILL ROYALTIES | WD 122 A-4ST | 0.52 | $1.81 | $0.04 | $0.00 | $1.77 |
| 3031 | LOUIS K BRANDT | WD 122 A-1 | 0.06 | $0.11 | $0.01 | $0.00 | $0.10 |
| 3031 | LOUIS K BRANDT | WD 122 A-9 | 5.61 | $13.05 | $0.81 | $0.00 | $12.24 |
| 3031 | LOUIS K BRANDT | WD 122 A-12 | 1.72 | $5.65 | $0.39 | $0.00 | $5.26 |
| 3031 | LOUIS K BRANDT | WD 122 A-4ST | 1.35 | $12.93 | $0.31 | $0.00 | $12.62 |
| 3035 | ORTHWEIN PETROLEUM INC | WD 122 A-9 | 8.29 | $8.09 | $0.00 | $0.00 | $8.09 |
| 3035 | ORTHWEIN PETROLEUM INC | WD 122 A-12 | 16.08 | $55.80 | $3.63 | $0.00 | $52.17 |
| 3035 | ORTHWEIN PETROLEUM INC | WD 122 A-4ST | 5.42 | $18.64 | $0.39 | $0.00 | $18.25 |
| 3036 | R M RAYBURN | WD 122 A-1 | 0 | $0.01 | $0.00 | $0.00 | $0.01 |
| 3036 | R M RAYBURN | WD 122 A-9 | 0.41 | $0.98 | $0.06 | $0.00 | $0.92 |
| 3036 | R M RAYBURN | WD 122 A-12 | 0.14 | $0.43 | $0.04 | $0.00 | $0.39 |
| 3036 | R M RAYBURN | WD 122 A-4ST | 0.1 | $0.97 | $0.02 | $0.00 | $0.95 |
| 3037 | RAFFERTY ROYALTY PARTNERS | WD 122 A-1 | 0.06 | $0.11 | $0.01 | $0.00 | $0.10 |
| 3037 | RAFFERTY ROYALTY PARTNERS | WD 122 A-9 | 5.61 | $13.05 | $0.81 | $0.00 | $12.24 |
| 3037 | RAFFERTY ROYALTY PARTNERS | WD 122 A-12 | 1.72 | $5.65 | $0.39 | $0.00 | $5.26 |
| 3037 | RAFFERTY ROYALTY PARTNERS | WD 122 A-4ST | 1.35 | $12.93 | $0.31 | $0.00 | $12.62 |
| 3039 | REEF PARTNERS HOLDING CO LLC | WD 122 A-9 | 12.91 | $22.81 | $1.05 | $0.00 | $21.76 |
| 3039 | REEF PARTNERS HOLDING CO LLC | WD 122 A-12 | 8.74 | $29.16 | $1.96 | $0.00 | $27.20 |
| 3039 | REEF PARTNERS HOLDING CO LLC | WD 122 A-4ST | 4.84 | $27.21 | $0.81 | $0.00 | $26.40 |

93

Execution Version

| Owner_Code | Owner_Name | Well_Name | Net_Volume | Net_Value | Total_Tax | Total_Deductions | Amount_Suspended |
|---|---|---|---|---|---|---|---|
| 3040 | ROGER L BARESH | WD 122 A-1 | 0.04 | $0.09 | $0.00 | $0.00 | $0.09 |
| 3040 | ROGER L BARESH | WD 122 A-9 | 4.2 | $9.79 | $0.61 | $0.00 | $9.18 |
| 3040 | ROGER L BARESH | WD 122 A-12 | 1.31 | $4.25 | $0.29 | $0.00 | $3.96 |
| 3040 | ROGER L BARESH | WD 122 A-4ST | 1.01 | $9.71 | $0.21 | $0.00 | $9.50 |
| 3041 | ROSALIE SCHWARZ | WD 122 A-1 | 0.06 | $0.11 | $0.01 | $0.00 | $0.10 |
| 3041 | ROSALIE SCHWARZ | WD 122 A-9 | 5.61 | $13.05 | $0.81 | $0.00 | $12.24 |
| 3041 | ROSALIE SCHWARZ | WD 122 A-12 | 1.72 | $5.65 | $0.39 | $0.00 | $5.26 |
| 3041 | ROSALIE SCHWARZ | WD 122 A-4ST | 1.35 | $12.93 | $0.31 | $0.00 | $12.62 |
| 7057 | RL FASH LTD | WD 122 A-1 | 0.03 | $0.07 | ($0.02) | $0.00 | $0.09 |
| 7057 | RL FASH LTD | WD 122 A-9 | 4.18 | $9.94 | $0.64 | $0.00 | $9.30 |
| 7057 | RL FASH LTD | WD 122 A-12 | 1.33 | $4.25 | $0.23 | $0.00 | $4.02 |
| 7057 | RL FASH LTD | WD 122 A-4ST | 1.04 | $9.68 | $0.18 | $0.00 | $9.50 |
| | | | | | | | $3,063.42 |

94

Execution Version

**Schedule 5.23**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Non-Consent Operations</u>

| Block | Well # | API # |
|-------|--------|-------|
| EI 175 | D-6 | 177094003301 |
| EI 175 | D-9 | 177094005401 |
| EI 175 | D-12 | 177094010601 |
| EI 175 | D-21 | 177092012603 |
| EI 175 | H-1 | 177094104700 |
| EI 175 | I-3 | 177094107200 |
| EI 175 | I-5 | 177094109300 |
| EI 175 | J-3 | 177094123501 |
| EI 175 | J-4 | 177094107200 |
| HI A573 | A-14 | 427094034100 |
| WD 121 | A-10 | 177204015800 |

Execution Version

**Schedule 5.24**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## BOEM or BSEE Incidents of Non-Compliance and Suspensions

**None.**

Execution Version

**Schedule 5.27**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Condition of Personal Property</u>

**Normal**

Execution Version

**Schedule 5.28**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Bonds, Letters of Credit, Escrows, Guarantees and Other Securities</u>

**None.**

Execution Version

## Schedule 5.29

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## Idle Iron

| Category | API WE LL NUM BER | SURF AR EA CODE | SURF BLO CK NUM | BOTM ARE A CODE | BOTM BLO CK NUM | WELL_ NAME | Lease Expire d date | Last Production | PERMIT EXPECT ED | ANTICIPATE D_WORK_ST ART | ANTICIPATED W ORK COMPLETE | Future Utility | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| IDLE | 17715404 3101 | ST | 53 | ST | 53 | 004 | | 2002 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715408 3500 | ST | 53 | ST | 53 | 006 | | 2001 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715403 8401 | ST | 53 | ST | 53 | A003 | | 2001 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715404 0500 | ST | 53 | ST | 53 | A008 | | 2001 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715404 3501 | ST | 53 | ST | 53 | A010 | | 2004 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715404 2400 | ST | 53 | ST | 53 | A011 | | 2003 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715404 2301 | ST | 53 | ST | 53 | A012 | | 2002 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715404 4000 | ST | 53 | ST | 53 | A013 | | 1988 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715407 6901 | ST | 53 | ST | 53 | A015 | | 2006 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715404 3601 | ST | 53 | ST | 53 | A016 | | 2001 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715406 1101 | ST | 53 | ST | 53 | A017 | | 2001 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715407 7200 | ST | 53 | ST | 53 | A019 | | 2004 | | | | Y | Recompletion in Q2 2014 to CS-2 Sand |
| IDLE | 17715407 7101 | ST | 53 | ST | 53 | A020 | | 2004 | Q1 2016 | Q2 2016 | Q2 2016 | N | |
| IDLE | 17715410 7300 | ST | 53 | ST | 53 | C002 | | 2005 | Q1 2016 | Q2 2016 | Q2 2016 | N | |

Execution Version

Case 20-33948   Document 983-1   Filed in TXSB on 03/11/21   Page 177 of 208

| Category | Surf Area Code | SURF BLOCK NUM | Complex ID No. | Structure Name | Permit Expected | Anticipated Work Start | Anticipated Work Completed | Future Utility | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|
| IDLE | ST | 53 | 22768 | 004 | Q2 2016 | Q3 2016 | Q3 2016 | N | Wells TA Q2 2016 |
| IDLE | ST | 53 | 24184 | 006 | Q2 2016 | Q3 2016 | Q3 2016 | N | Wells TA Q2 2016 |

100

Execution Version

# Schedule 5.31

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

---

## SELLER'S EXISTING MORTGAGES AND LIENS

### EXISTING LIENS

1(a).  Lien, recorded in Mortgage Book 1570, Page 601 of the records of Iberia Parish, Louisiana and in Mortgage Book 1376, Page 702 of the records of St Mary Parish, Louisiana, by Grand Isle Shipyard Inc., claiming the sum of $34,143.77.

1(b).  Lien, recorded in Mortgage Book 1631, Page 367 of the records of Lafourche Parish, Louisiana and in Mortgage Book 2597, Page 11 of the records of Terrebonne Parish, Louisiana, by Grand Isle Shipyard Inc., claiming the sum of $174,301.47.

2.  Lien, recorded in Mortgage Book 2628, Page 698 of the records of Terrebonne Parish, Louisiana, by Wood Group PSN, Inc., claiming the sum of $40,176.74.

### EXISTING MORTGAGES

1.  Mortgage, Deed of Trust, Security Agreement, Financing Statement and Assignment of Production from Black Elk Energy Offshore Operations, LLC to Jennifer D. Hamer, Trustee for the Benefit of The Bank of New York Mellon Trust Company, N.A., Trustee and Collateral Agent under the Indenture dated January 24, 2011 to be effective November 23, 2010:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Aransas County, TX | File No. 315976 | 2/03/2011 |
| Brazoria County, TX | File No. 201104920 | 2/03/2011 |
| Calhoun County, TX | File No. 124354, Vol. 283, Pg. 939 | 2/03/2011 |
| Chambers County, TX | File No. 63323, Bk. OR, Vol. 1249, Pg. 390 | 2/07/2011 |
| Galveston County, TX | File No: 2011006155 | 2/03/2011 |
| Jefferson County, TX | File No. 2011004445 | 2/02/2011 |
| Kleberg County, TX | File No. 285919, Vol. 446, Pg. 055 | 2/08/2011 |
| Matagorda County, TX | File No. 110576 | 2/03/2011 |
| Nueces County, TX | File No. 2011004280 | 2/07/2011 |
| San Patricio County, TX | File No. 606136 | 2/03/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in the non-required/adjudication files for the following 107 leases: OCS-00072, OCS-00073, OCS-00438, OCS-00479, OCS-00487, OCS-00495, OCS-00518, OCS-00680, OCS-00777, OCS-00778, OCS-G 01083, G 01084, G 01192, G | 2/04/2011 |

| | 01216, G 01261, G 01269, G 01568, G 01569, G 01610, G 01860, G 01874, G 01901, G 01966, G 01967, G 01989, G 02062, G 02111, G 02116, G 02136, G 02388, G 02391, G 02393, G 02434, G 02439, G 02572, G 02600, G 02608, G 02613, G 02721, G 02722, G 02750, G 02754, G 02757, G 02819, G 02825, G 02826, G 02934, G 03241, G 03251, G 03256, G 03265, G 03811, G 03959, G 04243, G 04421, G 04895, G 05286, G 05438, G 05687, G 06884, G 07799, G 10924, G 12886, G 13560, G 13645, G 13673, G 13850, G 13897, G 13943, G 13944, G 14193, G 14427, G 14456, G 15156, G 15158, G 15241, G 15242, G 15436, G 16320, G 16353, G 16461, G 16549, G 17133, G 18184, G 18192, G 19760, G 19839, G 19843, G 19935, G 21553, G 21683, G 22219, G 23180, G 23840, G 25008, G 25033, G 26554, G 27824, G 31353, G 32240, G 32241, G 32284, G 32783, G 32784, G 33389, G 33390 and G 33397;

and also in pipeline right-of-way files for the following 28 rights-of-way:

OCS-00877, OCS-G 01468, G 01693, G 03345, G 04059, G 04335, G 04356, G 09323, G 13425, G 14074, G 16062, G 01686A, G 17722, G 19670, G 22407, G 22453, G 22454, G 22455, G 24257, G 25329, G 25395, G 25396, G 25422, G 25492, G 26884, G 26885, G 28557 and G 28996 | |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region Non-Required Files | Filed in the non-required/adjudication files for the following 7 leases: OCS-G 2388, OCS-G 2404, OCS-G 4537, OCS-G 11243, OCS-G 20605, OCS-G 20623 and OCS-G 25524, and in one Pipeline Right-of Way File OCS-G 4372 | 12/30/2013 |

2. <u>UCC-1 Financing Statement</u> from Black Elk Energy Offshore Operations, LLC, the Debtor, and The Bank of New York Mellon Trust Company, N.A., as Collateral Agent, the Secured Party, for all assets of the Debtor, as defined in that certain Indenture by and among the Debtor, the Secured Party and other parties thereto dated November 23, 2010:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Texas Secretary of State | File No: UCC-1#10-0034025136 | 11/29/2010 |

3. <u>Mortgage, Assignment of As-Extracted Collateral, Security Agreement and Financing Statement</u> by Black Elk Energy Offshore Operations, LLC as Mortgagor to The Bank of New York Mellon Trust Company, N.A., Trustee and Collateral Agent, as Collateral Agent dated January 24, 2011 but effective November 23, 2010:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Cameron Parish, LA | File No. 321571 | 2/01/2011 |
| Iberia Parish, LA | File No. 2011-00001057, Bk. 1419, Pg 398 | 2/01/2011 |
| Jefferson Parish, LA | File No. 11104087, MOB 4473, Pg. 585 | 2/01/2011 |
| Lafourche Parish, LA | File No. 1106697, MOB 1475, Pg. 1 | 2/01/2011 |
| Plaquemines Parish, LA | File No. 20110000492, Bk. 558, Pg. 213 (Mtg.) | 2/01/2011 |
| St. Bernard Parish, LA | File No. 548944, MOB 1622, Folio 304 | 2/01/2011 |
| St. Mary Parish, LA | File No. 304270, MOB 1271, Pg. 1 | 2/01/2011 |
| Terrebonne Parish, LA | File No. 1366537, MOB 2343, Pg. 667 | 2/01/2011 |
| Vermilion Parish, LA | File No. 21101014 | 2/01/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in same <u>107 lease files</u> and <u>28 rights-of-way</u> files as in BOEMRE *Item 1) above* | 12/30/2010 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in the non-required/adjudication files for the following 28 leases: OCS-00310, OCS-00434, OCS-00541, OCS-00593, OCS-G 01477, OCS-G 01972, OCS-G 02127, OCS-G 02274, OCS-G 02275, OCS-G 02278, OCS-G 2404, OCS-G 03171, OCS-G 03587, OCS-G 04000, OCS-G 09383, OCS-G 09384, OCS-G 09386, OCS-G 09387, OCS-G 11454, OCS-G 11455, OCS-G 11553, OCS-G 12355, OCS-G 12358, OCS-G 13563, OCS-G 14585, OCS-G 15212, OCS-G 22505, OCS-G 23740; | 12/30/2013 |

Execution Version

|  | and also in pipeline right-of-way files for the following 7 pipeline rights-of-way:     OCS-G 03358, OCS-G 08937, OCS-G   09319,   OCS-G   13507, OCS-G 21475,  OCS-G 24637,  OCS-G 28281 |  |
|---|---|---|

4. <u>UCC-1 Financing Statement</u> for Black Elk Energy Offshore Operations, LLC, as Mortgagor to The Bank of New York Mellon Trust Company, N.A., Trustee and Collateral Agent, as Collateral Agent dated January 24, 2011 but effective November 23, 2010, with *Item 3) above* attached as Schedule:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Plaquemines Parish, LA | UCC-1 No: 38-11-1450    (UCC Bk. 3810, Pg. 1450) File No. 20110000493 & also filed in Mortgage Book (see below) | 2/01/2011 |
| Plaquemines Parish, LA | UCC-1 File No. 20110000493, Bk. 558, Pg. 385 (Mortgage Book) | 2/01/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | UCC Financing Statement 38-11-1450, filed in the same <u>107 lease files</u> and <u>28 pipeline right-of-way</u> files as BOEMRE *Item 1) above* | 2/04/2011 |

5. First Amendment to Mortgage, Deed of Trust, Security Agreement, Financing Statement and Assignment of Production, from Black Elk Energy Offshore Operations, LLC to Jennifer D. Hamer, Trustee for the benefit of The Bank of New York Mellon Trust Company, N.A, Trustee and Collateral Agent under the Indenture, as Mortgagee, effective May 31, 2011, filed as follows:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Aransas County, TX | File No. 333195 | 12/30/2013 |
| Brazoria County, TX | File No. 2013061265 | 12/27/2013 |
| Calhoun County, TX | File No. 137292 | 12/27/2013 |
| Chambers County, TX | File No. 2013-90607, Bk. OR, Vol. 1466, Pg. 736 | 12/30/2013 |
| Galveston County, TX | File No: 2013078880 | 12/27/2013 |
| Jefferson County, TX | File No. 2013041863 | 12/30/2013 |
| Kleberg County, TX | File No. 297423, Vol. 505, Pg. 797 | 1/2/2014 |
| Matagorda County, TX | File No. 2013-7129 | 12/27/2013 |
| Nueces County, TX | File No. 2013054851 | 12/27/2013 |
| San Patricio County, TX | File No. 633966 | 12/30/2013 |
| Bureau of Ocean Energy Management,    Regulation, | See BOEMRE information in *Item 1) above* for a list of the same <u>7 leases</u> and <u>one right-</u> | 12/30/2013 |

Execution Version

| | | |
|---|---|---|
| and Enforcement, Gulf of Mexico Region – Non-Required Files | of-way. | |

6. First Amendment to Mortgage, Assignment of As-Extracted Collateral, Security Agreement, Financing Statement from Black Elk Energy Offshore Operations, LLC to The Bank of New York Mellon Trust Company, N.A., Trustee and Collateral Agent, effective May 31, 2011, filed as follows:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Cameron Parish, LA | File No. 331448 | 12/27/2013 |
| Iberia Parish, LA | File No. 2013-00014198, MOB 1588, Page 720 , | 12/27/2013 |
| Jefferson Parish, LA | File No. 11362406 MOB | 12/26/2013 |
| Lafourche Parish, LA | File No. #1169894, MOB 1649, Page 183 | 12/27/2013 |
| Plaquemines Parish, LA | File No. 2013-00005692, MOB 635, Page 495 | 12/26/2013 |
| St. Bernard Parish, LA | File No. 578491, MOB 1720, Page 711 | 12/27/2013 |
| St. Mary Parish, LA | File No. 322399, MOB 1389, Page 675 | 12/27/2013 |
| Terrebonne Parish, LA | File No. 1444323, MOB 2624, Page 145 | 12/27/2013 |
| Vermilion Parish, LA | File No. 2013013037 MOB | 12/27/2013 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 3) above* for a list of the same 28 leases and 7 pipeline rights-of-way. | 12/30/2013 |

7. Louisiana UCC-1 Financing Statement for Louisiana BONY Mortgage and Amendment (see, *No. 3) and No. 5) above*):

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Plaquemines Parish, LA | Recorded at Instrument # 2013-00005693, Mortgage Book 3813, Page 1754 | 12/26/2013 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 3) above* for a list of the same 28 leases and 7 pipeline rights-of-way. | 12/30/2013 |

8. Mortgage, Deed of Trust, Security Agreement, Financing Statement and Assignment of Production, dated December 23, 2013 but effective as of May 31, 2011 from Black Elk Energy Offshore Operations, LLC , as Mortgagor, to The Bank of New York Mellon Trust Company, N.A., as Collateral Agent:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Kenedy County, TX | Document No. 00010670, Vol. 60, Pages 823-889 | 12/30/2013 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in the non-required/adjudication files for the following leases: OCS-G 04537 and OCS-G 11243 | 12/30/2013 |

9. <u>Mortgage, Deed of Trust, Security Agreement, Financing Statement and Assignment of Production</u> from Black Elk Energy Offshore Operations, LLC to Tammy W. Brennig, Trustee for the Benefit of Capital One, N.A. Administrative Agent under the Credit Agreement, as Mortgagee, dated December 21, 2010 to be effective December 24, 2010:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Aransas County, TX | 315376 | 12/29/2010 |
| Brazoria County, TX | 2010054940 | 12/29/2010 |
| Calhoun County, TX | 123933 | 12/29/2010 |
| Chambers County, TX | Clerk No. 62362, Volume 1243, Page 1 | 12/29/2010 |
| Galveston County, TX | 2010064099 | 12/29/2010 |
| Jefferson County, TX | 2010046653 | 12/29/2010 |
| Kleberg County, TX | File No. 285557, Volume 444, Page 200 | 12/29/2010 |
| Matagorda County, TX | 106909 | 12/29/2010 |
| Nueces County, TX | 2010047073 | 12/29/2010 |
| San Patricio County, TX | 605272 | 12/29/2010 |
| Texas General Land Office | not applicable | 1/07/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | filed in the non-required/adjudication files for the following 107 leases: OCS-00072, OCS-00073, OCS-00438, OCS-00479, OCS-00487, OCS-00495, OCS-00518, OCS-00680, OCS-00777, OCS-00778, OCS-G 01083, G 01084, G 01192, G 01216, G 01261, G 01269, G 01568, G 01569, G 01610, G 01860, G 01874, G 01901, G 01966, G 01967, G 01989, G 02062, G 02111, G 02116, G 02136, G 02388, G 02391, G 02393, G 02434, G 02439, G 02572, G 02600, G 02608, G 02613, G 02721, G 02722, G 02750, G 02754, G 02757, G 02819, G 02825, G 02826, G 02934, G 03241, G 03251, G 03256, G 03265, G 03811, G 03959, G 04243, G 04421, G 04895, G 05286, G 05438, G 05687, G 06884, G | 12/30/2010 |

| | | |
|---|---|---|
| | 07799, G 10924, G 12886, G 13560, G 13645, G 13673, G 13850, G 13897, G 13943, G 13944, G 14193, G 14427, G 14456, G 15156, G 15158, G 15241, G 15242, G 15436, G 16320, G 16353, G 16461, G 16549, G 17133, G 18184, G 18192, G 19760, G 19839, G 19843, G 19935, G 21553, G 21683, G 22219, G 23180, G 23840, G 25008, G 25033, G 26554, G 27824, G 31353, G 32240, G 32241, G 32284, G 32783, G 32784, G 33389, G 33390 and G 33397<br>and also in pipeline right-of-way files for the following 28 rights-of-way:<br>OCS-00877, OCS-G 01468, G 01693, G 03345, G 04059, G 04335, G 04356, G 09323, G 13425, G 14074, G 16062, G 01686A, G 17722, G 19670, G 22407, G 22453, G 22454, G 22455, G 24257, G 25329, G 25395, G 25396, G 25422, G 25492, G 26884, G 26885, G 28557 and G 28996 | |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | filed in the non-required/adjudication files for the following 61 leases:<br>OCS-00310, OCS-00434, OCS-00541, OCS-00593, OCS-00759, OCS-00760, OCS-G 00932, G 01477, G 01972, G 02111, G 02115, G 02116, G 02118, G 02127, G 02274, G 02275, G 02278, G 02388, G 02404, G 02608, G 02613, G 02857, G 02900, G 03171, G 03332, G 03587, G 04000, G 04453, G 04537, G 05370, G 08640, G 08641, G 09383, G 09384, G 09386, G 09387, G 11243, G 11454, G 11455, G 11553, G 11983, G 12355, G 12358, G 12497, G 13563, G 14103, G 14585, G 15141, G 15212, G 15347, G 15349, G 17124, G 17133, G 17842, G 20605, G 20623, G 22505, G 23193, G 23740, G 25524 and G 25872;<br>and also in pipeline right-of-way files for the following 22 rights-of-way:<br>G 03358, G 04372, G 06550, G 08937, G 09319, G 10398, G 13407, G 13507, G 15655, G 15699, G 20562, G 21275, G 21475, G 22117, G 22380, G 22452, G | 6/03/2011 |

| | 23717, G 24291, G 24637, G 25300, G 25493 and G 28281 | |

10. Mortgage, Assignment of As-Extracted Collateral, Security Agreement and Financing Statement from Black Elk Energy Offshore Operations, LLC, as Mortgagor, to Capital One, N.A., as Mortgagee and Administrative Agent, dated December 21, 2010 but effective December 24, 2010:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Cameron Parish, LA | File No. 321330 (Conveyance and Mortgage) | 12/29/2010 |
| Iberia Parish, LA | COB 1471, Page 43 and MOB 1415, Page 1, both under File No. 2010-00013982 | 12/29/2010 |
| Lafourche Parish, LA | COB 1839, Page 278 and MOB 1470, Page 398, both under Instrument No. 1104882 | 12/29/2010 |
| Jefferson Parish, LA | COB 3273, Page 740 and MOB 4470, Page 593, both under File No. 11054336 | 12/29/2010 |
| Plaquemines Parish, LA | COB 1238, Page 348 and MOB 556, Page 184, both under File No. 2010-00005400 | 12/29/2010 |
| St. Bernard Parish, LA | Instrument No. 548 146 in COB 1002 and MOB 1619 | 12/29/2010 |
| St. Mary Parish, LA | COB 224, Page 1 and MOB 1267, Page 91, both under File No. 309199 | 12/29/2010 |
| Terrebonne Parish, LA | COB 2224, Page 140 and MOB 2335, Page 281, both under File No. 1364163 | 12/29/2010 |
| Vermilion Parish, LA | File No. 21013453 (Conveyance and Mortgage) | 12/29/2010 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9) above* for a list of the same 107 leases and 28 rights-of-way | 12/30/2010 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9) above* for a list of the same 61 leases and 22 rights-of-way | 6/03/2011 |

11. UCC Financing Statement for Black Elk Energy Offshore Operations, LLC, Black Elk Energy Finance Corp., and Black Elk Energy Land Operations, LLC as Debtors and Capital One, N.A., as Administrative Agent, as Secured party:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| TX SOS | 10-0036853339 | 12/27/2010 |

12. <u>UCC-1 (LA) Financing Statement</u> for Black Elk Energy Offshore Operations, LLC, as Debtor, and Capital One, N.A., as Administrative Agent, as Secured Party with copy of *Item 10) above* attached as Schedule:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Plaquemines Parish, LA | UCC No. 38-10-2098 [Plaquemines Parish UCC Book 3810, Page 2098, File No. 2010-00005399] | 12/29/2010 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9) above* for a list of the same <u>107 leases</u> and <u>28 rights-of-way</u>. | 12/30/2010 |

13. <u>First Amendment and Supplement to Mortgage, Deed of Trust, Security Agreement, Financing Statement and Assignment of Production</u> dated May 27, 2011 but effective as of May 31, 2011 by and between Black Elk Energy Offshore Operations, LLC and Capital One, N.A. and Tammy W. Brennig, as Trustee:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Aransas County, TX | File No. 318023 | 6/07/2011 |
| Brazoria County, TX | File No. 2011022934 | 6/07/2011 |
| Calhoun County, TX | File No. 125736 | 6/07/2011 |
| Chambers County, TX | File No. 201166311, Vol. 1270, Pg. 375 | 6/07/2011 |
| Galveston County, TX | File No. 2011028660 | 6/07/2011 |
| Jefferson County, TX | File No. 2011018668 | 6/07/2011 |
| Kleberg County, TX | File No. 287167, Vol. 452, Pg. 600 | 6/09/2011 |
| Matagorda County, TX | File No. 113135 | 6/07/2011 |
| Nueces County, TX | File No. 2011019489 | 6/07/2011 |
| San Patricio County, TX | File No. 609142 | 6/07/2011 |
| Texas General Land Office | N/A | |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9) above* for a list of the same <u>107 leases</u> and <u>28 rights-of-way</u>. | 6/03/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9) above* for a list of the same <u>61 leases</u> and <u>22 rights-of-way</u>. | 6/03/2011 |

14. <u>First Amendment to Mortgage, Assignment of As-Extracted Collateral, Security Agreement and Financing Statement</u> dated May 27, 2011 but effective as of May 31, 2011 by and between Black Elk Energy Offshore Operations, LLC and Capital One, N.A. as Administrative Agent:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Cameron Parish, LA | File No. 322778 (Mortgage and Conveyance) | 6/06/2011 |
| Iberia Parish, LA | MOB 1436, Page 514 and COB 1481, Page 163, all under File No. 2011-00005568 | 6/06/2011 |
| Lafourche Parish, LA | MOB 1493, Page 455 and COB 1853, Page 728, all under Instrument No. 1113716 | 6/06/2011 |
| Jefferson Parish, LA | MOB 4487, Page 469 and COB 3279, Page 748, all under File No. 11122751 | 6/03/2011 |
| Plaquemines Parish, LA | MOB 566, Page 329 and COB 1247, Page 337, all under File No. 2011-00002262 | 6/03/2011 |
| St. Bernard Parish, LA | Instrument No. 552 678 in MOB 1633 and COB 1017 | 6/03/2011 |
| St. Mary Parish, LA | MOB 1283, Page 179 and COB 233, Page 505, all under File No. 310603 | 6/06/2011 |
| Terrebonne Parish, LA | MOB 2373, Page 1 and COB 2242, Page 453, all under File No. 1374828 | 6/06/2011 |
| Vermilion Parish, LA | File No. 21105911 (Mortgage and Conveyance) | 6/06/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9) above* for the <u>107 leases</u> and <u>28 rights-of-way</u> filed | 6/03/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9) above* for the <u>61 leases</u> and <u>22 rights-of-way</u> filed | 6/03/2011 |

15. UCC-1 Financing Statement for Black Elk Energy Offshore Operations, LLC, as Debtor and Capital One, N.A., as Administrative Agent, as Secured Party, with *Item 14) above* attached as Exhibit B:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Plaquemines Parish, LA | UCC-1 38-11-2338 (UCC Bk. 3811, Pg. 2338), File No. 2011-00002263 | 6/03/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | LA – UCC-1 Financing Statement filed in same <u>61 leases</u> and <u>22 rights-of-way</u>, as in BOEMRE filing in *Item 9) above* | 6/03/2011 |

Execution Version

16. <u>Mortgage, Deed of Trust, Security Agreement, Financing Statement and Assignment of Production</u> from Black Elk Energy Offshore Operations, LLC to Tammy W. Brennig, Trustee for the Benefit of Capital One, N.A. Administrative Agent under the Credit Agreement as Mortgagee dated May 27, 2011 to be effective May 31, 2011:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Kenedy County, TX | Vol., 54, Page 331 | 6/07/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in the non-required/adjudication files:  a copy as filed in Kenedy County, TX for the following leases; OCS-G 04537 and OCS-G 11243;<br><br>And in pipeline right-of-way for the following right-of-way:  OCS-G 15699 | 6/15/2011 |

17. <u>Assignment of Mortgages</u> dated effective August 30, 2013 by and between Capital One, N.A. as assignor and White Elk LLC as assignee, filed as follows:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Aransas County | 331349 | 9/10/2013 |
| Brazoria County | 2013044512 | 9/6/2013 |
| Calhoun County | 135978 | 9/12/2013 |
| Chambers County | 201387727, Vol. 1442, Page 535 | 9/6/2013 |
| Galveston County | 2013057381 | 9/6/2013 |
| Jefferson County | 2013029744 | 9/6/2013 |
| Kenedy County | 00010667, Vol. 60, Page 799 | 12/17/13 |
| Kleberg County | 296290, Vol. 498, Page 183 | 9/11/2013 |
| Matagorda County | 2013-4905 | 9/6/2013 |
| Nueces County | 2013038729 | 9/6/2013 |
| San Patricio County | 631107 | 9/6/2013 |
| TX GLO | Lease files:  MF057686,  MF068972 MF069064,  MF069136,  MF069137, MF069138,  MF090594,  MF102889, MF106420,  MF107580,  M96146, M96147, M100410, M100411, M100412, M100413, M100414, and M101898 | 9/9/13 |

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Cameron Parish, Louisiana | Mortgage and Conveyance records at File No. 330404 | 9/09/2013 |

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Iberia Parish, Louisiana | MOB 1570, Page 592, File No. 2013-00010257 and COB 1541, Page 158, both under File No. 2013-00010258 | 9/09/2013 |
| Jefferson Parish, Louisiana | MOB 4588, Page 727, File No. 11344511 and COB 3320, Page 941, File No. 11345796 | 9/06/2013 |
| Lafourche Parish, Louisiana | MOB 1630, Page 596, COB 1939, Page 121 and Misc. 277, Page 1, all under Instrument No. 1163465 | 9/09/2013 |
| Plaquemines Parish, Louisiana | MOB 627, Page 381 and COB 1301, Page 319, both under File No. 2013-00003982 | 9/06/2013 |
| St. Bernard Parish, Louisiana | MOB 1708, Page 821 and COB 1078, Page 734, both under File No. 575715 | 9/06/2013 |
| St. Mary Parish, Louisiana | MOB 1376, Page 442 and COB 282, Page 173, both under File No. 317298 | 9/09/2013 |
| Terrebonne Parish, Louisiana | MOB 2596, Page 865 and COB 2349, Page 51, both under File No. 1436365 | 9/09/2013 |
| Vermilion Parish, Louisiana | Mortgage and Conveyance records at File No. 2013009370 | 9/09/2013 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in the Non-required/Adjudication files for the following 162 lease files: OCS-00072, OCS-00073, OCS-00310, OCS-00434, OCS-00438, OCS-00479, OCS-00487, OCS-00495, OCS-00518, OCS-00541, OCS-00593, OCS-00680, OCS-00759, OCS-00760, OCS-00777, OCS-00778, OCS-G 0932, OCS-G 01083, OCS-G 01084, OCS-G 01192, OCS-G 01216, OCS-G 01261, OCS-G 01269, OCS-G 01477, OCS-G 01568, OCS-G 01569, OCS-G 01610, OCS-G 01860, OCS-G 01874, OCS-G 01901, OCS-G 01966, OCS-G 01967, OCS-G 01972, OCS-G 01989, OCS-G 02062, OCS-G 02111, OCS-G 02115, OCS-G 02116, OCS-G 02118, OCS-G 02127, OCS-G 02136, OCS-G 02274, OCS-G 02275, OCS-G 02278, OCS-G 02388, OCS-G 02391, OCS-G 02393, OCS-G 02404, OCS-G 02434, OCS-G 02439, OCS-G 02572, OCS-G 02600, OCS-G 02608, OCS-G 02613, OCS-G 02721, OCS-G 02722, OCS-G 02750, OCS-G 02754, OCS-G 02757, OCS-G 02819, OCS-G 02825, OCS-G 02826, OCS-G 02857, OCS-G 02900, OCS-G 02934, OCS-G 03171, OCS-G 03241, OCS-G 03251, OCS-G 03256, OCS-G 03265, OCS-G 03332, OCS-G 03587, OCS-G 03811, OCS-G 03959, OCS-G 04000, OCS-G 04243, OCS-G 04421, OCS-G 04453, OCS-G 04537, OCS-G 04895, OCS-G 05286, OCS-G 05370, OCS-G 05438, OCS-G 05687, OCS-G 06884, OCS-G 07799, OCS-G 08640, OCS-G 08641, OCS-G 09383, OCS-G | 9/05/2013 |

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| | 09384, OCS-G 09386, OCS-G 09387, OCS-G 10924, OCS-G 11243, OCS-G 11454, OCS-G 11455, OCS-G 11553, OCS-G 11983, OCS-G 12355, OCS-G 12358, OCS-G 12497, OCS-G 12886, OCS-G 13560, OCS-G 13563, OCS-G 13645, OCS-G 13673, OCS-G 13850, OCS-G 13943, OCS-G 13944, OCS-G 14103, OCS-G 14193, OCS-G 14427, OCS-G 14456, OCS-G 14585, OCS-G 15141, OCS-G 15156, OCS-G 15158, OCS-G 15212, OCS-G 15241, OCS-G 15242, OCS-G 15347, OCS-G 15349, OCS-G 15436, OCS-G 16320, OCS-G 16353, OCS-G 16461, OCS-G 16549, OCS-G 17124, OCS-G 17133, OCS-G 17842, OCS-G 18184, OCS-G 18192, OCS-G 19760, OCS-G 19839, OCS-G 19843, OCS-G 19935, OCS-G 20605, OCS-G 20623, OCS-G 21553, OCS-G 21683, OCS-G 22219, OCS-G 22505, OCS-G 23180, OCS-G 23193, OCS-G 23740, OCS-G 23840, OCS-G 25008, OCS-G 25033, OCS-G 25524, OCS-G 25872, OCS-G 26554, OCS-G 27824, OCS-G 31353, OCS-G 32240, OCS-G 32241, OCS-G 32284, OCS-G 32783, OCS-G 32784, OCS-G 33389, OCS-G 33390, OCS-G 33397, and in the following pipeline 50 right-of-way files: OCS-00877, OCS-G 01468, OCS-G 01686A, OCS-G 01693, OCS-G 03345, OCS-G 03358, OCS-G 04059, OCS-G 04335, OCS-G 04356, OCS-G 04372, OCS-G 06550, OCS-G 08937, OCS-G 09319, OCS-G 09323, OCS-G 10398, OCS-G 13407, OCS-G 13425, OCS-G 13507, OCS-G 14074, OCS-G 15655, OCS-G 15699, OCS-G 16062, OCS-G 17722, OCS-G 19670, OCS-G 20562, OCS-G 21275, OCS-G 21475, OCS-G 22117, OCS-G 22380, OCS-G 22407, OCS-G 22452, OCS-G 22453, OCS-G 22454, OCS-G 22455, OCS-G 23717, OCS-G 24257, OCS-G 24291, OCS-G 24637, OCS-G 25300, OCS-G 25329, OCS-G 25395, OCS-G 25396, OCS-G 25422, OCS-G 25492, OCS-G 25493, OCS-G 26884, OCS-G 26885, OCS-G 28281, OCS-G 28557,OCS-G 28996 | |

18. UCC-3 financing statement assignments (assigning financing statements for Black Elk Energy Offshore Operations, LLC as debtor) from Capital One, N.A. as assignor to White Elk LLC as assignee, filed as follows:

| Jurisdiction | UCC File No. for UCC-1 | File Date for UCC-1 | UCC File No. for UCC-3 | File Date for UCC-3 |
|---|---|---|---|---|
| Plaquemines Parish, Louisiana | 38-11-2338 | 6/03/2011 | 38-13-1235, File No. 2013-00003983 | 9/06/2013 |

| Plaquemines Parish, Louisiana | 38-11-2098 | 12/29/2010 | 38-13-1237, File No. 2013-00003984 | 9/06/2013 |
| Texas Secretary of State | UCC-1 10-0036853339 | 12/27/2010 | 13-00283698, Doc #500119990001 | 09/05/2013 |

19. UCC-3 financing statement assignment (assigning financing statement for Black Elk Energy Offshore Operations, LLC as debtor as filed with the Bureau of Ocean Energy Management and Regulatory Enforcement on December 30, 2010) from Capital One, N.A. as assignor to White Elk LLC as assignee, filed as follows:

| Jurisdiction | Files | File Date for UCC-3 |
|---|---|---|
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in the Non-required/Adjudication files for the following 107 leases: OCS-00072, OCS-00073, OCS-00438, OCS-00479, OCS-00487, OCS-00495, OCS-00518, OCS-00680, OCS-00777, OCS-00778, OCS-G 01083, OCS-G 01084, OCS-G 01192, OCS-G 01216, OCS-G 01261, OCS-G 01269, OCS-G 01568, OCS-G 01569, OCS-G 01610, OCS-G 01860, OCS-G 01874, OCS-G 01901, OCS-G 01966, OCS-G 01967, OCS-G 01989, OCS-G 02062, OCS-G 02111, OCS-G 02116, OCS-G 02136, OCS-G 02388, OCS-G 02391, OCS-G 02393, OCS-G 02434, OCS-G 02439, OCS-G 02572, OCS-G 02600, OCS-G 02608, OCS-G 02613, OCS-G 02721, OCS-G 02722, OCS-G 02750, OCS-G 02754, OCS-G 02757, OCS-G 02819, OCS-G 02825, OCS-G 02826, OCS-G 02934, OCS-G 03241, OCS-G 03251, OCS-G 03256, OCS-G 03265, OCS-G 03811, OCS-G 03959, OCS-G 04243, OCS-G 04421, OCS-G 04895, OCS-G 05286, OCS-G 05438, OCS-G 05687, OCS-G 06884, OCS-G 07799, OCS-G 10924, OCS-G 12886, OCS-G 13560, OCS-G 13645, OCS-G 13673, OCS-G 13850, OCS-G 13897, OCS-G 13943, OCS-G 13944, OCS-G 14193, OCS-G 14427, OCS-G 14456, OCS-G 15156, OCS-G 15158, OCS-G 15241, OCS-G 15242, OCS-G 15436, OCS-G 16320, OCS-G 16353, OCS-G 16461, OCS-G 16549, OCS-G 17133, OCS-G 18184, OCS-G 18192, OCS-G 19760, OCS-G 19839, OCS-G 19843, OCS-G 19935, OCS-G 21553, OCS-G 21683, OCS-G 22219, OCS-G 23180, OCS-G 25286, OCS-G 25008, OCS-G 25033, OCS-G 26554, OCS-G 27824, OCS-G 31353, OCS-G 32240, OCS-G 32241, OCS-G 32284, OCS-G 32783, OCS-G 32784, OCS-G 33389, OCS-G 33390 and OCS-G 33397

and also in pipeline right-of-way files for the following 28 rights-of-way:

OCS-00877, OCS-G 01468, OCS-G 01693, OCS-G 03345, OCS-G 04059, OCS-G 04335, OCS-G 04356, OCS-G 09323, OCS-G 13425, OCS-G 14074, OCS-G 16062, OCS-G 01686A, OCS-G 17722, OCS-G 19670, OCS-G 22407, OCS-G 22453, OCS-G 22454, OCS-G 22455, OCS-G 24257, OCS-G 25329, OCS-G 25395, OCS-G 25396, OCS-G 25422, OCS-G 25492, OCS-G 26884, OCS-G 26885, OCS-G 28557 and OCS-G 28996 | 9/06/2013 |

20. UCC-3 financing statement assignment (assigning financing statement for Black Elk Energy Offshore Operations, LLC as debtor as filed with the Bureau of Ocean Energy Management and Regulatory Enforcement on June 3, 2011) from Capital One, N.A. as assignor to White Elk LLC as assignee, filed as follows:

| Jurisdiction | Files | File Date for UCC-3 |
|---|---|---|
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | See BOEMRE information in *Item 9)above* for a list of the same <u>61 leases</u> and <u>22 pipeline rights-of-way</u>. | 9/06/2013 |

21. <u>Mortgage, Deed of Trust, Collateral Assignment, Security Agreement and Financing Statement</u> dated October 29, 2009 by and between Black Elk Energy Offshore Operations, LLC by and between W&T Offshore, Inc. and W. Reid Lea, as Trustee for the Benefit of W&T Offshore, Inc.:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Brazoria County, TX | File No. 2009048952 | 11/03/2009 |
| Cameron Parish, LA | File No. 317090 | 11/03/2009 |
| Chambers County, TX | 2009 49332, Bk. OR, Vol. 1151, Pg. 606 | 11/03/2009 |
| Galveston County, TX | Instrument No. 2009060704 | 11/03/2009 |
| Iberia Parish, LA | File No. 2009-0012934, Bk. 1347, Pg. 691 | 11/03/2009 |
| Jefferson Parish, LA | Instrument No. 10947138, Bk. 4427, Folio 615 | 11/04/2009 |
| Jefferson County, TX | File No. 2009041728 | 11/03/2009 |
| Lafourche Parish, LA | Instrument No. 1081122, Bk. 1406, Pg. 237 | 11/03/2009 |
| Matagorda County, TX | File No. 096602 | 11/03/2009 |
| Plaquemines Parish, LA | File No. 200900004738, Bk. 531, Pg. 761 (Mtg.) & Bk. 1214, Pg 205 (Conveyance) | 11/04/2009 |
| St. Bernard Parish, LA | File No. 537047, Bk. 1577, Pg. 289 | 11/03/2009 |
| St. Mary Parish, LA | File No. 296820, Bk. 1222, Pg. 448 | 11/03/2009 |
| Terrebonne Parish, LA | File No. 1334787, Bk. 2226, Pg. 723 | 11/03/2009 |
| Vermilion Parish, LA | File No. 20911269 | 11/03/2009 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in Lease Nos.: OCS-G 01568, G 01569, G 02388, G 02434, G 02750, G 02754, G 04421, G 05687, G 13560, G 14456, 14878, G 15156, G 15158, G | 11/12/2009 |

| | | |
|---|---|---|
| | 16320, and G 23180 | |
| Texas General Land Office | TX State Leases 69136 & 69137 | ? |

22. <u>UCC-1 Financing Statement</u> with Black Elk Energy Offshore Operations, LLC, as Debtor, and W&T Offshore, Inc., as Secured Party, with copy of *Item 21) above* attached as Schedule A:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Texas Secretary of State | File No. UCC-1 #09-0030915603 | 11/05/2009 |
| Cameron Parish, LA | UCC-1 #12-317092 | 11/03/2009 |
| Plaquemines Parish, LA | UCC-1 #38-09-1463 | 11/04/2009 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | UCC-1: filed in Lease Nos. OCS-G 01568, G 01569, G 02388, G 02434, G 02750, G 02754, G 04421, G 05687, G 13560, G 14456, G 14878, G 15156, G 15158, G 16320, G 23180 | 11/12/2009 |

23. <u>First Amendment to Mortgage, Deed of Trust, Collateral Assignment, Security Agreement and Financing Statement</u> dated effective November 23, 2010 by and between Black Elk Energy Offshore Operations LLC, Mortgagor, and W&T Offshore, Inc. and W. Reid Lea, as Trustee for the Benefit of W&T Offshore, Inc.:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Brazoria County, TX | File No. 2010050511, Bk. 107, Pg 72 | 11/29/2010 |
| Cameron Parish, LA | File No. 321052 | 11/29/2010 |
| Chambers County, TX | File No: 201061444, Bk. OR, Volume 1235, Page 694 | 11/29/2010 |
| Galveston County, TX | Instrument No. 20100058910 | 11/29/2010 |
| Iberia Parish, LA | File No. 2010-00012914 | 11/29/2010 |
| Jefferson Parish, LA | File No. 11051008, MOB 4468, Page 216 | 12/06/2010 |
| Jefferson County, TX | File No. 2010043386 | 11/29/2010 |
| Lafourche Parish, LA | File No. 1103173, Bk. 1465 Pg., 516 (Mtg.) | 11/30/2010 |
| Matagorda County, TX | File No. 2010106270 | 11/29/2010 |
| Plaquemines Parish, LA | 201000004920, Bk. 554, Pg. 228 (Mtg.) & Bk. 1236, Pg. 333 (Conveyance) & Bk. 3810, Pg. 1728 (UCC) | 11/30/2010 |
| St. Bernard Parish, LA | File No. 547360, MOB 1616, Page 200 | 11/29/2010 |
| St. Mary Parish, LA | File No. 303168, MOB 1263, Page 362 | 11/29/2010 |
| Terrebonne Parish, LA | File No. 1361762, Bk. 2326, Pg. 336 | 11/29/2010 |
| Vermilion Parish, LA | File No. 21012495 | 11/29/2010 |
| Bureau of Ocean Energy Management, Regulation, and | Lease Nos. OCS-G 00072, G 00073, G 00438, G 00479, G 01216, G 01874, G | 11/29/2010 |

| | | |
|---|---|---|
| Enforcement, Gulf of Mexico Region – Non-Required Files | 01989, G 02136, G 02388, G 02393, G 02572, G 02721, G 02722, G 02750, G 02754, G 02757, G 02934, G 03811, G 04243, G 04421, G 04895, G 05438, G 07799, G 12886, G 14193, G 14427, G 14456, G 15241, G 15242, G 16320, G 16461, G 18184, G 18192 and G 25033 | |

24. <u>UCC-3 Financing Statement</u> with Black Elk Energy Offshore Operations LLC, as Debtor, and W&T Offshore, Inc. and W. Reid Lee, as Trustee, as Secured Party with *Item 23) above* attached as Schedule:

| Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Plaquemines Parish, LA | UCC-3 # 38-10-1728, File No. 2010-00004920 | 11/30/2010 |

25. <u>Second Amendment to Mortgage, Deed of Trust, Collateral Assignment, Security Agreement and Financing Statement</u> dated effective as of December 24, 2010 by Black Elk Energy Offshore Operations, LLC by and between W&T Offshore, Inc. and W. Reid Lea, as Trustee for the benefit of W&T Offshore, Inc.:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Brazoria County, TX | File No. 2011022972 | 6/07/2011 |
| Cameron Parish, LA | File No. 322797 | 6/07/2011 |
| Chambers County, TX | File No. 201166308; Book OR Vol. 1270; Pages 352-367 | 6/07/2011 |
| Galveston County, TX | Instrument No. 2011028607 | 6/07/2011 |
| Iberia Parish, LA | File No. 2011-00005662, Book 1437; Page 35 | 6/07/2011 |
| Jefferson Parish, LA | File No. 11123267, MB 4487, Pg. 870 | 6/07/2011 |
| Jefferson County, TX | File No. 2011018686 | 6/07/2011 |
| Lafourche Parish, LA | File No. 1113824, Bk. 1493, Pg. 779 | 6/07/2011 |
| Matagorda County, TX | File No. 2011113137 | 6/07/2011 |
| Plaquemines Parish, LA | File No. 201100002306, Bk. 566, Pg. 624 (Mtg.) & Bk. 1247, Pg. 506 (Conveyance) | 6/07/2011 |
| St. Bernard Parish, LA | File No. 552765, MOB 1634, Page 32 | 6/07/2011 |
| St. Mary Parish, LA | File No. 306279, MOB 1283, Page 357 | 6/07/2011 |
| Terrebonne Parish, LA | File No. 1374937, Bk. 2373, Pg. 454 | 6/07/2011 |
| Vermilion Parish, LA | File No. 21105948-MO | 6/07/2011 |
| Bureau of Ocean Energy Management, Regulation, and Enforcement, Gulf of Mexico Region – Non-Required Files | Filed in the non-required/adjudication files for the following leases, OCS-00072, OCS-00073, OCS-00438, OCS-004769, OCS-G 01216, G 01693, G 01874, G 01989, G 02136, G 02388, G 02393, G 02572, G 02721, | 6/07/2011 |

|  | G 02722, G 02750, G 02754, G 02757, G 03811, G 04059, G 04243, G 04356, G 04421, G 04895, G 05438, G 07799, G 09323, G 13425, G 14074, G 14193, G 14427, G 14456, G 15241, G 15242, G 16062, G 16320, G 16461, G 17722, G 18184, G 18192, G 19670, G 22407, G 22453, G 22454, G 22455, G 24257, G 25033, G 26884, G 26885, and G 28557 |  |

26.    Assignment of Mortgages dated effective February 20, 2014 from White Elk LLC to BAM Administrative Services LLC:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Cameron Parish, Louisiana | File No. 332149 (Mortgages and Conveyance) | 03/11/2014 |
| Iberia Parish, Louisiana | MOB 1596, Page 782, COB 1553, Page 55, all under File No. 2014-00002106 | 03/10/2014 |
| Lafourche Parish, Louisiana | MOB 1658, Page 15, COB 1959, Page 118, both under Instrument No. 1173743 | 03/10/2014 |
| Jefferson Parish, Louisiana | CB 3328, Page 812 and MB 4608, Page 431, File No. 11409411 | 03/10/2014 |
| Plaquemines Parish, Louisiana | MOB 638, Page 652; COB 1313, Page 52; and UCC Book 3814, Page 606, all under File No. 2014-00000974 | 03/10/2014 |
| St. Bernard Parish, Louisiana | MOB 1726, Page 85 and COB 1087, Page 702, all under File No. 579915 | 03/10/2014 |
| St. Mary Parish, Louisiana | MOB 1395, Page 194, COB 291, Page 322, both under File No. 318519 | 03/11/2014 |
| Terrebonne Parish, Louisiana | COB 2369, Page 83, File No. 1448863 | 03/11/2014 |
| Vermilion Parish, Louisiana | File No. 2014002419 (Mortgage and Conveyance) | 03/10/2014 |
| Bureau of Ocean Energy Management | filed in the BOEM's non-required/adjudication files for the following 149 leases:[2] OCS-00072, OCS-00073, OCS-00310, OCS-00434, OCS-00438, OCS-00479, OCS-00487, OCS-00495, OCS-00518, OCS-00541, OCS-00593, OCS-00680, OCS-00759, OCS-00760, OCS-00777, OCS-00778, OCS-G 00932, OCS-G 01083, OCS-G 01084, OCS-G 01192, OCS-G 01216, OCS-G 01261, OCS-G 01269, OCS-G 01477, OCS-G 01568, OCS-G 01569, OCS-G 01860, OCS-G 01874, OCS-G 01972, OCS-G 01989, OCS-G 02062, OCS-G 02127, OCS-G 02136, OCS-G 02274, OCS-G 02275, OCS-G 02278, OCS-G 02388, OCS-G 02391, OCS-G 02393, OCS-G 02404, OCS-G 02434, OCS-G 02439, OCS-G 02572, OCS-G 02600, OCS-G 02721, OCS-G 02722, OCS-G 02750, OCS-G 02754, OCS-G 02757, OCS-G 02819, OCS-G 02825, OCS-G 02826, OCS-G 02857, OCS-G 02900, OCS-G 02934, | 03/11/2014 |

---

[2]      Although the underlying mortgage instruments being assigned were also filed in the BOEM lease files for the nine leases OCS-G 02111, OCS-G 02115, OCS-G 02116, OCS-G 02118, OCS-G 02608, OCS-G 02613, OCS-G 03332, OCS-G 15347 and OCS-G 15349, the mortgagor's interests in those nine leases were released by partial release filed on March 28, 2013 in the BOEM lease files for those same nine leases.  Further, although the underlying mortgage instruments being assigned were also filed in the BOEM lease files for the four leases OCS-G 01610, OCS-G 01901, OCS-G 01966 and OCS-G 01967, the mortgagor's interests in those four leases were released by partial release filed on November 21, 2013 in the BOEM lease files for those same four leases.]

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| | OCS-G 03171, OCS-G 03241, OCS-G 03251, OCS-G 03256, OCS-G 03265, OCS-G 03587, OCS-G 03811, OCS-G 03959, OCS-G 04000, OCS-G 04243, OCS-G 04421, OCS-G 04453, OCS-G 04537, OCS-G 04895, OCS-G 05286, OCS-G 05370, OCS-G 05438, OCS-G 05687, OCS-G 06884, OCS-G 07799, OCS-G 08640, OCS-G 08641, OCS-G 09383, OCS-G 09384, OCS-G 09386, OCS-G 09387, OCS-G 10924, OCS-G 11243, OCS-G 11454, OCS-G 11455, OCS-G 11553, OCS-G 11983, OCS-G 12355, OCS-G 12358, OCS-G 12497, OCS-G 12886, OCS-G 13560, OCS-G 13563, OCS-G 13645, OCS-G 13673, OCS-G 13850, OCS-G 13897, OCS-G 13943, OCS-G 13944, OCS-G 14103, OCS-G 14193, OCS-G 14427, OCS-G 14456, OCS-G 14585, OCS-G 15141, OCS-G 15156, OCS-G 15158, OCS-G 15212, OCS-G 15241, OCS-G 15242, OCS-G 15436, OCS-G 16320, OCS-G 16353, OCS-G 16461, OCS-G 16549, OCS-G 17124, OCS-G 17133, OCS-G 17842, OCS-G 18184, OCS-G 18192, OCS-G 19760, OCS-G 19839, OCS-G 19843, OCS-G 19935, OCS-G 20605, OCS-G 20623, OCS-G 21553, OCS-G 21683, OCS-G 22219, OCS-G 22505, OCS-G 23180, OCS-G 23193, OCS-G 23740, OCS-G 23840 , OCS-G 25008, OCS-G 25033, OCS-G 25524, OCS-G 25872, OCS-G 26554, OCS-G 27824, OCS-G 31353, OCS-G 32240, OCS-G 32241, OCS-G 32284, OCS-G 32783, OCS-G 32784, OCS-G 33389, OCS-G 33390 and OCS-G 33397; and in the BOEM's pipeline right-of-way files for the following 50 rights-of-way: OCS-00877, OCS-G 01468, OCS-G 01686A, OCS-G 01693, OCS-G 03345, OCS-G 03358, OCS-G 04059, OCS-G 04335, OCS-G 04356, OCS-G 04372, OCS-G 06550, OCS-G 08937, OCS-G 09319, OCS-G 09323, OCS-G 10398, OCS-G 13407, OCS-G 13425, OCS-G 13507, OCS-G 14074, OCS-G 15655, OCS-G 15699, OCS-G 16062, OCS-G 17722, OCS-G 19670, OCS-G 20562, OCS-G 21275, OCS-G 21475, OCS-G 22117, OCS-G 22380, OCS-G 22407, OCS-G 22452, OCS-G 22453, OCS-G 22454, OCS-G 22455, OCS-G 23717, OCS-G 24257, OCS-G 24291, OCS-G 24637, OCS-G 25300, OCS-G 25329, OCS-G 25395, OCS-G 25396, OCS-G 25422, OCS-G 25492, OCS-G 25493, OCS-G 26884, OCS-G 26885, OCS-G 28281, OCS-G 28557and OCS-G 28996 | |
| Aransas County, Texas | | 03/ /2014 |
| Brazoria County, Texas | | 03/ /2014 |
| Calhoun County, Texas | | 03/ /2014 |
| Chambers County, Texas | | 03/ /2014 |
| Galveston County, Texas | | 03/ /2014 |
| Jefferson County, Texas | | 03/ /2014 |
| Kenedy County, Texas | | 03/ /2014 |
| Kleberg County, Texas | | 03/ /2014 |
| Matagorda County, Texas | | 03/ /2014 |
| Nueces County, Texas | | 03/ /2014 |
| San Patricio County, Texas | | 03/ /2014 |
| Texas General Land Office | filed in its lease files for the following 18 leases: MF057686, MF068972, MF069064, MF069136, MF069137, MF069138, MF090594, MF102889, MF106420, MF107580, M96146, M96147, M100410, M100411, M100412, M100413, | 03/ /2014 |

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
|  | M100414 and M101898 |  |

27.   UCC-3 assignment from White Elk LLC to BAM Administrative Services LLC for Louisiana UCC financing statement 38-10-2098:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Plaquemines Parish, Louisiana | UCC No. 38-14-0600, File No. 2014-00000958 | 03/10/2014 |
| Bureau of Ocean Energy Management | filed in the BOEM's non-required/adjudication files for the following 99 leases:[3]<br>OCS-00072, OCS-00073, OCS-00438, OCS-00479, OCS-00487, OCS-00495, OCS-00518, OCS-00680, OCS-00777, OCS-00778, OCS-G 01083, OCS-G 01084, OCS-G 01192, OCS-G 01216, OCS-G 01261, OCS-G 01269, OCS-G 01568, OCS-G 01569, OCS-G 01860, OCS-G 01874, OCS-G 01989, OCS-G 02062, OCS-G 02136, OCS-G 02388, OCS-G 02391, OCS-G 02393, OCS-G 02434, OCS-G 02439, OCS-G 02572, OCS-G 02600, OCS-G 02721, OCS-G 02722, OCS-G 02750, OCS-G 02754, OCS-G 02757, OCS-G 02819, OCS-G 02825, OCS-G 02826, OCS-G 02934, OCS-G 03241, OCS-G 03251, OCS-G 03256, OCS-G 03265, OCS-G 03811, OCS-G 03959, OCS-G 04243, OCS-G 04421, OCS-G 04895, OCS-G 05286, OCS-G 05438, OCS-G 05687, OCS-G 06884, OCS-G 07799, OCS-G 10924, OCS-G 12886, OCS-G 13560, OCS-G 13645, OCS-G 13673, OCS-G 13850, OCS-G 13897, OCS-G 13943, OCS-G 13944, OCS-G 14193, OCS-G 14427, OCS-G 14456, OCS-G 15156, OCS-G 15158, OCS-G 15241, OCS-G 15242, OCS-G 15436, OCS-G 16320, OCS-G 16353, OCS-G 16461, OCS-G 16549, OCS-G 17133, OCS-G 18184, OCS-G 18192, OCS-G 19760, OCS-G 19839, OCS-G 19843, OCS-G 19935, OCS-G 21553, OCS-G 21683, OCS-G 22219, OCS-G 23180, OCS-G 23840, OCS-G 25008, OCS-G 25033, OCS-G 26554, OCS-G 27824, OCS-G 31353, OCS-G 32240, OCS-G 32241, OCS-G 32284, OCS-G 32783, OCS-G 32784, OCS-G 33389, OCS-G 33390 and OCS-G 33397;<br>and in the BOEM's pipeline right-of-way files for the following 28 rights-of-way:<br>OCS-00877, OCS-G 01468, OCS-G 01693, OCS-G 03345, OCS-G 04059, OCS-G 04335, OCS-G 04356, OCS-G 09323, OCS-G 13425, OCS-G 14074, OCS-G 16062, OCS-G 01686A, OCS-G 17722, OCS-G 19670, OCS-G 22407, OCS-G 22453, OCS-G 22454, OCS-G 22455, OCS-G 24257, OCS-G 25329, OCS-G 25395, OCS-G 25396, OCS-G 25422, OCS-G 25492, OCS-G 26884, OCS-G 26885, OCS-G 28557 and OCS-G 28996 | 03/11/2014 |

---

[3]     Although the underlying UCC-1 financing statement was also filed in the BOEM lease files for the four leases OCS-G 02111, OCS-G 02116, OCS-G 02608 and OCS-G 02613, the debtor's collateral relating to those four leases were released by UCC-3 amendment filed on March 28, 2013 in the BOEM lease files for those same four leases.  Further, although the underlying UCC-1 financing statement was also filed in the BOEM lease files for the four leases OCS-G 01610, OCS-G 01901, OCS-G 01966 and OCS-G 01967, the debtor's collateral relating to those four leases was released by UCC-3 amendment filed on November 21, 2013 in the BOEM lease files for those same four leases.

28.     UCC-3 assignment from White Elk LLC to BAM Administrative Services LLC for Louisiana UCC financing statement 38-11-2338:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Plaquemines Parish, Louisiana | UCC No. 38-14-0603, File No. 2014-00000959 | 03/10/2014 |
| Bureau of Ocean Energy Management | filed in the BOEM's non-required/adjudication files for the following 52 leases:4<br>OCS-00310, OCS-00434, OCS-00541, OCS-00593, OCS-00759, OCS-00760, OCS-G 00932, OCS-G 01477, OCS-G 01972, OCS-G 02127, OCS-G 02274, OCS-G 02275, OCS-G 02278, OCS-G 02388, OCS-G 02404, OCS-G 02857, OCS-G 02900, OCS-G 03171, OCS-G 03587, OCS-G 04000, OCS-G 04453, OCS-G 04537, OCS-G 05370, OCS-G 08640, OCS-G 08641, OCS-G 09383, OCS-G 09384, OCS-G 09386, OCS-G 09387, OCS-G 11243, OCS-G 11454, OCS-G 11455, OCS-G 11553, OCS-G 11983, OCS-G 12355, OCS-G 12358, OCS-G 12497, OCS-G 13563, OCS-G 14103, OCS-G 14585, OCS-G 15141, OCS-G 15212, OCS-G 17124, OCS-G 17133, OCS-G 17842, OCS-G 20605, OCS-G 20623, OCS-G 22505, OCS-G 23193, OCS-G 23740, OCS-G 25524 and OCS-G 25872;<br>and in the BOEM's pipeline right-of-way files for the following 22 rights-of-way:<br>OCS-G 03358, OCS-G 04372, OCS-G 06550, OCS-G 08937, OCS-G 09319, OCS-G 10398, OCS-G 13407, OCS-G 13507, OCS-G 15655, OCS-G 15699, OCS-G 20562, OCS-G 21275, OCS-G 21475, OCS-G 22117, OCS-G 22380, OCS-G 22452, OCS-G 23717, OCS-G 24291, OCS-G 24637, OCS-G 25300, OCS-G 25493 and OCS-G 28281 | 03/11/2014 |

29     UCC-3 assignment from White Elk LLC to BAM Administrative Services LLC for Texas UCC financing statement 10-0036853339:

| Recording Jurisdiction | Recording Information | Date Filed |
|---|---|---|
| Texas Secretary of State | UCC No. 14-00074173 [Doc. # 532996960002] | 03/10/2014 |

OCS-G 01967, the debtor's collateral relating to those four leases was released by UCC-3 amendment filed on November 21, 2013 in the BOEM lease files for those same four leases.

---

4       Although the underlying UCC-1 financing statement was also filed in the BOEM lease files for the four leases OCS-G 02111, OCS-G 02116, OCS-G 02608 and OCS-G 02613, the debtor's collateral relating to those four leases were released by UCC-3 amendment filed on March 28, 2013 in the BOEM lease files for those same four leases.  Further, although the underlying UCC-1 financing statement was also filed in the BOEM lease files for the four leases OCS-G 01610, OCS-G 01901, OCS-G 01966 and OCS-G 01967, the debtor's collateral relating to those four leases was released by UCC-3 amendment filed on November 21, 2013 in the BOEM lease files for those same four leases.

Execution Version

**Schedule 7.6**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## <u>Operation of Business</u>

**None.**

Execution Version

**Schedule 7.7**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

**Preference Right**

| AREA/BLOCK | LEASE | CONTRACT DATE | CONTRACT | CONSENT TO ASSIGN | PREFERENTIAL RIGHTS | PREFERENTIAL RIGHTS/CONSENT OWNERS |
|---|---|---|---|---|---|---|
| Eugene Island 53 | 00479 | 6/1/1990 | OPERATING AGREEMENT DATED JUNE 1, 1990, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY AND SANDEFER OFFSHORE COMPANY COVERING OCS-G 479, BLOCK 53, EUGENE ISLAND. | Yes | N/A | Apache Corporation |
| Eugene Island 107 | G15241 | 9/1/1995 | OFFSHORE DEVELOPMENT AREA OPERATING AGREEMENT DATED 9/1/1995, BY AND BETWEEN NORCEN EXPLORER, INC, AS OPERATOR, AND DALEN RESOURCES OIL & GAS CO. AND GLOBAL NATURAL RESOURCES OF NEVADA ET AL, AS NON-OPERATOR | N/A | 20 Days | EnVen Energy Ventures, LLC / Apache Corporation / Tammany Oil & Gas LLC |
| Eugene Island 118 | G15242 | 7/1/1995 | OFFSHORE DEVELOPMENT AREA OPERATING AGREEMENT DATED 7/1/1995, BY AND BETWEEN NORCEN EXPLORER, INC, AS OPERATOR, AND DALEN RESOURCES OIL & GAS CO. AND GLOBAL NATURAL RESOURCES OF NEVADA ET AL, AS NON-OPERATOR | N/A | 20 Days | Apache Corporation |

Execution Version

| AREA/BLOCK | LEASE | CONTRACT DATE | CONTRACT | CONSENT TO ASSIGN | PREFERENTIAL RIGHTS | PREFERENTIAL RIGHTS/CONSENT OWNERS |
|---|---|---|---|---|---|---|
| Eugene Island 175 | 00438 | 11/1/1995 | OFFSHORE OPERATING AGREEMENT EFFECTIVE NOVEMBER 1, 1995, BY AND BETWEEN VASTAR RESOURCES, INC. AND MERIDIAN OIL OFFSHORE INC, AS AMENDED. | N/A | 30 Days | Apache Corporation |
| Galveston Area 210 | G25524 | 5/1/2005 | PRODUCTION HANDLING AGREEMENT DATED 5/1/2005 BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, LLC | Yes | N/A | Apache Shelf, Inc. |
| Galveston Area 210 | G25524 | 10/7/2004 | OFFSHORE OPERATING AGREEMENT DATED OCTOBER 7, 2004, BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C., AS OPERATOR, AND THE HOUSTON EXPLORATION COMPANY, AS NON-OPERATOR | N/A | 30 Days | Apache Shelf, Inc. |
| Galveston Area 210 | G25524 | 1/1/2005 | OFFSHORE OPERATING AGREEMENT DATED 1/1/2005, BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C., AS OPERATOR, AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY, AS NON-OPERATOR | N/A | 30 Days | Apache Shelf, Inc. |
| Grand Isle 110 & Grand Isle 116 | G13944 | 12/1/1993 | OFFSHORE OPERATING AGREEMENT DATED 12/1/1993, BETWEEN ANADARKO PETROLEUM CORPORATION AND PHILLIPS PETROLEUM COMPANY | N/A | 30 Days | Apache Corporation |

-124-

Execution Version

| AREA/BLOCK | LEASE | CONTRACT DATE | CONTRACT | CONSENT TO ASSIGN | PREFERENTIAL RIGHTS | PREFERENTIAL RIGHTS/CONSENT OWNERS |
|---|---|---|---|---|---|---|
| High Island A-382 | G02757 | 7/1/1974 | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL PRODUCING TEXAS AND NEW MEXICO INC. ET AL., AS AMENDED JANUARY 1, 1989. | N/A | 15 Days | Apache Corporation |
| | | | | | | The Northwestern Mutual Life Insurance Company |
| High Island A-573 | G02393 | 8/1/1973 | OFFSHORE OPERATING AGREEMENT DATED FEBRUARY 13, 1974, AS AMENDED 7/21/75, BY AND BETWEEN CNG PRODUCING COMPANY, EL PASO NATURAL GAS COMPANY & AMERICAN PETROFINA COMPANY OF TEXAS, AS AMENDED. | N/A | 15 Days | Apache Corporation |
| | | | | | | The Northwestern Mutual Life Insurance Company |
| High Island A-595 | G02721 | 7/1/1974 | OPERATING AGREEMENT DATED 7/1/1974 BETWEEN MOBIL OIL CORP, UNION OIL CO OF CALIFORNIA, TEXAS GAS EXPLORATION CO, AMOCO PRODUCTION CO AND NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY. | N/A | 15 Days | Apache Corporation |
| | | | | | | The Northwestern Mutual Life Insurance Company |
| High Island A-596 | G02722 | 7/1/1974 | OPERATING AGREEMENT DATED 7/1/1974 BETWEEN MOBIL OIL CORP, UNION OIL CO OF CALIFORNIA, TEXAS GAS EXPLORATION CO, AMOCO PRODUCTION CO AND NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY. | N/A | 15 Days | Apache Corporation |
| | | | | | | The Northwestern Mutual Life Insurance Company |

Case 20-33948 Document 983-1 Filed in TXSB on 03/11/21 Page 203 of 208

Execution Version

| AREA/BLOCK | LEASE | CONTRACT DATE | CONTRACT | CONSENT TO ASSIGN | PREFERENTIAL RIGHTS | PREFERENTIAL RIGHTS/CONSENT OWNERS |
|---|---|---|---|---|---|---|
| Mississippi Canyon 110 | G18192 | 2/1/1998 | OPERATING AGREEMENT EFFECTIVE FEBRUARY 1, 1998, BY AND BETWEEN SHELL OFFSHORE, INC. OPERATOR. AND WESTPORT OIL & GAS COMPANY, INC, ET AL, NON-OPERATOR. | Yes | N/A | Apache Corporation |
| | | | | | | Stone Energy Offshore, L.L.C. |
| | | | | | | Marubeni Oil & Gas (USA) Inc. |
| South Marsh 280 | G14456 | 6/1/1994 | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. | N/A | 20 Days | Apache Corporation |
| Viosca Knoll 779 | G13673 | 11/1/1996 | OFFSHORE OPERATING AGREEMENT DATED 11/1/1996, BETWEEN ELF EXPLORATION, INC. AND COASTAL OIL & GAS CORPORATION, POGO PRODUCING COMPANY AND NIPPON OIL EXPLORATION, U.S.A. LIMITED | 15 Day | N/A | Apache Corporation |
| | | | | | | Marubeni Oil & Gas (USA) Inc. |
| | | | | | | Energy XXI GOM, LLC |
| | | | | | | Total E&P USA, Inc. |
| Viosca Knoll 780 | G06884 | 4/1/1998 | OFFSHORE OPERATING AGREEMENT DATED 4/1/1998 BETWEEN SHELL OFFSHORE, INC., SNYDER OIL CORPORATION, ELF EXPLORATION, INC., POGO PRODUCING COMPANY AND NIPPON OIL EXPLORATION U.S.A. LIMITED | 15 Day | N/A | Apache Corporation |
| | | | | | | Marubeni Oil & Gas (USA) Inc. |
| | | | | | | Energy XXI GOM, LLC |
| | | | | | | EnVen Energy Ventures, LLC |

| AREA/BLOCK | LEASE | CONTRACT DATE | CONTRACT | CONSENT TO ASSIGN | PREFERENTIAL RIGHTS | PREFERENTIAL RIGHTS/CONSENT OWNERS |
|---|---|---|---|---|---|---|
| Viosca Knoll 824 | G15436 | 4/1/1998 | OFFSHORE OPERATING AGREEMENT DATED 11/1/1996, BETWEEN ELF EXPLORATION, INC. AND COASTAL OIL & GAS CORPORATION, POGO PRODUCING COMPANY AND NIPPON OIL EXPLORATION, U.S.A. LIMITED | 15 Day | N/A | Apache Corporation |
| | | | | | | Marubeni Oil & Gas (USA) Inc. |
| | | | | | | Energy XXI GOM, LLC |
| | | | | | | EnVen Energy Ventures, LLC |
| West Cameron 34 | G03251 | 1/1/1989 | CATCO OPERATING AGREEMENT DATED 1/1/1989, BETWEEN CONOCO, INC. AND ATLANTIC RICHFIELD COMPANY, TEXACO PRODUCING INC., CANADIANOXY OFFSHORE PRODUCTION COMPANY AND OXY USA INC. | N/A | 30 Days | Apache Corporation |
| West Cameron 35 | G02819 | 1/1/1989 | CATCO OPERATING AGREEMENT DATED 1/1/1989, BETWEEN CONOCO, INC. AND ATLANTIC RICHFIELD COMPANY, TEXACO PRODUCING INC., CANADIANOXY OFFSHORE PRODUCTION COMPANY AND OXY USA INC. | N/A | 30 Days | Apache Corporation |
| West Cameron 35, West Cameron 66 | G01860 | 1/1/1989 | CATCO OPERATING AGREEMENT DATED 1/1/1989, BETWEEN CONOCO, INC. AND ATLANTIC RICHFIELD COMPANY, TEXACO PRODUCING INC., CANADIANOXY OFFSHORE PRODUCTION COMPANY AND OXY USA INC. | N/A | 30 Days | Apache Corporation |

| AREA/BLOCK | LEASE | CONTRACT DATE | CONTRACT | CONSENT TO ASSIGN | PREFERENTIAL RIGHTS | PREFERENTIAL RIGHTS/CONSENT OWNERS |
|---|---|---|---|---|---|---|
| West Cameron 65 | G02825 | 1/1/1989 | CATCO OPERATING AGREEMENT DATED 1/1/1989, BETWEEN CONOCO, INC. AND ATLANTIC RICHFIELD COMPANY, TEXACO PRODUCING INC., CANADIANOXY OFFSHORE PRODUCTION COMPANY AND OXY USA INC. | N/A | 30 Days | Apache Corporation |
| West Cameron 66 | G02826 | 1/1/1989 | CATCO OPERATING AGREEMENT DATED 1/1/1989, BETWEEN CONOCO, INC. AND ATLANTIC RICHFIELD COMPANY, TEXACO PRODUCING INC., CANADIANOXY OFFSHORE PRODUCTION COMPANY AND OXY USA INC. | N/A | 30 Days | Apache Corporation |
| West Cameron 67 | G03256 | 1/1/1989 | CATCO OPERATING AGREEMENT DATED 1/1/1989, BETWEEN CONOCO, INC. AND ATLANTIC RICHFIELD COMPANY, TEXACO PRODUCING INC., CANADIANOXY OFFSHORE PRODUCTION COMPANY AND OXY USA INC. | N/A | 30 Days | Apache Corporation |
| West Delta 121 | G19843 | 10/1/1995 | OFFSHORE OPERATING AGREEMENT DATED 10/1/1995, BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES, INC. | N/A | 30 Days | Apache Corporation |
| West Delta 122 | G13645 | 10/1/1995 | OFFSHORE OPERATING AGREEMENT DATED 10/1/1995, BETWEEN AMERADA HESS CORPORATION AND VASTAR RESOURCES, INC. | N/A | 30 Days | Apache Corporation |
| Various | Various | 9/14/2009 | Purchase and Sale Agreement between W&T Offshore, Inc. and Black Elk Energy Offshore Operations, LLC | Yes | | W&T Offshore, Inc. |

**Schedule 12.20**

Attached to and made a part of that certain Purchase and Sale Agreement
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Seller
and SandRidge Energy Offshore, LLC, as Purchaser

## **Additional Liens**

|  | **Lien** | **+10% Assump.** | **Total** |
|---|---|---|---|
| 1(a). Grand Isle Shipyard Inc. (ST 53) | 174,301.47 | 17,430.15 | 191,732.00 |
| 1(b) Grand Isle Shipyard Inc. (EI 118) | 34,143.77 | 3,414.38 | 37,558.00 |
| 2. Wood Group PSN, Inc. | 40,176.74 | 4,017.67 | 44,195.00 |

| | |
|---|---|
| **Schedule 12.20 Lien Escrow Deposit** | **273,485.00** |
| Escrow Setup Fee | 500.00 |
| Annual Administration Fee | 3,000.00 |
| **Total Escrow at Closing** | **276,985.00** |

Execution Version

## FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT

**THIS FIRST AMENDMENT TO PURCHASE AND SALE AGREEMENT** (this "**Amendment**") is made and entered into as of the __ day of April, 2014, but is effective as of March 1, 2014, at 7:00 a.m. Central Daylight Time (the "**Effective Time**"), by and between Black Elk Energy Offshore Operations, LLC, a Texas limited liability company ("**Seller**") and SandRidge Energy Offshore, LLC, a Delaware limited liability company ("**Purchaser**"). Seller and Purchaser are sometimes hereinafter referred to individually as a "**Party**" and collectively as the "**Parties**".

**WHEREAS,** The Parties entered into that certain Purchase and Sale Agreement dated as of March 13, 2014 (the "**PSA**") whereby Seller agreed to sell and transfer to Purchaser the Assets, as defined in the PSA. Any capitalized terms used herein which are not otherwise defined herein shall have the meanings given them in the PSA;

**WHEREAS**, subsequent to the execution of the PSA, the Parties have determined that the description of the Assets, as same appear on Exhibit A-1 to the PSA, erroneously included the following described Federal Unit (the "**WD 30 Field Unit**"):

WD 30 Field I Sand, Reservoir A (I RA SU): Unit No. 14-08-0001-11736. Unit Area - 385.03 ac. Parts of leases OCS-00367, OCS-G 1067 and OCS-G 01332, West Delta Area, Block 32.

**WHEREAS**, the Parties desire to amend Exhibit A-1 to the PSA to remove the description of the WD 30 Field Unit that was erroneously included therein.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, and the mutual agreements and promises herein contained, Seller and Purchaser hereby agree as follows:

Exhibit A-1 to the PSA is revised to the extent necessary to exclude all references to the WD 30 Field Unit, to the same extent and with the same force and effect as if same had never been included in the description of the Assets reflected on said Exhibit A-1.

Except as amended by this Amendment, the PSA has not been modified and remains in full force and effect in all respects.

**THIS AMENDMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS OTHERWISE APPLICABLE TO SUCH DETERMINATIONS. JURISDICTION AND VENUE WITH RESPECT TO ANY DISPUTES ARISING HEREUNDER SHALL BE PROPER ONLY IN HARRIS COUNTY, TEXAS, AND THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THEY MAY NOW HAVE OR HEREAFTER**

HAVE TO THE LAYING OF VENUE OF ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AMENDMENT BROUGHT IN SUCH COURTS OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE.

This Amendment may be executed in counterparts and each such counterpart shall be deemed an original agreement for all purposes.

**IN WITNESS WHEREOF**, this Amendment has been duly executed and delivered by the duly authorized representative of each Party as of the date first hereinabove written, but shall be effective for all purposes as of March 13, 2014, the execution date of the PSA.

**SELLER**:

**PURCHASER**:

**Black Elk Energy Offshore Operations, LLC**

**SandRidge Energy Offshore, LLC**

By: _____

By: _____

John G. Hoffman
President and Chief Executive Officer

James A. Crocker
Land Manager & Senior Legal Advisor

# GIEGER, LABORDE & LAPEROUSE, L.L.C.

ERNEST P. GIEGER, JR.[1,2]
KENNETH H. LABORDE[1,2]
LAMBERT M. LAPEROUSE[1,2]
ROBERT I. SIEGEL[1,2]
ANDREW A. BRAUN[1,2]
LEO R. McALOON III[1,2]
JOHN E. W. BAAY II[1,2,3]
ANDREW M. ADAMS[1,3]
DANIEL G. RAUH[1]
RACHEL G. WEBRE[1]
BRENDAN P. DOHERTY[1,2]
CHRISTOPHER R. TESKE[1,2]
WILLIAM A. BAROUSSE[1,2]
MICHAEL E. HILL[1,2]

MICHAEL D. CANGELOSI
TARA E. CLEMENT[2]
ELIZABETH A. CHICKERING
LAUREN C. CANCIENNE[2]
ERIC C. WALTON
SIMONE MANUEL ALMON
JAMESON M. TAYLOR
EMILY E. EAGAN[2]
MATTHEW F. MORGAN
VICTOR A E. EMMERLING

FORTY-EIGHTH FLOOR
ONE SHELL SQUARE
701 POYDRAS STREET
**NEW ORLEANS, LOUISIANA 70139-4800**
TELEPHONE (504) 561-0400
FACSIMILE (504) 561-1011
WWW.GLLLAW.COM

•

HOUSTON OFFICE:

SUITE 750
1177 WEST LOOP SOUTH
HOUSTON, TEXAS 77027-9064

TELEPHONE (832) 255-6000
FACSIMILE (832) 255-6001

MEGAN A. CAMBRE
ERIC S. CHARLESTON[6]
EVAN H. BLOCK[4]
JESSICA A. ROBERTS
CHRISTOPHER H. AVERY[4]
CAITLIN J. HILL[3]
JONATHAN S. ORD
BRADLEY J. SCHWAB
SANDY G. HOY[4]

OF COUNSEL
JANET H. ASCHAFFENBURG
J. MICHAEL DiGIGLIA[6]
CHARLOTTE A. FIELDS[4]
GINA S. MONTGOMERY
ALISTAIR M. WARD

[1] LAW CORPORATION
[2] ALSO ADMITTED IN TEXAS
[3] ALSO ADMITTED IN MISSISSIPPI
[4] ONLY ADMITTED IN TEXAS
[6] ALSO ADMITTED IN COLORADO
[8] ALSO ADMITTED IN NEW YORK
AND WASHINGTON, D.C.

March 18, 2014

**By Hand Delivery**
United States Department of the Interior
Bureau of Ocean Energy Management
Gulf of Mexico OCS Region
1201 Elmwood Park Boulevard (Mail Stop GM 231A)
New Orleans, Louisiana 70123-2394

RECEIVED
MAR 1 9 2014
ADJUDICATION SECTION

Attention:     Mr. Lenny Coats
               Supervisor, Adjudication Unit

Re:     Non-Required Filing

Dear Mr. Coats:

        Enclosed herewith please find two (2) executed copies of each of the ten (10) instruments ("**Recorded Documents**") specified below to be placed into the "non-required" records maintained by your office for each of the federal offshore leases and OCS right-of-ways listed below. Please *date-stamp* and *file* each of the Recorded Documents *in the consecutive order listed below* and under the categories specified below. Also enclosed in connection with this request are pay.gov receipts evidencing payment of the required filing fees. The Recorded Documents to be filed are as follows:

1. Partial Release, dated effective March 1, 2014, by The Bank of New York Mellon Trust Company, N.A., Trustee and Collateral Agent, as Collateral Agent, and Black Elk Energy Offshore Operations, LLC, as Mortgagor. [**Category 2 – Release of Mortgages and Liens**]

2. UCC-3 Financing Statement Amendment to Initial Financing Statement File No. 38-11-1450, by Black Elk Energy Offshore Operations, LLC, as Debtor, and The Bank of New York Mellon Trust Company, N.A., Trustee and Collateral Agent, as Collateral

6805-06-3/1154826

EXHIBIT "2"

GIEGER, LABORDE & LAPEROUSE, L.L.C.

March 18, 2014
Page 2

Agent, as Secured Party. **[Category 3 – UCC Filings and Financial Statements]**

3. UCC-3 Financing Statement Amendment to Initial Financing Statement File No. 38-13-1754, by Black Elk Energy Offshore Operations, LLC, as Debtor, and The Bank of New York Mellon Trust Company, N.A., Trustee and Collateral Agent, as Collateral Agent, as Secured Party. **[Category 3 – UCC Filings and Financial Statements]**

4. Partial Release, dated effective March 1, 2014, by BAM Administrative Services LLC, as Administrative Agent, and Black Elk Energy Offshore Operations, LLC, as Mortgagor. **[Category 2 – Release of Mortgages and Liens]**

5. UCC-3 Financing Statement Amendment to Initial Financing Statement File No. 38-10-2098, by Black Elk Energy Offshore Operations, LLC, as Debtor, and BAM Administrative Services LLC, as Administrative Agent, as Secured Party. **[Category 3 – UCC Filings and Financial Statements]**

6. UCC-3 Financing Statement Amendment to Initial Financing Statement File No. 38-11-2338, by Black Elk Energy Offshore Operations, LLC, as Debtor, and BAM Administrative Services LLC, as Administrative Agent, as Secured Party. **[Category 3 – UCC Filings and Financial Statements]**

7. Partial Release, dated effective March 1, 2014, by W & T Offshore, Inc, as Mortgagee, and Black Elk Energy Offshore Operations, LLC, as Mortgagor. **[Category 2 – Release of Mortgages and Liens]**

8. UCC-3 Financing Statement Amendment to Initial Financing Statement File No. 38-09-1463, by Black Elk Energy Offshore Operations, LLC, as Debtor, and W&T Offshore, Inc., as Secured Party. **[Category 3 – UCC Filings and Financial Statements]**

9. UCC-3 Financing Statement Amendment to Initial Financing Statement File No. 12-317092, by Black Elk Energy Offshore Operations, LLC, as Debtor, and W&T Offshore, Inc., as Secured Party. **[Category 3 – UCC Filings and Financial Statements]**

10. Assignment, Conveyance and Bill of Sale, dated effective March 1, 2014, from Black Elk Energy Offshore Operations, LLC, as Assignor, in favor of SandRidge Energy Offshore, LLC. **[Category 7 – Contracts, Agreements, and Conveyances]**

GIEGER, LABORDE & LAPEROUSE, L.L.C.

March 18, 2014
Page 3

Please file the Recorded Documents in the records maintained for each of the OCS leases listed below:

| Ref. | OCS Number | Area/Block |
|------|-----------|------------|
| 1. | OCS 0367 | West Delta 32 |
| 2. | O.C.S. 0438 | Eugene Island 175 |
| 3. | O.C.S. 0479 | Eugene Island 53 |
| 4. | OCS-G 01067 | West Delta 32 |
| 5. | OCS-G 01332 | West Delta 32 |
| 6. | OCS-G 01860 | West Cameron 35, West Cameron 66 |
| 7. | OCS-G 2393 | High Island A-573 |
| 8. | OCS-G 02600 | South Marsh Island 281 |
| 9. | OCS-G-2721 | High Island A-595 |
| 10. | OCS-G-2722 | High Island A-596 |
| 11. | OCS-G 2750 | High Island A-365 |
| 12. | OCS-G 2754 | High Island A-376 |
| 13. | OCS-G-2757 | High Island A-382 |
| 14. | OCS-G 02819 | West Cameron 35 |
| 15. | OCS-G 2825 | West Cameron 65 |
| 16. | OCS-G-2826 | West Cameron 66 |
| 17. | OCS-G 03251 | West Cameron 34 |
| 18. | OCS-G 03256 | West Cameron 67 |
| 19. | OCS-G 3811 | Eugene Island 108 |
| 20. | OCS-G 4000 | South Timbalier 53 |
| 21. | OCS-G 4421 | Vermilion 78 |
| 22. | OCS-G 06884 | Viosca Knoll 780 |
| 23. | OCS-G 13645 | West Delta 122 |
| 24. | OCS-G 13673 | Viosca Knoll 779 |
| 25. | OCS-G 13943 | Grand Isle 110 |
| 26. | OCS-G 13944 | Grand Isle 116 |
| 27. | OCS-G 14456 | South Marsh Island 280 |
| 28. | OCS-G 15241 | Eugene Island 107 |
| 29. | OCS-G 15242 | Eugene Island 118 |
| 30. | OCS-G 15436 | Viosca Knoll 824 |
| 31. | OCS-G 18192 | Mississippi Canyon 110 |
| 32. | OCS-G 19843 | West Delta 121 |
| 33. | OCS-G 25524 | Galveston 210 |

Additionally, please file the Recorded Documents in the records maintained for each of the OCS right-of-ways listed below:

GIEGER, LABORDE & LAPEROUSE, L.L.C.

March 18, 2014
Page 4

| Ref. | OCS Number | Area/Block |
|------|------------|------------|
| 1. | OCS-G 05150 | High Island Area |
| 2. | OCS-G 9319 | South Timbalier Area |

    If you have any questions or concerns regarding this request, please contact the undersigned at (832) 255-6013 and your questions or concerns will be addressed immediately. Thank you kindly for your assistance in this matter and please do not hesitate to contact the undersigned if there is any need.

Very truly yours,

Sandy G. Hoy

SGH/jmr

Enclosures

6805-06-3/1154826



RECEIVED
MAR 1 9 2014
ADJUDICATION SECTION

## Assignment, Conveyance and Bill of Sale

**THIS ASSIGNMENT, CONVEYANCE AND BILL OF SALE** (this "**Assignment**"), is made and entered this 13th day of March 2014, but is effective as of March 1, 2014, at 7:00 a.m. Central Daylight Time (the "**Effective Time**"), from Black Elk Energy Offshore Operations, LLC, a Texas limited liability company (the "**Assignor**"), whose address is 11451 Katy Freeway, Suite 500, Houston, Texas 77079 in favor of SandRidge Energy Offshore, LLC, a Delaware limited liability company (the "**Assignee**"), whose address is 2000 W. Sam Houston Parkway South, Suite 1200, Houston, Texas 77042.

## WITNESSETH:

This Assignment is made pursuant to the terms of that certain Purchase and Sale Agreement dated as of March 13, 2014, by and among Assignor and Assignee (the "**Purchase and Sale Agreement**"). All capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Purchase and Sale Agreement.

That Assignor, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby sell, transfer, assign, and convey to Assignees, all of Assignor's right, title, interest and estate, real or personal, recorded or unrecorded, movable or immovable, tangible or intangible, in and to the following (less and except the Excluded Assets, as such term is defined below) (collectively, the "**Assets**"):

(a)     All of (i) the oil and gas leases; subleases and other leaseholds; net profits interests; carried interests; farmout rights; options; contractual rights and other properties and interests described on **Exhibit A** (collectively, the "**Leases**"), and all other mineral rights or interests in or affecting the Leases, even if not described or referenced on Exhibit A, together with each and every kind and character of right, title, claim, and interest that Assignor has in and to the lands covered by the Leases or the lands currently pooled, unitized, communitized or consolidated therewith (the "**Lands**");

(b)     All oil, gas, water, disposal or injection wells shown on **Exhibit A-1** whether producing, shut-in, temporarily abandoned, or permanently abandoned, and any other oil, gas, water, disposal or injections wells located on or associated with the Lands, even if not shown on **Exhibit A-1**, whether producing, shut-in, temporarily abandoned, or permanently abandoned (collectively, the "**Wells**");

(c)     All pools and units shown on **Exhibit A-1** (even to the extent not located on the Lands or including any of Wells), and all pools and units which include any Lands or all or a part of any Leases or include any Wells, even if not shown on **Exhibit A-1** (the "**Units**"; the Units, together with the Leases, Lands and Wells, being hereinafter referred to as the "**Properties**"), and including all interest of Assignor derived from the Leases in production of Hydrocarbons from any such Unit, whether such Unit production of Hydrocarbons comes from Wells located on or off of a Lease, and all tenements, hereditaments and appurtenances belonging to the Leases and Units;

(d)     All contracts, agreements and instruments by which the Properties, Equipment, Pipelines, Records, and Included Geologic Data (collectively the "**Subject Properties**") are bound, or that relate to or are otherwise applicable to the Subject Properties, only to the extent such contracts are valid and existing and applicable to the Subject Properties rather than Assignor's other properties, including but not limited to, operating agreements, unitization, pooling and communitization agreements, declarations and orders, joint venture agreements, farmin and farmout agreements, exploration agreements, participation agreements, exchange agreements, transportation or gathering agreements, agreements for the sale and purchase of oil, gas, casinghead gas or processing agreements to the extent applicable to the Properties or the Hydrocarbons produced from the Properties, including but not limited to those identified on **Exhibit A-5** (hereinafter collectively referred to as "**Contracts**"), but excluding any contracts, agreements and instruments to the extent transfer is restricted by third-party agreement or applicable Law and the necessary consents to transfer are not obtained pursuant to **Section 7.7** and provided that "**Contracts**" shall not include the instruments constituting the Leases or Easements;

(e)     All easements, permits, licenses, servitudes, rights-of-way, surface leases and other surface rights and all contracts, agreements, and instruments by which they are bound (collectively the "**Easements**") appurtenant to, and used or held for use in connection with the Properties (including those identified on **Exhibit A-3**, but excluding any permits and other rights to the extent transfer is restricted by third-party agreement or applicable Law and the necessary consents to transfer are not obtained pursuant to **Section 7.7**;

(f)     All platforms, equipment, machinery, fixtures and other tangible personal property and improvements set forth on **Exhibit A-4** and all other platforms, equipment, machinery, fixtures and other tangible personal property and improvements located on the Properties or used, or held for use, primarily in connection with the operation of the Properties (collectively, "**Equipment**");

(g)     All flow lines, pipelines, gathering systems and appurtenances thereto set forth on **Exhibit A-2** and all flow lines, pipelines, gathering systems and appurtenances thereto located on the Properties or used, or held for use, in connection with the operation of the Properties (collectively "**Pipelines**" and, together with the Equipment and Wells, "**Personal Property**");

(h)     All Hydrocarbons produced from or attributable to the Leases, Lands, and Wells from and after the Effective Time;

(i)     All Imbalances;

(j)     All lease files; land files; well files; gas and oil sales contract files; gas processing files; division order files; abstracts; title opinions; land surveys; environmental surveys, inspections, assessments, and reports; logs; maps; engineering data and reports; interpretive data, technical evaluations and technical outputs; and other books, records, data, files, and accounting records, in each case to the extent related to the Assets, or used or held for use in connection with the maintenance or operation thereof, but excluding (i) any books, records, data, files, logs, maps, evaluations, outputs, and accounting records to the extent disclosure or transfer would result in a violation of applicable Law or is restricted by any Transfer Requirement that is not

satisfied pursuant to **Section 7.7**, (ii) computer or communications software or intellectual property (including tapes, codes, data and program documentation and all tangible manifestations and technical information relating thereto), (iii) attorney-client privileged communications and work product of Assignor's or any of its Affiliates' legal counsel (other than title opinions), (iv) reserve studies and evaluations, and (v) records relating to the negotiation and consummation of the sale of the Assets (subject to such exclusions, the "**Records**"); provided, however, that Assignor may retain the originals of such Records as Assignor has reasonably determined may be required for existing litigation, tax, accounting, and auditing purposes;

      (k)    All Geological Data specifically listed on **Schedule 1.2(k)** (collectively, "**Included Geological Data**"); and

      (l)    All computers, software (provided it is transferable), specialty tools, SCADA systems, peripherals, radio and telephone equipment to the extent the same are necessary to operate the property or Equipment

provided, however, that notwithstanding the foregoing, the Assets shall not include, and Assignor hereby reserves and retains, all of the Excluded Assets.

**TO HAVE AND TO HOLD** to Assignee, its successors and assigns, forever, subject to the Permitted Encumbrances, as such term is defined in the Purchase and Sale Agreement, and the other terms and provisions hereof and of the Purchase and Sale Agreement referred to below.

This Assignment is made by Assignor and accepted by Assignee subject to the following terms and conditions:

1.    **Effective Time**.  This Assignment shall be effective as of the Effective Time.

2.    **Purchase and Sale Agreement**.  This Assignment is expressly made subject to the Purchase and Sale Agreement.  In the event of a conflict between this Assignment and the Purchase and Sale Agreement, the Purchase and Sale Agreement shall control.  Capitalized terms used and not otherwise defined herein are used with the meanings given thereto in the Purchase and Sale Agreement.

3.    **Disclaimers**.

EXCEPT AS AND TO THE EXTENT EXPRESSLY SET FORTH IN SECTION 4 HEREOF OR IN THE PURCHASE AND SALE AGREEMENT, (i) ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY OR IMPLIED, AND (ii) ASSIGNOR EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO ASSIGNEE OR ANY OF ASSIGNEE'S AFFILIATES, EMPLOYEES, AGENTS, CONSULTANTS OR REPRESENTATIVES (INCLUDING, WITHOUT LIMITATION, ANY OPINION, INFORMATION, PROJECTION OR ADVICE THAT MAY HAVE BEEN PROVIDED TO ASSIGNEE BY ANY OFFICER, DIRECTOR, EMPLOYEE, AGENT, CONSULTANT, REPRESENTATIVE OR ADVISOR OF ASSIGNOR OR ANY OF ITS AFFILIATES). EXCEPT AS EXPRESSLY SET FORTH IN ARTICLE 5 OF THE PURCHASE AND SALE AGREEMENT, AND WITHOUT LIMITING

Execution Version

THE GENERALITY OF THE FOREGOING, ASSIGNOR EXPRESSLY DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, AS TO (i) TITLE TO ANY OF THE ASSETS, (ii) THE CONTENTS, CHARACTER OR NATURE OF ANY DESCRIPTIVE MEMO OR ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL OR SEISMIC DATA OR INTERPRETATION, RELATING TO THE ASSETS, (iii) THE QUANTITY, QUALITY OR RECOVERABILITY OF PETROLEUM SUBSTANCES IN OR FROM THE ASSETS, (iv) ANY ESTIMATES OF THE VALUE OF THE ASSETS OR FUTURE REVENUES GENERATED BY THE ASSETS, (v) THE PRODUCTION OF HYDROCARBONS FROM THE ASSETS, (vi) THE MAINTENANCE, REPAIR, CONDITION, QUALITY, SUITABILITY, DESIGN OR MARKETABILITY OF THE ASSETS, (vii) THE CONTENT, CHARACTER OR NATURE OF ANY DESCRIPTIVE MEMORANDUM, REPORTS, BROCHURES, CHARTS OR STATEMENTS PREPARED BY ASSIGNOR OR THIRD PARTIES WITH RESPECT TO THE ASSETS, (viii) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO ASSIGNEE OR ITS AFFILIATES, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THE PURCHASE AND SALE AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO AND (ix) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT. EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4 HEREOF ASSIGNOR FURTHER DISCLAIMS ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY OR IMPLIED, OF MERCHANTABILITY, FREEDOM FROM LATENT VICES OR DEFECTS (INCLUDING THOSE CONTEMPLATED IN THE LOUISIANA CIVIL CODE ARTICLES 2475, AND 2520 THROUGH 2548), FITNESS FOR A PARTICULAR PURPOSE OR CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OF ANY ASSETS, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES HERETO THAT ASSIGNEE SHALL BE DEEMED TO BE OBTAINING THE ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS" AND "WHERE IS" WITH ALL FAULTS, AND THAT ASSIGNEE HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS ASSIGNEE DEEMS APPROPRIATE.

EXCEPT AS REPRESENTED IN ARTICLE 5 OF THE PURCHASE AND SALE AGREEMENT, ASSIGNOR HAS NOT AND WILL NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAWS, ENVIRONMENTAL LIABILITIES, THE RELEASE OF MATERIALS INTO THE ENVIRONMENT OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE ASSETS, AND NOTHING IN THIS ASSIGNMENT OR OTHERWISE SHALL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY, AND ASSIGNEE SHALL BE DEEMED TO BE TAKING THE ASSETS "AS IS" AND "WHERE IS" FOR PURPOSES OF THEIR ENVIRONMENTAL CONDITION.

Assignor and Assignee agree that, to the extent required by applicable Law to be effective, the disclaimers of certain representations and warranties contained in this Section 3 are "conspicuous" disclaimers for the purpose of any applicable Law.

Execution Version

4.    **Special Warranty of Title**.  This Assignment is made, executed, and delivered without warranty of title, either express or implied, even as to a return of the purchase price, except that Assignor specially warrants and agrees to defend Defensible Title, as such term is defined in the Purchase and Sale Agreement, subject to the applicable provisions of the Purchase and Sale Agreement, to the Leases, Units, and Wells shown on **Exhibits A and A-1** against the claims and demand of all Persons claiming by, through, or under Assignor or its Affiliates, but not otherwise, up to the Allocated Value thereof, but with full right of substitution and subrogation of Assignee in and to all claims Assignor has or may have against all preceding owners.

5.    **Assumption by Assignee**.  In addition to its other obligations under this Assignment, Assignee shall comply with all Laws, Leases, Applicable Contracts (including all joint and unit operating agreements) and prevailing industry standards relating to (i) the plugging, abandonment and/or replugging of all Wells, including inactive Wells or temporarily abandoned Wells, included in the Assets or otherwise drilled on the Lands, (ii) the dismantling or decommissioning and removal of any Personal Property and other property of whatever kind related to or associated with operations and activities conducted by whomever on the Properties, or otherwise, pursuant to the Leases or Applicable Contracts and (iii) the clean up, restoration and/or remediation of the Lands covered by the Leases or related to the Assets (collectively, the **"P&A Obligations"**).  Subject to the indemnification by certain members of Assignor under Section 11.3 of the Purchase and Sale Agreement, on the Closing Date, Assignee shall assume and hereby agrees to fulfill, perform, pay and discharge (or cause to be fulfilled, performed, paid or discharged) all of the obligations and liabilities of Assignor, known or unknown, with respect to the Assets, regardless of whether such obligations or liabilities arose prior to, on or after the Effective Time, including but not limited to obligations to (a) furnish makeup gas according to the terms of applicable gas sales, gathering or transportation contracts, and to satisfy all other gas balancing obligations, if any, (b) pay working interests, royalties, overriding royalties and other interests held in suspense, (c) properly plug and abandon any and all wells (including, without limitation, the Wells), including inactive wells or temporarily abandoned wells, drilled on the Properties, as required by Law, (d) replug any well, wellbore, or previously plugged well on the Properties to the extent required by Governmental Body, (e) dismantle, salvage and remove any equipment, structures, materials, platforms, flowlines, and property of whatever kind related to or associated with operations and activities conducted on the Properties, (f) clean up, restore and/or remediate the premises covered by or related to the Assets in accordance with applicable agreements and Laws, (g) pay all Property Costs (as defined in the Purchase and Sale Agreement), (h) perform all obligations applicable to or imposed on the lessee, owner, or operator under the Leases or Contracts, or as required by applicable Laws, and (i) otherwise perform and pay, including payment of any contribution obligations of Assignor, relating to any other P&A Obligations with respect to the Assets (all of said obligations and liabilities, subject to the exclusions below, herein being referred to as the **"Assumed Assignor Obligations"**); provided, however, that the Assumed Assignor Obligations shall not include, and Assignee shall have no obligation to assume, any obligations or liabilities of Assignor or its Affiliates set forth in the following clauses (i) through (vii) (such excluded obligations and liabilities, the **"Excluded Assignor Obligations"**).  The Excluded Assignor Obligations are those obligations and liabilities of Assignor or any of its Affiliates that are:

Execution Version

(i)     attributable to or arise out of the Excluded Assets and do not include any obligations or liabilities owed by Purchaser prior to the execution of this Assignment with respect to any of the oil and gas properties comprising the Assets;

(ii)    attributable to or arising out of the actions, suits or proceedings, if any, applicable to periods prior to the Closing Date including those set forth on Schedule 5.7 of the Purchase and Sale Agreement.

(iii)   attributable to any and all liabilities, responsibilities and obligations relating to the matters described in Section 11.3(b) of the Purchase and Sale Agreement.

(iv)    attributable to the failure to pay or the improper payment of any production proceeds attributable to the Assets prior to the Closing Date (including, without limitation, lessor's royalties, overriding royalties and payments to working interest owners);

**(v)     attributable to damage to property owned by a third Person or for personal injury, illness or death of any Person, arising out of operations or activities pertaining to the Assets and attributable to the period prior to the Closing Date, to the extent and only to the extent that a Claim is asserted with respect to such matters within two (2) years from the Closing Date;**

**(vi)    attributable to fines and penalties (and any interest thereon) with respect to the Assets and applicable to periods prior to the (i) Effective Time with respect to applicable Properties (excluding Properties operated by Assignor or its Affiliates) and (ii) Closing Date with respect to Properties operated by Assignor or its Affiliates; or**

**(vii)   attributable to Property Costs associated with the ownership, use or operation of the Assets prior to the Effective Time.**

**6.     Further Assignments** Certain of the Assets conveyed by this Assignment may require approval to transfer by a government entity, and as such may require separate assignment instruments made on officially approved forms, or forms acceptable to such government entity, (including any assignments of record title, operating rights and/or rights of ways filed with the Bureau of Ocean Energy Management and/or Bureau of Safety and Environmental Enforcement) and in sufficient multiple originals to satisfy applicable statutory and regulatory requirements. Assignor's interest conveyed by such separate assignments are the same, and not in addition to, Assignor's interest conveyed in this Assignment. In addition, it is contemplated that this Assignment will be recorded in more than one parish within the State of Louisiana and/or in more than one county within the state of Texas and the interests conveyed pursuant hereto are the same, and not in addition to, and this Assignment shall not constitute multiple transfers of such interests by virtue of the recordation of this Assignment in more than one parish or county.

**7.     Covenants Running with the Land**. The terms and provisions hereof shall be deemed to be covenants running with the Lands, Leases, and other interests covered hereby and shall extend to, bind and inure to the benefit of the parties hereto, their heirs, successors and assigns.

Execution Version

8.     GOVERNING LAW AND VENUE. THIS ASSIGNMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS OTHERWISE APPLICABLE TO SUCH DETERMINATIONS. JURISDICTION AND VENUE WITH RESPECT TO ANY DISPUTES ARISING HEREUNDER SHALL BE PROPER ONLY IN HARRIS COUNTY, TEXAS, AND THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY DISPUTE ARISING OUT OF OR RELATING TO THIS ASSIGNMENT BROUGHT IN SUCH COURTS OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE.

**[Signature Page Follows]**

Execution Version

**IN WITNESS WHEREOF**, this Assignment is executed by the duly authorized officers or representatives of the parties as of the date first hereinabove written.

WITNESSES:

Linda Sellers

Ford Peters

ASSIGNOR:
**BLACK ELK ENERGY OFFSHORE OPERATIONS LLC**

By: _____
J.D. Matthews
Vice President - Land

WITNESSES:

William Getschow

Ford Peters

ASSIGNEE:
**SANDRIDGE ENERGY OFFSHORE, LLC**

By: _____
James A. Crocker
Land Manager & Senior Legal Advisor

-8-

## <u>ACKNOWLEDGMENTS</u>

STATE OF TEXAS      §
                                §

COUNTY OF HARRIS   §

      This instrument was acknowledged before me on the 13th day of March, 2014, by J.D. Matthews, the Vice President - Land of Black Elk Energy Offshore Operations LLC, a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for
The State of Texas

> PAULA RENE VERA
> Notary Public, State of Texas
> My Commission Expires
> May 09, 2017

STATE OF TEXAS      §
                                  §

COUNTY OF HARRIS   §

      This instrument was acknowledged before me on the 13th day of March, 2014, by James A. Crocker, the Land Manager & Senior Legal Advisor of SandRidge Energy Offshore, LLC, a Delaware limited liability company, on behalf of said limited liability company.

Notary Public in and for
The State of Texas

> PAULA RENE VERA
> Notary Public, State of Texas
> My Commission Expires
> May 09, 2017

Execution Version

## Exhibit A

Attached to and made a part of that certain Assignment, Conveyance and Bill of Sale
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Assignor
and SandRidge Energy Offshore, LLC, as Assignee

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|---|---|---|---|---|---|
| EI 53 | OCS-00479 | Eugene Island 53 | December 1, 1954 | SW/4 of Block 53, Eugene Island Area, LIMITED TO all rights from the surface to a depth of 12,582 feet subsea, or the stratigraphic equivalent thereof, as seen in the Induction-SFL log for the OCS 0479 #7 Well. | Operating Rights |
| EI 108 | OCS-G15241 | Eugene Island 107 | Terminated Lease | All of Block 107, Eugene Island Area. | Record Title |
| EI 108 | OCS-G03811 | Eugene Island 108 | June 1, 1978 | S/2 SE/4 of Block 108, Eugene Island Area. | Record Title |
| EI 108 | OCS-G15242 | Eugene Island 118 | July 1, 1995 | N/2 N/2 NW/4 of Block 118, Eugene Island Area. | Record Title |
| EI 175 | OCS-00438 | Eugene Island 175 | December 1, 1954 | All of Block 175, Eugene Island Area. | Record Title |
| GA 210 | OCS-G25524 | Galveston 210 | December 1, 2003 | All of Block 210, Galveston Area. | Record Title |
| GI 116 | OCS-G13943 | Grand Isle 110 | August 1, 1993 | All of Block 110, Grand Isle Area, South Addition. | Record Title |
| | | | | All of Block 110, Grand Isle Area, South Addition, INSOFAR AND ONLY INSOFAR as it covers depths from 13,000' subsea down to and including 50,000' subsea. | Operating Rights |
| GI 116 | OCS-G13944 | Grand Isle 116 | July 1, 1993 | All of Block 116, Grand Isle Area, South Addition. | Record Title |

Execution Version

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|---|---|---|---|---|---|
| HI A-376 | OCS-G02750 | High Island A-365 | July 1, 1974 | All of Block A-365, High Island Area, East Addition, South Extension | Record Title |
| HI A-376 | OCS-G02754 | High Island A-376 | July 1, 1974 | All of Block A-376, High Island Area, East Addition, South Extension. | Record Title |
| HI A-573 | OCS-G02757 | High Island A-382 | July 1, 1974 | All of Block A-382, High Island Area, East Addition, South Extension. | Record Title |
| HI A-573 | OCS-G02393 | High Island A-573 | August 1, 1973 | All of Block A-573, High Island Area, South Addition. | Record Title |
| HI A-573 | OCS-G02721 | High Island A-595 | July 1, 1974 | All of Block A-595, High Island Area, South Addition. | Record Title |
| HI A-573 | OCS-G02722 | High Island A-596 | July 1, 1974 | All of Block A-596, High Island Area, South Addition. | Record Title |
| MC 109 | OCS-G18192 | Mississippi Canyon 110 | August 1, 1997 | All of Block 110, Mississippi Canyon. | Record Title |
| PN 883 | M-96146 | North Padre Island 883-L | October 4, 1994 | W/2 SE/4 of Tract 883-L West of the Three Marine League Line, Gulf of Mexico, Kennedy County, Texas originally containing approximately 949.04 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|-------|------------------|--------------|----------------------|-------------|----------------|
| PN 883 | M-96147 | North Padre Island 883-L | October 4, 1994 | NE/4 of Tract 883-L West of the Three Marine League Line, Gulf of Mexico, Kennedy County, Texas originally containing approximately 1,228.12 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| PN 883 | M-100410 | North Padre Island 883-L | October 6, 1998 | S/2 NW/4 of Tract 883-L, West of the Three Marine League Line, Gulf of Mexico, Kennedy County, Texas originally containing approximately 720 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| PN 883 | M-100411 | North Padre Island 883-L | October 6, 1998 | N/2 SW/4 of Tract 883-L, West of the Three Marine League Line, Gulf of Mexico, Kennedy County, Texas containing approximately 720 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|-------|------------------|--------------|----------------------|-------------|----------------|
| PN 883 | M-100412 | North Padre Island 883-L | October 6, 1998 | S/2 SW/4 of Tract 883-L, West of the Three Marine League Line, Gulf of Mexico, Kennedy County, Texas containing approximately 720 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| | | | | | |
| PN 883 | M-100413 | North Padre Island 889-L | October 6, 1998 | Western 374.7 acres in the N/2 NE/4 of Tract 889-L, West of the Three Marine League Line, Gulf of Mexico, Kenedy County, Texas originally containing approximately 688.78 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| | | | | | |
| PN 883 | M-100413 | North Padre Island 889-L | October 6, 1998 | 314.08 acres in the NE/4 of Tract 889-L, West of the Three Marine League Line, Gulf of Mexico, Kenedy County, Texas originally containing approximately 688.78 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| | | | | | |

Execution Version

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|-------|------------------|--------------|----------------------|-------------|----------------|
| PN 883 | M-100414 | North Padre Island 889-L | October 6, 1998 | E/2 N/2 NW/4 of Tract 889-L, West of the Three Marine League Line, Gulf of Mexico, Kenedy County, Texas containing approximately 360 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| | | | | W/2 N/2 NW/4 of Tract 889-L, West of the Three Marine League Line, Gulf of Mexico, Kenedy County, Texas containing approximately 360 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| PN 883 | M-101898 | North Padre Island 889-L | April 10, 2001 | E/2 N/2 NW/4 of Tract 883-L, West of the Three Marine League Line, Gulf of Mexico, Kenedy County, Texas containing approximately 360 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|-------|------------------|--------------|----------------------|-------------|----------------|
| PN 883 | M-101898 | North Padre Island 889-L | April 10, 2001 | W/2 N/2 NW/4 of Tract 883-L, West of the Three Marine League Line, Gulf of Mexico, Kenedy County, Texas containing approximately 360 acres as shown on the Official Map of the Gulf of Mexico now on file in the Texas General Land Office, Austin, Texas, limited to acreage within the North Padre Island 883L/889L Unit AND depth restricted to said Unit. | Record Title |
| SM 269 | OCS-G14456 | South Marsh Island 280 | June 1, 1994 | All of Block 280, South Marsh Island Area, North Addition. | Record Title |
| | | | | W/2SE/4 and W/2E/2SE/4 of Block 280, South Marsh Island Area, North Addition, as to all depths from the surface to 100' below the stratigraphic equivalent between 13,814' to 13,920' TVD on the Electric Log from the Norcen Explorer, Inc. OCS-G 14456 #3 well. | ORRI |
| SM 269 | OCS-G02600 | South Marsh Island 281 | April 1, 1974 | W/2W/2 of Block 281, South Marsh Island Area, limited to that area certain area described in the Joint Development Agreement dated effective June 15, 2001. | Contractual Rights |
| ST 52 | OCS-G04000 | South Timbalier 53 | March 1, 1979 | All of Block 53, South Timbalier and Bay Marchand Areas | Record Title |
| VK 780 | OCS-G13673 | Viosca Knoll 779 | Expired Lease | E/2 SE/4; E/2 NW/4 SE/4; S/2 SE/4 NE/4; SE/4 SW/4 NE/4 of Block 779, Viosca Knoll Area. | Contractual Rights (Wellbore A-5) |
| VK 780 | OCS-G06884 | Viosca Knoll 780 | June 1, 1984 | W/2SW/4; W/2SE/4SW/4; SW/4NE/4SW/4 of Block 780, Viosca Knoll Area. | Contractual Rights |

Execution Version

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|-------|------------------|--------------|----------------------|-------------|----------------|
| VK 780 | OCS-G15436 | Viosca Knoll 824 | Relinquished Lease | NW/4NW/4; N/2SW/4NW/4; W/2E/2NW/4 of Block 824, Viosca Knoll Area. | Contractual Rights |
| | | | | | |
| VR 76 | OCS-G04421 | Vermilion 78 | November 1, 1980 | All of Block 78, Vermilion Area. | Record Title |
| | | | | | |
| WC 66 | OCS-G03251 | West Cameron 34 | Expired Lease | Block 34, West Cameron Area, Limited to the A-13, D-2 and the D-4 Wells. | Contractual Rights |
| | | | | | |
| WC 66 | OCS-G02819 | West Cameron 35 | January 1, 1969 | N/2; SW/4; N/2SE/4; SW/4SE/4 of Block 35, West Cameron Area. | Contractual Rights |
| | | | | | |
| WC 66 | OCS-G01860 | West Cameron 35, West Cameron 66 | January 1, 1969 | SE/4 SE/4 of Block 35, West Cameron Area and NE/4 of Block 66, West Cameron Area. | Contractual Rights |
| WC 66 | OCS-G02825 | West Cameron 65 | December 1, 1974 | NE/4 of Block 65, West Cameron Area, from the surface to the depth of 100' below the stratigraphic equivalent of the base of the IT Sand as present in the Continental Oil Company West Cameron Block 66 B-14 Well at a measured depth of 9,580 feet on the ISF-Sonic Log | Operating Rights |
| | | | | | |
| WC 66 | OCS-G02826 | West Cameron 66 | December 1, 1974 | NW/4; S/2 of Block 66, West Cameron Area. | Record Title |
| | | | | | |
| WC 66 | OCS-G03256 | West Cameron 67 | Expired Lease | W/2 NW/4 of Block 67, West Cameron Area. | Operating Rights |
| | | | | | |
| WD 133 | OCS-G19843 | West Delta 121 | August 1, 1998 | All of Block 121, West Delta Area, South Addition. | Record Title |
| | | | | | |
| WD 133 | OCS-G13645 | West Delta 122 | August 1, 1992 | All of Block 122, West Delta Area, South Addition, INSOFAR AND ONLY INSOFAR AS said operating rights pertain to those intervals from the surface of the earth down to 12,000' true vertical depth. | Operating Rights |
| | | | | | |

Execution Version

| Field | OCS Lease Number | Area / Block | Lease Effective Date | Description | Type of Rights |
|-------|------------------|--------------|----------------------|-------------|----------------|
| WD 133 | OCS-G13645 | West Delta 122 | August 1, 1992 | All of Block 122, West Delta Area, South Addition, INSOFAR AND ONLY INSOFAR as said operating rights pertain to those intervals from 12,000' true vertical depth down to 100' below the stratigraphic equivalent of 15,650' true vertical depth as seen in the Vastar OCS-G 13645 Well No. A-11. | Operating Rights |

Execution Version

## Exhibit A-1

Attached to and made a part of that certain Assignment, Conveyance and Bill of Sale
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Assignor
and SandRidge Energy Offshore, LLC, as Assignee

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| | | | | | | | | | | |
| EI 053 | OCS-G 00479 | EI 53-8 | EI 053 | 0008 | Apache | 177094086200 | 0.11111111 | 0.09259259 | 0.11111111 | 0.09259259 |
| EI 053 | OCS-G 00479 | EI 53 9 | EI 053 | 0009 | Apache | 177094094000 | 0.11111111 | 0.09259259 | 0.11111111 | 0.09259259 |
| EI 053 | OCS-G 00479 | EI 53-B | EI 053 | B001 | Apache | 177094085900 | 0.11111111 | 0.09259259 | 0.11111111 | 0.09259259 |
| EI 053 | OCS-G 00479 | EI 53-C | EI 053 | C002 | Apache | 177094122600 | 0.11111111 | 0.09259259 | 0.11111111 | 0.09259259 |
| EI 053 | OCS-G 00479 | EI 53-G | EI 053 | G001 | Apache | 177094144201 | 0.14285713 | 0.09259259 | 0.11111111 | 0.09259259 |
| EI 108 | OCS-G 15241 | EI 107-A | EI 107 | A003 | Apache | 177094144800 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 108 | OCS-G 15241 | EI 107-B-1 | EI 107 | B001 | Apache | 177094109000 | 0.24500000 | 0.18991670 | 0.24500000 | 0.18991670 |
| EI 108 | OCS-G 03811 | EI 108 3 | EI 108 | 0003 | Apache | 177094112100 | 0.24500000 | 0.18991670 | 0.24500000 | 0.18991670 |
| EI 108 | OCS-G 15242 | EI 118 2 | EI 118 | 0002 | Black Elk | 177094122800 | 0.75000000 | 0.62500000 | 0.75000000 | 0.62500000 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D001 | Apache | 177092000603 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D002 | Apache | 177092005400 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D006 | Apache | 177094003301 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D007 | Apache | 177094003601 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D008 | Apache | 177094003900 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D009 | Apache | 177094005401 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D011 | Apache | 177094008200 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D012 | Apache | 177094010601 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D013 | Apache | 177094010800 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D014 | Apache | 177094012600 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D015 | Apache | 177094013401 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D016 | Apache | 177094014100 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D018 | Apache | 177094015500 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D019 | Apache | 177092008501 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D020 | Apache | 177094006401 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D021 | Apache | 177092012603 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-D | EI 175 | D022 | Apache | 177094062200 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F001 | Apache | 177094035401 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F002 | Apache | 177094039601 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F003 | Apache | 177094039702 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F004 | Apache | 177094041001 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F005 | Apache | 177094042900 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F006 | Apache | 177094048302 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F007 | Apache | 177094048900 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-F | EI 175 | F009 | Apache | 177094087601 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-H | EI 175 | H001 | Apache | 177094104700 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-H | EI 175 | H002 | Apache | 177094106700 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-H | EI 175 | H003 | Apache | 177094110800 | 0.25000000 | 0.20833300 | 0.25000000 | 0.20833300 |
| EI 175 | OCS-G 00438 | EI 175-H | EI 175 | H004 | Apache | 177094110900 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-H | EI 175 | H005 | Apache | 177094112000 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-I | EI 175 | I002 | Apache | 177094107100 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-I | EI 175 | I003 | Apache | 177094107200 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-I | EI 175 | I004 | Apache | 177094109200 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-I | EI 175 | I005 | Apache | 177094109300 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-J | EI 175 | J001 | Apache | 177094122301 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-J | EI 175 | J002 | Apache | 177094123201 | 0.25000000 | 0.20833333 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-J | EI 175 | J003 | Apache | 177094123501 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| EI 175 | OCS-G 00438 | EI 175-J | EI 175 | J004 | Apache | 177094128300 | 0.00000000 | 0.00000000 | 0.25000000 | 0.20833333 |
| GA 210 | OCS-G 25524 | GA 210 -Cais 1 | GA 210 | 0001 | Apache | 427064044300 | 0.33330000 | 0.27780000 | 0.33330000 | 0.27780000 |
| GI 116 | OCS-G 13943 | GI 116-A | GI 110 | A002 (AKA#1) | Apache | 177184008900 | 0.12500000 | 0.09282580 | 0.12500000 | 0.09282580 |
| GI 116 | OCS-G 13943 | GI 116-A | GI 110 | A005 | Apache | 177184010402 | 0.12500000 | 0.09282580 | 0.12500000 | 0.09282580 |
| GI 116 | OCS-G 13944 | GI 116-A | GI 116 | A001 | Apache | 177184008700 | 0.12500000 | 0.09282583 | 0.12500000 | 0.09282583 |
| GI 116 | OCS-G 13944 | GI 116-A | GI 116 | A003D | Apache | 177184009201 | 0.12500000 | 0.09282583 | 0.12500000 | 0.09282583 |
| GI 116 | OCS-G 13944 | GI 116-A | GI 116 | A004ST | Apache | 177184009500 | 0.12500000 | 0.09282583 | 0.12500000 | 0.09282583 |
| GI 116 | OCS-G 13944 | GI 116-A | GI 116 | A006 | Apache | 177184010601 | 0.12500000 | 0.09282583 | 0.12500000 | 0.09282583 |

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|---|---|---|---|---|---|---|---|---|---|---|
| GI 116 | OCS-G 13944 | GI 116-A | GI 116 | A007 | Apache | 177184011100 | 0.12500000 | 0.09282583 | 0.12500000 | 0.09282583 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A001 | Apache | 427114052200 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A006 | Apache | 427114053100 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A007 | Apache | 427114054100 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A008 | Apache | 427114054800 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A010 | Apache | 427114055200 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A012 | Apache | 427114055600 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A013 | Apache | 427114055801 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A016 | Apache | 427114056700 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A020 | Apache | 427114057500 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A021 | Apache | 427114057600 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A024 | Apache | 427114066300 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02750 | HI A376-A | HI A365 | A025 | Apache | 427114066500 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A002 | Apache | 427114052601 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A003 | Apache | 427114052700 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A004 | Apache | 427114053700 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A005 | Apache | 427114053500 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A009 | Apache | 427114054400 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A011 | Apache | 427114055000 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A014 | Apache | 427114056002 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A015 | Apache | 427114056200 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A017 | Apache | 427114057200 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A018 | Apache | 427114057300 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A019 | Apache | 427114057400 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-A | HI A376 | A022 | Apache | 427114057700 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-B | HI A376 | B001 | Apache | 427114068700 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-B | HI A376 | B002 | Apache | 427114068900 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-B | HI A376 | B003 | Apache | 427114078701 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-B | HI A376 | B004 | Apache | 427114079001 | 0.29920200 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-C | HI A376 | C001 | Apache | 427114088900 | 0.29920000 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A376 | OCS-G 02754 | HI A376-C | HI A376 | C002 | Apache | 427114089600 | 0.29920000 | 0.24933520 | 0.29920000 | 0.24933520 |
| HI A573 | OCS-G 02757 | HI A573-A | HI A382 | A001 | Apache | 427094007102 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A573-A | HI A382 | A009 | Apache | 427094018600 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A573-B | HI A382 | B013 | Apache | 427094025500 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F001 | Apache | 427114059401 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F002 | Apache | 427114059800 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F003 | Apache | 427114059901 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F004 | Apache | 427114060600 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F005 | Apache | 427114060900 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F006 | Apache | 427114061001 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F008 | Apache | 427114061700 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F010 | Apache | 427114062605 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F011 | Apache | 427114063100 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F012 | Apache | 427114063601 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F013 | Apache | 427114063800 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F014 | Apache | 427114063900 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F015 | Apache | 427114064701 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F017 | Apache | 427114066701 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F019 | Apache | 427114067100 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F020 | Apache | 427114067500 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02757 | HI A382-F | HI A382 | F021 | Apache | 427114067801 | 0.03444000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A002 | Apache | 427094013803 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A003 | Apache | 427094012901 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A004 | Apache | 427094015000 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A005 | Apache | 427094015501 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A006 | Apache | 427094016200 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A008 | Apache | 427094018000 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A010 | Apache | 427094020500 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A014 | Apache | 427094034100 | 0.00000000 | 0.00000000 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A015 | Apache | 427094034200 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A016 | Apache | 427094034300 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |

-22-

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A017 | Apache | 427094036500 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-A | HI A573 | A019 | Apache | 427094038001 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B001 | Apache | 427094012800 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B002 | Apache | 427094014100 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B005 | Apache | 427094016400 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B006 | Apache | 427094017000 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B007 | Apache | 427094017800 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B008 | Apache | 427094017900 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B010 | Apache | 427094021100 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B012 | Apache | 427094022700 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A573-B | HI A573 | B015 | Apache | 427094025700 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A596-E | HI A573 | E012 | Apache | 427094115000 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A382-F | HI A573 | F007 | Apache | 427114061200 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A382-F | HI A573 | F009 | Apache | 427114062000 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A382-F | HI A573 | F016 | Apache | 427114066805 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A382-F | HI A573 | F018 | Apache | 427114067301 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A382-F | HI A573 | F022 | Apache | 427114068400 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02393 | HI A382-F | HI A573 | F023 | Apache | 427114069302 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02721 | HI A595-D | HI A595 | D001 | Apache | 427094055302 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02721 | HI A595-D | HI A595 | D005 | Apache | 427094092900 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| HI A573 | OCS-G 02721 | HI A595-D | HI A595 | D006 | Apache | 427094063203 | 0.03444000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02721 | HI A595-D | HI A595 | D010 | Apache | 427094070500 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02721 | HI A595-D | HI A595 | D012 | Apache | 427094077000 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02721 | HI A595-D | HI A595 | D017 | Apache | 427094083702 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02721 | HI A595-D | HI A595 | D018 | Apache | 427094093501 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02721 | HI A596-E | HI A595 | E011 | Apache | 427094114501 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A573-B | HI A596 | B014 | Apache | 427094025800 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D007 | Apache | 427094064304 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D002 | Apache | 427094056900 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D004 | Apache | 427094060500 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D008 | Apache | 427094067001 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D009 | Apache | 427094068400 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D011 | Apache | 427094075700 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D013 | Apache | 427094079502 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D014 | Apache | 427094080100 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A595-D | HI A596 | D016 | Apache | 427094082400 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E001 | Apache | 427094084604 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E002 | Apache | 427094085101 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E003 | Apache | 427094085400 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E005 | Apache | 427094085900 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|---|---|---|---|---|---|---|---|---|---|---|
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E006 | Apache | 427094097600 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E007 | Apache | 427094098200 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E008 | Apache | 427094112801 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E009 | Apache | 427094114200 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| HI A573 | OCS-G 02722 | HI A596-E | HI A596 | E010 | Apache | 427094114402 | 0.03441000 | 0.02867500 | 0.03441000 | 0.02867500 |
| MC 109 | OCS-G 18192 | MC 109-A | MC 110 | 0001 | Apache | 608174060500 | 0.08333400 | 0.06645797 | 0.08333400 | 0.06645797 |
| MC 109 | OCS-G 18192 | MC 109-A | MC 110 | A009 | Apache | 608174042501 | 0.08333340 | 0.06645797 | 0.08333340 | 0.06645797 |
| MC 109 | OCS-G 18192 | MC 109-A | MC 110 | A011 | Apache | 608174042801 | 0.08333340 | 0.06645797 | 0.08333340 | 0.06645797 |
| MC 109 | OCS-G 18192 | MC 109-A | MC 110 | A031 | Apache | 608174087900 | 0.08333340 | 0.06645797 | 0.08333340 | 0.06645797 |
| PN 883 | M-96146, et al | PN 883-A | PN 883-L | A001 | Apache | 427013003900 | 0.30000000 | 0.22590000 | 0.30000000 | 0.22590000 |
| PN 883 | M-96146, et al | PN 883-A | PN 883-L | A002 | Apache | 427013004000 | 0.30000000 | 0.22590000 | 0.30000000 | 0.22590000 |
| PN 883 | M-96146, et al | PN 883-Cais 3 | PN 883-L | 003 | Apache | 427013004200 | 0.30000000 | 0.22590000 | 0.30000000 | 0.22590000 |
| PN 883 | M-96146, et al | PN 883-Cais 4 | PN 883-L | 004 | Apache | 427013004300 | 0.30000000 | 0.22590000 | 0.30000000 | 0.22590000 |
| SM 269 | OCS-G 14456 | SM 280-H | SM 280 | H001 | Apache | 177074081801 | 0.50000000 | 0.41666670 | 0.50000000 | 0.41666670 |
| SM 269 | OCS-G 14456 | SM 280-H | SM 280 | H002 | Apache | 177074082303 | 0.50000000 | 0.41666670 | 0.50000000 | 0.41666670 |
| SM 269 | OCS-G 02600 | SM 280-I Cais | SM 281 | I001 | Apache | 177074082601 | 0.17661389 | 0.14579509 | 0.17661389 | 0.14579509 |
| SM 269 | OCS-G 02600 | SM 280-I Cais | SM 281 | I002 | Apache | 177074082701 | 0.17661389 | 0.14579509 | 0.17661389 | 0.14579509 |
| SM 269 | OCS-G 02600 | SM 280-I Cais | SM 281 | I003 | Apache | 177074082800 | 0.17661389 | 0.14579509 | 0.17661389 | 0.14579509 |
| SM 269 | OCS-G 02600 | SM 280-C | SM 281 | C001 | Apache | 177074012500 | 0.17661389 | 0.14579509 | 0.17661389 | 0.14579509 |
| ST 052 | OCS-G 04000 | ST 53 -Cais 4 | ST 053 | 0004 | Black Elk | 177154043100 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53 -Cais 6 | ST 053 | 0006 | Black Elk | 177154083500 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A001 | Black Elk | 177154034400 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A002 | Black Elk | 177154037600 | 1.00000000 | 0.82080000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A003 | Black Elk | 177154038400 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A004 | Black Elk | 177154038500 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A005 | Black Elk | 177154038900 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A006 | Black Elk | 177154039200 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A007 | Black Elk | 177154040400 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A008 | Black Elk | 177154040500 | .50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A009 | Black Elk | 177154041500 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A010 | Black Elk | 177154043500 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A011 | Black Elk | 177154042400 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A012 | Black Elk | 177154042300 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A013 | Black Elk | 177154044000 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A014 | Black Elk | 177154042900 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A015 | Black Elk | 177154076900 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A016 | Black Elk | 177154043600 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A017 | Black Elk | 177154061100 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A018 | Black Elk | 177154061200 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A019 | Black Elk | 177154077200 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A020 | Black Elk | 177154077100 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-A | ST 053 | A021 | Black Elk | 177154111000 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-C (5) - Cais | ST 053 | C001 | Black Elk | 177154067200 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-C (5) - Cais | ST 053 | C002 | Black Elk | 177154107300 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| ST 052 | OCS-G 04000 | ST 53-I -WP | ST 053 | I001 | Black Elk | 177154031200 | 0.50000000 | 0.40420000 | 0.50000000 | 0.40420000 |
| VK 824 | OCS-G 13673 | VK 824 | VK 779 (Specter) | A005 | Apache | 608164033900 | 0.06136360 | 0.04768460 | 0.06136360 | 0.04768460 |
| VK 824 | OCS-G 15436 | VK 824 | VK 824 (Specter) | A007 | Apache | 608164034800 | 0.08954200 | 0.07109160 | 0.06136360 | 0.04768460 |
| VR 076 | OCS-G 04421 | VR 078-A | VR 078 | A002 | Apache | 177054047900 | 0.25000000 | 0.20833300 | 0.25000000 | 0.20833300 |
| VR 076 | OCS-G 04421 | VR 078-A | VR 078 | A002 | Apache | 177054047901 | 0.40000000 | 0.33333333 | 0.25000000 | 0.20833300 |
| VR 076 | OCS-G 04421 | VR 078-A | VR 078 | A003 | Apache | 177054102401 | 0.25000000 | 0.20833300 | 0.25000000 | 0.20833300 |
| WC 066 | OCS-G 03251 | WC 066-A | WC 034 | A013 | Apache | 177004016600 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 03251 | WC 034-D | WC 034 | D002 | Apache | 177004038200 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 03251 | WC 034-D | WC 034 | D004 | Apache | 177004039900 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02819 | CAIS 3 | WC 035 | 003 | Apache | 177004093001 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|-------|-------|----------|-------|------|----------|-----|--------|---------|--------|---------|
| WC 066 | OCS-G 02819 | WC 066-B | WC 035 | B005 | Apache | 177004018600 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02819 | WC 066-C | WC 035 | C003 | Apache | 177004037600 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02819 | WC 066-C | WC 035 | C004 | Apache | 177004038701 | 0.05140000 | 0.04180000 | 0.05140000 | 0.04180000 |
| WC 066 | OCS-G 02819 | WC 066-A | WC 035 | A007 | Apache | 177004013500 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02819 | WC 066-C | WC 035 | C005 | Apache | 177004038701 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 035 | A012 | Apache | 177004015700 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 01860 | WC 034-D | WC 035 | D005 | Apache | 177004039101 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 01860 | WC 034-D | WC 035 | D007 | Apache | 177004042902 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02819 | WC 066-B | WC 035 | B013 | Apache | 177004038701 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02825 | WC 066-B | WC 065 | B018 | Apache | 177004098900 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02825 | WC 066-B | WC 065 | B019 | Apache | 177004099501 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02825 | WC 066-B | WC 065 | B020 | Apache | 177004099701 | 0.18750000 | 0.15250000 | 0.18750000 | 0.15250000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A001 | Apache | 177004011300 | 0.04930000 | 0.04010000 | 0.04930000 | 0.04010000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A002 | Apache | 177004011800 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A003 | Apache | 177004012400 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A004 | Apache | 177004012600 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A005 | Apache | 177004012800 | 0.03000000 | 0.02440000 | 0.03000000 | 0.02440000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A006 | Apache | 177004013200 | 0.05140000 | 0.04180000 | 0.05140000 | 0.04180000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A008 | Apache | 177004014100 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A009 | Apache | 177004014500 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A010 | Apache | 177004014700 | 0.14790000 | 0.12030000 | 0.14790000 | 0.12030000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A011 | Apache | 177004014900 | 0.04930000 | 0.04010000 | 0.04930000 | 0.04010000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A015 | Apache | 177004096100 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-A | WC 066 | A016 | Apache | 177004096601 | 0.04930000 | 0.04010000 | 0.04930000 | 0.04010000 |
| WC 066 | OCS-G 02826 | WC 066-A | WC 066 | A017 | Apache | 177004100600 | 0.08520000 | 0.06930000 | 0.08520000 | 0.06930000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B002 | Apache | 177004017600 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B003 | Apache | 177004017800 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B004 | Apache | 177004018300 | 0.04930000 | 0.04010000 | 0.04930000 | 0.04010000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B006 | Apache | 177004019100 | 0.14790000 | 0.12030000 | 0.14790000 | 0.12030000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B007 | Apache | 177004019600 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B008 | Apache | 177004020400 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|---|---|---|---|---|---|---|---|---|---|---|
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B009 | Apache | 177004020801 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B010 | Apache | 177004021400 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B012 | Apache | 177004023000 | 0.14790000 | 0.12030000 | 0.14790000 | 0.12030000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B014 | Apache | 177004022001 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B015 | Apache | 177004087600 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B016 | Apache | 177004097101 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 02826 | WC 066-B | WC 066 | B017 | Apache | 177004098700 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-C | WC 066 | C001 | Apache | 177004010502 | 0.13400000 | 0.10900000 | 0.13400000 | 0.10900000 |
| WC 066 | OCS-G 01860 | WC 066-C | WC 066 | C002 | Apache | 177004036603 | 0.05140000 | 0.04180000 | 0.05140000 | 0.04180000 |
| WC 066 | OCS-G 01860 | WC 066-C | WC 066 | C005 | Apache | 177004098302 | 0.05140000 | 0.04180000 | 0.05140000 | 0.04180000 |
| WC 066 | OCS-G 02826 | WC 066-E | WC 066 | E001 | Apache | 177004034700 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 02826 | WC 066-E | WC 066 | E002 | Apache | 177004043470 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 02826 | WC 066-E | WC 066 | E003 | Apache | 177004047900 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 02826 | WC 066-E | WC 066 | E004 | Apache | 177004051500 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 02826 | WC 066-E | WC 066 | E006 | Apache | 177004087900 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 02826 | WC 066-E | WC 066 | E007 | Apache | 177004128600 | 0.25000000 | 0.20330000 | 0.25000000 | 0.20330000 |
| WC 066 | OCS-G 03256 | WC 034-D | WC 067 | D001 | Apache | 177004031600 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 03256 | WC 034-D | WC 067 | D006 | Apache | 177004040700 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 03256 | WC 034-D | WC 067 | D009 | Apache | 177004078600 | 0.17450000 | 0.14190000 | 0.17450000 | 0.14190000 |
| WC 066 | OCS-G 03256 | WC 034-D | WC 067 | D010 | Apache | 177004098501 | 0.33330000 | 0.27100000 | 0.33330000 | 0.27100000 |
| WD 133 | OCS-G 19843 | WD 121-A | WD 121 | A005 | Apache | 177204015300 | 0.16000000 | 0.12773330 | 0.16000000 | 0.12773330 |
| WD 133 | OCS-G 19843 | WD 121-A | WD 121 | A006 | Apache | 177204015400 | 0.16000000 | 0.12773330 | 0.16000000 | 0.12773330 |
| WD 133 | OCS-G 19843 | WD 121-A | WD 121 | A007 | Apache | 177204015500 | 0.16000000 | 0.12773330 | 0.16000000 | 0.12773330 |
| WD 133 | OCS-G 19843 | WD 121-A | WD 121 | A010 | Apache | 177204015800 | 0.16000000 | 0.12773330 | 0.16000000 | 0.12773330 |
| WD 133 | OCS-G 13645 | WD 121-A | WD 122 | A001 | Apache | 177204014200 | 0.16000000 | 0.11333230 | 0.16000000 | 0.11333230 |
| WD 133 | OCS-G 13645 | WD 121-A | WD 122 | A003ST2 | Apache | 177204014802 | 0.17391300 | 0.12311870 | 0.16000000 | 0.11333230 |
| WD 133 | OCS-G 13645 | WD 121-A | WD 122 | A004 ST1 | Apache | 177204015201 | 0.16000000 | 0.11333230 | 0.16000000 | 0.11333230 |

Execution Version

| Field | Lease | Platform | Block | Well | Operator | API | BPO WI | BPO NRI | APO WI | APO NRI |
|---|---|---|---|---|---|---|---|---|---|---|
| WD 133 | OCS-G 13645 | WD 121-A | WD 122 | A008 ST01 | Apache | 177204015601 | 0.16000000 | 0.11333230 | 0.16000000 | 0.11333230 |
| WD 133 | OCS-G 13645 | WD 121-A | WD 122 | A009 | Apache | 177204015701 | 0.16000000 | 0.11333230 | 0.16000000 | 0.11333230 |
| WD 133 | OCS-G 13645 | WD 121-A | WD 122 | A011 BP1 | Apache | 177204016001 | 0.16000000 | 0.11333230 | 0.16000000 | 0.11333230 |
| WD 133 | OCS-G 13645 | WD 121-A | WD 122 | A012 | Apache | 177204016100 | 0.16000000 | 0.12773330 | 0.16000000 | 0.12773330 |

**Federal Units:**

**GI 116 Unit:** Unit No. 754398019. Unit Area- 3,515.625ac. Parts of leases OCS-G13943 and OCS-G13944, Grand Isle Area, Blocks 110 and 116.

**WD 30 Field I Sand, Reservoir A (I RA SU):** Unit No. 14-08-0001-11736. Unit Area- 385.03ac. Parts of leases OCS-00367, OCS-G01067 and OCS-G01332, West Delta Area, Block 32.

Execution Version

## Exhibit A-2

Attached to and made a part of that certain Assignment, Conveyance and Bill of Sale
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Assignor
and SandRidge Energy Offshore, LLC, as Purchaser

## Pipelines

| Segment Number | Originating Id Name | Originating Area Code | Originating Block Number | Originating Lease Number | Receiving Id Name | Receiving Area Code | Receiving Block Number | Receiving Lease Number | Approved Date | Status Code | Pipeline Size Code | Product | ROW Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9211 | B Platform | EI | 53 | 00479 | 22" SSTI | EI | 64 | G02098 | 10/17/1990 | ACT | 6 5/8" | G/C | G12373 |
| 9839 | #09 | EI | 53 | 00479 | B Platform | EI | 53 | 00479 | 2/12/1993 | ACT | 3 ½" | BLKO | |
| 15159 | G Caisson | EI | 53 | 00479 | C Platform | EI | 53 | 00479 | 8/8/2005 | ACT | 4" | BLKG | |
| 15160 | G Caisson | EI | 53 | 00479 | C Platform | EI | 53 | 00479 | 8/8/2005 | ACT | 4" | BLKG | |
| 11288 | #B-1 Caisson | EI | 107 | G15241 | #3 Caisson | EI | 108 | G03811 | 2/14/1997 | OUT | 3 ½" | LIFT | |
| 11055 | #B-1 Caisson | EI | 107 | G15241 | A Platform | EI | 107 | G15241 | 6/7/1996 | ACT | 2 7/8" | BLKG | |
| 11056 | A Platform | EI | 107 | G15241 | #B-1 Caisson | EI | 107 | G15241 | 6/7/1996 | ACT | 3 ½" | LIFT | |
| 11069 | A Platform | EI | 107 | G15241 | 20" SSTI | EI | 118 | G15242 | 7/12/1996 | ACT | 6 5/8" | G/C | G16062 |
| 11621 | #B-1 Caisson | EI | 107 | G15241 | A Platform | EI | 107 | G15241 | 11/26/1997 | ACT | 6 5/8" | BLKG | |
| 11289 | #3 Caisson | EI | 108 | G03811 | #B-1 Caisson | EI | 107 | G15241 | 2/14/1997 | OUT | 6 5/8" | BLKG | |
| 12067 | #2 Caisson | EI | 118 | G15242 | A Platform | EI | 107 | G15241 | 1/5/1999 | ACT | 6 5/8" | BLKG | |
| 44 | C Platform | EI | 175 | 00438 | 12" SSTI | EI | 176 | 00445 | 4/27/1973 | ACT | 8 5/8" | OIL | G13445 |
| 3651 | B Platform | EI | 175 | 00438 | 10" SSTI | EI | 175 | 00438 | 9/18/1967 | COMB | 8 5/8" | GAS | G01687 |
| 3652 | C Platform | EI | 175 | 00438 | D Platform | EI | 175 | 00438 | 6/14/1972 | ACT | 4" | LIFT | |
| 3653 | D Platform | EI | 175 | 00438 | C Platform | EI | 175 | 00438 | 6/14/1972 | ACT | 4" | BLKO | |
| 3654 | D Platform | EI | 175 | 00438 | C Platform | EI | 175 | 00438 | 6/14/1972 | ACT | 4" | BLKO | |
| 6540 | F Platform | EI | 175 | 00438 | C Platform | EI | 175 | 00438 | 10/4/1982 | OUT | 6 5/8" | BLKO | |
| 10661 | D Platform | EI | 175 | 00438 | I Platform | EI | 175 | 00438 | 9/14/1995 | ACT | 2 7/8" | LIFT | |
| 10662 | I Platform | EI | 175 | 00438 | D Platform | EI | 175 | 00438 | 9/14/1995 | ACT | 6 5/8" | BLKO | |
| 11027 | I Platform | EI | 175 | 00438 | C Platform | EI | 175 | 00438 | 5/31/1996 | ACT | 6 5/8" | BLKO | |
| 11028 | H Platform | EI | 175 | 00438 | 6" SSTI | EI | 175 | 00438 | 5/31/1996 | ACT | 6 5/8" | BLKO | |

| Segment Number | Originating Id Name | Originating Area Code | Originating Block Number | Originating Lease Number | Receiving Id Name | Receiving Area Code | Receiving Block Number | Receiving Lease Number | Approved Date | Status Code | Pipeline Size Code | Product | ROW Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11029 | F Platform | EI | 175 | 00438 | C Platform | EI | 175 | 00438 | 5/31/1996 | OUT | 6 5/8" | BLKO | |
| 11030 | C Platform | EI | 175 | 00438 | F Platform | EI | 175 | 00438 | 5/31/1996 | OUT | 2 7/8" | LIFT | |
| 11972 | F Platform | EI | 175 | 00438 | J Platform | EI | 175 | 00438 | 4/2/1999 | OUT | 2 7/8" | LIFT | |
| 11973 | J Platform | EI | 175 | 00438 | F Platform | EI | 175 | 00438 | 4/2/1999 | OUT | 6 5/8" | BLKO | |
| 11974 | J Platform | EI | 175 | 00438 | F Platform | EI | 175 | 00438 | 4/2/1999 | OUT | 6 5/8" | BLKO | |
| 18615 | C Platform | EI | 175 | 00438 | 10" SSTI | EI | 175 | 00438 | 5/9/2012 | COMB | 8 5/8" | GAS | |
| 18818 | B Platform | EI | 175 | 00438 | Capped End | EI | 175 | 00438 | | PABN | 8 5/8" | GAS | |
| 18832 | C Platform | EI | 175 | 00438 | 10" SSTI | EI | 175 | 00438 | | ACT | 8 5/8" | GAS | |
| 15020 | #1 Caisson | GA | 210 | G25524 | A Platform | GA | 190 | G20623 | 2/4/2005 | ACT | 4" | BLKG | G26803 |
| 15298 | B Platform | GA | 210 | G25524 | 12" SSTI | GA | 239 | G09032 | 11/4/2005 | ACT | 8 5/8" | G/C | G26931 |
| 6669 | A Platform | HI | A376 | G02754 | 12" SSTI | HI | A356 | G02746 | 7/19/1983 | ACT | 10 ¾" | GAS | G05238 |
| 10196 | B Platform | HI | A376 | G02754 | A Platform | HI | A376 | G02754 | 7/28/1994 | ACT | 8 5/8" | GAS | |
| 10197 | B Platform | HI | A376 | G02754 | A Platform | HI | A376 | G02754 | 7/28/1994 | ACT | 4" | G/O | |
| 17683 | C Platform | HI | A376 | G02754 | A Platform | HI | A376 | G02754 | 2/25/2009 | ACT | 6 5/8" | OIL | |
| 17685 | A Platform | HI | A376 | G02754 | C Platform | HI | A376 | G02754 | 2/25/2009 | ACT | 4" | LIFT | |
| 7890 | F Platform | HI | A382 | G02757 | B Platform | HI | A573 | G02393 | 8/25/1986 | ACT | 10 ¾" | GAS | |
| 8256 | F Platform | HI | A382 | G02757 | CF Platform | HI | A595 | G02721 | 1/20/1988 | ACT | 10 ¾" | BLKO | |
| 4886 | 08 SSTI | HI | A546 | G32773 | A Platform | HI | A474 | G02366 | 02/24/1978 | ACT | 10 | Oil | G05150 |
| 4883 | 08 SSTI | HI | A547 | G02705 | 10 SSTI | HI | A546 | G32773 | 02/24/1978 | ACT | 10 ¾ | Oil | G05150 |
| 4850 | A Platform | HI | A573 | G02393 | B Platform | HI | A573 | G02393 | 12/22/1977 | ACT | 10 ¾" | BLKG | |
| 4851 | A Platform | HI | A573 | G02393 | B Platform | HI | A573 | G02393 | 12/22/1977 | ACT | 6 5/8" | BLKG | |
| 6504 | D Platform | HI | A595 | G02721 | B Platform | HI | A573 | G02393 | 7/14/1982 | ACT | 8 5/8" | OIL | G28525 |
| 7592 | E Platform | HI | A596 | G02722 | CF Platform | HI | A595 | G02721 | 7/9/1985 | PABN | 8 5/8" | BLKO | |
| 7593 | E Platform | HI | A596 | G02722 | CF Platform | HI | A595 | G02721 | 7/9/1985 | PABN | 10 ¾" | BLKO | |
| 13642 | H Platform | SM | 280 | G14456 | A Platform | SM | 268 | G02310 | 2/6/2002 | ACT | 10 ¾" | BLKG | |
| 13771 | I Platform | SM | 280 | G14456 | C Platform | SM | 281 | G02600 | 6/14/2002 | ACT | 6 5/8" | BLKG | |
| 13772 | Well I-2 | SM | 280 | G14456 | C Platform | SM | 281 | G02600 | 6/13/2002 | OUT | 6 5/8" | BLKG | |
| 13772 | Well I-3 | SM | 280 | G14456 | C Platform | SM | 281 | G02600 | 6/13/2002 | ACT | 6 5/8" | BLKG | |
| 5890 | A Platform | ST | 53 | G04000 | A Platform | ST | 52 | G01241 | 9/23/1988 | ACT | 6 5/8" | OIL | G09319 |

Execution Version

| Segment Number | Originating Id Name | Originating Area Code | Originating Block Number | Originating Lease Number | Receiving Id Name | Receiving Area Code | Receiving Block Number | Receiving Lease Number | Approved Date | Status Code | Pipeline Size Code | Product | ROW Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6260 | I Platform | ST | 53 | G04000 | A Platform | ST | 53 | G04000 | 10/6/1981 | OUT | 6 5/8" | BLKG | |
| 8148 | #05 (C) Caisson | ST | 53 | G04000 | A-Aux Platform | ST | 53 | G04000 | 9/18/1987 | OUT | 4" | BLKO | |
| 9837 | A Platform | ST | 53 | G04000 | #05 (C) Caisson | ST | 53 | G04000 | 2/9/1993 | OUT | 4" | LIFT | |
| 5343 | Platform D | WC | 35 | G01860 | SSTI | WC | 34 | Unleased | 5/14/1979 | ACT | 8 5/8" | G/O | G28659 |
| 11073 | #03 Caisson | WC | 35 | G02819 | A Platform | WC | 66 | G02826 | 7/3/1996 | OUT | 6 5/8" | BLKG | |
| 14459 | JA-Aux Platform | WC | 65 | G02825 | B Platform | WC | 66 | G02826 | 12/2/2003 | ACT | 3 ½" | LIFT | |
| 3986 | A Platform | WC | 66 | G01860 | F/S Boundary | WC | 31 | Unleased | 5/7/1976 | ACT | 10 ¾" | G/O | G03345 |
| 4019 | B Platform | WC | 66 | G02826 | 10" SSTI | WC | 66 | G02826 | 9/20/1976 | ACT | 8 5/8" | G/O | |
| 5337 | C Platform | WC | 66 | G02826 | 08" SSTI | WC | 66 | G02826 | 5/10/1979 | ACT | 6 5/8" | G/O | |
| 14358 | C Platform | WC | 66 | G01860 | 6" SSTI | WC | 66 | G01860 | 10/6/2003 | ACT | 6 5/8" | GAS | |
| 14359 | A Platform | WC | 66 | G01860 | 8" SSTI | WC | 66 | G02826 | 9/19/2003 | ACT | 6 5/8" | GAS | |
| 14360 | B Platform | WC | 66 | G02826 | JA-Aux Platform | WC | 65 | G02825 | 12/2/2003 | ACT | 8 5/8" | GAS | |
| 14460 | 2" SSTI | WC | 66 | G01860 | C Platform | WC | 66 | G01860 | 10/6/2003 | ACT | 2 7/8" | LIFT | |
| 14461 | 3" SSTI | WC | 66 | G02826 | A Platform | WC | 66 | G01860 | 11/3/2003 | ACT | 2 7/8" | LIFT | |
| 14559 | F Platform | WC | 66 | G02826 | D Platform | WC | 71 | 00244 | 2/18/2004 | ACT | 6 5/8" | BLKG | |
| 16088 | A Platform | WD | 122 | G13645 | E Platform | WD | 165 | 00842 | 5/21/2007 | ACT | 6 5/8" | GAS | |
| 16089 | A Platform | WD | 122 | G13645 | E Platform | WD | 165 | 00842 | 5/21/2007 | ACT | 3 ½" | OIL | |
| End Segment | F/S Boundary | WC | 31 | Unleased | Cameron Parish (Sec.10/15, T15S-R7W) | | | | | ACT | 10 ¾" | OIL | LA State ROW 1625 |
| End Segment | F/S Boundary | WC | 31 | Unleased | Cameron Parish-Mermentau River (T15S-R7W) | | | | | ACT | 10 ¾" | OIL | LA State ROW 1626 |

-32-

Execution Version

**Exhibit A-3**

Attached to and made a part of that certain Assignment, Conveyance and Bill of Sale
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Assignor
and SandRidge Energy Offshore, LLC, as Assignee

## Easements

**OCS-G 09319,** Segment No. 5890; a 200-foot wide right-of-way to operate and maintain an existing 06-5/8-inch pipeline, 2.29 miles in length, to transport oil from Block 53 A Platform, South Timbalier Area to Block 52 A Platform, South Timbalier Area.

**OCS-G 05150,** Segment No. 4883, being a right-of-way, 200 feet in width and 15,734 feet in length for a 10 3/4 inch pipeline to transport crude oil from Block 547 08 SSTI to Block 546 10 SSTI, all in the High Island Offshore Texas.

**OCS-G 05150,** Segment No. 4886, being a right-of-way, 200 feet in width and 108,610 feet in length, for a 10 3/4 inch pipeline to transport crude oil from High Island Block A546 10 SSTI to High Island Block A474 Platform A, all in the High Island Offshore, Texas.

Execution Version

## Exhibit A-4

Attached to and made a part of that certain Assignment, Conveyance and Bill of Sale
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Assignor
and SandRidge Energy Offshore, LLC, as Assignee

| AREA/BLOCK | LEASE NO. | PLATFORM NAME | PLATFORM ID | OPERATOR | TYPE | WATER DEPTH | DECKS | SLOTS |
|---|---|---|---|---|---|---|---|---|
| Eugene Island 53 | OCS-00479 | #8 Caisson | 23939-1 | Apache Shelf, Inc. | Caisson | 18 | 2 | 1 |
| Eugene Island 53 | OCS-00479 | #9 Caisson | 23939-2 | Apache Shelf, Inc. | Caisson | 18 | 2 | 1 |
| Eugene Island 53 | OCS-00479 | B Platform | 23906-1 | Apache Shelf, Inc. | Fixed | 22 | 2 | 1 |
| Eugene Island 53 | OCS-00479 | C Platform | 228-1 | Apache Shelf, Inc. | Fixed | 22 | 2 | 4 |
| Eugene Island 53 | OCS-00479 | G Caisson | 1702-1 | Apache Shelf, Inc. | Caisson | 19 | 3 | 1 |
| | | | | | | | | |
| Eugene Island 107 | OCS-G 15241 | A Platform | 22447-1 | Apache Corporation | Fixed | 31 | 2 | 0 |
| Eugene Island 107 | OCS-G 15241 | A-3 Platform | 22447-2 | Apache Corporation | | 31 | | 0 |
| Eugene Island 107 | OCS-G 15241 | B-1 Caisson | 80005-1 | Apache Corporation | Caisson | 35 | 1 | 1 |
| | | | | | | | | |
| Eugene Island 108 | OCS-G 03811 | #3 Caisson | 80012-1 | Apache Corporation | Caisson | 31 | 3 | 1 |
| | | | | | | | | |
| Eugene Island 118 | OCS-G 15242 | #2 Caisson | 354-1 | Black Elk Energy Offshore Operations, LLC | Caisson | 38 | 3 | 1 |
| | | | | | | | | |
| Eugene Island 175 | OCS-00438 | B Platform | 20330-1 | Apache Corporation | Fixed | 85 | 2 | 9 |
| Eugene Island 175 | OCS-00438 | C-PRD Platform | 20330-2 | Apache Corporation | Fixed | 85 | 2 | 0 |
| Eugene Island 175 | OCS-00438 | D Platform | 20324-1 | Apache Corporation | Fixed | 83 | 2 | 19 |
| Eugene Island 175 | OCS-00438 | F Platform | 22313-1 | Apache Corporation | Fixed | 83 | 2 | 9 |
| Eugene Island 175 | OCS-00438 | H Platform | 26105-1 | Apache Corporation | Caisson | 75 | 2 | 5 |
| Eugene Island 175 | OCS-00438 | I Platform | 26136-1 | Apache Corporation | Caisson | 75 | 2 | 5 |

Execution Version

| AREA/BLOCK | LEASE NO. | PLATFORM NAME | PLATFORM ID | OPERATOR | TYPE | WATER DEPTH | DECKS | SLOTS |
|---|---|---|---|---|---|---|---|---|
| Eugene Island 175 | OCS-00438 | J Platform | 252-1 | Apache Corporation | Caisson | 87 | 3 | 9 |
| Galveston 210 | OCS-G 25524 | #1 Caisson | 1620-1 | Apache Shelf, Inc. | Caisson | 60 | 1 | 2 |
| Grand Isle 116 | OCS-G13944 | A Platform (Hickory) | 686-1 | Apache Corporation | Fixed | 326 | 4 | 8 |
| High Island A-376 | OCS-G02754 | A Platform | 10175-1 | Apache Corporation | Fixed | 328 | 2 | 24 |
| High Island A-376 | OCS-G02754 | B Platform | 10597-1 | Apache Corporation | Fixed | 341 | 2 | 12 |
| High Island A-376 | OCS-G02754 | C Platform | 2245-1 | Apache Corporation | Fixed | 332 | 3 | 4 |
| High Island A-382 | OCS-G02757 | F Platform | 10300-1 | Apache Corporation | Fixed | 345 | 2 | 24 |
| High Island A-573 | OCS-G02393 | A Platform | 10058-1 | Apache Corporation | Fixed | 327 | 2 | 18 |
| High Island A-573 | OCS-G02393 | B Platform | 10066-1 | Apache Corporation | Fixed | 336 | 3 | 18 |
| High Island A-595 | OCS-G02721 | CF Platform | 10140-2 | Apache Corporation | Fixed | 395 | 4 | 0 |
| High Island A-595 | OCS-G02721 | D Platform | 10140-1 | Apache Corporation | Fixed | 395 | 2 | 18 |
| High Island A-596 | OCS-G02722 | E Platform | 10265-1 | Apache Corporation | Fixed | 348 | 2 | 24 |
| North Padre Island 883L | M-100412 | A Platform | | Apache Shelf, Inc. | Fixed | | | 2 |
| South Marsh Island | OCS- | H Platform | 952-1 | Apache Corporation | Fixed | 42 | 3 | 3 |

-35-

Execution Version

| AREA/BLOCK | LEASE NO. | PLATFORM NAME | PLATFORM ID | OPERATOR | TYPE | WATER DEPTH | DECKS | SLOTS |
|---|---|---|---|---|---|---|---|---|
| 280 | G14456 | | | | | | | |
| South Marsh Island 280 | OCS-G14456 | I Caisson | 1069-1 | Apache Corporation | Fixed | 44 | 2 | 3 |
| | | | | | | | | |
| South Timbalier 53 | OCS-G04000 | #4 Caisson | 22768-1 | Black Elk Energy Offshore Operations, LLC | Caisson | 62 | 1 | 1 |
| South Timbalier 53 | OCS-G04000 | #6 Caisson | 24184-1 | Black Elk Energy Offshore Operations, LLC | Caisson | 61 | 2 | 1 |
| South Timbalier 53 | OCS-G04000 | A Platform | 22421-1 | Black Elk Energy Offshore Operations, LLC | Fixed | 62 | 2 | 20 |
| South Timbalier 53 | OCS-G04000 | A-Aux Platform | 22421-2 | Black Elk Energy Offshore Operations, LLC | Fixed | 62 | 2 | 0 |
| South Timbalier 53 | OCS-G04000 | C (5) Caisson | 23534-1 | Black Elk Energy Offshore Operations, LLC | Caisson | 62 | 1 | 2 |
| South Timbalier 53 | OCS-G04000 | I Platform | 22512-1 | Black Elk Energy Offshore Operations, LLC | Fixed | 56 | 2 | 1 |
| | | | | | | | | |
| Vermilion 78 | OCS-G04421 | A Platform | 23674-1 | Apache Corporation | Fixed | 38 | 2 | 3 |
| | | | | | | | | |
| West Cameron 34 | OCS-G03251 | D Platform | 22182-1 | Apache Corporation | Fixed | 32 | 3 | 8 |
| | | | | | | | | |
| West Cameron 35 | OCS-G02819 | #3 Caisson | 29044-1 | Apache Corporation | Caisson | 29 | 1 | 1 |
| | | | | | | | | |
| West Cameron 66 | OCS-G02826 | #31 Caisson | 1478-1 | Apache Corporation | Caisson | 37 | 2 | 1 |
| West Cameron 66 | OCS-G01860 | A Platform | 21755-1 | Apache Corporation | Fixed | 31 | 1 | 26 |
| West Cameron 66 | OCS-G02826 | B Platform | 21997-1 | Apache Corporation | Fixed | 31 | 3 | 19 |
| West Cameron 66 | OCS-G01860 | C Platform | 22285-1 | Apache Corporation | Fixed | 31 | 3 | 4 |

Execution Version

| AREA/BLOCK | LEASE NO. | PLATFORM NAME | PLATFORM ID | OPERATOR | TYPE | WATER DEPTH | DECKS | SLOTS |
|---|---|---|---|---|---|---|---|---|
| West Cameron 66 | OCS-G02826 | E Platform | 22286-1 | Apache Corporation | Fixed | 36 | 3 | 8 |
| West Delta 122 | OCS-G13645 | A Platform | 410-1 | Apache Corporation | Fixed | 269 | 4 | 12 |

**Exhibit A-5**

Attached to and made a part of that certain Assignment, Conveyance and Bill of Sale
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Assignor
and SandRidge Energy Offshore, LLC, as Assignee

## Contracts

| BLOCK | CONTRACT DESCRIPTION |
|---|---|
| | |
| EUGENE ISLAND 53 | OPERATING AGREEMENT DATED JUNE 1, 1990, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY AND SANDEFER OFFSHORE COMPANY COVERING OCS-G 479, BLOCK 53, EUGENE ISLAND. |
| EUGENE ISLAND 53 | JOINT DEVELOPMENT AGREEMENT DATED FEBRUARY 10, 1994, BY AND BETWEEN PENNZOIL EXPLORATION AND PRODUCTION COMPANY, SONAT EXPLORATION COMPANY AND UNION OIL COMPANY OF CALIFORNIA - TERMINATED BY LETTER AGREEMENT DATED MARCH 10, 1999. |
| EUGENE ISLAND 53 | PRODUCTION PROCESSING AND HANDLING AND OPERATING AGREEMENT DATED MAY 27, 1997, BY AND BETWEEN FOREST OIL CORPORATION AND EUGENE ISLAND 53B PLATFORM OWNERS. |
| EUGENE ISLAND 53 | LIKE KIND EXCHANGE AGREEMENT DATED AUGUST 5, 1998, BY AND BETWEEN TAURUS EXPLORATION USA, INC, AND EEX CORPORATION. |
| EUGENE ISLAND 53 | ASSIGNMENT OF THE PROPORTIONAL OWNERSHIP OF THE CALUMET GAS PROCESSING PLANT PURSUANT TO THE C & O AGREEMENT DATED JANUARY 1, 1970 BETWEEN THE CALUMET PLANT OWNERS |
| EUGENE ISLAND 107, 108, 117, 118 | PROCESSING LETTER AGREEMENT DATED JULY 25, 1996, BY AND BETWEEN NORCEN EXPLORER, INC, AND ENSERCH EXPLORATION, INC, ET AL. |

Execution Version

| | |
|---|---|
| EUGENE ISLAND 107, 108, 117, 118 | OFFSHORE OPERATING AGREEMENT EFFECTIVE JULY 1, 1995, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, DALEN RESOURCES OIL & GAS CO AND GLOBAL NATURAL RESOURCES CORPORATION OF NEVADA COVERING PORTIONS OF BLOCK 117 AND 118, EUGENE ISLAND, AS AMENDED TO EXCLUDE JOINT DEVELOPMENT ACREAGE. |
| EUGENE ISLAND 107, 108, 117, 118 | JOINT DEVELOPMENT AREA AGREEMENT DATED MARCH 7, 1996, BY AND BETWEEN LOUISIANA LAND AND EXPLORATION COMPANY AND ENSERCH EXPLORATION, INC, ET AL COVERING PORTIONS OF BLOCKS 107, 108, 118 AND 117, EUGENE ISLAND. |
| EUGENE ISLAND 107, 108, 117, 118 | OFFSHORE DEVELOPMENT AREA OPERATING AGREEMENT DATED FEBRUARY 23, 1996, BY AND BETWEEN NORCEN EXPLORER, INC, AS OPERATOR, AND GLOBAL NATURAL RESOURCES OF NEVADA ET AL, AS NON-OPERATOR, COVERING PORTIONS OF BLOCKS 107, 108, 118 AND 117, EUGENE ISLAND. |
| EUGENE ISLAND 107, 108, 117, 118 | PRODUCTION HANDLING AGREEMENT DATED NOVEMBER 1, 2000, BY AND BETWEEN RME PETROLEUM COMPANY ET AL, PROCESSOR, AND RME PETROLEUM COMPANY ET AL, PRODUCER. |
| EUGENE ISLAND 175 | OFFSHORE OPERATING AGREEMENT EFFECTIVE NOVEMBER 1, 1995, BY AND BETWEEN VASTAR RESOURCES, INC, AND MERIDIAN OIL OFFSHORE INC, AS AMENDED. |
| EUGENE ISLAND 175 | AGREEMENT AND AMENDMENT TO JOA DATED JUNE 7, 2004, BY AND BETWEEN APACHE CORPORATION AND OFFSHORE ENERGY I LLC. |
| GALVESTON 210 | GAS PURCHASE LETTER AGREEMENT DATED MARCH 3, 2009, BY AND BETWEEN MARINER AND MERIT ENERGY. |
| GALVESTON 210 | LETTER OF INTENT DATED OCTOBER 6, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | EXPLORATION AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | OFFSHORE OPERATING AGREEMENT DATED OCTOBER 7, 2004, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | PRODUCTION HANDLING AGREEMENT DATED MAY 1, 2005, BY AND BETWEEN THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| GALVESTON 210 | VOLUNTARY UNIT AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |

| GALVESTON 210 | OFFSHORE OPERATING AGREEMENT DATED JANUARY 1, 2005, BY AND BETWEEN SPINNAKER EXPLORATION COMPANY, L.L.C. AND THE HOUSTON EXPLORATION COMPANY AND GRYPHON EXPLORATION COMPANY. |
|---|---|
| GRAND ISLE 110,116 | LETTER AGREEMENT DATED MARCH 2, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, ET AL, AND AMOCO PRODUCTION COMPANY, ET AL. |
| GRAND ISLE 110,116 | UNIT OPERATING AGREEMENT DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION AND SHELL OFFSHORE INC. |
| GRAND ISLE 110,116 | UNIT AGREEMENT FOR OUTER CONTINENTAL SHELF EXPLORATION, DEVELOPMENT, AND PRODUCTION OPERATIONS ON THE GRAND ISLE BLOCK 116 UNIT, DATED MARCH 1, 1998, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AND SHELL OFFSORE INC. |
| GRAND ISLE 110,116 | PIPELINE TIE-IN AND GAS MEASUREMENT, CONSTRUCTION, INSTALLATION, MEASUREMENT AND MAINTENANCE AGREEMENT DATED OCTOBER 1, 1999, BY AND BETWEEN MANTA RAY OFFSHORE GATHERING COMPANY, LLC AND ANADARKO PETROLEUM CORPORATION, ET AL. |
| GRAND ISLE 110,116 | PRODUCTION HANDLING AGREEMENT DATED JUNE 1, 2005, BY AND BETWEEN APACHE CORPORATION AND W&T OFFSHORE, INC. |
| GRAND ISLE 116 | BAYOU BLACK TERMINALLING AGREEMENT DATED JUNE 26, 2006 BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND WFS LIQUID COMPANY. |
| GRAND ISLE 116 | LIQUID HYDROCARBONS STABILIZATION AGREEMENT DATED FEBRUARY 1, 2009 BY AND BETWEEN ENTERPRISE FIELD SERVICES AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| GRAND ISLE 116 | KOCH SUPPLY & TRADING OIL PURCHASE AGREEMENT DATED SEPTEMBER 1, 2005 BY AND BETWEEN KOCH AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| GRAND ISLE 116 | ENTERPRISE GAS PROCESSING, GAS PROCESSING FRACTIONATION & PRODUCTION PURCHASE AGREEMENT NORTH TERREBONNE GAS PROCESSING PLANT DATED APRIL 1, 2008 BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND ENTERPRISE GAS PROCESSING. |
| GRAND ISLE 116 | MANTA RAY OFFSHORE GATHERING DATED JANUARY 17, 1997, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND MANTA RAY OFFSHORE GATHERING. |
| GRAND ISLE 116 | PATTERSON GAS PROCESSING AGREEMENT DATED JULY 1, 2007 BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND ANR PIPELINE. |
| GRAND ISLE 116 | MANTA RAY OFFSHORE INTERACTIVE INTERNET WEBSITE AGREEMENT DATED AUGUST 1, 2005, BY AND BETWEEN MANTA RAY PIPELINE AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| GRAND ISLE 116 | CALUMET GAS PROCESSING DATED FEBRUARY 1, 2009, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND ENTERPRISE GAS PROCESSING, LLC. |
| GRAND ISLE 110,116 | NAUTILUS PIPELINE LIQUIDS TRANSPORTATION AGREEMENT DATED AUGUST 1, 2005, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND NAUTILUS PIPELINE. |
| GRAND ISLE 110,116 | NAUTILUS PIPELINE TRANSPORTATION SERVICE AGREEMENT DATED AUGUST 1, 2005, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND NAUTILUS PIPELINE. |

Execution Version

| GRAND ISLE 110,116 | NAUTILUS PIPELINE INTERACTIVE INTERNET WEBSITE AGREEMENT DATED JULY 31, 2006, BY AND BETWEEN NIPPON OIL EXPLORATION U.S.A. LIMITED AND NAUTILUS PIPELINE. |
|---|---|
| GRAND ISLE 110,116 | BASE CONTRACT FOR SALE & PURCHASE OF NATURAL GAS DATED JULY 31, 2006, BY AND BETWEEN SHELL ENERGY AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| HIGH ISLAND 365A | FARMOUT AGREEMENT EFFECTIVE MAY 2, 1978, BY AND BETWEEN ENSERCH, FARMOR, AND ANADARKO, FARMEE. |
| HIGH ISLAND 365A | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, NON-OPERATORS. |
| HIGH ISLAND 365A | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |
| HIGH ISLAND 376A | OPERATING AGREEMENT EFFECTIVE SEPTEMBER 15, 1979, BY AND BETWEEN ANADARKO PRODUCTION CO, AS OPERATOR, AND PAN EASTERN EXPLORATION COMPANY, DIAMOND SHAMROCK CORPORATION, COLUMBIA GAS DEVELOPMENT CORPORATION, TEXASGULF, INC, AND SAMEDAN OIL CORPORATION, COVERING BLOCK A-365 AND A-376, HIGH ISLAND AREA, AS AMENDED AND RATIFIED BY ELF AQUITAINE, INC. |
| HIGH ISLAND 376A | HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AGREEMENT DATED MARCH 21, 2002 BETWEEN OWNERS OF THE HIGH ISLAND PIPELINE SYSTEM PER EXHIBIT G OF THE OPERATING AGREEMENT. WILL BE REPLACED BY NEW OPERATING AND ADMINISTRATIVE AGREEMENT AND OWNERS AGREEMENT ONCE EXECUTED BY THE OWNERS. A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 376A | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AND ADMINISTRATIVE MANAGEMENT AGREEMENT DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |

| | |
|---|---|
| HIGH ISLAND 376A | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OWNERS AGREEMENT BETWEEN OWNERS OF HIGH ISLAND PIPELINE SYSTEM (COLLECTIVELY THE "HIPS OWNERS") DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 376A | QUESTOR LEASE SPACE AGREEMENT DATED JUNE 1, 1998 BETWEEN QUESTOR PIPELINE COMPANY, MCALISTER ENTERPRISES, INC., APACHE CORPORATION, HUNT PETROLEUM (AEC), INC, W&T OFFSHORE, INC, AND NOBLE ENERGY, INC. |
| HIGH ISLAND 376A | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |
| HIGH ISLAND 382A | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL PRODUCING TEXAS AND NEW MEXICO INC. ET AL, AS AMENDED JANUARY 1, 1989. |
| HIGH ISLAND 382A | GAS BALANCING AGREEMENT DATED JANUARY 4, 1979, BY AND BETWEEN MOBIL PRODUCING TEXAS AND NEW MEXICO INC. ET AL, AS AMENDED JULY 1, 1995. |
| HIGH ISLAND 382A | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |
| HIGH ISLAND 573 | HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AGREEMENT DATED MARCH 21, 2002 BETWEEN OWNERS OF THE HIGH ISLAND PIPELINE SYSTERM PER EXHIBIT G OF THE OPERATING AGREEMENT. WILL BE REPLACED BY NEW OPERATING AND ADMINISTRATIVE AGREEMENT AND OWNERS AGREEMENT ONCE EXECUTED BY THE OWNERS. A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND 573 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AND ADMINISTRATIVE MANAGEMENT AGREEMENT DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |

| | |
|---|---|
| HIGH ISLAND 573 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OWNERS AGREEMENT BETWEEN OWNERS OF HIGH ISLAND PIPELINE SYSTEM (COLLECTIVELY THE "HIPS OWNERS") DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND A573, A595, A596, | ASSIGNMENT OF THE GRAND CHENIER GAS PLANT SERVICES AGREEMENT DATED DECEMBER 18, 2007 BETWEEN W&T OFFSHORE AND CDM MAX, LLC |
| HIGH ISLAND A595 | HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AGREEMENT DATED MARCH 21, 2002 BETWEEN OWNERS OF THE HIGH ISLAND PIPELINE SYSTERM PER EXHIBIT G OF THE OPERATING AGREEMENT. WILL BE REPLACED BY NEW OPERATING AND ADMINISTRATIVE AGREEMENT AND OWNERS AGREEMENT ONCE EXECUTED BY THE OWNERS. A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND A595 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OPERATING AND ADMINISTRATIVE MANAGEMENT AGREEMENT DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND A595 | PROPOSED - HIGH ISLAND PIPELINE SYSTEM (HIPS) OWNERS AGREEMENT BETWEEN OWNERS OF HIGH ISLAND PIPELINE SYSTEM (COLLECTIVELY THE "HIPS OWNERS") DATED JUNE 1, 2009, TO REPLACE AGREEMENT DATED MARCH 21, 2002 BETWEEN THE OWNERS OF HIGH ISLAND PIPELINE SYSTEMS (HIPS). A PRO RATA SHARE OF HIPS PIPELINE SEGMENT OWNERSHIP WILL BE ACQUIRED EITHER UNDER ASSIGNMENT OR JOINDER AGREEMENT. |
| HIGH ISLAND A595, A596 | OPERATING AGREEMENT DATED JULY 1, 1974, BY AND BETWEEN MOBIL OIL CORPORATION, UNION OIL COMPANY OF CALIFORNIA, TEXAS GAS EXPLORATION CORPORATION, AMOCO PRODUCTION COMPANY AND NORTHWEST MUTUAL LIFE INSURANCE COMPANY, AS AMENDED. |
| MISSISSIPPI CANYON 110 | OPERATING AGREEMENT EFFECTIVE FEBRUARY 1, 1998, BY AND BETWEEN SHELL OFFSHORE, INC, OPERATOR. AND WESTPORT OIL & GAS COMPANY, INC, NON-OPERATOR. |
| MISSISSIPPI CANYON 110 | PARTICIPATION AGREEMENT EFFECTIVE MARCH 3, 1988, BY AND BETWEEN WESTPORT OIL AND GAS COMPANY, INC, AND BASIN EXPLORATION, INC. |

Execution Version

| | |
|---|---|
| MISSISSIPPI CANYON-110 | PLATFORM ACCESS, OPERATING SERVICES AND PRODUCTION HANDLING AGREEMENT EFFECTIVE JUNE 30, 1999, BY AND BETWEEN BP EXPLORATION AND OIL INC ET AL, AMBERJACK PLATFORM OWNERS, AND SHELL OFFSHORE, INC, PRODUCERS. |
| NORTH PADRE ISLAND 883 | EXPLORATION AGREEMENT DATED AUGUST 5, 1999 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| NORTH PADRE ISLAND 883 | JOINT OPERATING AGREEMENT DATED JULY 12, 1998 BY AND BETWEEN RANGER OIL COMPANY, THE HOUSTON EXPLORATION COMPANY AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| NORTH PADRE ISLAND 883 | POOLING AGREEMENT DATED DECEMBER 18, 2002, BY AND BETWEEN THE STATE OF TEXAS AND SPINNAKER EXPLORATION COMPANY, L.L.C. |
| SOUTH MARSH ISLAND 280 | OPERATING AGREEMENT DATED JUNE 1, 1994, BY AND BETWEEN NORCEN EXPLORER, INC, OPERATOR, AND DALEN RESOURCES OIL & GAS CO. |
| SOUTH MARSH ISLAND 280 | REVISED LETTER OF INTENT (FARMOUT) DATED DECEMBER 14, 1995, BY AND BETWEEN ENSERCH EXPLORATION, INC, AND PETROBRAS AMERICA, INC. |
| SOUTH MARSH ISLAND 280 | SPACE LEASE AND PRODUCTION HANDLING OPERATIONS AGREEMENT DATED AUGUST 14, 1995, BY AND BETWEEN NORCEN EXPLORER, INC ET AL (PLATFORM OWNERS) AND DALEN RESOURCES OIL & GAS CO. |
| SOUTH MARSH ISLAND 280, 281 | JOINT DEVELOPMENT AGREEMENT  EFFECTIVE JUNE 15, 2001, BY AND BETWEEN RME PETROLEUM COMPANY AND W&T OFFSHORE, INC, "SM280 OWNERS" AND RME ET AL "SM 281 OWNERS" AND THAT CERTAIN JOINT OPERATING AGREEMENT ATTACHED THERETO AS EXHIBIT "B". |
| SOUTH MARSH ISLAND 280, 281 | ASSIGNMENT OF THE PROPORTIONAL OWNERSHIP OF THE CALUMET GAS PROCESSING PLANT PURSUANT TO THE C & O AGREEMENT DATED JANUARY 1, 1970 BETWEEN THE CALUMET PLANT OWNERS |
| SOUTH TIMBALIER 53 | OPERATING AGREEMENT DATED MARCH 1, 1979, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA AND MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC. |
| SOUTH TIMBALIER 53 | AMENDMENT NO 2 TO PRODUCTION & HANDLING AGREEMENT DATED JUNE 1, 2008, BY AND BETWEEN APACHE CORPORATION AND MERIT ENERGY, ET AL. |
| SOUTH TIMBALIER 53 | PLATFORM RENTAL AND MAINTENANCE AGREEMENT DATED JANUARY 21, 1981, BY AND BETWEEN CHEVRON U.S.A. INC. AND UNION OIL COMPANY OF CALIFORNIA. |
| SOUTH TIMBALIER 53 | LEASE OF PLATFORM SPACE FOR COMMUNICATIONS EQUIPMENT DATED AUGUST 1, 2000, BY AND BETWEEN LINDER AND LOUISIANA GENERAL AND CDMS. |

| | |
|---|---|
| SOUTH TIMBALIER 53 | PRODUCTION HANDLING AND OPERATIONS AGREEMENT DATED AUGUST 1, 1992, BY AND BETWEEN UNION OIL COMPANY OF CALIFORNIA, MOBIL OIL EXPLORATION & PRODUCTION SOUTHEAST INC., ARCO OIL AND GAS COMPANY AND SAMEDAN OIL CORPORATION. |
| SOUTH TIMBALIER 53 | FACILITIES AGREEMENT MODIFICATION OF FACILITIES DATED DECEMBER 9, 1999, BY AND BETWEEN TENNESSEE GAS PIPELINE COMPANY AND UNION OIL COMPANY OF CALIFORNIA. |
| SOUTH TIMBALIER 53 | FACILITIES AGREEMENT OFFSHORE CONNECTION AND INSTALLATION OF FACILITIES DATED DECEMBER 9, 1999, BY AND BETWEEN TENNESSEE GAS PIPELINE COMPANY AND UNION OIL COMPANY OF CALIFORNIA. |
| SOUTH TIMBALIER 53 | NATURAL GAS PROCESSING AGREEMENT DATED APRIL 1, 2002, BY AND BETWEEN DUNHIL RESOURCES AND DYNEGY. |
| SOUTH TIMBALIER 53 | PIPELINE CROSSINGS AGREEMENT DATED MAY 28, 1993, BY AND BETWEEN ATP AND THE HOUSTON EXPLORATION COMPANY. |
| VERMILION 78 | JOINT OPERATING AGREEMENT DATED NOVEMBER 11, 1980, BY AND BETWEEN ANADARKO PETROLEUM CORPORATION, AS OPERATOR, AND CNG PRODUCING COMPANY AND HUNT OIL COMPANY, AS NON-OPERATORS, COVERING VERMILION AREA, BLOCK 78, OCS-G 4421, OFFSHORE LOUISIANA. |
| VERMILION 78 | ASSIGNMENT OF 100% OF W&T OWNERSHIP OF THE VERMILION 76 SEPARATION FACILITIES; NEW JOINDER AGREEMENT MAY BE REQUIRED FROM EPL, OPERATOR |
| VIOSCA KNOLL 779, 780, 824 | DESTIN PIPELINE, TRANSPORTATION SERVICE |
| VIOSCA KNOLL 779, 780, 824 | JOINT VENTURE AGREEMENT - SPECTER PROSPECT DATED APRIL 1, 1998 BY AND BETWEEN SHELL OFFSHORE, INC. AND ELF EXPLORATION INC. ET AL. |
| VIOSCA KNOLL 779, 780, 824 | PRODUCTION HANDLING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE, INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| VIOSCA KNOLL 779, 780, 824 | COASTAL FARMOUT OFFER DATED APRIL 3, 1998, BY AND BETWEEN COASTAL O&G CORPORATION AND ELF EXPLORATION INC., ET AL. |
| VIOSCA KNOLL 779, 780, 824 | AMENDMENT TO JOINT VENTURE AGREEMENT- ELF ASSUMES COASTAL POSISTION DATED APRIL 6, 1998 ELF EXPLORATION INC. AND COASTAL O&G CORPORATION. |
| VIOSCA KNOLL 779, 780, 824 | LETTER (ELF OFFERS NIPPON PART OF THE COASTAL INTEREST) DATED APRIL 6, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED |
| VIOSCA KNOLL 779, 780, 824 | LETTER- ELF OFFERS ITS SHARE OF COASTAL F/O TO NIPPON DATED APRIL 9, 1998, BY AND BETWEEN ELF EXPLORATION INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| VIOSCA KNOLL 779, 780, 824 | LETTER- NIPPON TAKES ITS SHARE OF COASTAL F/O & SHARE OF ELF'S INTEREST DATED APRIL 13, 1998, BY AND BETWEEN ELF EXPLORATION INC., COASTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |

| | |
|---|---|
| VIOSCA KNOLL 779, 780, 824 | ADDENDUM TO JOINT VENTURE AGREEMENT DATED NOVEMBER 5, 1998, BY AND BETWEEN SHELL OFSSHORE INC. AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| VIOSCA KNOLL 779, 780, 824 | OFFSHORE OPERATING AGREEMENT DATED APRIL 1, 1998, BY AND BETWEEN SHELL OFFSHORE INC. AND SNYDER OIL CORPORATION, ET AL. |
| VIOSCA KNOLL 779, 780, 824 | FARMOUT AGREEMENT DATED APRIL 10, 1998, BY AND BETWEEN COASTAL O&G CORPORATION AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |
| VIOSCA KNOLL 779, 780, 824 | GAS GATHERING AGREEMENT DATED AUGUST 20, 1998, BY AND BETWEEN DAUPHIN ISLAND GATHERING PARTNERS AND NIPPON OIL EXPLORATION U.S.A. LIMITED, ET AL. |
| VIOSCA KNOLL 779, 780, 824. | NIPPON WAIVER OF ADDITIONAL CAPACITY IN HANDLING FACILITY DATED AUGUST 14, 2008. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | CONVEYANCE AND OPERATING AGREEMENT FOR THE GRAND CHENIER SEPARATION FACILITIES DATED JANUARY 17, 1963, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | OWNERSHIP AND OPERATING AGREEMENT DATED OCTOBER 18, 1976, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | OWNERSHIP AND OPERATING AGREEMENT DATED OCTOBER 26, 1978, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | LETTER AGREEMENT DATED OCTOBER 26, 1978, BY AND BETWEEN CONTINENTAL OIL COMPANY AND THE ATLANTIC REFINING COMPANY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO THE OWNERSHIP AND OPERATING AGREEMENT DATED JUNE 29, 1984, BY AND BETWEEN CONOCO INC. AND GETTY OIL COMPANY, ET AL. |

| | |
|---|---|
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | UPDATED UNITIZED RESERVOIR OWNERSHIPS DATED JUNE 18, 1986. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | CORRECTION - PRODUCTION SHARING PROPOSAL DATED SEPTEMBER 19, 1986. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | AMENDMENT TO THE OWNERSHIP AND OPERATING AGREEMENT DATED SEPTEMBER 17, 1975, BY AND BETWEEN CONOCO INC. AND TEXACO PRODUCING INC. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 65,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | AMENDMENT TO THE OWNERSHIP AND OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | OPERATING AGREEMENT DATED JANUARY 1, 1989, BY AND BETWEEN CONOCO INC. AND ATLANTIC RICHFIELD COMPANY. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | RATIFICATION AND AMENDMENT NUMBER 1 TO JOINT OPERATING AGREEMENT DATED OCTOBER 1, 1990, BY AND BETWEEN CONOCO INC. AND TEXAS PRODUCING INC. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | AMENDMENT TO OPERATING AGREEMENT DATED MAY 1, 1995, BY AND BETWEEN CONOCO INC. AND VASTAR RESOURCES, INC., ET AL. |
| WEST CAMERON 34,<br>WEST CAMERON 35,<br>WEST CAMERON 66,<br>WEST CAMERON 67 | AMENDMENT TO OPERATING AGREEMENT DATED MARCH 13, 1998, BY AND BETWEEN TEXACO EXPLORATION AND PRODUCTION INC. AND VASTAR RESOURCES, INC. |

| | |
|---|---|
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT OF JOINT OPERATING AGREEMENT DATED APRIL 1, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | LETTER AGREEMENT DATED JULY 15, 1994 BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | LETTER AGREEMENT DATED MARCH 28,1995, BY AND BETWEEN STONE ENERGY CORPORATION AND DAVID U. MELOY, ET AL. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | ASSET SALE AGREEMENT DATED APRIL 2, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | WAIVER DATED AUGUST 24, 2004, BY CHEVRON USA INC. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | LETTER AGREEMENT DATED JUNE 29, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 67 | NOTICE OF ASSIGNMENT DATED AUGUST 11, 2004, BY AND BETWEEN CHEVRON USA INC. AND STONE ENERGY CORPORATION. |
| WEST CAMERON 34, WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | SETTLEMENT AND RELEASE AGREEMENT DATED SEPTEMBER 7, 2004, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |

| WEST CAMERON 35, WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | LIMITED JOINDER DATED MARCH 28, 1979, BY CITIES SERVICE COMPANY. |
|---|---|
| WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | GAS PROCESSING AGREEMENT DATED JANUARY 25, 2001, BY AND BETWEEN VASTAR RESOURCES, INC. AND STONE ENERGY CORPORATION. |
| WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO PROCESSING AGREEMENT DATED MARCH 17, 2005, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION CO. |
| WEST CAMERON 65, WEST CAMERON 66, WEST CAMERON 67 | AMENDMENT TO PROCESSING AGREEMENT DATED APRIL 21, 2005, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION CO. |
| WEST CAMERON 65, WEST CAMERON 66 | COMPRESSION AGREEMENT DATED APRIL 1, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 65, WEST CAMERON 66 | PURCHASE AND SALE AGREEMENT DATED AUGUST 2, 2005, BY AND BETWEEN BP AMERICA PRODUCTION COMPANY AND STONE ENERGY CORPORATION. |
| WEST CAMERON 66 | CLARIFICATION OF WORKING INTEREST BY BP AMERICA PRODUCTION COMPANY |
| WEST CAMERON 66 | PRODUCTION HANDLING AGREEMENT DATED JANUARY 1, 2000, BY AND BETWEEN VASTAR RESOURCES, INC. AND TEXACO EXPLORATION & PRODUCTION INC. |
| WEST CAMERON 66 | FARMOUT AGREEMENT DATED JANUARY 21, 2004, BY AND BETWEEN CHEVRON USA INC. AND BP AMERICA PRODUCTION COMPANY. |
| WEST CAMERON 66 | EMAIL CORRESPONDENCE DATED SEPTEMBER 20, 2004, BY AND BETWEEN STONE ENERGY CORPORATION AND BP AMERICA PRODUCTION COMPANY. |
| WEST DELTA 121, 122 | PRODUCTION HANDLING AGREEMENT DATED MAY 1, 2007, BY AND BETWEEN APACHE CORPORATION AND APACHE CORPORATION, W&T OFFSHORE, INC., STONE ENERGY, ET AL, AS PRODUCER. |
| WEST DELTA 121, 122 | SHELL TRADING OIL PURCHASE AGREEMENT DATED SEPTEMBER 1, 2007, BY AND BETWEEN SHELL OIL AND NIPPON OIL EXPLORATION U.S.A. LIMITED. |

Execution Version

**Schedule 1.2(k)**

Attached to and made a part of that certain Assignment, Conveyance and Bill of Sale
dated effective March 1, 2014 by and between Black Elk Energy Offshore Operations, LLC, as Assignor
and SandRidge Energy Offshore, LLC, as Assignee

## <u>Geological Data</u>

**None.**

## ASSUMPTION AGREEMENT

This Assumption Agreement ("**Agreement**") is dated as of the 8th day of July, 2014, and is executed by and among JX Nippon Oil Exploration (U.S.A.) Limited, formerly known as Nippon Oil Exploration U.S.A. Limited ("**Nippon**"), Black Elk Energy Offshore Operations, LLC ("**Black Elk**"), and Fieldwood Energy Offshore LLC, fka SandRidge Energy Offshore, LLC ("**Fieldwood**"). Each of Nippon, Black Elk and Fieldwood may be referred to hereafter as a "**Party**" and all collectively referred as the "**Parties**".

## RECITALS

**WHEREAS**, pursuant to that certain Purchase and Sale Agreement, dated as of August 5, 2010, as amended by Amendment to Purchase and Sale Agreement dated as of August 30, 2010, (said agreement, as amended, is referred to hereafter as the "**Nippon PSA**") Nippon, as seller, conveyed to Black Elk, as buyer, certain assets all as more particularly identified therein, including assets situated within or associated with the following fields as more fully described on Exhibit "A" attached hereto (collectively, the "**Subject Fields**", and each a "**Subject Field**"), to-wit:

GI 116 (Hickory) Field – OCS-G 13943 (GI 110), OCS-G 13944 (GI 116)

VK 780 (Specter) Field – OCS-G 13673 (VK 779), OCS-G 6884 (VK 780), OCS-G 15436 (VK 824)

WD 133 Field – OCS-G 19843 (WD 121), OCS-G 13645 (WD 122)

A redacted copy of the Nippon PSA has been provided by Black Elk to SandRidge. All capitalized terms used herein but not defined herein are as defined in the Nippon PSA, unless otherwise expressly noted. However, for the purposes of this Agreement and as used herein, the term "**Assets**" as defined in the Nippon PSA is hereby limited to rights, interests and obligations associated with the Subject Fields.

**WHEREAS**, pursuant to that certain Purchase and Sale Agreement, dated effective March 13, 2014, effective March 1, 2014, Black Elk, as seller, conveyed to Fieldwood, as purchaser, all of its rights and interests in and to and affecting the Subject Fields (the "**Black Elk PSA**").

**WHEREAS**, in connection with the Nippon PSA, Black Elk provided Nippon with, among other performance bonds, a performance bond for each of the Subject Fields, namely:

(a)    Bond No. K08024807, issued by Westchester Fire Insurance Company ("**Westchester**") in favor of Nippon, providing for a penal sum in the amount of $975,000.00, in order to secure the performance by Black Elk of all of Black Elk's P&A Obligations associated with the GI 116 (Hickory) Field (the "**Black Elk/Hickory Bond**");

-1-

EXHIBIT "3"

(b)     Bond No. 105375541, issued by Travelers Casualty and Surety Company of America ("**Travelers**") in favor of Nippon, providing for a penal sum in the amount of $128,000.00, in order to secure the performance by Black Elk of all of Black Elk's P&A Obligations associated with the VK 780 (Specter) Field (the "**Black Elk/Specter Bond**"); and

(c)     Bond No. K08024881, issued by Westchester in favor of Nippon, providing for a penal sum in the amount of $756,000.00, in order to secure the performance by Black Elk of all of Black Elk's P&A Obligations associated with the WD 133 Field (the "**Black Elk/WD 133 Bond**").

For the purposes of this Agreement, the three performance bonds specifically identified above are hereinafter collectively referred to as the "**Black Elk Bonds**"; and all references hereafter, or in any attachment hereto, to a "**Seller Bond**" for one of the Subject Fields shall be deemed a reference to the replacement Fieldwood Bond (as defined hereafter) for such field, unless otherwise expressly noted.

**WHEREAS**, in connection with the terms and provisions set forth in Section 6.4 of the Nippon PSA, a revised estimate of the cost to perform the P&A Obligations associated with each of the Subject Fields, among other properties, based on 2012 rates was prepared by TSB Offshore Inc. ("**TSB**") dated March 21, 2014. As set forth in the above-referenced TSB report, the revised estimate to perform the P&A Obligations for each of the Subject Fields is as follows:

GI 116 (Hickory) Field: $1,651,851.00

VK 780 (Specter) Field: $115,988.00

WD 133 Field: $1,676,556.00

**WHEREAS**, in connection with Fieldwood's acquisition from Black Elk of all of Black Elk's rights, interests and obligations associated with the Subject Fields, Fieldwood has agreed to provide Nippon with replacement performance bonds for the Black Elk Bonds, providing for a penal sum with respect to each of the Subject Fields as set forth above and utilizing the form and reflecting all of the terms and provisions of the performance bond attached hereto as Exhibit "B", duly executed by Fieldwood as "**Principal**" and by the "**Surety**" identified therein (collectively, the "**Fieldwood Bonds**", each a "**Fieldwood Bond**").

**WHEREAS**, subject to and in accordance with the express terms and provisions of this Agreement, Nippon is willing to accept the Fieldwood Bonds in replacement of the Black Elk Bonds.

**NOW THEREFORE**, in consideration of the mutual covenants and promises contained herein, the benefits to be derived by each Party hereunder, as well as other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree as follows:

## 1.

Fieldwood assumes and hereby agrees to fulfill, perform, pay and discharge (or cause to be fulfilled, performed, paid or discharged) all P&A Obligations associated with the Assets and shall defend, indemnify, hold harmless and forever release Nippon and its Affiliates, and all of their respective stockholders, partners, members, directors, officers, managers, employees, agents and representatives (collectively, "**Nippon Indemnified Parties**") from and against any and all Liabilities arising from, based upon, related to or associated with such P&A Obligations. For the purposes of this Agreement, the term "**P&A Obligations**" means all obligations and liabilities of Fieldwood, its successors and assigns, as the successor in interest to Black Elk with respect to the Assets, concerning: (i) properly plugging, re-plugging and abandoning the Well, (ii) the dismantling, decommissioning, abandoning and removing of the Well and the Property, and (iii) cleaning up, restoration and/or remediation of the seabed underlying the Subject Fields, all in accordance with the terms and provisions of the federal offshore leases associated with each of the Subject Fields, as more particularly described on Exhibit "A" hereto (the "**Leases**"), regulations, orders and directives of the U.S. Department of the Interior, Bureau of Ocean Energy Management ("**BOEM**"), Bureau of Safety and Environmental Enforcement ("**BSEE**") and any other state or federal governmental authority, and in accordance with all applicable laws (including environmental laws). For the purposes of this Agreement, the term "**Well**" means all oil and gas wells (whether producing, inactive, temporarily or permanently abandoned, shut-in or otherwise) located on the Leases or on other leases or lands with which the Leases may have been pooled or unitized, and the term "**Property**" means all platforms, facilities, equipment, pipelines and personal property existing on or associated with the Leases.

## 2.

In order to secure Fieldwood's obligation to perform and satisfy all P&A Obligations associated with the Assets, simultaneous with the execution of this Agreement by all of the Parties, Fieldwood has delivered to Nippon the Fieldwood Bonds in replacement of the Black Elk Bonds.

## 3.

Upon Nippon's receipt of the Fieldwood Bonds, Nippon shall execute the Fieldwood Bonds as "**Obligee**" and, subject to the notice requirement provided for in Section 5 below, issue to (i) Travelers a directive to release the Black Elk/Hickory Bond, and (ii) Westchester a directive to release the Black Elk/Specter Bond and the Black Elk/WD 133 Bond, which releases shall be effective as of but not before the effective date of the Fieldwood Bonds.

## 4.

As a material consideration for Nippon's execution of this Agreement, Fieldwood assumes all of Black Elk's obligations and responsibilities with respect to all the terms and provisions of Section 6.4(b) through (i) of the Nippon PSA (a copy of which is attached hereto as Exhibit "C"), to the extent and only to the extent that same apply to the Assets subject, however, to the following clarifications, modifications and/or amendments:

- References in Section 6.4(b) - (i) to Seller and Buyer shall, for the purposes of this Agreement, refer to Nippon and Fieldwood, respectfully, and to their respective successors and assigns.

- September 30, 2016 will be deemed to be the next biennial anniversary date for the Subject Fields and no estimate of the P&A Obligations Costs nor increase in the Seller Bond for the Subject Fields will be due before that date.

- For the purposes of this Agreement, Schedule 6.4(b) provided for in the Nippon PSA is replaced with Schedule 6.4(b) attached hereto and is limited to P&A Elements associated with the Subject Fields.

- In connection with the calculation of future estimates of the P&A Obligations Costs attributable to the Assets conducted from time to time by one of the Consulting Firms, the engagement of such firm will be a joint engagement by Nippon and Fieldwood, such firm will contract with both such parties and any correspondence, meetings (in person or telephonic) with such firm shall be jointly participated in by Nippon and Fieldwood, unless either Nippon or Fieldwood chooses not to so participate.

- If future estimates of the P&A Obligations Costs associated with the Subject Fields, calculated in accordance with the provisions of the Nippon PSA, increase, Fieldwood shall be solely responsible for providing an additional Seller Bond.

- If future estimates of the P&A Obligations Costs associated with the Subject Fields, calculated in accordance with the provisions of the Nippon PSA, decrease, and upon completion of P&A Obligations that would require Nippon to cancel a Seller Bond or reduce the penal sum of a Seller Bond, such cancellations or reductions shall be applied to the Fieldwood Bond.

- For the purposes of this Agreement, the third sentence in Section 6.4(f) of the Nippon PSA is replaced with the following sentence: "In the event Buyer performs or completes P&A Obligations with respect to one or more of the Leases in the Subject Fields at a cumulative cost in excess of One Million dollars ($1,000,000) during a calendar year in which the biennial estimate is not planned to be conducted, Seller shall, upon receipt

-4-

of appropriate P&A Documentation with respect to such performance or completion, instruct the Bonding Company to cancel or proportionately reduce, as the case may be, the penal sum of the Fieldwood Bond pertaining to the Lease(s) in which the P&A Element associated with such P&A Obligations have been completed or performed by an amount equal to the bond amounts associated with each such P&A Element, as reflected on Schedule 6.4(b) attached hereto."

- Provided that Fieldwood is in full compliance with all of its obligations and responsibilities under and pursuant to this Agreement, in the event Fieldwood assigns all rights and interests acquired by it in and to the Assets comprising a Subject Field (including, without limitation, the Leases comprising such Subject Field), to a third party, Fieldwood shall have the right to request that the Fieldwood Bond with respect to such Subject Field be released and contemporaneously therewith replaced with such third party's performance bond. Upon delivery to Nippon of an acceptable replacement bond, any such requests for release will be governed by the release provisions expressly set forth in the Fieldwood Bond pertaining to such Subject Field (see the fourth to last paragraph of the Fieldwood Bond) and the provisions of Section 6.4(b) through (i) of the Nippon PSA. In such connection, such third party assignee will be obligated to enter into an assumption agreement providing for terms substantially the same as those set forth in this Agreement, and the surety company for the third party replacement bond shall be, as specified in Section 6.4(d) of the Nippon PSA, a surety company acceptable to Nippon and that is authorized and admitted to do business in the jurisdictions where the Assets are located, that is and remains approved by the United States Treasury and the Bureau of Ocean Energy Management, and its successor entities, that is listed in the Federal Register and licensed by the State of Texas (or other jurisdiction acceptable to Nippon) to execute bonds as a surety. Travelers Casualty and Surety Company of America, U.S. Specialty Insurance Company or RLI Underwriters are acceptable to Nippon as surety companies to the extent they also comply with the remaining above noted provisions set forth in Section 6.4(d) of the Nippon PSA.

**5.**

Reference is hereby made for all purposes to that certain Agreement Regarding P&A Obligations, dated as of September 29, 2010, executed by and between Nippon, Black Elk and Apache Corporation ("**Apache**"), pertaining to the Black Elk Bonds, among other performance bonds more particularly referenced therein ("**Tri-Party Agreement**"). As more particularly set forth in Section 3 of the Tri-Party Agreement, it is necessary to provide written notice to Apache not less than thirty (30) days prior to the execution of a release of the Black Elk Bonds. It is the Parties' understanding that Fieldwood Energy, LLC ("**Fieldwood**") has succeeded to all of Apache's rights under the Tri-Party Agreement with respect to the Subject Fields. Nippon's

agreement to release the Black Elk Bonds, is subject to the waiver or satisfaction of the thirty (30) day prior written notice obligation to Fieldwood, as the successor to Apache, with respect to the Tri-Party Agreement.

**6.**

Notwithstanding anything to the contrary set forth in this Agreement or in the Fieldwood Bonds, Black Elk, as between Black Elk and Nippon, will not be relieved of the P&A Obligations associated with the Assets in the event of a default by Fieldwood with respect to its performance of the P&A Obligations with respect to the Assets; such P&A Obligations of Black Elk shall continue notwithstanding the transfer to Fieldwood and notwithstanding any terms and conditions to the contrary as may be stated in any applicable operating agreement. The above provision, however, as between Black Elk and Fieldwood and their respective successors and assigns, is not intended and will not serve to modify, abridge or change in any way the rights and obligations owed by Fieldwood to Black Elk pursuant to the Black Elk PSA.

**7.**

Any further amendments or modifications of this Agreement, insofar as same pertain to the Fieldwood Bonds and Fieldwood's assumption of Black Elk's obligations and responsibilities with respect to the terms and provisions of Section 6.4(b) through (i) of the Nippon PSA, shall not be binding unless agreed to in writing between Nippon, or its successors and assigns, and Fieldwood, or its successors and assigns, and any such amendment or modification shall not require the joinder of or ratification by Black Elk, provided, however, that no such amendment or modification, without joinder by Black Elk, shall affect any right or increase any obligation of Black Elk under this Agreement or the Nippon PSA or release Fieldwood from any obligation under the Black Elk PSA.

**8.**

If any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby and each other term, covenant, condition and provision shall be valid and enforceable to the fullest extent provided by law.

**9.**

**THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAWS RULES OR PRINCIPLES.**

**10.**

**THE PARTIES HEREBY AGREE THAT ANY ACTION PERMITTED BY THIS AGREEMENT TO BE COMMENCED IN COURT SHALL BE BROAD AND MAINTAINED EXCLUSIVELY IN FEDERAL OR STATE COURT LOCATED IN**

HARRIS COUNTY, TEXAS, AND EACH PARTY HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY TEXAS STATE COURT OR UNITED STATES DISTRICT COURT SITTING IN HOUSTON, TEXAS, AND IRREVOCABLY WAIVES ANY OBJECTION THAT IT MAY OR HEREAFTER HAVE TO THE LAYING OF VENUE IN SUCH FORUMS AND AGREES NOT TO PLEAD OR CLAIM THAT ANY ACTION IN SUCH FORUMS WOULD BE INCONVENIENT. EACH PARTY AGREES THAT A JUDGMENT IN ANY DISPUTE MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON JUDGMENT OR ANY OTHER MATTER PROVIDED BY LAW.

### 11.

TO THE FULLEST EXTENT PROVIDED BY APPLICABLE LAW, EACH PARTY HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, IN ACTION, PROCEEDING OR OTHER LITIGATION OF ANY TYPE BROUGHT BY ANY OF THE PARTIES AGAINST ANY OTHER PARTY, WHETHER WITH RESPECT TO CONTRACT CLAIMS, TORT CLAIMS, OR OTHERWISE. THE PARTIES EACH AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. WITHOUT LIMITING THE FOREGOING, THE PARTIES FURTHER AGREE THAT THEIR RESPECTIVE RIGHT TO A TRIAL BY JURY IS WAIVED BY OPERATION OF THIS SECTION AS TO ANY ACTION, COUNTERCLAIM OR OTHER PROCEEDING WHICH SEEKS, IN WHOLE OR IN PART, TO CHALLENGE THE VALIDITY OR ENFORCEABILITY OF THIS AGREEMENT OR ANY PROVISION HEREOF.

### 12.

No further transfer or assignment of any interest in and to the Assets will be made by Fieldwood unless such transfer or assignment is expressly made subject to the terms and provisions of this Agreement and such transferee or assignee assumes, in writing, all of Fieldwood's obligations set forth hereunder. The provisions of this section shall be binding upon Fieldwood and upon its successors and assigns.

### 13.

This Agreement may be executed in one or more counterparts, each of which shall be binding on the Party or Parties so signing but shall not be effective unless and until each of the Parties executes this instrument or a counterpart hereof.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement effective as of the date first above written, in the presence of the undersigned competent witnesses.

**WITNESSES**:

Print Name: Frank Davis III

Print Name: Nancy C Krasinski

Print Name: Frank Davis III

Print Name: Nancy C Krasinski

Print Name: Robert Sengsirkotten

Print Name: Viviana Bravo-Rojas

**JX Nippon Oil Exploration (U.S.A.) Limited**

By: _____
Steven R. Fly
Vice President

**Black Elk Energy Offshore Operations, LLC**

By: _____
Jeff Shulse
Chief Financial Officer

**Fieldwood Energy Offshore LLC**

By: _____
John H. Smith
Vice President Land and Business Development

## ACKNOWLEDGEMENTS

STATE OF TEXAS    §

COUNTY OF HARRIS   §

  On this, the 10th day of July, 2014, before me, the undersigned Notary Public in and for the State of Texas, personally appeared Steven R. Fly, to me personally known, who being by me duly sworn, did say that he is the Vice President of JX Nippon Oil Exploration (U.S.A.) Limited, a Delaware corporation, and acknowledged that he, in such capacity was authorized to and executed the foregoing instrument as the free act and deed of said corporation for the purposes therein contained.

  IN WITNESS WHEREOF, I hereunto set my hand and official seal.



*Wanda N. Brothers*
Notary Public, State of Texas
Notary Name: Wanda N. Brothers
My Commission Expires on: July 17, 2018

STATE OF TEXAS    §

COUNTY OF HARRIS   §

  On this 10th day of July, 2014, before me, the undersigned Notary Public in and for the State of Texas, personally appeared Jeff Shulse, to me personally known, who being by me duly sworn, did say that he is the Chief Financial Officer of Black Elk Energy Offshore Operations, LLC, a Texas limited liability company, and that the instrument was signed on behalf of the company by authority of its _____ and that he acknowledged the instrument to be the free act and deed of the company.



*Wanda N. Brothers*
Notary Public, State of Texas
Notary Name: Wanda N. Brothers
My Commission Expires on: July 17, 2018

STATE OF TEXAS      §

COUNTY OF HARRIS     §

     On this 8th day of July, 2014, before me, the undersigned Notary Public in and for the State of Texas, personally appeared John H. Smith, to me personally known, who being by me duly sworn, did say that he is the Vice President Land and Business Development of Fieldwood Energy Offshore LLC, a Delaware limited liability company, and that the instrument was signed on behalf of the company by authority of its _Manager_ and that he acknowledged the instrument to be the free act and deed of the company.



          VIVIANA BRAVO-ROJAS
        NOTARY PUBLIC, STATE OF TEXAS
          MY COMMISSION EXPIRES
           SEPT. 07, 2016

Notary Public, State of Texas
Notary Name: Viviana Bravo-Rojas
My Commission Expires on: Sept. 7, 2016

**Exhibit "A"**
**Attached to and made a part of that certain**
**Assumption Agreement dated July 8, 2014**

**Description of Subject Fields**

1.     Grand Isle 116 (Hickory Field) consists of the following two OCS Leases:

Oil and Gas Lease of Submerged lands bearing Serial number OCS-G 13943
dated effective as of August 1, 1993, and covering all of Block 110, Grand Isle Area,
South Addition, as shown on OCS Louisiana Leasing Map, LA7A.

Oil and Gas Lease of Submerged lands bearing Serial number OCS-G 13944
dated effective as of July 1, 1993, and covering all of Block 116, Grand Isle Area, South
Addition, as shown on OCS Louisiana Leasing Map, LA 7A.

II.     Specter Field consists of the following three OCS Leases INSOFAR and ONLY
INSOFAR as they relate to the wellbores of the OCS-G 15436 A-7 Well (API #
608164034800-S01) and the OCS-G 13673 A-5 Well (API # 608164033900-S01):

Oil and Gas Lease of Submerged Lands bearing Serial number OCS-G 13673 dated
effective as of August 1, 1992, and covering all of Block 779, Viosca Knoll, as shown on
OCS official protraction diagram, NH16-07.

Oil and Gas Lease of Submerged Lands bearing Serial number OCS-G 06884 dated
effective as of June 1, 1984, and covering all of Block 780, Viosca Knoll, as shown on
OCS official protraction diagram, NH16-07.

Oil and Gas Lease of Submerged Lands bearing Serial number OCS-G 15436 dated
effective as of September 1, 1995, and covering all of Block 824, Viosca Knoll, as shown
on OCS official protraction diagram, NH16-07.

III.    West Delta 133 Field consists of the following two Leases:

Oil and Gas Lease of Submerged Lands bearing Serial number OCS-G 19843 dated
effective as of August 1, 1998, and covering all of Block 121, West Delta Area, South
Addition, as shown on OCS Louisiana Leasing Map, LA8A.

Oil and Gas Lease of Submerged Lands bearing Serial number OCS-G 13645 dated
effective as of August 1, 1992, and covering all of Block 122, West Delta Area, South
Addition, as shown on OCS Louisiana Leasing Map, LA8A.

End of Exhibit "A"

**Exhibit "B"**
**Attached to and made a part of that certain**
**Assumption Agreement dated July 8, 2014**


[Attach copy of Fieldwood Bond]

## PEFORMANCE BOND

KNOW ALL PERSONS BY THESE PRESENTS:

THAT, **Fieldwood Energy Offshore LLC** ("Principal"), a Delaware limited liability company, with its principal offices at 2000 W. Sam Houston Parkway South, Suite 1200, Houston, TX 77042, and **U.S. Specialty Insurance Company** ("Surety"), with an office at 13403 Northwest Freeway, Houston, Texas 77040, are held and firmly bound unto **JX Nippon Oil Exploration (U.S.A.) Limited** ("Obligee"), with its principal office at One Riverway, Suite 1600, Houston, TX 77056, in the penal sum of One Million Six Hundred Fifty One Thousand Eight Hundred Fifty One and No/100 Dollars ($1,651,851.00) lawful money of the United States of America for the payment of which penal sum Principal and Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS, Principal has entered into a Purchase and Sale Agreement (the "Agreement") with Black Elk Energy Offshore Operations, LLC ("Black Elk") dated as of March 13, 2014, as amended, which provides for the sale and assignment, from Black Elk to the Principal, of the interests of Black Elk in certain oil and gas leases and properties including the oil and gas lease described on Annex 1 to this Bond (whether one or more, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells (whether one or more, the "Well"), platforms, facilities, equipment, pipelines and personal property existing on the Lease as of the date of the Agreement (the Lease, the Well and such platforms, facilities, equipment, pipelines and personal property being collectively referred to as the "Property");

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of the Lease, whether by operation of law or otherwise, this Bond shall remain in full force and effect until the P&A Obligations (as such term is defined below) have been fully performed and discharged;

WHEREAS, as used in this Bond the term "P&A Obligations" means all obligations and liabilities of Principal concerning: (i) properly plugging, re-plugging and abandoning the Well, (ii) the dismantling, decommissioning, abandoning and removing of the Well and Property, and (iii) cleaning up, restoration and/or remediation of the Property in accordance with the Lease, regulations, orders and directives of the U.S. Department of the Interior, Bureau of Ocean Energy Management ("BOEM") and any other state or federal governmental authority; and applicable laws (including environmental laws);

WHEREAS, Principal has promised to deliver to Obligee this Bond in connection with the consummation of the sale and assignment of the Property to Principal pursuant to the Agreement and in connection with that certain Assumption Agreement dated as of June 5th, 2014, by and between Principal, Obligee and Black Elk ("Assumption Agreement");

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW THEREFORE, notwithstanding anything contained herein to the contrary, if said Principal or Surety shall fully perform and discharge the P&A Obligations in respect of the Property (as evidenced by providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations), then this Bond and the obligations hereunder shall be null and void.

ADDITIONALLY, if as to any Property, Obligee is required by the BOEM, or other governmental authority, to perform any of the P&A Obligations (or a demand is made upon Obligee by a co-obligor of Principal to contribute toward the costs of performing any of the P&A Obligations), then prior to any performance by Obligee with respect to the P&A Obligations (or payment by Obligee to Principal's co-obligor of a share of the estimated costs of performing the P&A Obligations if a demand for such payment is made on Obligee), Surety agrees to pay to Obligee an amount reasonably estimated by Obligee as necessary or appropriate to perform the P&A Obligations (or to pay its share of the estimated costs for the P&A Obligations if demand is made by Principal's co-obligor) in an amount up to, but not exceeding, the penal amount of this Bond.

FURTHERMORE, it is agreed that Surety shall have no obligation to Principal, Obligee or any other person or entity for any loss suffered by Principal, Obligee or any other person or entity by reason of acts or omissions which are or could be covered by Obligee's or Principal's general liability insurance, products liability insurance or completed operations insurance. In no event shall Surety be obligated to pay, in the aggregate, for all claims hereunder, an amount exceeding the penal sum of this Bond.

It is further agreed that Surety shall not be liable for any provisions of the Agreement or specifications respecting the procurement of or coverages provided by an insurance, nor shall Surety be liable under any hold harmless and/or indemnification agreements entered into by Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of the work and/or operations of any party in performing the P&A Obligations.

If Principal fails to perform any of the P&A Obligations in accordance with the terms of the Agreement, then Principal shall have 30 days following receipt of notice of default from Obligee in which to fully cure or remedy such default. Obligee agrees to provide Surety with a copy of each such default notice. If the default covered by such default notice is not cured or remedied within such 30 day period, then upon the expiration of such 30 day period such default shall constitute a "Principal Default" for purposes of this Bond. Any suit under this Bond with

respect to a Principal Default must be instituted before the expiration of one (1) year from the date of such Principal Default, and subject to such one (1) year time limitation, Surety irrevocably consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said courts.

No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits of Schedules attached thereto shall release Principal and Surety or any of them from their liability under this Bond, notice to Surety of any such amendment or supplement being hereby waived.

No (i) assignment of the Agreement or of the Lease by Principal, its successors and assigns, (ii) delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal, (iii) lack of enforceability or other defense or offset right in respect of any obligation of Principal or right of Obligee under the Agreement or otherwise in respect of the P&A Obligations, or (iv) the insolvency, bankruptcy or receivership of Principal, shall in any degree relieve Principal or Surety (as applicable) of any of its obligations under this Bond.

HOWEVER, if upon assignment of the Agreement or the Lease or any of the Property by Principal, its successors or assigns, Principal shall cause its assignee (i) to post security with Obligee, in the form of a bond or other security, in the amount of and covering the same obligations as stated herein, and otherwise containing terms and issued by parties that are approved by Obligee and (ii) to assume (in a written instrument approved by Obligee) all P&A Obligations in respect of the Property, then Obligee will accept such security in lieu of this Bond and issue an unconditional release of this Bond within 60 days of Obligee's acceptance of such other security (provided, there shall be excluded from such release any obligations required to be performed by Principal or Surety under this Bond prior to the date of such assignment; and provided further, no such release of this Bond shall limit or modify any of the obligations of the Principal under the Agreement).

No right or action shall accrue on this Bond to or for the use of any person or entity other than Principal and Obligee and their respective successors and assigns.

This Bond may not be amended, supplemented or modified except pursuant to a written instrument duly executed by Principal and Surety and consented to in writing by Obligee, whether pursuant to the terms and provisions of the Assumption Agreement or as mutually agreed to by such parties. No course of conduct, dealing or performance shall amend, supplement or modify this Bond unless incorporated into a written instrument referenced in the preceding sentence. This Bond shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflicts of laws, rules and principles.

Obligee will issue a release of this Bond within a reasonable time period following the earlier to occur of (i) the full performance of the P&A Obligations by Principal and (ii) the full performance by Surety of its obligations under this Bond, but in no instance later than 30 days following Surety or Principal providing to Obligee evidence reasonably acceptable to Obligee reflecting that the P&A Obligations have been fully performed, together with an affidavit signed

BOND NO. B008837

by an officer of Principal attesting to such performance and identifying the Property associated with the performance of such P&A Obligations.

IN WITNESS WHEREOF, the Principal and Surety have executed this instrument under their seals this 5th day of June, 2014, the name and seal of each such party being hereto affixed and those presents duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESS/ATTEST:

_____

Fieldwood Energy Offshore LLC
("Principal")

By: _____ (Seal)
Name: _Howard M. Tate_
Title: _Vice President_

Date: _7/7/14_

WITNESS/ATTEST:

Myisha S. Jefferson

U.S. Specialty Insurance Company
("Surety")

By: _Michele K. Tyson_ (Seal)
Name: _Michele K. Tyson_
Title: _Attorney-in-Fact_

Date: _June 5, 2014_

WITNESS/ATTEST:

Frank Davis III
Assistant Secretary

OBLIGEE ACCEPTANCE

JX Nippon Oil Exploration (U.S.A.) Limited
("Obligee")

By: _____ (Seal)
Name: _Steven R. Fry_
Title: _Vice President_

Date: _July 8, 2014_

BOND NO. B008837

**Annex I**
**to**

**Principal: Fieldwood Energy Offshore LLC**
**Bond No. B008837**

| Field Name | Block | Lease No. | Amount |
|---|---|---|---|
| GI 116 (Hickory) Field | GI 116<br>GI 110 | OCS-G 139443<br>OCS-G 13943 | $1,651,851.00 |
| | | **Total Bond Amount:** | **$1,651,851.00** |

# TEXAS COMPLAINT NOTICE

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| 1 To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| 2 You may contact your agent. | Puede comunicarse con su agente. |
| 3 You may call the company's toll free telephone number for information or to make a complaint at: | Usted puede llamar de numerero de telefono gratis de la compania para informacion o para someter una queja al: |
| 1-800-486-6695 | 1-800-486-6695 |
| 4 You may also write to the company: | Usted tambien puede escribir a la compañía: |
| 601 S. Figueroa St., Suite 1600 Los Angeles, CA 90017 | 601 S. Figueroa St., Suite 1600 Los Angeles, CA 90017 |
| 5 You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| (800) 252-3439 | (800) 252-3439 |
| 6 You may write the Texas Department of Insurance: P.O. Box 149104 Austin, TX 78714-9104 Fax No.: (512) 475-1771 Web: http://www.tdi.state.tx.us E-mail: ConsumerProtection@tdi.state.tx.us | Puede escribir al Departamento de Seguros de Texas: P.O. Box 149104 Austin, TX 78714-9104 Fax No.: (512) 475-1771 Web: http://www.tdi.state.tx.us E-mail: ConsumerProtection@tdi.state.tx.us |

7

| PREMIUM OR CLAIM DISPUTES: | DISPUTAS SOBRE PRIMAS O RECLAMOS: |
|---|---|
| Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance. | Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la companie primero. Si no se resuelve la disputa, prede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY:** | **UNA ESTE AVISO A SU POLIZA:** |

8

| | |
|---|---|
| This notice is for information only and does not become part or condition of the attached document. | Esta aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |