## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| ------------------------------------------------- § | |
| In re: § | Chapter 11 |
| § | |
| **Fieldwood Energy LLC**, *et al.*,[1] § | Case No. 20-33948 (MI) |
| § | |
| Debtors. § | (Jointly Administered) |
| § | |
| ------------------------------------------------- § | |

### JOINDER IN OBJECTIONS TO THE DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS

Hess Corporation ("Hess") hereby files this joinder (the "Joinder") to (A) *Chevron U.S.A. and Noble Energy, Inc's Objection to Debtor's Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Proposed Voting and Tabulation Procedures, (III) Procedures for Executory Contract Assumption and Assignment, and (IV) Procedures for Assignment and Transfer of Property of the Estate* [Docket No. 880] (the "Chevron Objection"); (B) the *Objection of XTO Offshore Inc., HHE Energy Company, and XH LLC to the Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 900] (the "XTO Objection"); (C) *Marathon Oil Company's Objection to the Debtors' Disclosure Statement, Procedures for Assumption of Executory Contracts and Transfer of Property of the Estate* [Docket No. 924] (the "Marathon Objection"); and (D) the *Objection of Eni US Operating Co. Inc. and Eni Petroleum US LLC to Approval of Debtors' Disclosure Statement*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

*for Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 937] (the "<u>Eni Objection</u>" and together with the Chevron Objection, XTO Objection, and Marathon Objection, the "<u>Predecessor Objections</u>") to the *Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 723] (the "<u>Disclosure Statement</u>")[2] with respect to the *Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Docket No. 722] (the "<u>Joint Plan</u>"). Hess desires to further underscore the issues raised in the Predecessor Objections concerning the Debtors' proposed abandonment of the Abandoned Properties and, in support of this Joinder, would respectfully show the Court as follows:

### I. BACKGROUND INFORMATION RELATING TO THE HESS LEASES

1. Prior to November 1, 2004, Hess was a record title interest holder with respect to seven (7) federal offshore oil and gas leases (the "<u>Hess Leases</u>"). Pursuant to that certain Agreement for Purchase and Sale dated effective November 1, 2004 by and between Amerada Hess Corporation and SPN Resources, LLC ("<u>SPN</u>"), Hess conveyed to SPN all of Hess's right, title and interest in and to the Hess Leases, as well as the wells, equipment and other property, and the contracts and agreements relating to the Hess Leases.

2. On information and belief, through a series of transactions following the aforementioned Hess-SPN transaction, the Hess Leases were ultimately transferred to the Debtors.

3. On August 3 and 4, 2020 (together, the "<u>Petition Date</u>"), Debtors filed voluntary petitions for relief under title 11 of chapter 11 of the United States Code (the "<u>Bankruptcy Code</u>"). Since the Petition Date, Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee or examiner has been appointed in these cases.

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Disclosure Statement.

4.      On January 1, 2021, the Debtors filed the Joint Plan and the Disclosure Statement. Pursuant to the Joint Plan, the Debtors intend to reorganize by way of the following transactions: (i) a credit bid sale; (ii) a divisive merger transaction pursuant to which FWE would be divided into FWE I and FWE III, with certain assets and liabilities being allocated to each of FWE I and FWE III; and (iii) an abandonment of the Abandoned Properties, along with the plugging, abandonment and decommissioning liabilities associated therewith (the "P&A Obligations"), to the Debtors' Predecessors. The objections raised in this Joinder focus on the Abandoned Properties transaction.

## II.      LEGAL AUTHORITIES

5.      As set forth herein and in the Predecessor Objections, Hess objects to the Disclosure Statement for lack of information sufficient to allow creditors to make an informed decision on the Joint Plan. In many instances, and particularly with respect to the Abandoned Properties transaction, the Disclosure Statement contains incomplete information – or no information at all on important issues. The Disclosure Statement must be amended to address Hess's objections and issues raised herein. If the Debtors fail to do so, the Court should not approve the Disclosure Statement.

6.      Bankruptcy Code § 1125(b) requires that a disclosure statement contain "adequate information," which is defined as "information of a kind, and in sufficient detail…[to enable] a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a); *In re Texas Extrusion Corp.*, 8444 F.2d 1142, 1157 (5th Cir. 1988), cert. denied, 488 U.S. 926 (1988); *In re Devine Ripe, L.L.C.*, 554 B.R. 395, 401-02 (Bankr. S.D. Tex. 2016); *In re Applegate Prop., Ltd.*, 133 B.R. 827. 929-31 (Bankr. W.D. Tex. 1991).

7.      The obligation to provide adequate information is "pivotal." *Westland Oil Dev. v.*

3

*MCorp Mgmt. Solutions, Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993). For a creditor to fairly evaluate the results of a proposed plan, the court must ensure that a disclosure statement sets forth "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *See In re Jeppson*, 66 B.R. 269, 2929 (Bankr. D. Utah 1986); *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (holding that a proper disclosure statement must "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting their [sic] distribution."). Whether or not adequate information is given is left to the judicial discretion of the court and will necessarily be governed by the circumstances of the case. *See Mabey v. Southwestern Elec. Power Co.* (*In re Cajun Elec. Power Coop, Inc.*), 150 F.3d 503, 518 (5th Cir. 1998).

8. Courts consider numerous factors when determining the sufficiency of the information in a disclosure statement, including but not limited to: (i) a description of the available assets and their value; (ii) the estimated return to creditors under a chapter 7 liquidation; (iii) financial information, data, valuation or projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (iv) information relevant to the risks posed to creditors under the plan; and (v) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers. *See In re Divine Ripe, L.L.C.*, 554 B.R. at 401-02 (listing 19 non-exhaustive factors set forth in *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)).

### III. OBJECTIONS

9. The objections set forth in this Joinder focus on the Abandoned Properties transaction proposed under the Joint Plan. Under the Joint Plan, the Debtors propose to abandon approximately 187 offshore leases comprising the "Abandoned Properties," including the Hess

Leases.[3]  According to the Disclosure Statement:

> Immediately upon the occurrence of the Effective Date, [the Abandoned Properties] will be abandoned pursuant to sections 105(a) and 554(a) of the Bankruptcy Code to entities who are predecessor owners in the chain of title or co-working interests owners (collectively, the "<u>Predecessors</u>").[4]

10.     There could be billions of dollars in costs associated with the plugging, abandonment and decommissioning of the Abandoned Properties, including plugging and abandoning the wells on the seabed, removing pipelines associated with the wells, and removing any platform in connection with the lease.  Indeed, based upon publicly available data derived from the Bureau of Ocean Energy Management ("<u>BOEM</u>")/Bureau of Safety and Environmental Enforcement ("<u>BSEE</u>") Data Center, Hess estimates the P&A Obligations associated with the Hess Leases, including the wells, platforms, and pipelines associated therewith, could be as much as $141 million.[5]  In addition, the United States Department of the Interior has filed ten (10) proofs of claim against the Debtors totaling over $9.0 billion.

11.     In several respects, the Debtors' proposed treatment of the Abandoned Properties raises more questions than it provides answers. For example, notably absent from the Debtors' Disclosure Statement is the legal basis supporting the abandonment to the Predecessors.  Indeed, the Debtors' approach appears to be based on an unfounded and incorrect assumption that the Predecessors will accept title to the Abandoned Properties post-abandonment. However, abandonment "is not a transfer of property but simply 'a divestiture of all of the estate's interest in the property." *In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 639 (Bankr. E.D. Pa 1999) (citing *In*

---

[3] The Abandoned Properties are set forth in Exhibit F to the Disclosure Statement.  The Hess Leases include OCS-G01874, OCS-G01989, OCS-G02136, OCS-G01449, OCS-G04895, OCS-G04243, and OCS-G02934.

[4] *See* Joint Plan at p. 14.

[5] This figure represents the total estimated P90 joint and several liability obligation across all assets associated with the Hess Leases.  Hess does not admit that the estimate is accurate and reserves all rights with respect thereto.

*re Dewsnup*, 908 F.2d 588,590 (10th Cir. 1990), *aff'd* 502 U.S. 410 (1992)). Thus, while abandonment divests the bankruptcy estate of the asset, it cannot be used to foist title to the asset upon a third-party. Equally astounding, the Debtors fail to disclose even the identity of the Predecessors to whom the Abandoned Properties will ostensibly return.

12. The Joint Plan is premised upon the Debtors' unfounded authority to transfer their plugging, abandonment and decommissioning liabilities to the Predecessors, including Hess. The Disclosure Statement lacks specificity about how the Abandoned Properties will return to the Predecessors, including, but not limited to, whether record title interest will return to Hess (which Hess does not and will not accept), the processes for obtaining regulatory approval for the contemplated return of the Abandoned Properties, and the treatment of "orphan obligations" (i.e., those P&A Obligations for which there is no Predecessor).

13. Also conspicuously lacking from the Disclosure Statement is any information concerning the wells, pipelines, and platforms comprising the Abandoned Properties, as well as any information concerning their current operational status and condition. According to the Chevron Objection, the Abandoned Properties contain a staggering 1,715 wells, 281 pipelines and 276 platforms. The Debtors' provision of this information is critical because, as pointed out in the Chevron Objection, in 2020 alone, the Debtors received more than 200 Incidents of Non-Compliance ("INCs") issued by BSEE. Nevertheless, the Disclosure Statement provides no information concerning the INCs, including the number of INCs that remain outstanding and how the Joint Plan intends to address them.[6]

14. The Disclosure Statement also fails to identify the current co-owner(s) and/or prior

---

[6] *See* Chevron Objection at p. 16.

HESS CORPORATION'S OBJECTION TO
DISCLOSURE STATEMENT

owners in the chain of title that are supposedly compelled to accept each abandoned lease. In fact, in defining the term "Predecessors," the Disclosure Statement groups together, without distinction, current co-owners and predecessor interest holders. This is problematic for many reasons. As an initial matter, the abandonment of the Debtors' current operatorship and ownership in a lease requires that other current co-owners select a replacement operator pursuant to the terms of the lease-specific joint operating agreement. If a replacement operator is selected and approved, then decommissioning obligations will not be triggered by the Debtors' contemplated abandonment. Should current co-owners decide not to select a new operator, stop production, and trigger the decommissioning obligations, under federal regulations, the current co-owners would have the primary obligation to decommission such leases. *See* 30 C.F.R. § 250.1701(a). Under current practice, federal regulators will look to predecessors in title to satisfy decommissioning obligations after all current lessees and operating rights holders fail to perform such obligations. *See* 30 C.F.R. § 556.710. All of this information is necessary for Hess to understand its treatment under the Joint Plan.

15. Furthermore, federal regulations require that every company demonstrate that it is qualified to own a lease or operate under a lease on the outer-continental shelf. 30 C.F.R. § 556.400. BOEM may disqualify a company from acquiring a lease if that company (or its principals) fails to satisfy due diligence requirements on other leases (30 C.F.R. § 556.403(a) citing 43 U.S.C. § 1337(d)) or is determined to have an unacceptable operating performance. 30 C.F.R. § 556.403(c). In addition, BOEM must approve all transfers of non-economic lease interests. 30 C.F.R. § 556.700 *et seq.* BOEM may disapprove where the "transferor or transferee" has unsatisfied obligations, including well abandonment and decommissioning obligations. 30 C.F.R. § 556.704. The Disclosure Statement provides no information on the steps taken by the Debtors

7

to obtain necessary regulatory approvals.

16.     Hess has not agreed to accept title to any interest in any of the Abandoned Properties. Therefore, the Disclosure Statement should specifically disclose the mechanism or process by which Debtors propose to vest title to the Abandoned Properties not only in Hess but also in any other Predecessor. If the Debtors admit that this cannot be accomplished other than through the consent of the Predecessor to whom the properties are being abandoned, the Disclosure Statement should provide as much.

17.     The Disclosure Statement is clear, however, that the Abandoned Properties do not vest in any of the Reorganized Debtors or in NewCo. Given that title to the Abandoned Properties cannot vest in Hess or any Predecessor who does not take title, the Disclosure Statement should explain whom (if anyone) will take title to the Abandoned Properties upon abandonment. The Disclosure Statement is completely silent on this crucial issue, which runs counter to the implicit assumption that the Predecessors will step in to take over the Abandoned Properties from the Debtors. In that instance, the Disclosure Statement needs to disclose what happens to the Abandoned Properties post-abandonment in a situation where no Predecessor agrees to take title to the property.

18.     The lack of disclosure concerning the identity of the Predecessor to whom title in the Abandoned Properties will ostensibly vest is further compounded by the fact that certain of the leases included within the Abandoned Properties, including the Hess Leases, have multiple predecessors in the chain of title. By way of example, the following is lease history timeline for Hess Lease OCS-G01874, which is based upon the Serial Register Page (attached hereto as Exhibit A) for such lease made available on the BOEM/BSEE Data Center:



19. As reflected above, there have been at least 11 instances of transfer or assignment of interests in OCS-G01874 since the lease became effective in 1968—over 50 years ago. As also reflected above, for the lion's share of OCS-G01874's history, there have been multiple co-owners possessing a fractional interest in the lease. The same is true with respect to the remainder of the Hess Leases, lease history timelines for which are attached hereto as Exhibit B.

20. Even assuming that Hess agrees with the Debtors' proposition that they may relinquish and vest title to the Abandoned Properties with the Predecessors (which Hess does not), the Disclosure Statement provides no information regarding the Predecessor to whom the Abandoned Properties will revert. This lack of information is concerning because, as demonstrated above, there are multiple entities in the chain of title that constitute a "Predecessor."

### IV. RESERVATION OF RIGHTS

21. Hess reserves the right to assert any of these objections to the Disclosure Statement, as well as any other objections, to confirmation of the Joint Plan. To the extent Hess is impacted in any by the contents of any supplements, modifications, or amendments to the Disclosure Statement or the Joint Plan (including, but not limited to, the Plan Supplement, Valuation Analysis, Liquidation Analysis, and Financial Projections) that may be filed after any deadline for objection

9

to the Disclosure Statement or confirmation of the Joint plan, Hess further reserves the right to object thereto on any basis whatsoever. Hess further reserves the right to raise additional and other objections to the Disclosure Statement prior to or at the hearing thereon.

22. Hess adopts and incorporates herein all objections to the Disclosure Statement asserted by other parties.

Hess respectfully requests that this Court: (i) sustain the Predecessor Objections and this Joinder thereto; (ii) deny the relief requested in the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures With Respect to Confirmation of Debtors' Proposed Chapter 11 Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Approving the Rights Offering Procedures and Related Materials, (V) Scheduling Certain Dates With Respect Thereto, and (VI) Granting Related Relief* [Docket No. 724]; and (iii) grant to Hess such other and further relief to which it is justly entitled.

Dated: March 12, 2021

                Respectfully submitted,

                By: */s/ Omar J. Alaniz*
                   Omar J. Alaniz
                   Texas State Bar No. 24040402
                   REED SMITH LLP
                   2850 N. Harwood Street, Suite 1500
                   Dallas, Texas 75201
                   Telephone: 469.680.4200
                   Facsimile: 469.680.4299
                   Email: oalaniz@reedsmith.com

                ***Attorney for Hess Corporation***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 12, 2021, a copy of the foregoing document was served on all parties requesting service via the Court's ECF system.

                                                */s/ Omar J. Alaniz*
                                                  Omar J. Alaniz

# **EXHIBIT A**

| | | | | | | |
|---|---|---|---|---|---|---|
| OCS-G01874 | | | **Serial Register Page** | | | 18-Dec-2020 |
| | | | | | | Page 1 of 3 |

**OCS-** G01874

| **Current Status** | UNIT | Central Gulf of Mexico | | **Sale#** | 19 | **Sale Date** | 11/19/1968 |
|---|---|---|---|---|---|---|---|
| **Bonus Bid** | **Initial Acreage** | **Current Acreage** | **Per Acre Amt.** | **Royalty Rate** | | **Rental** | |
| 94190009.380 | 3437.000000 | 3437.500000 | 27404.72 | 16.666667 | | 3.00 | |

**Original Lessee(s):**
SEE LEASE FILE

**Description:**

S1/2 of Block 79, West Delta Area, as shown on OCS Louisiana Leasing Map, LA8.

| | **LINE/INTERSECTIONS** | | **TANGENT/ARC CENTERS** | |
|---|---|---|---|---|
| | **X** | **Y** | **X** | **Y** |
| 1 | 2584577.930 | 113413.150 | | |
| 2 | 2584577.930 | 102992.100 | | |
| 3 | 2574127.930 | 102992.100 | | |
| 4 | 2574127.930 | 113413.150 | | |

W1/2SW1/4; SW1/4NW1/4 of Block 80, West Delta Area, as shown on OCS Louisiana Leasing Map, LA8.

| | **LINE/INTERSECTIONS** | | **TANGENT/ARC CENTERS** | |
|---|---|---|---|---|
| | **X** | **Y** | **X** | **Y** |
| 1 | 2584577.930 | 102992.100 | | |
| 2 | 2584577.930 | 118623.675 | | |
| 3 | 2587190.430 | 118623.675 | | |
| 4 | 2587190.430 | 102992.100 | | |

| | |
|---|---|
| 01-Dec-1968 | Date of lease: 12/1/1968. Expected expiration date: 11/30/1973 |
| 25-Aug-1969 | Hess Oil & Chemical Corporation merged with and into Amerada Petroleum Corporation, effective 6/20/69. The name of the surviving corporation is Amerada Hess Corporation. |
| 10-May-1974 | Amerada Hess Corporation designates Marathon Oil Company as operator. |
| 10-May-1974 | The Louisiana Land and Exploration Company designates Marathon Oil Company as operator. |
| 10-May-1974 | Signal Oil and Gas Company designates Marathon Oil Company as operator. |
| 06-Jun-1974 | Signal Oil and Gas Company changed its name to Burmah Oil and Gas Company, effective 6/1/64. |
| 01-Jan-1975 | Unit Contract #13841, effective 1/1/75. |
| 10-Mar-1975 | Burmah Oil and Gas Company merged into BOAG Oil and Gas Company and simultaneously changed its name to Burmah Oil and Gas Company, effective 1/2/75. |
| 29-Oct-1976 | Burmah Oil and Gas Company changed its name to Aminoil USA, Inc., effective 7/1/76. |
| 12-May-1977 | Aminoil USA, Inc. merged into Aminoil Resources, Inc. and, as of the date of the merger, Aminoil Resources, Inc. changed its name to Aminoil USA, Inc., effective 1/1/77. The name of the surviving corporation is Aminoil USA, Inc. (N. O. Misc. No. 418). |
| 20-Sep-1982 | Marathon Petroleum Company, an unqualified Delaware corporation merged into Marathon Oil Company, and Ohio corporation (N. O. Misc. No. 115), and, as of the date of the merger, Marathon Oil Company changed its name to Marathon Petroleum Company, effective 7/9/82. The name of the surviving corporation is Marathon Petroleum Company (N. O. Misc. No. 115). |
| 20-Oct-1982 | Record title interest is now held as follows, effective 7/10/1982: |
| | Amerada Hess Corporation 28.20000% |
| | The Louisiana Land and Exploration Company 28.20000% |
| | Aminoil USA, Inc. 19.00000% |
| | Marathon Oil Company 24.60000% |
| 11-Aug-1983 | Aminoil USA, Inc. changed its name to Aminoil Inc., effective 8/1/83. |
| 01-Mar-1985 | Record title interest is now held as follows, effective 1/1/1985: |
| | Amerada Hess Corporation 28.20000% |
| | The Louisiana Land and Exploration Company 28.20000% |
| | Marathon Oil Company 24.60000% |
| | Phillips Oil Company 19.00000% |
| 01-Mar-1985 | Aminoil Inc. merged with and into Phillips Oil Company, effective 1/1/85. The name of the surviving corporation is Phillips Oil Company (N. O. Misc. No. 788). |
| 25-Oct-1985 | The Louisiana Land and Exploration Company designates Marathon Oil Company as operator. |
| 25-Oct-1985 | Phillips Petroleum Company designates Marathon Oil Company as operator. |
| 25-Oct-1985 | Amerada Hess Corporation designates Marathon Oil Company as operator. |

| Date | Entry |
|---|---|
| 06-Dec-1985 | Record title interest is now held as follows, effective 8/1/1985: |
| | Phillips Petroleum Company — 19.00000% |
| | Amerada Hess Corporation — 28.20000% |
| | The Louisiana Land and Exploration Company — 28.20000% |
| | Marathon Oil Company — 24.60000% |
| 06-Dec-1985 | Phillips Oil Company merged with and into Phillips Petroleum Company, effective 8/1/85. |
| 24-Mar-1992 | Unit Contract No. 754392002 approved, effective 10/1/90. Unit consists of Leases OCS-G 1449, 1874, 1989. |
| 06-Oct-1999 | Record title interest is now held as follows, effective 1/1/1999: |
| | Amerada Hess Corporation — 28.20000% |
| | The Louisiana Land and Exploration Company — 28.20000% |
| | Marathon Oil Company — 24.60000% |
| | Newfield Exploration Company — 19.00000% |
| 06-Oct-1999 | Newfield Exploration Company designates Marathon Oil Company as operator. |
| 12-Oct-2000 | Record title interest is now held as follows, effective 6/1/2000: |
| | Amerada Hess Corporation — 56.40000% |
| | Marathon Oil Company — 24.60000% |
| | Newfield Exploration Company — 19.00000% |
| 12-Oct-2000 | Record title interest is now held as follows, effective 6/1/2000: |
| | Amerada Hess Corporation — 75.40000% |
| | Marathon Oil Company — 24.60000% |
| 31-Oct-2000 | Marathon Oil Company designates Amerada Hess Corporation as operator. of the S1/2 of Block 79, West Delta Area; of the W1/2SW1/4, SW1/4NW1/4 of Block 80, West Delta Area. |
| 07-Dec-2000 | Record title interest is now held as follows, effective 12/1/1999: |
| | Amerada Hess Corporation — 75.40000% |
| | PLAYA Minerals and Energy, Inc. — 24.60000% |
| 07-Dec-2000 | PLAYA Minerals and Energy, Inc. designates Amerada Hess Corporation as operator. of the S1/2 of Block 79, West Delta Area; W1/2SW1/4; SW1/4NW1/4 of Block 80, West Delta Area. |
| 13-Aug-2001 | Record title interest is now held as follows, effective 11/14/2000: |
| | Amerada Hess Corporation — 75.40000% |
| | PLAYA Minerals and Energy, Inc. — 22.14000% |
| | Parawon Corporation — 02.46000% |
| 13-Aug-2001 | Parawon Corporation designates Amerada Hess Corporation as operator. of the S1/2 of Block 79, West Delta Area; and of the W1/2SW1/4; SW1/4NW1/4 of Block 80, West Delta Area |
| 13-Aug-2001 | Mobile Mineral Corporation designates Amerada Hess Corporation as operator. of the S1/2 of Block 79, West Delta Area; and of the W1/2SW1/4; SW1/4NW1/4 of Block 80, West Delta Area |
| 13-Aug-2001 | Record title interest is now held as follows, effective 11/14/2000: |
| | Amerada Hess Corporation — 75.40000% |
| | PLAYA Minerals and Energy, Inc. — 20.91000% |
| | Mobile Mineral Corporation — 01.23000% |
| | Parawon Corporation — 02.46000% |
| 15-Nov-2004 | Record title interest is now held as follows, effective 11/1/2004: |
| | Amerada Hess Corporation — 100.00000% |
| 28-Dec-2004 | Amerada Hess Corporation designates SPN Resources, LLC as operator. All of Block 79 (S/2), West Delta Area, and All of Block 80 (W/2SW/4;SW/4NW/4), West Delta Area. |
| 18-Feb-2005 | Record title interest is now held as follows, effective 11/1/2004: |
| | SPN Resources, LLC — 100.00000% |
| 18-Nov-2005 | Held by prior production, production ceased on 08/29/2005. |
| 20-Jan-2006 | Production resumed on 12/08/2005. |
| 13-Oct-2010 | SPN Resources, LLC designates Dynamic Offshore Resources, LLC as operator. S/2 of Block 79, West Delta Area, and W/2SW/4; SW/4NW/4 of Block 80, West Delta Area. |
| 13-Sep-2013 | Dynamic Offshore Resources, LLC changed its name to SandRidge Energy Offshore, LLC, effective 6/25/2013. |
| 03-Feb-2014 | Unit Contract No. 14-08-001-13841 terminated, effective 9/12/2013. The unit consisted of G01449, G01874, G01989. |
| 17-May-2016 | SPN Resources, LLC changed its name to Fieldwood Energy SP LLC effective on 2/24/2016 |
| 19-Jul-2019 | Held by prior production, production ceased on 05/28/2019. |
| 21-Aug-2019 | Held by prior production, production ceased on 05/28/2019. |

| | |
|---|---|
| **20-Sep-2019** | Held by prior production, production ceased on 05/28/2019. |
| **21-Oct-2019** | Held by prior production, production ceased on 05/28/2019. |
| **21-Nov-2019** | Held by prior production, production ceased on 05/28/2019. |
| **19-Dec-2019** | Held by prior production, production ceased on 05/28/2019. |
| **21-Jan-2020** | Held by prior production, production ceased on 05/28/2019. |
| **20-Feb-2020** | Production resumed on 11/24/2019. |
| **20-Aug-2020** | Held by prior production, production ceased on 04/23/2020. |
| **21-Sep-2020** | Held by prior production, production ceased on 04/23/2020. |
| **21-Oct-2020** | Held by prior production, production ceased on 04/23/2020. |
| **18-Nov-2020** | Production resumed on 08/04/2020. |

# **EXHIBIT B**

HESS CORPORATION'S OBJECTION TO
DISCLOSURE STATEMENT

## OCS-G01449



## OCS-G04243



## OCS-G01989



## OCS-G02136



## OCS-G02934



## OCS-G04895



- 3 -