# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**OBJECTION OF ASPEN AMERICAN INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, EVEREST REINSURANCE COMPANY, AND SIRIUS AMERICA INSURANCE COMPANY TO THE MOTION OF DEBTORS FOR ENTRY OF ORDER (I) APPROVING DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF DISCLOSURE STATEMENT HEARING; (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (III) SCHEDULING CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN; (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING PROCEDURES FOR OBJECTIONS TO THE ASSIGNMENT AND TRANSFER OF PROPERTY OF THE ESTATE; (VII) APPROVING BID SUBMISSION DEADLINE AND PROCEDURES FOR SUBMISSION OF HIGHER OR BETTER BIDS; AND <u>(VIII) GRANTING RELATED RELIEF</u>**
**(Relates to Docket Nos. 723 and 724)**

---

[1] The Debtors, each of which have filed a separate voluntary petition, are: Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Inc.; Fieldwood Energy Offshore LLC; Fieldwood Onshore LLC; Fieldwood SD Offshore LLC; Fieldwood Offshore LLC; FW GOM Pipeline, Inc.; GOM Shelf LLC; Bandon Oil and Gas GP, LLC; Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Galveston Bay Pipeline LLC; and Galveston Bay Processing LLC.

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ....................................................................... 2

II.    BACKGROUND ............................................................................................... 6

    A.    Procedural Background.......................................................................... 6

    B.    Factual Background ............................................................................... 8

        i.    *The Nature of the Debtors' Operations* ................................... 8

        ii.    *Regulation of the Company's Businesses* ................................ 8

        iii.    *The Surety Bond Program* ....................................................... 9

        iv.    *The Surety Bonds Issued on Behalf of the Debtors by the Sureties* .......... 10

III.    OBJECTIONS.................................................................................................. 11

    A.    The Disclosure Statement Fails to Provide Adequate Information as
        Required by Section 1125 of the Bankruptcy Code............................. 11

        i.    *The Disclosure Statement Fails to Provide Adequate Information
            Regarding the Regulatory Approval Required to Confirm the
            Proposed Plan* ......................................................................... 13

        ii.    *The Disclosure Statement Fails to Provide Adequate Information
            Regarding How FWE I, FWE III and the Credit Bid Purchaser
            Will Address BOEM Financial Assurance/Bonding Requirements
            Post-Effective Date* ................................................................. 14

        iii.    *The Disclosure Statement Fails to Provide Adequate Information
            Regarding the Sureties' Material Modification and Impairment of
            Suretyship Status Defenses to the BOEM Bonds if the Government
            Fails to Require the Emerging Entities to Post Their Own Bonding*........ 14

        iv.    *The Disclosure Statement Fails to Provide Adequate Information
            Regarding the Post-Effective Date Indemnity and Premium-
            Payment Obligations of the Debtors, FWE I, FWE III and Credit
            Bid Purchaser* ......................................................................... 15

v. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Surety Bonds' Status as Non-Assumable Financial Accommodations and the Debtors' Cure Obligations* ............................. 17

vi. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Substitution of Principal Doctrine, and the Common Law Right of Sureties to be Exonerated, Indemnified and Obtain Quia Timet Relief and the Impact it will have on the Plan* ...................... 18

vii. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Credit Bid Purchase Agreement* ....................................... 20

viii. *The Disclosure Statement Fails to Provide Adequate Information Regarding FWE I's Assumption of the "Obligations for Damage to Property Included in the FWE I Assets or the GOM Shelf Oil and Gas Properties"* .................................................................................... 21

ix. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Alleged $5 Million in Improper Withdrawals the Debtors Made from Trust A* .................................................................. 22

x. *The Disclosure Statement Fails to Provide Adequate Information Regarding the $224 Million Being Paid by Credit Bid Purchaser* .......... 23

xi. *The Disclosure Statement Fails to Provide Adequate Information Regarding Financial Models/Projections Demonstrating FWE I's Ability to Meet its Financial Obligations Post-Effective Date* ................ 23

xii. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Liquidation Analysis* ......................................................... 24

xiii. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Value of the Legacy Apache Properties and the Sale Efforts of Fieldwood* .............................................................................. 25

B. The Disclosure Statement Should Not Be Approved Because the Plan is Patently Unconfirmable ........................................................................................... 25

i. *The Plan is Unconfirmable Because the Debtors Cannot Abandon Hazardous Properties Without the Court Imposing Conditions Protecting the Public's Health and Safety* ............................................... 26

ii. *The Plan is Unconfirmable Because the Plan Contains No Provisions for Obtaining Surety Bonds/Financial Assurance for FWE I, FWE III or Credit Bid Purchaser to Operate in the GOM* .......... 30

        iii.     *The Plan is Unconfirmable Because the Surety Bonds are Non-Assumable Financial Accommodations, Unless the Surety Consents to Assumption* ............................................................................. 34

        iv.     *The Plan is Unconfirmable Because the Debtors Have Taken No Actions in Attempting to Sell the Legacy Apache Properties and therefore the Plan is Not Proposed in Good Faith* ................................... 38

        v.      *The Plan is Unconfirmable Because Apache is Being Treated Differently than Similarly Situated Creditors* ........................................... 41

   C.    The Voting Procedures Should Not be Approved because they Purport to Give the Sureties and Predecessor Owners Only $1 in Voting Rights ................ 42

IV.    JOINDER OF OTHER SURETIES' OBJECTIONS ....................................................... 43

V.     RESERVATION OF RIGHTS ..................................................................................... 43

VI.    CONCLUSION ............................................................................................................ 44

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.J. Kellos Constr. Co. v. Balboa Ins. Co.*, 495 F. Supp. 408 (S.D. Ga. 1980)............................35

*In re Acis Capital Management, L.P.*, 603 B.R. 300 (N.D. Tex. 2019) ........................................33

*In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977 (Bankr. N.D. Ga. 1980) ................................37

*In re Am. Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009) ..................................27, 28

*Am. United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138 (1940)..............................25, 26

*In re American Capital Equipment, LLC*, 688 F.3d 145 (3d Cir. 2012)........................................25

*In re ATP Oil & Gas Corp.*, 2013 WL 3157567 (Bankr. S.D. Tex. June 19, 2013)................27, 28

*Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501(Ky. 1998)...35

*In re Cantu*, 2009 WL 1374261 (Bankr. S.D. Tex. May 15, 2009)................................................42

*In re CBBT, L.P.*, 2011 WL 1770438 (S.D. Tex. May 9, 2011)....................................................25

*In re Charrington Worldwide Enterprises, Inc.*, 98 B.R. 65 (Bankr. M.D. Fla. 1989) ...............37

*In re Coal Stripping, Inc.*, 215 B.R. 500 (Bankr. W.D. Pa. 1997)................................................35

*In re Coal Stripping, Inc.*, 222 B.R. 78 (Bankr. W.D. Pa. 1998)..................................................29

*In re Conseco, Inc.*, 330 B.R. 673 (Bankr. N.D. Ill. 2005)...........................................................33

*In re Cont'l Airlines Corp.*, 60 B.R. 903 (Bankr. S.D. Tex. 1986) ...............................................42

*In re CSC Indus., Inc.*, 232 F.3d 505 (6th Cir. 2000) ...................................................................41

*In re Cypresswood Land Partners, I*, 409 B.R. 396 (Bankr. S.D. Tex. 2009).........................12, 38

*In re Divine Ripe, L.L.C.*, 554 B.R. 395 (Bankr. S.D. Tex. 2016)............................................12, 13

*Matter of Edwards Mobile Home Sales, Inc.*, 119 B.R. 857 (Bankr. M.D. Fla. 1990)............34, 37

*In re Energy Future Holdings Corp.*, 648 Fed. Appx. 277 (3d Cir. 2016)....................................41

*In re Evans Products Co.*, 91 B.R. 1003 (Bankr. S.D. Fla. 1988)................................................35

*Evergreen Nat. Indem. Co. v. Herndon*, 2008 WL 1867770 (N.D. Tex. Apr. 25, 2008) .............15

*In re Falcon V, L.L.C.*, 620 B.R. 256 (Bankr. M.D. La. 2020)............................................. *passim*

*In re Ferretti*, 128 B.R. 16 (Bankr. D.N.H. 1991)........................................................................11

*Fid. & Deposit Co. of Maryland v. Edward E. Gillen Co.*, 926 F.3d 318 (7th Cir. 2019) ............19

*In re Friedman*, 2012 WL 5409194 (Bankr. D. Ariz. Nov. 5, 2012)............................................41

*Gundle Lining Const. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201 (5th Cir. 1996) ...............15

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 2010 WL 11545232 (S.D. Tex. Dec. 2, 2010)...18

*In re James River Coal Co.*, 306-0411, 2006 WL 2548456 (M.D. Tenn. Aug. 31, 2006)............35

*In re Lacy*, 183 B.R. 890 (Bankr. D. Colo. 1995).........................................................................33

*Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305 (Fed. Cir. 2011) ...........................36

*In re Metrocraft Pub. Servs, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984) .....................................12

*Meyer v. Building & Realty Service Co.*, 196 N.E. 250 (Ind. 1935)............................................35

*Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986)................... *passim*

*In re Mirant Corp.*, 197 Fed. Appx. 285 (5th Cir. 2006)..............................................................16

*Nat'l Am. Ins. Co. v. Boh Bros. Const. Co., Inc.*, 700 So. 2d 1363 (Ala. 1997).........................35

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962)..............................................................29, 35

*In re Pecht*, 57 B.R. 137 (Bankr. E.D. Va. 1986).........................................................................26

*In re Prime, Inc.*, 15 B.R. 216 (Bankr. W.D. Mo. 1981).............................................................37

*Matter of Provider Meds, L.L.C.*, 907 F.3d 845 (5th Cir. 2018) .................................................34

*In re Roy Gooden Plumbing & Sewer Co., Inc.*, 156 B.R. 635 (Bankr. E.D. Mo. 1993) .............33

*In re Scioto Valley Mortg. Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988) ........................................11
*In re Stanley Hotel, Inc.*, 13 B.R. 926 (Bankr. D. Colo. 1981)......................................................11
*In re Star Ambulance Serv., LLC*, 540 B.R. 251 (Bankr. S.D. Tex. 2015)...............................38, 39
*In re Sun Runner Marine, Inc.*, 945 F.2d 1089 (9th Cir. 1991) ......................................................37
*In re Texans CUSO Ins. Grp., LLC*, 426 B.R. 194 (Bankr. N.D. Tex. 2010)...............................42
*Texas Extrusion Corp. v. Lockheed Corp.* (*In re Texas Extrusion Corp.*), 844 F.2d 1142 (5th Cir.
1988) ....................................................................................................................................11, 12
*In re Texscan Corp.*, 976 F.2d 1269 (9th Cir. 1992) .....................................................................35
*The Ins. Co. of the State of Pennsylvania v. A-Unique Home Builders, Inc.*, 2005 WL 2044960
(S.D. Tex. Aug. 24, 2005)..........................................................................................................15
*In re Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013 (11th Cir. 1992)...........................................37
*In re Tri Union Development Corp.*, 314 B.R. 611 (Bankr. S.D. Tex. 2012)................................29
*In re Tri-Union Dev. Corp.*, 479 B.R. 425 (Bankr. S.D. Tex. 2012)..............................................14
*Trustees of Carpenters & Millwrights Health Benefit Tr. Fund v. Kipco Co.*, 567 F.2d 951 (10th
Cir. 1977) ..............................................................................................................................18, 33
*In re TS Indus., Inc.*, 117 B.R. 682 (Bankr. D. Utah 1990) ..........................................................37
*United States v. Great Am. Ins. Co. of NY*, 791 F. Supp. 2d 1337 (Fed. Cir. 2011)....................36
*In re Valrico Square Ltd. P'ship*, 1133 B.R. 794 (Bankr. S.D. Fla. 1990)...................................26
*Washington Int'l Ins. Co. v. United States*, 138 F. Supp.2d 1314 (Ct. Int'l Trade 2001) .............14
*In re Wegner Farms Co.*, 49 B.R. 440 (Bankr. N.D. Iowa 1985)............................................34, 37

## Statutes

11 U.S.C. § 365(b)(1) .....................................................................................................................17
11 U.S.C. § 365(c)(2).................................................................................................3, 17, 34, 37
11 U.S.C. § 502(c) .........................................................................................................................42
11 U.S.C. § 503(b)(1)(A)............................................................................................................3, 28
11 U.S.C. § 506(a)(1).....................................................................................................................41
11 U.S.C. § 554 .........................................................................................................................8, 9ff
11 U.S.C. § 1102(a)(1).....................................................................................................................7
11 U.S.C. § 1107(a) ..........................................................................................................................7
11 U.S.C. § 1108 ..............................................................................................................................7
11 U.S.C. § 1123(a)(4)........................................................................................................40, 41, 42
11 U.S.C. § 1125 .............................................................................................................................11
11 U.S.C. § 1129(a)(1).......................................................................................................................3
11 U.S.C. § 1129(a)(3).............................................................................................3, 30, 38, 40
11 U.S.C. § 1129(a)(7)....................................................................................................................24
11 U.S.C. § 1129(a)(9)....................................................................................................................28
11 U.S.C. § 1129(a)(11)..................................................................................................................24

## Other Authorities

74 Am. Jur. 2d Suretyship § 66..................................................................................................18, 33
30 C.F.R. § 250.1703......................................................................................................................27
30 C.F.R. § 556.700........................................................................................................................13
30 C.F.R. § 556.900...............................................................................................3, 14, 30, 33, 34
30 C.F.R. § 556.901...............................................................................................3, 14, 31, 32, 34

72 C.J.S. Principal and Surety § 254 ............................................................................................19

72 C.J.S. Principal and Surety § 256 ............................................................................................19

72 C.J.S. Principal and Surety § 259 ............................................................................................18

Aspen American Insurance Company ("Aspen"), Berkley Insurance Company ("Berkley"), Everest Reinsurance Company ("Everest"), and Sirius America Insurance Company ("Sirius" and together with Aspen, Berkley and Everest, the "Sureties"), by and through their undersigned counsel, hereby file this *Objection of Aspen American Insurance Company, Berkley Insurance Company, Everest Reinsurance Company, and Sirius America Insurance Company to the Motion of Debtors for Entry of Order (i) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (ii) Establishing Solicitation and Voting Procedures; (iii) Scheduling Confirmation Hearing; (iv) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (v) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (vi) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; (vii) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (viii) Granting Related Relief* (the "Objection").[2] In support of the Objection, the Sureties respectfully submit as follows:

## I.  **PRELIMINARY STATEMENT**

1.  The Debtors in this bankruptcy comprise one of the largest oil and gas companies operating in the Gulf of Mexico, which company owns oil and gas assets with billions of dollars of associated plugging and abandonment obligations. As part of this bankruptcy, the Debtors seek to walk away from more than a billion dollars' worth of those plugging and abandonment obligations, and the Debtors have no plan in place with respect to the transfer of those properties upon abandonment and what will happen with the properties in the event there is no entity to which

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement and Exhibits attached thereto. [Docket No. 723].

to abandon those properties, resulting in a significant risk to the public's health and safety. *Midlantic* does not permit such a course of action, which directly exposes the public to risk from unattended wells and spills from those wells, which spills could be significant and have disastrous consequences.

2.     Moreover, it is well-settled that post-petition decommissioning obligations are generally entitled to administrative expense priority under 11 U.S.C. § 503(b)(1)(A).  The Plan provides no funding for such decommissioning obligations, which upon information and belief, are so significant as to render the Plan not feasible.

3.     Additionally, the Plan hinges upon the use of the existing surety bonds to fund the decommissioning obligations of the Debtors, which is legally impermissible, as surety bonds are non-assumable financial accommodations under 11 U.S.C. § 365(c)(2), and therefore the Plan violates 11 U.S.C. 1129(a)(1), and (3).  Even if the surety bonds could be assumed, the surety bonds are nowhere near sufficient to satisfy the outstanding P&A obligations of the Debtors.  The new entities being formed under the Plan—FWE I, FWE III and Credit Bid Purchaser—will all require new bonding in order to operate, and that bonding must be sufficient to ensure compliance with all obligations of those entities under their leases. 30 C.F.R. §§ 556.900, 556.901.  The Plan appears to ignore this legal requirement that FWE I, FWE III and Credit Bid Purchaser obtain their own surety bonds, but rather provides that the new entities will be allowed to rely upon the surety bonds issued to the pre-petition entities, which bonds may not be relied upon by entities other than the principals named therein.  Nor is there any funding provided in the Plan for the obligations of the new entities to obtain new bonding.  And if the Government fails to require the Debtors to obtain this new bonding as it is required to do under the regulations, then the sureties would have potential impairment of suretyship status/material modification defenses to all of the BOEM

3

bonds, which is not disclosed and which will impact the likelihood of regulatory approval of the Plan. Assumption of the surety bonds would also require the curing of all obligations associated with the surety bonds including the indemnity agreements, and the assignees of the surety bonds would have to provide adequate assurance of future performance.

4.      The Plan also violates the Substitution of Principal Doctrine. Case law is clear that the substitution of a principal on a bond without the surety's consent is not permitted and results in a discharge of the surety. Even if the substitution of a principal did not result in a discharge of the surety, the improperly substituted principals would become the primary obligors on the bond. The debtor named in each bond is the principal obligor of each bond. It is not the beneficiary of the bond. Thus the derivation of the name "principal." It is the principal that has the primary obligation under each bond to perform, as well as the obligation to exonerate, indemnify and hold harmless the surety. The principal has no right to require the surety to perform in its place. Rather, it is the surety that has the right to require the principal to perform. And if the surety has reason to be fearful that in the future the principal will be unable to perform its obligation, the surety has the right to require that the principal collateralize it against potential loss (*i.e.*, *quia timet* rights). None of this is disclosed. Nor is it disclosed whether or how the emerging entities would be able to fulfill these obligations.

5.      Debtors propose to have the bonds improperly transferred to new principals and assign to those principals the benefits of those bonds without any of the associated burdens, which they cannot do. For purposes of analogy, assume the existence of a triple net house lease guaranteed by an uncle for his tenant nephew. Upon the bankruptcy of the nephew, the owner of the house cannot agree that the tenant nephew can designate a new tenant to replace him, and that the new tenant would be able to rely upon the existing guarantee from the uncle and the new tenant

4

would have no obligation to pay rent or assume the maintenance obligations. If the owner agreed to such terms, he/she would be unable to recover from the guarantor by virtue of the substitution of the principal. What Debtors' Plan proposes is to convert their primary obligations into assets to assign for the benefit of preferred creditors. That is impermissible alchemy. Debtors simply have no ability to convert liabilities into assets and their disclosure of this mythical ability is misleading and nonsense in fact and law.

6.      The Plan has also been structured in a way so as to benefit creditor Apache and the unsecured portion of its claim at the expense of the other unsecured creditors. Upon information and belief, there is significant value to be extracted from the Legacy Apache Properties, but to extract that value, capital must be injected into FWE I. As the Plan is currently constructed, there is next-to-no capital being provided to FWE I, and the only way that FWE I can obtain capital is either (1) via a farmout agreement with the Credit Bid Purchaser (with Apache's consent), under which the Credit Bid Purchaser retains a significant amount of the profits, or (2) via a Standby Credit Facility being funded by Apache in the amount of $400 million. The Standby Credit Facility, pursuant to the Standby Loan Agreement, may not be drawn on until all of the surety bonds and letters of credit in Trust A have been exhausted. In other words, Apache seeks to inject capital into FWE I to maximize the value of those assets and deplete them only after the sureties and letter of credit lenders are out of the picture. This will serve to significantly reduce the unsecured portion of Apache's claim while the other unsecured creditors get no such favorable treatment. Not only does Apache get to maximize the value of the FWE I assets and deplete them for its sole benefit, but Apache's "loan"—which is not really a "loan" at all given that Apache has the obligation to pay for decommissioning in any event—has to be paid back by FWE I at a significant interest rate. The only difference between Apache paying the government directly for

the decommissioning or via "loans" to FWE I, is that if it engages in the latter "loan" transactions, Apache gets to collect interest on its "loans" and inject capital into the assets and extract that additional value for its sole benefit to fund decommissioning and thereby significantly reduce the unsecured portion of its claim at the expense of other creditors.

7.      The net result will be to have Apache profit from the structure it has designed to the detriment of other creditors and joint and several obligors or sureties for those joint and several obligors.  This is not a plan designed to minimize the damages associated with Debtors' failure to meet their plugging and abandonment obligations.  Rather it is a plan designed to benefit Apache and increase the loss of the sureties and other creditors.  The reality of this arrangement is not disclosed fairly in the Disclosure Statement in plain and clear terms.  The Disclosure Statement does not project what profits are likely to be made by FWE I via "loans" from Apache which will serve to lessen Apache's decommissioning exposure; how the wells going into FWE I might otherwise be sold separately for the benefit of all creditors; or what their individual values might be and how those values might reduce the losses of all creditors, not just profit Apache.  Nor does the Disclosure Statement disclose that other operators in the Gulf of Mexico, including other leaseholders holding fractional interests in the same leases being set aside for the benefit of Apache, have made offers to purchase these fractional interests and the terms of those offers.

8.      In addition to the foregoing deficiencies, there are numerous other deficiencies with the Disclosure Statement and Plan which are discussed in detail below.  The Plan is unconfirmable on its face and "adequate information" has not been provided to the creditors.

## II.      BACKGROUND

### A.      PROCEDURAL BACKGROUND

9.      On August 3, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532

(as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, thereby commencing the above-styled and jointly administered bankruptcy case, seeking to reorganize their financial affairs.

10.     The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

11.     On August 4, 2020, the Debtors filed the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Programs and the Surety Bond Program, and (B) Pay Certain Obligations with Respect to Workers' Compensation Claims; and (III) Granting Related Relief* (the "Surety Bond Motion"). [Dkt. No. 4].

12.     On the same day, the Debtors filed the *Declaration of Michael Dane in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "Dane Declaration"). [Dkt. No. 29].

13.     On August 18, 2020, pursuant to section 1102(a)(1) of the Bankruptcy Code, the Office of the United States Trustee for Region 7, Southern and Western Districts of Texas appointed the Official Committee of Unsecured Creditors. [Dkt. No. 183].

14.     On January 1, 2021, the Debtors filed the (i) *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "Plan"); (ii) *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "Disclosure Statement"); and (iii) *Motion of Debtors For Entry of Order (i) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (ii) Establishing Solicitation and Voting Procedures; (iii) Scheduling Confirmation Hearing; (iv) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (v) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (vi) Approving Procedures for*

*Objections to the Assignment and Transfer of Property of the Estate; (vii) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (viii) Granting Related Relief.* [Dkt. Nos. 722, 723 and 724].

15.     The proposed Plan contemplates a series of transactions whereby the Debtors' assets will either be (i) transferred to one of three newly created entities (*i.e.*, FWE I, FWE III or the Credit Bid Purchaser), or (ii) abandoned. [Dkt. No. 723, pp. 13-14].  In effect, the Debtors seek to ringfence their good assets for the benefit of their secured creditors and to divest their bad assets into FWE I, FWE III or abandon them altogether, pursuant to section 554 of the Bankruptcy Code.

**B.     FACTUAL BACKGROUND**

***i.  The Nature of the Debtors' Operations***

16.     The Debtors, together with their non-debtor affiliates (collectively, the "Company"), comprise one of the largest independent oil and gas exploration and production ("E&P") companies operating in the Gulf of Mexico (the "GOM"). [Dkt. No. 29, ¶¶ 5 and 17]. The Company is focused on the acquisition, exploration and development of offshore assets located in the shallow water and deepwater GOM and Gulf Coast Regions of the United States. *Id.* at ¶ 5.

17.     The Company's assets include, among other things: (a) more than 350 oil and gas leases (the "O&G Leases"); (b) hundreds of wells; (c) more than 300 operated platforms spread over 1.5 million gross acres; (d) pipelines; (e) facilities; and (f) rights of way (collectively, the "GOM Assets").  Additionally, the Company is party to hundreds of farmout, unitization and joint operating agreements that govern the operations of the GOM Assets. *Id.* at ¶¶ 19 and 23.

***ii.  Regulation of the Company's Businesses***

18.     As the operator of the GOM Assets, the Company is subject to local, state and federal laws and regulations in each jurisdiction in which it operates. *Id.* at ¶22.  Such laws and

regulations address, among other things, the operation of wells and facilities, environmental protection, and exploration and development activities. *Id.* Among the obligations imposed on E&P companies by such laws and regulations is the duty to provide for the plugging and abandonment ("P&A") of wells and decommissioning of assets (*i.e.* platforms, facilities, pipelines, etc.) associated with their E&P operations (collectively, the "P&A Obligations"). *Id.* at ¶¶ 22, 24.

19.     A substantial number of the O&G Leases were issued by the U.S. Department of the Interior and cover real property situated in federal waters. *Id.* at ¶23. Such leases are subject to the oversight and regulation by the Bureau of Ocean Energy Management ("BOEM") and the Bureau of Safety and Environmental Enforcement ("BSEE"), including, but not limited to (a) BOEM's approval of exploration, development and production plans, and (b) BSEE's permitting process, which regulates, among other things, engineering and construction plans, safety procedures, P&A and removal of infrastructure. *Id.* at ¶ 23.

### iii. *The Surety Bond Program*

20.     In order to secure certain of its obligations (including P&A Obligations) to third parties, the Debtors in the ordinary course of business provide surety bonds to such third parties, including, but not limited to, certain agencies of the U.S. Government (the "Surety Bond Program"). [Dkt. No. 4, ¶ 28]. The Surety Bond Program generally covers two categories of third parties: (1) federal and state governmental units and other public agencies, and (2) contract counterparties to whom the Debtors have obligations related to various plugging, abandonment and decommissioning activities. *Id.* at ¶ 28. In conjunction with providing a surety bond, the Debtors either (a) enter into an indemnity agreement with the surety that issues the bond or (b) provide full cash collateralization of the surety bond. *Id.* at ¶ 29. The failure to maintain surety bonds in favor of the federal government and states adjacent to the GOM would result in the

9

revocation of the necessary approvals for the Company to continue its operations in the GOM. *Id.* at ¶ 34.

### iv. The Surety Bonds Issued on Behalf of the Debtors by the Sureties

21.     Prior to the Petition Date, the Sureties issued several surety bonds on behalf of the Debtors to assure their payment and/or performance obligations in connection with the GOM Assets, as well as certain other obligations.  As of the Petition Date, Aspen has issued approximately $19.2 million in surety bonds; Berkley has issued approximately $74 million in surety bonds; Everest has issued approximately $45.5 million in surety bonds; and Sirius has issued approximately $46.5 million in surety bonds (each a "Surety Bond" and collectively the "Surety Bonds").[3]  The majority of the Surety Bonds were issued to assure the P&A Obligations associated with the GOM Assets.

22.     The Sureties issued their respective Surety Bonds as consideration for the execution by the Debtors of certain indemnity agreements (each an "Indemnity Agreement" and collectively, the "Indemnity Agreements") that, among other things, obligate the Debtors to: (a) exonerate, indemnify and hold harmless the Sureties from and against any claim or liability arising as a result of having issued the Surety Bonds; (b) procure the discharge and release of the Surety Bonds; and (c) post collateral for any such Surety Bonds upon demand by the Sureties for any unreleased liability.[4]

---

[3] A spreadsheet of the Surety Bonds and corresponding obligations is attached hereto as **Exhibit A**.  True and correct copies of the Surety Bonds are attached hereto as **Exhibit B**.

[4] True and correct copies of the Indemnity Agreements are attached hereto as **Exhibit C**.

23.     An indemnity agreement running from the principal to the surety is a standard condition for the execution of bonds by sureties for principals, such as Debtors, and is a critical component of the surety and principal relationship.

### III.     OBJECTIONS

**A.     THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE**

24.     The purpose of a disclosure statement is "to inform equity holders and claimants, as fully as possible, about the probable financial results of acceptance or rejection of a particular plan. . ." *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981).  The disclosure statement is the primary source of information creditors and other parties in interest rely upon in making informed decisions about a debtor's plan of reorganization. *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) (Congress intended the disclosure statement "to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization."); *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (A proposed disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."); *see also Texas Extrusion Corp. v. Lockheed Corp.* (*In re Texas Extrusion Corp.*), 844 F.2d 1142, n.21 (5th Cir. 1988) (noting that a creditor not actively participating in a bankruptcy proceeding primarily relies on a disclosure statement to obtain its information).  To properly serve this purpose, the Bankruptcy Code requires that a disclosure statement contain "adequate information," which is defined as "information of a kind, and in sufficient detail, . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C.

§ 1125. Whether a disclosure statement contains "adequate information" is determined on a case-by-case basis. *In re Texas Extrusion Corp.*, 844 F.2d at 1156-57.

25.     The courts in the Southern District of Texas utilize a non-exhaustive list of factors to be considered when analyzing whether a disclosure statement contains "adequate information." *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 400-02 (Bankr. S.D. Tex. 2016); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 424 (Bankr. S.D. Tex. 2009). These are known as the *Metrocraft* factors, which were originally formulated in *In re Metrocraft Pub. Servs, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984). The factors are: (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectability of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in the non-bankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates. *In re Divine Ripe, L.L.C.*, 554 B.R. at 401-02 (citing *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. at 568).

26.     The Disclosure Statement in this matter should not be approved because it omits basic information about matters of primary concern to the Sureties and therefore does not contain "adequate information."

*i.* ***The Disclosure Statement Fails to Provide Adequate Information Regarding the Regulatory Approval Required to Confirm the Proposed Plan***

27.     Under the Plan, the Debtors propose to strip Fieldwood of all its good assets, create three new entities and purportedly assign these new entities the right to operate the GOM Assets that are not being abandoned.  However, any transfer of the O&G Leases and related platforms, pipelines, facilities and rights of way must first be approved by BOEM. *See* 30 C.F.R. § 556.700 ("With BOEM approval, you may assign your whole, or a partial record title interest in your entire lease, or in any aliquot(s) thereof.").

28.     Despite alleging "ongoing discussions" with the Government in parts of the Disclosure Statement, [Dkt. No. 723, pp. 12, 13, 20 and 46], elsewhere the Debtors acknowledge that they have not secured Government approval for the new entities that are being created under the Plan to operate after the Plan is confirmed. *Id.* at p. 50, 52.  This is a significant detail that is missing from the Disclosure Statement and goes to the feasibility of the Plan.

29.     The ability of these new entities to operate is the lynchpin of the Plan.  The Plan of Merger states: "Note to Draft: Now that FWE I is no longer the surviving entity under the divisive merger, to confirm whether BOEM qualification will be permitted to 'vest' in FWE I or whether FWE I will be required to obtain its owner qualification separate from FWE's qualification (which will inure to FWE III instead)." *Id.* at n.11.  The Debtors face a significant challenge in obtaining approval from the Government for the new entities to operate.

*ii.* ***The Disclosure Statement Fails to Provide Adequate Information Regarding How FWE I, FWE III and the Credit Bid Purchaser Will Address BOEM Financial Assurance/Bonding Requirements Post-Effective Date***

30. The Debtors fail to disclose how the post-Effective Date financial assurance/bonding requirements that BOEM will impose on FWE I, FWE III and Credit Bid Purchaser will be satisfied. *See* 30 C.F.R. § 556.900 (setting forth the base bonding/financial assurance requirements); 30 C.F.R. § 556.901 (setting forth the additional bonding requirements). These financial assurance/bonding requirements are not discretionary and require bonding/financial assurance sufficient to ensure that FWE I, FWE III and Credit Bid Purchaser will comply with their lease and regulatory obligations, including plugging and abandonment. 30 C.F.R. §§ 556.900, 556.901.  Debtors should be required to disclose the source of the funding for the bonding/financial assurance to operate the Credit Bid Acquired Interests, FWE I and FWE III.

*iii.* ***The Disclosure Statement Fails to Provide Adequate Information Regarding the Sureties' Material Modification and Impairment of Suretyship Status Defenses to the BOEM Bonds if the Government Fails to Require the Emerging Entities to Post Their Own Bonding***

31. As set forth above, each of the emerging entities will require new bonding in order to operate, and the Government, per the regulations, is required to obtain that bonding in an amount sufficient to ensure that those entities will be able to comply with their lease and regulatory obligations.  If the Government fails to require such bonding and allows those entities to operate and deplete the value of those leases with no funds remaining to satisfy the plugging and abandonment obligations, and the sureties are required to perform under their bonds based upon the Government's failure to act, then the sureties would have potential impairment of suretyship status and/or material modification defenses to any claims on the BOEM bonds by the Government. *See In re Tri-Union Dev. Corp.*, 479 B.R. 425, 440-42 (Bankr. S.D. Tex. 2012) (holding that a surety may have a claim against BOEM for impairment of suretyship status where

14

BOEM has a duty to act and fails to do so, thereby impairing the surety's remedies or increasing its risk under the bond); *Washington Int'l Ins. Co. v. United States*, 138 F. Supp.2d 1314, 1330-31 (Ct. Int'l Trade 2001) ("The federal common law is clear that when a surety's contractual obligation is materially altered without its knowledge or consent in a manner that increases its risk, the surety is to be discharged to the extent that it is prejudiced or damaged.").  There is nothing in the Disclosure Statement advising creditors of these potential defenses of the sureties to the BOEM bonds and how it will impact the obtaining of regulatory approval for this transaction.

*iv. The Disclosure Statement Fails to Provide Adequate Information Regarding the Post-Effective Date Indemnity and Premium-Payment Obligations of the Debtors, FWE I, FWE III and Credit Bid Purchaser*

32.     The obligations of a principal to exonerate, indemnify, hold the surety harmless and pay all premiums, pursuant to a standard indemnity agreement, are integrated elements of a surety and principal contractual relationship. *See, e.g.*, *In re Falcon V, L.L.C.*, 620 B.R. 256, n.44 (Bankr. M.D. La. 2020) (citing an indemnity agreement and noting that "Debtors have a continuing duty to perform under the surety bond program by paying premiums, indemnifying [the surety] for any amounts paid to claimants on the bonds, posting collateral as security and granting [the surety] reasonable access to books, records and accounts."); *Evergreen Nat. Indem. Co. v. Herndon*, CIV.A.3:07-CV-0184-B, 2008 WL 1867770, *1 (N.D. Tex. Apr. 25, 2008) (citing an indemnity agreement between a principal and surety which required the principal to "exonerate, save harmless, indemnify, and keep indemnified the Surety from and against [any and all loss]"); *Gundle Lining Const. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (same); *The Ins. Co. of the State of Pennsylvania v. A-Unique Home Builders, Inc.*, CIV.A. H-04-1154, 2005 WL 2044960, *3 (S.D. Tex. Aug. 24, 2005) (same).

33.     The Debtors state in the Apache Term Sheet Implementation Agreement that:

(ix) With respect to all bonds and letters of credit constituting Decommissioning Security, all claims for premiums, fees, reimbursement, indemnification, or any other claims, fixed, contingent, liquidated, unliquidated, or otherwise against the Debtors held by the companies issuing the bonds or letters of credit, shall neither be allocated to nor become the obligations of FWE I under the Plan of Merger. Notwithstanding the foregoing, all rights of the Apache PSA Parties with respect to such bonds and letters of credit shall be preserved as against such bonding companies and letter of credit issuers in all respects. The Debtors shall not terminate any bonds issued on behalf of the Debtors relating to the Legacy Apache Properties under which any federal, state or local governmental entity is an obligee.

[Dkt. No. 723-1, p. 129].

34. Although inferences can be drawn, this paragraph does not adequately apprise the Sureties with respect to post-Effective Date indemnity and/or premium-payment obligations of the Debtors, FWE I, FWE III and Credit Bid Purchaser.

35. Debtors' apparent intent in the Plan is to have the surety bonds survive confirmation without either the associated (1) indemnity obligations, or (2) premium-payment obligations. Hypothetically, this could result in the Sureties being forced to extend surety credit for the next 10-15 years, so that the emerging entities can legally operate, and never receiving any premiums associated with that credit. The Sureties should be entitled to a definitive statement from the Debtors whether this is in fact the intent of their Plan. And if the intent of the Plan is in fact for the surety bonds to be assumed without the associated indemnity agreements, this would not be permissible as the Debtors cannot assume only part of a contract. *In re Mirant Corp.*, 197 Fed. Appx. 285, 288-89 (5th Cir. 2006) ("It is well established that as a general proposition an executory contract must be assumed or rejected in its entirety . . . the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement.") (citations omitted); *In re Falcon V, L.L.C.*, 620 B.R. 256, 264 (Bankr. M.D. La. 2020) (noting that a surety bond and indemnity agreement must be construed together as a single contract);

16

Restatement (Second) of Contracts § 202 (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."). Debtors cannot assume the benefits of a contract without the associated burdens as they appear to propose under the Plan. If the Debtors are permitted to assume the surety bonds, they would also be required to assume their obligations as the primary obligors under the bonds as well as their obligations with respect to the balance of their contractual agreement with the surety under their indemnity agreement.

### v. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Surety Bonds' Status as Non-Assumable Financial Accommodations and the Debtors' Cure Obligations*

36. As set forth more fully in the non-confirmability section of this Objection, the surety bonds at issue in this bankruptcy are non-assumable financial accommodations as set forth in and construed under section 365(c)(2) of the Bankruptcy Code.[5] The Disclosure Statement fails to address this fact. Instead, the Plan purports to allow the successor entities to assume the surety bonds, which they cannot do. Surety bonds are executory contracts which cannot be assumed under section 365 absent the consent of the sureties.

37. Even if the surety bonds were assumable, in order to be assumed and assigned all breaches of all obligations associated with the surety bonds would have to be cured and adequate assurance of future performance provided by the assignee. *See* 11 U.S.C. § 365(b)(1). This includes adequate assurance that the assignee will perform under the Indemnity Agreements and/or perform its common law indemnity and exoneration obligations associated with the surety bonds. It also includes adequate assurance that the assignee will comply with all obligations associated with the leases which the sureties bonded, including decommissioning obligations. There is

---

[5] See *infra* section D(iii).

nothing in the Disclosure Statement that sets forth the means by which the Debtors intend to cure the breaches of their lease obligations prior to any assumption and/or assignment. Upon information and belief, and by way of example, the Debtors have several pending Incidents of Noncompliance ("INCs") from BSEE which they have failed to discuss in their Disclosure Statement and which may be violations of their leases. Debtors have failed to provide any discussion as to how those INCs will be cured by the Debtors prior to confirmation so as to provide the basis for any assumption and/or assignment of the leases.

### vi. The Disclosure Statement Fails to Provide Adequate Information Regarding the Substitution of Principal Doctrine, and the Common Law Right of Sureties to be Exonerated, Indemnified and Obtain Quia Timet Relief and the Impact it will have on the Plan

38.     The principal on a surety bond may not be substituted absent consent of the surety, and if the principal is substituted, it may result in a discharge of the surety. 74 Am. Jur. 2d Suretyship § 66 (noting that a substitution of principal not assented to by the surety discharges the surety from liability); *Trustees of Carpenters & Millwrights Health Benefit Tr. Fund v. Kipco Co.*, 567 F.2d 951, 954 (10th Cir. 1977) (noting that "generally, a surety will not be liable for the default of a new principal to whose substitution it has not consented").

39.     The Debtors fail to discuss in their Disclosure Statement the Substitution of Principal Doctrine and how it impacts the Plan. Instead, the Debtors appear to suggest in the Disclosure Statement that the surety bonds will remain in place post-Effective Date and FWE I, FWE III and Credit Bid Purchaser will be the new principals. If that is the case, it would result in a potential discharge of the sureties' obligations under the bonds because of the improper substitution of principal.

40.     Even if the sureties' obligations were not discharged, the Disclosure Statement fails to address how the surviving entities will address their common law indemnification and

exoneration obligations owed to the sureties. 72 C.J.S. Principal and Surety § 259 ("A surety who pays the debt is entitled to recover from the principal the amount so paid."); *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, CV B-09-206, 2010 WL 11545232, *6 (S.D. Tex. Dec. 2, 2010), *aff'd*, 665 F.3d 671 (5th Cir. 2011) ("Even without an indemnity agreement, a surety . . . who pays the debt of its principal has an equitable right at common law to indemnification."); *Fid. & Deposit Co. of Maryland v. Edward E. Gillen Co.*, 926 F.3d 318, 322 (7th Cir. 2019) ("When the person to whom performance is owed comes to the surety to collect, the surety may use exoneration to force its principal to perform, thus releasing the surety from its secondary obligation."); *Am. Sur. Co. of New York v. Lewis State Bank*, 58 F.2d 559, 560 (5th Cir. 1932) (discussing a surety's right to exoneration); 72 C.J.S. Principal and Surety § 256 (same). Thus, if this Court permits the substitution of the principal on the bonds, those substituted principals (FWE I, FWE III and Credit Bid Purchaser) would all be required to exonerate and indemnify the sureties and there is nothing in the Disclosure Statement that discloses to the creditors the impact of such obligations on the Plan.

41. There is also nothing in the Disclosure Statement about the sureties' right to bring an action in *quia timet* to force a principal to post collateral to ensure that there is no loss by the surety, if the surety believes a loss may be forthcoming. *Am. Sur. Co. of New York v. Lewis State Bank*, 58 F.2d at 560 (discussing a surety's *quia timet* rights); 72 C.J.S. Principal and Surety § 254 (noting that a surety has the right to force the principal to post collateral as security for probable bond liability). In this matter the Plan proposes the creation of special purpose vehicles for the purpose of exploiting assets for the benefit of the secured creditors and undersecured creditor Apache. There is nothing in the Disclosure Statement regarding how the emerging entities will accumulate sufficient assets to fund the decommissioning obligations as to which they will become

19

the primary obligor under the impermissible assumption of bonds proposed by the Debtors. In the absence of adequate capitalization sufficient to meet plugging and abandonment obligations, the sureties will be insecure regarding the ability of these impermissibly substituted primary obligors to meet their obligations under the bonds. As a result, the sureties would be entitled to *quia timet* relief against the emerging entities in the form of collateralization with respect to the bonded plugging and abandonment obligations.

### vii. The Disclosure Statement Fails to Provide Adequate Information Regarding the Credit Bid Purchase Agreement

42.     Exhibit 22 of the Apache Term Sheet Implementation Agreement sets forth some of the terms on which the Credit Bid Purchaser, Debtors and Apache Corporation ("Apache") have agreed to include in an eventual Credit Bid Purchase Agreement. [Dkt. No. 723-2, p. 475]. However, this "snippet" of terms is woefully inadequate to inform the Sureties of the precise terms of the Credit Bid Purchase Agreement.

43.     Set forth below is a non-exhaustive list of the deficiencies of the Disclosure Statement related to the proposed Credit Bid Transaction:

a.     fails to address how the Credit Bid Purchaser will satisfy bonding/financial assurance requirements with BOEM post-Effective Date;

b.     fails to address how the Credit Bid Purchaser will satisfy premium-payment obligations for the surety bonds that will be required in order to operate;

c.     fails to address how the Credit Bid Purchaser will satisfy indemnification obligations associated with the surety bonds; and

d.     fails to address how decommissioning will be handled. For example, will a trust be set up for payment of P&A Obligations, similar to Trust A in FWE I? Will a certain percentage of Credit Bid Purchaser's revenue be set aside for decommissioning? Or will the secured creditors pull the profit out of the new entity, deplete its assets, and expect the sureties to step in and complete decommissioning?

44.     As stated previously, the obligations of the principal to indemnify, exonerate and hold the surety harmless are integrated conditions of a surety's willingness to extend surety credit to a bond principal.  The Disclosure Statement does not state how the Credit Bid Purchaser intends to obtain new surety credit, which is required in order to operate the Credit Bid Acquired Interests, nor does the Disclosure Statement provide how the Credit Bid Purchaser intends to satisfy its indemnity and exoneration obligations to the sureties.  This information is critical to understanding the Plan as the Credit Bid Purchaser, as a special purpose entity, will have obstacles to overcome in convincing the sureties to provide surety credit and in demonstrating to the Government that the Credit Bid Purchaser has the financial wherewithal to legally operate the Credit Bid Acquired Interests.

45.     There are numerous unanswered questions with respect to the Credit Bid Purchase Agreement.  The snippet provided is insufficient and omits critical information needed by the Sureties to understand the Plan.  The Credit Bid Purchase Agreement is a critical document to the Plan and should be required to be produced to the Sureties in advance of the Disclosure Statement Hearing, with sufficient time for the Sureties to review and potentially object to the contents therein.

### viii. The Disclosure Statement Fails to Provide Adequate Information Regarding FWE I's Assumption of the "Obligations for Damage to Property Included in the FWE I Assets or the GOM Shelf Oil and Gas Properties"

46.     In Exhibit 22 to the Apache Term Sheet Implementation Agreement, which contains the snippet of the proposed terms of the Credit Bid Purchase Agreement, the terms state that the Credit Bid Purchaser is assuming "Closing Date Payables," as that term is defined therein. [Dkt. No. 723-2, p. 475-477].  There are exceptions to the assumption of "Closing Date Payables" however, and those exceptions are to be retained obligations of FWE I. *Id.* at 477.

47.     Included within the exceptions to the Closing Date Payables is an exception for "obligations for damage to property included in the FWE I Assets or the GOM Shelf Oil and Gas Properties." *Id.* at 476-77. This statement is vague and ambiguous as to what it means, and what specific property damage obligations are to be retained by FWE I. Does it mean that FWE I retains obligations for property damage to the FWE I Assets? Does it mean that FWE I retains obligations for property damage caused by the FWE I Assets? Does it mean both? Are there currently significant property damage obligations that the Debtors intend to include within this retention of liabilities?

48.     The magnitude of this proposed retention of liabilities could be significant and directly impact the financial viability of FWE I post-Effective Date. The Sureties should be entitled to this information to aid in their analysis of the feasibility of FWE I.

### ix.  The Disclosure Statement Fails to Provide Adequate Information Regarding the Alleged $5 Million in Improper Withdrawals the Debtors Made from Trust A

49.     In the Apache Term Sheet Implementation Agreement, Debtors disclose that an audit was conducted with respect to funds held in a certain trust created in connection with the Decommissioning Agreement ("Trust A"). [Dkt. No. 723-1, p. 119]. The Debtors further disclose that Apache alleges that $5 million was improperly withdrawn from Trust A in contravention of the terms of the Decommissioning Agreement. *Id.* The Debtors define this as the "Apache Trust A Claims." *Id.* The Debtors provide no additional information regarding the Apache Trust A Claims.

50.     Everest, and other sureties in this litigation, provided bonding on behalf of the Debtors in favor of Apache in connection with the Decommissioning Agreement (the "Decommissioning Bonds"). The funds in Trust A are specially earmarked for P&A Obligations related to the Legacy Apache Properties. Subject to the terms and conditions of the

Decommissioning Agreement and the Decommissioning Bonds, Apache cannot look to the Decommissioning Bonds for P&A Obligations regarding the Legacy Apache Properties until the Trust A Cash, as that term is defined in the Decommissioning Agreement, is exhausted. Without providing any details as to the circumstances surrounding the allegedly improper withdrawal of $5 million in cash from Trust A, Apache is waiving its claim against Fieldwood for the withdrawal, which is prejudicial to the sureties that provided the Decommissioning Bonds. Assuming Apache's claim that $5 million was improperly withdrawn from Trust A is true, that will directly affect the sureties and provide a potential defense (at least a partial defense) to performance under the Decommissioning Bonds. Thus, the Sureties should be entitled to more detailed information regarding the circumstances of the alleged improper $5 million withdrawal from Trust A.

### x. *The Disclosure Statement Fails to Provide Adequate Information Regarding the $224 Million Being Paid by Credit Bid Purchaser*

51. In is not clear in the Disclosure Statement how the $224 million being provided by Credit Bid Purchaser to purchase the Credit Bid Acquired Interests, [Dkt. No. 723, p. 13], is being allocated in the Plan. To the extent not properly allocated elsewhere, these funds should be used to fund the decommissioning obligations of the Debtors to protect the health and safety of the public. The Sureties should be entitled to a definitive statement from the Debtors as to how these funds are being allocated under the Plan.

### xi. *The Disclosure Statement Fails to Provide Adequate Information Regarding Financial Models/Projections Demonstrating FWE I's Ability to Meet its Financial Obligations Post-Effective Date*

52. In the Disclosure Statement, Debtors devote only two small paragraphs to the financial viability of FWE I under the Plan. [Dkt. No. 723, pp. 63, 64]. The Disclosure Statement fails to provide any information regarding: (a) the magnitude of expected post-Effective Date operating expenses for FWE I; (b) the expected post-Effective Date revenue to be generated by

FWE I; (c) the projected amount of monies that will be paid to the Credit Bid Purchaser under the Transition Services Agreement to operate the FWE I Assets; or (d) the projected monies that will have to be paid to third parties in connection with the FWE I Assets. Indeed, the Debtors fail to provide any financial projections or analyses related to the post-Effective Date operations of FWE I, other than noting in conclusory terms that there are Trust A assets (including surety bonds and letters of credit) and a Standby Credit Facility backing up the P&A Obligations of that entity.

53. Even assuming, *arguendo*, that the Trust A assets and Standby Credit Facility are adequate to cover the P&A Obligations associated with the property to be transferred to FWE I, which is questionable, it is possible that FWE I's post-Effective Date operating expenses could exceed its revenues to such an extent that it is not a viable entity, thus rendering the Plan not feasible. 11 U.S.C. § 1129(a)(11) ("The Court shall confirm a plan only if . . . [c]onfirmation of the plan is not likely to be followed by the liquidation, or further need for financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.").

54. The Disclosure Statement does not provide adequate information necessary for creditors to determine the likelihood that FWE I will be able to meet its obligations post-Effective Date and that confirmation of the Plan would not likely be followed by liquidation or further financial reorganization.

### xii. *The Disclosure Statement Fails to Provide Adequate Information Regarding the Liquidation Analysis*

55. Debtors do not provide any liquidation analysis as part of their Disclosure Statement, and simply note that the liquidation analysis is "[t]o come." [Dkt. 23, p.11]. A liquidation analysis is an integral part of a disclosure statement and without it there is not adequate

24

information for the creditors to assess whether the Plan satisfies the best interest of creditors test as set forth in section 1129(a)(7) of the Bankruptcy Code.

### xiii. The Disclosure Statement Fails to Provide Adequate Information Regarding the Value of the Legacy Apache Properties and the Sale Efforts of Fieldwood

56.     As set forth more fully in the non-confirmability section of this Objection, upon information and belief there is potentially significant value to be extracted from the Legacy Apache Properties, and there are potential buyers in the market for these assets.[6]  Debtors provide no valuation analysis in their Disclosure Statement with respect to the Legacy Apache Properties, nor do Debtors detail any efforts to market and sell these assets.  Marketing and selling these assets could provide significant value to the estate, rather than undertaking a plan that solely benefits Credit Bid Purchaser and the unsecured portion of Apache's claim.

### B. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE THE PLAN IS PATENTLY UNCONFIRMABLE

57.     "Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage." *In re American Capital Equipment, LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012) (citing *In re Larsen*, No. 09-02630, 2011 WL 1671538, at *2 n.7 (Bankr. D. Idaho May 3, 2011)).  However, "[c]ourts have recognized that if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *Id.* at 154 (citing numerous cases) (internal quotation marks omitted); *see also In re CBBT, L.P.*, 2011 WL 1770438, *3 (S.D.

---

[6] See *infra* section D(iv).

Tex. May 9, 2011) (rejecting disclosure statement filed by the debtor because the plan was unconfirmable on its face).

58. In determining whether a plan is unconfirmable, the Court's role is "not merely . . . ministerial," but involves "scrutiny of the circumstances" surrounding a plan. *Am. United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 145 (1940). A plan is "patently unconfirmable" if: "(1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id.* at 155. In such circumstances, a court will not approve a disclosure statement because doing so would impose unnecessary cost and expense in solicitation and would cause estate professionals to waste time and resources of the estate and Court. *See In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) (rejecting a disclosure statement and noting that proceeding with an unconfirmable plan would subject the estate to needless expense); *In re Valrico Square Ltd. P'ship*, 1133 B.R. 794, 796 (Bankr. S.D. Fla. 1990) ("Soliciting votes and seeking court approval on a clearly fruitless venture is a waste of the time of the Court and the parties.").

i. **The Plan is Unconfirmable Because the Debtors Cannot Abandon Hazardous Properties Without the Court Imposing Conditions Protecting the Public's Health and Safety**

59. Section 5.12 of the Plan states as follows:

### 5.12 Abandonment of Certain Properties

Immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on the Schedule of Abandoned Properties are abandoned pursuant to the Plan without further notice to or order of the Bankruptcy Court pursuant to Sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to Section 365 of the Bankruptcy Code, as applicable. The Abandoned Properties shall not be allocated to nor vest in the Post-Effective Date Debtors or NewCo and its subsidiaries, including the Credit Bid Purchaser. Except as otherwise provided in this Plan or the Confirmation Order, the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties. Nothing in this Plan or the Confirmation

Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties.

[Dkt. No. 723-1, pp. 44-45].

60.    The Schedule of Abandoned Properties, attached to the Disclosure Statement as Exhibit F, lists numerous properties that the Debtors seek to abandon under the Plan (the "Abandoned Properties").  The Abandoned Properties have associated P&A Obligations that are imposed pursuant to BOEM regulations that are intended to protect the public's health and safety. *See* 30 C.F.R. § 250.1703; *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 3157567 (Bankr. S.D. Tex. June 19, 2013).

61.    It is well-settled law, under the holding in *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986), that "[t]he Bankruptcy Court does not have the power to authorize an abandonment [of hazardous property] without formulating conditions that will adequately protect the public's health and safety." *Id.* at 506-07.  "Accordingly . . . we hold that a [debtor] may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Id.* at 507.

62.    This Court has issued at least two separate opinions discussing *Midlantic—In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 3157567 (Bankr. S.D. Tex. June 19, 2013) and *In re Am. Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009).  In *In re ATP* this Court permitted the abandonment of certain oil and gas properties based upon a finding that the conditions imposed upon the Debtors were sufficient to protect the public's health and safety in connection with the plugging and abandonment obligations of certain oil and gas properties. 2013 WL 3157567 at *2.  One of those conditions was that the United States, if it were required to undertake decommissioning of the properties, was permitted to pursue the predecessors-in-interest

27

to the properties for some or all of the decommissioning costs. *Id.*  The other condition was that the United States maintained an administrative claim against the Debtors for all costs associated with decommissioning efforts undertaken by the government, pursuant to a settlement agreement between the parties. *Id.*

63.     Notably, this Court in *In re ATP* was faced with only $100 million dollars' worth of plugging and abandonment obligations for the abandoned properties. *Id.* at *1.  In contrast, the Debtors in this matter seek to abandon properties which, upon information and belief, have more than a billion dollars of associated plugging and abandonment obligations.  While $100 million is not an insignificant number, when analyzing the risk to the public it should be considered that the problem here is more than tenfold.

64.     Although the United States (through its various agencies) has the ability to seek contribution from predecessors-in-interest, some of the plugging and abandonment obligations are, upon information and belief, "orphan" obligations with no predecessor-in-interest liable for such obligations.[7]  The magnitude of these orphan obligations is unclear because Debtors fail to include any discussion of such obligations in their Disclosure Statement.  These orphan obligations are a direct risk to the public's health and safety, in violation of *Midlantic*.

65.     It is well-settled that post-petition decommissioning obligations generally constitute administrative expenses of a bankruptcy estate pursuant to section 503(b)(1)(A) of the Bankruptcy Code. *In re Am. Coastal Energy Inc.*, 399 B.R. at 809 ("The Fifth Circuit has held that an expense incurred post-petition to remedy a post-petition environmental liability is an

---

[7] "Orphan" obligations are plugging and abandonment obligations for which there are either: (1) no jointly and severally liable co-owners or predecessor owners, or (2) the jointly and severally liable co-owners or predecessor owners are not financially solvent.  Thus, orphan obligations are the responsibility of taxpayers.

administrative expense under § 503(b)(1)(A).") (citing *Tex v. Lowe* (*In re H.L.S. Energy Co., Inc.*) 151 F.3d 434, 434 (5th Cir. 1998)). At a minimum, just as in *In re ATP*, the government should maintain an administrative claim for all of the Debtors' P&A Obligations. This is especially true given the magnitude of the P&A Obligations associated with the Abandoned Properties compared to the magnitude of the abandoned properties at issue in *In re ATP*. Moreover, section 1129(a)(9) of the Bankruptcy Code requires payment of administrative claims in full as a condition to confirmation of a chapter 11 plan. If the administrative claims cannot be paid in full, which upon information and belief they cannot, then the Plan is unconfirmable.[8]

66. The Plan is also unconfirmable under *Midlantic* because it fails to provide for a transition plan for the orderly transfer of the Abandoned Properties to their co-owners or predecessor owners. In the Disclosure Statement, the Debtors state that "[i]immediately upon the occurrence of the Effective Date, certain of the Debtors' assets . . . will be abandoned . . . to entities who are predecessor owners in the chain of title or co-working interest owners." [Dkt. No. 723, p. 14]. This is not a sufficient plan to protect the public's health and safety and leaves open numerous questions. Among other things, the "plan" for transition:

(a)     does not reveal which co-working interest owner or predecessor owner will take over the operation of each property;

(b)     does not reveal whether such co-working interest owner or predecessor owner has agreed or is operationally capable to take over each property;

(c)     does not identify when and in what manner the co-working interest owner or predecessor owner will come into possession of the property;

---

[8] To the extent the Government has administrative priority with respect to the decommissioning costs, the Sureties would subrogate to those rights. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136-37 (1962) ("And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed."); *In re Tri Union Development Corp.*, 314 B.R. 611, 616 (Bankr. S.D. Tex. 2012) (holding that a surety was subrogated to the government's rights, including priority rights); *In re Coal Stripping, Inc.*, 222 B.R. 78, 82 (Bankr. W.D. Pa. 1998) (same).

(d)     does not identify the "orphan" properties for which there is no co-working interest owner or predecessor owner to which to abandon the property; and

(e)     does not reveal what will happen with the "orphan" properties, who they will be transferred to and in what manner, and whether those entities have agreed to accept the "orphan" properties.

67.     Because of the lack of a plan for transition of the Abandoned Properties, there could potentially be Abandoned Properties for which there is no entity to receive and take over the operation of the property, which circumstance directly puts the public's health and safety at risk. Debtors' dropping the keys on the table and walking away from active oil and gas operations with no plan for who is going to take over the operations, and no plan for who is going to monitor the wells to ensure that there are not unattended wells leaking oil and gas into the ocean is the precise type of risk to the public that the *Midlantic* Court was concerned about.

68.     Accordingly, because the Plan does not properly protect the public's health and safety, the Plan is patently unconfirmable pursuant to 11 U.S.C. § 1129(a)(3).

### ii. *The Plan is Unconfirmable Because the Plan Contains No Provisions for Obtaining Surety Bonds/Financial Assurance for FWE I, FWE III or Credit Bid Purchaser to Operate in the GOM*

69.     30 C.F.R. § 556.900 provides the base bonding requirements before BOEM will approve the assignment of a lease in the GOM.  It states in relevant part:

> This section establishes bond requirements for the lessee of an OCS oil and gas or sulfur lease.
>
> (a) Before BOEM will issue a new lease or approve the assignment of an existing lease to you as lessee, you or another record title owner for the lease must:
>
>> (1) Maintain with the Regional Director a $50,000 lease bond that guarantees compliance with all terms and conditions of the lease; or

(2) Maintain a $300,000 area-wide bond that guarantees compliance with all the terms and conditions of all your oil and gas and sulfur leases in the area where the lease is located; or

(3) Maintain a lease or area-wide bond in the amount required in § 556.901(a) or (b).

. . .

(g) You may pledge alternative types of security instruments instead of providing a bond if the Regional Director determines that the alternative security protects the interests of the United States to the same extent as the required bond.

(1) If you pledge an alternative type of security under this paragraph, you must monitor the security's value. If its market value falls below the level of bond coverage required under this subpart, you must pledge additional securities to raise the value of the securities pledged to the required amount.

(2) If you pledge an alternative type of security, you must include authority for the Regional Director to sell the security and use the proceeds when the Regional Director determines that you failed to satisfy any lease obligation.

70. 30 C.F.R. § 556.901(b) provides the base bonding requirements before a lessee may conduct any development or production activities on a lease. It states in relevant part:

(b) This paragraph explains what bonds you (the lessee) must provide before lease development and production activities commence.

(1)(i) You must furnish the Regional Director a $500,000 bond that guarantees compliance with all the terms and conditions of the lease by the earliest of:

(A) The date you submit a proposed development and production plan (DPP) or development operations coordination document (DOCD) for approval; or

(B) The date you submit a request for approval of the assignment of a lease on which a DPP or DOCD has been approved.

. . .

(iii) You may satisfy the bond requirement of this paragraph by providing a new bond or by increasing the amount of your existing bond.

. . .

31

71.     30 C.F.R. § 556.901(d) provides the additional bonding requirements for lessees in the GOM.  It states in relevant part:

> (d) The Regional Director may determine that additional security (i.e., security above the amounts prescribed in § 556.900(a) and paragraphs (a) and (b) of this section) is necessary to ensure compliance with the obligations under your lease, the regulations in this chapter, and the regulations in 30 CFR chapters II and XII.
>
> (1) The Regional Director's determination will be based on his/her evaluation of your ability to carry out present and future financial obligations demonstrated by:
>
> > (i) Financial capacity substantially in excess of existing and anticipated lease and other obligations, as evidenced by audited financial statements (including auditor's certificate, balance sheet, and profit and loss sheet).
> >
> > (ii) Projected financial strength significantly in excess of existing and future lease obligations based on the estimated value of your existing OCS lease production and proven reserves for future production.
> >
> > (iii) Business stability based on five years of continuous operation and production of oil and gas or sulfur in the OCS or in the onshore oil and gas industry.
> >
> > (iv) Reliability in meeting obligations based on:
> >
> > > (A) Credit rating; or
> > >
> > > (B) Trade references, including names and addresses of other lessees, drilling contractors, and suppliers with whom you have dealt; and
> >
> > (v) Record of compliance with laws, regulations, and lease terms.
>
> (e) The Regional Director will determine the amount of additional bond required to guarantee compliance.  The Regional Director will consider potential underpayment of royalty and cumulative decommissioning obligations.
>
> . . .

72.     As set forth in the regulations above, FWE I, FWE III and the Credit Bid Purchaser will all require new bonds/financial assurance be pledged to BOEM to meet their decommissioning obligations upon emergence.  The bonds/financial assurance pledged must be in an amount sufficient to "ensure compliance with obligations under [the] lease." *See* 30 C.F.R. § 556.901(d). The regulations are not permissive, and do not provide BOEM any flexibility in requiring that the bonds/financial assurance be provided.  Yet, the Debtors include nothing in their Disclosure Statement demonstrating how FWE I, FWE III and the Credit Bid Purchaser will comply with these BOEM regulations.

73.     To the extent the Debtors intend to argue that the emerging entities can rely upon the existing surety bonds to satisfy their obligations under § 556.900, that is not true.  Putting aside the fact that the surety bonds are non-assumable financial accommodations, the emerging entities cannot "pledge" surety bonds to BOEM wherein they are not the principal and in which they hold no interest.  The plain language of the regulations require that the assignee of a lease provide its own bonding/financial assurance.

74.     Moreover, this would result in an improper "substitution of principal," under the bonds, which would discharge the sureties' obligations thereunder. 74 Am. Jur. 2d Suretyship § 66 (noting that a substitution of principal not assented to by the surety discharges the surety from liability); *Trustees of Carpenters & Millwrights Health Benefit Tr. Fund v. Kipco Co.*, 567 F.2d 951, 954 (10th Cir. 1977) (noting that "generally, a surety will not be liable for the default of a new principal to whose substitution it has not consented").

75.     The Debtors-in-Possession and the Post-Effective Date Debtors are distinct legal entities. *In re Acis Capital Management, L.P.*, 603 B.R. 300, 306 (N.D. Tex. 2019) (noting that a reorganized debtor is a new entity separate and distinct from the debtor); *In re Conseco, Inc.*, 330

B.R. 673, 682-83 (Bankr. N.D. Ill. 2005) ("The reorganized debtor is in fact a new legal entity separate and distinct from the debtor even if a new corporation is not formed to carry out the plan."); *In re Lacy*, 183 B.R. 890, n.1 (Bankr. D. Colo. 1995) ("At confirmation, the 'debtor' becomes the 'reorganized debtor'. The reorganized debtor is a new legal entity."); *In re Roy Gooden Plumbing & Sewer Co., Inc.*, 156 B.R. 635, 637 (Bankr. E.D. Mo. 1993) (noting that a reorganized debtor operates as a new entity).

76.     Even if § 556.900 did not require new bonds (which it clearly does), additional bonding would be required under § 556.901 in an amount sufficient to "ensure compliance with obligations under [the] lease." There is no question that when utilizing the formula set forth in § 556.901(d), the Regional Director will find that additional bonding is required to ensure compliance with all lease obligations. Upon information and belief, the existing bonding is nowhere near sufficient to ensure compliance with the lease obligations for all of the leases being transferred to FWE I, FWE III and Credit Bid Purchaser.

77.     Therefore, the Plan is unconfirmable because the Debtors have failed to provide for funding to comply with the bonding/financial assurance requirements for FWE I, FWE III and Credit Bid Purchaser to operate upon emergence. Those entities, which are legal and distinct from Debtors-in-Possession, cannot legally operate without surety bonds or financial assurance in place sufficient to "ensure compliance with obligations under [the] lease."

### iii. The Plan is Unconfirmable Because the Surety Bonds are Non-Assumable Financial Accommodations, Unless the Surety Consents to Assumption

78.     Pursuant to section 365 of the Bankruptcy Code, the Debtors "may not assume or assign any executory contract . . ., if-- . . . (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations." 11 U.S.C. § 365(c)(2). Although the term "executory contract" is not defined in the Bankruptcy Code, the Fifth Circuit has found that a

contract is executory if "performance remains due to some extent on both sides" and if "at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." *Matter of Provider Meds, L.L.C.*, 907 F.3d 845, 851 (5th Cir. 2018).

79.     Courts have consistently held that surety bonds are "executory contracts." *See In re Wegner Farms Co.*, 49 B.R. 440, 446 (Bankr. N.D. Iowa 1985); *Matter of Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 858 (Bankr. M.D. Fla. 1990); *In re Evans Products Co.*, 91 B.R. 1003, 1005-06 (Bankr. S.D. Fla. 1988).  There are a few cases which have held that non-cancellable surety bonds are not "executory contracts,"[9] however those cases are clearly incorrect as they misunderstand the tripartite nature of surety bonds.

80.     Unlike insurance, which is a two-party relationship, surety bonds are tripartite agreements in which the named principal is the primary obligor and the surety is the secondary obligor on the bonded obligation owing to the obligee. *Nat'l Am. Ins. Co. v. Boh Bros. Const. Co., Inc.*, 700 So. 2d 1363, 1366 (Ala. 1997) (citing *Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir. 1985)); *A.J. Kellos Constr. Co. v. Balboa Ins. Co.*, 495 F. Supp. 408, 412 (S.D. Ga. 1980) (citing Restatement of Security § 82 (1941)); *Pearlman v. Reliance Ins. Co.*, 371 U.S. at 139 n. 19 ("Suretyship is not insurance."); *Meyer v. Building & Realty Service Co.*, 196 N.E. 250, 254 (Ind. 1935) ("We are clearly of the opinion that the contract here in question is a contract

---

[9] *In re Coal Stripping, Inc.*, 215 B.R. 500, 502-03 (Bankr. W.D. Pa. 1997) (holding that non-cancellable reclamation bond was not an executory contract because failure of the principal to perform did not excuse performance of the surety); *In re James River Coal Co.*, 306-0411, 2006 WL 2548456, *4 (M.D. Tenn. Aug. 31, 2006) (same); *In re Falcon V, L.L.C.*, 620 B.R. 256, 265 (Bankr. M.D. La. 2020) (holding that non-cancellable plugging and abandonment bond was not an executory contract because failure of the principal to perform did not excuse performance of the surety); *In re Texscan Corp.*, 976 F.2d 1269, 1273 (9th Cir. 1992) (holding that non-cancellable workers' compensation bond was not an executory contract because failure of the principal to pay premiums would not discharge the surety).

of suretyship and not an insurance policy."); *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501, 504 (Ky. 1998) ("A contract of suretyship is not a contract of insurance.").

81.     Under a surety bond, the principal has the primary obligation to perform.  The principal also has the duty to (a) make premium payments to the surety, (b) indemnify and exonerate the surety, and (c) post collateral to the surety on demand when there is a risk that the surety will have to perform.  The surety has the secondary obligation to perform, in the event of non-performance by the primary obligor.  The surety's obligation to perform runs in favor of the obligee, not the principal.  To obtain performance from the surety, the obligee owes its own set of performance obligations to the surety including, among other things, (i) taking actions to ensure that the risk to the surety on the underlying bonded transaction is not increased, (ii) taking actions to ensure that the principal's ability to reimburse the surety is not impaired, (iii) taking actions to ensure that the principal's ability to perform is not impaired, and (iv) taking actions to ensure that the surety's subrogation rights are preserved. *See* Restatement (Third) of Suretyship & Guaranty § 37 (1996); *United States v. Great Am. Ins. Co. of NY*, 791 F. Supp. 2d 1337, 1359-60 (Fed. Cir. 2011), *aff'd sub nom. United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320 (Fed. Cir. 2013); *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1313-14 (Fed. Cir. 2011). Failure of the obligee to comply with these obligations results in a full or partial discharge of the surety's obligations under the bond. Restatement (Third) of Suretyship & Guaranty § 37.

82.     Each of the cases in the footnote above, which found that non-cancellable surety bonds were not executory contracts because the surety's obligations were not discharged by a principal's failure to perform, were incorrectly decided because the decisions did not contemplate

that it is not the principal's non-performance that would discharge the surety, but rather the obligee's failure to perform its obligations that discharges the surety.

83.     Because all parties to the surety bonds at issue in this bankruptcy owe performance obligations, and because an obligee's failure to perform under a surety bond as set forth in the Restatement and under well-settled common law may result in a full or partial discharge of the surety's obligations under the bond, the bonds in this matter are clearly executory contracts.

84.     Under section 365(c)(2) of the Bankruptcy Code, Debtors may not assume an executory contract that is a financial accommodation. Surety bonds are financial accommodations. *Matter of Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990); *In re Wegner Farms Co.*, 49 B.R. 440, 446 (Bankr. N.D. Iowa 1985); *In re Falcon V, L.L.C.*, 620 B.R. 256, 265 (Bankr. M.D. La. 2020); *In re Thomas B. Hamilton Co., Inc.*, 969 F.2d 1013, 1019-20 (11th Cir. 1992); Michael L. Cook & Gerald F. Munitz, Bankruptcy Litigation Manual, Assumption of Executory Contracts § 6.03 (2021).

85.     The only exception to the inability of a debtor to assume executory contracts that are financial accommodations is when the counterparty to the contract consents to such assumption. *In re Charrington Worldwide Enterprises, Inc.*, 98 B.R. 65, 68 (Bankr. M.D. Fla. 1989), *aff'd sub nom. In re Charrington Worldwide Enter., Inc.*, 110 B.R. 973 (M.D. Fla. 1990) ("The legislative history of [365(c)(2)] leaves no doubt that this exception to the assumability of executory contracts was drafted for the purpose of assuring that contracts to extend credit which involves always a trust and confidence akin to personal contracts should not be assumable without the consent of the other party to the contract."); *In re TS Indus., Inc.*, 117 B.R. 682, 687-88 (Bankr. D. Utah 1990) (finding that financial accommodations contracts can be assumed with consent); *In re Prime, Inc.*, 15 B.R. 216, 218 (Bankr. W.D. Mo. 1981) (noting that although the plain language

of 365(c)(2) states that a financial accommodation contract cannot be assumed, "[t]he court is satisfied that, read in the context of the statutory powers given the trustee to operate a business, Section 365(c)(2) does permit assumption of a debt financing arrangement."); *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977, 988 (Bankr. N.D. Ga. 1980) (noting that financial accommodation contracts can be assumed with consent); *but see In re Sun Runner Marine, Inc.*, 945 F.2d 1089, 1092-94 (9th Cir. 1991) (finding that plain language of § 365(c)(2) does not permit assumption even with consent); *In re Falcon V, L.L.C.*, 620 B.R. 256, 266-67 (Bankr. M.D. La. 2020) (same).

86.     The Sureties have no obligation to continue extending surety credit to the Debtors, and they have no obligation to extend surety credit for any entity other than the principal for whom they issued bonds.

87.     Thus, because the surety bonds are non-assumable financial accommodations and because the Plan relies on the use of the surety bonds to satisfy regulatory requirements to operate, including the plugging and abandonment obligations, the Plan is patently unconfirmable.

### iv. *The Plan is Unconfirmable Because the Debtors Have Taken No Actions in Attempting to Sell the Legacy Apache Properties and therefore the Plan is Not Proposed in Good Faith*

88.     The Bankruptcy Code requires that a plan be proposed in good faith for it to be confirmed. 11 U.S.C. § 1129(a)(3). Whether a plan is proposed in good faith is to be determined "in light of the totality of the circumstances surrounding establishment of the plan." *In re Star Ambulance Serv., LLC*, 540 B.R. 251, 262 (Bankr. S.D. Tex. 2015) (citing *In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013)). "[T]o be proposed in good faith, a plan must fairly achieve a result consistent with the Bankruptcy Code." *In re Cypresswood Land Partners, I*, 409 B.R. 396, 425 (Bankr. S.D. Tex. 2009) (citing *In re Sun Country Dev., Inc.*, 764 F.2d 406,

408 (5th Cir. 1985)). "The good faith requirement . . . speaks more to the process of plan development than to the content of the plan." *In re Star Ambulance Serv.*, 540 B.R. at 262.

89.      Upon information and belief there is significant value to be extracted from the Legacy Apache Properties, and there are potential buyers in the market for these assets. Yet, Debtors have made no effort in formulating their Plan to attempt to market and sell these assets.

90.      Even if a purchaser of the assets provided no monetary consideration for the assets, and simply agreed to assume the liabilities with Trust A remaining in place for the benefit of the purchaser, that would provide significant value to the estate—and specifically the sureties, predecessor owners and Apache. The way the reorganization is currently structured provides little capital to invest in the FWE I assets, thereby greatly reducing the return on those assets. All of the free cash flow of FWE I (after operating expenses) is to be used solely to fund decommissioning. [Dkt. No. 723-1, p. 460, section (f)] ("Without the prior written consent of Apache . . . the Company shall not do . . . any of the of the following: . . . use its free cash flow (after operating expenses) for any purposes other than fulfilling its obligations to Apache under the Decommissioning Agreement and the Standby Facility Documentation . . ."). It cannot be invested back into the company. *See id.*

91.      The only way for FWE I to maximize the value of its assets is to either (1) farm out the assets to the Credit Bid Purchaser (with Apache consent), in which circumstance the Credit Bid Purchaser retains a significant amount of the profits [Dkt. No. 723-2, p. 188], or (2) use capital loaned from Apache under its Standby Credit Facility to capitalize the assets and maximize their value [Dkt. No. 723-2, p. 4].

92.      The sole beneficiaries of this scheme are Apache and the Credit Bid Purchaser. The Standby Credit Facility does not come into play until after all of the Decommissioning Security

(*i.e.*, Trust A and the surety bonds in Trust A) has been exhausted. [Dkt. No. 723-2, p.30, Section 4.02] ("The obligation of the Lender to make each Loan . . . is subject to the satisfaction of the following conditions: . . . (c) All amounts in the Trust A Account, the Letters of Credit, and the Permitted Surety Bonds have been fully exhausted or are not available to pay or reimburse Lender for Decommissioning."). All of the surety bonds running in favor of BOEM will have been exhausted at this point as well. In other words, there is no capital to invest in the FWE I Assets until the sureties are completely out of the picture and their surety bonds have been exhausted.

93. This is patently unfair to the sureties who bonded these assets in reliance on the strength of the assets, which assets will have their value maximized and depleted solely in favor of the Credit Bid Purchaser and undersecured creditor Apache. Not only does undersecured creditor Apache receive the benefit of maximizing and depleting the assets in its favor for purposes of completing the decommissioning, but it also receives a high interest rate from FWE I for all of the "loans" it makes under its Standby Credit Facility. [Dkt. No. 723-2, pp. 23-24].

94. It is clear that the parties to the Restructuring Support Agreement have creatively crafted this Plan so as to extract all of the value associated with the Legacy Apache Properties solely for their benefit—which parties include undersecured creditor Apache, with an unsecured claim that is required to be treated no better than the other unsecured creditors. The Debtors have made no attempt to market and sell the Legacy Apache Properties for this reason. Upon information and belief, the Debtors have refused to consider reasonable offers for some or all of the assets that have already been made. Nor do the provisions of the Fieldwood I LLC Agreement provide for the sale of the assets in the event a purchaser is found, which further protects the Restructuring Support Agreement parties' arrangement.

95.     This lack of marketing efforts to sell the Legacy Apache Properties, and the lack of a provision in the Fieldwood I LLC Agreement permitting the sale of the Legacy Apache Properties does not comport with the good faith requirement of section 1129(a)(3) of the Bankruptcy Code and thus the Plan is unconfirmable.

### v.   *The Plan is Unconfirmable Because Apache is Being Treated Differently than Similarly Situated Creditors*

96.     For the same reasons discussed in the prior section, as well as elsewhere in this Objection, Apache is treated differently under the Plan than the other unsecured creditors in violation of 11 U.S.C. § 1123(a)(4) ("Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."); *In re Energy Future Holdings Corp.*, 648 Fed. Appx. 277, 283 (3d Cir. 2016) ("Section 1123(a)(4) embodies the principle that all similarly situated creditors in bankruptcy are entitled to equal treatment."); *In re CSC Indus., Inc.*, 232 F.3d 505, 508 (6th Cir. 2000) ("[A] fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally.").

97.     Whether Apache is viewed as a wholly unsecured creditor, or an undersecured creditor does not affect the analysis as even with an undersecured creditor, the unsecured portion of the creditor's claim must be treated no differently than other unsecured creditors' claims. § 12:7. Summary—Similar treatment of claims and interests, Chapter 11 Reorganizations § 12:7 (noting that section 1123(a)(4) "applies to claims, not to creditors . . . Thus, in the case of an undersecured creditor holding both a secured claim and an unsecured deficiency claim, section 1123(a)(4)'s mandate must be applied to each of those claims independently") (citing H.R. Rep. 95-595, p. 407 (1985)); *In re Friedman*, 4:07-BK-02135-JMM, 2012 WL 5409194, * 3 (Bankr. D. Ariz. Nov. 5,

2012) (holding that an undersecured creditor's deficiency claim was treated no differently than the other unsecured creditors' claims and therefore the treatment under the plan was proper); *see also* 11 U.S.C. § 506(a)(1).

98.     As stated previously, Apache's "loan" under the Standby Credit Facility is not a "loan" at all.  It is a thinly veiled attempt by Apache to use funds that it already owes as a jointly and severally liable predecessor owner and inject them into the FWE I Assets after the surety bonds and letters of credit are exhausted, and capitalize those assets and extract significant value from those assets for its sole benefit to reduce the unsecured portion of its claim.  Not only does it get to inject those assets with capital for its own benefit, but it is also entitled to a significant interest rate for extending its "loan." [Dkt. No. 723-2, p. 23, section 2.07].  And if FWE I defaults on the "loan" then Apache gets to foreclose on the FWE I Assets via the security interest it obtains in connection with its "loan." [Dkt. No. 723-2, p. 27, section 3.12].

99.     The entire arrangement between Apache and the Debtors, which was crafted behind closed doors without any of the other unsecured creditors' involvement, is a sham and is incredibly prejudicial to other unsecured creditors who are receiving no such favorable treatment, nor were they given the opportunity to participate in such favorable treatment.

100.     Thus, the Plan is unconfirmable because Apache's unsecured claim is being treated dissimilarly from similarly situated creditors in violation of 11 U.S.C. § 1123(a)(4).

C.     **THE VOTING PROCEDURES SHOULD NOT BE APPROVED BECAUSE THEY PURPORT TO GIVE THE SURETIES AND PREDECESSOR OWNERS ONLY $1 IN VOTING RIGHTS**

101.     In addition to the foregoing objections, the Sureties object to the proposed voting procedures which purport to provide numerous predecessor owners and sureties, whose claims are unliquidated and contingent and whose claims include billions of dollars in decommissioning obligations with only $1.00 in voting rights. [Dkt. No. 724, p. 19].  Such a procedure is manifestly

unfair to the predecessor owners and sureties whose claims dwarf those claims of other unsecured creditors. This Court should order that the voting procedures be reformulated to permit the sureties and predecessor owners the ability to vote the true value of their claims. *See* 11 U.S.C. § 502(c); *In re Texans CUSO Ins. Grp., LLC*, 426 B.R. 194, 204 (Bankr. N.D. Tex. 2010) (noting that a court may estimate a contingent, unliquidated claim for voting purposes); *In re Cont'l Airlines Corp.*, 60 B.R. 903, 905 (Bankr. S.D. Tex. 1986) (same); *In re Cantu*, 08-70260, 2009 WL 1374261, *1-2 (Bankr. S.D. Tex. May 15, 2009) (same).

## IV.     <u>JOINDER OF OTHER SURETIES' OBJECTIONS</u>

102.     Upon information and belief, several other sureties that bonded certain obligations of the Debtors will also be filing objections to the Disclosure Statement. Those objections are expected to be substantially similar in nature to this Objection. To the extent the other sureties' objections do not expressly conflict with the objections contained herein, the Sureties hereby join and incorporate by reference all objections and arguments made by the other sureties in objecting to the Disclosure Statement.

## V.     <u>RESERVATION OF RIGHTS</u>

103.     The Sureties reserve all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Objection, to raise further and other objections, to introduce evidence prior to or at any hearing regarding the Disclosure Statement in the event the Sureties' objections are not resolved prior to such hearing, to seek to introduce documents or other relevant information in support of the positions set forth in this Objection, and to raise any and all objections to confirmation of the Plan.

## VI.    CONCLUSION

104.    For the reasons stated herein, the Court should reject the Disclosure Statement for failing to provide creditors with adequate information, or in the alternative, rule that the Disclosure Statement provides for a patently unconfirmable Plan on which votes should not be solicited and, in each instance, grant such other relief as may be just and proper.  Additionally, the Court should order that the voting procedures be reformulated to permit the sureties and predecessor owners the ability to vote the true value of their claims instead of the $1.00 currently allotted to them.

Dated: March 12, 2021

Respectfully submitted,

HUSCH BLACKWELL LLP

By:  _/s/ Randall Rios_____
    Randall A. Rios
    State Bar No. 16935865
    Timothy A. Million
    State Bar No. 24051055
    600 Travis, Suite 2350
    Houston, Texas 77002
    Tel:  713-525-6226
    Fax:  713-647-6884
    Email:  randy.rios@huschblackwell.com
    Email:  tim.million@huschblackwell.com

**CO-COUNSEL FOR ASPEN AMERICAN INSURANCE COMPANY, BERKLEY INSURANCE COMPANY, EVEREST REINSURANCE COMPANY AND SIRIUS AMERICA INSURANCE COMPANY**

-AND-

Armen Shahinian, Esq. (admitted *pro hac vice*)
(ashahinian@csglaw.com)
Scott A. Zuber, Esq. (admitted *pro hac vice*)
(szuber@csglaw.com)
Darren Grzyb, Esq. (admitted *pro hac vice*)
(dgrzyb@csglaw.com)
Jase A. Brown, Esq. (admitted *pro hac vice*)
(jbrown@csglaw.com)

Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange New Jersey 07052

**ATTORNEYS FOR ASPEN AMERICAN
INSURANCE COMPANY, BERKLEY
INSURANCE COMPANY, EVEREST
REINSURANCE COMPANY AND SIRIUS
AMERICA INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**

I certify that on March 12, 2021, a copy of this document was served by electronic service

on all counsel of record via the Court's CM/ECF system.

/s/ Randall Rios
Randall A. Ríos

# EXHIBIT A

| Surety | Bond Number | Penal Sum | Principal | Obligee | Bonded Obligation |
|--------|-------------|-----------|-----------|---------|-------------------|
| Aspen | SU46474 | $10,000,000 | Fieldwood Energy, LLC | Noble Energy, Inc. | All assets under 2018 Purchase and Sale Agmt except for the Neptune assets set forth in Exhibit E to Agmt. |
| Aspen | SU46455 | $9,197,079 | Fieldwood Energy, LLC | BOEM | OCS Mineral Lessee's and Operator's Supplemental Bond iro covering OCS-G 02115 Eugene Island Area Block 330 (All of Block 330m, Eugene Island Area, South Addition, OCS Leasing Map, Louisiana Map No. LA4A) |
| Sirius | 7000000301 | $15,000,000 | Fieldwood Energy, LLC | Marathon Oil Co. | FWE acquired 31.4% of Noble Energy's interest in Gunflint field in February 2018.  Subsequent to that, FWE acquired an additional 18% interest in Gunflint field from Marathon Oil Company.  This bond covers the Marathon transaction and associated P&A obligations. |
| Sirius | 7000000302 | $27,500,000 | Fieldwood Energy, LLC | Marathon Oil Co. | This bond covers FWE's acquiring of Marathon's 50% interest in the Troika field and associated P&A obligations. |
| Sirius | 7000000407 | $503,684 | Fieldwood Energy, LLC | BOEM | This bond covers P&A obligations associated with "ROW OCS G28788 Ship Shoal Block 168 (PSN 20050) a 6 5/8 gas right of way pipeline"  Associated Lease per Debtors is G05646. |
| Sirius | 7000000409 | $10,000 | Fieldwood Energy, LLC | Iberia, Parish of, Public Works Dept. | This bond covers transportation of heavy equipment on Parish roads.  This appears to somehow be related to P&A obligations. |
| Sirius | 7000000410 | $1,000,000 | Fieldwood Energy, LLC | Williams Oil Gathering, LLC, Williams Field Services-Gulf Coast Co. LLC and Williams Mobil Bay Producer Services LLC | Performance Bond related to Gunflint Oil Gathering Agreement, Gunflint Gas Gathering Agreement and the Gunflint Gas Processing Agreement, all dated December 10, 2013 |
| Sirius | 7000000414 | $450,000 | Bandon Oil & Gas, LP | BOEM | This bond is for P&A obligations associated with "OCS-G04081 - All of Block A-550, High Island Area, South Additiona, as shown on OCS Texas Leasing Map, TX7B." - G04081 |
| Sirius | 7000000425 | $267,500 | Fieldwood Energy, LLC | BOEM | This is an appeal bond for Civil Penalty Case G-2018-017 for South Timbalier 67.  This is related to P&A obligations.  Associated lease is G04000. |

| Surety | Bond Number | Penal Sum | Principal | Obligee | Bonded Obligation |
|--------|-------------|-----------|-----------|---------|-------------------|
| Sirius | 7000000437 | $1,745,185 | Fieldwood Energy Offshore, LLC | BOEM and Marathon Oil Co. | Bond covers P&A obligations associated with "OCS ROW No. OCS-G 29417 - Described as a 200' wide & approx 18.29 mi (96') long corridor associated w/8" Pipeline Segment No. (PSN) 20155. Purpose is to maintain/operate PSN 20155 & transport bulk oil from Midline PLET A-2 in Block 156 thru Blocks 112, 111, 110 and 66 to Platform A in Block 65, all in Green Canyon Area." |
| Everest | ES00001441 | $25,000,000 | Fieldwood Energy, LLC | Apache Corp. | Bond covers P&A obligations associated with 2013 Apache transaction |
| Everest | ES00001442 | $506,661 | Fieldwood Energy, LLC | BOEM | Bond covers P&A obligations associated with OCS Mineral lessee's bond OCS -G07890 all of block 203 Viosca Knoll |
| Everest | ES00001443 | $501,661 | Fieldwood Energy, LLC | BOEM | Bond covers P&A obligations associated with OCS Mineral lessee's bond OCS -G04921 all of block 204 Viosca Knoll |
| Everest | ES00001444 | $2,040,000 | GOM Shelf LLC | BOEM | Bond covers P&A obligations associated with OCS Mineral lessee's bond OCS -00593 all of block 198 Ship Shoal |
| Everest | ES00001445 | $2,450,000 | Fieldwood Energy, LLC | BOEM | Bond covers "OCS-G00972 - All of Block 265, East Cameron Area, South Addition, as shown on OCS Louisiana Leasing Map No, LA2A" |
| Everest | ES00001446 | $3,072,500 | Fieldwood Energy, LLC | BOEM | Bond covers P&A obligations associated with OCS -G00974 all of block 278 East Cameron Area South Addition |
| Everest | ES00001447 | $12,000,000 | Fieldwood Energy, LLC | Gulfstar One LLC | Performance Bond related to Gunflint Producing Handling Agreement and Gunflint Gas Export Agreement, all dated 12-10-13 |
| Berkley | 0179846 | $1,565,000 | Fieldwood Energy, LLC | BOEM | Platform 'A' at South Timbalier Block 206 - OCS G30291 --- Underwriter says that G30291 is a right-of-use and easement that is tied to G05612. Confirmed by Debtors. |
| Berkley | 0179849 | $2,086,466.17 | Fieldwood Energy, LLC | BOEM | Mississippi Canyon Block 108 - Lease number G09777 |
| Berkley | 0179850 | $3,260,000 | Fieldwood Energy, LLC | BOEM | Matagorda Island Block 623 - Lease number G03088 |
| Berkley | 0179852 | $5,600,000 | Fieldwood Energy Offshore, LLC | BOEM | All of Ship Shoal Area Block 207 - Lease G01523 |
| Berkley | 0179853 | $4,795,000 | Fieldwood Energy Offshore, LLC | BOEM | All of West Delta Area Block 94 - Lease number OCS-00839 |

| Surety | Bond Number | Penal Sum | Principal | Obligee | Bonded Obligation |
|--------|-------------|-----------|-----------|---------|-------------------|
| Berkley | 0179854 | $3,353,501 | Fieldwood Energy, LLC | BOEM | All of Block 87, South Pass Area, South and East Addition, as shown on OCS Louisiana Leasing Map No. LA9A. - Lease number G077990 |
| Berkley | 0179856 | $40,000,000 | Fieldwood Energy, LLC | Noble Energy, Inc. | All assets under 2018 Purchase and Sale Agmt except for the Neptune assets set forth in Exhibit E to Agmt. |
| Berkley | 0179865 | $42,704 | GOM Shelf LLC | BOEM | Appeal Bond - Civil Penalty Case No. G-2017-013 (Lease No. OCS-G 00133, Grand Isle 47, Platform AP) |
| Berkley | 0179867 | $21,440 | Fieldwood Energy, LLC | State of Louisiana - Dept of Nat. Rsrcs. - Injection and Mining Division | P&A Bond, Grand Chenier Separation Station Salt Water Disposal Well No. 001, Serial #971081 and Grand Chenier Separation Station Salt Water Disposal Well, No. 002, Serial #971088, Grand Cheniere, South Field, Cameron Parish, Louisiana |
| Berkley | 0179868 | $13,249,500 | Fieldwood Energy Offshore, LLC | BOEM | OCS Mineral Lessee's and Operator's Supplemental Bond covering OCS-G 12209, Block 200, Green Canyon Area |
| Berkley | 0206223 | $50,000 | Fieldwood Energy, LLC | Bureau of Customs and Border | Importing Goods |

# EXHIBIT B



## Executed Bond Report

### Aspen American Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** SU46474 |
| --- | --- | --- |
| | | **Date:** 4/5/2018 |

**Principal:** Fieldwood Energy LLC

**Obligee Name and Address:**
Noble Energy, Inc.
Filed with: Noble Energy, Inc.
1001 Noble Energy Way
Houston,  TX  77070-

**Power of Attorney No.**

| **Effective Date:**<br>From     4/5/2018  To        4/5/2019 | **Bond Amount:**<br>$10,000,000.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$125,000.00 |
| --- | --- | --- | --- |
| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$37,500.00 | **State Surchg-Fee:**<br>$0.00 |

**Description:**
Private Performance Bond

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of bond

**Comments:**
Approved as per Lucas Lomax

Thursday, April 05, 2018

Alliant Insurance Services, Inc. □ 5444 Westheimer □ Suite 900 □ Houston, TX 77056
PHONE (832) 485-4000 □ FAX (832) 485-4001 □ www.alliantinsurance.com

BOND NO. SU46474

## EXHIBIT H-2

### FORM OF NOBLE PERFORMANCE BOND

### PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the "*Principal*") and Aspen American Insurance Company, with its principal office at 175 Capital Boulevard, Suite 300, Rocky Hill, CT 06067, (the "*Surety*"), are held and firmly bound unto Noble Energy, Inc., with its principal office at 1001 Noble Energy Way, Houston, Texas 77070, (the "*Obligee*"), in the penal sum of Ten Million and No/100 Dollars (**$10,000,000**) lawful money of the United States of America (the "*Penal Sum*") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated February 14, 2018, (the "*Purchase Agreement*"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "*Bond*"), together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

#5621032.2

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or

**BOND NO. SU46474**

entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the "***Defaulted P&A Obligations***"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the "***Final Cost Statement***") of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the "***Aggregate Cost Amount***"), exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the "***Surety Payment Amount***"), the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS,**

ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, **"INDEMNIFIED PARTIES"**) FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to

cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Noble Energy, Inc.
1001 Noble Energy Way
Houston, Texas 77070
Attention: VP of Business Development

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: John H. Smith, Vice President

Aspen American Insurance Company
840 W. Sam Houston Parkway North
Suite 420
Houston, TX 77024
Attention: Lucas Lomas

*[signature pages follow]*

**IN WITNESS WHEREOF**, the above bound parties have executed this instrument to be effective on April 5, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESSES:**                                  **PRINCIPAL:**

_____                      FIELDWOOD ENERGY LLC

_____

      **PRINT NAME**

                                       By:_____

                                       Name: _____

                                       Title: _____

_____

_____

      **PRINT NAME**


**WITNESSES:**                                  **OBLIGEE:**

_____                      NOBLE ENERGY, INC.

_____

      **PRINT NAME**

                                       By:_____

                                       Name: _____

                                       Title: _____

_____

_____

      **PRINT NAME**


**WITNESSES:**                                  **PRINCIPAL:**

_____                      ASPEN AMERICAN INSURANCE COMPANY

Laura L. Kneitz

      **PRINT NAME**

                                       By:_____

                                       Name: Teresa D. Kelly

                                       Title: Attorney-in-Fact

_____

Melissa Haddick

      **PRINT NAME**



# Executed Bond Report

## Aspen American Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** SU46455 |
|---|---|---|
| | | **Date:** 6/29/2017 |

**Principal:**  Fieldwood Energy LLC

**Obligee Name and Address:**  United States of America
Filed with: U.S. Department of the Interior, Bureau of Ocean Energy Management - Gulf of Mexico OCS Region
1201 Elmwood Park Blvd.
New Orleans,  LA  70123-2394

**Power of Attorney No.**

| **Effective Date:**<br>From      6/29/2017  To      6/29/2018 | **Bond Amount:**<br>$9,197,079.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$80,474.00 |
|---|---|---|---|
| **Rate:**<br>1.25% | **Commission %**<br>0.000% | **Commission Amount**<br>$0.00 | **State Surchg-Fee:**<br>$0.00 |

**Description:**

OCS Mineral Lessee's and Operator's Supplemental Bond iro covering OCS-G 02115 Eugene Island Area Block 330 (All of Block 330m, Eugene Island Area, South Addition, OCS Leasing Map, Louisiana Map No. LA4A)

**Renewal Type:**

Continuous Until Cancelled/Released

**Cancellation Provision:**

Obligee Written Release to be obtained by Principal

**Additional Attachments:**

copy of bond

**Comments:**

Approved as per Lucas Lomax's 6/27/2017 email.

Thursday, June 29, 2017

**Cover Page**

# OUTER CONTINENTAL SHELF (OCS)
## MINERAL LESSEE'S OR OPERATOR'S
## SUPPLEMENTAL BOND

## Form BOEM-2028A

**This form dated March 2014 supersedes all previous versions of form BOEM-2028A**

**Paperwork Reduction Act of 1995 (PRA) Statement:** The PRA (44 U.S.C. 3501 *et seq.*) requires us to inform you that BOEM collects this information to hold the surety liable for the obligations and liability of the Principal (lessee or operator). Responses are mandatory. No proprietary information is collected. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Comments regarding the burden estimate or any other aspect of this form should be directed to the Information Collection Clearance Officer, Bureau of Ocean Energy Management, 381 Elden Street, Herndon, VA 20170.

# U.S. DEPARTMENT OF THE INTERIOR
## Bureau of Ocean Energy Management

Bond No. SU46455

OCS Lease/RUE/ROW No. OCS-G02115

Bond Type Supplemental

Amount $9,197,079.00

## OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

The **Surety** is the entity Guaranteeing Performance.

Name of Surety: Aspen American Insurance Company

Mailing Address: 175 Capital Blvd, Suite 300

Rocky Hill, CT 06067

If a Corporation, Incorporated in the State of: Texas ; County or Parish of: Hartford

☑ Check here if Surety is certified by U.S. Treasury as an acceptable surety on Federal Bonds and listed in the current U.S. Treasury Circular No. 570.

---

The **Principal** is the Lessee or Designated Operator for Whom the Bond is Issued.

Name of Principal: Fieldwood Energy LLC

Mailing Address: 2000 W Sam Houston Pkwy S, Suite 1200

Houston, TX 77042

Schedule A, the lease/RUE/ROW covered by this bond, is composed of: (add legal description)

☑ The following lease/RUE/ROW: All of Block 330, Eugene Island Area, South Addition, OCS Leasing Map, Louisiana Map No. LA4A

---

In addition to the Obligations of the Principal during the period of liability of this bond, the Surety also accepts the following Obligations: (Check one)

☐ No Obligations other than the Obligations of the Principal during the period of liability of this bond.

☑ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond with the following exceptions or limitations (use an attached rider).

| Definitions | A **Principal** includes an entity holding an interest in the oil & gas lease in one or more of the following ways: (1) as an approved record title owner of all or a portion of the lease, (2) as an approved operating rights owner of all or a portion of the lease, or (3) as a designated operator or designated agent in all or a portion of the lease. |
|---|---|
| For the purposes of this document: | A **Lessee** includes an approved record title owner of all or a portion of the lease or an approved operating rights owner of all or a portion of the lease. |
| | An **Obligation** includes any obligation arising from any regulations of the Department of the Interior or any Instrument issued, maintained, or approved under the OCS Lands Act (43 U.S.C. 1331 et seq.). |
| | An **Instrument** includes individually or collectively any lease, operating agreement, designation of operator or agent, storage agreement, compensatory royalty agreement, transfer of operating rights, permit, license, or easement, whereunder the Principal has the right, privilege, or license to conduct operations on the OCS. |
| | A **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency. |

**By signing below, the Principal verifies that the information above is correct and agrees to the following:**

The Principal as agent on behalf of all lessees, operating rights owners, and operators will fulfill all Obligations for the entire leasehold and to the same extent as though the Principal were the sole lessee for the lease/RUE/ROW in Schedule A.

**By signing below, the Surety verifies that the information above is correct and agrees to the following:**

1. The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Bureau of Ocean Energy Management (BOEM), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations.

2. The Surety will be responsible for all Obligations of the Principal in existence at the time this document becomes effective and all Obligations that accrue after that date and until all Obligations are met or until the Regional Director terminates the period of liability of this bond.

3. If the Regional Director terminates the period of liability of this bond, the Surety will remain responsible for Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the bond in favor of the Surety.

4. If this bond is cancelled, the Regional Director may reinstate this bond as if no cancellation had occurred if any payment of any Obligation of the Principal(s) is rescinded or must be restored pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has paid its financial Obligations or performed the other

---

Obligations of the lease in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the instrument.

5.  The Surety waives any right of notice of this bond taking effect and agrees that this bond will take effect upon delivery to BOEM.
6.  The Surety's Obligations will remain in full force and effect, even if:
    (a)  Any person assigns all or part of any interest in an Instrument covered by this document.
    (b)  Any person modifies an Instrument or Obligation under an Instrument in any manner including modifications that result from a commitment to a unit, cooperative, communitization, or storage agreement; suspension of operations or production; suspension or changes in rental, minimum royalty, or royalties; modification of regulations or interpretations of regulations; creation or modification of compensatory royalty agreements or payments; or creation of any mortgage, pledge, or other grant of security interest in the Instruments.
    (c)  Any person, event, or condition terminates any Instrument covered by this bond, whether the termination is by operation of law or otherwise.
    (d)  BOEM takes or fails to take any action in enforcing, as against any party to the Instrument, the payment of rentals or royalties or the performance of any other covenant, condition or agreement of the lease, or giving notice of or making demand with respect to such nonperformance.
    (e)  The Surety suffers any loss by reason of any law limiting, qualifying, or discharging the Principal's Obligation.
7.  The Surety agrees to be bound under this bond as to the interests in any Instrument retained by the Principal when BOEM approves the transfer of any or all of the Instruments or interests in the Instruments.
8.  In the event of any default under a lease, the Surety must provide payment of all of the cost of the Obligations of the Principal upon demand by BOEM.
9.  If BOEM decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not BOEM joins the lessees or any other party.
10. In the event there is more than one Surety for the Principal's performance of the Obligations, as to any Instrument, the Surety's Obligation and liability under this bond is on a "solidary" or "joint and several" basis along with other guarantors or sureties.
11. The Surety agrees to give prompt notice to BOEM and the Principal of any action filed alleging the insolvency or bankruptcy of the Surety or the Principal, or alleging any violation that would result in suspension or revocation of the Surety's charter or license to do business.
12. The Surety's Obligation and liabilities under this Bond are binding upon the Surety's successors and assigns. Nothing in this document permits assignment of the Surety's Obligation without the written consent of BOEM.
13. The Surety hereby waives any defenses to liability on this bond based on an unauthorized Principal signature.

| | |
|---|---|
| Aspen American Insurance Company | Fieldwood Energy LLC |
| Name of Surety | Name of Principal |
| | |
| Signature of Person Executing for Surety | Signature of Person Executing for Principal |
| Teresa D. Kelly Attorney-in-Fact | John H. Smith, Senior Vice President-Land & Business Development |
| Name and Title (typed or printed) | Name and Title (typed or printed) |
| 5444 Westheimer, Suite 900 | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Business Address | Business Address |
| Houston, TX 77056 | Houston, TX 77042 |
| Business Address | Business Address |

Signed on this ___29th___ day of ___June___, 20 _17_, in the State of ___Texas___, in the presence of:

| | |
|---|---|
| Signature of Witness | Signature of Witness |
| Laura L. Kneitz | |
| Name (typed or printed) | Name (typed or printed) |
| 5444 Westheimer, Suite 900 | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Address | Address |
| Houston, TX 77056 | Houston, TX 77042 |
| Address | Address |

*Note:* The person executing for the Surety must attach a corporate resolution and power of attorney stating his or her authority to undertake this Obligation, pursuant to the acts of the corporate board of directors and the laws of the State of incorporation. The corporation executing this bond as Surety and the Principal, if a corporation, must affix their corporate seals.

**BOEM-2028A (March 2014)**
Previous Editions are Obsolete.

**Page 3 of 3**

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

### FORM OF MARATHON PERFORMANCE BOND

**PERFORMANCE BOND**           **Number 7000000301**

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the *"Principal"*) and Sirius America Insurance Company with an office at 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033 (the *"Surety")*, are held and firmly bound unto Marathon Oil company with its principal office at 5555 San Felipe, Houston, Texas 77056, (the *"Obligee")*, in the penal sum of Fifteen Million and No/100 Dollars **($15,000,000)** lawful money of the United States of America (the *"Penal Sum")* for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below)

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated June 20, 2018, (the *"Purchase Agreement")*, which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond")*, together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided forherein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement. FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"),* and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement")* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount"),* exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount"),* the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE**

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE ORCONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.**

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Marathon Oil Company
5555 San Felipe
Houston, Texas 77056
Attention:_____

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: _____

Sirius America Insurance Company
180 Glastonbury Blvd, Suite 403
Glastonbury, CT 06033
Attention: Surety Claims Department

*(signature pages follow]*

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be Effective on <u>July 2, 2018</u>, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.

By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

MARATHON OIL COMPANY

By:_____
Name:_____
Title:_____
Date:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY

By:
Name:     Gina A. Rodriquez
Title:     Attorney-In-Fact
Date:     July 2, 2018



Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## Exhibit "A"

**Assets**

| Field | Asset Name | Asset | Acquired Interest | Bond Allocation |
|---|---|---|---|---|
| *Troika Assets* | | | | |
| Troika | TA-1 | Well | 50% | 8,100,000 |
| Troika | TA-2 | Well | 50% | 8,100,000 |
| Troika | TA-3 | Well | 50% | 8,100,000 |
| Troika | TA-4 | Well | 50% | 8,100,000 |
| Troika | TA-5 | Well | 50% | 8,100,000 |
| Troika | TA-6 | Well | 50% | 12,000,000 |
| Troika | Subsea Facilities | Subsea Infrastructure | 50% | 1,000,000 |
| Troika | 11393 | Pipeline | 50% | 750,000 |
| Troika | 11396 | Pipeline | 50% | 750,000 |
| **Total Troika** | | | | **55,000,000** |
| | | | | |
| *Gunflint Assets* | | | | |
| Gunflint | 2 | Well | 18% | 5,500,000 |
| Gunflint | 4 | Well | 18% | 5,500,000 |
| Gunflint | Subsea Facilities | Subsea Infrastructure | 18% | 1,000,000 |
| Gunflint | 19362 | Pipeline | 18% | 250,000 |
| Gunflint | 19374 | Pipeline | 18% | 250,000 |
| Gunflint | 19478 | Pipeline | 18% | 250,000 |
| Gunflint | 19479 | Pipeline | 18% | 250,000 |
| Gunflint | 19154/19365 | Pipeline | 18% | 1,000,000 |
| Gunflint | 19155/19432 | Pipeline | 18% | 1,000,000 |
| **Total Gunflint** | | | | **15,000,000** |
| | | | | |
| **Total** | | | | **70,000,000** |

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

### Exhibit "B"

To be attached and form part of Bond No. _____ issued by . _____ , (as

Surety), effective _____, 2018

In the amount of           $(_____)

On behalf of:       Fieldwood Energy LLC (as Principal)
In favor of         Marathon Oil Company,(as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**
_____and NO/100 Dollars($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the _____day of _____20_____

Signed, sealed and dated the _____day of _____20_____

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____

 SURETY:

SIRIUS AMERICA INSURANCE COMPANY
By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Acknowledged By: Marathon Oil Company**

By:_____

Name:_____

Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit I — Form of Assignment of Record Title Interest (BOEM Form 0150)**



To obtain information or make a complaint:

You may call the Surety's toll free telephone number for information or to make a complaint at 1-844-312-4357.

You may contact the Texas Department of Insurance to obtain information on companies, coverage, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://wvvw.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES**: Should you have a dispute concerning your premium or about a claim you should contact the Surety first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY**: This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANCE**

Para obtener información o presentar una queja:

Usted puede llamar al número de teléfono gratis de para información o para someter una queja al 1-844-312-4357

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas en:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS**: Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Surety primero. Si la disputa no se resuelve, puede comunicarse con el Departamento de Seguros de Tex (TDI).

**UNA ESTEAVISOA SU POLIZA**: Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

TX Rider

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



## Sirius
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800001-403001

Certificate No. **000244**

KNOW ALL PERSONS BY THESE PRESENTS: That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Terri L. Morrison, Gina A. Rodriguez, Mary Ann Garcia, Gloria P. Mouton, Marissa Shepherd, Tannis Mattson, Laura E. Sudduth

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

IN WITNESS WHEREOF, the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this ___ day of July , 20 8



By: _____

D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 2nd day of July , 20 8 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022.

Patricia A. McAndrew
Patricia McAndrew , Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
*MY COMMISSION EXPIRES NOV. 30, 2022*

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this ___7+h___ day of December, 2017

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil
Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## FORM OF MARATHON PERFORMANCE BOND

### PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston
Pkwy South, Suite 1200, Houston, Texas 77042, (the *"Principal"*) and Sirius America
Insurance Company with an office at 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033 and
Liberty Mutual Insurance Company with an office at 175 Berkeley Street, Boston, MA 02116
(collectively, the *"Surety"),* are held and firmly bound unto Marathon Oil company with its principal
office at 5555 San Felipe, Houston, Texas 77056, (the *"Obligee"),* in the penal sum of Fifty
Five Million and No/100 Dollars **($55,000,000)** lawful money of the United States of America
(the *"Penal Sum")* for the payment of which sum the Principal and the Surety bind
themselves, their successors and assigns, jointly, severally, and in solido, firmly by these
presents. All capitalized terms used but not defined herein shall have the meanings ascribed
to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as
defined, the undersigned sureties shall be liable in Principal's place; provided, however that
the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Sirius America Insurance Company | $27,500,000.00 | Bond No.7000000302 |
| Liberty Mutual Insurance Company | $27,500,000.00 | Bond No. 022220669 |

It is expressly provided that each obligation of the Surety shall be several and not joint
with one another and both joint and several with Principal only, and no surety shall be
responsible in an amount greater than its respective maximum amount of liability set forth
above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and
Sale Agreement dated June 20, 2018, (the *"Purchase Agreement"),* which Purchase
Agreement is by reference made a part hereof and which provides for the sale and assignment
from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts,
properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property
defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement
and identified on Exhibit A to this Performance Bond (the *"Bond"),* together with, among other
rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated
therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force
and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this
Bond have been truly and faithfully performed and discharged, subject to the terms and
conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with
the closing of the Purchase Agreement, a performance bond in the form hereof executed by
Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities
to transact the business of indemnity and suretyship in the state where it executed this Bond, and
represents that it is qualified to be surety and guarantor on bonds and undertakings, which
certificate has not been revoked; and

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"),* and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement")* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount"),* exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount"),* the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then **SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR *ASSERTED* BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.**

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Marathon Oil Company
5555 San Felipe
Houston, Texas 77056
Attention:_____

Fieldwood Energy LLC
2000 W. Sam Houston Parkway Suite 1200
Houston, Texas 77042
Attention: _____

Sirius America Insurance Company
180 Glastonbury Blvd, Suite 403
Glastonbury, CT 06033
Attention: Surety Claims Department

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

*(signature pages follow]*

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be Effective on <u>July 2, 2018</u>, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

MARATHON OIL COMPANY

By:_____
Name:_____
Title:_____
Date:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H – Form of Surety Bond

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY

By

Name:	Gina A. Rodriguez
Title:	Attorney-In-Fact
Date:	July 2, 2018

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY
By

Name:	Gina A. Rodriguez
Title:	Attorney-In-Fact
Date:	July 2, 2018

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit "A"**

**Assets**

| Field | Asset Name | Asset | Acquired Interest | Bond Allocation |
|---|---|---|---|---|
| *Troika Assets* | | | | |
| Troika | TA-1 | Well | 50% | 8,100,000 |
| Troika | TA-2 | Well | 50% | 8,100,000 |
| Troika | TA-3 | Well | 50% | 8,100,000 |
| Troika | TA-4 | Well | 50% | 8,100,000 |
| Troika | TA-5 | Well | 50% | 8,100,000 |
| Troika | TA-6 | Well | 50% | 12,000,000 |
| Troika | Subsea Facilities | Subsea Infrastructure | 50% | 1,000,000 |
| Troika | 11393 | Pipeline | 50% | 750,000 |
| Troika | 11396 | Pipeline | 50% | 750,000 |
| **Total Troika** | | | | **55,000,000** |
| | | | | |
| *Gunflint Assets* | | | | |
| Gunflint | 2 | Well | 18% | 5,500,000 |
| Gunflint | 4 | Well | 18% | 5,500,000 |
| Gunflint | Subsea Facilities | Subsea Infrastructure | 18% | 1,000,000 |
| Gunflint | 19362 | Pipeline | 18% | 250,000 |
| Gunflint | 19374 | Pipeline | 18% | 250,000 |
| Gunflint | 19478 | Pipeline | 18% | 250,000 |
| Gunflint | 19479 | Pipeline | 18% | 250,000 |
| Gunflint | 19154/19365 | Pipeline | 18% | 1,000,000 |
| Gunflint | 19155/19432 | Pipeline | 18% | 1,000,000 |
| **Total Gunflint** | | | | **15,000,000** |
| | | | | |
| **Total** | | | | **70,000,000** |

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## Exhibit "B"

To be attached and form part of Bond No._____ issued by ._____ , (as

Surety), effective _____, 2018

In the amount of          $(_____)

On behalf of:        Fieldwood Energy LLC (as Principal)
In favor of          Marathon Oil Company,(as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

The Bond amount shall be adjusted as follows:

This Bond amount shall be decreased by $_____

Total Revised Bond Amount is Now:

_____and NO/100 Dollars($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the _____day of _____20_____

Signed, sealed and dated the _____day of _____20_____

PRINCIPAL:

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____

SURETY:

SIRIUS AMERICA INSURANCE COMPANY
By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Acknowledged By: Marathon Oil Company**

By:_____

Name:_____

Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit I — Form of Assignment of Record Title Interest (BOEM Form 0150)**

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800001-403001          Certificate No. ___000243___

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

**Terri L. Morrison, Gina A. Rodriguez, Mary Ann Garcia, Gloria P. Mouton, Marissa Shepherd, Tannis Mattson, Laura E. Sudduth**

of the City of _Houston_____, State of _Texas_____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this _2nd_ day of _July_____, 20_18_.



By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this _2nd_ day of _July_____, 20_18_ before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission expires the _30_ day of _November_, 20_22_.

_Patricia A. McAndrew_
Patricia McAndrew_____, Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this 7th day of December, 2017

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8117804

Liberty Mutual Insurance Company

The Ohio Casualty Insurance Company    West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Orlando Aguirre; Mario Arzamendi; Mary Ann Garcia; Tannis Mattson; Terri L. Morrison; Gloria Mouton; Sandra Parker; Gina A. Rodriguez; Marissa Shepherd; Laura E. Sudduth

all of the city of Houston , state of TX each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 4th day of June , 2018 .



The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA       ss
COUNTY OF MONTGOMERY

On this 4th day of June , 2018 , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



**COMMONWEALTH OF PENNSYLVANIA**
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 2nd day of July , 20 18 .



By: _____
Renee C. Llewellyn, Assistant Secretary

To confirm the validity of this Power of Attorney call
1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

Not valid for mortgage, note, loan, letter of credit,
currency rate, interest rate or residual value guarantees.

LMS_12873_022017

22 of 150


**Sirius**
America

To obtain information or make a complaint:

You may call the Surety's toll free telephone number for information or to make a complaint at 1-844-312-4357.

You may contact the Texas Department of Insurance to obtain information on companies, coverage, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://wvvw.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the Surety first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANCE**

Para obtener información o presentar una queja:

Usted puede llamar al número de teléfono gratis de para información o para someter una queja al 1-844-312-4357

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas en:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Surety primero. Si la disputa no se resuelve, puede comunicarse con el Departamento de Seguros de Tex (TDI).

**UNA ESTEAVISOA SU POLIZA:** Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

TX Rider



# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Premium or Claim Disputes**

Should you have a dispute concerning a premium, you should contact the agent first. If you have a dispute concerning a claim, you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**Attach This Notice To Your Policy:**

This notice is for information only and does not become a part or condition of the attached document.



# NOTIFICACION IMPORTANTE

PARA OBTENER INFORMACION O REALIZAR UNA QUEJA:

Usted puede escribir la notificación y dirigirla a Liberty Mutual Surety en la siguiente dirección:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

Usted puede contactar al Departamento de Seguros de Texas para obtener informacion acerca de las compañías, coberturas, derechos o quejas:

> 1-800-252-3439

Usted puede escribir al Departamento de Seguros de Texas a la siguiente dirección:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Disputas acerca de primas o reclamos**

En caso de que usted quiera elevar una disputa concerniente al tema de primas, por favor contacte en primer lugar a su agente. Si el tema de la disputa es relativo a un reclamo, por favor contacte a la compañía de seguros en primer término. Si usted considera que la disputa no es apropiadamente resuelta en estas instancias, entonces usted puede contactar al Departamento de Seguros de Texas..

**Adjunte esta notificacion a su póliza:**

Esta notificación es a los solos fines de su información y la misma no forma parte o condiciona de manera alguna el documento adjunto.



# Executed Bond Report

## Sirius America Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston, TX 77042 | **Bond No:** 7000000407<br><br>**Date:** 12/13/2018 |
|---|---|---|

**Principal:** Fieldwood Energy LLC

**Obligee Name and Address:** United States of America
Filed with: U.S. Department of the Interior, Bureau of Ocean Energy Management - Gulf of Mexico OCS Region
1201 Elmwood Park Blvd.
New Orleans, LA 70123-2394

**Power of Attorney No.**
000354

| **Effective Date:**<br>From 12/13/2018 To 12/13/2019 | **Bond Amount:**<br>$503,684.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$6,296.00 |
|---|---|---|---|

| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$1,888.80 | **State Surchg-Fee:**<br>$0.00 |
|---|---|---|---|

**Description:**
OCS Mineral  Lessee's Operator's Supplemental Bond iro ROW G28788 - Ship Shoal Block 168 (PSN 20050) a 6 5/8 inch gas right-of-way pipeline

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of bond and underlying BOEM application and bond request

**Comments:**
Approved as per Sarah Stanfield's 12/12/2018 email.

Alliant Insurance Services, Inc. □ 5444 Westheimer □ Suite 900 □ Houston, TX 77056
PHONE (832) 485-4000 □ FAX (832) 485-4001 □ www.alliantinsurance.com

**U.S. Department of the Interior**
**Bureau of Ocean Energy Management**

OMB Control No.: 1010-0006
Expiration Date: 6/30/2019

Cover Page
# OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

## Form BOEM-2028A

**This form dated June 2016 supersedes all previous versions of form BOEM-2028A**

**Paperwork Reduction Act of 1995 (PRA) Statement:** The PRA (44 U.S.C. 3501 *et seq.*) requires us to inform you that BOEM collects this information to hold the surety liable for the obligations and liability of the Principal (lessee or operator). Responses are mandatory. No proprietary information is collected. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Comments regarding the burden estimate or any other aspect of this form should be directed to the Information Collection Clearance Officer, Bureau of Ocean Energy Management, 45600 Woodland Road, Sterling, VA 20166.

## U.S. DEPARTMENT OF THE INTERIOR
### Bureau of Ocean Energy Management

Bond No. 7000000407                                    OCS Lease/RUE/ROW No. ROW G28788

Bond Type Supplemental                                 Amount $503,684.00

## OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

The **Surety** is the entity Guaranteeing Performance.

Name of Surety: Sirius America Insurance Company

Mailing Address: 140 Broadway - 32nd Floor

New York, NY 10005-1108

If a Corporation, Incorporated in the State of: New York      ; County or Parish of: Kings County

☐ Check here if Surety is certified by U.S. Treasury as an acceptable surety on Federal Bonds and listed in the current U.S. Treasury Circular No. 570.

The **Principal** is the Lessee or Designated Operator for Whom the Bond is Issued.

Name of Principal: Fieldwood Energy LLC

Mailing Address: 200 W. Sam Houston Pkwy S., Suite 1200

Houston, TX 77042

Schedule A, the lease/RUE/ROW covered by this bond, is composed of: (add legal description)

The following lease/RUE/ROW: ROW G28788 - Ship Shoal Block 168 (PSN 20050) a 6 5/8 inch gas Right-of-Way Pipeline

In addition to the Obligations of the Principal during the period of liability of this bond, the Surety also accepts the following Obligations: (Check one)

☑ No Obligations other than the Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond with the following exceptions or limitations (use an attached rider).

| **Definitions** | A **Principal** includes an entity holding an interest in the oil & gas lease in one or more of the following ways: (1) as an approved record title owner of all or a portion of the lease, (2) as an approved operating rights owner of all or a portion of the lease, or (3) as a designated operator or designated agent in all or a portion of the lease. |
|---|---|
| For the purposes of this document: | A **Lessee** includes an approved record title owner of all or a portion of the lease or an approved operating rights owner of all or a portion of the lease. |
| | An **Obligation** includes any obligation arising from any regulations of the Department of the Interior or any Instrument issued, maintained, or approved under the OCS Lands Act (43 U.S.C. 1331 et seq.). |
| | An **Instrument** includes individually or collectively any lease, operating agreement, designation of operator or agent, storage agreement, compensatory royalty agreement, transfer of operating rights, permit, license, or easement, whereunder the Principal has the right, privilege, or license to conduct operations on the OCS. |
| | A **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency. |

**By signing below, the Principal verifies that the information above is correct and agrees to the following:**
The Principal as agent on behalf of all lessees, operating rights owners, and operators will fulfill all Obligations for the entire leasehold and to the same extent as though the Principal were the sole lessee for the lease/RUE/ROW in Schedule A.

**By signing below, the Surety verifies that the information above is correct and agrees to the following:**
1. The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Bureau of Ocean Energy Management (BOEM), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations.
2. The Surety will be responsible for all Obligations of the Principal in existence at the time this document becomes effective and all Obligations that accrue after that date and until all Obligations are met or until the Regional Director terminates the period of liability of this bond.
3. If the Regional Director terminates the period of liability of this bond, the Surety will remain responsible for Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the bond in favor of the Surety.
4. If this bond is cancelled, the Regional Director may reinstate this bond as if no cancellation had occurred if any payment of any Obligation of the Principal(s) is rescinded or must be restored pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has paid its financial Obligations or performed the other

Obligations of the lease in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the instrument.

5. The Surety waives any right of notice of this bond taking effect and agrees that this bond will take effect upon delivery to BOEM.

6. The Surety's Obligations will remain in full force and effect, even if:

(a) Any person assigns all or part of any interest in an Instrument covered by this document.

(b) Any person modifies an Instrument or Obligation under an Instrument in any manner including modifications that result from a commitment to a unit, cooperative, communitization, or storage agreement; suspension of operations or production; suspension or changes in rental, minimum royalty, or royalties; modification of regulations or interpretations of regulations; creation or modification of compensatory royalty agreements or payments; or creation of any mortgage, pledge, or other grant of security interest in the Instruments.

(c) Any person, event, or condition terminates any Instrument covered by this bond, whether the termination is by operation of law or otherwise.

(d) BOEM takes or fails to take any action in enforcing, as against any party to the Instrument, the payment of rentals or royalties or the performance of any other covenant, condition or agreement of the lease, or giving notice of or making demand with respect to such nonperformance.

(e) The Surety suffers any loss by reason of any law limiting, qualifying, or discharging the Principal's Obligation.

7. The Surety agrees to be bound under this bond as to the interests in any Instrument retained by the Principal when BOEM approves the transfer of any or all of the Instruments or interests in the Instruments.

8. In the event of any default under a lease, the Surety must provide payment of all of the cost of the Obligations of the Principal upon demand by BOEM.

9. If BOEM decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not BOEM joins the lessees or any other party.

10. In the event there is more than one Surety for the Principal's performance of the Obligations, as to any Instrument, the Surety's Obligation and liability under this bond is on a "solidary" or "joint and several" basis along with other guarantors or sureties.

11. The Surety agrees to give prompt notice to BOEM and the Principal of any action filed alleging the insolvency or bankruptcy of the Surety or the Principal, or alleging any violation that would result in suspension or revocation of the Surety's charter or license to do business.

12. The Surety's Obligation and liabilities under this Bond are binding upon the Surety's successors and assigns. Nothing in this document permits assignment of the Surety's Obligation without the written consent of BOEM.

13. The Surety hereby waives any defenses to liability on this bond based on an unauthorized Principal signature.

| Sirius America Insurance Company | Fieldwood Energy LLC |
|---|---|
| Name of Surety | Name of Principal |
| | |
| Signature of Person Executing for Surety | Signature of Person Executing for Principal |
| Teresa D. Kelly, Attorney-in-Fact | John H. Smith, Senior Vice President-Land & Business Development |
| Name and Title (typed or printed) | Name and Title (typed or printed) |
| 140 Broadway - 32nd Floor | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Business Address | Business Address |
| New York, NY 10005-1108 | Houston, TX 77042 |
| Business Address | Business Address |

Signed on this 13th day of December, 20 18, in the State of Texas, in the presence of:

| | |
|---|---|
| Signature of Witness | Signature of Witness |
| Laura L. Kneitz | Mark R. Mozell |
| Name (typed or printed) | Name (typed or printed) |
| 5444 Westheimer, Suite 900 | 2000 W Sam Houston Pkwy S., Suite 1200 |
| Address | Address |
| Houston, TX 77056 | Houston, TX 77042 |
| Address | Address |

*Note:* The person executing for the Surety must attach a corporate resolution and power of attorney stating his or her authority to undertake this Obligation, pursuant to the acts of the corporate board of directors and the laws of the State of incorporation. The corporation executing this bond as Surety and the Principal, if a corporation, must affix their corporate seals.

**BOEM-2028A (June 2016)**
Previous Editions are Obsolete.

# EXHIBIT B-1



Sirius America Insurance Company
180 Glastonbury Blvd., Suite 403
Glastonbury, Connecticut 06033

**LICENSE AND PERMIT
BOND**

**Bond No.** 7000000409

KNOW ALL MEN BY THESE PRESENTS, That we Fieldwood Energy LLC
as Principal, (hereinafter called "Principal"), and Sirius America Insurance Company, a New York insurance
company, as Surety, (hereinafter called "Surety"), are held and firmly bound unto
Iberia Parish, Louisiana _____, as Obligee, in the full and just sum of
Ten Thousand and No/100------------ Dollars ( $ 10,000.00 _____ ) to be
paid to the said Obligee for which payment, well and truly to be made, we bind ourselves, our heirs, executors,
administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS the Principal has been granted a license or permit for
Transportation of Heavy Equipment on Parish Roads _____ by Obligee.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall faithfully perform
the duties and in all things comply with the laws and ordinances, including all amendments thereto, pertaining
to the license or permit applied for, then this obligation shall be void, otherwise to remain in full force and
effect.

PROVIDED, that the Surety may cancel bond at any time during the said term by giving to the Obligee a written
notice of its desire so to cancel and at the expiration of thirty (30) days from the receipt of such notice by the
Obligee the surety shall be completely released as to all liability thereafter accruing. If this provision shall be
held void, this entire bond shall be void.

IN WITNESS WHEREOF, the above bound Principal and the above bound Surety have hereunto set their hands
and seals on the 20th day of March , 20 19 .

Fieldwood Energy LLC

By: _____
John H. Smith
Senior Vice President - Land & Business Development

Sirius America Insurance Company

By: _____

Laura L. Kneitz ,Attorney -in-Fact

L&P 0119

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800007-403001

Certificate No. 000356

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Dan W. Burton, Craig C. Payne, Teresa D. Kelly, Melissa Haddick, Laura L. Kneitz, Rheagyn L. White

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 14th day of March , 20 18

By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 14th day of March , 20 18 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022

Patricia A. McAndrew , Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

144350.ai

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seal of the Company this 20th day of March , 20 19 .

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.



# Executed Bond Report

## Sirius America Insurance Company

| Account Name and Address: | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,   TX  77042 | Bond No: **7000000410** |
|---|---|---|
| | | Date: 3/21/2019 |

**Principal:** Fieldwood Energy LLC

**Obligee Name and Address:**
Williams Oil Gathering LLC, Williams Field Services - Gulf Coast Company LLC and Williams Mobil Bay Producer Services LLC
Filed with: Williams Companies, Inc.
Attn: Tim Neuman
One Williams Center MD 50
Tulsa,   OK  74172-

**Power of Attorney No.**
000357

| **Effective Date:**<br>From      3/21/2019 To:      3/21/2020 | **Bond Amount:**<br>$2,000,000.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$17,500.00 |
|---|---|---|---|
| **Rate:**<br>0.88% | **Commission %**<br>0.000% | **Commission Amount:**<br>$0.00 | **State Surchg-Fee:**<br>$0.00 |

**Description:**
Performance Bond related to Gunflint Oil Gathering Agreement, Gunflint Gas Gathering Agreement and the Gunflint Gas Processing Agreement, all dated December 10, 2013

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of bond and underlying agreements

**Comments:**
Approved as per Sarah Heineman's 3/13/2019 email. Premium is to be billed net of commission.

**Replacing:**      0179863

Friday, March 22, 2019

THIS BOND REPLACES AND SUPERSEDES BERKLEY INSURANCE COMPANY BOND NO. 0179863 EFFECTIVE MARCH 21, 2019.

## PERFORMANCE BOND

Bond No. 7000000410

KNOW ALL MEN BY THESE PRESENTS, that we, **Fieldwood Energy LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042**, as Principal, (hereinafter called the "Principal"), and **Sirius America Insurance Company, 180 Glastonbury Blvd., Suite 403, Glastonbury, CT 06033**, (hereinafter called the "Surety"), are held firmly bound unto **Williams Oil Gathering LLC, Williams Field Services – Gulf Coast Company, L.P. Company LLC and Williams Mobil Bay Producer Services LLC, c/o Tim Neuman, Williams Companies, Inc., One Williams Center MD 50, Tulsa, OK 74172** as Obligee, (hereinafter called the "Obligee"), in the maximum penal sum of **Two Million and NO/100 ($2,000,000.00) Dollars**, good and lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, administrators, executors, successors, assigns, jointly and severally, firmly by these presents.

WHEREAS, the above bound Principal has entered into certain written contracts with the above mentioned Obligee described as: **Gunflint Oil Gathering Agreement, Gunflint Gas Gathering Agreement and Gunflint Gas Processing Agreement, all dated December 10, 2013** (the "Agreements"), contracts are hereby referred to and made a part hereof as fully and to the same extent as if copied at length herein.

WHEREAS, the Obligee has agreed to accept a bond guaranteeing the performance of said Contracts.

NOW, THEREFORE, the condition of this obligation is such that, if the Principal shall indemnify the Obligee for any and all loss that the Obligee may sustain by reason of the Principal's failure to comply with the terms and conditions of said Contracts, then this obligation shall be null and void, otherwise it shall remain in full force and effect.

**PROVIDED HOWEVER,** that this Bond is executed by the Surety and accepted by the Obligee subject to the following expressed conditions:

- This Bond is for the term beginning **March 21, 2019** and expiring **March 21, 2020**. This bond will renew annually hereafter unless surety sends notice of non-renewal to Obligee at least ninety (90) days prior to the expiration date provided herein. It is understood and agreed that the Obligee may recover the full amount of the Bond (less any previous amounts paid to Obligee under the Bond) if the Surety cancels or non-renews the Bond and, within twenty (20) days prior to the effective date of cancellation, the Obligee has not received collateral acceptable to it to replace the Bond.

- No claim, action, suit or proceeding, except as herein set forth, shall be had or maintained against the Surety on this Bond unless same be brought or instituted and process served upon the Surety within six months following the expiration of the original term of this Bond, or extended term as provided herein.

- In the event the Principal fails to make any payments due to the Obligee under the Agreements which would constitute the basis of a default thereunder, within Ten (10) business days of Surety's receipt of a demand for payment under this Bond (hereinafter called "Demand"), Surety shall pay to the Obligee the amount of such Demand. The Surety shall cause to be paid all payments that are open or past due up to the penal amount, and in so doing cure any Default under the Agreements and shall not be bound by any forfeiture or acceleration provision of the Agreements to the contrary, but rather shall be responsible for the continuation of timely payments as provided in the Agreements as though there had been no Default. The Obligee may present one or more Demands at any time in its sole discretion, provided however, Surety shall not be obligated to pay an aggregate amount in excess of the penal sum of the Bond. The bond penalty shall remain fixed during the term of the bond regardless of the number of years it remains outstanding unless amended by Surety through the issuance of a rider.

- If Surety receives any claim in conformity with the terms and conditions of this Bond, Surety will make payment to Obligee, without inquiring whether Obligee has a right, as between Obligee and Principal, to make such claim and without recognizing any claims of Principal. On or within the timeframe noted herein, payment will be effected by Surety (using its own funds) by wire or electronic funds transfer in immediately available funds to such account as Obligee may designate to Surety.

In the event of conflict or inconsistency between the provisions of this Bond and the provisions of the above Agreements, the provisions of this Bond shall control. The Obligee's acceptance of this Bond and reliance upon it as security constitutes its acknowledgement and agreement as to the explicit terms stated herein under which it is offered and issued by the Surety.

The Surety represents and warrants that it has the full power to enter into and perform its obligations under this Bond and has taken all proper limited liability company and other action to duly and validly authorize entering into this Bond and to perform its obligations hereunder. This Bond has been duly executed and delivered on behalf of the Surety and constitutes the legal, valid and binding obligation of the Surety, enforceable in accordance with its terms. The Principal has the full power to enter into and perform its obligations under this Bond and has taken all proper limited liability company and other action to duly and validly authorize entering into this Bond and to perform it obligations hereunder. This Bond has been duly executed and delivered on behalf of the Principal and constitutes the legal, valid and binding obligation of the Principal, enforceable in accordance with its terms.

The Surety represents and warrants that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked

This Bond shall be governed by, enforced in accordance with, and interpreted under, the laws of the State of New York without reference to conflicts of laws principal.

All notices, demands and correspondence with respect to this bond shall be in writing and addressed to:

The Surety at: Sirius America Insurance, Company, 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033

The Principal at: Fieldwood Energy LLC, 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042

The Obligee at: c/o Tim Neuman, Williams Companies, Inc., One Williams Center MD 50, Tulsa, OK 74172

SIGNED, SEALED AND DATED this 21st day of March , 2019.

Principal: **Fieldwood Energy LLC**

By:_____

Title: John H. Smith, Senior Vice President – Land & Business Development

Surety: **Sirius America Insurance Company**

By:_____
Teresa D. Kelly, Attorney-In-Fact

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



## Sirius
**America**
**Insurance Company**

## POWER OF ATTORNEY

Attorney-In-Fact No. 1800007-403001

Certificate No. 000358

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Dan W. Burton, Craig C. Payne, Teresa D. Kelly, Melissa Haddick, Laura L. Kneitz, Rheagyn L. White

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 14th day of March _____, 20 18



By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 14th day of March _____, 20 18 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022

_____, Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this 21st day of March, 2019

By: _Robert P. Kuehn_
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.



Sirius America Insurance Company
New York, NY 10005

**BOND RIDER NO. 1**

To be attached to and form part of Bond Number <u>7000000410</u> issued on behalf of <u>Fieldwood Energy LLC</u>, as Principal, and in favor of <u>Williams Oil Gathering LLC, Williams Field Services – Gulf Coast Company LLC and Williams Mobil Bay Producer Services LLC</u>, as Obligee.

It is agreed that the Surety hereby gives its consent to change:

Bond Amount is DECREASED:

FROM: Two Million and No/100 ($2,000,000.00)

TO: One Million and No/100 ($1,000,000.00)

This Rider shall become effective as of <u>March 21, 2020</u>.

PROVIDED, however, that the liability of the Surety under the attached bond as changed by this rider shall not be cumulative, and in no event shall Surety's liability be greater than $<u>1,000,000.00</u>.

<u>Fieldwood Energy LLC</u>

By: _____

Sirius America Insurance Company

By: _____

<u>Teresa D. Kelly</u>, Attorney-in-Fact

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In-Fact No. 1800007-403001                Certificate No. 001525

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Dan W. Burton, Craig C. Payne, Teresa D. Kelly, Melissa Haddick, Laura L. Kneitz, Megan Sivley

of the City of Houston                , State of Texas                , its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 6th day of June , 20 19 .

By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 6th day of June , 20 19 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.

Patricia A. McAndrew

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

147933.al

POA Page 1

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PAGE 1 IS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seal of the Company this 21st day of February, 2020

By: _____
Robert P. Kuehn
Secretary

**001525**

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to Certificate No. _____ and other details in this Power of Attorney as well as the details of the bond to which the power is attached.



## Executed Bond Report

### Sirius America Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** **7000000414** |
| --- | --- | --- |
| | | **Date:** 4/15/2019 |

**Principal:** Brandon Oil and Gas, LP

**Obligee Name and Address:**
United States of America
Filed with: U.S. Department of the Interior, Bureau of Ocean Energy Management - Gulf of Mexico OCS Region
1201 Elmwood Park Blvd.
New Orleans,  LA  70123-2394

**Power of Attorney No.**
00362

| **Effective Date:**<br>From     4/15/2019  To        4/15/2020 | **Bond Amount:**<br>$450,000.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$5,625.00 |
| --- | --- | --- | --- |
| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$1,687.50 | **State Surchg-Fee:**<br>$0.00 |

**Description:**
OCS Mineral  Lessee's Operator's Supplemental Bond iro OCS-G04081 - All of Block A-550,  High Island Area, South Additiona, as shown on OCS Texas Leasing Map, TX7B.

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of Bond and client request docs.

**Comments:**
Approved as per Sarah Heineman's 3/13/2019 email.

**Issued to Replace Bond No.**
N/A

---

Monday, April 15, 2019

Page 1 of 1

**U.S. Department of the Interior**
**Bureau of Ocean Energy Management**

**OMB Control No.: 1010-0006**
**Expiration Date: 6/30/2019**

Cover Page
# OUTER CONTINENTAL SHELF (OCS)
# MINERAL LESSEE'S OR OPERATOR'S
# SUPPLEMENTAL BOND

## Form BOEM-2028A

**This form dated June 2016 supersedes all previous versions of form BOEM-2028A**

**Paperwork Reduction Act of 1995 (PRA) Statement:** The PRA (44 U.S.C. 3501 *et seq.*) requires us to inform you that BOEM collects this information to hold the surety liable for the obligations and liability of the Principal (lessee or operator). Responses are mandatory. No proprietary information is collected. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Comments regarding the burden estimate or any other aspect of this form should be directed to the Information Collection Clearance Officer, Bureau of Ocean Energy Management, 45600 Woodland Road, Sterling, VA 20166.

# U.S. DEPARTMENT OF THE INTERIOR
## Bureau of Ocean Energy Management

Bond No. 7000000414      OCS Lease/RUE/ROW No. OCS-G04081

Bond Type Supplemental      Amount $450,000.00

## OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

The **Surety** is the entity Guaranteeing Performance.

Name of Surety: Sirius America Insurance Company

Mailing Address: 140 Broadway - 32nd Floor

New York, NY 10005-1108

If a Corporation, Incorporated in the State of: New York ; County or Parish of: Kings County

☑ Check here if Surety is certified by U.S. Treasury as an acceptable surety on Federal Bonds and listed in the current U.S. Treasury Circular No. 570.

The **Principal** is the Lessee or Designated Operator for Whom the Bond is Issued.

Name of Principal: Brandon Oil and Gas, LP

Mailing Address: 2000 W. Sam Houston Pkwy S., Suite 1200

Houston, TX 77042

Schedule A, the lease/RUE/ROW covered by this bond, is composed of: (add legal description)

The following lease/RUE/ROW: All of Block A-550, High Island Area, South Addition, as shown on OCS Texas Leasing Map, TX7B.

In addition to the Obligations of the Principal during the period of liability of this bond, the Surety also accepts the following Obligations: (Check one)

☑ No Obligations other than the Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond with the following exceptions or limitations (use an attached rider).

| **Definitions**<br><br>For the purposes of this document: | A **Principal** includes an entity holding an interest in the oil & gas lease in one or more of the following ways: (1) as an approved record title owner of all or a portion of the lease, (2) as an approved operating rights owner of all or a portion of the lease, or (3) as a designated operator or designated agent in all or a portion of the lease.<br>A **Lessee** includes an approved record title owner of all or a portion of the lease or an approved operating rights owner of all or a portion of the lease.<br>An **Obligation** includes any obligation arising from any regulations of the Department of the Interior or any Instrument issued, maintained, or approved under the OCS Lands Act (43 U.S.C. 1331 et seq.).<br>An **Instrument** includes individually or collectively any lease, operating agreement, designation of operator or agent, storage agreement, compensatory royalty agreement, transfer of operating rights, permit, license, or easement, whereunder the Principal has the right, privilege, or license to conduct operations on the OCS.<br>A **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency. |
|---|---|

By signing below, the Principal verifies that the information above is correct and agrees to the following:
The Principal as agent on behalf of all lessees, operating rights owners, and operators will fulfill all Obligations for the entire leasehold and to the same extent as though the Principal were the sole lessee for the lease/RUE/ROW in Schedule A.

By signing below, the Surety verifies that the information above is correct and agrees to the following:

1. The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Bureau of Ocean Energy Management (BOEM), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations.

2. The Surety will be responsible for all Obligations of the Principal in existence at the time this document becomes effective and all Obligations that accrue after that date and until all Obligations are met or until the Regional Director terminates the period of liability of this bond.

3. If the Regional Director terminates the period of liability of this bond, the Surety will remain responsible for Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the bond in favor of the Surety.

4. If this bond is cancelled, the Regional Director may reinstate this bond as if no cancellation had occurred if any payment of any Obligation of the Principal(s) is rescinded or must be restored pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has paid its financial Obligations or performed the other

Obligations of the lease in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the instrument.

5. The Surety waives any right of notice of this bond taking effect and agrees that this bond will take effect upon delivery to BOEM.
6. The Surety's Obligations will remain in full force and effect, even if:
   (a) Any person assigns all or part of any interest in an Instrument covered by this document.
   (b) Any person modifies an Instrument or Obligation under an Instrument in any manner including modifications that result from a commitment to a unit, cooperative, communitization, or storage agreement; suspension of operations or production; suspension or changes in rental, minimum royalty, or royalties; modification of regulations or interpretations of regulations; creation or modification of compensatory royalty agreements or payments; or creation of any mortgage, pledge, or other grant of security interest in the Instruments.
   (c) Any person, event, or condition terminates any Instrument covered by this bond, whether the termination is by operation of law or otherwise.
   (d) BOEM takes or fails to take any action in enforcing, as against any party to the Instrument, the payment of rentals or royalties or the performance of any other covenant, condition or agreement of the lease, or giving notice of or making demand with respect to such nonperformance.
   (e) The Surety suffers any loss by reason of any law limiting, qualifying, or discharging the Principal's Obligation.
7. The Surety agrees to be bound under this bond as to the interests in any Instrument retained by the Principal when BOEM approves the transfer of any or all of the Instruments or interests in the Instruments.
8. In the event of any default under a lease, the Surety must provide payment of all of the cost of the Obligations of the Principal upon demand by BOEM.
9. If BOEM decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not BOEM joins the lessees or any other party.
10. In the event there is more than one Surety for the Principal's performance of the Obligations, as to any Instrument, the Surety's Obligation and liability under this bond is on a "solidary" or "joint and several" basis along with other guarantors or sureties.
11. The Surety agrees to give prompt notice to BOEM and the Principal of any action filed alleging the insolvency or bankruptcy of the Surety or the Principal, or alleging any violation that would result in suspension or revocation of the Surety's charter or license to do business.
12. The Surety's Obligation and liabilities under this Bond are binding upon the Surety's successors and assigns. Nothing in this document permits assignment of the Surety's Obligation without the written consent of BOEM.
13. The Surety hereby waives any defenses to liability on this bond based on an unauthorized Principal signature.

| | |
|---|---|
| Sirius America Insurance Company | Brandon Oil and Gas, LP |
| Name of Surety | Name of Principal |
| *[signature]* | |
| Signature of Person Executing for Surety | Signature of Person Executing for Principal |
| Teresa D. Kelly, Attorney-in-Fact | John H. Smith, Vice President |
| Name and Title (typed or printed) | Name and Title (typed or printed) |
| 140 Broadway - 32nd Floor | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Business Address | Business Address |
| New York, NY 10005-1108 | Houston, TX 77042 |
| Business Address | Business Address |

Signed on this 15th day of April , 20 19 , in the State of Texas , in the presence of:

| | |
|---|---|
| *[signature]* | |
| Signature of Witness | Signature of Witness |
| Laura L. Kneitz | Mark R. Mozell |
| Name (typed or printed) | Name (typed or printed) |
| 5444 Westheimer, Suite 800 | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Address | Address |
| Houston, TX 77056 | Houston, TX 77042 |
| Address | Address |

*Note:* The person executing for the Surety must attach a corporate resolution and power of attorney stating his or her authority to undertake this Obligation, pursuant to the acts of the corporate board of directors and the laws of the State of incorporation. The corporation executing this bond as Surety and the Principal, if a corporation, must affix their corporate seals.

**BOEM-2028A (June 2016)**                                                                 **PAGE 3 OF 3**
Previous Editions are Obsolete.

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

# POWER OF ATTORNEY

Attorney-In Fact No. 1800007-403001

Certificate No. 000362

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Dan W. Burton, Craig C. Payne, Teresa D. Kelly, Melissa Haddick, Laura L. Kneitz, Rheagyn L. White

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 14th day of March , 20 18

By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 14th day of March , 20 18 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022

_____, Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
*MY COMMISSION EXPIRES NOV. 30, 2022*

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

RESOLVED, that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

FURTHER RESOLVED, that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

FURTHER RESOLVED, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

FURTHER RESOLVED, that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

FURTHER RESOLVED, that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this 5ᵗʰ day of April , 20 19



By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.



# Executed Bond Report

## Sirius America Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** **7000000425** |
|---|---|---|
| | | **Date:** 5/9/2019 |

**Principal:**    Fieldwood Energy LLC

**Obligee Name and Address:**    United States of America
Filed with: U.S. Department of the Interior, Bureau of Ocean Energy Management - Gulf of Mexico OCS Region
Attn: Kathleen Lee, Program Analyst, Leasing and Financial Responsibility Section, Office of Leasing and Plans
1201 Elmwood Park Blvd.
New Orleans,  LA  70123-2394

**Power of Attorney No.**
000374

| **Effective Date:**<br>From      5/9/2019 To:      5/9/2020 | **Bond Amount:**<br>$267,500.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$3,344.00 |
|---|---|---|---|
| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$1,003.20 | **State Surchg-Fee:**<br>$0.00 |

**Description:**

Appeal Bond - Civil Penalty Case No. G-2018-017 (Lease No. OCS -00020, South Timbalier 67,  (Enterprise 264 Rig, Well No. 006 ST3)

**Renewal Type:**

Continuous Until Cancelled/Released

**Cancellation Provision:**

Obligee Written Release to be obtained by Principal

**Additional Attachments:**

Bond Copy.

**Comments:**

Approved by Sarah Heineman via email 5-8-19.

**Replacing:**    N/A

---

Thursday, May 09, 2019

**U.S. Department of the Interior**
**Bureau of Ocean Energy Management**

**OMB Control No.: 1010-0006**
**Expiration Date: 6/30/2019**

Cover Page
# OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

## Form BOEM-2028A

**This form dated June 2016 supersedes all previous versions of form BOEM-2028A**

**Paperwork Reduction Act of 1995 (PRA) Statement:** The PRA (44 U.S.C. 3501 *et seq.*) requires us to inform you that BOEM collects this information to hold the surety liable for the obligations and liability of the Principal (lessee or operator). Responses are mandatory. No proprietary information is collected. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB Control Number. Public reporting burden for this form is estimated to average 15 minutes per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the form. Comments regarding the burden estimate or any other aspect of this form should be directed to the Information Collection Clearance Officer, Bureau of Ocean Energy Management, 45600 Woodland Road, Sterling, VA 20166.

## U.S. DEPARTMENT OF THE INTERIOR
### Bureau of Ocean Energy Management

Bond No. 7000000425

OCS Lease/RUE/ROW No. G-2018-017

Bond Type Appeal

Amount $267,500.00

## OUTER CONTINENTAL SHELF (OCS) MINERAL LESSEE'S OR OPERATOR'S SUPPLEMENTAL BOND

The **Surety** is the entity Guaranteeing Performance.

Name of Surety: Sirius America Insurance Company

Mailing Address: 140 Broadway - 32nd Floor

New York, NY 10005-1108

If a Corporation, Incorporated in the State of: New York ; County or Parish of: Kings

☑ Check here if Surety is certified by U.S. Treasury as an acceptable surety on Federal Bonds and listed in the current U.S. Treasury Circular No. 570.

The **Principal** is the Lessee or Designated Operator for Whom the Bond is Issued.

Name of Principal: Fieldwood Energy LLC

Mailing Address: 2000 W. Sam Houston Pkwy S., Suite 1200

Houston, TX 77042

Schedule A, the lease/RUE/ROW covered by this bond, is composed of: (add legal description)

The following lease/RUE/ROW: Civil Penalty Case No. G-2018-017

In addition to the Obligations of the Principal during the period of liability of this bond, the Surety also accepts the following Obligations: (Check one)

☑ No Obligations other than the Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond.

☐ All Obligations of all previous Sureties or guarantors even if the Obligations are not Obligations of the Principal during the period of liability of this bond with the following exceptions or limitations (use an attached rider).

| Definitions | A **Principal** includes an entity holding an interest in the oil & gas lease in one or more of the following ways: (1) as an approved record title owner of all or a portion of the lease, (2) as an approved operating rights owner of all or a portion of the lease, or (3) as a designated operator or designated agent in all or a portion of the lease. |
|---|---|
| For the purposes of this document: | A **Lessee** includes an approved record title owner of all or a portion of the lease or an approved operating rights owner of all or a portion of the lease. |
| | An **Obligation** includes any obligation arising from any regulations of the Department of the Interior or any Instrument issued, maintained, or approved under the OCS Lands Act (43 U.S.C. 1331 et seq.). |
| | An **Instrument** includes individually or collectively any lease, operating agreement, designation of operator or agent, storage agreement, compensatory royalty agreement, transfer of operating rights, permit, license, or easement, whereunder the Principal has the right, privilege, or license to conduct operations on the OCS. |
| | A **Person** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency. |

By signing below, the **Principal** verifies that the information above is correct and agrees to the following:
The Principal as agent on behalf of all lessees, operating rights owners, and operators will fulfill all Obligations for the entire leasehold and to the same extent as though the Principal were the sole lessee for the lease/RUE/ROW in Schedule A.

By signing below, the **Surety** verifies that the information above is correct and agrees to the following:

1. The Surety does hereby absolutely and unconditionally bind itself to the United States of America acting through and by the Bureau of Ocean Energy Management (BOEM), or such other official designated by the Secretary of the Interior for this purpose, for the payment of all of the cost of the plugging and abandonment Obligations.

2. The Surety will be responsible for all Obligations of the Principal in existence at the time this document becomes effective and all Obligations that accrue after that date and until all Obligations are met or until the Regional Director terminates the period of liability of this bond.

3. If the Regional Director terminates the period of liability of this bond, the Surety will remain responsible for Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the bond in favor of the Surety.

4. If this bond is cancelled, the Regional Director may reinstate this bond as if no cancellation had occurred if any payment of any Obligation of the Principal(s) is rescinded or must be restored pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has paid its financial Obligations or performed the other

**BOEM-2028A  (June 2016)**  Previous Editions are Obsolete.                    PAGE 2 OF 3

Obligations of the lease in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the instrument.

5. The Surety waives any right of notice of this bond taking effect and agrees that this bond will take effect upon delivery to BOEM.
6. The Surety's Obligations will remain in full force and effect, even if:
    (a) Any person assigns all or part of any interest in an Instrument covered by this document.
    (b) Any person modifies an Instrument or Obligation under an Instrument in any manner including modifications that result from a commitment to a unit, cooperative, communitization, or storage agreement; suspension of operations or production; suspension or changes in rental, minimum royalty, or royalties; modification of regulations or interpretations of regulations; creation or modification of compensatory royalty agreements or payments; or creation of any mortgage, pledge, or other grant of security interest in the Instruments.
    (c) Any person, event, or condition terminates any Instrument covered by this bond, whether the termination is by operation of law or otherwise.
    (d) BOEM takes or fails to take any action in enforcing, as against any party to the Instrument, the payment of rentals or royalties or the performance of any other covenant, condition or agreement of the lease, or giving notice of or making demand with respect to such nonperformance.
    (e) The Surety suffers any loss by reason of any law limiting, qualifying, or discharging the Principal's Obligation.
7. The Surety agrees to be bound under this bond as to the interests in any Instrument retained by the Principal when BOEM approves the transfer of any or all of the Instruments or interests in the Instruments.
8. In the event of any default under a lease, the Surety must provide payment of all of the cost of the Obligations of the Principal upon demand by BOEM.
9. If BOEM decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not BOEM joins the lessees or any other party.
10. In the event there is more than one Surety for the Principal's performance of the Obligations, as to any Instrument, the Surety's Obligation and liability under this bond is on a "solidary" or "joint and several" basis along with other guarantors or sureties.
11. The Surety agrees to give prompt notice to BOEM and the Principal of any action filed alleging the insolvency or bankruptcy of the Surety or the Principal, or alleging any violation that would result in suspension or revocation of the Surety's charter or license to do business.
12. The Surety's Obligation and liabilities under this Bond are binding upon the Surety's successors and assigns. Nothing in this document permits assignment of the Surety's Obligation without the written consent of BOEM.
13. The Surety hereby waives any defenses to liability on this bond based on an unauthorized Principal signature.

| | |
|---|---|
| Sirius America Insurance Company | Fieldwood Energy LLC |
| Name of Surety | Name of Principal |
| *Teresa D. Kelly* | *John H. Smith* |
| Signature of Person Executing for Surety | Signature of Person Executing for Principal |
| Teresa D. Kelly, Attorney-in-fact | John H. Smith, Senior Vice President - Land & Business Development |
| Name and Title (typed or printed) | Name and Title (typed or printed) |
| 140 Broadway - 32nd Floor | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Business Address | Business Address |
| New York, NY 10005-1108 | Houston, TX 77042 |
| Business Address | Business Address |

Signed on this  9th  day of  May  , 20 19 , in the State of  Texas  , in the presence of:

| | |
|---|---|
| *Melissa Haddick* | *Mark R. Mozell* |
| Signature of Witness | Signature of Witness |
| Melissa Haddick | Mark R. Mozell |
| Name (typed or printed) | Name (typed or printed) |
| 5444 Westheimer, Suite 900 | 2000 W Sam Houston Pkwy S, Suite 1200 |
| Address | Address |
| Houston, TX 77056 | Houston, TX 77042 |
| Address | Address |

*Note:* The person executing for the Surety must attach a corporate resolution and power of attorney stating his or her authority to undertake this Obligation, pursuant to the acts of the corporate board of directors and the laws of the State of incorporation. The corporation executing this bond as Surety and the Principal, if a corporation, must affix their corporate seals.

**BOEM-2028A (June 2016)**     **PAGE 3 OF 3**
Previous Editions are Obsolete.

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In-Fact No. 1800007-403001

Certificate No. 000374

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Dan W. Burton, Craig C. Payne, Teresa D. Kelly, Melissa Haddick, Laura L. Kneitz, Rheagyn L. White

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 14th day of March , 20 18



By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 14th day of March , 20 18 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company; and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022

_____, Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
*MY COMMISSION EXPIRES NOV. 30, 2022*

page 1

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this ___ day of _____, 20___

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

# EXHIBIT B-2



# Executed Bond Report

## Sirius America Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,   TX 77042 | **Bond No:** 7000000437 |
| --- | --- | --- |
| | | **Date:** 9/16/2019 |

**Principal:** Fieldwood Energy Offshore, LLC

**Obligee Name and Address:** United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company, Co-Obligees
Filed with: United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company
Attn:
1201 Elmwood Park Blvd
New Orleans,   LA  70123-

**Power of Attorney No.**
000388 & 000390

| **Effective Date:** | **Bond Amount:** | **Contract Amount:** | **Premium:** |
| --- | --- | --- | --- |
| From   9/16/2019 To:   9/16/2020 | $1,745,185.00 | $0.00 | $21,815.00 |

| **Rate:** | **Commission %** | **Commission Amount** | **State Surchg-Fee:** |
| --- | --- | --- | --- |
| 1.25% | 30.000% | $6,544.50 | $0.00 |

**Description:**
Issued in Duplicate - Multi-Obligee Right-Of-Way Supplemental Bond, OCS ROW No. OCS-G 29417 - Described as a 200' wide & approx 18.29 mi (96') long corridor associated w/8" Pipeline Segment No. (PSN) 20155. Pupose is to maintain/operate PSN 20155 & transport bulk oil from Midline PLET A-2 in Block 156 thru Blocks 112, 111, 110 and 66 to Platform A in Block 65, all in Green Canyon Area.

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of bond, orig request.

**Comments:**
Approved as per Sarah Stanfield's 9/16/2019 email.

**Replacing:**   N/A

Alliant Insurance Services, Inc.    5444 Westheimer    Suite 900    Houston, TX 77056
PHONE (832) 485-4000    FAX (832) 485-4001    www.alliantinsurance.com



# Executed Bond Report

## Sirius America Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston, TX 77042 | **Bond No:** 7000000437<br>**Date:** 9/16/2019 |
|---|---|---|

**Principal:** Fieldwood Energy, L.L.C.

**Obligee Name and Address:** United States of American, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company, Co-Obligees
Filed with: United States of American, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company
Attn:
1201 Elmwood Park Blvd
New Orleans, LA 70123-

**Power of Attorney No.**
000388 & 000390

| **Effective Date:** | | **Bond Amount:** | **Contract Amount:** | **Premium:** |
|---|---|---|---|---|
| From 9/16/2019 To: | 9/16/2020 | $1,745,184.00 | $0.00 | $21,815.00 |

| **Rate:** | **Commission %** | **Commission Amount** | **State Surchg-Fee:** |
|---|---|---|---|
| 1.25% | 30.000% | $6,544.50 | $0.00 |

**Description:**

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of bond, orig request.

**Comments:**
Approved as per Sarah Stanfield's 9/16/2019 email.

**Replacing:** N/A

Alliant Insurance Services, Inc. ☐ 5444 Westheimer ☐ Suite 900 ☐ Houston, TX 77056
PHONE (832) 485-4000 ☐ FAX (832) 485-4001 ☐ www.alliantinsurance.com

**BOND NO.  7000000437**

**OCS ROW NO. OCS-G 29417**

**BOND TYPE: Right-of-Way Supplemental Bond**          **PENAL SUM: $1,745,185.00**

**MULTI-OBLIGEE SUPPLEMENTAL BOND**

KNOW ALL MEN BY THESE PRESENTS:

That on this 16th day of September 2019 (the "***Effective Date***"), we, Fieldwood Energy Offshore LLC , a Delaware limited liability company, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas  77042, assigned BOEM Company Qualification No. 3035 ("***Principal***"), and Sirius America Insurance Company, with an office at 140 Broadway, 32nd Floor, New York, NY 10005-1108 ("***Surety***"), are held and firmly bound unto (i) the United States of America, acting by and through the Bureau of Ocean Energy Management, 1201 Elmwood Park Boulevard, New Orleans, Louisiana 70123 ("***BOEM Obligee***"), and (ii) Marathon Oil Company, an Ohio corporation, with its principal office at 5555 San Felipe Street, Houston, Texas  77056, assigned BOEM Company Qualification No. 0724 ("***Additional Named Obligee***") (BOEM Obligee and Additional Named Obligee being sometimes collectively referred to herein as "***Co-Obligees***") for the penal sum of one million, seven-hundred and forty five thousand, one hundred and eighty five dollars (**$1,745,185.00**) lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents, pursuant to the terms hereof.

WHEREAS, Additional Named Obligee is a former owner of relinquished Federal right-of-way OCS-G 28548 ("***Relinquished ROW***"), which BSEE (as defined below) reactivated on May 7, 2019, and is now assigned Federal right-of-way OCS-G29417 (together with the Relinquished ROW, collectively, the "***Applicable ROW***"), more fully described as follows:

> Pipeline Right-of-way OCS-G29417 is a 200-foot wide and approximately 18.29 miles (96,554') long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20155.  The purpose of the pipeline ROW OCS-G29417 is to maintain and operate PSN 20155 and to transport bulk oil from Midline PLET A-2 in Block 156 through  Blocks 112, 111, 110 and 66 to Platform A in Block 65, all located in Green Canyon Area; and

WHEREAS, pursuant to a transaction between Deepwater Abandonment Alternatives, Inc., a Texas corporation ("***DAA***"), and Principal  in which the underlying infrastructure associated with the Applicable ROW has been acquired by the Principal ("***Assignment Transaction***"), Principal is required to provide security for the Decommissioning Obligations (as defined below) to Additional Named Obligee; and

WHEREAS, pursuant to applicable laws, rules, regulations, and policies of BOEM Obligee, Principal is required to provide financial assurance for the Decommissioning Obligations (as defined below) to BOEM Obligee; and

Page 1 of 10

BOND NO. 7000000437

OCS ROW NO. OCS-G 29417

BOND TYPE: Right-of-Way Supplemental Bond                    PENAL SUM: $1,745,184.00

## MULTI-OBLIGEE SUPPLEMENTAL BOND

KNOW ALL MEN BY THESE PRESENTS:

That on this 16th day of September 2019 (the "*Effective Date*"), we, Fieldwood Energy Offshore LLC , a Delaware limited liability company, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, assigned BOEM Company Qualification No. 3035 ("*Principal*"), and Sirius America Insurance Company, with an office at 140 Broadway, 32nd Floor, New York, NY 10005-1108 ("*Surety*"), are held and firmly bound unto (i) the United States of America, acting by and through the Bureau of Ocean Energy Management, 1201 Elmwood Park Boulevard, New Orleans, Louisiana 70123 ("*BOEM Obligee*"), and (ii) Marathon Oil Company, an Ohio corporation, with its principal office at 5555 San Felipe Street, Houston, Texas 77056, assigned BOEM Company Qualification No. 0724 ("*Additional Named Obligee*") (BOEM Obligee and Additional Named Obligee being sometimes collectively referred to herein as "*Co-Obligees*") for the penal sum of one million, seven-hundred and forty five thousand, one hundred and eighty four dollars (**$1,745,184.00**) lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents, pursuant to the terms hereof.

WHEREAS, Additional Named Obligee is a former owner of relinquished Federal right-of-way OCS-G 28548 ("*Relinquished ROW*"), which BSEE (as defined below) reactivated on May 7, 2019, and is now assigned Federal right-of-way OCS-G29417 (together with the Relinquished ROW, collectively, the "*Applicable ROW*"), more fully described as follows:

> Pipeline Right-of-way OCS-G29417 is a 200-foot wide and approximately 18.29 miles (96,554') long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20155. The purpose of the pipeline ROW OCS-G29417 is to maintain and operate PSN 20155 and to transport bulk oil from Midline PLET A-2 in Block 156 through Blocks 112, 111, 110 and 66 to Platform A in Block 65, all located in Green Canyon Area; and

WHEREAS, pursuant to a transaction between Deepwater Abandonment Alternatives, Inc., a Texas corporation ("*DAA*"), and Principal in which the underlying infrastructure associated with the Applicable ROW has been acquired by the Principal ("*Assignment Transaction*"), Principal is required to provide security for the Decommissioning Obligations (as defined below) to Additional Named Obligee; and

WHEREAS, pursuant to applicable laws, rules, regulations, and policies of BOEM Obligee, Principal is required to provide financial assurance for the Decommissioning Obligations (as defined below) to BOEM Obligee; and

WHEREAS, the Surety warrants that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, that it is qualified to be a surety and guarantor on bonds and undertakings, that it is named in the current Circular 570, published by the Audit Staff Bureau of Accounts, U.S. Department of the Treasury ("*Circular 570*"), and that its certificate of suretyship has not been revoked; and

WHEREAS, the Surety warrants that it has duly executed a power of attorney, appointing the hereinafter named representative as the true and lawful attorney-in-fact of such Surety. All lawful process may be served in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when made at Surety's address as specified in Paragraph 3.12 below, will be valid service upon it, and that such appointment will continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder; but if the named representative in Paragraph 3.12 becomes no longer able to act on Surety's behalf, the Surety will promptly so inform each of the Co-Obligees.

NOW THEREFORE, the Principal, the Surety, and the Co-Obligees agree to the following:

1.  **Definitions.** As used in this Bond, the following terms have the following meanings:

1.1 *Bond* means this multi-Obligee supplemental right-of-way bond, identified as Bond No. ;

1.2 *Instrument* includes, individually or collectively, any lease, operating agreement, designation of operator or agent, storage agreement, transfer of operating rights, permit, license, grant, or easement, pursuant to which the Principal has the right, privilege, or license to conduct operations associated with the Applicable ROW to which this Bond applies;

1.3 *Decommissioning Obligation(s)* means any decommissioning obligation(s) or requirement(s) imposed on both the Principal and the Additional Named Obligee by, or arising from (i) the Applicable ROW, (ii) any regulations of the Department of the Interior, solely as applicable to the Applicable ROW, or (iii) any Instrument issued, maintained, or approved under the Outer Continental Shelf ("*OCS*") Lands Act (43 U.S.C. §§ 1331 et seq.) related to the Applicable ROW acquired by Principal pursuant to the Assignment Transaction and that accrued before the Principal acquired the Applicable ROW therein;

1.4 *Qualified Surety* means a surety named in the version of Circular 570 current at the time the Qualified Surety provides a bond, and at all times thereafter.

1.5 *Person* includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency;

1.6 *Regional Director* means the Regional Director for the applicable BOEM Obligee Regional Office with jurisdiction over the Applicable ROW;

1.7 *ROW Holder* means the Bureau of Safety and Environmental Enforcement ("*BSEE*")-approved owner of the Applicable ROW;

**1.8**    ***Default*** means BOEM's determination that the Principal has failed to timely perform the Decommissioning Obligations.

**2.**    The Principal, the Surety, and the Co-Obligees further agree to the following:

**2.1**    The Surety hereby guarantees, to each of the Co-Obligees, the full and faithful performance by Principal of the entirety of the Decommissioning Obligations. Under no circumstances, however, does such guarantee by the Surety exceed the penal sum of the Bond at any time in effect.

**2.2**    The Principal, as agent on behalf of all ROW Holders with an interest in the Applicable ROW, will fulfill the Decommissioning Obligations to the same extent as though the Principal were the sole interest owner of the Applicable ROW from the Assignment Transaction.

**2.3**    The Surety does hereby absolutely and unconditionally bind itself to each of (i) BOEM Obligee and (ii) Additional Named Obligee for all sums required to fund the performance of the Decommissioning Obligations, up to the penal sum of the Bond, regardless of the number of years this Bond is in force.

**2.4**    The Surety will be responsible to each of the Co-Obligees for all Decommissioning Obligations of the Principal until the earlier of: (a) the satisfaction of all Decommissioning Obligations, (b) if the Bond is called, the Surety has provided the funds up to the penal sum of the Bond, or (c) the Decommissioning Obligations are covered by replacement financial assurance approved in writing by each of BOEM Obligee and Additional Named Obligee which specifically secures the Decommissioning Obligations.

**2.5**    If the Regional Director terminates the period of liability of this Bond in accordance with 30 CFR 556.906, the Surety will remain responsible to the Co-Obligees for Decommissioning Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the Bond in favor of the Surety. If Principal is required to provide a replacement bond pursuant to 30 CFR 556.906, then the Principal shall ensure that both the BOEM Obligee and the Additional Named Obligee are named obligees under such replacement bond.

**2.6**    If this Bond is cancelled, the Regional Director may reinstate this Bond as if no cancellation had occurred if any payment for performance of any Decommissioning Obligation of the Principal is rescinded or must be restored or repaid pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has performed the Decommissioning Obligations in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the Bond.

**2.7**    The Surety waives any right of notice of this Bond taking effect and agrees that this Bond will take effect as to each Co-Obligee upon delivery to such Co-Obligee.

**2.8**    Unless explicitly terminated, cancelled, or modified by both BOEM Obligee and Additional Named Obligee in writing, and as provided for in this Bond, the Surety's obligations will remain in full force and effect, even if:

a)   The Principal or any other person assigns all or part of any interest in an Instrument or in the Applicable ROW covered by this Bond;

b)   Any person modifies an Instrument in any manner, including modifications that result from (i) a commitment to a unit, cooperative, or communitization, or storage agreement; (ii) suspension of operations or production; (iii) suspension or changes in rental, minimum royalty, or the payment of royalties; (iv) modification of regulations or interpretations of regulations; (v) creation or modification of compensatory royalty agreements or payments; or (vi) creation of any mortgage, pledge, or other grant of security interest in an Instrument or the Applicable ROW;

c)   Any person, event, or condition terminates any Instrument or the Applicable ROW interest covered by this Bond prior to the date on which this Bond terminates in accordance with its terms, whether the termination is by operation of law or otherwise; or

d)   Either Co-Obligee takes or fails to take any enforcement action against, or fails to give notice to, or make demand of, any party to any Instrument, concerning the payment or non-payment of rentals or royalties or the performance or non-performance of any other covenant, term, or condition of the Applicable ROW, or any contract entered into with respect to the Assignment Transaction.

2.9   BOEM Obligee will contemporaneously send a copy to Additional Named Obligee of any notice of Default sent to Principal or Surety.

2.10   After a Default, and upon demand by either of the Co-Obligees, the Surety will provide to such Co-Obligee making demand, pursuant to the procedures set forth in this Paragraph 2, payments up to the penal sum of the Bond to satisfy the Decommissioning Obligations.

2.11   Upon Default by the Principal, BOEM Obligee has the right to call the Bond, or a portion of the Bond, by demand upon the Surety without any requirement that BOEM Obligee confer with, or obtain the agreement of, Additional Named Obligee, subject to the procedures, rights and obligations set forth in this Paragraph 2.

2.12   Prior to calling the Bond pursuant to Paragraph 2.11, BOEM Obligee will provide Additional Named Obligee with thirty (30) calendar days' advance written notice (“***BOEM Notice Period***”) of BOEM Obligee's intention to call the Bond (or portion thereof) and stating the scope of the Decommissioning Obligations upon which Principal has defaulted. If, within the BOEM Notice Period, Additional Named Obligee commits in writing to BOEM Obligee to timely undertake the requisite activities to address the Decommissioning Obligations upon which Principal has defaulted, BOEM Obligee will direct the Surety to pay to Additional Named Obligee the proceeds of the Bond (or portion thereof). Additional Named Obligee will utilize the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied.

2.13   If BOEM Obligee calls the Bond, and within the BOEM Notice Period, Additional Named Obligee does not commit in writing to perform the Decommissioning Obligations, BOEM

Obligee has the right to receive performance of the Decommissioning Obligations by, or the payment of the Bond proceeds from, the Surety, with no further obligation to inform the Additional Named Obligee or any other party and BOEM Obligee will place the proceeds of the Bond into an appropriate account and dedicate the proceeds to the performance of activities to address the Decommissioning Obligations then requiring performance.

2.14    Upon Default, Additional Named Obligee may call the Bond by demand upon the Surety if (a) Additional Named Obligee provides BOEM Obligee with thirty (30) calendar days' advance written notice ("*Additional Named Obligee Notice Period*") of its intention to call the Bond (or portion thereof), and (b) agrees in writing to use the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied. Additional Named Obligee hereby acknowledges that this Bond and the procedures relating to utilization of Bond proceeds do not reduce or otherwise modify its regulatory liabilities associated with the Decommissioning Obligations until such Decommissioning Obligations are satisfied.

2.15    If Additional Named Obligee receives Bond proceeds under any of the provisions of this Paragraph 2, the proceeds will be placed into an escrow or other appropriate account in a federally-insured bank or a federally-insured thrift institution mutually acceptable to the Co-Obligees. In order to give Additional Named Obligee appropriate access to Bond proceeds pursuant to this Paragraph 2.15, the agreement establishing the escrow or other appropriate account into which Bond proceeds are deposited will provide for Additional Named Obligee to have the sole authority to make a withdrawal or series of withdrawals upon submitting to BSEE applicable permits for the contemplated decommissioning operations made the subject of the Default. Additional Named Obligee pledges to use funds from this escrow or other appropriate account only for satisfying the Decommissioning Obligations then requiring performance.

2.16    If Additional Named Obligee receives bond proceeds under Paragraph 2.12 or withdraws Bond proceeds under Paragraph 2.15, but fails to commence performance of the Decommissioning Obligations, as specified in the regulations at 30 C.F.R., Part 250, subpart Q, within ninety (90) calendar days of receiving/withdrawing the Bond proceeds, or as otherwise mutually agreed in writing, Additional Named Obligee shall immediately tender to BOEM Obligee the proceeds of the Bond to arrange for performance of the requisite activities to address the Decommissioning Obligations then requiring performance. In order to give BOEM Obligee immediate access to the remaining Bond proceeds pursuant to this Paragraph 2.16, the Additional Named Obligee will provide, in the agreement establishing the escrow or other appropriate account into which Additional Named Obligee deposits the Bond proceeds, terms that authorize BOEM Obligee, after notifying Additional Named Obligee of Additional Named Obligee's failure to timely commence Decommissioning Obligations, to make withdrawals from the account consistent with this Paragraph 2.16. Additional Named Obligee tendering bond proceeds to BOEM Obligee under this Paragraph 2.16 shall not prevent Additional Named Obligee from calling the Bond up to the remaining penal sum of the Bond upon the occurrence of any subsequent default.

2.17 Regardless of which Co-Obligee calls the Bond, and notwithstanding anything else to the contrary herein, any and all proceeds attributable to forfeiture, or call, of the Bond must be applied solely and exclusively to extinguish the Decommissioning Obligations, regardless of insolvency, bankruptcy, or default of the Principal, or an assignment by the Principal of all or part of its interests in the Applicable ROW, and all operations and activities necessary to be performed to extinguish such Decommissioning Obligations must be timely performed in accordance with the regulations of the Department of the Interior. Nothing in this Paragraph 2.17 shall result in Surety's obligation to pay Bond proceeds in an amount greater than the penal sum amount of this Bond.

2.18 Notwithstanding anything else to the contrary herein, any payment of Bond proceeds made by Surety to either Co-Obligee or as directed by either Co-Obligee reduces the Bond penal sum amount regardless of any judicial action that results in BOEM reinstatement of this Bond.

2.19 Any assignment of all right, title, and interest in an Instrument or in the Applicable ROW, in whole or in part, by the Principal shall require at least fourteen (14) business days' prior written notice to the Surety.

## 3. Miscellaneous

3.1 Nothing in this Bond expands the obligations and liabilities of Additional Named Obligee associated with the Applicable ROW pursuant to contract or law, and all such obligations and liabilities will be limited to the obligations and liabilities that accrued while Additional Named Obligee was a ROW Holder, as that term is used herein.

3.2 If either Co-Obligee decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not the other Co-Obligee joins such proceeding.

3.3 In the event there is more than one surety, or there are other types of financial assurance securing the Principal's performance of the Decommissioning Obligations, the Surety's obligation and liability under this Bond is on a "solidary" or "joint and several" basis along with such other surety(ies) and along with any other providers of such financial assurance.

3.4 The Surety agrees that, within five (5) calendar days after learning that it has been de-listed from the Circular No. 570, and/or of any action filed alleging the insolvency or bankruptcy of the Surety, or alleging any violation that would result in suspension or revocation of the Surety's certificate of suretyship, charter, or license to do business, the Surety will give notice to the Principal and the Co-Obligees.

3.5 The Principal agrees that, within five (5) calendar days after learning that the Surety has become bankrupt or, insolvent, or the Surety has had its charter or license to do business suspended or revoked, or is no longer named in the current Circular 570, the Principal will, at its sole cost and expense, substitute a bond identical in all material respects to this Bond from another Qualified Surety (as defined above).

**3.6** The Principal agrees that, within five (5) calendar days of learning of any action filed alleging the insolvency or bankruptcy of the Principal, or alleging any violation that would result in suspension or revocation of the Principal's charter, or license to do business, it will notify the Co-Obligees and the Surety.

**3.7** The Surety's obligation and liabilities under this Bond are binding upon the Surety's successors and assigns, if any. Nothing in this Bond permits assignment of the Surety's obligation without the written consent of each of the Co-Obligees.

**3.8** The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

**3.9** No forbearance by either of the Co-Obligees will release the Principal and the Surety from any liability under this Bond to any Co-Obligee.

**3.10** The penal sum of the Bond will be reduced by and to the extent of any payments made by Surety hereunder, or its successors and assigns, if any; however the Bond will remain in full force and effect for the remaining balance of the Bond until all the Decommissioning Obligations are satisfied, or until a replacement bond from a Qualified Surety or other form of financial assurance acceptable to each Co-Obligee, in its sole discretion, is provided.

**3.11** No right or action will accrue on this Bond to or for the use of any Person other than the Principal, Surety, the Additional Named Obligee, and the BOEM Obligee, and their respective heirs, executors, debtor(s) in possession, administrators, assigns, or successors, pursuant to the terms of this Bond and applicable law.

**3.12** A notice or communication under or in connection with this Bond shall be in writing and shall be deemed to have been duly given or made when (a) delivered by hand by a recognized courier delivery service, on the date shown on the receipt, or (b) in the case of delivery by United States certified mail with return receipt requested and postage prepaid, on the date of delivery. The addresses for all notices are as follows:

> Principal:
>
> Fieldwood Energy Offshore LLC
> 2000 West Sam Houston Parkway South, Suite 1200
> Houston, TX  77042
> Attn:  Mr. Mark Mozell, Vice President Risk Management, Insurance
> Telephone:  713-969-1133
>
> With a copy to:
>
> Fieldwood Energy Offshore LLC
> 2000 West Sam Houston Parkway South, Suite 1200
> Houston, TX  77042
> Attn:  Mr. Tommy Lamme, General Counsel
> Telephone:  713-969-1107

Additional Named Obligee:

Marathon Oil Company
5555 San Felipe Street
Houston, TX 77056
Attn: Jim Sandoval, Assistant Treasurer
Telephone: 713-296-4623

With a copy to:

Marathon Oil Company
5555 San Felipe Street
Houston, TX 77056
Attn: Mr. G. Adam Dempsey, Senior Counsel-Acquisitions & Dispositions
Telephone: 713-296-2608

BOEM Obligee:

Bureau of Ocean Energy Management
1201 Elmwood Park Boulevard
New Orleans, Louisiana 70161
Attention: Regional Director
Telephone: 504-736-0557

Surety:

Sirius America Insurance Company
140 Broadway, 32nd Floor
New York, NY 10005-1108
Attn: Ms. Sarah Heineman
Telephone: (713) 409-9918

A party to this Bond may change its address for notices by written notice to the other parties.

3.13  BOEM Obligee acknowledges that DAA and Principal are parties to the Assignment Transaction, whereby Principal acquired the infrastructure associated with the Applicable ROW, and BOEM Obligee agrees that it has no rights, duties or obligations pursuant to the Assignment Transaction, and it is not a third-party beneficiary under the agreements relevant to the Assignment Transaction. Additional Named Obligee and Principal acknowledge that BOEM Obligee may enforce its regulations concerning the obligations of assignors and assignees.

**3.14** This Bond will be subject to, and interpreted in accordance with, federal law and, in the absence of federal law, the law of the State of Texas. All disputes arising out of or in connection with this Bond shall be resolved exclusively in the federal courts in Texas and the parties hereto consent to the jurisdiction and venue of such courts. Without limiting the foregoing, all regulations governing surety bonds included within 30 CFR 556.900, *et seq*. are incorporated herein by reference for the benefit of both BOEM Obligee and Additional Named Obligee.

**3.15** Any decommissioning obligations associated with the Applicable ROW for which Additional Named Obligee has no liability shall be covered by separate and distinct financial assurance provided to BOEM Obligee by Principal or another party.

**3.16** This Bond may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument. Any .pdf (portable document format) or other electronic transmission hereof or signatures hereon shall, for all purposes, be deemed originals.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on the Effective Date, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**PRINCIPAL: Fieldwood Energy Offshore LLC**

WITNESSES:

By: _____

Name:   John H. Smith

Title:   Vice President

**SURETY: Sirius America Insurance Company**

WITNESSES:

Melissa Haddick

Megan Sivley

By: _____

Name:   Teresa D. Kelly

Title:   Attorney-in-Fact

**ADDITIONAL NAMED OBLIGEE: Marathon Oil Company**

WITNESSES:

By: _____

Name:   T. Mitch Little

Title:   Executive Vice President, Operations

**BOEM OBLIGEE: United States Department of the Interior**
**By: Bureau of Ocean Energy Management**

WITNESSES:

By: _____

Name: _____

Title: _____

*[Signature Page to Multi-Obligee Supplemental Bond for Right-of-Way OCS-G29417]*

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800007-403001                    Certificate No. 000388

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Dan W. Burton, Craig C. Payne, Teresa D. Kelly, Melissa Haddick, Laura L. Kneitz, Rheagyn L. White

of the City of Houston                    , State of Texas          , its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 14th day of March          , 20 18

By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 14th day of March          , 20 18 before me personally appeared  D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission expires the 30 day of November 2022

_____, Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

page 1

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this 16th day of September, 20 19

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



### Sirius
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800007-403001

Certificate No. 000390

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Dan W. Burton, Craig C. Payne, Teresa D. Kelly, Melissa Haddick, Laura L. Kneitz, Rheagyn L. White

of the City of Houston                    , State of Texas                    , its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

**IN WITNESS WHEREOF,** the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 14th day of March          , 20 18



By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 14th day of March          , 20 18 before me personally appeared  D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.
My Commission expires the 30 day of November 2022

_Patricia A. McAndrew_
, Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this 16th day of September, 2019.

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.



# Executed Bond Report

### Everest Reinsurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** **ES00001441** |
|---|---|---|
| | | **Date:**  8/30/2018 |

**Principal:** Fieldwood Energy LLC

**Obligee Name and Address:**
Apache Corporation
Filed with: Apache Corporation
2000 Post Oak Blvd Suite 100
Houston,  TX  77056-

**Power of Attorney No.**
ES050R10003

| **Effective Date:**<br>From    8/30/2018  To    8/30/2019 | **Bond Amount:** Everest Re: $25,000,000.00<br>TMHCC: $50,000,000.00 | **Premium:** Everest Re: $437,500.00<br>TMHCC: $875,000.00 |
|---|---|---|
| **Rate:**<br>1.75% | **Commission %**   Everest Re: 30%<br>TMHCC: 20% | **Commission Amount**   Everest Re $131,250.00<br>TMHCC      $175,000.00 |

**Description:**
Payment Bond related to Decommissioning Agreement dated September 30, 2013 ($50MM of the $75MM fronted by Everest Re on behalf of TMHCC)

**Renewal Type:**
Continuous Until Cancelled/Released

**Cancellation Provision:**
Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of bond

**Comments:**
Approved as per Jessica Mann's 8/29/2018 email.

Alliant Insurance Services, Inc. □ 5444 Westheimer □ Suite 900 □ Houston, TX 77056
PHONE (832) 485-4000 □ FAX (832) 485-4001 □ www.alliantinsurance.com

# Payment Bond

**Bond No.** ES00001441                                    **Penal Sum: $**75,000,000.00         

### Know All Men By These Presents,

**That *Fieldwood Energy LLC***, a Delaware limited liability company with its principal office at 2000 W. Sam Houston Parkway S, Suite 1200, Houston, Texas 77042 (hereinafter called "**Principal**"), and *Everest Reinsurance Company,* a Delaware corporation with an office at 451 5th Avenue, New York, New York 10017 (hereinafter called "**Surety**"), authorized to do and doing a surety business in the State of Texas, and meeting, and shall continue to meet, the requirements, if any, established for a surety by any governmental authority having jurisdiction, are held and firmly bound unto ***Apache Corporation***, a Delaware corporation (hereinafter called "**Obligee**" or "**APA**") with an office at 2000 Post Oak Blvd., Suite 100, Houston, Texas 77056, in the original penal amount of Seventy-Five Million and No/100 Dollars ($75,000,000.00), referred to herein as the "**Stated Amount**", exclusive of reasonable attorney's fees, court costs and expenses, for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, and successors and assigns, jointly, severally and solidarily, firmly by these presents.

**WHEREAS**, Obligee, along with Apache Shelf, Inc., a Delaware corporation ("**APSH**"), Apache Deepwater LLC, a Delaware limited liability company ("**APDW**"), and Apache Shelf Exploration LLC, a Delaware limited liability company ("**ASE**"), and Principal, along with GOM Shelf LLC, a Delaware limited liability company ("**GOM**" collectively, with Principal shall be referred to herein as "**Fieldwood**"), entered into that certain Decommissioning Agreement dated as of September 30, 2013 (as amended, the "**Agreement**"); and

**WHEREAS**, Obligee, Principal, and Surety may sometimes be referred to in this Payment Bond (the "**Bond**") individually as a "**Party**" and collectively as the "**Parties**"; and

**WHEREAS**, capitalized terms used, but not defined herein, shall have the meanings given such terms in the Agreement; and

**WHEREAS**, Principal has obtained this Bond in accordance with its obligations under the Agreement.

**NOW, THEREFORE,** for good and valuable consideration, the Parties agree as follows:

1. **Term and Termination.** This Bond is for an initial term beginning August 30, 2018 and ending on August 30, 2019 (the "**Initial Term**"). This Bond will automatically renew for additional twelve (12) month periods (each a "**Subsequent Term**") unless the Surety provides to the Obligee, by certified mail (return receipt requested), overnight courier or by any other receipted means, advance written notice, no earlier than ninety (90) days and no later than sixty (60) days from the end of the

Initial Term or any Subsequent Term, as applicable, of its intent not to renew the Bond. It is understood and agreed that Surety shall, upon demand in the form of a Drawing Request (as defined in Section 2(a) below) made by Obligee, without any notice other than such Drawing Request, and without any further action by the Obligee, deliver to Obligee cash not later than the Demand Compliance Deadline (as defined in this Section 1 below) in the full amount of the Bond (less any previous amounts paid to the Obligee under the Bond). This Bond shall remain in full force and effect as to obligations incurred by Principal during the term of this Bond; provided, however:

(a) This Bond shall automatically terminate (without any requirement for further notice, amendment or other formality or action of any person) upon Surety's receipt of a Termination Notice, accompanied by the original of this Bond and executed by both Principal and Obligee in substantially the form of Exhibit D.

(b) The Stated Amount of this Bond shall from time to time automatically reduce (without any requirement for further notice, amendment or other formality or action of any person) upon Surety's receipt of a Reduction Notice executed by both Principal and Obligee in substantially the form of Exhibit C.

(c) This Bond shall terminate upon Surety's payment(s) to Obligee in an aggregate amount equal to the Stated Amount and as applicable, the amounts described in Sections 2(e) and 6.

A "**Demand Compliance Deadline**", for any Drawing Request, means the seventh business day after delivery of such Drawing Request in accordance with Section 3 below.

2.  **Payments.**

(a) Without limitation of Obligee's right to demand cash in accordance with Section 1 above, funds under this Bond are available to Obligee upon Surety's receipt of either (i) a Decommissioning Drawing Request in substantially the form of Exhibit A or (ii) a Non-Extension Drawing Request in substantially the form of Exhibit B (each of (i) and (ii) being a "**Drawing Request**") signed by an authorized officer of Obligee. For clarity purposes and not intended to expand or limit the provisions of the Agreement, the Parties acknowledge that Surety is not required, and does not have the obligation or option, to perform any Decommissioning on behalf of either Principal or Obligee.

(b) Multiple and partial payments under this Bond are allowed. The Stated Amount of this Bond shall be reduced by the amount of any such payments.

(c) Surety hereby agrees that each Drawing Request presented under and in compliance with the terms and conditions of this Bond will be duly honored upon presentation to Surety, and Surety agrees to make payment in full on the Demand Compliance Deadline.

#5647104.3