IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, et al. | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**U.S. SPECIALTY INSURANCE COMPANY'S OBJECTION
TO THE DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF
FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS**
[Relates to Docket No. 723]

U.S. Specialty Insurance Company ("***USSIC***") files this objection to the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (the "***Disclosure Statement***")[1], and in support would show the Court as follows:

## SUMMARY

1. The Disclosure Statement cannot be approved by the Bankruptcy Court because it lacks "adequate information" as required by section 1125(a) of the Bankruptcy Code. Further, there are a number of defects set forth in the Plan and Disclosure Statement that make the Plan inherently and/or patently unconfirmable.

2. The Disclosure Statement is woefully insufficient given the size of the Debtors and the complexity and breadth of the assets involved. In part, these Disclosure Statement deficiencies include:

> i. The Disclosure Statement provides little more than a cursory discussion regarding the proposed sale of the Specified Deepwater Assets and Shelf Assets. There is effectively little disclosure regarding this proposed sale from the stand point of: the process for the sale, the treatment of counterparties, the terms of

---

[1] Just prior to the filing of this objection, the Debtors filed an Amended Disclosure Statement [Docket No. 1022]. USSIC has not had an opportunity to review the Amended Disclosure Statement in detail, but an initial review suggests that the majority of USSIC's objection have not been addressed. USSIC reserves the right to file any additional objections to the Amended Disclosure Statement.

1

    the sale, and the treatment of executory contract, all of which would normally be provided.

  ii. The Disclosure Statement lacks information regarding the marketing, if any, of the assets or any other processes performed by the Debtors to expose the Debtors' assets to the market or any other objective information that would support the proposed disposition of the Debtors' assets.

  iii. The Disclosure Statement is incomplete and Debtors' proposed timeline fails to provide parties in interest with sufficient time to further investigate or obtain sufficient information to evaluate the proposed multiple transactions. The size and complexity of the assets and the incompleteness of the Disclosure Statement do not provide adequate time to complete any such evaluation. The Debtors' proposed timeline—which simply purports to provide key documents a mere seven (7) days prior to Voting and Plan Objection Deadline—is woefully insufficient. [Docket No. 724 ¶ 7].

  iv. The Disclosure Statement does not address how the Debtors intend to fulfill their current decommissioning obligations. The Disclosure Statement contains no information regarding the use of the Debtors' current cash or their current plugging and abandonment obligations.

  v. There is a complete lack of financial information in the Disclosure Statement. For example, there is no liquidation analysis, and no financials related to viability of either FWE I and FWE III. Thus, there is no substantive information regarding their ability to perform the decommissioning obligations the Plan purports to saddle on them. Providing this information in a Plan Supplement seven (7) days prior to the Voting and Plan Deadline is unacceptable.

3. The Disclosure Statement and Plan also contain a number of defects that render the Plan unconfirmable. In part, these defects include:

  i. There is no discussion regarding how the Debtors will address regulatory compliance and their related bonding obligations on the purchased assets on a go-forward basis. The bonds and their related indemnity agreements are financial accommodations and, without consent from the relevant surety, cannot be assumed or assigned pursuant to 11 U.S.C. § 365(c)(2). To the extent the Plan and Disclosure Statement propose to transfer the Debtor's various surety bonds to new entities without the sureties consent, USSIC objects.

  ii. The Plan purports to abandon certain of the Debtors' assets along with their environmental plugging and abandonment obligations in contravention 28 U.S.C. § 959(b) and *Midatlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494 (1986) and its progeny.

2

    iii. The Plan in connection with FWE I, appears to assert that the bonds can be divided and separated from their related indemnity agreement. The Bonds (defined below) and their related indemnity agreement are part of an integrated transaction and cannot be severed from one another. In other words, the Debtors cannot retain the benefit of the Bonds while jettisoning their obligations under the related indemnity agreements.

    iv. The Plan is not fair and equitable and appears to discriminate between creditors in the general unsecured creditor class, and this therefore likely unconfirmable pursuant to 11 U.S.C. § 1129(b)(1).

4. Additionally, in their motion seeking approval of the Disclosure Statement [Docket No. 724] (the "***Disclosure Statement Motion***"), the Debtors seek to impose voting restrictions on some Class 6 creditors that are inconsistent with the Bankruptcy Code and its underlying policies. In order to ensure that its rights are not improperly abridged, USSIC objects to this relief as well.

5. Based on the foregoing and as set forth more fully below, the Bankruptcy Court should deny approval of the Disclosure Statement.

## BACKGROUND

6. On August 3, 2020 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. The Debtors, together with the non-debtor affiliates (collectively, the "***Company***") are an independent exploration and production ("***E&P***") company in the Gulf of Mexico.

9. USSIC has issued 26 surety bonds to the Debtors (the "***Bonds***") to secure certain of the Debtors' payment or performance of various obligations to governmental and non-

3

governmental obligees for a total penal sum of $74,528,695.00. A schedule of Bonds is set forth below:

| Bond number | Penalty amount | Principal |
|---|---|---|
| B0059901 | $3,000,000.00 | Fieldwood SD Offshore, LLC |
| B005991 | $300,000.00 | Fieldwood SD Offshore, LLC |
| B005992 | $790,000.00 | Fieldwood Onshore, LLC |
| B005993 | $25,000.00 | Galveston Bay Pipeline, LLC |
| B005994 | $770,000.00 | Fieldwood SD Offshore, LLC |
| B007994 | $2,000,000.00 | Fieldwood Onshore, LLC |
| B008781 | $325,000.00 | Fieldwood Energy Offshore, LLC |
| B008837 | $1,651,851.00 | Fieldwood Energy Offshore, LLC |
| B008838 | $115,988.00 | Fieldwood Energy Offshore, LLC |
| B008839 | $1,676,556.00 | Fieldwood Energy Offshore, LLC |
| B008899 | $75,000.00 | Fieldwood Onshore, LLC |
| B008908 | $6,000.00 | Fieldwood Energy Offshore, LLC |
| B008940 | $3,000,000.00 | Bandon Oil and Gas, LP |
| B008941 | $300,000.00 | Bandon Oil and Gas, LP |
| B008942 | $3,000,000.00 | Dynamic Offshore Resources, NS |
| B008943 | $300,000.00 | Dynamic Offshore Resources, NS |
| B008963 | $350,000.00 | Fieldwood Energy, LLC |
| B009064 | $100,000.00 | Fieldwood Energy, LLC |
| B009075 | $125,000.00 | Fieldwood Energy Offshore, LLC |
| B009076 | $250,000.00 | Fieldwood Energy Offshore, LLC |
| B009183 | $146,000.00 | Fieldwood Energy, LLC |
| B009311 | $4,560,000.00 | GOM Shelf, LLC |
| B009344 | $50,000,000.00 | Fieldwood Energy Offshore, LLC |
| B010590 | $175,000.00 | Fieldwood Energy, LLC |
| B010618 | $1,212,300.00 | Fieldwood Energy, LLC |
| B012528 | $225,000.00 | Fieldwood Energy, LLC |
| **Total** | **$74,528,695.00** | |

## OBJECTION TO DISCLOSURE STATEMENT

### I. *Lack of Adequate Information*

10. The Disclosure Statement lacks the necessary "adequate information". Section 1125(b) of the Bankruptcy Code states that the proponent of a plan may not solicit acceptances or rejections of a proposed plan from holders of claims or interests unless the proposed plan is transmitted to the holders with "a written disclosure statement approved, after notice and a

4

hearing, by the court as containing adequate information." Section 1125(a)(1) defines "adequate information" in this context as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, <u>that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan</u>, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information

11 U.S.C. §1125(a)(1) (emphasis added). "[A] proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferritti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). A disclosure statement must provide enough information to enable a "reasonable creditor" to make an informed decision as to whether or not to accept a proposed plan. *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).

11. The determination of what is adequate information is subjective and made on a case by case basis. *Id.* Ultimately, what is "adequate information" is within the discretion of the bankruptcy court. *Id.* The Disclosure Statement, in its current form, is incomplete and vague and, therefore, does not provide adequate information as required by the Bankruptcy Code.

12. USSIC objects to the Disclosure Statement for the following reasons:

   i. <u>The Disclosure Statement lacks sufficient information regarding the proposed sale of the Specified Deepwater Assets and Shelf Assets.</u> In order for the sale to be adequately investigated from a surety's perspective, the Disclosure Statement must contain the following information:

      1. Information related to the performance of all existing bonding obligations for each of the assets being acquired.

5

2. Information regarding whether the purported purchaser will take transfer of, or obtain overlapping permits with respect to the Debtors' applicable permits.

3. Information regarding whether the purchaser will replace the current applicable Bonds or provide evidence that the purchaser (i) is capable of taking transfer of the applicable permits or obtaining overlapping permits; and (ii) has or will have sufficient financial resources necessary to obtain or replace any applicable Bonds that are associated with such permits.

4. Information regarding the process by which the purchaser will provide the necessary bonding assurance documents to the applicable sureties providing bonding related to the assets.

The Disclosure Statement lacks any of this type of information making it impossible for USSIC to evaluate the purported sale of the Specified Deepwater Assets and Shelf Assets.

ii. <u>The Disclosure Statement lacks any marketing or valuation information</u>. The Disclosure Statement does not contain any information regarding the Debtors efforts, if any, to expose its assets to the market. There is no information regarding whether the assets involved in the Specified Deepwater Assets and Shelf Assets sale were exposed to the market. There is no information regarding whether the assets involved in the FWE I and FWE II divesture, or in the Abandonment transfer were exposed to the market. Without such information, it is not possible to determine if the value purportedly being provided in the various proposed transactions is fair and reasonable or if some of the properties to be abandon may in fact be liquidated.

iii. <u>The Disclosure Statement's incomplete state and the proposed timeline fail to provide surety parties sufficient time to analyze the proposed transactions, including the purported sale of the Specified Deepwater Assets and Shelf Assets</u>. The Plan proposes to conduct a number of complex transactions involving multiple properties and counter parties, but fails to provide relevant and necessary information so that the relevant surety(ies) can evaluate and perform their necessary due diligence of the transfers and purported new counter parties. The Debtors' proposed timeline—which purports to provide key documents a mere seven (7) days prior to Voting and Plan Objection Deadline—is woefully insufficient for these transactions to be properly investigated. [Docket No. 724 ¶ 7].

iv. <u>The Disclosure Statement fails to disclose how the Debtors will address their current decommissioning obligations</u>. The Debtors are operating entities. Before and during this case, the Debtors have incurred and continue to incur ongoing and imminent environmental liabilities. There is limited information in

6

      the Disclosure Statement regarding the scope of what these environmental liabilities are, let alone how the Debtors anticipate resolving them.

v. <u>There is a dearth of necessary financial information</u>. These are complex transactions involving numerous assets and bonding obligations. Yet, the Disclosure Statement lacks the necessary and relevant financial data to evaluate the viability of the proposed Plan, including a liquidation analysis, financials of the proposed purchaser, financials or analysis regarding either FWE I and FWE III and their feasibility given the potential size of the potential decommission obligations they anticipate taking on. It is unacceptable for this information to be provided, if it will be provided at all, a mere seven (7) days prior to the Voting and Plan Deadline.

vi. The Disclosure Statement does not include a comprehensive list of all decommissioning liabilities by lease, including any expired and relinquished leases still requiring decommissioning.

vii. The Disclosure Statement only provides limited disclosure about the Debtors' treatment of bonds related to right-of-ways.

viii. The Disclosure Statement appears to reflect various leases being allocated into multiple buckets, i.e., those allocated to FWE I, those retained by FWE III, those sold under the Credit Bid, and those to be abandon. The information provided as to how the Debtors' leases will be allocated is both insufficient and contradictory. The Debtors should provide either a revised lease list or a detailed explanation why some leases appear in multiple buckets. To the extent that the Debtors are proposing to split these leases between two or more "buckets," and presumably split the bonds associated with those leases, USSIC asserts that such bonds, and their relevant indemnity agreements, cannot be split.

ix. The Disclosure Statement contains little information regarding how the Debtors' future liabilities with BOEM will be addressed.

## II.    *Plan is Unconfirmable*

13. The Disclosure Statement cannot be approved because the proposed Plan is unconfirmable on its face.

14. It is well established that a disclosure statement should not be approved if the chapter 11 plan it describes is unconfirmable on its face. *See, e.g., In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (compiling cases and citing *In re Main St. AC, Inc.*, 234

7

B.R. 771, 775 (Bankr. N.D. Cal. 1999)) ("It is now well accepted that a court may disapprove of a disclosure statement . . . if the plan could not possibly be confirmed."); *see also In re Digerati Techs., Inc.*, No. 13-33264, 2014 WL 2203895, at *3 (Bankr. S.D. Tex. May 27, 2014) (Bohm, J.) (quoting *In re Beyond.com Corp.*, 289 B.R. 138 (Bankr. N.D. Cal. 2003)) ("[T]he court denied approval of the debtor's disclosure statement '[b]ecause the underlying plan is patently unconfirmable.'"); *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) ("Disapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so fatally flawed that confirmation is impossible.") (internal citations omitted). There are several provisions of the proposed Plan that render it unconfirmable as written and, therefore, the Disclosure Statement should not be approved.

15. While it is less than clear from the Disclosure Statement whether the Debtors intend to treat the Bonds and their related indemnity agreements as executory contracts, it is clear that they should not be treated as such. The Bonds and their related indemnity agreements are financial accommodations and, without consent from the relevant surety, cannot be assumed or assigned pursuant to 11 U.S.C. § 365(c)(2). Neither the Plan nor the Disclosure Statement contain information regarding how the Debtors' go-forward regulatory compliance will be accomplished. Nor do they address how their related bonding obligations on the assets will be treated on a go-forward basis. To the extent the Plan and Disclosure Statement propose to transfer the Debtor's various surety bonds to new entities without the sureties consent, USSIC objects.

16. The Plan purports to abandon certain of the Debtors' assets along with their environmental plugging and abandonment obligations in contravention 28 U.S.C. § 959(b) and *Midatlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494

8

(1986) and its progeny. This is impermissible under the Bankruptcy Code and 5th Circuit case law.

17. More problematic, the Plan, in connection with FWE I, appears to assert that the bonds can be divided and separated from their related indemnity agreement. This proposed outcome would drastically alter the integrated arrangement that underlies and supports the Bonds. The Bonds and their related indemnity agreement are part of an integrated transaction and cannot be severed from one another. Given the integrated nature of the transactions and arrangements relating to the Bonds, separating the Bonds from their respective indemnity agreements is improper and unauthorized by the Bankruptcy Code. For the same reasons, the transfer of the Bonds to different entities without the surety's consent is also improper. In other words, the Debtors cannot retain the benefit of the Bonds while jettisoning their obligations under the related indemnity agreements.

18. The Plan is not fair and equitable and appears to discriminate between creditors in the general unsecured creditor class, and this therefore likely unconfirmable pursuant to 11 U.S.C. § 1129(b)(1).

### III. *Debtors' Attempt to Unfairly Restrict Some Class 6 Voting Rights is Improper*

19. In addition to seeking approval of the Disclosure Statement, the Debtors also seek the Court's approval of the application of the following "hierarchy" to Class 6 Claims (and only Class 6 Claims):

> The amount of each General Unsecured Claim, for voting purposes only, shall be established pursuant to the following hierarchy:
>
> > (a) If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Bankruptcy Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Bankruptcy Court;

9

> (b) If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;
>
> (c) If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date, *provided that, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed, then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00*; and
>
> (d) If neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules, provided that, if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

Disclosure Statement Motion, ¶ 38 (emphasis added).

20. This proposed "hierarchy" is unfair to holders of Class 6 Claims. First, it would automatically apply to all Class 6 Claims without requiring the Debtors to identify which claims fall into each of the four categories. Thus, Class 6 creditors would be left guessing as to how their claims will be affected by the Debtors' proposed treatment. Moreover, the relief requested by the Debtors does not address the treatment of Class 6 Claims that are only partially contingent or unliquidated.

21. Second, the Debtors' proposal unfairly shifts the burden of affirmative action to the Class 6 creditor. Rather than requiring the Debtor to specify which Class 6 Claims it contends are contingent or unliquidated, it puts the onus on the creditors to take action—perhaps unnecessarily—to ensure that their rights are protected in the event that the Debtors later take the position that their claims have been reduced for voting purposes under the proposed "hierarchy."

10

22. Third, the Debtors' proposal discriminates against the holders of Class 6 Claims. The proposed "hierarchy" applies only to Class 6 Claims and not to any other Class. This is discriminatory on its face and should not be allowed.

23. Finally, the Rule 3018(a) Deadline proposed by the Debtors is unworkable. The Disclosure Statement Motion asks that the Deadline be set as February 26, 2021. Disclosure Statement Motion, ¶ 40. As the Court is aware, that date has long passed. To the extent that the Court does approve the Debtors' proposed "hierarchy," the Rule 3018(a) Deadline should be set for a date that will give holders of Class 6 Claims sufficient notice and opportunity to make the filings necessary to protect their rights and to obtain a ruling from the Court on those filings.

## CONCLUSION

24. In summary, the Disclosure Statement fails to provide adequate information necessary for an investor to make an informed judgment about the plan. The missing information is material. The creditors in this chapter 11 case, as in all such cases, are entitled to a meaningful and reasonably accurate disclosure statement that will allow them to fully evaluate the proposed Plan and its effect on their claims. This Disclosure Statement will not enable them to do so; therefore, it cannot be approved.

25. Additionally, there are serious flaws in the proposed Plan that also support denial of approval of the Disclosure Statement, and the Debtors seek to unfairly restrict the voting rights of the holders of Class 6 Claims.

**PRAYER**

For the foregoing reasons, USSIC respectfully requests that the Court enter an order denying approval of the Disclosure Statement and granting USSIC such other and further relief as the Court deems just and proper.

Dated: March 16, 2021
Houston, Texas

                                      Respectfully submitted,

                                      */s/ Philip G. Eisenberg*
                                      Philip G. Eisenberg
                                      Texas Bar Number 24033923
                                      Elizabeth M. Guffy
                                      Texas Bar Number 08592525
                                      Simon R. Mayer
                                      Texas Bar Number 24060243
                                      **LOCKE LORD LLP**
                                      600 Travis Street, Suite 2800
                                      Houston, TX 77002
                                      Telephone: 713-226-1200
                                      Facsimile: 713-226-3717
                                      Email: peisenberg@lockelord.com
                                                    eguffy@lockelord.com
                                                    simon.mayer@lockelord.com

                                      *Attorneys for*
                                      *U.S. Specialty Insurance Company*

**Certificate of Service**

I certify that on March 16, 2021, a copy of the foregoing document was served electronically via the Court's Electronic Case Filing System on all parties registered for such service, including, but not limited to, counsel for the Debtors.

                                      */s/ Simon R. Mayer*
                                      Simon R. Mayer