## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY, LLC, *et al.*,[1] | § | Case No. 20-33948 (MI) |
| | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |

### OBJECTION OF XTO OFFSHORE, INC., HHE ENERGY COMPANY, AND XH LLC TO THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY, LLC AND ITS AFFILIATED DEBTORS

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

COME NOW XTO Offshore, Inc., HHE Energy Company, and XH LLC, and their respective affiliates and subsidiaries (collectively, "XTO Energy"), and file this Objection (the "Objection") to the *Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* (the "Joint Plan") [Docket No. 722]. In support of this Objection, XTO Energy would respectfully show the Court as follows:

### I. Summary Statement

1. Despite the Debtors' obligation to pay hundreds of millions of dollars in P&A Obligations (defined below), their Joint Plan seeks to abandon more than 185 offshore oil and gas properties and, with them, the Debtors' obligation to pay the P&A Obligations relating to such properties. However, the law is clear that the Debtors cannot abandon contaminated estate property, including oil and gas properties subject to substantial P&A Obligations, in violation of state and federal environmental regulations aimed at protecting the health and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

safety of the public. Environmental laws requiring the decommissioning of offshore oil and gas properties are aimed at protecting the public's health and safety. Thus, the Debtors cannot simply abandon oil and gas properties and thereby avoid their substantial P&A Obligations.

2. Moreover, under well-established authority, the Debtors' P&A Obligations constitute administrative expenses of their bankruptcy estates under section 503(b)(1)(A) of the Bankruptcy Code. Consequently, because the Joint Plan does not adequately provide for the payment of all administrative expenses, including the costs to perform all P&A Obligations associated with the properties to be abandoned, the Joint Plan cannot be confirmed because it does not satisfy section 1129(a)(9)(A) of the Bankruptcy Code and is not feasible under section 1129(a)(11). Finally, the Joint Plan contains improper third-party releases.

## II. Jurisdiction and Venue

3. This Court has jurisdiction to hear and determine this Objection under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157, and this Court may enter a final order on this Objection consistent with Article III of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are 11 U.S.C. §§ 1128(b) and 1129; Rule 3020(b) of the Federal Rules of Bankruptcy Procedure; Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas, and the Procedures for Complex Chapter 11 in the Cases Southern District of Texas.

6. The Court has constitutional authority to enter a final order in this matter. If it is determined that the bankruptcy judge does not have the constitutional authority to enter a final order or judgment in this matter, then XTO Energy consents to the entry of a final order or judgment by this Court in this matter.

## III. Background Information relating to XTO Energy Leases

7. On or about July 29, 2011, XTO Offshore, Inc., HHE Energy Company, and XH, LLC, as sellers, entered into a Purchase and Sale Agreement ("PSA") with Dynamic Offshore

Resources, LLC ("Dynamic Offshore"), as buyer. A copy of the PSA is attached hereto as **Exhibit A.** The PSA, which collectively defines the sellers as "XTO Energy," provided for the sale by XTO Energy of XTO Energy's interests in certain oil and gas leasehold estates and other interests (collectively, the "Leases") to Dynamic Offshore.

8. On or about August 1, 2011, a separate Assignment and Bill of Sale was executed by each of XTO Offshore, Inc., HHE Energy Company, and XH, LLC in favor of Dynamic Offshore, pursuant to which XTO Energy sold, assigned, and conveyed the Leases to Dynamic Offshore. A copy of each Assignment and Bill of Sale from XTO Offshore, Inc., HHE Energy Company, and XH, LLC to Dynamic Offshore are attached as **Exhibit B, Exhibit C and Exhibit D,** respectively.

9. According to the chapter 11 petition filed in Case No 20-22950, Fieldwood Energy Offshore, LLC ("Fieldwood Offshore"), which is included among the Debtors in this jointly administered case, is a successor in interest to Dynamic Offshore. Consequently, Dynamic Offshore is referred to hereinafter as Fieldwood Offshore.

10. Pursuant to section 9.08 of the PSA, Fieldwood Offshore agreed to perform all plugging, abandoning and remediation obligations (collectively, the "P&A Obligations") relating to the Leases. Specifically, section 9.08 of the PSA requires Fieldwood Offshore to "perform or assure that performance is accomplished properly and in accordance with applicable law and the Related Agreements, all obligations to abandon, restore, and remediate the Interests and Properties, whether arising before or after the Effective Time, including obligations, as applicable to the Interests and Properties." See Ex. A, p. 27, § 9.08.

11. In addition, section 16.03 of the PSA requires Fieldwood Offshore to "indemnify, defend, and hold XTO Energy and its Associated Parties harmless from each Claim and Liability relating to the Interests, Property or this Transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable." See Ex. A, p. 35, § 16.03. Finally, section 16.04(b)(8) of the PSA provides that Fieldwood Offshore's

duty to defend, indemnify and hold XTO Energy harmless includes any claims or liabilities arising from "obligations to plug and abandon Wells and remediate the Interests and Property." See Ex. A, p. 36, § 16.04(b)(8).

12. Thus, pursuant to the PSA, Fieldwood Offshore agreed to perform all P&A Obligations relating to the Leases. Notwithstanding these obligations, the Debtors' Joint Plan seeks to abandon certain oil and gas properties, which include the Leases, along with the Debtors' duty to perform all P&A Obligations associated with such properties.

13. On November 24, 2020, XTO Energy filed Proof of Claim No. 5 seeking liquidated damages in the amount of $11.9 million, along with unliquidated damages for any P&A Obligations incurred by XTO Energy relating to the Leases.

### IV. Plan Provisions relating to the Leases

14. On January 1, 2021, the Debtors filed their Joint Plan, along with a *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* (the "Disclosure Statement") [Docket No. 723]. Exhibit "F" to the Plan reflects in excess of 180 offshore leases which the Debtors intend to abandon. This includes the Leases transferred from XTO Energy to Fieldwood Offshore.

15. Section 5.08 of the Joint Plan provides as follows:

> **5.12** *Abandonment of Certain Properties*
>
> Immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements listed on the Schedule of Abandoned Properties are abandoned pursuant to the Plan without further notice to or order of the Bankruptcy Court pursuant to Sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to Section 365 of the Bankruptcy Code, as applicable. The Abandoned Properties shall not be allocated to nor vest in the Post-Effective Date Debtors or NewCo and its subsidiaries, including the Credit Bid Purchaser. Except as otherwise provided in this Plan or the Confirmation Order, the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties. Nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties.

See Plan [Docket No. 722], pp. 38-39, § 5.12 (emphasis added).

16. As the foregoing highlighted language of section 5.12 of the Joint Plan makes clear, the Debtors seek to abandon approximately 185 properties, including the Leases, along with their liability for "any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties." In other words, although Fieldwood Offshore agreed to perform all P&A Obligations associated with the Leases, the Debtors are now seeking to abandon the Leases and their obligation to perform such obligations through the Joint Plan. In addition to these contractual obligations, Debtors are obligated under applicable laws and regulations to perform these P&A Obligations as a part of the decommissioning of the Abandoned Properties.

17. In addition to seeking to abandon their environmental responsibilities pertaining to the Abandoned Properties, including their P&A Obligations relating to the Leases, the Debtors are also attempting to transfer such P&A Obligations to prior owners in the chain of title. Indeed, the Debtors' Disclosure Statement acknowledges that the Debtors are jointly and severally liable for any P&A liability to the United States government along with prior owners of the Abandoned Properties. Stated differently, the U.S. government can look to the Debtors' predecessors in interest to either perform the P&A Obligations or pay any P&A liability relating to the Abandoned Properties.

18. Specifically, section III(B)(1)(c) of the Disclosure Statement, provides:

> (c) Obligations to Third Parties
>
> Pursuant to BSEE regulations, the Company is jointly and severally liable for P&A obligations with all current and prior owners in the chain of title for all P&A liability that was accrued during the prior and current owners' ownership period. Therefore, in connection with many of its acquisitions of oil and gas properties, the Company has entered into various arrangements with the sellers that establish how the decommissioning of the subject oil and gas properties will be addressed in compliance with BOEM regulations, including (as discussed below) with Apache.

See Disclosure Statement [Docket No. 723], p. 17, § III(B)(1)(c) (emphasis added); see also, e.g., 30 C.F.R. §§ 250.146 and 250.1700-1754; *Noble Energy, Inc. v. Salazar*, 671 F.3d 1241, 1242-44 (D.C. Cir. 2012) (discussing the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq., and specifying the applicable regulations requiring the plugging, abandoning and decommissioning of OCS leases, which accrue the moment an entity drills a well or becomes a lessee, are discharged only when satisfied, and expressly survive termination, transfer or assignment of a lease). In other words, although the PSA provides that Fieldwood Offshore would be responsible for all P&A Obligations relating the Leases, federal regulations provide that prior owners in the chain of title nevertheless remain responsible to the U.S. government for any P&A Obligations associated with properties for which they are in the chain of title. *Id.* However, primary responsibility for the P&A Obligations rests with the Debtors.

19. The P&A Obligations the Debtors are seeking to avoid relating to the Abandoned Properties, and thereby transfer to prior owners in the chain of title, are substantial and believed to exceed hundreds of millions (if not billions) of dollars. Although the Debtors' Disclosure Statement provides that the Debtors possess $494 million in surety bonds relating to the Abandoned Properties (see Disclosure Statement, p. 17, § III(B)(1)(c)), the total amount of estimated P&A Obligations relating to the Abandoned Properties (and a breakdown of the surety bonds among such Abandoned Properties) is not disclosed. On information and belief, the amount of P&A Obligations relating to the Abandoned Properties will greatly exceed the amount of the Debtors' surety bonds. For example, with respect to the XTO Energy Leases, which constitute only a fraction of the total Abandoned Properties,[2] XTO Energy has received surety bonds in the amount of approximately $33 million and has already incurred more than $11 million in P&A liability, leaving only approximately $22 million under the surety bonds. However, the total P&A Obligations for the Leases included among the Abandoned Properties is believed

---

[2] The number of XTO Leases included among the Abandoned Properties is not entirely clear from the schedules to the Disclosure Statement but appear to constitute approximately 20 of the 185 total Abandoned Properties.

to be hundreds of millions of dollars.  Thus, although the Disclosure Statement does not provide a breakdown of the surety bonds as compared to the estimated P&A Obligations for each of the Abandoned Properties, it appears the Debtors' existing surety bonds will be woefully inadequate to satisfy their P&A Obligations relating to the Abandoned Properties.  The Joint Plan does not provide for the payment of any P&A Obligations for the Abandoned Properties that exceed the amount of the surety bonds.  Instead, the Debtors apparently expect predecessors in the chain of title of the Abandoned Properties (including XTO Energy) to bear these substantial costs.

20. The Debtors' Join Plan ignores the fact that, under longstanding authority, they cannot simply abandon properties under sections 105(a) and 554(a) of the Bankruptcy Code in violation of state and federal environmental regulations aimed at protecting the health and safety of the public and thereby avoid hundreds of millions of dollars in P&A Obligations. Moreover, the P&A Obligations pertaining to the Abandoned Properties, including the Leases, constitute administrative expenses of their bankruptcy estates under section 503(b)(1)(A) of the Bankruptcy Code.  Consequently, because the Debtors' Joint Plan does not adequately provide for the payment of all administrative expenses, including the costs associated with performing the P&A Obligations for the Abandoned Properties, the Joint Plan cannot be confirmed because it does not satisfy section 1129(a)(9)(A) and is not feasible under section 1129(a)(11) of the Bankruptcy Code.

21. Finally, the Joint Plan also contains broad release provisions, which include third-party releases of any claims against the "Apache PSA Parties."  Specifically, the Joint Plan defines the "Released Parties" as follows:

> ***Released Parties*** means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Consenting Creditors, (e) the Prepetition Agents, (f) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g) the Exit Facility Agents, (h) the Exit Facility Lenders, (i) the Backstop Parties, (j) the Apache PSA Parties, (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless

> of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

See Joint Plan [Docket No. 722], § 1.1, pp. 16-17 (emphasis added).

22. The "Apache PSA Parties," which are included among the "Released Parties," include Apache Corporation, Apache Shelf, Inc., Apache Deepwater, LLC, and Apache Shelf Exploration LLC. See Joint Plan [Docket No. 722], § 1.1, p. 2.

23. The "Releasing Parties" are defined in the Joint Plan as follows:

> *Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

See Joint Plan [Docket No. 722], § 1.1, p. 17. Although the definition of "Releasing Parties" references the ability of the holders of claims against the Debtors to "opt out" of granting the releases set forth in the Joint Plan, the process for opting out of the releases is not described in the Joint Plan and the "Opt-Out Form" to be provided to parties entitled to vote on the Joint Plan as described in the Disclosure Statement is not among the exhibits attached thereto.

24. The "**Releases by Holders of Claims or Interests**" is provided in section 10.7(b) of the Joint Plan, and provides for the release of any claims against the Released Parties relating in any manner to the transactions giving rise to any claim treated in the Joint Plan. Specifically, section 10.7(b) provides, in pertinent part, as follows:

> **THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED**, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE **BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER** … **BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART** … **THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN**, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY … **IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

See Joint Plan [Docket No. 722], § 10.7(b), pp. 62-63 (emphasis added). In other words, the Joint Plan seeks to release all claims against the Apache PSA Parties by any party holding a claim against the Debtors arising from or relating to any claim that is treated in the Joint Plan based on any act, transaction, agreement or other occurrence taking place on or before the effective date of the Joint Plan.

25. The Apache PSA Parties are in the chain of title on certain of the Abandoned Properties. As is discussed in greater detail below, because the Apache PSA Parties are in the chain of title of certain of the Abandoned Properties, they are responsible for P&A Obligations relating to those properties. The broad release of the Apache PSA Parties in the Joint Plan would have the effect of releasing all claims against the Apache PSA Parties pertaining to the Abandoned Properties, including claims for contribution for P&A Obligations. The Joint Plan cannot release the claims of third parties against the Apache PSA Parties relating to the Abandoned Properties, including any claims against the Apache PSA Parties by XTO Energy pertaining to the Leases. At present, the "Opt-Out Forms" are not provided and XTO Energy cannot evaluate the extent the "Opt-Out Forms" would preserve its claims against the Apache PSA Parties. As a result, XTO Energy expressly objects to the inclusion of the Apache PSA

Parties among the "Released Parties" and the inclusion of XTO Energy among the "Releasing Parties" under Article VIII of the Joint Plan.

### V. Arguments and Authorities

**A.  Standard of Review**

26.  The Debtors bear the burden of establishing that the Joint Plan complies with all of the elements of section 1129. *In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009) ("The Debtor, as the proponent of the [plan], has the burden of proving that all elements of 11 U.S.C. § 1129(a) are satisfied.").

27.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirming a chapter 11 plan of reorganization. 11 U.S.C. § 1129. The proponent of the plan must show, by a preponderance of the evidence, that each of the applicable requirements is met. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Sandridge Energy, Inc.*, No. 16-32488 (DRJ), 2016 Bankr. LEXIS 4622 at *34 (Bankr. S.D. Tex. Sep. 20, 2016). The burden of persuasion rests with the plan proponent. *Briscoe*, 994 F.2d at 1165; *In re Nuvira Hosp., Inc.*, No. 15-80432-G3-11, 2016 Bankr. LEXIS 4033 at *8 (Bankr. S.D. Tex. Nov. 21, 2016).

28.  As proponents of the Joint Plan, the Debtors must bear the burden of showing that the prerequisites to confirmation are satisfied. For the reasons described below, the Debtors cannot carry their burden.

**B.  Objections to Confirmation**

  **1.  *The Debtors Cannot Abandon their P&A Obligations relating to the Abandoned Properties in Violation of Applicable State and Federal Law***

29.  In the Disclosure Statement, the Debtors assert that the "Abandoned Properties are burdensome to the Debtors' estates." See Disclosure Statement [Docket No. 723], p. 35, VI(C). As a result, the Debtors seek to abandon such properties under section 105(a) and 554(a) of the Bankruptcy Code. The Debtors' Disclosure Statement does not articulate the

basis for their determination that the Abandoned Properties are burdensome or provide the total estimated costs to perform the P&A Obligations associated with the Abandoned Properties. However, as discussed above, XTO Energy believes the Debtors are seeking to abandon the Abandoned Properties, including the Leases, because such properties are subject to hundreds of millions (if not billions) of dollars in plugging, abandoning and decommissioning costs.

30. Although section 554(a) of the Bankruptcy Code generally permits debtors to abandon property that is either burdensome or of inconsequential value to the estate, a debtor is not immune from state and federal laws of general applicability and "cannot abandon contaminated estate property if state health or safety law prohibits such abandonment." *In re American Coastal Energy*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009) (Isgur, J.). Indeed, more than thirty years ago, in *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 106 S. Ct. 755, 88 L. Ed. 2d 859 (1986), the Supreme Court determined that section 554(a) does not preempt all state and local laws and, therefore, "the Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety." *Midlantic*, 474 U.S. at 506-07. Consequently, the Court held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Id.* at 507.

31. In this case, the Debtors presently own and operate deep water and shallow water offshore oil and gas properties located in the Gulf of Mexico. The oil and gas properties sought to be abandoned by the Debtors are believed to be subject to hundreds of millions of dollars in P&A Obligations. Moreover, the applicable federal and state environmental statutes and regulations requiring the plugging, abandoning and decommissioning of the Debtors' offshore oil and gas properties are reasonably designed to protect the public health or safety from imminent and identifiable harm. *E.g., American Coastal Energy,* 399 B.R. at 813 ("the applicable provisions of the Texas Natural Resources Code [requiring the plugging and remediation of wells] are reasonably designed to protect the public health and safety."). As a

result, the Count cannot permit the Debtors to abandon the Abandoned Properties without formulating conditions that will adequately protect the public's health and safety.

32. The Debtors' Joint Plan does not provide for payment of the costs associated with performing the P&A Obligations pertaining to the Abandoned Properties, including the Leases. Although the Disclosure Statement provides that the Debtors have obtained $494 million in surety bonds pertaining to the Abandoned Properties (See Disclosure Statement, p. 17, § III(B)(1)(c)), the Disclosure Statement does not provide the total estimated costs associated with performing the P&A Obligations on the Abandoned Properties. As a result, there is no way for the Court or parties in interest to know if the amount of the surety bonds will be adequate to satisfy the Debtors' total P&A Obligations. Likewise, the Disclosure Statement does not specify to which Abandoned Properties the surety bonds apply. As a result, there is no way for XTO Energy to determine whether the Debtors' surety bonds will be sufficient to satisfy the P&A Obligations associated with the abandoned Leases. As discussed above, however, XTO Energy believes the Debtors' surety bonds will not be sufficient to pay for the hundreds of millions (if not billions) in P&A Obligations relating to the Abandoned Properties. Consequently, unless the Debtors can demonstrate that the $494 million in existing surety bonds is sufficient to cover all of the P&A Obligations for the Abandoned Properties, or the Joint Plan is modified to provide for the performance of all such P&A Obligations by the Debtors, it cannot be confirmed in contravention of state and federal environmental regulations requiring the plugging, abandoning and decommissioning of the Abandoned Properties, including the Leases.

### 2. *The Debtors' Environmental Liabilities Constitute Administrative Expenses under Section 503(b)(1)(A)*

33. Section 503(b)(1)(A) defines an "administrative expense" to include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). "The Fifth Circuit has held that post-petition plugging and abandonment obligations are generally entitled to administrative priority." *American Coastal Energy,* 309 B.R. at 808 (*citing Tex. v. Lowe (In re*

*H.L.S. Energy Co., Inc.)*, 1551 F.3d 434, 437 (5th Cir. 1998)). Consequently, the Debtors' post-petition P&A Obligations constitute administrative expenses. *Id.*

34. In addition, even if the Debtors' P&A Obligations arise from prepetition conduct or leases, they are nevertheless entitled to administrative expense priority under section 503(b)(1)(A). Indeed, in *American Coastal*, this Court found that post-petition expenditures required to remedy prepetition environmental liabilities constitute administrative expenses under section 503(b)(1)(A). *American Coastal*, 309 B.R. at 817. The Court explained its rationale as follows:

> Because the debtor-in-possession is required to operate the estate in accordance with state law, post-petition expenditures necessary to bring the estate into compliance with the law are necessary for the debtor's rehabilitation. The need to bring the estate into compliance with state environmental and safety laws is no less significant than the need to maintain commercial relations with trade-creditors that provide the raw materials of the debtor's business. A debtor cannot operate an estate in violation of environmental and safety laws.

*Id.* at 816. As a result, because "***expenditures for remedying violations of environmental and safety laws are necessary to preserve the estate, regardless of whether liability for the state law violation first occurred before or after the filing of a bankruptcy petition***," the Court held that a claim for plugging costs was entitled to administrative priority. *Id.* at 816-17 (emphasis added).

35. In a subsequent opinion, *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 Bankr. LEXIS 1050 (Bankr. S.D. Tex. March 18, 2014), the Court again interpreted *Midlantic* as placing a duty upon the debtor to make the properties safe for abandonment under state law and concluded that expenditures for remedying violations of applicable environmental and safety laws were necessary to preserve the estate regardless of whether the liability for violation of the environmental laws first occurred before or after the filing of the bankruptcy petition. *Id*. at *21. The Court further found that "a debtor's obligation to expend funds to bring the estate into compliance with a state health and safety law does not change just because another entity has

the same obligation." *Id.* As a result, the Court found that a claim for post-petition "safe out" work on a production platform was entitled to administrative priority.

36. Consequently, under *Midlantic*, *Coastal America,* and *ATP Oil & Gas Co.*, all costs associated with the Debtors' P&A Obligations constitute administrative expenses entitled to administrative priority under section 503(b)(1)(A) regardless of the fact that such obligations may arise from prepetition contracts and/or other parties may be jointly and severally liable to the U.S. government for such P&A Obligations.

> **3. The Plan Does Not Satisfy Section 1129(a)(1)(A) or 1129(a)(11) of the Bankruptcy Code Because It Does Not Provide for the Payment of the Debtors' P&A Obligations as Administrative Expenses**

37. A chapter 11 plan must provide for the payment in full of all administrative expenses on the effective date of the plan, unless the holders of such administrative expenses agree to a different treatment. 11 U.S.C. § 1129(a)(9)(A); *In re American Coastal Energy*, 309 B.R. at 808. Section 2.1 of the Debtors' Joint Plan provides for the payment in full of all allowed administrative expenses on the later of (i) the effective date of the Joint Plan or (ii) the first business day that is thirty (30) days after the administrative claim becomes an allowed administrative claim. See Joint Plan [Docket No. 722], section 2.1, pp. 21-22. Moreover, section 5.12 of the Joint Plan provides that "Nothing in this Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties." See Joint Plan [Docket No. 722], section 5.12, pp. 38-39.

38. As an initial matter, although section 5.12 purports to preserve the United States' "rights to assert a claim" against the Debtors or Post-Effective Date Debtors (and all co-lessees and predecessors in interest) with respect to the Abandoned Properties, such preservation is illusory because the immediately preceding sentence provides that "the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising

from or relating to the post-Effective Date period with regards to the Abandoned Properties." In other words, although the United States' ability to "assert a claim" against the Debtors and Post-Effective Date Debtors for their P&A Obligations relating to the Abandoned Properties is purportedly preserved, the United States' ability to recover from the Debtors or Post-Effective Date Debtors on any such claim for P&A Obligations is precluded by the immediately preceding sentence in section 5.12 of the Joint Plan. As a result, this provision of the Joint Plan preserves nothing in relation to the Debtors and Post-Effective Date Debtors, and instead only preserves the United States' ability to pursue claims for the P&A Obligations against the Debtors' co-lessees and predecessors in interest. Indeed, in order for the purported carve-out for the United States' ability to **assert a claim** against the Debtors or Post-Effective Date Debtors for P&A Obligations to be meaningful, the Joint Plan must provide that nothing in the Joint Plan or Confirmation Order shall impair the Debtors' or the Post-Effective Date Debtors' **liability** to the United States for the Debtors' P&A Obligations relating to the Abandoned Properties.

39. Moreover, pursuant to the Court's *Order (i) Establishing Deadline to File Proofs of Claim, and (ii) Approving Form and Manner of Notice Thereof* [Docket No. 466], the deadline for governmental agencies to file a proof of claim does not expire until February 1, 2021 at 5:00 p.m. Although the estimated costs for the Debtors' P&A Obligations is not set forth in the Disclosure Statement, XTO Energy believes the cost to perform such P&A Obligations will be hundreds of millions of dollars. At the time of filing of this Objection, neither the United States nor any other state or local governmental entity has filed a proof of claim reflecting an estimate of the Debtors' P&A Obligations relating to the Abandoned Properties. Likewise, the Debtors have not yet filed any of their financial documents supporting the Joint Plan with their Disclosure Statement, including their liquidation analysis (Exhibit A to Disclosure Statement), valuation analysis (Exhibit B to Disclosure Statement), or Financial Projections (Exhibit C to Disclosure Statement). As a result, there is no way for the Court or parties in interest to know whether the Debtors and Post-Effective Date Debtors will be able to pay the Debtors' P&A Obligations

relating to the Abandoned Properties as an administrative expense either on the effective date of the Joint Plan or within 30 days of such administrative expenses being allowed by the Court.

40. Unless the Joint Plan is amended to preserve the Debtors' and the Post-Effective Date Debtors' liability to the United States (or any other governmental entity) for the P&A Obligations relating to the Abandoned Properties, and the Debtors' financial projections in support of the Plan clearly demonstrate the Debtors' or Post-Effective Date Debtors' ability to satisfy the hundreds of millions of dollars owed by the Debtors for P&A Obligations for the Abandoned Properties as administrative expenses, the Joint Plan fails to satisfy section 1129(a)(9)(A) of the Bankruptcy Code and cannot be confirmed. The Joint Plan also would not be feasible under section 1129(a)(11) of the Bankruptcy Code because it fails to demonstrate that confirmation "is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan." 11 U.S.C. § 1129(a)(11). Consequently, unless the Joint Plan is amended to clearly provide for the payment of all of the Debtors' P&A Obligations relating to the Abandoned Properties as administrative expenses, and the Debtors' financial projections demonstrate the Debtors' and Post-Effective Date Debtors' ability to pay such P&A Obligations, the Joint Plan cannot be confirmed.

### 4. *The Joint Plan includes Improper Third Party Releases*

41. The Fifth Circuit has expressly held that section 524(e) prohibits non-debtor discharges or non-consensual third-party releases under a plan. *See Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 761 (5th Cir. 1995) ("[B]ecause the permanent injunction as entered improperly discharged a potential debt of CIGNA, a nondebtor, the bankruptcy court exceeded its powers under § 105."); *see also Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 590 (5th Cir. 2008) (holding that section 524(e) prohibits non-debtor discharges and finding that a plan may not release third-party claims against a non-debtor).

42. An exception exists for statutory committees, their members, and their professionals, who may be released only to the extent of their qualified immunity from negligent acts or omissions, during the pendency of a chapter 11 case, that fall within the scope of their section 1103(c) duties. *See In re Bigler LP,* 442 B.R. 537, 546 (Bankr. S.D. Tex. 2010); and *In re Pilgrim's Pride Corp.,* Case No. 08-45664, 2010 Bankr. LEXIS 72, at *13 (Bankr. N.D. Tex. 2010) ("[C]ommittees and their members are entitled to qualified immunity for any acts or omissions during a chapter 11 case that were within the scope of their duties.").

43. Based on this principle, courts in the Fifth Circuit have consistently stricken provisions that extend non-consensual releases to parties other than debtors, reorganized debtors, statutory committees, statutory committee members, and statutory committee professionals. *See In re Pac. Lumber Co.*, 584 F.3d at 252-53 (striking non-debtor releases, including releases of the debtors' officers and directors, except with respect to creditors' committee and members); *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.),* Case No. 17-1958, 2018 U.S. Dist. LEXIS 179769, at *61-69 (N.D. Tex. Oct. 19, 2018) (reversing bankruptcy court's approval of injunction and exculpation provisions that released non-debtor third parties, such as the debtor's parent company, officers, and directors").

44. As described above, the release provisions in section 10.7(b) of the Joint Plan would release the claims of any party against the Apache PSA Parties for P&A Obligations relating to the Abandoned Properties, including any claims by XTO Energy against the Apache PSA Parties for P&A Obligations relating to the Leases. Although the Joint Plan and Disclosure Statement reference the ability for the holder of claims against the Debtors to "opt out" of the releases, the "Opt-Out Forms" are not provided and XTO Energy cannot evaluate the extent the "Opt-Out Forms" would preserve its claims against the Apache PSA Parties. Consequently, as described on page 11 of the Disclosure Statement, by this Objection, XTO Energy hereby opts out of the releases contained in Article VIII of the Joint Plan and expressly objects to (i) the

inclusion of the Apache PSA Parties among the "Released Parties," and (ii) the inclusion of XTO Energy as a "Releasing Party" under the provisions contained in Article VIII of the Joint Plan.

## VI. Reservation of Rights

45. This Objection is submitted without prejudice to, and with a full express reservation of, the rights of XTO Energy to supplement and amend this Objection and to introduce evidence at any hearing relating to this Objection, and to further object to the Joint Plan on any and all grounds. Moreover, XTO Energy reserves its right to invoke each issue, fact, legal basis, and matter identified in the Objection as a basis for denying confirmation of the Joint Plan pursuant to any applicable provision of the Bankruptcy Code, regardless of the particular subsection of this Objection in which the issue is raised.

DATED: January 12, 2021

Respectfully Submitted,

/s/ J. Robert Forshey
J. Robert Forshey
State Bar No. 07264200
Suzanne K. Rosen
State Bar No. 00798518
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
bforshey@forsheyprostok.com
srosen@forsheyprostok.com
llankford@forsheyprostok.com

ATTORNEYS FOR XTO OFFSHORE, INC., HHE ENERGY COMPANY, AND XH LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing objection has been served upon all parties receiving electronic notice via the Court's CM/ECF system on January 12, 2021.

/s/ J. Robert Forshey
J. Robert Forshey

L:\BFORSHEY\XTO - Fieldwood Energy (CrR) #6145\Pleadings\XTO Objection to Plan 1.12.2021.docx