IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| FIELDWOOD ENERGY, LLC, et al., | § | CASE NO. 20-33948 (MI) |
| | § | |
| Debtors. | § | (Jointly Administered) |

### OBJECTION OF JX NIPPON OIL EXPLORATION (U.S.A.) LIMITED TO DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS AFFILIATED DEBTORS AND JOINDER IN THE OBJECTION OF XTO OFFSHORE, INC., HHE ENERGY COMPANY AND XH LLC, OF CHEVRON U.S.A., INC. AND NOBLE ENERGY, INC., AND OF LEXON INSURANCE COMPANY, IRONSHORE INDEMNITY INC. AND IRONSHORE SPECIALTY INSURANCE COMPANY

NOW INTO COURT, through undersigned counsel, comes JX Nippon Oil Exploration (U.S.A.) Limited ("Nippon"), which files this Objection to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and Joinder in the Objection of XTO Offshore, Inc., HHE Energy Company and XH LLC, of Chevron U.S.A., Inc. and of Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company as follows.

### INITIAL SUMMARY OF OBJECTIONS

While the Debtor filed hundreds of pages of documents with the Disclosure Statement, among other topics, the Disclosure Statement and Plan do not provide adequate information regarding:

1. The allocation of executory contracts and assets of the Debtors;

2. The allocation of cash under the Plan and an explanation of how it will be used;

3. The basis for releases to be given to third parties;

4. The status of the Debtors' leases;

5. How the Debtors can allocate the same leases to different new entities or abandon the same leases that will also be allocated to a new entity;

6. How decommissioning is to occur for all transferred properties including the cost and time required to decommission each property; and

7. The liquidation analysis of Estate assets.

The Debtors have offered access to information but requires parties enter into Stipulations regarding the confidentiality and use of the information. Creditors and parties-in-interest are not required to review information distinct from the Disclosure Statement and Plan to determine their treatment. Such information is required to be included in the Disclosure Statement and Plan. Although the Debtors have indicated an intent to file an amended disclosure statement, such has not occurred.

## THE FIELDWOOD BANKRUPTCY

1. On August 3, 2020 and August 4, 2020 (the "Petition Date"), the Debtors (defined herein) each filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Case").

2. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors-in-possession pursuant to 11 U.S.C. §1107 and 1108(a).

3. On January 1, 2021, the Debtors filed their Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors (P-722) (the "Disclosure Statement") and Disclosure

Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors (P-723) (the "Plan").

4. The Plan provides that the oil and gas leases in which Debtors currently hold an interest will be transferred in four separate ways. Oil and gas leases and other interests to be transferred to Credit Bid Purchaser which are listed on Exhibit C, to be transferred to FWE I, which are listed on Exhibit D, being the Legacy Apache Properties, to be transferred to FWE III, which are listed on Exhibit E, being the properties not conveyed to the Credit Bid Purchaser, to FWE I or do not comprise the Abandoned Properties, and to be transferred to the Predecessors, which are listed on Exhibit F, being the Abandoned Properties (as defined in the Disclosure Statement and Plan).

5. Since the filing of the Disclosure Statement and Plan several objections to the Disclosure Statement and Plan have been filed including the following:

    a. XTO Offshore, Inc., HHE Energy Company and XH LLC, (collectively "XTO") filed that certain Objection to the Plan (P-759) and Objection to the Disclosure Statement to the Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors (P-900) (collectively the "XTO Objection");

    b. Chevron U.S.A. Inc. and Noble Energy, Inc.'s Objection to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Proposed Voting and Tabulation Procedures, (III) Procedures for Executory Contract Assumption and Assignment, and (IV) Procedures for Assignment and Transfer of Property of the Estate (P-880) (the "Chevron Objection")

    c. Objection by Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company to the Motion of Debtors for Entry of an Order (I)

Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II Establishing Solicitation and Voting Procedures; (III) Scheduling confirmation Hearing; (IV) Establishing Notice and Objection Procedures and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of the Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better bids; and *(VIII) Granting related Relief. (P932) (the "Lexon Objection");

6. Nippon joins in the XTO Objection, Chevron Objection and Lexon Objection and further objects to the third party releases referenced therein, as well as to the inadequacy of information in the Disclosure Statement and Plan especially with regard to the lack of information regarding the transfer of the Debtors' properties contemplated by the Plan, the impact of releases and transfers of property on any claims third parties may have against non-Debtors, the intended use of Debtors' funds, the lack of information regarding the purpose and funding for FWEIII (defined below), the impact of releases and transfers of property on bonds to pay for decommissioning obligations, the impact of releases of liens on the rights of third parties and the impact of transfers on agreements with the Debtors, among other things.

## JURISDICTION AND VENUE

7. This Honorable Court has jurisdiction to hear and determine the merits of this Objection which is a core proceeding under 28 U.S.C. §§157 and 1334. Venue is properly under 28 U.S.C. §157.

4

## NIPPON'S INTEREST

8. Nippon is a predecessor in title to interests in various offshore leases now owned by one or more of Dynamic Offshore Resources NS, LLC; Fieldwood Energy LLC; Fieldwood Energy Inc.; Fieldwood Energy Offshore LLC; Fieldwood Onshore LLC; Fieldwood SD Offshore LLC; Fieldwood Offshore LLC; FW GOM Pipeline, Inc.; GOM Shelf LLC; Bandon Oil and Gas GP, LLC; Bandon Oil and Gas, LP; Fieldwood Energy SP LLC; Galveston Bay Pipeline LLC; and Galveston Bay Processing LLC (each a "Debtor" and, collectively, the "Debtors").

9. Specifically, pursuant to a Purchase and Sale Agreement, dated as of August 5, 2010, effective January 1, 2010, as amended by Amendment to Purchase and Sale Agreement, dated August 30, 2010 (the "2010 Nippon-Black Elk PSA") Nippon, formerly known as Nippon Oil Exploration U.S.A. Limited, sold to Black Elk Energy Offshore Operations, LLC ("Black Elk") a group of oil and gas leases and related assets (including rights-of-way and surface leases) in the Gulf of Mexico and/or adjacent states.

10. Pursuant to the 2010 Nippon-Black Elk PSA, Nippon, as assignor, and, Black Elk, as assignee, also executed an Assignment and Bill of Sale (the "Nippon ABOS") effective as of January 1, 2010, wherein, among other matters, Nippon conveyed to Black Elk all of its right, title and interest in and to the assets, and Black Elk assumed all of Nippon's obligations and liabilities, including P&A Obligations (as defined in the 2010 Nippon-Black Elk PSA), associated with those assets, regardless of when the obligations arose, all as more particularly described therein. Black Elk further agreed to defend and indemnify Nippon from and against all liabilities arising from, based upon, related to or associated with the assumed obligations and liabilities.

11. In connection with the sale and Black Elk's assumption of all P&A Obligations associated with the assets, various sureties executed and issued numerous performance bonds on

behalf of Black Elk, as principal, in favor of Nippon, as obligee, to secure performance of the P&A Obligations (the "Black Elk Bonds"). The Black Elk Bonds were in addition to any supplemental bonds required to be posted by Black Elk with the Bureau of Ocean Energy Management or its predecessor agencies ("BOEM") with respect to the assets.

12. Subsequently, by Purchase and Sale Agreement dated March 13, 2014, as amended by First Amendment to Purchase and Sale Agreement, dated effective March 1, 2014 (the "2014 Black Elk-Fieldwood PSA," attached as Exhibit 1, *en globo*), Black Elk agreed to convey to SandRidge Energy Offshore, LLC (now known as Fieldwood Energy Offshore LLC) ("Fieldwood") various properties more particularly described therein, including interests in the following federal offshore leases:

> GI 116 (Hickory) Field – OCS-G 13943 (GI 110), OCS-G 13944 (GI 116)
>
> VK 780 (Specter) – OCS-G 13673 (VK 779), OCS-G 6884 (VK 780), OCS-G 15436 (VK 824)
>
> WD 133 Field – OCS-G 19843 (WD 121), OCS-G 13645 (WD 122)

(collectively, the "Nippon Legacy Leases"), which had previously been transferred by Nippon to Black Elk pursuant to the terms of the 2010 Nippon-Black Elk PSA.

13. In addition to acquiring from Black Elk all of its interests in the Nippon Legacy Leases, Fieldwood, under the 2014 Black Elk-Fieldwood PSA, assumed certain obligations of Black Elk related to the Nippon Legacy Leases. These obligations included, among others, the P&A Obligations regarding the Nippon Legacy Leases, as well as regarding all contracts, agreements and instruments by which the Nippon Legacy Leases are bound, including the 2010 Nippon-Black Elk PSA.

6

14. Upon the closing of the transactions provided for in the 2014 Black Elk-Fieldwood PSA (the "Black Elk-Fieldwood Sale Transaction"), Black Elk and Fieldwood executed that certain Assignment, Conveyance and Bill of Sale, dated March 13, 2014, effective March 1, 2014, wherein Black Elk conveyed to Fieldwood its interest in the Nippon Legacy Leases, among other properties provided for in the 2014 Black Elk-Fieldwood PSA (the "Closing Conveyance," attached as Exhibit 2). The Closing Conveyance was filed of record to place third parties on notice as to the change of ownership of the Nippon Legacy Leases and other affected properties. Moreover, the transfers of the Nippon Legacy Leases were approved in due course by BOEM.

15. After the closing of the Black Elk-Fieldwood Sale Transaction, Nippon, Black Elk and Fieldwood entered into that certain Assumption Agreement, dated July 8, 2014 (the "2014 Fieldwood Assumption Agreement," attached as Exhibit 3), wherein Nippon, pursuant to express provisions set forth in the 2014 Nippon-Black Elk PSA, agreed to accept from Fieldwood new performance bonds issued by U.S. Specialty Insurance Company, namely U.S.S.I.C. Bond Nos. B008837, B008838 and B008839, in order to secure P&A Obligations with respect to the Nippon Legacy Leases, and in replacement of two Black Elk bonds issued by Westchester Fire Insurance Company and one Black Elk Bond issued by Travelers Casualty and Surety Company of America, all issued in connection with the closing of the 2010 Nippon-Black Elk PSA. Copies of U.S.S.I.C. Bond Nos. B008837, B008838 and B008839 (the "Fieldwood Replacement Bonds") are attached as exhibits to the 2014 Fieldwood Assumption Agreement.

16. In the 2014 Fieldwood Assumption Agreement, Fieldwood, among other things: (a) assumed and agreed to fulfill, perform, pay and discharge (or cause to be fulfilled, performed, paid or discharged) all P&A Obligations associated with the Nippon Legacy Leases; (b) agreed to defend, indemnify, hold harmless and forever release Nippon and its affiliates, and all of their

7

respective shareholders, partners, members, directors, officers, managers, employees, agents and representatives, from and against any and all Liabilities (as defined in the 2010 Nippon-Black Elk PSA) arising from, based upon, related to or associated with such P&A Obligations; and (c) assumed all of Black Elk's obligations and responsibilities with respect to the terms and provisions of Section 6.4(b) through (i) of the 2010 Nippon-Black Elk PSA, regarding, among other obligations, periodic adjustment of the Fieldwood Replacement Bonds based on estimates of the costs of P&A Obligations.

17. The 2014 Fieldwood Assumption Agreement further provides that any assignee of Fieldwood's interests must assume, in writing, all of Fieldwood's obligations under the 2014 Fieldwood Assumption Agreement.

18. Except with respect to oil and gas leases bearing serial number OCS-G 02193 (MP 140) and OCS-G 19761 (VR 196), Nippon, prior to its sale to Black Elk pursuant to the 2010 Nippon-Black Elk PSA, owned an interest in the properties referenced below (together with associated assets) which are described by Debtors in one or more of Exhibits C, D and F to the Disclosure Statement:

    a)      EXHIBIT C - Leases Related to Credit Bid Purchaser Oil & Gas Leases

- G13943 - GI 110
- G13944 - GI 116
- G01192 - SM 41

    b)      EXHIBIT D - Leases Related to Fieldwood Energy I LLC ("FWE I") Oil & Gas Interests

- G01610 – SP 65
- G03959 – SA 13
- G13943 – GI 110
- G13944 – GI 116

- G02193 – MP 140[1]
- G01901 – SP 64
- G01966 – MP 153
- G01967 – MP 152
- G06884 – VK 780
- G15436 – VK 824
- G13645 – WD 122
- G19843 – WD 121
- 00680 – WC 20
- G02439 – EC 335

c) EXHIBIT F - Leases Related to Abandoned Properties

- G19761 -VR 196
- G19760 -VR 207[2]
- G19843 -WD 121
- G13645 -WD 122

As reflected in the above listing, several of the listed properties (namely: GI 110, GI 116, WD 121 and WD 122) are described on more than one exhibit.

## APPLICABLE LAW

19. The purpose of a disclosure statement is to provide "adequate information" for creditors to make an informed evaluation of a plan of reorganization. 11 U.S.C., § 1125; *See In re Texas Extrusion,* 844 F.2d. 1142, 1157 (5th Cir.), *cert. denied,* 488 U.S. 926 (1988); *In re Dakota Rail, Inc.,* 104 B.R. 138 (Bankr. D. Minn. 1989). "The primary purpose of a disclosure statement is to give creditors information necessary to decide whether to accept the plan." *Id.* at 142. A disclosure statement must contain "information of a kind, and in sufficient detail ... that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . ." 11 U.S.C. § 1125(a)(1). A disclosure

---

[1] For clarification, this lease is co-owned by Fieldwood Energy LLC (65%) and Nippon (35%).

[2] For further clarification, this lease, prior to its relinquishment effective as of July 27, 2009, was owned by, among other parties, Nippon Oil Exploration U.S.A. Limited (predecessor to Nippon) and by Beryl Oil and Gas LP.

statement that omits material facts cannot be approved. *See In re Unichem Corp.,* 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987). A disclosure statement does not meet the "adequate information" standard of Section 1125 if it fails to, "contain simple and clear language delineating the consequences of the proposed plan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

20. The determination of what is adequate information is subjective and is made on a case by case basis. *In re Texas Extrusion Corp.,* 844 F.2d 1142, 1157 (5th Cir. 1988); *Menard Sanford v. Mabey (In re A. H. Robins Co.),* 880 F.2d 694, 696 (4th Cir. 1989). Courts and commentators have provided lists of the type of information that should be addressed in a disclosure statement to provide adequate information, including: (a) a description of the available assets and their value, (b) the anticipated future of the company, (c) the source of information stated in the disclosure statement, (d) the present condition of the debtor while in Chapter 11, (e) the future management of the company, including qualifications and compensation, (f) financial information data, evaluations or projections relevant to the decision to accept or reject the plan, and (g) information relevant to the risks posed to creditors under the plan. *In re Microwave Products of America, Inc.*, 100 B.R. at 378 (citing *In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 198), and *In re Stanley Hotel, Inc.*, 13 B.R. 926 (Bankr. D.C. Colo. 1981).[3]

---

[3] *See also, In re United States Brass Corp.,* 194 B.R. 420 (Bankr. E.D. Tex. 1996); *In re Scioto Valley Mortgage Co.,* 88 B.R. 168 (Bankr. S.D. Ohio 1988). The relevant factors for evaluating the adequacy of a disclosure statement may include: (1) The events which lead to the filing of the bankruptcy petition; (2) A description of the available assets and their value; (3) The anticipated future of the company; (4) The source of information stated in the disclosure statement; (5) A disclaimer; (6) The present condition of the debtors while in chapter 11; (7) The scheduled claims; (8) The estimated return to creditors under a chapter 7 liquidation; (9) The accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) The future management of the debtors; (11) The chapter 11 plan or a summary thereof; (12) The estimated administrative expenses, including attorneys' and accountants' fees; (13) The collectability of accounts receivable; (14) Financial information, data, valuations, or projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (15) Information relevant to the risks posed to creditors under the plan; (16) The actual or projected realizable value from recovery of

10

21. A creditor cannot make an informed judgment about whether to vote for or against the Plan unless the creditor and all other creditors and interest holders know how likely the Plan is to succeed. In short, the creditor must know if the Plan is feasible. *Pizza of Haw., Inc. v. Shakey's Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).

**Objections**

A. **The Lists of Oil and Gas Leases and Related Agreements to be Transferred Are Unclear and Duplicative**

The Debtor lists properties it intends to transfer or abandon in Exhibits C – F to the Disclosure Statement, as well as on exhibits to the Plan of Merger. As shown by the property listing set forth in in paragraph 18 above pertaining to interests now or formerly owned by Nippon, some properties are listed on more than one exhibit. For example, Nippon has interests in G13943 – GI 110 and in G13944 – GI 116 which are listed on both Exhibit C and Exhibit D. As a result, Nippon cannot determine, with certainty, if the properties in which it has or had an interest are to be transferred to the Credit Bid Purchaser or to FWE I, although it appears that the transferee will be the Credit Bid Purchaser with respect to the interest formerly owned by Nippon. Additionally, the Debtor lists G13645 – WD 122 and G19843 – WD 121 on both Exhibit D and Exhibit F, thus Nippon cannot determine with certainty if the interest in those properties that Nippon formerly owned is to be transferred to FWE I or abandoned. An undivided interest in WD 121 and WD 122 is owned by Fieldwood Energy LLC and a separate undivided interest is owned by Fieldwood Energy Offshore LLC. If the interest owned by Fieldwood Energy LLC is through the divisive merger to be owned by FEW I and the interest owned by Fieldwood Energy Offshore LLC is to be abandoned, that result would not appear to be likely or reasonable. As a result, it is not certain

---

preferential or otherwise voidable transfers; (17) Litigation likely to arise in a nonbankruptcy context; (18) Tax attributes of the debtors; and (19) The relationship of the debtors with any affiliates. *Id.*

11

as to whether the Debtors intend to abandon certain area and/or depths with respect to WD 121 and WD 122 and transfer the remaining area and/or depths to FWE I. Accordingly, the Disclosure Statement is unclear and confusing as to what the Debtor's intention is as to these properties and lacks adequate information.

The particulars regarding the transfer of properties are not provided in the Disclosure Statement and Plan. For example, where the Debtors list properties on multiple exhibits is the intent that different interests, areas or depths are to be conveyed to different parties? In addition, will designation of operator forms be required from other parties to be filed with and approved by regulatory agencies to accomplish such successor designation? More specific information is necessary to provide adequate information on what is to be conveyed and how it is to be accomplished.

Furthermore, the Disclosure Statement and Plan fail to list with specificity which agreements are being assumed and assigned or otherwise transferred under the Plan. For example, while the Plan of Merger Exhibits I-F list contracts to be transferred to FWE I, the list does not adequately identify the contracts being transferred, as the listing does not indicate which lease or field to which the contract applies, despite the practice of many oil and gas companies to maintain records based on leases or files. The chart does not indicate to which lease or field the listed contract applies despite the practice of many oil and gas companies to maintain records based on leases or field. This same lack of specificity applies to all of the exhibits to the Plan of Merger and makes it difficult in some cases and impossible in others for a party-in-interest to determine the treatment of agreements or properties in which it has an interest. Accordingly, the Disclosure Statement lacks adequate information.

12

**B.     The Releases are Unclear as to the Retention of Bonds**

As noted in the XTO Objection, as well as other objections, the Plan provides third-party releases including for the "Apache PSA Parties" who are in the chain of title of numerous properties being transferred or abandoned, and as such are liable to other parties in the chain of title. See Plan, Released Parties, p. 16 – 17. While the Plan allows an opt out of the Releases, the Disclosure Statement and Plan fail to provide how parties opt out should the Court determine such releases are proper (which is disputed). As the "Opt-Out Forms" are not provided and the process is not provided, the Disclosure Statement and Plan do not provide adequate information regarding the Releases and Opt-Out process. Nippon further objects to its inclusion under the definition of the "Releasing Parties" under the Plan.

Furthermore, while the Plan provides for releases for the Debtors and Third Parties, the effect of the following provision is unclear:

> NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES ABILITY TO DRAW ON THE DECOMMISSION SECURITY, IN ANY RESPECT.

See Plan, p. 63. It is unclear whether this provision only applies to Apache or protects all Decommissioning Security. The Plan and/or the confirmation order need to be explicit as to the Debtors' continued liability for its decommissioning obligations to the extent that the bonds in favor of Nippon, and likely others, provide coverage for the Debtors' liability for decommissioning obligations. This liability needs to be clear as to both pre- and post-Effective Date liability to ensure the retention of "DECOMMISSIONING SECURITY." Accordingly, the Disclosure Statement lacks adequate information regarding the preservation of the Debtors' surety program for payment of Decommissioning obligations.

13

C.  **The Abandonment Provisions of the Disclosure Statement Do Not Provide Adequate Information**

The Plan provides for the abandonment of certain Abandoned Properties listed on Exhibit F to the Disclosure Statement. As set forth in the XTO Objection, the Debtor is seeking to improperly discharge all responsibilities and obligations regarding these properties and transfer obligation to unnamed prior owners of the Abandoned Properties.

Nippon further submits that the Disclosure Statement and Plan lack adequate information to the extent that the abandonment provisions fail to provide any information as to what is meant by the "safe return of the Abandoned Properties to the Predecessors" (Page 9 of Disclosure Statement). The Debtors provide no information on which Predecessors Debtors intend will receive such Abandoned Properties, what occurs if the prior owner does not accept the property, what occurs if the prior owner is no longer operating or is no longer in existence, how abandonment to a prior owner is to be determined or how liability is apportioned, or who will operate the property in connection with abandonment activities and how will such operator be appointed, designated and/or approved by third parties or appropriate governmental entity. The Debtors also do not provide any information regarding the status of the properties to be abandoned on Exhibit F or BOEM's and BSEE's role regarding the proposed "return" of properties to former parties in the chain of title. While Exhibit I-A (i) to the Plan of Merger lists Lease and Blocks with lease status in no particular order, it does not provide information on that chart to correspond with Exhibits C – F of the Disclosure Statement. Accordingly, all information regarding each lease should be set forth in a single location in an organized manner so that all information for each lease can be found in a single place rather than requiring parties to search through almost 1,000 pages to attempt to find information regarding each lease. Accordingly, the Disclosure Statement provides inadequate, confusing information regarding the treatment of oil and gas leases and the process for

abandonment. In addition, as set forth in the XTO Objection, the proposed abandonment of properties is improper.

D. **The Disclosure Statement Lacks Adequate Information Regarding How the 2014 Fieldwood Assumption Agreement and Fieldwood Replacement Bonds Naming Nippon as Obligee will be Treated under the Plan**

The Fieldwood Replacement Bonds and the 2014 Fieldwood Assumption Agreement are not addressed in the Disclosure Statement and Plan. The 2014 Fieldwood Assumption Agreement executed by Debtors provides that no further transfer or assignment of any interest in the leases will be made "unless such transfer or assignment is expressly made subject to the terms and provisions of this Agreement and such transferee or assignee assumes, in writing, all of Fieldwood's obligations set forth hereunder." The Disclosure Statement and Plan fail to indicate whether the Credit Bid Purchaser or FWE I will acquire the interests of the Debtors' assets subject to the 2014 Fieldwood Assumption Agreement and assume the obligation thereunder. The Disclosure Statement and Plan fail to provide how bonds are to be maintained post-confirmation and, therefore, lack adequate information.

E. **The Disclosure Statement, Plan and Exhibits Do Not Provide Clear Notice of Changes to Parties in Interests' Rights**

The Disclosure Statement, Plan and Exhibits include almost 1,000 pages which do not clearly advise parties of changes in their rights. The documents list hundreds of agreements but do not identify which agreements are related to properties being transferred, whether the agreements are being assigned or terminated and what, if any, alterations are to be made to those agreements if transferred. Furthermore, the Disclosure Statement, Plan and Exhibits indicate that changes regarding possible alterations of rights may continue to be altered until confirmation.[4]

---

[4] Nippon reserves its right to assert any setoff, recoupment or other claim it has against the Debtors.

15

Such provides inadequate information for parties to make an informed decision regarding the Plan. More specificity is required for the Disclosure Statement to provide adequate information.

**F.      Joinder in Objections**

To the extent that the XTO Objection, Chevron Objection, Lexon Objection and other objections filed in the Bankruptcy Case do not expressly conflict with the objections contained herein, Nippon joins and incorporates those objections and arguments as though fully set forth herein.

**G.      Reservation of Rights**

Nippon reserves its right to join objections filed by other parties to the Disclosure Statement and Plan and to object to any revisions, changes, supplements or amendments to the Disclosure Statement and Plan and to exhibits or other pleadings related to the Disclosure Statement and Plan filed by the Debtors after the deadline for objections.

Nothing contained herein shall be considered a waiver of Nippon's right to file an administrative claim or considered a waiver of rights or claims that Nippon might have against the Debtors, their subsidiaries and affiliates.  This Objection is not intended as and shall not be construed as

(1) an admission of liability or waiver of any defenses or limitations of any rights of Nippon with respect to any claims; or

(2) a waiver or release of any rights or election of remedies.

WHEREFORE, JX Nippon Oil Exploration (U.S.A.) Limited prays that this Honorable Court sustain this Objection to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors and Joinder in the Objection of XTO Offshore, Inc., HHE Energy Company and XH LLC, of Chevron U.S.A., Inc. and Noble Energy, Inc., and of Lexon

Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company, order the amendment of the Disclosure Statement and Plan to provide adequate information and for such other and further relief as this Court deems proper.

    Dated: March 11, 2021

                      Respectfully submitted,

                      CARVER, DARDEN, KORETZKY, TESSIER,
                      FINN, BLOSSMAN & AREAUX L. L. C.

                      By: /s/ Leann O. Moses
                      Leann Opotowsky Moses (TX # 15291750)
                      Peter J. Segrist (LA # 35314)
                      1100 Poydras Street, Suite 3100
                      New Orleans, Louisiana 70163
                      Telephone: (504) 585-3800
                      Telecopier: (504) 585-3801
                      moses@carverdarden.com
                      And
                      GIEGER, LABORDE & LAPEROUSE, L.L.C.

                      By: /s/ Lambert M. Laperouse
                      Lambert M. Laperouse (TX # 24082214)
                      5151 San Felipe, Suite 750
                      Telephone: (832) 255-6002
                      Facsimile: (832) 255-6001
                      laperouse@glllaw.com

                      **Counsel for**
                      **JX NIPPON OIL EXPLORATION (U.S.A.) LIMITED**

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing pleading has been served on those parties receiving electronic notification via the Court's CM/ECF System on March 11, 2021.

                      /s/ Leann O. Moses

17