**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE:<br><br>**FIELDWOOD ENERGY LLC, *et al.*,**<br><br>Debtors.[1] | Case No. 20-33948 (MI)<br><br>(Chapter No. 11)<br><br>(Jointly Administered) |

**OBJECTION AND JOINDER OF SHELL OFFSHORE, INC. TO THE (A) OBJECTION OF CHEVRON U.S.A., INC. AND NOBLE ENERGY, INC., (B) OBJECTION OF XTO OFFSHORE, INC., HHE ENERGY COMPANY, AND XH LLC, (C) OBJECTION OF MARATHON OIL COMPANY, (D) OBJECTION OF ENI US OPERATING CO. INC. AND ENI PETROLEUM US LLC, AND (E) OBJECTION OF SEA ROBIN PIPELINE COMPANY, LLC, WEST CAMERON DEHYDRATION COMPANY, L.L.C., FLORIDA GAS TRANSMISSION, LLC, STINGRAY PIPELINE COMPANY, L.L.C., TRUNKLINE GAS COMPANY, LLC, AND TRUNKLINE FIELD SERVICES LLC (COLLECTIVELY, "ENERGY TRANSFER"), AND (F) OBJECTION OF FREEPORT-MCMORAN OIL & GAS LLC AND MCMORAN OIL & GAS LLC TO THE DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY, LLC AND ITS AFFILIATED DEBTORS**
**[RELATES TO DKT. NOS. 722, 723, 724, 880, 900, 924, 937, 954, 978, 1020 AND 1022]**

Shell Offshore Inc. ("Shell")[2] a creditor and party-in-interest in the above-captioned, jointly administered bankruptcy cases (the "Bankruptcy Cases"), hereby files this objection (the "Objection") and joinder incorporating by reference and adopting (a) *Chevron U.S.A. and Noble*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

[2] Capitalized terms not otherwise defined herein shall maintain the definitions ascribed to them in the Disclosure Statement and Plan.

*Energy, Inc.'s Objection to Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Proposed Voting and Tabulation Procedures, (III) Procedures for Executory Contract Assumption and Assignment, and (IV) Procedures for Assignment and Transfer of Property of the Estate* [Dkt. No. 880] (the "Chevron Objection"); the (b) *Objection of XTO Offshore, Inc. HHE Energy Company, and XH LLC to the Disclosure Statement for the Joint Chapter 11 Plan of Fieldwood Energy, LLC and its Affiliated Debtors* [Dkt. No. 900] (the "XTO Objection"); (c) *Marathon Oil Company's Objection to the Debtors' Disclosure Statement, Procedures for Assumption of Executory Contracts and Transfer of Property of the Estate* [Dkt. No. 924] (the "Marathon Objection"); the (d) *Objection of Eni US Operating Co. Inc. and Eni Petroleum US LLC to Approval of Debtors' Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization* [Dkt. No. 937] (the "Eni Objection"); (e) *Energy Transfer's Objection to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 954] (the "Energy Transfer Objection"); and (f) *Freeport-McMoran Oil & Gas LLC and McMoran Oil & Gas LLC's Objection to Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 978] (the "McMoran Objection"). In support of this Objection, and joinder, Shell respectfully states as follows:

## BACKGROUND

**A.     Shell's Relationship with the Debtors**

1.     Shell and other related affiliates are in chain of title with Fieldwood Energy LLC and its affiliates (collectively, "Fieldwood" or "FWE") either directly or by virtue of divesture of certain oil and gas assets (*e.g.*, well, leases, pipelines) to Apache and other parties. Specifically, Shell and Fieldwood are parties to that certain (i) *Asset Purchase Agreement* dated April 8, 2015 (the "Troika APA"), whereby Fieldwood purchased oil and gas interests, properties and associated leases, contracts, wells, equipment and facilities regarding the Troika Unit located in the Gulf of

Mexico and that certain (ii) *Asset Purchase Agreement* dated April 8, 2015 (the "Hickory APA", together with the Troika APA, the "Purchase Agreements") whereby Fieldwood purchased oil and gas interests, properties and associated leases, contracts, wells, equipment and facilities regarding the Hickory Unit located in the Gulf of Mexico.

2. Shell and Fieldwood's business operations are subject to oversight by several government agencies, including, *inter alia*, the Bureau of Safety and Environmental Enforcement ("BSEE"), whose regulations serve as the basis for various plugging and abandonment obligations (the "P&A Obligations") for decommissioning certain leases.

**B.    The Chapter 11 Cases**

3. On August 3, 2020 and August 4, 2020, Fieldwood and 13 affiliated debtors (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4. On November 19, 2020, Shell filed Proof of Claim No. 412 to assert undetermined claims related to decommissioning liability pursuant to the Purchase Agreements.

5. On January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 722] (the "Plan") and the *Disclosure Statement for Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 723] (the "Disclosure Statement"). Pursuant to the Plan, the Debtors intend to "reorganize" by way of the following transactions: (i) a credit bid sale, (ii) a divisive merger transaction pursuant to which certain assets and liabilities of FWE would be divided into FWE I and FWE III, and (iii) abandonment of the Abandoned Properties, along with the P&A Obligations associated therewith, to the Debtors' predecessors.

6. On March 15, 2021, the Debtors filed the *Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1020] (the "Amended Plan"), and on March 16, 2021, the Debtors filed the *Disclosure Statement for Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* [Dkt. No. 1022] (the "Amended Disclosure Statement").[3]

## OBJECTIONS AND ARGUMENT

7. Pursuant to section 1125 of the Bankruptcy Code, a disclosure statement should not be approved unless it contains "adequate information," that is, information sufficient to enable those with claims against or interests in the Debtor "to make an informed judgment about the plan." 11 U.S.C. §§ 1125(a)(1), 1125(b). In evaluating whether a disclosure statement contains "adequate information," a court "shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . . ." *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 400 (Bankr. S.D. Tex. 2016).

8. Moreover, the determination of what constitutes adequate information for purposes of disclosure should be made on a case-by-case basis and "[b]oth the kind and form of information required are left essentially to the judicial discretion of the court" based on the circumstances of each case. *Matter of Cajun Elec. Power Co-op, Inc.*, 150 F.3d 503, 518 (5th Cir. 1998) (citation omitted). Courts consider numerous factors when determining the sufficiency of the information in a disclosure statement, including but not limited to: (i) a description of the available assets and their value; (ii) the estimated return to creditors under a chapter 7 liquidation; (iii) financial

---

[3] Shell continues to review the recently filed Amended Disclosure Statement and reserves all rights to further supplement or modify this Objection accordingly. Notwithstanding the material modifications embedded in the Amended Disclosure Statement, Shell contends that it still suffers from many of the same infirmities that plagued the Disclosure Statement—specifically, it lacks disclosure of adequate information with respect to several key areas further discussed herein.

information, data, valuation or projections relevant to the creditors' decision to accept or reject the chapter 11 plan; (iv) information relevant to the risks posed to creditors under the plan; and (v) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers. *See In re Divine Ripe, L.L.C.*, 554 B.R. at 401-02 (listing 19 non-exhaustive factors set forth in *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)).; *see also Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (citing to certain *Metrocraft* factors).

9. While some of the foregoing factors have been adequately addressed in the Amended Disclosure Statement, as currently constituted, it lacks adequate information in compliance with Bankruptcy Code section 1125 to enable creditors like Shell to make an informed judgment regarding the Amended Plan. Among other deficiencies, the Amended Disclosure Statement fails to:

- adequately disclose critical information regarding the Abandoned Properties to entities who are predecessor or co-working interest owners in the chain of title (indeed, while the Amended Disclosure Statement provides that the Debtors *anticipate* BSEE will issue orders compelling certain predecessors to perform the P&A Obligations, it fails to disclose (i) the legal basis for doing so and (ii) whether the contemplated transfer of leases is feasible from a regulatory perspective);

- provide adequate information on the chain of title to enable Shell to determine the full extent of any potential decommissioning liability;

- provide adequate information regarding the disclosure of liabilities on a lease-by-lease basis or the condition of the leases on a lease-by-lease basis;[4]

---

[4] The Amended Disclosure Statement omits significant information regarding its liabilities. And while Fieldwood purports to abandon its interest in a huge set of leases under the Amended Plan, Fieldwood does not address the fact

- provide adequate information regarding the mechanics for abandoning assets and the treatment of decommissioning liabilities, including P&A Obligations;

- provide adequate information pertaining to the allocation of the Debtors' executory contracts among the various entities created under the Plan (*e.g.*, which contracts will vest in which entity, and the time provided to address cure amounts; and which contracts, if any, will be rejected);

- provide adequate information as to the status of the surety bonds, including (i) which properties are covered by bonds; (ii) whether those bonds are available for properties to be conveyed, retained, or abandoned; (iii) how any of the bonds related to the Abandoned Properties are allocated to each property; (iv) whether the Debtors have obtained the requisite surety bonding commitments; and (v) whether any of the existing surety providers are willing to support the Amended Plan or willing to continue to provide surety bonding;

- provide adequate information as to whether surety bonds may be utilized in addressing P&A Obligations of the Abandoned Properties;

- provide adequate information about the releases authorized under the Plan (specifically, the types of claims being released, the parties receiving a release and the consideration provided for the release from each non-debtor party).

10. The Amended Disclosure Statement omits critical information, which makes it nearly impossible for parties-in-interest to accurately evaluate the Amended Plan. Among other things, the Debtors must identify the anticipated timing in which the plugging and abandonment

---

that it cannot avoid the related environmental liabilities through abandonment. *See* 30 CFR § 250.1702; *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494 (1986).

will need to occur in order to help parties-in-interest understand what work is due immediately and what work is due in the near future. And while the Debtors intend to disclose contract treatments in a plan supplement to be filed ten (10) days before confirmation, this timing is woefully insufficient to address the wide array of agreements between the many parties-in-interest in these cases.

11. In addition, the Amended Disclosure Statement fails to adequately describe and explain why certain non-debtor third parties, such as "the Apache PSA Parties" (which is in chain of title with Shell on certain of its oil and gas interests and may owe creditors like Shell contribution for decommissioning costs), are included in the definition of "Released Parties" under the Plan. *See* Exhibit B to the Amended Disclosure Statement, p. 21. And there is no disclosure of information as to how a "release" impacts the potential joint and several liability by Apache to third parties such as Shell.

12. Lastly, the Debtors' proposed voting procedures fail to provide general unsecured creditor claims that are currently contingent, unliquidated and/or disputed the affirmative ability to vote on their claim in the dollar amount that the Plan specifically seeks to impose upon them. The Debtors instead seek to impose a $1 claim for voting purposes when in fact, the forced "return" to predecessors of the leases would convert contingent, unliquidated claims into matured and liquidated claims in the billions of dollars.[5] The real value of the potential Class 5B claims under the Plan needs to be realized in the voting and tabulation process.

---

[5] *See* Dkt. No. 724, pp. 18-19.

## JOINDER

13. Shell hereby joins and incorporates herein by reference the Chevron Objection, the XTO Objection, the Marathon Objection, the Eni Objection, the Energy Transfer Objection, and the McMoran Objection.[6]

## RESERVATION OF RIGHTS

14. Shell reserves the right to amend, update, modify, and/or supplement the Objection in all respects, including, without limitation, any of the arguments or concerns raised in and incorporated into this Objection at any time, including at any hearing set by the Court for consideration of the Amended Disclosure Statement and the Amended Plan.

## CONCLUSION

WHEREFORE, Shell requests that the Court (a) sustain its Objection and deny approval of the Amended Disclosure Statement, and (b) grant such other and further relief as the Court may deem just, proper, and equitable.

*[Remainder of Page Intentionally Left Blank]*

---

[6] Shell acknowledges that the foregoing objections were filed prior to the Amended Disclosure Statement and the Amended Plan; however, as previously discussed, many (if not all) of the issues raised in the foregoing objections persist with respect to the adequacy of disclosures provided in the Amended Disclosure Statement.

Dated: March 18, 2021 Respectfully submitted,

*/s/ Ryan E. Manns*
Ryan E. Manns
State Bar No. 24041391
ryan.manns@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
Emma Persson
State Bar No. 24110219
emma.persson@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Counsel to Shell Offshore, Inc.

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in these cases on March 18, 2021.

*/s/ Ryan E. Manns*
Ryan E. Manns

- 9 -