# EXHIBIT "A"

(01/31/13 - special)                                                                                      Fieldwood / PIA No. 1055

# PAYMENT AND INDEMNITY AGREEMENT No. 1055

THIS PAYMENT AND INDEMNITY AGREEMENT (as amended and supplemented, this "Agreement") is executed by each of the undersigned on behalf of each Principal (as defined below) for the benefit of U.S. Specialty Insurance Company (the "Surety") in connection with any bond or bonds executed or to be executed on behalf of any Principal and to induce the Surety to execute or procure the execution of such bond(s) and any extensions, modifications, or renewals thereof, additions thereto, or substitutions therefor (the "Bonds"). The term "Principal" as defined and used herein shall mean any of the undersigned individuals or entities, as well as any and all affiliates, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of the undersigned or any wholly or partially owned subsidiary, division or affiliate has an interest or participation, whether now existing or which may hereafter be created or acquired.

IN CONSIDERATION of the execution or procurement of the Bonds, and for other good and valuable consideration, the receipt and sufficiency of which the Principals hereby acknowledge, the Principals hereby agree, for themselves, their personal representatives, successors, and assigns, jointly and severally, as follows:

1. **Bond Premiums** The Principals shall pay to the Surety premiums and charges at the rates and at the times specified by the Surety with respect to each Bond (as the Surety may specify at any time before or after the issuance of any Bond), continuing until the Surety shall be discharged or released from any and all liability and responsibility under the Bonds, and all matters arising therefrom, and until the Surety receives evidence, satisfactory to the Surety, of such discharge or release. All first year premiums are fully earned immediately upon issuance of each Bond and must be paid in full unless otherwise agreed in writing. If any Principal fails to pay when due any premium or portion thereof, or fails to pay within ten days after demand of any other sum becoming due the Surety hereunder; then, unless the Principals shall, immediately upon demand therefor: (a) deliver to the Surety evidence, satisfactory to the Surety, of the discharge and release of the Surety from any and all liability and responsibility under the Bonds and all matters arising therefrom; and (b) pay to the Surety all sums owed the Surety as of the effective date of such absolute release of the Surety from said obligations, the Surety may require there be paid, and the Principals jointly and severally agree they shall forthwith pay to the Surety, an amount equal to the full penalty amount of the Bonds, to be held as collateral until: (i) all sums due and to become due to the Surety have been paid, and (ii) the Surety shall be wholly discharged and released from all liability under the Bonds.

2. **Indemnification of Surety** The Principals shall jointly and severally indemnify and keep indemnified the Surety and hold and save it harmless from and against any and all liability, damage, loss, cost, and expense of whatsoever kind or nature, including reasonable counsel and attorneys' fees which the Surety may at any time sustain or incur by reason or in consequence of having executed or procured the execution of the Bonds or in enforcing this Agreement against any Principal or in procuring or in attempting to procure the Surety's release from liability or a settlement under any Bonds. If the Surety deems it necessary to make an independent investigation of a claim, demand or suit, the Principals jointly and severally acknowledge and agree that all expenses attendant to such investigation, whether incurred internally or with third parties, is included as an indemnified expense.

3. **Security** The Surety may at any time and from time to time hereafter, in its sole and absolute discretion, require the Principals to provide collateral, in form and amounts acceptable to the Surety (such amounts not to exceed the aggregate penalty sum of all then-issued Bonds) to secure the Principals' obligations to the Surety hereunder and/or to establish reserves to cover any actual or potential liability, claim, suit, or judgment under any Bond. Immediately upon the Surety's demand therefor, each Principal shall execute such documents and take such further action as may be necessary in order to provide such collateral. Each Principal hereby grants to the Surety a security interest in all money and other property now or hereafter delivered by such Principal to the Surety, and all income (if any) thereon. If a Principal provides the Surety with a letter of credit or similar instrument, such Principal agrees that the Surety has the right to call on the same from time to time, in whole or in part and for any reason or no reason, and to hold the proceeds thereof as collateral for the obligations of the Principals hereunder. Any collateral provided at any time by any Principal shall be available, in the discretion of the Surety, as collateral security on any or all Bonds heretofore or hereafter executed for or at the request of such Principal or any other Principal.

4. **Inspection** Until the Surety shall have been furnished with evidence of its full, final and complete discharge without loss from any and all Bonds, the Surety and its agents shall have free access, at any and all reasonable times, to the books and records of each Principal relevant to the obligations under this Agreement. Each individual Principal consents to the Surety's requests for, and use of, consumer credit reports and investigative consumer credit reports with respect to such Principal. Any bank, creditor, credit bureau or credit reporting agency, obligee of a Bond or other individual or entity possessing records or having information concerning the financial affairs and operations of any Principal is hereby authorized to furnish to the Surety and its agents any such records or information requested by the Surety. Each Principal will execute any additional document requested by the Surety to cause the release of such records and information.

Deposit Box



SCANNED

IndemCo

(01/31/13 - special)  Fieldwood / PIA No. 1055

5. **Additional Sureties**  If IndemCo L.P. or the Surety shall procure any other company or companies, including but not limited to American Contractors Indemnity Company and/or SureTec Insurance Company, to execute or join with it in executing, or to reinsure any Bond, this Agreement shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give it or them a direct right of action against the Principals to enforce the provisions hereof.

6. **Evidence of Liability**  An itemized statement of payments made by the Surety for any of the purposes specified herein, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Principals to reimburse the Surety for such payments.

7. **Additional Rights of Surety**  The Surety, in its sole discretion and without notice to any Principal, is hereby authorized but not required, (a) from time to time to make or consent to any change in the Bonds or to issue any substitutes or any renewal thereof, and this Agreement shall apply to such substituted, changed or renewed Bonds; (b) take such action as it may deem appropriate to prevent or minimize loss under the Bonds, including, but not limited to, taking steps to procure discharge from liability under the Bonds; and (c) to adjust, settle, or compromise any claim or suit arising under the Bonds and, with respect to any such claim or suit, to take any action it may deem appropriate. Any adjustment, settlement, or compromise made or action taken by the Surety shall be conclusive against and binding upon the Principals.

8. **Bond Forms**  The Principals acknowledge and agree it is their sole responsibility to provide the proper forms for the Bonds to be executed by the Surety, and neither the Surety nor its agents shall have any liability whatsoever to any Principal if the Principals fail to furnish the Surety with the proper forms. It shall be the sole responsibility of the Principals to review the bond form to be executed by the Surety for any errors or omissions before delivery of any Bond to its obligee, and the Surety and its agents shall have no liability to the Principals on account of any such errors and omissions. Before requesting the Surety issue any Bond, the Principals shall obtain confirmation the proposed obligee on the Bond will accept the Surety as surety on the proposed Bond, and neither the Surety nor its agents shall have any liability whatsoever if any obligee refuses, for whatever reason, to accept the Surety as surety on any Bond. Each Principal agrees the Principals shall be solely responsible for arranging, independent of the Surety, for the timely delivery of any Bond to its obligee. The Surety and its agents shall have no liability to the Principal if the Bond is not timely delivered to any obligee for any reason whatsoever.

9. **Additional Obligations of Principals**  Each Principal agrees to pay all amounts owed and/or described herein regardless of (a) the failure of any Principal to sign any application for a Bond; (b) any claim that other indemnity, security, or collateral was to have been obtained; (c) the release, return, or exchange by the Surety with or without the consent of any other Principal, of any indemnity, security, or collateral that may have been obtained, or (d) the fact that any other Principal is not bound for any reason. The Surety is expressly subrogated to all rights, if any (but if a Principal has waived its rights of subrogation against any party, such waiver shall control this Agreement), of the Principals (or any or all of them) to collect, receive, recover, and/or be reimbursed from (i) any co-owners or owners of undivided interest in any properties, wells, and leasehold interests relative to which the Bonds shall apply (collectively, the "Related Property"); (ii) any party contractually bound to pay or reimburse any Principal on account of ownership or operation of any Related Property; or (iii) any other party otherwise obligated to, or for, any Principal in any way, in connection with, or arising out of damage to any Related Property. The Surety, as subrogee, upon default of payment of any sums becoming payable hereunder by any Principal, may enforce all of the rights of the Principals in and to any such above-described claims and interests; and may pursue its remedies hereunder in its own name or in the name of the relevant Principal(s); but nothing herein shall require that the Surety pursue any such remedy or claim against any third party. Each Principal agrees, upon demand of the Surety therefor, to execute and deliver any and all appropriate further documentation evidencing and authorizing the Surety to pursue, recover, collect, and hold for its account any such claims or rights.

10. **Suits to Enforce**  Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Principals; and any suit or suits upon one or more causes of action, or against one or more of the Principals, shall not prejudice or bar subsequent suits against any other Principals on the same or any other causes of action, whether theretofore or thereafter accruing.

11. **Liability Limitation**  Each Principal agrees the Surety's liability, if any, to any one or more of the Principals on account of any acts or omissions by the Surety (whether such acts or omissions arise in tort, breach of contract, or at law) arising out of or related to any Bonds or any other conduct by the Surety, **WHETHER THE SAME ARISES FROM THE NEGLIGENCE OF THE SURETY OR OTHERWISE,** shall be and is hereby expressly limited to an amount equal to the premium actually paid to the Surety for such Bond.

12. **Waiver of Notice**  Each Principal hereby expressly waives notice from the Surety of any claim or demand made against the Surety or any Principal under the Bonds or of any information the Surety may receive concerning any Principal, any Bond, or any contract.

13. **No Obligation to Issue Bonds**  The Surety shall have the right to decline to issue any or all Bonds applied for hereunder and shall have the right to withdraw from or cancel any application for a Bond at any time, all without incurring any liability to any Principal. The use of the plural term "Bonds" herein shall not be interpreted to require that the Surety issue multiple bonds or any bond whatsoever.

14. **Conflict and Modification**  If any portion of this Agreement is in conflict with any law controlling the construction hereof, such portion of this instrument shall be considered to be deleted and the remainder shall continue in full force and effect.

IndemCo

(01/31/13 - special)   Fieldwood / PIA No. 1055

15. **Waivers**   To the maximum extent not prohibited by applicable law, each Principal hereby waives all rights to claim any of its property is exempt from levy, execution, sale, or other legal process in any action hereunder.

16. **Continuing Obligation**   This Agreement is a continuing obligation of each Principal, and no Principal shall have the right to terminate its obligations for any Bonds issued during the term hereof. A Principal may terminate this Agreement as to future Bonds by notice to the Surety, but such termination as to a Principal shall in no way affect the obligation of any other Principal who has not given such notice. In order to terminate liability as to future Bonds, a Principal must notify the Surety of such termination and state in such notice the effective date (not less than 30 days after receipt thereof by the Surety) of termination of such Principal's liability for future Bonds. After the effective date of such termination, the Principal giving notice of termination shall nonetheless be liable hereunder for Bonds executed or authorized before such date and renewal, substitutions, and extensions thereof.

17. **Place of Performance and Enforcement**   All obligations hereunder of each Principal is performable in, and all monies due the Surety hereunder are payable in, Harris County, Texas. This Agreement shall be construed and enforced in accordance with the laws of the state of Texas, without regard to its conflict of law rules. EACH PRINCIPAL HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE VENUE AND JURISDICTION OF THE FEDERAL AND STATE COURTS SITTING IN HARRIS COUNTY, TEXAS, AND DOES FURTHER WAIVE ANY AND ALL RIGHTS TO OBJECT TO SUCH VENUE OR JURISDICTION.

18. **Rights Not Exclusive**   Nothing herein-contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed.

19. **Other Bonds and Agreements**   This Agreement shall also extend to and cover and indemnify the Surety against loss under any presently outstanding Bonds, and the obligation of the Principals hereunder, with respect to such pre-existing Bonds, shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of any or all of the Principals under any presently existing agreement relating to or securing such pre-existing Bonds. Further, with respect to any future Bonds, the obligation of any or all of the Principals under any such presently existing agreement(s) shall be supplemental and in addition to (and not in lieu of, or in diminution of) the obligation of the Principals hereunder.

20. **Joint and Several Liability**   Each Principal shall be deemed to have made all of the representations, warranties, covenants, and agreements set forth herein, and each Principal shall be jointly and severally liable for each and every obligation and duty of the Principals set forth herein. A default of any Principal in the performance of any of its obligations to the Surety under this or any other agreement shall constitute a default hereunder by all Principals. Each Principal understands and agrees that the circumstances, financial or otherwise, of any one or more of the other Principals may change substantially over the term of this Agreement, and the Principals therefore agree to keep themselves fully informed as to the business activities and financial affairs of each Principal and of the risks being engaged in, so that each is always aware of the risks of hazards in continuing to act as a Principal. Each Principal expressly waives any requirement for notice from the Surety of any fact or information coming to the notice or knowledge of the Surety affecting its rights or the rights or liabilities of the Principals. If any claim or demand is made by the Surety against the Principals, or any one or more of them, by reason of the execution of a Bond, the Surety is expressly authorized to settle or compromise with any one or more of the Principals individually, and without reference to the others, and such settlement or composition shall not effect the liability of any of the others and each Principal expressly waives the right to be discharged by reason of the release of one or more of the joint debtors, and hereby consents to any settlement or composition that may hereafter be made. The liability of the Principals hereunder shall not be affected by the failure of the Principals, or any one or more of them, to sign any Bond or this Agreement, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, nor the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

21. **Required Notices**   The Principals agree to notify the Surety (a) in the event of any change, alteration, restructuring, cancellation, transfer (including, without limitation, the conveyance of a security interest), or other modification to (i) the working interest ownership of the property for which a Bond is issued, or (ii) any lease for or relating to the property for which a Bond is issued, or (b) upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability, with which the Surety may be subsequently charged under any Bond.

22. **Manner of Notices**   All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefor or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed (a) in the case of a Principal, to such Principal's address set forth below and (b) in the case of the Surety, to (i) the Surety at 13403 Northwest Freeway, Houston, Texas 77040-6094, Attention: President, and (ii) IndemCo L.P. at 777 Post Oak Boulevard, Houston, Texas 77056. Such names and addresses may be changed by written notice given as provided in this Agreement. Actual notice, however given, shall always be effective.

23. **Interest**   Any and all sums not paid when due shall bear interest at the lesser of (a) ten percent (10%) per annum, or (b) the maximum non-usurious rate of interest allowed by applicable law.

24. **Entire Agreement and Amendments**   This Agreement contains the entire understanding of the parties hereto with respect to the subject matter contained herein and may be amended or terminated only by a document executed by all parties, or their respective successors or assigns. There are no restrictions, promises, warranties, covenants, or undertakings other than those expressly set forth herein.

IndemCo

(01/31/13 - special) Fieldwood / PIA No. 1055

25. **Headings**  The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

26. **Attorney's Fees**  In the event any action is instituted to enforce any of the provisions of this Agreement or to recover damages for the breach of any provision hereof, the prevailing party therein shall be entitled to recover any costs or expenses incurred, including without limitation, costs of court and reasonable attorneys' fees.

27. **Number and Gender**  Whenever required by the context, any reference herein to the singular shall include the plural, any reference to the plural shall include the singular, and the gender of any pronoun shall mean and include the appropriate gender, whether masculine, feminine, or neuter.

28. **Counterparts**  This Agreement may be executed in multiple counterparts, and by the Principals on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

29. **Continuing Agreement**  Each Principal understands and agrees (a) this Agreement is a continuing agreement to indemnify over an indefinite period; (b) Bonds may vary widely in amounts and nature, and (c) each Principal will be bound by all Bonds, and any increases in the penal limits of all Bonds. Each Principal shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of any Principal, accepted or released other agreements of indemnity or collateral from some or all of the Principals or others in connection with the procurement of Bonds, it being expressly understood and agreed by each Principal that any and all other rights which the Surety may have or acquire against such Principal or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

30. **No Conflict**  Each Principal represents and warrants that neither this Agreement nor any condition relating to the issuance of any Bond shall be a breach or default in any other obligation of such Principal, specifically including, without limitation, any loan agreement.

31. *ENTIRE AGREEMENT*  EACH PRINCIPAL REPRESENTS TO THE SURETY THAT SUCH PRINCIPAL HAS CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. THE EFFECTIVE DATE OF THIS AGREEMENT SHALL BE THE DATE SET FORTH BELOW, REGARDLESS OF THE DATE OR DATES ON WHICH ANY PRINCIPAL MAY EXECUTE THIS AGREEMENT AND REGARDLESS OF WHETHER BONDS WERE ISSUED BY THE SURETY BEFORE OR AFTER THE EXECUTION OR EFFECTIVE DATE OF THIS AGREEMENT. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE PRINCIPALS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.

32. **Individual Certification.**  Each individual signing below on behalf of any Principal certifies that (a) such individual is familiar with the organizational documents and other records of such Principal; (b) the name of such Principal as reflected below is its correct name; (c) such Principal exists and is in good standing in the jurisdiction of its organization; (d) the execution, delivery and performance of this Agreement by such Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions, and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; (e) the form of signature block for such Principal is an appropriate signature block for it; (f) such individual holds the position reflected below and is duly authorized to execute this Agreement on behalf of such Principal, and (g) this Agreement has been duly executed and delivered on behalf of such Principal.

EXECUTED effective as of __MAY 21_____, 20 _14_.

*EXECUTION ON FOLLOWING PAGE(S)*

IndemCo

(01/31/13 - special)

Fieldwood / PIA No. 1055

For entity as Principal:

TYPE OF ENTITY: ____Limited Liability Company____

TAXPAYER IDENTIFICATION NO.: ████████

____Fieldwood Energy LLC____
(Name of Entity)

BY: ___/s/___
(Signature)

PRINTED NAME: __Howard M. Tate__

TITLE: __Senior Vice President and Chief Financial Officer__

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20__

by __Howard M. Tate__, __Senior Vice President & Chief Financial Officer__
(Name of officer)   (Title of officer)

of __Fieldwood Energy LLC__
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Expires
December 23, 2017

Notary Signature
Printed Name __Rachel Thibodaux__
Notary in and for the State of __Texas__
My commission expires __12/23/2017__

---

For entity as Principal:

TYPE OF ENTITY: ____Limited Liability Company____

TAXPAYER IDENTIFICATION NO.: ████████

____Fieldwood Onshore LLC____
(Name of Entity)

BY: ___/s/___
(Signature)

PRINTED NAME: __Howard M. Tate__

TITLE: __Vice President__

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20__

by __Howard M. Tate__, __Vice President__
(Name of officer)   (Title of officer)

of __Fieldwood Onshore LLC__
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Expires
December 23, 2017

Notary Signature
Printed Name __Rachel Thibodaux__
Notary in and for the State of __Texas__
My commission expires __12/23/2017__

---

For entity as Principal:

TYPE OF ENTITY: ____Limited Liability Company____

TAXPAYER IDENTIFICATION NO.: ████████

____Fieldwood SD Offshore LLC____
(Name of Entity)

BY: ___/s/___
(Signature)

PRINTED NAME: __Howard M. Tate__

TITLE: __Vice President__

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20__

by __Howard Tate__, __Vice President__
(Name of officer)   (Title of officer)

of __Fieldwood SD Offshore LLC__
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Expires
December 23, 2017

Notary Signature
Printed Name __Rachel Thibodaux__
Notary in and for the State of __Texas__
My commission expires __12/23/2017__

---

For entity as Principal:

TYPE OF ENTITY: ____Limited Liability Company____

TAXPAYER IDENTIFICATION NO.: ████████

____Galveston Bay Pipeline LLC____
(Name of Entity)

BY: ___/s/___
(Signature)

PRINTED NAME: __Howard M. Tate__

TITLE: __Vice President__

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on _____, 20__

by __Howard M. Tate__, __Vice President__
(Name of officer)   (Title of officer)

of __Galveston Bay Pipeline LLC__
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL

RACHEL THIBODAUX
Notary Public, State of Texas
My Commission Expires
December 23, 2017

Notary Signature
Printed Name __Rachel Thibodaux__
Notary in and for the State of __Texas__
My commission expires __12/23/2017__

IndemCo

# Additional Sureties Supplement

This Additional Sureties Supplement shall become and remain a part of that certain Payment and Indemnity Agreement numbered PIA No. 1055 effective May 21, 2014. It is hereby understood and agreed that paragraph 5 of PIA No. 1055 shall be deleted in its entirety and replaced by the following:

> 5. **Additional Sureties** If IndemCo L.P. or the Surety shall procure any other company or companies, including but not limited to American Contractors Indemnity Company, Ironshore Indemnity Inc., Ironshore Specialty Insurance Company, Lexon Insurance Company, Bond Safeguard Insurance Company, North American Specialty Insurance Company, Westport Insurance Corporation, and/or Swiss Reinsurance America Corporation to execute or join with it in executing or to reinsure any Bond, this Agreement shall inure to the benefit of such other company or companies, its or their successors and assigns, so as to give it or them a direct right of action against the Principals to enforce the provisions hereof.

All other terms and conditions shall remain unchanged. Each individual signing below on behalf of any Principal certifies that (a) such individual is familiar with the organizational documents and other records of such Principal; (b) the name of such Principal as reflected below is its correct name; (c) such Principal exists and is in good standing in the jurisdiction of its organization; (d) the execution, delivery and performance of this Agreement by such Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions, and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; (e) the form of signature block for such Principal is an appropriate signature block for it; (f) such individual holds the position reflected below and is duly authorized to execute this Agreement on behalf of such Principal, and (g) this Agreement has been duly executed and delivered on behalf of such Principal.

Agreed and executed this 30th day of April, 2015.

TAXPAYER IDENTIFICATION NO.: ███████

Fieldwood Energy LLC
(Name of Entity)

BY: _____ (Signature)

PRINTED NAME: James P. Ulm II

TITLE: Senior Vice President & Chief Financial Officer

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

Houston, Texas 77042

This instrument was acknowledged before me on May 4th, 2015

by James P. Ulm II, Senior Vice President & Chief Financial Officer
(Name of officer)           (Title of officer)

of Fieldwood Energy LLC
(Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL

Notary Signature _____
Printed Name: Mindy A. Gregory

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017

in and for the State of TX
My commission expires 9/14/2017

SCANNED
Original filed
in Safety
Deposit Box

IndemCo

Fieldwood PIA No. 1055

# Additional Named Principal Supplement

This Additional Named Principal Supplement (this "Supplement) shall be attached to and shall become a part of the Payment and Indemnity Agreement No. 1055 (including all amendments, supplements and riders thereto, hereinafter the "Agreement"). All other terms and conditions of the Agreement shall remain unchanged and in full force and effect. Any term defined in the Agreement and used in this Supplement shall have the meaning ascribed to it in the Agreement.

The Agreement provides that the Principals thereunder include the signatories thereto and any and all affiliates thereof, specifically including, without limitation, all wholly or partially owned subsidiaries, divisions or affiliates, and all partnerships, ventures or co-ventures in which any of such signatories or any wholly or partially owned subsidiary, division or affiliate thereof has an interest or participation, whether then existing or which may thereafter be created or acquired.

Each of the undersigned (whether one or more, the "Additional Named Principals") [a] represents that it is an affiliate (whether as subsidiary, division or other affiliate, or partnership, venture or co-venture in which any Principal or any wholly or partially owned subsidiary, division or affiliate of a Principal has an interest or participation) of one or more of the Principals signatory to the Agreement (including any signatory to any amendment, supplement or rider thereto); [b] agrees that it is a Principal under the Agreement; [c] explicitly joins the Agreement as a party thereto and explicitly assumes all the obligations of a Principal thereunder; [d] confirms that it is bound by the provisions of the Agreement as if it had been an original party thereto, and [e] confirms the representations and warranties set forth in the Agreement with respect to it as a Principal.

Each individual signing below on behalf of any Additional Named Principal certifies that [a] such individual has access to the Agreement; [b] such individual is familiar with the organizational documents and other records of such Additional Named Principal; [c] the name of such Additional Named Principal as reflected below is its correct name; [d] such Additional Named Principal exists and is in good standing in the jurisdiction of its organization; [e] the execution, delivery and performance of this Supplement by such Additional Named Principal (1) are within its organizational power; (2) have been duly authorized by all necessary actions; and (3) do not contravene its organizational documents or any agreement binding upon it or any of its property; [f] the form of signature block for such Additional Named Principal is an appropriate signature block for it; [g] such individual holds the position reflected below and is duly authorized to execute this Supplement on behalf of such Additional Named Principal, and [h] this Supplement has been duly executed and delivered on behalf of such Additional Named Principal.

**For entity as Additional Named Principal:**

TYPE OF ENTITY: _____Limited Liability Company_____

TAXPAYER IDENTIFICATION NO.: ███████████

_____Fieldwood Energy Offshore LLC_____
(Name of Entity)

BY: _____
(Signature)

PRINTED NAME: Howard M. Tate

TITLE: _____

ADDRESS: 2000 W. Sam Houston Pkwy. South, Suite 1200

_____Houston, Texas 77042_____

This instrument was acknowledged before me on 12th June, 2014

by  Howard M. Tate          Vice President
    (Name of officer)        (Title of officer)

of _____Fieldwood Energy Offshore LLC_____
            (Name of Principal)

on behalf of such entity.

NOTARIAL STAMP OR SEAL
Notary Signature _____
Printed Name Mindy A. Gregory
Notary in and for the State of Texas
My commission expires 9/14/2017

MINDY A. GREGORY
Notary Public, State of Texas
My Commission Expires
September 14, 2017



SCANNED IndemCo