**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| Fill in this information to identify the case (Select only one Debtor per claim form): | |
|---|---|
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Liberty Mutual Insurance Company

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Contact phone  214-722-7171 | Contact phone _____ |
| Contact email  bbains@l-llp.com | Contact email _____ |

**4. Does this claim amend one already filed?**

☒ No
☐ Yes.   Claim number on court claims registry (if known) _____   Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

**Part 2:   Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____ |

**7.   How much is the claim?**   $ <u>Unknown (See addendum)</u>.   **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.  What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                      $_____

**Amount of the claim that is secured:**       $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**       $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**       $_____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No ☒ Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☒ Other. Specify subsection of 11 U.S.C. § 507(a)( 2 ) that applies. | $ See Addendum |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☒ No ☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $_____ |

---

### Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Brandon K. Bains*
Brandon K. Bains (Nov 20, 2020 20:29 CST)

**Email:** lmurphy@l-llp.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Brandon K. Bains | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Langley LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 94075 | | |
| | Number        Street | | |
| | Southlake | TX | 76092 |
| | City | State | ZIP Code |
| Contact phone | 2147227171 | Email | bbains@l-llp.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   **(attach below)**

☐ **I do not have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

<u>Modified Official Form 410</u>

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                        12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

---

**Do not file these instructions with your form**

## ADDENDUM TO MASTER PROOF OF CLAIM BY
## LIBERTY MUTUAL INSURANCE COMPANY

This Addendum is submitted with and incorporated in the Proof of Claim filed in Case No. 20-33948, *In re: Fieldwood Energy, LLC et al.*, by Liberty Mutual Insurance Company ("Liberty").

## CREDITOR

Liberty is a Massachusetts corporation and is authorized to conduct business in the State of Texas. Liberty is a creditor, having issued, as surety, numerous miscellaneous commercial bonds on behalf of Fieldwood Energy, LLC (the "Debtors") or their affiliates as principal.

The Debtors executed the following indemnity agreements with Liberty and its affiliates (the "GIA"):

| Date | Agreement | Indemnitors | Surety |
|------|-----------|-------------|--------|
|      |           |             |        |
| April 2, 2018 | General Agreement of Indemnity | Fieldwood Energy, LLC | The Liberty Insurance Company |

Under the GIA, the Debtors agreed to indemnify the Surety from and against all loss, cost and expense, including attorneys' fees, incurred by the Surety by reason of the extension of surety credit to any of the Debtors. The Debtors also promised to pay all premium due on the Bonds. Liberty requires annual premium payments in order to process renewal of the Bonds.

A true and correct copy of the GIAs are attached hereto as Exhibit "A-1."

## BASIS OF THE CLAIM

Liberty faces continued exposure on the bonds itemized in the attached Exhibit "A-2" (the "Bonds"). The Bonds were issued prior to the petition date in this case and remain subject to potential claims against Liberty by the obligees thereof.

Liberty's claims are based on:

a.  its rights under the GIA;

b.  its rights as a surety to common law indemnity and exoneration; and

c.  its rights under contract and otherwise as subrogee to and/or assignee of the rights of those persons entitled to make claim on the Bonds.

With respect to the claims under contract and otherwise as subrogee to those persons entitled to assert rights under the Bonds, Liberty hereby asserts such claims if and to the extent such persons have not filed and do not file their own proofs of claim timely.

## AMOUNT OF CLAIM

The claim asserted herein is unliquidated in part at this time.

The Debtors are, at the date of this filing, indebted and liable to Liberty in at least the amount of $69,393,178 based on the total amount of Liberty's exposure under the Bonds, based on their penal sum. The Debtors are also liable to Liberty for attorneys' fees and expenses incurred by Liberty as a result of issuing the Bonds and other bonds on behalf of the Debtors. Liberty also faces exposure in an unknown amount for any post-petition premium payments that are not made by the Debtors. The Debtors are jointly and severally liable to Liberty to-date in the total amount of at least $69,393,178.

## CLASSIFICATION OF AND SECURITY FOR CLAIM

1.      Liberty is filing a separate unsecured proof of claim in the amount of $69,393,178. The Debtors are jointly and severally liable to Liberty for the claim amount.

2.      Liberty has a contingent, unliquidated priority claim pursuant to 11 U.S.C. § 507(a)(2) for any post-petition premium payments that are not made by the Debtors. The premium payments are actual, necessary costs of preserving the Debtors' estates incurred in conjunction with renewal of the Bonds constituting administrative expenses under 11 U.S.C. § 503(b)(1)(A). As the Debtors are continuing to operate, the Bonds continuing in force is necessary to preserve the Debtors' estates. Liberty is unable to determine the amount of its priority claim at this time because there are currently no outstanding premium payments owed by the Debtors and the Bonds renew on a rolling basis.

3.      Liberty reserves the right to assert other priority claims, to the extent they are unsecured, under 11 U.S.C. § 507(a)(4) and § 507(a)(5), if and to the extent it pays claims on the Bonds that qualify for priority treatment pursuant to these sections of the Bankruptcy Code.

4.      Notwithstanding the foregoing, Liberty reserves the right to assert that certain portions of its claim are entitled to administrative priority if and to the extent that any of the Bonds covers losses that occur or have occurred post-petition.

## RESERVATION OF RIGHTS AND CLAIMS

Liberty reserves all rights accruing to it as surety or otherwise, and the filing of this Proof of Claim is not intended to be and shall not be construed as: (a) an election of rights or remedies, or (b) a waiver of any past, present or future event of default on the part of the Debtors or any other person, or (c) a waiver or limitation of any rights of Liberty.

Without prejudice to its position that no liability exists with respect to all bonds terminated, canceled, released or replaced prior to the date of this Proof of Claim, Liberty asserts a contingent claim with respect to those bonds in the event any claim should be made upon them.

Liberty reserves all rights and remedies which it may have, in addition to filing of and pursuit of this Proof of Claim, against any other person or entity, including (without limitation): (i) rights against indemnitors, other guarantors, successors in interest or agents; (ii) rights against

other persons against which the Debtors, or any other subrogor of Liberty, has rights, and to which rights Liberty succeeds by virtue of becoming subrogated to such rights; (iii) the right to assert some or all of Liberty's claim as an administrative claim, whether or not such claim is stated herein; and (iv) the right to assert any of the matters asserted herein by way of defense, counterclaim, offset or recoupment against any claim asserted against Liberty by the Debtors or any representative or affiliate thereof or successor thereto.

Liberty reserves the right to assert as administrative claims those claims arising from breaches of any contract that the Debtors have assumed or will assume.

Liberty reserves the right to assert as administrative claims those claims arising through subrogation or assignment.

Liberty reserves any and all defenses to claims that have been or may hereafter be asserted against it under any of the Bonds. Nothing herein shall be deemed an admission of liability under the continued effectiveness of, or the validity of, the Bonds.

Liberty reserves all rights available to it by applicable law or rule to amend this Proof of Claim based on additional facts and circumstances giving rise to additional claims and upon circumstances giving rise to additional claims and upon claims that are presently contingent becoming fixed and upon determination of liquidated amounts for the portions of the claim made hereunder which is not presently liquidated.

LIST OF EXHIBITS

Exhibit "A-1" – Indemnity Agreements

Exhibit "A-2" – List of Open Bonds

# EXHIBIT A-1



# GENERAL AGREEMENT OF INDEMNITY

THIS AGREEMENT is made by the Undersigned in favor of Surety for the purpose of indemnifying it from all loss and expense in connection with any Bonds for which Surety now is or hereafter becomes surety for any of the following as Principal: <u>Fieldwood Energy, LLC</u>, or as otherwise provided in the definition of Principal below.

In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

**DEFINITIONS:** Where they appear in this agreement, the following terms shall be considered as defined in this section:

**Principal:** Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests and/or:

   (i)  any other entity added to this agreement as Undersigned and/or Principal by written amendment;
   (ii)  any Principal(s)' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and/or
   (iii)  any other entity or person for whom Surety issues a Bond in response to a request from any Principal or any of the Undersigned (including requests from their agents, brokers or producers);

and as to all, whether they act alone or in joint venture with others not named herein.

**Bond:** Any and all bonds, undertakings or instruments of guarantee and any renewals or extensions thereof executed by Surety on behalf of Principal and issued before, on or after the date of this Agreement.

**Surety:** Any member of the Liberty Mutual Group, including but not limited to Liberty Mutual Insurance Company and any other company that is part of or added to the Liberty Mutual Group, severally not jointly. If Surety procures the execution of any Bond by other sureties, executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then those entities and their successors and assigns shall be included in this definition.

**INDEMNITY TO SURETY:** Undersigned agree to pay to Surety upon demand:

1.  All loss and expense, including reasonable attorney fees, incurred by Surety by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned, or by reason of the refusal to execute any Bond;
2.  An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond;
3.  Any premium due for any Bond, computed according to the rates currently charged by Surety, including renewal premiums until proof satisfactory to Surety is furnished of its discharge from liability under any Bond.

With respect to claims against Surety:

1.  Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2.  Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any obligation with respect to which Surety has issued any Bond.
3.  Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.
4.  An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.
5.  Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.
6.  Undersigned authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Principal.

**GENERAL PROVISIONS:**

1.  Assent by Surety to changes in any Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety.
2.  Surety shall have the right to decline to execute any Bond.
3.  Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration, and the right of subrogation. The security interest, trust, and other rights granted herein will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.

4.  Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

5.  The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond or Bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s), whether Surety will have made any payment or established any reserve therefor. The Undersigned acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Undersigned confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

6.  Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

7.  In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

8.  Execution by Principal or any of the Undersigned of any application for any Bond, or of any other agreement of indemnity on behalf of Principal, or the taking of indemnity of any other person by Surety with respect to any Bond of Principal, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.

9.  All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

10.  The Undersigned has relied upon its own due diligence in making its own independent appraisal of Principal *(note: when there are indemnitors other than Principal)* and its business and financial condition, will continue to be responsible for making its own independent appraisal of such matters, and has not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the undersigned Indemnitors of the financial condition or other affairs related to Principal.

11.  The Undersigned shall remain responsible to Surety under this agreement regardless of any change in the relationship of the Undersigned with the Principal.

12.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by U.S. federal law. As to all legal actions or proceedings related to this Agreement, Undersigned consent and agree to the general jurisdiction of any state or Federal court of the United States or its territories having proper subject matter jurisdiction or in which claim may be brought against Surety under any Bond, and hereby waive any claim or defense in such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**TERMINATION:**  This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Principal must:

1.  Give written notice to Surety at its home office, 2200 Renaissance Blvd., Suite 400, King of Prussia, PA 19406-2755, by certified or registered mail of such termination;

2.  State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.

After the effective date of termination, the Undersigned giving notice shall be or remain liable hereunder for Bonds executed, authorized, renewed, or extended prior to such date. Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

Dated as of this <u>2nd</u> day of <u>April</u> , in the year <u>2018</u>.

*By signing below, each individual executing this Agreement on behalf of a business entity, and each business entity executing this Agreement on behalf of another business entity, represents and warrants that he, she or it is **duly authorized** to bind such entity to all of the terms and conditions of this Agreement:*

**ATTEST OR WITNESS:**

BY:

**Fieldwood Energy, LLC**
**T.I.N. 46-1326778**
**2000 West Sam Houston Parkway South,**
**Houston, TX 77042**

By: _____
John H. Smith
Senior Vice President – Land and Business Development

By: _____ (Seal)
Michael T. Dane
Senior Vice President and Chief Financial Officer

General Agreement of Indemnity
Rev. 12/16

## NOTARY ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___Texas___ )

County of ___Harris___ )

On _4|2|18_ (Date) before me, _Tiffany Penry_ (Notary), personally appeared _Michael T. Dane_ _____(Signor), who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___Texas___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**

TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

Notary Public residing at: _7358 Regency Square Ct. Houston, TX 77036_
My commission expires: _12|18|2018_

# EXHIBIT A-2

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## FORM OF MARATHON PERFORMANCE BOND

### PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the *"Principal"*) and Sirius America Insurance Company with an office at 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033 and Liberty Mutual Insurance Company with an office at 175 Berkeley Street, Boston, MA 02116 (collectively, the *"Surety")*, are held and firmly bound unto Marathon Oil company with its principal office at 5555 San Felipe, Houston, Texas 77056, (the *"Obligee"),* in the penal sum of Fifty Five Million and No/100 Dollars **($55,000,000)** lawful money of the United States of America (the *"Penal Sum")* for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Sirius America Insurance Company | $27,500,000.00 | Bond No.7000000302 |
| Liberty Mutual Insurance Company | $27,500,000.00 | Bond No. 022220669 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated June 20, 2018, (the *"Purchase Agreement"),* which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond"),* together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided forherein.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations")*, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement")* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount")*, exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount")*, the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR *ASSERTED* BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' ORSUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY   NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Marathon Oil Company
5555 San Felipe
Houston, Texas 77056
Attention:_____

Fieldwood Energy LLC
2000 W. Sam Houston Parkway Suite 1200
Houston, Texas 77042
Attention: _____

Sirius America Insurance Company
180 Glastonbury Blvd, Suite 403
Glastonbury, CT 06033
Attention: Surety Claims Department

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

*(signature pages follow]*

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be Effective on <u>July 2, 2018</u>, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

MARATHON OIL COMPANY

By:_____
Name:_____
Title:_____
Date:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H – Form of Surety Bond

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY

By

Name: Gina A. Rodriguez

Title: Attorney-In-Fact

Date: July 2, 2018

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY

By

Name: Gina A. Rodriguez

Title: Attorney-In-Fact

Date: July 2, 2018

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit "A"**

**Assets**

| Field | Asset Name | Asset | Acquired Interest | Bond Allocation |
|---|---|---|---|---|
| *Troika Assets* | | | | |
| Troika | TA-1 | Well | 50% | 8,100,000 |
| Troika | TA-2 | Well | 50% | 8,100,000 |
| Troika | TA-3 | Well | 50% | 8,100,000 |
| Troika | TA-4 | Well | 50% | 8,100,000 |
| Troika | TA-5 | Well | 50% | 8,100,000 |
| Troika | TA-6 | Well | 50% | 12,000,000 |
| Troika | Subsea Facilities | Subsea Infrastructure | 50% | 1,000,000 |
| Troika | 11393 | Pipeline | 50% | 750,000 |
| Troika | 11396 | Pipeline | 50% | 750,000 |
| **Total Troika** | | | | **55,000,000** |
| | | | | |
| *Gunflint Assets* | | | | |
| Gunflint | 2 | Well | 18% | 5,500,000 |
| Gunflint | 4 | Well | 18% | 5,500,000 |
| Gunflint | Subsea Facilities | Subsea Infrastructure | 18% | 1,000,000 |
| Gunflint | 19362 | Pipeline | 18% | 250,000 |
| Gunflint | 19374 | Pipeline | 18% | 250,000 |
| Gunflint | 19478 | Pipeline | 18% | 250,000 |
| Gunflint | 19479 | Pipeline | 18% | 250,000 |
| Gunflint | 19154/19365 | Pipeline | 18% | 1,000,000 |
| Gunflint | 19155/19432 | Pipeline | 18% | 1,000,000 |
| **Total Gunflint** | | | | **15,000,000** |
| | | | | |
| **Total** | | | | **70,000,000** |

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

### Exhibit "B"

To be attached and form part of Bond No._____issued by ._____ , (as

**Surety), effective _____, 2018**

In the amount of        $(_____)

On behalf of:            Fieldwood Energy LLC (as Principal)
In favor of              Marathon Oil Company,(as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

   **The Bond amount shall be adjusted as follows:**

      **This Bond amount shall be decreased by $_____**

   **Total Revised Bond Amount is Now:**
      _____and NO/100 Dollars($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the _____day of _____20_____

Signed, sealed and dated the _____day of _____20_____

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____

SURETY:

SIRIUS AMERICA INSURANCE COMPANY
By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Acknowledged By: Marathon Oil Company**

By:_____

Name:_____

Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit I — Form of Assignment of Record Title Interest (BOEM Form 0150)**

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In-Fact No. 1800001-403001                                     Certificate No. 000243

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Terri L. Morrison, Gina A. Rodriguez, Mary Ann Garcia, Gloria P. Mouton, Marissa Shepherd, Tannis Mattson, Laura E. Sudduth

of the City of Houston _____, State of Texas _____, its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

IN WITNESS WHEREOF, the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 2nd day of July, 2018.

By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 2nd day of July, 2018 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022.

_____
Patricia McAndrew , Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

144150.ai

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seal of the Company this 7th day of December, 2017

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8117604

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company        West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, __Orlando Aguirre; Mario Arzamendi; Mary Ann Garcia; Tannis Mattson; Terri L. Morrison; Gloria Mouton; Sandra Parker; Gina A. Rodriguez; Marissa Shepherd; Laura E. Sudduth__

all of the city of __Houston__ , state of __TX__ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this __4th__ day of __June__ , __2018__ .



The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA          ss
COUNTY OF MONTGOMERY

On this __4th__ day of __June__ , __2018__ , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member: Pennsylvania Association of Notaries

By: _____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

ARTICLE IV – OFFICERS – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

ARTICLE XIII – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

Certificate of Designation – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

Authorization – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __2nd__ day of __July__ , 20 __18__ .

By: _____
Renee C. Llewellyn, Assistant Secretary

*Left margin (vertical text):* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Right margin (vertical text):* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.



To obtain information or make a complaint:

You may call the Surety's toll free telephone number for information or to make a complaint at 1-844-312-4357.

You may contact the Texas Department of Insurance to obtain information on companies, coverage, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://wvvw.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the Surety first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANCE**

Para obtener información o presentar una queja:

Usted puede llamar al número de teléfono gratis de para información o para someter una queja al 1-844-312-4357

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas en:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Surety primero. Si la disputa no se resuelve, puede comunicarse con el Departamento de Seguros de Tex (TDI).

**UNA ESTEAVISOA SU POLIZA:** Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

TX Rider

 Liberty Mutual.

# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Premium or Claim Disputes**

Should you have a dispute concerning a premium, you should contact the agent first. If you have a dispute concerning a claim, you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**Attach This Notice To Your Policy:**

This notice is for information only and does not become a part or condition of the attached document.

LMIC-3500 Rev. 7.1.07



# NOTIFICACION IMPORTANTE

PARA OBTENER INFORMACION O REALIZAR UNA QUEJA:

Usted puede escribir la notificación y dirigirla a Liberty Mutual Surety  en la siguiente dirección:

Liberty Mutual Surety
Interchange Corporate Center
450 Plymouth Road, Suite 400
Plymouth Meeting, PA 19462-8284

Usted puede contactar al Departamento de Seguros de Texas para obtener informacion acerca de las compañías, coberturas, derechos o quejas:

1-800-252-3439

Usted puede  escribir al Departamento de Seguros de Texas a la siguiente dirección:

P. O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**Disputas acerca de primas o reclamos**

En caso de que usted quiera elevar una disputa concerniente al tema de primas, por favor contacte en primer lugar a su agente.  Si el tema de la disputa es relativo a un reclamo, por favor contacte a la compañía de seguros en primer término.  Si usted considera que la disputa no es apropiadamente resuelta en estas instancias, entonces usted puede contactar al Departamento de Seguros de Texas..

**Adjunte esta notificacion a su póliza:**

Esta notificación es a los solos fines de su información y la misma no forma parte o condiciona de manera alguna el documento adjunto.

EXHIBIT "A"

PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC., with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with an office at 175 Berkeley Street, Boston, MA 02116, and The Hanover Insurance Company, with an office at 440 Lincoln Street, Worcester, MA 01653, Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT 06183 as co-sureties (hereinafter collectively called the "Surety"), are held and firmly bound unto Anadarko Petroleum Corporation, Anadarko US Offshore LLC (the two collectively referred to herein as "Anadarko"), Eni Petroleum US LLC ("Eni") and Noble Energy, Inc. ("Noble"), together with Anadarko (collectively hereinafter called the "Obligees"), Anadarko with its principal office at 1201 Lake Robbins Drive, The Woodlands, Texas 77380, Eni with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, and Noble with its principal office at 1001 Noble Energy Way, Houston, Texas 77070 in the penal sum of One Hundred Million and No/100 Dollars ($100,000,000,00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Liberty Mutual Insurance Company | $40,000,000.00 | 022059149 |
| The Hanover Insurance Company | $45,000,000.00 | 1038705 |
| Travelers Casualty and Surety Company of America | $15,000,000.00 | 106854941 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligees have entered into that certain Purchase And Sale Agreement dated effective November 1, 2013, as amended by that certain First Amendment To Neptune Spar Purchase And Sale Agreement, dated effective October 1, 2014 (hereinafter collectively called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligees to the Principal of the interests of Obligees in the Neptune Spar and associated wells and subsea pipelines and equipment defined therein as those certain "Assets" identified on Exhibit A-1 (the "Wells") and Exhibit A-2 (the "Equipment") of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "Bond"), together with, among other rights and obligations, all plugging, abandonment and decommissioning obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligees at the time of the execution of the First Amendment To Neptune Spar Purchase And Sale Agreement  a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligees, in substantially the same form attached as Exhibit B to the Purchase Agreement.

Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the plugging, abandonment and decommissioning obligations described above, or to the extent the Obligees may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out any or all of the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond and the Obligees have presented to the Surety a written notice that the Principal is in default of such plugging, abandonment and decommissioning obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days of its receipt of such written notice of default, formally elect by notice to Obligees to either: (I) Pay to the Obligees an amount equal to the actual charges incurred by Obligees in performing the plugging, abandonment and decommissioning

obligations within twenty (20) days of receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein) and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted Plugging, Abandonment and Decommissioning Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been properly performed and discharged, thereby reducing the Penal Sum by an amount equal to the costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

In the event Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then SURETY **SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEES, THEIR AFFILIATES, AND THEIR AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEES CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEES), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of three (3) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligees, whichever is later, and, subject to the three (3) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligees to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that has an** investment grade rating, as rated by Standard & Poor's or Moody's rating services, in the amount necessary to replace this Bond. If so posted, the Obligees will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligees, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Anadarko Petroleum Corporation Anadarko US Offshore LLC 1201 Lake Robbins Drive The Woodlands, Texas 77380 Attention: Frank Meyer

Eni Petroleum US LLC Eni US Operating Co. Inc. 1200 Smith Street, Suite 1700 Houston, Texas 77002 Attention: Gary F. Clifford

Noble Energy, Inc. 1001 Noble Energy Way Houston, Texas 77070 Attention: Daniel S. Mills

Liberty Mutual Insurance Company 175 Berkeley Street Boston, MA 02116 Attention: Todd Tschantz

The Hanover Insurance Company 440 Lincoln Street Worcester, MA 01653 Attention: Dan Orna

Travelers Casualty and Surety Company of America One Tower Square Hartford, CT 06183-6014 Attention: Craig Ulmer Telephone: 860-954-2152

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on March 30, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**                                    **PRINCIPAL:**

_____        FIELDWOOD ENERGY, LLC.

_____
Print Name                                    By:_____
                                              Name:_____
                                              Title:_____
                                              Date:_____


**WITNESS:**                                    **OBLIGEE:**

_____        NOBLE ENERGY, INC.

_____
Print Name                                    By:_____
                                              Name:_____
                                              Title:_____
                                              Date:_____

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY

By: _____

Name: _____Laura E. Sudduth_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

**WITNESS:**

Gloria Mouton
Print Name

**SURETY:**

THE HANOVER INSURANCE COMPANY

By: _____

Name: ___Gina A. Rodriguez___

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____

Name: _____Laura E. Sudduth_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

<u>Exhibit A</u>

Attached to and made a part of Bond Nos. 022059149, 1038705 and 106854941 issued by Liberty Mutual Insurance Company, The Hanover Insurance Company and Travelers Casualty and Surety Company of America on behalf of Noble Energy, Inc,

A s s e t s

W e l l s

| Well Name | API No. |
|-----------|---------|
| VK 826 SS012 | 608164035800 |
| VK 826 A001 | 608164019401 |
| VK 826 A002 | 608164021900 |
| VK 826 A003 | 608164022000 |
| VK 826 A004 | 608164020500 |
| VK 826 A005 | 608164022100 |
| VK 826 A006 | 608164022200 |
| VK 826 A007 | 608164023600 |
| VK 826 A008 | 608164032400 |
| VK 826 A009 | 608164032501 |
| VK 826 A010 | 608164032601 |
| VK 826 A011 | 608164032700 |
| VK 826 A012 | 608164038101 |
| VK 826 A013 | 608164038200 |
| VK 826 A014 | 608164038001 |

<u>Equipment</u>

<u>Neptune Spar</u> (located on Viosca Knoll Block 826)
- Including but not limited to, the following spar components:
  - Topsides,
  - Hull,
  - On-platform mooring components,
  - Mooring lines, and
  - All transferrable equipment on Spar, including subsea cathodic protection system.

<u>Well (VK 826 S5012) Subsea Equipment</u>
- Including but not limited to, **the** following:
  - All subsea connections,
  - Subsea wellhead and Jumper, and
  - Risers, subsea manifolds, end terminations and equipment associated with Pipelines
  - set forth In Schedule 1,2(g) of the Purchase Agreement,

Subsea <u>Template</u>
All dry tree wells, well heads and installed downhole equipment associated with the Wells set forth in Exhibit A-1 of the Purchase Agreement.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7749008

American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That American States Insurance Company is a corporation duly organized under the laws of the State of Indiana, that First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America are corporations duly organized under the laws of the State of New Hampshire (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Gina A. Rodriguez; Laura E. Sudduth; Mario Arzamendi; Mary Ann Garcia; Melissa Haddick; Orlando Aguirre; Sandra Parker; Tannis Mattson; Terri L. Morrison

all of the city of Houston , state of TX each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 26th day of April , 2017 .



American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA      ss
COUNTY OF MONTGOMERY

On this 26th day of April , 2017 , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: Teresa Pastella
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS –** Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**Certificate of Designation –** The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization –** By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 5th day of April , 20 18 .

  

By: _____
Renee C. Llewellyn, Assistant Secretary

*(left margin)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

POA - FNICA, GICA & SICA
LMS_12874_022017

7 of 200

**THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

**KNOW ALL PERSONS BY THESE PRESENTS:**

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Melissa Haddick, Terri L. Morrison, Tannis Mattson, Sandra Parker, Gina A. Rogriguez,
Mary Ann Garcia and/or Mario Arzamendi Sr**

Of **Marsh USA, Inc., of Houston, TX**  each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:
     **Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance**

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

     RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety, any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

     RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this **28**th day of **April  2016**.



THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Robert Thomas, Vice President

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

J Michael Pere, Vice President

THE COMMONWEALTH OF MASSACHUSETTS     )
COUNTY OF WORCESTER                                         ) ss.

On this **28**th day of **April  2016** before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known  to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

DIANE J. MARINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 4, 2022

Diane J. Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 5th day of April, 2018

CERTIFIED COPY

Theodore G. Martinez, Vice President

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



## POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

**Attorney-In Fact No.** 230577

**Certificate No.** 006951196

**KNOW ALL MEN BY THESE PRESENTS:** That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____ Houston _____ , State of _____ Texas _____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____ 23rd _____ day of _____ August _____ , _____ 2016 _____ .

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____ 23rd _____ day of _____ August _____ , _____ 2016 _____ before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



## POWER OF ATTORNEY

**Farmington Casualty Company**
**Fidelity and Guaranty Insurance Company**
**Fidelity and Guaranty Insurance Underwriters, Inc.**
**St. Paul Fire and Marine Insurance Company**
**St. Paul Guardian Insurance Company**

**St. Paul Mercury Insurance Company**
**Travelers Casualty and Surety Company**
**Travelers Casualty and Surety Company of America**
**United States Fidelity and Guaranty Company**

Attorney-In Fact No.          230577

Certificate No. **006951196**

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of          Houston          , State of          Texas          , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this          23rd          day of          August          ,          2016          .

**Farmington Casualty Company**
**Fidelity and Guaranty Insurance Company**
**Fidelity and Guaranty Insurance Underwriters, Inc.**
**St. Paul Fire and Marine Insurance Company**
**St. Paul Guardian Insurance Company**

**St. Paul Mercury Insurance Company**
**Travelers Casualty and Surety Company**
**Travelers Casualty and Surety Company of America**
**United States Fidelity and Guaranty Company**

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the          23rd          day of          August          ,          2016          before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof**, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

## PERFORMANCE BOND

Bond No. 022220643

KNOW ALL MEN BY THESE PRESENTS:

**That,** Fieldwood Energy LLC, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with its principal office at 175 Berkeley Street, Boston, MA 02116 (hereinafter called the "Surety"), are held and firmly bound unto XH, LLC, with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 (hereinafter collectively called the "Obligee"), in the Penal Sum of One Million Eight Hundred Ninety-three Thousand One Hundred Seventy-eight and No/100 Dollars ($1,893,178.00) lawful money of the United States of America for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS Apache Corporation and XH, LLC are parties to the August 1, 2011 Agreement in which Fieldwood Energy LLC acquired XH, LLC assets from Apache Corporation on September 30, 2013 (hereinafter called the "Agreement"),  which Agreement is by reference made a part hereof and which provides for the sale and assignment from Obligee to Principal of the interests of Obligee in certain oil and gas leases and properties, including the oil and gas leases described on Annex 1 to this Performance Bond ("Bond"), all as more particularly described in the Agreement (collectively, the "Leases" and each individually, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells, platforms, facilities, equipment and pipelines existing on the Leases as of the date of the Agreement, including the wells described on Annex 2 (collectively, the "Wells" and individually, the "Well") (the Leases, Wells and such platforms, facilities, equipment and pipelines, being collectively referred to as the "Properties" and each as "Property"); and

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of any of the Leases, whether by operation of law or otherwise, this Bond shall remain in full force and effect until Principal has presented satisfactory evidence to Obligee, as set forth below, that all P&A Obligations (as such term is defined below) have been performed and discharged; and

WHEREAS, as used in this Bond, the term "P&A Obligations" means all obligations and liabilities of Principal to abandon, restore and remediate the Properties, whether arising before or after August 1, 2011 (the "Effective Time"), including obligations, as applicable to the Properties, to: (a) obtain plugging exceptions in the operator's name for each Well with a current plugging exception, or permanently plugging and abandoning a Well; (b) plug, abandon, and if necessary, re-abandon each Well; (c) remove all equipment and facilities, including flowlines, pipelines and platforms; (d) close all pits; and (e) restore and remediate the surface, subsurface and offshore sites associated with the Properties; and

WHEREAS, Principal has agreed to deliver to Obligee this Bond, executed by Principal and Surety, at the Closing as defined and contemplated by the Agreement; and

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising, out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder;

NOW THEREFORE, Principal and Surety agree as follows:

Surety hereby guarantees the full and faithful performance by Principal of, and compliance by Principal with, the P&A Obligations in accordance with all current and future requirements of applicable federal and state law or any agency, authority or body having, jurisdiction or authority over the Properties or any operations thereon, and in accordance with the Leases and the Agreement.

PROVIDED, HOWEVER, whenever the Principal shall present to Obligee satisfactory evidence that all of the P&A Obligations have been performed (and as set forth in the Agreement, such satisfactory evidence shall comprise executed forms or other written documentation as may be required by any governmental authority under applicable law to reflect completion of the P&A Obligations, including, without limitation, forms and documentation relating to plugging and abandonment activities, decommissioning activities, site clearance activities and pipeline abandonment or removal activities and completion of remedial activities), then this Bond shall be **null and void; otherwise, it shall remain in full force and effect** in the amount as provided.

In the event Principal fails to carry out its obligations to bear the cost and expense to perform the P&A Obligations for a Property or certain identified Properties, and Obligee has presented to Surety a written notice that Principal is in default of its obligation under the terms of the Agreement, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to Principal and Surety, Surety shall, within fifteen (15) days of such presentations: 1) Pay to Obligee an amount equal to the actual costs for performing the P&A Obligations with respect to the Property or identified Properties in an amount up to, but not exceeding, the maximum penal amount of this obligation and the penal amount of this obligation shall be further reduced by the amount of this obligation; or 2) Commence the necessary operations to perform the P&A Obligations with respect to the Property or identified Properties as set forth in the Agreement.

In the event Obligee commences or completes the P&A Obligations with respect to a Property or identified Properties upon Principal's default under the terms of the Agreement, Surety's obligations shall remain the same as set forth in this Bond regarding payment to Obligee as set forth above.

If Surety shall decide, upon default by Principal, to commence, or cause to be commenced, the performance of the aforementioned P&A Obligations, said performance shall continue until such time as the P&A Obligations have been met, thereby reducing the penal amount as set forth herein. **Surety agrees to indemnify, defend, and hold harmless Obligee, its directors, and agents from all claims, demands, and causes of action for personal injury, death, property and/or environmental damage resulting in whole or in part from Surety's or Surety's contractors' negligence, whether joint (including with Obligee or Principal) active, passive, concurrent or sole, or willful misconduct with respect to the performance of the P&A Obligations, if and only if Surety elects, as stated herein, to commence the aforementioned P&A Obligations in lieu of payment to Obligee.**

Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits attached thereto shall release Principal and Surety or either of them from their liability under this Bond. Notice to Surety of any such amendment or supplement is hereby waived, except to the extent that is herein provided.

No forbearance of Obligee, to Principal, shall release Principal and Surety from their liability under this Bond except where Obligee agrees to reduce the penal amount as provided above. No assignment of the Agreement or of the Property by the Principal, its successors and assigns, and no assignment of the Agreement by operation of law or consent of Obligee or otherwise shall in any degree relieve Principal and Surety of their obligations under this Bond except as provided herein. No delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in case of default on the part of Principal or Surety shall in any degree relieve Principal and Surety of their obligations under this Bond except as herein stated.

No assignment, in whole or in part, of the Agreement or of the Properties by Principal, its successors and assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal shall in any degree relieve Principal and Surety or either of their obligations under this Bond.

HOWEVER, if upon assignment, in whole or in part, of the Agreement or the Property or any Well and facilities thereon by Principal, its successors or assigns, Principal may cause its assignee to post security, in the form of a bond or other acceptable security from Surety, or a surety acceptable to Obligee, covering the same obligations as stated herein as to the assigned interest ("Transferee Bond"). The penal sum provided for in the Transferee Bond with respect to such assigned Properties shall be in an amount equal to the estimated cost to perform the P&A Obligations with respect to the assigned Property, which cost estimate shall be subject to Obligee's approval.

No right or action shall accrue on this Bond to or for the use of any person or corporation other than Principal, Obligee, their respective successors and assigns.

NOW THEREFORE, Principal and Obligee agree that any dispute, claim, or controversy concerning the interpretation of this Bond or the Agreement or any party's compliance with the terms of this Bond shall be resolved in accordance with the terms, conditions, and procedures in Article 17 of the Agreement and each agrees not to prosecute or commence any suit or action against the other(s) relating to any such matters.

This Bond is subject to the provisions of Section 8.04(f) of the Agreement including, without limitation, the redetermination provisions that may serve to adjust the penal sum provided for herein and the ability of Obligee to draw on the Bond, in whole or in part, as expressly provided for therein subject, however, to the following conditions. In the event that Obligee draws on this Bond pursuant to its rights under Sections 8.04(f)(2)(B)—(C), then it is expressly agreed that Obligee shall first obtain Surety's written consent. Further, Surety shall not be required to increase the penal sum provided for in this Bond as a result of any redetermination made pursuant to the Agreement without its written consent. In the event such written consent from Surety is not obtained, Principal will be required to obtain an additional bond to cover the incremental penal sum increase as a result of such redetermination from a financial institution, mutually acceptable to Obligee and Principal, providing for terms substantially similar to those set forth in this Bond except as regards the penal sum amount. Any redetermination made pursuant to the Agreement, shall not include estimated costs with respect to P&A Obligations for which a Transferee Bond has been obtained and approved by Obligee. Obligee will accept such Transferee Bond as financial security for the assigned Property. Further, as provided in Section 8.04(f)(1) of the Agreement, when it is determined that the estimated costs of the total remaining liabilities of Principal with respect to the P&A Obligations is less than one hundred sixty-two thousand two hundred seventy-two and $^{N}/100$ Dollars ($162,272.00), then this Bond shall be null and void and Obligee and Principal shall execute such documentation as is reasonably necessary in order to release and relinquish the Bond, which documentation will be executed promptly but in any event not less than sixty (60) days of being presented for execution. Further, Obligee agrees that in the event XH, LLC terminates its corporate existence, then it will appoint another entity or, at its sole option, its parent company, as agent to act on its behalf with respect to the obligations stated in Section 8.04(0 of the Agreement.

In the event of a conflict or inconsistency between the terms and provisions of this Bond and those set forth in the Agreement, as between Principal and Obligee, the terms and provisions of the Agreement shall control.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on May 14, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

Principal: Fieldwood Energy LLC

Witnesses:

By: _____

Name: __John H. Smith_____

Title: __Senior Vice President____

Date: _____

Surety: Liberty Mutual Insurance Company

Witnesses:

By: _____

Name: Laura E. Sudduth_____

Terri Morrison – Witness

Title: _Attorney-In-Fact_____

Tannis Matson – Witness

Date: May 14, 2018_____

Accepted by Obligee

Witnesses:

By: _____

Name: _____

Title: _____

Date: _____

ANNEX I

## DESCRIPTION OF LEASES

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3203-0001-00 | **East Cameron 9 & 14 - OCS-G 1440**<br>SE/4; E/2SW/4 of Block 9, East Cameron Area, that portion in Zone 2, as that zone is defined in the agreement between the United States and the State of Louisiana, October 12, 1956; and E/2NW/4;NE/4 of Block 14, East Cameron Area | Record Title | 50.00000% | XH, LLC |

ANNEX 2

**DESCRIPTION OF WELLS**

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Type |
|----------|---------------|----------------|-----------|-------|--------|---------|----------|-------------|------|
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #12 | #12 | East Cameron 9/14 | Offshore Louisiana | 177034060600S03 | Fieldwood Energy LLC | 401896 | OIL |
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #13 | #13 | East Cameron 9/14 | Offshore Louisiana | 177034101300S04 | Fieldwood Energy LLC | 401897 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-06 | B-06 | East Cameron 9/14 | Offshore Louisiana | 177032003700S03 | Fieldwood Energy LLC | - | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-07 | B-07 | East Cameron 9/14 | Offshore Louisiana | 177032004000S04 | Fieldwood Energy LLC | 401898 | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-08 | B-08 | East Cameron 9/14 | Offshore Louisiana | 177032004200S01 | Fieldwood Energy LLC | - | GAS |
| EC14B | OCS-G-01440 EC 9 | OCS-G-01440 EC 14 B-09 | B-09 | East Cameron 9/14 | Offshore Louisiana | 177032004300S04 | Fieldwood Energy LLC | 401899 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-10STI | B-10STI | East Cameron 9/14 | Offshore Louisiana | 177032004601S03 | Fieldwood Energy LLC | 401900 | OIL |
| EC14CF | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 CF-01 | CF-01 | East Cameron 9/14 | Offshore Louisiana | 177030032800S04 | Fieldwood Energy LLC | - | OIL |
| EC14CF | OCS-G-13572 EC 14 | OCS-G-13572 EC 14 CF-02 | CF-02 | East Cameron 9/14 | Offshore Louisiana | 177034686000S05 | Fieldwood Energy LLC | 402648 | GAS |

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**

+This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8032778

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company          West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint,_____

**Sandra Parker,   Terri L Morrison ,  Tannis Mattson , Gina A Rodriguez , Mary Ann Garcia, Mario Arzamendi, Orlando Aguirre, Laura E. Sudduth, Gloria Mouton, Marissa Shepherd**

all of the city of Houston, state of TX each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in the penal sum not exceeding TWENTY FIVE MILLION*****DOLLARS ($25,000,000.00*****) each, and the execution of such undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 8th day of March, 2018.

 

The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY          ss

On this 8th day of March, 2018, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 14th day of May, 2018.

 

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

 Liberty Mutual®

# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

**Premium or Claim Disputes**

Should you have a dispute concerning a premium, you should contact the agent first.  If you have a dispute concerning a claim, you should contact the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**Attach This Notice To Your Policy:**

This notice is for information only and does not become a part or condition of the attached document.

# Electronic Proof of Claim_CYCW!28824[[CSA#7 711#CF]]

Final Audit Report                                        2020-11-21

| | |
|---|---|
| Created: | 2020-11-21 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAFp-uAg4VKE6j-W1h4Gjz4gT5z6Iq1dV1 |

## "Electronic Proof of Claim_CYCW!28824[[CSA#7711#CF]]" History

📄 Web Form created by Prime Clerk (epoc@primeclerk.com)
2020-11-21 - 2:21:28 AM GMT

📎 Brandon K. Bains (lmurphy@l-llp.com) uploaded the following supporting documents:
  📎 Attachment
2020-11-21 - 2:29:41 AM GMT

📄 Web Form filled in by Brandon K. Bains (lmurphy@l-llp.com)
2020-11-21 - 2:29:41 AM GMT- IP address: 47.187.54.206

✒️ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
2020-11-21 - 2:29:44 AM GMT- IP address: 47.187.54.206

✅ Agreement completed.
2020-11-21 - 2:29:44 AM GMT

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| | |
|---|---|
| **Fill in this information to identify the case (Select only one Debtor per claim form):** | |

☒ Fieldwood Energy LLC (20-33948)      ☐ GOM Shelf LLC (20-33954)

☐ Dynamic Offshore Resources NS, LLC (20-33947)    ☐ Bandon Oil and Gas GP, LLC (20-33955)

☐ Fieldwood Energy Inc. (20-33949)     ☐ Bandon Oil and Gas, LP (20-33956)

☐ Fieldwood Energy Offshore LLC (20-33950)    ☐ Fieldwood Energy SP LLC (20-33958)

☐ Fieldwood Onshore LLC (20-33951)     ☐ Galveston Bay Pipeline LLC (20-33959)

☐ Fieldwood SD Offshore LLC (20-33952)    ☐ Galveston Bay Processing LLC (20-33960)

☐ FW GOM Pipeline, Inc. (20-33953)     ☐ Fieldwood Offshore LLC (20-33961)

## Modified Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | Liberty Mutual Insurance Company<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. | **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? _____ |
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**     **Where should payments to the creditor be sent?** (if different)<br><br>Contact phone   214-722-7171       Contact phone _____<br>Contact email   bbains@l-llp.com     Contact email _____ |
| 4. | **Does this claim amend one already filed?** | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known)_____   Filed on _____<br>                                                                          MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

**Claim Number: 502**                     **Proof of Claim**

**Part 2:     Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

**7.   How much is the claim?**     $ 69,393,178

**Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                    $_____

**Amount of the claim that is secured:**        $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**        $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**        $_____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | *\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.* | |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $_____ |

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Brandon K. Bains*
Brandon K. Bains (Nov 20, 2020 20:35 CST)

**Email:** Lmurphy@l-llp.com

Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Brandon K Bains |
| | First name          Middle name          Last name |
| Title | Attorney |
| Company | Langley LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | P.O. Box 94075 |
| | Number          Street |
| | Southlake                    TX          76092 |
| | City                         State        ZIP Code |
| Contact phone | 214-722-7171          Email  bbains@l-llp.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   **(attach below)**                    ☐ **I do not have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

**Do not file these instructions with your form**

## ADDENDUM TO MASTER PROOF OF CLAIM BY
## LIBERTY MUTUAL INSURANCE COMPANY

This Addendum is submitted with and incorporated in the Proof of Claim filed in Case No. 20-33948, *In re: Fieldwood Energy, LLC et al.*, by Liberty Mutual Insurance Company ("Liberty").

## CREDITOR

Liberty is a Massachusetts corporation and is authorized to conduct business in the State of Texas. Liberty is a creditor, having issued, as surety, numerous miscellaneous commercial bonds on behalf of Fieldwood Energy, LLC (the "Debtors") or their affiliates as principal.

The Debtors executed the following indemnity agreements with Liberty and its affiliates (the "GIA"):

| Date | Agreement | Indemnitors | Surety |
|------|-----------|-------------|--------|
| | | | |
| April 2, 2018 | General Agreement of Indemnity | Fieldwood Energy, LLC | The Liberty Insurance Company |

Under the GIA, the Debtors agreed to indemnify the Surety from and against all loss, cost and expense, including attorneys' fees, incurred by the Surety by reason of the extension of surety credit to any of the Debtors. The Debtors also promised to pay all premium due on the Bonds. Liberty requires annual premium payments in order to process renewal of the Bonds.

A true and correct copy of the GIAs are attached hereto as Exhibit "A-1."

## BASIS OF THE CLAIM

Liberty faces continued exposure on the bonds itemized in the attached Exhibit "A-2" (the "Bonds"). The Bonds were issued prior to the petition date in this case and remain subject to potential claims against Liberty by the obligees thereof.

Liberty's claims are based on:

a.  its rights under the GIA;

b.  its rights as a surety to common law indemnity and exoneration; and

c.  its rights under contract and otherwise as subrogee to and/or assignee of the rights of those persons entitled to make claim on the Bonds.

With respect to the claims under contract and otherwise as subrogee to those persons entitled to assert rights under the Bonds, Liberty hereby asserts such claims if and to the extent such persons have not filed and do not file their own proofs of claim timely.

## AMOUNT OF CLAIM

The claim asserted herein is unliquidated in part at this time.

The Debtors are, at the date of this filing, indebted and liable to Liberty in at least the amount of $69,393,178 based on the total amount of Liberty's exposure under the Bonds, based on their penal sum. The Debtors are also liable to Liberty for attorneys' fees and expenses incurred by Liberty as a result of issuing the Bonds and other bonds on behalf of the Debtors. Liberty also faces exposure in an unknown amount for any post-petition premium payments that are not made by the Debtors. The Debtors are jointly and severally liable to Liberty to-date in the total amount of at least $69,393,178.

## CLASSIFICATION OF AND SECURITY FOR CLAIM

1.      Liberty is filing a separate unsecured proof of claim in the amount of $69,393,178. The Debtors are jointly and severally liable to Liberty for the claim amount.

2.      Liberty has a contingent, unliquidated priority claim pursuant to 11 U.S.C. § 507(a)(2) for any post-petition premium payments that are not made by the Debtors. The premium payments are actual, necessary costs of preserving the Debtors' estates incurred in conjunction with renewal of the Bonds constituting administrative expenses under 11 U.S.C. § 503(b)(1)(A). As the Debtors are continuing to operate, the Bonds continuing in force is necessary to preserve the Debtors' estates. Liberty is unable to determine the amount of its priority claim at this time because there are currently no outstanding premium payments owed by the Debtors and the Bonds renew on a rolling basis.

3.      Liberty reserves the right to assert other priority claims, to the extent they are unsecured, under 11 U.S.C. § 507(a)(4) and § 507(a)(5), if and to the extent it pays claims on the Bonds that qualify for priority treatment pursuant to these sections of the Bankruptcy Code.

4.      Notwithstanding the foregoing, Liberty reserves the right to assert that certain portions of its claim are entitled to administrative priority if and to the extent that any of the Bonds covers losses that occur or have occurred post-petition.

## RESERVATION OF RIGHTS AND CLAIMS

Liberty reserves all rights accruing to it as surety or otherwise, and the filing of this Proof of Claim is not intended to be and shall not be construed as: (a) an election of rights or remedies, or (b) a waiver of any past, present or future event of default on the part of the Debtors or any other person, or (c) a waiver or limitation of any rights of Liberty.

Without prejudice to its position that no liability exists with respect to all bonds terminated, canceled, released or replaced prior to the date of this Proof of Claim, Liberty asserts a contingent claim with respect to those bonds in the event any claim should be made upon them.

Liberty reserves all rights and remedies which it may have, in addition to filing of and pursuit of this Proof of Claim, against any other person or entity, including (without limitation): (i) rights against indemnitors, other guarantors, successors in interest or agents; (ii) rights against

other persons against which the Debtors, or any other subrogor of Liberty, has rights, and to which rights Liberty succeeds by virtue of becoming subrogated to such rights; (iii) the right to assert some or all of Liberty's claim as an administrative claim, whether or not such claim is stated herein; and (iv) the right to assert any of the matters asserted herein by way of defense, counterclaim, offset or recoupment against any claim asserted against Liberty by the Debtors or any representative or affiliate thereof or successor thereto.

Liberty reserves the right to assert as administrative claims those claims arising from breaches of any contract that the Debtors have assumed or will assume.

Liberty reserves the right to assert as administrative claims those claims arising through subrogation or assignment.

Liberty reserves any and all defenses to claims that have been or may hereafter be asserted against it under any of the Bonds. Nothing herein shall be deemed an admission of liability under the continued effectiveness of, or the validity of, the Bonds.

Liberty reserves all rights available to it by applicable law or rule to amend this Proof of Claim based on additional facts and circumstances giving rise to additional claims and upon circumstances giving rise to additional claims and upon claims that are presently contingent becoming fixed and upon determination of liquidated amounts for the portions of the claim made hereunder which is not presently liquidated.

## LIST OF EXHIBITS

Exhibit "A-1" – Indemnity Agreements

Exhibit "A-2" – List of Open Bonds

# EXHIBIT A-1



# GENERAL AGREEMENT OF INDEMNITY

THIS AGREEMENT is made by the Undersigned in favor of Surety for the purpose of indemnifying it from all loss and expense in connection with any Bonds for which Surety now is or hereafter becomes surety for any of the following as Principal: Fieldwood Energy, LLC, or as otherwise provided in the definition of Principal below.

In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

**DEFINITIONS:** Where they appear in this agreement, the following terms shall be considered as defined in this section:

**Principal:** Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests and/or:

    (i)     any other entity added to this agreement as Undersigned and/or Principal by written amendment;

    (ii)    any Principal(s)' subsidiaries or affiliates, whether present or future, and whether directly or indirectly held; and/or

    (iii)   any other entity or person for whom Surety issues a Bond in response to a request from any Principal or any of the Undersigned (including requests from their agents, brokers or producers);

and as to all, whether they act alone or in joint venture with others not named herein.

**Bond:** Any and all bonds, undertakings or instruments of guarantee and any renewals or extensions thereof executed by Surety on behalf of Principal and issued before, on or after the date of this Agreement.

**Surety:** Any member of the Liberty Mutual Group, including but not limited to Liberty Mutual Insurance Company and any other company that is part of or added to the Liberty Mutual Group, severally not jointly. If Surety procures the execution of any Bond by other sureties, executes any Bond with co-sureties, or reinsures any portion of any Bond with reinsuring sureties, then those entities and their successors and assigns shall be included in this definition.

**INDEMNITY TO SURETY:** Undersigned agree to pay to Surety upon demand:

1.    All loss and expense, including reasonable attorney fees, incurred by Surety by reason of having executed any Bond or incurred by it on account of any breach of this agreement by any of the Undersigned, or by reason of the refusal to execute any Bond;

2.    An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond;

3.    Any premium due for any Bond, computed according to the rates currently charged by Surety, including renewal premiums until proof satisfactory to Surety is furnished of its discharge from liability under any Bond.

With respect to claims against Surety:

1.    Surety shall have the exclusive right for itself and the Undersigned to determine in its sole and absolute discretion whether any claim or suit upon any Bond shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2.    Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any obligation with respect to which Surety has issued any Bond.

3.    Surety's determination in its sole and absolute discretion of the foregoing shall be final and conclusive upon the Undersigned.

4.    An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

5.    Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

6.    Undersigned authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Principal.

**GENERAL PROVISIONS:**

1.    Assent by Surety to changes in any Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety.

2.    Surety shall have the right to decline to execute any Bond.

3.    Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration, and the right of subrogation. The security interest, trust, and other rights granted herein will not be deemed a waiver of Surety's equitable subrogation rights or other rights, said security in rights being in addition to the rights of exoneration, subrogation, and other rights to which Surety is entitled to under law or in equity.

4.  Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the Undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

5.  The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond or Bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s), whether Surety will have made any payment or established any reserve therefor. The Undersigned acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Undersigned confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

6.  Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

7.  In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

8.  Execution by Principal or any of the Undersigned of any application for any Bond, or of any other agreement of indemnity on behalf of Principal, or the taking of indemnity of any other person by Surety with respect to any Bond of Principal, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.

9.  All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes.

10. The Undersigned has relied upon its own due diligence in making its own independent appraisal of Principal *(note: when there are indemnitors other than Principal)* and its business and financial condition, will continue to be responsible for making its own independent appraisal of such matters, and has not relied upon and will not hereafter rely upon Surety for information. Surety has no duty to inform any of the undersigned Indemnitors of the financial condition or other affairs related to Principal.

11. The Undersigned shall remain responsible to Surety under this agreement regardless of any change in the relationship of the Undersigned with the Principal.

12. This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws principles thereof), except to the extent superseded by U.S. federal law. As to all legal actions or proceedings related to this Agreement, Undersigned consent and agree to the general jurisdiction of any state or Federal court of the United States or its territories having proper subject matter jurisdiction or in which claim may be brought against Surety under any Bond, and hereby waive any claim or defense in such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

**TERMINATION:** This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Principal must:

1.  Give written notice to Surety at its home office, 2200 Renaissance Blvd., Suite 400, King of Prussia, PA 19406-2755, by certified or registered mail of such termination;

2.  State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.

After the effective date of termination, the Undersigned giving notice shall be or remain liable hereunder for Bonds executed, authorized, renewed, or extended prior to such date. Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

Dated as of this <u>2nd</u> day of <u>April</u> , in the year <u>2018</u>.

*By signing below, each individual executing this Agreement on behalf of a business entity, and each business entity executing this Agreement on behalf of another business entity, represents and warrants that he, she or it is **duly authorized** to bind such entity to all of the terms and conditions of this Agreement:*

**ATTEST OR WITNESS:**                                    **BY:**

                                                         **Fieldwood Energy, LLC**
                                                         **T.I.N. 46-1326778**
                                                         **2000 West Sam Houston Parkway South,**
                                                         **Houston, TX 77042**

By: _____                              By: _____ (Seal)
    John H. Smith                                            Michael T. Dane
    Senior Vice President – Land and Business Development     Senior Vice President and Chief Financial Officer

**NOTARY ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ___Texas___ )

County of ___Harris___ )

On _4|2|18_ (Date) before me, _Tiffany Penry_ (Notary), personally appeared _Michael T. Dane_ (Signor), who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person(s), or the entity(ies) upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___Texas___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ **(Seal)**

TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

Notary Public residing at: _7358 Regency Square Ct. Houston, Tx 77036_
My commission expires: _12|18|2018_

General Agreement of Indemnity
Rev. 12/16

# EXHIBIT A-2

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## FORM OF MARATHON PERFORMANCE BOND

### PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the *"Principal"*) and Sirius America Insurance Company with an office at 180 Glastonbury Blvd, Suite 403, Glastonbury, CT 06033 and Liberty Mutual Insurance Company with an office at 175 Berkeley Street, Boston, MA 02116 (collectively, the *"Surety"),* are held and firmly bound unto Marathon Oil company with its principal office at 5555 San Felipe, Houston, Texas 77056, (the *"Obligee"),* in the penal sum of Fifty Five Million and No/100 Dollars **($55,000,000)** lawful money of the United States of America (the *"Penal Sum")* for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Sirius America Insurance Company | $27,500,000.00 | Bond No.7000000302 |
| Liberty Mutual Insurance Company | $27,500,000.00 | Bond No. 022220669 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated June 20, 2018, (the *"Purchase Agreement"),* which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond"),* together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations")*, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement")* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount")*, exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount")*, the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR *ASSERTED* BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' ORSUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Marathon Oil Company
5555 San Felipe
Houston, Texas 77056
Attention:_____

Fieldwood Energy LLC
2000 W. Sam Houston Parkway Suite 1200
Houston, Texas 77042
Attention: _____

Sirius America Insurance Company
180 Glastonbury Blvd, Suite 403
Glastonbury, CT 06033
Attention: Surety Claims Department

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

*(signature pages follow]*

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be Effective on <u>July 2, 2018</u>, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

MARATHON OIL COMPANY

By:_____
Name:_____
Title:_____
Date:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H – Form of Surety Bond

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY

By
Name:   Gina A. Rodriguez
Title:       Attorney-In-Fact
Date:    July 2, 2018

**WITNESS:**

Tannis Mattson
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY

By
Name:  Gina A. Rodriguez
Title:       Attorney-In-Fact
Date:    July 2, 2018

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit "A"**

**Assets**

| Field | Asset Name | Asset | Acquired Interest | Bond Allocation |
|---|---|---|---|---|
| *Troika Assets* | | | | |
| Troika | TA-1 | Well | 50% | 8,100,000 |
| Troika | TA-2 | Well | 50% | 8,100,000 |
| Troika | TA-3 | Well | 50% | 8,100,000 |
| Troika | TA-4 | Well | 50% | 8,100,000 |
| Troika | TA-5 | Well | 50% | 8,100,000 |
| Troika | TA-6 | Well | 50% | 12,000,000 |
| Troika | Subsea Facilities | Subsea Infrastructure | 50% | 1,000,000 |
| Troika | 11393 | Pipeline | 50% | 750,000 |
| Troika | 11396 | Pipeline | 50% | 750,000 |
| **Total Troika** | | | | **55,000,000** |
| | | | | |
| *Gunflint Assets* | | | | |
| Gunflint | 2 | Well | 18% | 5,500,000 |
| Gunflint | 4 | Well | 18% | 5,500,000 |
| Gunflint | Subsea Facilities | Subsea Infrastructure | 18% | 1,000,000 |
| Gunflint | 19362 | Pipeline | 18% | 250,000 |
| Gunflint | 19374 | Pipeline | 18% | 250,000 |
| Gunflint | 19478 | Pipeline | 18% | 250,000 |
| Gunflint | 19479 | Pipeline | 18% | 250,000 |
| Gunflint | 19154/19365 | Pipeline | 18% | 1,000,000 |
| Gunflint | 19155/19432 | Pipeline | 18% | 1,000,000 |
| **Total Gunflint** | | | | **15,000,000** |
| | | | | |
| **Total** | | | | **70,000,000** |

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

## Exhibit "B"

To be attached and form part of Bond No._____ issued by ._____ , (as Surety), effective _____, 2018

In the amount of          $(_____)

On behalf of:          Fieldwood Energy LLC (as Principal)
In favor of              Marathon Oil Company,(as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**

_____and NO/100 Dollars($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the _____day of _____20_____

Signed, sealed and dated the _____day of _____20_____

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.
By:_____
Name:_____
Title:_____

**SURETY:**

SIRIUS AMERICA INSURANCE COMPANY
By:_____
Name:_____
Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Acknowledged By: Marathon Oil Company**

By:_____

Name:_____

Title:_____

Attached to and made part of that Purchase and Sale Agreement by and among Marathon Oil Company, as Seller, and Fieldwood Energy LLC as Buyer

Exhibit H — Form of Surety Bond

**Exhibit I — Form of Assignment of Record Title Interest (BOEM Form 0150)**

WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND



**Sirius**
America
Insurance Company

## POWER OF ATTORNEY

Attorney-In Fact No. 1800001-403001                                    Certificate No. _000243_

**KNOW ALL PERSONS BY THESE PRESENTS:** That Sirius America Insurance Company is a stock insurance company duly organized and existing under the laws of the State of New York (hereinafter the "Company"), and that the Company does hereby make, constitute and appoint

Terri L. Morrison, Gina A. Rodriguez, Mary Ann Garcia, Gloria P. Mouton, Marissa Shepherd, Tannis Mattson, Laura E. Sudduth

of the City of _Houston_                        , State of _Texas_                        , its true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance or conditional undertaking on behalf of the Company.

IN WITNESS WHEREOF, the Company has caused this instrument to be signed and its corporate seal to be hereto affixed, this 2nd day of July, 2018

By: _____
D. Matthew Olsen
Senior Vice President

STATE OF CONNECTICUT
COUNTY OF HARTFORD ss.

On this 2nd day of July, 2018 before me personally appeared D. Matthew Olsen, who acknowledged himself to be the Senior Vice President of Sirius America Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporation by himself as a duly authorized officer.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission expires the 30 day of November, 2022.

_Patricia A. McAndrew_ , Notary Public

**PATRICIA A. McANDREW**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES NOV. 30, 2022

**WARNING: THIS POWER OF ATTORNEY IS INVALID UNLESS PRINTED ON BLUE BACKGROUND**

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Board of Directors of Sirius America Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chief Executive Officer, the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in nature of a bond, recognizance, or conditional undertaking, and any of the said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chief Executive Officer, the President, or any Senior Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Senior Vice President, the Corporate Secretary or any Assistant Secretary and duly attested by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Senior Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached; and it is

**FURTHER RESOLVED,** that the foregoing shall not be deemed an exclusive statement of the powers and authority of officers, employees and other persons to act for and on behalf of the Company, and it shall not limit or otherwise affect the exercise of any such power or authority otherwise validly granted or vested.

I, Robert P. Kuehn, the undersigned, Secretary, of Sirius America Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Company, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of the Company this 7th day of December, 2017.

By: _____
Robert P. Kuehn
Secretary

To verify the validity of this Power of Attorney, please call 1.844.312.4357. Please refer to the Certificate No. and other details in this Power of Attorney as well as the details of the bond to which the power is attached.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8117804

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company      West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, __Orlando Aguirre; Mario Arzamendi; Mary Ann Garcia; Tannis Mattson; Terri L. Morrison; Gloria Mouton; Sandra Parker; Gina A. Rodriguez; Marissa Shepherd; Laura E. Sudduth__

all of the city of __Houston__ , state of __TX__ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this __4th__ day of __June__ , __2018__ .



The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _David M. Carey, Assistant Secretary_

STATE OF PENNSYLVANIA      ss
COUNTY OF MONTGOMERY

On this __4th__ day of __June__ , __2018__ , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member: Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS – Section 12. Power of Attorney.** Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings.** Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __2nd__ day of __July__ , 20 __18__ .

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.



To obtain information or make a complaint:

You may call the Surety's toll free telephone number for information or to make a complaint at 1-844-312-4357.

You may contact the Texas Department of Insurance to obtain information on companies, coverage, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance at:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://wvvw.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the Surety first. If the dispute is not resolved, you may contact the Texas Department of Insurance (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANCE**

Para obtener información o presentar una queja:

Usted puede llamar al número de teléfono gratis de para información o para someter una queja al 1-844-312-4357

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas en:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax# 512-475-1771
web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el Surety primero. Si la disputa no se resuelve, puede comunicarse con el Departamento de Seguros de Tex (TDI).

**UNA ESTEAVISOA SU POLIZA:** Este aviso es solo para proposito de información y no se convierte en parte o condición del documento adjunto.

TX Rider



# Important Notice

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

> 1-800-252-3439

You may write the Texas Department of Insurance:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

## Premium or Claim Disputes

Should you have a dispute concerning a premium, you should contact the agent first.  If you have a dispute concerning a claim, you should contact the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

## Attach This Notice To Your Policy:

This notice is for information only and does not become a part or condition of the attached document.



# NOTIFICACION IMPORTANTE

PARA OBTENER INFORMACION O REALIZAR UNA QUEJA:

Usted puede escribir la notificación y dirigirla a Liberty Mutual Surety en la siguiente dirección:

> Liberty Mutual Surety
> Interchange Corporate Center
> 450 Plymouth Road, Suite 400
> Plymouth Meeting, PA 19462-8284

Usted puede contactar al Departamento de Seguros de Texas para obtener informacion acerca de las compañías, coberturas, derechos o quejas:

> 1-800-252-3439

Usted puede escribir al Departamento de Seguros de Texas a la siguiente dirección:

> P. O. Box 149104
> Austin, TX 78714-9104
> Fax: (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

## Disputas acerca de primas o reclamos

En caso de que usted quiera elevar una disputa concerniente al tema de primas, por favor contacte en primer lugar a su agente. Si el tema de la disputa es relativo a un reclamo, por favor contacte a la compañía de seguros en primer término. Si usted considera que la disputa no es apropiadamente resuelta en estas instancias, entonces usted puede contactar al Departamento de Seguros de Texas..

## Adjunte esta notificacion a su póliza:

Esta notificación es a los solos fines de su información y la misma no forma parte o condiciona de manera alguna el documento adjunto.

LMIC-3500

Rev. 7.1.07

EXHIBIT "A"

PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC., with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with an office at 175 Berkeley Street, Boston, MA 02116, and The Hanover Insurance Company, with an office at 440 Lincoln Street, Worcester, MA 01653, Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT 06183 as co-sureties (hereinafter collectively called the "Surety"), are held and firmly bound unto Anadarko Petroleum Corporation, Anadarko US Offshore LLC (the two collectively referred to herein as "Anadarko"), Eni Petroleum US LLC ("Eni") and Noble Energy, Inc. ("Noble"), together with Anadarko (collectively hereinafter called the "Obligees"), Anadarko with its principal office at 1201 Lake Robbins Drive, The Woodlands, Texas 77380, Eni with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, and Noble with its principal office at 1001 Noble Energy Way, Houston, Texas 77070 in the penal sum of One Hundred Million and No/100 Dollars ($100,000,000,00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Liberty Mutual Insurance Company | $40,000,000.00 | 022059149 |
| The Hanover Insurance Company | $45,000,000.00 | 1038705 |
| Travelers Casualty and Surety Company of America | $15,000,000.00 | 106854941 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligees have entered into that certain Purchase And Sale Agreement dated effective November 1, 2013, as amended by that certain First Amendment To Neptune Spar Purchase And Sale Agreement, dated effective October 1, 2014 (hereinafter collectively called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligees to the Principal of the interests of Obligees in the Neptune Spar and associated wells and subsea pipelines and equipment defined therein as those certain "Assets" identified on Exhibit A-1 (the "Wells") and Exhibit A-2 (the "Equipment") of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "Bond"), together with, among other rights and obligations, all plugging, abandonment and decommissioning obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligees at the time of the execution of the First Amendment To Neptune Spar Purchase And Sale Agreement a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligees, in substantially the same form attached as Exhibit B to the Purchase Agreement.

Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the plugging, abandonment and decommissioning obligations described above, or to the extent the Obligees may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out any or all of the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond and the Obligees have presented to the Surety a written notice that the Principal is in default of such plugging, abandonment and decommissioning obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days of its receipt of such written notice of default, formally elect by notice to Obligees to either: (I) Pay to the Obligees an amount equal to the actual charges incurred by Obligees in performing the plugging, abandonment and decommissioning

obligations within twenty (20) days of receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein) and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted Plugging, Abandonment and Decommissioning Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been properly performed and discharged, thereby reducing the Penal Sum by an amount equal to the costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

In the event Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then SURETY **SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEES, THEIR AFFILIATES, AND THEIR AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEES CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEES), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of three (3) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligees, whichever is later, and, subject to the three (3) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligees to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that has an** investment grade rating, as rated by Standard & Poor's or Moody's rating services, in the amount necessary to replace this Bond. If so posted, the Obligees will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligees, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Anadarko Petroleum Corporation Anadarko US
Offshore LLC 1201 Lake Robbins Drive The
Woodlands, Texas 77380 Attention: Frank Meyer

Eni Petroleum US LLC Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700 Houston, Texas
77002 Attention: Gary F. Clifford

Noble Energy, Inc.
1001 Noble Energy Way Houston, Texas 77070
Attention: Daniel S. Mills

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attention: Dan Orna

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on March 30, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

WITNESS:                             PRINCIPAL:

_____             FIELDWOOD ENERGY, LLC.

_____
Print Name                          By:_____
                                    Name:_____
                                    Title:_____
                                    Date:_____


WITNESS:                             OBLIGEE:

_____             NOBLE ENERGY, INC.

_____
Print Name                          By:_____
                                    Name:_____
                                    Title:_____
                                    Date:_____

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

LIBERTY MUTUAL INSURANCE COMPANY

By: _____

Name:_____Laura E. Sudduth_____

Title:_____Attorney-In-Fact_____

Date:_____April 5, 2018_____

**WITNESS:**

Gloria Mouton
Print Name

**SURETY:**

THE HANOVER INSURANCE COMPANY

By: _____

Name:___Gina A. Rodriguez___

Title:_____Attorney-In-Fact_____

Date:_____April 5, 2018_____

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____

Name:_____Laura E. Sudduth_____

Title:_____Attorney-In-Fact_____

Date:_____April 5, 2018_____

Exhibit A

Attached to and made a part of Bond Nos. 022059149, 1038705 and 106854941 issued by Liberty Mutual Insurance Company, The Hanover Insurance Company and Travelers Casualty and Surety Company of America on behalf of Noble Energy, Inc,

A s s e t s

W e l l s

| Well Name | API No. |
|---|---|
| VK 826 SS012 | 608164035800 |
| VK 826 A001 | 608164019401 |
| VK 826 A002 | 608164021900 |
| VK 826 A003 | 608164022000 |
| VK 826 A004 | 608164020500 |
| VK 826 A005 | 608164022100 |
| VK 826 A006 | 608164022200 |
| VK 826 A007 | 608164023600 |
| VK 826 A008 | 608164032400 |
| VK 826 A009 | 608164032501 |
| VK 826 A010 | 608164032601 |
| VK 826 A011 | 608164032700 |
| VK 826 A012 | 608164038101 |
| VK 826 A013 | 608164038200 |
| VK 826 A014 | 608164038001 |

Equipment

Neptune Spar (located on Viosca Knoll Block 826)
- Including but not limited to, the following spar components:
  - Topsides,
  - Hull,
  - On-platform mooring components,
  - Mooring lines, and
  - All transferrable equipment on Spar, including subsea cathodic protection system.

Well (VK 826 S5012) Subsea Equipment
- Including but not limited to, **the** following:
  - All subsea connections,
  - Subsea wellhead and Jumper, and
  - Risers, subsea manifolds, end terminations and equipment associated with Pipelines
  - set forth In Schedule 1,2(g) of the Purchase Agreement,

Subsea Template
All dry tree wells, well heads and installed downhole equipment associated with the Wells set forth in Exhibit A-1 of the Purchase Agreement.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7749008

American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That American States Insurance Company is a corporation duly organized under the laws of the State of Indiana, that First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America are corporations duly organized under the laws of the State of New Hampshire (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, __Gina A. Rodriguez; Laura E. Sudduth; Mario Arzamendi; Mary Ann Garcia; Melissa Haddick; Orlando Aguirre; Sandra Parker; Tannis Mattson; Terri L. Morrison__

all of the city of __Houston__, state of __TX__ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this __26th__ day of __April__, __2017__.



American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA     ss
COUNTY OF MONTGOMERY

On this __26th__ day of __April__, __2017__, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __5th__ day of __April__, 20__18__.

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

POA - FNICA, GICA & SICA
LMS_12874_022017

7 of 200

*Left margin, rotated text:* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*Right margin, rotated text:* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

**KNOW ALL PERSONS BY THESE PRESENTS:**

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,
**Melissa Haddick, Terri L. Morrison, Tannis Mattson, Sandra Parker, Gina A. Rogriguez,**
**Mary Ann Garcia and/or Mario Arzamendi Sr**

Of **Marsh USA, Inc., of Houston, TX** each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:
**Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance**

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety, any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this **28**th day of **April 2016**.

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Robert Thomas, Vice President

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

J. Michael Pere, Vice President

THE COMMONWEALTH OF MASSACHUSETTS    )
COUNTY OF WORCESTER                 ) ss.

On this **28**th day of **April 2016** before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.



Diane J. Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 5th day of April, 2018

CERTIFIED COPY

Theodore G. Martinez, Vice President

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

 **TRAVELERS**

# POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

**Attorney-In Fact No.**          230577

**Certificate No.** 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____ Houston _____ , State of _____ Texas _____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____ 23rd
day of _____ August _____ , 2016 .

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____ 23rd _____ day of _____ August _____ , _____ 2016 before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



**POWER OF ATTORNEY**

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.    230577

Certificate No. 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____ Houston _____, State of _____ Texas _____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____ 23rd _____ day of _____ August _____, 2016.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____ 23rd _____ day of _____ August _____, _____ 2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof**, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

Marie C. Tetreault
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

## PERFORMANCE BOND

Bond No. 022220643

KNOW ALL MEN BY THESE PRESENTS:

**That,** Fieldwood Energy LLC, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with its principal office at 175 Berkeley Street, Boston, MA 02116 (hereinafter called the "Surety"), are held and firmly bound unto XH, LLC, with an address of 810 Houston Street, Fort Worth, Texas 76102-6298 (hereinafter collectively called the "Obligee"), in the Penal Sum of One Million Eight Hundred Ninety-three Thousand One Hundred Seventy-eight and No/100 Dollars ($1,893,178.00) lawful money of the United States of America for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents.

WHEREAS Apache Corporation and XH, LLC are parties to the August 1, 2011 Agreement in which Fieldwood Energy LLC acquired XH, LLC assets from Apache Corporation on September 30, 2013 (hereinafter called the "Agreement"), which Agreement is by reference made a part hereof and which provides for the sale and assignment from Obligee to Principal of the interests of Obligee in certain oil and gas leases and properties, including the oil and gas leases described on Annex 1 to this Performance Bond ("Bond"), all as more particularly described in the Agreement (collectively, the "Leases" and each individually, the "Lease"), together with all rights and obligations in connection therewith, and also provides for the sale and assignment to Principal of all wells, platforms, facilities, equipment and pipelines existing on the Leases as of the date of the Agreement, including the wells described on Annex 2 (collectively, the "Wells" and individually, the "Well") (the Leases, Wells and such platforms, facilities, equipment and pipelines, being collectively referred to as the "Properties" and each as "Property"); and

WHEREAS, Principal and Surety agree that notwithstanding the subsequent termination of any of the Leases, whether by operation of law or otherwise, this Bond shall remain in full force and effect until Principal has presented satisfactory evidence to Obligee, as set forth below, that all P&A Obligations (as such term is defined below) have been performed and discharged; and

WHEREAS, as used in this Bond, the term "P&A Obligations" means all obligations and liabilities of Principal to abandon, restore and remediate the Properties, whether arising before or after August 1, 2011 (the "Effective Time"), including obligations, as applicable to the Properties, to: (a) obtain plugging exceptions in the operator's name for each Well with a current plugging exception, or permanently plugging and abandoning a Well; (b) plug, abandon, and if necessary, re-abandon each Well; (c) remove all equipment and facilities, including flowlines, pipelines and platforms; (d) close all pits; and (e) restore and remediate the surface, subsurface and offshore sites associated with the Properties; and

WHEREAS, Principal has agreed to deliver to Obligee this Bond, executed by Principal and Surety, at the Closing as defined and contemplated by the Agreement; and

WHEREAS, Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, Surety represents that it has duly executed a power of attorney, appointing the hereafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising, out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder;

NOW THEREFORE, Principal and Surety agree as follows:

Surety hereby guarantees the full and faithful performance by Principal of, and compliance by Principal with, the P&A Obligations in accordance with all current and future requirements of applicable federal and state law or any agency, authority or body having, jurisdiction or authority over the Properties or any operations thereon, and in accordance with the Leases and the Agreement.

PROVIDED, HOWEVER, whenever the Principal shall present to Obligee satisfactory evidence that all of the P&A Obligations have been performed (and as set forth in the Agreement, such satisfactory evidence shall comprise executed forms or other written documentation as may be required by any governmental authority under applicable law to reflect completion of the P&A Obligations, including, without limitation, forms and documentation relating to plugging and abandonment activities, decommissioning activities, site clearance activities and pipeline abandonment or removal activities and completion of remedial activities), then this Bond shall be **null and void; otherwise, it shall remain in full force and effect** in the amount as provided.

In the event Principal fails to carry out its obligations to bear the cost and expense to perform the P&A Obligations for a Property or certain identified Properties, and Obligee has presented to Surety a written notice that Principal is in default of its obligation under the terms of the Agreement, and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to Principal and Surety, Surety shall, within fifteen (15) days of such presentations: 1) Pay to Obligee an amount equal to the actual costs for performing the P&A Obligations with respect to the Property or identified Properties in an amount up to, but not exceeding, the maximum penal amount of this obligation and the penal amount of this obligation shall be further reduced by the amount of this obligation; or 2) Commence the necessary operations to perform the P&A Obligations with respect to the Property or identified Properties as set forth in the Agreement.

In the event Obligee commences or completes the P&A Obligations with respect to a Property or identified Properties upon Principal's default under the terms of the Agreement, Surety's obligations shall remain the same as set forth in this Bond regarding payment to Obligee as set forth above.

If Surety shall decide, upon default by Principal, to commence, or cause to be commenced, the performance of the aforementioned P&A Obligations, said performance shall continue until such time as the P&A Obligations have been met, thereby reducing the penal amount as set forth herein. **Surety agrees to indemnify, defend, and hold harmless Obligee, its directors, and agents from all claims, demands, and causes of action for personal injury, death, property and/or environmental damage resulting in whole or in part from Surety's or Surety's contractors' negligence, whether joint (including with Obligee or Principal) active, passive, concurrent or sole, or willful misconduct with respect to the performance of the P&A Obligations, if and only if Surety elects, as stated herein, to commence the aforementioned P&A Obligations in lieu of payment to Obligee.**

Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. No amendment of or supplement to the terms or provisions of the Agreement or of the Exhibits attached thereto shall release Principal and Surety or either of them from their liability under this Bond. Notice to Surety of any such amendment or supplement is hereby waived, except to the extent that is herein provided.

No forbearance of Obligee, to Principal, shall release Principal and Surety from their liability under this Bond except where Obligee agrees to reduce the penal amount as provided above. No assignment of the Agreement or of the Property by the Principal, its successors and assigns, and no assignment of the Agreement by operation of law or consent of Obligee or otherwise shall in any degree relieve Principal and Surety of their obligations under this Bond except as provided herein. No delay, neglect or failure of Obligee to proceed promptly to enforce the Agreement or to proceed promptly in case of default on the part of Principal or Surety shall in any degree relieve Principal and Surety of their obligations under this Bond except as herein stated.

No assignment, in whole or in part, of the Agreement or of the Properties by Principal, its successors and assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Agreement or to proceed promptly in the premises in case of any default on the part of Principal shall in any degree relieve Principal and Surety or either of their obligations under this Bond.

HOWEVER, if upon assignment, in whole or in part, of the Agreement or the Property or any Well and facilities thereon by Principal, its successors or assigns, Principal may cause its assignee to post security, in the form of a bond or other acceptable security from Surety, or a surety acceptable to Obligee, covering the same obligations as stated herein as to the assigned interest ("Transferee Bond"). The penal sum provided for in the Transferee Bond with respect to such assigned Properties shall be in an amount equal to the estimated cost to perform the P&A Obligations with respect to the assigned Property, which cost estimate shall be subject to Obligee's approval.

No right or action shall accrue on this Bond to or for the use of any person or corporation other than Principal, Obligee, their respective successors and assigns.

NOW THEREFORE, Principal and Obligee agree that any dispute, claim, or controversy concerning the interpretation of this Bond or the Agreement or any party's compliance with the terms of this Bond shall be resolved in accordance with the terms, conditions, and procedures in Article 17 of the Agreement and each agrees not to prosecute or commence any suit or action against the other(s) relating to any such matters.

This Bond is subject to the provisions of Section 8.04(f) of the Agreement including, without limitation, the redetermination provisions that may serve to adjust the penal sum provided for herein and the ability of Obligee to draw on the Bond, in whole or in part, as expressly provided for therein subject, however, to the following conditions. In the event that Obligee draws on this Bond pursuant to its rights under Sections 8.04(f)(2)(B)—(C), then it is expressly agreed that Obligee shall first obtain Surety's written consent. Further, Surety shall not be required to increase the penal sum provided for in this Bond as a result of any redetermination made pursuant to the Agreement without its written consent. In the event such written consent from Surety is not obtained, Principal will be required to obtain an additional bond to cover the incremental penal sum increase as a result of such redetermination from a financial institution, mutually acceptable to Obligee and Principal, providing for terms substantially similar to those set forth in this Bond except as regards the penal sum amount. Any redetermination made pursuant to the Agreement, shall not include estimated costs with respect to P&A Obligations for which a Transferee Bond has been obtained and approved by Obligee. Obligee will accept such Transferee Bond as financial security for the assigned Property. Further, as provided in Section 8.04(f)(1) of the Agreement, when it is determined that the estimated costs of the total remaining liabilities of Principal with respect to the P&A Obligations is less than one hundred sixty-two thousand two hundred seventy-two and $^{N}/100$ Dollars ($162,272.00), then this Bond shall be null and void and Obligee and Principal shall execute such documentation as is reasonably necessary in order to release and relinquish the Bond, which documentation will be executed promptly but in any event not less than sixty (60) days of being presented for execution. Further, Obligee agrees that in the event XH, LLC terminates its corporate existence, then it will appoint another entity or, at its sole option, its parent company, as agent to act on its behalf with respect to the obligations stated in Section 8.04(0 of the Agreement.

In the event of a conflict or inconsistency between the terms and provisions of this Bond and those set forth in the Agreement, as between Principal and Obligee, the terms and provisions of the Agreement shall control.

(SIGNATURE PAGE FOLLOWS)

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on May 14, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

Principal: Fieldwood Energy LLC

Witnesses:

By: _____

Name: ___John H. Smith_____

Title: ___Senior Vice President_____

Date: _____

Surety: Liberty Mutual Insurance Company

Witnesses:

By: _Laura E Sudduth_____

Terri Morrison – Witness

Name: Laura E. Sudduth_____

Tannis Matson – Witness

Title: _Attorney-In-Fact_____

Date: May 14, 2018_____

Accepted by Obligee

Witnesses:

By: _____

Name: _____

Title: _____

Date: _____

ANNEX I

## DESCRIPTION OF LEASES

| XTO File # | Description | Interest Type | Gross Interest Percentage | Owner |
|---|---|---|---|---|
| 3203-0001-00 | **East Cameron 9 & 14 - OCS-G 1440**<br>SE/4; E/2SW/4 of Block 9, East Cameron Area, that portion in Zone 2, as that zone is defined in the agreement between the United States and the State of Louisiana, October 12, 1956; and E/2NW/4;NE/4 of Block 14, East Cameron Area | Record Title | 50.00000% | XH, LLC |

ANNEX 2

## DESCRIPTION OF WELLS

| Platform | Lease / Block | Long Well Name | Well Name | Field | County | API No. | Operator | XTO Well No. | Type |
|---|---|---|---|---|---|---|---|---|---|
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #12 | #12 | East Cameron 9/14 | Offshore Louisiana | 177034060600S03 | Fieldwood Energy LLC | 401896 | OIL |
| EC14 | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 #13 | #13 | East Cameron 9/14 | Offshore Louisiana | 177034101300S04 | Fieldwood Energy LLC | 401897 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-06 | B-06 | East Cameron 9/14 | Offshore Louisiana | 177032003700S03 | Fieldwood Energy LLC | - | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-07 | B-07 | East Cameron 9/14 | Offshore Louisiana | 177032004000S04 | Fieldwood Energy LLC | 401898 | OIL |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-08 | B-08 | East Cameron 9/14 | Offshore Louisiana | 177032004200S01 | Fieldwood Energy LLC | - | GAS |
| EC14B | OCS-G-01440 EC 9 | OCS-G-01440 EC 14 B-09 | B-09 | East Cameron 9/14 | Offshore Louisiana | 177032004300S04 | Fieldwood Energy LLC | 401899 | GAS |
| EC14B | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 B-10STI | B-10ST1 | East Cameron 9/14 | Offshore Louisiana | 177032004601S03 | Fieldwood Energy LLC | 401900 | OIL |
| EC14CF | OCS-G-01440 EC 14 | OCS-G-01440 EC 14 CF-01 | CF-01 | East Cameron 9/14 | Offshore Louisiana | 177030032800S04 | Fieldwood Energy LLC | - | OIL |
| EC14CF | OCS-G-13572 EC 14 | OCS-G-13572 EC 14 CF-02 | CF-02 | East Cameron 9/14 | Offshore Louisiana | 17703468600S05 | Fieldwood Energy LLC | 402648 | GAS |

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**

+This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 8032778

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company          West American Insurance Company

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint,_____

**Sandra Parker,  Terri L Morrison ,  Tannis Mattson ,  Gina A Rodriguez ,  Mary Ann Garcia, Mario Arzamendi, Orlando Aguirre, Laura E. Sudduth, Gloria Mouton, Marissa Shepherd**

all of the city of Houston, state of TX each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in the penal sum not exceeding TWENTY FIVE MILLION*****DOLLARS ($25,000,000.00*****) each, and the execution of such undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 8th day of March, 2018.

 

The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY             ss

On this 8th day of March, 2018, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



**COMMONWEALTH OF PENNSYLVANIA**
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary.  Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts – SECTION 5.** Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.  Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company.  When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this 14th day of May, 2018.

 

By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*(left margin, rotated)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin, rotated)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.



# **Important Notice**

TO OBTAIN INFORMATION OR TO MAKE A COMPLAINT:

You may write to Liberty Mutual Surety at:

>       Liberty Mutual Surety
>       Interchange Corporate Center
>       450 Plymouth Road, Suite 400
>       Plymouth Meeting, PA 19462-8284

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

>       1-800-252-3439

You may write the Texas Department of Insurance:

>       P. O. Box 149104
>       Austin, TX 78714-9104
>       Fax: (512) 475-1771
>       Web: http://www.tdi.state.tx.us
>       E-mail: ConsumerProtection@tdi.state.tx.us

**Premium or Claim Disputes**

Should you have a dispute concerning a premium, you should contact the agent first.  If you have a dispute concerning a claim, you should contact the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**Attach This Notice To Your Policy:**

This notice is for information only and does not become a part or condition of the attached document.

# Electronic Proof of Claim_B*BD@28824[[CSA#7711#CF]]

Final Audit Report                                                                 2020-11-21

| | |
|---|---|
| Created: | 2020-11-21 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAshvlmKM5Mze4pDc5hUYvBBy7GY5cdKPI |

## "Electronic Proof of Claim_B*BD@28824[[CSA#7711#CF]]" History

📄 Web Form created by Prime Clerk (epoc@primeclerk.com)
  2020-11-21 - 2:31:48 AM GMT

📎 Brandon K. Bains (Lmurphy@l-llp.com) uploaded the following supporting documents:
  📎 Attachment
  2020-11-21 - 2:35:18 AM GMT

📄 Web Form filled in by Brandon K. Bains (Lmurphy@l-llp.com)
  2020-11-21 - 2:35:18 AM GMT- IP address: 47.187.54.206

🖋 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
  2020-11-21 - 2:35:20 AM GMT- IP address: 47.187.54.206

✅ Agreement completed.
  2020-11-21 - 2:35:20 AM GMT

Prime Clerk    POWERED BY Adobe Sign

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| | |
|---|---|
| **Fill in this information to identify the case (Select only one Debtor per claim form):** | |
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

---

| **Part 1:** | **Identify the Claim** |
|---|---|

| 1. Who is the current creditor? | The Hanover Insurance Company |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☒ No |
|---|---|
| | ☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | | |
| | Contact phone  214-722-7171 | Contact phone _____ |
| | Contact email  bbains@l-llp.com | Contact email _____ |

| 4. Does this claim amend one already filed? | ☒ No | |
|---|---|---|
| | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No |
|---|---|
| | ☐ Yes. Who made the earlier filing? _____ |

---

**Claim Number: 704**                              **Proof of Claim**

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

**7.  How much is the claim?**   $ 46,745,185 _____ . **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☒ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☒ No<br>☐ Yes. Identify the property: _____ |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

[X] No

[ ] Yes. *Check one:*

| | Amount entitled to priority |
|---|---|

[ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

[ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

[ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

[ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

[ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

[ ] Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

[X] No

[ ] Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**   $_____

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

[ ] I am the creditor.

[X] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Brandon K. Bains*

Brandon K. Bains (Nov 24, 2020 20:27 CST)

**Email:** lmurphy@l-llp.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Brandon K Bains | | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Attorney |
|---|---|

| Company | Langley LLP |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | P.O. Box 94075 | | |
|---|---|---|---|
| | Number          Street | | |
| | Southlake | TX | 76092 |
| | City | State | ZIP Code |

| Contact phone | 214-722-7171 | Email | bbains@l-llp.com |
|---|---|---|---|

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
    **(attach below)**          ☐ **I do _not_ have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

> **Do not file these instructions with your form**

## ADDENDUM TO MASTER PROOF OF CLAIM BY
## THE HANOVER INSURANCE COMPANY

This Addendum is submitted with and incorporated in the Proof of Claim filed in Case No. 20-33948, *In re Fieldwood Energy, LLC et al.*, by The Hanover Insurance Company ("Hanover").

### CREDITOR

Hanover is a Massachusetts corporation and is authorized to conduct business in the State of Texas. Hanover is a creditor, having issued, as surety, numerous miscellaneous commercial bonds on behalf of Fieldwood Energy, LLC and Fieldwood Energy Offshore, LLC (collectively, the "Debtors") or their affiliates as principal.

The Debtors executed the following indemnity agreements with Hanover and its affiliates (the "GIA"):

| Date | Agreement | Indemnitors | Surety |
|---|---|---|---|
| | | | |
| October 23, 2019 | General Indemnity Agreement | Fieldwood Energy, LLC and Fieldwood Energy Offshore, LLC | The Hanover Insurance Company |
| | | | |

Under the GIA, the Debtors agreed to indemnify the Surety from and against all loss, cost and expense, including attorneys' fees, incurred by the Surety by reason of the extension of surety credit to any of the Debtors. The Debtors also promised to pay all premium due on the Bonds. Hanover requires annual premium payments in order to process renewal of the Bonds.

A true and correct copy of the GIA is attached hereto as Exhibit "A-1."

### BASIS OF THE CLAIM

Hanover faces continued exposure on the bonds itemized in the attached Exhibit "A-2" (the "Bonds"). The Bonds were issued prior to the petition date in this case and remain subject to potential claims against Hanover by the obligees thereof.

Hanover's claims are based on:

a.  its rights under the GIA;

b.  its rights as a surety to common law indemnity and exoneration; and

c.  its rights under contract and otherwise as subrogee to and/or assignee of the rights of those persons entitled to make claim on the Bonds.

With respect to the claims under contract and otherwise as subrogee to those persons entitled to assert rights under the Bonds, Hanover hereby asserts such claims if and to the extent such persons have not filed and do not file their own proofs of claim timely.

<u>AMOUNT OF CLAIM</u>

The claim asserted herein is unliquidated in part at this time.

The Debtors are, at the date of this filing, indebted and liable to Hanover in at least the amount of $46,745,185 based on the total amount of Hanover's exposure under the Bonds, based on their penal sum. The Debtors are also liable to Hanover for attorneys' fees and expenses incurred by Hanover as a result of issuing the Bonds and other bonds on behalf of the Debtors. Hanover also faces exposure in an unknown amount for any post-petition premium payments that are not made by the Debtors. The Debtors are jointly and severally liable to Hanover to-date in the total amount of at least $46,745,185.

<u>CLASSIFICATION OF AND SECURITY FOR CLAIM</u>

1.      Hanover is filing a separate unsecured proof of claim in the amount of $46,745,185. Each of the Debtors are jointly and severally liable to Hanover for the claim amount.

2.      Hanover has a contingent, unliquidated priority claim pursuant to 11 U.S.C. § 507(a)(2) for any post-petition premium payments that are not made by the Debtors. The premium payments are actual, necessary costs of preserving the Debtors' estates incurred in conjunction with renewal of the Bonds constituting administrative expenses under 11 U.S.C. § 503(b)(1)(A). As the Debtors are continuing to operate, the Bonds continuing in force is necessary to preserve the Debtors' estates. Hanover is unable to determine the amount of its priority claim at this time because there are currently no outstanding premium payments owed by the Debtors and the Bonds renew on a rolling basis.

3.      Hanover reserves the right to assert other priority claims, to the extent they are unsecured, under 11 U.S.C. § 507(a)(4) and § 507(a)(5), if and to the extent it pays claims on the Bonds that qualify for priority treatment pursuant to these sections of the Bankruptcy Code.

4.      Notwithstanding the foregoing, Hanover reserves the right to assert that certain portions of its claim are entitled to administrative priority if and to the extent that any of the Bonds covers losses that occur or have occurred post-petition.

<u>RESERVATION OF RIGHTS AND CLAIMS</u>

Hanover reserves all rights accruing to it as surety or otherwise, and the filing of this Proof of Claim is not intended to be and shall not be construed as: (a) an election of rights or remedies, or (b) a waiver of any past, present or future event of default on the part of the Debtors or any other person, or (c) a waiver or limitation of any rights of Hanover.

Without prejudice to its position that no liability exists with respect to all bonds terminated, canceled, released or replaced prior to the date of this Proof of Claim, Hanover asserts a contingent claim with respect to those bonds in the event any claim should be made upon them.

Hanover reserves all rights and remedies which it may have, in addition to filing of and pursuit of this Proof of Claim, against any other person or entity, including (without limitation): (i) rights against indemnitors, other guarantors, successors in interest or agents; (ii) rights against other persons against which the Debtors, or any other subrogor of Hanover, has rights, and to which rights Hanover succeeds by virtue of becoming subrogated to such rights; (iii) the right to assert some or all of Hanover's claim as an administrative claim, whether or not such claim is stated herein; and (iv) the right to assert any of the matters asserted herein by way of defense, counterclaim, offset or recoupment against any claim asserted against Hanover by the Debtors or any representative or affiliate thereof or successor thereto.

Hanover reserves the right to assert as administrative claims those claims arising from breaches of any contract that the Debtors have assumed or will assume.

Hanover reserves the right to assert as administrative claims those claims arising through subrogation or assignment.

Hanover reserves any and all defenses to claims that have been or may hereafter be asserted against it under any of the Bonds. Nothing herein shall be deemed an admission of liability under the continued effectiveness of, or the validity of, the Bonds.

Hanover reserves all rights available to it by applicable law or rule to amend this Proof of Claim based on additional facts and circumstances giving rise to additional claims and upon circumstances giving rise to additional claims and upon claims that are presently contingent becoming fixed and upon determination of liquidated amounts for the portions of the claim made hereunder which is not presently liquidated.

## LIST OF EXHIBITS

Exhibit "A-1" – Indemnity Agreements

Exhibit "A-2" – List of Open Bonds

# EXHIBIT A-1

The Hanover Insurance Company
General Agreement of Indemnity

## GENERAL AGREEMENT OF INDEMNITY

**This General Agreement of Indemnity** is made and entered into this 2nd day of April, 2018, by the following undersigned persons and/or entities (including individuals, partnerships, corporations and/or trusts) **Fieldwood Energy, LLC** (individually and collectively hereinafter called the "Principal") and the additional undersigned persons and/or entities **N/A** (individually and collectively, together with the Principal, hereinafter called the "Indemnitors"). The Indemnitors, jointly and severally, hereby agree to assume the obligations of Indemnitors, as noted in this Agreement, with respect to any Bonds (as defined herein) issued before or after the date of this Agreement by the Surety (as defined herein).

### WITNESSETH

**WHEREAS** at the request of any one or more of the Indemnitors, and with the express understanding that this Agreement of Indemnity be given, the Surety has heretofore or has presently been requested to and/or has executed or has arranged or procured to be executed and/or, from time to time hereafter, may be requested to and may in its sole discretion execute, arrange for the execution of, or procure to be executed Bonds on behalf of any one or more of the Indemnitors; and

**WHEREAS** the Indemnitors hereby affirm that they have a substantial, material and beneficial interest in obtaining Bonds from or through the Surety or in the Surety refraining from canceling the Bonds.

**NOW THEREFORE**, as an inducement to the Surety to execute, procure, renew, continue, forebear from canceling, substitute or amend Bonds on behalf of any one or more of the Indemnitors, and in consideration of the premises set forth herein, and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged, and intending to be legally bound hereby, the Indemnitors, for themselves, their heirs, executors, administrators, receivers, successors and assigns, jointly and severally hereby covenant, agree and bind themselves to the Surety as follows:

### DEFINITIONS

In addition to the capitalized terms defined elsewhere in this Agreement, the following terms, when utilized in this Agreement, unless the context otherwise requires, will have the meanings listed below, which meanings shall be equally applicable to both the singular and plural forms of such terms:

> **"Surety"** shall mean any one or more, individually and collectively, of: The Hanover Insurance Company and/or its subsidiaries, including Citizens Insurance Company of America and Massachusetts Bay Insurance Company, or any combination of the aforesaid companies, and/or any person or company joining with any of the aforesaid companies in executing, or procured by any of the aforesaid companies to execute any bond, undertakings or obligations, together with their successors and assigns, as the case may be.

> **"Bond or Bonds"** shall mean any surety bond, undertaking, recognizance, instrument of guarantee or other surety obligation, whether issued in the name(s) of any Indemnitors solely or as co-venturers with others, issued before or after the date of this Agreement by Surety.

1. **Premiums**: The Indemnitors will promptly pay or cause to be paid promptly on demand all premiums costs and charges of the Surety for any Bonds issued by the Surety until the Indemnitors have delivered evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

2. **Indemnity:** The Indemnitors shall exonerate, indemnify, keep indemnified and hold harmless the Surety from and against any and all liability, demands, losses, fees, costs and expenses of whatsoever kind or nature (including, but not limited to pre and post-judgment interest, court costs, consultant and counsel fees and expenses) which the Surety may pay, sustain or incur by reason of or in any manner as a consequence of any one or more of the following:

   a) being requested to execute or procure any Bonds;
   b) having executed or procured the execution of any Bonds;

Page 1 of 6

3170419.3

The Hanover Insurance Company
General Agreement of Indemnity

    c)   the Indemnitors' failure to perform or comply with any other agreement with the Surety;

    d)   the Indemnitors providing materially false or misleading information to the Surety;

    e)   enforcing any of the covenants of this Agreement or any other agreement between the Indemnitors and the Surety;

    f)   the Surety's cost of investigation of any claim, demand, suit, notice or circumstance which may give rise to liability on the part of the Surety in connection with any Bonds, this Agreement or any other agreement between the Indemnitors and the Surety; or

    g)   in defending any suit, action, mediation, arbitration or any other proceedings to obtain release from liability, whether the Surety, in its sole and absolute discretion, elects to employ its own attorneys or permits the Indemnitors to defend the Surety and whether the Surety, in its sole and absolute discretion, elects to make a compromise settlement of a contested liability in connection with any Bonds.

3.   **Payment**: Payment shall be made by the Indemnitors to the Surety, immediately upon demand by the Surety, in the amount of any claimed or feared liability, whether such liability is contingent or noncontingent, disputed or undisputed, and/or whether or not the Surety shall have established a reserve or made any payments therefor. Such payment to the Surety shall be: (a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand or suit, together with such additional amount the Surety, in its sole and absolute discretion, deems sufficient to indemnify and hold it harmless from and against such claim, demand or suit, including any cost, interest or expense in connection therewith; or (b) if the amount asserted as a claim, demand or suit is an unascertainable or unliquidated amount, or if no claim has yet been asserted but Surety fears that a claim may subsequently be asserted or a loss or expense may be incurred by it as a result of its execution of any Bonds, the amount the Surety, in its sole and absolute discretion, deems sufficient to indemnify and hold it harmless from and against any loss, cost, interest and expense. The Surety shall have the right to hold such funds as collateral without any obligation to earn interest on the collateral for the Indemnitors until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all Bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees or any other expense. The Surety shall have the exclusive right to adjust, settle, or compromise any claims, demand, suit or any other proceeding arising out of any Bonds against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors.

Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, upon demand, the sum demanded by Surety as payment shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of Indemnitors under this Agreement, including but not limited to the obligation to pay to Surety the sum demanded, to the end that the Surety shall have the right to hold the sum demanded by it hereunder until such time as the liability of the Surety as a result of issuing any Bonds on behalf of Indemnitors shall have been determined or settled in accordance with the terms hereof.

In the event of a payment by the Surety, the Indemnitors agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it about the matters herein contemplated by this Agreement plus pre and post judgment interest. **The pre-judgment rate of interest payable by the Indemnitors to the Surety under this Indemnity Agreement is a commercial variable rate of interest** which will initially be calculated on the date the first payment is made by the Surety and will automatically be adjusted every month thereafter until the Surety has been repaid in full, with the first adjustment occurring on the 30th day after the first payment is made by the Surety (in the event the adjustment date would fall on a weekend or holiday, the date shall be adjusted on the next business day) (every day on which a rate adjustment is made is referred to in this Indemnity Agreement as an "Adjustment Date"). On the initial date of the first payment by the Surety and each Adjustment Date thereafter, the commercial interest rate payable for the next 30 day period will equal to the **U.S. Prime Rate (as published in the Wall Street Journal) plus a four percent premium** for the applicable period. The interest rate will change on each Adjustment Date to reflect changes in the U.S. Prime Rate without any notice to the Indemnitors. Post judgment interest shall apply to any amount due to the Surety at the maximum allowable legal rate of interest in the subject jurisdiction. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable). In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety, or any voucher or vouchers, invoices or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment, and the extent of the liability of the Indemnitors to the Surety, and, in the absence of actual fraud or bad faith amounting to dishonesty or malicious conduct, shall be final, conclusive and binding upon the Indemnitors in any claim, suit or other proceeding by the Surety to recover the amount of such payments pursuant to this Agreement or otherwise.

3170419.3

The Hanover Insurance Company
General Agreement of Indemnity

4.  **Notice of Claims:**  If the Indemnitors become aware of any claim, demand, notice of claim or proceeding which may result in any liability to the Surety under any Bonds, the Indemnitors shall notify the Surety, in writing, of the nature, substance and amount of such claim within five (5) days of the first date upon which the Indemnitors become aware of the existence of such a claim or demand.  In addition to such notice, the Indemnitors shall keep Surety apprised of any material developments relating to such claim or demand, and the Indemnitors shall furnish Surety with any additional information which the Surety may reasonably request relating to such claim or demand.

5.  **Books and Records:**  The Surety, or its designated agents, shall have full and free access to the Indemnitors' books and records at any and all reasonable times until the liability of the Surety under any Bonds is completely terminated and the claims of the Surety against any Indemnitors are fully satisfied.  In addition, each of the Indemnitors hereby specifically authorizes any financial institution or depository in which its funds may be deposited to furnish any information requested by the Surety relating to such accounts. The Indemnitors hereby waive any privilege in any accountant's work papers and any other documents or communications that may be subject to any accountant/client privilege related to the preparation any financial statements prepared by their accountant(s) and further agree to provide any additional releases, requests, waivers or any other documents required in order to allow the Surety access to the requested information.

6.  **Decline Execution:**  The Surety may, in its sole and absolute discretion, decline to execute any bond without impairing the validity of this Agreement, and the Indemnitors hereby waive any and all claims against the Surety due to its refusal or failure to so execute.

7.  **Set offs:**  The Surety, in its sole and absolute discretion, may reduce the amount of the Indemnitors' liability to the Surety under this Agreement by applying as a set off any monies due the Indemnitors by the Surety as a result of any claim any of the Indemnitors may have against the Surety arising out of any bonds issued by the Surety on behalf of third parties or otherwise.

8.  **Waiver of Notice of Bonds and Liabilities:**  The Indemnitors have relied upon their own due diligence in making their own independent appraisal of the business and financial condition of Principal and other Indemnitors in executing this Agreement and agree to keep themselves fully informed as to the business and financial affairs of each other Principal and Indemnitors so that each of them are aware of the risks and hazards of continuing as an Indemnitor. The Indemnitors waive notice from the Surety of any act, fact, or information coming to the notice or knowledge of the Surety concerning their rights or liabilities under any Bonds executed by the Surety on behalf of Indemnitors, or any one or more of them, or the rights or liabilities of the Indemnitors, whether the Surety has such knowledge or notice before or after the execution of this Agreement.

9.  **Changes:**  The Surety, in its sole and absolute discretion, may agree or refuse to agree to any alteration, amendment, change, modification, limitation, or extension of any Bonds, and any renewal or other obligation in place or in lieu thereof, or of any contract secured by any Bond, and in any such case the Indemnitors shall be liable to the Surety as fully and to the same extent on account of any such altered, amended, changed, modified, limited or extended Bond or renewal or substitution thereof, or contract, whenever and as often as made, even though such action does or might substantially increase the liability of the Indemnitors.

10. **Other Sureties:**  In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure for the benefit of such other sureties, co-sureties and reinsuring sureties, provided, however, that the Surety is and shall be conclusively presumed to be a real party in interest under this Agreement to the full extent of any and all liability, loss, cost or expense incurred in connection with, related to or arising out of any Bonds regardless of whether such liability or loss, cost or expense may involve a co-surety or reinsurer, or the like, and regardless of whether a co-surety or reinsurer, or the like, may bear some or all of such liability or loss, cost or expense, provided that Indemnitors may request as a condition to such presumption that Surety provide reasonable assurance that Indemnitors shall not be subject to redundant liability under this Agreement.

11. **Remedies and Suits:**  No remedy conferred upon or reserved to the Surety by this Agreement is intended to be exclusive of any other remedy or remedies, and each and every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Agreement to the Surety shall be concurrent and may be pursued separately, successively or together against any Indemnitors, or any one or more of them; and every right, power and remedy given by this Agreement to the Surety may be exercised from time to time as often as may be deemed expedient by the Surety in its sole and absolute discretion. Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

Page 3 of 6

3170419.3

The Hanover Insurance Company
General Agreement of Indemnity

12. **Other Indemnity:**  The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have heretofore or may hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity or collateral with the execution or procurement of any Bonds from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity, or collateral, shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa.  The execution of any subsequent agreements of indemnity shall not be construed as a novation and this Agreement may only be terminated as provided herein.  In addition, the liability of the Indemnitors under this Agreement shall not be affected by the failure of the Indemnitors to sign any Bonds, nor by the failure of any Indemnitor to receive notice of the execution of any Bonds, nor by any claim that any other indemnity or security was to be obtained, nor by the release of any indemnity, nor by the return or exchange of any collateral. If any Indemnitor to this Agreement is deemed for any reason (including, but not limited to, any defect in the execution of this Agreement by any Indemnitor) not bound thereby, the Agreement shall still be binding upon each and every other Indemnitor.

13. **Waiver of Right of Indemnity, Subrogation and Contribution:** The Principal and Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety have been first satisfied in full.  Further, Indemnitors shall not waive any claim or right of indemnity, subrogation or contribution with regard to any third party, pursuant to any contract, insurance policy or settlement, or otherwise, without the prior written consent of the Surety.

14. **Severability:**  If any provision or provisions of this Agreement is deemed void or unenforceable under the law of any jurisdiction governing its construction, the remainder of this Agreement shall not be deemed void or unenforceable thereby, but shall continue in effect and be enforced as though the void or unenforceable provisions are omitted.

15. **Construction:**  This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement, and is made and entered into as a result of negotiations, in a free and active market in which Indemnitors have and have had alternatives.  This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety.

16. **Forum, Venue and Jurisdiction:**  As to any legal action or proceeding related to this Agreement, the Indemnitors hereby submit themselves to personal jurisdiction in any and all jurisdictions in which (a) the Surety may sustain or pay any loss for which Indemnitors may be liable hereunder; (b) the Surety may be sued or be subject to suit or arbitration as a consequence of having issued any Bond; and/or (c) any assets of any Indemnitors may be located.  Indemnitors irrevocably consent to exclusive jurisdiction and venue in such court as may be selected by Surety, in its sole and absolute discretion, among the alternative jurisdictions to which Indemnitors have consented to submit themselves to personal jurisdiction as set forth above and hereby waive any and all rights to object to such venue and jurisdiction based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

17. **Indemnitors' Beneficial Interest:**  This Agreement applies to Bonds written by the Surety at the request of or on behalf of the Principal, the Indemnitors, and any of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates have an interest or participation, whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

18. **Confidential treatment of information:** The information provided to the Surety shall be treated as confidential and protected in accordance with the Hanover Privacy Policy which is available for inspection at http://www.hanover.com/thg/privacy/index.htm.

19. **Consent to Use of Credit Reports for Commercial Purposes:**  The Indemnitors hereby acknowledge and consent to the use of their individual consumer credit reports by the Surety for commercial purposes. The Surety's use of the information will be in connection with the Surety's assessment of the credit or prepayment risks associated with the Bonds. The Indemnitors acknowledge that the Surety has a legitimate business need for ongoing access to the credit information in connection with its business, that each transaction for surety credit will be initiated by the Indemnitors, and that the Surety may in its sole and absolute discretion decide to review the Indemnitors' financial condition on an ongoing basis to determine whether the Indemnitors satisfy the underwriting criteria of the Surety.

3170419 3

The Hanover Insurance Company
General Agreement of Indemnity

20. **Amendments:**   This Agreement may not be changed or modified orally. No change or modification shall be effective unless agreed to in writing by a duly authorized officer of the Surety as an amendment hereto.

21. **Termination:**   This Agreement may be terminated prospectively, but not retroactively, as to any Indemnitors upon thirty (30) days' written notice sent by registered or certified mail to the Surety at its primary office location at The Hanover Insurance Company, Attention: Bond Department, 440 Lincoln Street, Worcester, Massachusetts, 01653, but any such notice of termination shall not operate to modify, bar, limit, affect, reduce, or discharge the obligations of such Indemnitors under this Agreement or otherwise as to the Bonds that may have been executed prior to the effective date of such termination or with respect to any Bonds executed after the effective date of such termination, provided the Surety had become obligated to execute or renew such Bonds prior to the effective date of termination.   Such notice of termination shall operate only with respect to the respective Indemnitors upon whose behalf such notice shall have been given.

22. **Counterparts:**   This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement. All counterparts taken together shall constitute a single Agreement.

23. **Entire Agreement:**  This Agreement constitutes the entire agreement among the Parties and there are no other understandings or agreements, conditions or qualifications relative to this Agreement which are not fully expressed in this Agreement.  Indemnitors acknowledge and warrant that no oral representations have been made to them by or on behalf of the Surety to induce them to sign this agreement.

24. _____

REMAINDER OF PAGE INTENTIONALLY BLANK

3170419.3

The Hanover Insurance Company
General Agreement of Indemnity

**IN WITNESS WHEREOF**, the Principal and Indemnitors, individually or through their duly authorized officers, officials or representatives, have hereunder set their hands and seals, as of the date referenced in the introductory paragraph of this Agreement.

**LLC (LIMITED LIABILITY COMPANY)** (only a general partner, managing member or member can sign)

ATTEST

Fieldwood Energy, LLC

By: _____ (Seal)

Name:       Michael T. Dane

Title:       Chief Financial Officer

Address:    2000 W. Sam Houston Pkwy S, Suite 200

            Houston, TX 77042

TID/EIN:    46-1326778

(STATE)  *Texas*

(COUNTY), SS. *Harris*

On this *2nd* day of *April* in the year *2018*, before me, the undersigned, personally appeared Michael T. Dane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual, whose name as the Chief Financial Officer of the limited liability company known as **Fieldwood Energy, LLC**, is subscribed to the foregoing instrument and acknowledged to me that, being fully informed of the contents of this instrument, he/she has executed the same in his/her capacity as such Chief Financial Officer and with full authority, voluntarily for and as the act of said limited liability company.

[SEAL]



TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

_____
Notary Public

*Tiffany Penry*
Printed Name of Notary Public

*12/18/2018*
Commission Expiration Date

3170419.3

# EXHIBIT A-2

**Alliant**

## Executed Bond Report

### The Hanover Insurance Company

| **Account Name and Address:** | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | **Bond No:** 1070297 |
|---|---|---|
| | | **Date:** 10/23/2019 |

**Principal:**  Fieldwood Energy Offshore, LLC

**Obligee Name and Address:**  United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company, Co-Obligees
Filed with: United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company
1201 Elmwood Park Blvd
New Orleans,  LA  70123-

**Power of Attorney No.**

| **Effective Date:**<br>From    10/23/2019  To      10/23/2020 | **Bond Amount:**<br>$1,745,185.00 | **Contract Amount:**<br>$0.00 | **Premium:**<br>$21,815.00 |
|---|---|---|---|
| **Rate:**<br>1.25% | **Commission %**<br>30.000% | **Commission Amount**<br>$6,544.50 | **State Surchg-Fee:**<br>$0.00 |

**Description:**
Issued in Duplicate - Multi-Obligee Right-Of-Way Supplemental Bond, OCS ROW No. OCS-G 28809 - Described as a 200-foot wide and approximately 5.47 miles (28,885 feet) long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20222.  The purpose of pipeline ROW OCS-G28809 is to maintain and operate PSN 20222 and to transport bulk oil from PLEM A in Block 244, through Blocks 200, 201, and 200, to Midline PLET A-1 in Block 156, all located in Green Canyon Area.

**Renewal Type:**                                              **Cancellation Provision:**
Continuous Until Cancelled/Released               Obligee Written Release to be obtained by Principal

**Additional Attachments:**
Copy of Bond.

**Comments:**
Issued in duplicate.  Approved as per Joellen Mendoza's 10/22/2019 email.

**Issued to Replace Bond No.**
N/A

BOND NO.  1070297

OCS ROW NO. <u>OCS-G 28809</u>

**BOND TYPE: <u>Right-of-Way Supplemental Bond</u>**     **PENAL SUM: $1,745,185.00**

## MULTI-OBLIGEE SUPPLEMENTAL BOND

KNOW ALL MEN BY THESE PRESENTS:

That on this <u>23rd</u> day of <u>October</u> 2019 (the "***Effective Date***"), we, **Fieldwood Energy Offshore LLC** , a Delaware limited liability company, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas  77042, assigned BOEM Company Qualification No. 3035 ("***Principal***"), and **The Hanover Insurance Company**, with an office <u>440 Lincoln Street, Worcester, MA  01653</u> ("***Surety***"), are held and firmly bound unto (i) the **United States of America, acting by and through the Bureau of Ocean Energy Management**, 1201 Elmwood Park Boulevard, New Orleans, Louisiana 70123 ("***BOEM Obligee***"), and (ii) **Marathon Oil Company**, an Ohio corporation, with its principal office at 5555 San Felipe Street, Houston, Texas 77056, assigned BOEM Company Qualification No. 0724 ("***Additional Named Obligee***") (BOEM Obligee and Additional Named Obligee being sometimes collectively referred to herein as "***Co-Obligees***") for the penal sum of <u>One Million Seven Hundred Forty-Five Thousand One Hundred Eighty-Five and No/100</u> dollars (<u>$1,745,185.00</u>) lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents, pursuant to the terms hereof.

WHEREAS, Additional Named Obligee is a former owner of relinquished Federal right-of-way OCS-G <u>28548</u> ("***Relinquished ROW***"), which BSEE (as defined below) reactivated on <u>August 14, 2019</u>, and is now assigned Federal right-of-way OCS-G<u>28809</u> (together with the Relinquished ROW, collectively, the **("***Applicable ROW***")**, more fully described as follows:

> Pipeline Right-of-Way (ROW) OCS-G28809 is a 200-foot wide and approximately 5.47 miles (28,885 feet) long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20222.  The purpose of pipeline ROW OCS-G28809 is to maintain and operate PSN 20222 and to transport bulk oil from PLEM A in Block 244, through Blocks 200, 201, and 200, to Midline PLET A-1 in Block 156, all located in Green Canyon Area.

WHEREAS, pursuant to a transaction between Deepwater Abandonment Alternatives, Inc., a Texas corporation ("***DAA***"), and Principal  in which the underlying infrastructure associated with the Applicable ROW has been acquired by the Principal ("***Assignment Transaction***"), Principal is required to provide security for the Decommissioning Obligations (as defined below) to Additional Named Obligee; and

WHEREAS, pursuant to applicable laws, rules, regulations, and policies of BOEM Obligee, Principal is required to provide financial assurance for the Decommissioning Obligations (as defined below) to BOEM Obligee; and

WHEREAS, the Surety warrants that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, that it is qualified to be a surety and guarantor on bonds and undertakings, that it is named in the current Circular 570, published by the Audit Staff Bureau of Accounts, U.S. Department of the Treasury ("*Circular 570*"), and that its certificate of suretyship has not been revoked; and

WHEREAS, the Surety warrants that it has duly executed a power of attorney, appointing the hereinafter named representative as the true and lawful attorney-in-fact of such Surety. All lawful process may be served in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when made at Surety's address as specified in Paragraph 3.12 below, will be valid service upon it, and that such appointment will continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder; but if the named representative in Paragraph 3.12 becomes no longer able to act on Surety's behalf, the Surety will promptly so inform each of the Co-Obligees.

NOW THEREFORE, the Principal, the Surety, and the Co-Obligees agree to the following:

1. **Definitions.** As used in this Bond, the following terms have the following meanings:

1.1 ***Bond*** means this multi-Obligee supplemental right-of-way bond, identified as Bond No. ;

1.2 ***Instrument*** includes, individually or collectively, any lease, operating agreement, designation of operator or agent, storage agreement, transfer of operating rights, permit, license, grant, or easement, pursuant to which the Principal has the right, privilege, or license to conduct operations associated with the Applicable ROW to which this Bond applies;

1.3 ***Decommissioning Obligation(s)*** means any decommissioning obligation(s) or requirement(s) imposed on both the Principal and the Additional Named Obligee by, or arising from (i) the Applicable ROW, (ii) any regulations of the Department of the Interior, solely as applicable to the Applicable ROW, or (iii) any Instrument issued, maintained, or approved under the Outer Continental Shelf ("*OCS*") Lands Act (43 U.S.C. §§ 1331 et seq.) related to the Applicable ROW acquired by Principal pursuant to the Assignment Transaction and that accrued before the Principal acquired the Applicable ROW therein;

1.4 ***Qualified Surety*** means a surety named in the version of Circular 570 current at the time the Qualified Surety provides a bond, and at all times thereafter.

1.5 ***Person*** includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency;

1.6 ***Regional Director*** means the Regional Director for the applicable BOEM Obligee Regional Office with jurisdiction over the Applicable ROW;

1.7 ***ROW Holder*** means the Bureau of Safety and Environmental Enforcement ("*BSEE*")-approved owner of the Applicable ROW;

**1.8**   ***Default*** means BOEM's determination that the Principal has failed to timely perform the Decommissioning Obligations.

**2.**   The Principal, the Surety, and the Co-Obligees further agree to the following:

**2.1**   The Surety hereby guarantees, to each of the Co-Obligees, the full and faithful performance by Principal of the entirety of the Decommissioning Obligations.  Under no circumstances, however, does such guarantee by the Surety exceed the penal sum of the Bond at any time in effect.

**2.2**   The Principal, as agent on behalf of all ROW Holders with an interest in the Applicable ROW, will fulfill the Decommissioning Obligations to the same extent as though the Principal were the sole interest owner of the Applicable ROW from the Assignment Transaction.

**2.3**   The Surety does hereby absolutely and unconditionally bind itself to each of (i) BOEM Obligee and (ii) Additional Named Obligee for all sums required to fund the performance of the Decommissioning Obligations, up to the penal sum of the Bond, regardless of the number of years this Bond is in force.

**2.4**   The Surety will be responsible to each of the Co-Obligees for all Decommissioning Obligations of the Principal until the earlier of: (a) the satisfaction of all Decommissioning Obligations, (b) if the Bond is called, the Surety has provided the funds up to the penal sum of the Bond, or (c) the Decommissioning Obligations are covered by replacement financial assurance approved in writing by each of BOEM Obligee and Additional Named Obligee which specifically secures the Decommissioning Obligations.

**2.5**   If the Regional Director terminates the period of liability of this Bond in accordance with 30 CFR 556.906, the Surety will remain responsible to the Co-Obligees for Decommissioning Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the Bond in favor of the Surety.  If Principal is required to provide a replacement bond pursuant to 30 CFR 556.906, then the Principal shall ensure that both the BOEM Obligee and the Additional Named Obligee are named obligees under such replacement bond.

**2.6**   If this Bond is cancelled, the Regional Director may reinstate this Bond as if no cancellation had occurred if any payment for performance of any Decommissioning Obligation of the Principal is rescinded or must be restored or repaid pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has performed the Decommissioning Obligations in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the Bond.

**2.7**   The Surety waives any right of notice of this Bond taking effect and agrees that this Bond will take effect as to each Co-Obligee upon delivery to such Co-Obligee.

**2.8**   Unless explicitly terminated, cancelled, or modified by both BOEM Obligee and Additional Named Obligee in writing, and as provided for in this Bond, the Surety's obligations will remain in full force and effect, even if:

a) The Principal or any other person assigns all or part of any interest in an Instrument or in the Applicable ROW covered by this Bond;

b) Any person modifies an Instrument in any manner, including modifications that result from (i) a commitment to a unit, cooperative, or communitization, or storage agreement; (ii) suspension of operations or production; (iii) suspension or changes in rental, minimum royalty, or the payment of royalties; (iv) modification of regulations or interpretations of regulations; (v) creation or modification of compensatory royalty agreements or payments; or (vi) creation of any mortgage, pledge, or other grant of security interest in an Instrument or the Applicable ROW;

c) Any person, event, or condition terminates any Instrument or the Applicable ROW interest covered by this Bond prior to the date on which this Bond terminates in accordance with its terms, whether the termination is by operation of law or otherwise; or

d) Either Co-Obligee takes or fails to take any enforcement action against, or fails to give notice to, or make demand of, any party to any Instrument, concerning the payment or non-payment of rentals or royalties or the performance or non-performance of any other covenant, term, or condition of the Applicable ROW, or any contract entered into with respect to the Assignment Transaction.

2.9 BOEM Obligee will contemporaneously send a copy to Additional Named Obligee of any notice of Default sent to Principal or Surety.

2.10 After a Default, and upon demand by either of the Co-Obligees, the Surety will provide to such Co-Obligee making demand, pursuant to the procedures set forth in this Paragraph 2, payments up to the penal sum of the Bond to satisfy the Decommissioning Obligations.

2.11 Upon Default by the Principal, BOEM Obligee has the right to call the Bond, or a portion of the Bond, by demand upon the Surety without any requirement that BOEM Obligee confer with, or obtain the agreement of, Additional Named Obligee, subject to the procedures, rights and obligations set forth in this Paragraph 2.

2.12 Prior to calling the Bond pursuant to Paragraph 2.11, BOEM Obligee will provide Additional Named Obligee with thirty (30) calendar days' advance written notice ("***BOEM Notice Period***") of BOEM Obligee's intention to call the Bond (or portion thereof) and stating the scope of the Decommissioning Obligations upon which Principal has defaulted. If, within the BOEM Notice Period, Additional Named Obligee commits in writing to BOEM Obligee to timely undertake the requisite activities to address the Decommissioning Obligations upon which Principal has defaulted, BOEM Obligee will direct the Surety to pay to Additional Named Obligee the proceeds of the Bond (or portion thereof). Additional Named Obligee will utilize the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied.

2.13 If BOEM Obligee calls the Bond, and within the BOEM Notice Period, Additional Named Obligee does not commit in writing to perform the Decommissioning Obligations, BOEM

Obligee has the right to receive performance of the Decommissioning Obligations by, or the payment of the Bond proceeds from, the Surety, with no further obligation to inform the Additional Named Obligee or any other party and BOEM Obligee will place the proceeds of the Bond into an appropriate account and dedicate the proceeds to the performance of activities to address the Decommissioning Obligations then requiring performance.

2.14   Upon Default, Additional Named Obligee may call the Bond by demand upon the Surety if (a) Additional Named Obligee provides BOEM Obligee with thirty (30) calendar days' advance written notice ("***Additional Named Obligee Notice Period***") of its intention to call the Bond (or portion thereof), and (b) agrees in writing to use the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied.  Additional Named Obligee hereby acknowledges that this Bond and the procedures relating to utilization of Bond proceeds do not reduce or otherwise modify its regulatory liabilities associated with the Decommissioning Obligations until such Decommissioning Obligations are satisfied.

2.15   If Additional Named Obligee receives Bond proceeds under any of the provisions of this Paragraph 2, the proceeds will be placed into an escrow or other appropriate account in a federally-insured bank or a federally-insured thrift institution mutually acceptable to the Co-Obligees.  In order to give Additional Named Obligee appropriate access to Bond proceeds pursuant to this Paragraph 2.15, the agreement establishing the escrow or other appropriate account into which bond proceeds are deposited will provide for Additional Named Obligee to have the sole authority to make a withdrawal or series of withdrawals upon submitting to BSEE applicable permits for the contemplated decommissioning operations made the subject of the Default.   Additional Named Obligee pledges to use funds from this escrow or other appropriate account only for satisfying the Decommissioning Obligations then requiring performance.

2.16   If Additional Named Obligee receives bond proceeds under Paragraph 2.12 or withdraws Bond proceeds under Paragraph 2.15, but fails to commence performance of the Decommissioning Obligations, as specified in the regulations at 30 C.F.R., Part 250, subpart Q, within ninety (90) calendar days of receiving/withdrawing the Bond proceeds, or as otherwise mutually agreed in writing, Additional Named Obligee shall immediately tender to BOEM Obligee the proceeds of the Bond to arrange for performance of the requisite activities to address the Decommissioning Obligations then requiring performance.  In order to give BOEM Obligee immediate access to the remaining Bond proceeds pursuant to this Paragraph 2.16, the Additional Named Obligee will provide, in the agreement establishing the escrow or other appropriate account into which Additional Named Obligee deposits the Bond proceeds, terms that authorize BOEM Obligee, after notifying Additional Named Obligee of Additional Named Obligee's failure to timely commence Decommissioning Obligations, to make withdrawals from the account consistent with this Paragraph 2.16.  Additional Named Obligee tendering bond proceeds to BOEM Obligee under this Paragraph 2.16 shall not prevent Additional Named Obligee from calling the Bond up to the remaining penal sum of the Bond upon the occurrence of any subsequent default.

2.17   Regardless of which Co-Obligee calls the Bond, and notwithstanding anything else to the contrary herein, any and all proceeds attributable to forfeiture, or call, of the Bond must be applied solely and exclusively to extinguish the Decommissioning Obligations, regardless of insolvency, bankruptcy, or default of the Principal, or an assignment by the Principal of all or part of its interests in the Applicable ROW, and all operations and activities necessary to be performed to extinguish such Decommissioning Obligations must be timely performed in accordance with the regulations of the Department of the Interior.  Nothing in this Paragraph 2.17 shall result in Surety's obligation to pay Bond proceeds in an amount greater than the penal sum amount of this Bond.

2.18   Notwithstanding anything else to the contrary herein, any payment of Bond proceeds made by Surety to either Co-Obligee or as directed by either Co-Obligee reduces the Bond penal sum amount regardless of any judicial action that results in BOEM reinstatement of this Bond.

2.19   Any assignment of all right, title, and interest in an Instrument or in the Applicable ROW, in whole or in part, by the Principal shall require at least fourteen (14) business days' prior written notice to the Surety.

3.     **Miscellaneous**

3.1    Nothing in this Bond expands the obligations and liabilities of Additional Named Obligee associated with the Applicable ROW pursuant to contract or law, and all such obligations and liabilities will be limited to the obligations and liabilities that accrued while Additional Named Obligee was a ROW Holder, as that term is used herein.

3.2    If either Co-Obligee decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not the other Co-Obligee joins such proceeding.

3.3    In the event there is more than one surety, or there are other types of financial assurance securing the Principal's performance of the Decommissioning Obligations, the Surety's obligation and liability under this Bond is on a "solidary" or "joint and several" basis along with such other surety(ies) and along with any other providers of such financial assurance.

3.4    The Surety agrees that, within five (5) calendar days after learning that it has been de-listed from the Circular No. 570, and/or of any action filed alleging the insolvency or bankruptcy of the Surety, or alleging any violation that would result in suspension or revocation of the Surety's certificate of suretyship, charter, or license to do business, the Surety will give notice to the Principal and the Co-Obligees.

3.5    The Principal agrees that, within five (5) calendar days after learning that the Surety has become bankrupt or, insolvent, or the Surety has had its charter or license to do business suspended or revoked, or is no longer named in the current Circular 570, the Principal will, at its sole cost and expense, substitute a bond identical in all material respects to this Bond from another Qualified Surety (as defined above).

3.6    The Principal agrees that, within five (5) calendar days of learning of any action filed alleging the insolvency or bankruptcy of the Principal, or alleging any violation that would result in suspension or revocation of the Principal's charter, or license to do business, it will notify the Co-Obligees and the Surety.

3.7    The Surety's obligation and liabilities under this Bond are binding upon the Surety's successors and assigns, if any. Nothing in this Bond permits assignment of the Surety's obligation without the written consent of each of the Co-Obligees.

3.8    The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

3.9    No forbearance by either of the Co-Obligees will release the Principal and the Surety from any liability under this Bond to any Co-Obligee.

3.10    The penal sum of the Bond will be reduced by and to the extent of any payments made by Surety hereunder, or its successors and assigns, if any; however the Bond will remain in full force and effect for the remaining balance of the Bond until all the Decommissioning Obligations are satisfied, or until a replacement bond from a Qualified Surety or other form of financial assurance acceptable to each Co-Obligee, in its sole discretion, is provided.

3.11    No right or action will accrue on this Bond to or for the use of any Person other than the Principal, Surety, the Additional Named Obligee, and the BOEM Obligee, and their respective heirs, executors, debtor(s) in possession, administrators, assigns, or successors, pursuant to the terms of this Bond and applicable law.

3.12    A notice or communication under or in connection with this Bond shall be in writing and shall be deemed to have been duly given or made when (a) delivered by hand by a recognized courier delivery service, on the date shown on the receipt, or (b) in the case of delivery by United States certified mail with return receipt requested and postage prepaid, on the date of delivery.  The addresses for all notices are as follows:

<u>Principal</u>:

Fieldwood Energy Offshore LLC
2000 West Sam Houston Parkway South, Suite 1200
Houston, TX  77042
Attn:  Mr. Mark Mozell, Vice President Risk Management, Insurance
Telephone: 713-969-1133

<u>With a copy to</u>:

Fieldwood Energy Offshore LLC
2000 West Sam Houston Parkway South, Suite 1200
Houston, TX  77042
Attn:  Mr. Tommy Lamme, General Counsel
Telephone: 713-969-1107

Additional Named Obligee:

Marathon Oil Company
5555 San Felipe Street
Houston, TX  77056
Attn:  Jim Sandoval, Assistant Treasurer
Telephone:  713-296-4623

With a copy to:

Marathon Oil Company
5555 San Felipe Street
Houston, TX  77056
Attn:  Mr. G. Adam Dempsey, Senior Counsel-Acquisitions &
Dispositions
Telephone:  713-296-2608

BOEM Obligee:

Bureau of Ocean Energy Management
1201 Elmwood Park Boulevard
New Orleans, Louisiana 70161
Attention: Regional Director
Telephone: 504-736-0557


Surety:

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attn: Joellen Mendoza
Telephone: (630) 521-8461

A party to this Bond may change its address for notices by written notice to the other parties.

3.13    BOEM Obligee acknowledges that DAA and Principal are parties to the Assignment Transaction, whereby Principal acquired the infrastructure associated with the Applicable ROW, and BOEM Obligee agrees that it has no rights, duties or obligations pursuant to the Assignment Transaction, and it is not a third-party beneficiary under the agreements relevant to the Assignment Transaction.   Additional Named Obligee and Principal acknowledge that BOEM Obligee may enforce its regulations concerning the obligations of assignors and assignees.

**3.14**   This Bond will be subject to, and interpreted in accordance with, federal law and, in the absence of federal law, the law of the State of Texas. All disputes arising out of or in connection with this Bond shall be resolved exclusively in the federal courts in Texas and the parties hereto consent to the jurisdiction and venue of such courts.  Without limiting the foregoing, all regulations governing surety bonds included within 30 CFR 556.900, *et seq.* are incorporated herein by reference for the benefit of both BOEM Obligee and Additional Named Obligee.

**3.15**   Any decommissioning obligations associated with the Applicable ROW for which Additional Named Obligee has no liability shall be covered by separate and distinct financial assurance provided to BOEM Obligee by Principal or another party.

**3.16**   This Bond may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument. Any .pdf (portable document format) or other electronic transmission hereof or signatures hereon shall, for all purposes, be deemed originals.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on the Effective Date, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**PRINCIPAL:  Fieldwood Energy Offshore LLC**

WITNESSES:

By: _____

Name:    John H. Smith

Title:    Vice President

**SURETY:   The Hanover Insurance Company**

WITNESSES:

Megan Sivley

Miranda Perez

By: _____

Name:    Teresa D. Kelly

Title:    Attorney-in-Fact

**ADDITIONAL  NAMED  OBLIGEE:     Marathon  Oil Company**

WITNESSES:

By: _____

Name:    T. Mitch Little

Title:    Executive Vice President, Operations

**BOEM OBLIGEE: United States Department of the Interior**
**By:  Bureau of Ocean Energy Management**

WITNESSES:

By: _____

Name: _____

Title: _____

*[Signature Page to Multi-Obligee Supplemental Bond for Right-of-Way OCS-G28809, PSN 20222)]*

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

**KNOW ALL PERSONS BY THESE PRESENTS:**

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Dan W. Burton, Teresa D. Kelly, Craig C. Payne, Laura L. Kneitz, Megan Sivley and/or Rheagyn L. White**

Of **Alliant Insurance Services, Inc. of Houston, TX** each individually, if there be more than one named, its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

**Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance**

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety, any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this **24th** day of **May, 2017**.

The Hanover Insurance Company
Massachusetts Bay Insurance Company
Citizens Insurance Company of America

John C. Roche, EVP and President

The Hanover Insurance Company
Massachusetts Bay Insurance Company
Citizens Insurance Company of America

James H. Kawiecki, Vice President

THE COMMONWEALTH OF MASSACHUSETTS )
COUNTY OF WORCESTER                )  ss.

On this 24th day of **May, 2017** before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

Diane J. Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 23rd day of October, 2019

**CERTIFIED COPY**

Theodore G. Martinez, Vice President

EXHIBIT "A"

PERFORMANCE BOND

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC., with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with an office at 175 Berkeley Street, Boston, MA 02116, and The Hanover Insurance Company, with an office at 440 Lincoln Street, Worcester, MA 01653, Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT 06183 as co-sureties (hereinafter collectively called the "Surety"), are held and firmly bound unto Anadarko Petroleum Corporation, Anadarko US Offshore LLC (the two collectively referred to herein as "Anadarko"), Eni Petroleum US LLC ("Eni") and Noble Energy, Inc. ("Noble"), together with Anadarko (collectively hereinafter called the "Obligees"), Anadarko with its principal office at 1201 Lake Robbins Drive, The Woodlands, Texas 77380, Eni with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, and Noble with its principal office at 1001 Noble Energy Way, Houston, Texas 77070 in the penal sum of One Hundred Million and No/100 Dollars ($100,000,000,00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Liberty Mutual Insurance Company | $40,000,000.00 | 022059149 |
| The Hanover Insurance Company | $45,000,000.00 | 1038705 |
| Travelers Casualty and Surety Company of America | $15,000,000.00 | 106854941 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligees have entered into that certain Purchase And Sale Agreement dated effective November 1, 2013, as amended by that certain First Amendment To Neptune Spar Purchase And Sale Agreement, dated effective October 1, 2014 (hereinafter collectively called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligees to the Principal of the interests of Obligees in the Neptune Spar and associated wells and subsea pipelines and equipment defined therein as those certain "Assets" identified on Exhibit A-1 (the "Wells") and Exhibit A-2 (the "Equipment") of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "Bond"), together with, among other rights and obligations, all plugging, abandonment and decommissioning obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligees at the time of the execution of the First Amendment To Neptune Spar Purchase And Sale Agreement  a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligees, in substantially the same form attached as Exhibit B to the Purchase Agreement.

Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the plugging, abandonment and decommissioning obligations described above, or to the extent the Obligees may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out any or all of the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond and the Obligees have presented to the Surety a written notice that the Principal is in default of such plugging, abandonment and decommissioning obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days of its receipt of such written notice of default, formally elect by notice to Obligees to either: (I) Pay to the Obligees an amount equal to the actual charges incurred by Obligees in performing the plugging, abandonment and decommissioning

obligations within twenty (20) days of receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein) and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted Plugging, Abandonment and Decommissioning Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been properly performed and discharged, thereby reducing the Penal Sum by an amount equal to the costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

In the event Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then SURETY **SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEES, THEIR AFFILIATES, AND THEIR AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEES CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEES), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of three (3) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligees, whichever is later, and, subject to the three (3) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligees to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that has an** investment grade rating, as rated by Standard & Poor's or Moody's rating services, in the amount necessary to replace this Bond. If so posted, the Obligees will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligees, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Anadarko Petroleum Corporation Anadarko US
Offshore LLC 1201 Lake Robbins Drive The
Woodlands, Texas 77380 Attention: Frank Meyer

Eni Petroleum US LLC Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700 Houston, Texas
77002 Attention: Gary F. Clifford

Noble Energy, Inc.
1001 Noble Energy Way Houston, Texas 77070
Attention: Daniel S. Mills

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attention: Dan Orna

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on March 30, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

<u>**WITNESS:**</u>                                      **PRINCIPAL:**

_____                    FIELDWOOD ENERGY, LLC.

_____
Print Name                                          By:_____
                                                    Name:_____
                                                    Title:_____
                                                    Date:_____

<u>**WITNESS:**</u>                                      **OBLIGEE:**

_____                    NOBLE ENERGY, INC.

_____
Print Name                                          By:_____
                                                    Name:_____
                                                    Title:_____
                                                    Date:_____

WITNESS:

_Gina Rodriguez_
Print Name

SURETY:

LIBERTY MUTUAL INSURANCE COMPANY

By: _____

Name: _____Laura E. Sudduth_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

WITNESS:

_Gloria Mouton_
Print Name

SURETY:

THE HANOVER INSURANCE COMPANY

By: _____

Name: ____Gina A. Rodriguez_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

WITNESS:

_Gina Rodriguez_
Print Name

SURETY:

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____

Name: _____Laura E. Sudduth_____

Title: _____Attorney-In-Fact_____

Date: _____April 5, 2018_____

<u>Exhibit A</u>

Attached to and made a part of Bond Nos. 022059149, 1038705 and 106854941 issued by Liberty Mutual Insurance Company, The Hanover Insurance Company and Travelers Casualty and Surety Company of America on behalf of Noble Energy, Inc,

A s s e t s

W e l l s

| Well Name | API No. |
|-----------|---------|
| VK 826 SS012 | 608164035800 |
| VK 826 A001 | 608164019401 |
| VK 826 A002 | 608164021900 |
| VK 826 A003 | 608164022000 |
| VK 826 A004 | 608164020500 |
| VK 826 A005 | 608164022100 |
| VK 826 A006 | 608164022200 |
| VK 826 A007 | 608164023600 |
| VK 826 A008 | 608164032400 |
| VK 826 A009 | 608164032501 |
| VK 826 A010 | 608164032601 |
| VK 826 A011 | 608164032700 |
| VK 826 A012 | 608164038101 |
| VK 826 A013 | 608164038200 |
| VK 826 A014 | 608164038001 |

<u>Equipment</u>

<u>Neptune Spar</u> (located on Viosca Knoll Block 826)
- Including but not limited to, the following spar components:
  - Topsides,
  - Hull,
  - On-platform mooring components,
  - Mooring lines, and
  - All transferrable equipment on Spar, including subsea cathodic protection system.

<u>Well (VK 826 S5012) Subsea Equipment</u>
- Including but not limited to, **the** following:
  - All subsea connections,
  - Subsea wellhead and Jumper, and
  - Risers, subsea manifolds, end terminations and equipment associated with Pipelines
  - set forth In Schedule 1,2(g) of the Purchase Agreement,

Subsea <u>Template</u>
All dry tree wells, well heads and installed downhole equipment associated with the Wells set forth in Exhibit A-1 of the Purchase Agreement.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7749008

American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS That American States Insurance Company is a corporation duly organized under the laws of the State of Indiana, that First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America are corporations duly organized under the laws of the State of New Hampshire (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint,

__Gina A. Rodriguez; Laura E. Sudduth; Mario Arzamendi; Mary Ann Garcia; Melissa Haddick; Orlando Aguirre; Sandra Parker; Tannis Mattson; Terri L.__
__Morrison__

all of the city of __Houston__ , state of __TX__ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this __26th__ day of __April__ __2017__



American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA    ss
COUNTY OF MONTGOMERY

On this __26th__ day of __April__ , __2017__ , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this __5th__ day of __April__ , 20 __18__

By: _Renee Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.*

*To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.*

POA - FNICA, GICA & SICA
LMS_12874_022017

7 of 200

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

**KNOW ALL PERSONS BY THESE PRESENTS:**

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Melissa Haddick, Terri L. Morrison, Tannis Mattson, Sandra Parker, Gina A. Rogriguez,**
**Mary Ann Garcia and/or Mario Arzamendi Sr**

Of **Marsh USA, Inc., of Houston, TX**  each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this 28th day of April  2016.

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Robert Thomas, Vice President

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

J. Michael Pere, Vice President

THE COMMONWEALTH OF MASSACHUSETTS )
COUNTY OF WORCESTER ) ss.

On this 28th day of April 2016 before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known  to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

DIANE J. MARINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 4, 2022

Diane J. Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 5th day of April, 2018

CERTIFIED COPY

Theodore G. Martinez, Vice President

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



# POWER OF ATTORNEY

**Farmington Casualty Company**
**Fidelity and Guaranty Insurance Company**
**Fidelity and Guaranty Insurance Underwriters, Inc.**
**St. Paul Fire and Marine Insurance Company**
**St. Paul Guardian Insurance Company**

**St. Paul Mercury Insurance Company**
**Travelers Casualty and Surety Company**
**Travelers Casualty and Surety Company of America**
**United States Fidelity and Guaranty Company**

**Attorney-In Fact No.**  230577

**Certificate No.** 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____Houston_____, State of _____Texas_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____23rd_____ day of _____August_____, 2016.

**Farmington Casualty Company**
**Fidelity and Guaranty Insurance Company**
**Fidelity and Guaranty Insurance Underwriters, Inc.**
**St. Paul Fire and Marine Insurance Company**
**St. Paul Guardian Insurance Company**

**St. Paul Mercury Insurance Company**
**Travelers Casualty and Surety Company**
**Travelers Casualty and Surety Company of America**
**United States Fidelity and Guaranty Company**

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____23rd_____ day of _____August_____, _____2016_____, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



## POWER OF ATTORNEY

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

Attorney-In Fact No.  230577

Certificate No. 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____ Houston _____, State of _____ Texas _____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____ 23rd _____ day of _____ August _____, 2016.

| | |
|---|---|
| Farmington Casualty Company | St. Paul Mercury Insurance Company |
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____ 23rd _____ day of _____ August _____, 2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof**, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# Electronic Proof of Claim_O$BUD28824[[CSA#7711#CF]]

Final Audit Report                                        2020-11-25

| | |
|---|---|
| Created: | 2020-11-25 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAADid8NOaG2MGe3CG15m_Pf9lGVEa9eqng |

## "Electronic Proof of Claim_O$BUD28824[[CSA#7711#CF]]" History

Web Form created by Prime Clerk (epoc@primeclerk.com)
2020-11-25 - 2:23:33 AM GMT

Brandon K. Bains (lmurphy@l-llp.com) uploaded the following supporting documents:
Attachment
2020-11-25 - 2:27:25 AM GMT

Web Form filled in by Brandon K. Bains (lmurphy@l-llp.com)
2020-11-25 - 2:27:25 AM GMT- IP address: 47.187.54.206

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
2020-11-25 - 2:27:28 AM GMT- IP address: 47.187.54.206

Agreement completed.
2020-11-25 - 2:27:28 AM GMT

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| | |
|---|---|
| **Fill in this information to identify the case (Select only one Debtor per claim form):** | |
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | **The Hanover Insurance Company** |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |
| 2. | **Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From whom? |
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**     **Where should payments to the creditor be sent?** (if different)<br><br>Contact phone 214-722-7171     Contact phone<br>Contact email bbains@l-llp.com     Contact email |
| 4. | **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known)_____    Filed on _____ / ____ / _____<br>                                                                 MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? |

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

[X] No

[ ] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7.  How much is the claim?**   $ _Unknown (See Addendum)_ .

**Does this amount include interest or other charges?**

[X] No

[ ] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

[X] No

[ ] Yes. The claim is secured by a lien on property.

**Nature of property:**

[ ] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

[ ] Motor vehicle

[ ] Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed) _____ %

[ ] Fixed

[ ] Variable

**10. Is this claim based on a lease?**

[X] No

[ ] Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

[X] No

[ ] Yes. Identify the property: _____

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☒ Other. Specify subsection of 11 U.S.C. § 507(a)( 2 ) that applies. | $ See Addendum |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☒ No | |
| | ☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $ _____ |

## Part 3:   Sign Below

| | |
|---|---|
| **The person completing this proof of claim must sign and date it. FRBP 9011(b).** | *Check the appropriate box:* |
| | ☐ I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☒ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |
| **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. |
| | I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

**Signature:** *Brandon K. Bains*
Brandon K. Bains (Nov 24, 2020 20:20 CST)

**Email:** lmurphy@l-llp.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Brandon K Bains | | |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Langley LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 94075 | | |
| | Number        Street | | |
| | Southlake | TX | 76092 |
| | City | State | ZIP Code |
| Contact phone | 214-722-7171 | Email | bbains@l-llp.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
   **(attach below)**          ☐ **I do _not_ have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

---

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

---

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

## Do not file these instructions with your form

# ADDENDUM TO MASTER PROOF OF CLAIM BY
## THE HANOVER INSURANCE COMPANY

This Addendum is submitted with and incorporated in the Proof of Claim filed in Case No. 20-33948, *In re Fieldwood Energy, LLC et al.*, by The Hanover Insurance Company ("Hanover").

## CREDITOR

Hanover is a Massachusetts corporation and is authorized to conduct business in the State of Texas. Hanover is a creditor, having issued, as surety, numerous miscellaneous commercial bonds on behalf of Fieldwood Energy, LLC and Fieldwood Energy Offshore, LLC (collectively, the "Debtors") or their affiliates as principal.

The Debtors executed the following indemnity agreements with Hanover and its affiliates (the "GIA"):

| **Date** | **Agreement** | **Indemnitors** | **Surety** |
|---|---|---|---|
| | | | |
| October 23, 2019 | General Indemnity Agreement | Fieldwood Energy, LLC and Fieldwood Energy Offshore, LLC | The Hanover Insurance Company |
| | | | |

Under the GIA, the Debtors agreed to indemnify the Surety from and against all loss, cost and expense, including attorneys' fees, incurred by the Surety by reason of the extension of surety credit to any of the Debtors. The Debtors also promised to pay all premium due on the Bonds. Hanover requires annual premium payments in order to process renewal of the Bonds.

A true and correct copy of the GIA is attached hereto as Exhibit "A-1."

## BASIS OF THE CLAIM

Hanover faces continued exposure on the bonds itemized in the attached Exhibit "A-2" (the "Bonds"). The Bonds were issued prior to the petition date in this case and remain subject to potential claims against Hanover by the obligees thereof.

Hanover's claims are based on:

a.   its rights under the GIA;

b.   its rights as a surety to common law indemnity and exoneration; and

c.   its rights under contract and otherwise as subrogee to and/or assignee of the rights of those persons entitled to make claim on the Bonds.

With respect to the claims under contract and otherwise as subrogee to those persons entitled to assert rights under the Bonds, Hanover hereby asserts such claims if and to the extent such persons have not filed and do not file their own proofs of claim timely.

<u>AMOUNT OF CLAIM</u>

The claim asserted herein is unliquidated in part at this time.

The Debtors are, at the date of this filing, indebted and liable to Hanover in at least the amount of $46,745,185 based on the total amount of Hanover's exposure under the Bonds, based on their penal sum. The Debtors are also liable to Hanover for attorneys' fees and expenses incurred by Hanover as a result of issuing the Bonds and other bonds on behalf of the Debtors. Hanover also faces exposure in an unknown amount for any post-petition premium payments that are not made by the Debtors. The Debtors are jointly and severally liable to Hanover to-date in the total amount of at least $46,745,185.

<u>CLASSIFICATION OF AND SECURITY FOR CLAIM</u>

1. Hanover is filing a separate unsecured proof of claim in the amount of $46,745,185. Each of the Debtors are jointly and severally liable to Hanover for the claim amount.

2. Hanover has a contingent, unliquidated priority claim pursuant to 11 U.S.C. § 507(a)(2) for any post-petition premium payments that are not made by the Debtors. The premium payments are actual, necessary costs of preserving the Debtors' estates incurred in conjunction with renewal of the Bonds constituting administrative expenses under 11 U.S.C. § 503(b)(1)(A). As the Debtors are continuing to operate, the Bonds continuing in force is necessary to preserve the Debtors' estates. Hanover is unable to determine the amount of its priority claim at this time because there are currently no outstanding premium payments owed by the Debtors and the Bonds renew on a rolling basis.

3. Hanover reserves the right to assert other priority claims, to the extent they are unsecured, under 11 U.S.C. § 507(a)(4) and § 507(a)(5), if and to the extent it pays claims on the Bonds that qualify for priority treatment pursuant to these sections of the Bankruptcy Code.

4. Notwithstanding the foregoing, Hanover reserves the right to assert that certain portions of its claim are entitled to administrative priority if and to the extent that any of the Bonds covers losses that occur or have occurred post-petition.

<u>RESERVATION OF RIGHTS AND CLAIMS</u>

Hanover reserves all rights accruing to it as surety or otherwise, and the filing of this Proof of Claim is not intended to be and shall not be construed as: (a) an election of rights or remedies, or (b) a waiver of any past, present or future event of default on the part of the Debtors or any other person, or (c) a waiver or limitation of any rights of Hanover.

Without prejudice to its position that no liability exists with respect to all bonds terminated, canceled, released or replaced prior to the date of this Proof of Claim, Hanover asserts a contingent claim with respect to those bonds in the event any claim should be made upon them.

<u>ADDENDUM TO HANOVER MUTUAL INSURANCE COMPANY'S PROOF OF CLAIM</u>          2

Hanover reserves all rights and remedies which it may have, in addition to filing of and pursuit of this Proof of Claim, against any other person or entity, including (without limitation): (i) rights against indemnitors, other guarantors, successors in interest or agents; (ii) rights against other persons against which the Debtors, or any other subrogor of Hanover, has rights, and to which rights Hanover succeeds by virtue of becoming subrogated to such rights; (iii) the right to assert some or all of Hanover's claim as an administrative claim, whether or not such claim is stated herein; and (iv) the right to assert any of the matters asserted herein by way of defense, counterclaim, offset or recoupment against any claim asserted against Hanover by the Debtors or any representative or affiliate thereof or successor thereto.

Hanover reserves the right to assert as administrative claims those claims arising from breaches of any contract that the Debtors have assumed or will assume.

Hanover reserves the right to assert as administrative claims those claims arising through subrogation or assignment.

Hanover reserves any and all defenses to claims that have been or may hereafter be asserted against it under any of the Bonds. Nothing herein shall be deemed an admission of liability under the continued effectiveness of, or the validity of, the Bonds.

Hanover reserves all rights available to it by applicable law or rule to amend this Proof of Claim based on additional facts and circumstances giving rise to additional claims and upon circumstances giving rise to additional claims and upon claims that are presently contingent becoming fixed and upon determination of liquidated amounts for the portions of the claim made hereunder which is not presently liquidated.

<u>LIST OF EXHIBITS</u>

Exhibit "A-1" – Indemnity Agreements

Exhibit "A-2" – List of Open Bonds

# EXHIBIT A-1

The Hanover Insurance Company
General Agreement of Indemnity

## GENERAL AGREEMENT OF INDEMNITY

**This General Agreement of Indemnity** is made and entered into this 2nd day of April, 2018, by the following undersigned persons and/or entities (including individuals, partnerships, corporations and/or trusts) **Fieldwood Energy, LLC** (individually and collectively hereinafter called the "Principal") and the additional undersigned persons and/or entities N/A (individually and collectively, together with the Principal, hereinafter called the "Indemnitors"). The Indemnitors, jointly and severally, hereby agree to assume the obligations of Indemnitors, as noted in this Agreement, with respect to any Bonds (as defined herein) issued before or after the date of this Agreement by the Surety (as defined herein).

**WITNESSETH**

**WHEREAS** at the request of any one or more of the Indemnitors, and with the express understanding that this Agreement of Indemnity be given, the Surety has heretofore or has presently been requested to and/or has executed or has arranged or procured to be executed and/or, from time to time hereafter, may be requested to and may in its sole discretion execute, arrange for the execution of, or procure to be executed Bonds on behalf of any one or more of the Indemnitors; and

**WHEREAS** the Indemnitors hereby affirm that they have a substantial, material and beneficial interest in obtaining Bonds from or through the Surety or in the Surety refraining from canceling the Bonds.

**NOW THEREFORE**, as an inducement to the Surety to execute, procure, renew, continue, forebear from canceling, substitute or amend Bonds on behalf of any one or more of the Indemnitors, and in consideration of the premises set forth herein, and other good and valuable consideration, receipt and sufficiency of which is hereby expressly acknowledged, and intending to be legally bound hereby, the Indemnitors, for themselves, their heirs, executors, administrators, receivers, successors and assigns, jointly and severally hereby covenant, agree and bind themselves to the Surety as follows:

**DEFINITIONS**

In addition to the capitalized terms defined elsewhere in this Agreement, the following terms, when utilized in this Agreement, unless the context otherwise requires, will have the meanings listed below, which meanings shall be equally applicable to both the singular and plural forms of such terms:

> **"Surety"** shall mean any one or more, individually and collectively, of: The Hanover Insurance Company and/or its subsidiaries, including Citizens Insurance Company of America and Massachusetts Bay Insurance Company, or any combination of the aforesaid companies, and/or any person or company joining with any of the aforesaid companies in executing, or procured by any of the aforesaid companies to execute any bond, undertakings or obligations, together with their successors and assigns, as the case may be.

> **"Bond or Bonds"** shall mean any surety bond, undertaking, recognizance, instrument of guarantee or other surety obligation, whether issued in the name(s) of any Indemnitors solely or as co-venturers with others, issued before or after the date of this Agreement by Surety.

1. **Premiums**: The Indemnitors will promptly pay or cause to be paid promptly on demand all premiums costs and charges of the Surety for any Bonds issued by the Surety until the Indemnitors have delivered evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

2. **Indemnity**: The Indemnitors shall exonerate, indemnify, keep indemnified and hold harmless the Surety from and against any and all liability, demands, losses, fees, costs and expenses of whatsoever kind or nature (including, but not limited to pre and post-judgment interest, court costs, consultant and counsel fees and expenses) which the Surety may pay, sustain or incur by reason of or in any manner as a consequence of any one or more of the following:

> a) being requested to execute or procure any Bonds;
> b) having executed or procured the execution of any Bonds;

Page <u>1</u> of 6

3170419.3

The Hanover Insurance Company
General Agreement of Indemnity

    c)   the Indemnitors' failure to perform or comply with any other agreement with the Surety;

    d)   the Indemnitors providing materially false or misleading information to the Surety;

    e)   enforcing any of the covenants of this Agreement or any other agreement between the Indemnitors and the Surety;

    f)   the Surety's cost of investigation of any claim, demand, suit, notice or circumstance which may give rise to liability on the part of the Surety in connection with any Bonds, this Agreement or any other agreement between the Indemnitors and the Surety; or

    g)   in defending any suit, action, mediation, arbitration or any other proceedings to obtain release from liability, whether the Surety, in its sole and absolute discretion, elects to employ its own attorneys or permits the Indemnitors to defend the Surety and whether the Surety, in its sole and absolute discretion, elects to make a compromise settlement of a contested liability in connection with any Bonds.

3.   **Payment**:  Payment shall be made by the Indemnitors to the Surety, immediately upon demand by the Surety, in the amount of any claimed or feared liability, whether such liability is contingent or noncontingent, disputed or undisputed, and/or whether or not the Surety shall have established a reserve or made any payments therefor. Such payment to the Surety shall be: (a) if the amount asserted as a claim, demand or suit is an ascertainable or liquidated amount, the amount of the claim, demand or suit, together with such additional amount the Surety, in its sole and absolute discretion, deems sufficient to indemnify and hold it harmless from and against such claim, demand or suit, including any cost, interest or expense in connection therewith; or (b) if the amount asserted as a claim, demand or suit is an unascertainable or unliquidated amount, or if no claim has yet been asserted but Surety fears that a claim may subsequently be asserted or a loss or expense may be incurred by it as a result of its execution of any Bonds, the amount the Surety, in its sole and absolute discretion, deems sufficient to indemnify and hold it harmless from and against any loss, cost, interest and expense. The Surety shall have the right to hold such funds as collateral without any obligation to earn interest on the collateral for the Indemnitors until the Indemnitors serve evidence satisfactory to the Surety of its discharge from all Bonds and all liability by reason thereof, and to use such funds or any part thereof, at any time, in payment or settlement of any judgment, claim, liability, loss, damage, fees or any other expense.  The Surety shall have the exclusive right to adjust, settle, or compromise any claims, demand, suit or any other proceeding arising out of any Bonds against the Surety and/or the Indemnitors, take whatever action it deems appropriate in response thereto, and its determination of whether to defend or settle the same shall be binding and conclusive upon the Indemnitors.

Indemnitors acknowledge that the failure of Indemnitors to pay to Surety, upon demand, the sum demanded by Surety as payment shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of Indemnitors under this Agreement, including but not limited to the obligation to pay to Surety the sum demanded, to the end that the Surety shall have the right to hold the sum demanded by it hereunder until such time as the liability of the Surety as a result of issuing any Bonds on behalf of Indemnitors shall have been determined or settled in accordance with the terms hereof.

In the event of a payment by the Surety, the Indemnitors agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it about the matters herein contemplated by this Agreement plus pre and post judgment interest. **The pre-judgment rate of interest payable by the Indemnitors to the Surety under this Indemnity Agreement is a commercial variable rate of interest** which will initially be calculated on the date the first payment is made by the Surety and will automatically be adjusted every month thereafter until the Surety has been repaid in full, with the first adjustment occurring on the 30th day after the first payment is made by the Surety (in the event the adjustment date would fall on a weekend or holiday, the date shall be adjusted on the next business day) (every day on which a rate adjustment is made is referred to in this Indemnity Agreement as an "Adjustment Date"). On the initial date of the first payment by the Surety and each Adjustment Date thereafter, the commercial interest rate payable for the next 30 day period will equal to the **U.S. Prime Rate (as published in the Wall Street Journal) plus a four percent premium** for the applicable period. The interest rate will change on each Adjustment Date to reflect changes in the U.S. Prime Rate without any notice to the Indemnitors. Post judgment interest shall apply to any amount due to the Surety at the maximum allowable legal rate of interest in the subject jurisdiction. In the event of any payment or disbursement by the Surety, the Indemnitors agree to immediately reimburse the Surety for any and all payments and disbursements made (including, but not limited to, interest from the date of the Surety's payments at the maximum rate allowable). In the event of any payment by the Surety, an itemized statement of the amount of any such payment sworn to by any officer or authorized representative of the Surety, or any voucher or vouchers, invoices or other evidence of such payment shall be *prima facie* evidence of the fact and the amount of such payment, and the extent of the liability of the Indemnitors to the Surety, and, in the absence of actual fraud or bad faith amounting to dishonesty or malicious conduct, shall be final, conclusive and binding upon the Indemnitors in any claim, suit or other proceeding by the Surety to recover the amount of such payments pursuant to this Agreement or otherwise.

The Hanover Insurance Company
General Agreement of Indemnity

4. **Notice of Claims:** If the Indemnitors become aware of any claim, demand, notice of claim or proceeding which may result in any liability to the Surety under any Bonds, the Indemnitors shall notify the Surety, in writing, of the nature, substance and amount of such claim within five (5) days of the first date upon which the Indemnitors become aware of the existence of such a claim or demand. In addition to such notice, the Indemnitors shall keep Surety apprised of any material developments relating to such claim or demand, and the Indemnitors shall furnish Surety with any additional information which the Surety may reasonably request relating to such claim or demand.

5. **Books and Records:** The Surety, or its designated agents, shall have full and free access to the Indemnitors' books and records at any and all reasonable times until the liability of the Surety under any Bonds is completely terminated and the claims of the Surety against any Indemnitors are fully satisfied. In addition, each of the Indemnitors hereby specifically authorizes any financial institution or depository in which its funds may be deposited to furnish any information requested by the Surety relating to such accounts. The Indemnitors hereby waive any privilege in any accountant's work papers and any other documents or communications that may be subject to any accountant/client privilege related to the preparation any financial statements prepared by their accountant(s) and further agree to provide any additional releases, requests, waivers or any other documents required in order to allow the Surety access to the requested information.

6. **Decline Execution:** The Surety may, in its sole and absolute discretion, decline to execute any bond without impairing the validity of this Agreement, and the Indemnitors hereby waive any and all claims against the Surety due to its refusal or failure to so execute.

7. **Set offs:** The Surety, in its sole and absolute discretion, may reduce the amount of the Indemnitors' liability to the Surety under this Agreement by applying as a set off any monies due the Indemnitors by the Surety as a result of any claim any of the Indemnitors may have against the Surety arising out of any bonds issued by the Surety on behalf of third parties or otherwise.

8. **Waiver of Notice of Bonds and Liabilities:** The Indemnitors have relied upon their own due diligence in making their own independent appraisal of the business and financial condition of Principal and other Indemnitors in executing this Agreement and agree to keep themselves fully informed as to the business and financial affairs of each other Principal and Indemnitors so that each of them are aware of the risks and hazards of continuing as an Indemnitor. The Indemnitors waive notice from the Surety of any act, fact, or information coming to the notice or knowledge of the Surety concerning their rights or liabilities under any Bonds executed by the Surety on behalf of Indemnitors, or any one or more of them, or the rights or liabilities of the Indemnitors, whether the Surety has such knowledge or notice before or after the execution of this Agreement.

9. **Changes:** The Surety, in its sole and absolute discretion, may agree or refuse to agree to any alteration, amendment, change, modification, limitation, or extension of any Bonds, and any renewal or other obligation in place or in lieu thereof, or of any contract secured by any Bond, and in any such case the Indemnitors shall be liable to the Surety as fully and to the same extent on account of any such altered, amended, changed, modified, limited or extended Bond or renewal or substitution thereof, or contract, whenever and as often as made, even though such action does or might substantially increase the liability of the Indemnitors.

10. **Other Sureties:** In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure for the benefit of such other sureties, co-sureties and reinsuring sureties, provided, however, that the Surety is and shall be conclusively presumed to be a real party in interest under this Agreement to the full extent of any and all liability, loss, cost or expense incurred in connection with, related to or arising out of any Bonds regardless of whether such liability or loss, cost or expense may involve a co-surety or reinsurer, or the like, and regardless of whether a co-surety or reinsurer, or the like, may bear some or all of such liability or loss, cost or expense, provided that Indemnitors may request as a condition to such presumption that Surety provide reasonable assurance that Indemnitors shall not be subject to redundant liability under this Agreement.

11. **Remedies and Suits:** No remedy conferred upon or reserved to the Surety by this Agreement is intended to be exclusive of any other remedy or remedies, and each and every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Agreement to the Surety shall be concurrent and may be pursued separately, successively or together against any Indemnitors, or any one or more of them; and every right, power and remedy given by this Agreement to the Surety may be exercised from time to time as often as may be deemed expedient by the Surety in its sole and absolute discretion. Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

The Hanover Insurance Company
General Agreement of Indemnity

12. **Other Indemnity:** The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have heretofore or may hereafter, with or without notice to or knowledge of the Indemnitors, accept or release other agreements of indemnity or collateral with the execution or procurement of any Bonds from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors or others under any such other or additional agreements of indemnity, or collateral, shall be cumulative and in addition to, and not in lieu of or substitution for, any of the rights afforded the Surety under this Agreement, and vice versa.  The execution of any subsequent agreements of indemnity shall not be construed as a novation and this Agreement may only be terminated as provided herein.  In addition, the liability of the Indemnitors under this Agreement shall not be affected by the failure of the Indemnitors to sign any Bonds, nor by the failure of any Indemnitor to receive notice of the execution of any Bonds, nor by any claim that any other indemnity or security was to be obtained, nor by the release of any indemnity, nor by the return or exchange of any collateral. If any Indemnitor to this Agreement is deemed for any reason (including, but not limited to, any defect in the execution of this Agreement by any Indemnitor) not bound thereby, the Agreement shall still be binding upon each and every other Indemnitor.

13. **Waiver of Right of Indemnity, Subrogation and Contribution:** The Principal and Indemnitors waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety have been first satisfied in full.  Further, Indemnitors shall not waive any claim or right of indemnity, subrogation or contribution with regard to any third party, pursuant to any contract, insurance policy or settlement, or otherwise, without the prior written consent of the Surety.

14. **Severability:**  If any provision or provisions of this Agreement is deemed void or unenforceable under the law of any jurisdiction governing its construction, the remainder of this Agreement shall not be deemed void or unenforceable thereby, but shall continue in effect and be enforced as though the void or unenforceable provisions are omitted.

15. **Construction:**  This Agreement is made and entered into for commercial purposes, and is not in any sense or for any purpose a consumer agreement, and is made and entered into as a result of negotiations, in a free and active market in which Indemnitors have and have had alternatives.  This Agreement shall be liberally construed so as to protect, hold harmless, exonerate, reimburse and indemnify the Surety.

16. **Forum, Venue and Jurisdiction:**  As to any legal action or proceeding related to this Agreement, the Indemnitors hereby submit themselves to personal jurisdiction in any and all jurisdictions in which (a) the Surety may sustain or pay any loss for which Indemnitors may be liable hereunder; (b) the Surety may be sued or be subject to suit or arbitration as a consequence of having issued any Bond; and/or (c) any assets of any Indemnitors may be located.  Indemnitors irrevocably consent to exclusive jurisdiction and venue in such court as may be selected by Surety, in its sole and absolute discretion, among the alternative jurisdictions to which Indemnitors have consented to submit themselves to personal jurisdiction as set forth above and hereby waive any and all rights to object to such venue and jurisdiction based on any alleged lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis.

17. **Indemnitors' Beneficial Interest:** This Agreement applies to Bonds written by the Surety at the request of or on behalf of the Principal, the Indemnitors, and any of their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures in which any of the Indemnitors, their wholly or partially owned subsidiary companies, subsidiaries of subsidiaries, divisions or affiliates have an interest or participation, whether open or silent; jointly, severally, or in any combination with each other; now in existence or which may hereafter be created or acquired.

18. **Confidential treatment of information:** The information provided to the Surety shall be treated as confidential and protected in accordance with the Hanover Privacy Policy which is available for inspection at http://www.hanover.com/thg/privacy/index.htm.

19. **Consent to Use of Credit Reports for Commercial Purposes:**  The Indemnitors hereby acknowledge and consent to the use of their individual consumer credit reports by the Surety for commercial purposes. The Surety's use of the information will be in connection with the Surety's assessment of the credit or prepayment risks associated with the Bonds. The Indemnitors acknowledge that the Surety has a legitimate business need for ongoing access to the credit information in connection with its business, that each transaction for surety credit will be initiated by the Indemnitors, and that the Surety may in its sole and absolute discretion decide to review the Indemnitors' financial condition on an ongoing basis to determine whether the Indemnitors satisfy the underwriting criteria of the Surety.

Page 4 of 6

3170419 3

The Hanover Insurance Company
General Agreement of Indemnity

20. **Amendments:**   This Agreement may not be changed or modified orally. No change or modification shall be effective unless agreed to in writing by a duly authorized officer of the Surety as an amendment hereto.

21. **Termination:**   This Agreement may be terminated prospectively, but not retroactively, as to any Indemnitors upon thirty (30) days' written notice sent by registered or certified mail to the Surety at its primary office location at The Hanover Insurance Company, Attention: Bond Department, 440 Lincoln Street, Worcester, Massachusetts, 01653, but any such notice of termination shall not operate to modify, bar, limit, affect, reduce, or discharge the obligations of such Indemnitors under this Agreement or otherwise as to the Bonds that may have been executed prior to the effective date of such termination or with respect to any Bonds executed after the effective date of such termination, provided the Surety had become obligated to execute or renew such Bonds prior to the effective date of termination.   Such notice of termination shall operate only with respect to the respective Indemnitors upon whose behalf such notice shall have been given.

22. **Counterparts:**   This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement. All counterparts taken together shall constitute a single Agreement.

23. **Entire Agreement:**   This Agreement constitutes the entire agreement among the Parties and there are no other understandings or agreements, conditions or qualifications relative to this Agreement which are not fully expressed in this Agreement.   Indemnitors acknowledge and warrant that no oral representations have been made to them by or on behalf of the Surety to induce them to sign this agreement.

24. _____

REMAINDER OF PAGE INTENTIONALLY BLANK

3170419.3

The Hanover Insurance Company
General Agreement of Indemnity

**IN WITNESS WHEREOF**, the Principal and Indemnitors, individually or through their duly authorized officers, officials or representatives, have hereunder set their hands and seals, as of the date referenced in the introductory paragraph of this Agreement.

**LLC (LIMITED LIABILITY COMPANY)** (only a general partner, managing member or member can sign)

ATTEST

Fieldwood Energy, LLC

By: _____ (Seal)

Name:        Michael T. Dane

Title:        Chief Financial Officer

Address:     2000 W. Sam Houston Pkwy S, Suite 200

             Houston, TX 77042

TID/EIN:     46-1326778

(STATE)   Texas

(COUNTY), SS.   Harris

On this 2nd day of April in the year 2018 , before me, the undersigned, personally appeared Michael T. Dane, personally known to me or proved to me on the basis of satisfactory evidence to be the individual, whose name as the Chief Financial Officer of the limited liability company known as Fieldwood Energy, LLC, is subscribed to the foregoing instrument and acknowledged to me that, being fully informed of the contents of this instrument, he/she has executed the same in his/her capacity as such Chief Financial Officer and with full authority, voluntarily for and as the act of said limited liability company.

[SEAL]



TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

_____
Notary Public

Tiffany Penry
_____
Printed Name of Notary Public

12 | 18 | 2018
_____
Commission Expiration Date

3170419.3

# EXHIBIT A-2

**Alliant**

## Executed Bond Report

### The Hanover Insurance Company

| Account Name and Address: | Fieldwood Energy LLC<br>2000 W Sam Houston Pkwy S, Suite 1200<br>Houston,  TX  77042 | Bond No: **1070297**<br><br>Date:  10/23/2019 |
|---|---|---|

**Principal:**  Fieldwood Energy Offshore, LLC

**Obligee Name and Address:**  United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company, Co-Obligees
Filed with: United States of America, acting by and through the Bureau of Ocean Energy Management and Marathon Oil Company
1201 Elmwood Park Blvd
New Orleans,  LA  70123-

**Power of Attorney No.**

| Effective Date:<br>From    10/23/2019  To    10/23/2020 | Bond Amount:<br>$1,745,185.00 | Contract Amount:<br>$0.00 | Premium:<br>$21,815.00 |
|---|---|---|---|
| Rate:<br>1.25% | Commission %<br>30.000% | Commission Amount<br>$6,544.50 | State Surchg-Fee:<br>$0.00 |

**Description:**

Issued in Duplicate - Multi-Obligee Right-Of-Way Supplemental Bond, OCS ROW No. OCS-G 28809 - Described as a 200-foot wide and approximately 5.47 miles (28,885 feet) long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20222.  The purpose of pipeline ROW OCS-G28809 is to maintain and operate PSN 20222 and to transport bulk oil from PLEM A in Block 244, through Blocks 200, 201, and 200, to Midline PLET A-1 in Block 156, all located in Green Canyon Area.

**Renewal Type:**

Continuous Until Cancelled/Released

**Cancellation Provision:**

Obligee Written Release to be obtained by Principal

**Additional Attachments:**

Copy of Bond.

**Comments:**

Issued in duplicate.  Approved as per Joellen Mendoza's 10/22/2019 email.

**Issued to Replace Bond No.**

N/A

---

Alliant Insurance Services, Inc. □ 5444 Westheimer □ Suite 900 □ Houston, TX 77056
PHONE (832) 485-4000 □ FAX (832) 485-4001 □ www.alliantinsurance.com

BOND NO. __1070297__

OCS ROW NO. __OCS-G 28809__

**BOND TYPE: Right-of-Way Supplemental Bond**          **PENAL SUM: $1,745,185.00**

## MULTI-OBLIGEE SUPPLEMENTAL BOND

KNOW ALL MEN BY THESE PRESENTS:

That on this 23rd day of October 2019 (the "*Effective Date*"), we, **Fieldwood Energy Offshore LLC** , a Delaware limited liability company, with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas  77042, assigned BOEM Company Qualification No. 3035 ("*Principal*"), and **The Hanover Insurance Company**, with an office 440 Lincoln Street, Worcester, MA 01653 ("*Surety*"), are held and firmly bound unto (i) the **United States of America, acting by and through the Bureau of Ocean Energy Management**, 1201 Elmwood Park Boulevard, New Orleans, Louisiana 70123 ("*BOEM Obligee*"), and (ii) **Marathon Oil Company**, an Ohio corporation, with its principal office at 5555 San Felipe Street, Houston, Texas 77056, assigned BOEM Company Qualification No. 0724 ("*Additional Named Obligee*") (BOEM Obligee and Additional Named Obligee being sometimes collectively referred to herein as "*Co-Obligees*") for the penal sum of One Million Seven Hundred Forty-Five Thousand One Hundred Eighty-Five and No/100 dollars ($1,745,185.00) lawful money of the United States of America for the payment of which penal sum the Principal and the Surety bind themselves, their successors and assigns, jointly, severally, and in solido, firmly by these presents, pursuant to the terms hereof.

WHEREAS, Additional Named Obligee is a former owner of relinquished Federal right-of-way OCS-G 28548 ("*Relinquished ROW*"), which BSEE (as defined below) reactivated on August 14, 2019, and is now assigned Federal right-of-way OCS-G28809 (together with the Relinquished ROW, collectively, the **("*Applicable ROW*")**, more fully described as follows:

> Pipeline Right-of-Way (ROW) OCS-G28809 is a 200-foot wide and approximately 5.47 miles (28,885 feet) long corridor associated with the 8-inch Pipeline Segment No. (PSN) 20222.  The purpose of pipeline ROW OCS-G28809 is to maintain and operate PSN 20222 and to transport bulk oil from PLEM A in Block 244, through Blocks 200, 201, and 200, to Midline PLET A-1 in Block 156, all located in Green Canyon Area.

WHEREAS, pursuant to a transaction between Deepwater Abandonment Alternatives, Inc., a Texas corporation ("*DAA*"), and Principal  in which the underlying infrastructure associated with the Applicable ROW has been acquired by the Principal ("*Assignment Transaction*"), Principal is required to provide security for the Decommissioning Obligations (as defined below) to Additional Named Obligee; and

WHEREAS, pursuant to applicable laws, rules, regulations, and policies of BOEM Obligee, Principal is required to provide financial assurance for the Decommissioning Obligations (as defined below) to BOEM Obligee; and

WHEREAS, the Surety warrants that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, that it is qualified to be a surety and guarantor on bonds and undertakings, that it is named in the current Circular 570, published by the Audit Staff Bureau of Accounts, U.S. Department of the Treasury ("*Circular 570*"), and that its certificate of suretyship has not been revoked; and

WHEREAS, the Surety warrants that it has duly executed a power of attorney, appointing the hereinafter named representative as the true and lawful attorney-in-fact of such Surety. All lawful process may be served in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder, and does hereby agree and consent that such service, when made at Surety's address as specified in Paragraph 3.12 below, will be valid service upon it, and that such appointment will continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder; but if the named representative in Paragraph 3.12 becomes no longer able to act on Surety's behalf, the Surety will promptly so inform each of the Co-Obligees.

NOW THEREFORE, the Principal, the Surety, and the Co-Obligees agree to the following:

1. **Definitions.** As used in this Bond, the following terms have the following meanings:

1.1 *Bond* means this multi-Obligee supplemental right-of-way bond, identified as Bond No. ;

1.2 *Instrument* includes, individually or collectively, any lease, operating agreement, designation of operator or agent, storage agreement, transfer of operating rights, permit, license, grant, or easement, pursuant to which the Principal has the right, privilege, or license to conduct operations associated with the Applicable ROW to which this Bond applies;

1.3 *Decommissioning Obligation(s)* means any decommissioning obligation(s) or requirement(s) imposed on both the Principal and the Additional Named Obligee by, or arising from (i) the Applicable ROW, (ii) any regulations of the Department of the Interior, solely as applicable to the Applicable ROW, or (iii) any Instrument issued, maintained, or approved under the Outer Continental Shelf ("*OCS*") Lands Act (43 U.S.C. §§ 1331 et seq.) related to the Applicable ROW acquired by Principal pursuant to the Assignment Transaction and that accrued before the Principal acquired the Applicable ROW therein;

1.4 *Qualified Surety* means a surety named in the version of Circular 570 current at the time the Qualified Surety provides a bond, and at all times thereafter.

1.5 *Person* includes an individual, a public or private entity, a State, a political subdivision of a State, any association of individuals, corporations, States, or subdivisions of States, or a government agency;

1.6 *Regional Director* means the Regional Director for the applicable BOEM Obligee Regional Office with jurisdiction over the Applicable ROW;

1.7 *ROW Holder* means the Bureau of Safety and Environmental Enforcement ("*BSEE*")-approved owner of the Applicable ROW;

**1.8**   ***Default*** means BOEM's determination that the Principal has failed to timely perform the Decommissioning Obligations.

**2.**   The Principal, the Surety, and the Co-Obligees further agree to the following:

**2.1**   The Surety hereby guarantees, to each of the Co-Obligees, the full and faithful performance by Principal of the entirety of the Decommissioning Obligations.  Under no circumstances, however, does such guarantee by the Surety exceed the penal sum of the Bond at any time in effect.

**2.2**   The Principal, as agent on behalf of all ROW Holders with an interest in the Applicable ROW, will fulfill the Decommissioning Obligations to the same extent as though the Principal were the sole interest owner of the Applicable ROW from the Assignment Transaction.

**2.3**   The Surety does hereby absolutely and unconditionally bind itself to each of (i) BOEM Obligee and (ii) Additional Named Obligee for all sums required to fund the performance of the Decommissioning Obligations, up to the penal sum of the Bond, regardless of the number of years this Bond is in force.

**2.4**   The Surety will be responsible to each of the Co-Obligees for all Decommissioning Obligations of the Principal until the earlier of: (a) the satisfaction of all Decommissioning Obligations, (b) if the Bond is called, the Surety has provided the funds up to the penal sum of the Bond, or (c) the Decommissioning Obligations are covered by replacement financial assurance approved in writing by each of BOEM Obligee and Additional Named Obligee which specifically secures the Decommissioning Obligations.

**2.5**   If the Regional Director terminates the period of liability of this Bond in accordance with 30 CFR 556.906, the Surety will remain responsible to the Co-Obligees for Decommissioning Obligations that accrued during the period of liability until the Regional Director issues a written cancellation of the Bond in favor of the Surety.  If Principal is required to provide a replacement bond pursuant to 30 CFR 556.906, then the Principal shall ensure that both the BOEM Obligee and the Additional Named Obligee are named obligees under such replacement bond.

**2.6**   If this Bond is cancelled, the Regional Director may reinstate this Bond as if no cancellation had occurred if any payment for performance of any Decommissioning Obligation of the Principal is rescinded or must be restored or repaid pursuant to any insolvency, bankruptcy, reorganization, or receivership, or should the representation of the Principal that it has performed the Decommissioning Obligations in accordance with BOEM specifications be materially false and BOEM relied upon such representation in canceling the Bond.

**2.7**   The Surety waives any right of notice of this Bond taking effect and agrees that this Bond will take effect as to each Co-Obligee upon delivery to such Co-Obligee.

**2.8**   Unless explicitly terminated, cancelled, or modified by both BOEM Obligee and Additional Named Obligee in writing, and as provided for in this Bond, the Surety's obligations will remain in full force and effect, even if:

a) The Principal or any other person assigns all or part of any interest in an Instrument or in the Applicable ROW covered by this Bond;

b) Any person modifies an Instrument in any manner, including modifications that result from (i) a commitment to a unit, cooperative, or communitization, or storage agreement; (ii) suspension of operations or production; (iii) suspension or changes in rental, minimum royalty, or the payment of royalties; (iv) modification of regulations or interpretations of regulations; (v) creation or modification of compensatory royalty agreements or payments; or (vi) creation of any mortgage, pledge, or other grant of security interest in an Instrument or the Applicable ROW;

c) Any person, event, or condition terminates any Instrument or the Applicable ROW interest covered by this Bond prior to the date on which this Bond terminates in accordance with its terms, whether the termination is by operation of law or otherwise; or

d) Either Co-Obligee takes or fails to take any enforcement action against, or fails to give notice to, or make demand of, any party to any Instrument, concerning the payment or non-payment of rentals or royalties or the performance or non-performance of any other covenant, term, or condition of the Applicable ROW, or any contract entered into with respect to the Assignment Transaction.

2.9    BOEM Obligee will contemporaneously send a copy to Additional Named Obligee of any notice of Default sent to Principal or Surety.

2.10   After a Default, and upon demand by either of the Co-Obligees, the Surety will provide to such Co-Obligee making demand, pursuant to the procedures set forth in this Paragraph 2, payments up to the penal sum of the Bond to satisfy the Decommissioning Obligations.

2.11   Upon Default by the Principal, BOEM Obligee has the right to call the Bond, or a portion of the Bond, by demand upon the Surety without any requirement that BOEM Obligee confer with, or obtain the agreement of, Additional Named Obligee, subject to the procedures, rights and obligations set forth in this Paragraph 2.

2.12   Prior to calling the Bond pursuant to Paragraph 2.11, BOEM Obligee will provide Additional Named Obligee with thirty (30) calendar days' advance written notice ("***BOEM Notice Period***") of BOEM Obligee's intention to call the Bond (or portion thereof) and stating the scope of the Decommissioning Obligations upon which Principal has defaulted. If, within the BOEM Notice Period, Additional Named Obligee commits in writing to BOEM Obligee to timely undertake the requisite activities to address the Decommissioning Obligations upon which Principal has defaulted, BOEM Obligee will direct the Surety to pay to Additional Named Obligee the proceeds of the Bond (or portion thereof). Additional Named Obligee will utilize the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied.

2.13   If BOEM Obligee calls the Bond, and within the BOEM Notice Period, Additional Named Obligee does not commit in writing to perform the Decommissioning Obligations, BOEM

Obligee has the right to receive performance of the Decommissioning Obligations by, or the payment of the Bond proceeds from, the Surety, with no further obligation to inform the Additional Named Obligee or any other party and BOEM Obligee will place the proceeds of the Bond into an appropriate account and dedicate the proceeds to the performance of activities to address the Decommissioning Obligations then requiring performance.

2.14    Upon Default, Additional Named Obligee may call the Bond by demand upon the Surety if (a) Additional Named Obligee provides BOEM Obligee with thirty (30) calendar days' advance written notice ("***Additional Named Obligee Notice Period***") of its intention to call the Bond (or portion thereof), and (b) agrees in writing to use the proceeds of the Bond exclusively to diligently and continuously prosecute the performance of the requisite operations and activities until such time as the Decommissioning Obligations then requiring performance are satisfied.  Additional Named Obligee hereby acknowledges that this Bond and the procedures relating to utilization of Bond proceeds do not reduce or otherwise modify its regulatory liabilities associated with the Decommissioning Obligations until such Decommissioning Obligations are satisfied.

2.15    If Additional Named Obligee receives Bond proceeds under any of the provisions of this Paragraph 2, the proceeds will be placed into an escrow or other appropriate account in a federally-insured bank or a federally-insured thrift institution mutually acceptable to the Co-Obligees.  In order to give Additional Named Obligee appropriate access to Bond proceeds pursuant to this Paragraph 2.15, the agreement establishing the escrow or other appropriate account into which bond proceeds are deposited will provide for Additional Named Obligee to have the sole authority to make a withdrawal or series of withdrawals upon submitting to BSEE applicable permits for the contemplated decommissioning operations made the subject of the Default.   Additional Named Obligee pledges to use funds from this escrow or other appropriate account only for satisfying the Decommissioning Obligations then requiring performance.

2.16    If Additional Named Obligee receives bond proceeds under Paragraph 2.12 or withdraws Bond proceeds under Paragraph 2.15, but fails to commence performance of the Decommissioning Obligations, as specified in the regulations at 30 C.F.R., Part 250, subpart Q, within ninety (90) calendar days of receiving/withdrawing the Bond proceeds, or as otherwise mutually agreed in writing, Additional Named Obligee shall immediately tender to BOEM Obligee the proceeds of the Bond to arrange for performance of the requisite activities to address the Decommissioning Obligations then requiring performance.  In order to give BOEM Obligee immediate access to the remaining Bond proceeds pursuant to this Paragraph 2.16, the Additional Named Obligee will provide, in the agreement establishing the escrow or other appropriate account into which Additional Named Obligee deposits the Bond proceeds, terms that authorize BOEM Obligee, after notifying Additional Named Obligee of Additional Named Obligee's failure to timely commence Decommissioning Obligations, to make withdrawals from the account consistent with this Paragraph 2.16.  Additional Named Obligee tendering bond proceeds to BOEM Obligee under this Paragraph 2.16 shall not prevent Additional Named Obligee from calling the Bond up to the remaining penal sum of the Bond upon the occurrence of any subsequent default.

2.17   Regardless of which Co-Obligee calls the Bond, and notwithstanding anything else to the contrary herein, any and all proceeds attributable to forfeiture, or call, of the Bond must be applied solely and exclusively to extinguish the Decommissioning Obligations, regardless of insolvency, bankruptcy, or default of the Principal, or an assignment by the Principal of all or part of its interests in the Applicable ROW, and all operations and activities necessary to be performed to extinguish such Decommissioning Obligations must be timely performed in accordance with the regulations of the Department of the Interior.  Nothing in this Paragraph 2.17 shall result in Surety's obligation to pay Bond proceeds in an amount greater than the penal sum amount of this Bond.

2.18   Notwithstanding anything else to the contrary herein, any payment of Bond proceeds made by Surety to either Co-Obligee or as directed by either Co-Obligee reduces the Bond penal sum amount regardless of any judicial action that results in BOEM reinstatement of this Bond.

2.19   Any assignment of all right, title, and interest in an Instrument or in the Applicable ROW, in whole or in part, by the Principal shall require at least fourteen (14) business days' prior written notice to the Surety.

3.   **Miscellaneous**

3.1   Nothing in this Bond expands the obligations and liabilities of Additional Named Obligee associated with the Applicable ROW pursuant to contract or law, and all such obligations and liabilities will be limited to the obligations and liabilities that accrued while Additional Named Obligee was a ROW Holder, as that term is used herein.

3.2   If either Co-Obligee decides to commence suit to enforce its rights, it may commence and prosecute any claim, suit, action, or other proceeding against the Principal and Surety, or either of them, whether or not the other Co-Obligee joins such proceeding.

3.3   In the event there is more than one surety, or there are other types of financial assurance securing the Principal's performance of the Decommissioning Obligations, the Surety's obligation and liability under this Bond is on a "solidary" or "joint and several" basis along with such other surety(ies) and along with any other providers of such financial assurance.

3.4   The Surety agrees that, within five (5) calendar days after learning that it has been de-listed from the Circular No. 570, and/or of any action filed alleging the insolvency or bankruptcy of the Surety, or alleging any violation that would result in suspension or revocation of the Surety's certificate of suretyship, charter, or license to do business, the Surety will give notice to the Principal and the Co-Obligees.

3.5   The Principal agrees that, within five (5) calendar days after learning that the Surety has become bankrupt or, insolvent, or the Surety has had its charter or license to do business suspended or revoked, or is no longer named in the current Circular 570, the Principal will, at its sole cost and expense, substitute a bond identical in all material respects to this Bond from another Qualified Surety (as defined above).

3.6     The Principal agrees that, within five (5) calendar days of learning of any action filed alleging the insolvency or bankruptcy of the Principal, or alleging any violation that would result in suspension or revocation of the Principal's charter, or license to do business, it will notify the Co-Obligees and the Surety.

3.7     The Surety's obligation and liabilities under this Bond are binding upon the Surety's successors and assigns, if any. Nothing in this Bond permits assignment of the Surety's obligation without the written consent of each of the Co-Obligees.

3.8     The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

3.9     No forbearance by either of the Co-Obligees will release the Principal and the Surety from any liability under this Bond to any Co-Obligee.

3.10    The penal sum of the Bond will be reduced by and to the extent of any payments made by Surety hereunder, or its successors and assigns, if any; however the Bond will remain in full force and effect for the remaining balance of the Bond until all the Decommissioning Obligations are satisfied, or until a replacement bond from a Qualified Surety or other form of financial assurance acceptable to each Co-Obligee, in its sole discretion, is provided.

3.11    No right or action will accrue on this Bond to or for the use of any Person other than the Principal, Surety, the Additional Named Obligee, and the BOEM Obligee, and their respective heirs, executors, debtor(s) in possession, administrators, assigns, or successors, pursuant to the terms of this Bond and applicable law.

3.12    A notice or communication under or in connection with this Bond shall be in writing and shall be deemed to have been duly given or made when (a) delivered by hand by a recognized courier delivery service, on the date shown on the receipt, or (b) in the case of delivery by United States certified mail with return receipt requested and postage prepaid, on the date of delivery.  The addresses for all notices are as follows:

> <u>Principal:</u>
>
> Fieldwood Energy Offshore LLC
> 2000 West Sam Houston Parkway South, Suite 1200
> Houston, TX  77042
> Attn:  Mr. Mark Mozell, Vice President Risk Management, Insurance
> Telephone:  713-969-1133
>
> <u>With a copy to:</u>
>
> Fieldwood Energy Offshore LLC
> 2000 West Sam Houston Parkway South, Suite 1200
> Houston, TX  77042
> Attn:  Mr. Tommy Lamme, General Counsel
> Telephone:  713-969-1107

Additional Named Obligee:

Marathon Oil Company
5555 San Felipe Street
Houston, TX  77056
Attn:  Jim Sandoval, Assistant Treasurer
Telephone:  713-296-4623

With a copy to:

Marathon Oil Company
5555 San Felipe Street
Houston, TX  77056
Attn:  Mr. G. Adam Dempsey, Senior Counsel-Acquisitions &
Dispositions
Telephone:  713-296-2608

BOEM Obligee:

Bureau of Ocean Energy Management
1201 Elmwood Park Boulevard
New Orleans, Louisiana 70161
Attention: Regional Director
Telephone: 504-736-0557

Surety:

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attn: Joellen Mendoza
Telephone: (630) 521-8461

A party to this Bond may change its address for notices by written notice to the other parties.

3.13   BOEM Obligee acknowledges that DAA and Principal are parties to the Assignment Transaction, whereby Principal acquired the infrastructure associated with the Applicable ROW, and BOEM Obligee agrees that it has no rights, duties or obligations pursuant to the Assignment Transaction, and it is not a third-party beneficiary under the agreements relevant to the Assignment Transaction.   Additional Named Obligee and Principal acknowledge that BOEM Obligee may enforce its regulations concerning the obligations of assignors and assignees.

3.14   This Bond will be subject to, and interpreted in accordance with, federal law and, in the absence of federal law, the law of the State of Texas. All disputes arising out of or in connection with this Bond shall be resolved exclusively in the federal courts in Texas and the parties hereto consent to the jurisdiction and venue of such courts. Without limiting the foregoing, all regulations governing surety bonds included within 30 CFR 556.900, *et seq.* are incorporated herein by reference for the benefit of both BOEM Obligee and Additional Named Obligee.

3.15   Any decommissioning obligations associated with the Applicable ROW for which Additional Named Obligee has no liability shall be covered by separate and distinct financial assurance provided to BOEM Obligee by Principal or another party.

3.16   This Bond may be executed in any number of counterparts each of which shall be an original, but such counterparts shall together constitute but one and the same instrument. Any .pdf (portable document format) or other electronic transmission hereof or signatures hereon shall, for all purposes, be deemed originals.

***[Signature Pages Follow]***

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on the Effective Date, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**PRINCIPAL:  Fieldwood Energy Offshore LLC**

WITNESS ES:

By: _____

Name:    John H. Smith

Title:    Vice President

**SURETY:   The Hanover Insurance Company**

WITNESSES:

Megan Sivley

Miranda Perez

By: _____

Name:    Teresa D. Kelly

Title:    Attorney-in-Fact

**ADDITIONAL NAMED OBLIGEE:    Marathon Oil Company**

WITNESSES:

By: _____

Name:    T. Mitch Little

Title:    Executive Vice President, Operations

**BOEM OBLIGEE: United States Department of the Interior**
**By:  Bureau of Ocean Energy Management**

WITNESSES:

By: _____

Name: _____

Title: _____

*[Signature Page to Multi-Obligee Supplemental Bond for Right-of-Way OCS-G28809, PSN 20222)]*

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

**KNOW ALL PERSONS BY THESE PRESENTS:**

That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Dan W. Burton, Teresa D. Kelly, Craig C. Payne, Laura L. Kneitz, Megan Sivley and/or Rheagyn L. White**

Of **Alliant Insurance Services, Inc. of Houston, TX** each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances, undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

**Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance**

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety, any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons.

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this **24th** day of **May, 2017**.

The Hanover Insurance Company
Massachusetts Bay Insurance Company
Citizens Insurance Company of America

John C. Roche, EVP and President



The Hanover Insurance Company
Massachusetts Bay Insurance Company
Citizens Insurance Company of America

James H. Kawiecki, Vice President

THE COMMONWEALTH OF MASSACHUSETTS )
COUNTY OF WORCESTER ) ss.

On this **24th** day of **May, 2017** before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

Diane J. Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 23rd day of October, 2019

**CERTIFIED COPY**

Theodore G. Martinez, Vice President

EXHIBIT "A"


PERFORMANCE BOND


KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC., with its principal office at 2000 West Sam Houston Parkway South, Suite 1200, Houston, Texas 77042, (hereinafter called the "Principal") and Liberty Mutual Insurance Company, with an office at 175 Berkeley Street, Boston, MA 02116, and The Hanover Insurance Company, with an office at 440 Lincoln Street, Worcester, MA 01653, Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT 06183 as co-sureties (hereinafter collectively called the "Surety"), are held and firmly bound unto Anadarko Petroleum Corporation, Anadarko US Offshore LLC (the two collectively referred to herein as "Anadarko"), Eni Petroleum US LLC ("Eni") and Noble Energy, Inc. ("Noble"), together with Anadarko (collectively hereinafter called the "Obligees"), Anadarko with its principal office at 1201 Lake Robbins Drive, The Woodlands, Texas 77380, Eni with its principal office at 1200 Smith Street, Suite 1700, Houston, Texas 77002, and Noble with its principal office at 1001 Noble Energy Way, Houston, Texas 77070 in the penal sum of One Hundred Million and No/100 Dollars ($100,000,000,00) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Liberty Mutual Insurance Company | $40,000,000.00 | 022059149 |
| The Hanover Insurance Company | $45,000,000.00 | 1038705 |
| Travelers Casualty and Surety Company of America | $15,000,000.00 | 106854941 |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligees have entered into that certain Purchase And Sale Agreement dated effective November 1, 2013, as amended by that certain First Amendment To Neptune Spar Purchase And Sale Agreement, dated effective October 1, 2014 (hereinafter collectively called the "Purchase Agreement"), which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligees to the Principal of the interests of Obligees in the Neptune Spar and associated wells and subsea pipelines and equipment defined therein as those certain "Assets" identified on Exhibit A-1 (the "Wells") and Exhibit A-2 (the "Equipment") of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the "Bond"), together with, among other rights and obligations, all plugging, abandonment and decommissioning obligations of the Principal associated therewith; and

WHEREAS, the Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof; and

WHEREAS, the Principal has promised to deliver to the Obligees at the time of the execution of the First Amendment To Neptune Spar Purchase And Sale Agreement  a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney-in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligees, in substantially the same form attached as Exhibit B to the Purchase Agreement.

Principal and the Surety agree that, notwithstanding the subsequent termination of the VK 826 Lease (OCS-G 06888), whether by operation of law or otherwise, this Bond shall remain in full force and effect until all plugging, abandonment and decommissioning obligations of the Principal associated with the Assets identified on Exhibit A to this Bond have been properly performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the plugging, abandonment and decommissioning obligations described above, or to the extent the Obligees may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

Whenever the Principal fails to carry out any or all of the plugging, abandonment and decommissioning obligations associated with the Assets identified on Exhibit A to this Bond and the Obligees have presented to the Surety a written notice that the Principal is in default of such plugging, abandonment and decommissioning obligations (in each case, the "Defaulted Plugging Abandonment and Decommissioning Obligations"), and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known address, the Surety shall, within thirty (30) days of its receipt of such written notice of default, formally elect by notice to Obligees to either: (I) Pay to the Obligees an amount equal to the actual charges incurred by Obligees in performing the plugging, abandonment and decommissioning

obligations within twenty (20) days of receipt of Obligee's invoice for such operations, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein) and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted Plugging, Abandonment and Decommissioning Obligations.

If the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted Plugging, Abandonment and Decommissioning Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted Plugging, Abandonment and Decommissioning Obligations have been properly performed and discharged, thereby reducing the Penal Sum by an amount equal to the costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted Plugging, Abandonment and Decommissioning Obligations.

In the event Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted Plugging, Abandonment and Decommissioning Obligations of Principal, then SURETY **SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEES, THEIR AFFILIATES, AND THEIR AND THEIR RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED PLUGGING, ABANDONMENT AND DECOMMISSIONING OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEES CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEES), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND BUT SHALL BE SUBJECT TO THE LIMITATION OF DAMAGES PROVIDED IN SECTION 12.4(B) OF THE PURCHASE AGREEMENT.**

Any suit under this Bond must be instituted before the expiration of three (3) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligees, whichever is later, and, subject to the three (3) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal and the Surety or any of them from their liability under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligees to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

**HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that has an** investment grade rating, as rated by Standard & Poor's or Moody's rating services, in the amount necessary to replace this Bond. If so posted, the Obligees will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligees, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the Plugging, Abandonment and Decommissioning Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof. Surety stipulates and agrees that, regardless of the payment or nonpayment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Anadarko Petroleum Corporation Anadarko US
Offshore LLC 1201 Lake Robbins Drive The
Woodlands, Texas 77380 Attention: Frank Meyer

Eni Petroleum US LLC Eni US Operating Co. Inc.
1200 Smith Street, Suite 1700 Houston, Texas
77002 Attention: Gary F. Clifford

Noble Energy, Inc.
1001 Noble Energy Way Houston, Texas 77070
Attention: Daniel S. Mills

Liberty Mutual Insurance Company
175 Berkeley Street
Boston, MA 02116
Attention: Todd Tschantz

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653
Attention: Dan Orna

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

**IN WITNESS WHEREOF,** the above bound parties have executed this instrument to be effective on March 30, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**                                    **PRINCIPAL:**

_____                         FIELDWOOD ENERGY, LLC.

_____
Print Name                                      By:_____
                                                Name:_____
                                                Title:_____
                                                Date:_____

**WITNESS:**                                    **OBLIGEE:**

_____                         NOBLE ENERGY, INC.

_____
Print Name                                      By:_____
                                                Name:_____
                                                Title:_____
                                                Date:_____

WITNESS:

_Gina Rodriguez_
Print Name

SURETY:

LIBERTY MUTUAL INSURANCE COMPANY

By: _____
Name: _____Laura E. Sudduth_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

WITNESS:

_Gloria Mouton_
Print Name

SURETY:

THE HANOVER INSURANCE COMPANY

By: _____
Name: ___Gina A. Rodriguez_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

WITNESS:

_Gina Rodriguez_
Print Name

SURETY:

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____
Name: _____Laura E. Sudduth_____
Title: _____Attorney-In-Fact_____
Date: _____April 5, 2018_____

Exhibit A

Attached to and made a part of Bond Nos. 022059149, 1038705 and 106854941 issued by Liberty Mutual Insurance Company, The Hanover Insurance Company and Travelers Casualty and Surety Company of America on behalf of Noble Energy, Inc,

A s s e t s

W e l l s

| Well Name | API No. |
|-----------|---------|
| VK 826 SS012 | 608164035800 |
| VK 826 A001 | 608164019401 |
| VK 826 A002 | 608164021900 |
| VK 826 A003 | 608164022000 |
| VK 826 A004 | 608164020500 |
| VK 826 A005 | 608164022100 |
| VK 826 A006 | 608164022200 |
| VK 826 A007 | 608164023600 |
| VK 826 A008 | 608164032400 |
| VK 826 A009 | 608164032501 |
| VK 826 A010 | 608164032601 |
| VK 826 A011 | 608164032700 |
| VK 826 A012 | 608164038101 |
| VK 826 A013 | 608164038200 |
| VK 826 A014 | 608164038001 |

Equipment

Neptune Spar (located on Viosca Knoll Block 826)
- Including but not limited to, the following spar components:
  - Topsides,
  - Hull,
  - On-platform mooring components,
  - Mooring lines, and
  - All transferrable equipment on Spar, including subsea cathodic protection system.

Well (VK 826 S5012) Subsea Equipment
- Including but not limited to, **the** following:
  - All subsea connections,
  - Subsea wellhead and Jumper, and
  - Risers, subsea manifolds, end terminations and equipment associated with Pipelines
  - set forth In Schedule 1,2(g) of the Purchase Agreement,

Subsea Template
All dry tree wells, well heads and installed downhole equipment associated with the Wells set forth in Exhibit A-1 of the Purchase Agreement.

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7749008

American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

# POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS That American States Insurance Company is a corporation duly organized under the laws of the State of Indiana, that First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America are corporations duly organized under the laws of the State of New Hampshire (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, __Gina A. Rodriquez; Laura E. Sudduth; Mario Arzamendi; Mary Ann Garcia; Melissa Haddick; Orlando Aguirre; Sandra Parker; Tannis Mattson; Terri L. Morrison__

_____
all of the city of __Houston_____, state of __TX_____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this 26th_____ day of __April_____ 2017_____



American States Insurance Company
First National Insurance Company of America
General Insurance Company of America
Safeco Insurance Company of America

By: _____
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA          ss
COUNTY OF MONTGOMERY

On this 26th_____ day of __April_____, 2017_____, before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_____
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

ARTICLE IV – OFFICERS – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and executed, such instruments shall be as binding as if signed by the President and attested by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

Certificate of Designation – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

Authorization – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, of American States Insurance Company, First National Insurance Company of America, General Insurance Company of America, and Safeco Insurance Company of America do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _5th_ day of _April_____, 20_18_

By: _Renee Llewellyn_____
Renee C. Llewellyn, Assistant Secretary

Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

7 of 200

POA · FNICA, GICA & SICA
LMS_12874_022017

**THE HANOVER INSURANCE COMPANY**
**MASSACHUSETTS BAY INSURANCE COMPANY**
**CITIZENS INSURANCE COMPANY OF AMERICA**

*POWER OF ATTORNEY*

**THIS Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.**

**KNOW ALL PERSONS BY THESE PRESENTS:**

That **THE HANOVER INSURANCE COMPANY** and **MASSACHUSETTS BAY INSURANCE COMPANY**, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, (hereinafter individually and collectively the "Company") does hereby constitute and appoint,

**Melissa Haddick, Terri L. Morrison, Tannis Mattson, Sandra Parker, Gina A. Rogriguez,**
**Mary Ann Garcia and/or Mario Arzamendi Sr**

Of **Marsh USA, Inc., of Houston, TX**  each individually, if there be more than one named, as its true and lawful attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, any and all surety bonds, recognizances, undertakings, or other surety obligations. The execution of such surety bonds, recognizances. undertakings or surety obligations, in pursuance of these presents, shall be as binding upon the Company as if they had been duly signed by the president and attested by the secretary of the Company, in their own proper persons. Provided however, that this power of attorney limits the acts of those named herein; and they have no authority to bind the Company except in the manner stated and to the extent of any limitation stated below:

**Any such obligations in the United States, not to exceed Twenty Five Million and No/100 ($25,000,000) in any single instance**

That this power is made and executed pursuant to the authority of the following Resolutions passed by the Board of Directors of said Company, and said Resolutions remain in full force and effect:

RESOLVED: That the President or any Vice President, in conjunction with any Vice President, be and they hereby are authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as it acts, to execute and acknowledge for and on its behalf as surety, any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons

RESOLVED: That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or Vice President in conjunction with any Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile. (Adopted October 7, 1981 – The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 – Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by two Vice Presidents, this 28th day of April 2016.

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Robert Thomas, Vice President

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

J Michael Pere, Vice President

THE COMMONWEALTH OF MASSACHUSETTS    )
COUNTY OF WORCESTER                   ) ss.

On this 28th day of April 2016 before me came the above named Vice Presidents of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known  to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

DIANE J. MARINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 4, 2022

Diane J Marino, Notary Public
My Commission Expires March 4, 2022

I, the undersigned Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 5th day of April, 2018

CERTIFIED COPY

Theodore G. Martinez, Vice President

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



# POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

**Attorney-In Fact No.**      230577

**Certificate No.** 006951196

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____Houston_____ , State of _____Texas_____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____23rd_____ day of _____August_____ , ____2016____ .

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____23rd_____ day of _____August_____ , ____2016____ before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER



## POWER OF ATTORNEY

| Farmington Casualty Company | St. Paul Mercury Insurance Company |
|---|---|
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

Attorney-In Fact No.        230577                                   Certificate No. **006951196**

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, and Mario Arzamendi

of the City of _____Houston_____ , State of _____Texas_____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____23rd_____ day of _____August_____ , 2016

| Farmington Casualty Company | St. Paul Mercury Insurance Company |
|---|---|
| Fidelity and Guaranty Insurance Company | Travelers Casualty and Surety Company |
| Fidelity and Guaranty Insurance Underwriters, Inc. | Travelers Casualty and Surety Company of America |
| St. Paul Fire and Marine Insurance Company | United States Fidelity and Guaranty Company |
| St. Paul Guardian Insurance Company | |

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____23rd_____ day of _____August_____ , 2016, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof**, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____Marie C. Tetreault_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# Electronic Proof of Claim_GJD@G28824[[CSA# 7711#CF]]

Final Audit Report                                                      2020-11-25

| | |
|---|---|
| Created: | 2020-11-25 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAsa3BX7Kqc_7SfRpK9CLdrIdDIIUHtkoF |

## "Electronic Proof of Claim_GJD@G28824[[CSA#7711#CF]]" History

⬝ Web Form created by Prime Clerk (epoc@primeclerk.com)
2020-11-25 - 2:09:45 AM GMT

⬝ Brandon K. Bains (lmurphy@l-llp.com) uploaded the following supporting documents:
   ⬝ Attachment
2020-11-25 - 2:20:58 AM GMT

⬝ Web Form filled in by Brandon K. Bains (lmurphy@l-llp.com)
2020-11-25 - 2:20:58 AM GMT- IP address: 47.187.54.206

⬝ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
2020-11-25 - 2:21:01 AM GMT- IP address: 47.187.54.206

⬝ Agreement completed.
2020-11-25 - 2:21:01 AM GMT

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| | |
|---|---|
| **Fill in this information to identify the case (Select only one Debtor per claim form):** | |
| ☐ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☒ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | |
|---|---|
| 1. **Who is the current creditor?** | Travelers Casualty and Surety Company of America<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☐ No<br>☐ Yes. From whom? _____ |
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** **Where should payments to the creditor be sent?** (if different)<br><br><br>Contact phone 8602774001     Contact phone _____<br>Contact email kksimon@travelers.com     Contact email kksimon@travelers.com |
| 4. **Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____     Filed on ___ / ___ / _____<br>                                                         MM / DD / YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

**Part 2:**   Give Information About the Claim as of the Date the Case Was Filed

---

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

---

**7.   How much is the claim?**

$ Unknown _____ .   **Does this amount include interest or other charges?**

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

---

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**                                  $_____

**Amount of the claim that is secured:**    $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**      $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**      $_____

---

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

---

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:* |

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies.   $ _____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

| | |
|---|---|
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☒ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**   $ _____ |

---

**Part 3:   Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:**   *Kate K. Simon*
Kate K. Simon (Nov 23, 2020 14:19 EST)

**Email:**   kksimon@travelers.com

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Kate K. Simon |
| | First name   Middle name   Last name |
| Title | Senior Claim Counsel |
| Company | Travelers |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | P.O. Box 2989 |
| | Number   Street |
| | Hartford   CT   06104-2989 |
| | City   State   ZIP Code |
| Contact phone | 860-277-4001   Email   kksimon@travelers.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
    **(attach below)**                    ☐ **I do _not_ have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                      12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

---

**Do not file these instructions with your form**

**ADDENDUM TO PROOF OF CLAIM OF
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA AGAINST
FIELDWOOD ENERGY INC. (the "DEBTOR")
(Case No. 20-33949)**

1.     Kate K. Simon is a Senior Claim Counsel of Travelers Casualty and Surety Company of America, a wholly-owned subsidiary of The Travelers Companies, Inc. (itself and its predecessors-in-interest, parents, subsidiaries and affiliates, "Travelers"), with a business address of One Tower Square, Hartford, Connecticut, and is authorized to file this Proof of Claim on behalf of Travelers.

2.     All notices and other pleadings relating to this Proof of Claim should be addressed as follows:

> Travelers Casualty and Surety Company of America
> P.O. Box 2989
> Hartford, CT 06104-2989
> Attn.:  Kate K. Simon
> Email: kksimon@travelers.com

3.     Except as expressly provided herein, Travelers holds a contingent, unliquidated claim against the Debtor as described below (the "Claim").

4.     From time to time, Travelers issued certain surety bonds (collectively, the "Bonds") to certain obligees with respect to certain obligations of the Debtor, or a subsidiary, affiliate or division thereof, to such obligees including, without limitation, those Bonds summarized on Exhibit A attached hereto and made a part hereof, as applicable to such Debtor, or such subsidiary, affiliate or division thereof, which indicate that the Debtor is a principal thereunder or an indemnitor pursuant to the Indemnity Agreement (as hereinafter defined).  Exhibit A may contain Bonds as to which liability has been extinguished by the obligees, by the terms of the Bond, or by operation of law.  A copy of any and/or all of the Bonds can be obtained upon request.  Travelers reserves the right to amend Exhibit A to identify and include other Bonds.  Nothing contained herein shall constitute an admission or acknowledgement of any liability on the part of Travelers with respect to any or all of the Bonds.

5.       Travelers may be required to make payments under one or more of the Bonds.[1]  As a result of such payments, Travelers will become subrogated to the rights of the obligees against the Debtor with respect to such payments and Travelers has the right to be reimbursed and indemnified under common law by the Debtor with respect to all such payments, whether such payments are made on behalf of the Debtor as principal or on behalf of another principal under any Bond.

6.       The Debtor has executed and delivered that certain General Contract of Indemnity dated April 2, 2018 (collectively with any prior indemnity agreements, the "Indemnity Agreement") pursuant to which the Debtor is required to pay all premiums and indemnify and exonerate Travelers, and hold Travelers harmless from and against any and all loss, cost and expense incurred by Travelers in connection with (1) the furnishing of any Bond or (2) the enforcement of the Indemnity Agreement.  A copy of the Indemnity Agreement is attached hereto as Exhibit B.  Travelers asserts herein a claim with respect to the Debtor's obligations to Travelers under the Indemnity Agreement.

7.       Alternatively, pursuant to Bankruptcy Code § 501(b), Travelers also submits claims for and on behalf of the obligees named in the Bonds and all other persons who may have claims against the Debtor based upon which Travelers may become obligated to make any payment and/or incur any expense under the Bonds.  These claims may be entitled to priority in part pursuant to Bankruptcy Code § 507(a)(8).

8.       The Claim is liquidated to the extent that Travelers has incurred legal fees and expenses to date.  Travelers reserves all applicable rights to file a claim for recovery of incurred fees and expenses not paid by the Debtor.  Additionally, the Debtor agreed to pay Travelers a renewal premium on each anniversary date of a Bond's issuance until the Bond should be released by the obligee through a written

---

[1] Nothing contained herein shall constitute an admission against interest or shall otherwise be prejudicial to Travelers rights to contest whether payment is due under any or all of the Bonds.  All such rights and remedies, whether legal or equitable, are expressly reserved.

release satisfactory to Travelers.  Travelers hereby asserts a claim for all renewal premiums which have accrued and not been paid or may accrue

9.     Travelers reserves all applicable rights to assert an administrative claim under 11 U.S.C. § 503 for obligations arising out of the Debtor's post-petition activities and/or Bonds in effect post-petition.

10.     Travelers claims and asserts any rights of setoff or recoupment to which it may be entitled including, without limitation, setoff against any obligations that Travelers may have under insurance policies issued by it for or on behalf of the Debtor.

11.     If applicable, Travelers asserts a claim and reserves all right as to all money paid by any state that forms the basis of a trust fund in the hands of the Debtor as contractor under applicable state law.

12.     The filing of this Proof of Claim shall not constitute, or be construed as, an admission by Travelers of any liability or an election by Travelers of any remedy.  Travelers reserves all rights, remedies, and defenses.

13.     This Proof of Claim is filed in addition to and not in lieu of any other claim filed by any division of Travelers or by any of its affiliates.

14.     Travelers further reserves the right to amend this Proof of Claim as it becomes further known, fixed and liquidated, and for any and all other lawful purposes.

15.     Travelers reserves the right to claim all amounts due in respect of any post-petition interest, all rights of and to indemnification, fees, costs and expenses, including, without limitation, attorneys' fees, costs and expenses, in amounts as yet undetermined, pursuant to the applicable documents and to the extent allowed by applicable law.

16.     This Proof of Claim is filed under the compulsion of the bar date that is or will be established in this chapter 11 case and is filed to protect the Claimant from forfeiture of claims by reason

3

of said bar date.  Filing of this Proof of Claim is not and shall not be deemed or construed as (a) a waiver or release of the Claimant's rights against any person, entity or property (including, without limitation, any person or entity that is or may become a debtor in a case pending in this Court); (b) a consent by the Claimant to the jurisdiction of this Bankruptcy Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the Claimant; (c) a waiver or release of the Claimant's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a consent by the Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of the Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving the Claimant; (g) an election of remedies; or (h) a waiver or release of any right of setoff or recoupment that the Claimant may hold against the Debtor. Furthermore, the Claimant reserves the right to attach or bring forth additional documents supporting its claims and additional documents that may become available after further investigation and discovery or in response to any objection to the Claim.  The filing of this Proof of Claim shall in no way be deemed a waiver of the Claimant's right to assert that any or all of the amounts owed to it, if any, are entitled to administrative priority status.

# Exhibit A:  Bonds

| Insured Name | Bond # | Limit | Obligee Name |
|---|---|---|---|
| FIELDWOOD ENERGY LLC | 106854940 | $45,000,000.00 | NOBLE ENERGY, INC. |
| FIELDWOOD ENERGY LLC | 106854941 | $15,000,000.00 | ANADARKO PETROLEUM CORPORATION, ANADARKO US OFFSHORE LLC, ENI PETROLEUM US LLC, AND NOBLE ENERGY, INC. |

# Exhibit B:  Indemnity Agreement

# TRAVELERS **General Contract of Indemnity**

We, the undersigned ("Indemnitors"), enter into this General Contract of Indemnity ("Agreement") in favor of Company.  As an inducement to Company and in consideration of Company's execution or procurement of, and/or refraining from canceling, Bonds, and for other good and valuable consideration, Indemnitors jointly and severally agree as follows:

**1.** For purposes of this Agreement, the following definitions apply, which definitions shall be equally applicable to both the singular and plural forms of such terms:

**Bond** - Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Company has executed or procured or otherwise has liability for, and which have been issued (whether before, on, or after the date of this Agreement) for or on behalf of any one or more of the following: (a) any Indemnitor; (b) any present or future affiliate or Subsidiary of any Indemnitor; (c) any present or future joint venture, consortium, or other form of common enterprise in which one or more of the persons or entities identified in sub-paragraph (a) or (b) above have an interest; (d) any other person or entity at the request of one or more of the persons or entities identified in sub-paragraph (a) or (b); or (e) any successor or assign of any entity described in (a) through (d) above.  For the purposes of this definition, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions; and "Subsidiary" shall mean any entity that any Indemnitor has direct or indirect control over or in which any Indemnitor has a direct or indirect ownership interest of 50% or more.

**Company** - Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies, and/or any of the aforementioned entities' successors or assigns.

**Loss** - All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond, including any extra-contractual claim where Company has denied a claim; (c) obtaining the release of any Bond; (d) recovering or attempting to recover property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; or (f) defending any claim arising out of or relating to any action taken by Company under this Agreement.

**2.** Indemnitors shall pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

**3.** Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of Company, or other evidence of Loss, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss.  Amounts due Company shall be payable upon demand.  Interest shall accrue on such amounts due Company from the date Company incurred Loss at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

**4.** Company shall have the right, in its sole discretion, to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

**5.** Indemnitors shall upon request of Company promptly procure the written release of Company from any and all Bonds.  If Indemnitors fail to procure such release, the Indemnitors shall immediately provide the Company an irrevocable letter of credit acceptable to Company in the aggregate amount of all unreleased Bonds.  Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest these requirements.  Indemnitors stipulate and agree that Company will suffer immediate irreparable harm and will not have an adequate remedy at law if Indemnitors fail to perform the obligations of this paragraph such that Company is entitled to specific performance of such obligations.

**6.** Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be used by Company to pay, or be held by Company as collateral security against, any Loss or unpaid premium on any Bond. If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received evidence of discharge in form and substance satisfactory to Company with respect to each and every Bond.  Company shall have no duty to invest or provide interest on collateral or letter of credit proceeds.  Company shall incur no liability on account of, and Indemnitors need not be notified of, Company's taking, failure to take, or release of collateral, letters of credit, or any other security.

**7.** Company has the right to decline to execute (a) any Bond, including final Bonds where Company provided a bid Bond; (b) any Bond rider or consent authorizing any change to any Bond; and/or (c) any other consent of surety.  Company also has the right to cancel or terminate any Bonds pursuant to their terms, to the extent allowed by law.

**8.** An Indemnitor may terminate participation in this Agreement only by sending Company written notice of the same, which notice shall be addressed to Travelers Bond & Specialty Insurance, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183.  The termination shall take effect thirty (30) days after Company receives such notice ("Termination Date"). The notice shall not relieve the terminating Indemnitor from its obligations for (i) any Bond executed prior to the Termination Date; or (ii) any Bond executed after the Termination Date which is a renewal or extension of a Bond issued prior to the Termination Date.

**9.** If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

**10.** Indemnitors have a substantial, material and beneficial interest: (a) in the obtaining of Bonds by any Indemnitor; and (b) in the transaction(s) for which any Indemnitor has applied or will apply to Company for Bonds.

WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. THIS AGREEMENT IS IN ADDITION TO AND NOT IN LIEU OF ANY OTHER AGREEMENTS AND OBLIGATIONS UNDERTAKEN IN FAVOR OF COMPANY, WHETHER NOW EXISTING OR ENTERED INTO HEREAFTER. IN TESTIMONY HEREOF, WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.

| If Indemnitor is an entity, sign below: |
| --- |

**Instructions:** Two authorized officials should sign on behalf of each entity (except as otherwise indicated below) and all signatures must be notarized and dated. The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement. If the entity is: 1) a corporation, the secretary (if one exists) and another authorized officer should sign on behalf of the corporation; 2) a limited liability company, the manager(s) (if any) or member(s) should sign on behalf of the LLC; 3) a partnership, the partner(s) should sign on behalf of the partnership; 4) a trust, the trustee(s) should sign on behalf of the trust; or 5) any other type of entity, including governmental entities, any two authorized officials. If the Indemnitor is a sole officer corporation, single member LLC, or any other entity where only one individual is authorized to sign on behalf of the entity, only one signature is required. Please provide the entity's federal tax identification number on the line provided. Notwithstanding any of the foregoing, failure to complete this Agreement in accordance with these instructions shall in no event affect the validity of this Agreement.

Each of the undersigned hereby affirms to Company as follows: I am a duly authorized official of the entity on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions, and/or partnership, operating or limited liability agreements of such entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that (a) such entity has the power and authority to enter into, execute, deliver and perform this Agreement and to carry out the obligations stated herein, (b) the individuals executing this Agreement on behalf of such entity are duly authorized to do so, and that (x) the execution, delivery and performance of this Agreement by Indemnitors; (y) the compliance with the terms and provisions hereof; and (z) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of aforementioned applicable documents and instruments, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against any Indemnitor(s), or any other agreement binding upon any Indemnitor(s), or constitute a default thereunder.

Fieldwood Energy LLC
_____
Indemnitor – Corporation, Limited Liability Company, Partnership, Trust, or Other (circle one)

By _____  4/2/2018 (Seal)
(Signature of Authorized Official)

Michael T. Dane, Senior Vice President and Chief Financial Officer
(Print or Type Name and Title)                           (Date)

2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042
(Address)

46-1326778
(Federal Tax ID)

By _____  4/2/2018 (Seal)
(Signature of Authorized Official)

John H. Smith, Senior Vice President – Land & Business Development
(Print or Type Name and Title)                           (Date)

Delaware
(State of Incorporation / Formation)

ACKNOWLEDGEMENT
State of Texas                    County of Harris

On this 2 day of April, 2018, before me personally appeared Michael T. Dane, known or proven to me to be the Senior Vice President and Chief Financial Officer of the entity executing the foregoing instrument ("Entity"), and John H. Smith, known or proven to me to be the Senior Vice President – Land & Business Development of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of Entity for the uses and purposes therein mentioned and they acknowledged that they executed said instrument by authority of Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public                    (Signature)

Tiffany Penry
Notary Public                    (Print or Type Name)

Notary Public residing at:  7358 Regency Square Court
                            Houston, Texas 77036

Commission expires:  12/18/2018

TIFFANY PENRY
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

S-5357 (12-16)

Fieldwood Energy Inc.

Indemnitor – Corporation, Limited Liability Company, Partnership, Trust, or Other (circle one)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

46-1694991
(Federal Tax ID)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

**Michael T. Dane, Senior Vice President and Chief Financial Officer**
(Print or Type Name and Title)          (Date)

**John H. Smith, Senior Vice President – Land & Business Development**
(Print or Type Name and Title)          (Date)

**2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042**
(Address)

**Delaware**
(State of Incorporation / Formation)

ACKNOWLEDGEMENT
State of <u>Texas</u>                County of <u>Harris</u>

On this <u>2</u> day of <u>April</u>, <u>2018</u>, before me personally appeared <u>Michael T. Dane</u>, known or proven to me to be the **Senior Vice President and Chief Financial Officer** of the entity executing the foregoing instrument ("Entity"), and <u>John H. Smith</u>, known or proven to me to be the **Senior Vice President – Land & Business Development** of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of Entity for the uses and purposes therein mentioned and they acknowledged that they executed said instrument by authority of Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

**TIFFANY PENRY**
**OFFICIAL NOTARY PUBLIC**
**COMMISSION EXPIRES**
**12-18-2018**

Notary Public          (Signature)

Tiffany Penry
Notary Public          (Print or Type Name)

Notary Public residing at:    7358 Regency Square Court
                              Houston, Texas 77036

Commission expires:  12/18/2018

---

### If Indemnitor is an individual, sign below:

Instructions: Signatures of individual Indemnitors must be notarized and dated with names printed or typed on the line provided. Individual Indemnitors must include their residential address and Social Security Number. Notwithstanding any of the foregoing, failure to complete this Agreement in accordance with these instructions shall in no event affect the validity of this Agreement.

Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

Indemnitor – Individual      (Signature)          (Date)          Address

Indemnitor – Individual      (Print or Type Name)          SS#

ACKNOWLEDGEMENT
State of _____          County of _____

On this ____ day of _____, _____, before me personally appeared _____ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public          (signature)

Notary Public          (print or type)

Notary Public residing at:

Commission expires:

---

S-5357 (12-16)

# Electronic Proof of Claim_*K*MJ28824[[CSA#7711#CF]]

Final Audit Report                                                         2020-11-23

| | |
|---|---|
| Created: | 2020-11-23 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAnAvZErlpwLIA5QJI_y5ygMr0RQm3ZfJz |

## "Electronic Proof of Claim_*K*MJ28824[[CSA#7711#CF]]" History

📤 Web Form created by Prime Clerk (epoc@primeclerk.com)
2020-11-23 - 7:15:44 PM GMT

📎 Kate K. Simon (kksimon@travelers.com) uploaded the following supporting documents:
📎 Attachment
2020-11-23 - 7:19:27 PM GMT

📤 Web Form filled in by Kate K. Simon (kksimon@travelers.com)
2020-11-23 - 7:19:27 PM GMT- IP address: 170.202.122.101

✍️ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
2020-11-23 - 7:19:29 PM GMT- IP address: 170.202.122.101

✅ Agreement completed.
2020-11-23 - 7:19:29 PM GMT

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| Fill in this information to identify the case (Select only one Debtor per claim form): | |
|---|---|
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| 1. Who is the current creditor? | Travelers Casualty and Surety Company of America |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? _____ |
|---|---|

| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | Contact phone **8602774001** | Contact phone _____ |
| | Contact email **kksimon@travelers.com** | Contact email _____ |

| 4. Does this claim amend one already filed? | ☒ No<br>☐ Yes.  Claim number on court claims registry (if known) _____   Filed on _____ / _____ / _____<br>MM / DD / YYYY |
|---|---|

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |
|---|---|

**Claim Number: 534**                                         **Proof of Claim**

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

| 6. **Do you have any number you use to identify the debtor?** | ☒ No |
|---|---|
| | ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____ |

| 7.  **How much is the claim?** | $ _Unknown_____ . | **Does this amount include interest or other charges?** |
|---|---|---|
| | | ☐ No |
| | | ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

9. **Is all or part of the claim secured?**

☒ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) _____%
☐ Fixed
☐ Variable

| 10. **Is this claim based on a lease?** | ☒ No |
|---|---|
| | ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |

| 11. **Is this claim subject to a right of setoff?** | ☒ No |
|---|---|
| | ☐ Yes. Identify the property: _____ |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

[X] No

[ ] Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| [ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| [ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| [ ] Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

[X] No

[ ] Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.**   $_____

---

**Part 3:   Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

[X] I am the creditor.

[ ] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Kate K. Simon*
Kate K. Simon (Nov 23, 2020 14:09 EST)

**Email:** kksimon@travelers.com

Signature
Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Kate K. Simon |
| | First name          Middle name                    Last name |
| Title | Senior Claim Counsel |
| Company | Travelers |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | P.O. Box 2989 |
| | Number          Street |
| | Hartford                                      CT          06104-2989 |
| | City                                        State       ZIP Code |
| Contact phone | 860-277-4001 |      Email | kksimon@travelers.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
    **(attach below)**

☐ **I do __not__ have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                 12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.** 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

> **Do not file these instructions with your form**

**ADDENDUM TO PROOF OF CLAIM OF**
**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA AGAINST**
**FIELDWOOD ENERGY LLC (the "DEBTOR")**
**(Case No. 20-33948)**

1.      Kate K. Simon is a Senior Claim Counsel of Travelers Casualty and Surety Company of America, a wholly-owned subsidiary of The Travelers Companies, Inc. (itself and its predecessors-in-interest, parents, subsidiaries and affiliates, "Travelers"), with a business address of One Tower Square, Hartford, Connecticut, and is authorized to file this Proof of Claim on behalf of Travelers.

2.      All notices and other pleadings relating to this Proof of Claim should be addressed as follows:

> Travelers Casualty and Surety Company of America
> P.O. Box 2989
> Hartford, CT 06104-2989
> Attn.:  Kate K. Simon
> Email: kksimon@travelers.com

3.      Except as expressly provided herein, Travelers holds a contingent, unliquidated claim against the Debtor as described below (the "Claim").

4.      From time to time, Travelers issued certain surety bonds (collectively, the "Bonds") to certain obligees with respect to certain obligations of the Debtor, or a subsidiary, affiliate or division thereof, to such obligees including, without limitation, those Bonds summarized on Exhibit A attached hereto and made a part hereof, as applicable to such Debtor, or such subsidiary, affiliate or division thereof, which indicate that the Debtor is a principal thereunder or an indemnitor pursuant to the Indemnity Agreement (as hereinafter defined).  Exhibit A may contain Bonds as to which liability has been extinguished by the obligees, by the terms of the Bond, or by operation of law.  A copy of any and/or all of the Bonds can be obtained upon request.  Travelers reserves the right to amend Exhibit A to identify and include other Bonds.  Nothing contained herein shall constitute an admission or acknowledgement of any liability on the part of Travelers with respect to any or all of the Bonds.

5.      Travelers may be required to make payments under one or more of the Bonds.[1]  As a result of such payments, Travelers will become subrogated to the rights of the obligees against the Debtor with respect to such payments and Travelers has the right to be reimbursed and indemnified under common law by the Debtor with respect to all such payments, whether such payments are made on behalf of the Debtor as principal or on behalf of another principal under any Bond.

6.      The Debtor has executed and delivered that certain General Contract of Indemnity dated April 2, 2018 (collectively with any prior indemnity agreements, the "Indemnity Agreement") pursuant to which the Debtor is required to pay all premiums and indemnify and exonerate Travelers, and hold Travelers harmless from and against any and all loss, cost and expense incurred by Travelers in connection with (1) the furnishing of any Bond or (2) the enforcement of the Indemnity Agreement.  A copy of the Indemnity Agreement is attached hereto as Exhibit B.  Travelers asserts herein a claim with respect to the Debtor's obligations to Travelers under the Indemnity Agreement.

7.      Alternatively, pursuant to Bankruptcy Code § 501(b), Travelers also submits claims for and on behalf of the obligees named in the Bonds and all other persons who may have claims against the Debtor based upon which Travelers may become obligated to make any payment and/or incur any expense under the Bonds.  These claims may be entitled to priority in part pursuant to Bankruptcy Code § 507(a)(8).

8.      The Claim is liquidated to the extent that Travelers has incurred legal fees and expenses to date.  Travelers reserves all applicable rights to file a claim for recovery of incurred fees and expenses not paid by the Debtor.  Additionally, the Debtor agreed to pay Travelers a renewal premium on each anniversary date of a Bond's issuance until the Bond should be released by the obligee through a written

---

1 Nothing contained herein shall constitute an admission against interest or shall otherwise be prejudicial to Travelers rights to contest whether payment is due under any or all of the Bonds.  All such rights and remedies, whether legal or equitable, are expressly reserved.

release satisfactory to Travelers.  Travelers hereby asserts a claim for all renewal premiums which have accrued and not been paid or may accrue

9.      Travelers reserves all applicable rights to assert an administrative claim under 11 U.S.C. § 503 for obligations arising out of the Debtor's post-petition activities and/or Bonds in effect post-petition.

10.     Travelers claims and asserts any rights of setoff or recoupment to which it may be entitled including, without limitation, setoff against any obligations that Travelers may have under insurance policies issued by it for or on behalf of the Debtor.

11.     If applicable, Travelers asserts a claim and reserves all right as to all money paid by any state that forms the basis of a trust fund in the hands of the Debtor as contractor under applicable state law.

12.     The filing of this Proof of Claim shall not constitute, or be construed as, an admission by Travelers of any liability or an election by Travelers of any remedy.  Travelers reserves all rights, remedies, and defenses.

13.     This Proof of Claim is filed in addition to and not in lieu of any other claim filed by any division of Travelers or by any of its affiliates.

14.     Travelers further reserves the right to amend this Proof of Claim as it becomes further known, fixed and liquidated, and for any and all other lawful purposes.

15.     Travelers reserves the right to claim all amounts due in respect of any post-petition interest, all rights of and to indemnification, fees, costs and expenses, including, without limitation, attorneys' fees, costs and expenses, in amounts as yet undetermined, pursuant to the applicable documents and to the extent allowed by applicable law.

16.     This Proof of Claim is filed under the compulsion of the bar date that is or will be established in this chapter 11 case and is filed to protect the Claimant from forfeiture of claims by reason

of said bar date.  Filing of this Proof of Claim is not and shall not be deemed or construed as (a) a waiver or release of the Claimant's rights against any person, entity or property (including, without limitation, any person or entity that is or may become a debtor in a case pending in this Court); (b) a consent by the Claimant to the jurisdiction of this Bankruptcy Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the Claimant; (c) a waiver or release of the Claimant's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a consent by the Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of the Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after de novo review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving the Claimant; (g) an election of remedies; or (h) a waiver or release of any right of setoff or recoupment that the Claimant may hold against the Debtor. Furthermore, the Claimant reserves the right to attach or bring forth additional documents supporting its claims and additional documents that may become available after further investigation and discovery or in response to any objection to the Claim.  The filing of this Proof of Claim shall in no way be deemed a waiver of the Claimant's right to assert that any or all of the amounts owed to it, if any, are entitled to administrative priority status.

# <u>Exhibit A:  Bonds</u>

| Insured Name | Bond # | Limit | Obligee Name |
|---|---|---|---|
| FIELDWOOD ENERGY LLC | 106854940 | $45,000,000.00 | NOBLE ENERGY, INC. |
| FIELDWOOD ENERGY LLC | 106854941 | $15,000,000.00 | ANADARKO PETROLEUM CORPORATION, ANADARKO US OFFSHORE LLC, ENI PETROLEUM US LLC, AND NOBLE ENERGY, INC. |

## Exhibit B:  Indemnity Agreement

# TRAVELERS⌃ General Contract of Indemnity

We, the undersigned ("Indemnitors"), enter into this General Contract of Indemnity ("Agreement") in favor of Company.  As an inducement to Company and in consideration of Company's execution or procurement of, and/or refraining from canceling, Bonds, and for other good and valuable consideration, Indemnitors jointly and severally agree as follows:

**1.**    For purposes of this Agreement, the following definitions apply, which definitions shall be equally applicable to both the singular and plural forms of such terms:

**Bond** - Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which Company has executed or procured or otherwise has liability for, and which have been issued (whether before, on, or after the date of this Agreement) for or on behalf of any one or more of the following: (a) any Indemnitor; (b) any present or future affiliate or Subsidiary of any Indemnitor; (c) any present or future joint venture, consortium, or other form of common enterprise in which one or more of the persons or entities identified in sub-paragraph (a) or (b) above have an interest; (d) any other person or entity at the request of one or more of the persons or entities identified in sub-paragraph (a) or (b); or (e) any successor or assign of any entity described in (a) through (d) above.  For the purposes of this definition, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions; and "Subsidiary" shall mean any entity that any Indemnitor has direct or indirect control over or in which any Indemnitor has a direct or indirect ownership interest of 50% or more.

**Company** - Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies, and/or any of the aforementioned entities' successors or assigns.

**Loss** - All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond, including any extra-contractual claim where Company has denied a claim; (c) obtaining the release of any Bond; (d) recovering or attempting to recover property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; or (f) defending any claim arising out of or relating to any action taken by Company under this Agreement.

**2.**    Indemnitors shall pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

**3.**    Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss. An itemized, sworn statement by an employee of Company, or other evidence of Loss, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss.  Amounts due to Company shall be payable upon demand.  Interest shall accrue on such amounts due Company from the date Company incurred Loss at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

**4.**    Company shall have the right, in its sole discretion, to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

**5.**    Indemnitors shall upon request of Company promptly procure the written release of Company from any and all Bonds. If Indemnitors fail to procure such release, the Indemnitors shall immediately provide the Company an irrevocable letter of credit acceptable to Company in the aggregate amount of all unreleased Bonds.  Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest these requirements.  Indemnitors stipulate and agree that Company will suffer immediate irreparable harm and will not have an adequate remedy at law if Indemnitors fail to perform the obligations of this paragraph such that Company is entitled to specific performance of such obligations.

**6.**    Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be used by Company to pay, or be held by Company as collateral security against, any Loss or unpaid premium on any Bond. If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received evidence of discharge in form and substance satisfactory to Company with respect to each and every Bond.  Company shall have no duty to invest or provide interest on collateral or letter of credit proceeds.  Company shall incur no liability on account of, and Indemnitors need not be notified of, Company's taking, failure to take, or release of collateral, letters of credit, or any other security.

**7.**    Company has the right to decline to execute (a) any Bond, including final Bonds where Company provided a bid Bond; (b) any Bond rider or consent authorizing any change to any Bond; and/or (c) any other consent of surety.  Company also has the right to cancel or terminate any Bonds pursuant to their terms, to the extent allowed by law.

**8.**    An Indemnitor may terminate participation in this Agreement only by sending Company written notice of the same, which notice shall be addressed to Travelers Bond & Specialty Insurance, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183.  The termination shall take effect thirty (30) days after Company receives such notice ("Termination Date"). The notice shall not relieve the terminating Indemnitor from its obligations for (i) any Bond executed prior to the Termination Date; or (ii) any Bond executed after the Termination Date which is a renewal or extension of a Bond issued prior to the Termination Date.

**9.**    If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

**10.**    Indemnitors have a substantial, material and beneficial interest: (a) in the obtaining of Bonds by any Indemnitor; and (b) in the transaction(s) for which any Indemnitor has applied or will apply to Company for Bonds.

WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.  THIS AGREEMENT IS IN ADDITION TO AND NOT IN LIEU OF ANY OTHER AGREEMENTS AND OBLIGATIONS UNDERTAKEN IN FAVOR OF COMPANY, WHETHER NOW EXISTING OR ENTERED INTO HEREAFTER.  IN TESTIMONY HEREOF, WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.

---

**If Indemnitor is an entity, sign below:**

---

Instructions:  Two authorized officials should sign on behalf of each entity (except as otherwise indicated below) and all signatures must be notarized and dated.  The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.  If the entity is:  1) a corporation, the secretary (if one exists) and another authorized officer should sign on behalf of the corporation; 2) a limited liability company, the manager(s) (if any) or member(s) should sign on behalf of the LLC; 3) a partnership, the partner(s) should sign on behalf of the partnership; 4) a trust, the trustee(s) should sign on behalf of the trust; or 5) any other type of entity, including governmental entities, any two authorized officials.  If the Indemnitor is a sole officer corporation, single member LLC, or any other entity where only one individual is authorized to sign on behalf of the entity, only one signature is required.  Please provide the entity's federal tax identification number on the line provided.  Notwithstanding any of the foregoing, failure to complete this Agreement in accordance with these instructions shall in no event affect the validity of this Agreement.

Each of the undersigned hereby affirms to Company as follows:  I am a duly authorized official of the entity on whose behalf I am executing this Agreement.  In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions, and/or partnership, operating or limited liability agreements of such entity.  Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that (a) such entity has the power and authority to enter into, execute, deliver and perform this Agreement and to carry out the obligations stated herein, (b) the individuals executing this Agreement on behalf of such entity are duly authorized to do so, and that (x) the execution, delivery and performance of this Agreement by Indemnitors; (y) the compliance with the terms and provisions hereof; and (z) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of aforementioned applicable documents and instruments, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against any Indemnitor(s), or any other agreement binding upon any Indemnitor(s), or constitute a default thereunder.

---

Fieldwood Energy LLC
Indemnitor – Corporation, Limited Liability Company, Partnership, Trust, or Other (circle one)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

Michael T. Dane, Senior Vice President and Chief Financial Officer
(Print or Type Name and Title)                    (Date)

2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042
(Address)

46-1326778
(Federal Tax ID)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

John H. Smith, Senior Vice President – Land & Business Development
(Print or Type Name and Title)                    (Date)

Delaware
(State of Incorporation / Formation)

ACKNOWLEDGEMENT
State of Texas                    County of Harris

On this 2 day of April, 2018, before me personally appeared Michael T. Dane, known or proven to me to be the Senior Vice President and Chief Financial Officer of the entity executing the foregoing instrument ("Entity"), and John H. Smith, known or proven to me to be the Senior Vice President – Land & Business Development of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of Entity for the uses and purposes therein mentioned and they acknowledged that they executed said instrument by authority of Entity.  IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public           (Signature)

Tiffany Penry
Notary Public                    (Print or Type Name)

**TIFFANY PENRY**
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

Notary Public residing at:    7358 Regency Square Court
                              Houston, Texas 77036

Commission expires:  12/18/2018

S-5357  (12-16)

Fieldwood Energy Inc.

Indemnitor – Corporation, Limited Liability Company, Partnership, Trust, or Other (circle one)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

**Michael T. Dane, Senior Vice President and Chief Financial Officer**
(Print or Type Name and Title)                    (Date)

**2000 West Sam Houston Parkway South, Suite 1200 Houston, Texas 77042**
(Address)

46-1694991
(Federal Tax ID)

By _____ 4/2/2018 (Seal)
(Signature of Authorized Official)

**John H. Smith, Senior Vice President – Land & Business Development**
(Print or Type Name and Title)                    (Date)

**Delaware**
(State of Incorporation / Formation)

ACKNOWLEDGEMENT
State of Texas                    County of Harris

On this 2 day of April, 2018, before me personally appeared Michael T. Dane, known or proven to me to be the **Senior Vice President and Chief Financial Officer** of the entity executing the foregoing instrument ("Entity"), and John H. Smith, known or proven to me to be the **Senior Vice President – Land & Business Development** of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of Entity for the uses and purposes therein mentioned and they acknowledged that they executed said instrument by authority of Entity.  IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public                    (Signature)

Tiffany Penry
Notary Public                    (Print or Type Name)

Notary Public residing at:        7358 Regency Square Court
                                  Houston, Texas 77036

Commission expires:  12/18/2018

**TIFFANY PENRY**
**OFFICIAL NOTARY PUBLIC**
**COMMISSION EXPIRES**
**12-18-2018**

---

| **If Indemnitor is an individual, sign below:** |

Instructions: Signatures of individual Indemnitors must be notarized and dated with names printed or typed on the line provided.  Individual Indemnitors must include their residential address and Social Security Number.  Notwithstanding any of the foregoing, failure to complete this Agreement in accordance with these instructions shall in no event affect the validity of this Agreement.

Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions.  To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

Indemnitor – Individual        (Signature)        (Date)        Address

Indemnitor – Individual        (Print or Type Name)              SS#

ACKNOWLEDGEMENT
State of _____        County of _____

On this ____ day of _____, _____, before me personally appeared _____ of the address shown above, known or proven to me to be the person described in and who executed the foregoing instrument, and he/she acknowledged to me that he/she executed the same. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public        (signature)

Notary Public        (print or type)

Notary Public residing at:

Commission expires:

# Electronic Proof of Claim_!GIRE28824[[CSA#77 11#CF]]

Final Audit Report                                                                 2020-11-23

| | |
|---|---|
| Created: | 2020-11-23 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAFQhumpJEYcKUeAwLDJDmbVWpRwH2Ej4g |

## "Electronic Proof of Claim_!GIRE28824[[CSA#7711#CF]]" History

📄 Web Form created by Prime Clerk (epoc@primeclerk.com)
   2020-11-23 - 6:58:46 PM GMT

🔗 Kate K. Simon (kksimon@travelers.com) uploaded the following supporting documents:
   🔗 Attachment
   2020-11-23 - 7:09:12 PM GMT

📄 Web Form filled in by Kate K. Simon (kksimon@travelers.com)
   2020-11-23 - 7:09:12 PM GMT- IP address: 170.202.122.101

🔏 (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64)
   AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
   2020-11-23 - 7:09:15 PM GMT- IP address: 170.202.122.101

✅ Agreement completed.
   2020-11-23 - 7:09:15 PM GMT

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| | |
|---|---|
| **Fill in this information to identify the case (Select only one Debtor per claim form):** | |
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

| | |
|---|---|
| 1. **Who is the current creditor?** | **XL Specialty Insurance Company** |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |
| 2. **Has this claim been acquired from someone else?** | ☒ No ☐ Yes. From whom? _____ |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | Contact phone  214-722-7171 | Contact phone _____ |
| | Contact email  bbains@l-llp.com | Contact email _____ |

| 4. **Does this claim amend one already filed?** | ☒ No ☐ Yes. Claim number on court claims registry (if known)_____ | Filed on ___ / ___ / _____ <br> MM / DD / YYYY |
|---|---|---|

| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No ☐ Yes. Who made the earlier filing? _____ |
|---|---|

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | [X] No<br>[ ] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ 45,000,000 . **Does this amount include interest or other charges?**<br>[X] No<br>[ ] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>_____ |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | [X] No<br>[ ] Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>[ ] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>[ ] Motor vehicle<br>[ ] Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br><br>**Amount of the claim that is secured:** $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $_____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>[ ] Fixed<br>[ ] Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | [X] No<br>[ ] Yes. **Amount necessary to cure any default as of the date of the petition.** $_____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | [X] No<br>[ ] Yes. Identify the property: _____ |

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check one:* | |
|---|---|---|
| | | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(____) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | ☐ No<br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $_____ |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Brandon K. Bains*
Brandon K. Bains (Nov 20, 2020 20:16 CST)

**Email:** lmurphy@l-llp.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Brandon K. Bains | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Langley LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 94075 | | |
| | Number        Street | | |
| | Southlake | TX | 76092 |
| | City | State | ZIP Code |
| Contact phone | 2147227171 | Email | bbains@l-llp.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **I have supporting documentation.**
(attach below)        ☐ **I do _not_ have supporting documentation.**

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

---

**Do not file these instructions with your form**

## ADDENDUM TO MASTER PROOF OF CLAIM BY
## XL SPECIALTY INSURANCE COMPANY

This Addendum is submitted with and incorporated in the Proof of Claim filed in Case No. 20-33948, *In re: Fieldwood Energy, LLC et al.*, by XL Specialty Insurance Company ("XL Specialty").

### CREDITOR

XL Specialty is a Delaware corporation and is authorized to conduct business in the State of Texas. XL Specialty is a creditor, having issued, as surety, numerous miscellaneous commercial bonds on behalf of Fieldwood Energy, LLC and Fieldwood Energy, Inc. (collectively, the "Debtors") or their affiliates as principal.

The Debtors executed the following indemnity agreements with XL Specialty and its affiliates (the "GIA"):

| Date | Agreement | Indemnitors | Surety |
|------|-----------|-------------|--------|
|  |  |  |  |
| 4-16-2018 | General Agreement of Indemnity | Fieldwood Energy, LLC, Fieldwood Energy, Inc. | The XL Specialty Insurance Company and XL Reinsurance Insurance |
|  |  |  |  |

Under the GIA, the Debtors agreed to indemnify the Surety from and against all loss, cost and expense, including attorneys' fees, incurred by the Surety by reason of the extension of surety credit to any of the Debtors. The Debtors also promised to pay all premium due on the Bonds. XL Specialty requires annual premium payments in order to process renewal of the Bonds.

A true and correct copy of the GIAs are attached hereto as Exhibit "A-1."

### BASIS OF THE CLAIM

XL Specialty faces continued exposure on the bonds itemized in the attached Exhibit "A-2" (the "Bonds"). The Bonds were issued prior to the petition date in this case and remain subject to potential claims against XL Specialty by the obligees thereof.

XL Specialty's claims are based on:

a.   its rights under the GIA;

b.   its rights as a surety to common law indemnity and exoneration; and

c.   its rights under contract and otherwise as subrogee to and/or assignee of the rights of those persons entitled to make claim on the Bonds.

With respect to the claims under contract and otherwise as subrogee to those persons entitled to assert rights under the Bonds, XL Specialty hereby asserts such claims if and to the extent such persons have not filed and do not file their own proofs of claim timely.

## AMOUNT OF CLAIM

The claim asserted herein is unliquidated in part at this time.

The Debtors are, at the date of this filing, indebted and liable to XL Specialty in at least the amount of $45,000,000 based on the total amount of XL Specialty's exposure under the Bonds, based on their penal sum. The Debtors are also liable to XL Specialty for attorneys' fees and expenses incurred by XL Specialty as a result of issuing the Bonds and other bonds on behalf of the Debtors. XL Specialty also faces exposure in an unknown amount for any post-petition premium payments that are not made by the Debtors. The Debtors are jointly and severally liable to XL Specialty to-date in the total amount of at least $45,000,000.

## CLASSIFICATION OF AND SECURITY FOR CLAIM

1.      XL Specialty is filing a separate unsecured proof of claim in the amount of $45,000,000. The Debtors are jointly and severally liable to XL Specialty for the claim amount.

2.      XL Specialty has a contingent, unliquidated priority claim pursuant to 11 U.S.C. § 507(a)(2) for any post-petition premium payments that are not made by the Debtors. The premium payments are actual, necessary costs of preserving the Debtors' estates incurred in conjunction with renewal of the Bonds constituting administrative expenses under 11 U.S.C. § 503(b)(1)(A). As the Debtors are continuing to operate, the Bonds continuing in force is necessary to preserve the Debtors' estates. XL Specialty is unable to determine the amount of its priority claim at this time because there are currently no outstanding premium payments owed by the Debtors and the Bonds renew on a rolling basis.

3.      XL Specialty reserves the right to assert other priority claims, to the extent they are unsecured, under 11 U.S.C. § 507(a)(4) and § 507(a)(5), if and to the extent it pays claims on the Bonds that qualify for priority treatment pursuant to these sections of the Bankruptcy Code.

4.      Notwithstanding the foregoing, XL Specialty reserves the right to assert that certain portions of its claim are entitled to administrative priority if and to the extent that any of the Bonds covers losses that occur or have occurred post-petition.

## RESERVATION OF RIGHTS AND CLAIMS

XL Specialty reserves all rights accruing to it as surety or otherwise, and the filing of this Proof of Claim is not intended to be and shall not be construed as: (a) an election of rights or remedies, or (b) a waiver of any past, present or future event of default on the part of the Debtors or any other person, or (c) a waiver or limitation of any rights of XL Specialty.

Without prejudice to its position that no liability exists with respect to all bonds terminated, canceled, released or replaced prior to the date of this Proof of Claim, XL Specialty asserts a contingent claim with respect to those bonds in the event any claim should be made upon them.

**ADDENDUM TO XL SPECIALTY INSURANCE COMPANY'S PROOF OF CLAIM**                                    **2**

XL Specialty reserves all rights and remedies which it may have, in addition to filing of and pursuit of this Proof of Claim, against any other person or entity, including (without limitation): (i) rights against indemnitors, other guarantors, successors in interest or agents; (ii) rights against other persons against which the Debtors, or any other subrogor of XL Specialty, has rights, and to which rights XL Specialty succeeds by virtue of becoming subrogated to such rights; (iii) the right to assert some or all of XL Specialty's claim as an administrative claim, whether or not such claim is stated herein; and (iv) the right to assert any of the matters asserted herein by way of defense, counterclaim, offset or recoupment against any claim asserted against XL Specialty by the Debtors or any representative or affiliate thereof or successor thereto.

XL Specialty reserves the right to assert as administrative claims those claims arising from breaches of any contract that the Debtors have assumed or will assume.

XL Specialty reserves the right to assert as administrative claims those claims arising through subrogation or assignment.

XL Specialty reserves any and all defenses to claims that have been or may hereafter be asserted against it under any of the Bonds. Nothing herein shall be deemed an admission of liability under the continued effectiveness of, or the validity of, the Bonds.

XL Specialty reserves all rights available to it by applicable law or rule to amend this Proof of Claim based on additional facts and circumstances giving rise to additional claims and upon circumstances giving rise to additional claims and upon claims that are presently contingent becoming fixed and upon determination of liquidated amounts for the portions of the claim made hereunder which is not presently liquidated.

## LIST OF EXHIBITS

Exhibit "A-1" – Indemnity Agreements

Exhibit "A-2" – List of Open Bonds

# EXHIBIT A-1



**INDEMNITY AGREEMENT REVIEW & SAFEKEEPING**

(To be completed when the Company receives a new General Agreement of Indemnity)

| | |
|---|---|
| PRINCIPAL / ACCOUNT: | **Fieldwood Energy, LLC** |
| CITY, STATE:<br>**Exton, PA** | GIA #: Click here to enter text. |
| PURPOSE (New account, new indemnitor, etc.) | **New Account** |
| CPO Received: **4/5/2018** | DATE: **4/16/2018** |

INSTRUCTIONS FOR COMPLETION:

- The original Agreement of Indemnity and this Review form should be sent to the responsible CPO Staff who will insure a copy is placed in Documentum.
- The original Agreement of Indemnity and completed Review form will then be logged and stored per Company policy and a copy of the completed Review form.

COMMENTS: _____

_____

_____

_____



### General Agreement of Indemnity

This Agreement made this 2nd day of April, 2018 by:

**Fieldwood Energy, LLC. (Address) 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042    (Tax ID) 46-1326778**

hereinafter called INDEMNITOR, in favor of XL Specialty Insurance Company, XL Reinsurance America Inc., and their affiliated, associated and subsidiary companies, their successors and assigns, hereinafter called SURETY, for the purpose of indemnifying the SURETY in connection with any bonds previously or hereafter executed or procured for on or behalf of any of the INDEMNITOR.

**Whereas,** SURETY may from time to time be requested to execute various Bonds or procure the execution of various Bonds for one or more of the INDEMNITOR or for subsidiaries, partnerships, associations or affiliates, previously owned or now owned or controlled or hereafter acquired or formed by one or more of the INDEMNITORS.

Now, therefore, in consideration of SURETY heretofore or hereafter executing, providing or procuring Bonds and as an inducement to such execution by SURETY, the INDEMNITOR and the heirs, personal representatives, successors and assigns thereof, jointly and severally, agree:

1. That this Agreement binds all INDEMNITOR(S) and the heirs, personal representatives, successors and assigns thereof, jointly and severally, to SURETY in connection with all Bonds previously or hereafter provided or procured by SURETY on behalf of any INDEMNITOR or any subsidiary, division, associated or affiliated company of any INDEMNITOR now owned or controlled or hereafter acquired or formed by any one or more of INDEMNITOR in any penal sum in favor of any obligee.
2. To pay to the SURETY such premium as the SURETY shall charge upon execution of the Bond(s) and annually in advance thereafter until such time as the SURETY's liability under the Bond(s) is terminated.
3. That the SURETY may, in its sole discretion, decline to execute, provide or procure any Bond(s) applied for and may, in its sole discretion, cancel or terminate any Bond(s) executed by the SURETY without incurring any liability whatsoever to the INDEMNITOR.
4. To exonerate, indemnify, hold harmless and keep indemnified the SURETY from and against all demands, claims, losses, costs, liabilities, damages, and expenses including, without limitation, attorney's fees, expert's fees, interest, court costs, investigative expenses, document reproduction and storage charges which the SURETY may sustain or incur by reason of the issuance of the Bond(s) or INDEMNITOR's failure to perform or comply with any of the provisions of this Agreement or SURETY attempting to obtain a release of or evidence of termination under such Bond(s).
5. That if the SURETY (a) receives any claim under any Bond or (b) establishes, in its sole discretion, any reserve, the INDEMNITOR(S) will provide the SURETY or its designees free access to all records of the INDEMNITOR(S) (including, but not limited to, books, papers, records, documents, accounts, and electronically stored information), for the purpose of examining and copying, until the SURETY has been provided satisfactory evidence, in its sole but reasonable discretion, that it has been fully released of liability under all Bonds. The INDEMNITOR(S) expressly authorize the SURETY to access their credit reports and financial records, including, but not limited to, account numbers, account balances, and account activity from financial institutions and other third parties. The INDEMNITOR(S) hereby authorize such financial institutions and other third parties to disclose all such information to the SURETY as the SURETY may request.
6. In order to exonerate and indemnify the SURETY to place the SURETY in immediately available funds when requested to do so in order to meet and satisfy any claim, reserve established by SURETY or demand made upon the SURETY under the Bond(s) (whether or not such claims or demands are contested by INDEMNITOR) before the SURETY shall be required to make payment under the Bond(s) INDEMNITOR acknowledge that failure of INDEMNITOR to deposit funds with SURETY in accordance with this section in the amounts and at the time demanded by SURETY shall cause irreparable harm for which SURETY has no adequate remedy at law. INDEMNITOR agree that SURETY shall be entitled to injunctive relief for specific performance of INDEMNITOR'S obligation to deposit funds with SURETY in accordance with this section.
7. To furnish the SURETY with satisfactory and conclusive evidence that there is no further liability on the Bond(s).
8. That the SURETY shall have the exclusive right in its sole discretion to adjust, defend, prosecute, settle, compromise or appeal any claim or litigation under such Bond(s) and that the voucher or other evidence showing payment by the SURETY

in good faith by reason of such Bond(s) or any renewal, extension or substitution thereof shall be conclusive and in any event prima facie evidence of such payment and the propriety thereof and the liability of the INDEMNITOR therefore to the SURETY.

9. That if the SURETY, in its sole discretion, determines one or more of the following: (a) the INDEMNITOR(S) financial capacity has been, or may be, impaired; or (b) there has been or may be some other change or event that adversely affects the SURETY's risk under the Bonds, then the INDEMNITOR(S) shall, within thirty (30) days of receipt of the SURETY's written demand, procure the full and complete release of the Bond (s) by providing competent written evidence of release satisfactory to the SURETY, in its sole discretion. If the INDEMNITOR(S) fail to provide the aforementioned release, the INDEMNITOR(S) shall, within an additional seven (7) days, provide the SURETY with collateral acceptable to the SURETY in the amount of 100% of all unreleased exposure under the Bond (s). SURETY, in its sole discretion, will determine the amount of the unreleased exposure under the Bond(s). All collateral held by the SURETY may be used in the SURETY's sole discretion to reimburse itself or to pay any and all Losses sustained or incurred by reason of or in connection with the furnishing of any or all Bonds or the enforcement of this Agreement. The INDEMNITOR(S) waive, to the fullest extent permitted by law, each and every right that they may have to contest any requirement to provide collateral under this Agreement, including but not limited to this paragraph and paragraph six hereof, (individually and collectively, the "Collateral Requirement"). The INDEMNITOR(S) stipulate and agree that the SURETY will not have an adequate remedy at law should the INDEMNITOR(S) fail to perform the Collateral Requirement and further agree as a result that the SURETY is entitled to specific performance of the Collateral Requirement. The SURETY's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which may be enforced at any time at the SURETY'S sole discretion. The SURETY will return any unused proceeds of the collateral only upon the full release of all obligations under the Bonds and this Agreement, demonstrated by competent written evidence of release satisfactory to the SURETY, in its sole discretion. The INDEMNITOR(S) further agree that the Collateral Requirement shall not limit or be deemed a waiver of the SURETY'S other rights (which it may exercise in its sole discretion) under this Agreement or otherwise to cancel Bonds, to demand collateral, or to take any other actions the SURETY deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bonds written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the SURETY's enforcement of the Collateral Requirement. Collateral to be provided to the SURETY shall be sent to: 505 Eagleview Blvd., Suite 100, PO Box 636, Exton, PA 19341-0636, Attn: Collateral Manager.

10. In order to secure INDEMNITOR'S obligations to SURETY under this AGREEMENT, and any other indebtedness and liabilities of INDEMNITOR to SURETY, whether heretofore or hereafter incurred, INDEMNITOR hereby assigns, transfers and conveys to SURETY all right, title, interest and estate of INDEMNITOR in and to all property, whether tangible or intangible, wherever situated, now owned or hereafter acquired, including but not limited to:  (a) all rights of INDEMNITOR in all contracts referred to in the Bond(s), or secured by the Bond(s) and all money or property due or to become due INDEMNITOR arising out of or in any way relating to contracts performed by INDEMNITOR, whether secured by Bond(s) executed by SURETY or not, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof; (b) all rights of INDEMNITOR in all contracts, including, but not limited to, unbonded contracts and/or contracts bonded by another surety, and all money or property due or to become due INDEMNITOR arising out of or in any way relating to such contracts, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof; (c) all the right, title and interest of INDEMNITOR in and to all machinery, equipment, vehicles, rolling stock, materials, inventory, leaseholds, fuel, plant, tools, furniture, goods, and personal and fixture property; (d) all money, cash, cash equivalents, bank accounts, deposit accounts (checking or savings), certificates of deposit, securities, bonds, negotiable instruments, instruments (including promissory notes), letter of credit rights, and all other investment property; (e) all subcontracts and purchase orders on projects in connection with which INDEMNITOR have entered contracts secured by Bond(s) executed by SURETY and all surety Bond(s), undertakings or guarantees which secure said subcontracts or purchase orders; (f) all materials purchased for all contracts referred to in the Bond(s), or secured by the Bond(s), including material which is in the process of manufacture, in storage at any storage facility, or in transit to any project site; (g) all licenses, patents, copyrights and trade secrets; (h) all claims, causes of action, actions or demands and the proceeds thereof which INDEMNITOR may have against any subcontractor, vendor, materialman, owner, architect, engineer, accountant or others, whether arising out of contracts secured by Bond(s) executed by SURETY or not; (i)  all money, claims or causes of actions due, claimed or receivable on insurance policies including life insurance proceeds, builder risk policies, fire policies and casualty policies; (j) all warehouse receipts, bills of lading, general intangibles and farm products; (k) all tax refunds or claims for tax refunds; (l) all limited partnership and general partnership interests.  This ASSIGNMENT shall be effective as of the date of this AGREEMENT but shall be enforceable only in the event of the occurrence of an event of default.  INDEMNITOR hereby authorizes SURETY, at its option, to prosecute or enforce said assigned rights in the name of SURETY or in that of INDEMNITOR and to endorse and to collect in the name of INDEMNITOR or payee any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights.  SURETY'S exercise of any of its rights as a secured creditor under this AGREEMENT shall not be a waiver of any of SURETY'S legal or equitable rights or remedies, including SURETY'S rights of subrogation.

11. This Agreement shall constitute a Security Agreement to SURETY and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, but the filing or recording of this Agreement shall be solely at the option of SURETY and the failure to do so shall not release or impair any of the obligations of the INDEMNITOR under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of SURETY under this Agreement or otherwise.

12. Further, the INDEMNITOR also agree if SURETY procures the execution of such Bonds or undertakings by other companies, or executes such bonds with co-sureties, or reinsures any portion of such Bonds with reinsuring companies, and it is hereby authorized to do so, then the terms and conditions of this Agreement shall apply and operate for the benefit of such companies, co-sureties or reinsuring companies, as their respective interests may appear.

13. Whenever used in this Agreement, the term "Bond" shall include any and all bonds, undertakings, contracts of suretyship, guaranty or indemnity and any renewals or extensions thereof executed by SURETY.

14. This Agreement may be terminated as to any INDEMNITOR upon twenty days written notice sent by registered mail to the SURETY at its home office at XL Specialty Insurance Company, 505 Eagleview Boulevard, Suite 100, Exton, PA, 19341, but any such notice of termination shall not operate to modify, release, bar, or discharge any INDEMNITOR as to the Bonds that may have been theretofore executed or procured and shall not affect in any manner the liability of any INDEMNITOR as do not give the notice required herein.

15. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

16. This Agreement shall be governed by the laws of the State of New Jersey, without resort to or application of any conflicts of law doctrine or principles of law.

Each of the individuals executing for the INDEMNITOR hereby affirms to the SURETY that he or she is a secretary or another duly authorized officer of the corporation that enters into this Agreement as an INDEMNITOR. In such capacity, such individual is familiar with all of the documents that set forth and establish the rights that govern the affairs, power, and authority of such company, including its certificate or articles of incorporation, bylaws, and resolutions. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the INDEMNITOR hereby affirms that such corporation (i) is a company duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and the execution, delivery and performance of this Agreement will not contravene any provision of any law, order or any court or other agency of government or the articles of incorporation or the bylaws or any other organizational documents of the company, (ii) has all material governmental licenses, authorizations, consents, and approvals, including all necessary permits to own its assets and carry on its business as now being conducted, (iii) is qualified to do business and is in good standing in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary and where failure so to qualify could have a material adverse effect, (iv) has the power and authority to enter into this Agreement and that the individual executing this Agreement on behalf of such company is duly authorized to do so, and (v) no authorizations, approvals or consents of, and no filings or registrations with any governmental or regulatory authority or agency or any securities and exchange are necessary for the execution, delivery or performance by the INDEMNITOR of this Agreement or for the legality, validity or enforceability thereof..

ATTEST OR WITNESS

INDEMNITOR COMPANY

Fieldwood Energy, LLC

By: John H. Smith

By: Michael T. Dane

Title: Senior Vice President, Land & Business Development

Title: Senior Vice President and Chief Financial Officer

Address: 2000 W Sam Houston Pkwy S, Suite 1200

| Houston | Texas | 77042 |
|---|---|---|
| City | State | Zip Code |

LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State of _Texas_____ ss.:
County of _Harris_____

On this _2_ day of _April_____, 20 _18_, before me personally comes _Michael T._
_Dane_ to me known, who being by me duly sworn, deposes and says that he resides in the City of _Houston_
that he is the _SVP & Chief Financial Officer_ of the _Fieldwood Energy LLC_____, the Limited Liability Company described in and which executed the foregoing instrument; and that he authorized under the Article of Organization and the Operating Agreement as amended and in effect this date to execute the forgoing instrument and so bind the Limited Liability Company.

_[signature]_
Notary Public, residing at _7868 Regency Square Ct._
Commission expires _12/18/2018_     _Houston, Tx 77036_

**TIFFANY PENRY**
**OFFICIAL NOTARY PUBLIC**
**COMMISSION EXPIRES**
**12-18-2018**

**IMPORTANT:  Attach certified copy of Resolution authorizing execution of this instrument by Corporation or Limited Liability Company member.**





### Indemnity Rider

Upon execution, this Rider ("Rider") shall become part of and be incorporated into that certain General Agreement of Indemnity (the "Indemnity Agreement") executed by Fieldwood Energy, LLC on April 2, 2018, in favor of SURETY, as indemnitee.

SURETY means: XL Specialty Insurance Company, XL Reinsurance America Inc. and their affiliated, associated and subsidiary companies, their successors and assigns.

UNDERSIGNED(S) means: Fieldwood Energy, LLC, Fieldwood Energy, Inc. and any of their present or future direct or indirect subsidiaries, affiliates, divisions, operating units, heirs, personal representatives, successors and assigns.

By way of this Rider, Fieldwood Energy, Inc. is added to above referenced General Agreement of Indemnity and Paragraph 1 of the Indemnity Agreement is changed and hereby replaced with the following:

1.  That this Agreement binds all UNDERSIGNED and their subsidiaries, affiliates, heirs, successors and assigns thereof, jointly and severally, to SURETY in connection with all Bonds previously or hereafter provided or procured by SURETY on behalf of any UNDERSIGNED or any subsidiary, division, associated or affiliated company of any UNDERSIGNED now owned or controlled or hereafter acquired or formed by any one or more of UNDERSIGNED in any penal sum in favor of any obligee.

And is executed on 18 day of June 18, 2019.

Each of the individuals executing for the UNDERSIGNED hereby affirms to SURETY that he or she is a secretary or another duly authorized officer of the corporation that enters into this Agreement as an UNDERSIGNED. In such capacity UNDERSIGNED is familiar with all of the documents that set forth and establish the rights that govern the affairs, power, and authority of such corporation, including its certificate or articles of incorporation, bylaws, and resolutions. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, UNDERSIGNED hereby affirms that such corporation (i) is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and the execution, delivery and performance of this Agreement will not contravene any provision of any law, order or any court or other agency of government or the articles of incorporation or the bylaws or any other organizational documents of the corporation, (ii) has all material governmental licenses, authorizations, consents, and approvals, including all necessary permits to own its assets and carry on its business as now being conducted, (iii) is qualified to do business and is in good standing in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary and where failure so to qualify could have a material adverse effect, (iv) has the power and authority to enter into this Agreement and that the individual executing this Agreement on behalf of such corporation is duly authorized to do so, and (v) no authorizations, approvals or consents of, and no filings or registrations with any governmental or regulatory authority or agency or any securities and exchange are necessary for the execution, delivery or performance by UNDERSIGNED of this Agreement or for the legality, validity or enforceability thereof.



**X⌐ Insurance**
**Reinsurance**

ATTEST OR WITNESS

X _____

Name: Mark R. Mozell

Title: Vice President – Risk Management

COMPANY: Fieldwood Energy, LLC

X _____

Name: Michael T. Dane

Title: Senior Vice President & Chief Financial Officer

Address: 2000 W. Sam Houston Parkway S. Suite 1200

Houston, Texas, 77042

CORPORATE ACKNOWLEDGMENT

State of _Texas_____ ss.:
County of _Harris_____
On this _20th_ day of _June_____, in the year 20_19_, before me personally comes
_Michael T. Dane_____
to me known, who being by me duly sworn, deposes and says that he resides in the City of
_Houston_____
that he is the _SrVP & CFO_____ of the _Fieldwood Energy LLC_____ the corporation
described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the
seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of
Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)
My Commission _9/14/2021_

expires_____

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370



**X⌐ Insurance
Reinsurance**

ATTEST OR WITNESS

X _____

Name: Mark R. Mozell

Title: Vice President – Risk Management

COMPANY: Fieldwood Energy, Inc.

X _____

Name: Michael T. Dane

Title: Senior Vice President & Chief Financial Officer

Address: 2000 W. Sam Houston Parkway S. Suite 1200

Houston, Texas, 77042

CORPORATE ACKNOWLEDGMENT

State of _Texas_____ ss.:

County of _Harris_____

On this _20th_ day of _June_____, in the year 20_19_, before me personally comes

_____Michael T. Dane_____

to me known, who being by me duly sworn, deposes and says that he resides in the City of

____Houston_____

that he is the _Sr VP & CFO_____ of the _Fieldwood Energy Inc_____ the corporation

described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the

seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of

Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)
My Commission

expires _9/14/2021_

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370

**IMPORTANT:  Attach certified copy of Resolution authorizing execution of this instrument by Corporation or Limited Liability Company member.**

# EXHIBIT A-2

**EXHIBIT H-2**

**FORM OF NOBLE PERFORMANCE BOND**
**PERFORMANCE BOND**

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the "Principal') and Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT  06183-6014, and XL Specialty Insurance Company, with an office at 70 Seaview Avenue, Stamford, CT 06902, as co-sureties (collectively, the "Surety"), are held and firmly bound unto Noble Energy, Inc. with its principal office at 1001 Noble Energy Way, Houston, Texas 77070, (the "Obligee"), in the penal sum of Ninety Million and No/100 Dollars ($90,000,000) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

Travelers Casualty and Surety Company of America  $45,000,000.00      Bond No.106854940
XL Specialty Insurance Company                    $45,000,000.00      Bond No. US00083678SU18A

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated February 14, 2018, (the *"Purchase Agreement"),* which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond'),* together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and  discharged, subject to  the  terms  and  conditions hereof; and

1

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney- in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"),* and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement" )* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount "),* exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount "),* the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost

Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

**If** the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or non-payment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Noble Energy, Inc.
1001 Noble Energy Way
Houston, Texas 77070
Attention: [          ]

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: [          ]

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

XL Specialty Insurance Company (Surety)
70 Seaview Avenue
Stamford, CT 06902
Attention: Becky Shalhoub
Telephone: 610-968-9099

*[signature pages follow]*

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on April 11, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.

By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

NOBLE ENERGY, INC.

By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

Gina Rodriguez
Print Name

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By: _____

Name: ___Laura E. Sudduth_____

Title: ____Attorney-In-Fact_____

Date: ____April 5, 2018_____

**SURETY:**

XL SPECIALTY INSURANCE

By: _____

Name: ___Laura Sudduth_____

Title: ____Attorney-In-Fact_____

Date: ____April 5, 2018_____

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of _____ _____.



_Kevin M Mirsch_
Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.



**XL REINSURANCE AMERICA INC.**

by: _Gregory C Boal_
Gregory Boal, VICE PRESIDENT

Attest: _Kevin M Mirsch_
Kevin M. Mirsch, ASSISTANT SECRETARY

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER PENNSYLVANIA ASSOCIATION OF NOTARIES

_Rebecca C Shalhoub_
Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of _April 2018_

_Kevin M Mirsch_
Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND

SB0042

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of _____ _____.



_Kevin M Mirsch_
Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.



**XL REINSURANCE AMERICA INC.**

by:   _Gregory C Boal_
Gregory Boal, VICE PRESIDENT

Attest:   _Kevin M Mirsch_
Kevin M. Mirsch, ASSISTANT SECRETARY

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.



COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Rebecca C Shalhoub_
Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of April 2018

_Kevin M Mirsch_
Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

| THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND |

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

**TRAVELERS**

## POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.          232560

Certificate No.   007341763

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, Mario Arzamendi, and Laura E. Sudduth

of the City of _____ Houston _____ , State of _____ Texas _____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____ 24th _____ day of _____ August _____ , _____ 2017 _____ .

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____ 24th _____ day of _____ August _____ , _____ 2017, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company,  Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF**, I have hereunto set my hand and affixed the seals of said Companies this   5th   day of   April   , 2018.

Kevin E. Hughes, Assistant Secretary

        

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

Exhibit "A"

Assets

Exhibit "B"

Rider No.

To be attached and form part of Bond No._____ issued by _____,
(as Surety), effective _____

In the amount of:          $_____
On behalf of:              Fieldwood Energy LLC (as Principal)
In favor of:               Noble Energy, Inc. (as Obligee)

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**

_____and N0/100 Dollars ($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the_____day of_____ 201
Signed, sealed and dated the____day of_____ 201

Fieldwood Energy LLC

By:_____
Name:_____
Title:_____

Travelers Casualty and Surety Company of America

By:_____
Name:_____
Title:_____

XL Specialty Insurance Company

By:_____
Name:_____
Title:_____

Acknowledged By:  Noble Energy, Inc.

By:_____
Name:_____
Title:_____

# Electronic Proof of Claim_#EAUW28824[[CSA# 7711#CF]]

Final Audit Report                                              2020-11-21

| | |
|---|---|
| Created: | 2020-11-21 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAzmQZdKFJRoLkSzc9TkTdBcD8j15CKwlO |

## "Electronic Proof of Claim_#EAUW28824[[CSA#7711#CF]]" History

📄 Web Form created by Prime Clerk (epoc@primeclerk.com)
   2020-11-21 - 2:11:16 AM GMT

📎 Brandon K. Bains (lmurphy@l-llp.com) uploaded the following supporting documents:
   📎 Attachment
   2020-11-21 - 2:16:54 AM GMT

📄 Web Form filled in by Brandon K. Bains (lmurphy@l-llp.com)
   2020-11-21 - 2:16:54 AM GMT- IP address: 47.187.54.206

✍️ (User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
   2020-11-21 - 2:16:57 AM GMT- IP address: 47.187.54.206

✅ Agreement completed.
   2020-11-21 - 2:16:57 AM GMT

**United States Bankruptcy Court, Southern District of Texas (Houston Division)**

| Fill in this information to identify the case (Select only one Debtor per claim form): | |
|---|---|
| ☒ Fieldwood Energy LLC (20-33948) | ☐ GOM Shelf LLC (20-33954) |
| ☐ Dynamic Offshore Resources NS, LLC (20-33947) | ☐ Bandon Oil and Gas GP, LLC (20-33955) |
| ☐ Fieldwood Energy Inc. (20-33949) | ☐ Bandon Oil and Gas, LP (20-33956) |
| ☐ Fieldwood Energy Offshore LLC (20-33950) | ☐ Fieldwood Energy SP LLC (20-33958) |
| ☐ Fieldwood Onshore LLC (20-33951) | ☐ Galveston Bay Pipeline LLC (20-33959) |
| ☐ Fieldwood SD Offshore LLC (20-33952) | ☐ Galveston Bay Processing LLC (20-33960) |
| ☐ FW GOM Pipeline, Inc. (20-33953) | ☐ Fieldwood Offshore LLC (20-33961) |

## Modified Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense (other than a claim entitled to priority under 11 U.S.C. § 503(b)(9)). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
|---|---|

| | |
|---|---|
| 1. Who is the current creditor? | **XL Specialty Insurance Company** <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☒ No <br> ☐ Yes. From whom? _____ |
| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**     **Where should payments to the creditor be sent?** (if different) <br><br><br> Contact phone   214-722-7171       Contact phone _____ <br> Contact email   bbains@l-llp.com       Contact email _____ |
| 4. Does this claim amend one already filed? | ☒ No <br> ☐ Yes. Claim number on court claims registry (if known)_____    Filed on ___/___/___ <br>                                                        MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☒ No <br> ☐ Yes. Who made the earlier filing? _____ |

**Claim Number: 521**             **Proof of Claim**

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☒ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

**7. How much is the claim?**   $ <u>Unknown (See Addendum)</u>.   **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

☒ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____

**Amount of the claim that is secured:**   $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No | |
| | ☒ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☒ Other. Specify subsection of 11 U.S.C. § 507(a)( 2 ) that applies. | $ See Addendum |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?** | | |
|---|---|---|
| | ☒ No | |
| | ☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.** | $ _____ |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** *Brandon K. Bains*
Brandon K. Bains (Nov 20, 2020 20:08 CST)

**Email:** lmurphy@l-llp.com

_____
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Brandon K Bains |
| | First name          Middle name          Last name |
| Title | Attorney |
| Company | Langley LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | P.O. Box 94075 |
| | Number          Street |
| | Southlake          TX          76092 |
| | City          State          ZIP Code |
| Contact phone | 2147227171          Email          bbains@l-llp.com |

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ I have supporting documentation.
   (attach below)
      ☐ I do <u>not</u> have supporting documentation.

📎 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

Modified Official Form 410

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                           12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

> **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
> 18 U.S.C. §§ 152, 157 and 3571.

## How to fill out this form

- **Fill in all of the information about the claim as of the date the case was filed.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, enclose a stamped self-addressed envelope and a copy of this form. You may view a list of filed claims in this case by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/FieldwoodEnergy.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. §503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. §101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Priority claim:** A claim within a category of unsecured claims that is entitled to priority under 11 U.S.C. §507(a). These claims are paid from the available money or property in a bankruptcy case before other unsecured claims are paid. Common priority unsecured claims include alimony, child support, taxes, and certain unpaid wages.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the date of the bankruptcy filing. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Secured claim under 11 U.S.C. §506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

Fieldwood Energy LLC Claims Processing Center
c/o Prime Clerk LLC
850 3rd Avenue, Suite 412
Brooklyn, NY 11232

---

**Do not file these instructions with your form**

## ADDENDUM TO MASTER PROOF OF CLAIM BY
## XL SPECIALTY INSURANCE COMPANY

This Addendum is submitted with and incorporated in the Proof of Claim filed in Case No. 20-33948, *In re: Fieldwood Energy, LLC et al.*, by XL Specialty Insurance Company ("XL Specialty").

## CREDITOR

XL Specialty is a Delaware corporation and is authorized to conduct business in the State of Texas. XL Specialty is a creditor, having issued, as surety, numerous miscellaneous commercial bonds on behalf of Fieldwood Energy, LLC and Fieldwood Energy, Inc. (collectively, the "Debtors") or their affiliates as principal.

The Debtors executed the following indemnity agreements with XL Specialty and its affiliates (the "GIA"):

| Date | Agreement | Indemnitors | Surety |
|---|---|---|---|
| | | | |
| 4-16-2018 | General Agreement of Indemnity | Fieldwood Energy, LLC, Fieldwood Energy, Inc. | The XL Specialty Insurance Company and XL Reinsurance Insurance |
| | | | |

Under the GIA, the Debtors agreed to indemnify the Surety from and against all loss, cost and expense, including attorneys' fees, incurred by the Surety by reason of the extension of surety credit to any of the Debtors. The Debtors also promised to pay all premium due on the Bonds. XL Specialty requires annual premium payments in order to process renewal of the Bonds.

A true and correct copy of the GIAs are attached hereto as Exhibit "A-1."

## BASIS OF THE CLAIM

XL Specialty faces continued exposure on the bonds itemized in the attached Exhibit "A-2" (the "Bonds"). The Bonds were issued prior to the petition date in this case and remain subject to potential claims against XL Specialty by the obligees thereof.

XL Specialty's claims are based on:

a.  its rights under the GIA;

b.  its rights as a surety to common law indemnity and exoneration; and

c.  its rights under contract and otherwise as subrogee to and/or assignee of the rights of those persons entitled to make claim on the Bonds.

With respect to the claims under contract and otherwise as subrogee to those persons entitled to assert rights under the Bonds, XL Specialty hereby asserts such claims if and to the extent such persons have not filed and do not file their own proofs of claim timely.

<u>AMOUNT OF CLAIM</u>

The claim asserted herein is unliquidated in part at this time.

The Debtors are, at the date of this filing, indebted and liable to XL Specialty in at least the amount of $45,000,000 based on the total amount of XL Specialty's exposure under the Bonds, based on their penal sum. The Debtors are also liable to XL Specialty for attorneys' fees and expenses incurred by XL Specialty as a result of issuing the Bonds and other bonds on behalf of the Debtors. XL Specialty also faces exposure in an unknown amount for any post-petition premium payments that are not made by the Debtors. The Debtors are jointly and severally liable to XL Specialty to-date in the total amount of at least $45,000,000.

<u>CLASSIFICATION OF AND SECURITY FOR CLAIM</u>

1.     XL Specialty is filing a separate unsecured proof of claim in the amount of $45,000,000. The Debtors are jointly and severally liable to XL Specialty for the claim amount.

2.     XL Specialty has a contingent, unliquidated priority claim pursuant to 11 U.S.C. § 507(a)(2) for any post-petition premium payments that are not made by the Debtors. The premium payments are actual, necessary costs of preserving the Debtors' estates incurred in conjunction with renewal of the Bonds constituting administrative expenses under 11 U.S.C. § 503(b)(1)(A). As the Debtors are continuing to operate, the Bonds continuing in force is necessary to preserve the Debtors' estates. XL Specialty is unable to determine the amount of its priority claim at this time because there are currently no outstanding premium payments owed by the Debtors and the Bonds renew on a rolling basis.

3.     XL Specialty reserves the right to assert other priority claims, to the extent they are unsecured, under 11 U.S.C. § 507(a)(4) and § 507(a)(5), if and to the extent it pays claims on the Bonds that qualify for priority treatment pursuant to these sections of the Bankruptcy Code.

4.     Notwithstanding the foregoing, XL Specialty reserves the right to assert that certain portions of its claim are entitled to administrative priority if and to the extent that any of the Bonds covers losses that occur or have occurred post-petition.

<u>RESERVATION OF RIGHTS AND CLAIMS</u>

XL Specialty reserves all rights accruing to it as surety or otherwise, and the filing of this Proof of Claim is not intended to be and shall not be construed as: (a) an election of rights or remedies, or (b) a waiver of any past, present or future event of default on the part of the Debtors or any other person, or (c) a waiver or limitation of any rights of XL Specialty.

Without prejudice to its position that no liability exists with respect to all bonds terminated, canceled, released or replaced prior to the date of this Proof of Claim, XL Specialty asserts a contingent claim with respect to those bonds in the event any claim should be made upon them.

<u>**ADDENDUM TO XL SPECIALTY INSURANCE COMPANY'S PROOF OF CLAIM**</u>                    **2**

XL Specialty reserves all rights and remedies which it may have, in addition to filing of and pursuit of this Proof of Claim, against any other person or entity, including (without limitation): (i) rights against indemnitors, other guarantors, successors in interest or agents; (ii) rights against other persons against which the Debtors, or any other subrogor of XL Specialty, has rights, and to which rights XL Specialty succeeds by virtue of becoming subrogated to such rights; (iii) the right to assert some or all of XL Specialty's claim as an administrative claim, whether or not such claim is stated herein; and (iv) the right to assert any of the matters asserted herein by way of defense, counterclaim, offset or recoupment against any claim asserted against XL Specialty by the Debtors or any representative or affiliate thereof or successor thereto.

XL Specialty reserves the right to assert as administrative claims those claims arising from breaches of any contract that the Debtors have assumed or will assume.

XL Specialty reserves the right to assert as administrative claims those claims arising through subrogation or assignment.

XL Specialty reserves any and all defenses to claims that have been or may hereafter be asserted against it under any of the Bonds. Nothing herein shall be deemed an admission of liability under the continued effectiveness of, or the validity of, the Bonds.

XL Specialty reserves all rights available to it by applicable law or rule to amend this Proof of Claim based on additional facts and circumstances giving rise to additional claims and upon circumstances giving rise to additional claims and upon claims that are presently contingent becoming fixed and upon determination of liquidated amounts for the portions of the claim made hereunder which is not presently liquidated.

**ADDENDUM TO XL SPECIALTY INSURANCE COMPANY'S PROOF OF CLAIM**          3

<u>LIST OF EXHIBITS</u>

Exhibit "A-1" – Indemnity Agreements

Exhibit "A-2" – List of Open Bonds

# EXHIBIT A-1



## INDEMNITY AGREEMENT REVIEW & SAFEKEEPING

(To be completed when the Company receives a new General Agreement of Indemnity)

| | |
|---|---|
| PRINCIPAL / ACCOUNT: | **Fieldwood Energy, LLC** |
| CITY, STATE: <br> **Exton, PA** | **GIA #:** Click here to enter text. |
| PURPOSE (New account, new indemnitor, etc.) | **New Account** |
| CPO Received: **4/5/2018** | DATE: **4/16/2018** |

INSTRUCTIONS FOR COMPLETION:

- The original Agreement of Indemnity and this Review form should be sent to the responsible CPO Staff who will insure a copy is placed in Documentum.
- The original Agreement of Indemnity and completed Review form will then be logged and stored per Company policy and a copy of the completed Review form.

COMMENTS: _____

_____

_____

_____



**General Agreement of Indemnity**

This Agreement made this 2nd day of April, 2018 by:

**Fieldwood Energy, LLC. (Address) 2000 W Sam Houston Pkwy S, Suite 1200, Houston, TX 77042    (Tax ID) 46-1326778**

hereinafter called INDEMNITOR, in favor of XL Specialty Insurance Company, XL Reinsurance America Inc., and their affiliated, associated and subsidiary companies, their successors and assigns, hereinafter called SURETY, for the purpose of indemnifying the SURETY in connection with any bonds previously or hereafter executed or procured for on or behalf of any of the INDEMNITOR.

**Whereas**, SURETY may from time to time be requested to execute various Bonds or procure the execution of various Bonds for one or more of the INDEMNITOR or for subsidiaries, partnerships, associations or affiliates, previously owned or now owned or controlled or hereafter acquired or formed by one or more of the INDEMNITORS.

Now, therefore, in consideration of SURETY heretofore or hereafter executing, providing or procuring Bonds and as an inducement to such execution by SURETY, the INDEMNITOR and the heirs, personal representatives, successors and assigns thereof, jointly and severally, agree:

1.  That this Agreement binds all INDEMNITOR(S) and the heirs, personal representatives, successors and assigns thereof, jointly and severally, to SURETY in connection with all Bonds previously or hereafter provided or procured by SURETY on behalf of any INDEMNITOR or any subsidiary, division, associated or affiliated company of any INDEMNITOR now owned or controlled or hereafter acquired or formed by any one or more of INDEMNITOR in any penal sum in favor of any obligee.
2.  To pay to the SURETY such premium as the SURETY shall charge upon execution of the Bond(s) and annually in advance thereafter until such time as the SURETY's liability under the Bond(s) is terminated.
3.  That the SURETY may, in its sole discretion, decline to execute, provide or procure any Bond(s) applied for and may, in its sole discretion, cancel or terminate any Bond(s) executed by the SURETY without incurring any liability whatsoever to the INDEMNITOR.
4.  To exonerate, indemnify, hold harmless and keep indemnified the SURETY from and against all demands, claims, losses, costs, liabilities, damages, and expenses including, without limitation, attorney's fees, expert's fees, interest, court costs, investigative expenses, document reproduction and storage charges which the SURETY may sustain or incur by reason of the issuance of the Bond(s) or INDEMNITOR's failure to perform or comply with any of the provisions of this Agreement or SURETY attempting to obtain a release of or evidence of termination under such Bond(s).
5.  That if the SURETY (a) receives any claim under any Bond or (b) establishes, in its sole discretion, any reserve, the INDEMNITOR(S) will provide the SURETY or its designees free access to all records of the INDEMNITOR(S) (including, but not limited to, books, papers, records, documents, accounts, and electronically stored information), for the purpose of examining and copying, until the SURETY has been provided satisfactory evidence, in its sole but reasonable discretion, that it has been fully released of liability under all Bonds. The INDEMNITOR(S) expressly authorize the SURETY to access their credit reports and financial records, including, but not limited to, account numbers, account balances, and account activity from financial institutions and other third parties. The INDEMNITOR(S) hereby authorize such financial institutions and other third parties to disclose all such information to the SURETY as the SURETY may request.
6.  In order to exonerate and indemnify the SURETY to place the SURETY in immediately available funds when requested to do so in order to meet and satisfy any claim, reserve established by SURETY or demand made upon the SURETY under the Bond(s) (whether or not such claims or demands are contested by INDEMNITOR) before the SURETY shall be required to make payment under the Bond(s) INDEMNITOR acknowledge that failure of INDEMNITOR to deposit funds with SURETY in accordance with this section in the amounts and at the time demanded by SURETY shall cause irreparable harm for which SURETY has no adequate remedy at law. INDEMNITOR agree that SURETY shall be entitled to injunctive relief for specific performance of INDEMNITOR'S obligation to deposit funds with SURETY in accordance with this section.
7.  To furnish the SURETY with satisfactory and conclusive evidence that there is no further liability on the Bond(s).
8.  That the SURETY shall have the exclusive right in its sole discretion to adjust, defend, prosecute, settle, compromise or appeal any claim or litigation under such Bond(s) and that the voucher or other evidence showing payment by the SURETY

in good faith by reason of such Bond(s) or any renewal, extension or substitution thereof shall be conclusive and in any event prima facie evidence of such payment and the propriety thereof and the liability of the INDEMNITOR therefore to the SURETY.

9.   That if the SURETY, in its sole discretion, determines one or more of the following: (a) the INDEMNITOR(S) financial capacity has been, or may be, impaired; or (b) there has been or may be some other change or event that adversely affects the SURETY's risk under the Bonds, then the INDEMNITOR(S) shall, within thirty (30) days of receipt of the SURETY's written demand, procure the full and complete release of the Bond (s) by providing competent written evidence of release satisfactory to the SURETY, in its sole discretion. If the INDEMNITOR(S) fail to provide the aforementioned release, the INDEMNITOR(S) shall, within an additional seven (7) days, provide the SURETY with collateral acceptable to the SURETY in the amount of 100% of all unreleased exposure under the Bond (s). SURETY, in its sole discretion, will determine the amount of the unreleased exposure under the Bond(s). All collateral held by the SURETY may be used in the SURETY's sole discretion to reimburse itself or to pay any and all Losses sustained or incurred by reason of or in connection with the furnishing of any or all Bonds or the enforcement of this Agreement. The INDEMNITOR(S) waive, to the fullest extent permitted by law, each and every right that they may have to contest any requirement to provide collateral under this Agreement, including but not limited to this paragraph and paragraph six hereof, (individually and collectively, the "Collateral Requirement"). The INDEMNITOR(S) stipulate and agree that the SURETY will not have an adequate remedy at law should the INDEMNITOR(S) fail to perform the Collateral Requirement and further agree as a result that the SURETY is entitled to specific performance of the Collateral Requirement. The SURETY's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which may be enforced at any time at the SURETY'S sole discretion. The SURETY will return any unused proceeds of the collateral only upon the full release of all obligations under the Bonds and this Agreement, demonstrated by competent written evidence of release satisfactory to the SURETY, in its sole discretion. The INDEMNITOR(S) further agree that the Collateral Requirement shall not limit or be deemed a waiver of the SURETY'S other rights (which it may exercise in its sole discretion) under this Agreement or otherwise to cancel Bonds, to demand collateral, or to take any other actions the SURETY deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bonds written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the SURETY's enforcement of the Collateral Requirement. Collateral to be provided to the SURETY shall be sent to: 505 Eagleview Blvd., Suite 100, PO Box 636, Exton, PA 19341-0636, Attn: Collateral Manager.

10.   In order to secure INDEMNITOR'S obligations to SURETY under this AGREEMENT, and any other indebtedness and liabilities of INDEMNITOR to SURETY, whether heretofore or hereafter incurred, INDEMNITOR hereby assigns, transfers and conveys to SURETY all right, title, interest and estate of INDEMNITOR in and to all property, whether tangible or intangible, wherever situated, now owned or hereafter acquired, including but not limited to:  (a) all rights of INDEMNITOR in all contracts referred to in the Bond(s), or secured by the Bond(s) and all money or property due or to become due INDEMNITOR arising out of or in any way relating to contracts performed by INDEMNITOR, whether secured by Bond(s) executed by SURETY or not, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof; (b) all rights of INDEMNITOR in all contracts, including, but not limited to, unbonded contracts and/or contracts bonded by another surety, and all money or property due or to become due INDEMNITOR arising out of or in any way relating to such contracts, including, but not limited to, accounts receivable, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof; (c) all the right, title and interest of INDEMNITOR in and to all machinery, equipment, vehicles, rolling stock, materials, inventory, leaseholds, fuel, plant, tools, furniture, goods, and personal and fixture property; (d) all money, cash, cash equivalents, bank accounts, deposit accounts (checking or savings), certificates of deposit, securities, bonds, negotiable instruments, instruments (including promissory notes), letter of credit rights, and all other investment property; (e) all subcontracts and purchase orders on projects in connection with which INDEMNITOR have entered contracts secured by Bond(s) executed by SURETY and all surety Bond(s), undertakings or guarantees which secure said subcontracts or purchase orders; (f) all materials purchased for all contracts referred to in the Bond(s), or secured by the Bond(s), including material which is in the process of manufacture, in storage at any storage facility, or in transit to any project site; (g) all licenses, patents, copyrights and trade secrets; (h) all claims, causes of action, actions or demands and the proceeds thereof which INDEMNITOR may have against any subcontractor, vendor, materialman, owner, architect, engineer, accountant or others, whether arising out of contracts secured by Bond(s) executed by SURETY or not; (i)  all money, claims or causes of actions due, claimed or receivable on insurance policies including life insurance proceeds, builder risk policies, fire policies and casualty policies; (j) all warehouse receipts, bills of lading, general intangibles and farm products; (k) all tax refunds or claims for tax refunds; (l) all limited partnership and general partnership interests.  This ASSIGNMENT shall be effective as of the date of this AGREEMENT but shall be enforceable only in the event of the occurrence of an event of default.  INDEMNITOR hereby authorizes SURETY, at its option, to prosecute or enforce said assigned rights in the name of SURETY or in that of INDEMNITOR and to endorse and to collect in the name of INDEMNITOR or payee any checks, drafts, warrants or other instruments made or issued in payment of any such assigned rights.  SURETY'S exercise of any of its rights as a secured creditor under this AGREEMENT shall not be a waiver of any of SURETY'S legal or equitable rights or remedies, including SURETY'S rights of subrogation.

11. This Agreement shall constitute a Security Agreement to SURETY and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect, but the filing or recording of this Agreement shall be solely at the option of SURETY and the failure to do so shall not release or impair any of the obligations of the INDEMNITOR under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of SURETY under this Agreement or otherwise.

12. Further, the INDEMNITOR also agree if SURETY procures the execution of such Bonds or undertakings by other companies, or executes such bonds with co-sureties, or reinsures any portion of such Bonds with reinsuring companies, and it is hereby authorized to do so, then the terms and conditions of this Agreement shall apply and operate for the benefit of such companies, co-sureties or reinsuring companies, as their respective interests may appear.

13. Whenever used in this Agreement, the term "Bond" shall include any and all bonds, undertakings, contracts of suretyship, guaranty or indemnity and any renewals or extensions thereof executed by SURETY.

14. This Agreement may be terminated as to any INDEMNITOR upon twenty days written notice sent by registered mail to the SURETY at its home office at XL Specialty Insurance Company, 505 Eagleview Boulevard, Suite 100, Exton, PA, 19341, but any such notice of termination shall not operate to modify, release, bar, or discharge any INDEMNITOR as to the Bonds that may have been theretofore executed or procured and shall not affect in any manner the liability of any INDEMNITOR as do not give the notice required herein.

15. This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

16. This Agreement shall be governed by the laws of the State of New Jersey, without resort to or application of any conflicts of law doctrine or principles of law.

Each of the individuals executing for the INDEMNITOR hereby affirms to the SURETY that he or she is a secretary or another duly authorized officer of the corporation that enters into this Agreement as an INDEMNITOR. In such capacity, such individual is familiar with all of the documents that set forth and establish the rights that govern the affairs, power, and authority of such company, including its certificate or articles of incorporation, bylaws, and resolutions. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, the INDEMNITOR hereby affirms that such corporation (i) is a company duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and the execution, delivery and performance of this Agreement will not contravene any provision of any law, order or any court or other agency of government or the articles of incorporation or the bylaws or any other organizational documents of the company, (ii) has all material governmental licenses, authorizations, consents, and approvals, including all necessary permits to own its assets and carry on its business as now being conducted, (iii) is qualified to do business and is in good standing in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary and where failure so to qualify could have a material adverse effect, (iv) has the power and authority to enter into this Agreement and that the individual executing this Agreement on behalf of such company is duly authorized to do so, and (v) no authorizations, approvals or consents of, and no filings or registrations with any governmental or regulatory authority or agency or any securities and exchange are necessary for the execution, delivery or performance by the INDEMNITOR of this Agreement or for the legality, validity or enforceability thereof..

ATTEST OR WITNESS

INDEMNITOR COMPANY

Fieldwood Energy, LLC

By: John H. Smith

By: Michael T. Dane

Title: Senior Vice President, Land & Business Development

Title: Senior Vice President and Chief Financial Officer

Address: 2000 W Sam Houston Pkwy S, Suite 1200

| Houston | Texas | 77042 |
|---------|-------|-------|
| City | State | Zip Code |

LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

State of _Texas_ ss.:
County of _Harris_

On this _2_ day of _April_, 20 _18_, before me personally comes _Michael T._
_Dane_
to me known, who being by me duly sworn, deposes and says that he resides in the City of _Houston_
that he is the _SVP & Chief Financial Officer_ of the _Fieldwood Energy LLC_, the Limited Liability Company described in and
which executed the foregoing instrument; and that he authorized under the Article of Organization and the Operating Agreement as amended and in effect this date to
execute the forgoing instrument and so bind the Limited Liability Company.



**TIFFANY PENRY**
OFFICIAL NOTARY PUBLIC
COMMISSION EXPIRES
12-18-2018

Notary Public, residing at _7368 Regency Square Ct._
Commission expires _12/18/2018_   _Houston, Tx 77036_

**IMPORTANT:  Attach certified copy of Resolution authorizing execution of this instrument by Corporation or Limited Liability Company member.**





**Indemnity Rider**

Upon execution, this Rider ("Rider") shall become part of and be incorporated into that certain General Agreement of Indemnity (the "Indemnity Agreement") executed by Fieldwood Energy, LLC on April 2, 2018, in favor of SURETY, as indemnitee.

SURETY means: XL Specialty Insurance Company, XL Reinsurance America Inc. and their affiliated, associated and subsidiary companies, their successors and assigns.

UNDERSIGNED(S) means: Fieldwood Energy, LLC, Fieldwood Energy, Inc. and any of their present or future direct or indirect subsidiaries, affiliates, divisions, operating units, heirs, personal representatives, successors and assigns.

By way of this Rider, Fieldwood Energy, Inc. is added to above referenced General Agreement of Indemnity and Paragraph 1 of the Indemnity Agreement is changed and hereby replaced with the following:

1. That this Agreement binds all UNDERSIGNED and their subsidiaries, affiliates, heirs, successors and assigns thereof, jointly and severally, to SURETY in connection with all Bonds previously or hereafter provided or procured by SURETY on behalf of any UNDERSIGNED or any subsidiary, division, associated or affiliated company of any UNDERSIGNED now owned or controlled or hereafter acquired or formed by any one or more of UNDERSIGNED in any penal sum in favor of any obligee.

And is executed on 18 day of June 18, 2019.

Each of the individuals executing for the UNDERSIGNED hereby affirms to SURETY that he or she is a secretary or another duly authorized officer of the corporation that enters into this Agreement as an UNDERSIGNED. In such capacity UNDERSIGNED is familiar with all of the documents that set forth and establish the rights that govern the affairs, power, and authority of such corporation, including its certificate or articles of incorporation, bylaws, and resolutions. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, UNDERSIGNED hereby affirms that such corporation (i) is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and the execution, delivery and performance of this Agreement will not contravene any provision of any law, order or any court or other agency of government or the articles of incorporation or the bylaws or any other organizational documents of the corporation, (ii) has all material governmental licenses, authorizations, consents, and approvals, including all necessary permits to own its assets and carry on its business as now being conducted, (iii) is qualified to do business and is in good standing in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary and where failure so to qualify could have a material adverse effect, (iv) has the power and authority to enter into this Agreement and that the individual executing this Agreement on behalf of such corporation is duly authorized to do so, and (v) no authorizations, approvals or consents of, and no filings or registrations with any governmental or regulatory authority or agency or any securities and exchange are necessary for the execution, delivery or performance by UNDERSIGNED of this Agreement or for the legality, validity or enforceability thereof.



**XL Insurance Reinsurance**

ATTEST OR WITNESS

X _____

Name: Mark R. Mozell

Title: Vice President – Risk Management

COMPANY: Fieldwood Energy, LLC

X _____

Name: Michael T. Dane

Title: Senior Vice President & Chief Financial Officer

Address: 2000 W. Sam Houston Parkway S. Suite 1200

Houston, Texas, 77042

CORPORATE ACKNOWLEDGMENT

State of _Texas_____ ss.:

County of _Harris_____

On this _20th_ day of _June_____, in the year 20 _19_, before me personally comes

_Michael T. Dane_____

to me known, who being by me duly sworn, deposes and says that he resides in the City of

_Houston_____

that he is the _SrVP & CFO_____ of the _Fieldwood Energy LLC_____ the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

My Commission _9/14/2021_

expires_____

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370



**Xᴸ Insurance Reinsurance**

ATTEST OR WITNESS

X _____

Name: Mark R. Mozell

Title: Vice President – Risk Management

COMPANY: Fieldwood Energy, Inc.

X _____

Name: Michael T. Dane

Title: Senior Vice President & Chief Financial Officer

Address: 2000 W. Sam Houston Parkway S. Suite 1200

Houston, Texas, 77042

CORPORATE ACKNOWLEDGMENT

State of ___Texas_____ ss.:
County of ___Harris_____
   On this __20th__ day of __June_____, in the year 20 _19_, before me personally comes

___Michael T. Dane_____

to me known, who being by me duly sworn, deposes and says that he resides in the City of
___Houston_____
that he is the __Sr VP & CFO_____ of the __Fieldwood Energy Inc____ the corporation
described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the
seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of
Directors of said corporation, and that he signed his name thereto by like order.

(Signature of Notary Public)

My Commission

expires __9/14/2021__

MINDY A. GREGORY
Notary Public, State of Texas
Comm. Expires 09-14-2021
Notary ID 125433370

**IMPORTANT:  Attach certified copy of Resolution authorizing execution of this instrument by Corporation
or Limited Liability Company member.**

# EXHIBIT A-2

**EXHIBIT H-2**

**FORM OF NOBLE PERFORMANCE BOND**
**PERFORMANCE BOND**

KNOW ALL MEN BY THESE PRESENTS:

THAT we, Fieldwood Energy LLC, with its principal office at 2000 W. Sam Houston Pkwy South, Suite 1200, Houston, Texas 77042, (the "Principal') and Travelers Casualty and Surety Company of America, with an office at One Tower Square, Hartford, CT  06183-6014, and XL Specialty Insurance Company, with an office at 70 Seaview Avenue, Stamford, CT 06902, as co-sureties (collectively, the "Surety"), are held and firmly bound unto Noble Energy, Inc. with its principal office at 1001 Noble Energy Way, Houston, Texas 77070, (the "Obligee"), in the penal sum of Ninety Million and No/100 Dollars ($90,000,000) lawful money of the United States of America (the "Penal Sum") for the payment of which sum the Principal and the Surety bind themselves, their successors and assigns (with each surety's respective obligation limited as set forth herein) and each surety being liable jointly, severally, and in solido with the Principal solely up to its respective limit of liability set forth below, firmly by these presents. All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Purchase Agreement (as defined below).

NOW, THEREFORE, the condition of this obligation is that in the event of default, as defined, the undersigned sureties shall be liable in Principal's place; provided, however that the maximum amount of liability for each surety shall be limited to the following amounts:

| | | |
|---|---|---|
| Travelers Casualty and Surety Company of America | $45,000,000.00 | Bond No.106854940 |
| XL Specialty Insurance Company | $45,000,000.00 | Bond No. US00083678SU18A |

It is expressly provided that each obligation of the Surety shall be several and not joint with one another and both joint and several with Principal only, and no surety shall be responsible in an amount greater than its respective maximum amount of liability set forth above.

WHEREAS, Principal and Obligee have entered into that certain Purchase and Sale Agreement dated February 14, 2018, (the *"Purchase Agreement"),* which Purchase Agreement is by reference made a part hereof and which provides for the sale and assignment from the Obligee to the Principal of the interests of Obligee in the oil and gas leases, contracts, properties, wells, platforms, facilities, rights of way, equipment, pipelines and personal property defined therein as the "Assets," including those identified on Exhibit A of the Purchase Agreement and identified on Exhibit A to this Performance Bond (the *"Bond'),* together with, among other rights and obligations, all P&A Obligations (as defined in the Purchase Agreement) associated therewith; and

WHEREAS, the Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof; and

1

WHEREAS, the Principal has promised to deliver to the Obligee, contemporaneous with the closing of the Purchase Agreement, a performance bond in the form hereof executed by Principal and Surety; and

WHEREAS, the Surety represents that it is duly authorized by the proper public authorities to transact the business of indemnity and suretyship in the state where it executed this Bond, and represents that it is qualified to be surety and guarantor on bonds and undertakings, which certificate has not been revoked; and

WHEREAS, the Surety represents that it has duly executed a power of attorney, appointing the hereinafter named representative as its duly authorized deputy, as the true and lawful attorney- in-fact of such Surety, upon whom may be served all lawful process in any action or proceeding against such Surety in any court or before any officer, arising out of or founded upon this Bond or any liability hereunder; and does hereby agree and consent that such service, when so made, shall be valid service upon it, and that such appointment shall continue in force and effect and be irrevocable so long as any liability against it remains outstanding hereunder.

NOW, THEREFORE, the Principal and the Surety agree as follows:

The Surety hereby guarantees the full and faithful performance by Principal of, and compliance by the Principal with the applicable provisions of the Purchase Agreement requiring the Principal to timely and fully perform and satisfy, the P&A Obligations associated with the Assets identified on Exhibit A to this Bond.

PROVIDED, HOWEVER, the Surety is hereby authorized and directed to reduce the Penal Sum at any time upon presentation of a bond reduction rider acknowledged by Obligee, in substantially the same form attached hereto as Exhibit B; provided, however, in the event, and only in the event, the Obligee fails to execute and acknowledge a bond reduction rider as set forth in this Bond then the Surety is hereby authorized and directed to reduce the Penal Sum upon the occurrence of one of the following: (a) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the Principal filed with BSEE (or any successor regulatory authorities) a Regulatory Verification (as such term is defined herein below) for the applicable Asset(s) indicating that all P&A Obligations with respect to such Asset(s) had been completed, (b) presentation by the Principal to the Surety of a letter from an officer of Principal certifying that, prior to the presentation of such letter to the Surety, the BSEE and/or BOEM (or any successor regulatory authorities) public databases indicated that all P&A Obligations for the applicable Asset(s) were completed.

Regulatory Verification as used in this Bond shall mean a copy of (i) an end of operations notice for Wells, (ii) a completion report for pipelines, flowlines, and gathering lines included in the Assets, or (iii) a site clearance report for Facilities and other structures included in the Assets, in each case indicating all Plugging and Abandonment related to such Asset(s) has been completed.

Principal and the Surety agree that this Bond shall remain in full force and effect until all P&A Obligations associated with the Assets identified on Exhibit A to this Bond have been truly and faithfully performed and discharged, subject to the terms and conditions hereof.

PROVIDED, FURTHER THAT, including to the extent the Principal may be liable for any expenses, fees, penalties, damages (either direct, indirect or consequential) related to the P&A Obligations described above, or to the extent the Obligee may incur any attorney's fees or court costs or other expenses of litigation in the event of a contest over the Surety's denial of the obligation (or any part thereof), the maximum obligation of the Surety under this Bond shall be the Penal Sum reduced, as applicable, as provided for herein.

It is further agreed that, without limiting or reducing the obligations of the Surety under this Bond, the Surety shall not be liable for any provisions of the Purchase Agreement or specifications therein respecting the procurement of, or coverages provided by, any insurance, nor shall the Surety be liable under any hold harmless and/or indemnification agreements entered into by the Principal in relation to personal injury and/or property damage or any other loss sustained by third parties in any way connected to or arising out of work and/or operations of any party in prosecuting the work to be performed under the Agreement.

FURTHERMORE, it is agreed that the Surety shall, but without limiting or reducing the obligations of Surety under this Bond, have no obligation to the Principal, or any other person or entity for any loss suffered by the Principal, or any other person or entity by reason of acts or omissions which are covered by the Principal's general liability insurance, products liability insurance, completed operations insurance or any other insurance.

Upon any failure by the Principal to carry out any or all of the P&A Obligations associated with the Assets identified on Exhibit A to this Bond and the Obligee has presented to the Surety a written notice that the Principal is in default of such P&A Obligations (in each case, the *"Defaulted P&A Obligations"),* and such condition has persisted for thirty (30) days after written notice of such default has been given by certified mail to the Principal and to the Surety at their last known addresses, the Obligee shall then proceed to solicit at least two (2) written bids from generally recognized third party contractors with experience performing plugging, abandonment and decommissioning in the United States Gulf of Mexico for the performance of the Defaulted P&A Obligations and submit such third party bids to the Surety, following receipt of which the Surety shall, within thirty (30) days, either: (1) pay to the Obligee an amount equal to the lesser of such written third party bids, but not exceeding the Penal Sum (reduced, as applicable, as provided for herein), and the obligations associated with this Bond shall then be considered null and void to the extent paid; or (2) commence, or cause to be commenced, the necessary operations to perform the Defaulted P&A Obligations.

If the Surety shall decide, upon default by the Principal, to pay to the Obligee an amount equal to the lesser of the third party bids for the performance of the Defaulted P&A Obligations in accordance with the immediately preceding paragraph hereof, on or before the one hundred twentieth (120th) day following the completion of such Defaulted P&A Obligations, the Obligee shall deliver to Surety a statement (the *"Final Cost Statement" )* of the actual and verifiable costs and expenses actually incurred by Obligee to perform the Defaulted P&A Obligations, along with reasonable documentation in support thereof (including any third party invoices associated with the performance such Defaulted P&A Obligations). If such costs and expenses, in the aggregate (the *"Aggregate Cost Amount "),* exceed the amount of the initial payment made hereunder by the Surety to the Obligee (the *"Surety Payment Amount "),* the Surety shall pay to Obligee, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Aggregate Cost Amount and the Surety Payment Amount. If the Surety Payment Amount exceeds the Aggregate Cost

Amount, Obligee shall pay to the Surety, on or before the thirtieth (30th) day following the date of the Final Cost Statement, an amount equal to the positive difference between the Surety Payment Amount and Aggregate Cost Amount.

**If** the Surety shall decide, upon default by the Principal, to commence, or cause to be commenced, the Defaulted P&A Obligations, the Surety shall continue to perform, or cause the performance of, such obligations until such time as the Defaulted P&A Obligations have been truly and faithfully performed and discharged, thereby reducing the Penal Sum by an amount equal to the actual and verifiable costs and expenses incurred by the Surety to perform, or cause the performance of, the Defaulted P&A Obligations.

In the event the Surety decides, upon default of the Principal, to perform, or cause the performance of any Defaulted P&A Obligations of Principal, then SURETY SHALL FULLY DEFEND, PROTECT, INDEMNIFY, HOLD HARMLESS, AND RENDER WHOLE OBLIGEE, ITS AFFILIATES, AND EACH OF SUCH PERSON'S RESPECTIVE SHAREHOLDERS, MEMBERS, DIRECTORS, EMPLOYEES, OFFICERS, LENDERS, ADVISORS, REPRESENTATIVES, ACCOUNTANTS, ATTORNEYS, CONSULTANTS AND AGENTS (THE, "INDEMNIFIED PARTIES") FROM AND AGAINST EACH AND EVERY CLAIM, DEMAND OR CAUSE OF ACTION, AND ANY LIABILITY, COST, EXPENSE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEYS' FEES), OR CLAIMS WITH RESPECT TO DAMAGE OR LOSS IN CONNECTION THEREWITH, WHICH MAY BE MADE OR ASSERTED BY SURETY, ITS AGENTS, SUCCESSORS OR ASSIGNS, OR BY ANY THIRD PARTY OR PARTIES (INCLUDING, BUT NOT LIMITED TO, GOVERNMENTAL AGENCIES) ON ACCOUNT OF PERSONAL INJURY, DEATH, PROPERTY DAMAGE AND/OR ENVIRONMENTAL DAMAGE ARISING FROM OR IN CONNECTION WITH THE PERFORMANCE OF SUCH DEFAULTED P&A OBLIGATIONS, AND ANY CLAIMS AND/OR DEMANDS ASSOCIATED THEREWITH, CAUSED BY, ARISING OUT OF, OR INCIDENTAL TO THE PAST, PRESENT OR FUTURE CONDITION OR STATE OF REPAIR OF SAID ASSETS, OR THE OWNERSHIP AND USE THEREOF, UNDER THIS BOND, HOWSOEVER OCCURRING, INCLUDING, WITHOUT LIMITATION, WHETHER SUCH CLAIMS, DEMANDS, DAMAGES, LOSSES AND LIABILITIES, WITH OR WITHOUT FAULT, WERE CAUSED BY THE SURETY'S OR THE SURETY'S CONTRACTORS' OR SUBCONTRACTORS' SOLE NEGLIGENCE OR CONTRIBUTORY NEGLIGENCE, AND/OR OBLIGEE CONTRIBUTORY NEGLIGENCE (EXCEPT TO THE EXTENT OF THE GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT OF OBLIGEE), OR IMPOSED ON SAID PARTIES OR OTHERS UNDER ANY THEORY OF STRICT LIABILITY BY OPERATION OF LAW, OR ANY COMBINATION THEREOF, OR ANY OTHER THEORY OF LAW PRIOR TO, AT THE TIME OF, OR SUBSEQUENT TO THE EFFECTIVE DATE HEREOF. SUCH INDEMNIFICATION BY SURETY SHALL NOT BE LIMITED TO THE ORIGINAL OR ANY AMENDED PENAL SUM OF THIS BOND.

Any suit under this Bond must be instituted before the expiration of two (2) years from the date on which a default by the Principal, as detailed herein, falls due or is discovered by the Obligee, whichever is later, and, subject to the two (2) year limitation, the Surety consents to be sued in any court in the State of Texas, hereby irrevocably submitting itself to the jurisdiction of said court. The Surety hereby waives any defenses to liability on this Bond based on an unauthorized Principal signature.

No amendment of or supplement to the terms or provisions of the Purchase Agreement or of the exhibits attached thereto shall release the Principal or the Surety or any of them from their liabilities under this Bond, notice to the Surety of any such amendment or supplement being hereby waived, except to the extent that is herein provided.

No assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, and no delay, neglect or failure of the Obligee to proceed promptly to enforce the Purchase Agreement or to proceed promptly in the premises in case of any default on the part of the Principal shall in any degree relieve the Principal and the Surety or any of them of their obligations under this Bond.

HOWEVER, if upon assignment of the Purchase Agreement or any or all of the Assets by the Principal, its successors or assigns, the Principal shall have the right, but not the obligation, to cause its assignee to post security, in substantially the same form of a bond hereof or other acceptable security in the Obligee's reasonable discretion, including the requirement that the replacement security is issued by a financial institution that is listed in the U.S. Treasury Department's Listing of Approved Sureties (Department Circular 570) with a single bond underwriting limitation of not less than $25,000,000 and an AM Best Rating of at least "A-", in the amount necessary to replace this Bond. If so posted, the Obligee will not unreasonably withhold acceptance of such security in lieu of this Bond and issue an unconditional release of this Bond within thirty (30) days of its acceptance of such other security.

No right of action shall accrue on this Bond to or for the use of any person or corporation other than the Principal, the Obligee, their heirs, executors, administrators or successors.

NOW, THEREFORE, if the said Principal shall faithfully observe and honestly comply with the provisions contained herein and in the Purchase Agreement relating to the P&A Obligations with respect to the Assets, then this obligation shall become null and void and of no effect.

The Principal shall pay all premiums required to maintain this Bond in full force and effect until such time as the requirements for such Bond terminates in accordance with the provisions hereof Surety stipulates and agrees that, regardless of the payment or non-payment by Principal of any premiums owing with respect to this Bond, Surety's obligations under this Bond are continuing obligations and shall not be affected or discharged by any failure by Principal to pay any such premiums.

Written notices sent hereunder shall be sent by certified mail or trackable courier service to the following addresses (unless changed by a notice of change of address):

Noble Energy, Inc.
1001 Noble Energy Way
Houston, Texas 77070
Attention: [                    ]

Fieldwood Energy LLC
2000 W. Sam Houston Parkway
Suite 1200
Houston, Texas 77042
Attention: [                    ]

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT 06183-6014
Attention: Craig Ulmer
Telephone: 860-954-2152

XL Specialty Insurance Company (Surety)
70 Seaview Avenue
Stamford, CT 06902
Attention: Becky Shalhoub
Telephone: 610-968-9099

*[signature pages follow]*

IN WITNESS WHEREOF, the above bound parties have executed this instrument to be effective on April 11, 2018, the name of each corporate party duly signed by its undersigned representative pursuant to authority of its governing body.

**WITNESS:**

_____

_____
Print Name

**PRINCIPAL:**

FIELDWOOD ENERGY, LLC.


By:_____
Name:_____
Title:_____
Date:_____


**WITNESS:**

_____

_____
Print Name

**OBLIGEE**

NOBLE ENERGY, INC.


By:_____
Name:_____
Title:_____
Date:_____

**WITNESS:**

Gina Rodriguez
Print Name

**WITNESS:**

Gina Rodriguez
Print Name

**SURETY:**

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA

By:
Name:   Laura E. Sudduth
Title:      Attorney-In-Fact
Date:      April 5, 2018

**SURETY:**

XL SPECIALTY INSURANCE

By:
Name:   Laura Sudduth
Title:      Attorney-In-Fact
Date:      April 5, 2018

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of _____ _____.



*Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.

**XL REINSURANCE AMERICA INC.**

by: *Gregory C Boal*

Gregory Boal, VICE PRESIDENT

Attest: *Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY



STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER PENNSYLVANIA ASSOCIATION OF NOTARIES

*Rebecca C. Shalhoub*

Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of *April 2018*



*Kevin M Mirsch*

Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND

SB0042

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL SPECIALTY INSURANCE COMPANY, a corporation of the State of Delaware, do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Companies, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole of the original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporations, at the City of Exton, this ___ day of _____ _____.



Kevin M. Mirsch, ASSISTANT SECRETARY

IN WITNESS WHEREOF, XL REINSURANCE AMERICA INC. has caused its corporate seal to be hereunto affixed, and these presents to be signed by its duly authorized officers this 2nd day of April, 2018.

**XL REINSURANCE AMERICA INC.**

by: Gregory Boal, VICE PRESIDENT

Attest: Kevin M. Mirsch, ASSISTANT SECRETARY

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

On this 2nd day of April, 2018, before me personally came Gregory Boal to me known, who, being duly sworn, did depose and say: that he is Vice President of XL REINSURANCE AMERICA INC., described in and which executed the above instrument; that he knows the seal of said Corporation; that the seal affixed to the aforesaid instrument is such corporate seal and was affixed thereto by order and authority of the Board of Directors of said Corporation, and that he executed the said instrument by like order.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Rebecca C. Shalhoub, Notary Public
Uwchlan Twp., Chester County
My Commission Expires April 28, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Rebecca C. Shalhoub, NOTARY PUBLIC

STATE OF PENNSYLVANIA
COUNTY OF CHESTER

I, Kevin M. Mirsch, Assistant Secretary of XL REINSURANCE AMERICA INC. a corporation of the State of New York, do hereby certify that the person who executed this Power of Attorney, with the rights, respectively of XL REINSURANCE AMERICA INC., do hereby certify that the above and forgoing is a full, true and correct copy of a Power of Attorney issued by said Corporation, and that I have compared same with the original and that it is a correct transcript therefrom and of the whole original and that the said Power of Attorney is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said Corporation, at the City of Exton, this 5th day of April 2018

Kevin M. Mirsch, ASSISTANT SECRETARY

This Power of Attorney may not be used to execute any bond with an inception date after April 2, 2023
SB0041

THIS DOCUMENT IS PRINTED ON A BLUE BACKGROUND

SB0042

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

**TRAVELERS**

## POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.        232560

Certificate No.  007341763

**KNOW ALL MEN BY THESE PRESENTS**: That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sandra R. Parker, Melissa Haddick, Gina Rodriguez, Tannis Mattson, Terri L. Morrison, Mary Ann Garcia, Mario Arzamendi, and Laura E. Sudduth

of the City of _____Houston_____, State of _____Texas_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF**, the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____24th_____ day of _____August_____, _____2017_____.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____24th_____ day of _____August_____, _____2017_____, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company,  Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**In Witness Whereof,** I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED**, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED**, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED**, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _5th_ day of _April_, 20_18_.

*Kevin E. Hughes, Assistant Secretary*

        

To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

Exhibit "A"

Assets

Exhibit "B"

Rider No.

To be attached and form part of Bond No._____ issued by _____, (as Surety), effective _____

| | |
|---|---|
| In the amount of: | $_____ |
| On behalf of: | Fieldwood Energy LLC (as Principal) |
| In favor of: | Noble Energy, Inc. (as Obligee) |

In consideration of the premium charged for the above bond, it is mutually understood and agreed by the Principal, Surety, and Obligee that:

**The Bond amount shall be adjusted as follows:**

**This Bond amount shall be decreased by $_____**

**Total Revised Bond Amount is Now:**

_____and N0/100 Dollars ($_____)

All other terms, limitations, and conditions of said bond except as herein expressly modified shall remain unchanged.

This rider shall be effective as of the_____day of_____ 201
Signed, sealed and dated the____day of_____ 201

Fieldwood Energy LLC

By:_____
Name:_____
Title:_____

Travelers Casualty and Surety Company of America

By:_____
Name:_____
Title:_____

XL Specialty Insurance Company

By:_____
Name:_____
Title:_____

Acknowledged By: Noble Energy, Inc.

By:_____
Name:_____
Title:_____

# Electronic Proof of Claim_SVM@B28824[[CSA# 7711#CF]]

Final Audit Report                                                2020-11-21

| | |
|---|---|
| Created: | 2020-11-21 |
| By: | Prime Clerk (epoc@primeclerk.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAwbaRz1EBH6cbJ4fLHdd1D_hh0sJR-Rqy |

## "Electronic Proof of Claim_SVM@B28824[[CSA#7711#CF]]" History

Web Form created by Prime Clerk (epoc@primeclerk.com)
2020-11-21 - 1:57:22 AM GMT

Brandon K. Bains (lmurphy@l-llp.com) uploaded the following supporting documents:
    Attachment
2020-11-21 - 2:08:02 AM GMT

Web Form filled in by Brandon K. Bains (lmurphy@l-llp.com)
2020-11-21 - 2:08:02 AM GMT- IP address: 47.187.54.206

(User email address provided through API User-Agent: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/86.0.4240.198 Safari/537.36)
2020-11-21 - 2:08:05 AM GMT- IP address: 47.187.54.206

Agreement completed.
2020-11-21 - 2:08:05 AM GMT