**Exhibit B**

**Blackline of Revised Proposed Disclosure Statement Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC**, *et al.*, | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | **Re: Docket 724 & 1117** |

**ORDER (I) APPROVING DISCLOSURE STATEMENT AND FORM AND MANNER
OF NOTICE OF DISCLOSURE STATEMENT HEARING; (II) ESTABLISHING
SOLICITATION AND VOTING PROCEDURES; (III) SCHEDULING
CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION
PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN; (V) APPROVING
NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING
PROCEDURES FOR OBJECTIONS TO THE ASSIGNMENT AND TRANSFER OF
PROPERTY OF THE ESTATE;** ~~(VII) APPROVING BID SUBMISSION DEADLINE
AND PROCEDURES FOR SUBMISSION OF HIGHER OR BETTER BIDS; AND~~
**AND (VIII) GRANTING RELATED RELIEF**

Upon the motion, dated January 1, 2021 (the "**Motion**")[2] of Fieldwood Energy LLC and its

affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**Debtors**"), for an order pursuant to sections 105, 365, 1125, 1126, 1128, and

1145 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3001, 3003,

3016, 3017, 3018, 3020, 6004, and 9006 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), Rules 2002-1 and 3016-1 of the Local Bankruptcy Rules of the

United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**") and the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).   The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Procedures for Complex Chapter 11 Cases in the Southern District of Texas (effective as of August 7, 2020, the "**Complex Chapter 11 Procedures**"), the Debtors request entry of an order:

i.      approving the form and manner of notice and hearing to consider the Disclosure Statement;

ii.     approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

iii.    scheduling a hearing (the "**Confirmation Hearing**") to consider confirmation of the Plan;

iv.    establishing ~~February 3~~March 24, 2021 as the record date for the purpose of determining which holders of Claims and Interests are entitled to vote on the Plan and/or receive the applicable notice(s) relating to solicitation and confirmation (the "**Voting Record Date**");

v.     approving Solicitation Procedures with respect to the Plan, including the forms of Ballots and Notice of Non-Voting Status and tabulation procedures;

vi.    establishing the deadline (the "**Plan Objection Deadline**") to object to confirmation of the Plan;

vii.   approving the procedures for assumption of executory contracts and unexpired leases;

viii.  approving procedures for objections to the assignment and transfer of property of the estate; and

~~ix. approving the Bid Deadline and procedures for submission of higher or better bids; and~~

ix.    ~~x.~~ granting related relief.

all as more fully set forth in the motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) (A) ~~Cole Schotz P.C., 301 Commerce~~Pachulski Stang

Siehl & Jones LLP, 440 Louisiana Street, Suite ~~1700, Fort Worth, Texas 76102~~900, Houston, TX 77002 (Attn: Michael D. Warner ~~and Benjamin L. Wallen~~), and (B) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, ~~Frank A. Merola, Jonathan D. Canfield,~~ Kenneth Pasquale, and Sherry J. Millman), Counsel to the Creditors' Committee; (iii) Vinson & Elkins LLP, Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201 (Attn: William L. Wallander ~~, Esq.~~ and Bradley R. Foxman ~~, Esq.~~), as counsel to Goldman Sachs Bank USA, the FLFO Administrative Agent; (iv) (A) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017 (Attn: Damian S. Schaible ~~, Esq.~~ and Natasha Tsiouris ~~, Esq.~~) and (B) Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, TX 77010 (Attn: Charles A. Beckham Jr. ~~, Esq.~~ and Martha Wyrick ~~, Esq.~~), as counsel to the Ad Hoc Group of Secured Lenders; (v) Shipman & Goodwin LLP, ~~400 Park Ave, 5th Floor, New York, NY 10022 (Attn:~~ One Constitution Plaza, Hartford, Connecticut 06103 (Attn: Kathleen M. Lamanna and Nathan Plotkin ~~, Esq.~~), as counsel to Cantor Fitzgerald Securities, the FLTL Administrative Agent; (vi) Holland & Knight LLP, 150 N. Riverside Plaza, Chicago, IL 60606 (Attn: Joshua Spencer ~~, Esq.~~ and Anastasia Sotiropolous ~~, Esq.~~), as counsel to Cortland Capital Market Services LLC, the SLTL Administrative Agent; (vii) Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002 (Attn: Robin Russell and Catherine Diktaban), as counsel to Apache Corporation; (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the Southern District of Texas; (x) the Securities and Exchange Commission; (xi) the registered and beneficial holders of Interests (as defined in the Plan) in the Debtors; (xii) any other known holders of Claims and Interests against the Debtors, including but not limited to, the Debtors' predecessors-in-interest, co-working interest owners, and surety providers, (xiii) the Bureau of Ocean Energy Management, the Bureau of Safety and

Environmental Enforcement, the Department of the Interior, and the Department of Justice; and (xiv) any other party entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"); and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion (the "**Disclosure Statement Hearing**"); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND AND DETERMINED THAT:**

A.        **Notice of the Disclosure Statement Hearing and Disclosure Statement Objection Deadline**

1.        The procedures described in the Motion pursuant to which the Debtors provided notice to parties of the time, date, and place of the Disclosure Statement Hearing and the Disclosure Statement Objection Deadline, including the form and content of the Disclosure Statement Notice, provided due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002 and 3017 and Local Rules 2002-1.  No further notice is required.

2.        The following dates and deadlines are hereby established (subject to modification as necessary) with respect to the Disclosure Statement, solicitation of the Plan, voting on the Plan, ~~Bid Deadline,~~ and confirmation of the Plan:

| SOLICITATION AND CONFIRMATION TIMETABLE | |
|---|---|
| Voting Record Date | ~~February 3~~March 24, **2021** |
| Solicitation Date | ~~Four~~Three (~~4~~3) **Business Days after entry of Proposed Order**, or as soon as reasonably |

| SOLICITATION AND CONFIRMATION TIMETABLE ||
|---|---|
| | practicable thereafter |
| Rule 3018(a) Motion Deadline | ~~February 26~~April 13, 2021 at 4:00 p.m. (prevailing Central Time) |
| Request for Estimation Deadline | ~~February 26~~April 13, 2021 at 4:00 p.m. (prevailing Central Time) |
| ~~Bid~~Plan Supplement Filing Deadline | ~~February 26~~April 16, 2021 at 4:00 p.m. (prevailing Central Time) |
| ~~Plan Supplement Filing~~Voting Deadline | ~~March 2~~April 26, 2021 at 4:00 p.m. (prevailing Central Time) |
| ~~Voting~~Plan Objection Deadline | ~~March 9~~April 26, 2021 at 4:00 p.m. (prevailing Central Time) |
| ~~Plan Objection~~Ballot Certification Deadline | ~~March 9~~April 28, 2021 at 4:00 p.m. (prevailing Central Time) |
| ~~Ballot Certification Deadline~~ | ~~March 11, 2021 at 4:00 p.m. (prevailing Central Time)~~ |
| Deadline to File Confirmation Brief and Reply to Plan Objection(s) | ~~March 15~~May 3, 2021 |
| Confirmation Hearing | ~~March 17~~May 4, 2021, subject to the Court's availability |
| Confirmation Outside Date | May 10, 2021 |

~~B.~~

**B.**        ~~C.~~The Disclosure Statement

3.        The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and complies with Bankruptcy Rule 3016(c). No further information is necessary.

**C.**        ~~D.~~Balloting and Voting Procedures

4.        The procedures set forth in the Motion for the solicitation and tabulation of votes to accept or reject the Plan provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

*Ballots*

5.    The ballots, substantially in the form annexed hereto as **Exhibits 2, 3, ~~and~~ 4 , 5, 6, and 7** (the "**Ballots**"), including all voting instructions provided therein, are consistent with Official Bankruptcy Form No. B 314, address the particular needs of these chapter 11 cases, and provide adequate information and instructions for each party entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

*Parties Entitled to Vote*

6.    Pursuant to the Plan, holders of Claims and Interests in Class 1 (Other Secured Claims), Class 3 (FLFO Secured Claims), Class 4 (FLTL ~~Secured~~ Claims), Class 5 (SLTL Claims), Class 6A (Unsecured Trade Claims), and Class 6B (General Unsecured Claims) are Impaired and are entitled to receive distributions under the Plan.  Accordingly, holders of Allowed Claims and Interests in such Classes are entitled to vote on account of such Claims and Interests (to the extent set forth herein).

*Parties Not Entitled to Vote*

7.    Pursuant to the Plan, holders of Claims and Interests in Class ~~1 (Other Secured Claims), Class~~ 2 (Priority Non-Tax ~~Claims), Class 3 (FLFO~~ Claims), Class 7 (Intercompany Claims), and Class 9 (Intercompany Interests) are Unimpaired and, accordingly, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan and are not entitled to vote on account of such Claims and Interests.

8.    Pursuant to the Plan, holders of Claims in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) are impaired and will receive no recovery and, accordingly, pursuant to section 1126(g) of the Bankruptcy Code, are conclusively deemed to reject the Plan and are not entitled to vote on account of such Claims and Interests.

*Notice of Non-Voting Status*

9.      The Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 58**, complies with the Bankruptcy Code, applicable Bankruptcy Rules, and applicable Local Rules and Complex Chapter 11 Procedures and, together with the Confirmation Hearing Notice, provide adequate notice to holders of Claims in Class ~~1 (Other Secured Claims), Class~~ 2 (Priority Non-Tax Claims), ~~and Class 3 (FLFO Claims)~~ which will receive full recovery under the Plan, and to holders of Claims in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests), which are expected to receive no recovery under the Plan, of their non-voting status.  No further notice is necessary.

10.     With respect to Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests), no notice is required in connection with solicitation of the Plan because such Claims and Interests are held by the Debtors or the Debtors' affiliates and are Unimpaired by the Plan.

**D.** ~~**E.**~~ **Solicitation and Solicitation Procedures**

11.     The proposed distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and constitute sufficient notice to all interested parties of the Record Date, Voting Deadline, Plan Objection Deadline, Confirmation Hearing, and other related matters.

12.     The period proposed by the Debtors in the Motion during which the Debtors will solicit votes to accept the Plan is a reasonable and sufficient period of time for holders of Claims in the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and timely return Ballots evidencing such decision.

13.     The procedures set forth in the Motion for tabulating Ballots are fair and appropriate.

**E.** ~~F.~~ **Notice of Confirmation Hearing and Plan Objection Deadline**

14.    The procedures set forth in the Motion regarding notice to all parties of the Confirmation Hearing and the Plan Objection Deadline, including the form and content of the Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017, and 3020.  No further notice is required.

~~G. Approval of the Bid Deadline and Procedures for Submissions of Higher or Better Bids~~

~~15. The procedures set forth in the Motion to submit a bid to acquire either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets, including the establishment of the Bid Deadline and the service and publication of the Notice of Procedures to Submit Bids provide due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002, 3017, and 3020.  No further notice is required.~~

~~16. The procedures for the submission of bids are reasonable under the Bankruptcy Code and considering the circumstances of the case are based on the business judgment of the Debtors and in the best interest of the Debtors', their estates, and their creditors.~~

~~17. The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.~~

**IT IS HEREBY ORDERED THAT:**

15.    ~~18.~~ The Motion is granted as set forth herein.

16.    ~~19.~~ The Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is **APPROVED**.

17.    ~~20.~~ The Disclosure Statement (including all applicable exhibits thereto) provides sufficient notice of the proposed injunction, exculpation, and release provisions

contained in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan, in accordance with Bankruptcy Rule 3016(c).

18.    ~~21.~~ The form and manner of service of the Disclosure Statement Notice complies with all applicable Bankruptcy Rules and Local Rules and no further notice is necessary.

19.    ~~22.~~ All objections, if any, to the Disclosure Statement, the Motion, or any of the procedures or exhibits referenced therein that have not been withdrawn or resolved as provided for in the record of the Disclosure Statement Hearing are overruled.

**F.**    ~~H.~~ **Solicitation Procedures**

*Parties Entitled to Vote*

20.    ~~23.~~ Pursuant to the Plan, the following classes are Impaired but entitled to receive distributions under the Plan and, thus, may vote to accept or reject the Plan, subject to certain exceptions discussed below (the "**Voting Classes**"):

| Class | Description |
|-------|-------------|
| Class 1 | Other Secured Claims |
| Class 3 | FLFO Claims |
| Class 4 | FLTL ~~Secured~~ Claims |
| Class 5 | SLTL Claims |
| Class 6A | Unsecured Trade Claims |
| Class 6B | General Unsecured Claims |

21.    ~~24.~~ A creditor or interest holder who holds a Claim in a Voting Class is nonetheless not entitled to vote to the extent that:

(a)     as of the Voting Record Date (as defined below), the outstanding amount of such creditor's Claim is zero ($0.00);

(b)     as of the Voting Record Date, such creditor's Claim or interest holder's Interest has been disallowed, expunged, disqualified or suspended;

(c)     such creditor has not timely filed a proof of claim in accordance with the Bar Date Order as of the Voting Record Date and the Debtors have not scheduled such creditor's Claim or otherwise scheduled such creditor's Claim in an undetermined amount or as contingent, unliquidated, or disputed; or

(d)     such creditor's Claim is subject to an objection or request for estimation ~~as of the Voting Record Date~~, subject to the procedures set forth below.

***Parties Not Entitled to Vote***

22.    ~~25.~~ Holders of Claims in ~~Class 1 (Other Secured Claims),~~ Class 2 (Priority Non-Tax ~~Claims), and Class 3 (FLFO~~ Claims) receive full recovery of their priority or secured Claims under the Plan.  Holders of Claims and Interests in Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) will have their Claims and Interests adjusted, reinstated, cancelled, or discharged in the Debtors' or Post-Effective Debtors' discretion (together with Classes ~~1,~~ 2, ~~3,~~ 7, and 9, the "**Unimpaired Classes**").  Pursuant to the Plan, the Unimpaired Classes are conclusively presumed to accept the Plan and, accordingly, are not entitled to vote on the Plan.

23.    ~~26.~~ Holders of Claims and Interests in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) will receive no recovery under the Plan.  Such holders are deemed to reject the Plan and are not entitled to vote on the Plan.

24.    ~~27.~~ Holders of Claims or Interests in the following classes constitute the Non-Voting Classes:

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| ~~Class 1~~ | ~~Other Secured Claims~~ | ~~Unimpaired~~ | ~~No (Presumed to accept)~~ |

| Class | Description | Impairment | Acceptance / Rejection |
|-------|-------------|------------|------------------------|
| Class 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to accept) |
| ~~Class 3~~ | ~~FLFO Claims~~ | ~~Unimpaired~~ | ~~No (Presumed to accept)~~ |
| Class 7 | Intercompany Claims | Unimpaired | No (Presumed to accept) |
| Class 8 | Subordinated Securities Claims | Impaired | No (Deemed to reject) |
| Class 9 | Intercompany Interests | Unimpaired | No (Presumed to accept) |
| Class 10 | Existing Equity Interests | Impaired | No (Deemed to reject) |

### *The Voting Record Date*

25. ~~28.~~ The Voting Record Date shall be set as ~~February 3~~March 24, 2021. Only holders of Claims and Interests in the Voting Classes as of the Voting Record Date, who are otherwise eligible to vote shall be entitled to vote to accept or reject the Plan.

26. ~~29.~~ With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is otherwise entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (i) all actions necessary to transfer such Claim are completed by the Voting Record Date or (ii) the transferee files, by the Voting Record Date, (a) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote or election on the Plan made by the holder of such Claim as of the Voting Record Date.

***Temporary Allowance/Disallowance of Claims***

27. **Class 1 (Other Secured Claims)**. The amount of each Other Secured Claim for voting purposes only shall be established by reference to the following hierarchy:

(a) If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Bankruptcy Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Bankruptcy Court;

(b) If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

(c) If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed secured amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date, *provided* that, if the amount set forth on a timely-submitted proof of claim is wholly unliquidated, contingent, and/or disputed, then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00; and

(d) If neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed secured amount set forth on the Debtors' Schedules, *provided* that, if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

28. **Class 3 (FLFO Claims)**. The amount of each FLFO Claim for voting purposes only is established by reference to the list of participant lenders to the Prepetition FLFO Credit Agreement and those participant lenders' corresponding FLFO Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the Prepetition FLFO Administrative Agent, which shall be provided by the Prepetition FLFO Administrative Agent to the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

29. ~~30.~~ **Class 4 (FLTL ~~Secured~~ Claims)**. The amount of each FLTL ~~Secured~~ Claim for voting purposes only is established by reference to the list of participant lenders to the

Prepetition FLTL Credit Agreement and those participant lenders' corresponding FLTL Secured

Claim amounts as of the Voting Record Date as reflected on the loan register maintained by the

Prepetition FLTL Administrative Agent, which shall be provided by the Prepetition FLTL

Administrative Agent to the Solicitation Agent by no later than one (1)10:00 a.m. (prevailing

Eastern Time) on the second Business Day following the Voting Record Date, in a form

acceptable to the Solicitation Agent.

30.      31. **Class 5 (SLTL Claims)**.  The amount of each SLTL Claim for voting

purposes only is established by reference to the list of participant lenders to the Prepetition

SLTL Credit Agreement and those participant lenders' corresponding SLTL Claim amounts as

of the Voting Record Date as reflected on the loan register maintained by the Prepetition SLTL

Administrative Agent, which shall be provided by the Prepetition SLTL Administrative Agent to

the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

31.      32. **Class 6A (Unsecured Trade Claims) and Class 6B (General**

**Unsecured Claims)**.  The amount of each Unsecured Trade Claim and General Unsecured

Claim, for voting purposes only, shall be established pursuant to the following hierarchy:

> (a)     If a Claim has been estimated or otherwise Allowed for voting purposes by order of this Bankruptcy Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by this Bankruptcy Court;

> (b)     If (a) does not apply, but the Claim has been estimated or otherwise Allowed for voting purposes pursuant to a stipulation, settlement, or other agreement reached between the Debtors and the holder of the Claim (whether such stipulation, settlement, or agreement is filed or not), such Claim is temporarily Allowed in the amount set forth in the stipulation, settlement, or other agreement;

> (c)     If neither (a) nor (b) applies, then in the liquidated, non-contingent, and undisputed amount set forth on a proof of claim timely filed in accordance with the Bar Date Order as of the Voting Record Date, *provided* that, if the amount set forth on a timely-submitted proof of claim is wholly

unliquidated, contingent, and/or disputed, then the Claim shall be temporarily Allowed for voting purposes in the amount of $1.00; and

(d)     If neither (a), (b), nor (c) applies, then in the liquidated, non-contingent, and undisputed amount set forth on the Debtors' Schedules, *provided* that, if the Claim appearing on the Debtors' Schedules is unliquidated, contingent, disputed, or in a $0.00 amount, then the Claim shall be disallowed for voting purposes.

~~33. The procedures set forth in the Motion regarding notice to all parties of the Confirmation Hearing and the Plan Objection Deadline, including the form and content of the Confirmation Hearing Notice, provide due, proper, and adequate notice, comport with due process and comply with Bankruptcy Rules 2002, 3017 and 3020.  No further notice is required.~~

32.     If the Debtors have filed an objection to, or a request for estimation of, a Claim on or before April 13, 2021, such Claim shall be temporarily disallowed for voting purposes, except as ordered by the Court before the Voting Deadline; *provided, however*, that, if the Debtors' objection seeks only to reclassify or reduce the Allowed amount of such Claim, the such Claim is temporarily Allowed for voting purposes in the reduced amount and/or as reclassified (as applicable), except as may be ordered by this Court before, or concurrent with, entry of an order confirming the Plan.

33.     ~~34.~~ If any creditor seeks to challenge the allowance of its Claim for voting purposes, such creditor shall file with this Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes in a different amount (a "**Rule 3018(a) Motion**").  Any Rule 3018(a) Motion must be filed with the Court and served on the Notice Parties so as to be actually received not later than ~~4:00 p.m. (prevailing Central Time) February 26~~ April 13, 2021.

34.     ~~35.~~ Upon the filing of any such motion, such creditor's Ballot shall be counted in accordance with the above-designated guidelines, unless temporarily Allowed in a

different amount by an order of this Court entered before, or concurrent with, entry of an order confirming the Plan.

### *Solicitation Packages*

35. ~~36.~~ The Solicitation Packages are APPROVED.

36. ~~37.~~ The Debtors shall mail the Solicitation Packages no later than ~~four~~three (~~4~~3) ~~b~~Business ~~d~~Days following the date of entry of the this Order, or as soon as reasonably practicable thereafter (the "**Solicitation Date**") to (i) the U.S. Trustee and (ii) holders of Claims in Voting Classes entitled to vote on the Plan as of the Voting Record Date as required by Bankruptcy Rule 3017(d).

37. ~~38.~~ Solicitation Packages shall contain copies of:

(a)     the Confirmation Hearing Notice;

(b)     a USB flash drive containing the (i) Disclosure Statement, which shall include the Plan as an attachment (except as provided below) and (ii) the Proposed Order, as entered by the Court and without attachments; and

(c)     if the recipient is entitled to vote on the Plan, a Ballot customized for such holder in the form described below, and a postage-prepaid return envelope.

38. ~~39.~~ If the recipient is a holder of a Claim or Interest in a Non-Voting Class and, therefore, not entitled to vote on the Plan (as set forth herein), then they will be served the Confirmation Hearing Notice and the Notice of Non-Voting Status as defined and described more fully in the Motion only.

39. ~~40.~~ Any creditor for which service by USB poses a hardship may request an additional copy of the Disclosure Statement (and attachments) in paper format by contacting Prime Clerk by email to fieldwoodballots@primeclerk.com, or by telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international).  Upon receipt of a telephonic or written

request, the Debtors will provide such creditor with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor within five (5) business days thereafter.  Alternatively, holders in Class 1, Class 3, Class 4, Class 5, Class 6A, and Class 6B may submit their Ballots via Prime Clerk's online E-Balloting Portal by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" section of the website, and following the instructions set forth on the E-Ballot.

40.   41.  The Debtors shall not be required to send Solicitation Packages to creditors who have Claims that have already been paid in full; *provided*, *however*, that if any such creditor would be entitled to receive a Solicitation Package for any other reason, then the Debtors shall send such creditor a Solicitation Package in accordance with the procedures set forth herein.

41.   42.  With respect to addresses from which Solicitation Packages are returned as undeliverable by the United States Postal Service, the Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Plan to those entities listed at such addresses, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan to such entities will not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not constitute a violation of Bankruptcy Rule 3017.  Furthermore, for purposes of serving the Solicitation Packages, the Debtors are authorized to rely on the address information for Voting and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date.  The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable solicitation materials (including ballots).

*Notice of Non-Voting Status*

42. ~~43.~~ The Notice of Non-Voting Status is APPROVED.

43. ~~44.~~ To the holders of Claims in Class ~~1 (Other Secured Claims), Class~~ 2 (Priority Non-Tax ~~Claims), and Class 3 (FLFO~~ Claims), the Debtors shall mail a Confirmation Hearing Notice and a Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 5~~8~~**, in lieu of a Solicitation Package.

44. ~~45.~~ The Debtors shall also mail the Confirmation Hearing Notice and Notice of Non-Voting Status to the holders of Claims and Interests in Class 8 (Subordinated Securities Claims) and Class 10 (Existing Equity Interests) in lieu of the Solicitation Package.

45. ~~46.~~ The requirement to serve a Confirmation Hearing Notice, Notice of Non-Voting Status, or any other type of notice in connection with solicitation of the Plan on holders of Claims or Interests of Class 7 (Intercompany Claims) and Class 9 (Intercompany Interests) is waived.

*Ballots*

46. ~~47.~~ The Ballots are **APPROVED**.

47. ~~48.~~ The Voting Deadline shall be ~~March 8~~April 26, 2021 at 4:00 p.m. (prevailing Central Time).

48. ~~49.~~ All Ballots must be properly executed, completed, and delivered to the Voting Agent (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight courier; (iii) by hand delivery, or (iv) via Prime Clerk's online balloting portal, so that they are actually received by the Voting Agent no later than the Voting Deadline.

*Tabulation Procedures*

49. ~~50.~~ The following tabulation procedures are **APPROVED**.

(a)    Whenever a holder of Claims casts more than one Ballot voting the same Claim(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline shall be deemed to reflect such creditor's or equity security holder's intent and thus, supersede any prior Ballot. Following the Voting Deadline, no Ballot may be changed or revoked absent further order of the Court.

(b)    Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(c)    Whenever a holder of Claims casts a Ballot that is properly completed, executed, and timely returned to the Voting Agent but indicates both an acceptance and a rejection of the Plan, the Ballot will not be counted.

(d)    A holder of Claims shall be deemed to have voted the full amount of its Claim in each class and shall not be entitled to split its vote within a particular class or between more than one Debtor. Any such holder's Ballot that partially accepts and partially rejects the Plan, between the same or multiple Debtors, will not be counted.

(e)    A holder of Claims against more than one Debtor that casts a single Ballot shall have its votes counted separately with respect to each such Debtor.

(f)    Whenever a holder of Claims casts multiple Ballots received by the Voting Agent on the same day but which are voted inconsistently, such Ballots will not be counted.

(g)    A holder of claims in more than one Class must use separate Ballots for each class of claims.

(h)    The following Ballots shall not be counted:

    i.    Any Ballot received after the Voting Deadline, unless the Debtors, shall have granted an extension of the Voting Deadline in writing with respect to such Ballot;

    ii.    Any Ballot that is illegible or contains insufficient information to permit the identification of the voting party;

    iii.    Any Ballot cast by a person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

iv.     Any Ballot cast by a person or entity that is not entitled to vote, even if such individual or entity holds a Claim or Interest in a Voting Class;

v.      Any unsigned Ballot, provided that Ballots submitted by E-Ballot will be deemed to contain a legal, valid signature;

vi.     Any Ballot for which the Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.    Any Ballot transmitted to the Voting Agent by e-mail or facsimile or other means not specifically approved herein.

(i)     The Debtors, unless subject to a contrary order of the Court, may waive any defects or irregularities as to any particular irregular ballot at any time, either before or after the close of voting.

50.     ~~51.~~ Each holder of Claims that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim therefor.

51.     ~~52.~~ The Voting Agent is authorized, but not required, to contact parties who submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies.  Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determines.  Neither the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification.  Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated.

52.     ~~53.~~ The Debtors and/or their Voting Agent, as applicable, are authorized to determine all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawals of Ballots.

53. ~~54.~~ The Debtors are authorized to reject any and all Ballots submitted by any of their respective creditors not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, as applicable, be unlawful.

54. ~~55.~~ The Debtors are further authorized to reserve their respective rights to waive any defects or irregularities or conditions of delivery as to any particular Ballot by any of their Claim holders.  The interpretation (including the Ballot and the respective instructions thereto) by the applicable Debtor in accordance with the foregoing sentence will be final and binding on all parties.

55. ~~56.~~ The Debtors or their Voting Agent shall file the Ballot Certification on or before ~~March 11~~April 28, 2021.

**G.** ~~I.~~ **Approval of Notices to Contract and Lease Counterparties**

56. ~~57.~~ The procedures set forth in the Motion regarding notice to all parties of the assumption of the applicable Debtors' executory contracts and unexpired leases, including the form and content of the Confirmation Hearing Notice, are **APPROVED**.

**H.** ~~J.~~ **Plan Supplement**

57. ~~58.~~ The Debtors are authorized to file the Plan Supplement with the Bankruptcy Court no later than ~~March 2~~April 16, 2021 at 4:00 p.m. (prevailing Central Time) (the "**Plan Supplement Filing Deadline**").

**I.** ~~K.~~ **The Confirmation Hearing**

58. ~~59.~~ The Confirmation Hearing shall be held on ~~March 17~~May 4, 2021, subject to the Court's availability; *provided, however*, that the Confirmation Hearing may be adjourned or continued from time to time by the Court or the Debtors without further notice

other than adjournments announced in open court or as indicated in any notice of agenda or matters scheduled for hearing filed by the Debtors with the Court.

**J.** ~~L.~~ **Objection Procedures**

59. ~~60.~~ The deadline to object or respond to confirmation of the Plan shall be ~~March 9~~ April 26, 2021 at 4:00 p.m. (prevailing Central Time) (the "**Plan Objection Deadline**") and the right of parties to object before the Plan Objection Deadline is hereby reserved.

60. ~~61.~~ Objections and responses, if any, to confirmation of the Plan, must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth in the name of the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; the basis for the objection, and the specific grounds therefor; and (iv) be filed with the Court.

61. ~~62.~~ Registered users of this Court's case filing system must electronically file their objections and responses on or before the Plan Objection Deadline. All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas, 77002, on or before the Plan Objection Deadline.

62. ~~63.~~ Pursuant to Bankruptcy Rule 3020(b), if no objection is timely filed, this Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

63. ~~64.~~ Objections to confirmation of the Plan that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

64. 65. The Debtors and any parties in interest are authorized to file and serve replies or an omnibus reply to any such objections along with a brief in support of confirmation of the Plan (the "**Confirmation Brief**") either separately or in a single, consolidated document on or before ~~March 15~~May 3, 2021.

**K.** ~~M.~~ **Confirmation Hearing Notice**

65. 66. The Confirmation Hearing Notice substantially in the form attached hereto as **Exhibit 1** is APPROVED.

66. 67. The form and proposed manner of service of the Confirmation Hearing Notice comply with all applicable Bankruptcy Rules and Local Rules, and no further notice is necessary.

67. 68. The Debtors are authorized, in their discretion, to give supplemental publication notice of the Confirmation Hearing in one or more local or foreign newspapers, trade journals, or similar publications, as soon as reasonably practicable following entry of the Proposed Order.

**L.** ~~N.~~ **Procedures for Objections to the Assignment and Transfer of Property of the Estate**

68. 69. The procedures for asserting a Credit Bid Consent Rights Objection, a Credit Bid Preferential Rights Objection, a Merger Vesting Objection, or a Merger Rights Objection, as detailed in the Motion and incorporated herein by reference as if fully set forth in this Order, are **APPROVED**.

69. 70. The Debtors intend to assign or transfer to the Credit Bid Purchaser, pursuant to the Credit Bid Purchase Agreement and the Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including ~~all~~ fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses,

franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Credit Bid Consent Rights (as defined in the Plan) and Credit Bid Preferential Purchase Rights (as defined in the Plan) (other than the Credit Bid Permitted Encumbrances (as defined in the Plan) except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)).  If any party objects to such assignment or transfer, including any objection based on (a) any Credit Bid Consent Rights; or (b) any Credit Bid Preferential Purchase Rights; then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Credit Bid Consent Rights, an "**Credit Bid Consent Rights Objection**", and if in respect of Credit Bid Preferential Purchase Rights, a "**Credit Bid Preferential Rights Objection**"), no later than the Plan Objection Deadline or an objection deadline set forth in a sale motion following a Toggle Date.

70.  71.  Any person failing to timely file a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement or the related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), and from asserting any Credit Bid Consent Rights and/or Credit

Bid Preferential Purchase Right with respect to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which will vest free and clear of all Liens)), regardless of whether such consent must be in writing in connection with the assignment of any of the Credit Bid Acquired Interests or assumption of any of the Credit Bid Assumed Liabilities.

71. 72. If any person files a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief or any reply deadline set forth in a sale motion. For the avoidance of doubt, the Debtors may include any responses to any Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objections in the Confirmation Brief. Upon the filing of such response to such Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing in this Order or the Motion shall be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such

Credit Bid Consent Rights Objections or Credit Bid Preferential Rights Objections, and all such rights of the Debtors are expressly preserved.

72. ~~73.~~ The Debtors will cause to be vested in FWE I and FWE III pursuant to the Plan of Merger and Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including ~~all~~ fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all ~~liens, claims, interests, and encumbrances, including~~ the Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights (in each case, as defined ~~below~~in the Plan).  Subject to approval by the Bankruptcy Court, if any party objects to such ~~assignment~~treatment in connection with the Plan of Merger, including any objection based on (a) any Plan of Merger Consent Rights~~;~~, or (b) any Plan of Merger Preferential Purchase Rights~~;~~, then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Plan of Merger Consent Rights, a "**Merger Vesting Objection**", and if in respect of Plan of Merger Preferential Purchase Rights, a "**Merger Rights Objection**"), no later than the Plan Objection Deadline.

73. ~~74.~~ Any person failing to timely file a Merger Vesting Objection or Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the Plan of Merger or the related provisions of the Plan, free and clear of all ~~liens, claims, interests, and encumbrances, including~~ Plan of Merger

Consent Rights and/or Plan of Merger Preferential Purchase Rights and from asserting any Plan of Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the Plan of Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all ~~liens, claims, interests, and encumbrances, including~~ Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the Plan of Merger.

74. ~~75.~~ If any person files a Merger Vesting Objection or Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Merger Vesting Objection or Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief.  For the avoidance of doubt, the Debtors may include any responses to any Merger Vesting Objections or Merger Rights Objections in the Confirmation Brief.  Upon the filing of such response to such Merger Vesting Objections or Merger Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing in this Order or the Motion shall be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Merger Vesting Objections and Merger Rights Objections, and all such rights of the Debtors are expressly preserved.

75. The Debtors also may cause to be vested in one or more newly formed entities, pursuant to a divisional merger (an "**Add-On Merger**") and the Plan, certain contracts,

leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements) vested (or that otherwise would have been vested) in FWE III pursuant to the Plan of Merger free and clear of all Add-On Merger Consent Rights and Add-On Merger Preferential Purchase Rights (in each case, as defined below).  Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on (a) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets or liabilities in connection with any Add-On Merger ("**Add-On Merger Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the vesting of the assets or liabilities in connection with any Add-On Merger ("**Add-On Merger Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Add-On Merger Consent Rights, an "**Add-On Merger Vesting Objection**", and if in respect of Add-On Merger Preferential Purchase Rights, an "**Add-On Merger Rights Objection**"), no later than the Plan Objection Deadline.

76.     Any person failing to timely file an Add-On Merger Vesting Objection or Add-On Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the applicable Add-On Merger or the related provisions of the Plan, free and clear of all Add-On Merger Consent Rights and/or Add-

On Merger Preferential Purchase Rights and from asserting any Add-On Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the applicable Add-On Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all Add-On Merger Consent Rights and/or Add-On Merger Preferential Purchase Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the applicable Add-On Merger.

77.    If any person files an Add-On Merger Vesting Objection or Add-On Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any rights asserted by such person by filing a response to the Add-On Merger Vesting Objection or Add-On Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief.  For the avoidance of doubt, the Debtors may include any responses to any Add-On Merger Vesting Objections or Add-On Merger Rights Objections in the Confirmation Brief or any reply deadline in a sale motion.  Upon the filing of such response to such Add-On Merger Vesting Objections or Add-On Merger Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Add-On Merger Rights Objections and Add-On Merger Vesting Objections, and all such rights of the Debtors are expressly preserved.

**O. Approval of Bid Deadline and Procedures for Submission of Higher or Better Bids**

76. The procedures set forth in the Motion for parties to submit a bid to acquire either (i) the Credit Bid Acquired Interests (as defined in the Credit Bid Purchase Agreement) or (ii) substantially all of the Debtors' assets are **APPROVED**.

77. The Bid Deadline shall be February 26, 2021.

78. For a bid to constitute a Qualified Bid, it must be delivered to (i) counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Matt Barr (matt.barr@weil.com) and Jessica Liou (jessica.liou@weil.com), and (ii) financial advisors to the Debtors, Houlihan Lokey, 245 Park Avenue, 20th Floor, New York, New York 10167, Attn: J.P. Hanson (jhanson@hl.com) and Daniel Crowley (dcrowley@hl.com) no later than the Bid Deadline and must, at a minimum:

(a) include a purchase price that exceeds the value of the Credit Bid Amount (as defined in the Plan) plus any cash consideration to be provided by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement (the "**Reserve Price**"), and a detailed analysis of the value of any non-cash component of such bid, if any, and documentation supporting such value; specify the form of consideration in (A) (i) all cash or (ii) non-cash components, and (B) cash consideration in excess of the Reserve Price;

(b) specify (i) the equity interests or assets, in whole or in part, as applicable, sought to be acquired as well as (ii) which assets, if any, are not sought to be acquired;

(c) include an unconditional commitment that such bid is binding, not subject to further financing and diligence, and irrevocable until such bid is not deemed the successful bid or back-up bid;

(d) proof of financial ability and other information demonstrating the bidder's ability to consummate the applicable sale transaction and the ability to provide adequate assurance of future performance under any proposed assumed contracts and leases, each as determined by the Debtors in their sole judgment;

(e) identify any proposed contracts to be assumed and assigned;

(f) evidence reflecting the bidder's (i) compliance with certain antitrust laws, (ii) ability to obtain regulatory and governmental approvals, and (iii) ability to consummate the sale transaction within a reasonable timeframe, each as determined by the Debtors in their sole judgment;

(g) (A) disclose the identity of the bidder and each participant in its bid, and (B) (i) demonstrate corporate (or comparable organizational) authorization to submit the bid and (ii) close the proposed sale transaction;

(h) specify (i) whether the bidder seeks to hire some or all of the Debtors' employees and (ii) indicate the intended treatment of various employee obligations;

(i) expressly state that the bid does not entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment;

(j) disclose any connections to (i) the Debtors, (ii) any other known bidders submitting bids pursuant to this process, and/or (iii) any officer or director of the Debtors;

(k) represent and warrant that the bidder (i) had the opportunity to conduct any and all due diligence before submitting its bid, (ii) relied solely upon its own independent review, investigation, and/or inspection in making its bid, (iii) has not engaged in collusion with respect to its bid, and (iv) provided correct and truthful proof of financial ability to consummate any applicable sale transaction in a timely manner;

(l) include (i) a deposit, unless otherwise agreed by the Debtors and bidder, to be deposited with an escrow agent pursuant to an escrow agreement, (ii) the contact information of the bidder contact person and any other specified persons, (iii) a covenant to cooperate with the Debtors and provide information for antitrust legal analysis; and

(m) a statement as to whether the bid is consistent with the terms of restructuring contemplated in the Restructuring Term Sheet and the Apache Term Sheet, and, if not, a detailed explanation of any inconsistency and the reason(s) therefor.

79. The Debtors will serve on all Sale Notice Parties a notice describing the process to submit bids for either (i) the Credit Bid Acquired Interests or (ii) substantially all of the Debtors' assets (the "**Notice of Procedures to Submit Bids**"). Additionally, as soon as reasonably practicable after entry of the Proposed Order, the Debtors will publish a notice,

~~substantially in the form of the Notice of Procedures to Submit Bids in one or more local or foreign newspapers, trade journals, or similar publications.~~

~~80. If the Debtors do not receive any Qualified Bids by the Bid Deadline, no later than one Business Day after the Bid Deadline, the Debtors shall file a notice with the Court stating that no such Qualified Bid(s) have been received.~~

~~81. If the Debtors receive Qualified Bid before the Bid Deadline, the Debtors shall inform the Ad Hoc Group of Secured Lenders within one (1) Business Day of receipt of such Qualified Bid.  The Debtors shall also, no later than three (3) Business Days after the Bid Deadline, file with the Court a notice of receipt of such Qualified Bid(s) and the Debtors' proposed procedures for selecting the highest or otherwise best bid, including, but not limited to, any procedures for submitting revised bids and/or holding an auction to the extent the Debtors determine holding an auction will maximize value to the Debtors' estates.~~  ~~For the avoidance of doubt, the Credit Bid Purchaser (i) shall be deemed a Qualified Bidder that is allowed to participate in any bidding and auction process held by the Debtors and (ii) may increase the Credit Bid Amount up to the FLTL Allowed Claims Amount.~~

**M.**        ~~P.~~ **General**

78.  ~~82.~~ The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, and related documents without further order of the Court including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before mailing.

79.  ~~83.~~ Nothing in this Order is intended to, or shall be deemed to, modify, waive, or impair and of the provisions of the *Final Order (I) Authorizing the Debtors to (A)*

*Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. § 361, 362, 363, 364, and 507(d)* [Docket No. 346] (the "**DIP Order**") and the DIP Documents (as defined in the DIP Order), or the rights of the DIP Secured Parties (as defined in the DIP Order) or the Prepetition Secured Parties (as defined in the DIP Order) thereunder.

80. ~~84.~~ The Debtors are authorized to take or refrain from taking any actions necessary or appropriate to implement the terms of, and the relief granted in, this Order without seeking further order of the Court.

81. ~~85.~~ This Court shall retain exclusive jurisdiction to hear and determine all matters arising from, or related to, the implementation, interpretation, and/or enforcement of this Order.

Dated: _____, 2021
        Houston, Texas

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1 to the Proposed Order</u>**

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC,** *et al.,* | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |
| | § | **Re: Docket No. 724 & 1117** |

**NOTICE OF ENTRY OF ORDER (I) APPROVING DISCLOSURE STATEMENT AND FORM AND MANNER OF NOTICE OF DISCLOSURE STATEMENT HEARING; (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (III) SCHEDULING CONFIRMATION HEARING; (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN; (V) APPROVING NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) APPROVING PROCEDURES FOR OBJECTIONS TO THE ASSIGNMENT AND TRANSFER OF PROPERTY OF THE ESTATE;** ~~(VII) APPROVING BID SUBMISSION DEADLINE AND PROCEDURES FOR SUBMISSION OF HIGHER OR BETTER BIDS; AND~~ **AND (VIII) GRANTING RELATED RELIEF**

**TO ALL PARTIES IN INTEREST IN THE CHAPTER 11 CASES OF:**

| Dynamic Offshore Resources NS, LLC | Case No. 20-33947 |
|---|---|
| Fieldwood Energy LLC | Case No. 20-33948 |
| Fieldwood Energy Inc. | Case No. 20-33949 |
| Fieldwood Energy Offshore LLC | Case No. 20-33950 |
| Fieldwood Onshore LLC | Case No. 20-33951 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422). The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX 77042.

| | |
|---|---|
| Dynamic Offshore Resources NS, LLC | Case No. 20-33947 |
| Fieldwood SD Offshore LLC | Case No. 20-33952 |
| Fieldwood Offshore LLC | Case No. 20-33961 |
| FW GOM Pipeline, Inc. | Case No. 20-33953 |
| GOM Shelf LLC | Case No. 20-33954 |
| Bandon Oil and Gas GP, LLC | Case No. 20-33955 |
| Bandon Oil and Gas, LP | Case No. 20-33956 |
| Fieldwood Energy SP LLC | Case No. 20-33958 |
| Galveston Bay Pipeline LLC | Case No. 20-33959 |
| Galveston Bay Processing LLC | Case No. 20-33960 |

**PLEASE TAKE NOTICE THAT:**

1. ***Approval of Disclosure Statement***.  On ~~February 3~~March 24, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, dated ~~[   ]~~March 24, 2021 (Docket No. ~~[   ]) ([~~1117) (including any exhibits and schedules thereto and as may be further amended, ~~modified, or supplemented~~supplemented, or modified, the "**Disclosure Statement**") and granted related relief, and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto.  The Disclosure Statement Order, among other things, authorized the Debtors to solicit votes to accept the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on ~~[   ]~~March 24, 2021 (Docket No. ~~[   ]) ([~~1115) (including any exhibits and schedules thereto and as may be further amended, ~~modified, or supplemented~~supplemented, or modified, the "**Plan**").[1]

2. ***Confirmation Hearing***.  A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled for May [~~4~~], 2021 at [  ] (prevailing Central Time), before the Honorable Marvin Isgur, United States Bankruptcy Judge, in the Bankruptcy Court.  The Confirmation Hearing may be adjourned or continued from time to time by the Bankruptcy Court without further notice other than by a Court announcement providing

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

≡

for such adjournment or continuation on its agenda.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3.   ***Voting Record Date***.  Holders of Claims in Class 1 (Other Secured Claims), Class 3 (FLFO Claims), Class 4 (FLTL ~~Secured~~ Claims), Class 5 (SLTL Claims), Class 6A (Unsecured Trade Claims), and Class 6B (General Unsecured Claims) who are otherwise eligible to vote as of ~~February 3~~March 24, 2021 (the "**Voting Record Date**") shall be entitled to vote to accept or reject the Plan.

4.   ***Voting Deadline***.  All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Prime Clerk LLC, at Fieldwood Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165 by no later than ~~March 9~~April 26, 2021 at 4:00 p.m. (prevailing Central Time) (the "**Voting Deadline**").  **ANY FAILURE TO FOLLOW THE VOTING INSTRUCTIONS INCLUDED WITH YOUR BALLOT MAY DISQUALIFY YOUR BALLOT AND YOUR VOTE**.

5.   ***Parties in Interest Not Entitled to Vote***.  Holders of Claims or Interests in Class ~~1 (Other Secured Claims), Class~~ 2 (~~Other~~ Priority ~~Claims), Class 3 (FLFO~~Non-Tax Claims), Class 7 (Intercompany Claims), Class 8 (Subordinated Securities Claims), Class 9 (Intercompany Interests), and Class 10 (Existing Equity Interests) are not entitled to vote on the Plan and will not receive a Ballot.  If you disagree with the amount set forth by the Debtors for your Claim or Interest in the Debtors' schedules of assets and liabilities and statements of financial affairs [Docket Nos. 429-456] of if you have filed a proof of claim and disagree with either (a) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan or (b) the Debtors' classification or request for estimation of your Claim or Interest and believe that you should be entitled to vote on the Plan in a different amount or class, then you must serve on the parties identified in paragraph 8 below and file with the Bankruptcy Court a motion (a "**Rule 3018(a) Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount or in a different class for purposes of voting to accept or reject the Plan.  All Rule 3018(a) Motions must be filed on or before ~~March 9~~April 13, 2021 at 4:00 p.m. (prevailing Central Time).  Rule 3018(a) Motions that are not timely filed and served in the manner set forth above shall not be considered.  As to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Bankruptcy Court.  Creditors may contact Prime Clerk in writing at Fieldwood Energy Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, by email at fieldwoodballots@primeclerk.com, or (via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international) to receive an appropriate Ballot for any Claim for which a Proof of Claim has been timely filed and a Rule 3018(a) Motion has been granted.

6.   ***Objections to Confirmation***.  The deadline to object or respond to confirmation of the Plan is ~~March 9~~April 26, 2021 at 4:00 p.m. (prevailing Central Time) (the "**Plan Objection Deadline**").

7.     ***Form and Manner of Objections to Confirmation***.   Objections and responses, if any, to confirmation of the Plan, must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (iv) provide the basis for the objection and the specific grounds thereof; and be filed with the Bankruptcy Court via the Electronic Case Filing System or by mailing to the Bankruptcy Court at the United States Bankruptcy Court Clerk's Office, 515 Rusk Avenue, Courtroom 404, 4th Floor, Houston, Texas 77002, no later than the Plan Objection Deadline.

8.     **IF AN OBJECTION TO THE CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE CONFIRMATION OF THE PLAN OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.**

9.     ***Additional Information***.   Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement, the Plan, or other Solicitation Materials should contact the Debtors' voting and tabulation agent, Prime Clerk LLC by (i) email at fieldwoodballots@primeclerk.com or (ii) via telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international).  Interested parties may also review the Disclosure Statement and Plan free of charge at https://cases.primeclerk.com/FieldwoodEnergy/. In addition, the Disclosure Statement and Plan are on file with the Bankruptcy Court and may be reviewed for a fee by accessing the Bankruptcy Court's website at https://www.txs.uscourts.gov/page/bankruptcy-court.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at https://pacer.psc.uscourts.gov.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, ~~or~~ (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, <u>or (v) you are a Released Party (even if you purport to opt out of the releases as set forth in the Plan),</u> you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)   <u>RELEASES BY THE DEBTORS.</u>**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, <u>ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,</u> THE CREDIT BID PURCHASE AGREEMENT, ~~THE~~<u>THE FIRST LIEN EXIT</u>**

4

FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL

CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (theTHE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

**10.7(b)** **RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED,

EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT ~~SUCH HOLDERS~~THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

  ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT

AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

10.7(c)  **Release of Liens**.

Except as otherwise specifically provided in the Plan **(including all Liens securing the FLFO Claims or the First Lien Exit Facility)** or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO ~~Lenders~~Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

10.8  **Exculpation**.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN

SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

     **10.6**    **Plan Injunction.**

(a)      Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)      By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

### 10.9      Injunction Related to Releases and Exculpation.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the

DIP Agent and DIP Lenders under the DIP Facility, (e) the ~~Consenting Creditors, (f) the Prepetition Agents, (g~~Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~h~~l) the Exit Facility Agents, (i~~m~~) the Exit Facility Lenders, (j~~n~~) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (~~k~~q) with respect to each of the foregoing Persons in clauses (a) through (j~~p~~), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the ~~Consenting Creditors, (e) the Prepetition Agents, (f)~~ Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~g~~k) the Exit Facility Agents, (~~h~~l) the Exit Facility Lenders, (i~~m~~) the Second Lien Backstop Parties, (j~~n~~) the ERO Backstop Parties, (o) the Apache PSA Parties, and (~~k~~p) with respect to each of the foregoing Persons in clauses (a) through (j~~o~~), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the

opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO ~~CAREFULLY~~ REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION~~,~~ AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Notice of Assumption of Executory Contracts and Unexpired Leases of Debtors and Related Procedures

10.     Please take notice that, in accordance with Section 8.1 and 8.2 of the Plan and sections 365 and 1123 of the Bankruptcy Code, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease: (i) was previously assumed, assumed and assigned, or rejected by the Debtors, pursuant to an order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date, (iv) is identified in Sections 8.4 or 8.5 of the Plan; or (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement, which Schedule of Assumed Contracts will identify executory contracts and unexpired leases for assumption and assignment to the Credit Bid Purchaser in accordance with the terms of the Credit Bid Purchase Agreement. To the extent the Decommissioning Agreement is an executory contract, it will be assumed and become the obligation of FWE I under the Plan of Merger.

11.     Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, have provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Credit Bid Purchaser or Post-Effective Date Debtors, as applicable, in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

12.     To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitled the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

13.     ~~12.~~ Subject to the Credit Bid Purchase Agreement, the Debtors reserve the right, on or before 5:00 p.m. (prevailing Central Time) seven (7) days before the Confirmation Hearing, or such other time as may be agreed in writing between the Debtors and the applicable counterparty, to amend the Schedule of Assumed Contracts, to add or remove any executory

contract or unexpired lease; *provided* that if the Confirmation Hearing is adjourned or continued, such amendment right shall be extended to 5:00 p.m. (prevailing Central Time) seven (7) days immediately before the rescheduled or continued Confirmation Hearing; *provided*, *further* that the Debtors may amend the Schedule of Assumed Contracts to add or delete any executory contracts or unexpired leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court

14. ~~13.~~ Pursuant to Section 8.2 of the Plan, any Cure Amount shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount, as reflected in the applicable cure notice, in Cash on the Effective Date in accordance with the terms of the Credit Bid Purchase Agreement or on such other terms as the parties to such executory contracts or unexpired leases and the Debtors may otherwise agree.

15. ~~14.~~ Further, the Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Contracts.  At least ten (10) days before the Confirmation Hearing, the Debtors shall serve a notice on parties to executory contracts or unexpired leases to be assumed or assumed and assigned reflecting the Debtors' intention to potentially assume or assume and assign the contract or lease in connection with this Plan and, where applicable, setting forth the proposed Cure Amount (if any). **Any objection by a counterparty to an executory contract or unexpired lease to the proposed assumption, assumption and assignment, or related Cure Amount must be filed, served, and actually received by the Debtors within ten (10) days of the service of the assumption notice, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court.** Any counterparty to an executory contract or unexpired lease that does not timely object to the notice of the proposed assumption of such executory contract or unexpired lease shall be deemed to have assented to assumption of the applicable executory contract or unexpired lease notwithstanding any provision thereof that purports to (i) prohibit, restrict, or condition the transfer or assignment of such contract or lease; (ii) terminate or modify, or permit the termination or modification of, a contract or lease as a result of any direct or indirect transfer or assignment of the rights of any Debtor under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan; (iii) increase, accelerate, or otherwise alter any obligations or liabilities of any Debtor, or any Post-Effective Date Debtor, under such executory contract or unexpired lease; or (iv) create or impose a Lien upon any property or Asset of any Debtor, or Post-Effective Date Debtor, as applicable.  Each such provision shall be deemed to not apply to the assumption of such executory contract or unexpired lease pursuant to the Plan and counterparties to assumed executory contracts or unexpired leases that fail to object to the proposed assumption in accordance with the terms set forth in Section 8.2(b) of the Plan shall forever be barred and enjoined from objecting to the proposed assumption or to the validity of such assumption (including with respect to any Cure Amounts or the provision of adequate assurance of future performance), or taking actions prohibited by the foregoing or the Bankruptcy Code on account of transactions contemplated by the Plan.

16. ~~15.~~ Please take notice that, pursuant to Section 8.2 of the Plan, the Bankruptcy Court will determine any Assumption Dispute (as defined in the Plan) pertaining to assumption of an executory contract or unexpired lease (other than a dispute pertaining to a Cure Amount) by entry of an order; *provided* that the Debtors or the Post-Effective Date Debtors, as applicable, may settle any Assumption Dispute without any further notice to any other party or

any action, order, or approval of the Court.  To the extent an Assumption Dispute relates solely to the Cure Amount, subject to the terms of the Credit Bid Purchase Agreement, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease before the resolution of the Assumption Dispute; *provided*, that the Post-Effective Date Debtors or Credit Bid Purchaser, as applicable shall be responsible to pay the determined amount to be Allowed by the Bankruptcy Court or otherwise agreed to by such non-Debtor party.  The Debtors or Post-Effective Date Debtors, as applicable, subject to the terms of the Credit Bid Purchase Agreement, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

17. 16. If you are a counterparty to an executory contract or unexpired lease (unless one of the exceptions set forth in Section 8.1 of the Plan applies), if no Objection is timely received with respect to your assumed executory contract or unexpired lease (an "**Assumed Contract**"), (a) you shall be deemed to have assented to (i) the assumption of such Assumed Contract, (ii) the date of such assumption, and (iii) the satisfaction of section 365(b)(1)(C) of the Bankruptcy Code requiring the Debtors to provide adequate assurance of future performance under such Assumed Contract, and (b) you shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or the adequate assurance of future performance contemplated herein.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS CONFIRMATION HEARING NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

18. 17. *Plan Supplement*.  The Debtors will file and serve any supplement to the Plan on or before March 2April 16, 2021.

### Notice of Abandonment of Property of the Estate Upon Plan Effective Date

19. 18. Pursuant to section 5.123 of the Plan, immediately upon the occurrence of the Effective Date, the Debtors' rights to and interests in executory contracts and unexpired federal leases, rights-of-way, and right-of-use-and-easements identified on Exhibit F(the "**Abandoned Properties**") listed on a schedule of abandoned attached as Exhibit E to the Disclosure Statement (as may be amended, modified, or supplemented from time to time, the "**Schedule of Abandoned Properties**") will be abandoned pursuant to the Plan without further notice to or order of the Bankruptcy Court pursuant to sections 105(a) and 554(a) of the Bankruptcy Code and/or deemed rejected pursuant to section 365 of the Bankruptcy Code, as applicable.  As further detailed in the Disclosure Statement, the Abandoned Properties will be returned to various entities who are predecessor owners in the chain of title or co-working interest owners (collectively, the "**Predecessors**").The Abandoned Properties shall not be allocated to nor vest in the Post-Effective Date Debtors or NewCo and its subsidiaries, including the Credit Bid Purchaser.  Except as otherwise provided in this Plan or the Confirmation Order, the Debtors, their Estates, and the Post-Effective Date Debtors shall not be liable for any obligations whatsoever arising from or relating to the post-Effective Date period with regards to the Abandoned Properties.  Nothing in the Plan or the Confirmation Order shall be construed as barring, waiving, or limiting the United States' rights to assert a claim against the Debtors, the

14

Post-Effective Date Debtors or any co-lessees or predecessors in interest with respect to the Abandoned Properties for any decommissioning obligations for the Abandoned Properties.

**IF YOU ARE A PREDECESSOR OR CO-WORKING INTEREST OWNER WITH RESPECT TO ONE OR MORE OF THE ABANDONED PROPERTIES, YOU ARE ENCOURAGED TO ~~CAREFULLY~~ REVIEW AND CONSIDER CAREFULLY THE PLAN AND DISCLOSURE STATEMENT, INCLUDING SECTION 5.1~~2~~3 OF THE PLAN AND THE SCHEDULE OF ABANDONED PROPERTIES, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**IF AN OBJECTION TO THE CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE CONFIRMATION OF THE PLAN OR ANY TERMS INCLUDED IN THE PLAN, INCLUDING THE ABANDONMENT OF THE ABANDONED PROPERTIES, AND ANY SUCH OBJECTIONS MAY NOT BE HEARD AT THE HEARING.**

### Sale of Certain of the Debtors' Assets Pursuant to the Plan

20.   ~~19. On~~As described in Section 5.2(a) of the Plan, if the Confirmation Date occurs on or before the Confirmation Outside Date or the Debtors, and the Required DIP Lenders and Requisite FLTL Lenders do not otherwise elect to pursue a 363 Credit Bid Transaction pursuant to Section 5.2(c) of the Plan, then, on the Effective Date ~~of the Plan~~, pursuant to sections 105, 363, 365, 1123, 1129, 1141(b) and 1141(c) of the Bankruptcy Code, in accordance with the Credit Bid Purchase Agreement, subject to the satisfaction or waiver of all applicable closing conditions under the Credit Bid Purchase Agreement, ~~certain of the Debtors' assets (collectively, the "~~(i) all Credit Bid Acquired Interests~~") will~~ shall be transferred to, and the Credit Bid Acquired Interests owned by the Debtors ~~will~~shall vest free and clear of all Liens[2] (other than (i) any and all Liens securing the FLFO Claim or the obligations under the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances (~~e~~xcept in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens) other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents), Claims, charges, Interests, or other encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights, and (ii) all Credit Bid Assumed Liabilities ~~will~~shall be assumed by the Credit Bid Purchaser ~~or such other entity designated by the Credit Bid Purchaser solely in accordance with the terms of~~.

21.   In the event that the transaction pursuant to Section 5.2(a) of the Plan is consummated and in the event of any conflict whatsoever between the terms of the Plan and the Credit Bid Purchase Agreement with respect to the Credit Bid Transaction, the terms of the Credit Bid Purchase Agreement shall control, and the Plan shall be deemed to incorporate in their entirety the terms, provisions, and conditions of the Credit Bid Purchase Agreement.

22.   (x) If the Confirmation Date does not occur before the Confirmation Outside Date or (y) if the estimated amount of Allowed Specified Administrative Expense

---

[2]   Provided that the Retained Properties (as defined in the Apache Implementation Agreement) shall be transferred in accordance with the Decommissioning Agreement.

=

Claims to be satisfied under the Plan on or after the Effective Date is projected at any time prior to the Confirmation Date to exceed the Toggle Amount (the next Business Day after the occurrence of (x) or (y), the ("**Toggle Date**"), then, with the consent of the Required DIP Lenders and Requisite FLTL Lenders, the Debtors shall:

(i)  within 7 days of the Toggle Date, file a motion (the "**Toggle Motion**"), in form and substance acceptable to the Debtors, the Required DIP Lenders and Requisite FLTL Lenders, seeking entry of an order of the Bankruptcy Court approving a credit bid sale transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders) pursuant to section 363 of the Bankruptcy Code on substantially the same terms as provided in the Credit Bid Purchase Agreement (which terms shall be acceptable to the Debtors, the Requisite FLTL Lenders, and Required DIP Lenders), free and clear of all Liens (other than (i) any and all Liens securing the FLFO Claim or the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances except in the case of Fieldwood U.A. Interests, which shall vest free and clear of all Liens other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents), Claims, charges, Interests, or other encumbrances, the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights that are applicable to the Credit Bid Acquired Interests;

(ii)  within 15 days of the Toggle Date and subject to the reasonable consent of Apache, the Requisite FLTL Lenders, the Required DIP Lenders and the Debtors, amend the Apache Definitive Documents as reasonably required to effectuate the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders); provided that no such actions shall require the Apache PSA Parties to alter the economics of the Apache Definitive Documents without the Apache PSA Parties' express written consent; and

(iii)  within 35 days of the Toggle Date, obtain entry of an order of the Bankruptcy Court approving the 363 Credit Bid Transaction to the Credit Bid Purchaser (or another special purpose bidding entity formed by or at the direction of the Prepetition FLTL Lenders).

23.  Notwithstanding anything in the Credit Bid Purchase Agreement, or any agreement entered into pursuant to Section 5.2(c) of the Plan to the contrary, the Credit Bid Purchaser shall not be liable for any liability or obligation on account of any Claim or Interest that is compromised, settled, released or discharged pursuant to this Plan.

24. 20. A schedule of the Debtors' interests in the oil and gas leases that will be acquired by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement is annexed to the Disclosure Statement as **Exhibit CB** (as may be amended, modified, or supplemented from time to time, the "**Leases Related to** Purchased Oil & Gas Lease Interests**").

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE A PLAN OBJECTION ON OR BEFORE THE PLAN OBJECTION DEADLINE IN ACCORDANCE WITH THIS NOTICE WILL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE PLAN, INCLUDING WITH RESPECT TO THE TRANSFER OF THE CREDIT BID ACQUIRED INTERESTS FREE AND CLEAR OF ALL LIENS (OTHER THAN (i) ANY AND ALL LIENS SECURING THE FLFO CLAIM OR THE OBLIGATIONS UNDER THE FIRST LIEN EXIT FACILITY OR (ii) CREDIT BID PERMITTED ENCUMBRANCES (EXCEPT THATIN THE CASE OF FIELDWOOD U.A. INTERESTS, WHICH SHALL VEST FREE AND CLEAR OF ALL LIENS) OTHER THAN LIENS DESCRIBED IN CLAUSE (i) ABOVE TO THE EXTENT CONTEMPLATED BY THE FIRST LIEN EXIST FACILITY DOCUMENTS), CLAIMS, CHARGES, INTERESTS, OR OTHER ENCUMBRANCES, INCLUDING THE CREDIT BID CONSENT RIGHTS AND THE CREDIT BID PREFERENTIAL PURCHASE RIGHTS.**

**Notice to Holders of Consent Rights, Preferential
Purchase Rights, and Similar Rights of Objection Deadline**

25.   ~~21.~~ The Debtors intend to assign or transfer to the Credit Bid Purchaser, pursuant to the Credit Bid Purchase Agreement and the Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all liens, claims, interests, and encumbrances, including the Credit Bid Consent Rights and the Credit Bid Preferential Purchase Rights (in each case, as defined below) (other than ~~the~~(i) any and all Liens securing the FLFO Claim or the obligations under the First Lien Exit Facility or (ii) Credit Bid Permitted Encumbrances ~~(~~except in the case of Fieldwood U.A. Interests, which ~~will~~shall vest free and clear of all Liens~~)~~ other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents). If any party objects to such assignment or transfer, including any objection based on (a) any alleged right of consent, notice, and any similar interests, if any, that are applicable to the sale of the Credit Bid Acquired Interests, or the assumption of the Credit Bid Assumed Liabilities, in connection with the Credit Bid Purchase Agreement ("**Credit Bid Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the consummation of the transactions contemplated by the Credit Bid Purchase Agreement, or any other Preferential Right (as defined in the Credit Bid Purchase Agreement) ("**Credit Bid Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Credit Bid Consent Rights, a "**Credit Bid Consent Rights Objection**", and if in respect of Credit Bid Preferential Purchase Rights, a "**Credit Bid Preferential Rights Objection**"), no later than the Plan Objection Deadline or any objection deadline set forth in a sale motion following a Toggle Date.

**IF YOU WISH TO ASSERT A CREDIT BID CONSENT RIGHTS OBJECTION OR CREDIT BID PREFERENTIAL RIGHTS OBJECTION, YOU ARE ADVISED TO CAREFULLY REVIEW THE CREDIT BID PURCHASE AGREEMENT ALONG WITH THE PLAN.**

**IF A PARTY FILES A CREDIT BID CONSENT RIGHTS OBJECTION OR CREDIT BID PREFERENTIAL RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE CONFIRMATION HEARING, SUCH OBJECTION WILL BE HEARD BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

**Any person failing to timely file a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement or the**

related provisions of the Plan, free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than **(i) any and all Liens securing the FLFO Claim or the obligations under the First Lien Exit Facility or (ii)** Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which ~~will~~**shall** vest free and clear of all Liens) **other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents**), and from asserting any alleged Credit Bid Preferential Purchase Right with respect to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets and liabilities to be sold, assumed, and/or assigned in connection with the Credit Bid Purchase Agreement, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all liens, claims, interests, and encumbrances, including Credit Bid Consent Rights and/or Credit Bid Preferential Purchase Rights (other than **(i) any and all Liens securing the FLFO Claim or the obligations under the First Lien Exit Facility or (ii)** Credit Bid Permitted Encumbrances (except in the case of Fieldwood U.A. Interests, which ~~will~~**shall** vest free and clear of all Liens) **other than Liens described in clause (i) above to the extent contemplated by the First Lien Exit Facility Documents**), regardless of whether such consent must be in writing in connection with the assignment of any of the Credit Bid Acquired Interests or assumption of any of the Credit Bid Assumed Liabilities.

If any person files a Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief or any reply deadline set forth in a sale motion.  For the avoidance of doubt, the Debtors may include any responses to any Credit Bid Consent Rights Objections or Credit Bid Preferential Rights Objections in the Confirmation Brief.  Upon the filing of such response to such Credit Bid Consent Rights Objection or Credit Bid Preferential Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Credit Bid Consent Rights Objections and Credit Bid Preferential Rights Objections, and all such rights of the Debtors are expressly preserved.

**26.** ~~22.~~The Debtors will cause to be vested in FWE I and FWE III pursuant to the Plan of Merger and Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of all ~~liens, claims, interests, and encumbrances, including the~~ Plan of Merger Consent Rights and Plan of Merger Preferential Purchase Rights (in each case, as defined below).  Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on (a) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Consent Rights**"); or (b) any preferential right to

purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the vesting of the assets or liabilities in connection with the Plan of Merger ("**Plan of Merger Preferential Purchase Rights**");, then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Plan of Merger Consent Rights, a "**Merger Vesting Objection**", and if in respect of Plan of Merger Preferential Purchase Rights, a "**Merger Rights Objection**"), no later than the Plan Objection Deadline.

**IF YOU WISH TO ASSERT A MERGER VESTING OBJECTION OR MERGER RIGHTS OBJECTION, YOU ARE ADVISED TO CAREFULLY REVIEW THE PLAN OF MERGER DOCUMENTS ALONG WITH THE PLAN.**

**IF A PARTY FILES A MERGER VESTING OBJECTION OR MERGER RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE CONFIRMATION HEARING, SUCH OBJECTION WILL BE HEARD BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

**Any person failing to timely file a Merger Vesting Objection or Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the Plan of Merger or the related provisions of the Plan, free and clear of all ~~liens, claims, interests, and encumbrances, including~~ Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights and from asserting any Plan of Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the Plan of Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all ~~liens, claims, interests, and encumbrances, including~~ Plan of Merger Consent Rights and/or Plan of Merger Preferential Purchase Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the Plan of Merger.**

If any person files a Merger Vesting Objection or Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any rights asserted by such person by filing a response to the Merger Vesting Objection or Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief. For the avoidance of doubt, the Debtors may include any responses to any Merger Vesting Objections or Merger Rights Objections in the Confirmation Brief or any reply deadline in a sale motion. Upon the filing of such response to such Merger Vesting Objections or Merger Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted

by any person in such Merger Rights Objections and Merger Vesting Objections, and all such rights of the Debtors are expressly preserved.

27.     The Debtors also may cause to be vested in one or more newly formed entities, pursuant to a divisional merger (an "**Add-On Merger**") and the Plan, certain contracts, leases, and other assets and liabilities, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements) vested (or that otherwise would have been vested) in FWE III pursuant to the Plan of Merger free and clear of all Add-On Merger Consent Rights and Add-On Merger Preferential Purchase Rights (in each case, as defined below).  Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on (a) any right of consent, notice, and other similar rights, if any, that are applicable to the vesting of assets or liabilities in connection with any Add-On Merger ("**Add-On Merger Consent Rights**"); or (b) any preferential right to purchase, right of first refusal, right of first offer, drag-along rights, tag-along rights, or similar right the operation of which is triggered by the vesting of the assets or liabilities in connection with any Add-On Merger ("**Add-On Merger Preferential Purchase Rights**"); then such party must file with the Bankruptcy Court, via the Electronic Case Filing System, an objection identifying (x) the contract(s), lease(s), or asset(s) or liability(ies); (y) the basis for objecting to the assignment or vesting, as applicable, of such contract(s), lease(s), or asset(s) or liability(ies); and (z) all supporting documentation (if in respect of Add-On Merger Consent Rights, an "**Add-On Merger Vesting Objection**", and if in respect of Add-On Merger Preferential Purchase Rights, an "**Add-On Merger Rights Objection**"), no later than the Plan Objection Deadline.

**IF YOU WISH TO ASSERT AN ADD-ON MERGER VESTING OBJECTION OR ADD-ON MERGER RIGHTS OBJECTION, YOU ARE ADVISED TO CAREFULLY REVIEW THE PLAN AND ANY DOCUEMNTS FILED WITH THE BANRUPTCY COURT WITH RESPECT TO ANY ADD-ON MERGER.**

**IF A PARTY FILES AN ADD-ON MERGER VESTING OBJECTION OR ADD-ON MERGER RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE CONFIRMATION HEARING, SUCH OBJECTION WILL BE HEARD BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.**

**Any person failing to timely file an Add-On Merger Vesting Objection or Add-On Merger Rights Objection, as applicable, will be (i) forever barred and estopped from objecting, on any grounds, to the vesting of the Debtors' right, title, and interest in, to and under, the assets and liabilities to be vested in connection with the applicable Add-On Merger or the related provisions of the Plan, free and clear of all Add-On Merger Consent Rights and/or Add-On Merger Preferential Purchase Rights and from asserting any Add-On Merger Preferential Purchase Right with respect to the vesting of the Debtors' right, title, and interest in, to and under the assets and liabilities to be vested in connection with the applicable Add-On  Merger, and (ii) deemed to consent to and approve the vesting of the Debtors' right, title, and interest in, to and under such assets and liabilities free and clear of all Add-On Merger Consent Rights and/or Add-On Merger Preferential Purchase**

**Rights, regardless of whether such consent must be in writing in connection with the vesting of any assets or liabilities in connection with the applicable Add-On Merger.**

If any person files ~~a~~an Add-On Merger Vesting Objection or Add-On Merger Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any rights asserted by such person by filing a response to the Add-On Merger Vesting Objection or Add-On Merger Rights Objection, as applicable (and serving such response on the objecting party) at any time up to and including the date by which the Debtors must file the Confirmation Brief.  For the avoidance of doubt, the Debtors may include any responses to any Add-On Merger Vesting Objections or Add-On Merger Rights Objections in the Confirmation Brief or any reply deadline in a sale motion.  Upon the filing of such response to such Add-On Merger Vesting Objections or Add-On Merger Rights Objections, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such Add-On Merger Rights Objections and Add-On Merger Vesting Objections, and all such rights of the Debtors are expressly preserved.

**QUESTIONS:**

If you have any questions, please contact the Voting Agent at 1-855-631-5346 (domestic) or 1-917-460-0913 (international).  You may also submit your question online at https://cases.primeclerk.com/FieldwoodEnergy/.  Please be advised that the Voting Agent cannot provide legal advice.

Dated: [   ], 2021
　　　　Houston, Texas

　　　　　　　　　　　　　　　　　　/s/ DRAFT
　　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　　Alfredo R. Pérez (15776275)
　　　　　　　　　　　　　　　　　　700 Louisiana Street, Suite 1700
　　　　　　　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　　　　　　　Telephone:  (713) 546-5000
　　　　　　　　　　　　　　　　　　Facsimile:  (713) 224-9511
　　　　　　　　　　　　　　　　　　Email:  Alfredo.Perez@weil.com

　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　　　　　Matthew S. Barr (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　Jessica Liou (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　　　　　　　Telephone:  (212) 310-8000
　　　　　　　　　　　　　　　　　　Facsimile:  (212) 310-8007
　　　　　　　　　　　　　　　　　　Email:  Matt.Barr@weil.com
　　　　　　　　　　　　　　　　　　　　　　Jessica.Liou@weil.com

　　　　　　　　　　　　　　　　　　*Attorneys for Debtors*
　　　　　　　　　　　　　　　　　　*and Debtors in Possession*

**Exhibit 2**

**Form of Ballot – Class 4~~1~~ (~~FLTL~~Other Secured Claims)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
## PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES

### CLASS 4̶1̶: ~~FLTL~~OTHER SECURED CLAIMS

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE ~~MARCH 9~~APRIL 26, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its ~~Debtor~~ Affiliate*s *Debtors*, filed on ~~[ ]~~March 24, 2021 (~~as may be~~Docket No. 1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified ~~or supplemented from time to time~~, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on ~~[ ]~~March 24, 2021 (Docket No. ~~[ ]) (~~1117) (including any exhibits and schedules thereto and as may be

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

further amended, ~~modified, or supplemented from time to time~~supplemented, or modified, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of March 24, 2021 (the "Voting Record Date"), a holder (a "**Holder**") of any Secured Claim against a Debtor other than a Priority Tax Claim, FLFO Claim, FLTL Claim, and SLTL Claim.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-855-631-5346 (domestic) 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com.  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 1 Other Secured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 1**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Post-Effective Date Debtors, such holder shall receive either (i) payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired, or (iii) any other treatment consistent with the provisions of section 1129 of the Bankruptcy Code, including by providing such holder with the "indubitable equivalent" of their Allowed Other Secured Claim (which, for the avoidance of doubt, may be in the form of a multi-year promissory note or other financial instrument); *provided,* that any Allowed Other Secured Claim assumed by the Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement shall be solely an obligation of the Credit Bid Purchaser and the holder of such assumed Claim shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS**.

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate

against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 1 Other Secured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, or (v) are a Released Party as defined in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)   RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED**

**OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND**

**ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE**

DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT

**ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.**

**10.7(c)  Release of Liens.**

**Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.**

**10.8    Exculpation.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN**

7

**SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**10.6     Plan Injunction.**

**(a)      Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or**

8

indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

**(b)** **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.**

**10.9** **Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

***Exculpated Parties*** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (l) the Exit Facility Agents, (m) the Exit Facility Lenders, (n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (q) with respect to each of the foregoing Persons in clauses (a) through (p) each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other

9

persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (k) the Exit Facility Agents, (l) the Exit Facility Lenders, (m) the Second Lien Backstop Parties, (n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (p) with respect to each of the foregoing Persons in clauses (a) through (o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.**          **Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of an Other Secured Claim in the amount set forth below.

$_____

Debtor: _____

**Item 2.**          **Votes on the Plan.**  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, (iii) vote to reject the Plan and do not check the box in Item 3 below, or (iv) are a Released Party as defined in the Plan, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

The undersigned holder of a Class 1 Other Secured Claim votes to (check one box):

☐     **Accept** the Plan          ☐     **Reject** the Plan

**Item 3.  Optional Opt Out Release Election.**  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective.  **If you are a Released Party as defined in the Plan, you may not complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.**  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to

11

☐

the fullest extent permitted by applicable law.  The Holder of a Class 1 Other Secured Claim set forth in Item 1 elects to:

    ☐    **OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Other Secured Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.      PLEASE RETURN YOUR BALLOT PROMPTLY.

11.      IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.      THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**E-Ballot Voting Instructions**

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on April 26, 2021, the Voting Deadline, unless such time is extended by the Debtors.  HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS APRIL 26, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW.  IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| **Prime Clerk Addresses for Receipt of Ballots** |
| --- |
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

**Exhibit 3**

**Form of Ballot – Class 3 (FLFO Claims)**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.[2]** | § | **(Jointly Administered)** |
| | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES**

**CLASS 3: FLFO CLAIMS**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE APRIL 26, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on March 24, 2021 (Docket No. 1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on March 24, 2021 (Docket No. 1117) (including any exhibits and schedules

---

[1] All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

thereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of March 24, 2021 (the "Voting Record Date"), a holder (a "**Holder**") of a claim against the Debtors arising under that certain *Amended and Restated First Lien Term Loan Agreement*, dated as of April 11, 2018, by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition FLTL Administrative Agent, and the Prepetition FLTL Lenders, and the other parties thereto, as in effect immediately before the Effective Date.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-855-631-5346 (domestic) 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com.  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 3 FLFO Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 4**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed FLFO Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of such Allowed FLFO Claim, (a) each holder of an Allowed FLFO Claim shall receive its Pro Rata Share of the FLFO Distribution Amount and (b) all remaining Allowed FLFO Claims shall be assumed by the NewCo Entities as modified to the extent set forth in the First Lien Exit Facility Documents. The Liens securing the FLFO Claims that attach to the Credit Bid Acquired Interests shall be retained and deemed assigned to the First Lien Exit Facility Agent upon the Effective Date to secure the obligations under the First Lien Exit Facility.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS**.

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your

vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 3 FLFO Claims. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, or (v) are a Released Party as defined in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)   RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR**

**EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-**

**EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL**

**ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.**

**10.7(c)  Release of Liens.**

**Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.**

**10.8    Exculpation.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,  THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE**

**FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

       **10.6**　　**Plan Injunction.**

       **(a)**　　**Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or**

successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

**(b)** **By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.**

**10.9** **Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

***Exculpated Parties*** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (l) the Exit Facility Agents, (m) the Exit Facility Lenders, (n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (q) with respect to each of the foregoing Persons in clauses (a) through (p) each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (k) the Exit Facility Agents, (l) the Exit Facility Lenders, (m) the Second Lien Backstop Parties, (n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (p) with respect to each of the foregoing Persons in clauses (a) through (o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.**          **Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the
holder (or authorized signatory of such a holder) of an FLFO Claim in the amount set forth
below.

$
Debtor: _____

**Item 2.**          **Votes on the Plan.**  Please vote either to accept or to reject the Plan with respect
to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both
to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the
Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do
not check the box in Item 3 below, (iii) vote to reject the Plan and do not check the box in
Item 3 below, or (iv) are a Released Party as defined in the Plan, in each case you shall be
deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of
the release, injunction, and exculpation provisions.**

The undersigned holder of a Class 3 FLFO Claim votes to (check one box):

☐     **Accept** the Plan          ☐     **Reject** the Plan

**Item 3.  Optional Opt Out Release Election.**  Check the box below if you elect not to grant the
releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above,
or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to
grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at
your option.  If you voted to accept the Plan in Item 2 above, you may not complete this Item 3,
and if you complete this Item 3, your "**opt out**" election will be ineffective.  **If you are a
Released Party as defined in the Plan, you may not complete this Item 3, and if you
complete this Item 3, your "opt out" election will be ineffective.**  If you submit a rejecting
Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box
below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to

the fullest extent permitted by applicable law.  The Holder of a Class 3 FLFO Claim set forth in Item 1 elects to:

ᆖ       **OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the FLFO Claims described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.   Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.   Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.   You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.   The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.   If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.   If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.   There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.    PLEASE RETURN YOUR BALLOT PROMPTLY.

11.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.    THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**E-Ballot Voting Instructions**

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on April 26, 2021, the Voting Deadline, unless such time is extended by the Debtors. HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  _____**

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS APRIL 26, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW.  IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| **Prime Clerk Addresses for Receipt of Ballots** |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing** <br> **c/o Prime Clerk LLC** <br> **One Grand Central Place** <br> **60 East 42nd Street, Suite 1440** <br> **New York, New York 10165** |

**Exhibit 4**

**Form of Ballot – Class 4 (FLTL Claims)**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| **In re:** | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, et al.,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.[2]** | § | **(Jointly Administered)** |
| | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11
PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES**

**CLASS 4:  FLTL CLAIMS**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE APRIL 26, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors,* filed on March 24, 2021 (Docket No. 1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**").  The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates,* filed on March 24, 2021 (Docket No. 1117) (including any exhibits and schedules

---

[1]  All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).   The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

thereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of February 3March 24, 2021 (the "Voting Record Date"), a holder (a "**Holder**") of aany claim against the Debtors arising under that certain *Amended and Restated First Lien CreditTerm Loan Agreement*, dated as of April 11, 2018, (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition FLTL Credit Agreement**"), by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition FLTL Administrative Agent, and the Prepetition FLTL lLenders from time to time, and the other partyies thereto, and Cantor Fitzgerald Securities, as administrative agent and collateral agentas in effect immediately before the Effective Date.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent atby calling 1-855-631-5346 (domestic) or 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com. Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 4 FLTL Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 4**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed FLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed FLTL Claim, each holder of an Allowed FLTL Claim willshall receive its Pro Rata Share of: (i) 100% of the New Equity Interests, subject to dilution by (w) the Backstop Commitment Equity Premium Interests, (x) the New Equity Interests issued upon the exercise of the New Money Warrants and, thereafter, subject to dilution by, SLTL Warrants, and GUC Warrants, (y) any New Equity Interests issued pursuant to the Management Incentive Plan, and (z) the New Equity Interests issued upon the implementation of the Management Incentive Planin connection with the Equity Rights Offering; and (ii) the FLTL Subscription Rights.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate

against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 4 FLTL ~~Secured~~ Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, ~~or~~ (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, <u>or (v) are a Released Party as defined in the Plan,</u> you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)   <u>RELEASES BY THE DEBTORS</u>.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, <u>ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,</u> THE CREDIT BID PURCHASE AGREEMENT, <u>~~THE~~THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN</u> BACKSTOP COMMITMENT LETTER, <u>THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS,</u> THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED**

OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (~~the~~THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE

ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

**10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERSTHE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11

CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL

BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

**10.7(c)** <u>Release of Liens</u>.

Except as otherwise specifically provided in the Plan <u>(including all Liens securing the FLFO Claims or the First Lien Exit Facility)</u> or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO ~~Lenders~~<u>Secured Parties</u>, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

**10.8** <u>Exculpation</u>.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, <u>ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER,</u> THE CREDIT BID PURCHASE AGREEMENT, THE <u>SECOND LIEN</u> BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS<u>, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS</u>, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE <u>FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN</u> BACKSTOP COMMITMENT LETTER<u>, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS</u>, THE APACHE DEFINITIVE DOCUMENTS, <u>ANY</u>

**ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,** THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

      **10.6**    **Plan Injunction.**

      **(a)**    **Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the**

foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

### 10.9     Injunction Related to Releases and Exculpation.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the ~~Consenting Creditors, (f) the Prepetition Agents, (g~~Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~h~~l) the Exit Facility Agents, (~~i~~m) the Exit Facility Lenders, (~~j~~n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (~~k~~q) with respect to each of the foregoing Persons in clauses (a) through (~~j~~p), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants,

representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the ~~Consenting Creditors, (e) the Prepetition Agents, (f)~~ Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~g~~k) the Exit Facility Agents, (~~h~~l) the Exit Facility Lenders, (~~i~~m) the Second Lien Backstop Parties, (~~j~~n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (~~k~~p) with respect to each of the foregoing Persons in clauses (a) through (~~j~~o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of an FLTL Claim in the amount set forth below.

> $
>
> Debtor:_____

**Item 2.  Votes on the Plan.**  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, or (iii) vote to reject the Plan and do not check the box in Item 3 below, or (iv) are a Released Party as defined in the Plan, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned holder of a Class 4 FLTL Claim votes to (check one box):

**Accept** the Plan            **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective.  **If you are a Released Party as defined in the Plan, you may not complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.**  If you submit a rejecting

Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of a Class 4 FLTL Claim set forth in Item 1 elects to:

**OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the~~an~~ FLTL ~~Secured~~ Claim~~s~~ described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

### E-Ballot Voting Instructions

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on ~~March 9~~April 26, 2021, the Voting Deadline, unless such time is extended by the Debtors. HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**  _____

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~MARCH 9~~APRIL 26, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW.  IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| Prime Clerk Addresses for Receipt of Ballots |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing<br>c/o Prime Clerk LLC<br>One Grand Central Place<br>60 East 42nd Street, Suite 1440<br>New York, New York 10165** |

**Exhibit 3̶5̶**

**Form of Ballot – Class 5 (SLTL Claims)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[2] | § | (Jointly Administered) |
| | § | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES

## CLASS 5:  SLTL CLAIMS

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE MARCH 9APRIL 26, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliatesd Debtors*, filed on [ ]March 24, 2021 (as may beDocket No. 1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified or supplemented from time to time, the "**Plan**").  The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on [ ]March 24, 2021 (Docket No. [ ]) (1117) (including any exhibits and schedules thereto and as may be

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

further amended, ~~modified, or supplemented from time to time~~supplemented, or modified, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of ~~February 3~~March 24, 2021 (the "Voting Record Date"), a holder (a "**Holder**") of ~~a~~any claim against the Debtors arising ~~from~~under that certain *Amended and Restated Second Lien Term Loan Agreement*, dated as of April 11, 2018, (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Prepetition SLTL Credit Agreement**")~~,~~ by and among Fieldwood Energy LLC, as borrower, Fieldwood Energy Inc., as holdings, the Prepetition SLTL Administrative Agent, and the Prepetition SLTL ~~l~~Lenders ~~from time to time, and the other~~ part~~yies~~ thereto, ~~and Cortland Capital Market Services LLC, as administrative agent and collateral agent~~as in effect immediately before the Effective Date.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent by calling 1-855-631-5346 (domestic) or 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com. Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 5 SLTL Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 5**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed SLTL Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed SLTL Claim, each holder of an Allowed SLTL Claim ~~will~~shall receive its Pro Rata Share of: (i) the ~~General Unsecured Claims Cash Pool (along with Class 6)~~SLTL Warrants and (ii) the SLTL Subscription Rights.

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan. To have your

vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of Class 5 SLTL Claims. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, ~~or~~ (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, or (v) are a Released Party as defined in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)   <u>RELEASES BY THE DEBTORS</u>.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, ~~THE~~THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR**

3

EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (~~the~~THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE

DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

**10.7(b)** <u>**RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**</u>

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, <u>ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER,</u> THE CREDIT BID PURCHASE AGREEMENT, THE <u>SECOND LIEN</u> BACKSTOP COMMITMENT LETTER, <u>THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS,</u> THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED <u>BY THE RELEASING PARTIES,</u> TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT ~~SUCH HOLDERS~~<u>THE RELEASING PARTIES</u> OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE

TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT

ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

**10.7(c)  Release of Liens.**

Except as otherwise specifically provided in the Plan **(including all Liens securing the FLFO Claims or the First Lien Exit Facility)** or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO ~~Lenders~~**Secured Parties**, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

**10.8    Exculpation.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, **ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER,** THE CREDIT BID PURCHASE AGREEMENT, THE **SECOND LIEN** BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS**, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS**, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE **FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN** BACKSTOP COMMITMENT LETTER**, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS**, THE APACHE DEFINITIVE DOCUMENTS, **ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,** THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN

SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

       **10.6**    <u>**Plan Injunction**</u>.

       **(a)**    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or

indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**10.9     Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

***Exculpated Parties*** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the ~~Consenting Creditors, (f) the Prepetition Agents, (g~~Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~h~~l) the Exit Facility Agents, (~~i~~m) the Exit Facility Lenders, (~~j~~n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (~~k~~q) with respect to each of the foregoing Persons in clauses (a) through (~~j~~p),~ each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and

nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the ~~Consenting Creditors, (e) the Prepetition Agents, (f)~~Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~g~~k) the Exit Facility Agents, (~~h~~l) the Exit Facility Lenders, (~~i~~m) the Second Lien Backstop Parties, (~~j~~n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (~~k~~p) with respect to each of the foregoing Persons in clauses (a) through (~~j~~o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of an SLTL Claim in the amount set forth below.

> $
>
> Debtor:_____

**Item 2.  Votes on the Plan.**  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, ~~or~~ (iii) vote to reject the Plan and do not check the box in Item 3 below, _or (iv) are a Released Party as defined in the Plan,_ in each case you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned holder of a Class 5 SLTL Claim votes to (check one box):

**Accept** the Plan          **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective.  **If you _are a Released Party as defined in the Plan, you may not complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective._**  If you submit a rejecting

Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of a Class 5 SLTL Claim set forth in Item 1 elects to:

<strong>OPT OUT</strong> of the releases contained only in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of an SLTL Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2. Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail. If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3. You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4. The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6. If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7. If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8. There may be changes made to the Plan that do not cause material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL) OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

### **E-Ballot Voting Instructions**

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on <del>March 9</del><ins>April 26</ins>, 2021, the Voting Deadline, unless such time is extended by the Debtors. <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM</u>.  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:  _____**

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS <del>MARCH 9</del><ins>APRIL 26</ins>, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW.  IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTTIFY THE VOTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEAST 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| Prime Clerk Addresses for Receipt of Ballots |
|:---:|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

**Exhibit 46**

**Form of Ballot – Class 6A (General Unsecured Trade Claims)**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]

PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[2] | § | (Jointly Administered) |
| | § | |

### BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES

#### CLASS 6A: ~~GENERAL~~ UNSECURED TRADE CLAIMS

> **IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE ~~MARCH 9~~APRIL 26, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its ~~Debtor~~ Affiliates~~d~~ Debtors*, filed on ~~[ ]~~March 24, 2021 (~~as may be~~Docket No. 1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified ~~or supplemented from time to time~~, the "**Plan**"). The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on ~~[ ]~~March 24, 2021 (Docket No. ~~[ ]) (~~1117) (including any exhibits and schedules thereto and as may be further amended, ~~modified, or supplemented from time to time~~supplemented, or modified, the "**Disclosure Statement**").

---

[1]    All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of March 24, 2021 (the "Voting Record Date"), (i) a third-party provider of goods or services to the Debtors that holds any unsecured claim (or secured claim that becomes unsecured by agreement, settlement, or order of the Bankruptcy Court) and (ii) by this ballot have elected that such claim be treated as an Unsecured Trade Claim under the Plan, including by entering into or agreeing to enter into a Trade Agreement.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-855-631-5346 (domestic) or 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com. Please be advised that the Voting Agent cannot provide legal advice. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6A Unsecured Trade Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6A**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed Unsecured Trade Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction of and in exchange for such Allowed Unsecured Trade Claim, each holder of an Allowed Unsecured Trade Claim that has executed a Trade Agreement shall receive: (i) if 14% of the aggregate amount of all Allowed Unsecured Trade Claims is less than or equal to $8,000,000, Cash in an amount equal to 14% of the Allowed amount of such holder's Allowed Unsecured Trade Claim; or (ii) if 14% of the aggregate amount of Allowed Unsecured Trade Claims is greater than $8,000,000, its Pro Rata share of $8,000,000.

**IN ORDER TO RECEIVE A DISTRIBUTION IN ACCORDANCE WITH THE TREATMENT DESCRIBED ABOVE, A HOLDER OF A CLASS 6A UNSECURED TRADE CLAIM MUST ELECT TO BE TREATED AS AN UNSECURED TRADE CLAIM UNDER THE PLAN, INCLUDING BY ENTERING INTO A TRADE AGREEMENT, A FORM OF WHICH IS ATTACHED HERETO AS EXHIBIT A.**

**IF A HOLDER OF A CLASS 6A UNSECURED TRADE CLAIM DOES NOT ELECT TO BE TREATED AS AN UNSECURED TRADE CLAIM, SUCH HOLDER WILL RECEIVE THE TREATMENT PROVIDED FOR IN CLASS 6B, DESCRIBED BELOW.**

---

2

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or after the Effective Date, in full and final satisfaction of an in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive, up to the full amount of such holder's Allowed General Unsecured Claim, its Pro Rata Share of: (i) the GUC Warrants (as defined in the Plan); and (ii) any Residual Distributable Value (as defined in the Plan).

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

**ADDITIONAL NOTICE REGARDING TREATMENT FOR CLASS 6A**

**PLEASE NOTE THAT IF A HOLDER OF A CLASS 6A UNSECURED TRADE CLAIM THAT MAKES THE DISTRIBUTION ELECTION SET FORTH IN ITEM 2 ENTERS INTO A TRADE AGREEMENT, AND THEN TRANSFERS THE UNDERLYING CLAIM BEFORE THE DISTRIBUTION RECORD DATE, SUCH HOLDER WAIVES ANY RECOVERY ON ACCOUNT OF THE TRANSFERRED CLAIM AND VOIDS THE TRADE AGREEMENT.   SUBSEQUENTLY, IT IS IN THE DEBTORS' SOLE DISCRETION WHETHER TO SEEK TO ENTER INTO A TRADE AGREEMENT WITH THE TRANSFEREE OF THE CLAIM.**

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 6A Unsecured Trade Claims or Class 6B General Unsecured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, or (v) are a Released Party as defined in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)   RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR**

**INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED**

5

**BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE**

**SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

**ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.**

**10.7(c)   Release of Liens.**

**Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of**

7

**trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.**

**10.8    Exculpation.**

**TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,  THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT**

**CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

**10.6**    **Plan Injunction.**

**(a)**    **Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; _provided_, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-**

**Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.**

**(b)      By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.**

**10.9      Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

***Exculpated Parties*** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (l) the Exit Facility Agents, (m) the Exit Facility Lenders, (n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (q) with respect to each of the foregoing Persons in clauses (a) through (p) each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

***Released Parties*** means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (k) the Exit Facility Agents, (l) the Exit Facility Lenders, (m) the Second Lien Backstop Parties,

(n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (p) with respect to each of the foregoing Persons in clauses (a) through (o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN
PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.  Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the
holder (or authorized signatory of such a holder) of an Unsecured Trade Claim in the amount and
against the Debtor set forth below.

$ _____

Debtor: _____

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to
your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to
accept and reject the Plan, shall not be counted in determining acceptance or rejection of the
Plan.

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do
not check the box in Item 3 below, (iii) vote to reject the Plan and do not check the box in
Item 3 below, or (iv) are a Released Party as defined in the Plan, in each case you shall be
deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of
the release, injunction, and exculpation provisions.**

The undersigned holder of a Class 6A Unsecured Trade Claim votes to (check one box):

   ☐   **Elect** treatment under Class 6A Unsecured Trade Claims and **Accept** the Plan

   ☐   **Elect** treatment under Class 6B General Unsecured Claims and **Accept** the Plan

   ☐   **Reject** the Plan

**By voting to elect treatment under Class 6A Unsecured Trade Claims and accepting the
Plan, the undersigned holder of a Class 6A Unsecured Trade Claim hereby acknowledges
that entering into a Trade Agreement, a form of which is attached hereto as Exhibit A, is a
requirement for receiving treatment under Class 6A Unsecured Trade Claims.**

**The undersigned holder of a Class 6A Unsecured Trade Claim further acknowledges that its failure to enter into a Trade Agreement will preclude it from receiving the treatment provided in the Plan for a holder of an Allowed Class 6A Unsecured Trade Claim and will result in it deemed to have elected treatment under Class 6B General Unsecured Claims.**

**The undersigned holder of a Class 6A Unsecured Trade Claim further acknowledges that if it makes the Distribution Election in Item 2 above and transfers its Claim before the Distribution Record Date, the undersigned waives any recovery on account of such Claim irrespective of whether the undersigned holder entered into a Trade Agreement.  The undersigned holder of a Class 6A Unsecured Trade Claim acknowledges that the transfer of its Claim before the Distribution Record Date will void the Trade Agreement as it applies to the undersigned holder.  For the avoidance of doubt, if the undersigned holder transfers its Claim before the Distribution Record Date, it is within the sole discretion of the Debtors whether to seek to enter into a Trade Agreement with the transferee of the Claim.**

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective.  **If you are a Released Party as defined in the Plan, you may not complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.**  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of a Class 6A Unsecured Trade Claim set forth in Item 1 elects to:

⊑   **OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of an Unsecured Trade Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____

Name of Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

E-Mail Address

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.  Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.  Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, all boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.  The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.  If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.  Please note that the Voting Record Date is not the Distribution Record Date.  Therefore, if you make the "Distribution Election" in Item 2 and transfer your Claim before the Distribution Record Date, you are waiving any recovery under the Claim, irrespective of whether you entered into the Trade Agreement.  Please note that any such transfer of your Claim before the Distribution Record Date will void the Trade Agreement as it applies to the holder that submits this Ballot and/or enters into a Trade Agreement.

8.  If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

9.  There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

10. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

11. PLEASE RETURN YOUR BALLOT PROMPTLY.

12. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL); EMAILING FIELDWOODBALLOTS@PRIMECLERK.COM; OR BY SENDING AN ELECTRONIC MAIL MESSAGE TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

13. THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**E-Ballot Voting Instructions**

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website. Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on April 26, 2021, the Voting Deadline, unless such time is extended by the Debtors. HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM. Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#: _____**

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS APRIL 26, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW.  IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEASTT 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| **Prime Clerk Addresses for Receipt of Ballots** |
|:---:|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing<br>c/o Prime Clerk LLC<br>One Grand Central Place<br>60 East 42nd Street, Suite 1440<br>New York, New York 10165** |

**_Exhibit A to Form of Ballot – Class 6A (Unsecured Trade Claims)_**

[Form of Trade Agreement]

**THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.   YOU HAVE RECEIVED A SEPARATE BALLOT SOLICITING YOUR ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN FOR WHICH A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS AGREEMENT IS SUBJECT TO CHANGE.   THIS AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## ONGOING TRADE AGREEMENT FOR UNSECURED TRADE CREDITOR

Fieldwood Energy LLC and its affiliated debtors and debtors in possession in pending chapter 11 cases being jointly administered under Case No. 20-33948 (the "**Debtors**"), [NewCo Entity] (the "**Company**"), and the party identified in the signature block below ("**Vendor**") hereby enter into the following trade agreement (this "**Agreement**") dated as of [  ], 2021.

### Recitals

(i)      On August 3, 2020 and August 4, 2020 (as applicable, the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**").

(ii)      On March 24, 2021, the Bankruptcy Court held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, dated March 24, 2021 (Docket No. 1117) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**") and granted related relief, and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto.   The Disclosure Statement Order, among other things, authorized the Debtors to solicit votes to accept or reject the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on March 24, 2021 (Docket No. 1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**").[1]

(iii)      Vendor desires to provide goods to or perform services for the Company, and the Company desires to pay Vendor for such goods or services in accordance with terms of the Plan.

(iv)      The Debtors, Company, and Vendor (collectively, the "**Parties**") agree to the following terms with respect to the business dealings between the Parties.

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

**Agreement**

1.      Recitals.  The foregoing recitals are incorporated herein by reference as if fully set forth below.

2.      Agreed Prepetition Claim.  Vendor represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Debtors to Vendor, including on account of any Agreed 503(b)(9) Claim,[2] is $[  ] (the "**Prepetition Claim**").  On the Effective Date of the Plan (the "**Effective Date**"), the Debtors or Company, as applicable, shall pay Vendor a lump sum of $[  ] on account of the Prepetition Claim in accordance with the treatment specified in Section 4.6 of the Plan for holders of Allowed Unsecured Trade Claims in Class 6A and, to the extent the Prepetition Claim includes an Agreed 503(b)(9) Claim, in accordance with the treatment thereof provided in the Plan (the "**Prepetition Claim Payment**"), and such amounts will be applied to any invoices previously received by the Company on account of the Prepetition Claim.  Vendor agrees that the Prepetition Claim Payment is being made in full satisfaction of any prepetition amounts allegedly owed to Vendor by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date.

3.      Payment for Postpetition Goods or Services.  Goods or services provided by Vendor to the Debtors after the Petition Date and prior to the Effective Date, based on physical receipt date in the case of goods, regardless of the date of issuance of the purchase order, shall be paid for in full in the ordinary course of business consistent with the Customary Trade Terms (as defined below) as either an Administrative Expense Claim under the Plan or, to the extent that any Administrative Expense Claim is assumed by Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, such claim shall be solely an obligation of the Credit Bid Purchaser and Vendor shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

4.      Agreement to Supply.

        a.      Vendor shall supply goods or perform services to or for the Company, and the Company shall accept and pay for goods or services from Vendor on trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), availability, and other programs) in place in the 12 months before the Petition Date, or such other trade terms that are mutually acceptable to the Company and the Vendor (including 60-day payment terms) (the "**Customary Trade Terms**").

        b.      The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company or Vendor except as agreed in writing by the Parties.  For the avoidance of doubt, material provisions of the Customary Trade Terms include:

---

[2]      An "**Agreed 503(b)(9) Claim**" is any claim by which the Parties agree that Vendor delivered to the Debtors, and the Debtors received, goods valued at $[  ] within 20 days before the Petition Date, for which Vendors did not receive payment.

(i)     Prepetition Claim Payments:  The Debtors or Company, as applicable, shall pay the Prepetition Claim Payment in accordance with the treatment specified in Section 4.6 of the Plan for holders of Allowed Unsecured Trade Claims in Class 6A and, to the extent the Prepetition Claim includes an Agreed 503(b)(9) Claim, in accordance with the treatment provided therefor in the Plan.

(ii)    Ongoing Trade Payments:  The Company shall pay all undisputed portions of invoices for goods or services provided post-effective date of the Plan (based upon physical receipt date in the case of goods, regardless of the date of issuance of an invoice) on Customary Trade Terms following the Company's receipt of a true and correct statement of account from Vendor and the supporting documentation; *provided, however*, that the Company is authorized to withhold, from payments due to Vendor under this Agreement, any amounts owing to the Company hereunder.  The Company shall notify Vendor promptly, in advance, of any such amounts to be withheld.

(iii)   Company Property:  If any equipment, materials, or other assets or property owned by the Debtors, the Company, and debtor affiliates, or any of the Debtors' or Company's subcontractors ("**Company Property**") is located on property controlled or owned by Vendor, Vendor agrees to allow the Debtors or the Company or their agents to enter onto such property upon reasonable prior notice to Vendor and under reasonable circumstances and during normal business hours (unless otherwise agreed by the Debtors or Company, as applicable, and the Vendor) in order to remove any such Company Property located on such property at the Debtors' or Company's sole cost and expense, as applicable.

c.     Vendor shall continue to honor any existing allowances, credits, contractual obligations, or balances that accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

5.     Waiver of Liens.  **Vendor agrees that upon execution of this Agreement, and in exchange for the consideration provided hereunder, Vendor shall waive any and all liens against the Debtors, their assets and any co-owned assets, or any other affiliated persons or entity (including any co-working interest owner of the Debtors), or any such person's or entity's respective assets or property (real or personal), regardless of the statute or other legal authority upon which the lien is asserted, held or asserted by the Vendor relating to the Unsecured Trade Claim (as defined in the Plan).**

6.     Other Matters.

a.     This Agreement will be effective on the later of the Effective Date or the date this Agreement is fully executed.

b.     Vendor agrees to withdraw any proof of claim inconsistent with the Prepetition Claim.

c.      Vendor agrees that it shall not require, and shall not seek or file a pleading with the Bankruptcy Court seeking, a lump-sum payment on account of any outstanding allowed administrative claims Vendor may assert arising from the delivery of postpetition goods or services, if payment of such claims are not yet due.

d.      Vendor will not separately seek payment from the Debtors or the Company on account of the Prepetition Claim (including any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) other than as set forth under this Agreement and pursuant to the Plan, unless this Agreement is terminated and any amounts paid on account of the Prepetition Claim Payment is returned to the Debtors.

e.      Vendor will not file or otherwise assert against the Debtors or the Company, their respective assets, or any other affiliated person or entity, or any such person's or entity's respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any prepetition amounts allegedly owed to Vendor by the Debtors arising from agreements or transactions entered into before the Petition Date.  Furthermore, if Vendor has filed or asserted, or taken steps to file or assert, such a lien before entering into this Agreement, Vendor will promptly take all necessary actions to remove such liens at its sole cost and expense.

**f.      Vendor acknowledges and agrees that entry into this Agreement is a requirement for receiving any recovery as provided for in Section 4.6 of the Plan for a holder of a Class 6A Unsecured Trade Claim.**

g.      If the Company fails to pay for goods or services delivered post-effective date pursuant to the Customary Trade Terms, and the Company fails to cure such default within fourteen (14) Business Days after receiving notice of such default, then Vendor shall have the right to terminate this Agreement, in which event Vendor (i) shall have no obligation to continue to provide goods or services to the Company pursuant to the Customary Trade Terms, and (ii) may exercise any rights and remedies available under applicable law.  Furthermore, on the Effective Date, any unpaid invoices for undisputed goods or services delivered by the Vendor to the Debtors postpetition in the ordinary course business at the Debtors' request and direction (regardless of the date of issuance of the purchase order) shall be entitled to treatment as an Administrative Expense Claim under the Plan without the need for Vendor to have to file any formal request for payment or proof of claim in the amount of the goods accepted by the Debtors that remain unpaid when due pursuant to this Agreement; *provided, however*, that to the extent that any Administrative Expense Claim is assumed by Credit Bid Purchaser pursuant to the Credit Bid Purchase Agreement, such claim shall be solely an obligation of the Credit Bid Purchaser and Vendor shall have no recourse to or Claim against the Debtors or Post-Effective Date Debtors or their assets and properties.

7.    Breach.  If Vendor fails to comply with the terms and provisions of this Agreement, the Debtors or Company, as applicable, may, in its sole discretion and without further order of the Bankruptcy Court, immediately terminate this Agreement; *provided that* the Agreement may be reinstated if Vendor fully cures the underlying default of the Agreement within five (5) business days from the date of receipt of notice of termination of the Agreement; or (B) the Company reaches a commercially acceptable agreement with Vendor.

8.    Notice.

If to Vendor, then to the person and address identified in the signature block hereto.

If to the Debtors:

> Fieldwood Energy LLC
> 2000 W. Sam Houston Parkway, S. Suite 1200
> Houston, Texas 77042
> Attn:   Michael Dane (MDane@fwellc.com)
>            Thomas R. Lamme (TLamme@fwellc.com)

> -and-

> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> Attn:   Matthew S. Barr (matt.barr@weil.com)
>            Jessica Liou (jessica.liou@weil.com)

If to the Company:

> [_]

> - and –

> [_]

9.    Representations and Acknowledgements.  The Parties agree, acknowledge and represent that:

a.    any payment of the Prepetition Claim will be subject to the terms of a confirmed Plan;

b.    the Parties have reviewed the terms and provisions of the Plan and this Agreement and consent to be bound by the terms of this Agreement and that this Agreement is expressly subject to the  terms of a confirmed Plan;

c. Vendor has waived any rights, defenses, or causes of action to the setoff or recoupment contemplated hereunder and expressly consents to the Debtors taking such setoff or recoupment consistent therein;

d. if Vendor refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Bankruptcy Code or applicable law;

e. in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Bankruptcy Court for a determination of their relative rights, in which event, no action may be taken by either Party, including the discontinuing of shipment of goods from Vendor to the Company, until a ruling of the Bankruptcy Court is obtained; and

f. nothing herein shall be deemed to constitute an assumption of any contract, lease, purchase order, change work authorization, or other agreement with Vendor or a waiver or modification of the Debtors rights to assume, assume and assign, or reject any contract, lease, purchase order, change work authorization, or other agreement with Vendor pursuant to section 365 of the Bankruptcy Code. The Debtors and the Company hereby reserve all rights available to it in connection with the Debtors' chapter 11 cases and arising under the Bankruptcy Code or otherwise applicable law.

10. Confidentiality. In addition to any other obligations of confidentiality between Vendor and the Debtors or the Company, as applicable, Vendor agrees to hold in confidence and not disclose to any party: (a) the existence of this Agreement; (b) any and all payments made by the Debtors pursuant to this Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "**Confidential Information**"); *provided*, that if Vendor is required to disclose any or all of the Confidential Information pursuant to law, regulation, or judicial or governmental order, Vendor shall immediately provide the Debtors and the Company with prompt written notice so that the Debtors or the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided, further*, that, if such remedy is not obtained, Vendor shall furnish only such Confidential Information as Vendor is legally required to provide.

11. Miscellaneous.

a. The Parties hereby represent and warrant that: (i) they have full authority to execute this Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Agreement.

b. To the extent there is any inconsistency between the terms and conditions contained in this Agreement and the terms and conditions of any prior oral or written agreement between the Parties, the terms and conditions of this Agreement shall govern. This Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties.

c.      Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d.      This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e.      The Parties hereby submit to the exclusive jurisdiction of the Bankruptcy Court to resolve any dispute with respect to or arising from this Agreement.

f.      This Agreement (including any claims or causes of action based on the Agreement) will be governed by the internal laws of the State of [Delaware] without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby.

g.      This Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature page follows*]

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**DEBTORS**                                    **VENDOR**

_____          _____
By:                                            By:
Title:                                         Title:
                                               E-mail:
                                               Address:

**COMPANY**

_____
By:
Title:

**Exhibit 7**

**Form of Ballot – Class 6B (General Unsecured Claims)**

**No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot.[1]**

**PLEASE NOTE THAT, EVEN IF YOU INTEND TO VOTE TO REJECT THE PLAN, YOU MUST STILL READ, COMPLETE, AND EXECUTE THIS ENTIRE BALLOT.**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| | § | |
| **FIELDWOOD ENERGY LLC, *et al.*,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| **Debtors.[2]** | § | **(Jointly Administered)** |
| | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE JOINT CHAPTER 11 PLAN OF FIELDWOOD ENERGY LLC AND ITS DEBTOR AFFILIATES**

**CLASS 6B:  GENERAL UNSECURED CLAIMS**

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT ON OR BEFORE APRIL 26, 2021 AT 4:00 PM (PREVAILING CENTRAL TIME) (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases (collectively, the "Debtors") are soliciting votes with respect to the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on March 24, 2021 (Docket No. 1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**").  The Plan is attached as **Exhibit A** to the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Debtor Affiliates*, filed on March 24, 2021 (Docket No. 1117) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**").

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of ~~February 3~~March 24, 2021 (the "Voting Record Date"), a holder (a "**Holder**") of any Claim

---

[1]   All capitalized terms used but not defined herein or in the enclosed voting instructions have the meanings ascribed to them in the Plan, attached as **Exhibit A** to the Disclosure Statement.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).   The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

(including any FLTL Deficiency Claim) against a Debtor, other than a DIP Claim, Postpetition Hedge Claim, Administrative Expense Claim (including a Fee Claim), FLFO Claim, FLTL Secured Claim, SLTL Claim, Other Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, SLTL Unsecured Trade Claim, Subordinated Securities Claim, or Intercompany Claim that is not entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court (a "**General Unsecured Claim**").  For the avoidance of doubt, General Unsecured Claims shall not include FLTL Deficiency Claims or SLTL Deficiency Claims.

The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a copy of the Disclosure Statement, you may obtain a copy from Prime Clerk LLC (the "**Voting Agent**" or "**Prime Clerk**") at no charge by accessing the Debtors' restructuring website at https://cases.primeclerk.com/FieldwoodEnergy.

If you have any questions on how to properly complete this Ballot, please contact the Voting Agent at 1-855-631-5346 (domestic) or 1-917-460-0913 (international) or emailing fieldwoodballots@primeclerk.com.  Please be advised that the Voting Agent cannot provide legal advice.  You may wish to seek legal advice concerning the Plan and the classification and treatment of your Class 6B General Unsecured Claim under the Plan.

---

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 6B**

As described in more detail in the Disclosure Statement, if the Plan is confirmed and the Effective Date occurs, each except to the extent that a holder of a an Allowed General Unsecured Claim will receive agrees to less favorable treatment, on or after the Effective Date, in full and final satisfaction of an in exchange for such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive, up to the full amount of such holder's Allowed General Unsecured Claim, its Pro Rata Share of: (i) the General Unsecured Claims Cash Pool (along with Class 5) and its Pro Rata Share of the GUC Warrants (as defined in the Plan); and (ii) any Residual Distributable Value (as defined in the Plan).

**PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.**

---

The Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if it is accepted by the Holders of (i) at least two-thirds in amount of the allowed Claims or Interests voted in each Impaired Class, and (ii) if the Impaired Class is a class of Claims, more than one-half in number of the allowed Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not indicate that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of, or distribution on account of, Class 6B General Unsecured Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,**
**EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, ~~or~~ (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, or (v) are a Released Party as defined in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:**

**10.7(a)**   **RELEASES BY THE DEBTORS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, ~~THE~~ THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER**

APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (~~the~~THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES

**ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT ~~SUCH HOLDERS~~THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT**

IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT.  FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT

ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

**10.7(c)  Release of Liens.**

Except as otherwise specifically provided in the Plan **(including all Liens securing the FLFO Claims or the First Lien Exit Facility)** or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO ~~Lenders~~**Secured Parties**, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

**10.8    Exculpation.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, **ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER,** THE CREDIT BID PURCHASE AGREEMENT, THE **SECOND LIEN** BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS**, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS**, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE **FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN** BACKSTOP COMMITMENT LETTER**, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS**, THE APACHE DEFINITIVE DOCUMENTS, **ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,** THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN

SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

**10.6    Plan Injunction.**

(a)    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or

indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**10.9     Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

*Exculpated Parties* means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the ~~Consenting Creditors, (f) the Prepetition Agents, (g~~Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~h~~l) the Exit Facility Agents, (~~i~~m) the Exit Facility Lenders, (~~j~~n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (~~k~~q) with respect to each of the foregoing Persons in clauses (a) through (~~j~~p)~~,~~ each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and

nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the ~~Consenting Creditors, (e) the Prepetition Agents, (f)~~Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (g~~k~~) the Exit Facility Agents, (h~~l~~) the Exit Facility Lenders, (i~~m~~) the Second Lien Backstop Parties, (j~~n~~) the ERO Backstop Parties, (o) the Apache PSA Parties, and (k~~p~~) with respect to each of the foregoing Persons in clauses (a) through (j~~o~~), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**PLEASE READ THE ATTACHED VOTING INFORMATION
AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, AND 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Principal Amount of Claims.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of such a holder) of a General Unsecured Claim in the amount and against the Debtor set forth below.

$\$$

Debtor: _____

**Item 2.  Votes on the Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or reject the Plan and do not check the box in Item 3 below, ~~or~~ (iii) vote to reject the Plan and do not check the box in Item 3 below, or (iv) are a Released Party as defined in the Plan, in each case you shall be deemed to have consented to the release provisions set forth in Section 10.7(b) of the Plan.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions.**

---

The undersigned holder of a Class 6B General Unsecured Claim votes to (check one box):

**Accept** the Plan                **Reject** the Plan

**Item 3.  Optional Opt Out Release Election**.  Check the box below if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  If you voted to reject the Plan in Item 2 above, or if you are abstaining from voting to accept or reject the Plan, check this box if you elect not to grant the releases contained in Section 10.7(b) of the Plan.  Election to withhold consent is at your option.  If you voted to accept the Plan in Item 2 above, you may not complete this Item 3, and if you complete this Item 3, your "**opt out**" election will be ineffective.  **If you are a Released Party as defined in the Plan, you may not complete this Item 3, and if you complete this Item 3, your "opt out" election will be ineffective.**  If you submit a rejecting Ballot, or if you abstain from submitting a Ballot and, in each case, you do not check the box

below, you will be deemed to consent to the releases contained in Section 10.7(b) of the Plan to the fullest extent permitted by applicable law.  The Holder of a Class 6B General Unsecured Claim set forth in Item 1 elects to:

**OPT OUT** of the releases contained only in Section 10.7(b) of the Plan.

**Item 4.  Acknowledgments**.  By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of a General Unsecured Claim described in Item 1 as of the Voting Record Date, and (iii) all authority conferred, or agreed to be conferred, pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____
Name of Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

_____
E-Mail Address

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.   Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted.  **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**

2.   Complete the Ballot by providing all the information requested, signing, dating, and returning the Ballot to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted.  Ballots may not be submitted to the Voting Agent by facsimile or electronic mail.  If neither the "**accept**" nor "**reject**" box is checked in Item 2, both boxes are checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot shall not be counted in determining acceptance or rejection of the Plan.

3.   You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.

4.   The Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or an assertion or admission of Claims.

5.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

6.   If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

7.   If (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

8.   There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

9.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

10.     PLEASE RETURN YOUR BALLOT PROMPTLY.

11.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING 1-855-631-5346 (DOMESTIC) OR 1-917-460-0913 (INTERNATIONAL); EMAILING FIELDWOODBALLOTS@PRIMECLERK.COM; OR BY SENDING AN ELECTRONIC              MAIL              MESSAGE              TO HTTPS://CASES.PRIMECLERK.COM/FIELDWOODENERGY/ THROUGH THE "**SUBMIT INQUIRY**" LINK.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

12.     THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

<u>**E-Ballot Voting Instructions**</u>

**To properly submit your Ballot electronically, you must electronically complete, sign, and return this customized electronic Ballot by utilizing the E-ballot platform on Prime Clerk's website by visiting https://cases.primeclerk.com/FieldwoodEnergy/, clicking on the "Submit E-Ballot" link and following the instructions set forth on the website.  Your Ballot must be received by Prime Clerk no later than 4:00 P.M. (prevailing Central Time) on ~~March 9~~April 26, 2021, the Voting Deadline, unless such time is extended by the Debtors. <u>HOLDERS ARE STRONGLY ENCOURAGED TO SUBMIT THEIR BALLOTS VIA THE E-BALLOT PLATFORM.</u>  Prime Clerk's "E Ballot" platform is the sole manner in which ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

If you are unable to use the E-ballot platform or need assistance in completing and submitting your Ballot, please contact Prime Clerk (i) via phone at 1-855-631-5346 (domestic) or 1-917-460-0913 (international); (ii) via email at fieldwoodballots@primeclerk.com; or (iii) online at https://cases.primeclerk.com/FieldwoodEnergy/, by clicking the "**Submit Inquiry**" link.

**Holders who cast a Ballot using Prime Clerk's "E-Ballot" platform should NOT also submit a paper Ballot.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ~~MARCH 9~~APRIL 26, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE**

**BALLOTS ARE ACTUALLY RECEIVED BY THE VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**IF YOU ARE VOTING BY PAPER BALLOT, PLEASE SUBMIT THAT PAPER BALLOT BY (A) FIRST CLASS MAIL; (B) OVERNIGHT DELIVERY; OR (C) PERSONAL DELIVERY TO THE VOTING AGENT AT THE APPLICABLE ADDRESS BELOW.  IF YOU WISH TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE NOTIFY THE VOTING AGENT VIA EMAIL AT FIELDWOODBALLOTS@PRIMECLERK.COM AT LEASTT 24 HOURS IN ADVANCE OF THE ANTICIPATED DELIVERY DATE.**

| Prime Clerk Addresses for Receipt of Ballots |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

**Exhibit 58**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **FIELDWOOD ENERGY LLC, et al.,** | § | **Case No. 20-33948 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**NOTICE OF NON-VOTING STATUS**

On August 3, 2020 (the "**Petition Date**"), Fieldwood Energy LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

On ~~February 3~~March 24, 2021~~,~~ the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") held a hearing (the "**Disclosure Statement Hearing**") at which it approved the *Disclosure Statement for the Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors, dated March 24, 2021 (Docket No. 1117) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**") and granted related relief, and thereafter entered an order (the "**Disclosure Statement Order**") with respect thereto. The Disclosure Statement Order, among other things, authorized* the Debtors to solicit votes to accept the *Third Amended* Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on ~~[ ]~~March 24, 2021 (Docket No. ~~[ ]) (as may be amended, "**Disclosure Statement**")[2] and thereafter entered an order (the "**Order**") with respect thereto. The Order, among other things, authorizes the Debtors to solicit votes to accept the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors*, filed on [ ], 2021, as **Exhibit A** to the Disclosure Statement.~~1115) (including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**").[2] If you have any questions about the status of your Claim or Interest or if you wish to obtain paper copies of the Plan and Disclosure Statement, you

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

~~[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.~~

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

may contact the Debtors' Voting Agent, Prime Clerk LLC ("**Prime Clerk**") online at https://cases.primeclerk.com/FieldwoodEnergy/, or by telephone, toll-free, at 1-855-631-5346 (domestic) or 1-917-460-0913 (international), or via email at fieldwoodballots@primeclerk.com. Copies of the Plan and Disclosure Statement can also be accessed online at https://cases.primeclerk.com/FieldwoodEnergy/.  Please be advised that Prime Clerk cannot provide legal advice.

**You are receiving this notice (this "Notice of Non-Voting Status") because, according to the Debtors' books and records, you are a holder of:**

> (i) ~~Class 1 (Other Secured Claims) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan;~~

> (i) ~~(ii)~~ **Class 2 (~~Other~~ Priority Non-Tax Claims) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan;**

> (iii) ~~Class 3 (FLFO Claims) under the Plan, which provides that your Claim(s) against the Debtors is unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Plan and not entitled to vote on the Plan;~~

> (ii) ~~(iv)~~ **Class 8 (Subordinated Securities Claims) under the Plan, which provides that your Interest in the Debtors is not entitled to a recovery and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and not entitled to vote on the Plan; and/or**

> (iii) ~~(v)~~ **Class 10 (Existing Equity Interests) under the Plan, which provides that your Interest in the Debtors is not entitled to a recovery and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and not entitled to vote on the Plan.**

The deadline for filing objections to confirmation of the Plan is ~~March 9~~**April 26**, **2021 at 4:00 p.m. (prevailing Central Time) (the "Plan Objection Deadline")**.  Any objections to the Plan must be:  (i) in writing; (ii) filed with the Clerk of the Bankruptcy Court together with proof of service thereof; (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection; and (iv) conform to the applicable Bankruptcy Rules and the Local Rules.

---

If you have questions about this Notice, please contact Prime Clerk LLC

**Online Inquiry**:  Visit https://cases.primeclerk.com/FieldwoodEnergy/ and click "Submit

---

Inquiry"
**Telephone**:  1-855-631-5346 (domestic) or 1-917-460-0913 (international)

**Email**: fieldwoodballots@primeclerk.com

**Website**:  https://cases.primeclerk.com/FieldwoodEnergy/

## NOTICE REGARDING CERTAIN RELEASE,
## EXCULPATION, AND INJUNCTION PROVISIONS IN PLAN

If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, ~~or~~ (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, or (v) are a Released Party as defined in the Plan, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan.  The releases as presented in the Plan are provided below:

### 10.7(a)   RELEASES BY THE DEBTORS.

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, ~~THE~~ THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING

UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (~~the~~THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES

**ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.**

**10.7(b)   RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT ~~SUCH HOLDERS~~THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT**

IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, THE ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT

ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

**10.7(c)  Release of Liens**.

Except as otherwise specifically provided in the Plan **(including all Liens securing the FLFO Claims or the First Lien Exit Facility)** or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors.  For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO ~~Lenders~~**Secured Parties**, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

**10.8   Exculpation**.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, **ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER,** THE CREDIT BID PURCHASE AGREEMENT, THE **SECOND LIEN** BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS**, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS**, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE **FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN** BACKSTOP COMMITMENT LETTER**, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS**, THE APACHE DEFINITIVE DOCUMENTS, **ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS,** THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN

SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN. THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN. THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.

      10.6   **Plan Injunction**.

      (a)   Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or

indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

### 10.9    Injunction Related to Releases and Exculpation.

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

***Exculpated Parties*** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the ~~Consenting Creditors, (f) the Prepetition Agents, (g~~Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~h~~l) the Exit Facility Agents, (~~i~~m) the Exit Facility Lenders, (~~j~~n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (~~k~~q) with respect to each of the foregoing Persons in clauses (a) through (~~j~~p)~~,~~ each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and

nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the ~~Consenting Creditors, (e) the Prepetition Agents, (f)~~Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~g~~k) the Exit Facility Agents, (~~h~~l) the Exit Facility Lenders, (~~i~~m) the Second Lien Backstop Parties, (~~j~~n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (~~k~~p) with respect to each of the foregoing Persons in clauses (a) through (~~j~~o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**YOU ARE ADVISED AND ENCOURAGED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

Dated:   [   ], 2021
       Houston, Texas

                            */s/  DRAFT*

                            WEIL, GOTSHAL & MANGES LLP
                            Alfredo R. Pérez (15776275)
                            700 Louisiana Street, Suite 1700
                            Houston, Texas 77002
                            Telephone:  (713) 546-5000
                            Facsimile:  (713) 224-9511
                            Email: Alfredo.Perez@weil.com

                            -and-

                            WEIL, GOTSHAL & MANGES LLP
                            Matthew S. Barr (admitted *pro hac vice*)
                            Jessica Liou (admitted *pro hac vice*)
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone:  (212) 310-8000
                            Facsimile:  (212) 310-8007
                            Email:  Matt.Barr@weil.com
                                     Jessica.Liou@weil.com

                            *Attorneys for Debtors*
                            *and Debtors in Possession*

---

If you have questions about this Notice, please contact Prime Clerk LLC

**Online Inquiry**:  Visit https://cases.primeclerk.com/FieldwoodEnergy/ and click "Submit Inquiry"
**Telephone**:  1-855-631-5346 (domestic) or 1-917-460-0913 (international)

**Email**: fieldwoodballots@primeclerk.com

**Website**:  https://cases.primeclerk.com/FieldwoodEnergy/

**OPTIONAL:  RELEASE OPT OUT FORM**

You are receiving this opt out form (the "**Release Opt Out Form**") because you are, or may be, a holder of a Claim or Interest that is not entitled to vote on the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (Docket No. 1115) (the "**Plan**").[3][1]  A holder of Claims and/or Interests is deemed to grant the releases set forth below unless such holder affirmatively opts out on or before the Opt Out Deadline (as defined below).

If you believe you are a holder of a Claim or Interest with respect to the Debtors and choose to opt out of the releases set forth in Section 10.7(b) of the Plan, please complete, sign, and date this Release Opt Out Form and return it promptly via first class mail or in the enclosed pre-addressed, pre-paid envelope provided, overnight courier, or hand delivery to the Voting Agent at the applicable address set forth below:

| Prime Clerk Addresses for Receipt of Ballots |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

**Alternatively, you may submit your Opt Out Form via Prime Clerk's online portal by visiting https://cases.primeclerk.com/FieldwoodEnergy/.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt Out Form.**

**Holders of Claims or Interests who fill out an Opt Out Form using the Claims Agent's online portal should NOT also submit a paper Opt Out Form.**

**THIS RELEASE OPT OUT FORM MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY ~~MARCH 9~~APRIL 26, 2021 AT 4:00 P.M. (PREVAILING CENTRAL TIME) (THE "OPT OUT DEADLINE").  IF THE RELEASE OPT OUT FORM IS RECEIVED AFTER THE OPT OUT DEADLINE, IT WILL NOT BE COUNTED.**

---

[3][1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement.

**Item 1.  Amount of Claim.**  The undersigned certifies that, as of ~~February 3~~March 24, 2021, the undersigned was the holder of Class ~~1 (Other Secured Claims), Class~~ 2 (~~Other~~ Priority ~~Claims;~~ ~~Class 3 (FLFO~~Non-Tax Claims), Class 8 (Subordinated Securities Claims), and/or Class 10 (Existing Equity Interests).

**Item 2.  Releases.**

The Plan contains the following release provisions:

**If you (i) vote to accept the Plan, (ii) do not vote either to accept or to reject the Plan or do not opt out of granting the releases set forth in the Plan, (iii) vote to reject the Plan but do not opt out of granting the releases set forth in the Plan, or (iv) were given notice of the opportunity to opt out of granting releases set forth in the Plan but did not opt out, you shall be deemed to have consented to the releases contained in Section 10.7 of the Plan. The releases as presented in the Plan are provided below:**

**10.7(a)  <u>RELEASES BY THE DEBTORS.</u>**

**AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE CREDIT BID PURCHASE AGREEMENT, ~~THE~~THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, AND THE ESTATES, IN EACH CASE ON BEHALF OF THEMSELVES AND THEIR RESPECTIVE SUCCESSORS, ASSIGNS, AND REPRESENTATIVES AND ANY AND ALL OTHER PERSONS THAT MAY PURPORT TO ASSERT ANY CAUSE OF ACTION DERIVATIVELY, BY OR THROUGH THE FOREGOING PERSONS, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, AND CAUSES OF ACTION, LOSSES, REMEDIES, OR LIABILITIES WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ACCRUED OR UNACCRUED, EXISTING OR HEREINAFTER ARISING, WHETHER IN LAW OR**

EQUITY, WHETHER SOUNDING IN TORT OR CONTRACT, WHETHER ARISING UNDER FEDERAL OR STATE STATUTORY OR COMMON LAW, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE, STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENTS OR OTHERWISE THAT THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE ESTATES, OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE DECOMMISSIONING AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(a) OF THE PLAN (~~the~~THE "DEBTOR RELEASES"), WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASES ARE: (I) IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE RELEASED CLAIMS RELEASED BY THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS AND THE ESTATES, (IV) IN THE BEST INTERESTS OF THE DEBTORS, THE ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS, (IV) FAIR, EQUITABLE AND REASONABLE, (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VII) A BAR TO ANY OF THE

DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THE ESTATES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

10.7(b)  **RELEASES BY HOLDERS OF CLAIMS AND INTERESTS**.

AS OF THE EFFECTIVE DATE, EXCEPT FOR THE RIGHTS AND REMEDIES THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE EXIT FACILITY DOCUMENTS, AND THE RESTRUCTURING TRANSACTIONS, ON AND AFTER THE EFFECTIVE DATE, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMITTED BY LAW, AS SUCH LAW MAY BE EXTENDED SUBSEQUENT TO THE EFFECTIVE DATE BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, INCLUDING ANY CAUSES OF ACTION ARISING UNDER CHAPTER 5 OF THE BANKRUPTCY CODE), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACRUED, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE BY STATUTE, WHETHER ARISING UNDER FEDERAL OR STATE, STATUTORY OR COMMON LAW, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR ANY OTHER APPLICABLE INTERNATIONAL, FOREIGN, OR DOMESTIC LAW, RULE STATUTE, REGULATION, TREATY, RIGHT, DUTY, REQUIREMENT OR OTHERWISE, THAT SUCH HOLDERS THE RELEASING PARTIES OR THEIR ESTATES, AFFILIATES, HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS, ASSIGNS, MANAGERS, ACCOUNTANTS, ATTORNEYS, REPRESENTATIVES, CONSULTANTS, AGENTS, AND ANY OTHER PERSONS CLAIMING UNDER OR THROUGH THEM WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR THEIR ESTATES, THE CHAPTER 11 CASES, THE RESTRUCTURING, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE SUBJECT MATTER OF, OR THE

TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS OR INTERACTIONS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIMS OR INTERESTS BEFORE OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, PREPARATION, OR CONSUMMATION OF THE PLAN, THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE CREDIT BID PURCHASE AGREEMENT, THE EXIT FACILITY DOCUMENTS, THE APACHE DEFINITIVE DOCUMENTS, ~~THE~~**ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN** BACKSTOP COMMITMENT LETTER**, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS**, THE DECOMMISSIONING AGREEMENT OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, RELATING THERETO, OR THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, IN ALL CASES BASED UPON ANY ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCES TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.

ENTRY OF THE CONFIRMATION ORDER BY THE BANKRUPTCY COURT SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES IN SECTION 10.7(B) OF THE PLAN (THE "THIRD-PARTY RELEASE"), WHICH INCLUDES, BY REFERENCE, EACH OF THE RELATED PROVISIONS AND DEFINITIONS UNDER THE PLAN, AND, FURTHERMORE, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS (I) CONSENSUAL, (II) ESSENTIAL TO THE CONFIRMATION OF THE PLAN, (III) GIVEN IN EXCHANGE FOR THE GOOD, VALUABLE AND ADEQUATE CONSIDERATION PROVIDED BY THE RELEASED PARTIES, (IV) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE, (V) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (VI) FAIR, EQUITABLE AND REASONABLE, (VII) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING, AND (VIII) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION 10.7(B) OF THE PLAN, NO PARTY SHALL BE RELEASED TO THE EXTENT SUCH RELEASE WOULD IMPAIR THE DECOMMISSIONING SECURITY OR THE APACHE PSA PARTIES' ABILITY TO DRAW ON THE DECOMMISSIONING SECURITY, IN ANY RESPECT. FOR THE AVOIDANCE OF DOUBT, ANY AND ALL CLAIMS THE APACHE PSA PARTIES MAY HAVE AGAINST FWE I RELATED TO THE DECOMMISSIONING AGREEMENT ARISING POST-EFFECTIVE DATE AND ANY SECURITY OBTAINED, PROVIDED, OR PLEDGED IN CONNECTION WITH THE DECOMMISSIONING AGREEMENT WILL BE PRESERVED AND ANY AND ALL CLAIMS FWE I MAY HAVE AGAINST THE APACHE PSA PARTIES RELATED TO THE DECOMMISSIONING AGREEMENT

ARISING POST-EFFECTIVE DATE AND THE DECOMMISSIONING SECURITY WILL BE PRESERVED.

**10.7(c)** **Release of Liens**.

Except as otherwise specifically provided in the Plan (including all Liens securing the FLFO Claims or the First Lien Exit Facility) or in any contract, instrument, release, or other agreement or document contemplated under or executed in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is secured and Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors. For the avoidance of doubt, all liens and encumbrances on, interests in, and claims against the Legacy Apache Properties (as defined in the Apache Term Sheet) and the other FWE I Assets (as defined in Part A of Schedule I of the Plan of Merger) held by the Prepetition FLFO ~~Lenders~~Secured Parties, Prepetition FLTL Lenders, and Prepetition SLTL Lenders shall be released, discharged, and of no further force or effect as of the Effective Date.

**10.8** **Exculpation**.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN, THE CONFIRMATION ORDER AND THE OBLIGATIONS CONTEMPLATED BY THE DOCUMENTS IN THE PLAN SUPPLEMENT, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE CREDIT BID PURCHASE AGREEMENT, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EXIT FACILITY DOCUMENTS, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, AND THE RESTRUCTURING TRANSACTIONS, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY WILL BE RELEASED AND EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, REMEDY LOSS, LIABILITY AND CAUSE OF ACTION IN CONNECTION WITH OR ARISING OUT OF THE ADMINISTRATION OF THE CHAPTER 11 CASES; THE NEGOTIATION AND PURSUIT OF THE DIP FACILITY, THE CREDIT BID PURCHASE AGREEMENT, THE NEW MONEY INVESTMENT, THE EXIT FACILITY DOCUMENTS, THE FIRST LIEN EXIT FACILITY COMMITMENT LETTER, THE SECOND LIEN BACKSTOP COMMITMENT LETTER, THE EQUITY RIGHTS OFFERINGS, THE ERO BACKSTOP AGREEMENTS, THE APACHE DEFINITIVE DOCUMENTS, ANY ADDITIONAL PREDECESSOR AGREEMENT DOCUMENTS, THE DISCLOSURE STATEMENT, THE RESTRUCTURING, THE PLAN (INCLUDING THE PLAN

**SUPPLEMENT), AND ALL DOCUMENTS RELATING TO THE FOREGOING, OR THE SOLICITATION OF VOTES FOR, OR CONFIRMATION OF, THE PLAN; THE FUNDING OF THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; THE ISSUANCE OF SECURITIES UNDER OR IN CONNECTION WITH THE PLAN; THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS; OR THE TRANSACTIONS IN FURTHERANCE OF ANY OF THE FOREGOING; OTHER THAN CLAIMS OR CAUSES OF ACTION ARISING OUT OF OR RELATED TO ANY ACT OR OMISSION OF AN EXCULPATED PARTY THAT CONSTITUTES INTENTIONAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE AS DETERMINED BY A FINAL ORDER, BUT IN ALL RESPECTS SUCH PERSONS WILL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES PURSUANT TO THE PLAN.  THE EXCULPATED PARTIES HAVE ACTED IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE WITH REGARD TO THE SOLICITATION OF THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS WILL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.  THE EXCULPATION WILL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS, AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.**

> **10.6    <u>Plan Injunction</u>.**

> **(a)    Except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, all Persons who have held, hold, or may hold Claims or Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Post-Effective Date Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Post-Effective Date Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or**

indirectly, any encumbrance of any kind against a Debtor, a Post-Effective Date Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided*, that nothing contained in the Plan shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Post-Effective Date Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

(b)     By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Section 10.6 of the Plan.

**10.9     Injunction Related to Releases and Exculpation.**

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or the Confirmation Order.

**Relevant Definitions Related to Release and Exculpation Provisions:**

***Exculpated Parties*** means collectively, and in each case in their capacities as such during the Chapter 11 Cases (a) the Debtors, (b) the Post-Effective Date Debtors, (c) FWE I, (d) the DIP Agent and DIP Lenders under the DIP Facility, (e) the ~~Consenting Creditors, (f) the Prepetition Agents, (g~~Prepetition FLFO Secured Parties, (f) the Consenting Creditors, (g) the Prepetition FLFO Collateral Agent, (h) the Prepetition FLTL Administrative Agent, (i) the Prepetition SLTL Agent, (j) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (k) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~h~~l) the Exit Facility Agents, (~~i~~m) the Exit Facility Lenders, (~~j~~n) the Second Lien Backstop Parties, (o) the ERO Backstop Parties, (p) the Apache PSA Parties, and (~~k~~q) with respect to each of the foregoing Persons in clauses (a) through (~~j~~p)~~,~~ each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and

nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Released Parties* means, collectively, (a) the Debtors, (b) the Post-Effective Date Debtors, (c) the DIP Agent and DIP Lenders under the DIP Facility, (d) the ~~Consenting Creditors, (e) the Prepetition Agents, (f)~~Prepetition FLFO Secured Parties, (e) the Consenting Creditors, (f) the Prepetition FLFO Collateral Agent, (g) the Prepetition FLTL Administrative Agent, (h) the Prepetition SLTL Agent, (i) the Creditors' Committee and the current and former members of the Creditors' Committee (solely in their capacities as such), (j) NewCo and all of its subsidiaries (including the Credit Bid Purchaser), (~~h~~k) the Exit Facility Lenders, (~~i~~m) the Second Lien Backstop Parties, (~~j~~n) the ERO Backstop Parties, (o) the Apache PSA Parties, and (~~k~~p) with respect to each of the foregoing Persons in clauses (a) through (~~j~~o), each of their current and former affiliates, and each such Entity's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, members, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), attorneys, accountants, investment bankers, consultants, representatives and other professionals, such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, and any and all other persons or entities that may purport to assert any cause of action derivatively, by or through the foregoing entities.

*Releasing Parties* means collectively, (a) the holders of all Claims or Interests that vote to accept the Plan, (b) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan, (c) the holders of all Claims or Interests that vote, or are deemed, to reject the Plan but do not opt out of granting the releases set forth herein, (d) the holders of all Claims and Interests that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out, and (e) the Released Parties (even if such Released Party purports to opt out of the releases set forth herein).

**PURSUANT TO THE PLAN, IF YOU, AS A HOLDER OF CLAIMS OR INTERESTS WHO HAS BEEN GIVEN NOTICE OF THE OPPORTUNITY TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN SECTION 10.7(b) OF THE PLAN BUT DO NOT OPT OUT, YOU ARE AUTOMATICALLY DEEMED TO HAVE CONSENTED TO THE RELEASE PROVISIONS IN SECTION 10.7(b) OF THE PLAN.**

**By checking the box below, the undersigned holder of the Claims and/or Interests identified in Item 1 above, having received notice of the opportunity to opt out of granting the releases contained in Section 10.7(b) of the Plan:**

| |
|---|
| **Elects to opt out of the releases contained in Section 10.7(b) of the Plan.** |

**Item 3.  Certifications.**  By signing this Release Opt Out Form, the undersigned certifies that:

(a)    as of the Voting Record Date, either: (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of the Claims or Interests set forth in Item 1;

(b)    the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt Out Form and that the Release Opt Out Form is made pursuant to the terms and conditions set forth therein;

(c)    the undersigned has submitted the same election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d)    no other Release Opt Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Release Opt Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Release Opt Out Forms are hereby revoked.

Name of Holder:                    _____

Signature:                         _____

Name and Title of Signatory        _____
(if different than Holder):

Street Address:                    _____

City, State, Zip Code:             _____

Telephone Number:                  _____

E-mail Address:                    _____

Date Completed:                    _____

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT OUT FORM AND RETURN IT TO THE VOTING AGENT BY MAIL, OVERNIGHT, OR HAND DELIVERY TO:**

| Prime Clerk Addresses for Receipt of Ballots |
|---|
| **If by First Class Mail, Hand Delivery, or Overnight Mail** |
| **Fieldwood Energy Ballot Processing**<br>**c/o Prime Clerk LLC**<br>**One Grand Central Place**<br>**60 East 42nd Street, Suite 1440**<br>**New York, New York 10165** |

**THE OPT OUT DEADLINE IS ~~MARCH 9~~APRIL 26, 2021 AT 4:00 p.m. (PREVAILING CENTRAL TIME).**

**Alternatively, to submit your Opt Out Form via the Prime Clerk's online portal, please visit https://cases.primeclerk.com/FieldwoodEnergy/.   Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt Out Form.**

**Prime Clerk's online platform is the sole manner in which opt out forms will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Holders of Claims or Interests who fill out an Opt Out Form using the Claims Agent's online portal should NOT also submit a paper Opt Out Form.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Opt-Out Form:**

Unique Opt Out ID#: _____