IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| FIELDWOOD ENERGY LLC, *et al.*, | § | Case No. 20-33948 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

## OMNIBUS REPLY OF DEBTORS TO
## <u>OBJECTIONS TO DISCLOSURE STATEMENT</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Dynamic Offshore Resources NS, LLC (0158); Fieldwood Energy LLC (6778); Fieldwood Energy Inc. (4991); Fieldwood Energy Offshore LLC (4494); Fieldwood Onshore LLC (3489); Fieldwood SD Offshore LLC (8786); Fieldwood Offshore LLC (2930); FW GOM Pipeline, Inc. (8440); GOM Shelf LLC (8107); Bandon Oil and Gas GP, LLC (9172); Bandon Oil and Gas, LP (9266); Fieldwood Energy SP LLC (1971); Galveston Bay Pipeline LLC (5703); and Galveston Bay Processing LLC (0422).  The Debtors' primary mailing address is 2000 W. Sam Houston Parkway S., Suite 1200, Houston, TX  77042.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................2

FACTUAL BACKGROUND ..........................................................................................7

ARGUMENT ..................................................................................................................8

I.       The Disclosure Statement Contains Adequate Information and Should be
         Approved ...........................................................................................................8

         A.       Whether the Information Provided is Adequate Under Section 1125(b) of
                  the Bankruptcy Code is Determined on a Case-by-Case Basis .............................8

         B.       The Disclosure Statement, as Amended, Provides Adequate Information
                  for Approval Under Section 1125 of the Bankruptcy Code ..................................10

         C.       The Disclosure Statement Provides Adequate Information Regarding the
                  Debtors' Oil and Gas Leases, FWE I, FWE III, and the Abandoned
                  Properties ........................................................................................................12

                  1.       The Debtors' Oil and Gas Leases ..............................................................12

                  2.       FWE I ...................................................................................................14

                  3.       FWE III .................................................................................................15

                  4.       Abandoned Properties .............................................................................15

         D.       The Debtors Have Also Provided Significant Amounts of Information to
                  Predecessors and Sureties in Response to Both Formal and Informal
                  Document and Information Requests ........................................................................18

II.      Confirmation Objections Should be Overruled and Considered at the
         Confirmation Hearing ......................................................................................20

III.     Conclusion .......................................................................................................22

Fieldwood Energy LLC ("**FWE**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**"), hereby submit this omnibus reply in response to the objections[2] to and in further support of the *Motion of Debtors for Entry of Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures; (III) Scheduling Confirmation Hearing; (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan; (V) Approving Notice and Objection Procedures for the Assumption of Executory Contracts and Unexpired Leases; (VI) Approving Procedures for Objections to the Assignment and Transfer of Property of The Estate; (VII) Approving Bid Submission Deadline and Procedures for Submission of Higher or Better Bids; and (VIII) Granting Related Relief* (ECF No. 724) (the "**Motion**"), seeking, among other things, approval of the *Disclosure Statement for Third Amended Joint Chapter 11 Plan of*

---

[2] The Debtors received objections to the Motion from (i) Valero Marketing and Supply Company (ECF No. 795); (ii) Lewis Andrews and Patrick Burnett (ECF No. 884); (iii) Brian Cloyd (ECF No. 883); (iv) Chevron U.S (ECF No. 880); (v) XTO Offshore, Inc., HHE Energy Company, and XH LLC (ECF Nos. 900; 1082); (vi) Marathon Oil Company (ECF Nos. 924; 1109); (vii) Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company (ECF No. 932); (viii) Eni US Operating Co. Inc. and Eni Petroleum US LLC (ECF Nos. 937; 1066); (ix) Sea Robin Pipeline Company, LLC, West Cameron Dehydration Company, L.L.C., Florida Gas Transmission, LLC, Stingray Pipeline Company, L.L.C., Trunkline Gas Company, LLC, and Trunkline Field Services LLC (ECF No. 954); (x) EnVen Energy Ventures, LLC (ECF No. 955); (xi) Freeport-McMoRan Oil & Gas LLC and McMoRan Oil & Gas LLC (ECF No. 978); (xii) ConocoPhillips Company, The Louisiana Land & Exploration Company and Burlington Resources Offshore (ECF No. 979); (xiii) Merit Energy Company, LLC (ECF No. 980); (xiv) Hunt Oil Company and its subsidiaries Chieftain International (U.S.) L.L.C. (formerly Chieftain International (U.S.), Inc.) and Hunt Chieftain Development L.P. (ECF No. 981); (xv) JX Nippon Oil Exploration (U.S.A.) Limited (ECF No. 983); (xvi) Samson Contour Energy E & P, LLC (ECF Nos. 990; 1069); (xvii) LLOG Exploration Offshore, L.L.C., and LLOG Energy, L.L.C. (ECF No. 992); (xviii) Hess Corporation (ECF No. 993); (xix) Aspen American Insurance Company, Berkeley Insurance Company, Everest Reinsurance Company, and Sirius America Insurance Company (ECF No. 996); (xx) Helis Oil & Gas Company, LLC (ECF No. 1007); (xxi) North American Specialty Insurance Company (ECF No. 1030); (xxii) Zurich American Insurance (ECF No. 1032); (xxiii) HCC International Insurance (ECF Nos. 1033; 1054); (xxiv) W&T Offshore, Inc. and W&T Energy VI, LLC (ECF No. 1034); (xxv) U.S. Specialty Insurance Company (ECF No. 1035); (xxvi) Philadelphia Indemnity Insurance Company (ECF No. 1036); (xxvii) Hanover Insurance Company, Liberty Mutual Insurance Company, Travelers Casualty & Surety Company of America, and XL Specialty Insurance Company (ECF No. 1040); (xxviii) Shell Offshore (ECF No. 1056); (xxix) CNOOC Petroleum Offshore U.S.A., Inc. (ECF No. 1060); (xxx) BP Exploration & Production Inc. (ECF No. 1064); (xxxi) RLI Insurance Company (ECF No. 1065); (xxxii) Cox Oil, LLC, Cox Operating LLC, Energy XXI GOM, LLC, Energy XXI Gulf Coast, Inc., Energy XXI Onshore, LLC, Energy XXI Pipeline, LLC, Energy XXI Pipeline I, LLC, Energy XXI Pipeline II, LLC, M21K, LLC, and EPL Oil & Gas, Inc. (ECF No. 1067); and (xxxiii) the United States on behalf of the United States Department of the Interior (ECF No. 1095) (collectively, the "Objectors" and the "Objections").

*Fieldwood Energy LLC and its Affiliated Debtors* (ECF No. 1117, including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Disclosure Statement**") in connection with the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and its Affiliated Debtors* (ECF No. 1115, including any exhibits and schedules thereto and as may be further amended, supplemented, or modified, the "**Plan**"), and respectfully represent as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      The rapid fall in commodity prices in 2020, along with the ongoing extraordinary pandemic conditions, caused the Debtors to seek relief under Chapter 11 of the Bankruptcy Code to restructure the Debtors' business to find solutions to the level of liabilities that no longer are supported by the existing business.  The Debtors have created a Plan to handle these liabilities, both in the capital structure and with respect to decommissioning obligations. The Plan, which will be supported by new capital being provided in these challenging economic conditions, creates a framework for the decommissioning obligations to be managed in an organized, environmentally safe manner and with no liability imposed on the American taxpayer.

2.      As further detailed in the Disclosure Statement, the Plan provides for a comprehensive restructuring to be accomplished through a series of transactions including, among other things:

> (i)      the sale of certain of the Debtors' assets to their Prepetition FLTL Lenders,[3] including the specified Deepwater Assets and Shelf Assets (the "**Credit Bid Transaction**") for aggregate consideration of approximately $1.03 billion, consisting of (i) a credit bid of the Allowed FLTL Claims up to the FLTL Claims Allowed Amount, (ii) cash in the amount up to approximately $105 million, (iii) the GUC Warrants, (iv) the SLTL Warrants, and (v) the assumption of certain

---

[3] Capitalized terms used but not defined herein have the meanings assigned to such terms in the Disclosure Statement.

2

liabilities set forth in the Credit Bid Purchase Agreement, including the approximately $119 million of the principal amount of the First Lien Exit Facility;

(ii)     after consummating the Credit Bid Transaction, implementation of a divisive merger pursuant to which FWE will be divided into Fieldwood Energy I LLC ("**FWE I**") and Fieldwood Energy III LLC ("**FWE III**"); FWE I will be allocated and vested with certain assets FWE acquired from Apache (the "**Legacy Apache Properties**") and related liabilities and obligations and FWE III will be allocated and vested with all of FWE's assets other than (a) the assets sold pursuant to the Credit Bid Transaction, (b) the Legacy Apache Properties, and (c) the Abandoned Properties (defined below) (the "**FWE III Properties**");

(iii)    in accordance with the Chevron Term Sheet attached as Exhibit O to the Disclosure Statement, also through the divisive merger, FWE will create Fieldwood Energy IV LLC ("**FWE IV**"), which will be allocated and vested with certain interests in the leases assigned previously to FWE by Chevron U.S.A. Inc. ("**CUSA**") and its predecessors and affiliates, and with the platforms, wells, pipelines and equipment (including production equipment) located on and attributable to the CUSA interest in such leases, and any hydrocarbons produced from such leases, if applicable (collectively "**FWE IV Properties**"); and

(iv)    immediately upon the occurrence of the Effective Date, certain of the Debtors' assets (the "**Abandoned Properties**") will be abandoned pursuant to sections 105(a) and 554(a) of the Bankruptcy Code, in accordance with the terms and procedures set forth in section I.G. of the Disclosure Statement in order to ensure the safe and orderly operational transfer of the Abandoned Properties currently operated by the Debtors.

3.     As a result of obtaining support from several additional, key stakeholders since the Plan and Disclosure Statement were first filed on January 1, 2021, including the Creditors Committee, CUSA, and an ad hoc group of SLTL Lenders represented by Kasowitz Benson Torres LLP (the "**Ad Hoc Group of SLTL Lenders**"), the Debtors are pleased to report that the Plan is now supported by (i) every creditor group in the Debtors' capital structure (the DIP Lenders, the Prepetition FLFO Lenders holding 100% of the FLFO Claims, the Prepetition FLTL Lenders holding approximately 87% of the FLTL Claims, and the Prepetition SLTL Lenders holding approximately 88.71% of the SLTL Claims), (ii) Apache Corporation ("**Apache**"), the predecessor in interest and operator for the vast majority of the Debtors' Shelf Assets (representing approximately 63% of the Debtors' P&A Obligations), and (iii) the

Creditors' Committee.   Additionally, CUSA, the predecessor in interest for FWE properties representing approximately 7% of the Debtors' operated P&A Obligations, has executed the Chevron Term Sheet, which represents an additional consensual arrangement supporting the Plan.   The Plan also reflects ongoing discussions the Debtors have had with their regulators, including representatives from the Bureau of Ocean Energy Management ("**BOEM**"), Bureau of Safety and Environmental Enforcement ("**BSEE**"), the Department of Interior ("**DOI**") and the Department of Justice ("**DOJ**"), and other key constituencies (collectively, "**Government Agencies**").

4.      The Plan provides for, among other things, the following key benefits to the Debtors' stakeholders:

(i)      ensures that all plugging and abandonment and decommissioning obligations (the "**P&A Obligations**") are addressed in a methodical and safe manner by responsible parties, as determined by BSEE, at no cost to taxpayers, with approximately 87% of such P&A Obligations addressed on a consensual basis and the ability to obtain additional consensual arrangements with other predecessors in interest (the "**Predecessors**") and/or co-working interests owners ("**CIOs**")[4] prior to confirmation of the Plan;

(ii)      recapitalizes and preserves significant going concern value for a key part of the Debtors' business, including the jobs of over 1,000 employees and contractors, which includes the most experienced P&A team in the Gulf of Mexico, one that has a substantial track record of decommissioning properties across a large footprint (decommissioning a total approximately 402 platforms, 1,237 wells, and 451 pipelines from 2013 to 2020 and spending, in the aggregate, more than $1.5 billion on P&A activities);

(iii)      provides for the most expedient decommissioning of properties in FWE I, FWE III, and FWE IV and provides a framework for the Government Agencies to order decommissioning the Abandoned Properties by capable companies; and

---

[4] By contrast, if an objection were upheld such that the Debtors could not proceed with solicitation of the Plan, the objecting parties, many of whom currently have undisputed joint and several liability for accrued decommissioning obligations under their ownership or are obligated to reimburse such obligations, will end up with a meaningless, short-term victory while disrupting, and in fact abandoning, the organized, environmentally safe manner in which these decommissioning obligations can be handled.  The Debtors believe this Plan represents the most equitable and balanced solution available to them under the current circumstances and is in accordance with the Bankruptcy Code and the applicable regulations.

(iv)    maximizes recoveries to the Debtors' creditors.

5.    Additionally, over the past several months, the Debtors have worked closely with numerous stakeholders, including the Government, Predecessors, and sureties to explore consensual deals to address the Debtors' P&A Obligations.  As detailed in the Disclosure Statement, the Debtors will continue to work toward reaching long-term commercial agreements similar to FWE I and FWE IV and have taken a number of steps to that end, including (among other things) offering two types of commercial solutions to Predecessors to ensure a safe and orderly transition of the Abandoned Properties on the Effective Date.

6.    Against this backdrop, the Debtors are now seeking approval of the Disclosure Statement for the Debtors' Plan, as well as the approval of solicitation and voting procedures, among other things, as set forth in the Motion.  Since the original Disclosure Statement was filed on January 1, 2021, the Debtors have received 38 filed objections to the Disclosure Statement (collectively, the "**Objections**" and the parties filing such Objections, the "**Objectors**") and have collected feedback from their several of their key stakeholders, including the Government and a group of Predecessors and Sureties (referred to as the "**Stakeholder Group**").  As further detailed below, the Debtors have worked diligently to address the various issues and concerns raised in the Objections and during the numerous meetings held with the Government, the Stakeholder Group, and other parties in interest over the past few months, by, among other things, (i) supplementing the original Disclosure Statement with additional information and exhibits, (ii) significantly expanding the scope of information included on the Debtors' oil and gas lease schedules, (iii) providing Predecessors and Sureties access to Relativity and box sites containing detailed information regarding each of the Debtors' federal offshore leases, (iv) producing several thousand documents in response to formal and informal discovery requests, (v) making numerous presentations tailored to Predecessors and Sureties, and

(vi) providing comprehensive Operational Transition Packets ("**OTPs**"), form 90 day transition service agreements, and long-term commercial arrangement term sheets to each of their Predecessors.

       7.     As a result of the foregoing efforts, the Debtors were able to resolve certain of the Objections and significantly narrow the scope of most of the others that remain outstanding.  Notwithstanding the Debtors' best efforts to resolve all of the Objectors' issues with the Disclosure Statement, certain objections remain outstanding.  Accordingly, attached hereto as **Exhibit A** is a chart (the "**Objection Chart**") summarizing (i) each of the remaining Objections and (ii) the Debtors' responses thereto.  Many of the Objections overlap and raise similar issues, and they generally fall into the following categories:

- **Disclosure Objections**.  These are Objections to the adequacy of disclosure in the Disclosure Statement.  As set forth below and in the Objection Chart, the Debtors have made amendments to the Disclosure Statement to provide the requested information where available and appropriate or otherwise disclosed information directly to the Objecting Party where requests for additional disclosure were either (i) too voluminous to include in the Disclosure Statement and/or (ii) a set of documents or information particularized to a specific party, such as the OTPs provided to affected Predecessors.  In other circumstances, however, the requested disclosure is either unavailable or unnecessary, and the Debtors have so noted in the Objection Chart.  Under the circumstances of these Chapter 11 Cases, the Disclosure Statement's disclosure of all the available information is "adequate" and should be approved.

- **Solicitation/Timing Objections**.  These are Objections to the solicitation and voting tabulation procedures as proposed by the Debtors in the Motion and Objections to timing.  For the reasons set forth in the Objection Chart, these objections should be overruled.

- **Confirmation Objections**.  These are Objections that assert that the Plan is unconfirmable as a matter of law.  As demonstrated in the Objection Chart, the Confirmation Objections are just that—objections to confirmation that are appropriately deferred to the Confirmation Hearing.  None of the Confirmation Objections rise to the level of rendering the Plan unconfirmable as a matter of law.  In any event, as further detailed in the Objection Chart, the Debtors believe that each of the Confirmation Objections are either (i) inconsistent with applicable law and/or (ii) misconstrues the terms of the Plan.

8.     The Debtors have made every effort to appropriately address the legitimate and relevant disclosure concerns raised by the various parties in interest in these Chapter 11 Cases, while balancing the need to provide clear and concise disclosure so as not to inundate creditors and interest holders with unnecessary and voluminous information.   The Debtors believe that the Disclosure Statement satisfies section 1125 of the Bankruptcy Code and should be approved.

## **FACTUAL BACKGROUND**

9.     On January 1, 2021, the Debtors filed the *Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 722), related disclosure statement (ECF No. 723), and the Motion, providing that (i) the original deadline to object to the Disclosure Statement was February 1, 2021 and (ii) a hearing to consider approval of the Disclosure Statement was scheduled for February 3, 2021.   The Debtors subsequently filed multiple notices adjourning the hearing on the Disclosure Statement extending the objection deadline.  *See* ECF Nos. 815, 885, 933, 949.

10.     On March 16, 2021, the Debtors filed the *Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1020) and related disclosure statement (ECF No. 1022).   The Debtors extended the objection deadline for the Motion to March 19, 2021 at 4:00 p.m. (CT).  *See* ECF No. 1038.

11.     On March 23, 2021, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1099) and related disclosure statement (ECF No. 1102).

12.     On March 24, 2021, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Fieldwood Energy LLC and Its Affiliated Debtors* (ECF No. 1115) and related disclosure statement (ECF No. 1117).

<u>**ARGUMENT**</u>

**I.      The Disclosure Statement Contains Adequate Information and Should be Approved**

   **A.      Whether the Information Provided is Adequate Under Section 1125(b) of the Bankruptcy Code is Determined on a Case-by-Case Basis**

   13.      Pursuant to section 1125 of the Bankruptcy Code, the proponent of a chapter 11 plan must provide holders of impaired claims and interests entitled to vote on a plan with "adequate information" regarding the plan before soliciting votes to accept or reject the plan.  11 U.S.C. § 1125(b).  "The proponent of a reorganization plan . . . must provide a court-approved disclosure statement that contains 'adequate information' about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an 'informed judgment' about the plan."  *In re Woerner*, 783 F.3d 266, 271 (5th Cir. 2015); *see In re Tex. Rangers Baseball Partners*, 521 B.R. 134, 176 (Bankr. N.D. Tex. 2014) ("Section 1125 of the Bankruptcy Code entitles creditors to 'adequate information' so they can make an informed decision on whether to accept or reject a chapter 11 plan.").  "Adequate information" as defined in section 1125 of the Bankruptcy Code does not require that the Disclosure Statement include information about every aspect of the Debtors' business or the Plan or voluminous financial or operational documents, but rather is limited to "information of a kind, and in sufficient detail, as far as is reasonably practicable . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a)(1).

   14.      "The determination of what is adequate information is subjective and made on a case by case basis . . . [and] is largely within the discretion of the bankruptcy court."  *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *see In re Cajun Elec. Power Coop. Inc.*, 150 F.3d 503, 518 (5th Cir. 1998) ("[W]ith respect to a particular disclosure statement, 'both the kind and form of information are left

essentially to the judicial discretion of the court . . . '" (quoting S. Rep. No. 95-989, at 121 (1978)); *see also In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement." (citing *In re River Vill. Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995)).

15.     Bankruptcy courts in the Fifth Circuit have considered the so-called *Metrocraft* factors when determining whether the information contained in a disclosure statement is adequate. *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 401–02 (Bankr. S.D. Tex. 2016) (citing *In re Metrocraft Pub. Servs. Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)); *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996). Those non-exhaustive factors to be considered for the purposes of determining the sufficiency of "adequate information" include the following:

> (1) the events which led to the filing of a bankruptcy petition;
> (2) a description of the available assets and their value;
> (3) the anticipated future of the company;
> (4) the source of information stated in the disclosures statement;
> (5) a disclaimer;
> (6) the present condition of the debtor while in chapter 11;
> (7) the scheduled claims;
> (8) the estimated return to creditors under a chapter 7 liquidation;
> (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information;
> (10) the future management of the debtor;
> (11) the chapter 11 plan or a summary thereof;
> (12) the estimated administrative expenses, including attorneys' and accountants' fees;
> (13) the collectability of accounts receivable;
> (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the chapter 11 plan;
> (15) information relevant to the risks posed to creditors under the plan;
> (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
> (17) litigation likely to arise in a non-bankruptcy context;
> (18) tax attributes of the debtor; and
> (19) the relationship of the debtor with the affiliates.

*Divine Ripe*, 554 B.R. at 401–02.  The Disclosure Statement is extensive and comprehensive and includes information responsive to almost all of the *Metrocraft* factors.  The Disclosure Statement provides sufficient information to allow creditors to make a decision, and, certainly provides "adequate information" under the standard required by section 1125 of the Bankruptcy Code.  For these reasons and as set forth in detail below and in the Objection Chart, the Disclosure Statement should be approved, and the Objections should be overruled.

### B.     The Disclosure Statement Provides Adequate Information for Approval Under Section 1125 of the Bankruptcy Code

16.     The Debtors went to great lengths to consider requested additional disclosures where reasonable and appropriate, even where the requests extended beyond the scope of "adequate information" required by section 1125 of the Bankruptcy Code.  As set forth above and in the Objection Chart, many of the requests have been addressed by modifications and amendments to the Disclosure Statement.

17.     The Disclosure Statement provides adequate information for voting purposes to make an informed decision about whether to accept or reject the Plan, as required by section 1125 of the Bankruptcy Code.  It includes, among other things, a discussion of:

- A summary of the Plan and its treatment of Claims and Interests (§ II.);

- An overview of the Debtors (§ III.);

- Key events leading to the commencement of the Chapter 11 Cases (§ IV.);

- An overview of the Chapter 11 Cases (§ V);

- An overview of the restructuring transactions and Plan implementation (§ VI.);

- Transfer restrictions and consequences under federal securities laws (§ VII.);

- Tax consequences of the Plan (§ VIII.);

- Risk factors affecting the Debtors and confirmation and implementation of the Plan (§ IX.);

- Voting procedures and requirements (§ X.);

- Requirements for confirmation of the Plan (§ XI.);

- Alternatives to confirmation and consummation of the Plan (§ XII.);

- Detailed lease, right of way ("**ROW**"), and right of use and easement ("**RUE**") schedules relating to the Debtors' oil and gas assets (Exs. B–E);

- Credit Bid Purchase Agreement (Ex. G);

- Second Lien Exit Facility Term Sheet (Ex. I);

- Apache Term Sheet Implementation Agreement (Ex. J); and

- Financial information that would be relevant to determinations of whether to accept or reject the Plan, including the Liquidation Analysis, Valuation Analysis, and Financial Projections (Exs. L–N).

18.     The vast majority of the Objections were filed by Predecessors and Sureties, most of whom primarily hold contingent and/or unliquidated claims against the Debtors.  While most of the Objections constitute Confirmation Objections (as reflected in the Objection Chart), the Disclosure Objections generally relate to:

- the Debtors' rights with respect to oil and gas leases and related assets;

- the mechanics of the divisive merger resulting in the creation of FWE I and FWE III;

- the Treatment of the Abandoned Properties and the status and condition of such properties;

- the Debtors' financials; and

- the allocation of the Debtors' executory contracts and unexpired leases.

19.     The Debtors address certain of these categories of Disclosure Objections in turn below, and each of the Disclosure Objections in further detail in the Objection Chart.

**C.    The Disclosure Statement Provides Adequate Information Regarding the Debtors' Oil and Gas Leases, FWE I, FWE III, and the Abandoned Properties**

20.    The Disclosure Statement adequately discloses all relevant information regarding the Debtors' oil and gas leases, FWE I, FWE III, and the Abandoned Properties.  As further explained below, the Disclosure Statement includes detailed schedules consisting of approximately 60 pages delineating the treatment of the Debtors' oil and gas leases, in addition to what has been disclosed in the Plan of Merger and Credit Bid PSA.  Further, Sections I.D–F of the Disclosure Statement contain appropriate descriptions of the FWE I Properties, FWE III Properties, and Abandoned Properties, including adequate information about the anticipated ownership and operation of these properties on the Effective Date.

**1.    The Debtors' Oil and Gas Leases**

21.    Certain Objectors contend that there is inadequate disclosure regarding the Debtors' rights to and interests in oil and gas leases.  *See, e.g.,* Obj. Chart Nos. 5, 11, 24.  To the contrary, the Disclosure Statement, as amended, contains more than adequate disclosure of such information.  Article I of the Disclosure Statement provides an overview of the restructuring transactions that will be consummated pursuant to the Plan, including the Credit Bid Transaction, Apache Transactions, and potential transaction described in the Chevron Term Sheet.  *See* 3d Am. Discl. Stmt. Art. I.  As explained therein, after the consummation of the Credit Bid Transaction, FWE will implement a divisive merger pursuant to which FWE will be divided into FWE I and FWE III, whereby FWE I will be allocated and vested with the Legacy Apache Properties and related liabilities and obligations and FWE III will be allocated and vested with the FWE III Properties.  *Id.*  If the Chevron Transaction is consummated, FWE IV also will be created in the divisive merger and will be allocated and vested the FWE IV Properties.  A schedule of the Debtors' interests in each oil and gas lease being sold to Credit Bid Purchaser is

attached as Exhibit B to the Disclosure Statement.  A schedule of the Debtors' interests in each oil and gas lease that is being allocated to FWE I pursuant to the divisive merger is attached as Exhibit C to the Disclosure Statement.  A schedule of the Debtors' interests in each oil and gas lease that is being allocated to FWE III pursuant to the divisive merger is attached as Exhibit D to the Disclosure Statement.  Finally, a schedule of the Debtors' interests in each oil and gas lease that will be abandoned is attached as Exhibit E to the Disclosure Statement.  The schedules contain detailed information for every lease in which the Debtors' hold an interest, including the block number, lease number, type of lease (federal or state), type of right, identity of operator, percentage of working interest, and lease status (producing, expired, terminated, or relinquished).  The schedules, which have been updated since the Debtors' filed their initial Disclosure Statement on January 1, 2021, also include detailed information on the Debtors' ROWs, RUEs, and easements associated with the leases.

22.    Additional information regarding the Debtors' oil and gas assets is disclosed in the Plan of Merger and Credit Bid PSA, both of which are attached to Disclosure Statement as exhibits.  *See* 3d Am. Discl. Smt. Exs. G & J.  For example, the Plan of Merger contains exhibits listing the leases, deep rights, wells, platforms, facilities, ROWs, RUEs, licenses, and contracts allocated to FWE I and FWE III pursuant to the Plan of Merger.  *See* Am. Discl. Stmt., Ex. 5 to Ex. J.  The Credit Bid PSA contains exhibits with similar information for the assets being transferred to Credit Bid Purchaser pursuant to the Credit Bid PSA.  *See* Am. Discl. Stmt., Ex. G.  This information is more than adequate to allow creditors to decide whether to vote accept or reject the Plan, and no additional disclosure is warranted.

### 2. FWE I

23.     Several Objectors take issue with the adequacy of the disclosures with respect to FWE I.  *See, e.g.,* Obj. Chart Nos. 5, 7, 26.  With respect to the FWE I Properties, the Disclosure Statement adequately explains, among other things:

(a)     that FWE I will own and operate the FWE I Assets, including the FWE I Obligations, including plugging and abandonment of wells and decommissioning of platforms (3d Am. Discl. Stmt. § I.D);

(b)     how FWE I will be managed by a Sole Manager and the process for selecting that individual (3d Am. Discl. Stmt. § I.D);

(c)     how operations of the properties will be initially performed by the Credit Bid Purchaser under a transition services agreement ("**TSA**") at cost, and that, upon its termination, FWE I (with Apache's consent) may elect to have a third-party operate the properties (3d Am. Discl. Stmt. § I.D);

(d)     how FWE I will be capitalized by detailing each source of FWE I's liquidity, including (i) cash flow generated from operating the FWE I Properties, (ii) the Debtors will provide liquidity by capitalizing FWE I on the Effective Date with $50 million minus the accrual of post-petition decommissioning spend by the Debtors on the Legacy Apache Properties, which the Debtors project will be approximately $25 million, (iii) separate security under the existing Decommissioning Agreement that has previously been provided to Apache to secure plugging, abandonment, and decommissioning obligations associated with the Apache Legacy Properties, including approximately $238 million in funds in Trust A (defined below) and approximately $498 million in letters of credit and surety bonds (payable in accordance with their terms and conditions), and (iv) Apache will provide liquidity in the form of up to $400 million of proceeds to be used by FWE I to perform plugging, abandonment, and decommissioning in accordance with the terms and conditions of the Standby Credit Facility Documents (2d. Am. Discl. Stmt. § I.D); and

(e)     the estimated the enterprise value of FWE I, which the Debtors estimate to be approximately negative $220 million to positive $170 million, with a mid-point of negative $30 million, as detailed in Exhibit M of the Disclosure Statement.

24.     For these reasons, and as further detailed in the Objection Chart, the Debtors have provided adequate information under section 1125 with respect to FWE I, and these Objections should be overruled.

### 3. FWE III

25.     Certain Objectors also take issue with the adequacy of the disclosures with respect to FWE III, but these Objections are also misplaced.  *See, e.g.,* Obj. Chart Nos. 4, 7, 8. The Disclosure Statement adequately explains, among other things:

(a)     that FWE III will be allocated and vested with the FWE III Assets and FWE III Obligations (3d Am. Discl. Stmt. § I.E);

(b)     the Plan Administrator's role as the sole officer, director, or manager of FWE III and the process for selecting the Plan Administrator, among other things (3d Am. Discl. Stmt. § I.E, I.I);

(c)     that the Plan Administrator will engage the services of Credit Bid Purchaser to leverage its staff's extensive experience managing P&A and decommissioning work to efficiently and safely complete FWE III's P&A obligations;

(d)     how FWE III will be capitalized with approximately $27 million of capital through a combination of approximately (i) $5-15 million of cash on hand and (ii) $12-22 million in future cash commitments from the Credit Bid Purchaser, "which the Debtors believe will provide the Plan Administrator with adequate funding to operate the FWE III Assets, and satisfy the FWE III Obligations, including the P&A Obligations associated with the FWE III Assets" (3d Am. Discl. Stmt. § I.E);

(e)     that $12 million in surety bonds will be available to backstop the FWE III Obligations (3d Am. Discl. Stmt. § I.E); and

(f)     the estimated asset value of FWE III, which the Debtors estimate to be approximately negative $28 million, as detailed in Exhibit M of the Disclosure Statement.

26.     In view of the foregoing, and for the reasons detailed in the Objection Chart, the Objectors' Disclosure Objections with respect to FWE III should also be overruled.

### 4. Abandoned Properties

27.     While the majority of the Objectors' complaints relate to the Abandoned Properties, as explained below and in the Objection Chart, many of the issues raised by the Objectors regarding the Debtors ability to abandon certain properties are confirmation issues, not disclosure issues.  This is especially true in light of the Government's acknowledgement that the

Plan may be confirmable.  *See* ECF No. 1095 at ¶ 32.  Accordingly, the Court should overrule these Objections in their entirety because there is adequate disclosure regarding the Abandoned Properties—both in the Disclosure Statement and in the large amounts of data that the Debtors have provided to stakeholders on a formal and informal basis—and the Objectors have not and cannot demonstrate otherwise.

28.     Contrary to the Objectors' assertions, the Disclosure Statement explains what will happen with the Abandoned Properties on the Effective Date.  It specifically states that, "Immediately upon the occurrence of the Effective Date of the Plan, all of the Abandoned Properties shall be automatically abandoned by the Debtors pursuant to sections 105(a) and 554(a) of the Bankruptcy Code, without further notice or order of the Court."  3d Am. Discl. Stmt. § I.G.  The Disclosure Statement also explains:

> The Debtors anticipate that BSEE will issue orders compelling either all or certain of the Predecessors and/or CIOs for each of the Abandoned Properties to perform the P&A Obligations for each respective property.  Debtors have been coordinating with BSEE, Predecessors and CIOs on the safe and orderly operational transfer of the Abandoned Properties.

3d Am. Discl. Stmt. § I.G.  The Disclosure Statement then goes on to provide detailed information regarding (a) the Debtors' discussions with the government, Predecessors, CIOs, and sureties, (b) agreed activities on the Abandoned Properties, detailed operational transition packets of information ("**OTPs**") prepared by the Debtors, (c) potential consensual, commercial arrangements with Predecessors, and (d) notice to Predecessors, as further explained below.

a.     *Agreed Activities on Abandoned Properties, Comprehensive OTPs, and 90-Day Transition Services Agreements Relating to the Abandoned Properties*

29.     Out of an abundance of caution to ensure the safe and orderly operational transition of the Abandoned Properties, the Disclosure Statement explains that (1) the Debtors are dedicating approximately $6 million to safety-related repairs and improvements on the

Abandoned Properties (in addition to amounts spent in the ordinary course, which the Debtors estimate has already totaled over $25 million during the pendency of these cases), (2) the Debtors are providing detailed OTPs to Predecessors, and (3) "Credit Bid Purchaser will offer to all Predecessors that require additional time prior to assuming operational control a 90-day transition period post-Effective Date during which Credit Bid Purchaser will manage any of the Abandoned Properties at the requesting Predecessor's cost."  The Disclosure Statement explains:

> The Debtors are in the process of completing comprehensive operational transition packets of information ("**OTP**") organized by each abandoned platform and its associated wells and infrastructure, which will provide Predecessors and CIOs with information, or access to information, of a kind and detail that a potential purchaser of such property would require, including extensive information regarding, among other things, the condition of the Abandoned Properties and related equipment (including the status of any applicable Incidents of Non-Compliance, "**INCs**"), all files, records, databases, data, and other information related to the properties, and all applicable permits and regulatory requirements.

3d Am. Discl. Stmt. § I.G.2.

30.     It is simply not feasible or necessary to include OTPs in the Disclosure Statement itself given their large size and format and high level of detail (*i.e.*, each OTP contains thousands of files with comprehensive data regarding the Abandoned Properties on a platform basis, as well as a tracking document summarizing the data and containing relevant contact information).  Accordingly, the Debtors are providing comprehensive OTPs to each relevant Predecessor covering the applicable Abandoned Properties.  To date, the Debtors have provided comprehensive OTPs— approximately 25,735 files—to the following Predecessors: (1) ENI, (2) Chevron, (3) XTO, (4) BP, (5) Hess, and (6) Hunt.  The Debtors are preparing and will provide the remaining OTPs on a rolling basis and are expecting to have delivered all OTPs to operating Predecessors by March 24, 2021.

      *b.      Potential Consensual, Commercial Arrangements with*
           *Predecessors*

31.    The current Plan addresses approximately 87% of Fieldwood's P&A obligations on a consensual basis, and the Debtors are working to reach additional consensual arrangements with other Predecessors.  As set forth in the Disclosure Statement, and as the Debtors have repeatedly told stakeholders and the government in informal discussions, the Debtors are continuing to pursue consensual, commercial arrangements with Predecessors, similar to the FWE I structure with Apache and the FWE IV structure with Chevron:

> The Debtors continue to work toward reaching long-term commercial agreements similar to the FWE I and FWE IV structures with various Predecessors.  Under such long-term consensual, commercial agreements, Credit Bid Purchaser would continue the management of certain identified Abandoned Properties and the expedient decommissioning of the asset base under terms to be agreed by the parties.  A term sheet outlining terms available to all Predecessors that will require operatorship capabilities related to the Abandoned Properties has been provided to all relevant Predecessors. The Debtors have provided (and will continue to provide) the DOI, DOJ, BOEM and BSEE with regular updates on the status of their negotiations with each of the Predecessors.

3d Am. Discl. Stmt. § I.G.3.

32.    Following entry of an order approving the Disclosure Statement, the Debtors will continue to engage Predecessors in the hopes of reaching additional deals.  Even if consensual arrangements cannot be reached, the Debtors are prepared to take (and will take) all appropriate steps to ensure the safe transition of all Abandoned Properties.

**D.**    **The Debtors Have Also Provided Significant Amounts of Information to Predecessors and Sureties in Response to Both Formal and Informal Document and Information Requests**

33.    In addition to what is in the Disclosure Statement, the Debtors have also provided extensive information to Predecessors and sureties regarding the FWE I Properties,

FWE III Properties, FWE IV Properties, and Abandoned Properties in response to both formal

and informal document and information requests.

34.     For example, the Debtors have provided significant amounts of data

regarding relevant federal offshore leases and bonding to numerous parties on a Relativity Site

(defined below).  As the Disclosure Statement explains:

> . . . Predecessors and CIOs with access to extensive diligence regarding the
> Abandoned Properties and other aspects of the Debtors' restructuring and Plan in
> the form of, among other things, presentations tailored to certain predecessors'
> potential exposure for P&A Obligations and liability and ways to mitigate such
> potential liability, access to an online tool (the "**Relativity Site**") that allows for
> easy sorting to review federal offshore leases and provides relevant information
> pertaining to each lease interest, including the field, block, lease number, type,
> rights owned, effective date, expiration date, operator, working interest, and status
> of the lease.  In addition, for each of the FWE III Oil & Gas Lease Interests and
> Abandoned Properties, the Relativity Site provides (i) all identified predecessors
> in title and working interest owners, (ii) current record title ownership and chain
> of record title information, (iii) asset/liability ownership detail, (iv) BOEM bonds
> with ID number, beneficiary, surety and description tied to each lease, (v) 3rd
> party bonds with ID number, beneficiary, surety and description, and (vi) BSEE
> and FWE estimates of asset retirement obligation ("**ARO**") information, including
> gross/net amounts and asset count information.

3d Am. Discl. Stmt. § I.G.1.  The Relativity Site contains data for 144 federal offshore leases,

including serial registers[5] for each lease and detailed ownership and plugging and abandonment

information.  The Debtors have also given Predecessors and CIOs access to a Box site containing

supporting excel files that drive the inputs for the Relativity Site, copies of serial registers, a

complete surety bond list and scanned copies of all bonds, and ROW and RUE detail by entity.

35.     The Debtors have also completed 18 productions of documents and

information to predecessors and sureties (many of whom are Objectors), consisting of 2,661

documents (an aggregated 60,463 pages), which amounts to over 17 gigabytes of raw data.

---

[5]  The serial register information is also publically available on Prime Clerk's website at
http://media.primeclerk.com/fieldwoodenergy/SerialRegisters.pdf.

Thus, the Objectors have received far more than simply "adequate" information for purposes of section 1125.

## II. Confirmation Objections Should be Overruled and Considered at the Confirmation Hearing

36.     The remaining Objections are not objections to the adequacy of the information provided in the Disclosure Statement or to the solicitation procedures or timing; rather, they are Objections to the Plan that should be deferred to the Confirmation Hearing and, to the extent necessary and appropriate, considered at that time.  *See, e.g., In re Larsen*, No. 09-02630, 2011 WL 1671538, at *2 n.7 (Bankr. D. Idaho May 3, 2011) ("Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage."); *In re Phoenix Petrol. Co*., 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("The question whether a plan meets requirements for confirmation is usually answered at confirmation hearings.").   Specifically, the Objections (or parts thereof) to the Plan regarding the permissibility of the plan releases, the classification of claims, Plan feasibility, and other objections relating to the Debtors' ability to satisfy the requirements of section 1129 of the Bankruptcy Code, and fall into the category of objections that should be deferred.  None of such objections rise to the level of rendering the Plan unconfirmable as a matter of law.

37.     The hearing to approve a disclosure statement is intended solely to determine whether the information provided is "adequate" under section 1125 of the Bankruptcy Code, thereby enabling voting constituents[6] to make informed judgments about whether to accept or reject a plan of reorganization.  *See* 11 U.S.C. § 1125(a).  Disputes on confirmation

---

[6] The primary purpose of a disclosure statement is to provide sufficient information to allow parties entitled to vote on a proposed plan to make an informed decision about whether to vote to accept or reject the plan. *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *Phoenix Petrol*., 278 B.R. 392 ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan.").

issues are no bar to disclosure statement approval. Indeed, requiring adjudication on confirmation issues at this time would effectively convert any disclosure statement hearing into a confirmation hearing without the benefit of the evidentiary record necessary to determine confirmation issues. *See, e.g., In re Larsen*, 2011 WL 1671538, at *4 (holding that the decision on a classification issue, which would require "surmise and speculation" if decided after the disclosure statement hearing, "is one for confirmation to be decided on the evidence."). "[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due process considerations are protected and objections are restricted to those defects that could not be cured by voting . . . " *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988); *see In re Quigley Co.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the debtor's disclosure statement despite noting that the debtor's parent's prepetition settlement with certain asbestos plaintiffs raised, *inter alia*, questions concerning good faith and vote designation after finding that such issues were "confirmation issues that require an evidentiary hearing").

38.     Courts have consistently held that challenges to the plan itself, including challenges to feasibility, valuation, plan releases, and exculpation provisions, are not proper disclosure objections, but rather plan objections that should be addressed at confirmation.[7] The Debtors address the Confirmation Objections in detail in the Objection Chart; however, none of

---

[7] *See, e.g.*, Discl. Stmt. Hr'g Tr. at 17:4–19, *In re iHeartMedia, Inc.*, No. 18-31274 (Bankr. S.D. Tex. Sept. 13, 2018) [ECF No. 1461] (holding that, other than objections requesting more information as to the justification of the releases and their benefit to the estate, objections to releases are generally best addressed at confirmation); *In re Sanders,* No. 14-02271, 2015 WL 7568469, at *5 (Bankr. S.D. Miss. Nov. 23, 2015) ("Whether the plan is feasible is an issue for the plan-confirmation hearing."); *In re Ellipso, Inc.*, No. 09-00148, 2012 WL 368281, at *2 (Bankr. D.D.C. Feb. 3, 2012) (holding certain disclosure statement objections were confirmation issues "more appropriately dealt with at a confirmation hearing" including "(i) the contention that the classification of claims is improper; (ii) a claim that the Proponents do not have the means to fund the plan; (iii) an objection to the disclosure statement's admission that if [certain] claims are allowed, there will be nothing left to pay the other creditors; and (iv) allegations that the plan is being proposed in bad faith."); *In re Calpine Corp.*, No. 05-60200, 2007 WL 2908200, at *1 (Bankr. S.D.N.Y. Oct. 4, 2007) (reserving the determination of the debtors' enterprise value for the confirmation hearing).

the Confirmation Objections raise any issues that rise to the level of rendering the Plan "patently unconfirmable." *See* Obj. Chart Nos. 4, 7, 8, 19, 22, 25, 26.  Thus, these Objections should be overruled.

### III.    Conclusion

39.    The Debtors have worked diligently and have addressed, to the extent practicable and appropriate, any Objections with respect to the adequacy of the Disclosure Statement.  The Disclosure Statement, as currently proposed, provides adequate information for parties entitled to vote to make an informed decision about whether to accept or reject the Plan, as required by section 1125 of the Bankruptcy Code.  Moreover, the solicitation and voting procedures and confirmation schedule are appropriate.  Finally, none of the Objections raise any issue that warrants a finding that the Plan is fatally flawed and not confirmable as a matter of law.  Rather, those issues should be raised and addressed at the Confirmation Hearing.  For these reasons and the reasons detailed in the Objection Chart, the Debtors respectfully request that the Court grant the Motion, enter the Revised Proposed Disclosure Statement Order, and award the Debtors all other relief to which they are entitled.

Dated: March 24, 2021
      Houston, Texas

Respectfully submitted,

 /s/ Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
700 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Alfredo.Perez@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Jessica Liou (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Matt.Barr@weil.com
        Jessica.Liou@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**Certificate of Service**

I hereby certify that, on March 24, 2021, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

 */s/ Alfredo R. Pérez*
Alfredo R. Pérez

## Exhibit A

**Objection Chart**

IN RE FIELDWOOD ENERGY LLC
CH. 11 CASE NO. 20-33948 (MI)

SUMMARY CHART OF DISCLOSURE STATEMENT OBJECTIONS[1]

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 1. | 795 | Valero Marketing and Supply Company ("**Valero**") | **Disclosure Objections:** There is inadequate information regarding:<br><br>a)  The classification of Valero's claims. (¶ 15)<br><br><br><br>b)  Whether the FWE's claims against Valero, as detailed in the [Adversary No. 20-03497, ECF No. 1], will be transferred under the Plan, and if so, will such transfer be free and clear of Valero's right of setoff.  (¶ 16) | **Disclosure Objections:**<br><br>a)  This is not a proper disclosure objection.  The Debtors have objected to Valero's proof of claim and filed an adversary proceeding in connection therewith.  Whether Valero holds a secured claim will be determined in the adversary proceeding or in the claims resolution process.<br><br>b)  FWE's claims against Valero are scheduled to be assigned to the Credit Bid Purchaser.  *See* Exhibit A to the Credit Bid Purchase Agreement, attached as Exhibit G to the Disclosure Statement |
| 2. | 884 | Lewis Andrews and Patrick Burnett ("**Maritime Tort Claimants**") | **Disclosure Objections:**<br><br>a)  The Liquidation Analysis, Financial Projections, and Valuation have not been filed. (¶ 3)<br><br>b)  Maritime Tort Claimants assert that their claims give rise to maritime tort lien against the Debtor's vessel and that the Disclosure Statement does not provide adequate information regarding the administration of maritime liens; the adjudication of post-petition, pre-confirmation personal injury claims; and specific information regarding applicable insurance policies. (¶ 2) | **Disclosure Objections:**<br><br>a)  The Liquidation Analysis, Valuation Analysis, and Financial Projections are annexed to the Disclosure Statement as Exhibits L, M, and N, respectively.<br><br>b)  The requested disclosure regarding administration of maritime tort liens is not applicable.  The Debtors do not own or operate the vessel that is the subject to the underlying state court lawsuit, and therefore the claimants do not hold maritime liens against any of the Debtors' assets. |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to the in the *Omnibus Reply of Debtors to Objections to Disclosure Statement* (the "**Reply**"), the applicable Objection, the Plan, the Disclosure Statement, or the Motion, as applicable.  This chart summarizes certain key issues raised in the Objections.  To the extent that an Objection or a specific point raised in an Objection is not addressed herein, the Debtors reserve the right to respond to such Objection up to and at the hearing on the Disclosure Statement.

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 3. | 883 | Brian Cloyd | **Disclosure Objections:**<br><br>a) The Liquidation Analysis, Financial Projections, and Valuation have not been filed. (¶ 3)<br><br>b) Maritime tort claimant asserts that its claim gives rise to maritime tort lien against the Debtor's vessel and that the Disclosure Statement does not provide adequate information regarding the administration of maritime liens; the adjudication of post-petition, pre-confirmation personal injury claims; and specific information regarding applicable insurance policies. (¶ 2) | **Disclosure Objections:**<br><br>a) *See* Debtors' Response (a) to Maritime Tort Claimants Objection.<br><br>b) *See* Debtors' Response (b) to Maritime Tort Claimants Objection. |
| 4. | 880 | Chevron U.S.A. Inc. ("**CUSA**" or "**Chevron**") & Noble Energy, Inc. ("**Noble**") | **CHEVRON'S OBJECTIONS WITHDRAWN AT ECF NO. 1114**<br><br>*The Debtors submit that Chevron's withdrawal of its Objections on March 23, 2021 moots all other Objections to the extent that they joined in Chevron's Objections.  However, out of an abundance of caution, to the extent the Court does not deem those joinder Objections moot, the Debtors include Chevron's Objections below for reference only:*<br><br>**Disclosure Objections:**  The Disclosure Statement does not provide adequate information regarding:<br><br>a) The regulatory approval for the transfer of lease interests to Credit Bid Purchaser (¶ 41)<br><br><br>b) The Credit Bid Purchase Agreement (¶ 42)<br><br><br>c) Credit Bid Purchaser's ability to meet its future obligations (¶ 43) | **CHEVRON'S OBJECTIONS WITHDRAWN AT ECF NO. 1114**<br><br>*The Debtors submit that Chevron's withdrawal of its Objections on March 23, 2021 moots all other Objections to the extent that they joined in Chevron's Objections.  However, out of an abundance of caution, to the extent the Court does not deem those joinder Objections moot, the Debtors respond as follows:*<br><br>**Disclosure Objections:**<br><br>a) This is a confirmation objection.  The Debtors and Credit Bid Purchaser will seek to obtain any regulatory approvals needed for Credit Bid Purchaser to own and operate the Credit Bid Acquired Interests post-Effective Date.  In the Disclosure Statement, the Debtors detail the numerous discussions they have had with the Government regarding the proposed plan.  *See* Discl. Stmt., Art. V § P.  The Debtors also disclose that obtaining governmental approvals as a risk of non-occurrence of the Effective Date. *Id.*, Art. IX § A.<br><br>b) A draft of the Credit Bid Purchase Agreement is annexed to the Disclosure Statement at Exhibit G.  Annexed to the Credit Bid Purchase Agreement are schedules identifying the Credit Bid Acquired Interests.<br><br>c) Financial Projections for Credit Bid Purchaser are disclosed at Exhibit N of the Disclosure Statement. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | d) Credit Bid Purchaser's ability to meet BOEM's financial assurance requirements (¶ 44) | d) This is not a proper disclosure objection; this is a confirmation objection. Moreover, the Debtors disclose governmental approvals as a risk of non-occurrence of the Effective Date. *Id.*, Art. IX § A. |
| | | | e) How the $224 million in cash consideration paid by the Credit Bid Purchaser is being allocated under the Plan (¶ 45) | e) This is a confirmation objection. The cash consideration for the Credit Bid Purchase Agreement is up to $105 million. *See* Discl. Stmt., Art. I § A. The cash consideration will be distributed in accordance with the Plan. |
| | | | f) Each lease's chain of title, current working interest owners, operating status, outstanding Incidents of Non Compliance ("**INCs**"), and compliance with all safety and environmental regulations (¶ 46) | f) The allocation of the Debtors' interests in oil and gas leases is disclosed in schedules attached to the Disclosure Statement at Exhibits B-D. Furthermore, the Relativity Site (which Chevron and many others were provided access to) contains the following information for each FWE III Oil & Gas Lease Interest and Abandoned Property: (i) all identified predecessors in title and working interest owners, (ii) current record title ownership and chain of record title information, (iii) asset/liability ownership detail, (iv) BOEM bonds with ID number, beneficiary, surety and description tied to each lease, (v) 3rd party bonds with ID number, beneficiary, surety and description, and (vi) BSEE and FWE estimates of asset retirement obligation information, including gross/net amounts and asset count information. *See* Discl. Stmt., Art. I. § G.(a); *see also* Reply ¶ 32. Moreover, the Box Site (which Chevron and many others were provided access to) contains, among other things, (i) information regarding the outstanding INCs and (ii) copies of the bonds associated with the Credit Bid Acquired Interests, the FWE I Properties, the FWE III Properties and Abandoned Properties. |
| | | | g) The regulatory approval for the transfer of lease interests to FWE I and FWE III (¶ 51) | g) This is a confirmation objection and incorrectly states that the Debtors are "transferring" lease interests to FWE I and FWE III. Rather, pursuant to the Plan of Merger, FWE I and FWE III will be allocated and vested with certain oil and gas assets. |
| | | | h) Outstanding P&A Obligations for each lease (¶ 47) | h) The Relativity Site contains BSEE and FWE estimates of asset retirement obligation information, including gross/net amounts and asset count information for the FWE III Assets and Abandoned Properties. *See* Discl. Stmt., Art. I. § G.(a). |

3

| Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|
| | | i)   Civil and criminal investigations (¶¶ 48–50) | i)   Regulatory matters are discussed in Article V § P of the Disclosure Statement. The Disclosure Statement contains a robust discussion of regulatory matters involving the Debtors, which includes discussion of criminal and civil investigations of the Debtors. *See* Discl. Stmt., Art. V § P. |
| | | j)   Assumption and assignment of executory contracts allocated to FWE I and FWE III (¶ 52) | j)   The Debtors' motion seeking approval of the Disclosure Statement provides that a Schedule of Assumed Contracts will be filed with the Plan Supplement (which is due to be filed no later than 7 days before the objection deadline). *See* Motion, ¶ 80. The motion also provides that the Debtors will serve Cure Notices on counterparties to executory contracts and unexpired leases at least ten (10) days prior to the Confirmation Hearing. *See id*., ¶ 81; *see also* Plan, § 8.2. Counterparties to an executory contract or unexpired lease that is being assumed will have until the Plan Objection Deadline to object to the proposed assumption, assumption and assignment, or related Cure Amount. *See* Motion, ¶ 81. |
| | | k)   Partial interests allocated to FWE I (¶¶ 53–54) | k)   Exhibit C of the Disclosure Statement is a schedule of the oil and gas leases, rights-of-way, and rights-of-use and easements related to the Legacy Apache Properties. *See* Discl. Stmt., Ex. C. The Disclosure Statement provides that assets acquired by the Debtors from Apache in 2013 will be allocated to FWE I. *See* Discl. Stmt., Art. I. § A., at 3, n.8. |
| | | l)   "Incremental Interests" allocated to FWE I (¶ 55) | l)   The "incremental interests" are the Add-On Interests (as defined in the Plan of Merger) discussed in footnotes 5 and 13 of the Plan of Merger, which is an exhibit to the Apache Term Sheet Implementation Agreement, which is Exhibit J of the Disclosure Statement. These interests were acquired by the Debtors as a result of co-owner actions under applicable joint or unit operating agreements or as a result of a recalculation determined in accordance with the terms of a FWE I Contract (as defined in the Plan of Merger). *See* Plan of Merger, Sched. 1, Part A, at (xxv). The actual Add-On Interests are disclosed in Exhibit I–K(i)–(iii) of the Plan of Merger. |
| | | m)  Why certain assets are allocated to FWE III (¶ 56) | m)  The FWE III Assets are disclosed in Exhibit D of the Disclosure Statement. Additional disclosure regarding the FWE III Assets is contained in Article I § D.2. of the Disclosure Statement. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | n)  FWE III's capitalization (¶ 57) | n)  As described in the Disclosure Statement, FWE III will be capitalized with approximately $27 million of capital through a combination of approximately (i) $5 – 15 million of cash on hand and (ii) $12 – 22 million in future cash commitments from the Credit Bid Purchaser.  *See* Discl. Stmt., Art. I § E.  The Debtors believe this will provide the Plan Administrator with adequate funding to operate the FWE III Assets and satisfy the FWE III Obligations, including the P&A Obligations associated with the FWE III Assets.  *Id.* |
| | | | o)  FWE III's ability to meet its P&A Obligations (¶ 58) | o)  As noted in the Disclosure Statement, the Debtors believe FWE III will be adequately capitalized to allow the Plan Administrator to operate the FWE III Assets and satisfy the FWE III Obligations, including the P&A Obligations associated with the FWE III Assets.  *See* Discl. Stmt., Art. I § E.  Any remaining issue is a confirmation objection. |
| | | | p)  FWE III's access to existing security (¶ 59) | p)  The Disclosure Statement provides that there is approximately $12 million in surety bonds available that secure the Debtors' P&A Obligations for the FWE III Assets.  *See* Discl. Stmt., Art. I § E. |
| | | | q)  FWE III's ability to meet BOEM's financial assurance requirements (¶ 60) | q)  *See* Debtors' Response (d) to this Objection above. |
| | | | r)  The process for returning Abandoned Properties to predecessors (¶¶ 61–63) | r)  The Plan does not vest predecessors with title to the Abandoned Properties.  Rather, as stated in the Disclosure Statement, the Debtors only seek to abandon their interests in the Abandoned Properties pursuant to the Plan.  *See* Am. Discl. Stmt. Art. I § G.  The Debtors anticipate that BSEE will then issue orders compelling either all or certain of the Predecessors and/or CIOs for each of the Abandoned Properties to perform the P&A Obligations for each respective property.  *Id.*  Additionally, as further described in Section I.G of the Disclosure Statement, the Debtors have taken a number of actions to facilitate the safe and orderly operational transition of the Abandoned Properties currently operated by the Debtors and the assumption of the P&A Obligations related to same.  In addition, Chevron (along with numerous other Predecessors) has received a comprehensive Operational Transitional Plan ("**OTP**"). |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | s)  Orphaned obligations (¶ 64) | s)  The Debtors do not believe that the extent of orphaned obligations, if any, rise to the level of materiality for purposes of voting on the Plan. |
| | | | t)  The Abandoned Properties, including ROWs and RUEs, Predecessors and CIOs, and the process for returning the properties to Predecessors (¶¶ 65–68) | t)  The Abandoned Properties are described in detail in Exhibit E of the Disclosure Statement.  Exhibit E also includes detailed information on the Debtors' rights-of-way (ROWs) and rights-of-use and easement (RUEs) associated with the various leases. Moreover, the Relativity Site contains additional information including (i) all identified predecessors in title and working interest owners and (ii) current record title ownership and chain of record title information, for each of the Abandoned Properties. *See* Discl. Stmt., Art. I. § G.1; *see also* Reply § I.C. |
| | | | u)  Assumption and assignment of executory contracts related to the Abandoned Properties (¶ 69) | u)  A Schedule of Assumed Contracts will be filed with the Plan Supplement.  *See* Motion, ¶ 80.  The Plan further provides that as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (iv) is identified in Sections 8.4 or 8.5 of the Plan; or (v) is identified for assumption on the Schedule of Assumed Contracts included in the Plan Supplement.  *See* Plan, § 8.1. |
| | | | v)  The liquidation analysis, valuation analysis, and financial projections (¶¶ 70, 72) | v)  The Liquidation Analysis, Valuation Analysis, and Financial Projections are annexed to the Disclosure Statement as Exhibits L, M, and N, respectively. |
| | | | w)  The amount of administrative expense claims (¶ 71) | w)  This is a confirmation objection.  As provided in the Disclosure Statement, the Debtors assert that, although there can be no assurances, the Debtors believe they can satisfy all administrative expense claims in full.  Discl. Stmt. IX. §A. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | x) The basis for the releases (¶ 73) | x) This is not a proper disclosure objection; this is a confirmation objection. Moreover, the Disclosure Statement contains specific and conspicuous language describing the release and injunction provisions in accordance with Fed. R. Bankr. P. 3016(c). *See* Discl. Stmt., Ex. F. In addition, the proposed solicitation procedures provide voting parties and non-voting parties the ability to opt out of third party releases in accordance with the Complex Rules. |
| | | | **Confirmation Objection:** | **Confirmation Objection:** |
| | | | y) The Plan is patently unconfirmable because it relies on abandonment of the Abandoned Properties (¶¶ 74–79) | y) The proposed abandonment of the Abandoned Properties does not render the Plan patently unconfirmable. Under *Midlantic*, a debtor cannot abandon property in derogation of state and local law reasonably designed to protect the public health and safety from identifiable hazards "without formulating conditions that will adequately protect the public's health and safety." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 507 (1986). As detailed in the Disclosure Statement (and as will be proven at the confirmation hearing) the proposed process for abandonment ensures that all P&A Obligations are addressed in a methodical and safe manner by responsible parties, as determined by BSEE. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | **Solicitation Procedures and Confirmation Timeline Objections:**<br>z) It is improper to allow holders of contingent, unliquidated or disputed claims to vote only $1 (¶¶ 80–82) | **Solicitation Procedures and Confirmation Timeline Objections:**<br>z) Assignment of a value of $1.00 to contingent, disputed, or unliquidated claims is customary in practice in this district. *See In re Shale Support Global Holdings, LLC, et al.*, Ch. 11 Case No. 19-33884 (Bankr. S.D. Tex. Sept. 18, 2019) [Docket No. 319] (approving solicitation procedures wherein certain contingent, disputed, or unliquidated Claims were allowed to vote in the amount of $1.00); *In re iHeartMedia, Inc.*, Ch. 11 Case No. 18-31274 (Bankr. S.D. Tex. Sept. 13, 2018) [Docket No. 1481] (same); *In re EP Energy Corp.*, Ch. 11 Case No. 19-35654 (Bankr. S.D. Tex. Jul. 7, 2020) [Docket No. 1340] (approving solicitation procedures wherein certain contingent, liquidated, and or/disputed claims were temporarily allowed for voting purposes in the amount of $1.00). It is appropriate for voting parties to only vote $1.00 on account of contingent, unliquidated, and/or disputed claims, including any claims arising out of P&A Obligations, because, among other reasons, it is difficult (if not impossible) to predict with certainty the extent to which such claims may ultimately become Allowed. Moreover, creditors can file Rule 3018(a) motions to the extent holders believe they are entitled to vote their claims in a different amount than what is assigned. |
| | | | aa) Debtors' proposed dates for filing critical documents via the Plan Supplement and time periods for objections to the Plan transactions fail to provide proper notice and an opportunity to object (¶¶ 83–86) | aa) The Debtors' proposed schedule is appropriate under the circumstances of this case and provides adequate notice, particularly in light of the numerous extensions to the Disclosure Statement hearing and objection deadline and the extensive and ongoing discussions between the Debtors and the various stakeholders, including many of the Objectors. Moreover, the Debtors' proposed schedule is driven by numerous factors that are critical to the Debtors' ability to consummate the Plan, including (among others) the confirmation outside date of May 10, 2021 and outside expiration time of June 30, 2021 under Second Lien Backstop Commitment Letter. *See* Plan, § 1.1; *see also* Backstop Commitment Letter, § 9, The Debtors believe the proposed confirmation timeline is reasonable and balances the need to provide adequate information and time to voting creditors and the Debtors' need to timely emerge from chapter 11. |
| 5. | 900 | | **Disclosure Objections:** | **Disclosure Objections:** |

| | Docket No. | Objecting Party | | Summary of Objection(s) | | Debtors' Response(s) |
|---|---|---|---|---|---|---|
| | | XTO Offshore, Inc., HHE Energy Company, and XH LLC (collectively, "**XTO**") | a) | There is inadequate disclosure regarding the mechanism or basis by which the Abandoned Properties may be abandoned in violation of the Federal Regulations relating to decommissioning the properties (¶ 19) | a) | *See* Debtors' Responses (r) and (y) to Chevron Objection. |
| | | | b) | There is inadequate disclosure regarding how any of the Abandoned Properties may be abandoned so as to vest title in any Predecessor (¶ 19) | b) | The Schedule of Abandoned Properties identifies the Abandoned Properties. *See* Discl. Stmt., Ex. E. The Plan does not provide for the "vesting" of title to any Predecessors. The Relativity Site allows users to determine which entities are in the chain of title for any particular lease interest. *See also* Debtors' Responses (r) and (y) to Chevron Objection. |
| | | | c) | There is inadequate disclosure regarding the status of the hundreds of wells, pipelines, and platforms which will remain behind if the properties are abandoned or explain who will act as operator post-abandonment (¶ 19) | c) | Annexed to the Disclosure Statement are schedules of the Oil & Gas Lease Interests. *See* Discl. Stmt., Exs. B–E. As explained in the Disclosure Statement, the Debtors have provided (or will provide) comprehensive operational transition packets of information ("**OTP**") organized by each abandoned platform and its associated wells and infrastructure, which will provide Predecessors and CIOs with information, or access to information, of a kind and detail that a potential purchaser of such property would require, including extensive information regarding, among other things, the condition of the Abandoned Properties and related equipment (including the status of any INCs, all files, records, databases, data, and other information related to the properties, and all applicable permits and regulatory requirements. XTO's counsel received a comprehensive OTP containing approximately 2,334 files on March 9, 2021. The Debtors object to the inclusion of any additional information on this issue in the Disclosure Statement, as the cost of additional disclosure would outweigh any potential benefits. *See In re Stanley Hotel, Inc.*, 13 B.R. at 933-34. |
| | | | d) | There is inadequate disclosure regarding the current status of any of the properties or how the public health, safety and welfare is to be protected (¶ 19) | d) | *See also* Debtors' Responses (r) and (y) to Chevron Objection; *see also* Reply, § I.C. |
| | | | e) | There is inadequate disclosure regarding the status of the various bonds allegedly covering the properties (¶ 19) | e) | The Debtors have provided XTO with access to the Box site that contains a complete list of the surety bonds and copies of all the bonds. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | f) There is inadequate disclosure regarding how the Debtors' assets will be allocated under the Joint Plan (¶ 19) | f) Additional information regarding the Debtors' oil and gas assets is disclosed in the Plan of Merger and Credit Bid Purchase Agreement, both of which are attached to Disclosure Statement as exhibits. |
| | | | g) There is inadequate disclosure regarding the burden which the abandonment of the Abandoned Properties will place on the Government and taxpayers (¶ 19) | g) The Debtors submit that the abandonment of the Abandoned Properties in the manner contemplated under the Plan ensures that all plugging and abandonment and decommissioning obligations (the "**P&A Obligations**") are addressed in a methodical and safe manner by responsible parties, as determined by BSEE, at no cost to taxpayers. |
| | | | h) There is inadequate information regarding the administrative claim for the P&A Obligations and how the Debtors propose to either address or avoid this liability (¶ 19) | h) *See* Debtors' Response (w) to Chevron Objection. |
| | 1082 | XTO Supplemental Objection | **Disclosure Objections**: There is inadequate disclosure regarding: <br><br> a) Providing the status and condition of the Abandoned Properties to Predecessors on an individual and confidential basis does not allow other creditors to appropriately evaluate the Plan and thus this information should be included in the Disclosure Statement. (¶¶ 2–5) | **Disclosure Objections**: <br><br> a) The Debtors have made this information available on the Box site referenced in the Disclosure Statement, as well as in the comprehensive OTPs provided to Predecessors, including XTO. It is not practical, necessary, or helpful to include all of this information in the Disclosure Statement. *See In re Stanley Hotel, Inc.*, 13 B.R. at 933-34. |
| | | | b) Does not explain mechanisms that will be used to abandon properties or how the applicable federal regulations will be followed in the abandoning of properties. (¶¶ 6–11) | b) *See* Debtors' Responses (r) and (y) to Chevron Objection. |
| | | | c) Does not explain how public health and safety will be protected when abandoning properties.  (¶¶ 12–16) | c) The Debtors have disclosed the process for ensuring a smooth and safe transition of Abandoned Properties in the Abandoned Properties Section of the Disclosure Statement. *See* Discl. Stmt., Art. I § G. |
| | | | d) Does not explain how the Plan can be approved under legal precedent.  (¶¶ 17–19) | d) *See* Debtors' Response (y) to Chevron Objection. |

|  | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
|  |  |  | e) Does not provide transparent information about the Apache and FWE I transaction.  (¶¶ 20–23) | e) The Apache Definitive Documents were attached to the original Disclosure Statement filed on January 1, 2021.  *See* Discl. Stmt., Ex. J.  The Disclosure Statement also describes the FWE I transaction in the Apache Transactions section, among other places.  *See, e.g.,* Discl. Stmt. Art. I. § D.  None of the questions identified by XTO related to the FWE I transaction is relevant to a voting creditor's determination of whether to accept or reject the Plan. |
|  |  |  | **Joinder**: XTO joins the following objections:<br>• Chevron,<br>• Marathon,<br>• Eni,<br>• McMoRan,<br>• Nippon,<br>• SCEEP,<br>• W&T,<br>• Shell,<br>• BP, and<br>• Cox Objections |  |
| 6. | 924 | Marathon Oil Company ("**Marathon**") | **Disclosure Objections:**<br>There is inadequate disclosure regarding:<br><br>a) the use of a divisive merger allocating assets of the Debtors between FWE I and FWE III (¶¶ 7–8, 20)<br><br>b) the status of the Abandoned Properties and of the Plan's treatment of the Abandoned Properties (¶¶ 9, 24) | **Disclosure Objections:**<br><br>a) A draft of the Credit Bid Purchase Agreement is annexed to the Disclosure Statement at Exhibit G.  Annexed to the Credit Bid Purchase Agreement are schedules identifying the Credit Bid Acquired Interests.<br><br>b) Annexed to the Disclosure Statement are schedules of the Oil & Gas Lease Interests.  *See* Discl. Stmt., Exs. B–E.  Moreover, the Relativity Site allows users to determine which entities are in the chain of title for any particular lease interest being transferred under the Plan. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | c) the underlying legal basis for returning the leases to the Predecessors (¶ 9) | c) The Debtors' expect that upon abandonment of the Abandoned Properties, BSEE will issue orders compelling Predecessors and CIOs for each Abandoned Property to perform P&A Obligations for each respective property. *See* Discl. Stmt., Art. I § A. As described in the Debtors' Response (y) to Chevron Objection above, the abandonment of the Abandoned Properties does not violate *Midlantic* and complies with all applicable law. |
| | | | d) financial information (¶¶ 17, 27) | d) The Liquidation Analysis, Valuation Analysis, and Financial Projections are annexed to the Disclosure Statement as Exhibits L, M, and N, respectively. |
| | | | e) contracts to be assumed or assigned (¶ 21) | e) The Debtors' motion seeking approval of the Disclosure Statement provides that a Schedule of Assumed Contracts will be filed with the Plan Supplement. *See* Motion, ¶ 80. The motion also provides that the Debtors will serve Cure Notices on counterparties to executory contracts and unexpired leases no later than ten (10) days prior to the Confirmation Hearing. Counterparties to an executory contract or unexpired lease that is being assumed will have until the Plan Objection Deadline to object to the proposed assumption, assumption and assignment, or related Cure Amount. *See* Motion, ¶ 81. |
| | | | f) NewCo's provision of financial assurance to BOEM (¶ 18) | f) This is not a proper disclosure objection; this is a confirmation objection. Moreover, the Debtors disclose governmental approvals as a risk of non-occurrence of the Effective Date. *Id.*, Art. IX § A. |
| | | | g) administrative claims for P&A obligations (¶ 28) | g) As provided in the Disclosure Statement, the Debtors assert that, although there can be no assurances, the Debtors believe they can satisfy all administrative expense claims in full. Discl. Stmt. IX. §A. |
| | | | h) the steps the Debtors have taken to obtain the consents and approvals from regulators. (¶ 17) | h) This is not a proper disclosure objection; this is a confirmation objection. In any event, the Debtors, FWE I and FWE III will seek to obtain any regulatory approvals needed for FWE I and FWE III to own and operate the assets allocated to them under the Plan of Merger. *See* Discl. Stmt., Art. V § P. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | i)  the Releases authorized under the Plan (¶ 29) | i)  This is not a proper disclosure objection; this is a confirmation objection.  Moreover, the Disclosure Statement contains specific and conspicuous language describing the release and injunction provisions in accordance with Fed. R. Bankr. P. 3016(c).  *See* Discl. Stmt., Ex. F. |
| | | | **Confirmation Objections:** | **Confirmation Objections:** |
| | | | j)  The proposed voting procedures deprive Class 7 creditors of the ability to vote their claims in the dollar amount that the Plan imposes upon them (¶ 30) | j)  *See* Debtors' Response (z) to Chevron Objection. |
| | | | k)  The timeframes for filing critical documents by Plan Supplement and time periods for Creditors' objections lack due process (¶ 31) | k)  *See* Debtors' Response (aa) to Chevron Objection. |
| | 1109 | Marathon Supplemental Objection | **Joinder:** Marathon joins in the following objections: <br>• Eni and <br>• XTO | **Joinder:** See responses to respective objections. |
| 7. | 932 | Lexon Insurance Company, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company (collectively, **"Ironshore"**) | **Disclosure Objections:**  There is inadequate disclosure regarding: | **Disclosure Objections:** |
| | | | a)  The treatment of surety bonds (¶ 25) | a)  Neither the Plan nor Disclosure Statement provide that any bonds will be assumed and/or assigned.  To the extent a surety has any claims against the Debtors that become allowed, such claims will be treated in accordance with the Plan. |
| | | | b)  Surety bonds are financial accommodations that cannot be transferred (¶¶ 26–29) | b)  Neither the Plan nor Disclosure Statement provide that any bonds will be assumed and assigned or otherwise transferred to Credit Bid Purchaser. |
| | | | c)  Regulatory approvals needed for Credit Bid Purchaser, FWE I and FWE III to operate the leases (¶ 30) | c)  *See* Debtors' Response (a) to Chevron Objection.. |
| | | | d)  Whether the Credit Bid Purchaser has agreed to decommission the Credit Bid Acquired Interests (¶ 32) | d)  The Credit Bid Purchase Agreement is annexed to the Disclosure Statement at Exhibit G.  Section 11.1(a) of the Credit Bid Purchase Agreement states that Credit Bid Purchaser, upon closing, will assume all Liabilities to the extent arising out of the Leases and the Assigned Contracts that are Acquired Interests. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | e) How FWE I will perform P&A obligations (¶ 32) | e) FWE I will be responsible for all obligations of the FWE I Assets, including the plugging and abandonment of wells and the ultimate decommissioning of platforms and offshore infrastructure. *See* Discl. Stmt., Art. I § D. In connection therewith, FWE I will enter into a transition services agreement with Credit Bid Purchaser to operate the properties, including performing the necessary P&A work at the FWE I Assets. Furthermore, the relevant agreements governing the operations of FWE I post-Effective Date are annexed to Apache Term Sheet Implementation Agreement, which is an exhibit to the Disclosure Statement. *See* Discl. Stmt., Ex. J. These agreements will govern, among other things, how the FWE I Assets will be decommissioned. |
| | | | f) How FWE III will perform P&A obligations (¶ 32) | f) A Plan Administrator will be appointed to serve as the sole officer, director, or manager of FWE III. *See* Discl. Stmt., Art. I § E. The Plan Administrator's powers and authority include, among other things, "engag[ing] in the ownership, operation, plugging and abandonment, and decommissioning of the FWE III Assets, including the FWE III Oil & Gas Lease Interests." *Id*. The Plan Administrator will engage the services of Credit Bid Purchaser to help ensure the FWE III Assets are decommissioned safely and efficiently. *See* Discl. Stmt. Art XI § E. Furthermore, FWE III will be capitalized with approximately $27 million, which the Debtors believe will be sufficient to fulfill the obligations of the FWE III Assets, including the P&A Obligations. *See* Discl. Stmt., Art. I § E; XI § C.3. |
| | | | g) How P&A obligations at the Abandoned Properties will be fulfilled (¶ 32) | g) The Debtors' expect that upon abandonment of the Abandoned Properties, BSEE will issue orders compelling Predecessors and CIOs for each Abandoned Property to perform P&A Obligations for each respective property. *See* Discl. Stmt. Art. I § A. |
| | | | h) Whether the Debtors can abandon the Abandoned Properties (¶¶ 33–38) | h) This is not a proper disclosure objection; this is a confirmation objection. |
| | | | i) The splitting of surety bonds (¶¶ 39–41) | i) Neither the Plan nor Disclosure Statement purport to split any of the surety bonds. |
| | | | j) The Debtors cannot rely on surety bonds to abandon the Abandoned Properties (¶¶ 42–46) | j) This is not a proper disclosure objection; this is a confirmation objection. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | k)  Lexon is entitled to an administrative expense claim (¶¶ 47–58) | k)  As provided in the Disclosure Statement, the Debtors assert that, although there can be no assurances, the Debtors believe they can satisfy all administrative expense claims in full.  Discl. Stmt. IX. §A. |
| | | | **Confirmation Objections:**  The Plan is patently unconfirmable because: | **Confirmation Objections:** |
| | | | l)  The Debtors cannot abandon the Abandoned Properties (¶¶ 59–66) | l)  *See* Debtors' Response (y) to Chevron Objection. |
| | | | m)  The Plan contains impermissible non-consensual third-party releases (¶¶ 67–76) | m)  The Plan does not contain non-consensual third-party releases. |
| | | | n)  The amount of administrative expense claims on account of the Debtors' P&A obligations (¶¶ 77–82) | n)  As provided in the Disclosure Statement, the Debtors assert that, although there can be no assurances, the Debtors believe they can satisfy all administrative expense claims in full.  Discl. Stmt. IX. §A. |
| | | | **Joinder**: Ironshore joins objections filed by other sureties that do not conflict with its objections. | **Joinder:** See responses to respective objections. |
| 8. | 937 | Eni US Operating Co. Inc. and Eni Petroleum US LLC (together, "**Eni**") | **Disclosure Objections:**  The Debtors fail to disclose information regarding: | **Disclosure Objections:** |
| | | | a)  the Credit Bid Transaction (e.g. the agreement, the source of funds, Newco's ability to satisfy obligations, policies relevant to the inspection of platforms) (¶ 17.a) | a)  A draft of the Credit Bid Purchase Agreement is annexed to the Disclosure Statement at Exhibit G.  Annexed to the Credit Bid Purchase Agreement are schedules identifying the Credit Bid Acquired Interests. |
| | | | b)  the proposed divisive merger that allocates assets and liabilities among FWE I and FWE III (e.g. ability to obtain regulatory approvals, contract cure costs, partial interests to be assigned to FWE I, FWE I and FWE III's ability to satisfy their obligations) (¶ 17.b) | b)  The Disclosure Statement contains detailed information about the Apache Transactions, a description regarding how FWE I will operate post-Effective Date, and how FWE I will be funded.  *See* Discl. Stmt., Art. I § D. |
| | | | c)  the leases and other unidentified properties that constitute the Abandoned Properties, including: (¶ 17.b)<br>　　a.   related executory contracts and leases;<br>　　b.   the legal basis and process for transferring the properties<br>　　c.   regulatory approvals needed<br>　　d.   cure costs | c)  Annexed to the Disclosure Statement are schedules of the Oil & Gas Lease Interests.  *See* Discl. Stmt., Exs. B–E.  Moreover, the Relativity Site allows users to determine which entities are in the chain of title for any particular lease interest being transferred under the Plan. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | d) a Liquidation Analysis, Valuation Analysis, or Financial Projections (¶ 17.d) | d) The Liquidation Analysis, Valuation Analysis, and Financial Projections are annexed to the Disclosure Statement as Exhibits L, M, and N, respectively. |
| | | | e) the nature and amount of Administrative Expense Claims, specifically those relating to P&A Obligations (¶ 17.d) | e) As provided in the Disclosure Statement, the Debtors assert that, although there can be no assurances, the Debtors believe they can satisfy all administrative expense claims in full.  Discl. Stmt. IX. §A. |
| | | | f) the regulatory approvals needed to dispose of certain properties and the mechanism of abandonment (¶ 17.d) | f) *See* Debtors' Response (a) to Chevron Objection. |
| | | | **Confirmation Objections:** | **Confirmation Objections:** |
| | | | g) The Plan contains impermissible releases (¶ 23) | g) The Plan does not contain impermissible releases. |
| | | | h) The Plan is not proposed in good faith and therefore violates Section 1129(a)(3) of the Bankruptcy Code because the Debtors seek to abandon properties without paying for the P&A Obligations. (¶ 27) | h) This is a confirmation objection.  *See In re Quigley Co.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (holding that good faith objections were "confirmation issues that require an evidentiary hearing"). |
| | | | i) The Plan bifurcates executory contracts. (¶ 32) | i) The Plan does not provide for the partial assumption or rejection of any executory contracts or unexpired leases. |
| | | | j) The Debtors have not provided a Liquidation Analysis (¶ 34) | j) The Liquidation Analysis, Valuation Analysis, and Financial Projections are annexed to the Disclosure Statement as Exhibits L, M, and N, respectively. |
| | | | k) The Debtors do not have the ability to pay Administrative Expense claims relating to the abandoned properties. (¶ 35) | k) As provided in the Disclosure Statement, the Debtors assert that, although there can be no assurances, the Debtors believe they can satisfy all administrative expense claims in full. *See* Discl. Stmt., Art. IX. § A. |
| | | | l) The Credit Bid Transaction Toggle is a sub rosa Plan because it provides for a way to carry out the Plan without Plan confirmation (¶ 41) | l) This is a confirmation objection. |
| | | | m) The Plan misclassifies certain claims: to the extent the Prepetition SLTL Lenders are unsecured and left only with deficiency claims, they should be properly classified with the General Unsecured Claims (¶ 44) | m) This is a confirmation objection. |

16

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | 1066 | Eni Supplemental Objection | **Disclosure Objections**: There is inadequate information regarding:<br>a) Information regarding the Abandoned Properties is incomplete and misleading (e.g. that the Debtors have not adequately described the Regulatory Authorities' views of the Plan or any Administrative Expense Claims related to P&A Obligations) (¶¶ 5–7)<br><br>b) Why FLFO Claims are being impaired (¶¶ 8–9)<br><br>c) Why the General Unsecured Claims are being bifurcated (¶¶ 10–12) | **Disclosure Objections**:<br>a) *See* Debtors' Responses (w) to Chevron Objection and (f) to Hess Objection.<br><br>b) This is not a proper disclosure objection; this is a confirmation objection.<br><br>c) This is not a proper disclosure objection; this is a confirmation objection. |
| 9. | 954 | Sea Robin Pipeline Company, LLC, West Cameron Dehydration Company, L.L.C., Florida Gas Transmission, LLC, Stingray Pipeline Company, L.L.C., Trunkline Gas Company, LLC, and Trunkline Field Services LLC (collectively, "**Energy Transfer**") | **Disclosure Objections**:  There is inadequate information regarding:<br>a) Allocation of the Debtors' executory contracts (¶¶ 10–16)<br><br>b) Cure costs (¶ 15)<br><br>c) The liquidation analysis, valuation analysis, and financial projections and feasibility concerns (¶ 19)<br><br>d) How the $224 million in cash consideration for the Credit Bid Acquired Interests will be used (¶ 20)<br><br>e) The Plan releases (¶¶ 21–22) | **Disclosure Objections**:<br>a) The Schedule of Assumed Contracts will be filed with the Plan Supplement.  The Debtors will file the Plan Supplement 7 days prior to the Voting Deadline. *See* Motion, ¶ 74.<br><br>b) Cure Notices for executory contracts and unexpired leases being assumed will be served no later than ten (10) days prior to the Confirmation Hearing. *See* Motion, ¶ 81.<br><br>c) The Liquidation Analysis, Valuation Analysis, and Financial Projections are disclosed at Exhibits L–N of the Disclosure Statement.<br><br>d) *See* Debtors' Response (e) to Chevron Objection.<br><br>e) This is not a proper disclosure objection; this is a confirmation objection.  Moreover, the Disclosure Statement contains specific and conspicuous language describing the release and injunction provisions in accordance with Fed. R. Bankr. P. 3016(c). *See* Discl. Stmt., Ex. F. |
| 10. | 955 | EnVen Energy Ventures, LLC ("**EnVen**") | **Joinder**: EnVen joins the following objections:<br>• Chevron<br>• XTO<br>• Marathon, and<br>• Eni | **Joinder**: See responses to respective objections. |
| 11. | 978 | | **Disclosure Objections**:  The Disclosure Statement fails to disclose: | **Disclosure Objections**: |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Freeport-McMoRan Oil & Gas LLC ("**FMOG**") and McMoRan Oil & Gas LLC ("**MMR**" and collectively, with FMOG, "**McMoRan**") | a) the working interest owners and predecessors in title affected by the proposed abandonment as well as estimated decommissioning and plugging and abandonment liabilities for its leases (p. 1) | a) The allocation of the Debtors' interests in each oil and gas lease is disclosed in schedules attached to the Disclosure Statement at Exhibits B–D. The schedules contain detailed information for every lease in which the Debtors' hold an interest, including the block number, lease number, type of lease (federal or state), type of right, identity of operator, percentage of working interest, and lease and estimated indemnity status (producing, expired, terminated, or relinquished). |
| | | | b) treatments of pipeline rights of way throughout the gulf (p. 2) | b) The schedules also include detailed information on the Debtors' rights-of-way (ROWs) and rights-of-use and easement (RUEs) associated with the various leases. These schedules have been updated since the Debtors' filed their initial Disclosure Statement on January 1, 2021. *See* Discl. Stmt., Exs. B–E. |
| | | | c) conditions of leases and pending incidents of non-compliance, a disclosure made more significant by the fact that some leases may not even have a point of egress currently (p. 2) | c) The Debtors have provided information regarding INCs and the conditions of leases at the Box site referenced in the Disclosure Statement, as well as through formal and informal document productions and comprehensive OTPs. *See* Discl. Stmt., Art. I § G. |
| | | | d) financial information and proposed idle iron plans needed to evaluate whether the FWE I and FWE III entities will be able to timely accomplish their purported decommissioning objectives (p. 2) | d) The Financial Projections, annexed to the Disclosure Statement at Exhibit N, establish that FWE I and FWE III are economically viable. |
| | | | e) orphan liabilities that may ultimately be charged to taxpayers (p. 7) | e) The Debtors do not believe that the extent of orphaned obligations, if any, rise to the level of materiality for purposes of voting on the Plan. |
| | | | **Confirmation Objections:** | **Confirmation Objections:** |
| | | | f) FWE's "Abandonment" and Third Party Release structure is unconfirmable because it cannot avoid environmental liabilities through abandonment or release third-parties from environmental obligations. (p. 8) | f) *See* Debtors' Response (y) to Chevron Objection. |
| | | | **Solicitation Procedures and Confirmation Timeline Objections:** | **Solicitation Procedures and Confirmation Timeline Objections:**<br>g) *See* Debtors' Response (z) to Chevron Objection. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | g) FWE's Voting Procedures Are Improper. Creditors should be allowed to vote the amount of the liabilities FWE seeks to foist upon them through the plan process. A $1.00 vote is no vote at all, particularly considering the treatment of unsecured claims under the Plan. (p. 8) | |
| 12. | 979 | ConocoPhillips Company, The Louisiana Land & Exploration Company and Burlington Resources Offshore (collectively, "**COPC**") | **Joinder**: COPC joins the McMoran objection. | **Joinder**: See responses to McMoran objection. |
| 13. | 980 | Merit Energy Company, LLC ("**Merit**") | **Joinder**: Merit joins the McMoran objection. | **Joinder**: See responses to McMoran objection. |
| 14. | 981 | Hunt Oil Company and its subsidiaries Chieftain International (U.S.) L.L.C. (formerly Chieftain International (U.S.), Inc.) and Hunt Chieftain Development, L.P. (collectively, "**Hunt**") | **Joinder**: Hunt joins the following objections:<br>• Chevron,<br>• XTO,<br>• Marathon, and<br>• Eni | **Joinder**: See responses to respective objections. |
| 15. | 983 | JX Nippon Oil Exploration (U.S.A.) Limited ("**Nippon**") | **Disclosure Objections:** There is inadequate disclosure regarding:<br>a) Which interests of the Debtors are being allocated to which entities under the Plan. Certain properties appear on multiple schedules (§ A) | **Disclosure Objections:**<br>a) *See* Debtors' Response (f) to Chevron Objection. |

19

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | b)  Agreements being assumed or assigned or otherwise transferred under the Plan (§ A) | b)  The Schedule of Assumed Contracts will be filed with the Plan Supplement.  The Debtors will file the Plan Supplement 7 days prior to the Voting Deadline.  *See* Motion, ¶ 74. |
| | | | c)  The Plan releases and opt out process (§ B) | c)  The opt-out forms are contained in the various ballots and notices annexed to the Motion. |
| | | | d)  The Abandoned Properties (§ C) | d)  The Disclosure Statement adequately discloses that the Debtors will abandon the Abandoned Properties on the Effective Date. *See* Discl. Stmt., Art I §§ A, G.  A list of the Abandoned Properties is provided at Schedule E of the Disclosure Statement. Schedule E contains a status for each lease in which the Debtors' hold an interest that will be abandoned.  Moreover, the Debtors disclose that they anticipate BSEE will issue orders requiring Predecessors and CIOs to decommission the Abandoned Properties.  *See* Discl. Stmt., Art I §§ A, G. |
| | | | e)  How the 2014 FWE Assumption Agreement and FWE Replacement Bonds naming Nippon as oblige will be treated under the Plan (§ D) | e)  The Schedule of Assumed Contracts will be filed on or before the Plan Supplement filing deadline.  The Debtors will file the Plan Supplement 7 days prior to the Voting Deadline.  *See* Motion, ¶ 74. |
| | | | f)  Which agreements are related to properties being transferred, whether agreements are being assigned or terminated, and what alterations are being made to agreements that will be transferred (§ E) | f)  The Schedule of Assumed Contracts will be filed with the Plan Supplement.  The Debtors will file the Plan Supplement 7 days prior to the Voting Deadline.  *See* Motion, ¶ 74. |
| | | | **Joinders**:  Nippon joins the following objections:<br>•   XTO<br>•   Chevron<br>•   Ironshore. | **Joinder:** See responses to respective objections. |
| 16. | 990, 1069 | Samson Contour Energy E & P, LLC ("**SCEEP**") | **Disclosure Objections:**<br><br>a)  The value of the oil and gas properties to be transferred. (¶ 2) | **Disclosure Objections:**<br><br>a)  Annexed to the Disclosure Statement are schedules of the Oil & Gas Lease Interests. *See* Discl. Stmt., Exs. B–E. |
| | | | b)  The basis of law for transfer of the Abandoned Properties.(¶ 3) | b)  *See* Debtors' Response (r) to (y) Chevron Objection. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | c)  Information identifying the predecessors of the properties or describing the status of the property. (¶ ) | c)  The Disclosure Statement adequately discloses that the Debtors will abandon the Abandoned Properties on the Effective Date. *See* Discl. Stmt., Art I §§ A, G.  A list of the Abandoned Properties is provided at Schedule E of the Disclosure Statement. Schedule E contains a status for each lease in which the Debtors' hold an interest that will be abandoned.  Moreover, the Debtors' disclose that they anticipate BSEE will issue orders requiring Predecessors and CIOs to decommission the Abandoned Properties.  *See* Discl. Stmt., Art I §§ A, G. |
| | | | d)  Potential recovery for unsecured creditors (¶ 8) | d)  The recovery percentage General Unsecured Claims in Class 6(b) is disclosed in the Disclosure Statement. *See* Discl. Stat., Art. II. |
| | | | e)  How the P&A Obligations will be resolved. (¶ 9) | e)  *See* Debtors' Responses (o) to Chevron Objection and (e)-(g) to the Ironshore Objection |
| | | | f)  A Liquidation Analysis (¶ 8) | f)  A Liquidation Analysis is attached to the Disclosure Statement as Exhibit L. |
| | | | **Joinder**:  SCEEP joins the following objections: <br> • XTO and <br> • Chevron. | **Joinder:** See responses to respective objections. |
| 17. | 992 | LLOG Exploration Offshore, L.L.C., and LLOG Energy, L.L.C. (collectively, "**LLOG**") | **Joinder**: LLOG joins the following objections: <br> • Chevron, <br> • XTO, <br> • Marathon, and <br> • Eni. | **Joinder**: See responses to respective objections. |
| 18. | 993 | Hess Corporation ("**Hess**") | **Disclosure Objections:**  There is inadequate disclosure regarding: <br><br> a)  The legal basis for the abandonment of the Abandoned Properties (¶¶ 11–12) | **Disclosure Objections:** <br><br> a)  This is a confirmation objection.  In any event, the Debtors seek to abandon properties pursuant to sections 554 and 105 of the Bankruptcy Code.  *See* Discl. Stmt., Art. I § G.  The Plan does not vest (or purport to vest) title in any Predecessor. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | b) The wells, pipelines, and platforms comprising the Abandoned Properties (¶ 13) | b) The Debtors have provided information regarding the wells, pipelines, and platforms comprising the Abandoned Properties in the Relativity Site referenced in the Disclosure Statement, as well as through formal and informal document productions and comprehensive OTPs. *See* Discl. Stmt., Art. I § G. |
| | | | c) The current operational status and condition of the Abandoned Properties (¶ 13) | c) The operational status of each Abandoned Property is disclosed in Exhibit E of the Disclosure Statement. |
| | | | d) The number of INCs at the Abandoned Properties (¶ 13) | d) The Debtors have provided information regarding INCs and the conditions of leases at the Box site referenced in the Disclosure Statement, as well as through formal and informal document productions and comprehensive OTPs. *See* Discl. Stmt., Art. I § G. |
| | | | e) CIOs and Predecessors for the Abandoned Properties (¶ 14) | e) The Relativity Site referenced in the Disclosure Statement contains all identified predecessors in title and working interest owners and current record title ownership and chain of record title information for each Abandoned Property. *See* Discl. Stmt., Art. I. § G.(a). |
| | | | f) The steps the Debtors have taken to obtain regulatory approval for the transfer of the properties (¶ 15) | f) This is not a proper disclosure objection; this is a confirmation objection. Regardless, information concerning the Debtors' discussions with government officials as to the Debtors' restructuring is disclosed in Art. I § G(a) of the Disclosure Statement. |
| | | | g) Who will take title to the Abandoned Properties (¶¶ 16–20) | g) The Plan does not vest (or purport to vest) title in any Predecessor. As the Disclosure Statement states, "The Debtors anticipate that BSEE will issue orders compelling either all or certain entities who are in the chain of title (collectively, the "**Predecessors**") for each of the Abandoned Properties to perform the P&A Obligations for each respective property." Discl. Stmt. Art. I.A. |
| | | | **Joinder:** Hess joins the following objections:<br>• Chevron,<br>• XTO,<br>• Marathon, and<br>• Eni | **Joinder:** See responses to respective objections. |
| 19. | 996 | | **Disclosure Objections:** There is inadequate disclosure regarding: | **Disclosure Objections:** |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Aspen American Insurance Company, Berkley Insurance Company, Everest Reinsurance Company, and Sirius America Insurance Company (collectively, "**Aspen**") | a) The regulatory approval needed for the transfer of Debtors' oil and gas leases (¶¶ 27–29) | a) This is not a proper disclosure objection; this is a confirmation objection.  *See* Debtors' Response (a) and (g) to Chevron Objection. |
| | | | b) How FWE I, FWE III and Credit Bid Purchaser will address financial assurance and bonding requirements (¶ 30) | b) This is not a proper disclosure objection; this is a confirmation objection.  *See* Debtors' Response to (d) and (q) to the Chevron Objection. |
| | | | c) Potential impairment of suretyship status if BOEM does not require the new entities to obtain bonds (¶ 31) | c) This is not a proper disclosure objection; this is a confirmation objection. |
| | | | d) The Debtors' intend to assume the surety bonds without either the associated (i) indemnity obligations or (ii) premium-payment obligations (¶¶ 32–35) | d) Neither the Plan nor Disclosure Statement provide that any bonds will be assumed and/or assigned.  In any event, this is a confirmation objection. |
| | | | e) Whether the surety bonds can be assumed and the requirements for assumption and assignment (¶¶ 36–37) | e) This is not a proper disclosure objection; this is a confirmation objection.  The process for assumption of executory contracts, if applicable, is disclosed in the Motion. |
| | | | f) The Substitution of Principal Doctrine's impact on the Plan (¶¶ 38–41) | f) This is not a proper disclosure objection; this is a confirmation objection. |
| | | | g) The Credit Bid PSA (¶¶ 42–45) | g) The Credit Bid PSA is disclosed at Exhibit G of the Disclosure Statement. |
| | | | h) The obligations excluded from the Credit Bid PSA that are being assumed by FWE I (¶¶ 46–48) | h) The terms of the Credit Bid PSA have been disclosed.  *See* Discl. Stmt., Ex. G. |
| | | | i) The Apache Trust A Claims (¶¶ 49–50) | i) Apache's proofs of claim are available on Prime Clerk's website, https://cases.primeclerk.com/fieldwoodenergy/Home-ClaimInfo |
| | | | j) How the $224 million payment for the Credit Bid Acquired Interests is being allocated (¶ 51) | j) *See* Debtors' Response (e) to Chevron objection. |
| | | | k) The Financial Projections for FWE I (¶¶ 52–54) | k) Financial Projections for FWE I are disclosed at Exhibit N of the Disclosure Statement. |
| | | | l) The Liquidation Analysis (¶ 55) | l) The Liquidation Analysis is disclosed at Exhibit L of the Disclosure Statement. |
| | | | m) The value of the Legacy Apache Properties and the Debtors' marketing efforts (¶ 56) | m) This is not a proper disclosure objection; this is a confirmation objection.  A Valuation Analysis for FWE I is disclosed at Exhibit M of the Disclosure Statement. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | **Confirmation Objections:** The Plan is patently unconfirmable because: | **Confirmation Objections:** |
| | | | n) The Debtors' cannot abandon the Abandoned Properties without conditions protecting the public health and safety (¶¶ 59–68) | n) *See* Debtors' response (y) to the Chevron objection. |
| | | | o) The Plan contains no provisions for obtaining surety bonds/financial assurance for FWE I, FEW III or Credit Bid Purchaser to operate in the GOM surety bonds/financial assurance requirements for the new entities to operate in the Gulf of Mexico. ¶¶ 69–77 | o) The Plan need not provide these terms. As explained in Article I of the Disclosure Statement, the Debtors are working to ensure that FWE I, FWE III, and Credit Bid Purchaser are authorized to own and operate leases allocated or transferred to them under the Plan. |
| | | | p) The surety bonds are non-assumable financial accommodations and the sureties have not consented to assumption of the surety bonds by the new entities (¶¶ 78–87) | p) Neither the Plan nor Disclosure Statement provide that any bonds will be assumed and assigned or otherwise transferred to Credit Bid Purchaser. |
| | | | q) The Plan was not proposed in good faith because the Debtors have not marketed or tried to sell the Legacy Apache Properties (¶¶ 88–95) | q) *See* Debtors' Response (e) to Eni Objection. |
| | | | r) Apache is being treated differently than similarly situated creditors (¶¶ 96–100) | r) This is a confirmation issue. |
| | | | **Solicitation Procedures Objection:** | **Solicitation Procedures Objection:** |
| | | | s) Sureties and Predecessors should be able to vote the true value of their claims, rather than $1 (¶ 101) | s) *See* Debtors' response (z) to the Chevron Objection. |
| | | | **Joinder**: Aspen joins the objections filed by the other surety creditors. | **Joinder:** See responses to respective objections. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 20. | 1007 | Helis Oil & Gas Company, LLC (**"Helis"**) | **Disclosure Objections:**<br>**a)** The Debtors' impermissibly seek to abandon P&A obligations and compel sureties to address the costs of the abandoned P&A obligations (¶¶ 5–9)<br><br>b) Discrepancies in Vermillion 329 Helis contracts assumed by FWE I between Exhibits I–F and exhibits to Schedule I. ¶ 8<br><br>**Joinder**: Helis joins the following objections:<br><br>• XTO<br>• Marathon<br>• Eni,<br>• McMoRan,<br>• SCEEP,<br>• Hess, and<br>• Aspen. | **Disclosure Objections:**<br>a) *See* Debtors' Response (y) to Chevron Objection.<br><br>b) Revised exhibits to the Plan of Merger have been filed with the Disclosure Statement.  And, as noted above, the Debtors will file a Schedule of Assumed Contracts with the Plan Supplement.<br><br>**Joinder:** See responses to respective objections. |
| 21. | 1030 | North American Specialty Insurance Company (**"NASIC"**) | **Disclosure Objections:**<br><br>a) The Debtors' impermissibly seek to abandon P&A obligations and compel sureties to address the costs of the abandoned P&A obligations (¶¶ 5–9)<br><br>b) The Disclosure Statement fails to apprise parties of their subrogation and contribution rights (¶ 10)<br><br>c) The Disclosure Statement does not contain a liquidation analysis. (¶¶ 11–12)<br><br>**Joinder**: NASIC joins certain objections of:<br>• Other sureties<br>• Eni<br>• Chevron<br>• Ironshore<br>• Aspen | **Disclosure Objections:**<br><br>a) *See* Debtors' Response (y) to Chevron Objection.<br><br><br>b) The Disclosure Statement need not contain such information.<br><br>c) The Liquidation Analysis is Exhibit L of the Disclosure Statement.<br><br>**Joinder:** See responses to respective objections. |
| 22. | 1032 | Zurich American Insurance | **Disclosure Objections:** | **Disclosure Objections:** |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Company ("**Zurich**") | a) Does not provide clear information about assets that will be assigned to FWE I and the impact those assets will have on FWE I's value and performance. (¶¶ 20–23) | a) The Disclosure Statement at Art. I § D.2. describes how FWE I will be capitalized. *See also* Debtors' Response (f) to Chevron Objection. |
| | | | b) Does not comprehensively address P&A obligations for FWE I assets. (¶¶ 24–26) | b) The Disclosure Statement contains detailed information about the Apache Transactions, a description regarding how FWE I will operate post-Effective Date, and how FWE I will be funded. *See* Discl. Stmt., Art. I, § D. As explained therein, FWE I will be responsible for all obligations of the FWE I Assets, including the plugging and abandonment of wells and the ultimate decommissioning of platforms and offshore infrastructure. In connection therewith, FWE I will enter into a transition services agreement with Credit Bid Purchaser to operate the properties, including performing the necessary P&A work at the FWE I Assets. Furthermore, the relevant agreements governing the operations of FWE I post-Effective Date are annexed to Apache Term Sheet Implementation Agreement, which is an exhibit to the Disclosure Statement. *See* Discl. Stmt., Ex. J. These agreements will govern, among other things, how the FWE I Assets will be decommissioned. |
| | | | c) Did not provide financial projections for FWE I assets. (¶ 27) | c) FWE I's Financial Projections are disclosed at Exhibit N of the Disclosure Statement. |
| | | | d) No description of marketing efforts for FWE I assets. (¶¶ 28–33) | d) Article I §§ B.1 and C of the Disclosure Statement contain information regarding the marketing process. Any remaining issue is a confirmation objection. |
| | | | e) Does not adequately address regulatory approval for the Plan's transactions. (¶¶ 34–35) | e) Regulatory matters are discussed in Article V § P of the Disclosure Statement. *See also* Debtors' Response (a) and (g) to Chevron Objection. |
| | | | f) Does not address treatment of the Zurich Bonds or Zurich GIA since these bonds do not have a governmental entity obligee. (¶ 36) | f) Neither the Plan nor Disclosure Statement provide that any bonds will be assumed and assigned or otherwise transferred to Credit Bid Purchaser. To the extent a surety has any claims against the Debtors that become allowed, such claims will be treated in accordance with the Plan. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | g) Does not identify or describe releases, injunctions, or exculpations under the Plan. (¶¶ 37–38) | g) The Disclosure Statement contains specific and conspicuous language describing the release and injunction provisions in accordance with Fed. R. Bankr. P. 3016(c). *See* Discl. Stmt., Ex. F. |
| | | | h) Failed to provide liquidation analysis, valuation analysis, financial projections, first lien exhibit facility term sheet, and credit bid purchase agreement. (¶ 39) | h) The Liquidation Analysis, Valuation Analysis, Financial Projections, First Lien Exit Facility Commitment Letter and Credit Bid Purchase Agreement, are disclosed at Exhibits G, H and L–N of the Disclosure Statement. |
| | | | **Confirmation Objections**: | **Confirmation Objections**: |
| | | | i) Not proposed in good faith because:<br>  a. It is an "attempt to slice and dice the estates assets" to benefit FTLT lenders and Apache without analyzing P&A Obligations for properties assumed by FWE I. (¶ 48)<br>  b. Preferential treatment of Apache but not to the related sureties. (¶ 49) | i) *See* Debtors' Responses (b) and (j) to this Objection. |
| | | | j) Unfair discrimination and unequal treatment of unsecured creditors in favor of Apache's unsecured claim. (¶¶ 54–58) | j) Objections related to the classification of claims is a confirmation issue that should not be considered at a hearing on the Disclosure Statement. *In re Ellipso, Inc.*, Ch. 11 Case No. 09-00148, 2012 WL 368281, at *2 (Bankr. D.D.C. Feb. 3, 2012) (holding certain disclosure statement objections were confirmation issues "more appropriately dealt with at a confirmation hearing" including "[that] the contention that the classification of claims is improper."). |
| | | | k) Third party releases are improper in the 5th Circuit. (¶ 59) | k) The Plan does not contain non-consensual third party releases. |
| | | | **Joinder**: Zurich joins the Objections of all other sureties. (¶ 60) | **Joinder**: See responses to respective objections. |
| 23. | 1033; 1054 | HCC International Insurance Company PLC ("**HCCI**") | **Disclosure Objections**: There is inadequate disclosure regarding: | **Disclosure Objections**: |
| | | | a) The source of funds available to FWE I and the projected cash flows of FWE I (¶¶ 12–14) | a) The Disclosure Statement at Article I § D.2. describes how FWE I will be capitalized. FWE I's Financial Projections are disclosed at Exhibit N of the Disclosure Statement. |
| | | | b) The source of funds to cover Apache's fees and expenses up to $4 million (¶ 15) | b) Apache's fees and expenses will be paid by the estate up to the cap, as provided for under the Plan. *See* Plan, § 2.2. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | c) How bonds will be divided among multiple entities. (¶ 16) | c) *See* Debtors' Responses (a), (b), and (i) to Ironshore Objection. |
| | | | d) FWE I's obligations with respect to all bonds and letters of credit constituting Decommissioning Security (¶¶ 17–18) | d) This is a confirmation objection. |
| | | | e) Whether the Decommissioning Agreement is an executory contract that will be assumed and assigned to FWE I. | e) The Disclosure Statement provides that the Decommissioning Agreement will be assumed and become an obligation of FWE I to the extent it is an executory contract. |
| | | | f) The allocation of the Debtors' oil and gas leases and why some leases appear on multiple schedules (¶ 21) | f) The allocation of the Debtors' oil and gas leases is disclosed at Exhibits B–E of the Disclosure Statement.  As explained in Debtors' Response (k) to the Chevron Objection, some leases appear on multiple schedules because, for example, only the Debtors' interests acquired from Apache will be allocated to FWE I.  To the extent the Debtors own an interest in the same leases that was not acquired from Apache, such interest is not allocated to FWE I. |
| | | | **Confirmation Objections**:  The Plan is patently unconfirmable because: | **Confirmation Objections**: |
| | | | g) The Plan seeks to impermissibly alter the Decommission Agreement between Debtor and Apache (¶¶ 23–24) | g) The Plan does not alter the Decommissioning Agreement. |
| | | | h) The scope of the non-Debtor releases is impermissible (¶ 25) | h) This is a confirmation objection.  The Plan does not contain non-consensual third party releases. |
| | | | i) The Plan improperly attempts to separate bonds from their underlying indemnity agreements (¶ 26) | i) *See* Debtors' Responses (a), (b), and (i) to Ironshore Objection.. |
| | | | j) The surety bonds are financial accommodations that cannot be assumed and assigned with the surety's consent (¶ 27) | j) Neither the Plan nor Disclosure Statement provide that any bonds will be assumed and assigned or otherwise transferred to Credit Bid Purchaser.  To the extent a surety has any claims against the Debtors that become allowed, such claims will be treated in accordance with the Plan. |
| | | | **Solicitation Procedures and Confirmation Timeline Objections:** | **Solicitation Procedures and Confirmation Timeline Objections**: |
| | | | k) The procedures for establishing voting amounts for Class 6 Claims is unfair.  (¶¶ 28–31) | k) *See* Debtors' Response (z) to Chevron Objection. |
| | | | l) A Rule 3018(a) Deadline of February 26, 2021 deadline is unworkable because the date has passed.  (¶ 32) | l) This objection is moot because the Debtors have filed or will file a revised proposed order containing updated deadlines. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 24. | 1034 | W&T Offshore, Inc. and W&T Energy VI, LLC ("**W&T**") | **Disclosure Objections**:<br><br>a)   Does not provide a breakdown of what interests will be abandoned, purchased, or transferred under each lease.  (p. 5 bullet 1)<br><br>b)   Does not disclose pipeline right of way ownership nor interest and obligations in pipeline systems.  (p. 5 bullet 2)<br><br>c)   Does not identify predecessors or working interest owners for the abandoned properties.  (p. 5 bullet 3)<br><br>d)   Does not address regulatory issues related to the Plan's transactions.  (p. 5 bullet 4)<br><br>e)   Does not provide financing information for FWE I or FWE III to show those entities will be able to complete P&A obligations. (p. 6 bullet 1)<br><br>f)   Did not provide a liquidation analysis.  (p. 6 bullet 2)<br><br>g)   Does not adequately address P&A obligations.  (p. 6 bullet 3)<br><br>h)   Does not disclose marketing process for shelf assets or alternatives to abandonment.  (p. 6 bullet 4)<br><br>i)   Does not provide terms of transition services agreements for FWE I and FWE III.  (p. 7 bullet 1)<br><br><br>**Confirmation Objections**:<br><br>j)   Does not address related environmental liabilities through abandonment.  (p. 7 § C first paragraph) | **Disclosure Objections**:<br><br>a)   *See* Debtors' Response (a) to McMoran Objection.<br><br>b)   *See* Debtors' Response (b) to McMoran Objection.<br><br>c)   *See* Debtors' Response (f) to Chevron Objection.<br><br>d)   Regulatory matters are discussed in Article V § P of the Disclosure Statement.  *See also* Debtors' Response (a) and (g) to Chevron Objection.<br><br>e)   Financial Projections are annexed to the Disclosure Statement as Exhibit N.<br><br>f)   The Liquidation Analysis and Financial Projections are annexed to the Disclosure Statement at Exhibit L.<br><br>g)   The Relativity Site contains BSEE and FWE estimates of asset retirement obligation information, including gross/net amounts and asset count information.  *See* Discl. Stmt., Art. I. § G.(a)<br><br>h)   *See* Debtors' Response (d) to Zurich Objection.<br><br>i)   The relevant agreements governing the operations of FWE I post-Effective Date are annexed to Apache Term Sheet Implementation Agreement, which is an exhibit to the Disclosure Statement. *See* Discl. Stmt., Ex. J. These agreements will govern, among other things, how the FWE I Assets will be decommissioned.<br><br>**Confirmation Objections**:<br><br>j)   *See* Debtors' Responses (a) and (b) to Hanover Objection. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | k) Provides impermissible third party releases to "the Apache PSA Parties." (p. 7 § C second paragraph) | k) *See* Debtors' Response (aa) to Chevron Objection. |
| | | | **Solicitation Procedures and Confirmation Timeline Objections** | **Solicitation Procedures and Confirmation Timeline Objections** |
| | | | l) Voting procedures are improper because a $1 vote is not an adequate vote for certain unsecured creditors. (p. 7 § B) | l) *See* Debtors' Response (z) to Chevron Objection. |
| 25. | 1035 | U.S. Specialty Insurance Company ("**USSIC**") | **Disclosure Objections**: There is inadequate information regarding: | **Disclosure Objections**: |
| | | | a) The Proposed sale of the Specified Deepwater Assets and Shelf Assets, including: <br> 1. Information related to the performance of all existing bonding obligations for each of the assets being acquired; <br> 2. Information regarding whether the Credit Bid Purchaser will take transfer of, or obtain overlapping permits with respect to the Debtors' applicable permits; <br> 3. Information regarding whether the Credit Bid Purchaser will replace the current applicable bonds or provide evidence that the Credit Bid Purchaser (i) is capable of taking transfer of the applicable permits or obtaining overlapping permits and (ii) has or will have sufficient financial resources necessary to obtain or replace any applicable bonds that are associated with such permits; and <br> 4. Information regarding the process by which the Credit Bid Purchaser will provide the necessary bonding assurance documents to the applicable sureties providing bonding related to the assets. (¶ 12.i.) | a) The Credit Bid PSA is disclosed at Exhibit G of the Disclosure Statement. Additional information regarding the Credit Bid Transaction is disclosed at Art. I § B of the Disclosure Statement. Accordingly, there is adequate information regarding the Credit Bid Transaction. |
| | | | b) Marketing and valuation information for the Specified Deepwater Assets and Shelf Assets. for sale of Specified Deepwater Assets and Shelf Assets (¶ 12.ii) | b) *See* Debtors' Response (d) to Zurich Objection. |
| | | | c) The scope of the Debtors' decommissioning obligations and how the Debtors anticipate resolving them (¶ 12.iv.) | c) FWE I, FWE III and Credit Bid Purchaser will be responsible for decommissioning the respective properties transferred to them under the Plan and Plan Documents. *See* Discl. Stmt., Art. I § A; *see also* Debtors' Response (d) to the Ironshore Objection. |
| | | | d) The Liquidation Analysis and Financial Projections for FEW I, FWE III and Credit Bid Purchaser (¶ 12.v.) | d) The Liquidation Analysis and Financial Projections are annexed to the Disclosure Statement at Exhibits L and N, respectively. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | e) The decommissioning liabilities for each lease (¶12.vi.) | e) The Relativity Site contains information BSEE and FWE estimates of asset retirement obligation information, including gross/net amounts and asset count information, for each FWE III Oil & Gas Lease Interest and Abandoned Property. *See* Discl. Stmt. Art. I., § G(a). |
| | | | f) The Debtors' treatment of bonds related to ROWs (¶ 12.vii.) | f) To the extent a surety has any claims against the Debtors that become allowed, such claims will be treated in accordance with the Plan. |
| | | | g) Why some leases appear on multiple schedules in the exhibits to the Disclosure Statement (¶ 12.viii.) | g) *See* Debtors' Response (f) to Chevron Objection. |
| | | | h) How Debtors' future liabilities with BOEM will be addressed (¶ 12.ix.) | h) *See* Debtors' Response (y) to Chevron Objection. |
| | | | **Confirmation Objections:** The Plan is patently unconfirmable because: | **Confirmation Objections:** |
| | | | i) Surety bonds are financial accommodations that cannot be assumed or assigned and the Plan does not disclose how bonding and regulatory requirements will be accomplished going forward (¶ 15) | i) *See* Debtors' Response (j) to HCCI Objection. |
| | | | j) The abandonment of the Abandoned Properties violates *Midlantic* (¶ 16) | j) *See* Debtors' Response (y) to the Chevron Objection. |
| | | | k) The Debtors' surety bonds cannot be separated from their related indemnity agreements (¶ 17) | k) *See* Debtors' Responses (a), (b), and (i) to Ironshore Objection. |
| | | | l) The Plan is not fair and equitable and discriminates against the general unsecured creditors, meaning the Plan is "likely" unconfirmable pursuant to 11 U.S.C. § 1129(b)(1) (¶ 18) | l) This is a confirmation objection. |
| | | | **Solicitation Procedures and Confirmation Timeline Objection:** | **Solicitation Procedures and Confirmation Timeline Objection:** |
| | | | m) The Debtors' proposed timeline—which purports to provide key documents a mere 7 days prior to the Voting and Plan Objection Deadline—is woefully insufficient (¶ 12.iii.) | m) *See* Debtors' Response (aa) to Chevron Objection. |
| | | | n) The procedures for establishing voting amounts for Class 6 Claims is unfair.  (¶¶ 28–31) | n) *See* Debtors' Response (z) to Chevron Objection. |

31

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | o)  A Rule 3018(a) Deadline of February 26, 2021 deadline is unworkable because the date has passed.  (¶ 32) | o)  This objection is moot because the Debtors have filed or will file a revised proposed order containing updated deadlines. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 26. | 1036 | Philadelphia Indemnity Insurance Company (**"Philadelphia"**) | **Disclosure Objections:**<br><br>a) Does not provide financial information for FWE I to show that it will have the finances to sufficiently satisfy P&A obligations. (¶¶ 43–44)<br><br>b) Does not provide the Legacy Apache Properties' P&A obligations. (¶ 45)<br><br>c) Debtors have not obtained the necessary regulatory approvals to implement the Plan. (¶ 46)<br><br>d) Does not provide key information about releases and exculpation provisions including what claims would be released, what consideration is being given in exchange for the releases, or how these provisions are consistent with 5th Circuit case law. (¶¶ 47–49)<br><br>e) Does not provide adequate information about the treatment of surety bonds and their related indemnity agreements. (¶¶ 50–53)<br><br>f) Does not explain the value or basis for Apache's receipt of unique, valuable consideration for its unsecured claim. (¶ 54)<br><br>g) Does not describe how FWE I assets were maximized in value through a marketing process. (¶¶ 55–58)<br><br>**Confirmation Objections:**<br><br>h) Preferred treatment of Apache to the detriment of similarly situated creditors violates 11 U.S.C. § 1123(a)(4). (¶ 22)<br><br>i) FWE I assets were never marketed and a failure to market means plan not proposed in good faith. (¶¶ 36–38)<br><br>**Joinder:** Philadelphia joins the Objections of all other sureties. (¶ 59) | **Disclosure Objections:**<br><br>a) Financial Projections are disclosed at Exhibit N of the Disclosure Statement. Any remaining issue is a confirmation objection.<br><br>b) The Relativity Site contains BSEE and FWE estimates of asset retirement obligation information, including gross/net amounts and asset count information. *See* Discl. Stmt., Art. I. § G.(a).<br><br>c) Regulatory matters are discussed in Article V § P of the Disclosure Statement. *See also* Debtors' Response (a) and (g) to Chevron Objection<br><br>d) *See* Debtors' Response (x) to Chevron Objection<br><br>e) *See* Debtors' Responses (a), (b), and (i) to Ironshore Objection..<br><br>f) This is a confirmation objection. In any event, see Article I § 2 of the Disclosure Statement providing basis for Debtors' entry into Apache Definitive Documents.<br><br>g) *See* Debtors' Response (d) to Zurich Objection.<br><br>**Confirmation Objections:**<br><br>h) *See* Debtors' Response (j) to Zurich Objection.<br><br>i) *See* Debtors' Response (d) to Zurich Objection.<br><br>**Joinder:** See responses to respective objections. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 27. | 1040 | Hanover Insurance Company, Liberty Mutual Insurance Company, Travelers Casualty & Surety Company of America, and XL Specialty Insurance Company (collectively, "**Hanover**") | **Disclosure Objections:**<br><br>a)  There is inadequate disclosure regarding the impact of any proposed abandonment vis-à-vis regulatory and environmental responsibilities and the Department of Interior's perspective on abandonment.<br><br>b)  There is inadequate disclosure how environmental obligations for the Abandoned Properties would be satisfied. | **Disclosure Objections:**<br><br>a)  As described in the Disclosure Statement, the Plan is structured to ensure that all plugging and abandonment and decommissioning obligations of the Debtors are addressed in a methodical and safe manner by responsible parties, as determined by BSEE.  *See* Discl. Stmt., Art. I.<br><br>b)  The Disclosure Statement states that the Debtors anticipate that BSEE will issue orders compelling Predecessors and CIOs to decommission the Abandoned Properties.  *See* Discl. Stmt., Art. I § A. |
| | | | **Confirmation Objections:**<br><br>c)  The Debtors' cannot abandon to Predecessors in the chain of title (¶¶ 20–23)<br><br>d)  The Debtors' cannot use the Bankruptcy Code to avoid their indemnification obligations to the surety providers (¶¶ 24–29)<br><br>e)  The Disclosure Statement is silent as to how the Credit Bid Purchaser and FWE I would obtain the required bonding to operate their properties (¶¶ 31–35)<br><br>f)  Improperly attempts to divide surety bonds  (¶¶ 36–37)<br><br>**Joinder:** Hanover joins the Objections of all other sureties (¶ 6) | **Confirmation Objections:**<br><br>c)  *See* Debtors' Response (y) to Chevron Objection.<br><br>d)  This is a confirmation objection.<br><br>e)  This is a confirmation objection.<br><br>f)  *See* Debtors' Responses (a), (b), and (i) to Ironshore Objection..<br><br>**Joinder:** See responses to respective objections. |
| 28. | 1056 | Shell Offshore, Inc. ("**Shell**") | **Disclosure Objections:**<br><br>a)  Does not fully address regulatory compliance issues regarding the Abandoned Properties.  (¶ 9)<br><br>b)  Does not disclose the chain of title for Shell to determine the full extent of potential decommissioning liability.  (¶ 9)<br><br>c)  Does not disclose liabilities on a lease-by-lease basis or the condition of the leases.  (¶ 9) | **Disclosure Objections:**<br><br>a)  *See* Debtors' Response (a) to XTO Objection.<br><br>b)  *See* Debtors' Response (f) to Chevron Objection.<br><br>c)  *See* Debtors' Response (f) to Chevron Objection. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | d) Does not fully address the mechanics of abandoning assets or the resulting P&A obligations. (¶ 9) | d) *See* Debtors' Response (a) to XTO Objection. |
| | | | e) Does not fully address the allocation of the Debtors' executory contracts among the new entities. (¶ 9) | e) *See* Debtors' Response (j) to Chevron Objection. |
| | | | f) Does not fully address how the treatment of surety bonds. (¶ 9) | f) *See* Debtors' Responses (a), (b), and (i) to Ironshore Objection.. |
| | | | g) Does not fully address whether surety bonds will be used for P&A Obligations. (¶ 9) | g) *See* Debtors' Responses (a), (b), and (i) to Ironshore Objection.. |
| | | | h) Does not fully address the releases under the Plan. (¶ 9) | h) *See* Debtors' Response (x) to Chevron Objection. |
| | | | **Solicitation Procedures and Confirmation Timeline Objections:** | **Solicitation Procedures and Confirmation Timeline Objections:** |
| | | | i) The timing for filing the plan supplement 10 days before confirmation does not give interested parties enough time to accurately evaluated the Plan. (¶ 10) | i) *See* Debtors' Response (aa) to Chevron Objection. |
| | | | j) Does not describe the Apache PSA Parties release. (¶ 11) | j) *See* Debtors' Response (x) to Chevron Objection. |
| | | | k) The voting procedures are improper and do not allow the Class 5B claims to be realized in the voting and tabulation process. (¶ 12) | k) *See* Debtors' Response (z) to Chevron Objection. |
| | | | **Joinder**: Shell joins the following objections:<br>• Chevron,<br>• XTO,<br>• Marathon,<br>• Eni,<br>• Energy Transfer, and<br>• McMoRan | **Joinder**: See responses to respective objections. |
| 29. | 1060 | CNOOC Petroleum Offshore U.S.A., Inc. ("**CNOOC**") | **Disclosure Objections**:<br><br>a) The Disclosure Statement does not provide adequate information about how CNOOC's interests will be affected by the Plan. (¶ 2)<br><br>**Joinder**: CNOCC joins the following objections:<br>• Chevron,<br>• Marathon,<br>• Eni, and<br>• McMoRan | **Disclosure Objections**:<br><br>a) A Schedule of Assumed Contracts will be filed on or prior to the Plan Supplement filing deadline. *See* Motion, ¶ 80.<br><br>**Joinder**: See responses to respective objections. |

|  | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| 30. | 1064 | BP Exploration & Production Inc. ("**BP**") | **Disclosure Objections**:  There is inadequate disclosure regarding:<br><br>a)  The Credit Bid Purchase Agreement (¶ 10)<br><br>b)  Credit Bid Purchaser's ability to (i) maintain, operate, or decommission the assets transferred to it or (ii) obtain and maintain required regulatory approvals and qualifications  (¶ 10)<br><br>c)  Cure costs associated with contracts transferred or assigned to Credit Bid Purchaser  (¶ 10)<br><br>d)  FWE I and FWE III's ability to (i) maintain, operate, or decommission the assets transferred to FWE I and FWE III or (ii) obtain and maintain required regulatory approvals and qualifications (¶ 10)<br><br>e)  Cure costs associated with contracts to be transferred or assigned to FWE I or FWE III (¶ 10)<br><br>f)  How Debtors will transfer partial leasehold interests or legal basis for assigning less than the entire leasehold interest (¶ 10)<br><br>g)  Nature of the interests described as "Incremental Interests" to be allocated to FWE I (¶ 10)<br><br>h)  The process for forcibly returning the Abandoned Properties to Predecessors (¶ 10)<br><br>i)  Regulatory requirements applicable to the abandonment of the Abandoned Properties or how the Debtors will satisfy such requirements in seeking to return the Abandoned Properties (¶ 10)<br><br>**Joinder**: BP joins the objections of all predecessors in interest (¶ 6 n.7) | **Disclosure Objections**:<br><br>a)  The Credit Bid Purchase Agreement is disclosed at Exhibit G of the Disclosure Statement.<br><br>b)  *See* Debtors' Responses (a) and (c) to Chevron Objection.<br><br>c)  *See* Debtors' Response (e) to Marathon Objection.<br><br>d)  *See* Debtors' Responses (g), (n) and (o) to Chevron Objection.<br><br>e)  *See* Debtors' Response (e) to Marathon Objection.<br><br>f)  *See* Debtors' Response (k) to Chevron Objection.  To the extent not resolved, this is a confirmation objection.<br><br>g)  *See* Debtors' Response (l) to Chevron Objection.<br><br>h)  *See* Debtors' Response (r) to Chevron Objection.<br><br>i)  There is adequate information about the Abandoned Properties. *See* Discl. Stmt., Art. I § G. and Ex. E.<br><br>**Joinder**: See responses to respective objections. |
| 31. | 1065 | RLI Insurance Company ("**RLI**") | **Disclosure Objections**:  There is inadequate disclosure regarding:<br><br>a)  How the Debtors' assets will be safely operated and decommissioned upon the Effective Date of the Plan (¶ 15) | **Disclosure Objections**:<br><br>a)  *See* Debtors' Responses (d), (e), (f) and (g) to the Ironshore Objection. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | b) The marketing process for the assets being sold to Credit Bid Purchaser (¶ 18–20) | b) *See* Debtors' Response (d) to Zurich Objection. |
| | | | c) Decommissioning liabilities for FWE I & FWE III (¶ 21) | c) *See* Debtors' Response (h) to Chevron Objection. |
| | | | d) Financial projections and decommissioning liabilities for the Abandoned Properties (¶ 22) | d) *See* Debtors' Response (h) to Chevron Objection. |
| | | | e) How funds in the estate, including the proposed cash consideration for the Credit Bid Transaction, will be allocated (¶ 23) | e) *See* Debtors' Response (e) to Chevron Objection. |
| | | | f) Regulatory approval for the abandonment of the Abandoned Properties (¶ 24) | f) *See* Debtors' Response (f) to Eni Objection. |
| | | | g) The impact of abandonment on contractual counterparties (¶ 25) | g) *See* Debtors' Response (u) to Chevron Objection. |
| | | | h) How Debtors intend to continue required insurance and surety bonding (¶ 26) | h) *See* Debtors' Response (b) to Aspen Objection. |
| | | | **Confirmation Objection**: The Plan is unconfirmable because: | **Confirmation Objection**: |
| | | | i) The Plan must does not provide for paying decommissioning costs for the Abandoned Properties as administrative expense (¶¶ 28–34) | i) *See* Debtors' Response (m) to Ironshore Objection. |
| | | | **Solicitation Procedures Objections**: | **Solicitation Procedures Objections**: |
| | | | j) RLI should be entitled to vote the full extent of the economic harm imposed by the Plan, rather than $1 because its claim is contingent (¶¶ 35–40) | j) *See* Debtors' Response (z) to Chevron Objection. |
| | | | **Joinder**: RLI joins the Objections of all other sureties (¶ 41) | **Joinder**: See responses to respective objections. |
| 32. | 1067 | Cox Oil, LLC, Cox Operating LLC, Energy XXI GOM, LLC, Energy XXI Gulf Coast, Inc., Energy XXI Onshore, LLC, | **Disclosure Objections**: There is inadequate disclosure regarding: | **Disclosure Objections**: |
| | | | a) The P&A Obligations on a lease by lease basis (¶ 9) | a) *See* Debtors' Response (h) to Chevron Objection. |
| | | | b) Conditions of leases (¶ 9) | b) *See* Debtors' Responses (f) to Chevron Objection and (c) to XTO Objection. |
| | | | c) Bid or sale procedures for the sale of FWE I assets (¶ 9) | c) *See* Debtors' Response (d) to Zurich Objection. |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | Energy XXI Pipeline, LLC, Energy XXI Pipeline I, LLC, Energy XXI Pipeline II, LLC, M21K, LLC, and EPL Oil & Gas, Inc. (collectively, "**Cox**") | d) Identification of predecessors or working interest holders for the Abandoned Properties (¶ 9)<br><br>e) Capitalization of FWE I and FWE III (¶ 9)<br><br>f) How the proposed abandonment complies with *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 US 494, 507 (1986) and its progeny (¶ 9)<br><br>g) Administrative expenses and P&A Obligations (¶ 9)<br><br>h) How the Abandoned Properties will be transferred (¶ 9)<br><br>**Confirmation Objections**: The plan is patently unconfirmable because:<br><br>i) The Plan relies on abandoning assets via a forced return to unidentified co-owners. (¶ 9)<br><br>j) The Plan includes improper third party releases. (¶ 9)<br><br>k) The Plan lacks feasibility. (¶ 9)<br><br>**Joinder**: Cox joins the following objections:<br>• Chevron,<br>• XTO,<br>• Marathon,<br>• Eni,<br>• Energy Transfer,<br>• McMoRan, and<br>• Nippon | d) *See* Debtors' Responses (n) to Chevron Objection and (a) to Zurich Objection.<br><br>e) *See* Debtors' Responses (r) and (t) to Chevron Objection.<br><br>f) *See* Debtors' Response (y) to Chevron Objection.<br><br>g) *See* Debtors' Responses (h) and (w) to Chevron Objection.<br><br>h) *See* Debtors' Responses (r) and (t) to Chevron Objection.<br><br>**Confirmation Objections**:<br><br>i) *See* Debtors' Response (r) to Chevron Objection.<br><br>j) *See* Debtors' Response (l) to Ironshore Objection.<br><br>k) *See* Debtors' Response (c) to Energy Transfer Objection.<br><br>**Joinder**: See responses to respective objections. |
| 33. | 1095 | United States, on behalf of the United States Department of the Interior ("**DOI**") | **Disclosure Objections**: There is inadequate disclosure regarding:<br><br>a) estimated cost for the Decommissioning Obligations (¶¶ 19–20)<br><br>b) who will complete the Decommissioning Obligations (¶ 21)<br><br>**Confirmation Objections**: | **Disclosure Objections**:<br><br>a) *See* Debtors' Response (f) to Chevron Objection.<br><br>b) *See* Debtors' Response (r) to Chevron Objection regarding P&A Obligations for the Abandoned Properties.<br><br>**Confirmation Objections**: |

| | Docket No. | Objecting Party | Summary of Objection(s) | Debtors' Response(s) |
|---|---|---|---|---|
| | | | c) The Plan is patently unconfirmable because it improperly attempts to avoid the Debtors' Decommissioning Obligations for the Abandoned Properties. (¶¶ 27–30) | c) *See* Debtors' Responses (r) and (y) to Chevron Objection. |